THOMAS F. KOEGEL (SBN 125852)
tkoegel@crowell.com
NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
CROWELL & MORING LLP
275 Battery Street, 23rd Floor
San Francisco, California  94111
Telephone: 415.986.2800
Facsimile: 415.986.2827

CHRISTOPHER FLYNN (admitted *pro hac vice*)
cflynn@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690

Attorneys for Defendants
UNITED HEALTHCARE INSURANCE COMPANY
and UNITED BEHAVIORAL HEALTH

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, on behalf of themselves and all others similarly situated, and BRIAN MUIR, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY and UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendants. | Case No. 3:14-CV-02346-JCS<br><br>**DEFENDANTS UNITED HEALTHCARE INSURANCE COMPANY AND UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        September 26, 2014<br>Time:        2:00 P.M.<br>Judge:       Hon. Joseph Spero<br>Courtroom:   G<br><br>Action Filed:    May 21, 2014 |

Crowell
& Moring LLP
Attorneys At Law

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS .................................................................. 1

ISSUES TO BE DECIDED ...................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 2

INTRODUCTION .................................................................................................................... 2

STATEMENT OF FACTS ....................................................................................................... 4

    A.    Allegations Regarding Ms. Wit .................................................................... 4

    B.    Allegations Regarding Mr. Muir ................................................................... 6

    C.    Plaintiffs Assert Three Counts Under ERISA And Seek The Same Relief For Each Count ......................................................................................... 7

ARGUMENT ............................................................................................................................ 8

    I.    The Complaint Should Be Dismissed Because Plaintiffs Fail To Identify The Specific Terms of ERISA's Enforcement Provisions Upon Which They Rely ............................................................................................... 9

    II.    Plaintiffs' Claims That Are Based On A Violation Of MHPAEA Should Be Dismissed For Failure To Allege Facts That Show That Mental Health Benefits Were Not In Parity With Medical/Surgical Benefits ............................ 10

        A.    MHPAEA's Statutory and Regulatory Provisions ..................................... 11

        B.    Plaintiffs Fail to State a Claim Based On A Violation of MHPAEA As To Residential Treatment For Ms. Wit (Counts I and II) .................... 15

        C.    Plaintiffs Fail to State a Claim Based On A Violation Of MHPAEA As To Residential Care for Mr. Muir (Counts I and II) ............................ 17

        D.    Plaintiffs Fail To State A Claim Based On A Violation Of MHPAEA As To Nutritional Counseling For Ms. Wit (Count III) .......... 18

    III.    Count III Should Be Dismissed Because Plaintiffs Fail To State A Claim For Wrongful Denial Of Nutritional Counseling Benefits Under ERISA ........... 19

        A.    Plaintiffs Fail To Allege Facts Showing That Ms. Wit Was Entitled to Nutritional Counseling Under The Terms of Her Health Plan ............. 19

        B.    Plaintiffs Fail To Plead Facts Demonstrating That Ms. Wit Exhausted Her Administrative Remedies Relating To Her Nutritional Counseling Claims ................................................................ 20

    IV.    Counts I And III Should Be Dismissed To The Extent They Are Based On An Alleged Breach of Fiduciary Duty Under ERISA ......................................... 22

**TABLE OF CONTENTS**
**(continued)**

Page

A.     A Claim Under ERISA Section 502(a)(3) Gives Rise To Equitable Relief Not Available Elsewhere .................................................................. 22

B.     Plaintiffs' Fiduciary Duty Claims Are Rooted In Plaintiffs' Claim That They Were Wrongfully Denied Benefits, And Their Requests For Relief Duplicate Relief Available Under Section 502(a)(1)(B) ......... 23

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

### Cases

*Amato v. Bernard,*
  618 F.2d 559 (9th Cir. 1980)................................................................... 20

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................... 9, 20

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................... 8, 9, 10

*Brady v. United of Omaha Life Ins. Co.,*
  902 F.Supp. 2d 1274 (N.D. Cal. 2012) ............................................... 23, 25

*Cigna Corp. v. Amara,*
  131 S. Ct. 1866 (2011) ...................................................................... 23

*Cline v. Industrial Maintenance Eng. & Contracting,*
  200 F.3d 1223 (9th Cir. 2000)............................................................. 23

*Coronado v. Chevy Chase Bank, FSB,*
  554 F. App'x. 549 (9th Cir. 2014) ......................................................... 9

*Daniels-Hall v. Nat'l Educ. Ass'n,*
  629 F.3d 992 (9th Cir. 2010................................................................ 4, 18

*Diaz v. United Agr. Employee Welfare Ben. Plan & Trust,*
  50 F.3d 1478 (9th Cir. 1995)......................................................... 20, 21, 22

*Fifth Third Bancorp v. Dudenhoeffer,*
  134 S. Ct. 2459 (2014) ....................................................................... 9

*Forest Ambulatory Surgical Associates, L.P. v. United HealthCare Ins. Co.,*
  2011 WL 2748724 (N.D. Cal. July 13, 2011)........................................... 20

*Fortaleza v. PNC Financial Services Group, Inc.,*
  642 F. Supp. 2d 1012 (N.D. Cal 2009) ................................................... 10

*Foster v. Blue Shield of California,*
  2009 WL 1586039 (C.D. Cal. June 3, 2009) ........................................... 22

*Gilliam v. Nevada Power Co.,*
  488 F.3d 1189 (9th Cir. 2007)............................................................. 20

*Johnson v. Buckley,*
  356 F.3d 1067 (9th Cir. 2004).............................................................. 23

*LaRue v. DeWolff, Boberg & Associates, Inc.,*
  552 U.S. 248 (2008) .......................................................................... 10

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-iii-

DEFENDANTS' MOT. TO DISMISS; MEMO. OF P&A
IN SUPPORT THEREOF; CASE NO. 3:14-CV-02346-JCS

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Marder v. Lopez,*
450 F.3d 445 (9th Cir. 2006)......................................................................................... 4

*Mass. Mut. Life Ins. Co. v. Russell,*
473 U.S. 134 (1985)............................................................................................. 23, 24

*Moyle v. Golden Eagle Ins. Corp.,*
239 F. App'x (9th Cir. 2007) ...................................................................................... 22

*Pelosi v. Schwab Capital Markets, L.P.,*
462 F.Supp.2d 503 (S.D.N.Y. 2006).......................................................................... 24

*Satre v. Wells Fargo Bank, N.A.,*
2013 WL 5913752 (N.D. Cal. Nov. 1, 2013)................................................................. 9

*Steckman v. Hart Brewing, Inc.,*
143 F.3d 1293 (9th Cir. 1998).................................................................................... 17

*US Airways, Inc. v. McCutchen,*
133 S. Ct. 1537 (2013)................................................................................................ 20

*Varity Corp. v. Howe,*
516 U.S. 489 (1996).................................................................................................... 23

*Zadrozny v. Bank of New York Mellon,*
720 F.3d 1163 (9th Cir. 2013)...................................................................................... 8

**Statutes**

27 U.S.C. § 1185a(a)(3)(A)(ii)............................................................................... 12, 19

28 U.S.C. § 1185a(a)(3)(B)(iii)..................................................................................... 12

28 U.S.C. § 1185a(c)..................................................................................................... 12

29 U.S.C. § 1132(a) .................................................................................................. 9, 10

29 U.S.C. § 1132(a)(1)(B)............................................................................................. 22

ERISA § 502(a)....................................................................................................... 10, 11

ERISA § 502(a)(1)(B)........................................................................................ 22, 23, 25

ERISA § 502(a)(3) ............................................................................................ 22, 23, 25

ERISA § 502(a)(3)(B)................................................................................................... 23

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

**Other Authorities**

4

78 Fed. Reg. 68240 (Nov. 12, 2013)................................................................ 13, 16, 18

5

**Rules**

6

Fed. R. Civ. P. 12(b)(6)....................................................................................... 8

7

Fed. R. Civ. P. 8(a)......................................................................................... 9, 20

8

**Regulations**

9

29 C.F.R. § 2590.712(a)................................................................................ 12, 19

10

29 C.F.R. § 2590.712(b)(1)................................................................................ 19

11

29 C.F.R. § 2590.712(c)(2)(ii) .................................................................. 14, 16, 18

12

29 C.F.R. § 2590.712(c)(4)(i) ...................................................................... 13, 16

13

29 C.F.R. § 2590.712(c)(4)(ii) .......................................................................... 12

14

29 C.F.R. § 2590.712(c)(4)(iii) ......................................................................... 14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 26, 2014 at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom G, 15th floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Joseph Spero, Defendants United Healthcare Insurance Company ("UHIC") and United Behavioral Health ("UBH") (collectively, "Defendants") will and hereby do move to dismiss Plaintiffs David and Natasha Wit and Brian Muir's (collectively, "Plaintiffs") Class Action Complaint.

Defendants move the Court for an order dismissing Plaintiffs' Complaint in its entirety and with prejudice.  Defendants' Motion to Dismiss is made pursuant to Federal Rule of Civil Procedure 12(b)(6), and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and Declaration of Jane Stalinski, all pleadings on file in this matter, and other matters as may be presented to the Court.

## ISSUES TO BE DECIDED (L.R. 7-4(A)(3))

1.      Whether all of the Counts in Plaintiffs' Complaint should be dismissed for failure to state a claim because Plaintiffs fail to identify the specific Employee Retirement Income Security Act ("ERISA") civil enforcement provision that gives rises to any of their claims.

2.      Whether all of the Counts in Plaintiffs' Complaint should be dismissed to the extent they are based on an alleged violation of the Mental Health Parity and Addiction Equity Act ("MHPAEA") because Plaintiffs fail to plead facts to show any specific and actionable disparity between mental health or substance use disorder benefits and medical/surgical benefits with respect to residential treatment or nutritional counseling benefits.

3.      Whether Count III in Plaintiffs' Complaint should be dismissed for failure to state a claim because Plaintiffs fail to allege facts to show that (i) nutritional counseling was a covered benefit under Ms. Wit's health plan or (ii) Ms. Wit exhausted her plan's administrative remedies.

4.      Whether Counts I and III in Plaintiffs' Complaint should be dismissed for failure to state a claim because Plaintiffs allege substantively identical claims for both denial of benefits and breach of fiduciary duty under ERISA.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The putative class-action Complaint filed by Plaintiffs is facially deficient and should be dismissed.  Plaintiffs bring claims under ERISA alleging that Defendants improperly denied their requests for coverage of residential treatment and nutritional counseling and violated MHPAEA.  While the facts will ultimately demonstrate that Defendants processed each of the requests for coverage in compliance with the terms of the relevant benefit plans and federal law, Plaintiffs' claims also fail at the pleadings stage.  Plaintiffs do not identify the specific ERISA civil enforcement provision that serve as the basis for their claims; they fail to allege facts to support their conclusory allegations that Defendants violated MHPAEA; and their unspecified fiduciary duty claims are duplicative of their ERISA claims for denial of benefits.

Plaintiffs are members of employer-sponsored health benefit plans governed by ERISA.  Specifically, Mr. and Ms. Wit are members of a fully-insured health plan sponsored by Insperity, which contracts with Mr. Wit's employer to provide employee benefits.  Mr. Muir, on the other hand, is a member of a self-insured health plan sponsored by Deloitte, LLP.  According to Plaintiffs, UHIC is the designated "Claims Administrator" for both plans and has delegated some of its claims administration-related fiduciary duties with respect to mental health benefits to UBH.  Plaintiffs claim that Ms. Wit submitted claims for residential treatment and nutritional counseling under the terms of her plan, and Mr. Muir submitted claims for residential treatment under the terms of his plan. Plaintiffs each assert that his claims for treatment were wrongfully denied.  Plaintiffs further allege that those denials constituted wrongful denials of benefits and breaches of fiduciary duties under ERISA, but they fail to identify the specific provisions of ERISA that authorize their legal claims or the facts supporting those claims.  Plaintiffs also contend that Defendants' claims denials violated MHPAEA, the federal statute that requires parity in the manner in which plans administer mental health benefits versus medical/surgical benefits.  Plaintiffs allege that Defendants violated MHPAEA by employing claims review methods for mental health benefits that were more restrictive than unidentified methods used for the review of medical/surgical benefits under the relevant plans.

The conclusory allegations in Plaintiffs' Complaint are insufficient to state a claim for relief against Defendants under ERISA.

First, while Plaintiffs allege that Defendants violated ERISA in each of the three counts of the Complaint, Plaintiffs fail to identify the specific basis under ERISA's civil enforcement provisions that gives rise to this suit.  By failing to plead the basis for their ERISA claims, Plaintiffs deprive Defendants of fair notice of the claims against them and the grounds upon which the claims rest.  This alone is grounds for dismissal of Plaintiffs' Complaint in its entirety.

Second, Plaintiffs allege violations of MHPAEA in each of their counts, but fail to plead even the most basic facts in support of those claims.  For example, Plaintiffs fail to plead any actual disparity in the manner in which the "processes, strategies, evidentiary standards or other factors" were developed for mental health or substance use disorder benefits and those Defendants use for medical/surgical benefits.  Similarly, Plaintiffs fail to plead any difference in the manner in which Defendants developed mental health and medical/surgical benefits within the same parity classification, which is necessary to violate MHPAEA.  By not pleading any specific and actionable disparity, Plaintiffs fail to state a claim (be it for denial of benefits or breach of fiduciary duty) based on a violation of MHPAEA.  And, with respect to the Wits' claims for nutritional counseling, Plaintiffs do not allege facts to show that Defendants applied the limited benefit for nutritional counseling any differently for behavioral health benefits than for medical/surgical benefits.  Because Plaintiffs fail to allege facts in support of a MHPAEA violation, Plaintiffs' ERISA claims based on alleged violations of MHPAEA should be dismissed in all three counts.

Third, Plaintiffs' claim relating to nutritional counseling services for Ms. Wit in Count III fails because the Wits' health plan excludes coverage for nutritional counseling, subject to a limited exception.  Plaintiffs allege no facts to show that the Ms. Wit met the criteria for nutritional counseling benefits.  In addition, Plaintiffs fail to allege sufficient facts to show that Ms. Wit exhausted her plan's administrative appeals prior to initiating this lawsuit or that further appeals would be futile.

Fourth, Plaintiffs allege substantively identical claims for denial of benefits and breach of

1   fiduciary duty under ERISA, including seeking the same relief for both claims.  The case law is

2   clear that claims for breach of fiduciary duty under ERISA that mirror claims for denial of

3   benefits must be dismissed.

4        Based on the foregoing, Defendants respectfully request that the Court grant this Motion

5   and dismiss Plaintiffs' Complaint in its entirety.[1]

6                              **STATEMENT OF FACTS**

7   **A.     Allegations Regarding Ms. Wit.**

8        Plaintiffs allege that Ms. Wit was a member of the Insperity Group Health Plan ("Insperity

9   Plan") provided by Defendants.  Compl. ¶ 28.  The Insperity Plan, which is attached to this

10  Motion as Exhibit A, covers a limited number of mental health conditions and treatment.[2]

11       Under the terms of the Insperity Plan, mental health services are provided in a variety of

12  settings and at various levels of intensity, referred to as "levels of care."  In 2013, the Insperity

13  Plan provided coverage at the following levels of care:  (1) inpatient; (2) residential care facility;

14  (3) partial hospitalization/day treatment; (4) intensive outpatient treatment; and (5) outpatient. [3]

15  *See* Insperity Plan at 16.  The Insperity Plan conferred discretion upon Defendants to determine

16

17         [1] Defendants concurrently filed a Motion to Transfer Venue.  Defendants respectfully
18  request that the Court rule on the Motion to Transfer Venue before reaching this Motion.

19         [2] The terms of the Insperity Plan are incorporated into the Complaint by reference (*see*,
    *e.g.*, Compl. ¶¶ 29–31, 45).  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.
20  2010) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal quotation marks
    omitted) ("Although generally the scope of review on a motion to dismiss for failure to state a
21  claim is limited to the Complaint, a court may consider evidence on which the complaint
    necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the
22  plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6)
    motion."); *see also* Declaration of Jane E. Stalinski in Support of Defendants United Healthcare
23  Insurance Company and United Behavioral Health's Motions to Transfer Venue under 28 U.S.C.
    § 1404(a), to Dismiss, and to Seal ("Stalinski Decl."), ¶ 4, Ex. 2 (authenticating the "Insperity
24  Plan").  All references to the "Insperity Plan" refer to the 2013 Certificate of Coverage, unless
    otherwise noted.

25         [3] The Insperity Plan defines "residential care", *inter alia*, as "a program of effective
    Mental Health Services" which provides room and board, evaluation and diagnosis and
26  counseling "in a 24-hour per day, structured milieu." Insperity Plan at 77. The Plan defines
    "partial hospitalization" as a program that provides services for at least 20 hours per week. *Id.* at
27  76.  "Intensive outpatient treatment" is defined as "a structured outpatient Mental Health or
    Substance Abuse Disorder treatment program that may be free-standing or Hospital-based and
28  provides services for at least three hours per day, two or more days per week.  *Id.* at 74.

coverage at the appropriate setting for treatment. *Id*. Plaintiffs allege that Defendants developed "Level of Care Guidelines" that they use to determine when a particular level of care is covered under the plan. Compl. ¶ 10.

Plaintiffs allege that Ms. Wit, a New York resident, was being treated for depression, anxiety, obsessive-compulsive behaviors, an eating disorder, and other mental and physical health conditions. *Id.* ¶ 32. Plaintiffs allege that, on April 29, 2013, Ms. Wit sought coverage for treatment at Monte Nido Vista, a residential care center located in Southern California. *Id.* ¶¶ 32–33. Plaintiffs contend that, on May 3, 2013, Defendant UBH denied Ms. Wit's claim for coverage of treatment at this facility. *Id.* ¶¶ 34–38. According to the Complaint, UBH denied this request because Ms. Wit posed no immediate risk of harm to herself or others, was not currently suffering from acute medical issues, had no need for 24-hour monitoring, and could be treated safely at a less restrictive level of care. *Id.*

Ms. Wit contends that the denial of coverage was wrongful because: (i) UBH used the wrong guidelines in determining whether Ms. Wit was eligible for the coverage she requested, and (ii) UBH denied Ms. Wit's request for treatment at a residential center on the grounds that a lower level of care (partial hospitalization) would be as safe, without also considering whether it would be as effective as residential care. *Id.*

Plaintiffs also allege that United improperly denied claims for Ms. Wit relating to nutritional counseling. The medical/surgical portion of the Insperity Plan contains an express exclusion for "Individual and group nutritional counseling." Insperity Plan at 30, 35–36; Compl. ¶ 45. The text of the exclusion is as follows:

**Section 2: Exclusions and Limitations**

\*               \*               \*

To help you find specific exclusions more easily, we use headings (for example *A. Alternative Treatments* below)…Actual exclusions appear underneath headings…All exclusions in this section apply to you.

\*               \*               \*

**J. Nutrition**

1. Individual and group nutritional counseling. This exclusion does not apply to medical nutritional education services that are provided by appropriately licensed or registered health care professionals when both of the following are true:

•   Nutritional education is required for a disease in which patient self-management is an important component of treatment.

•   There exists a knowledge deficit regarding the disease which requires the intervention of a trained health professional.

Insperity Plan at 30, 35–36 (emphasis in original).

Plaintiffs allege that, in June 2013, Ms. Wit sought coverage for nutritional counseling from UHIC (because it is a medical benefit—not a behavioral health benefit), and defendant UHIC denied the claim.  Compl. ¶ 44.  Conspicuously absent from the Complaint are any facts indicating that either Ms. Wit informed UHIC that nutritional education was required for her treatment or that she had a knowledge deficit regarding nutrition and her condition (preconditions nutritional counseling coverage).  Plaintiffs contend that nine months later, in March 2014, Ms. Wit submitted an appeal of the denial of her claims for nutritional counseling benefits by sending UHIC a letter citing the language of the nutritional counseling exclusion and stating that she had an eating disorder and resulting medical complications.  *Id.* ¶ 45.  UHIC responded by letter dated March 27, 2014 stating:  "the health care service is not covered under the patient's health benefit plan."  *Id.* ¶ 47.  Plaintiffs allege that UHIC further responded by letter dated April 1, 2014, stating:  "Upon further review of your request, we determined the questions and concerns expressed in your correspondence do not qualify as an appeal."  *Id.* ¶ 48.

**B.      Allegations Regarding Mr. Muir.**

Plaintiffs allege that Mr. Muir, a resident of Chicago, Illinois, was a member of a health plan sponsored by Deloitte, LLP (the "Deloitte Plan"), and that Defendant UHIC served as the Claims Administrator of the Deloitte Plan.  Compl. ¶ 73.  Plaintiffs further allege that the Deloitte Plan offered benefits for treatment of substance use disorders at various levels of care, including at a residential treatment center.  *Id.* ¶ 78.

Plaintiffs assert that Mr. Muir suffered from alcohol dependence, co-occurring depressive and anxiety disorders, suicidality, and a delayed traumatic reaction to childhood abuse.  *Id.* ¶ 80.

Plaintiffs allege that, on March 1, 2013, Mr. Muir sought coverage for treatment for these conditions at Sierra Tucson, an Arizona residential treatment facility. *Id*. ¶¶ 79–80. According to Plaintiffs, UBH denied Mr. Muir's request for coverage on March 6, 2013 based on UBH's level of care guidelines for residential rehabilitation for substance abuse disorders. *Id.* ¶ 81.

Plaintiffs further allege that UBH's initial denial letter stated that Mr. Muir was not in withdrawal, had demonstrated an ability to not use alcohol outside of a 24-hour treatment setting, and could receive care in a partial hospitalization program. *Id.* ¶ 82. Plaintiffs further allege that UBH's appeal denial letter added, *inter alia*, that Mr. Muir had no medical or psychiatric co-occurring conditions that required 24-hour management, had no lack of family support, and the evidence indicated he could receive "safe and effective treatment in a less intensive setting such as a Partial Hospital Program." *Id.* ¶ 83.

### C.   Plaintiffs Assert Three Counts Under ERISA And Seek The Same Relief For Each Count.

The Complaint consists of three counts. Count I is brought on behalf of the putative "Residential Treatment Fiduciary Duty Class" and is styled as a violation of unspecified fiduciary obligations under ERISA. Complaint at 30:10–13 (COUNT I). Count II is brought on behalf of the putative "Residential Treatment Benefit Class" and is styled as a claim for improper denial of benefits relating to mental health residential care. *Id.* at 31:5–8 (COUNT II). Finally, Count III is brought on behalf of a putative "Nutritional Counseling Class" and is styled as a claim for improper denial of benefits and/or an unspecified breach of fiduciary duty relating to the denial of claims for nutritional counseling. *Id.* at 31:20–25 (COUNT III).

Regardless of how each count is styled, at bottom, Plaintiffs allege in each count that Defendants used improper policies and practices that restricted Plaintiffs from receiving certain benefits to which they were entitled under the terms of their health plans. For example:

- In Count I, Plaintiffs allege that "defendants developed and relied upon internal practices and policies that *improperly restricted coverage* . . . ." Compl. ¶ 105 (emphasis added). As a result, Plaintiffs have "been harmed . . . because *their claims have been subjected to restrictions* not imposed by their health insurance plans and which are illegal under ERISA and the Federal Parity Act." *Id.* ¶ 106 (emphasis added). The Count, however, is silent as to the specific fiduciary duties

that Defendants purportedly breached except for their duty to provide benefits "in accordance with insurance plans terms." *Id.* ¶ 104.

- In Count II, Plaintiffs allege: "Defendants *wrongfully denied the claims* submitted by the [Plaintiffs] . . . based upon policies and practices that they developed . . . ." *Id.* ¶ 109 (emphasis added). Plaintiffs allege that as a result, Plaintiffs "have been harmed by Defendants' improper benefit denials because they were *deprived of insurance benefits they were owed*." *Id.* ¶ 110 (emphasis added).

- In Count III, Plaintiffs allege: "Defendants *denied the claims* submitted by Plaintiffs . . . based upon internal practices . . . ." *Id.* ¶ 113 (emphasis added). Plaintiffs allege that, as a result, "Defendants' *improper denials have caused financial damages* to Plaintiffs… in the form of unreimbursed claims for nutritional counseling." *Id.* ¶ 114 (emphasis added). Notwithstanding the fact that Count III is styled as one for breach of fiduciary duty, the Count is silent as to the nature of those duties or how they were allegedly violated.

In the Complaint section titled "Requested Relief", Plaintiffs seek the following relief for each of the three counts: (1) a declaration that policies and practices that allegedly led to the denial of Plaintiffs' benefits are improper; (2) an injunction preventing Defendants from using the allegedly improper policies and practices; and (3) payment of benefits allegedly improperly denied because of the use of Defendants' policies and practices. Compl., Requested Relief ¶¶ E–G. Plaintiffs, therefore, seek an order prohibiting the use of allegedly improper policies and practices (*e.g.*, the level of care and coverage determination guidelines) so that Plaintiffs can recover the denied benefits that were subject to those policies and practices and to clarify their rights to those same benefits in the future. The Complaint does not differentiate the type of relief Plaintiffs seek under their "denial of benefits" claims versus their "breach of fiduciary duty" claims. *See* Compl., Requested Relief ¶¶ A–J.

## ARGUMENT

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim. On a motion to dismiss, the Court will accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff. *Zadrozny v. Bank of New York Mellon*, 720 F.3d 1163, 1167 (9th Cir. 2013). The Court is not required, however, to accept conclusory allegations, unsupported conclusions, or unwarranted inferences, even if cast in the form of factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955,

1   1965–66 (2007).

2          To survive dismissal, the plaintiff must provide the grounds upon which his claim rests

3   through specific factual allegations sufficient to raise a right to relief above the speculative level.

4   *Coronado v. Chevy Chase Bank, FSB*, 554 F. App'x. 549, 559 (9th Cir. 2014) (quoting *Twombly*,

5   550 U.S. at 555, 127 S. Ct. at 1265–66).  The complaint must contain sufficient factual matter that

6   it states a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950

7   (2009); Fed. R. Civ. P. 8(a).  "A claim has facial plausibility when the pleaded factual content

8   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

9   alleged."  *Iqbal*, 556 U.S. at 663, 129 S. Ct. at 1940.  Although the "plausibility standard is not

10  akin to a 'probability requirement,'" it does require "more than a sheer possibility that a

11  defendant has acted unlawfully."  *Id*. at 678, 129 S. Ct. 1949.

12         ERISA plaintiffs must fully satisfy these same pleading standards.  Notably, consistent

13  with *Twombly* and *Iqbal*, in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), the

14  Supreme Court emphasized that courts have an obligation to scrutinize ERISA class actions to

15  separate the "plausible sheep from the meritless goats."  *Id*. at 2471.  This requires a reviewing

16  court to engage in a "careful, context-sensitive scrutiny" of a complaint's allegations to ensure

17  that, prior to engaging in costly discovery, it properly states a claim for relief.  *Id.*

18  **I.      The Complaint Should Be Dismissed Because Plaintiffs Fail To Identify The Specific**
   **Terms of ERISA's Enforcement Provisions Upon Which They Rely.**

19

20         Plaintiffs' Complaint should be dismissed because they fail to identify the specific bases

21  for each of their counts.  While they generally claim to bring ERISA claims under Section 502(a),

22  29 U.S.C. § 1132(a), by failing to identify the specific provisions of ERISA's civil enforcement

23  scheme under which they are suing, Plaintiffs fail to provide Defendants sufficient notice of their

24  claims.

25         When a plaintiff pleads rights under a statutory scheme, the plaintiff must ordinarily

26  specify the appropriate statutory provisions that authorize the cause of action and detail the

27  factual allegations that give rise to the application of that provision.  *See, e.g., Satre v. Wells

28  Fargo Bank, N.A.*, 2013 WL 5913752, at *5 (N.D. Cal. Nov. 1, 2013) (requiring plaintiffs in a

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-9-

DEFENDANTS' MOT. TO DISMISS; MEMO. OF P&A
IN SUPPORT THEREOF; CASE NO. 3:14-CV-02346-JCS

1    Fair Debt Collection Practices Act case to plead both the appropriate subsection of the act and

2    detailed factual allegations to support the alleged violation of the act).  This is essential to provide

3    fair notice to the defendants of the claim and the ground upon which the claim is based.

4    *Fortaleza v. PNC Financial Services Group, Inc.*, 642 F. Supp. 2d 1012, 1020 (N.D. Cal 2009)

5    (holding that the plaintiff's failure to allege the specific statutory provision pursuant to which she

6    sought relief or the specific conduct that violated that provision did not give defendants fair notice

7    of the claim and the ground upon which the claim rested); *see also Twombly*, 550 U.S. at 555, 127

8    S. Ct. at 1265 (mandating that a pleading must give "fair notice" of the claim being asserted and

9    the "grounds upon which it rests").

10        In each of their counts, Plaintiffs simply state that the count "is brought pursuant to 29

11   U.S.C. § 1132(a)" (also known as ERISA § 502(a)).  Complaint ¶¶ 102, 108, 112.  This barebones

12   identification of the specific basis for Plaintiffs' claims is legally insufficient.

13        The need to plead specific statutory provisions is particularly important in cases brought

14   under ERISA Section 502(a).  ERISA's civil enforcement provision has ten different subsections

15   which, in many situations, give rise to separate and distinguishable causes of action, demand

16   proof of different elements, are available against only certain defendants, and provide various and

17   differing forms of relief.  *See LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 258–

18   59, 128 S. Ct. 1020, 1027–28 (2008) (Roberts, J., concurring) (discussing the distinction between

19   Section 502 subsections (a)(2), (a)(1)(B) and (a)(3)).  Instead of identifying the particular

20   statutory provisions on which they base their claims, Plaintiffs attempt to force Defendants to

21   guess at Plaintiffs' liability theories and the relief they seek.  For instance, a plaintiff can

22   sometimes assert a breach of fiduciary duty claim under either subsection (a)(2) or (a)(3), with

23   each subsection providing different remedies (*see* Section IV, below).  Plaintiffs' failure to

24   identify the specific ERISA provisions upon which they rest their claims requires dismissal at the

25   pleadings stage.

26   **II.    Plaintiffs' Claims That Are Based On A Violation Of MHPAEA Should Be
            Dismissed For Failure To Allege Facts That Show That Mental Health Benefits Were
27          Not In Parity With Medical/Surgical Benefits.**

28        Plaintiffs claim that each of the three denials of benefits identified in the Complaint

-10-

1   violated MHPAEA and thus give rise to their ERISA claims.  The crux of Plaintiffs' claims are

2   that Defendants applied a nonquantitative treatment limitation ("NQTL") to deny their claims for

3   residential treatment and nutritional counseling and that Defendants have not used that same

4   NQTL to deny their claims for medical/surgical benefits.  These barebones allegations do not

5   state a claim under ERISA for a violation of MHPAEA.

6        First, under the MHPAEA regulatory scheme, "[d]isparate results alone do not mean that

7   the NQTLs in use do not comply with" MHPAEA requirements.  Departments of Treasury,

8   Labor, Health & Human Services, Final Rules under MHPAEA, 78 Fed. Reg. 68240, 68245

9   (Nov. 13, 2013) (codified at 29 C.F.R. pt. 2590).  Plaintiffs must plead more than their claims for

10  mental health benefits were denied based on an NQTL that is not used for medical/surgical

11  benefits because MHPAEA does not prohibit different treatment limitations or rules governing

12  coverage of benefits.  Rather, the MNPAEA and the Rules require comparable processes for

13  developing and applying coverage requirements and treatment limitations.

14       Second, MHPAEA regulations make it clear that comparisons of NQTLs between mental

15  health and medical/surgical benefits must be between benefits of the same classification (for

16  example, inpatient/out-of-network benefits).  Plaintiffs fail to plead any facts showing that the

17  application of an NQTL to their claims for residential treatment and nutritional counseling was

18  not comparable to, or was applied more stringently than, the application of an NQTL that applied

19  to medical/surgical benefits *of the same classification*.

20       The deficiencies in Plaintiffs' allegations are obvious.  Plaintiffs merely allege disparate

21  results—that Defendants reached a different outcome in considering their claims for residential

22  treatment and nutritional counseling than Defendants would have allegedly reached in a

23  medical/surgical setting.  Moreover, Plaintiffs fail to identify the classification of services at

24  issue, much less compare the process used to develop and apply limitations within the same

25  classification of services for mental health and medical/surgical benefits.  Other than conclusory

26  generalizations, Plaintiffs set forth no facts showing that Defendants used different processes in

27  developing or applying treatment limitations for the mental health services Plaintiffs sought as

28  compared to those Defendants used for medical/surgical services in the same classification of

1   services.

2   **A.    MHPAEA's Statutory and Regulatory Provisions.**

3   Congress enacted MHPAEA in 2008.  MHPAEA does not require plans to provide

4   coverage for any specific mental health or substance abuse disorder.  28 U.S.C. § 1185a(c).

5   Rather, it provides that, where a plan does provide coverage for mental health and substance

6   abuse disorders, the financial requirements and treatment limitations for such coverage must be in

7   parity with the medical/surgical benefits offered under the same plan.

8   Under MHPAEA, the term "treatment limitation" includes "limits on the frequency of

9   treatment, number of visits, days of coverage, or other similar limits on the scope or duration of

10  treatment." *Id.* § 1185a(a)(3)(B)(iii).   That statute's parity provisions for treatment limitations

11  require that:

12          the treatment limitations applicable to such mental health or substance use
            disorder benefits are no more restrictive than the predominant treatment
13          limitations applied to substantially all medical and surgical benefits
            covered by the plan (or coverage) and there are no separate treatment
14          limitations that are applicable only with respect to mental health or
            substance use disorder benefits.
15

16  *Id.* § 1185a(a)(3)(A)(ii).

17  The Departments of Labor, Treasury and Health & Human Services ("the Departments")

18  issued Interim Final Regulations (the "IFRs") for MHPAEA in February 2010.  The Departments

19  issued Final Rules on November 13, 2013.  The regulations define the term "treatment limitation"

20  as encompassing two subcategories:  (i) quantitative treatment limitations  ("QTLs"), which

21  include plan limitations expressed in numbers, such as day limits on hospital lengths of stay, and

22  (ii) non-quantitative treatment limitations ("NQTLs"), which include all plan limitations that are

23  not expressed in dollars or numbers.  29 C.F.R. § 2590.712(a).  NQTLs include such things as

24  standards for determining medical necessity, whether a treatment is experimental, and other rules

25  relating to determining the appropriate level of care for a patient.  *Id.* § 2590.712(c)(4)(ii).

26  With respect to NQTLs, the regulations state:

27          A group health plan (or health insurance coverage) may not impose a
            nonquantitative treatment limitation with respect to mental health or
28

substance use disorder benefits *in any classification unless*, under the terms of the plan (or health insurance coverage) as written and in operation, a*ny processes, strategies, evidentiary standards, or other factors* used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification *are comparable to, and are applied no more stringently* than, the *processes, strategies, evidentiary standards, or other factors* used in applying the limitation with respect to medical surgical/benefits in the classification, *except to the extent that recognized clinically appropriate standards of care may permit a difference*.

*Id.* § 2590.712(c)(4)(i) (emphasis added).[4]  In the preamble to the Final Rule, the Departments reiterate that the NQTL analysis is not result focused:

> [T]he regulations do not require plans and issuers to use the same NQTLs for both mental health and substance use disorder benefits and medical/surgical benefits, but rather that the processes, strategies, evidentiary standards, and other factors used by the plan or issuer to determine **whether and to what extent** a benefit is subject to an NQTL are comparable to and applied to no more stringently for mental health or substance use disorder benefits than for medical/surgical benefits. **Disparate results alone do not mean that the NQTLs in use do not comply with these requirements.**

78 Fed. Reg. 68240, 68245 (Nov. 13, 2013) (emphasis added).

The examples provided in the regulations explain that this means plans can utilize different treatment limitations for mental health versus medical/surgical benefits, so long as the *process* for developing and applying these different rules is the same.  Example 3 in the IFR, for example, states that a plan can use different rules for whether a treatment is "medically appropriate" if these different rules are derived via the same *process*—recommendations from panels of experts with training and experience in the field:

> Example 3. (i) Facts. A plan generally covers medically appropriate treatments. For both medical/surgical benefits and mental health and substance use disorder benefits, evidentiary standards used in determining

---

[4] The Final Rule kept the language of this rule, except that it deleted the phrase "except to the extent that recognized clinically appropriate standards of care may permit a difference."  *See* 78 Fed. Reg. at 68244–45.  The Final Rule became effective for plan years beginning on or after July 1, 2014, which is noteworthy because it does not apply to the conduct alleged in Plaintiffs' May 21, 2014 complaint.  *Id.* at 68240.

whether a treatment is medically appropriate (such as the number of visits or days of coverage) are based on recommendations made by panels of experts with appropriate training and experience in the fields of medicine involved. The evidentiary standards are applied in a manner that may differ based on clinically appropriate standards of care for a condition.

(ii) Conclusion. In this *Example 3*, the plan complies with the rules of this paragraph (c)(4) because the nonquantitative treatment limitation—medical appropriateness—is the same for both medical/surgical benefits and mental health and substance use disorder benefits, and the processes for developing the evidentiary standards and the application of them to mental health and substance use disorder benefits are comparable to and are applied no more stringently than for medical/surgical benefits. This is the result even if, based on clinically appropriate standards of care, the application of the evidentiary standards does not result in similar numbers of visits, days of coverage, or other benefits utilized for mental health conditions or substance use disorders as it does for any particular medical/surgical condition.

29 C.F.R. § 2590.712(c)(4)(iii) (Example 3 in the IFR).[5]  This would mean, for example, that a health plan could develop and apply different rules for determining when particular forms of inpatient care were medically necessary for mental health versus medical/surgical conditions – if these different rules were developed using the same process.[6]

The regulations further interpret MHPAEA as requiring that parity be determined on a classification-by-classification basis.  All benefits provided by a plan must be classified into one of six classifications, which are as follows:  (1) inpatient, in-network, (2) inpatient, out-of-network, (3) outpatient, in-network, (4) outpatient, out-of-network, (5) emergency care, and (6) prescription drugs.  29 C.F.R. § 2590.712(c)(2)(ii).

This classification system reflects the fact that health plans apply different types and levels of financial requirements and treatment limitations to services in these different

---

[5] This example, as it appears in the Final Rule, is similar, with some revisions.  For example, the final sentence in the first paragraph has been revised to read:  "The evidentiary standards are applied in a manner that is based on clinically appropriate standards of care for a condition."  29 C.F.R. § 2590.712(c)(4)(iii) (Example 4).

[6] Rules of medical appropriateness for medical versus mental health conditions would be expected to differ.  For example, determining the appropriate level of care of medical/surgical services would not typically involve consideration of whether the patient posed an imminent threat of danger to himself or others—a common consideration for mental health care services.

classifications.  For example, *in*patient care typically involves intensive patient use of medical facilities, such as residence in a hospital, skilled nursing facility, residential treatment center, or partial hospitalization.  A typical form of *out*patient care, on the other hand, is a visit to a physician's office for an examination that may last minutes.  Treatment limitations for inpatient care, therefore, likely have no relevance to other classifications of services, such as an outpatient visit to a physician's office or the purchase of prescription drugs.

Thus, to state a claim under ERISA that a plan has violated MHPAEA, a claimant must do more than simply plead that disparate standards exist or that disparate results occurred as the result of an application of an NQTL to a claim for mental health benefits.  Instead, at a minimum, a claimant must plead facts to show that a health plan used processes, strategies, evidentiary standards, or other factors to develop or apply an NQTL, and those processes, strategies, evidentiary standards, or other factors are not comparable to or are applied more stringently than those used with respect to medical/surgical benefits in the same classification.  Plaintiffs have failed to plead any MHPAEA violation based on the foregoing.

**B.     Plaintiffs Fail to State a Claim Based On A Violation of MHPAEA As To Residential Treatment For Ms. Wit (Counts I and II).**

**1.     Plaintiffs Fail To Plead Facts Demonstrating That The Processes Used For Treatment Limitations For The Wits' Residential Services Claims Were Not In Parity With Those Used For Medical/Surgical Benefits.**

Plaintiffs' only factual allegation supporting the claim that Defendants' denial of Ms. Wit's residential services violated MHPAEA is as follows:  "[a]though the Wits have filed claims with United seeking benefits for medical/surgical services covered by their insurance plan, United has not subjected those claims to the same type of restrictive internal policies applicable to the Wits' claims for residential treatment . . .."  Compl. ¶ 25; *see also* ¶¶ 71–72 (restating a similar allegation as to Muir).  Setting aside the conclusory nature of this allegation, as explained in the preamble to the Final Rule, "the regulations do not require plans and issuers to use the same NQTLs for both mental health and substance use disorder benefits and medical/surgical

1  benefits . . . "  78 Fed. Reg. 68240, 68245 (Nov. 13, 2013).  Instead, the regulations require that

2  "any *processes, strategies, evidentiary standards, or other factors*" used to develop or apply an

3  NQTL for mental health care benefits must be comparable to and applied no more stringently

4  than for medical/surgical benefits.  29 C.F.R. § 2590.712(c)(4)(i) (emphasis added).

5       Because Defendants can use different NQTLs (or apply the same NQTL differently) for

6  mental health and medical/surgical benefits, Plaintiffs must do more than plead that Defendants

7  used a different NQTL or applied an NQTL differently to their mental health benefits than to their

8  medical/surgical benefits.  They have not done so.  Plaintiffs have therefore failed to state a claim,

9  and Counts I and II should be dismissed.

10      Plaintiffs also fail to state a claim under ERISA for a violation of MHPAEA because they

11  fail to plead facts to show that Defendants applied an NQTL to their mental health benefits more

12  stringently than what is applied *to the same classification* of medical/surgical benefits.  Under

13  MHPAEA, parity is determined on a *classification-by-classification* basis.  *See* 29 C.F.R.

14  § 2590.712(c)(2)(ii).   A violation only exists if, for example, the processes used for developing

15  and applying treatment limitations for *inpatient, out-of-network* services for <u>mental health</u>

16  conditions are not at parity with those used for treatment limitations for *inpatient, out-of-network*

17  services for <u>medical/surgical</u> health conditions.  *See* 29 C.F.R. § 2590.712(c)(4)(i).

18      Here, the Insperity Plan under which the Wits receive coverage classifies residential care

19  as "inpatient" care, and the residential facility in Southern California where Ms. Wit stayed is out-

20  of-network.  Insperity Plan, MHPAEA Amendment at p. 2.  To state a claim for violation of

21  MHPAEA as to Ms. Wit's residential care, Plaintiffs must allege facts showing that the processes

22  used for developing and applying treatment limitations for residential treatment are not in parity

23  with those used for inpatient, out-of-network medical/surgical services.  29 C.F.R.

24  § 2590.712(c)(4)(i).  Plaintiffs fail to allege such facts in the Complaint.  Plaintiffs' vague

25  allegation that UBH did not subject other claims the Wits submitted to the same level of care

26  guidelines is insufficient because Plaintiffs fail to allege facts showing that these other

27  medical/surgical claims were for inpatient, out-of-network services (the same classification as the

28  residential mental health services).  As a result, Plaintiffs' claims based on a violation of

1   MHPAEA relating to the Wits' residential treatment claim should be dismissed.

2           **C.**     **Plaintiffs Fail to State a Claim Based On A Violation Of MHPAEA As To**
3                    **Residential Care for Mr. Muir (Counts I and II).**

4         Plaintiffs' assertion that the denial of Mr. Muir's claim for treatment at a residential

5   facility violated MHPAEA is based on the following limited allegations:

6             [W]ithin the past year Plaintiff Muir has filed claims with United seeking
          benefits for medical/surgical services covered by his insurance plan[.]
7             United has not subjected those claims to the type of substance abuse
          coverage restrictions identified herein (e.g., the requirement that a lower
8             level of care be utilized if it is *safe—even if not as effective* as the higher
          level sought, and the obligation to prove by "*compelling evidence*" that
9             continued treatment in a current level of care is necessary to prevent acute
          deterioration or exacerbation of his condition).
10

11   Compl. ¶ 72.  These allegations also fail to state a claim based on a violation of MHPAEA.

12         First, the conclusory allegation in Paragraph 72 of the Complaint that Defendants denied

13   Mr. Muir's claim by using more restrictive criteria than the criteria applied to medical/surgical

14   benefits is contradicted by Plaintiffs' more specific allegations in the Complaint:

15           •      In Paragraph 72, Plaintiffs allege that Defendants did not consider whether
        a lower level of care was both safe *and* effective.  *But* in Paragraph 83, Plaintiffs
16           allege that Defendants' denial letter to Mr. Muir stated that "[t]h[e] evidence
        indicates you can receive *safe and effective* treatment in a less intensive setting
17           such as [a] Partial Hospital Program, which was discussed with your provider."

18           •      In Paragraph 72, Plaintiffs allege that Defendants imposed a "compelling
        evidence" standard to continual residential care for Mr. Muir.  *But* the citations to
19           Defendants' denial letters in Paragraphs 82-83 contain no reference to application
        of a compelling evidence standard.

20         Plaintiffs cannot rely on factual allegations that are directly refuted by documents

21   incorporated in the Complaint.  *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th

22   Cir. 1998) (stating that on a motion to dismiss, the court is "not required to accept as true

23   conclusory allegations which are contradicted by documents referred to in the complaint.").  Yet,

24   that is precisely what Plaintiffs do.  It simply is not enough to allege that Defendants developed

25   restrictive standards for evaluating residential treatment when the actual documents incorporated

26   into the pleading demonstrate otherwise.

27         Second, Plaintiffs must do more than allege that Defendants applied an NQTL to their

28

1    mental health benefits that, in their experience, has not been applied to their medical/surgical

2    benefits (or that Defendants applied the same NQTL differently to their mental health claims than

3    to their medical/surgical claims).  Plaintiffs must allege that the "processes, strategies, evidentiary

4    standards, and other factors used by [Defendants] to determine whether and to what extent their

5    benefit was subject to the NQTL" were not comparable to or were applied more stringently to

6    their mental health benefit claims.  78 Fed. Reg. 68240, 68245 (Nov. 13, 2013).  They have not

7    done so, and Mr. Muir's claims must therefore be dismissed.

8         Third, the MHPAEA allegations for Mr. Muir, like those for Ms. Wit, fail to compare

9    benefits on a *classification-by-classification* basis as required by the regulations.   *See* 29 C.F.R. §

10   2590.712(c)(2)(ii).  The Deloitte Plan, under which Mr. Muir received health benefits coverage,

11   classifies residential care as "inpatient" care.  Deloitte Plan at p. 30.[7]  To state a claim for a

12   violation of MHPAEA, Plaintiffs must allege facts showing that the processes used for

13   developing and applying treatment limitations for Mr. Muir's residential treatment were not in

14   parity with those used for inpatient, out-of-network medical/surgical benefits.  Plaintiffs' vague

15   allegation that Defendants did not subject "other medical/surgical claims" for Mr. Muir to the

16   same treatment limitations does not include facts showing that these other medical/surgical claims

17   were for inpatient, out-of-network services.  As a result, Plaintiffs' claims based on a violation of

18   MHPAEA relating to Mr. Muir's residential treatment claims must be dismissed.

19        **D.    Plaintiffs Fail To State A Claim Based On A Violation Of MHPAEA As To
                  Nutritional Counseling For Ms. Wit (Count III).**

20        Plaintiffs also allege that Defendants' denial of nutritional counseling benefits to Ms. Wit

21   violated MHPAEA, asserting that "***any*** exclusions of nutritional counseling for eating disorders,

22   which are covered conditions of her plan, also violate the Federal Parity Act since nutritional

23   counseling is otherwise covered for the treatment of medical disorders."  Compl. ¶ 49.  This claim

24   is legally deficient and must be dismissed for the following reasons.

25

26   _____

27        [7] The terms of the Deloitte Plan, which is attached to this Motion as Exhibit B, are
     incorporated into the Complaint by reference (*see*, *e.g.*, Compl. ¶¶ 75-78).  *See Daniels-Hall*, 629
28   F.3d at 998; *see also* Stalinski Decl., ¶ 5, Ex. 4 (authenticating the "Deloitte Plan").

First, Plaintiffs fail to acknowledge that the limited exception for coverage for nutritional counseling—regardless whether it arises out of a medical/surgical or mental health condition—is a medical benefit under the Wits' Insperity Plan and applies equally to all health conditions. *See* Insperity Plan at 35–36. The plan includes an exclusion for nutritional counseling in any context, with a narrow exception. *See id.* (exclusion for nutritional counseling listed in medical benefits and separately from descriptions of mental health and substance abuse benefits listed in Sections 2(H), 2(R), and the MHPAEA Amendment). Indeed, the detailed and lengthy description of mental health and substance abuse benefits covered by the Insperity Plan (in the MHPAEA Amendment) contains no mention whatsoever of nutritional counseling. And, even Plaintiffs concede that when Ms. Wit sought coverage for nutritional counseling, she directed her inquiries to UHIC—not UBH. UHIC is responsible for the administration of medical/surgical benefits.

The fact that some of the *conditions* for which Ms. Wit sought treatment were mental health conditions is irrelevant—under MHPAEA, it is the *benefits* which must be in parity. 29 C.F.R. § 2590.712(b)(1). Additionally, the determination of whether a benefit is a mental health or medical benefit does not take place on a case-by-case basis; rather, under the IFRs, the *plans* are given discretion to define what constitutes a "medical/surgical benefit" or a "mental health benefit" (or "substance use disorder benefit"), so long as such definitions are consistent with applicable law and generally recognized independent medical standards. *See id.* § 2590.712(a). Since the conduct that the Wits complain about is solely related to a *medical* benefit that applies to medical and mental health conditions, the parity requirements of MHPAEA are inapplicable.

Second, even if the Wits' nutritional counseling claim was governed by MHPAEA, Plaintiffs also fail to allege that Defendants apply that alleged benefit differently for those seeking treatment of mental health conditions versus medical conditions. Absent such an allegation, Plaintiff's claim for violation of MHPAEA must be dismissed. 29 U.S.C. § 1185a(a)(3)(A)(ii).

**III. Count III Should Be Dismissed Because Plaintiffs Fail To State A Claim For Wrongful Denial Of Nutritional Counseling Benefits Under ERISA.**

    **A. Plaintiffs Fail To Allege Facts Showing That Ms. Wit Was Entitled to Nutritional Counseling Under The Terms of Her Health Plan.**

Although Plaintiffs allege that the denial of nutritional counseling benefits for the Wits

violated the terms of their health plan, Plaintiffs cannot ignore that their plan includes an express benefits exclusion for nutritional counseling services.  It is beyond dispute that an ERISA plan member's entitlement to benefits is set by the terms of the plan, which is interpreted under traditional rules of contractual construction.  *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1541 (2013) ("Courts construe ERISA plans, as they do other contracts, by 'looking to the terms of the plan' as well as to 'other manifestations of the parties' intent.'"); *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007) (stating that an "ERISA plan is a contract" which is interpreted using contract principles derived from state law by the policies expressed in ERISA).

Plaintiffs concede that the Wits' plan contains this exclusion.  Compl. ¶ 45; *see also* Statement of Facts, Section II.A, above.  They appear to rely on a limited exception to the exclusion for nutritional "education" services designed to remedy a "knowledge deficit regarding the disease."  *See* Compl. ¶ 45.  In the Complaint, however, Plaintiffs do not allege that Ms. Wit had such a knowledge deficit or otherwise met the requirements for this exception to the nutritional counseling exclusion.  Rather, Plaintiffs merely allege that Ms. Wit informed UHIC that she suffered from an eating disorder and resulting medical complications.  *Id.*

These allegations are insufficient as a matter of law to state an ERISA denial of benefits claim.  Because the Complaint fails to allege facts showing that Ms. Wit was entitled to nutritional counseling under the terms of the Insperity Plan, Count III should be dismissed.  *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; Fed. R. Civ. P. 8(a); *see also Forest Ambulatory Surgical Associates, L.P. v. United HealthCare Ins. Co.*, 2011 WL 2748724, at *6 (N.D. Cal. July 13, 2011) (applying the Rule 8 pleading standard and granting defendant's motion to dismiss).

**B.**      **Plaintiffs Fail To Plead Facts Demonstrating That Ms. Wit Exhausted Her Administrative Remedies Relating To Her Nutritional Counseling Claims.**

Count III of the Complaint also should be dismissed because Plaintiffs fail to allege facts to show that Ms. Wit exhausted her plan's internal review process with respect to nutritional counseling, or that such appeals would have been futile.

To bring an ERISA denial of benefits action, a plaintiff must first exhaust the internal review processes offered by her plan.  *Diaz v. United Agr. Employee Welfare Ben. Plan & Trust,*

1    50 F.3d 1478, 1483 (9th Cir. 1995) *(citing Amato v. Bernard,* 618 F.2d 559, 566–68 (9th Cir.

2    1980)).  This exhaustion requirement reduces frivolous litigation, minimizes costs, and ensures

3    consistency in claims administration.  Because of these compelling policy goals, "as a matter of

4    sound policy [courts] should usually" enforce the exhaustion requirement.  *Amato*, 618 F.2d at

5    568.  Plaintiffs fail to allege facts to show that Ms. Wit exhausted her plan's appeals process.

6            Under the Wit plan, a member must receive a final decision on an appeal of a claim

7    determination before seeking other relief.  Insperity Plan at 67.  An appeal must contain the

8    patient's name and identification number; the date of service; the provider's name; the reason the

9    patient believes the claim should be paid; and "any documentation or other written information to

10   support [the patient's] request for claim payment." *Id.* at 54.  If the denial is upheld on appeal, a

11   patient may request a review by an Independent Review Organization or a second-level appeal,

12   depending on the nature of the initial denial.  *Id.* at 55–56.

13           Plaintiffs allege Ms. Wit submitted an "appeal" to UHIC on March 25, 2014.  Compl.

14   ¶ 45.  In the submission, Ms. Wit merely cited to language regarding nutritional coverage in the

15   Certificate of Coverage and stated that "UHC/UBH's case files contain substantial clinical

16   information about my eating disorder and the bases for nutritional counseling services."  *Id*.  Ms.

17   Wit provided no additional information, clinical or otherwise, supporting her claim that her plan's

18   exclusion for nutritional counseling should not apply to her.

19           According to Plaintiffs, Defendants told Ms. Wit that the March 25, 2014 submission did

20   "not qualify as an appeal."  Compl. ¶ 48.  Plaintiffs, however, do not allege that they made any

21   further submissions to Defendants to challenge the denial of coverage.  Instead, Plaintiffs

22   conclude, albeit unjustifiably, that pursuing additional remedies would be futile.  *See id.* ¶ 49.

23   These allegations are insufficient to show that Ms. Wit exhausted her plan's internal review

24   processes or that further use of those processes would be futile.

25           When asserting futility, a plaintiff must show that the appeal is "demonstrably doomed to

26   fail." *Diaz,* 50 F.3d at 1485.  This requires more than "bare assertions" that administrative

27   appeals would fail.  *Id.*  For example, where "the record contains nothing but speculation to

28   suggest that the administrators would have reached a preconceived result," courts will not deem

1   exhaustion to be futile. *Id.* at 1486; *see also Foster v. Blue Shield of California*, 2009 WL

2   1586039, at \*5 (C.D. Cal. June 3, 2009) (discussing the showing required by *Diaz* to demonstrate

3   futility); *Moyle v. Golden Eagle Ins. Corp.*, 239 F. App'x 362, 364 (9th. Cir. 2007) (upholding

4   dismissal of an ERISA claim for failure to exhaust and declining to find futility absent a showing

5   that the plan administrator "would not fairly consider [a] claim").

6        Here, Plaintiffs do not allege facts to show that the appeals process for the Wits'

7   nutritional claims had either been exhausted or were "doomed to fail."  Nor do they support a

8   contention that the Wits' claims or a related appeal would not be fairly considered if properly

9   submitted.  The allegations in the Complaint actually confirm that Ms. Wit was notified that her

10  prior submission did not constitute an appeal.  As result, Plaintiffs' claims based on Ms. Wit's

11  nutritional counseling should be dismissed.

12  **IV.    Counts I And III Should Be Dismissed To The Extent They Are Based On An Alleged Breach of Fiduciary Duty Under ERISA.**

13

14       Plaintiffs' ERISA breach of fiduciary duty claims, which appear to be raised in Counts I

15  and III, should be dismissed because Plaintiffs fail to state claims upon which relief can be

16  granted.  As a threshold matter, as discussed above, Plaintiffs' failure to give proper notice of the

17  provision in the ERISA civil enforcement scheme that allegedly gives rise to their fiduciary duty

18  claims is sufficient grounds for dismissal.  In addition, even if Plaintiffs cured this deficiency by

19  specifying that they are bringing their fiduciary duty claims under Section 502(a)(3), for example,

20  they still have not stated a claim for relief.  Because Plaintiffs allege no fiduciary duty that was

21  breached other than a duty to pay benefits, and all of the relief they seek is available if they

22  prevail on their claim for benefits, presumably under Section 502(a)(1)(B), Plaintiffs' ERISA

23  claims for breach of fiduciary duty should be dismissed.

24  **A.    A Claim Under ERISA Section 502(a)(3) Gives Rise To Equitable Relief Not Available Elsewhere.**

25       A participant or beneficiary of a plan can bring a civil action under Section 502(a)(1)(B)

26  "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms

27  of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C.

28  § 1132(a)(1)(B).  Section 502(a)(1)(B) provides for declaratory relief, an injunction that

1   effectuates the recovery of benefits, enforcement of rights under the terms of a plan, and

2   clarification of rights to future benefits under the terms of the plan.  *See Mass. Mut. Life Ins. Co.*

3   *v. Russell*, 473 U.S. 134, 146–47 (1985) ("To recover the benefits due her, [the plaintiff] could

4   have filed an action pursuant to § 502(a)(1)(B) to recover accrued benefits, to obtain a declaratory

5   judgment that she is entitled to benefits under the provisions of the plan contract, and to enjoin

6   the plan administrator from improperly refusing to pay benefits in the future.").

7        In contrast, Section 502(a)(3) only allows a plaintiff to seek "appropriate equitable relief

8   for injuries caused by [ERISA] violations that § 502 *does not elsewhere adequately remedy*."

9   *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S. Ct. 1065, 1078 (1996) (emphasis added).  Where

10  a plaintiff alleges an injury that Section 502 addresses elsewhere, Section 502(a)(3)'s "catchall"

11  cause of action is unavailable.  *See id.* at 515, 116 S. Ct. at 1079; *Cline v. Industrial Maintenance*

12  *Eng. & Contracting*, 200 F.3d 1223, 1229 (9th Cir. 2000) (stating that Section 502(a)(3)

13  "provides relief only for injuries for which adequate remedy is not otherwise provided"); *Johnson*

14  *v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) ("[W]hen relief is available under

15  [Section 502(a)(1)], courts will not allow relief under [Section 502(a)(3)'s] 'catch-all

16  provision.'").  Moreover, while Section 502(a)(3)(B) authorizes suits in federal court for

17  "appropriate equitable relief" to remedy violations of a plan or to enforce its provisions, courts

18  have limited and narrowed this phrase to include only "those categories of relief that, traditionally

19  speaking (*i.e.*, prior to the merger of law and equity) were *typically* available in equity."  *Cigna*

20  *Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011) (emphasis in original) (internal quotation marks

21  omitted); *see also Brady v. United of Omaha Life Ins. Co.*, 902 F. Supp. 2d 1274, 1281 (N.D. Cal.

22  2012) (interpreting Section 502(a)(3) as providing a "relatively narrow" scope of relief).

23        **B.**   **Plaintiffs' Fiduciary Duty Claims Are Rooted In Plaintiffs' Claim That They**
        **Were Wrongfully Denied Benefits, And Their Requests For Relief Duplicate**
24        **Relief Available Under Section 502(a)(1)(B).**

25        While Plaintiffs make sweeping statements in Counts I and III that Defendants breached

26  fiduciary duties owed under ERISA, the only fiduciary duties mentioned by Plaintiffs are

27  Defendants' decisions related to the payment of benefits.  For example, in Count I, Plaintiffs

28  allege that Defendants breached their fiduciary duties by relying "upon internal practices and

policies that improperly restricted coverage," which caused harm to Plaintiffs "because their claims have been subjected to restrictions not imposed by their health insurance plans."  Compl. ¶¶ 105, 106.  In Count III, Plaintiffs bring a claim for improper denial of benefits and/or breach of fiduciary duty based on the allegations that Defendants "denied the claims submitted by Plaintiffs and other members of the Nutritional Counseling Class, based upon internal practices that are inconsistent with the relevant terms of the health insurance plans," which caused "unreimbursed claims for nutritional counseling."  *Id.* ¶¶ 112–114.

The gravamen of Counts I and III for breach of fiduciary duty is the allegation that Defendants used improper policies and practices that restricted Plaintiffs from receiving certain benefits to which they were entitled.  *See, e.g., id.* ¶¶ 105, 109, 113; Statement of Facts, Section II.C, above.  To remedy this alleged harmful conduct, Plaintiffs seek a judgment on all three counts "[d]eclaring that Defendants' application of the policies and practices complained of . . . are contrary to, and in violation of, the terms of its insurance plans, ERISA, the Federal Parity Act, and Defendants' fiduciary duties."  Compl., Requested Relief ¶ E.  They also seek a "permanent injunction ordering United to cease the improper policies and practices . . . ."  *Id.*, Requested Relief ¶ F.  And, they seek a judgment "[o]rdering United to recalculate and issue unpaid benefits to members of the classes whose claims were underpaid or denied as a result of United's actions as detailed herein."[8]  *Id.*, Requested Relief ¶ G.

Each of Plaintiffs' prayers for relief is based on an alleged denial of benefits and requests relief available in a claim for denial of benefits under ERISA Section 502(a)(1)(B).  *See Mass. Mut. Life Ins. Co*, 473 U.S. at 146–47, 105 S. Ct. at 3092.  To the extent Plaintiffs are asserting a claim under ERISA Section 502(a)(3) for breach of fiduciary duty, the relief they seek is

---

[8] Plaintiffs fail to plead separate prayers for relief for each of their three counts, likely to attempt to avoid the dismissal of their camouflaged breach of fiduciary duty claims.  *See also* Statement of Facts, Section II.C, above.  Plaintiffs' conflating and copying of allegations between their three counts (*see, e.g.,* Compl. ¶¶ 101–114) demonstrates that Plaintiffs' fiduciary duty claims are duplicative of their denial of benefits claims under Section 502(a)(1)(B), lending further support for the dismissal of Plaintiffs' fiduciary duty claims.  *See Pelosi v. Schwab Capital Markets, L.P.*, 462 F.Supp.2d 503, 515 (S.D.N.Y. 2006) (dismissing fiduciary duty claim under ERISA § 502(a)(3) where it "alleges the same misconduct and seeks the same remedy" as the plaintiffs' other ERISA claims).

duplicative of the relief available for their ERISA Section 502(a)(1)(B) claim for denial of benefits.  *See Brady*, 902 F. Supp. 2d at 1285–86 (finding a declaration to an entitlement to future benefits was duplicative of relief available under Section 502(a)(1)(B)).  Because Section 502(a)(1)(B) already provides an appropriate remedy if Plaintiffs prevail on that claim, any claim by Plaintiffs under ERISA Section 502(a)(3) is duplicative and should be dismissed.

## CONCLUSION

Defendants respectfully request that the Court grant Defendants' Motion and dismiss Plaintiffs' Complaint in its entirety because Plaintiffs: (1) fail to give Defendants fair notice of the claims being asserted against them by not identifying the particular provisions in ERISA's civil enforcement scheme under which Plaintiffs seek relief; (2) fail to allege actionable disparity between mental health or substance use disorder benefits and medical/surgical benefits; (3) fail to allege that any exception applies to the general exclusion for nutritional counseling benefits under the Wits' plan or that the Wits exhausted their administrative remedies; and (4) plead substantively identical denial of benefits and fiduciary duty claims, including seeking the exact same relief for all of these claims, thereby showing that appropriate remedies are otherwise available under ERISA and its fiduciary duty claims are duplicative and unnecessary.

Dated: July 18, 2014                    CROWELL & MORING LLP

                                        /s/ Nathaniel P. Bualat

                                        Christopher Flynn
                                        Jennifer S. Romano
                                        Nathaniel P. Bualat
                                        Attorneys for Defendants
                                        UNITED HEALTHCARE INSURANCE COMPANY
                                        and UNITED BEHAVIORAL HEALTH