Meiram Bendat (Cal. Bar No. 198884)
PSYCH-APPEAL, INC.
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (310) 564-0040
meiram@psych-appeal.org

D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
1185 Avenue of the Americas, 31st Floor
New York, NY 10036
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

Anthony F. Maul (subject to *pro hac vice* admission)
THE MAUL FIRM, P.C.
68 Jay Street, Suite 201
Brooklyn, NY 11201
Tel: (646) 263-5780
Fax: (866) 488-7936
afmaul@maulfirm.com

*Attorneys for Plaintiffs*

**UNITED STATED DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS)<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**<br><br>Hearing Date: October 3, 2014<br>Time: 9:30 A.M.<br>Judge: Hon. Joseph C. Spero<br>Courtroom: G – 15th Floor<br>Action Filed: May 21, 2014 |

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

III. ARGUMENT ........ 3

A. Legal Standard ........ 3

B. The Amended Complaint ........ 4

C. Defendants Cannot Carry their 28 U.S.C. § 1404(a) Burden ........ 6

1. Plaintiffs' choice of forum is entitled to deference ........ 8

2. Defendants make no particularized showing that the Southern District of New York is more convenient to party and non-party witnesses ........ 9

3. The interests of justice are satisfied by adjudication in the Northern District of California ........ 13

(a) The Southern District of New York has less interest in this dispute than the Northern District of California ........ 13

(b) The Southern District of New York and the Northern District of California are comparably congested ........ 14

(c) Interpretation of New York law does not play a significant role in this case ........ 15

IV. CONCLUSION ........ 15

# TABLE OF AUTHORITIES


**Cases** **Page No(s).**

*Cal. Serv. Employees Health & Welfare Trust Fund v. Command Sec. Corp.*, 2012 WL 2838863 (N.D. Cal. July 10, 2012) ..... 4

*CFTC v. Savage*, 611 F.2d 270 (9th Cir. 1979) ..... 4

*David v. Alphin*, 2007 WL 39400 (N.D. Cal. Jan. 4, 2007) ..... 8, 9

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ..... 4

*Gates Learjet Corp. v. Jensen*, 743 F.2d 1325 (9th Cir. 1984) ..... 10

*Guy v. Hartford Life Grp. Ins. Co.*, 2011 WL 5525965 (N.D. Cal. Nov. 14, 2011) ..... 8

*Helfant v. Louisiana & S. Life Ins. Co.*, 82 F.R.D. 53 (E.D.N.Y. 1979) ..... 9

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ..... 3, 4

*Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947) ..... 14

*La Seguridad v. Transytur Line*, 707 F.2d 1304 (11th Cir. 1983) ..... 10

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987) ..... 8, 9

*McCormack v. Safeway Stores, Inc.*, 2012 WL 5948965 (N.D. Cal. Nov. 28, 2012) ..... 8

*Smith v. Aetna Life Ins. Co.*, 2011 WL 3904131 (N.D. Cal. Sept. 6, 2011) ..... 8

*Stewart Org. v. Ricoh Corp.*, 487 U.S. 22 (1988) ..... 3

*Virts v. Prudential Life Ins. Co. of Am.*,
950 F. Supp. 2d 101 (D.D.C. 2013) ........ 8

*Vu v. Ortho-McNeil Pharm, Inc.*,
602 F. Supp. 2d 1151 (N.D. Cal. 2009) ........ 4

**Statutes**

28 U.S.C. § 1404(a) ........ 3, 4

29 U.S.C. § 1105(a) ........ 6

29 U.S.C. § 1105(c)(2) ........ 6

29 U.S.C. § 1132(e)(2) ........ 7

## I. INTRODUCTION

Notwithstanding Defendants' claim that "Plaintiffs, *without explanation*, filed their suit in the Northern District of California," Motion at 9, San Francisco is the most natural locus for this lawsuit. Plaintiffs chose the Northern District of California because it is the home district of United Behavioral Health ("UBH"), the entity solely responsible for all of the acts and omissions that injured Plaintiffs. The centrality of UBH to this case is clarified further by the Amended Complaint, also filed today, which names UBH as the sole Defendant.

Plaintiffs bring their claims on behalf of a putative class of similarly situated individuals, some of whom may seek to intervene in this suit. The Amended Complaint adds three additional plaintiffs. Just as the named Plaintiffs are already scattered around the country, additional intervenors will only increase the geographic diversity of this suit. As the case law that Defendants rely upon demonstrates, it would be irrational to attempt to try this class case in a forum that has a connection to any particular Plaintiff.

For the same reason, it would be irrational to focus on the location of the particular UBH employees who effectuated the systemic and illegal policies and practices of UBH. As Defendants' Motion to Transfer Venue ("Motion") makes clear, UBH handles individual claims via personnel around the country. UBH cannot point to any other federal judicial district where it conducts more activity than in the Northern District of California, where UBH is domiciled. Indeed, because (as Defendants point out) a given mental health or substance abuse treatment claim may be reviewed by UBH personnel in multiple states, the only logical forum for addressing all of UBH's wrongful activity is here in San Francisco, home to the central UBH hub from which that activity is coordinated.

Instead of giving due deference to Plaintiffs' logical forum selection, Defendants seek to transfer this case to the Southern District of New York. That forum has a minimal relationship to

this case: although three of the Plaintiffs reside there, others do not; the sole named Defendant does not reside in New York, none of the internal UBH guidelines were promulgated in New York, the coverage denial decisions were not made in New York, and none of the residential treatment facilities at issue are in New York. The Southern District of New York is, simply put, a less appropriate venue for this case, and Defendants certainly have not carried their burden to prove the opposite.

## II. STATEMENT OF FACTS

Plaintiffs David Wit, and his daughter Natasha Wit, reside in Larchmont, New York. Am. Compl. ¶ 38. Plaintiff Natasha Wit was denied coverage by UBH for her treatment at the Monte Nido Vista facility in Agoura Hills, California. *Id.* at ¶¶ 43, 45-48.

Plaintiff Cecilia Holdnak and her minor daughter, "Emily," reside in Scottsdale, Arizona. *Id.* at ¶ 51. Emily Holdnak was denied coverage by UBH for her treatment at the New Haven Residential Treatment Center in Spanish Fork, Utah. *Id.* at ¶¶ 63, 66-79, 87.

Plaintiff Brandt Pfeifer is the Executor of the Estate of Lauralee Pfeifer, his late wife. *Id.* at ¶ 115. Brandt Pfeifer resides in Lake Forest, Illinois, where his wife also resided until her death on April 9, 2014. *Id.* Lauralee Pfeifer was denied coverage by UBH for her treatment at Passages-Malibu, in Malibu, California. *Id.* at ¶¶ 121-28.

Plaintiff Brian Muir resides in Chicago, Illinois. *Id.* at ¶ 134. He was denied coverage by UBH for his treatment at the Sierra Tucson facility in Tucson, Arizona. *Id.* at ¶¶ 140-151.

Plaintiff Lori Flanzraich and her daughter, Casey, reside in South Hempstead, New York. *Id.* at ¶ 155. Casey Flanzraich turned 18 on June 5, 2014. *Id.* Casey Flanzraich was denied coverage by UBH for her treatment at the New Haven Residential Treatment Center in Spanish Fork, Utah. *Id.* at ¶¶ 164, 167-173.

Defendant UBH is headquartered in San Francisco, California. *Id.* at ¶ 17. UBH "conduct[s] the claims administration of welfare benefit plans in offices across the United States." Motion at 5. According to Defendants, UBH's decisions regarding Plaintiff Natasha Wit's coverage were made in Illinois and Texas, and UBH's decisions regarding Plaintiff Muir's coverage were made in Florida, Georgia and Maryland. *Id.* at 5-6. According to Defendants, UBH's coverage guidelines, which Plaintiffs challenge in this case, "were developed in Minnesota and Florida." *Id.* at 6.

California has the greatest number of mental health residential treatment centers. A treatment locator service provided by *Psychology Today* indicates that California has 332 treatment centers, 199 of which provide long term (i.e. longer than 30 days) residential treatment. Declaration of Meiram Bendat in Support of Plaintiffs' Opposition to Defendants' Motion to Transfer ("Bendat Decl.") ¶ 2. By comparison, *Psychology Today* lists 159 treatment centers in New York, only 69 of which provide long-term residential treatment. *Id.*

## III. <u>ARGUMENT</u>

### A. Legal standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

> Under § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The Northern District of California regularly evaluates the

following factors in deciding a motion to transfer: "'(1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.'" *See, e.g., Cal. Serv. Employees Health & Welfare Trust Fund v. Command Sec. Corp.*, 2012 WL 2838863, at *2 (N.D. Cal. July 10, 2012) (ERISA case in which motion to transfer was denied) (quoting *Vu v. Ortho-McNeil Pharm, Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009)).

The burden under § 1404(a) is on the moving party: "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (denying transfer under § 1404 and for *forum non conveniens*). The defendant "ha[s] the burden to justify by particular circumstances that the transferor forum was inappropriate," *CFTC v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979), and that the proposed transferee forum "[i]s the more appropriate forum for the action." *Jones*, 211 F.3d at 499.

**B. The Amended Complaint**

Concurrently with this opposition to the Motion, and in response to the arguments raised in Defendants' motion to dismiss, Plaintiffs file their Amended Complaint. The two most important changes in the Amended Complaint are the addition of three named plaintiffs and the reduction to only one named defendant, UBH. The addition of the three plaintiffs underscores the scope and geographic diversity of this case. The six current named plaintiffs reside in three different states, sought coverage for their residential treatment at centers in three different states, and doubtlessly had their claims denied by UBH personnel located around the country. And,

because Plaintiffs bring this case on behalf of a putative nationwide class, the diversity already apparent in the Amended Complaint is only the tip of the iceberg. Given this geographic diversity on the Plaintiffs' side, it is only natural to look to where the Defendant is headquartered for a venue.

Pursuant to the Amended Complaint, only one Defendant, UBH, remains. The acts for which Plaintiffs seek redress are solely UBH's, in (i) promulgating coverage guidelines that are far more restrictive than generally accepted treatment standards, and (ii) systematically misapplying even these unduly restrictive standards in denying Plaintiffs' legitimate claims. Plaintiffs allege that this misconduct violated UBH's fiduciary obligations (Plaintiffs are no longer pursuing claims related to violations of the Federal Parity Act which may have implicated the conduct of actors other than UBH). Every Plaintiff, and every member of the putative class, had their mental health and substance abuse treatment claims denied by UBH, pursuant to a series of delegations of claims administration authority: a delegation of all claims administration from each Plaintiff's plan administrator to United Healthcare Insurance Company ("UHIC") (or some affiliate thereof), and a re-delegation of all mental health and substance abuse treatment claims from such UHIC affiliate to UBH. Thus, for example, Plaintiffs David and Natasha Wit's insurance plan identifies the "Plan Sponsor" and "Named Fiduciary" as Insperity Holdings, Inc., and explains that the Plan Sponsor retains all fiduciary responsibilities with respect to the Plan "except to the extent the Plan Sponsor has delegated or allocated to other persons or entities one or more fiduciary responsibility with respect to the Plan." Am. Compl. ¶ 40. It then explains that UHIC is the "Claims Fiduciary," and that the plan is "administered on behalf of the Plan Administrator by UnitedHealthcare Insurance Company" and that, as such, UHIC handles "claims processing, claims payment, and [] appeals," has discretion to "interpret benefits under

the Policy," interpret the other terms, conditions, limitations and exclusions set out in the Policy, and "make factual determinations related to the Policy and its Benefits," and "may delegate this discretionary authority to other persons or entities that provide services in regard to the administration of the Policy." *Id.* Pursuant to that authority, UHIC made "United Behavioral Health (UBH) [] responsible for making benefit coverage determinations for mental health and substance abuse services that are provided to United Healthcare Insurance Company members." *Id.* at ¶ 45.

Plaintiffs do not challenge the actions of the plan, plan sponsors, or formally designated "Plan Administrators." The only role of these entities in the misconduct alleged is that they delegated their fiduciary duty for mental health and substance abuse-related claims administration to a UBH affiliate, which in turn delegated such authority to UBH. *See, e.g.,* 29 U.S.C. § 1105(a) and (c)(2) (where a named fiduciary has delegated fiduciary authority, liability for breach of fiduciary duty is limited to circumstances surrounding delegation unless named fiduciary knows about, or participates in, co-fiduciary's breach). Thus, because those entities had no role in the misconduct alleged, and the injunctive relief Plaintiffs seek is designed to alter the policies and practices that UBH applies in its role as the mental health and substance abuse claims fiduciary, there is no need to name the plan, plan sponsors, or formally designated Plan Administrator. Plaintiffs have also determined, for similar reasons, that it is unnecessary to name UHIC and other UBH affiliates as defendants because UBH's misconduct is at the core of Plaintiffs' claims and the requested relief that Plaintiffs seek against UBH is capable of redressing that misconduct.

### C. Defendants Cannot Carry their 28 U.S.C. § 1404(a) Burden

Under ERISA's forum selection provision, Plaintiffs could have brought this action "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." *See* 29 U.S.C. § 1132(e)(2). This forum independently satisfies each of those alternatives. UBH, which is headquartered here, administered the mental health and substance abuse treatment benefits at issue (pursuant to delegation by the various plan administrators and UBH's corporate affiliates), is the party that breached its duties under ERISA, and obviously resides and may be found here.

Given that Plaintiffs reside in different states, sought residential treatment in still different states (though two of them did so in California), were apparently denied benefits by UBH claims personnel working from still different states, and bring this action on behalf of a nationwide putative class of similarly situated individuals, UBH's corporate presence in San Francisco, California, provides the most logical, and only, geographic nexus for Plaintiffs' claims. San Francisco is likely the location of UBH witnesses and documents highly relevant to all Plaintiffs and to the putative class. Moreover, the residential treatment centers for which Plaintiffs sought coverage are either in, or near, California.

Although the Northern District of California is an eminently appropriate venue, the Southern District of New York bears minimal relationship to this suit. UBH is not headquartered there, Defendants point to no relevant UBH personnel that work there, and none of the residential treatment at issue took place there. Although some of the Plaintiffs live, work, or are insured by plans that administer non-mental health benefit claims in New York, Defendants do not, and cannot, explain why these tenuous New York connections (which in any case only apply to some Plaintiffs) will play a significant role in this class action solely challenging UBH's

actions. Even Defendants' claim that the Southern District of New York is less congested does not withstand rigorous scrutiny. Defendants provide no basis to upset Plaintiffs' choice of forum.

**1. Plaintiffs' choice of forum is entitled to deference**

"In ERISA cases, a plaintiff's choice of forum usually receives 'special weight' in a § 1404(a) transfer analysis. This is especially true if the plaintiff has chosen the venue where the plan is administered." *Virts v. Prudential Life Ins. Co. of Am.*, 950 F. Supp. 2d 101, 105-06 (D.D.C. 2013). Here, Plaintiffs filed their case in the home district of the sole remaining Defendant, which is also the entity to whom the Plaintiffs' Plans delegated administration of Plaintiffs' mental health and substance abuse treatment coverage. This patently rational forum choice is entitled to significant deference.

Defendants' attempt to diminish the proper deference due to Plaintiffs' forum choice only serves to highlight why Plaintiffs' choice of forum in *this case* is entitled to significant deference. Defendants cite two lines of cases: those holding that a plaintiff's choice of a forum other than her home forum is entitled to less deference, *see* Motion at 9 (citing *Smith v. Aetna Life Ins. Co.*, 2011 WL 3904131, at *2 (N.D. Cal. Sept. 6, 2011); *Guy v. Hartford Life Grp. Ins. Co.*, 2011 WL 5525965, at *2 (N.D. Cal. Nov. 14, 2011); *McCormack v. Safeway Stores, Inc.*, 2012 WL 5948965, at *4 (N.D. Cal. Nov. 28, 2012)), and those holding that a plaintiff's choice of forum is entitled to less deference when the plaintiff represents a class, *see* Motion at 9-10 (citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *David v. Alphin*, 2007 WL 39400, at *3 (N.D. Cal. Jan. 4, 2007)). Read together, these two lines of cases directly contradict Defendants' assertion.

In a nationwide class action, a plaintiff's forum choice may be entitled to less deference because plaintiffs frequently chose their *home forum* when bringing a lawsuit, even when that

forum may have no other connection to the lawsuit, and "the existence of hundreds of potential plaintiffs considerably weakens plaintiff's claim that his home forum is the most appropriate." *Helfant v. Louisiana & S. Life Ins. Co.*, 82 F.R.D. 53, 58 (E.D.N.Y. 1979) (cited in *Lou*, 834 F.2d at 739); But here, Plaintiffs, who reside across the country, brought this case not in one of their home districts but in the home district of the only remaining Defendant. The fact that additional plaintiffs may intervene in the future will not render the Northern District of California any less apt, and thus cannot serve to diminish the deference due to Plaintiffs' choice of forum.

Similarly, because the class action cases clearly hold that when a plaintiff represents a nationwide class, her choice of her *home* forum is entitled to less deference, Defendants can hardly rely on cases brought in an individual capacity that hold that a plaintiff's choice of a non-home forum is entitled to less deference. This case, which already includes six named Plaintiffs scattered around the country, is brought on behalf of a nationwide putative class of similarly situated individuals, any of whom may seek to intervene. Bringing this case in a particular forum simply because one of the Plaintiffs resides there would make little sense. Bringing this case in the forum where the *sole named Defendant* resides, however, makes good sense. *C.f. David*, 2007 WL 39400, at *3-4 (granting motion to transfer to the Western District of North Carolina where plaintiff sought to bring class action in her home forum (the Northern District of California), despite the fact that the corporate defendant was headquartered in North Carolina, and 18 of the 34 individual defendants resided there).

**2. Defendants make no particularized showing that the Southern District of New York is more convenient to party and non-party witnesses**

While the convenience of witnesses is certainly an important factor to consider in selecting a forum, Defendants have failed to show that their substitute forum choice, where none

of the acts and omissions giving rise to Plaintiffs' claims occurred, would be more convenient for either party or non-party witnesses.

In order to justify a change of venue, Defendants would have to make a particularized showing that the Southern District of New York is home to more significant evidence in this case than the Northern District of California. *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984) (holding that district court had abused its discretion by granting defendants' *forum non conveniens* motion, in part because "the district court focused on the number of witnesses in each location. Instead, the court should have examined the materiality and importance of the anticipated witnesses' testimony and then determined their accessibility and convenience to the forum."); *see also La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308-09 (11th Cir. 1983) ("Until the issues are framed, there is simply no basis for a *forum non conveniens* determination other than sheer speculation.") (cited in *Jensen*, 743 F.2d at 1336).

By far the most significant evidence in this case will come from UBH, which is headquartered in this district and appears to have minimal contacts with the Southern District of New York. Even Defendants' self-serving declarations cannot make any ties between the Southern District of New York and the likely key party witnesses in this case. Defendants claim that UBH made decisions regarding Plaintiff Natasha Wit's benefits in Illinois and Texas, and decisions regarding Plaintiff Muir's benefits in Georgia, Maryland and Florida. Motion at 10. Defendants also claim that the UBH benefit guidelines Plaintiffs challenge were developed in Minnesota and Florida. *Id.* At the same time, Defendants ask the Court to accept, before any discovery has taken place, that there will be no key witnesses in the Northern District of California, despite the fact that it is home to the sole named Defendant's corporate headquarters. This is almost certainly incorrect and also fails to account for the three additional Plaintiffs

named in the Amended Complaint. Plaintiffs challenge not only specific coverage determinations, but UBH's systemic practice of promulgating unreasonably restrictive coverage guidelines and applying those guidelines in an unreasonably restrictive manner. *See* Am. Compl. at ¶ 15. Given that promulgation and application of such guidelines is UBH's primary business, it is hard to believe that UBH's San Francisco headquarters played no part in the acts and omissions that injured Plaintiffs. It is far more reasonable to assume, in anticipation of discovery, that whatever actions UBH employees scattered around the country may have taken in connection with Plaintiffs' claims were directed by, and consistent with, UBH corporate policies established in its corporate headquarters. Indeed, Jennifer D. Thompson Kinberger, the very UBH employee who collected the information regarding UBH's administration of two of the Plaintiffs' claims and submitted a declaration in support of the Motion without asserting her location, is based out of California. Bendat Decl. ¶ 3, Ex. 1. Accordingly, UBH's headquarters will be a critical source of both witnesses and documents in this case.

Compared to the location of the sole Defendant in the Northern District of California, the fact that some of the named Plaintiffs reside in New York is considerably less significant. First, the remaining three Plaintiffs live in Illinois and Arizona, and thus are well outside the Southern District of New York's power to compel appearance at trial. Second, Defendants suggestion that any of the Plaintiffs would not make themselves available to testify at trial is groundless; each of the Plaintiffs will be an active participant in this case, wherever it may be held. But most importantly, Plaintiffs will not be the most significant source of evidence at trial. This is a putative class action focusing on UBH's systemic practices and promulgated guidelines. While individual Plaintiffs may be able to testify to their personal damages as a result of UBH's

unjustified denials of coverage, they cannot speak to the central issues of the case: UBH's bases for promulgating particular guidelines and for applying the guidelines in a particular fashion.

Similarly, Defendants cannot explain why the Southern District of New York would be more convenient for non-party witnesses who are likely sources of important evidence in this case. First of all, the location of the formal administrators of Plaintiffs' Plans is irrelevant. UBH cannot dispute that it is the designated decision maker with respect to mental health and substance abuse treatment coverage administration at issue here. The plan administrators are unlikely to possess significant evidence bearing on UBH's policies and procedures in denying Plaintiffs' benefit claims, or the benefit claims of any similarly situated individuals. For the same reason, UHIC's location in Hartford, Connecticut, is of little import. UHIC is no longer a Defendant in this action, and, like the administrators of Plaintiffs' Plans, delegates all decisions regarding mental health and substance abuse treatment benefits to UBH.

Some of the third party witnesses that can likely provide significant evidence in this case are the staff at the residential treatment facilities that Plaintiffs attended, and for which they were denied coverage. For these potential witnesses, the Northern District of California is a far more convenient forum. The coverage denials at issue for the six named Plaintiffs involve four residential treatment facilities, two of which are located within California, and the other two (in Arizona and Utah), are approximately 800 miles away from San Francisco. None of these facilities have any apparent contacts with the Southern District of New York.[1]

[1] While Defendants try to point to the fact that Plaintiff Natasha Wit was also denied benefits with regard to nutritional counseling she received in New York, *see* Motion at 17, that denial is not at issue in the complaint, which, as with the other named Plaintiffs and all others similarly situated, takes issue with UBH's denial of coverage for Ms. Wit's residential treatment. *See, generally,* Am. Compl. at ¶¶ 43-50.

Additional third party witnesses that may provide significant evidence are the entities that promulgate the generally accepted guidelines for mental health and substance abuse treatment: the American Academy of Child and Adolescent Psychiatry ("AACAP"), the American Association of Community Psychiatrists ("AACP"), and the American Society for Addiction Medicine ("ASAM"). None of these professional medical societies are based in the Southern District of New York, let alone in the State of New York. In fact, the lead author of The ASAM Criteria is based in Davis, California, squarely within the jurisdiction of the Northern District. Bendat Decl. ¶¶ 4-5, Exs. 2-3.

**3. The interests of justice are satisfied by adjudication in the Northern District of California**

Because this putative nationwide class action is being brought against a corporation headquartered in the Northern District of California, implicates an industry—residential treatment centers—in which California has the most significant market share, and will not involve significant questions of foreign state law, it is in the interests of justice that it be adjudicated in the Northern District of California. Moreover, because the Northern District of California disposes of cases significantly faster than the Southern District of New York, the two fora are comparably congested, and there is no efficiency rationale supporting transfer.

**(a) The Southern District of New York has less interest in this dispute than the Northern District of California**

This case is being brought on behalf of a nationwide putative class against UBH, a San Francisco-based corporation, to remedy UBH's systemic mishandling of mental health and substance abuse treatment coverage claims. California has a significant interest in regulating the policies and procedures of a healthcare company headquartered in the state. Moreover, California is also home to the largest number of residential treatment centers (including two of the four used

by the named Plaintiffs). Accordingly, California also has a significant interest in ensuring that the treatment provided by such centers is adequately covered by health insurance.

By comparison, Defendants can point to only minimal New York interest in this suit. While three of the named Plaintiffs are New York residents, the others are not. And because this case is being brought on behalf of a putative nationwide class, no state has any greater interest in this case than any other as a result of Plaintiffs' residences. *C.f. Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("where there are hundreds of potential plaintiffs . . . the claim of any one plaintiff that a forum is appropriate merely because it is his home is considerably weakened."). While some of the Plaintiffs' plans have connections to New York, Plaintiffs do not challenge the terms of their plans, or the actions of their employers or formal plan administrators. Plaintiffs challenge only the actions of UBH in promulgating unreasonable coverage guidelines and in improperly applying those guidelines. These activities, even by Defendants' admission, did not occur in the Southern District of New York.

**(b) The Southern District of New York and the Northern District of California are comparably congested**

Nor would the Southern District of New York provide a faster or more efficient forum for this case. While Defendants are correct that the Northern District of California has a higher level of weighted and unweighted filings per judgeship, *see* Motion at 14, they neglect to mention that the Northern District of California appears to dispose of cases more quickly. Thus, despite the larger number of filings per judgeship, as of March 31, 2014, the Northern District of California had only 478 cases pending per judgeship, versus the Southern District of New York's 667. Bendat Decl. ¶ 6, Ex. 4. Similarly, in the preceding year, the Northern District of California had 548 case terminations per judgeship, versus the Southern District of New York's 430. *Id.* This suggests that cases move through the Northern District of California more than 25% faster than

through the Southern District of New York, which would erase the Southern District of New York's advantage in terms of filings per judgeship.

**(c) Interpretation of New York law does not play a significant role in this case**

This case overwhelmingly concerns application of federal law, rather than the law of any particular state. While Defendants point out that Plaintiff Muir's plan is governed, in part, by New York law, *see* Motion at 14-15, they do not explain why the Court would be required to interpret New York law in connection with this case, where Plaintiffs do not challenge the terms of their plans or the actions of their formal plan administrators. Moreover, since Muir's plan is completely self-funded, it is not at all subject to New York law, which is entirely preempted by ERISA. But most importantly, given that this case is brought by six named Plaintiffs, who were denied coverage under five different plans, on behalf of a nationwide class, it is difficult to see how the fact that one Plaintiff's plan might be governed by New York law seriously counsel in favor of transfer.

## IV. CONCLUSION

For the reasons discussed above, the Motion should be denied, and this action should proceed in the Northern District of California.

Dated: August 18, 2014

Respectfully submitted,

/s/ Meiram Bendat

PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (310) 564-0040
meiram@psych-appeal.org

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
1185 Avenue of the Americas, 31st Floor
New York, NY 10036
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

THE MAUL FIRM, P.C.
Anthony F. Maul (subject to *pro hac vice* admission)
68 Jay Street, Suite 201
Brooklyn, NY 11201
Tel: (646) 263-5780
Fax: (866) 488-7936
afmaul@maulfirm.com

*Attorneys for Plaintiffs*