Meiram Bendat (Cal. Bar No. 198884)
PSYCH-APPEAL, INC.
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (310) 564-0040
meiram@psych-appeal.org

D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
1185 Avenue of the Americas, 31st Floor
New York, NY 10036
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs*
*(Additional Counsel on Signature Page)*

**UNITED STATED DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DAVID AND NATASHA WIT, on behalf of themselves and all others similarly situated, BRIAN MUIR, on his own behalf and on behalf of all others similarly situated, BRANDT PFEIFER, on behalf of the Estate of his deceased wife, Lauralee Pfeifer, and all others similarly situated, LORI FLANZRAICH, on behalf of her daughter Casey Flanzraich and all others similarly situated, and CECILIA HOLDNAK, on behalf of herself, her daughter Emily Holdnak, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hearing Date: November 19, 2014<br>Time: 9:30 A.M.<br>Judge: Hon. Joseph C. Spero<br>Courtroom: G<br>Action Filed: May 21, 2014 |

## TABLE OF CONTENTS


Page

INTRODUCTION ........ 1

ISSUES TO BE DECIDED ........ 2

STATEMENT OF FACTS ........ 2

ARGUMENT ........ 4

I. ERISA Unequivocally Provides a Remedy for UBH's Fiduciary Breaches ........ 5

A. The Supreme Court's decision in *Varity* makes clear that, combined, §§ 502(a)(1)(B) and (a)(3) provide remedies for all fiduciary breaches ........ 5

B. The Supreme Court's decision in *Harris Trust* makes clear that claims under §§ 502(a)(1)(B) and (a)(3) reach all ERISA fiduciaries ........ 6

II. UBH's Promulgation of Unduly Restrictive Coverage Guidelines is Independently Actionable Under ERISA § 502(a)(1)(B) ........ 7

III. UBH is the Proper Defendant under ERISA § 502(a)(1)(B) ........ 9

A. Under Controlling Supreme Court and Ninth Circuit precedent, a claims administrator like UBH can be liable under § 502(a)(1)(B) ........ 10

B. Defendant's scant contrary authority is inapplicable because Plaintiffs do not seek benefit payments from UBH ........ 13

C. UBH is the logical defendant where UBH's policies and procedures are at issue ........ 14

IV. Plaintiffs' Claims under ERISA § 502(a)(3) are not Duplicative ........ 15

A. Certain of Plaintiffs' legal theories may only be available under § 502(a)(3) ........ 17

B. Certain of the relief Plaintiffs seek may only be available under § 502(a)(3) ........ 18

C. Dismissal of § 502(a)(3) claims as duplicative is generally inappropriate at the pleading stage ........ 21

V. Plaintiffs Sufficiently Pled their Entitlement to a Surcharge and Other Appropriate Equitable Relief ........ 22

CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**Page No(s)**

**Cases**


*A.A., ex rel. J.A. v. Blue Cross & Blue Shield of Illinois*,
2014 WL 910144 (W.D. Wash. Mar. 7, 2014) ........ 21

*Allbaugh v. Cal. Field Ironworkers Pension Trust*,
2014 WL 2112934 (D. Nev. May 20, 2014) ........ 21

*Angel Jet Servs., LLC v. Raytheon Health Benefits Plan*,
2011 WL 744917 (D. Ariz. Feb. 25, 2011) ........ 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 5

*Black v. Long Term Disability Ins.*,
373 F. Supp. 2d 897 (E.D. Wis. 2005) ........ 16

*Bowles v. Reade*,
198 F.3d 752 (9th Cir. 1999) ........ 20

*Brady v. United of Omaha Life Ins. Co.*,
902 F. Supp. 2d 1274 (N.D. Cal. 2012) ........ 21

*Carver v. Lehman*,
558 F.3d 869 (9th Cir. 2009) ........ 24

*CIGNA Corp. v. Amara*,
131 S. Ct. 1866 (2011) ........ 23, 24

*Cline v. Indus. Maint. Eng'r & Contracting Co.*,
200 F.3d 1223 (9th Cir. 2000) ........ 20

*Conservation Force v. Salazar*,
646 F.3d 1240 (9th Cir. 2011) ........ 4

*Cox v. Allin Corp. Plan*,
2013 WL 1832647 (N.D. Cal. May 1, 2013) ........ 13

*Crummett v. Metro. Life Ins. Co.*,
2007 WL 2071704 (D.D.C. July 16, 2007) ........ 22

*Cyr v. Reliance Standard Life Ins. Co.*,
642 F.3d 1202 (9th Cir. 2011) ............................................................................ passim

*DeVito v. Aetna, Inc.*,
536 F. Supp. 2d 523 (D.N.J. 2008) ............................................................................ 22

*Echague v. Metro. Life Ins. Co.*,
2014 WL 2089331 (N.D. Cal. May 19, 2014) ............................................................ 13, 18

*Echague v. Metro. Life Ins. Co.*,
2014 WL 4180608 (N.D. Cal. Aug. 22, 2014) ............................................................ 24, 25

*Gabriel v. Alaska Elec. Pension Fund*,
755 F.3d 647 (9th Cir. 2014) ............................................................................ 23, 24, 25

*Gomez-Gonzalez v. Rural Opportunities, Inc.*,
626 F.3d 654 (1st Cir. 2010) ............................................................................ 11

*Gore v. El Paso Energy Corp. Long Term Disability Plan*,
477 F.3d 833 (6th Cir. 2007) ............................................................................ 16

*Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*,
530 U.S. 238 (2000) ............................................................................ passim

*Heffner v. Blue Cross & Blue Shield of Ala., Inc.*,
443 F.3d 1330 (11th Cir. 2006) ............................................................................ 11

*Hill v. Blue Cross & Blue Shield of Mich.*,
409 F.3d 710 (6th Cir. 2005) ............................................................................ 19

*In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*,
2005 WL 1972565 (D. Or. Aug. 15, 2005) ............................................................................ 21

*Johns v. Blue Cross Blue Shield of Mich.*,
2009 WL 646636 (E.D. Mich. Mar. 10, 2009) ............................................................................ 19

*Johnson v. Buckley*,
356 F.3d 1067 (9th Cir. 2004) ............................................................................ 20

*Larson v. United Healthcare Ins. Co.*,
723 F.3d 905 (7th Cir. 2013) ............................................................................ 13, 14, 20

*Lawson v. Consolidated Rail Corp.*,
1998 WL 651122 (E.D. Pa. Sept. 22, 1998) ............................................................................ 8

*Lehman v. Nelson*,
2014 WL 4540160 (W.D. Wash. Sept. 11, 2014) ............................................................................ 22

*LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*,
703 F.3d 835 (5th Cir. 2013) .......... 11

*Martin v. Aetna Life Ins. Co.*,
2014 WL 2009079 (E.D. Mo. May 16, 2014) .......... 22

*Massachusetts Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) .......... 8

*Pac. Shores Hosp. v. United Behavioral Health*,
2011 WL 6402435 (C.D. Cal. Dec. 19, 2011) .......... 12

*Pac. Shores Hosp. v. United Behavioral Health*,
764 F.3d 1030 (9th Cir. 2014) .......... 11, 12, 13, 14

*Reese v. BP Exploration (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) .......... 5

*Sconiers v. First Unum Life Ins. Co.*,
830 F. Supp. 2d 772 (N.D. Cal. 2011) .......... 18

*Sender v. Franklin Res., Inc.*,
931 F. Supp. 2d 959 (N.D. Cal. 2013) .......... 12, 13, 14, 20

*Silva v. Metro. Life Ins. Co.*,
762 F.3d 711 (8th Cir. 2014) .......... 16, 21

*Skinner v. Northrop Grumman Ret. Plan B*,
673 F.3d 1162 (9th Cir. 2012) .......... 25

*Smith v. Med. Benefit Adm'rs Grp., Inc.*,
639 F.3d 277 (7th Cir. 2011) .......... 20

*Standard Ins. Co. v. Morrison*,
584 F.3d 837 (9th Cir. 2009) .......... 9

*United States v. Ruiz*,
935 F.2d 1033 (9th Cir. 1991) .......... 24

*Varity Corp. v. Howe*,
516 U.S. 489 (1996) .......... passim

*Vincenzo v. Hewlett-Packard Co.*,
2013 WL 3327892 (N.D. Cal. June 28, 2013) .......... 13

*Wise v. Verizon Commc'ns Inc.*,
600 F.3d 1180 (9th Cir. 2010) .......... 20, 21

*Z.D., ex rel. J.D. v. Grp. Health Coop.*,
829 F. Supp. 2d 1009 (W.D. Wash. 2011)........................................................................ 20

*Zebrowski v. Evonik Degussa Corp. Admin. Comm.*,
2011 WL 767444 (E.D. Pa. Feb. 24, 2011) ....................................................................... 22

**Statutes**

ERISA § 409 ........................................................................................................................ 20

ERISA § 502(a)........................................................................................................... 6, 10, 16

ERISA § 502(a)(1) ................................................................................................................ 10

ERISA § 502(a)(1)(B)..................................................................................................... passim

ERISA § 502(a)(2) ........................................................................................................ 16, 21

ERISA § 502(a)(3) ......................................................................................................... passim

ERISA § 502(a)(3)(A) .................................................................................................. 17, 21

ERISA § 502(a)(3)(B)..................................................................................................... passim

ERISA § 502(d)(2)................................................................................................................ 11

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................................ 4

Fed. R. Civ. P. 8(a)(3)......................................................................................................... 16

**Treatises**

G. BOGERT & A. HESS, TRUSTS AND TRUSTEES § 861 (rev. 2d ed. 1995) .................................... 23

## INTRODUCTION

Defendant United Behavioral Health ("UBH") does not dispute that Plaintiffs sufficiently allege that they are ERISA beneficiaries and—because UBH was delegated sole responsibility for making mental health and substance abuse benefit determinations for Plaintiffs' health plans—that UBH is an ERISA fiduciary. Nor does Defendant dispute that Plaintiffs sufficiently allege that UBH owed Plaintiffs fiduciary duties, which it breached by promulgating unduly restrictive guidelines and relying on improper factors to deny Plaintiffs' residential treatment claims in order to advance its own financial interests and those of its corporate affiliates. Defendant also appears to recognize that ERISA was designed to protect beneficiaries and that it does so, in part, by providing two broadly-worded private rights of action: §§ 502(a)(1)(B) and 502(a)(3). These concessions should moot Defendant's Motion to Dismiss (the "Motion").

Yet Defendant maintains that all of Plaintiffs' ERISA claims should be dismissed, on the theory that ERISA provides no way to hold UBH accountable for its misconduct. Defendant's Motion rests on three dubious contentions: (1) that UBH's promulgation of improper coverage determination guidelines cannot be independently challenged under ERISA § 502(a)(1)(B); (2) that UBH cannot be sued under § 502(a)(1)(B) *at all*, because it "merely" adjudicates Plaintiffs' benefit claims and does not pay benefits from its own assets, and (3) that UBH cannot be sued under § 502(a)(3) either, because Plaintiffs may only bring claims under § 502(a)(1)(B). Through this trifecta, UBH invites this Court to introduce a perverse new concept to ERISA: that the fiduciary that fully controls benefit determinations is immune from suits challenging its fiduciary breaches in connection with those determinations. ERISA's statutory text, controlling precedent interpreting that text, and the trust law that underpins ERISA all soundly reject that result.

Plaintiffs have sufficiently pled their claims and none of Plaintiffs' four counts should be dismissed without the benefit of discovery. More fundamentally, Plaintiffs are certainly entitled to sue UBH under at least one of ERISA's enforcement provisions. Plaintiffs seek to enjoin UBH's flawed internal benefit guidelines and to prevent UBH from relying on impermissible factors, including those guidelines, when making benefit determinations. The guidelines are solely developed and applied by UBH, making UBH the only logical defendant. Put simply, the logical respondent to a breach of fiduciary duty claim is the fiduciary that breached its duties. UBH is also the only entity against whom Plaintiffs can obtain all the relief they seek: no other entity can be compelled to change UBH's policies and no other entity can be required to pay a surcharge for UBH's fiduciary breaches. Accordingly, the Motion must be denied.

## ISSUES TO BE DECIDED

Whether Plaintiffs state a breach of fiduciary claim under ERISA § 502(a)(1)(B) based on Defendant's promulgation of unduly restrictive coverage guidelines.

Whether Plaintiffs may sue Defendant pursuant to ERISA § 502(a)(1)(B) because it is the claims administrator with ultimate authority to determine their benefits claims.

Whether Plaintiffs' breach of fiduciary duty claims under ERISA § 502(a)(3) should be dismissed because Plaintiffs may have an adequate remedy under § 502(a)(1)(B), notwithstanding the fact that Defendant also seeks to dismiss the (a)(1)(B) claims.

Whether the equitable remedy of surcharge may be "appropriate equitable relief" for Plaintiffs' claims under ERISA § 502(a)(3)(B).

## STATEMENT OF FACTS

As Plaintiffs' First Amended Complaint (Corrected) ("FAC") points out, mental illness and substance abuse are among the country's most serious and under-treated health problems. *See* FAC at 1. Over a quarter of Americans suffer from some type of mental illness, and mental

illness accounts for roughly a quarter of all years of life lost to disease. *Id.* Mental health and substance abuse issues are even more severe among adolescents: "[a]bout 11 percent of adolescents have a depressive disorder by age 18 and nearly three percent of 13–18 year olds suffer from severe eating disorders." *Id.* Yet many of those who desperately need treatment cannot obtain it due to lack of insurance coverage. *Id.*

Plaintiffs Natasha Wit (daughter of Plaintiff David Wit) and Brian Muir, Plaintiff Brandt Pfeifer's late wife (Lauralee), and Plaintiffs Lori Flanzraich and Cecilia Holdnak's daughters (Casey and Emily), were fortunate enough not to be in that group: each was the beneficiary of an employer-sponsored health plan covered by ERISA that included coverage for mental health and substance abuse treatment commensurate with generally accepted standards in the medical community. FAC ¶¶ 1, 2, 13. Accordingly, Plaintiffs and their relatives were entitled to coverage for residential care to treat their serious mental health and substance abuse problems, including: Natasha's "depression, anxiety, obsessive-compulsive behaviors, [] severe eating disorder" and "severe social isolation," FAC ¶ 43; Casey's substance abuse—characterized by drinking "up to a bottle of vodka at once"—and bipolar disorders, FAC ¶ 162; Emily's Major Depressive Disorder that lead to two suicide attempts after "years of unsuccessful outpatient mental health treatment," FAC ¶¶ 60–62, 65; Brian's "unremitting alcohol dependence" with "co-occurring depressive and anxiety disorders [and] suicidality" that led him to "dr[i]v[e] under the influence while texting suicide messages," FAC ¶¶ 141, 152; and the severe alcoholism that ultimately took Lauralee's life, FAC ¶ 132.

But despite that coverage, Plaintiffs' benefit claims were denied. Plaintiffs' plans had delegated all responsibility for determining their mental health and substance abuse treatment claims to UBH, making UBH the claims administrator with final authority over such claims, and

an ERISA fiduciary. FAC ¶¶ 3, 8. Instead of approving Plaintiffs' amply-supported benefit claims, UBH breached the fiduciary duties it owed to Plaintiffs in order to advance its own interests and those of its corporate affiliates. FAC ¶¶ 9, 13, 199. UBH's breach took two forms: promulgating "level of care" and "coverage determination" guidelines that were more restrictive than generally accepted standards in the medical community, and wrongfully denying benefit claims pursuant to those unduly restrictive guidelines and other improper factors. FAC ¶¶ 10–15. UBH's breaches have harmed Plaintiffs by denying them past benefits to which Plaintiffs were entitled, barring Plaintiffs' access to those benefits in the future, and decreasing the value of Plaintiffs' benefit plans. FAC ¶¶ 199, 200. The impact of that harm cannot be overstated. Shortly before her death, Lauralee Pfeifer "was deterred from seeking any further residential treatment due to UBH's previous benefits denials." FAC ¶ 131. Four other named Plaintiffs and their relatives—and untold class members—may face the same grim choice.

Accordingly, Plaintiffs seek class relief (1) declaring that UBH breached its fiduciary duties by developing unduly restrictive guidelines, (2) declaring that UBH's denials of Plaintiffs' benefits were improper, (3) enjoining UBH from continuing to use its current guidelines, (4) requiring UBH to adopt new guidelines that comport with generally accepted medical standards, (5) requiring UBH to reprocess Plaintiffs' claims pursuant to these new guidelines, (6) requiring UBH to process all future claims pursuant to these new guidelines, and (7) requiring UBH to pay a surcharge in connection with its breaches of fiduciary duty. FAC at 65–66.

## ARGUMENT

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quotation omitted). The Court must accept as true all well-pled factual allegations and must construe them in the light most

favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). The complaint need not contain detailed factual allegations, merely "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## I. ERISA Unequivocally Provides a Remedy for UBH's Fiduciary Breaches

Defendant's central thesis, that an ERISA fiduciary can be immune from suit under ERISA for its fiduciary breaches, is soundly refuted by both the broad text of ERISA's civil enforcement provisions and the Supreme Court's exegesis on their scope in *Varity Corporation v. Howe*, 516 U.S. 489 (1996), a case on which Defendant purports to rely, and *Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000), which Defendant perplexingly ignores.

### A. The Supreme Court's decision in *Varity* makes clear that, combined, §§ 502(a)(1)(B) and (a)(3) provide remedies for all fiduciary breaches

While Defendant pays lip service to *Varity* with selective quotations, *Varity* actually undermines the entire Motion. *Varity*'s central holding is that ERISA's guiding purpose and expansive enforcement language mandate a private right of action for beneficiaries against their fiduciaries, first under § 502(a)(1)(B) and second, to the extent (a)(1)(B) cannot provide full relief, under § 502(a)(3). *See* 516 U.S. at 512–15. *Varity* explicitly rejected the result Defendant advances in its Motion, because Congress did not intend to "immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy" under either (a)(1)(B) or (a)(3). *Id.* at 513.

The Court reached this unremarkable conclusion because ERISA's fundamental purpose is "to protect the interests of participants and beneficiaries by establishing standards of conduct, responsibility, and obligation for fiduciaries and providing for appropriate remedies and ready access to the Federal courts." *Id.* (quotation omitted). It then explained that the "overall structure" of ERISA's civil enforcement provision, § 502(a), ensures that beneficiaries will have a cause of action against fiduciaries under at least one of its subsections:

> Four of that section's six subsections focus upon specific areas, *i.e.*, the first (wrongful denial of benefits and information), . . . The language of the other two subsections, the third and the fifth, creates two "catchalls," providing "appropriate equitable relief" for "any" statutory violation. This structure suggests that these "catchall" provisions act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy.

*Id.* at 512. To that end, § 502(a)(1)(B), "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims, . . . one that runs directly to the injured beneficiary." *Id.* However, if for any reason a beneficiary cannot pursue an (a)(1)(B) claim against the fiduciary, the beneficiary can bring his claim under § 502(a)(3).[1] *Id.* at 513. Thus, *Varity* is squarely at odds with Defendant's assertion of total legal immunity.

### B. The Supreme Court's decision in *Harris Trust* makes clear that claims under §§ 502(a)(1)(B) and (a)(3) reach all ERISA fiduciaries

*Varity*'s expansive reading of ERISA's civil enforcement provisions is echoed in the Supreme Court's subsequent decision in *Harris Trust*. *Harris Trust* held that even a non-fiduciary could be liable under § 502(a)(3), which "makes no mention at all of which parties may

---

[1] The Court did explain, in *dicta*, that because § 502(a)(3)(B) "authorizes '*appropriate*' equitable relief . . . we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief." *Id.* at 515. The Court's expectation did not in any way dampen its holding "that granting a remedy [to plaintiffs aggrieved by a defendant's breach of its ERISA fiduciary duties] is consistent with the literal language of the statute, the Act's purposes, and pre-existing trust law." *Id.*

be proper defendants" and therefore "admits of no limit . . . on the universe of possible defendants." *Id.* at 246. That holding was driven by a contrast with "[o]ther provisions of ERISA, [which] do expressly address who may be a defendant," and the fact that Congress took care in (a)(3) to "delineat[e] the universe of *plaintiffs* who may bring certain civil actions." *Id.* at 246-47. This reasoning applies equally to § 502(a)(1)(B), which, like (a)(3), limits who may be plaintiffs but not defendants. "In light of Congress' precision in these respects, we would ordinarily assume that Congress' failure to specify proper defendants" in a particular enforcement provision was "intentional." *Id.* at 247.

Defendant's failure even to discuss *Harris Trust* in its Motion is telling. While *Harris Trust's* holding may technically be limited to § 502(a)(3), the entire statutory interpretation leading to that holding contradicts Defendant's contention that UBH cannot be sued under § 502(a)(1)(B), and demolishes the notion that UBH cannot be sued at all.

**II. UBH's Promulgation of Unduly Restrictive Coverage Guidelines is Independently Actionable Under ERISA § 502(a)(1)(B)**

A breach of ERISA fiduciary duties is actionable under § 502(a)(1)(B), independent of a specific denial of benefits resulting from the breach. A claimant may sue under § 502 (a)(1)(B) "to recover benefits due to him under the terms of his plan, *to enforce his rights under the terms of the plan,* or to *clarify his rights to future benefits under the terms of the plan*." (emphasis added). Thus, contrary to Defendant's suggestion, ERISA's explicit language does not limit the claim to one seeking "to recover benefits." Plaintiffs may maintain an independent § 502(a)(1)(B) claim against UBH for abusing its fiduciary authority to interpret plan terms by creating unduly burdensome coverage determination guidelines like those challenged in the FAC.

As the Supreme Court has stated, "ERISA specifically provides a remedy for breaches of fiduciary duty with respect to the *interpretation of plan documents* . . . that runs directly to the injured beneficiary[:] § 502(a)(1)(B)." *Varity Corp.*, 516 U.S. at 512 (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985)) (emphasis added).[2] Here, Plaintiffs allege that UBH developed coverage determination and level of care guidelines pursuant to authority given to it by the plans and specific language in the terms of those plans calling for the use of such guidelines. FAC ¶ 13. While Defendant invites the Court to ignore the "enforce plan terms" and "clarify rights" clauses of § 502(a)(1)(B), the plain text and its interpretation from the Supreme Court on down make clear that (a)(1)(B) addresses more than strictly the right to be paid benefits that are due. Count I, which challenges UBH's promulgation of unduly restrictive coverage guidelines, thus fits comfortably within (a)(1)(B).

Defendant asserts that UBH's "alleged breach of a fiduciary duty only harms Plaintiffs 'because their *claims* have been subjected to UBH's restrictive guidelines making it less likely that UBH will determine that their *claims* are covered.'" Mot. at 9 (quoting FAC ¶ 201) (emphasis Defendant's). But the same could be said of any ERISA claim brought by beneficiaries, whose primary concern is always to avoid being wrongfully denied medical treatment or forced to pay too much for that treatment. That does not transform every (a)(1)(B) fiduciary duty claim into a claim for "benefits due." Even if Plaintiffs' claims had never been denied, (a)(1)(B) would authorize an action to "clarify" their rights to future benefits by challenging UBH's adoption of guidelines that threaten those rights. Moreover, "[b]y

[2] *See also Lawson v. Consolidated Rail Corp.*, 1998 WL 651122, at *2 (E.D. Pa. Sept. 22, 1998) ("That plaintiff does not seek to recover benefits . . . is thus not dispositive" of his § 502(a)(1)(B) claim); *Angel Jet Servs., LLC v. Raytheon Health Benefits Plan*, 2011 WL 744917, at *3 (D. Ariz. Feb. 25, 2011) ("According to [§ 502(a)(1)(B)], no actual loss or damages are required to bring a claim under ERISA.").

promulgating improperly restrictive guidelines, UBH artificially decreased the number and value of covered claims." FAC ¶ 199. In other words, UBH's practices decrease the value of the plans independent of UBH's denial of any particular claim.

Notably, Defendant cannot identify a single decision holding that an improper interpretation of plan terms cannot be challenged independently under § 502(a)(1)(B). Indeed, the best Defendant can do is quote the Supreme Court's generic description of (a)(1)(B) as focusing on the "wrongful denial of benefits and information," *Varity Corp.*, 516 U.S. at 512, and the Ninth Circuit's explanation that (a)(1)(B) "provides an exclusive remedial scheme for insureds who have been denied benefits" and therefore preempts state law claims, *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 845 (9th Cir. 2009). *See* Mot. at 9. But as explained in Part I, above, *Varity* expanded the reach of ERISA enforcement, it did not narrow it. Indeed, if *Varity* has anything to say about Defendant's argument regarding Count I, it is that Plaintiffs must have recourse against unduly restrictive guidelines that violate their plan terms and ERISA. The fact that the Ninth Circuit held that § 502(a)(1)(B) preempts state law claims for benefits due is completely beside the point.

## III. UBH is the Proper Defendant under ERISA § 502(a)(1)(B)

Defendant does not dispute that Plaintiffs' plans delegated to UBH plenary authority to both develop internal coverage guidelines and to use those guidelines to make final coverage decisions. Nor does it dispute that Plaintiffs sufficiently allege that UBH is an ERISA fiduciary and that UBH breached its fiduciary duties by developing overly restrictive guidelines and improperly denying Plaintiffs' claims. These concessions effectively settle that UBH is a proper defendant with respect to Plaintiffs' claims under § 502(a)(1)(B).

Defendant, however, asks this Court to dismiss these claims in their entirety based on the assertion that § 502(a)(1)(B) limits the universe of potential defendants to those parties who bear

the ultimate financial responsibility to pay benefits claims (and, for some reason, plan administrators),[3] regardless of whether such parties had anything to do with benefits determinations or developing and implementing discriminatory policies used to make those determinations. Defendant advances this argument even though the statute's text contains no such limitation, as both the Supreme Court and the Ninth Circuit have recognized.

**A. Under Controlling Supreme Court and Ninth Circuit precedent, a claims administrator like UBH can be liable under § 502(a)(1)(B)**

As explained in Section I.B., above, *Harris Trust*, 530 U.S. 238, clearly stands for the proposition that the limitation on § 502(a)(1)(B) defendants that UBH seeks is contrary to the plain language of the statute. UBH conveniently omits any mention of *Harris Trust* and its explanation that the provisions of § 502(a) "admit[] of no limit . . . on the universe of possible defendants." *Id.* at 246. In *Cyr*, 642 F.3d 1202, the Ninth Circuit explicitly applied *Harris Trust* to § 502(a)(1)(B) and held that, because "[t]here are no limits stated anywhere in § [502](a) about who can be sued," there was "no reason to read a limitation into § [502](a)(1)(B) that the Supreme Court did not perceive in § [502](a)(3)." *Id.* at 1205–06. *Cyr* explicitly rejected the notion that a claims administrator is not a proper (a)(1)(B) defendant, holding that "potential

[3] Defendant repeatedly states that the proper § 502(a)(1)(B) defendant is the "plan or plan administrator," *see* Mot. at 11–12, presumably because many of the cases it cites take it as a given that plan administrators may be sued under (a)(1). But as the Ninth Circuit noted in *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011) (en banc), "the plan administrator can be an entity that has no authority to resolve benefit claims or any responsibility to pay them." That is precisely the case here, where mental health and substance abuse treatment claims are resolved by UBH and paid by the various plans. Defendant's repeated insistence that the plan administrators—who meet neither criterion of *Cyr*—are proper defendants underscores the wrongness of its position that UBH is not.

liability under [] § [502](a)(1)(B) *is not limited to a benefits plan or the plan administrator*." *Id.* at 1207 (emphasis added).[4]

Defendant attempts to distinguish *Cyr* because Reliance was responsible both for making the final determination regarding benefits and for paying those benefits, *see* Mot. at 11–13, going so far as to assert that *Cyr* affirmatively supports UBH's proposition that "to be a proper [(a)(1)(B) defendant], an entity must do more than merely decide claims." Mot. at 11. But *Cyr* said nothing of the sort. It held that because (a)(1)(B) did not limit the universe of proper defendants, Reliance's involvement in the benefit determinations at issue made it a logical defendant. Nothing in *Cyr* suggests that the Ninth Circuit would have reached a different conclusion if Reliance had not paid claims from its own assets.[5]

Defendant's misreading of *Cyr* is also belied by the Ninth Circuit's recent decision in *Pacific Shores Hospital v. United Behavioral Health*, 764 F.3d 1030 (9th Cir. 2014). In *Pacific*

---

[4] *Cyr* also noted that Reliance's argument was belied by § 502(d)(2), which necessarily implied that liability under (a)(1)(B) extended beyond plan sponsors and administrators. *See id.* at 1206-07 ("Section [502](d)(2) provides that '[a]ny money judgment under this subchapter against an employee benefit plan . . . shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter.' The 'unless' clause necessarily indicates that parties other than plans can be sued for money damages under other provisions of ERISA, such as § [502](a)(1)(B), as long as that party's individual liability is established.")

[5] This is consistent with the view of the other Circuits to have squarely considered whether a third party administrator may be sued under § 502(a)(1)(B). *See LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 845 (5th Cir. 2013) ("Where a TPA exercises control over a plan's benefits claims process, and exerts that control to deny a claim by incorrectly interpreting a plan in a way that amounts to an abuse of discretion, liability may attach.") (citing *Cyr*, 642 F.3d at 1207); *Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 665 (1st Cir. 2010) ("[T]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan [and if] an entity or person other than the named plan administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits") (citations omitted); *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1334 (11th Cir. 2006) (explaining that insurer who served as third party administrator for both fully insured and self-funded plans was a proper defendant for ERISA §§ 502(a)(1)(B) and 502(a)(3) claims).

*Shores*, also a § 502(a)(1)(B) action, the Ninth Circuit reversed a mental health benefits determination made by UBH after concluding that UBH had breached its fiduciary duty to the plaintiff. *Id.* at 1039, 44. As in this case, UBH served as the "third-party administrator responsible for reviewing mental health and substance abuse claims" for a self-insured plan (*i.e.*, UBH did not pay benefits from its own assets). *Id.* at 1032. Yet, the Ninth Circuit took it as a given that UBH was a proper § 502(a)(1)(B) defendant. The Ninth Circuit's opinion, and its ruling in Pacific Shores' favor, are irreconcilable with UBH's position here. Defendant makes no mention of *Pacific Shores* in its Motion, either. Then again, UBH is probably not eager to attract attention to its inconsistent litigation positions here and in *Pacific Shores*, where UBH ultimately admitted that it was a proper defendant.[6]

Nor does Defendant gain any traction from this Court's prior decisions regarding proper ERISA defendants. All three of the Northern District of California cases Defendant cites in support of its contention that a proper § 502(a)(1)(B) defendant "must do more than merely decide claims" actually *reject* that contention. Mot. at 11; *see Sender v. Franklin Res., Inc.*, 931 F. Supp. 2d 959, 973 (N.D. Cal. 2013) ("Thus, under *Cyr*, the question for a court is who is a logical defendant for a claim brought pursuant to § [502](a)(1)(B). In determining who is a logical defendant, a court considers who has authority to resolve benefit claims *or* who has responsibility to pay them.") (emphasis added); *Echague v. Metro. Life Ins. Co.*, 2014 WL

---

[6] *See Pac. Shores Hosp. v. United Behavioral Health*, 2011 WL 6402435, at *1 n.1 (C.D. Cal. Dec. 19, 2011) ("Until recently, a central issue in this case involved the question of whether UBH, as a third-party claims administrator with the final authority to make claims determinations but with no liability to fund even meritorious claims, was a proper defendant in an action under [§ 502(a)(1)(B)] following the Ninth Circuit's recent holding in *Cyr* . . . . UBH devoted considerable time to this argument in its Opening and Reply Trial Briefs, and at oral argument on the initial trial date, prompting the Court to continue the trial in order to allow the Plaintiff to add the Plan as a defendant. Incredibly, UBH then waited until the morning of the new trial date, before abandoning this objection and stipulating to its status as a proper defendant.").

2089331, at *6 (N.D. Cal. May 19, 2014) ("*Cyr* . . . held that an insurance carrier who determined benefits claims under the plan at issue was 'the logical' defendant under Section [502](a)(1)(B)"); *Vincenzo v. Hewlett-Packard Co.*, 2013 WL 3327892, at *18 (N.D. Cal. June 28, 2013) ("'A proper defendant in a § [502](a)(1)(B) claim is one who has authority to resolve benefit claims *or* who has responsibility to pay them.'") (quoting *Cox v. Allin Corp. Plan*, 2013 WL 1832647, at *4 (N.D. Cal. May 1, 2013) (emphasis added).

**B. Defendant's scant contrary authority is inapplicable because Plaintiffs do not seek benefit payments from UBH**

The only other authority Defendant can muster to support its wrong-headed argument consists of *dicta* from two decisions suggesting that a plaintiff cannot sue a claims administrator for unpaid benefits under (a)(1)(B) if the administrator is not otherwise required to pay claims from its own assets. Even if these decisions can be reconciled with *Harris Trust*, *Cyr*, and *Pacific Shores*, they are irrelevant. Plaintiffs do not seek an order requiring UBH to pay insurance benefits.

Defendant relies most heavily on this Court's dicta in *Sender*, 931 F. Supp. 2d 959, *see* Mot. at 11–12, but—as noted above—*Sender* recognized that an entity that "has authority to resolve benefit claims" is a proper § 502(a)(1)(B) defendant under *Cyr*. *Id.* at 973. It was only after that recognition that the Court concluded that even if an entity was responsible for resolving benefit claims, "it does not necessarily follow that it should have to pay benefits *out of its own pocket* simply because of this decisionmaking authority." *Id.* at 974. Because "Mr. Sender d[id] not assert a claim of individual liability for, *e.g.*, breach of fiduciary duty," and "he [wa]s only suing to collect benefits allegedly owed," the Court reasoned that the proper defendant was the entity responsible for paying those benefits. *Id.* Similarly, Defendant cites the Seventh Circuit's dicta in *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905 (7th Cir. 2013), *see* Mot. at 11,

where the court "impl[ied]" that "a cause of action for 'benefits due' must be brought against the party having the obligation to pay." 723 F.3d at 913.

While it is doubtful, in light of *Pacific Shores*, that an action to recover benefits due is limited to the party from whose assets the payment must be made, that limitation has no application here. Plaintiffs do not bring a suit to recover unpaid benefits from UBH, but instead seek injunctive, declaratory and other equitable relief for UBH's breaches of fiduciary duty. The operative question is not into whose coffers Plaintiffs may reach to recover improperly denied benefits, but who the Court can most readily enjoin to ensure that Plaintiffs' benefit claims will be evaluated correctly and who should answer for UBH's fiduciary breaches.[7] That entity is undoubtedly UBH.

### C. UBH is the logical defendant where UBH's policies and procedures are at issue

UBH is not just a permissible (a)(1)(B) defendant, it is the most logical one. This case solely concerns UBH's systematic breaches of its fiduciary duties, by implementing and applying improper standards for adjudicating Plaintiffs' benefit claims. There is no allegation that either the plans or the formally designated plan administrators had any involvement with these practices. Any relief that Plaintiffs could theoretically obtain against their plans or plan administrators would therefore be inadequate to remedy UBH's violations because it would not reach the source of the illegal conduct: the internal policies UBH applies across the board, which lie at the heart of UBH's system for processing claims. *Cf. Pac. Shores Hosp.*, 764 F.3d 1030

---

[7] While "benefits due" are not Plaintiffs' focus, and thus *Larson* and *Sender* are inapplicable, it is worth noting that discovery may show that UBH would pass the standard in those cases. Four of the named Plaintiffs sue pursuant to "fully insured" plans where benefits are ultimately paid by UBH's corporate affiliates, and even the other two Plaintiffs' plans may have "stop loss" arrangements that shift the risk to UBH's affiliates. FAC ¶ 9. Plaintiffs do not yet know what arrangements exist between UBH and its affiliates regarding payment of claims.

(exclusively discussing UBH's breach of fiduciary duty, and making no mention of the actions of the plan sponsor or plan administrator).

It is also doubtful that Plaintiffs could even secure the relief they seek by suing their plans or plan administrators. Those third parties are likely not even aware of the disputed policies UBH is applying, and could attempt to modify UBH's internal policies only indirectly, by applying external pressure on UBH to change them. *See, e.g., Cyr*, 642 F.3d at 1207 (noting that "the plan administrator . . . had nothing to do with denying Cyr's claim for increased benefits," and therefore the insurer who actually made the decision was "a logical defendant for an action by Cyr to . . . enforce her rights under the terms of the plan"). It is far from clear how the Court could fashion an injunction against Plaintiffs' individual employers that would result in UBH adopting proper guidelines and claims administration policies. It is even less clear how such unitary and comprehensive relief could result from dozens of cases against different defendants brought in different federal courts.

The inescapable—and wholly unsurprising—conclusion is that the logical § 502(a)(1)(B) defendant in a suit involving UBH's breach of its fiduciary duties, UBH's internal benefit guidelines, and UBH's claims administration process, is UBH itself.

**IV. Plaintiffs' Claims under ERISA § 502(a)(3) are not Duplicative**

There is no basis for dismissing Counts III and IV, which are brought under ERISA § 502(a)(3) "to the extent that the Court finds that the equitable relief sought to remedy Counts I and II [is] unavailable pursuant to [§ 502](a)(1)(B)." FAC ¶ 213. Defendant does not dispute that Plaintiffs plausibly allege that UBH breached its fiduciary duties or that § 502(a)(3) authorizes broader injunctive relief than (a)(1)(B). Nor does Defendant dispute that the relief Plaintiffs seek fits squarely within the language of (a)(3), which provides injunctive and "other appropriate equitable relief" for "any act or practice which violates any provision of [ERISA] subchapter [I]

or the terms of the plan[s].” Rather, Defendant seeks to dismiss the (a)(3) claims based solely on its assertion that they are “repackaged” (a)(1)(B) claims. *See* Mot. at 13–15.

Defendant’s position makes little sense, and is directly contradicted by *Varity*, 516 U.S. 489, on which Defendant purports to rely. As discussed in Part I, above, the gravamen of *Varity* is that § 502(a) does not permit ERISA fiduciaries to escape liability. Plaintiffs explicitly pled their (a)(3) claims in the alternative, and the Federal Rules permit Plaintiffs to plead alternate legal theories of recovery for the same factual allegations. *See*, *e.g.*, Fed. R. Civ. P. 8(a)(3). ERISA does not change the federal pleading regime. *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014) (“‘*Varity Corp.* did not deal with pleading but rather with relief’”) (quoting *Black v. Long Term Disability Ins.*, 373 F. Supp. 2d 897, 902–03 (E.D. Wis. 2005)). Plaintiffs’ § 502(a)(3) claims could only be considered “repackaged” or “duplicative” if Plaintiffs can pursue all of their legal theories *and* obtain all the relief they seek under § 502(a)(1)(B).

The Motion only reinforces the need for alternative pleading. Defendant seemingly forgets—in a bout of amnesia that passes just in time for Defendant to ask in its conclusion for all four counts to be dismissed—that the first half of its Motion insists that UBH *cannot be sued at all* under § 502(a)(1)(B).[8] Indeed, *Silva* recognized the inherent “unfairness” of UBH’s position and soundly rejected it. *See* 762 F.3d at 727 (“Defendants’ counsel argued that because

---

[8] To the extent that the Motion could be read to imply that Plaintiffs’ (a)(3) claims are “duplicative” of (a)(1)(B) claims that Plaintiffs could theoretically bring against the plans or plan administrators, that argument must fail. Defendant does not brief that argument, and cites no authority for the proposition that an (a)(3) claim can be dismissed as duplicative when the plaintiff has no other cause of action available under (a)(1)(B) *against the same defendant*.

On the other hand, in *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833 (6th Cir. 2007), the court specifically permitted plaintiff to bring an (a)(3) claim against the plan administrator because his (a)(1)(B) claim apparently only applied to his plan manager. *See id.* at 841 (“Assuming that he could not seek relief from [the plan administrator] pursuant to § [502](a)(1)(B) or § [502](a)(2) . . . , Gore’s only remedy against [the plan administrator] would be under § [502](a)(3).”). This was true even though the (a)(1)(B) claim against the plan manager would have fully remedied his injury had it been resolved in his favor. *Id.*

Silva has a claim under § [502](a)(1)(B), albeit, according to Defendants, not a successful one, he is barred from asserting a claim under § [502](a)(3). Defendants' argument illustrates the unfairness of their position."). Because UBH's liability under (a)(1)(B) is in dispute, dismissal of the (a)(3) claims at this early stage is unwarranted.

Even setting aside Defendant's claim to (a)(1)(B) immunity, the (a)(3) claims are not duplicative. First, Defendant argues that Plaintiffs cannot pursue an independent (a)(1)(B) claim for improper guidelines. Second, Plaintiffs primarily seek injunctive relief against UBH that § 502(a)(3)(A) *explicitly authorizes* and that may be unavailable under Defendant's reading of (a)(1)(B), and it is undisputed that the surcharge Plaintiffs seek is only available under (a)(3).[9] Neither Plaintiffs nor the Court should be forced—at the pleading stage and without the benefit of discovery—to choose between (a)(1)(B) and (a)(3).

### A. Certain of Plaintiffs' legal theories may only be available under § 502(a)(3)

In addition to contending that (a)(1)(B) immunizes UBH generally, Defendant also contends that improper benefit guidelines are not independently actionable under (a)(1)(B). But Defendant does not even attempt to make this argument under (a)(3), tacitly acknowledging that improper guidelines are independently actionable in an (a)(3) breach of fiduciary duty claim. This defeats Defendant's duplication argument. Plaintiffs cannot be forced to abandon a theory of liability under (a)(3) because they may have a *different* theory of liability available to them—especially one with possibly different relief—under (a)(1)(B).[10]

---

[9] Plaintiffs concede that a surcharge is not available pursuant to § 502(a)(1)(B), and consent to dismissal of the portion of their prayer for relief that seeks such relief for Claims I and II. A surcharge is only available pursuant to Claim IV.

[10] The Motion remains silent as to the impact of dismissing Count I—the (a)(1)(B) claim explicitly attacking UBH's guidelines—if Count II—attacking UBH's processing of benefits—survives. But Defendant's ultimate goal is transparent: to argue that Plaintiffs cannot seek reformation of the guidelines to remedy a claim for denial of benefits.

This Court has made it clear that (a)(3) claims based on different legal theories can coexist with (a)(1)(B) claims:

> In this district, under the right circumstances, courts have allowed (a)(3) claims to survive at the summary judgment stage, despite that plaintiff asserted an (a)(1)(B) claim. For example, in *Sconiers v. First Unum Life Ins. Co.*, 830 F. Supp. 2d 772, 777 (N.D. Cal. 2011), the court . . . concluded that both claims could proceed because "plaintiff seeks equitable relief under Section [502](a)(3) based on a different theory than her claim under Section [502](a)(1)(B) . . . ." *Id.* at 778.

*Echague*, 2014 WL 2089331, at *12. Should Defendant ultimately succeed in eliminating Count I, Plaintiffs would be in precisely the situation envisioned in *Sconiers* and *Echague*. Thus, just as in those cases, the (a)(3) claim must survive.

**B. Certain of the relief Plaintiffs seek may only be available under § 502(a)(3)**

Even more importantly, the (a)(3) claims cannot be "duplicative" because some—and, if Defendant is to be believed, *most*—of the relief Plaintiffs seek is unavailable under (a)(1)(B). Plaintiffs essentially seek three forms of relief: (1) an injunction requiring UBH to reform its guidelines, which Defendant claims is unavailable under (a)(1)(B); (2) an injunction requiring UBH to reprocess wrongfully denied claims, and (3) a surcharge or "other appropriate equitable relief." While Defendant would probably concede that the reprocessing remedy is available under (a)(1)(B), the reformation remedy may only be available for claims Defendant insists cannot be brought under (a)(1)(B), and a surcharge is indisputably available only under (a)(3).

First, if Defendant is correct that Plaintiffs may not sue UBH and directly attack its guidelines under § 502(a)(1)(B), that provision would not provide the "adequate relief for [their] injury" envisioned by *Varity*. *See* 516 U.S. at 515. Multiplicious (a)(1)(B) suits against plans and plan administrators could not force UBH to change its internal guidelines, and would run the risk of inconsistent results. There is a "difference between correcting the denial of individual claims on a beneficiary-by-beneficiary basis and altering . . . the methodology used to process claims for

all beneficiaries." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005). The Sixth Circuit explained that:

> [A]n award of benefits to a particular Program participant based on an improperly denied claim for emergency-medical-treatment expenses will not change the fact that [the claims administrator] is using an allegedly improper methodology for handling all of the Program's emergency-medical-treatment claims. Only injunctive relief of the type available under § [502](a)(3) will provide the complete relief sought by Plaintiffs by requiring [the claims administrator] to alter the manner in which it administers all the Program's claims for emergency-medical-treatment expenses.

*Id.*[11] Other courts, including within this Circuit, have agreed with *Hill* that a § 502(a)(3) claim against the claims administrator provides more complete relief than would be available in individual § 502(a)(1)(B) denial of benefit claims.

Similarly, the Seventh Circuit allowed claims under § 502(a)(3) against a claims administrator that are almost identical to what Plaintiffs seek here from UBH: a range of "meaningful declaratory and injunctive relief" including "requir[ing the claims administrator] to modify its preauthorization practices so as to bring them into conformity with the governing regulations as

---

[11] *Hill* also demonstrates why Defendant's reliance on *Johns v. Blue Cross Blue Shield of Michigan*, 2009 WL 646636 (E.D. Mich. Mar. 10, 2009), is misplaced. *Johns* recognized "that, when a plaintiff alleges that an ERISA fiduciary has breached its duties in some manner not fully redressable under § [502](a)(1)(B)—that is, when the plaintiff seeks redress for something other than, or in addition to, a denial or prospective denial of benefits—equitable relief under § [502](a)(3) remains available." *Id.* at *4. Applying that reasoning to the facts at hand, *Johns* held that because plaintiff requested, as relief under § 502(a)(3), a clarification that a particular autism treatment was covered by his plan—relief which was indisputably available pursuant to his § 502(a)(1)(B) claim—dismissal of the (a)(3) claim was appropriate with regard to that relief. *Id.* at *4–6. Notably, unlike Defendant, Blue Cross Blue Shield of Michigan was not also attempting to dismiss Johns' (a)(1)(B) claim.

But *Johns* explicitly distinguished *Hill*, where "the plaintiffs alleged that the defendant[] w[as] violating plan provisions that required specific claims-handling procedures, in addition to simply wrongfully denying them benefits." *Id.* at *5. That is precisely what Plaintiffs allege here: that UBH breached its fiduciary duties by promulgating guidelines and implementing claims handling procedures that violate ERISA and their plans. As *Hill* explained, in such cases, § 502(a)(3) is the proper avenue to fully address "the fact that [the claims administrator] is using an allegedly improper methodology for handling all . . . claims." 409 F.3d at 718.

well as its broader fiduciary obligations to plan participants." *Smith v. Med. Benefit Adm'rs Grp., Inc.*, 639 F.3d 277, 284 (7th Cir. 2011); *see also Z.D., ex rel. J.D. v. Grp. Health Coop.*, 829 F. Supp. 2d 1009, 1016 (W.D. Wash. 2011) ("Plaintiffs allege a claim broader than that which could be remedied under § [502](a)(1)(B). . . . Plaintiffs allege that 'GHC is systematically and uniformly failing to properly process claims and administer the Plans it insures.'").

Second, there is no dispute that Plaintiffs' surcharge remedy is only available under § 502(a)(3)(B). Indeed, this may be the only provision that permits any sort of money damages against UBH. While Defendant cites *Sender*, 931 F. Supp. 2d 959, and *Larson*, 723 F.3d 905, for the proposition that damages are unavailable under § 502(a)(1)(B) from a claims administrator that does not pay out claims, Defendant concedes that equitable monetary relief in the form of a "'surcharge' may be available . . . under ERISA § 502(a)(3)." Mot. at 16. In any event surcharge is the sole monetary relief Plaintiffs seek.

The remedies available to Plaintiffs exclusively under (a)(3) readily distinguish this case from the Ninth Circuit authority on which Defendant relies. Three of Defendant's cases, *Cline v. Industrial Maintenance Engineering & Contracting Co.*, 200 F.3d 1223 (9th Cir. 2000); *Johnson v. Buckley*, 356 F.3d 1067 (9th Cir. 2004); and *Bowles v. Reade*, 198 F.3d 752 (9th Cir. 1999), merely stand for the proposition that *Varity* prohibits duplicative *recovery* under (a)(3) when plaintiff has an adequate recovery under a more specific provision of ERISA, and do not discourage pleading (a)(1)(B) and (a)(3) counts in the alternative. The fourth, *Wise v. Verizon Communications Inc.*, 600 F.3d 1180 (9th Cir. 2010), involved an (a)(3) claim seeking a compensatory award for denied benefits and removal of the plan administrator. *Id.* at 1190. The Court held that because removal of the plan administrator was explicitly provided for in § 409 and § 502(a)(2), and compensatory damages were unavailable under § 502(a)(3), the (a)(3) claim

was properly dismissed. *Id.* Here, in contrast, Plaintiffs seek injunctions and surcharge—the quintessential § 502(a)(3)(A) and (a)(3)(B) remedies—not an award of benefits.[12]

### C. Dismissal of § 502(a)(3) claims as duplicative is generally inappropriate at the pleading stage

Especially in light of the foregoing, the Court should not choose, or force Plaintiffs to choose, between (a)(1)(B) and (a)(3) at the pleading stage. "At the motion to dismiss stage, [] it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative, rather than alternative, and determine if one or both could provide adequate relief." *Silva*, 762 F.3d at 727. Absent discovery into how UBH promulgates and applies its guidelines, and how UBH adjudicates benefit claims, it is simply not possible to determine which provision provides "adequate" relief. Accordingly, a number of courts in this Circuit have found that alternative claims for relief under § 502(a)(3) may not be dismissed at the pleading stage. *See, e.g., Allbaugh v. Cal. Field Ironworkers Pension Trust*, 2014 WL 2112934, at *6 (D. Nev. May 20, 2014) ("[A]t the pleading stage, a plaintiff may advance multiple, alternative, and even contradictory theories of liability [under ERISA]."); *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*, 2005 WL 1972565, at *3 (D. Or. Aug. 15, 2005) ("Defendants respond that plaintiffs are not entitled to relief under § [502](a)(3) because alternative remedies exist . . . . [including] recovery of allegedly lost plan benefits (§ [502](a)(1)(B)). While other remedies ultimately may exist and be appropriate, the pleading stage is not the proper stage at which to make that determination."); *cf. A.A., ex rel. J.A. v. Blue Cross & Blue Shield of Illinois*, 2014 WL 910144, at *11 (W.D. Wash. Mar. 7, 2014) ("Dismissal of a Section 502(a)(3) claim is appropriate *at the summary judgment stage where a*

---

[12] For the same reason, Defendant's reliance on *Brady v. United of Omaha Life Ins. Co.*, 902 F. Supp. 2d 1274 (N.D. Cal. 2012), is also misplaced. There, plaintiff's (a)(3) claim merely sought "a declaration as to her entitlement to future benefits," which is explicitly authorized under (a)(1)(B). *Id.* at 1285.

*plaintiff has asserted, and obtained relief for,* a claim under Section 502(a)(1)(B).") (emphasis added); *Lehman v. Nelson*, 2014 WL 4540160, at *11 (W.D. Wash. Sept. 11, 2014) ("As Plaintiff has *asserted and prevailed* on a claim for benefits, Plaintiff's claim for summary judgment on his [§ 502(a)(3)] Cause of Action is denied.") (emphasis added).[13]

**V. Plaintiffs Sufficiently Pled their Entitlement to a Surcharge and Other Appropriate Equitable Relief**

Plaintiffs are also plausibly entitled to a remedy under § 502(a)(3)(B), pursuant to Count IV, whether in the form of a surcharge or otherwise. As a threshold matter, Defendant misconstrues Count IV as seeking *only* surcharge. Mot. at 20 n.9. In fact, Count IV expressly seeks "appropriate equitable relief" to "remedy the[] harms" alleged in Count IV, without limiting that request to surcharge only. FAC ¶ 216. Although Plaintiffs do include a specific prayer for relief seeking a surcharge in relation to Count IV, *see* Requested Relief ¶ I, that paragraph does not state that a surcharge is the only remedy sought with respect to Count IV. To the contrary, Plaintiffs also requested that the Court "[g]rant[] such *other and further relief* as is just and proper." *Id.* ¶ K. Coupled with the broad remedy cited in Count IV itself, and construed in the light most favorable to Plaintiffs, the allegations do not purport to limit the relief Plaintiffs

---

[13] Numerous other courts have also held that dismissing § 502(a)(3) claims as duplicative at the pleading stage is generally inappropriate. *See, e.g., DeVito v. Aetna, Inc.*, 536 F. Supp. 2d 523, 534 (D.N.J. 2008) ("[C]laims under § [502](a)(3) are not properly dismissed at the motion to dismiss stage merely because a plaintiff has also brought a claim under § [502](a)(1)(B)"); *Zebrowski v. Evonik Degussa Corp. Admin. Comm.*, 2011 WL 767444, at *3 (E.D. Pa. Feb. 24, 2011) ("Before discovery, plaintiffs should not be forced to choose between their claims for benefits and their claims for equitable relief."); *Martin v. Aetna Life Ins. Co.*, 2014 WL 2009079, at *4 (E.D. Mo. May 16, 2014) ("declin[ing] to dismiss [(a)(3)] equitable claims as duplicative at this stage of the proceedings"). Even *Crummett v. Metro. Life Ins. Co.*, 2007 WL 2071704 (D.D.C. July 16, 2007), one of the cases on which Defendant relies, agreed "that dismissal of § 502(a)(3) claims should not automatically occur simply because a complaint also brings § 502(a)(1)(B) claims." *Id.* at *3. Rather, "[w]hether judgment may be entered on the pleadings is a question informed by the facts and injuries alleged (as well as by the remedies sought), and [only] where the pleadings make it apparent that the plaintiff has adequate remedies elsewhere, § 502(a)(3) claims may be dismissed." *Id.*

seek under § 502(a)(3)(B).

Defendant concedes that a "surcharge" is a form of equitable relief available under § 502(a)(3)(B). Mot. at 16. Defendant also does not dispute that Plaintiffs stated a claim for breach of fiduciary duty under § 502(a)(3) or that Plaintiffs sufficiently alleged that they suffered actual harm stemming from that breach. Under (a)(3)(B), an ERISA beneficiary injured by a claims administrator's breach of fiduciary duty is entitled to "appropriate equitable relief." As both the Supreme Court and the Ninth Circuit have held, such relief encompasses remedies traditionally available through courts of equity. *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011); *Gabriel v. Alaska Elec. Pension Fund*, 755 F.3d 647, 656 (9th Cir. 2014). Surcharge is one such equitable remedy, which "extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Amara*, 131 S. Ct. at 1880; *see also Gabriel*, 755 F.3d at 658 ("'appropriate equitable relief' also includes 'surcharge'").

That a surcharge might make a beneficiary whole does not transform the surcharge into "compensatory damages" or bar such relief under § 502(a)(3). As *Amara* explained:

> [T]he fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief. *Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment*. . . . Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a "surcharge," was "exclusively equitable."

131 S. Ct. at 1880 (citations omitted) (emphasis added). In equity, a court could "simply order[] a trust *or beneficiary* made whole following a trustee's breach of trust." *Id.* at 1881 (emphasis added). In doing so, the equity court would apply a "flexible approach," by "'mold[ing] the relief to protect the rights of the beneficiary according to the situation involved.'" *Id.* (quoting G. BOGERT & A. HESS, TRUSTS AND TRUSTEES § 861, at 4 (rev. 2d ed. 1995)). Section 502(a)(3) similarly accords courts the flexibility and discretion to provide appropriate relief to beneficiaries

according to the facts of the particular violation.

Defendant's main quibble with Plaintiffs' prayer for relief appears to concern the appropriate *measure* of surcharge in this case. But the highly fact-intensive dispute as to the amount of a surcharge or how it should be measured is not a matter that can be resolved on a motion to dismiss. Nor is the beneficiary's loss the only possible measure of an equitable surcharge. *See Amara*, 131 S. Ct. at 1880 (equitable "relief [could take] the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment."); *Gabriel*, 755 F.3d at 658 (same). To the extent that Defendant "profited" from its breach of fiduciary duty, in the form of administrative fees or other payments for its claims-handling services, the Court could order a surcharge. Plaintiffs are therefore entitled to discover whether UBH realized any gain from its fiduciary breaches. If it did, surcharge would be the sole remedy.

Ninth Circuit law is not to the contrary. Defendant relies heavily on the Ninth Circuit's statement in *Gabriel* that, in equity, a "trustee is not subject to surcharge for a breach of trust that results in no loss to the estate or profit to the trustee." 755 F.3d at 659 (internal quotation marks omitted). But *Gabriel* did not hold that a surcharge *cannot* be awarded to a beneficiary,[14] and reaffirmed the Ninth Circuit's earlier holding that "if a trustee breaches a fiduciary duty . . . the remedy of surcharge is available against the fiduciary '*for benefits it gained* through unjust

[14] To the extent that *Gabriel* seems to contradict the Supreme Court's ruling in *Amara*, this Court is not bound to follow it. Because a petition for rehearing *en banc* has been requested in *Gabriel*, the decision is not yet final. *See*, *e.g.*, *Carver v. Lehman*, 558 F.3d 869, 878 & n.16 (9th Cir. 2009) ("No opinion of this circuit becomes final until the mandate issues" and recognizing that reliance on a non-final decision is a "gamble"); *United States v. Ruiz*, 935 F.2d 1033, 1037 (9th Cir. 1991) (while a petition for rehearing was pending, decision "was not yet fixed as settled Ninth Circuit law"). *See also Echague v. Metro. Life Ins. Co.*, 2014 WL 4180608, at *1 (N.D. Cal. Aug. 22, 2014) (noting that panel decision in *Gabriel* was "issued over a strong dissent" and mandate had not issued).

enrichment *or for harm caused* as the result of its breach.'" *Gabriel*, 755 F.3d at 660 (quoting *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012)) (emphasis added). Thus, it is clear that, even in the Ninth Circuit, a surcharge may be appropriate under § 502(a)(3) to remedy a breach of fiduciary duties owed to an ERISA beneficiary.

In any event, *Gabriel* is distinguishable. In that case, which was decided after summary judgment, the Court found no breach of fiduciary duty and found that the plaintiff was not entitled to benefits under the plan. *Gabriel*, 755 F.3d at 665. Thus, *Gabriel's* ultimate rejection of make-whole relief stemmed from the fact that the plaintiff, who was *not a beneficiary* of the pension plan at issue, sought a surcharge *at the expense of the plan*. *Id.* That is not the case here, where Plaintiffs, proper plan beneficiaries, have alleged that they were unlawfully deprived of benefits to which they were entitled, and any surcharge would not deplete plan funds. *See generally Echague*, 2014 WL 4180608 (distinguishing *Gabriel* and denying motion to alter judgment that awarded beneficiary a surcharge equal to face value of wife's life insurance plan).

Because Plaintiffs have stated a breach of fiduciary duty claim and various remedies are available to them under § 502(a)(3)(B) as a matter of law, Plaintiffs are entitled to discovery to enable them to seek to prove their claims and entitlement to relief. Neither Plaintiffs' Claim IV nor their prayer for relief should be dismissed at this early stage.

## CONCLUSION

ERISA simply does not countenance the immunity that UBH seeks for its fiduciary breaches. If Plaintiffs can prove their allegations, they will be entitled to *all* the relief they seek. Whether that relief is ultimately available under § 502(a)(1)(B), § 502(a)(3), or both is not a question to be answered on the pleadings. For the reasons set forth herein, and for good cause shown, Defendant's motion to dismiss should be denied in its entirety.

Dated: October 24, 2014

Respectfully submitted,

/s/ D. Brian Hufford

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
1185 Avenue of the Americas, 31st Floor
New York, NY 10036
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

Caroline E. Reynolds (subject to *pro hac vice* admission)
Andrew Caridas (subject to *pro hac vice* admission)
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
acaridas@zuckerman.com
creynolds@zuckerman.com

PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (310) 564-0040
meiram@psych-appeal.org

THE MAUL FIRM, P.C.
Anthony F. Maul (admitted *pro hac vice*)
68 Jay Street, Suite 201
Brooklyn, NY 11201
Tel: (646) 263-5780
Fax: (866) 488-7936
afmaul@maulfirm.com

*Attorneys for Plaintiffs*