UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID WIT, et al.,

         Plaintiffs,

v.

UNITED BEHAVIORAL HEALTH,

         Defendant.

Case No.  14-cv-02346-JCS

**ORDER DENYING MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Re: Dkt. No. 43

## I.      INTRODUCTION

Plaintiffs in this putative class action allege that Defendant United Behavioral Health ("UBH") has wrongfully denied their claims and improperly limited the scope of their insurance coverage for mental health and substance abuse-related residential treatment.  Plaintiffs assert claims against UBH for breach of fiduciary duty, improper denial of benefits and equitable relief under the Employee Retirement Income Security Act ("ERISA").  UBH brings a Motion to Dismiss Pursuant to Rule 12(b)(6) ("the Motion"), which came on for hearing on Wednesday, November 19, 2014 at 9:30 a.m.  The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).  For the reasons stated below, the Motion is DENIED.

## II.     BACKGROUND

### A.    First Amended Complaint

In their First Amended Complaint (Corrected) ("FAC"), Plaintiffs allege that they (or their family members) were insured by employee-sponsored health insurance plans governed by ERISA ("Plans").  FAC ¶ 1.  Plaintiffs allege that each of these Plans covers, among other things, treatment for mental illness and substance use disorders, including residential care.  FAC ¶ 2.

United States District Court
Northern District of California

1    Plaintiffs allege that the Plans delegate to UBH the responsibility for determining the

2  availability of benefits in response to claims made by Plan members for mental health and

3  substance use-related services (a process also known as adjudicating benefits claims).  FAC ¶ 3.

4  According to Plaintiffs, UBH has developed "levels of care" ("LOCs") and "coverage

5  determination" guidelines ("CDGs"), which it instructs its representatives to use in adjudicating

6  mental healthcare claims.  FAC ¶¶ 3, 5.  Because of its central role in the mental health and

7  substance use-related claim adjudication process, Plaintiffs allege, UBH is an ERISA fiduciary as

8  defined by 29 U.S.C. § 1104(a) and therefore owes a fiduciary duty to Plan participants and

9  beneficiaries.  FAC ¶ 8.  In particular, Plaintiffs allege, "UBH had a fiduciary duty to Plaintiffs

10  (and to other members of plans administered by UBH) to promulgate criteria that faithfully ensure

11  that a particular level of care is both covered by the terms of Plaintiffs' Plans and consistent with

12  generally accepted standards of care." FAC ¶ 13.

13    Plaintiffs allege that UBH has an "inherent conflict of interest in its role as mental health

14  and substance abuse claims administrator" because "[e]very claim denied by UBH saves money

15  for UBH's corporate affiliates and artificially increases the profits of its parent entity."  FAC ¶ 9.

16  In particular, Plaintiffs allege that:

17    The Wit, Pfeifer, and Flanzraich plans are "fully-insured," meaning
    that health care benefits are paid by Defendant UBH's corporate
18    affiliates, UnitedHealthcare Insurance Company ("UHIC"),
    UnitedHealthcare Insurance Company of Illinois, Inc. ("UHICIL"),
19    and Oxford Insurance Company, Inc. ("Oxford"), respectively.
    Thus, every residential treatment claim denied by UBH allows one
20    of its affiliates to save money and artificially increases the profit of
    UHG. The same is largely true with respect to Muir and Holdnak's
21    plans, even though they are "self-funded." Although these plans
    require that benefits be paid, in the first instance, from the assets of
22    Muir and Holdnak's group plan sponsors, most self-funded plans
    have stop-loss provisions that obligate the insurer to pay benefits
23    that exceed a certain threshold. Thus, every claim UBH denies
    makes it less likely that such a stop-loss threshold will be crossed
24    and reduces the possible stop-loss liability of UBH's affiliates.

25  *Id.*

26    Plaintiffs allege that UBH improperly denied their claims for residential treatment even

27  though such treatment was medically appropriate and consistent with the terms of their Plans.  *See*

28  FAC ¶¶ 38-50 (alleging that UBH wrongfully denied coverage for Natasha Wit's residential

2

United States District Court
Northern District of California

treatment for "depression, anxiety, obsessive-compulsive behaviors, a severe eating disorder, medical complications . . ., failure of symptom self-management . . . , and a lack of psychosocial support" in violation of prevailing medical standards and UBH's own LOCs); ¶¶ 51-91 (alleging that UBH wrongfully denied coverage for Emily Holdnak's residential treatment for, *inter alia*, Major Depressive Order, obesity, cutting, and chronic suicidal ideation, following years of unsuccessful outpatient treatment and a suicide attempt, based on improper classification of residential treatment as "acute care," "thereby exempting chronic mental health conditions, irrespective of severity, from residential treatment coverage"); ¶¶ 115-133 (alleging UBH wrongfully denied coverage for residential substance use disorder treatment for Lauralee Pfeifer, who ultimately died in her own home of acute alcohol intoxication, despite high risk of relapse and in violation of UBH's own guidelines for treatment of substance use disorders); ¶¶ 134-154 (alleging UBH wrongfully denied coverage for Brian Muir's residential treatment for alcohol dependence, depressive and anxiety disorders, suicidality and a delayed traumatic reaction to childhood abuse based on criteria that were inconsistent with Muir's plan and with prevailing medical standards); ¶¶ 155-182 (alleging that UBH wrongfully denied coverage for residential treatment for Casey Flanzraich, who was diagnosed with Bipolar I Disorder, Oppositional Defiant Disorder, a parent-relational problem, asthma, fibromyalgia, and brittle bone disease, as well as a substance abuse disorder, where outpatient treatment had been unsuccessful, based on improper application of acute hospitalization criteria).

Plaintiffs also allege that UBH breached its fiduciary duty to them by "supplanting generally accepted treatment standards in the mental health field with standards that promote the self-serving, cost-cutting preferences of UBH and its corporate affiliates." FAC ¶ 13. According to Plaintiffs, "[b]y promulgating improperly restrictive guidelines, UBH artificially decreased the number and value of covered claims thereby benefiting its corporate affiliates at the expense of insureds." FAC ¶ 199. Plaintiffs further allege that they have been "harmed by UBH's breaches of fiduciary duty because their claims have been subjected to UBH's restrictive guidelines making it less likely that UBH will determine that their claims are covered." FAC ¶ 201.

Plaintiffs assert the following claims against UBH:

Claim One:  Violation of Fiduciary Obligations pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), based on allegation that "[d]espite the fact that the health insurance plans that insure Plaintiffs and the Class provide for insurance coverage for residential treatment, the fact that generally accepted standards of care are widely available and well-known to UBH, and that fact that UBH asserted that its guidelines were consistent with those that are generally accepted, UBH developed guidelines that are far more restrictive than those that are generally accepted."  FAC ¶ 198.

Plaintiffs request the following relief on this claim: 1) a declaration by  the Court to declare that these internal guidelines "were developed in violation of UBH's fiduciary duties;" 2) a permanent injunction "ordering UBH to stop utilizing the guidelines complained of [in the FAC], and instead adopt or develop guidelines that are consistent with those that are generally accepted and with the requirements of applicable state law; and 3) an order requiring UBH to pay a surcharge "in an amount equivalent to the revenue it generated from its corporate affiliates or the plans for providing mental health and substance abuse-related claims administration services with respect to claims filed by Plaintiffs and members of the Class, expenses that UBH's corporate affiliates saved due to UBH's wrongful denials, the out-of-pocket costs for residential treatment that Plaintiffs and members of the Class incurred following UBH's wrongful denials, and/or pre-judgment interest."  FAC at 65-66.

Claim Two:  Improper Denial of Benefits pursuant to ERISA § 502(a)(1)(B),  29 U.S.C. § 1132(a)(1)(B), based on allegation that "UBH denied the insurance claims for residential treatment submitted by Plaintiffs and other members the Class in violation of the terms of Plaintiffs' Plans and the insurance plans that insure members of the Class."  FAC  ¶ 205.  Plaintiffs alleges that "UBH denied these claims, in part, based on its restrictive internal guidelines that were developed in violation of its fiduciary duties [and] . . . in part, based on its systematic practice of: (i) improperly applying acute inpatient treatment criteria to residential treatment claims; (ii) ignoring the evidence presented to it; (iii) applying undisclosed additional criteria to benefit claims, such as a length of stay "benchmark"; and (iv) relying upon its restrictive CDGs even though CDGs (as opposed to LOCs) are not a recognized basis for denying claims under Plaintiffs' Plans."  Id.

United States District Court
Northern District of California

Plaintiffs request the following relief on this claim:  1) a declaration that UBH's denials of residential treatment coverage were improper; 2) an order requiring that UBH "reprocess claims for residential treatment that it previously denied (in whole or in part) pursuant to new guidelines that are consistent with those that are generally accepted and with the requirements of applicable state law" and that UBH "faithfully apply" these guidelines both in reprocessing previously denied claims and in processing future claims for residential treatment; and 3) an order requiring that UBH be required to pay the same surcharge requested as a remedy on Claim One.  FAC at 65-66.

Claim Three: Equitable Relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)(A), seeking equitable relief "only to the extent that the Court finds that the injunctive relief sought to remedy [Claims One and Two] are unavailable pursuant to [ERISA § 502(a)(1)(B),] 29 U.S.C. § 1132(a)(1)(B)."  FAC ¶ 209.  In this claim, Plaintiffs ask the Court to enjoin the acts and practices of UBH which allegedly breach its fiduciary duty and by which "Plaintiffs have been harmed and are likely to be harmed in the future."  FAC ¶¶ 210-211.  In particular, Plaintiffs request the following remedies on this claim to the extent they are unavailable on Claims One and Two: 1) a declaration by the Court to declare that the internal guidelines complained of in the FAC "were developed in violation of UBH's fiduciary duties;" 2) a permanent injunction "ordering UBH to stop utilizing the guidelines complained of [in the FAC], and instead adopt or develop guidelines that are consistent with those that are generally accepted and with the requirements of applicable state law;" 3) a declaration that UBH's denials of residential treatment coverage were improper; and 4) an order requiring that UBH "reprocess claims for residential treatment that it previously denied (in whole or in part) pursuant to new guidelines that are consistent with those that are generally accepted and with the requirements of applicable state law" and that UBH "faithfully apply" these guidelines both in reprocessing previously denied claims and in processing future claims for residential treatment.  FAC at 65-66.

Claim Four: Other Appropriate Equitable Relief pursuant to ERISA § 502(a)(3)(B),  29 U.S.C. § 1132(a)(3)(B), seeking equitable relief "only to the extent that the Court finds that the injunctive relief sought to remedy [Claims One and Two] are unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B)."  FAC ¶ 213. In this claim, Plaintiffs allege that they have been harmed by UBH's

breach of fiduciary duty and, that "by engaging in misconduct, UBH allowed its corporate affiliates to be unjustly enriched insofar as they were not required to pay benefit claims."  FAC ¶¶ 214-215.  As remedy on this claim, Plaintiffs request an order requiring that UBH pay the same surcharge discussed above to the extent that remedy is unavailable under Claims One and Two. FAC at 66.

### B.    Motion

UBH asks the Court to dismiss Claims One, Three and Four and to dismiss or strike Plaintiffs' request for a surcharge.[1]  Motion at 2-3. First, UBH argues that Claim One should be dismissed because ERISA does not permit Plaintiffs to assert a claim for breach of fiduciary duty under ERISA § 502(a)(1)(B) that is distinct from an actual claim for benefits.  Motion at 8-10. Because Claim One is based solely on UBH guidelines and not on denial of specific claims for coverage, UBH asserts, it should be dismissed with prejudice.  *Id*. at 9.  UBH notes in a footnote that it is "not aware of any authority for the proposition that a plaintiff can maintain a cause of action for breach of fiduciary duty under ERISA § 502(a)(1)(B) outside of the context of a challenge to a denial of benefits." *Id*. at 10 n. 2.  UBH goes on to list a series of cases in which challenges to guidelines and policies under ERISA were asserted "in the context of actual claim denials." *Id*. (citing *Reimann v. Anthem Ins. Companies, Inc*., 2008 WL 4810543, at *25 (S.D. Ind. Oct. 31, 2008); *Smith v. Medical Mutual of Ohio, Inc*., 2008 WL 780613, at *6-8 (S.D. Ohio Mar. 24, 2008) aff'd sub nom. *Smith v. Health Servs. of Coshocton*, 314 F. App'x 848 (6th Cir. 2009); *Hurst v. Siemens Corp. Grp. Ins*., 2014 WL 4230458, at *13 (E.D. Pa. Aug. 27, 2014); *Jon N. v. Blue Cross Blue Shield of Massachusetts*, 684 F. Supp. 2d 190, 199-201 (D.Mass. 2010); *Dorrough v. Dean Foods Co. Grp. Disability Plan*, 2005 WL 2122301, at *3–4 (N.D. Cal. Aug. 30, 2005)).

Second, UBH argues that Claims Three and Four, under ERISA § 502(a)(3) should be

---

[1] In the Motion, UBH also asked the Court to dismiss Claims One and Two on the ground that it is not a proper defendant on those claims.  In its Reply brief, however, UBH withdrew this argument in light of the Ninth Circuit's recent decision in *Spinedex Physical Therapy USA Inc., et al. v. United Healthcare of Ariz., et al.*, No. 12-17604, 2014 WL 5651325 (9th Cir. Nov. 5, 2014). Reply at 1 n. 1 (withdrawing "proper defendant arguments with respect to Plaintiffs' Counts I and II and reserv[ing] . . . right to raise the arguments at a later date based on an appropriate record").

United States District Court
Northern District of California

dismissed because they are "contingent" causes of action and are simply an improper attempt to "repackage their denial-of-benefit claims as an independent breach of fiduciary duty claim like the plaintiff in *Johns v. Blue Cross Blue Shield of Michigan*, 2009 WL 646636 (E.D. Mich. Mar. 10, 2009)." *Id*. at 13.   In that case, UBH asserts,  the court found that a claim for breach of fiduciary duty under § 502(a)(3) based on a plan-wide policy of denying certain treatment as experimental was subject to dismissal because the plaintiff also challenged the denial of specific benefits on the basis of the same policy under § 502(a)(1)(B).  *Id*.   The court in *Johns* dismissed the § 502(a)(3) claim on the basis that any "breach of duty or of the plan [the defendant] might have committed by creating [the policy] . . . can be fully remedied under [ERISA § 502(a)(1)(B)], by ordering [the defendant] to pay over the benefits due, and by clarifying [the plaintiff's] and the putative class members' right to receive such benefits in the future." *Id*. (quoting *Johns*, 2009 WL 646636, at *4-5).  Similarly, in this case, UBH contends, no further equitable relief is appropriate under § 502(a)(3) beyond that which Plaintiffs may be awarded under § 502(a)(1)(B) and therefore, Claims Three and Four should be dismissed.  *Id*. at 13-14 (citing *Varity Corp. v. Howe*, 506 U.S. 489, 512 (1996); *Adams v. Anheuser-Busch Companies, Inc*., 2011 WL 1559793, at *7 (S.D. Ohio Apr. 25, 2011);  C*rummett v. Metro. Life Ins. Co*., 2007 WL 2071704, at *2 (D.D.C. July 16, 2007)).

Third, UBH argues that Claims Three and Four should be dismissed because § 502(a)(3) is only available where there is no adequate remedy under § 502(a)(1)(B).  *Id*. at 14-16.  For the reasons discussed above, UBH asserts there is an adequate remedy for the conduct at issue and therefore, the "catchall" provision of § 502(a)(3) does not apply.  *Id*. at 14 (citing *Varity*, 516 U.S. at 512; *Cline v. Indus. Maint. Eng'g & Contracting Co*., 200 F.3d 1223, 1229 (9th Cir. 2000); *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004); *Bowles v. Reade*, 198 F.3d 752, 760 (9th Cir. 1999)).

Finally, UBH argues that although a surcharge may be available under ERISA § 502(a)(3) to remedy harm to a plan or disgorgement of profit due to breach of fiduciary duty, the surcharge requested by Plaintiffs in this action is impermissible and therefore, Claim Four should be dismissed for failure to allege facts sufficient to support a cognizable legal theory.  *Id*. at 17-20.

United States District Court
Northern District of California

First, to the extent Plaintiffs seek a surcharge based on "expenses UBH's corporate affiliates saved" when they denied Plaintiffs' claims, UBH contends this is "nothing more than a request for the payment of the denied benefits," a remedy that is already available under § 502(a)(1)(B) and thus duplicative. *Id*. at 17.  Further, UBH asserts, this form of surcharge amounts to compensatory damages, which is not a type of relief that can be awarded under § 502(a)(3), according to UBH. *Id*. (citing *Gabriel v. Alaska Elec. Pension Fund*, 755 F.3d 647, 660 (9th Cir. 2014)).  In addition, § 502(a)(3) does not permit a surcharge to be imposed on a fiduciary for a breach of fiduciary duty that did not result in a loss to the plan or profits to the fiduciary, UBH contends.  *Id*. at 18 (citing *Gabriel*, 755 F.3d at 660). Also, UBH argues, Plaintiffs cannot obtain as a surcharge funds that UBH does not possess because it is a restitutionary remedy; because UBH does not possess the funds Plaintiffs paid to their providers for treatment, imposition of a surcharge would be improper. *Id*. (citing *Great-West. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)).

UBH also contends Plaintiffs are not entitled to a surcharge for the revenue UBH receives for its claims administration services. *Id*. at 18 (citing *Gabriel*, 755 F.3d at 660).  Again, UBH asserts a surcharge is available only where the breach of fiduciary duty resulted in a loss to the plan or profits to the fiduciary.  *Id*.  Further, UBH argues, the revenue for claims administration is not contingent on *how* the claim is adjudicated and therefore, this surcharge is unavailable because the alleged breach is not tied to the revenue at issue.  *Id*. at 18-19.

UBH also challenges Plaintiffs' request for prejudgment interest as a surcharge. *Id*. at 19. UBH recognizes that prejudgment interest may be awarded as a surcharge under § 502(a)(1)(B) but argues that it is only available when the defendant "unjustly 'profited' from the retention of the amounts that should have been paid." *Id*. (citing *Skretvedt v. El DuPont Demours*, 372 F.3d 193, 208-10 (3d Cir. 2004)).  Because Plaintiffs do not allege that UBH is the payor of benefits under any of Plaintiffs' Plans, its denial of Plaintiffs' claims has not resulted in any profit to UBH and therefore, by extension, prejudgment interest is not available.  *Id*.

## C.    Opposition[2]

Plaintiffs argue that they are entitled to assert a claim for breach of fiduciary duty that is distinct from their denial of benefits claim under ERISA § 502(a)(1)(B), that their claims under § 502(a)(3) are not duplicative of their claims under § 502(a)(1)(B) or otherwise impermissible, and that they have adequately pled their request for a surcharge.  Opposition at 1.

With respect to their claim for breach of fiduciary duty (Claim One), Plaintiffs argue they are entitled to assert a claim based on what they contend are overly restrictive coverage guidelines as a distinct claim (separate from their denial of benefits claim) because § 502(a)(1)(B) expressly permits a claimant to sue "to recover benefits due to him under the terms of his plan, *to enforce his rights under the terms of the plan*, or to *clarify his rights to future benefits under the terms of the plan*." *Id.* at 7 (quoting 29 U.S.C. § 502(a)(1)(B) (emphasis in Plaintiffs' brief) and citing *Lawson v. Consolidated Rail Corp.*, 1998 WL 651122, at *2 (E.D. Pa. Sept. 22, 1998); *Angel Jet Servs., LLC v. Raytheon Health Benefits Plan*, 2011 WL 744917, at *3 (D. Ariz. Feb. 25, 2011)).  In support of this position, Plaintiffs cite the Supreme Court's statement in *Varity* that "ERISA specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents . . . that runs directly to the injured beneficiary[:] § 502(a)(1)(B)." *Id.* at 8 (quoting *Varity*, 516 U.S. at 512). Plaintiffs assert that even if they were harmed by the alleged breach of fiduciary duty because their claims were denied, this does not mean a *separate* claim for breach of fiduciary duty challenging the guidelines used by UBH cannot be asserted as this could be said of virtually *all* ERISA claims.  *Id.* at 8.  Further, they argue, Plaintiffs could assert a claim for breach of fiduciary duty even if their claims had never been denied because § 502(a)(1)(B) would allow them to bring a claim to "clarify" their rights to future benefits.  *Id.*  Plaintiffs also point out that UBH has not cited any cases in which courts have held that a claim for breach of fiduciary duty based on an alleged improper interpretation of plan terms could not be asserted as a separate claim, independent from a denial of benefits claim, under § 502(a)(1)(B).  *Id.* at 9.

---

[2]Plaintiffs filed their Opposition brief before the Ninth Circuit issued its decision in *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz.,* and before UBH had withdrawn its proper defendants argument.  Thus, Plaintiffs devoted a significant portion of their brief to that issue. The Court omits those arguments in its summary of Plaintiffs' Opposition brief.

Plaintiffs also reject UBH's assertion that Claims Three and Four should be dismissed because they are duplicative of their claims under § 502(a)(1)(B). *Id*. at 5-22. Plaintiffs point to the fact that they explicitly pled Claims Three and Four "in the alternative" and that the Federal Rules expressly permit such pleading. *Id*. at 16 (citing Fed. R. Civ. P. 8(a)(3)). According to Plaintiffs, ERISA did not change the federal pleading requirements. *Id*. (citing *Silva v. Metro Life Ins. Co*., 726 F.3d 711, 726 (8th Cir. 2014)). In addition, Plaintiffs argue that their claims under § 502(a)(3) are not duplicative of the § 502(a)(1)(B) claims to the extent that UBH argues (and the Court could conclude) that § 502(a)(1) does not permit Plaintiffs to assert a free-standing claim for breach of fiduciary duty that is not based on the application of the guidelines to Plaintiffs' past claims for benefits. *Id*. at 17-18. Plaintiffs also assert that UBH "tacitly acknowledge[es] that improper guidelines are independently actionable in an (a)(3) breach of fiduciary duty claim." *Id*. at 17.

Plaintiffs further assert their claims under § 502(a)(3) are not duplicative because some of the relief requested under this provision may not be available under § 502(a)(1)(B). *Id*. at 18-21. In particular, to the extent Plaintiffs seek reformation of UBH's guidelines under § 502(a)(3)(A), § 502(a)(1)(B) may not provide the adequate relief envisioned in *Varity* because UBH contends Plaintiffs may not "sue UBH and directly attack its guidelines under § 502(a)(1)(B)."[3] *Id*. at 18 (citing *Varity*, 516 U.S. at 515). Plaintiffs further assert that the § 502(a)(3)(B) claim (Claim Four) is not duplicative because "there is no dispute that Plaintiffs' surcharge remedy is only available under § 502(a)(3)(B)." *Id*. at 20. According to Plaintiffs, § 502(a)(3)(B) is the only provision that permits "any sort of money damages against UBH." *Id*. Plaintiffs also argue that the Court should not make a determination as to whether Plaintiffs' claims are duplicative rather than alternative at the pleading stage of the case. *Id*. at 21-22.

Finally, Plaintiffs reject UBH's assertion that Claim Four should be dismissed because the only relief it seeks is a surcharge and a surcharge is unavailable under the facts pled in the FAC.

---

[3] At oral argument, UBH declined to stipulate that Plaintiffs may seek reformation of its guidelines under § 502(a)(1)(B), arguing, *inter alia*, that this is the type of equitable remedy that would only be available under § 502(a)(3), if it were available at all (which UBH asserts it is not).

10

United States District Court
Northern District of California

*Id.* at 22.  As a preliminary matter, Plaintiffs reject UBH's contention that a surcharge is the *only* form of relief requested in Claim Four, pointing out that in Claim Four they also requested that the Court grant "such other and further relief as is just and proper." *Id.*   Plaintiffs further contend that a surcharge is a traditional form of equitable relief that is available under § 502(a)(3)(B), as UBH concedes. *Id.* at 23.  To the extent UBH challenges the appropriate measure of equitable relief, Plaintiffs argue this is a question that is highly fact-intensive and should not be decided on a motion to dismiss under Rule 12(b)(6). *Id.* at 24.  Plaintiffs also reject UBH's assertion that the beneficiary's loss is the only possible measure of an equitable surcharge, as well as its reliance on the Ninth Circuit's decision in *Gabriel* in support of this position. *Id.* at 24.   According to Plaintiffs, in *Gabriel*, the Ninth Circuit recognized that "if a trustee breaches a fiduciary duty . . . the remedy of surcharge is available against the fiduciary '*for benefits it gained* through unjust enrichment *or for harm caused* as the result of its breach.'" *Id.* at 24-25 (quoting *Gabriel*, 755 F.3d at 660 (quoting *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012)) (emphasis added in Plaintiffs' brief)).  Thus, Plaintiffs assert, "it is clear that, even in the Ninth Circuit, a surcharge may be appropriate under § 502(a)(3) to remedy a breach of fiduciary duties owed to an ERISA beneficiary." *Id.* at 25.

### D.   Reply

In its Reply brief, UBH argues that Claim One, for breach of fiduciary duty, fails because it is not acting as a fiduciary when it merely *creates* internal guidelines (as opposed to applying those guidelines to make benefits determinations).  Reply at 3-4.  According to UBH, this is because UBH is not performing any discretionary task under the terms of a specific employee benefit plan under ERISA when it promulgates businesswide guidelines. *Id.* (citing *Plumb v. Fluid Pump Servs., Inc.*, 124 F.3d 849, 854 (7th Cir. 1997); *Pegram v. Herdrich*, 530 U.S. 211, 225-226 (2000); *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006)).  Plaintiffs further assert that the claim fails because Plaintiffs have not alleged any harm as a result of this alleged breach of fiduciary duty. *Id.* at 4-5.  In particular, the only harm Plaintiffs could have suffered, UBH asserts, was that which resulted from the actual application of UBH's internal guidelines in the adjudication of specific claims. *Id.*

UBH reiterates its assertion that Claims Three and Four should be dismissed because the remedies sought on these claims  were also requested under § 502(a)(1)(B) and therefore, are duplicative.  *Id*. at 6-11.  It also contends the surcharge claim fails for the reasons articulated in the Motion and asserts Plaintiffs have failed to distinguish *Gabriel*, which supports its position that the surcharge claim is inadequately pled and should be dismissed with prejudice.  *Id*. at 11-14.

## III.    ANALYSIS

### A.    Legal Standard under Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Under Rule 8(d)(2), "a party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Fed. R.Civ. P. 8(d)(2).  Rule 8(d)(3) permits a party to "state as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

### B.   ERISA Legal Framework

"ERISA protects employee pensions and other benefits by providing insurance . . . , specifying certain plan characteristics in detail  . . , and by setting forth certain general fiduciary duties applicable to the management of both pension and nonpension benefit plans." *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996)).   The basic purpose of ERISA is "to protect . . . the interests of participants . . . and . . . beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries . . . and . . . providing for appropriate remedies . . . and ready access to the Federal courts." *Id*. at 513 (quoting  ERISA § 2(b), 29 U.S.C. § 1001(b)).  The fiduciary duties established in ERISA "draw much of their content from the common law of trusts, the law that governed most benefit plans before ERISA's enactment." *Id*. at 496.  However, "trust law does not tell the entire story" because "ERISA's standards and procedural protections partly reflect a congressional determination that the common law of trusts did not offer completely satisfactory protection." *Id*. (citations omitted).  "Congress painted with a broad brush, expecting the federal courts to develop a 'federal common law of rights and obligations' interpreting ERISA's fiduciary standards." *Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042, 1047 (9th Cir.2000) (*en banc*) (citing *Varity*, 516 U.S. at 497).  In developing this common law, "courts may have to take account of competing congressional purposes, such as Congress' desire to offer employees enhanced protection for their benefits, on the one hand, and, on the other, its desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place." *Varity*, 516 U.S. at 497.

Pursuant to ERISA § 404(a)(1)(B), a "fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).  Section 3(21)(A) provides, in part, that "a person

United States District Court
Northern District of California

13

United States District Court
Northern District of California

is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management" of the plan or "has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).

The remedial provisions of ERISA are set forth in § 502, 29 U.S.C. § 1132.  Section 502(a) governs the initiation of a civil action and provides, in relevant part, as follows:

> A civil action may be brought–
>
> (1) by a participant or beneficiary–
>
> . . .
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under  the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> . . .
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

ERISA § 502(a)(1) & (3), 29 U.S.C. § 1132(a)(1) & (3).

### C.   *Varity Corporation v. Howe*

In *Varity*, the Supreme Court addressed the remedies fashioned by Congress in § 502(a).  In that case, the plaintiffs originally were participants in and beneficiaries of a self-funded employee welfare benefit plan that was administered by their employer, Varity.  516 U.S. at 492.  Through deliberate deception, Varity induced some of its employees to transfer to another division and voluntarily give up their old benefits plan in favor of a new one.  *Id*. at 493-494.  When the new division failed, these employees sought benefits that they would have been owed under the old plan, asserting that Varity had breached its fiduciary duty to them as the plan administrator.  *Id*. at 494.  The Court found that Varity was acting as a fiduciary when it engaged in communications with its employees about transferring to the new division, and that it breached its fiduciary duty in misrepresenting the facts.  *Id*. at 502-507.

The Court went on to address whether the plaintiffs could seek individual relief based on

Varity's breach of fiduciary duty.   The Court noted that "ERISA specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims that runs directly to the injured beneficiary[:] § 502(a)(1)(B)."  *Id.* at 512 (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985)).  That remedy was not available, however, because the plaintiffs in *Varity* were no longer members of the old plan and therefore, were not permitted to assert a claim under § 502(a)(1)(B).

The Court next addressed whether the plaintiffs could seek relief under § 502(a)(3).  To decide this question, the Court looked at all of the six subsections of § 502(a) to understand Congress's intent.  *Id.* at 507-515.  It found that equitable relief is "appropriate" within the meaning of § 502(a)(3) only when Congress has not "elsewhere provided adequate relief for a beneficiary's injury."  *Id*. *Id*.  The Court further found that the plaintiffs would have no remedy if they were not permitted to proceed under § 502(a)(3).  *Id*. The Court asked (rhetorically), "[w]hy should we not conclude that Congress provided yet other remedies for yet other breaches of other sorts of fiduciary obligations in another, 'catchall' remedial section?"  *Id*.   The Court further stated that it was "not aware of any ERISA-related purpose that denial of a remedy would serve."  *Id*. at 515.  Therefore, the Court concluded, the plaintiffs in Varity could assert a claim for breach of fiduciary duty under § 502(a)(3).  *Id.*

### D.   Whether Plaintiffs May Seek Reformation of UBH's Guidelines under Either § 502(a)(1)(B) or (a)(3)

UBH makes a two-pronged attack on Plaintiffs' claims seeking reformation of its guidelines, arguing that: 1) Plaintiffs' breach of fiduciary duty claim under § 502(a)(1)(B) fails because it is not tethered to any specific denial of benefits; and 2) Plaintiffs' request for reformation of the guidelines under § 502(a)(3)(A) fails because it is duplicative of Claim One.  In light of the fact-intensive nature of Plaintiffs' claims, and because the Court finds that *Varity* does not prohibit alternative pleading, the Court concludes these challenges should be addressed at a later stage of the case.

Under *Varity*, "when relief is available under section [§ 502(a)(1)], courts will not allow relief under [§ 502(a)(3)'s] 'catch-all provision.'" *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th

15

Cir. 2004) (citing *Varity*, 516 U.S. at 515; *Bowles v. Reade*, 198 F.3d 752, 759-60 (9th Cir.1999)). Thus, some courts have held that when it is clear from the pleadings that a claim under § 502(a)(3) is merely a "repackaged" denial of benefits claim that may be asserted under § 502(a)(1)(B), the former claim should be dismissed. *See, e.g., Crummett v. Metropolitan Life Ins. Co.,* 2007 WL 2071704, at *2 (D.D.C., 2007); *Zuckerman v. United of Omaha Life Ins. Co*., 2010 WL 2927694, at *5 (N.D. Ill., 2010). On the other hand, courts have recognized that *Varity* "did not go so far as to rule that the pleading of a [§ 502(a)(1)(B)] claim for recovery of denied benefits precluded the possibility of equitable relief under [§ 502(a)(3)]. *Ehrman v. Standard Ins. Co*., 2007 WL 1288465., at * 3 (N.D.Cal., May 02, 2007); *see also Silva v. Metropolitan Life Ins. Co*., 762 F.3d 711, 726 (8th Cir. 2014) ("*Varity* does not limit the number of ways a party can initially seek relief at the motion to dismiss stage").

Consequently, where "it is not clear . . . that [§ 502(a)(1)(B)] was intended by Congress to provide the sole form of relief for the systematic wrongful acts that Plaintiff alleges," courts have permitted claims under both § 502(a)(1)(B) and § 502(a)(3) to proceed beyond the pleading stage of the case. *Ehrman v. Standard Ins. Co*., 2007 WL 1288465., at * 5 (N.D.Cal., May 02, 2007); *see also Echague v. Metropolitan Life Insurance Company*, 2014 WL 2089331, at *12 (N.D.Cal., May 19, 2014) ("In this district, under the right circumstances, courts have allowed (a)(3) claims to survive at the summary judgment stage, despite that plaintiff asserted an (a)(1)(B) claim"). For example, in *Hill v. Blue Cross and Blue Shield of Michigan*, the Sixth Circuit reversed the district court's dismissal of a claim under § 502(a)(3) in a putative class action in which the plaintiffs alleged both that they had been improperly denied benefits *and* that the plan administrator was using an improper methodology in adjudicating claims. 409 F.3d at 717-718. The court reasoned as follows:

> In this case, an award of benefits to a particular Program participant based on an improperly denied claim for emergency-medical-treatment expenses will not change the fact that BCBSM is using an allegedly improper methodology for handling all of the Program's emergency-medical-treatment claims. Only injunctive relief of the type available under § 1132(a)(3) will provide the complete relief sought by Plaintiffs by requiring BCBSM to alter the manner in which it administers all the Program's claims for emergency-medical-treatment expenses.

16

1  *Id*. at 718.

2     In declining to resolve this issue on a motion to dismiss, courts have highlighted the

3  difficulty of determining at the pleading stage of the case whether claims under § 502(a)(1)(B) and

4  (a)(3) are, in fact, duplicative.  In *Silva*, for example, the court noted that  "[a]t the motion to

5  dismiss stage . . .it is difficult for a court to discern the intricacies of the plaintiff's claims to

6  determine if the claims are indeed duplicative, rather than alternative, and determine if one or both

7  could provide adequate relief."  762 F.3d at 727 (citations omitted).  The court further found that it

8  would be "unfair" to foreclose a claim based on § 502(a)(3) at the pleading stage on the basis that

9  Plaintiff asserted a viable claim under § 502(a)(1)(B) given that the plaintiffs advanced different

10  theories of liability in support of the two claims.  *Id*.

11     Here, Plaintiffs ask for an order not only that UBH reprocess the denied claims but also

12  that UBH systematically revise its guidelines and policies.  As in *Hill*, the latter remedy may (or

13  may not) exceed the scope of what is available under § 502(a)(1)(B).  In any event, it is not clear

14  from the allegations in the complaint that Plaintiffs' claim under § 502(a)(3) is merely a

15  "repackaged" denial of benefits claim. Therefore, the Court declines UBH's invitation to dismiss

16  Plaintiffs' claims under § 502(a)(1)(B) or (a)(3) on the pleadings on the basis that they are

17  duplicative and/or that the remedy Plaintiffs seek under one or the other provision is unavailable

18  as a matter of law.  Rather, this is an issue that is more appropriately resolved at a later stage of the

19  case, when the record has been developed.

20     **E.     Whether Plaintiffs Have Adequately Pled their Claim Seeking a Surcharge**

21     UBH asks the Court to dismiss Plaintiffs' claim seeking imposition of a surcharge under §

22  502(a)(3)(B).  UBH does not deny that a surcharge may constitute "appropriate equitable relief"

23  under § 502(a)(3)(B), but argues that in this case, the surcharge requested is unavailable because:

24  1) it constitutes compensatory damages; and 2) the specific measures of  the surcharge that are set

25  forth in the FAC fall outside the rule, set forth in *Gabriel*, that a surcharge is only available for a

26  breach of fiduciary duty if it resulted in a loss to the plan or profits to the fiduciary.  The Court

27  finds that the surcharge claim is sufficiently alleged.

28     In *CIGNA Corp. v. Amara*, the Supreme Court addressed the types of equitable relief that

United States District Court
Northern District of California

1    may be available under § 502(a)(3).  131 S.Ct. 1866, 1879-1880.   In *Amara*, defendant CIGNA

2    had replaced its pension plan with a new pension plan that afforded a lower level of benefits to its

3    employees without giving proper notice;  the trial court found after a bench trial that CIGNA had

4    misled its employees about the new plan and that its breach of fiduciary duty had cause "likely

5    harm."  *Id*. at 1870-1871.   The trial court "reformed the new plan and ordered CIGNA to pay

6    benefits accordingly."  *Id*. at 1871.  The Supreme Court held that the relief ordered by the trial

7    court, including the payment of benefits, was available under § 502(a)(3).  *Id*. at 1880.  The Court

8    explained that "appropriate equitable relief" in § 502(a)(3) refers to "those categories of relief that,

9    traditionally speaking ( i.e., prior to the merger of law and equity) were *typically* available in

10   equity."  *Id*.  at 1878 (quotations and internal citations omitted) (emphasis in original).  The Court

11   found that because CIGNA was a plan fiduciary, and therefore analogous to a trustee, the relief

12   ordered by the trial court was available under the equitable remedies of reformation, estoppel, and

13   surcharge.  *Id*. at 1879-1880. With respect to the surcharge remedy, the Court explained that:

14
15
16
17
18
     [T]he fact that this relief takes the form of a money payment does
     not remove it from the category of traditionally equitable relief.
     Equity courts possessed the power to provide relief in the form of
     monetary "compensation" for a loss resulting from a trustee's breach
     of duty, or to prevent the trustee's unjust enrichment. . . . Indeed,
     prior to the merger of law and equity this kind of monetary remedy
     against a trustee, sometimes called a "surcharge," was "exclusively
     equitable." . . . .The surcharge remedy extended to a breach of trust
     committed by a fiduciary encompassing any violation of a duty
     imposed upon that fiduciary.

19

20   *Id*. (citations omitted).

21        Plaintiffs contend the surcharge claim is adequately pled because it is undisputed that UBH

22   is a fiduciary and Plaintiffs have alleged actual harm as a result of UBH's alleged breach of

23   fiduciary duty, therefore giving rise to a plausible claim for a surcharge.  The Court agrees.  The

24   Court rejects UBH's assertion that the claim must be dismissed under *Gabriel* because the

25   surcharge remedy is limited to unjust enrichment by a trustee or loss to the plan.

26        First, judges in this district have declined to treat the *Gabriel* decision as binding because it

27   is not yet settled law.  *Zisk v. Gannett Company, Inc*., No. C014-00391 YGR, 2014 WL 5794652,

28   at * 4 (N.D. Cal. Nov. 6, 2014);  *Echague v. Metropolitan Life Ins. Co*., No. C-12-0640 WHO,

United States District Court
Northern District of California

18

2014 WL 4180608, at *1 (N.D. Cal. Aug. 22, 2014).  As Judge Orrick pointed out:

> A petition for rehearing or rehearing *en banc* [in *Gabriel*] has been requested. The panel opinion was issued over a strong dissent. The Department of Labor and other amici contend, among other arguments, that the panel's decision is in conflict with other Courts of Appeals. Those factors caution against relying on *Gabriel* as settled law.

2014 WL 4180608, at *1.

In *Zisk*, Judge Gonzales Rogers also found that the holding of *Gabriel* – "that an equitable surcharge remedy is only available to make the trust whole, *not* to make an individual beneficiary whole for his losses" – is at least difficult to harmonize with the Ninth Circuit's decision in *Skinner v. Northrop Grumman Retirement Plan B*, 673 F.3d 1162 (9th Cir. 2012).  *Zisk*, 2014 WL 5794652, at * 4.   In *Skinner*, which was decided after *Amara*, the Ninth Circuit expressly stated that "the beneficiary can pursue the remedy that will put the beneficiary in the position he or she would have attained but for the trustee's breach." 673 F.3d at 1167.  Although the court in *Skinner* rejected an award of compensatory damages as a surcharge remedy, it was "because the beneficiary plaintiffs did not establish reliance, not because such a remedy was limited to liability to the trust." *Zisk*, 2014 WL 5794652, at * 4 (citing *Skinner*, 673 F.3d at 1167).  Thus, in *Zisk*, Judge Gonzales Rogers denied the defendant's motion to dismiss a surcharge claim under § 502(a)(3) on the basis of *Gabriel,* citing the "weight of the Supreme Court and other authority, and the uncertainty surrounding the *Gabriel* decision." *Id.* at *5.  She noted that reliance on *Gabriel* at the pleading stage of the case "risks the improper preclusion, or at least significant delay in prosecution, of an otherwise viable claim." *Id.* at *4.  The Court finds the reasoning of *Zisk* to be persuasive and therefore declines to dismiss Plaintiffs' surcharge claim on the pleadings under the rule articulated in *Gabriel*.

The Court further concludes that even if *Gabriel* were settled law, it would not require dismissal of Plaintiffs' surcharge claim because that case is distinguishable from the facts here.  In *Gabriel*, the defendant pension plan administrator erroneously paid benefits to the plaintiff for several years, then terminated his benefits when it discovered that the plaintiff was not eligible to participate in the plan.  755 F.3d at 651-653.  Plaintiff brought claims under § 502(a)(1)(B) and

United States District Court
Northern District of California

(a)(3) seeking to recover past benefits and clarification of his right to future benefits and alleging the plan had breached its fiduciary duty to him. *Id.* at 653-654.  The court recognized "'appropriate equitable relief' . . .includes 'surcharge,' defined as 'the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment.'" *Id.* at 658 (quoting *Amara*, 131 S. Ct. at 1880 (citation omitted)). It went on to hold, however, that the plaintiff was not entitled to a surcharge because that remedy includes "only unjust enrichment and losses to the trust estate." *Id.* at 660.  The court reasoned that under traditional equity principles, "the beneficiary is entitled to restoration of the trust res, not to benefit at the expense of other beneficiaries." *Id.* at 665.  To the extent the plaintiff was asking for a surcharge in the amount of the benefits he would have received if he had been a plan participant, the surcharge would have "wrongfully depleted [the trust estate] by paying him benefits he [was] not eligible to receive under the Plan" rather than "restor[ing] the trust estate." *Id.*  Here, in contrast to *Gabriel*, Plaintiffs are plan beneficiaries and therefore an award of a surcharge would not "wrongfully deplete the trust." *See Echague*, 2014 WL 4180608, at *1 (distinguishing *Gabriel* on the basis that plaintiff seeking surcharge under § 502(a)(3) was a plan beneficiary).

Finally, even assuming *Gabriel* applies to the facts here, UBH's challenge to the surcharge claim involves fact-intensive inquiries that are more appropriately addressed at a later stage of the case, when a factual record has been developed.  For example, UBH contends it did not benefit from the denial of Plaintiffs' claims because claims were paid by UBH's "corporate affiliates." The question of whether UBH derived any benefit or profit from the denial of claims by its affiliates is a factual question, however.  Similarly, UBH's assertion that it did not profit from processing claims using the allegedly improper guidelines is a factual question that is not appropriate for judgment on the pleadings.

Therefore, the Court denies UBH's request for dismissal of Plaintiffs' claim under § 502(a)(3)(B).

**IV.     CONCLUSION**

For the reasons stated above, the Motion is DENIED.

**IT IS SO ORDERED.**

Dated:  November 20, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge