1  PSYCH-APPEAL, INC.
   Meiram Bendat (Cal. Bar No. 198884)
2  8560 West Sunset Boulevard, Suite 500
   West Hollywood, CA 90069
3  Tel: (310) 598-3690, x.101
   Fax: (888) 975-1957
4  mbendat@psych-appeal.com

5
   ZUCKERMAN SPAEDER LLP
6  D. Brian Hufford (admitted *pro hac vice*)
   Jason S. Cowart (admitted *pro hac vice*)
7  399 Park Avenue, 14th Floor
   New York, NY 10022
8  Tel: (212) 704-9600
   Fax: (212) 704-4256
9  dbhufford@zuckerman.com
   jcowart@zuckerman.com
10

11 Attorneys for Plaintiffs

12            UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
13              SAN FRANCISCO DIVISION

14
   DAVID AND NATASHA WIT, *et al.*,          Case No. 3:14-CV-02346-JCS
15                                           Action Filed:    May 21, 2014
            Plaintiffs,
16                                           **NOTICE OF MOTION AND MOTION TO**
        v.                                   **COMPEL DEFENDANT UNITED**
17                                           **BEHAVIORAL HEALTH TO PRODUCE**
                                             **DOCUMENTS IMPROPERLY REDACTED**
18 UNITED BEHAVIORAL HEALTH                  **OR WITHHELD AS PRIVILEGED;**
   (operating as OPTUMHEALTH                 **MEMORANDUM OF POINTS AND**
19 BEHAVIORAL SOLUTIONS),                    **AUTHORITIES IN SUPPORT THEREOF**

            Defendant.
20
21 GARY ALEXANDER, *et al.*,                 Case No. 3:14-CV-05337-JCS
                                             Action Filed:    December 4, 2014
22          Plaintiffs,

23      v.
                                             Date:            January 8, 2016
24 UNITED BEHAVIORAL HEALTH                  Time:            9:30 A.M.
   (operating as OPTUMHEALTH                 Judge:           Hon. Joseph C. Spero
25 BEHAVIORAL SOLUTIONS),                    Courtroom:       G

            Defendant.
26                                           **REDACTED VERSION OF DOCUMENT**
                                             **SOUGHT TO BE SEALED**
27

28
   PLS.' MOT. TO COMPEL; MEM. OF P&A IN SUPP.
   CASE NOS. 3:14-CV-02346-JCS; 3:14-CV-05337-JCS

                                                                        5107717.2

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

NOTICE OF MOTION AND MOTION TO COMPEL ........................................... 1

RELIEF REQUESTED.................................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................ 2

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 2

    I.      RELEVANT FACTS ............................................................................. 3

          A.     Procedural History ........................................................... 3

          B.     Documents in Dispute ..................................................... 5

    II.     ARGUMENT ........................................................................................ 6

          A.     UBH Has Failed to Prove that Most of the Documents Are Privileged At All ................................................................................................ 6

          B.     Even if Some of the Documents Are Privileged, They Must Be Produced to Plaintiffs Pursuant to the Fiduciary Exception ...................... 9

               1.     The fiduciary exception allows a beneficiary—as the true client—to view any legal advice his fiduciary obtains on his behalf ............................................................................. 9

               2.     The fiduciary exception entitles beneficiaries to see *all* legal advice the fiduciary receives about plan administration, and is not limited to documents concerning the specific benefit determination in dispute ............................................................ 12

               3.     There is no evidence that, with respect to these communications, UBH's legitimate interests were actually adverse to those of the beneficiaries of the plans it administers ........................................ 18

          C.     UBH should be ordered to produce in full each of the documents referenced in its privilege log, or, in the alternative, the Court should conduct *in camera* review to determine which documents must be produced .......................................................................... 22

CONCLUSION.................................................................................................. 23

CERTIFICATION PURSUANT TO FRCP 37(a)(1) AND LOCAL CIVIL RULE 37-1............ 23

# TABLE OF AUTHORITIES

Page

**Cases**

*Allen v. Honeywell Ret. Earnings Plan,*
    698 F. Supp. 2d 1197 (D. Ariz. 2010) ........................................................... 11, 20

*Bins v. Exxon Co. U.S.A.,*
    189 F.3d 929 (9th Cir. 1999) ...................................................................... 11

*Fischel v. Equitable Life Assurance,*
    191 F.R.D. 606 (N.D. Cal. 2000) ........................................................... passim

*Gundersen v. Metro. Life Ins. Co.,*
    No. 2:10-CV-50 DB, 2011 WL 487755 (D. Utah Feb. 7, 2011) ............................ 11, 14, 15

*In re Grand Jury Investigation,*
    974 F.2d 1068 (9th Cir. 1992) ........................................................ 6, 7, 22, 23

*In re Long Island Lighting Co.,*
    129 F.3d 268 (2d Cir. 1997) ...................................................................... 10

*Klein v. Nw. Mut. Life Ins. Co.,*
    806 F. Supp. 2d 1120 (S.D. Cal. 2011) ...................................................... 11, 12, 20

*Neathery v. Chevron Texaco Corp. Grp. Accident Policy No. OK826458,*
    No. 05CV1883-JM CAB, 2006 WL 4690828 (S.D. Cal. July 11, 2006) ........................... 20

*Oracle Am., Inc. v. Google Inc.,*
    No. C 10-03561 WHA, 2011 WL 5024457 (N.D. Cal. Oct. 20, 2011) ............................. 8

*Sizemore v. Pac. Gas & Elec. Ret. Plan,*
    952 F. Supp. 2d 894 (N.D. Cal. 2013) ...................................................... 11, 22

*Solis v. Food Emp'rs Labor Relations Ass'n,*
    644 F.3d 221 (4th Cir. 2011) .................................................................... 13

*Stephan v. Unum Life Ins. Co. of Am.,*
    697 F.3d 917 (9th Cir. 2012) ........................................................... 9, 12, 22

*United States v. ChevronTexaco Corp.,*
    241 F. Supp. 2d 1065 (N.D. Cal. 2002) ........................................................... 7

*United States v. Martin,*
    278 F.3d 988 (9th Cir. 2002), *as amended on denial of reh'g* (Mar. 13, 2002) ............ 6, 8

*United States v. Mett,*
    178 F.3d 1058 (9th Cir. 1999) ............................................................................ passim

*Weil v. Inv./Indicators, Research & Mgmt., Inc.,*
    647 F.2d 18 (9th Cir. 1981) ...................................................................................... 7

*Wildbur v. ARCO Chem. Co.,*
    974 F.2d 631 (5th Cir. 1992) .................................................................................. 10

**Statutes**

29 U.S.C. § 1024(b)(4) ........................................................................................... 10, 14

29 U.S.C. § 1104(a) ..................................................................................................... 12

29 U.S.C. § 1104(a)(1) ................................................................................................ 10

**Other Authorities**

DOL Advisory Op. 96-14A (July 31, 1996) ................................................................ 10

**Rules**

Fed. R. Civ. P. 26(b) .................................................................................................. 1, 7

Fed. R. Civ. P. 37(a) ...................................................................................................... 1

## NOTICE OF MOTION AND MOTION TO COMPEL

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 8, 2016 at 9:30 A.M., or as soon thereafter as this matter may be heard, in Courtroom G, 15th floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Joseph C. Spero, Plaintiffs David and Natasha Wit, Brian Muir, Brandt Pfeifer, Lori Flanzraich, Cecilia Holdnak, Gary Alexander, Corinna Klein, and David Haffner (collectively "Plaintiffs") in the above-captioned actions will and hereby do move to compel Defendant United Behavioral Health ("UBH") to produce in full all documents it has withheld from production or produced with redactions on attorney-client privilege grounds.

## RELIEF REQUESTED

Plaintiffs move the Court for an order requiring UBH, by January 8, 2016, to produce, without redactions, each and every document described on UBH's October 30, 2015 privilege log (which is attached to the accompanying Declaration of Caroline E. Reynolds "Reynolds Decl." as Exhibit F). In the alternative, Plaintiffs seek *in camera* inspection of all or a subset of the documents that UBH has redacted or withheld and an order requiring UBH to produce, by January 8, 2016, without redactions, each document the Court rules was improperly withheld.

Plaintiffs' motion is made pursuant to Federal Rules of Civil Procedure 26(b) and 37(a), Civil Local Rule 37-2, and the Court's instruction, issued orally at the November 13, 2015 status hearing, to file a formal motion to compel. Plaintiffs' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Caroline E. Reynolds and all exhibits thereto, all pleadings on file in the above-captioned matters, and such other support as may be presented to the Court.

## STATEMENT OF ISSUES TO BE DECIDED

Should UBH be required to produce the documents that it has improperly withheld or redacted by asserting the attorney-client privilege against beneficiaries of plans for which it is an ERISA fiduciary?

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant United Behavioral Health ("UBH") administers mental health and substance use disorder benefits under numerous ERISA welfare benefit plans, including each of the Plaintiffs' plans. In doing so, and as required by the terms of the plans, UBH determines whether the treatment for which benefits are sought is "medically necessary," as defined by generally accepted standards of mental health care. To facilitate such determinations, UBH develops and uses internal guidelines—most importantly, its level-of-care guidelines ("LOCs") and coverage determination guidelines ("CDGs."). One of Plaintiffs' key allegations in this lawsuit is that UBH, in violation of its fiduciary duties, developed and uses guidelines that are inconsistent with—and much more restrictive than—generally accepted standards of care.

The documents at issue in this discovery dispute go to the heart of Plaintiffs' claims. They are communications about UBH's guidelines—how and why UBH writes and revises them, what they mean, and how UBH applies them. The only reason UBH has withheld them is that it claims they are privileged—an assertion it fails to support in most cases. But even if the documents are privileged, the well-established "fiduciary exception" to the attorney-client privilege dictates that the beneficiaries of the plans UBH administers, including Plaintiffs, are the real clients when UBH obtains legal advice about how to carry out its plan-administration functions. Plaintiffs are within the privilege and UBH may not withhold the documents.

UBH claims that the exception does not apply to these documents because Plaintiffs are only entitled to information about how their own benefit claims were administered, and not about

UBH's company-wide policies or practices concerning claims administration that impact *all* benefit claims, including Plaintiffs'—an illogical assertion that turns both the exception and established ERISA law on their heads. UBH also argues that when it adopts, applies, or even discusses its guidelines, its interests are so adverse to the beneficiaries' interests that the fiduciary exception no longer applies. That argument fails because, as an ERISA fiduciary, UBH is bound to administer the plans *not* in its own interests, but in the beneficiaries' interests, and there is no evidence that these documents were prompted by the threat of actual litigation.

Because Plaintiffs are entitled to see the legal advice UBH obtained about plan administration matters, the Court should order UBH to produce the documents immediately.

## I.   RELEVANT FACTS

### A.   Procedural History

The present discovery dispute concerns documents Plaintiffs requested nearly a year ago. On December 8, 2014, Plaintiffs served document requests seeking UBH's internal communications about how it applies its guidelines to benefit claims. *See* Reynolds Decl., Ex. A. UBH objected to the requests, *see* Reynolds Decl., Ex. B, the parties conferred in person and by phone, and Plaintiffs agreed to narrow the requests in two ways. First, documents would be collected from 21 agreed-upon custodians, all of whom are UBH employees with the authority to deny claims based on medical necessity determinations. Second, the parties agreed on a set of search terms that were designed to identify discussions about how UBH's claims adjudicators are to use and apply the guidelines. *See* Reynolds Decl., Ex. C.

The parties agreed upon the custodians and search terms on May 29, 2015. UBH started producing the documents on August 11, 2015 and certified on October 7, 2015 that it had completed its production. Shortly after UBH began producing the documents, Plaintiffs noticed that UBH was redacting documents on the grounds of attorney-client privilege. Plaintiffs

objected to those redactions by letter dated August 21, 2015, and invoked the fiduciary exception to the privilege.  *See* Reynolds Decl., Ex. D (meet-and-confer correspondence, without attachments).  UBH responded to that letter on September 4, 2015, *see id.*, and the parties met and conferred in person on the issue on September 11, 2015.  At that time, UBH asserted a purely legal argument: that, as the purported "settlor" of the plans, UBH is not a fiduciary and therefore not subject to the exception.  Plaintiffs proposed that the parties seek an immediate ruling from the Court on that issue.  UBH instead requested additional time to prepare a privilege log, suggesting that it might narrow its privilege claims and that the log might permit the parties to discuss more concretely whether the fiduciary exception applies to particular documents.

UBH produced a privilege log three weeks later, on October 2, 2015.  *See* Reynolds Decl., Ex. E.  At that time, UBH's counsel orally notified Plaintiffs' counsel that none of the communications at issue were made in the purported capacity of a "settlor" of a plan.  Put simply, UBH abandoned its settlor argument with regard to these documents.  The log, however, continued to assert that these documents did not have to be produced based upon assertions that are highly suspect. Among other things, the log asserted UBH's grounds for ignoring the fiduciary exception in the disjunctive, making it impossible for Plaintiffs to discern UBH's theory for withholding each specific document.  More importantly, the limited information provided on the log strongly suggested that the fiduciary exception *does* apply to the documents UBH withheld.  Plaintiffs therefore objected to the log on October 14, 2015.  Reynolds Decl., Ex. D.  Two weeks after that, UBH produced a "revised" log, but it failed to make its reasons for asserting the fiduciary exception any more specific.  Reynolds Decl., Ex. F.

The parties discussed the issue in person on October 28, 2015.  At that point, the parties' impasse was clear, and the parties therefore raised the issue in their November 6, 2015 Joint Case

1  Management Statement.  Nevertheless, the parties also exchanged a third round of letters in a

2  further effort to resolve the dispute, but were unable to do so.  *See* Reynolds Decl., Ex. D.  At the

3  November 13, 2015 status hearing, the Court directed Plaintiffs to file a formal motion to

4  compel.

5      **B.      Documents in Dispute**

6          According to its privilege log, UBH has withheld or redacted a total of 182 documents.

7  The vast majority—115 documents—were produced with redactions.  Based on Plaintiffs'

8  review of the non-redacted content, it appears that the redacted content falls into nine categories:





The remaining 67 entries on the log concern documents UBH has withheld in its entirety. UBH does not have a supportable basis for withholding or redacting any of these documents.

## II.   ARGUMENT

### A.   UBH Has Failed to Prove that Most of the Documents Are Privileged At All.

As a threshold matter, the fiduciary exception to the privilege does not even come into play unless the documents UBH has redacted or withheld, in fact, contain privileged material. "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. . . . [T]he privilege is limited to only those disclosures—necessary to obtain informed legal advice— which might not have been made absent the privilege." *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992).  Significantly, "[t]he fact that a person is a lawyer does not make all communications with that person privileged."  *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002), *as amended on denial of reh'g* (Mar. 13, 2002).  Moreover, "[b]ecause it impedes full

and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).

As the party asserting the privilege, UBH bears the burden of proving that the privilege applies. *In re Grand Jury Investigation*, 974 F.2d at 1070. In particular, UBH must "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). UBH has failed to meet this burden with respect to most of the documents on its log.

███████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ Not only does the attorney-client privilege not apply to company policies drafted by non-lawyers, it also does not extend to business advice rendered by a lawyer. *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002). "In-house counsel may be involved intimately in the corporation's day to day business activities and frequently serve as integral players in business decisions or activities." *Id.* For this reason, courts in this district have required that with respect to "internal communications involving in-house counsel," the party asserting privilege must make a "clear showing" that the "primary purpose" of the communication was to obtain or provide legal advice. *Id.*; *see also Oracle Am.,*

*Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 5024457, at *7 (N.D. Cal. Oct. 20, 2011) (affirming "clear showing" standard for communications with in-house counsel).  Here, the mere inclusion of an in-house lawyer on an email chain—as is the case with a substantial number of UBH's redacted and withheld documents, *see* Reynolds Decl., Ex. I—is simply not enough to make a clear showing of privilege.

Numerous other entries on UBH's log also suffer from the same failure to demonstrate that the privilege applies.  *See* Reynolds Decl., Ex. I (chart identifying log numbers of documents for which UBH has failed to establish privilege).  Because UBH has failed to meet its burden with respect to any of these documents, the Court should order UBH immediately to produce the documents, without redactions.

**B.      Even if Some of the Documents Are Privileged, They Must Be Produced to Plaintiffs Pursuant to the Fiduciary Exception.**

Even if every document on UBH's log were privileged, Plaintiffs, as beneficiaries of plans administered by UBH, would still be entitled to receive them under the fiduciary exception to the attorney-client privilege.  There is no dispute that UBH is an ERISA fiduciary subject to the exception, nor is there any disagreement that Plaintiffs, as beneficiaries of plans administered by UBH, are entitled to invoke the exception.  UBH's only arguments against applying the exception have no merit.  Accordingly, the Court should order UBH to produce all of the documents it has redacted or withheld.

**1.      The fiduciary exception allows a beneficiary—as the true client—to view any legal advice his fiduciary obtains on his behalf.**

The Ninth Circuit has long recognized the fiduciary exception, and has held that the exception applies to fiduciaries administering ERISA plans.  As the Court explained in *United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir. 1999), "in the ERISA context, the fiduciary exception provides that an employer acting in the capacity of ERISA fiduciary is **disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration**." (internal quotation marks omitted, emphasis added).  The court later explicitly clarified that this principle applies to insurance companies acting as fiduciaries of ERISA plans. *See Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 932-33 (9th Cir. 2012).

In *Mett*, the court described the roots of the fiduciary exception and the rationales behind it, namely: (1) that a fiduciary has the duty to disclose to plan beneficiaries all information regarding plan administration; and (2) that, with respect to plan administration, the plan beneficiary is the true "client" in the attorney-client relationship because the fiduciary is only his representative.  178 F.3d at 1063.  With respect to the second rationale, the court explained:

> Understood in this fashion, the fiduciary exception is not an "exception" to the attorney-client privilege at all. Rather it merely reflects the fact that, at least as to advice regarding plan administration, a trustee [or, fiduciary] is not "the real client" and thus never enjoyed the privilege in the first place."

*Id.*[2]  In other words, when beneficiaries seek disclosure of the legal advice an ERISA fiduciary obtained with respect to plan administration, they are not piercing the privilege, they are *within* it.

The Ninth Circuit's explanation of the fiduciary exception's purposes and scope is entirely consistent with well-established ERISA law on the fiduciary's role.  An ERISA fiduciary is required by statute to "discharge [its] duties with respect to a plan **solely in the interest of the participants and beneficiaries**," not in its own interests.  29 U.S.C. § 1104(a)(1) (emphasis added).  ERISA fiduciaries are also mandated to disclose to plan beneficiaries a wide range of information about the administration of the plan —and, contrary to UBH's assertions, that obligation applies whether or not the beneficiary has received an adverse benefit determination.  *See, e.g.,* 29 U.S.C. § 1024(b)(4) (plan administrator required, "upon written request of any participant or beneficiary," to disclose, among other things, all "instruments under which the plan is . . . operated."); *see also* DOL Advisory Op. 96-14A (July 31, 1996) (Reynolds Decl., Ex. J) (opining that "plan participants and beneficiaries should have access to documents that directly affect their benefit entitlements under an employee benefit plan," including "any document or instrument that specifies procedures, formulas, methodologies, or schedules to be applied in determining or calculating a participant's or beneficiary's benefit entitlement . . . .");

---

[2] *See also, e.g., In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir. 1997) ("An ERISA fiduciary cannot use the attorney-client privilege to narrow the fiduciary obligation of disclosure owed to the plan beneficiaries." (cited with approval by the Ninth Circuit in *Mett*, 178 F.3d at 1063)); *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 645 (5th Cir. 1992) ("When an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator.").

*Fischel v. Equitable Life Assurance*, 191 F.R.D. 606, 610 n.3 (N.D. Cal. 2000) (noting "the

strong concern expressed by courts that the obligation to disclose full and accurate information to

plan beneficiaries regarding the administration of the plan is one of the paramount

responsibilities of an ERISA fiduciary." (citing *Bins v. Exxon Co. U.S.A.*, 189 F.3d 929, 934 (9th

Cir. 1999)).

To be sure, the fiduciary exception does not mean that a fiduciary may *never* assert the

privilege against a beneficiary.  The privilege "remains intact" when "a plan fiduciary retains

counsel in order to defend herself against the plan beneficiar[y] (or the government acting in

[her] stead) . . . ."  *Mett*, 178 F.3d at 1064.  Courts, however, do not vitiate the fiduciary

exception based on the mere "remote possibility" of litigation.  *See, e.g., Klein v. Nw. Mut. Life

Ins. Co.*, 806 F. Supp. 2d 1120, 1132 (S.D. Cal. 2011); *see also Allen v. Honeywell Ret. Earnings

Plan,* 698 F. Supp. 2d 1197, 1201-02 (D. Ariz. 2010) ("If the mere prospect of litigation were

enough to overcome the fiduciary exception, the administrative claim files associated with all

benefit denials would be privileged. . . . The 'inevitability' of litigation would then be used to

negate any application of the fiduciary exception.").

Instead, there must be actual adversity between the fiduciary and the beneficiary, such

that the fiduciary is actually seeking legal advice for its own interests, not those of the

beneficiary.  *See, e.g., Gundersen v. Metro. Life Ins. Co.*, No. 2:10-CV-50 DB, 2011 WL

487755, at *9 (D. Utah Feb. 7, 2011) (exception does not apply where trustee seeks advice

"concerning [his] own ***imminent*** criminal or civil liability" or where trustee "'seeks legal advice

for his own protection'" (quoting *Mett*, 178 F.3d at 1065) (emphasis added)); *Klein*, 806 F. Supp.

2d at 1132 (exception applies absent a "true divergence of interests"); *Sizemore v. Pac. Gas &

Elec. Ret. Plan*, 952 F. Supp. 2d 894, 901 (N.D. Cal. 2013) (exception only "expires when the

interests of the parties become 'sufficiently adverse'"); *Stephan*, 697 F.3d 933 (interests of an ERISA fiduciary and beneficiary do not "diverge for purposes of application of the fiduciary exception" until after the final administrative appeal of an adverse benefit determination).  Such actual adversity does not exist when the fiduciary obtains legal advice about how to administer the plan—indeed, ERISA prohibits it.  29 U.S.C. § 1104(a); *see also Klein*, 806 F. Supp. 2d at 1132 (mere possibility of post-decisional litigation is insufficient to give rise to a true divergence of interests because "[t]his contradicts the principle that the plan's administrator or trustee administers the plan in the beneficiaries' best interests." (internal quotation marks omitted)).

The documents at issue are communications discussing UBH's guidelines, which it creates and uses in order to perform its claims-administrative function, which it is bound to do in the interests of the beneficiaries, including Plaintiffs.  UBH nevertheless contends that all of the documents at issue are outside the scope of the exception.  As demonstrated below, UBH is wrong: the exception applies to all of these documents.

> **2.      The fiduciary exception entitles beneficiaries to see *all* legal advice the fiduciary receives about plan administration, and is not limited to documents concerning the specific benefit determination in dispute.**

UBH first claims that 25 documents are not subject to the exception because they do not discuss the specific benefit determinations challenged by the Named Plaintiffs in this case.[3] According to UBH, Plaintiffs are not entitled to see legal advice unless it expressly discusses Plaintiffs' own claims—UBH claims that beneficiaries are not entitled to see legal advice that applies to plan administration across the board.  UBH's position flatly contradicts Ninth Circuit precedent and established ERISA law.

---

[3] UBH asserted this ground for ignoring the fiduciary exception with respect to all of the redacted documents in Categories 4, 5, 6, 7, 8 and 9 described above in Section I.B, as well as another 11 documents UBH withheld in full.  *See* Reynolds Decl., Ex. F (Oct. 30, 2015 log); Exs. G.1, G3.

As explained above, the Ninth Circuit has clearly stated that in the ERISA context, the fiduciary exception applies to "matters of plan administration," and that the exception exists not only because ERISA beneficiaries have a legal right to obtain "all information regarding plan administration," but also because the beneficiaries are the true "clients" with respect to any such legal advice because the fiduciary is merely their representative. *Mett*, 178 F.3d at 1063; *see also Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 228 (4th Cir. 2011) ("[T]he fiduciary exception to attorney-client privilege extends to communications between an ERISA trustee and a plan attorney regarding plan administration.").

Benefit claims administration—UBH's sole function—is at the heart of ERISA plan administration.  UBH develops and adopts its guidelines for use in connection with claims administration—and those guidelines are not plan-specific, but rather apply to *all* plans across the board.  Hrg. on Mot. to Dismiss Tr., 9:16-20 (ECF No. 71, Nov. 19, 2014) ("[T]here are no utilization review guidelines that are developed specifically by UBH [f]or a specific ERISA plan. They are a tool that are used for all its business, whether the business is governed by ERISA or not.").  Accordingly, legal advice concerning the guidelines and how they are to be applied is necessarily a "matter of plan administration" with respect to every single plan UBH administers. The fiduciary exception, therefore, entitles any beneficiary of any of those plans—including the Named Plaintiffs here—to see the legal advice UBH obtained about its guidelines.

UBH disagrees, arguing that the fiduciary exception "is not broad enough to encompass UBH's privileged communications that do not concern Plaintiffs' plans, claims, treatments, or diagnoses."  Reynolds Decl., Ex. D (Nov. 11 Letter at 2-3).  In other words, UBH illogically claims that a beneficiary can only obtain information that explicitly discusses how his *own* benefit claim was administered, and not information about the overriding criteria used by UBH

when administering that claim and every other claim. If accepted, this formalistic distinction

would gut the exception and a fiduciary's disclosure obligations. It also flies in the face of

established ERISA law, which entitles beneficiaries to **all** information about plan administration.

*See, e.g.,* 29 U.S.C. § 1024(b)(4) (plan administrator must provide copy of any "instrument[]

under which the plan is established or operated" upon request by participant or beneficiary).  It

also ignores what the Ninth Circuit has said about the fiduciary exception: that it applies to

"matters of plan administration" precisely *because* beneficiaries are entitled to "**all** information

regarding plan administration."  *Mett*, 178 F.3d at 1063 (emphasis added).

  UBH dismisses the Ninth Circuit's enunciation of the exception's scope as mere "dicta,"

arguing that, in practice, the fiduciary exception has only been applied to communications that

specifically relate to "the beneficiary at issue's benefit claims and benefit plan."  Reynolds Decl.,

Ex. D (Nov. 11 Letter at 2-3).  That assertion is plainly incorrect. [4]  Though the exception has

most often been asserted in suits by individual beneficiaries challenging individual benefit

determinations, it is not limited to such situations.  For example, in *Fischel*, the court ordered

production of "internal documents in which inside counsel [] reviewed and commented on the

structure and design of [a life insurance] plan, including the plan's compliance with its statutory

obligations under the Internal Revenue Code" and "documents reviewed by inside counsel that

are intended to describe or communicate changes in plan benefits to beneficiaries."  191 F.R.D.

at 610.  Those documents were not limited to a particular beneficiary's claim for benefits.

  Indeed, the fiduciary exception applies even if a beneficiary does not personally have a

benefit claim pending.  For example, in *Gundersen*, the district court explained, "[*a*]*ll*

---

[4] Even if UBH were correct that the Ninth Circuit's statement of the rule is somehow "dicta" (which it is not), UBH offers no reason why the "dicta" is not persuasive or consistent with ERISA law, nor does it cite any other reason why that so-called "dicta" should not apply here.

beneficiaries, including the ultimately disappointed beneficiary, are entitled to know what the

legal opinion was [with respect to a claim for benefits], in its oral and written forms . . .

[Claimant] *and the other beneficiaries* of the plan were the clients . . . not the administrator."

2011 WL 487755, at *11 (emphasis added).

      In any event, the documents at issue do *not* appear, in reality, to concern solely (or even

primarily) the individual benefit claims of persons other than the Plaintiffs.  Plaintiffs' document

requests—especially as narrowed by agreement with UBH to limit the custodians and utilize

agreed-upon search terms—did not seek communications about *individual* benefit determinations

or *individual* plans, but rather focused on UBH's internal communications about its own blanket

policies and procedures related to its guidelines.  The documents UBH produced with redactions,

moreover, make clear that the documents that UBH has (correctly) deemed responsive fall into

that group—that is, they clearly contain general discussions and information on how the

guidelines are to be applied across claims and plans.



---

5 One of the documents UBH withheld in full on its "individual benefit claim" ground likewise
concerns the "application of [the] guidelines to TMS claims."  Reynolds Decl., Ex. F (Oct. 30,
2015 log) at UBH-0082.





[redacted]

---

[6] MHPAEA prohibits insurance companies from discriminating against mental health and substance use disorder coverage by imposing limitations that do not apply to medical/ surgical claims. The interim final regulations implementing the act became effective in April of 2010, and the final regulations became effective in 2013.

[7] Although Plaintiffs do not know for certain, most of the emails UBH withheld in full on its "individual benefit claim" ground also appear to concern UBH's compliance with MHPAEA. *See* Ex. F (Oct. 30, 2015 log) at UBH-0009, UBH-0107-09, UBH-0123-25.

8 The production of the previously-withheld content was not inadvertent, as it occurred after Plaintiffs objected to UBH's assertion of the attorney-client privilege, when UBH slightly narrowed some of its redactions.

9 *See* https://www.naphs.org/about/mission (last visited November 23, 2015).



UBH is not entitled to assert the attorney-client privilege to resist disclosure to Plaintiffs of information concerning plan administration. Because all of the emails at issue concern matters of plan administration (and not—as UBH contends—individual benefit determinations), UBH should be ordered to produce in full all of the documents it has redacted or withheld on its meritless "individual benefit determination" ground. To hold otherwise—adopting UBH's view that beneficiaries can only see legal advice if it mentions their own specific claims—would eviscerate the fiduciary exception and severely curtail the ability of beneficiaries of ERISA plans to obtain information about how their plans are being administered.

> **3.** **There is no evidence that, with respect to these communications, UBH's legitimate interests were actually adverse to those of the beneficiaries of the plans it administers.**

UBH next claims that, with respect to the vast majority of the documents on its log, it sought the legal advice at issue in order to protect its own interests, not those of the beneficiaries,

1   and the privilege therefore remains intact.[10]  This argument fails because UBH cannot legally

2   claim that its interests were adverse to plan beneficiaries with respect to any of those

3   communications.

4         According to UBH, these documents reflect "legal advice or request[s] for legal advice

5   related to specific regulatory or litigation exposure matters."  *See* Reynolds Decl., Ex. F (Oct. 30,

6   2015 log); *see also* Ex. G.  But UBH identifies no actual or threatened litigation to which the

7   communications could possibly pertain.  UBH thus fails to demonstrate that any purported

8   "regulatory or litigation exposure" is anything more than inchoate and remote.  Absent actual

9   adversity between UBH and a beneficiary, the fiduciary exception applies and Plaintiffs are

10  entitled to the documents.

11

12        If the documents pertain instead to UBH's compliance with regulatory requirements, the

13  fiduciary exception unquestionably applies.  UBH has not cited any authority for the proposition

14  that, when a fiduciary is seeking legal advice about how to administer a plan in compliance with

15  the law, it is doing so for its *own* protection rather than in the interests of beneficiaries—again,

16  such a proposition flies in the face of an ERISA fiduciary's obligations.  *See* § II.B.2, *supra*.[11]

17  For that reason, the assertion that a document concerns legal advice about compliance with legal

18  or statutory requirements does nothing to vitiate the exception.  Indeed, in *Fischel*, a court in this

19  district ordered production of "internal documents in which inside counsel [] reviewed and

20  commented on the structure and design of [a life insurance plan], *including the plan's*

21

22  _____

23  [10] UBH asserted this ground with respect to all of the documents in Categories 1, 2 and 3
    described above in Section I.B.  *See* Reynolds Decl., Ex. G.1.  It has also asserted this ground
24  with respect to 56 of the documents it withheld in full.  *See* Ex. G.3.

25  [11] Plaintiffs, of course, have alleged that UBH breaches its fiduciary duties by creating and
    applying guidelines that are inconsistent with generally accepted standards, and, further, have
26  alleged that UBH is subject to a conflict of interest when it creates and applies guidelines
    designed to minimize coverage.  By asserting that, when UBH considers how to administer plans
27  in light of regulatory requirements, its interests are adverse to those of the beneficiaries, UBH is
    effectively admitting that Plaintiffs' allegations are true.

28

*compliance with its statutory obligations under the Internal Revenue Code*." 191 F.R.D. at 610 (emphasis added). The court explained that inside counsel was acting "in its role as a fiduciary" and that the intended purpose of the advice was to benefit the plan, not to protect the trustees from personal liability. *Id.*

UBH employs lawyers to ensure that it administers plans in compliance with the law. If *any* communication concerning UBH's potential liability (however remote) could be shielded from the fiduciary exception, the exception would have no force. For example, any communication containing legal advice with respect to a benefit determination would be privileged because of the potential for eventual litigation in response to a denial. Courts have consistently rejected this proposition. *See Klein*, 806 F. Supp. 2d at 1132; *Allen*, 698 F. Supp. 2d at 1201; *cf. Neathery v. Chevron Texaco Corp. Grp. Accident Policy No. OK826458*, No. 05CV1883-JM CAB, 2006 WL 4690828, at *1 (S.D. Cal. July 11, 2006) (finding privilege to apply where plan beneficiary's lawyer had taken "very aggressive posture" with plan administrators "asserting that they may [have] violat[ed] ERISA regulations in their handling of [the beneficiary's] claim appeal.").

Not only does the privilege log, on its face, fail to identify any actual or threatened litigation being discussed in the documents at issue, the redacted documents, again, make clear that UBH is seeking to assert privilege over documents subject to the exception. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

[12] ████████████████████████████████████████████████

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  [13] Again, UBH cannot have it both ways—arguing, on the one hand, that it has not breached any
fiduciary duties in drafting its guidelines, but on the other, that its interests were adverse to those
27  of plan beneficiaries when it drafted the guidelines.

28



1 ███████████████████████████████████████████████

2 ████████████████████████████

3       In short, UBH has not identified any concrete—or even remote—threat of litigation or

4 other actual divergence of interests between UBH and plan beneficiaries that would justify its

5 asserted privilege, in spite of repeated requests for it to provide greater specificity in its privilege

6 log.  *See* Reynolds Decl., Ex. D (Oct. 14, 2015 Letter, Nov. 6, 2015 Letter).  UBH has not met its

7 burden of establishing that the attorney-client privilege applies to the scores of documents it

8 withheld on the basis of actual adversity with beneficiaries.

9

10       **C.**     **UBH should be ordered to produce in full each of the documents referenced in its privilege log, or, in the alternative, the Court should conduct *in camera* review to determine which documents must be produced.**

11

12       UBH has been on notice of the deficiencies in its privilege log for nearly three months

13 and has essentially done nothing in the interim to establish privilege as is required to withhold

14 production of the documents.  *See In re Grand Jury Investigation*, 974 F.2d at 1070.  More

15 importantly, its arguments fail as a matter of law, and its own redacted documents demonstrate

16 that those arguments do not even apply to the documents at issue here.  Therefore, as explained

17 above, UBH is not entitled to assert the privilege to conceal the documents at issue from

18 Plaintiffs.  Accordingly, Plaintiffs respectfully request that the Court enter an order compelling

19 UBH immediately to produce in full all documents referenced in its privilege log.

20       In the alternative, to the extent the Court's determination would turn on the content of

21 particular documents, Plaintiffs seek *in camera* review of a representative subset of the

22 documents that UBH has redacted or withheld.  Courts grappling with the fiduciary exception

23 very frequently find that *in camera* review is needed in order to determine the purpose of the

24 communication.  *See, e.g.*, *Stephan*, 697 F.3d 917 (conducting *in camera* review); *Sizemore*, 952

25 F. Supp. 2d 894 (same); *Fischel*, 191 F.R.D. 606 (same).  To the extent the Court finds there is

26

27

28

1    any ambiguity as to the context or purpose of the communications at issue, the only way to

2    resolve that ambiguity is to review the information UBH has withheld.  Here, at least based on

3    UBH's vague log entries and Plaintiffs' review of the redacted documents, it appears that the

4    volume of documents that would need to be reviewed is not large, as many seem to contain the

5    same or similar communications.  *See* Reynolds Decl., Exs. F, G.

6         For the reasons explained above, Plaintiffs have shown "a factual basis sufficient to

7    support a reasonable, good faith belief that *in camera* inspection may reveal evidence that

8    information in the materials is not privileged."  *In re Grand Jury Investigation*, 974 F.2d at 1075

9

10   (describing standard for determining whether *in camera* review is appropriate).

11                                   **CONCLUSION**

12        For the reasons set forth herein, Plaintiffs request that the Court grant their Motion to

13   Compel and order UBH to produce all improperly withheld or redacted documents.

14

15                                   Respectfully submitted,

16                                   */s/ Caroline E. Reynolds*
                                     By: Caroline E. Reynolds
17                                   **ZUCKERMAN SPAEDER LLP**
                                     *Attorneys for Plaintiffs*
18

19

20   **CERTIFICATION PURSUANT TO FRCP 37(a)(1) AND LOCAL CIVIL RULE 37-1**

21        I hereby certify that counsel for Plaintiffs have conferred, in good faith, with counsel for

22   Defendant, in person, by phone and by letter over the course of more than two months, in an

23   effort to obtain the discovery sought herein without court action, but were unable to do so.

24

25                                   */s/ Caroline E. Reynolds*
                                     Caroline E. Reynolds
26

27

28