# EXHIBIT D



1800 M STREET, NW  SUITE 1000
WASHINGTON, DC 20036-5807
202.778.1800   202.822.8106 fax   www.zuckerman.com

ANDREW CARIDAS
202-778-1855
acaridas@zuckerman.com

August 21, 2015

**VIA E-MAIL**

Nathaniel P. Bualat
CROWELL & MORING, LLP
275 Battery Street, 23rd Floor
San Francisco, CA 94111
nbualat@crowell.com

   Re: *Wit v. UBH*, No. 14-cv-2346 and *Alexander v. UBH*, No. 14-cv-5337

Dear Nate:

   In reviewing UBH's productions to date, we have noticed that certain documents have been redacted purportedly on attorney-client privilege grounds and others on "non-responsiveness" grounds. Neither purported basis for redactions is proper in this case.

   First, UBH is not entitled to assert the attorney-client privilege to resist disclosure to the Plaintiffs of information concerning plan administration. The law in the Ninth Circuit is well settled that, "[i]n ERISA cases, the fiduciary exception to the attorney-client privilege provides that an ERISA fiduciary is 'disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration.'" *Sizemore v. Pac. Gas & Elec. Ret. Plan*, 952 F. Supp. 2d 894, 901 (N.D. Cal. 2013) (quoting *United States v. Mett*, 178 F.3d 1058, 1062–63 (9th Cir. 1999)). *See also*, *e.g.*, *Stephan v. Unum Life Ins. Co. of America.*, 697 F.3d 917, 931-32 (9th Cir. 2012) (holding that fiduciary exception applies to insurance companies "serving in the role of ERISA fiduciary"). UBH appears to be redacting information (for example) about how it will implement its Coverage Determination Guidelines (*see*, *e.g.*, UBHWIT0049510, UBHWIT0046455), the length of stay UBH will authorize for detox (*see*, *e.g.*, UBHWIT0046365), the workflow for reviewers to determine which guidelines to apply (*see*, *e.g.*, UBHWIT0046452), which guidelines to apply to certain claims (*see*, *e.g.*, UBHWIT0047813), and similar topics.[1] Leaving aside whether the redacted material constitutes attorney-client privileged communications in the first place, they are clearly covered by the fiduciary exception and the redactions are therefore improper.

---

[1] We have not attempted to catalogue all of UBH's redactions, and our discussion of these particular documents is by way of example only. Our objection applies to all such improperly redacted documents, whether specifically identified in this letter or not. We assume that you can more readily identify all documents that have been redacted on relevance or privilege grounds based on your internal tagging of documents. We also reserve all rights to object to each and any of UBH's assertions of attorney-client privilege or non-relevance.



Nathaniel P. Bualat
August 21, 2015
Page 2

Second, it is also improper for a party to redact an otherwise responsive document based on its own unilateral assertion that a portion of the document is "non-responsive." *See*, *e.g.*, *Advanced Visual Image Design, LLC v. Exist, Inc.*, No. EDCV142525JGBKKX, 2015 WL 4652762, at *5 (C.D. Cal. Aug. 5, 2015) (finding no "basis to permit" producing party "to redact documents on the grounds portions of the documents are non-responsive"); *United States v. McGraw–Hill Companies, Inc.*, 2014 WL 8662657, at *3 (C.D. Cal. Sept. 25, 2014) ("[U]nilateral redactions are inappropriate if they seek not to protect sensitive or protected information, but merely to keep non-responsive information out of an adversary's hands."); *Holman v. Experian Info. Solutions, Inc.*, 2012 WL 2501085, at *6 (N.D. Cal. June 27, 2012) (granting motion to compel production of information redacted on non-responsiveness grounds); *Franco-Gonzalez v. Holder*, 2013 WL 8116823, at *5 (C.D. Cal. May 3, 2013) (ordering defendants to produce unredacted versions of documents redacted for non-responsiveness).

UBH's assertions of non-responsiveness are inherently suspect when the other portions of the conversation are admittedly responsive. *See*, *e.g.*, UBHWIT0047546 (unredacted portion refers to and discusses "the sentence highlighted below," which is redacted as "non-responsive"); UBHWIT0046816 (entire first page of email, to which remainder of string responds, redacted as "non-responsive"); UBHWIT0047546 (same). In any event, even if a portion of a document were arguably not directly responsive to Plaintiffs' requests, it would still be important for Plaintiffs to receive the complete content of the document in order to understand fully the portions that UBH concedes are responsive. *See*, *e.g.*, *In re Medeva Sec. Litig.*, 1995 WL 943468, at *3 (C.D. Cal. May 30, 1995) (criticizing "unilateral editing of documents by the producing party" because "the practice frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured" and "tends to make documents confusing or difficult to use"). *See also* UBHWIT0047659 (UBH email stating that previous email chain—all of which is redacted—was included "so you can see the context" for the sender's "more general question").

Please advise whether UBH will refrain from such improper redactions in future productions, and will agree to reproduce all documents it previously redacted on these grounds. Please also advise when we can expect to receive the unredacted versions of the previously-produced documents. Finally, please confirm that UBH is not withholding documents in their entirety based upon its impermissible attorney-client privilege assertion.

Thank you for your cooperation.



Nathaniel P. Bualat
August 21, 2015
Page 3

Sincerely,

Andrew Caridas

cc:     Jennifer S. Romano
        April N. Ross
        Caroline E. Reynolds

275 Battery Street, 23rd Floor, San Francisco, CA  94111 ▪ p415 986-2800 ▪ f415 986-2827



Katharine  F. Barach
(415) 365-7242
KBarach@crowell.com

September 4, 2015

**VIA E-MAIL**

Andrew Caridas, Esq.
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036-5802
acaridas@zuckerman.com

Re:   ***David and Natasha Wit, et al. v. United Behavioral Health***
        U.S. District Court (N.D. Cal.), Case No. 3:14-cv-02346-JCS

        ***Gary Alexander, et al. v. United Behavioral Health***
        U.S. District Court (N.D. Cal.), Case No. 3:14-cv-05337-JCS

Dear Andrew:

      I am writing to follow up on your letter dated August 21 and the discussion last week regarding the redactions made to UBH's production of medical director and peer reviewer emails.

      First, UBH is entitled to assert the attorney-client privilege for communications containing legal advice regarding non-fiduciary duties, including settlor functions, or where the parties' interests are sufficiently adverse. *See United States v. Mett*, 178 F.3d 1058, 1064-66 (9th Cir. 1999); *Fischel v. Equitable Life Assurance*, 191 F.R.D. 606, 608 (N.D. Cal. 2000) ("[w]hen an attorney advises a fiduciary on matters pertaining to nonfiduciary duties…the attorney's client is the employer and the privilege is preserved."); *see also Klein v. Nw. Mut. Life Ins. Co.*, 806 F. Supp. 2d 1120, 1133 (S.D. Cal. 2011).  The definition of the fiduciary exception as espoused in your letter is too broad.  *Mett* notes that a too expansive view of the fiduciary exception for plan administration "threatens to swallow the entirety of the attorney-client privilege for ERISA trustees."  178 F.3d at 1065.  We maintain that documents and information regarding legal implications or advice about non-plan administration matters such as the development and promulgation of guidelines, or the adoption, modification, or termination of the plan, are privileged.  Furthermore, any communications where the interests of the beneficiary and ERISA fiduciary were sufficiently adverse are also privileged, including any communications made to

Andrew Caridas, Esq.
September 4, 2015
Page 2

obtain advice about potential ERISA, statutory, or regulatory violations. *Mett*, 178 F.3d 1058, 1064-66; *see Klein*, 806 F. Supp. 2d at 1133; *Neathery v. Chevron Texaco Corp. Grp. Acc. Policy No. OK826458*, No. 05CV1883-JM CAB, 2006 WL 4690828, at *3 (S.D. Cal. July 11, 2006). We will continue to withhold any documents containing attorney-client privileged communication regarding non-fiduciary duties or material where the parties' interests were adverse.

As we stated last week, UBH will not withhold any email communications as non-responsive. We will re-assess all responsive documents with "non-responsive" redactions and determine whether or not they need additional PHI or attorney-client privilege redactions before production.

Finally, per your request we also will re-evaluate redactions made for PHI to ensure that they are complete and not over-inclusive.

Regards,

*Kate Barach*

Katharine F. Barach

cc:    Jason Cowart
       Caroline Reynolds
       Jennifer Romano
       April Ross
       Nathaniel Bualat
       (all by email)

SFACTIVE-903782386.3



1800 M STREET, NW    SUITE 1000
WASHINGTON, DC  20036-5807
202.778.1800    202.822.8106 fax    www.zuckerman.com

CAROLINE REYNOLDS
Partner
202.778.1859
creynolds@zuckerman.com

October 14, 2015

**<u>VIA E-MAIL</u>**

Nathan Bualat
Crowell & Moring LLP
275 Battery Street, 23rd Floor
San Francisco, CA 94111

   Re: *Wit v. UBH*, No. 14-cv-2346 – UBH's Privilege Log

Dear Nate:

   I write regarding UBH's privilege log dated October 2, 2015. In general, the privilege log suffers from at least four deficiencies: (1) a number of entries are listed as redacted but are missing bates numbers; (2) the reasons UBH has provided for withholding or redacting documents are too vague; (3) it appears that UBH has not properly applied the fiduciary exception to the attorney client privilege; and (4) many of the documents do not appear to be protected under the attorney client privilege at all.

   **1.** **UBH Has Failed to Produce Certain Redacted Documents.**

   As an initial matter, UBH's privilege log suffers from a technical deficiency: a number of entries are listed as redacted but are missing bates numbers (for example, UBH-0066 to UBH-0080,UBH-0083, UBH-0153, and UBH-0156). UBH must produce these documents and specify which bates numbers are associated with each entry.

   **2.** **UBH's Vague Log Entries Prevent Plaintiffs from Evaluating the Validity of the Privilege Assertions.**

   Under Judge Spero's Civil Standing Orders, "[p]rivilege logs . . . must be sufficiently detailed and informative to justify the privilege. No generalized claims of privilege or work product protection shall be permitted." ¶ 14 (citation omitted). Most, if not all, of the entries in UBH's privilege log, however, contain insufficient explanations of the asserted "Reason [the] Fiduciary Exception Does Not Apply." For example, numerous entries state, "[l]egal advice **<u>or</u>** request for legal advice related to specific regulatory **<u>or</u>** litigation exposure **<u>or</u>** matters." *See*, *e.g.*, entry for UBH-0113 (emphasis added).[1]  UBH must specify whether the document referenced

---

[1] This reason appears repeatedly throughout the privilege log and our objection is not limited to



October 14, 2015
Page 2

contains legal advice, a request for legal advice, or both, and whether the advice/request relates to a regulatory issue, a litigation issue, or both.  If the request relates to a litigation issue, UBH must identify with more specificity the litigation or anticipated litigation to which it is referring so that Plaintiffs can evaluate whether the communication concerns UBH's liability or some other litigation. Finally, the references to "matters" is so vague as to be meaningless; UBH must supplement its description of the "matters" at issue so that Plaintiffs can discern what is being discussed.  Absent these additional details, UBH is merely making generalized claims of privilege which are impermissible under Judge Spero's rules.  It is difficult, if not impossible, for Plaintiffs to evaluate whether UBH has properly redacted or withheld the documents when the explanations provided are so imprecise.

### 3.  UBH Has Misapplied the Fiduciary Exception.

Insofar as Plaintiffs are able to parse the log, however, UBH's entries reflect a misunderstanding of the applicability of the fiduciary exception. As explained in our letter dated August 21, 2015, UBH is not entitled to assert the attorney-client privilege to resist disclosure to Plaintiffs of information concerning plan administration.  *See, e.g.*, *Sizemore v. Pac. Gas & Elec. Ret. Plan*, 952 F. Supp. 2d 894, 901 (N.D. Cal. 2013) (citing *United States v. Mett*, 178 F.3d 1058, 1062-63 (9th Cir. 1999)); *Stephan v. Unum Life Ins. Co. of America*, 697 F.3d 917, 931-32 (9th Cir. 2012). Yet UBH has done so by withholding and redacting documents that concern benefit determinations, plan interpretation, and plan administration more generally.

### a.  Legal advice concerning benefit determinations in general clearly falls within the fiduciary exception because such advice relates to plan administration.

In numerous entries, UBH states as its "Reason Fiduciary Exception Does Not Apply" that the document reflects "[l]egal advice or request for legal advice re specific benefit claims unrelated to the named plaintiffs or the benefits sought by named plaintiffs; legal advice or request for legal advice re ***general benefit adjudication*** unrelated to named plaintiffs or benefits sought by named plaintiffs."[2] *See, e.g.*, UBH-0002, UBH-0006, UBH-0007 (emphasis added). Legal advice concerning benefit adjudication or benefit determinations in general clearly falls within the fiduciary exception, which entitles plan beneficiaries to disclosure of information

---

this single citation. It applies wherever UBH has listed its reasons for not applying the fiduciary exception in the disjunctive.

[2] UBH also uses variations of this language for some documents, to which Plaintiffs similarly object. *See, e.g.*, UBH-0001 ("Legal advice or request for legal advice re general benefit adjudication unrelated to named plaintiffs or benefits sought by named plaintiffs."); UBH-0051 ("Legal advice or request for legal advice re specific benefit claims unrelated to the named plaintiffs or the benefits sought by named plaintiffs").



October 14, 2015
Page 3

concerning how their plans are administered.

Nor is there any indication that any purported "adversity" justifies withholding these documents from the plaintiffs. In your letter dated September 4, 2015, you represented that you would continue to withhold documents containing communications "where the parties' interests were adverse." Courts in the Ninth Circuit have held, however, that the mere prospect of a benefit claim denial does not give rise to the divergence of interests between the beneficiary and ERISA fiduciary that is required for the attorney client privilege to apply. *See Klein v. Nw. Mut. Life Ins. Co.*, 806 F. Supp. 2d 1120, 1132 (S.D. Cal. 2011); *Allen v. Honeywell Retirement Earnings Plan*, 698 F. Supp. 2d 1197, 1201(D. Ariz. 2010). Nothing in any of the privilege log entries suggests that the legal advice at issue concerns an instance of actual adversity between UBH and any beneficiary.

Instead, where communications concern the interpretation of plan documents or benefit determinations, the fiduciary exception unquestionably applies. For example, in *Stephan*, the Ninth Circuit held that the fiduciary exception applied to a document containing notes of conversations between claims analysts and Unum's in-house counsel about how the insurance policy ought to be interpreted with respect to the plaintiff's monthly earnings and the definition of a bonus under a long-term disability insurance plan. The Court ordered production, explaining, "the disputed documents offer advice solely on how the Plan ought to be interpreted. They do not address any potential civil or criminal liability Unum might face, nor is there any indication that they were prepared with such liability in mind." 697 F.3d at 932; *see also Gundersen v. Metropolitan Life Ins. Co.*, No. 10-cv-50 (DB), 2011 WL 487755, at *11 (D. Utah, Feb. 7, 2011) (stating with respect to memorandum from counsel regarding benefit determination under life insurance plan, "[w]hile it can be said that this advice was sought to protect the administrator against liability, it was fundamental in the appeal determination and was given to ensure that the plan did the right thing in its administrative decision"). Likewise, here, it is improper to redact documents that merely concern plan interpretation, even if there may have been some potential for future litigation related to a benefit denial. By way of example only, the fiduciary exception clearly applies to the 31 emails described as "e-mail[s] reflecting legal advice from counsel regarding application of guidelines to TMS claims." UBH-0051 – UBH-0082.

**b. Legal advice concerning benefit determinations or plan administration falls within the fiduciary exception even if it was not provided in relation to a named Plaintiff's benefit claim.**

To the extent that UBH has withheld documents simply because they do not involve benefit determinations related specifically to the *named* Plaintiffs in this lawsuit, UBH has also erred. The fiduciary exception is not so limited that a beneficiary can only find out how the



October 14, 2015
Page 4

fiduciary has resolved his *own* claim. Rather, each beneficiary is entitled to know *everything* about how the plan is being administered, and the fiduciary is not permitted to shield any of that information from any beneficiary on the grounds of attorney-client privilege. *See Gundersen*, 2011 WL 487755, at *11 ("*All* beneficiaries, including the ultimately disappointed beneficiary, are entitled to know what the legal opinion was, in its oral and written forms. . . . [Claimant] *and the other beneficiaries* of the plan were the clients . . . not the administrator.") (emphasis added). That is what the fiduciary exception is all about.[3]  The documents at issue here are responsive to requests that call for communications that relate to plan administration generally, and the fact that those communications did not specifically concern the plaintiffs' own benefit claims is irrelevant.

### c. The fiduciary exception applies to legal advice concerning compliance with legal requirements.

The fact that legal advice is provided to assist in assuring a plan's (or a fiduciary's) compliance with various regulations and statutes does not render such communications privileged with respect to plan beneficiaries. Indeed, in *Fischel v. Equitable Life Assurance*, a court in this district ordered production of "internal documents in which inside counsel [] reviewed and commented on the structure and design of [a life insurance] plan, including the plan's compliance with its statutory obligations under the Internal Revenue Code." 191 F.R.D. 606, 610 (N.D. Cal. 2000). The court held that inside counsel was acting "in its role as a fiduciary" and that the intended purpose of the advice was to benefit the plan, not to protect the trustees from personal liability. Thus, similarly, UBH cannot withhold or redact documents concerning plan compliance with the Mental Health Parity and Addiction Equity Act (MHPAEA) or other legal requirements, particularly where litigation is nothing more than a remote possibility. For example, in at least 67 instances, UBH has redacted or withheld a document because it is a "[c]ommunication reflecting legal advice from counsel regarding MHPAEA fail first compliance." *See, e.g.*, UBH- 0003, UBH-0004, UBH-0035. In context, it appears that the redacted or withheld communications pertain to how to bring letter templates for benefit denials into compliance with the MHPAEA. The fiduciary exception clearly applies to such documents as they plainly involve plan administration and communication with beneficiaries about plan administration, and UBH acts as a fiduciary in creating and sending these letters to plan beneficiaries.

Similarly, communications on the state of the law as it relates to plan administration are also subject to the fiduciary exception. For example, UBH-0002 is titled "FAQ for

---

[3] To the extent UBH is concerned about protecting the privacy of other members of the putative class, Plaintiffs have already agreed that UBH may redact such individuals' personally identifying information.



October 14, 2015
Page 5

Parity/Coverage Determinations." The response to the following question has been redacted: "Do we have an update on which states require sign off on the Coverage Determination Guidelines yet?" UBH uses its Coverage Determination Guidelines ("CDGs") to administer plans. Whether a state requires "sign off" on CDGs is plainly relevant to plan administration and UBH's role as a fiduciary. There is no indication that the response to the question addresses UBH's liability. The redacted communication should therefore be disclosed.

**4.   UBH Has Withheld and Redacted Documents To Which the Attorney Client Privilege Does Not Appear to Apply.**

Based on the privilege log, it appears that UBH has improperly asserted the attorney-client privilege to withhold or redact documents which do not contain "confidential communications between attorneys and clients . . .  made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1991)). Many entries in the privilege log do not even have an attorney listed as either the sender or a recipient of the associated document.  *See* UBH-0001, UBH-0002, UBH-0006, UBH-0011, UBH-0017-18, UBH-0020, UBH-0026, UBH-0029, UBH-0033, UBH-0051-65, UBH-0082, UBH-0101, UBH-0106-07, UBH-0113-14, UBH-0128, UBH-0135, UBH-0163-69, UBH-0171-73, UBH-0175-78.  To say the least, it is not a given that a communication that is neither to nor from a lawyer contains or requests legal advice.  Nor does the context of these documents, many of which were produced with redactions, indicate that they contain legal advice.  At a minimum, UBH must provide more information, or more appropriately tailor its redactions, in order to support its assertion that the communications contain legal advice.

In addition, many entries merely show that an attorney was cc'd on an email sent to multiple recipients—in some cases, more than twenty people. *See, e.g.*, UBH-021-24, UBH-034-44, UBH-0066-80, UBH-0129-34, UBH-0136-148, UBH-0154-160. The fact that an attorney is a recipient of an email does not automatically render the email privileged. *See N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1127 (N.D. Cal. 2003) ("In the business world, a meeting is not automatically privileged simply because legal counsel is present.") (citations omitted); *see also Chase Bank USA, N.A. "Check Loan" Contract Litig.*, No. 09–md–2032–MMC (JSC), 2011 WL 3268091, at *4 (N.D. Cal. July 28, 2011) (noting that labeling document "attorney-client privileged" or adding attorney as recipient is insufficient to confer privilege). Indeed, a court in this district has noted, "the number of recipients, and the fact that the attorney is merely CC'd on emails, suggests the possibility that the emails could be communications . . . that do not involve the communication or solicitation of legal advice." *Engurasoff v. Zayo Group, LLC*, No. 14-00689, 2015 WL 335793, at *3 (N.D. Cal. Jan. 23, 2015).

As previously explained, without a sufficiently detailed explanation as to why a document has been withheld or redacted, Plaintiffs cannot determine whether or not the privilege



October 14, 2015
Page 6

has been properly applied to the communications in which an attorney is not a participant or is merely one of numerous recipients. Therefore, UBH either must bolster the explanations provided in its privilege log to justify the asserted privilege, or it must produce the documents or portions of documents which have been withheld.

 Although we have not cited each of the 180 documents contained in UBH's privilege log in this letter, our objections apply categorically to the types of entries that we have identified. Please advise as to whether UBH will provide a new privilege log to address our stated objections and whether UBH will produce the improperly withheld or redacted documents.

 I am happy to schedule a phone call to discuss this matter should you have any questions.


Sincerely,

*/s/ Caroline E. Reynolds*

Caroline E. Reynolds



275 Battery Street, 23rd Floor, San Francisco, CA 94111 ■ p 415 986-2800 ■ f 415 986-2827

**Nathaniel P. Bualat**
**(415) 365-7294**
**NBualat@crowell.com**

October 30, 2015

**VIA E-MAIL**

Caroline E. Reynolds, Esq.
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036-5802
creynolds@zuckerman.com

Re:   ***David and Natasha Wit, et al. v. United Behavioral Health***
U.S. District Court (N.D. Cal.), Case No. 3:14-cv-02346-JCS

***Gary Alexander, et al. v. United Behavioral Health***
U.S. District Court (N.D. Cal.), Case No. 3:14-cv-05337-JCS

Dear Caroline:

I write in response to your letter dated October 14 regarding United Behavioral Health's
October 2, 2015 privilege log.

1.     **UBH Has Produced All Redacted Documents Listed on Its Privilege Log.**

UBH has not failed to produce any redacted documents identified on its privilege log.
UBH completed its production from the agreed-upon sample of Medical Directors and
Psychologist Peer Reviewers on October 6, 2015. As a courtesy, UBH's privilege log was
served the previous week. Because several entries on the privilege log had not yet been
produced when we served the privilege log, those entries did not have an assigned Bates number.
Those redacted documents were included in the October 6 production. We have attached an
updated privilege log that identifies the Bates numbers for all documents redacted for privilege,
and assume this will fully address your concern.

SFACTIVE-903851208.5

Crowell & Moring LLP ■ www.crowell.com ■ Washington, DC ■ New York ■ San Francisco ■ Los Angeles ■ Orange County ■ Anchorage ■ London ■ Brussels

Caroline E. Reynolds, Esq.
October 30, 2015
Page 2

**2.     UBH's Log Entries Are Sufficiently Detailed And Informative To Support The Claimed Privilege.**

Your October 14 letter contends that the "Reasons Fiduciary Exception Does Not Apply" field in UBH's privilege log does not provide sufficiently specific or detailed information describing the document or communication at issue. As we explained to you in our September 18, 2015 meet-and-confer, this field indicates how the document fits within the categories of privileged information identified by the Ninth Circuit as outside the reach of the fiduciary exception. *See United States v. Mett*, 178 F.3d 1058, 1065-1066 (9th Cir. 1999). It is the "Description" field for each entry that specifically describes the withheld document and demonstrates why that document is privileged. The two fields are meant to be read in conjunction. Notably, your letter does not identify any Descriptions that you claim prevent you from evaluating the privilege assertion for a given entry. If there are specific documents you believe are insufficiently described when considering both fields, please identify them.

**3.     The Privileged Documents Do Not Fall Within the Fiduciary Exception.**

UBH continues to disagree with your excessively broad interpretation of the fiduciary exception to the attorney-client privilege. Communications seeking or offering legal advice where the interests of the beneficiary and ERISA fiduciary were sufficiently adverse are privileged, as are communications about potential ERISA, statutory, or regulatory violations. *See Mett*, 178 F.3d at 1058, 1064-66; *Klein v. Nw. Mut. Life Ins. Co.*, 806 F. Supp. 2d 1120, 1133 (S.D. Cal. 2011); *Neathery v. Chevron Texaco Corp. Grp. Acc. Policy No. OK826458*, No. 05CV1883-JM CAB, 2006 WL 4690828, at *3 (S.D. Cal. July 11, 2006). Furthermore, no class has been certified, and plaintiffs are not entitled to limitless discovery of otherwise privileged communications regarding UBH's administration of plans in which the plaintiffs did not participate or benefits the named plaintiffs did not seek.

**a.     Named Plaintiffs Are Not the Privilege-Holders for Communications Unrelated to Their Benefits Plans and Claims.**

Where a beneficiary of the plan – not the administrator – is deemed to be the client receiving legal advice on behalf of a particular plan, the attorney-client privilege belongs to that plan beneficiary. Under those circumstances, the fiduciary exception may permit discovery by the beneficiary of otherwise privileged communications concerning adjudication of that beneficiary's benefits and certain pre-decisional communications concerning administration of the beneficiary's plan or adjudication of the beneficiary's benefits.

A beneficiary is not, however, entitled to blanket access to *all* privileged communications about an insurer's benefit administration for all claims or all plans simply because he or she is a beneficiary of one plan or submitted certain claims. Attorney-client communications regarding plan beneficiaries other than the named plaintiffs or administration of plan benefits that were not sought by the named plaintiffs are not covered by the fiduciary exception because the plan

SFACTIVE-903851208.5

Caroline E. Reynolds, Esq.
October 30, 2015
Page 3

administrator is not acting as a fiduciary for the named plaintiffs in such situations.  Where a plaintiff is not the holder of the privilege, he is not entitled to discover privileged communications about plan administration or benefit adjudication.

Your letter nonetheless declares that "each beneficiary is entitled to know *everything* about how the plan is being administered, and the fiduciary is not permitted to shield any of that information from any beneficiary on the grounds of attorney-client privilege."  This assertion reflects an unduly broad reading of the fiduciary exception that is not supported by the law, including the authorities you cite.  Indeed, your assertion that the named plaintiffs are entitled to know "everything" regarding *all* plans and *all* benefits administered by UBH suggests an all-encompassing fiduciary exception that would swallow not only the fiduciary's privilege but also any privilege belonging to non-plaintiff plan beneficiaries.  The exception is much narrower than you suggest.  *See Mett*, 178 F.3d at 1065-1066.

You have cited no authority, and we know of none, allowing a beneficiary-plaintiff to assert the fiduciary exception for communications that do not involve the plaintiff's claim or plan.  To the extent you are aware of any such authority, we again ask that you identify it.  Each of the cases cited in your letter, however, concerns a beneficiary seeking access to attorney-client communications relating to his or her own benefit adjudication or relating to benefit adjudications involving the beneficiary's specific benefits plan.  *See, e.g, Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 921 (9th Cir. 2012); *Gundersen v. Metropolitan Life Ins. Co.*, No. 10-cv-50 (DB), WL487755 at *1 (D. Utah Feb. 7, 2011).  None of the cases you cite involved efforts to discover communications where the privilege belonged to an entirely different plan beneficiary.  *Id.*  Even *Gundersen*, an out-of-circuit case from the District of Utah—which you cite for the premise that each beneficiary is allegedly entitled to know *everything* about administration of *any* plan—involved discovery of a file memo reflecting legal advice to ensure that the plan administrator acted correctly in the denial of Mr. Gundersen's benefits.  The communication at issue was fundamental in the determination of Mr. Gundersen's appeal, and was produced as part of Mr. Gundersen's administrative record.  *Gundersen*, WL487755 at *11.  *Gundersen*, and the other authorities you cite, are inapposite to this situation, where you seek access to privileged communications unrelated to your clients' benefit claims or plan administration.

Nor does it matter that you have styled your complaint as a putative class action.  The Court has not certified any class in this litigation.  At this stage, named plaintiffs represent themselves alone.  Named plaintiffs may not assert privilege rights on behalf of absent putative class members before the Court certifies a class.  Nor have named plaintiffs shown that they are entitled to attorney-client communications where they are not the beneficiary at issue nor a beneficiary of the plan at issue.

Crowell & Moring LLP ▪ www.crowell.com ▪ Washington, DC ▪ New York ▪ San Francisco ▪ Los Angeles ▪ Orange County ▪ Anchorage ▪ London ▪ Brussels

Caroline E. Reynolds, Esq.
October 30, 2015
Page 4

b.     **Privileged Advice Regarding Legal Liability Is Not Subject to the Fiduciary Exception.**

Plaintiffs also take issue with UBH's withholding of documents reflecting "legal advice or request[s] for legal advice related to specific regulatory or litigation exposure or matters." UBH is entitled to assert the attorney-client privilege over communications containing legal advice where the ERISA trustee seeks legal advice for its own protection, the advice is not prepared for the benefit of the plan or the plan beneficiaries, or the parties' interests are sufficiently adverse. *See United States v. Mett*, 178 F.3d 1058, 1064-66 (9th Cir. 1999). In those circumstances, the "legal fiction of 'trustee as representative of the beneficiaries' is dispelled, notwithstanding the fact that the legal advice may relate to the trustee's administration of the trust." *Id.* at 1065. The attorney-client privilege trumps the beneficiaries' general right to inspect documents relating to plan administration.

This carve-out to the fiduciary exception includes legal advice regarding compliance with legal or statutory requirements where counsel is concerned about the plan's liability. *See Neathery v. Chevron Texaco Corp. Grp. Acc. Policy No. OK826458*, No. 05CV1883-JM CAB, 2006 WL 4690828, at *3 (S.D. Cal. July 11, 2006) (communications made to obtain advice about allegations of potential ERISA violations were found to be privileged); *cf. Fischel v. Equitable Life Assurance*, 191 F.R.D. 606, 608 (N.D. Cal. 2000) (noting that documents reviewed by inside counsel that are intended to describe or communicate changes in plan benefits to beneficiaries would have been protected if counsel had been "rendering legal advice to the trustees regarding the substance or advisability of those changes").

Your objection to UBH-0003, UBH-0004, and UBH-00035 is, therefore, unpersuasive. Those entries, as well as the others in this category, reflect or contain legal advice or a request for legal advice regarding specific concerns about the administrator's exposure to identifiable litigation or regulatory risk, not simply benefit administration or a possibility of post-decisional litigation. Counsel offered this advice not for the benefit of the plan or for use in the claims administration process, but for the protection of the administrator from non-remote legal threats. *See Klein v. Nw. Mut. Life Ins. Co.*, 806 F. Supp. 2d 1120, 1133 (S.D. Cal. 2011). As to UBH-0002, on October 6, 2015 we produced a version without the redaction to which you object. *See* UBHWIT0063731.

4.     **The Attorney-Client Privilege Applies to All Documents Identified on the Privilege Log.**

Your letter expresses concern over two categories of documents—communications that do not list an attorney as a sender or recipient, and e-mails to multiple recipients including an attorney—and suggests that such documents do not appear to be privileged. Be assured that we have individually assessed each logged document and have not, as you suggest, simply assumed that a document is privileged because an attorney may have received the document. As

**Crowell & Moring LLP** ■ www.crowell.com ■ Washington, DC ■ New York ■ San Francisco ■ Los Angeles ■ Orange County ■ Anchorage ■ London ■ Brussels

Caroline E. Reynolds, Esq.
October 30, 2015
Page 5

explained below, each document you identify contains, reflects, or has the predominant purpose of seeking or rendering legal advice from UBH counsel, and thus falls squarely within the scope of the attorney-client privilege.

First, those entries on the privilege log that do not list an attorney as a sender or recipient either transmit legal advice given by counsel or discuss seeking legal advice, as noted in the "Description" field.  Attorney-client privilege may attach to such communications between non-legal employees because they reveal privileged information.  *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002) (determining that communications transmitted between non-lawyers reflecting matters about which the client intends to seek legal advice are comparable to notes a client would make in preparation for a meeting with counsel and it would undermine the purpose of the attorney-client privilege not to extend protection to such notes); *Garvey v. Hulu, LLC*, No. 11-CV-03764-LB, 2015 WL 294850 at *3 (N.D. Cal. Jan. 21, 2015); *Robinson v. Cnty. of San Joaquin*, No. 2:12-CV-2783 MCE GGH, 2014 WL 5473049, at *7 (E.D. Cal. Oct. 28, 2014) (holding that content of privileged emails between non-attorneys, subject matter listed as "EEOC complaints" and "civil action," would include legal advice and/or mental impressions).

Second, for those entries in which an attorney was copied on an email with multiple recipients, we have determined that the primary purpose of the withheld portion of the communication was either to solicit legal advice or to relay advice provided pertaining to legal matters, thus constituting *legal* advice as contemplated by the attorney-client privilege.  *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076.  For example, many of these communications are part of ongoing discussions in which counsel has rendered legal advice or has been asked to render legal advice and continues to be involved in the discussion to facilitate the ongoing provision of legal advice.  More specifically, UBH-0021-0024, 0034-0044, 0129-0134, 0136-0148, and 0154-0160 reflect legal advice regarding statutory compliance and litigation exposure.  UBH 0066-0080 directly refers to and transmits legal guidance provided by the copied counsel.

While we believe the descriptions in our current privilege log are sufficient, in response to your request for more detailed descriptions of these communications, we are reviewing the descriptions on the log to determine if additional detail is warranted.

Crowell & Moring LLP ▪ www.crowell.com ▪ Washington, DC ▪ New York ▪ San Francisco ▪ Los Angeles ▪ Orange County ▪ Anchorage ▪ London ▪ Brussels

Caroline E. Reynolds, Esq.
October 30, 2015
Page 6

Regards,

Nathaniel P. Bualat

cc:   Andrew Caridas
      Jason Cowart
      Jennifer Romano
      April Ross
      Katharine Barach
      (all by email)

Crowell & Moring LLP ■ www.crowell.com ■ Washington, DC ■ New York ■ San Francisco ■ Los Angeles ■ Orange County ■ Anchorage ■ London ■ Brussels



**ZUCKERMAN** SPAEDER LLP

1800 M STREET, NW   SUITE 1000
WASHINGTON, DC  20036-5807
202.778.1800   202.822.8106 fax   www.zuckerman.com

CAROLINE REYNOLDS
Partner
202.778.1859
creynolds@zuckerman.com

November 6, 2015

<u>**VIA E-MAIL**</u>

Nathaniel Bualat
Crowell & Moring LLP
275 Battery Street, 23rd Floor
San Francisco, CA 94111

      Re:    *Wit v. UBH*, No. 14-cv-2346 – UBH's Privilege Log

Dear Nate:

      I write in response to your letter dated October 30, 2015 regarding UBH's October 2, 2015 privilege log. As an initial matter, the revised privilege log that you have provided properly addresses our concern regarding the Bates numbers missing from certain redacted documents cited in the original privilege log. Unfortunately, your responses to our remaining concerns are unsatisfactory for the reasons that follow.

    1.  **UBH's Vague Log Entries Prevent Plaintiffs from Evaluating the Validity of the Privilege Assertions.**

      You assert that the "Description" field for each entry in the privilege log "describes the withheld document and demonstrates why that document is privileged" in conjunction with the "Reasons Fiduciary Exception Does Not Apply" field. Even read in conjunction, however, the information provided is insufficient to evaluate the validity of UBH's privilege assertions. For example, the entry for UBH-0149 is described as "E-mail communication between attorney and client regarding review of documents for Subspecialty Society meeting," and the reason given for privilege is "Legal advice or request for legal advice related to specific regulatory or litigation exposure or matters." First, you have not addressed our concern that UBH may not list the reasons for privilege in the disjunctive—that is, does the document contain legal advice *or* a request for legal advice *or* both? Second, UBH must identify what specific regulatory or litigation matters were being discussed. If litigation is involved, UBH must describe in greater detail the litigation or anticipated litigation to which it is referring so that Plaintiffs can evaluate whether the communication concerns UBH's liability. Absent these additional details, UBH is merely making generalized claims of privilege which, as previously explained, are impermissible under Judge Spero's rules.



November 6, 2015
Page 2

### 2.  UBH Has Misapplied the Fiduciary Exception.

#### a.  Legal advice concerning company-wide policies with respect to making benefit determinations clearly falls within the fiduciary exception because such advice relates to plan administration.

Your response to our concerns about UBH's application of the fiduciary exception reveals either a misunderstanding of our document requests or a misunderstanding of when the fiduciary exception applies. The logged documents are not responsive to any requests for documents concerning *individual* benefit determinations or *individual* plans but rather to requests focus on UBH's blanket policies and procedures related to its CDGs and LOCs. Indeed, had UBH produced every single document applying a CDG or LOC in relation to an individual benefit determination, the production surely would have been more voluminous. It is clear that the documents UBH has deemed responsive fall into a much narrower category—that is, they contain information on how the guidelines are applied across plans.

For example, UBH-0018 is a document with the title, "FAQ for Parity/Coverage Determinations March 2nd, 2011." The corresponding "Reason Fiduciary Exception Does Not Apply" entry in the privilege log reads, "Legal advice or request for legal advice re specific benefit claims unrelated to the named plaintiffs or the benefits sought by named plaintiffs; legal advice or request for legal advice re general benefit adjudication unrelated to named plaintiffs or benefits sought by named plaintiffs." It is clear from the title of the redacted document that the communication is not related to a *specific* individual's benefit determination under a *specific* plan.[1] Rather, the document contains questions and answers about how UBH conducts general benefit adjudication *across all plans*. Indeed the redacted portions of the document appear to be answers to the following broad questions: 1) "Has the documentation template that Care Advocates and MDs use changed for Rhode Island due to notifications?" and 2) "Since CDG determinations are not based on medical necessity guidelines, are we able to proceed with a CDG non-coverage determination in conflict with a court order?"

As previously explained, UBH is not entitled to assert the attorney-client privilege to resist disclosure to Plaintiffs of information concerning plan administration.  *See, e.g., Sizemore v. Pac.  Gas & Elec. Ret. Plan*, 952 F. Supp. 2d 894, 901 (N.D. Cal. 2013) (citing *United States v. Mett*, 178 F.3d 1058, 1062-63 (9th Cir. 1999)); *Stephan v. Unum Life Ins. Co. of America*, 697 F.3d 917, 931-32 (9th Cir. 2012). General benefit adjudication is at the heart of plan administration. When UBH applies its internal policies across plans, information related to such policies is subject to disclosure to any beneficiary of any UBH plan. In other words, the fiduciary

---

[1] That being said, if a communication relates to a specific individual's benefit determination but reflects a company-wide policy affecting plan administration generally, the fiduciary exception would apply.



November 6, 2015
Page 3

exception applies to a policy that is used to administer a plan whether it is plan-specific or company-wide. Furthermore, the fact that a plan beneficiary (here, the named Plaintiffs) may not personally have a benefit claim pending that is related to the legal advice being communicated does not block the application of the fiduciary exception. Plan beneficiaries are entitled to information about how their plan is being administered, whether or not they are currently seeking a particular benefit. It is for this reason that the court in *Gundersen v. Metropolitan Life Ins. Co.* explained that a plan beneficiary is entitled to disclosure of communications containing legal advice concerning *other* beneficiaries' claims for benefits. No. 10-cv-50 (DB), 2011 WL 487755, at *11 (D. Utah Feb. 7, 2011). Legal advice concerning benefit adjudication in general clearly falls within the fiduciary exception. For this reason, all documents in the privilege log listed as redacted or withheld for the reason mentioned above (or any variation thereof[2]), must be produced in full.

> **b.  The fiduciary exception applies to advice concerning compliance with legal or regulatory requirements.**

If a court were to adopt the definition of the fiduciary exception set forth in your letter, there would be no reason for the exception to exist because it would never apply. You say that documents reflecting "legal advice or request[s] for legal advice related to specific regulatory or litigation exposure or matters" are privileged because they concern "compliance with legal or statutory requirements where counsel is concerned about the plan's liability." Of course, the reason that UBH employs lawyers is to ensure that the plans that UBH administers comply with the law. If any communication concerning any potential plan liability (however remote) could be shielded from the fiduciary exception, the fiduciary exception would have no force. For example, as previously explained, any communication containing legal advice with respect to a benefit determination would be privileged because of the potential for eventual litigation in response to a denial. Courts have consistently held that such remote legal threats do not shield communications from application of the fiduciary exception. *See Klein v. Nw. Mut. Life Ins. Co.*, 806 F. Supp. 2d 1120, 1132 (S.D. Cal. 2011); *Allen v. Honeywell Retirement Earnings Plan*, 698 F. Supp. 2d 1197, 1201(D. Ariz. 2010). Rather the threat of litigation must be concrete. Indeed, in *Neathery v. Chevron Texaco Corp. Grp. Acc. Policy No. OK826458*, No. 05-cv-1883-JM CAB, 2006 WL 4690828, at *2-*3 (S.D. Cal. July 11, 2006), the only case you cite where privilege was found to shield a communication relating to a plan's potential liability, a plan beneficiary's lawyer had taken a "very aggressive posture" with the plan administrators "asserting that they may [have] violat[ed] ERISA regulations in their handling of [the beneficiary's] claim appeal." The threat of

---

[2] *See, e.g.*, UBH-0001 ("Legal advice or request for legal advice re general benefit adjudication unrelated to named plaintiffs or benefits sought by named plaintiffs."); UBH-0051 ("Legal advice or request for legal advice re specific benefit claims unrelated to the named plaintiffs or the benefits sought by named plaintiffs").



November 6, 2015
Page 4

litigation was, therefore, far more than hypothetical. Consequently the court determined that "communications made to obtain advice about allegations of potential ERISA violations" were privileged. *Id.* at *3.

While you contend that UBH's redacted and withheld documents falling into the aforementioned category address "*specific* concerns about the administrator's exposure to *identifiable* litigation or regulatory risk," the entries in UBH's privilege log do not identify what specific litigation or regulatory risk was at issue. UBH must either amend the privilege log to include such information or it must produce those documents in full. Otherwise, Plaintiffs have no reason to believe that the legal risks contemplated were anything more than remote. This means, for example, that in the 67 instances in which UBH has redacted or withheld a document because it reflected "legal advice from counsel regarding [Mental Health Parity and Addiction Equity Act ("MHPAEA")] fail first compliance," *see, e.g.*, UBH-0003, you must specify what concrete threat of litigation or regulatory action gave rise to the communication. It is not enough to say that the fiduciary exception does not apply because the communication concerns compliance with the MHPAEA. *See Fischel v. Equitable Life Assurance*, 191 F.R.D. 606, 610 (N.D. Cal. 2000) (applying fiduciary exception to internal communications concerning plan's compliance with its statutory obligations under Internal Revenue Code).

Once again, although we have not cited each of the 180 documents contained in UBH's privilege log in this letter, our objections apply categorically to the types of entries that we have identified. Please advise as to whether UBH will provide a new privilege log to address our stated objections and whether UBH will produce the improperly withheld or redacted documents.

As you know, in light of the upcoming status hearing, Plaintiffs are seeking the court's involvement in resolving these issues. We nevertheless remain available to confer in an effort to resolve the parties' dispute.

Sincerely,

*/s/ Caroline E. Reynolds*

Caroline E. Reynolds



275 Battery Street, 23rd Floor, San Francisco, CA  94111 ▪ p415 986-2800 ▪ f415 986-2827

Nathaniel P. Bualat
(415) 365-7294
NBualat@crowell.com

November 11, 2015

**VIA E-MAIL**

Caroline E. Reynolds, Esq.
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036-5802
creynolds@zuckerman.com

> Re:  ***David and Natasha Wit, et al. v. United Behavioral Health***
> U.S. District Court (N.D. Cal.), Case No. 3:14-cv-02346-JCS
>
> ***Gary Alexander, et al. v. United Behavioral Health***
> U.S. District Court (N.D. Cal.), Case No. 3:14-cv-05337-JCS

Dear Caroline:

I write in response to your letter dated November 6, 2015 regarding United Behavioral Health's ("UBH") October 2, 2015 privilege log, which was revised on October 30, 2015, to address several issues.

### 1.   The Fiduciary Exception Has a "Modest Reach" and Limited Applicability.

As a foundational matter, the attorney-client privilege is "perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system." *United States v. Mett*, 178 F.3d 1058, 1062 (9th Cir. 1999) (citing *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997)).  Once the attorney-client privilege has been established, the party that seeks to pierce it bears the burden of showing an exception exists.  *See id.* at 1064.  Moreover, "where attorney-client privilege is concerned, hard cases should be resolved in favor of the privilege, not in favor of disclosure." *Id.* at 1065.  With respect to the fiduciary exception, the Ninth Circuit has described the exception as having a "modest reach." *Id.* at 1066.  Plaintiffs, in contrast, advocate for a much broader exception that is unsupported by the authority they cite.

Caroline E. Reynolds, Esq.
November 11, 2015
Page 2

In that authority, the fiduciary exception has only been applied to communications that specifically relate to the benefit claim that is in dispute.  For example:

- In *Sizemore v. Pacific Gas & Electric Retirement Plan*, the court found that the fiduciary exception applied to two redacted emails that were directly about the plaintiff's claim.  952 F. Supp. 2d 894, 896-97, 900-901 (N.D. Cal. 2013) (discussing emails that specifically referenced the plaintiff).

- In *Stephan v. Unum Life Insurance Company of America*, the court found that the exception applied to memoranda written about how the plaintiff's insurance policy should be interpreted and whether plaintiff's bonus counted as earnings under the plan.  697 F.3d 917, 932-33 (9th Cir. 2012).

- In *Gundersen v. Metropolitan Life Insurance Company*, the District of Utah found that the fiduciary exception applied to one redacted document in the administrative record relating to the plaintiff's benefit claim at issue.  No. 10-cv-50 (DB), 2011 WL487755,*1, *8 (D. Utah Feb. 7, 2011).

- In *Klein v. Northwestern Mutual Life Insurance Company*, while no specific communications were discussed, the focus was on whether the exception applied to communications relating to the denial of the plaintiff's specific claim.  806 F. Supp. 2d 1120, 1133 (S.D. Cal. 2011).

- In *Fischel v. Equitable Life Assurance*, the plaintiffs were, unlike here, a certified class of former employees seeking, through the fiduciary exception, communications about alleged false statements or repudiated promises relating to their claims against a common plan.  191 F.R.D. 606, 607 (N.D. Cal. 2000).

- In *Allen v. Honeywell Retirement Earnings Plan*, the plaintiffs were also, unlike here, a certified class that obtained common plan-wide documents that related to the plaintiffs' claims through application of the fiduciary exception.  698 F. Supp. 2d 1197, 1202-03 (D. Ariz. 2010).

UBH has repeatedly told Plaintiffs that it is unaware of authority that extends the fiduciary exception to communications relating to other beneficiaries' benefit claims or plans.  UBH has also repeatedly, including in my October 30 letter, invited Plaintiffs to provide UBH with any such authority.  But Plaintiffs have failed to do so.  Thus, it remains that Plaintiffs' only cited authority confirms that the fiduciary exception is limited to communications directly about the beneficiary at issue's benefit claims and benefit plan.

Plaintiffs, nevertheless, continue to assert that *Gundersen* stands for the proposition that the fiduciary exception extends beyond the claims or plan of the beneficiary at issue.  But, as

Caroline E. Reynolds, Esq.
November 11, 2015
Page 3

shown above, the only issue before the *Gundersen* court was whether one communication about the plaintiff's claim was subject to the fiduciary exception. 2011 WL487755 at *8. Any broader statement from that Court about the hypothetical reach of the exception is dicta. Moreover, the *Gundersen* court cites *Geissal v. Moore Medical Corp.*, 192 F.R.D. 620 (E.D. Mo. 2000), for the language upon which Plaintiffs rely in arguing for an expansive interpretation of the exception. In *Geissal*, however, the communications at issue were also specifically about the plaintiff's ERISA claim, showing again the limited application of the fiduciary exception.

Because the fiduciary exception has only been applied to communications about a plaintiff's actual benefits claims or the actual benefits plan at issue, it is not broad enough to encompass UBH's privileged communications that do not concern Plaintiffs' plans[1], claims, treatments, or diagnoses.

### 2. Plaintiffs' Arguments Ignore the Nuances in the Ninth Circuit's Jurisprudence.

In addition to attempting to impermissibly expand the fiduciary exception, Plaintiffs also oversimplify the analysis required under Ninth Circuit authority. For example, Plaintiffs claim that the fiduciary exception "clearly applies" to a group of communications "as they plainly involve plan administration and communication with beneficiaries about plan administration." October 14, 2015 Letter from Reynolds to Bualat at 4. This type of categorical argument, however, ignores the Ninth Circuit's more nuanced guidance in *Mett*.

In that case, the Ninth Circuit recognized that communications requiring analysis about whether the fiduciary exception applied fell within a spectrum. When there is clearly no issue of fiduciary liability, the exception applies, and when it is clear that the fiduciary is seeking to defend against personal liability, the exception does not apply. *Mett*, 178 F.3d at 1064. While the Ninth Circuit did not define the area between the two ends of the spectrum, it did provide guidance in rejecting an expansive view of the exception that would capture all advice that "relates to" fiduciary matters. *Id.* at 1064-65. The court listed four reasons for rejecting such a categorical view of the exception: (i) this view would "swallow the entirety of the attorney-client privilege" because any legal advice concerning an ERISA plan could "relate to" the administration of the plan; (ii) only communications where the trustee is acting as the representative of the beneficiaries should be excluded from the privilege and not the communications where a trustee seeks legal advice for its own protection; (iii) most importantly, hard cases must be resolved in favor of the privilege, not in favor of disclosure; and (iv) as a matter of policy, an uncertain privilege will discourage trustees from seeking legal advice, to the

---

[1] Plaintiffs' argument that some of the communications at issue appear to apply across plans is unconvincing because those communications still do not relate to Plaintiffs' claims or the related diagnoses that are the sources of those claims.

Caroline E. Reynolds, Esq.
November 11, 2015
Page 4

detriment of the beneficiaries. *Id.* at 1064-65. Thus, the fact that a communication involves or relates to plan administration is far from dispositive.

The more relevant inquiry is the context and content of the communications. *Mett*, 178 F.3d 1064. Because while the fiduciary exception generally applies to matters of plan administration, the attorney-client privilege reasserts itself as to any advice that a fiduciary obtains to protect itself from liability. *Id.* at 1066. For instance, Plaintiffs cite *Fischel* for the proposition that the fiduciary exception does not apply where the communication concerns compliance with a statutory regime. *See* November 6, 2015 Reynolds Letter to Bualat at 4 ("November 6 Letter"). Although the Northern District found that certain communications about compliance with the Internal Revenue Code were subject to the fiduciary exception, the linchpin of that determination was the content and context of the communications. *Fischel*, 191 F.R.D. at 610. Specifically, the question was whether the authors of the communications were "concerned about the trustee's personal liability" or focused on "explaining and assisting with the fiduciary obligations." *Id.* The court did not make a determination based on the subject matter of the communication, but rather on its substance.

Plaintiffs also attempt to make categorical arguments about how to assess the threat of litigation, citing *Klein* and *Allen*. November 6 Letter at 3. Those cases, however, are limited because they focus on the threat of "post-decisional" litigation, meaning litigation that would result from an adverse benefits decision. In *Klein* and *Allen*, as discussed above, the communications at issue were discussions about the determination of the plaintiffs' underlying claims, so the question was whether litigation with those plaintiffs was remote under the particular circumstances at the time of the communications. 806 F. Supp. 2d at 1133; 698 F. Supp. 2d at 1202-03. Accordingly, the analysis of the threat of litigation in those cases should not be applied broadly. The *Fischel* court, for example, employed a different prism in assessing whether a threat of liability informed the communication. It considered whether the authors of the communications were "concerned about the trustee's personal liability." *Fischel*, 191 F.R.D. at 610. This again shows that the content and context of the communication is key.

Plaintiffs' attempt to draw bright line rules ignores the nuanced analysis the Ninth Circuit described in *Mett*. When the standard is properly applied to the communications at issue, it is clear that UBH's privilege assertions are substantiated and should be upheld.

### 3. Plaintiffs Should Reconsider Their Position on Further Proceedings on These Issues.

UBH asks Plaintiffs to reconsider their request that the Court issue a ruling regarding these issues at the case management conference. It is imperative that the Court be able to, if it so desires, review the communications at issue and make an informed judgment about the application of the privilege. The typical procedure when challenging privilege based on the fiduciary exception is for each communication to be examined individually *in camera* because

Caroline E. Reynolds, Esq.
November 11, 2015
Page 5

"the nature of the particular attorney-client communication" is dispositive. *See Klein*, 806 F.Supp.2d at 1133; *see also Mett*, 178 F.3d at 1065 ("This communication-by-communication analysis...is crucial if the attorney-client privilege and the fiduciary exception are to coexist."). UBH believes that the parties should agree, at a minimum, to allow the Court to conduct a review of the communications, or some sample of them, prior to making any final determination.

UBH still maintains that briefing may be helpful to the Court, and welcomes Plaintiffs' agreement on that topic as well.

Sincerely,

Nathaniel P. Bualat

cc:   Andrew Caridas
      Jason Cowart
      Jennifer Romano
      April Ross
      Katharine Barach
      (all by email)