THOMAS F. KOEGEL (SBN 125852)
tkoegel@crowell.com
NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
JOSEPH BUI (SBN 293256)
jbui@crowell.com
CROWELL & MORING LLP
275 Battery Street, 23rd Floor
San Francisco, California 94111
Telephone: 415.986.2800
Facsimile: 415.986.2827

CHRISTOPHER FLYNN (admitted *pro hac vice*)
cflynn@crowell.com
APRIL N. ROSS (admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br><br>**OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANT UNITED BEHAVIORAL HEALTH TO PRODUCE DOCUMENTS WITHHELD OR REDACTED AS PRIVILEGED**<br><br>Date: January 22, 2016<br>Time: 9:30 a.m.<br>Judge: Hon. Joseph Spero<br>Courtroom: G |

| | |
|---|---|
| GARY ALEXANDER, et al.,<br>Plaintiffs,<br>v.<br>UNITED BEHAVIORAL HEALTH,<br>Defendant. | Case No. 3:14-CV-05337-JCS |

## TABLE OF CONTENTS


**Page**

INTRODUCTION ........ 1

BACKGROUND ........ 2

A. Plaintiffs Seek Production of Privileged E-mails Relating to the General Application of UBH's Guidelines ........ 2

B. UBH Withheld Or Redacted 182 E-mails Based On The Attorney-Client Privilege ........ 3

C. Plaintiffs Contend That All of these Communications Are Subject to the Fiduciary Exception to the Attorney-Client Privilege ........ 5

ARGUMENT ........ 6

I. ALL OF THE COMMUNICATIONS AT ISSUE ARE CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATIONS ........ 6

II. THE FIDUCIARY EXCEPTION DOES NOT APPLY TO THE COMMUNICATIONS AT ISSUE IN THIS MOTION ........ 9

A. The Fiduciary Exception Has a "Modest Reach" In Matters of Plan Administration ........ 9

B. The Fiduciary Exception to the Attorney-Client Privilege Does Not Apply to Communications Seeking or Reflecting Legal Advice Regarding UBH's Potential Liability (Categories 1-3) ........ 10

1. Under Ninth Circuit Precedent, The Fiduciary Exception Does Not Apply to Legal Advice Provided For the Purpose of Protecting Against Fiduciary Liability ........ 10

2. The Communications in Categories 1, 2 and 3 Involve Attorney Advice Provided For the Purpose of Addressing Fiduciary Liability, and Thus Are Not Subject to the Fiduciary Exception ........ 13

C. The Fiduciary Exception to the Attorney-Client Privilege Does Not Apply to Communications About Plans or Claims Unrelated to the Plaintiffs (Categories 4-9) ........ 14

1. The Fiduciary Exception To The Attorney-Client Privilege Does Not Stretch To Advice Regarding Administration of Benefit Claims or Plans Not Applicable to The Plaintiffs ........ 14

2. The Communications in Categories 4 Through 9 Are Not Subject to the Fiduciary Exception to the Attorney-Client Privilege Because They Do Not Relate to Plaintiffs' Plans, Benefits, Treatments, or Diagnoses ........ 18

## TABLE OF CONTENTS
## (continued)

**Page**

III. If Plaintiffs' Motion to Compel Is Not Denied In Its Entirety, In Camera Review Is Appropriate Before Any Disclosure of the Communications at Issue ........ 19

CONCLUSION ........ 19

# TABLE OF AUTHORITIES


**Page(s)**

**Federal Cases**

*Allen v. Honeywell Retirement Earnings Plan*,
698 F. Supp. 2d 1197 (D. Ariz. 2010)....................11, 12, 15, 16

*AT & T Corp. v. Microsoft Corp.*,
2003 WL 21212614 (N.D. Cal., Apr. 18, 2003) ....................7

*Fischel v. Equitable Life Assurance*,
191 F.R.D. 606 (N.D. Cal. 2000).................... *passim*

*Garvey v. Hulu, LLC*,
2015 WL 294850 (N.D. Cal., Jan. 21, 2015) ....................7

*Gundersen v. Metropolitan Life Ins. Co.*,
2011 WL487755 (D. Utah Feb. 7, 2011) ....................12, 15, 16, 17

*Klein v. Northwestern Mutual Life Insurance Company*,
806 F. Supp. 2d 1120 (S.D. Cal. 2011).................... *passim*

*In re New York Renu with Moistureloc Prod. Liab. Litig.*,
2008 WL 2338552 (D.S.C., May 8, 2008)....................8

*Robinson v. Cnty. of San Joaquin*,
2014 WL 5473049 (E.D. Cal., Oct. 28, 2014) ....................7

*Sizemore v. Pacific Gas & Electric Retirement Plan*,
952 F. Supp. 2d 894 (N.D. Cal. 2013) ....................12, 14, 16

*Stephan v. Unum Life Insurance Company of America*,
697 F.3d 917 (9th Cir. 2012)....................12, 15, 16

*United States v. Bauer*,
132 F.3d 504 (9th Cir. 1997)....................6

*United States v. ChevronTexaco Corp.*,
241 F. Supp. 2d 1065 (N.D. Cal. 2002) ....................7

*United States v. Graf*,
610 F3d 1148 (9th Cir. 2010)....................6

*United States v. Mett*,
178 F.3d 1058 (9th Cir. 1999).................... *passim*

*Upjohn Co. v. United States*,
449 U.S. 383 (1981) ....................6

## TABLE OF AUTHORITIES
## (continued)

**Page**

**Federal Statutes**

29 U.S.C. § 1024(b)(4)....................17

**Other**

Department of Labor Advisory Op. 96-14A (July 31, 1996)....................17

## INTRODUCTION

UBH has produced hundreds of thousands of pages of documents during discovery in this matter. This dispute concerns a tiny fraction of that production, namely 182 e-mails produced in redacted form or withheld from production because they contain privileged attorney-client communications. And even these 182 e-mails do not represent 182 unique communications. Rather, as plaintiffs admit, the 115 redacted emails that are the primary focus of Plaintiffs' Motion represent *nine* e-mail strings (reproduced in various formats and at different stages within the strings) over which UBH has asserted the privilege. While Plaintiffs make a half-hearted run at arguing that two of the nine are not privileged at all, they offer no compelling evidence to overcome the detailed descriptions on UBH's privilege log that establish the privilege, and do not even attempt to challenge the privilege as to the remaining seven categories.

Rather, Plaintiffs claim the privileged nature of these communications does not matter, invoking the "fiduciary exception" to the attorney-client privilege, which they say allows them to discover any privileged communication between UBH and its attorneys that touches on issues of plan or benefit administration. Plaintiffs' argument stretches the fiduciary exception far beyond its limits. The fiduciary exception provides that under certain circumstances, an ERISA fiduciary "is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration." The Ninth Circuit has cautioned, however, that the fiduciary exception has a "modest reach," and difficult calls should be made in favor of preserving the privilege. Thus, it is only where the fiduciary seeks legal advice in its capacity as a fiduciary on matters of plan administration that the beneficiary is entitled to discover otherwise privileged information. Where the fiduciary seeks legal advice in its individual capacity, or on matters unrelated to the beneficiary's plan or benefits, the privilege remains intact.

Plaintiffs' Motion proceeds from two principle misconceptions about the fiduciary exception. First, Plaintiffs contend that a fiduciary can only protect legal advice it received concerning its own liability if that advice was provided in response to "actual adversity" between the fiduciary and a beneficiary amounting to imminent or active litigation. Second, Plaintiffs contend that the fiduciary exception entitles them to discover all privileged communications

about plan or benefit administration, regardless of whether those communications concern their benefits or their plans. Yet, the Ninth Circuit and the authorities cited by Plaintiffs do not condone such an expansive reading of the fiduciary exception.

When the fiduciary exception is applied accurately to UBH's privileged communications, it is clear that Plaintiffs fail to meet their burden of proving that those communications are subject to the exception. As a result, Plaintiffs' Motion should be denied in its entirety.

## BACKGROUND

### A. Plaintiffs Seek Production of Privileged E-mails Relating to the General Application of UBH's Guidelines.

The document requests at issue on this motion are Document Requests 7-11 in Plaintiffs' first set of requests for production to UBH. In those requests, Plaintiffs initially sought all internal UBH communications regarding the application of various types of UBH guidelines.[1] *See* Declaration of Caroline E. Reynolds in Support of Plaintiffs' Motion to Compel Defendant United Behavioral Health to Produce Documents Improperly Withheld or Redacted as Privileged ("Reynolds Decl."), Ex. A [Doc. 99-1] at 8-9 (Requests Nos. 7-11). UBH objected to these Requests on the grounds that they were, among other things, overly broad in scope, unduly vague, ambiguous, overbroad, and not susceptible to a meaningful response. *Id.*, Ex. B [Doc. 99-2]; Declaration of Nathaniel P. Bualat in Support of Opposition to Motion to Compel Defendant United Behavioral Health to Produce Documents Withheld or Redacted as Privileged ("Bualat Decl.") ¶ 2.

In response to UBH's objections, the parties met and conferred, and Plaintiffs agreed to narrow Request Nos. 7-11 to responsive e-mail communications to or from an agreed-upon list of custodians and filtered to match an agreed-upon set of search terms. Bualat Decl. ¶ 3. Plaintiffs also agreed that communications about the application of guidelines to a specific beneficiary's

[1] Contrary to Plaintiffs' assertions in the introduction of their Motion, this discovery did not seek "how and why UBH writes and revises" its guidelines or "what they mean", instead, it sought communications about UBH's application of its guidelines. *See* Reynolds, Decl. Exhs. A and C [Doc. 99-1; 99-3].

claim would be excluded from the production. *Id*. As a result, Request Nos. 7-11 were effectively narrowed to include only e-mails addressing the general application of UBH's guidelines, as opposed to the specific application of any particular guideline in any particular instance. In turn, UBH agreed, in response to other discovery requests, that it would produce claims records for a sample of putative class members, including documents regarding application of the guidelines to their specific benefit claims. *Id.*

On August 11, 2015, UBH began producing the approximately 850 internal communications it determined were responsive to Plaintiffs' requests. Bualat Decl. ¶ 4. The bulk of these e-mails were produced in UBH's initial production on August 11, 2015, and UBH confirmed completion of the production of the e-mails on October 7, 2015. *Id.* These e-mails are part of over 110,000 pages of documents that UBH has produced in this litigation. *Id.* The production includes UBH's guidelines, training materials relating to those guidelines, feedback regarding the guidelines, organizational charts, documents relating to UBH's policies and procedures for benefit determinations, statistics relating to benefit determinations, documents pertaining to UBH's utilization review process, documents pertaining to the *Wit* and *Alexander* named Plaintiffs, and documents pertaining to the agreed upon *Wit* and *Alexander* sample members. *Id.*

**B. UBH Withheld Or Redacted 182 E-mails Based On The Attorney-Client Privilege.**

During UBH's review of the thousands of e-mails that hit on the search terms, it identified responsive communications that contained privileged information. UBH redacted and produced the majority of those communications, and withheld 67 communications in their entirety. Bualat Decl. ¶ 5. Using the categories Plaintiffs suggest in their motion to compel, the privileged communications that UBH withheld or redacted include the following:

- **Category 1 – Triana Memorandum**. In 65 of the produced documents, UBH redacted a memorandum initially drafted by Lorenzo Triana, M.D., UBH's Senior Vice President for Medical Management. This memorandum was directed to all Medical Directors and Clinical Staff at UBH, with the subject, "Avoiding Statements Implying Adverse Benefit Determinations May Be Based on 'Fail First' or 'Step Therapy' Requirements." *See, e.g.*, Reynolds Decl., Ex. H.1 [Doc.

110]. This memorandum was redacted based on the attorney-client privilege because although it was initially drafted by Dr. Triana (a non-attorney), the memorandum includes legal advice provided by counsel regarding compliance and litigation exposure. Declaration of Adam Easterday in Support of Opposition to Motion to Compel Defendant United Behavioral Health to Produce Documents Redacted or Withheld as Privileged ("Easterday Decl.") ¶¶ 3-6.

- **Category 2 - IOP CDGs Question**. In five of the produced documents, UBH redacted communications seeking and providing legal advice from in-house counsel relating to coverage determination guidelines and litigation exposure. Easterday Decl. ¶¶ 3-5, 7; *see, e.g.*, Reynolds Decl., Ex. H.2 [Doc. 110-1].

- **Category 3 - Calendar Entry**. In one of the produced documents, UBH redacted communications to counsel seeking legal advice regarding litigation exposure relating to utilization management activities, and attaching summaries and assessments of UBH litigation. Easterday Decl. ¶¶ 3-5, 8; *see, e.g.*, Reynolds Decl., Ex. H.3 [Doc. 110-2].

- **Category 4 - TMS Policy Inquiry**. In 31 produced documents, UBH redacted legal guidance provided by counsel regarding plan-specific application of transcranial magnetic stimulation ("TMS") benefits, a treatment for depression that none of the named Plaintiffs sought as part of their health care benefits. *See, e.g.*, Reynolds Decl., Ex. H.4 [Doc. 110-3].

- **Category 5 - Parity FAQs**. In five produced documents, UBH redacted portions of a draft "Frequently Asked Questions" document relating to the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA") and its impact on UBH's Coverage Determination Guidelines. These portions were redacted on the ground that they reflect legal advice relating to state specific legal mandates that do not apply to any of the named Plaintiffs. *See, e.g.*, Reynolds Decl., Ex. H.5 [Doc. 110-4].

- **Category 6 - CDG Implementation**. In two of the produced documents, UBH redacted communications concerning implementation of UBH's Coverage Determination Guidelines for determinations in notification cases because they reflect legal advice relating to state specific legal mandates that do not apply to any of the named Plaintiffs. *See, e.g.*, Reynolds Decl., Exs. H.6 [Doc. 110-5].

- **Category 7 - NAPHS Inquiry**. In three of the produced documents, UBH redacted communications containing legal advice from counsel regarding MHPAEA compliance unrelated to any of the named Plaintiffs' specific benefit plans or claims. *See, e.g.*, Reynolds Decl., Ex. H.7 [Doc. 110-6].

- **Category 8 - Care Advocate Job Aid**. In two of the produced documents, UBH redacted communications regarding "job aid for Care Advocates" because they include communications in which legal advice is sought from, and provided by, in-house counsel relating to ERISA plans in Texas and Florida. Notably, the plans at issue in these communications do not apply to any of the named Plaintiffs. *See,*

*e.g.*, Reynolds Decl., Ex. H.8 [Doc. 110-7].

- **Category 9 - LOC Guideline Change.** In one of the produced documents, UBH redacted legal advice from counsel that was provided with respect to fiscal intermediary or administrative service organization accounts prior to 2011 that are unrelated to the named Plaintiffs' benefit plans. *See, e.g.*, Reynolds Decl., Ex. H.9 [Doc. 110-8].

### C. Plaintiffs Contend That All of these Communications Are Subject to the Fiduciary Exception to the Attorney-Client Privilege.

Plaintiffs objected to UBH's privilege redactions in an August 21, 2015 letter, making, for the first time, a generalized statement about the application of the fiduciary exception to UBH's internal e-mails. Bualat Decl. ¶ 6; Reynolds Decl., Ex. D [Doc. 99-4]. On September 11, 2015 and September 16, 2015, the parties held an in-person and a telephonic meet-and-confer, respectively, regarding various topics, including UBH's privilege assertions, during which UBH explained and categorized the circumstances under which the fiduciary exception does not apply, including those raised in this opposition.[2] Bualat Decl. ¶ 8. UBH also agreed to provide a privilege log that, in addition to the fields required by the Rules, would include an additional field entitled "Reasons Fiduciary Exception Does Not Apply." UBH populated this field, as applicable, with descriptions reflecting the following categories: (i) communications seeking, rendering, or transmitting legal advice unrelated to the named plaintiffs' benefit claims or plan; (ii) communications seeking, rendering, or transmitting legal advice intended for protection of UBH; and/or (iii) communications clearly unrelated to fiduciary administration. *Id.*; Reynolds Decl., Ex. E [Doc. 99-5]. UBH served its initial privilege log on October 2, 2015. Bualat Decl. ¶ 9. UBH also produced additional e-mails and disclosed redacted content that it initially withheld, having determined that material to be either not privileged or subject to the fiduciary

[2] In correspondence prior to the in-person meet-and-confer, UBH noted multiple limitations to the fiduciary exception to the attorney-client privilege, including among other things, the distinction between settlor functions and fiduciary functions. Bualat Decl. ¶ 7. Contrary to Plaintiffs' assertion, UBH neither raised nor subsequently waived or abandoned any defense regarding the settlor function, nor did it identify communications that related to a settlor function. UBH withholds no attorney-client privileged communications at issue in this motion based on the settlor function. *Id.*

exception. *Id.* ¶ 10.

Between October 14, 2015 and November 11, 2015, the parties exchanged meet-and-confer correspondence regarding UBH's privilege assertions, which Plaintiffs continued to dispute, focusing on UBH's actual privilege assertions in its privilege log. Bualat Decl. ¶ 11; Reynolds Decl., Ex. D [Doc. 99-4]. On October 30, 2015, UBH served a revised privilege log ("Privilege Log") that included the 182 documents that are the subject of Plaintiffs' Motion.[3] Bualat Decl. ¶ 12; Reynolds Decl., Ex. F [Doc. 99-6].

Plaintiffs raised this issue in the parties' November 6, 2015 Joint Case Management Statement and again at the November 13, 2015 Case Management Conference. The Court authorized Plaintiffs to file this motion to compel, which they did on November 23, 2015.

## ARGUMENT

### I. ALL OF THE COMMUNICATIONS AT ISSUE ARE CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATIONS.

The attorney-client privilege is "perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997); *see also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *United States v. Mett*, 178 F.3d 1058, 1062 (9th Cir. 1999). By encouraging honest and thorough communication between attorneys and their clients, the privilege allows attorneys to acquire the comprehensive information necessary to effectively represent and advise their clients. *Mett*, 178 F.3d at 1062. Not only does this privilege foster honesty between attorney and client, it "serves public ends" by promoting a legal system founded upon fully-informed advocacy. *Upjohn*, 449 U.S. at 389.

To that end, the attorney-client privilege protects confidential communications between a client and an attorney from disclosure. Thus, "(1) (w)here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that

[3] UBH later noticed that the descriptions for two entries in its October 30, 2015 privilege log for withheld documents, UBH-0090 and UBH-0091, required revising and provided Plaintiffs with a revised privilege log on December 10, 2015. Bualat Decl. ¶ 14, Ex. C.

purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). A document need not be authored by or addressed to an attorney to be protected by the attorney-client privilege. *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002). The protection for confidential attorney-client communications extends to communications among non-lawyer corporate personnel if the dominant intent is to relay or prepare information in order to obtain legal advice from the lawyer. *See id.* (holding such communications are subject to the privilege because they are comparable to privileged notes a client would make in preparation for a meeting with counsel); *see also AT & T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614 at *3 (N.D. Cal., Apr. 18, 2003) ("[c]ommunications containing information compiled by corporate employees for the purpose of seeking legal advice and later communicated to counsel are protected by attorney-client privilege . . . As long as the legal implications were understood at the beginning of the inquiry . . ."). In addition, dissemination of privileged legal advice within a company to employees so that they can carry out their work and make informed decisions does not destroy the privilege. *Garvey v. Hulu, LLC*, No. 11-CV-03764-LB, 2015 WL 294850 at *3 (N.D. Cal., Jan. 21, 2015); *see also Robinson v. Cnty. of San Joaquin*, No. 2:12-CV-2783 MCE GGH, 2014 WL 5473049 at *7 (E.D. Cal., Oct. 28, 2014) (holding that content of e-mails between non-attorneys regarding "EEOC complaints" and "civil action" were privileged because they related to legal advice and/or mental impressions of attorneys).

UBH's privilege log adequately sets forth the basis for each privilege assertion at issue. *See, e.g.*, Reynolds Decl., Ex. F [Doc. 99-6] at UBH-0151 (described in privilege log as "E-mail conversation between attorney and client regarding application of parity rulings from recent lawsuit"), UBH-0084 (described in privilege log as "E-mail conversation between attorney and client regarding litigation issues and expenses for meeting discussion"). As described in UBH's Privilege Log (Reynolds Decl. Ex. F), all of the communications at issue in this motion are protected by the attorney-client privilege because they are either (a) communications between in-house attorney(s) and business personnel at UBH for the purpose of soliciting or providing legal

advice, or (b) communications between business personnel at UBH with the intent to seek or convey legal advice. Notably, Plaintiffs do not challenge UBH's privilege designations for seven of the nine categories at issue. Plaintiffs argue that only two categories of documents are not privileged: the Triana Memorandum (Category 1) and the TMS documents (Category 4). As set forth below, the communications in both categories are protected by the attorney-client privilege.[4]

The Triana Memorandum was originally drafted in the summer of 2011. At that time, UBH's legal department was aware of and monitoring legal challenges within the managed care industry relating to the Mental Health Parity and Addiction Equity Act ("MHPAEA"), and its implementing regulations. Easterday Decl. ¶¶ 3-4; *see, e.g.*,Reynolds Decl., Ex. F at UBH-0094, UBH-0096. Dr. Triana sought legal advice from counsel in order to communicate to UBH's medical directors about these recent statutory changes to ensure compliance with the new law and to prevent litigation. Easterday Decl. ¶ 5-6. Counsel reviewed a draft of the communication created Dr. Triana, and then provided legal advice that was incorporated into the final document before distribution. Easterday Decl. ¶ 6; *see also* Reynolds Decl., Ex. F at UBH-0094. The final Triana Memorandum containing the incorporated legal advice was then circulated by Dr. Triana to medical directors and psychologist peer reviewers at UBH beginning in September 2011. Easterday Decl. ¶ 6. The Triana Memorandum and the related redacted communications are privileged because (i) the legal implications of the memorandum and intent to seek legal advice was understood when it was first prepared, (ii) legal advice was provided and incorporated into the memorandum, and (iii) the memorandum was confidentially disseminated to UBH employees so that they could carry out their work and make informed decisions. *See In re New York Renu with Moistureloc Prod. Liab. Litig.*, No. CA 2:06-MN-77777-DCN, 2008 WL 2338552 at *10 (D.S.C., May 8, 2008) (holding if non-legal personnel involved in the e-mail exchange "intended to seek legal advice of any kind over the subject matter contained in the memoranda," then the

---

[4] Despite Plaintiffs conclusory assertion that there are "numerous other entries" similar to the Triana Memorandum and TMS documents (*see* Mot. at 8.), Plaintiffs offer no evidence or argument to call into question the privileged nature of any of the other communications identified on the privilege log.

exchange is privileged).

Similarly, the redacted portions of certain e-mails relating to TMS benefits are privileged. These are communications between non-legal employees in which they directly transmit legal advice received from counsel regarding TMS benefits. *See, e.g.*, Reynolds Decl., Ex. F [Doc. 99-6] at UBH-0078. The e-mails directly reflect and incorporate the legal advice and are therefore privileged. *Id*. Plaintiffs' bald assertion that these documents cannot be privileged because an attorney did not draft them ignores well-settled law. It does not matter whether counsel actively "weighed in" on the e-mails; they reflect counsel's privileged advice and are properly classified as privileged.

## II. THE FIDUCIARY EXCEPTION DOES NOT APPLY TO THE COMMUNICATIONS AT ISSUE IN THIS MOTION.

### A. The Fiduciary Exception Has a "Modest Reach" In Matters of Plan Administration.

In their motion, Plaintiffs contend that the fiduciary exception to the attorney-client privilege operates as a blanket exception to the sacred protections of the privilege for each and every one of the e-mails at issue simply because they relate to UBH's business of administering ERISA health benefit plans. Plaintiffs' broad characterization of the fiduciary exception is unsupported by Ninth Circuit law and ignores the individualized nature of the communications.

The Ninth Circuit has specifically addressed the limited nature of the fiduciary exception to the attorney-client privilege. Generally speaking, "[t]he fiduciary exception provides that an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration." *Mett*, 178 F.3d at 1063. The exception to the privilege has been rooted in two distinct rationales. *Id.* Some courts, including the Ninth Circuit, start from the premise that the beneficiary is the real client when the advice is sought by the fiduciary on behalf of the beneficiaries of the trust. *Id.* (citing *United States v. Evans*, 796 F.2d 264, 266 (9th Cir. 1986)). Other courts, including the Second Circuit, take a broader view that a fiduciary has a duty to disclose matters of plan administration to the beneficiary, and this duty overrides the attorney-client privilege. *Id.* (citing *Becher v. Long Is. Lighting Co.*, 129 F.3d 268, 271-272 (2nd Cir. 1997).

The Ninth Circuit in *Mett* eschewed a broader view, emphasizing that the fiduciary exception to the attorney-client privilege has a "modest reach," and specifically rejecting application of the fiduciary exception "whenever otherwise privileged legal advice 'relates to' fiduciary matters." *See Mett*, 178 F.3d. at 1064-66. The court listed four reasons for rejecting a broad view of the fiduciary exception. First, the broad view would "swallow the entirety of the attorney-client privilege" because any legal advice concerning an ERISA plan could "relate to" the administration of the plan. Second, only communications where the trustee is acting as the representative of the beneficiaries should be excluded from the privilege and not communications where a trustee seeks legal advice for its own protection. Third, and perhaps most importantly, hard cases must be resolved in favor of the privilege, not in favor of disclosure. Finally, as a matter of policy, an uncertain privilege will discourage trustees from seeking legal advice, to the detriment of the beneficiaries. *Id*. at 1064-65.

It is Plaintiffs who carry the heavy burden of proving that the fiduciary exception applies to each of the communications at issue. *See Mett*, 178 F.3d at 1064 (A party that seeks to pierce the attorney-client privilege bears the burden of showing an exception exists.) They have not carried that burden here.

### B. The Fiduciary Exception to the Attorney-Client Privilege Does Not Apply to Communications Seeking or Reflecting Legal Advice Regarding UBH's Potential Liability (Categories 1-3).

#### 1. Under Ninth Circuit Precedent, The Fiduciary Exception Does Not Apply to Legal Advice Provided For the Purpose of Protecting Against Fiduciary Liability.

In *Mett*, the Ninth Circuit made clear that the fiduciary exception does not extend to attorney-client communications made for the purpose of evaluating potential liability of the fiduciary. *Mett*, 178 F.3d at 1064, 1066. Courts in this jurisdiction have emphasized that individualized analysis is required to determine whether legal advice was given for the purpose of addressing fiduciary liability, thus rendering the fiduciary exception inapplicable, or whether the advice was given for the purpose of plan administration, rendering the exception potentially applicable. *See Fischel v. Equitable Life Assurance*, 191 F.R.D. 606, 608-09 (N.D. Cal. 2000). In *Fischel*, the court explained that the Ninth Circuit:

> [E]ndors[es] a test that focuses on the intended recipient of the advice and the purpose for which it is sought. Another way of putting it is that *Mett* limits the scope of advice that relates to "plan administration" by excluding from it any advice whose goal is to advise the trustee about the legal implications of actions and decisions undertaken while performing its fiduciary obligations.

*Id.* at 609. Thus, in evaluating whether certain privileged communications about a fiduciary's compliance with the Internal Revenue Code were subject to the fiduciary exception to the privilege, the court in *Fischel* proclaimed that the linchpin was whether the authors of the communications were "concerned about the trustee's personal liability" or instead focused on "explaining and assisting with the fiduciary obligations." *Id.* at 610. Based on the specific content of the communications, the court found they were focused on the latter, and thus discoverable.[5]

Plaintiffs concede that where the purpose of the legal advice is to protect against fiduciary liability, the attorney advice (and communication) remains protected by the attorney-client privilege. Mot. at 11; *Mett*, 178 F.3d at 1064, 1066. However, Plaintiffs argue that the purpose of legal advice only relates to fiduciary liability where there is "actual adversity" between the parties with imminent or active litigation. Mot. at 11-12, 19-20. This bright line rule ignores the holding in *Mett*. The Ninth Circuit made clear that the context and content of the communications must be evaluated to determine if the advice of counsel was provided to address the legal implications of the fiduciary's actions. *See Mett*, 178 F.3d at 1064; *Fischel*, 191 F.R.D. 608-09. There is no requirement that the advice address fiduciary liability in the context of imminent or active litigation.

Plaintiffs' reliance upon *Klein v. Northwestern Mutual Life Insurance Company*, 806 F. Supp. 2d 1120 (S.D. Cal. 2011), and *Allen v. Honeywell Retirement Earnings Plan*, 698 F. Supp. 2d 1197 (D. Ariz. 2010), and their progeny for their "actual adversity" standard is misplaced, as

---

[5] Plaintiffs cite *Fischel* for the proposition that the fiduciary exception does not apply where the communication concerns compliance with a statutory regime. Mot. at 19. To the contrary, the court's holding in that case was not based on the fact that the advice related to compliance with a statute. Rather, the decision was based on the content of that advice, which the court found evidenced that the purpose of the legal advice was to explain fiduciary obligations.

these cases are factually inapposite. Mot. at 11-12, 19-20. Both *Klein* and *Allen* involved the denial of benefits for a single beneficiary, followed by a lawsuit filed by that beneficiary against the fiduciary to challenge that denial. In each case, the beneficiary sought production of attorney communications relating to the underlying benefit determination, and the fiduciary argued that because the disputes ultimately led to litigation, the privileged communications should not be discoverable because they related to potential fiduciary liability. *See Klein,* 806 F. Supp. 2d at 1133 (attorney communications regarding determination of the plaintiffs' underlying claims); *Allen*, 698 F. Supp. 2d at 1202-03 (same); *see also Gundersen v. Metropolitan Life Ins. Co.*, No. 2:10-cv-50 (DB), 2011 WL487755 at *8 (D. Utah, Feb. 7, 2011) (same); *Sizemore v. Pacific Gas & Electric Retirement Plan*, 952 F. Supp. 2d 894 (N.D. Cal. 2013) (same); *Stephan v. Unum Life Insurance Company of America*, 697 F.3d 917, 921, 932-33 (9th Cir. 2012) (same). Because the threat of litigation could always be asserted by a fiduciary after being sued for denial of benefits by an individual beneficiary, the requirement of "actual adversity" at the time of the communication prevents the fiduciary exception from being swallowed entirely in an individual benefits claim. As a result, courts in those circumstances have required a showing of "actual adversity" at the time of the communication, when evaluating whether or not the attorney communication related to fiduciary liability.

Plaintiffs cite no case that applies the "actual adversity" standard outside of the specific context of attorney advice provided in the course of an individual claim dispute. To the contrary, where the attorney advice is provided to the fiduciary outside of that context, the fact-specific inquiry described in *Mett* and *Fischel* is required to determine whether the advice addresses fiduciary liability or whether it merely explains or assists in administering the fiduciary's obligations. If this individual inquiry were disregarded, and the "actual adversity" standard applied in all contexts, a fiduciary would not be able to rely on counsel to assess the appropriateness of its conduct absent a pending or imminent lawsuit. Such a result would discourage ERISA trustees from seeking legal advice regarding their policies and practices, which is in direct contravention of the policy announced by the Ninth Circuit in *Mett*:

> [F]rom a policy perspective, an uncertain attorney-client privilege

> will likely result in ERISA trustees shying away from legal advice regarding the performance of their duties. This outcome ultimately hurts beneficiaries-all else being equal, beneficiaries should prefer well-counseled trustees who clearly understand their duties.

*Mett*, 178 F.3d at 1065; *see also Fischel*, 191 F.R.D. at 609 ("in the ERISA contest, a well-defined attorney-client privilege encourages a trustee to seek advice about its potential liability, and therefore advances important policy interests…otherwise, trustees might well be reluctant to seek legal advice in what can be a complex area of law."). It is in the interest of Plaintiffs and all beneficiaries of ERISA plans administered by UBH that UBH be free to seek advice of counsel with respect to all aspects of its business. The Ninth Circuit's narrow and context-specific approach to the fiduciary exception furthers this objective. Plaintiffs' categorical and unyielding approach does not.

**2. The Communications in Categories 1, 2 and 3 Involve Attorney Advice Provided For the Purpose of Addressing Fiduciary Liability, and Thus Are Not Subject to the Fiduciary Exception.**

The content and context of the communications falling under Categories 1, 2 and 3 in Plaintiffs' Motion demonstrate that these communications contain attorney advice rendered to UBH in its individual capacity for the purpose of addressing UBH's liability, not its role as a fiduciary for Plaintiffs' plans. As such, these communications fall squarely on the privileged side of the *Mett* spectrum and are not subject to the fiduciary exception. For example:

- Category 1 – Triana Memorandum. As described in Section I.1, on Page 8 above, this memorandum includes legal advice regarding compliance and litigation exposure relating to the Mental Health Parity and Addiction Equity Act. The memorandum was prepared and disseminated to address litigation exposure and to advise UBH about the legal implications of its actions and decisions with respect to the exposure in performing its duties. Easterday Decl. ¶¶ 3-6; *see, e.g.*, Reynolds Decl., Ex. H.1 [Doc. 110].

- Category 2 – IOP CDGs Question. Counsel provided legal advice, in April 2013, about the development of coverage determination guidelines in relation to mental health parity. This advice was provided as part of continuing advice provided by counsel relating to mental health parity and litigation exposure. At that time, litigation in the area was active in the industry, including two separate cases filed in the preceding year by Plaintiffs' counsel against UBH about mental health parity. Mr. Bendat had filed a suit in May 2012, and Mr. Hufford had filed a suit

in March 2013.[6] Easterday Decl. ¶¶ 3-5, 7; *see, e.g.*, Reynolds Decl., Ex. H.2 [Doc. 110-1].

- Category 3 – Calendar Entry. Counsel was asked to provide legal advice regarding potential litigation exposure relating to utilization management activities. Attached to the document were summaries and assessments of ongoing UBH litigation that were discussed amongst the group, which are identified on UBH's privilege log as UBH-84 and UBH-85. Easterday Decl. ¶¶ 3-5, 8; *see, e.g.*, Reynolds Decl., Ex. H.3 [Doc. 110-2].

Thus, Plaintiffs fail to meet their burden to show the attorney advice in these communications was for the purpose of explaining and assisting in UBH's fiduciary obligations rather than to address UBH's potential individual liability. Under *Mett* and *Fischel*, these documents are privileged and not subject to the fiduciary exception.

### C. The Fiduciary Exception to the Attorney-Client Privilege Does Not Apply to Communications About Plans or Claims Unrelated to the Plaintiffs (Categories 4-9).

#### 1. The Fiduciary Exception To The Attorney-Client Privilege Does Not Stretch To Advice Regarding Administration of Benefit Claims or Plans Not Applicable to The Plaintiffs.

In their motion, Plaintiffs take the position that the fiduciary exception to the attorney-client privilege permits them access to privileged communications by UBH relating to claims and plans that have nothing to do with Plaintiffs. There is no support under the case law for such a broad application of the fiduciary exception. Indeed, under Ninth Circuit precedent, the fiduciary exception has been used only to disable the attorney-client privilege for communications directly about the administration of the plaintiff's benefit claim or the plaintiff's specific benefit plan. The cases upon which Plaintiffs rely reveal the exceptions' narrow reach:

- In *Sizemore*, the court found that the fiduciary exception applied to two redacted e-mails that were directly about the plaintiff's claim. 952 F. Supp. 2d at 896-97, 900-901 (discussing e-mails that specifically referenced the plaintiff).

---

[6] In their Footnotes 11 and 13, Plaintiffs attempt to argue that UBH's valid assertion of its privilege somehow shows that it violated its fiduciary duties. UBH's recognition that it is a frequent litigation target and therefore carefully considers regulatory requirements, statutory compliance, and potential claims is not an admission of liability as to any alleged breach of fiduciary duty. Indeed, as described above, the Ninth Circuit believes that an ERISA fiduciary seeking legal advice regarding such issues is consistent with sound public policy and should be encouraged. *Mett*, 178 F.3d at 1065.

- In *Stephan*, the court found that the exception applied to memoranda written about how the plaintiff's insurance policy should be interpreted and whether plaintiff's bonus counted as earnings under the plan. 697 F.3d at 921, 932-33.

- In *Gundersen*, the District of Utah found that the fiduciary exception applied to one redacted document in the administrative record relating to the plaintiff's benefit claim at issue. WL487755 at *8.

- In *Klein*, while no specific communications were discussed, the focus was on whether the exception applied to communications relating to the denial of the plaintiff's specific claim. 806 F. Supp. 2d at 1133.

- In *Fischel*, the plaintiffs were, unlike here, a certified class of former employees seeking, through the fiduciary exception, communications about alleged false statements or repudiated promises relating to their claims against a common plan. 191 F.R.D. at 607.

- In *Allen*, the plaintiffs were also, unlike here, a certified class that obtained common plan-wide documents that related to the plaintiffs' claims through application of the fiduciary exception. 698 F. Supp. 2d at 1202-03.

This limitation is consistent with the rationale that the exception exists because the beneficiary is the real "client" for the legal advice the fiduciary receives relating to administration of the beneficiary's plan or benefits. *See Mett*, 178 F.3d at 1063. That rationale, however, does not apply when a beneficiary-plaintiff seeks attorney-client communications regarding other plan beneficiaries or the administration of plan benefits that she did not seek because the plan administrator is not acting as a fiduciary for the plaintiff in such situations. Where a beneficiary-plaintiff is not the holder of the privilege, she is not entitled to discover privileged communications about plan administration or benefit adjudication.

Plaintiffs rely on the alternate rationale for the fiduciary exception to the attorney-client privilege, which is based on a fiduciary duty to disclose all matters of plan administration to a beneficiary. This alternate rationale does not support extending the fiduciary exception to communications unrelated to the named Plaintiffs' plans, benefits, treatments, or diagnoses. Rather, Plaintiffs seek disclosure of privileged communications that have nothing to do with the administration of plans to which they are beneficiaries or the benefits they seek. Not surprisingly,

Plaintiffs fail to cite any case law supporting such a proposition.[7]

Based on the limited reach of the fiduciary exception in Plaintiffs' own authorities and the Ninth Circuit's stated rationale for the exception, the most expansive application of the exception would, at most, cover communications that relate to: (i) the named Plaintiffs' specific benefit plans, (ii) the type of benefit claims at issue, (iii) the guidelines UBH applied to the named Plaintiffs' benefit claims at issue, [8] (iv) the diagnoses of any of the named Plaintiffs, or (v) the specific treatments the named Plaintiffs have been denied. *See Sizemore*, 952 F. Supp. 2d at 896-97, 900-01 (applying fiduciary exception only to privileged communications that were directly about the plaintiff's claim); *Stephan*, 697 F.3d at 921, 932-33 (same); *Gundersen*, 2011 WL487755 at*8 (same); *Klein*, 806 F. Supp. 2d at 1133 (same); *see also Fischel*, 1991 F.R.D. at 607 (applying fiduciary exception only to privilege communications relating to the common plan of a certified class); *Allen*, 698 F. Supp. 2d at 1202-03 (same). UBH applied the fiduciary exception and produced documents where one of these criteria was met.[9]

In contrast, relying on *Fischel*, Plaintiffs argue that the fiduciary exception "entitles [all] beneficiaries to see *all* legal advice the fiduciary receives about plan administration". (Mot. at 12, 14) (emphasis in original). But, Plaintiffs fail to acknowledge the key distinguishing factor – in *Fischel,* the court had already certified a class of former employees who were seeking, through

---

[7] Plaintiffs "creatively" cite *Mett* for the proposition that the fiduciary exception applies to all information regarding plan administration. But, as discussed above, *Mett* does not say that and has rejected that view. *Mett*, 178 F.3d at 1064-66; *Fischel*, 191 F.R.D. at 608-09 (interpreting *Mett* as rejecting "an expansive construction of the fiduciary exception that would allow disclosure of all documents that relate to a trustee's fiduciary obligation to administer the plan.") Relatedly, contrary to Plaintiffs' assertion, UBH has not referred to any portion of *Mett* as dicta, but instead referred to portions of *Gunderson* as such (*see, e.g.*, below).

[8] Plaintiffs argue that UBH's guidelines are not plan-specific. UBH recognizes that it does not limit the use of its guidelines to particular plans or specific beneficiaries, and it did not withhold communications about guidelines that were used in the denial of any of the named Plaintiffs' claims at issue under this limitation of the fiduciary exception. However, Plaintiffs' argument that they are entitled to *all* communications regarding *all* guidelines does not comport with the limited scope of the fiduciary exception because those guidelines are unrelated to Plaintiffs' claims.

[9] Contrary to Plaintiffs' characterizations, UBH does not contend that a communication has to be about a named Plaintiff's actual denied benefit claim for the fiduciary exception to apply.

the fiduciary exception, communications about alleged false statements or repudiated promises relating to their claims of misrepresentations with respect to a common plan. *See* 191 F.R.D. at 607. There is no certified class in this case. Nor does the proposed class constitute members of a single benefit plan also including the named plaintiffs. Indeed, it is undisputed that none of the disputed communications address any of the named Plaintiffs' plans, claims, or services. *Fischel* provides no support for the application of the fiduciary exception under such circumstances.

Plaintiffs also rely on dicta from an out-of-circuit district court. Mot. at 14-15 (citing *Gundersen*, 2011 WL487755 at *11). But *Gunderson* simply underscores the undisputed point that the fiduciary exception applies to communications about administration of the beneficiary-plaintiffs' benefits. *Gundersen* involved discovery of a file memo reflecting legal advice to ensure that the plan administrator acted correctly in the denial of Mr. Gundersen's benefits. The communication at issue was fundamental in the determination of Mr. Gundersen's appeal, and was produced in redacted form as part of Mr. Gundersen's administrative record. *Gundersen*, WL487755 at *11. The dicta from *Gunderson* that Plaintiffs rely upon does not suggest, much less establish, that Plaintiffs are entitled to *all* communications about administration of *all* plans and *all* benefits administered by UBH nationwide, regardless of privilege. No authority supports such a result.[10]

[10] Plaintiffs' argument that the ERISA statute and a Department of Labor ("DOL") Advisory Opinion from 1996 (Reynolds Decl., Ex. J [Doc. 99-21]) require UBH to provide "a wide range of information" is likewise unpersuasive. Mot. at 10. The sources cited by Plaintiffs call for the disclosure of limited types of information, and do not address the production of privileged communications like the ones at issue in this case. For example, 29 U.S.C. § 1024(b)(4) requires the administrator to furnish a limited selection of documents relating to the beneficiary's plan: "the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." This statute does not give beneficiaries the right to every document relating their benefit plans, much less privileged documents relating to other benefit plans. Similarly, the DOL Advisory Opinion interprets 29 U.S.C. § 1024(b)(4) to include a "usual and customary" fee schedule for treatment costs as an "instrument under which the plan is…operated." It does not provide beneficiaries the broad right to obtain privileged documents having nothing to do with themselves, their claims, or their plans.

**2. The Communications in Categories 4 Through 9 Are Not Subject to the Fiduciary Exception to the Attorney-Client Privilege Because They Do Not Relate to Plaintiffs' Plans, Benefits, Treatments, or Diagnoses.**

As stated above and shown by Plaintiffs' cited authority, the fiduciary exception has not been applied and does not reach to communications that do not directly relate to the benefit claims or the specific plans of the beneficiary-plaintiff at issue. Accordingly, Plaintiffs are not entitled to discover privileged communications with no connection to the named Plaintiffs' specific benefit plans, the benefit claims at issue, the guidelines UBH applied to the named Plaintiffs' benefit claims at issue, the diagnoses of any of the named Plaintiffs, or the specific benefits the named Plaintiffs have been denied. The categories of documents about which Plaintiffs complain, Categories 4 through 9, are not sufficiently related to any of the named Plaintiffs to warrant application of the fiduciary exception. For example:

- Category 4 (TMS Policy Inquiry) relates to TMS benefits, a treatment for depression that none of the named Plaintiffs have been denied. *See, e.g.*, Reynolds Decl., Ex. H.4 [Doc. 110-3].
- Category 5[11] (Parity FAQs) relates to state specific legal mandates that do not apply to the named Plaintiffs.[12] *See, e.g.*, Reynolds Decl., Ex. H.5 [Doc. 110-4].
- Category 6 (CDG Implementation) also relates to state specific legal mandates that do not apply to the named Plaintiffs. *See, e.g.*, Reynolds Decl., Exs. H.6 [Doc. 110-5].
- Category 7 (NAPHS Inquiry) relates to MHPAEA compliance that is unrelated to

---

[11] Plaintiffs' claim that "inconsistent" redactions between UBHWIT0058379 and UBHWIT0063769 (Mot. at 17, n. 8) are somehow evidence of improper privilege assertions is wrong. As Plaintiffs are well aware, those two documents are duplicates and UBHWIT0063760-71 ***replaced*** the previously produced UBHWIT0058370-81. On Plaintiffs' request, UBH agreed to revisit its privilege assertions to determine if any redactions for protected health information or attorney-client privilege could be narrowed. *See* Reynolds Decl., Ex. D [Doc. 99-4] at 3 (August 21, 2015 Letter to Bualat at p. 2), at 6 (September 4 Letter to Caridas at p. 2). Any re-reviewed documents that had previously been bates stamped and were being replaced with duplicates for which the privilege assertions had been narrowed were produced on October 6, 2015. Bualat Decl. ¶ 13. At that time, UBH sent Plaintiffs an email and Excel file identifying the original and updated bates numbers for all the previously produced documents in the October 6 production. *Id.*, Exs. A and B.

[12] Plaintiffs show considerable interest in communications regarding MHPAEA (Mot. at 16-17), even though they have abandoned the parity claims initially asserted in this case. This is further evidence of how attenuated these documents are from the named Plaintiffs' plans and benefits, and from Plaintiffs' case.

named Plaintiffs' specific benefit plans or claims. *See, e.g.*, Reynolds Decl., Ex. H.7 [Doc. 110-6].

- Category 8 (Care Advocate Job Aid) relates to ERISA plans in Texas and Florida, which do not apply to any of the named Plaintiffs. *See, e.g.*, Reynolds Decl., Ex. H.8 [Doc. 110-7].
- Category 9 (LOC Guideline Change) relates to specific accounts that are not the named Plaintiffs' benefit plans. *See, e.g.*, Reynolds Decl., Ex. H.9 [Doc. 110-8].

Because Plaintiffs have not shown, and cannot show, that these communications are sufficiently related to the named Plaintiffs to warrant application of the fiduciary exception, they have failed to meet their burden to pierce UBH's attorney-client privilege and obtain discovery of these materials.

### III. If Plaintiffs' Motion to Compel Is Not Denied In Its Entirety, *In Camera* Review Is Appropriate Before Any Disclosure of the Communications at Issue.

Plaintiffs' Motion to Compel should be denied in its entirety. As demonstrated above, Plaintiffs' arguments fail factually and as a matter of law. On its face, UBH's privilege log provides sufficient information to verify the attorney-client privilege and also explains why each document falls outside the fiduciary exception. Reynolds Decl., Ex. F [Doc. 99-6]. The documents identified in the privilege log were correctly withheld or redacted, and the fiduciary exception does not apply to any of these privileged communications.

However, if the Court does not deny Plaintiffs' motion in its entirety, before disclosure of any communications at issue is required, UBH respectfully seeks *in camera* review of all, or a sample of, the communications. The typical procedure when challenging privilege based on the fiduciary exception is for each communication to be examined individually *in camera* because "the nature of the particular attorney-client communication" is dispositive. *See Mett*, 178 F.3d at 1065 ("This communication-by-communication analysis…is crucial if the attorney-client privilege and the fiduciary exception are to coexist."); *see also Klein*, 806 F. Supp.2d at 1133.

## CONCLUSION

For the reasons set forth herein, Defendant United Behavioral Health respectfully requests that Plaintiffs' Motion to Compel be denied in its entirety.

Dated: December 11, 2015

CROWELL & MORING LLP

__/s/_Nathaniel P. Bualat_______

Christopher Flynn
Jennifer D. Romano
April N. Ross
Nathaniel P. Bualat
Attorneys for Defendant
United Behavioral Health