PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
399 Park Avenue, 14th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br>Action Filed: May 21, 2014<br><br>**MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| GARY ALEXANDER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-05337-JCS<br>Action Filed: December 4, 2014<br><br>Date: June 17, 2016<br>Time: 9:30 A.M.<br>Judge: Hon. Joseph C. Spero<br>Courtroom: G<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ..... iii

NOTICE OF MOTION AND MOTION TO COMPEL ..... 1

STATEMENT OF ISSUES TO BE DECIDED ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 2

I. THE PROPOSED CLASSES ..... 3

A. The Wit Guideline Class ..... 3

B. The Wit State Mandate Class ..... 3

C. The Alexander Guideline Class ..... 4

II. THE PUTATIVE CLASSES' CLAIMS ..... 4

A. Claim One: Breach of Fiduciary Duty ..... 4

B. Claim Two: Arbitrary and Capricious Denial of Benefits ..... 5

C. Remedies Sought by Plaintiffs and the Putative Class ..... 7

III. COMMON EVIDENCE SUPPORTS THE CLASSES' CLAIMS ..... 7

A. UBH Followed a Uniform Process in Making Clinical Decisions About Class Members' Coverage ..... 8

B. UBH's Uniform Process Employs a Uniform Set of Level-of-Care Criteria ..... 10

1. The Level of Care Guidelines ..... 11

2. The Coverage Determination Guidelines ..... 11

C. Pursuant to its Uniform Process, UBH Denied Coverage for the Named Plaintiffs' and the Sample Claimants' Treatment Based on its Uniform Guidelines ..... 12

D. Plaintiffs will Prove by Common Evidence that UBH's Guidelines Are More Restrictive than Generally Accepted Standards of Care ..... 13

IV. ARGUMENT ..... 15

A. This Class Action Satisfies the Requirements of Rule 23(a) ..... 15

1. The Classes Are So Numerous That Joinder Is Impracticable ..... 15

2. Questions of Law and Fact are Common to Plaintiffs and the Classes........ 16

3. Plaintiffs' Claims are Typical of the Claims of the Classes ......... 17

4. The Named Plaintiffs and Their Counsel Fairly and Adequately Represent the Interests of Each of the Proposed Classes........ 18

B. This Class Action Satisfies Rule 23(b) ........ 20

1. The Classes May Be Certified Under Rule 23(b)(1) ........ 20

2. The Classes May Be Certified Under Rule 23(b)(2) ........ 21

3. In the Alternative, the Classes May be Certified Under Rule 23(b)(3) ........ 22

C. In the Alternative, the Court May Certify an Issue Class Pursuant to Rule 23(c)(4)........ 25

CONCLUSION........ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.F. v. Providence Health Plan*,
300 F.R.D. 474 (D. Or. 2013) .......... 22

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 20

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
338 F.3d 755 (7th Cir. 2003) .......... 22

*Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*,
410 F.3d 1173 (9th Cir. 2005) .......... 6

*Conkright v. Frommert*,
559 U.S. 506 (2010) .......... 6

*Cox v. Allin Corp. Plan*,
70 F. Supp. 3d 1040 (N.D. Cal. 2014) .......... 6

*Ellis v. Costco Wholesale Corp.*,
285 F.R.D. 492 (N.D. Cal. 2012) .......... 25

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) .......... 16, 17

*Gaudin v. Saxon Mortg. Servs., Inc.*,
297 F.R.D. 417 (N.D. Cal. 2013) .......... 15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 23

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) .......... 18

*Hernandez v. Cty. of Monterey*,
305 F.R.D. 132 (N.D. Cal. 2015) .......... 21

*Huynh v. Harasz*,
Case No. 14-CV-02367-LHK, 2015 WL 7015567 (N.D. Cal. Nov. 12, 2015) .......... 22

*Kamakahi v. Am. Soc'y for Reproductive Med.*,
305 F.R.D. 164 (N.D. Cal. 2015) .......... passim

*Kanawi v. Bechtel Corp.*,
254 F.R.D. 102 (N.D. Cal. 2008) .......... 21

*Lee v. Pep Boys-Manny Moe & Jack of Cal.*,
No. 12-CV-05064-JSC, 2015 WL 9480475 (N.D. Cal. Dec. 23, 2015) .......... 21

*Lilly v. Jamba Juice Co.*,
308 F.R.D. 231 (N.D. Cal. 2014) .......... 15

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012) .......... 16

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
672 F.3d 482 (7th Cir. 2012) .......... 25

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .......... 21

*Skinner v. Northrop Grumman Ret. Plan B*,
673 F.3d 1162 (9th Cir. 2012) .......... 23

*Unknown Parties v. Johnson,*
No. CV 15-00250-TUC-DCB, 2016 WL 267009 (D. Ariz. Jan. 11, 2016) .......... 21

*Valentino v. Carter–Wallace, Inc.*,
97 F.3d 1227 (9th Cir.1996) .......... 25

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) .......... 16, 21

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) .......... 21

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) .......... 23

*Z.D. v. Grp. Health Coop.*,
No. C11-1119RSL, 2012 WL 1977962 (W.D. Wash. June 1, 2012) .......... 21

**Statutes**

215 Ill. Comp. Stat. Ann. 5/370c (West) .......... 6

27 R.I. Gen. Laws Ann. § 27-38.2-1 (West) .......... 6

29 U.S.C. § 1104(a)(1)(B) .......... 5

29 U.S.C. § 1132(a)(1)(B) .......... 5

29 U.S.C. § 1132(a)(3) .......... 5

29 U.S.C. § 1132(a)(3)(A) .......... 5

Conn. Gen. Stat. Ann. § 38a-591c (West) .......... 6

Tex. Ins. Code Ann. § 1368.007 (West) .......... 6

**Rules**

Fed. R. Civ. P. 23(a) .......... 15, 16, 18

Fed. R. Civ. P. 23(a)(1) .......... 15

Fed. R. Civ. P. 23(a)(2) .......... 16, 17

Fed. R. Civ. P. 23(a)(3) .......... 17

Fed. R. Civ. P. 23(a)(4) .......... 18

Fed. R. Civ. P. 23(b) .......... 15, 20, 25

Fed. R. Civ. P. 23(b)(1) .......... 21, 22, 25

Fed. R. Civ. P. 23(b)(1)(A) .......... 3, 20, 21

Fed. R. Civ. P. 23(b)(2) .......... passim

Fed. R. Civ. P. 23(b)(3) .......... passim

Fed. R. Civ. P. 23(c)(4) .......... 25

**Treatises**

Newberg on Class Actions § 3:27 (5th ed. 2013) .......... 17

## NOTICE OF MOTION AND MOTION TO COMPEL

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 17, 2016, at 9:30 A.M., in Courtroom G, 15th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Joseph C. Spero, Plaintiffs David and Natasha Wit, Lori Flanzraich, Cecilia Holdnak, Brian Muir, Brandt Pfeifer, Linda Tillitt, Gary Alexander, Michael Driscoll, David Haffner, and Corinna Klein (collectively "Plaintiffs") in the above-captioned actions will and hereby do move for class certification pursuant to Federal Rule of Civil Procedure 23.

The relief Plaintiffs request in this motion is an order: (1) certifying the proposed Classes defined below; (2) appointing Plaintiffs as Class representatives; and (3) appointing Zuckerman Spaeder LLP and Psych-Appeal, Inc. as Co-Lead Class Counsel for the Classes. Plaintiffs' motion is made pursuant to Federal Rule of Civil Procedure 23 and the Case Management Order entered on April 27, 2015, consolidating these cases for class certification discovery purposes. Plaintiffs' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Caroline E. Reynolds and all exhibits thereto, all pleadings on file in the above-captioned matters, and such other support as may be presented to the Court.

## STATEMENT OF ISSUES TO BE DECIDED

The issues for this Court to decide are: (1) whether the Court should certify as a class action, under Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3) and/or (c)(4), the claims of the proposed Classes defined below; (2) whether the Court should appoint Plaintiffs David and Natasha Wit, Lori Flanzraich, Cecilia Holdnak, Brian Muir, Brandt Pfeifer, Linda Tillitt, Gary Alexander, Michael Driscoll, David Haffner, and Corinna Klein as Class representatives; and (3) whether the Court should appoint Zuckerman Spaeder LLP and PsychAppeal, Inc. as Co-Lead Class Counsel for the Classes.

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

Plaintiffs in this pair of class actions challenge a single, common course of conduct pursued by Defendant United Behavioral Health ("UBH") that has jeopardized the health of tens of thousands of people. Acting as the claims administrator for mental health and substance use disorder benefits under each of the Class members' health insurance plans, UBH developed its own, internal criteria—its "Guidelines"—for its use in making discretionary coverage decisions, and then applied the Guidelines to deny coverage to all Class members. UBH's Guidelines, however, are far more restrictive than generally accepted standards of care and, hence, violate the terms of the Class members' plans. In particular, UBH created and applied its Guidelines to effectively limit coverage only to treatment for acute crises, thereby precluding coverage for treatment of chronic conditions and truncating coverage before members fully recover. By creating its fundamentally-flawed Guidelines and then using them to adjudicate and deny the Class members' requests for coverage[2], UBH breached its fiduciary duties and abused its discretion under the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1102 *et seq*. In this action, Plaintiffs seek, on behalf of the proposed Classes, declaratory and injunctive relief to establish the illegality of UBH's conduct, compel UBH to reform its coverage criteria going forward, and require UBH to reprocess denied claims pursuant to such criteria.

As discussed in detail below, evidence common to the Classes supports each one of the Plaintiffs' claims. Moreover, because UBH's common course of conduct affected all Class

---

[1] Because the issues to be decided in this motion are largely identical as between the *Wit* and *Alexander* cases, Plaintiffs have filed a single, identical Memorandum of Points and Authorities in both cases. This Memorandum will cite to filings in *Wit v. United Behavioral Health*, Case No. 3:14-CV-02346-JCS, as follows: *Wit* Dkt. No. __ at __, and to filings in *Alexander v. United Behavioral Health*, Case No. 3:14-CV-05337-JCS, as follows: *Alexander* Dkt. No. __ at __.

[2] For purposes of this Motion and the Class definitions, Plaintiffs use the term "request for coverage" to refer to both pre- and post-service requests and/or claims for benefits, which includes requests for pre-authorization of coverage, requests for coverage of continued services (i.e., concurrent review), and post-service claims with respect to completed services.

members in the same way, and because Plaintiffs primarily seek injunctive and declaratory relief, this action is quintessentially appropriate for certification under Federal Rule of Civil Procedure 23(b)(1)(A) and/or (b)(2). Plaintiffs also seek, in the alternative, certification under Rule 23(b)(3), which is appropriate for the same reasons: because this case will be dominated by fact and legal questions that are common to the Classes, and no individualized issues exist (let alone any that could trump the overriding common questions on which the lawsuit could turn).[3] For all of these reasons, the Court should certify the proposed Classes.

## I. THE PROPOSED CLASSES

Plaintiffs propose that the Court certify two classes in the *Wit* case and one class in the *Alexander* case, as defined below.

### A. The *Wit* Guideline Class

> Any member of a health benefit plan governed by ERISA whose request for coverage of residential treatment services for a mental illness or substance use disorder was denied by UBH, in whole or in part, on or after May 22, 2011, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines.
>
> The *Wit* Guideline Class excludes members of the *Wit* State Mandate Class, as defined below.

Plaintiffs propose that Named Plaintiffs David and Natasha Wit, Lori Flanzraich, Cecilia Holdnak, Brian Muir, and Linda Tillitt serve as Class Representatives for the *Wit* Guideline Class.

### B. The *Wit* State Mandate Class

> Any member of a fully-insured health benefit plan governed by both ERISA and the state law of Connecticut, Illinois, Rhode Island or Texas, whose request for coverage of residential treatment services for a substance use disorder was denied by UBH, in whole or in part, on or after May 22, 2011, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines and not upon the level-of-care criteria mandated by the applicable state law.

---

[3] Plaintiffs also seek, in the alternative, certification pursuant to Rule 23(c)(4) of the central, common issues driving the litigation.

> The *Wit* State Mandate Class excludes members of the *Wit* Guideline Class, as defined above.

Plaintiffs propose that Named Plaintiff Brandt Pfeifer serves as Class Representative for the *Wit* State Mandate Class.

### C. The *Alexander* Guideline Class

> Any member of a health benefit plan governed by ERISA whose request for coverage of outpatient or intensive outpatient services for a mental illness or substance use disorder was denied by UBH, in whole or in part, on or after May 22, 2011, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines.
>
> The *Alexander* Guideline Class excludes any member of a fully-insured plan governed by both ERISA and the state law of Connecticut, Illinois, Rhode Island or Texas, whose request for coverage of intensive outpatient treatment or outpatient treatment related to a substance use disorder.

Plaintiffs propose that Named Plaintiffs Gary Alexander, David Haffner, Corinna Klein, and Michael Driscoll serve as Class Representatives for the *Alexander* Guideline Class.

## II. <u>THE PUTATIVE CLASSES' CLAIMS</u>

Plaintiffs' claims focus exclusively on UBH's development of its Guidelines; the content of the Guidelines themselves; and on UBH's use of the Guidelines in denying coverage to the Class members. Therefore, the claims depend upon common questions of fact and law which, if proven, will result in class-wide relief.

### A. Claim One: Breach of Fiduciary Duty

In Counts I and III, Plaintiffs allege that UBH breached the fiduciary duties it owed to the Class members by developing Guidelines for use in making coverage decisions that are much more restrictive than generally accepted standards of care. *Wit* Dkt. No. 39 (First Am. Class Action Compl., Sept. 2, 2014) (hereafter "*Wit* Compl.") at ¶¶ 198, 210; *Wit* Dkt. No. 123 (Intervenor Compl., Feb. 12, 2016) (hereafter "*Tillitt* Compl.") at ¶¶ 88, 99; *Alexander* Dkt. No. 1 (Class Action Compl., Dec. 4, 2014) (hereafter, "*Alexander* Compl.") at ¶¶ 136, 146; *Alexander* Dkt. No. 87 (Intervenor Compl., Feb. 12, 2016) (hereafter "*Driscoll* Compl.") at

¶¶ 86, 96.[4] ERISA requires a fiduciary to discharge its duties "solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence, and diligence" of a prudent man acting in similar circumstances. *See* 29 U.S.C. § 1104(a)(1)(B). Plaintiffs allege that UBH breached each of those duties. UBH failed to administer the plans with reasonable "care, skill, prudence and diligence" by adopting excessively restrictive coverage criteria despite the fact that the plans cover treatment that is consistent with generally accepted standards, which are widely available and well known to UBH. *See, e.g.*, *Wit* Compl. ¶¶ 41, 58; *Alexander* Compl. ¶¶ 6, 16. UBH also breached its duty to administer the plans solely in the interests of the participants and beneficiaries, by prioritizing cost savings and purported "efficiency" over members' recovery. *See, e.g.*, *Wit* Compl. ¶ 13; *Alexander* Compl. ¶ 17.

Thus, to prove their fiduciary duty claims, Plaintiffs must establish: (1) that, when UBH created its Guidelines for use in making clinical coverage determinations, it was acting as an ERISA fiduciary; and (2) that, by developing its overly-restrictive Guidelines and relying on them to adjudicate requests for benefits, UBH breached its duties to Plaintiffs and the Class members. *See* 29 U.S.C. § 1104(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B) & (a)(3).

**B. Claim Two: Arbitrary and Capricious Denial of Benefits**

In Counts II and IV, Plaintiffs allege that UBH improperly adjudicated and denied Class members' requests for coverage because in making those determinations, UBH relied on its overly restrictive internal Guidelines. *Wit* Compl. ¶¶ 205, 214; *Tillitt* Compl. ¶¶ 94, 101-03; *Alexander* Compl. ¶¶ 141-42, 150; *Driscoll* Compl. ¶¶ 91-92, 100.[5] UBH's use of its fatally flawed Guidelines violated Plaintiffs' and Class members' plans for one of two reasons: in the

---

[4] In each case, Count I asserts the breach of fiduciary duty claim pursuant to 29 U.S.C. § 1132(a)(1)(B); Count III asserts the claim pursuant to § 1132(a)(3)(A), only to the extent that the injunctive relief the Plaintiffs seek is unavailable under § 1132(a)(1)(B). In denying UBH's motion to dismiss the *Wit* complaint, the Court found that Plaintiffs are entitled to plead their claims in the alternative. *Wit*, Dkt. No. 63 at 17.

[5] In each case, Count II asserts the improper denial of benefits claim pursuant to 29 U.S.C. § 1132(a)(1)(B), and Count IV asserts the claim pursuant to § 1132(a)(3)(A), only to the extent that the injunctive relief the Plaintiffs seek is unavailable under § 1132(a)(1)(B). Again, the Court has already ruled that Plaintiffs are entitled to plead their claims in the alternative. *Wit*, Dkt. No. 63 at 17.

case of the Guideline Classes, because the plans called for requests for coverage to be reviewed pursuant to criteria that are consistent with generally accepted standards of care, *see*, *e.g.*, *Wit* Compl. ¶ 13; *Alexander* Compl. ¶ 17, and in the case of the *Wit* State Mandate Class, because the plans were subject to state laws explicitly mandating the use of clinical criteria issued by the American Society of Addiction Medicine ("ASAM") or the Texas Department of Insurance ("TDI").[6] *See*, *e.g.*, *Wit* Compl. ¶ 14.

When a claims administrator exercises discretion to adjudicate requests for benefits, its decisions are reviewed for abuse of discretion to determine whether they are arbitrary and capricious. *Cox v. Allin Corp. Plan*, 70 F. Supp. 3d 1040, 1050 (N.D. Cal. 2014).[7] An ERISA fiduciary abuses its discretion if it construes plan terms in a way that conflicts with the plain language of a plan. *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005). Thus, if an administrator's denial of a benefit claim turned on criteria that violated plan terms, the denial was necessarily arbitrary and capricious. In short, Plaintiffs challenge UBH's use of a claims-determination methodology that was arbitrary and capricious because it employed a set of clinical criteria (i.e., its Guidelines) that violated plan terms.

Accordingly, to prevail on Claim Two, the Guideline Classes must demonstrate: (1) that those Class members' plans required UBH to make clinical coverage determinations pursuant to criteria that were consistent with generally accepted standards of care; (2) that UBH's fatally-flawed Guidelines were not, in fact, consistent with those required standards; and (3) that UBH adjudicated and denied the members' requests for coverage pursuant to a Guideline. The *Wit*

[6] *See* Conn. Gen. Stat. Ann. § 38a-591c (West) (requiring use of ASAM criteria to determine medical necessity of substance use disorder treatment); 215 Ill. Comp. Stat. Ann. 5/370c (West) (same); 27 R.I. Gen. Laws Ann. § 27-38.2-1 (West) (same); Tex. Ins. Code Ann. § 1368.007 (West) (same with respect to Texas Department of Insurance criteria).

[7] A fiduciary may be "stripped of deference when he does not exercise his discretion 'honestly and fairly.'" *Conkright v. Frommert*, 559 U.S. 506, 521 (2010). Any proof that UBH acted under a conflict of interest or was motivated by improper concerns when drafting its Guidelines will necessarily be common evidence, as it will focus on the process UBH used to develop the Guidelines, which is not claimant- or plan- specific. Ex. P at P0043 (Triana Dep. Tr. at 183:1-2) ("UBH is solely responsible for developing the guidelines."); *id.* at P0028-29 (Triana Dep. Tr. at 51:13-52:2); Ex. E at E0003; *see also generally* Exs. B and C.

State Mandate Class must demonstrate (1) that those Class members' plans were subject to state laws mandating the use of ASAM or TDI criteria and (2) that UBH adjudicated and denied the members' requests for coverage pursuant to its own Guidelines rather than the state-mandated criteria.

### C. Remedies Sought by Plaintiffs and the Putative Class

To remedy UBH's breaches of fiduciary duty and arbitrary and capricious benefit denials, Plaintiffs seek primarily declaratory and injunctive relief, namely: (a) a declaration that UBH's Guidelines were developed in violation of its fiduciary duties and that UBH's denials of Class members' requests for coverage pursuant to those Guidelines were arbitrary and capricious; (b) an injunction enjoining UBH from utilizing the challenged Guidelines going forward; (c) an injunction requiring UBH to adopt or develop guidelines that are consistent with generally accepted standards of care and with applicable state law; (d) an injunction ordering UBH to reprocess the Class members' claims pursuant to those newly adopted or developed guidelines that are consistent with generally accepted standards of care and with the requirements of applicable state law; and (e) an injunction requiring UBH faithfully to apply appropriate guidelines (including new guidelines developed or adopted pursuant to the injunctive relief above) in reprocessing claims and in processing future claims. *See, e.g.*, *Wit* Compl. at 65-66; *Alexander* Compl. at 50-51. Plaintiffs also seek other appropriate equitable relief, including a surcharge, as well as attorneys' fees. *Id.*

## III. <u>COMMON EVIDENCE SUPPORTS THE CLASSES' CLAIMS.</u>

The Classes' claims concern conduct by UBH—in creating its Guidelines, adopting a policy and practice of using its Guidelines to adjudicate requests for coverage on clinical grounds, and denying Class members' claims based on its Guidelines—that was uniform for all members of the putative Classes. For that reason, as discussed below, Plaintiffs can establish the key facts bearing on each of their claims through common, class-wide evidence, primarily consisting of UBH's own records and testimony.

### A. UBH Followed a Uniform Process in Making Clinical Decisions About Class Members' Coverage.

UBH administers mental health and substance use disorder benefits for all members of the putative Classes. *Wit* Dkt. No. 67 (Answer) ¶ 3; *Alexander* Dkt. No. 44 (Answer) ¶ 7; Ex. P at P0025-27 (Triana Dep. Tr. at 31:16-32:15, 37:16-25). As such, UBH must exercise discretion to determine whether the services for which benefits are requested are covered by the terms of the members' plans. *See*, *e.g.*, Ex. E (UBH's 2015 Utilization Management Program Description ("UMPD")) at E0002-03; Ex. P at P0030-31 (Triana Dep. 79:15-80:24) (explaining that UMPD outlines UBH's processes in "managing the behavioral health benefit"). Making those determinations necessarily requires UBH to interpret the terms of the plans—including plan terms that condition coverage upon a finding that the services are consistent with generally accepted standards of care. Indeed, as the agreed-upon Plan Sample[8] demonstrates, coverage for mental health and substance use disorder treatment under all of the putative Class members' plans turns on generally accepted standards of care. *See* Ex. K (Chart Summarizing Plan Terms Conditioning Coverage on Generally Accepted Standards of Care); *see generally* Exs. L-O (excerpts from Named Plaintiffs' plans and Plan Sample plans).

Consistent with the fact that all Class members' plans condition coverage on adherence to generally accepted standards of care, UBH standardizes its interpretations of those plans' terms by developing and promulgating its Guidelines, which contain the clinical criteria UBH staff are required to use when adjudicating Class members' requests for coverage. *See*, *e.g.*, Ex. E at E0015, E0028 ("The Coverage Determination Guidelines are a set of guidelines that standardize the interpretation and application of the terms of the benefit plan."); *id.* at E0003 ("A Peer

---

[8] Because UBH has denied tens of thousands of requests for coverage for the relevant levels of care within the class period, UBH objected to Plaintiffs' request for the production of documents concerning each such denial. Instead, the parties agreed upon a limited, randomly-selected sample of such denials for which UBH would produce documents in connection with class-certification discovery (the "Claim Sample"). *See* Ex. Q (Joint Stipulation Concerning Sampling Methodology) at ¶¶ 1-3. The final, agreed-upon Claim Sample includes 50 denials of coverage for residential treatment; 30 denials of coverage for intensive outpatient treatment; and 26 denials of coverage for outpatient treatment. Ex. Q at ¶¶ 12, 21, 25. The parties further agreed that UBH would produce the plan term documents corresponding to each claimant in the Sample; those documents constitute the agreed-upon "Plan Sample." *Id.* at ¶ 6.

Reviewer makes all clinical denials based on the criteria outlined in" the Guidelines) (original emphasis); Ex. B at B0001 (asserting that the Level of Care Guidelines are "used to standardize coverage determinations"); *id*. at B0044, B0083, B0120, B0154, B0184 (same); Ex. C at C0001 (noting that the Coverage Determination Guidelines "provide[] assistance in interpreting behavioral health benefit plans that are managed by [UBH]"); Ex. P at P0040-41 (Triana Dep. Tr. at 165:23-166:16) ("Consistency is one of the things that we expect. And the guidelines are one of the things that helps us with consistency.").

As UBH represents in the publicly-available Guidelines themselves, the Guidelines are purportedly "derived from generally accepted standards of behavioral health practice." Ex. B at B001; *see also id*. at B044, B0083, B0120, B0154-55. As such, the Guidelines set forth UBH's understanding of generally accepted standards of care. *See*, *e.g.*, Ex. B at B0006, B0048, B0087 (Level of Care Guidelines reflect UBH's "understanding of current best practices in care"); *see also, e.g.,* Ex. C at C-0002 (Coverage Determination Guidelines reflect UBH's "understanding of current best practices in care."); Ex. D (document purporting to set forth the "evidence base" for UBH's Guidelines and citing to various sources of generally accepted standards of care). Because the Guidelines constitute UBH's standardized, company-wide interpretation of plan terms conditioning coverage on generally accepted standards of care, UBH necessarily exercises its discretion to interpret plan terms both when it creates its Guidelines and when it applies the Guidelines to make individual benefit determinations.

Common evidence also demonstrates that UBH used a uniform process, called a "Peer Review," to make its discretionary decisions about Class members' requests for coverage. In a Peer Review, a UBH Medical Director or Psychologist Peer Reviewer assesses whether a particular request for coverage satisfies UBH's Guidelines. *See*, *e.g.*, Ex. E at E0003 (describing Peer Review process). The Peer Reviewer collects clinical information from UBH's electronic case record and from the member's provider, then compares that information to the applicable Guideline criteria and decides whether the services meet the required criteria for the requested level of care. *Id.* If the Peer Reviewer determines that the requested services satisfy the

Guideline criteria, the Peer Reviewer must approve coverage. Ex. P at P0014 (Brennecke Dep. Tr. at 193:2-12); *id.* at P0036 (Triana Dep. Tr. at 152:12-25).

If, on the other hand, the Peer Reviewer determines that the requested services do not satisfy the Guideline criteria, the Peer Reviewer denies coverage. *See*, *e.g.*, Ex. E at E0003; Ex. P at P0045-46 (Ahluwalia Dep. Tr. at 60:21-61:14); *id.* at P0049 (Allchin Dep. Tr. at 49:6-15); *id.* at P0057 (Moldauer Dep. Tr. at 98:14-18); *id.* at P0063 (Zhu Dep. Tr. at 64:10-13). In that case, the Peer Reviewer is required by UBH's company-wide policy to record in the member's electronic case record the rationale for the determination. *See*, *e.g.*, Ex. P at P0008 (Brennecke Dep. Tr. at 132:12-18); *id.* at P0033 (Triana Dep. Tr. at 138:5-18). The denial rationale is required to state all of the reasons why coverage is being denied, and it is specifically required to cite the Guideline on which the Peer Reviewer relied in denying coverage. *See*, *e.g.*, Ex. E at E0004; Ex. P at P0009 (Brennecke Dep. Tr. at 133:17-22). UBH's administrative staff then copies the rationale, verbatim, into a written notice of the determination, which is sent to the member. *See*, *e.g.*, Ex. E at E0004; Ex. P at P0033-35 (Triana Dep. Tr. at 138:21-140:21).[9]

**B. UBH's Uniform Process Employs a Uniform Set of Level-of-Care Criteria.**

UBH has developed two sets of clinical criteria that its Peer Reviewers used to make determinations about whether the putative Class members sought coverage for a level of care that was consistent with generally accepted standards: namely, UBH's "Level of Care Guidelines" and UBH's "Coverage Determination Guidelines" (collectively, the "Guidelines" or "UBH's Guidelines"). *See*, *e.g.*, Ex. E at E0009, E0023; Ex. P at P0007 (Brennecke Dep. Tr. at 112:3-9) (UBH 30(b)(6) designee testifying that UBH expects Peer Reviewers to consult either a Level of Care Guideline or a Coverage Determination Guideline in the Peer Review process); *id.* at P0048 (Allchin Dep. Tr. at 31:7-10) (UBH Medical Director testifying that Peer Reviewers are required

[9] If the member appeals the denial, UBH assigns the appeal review to a different Peer Reviewer. When deciding an appeal, the Peer Reviewer reviews the previously-collected clinical information, along with any new information, and again, makes a determination as to whether the services meet the Guideline criteria for the requested level of care. Ex. E at E0006-07. As with the initial determination, the rationale for the appeal decision is required to cite the Guideline criteria the Peer Reviewer applied. *Id.*

to refer to one of UBH's Guidelines when making a coverage determination); *id.* at P0054 (Moldauer Dep. Tr. at 82:14-24) (UBH Medical Director testifying that she "take[s] … into account" either a Level of Care Guideline or a Coverage Determination Guideline in every benefit determination she makes); *id*. at P0062-63 (Zhu Dep. Tr. at 63:25-64:4) (UBH Psychologist Peer Reviewer testifying that "[w]e always consider the guidelines").

1. <u>The Level of Care Guidelines</u>

The Level of Care Guidelines apply to all mental health and substance use disorder diagnoses. *See generally* Ex. B (relevant excerpts from UBH's Level of Care Guidelines for 2011-2016). They begin with a set of Common Criteria, which are applicable to all levels of care. *See* Ex. B at B0007-13, B0049-55, B0088-93, B0125-29, B0152, B0158-61, B0182, B0187-89, B0210-11; Ex. P at P0032 (Triana Dep. Tr. at 125:5-24). In other words, treatment in ***any*** level of care must first satisfy the Level of Care Guidelines' Common Criteria in order to be covered. The Common Criteria include criteria relevant to admission to treatment, continued services, and discharge. *Id*. The Level of Care Guidelines also contain additional criteria applicable to particular levels of care, including each of the levels of care at issue in the *Wit* and *Alexander* cases: residential treatment, intensive outpatient treatment, and outpatient treatment for both mental illnesses and substance use disorders. *See* Ex. B at B0016-41, B0058-80, B0094-118, B0130-51, B0162-81, B0191-209.

2. <u>The Coverage Determination Guidelines</u>

The Coverage Determination Guidelines are organized by diagnosis rather than by level of care, such that there is a separate Coverage Determination Guideline document for each diagnosis. *See generally* Ex. C (relevant excerpts from UBH's Coverage Determination Guidelines for 2011-2015). In any given year, however, each set of CDGs follows a common template. *See*, *e.g.*, Ex. C at C-0001-C-325 (excerpts from all CDGs for 2015). Like the Level of Care Guidelines, each CDG contains both common criteria and criteria applicable to particular

levels of care. *See*, *e.g.*, Ex. C at C-0001-C-0015 (excerpts from 2015 CDG for Attention Deficit/ Hyperactivity Disorder).[10]

Insofar as it is relevant to this case, the Coverage Determination Guidelines largely mirror the Level of Care Guidelines (particularly with respect to level-of-care criteria). UBH incorporates its Level of Care Guidelines into its Coverage Determination Guidelines, making the Level of Care Guidelines' coverage criteria—especially the Common Criteria—an explicit prerequisite for coverage under the CDGs as well. *See* Ex. A-2; *see generally* Ex. C; Ex. P at P0011 (Brennecke Dep. Tr. at 180:14-22) (UBH 30(b)(6) designee testifying that UBH's instruction to Peer Reviewers is "'[w]hen in doubt, default to CDGs'" because "the level of care guidelines are embedded in the CDGs . . ."). For this reason, UBH's witnesses consistently testified that the outcome of a benefit determination would ***never*** differ depending on which set of Guidelines were applied. Ex. P at P0012-13 (Brennecke Dep. Tr. at 189:18-190:2); *id.* at P0050 (Allchin Dep. Tr. at 53:18-25); *id.* at P0055-56 (Moldauer Dep. Tr. at 89:17-90:11); *id.* at P0061, P0064 (Zhu Dep. Tr. at 62:19-22, 78:3-6).

### C. Pursuant to its Uniform Process, UBH Denied Coverage for the Named Plaintiffs' and the Sample Claimants' Treatment Based on its Uniform Guidelines.

[redacted][11] The same is true with respect to the Class members within the agreed-upon Claim Sample: there

---

[10] Before 2013, each Coverage Determination Guideline document addressed just one level of care for one diagnosis. *See* Ex. A-2 (Coverage Determination Guidelines analysis). For example, in 2012, UBH had separate CDGs for residential treatment of major depressive disorder, intensive outpatient treatment of major depressive disorder, and outpatient treatment of major depressive disorder. *Id.* From 2013 forward, the CDG for each diagnosis covers all levels of care. *See generally* Ex. C at C-0001 to C-0764, C-1267 to C-1378.

[11] After coverage was denied, each Plaintiff exhausted his or her administrative appeals. UBH also denied each appeal based on its application of its Guidelines. *See* Ex. S (compilation of letters denying Plaintiffs' appeals).

are 100 denials in the Claim Sample that meet one of the Class definitions, [redacted]

UBH's documents also reflect the consistency with which UBH employees apply the Guidelines. Indeed, UBH is required by its accrediting organizations not only to maintain clinical guidelines, but to ensure that those guidelines are applied in a consistent way. Ex. P at P0002-04 (Beaty Dep. Tr. at 33:11-20, 45:7-46:18); *id.* at P0041 (Triana Dep. Tr. at 166:10-16). All of UBH's clinical staff are trained extensively on the UBH Guidelines when they start working at UBH, and receive updates and further training whenever the Guidelines are substantively revised. Ex. P at P0010 (Brennecke Dep. Tr. at 154:7-18); *id.* at P0037-39 (Triana Dep. Tr. at 155:6-157:19). UBH also conducts regular audits to verify that its clinical staff is applying the Guidelines consistently, a measure UBH calls "inter-rater reliability." *See* Ex. T; Ex. P at P0003, P0005 (Beaty Dep. Tr. at 45:17-23, 77:1-15); *id.* at P0042 (Triana Dep. Tr. at 171:17-23). All of UBH's efforts have paid off: throughout the class period, UBH's rate of inter-rater reliability has exceeded its goal of 90%, reaching 96.8% in 2013, 98% in 2014 and 98.8% in 2015. *See* Ex. T at T0003, T0017, T0030.

**D. Plaintiffs will Prove by Common Evidence that UBH's Guidelines Are More Restrictive than Generally Accepted Standards of Care.**

At trial, Plaintiffs will present expert testimony and other evidence to prove that, taken as a whole, each of UBH's Guidelines is, and all of them together are, more restrictive than generally accepted standards of care.

---

12 [redacted]

First, Plaintiffs will rely upon common evidence to establish generally accepted standards of care. Among other sources, generally accepted standards of care with respect to mental health and substance use disorder treatment are reflected in criteria, instruments and statements issued by national medical organizations such as the American Academy of Child and Adolescent Psychiatry ("AACAP"); The American Association of Community Psychiatrists ("AACP"); The American Psychiatric Association ("APA"); and The American Society of Addiction Medicine ("ASAM"). *See* Ex. R (Pls.' Resps. to UBH's Second Set of Interrogs.) at 3; *see also* Ex. D (representing "Evidence Base" for UBH's Guidelines includes various sources of generally accepted standards). Plaintiffs also intend to present the testimony of one or more experts on this issue.

Second, Plaintiffs will rely on common evidence—most notably, the Guidelines themselves, along with other UBH documents, and expert opinion—to demonstrate that all of UBH's Guidelines suffer from the same defects, which make them fundamentally more restrictive than generally accepted standards.[13]

UBH's Guidelines uniformly overemphasize acute criteria and symptoms, while at the same time, they omit criteria for coverage of chronic conditions and ignore factors that are relevant to promoting patients' long-term recovery. For example, the Guidelines' level of care criteria focus heavily on addressing the member's "presenting problems" (also called the "'why now' factors"). *See* Ex. A-1 (chart summarizing certain key Level of Care Guideline provisions); *see generally* Ex. B. UBH's Guidelines make clear that the "presenting problems" refer to the specific, acute symptoms that necessitated treatment in a particular level of care, as opposed to the underlying mental health condition(s). *Id.* As soon as the crisis precipitating admission eases (even if the patient's underlying condition remains unresolved), the Guidelines call for coverage at that level of care to cease, unless the patient can prove that stepping down to a lower level of care would be unsafe. *Id.* The Guidelines also demand that patients show

[13] Plaintiffs need not establish the merits of their claims at this stage, of course; the discussion in this section is merely a summary of evidence Plaintiffs intend to develop and present during the merits phase of the case.

constant improvement, even over relatively short timeframes (every 2-3 days or each week), in order for coverage to continue, demonstrating that the Guidelines' focus is on addressing short-term acute symptoms, rather than ensuring a patient's long-term recovery. Treatment that prevents deterioration or maintains a level of function is not covered under the Guidelines at all. *Id.*

As a result of their myopic focus on acute symptoms, UBH's Guidelines effectively limit mental health and substance use disorder coverage to treatment for specific crises. *See* Ex. R at 3-5. Generally accepted standards of care, by contrast, not only contemplate treatment of chronic conditions, but, with respect to all mental health and substance use disorder diagnoses, aim to promote the patient's long-term recovery and resiliency—goals that go beyond merely stabilizing an immediate crisis. *Id.*

## IV. ARGUMENT

Class certification is proper when Plaintiffs prove by a preponderance of the evidence that the proposed Classes satisfy all of the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and one of the provisions of Rule 23(b). Fed. R. Civ. P. 23; *see also Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 236 (N.D. Cal. 2014) (describing burden of proof); *Gaudin v. Saxon Mortg. Servs., Inc.*, 297 F.R.D. 417, 424 (N.D. Cal. 2013) (same). As this Court has explained, before certifying a class, a court must "'conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23.' Such analysis, however, is not a 'license to engage in free-ranging merits inquiries [regarding the ultimate outcome of the case.]'" *Kamakahi v. Am. Soc'y for Reproductive Med.*, 305 F.R.D. 164, 175 (N.D. Cal. 2015) (Spero, J.) (citations omitted). Here, a rigorous analysis reveals that the proposed Classes easily satisfy the standard set forth in Rule 23.

### A. This Class Action Satisfies the Requirements of Rule 23(a).

#### 1. The Classes Are So Numerous That Joinder Is Impracticable.

A class should be certified where the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts have routinely found the numerosity

requirement satisfied when the class comprises 40 or more members." *Kamakahi*, 305 F.R.D. at 183. The proposed Classes easily exceed this threshold.

In connection with the process of identifying the Claim Sample, UBH produced spreadsheets in both *Wit* and *Alexander* that [redacted] There is no question that the proposed Classes satisfy the numerosity requirement.

2. <u>Questions of Law and Fact are Common to Plaintiffs and the Classes.</u>

Rule 23(a)'s "commonality" requirement is met when "'the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] with one stroke.'" *Kamakahi*, 305 F.R.D. at 172 (quoting *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (further internal quotations omitted). Rule 23(a)(2) only requires a putative class to point to "a ***single*** significant question of law or fact." *Id.* (emphasis added); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) ("'[e]ven a single [common] question' will do").

In this case, Plaintiffs allege, and the evidence adduced to date demonstrates, that UBH's development and use of its own overly-restrictive Guidelines to make clinical coverage determinations was uniform for all Class members. *See generally* § IV, *supra*. As a result, all of the Class members' claims turn on a common core of factual and legal issues, and the key questions that are "apt to drive the resolution of the litigation" are common to the Class members. *Dukes*, 131 S.Ct. at 2551; *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (finding district court abused its discretion in ruling that commonality was not satisfied; reasoning that "commonality exists" where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class.").

For example, the claims of every single member of the *Wit* and *Alexander* Guideline Classes turn on the following questions:

- Was UBH acting in its capacity as an ERISA fiduciary when it created its Guidelines and adopted its policy and practice of applying them to all clinical coverage determinations?
- Are UBH's Guidelines consistent with generally accepted standards?
- Did UBH breach its fiduciary duties when it developed its Guidelines?
- Did UBH abuse its discretion by applying its fatally-flawed Guidelines to adjudicate and deny claims?
- What remedies are available to the Classes?

The answers to these central questions, moreover, will be the same for every member of the Guideline Classes because they focus on UBH and its common course of conduct, not on any fact or legal issue that could vary from Class member to Class member.

The claims of all members of the *Wit* State Mandate Class also turn on a single, overarching question: Did UBH abuse its discretion by applying its fatally-flawed Guidelines to deny claims for substance use disorder treatment where a state law mandated the use of ASAM or TDI criteria? The answer to that question—which turns largely on legal issues—will be identical for all members of the State Mandate Class.

Similarly, the putative Classes' requests for declaratory and injunctive relief present common questions. *See*, *e.g.*, Newberg on Class Actions § 3:27 (5th ed. 2013) ("A claim that the opposing party 'has acted or refused to act on grounds that apply generally to the class' necessarily presents a common question of fact; similarly, a claim that injunctive or declaratory relief is appropriate for the class as a whole presents a common question of law."). In short, the commonality linking the Class members in this case overlaps entirely with the dispositive questions in the lawsuit. As the Ninth Circuit has observed, this is the "classic case for treatment as a class action." *Evon*, 688 F.3d at 1030. The Classes easily satisfy Rule 23(a)(2).

3. <u>Plaintiffs' Claims are Typical of the Claims of the Classes.</u>

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." To assess typicality, courts "consider 'whether other members have the same or similar injury, whether the action is based on conduct which is not

unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Kamakahi*, 305 F.R.D. at 183 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Plaintiffs satisfy this requirement because, just like the rest of the Class members, their claims arise from UBH's development of its excessively restrictive Guidelines and from its application of those Guidelines to deny their requests for coverage. *See Wit* Compl. ¶¶ 38-182; *Tillitt* Compl. ¶¶ 41-73; *Alexander* Compl. ¶¶ 50-121; *Driscoll* Compl. ¶¶ 40-71. All but one of the Named Plaintiffs fall within the *Wit* and *Alexander* Guideline Classes; and [redacted] And just like the other members of the Guideline Classes, the Named Plaintiffs contend that UBH's Guidelines are inconsistent with generally accepted standards. *See Wit* Compl. ¶ 198; *Tillitt* Compl. ¶ 88; *Alexander* Compl. ¶ 136; *Driscoll* Compl. ¶ 86; *see also* Ex. A. Accordingly, the Named Plaintiffs, like the other Guideline Class members, are entitled to assert both the breach of fiduciary duty claim and the arbitrary and capricious denial of benefits claim.

Named Plaintiff Brandt Pfeifer, just like the members of the *Wit* State Mandate Class, is challenging UBH's application of its own Guidelines even though Mr. Pfeifer's plan was governed by a state law that required UBH to use ASAM criteria to determine whether Mr. Pfeifer's wife's treatment was clinically appropriate. *See Wit* Compl. ¶ 119; *see also* Ex. F.

In short, far from being unique, the Named Plaintiffs' claims are identical to those of the other Class members and clearly satisfy the typicality requirement.

4. <u>The Named Plaintiffs and Their Counsel Fairly and Adequately Represent the Interests of Each of the Proposed Classes.</u>

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The "adequacy" requirement is

satisfied "if the proposed representative plaintiffs do not have conflicts of interest with the proposed class and are represented by qualified and competent counsel." *See Kamakahi*, 305 F.R.D. 164 at 184. The proposed Classes and their counsel also meet these requirements.

First, the Plaintiffs' interests are fully aligned with those of the proposed Classes, and there are no conflicts. All Plaintiffs share an interest in establishing that UBH's development of its Guidelines and application of those Guidelines to adjudicate and deny their claims violated ERISA and the terms of their plans, and in obtaining injunctive relief requiring UBH to reprocess the claims it arbitrarily and capriciously denied. *See Wit* Compl. ¶ 16; *Tillitt* Compl. ¶ 14; *Alexander* Compl. ¶ 19; *Driscoll* Compl. ¶ 14; *see also, e.g.*, [redacted]; *id.* at P0074 (Haffner Dep. Tr. 22:13-22) ("I also wanted to do something for the members of . . . the potential class. And by something, I mean to change guidelines, so that they are in line with medical standards, and also for people who been . . . treatment has been rejected to have those claims reprocessed and paid for properly."). In addition, each of the Guideline Classes is represented by at least one Named Plaintiff with standing to seek an injunction requiring UBH to cease using its flawed Guidelines and instead develop or adopt proper ones. *See, e.g.,* Ex. P at P0066 (Flanzraich Dep. Tr. 18:2-5) (daughter still covered under Oxford Plan); *id.* at P0069 (Holdnak Dep. Tr. at 35:4-12) (still has plan administered by United); *id.* at P0071 (Muir Dep. Tr. at 20:5-6) (same); *id.* at P0073 (Haffner Dep. Tr. at 17:15-19) (same). There are no conflicts on any of these issues as between the Named Plaintiffs and the Class members.

Second, proposed Class Counsel consists of experienced class action attorneys who are uniquely qualified to try this case. The lawyers from Zuckerman Spaeder LLP have successfully prosecuted numerous nationwide class actions against insurance companies for violations of ERISA and related federal and state laws. Among their successes were two of the largest recoveries ever obtained in health insurance class actions: a $350 million settlement against United Healthcare and a $250 million settlement against Health Net. *See* Ex. U (attorney

biographies). Meiram Bendat, J.D., Ph.D., the Founder and President of Psych-Appeal, Inc., not only has extensive experience in class action litigation against insurers but also specializes in cases involving mental health-related insurance benefit denials. *See id.* at U0017-18. Dr. Bendat is also a psychotherapist licensed by the California Board of Behavioral Sciences and is thoroughly familiar with the generally accepted standards of care at issue in this case. *Id.* at U0015. Given the significant collective experience of proposed Class Counsel in class action litigation and ERISA cases, they will more than adequately protect the interests of the proposed Classes.

**B. This Class Action Satisfies Rule 23(b).**

Although Plaintiffs need only satisfy one provision of Rule 23(b) for the Court to certify a class action, Plaintiffs meet all three in this action, for the simple reason that Plaintiffs are challenging a common course of conduct by UBH: its creation and use of a single, company-wide set of criteria that violated Class members' rights. Because UBH's illegal conduct was the same with respect to all of the Class members, and because the Class members seek primarily injunctive and declaratory relief, the Court may certify the Classes under either Rule 23(b)(1)(A), Rule 23(b)(2), or (in the alternative) Rule 23(b)(3).

1. <u>The Classes May Be Certified Under Rule 23(b)(1).</u>

The proposed Classes satisfy the requirements of Rule 23(b)(1)(A) because adjudication of the class members' claims on a non-class basis would risk establishing "incompatible standards of conduct" for UBH. If the proposed Classes are not certified, any of the tens of thousands of putative Class members could file individual lawsuits asserting the claims raised herein. It is entirely possible that courts could disagree, with one court ruling that UBH did not breach its fiduciary duties in developing or applying its Guidelines, while another court holds that it did. This would leave UBH—and the many insureds who have been denied benefits—with no way of knowing whether to use UBH's Guidelines in making (or appealing) benefit determinations, even though all members of ERISA plans administered by UBH are entitled to the same legal rights. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (Rule 23(b)(1)(A) certification appropriate 'where the party is obliged by law to treat the

members of the class alike'); *accord Dukes*, 131 S. Ct. at 2566. Indeed, ERISA class action cases are particularly appropriate for certification under Rule 23(b)(1)(A) because ERISA plan beneficiaries are all owed the same fiduciary duties. *See Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008) ("Most ERISA class action cases are certified under Rule 23(b)(1)."); *see also Z.D. v. Grp. Health Coop.*, No. C11-1119RSL, 2012 WL 1977962, at *7 (W.D. Wash. June 1, 2012) ("The Court can envision few better scenarios for certification under (b)(1)(A)" than claims that an ERISA fiduciary's internal policy/practice was illegal).

2. The Classes May Be Certified Under Rule 23(b)(2).

A class may be certified under Rule 23(b)(2) when the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "For purposes of Rule 23(b)(2), what matters is that a pattern of alleged violations can be remedied for all putative class members by the same form of injunctive relief." *Unknown Parties v. Johnson,* No. CV 15-00250-TUC-DCB, 2016 WL 267009, at *9 (D. Ariz. Jan. 11, 2016); *see Lee v. Pep Boys-Manny Moe & Jack of Cal.*, No. 12-CV-05064-JSC, 2015 WL 9480475, at *12 (N.D. Cal. Dec. 23, 2015). As the Ninth Circuit has explained:

> Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2). It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate.

*Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

The proposed Classes are paradigmatic examples of (b)(2) classes because they primarily "seek uniform injunctive [and] declaratory relief from policies or practices that are generally applicable to the class[es] as a whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014).[14] UBH pursued a common course of conduct that affected all Class members in the same way:

[14] The proposed Classes also seek equitable relief in the form of a surcharge, but this remedy is merely incidental to the predominant injunctive and declaratory relief sought. *See Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 151 (N.D. Cal. 2015) ("Rule 23(b)(2) is almost automatically satisfied in actions *primarily* seeking injunctive relief.") (emphasis added) (internal quotations omitted).

specifically, it developed its own faulty Guidelines and then applied them to deny the Class members' requests for coverage, in violation of the Class members' plans and their rights under ERISA. *See Huynh v. Harasz*, Case No. 14-CV-02367-LHK, 2015 WL 7015567, at *10 (N.D. Cal. Nov. 12, 2015) (certifying (b)(2) class challenging public housing agency's "uniform practice of denying reasonable accommodation requests by [Section 8] voucher holders with documented disabilities"); *A.F. v. Providence Health Plan*, 300 F.R.D. 474, 484-85 (D. Or. 2013) (certifying (b)(2) class seeking injunction enjoining insurer from applying an exclusion that violated ERISA and Oregon law); *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763-64 (7th Cir. 2003) (certifying (b)(2) class where relief sought was a declaration that company's actions were not in compliance with ERISA). The injunctive and declaratory relief sought here—which aims to stop UBH from using its overly-restrictive criteria and to require UBH to use appropriate criteria both going forward and in reprocessing the claims it arbitrarily and capriciously denied—would offer all putative Class members uniform and complete relief from the harm caused by UBH's common course of conduct. Accordingly, the Classes should be certified under Rule 23(b)(2).

3. <u>In the Alternative, the Classes May be Certified Under Rule 23(b)(3).</u>

Plaintiffs believe that they can obtain all of the relief that they seek—including an equitable surcharge—through a class certified under Rule 23(b)(1) and/or (b)(2). To the extent the Court disagrees, however, and concludes that Plaintiffs' request for a potential surcharge cannot be certified under those provisions, Plaintiffs alternatively move for certification under Rule 23(b)(3). Because there are no individualized issues relevant to Plaintiffs' claims, which center around UBH's common course of conduct with respect to the Classes as a whole, the Classes also satisfy Rule 23(b)(3)'s predominance and superiority requirements.

First, common questions of law and fact clearly "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). UBH breached its fiduciary duties to all Class members in the same way: by developing Guidelines for its use in making coverage determinations that were inconsistent with generally accepted standards of care and contrary to the terms of the Class members' plans. The Guidelines, which UBH uses across-the-board, are

not plan- or member-specific and no individualized issues inform whether UBH's conduct in creating the Guidelines fell short of its duties of prudence, care, skill, and loyalty. Similarly, UBH's application of its Guidelines to deny Class members' claims also constituted an abuse of discretion because the criteria UBH used were inconsistent with the members' plan terms or with the state laws governing their plans. Accordingly, there are no individualized issues relevant to the Plaintiffs' claims, let alone any that could defeat predominance.

Nor does the fact that Plaintiffs seek a potential surcharge remedy undermine the predominance of common questions in this case. The equitable surcharge remedy is not compensatory, and therefore, need not depend upon the extent of any particular class member's injury (financial or otherwise). Instead, here, a surcharge would be measured in terms of the unjust benefit to UBH from its inequitable conduct. *See*, *e.g.*, *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012) ("A trustee (or a fiduciary) who gains a benefit by breaching his or her duty must return that benefit to the beneficiary."). The remedy, accordingly, would be determined on a class-wide basis based on UBH's own records, and would not require any individualized findings.

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotations omitted). All class members seek the same relief, and their entitlement to such relief does not depend on individualized issues. The proposed Classes therefore satisfy the predominance requirement of Rule 23(b)(3).

The proposed Classes also satisfy the superiority requirement because "the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010) (internal quotations omitted). Here, "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Id.* at 1175. The factors that determine whether class treatment is superior to other methods of adjudication include (a) the interest of class members in individually controlling the prosecution of separate actions; (b) the extent and nature of any litigation concerning the

controversy already begun by or against class members; (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). Each of these factors favors certification here. As explained above, there are overriding common issues in this case that allow for a finding of liability against UBH under ERISA and for the application of a common remedy—injunctive relief to require compliance with UBH's fiduciary duties and reprocessing of benefit claims. Certification of these Classes, therefore, would best serve the interest of both the individual Class members and judicial economy.

Finally, courts have implied an "ascertainability" requirement for class certification pursuant to Rule 23(b)(3). This requirement simply means that class "membership must be determinable from objective, rather than subjective, criteria." *Kamakahi*, 305 F.R.D. at 185 (internal quotations omitted). Here, the proposed Classes are all objectively ascertainable from UBH's records. [redacted] As explained above, it is UBH's policy that each electronic record must include the rationale for the determination. In fact, UBH specifically requires its Peer Reviewers to state, in the electronic record, which Guideline they applied in making the determination. Ex. P at P0051 (Allchin Dep. Tr. at 59:9-23); *id.* at P0059-60 (Zhu Dep. Tr. at 48:22-49:23); *see generally* Exs. G-J. Moreover, when UBH denies coverage, it is required by ERISA to issue a written notification of that decision to the member; the written notification is also required to state the rationale for the determination, and must cite the Guideline applied. Ex. E at E0004, E0019. Accordingly, all of the information necessary to determine whether an individual is in one of the Classes is contained in records in UBH's possession.

### C. In the Alternative, the Court May Certify an Issue Class Pursuant to Rule 23(c)(4).

Even if there were some individualized issue that made certification pursuant to Rule 23(b) improper—though Plaintiffs are unaware of any individualized issue that could possibly bear on their claims—the Court could nevertheless adjudicate under Rule 23(c)(4), on a class basis, all issues that it does find capable of class-wide resolution. *See, e.g., Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 544 (N.D. Cal. 2012) (Rule 23(c)(4) certification on certain issues appropriate if individualized issues were to predominate over common ones); *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996) ("Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues."); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012) (reversing denial of certification of issue class on whether employer's policies had disparate impact). The common questions identified in Section IV.A.2, above, can and should be resolved on a class-wide basis. Thus, although Plaintiffs believe it is clear that the Classes may be certified under Rule 23(b)(1) and/or (b)(2), Plaintiffs move, again in the alternative, for certification under Rule 23(c)(4) of those issues and any others the Court deems appropriate for class-wide resolution.

## V. <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court certify each of the proposed classes under Federal Rules of Civil Procedure 23(b)(1) and (b)(2), or, in the alternative, pursuant to Rule 23(b)(3) or 23(c)(4).

Dated: March 28, 2016

Respectfully submitted,

/s/ D. Brian Hufford

D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
399 Park Avenue, 14th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

Meiram Bendat (Cal. Bar No. 198884)
PSYCH-APPEAL, INC.
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

Caroline Reynolds (admitted *pro hac vice*)
Andrew Caridas (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
creynolds@zuckerman.com
acaridas@zuckerman.com

*Attorneys for Plaintiffs*