THOMAS F. KOEGEL (SBN 125852)
tkoegel@crowell.com
NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
JOSEPH BUI (SBN 293256)
jbui@crowell.com
CROWELL & MORING LLP
275 Battery Street, 23rd Floor
San Francisco, California 94111
Telephone: 415.986.2800
Facsimile: 415.986.2827

CHRISTOPHER FLYNN (admitted *pro hac vice*)
cflynn@crowell.com
APRIL N. ROSS (admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br><br>**DEFENDANT UNITED BEHAVIORAL HEALTH'S OBJECTIONS TO EVIDENCE FILED IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Action File: May 21, 2014<br><br>Judge: Hon. Joseph Spero<br>Courtroom: G |

| | |
|---|---|
| GARY ALEXANDER, et al.,<br>Plaintiffs,<br>v.<br>UNITED BEHAVIORAL HEALTH,<br>Defendant. | Case No. 3:14-CV-05337-JCS<br>Action Filed: December 4, 2014 |

Defendant United Behavioral Health ("UBH") provides the following objections to the evidence submitted in support of Plaintiffs' Motion for Class Certification ("Motion").

| **Objection No.** | **Exhibits to Reynolds Declaration**[1] | **Objection** |
|---|---|---|
| 1. | Ex. A-1 (cited in Plaintiffs' Motion at 14:19-20) | Improper Summary (Fed. R. Evid. 1006); Misleading; Inaccurate<br><br>Plaintiffs contend that Ex. A-1 is a "Summary of Selected Level of Care Guideline Provisions Over-Emphasizing Acute Criteria." This purported summary is inaccurate and misleading. *Amarel v. Connell*, 102 F. 3d 1494, 1516 (9th Cir. 1996) (requiring that summaries under FRE 1006 be accurate). Ex. A-1 fails to include or account for many provisions in UBH's LOCs regarding the meaning of an "acute" symptom, which depends on, among other things, a member's particular circumstances and diagnosis. The "Common Criteria" of the LOCs provide that the appropriate level of care will depend on "[s]ignificant variables" like the member's age, readiness for change, risk factors, past response to treatment, and family/social support. Declaration of Jennifer Romano in Support of Defendant United Behavioral Health's Opposition to Motion for Class Certification ("Romano Decl."), Ex. 45 at 8 [2013 LOC Common Criteria]; *see also id.* Ex. 46 at 6-7 [2014 LOC Common Criteria] (describing individualized factors for determining appropriate treatment at every level of care.) Moreover, each LOC must be applied "in a flexible manner" according to the clinician's "sound clinical judgment," and each allows exceptions where case-specific circumstances warrant. *See, e.g., id.* Ex. 43 at 3 [2011 LOC]; Ex. 44 at 3-4 [2012 LOC]; Ex. 45 at 4 [2013 LOC]; Ex. 46 at 5 [2014 LOC]; Ex. 47 at 5-6 [2015 LOC]. By failing to include this information, Ex. A-1 is inaccurate, misleading, and inadmissible and should not be considered. |

[1] Declaration of Caroline E. Reynolds in Support of Plaintiffs' Motion for Class Certification ("Reynolds Declaration" or "Reynolds Decl.").

| Objection No. | Exhibits to Reynolds Declaration[1] | Objection |
|---|---|---|
| 2. | Ex. D (cited in Plaintiffs' Motion at 9:14-15; 14:7-9) | Lack of Authentication (Fed R. Evid. 901); Hearsay (Fed. R. Evid. 802)<br><br>Plaintiffs assert that Ex. D is a document purporting to set forth the “evidence base” for UBH’s Guidelines. Ex. D is inadmissible because Plaintiffs do not introduce any evidence authenticating the document.<br><br>Ex. D is further inadmissible because it is hearsay, and Plaintiffs do not introduce any evidence establishing the applicability of any hearsay exception. |
| 3. | Ex. F (cited in Plaintiffs' Motion at 12: 18-19;13:1-3, 25-28; 18:11-13, 22) | Improper Summary (Fed. R. Evid. 1006); Inaccurate<br><br>Plaintiffs contend that Ex. F summarizes information relating to named Plaintiffs and sample members. This attempted summary is inaccurate and unsupported. *Amarel v. Connell*, 102 F. 3d 1494, 1516 (9th Cir. 1996) (requiring that summaries under FRE 1006 be accurate).<br><br>Ex. F contains numerous deficiencies and inaccuracies. For example, the following deficiencies and inaccuracies appear in just the first six pages of the Exhibit:<br><br>First, the information in the "Gov. State" and "Funding" columns is not ascertainable from the alleged support listed in the Exhibit. Ex. F has a column entitled "Exhibit Pages," which purportedly provide the underlying information in Ex. F. But governing state information does not appear in the cited pages.<br><br>Second, there are at least five instances where the "Type of Service" field is inaccurate. For example, RTC-08 lists "SUD" as the type of service, but, based on the cited supporting documents, "MH" should be in that field.<br><br>Third, there are at least six instances where the "Denial Type Code" is inaccurate. For example, RTC-30 lists "Clinical Coverage Determination" as the denial type code, but, based on the cited |

| Objection No. | Exhibits to Reynolds Declaration[1] | Objection |
|---|---|---|
| | | supporting documents, "Excluded Service" should be in that field.<br><br>Fourth, there are at least four instances where the "Guideline Cited in Denial" is inaccurate. For example, RTC-31 lists one guideline as being cited, but two were cited in the supporting documents Plaintiffs cite.<br><br>Because much of the information in Ex. F is unsupported and inaccurate, the Exhibit is not reliable or admissible and should not be considered. |
| 4. | Ex. K (cited in Plaintiffs' Motion at 8:13-15; 18:10-11) | Improper Summary (Fed. R. Evid. 1006); Misleading; Inaccurate<br><br>Plaintiffs contend that Ex. K is a "Chart Summarizing Plan Terms Conditioning Coverage on Generally Accepted Standards of Care." According to Paragraph 13 of Ms. Reynolds Declaration, Ex. K purportedly:<br><br>"[I]ndicates whether the terms of the Named Plaintiffs' plans and each of the plans in the agreed-upon Plan Sample *conditions coverage* for mental health and substance use disorder treatment *upon a finding that the services are consistent with generally accepted standards of care*. The chart answers "yes" to this question if the plan terms (a) define Covered Services as services that are consistent with generally accepted standards of care or as services that are Medically Necessary; (b) exclude coverage for services that are not consistent with generally accepted standards of care or services that are not Medically Necessary; and/or (c) define Medically Necessary services as those that are consistent with generally accepted standards of care (emphasis added)."<br><br>As reflected in the Reynolds Declaration, Plaintiffs claim through this chart that coverage is solely determined or conditioned by whether the services at issue are consistent with generally accepted standards of care. That representation and, as a result, the chart are inaccurate and misleading. |

| **Objection No.** | **Exhibits to Reynolds Declaration**[1] | **Objection** |
|---|---|---|
| | | *Amarel v. Connell*, 102 F. 3d 1494, 1516 (9th Cir. 1996) (requiring that summaries under FRE 1006 be accurate). Ex. K conflates the varied requirements and definitions of plan terms into a single "yes or no" question to claim that coverage is conditioned on only one factor. But that is wrong. The plans that Plaintiffs cite do not define "Covered Services" as only being services consistent with generally accepted standards of care or as services that are Medically Necessary, as Plaintiffs claim. Indeed, the very first plan cited in Ex. K defines "Covered Services" as having to satisfy five different criteria of which "consistent with…prevailing medical standards" is but one. The other criteria includes "Not otherwise excluded in this Certificate under Section 2: Exclusions and Limitations." (Reynolds Decl. Ex. L at L0017-18.)<br><br>In that same plan, under exclusions, inconsistency with "generally accepted standards of medical practice" is but one possible basis for an exclusion. (*Id.* at L0013-14.) Other clinical reasons for services to be excluded from coverage include the services "[n]ot [being] consistent with our level of care guidelines or best practices as modified from time to time" or services "[t]ypically [] not result[ing] in outcomes demonstrably better than other available treatment alternatives that are less intensive or more cost effective." (*Id.*)<br><br>Plaintiffs misconstrue the relevant plan language for the other plans addressed in Exhibit K. *See* Romano Decl. Ex. 71 [Plan Chart] (setting forth the relevant language for the plans covering the named Plaintiffs and selected sample members and showing that these plan terms require more than simple adherence to "generally accepted standards of care"). What Plaintiffs actually point to is one of many bases to exclude requested services, *i.e.*, it is inconsistent with generally accepted standards of medical practice. Because Ex. K is an inaccurate and misleading summary of documents, it should be excluded and not considered. |

| **Objection No.** | **Exhibits to Reynolds Declaration**[1] | **Objection** |
|---|---|---|
| 5. | Ex. P | Incomplete Transcript; Misleading; Inaccurate<br><br>Ex. P is a compilation of excerpts from various depositions. As set forth below, Plaintiffs failed to include all of the relevant portions for those transcripts including pages that contain the end of relevant answers and errata sheets for included pages.<br><br>1. Transcript for the deposition of Dr. Ahluwalia (Ex. P at P0045-46 (transcript pages 60-61)) (cited in Plaintiffs' Motion at 10:4-5) – Plaintiffs cite this testimony to support an argument about UBH's use of its guidelines, but they fail to provide the full answer to the question at the end of page 61. That answer provides examples of when coverage is authorized when treatment is inconsistent with UBH's guidelines. For completeness, pages 62 and 63 of the transcript for Dr. Ahluwalia's deposition are included in Exhibit 22 to the Romano Decl.<br><br>2. Transcript for the deposition of Dr. Triana (Ex. P at P0035 (transcript page 140)) (cited in Plaintiffs' Motion at 10:14) – Plaintiffs cite this testimony to discuss UBH's preparation of written notices, but fails to include the complete answer from Dr. Triana. For completeness, page 141 of the transcript for Dr. Triana's deposition is included in Exhibit 20 to the Romano Decl.<br><br>3. Transcript for the deposition of Dr. Allchin (Ex. P at P0049 (transcript page 49)) (cited in Plaintiffs' Motion at 10:4-5) – Plaintiffs cite this testimony about UBH's use of its guidelines, but they fail to provide the full answer to the question at the end of page 49. For completeness, page 50 of the transcript for Dr. Allchin's deposition is included in Exhibit 23 to the Romano Decl.<br><br>4. Transcript for the deposition of Ms. Bridge (Ex. P at P0016, 20-21, 23) (transcript pages 62, 74, 76, 106)) (cited in Plaintiffs' Motion at 24:16-17) – Plaintiffs cite several pages from Ms. Bridge's deposition, but they fail to include the errata sheet |

| Objection No. | Exhibits to Reynolds Declaration[1] | Objection |
| --- | --- | --- |
| | | that UBH served on Plaintiffs that relates to those pages. For completeness, the errata sheet for Ms. Bridge's deposition is Exhibit 77 to the Romano Decl. |
| 6. | Ex. R (cited in Plaintiffs' Motion at 14:2-7; 15:6-11) | Improper and Unqualified Expert Opinion (Fed. R. Evid. 702); Hearsay (Fed. R. Evid. 802)<br><br>Plaintiffs' Ex. R is their own interrogatory responses. Plaintiffs cite these interrogatory responses as support for arguments about what are applicable "generally accepted standards of care," suggesting that their interrogatory responses are valid expert opinions in an expert report. (*See, e.g.,* Plaintiffs' Motion at 15 (citing Ex. R as the only support for Plaintiffs' contention that "[g]enerally accepted standards of care, by contrast, not only contemplate treatment of chronic conditions, but, with respect to all mental health and substance use disorder diagnoses, aim to promote the patient's long-term recovery and resiliency—goals that go beyond merely stabilizing an immediate crisis").<br><br>Plaintiffs should be precluded from citing their own interrogatory responses in this manner because, on their face, these responses fail to meet any of the requirements of FRE 702.<br><br>Ex. R is further inadmissible because it is hearsay, and Plaintiffs do not introduce any evidence establishing the applicability of any hearsay exception. |
| 7. | Ex. T (cited in Plaintiffs' Motion at 13:15-19) | Lack of Authentication (Fed R. Evid. 901); Hearsay (Fed. R. Evid. 802); Lack of Relevance (Fed. R. Evid. 402)<br><br>Plaintiffs assert that Ex. T is a document purporting to set forth "inter-rater reliability" data for UBH over a period of three years. Ex. T is inadmissible because Plaintiffs do not introduce any evidence authenticating the document. |

| **Objection No.** | **Exhibits to Reynolds Declaration[1]** | **Objection** |
|---|---|---|
| | | Ex. T is further inadmissible because it is hearsay, and Plaintiffs do not introduce any evidence establishing the applicability of any hearsay exception.<br><br>Plaintiffs also mischaracterize Ex. T by claiming that "inter-rater reliability" solely measures whether UBH's clinical staff is applying UBH's guidelines consistently. Ex. T and the testimony Plaintiffs cite show that "inter-rater reliability" measures consistency in clinical judgment. (*See* Ex. T at T0003 ("Inter rater reliability . . . asks the auditor to indicate whether they agree or disagree with the clinical determination made by the staff based on the documented clinical information"); *see also* Ex. P at P0042 (Triana Dep. Tr. At 171:17-23).) |

Dated: April 28, 2016

CROWELL & MORING, LLP

Respectfully submitted,

/s/ Jennifer S. Romano

Christopher Flynn
Jennifer D. Romano
April N. Ross
Nathaniel P. Bualat
Attorneys for Defendant
United Behavioral Health