PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
399 Park Avenue, 14th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br>Action Filed: May 21, 2014<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT'S OBJECTIONS TO EVIDENCE FILED IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| GARY ALEXANDER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-05337-JCS<br>Action Filed: December 4, 2014<br><br>Date: June 17, 2016<br>Time: 9:30 A.M.<br>Judge: Hon. Joseph C. Spero<br>Courtroom: G |

UBH's Objections to Evidence Filed in Support of Plaintiffs' Motion for Class Certification ("Objections"), Doc. 149-11, filed in conjunction with UBH's Opposition to Motion for Class Certification ("Opposition") are both procedurally improper and substantively meritless. They should be summarily stricken by the Court. That disposition would likely be the best outcome UBH could hope for, because a closer review of UBH's "Objections to Evidence" only reveals the same unconvincing factual arguments and carelessness towards case law that plagues UBH's Opposition.

First, the Objections are procedurally improper because Civil Local Rule 7-3(a) requires "[a]ny evidentiary and procedural objections to the motion [to] be contained within the brief or memorandum [in opposition to that motion]." In other words, if UBH had legitimate objections to the evidence Plaintiffs discussed in their Motion for Class Certification, it could have, and should have, raised them in its Opposition. Instead, UBH tries to add seven pages of dense argument to its response on class certification, without asking permission from the Court. *See Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1119 (N.D. Cal. 2011) (chastising parties that "attempted to evade the briefing page limits by filing [motions to strike] instead of fully voicing their evidentiary and procedural objections in their opposition and reply briefs as required by the Local Rules"); *see also* Civ. Loc. R. 7-4(b) ("[u]nless the Court expressly orders otherwise pursuant to a party's request made prior to the due date," response briefs are capped at 25 pages). UBH obtained Plaintiffs' consent, and thereafter the Court's leave, to increase its Opposition brief page limit by 10 pages. It is even less appropriate, then, that UBH seeks to couch an ***additiona***l seven pages of argument as "Objections to Evidence." UBH's submission is irksome to the Court and should be stricken in full. *See, e.g.*, *Prentice v Nat'l Railroad Passenger Corp.*, 2014 WL 38688221, at *5 (N.D. Cal. Aug. 6, 2014) (granting motion to strike opposing party's "objections" submission because it failed to comply with Local Rule 7-3); *Coleman v. Kaiser Permanente*, 2014 WL 2886293, at *3 (N.D. Cal. June 25, 2014) (refusing to consider objections that plaintiff filed "apart from her opposition briefs in violation of Civil Local Rule 7–3").

Second, the Objections are generally meritless at the class certification stage, where strict admissibility is not required. UBH focuses on the technical admissibility as documentary evidence of various exhibits that Plaintiffs have cited in support of class certification. *See* Def.'s Obj., at 1-3 (citing FRE 1006 for improper summary); *id.* at 2, 6 (citing FRE 901 for authentication); *id.* at 2, 6 (citing FRE 802 for hearsay). But trial admissibility is not the question here. *See Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n.5 ("Each side has challenged the admissibility of the evidence submitted by the other side. However, unlike evidence presented at a summary judgment stage, evidence presented in support of class certification need not be admissible at trial."); *Rollins v. Traylor Bros., Inc.*, 2016 WL 258523, at *3 (W.D. Wash. Jan 21, 2016) ("[C]ourts have held that on a motion for class certification, the evidentiary rules are not strictly applied and courts can consider evidence that may not be admissible at trial.") (quoting *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 599 (C.D. Cal. 2008)). Thus, even if the Court were to consider UBH's improper submission, the objections would only go towards the weight of Plaintiffs' evidence. *See King v. On the Record, Inc.*, 2014 WL 279843, at *2 (N.D. Cal. Jan 14, 2014) (in context of motion for class certification, "Defendant's objections to Plaintiffs' declarations . . . violated Civil Local Rule 7–3(a) . . . . More importantly, however, the objections go to the weight—not the admissibility—of the testimony."). There is certainly no basis for Defendant's apparent position that the Court should *totally* exclude Plaintiffs' evidence from the analysis.[1]

---

[1] To the extent there are stray decisions from other district courts in the Ninth Circuit that imply otherwise, those decisions are (1) less persuasive that decisions from this district; and (2) in the minority. *Compare Lewis v. First Am. Title Ins. Co.*, 265 F.R.D. 536, 544 (D. Idaho 2010) (refusing to relax evidentiary standards), *with, e.g.*, *Rollins*, 2016 WL 258523, at *3 (rejecting *Lewis* as unpersuasive); *Lee v. Pep Boys-Manny Moe & Jack of Cal.*, 2015 WL 9480475, at *1 n.2 (N.D. Cal. Dec. 23, 2015) (relaxing evidentiary standards); *City of Huntington Park v. Landscape Structures*, 2015 WL 3948411, at *11 (C.D. Cal. June 27, 2015) (same); *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 275 (N.D. Cal. 2015) ("It appears, however, that a majority of courts have determined that evidentiary rules should be relaxed at this stage."); *Davis v. Soc. Serv. Coordinators*, 2012 WL 3744657, at *7 (E.D. Cal. Aug. 28, 2012) ("There are several reasons why the evidentiary standards should be relaxed at this stage of the proceedings," including that "unlike a Rule 56 motion for summary judgment, there is no express requirement that the evidence considered be admissible for purposes of trial."); *Parkinson*, 258 F.R.D. at 599 (strict admissibility not required); *Bell v. Addus Healthcare, Inc.*, 2007 WL 3012507, *2 (W.D.

Third, each individual Objection is meritless. Plaintiffs respond specifically to each of UBH's procedurally improper and generally unfounded objections as follows:

| No. | Exhibit | Objection(s) | Response to Objection(s) |
|---|---|---|---|
| 1. | Ex. A-1 | Improper Summary (Fed. R. Evid. 1006); Misleading; Inaccurate<br><br>Plaintiffs contend that Ex. A-1 is a "Summary of Selected Level of Care Guideline Provisions Over-Emphasizing Acute Criteria." This purported summary is inaccurate and misleading. *Amarel v. Connell*, 102 F. 3d 1494, 1516 (9th Cir. 1996) (requiring that summaries under FRE 1006 be accurate). Ex. A-1 fails to include or account for many provisions in UBH's LOCs regarding the meaning of an "acute" symptom, which depends on, among other things, a member's particular circumstances and diagnosis. The "Common Criteria" of the LOCs provide that the appropriate level of care will depend on "[s]ignificant variables" like the member's age, readiness for change, risk factors, past response to treatment, and family/social support. Declaration of Jennifer Romano in Support of Defendant United Behavioral Health's Opposition to Motion for Class Certification ("Romano Decl."), Ex. 45 at 8 [2013 LOC Common Criteria]; *see also id.* Ex. 46 at 6-7 [2014 LOC Common Criteria] (describing individualized factors for determining appropriate treatment at every level of care.) Moreover, each LOC must be applied "in a flexible manner" according to the clinician's "sound clinical judgment," and each allows exceptions where case specific circumstances warrant. *See, e.g., id.* Ex. 43 at 3 [2011 LOC]; Ex. 44 at | *Amarel v. Connell*, 102 F.3d 1494, 1516 (9th Cir. 1996), like FRE 1006, merely requires that "underlying materials were made available to the opposing party for inspection," in order "'to give the opposing party an opportunity to verify the reliability and accuracy of the summary prior to trial.'" *Amarel*, 102 F.3d at 1516 (quoting *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261 (9th Cir.1984)). Because Ex. A-1 summarized documents that UBH ***created*** and that UBH produced in this litigation, Plaintiffs clearly satisfied *Amarel* and FRE 1006. UBH's only reason for claiming Plaintiffs' summary is inaccurate appears to be that Plaintiffs did not include information that UBH contends is relevant (but that Plaintiffs argue is irrelevant). UBH does not assert (nor could it) that Plaintiffs have inaccurately captured the information the chart purports to capture.<br><br>Plaintiffs did not purport to provide a summary of every provision within the UBH Guidelines, but rather set forth an accurate summary of the provisions Plaintiffs contend are most relevant. |

---

Wash. Oct. 12, 2007) (same). The clear weight of authority in this Circuit supports Plaintiffs' argument.

| No. | Exhibit | Objection(s) | Response to Objection(s) |
|---|---|---|---|
| | | 3-4 [2012 LOC]; Ex. 45 at 4 [2013 LOC]; Ex. 46 at 5 [2014 LOC]; Ex. 47 at 5-6 [2015 LOC]. By failing to include this information, Ex. A-1 is inaccurate, misleading, and inadmissible and should not be considered. | |
| 2. | Ex. D | Lack of Authentication (Fed R. Evid. 901); Hearsay (Fed. R. Evid. 802)<br><br>Plaintiffs assert that Ex. D is a document purporting to set forth the "evidence base" for UBH's Guidelines. Ex. D is inadmissible because Plaintiffs do not introduce any evidence authenticating the document.<br><br>Ex. D is further inadmissible because it is hearsay, and Plaintiffs do not introduce any evidence establishing the applicability of any hearsay exception. | Ex. D was produced by UBH in response to Plaintiffs' document requests, as the Bates-numbered cover page indicates. Plaintiffs should not have to do anything more to authenticate a document produced by UBH, especially at the class certification stage. *See, e.g., Anand v. BP W. Coast Products LLC*, 484 F. Supp. 2d 1086, 1092 (C.D. Cal. 2007) ("Documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent.")<br><br>Ex. D is also not hearsay because (1) it was not introduced for the truth of the matter asserted, insofar as Plaintiffs in fact dispute that UBH's Guidelines are consistent with any of their purported "Evidence Bases," and (2) the spreadsheet contained in Ex. D was created and produced by UBH, and is thus a statement by a party opponent. *See* FRE 801(c)(2), (d)(2). |
| 3. | Ex. F | Improper Summary (Fed. R. Evid. 1006); Inaccurate<br><br>Plaintiffs contend that Ex. F summarizes information relating to named Plaintiffs and sample members. This attempted summary is inaccurate and unsupported. *Amarel v. Connell*, 102 F. 3d 1494, 1516 (9th Cir. 1996) (requiring that summaries under FRE 1006 be accurate). Ex. F contains numerous deficiencies and inaccuracies. For example, the following deficiencies and inaccuracies appear in just the first six pages of the Exhibit: First, the information in the "Gov. State" and "Funding" columns is not ascertainable from the alleged support listed in the Exhibit. Ex. F | As noted above, Plaintiffs are fully compliant with *Amarel* and FRE 1006, since Ex. F was compiled solely from documents produced by UBH.<br><br>Nor is the chart "inaccurate," even if UBH claims some of the information on it is incorrect. The majority of the information contained in Ex. F, as UBH well knows, was obtained from spreadsheets prepared by UBH from its LINX and ARTT databases, which contain a wealth of information regarding each denial, including the information contained in the "Gov. State" and "Funding" columns. While the "Exhibit Pages" column directs the Court to some of the evidence related to each Named Plaintiff and Class Member, nothing on the chart suggests that those |

| No. | Exhibit | Objection(s) | Response to Objection(s) |
|---|---|---|---|
| | | has a column entitled "Exhibit Pages," which purportedly provide the underlying information in Ex. F. But governing state information does not appear in the cited pages. Second, there are at least five instances where the "Type of Service" field is inaccurate. For example, RTC-08 lists "SUD" as the type of service, but, based on the cited supporting documents, "MH" should be in that field. Third, there are at least six instances where the "Denial Type Code" is inaccurate. For example, RTC-30 lists "Clinical Coverage Determination" as the denial type code, but, based on the cited supporting documents, "Excluded Service" should be in that field. Fourth, there are at least four instances where the "Guideline Cited in Denial" is inaccurate. For example, RTC-31 lists one guideline as being cited, but two were cited in the supporting documents Plaintiffs cite. Because much of the information in Ex. F is unsupported and inaccurate, the Exhibit is not reliable or admissible and should not be considered. | exhibits contained the only relevant evidence. The spreadsheets on which Exhibit F is based, moreover, were attached to Plaintiffs' Motion as part of Exhibit Q.<br><br>To the extent there are any "inaccuracies" contained in Ex. F, they simply reflect the information contained in UBH's own database. Such inaccuracies could occur in either the database spreadsheets that UBH produced to Plaintiffs, or in the UBH case notes excerpted in Ex. H. For example, RTC-08 was indeed labeled as a substance use disorder case in UBH's spreadsheet, but the case notes reveal it was a mental health case. For a contrary example, RTC-30 was coded in the case notes as "Excluded Service," but the text of the case notes makes it clear that coverage for the treatment was denied based on UBH's CDG for the Residential Rehabilitation of Substance Use Disorders. *See* Ex. H at H0126. Accordingly, the code in the UBH spreadsheet indicating this was a "Clinical Coverage Determination" was in fact correct. Ex. F represents UBH's databases as they are, not as they would be in a perfect world. UBH's attempt to portray Ex. F as inaccurate because it accurately reflects the imperfect information UBH produced to Plaintiffs is, at minimum, disingenuous.<br><br>But UBH's quibble with RTC-31 appears particularly inapposite. While it is true that the UBH case notes for that individual show that both the CDG for Residential Rehabilitation for Substance Use Disorders and the CDG for Partial Hospitalization for Substance Use Disorders were considered, *see* Ex. H at H0130, that is because UBH denied both residential treatment and partial hospitalization. The denial of partial hospitalization is outside the scope of the *Wit* case, and would not have shown up on UBH's spreadsheet, which was designed, by agreement, to capture only denials of residential treatment. |

| No. | Exhibit | Objection(s) | Response to Objection(s) |
|---|---|---|---|
| 4. | Ex. K | Improper Summary (Fed. R. Evid. 1006); Misleading; Inaccurate<br><br>Plaintiffs contend that Ex. K is a "Chart Summarizing Plan Terms Conditioning Coverage on Generally Accepted Standards of Care." According to Paragraph 13 of Ms. Reynolds Declaration, Ex. K purportedly:<br><br>"[I]ndicates whether the terms of the Named Plaintiffs' plans and each of the plans in the agreed upon Plan Sample *conditions coverage* for mental health and substance use disorder treatment *upon a finding that the services are consistent with generally accepted standards of care.* The chart answers "yes" to this question if the plan terms (a) define Covered Services as services that are consistent with generally accepted standards of care or as services that are Medically Necessary;<br>(b) exclude coverage for services that are not consistent with generally accepted standards of care or services that are not Medically Necessary; and/or<br>(c) define Medically Necessary services as those that are consistent with generally accepted standards of care (emphasis added)."<br><br>As reflected in the Reynolds Declaration, Plaintiffs claim through this chart that coverage is solely determined or conditioned by whether the services at issue are consistent with generally accepted standards of care. That representation and, as a result, the chart are inaccurate and misleading. *Amarel v. Connell*, 102 F. 3d 1494, 1516 (9th Cir. 1996) (requiring that summaries under FRE 1006 be accurate). Ex. K conflates the varied requirements and definitions of plan terms into a single "yes or no" question to claim that coverage is conditioned on only one factor. But that is wrong. | As noted above, Plaintiffs are fully compliant with *Amarel* and FRE 1006, since Ex. K was compiled solely from documents produced by UBH.<br><br>Again, UBH does not assert that the chart inaccurately captures the information it sets out to present (that is, UBH does not dispute that the plans contain the terms indicated on the chart). Rather, UBH disagrees with Plaintiffs about whether plans containing the cited terms "condition coverage . . . upon a finding that the services are consistent with generally accepted standards of care." UBH's arguments about the conclusions the Court should draw from the evidence in this case does not make Ex. K in any way "inaccurate" or "misleading."<br><br>Nor does Ex. K represent, as UBH claims, that "coverage is *solely* determined or conditioned by whether the services at issue are consistent with generally accepted standards of care." While UBH takes issue with the nonexistent assertion that coverage is conditioned *only* on adherence to generally accepted standards of care, it does not dispute that such adherence is *a* condition of coverage under those plans, which is all Exhibit K purports to show.<br><br>Finally, Exhibit K is not inaccurate because it does not refer to the plan exclusions UBH highlights in its meritless arguments in opposition to class certification. As Plaintiffs explain at length in their Reply, the exclusions contained in Class members' plans are irrelevant, since in each case, UBH denied coverage not based on an exclusion, but based on its conclusion, under its Guidelines, that the services requested were not consistent with generally accepted standards of care.<br><br>Ex. K is not inaccurate or misleading for not addressing irrelevant information. |

| No. | Exhibit | Objection(s) | Response to Objection(s) |
|---|---|---|---|
| | | The plans that Plaintiffs cite do not define "Covered Services" as only being services consistent with generally accepted standards of care or as services that are Medically Necessary, as Plaintiffs claim. Indeed, the very first plan cited in Ex. K defines "Covered Services" as having to satisfy five different criteria of which "consistent with … prevailing medical standards" is but one. The other criteria includes "Not otherwise excluded in this Certificate under Section 2: Exclusions and Limitations." (Reynolds Decl. Ex. L at L0017-18.)<br><br>In that same plan, under exclusions, inconsistency with "generally accepted standards of medical practice" is but one possible basis for an exclusion. (*Id.* at L0013-14.) Other clinical reasons for services to be excluded from coverage include the services "[n]ot [being] consistent with our level of care guidelines or best practices as modified from time to time" or services "[t]ypically [] not result[ing] in outcomes demonstrably better than other available treatment alternatives that are less intensive or more cost effective." (*Id.*)<br><br>Plaintiffs misconstrue the relevant plan language for the other plans addressed in Exhibit K. See Romano Decl. Ex. 71 [Plan Chart] (setting forth the relevant language for the plans covering the named Plaintiffs and selected sample members and showing that these plan terms require more than simple adherence to "generally accepted standards of care"). What Plaintiffs actually point to is one of many bases to exclude requested services, *i.e.*, it is inconsistent with generally accepted standards of medical practice. Because Ex. K is an inaccurate and misleading | |

| No. | Exhibit | Objection(s) | Response to Objection(s) |
|---|---|---|---|
| | | summary of documents, it should be excluded and not considered. | |
| 5. | Ex. P | Incomplete Transcript; Misleading; Inaccurate<br><br>Ex. P is a compilation of excerpts from various depositions. As set forth below, Plaintiffs failed to include all of the relevant portions for those transcripts including pages that contain the end of relevant answers and errata sheets for included pages.<br><br>1. Transcript for the deposition of Dr. Ahluwalia (Ex. P at P0045-46 (transcript pages 60-61)) (cited in Plaintiffs' Motion at 10:4-5) – Plaintiffs cite this testimony to support an argument about UBH's use of its guidelines, but they fail to provide the full answer to the question at the end of page 61. That answer provides examples of when coverage is authorized when treatment is inconsistent with UBH's guidelines. For completeness, pages 62 and 63 of the transcript for Dr. Ahluwalia's deposition are included in Exhibit 22 to the Romano Decl.<br><br>2. Transcript for the deposition of Dr. Triana (Ex. P at P0035 (transcript page 140)) (cited in Plaintiffs' Motion at 10:14) – Plaintiffs cite this testimony to discuss UBH's preparation of written notices, but fails to include the complete answer from Dr. Triana. For completeness, page 141 of the transcript for Dr. Triana's deposition is included in Exhibit 20 to the Romano Decl.<br><br>3. Transcript for the deposition of Dr. Allchin (Ex. P at P0049 (transcript page 49)) (cited in Plaintiffs' Motion at 10:4-5) – Plaintiffs cite this testimony about UBH's use of its guidelines, but they fail to provide the full answer to the question at the end of page 49. For completeness, page 50 of | With respect to Exhibit P, UBH attempts to portray an exhibit containing an excerpt of the whole as "inaccurate" because UBH disagrees with Plaintiffs as to what portions of the larger document are relevant. The fact that UBH believes more of a transcript should be included is not a valid objection to Plaintiffs' excerpt; instead, UBH should simply submit its own exhibit providing the pages on which UBH wants to rely. *See* FRE 106 ("If a party introduces all or part of a writing …, an adverse party may require the introduction … of any other part … that in fairness ought to be considered at the same time."). In fact, that is precisely what UBH did in Romano Decl. Exs. 20, 22, 23 and 77, among others.<br><br>Accordingly, UBH's "objection" to Ex. P, meritless to begin with, is now moot. *See, e.g., Moreno v. Los Angeles Cty. Sheriff's Dep't*, 2015 WL 4652637, at *13 (C.D. Cal. Aug. 3, 2015) ("The first objection is predicated on the fact that plaintiffs have only proffered portions of the preliminary hearing transcript, which defendants contend are taken out of context. This objection is OVERRULED as MOOT, since, as defendants point out, where a party proffers an incomplete written transcript, the opposing party may supplement the evidentiary record with the complete transcript…. Defendants have done so here."). |

| **No.** | **Exhibit** | **Objection(s)** | **Response to Objection(s)** |
|---|---|---|---|
| | | the transcript for Dr. Allchin's deposition is included in Exhibit 23 to the Romano Decl.<br><br>4. Transcript for the deposition of Ms. Bridge (Ex. P at P0016, 20-21, 23) (transcript pages 62, 74, 76, 106)) (cited in Plaintiffs' Motion at 24:16-17) – Plaintiffs cite several pages from Ms. Bridge's deposition, but they fail to include the errata sheet that UBH served on Plaintiffs that relates to those pages. For completeness, the errata sheet for Ms. Bridge's deposition is Exhibit 77 to the Romano Decl. | |
| 6. | Ex. R | Improper and Unqualified Expert Opinion (Fed. R. Evid. 702); Hearsay (Fed. R. Evid. 802)<br><br>Plaintiffs' Ex. R is their own interrogatory responses. Plaintiffs cite these interrogatory responses as support for arguments about what are applicable "generally accepted standards of care," suggesting that their interrogatory responses are valid expert opinions in an expert report. (*See, e.g.*, Plaintiffs' Motion at 15 (citing Ex. R as the only support for Plaintiffs' contention that "[g]enerally accepted standards of care, by contrast, not only contemplate treatment of chronic conditions, but, with respect to all mental health and substance use disorder diagnoses, aim to promote the patient's long-term recovery and resiliency—goals that go beyond merely stabilizing an immediate crisis").<br><br>Plaintiffs should be precluded from citing their own interrogatory responses in this manner because, on their face, these responses fail to meet any of the requirements of FRE 702.<br><br>Ex. R is further inadmissible because it is hearsay, and Plaintiffs do not introduce any evidence establishing the applicability of any | UBH's objections to Ex. R are the height of chutzpah. UBH propounded these interrogatories on Plaintiffs. Plaintiffs initially responded with objections, explaining that the interrogatories were premature inasmuch as they called for information that was solely relevant to the merits of these cases (rather than class certification) and called for "factual analyses, comparative analyses, opinions, or theories that may be the subject of expert testimony." *See, e.g.,* Plaintiff David Wit's Responses and Objections to Defendant's Second Set of Interrogatories (attached hereto as Exhibit 1). UBH insisted that Plaintiffs answer the interrogatories, arguing that it was entitled to know, for purposes of class certification, precisely what aspects of UBH's Guidelines Plaintiffs are challenging. *See* Letter from Nathaniel P. Bualat to Andrew Caridas (November 18, 2015) (attached hereto as Exhibit 2). Moreover, UBH rejected Plaintiffs' assertion that the interrogatory responses called for expert opinion, stating "[t]hese interrogatories seek information about the facts supporting Plaintiffs' complaints, not 'premature' expert testimony." *Id*. UBH now objects to the very information ***it demanded*** on a ground ***it rejected***. These objections are obviously baseless.<br><br>Ex. R does not contain hearsay because it is not introduced for the truth of the matters stated therein. *See* FRE |

| **No.** | **Exhibit** | **Objection(s)** | **Response to Objection(s)** |
|---|---|---|---|
| | | hearsay exception. | 801(c)(2). It is also not improper expert opinion for the same reason. Plaintiffs do not attempt to prove that UBH's Guidelines are flawed by citing their interrogatory responses. Rather, Ex. R explains which portions of UBH's Guidelines Plaintiffs challenge, and the bases on which they challenge them. Ex. R lists Plaintiffs' allegations in this lawsuit; it does not purport to be evidence proving the truth of those allegations. |
| 7. | Ex. T | Lack of Authentication (Fed R. Evid. 901); Hearsay (Fed. R. Evid. 802); Lack of Relevance (Fed. R. Evid. 402)<br><br>Plaintiffs assert that Ex. T is a document purporting to set forth "inter-rater reliability" data for UBH over a period of three years. Ex. T is inadmissible because Plaintiffs do not introduce any evidence authenticating the document.<br><br>Ex. T is further inadmissible because it is hearsay, and Plaintiffs do not introduce any evidence establishing the applicability of any hearsay exception.<br><br>Plaintiffs also mischaracterize Ex. T by claiming that "inter-rater reliability" solely measures whether UBH's clinical staff is applying UBH's guidelines consistently. Ex. T and the testimony Plaintiffs cite show that "inter-rater reliability" measures consistency in clinical judgment. (*See* Ex. T at T0003 ("Inter rater reliability . . . asks the auditor to indicate whether they agree or disagree with the clinical determination made by the staff based on the documented clinical information"); *see also* Ex. P at P0042 (Triana Dep. Tr. At 171:17-23).) | Ex. T was produced by UBH in response to Plaintiffs' document requests, as the Bates-numbered cover page indicates. Plaintiffs should not have to do anything more to authenticate a document produced by UBH, especially at the class certification stage. *See, e.g., Anand v. BP W. Coast Products LLC*, 484 F. Supp. 2d 1086, 1092 (C.D. Cal. 2007) ("Documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent.").<br><br>Ex. T is also not hearsay because the presentation contained in Ex. T was created and produced by UBH, and is thus a statement by a party opponent. *See* FRE 801(d)(2).<br><br>Finally, UBH's claim that Plaintiffs "mischaracterize Ex. T by claiming that 'inter-rater reliability' solely measures whether UBH's clinical staff is applying UBH's guidelines consistently," is disingenuous. First, Plaintiffs never said that this was the "sole" use of "inter-rater reliability." Second, UBH's documents and testimony make it clear that consistent application of the guidelines is the heart of "inter-rater reliability."<br><br>For example, Ex. T makes clear that the "inter-rater reliability" statistics are presented "***by Level of Care and Coverage Determination Guideline[s]***," *see* Ex. T at T0003, T0017, T0030 (emphasis added), and that "Care Advocate and Peer Review audit tools contain a question [sic] that measure the ***consistency with which staff apply our*** |

| No. | Exhibit | Objection(s) | Response to Objection(s) |
|---|---|---|---|
| | | | ***clinical guidelines***," which results in "Inter-rater reliability: ***Agreement with the LOCG/CDG determination*** based on clinical information," *id.* at T0012, T0025, T0036 (emphasis added). Ex. T also proclaims that "[t]he item measuring ***agreement with the application of LOCG and CDG*** ranged from 93% to 100% agreement among auditors when scoring this item." *Id.* at T0014.<br><br>Similarly, Dr. Lorenzo Triana, UBH's 30(b)(6) witness, testified that one of the purposes of UBH's Guidelines is ensuring consistency in UBH's decision with respect to clinical coverage determinations. *See* Ex. P at P0040-41 (Triana Dep. Tr at 165:23-166:9) (Q. "And then in terms of the purposes served by the guidelines, is one of the, one of the, one of the reasons that UBH has guidelines to help ensure that the people making clinical coverage determinations will do so in a consistent way?" A. "Yes. Consistency is one of the things that we expect. And the guidelines are one of the things that helps us with consistency." |

For all the reasons stated above, this Court should disregard UBH's improper and merit-less Objections to Evidence.

Dated: May 12, 2016

Respectfully submitted,

/s/ D. Brian Hufford

D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
399 Park Avenue, 14th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

Meiram Bendat (Cal. Bar No. 198884)
PSYCH-APPEAL, INC.
8560 West Sunset Boulevard, Suite 500

West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

Caroline Reynolds (admitted *pro hac vice*)
Andrew Caridas (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
creynolds@zuckerman.com
acaridas@zuckerman.com

*Attorneys for Plaintiffs*