PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x 101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
399 Park Avenue, 14th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br>Action Filed: May 21, 2014<br><br>**PLAINTIFFS' OPPOSITION TO MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OR CERTIFICATION OF INTERLOCUTORY APPEAL** |
| GARY ALEXANDER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-05337-JCS<br>Action Filed: December 4, 2014 |

# TABLE OF CONTENTS

Page


I. UBH DOES NOT SATISFY LOCAL RULE 7-9 AND THE COURT SHOULD DENY IT LEAVE TO ASSERT UNTIMELY NEW ARGUMENTS ..... 2

A. The Factual and Legal Theories Underlying the Classes' Claims Were Apparent on the Face of Plaintiffs' Motion for Certification ..... 3

B. Defendant's Failure to Object to Plaintiffs' Characterization of Claim Two Before the Court Certified the Classes Demonstrates that UBH Was Not Surprised by Plaintiffs' Reply or Oral Argument ..... 8

II. RECONSIDERATION IS UNWARRANTED BECAUSE UBH'S NEW ARGUMENTS IGNORE CONTROLLING LAW. ..... 11

A. Claim Two Does Not Violate the Rules Enabling Act ..... 11

B. The Class Definitions Do Not Prejudice Absent Class Members ..... 13

1. Res judicata does not bar non-certified claims ..... 13

2. Res judicata would not bar absent class members' hypothetical claims ..... 17

(a) The hypothetical claims involve different legal theories ..... 17

(b) The hypothetical claims also involve different operative facts ..... 18

3. Because absent class members' hypothetical claims would not be precluded, there is no conflict of interest. ..... 20

III. CERTIFICATION UNDER 28 U.S.C. § 1292(B) IS NOT WARRANTED ..... 24

CONCLUSION ..... 24

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Akootchook v. United States*,
271 F.3d 1160 (9th Cir. 2001) .......... 13, 15, 16, 18

*Andrews-Clarke v. Lucent Techs., Inc.*,
157 F. Supp. 2d 93 (D. Mass. 2001) .......... 17

*Back Doctors Ltd. v. Metropolitan Property & Casualty Ins. Co.*,
637 F.3d 827 (7th Cir. 2011) .......... 23

*Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
193 F.3d 415 (6th Cir. 1999) .......... 18

*Brown v. Ticor Title Ins. Co.*,
982 F.2d 386 (9th Cir. 1992) .......... 16

*Cameron v. Tomes*,
990 F.2d 14 (1st Cir. 1993) .......... 15

*Carrier v. Aetna Life Ins. Co.*,
116 F. Supp. 3d 1067 (C.D. Cal. 2015) .......... 12

*Cooper v. Fed. Reserve Bank of Richmond*,
467 U.S. 867 (1984) .......... *passim*

*Daley v. Marriott Int'l, Inc.*,
415 F.3d 889 (5th Cir. 2005) .......... 17, 19

*Driver v. AppleIllinois, LLC*,
739 F.3d 1073 (7th Cir. 2014) .......... 25

*EEOC v. GNLV Corp.*,
427 F. App'x 599 (9th Cir. 2011) .......... 18

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .......... 23

*Fedrick v. Mercedes-Benz USA, LLC*,
366 F. Supp. 2d 1190 (N.D. Ga. 2005) .......... 9

*Fosmire v. Progressive Max Ins. Co.*,
277 F.R.D. 625 (W.D. Wash. 2011) .......... 17, 23

*Frank v. United Airlines, Inc.*,
216 F.3d 845 (9th Cir. 2000) .......... 17, 19

*Gunnells v. Healthplan Servs., Inc.*,
348 F.3d 417 (4th Cir. 2003) .......... 21, 22

*Hanlon v. Chrysler Corp.*,
150 F. 3d 1011 (9th Cir. 1998) .......... 21

*Hill v. England*,
2005 WL 3031136 (E.D. Cal. Nov. 8, 2005) .......... 9

*Hiser v. Franklin*,
94 F.3d 1287 (9th Cir. 1996) .......... 16, 18, 19

*Illumina, Inc. v. Qiagen, N.V.*,
2016 WL 4719269 (N.D. Cal. Sept. 9, 2016) .......... 9

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1982) .......... 24

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
209 F.R.D. 323 (S.D.N.Y. 2002) .......... 17

*In re Processed Egg Products Antitrust Litigation*,
312 F.R.D. 124 (E.D. Pa. 2015) .......... 24

*In re Toys "R" Us - Delaware, Inc. - Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
2010 WL 5071073 (C.D. Cal. Aug. 17, 2010) .......... 25

*In re Universal Service Fund Telephone Billing Practices Litigation*,
219 F.R.D. 661 (D. Kan. 2004) .......... 22

*Jenkins v. BellSouth Corp.*,
491 F.3d 1288 (11th Cir. 2007) .......... 25

*Johnson v. General Motors Corp.*,
598 F.2d 432 (5th Cir. 1979) .......... 17

*Larson v. Wis. Physicians Serv. Ins. Corp.*,
2014 WL 4265916 (W.D. Wis. 2014) .......... 17

*Leandry v. County of Los Angeles*,
352 F. App'x 214 (9th Cir. 2009) .......... 15

*McClain v. Lufkin Indus., Inc.*,
519 F.3d 264 (8th Cir. 2008) .......... 17

*Rader v. Teva Parenteral Meds., Inc.*,
276 F.R.D. 524 (D. Nev. 2011) .......... 17

*Reese v. BP Exploration (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) .......... 24

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455 (9th Cir. 1996) .......... 12

*Senne v. Kansas City Royals Baseball Corp.*, 2016 WL 1623913 (N.D. Cal. Apr. 25, 2016) .......... 2

*Shuford v. Alabama State Bd. of Educ.*, 920 F. Supp. 1233 (M.D. Ala. 1996) .......... 18

*Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013) .......... 23

*W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271 (C.D. Cal. 2002) .......... 17

**STATUTES**

28 U.S.C. § 1292(b) .......... 24, 25

28 U.S.C. § 2072(b) .......... 11

ERISA § 502(a)(1)(B) .......... 11, 12, 13

**RULES**

Civil Local Rule 7-3 .......... 9, 10

Civil Local Rule 7-9 .......... 2, 3, 11

Fed. R. Civ. P. 23 .......... *passim*

**TREATISES**

1 William Rubenstein, Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:58 (5th ed. 2011) .......... 21

18 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 4416 (2d ed.) .......... 20

18A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 4455 (2d ed.) .......... 14, 15

5 *Moore's Federal Practice* § 23.25(4)(b)(ii) .......... 21

**OTHER AUTHORITIES**

Tobias Barrington Wolff, *Preclusion in Class Action Litigation*, 105 Colum. L. Rev. 717 (2005) .......... 22

On September 19, 2016, after extensive briefing and argument by the parties and deliberation by this Court, the Court certified these cases as class actions to pursue two claims (the "Class Claims") against Defendant United Behavioral Health ("UBH"): "Claim One," a breach of fiduciary duty claim based on Counts I and III of the operative complaints, which asserts that UBH violated its fiduciary duties by developing guidelines that are far more restrictive than those that are generally accepted, and "Claim Two," an arbitrary and capricious denial of benefits claim based on Counts II and IV of the operative complaints, which asserts that UBH improperly used those fatally-flawed guidelines to adjudicate and deny the class members' requests for coverage. Class Cert. Order at 9-10.[1] In its Motion for Leave, UBH takes the remarkable position that the Court erred in certifying the classes with respect to Claim Two because its denials of coverage as to particular members of the certified classes may give rise to additional, individual legal claims against UBH.[2] In other words, UBH seeks to escape class-wide liability for its class-wide wrongful conduct based on its assertion that it may have caused *additional*, non-class-wide harm to some class members. UBH's perverse argument is both belated and meritless.

**First**, the Court should deny UBH leave and refuse to entertain UBH's new arguments because UBH could have raised them before the Court's entry of the Certification Order. The factual and legal bases for UBH's new arguments were abundantly clear from Plaintiffs' Motion for Class Certification, meaning that UBH had ample opportunity to address them in its Opposition. Indeed, UBH failed to raise these arguments even in the intervening four months between Plaintiffs' Reply in support of class certification and the hearing on the motion, or even, for that matter, during oral argument before the Court. UBH's motion is nothing more than an

---

[1] This Opposition cites to Plaintiffs' Motion for Class Certification (*Wit* ECF No. 128-4) (Mar. 28, 2016) as "Class Mot."; to UBH's Opposition to Motion for Class Certification (*Wit* ECF No. 149) (Apr. 28, 2016) as "Class Opp."; to Plaintiffs' Reply in Support of their Motion for Class Certification (*Wit* ECF No. 160) (May 24, 2016) as "Class Reply"; to the Court's Order Granting Motion for Class Certification (*Wit* ECF No. 174) (Sept. 19, 2016) as "Class Cert. Order"; and to UBH's instant Motion for Leave to File a Motion for Reconsideration or, in the Alternative, for an Order Certifying the Court's Order Granting Class Certification for Interlocutory Appeal (*Wit* ECF No. 177) (Sept. 30, 2016) as "Leave Mot."

[2] UBH does not seek reconsideration of class certification with respect to Claim One.

improper attempt to resuscitate waived arguments—likely with an eye toward a future appeal to the Ninth Circuit.

**Second**, even if the Court were inclined to grant UBH leave, it would have no reason to reconsider its Certification Order because UBH's new arguments also fail on the merits. Claim Two neither violates the Rules Enabling Act nor precludes individualized claims that absent class members may hypothetically assert against UBH in subsequent litigation.

## I. UBH DOES NOT SATISFY LOCAL RULE 7-9 AND THE COURT SHOULD DENY IT LEAVE TO ASSERT UNTIMELY NEW ARGUMENTS.

Pursuant to Civil Local Rule 7-9, a party may bring a motion for leave to file a motion for reconsideration of any interlocutory order only if the moving party "show[s] reasonable diligence in bringing the motion," ***and*** one of the following:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L.R. 7-9(a), (b); *Senne v. Kansas City Royals Baseball Corp.*, 2016 WL 1623913, at *4 (N.D. Cal. Apr. 25, 2016) (Spero, C.M.J.).

The first sign that UBH's motion is procedurally improper is the fact that UBH contends that it "satisfies the criteria of Local Rule 7-9(b)(1) *and* (3)." Leave Mot. at 5 (emphasis added).[3] In fact, UBH satisfies neither provision. According to the Motion for Leave, "[a]fter UBH filed its opposition brief, Plaintiffs made three critical interlocking changes to their theories

---

[3] UBH's contention is perplexing because it is logically impossible for the "material facts or [ ] legal arguments" to have been both "*differen[t] . . . from th[ose] which w[ere] presented* to the Court before entry of the interlocutory order for which reconsideration is sought" and actually "*presented* to the Court before such interlocutory order." *Compare* Civ. L.R. 7-9(b)(1) with 7-9(b)(3) (emphasis added).

underlying Count II and Count IV and their prayer for surcharge under Count IV, all of which formed the basis for the Court's September 19 ruling and all of which give rise to serious due process concerns for the absent class members." Leave Mot. at 8. Specifically, UBH asserts that Plaintiffs made two of these "critical interlocking changes" in their Reply and the third at oral argument. *Id.* at 9. According to UBH, these changes prevented UBH from raising its new arguments prior to entry of the Court's order. *Id.*; *see also id.* at 6, n.3 (asserting that UBH could only have raised its new arguments via a surreply).

These assertions defeat the motion from the start. UBH cannot satisfy Local Rule 7-9(b)(3) because it admits it did ***not*** raise its new arguments prior to the Court's entry of the Class Certification Order. And, as discussed further below, UBH also cannot satisfy Local Rule 7-9(b)(1), which requires "that in the exercise of reasonable diligence [UBH] did not know such fact or law at the time of the interlocutory order," because UBH admits it ***could have*** raised its new arguments via surreply or at oral argument. *Id.* at 6, 8-9. Because UBH cannot satisfy Local Rule 7-9, there is no basis to grant UBH leave to file a motion for reconsideration. But in addition to being insufficient to bring UBH's Motion for Leave within the ambit of Local Rule 7-9, UBH's claim that Plaintiffs made "critical . . . changes" to Claim Two in their Reply or at oral argument is also factually incorrect. As explained below, the record proves that UBH was fully aware of the parameters of Claim Two when it filed its Opposition, and was not surprised by Plaintiffs' arguments thereafter.

### A. The Factual and Legal Theories Underlying the Classes' Claims Were Apparent on the Face of Plaintiffs' Motion for Certification.

Contrary to UBH's assertions, Plaintiffs made no material changes to the theories underlying Claim Two or their prayer for surcharge in either their Reply or their oral argument. It is true that the claims and the basis for calculating surcharge on which Plaintiffs moved for class certification were narrower in some respects than the allegations in Plaintiffs' *complaints*. But that narrowing is commonplace in class action lawsuits, and was perfectly evident on the face of Plaintiffs' Motion for Certification. UBH had all the information necessary to bring its new arguments as part of its Opposition, but chose not to do so.

UBH's new arguments are premised on the fact that Claim Two challenges only UBH's use of its overly restrictive guidelines in denying class members' claims and, consequently, does not require Plaintiffs to prove whether any particular class member should in fact have been awarded benefits, or the monetary value of the benefits such class member should have received. UBH now feigns surprise at Plaintiffs' decisions to (i) "drop any theory of recovery other than the theory that UBH improperly adjudicated and denied requests for coverage by relying on overly restrictive Guidelines," (ii) "not challenge the individual basis for or outcome of the class members' benefit determinations," and (iii) "drop[ ] their theory that the surcharge remedy should include reimbursement of out-of-pocket costs of treatment incurred by Plaintiffs and absent class members." Leave Mot. at 9 (quotations omitted). None of these limitations, however, really came as a surprise to UBH; each was evident throughout Plaintiffs' Motion for Class Certification.

For example, Plaintiffs' Motion spelled out clearly what claims the putative classes would be pursuing. With respect to Counts II and IV (i.e., "Claim Two"), on which UBH's Motion for Leave focuses, Plaintiffs stated as follows:

> In Counts II and IV, Plaintiffs allege that UBH improperly adjudicated and denied Class members' requests for coverage because in making those determinations, UBH relied on its overly restrictive internal Guidelines. UBH's use of its fatally flawed Guidelines violated Plaintiffs' and Class members' plans for one of two reasons: in the case of the Guideline Classes, because the plans called for requests for coverage to be reviewed pursuant to criteria that are consistent with generally accepted standards of care, and in the case of the *Wit* State Mandate Class, because the plans were subject to state laws explicitly mandating the use of clinical criteria issued by the American Society of Addiction Medicine ("ASAM") or the Texas Department of Insurance ("TDI").
>
> . . . In short, Plaintiffs challenge UBH's use of a claims-determination methodology that was arbitrary and capricious because it employed a set of clinical criteria (i.e., its Guidelines) that violated plan terms.
>
> Accordingly, to prevail on [Counts II and IV], the Guideline Classes must demonstrate: (1) that those Class members' plans required UBH to make clinical coverage determinations pursuant to criteria that were consistent with generally accepted standards of care; (2) that UBH's fatally-flawed Guidelines were not, in fact, consistent with those required standards; and (3) that UBH adjudicated and denied the members' requests for coverage pursuant to a Guideline. The *Wit* State Mandate Class must demonstrate (1) that those Class members' plans were subject to state laws mandating the use of ASAM or TDI criteria and (2) that UBH adjudicated and denied

> the members' requests for coverage pursuant to its own Guidelines rather than the state-mandated criteria.

Class Mot. at 5-7. Nothing in this description gave UBH any reason to believe that Plaintiffs were seeking certification of claims other than the one the Court ultimately certified.

In fact, the Motion for Certification states time and again that Claim Two is limited to challenging UBH's use of guidelines that contain overly restrictive level of care criteria. It explains that "UBH breached its fiduciary duties to all Class members *in the same way*: by developing Guidelines for its use in making coverage determinations that were inconsistent with generally accepted standards of care and contrary to the terms of the Class members' plans. . . . Accordingly, *there are no individualized issues relevant to the Plaintiffs' claims* . . . ." *Id.* at 22-23 (emphasis added). It explains further that UBH's guidelines contain a common set of "level of care" criteria, including "Common Criteria" that apply across all levels of care, and that these criteria are applied every time UBH makes a benefit determination. *Id.* at 11-12. It also explained that Plaintiffs would "rely on common evidence—most notably, the Guidelines themselves, along with other UBH documents, and expert opinion—to demonstrate that all of UBH's Guidelines suffer from the same defects, which make them fundamentally more restrictive than generally accepted standards." *Id.* at 14. It even described the specific defects that made the level of care criteria in UBH's guidelines more restrictive than generally accepted standards:

> UBH's Guidelines uniformly overemphasize acute criteria and symptoms, while at the same time, they omit criteria for coverage of chronic conditions and ignore factors that are relevant to promoting patients' long-term recovery. For example, the Guidelines' level of care criteria focus heavily on addressing the member's "presenting problems" (also called the "'why now' factors"). UBH's Guidelines make clear that the "presenting problems" refer to the specific, acute symptoms that necessitated treatment in a particular level of care, as opposed to the underlying mental health condition(s). As soon as the crisis precipitating admission eases (even if the patient's underlying condition remains unresolved), the Guidelines call for coverage at that level of care to cease, unless the patient can prove that stepping down to a lower level of care would be unsafe. The Guidelines also demand that patients show constant improvement, even over relatively short timeframes (every 2-3 days or each week), in order for coverage to continue, demonstrating that the Guidelines' focus is on addressing short-term acute symptoms, rather than ensuring a patient's long-term recovery. Treatment that prevents deterioration or maintains a level of function is not covered under the Guidelines at all.

*Id.* at 14-15 (citations omitted). Finally, it explained that "[t]he injunctive and declaratory relief

sought here . . . aims to stop UBH from *using its overly-restrictive criteria* and to require UBH to *use appropriate criteria* both going forward and in reprocessing the claims it arbitrarily and capriciously denied." *Id.* at 22 (emphasis added).

In the face of Plaintiffs' clarity on this point, UBH is hard pressed in its Motion for Leave to identify *any* statement in Plaintiffs' Motion for Certification that supports UBH's purported conclusion that Plaintiffs intended Claim Two to encompass the individualized allegations from Plaintiffs' complaints. *See* Leave Mot. at 6-7 (describing allegations in Plaintiffs' complaints). UBH asserts that "[i]n their motion for class certification, Plaintiffs similarly continued to rest their denial of benefits claims on the premise that the class members were entitled to the benefits they were denied, and that they were denied because of the conduct challenged in the complaint." *Id.* at 7 (emphasis omitted). But UBH's sole citation for this assertion is ***the following single sentence*** from Plaintiffs' Motion for Certification, which UBH misinterprets: "'if an administrator's denial of a benefit claim *turned on* criteria that violated plan terms, the denial was necessarily arbitrary and capricious.'" *Id.* at 7-8 (quoting Class Mot. at 6) (emphasis added by UBH in Leave Mot.). UBH's current spin on that sentence as somehow referring to individual allegations is not a reasonable interpretation, and in any event, is conclusively refuted by the very next sentence in Plaintiffs' brief, which UBH conveniently omits: "In short, Plaintiffs challenge UBH's use of a claims-determination methodology that was arbitrary and capricious because it employed a set of clinical criteria (i.e., its Guidelines) that violated plan terms." Class Mot. at 6. In short, if UBH had truly "proceeded in opposing [Plaintiffs'] motion under the premise that . . . Plaintiffs' proposed Guidelines Class sought certification . . . based on any of the[ ] guideline-related theories articulated in the complaints," *see* Leave Mot. at 8, it could only have been because UBH failed to read the certification motion it was opposing.

UBH's own Opposition confirms that UBH was not under any misapprehension as to the nature of the claims Plaintiffs sought to certify. UBH now says that upon reading Plaintiffs' Reply it was shocked to learn that Plaintiffs did not seek certification of claims related to UBH "misapplying existing guidelines, or failing to consider evidence in relation to guidelines." *See* Leave Mot. at 8. But UBH only mentioned the "misapplying existing guidelines" theory once in

its entire Opposition, in a footnote ***acknowledging*** that Plaintiffs "ignore[d] these claims in their motion for class certification." Class Opp. at 20, n.16. UBH did not even mention the "failing to consider evidence in relation to guidelines" theory at all. It beggars belief that UBH would have spent no time whatsoever on these alternate, individualized claims in its opposition brief if it truly thought they were still on the class certification table.

UBH's second contention, that it learned only at oral argument that Plaintiffs were not seeking class certification to "challenge the individual basis for or outcome of the class members' benefit determinations," is highly misleading and is belied by the record. *See* Leave Mot. at 9. In reality, Plaintiffs do challenge the common basis for *all* the individual benefit determinations (i.e., UBH's use of fatally-flawed criteria to decide whether coverage was warranted) and the outcome of those determinations (i.e., UBH's denials of the claims). It would be nonsensical for Plaintiffs to seek to certify a class action to challenge any more "individualized basis" for each class member's benefit denial—such as the specific clinical presentation of each class member—and nothing in Plaintiffs' Motion for Certification led UBH to the conclusion that Plaintiffs were doing so. It certainly could not have come as a surprise to UBH that Plaintiffs seek reprocessing of denials based on UBH's overly restrictive guidelines—as opposed to a judicial determination as to which of the class members were entitled to benefit payments—since Plaintiffs have sought the reprocessing remedy since the beginning of these cases. *Wit* First Am. Compl. (ECF No. 39) (Sept. 2, 2014) at 65-70; *Alexander* Compl. (ECF No. 1) (Dec. 4, 2014) at 51.

But even if there had been any uncertainty previously, Plaintiffs' Motion for Certification specifically set forth the elements Plaintiffs expected to prove up for Claim Two. *See* Class Mot. at 5-6. Conspicuously absent from this discussion (because it is not, in fact, an element of Plaintiffs' claims) was any mention of proof that each class member was actually entitled to an award of benefits. UBH does not even try to point to language from Plaintiffs' Motion for Class Certification that suggests Plaintiffs represented that such proof was required, nor did UBH's Opposition raise any objection to Plaintiffs' description of the elements of their claims.

Finally, with respect to UBH's third argument, Plaintiffs' class certification motion also

clearly explained that the measure of the surcharge remedy would not be based on individualized factors, such as a particular class member's harm:

> The equitable surcharge remedy is not compensatory, and therefore, need not depend upon the extent of any particular class member's injury (financial or otherwise). Instead, here, a surcharge would be measured in terms of the unjust benefit to UBH from its inequitable conduct. The remedy, accordingly, would be determined on a class-wide basis based on UBH's own records, and would not require any individualized findings.

Class Mot. at 23 (citations omitted). Given this succinct and unambiguous description of the surcharge remedy in Plaintiffs' class certification motion, UBH's argument that it was misled is disingenuous. UBH's opposition brief does include a brief discussion of an alternate measure for the surcharge that Plaintiffs pled, in the alternative, in their complaints but did not seek to pursue on behalf of the class. *See* Class Opp. at 30 (discussing a surcharge equal to "the out-of-pocket costs for . . . treatment that Plaintiffs and members of the Class incurred . . . ."). But this is simply an example of UBH skewering a straw man instead of rebutting the claims and remedies set forth in Plaintiffs' Motion for Certification. And even if UBH was genuinely confused, UBH's contention that it could not have known until oral argument that Plaintiffs' surcharge theory was not based on the amount of benefits owed to each class member is simply false. In response to UBH's straw-man surcharge argument, Plaintiffs' Reply explained in no uncertain terms:

> Plaintiffs seek a surcharge to disgorge from UBH the unjust benefit it received due to its inequitable conduct. . . . This may be measured by the revenue UBH generated as a claims administrator for each claim filed by Class members.
>
> . . . To the extent Plaintiffs' Motion did not make it sufficiently clear to UBH, Plaintiffs are not seeking to pursue, on a class basis, the alternative measures of the surcharge identified in their Complaints and in responses to Interrogatories.

Class Reply at 16 & n.22. Nothing counsel stated at oral argument differed from that assertion.

### B. Defendant's Failure to Object to Plaintiffs' Characterization of Claim Two Before the Court Certified the Classes Demonstrates that UBH Was Not Surprised by Plaintiffs' Reply or Oral Argument.

Had UBH actually been surprised by anything in Plaintiffs' Reply, it should have raised that issue at some point before the Court certified the classes. UBH had ample opportunity to do

so. Plaintiffs filed their Reply on May 12, 2016, nearly four months before the Court heard oral argument. Yet UBH did not seek leave to file a surreply or otherwise object to any argument in the Reply, despite now arguing that the Reply included "improper and prejudicial" new arguments. *See* Leave Mot. at 8, n.4. Nor did UBH so much as mention at oral argument its supposed belief that Plaintiffs' Reply asserted new arguments.

UBH protests—Plaintiffs think too much—that it "was not required to file a disfavored surreply to address Plaintiffs' narrowed claims raised for the first time in reply." Leave Mot. at 6, n.3. But seeking leave to file a surreply is certainly not prohibited, and leave is granted in appropriate cases. *See* Civ. L.R. 7-3(d). Indeed, the most common reason a court would grant leave to file a surreply is that the other party introduced new arguments in reply. *See Hill v. England*, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005) ("Although the Court may in its discretion allow the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, ***such as where the movant raises new arguments in its reply brief***.") (quoting *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005)) (emphasis added); *see also Illumina, Inc. v. Qiagen, N.V.*, 2016 WL 4719269, at *4, n.1 (N.D. Cal. Sept. 9, 2016) (considering arguments raised in non-moving party's surreply and letter to the Court where moving party raised new arguments in its reply brief). In short, if the Reply truly contained something new, UBH could have raised its new arguments right away—certainly, before the Court invested many hours reviewing the parties' briefs, analyzing the extensive evidentiary record, researching the law, hearing oral argument, and writing a thorough and carefully-reasoned opinion. After all, having received an order it does not like, UBH exhibited no hesitation in filing this Motion for Leave eleven days later.

Moreover, if decorum truly prevented UBH from seeking leave to file a surreply, UBH could still have lodged some other form of objection to what it now contends were brand new arguments that purportedly fundamentally altered the very nature of the claims at issue. Local Rule 7-3(d)(1) specifically provides opponents to a motion with an opportunity to object to any new evidence introduced in the proponents' reply brief within seven days. UBH filed a Local Rule 7-3(d)(1) objection on May 19, 2016, exactly seven days after Plaintiffs filed their Reply.

*See Wit* ECF No. 157; *Alexander* ECF No. 120. However, this objection was limited to criticizing the evidentiary summaries contained in two of Plaintiffs' exhibits, and did not raise any objections to what UBH now contends were "shocking" and "prejudicial" new positions that Plaintiffs supposedly took for the first time in their Reply.

At an absolute minimum, UBH could have objected by raising the issue at oral argument. But ***again*** UBH said nothing. Even though UBH noted, at oral argument, that the Reply clarified that Plaintiffs had withdrawn certain theories related to the surcharge remedy, UBH did not give any indication that it considered Plaintiffs' actions in that regard objectionable or that withdrawal of those alternative individualized theories somehow made certification of the class improper. *See* Tr. 35:18-36:2. And this was the only discussion by UBH during oral argument of anything contained in Plaintiffs' Reply, even after UBH had the benefit of four months to pore over the record. UBH gave no indication that it believed Plaintiffs' Reply created a new, irreconcilable conflict between the Plaintiffs and the class. Nor did UBH object to anything Plaintiffs stated at oral argument on the grounds that Plaintiffs were making new arguments or otherwise taking UBH by surprise.

Simply put, UBH had several opportunities, through surreply, Local Rule 7-3(d)(1) objection, and at oral argument, to lodge a complaint about the manner in which Plaintiffs presented their arguments in favor of class certification, and to make the legal arguments UBH now makes in its Motion for Leave. Had UBH truly felt that anything Plaintiffs said in their Reply or at oral argument amounted to new argument or was otherwise surprising and prejudicial to UBH, it would not have remained silent until after the Court ruled on class certification. The far more likely explanation is that UBH's new arguments are a Hail Mary pass on fourth and long. UBH is asserting arguments it considered too weak to merit inclusion in its Opposition—and therefore forfeited—but which it has concluded are worth a try now that all of UBH's preferred arguments failed to prevent certification of the classes. Indeed, UBH's Motion for Leave is likely nothing more than an improper attempt to convince the Court to substantively address UBH's new/waived arguments, so that UBH can attempt to include them in its likely Rule 23(f) Petition to the Ninth Circuit. Such gamesmanship should not be condoned.

## II. RECONSIDERATION IS UNWARRANTED BECAUSE UBH'S NEW ARGUMENTS IGNORE CONTROLLING LAW.

Even if the Court were to ignore UBH's failure to meet the requirements of Local Rule 7-9 and grant UBH leave to file its motion, UBH's arguments lack merit and give the Court no reason to disturb its Certification Order. UBH's contention that certification of Claim Two violates the Rules Enabling Act fails utterly because § 502(a)(1)(B) provides beneficiaries like the class members with much broader grounds for relief than UBH asserts. UBH's feigned concern for the rights of absent class members is equally uncompelling. Claim Two is based on distinct legal theories and different operative facts from the hypothetical additional claims UBH suggests absent class members might bring—based on, for example, UBH's *mis*application of its guidelines or UBH's failure to properly consider all relevant evidence relating to a class member's benefit claim—and thus create no risk of claim preclusion on those hypothetical claims.

### A. Claim Two Does Not Violate the Rules Enabling Act.

UBH's first new legal argument is so tenuous that UBH spends only one page of its brief attempting to make it. UBH argues that the Court's Certification Order violates the Rules Enabling Act, which provides that procedural rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). UBH contends that by limiting Claim Two to a challenge to UBH's use of overly restrictive guidelines, Plaintiffs "no longer contend the necessary elements" of their ERISA § 502(a)(1)(B) claims, because Plaintiffs no longer allege "that [the class members were] entitled to the benefits that were denied." Leave Mot. at 10-11.

First, UBH's argument that "Plaintiffs have narrowed their claims to challenge only the 'process' of using the guidelines, without any connection to a denial of benefits," is simply false. Leave Mot. at 11. Plaintiffs allege—as they have from day one—that UBH relied on its overly restrictive guidelines in denying every class member's claim for benefits. *See, e.g.*, *Wit* Compl. (ECF No. 1) at ¶¶ 4, 16-18, 39-40, 82-86, 89-90, 109; *Wit* First Am. Compl. (ECF No. 39) at ¶¶ 12-15, 205; *Alexander* Compl. (ECF No. 1) at ¶¶ 12-15, 18, 46-47, 71, 91, 118, 127, 141; Class Mot. at 8-15; Class Reply at 3-4, 8, 22-23. As Plaintiffs explained in their briefs in support of class certification, the use of fatally flawed criteria—that is, criteria that are inconsistent with

the plan terms—to deny benefits is, by itself, a violation of class members' rights under the terms of their plans. Class Mot. at 5-6, 13-15; Class Reply at 1-3, 14-15, 17-18. UBH appears to believe that a claim under § 502(a)(1)(B) requires a court to find that a beneficiary was actually owed benefits. But that is not how ERISA works. Rather, because the courts have been careful to avoid becoming the claims administrator of last resort, this remedial provision simply requires proof that the claim administrator's decision was "arbitrary and capricious." Indeed, this is why the default remedy for an ERISA § 502(a)(1)(B) violation is remand—not an award of benefits. *See Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 461 (9th Cir. 1996) ("remand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and *applied a wrong standard to a benefits determination*") (emphasis added). *See also* Class Reply at 6-7 (explaining that reprocessing is the preferred remedy). Accordingly, Plaintiffs need only prove that the guidelines UBH used to deny benefits to each class member were inconsistent with what the plans required (that is, with generally accepted standards), *not* that each class member will in fact receive benefits after their claims are reprocessed pursuant to appropriate criteria.

In any event, an action for "wrongful denial of benefits" is only one of three possible claims a plaintiff, or a class, may maintain under § 502(a)(1)(B). UBH simply ignores two thirds of § 502(a)(1)(B). According to UBH,

> A claim for denial of benefits requires proof that the plaintiff was entitled to the benefits that were denied. *See Carrier v. Aetna Life Ins. Co.*, 116 F. Supp. 3d 1067, 1077 (C.D. Cal. 2015) (in action brought under § 1132(a)(1)(B) for "wrongful withholding of benefits," the plaintiff bore the burden of "proving entitlement to benefits.") . . . .

Leave Mot. at 11. But in addition to a claim for wrongful denial of benefits, § 502(a)(1)(B) also allows "a participant or beneficiary" of an ERISA plan "to recover benefits due to him under the terms of his plan, ***to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.***" (emphasis added). Plaintiffs' claims challenge UBH's use of coverage criteria that are inconsistent with the terms of the class members' plans, which all require UBH to make coverage decisions consistent with generally accepted standards

of care. In other words, Plaintiffs are seeking to enforce the class members' rights under their plans to have their benefits adjudicated pursuant to the plan terms; insofar as they are seeking prospective relief, Plaintiffs are also seeking to clarify class members' rights to future benefits under the terms of the plans. Even if Claim Two were not a claim for wrongful denial of benefits (which it is, as explained above), UBH still does not, and cannot, explain how a challenge to UBH's reliance on criteria that conflicts with the terms of the class members' plans would fail to state a claim under the other two prongs of § 502(a)(1)(B).

**B. The Class Definitions Do Not Prejudice Absent Class Members.**

UBH argues that because Plaintiffs declined to seek certification of hypothetical additional claims that some unspecified absent class members might have—i.e., claims that would be more difficult to certify—Plaintiffs have "throw[n] away" those claims, and a decision on the merits "will preclude absent class members from bringing later benefits claims . . . arising out of the same denial of benefits . . . ." Leave Mot. 12. Accordingly, UBH argues, the class representatives have a "conflict of interest" with absent class members. This argument not only misconstrues the conflict of interest standard; it also perverts the rules of claim preclusion as they apply to class actions. In every class action, some subset of absent class members might have additional, individualized claims against the defendant. But where a court certifies a class, claim preclusion does not bar claims based on different legal theories, or different operative facts, that absent class members might later decide to pursue. As the Supreme Court and Ninth Circuit have repeatedly held, adopting UBH's arguments would eviscerate Rule 23.

**1. Res judicata does not bar non-certified claims.**

Under controlling law, which UBH ignores entirely, where a court certifies a class to pursue only certain legal theories that are common to all class members, it leaves undisturbed and un-precluded any other legal theories, based on the same or different operative facts, that absent class members might later decide to pursue. *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 881 (1984); *Akootchook v. United States*, 271 F.3d 1160, 1164-65 (9th Cir. 2001). This rule makes perfect sense in the class-certification context. Given "the relative advantages and disadvantages of class procedure," courts regularly certify classes "for only part of what

would be a single claim if an action were brought by an individual plaintiff." 18A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 4455 (2d ed.). For example, "[i]f a product defect has caused severe personal injury to a small number of victims . . . and a relatively small diminution in resale value to many customers, it may be desirable to certify a class limited to the resale-value damages without attempting to sweep the personal-injury victims into a single class proceeding." *Id.* Such "narrow certification" serves to "limit the scope of class-action preclusion." *Id.* That is, by "adopting a narrow class definition," a "class-action court can easily defeat preclusion," i.e., prevent subsequent claim preclusion or issue preclusion that might otherwise bar claims based on different legal theories. *Id.*

In *Cooper*, the plaintiffs alleged that they were victims of both (1) a pattern and practice of racial discrimination, and (2) individualized, personal discrimination. 467 U.S. at 878. Both claims were based on the same injury, and asserted the same cause of action (§ 703(a) of Title VII). *Id.* at 874. The district court certified a class only on the pattern or practice claim. The question on appeal was whether, in light of the preclusion rules, the court "had a duty to decide the merits of the individual claims of class members," or could permit plaintiffs with individualized discrimination claims "to bring separate actions." *Id.* at 880-81. The defendants argued that if the court certified the plaintiffs' pattern-or-practice claims without extinguishing their individualized claims, "the duplicative litigation that Rule 23 was designed to avoid will be encouraged, and . . . defendants will be subjected to the risks of liability without the offsetting benefit of a favorable termination of exposure through a final judgment." *Id.* at 881. The Supreme Court rejected the argument, and held that the individualized discrimination claims would not be precluded by a final judgment on the pattern-or-practice claim. *Id.* Where class members have some claims that are certified and others that are not, res judicata only bars *the claims that were certified*, i.e., the claims that were "actually adjudicate[d]," not any other claims. *Id*. "The basic effort to limit class adjudication as close as possible to matters common to members of the class frequently requires that nonparticipating members of the class *remain free to pursue individual actions* that would be merged or barred by claim preclusion had a prior individual action been brought for the relief demanded in the class action." 18A Charles Alan

Wright *et al.*, *Federal Practice and Procedure* § 4455 (2d ed.) (citing *Cooper*) (emphasis added).

Following *Cooper*, the Ninth Circuit has made clear that a class action only precludes subsequent claims that are based on (a) the same operative facts ***and*** (b) the same legal theory for relief. *Akootchook*, 271 F.3d at 1165 n.24 ("[A] class action judgment . . . binds the class members as to matters actually litigated but ***does not resolve any claim based on individual circumstances that was not addressed in the class action*** . . . .") (emphasis added) (quoting *Cameron v. Tomes*, 990 F.2d 14, 17 (1st Cir. 1993)). *Akootchook* involved whether certain Native Alaskans were entitled to land allocations under the Alaska Native Allotment Act (the "ANAA"). 271 F.3d at 1162. The ANAA required applicants to show "substantially continuous use and occupancy of the land for a period of five years." *Id.* In two prior class actions, plaintiffs had asserted that they were entitled to allotments because their *ancestors* had made "continuous use" of particular land. After those claims were rejected, a subset of the prior class—those who had lived on particular land during their childhood—sued again. The defendants asserted res judicata, but the Ninth Circuit held that their claims differed from those of the "ancestral use" class, because the *legal theory* they asserted was different. *Id.* at 1164. "Appellants are not asserting rights to allotments based on ancestral use of the land but rather on their own personal use of the land when they were children." *Id.* Because the only "claim" that had been certified in the prior actions was "the ancestral use claim," and no class had been certified on a "personal use as children" claim, final judgments in the prior cases did not preclude the latter claims. *Id.* at 1165. In short, although the injury (denial of land allotment applications), cause of action (violation of the ANAA), and requested remedy (land allotments) were all the same, there was no claim preclusion because the *claims* asserted in the two actions "differ[ed]." *Id.*; *see also, e.g.*, *Leandry v. County of Los Angeles*, 352 F. App'x 214, 215 (9th Cir. 2009) ("[A] final determination on the merits in a suit that alleged unconstitutional patterns or practices does not preclude a later suit involving the same parties for individual instances of such unconstitutional actions.").

This rule is the only one consistent with the purposes of Rule 23. As the Supreme Court explained in *Cooper*, "[t]he class-action device was intended to establish a procedure for the

adjudication of common questions of law or fact." *Id.* at 880. If a final judgment in a class action on one claim were to extinguish all individualized claims—i.e., those that could not have been brought on a class-wide basis—"it would be tantamount to requiring that every member of the class be permitted to intervene to litigate the merits of his individual claim." *Id.* A requirement that class plaintiffs bring "individual claims in addition to . . . common class claims" would "destroy the purpose of class actions." *Akootchook*, 271 F.3d at 1165.[4] *See also Hiser v. Franklin*, 94 F.3d 1287, 1292 (9th Cir. 1996) ("The purpose of a class action is to concentrate on an issue or issues all class members have in common. If every prisoner in the state of Alaska needed to join his or her own individual damage claim to [a prior class action involving prison conditions] or else lose it, the action would have been unmanageable."). For those reasons, under controlling Supreme Court and Ninth Circuit precedents, a final judgment in a class action only bars subsequent individual actions where both concern the same legal theory *and* operative facts.

Astoundingly, UBH ignores this controlling authority. Instead, it directs the Court to a hodge-podge of out-of-Circuit or district court cases. Leave Mot. 13-16.[5] Even if the Court could disregard controlling law (it cannot), none of those cases provides any reason to second-guess the narrowly-tailored class certification order in this case. UBH has not identified a single case, in any jurisdiction, where a court held that res judicata barred a claim that had *not* been certified in a prior class action. Rather, in every case UBH cites where a claim was barred by res judicata, (a) the first case was not a class action,[6] and/or (b) both cases involved both the same legal

---

[4] *Akootchook* involved a class certified only under Rule 23(b)(2). Thus, the Court's full statement was that a rule such as that proposed by UBH here would "destroy the purpose of class actions *under Rule 23(b)(2)*." 271 F.3d at 1165 (emphasis added). Of course, the class herewas certified under (b)(2) like the class in *Akootchook*, but it was also certified also under (b)(1) and (b)(3). UBH's proposed preclusion rule, like the one rejected in *Akootchook*, would undermine class actions under (b)(1) and (b)(3) just as much as those under (b)(2).

[5] The only Ninth Circuit case UBH cites is *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386 (9th Cir. 1992). In *Brown*, the legal theories and factual bases asserted in the two successive actions were identical; thus, to the extent the plaintiff sought the same relief that had previously been granted (injunctive relief), his claim was precluded. Here, the legal theories *and* the operative facts underlying the absent class members' hypothetical claims are *different* from those underlying the Claim Two. Accordingly, *Brown* is completely consistent with certification of Claim Two.

theory *and* the same operative facts.[7]

That leaves UBH with only *Johnson v. General Motors Corp.*, 598 F.2d 432 (5th Cir. 1979), which, like *Cooper*, involved an individual claim for racial discrimination in employment.[8] Not only did *Johnson* precede *Cooper*, but it held in pertinent part that the plaintiff's claim was *not* barred by a final judgment in a prior class action, because it was based on different operative facts. *Id.* at 438-39 (noting that Johnson's claim was based on discriminatory practices "far beyond the practices at issue" in the prior class action, and thus there was "nothing to prevent" an absent class member of the prior class action from litigating those claims). Thus, *Johnson* actually supports Plaintiffs' position, and not UBH's.

In short, a decision on the merits of this case, as certified, would have no preclusive effect on claims asserting different legal theories or based on different policies or practices of UBH.

### 2. Res judicata would not bar absent class members' hypothetical claims.

Here, the hypothetical claims that UBH invokes would not be precluded, for two independent reasons: they involve different legal theories, and they involve different operative facts.

#### (a) The hypothetical claims involve different legal theories.

The first, most fundamental reason the hypothetical individualized, non-class-wide claims would not be precluded is that they involve different legal theories. This case challenges

---

[6] *See Daley v. Marriott Int'l, Inc.*, 415 F.3d 889 (5th Cir. 2005); *Larson v. Wis. Physicians Serv. Ins. Corp.*, 2014 WL 4265916 (W.D. Wis. 2014); *Andrews-Clarke v. Lucent Techs., Inc.*, 157 F. Supp. 2d 93, 96 (D. Mass. 2001).

[7] *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 283 (8th Cir. 2008); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 338 (S.D.N.Y. 2002); *Andrews-Clarke*, 157 F. Supp. 2d at 102; *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 634 (W.D. Wash. 2011); *W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002); *Rader v. Teva Parenteral Meds., Inc.*, 276 F.R.D. 524, 529 (D. Nev. 2011).

[8] UBH curiously notes that *Frank v. United Airlines, Inc.*, 216 F.3d 845 (9th Cir. 2000) "cited with approval ***on other grounds***" *Johnson*. Leave Mot. 13 (emphasis added). UBH omits the fact that it was the dissent, rather than the majority, in *Frank* that cited *Johnson*. Even then, as UBH admits, the *Frank* dissent cited *Johnson* for an unrelated proposition of law.

UBH's promulgation of level of care criteria that are far more restrictive than generally accepted standards of care, and its use of those guidelines to arbitrarily and capriciously deny coverage. Plaintiffs have made clear—as did the Court in certifying the classes—that they are leaving open for individual litigation, if class members might wish to pursue them, (1) all claims other than the Class Claims, and (2) any claim for relief other than reprocessing and a surcharge that disgorges UBH's unjust enrichment. *See* Class Cert. Order at 10-12 & n.10; Tr. 8 (explaining that Plaintiffs were pursuing only the Class Claims on a class-wide basis, not claims based on the "individualized additional reasons for why their denials were wrong").

UBH argues that absent class members might later assert claims that UBH, for example, ignored member-specific evidence that had been presented to it, or applied guidelines that did not match beneficiaries' conditions or the level of care at issue, or had some claim related to portions of the Guidelines focused on the quality of care provided, rather than the patient's need for the services. Leave Mot. 13-14. But those claims are, by definition, based on different legal theories than Claim Two. Just as in *Cooper*, *Akootchook*, and *Hiser*, claim preclusion would not bar those claims. *See also, e.g.*, *EEOC v. GNLV Corp.*, 427 F. App'x 599, 599 (9th Cir. 2011) (reversing district court's dismissal of individual employment discrimination claims, despite prior grant of summary judgment to the employer in an employment discrimination class action, because the earlier class had asserted only a pattern-or-practice claim); *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 193 F.3d 415, 428-29 (6th Cir. 1999) ("*[R]es judicata* only precludes the Florida plaintiffs from relitigating the contract claims against SSG *that were adjudicated by the district court* [before they opted out] and for which the district court certified a class that included the Florida plaintiffs.") (emphasis added); *Shuford v. Alabama State Bd. of Educ.*, 920 F. Supp. 1233, 1239 (M.D. Ala. 1996) (no claim preclusion where, in prior class action, a voting rights claim had been "dropped" prior to certification, and thus the plaintiff had never been "represented *on a voting rights claim*") (emphasis added).

(b) <u>The hypothetical claims also involve different operative facts.</u>

The individualized claims that UBH invokes also would not be barred because they involve "different set[s] of operative facts." *Hiser*, 94 F.3d at 1289. Other courts, including in the

*Daley* case cited by UBH, frame the "operative facts" analysis as looking to whether "the wrong for which redress is sought is the same in both actions." *Daley*, 415 F.3d at 896. In *Daley*, for example, the plaintiff's claim in both cases was based on the same wrong: denial of her claim for mental health coverage *based on a particular provision in her plan—a 30 day limit on annual visits*. 415 F.3d at 891.

In contrast to *Daley*, the plaintiffs in *Hiser* and *Frank*, 216 F.3d at 845—like the absent class members under UBH's hypothetical—asserted claims based on operative facts *different* from those that had been adjudicated in the prior class action. In both cases, the Ninth Circuit held the claims were not barred by claim preclusion. In *Hiser*, the plaintiff, a prisoner, alleged that his constitutional rights were violated when the prison refused to photocopy his legal documents. 94 F.3d at 1289. A prior class action had resulted in a consent decree, which included remedies related to "access to the courts," including that the state provide typewriters and carbon paper. *Id.* at 1292 & n.4. The *Hiser* court held that the two claims involved "different set[s] of operative facts." *Id.* at 1292. If "everything related to prison life could conceivably be deemed part of 'a series of transactions' when a broad-based class action is brought, . . . it would essentially make class actions obsolete." *Id.* at 1293. Similarly, in *Frank*, an earlier class action had resulted in a permanent injunction enjoining United Airlines from discriminating on the basis of sex in enforcing a policy imposing weight restrictions on flight attendants. 216 F.3d at 850. United amended its policy, and then a new set of plaintiffs sued, alleging that the new policy was also discriminatory. Because the new plaintiffs' claim was based on "a different weight policy," the claim did not "arise from the 'same transactional nucleus of facts,'" and thus was not barred. *Id.* at 851.

Here, the "operative facts" or "wrongs" that would be asserted in the hypothetical individualized claims by absent class members all are different from those asserted here. In the class action as certified by this Court, the operative facts are UBH's adoption and use of level of care criteria that are inconsistent with generally accepted standards of care. If a plaintiff were to later sue UBH for failing to review a member's medical records, for example, that would obviously involve different operative facts (i.e., it would be a different "wrong") from those at

issue here. Claim preclusion would similarly not apply if class members asserted that UBH (1) knew that a beneficiary sought coverage for one level of care (such as residential treatment), but applied the level of care criteria applicable to a different level of care (such as inpatient), or (2) denied a claim based on the "Clinical Best Practices" portions of the CDGs (i.e., based on a conclusion that the member's *physician* was not following "best practices"). *Cf.* Leave Mot. at 13-14. None of those facts are being litigated on a class-wide basis and thus will not be resolved by the Court in ruling on the merits with respect to Claim Two.[9]

In short, res judicata would pose no obstacle to absent class members asserting the types of hypothetical claims UBH invokes in its motion.[10]

**3. Because absent class members' hypothetical claims would not be precluded, there is no conflict of interest.**

UBH's motion not only misunderstands the rules of claim preclusion as they apply to class actions, it misunderstands the requirements the Rule 23(a) adequacy requirement. Rule 23(a) has two elements: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute

---

[9] UBH's motion focuses on whether subsequent claims by absent class members would be barred by *claim* preclusion. Insofar as UBH's motion could be read to also argue that such hypothetical claims might be impeded by *issue* preclusion (i.e., collateral estoppel), the argument also fails. Collateral estoppel would only apply to [1] a specific "issue" that was [2] "actually decided" [3] after a "full and fair opportunity for litigation, [4] by a disposition that was "final," "on the merits" and "valid, and [5] was "necessary to decide the issue in disposing of the first action." 18 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 4416 (2d ed.) at 392. UBH has not pointed to any issue that could possibly satisfy all of these elements. Nor has UBH explained how the possibility of issue preclusion could ever serve as a basis for refusing to certify a class.

[10] In passing, UBH also suggests that certification should be denied because an absent class member might want to seek a different type of surcharge (reimbursement of out-of-pocket expenses) from the one Plaintiffs have sought on a class-wide basis (UBH's unjust enrichment, *see* Class Mot. at 23; Class Reply at 16). Leave Mot. at 20 ("Plaintiffs also jettison on behalf of absent class members any future claim for out-of-pocket costs through an equitable surcharge remedy."). But that argument is beside the point. If Plaintiffs prevail, and if UBH reprocesses class members' claims, then any absent class member who would have been entitled to benefits but for UBH's reliance on invalid guidelines *will* be awarded their wrongfully denied benefits. If UBH prevails here, then the hypothetical absent class member who may desire reimbursement of out-of-pocket expenses, based solely on the same legal theory and operative facts as are actually adjudicated, would not have been entitled to that remedy in any event.

the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1020 (9th Cir. 1998). UBH does not dispute that class counsel (Zuckerman Spaeder and Psych-Appeal) are qualified and competent, and will prosecute this action vigorously on behalf of the class. Rather, UBH's motion hinges on the naked assertion that the case is infected with a conflict of interest between the class representatives and absent class members.

Tellingly, however, UBH never states the actual *standard* for when class representatives are impermissibly conflicted. That is no surprise, because the only conflicts that prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement are those that are "fundamental to the suit," and "go to the heart of the litigation." 1 William Rubenstein, Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:58 (5th ed. 2011). Moreover, where a class action defendant asserts preclusion as the basis for a conflict of interest, it is the defendant's burden to show that (a) absent class members actually have such claims, (b) the claims are valid and meritorious, and (c) there is a likelihood that absent class members would actually bring those claims. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003). That is because to defeat the adequacy requirement of Rule 23, "a conflict 'must be more than merely speculative or hypothetical.'" *Id.* (quoting 5 *Moore's Federal Practice* § 23.25(4)(b)(ii)).

UBH has come nowhere close to making such a showing. UBH argues that the class representatives' decision to seek certification only on Claim Two and not on different, individualized theories, renders them inadequate representatives. But, for the reasons discussed above, it is precisely *because* the class representatives have carved out individualized claims from the class that there is no "conflict of interest," let alone a "fundamental" one. *Hanlon*, for example, was a product liability class action involving faulty rear latch-gates on Chrysler minivans. All class members had product liability claims; some *also* had individualized claims for personal injury. The class action, as here, was "narrowly circumscribed." 150 F.3d at 1021. Because the class representatives had taken "careful precautions and safeguards"—most importantly by not attempting to pursue, on a class-wide basis, individual "personal injury or wrongful death claims"—the Ninth Circuit readily concluded that "no improper conflict of interest existed which would deny absent class members adequate representation." *Id.*

The defendants in *In re Universal Service Fund Telephone Billing Practices Litigation*, 219 F.R.D. 661 (D. Kan. 2004), also had raised a similar argument to the one UBH raises here: that "the proposed named plaintiffs are inadequate class representatives" because they "abandon[ed] their fraud claim in an attempt to obtain class certification." *Id.* at 668. The court held that this was not a conflict of interest; to the contrary, the decision to "pursue certain claims while abandoning a fraud claim that probably was not certifiable" was one that "*advance[d]* . . . the interests of the absent class members." *Id.* at 669-70 (emphasis added). Indeed, if the defendants' argument—that abandoning individualized claims in order to obtain certification creates a "conflict of interest"—were "taken to its logical extreme," it would "eviscerate the possibility of certifying class actions" in numerous contexts, such as SEC Rule 10(b)(5), "because the nucleus of facts giving rise to a 10(b)(5) securities fraud case also commonly give[s] rise to a common law fraud claim." *Id.* at 670.

Similarly, in *Gunnels*, the defendant health care plan had not cited a single case, or presented any evidence, that absent class members "would have viable claims against their employers," and indeed "no employee ha[d] filed such a claim." 348 F.3d at 430. As a leading scholar has explained, courts that deny class certification based on a "vague apprehension of 'risk' that such a parade of [preclusion] horribles might nonetheless result for the hapless plaintiffs currently before them," are engaging in "abdication masquerading as diligence," because they proceed from the false premise "that it is impossible for a rendering forum to resolve preclusion problems in any meaningful fashion." Tobias Barrington Wolff, *Preclusion in Class Action Litigation*, 105 Colum. L. Rev. 717, 744-45 (2005). That is "not an acceptable way to administer an adjudicatory system." *Id.* at 744. Rather, the proper response is to use one of the various "tools by which trial courts might constrain the preclusive effects of their own judgments," such as "narrow definitions of class certification." *Id.* at 768 & n.152. That is precisely what the Plaintiffs, and the Court, have done here.

UBH has not even theorized a valid and meritorious claim that would arise from both the same legal theory and the same operative facts as the certified Claim Two, yet could be brought on an individual, non-class basis. Nor has UBH attempted to show that any absent class members

have such claims that are valid and meritorious. *Compare, e.g.*, *Fosmire*, 277 F.R.D. at 633 (noting that class members from other states had valid claims for "stigma damages," which would be precluded because such claims would be based on the same legal theories and operative facts as those asserted by the putative class).[11] Indeed, UBH does not even bother to assert—much less prove—how many absent class members have such claims or why they would be entitled to the relief UBH criticizes Plaintiffs for abandoning.[12] UBH does not make any distinctions among the hypothetical claims it asserts; with a broad brush, UBH contends that *all* such claims would be precluded, but makes no actual *showing* that that would be the case. UBH's silence on those matters is deafening, renders UBH's belated, res judicata-based inadequacy argument inherently speculative and hypothetical, and presents an independent reason for denying leave.[13]

---

[11] UBH's reliance on *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013), and *Back Doctors Ltd. v. Metropolitan Property & Casualty Ins. Co.*, 637 F.3d 827 (7th Cir. 2011), also is misplaced. Those cases have nothing to do with the issue here, i.e., the res judicata effect of a court's decision to certify a class where certain class members might have additional individual claims. The cases did not involve the question of a class representatives' adequacy, or even whether a class should be certified. Rather, the question was whether a plaintiff could defeat federal jurisdiction under the Class Action Fairness Act (CAFA) by purporting to stipulate that the putative class representative would cap recovery under $5 million (the jurisdictional threshold under CAFA) *on claims for which a class was certified*. *See Standard Fire*, 133 S. Ct. at 1349 (stating, in dicta, that a court "might" find a class representative inadequate if he were to impose an "artificial cap" on "*the class'[s]* recovery") (emphasis added); *Back Doctors*, 637 F.3d at 830 (stating, in dicta, that a class representative "can't throw away what could be a major component of *the class's* recovery.") (emphasis added).

[12] For example, the availability of out-of-pocket damages as a remedy in an ERISA case is uncertain. UBH has previously taken the position that they are categorically prohibited. *See* Def. UBH's Mot. to Dismiss & Mem. in Supp. (*Wit* ECF No. 43) (Sept. 24, 2014) at 17-18. If UBH is now suggesting the opposite—especially as a reason for reconsidering class certification—it should be making this suggestion explicit and explain precisely what facts warrant out-of-pocket damages. Of course, even if it did so, the motion should still be denied for the reasons set forth above—in particular because the argument is beside the point, *see* n.10, *supra*. The point here is simply that UBH's vague assertions about hypothetical claims is insufficient to overcome Plaintiffs' evidence of Rule 23(a) adequacy.

[13] The fact that the Court also certified the class under (b)(3) does not convert a non-preclusive judgment for injunctive relief into one that precludes a claim for monetary damages. *Cf.* Leave Mot. at 14. The principal case UBH cites, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), stands for nothing close to that proposition. The class action in *Eisen* was certified *solely* under (b)(3), and the question was whether the certifying court had to comply with the express provisions of that rule. (The Supreme Court said it did.) In UBH's other case, *In re Processed*

## III. CERTIFICATION UNDER 28 U.S.C. § 1292(B) IS NOT WARRANTED.

As Plaintiffs' discussion above makes clear, UBH's new arguments are as meritless as they are untimely, and UBH is not entitled to reconsideration. For the same reasons, UBH is also not entitled to certification of an interlocutory appeal under 28 U.S.C. § 1292(b). Under § 1292(b), a district court must make three findings before certification of an order for immediate appeal is appropriate: (1) that the "order involves a controlling question of law" about which (2) "there is substantial ground for difference of opinion," and (3) that immediate appeal will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *In re Cement Antitrust Litig*., 673 F.2d 1020, 1026 (9th Cir. 1982). UBH cannot meet any—much less all three—of these requirements.

First, the Court's Order certifying the classes does not "involve a controlling question of law" with respect to UBH's new arguments for the obvious reason that the Order did not touch on the arguments UBH failed to make in a timely manner. Should the Court deny UBH's instant motion for leave, that order will also not involve controlling questions of law, because the untimeliness of UBH's arguments provides an independent and sufficient basis to deny reconsideration of the Court's Order. The Court should not reward UBH's negligent or strategic failure to raise these arguments in due course with certification under § 1292(b).

Second, the new arguments UBH raises are not ones "over which reasonable judges might differ" such that the "uncertainty provides a credible basis for a difference of opinion on the issue" and warrants immediate review. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). The law and the relevant facts are clear.

Finally, certification would not "materially advance the ultimate termination of the litigation" precisely because it would reward UBH for failing to make its arguments in a timely fashion. UBH is entitled to seek immediate appeal of the Court's Order certifying the classes under Civil Rule 23(f), a procedure under which certification under § 1292(b) is not required,

---

*Egg Products Antitrust Litigation*, 312 F.R.D. 124 (E.D. Pa. 2015), the court's complaint was that the parties had not spent sufficient time in their briefs on the "thorny" preclusion issues presented, *id.* at 168; here, Plaintiffs have fully explained why preclusion is not a barrier to certification.

and thus unavailable. To be sure, a district court is permitted to indicate in an order granting or denying class certification whether it believes that an immediate appeal under Rule 23(f) is warranted. *See, e.g., In re Toys "R" Us - Delaware, Inc. - Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL 5071073, at *16 (C.D. Cal. Aug. 17, 2010). This Court did not do so in its Order, presumably because none of the legal issues decided therein were in any sense close. Nevertheless, if the Court of Appeals thought differently, it could exercise its discretion to hear UBH's interlocutory appeal from this Court's Order under 23(f). That appeal, however, would naturally be limited to the arguments actually submitted by the parties prior to the Court's Order. Alternately, UBH is free to move to decertify the classes pursuant to Rule 23(c)(1)(C). Should it opt to do so, however, the Court's order denying such a motion would *not* be immediately appealable pursuant to Rule 23(f). *See, e.g., Jenkins v. BellSouth Corp.*, 491 F.3d 1288, 1291 (11th Cir. 2007) ("[I]n enforcing the deadline of Rule 23(f), what counts ordinarily is the original order denying or granting class certification, not a later order that maintains the status quo."); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1077 (7th Cir. 2014) ("refusal to decertify a class is neither an order granting nor an order denying certification [as required for appeal in Rule 23(f)]; it is merely a denial of reconsideration of a previous ruling"). Accordingly, UBH seeks, via § 1292(b), the appellate rights to which it would have been entitled had it made its new arguments in a timely fashion. Encouraging a party to delay in making an argument runs directly counter to the goal of promoting efficient litigation, and thus cannot "advance the ultimate termination of the litigation."

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny UBH's Motion for Leave in its entirety.

Dated: October 11, 2016

Respectfully submitted,

/s/ D. Brian Hufford

D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
399 Park Avenue, 14th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

Meiram Bendat (Cal. Bar No. 198884)
PSYCH-APPEAL, INC.
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

Caroline Reynolds (admitted *pro hac vice*)
Andrew Caridas (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
creynolds@zuckerman.com
acaridas@zuckerman.com

Martin S. Himeles, Jr. (admitted *pro hac vice*)
Daniel P. Moylan (admitted *pro hac vice*)
Adam B. Abelson (subject to *pro hac vice* admission)
ZUCKERMAN SPAEDER LLP
100 E. Pratt St., Suite 2440
Baltimore, MD 21202
Tel: (410) 332-0444
Fax: (410) 659-0436
mhimeles@zuckerman.com
dmoylan@zuckerman.com
aabelson@zuckerman.com

*Attorneys for Plaintiffs*