THOMAS F. KOEGEL (SBN 125852)
tkoegel@crowell.com
NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
CROWELL & MORING LLP
275 Battery Street, 23rd Floor
San Francisco, California 94111
Telephone: 415.986.2800
Facsimile: 415.986.2827

CHRISTOPHER FLYNN (admitted *pro hac vice*)
cflynn@crowell.com
APRIL N. ROSS (admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br><br>**DEFENDANT UNITED BEHAVIORAL HEALTH'S SUPPLEMENTAL RESPONSE TO PLAINTIFFS' PROPOSED TRIAL PLAN**<br><br>Date: February 3, 2017<br>Time: 9:30 a.m.<br>Judge: Hon. Joseph Spero<br>Courtroom: G |

| | |
|---|---|
| GARY ALEXANDER, et al.,<br>Plaintiffs,<br>v.<br>UNITED BEHAVIORAL HEALTH,<br>Defendant. | Case No. 3:14-CV-05337-JCS |

The parties filed a Joint Case Management Statement on January 27, 2017. Defendant's counsel received Plaintiff's proposed trial plan set forth in that statement on the day of filing, and for that reason, Defendant did not have sufficient time to evaluate it, consult with its client (who was unavailable on that date), or provide a response to it. Accordingly, Defendant files this supplemental response prior to the scheduled Case Management Conference.

Defendant contends that the elements of proof for Plaintiffs' claims against Defendant are those set forth by Defendant in the parties' Joint Case Management Statement filed on October 28, 2016, and Defendant re-asserts that position and does not waive the right to re-assert those elements as appropriate in this litigation. Defendant recognizes that, at the Case Management Conference on November 4, 2016, the Court indicated that it was inclined to agree with Plaintiffs' proposed elements of proof. And, the Court requested that Plaintiffs explain the mechanics for trying all of the plans and all of the guidelines together in the next Case Management Conference Statement.

Defendant hereby sets forth a summary of evidence that will be offered by Defendant to refute Plaintiffs' claims and responds to Plaintiffs' statements relating to the trial plan set forth in the January 27, 2017 Joint Case Management Statement. The following discussion forecasts the likely proof Defendant currently expects to present at trial. Because discovery is ongoing, Defendant may refine its plan as trial approaches, and Defendant reserves the right to modify or supplement the information set forth below. Defendant currently estimates that its case, including opening statement and closing argument, can be presented in 7 days.

**1. Claim 1: Breach of Fiduciary Duty**

With respect to liability on the breach of fiduciary duty claim brought by the *Wit* Guideline Class and the *Alexander* Guideline Class in Counts I and III of the operative complaints ("Claim One"), Defendant will offer affirmative evidence and rebuttal evidence demonstrating that its creation of the guidelines was not a fiduciary act, but rather an act to define the coverage terms under each of the health benefit plans at issue in this case. Defendant will offer further testimony and documentary evidence, including the health benefit plans at issue in the case, demonstrating that the obligation owed to the class members under the ERISA plans was to

administer health benefits consistent with each of their varying health benefit plans, and in fact, UBH's obligations to the multiple class members varied depending on the terms of the individual benefit plans. The evidence offered by UBH will demonstrate that UBH complied with its obligations under the plans. Percipient and expert testimony, as well as documentary evidence also will show that the utilization management guidelines created and utilized by UBH were developed using a rigorous evidence-based process and were (and are) consistent with evidence-based treatment and the terms of the health plans. The evidence will show that there is no single set of external guidelines that reflect the generally accepted standards of care or the health benefit plan terms, and UBH's process for creating its guidelines and the content of the guidelines is consistent with both.

With respect to liability on the breach of fiduciary duty claim brought by the *Wit* State Mandate Class in Counts I and III, UBH will offer evidence demonstrating that for many of the class members, UBH strictly complied with the applicable state law as interpreted by Plaintiffs, and with respect to the other members of this class, Plaintiffs' interpretation is wrong, and UBH complied with the law.

For all three classes, UBH will offer evidence demonstrating that for each of the class members, UBH's doctoral level clinicians referenced one or more of the dozens of utilization management guidelines challenged in this case, and that those guidelines varied, as did their application based on the clinical diagnosis and circumstances of each of the class members. The evidence will demonstrate that the guidelines alone were not determinative of the coverage decision, and regardless of Plaintiffs' critiques of each of the UBH utilization management guidelines at issue, the class members' treatment was not covered under the applicable health benefit plan.

Further, Plaintiffs continue to offer no orderly method for trying all of the plans and all of the guidelines together. In their "Exhibit 1" to the January 27, 2017 Case Management Statement, Plaintiffs purport to group the guidelines into six groupings, which they say "can be established before trial either by stipulation or via a pretrial motion." Plaintiffs do not, however, explain why the guidelines should be grouped in this manner, how these groupings align with

their claims, or how these groupings will advance the efficient trial and resolution of this matter. It appears that Plaintiffs have done nothing more than group together all of the guidelines issued in a given year, without regard to the particular mental health or substance use disorder at issue in each guideline and without regard to the level of care addressed in each guideline. And with respect to the thousands of health benefit plans at issue, Plaintiffs say nothing. This falls short of the Court's directive that Plaintiffs must explain the mechanics for trying all of the plans and all of the guidelines together.

### 2. Claim 2: Improper Denial of Benefits

With respect to liability on the improper denial of benefits claim based on Counts II and IV of the operative complaints ("Claim Two"), Defendant will offer testimony and documentary evidence, including the health benefit plans at issue in the case, demonstrating that the obligation owed to the class members under the ERISA plans was to administer health benefits consistent with each of their varying health benefit plans, and in fact, UBH's obligations to the multiple class members varied depending on the terms of the individual benefit plans. The evidence offered by UBH will demonstrate that UBH complied with its obligations under the plans. Percipient and expert testimony, as well as documentary evidence also will show that the utilization management guidelines created and utilized by UBH were developed through a rigorous evidence-based process and were (and are) consistent with evidence-based treatment and the terms of the health plans. The evidence will show that there is no single set of external guidelines that reflect the generally accepted standards of care or the health benefit plan terms, and UBH's process for creating its guidelines and the content of the guidelines is consistent with both.

With respect to the *Wit* State Mandate Class, UBH will offer evidence demonstrating that for many of the class members, UBH strictly complied with the applicable state law as interpreted by Plaintiffs, and with respect to the other members of this class, Plaintiffs' interpretation is wrong, and UBH complied with the law.

For all three classes, UBH will offer evidence demonstrating that for each of the class members, UBH's doctoral level clinicians referenced one or more of the dozens of utilization

management guidelines challenged in this case, and that those guidelines varied, as did their application based on the clinical diagnosis and circumstances of each of the class members. The evidence will demonstrate that the guidelines alone were not determinative of the coverage decision, and regardless of Plaintiffs' critiques of each of the UBH utilization management guidelines at issue, the class members' treatment was not covered under the applicable health benefit plan.

**3. Remedies**

With respect to the remedies Plaintiffs seek, Plaintiffs still fail to address the prospective and retrospective injunctive relief they seek, other than to state that they will present information to the Court on these issues after the trial concludes. With respect to prospective injunctive relief, what do Plaintiffs seek to prove with respect to the content that should be included in the guidelines? Will it be the same for all diagnoses? Will it be the same for all levels of care? Will it come from the same source? Will it be administrable by UBH and the Court? Is it subject to class-wide proof? These issues cannot wait until after trial.

Similarly, how will retrospective injunctive relief work for a class of divergent class members, some of whom never received the treatment at issue, others who received coverage for other treatment to their satisfaction and still others who were not entitled to coverage even applying the hypothetical standard that Plaintiffs seeks to have applied? Plaintiffs cannot defer until after trial proof of a workable plan to administer the relief they seek.

Finally, with respect to the surcharge remedy sought by Plaintiffs, Plaintiffs fail to explain how it will be calculated and how it will be allocated among class members. And, regardless, UBH will offer evidence demonstrating that UBH paid far more in benefits to the class members than what UBH received for administering them, and that Plaintiffs otherwise are not entitled to the surcharge remedy they seek.

Dated: January 31, 2017

CROWELL & MORING LLP

/s/ Nathaniel P. Bualat

Christopher Flynn
Jennifer S. Romano
April Ross
Nathaniel P. Bualat
Attorneys for Defendant