THOMAS F. KOEGEL (SBN 125852)
tkoegel@crowell.com
NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Telephone: 415.986.2800
Facsimile: 415.986.2827

CHRISTOPHER FLYNN (admitted *pro hac vice*)
cflynn@crowell.com
APRIL ROSS (admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
ANDREW HOLMER (SBN 268864)
aholmer@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br><br>**DEFENDANT'S REPLY TO PLAINTIFFS' BRIEF REGARDING CLASS NOTICE AND OPT-OUT PROCEDURES**<br><br>Judge: Hon. Joseph C. Spero<br><br>Courtroom: G |

| | |
|---|---|
| GARY ALEXANDER, et al.,<br>Plaintiffs,<br>v.<br>UNITED BEHAVIORAL HEALTH,<br>Defendant. | Case No. 3:14-CV-05337-JCS<br><br>Action Filed: December 4, 2014 |

## I. INTRODUCTION

Plaintiffs sought, and this Court granted, certification of both Claim One (breach of fiduciary duty) and Claim Two (improper denial of benefits) under Rules 23(b)(1), (b)(2) and (b)(3) as to all three classes. Plaintiffs then moved the Court to adopt a class notice plan giving class members notice of the lawsuits and an opportunity to opt-out of both claims in their entirety.

Plaintiffs now concede that class members cannot practically opt out of certain mandatory remedies they seek (declaratory relief and a prospective injunction). Rather than clarify the notice to inform class members that they may opt out of *some* but not *all* of the remedies sought in these cases, Plaintiffs now argue that the Court should *decertify* the classes under Rule 23(b)(3) and give absent class members *no* notice of this litigation and *no* chance to opt out. Plaintiffs' "no notice" proposal does not fix the problems with their initial notice plan; it compounds them.

First, Plaintiffs' requests for the individualized remedies of surcharge based on unjust enrichment and reprocessing of class members' individual coverage decisions are incompatible with Rule 23(b)(1) and Rule 23(b)(2). In fact, Plaintiffs now admit that their request for reprocessing is a thinly veiled request for individual make-whole relief by compelling the payment of additional, individualized benefits. Whether classified as equitable relief or money damages, Plaintiffs' claims for individual review and payment through reprocessing and claims for surcharge may be certified, if at all, only under Rule 23(b)(3). And Plaintiffs concede that Rule 23(b)(3) dictates mandatory notice and opt-out rights.

Second, even if the Court jettisoned the Rule 23(b)(3) aspect of the class certification ruling, due process still requires the Court to exercise its discretion to give class members notice and an opportunity to opt out of Plaintiffs' individualized remedies.[1]

///

///

---

[1] UBH maintains that Plaintiffs' claims are not properly certified under any prong of Rule 23 and reserves its rights to challenge the class certification order on appeal or to seek decertification of the classes.

## II. ARGUMENT

### A. PLAINTIFFS ADMIT THAT THEIR PROPOSED CLASS NOTICE IS INCONSISTENT WITH RULE 23.

Because the Court granted Plaintiffs' request to certify all three classes under Rule 23(b)(3), plaintiffs concede that notice and opt-out rights are mandatory. *See* Pls. Br. re Opt Out Procedures, *Wit* Dkt. No. 215, p. 4:4-5 ("notice and an opportunity to opt out are mandatory for Rule 23(b)(3) classes"); *accord* Fed. R. Civ. P. 23(c)(2)(B) ("For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances…."); Newberg on Class Actions, § 8:9 (5th ed. 2015) (the mandatory notice requirements for 23(b)(3) classes apply to "hybrid" classes that are certified under Rule 23(b)(3) and 23(b)(1) or (b)(2)).

Plaintiffs also concede that permitting class members to opt out of the mandatory remedies of declaratory relief, and a prospective injunction requiring UBH to develop and apply different guidelines going forward, would "*undermine* the purposes of Rules 23(b)(1) or (b)(2)." Pls. Br. re Opt Out Procedures, *Wit* Dkt. No. 215, pp., 5:28-6:1 (emphasis added). As Plaintiffs acknowledge, "[t]here is no realistic sense of 'opting out' of such a class." *Id.* at 5:22-23 (quoting Newberg on Class Actions § 4:36). In short, Plaintiffs now admit that their proposed notice plan, submitted less than three months ago and permitting class members to opt out of *all* claims and *all* remedies in this action, subverts the purpose of Rules 23(b)(1) and 23(b)(2).

Rather than propose a revised notice that comports with Rule 23's requirements in the context of this hybrid class action, Plaintiffs instead ask the Court to decertify the Rule 23(b)(3) classes and avoid giving notice altogether.[2] According to Plaintiffs, this solution avoids the need for a complicated class notice because notice is unnecessary in the absence of a 23(b)(3) class. Plaintiffs are wrong. For one thing, Plaintiffs' request for surcharge and reprocessing of

[2] Remarkably, Plaintiffs still argue that if the "classes remain certified not only under Rule 23(b)(1) and (b)(2), but (b)(3) as well, class members should be permitted to opt out of the action as a whole," despite their admission that it would be both inappropriate and practically unworkable to permit them to do so. Pls. Br. re Opt Out Procedures, *Wit* Dkt. No. 215, p. 4:18-19, 5:22-23, 5:28-6:1.

individual benefits decisions may only be certified, if at all, under Rule 23(b)(3). And in any event, due process demands that absent class members receive notice and an opportunity to opt out of any class to the extent it seeks individualized remedies regardless of which section of Rule 23 ultimately serves as the basis for class certification. Indeed, Plaintiffs' willingness to deny absent class members their due process rights calls into question their ability to adequately represent the interests of those absent class members, which is itself all the more reason to allow absent class members the opportunity to decide for themselves whether to participate.

### B. Rule 23 Requires Notice and an Opportunity to Opt Out of Plaintiffs' Surcharge and Reprocessing Remedies.

Although UBH respectfully disagrees that Plaintiffs' claims are suitable for class certification under any provision of Rule 23, Plaintiffs cannot merely drop their request for 23(b)(3) certification to avoid the need for class notice. To the extent Plaintiffs' claims can be certified at all, their request for a surcharge and reprocessing of individual coverage decisions may only be certified under Rule 23(b)(3). *See McReynolds v. Sodexho Marriott Servs., Inc.*, 208 F.R.D. 428, 448 (D.D.C. 2002) ("Central to the Rule 23 analysis are the remedies sought by plaintiffs").

Plaintiffs do not cite a single case in which a court has found an ERISA surcharge remedy premised on a theory of unjust enrichment suitable for class certification under Rule 23(b)(1) or 23(b)(2). To the contrary, "[i]f the Court ordered surcharge on an unjust-enrichment theory, it would almost certainly have to certify a (b)(3) class." *Amara v. CIGNA Corp.*, 925 F. Supp. 2d 242, 264 (D. Conn. 2012), *aff'd*, 775 F.3d 510 (2d Cir. 2014) (on remand from the Supreme Court in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011)); *accord Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26, 29 (2d Cir. 2012) ("[I]f plaintiffs are ultimately successful in establishing Nationwide's liability on the disgorgement issue, the district court would then need to determine the separate monetary recoveries to which individual plaintiffs are entitled from the funds disgorged. This process would require the type of non-incidental, individualized proceedings for monetary awards that *Wal-Mart* rejected under Rule 23(b)(2).").

Likewise, Plaintiffs' request for an injunction ordering UBH to reprocess thousands of

individualized benefit decisions based on revised medical necessity standards is fundamentally incompatible with certification under Rule 23(b)(1) or (b)(2). Because Rules 23(b)(1) and (b)(2) do not require notice and an opportunity to opt out, "the key" to such mandatory classes "is the indivisible nature of the injunctive or declaratory remedy warranted" – that "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores,* 564 U.S. at 360. A "claim for class-wide injunctive relief" does not provide indivisible relief, and is therefore not suitable for certification under Rules 23(b)(1) or (b)(2), "if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made." *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir. 2012).

The Seventh Circuit's holding in *Jamie S.* is directly on point. The plaintiffs sought an injunction there on behalf of students in the Milwaukee public schools that "would initiate a process of professional evaluation" through an administrative review to determine whether the students were entitled to special education services. 668 F.3d at 486-87, 489. The "process of professional evaluation" at issue in *Jamie S.* required the school district to reprocess the claims of the class members who had been previously referred for an individual education plan ("IEP"). *Id*. at 486-87, 489. If the reprocessing resulted in a determination that particular class members were entitled to special education services that had previously been denied, the defendant would be required to make "compensatory-education awards" to "compensate for a past denial of a free appropriate public education." *Id*. Reversing the district court's order certifying the class under Rule 23(b)(2), the Seventh Circuit held that the proposed injunction did "*not come close* to satisfying Rule 23(b)(2)'s standard" because it "merely establishe[d] a system for eventually providing individualized relief." *Id*. at 499 (emphasis added). "[I]f individualized relief is sought—even individual injunctive relief—the named plaintiffs must look elsewhere [than Rule 23(b)(2)] to obtain certification." *Id*.

Similarly, in *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525 (D.C. Cir. 2006), the plaintiffs alleged that Delta systematically underpaid amounts owed for lost or damaged luggage. *Id*. at 526-27. Plaintiffs sought a declaration that Delta's baggage payment policies were

unlawful and an "injunction requiring Delta to process each member's claims for lost or damaged luggage" – a process that would result in additional payments to some class members. *Id.* at 527. The plaintiffs sought class certification under Rules 23(b)(1) and (b)(2), arguing that the proposed injunction "would merely require Delta to carry out its duty as a common carrier…." *Id.* Although the plaintiffs dropped any direct request for compensatory damages at the class certification stage, the D.C. Circuit held that the proposed injunction rendered the plaintiffs' claims improper for certification under Rule 23(b)(2). "Though framed in terms of declaratory and injunctive relief," the plaintiffs' ultimate purpose was to "require[] Delta…to pay each class member compensation" resulting from the allegedly unlawful underpayment policy. *Id.* Such injunctions "merely attempt[] to reframe a damages claim," and are incompatible with Rule 23(b)(2). *Id.* at 530-31.

Courts in the Ninth Circuit are in accord. In *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012), for example, the plaintiff alleged that Mercedes-Benz imposed a "blanket policy of not covering water leaks or the damage they cause under any of its…warranties," in violation of California law. *Id.* at 540 (internal quotes omitted). At class certification, the plaintiff "disavow[ed] any claim that class members are entitled to compensatory damages" and instead moved for certification of a Rule 23(b)(2) class seeking an injunction requiring Mercedes-Benz to "implement a program whereby current and former…owners and lessees who paid for repairs" out-of-pocket due to the allegedly illegal non-coverage policy "be reimbursed for their costs" consistent with California law. *Id.* at 558-560. Denying class certification under Rule 23(b)(2), the district court emphasized that "mandating the establishment" of the program to process class members' claims for coverage "would have the same effect" as awarding compensatory damages. The only difference between the proposed injunction and an award of compensatory damages was that the injunction "essentially plac[ed] the onus on defendant to assess the compensation due individual class members, rather than resolving the issue of individualized relief in the context of the litigation." *Id.* at 560. That difference is not enough to "avoid the need to comply with Rule 23(b)(3)" because the "end result" is the same: "individualized monetary payments to qualifying class members." *Id.*

As in *Jamie S.*, *Richards*, and *Cholakyan*, Plaintiffs' request for reprocessing of individual coverage determinations seeks to establish a process for eventually providing individualized monetary relief to class members. Indeed, Plaintiffs admit that their request for reprocessing is "duplicative" of "make-whole relief requiring UBH to cover out-of-pocket expenditures" (*i.e.*, compensatory damages). Pls. Br. re Opt Out Procedures, *Wit* Dkt. No. 215, 7:8-11.[3] Plaintiffs cannot "avoid the need to comply with Rule 23(b)(3)" – including its mandatory notice and opt-out provisions – by "placing the onus on [UBH] to assess the compensation due individual class members, rather than resolving the issue of individualized relief in the context of the litigation." *Cholakyan*, 281 F.R.D. at 560; *see also Otomo v. Nev. Ass'n Services, Inc.*, 2013 WL 1249598 at *6 (D. Nev. March 25, 2013) (the fact that a class is "defined by conduct defendants have already perpetrated upon putative class members," is evidence that the claim is predominantly one for monetary relief); *Jaffe v. U.S.*, 592 F.2d 712, 714-15 (3d Cir. 1979) (holding plaintiffs' request for injunction ordering government to provide "all medical care and necessary treatment" was "in fact,…a claim for money damages," and rejecting plaintiff's attempt to "transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money"). Such claims – whether couched as legal damages, an injunction, or other equitable relief – must proceed, if at all under Rule 23(b)(3). *Dukes*, 564 U.S. at 360-61 (Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages"); *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973) ("Infrequently, if ever, will [Rule 23(b)(1)(A) be appropriate] when the action is for money damages").

[3] Plaintiffs sought certification under (b)(1) and (b)(2) on the ground that, in dropping their request for a compensatory surcharge award, Plaintiffs were <u>not</u> seeking make-whole relief. *See* Pls. Reply ISO Class Cert., *Wit* Dkt. No. 153, p. 15:13-14 ("Plaintiffs do not seek a court order requiring UBH to pay previously denied benefit claims."). The Court granted class certification in reliance on Plaintiffs' representation. Order Granting Class Cert., *Wit* Dkt. No. 174, p. 42. Having obtained certification, Plaintiffs now admit that their request for reprocessing is exactly that: a request for individual make-whole compensatory relief. Pls. Brief re Opt Out Procedures, *Wit* Dkt. No. 215, 7:8-11.

### C. Under Any Prong of Rule 23(b), Due Process Requires that Class Members Receive Notice and an Opportunity to Opt Out of Plaintiffs' Request for Individualized Remedies.

In any event, even if Plaintiffs are permitted to jettison this Court's certification of the classes under Rule 23(b)(3), due process still requires the Court to exercise its discretion under Rule 23(c)(2)(A) to "direct appropriate notice to the class" and offer class members the opportunity to opt out of Plaintiffs' requests for surcharge and reprocessing remedies.

Although expressly required under Rule 23(b)(3), the right to notice and an opportunity to opt out of individualized remedies is not a creation of that Rule – it is a fundamental requirement of due process. When a proposed remedy provides individualized relief to absent class members, due process requires that class members receive both notice and "an opportunity to remove [themselves] from the class…." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). Even when the class does not seek money damages, class members must be given the option of opting out if the class asserts "claims for individualized relief…." *Dukes*, 564 U.S. at 360 (holding so in the context of Rule 23(b)(2)).

Due process therefore requires notice and an opportunity to opt out of the class "when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.* This is so for at least two reasons. First, notice and an opportunity to opt out ensures that class members retain the right to take control over litigation directly affecting their individualized interests. Second, notice and the opportunity to opt out is necessary to protect class members' right to make an informed decision about whether they want to submit themselves to a binding, preclusive judgment affecting their individual interests.

#### 1. Absent Class Members Have a Due Process Right to Take Control of Litigation that Affects Their Individualized Interests.

Due process requires that class members be allowed to opt out to ensure that class members are able to retain control over significant relief that directly impacts their individual interests. When an absent class member's individual interests are at stake in the form of individualized remedies, "[d]ue process requires that potential class members receive proper notice so that they may participate in the litigation or opt-out and preserve the right to institute

their own action." *Alberghetti v. Corbis Corp.*, 263 F.R.D. 571, 577 (C.D. Cal. 2010), *aff'd*, 476 F. App'x 154 (9th Cir. 2012) (noting that "class members must be able to object, opt out of the class, or otherwise insure that their own rights and interests are protected" and denying class certification because "adequate notice [was] simply impossible for the proposed class").

That principle plainly applies to Plaintiffs' request for surcharge because the surcharge sought is an award of significant monetary relief to class members in the form of restitutionary disgorgement. *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 541 (N.D. Cal. 2012) (even if "plaintiffs' claim for disgorgement of profits could be subject to common proof…notice and opt-out requirements" still apply) (citing *Dukes*); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *17 n.28 (E.D.N.Y. July 18, 2013) (same). The need for the protection afforded by an opt-out right is especially heightened where, as here, the plaintiffs seek significant individual relief. *See Wit* FAC, *Wit* Dkt. No. 39 ¶¶ 50, 90, 130, 153, 180 (each named plaintiff alleging tens, or even hundreds, of thousands of dollars in damages "as a result of" UBH's coverage decisions); *Alexander* Compl., *Alexander* Dkt. No. 1, ¶¶ 73, 92, 121 (each named plaintiff alleging thousands of dollars in unreimbursed expenses and alleging that "these claims would have been covered based on the terms of Plaintiffs' Plans and generally accepted treatment standards, but were denied as a result of UBH's improper adoption and application of restrictive benefit determination guidelines, which it relied on to deny Plaintiffs' claims."). "[W]hether the monetary relief is understood as legal damages or an equitable remedy is irrelevant to this analysis." *Ries*, 287 F.R.D. at 541. Here, the opportunity to opt out is particularly important because, as UBH explained in its opening brief, many absent class members received alternative benefits that would be credited against any "surcharge" award. *See* Op. Br., *Wit*. Dkt. No. 214, at 7:4-15.

Due process also requires that the class members receive notice and the opportunity to opt out of Plaintiffs' request for reprocessing of individual benefit claims. As Plaintiffs now admit, their claim for reprocessing merely seeks the award of money damages by other means, directly implicating the due process rights of notice and an opportunity to opt out. *Phillips Petroleum Co. v. Shutts*, 472 U.S. at 811-12; *Dukes*, 564 U.S. at 363. "[P]lacing the onus on defendant to assess

the compensation due individual class members, rather than resolving the issue of individualized relief in the context of the litigation" does not change the fact that defendants are seeking "individualized monetary payments to qualifying class members." *Cholakyan*, 281 F.R.D. at 560 ("depriving people of the right to sue' by approving a mandatory class absent notice and opt-out rights would violate due process"). But even if that were not so, and Plaintiffs' request for reprocessing were purely injunctive in nature, there is no dispute that the remedy here could result in the payment of additional benefits, no additional benefits, or a *less favorable* benefit decision. *See* Op. Br., *Wit* Dkt. No. 214, at 9:6-26. It would be a fundamental violation of due process if absent class members' health benefits claims were subjected to reprocessing and, as a result, some class members lost benefits they previously obtained, without even receiving notice that this was happening or the opportunity to decide in advance whether or not to participate.[4]

### 2. Absent Class Members Have a Due Process Right to Make an Informed Decision about Whether to Submit to a Binding Judgment Affecting their Individual Rights.

In addition to the right to control the direction of litigation impacting their individual interests, class members also have a due process right to know and understand the risk that participating in this action could preclude them from seeking the same or different relief in the future. *See Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992) (prior class action judgment "foreclosed" plaintiff "from seeking other or further injunctive relief"); *Johnson v. Gen. Motors Corp.*, 598 F.2d 432, 438 (5th Cir. 1979) (res judicata would bar all equitable relief that could have been sought in prior class action) (cited with approval on other grounds in *Frank v.*

[4] Plaintiffs suggest that the Court may limit UBH's discretion to reprocess claims by forbidding any decision that provides fewer benefits than were previously approved. *See* Jt. Mot. to Approve Notice Plan, *Wit* Dkt. No. 189 at 7:13-21. The only way to limit UBH's discretion in this manner would be for the Court to first determine that class members were entitled to additional benefits under the terms of their plans. Yet, as the Court has recognized, such a determination would preclude class certification altogether. Order Granting Class Cert. *Wit* Dkt. No. 174, 31:8-11 ("ask[ing] the Court to make determinations as to whether class members were actually entitled to benefits…would require the Court to consider a multitude of individualized circumstances relating to the medical necessity for coverage and the specific terms of the member's plan"); *see also* Wit Dkt. No. 173, Trans. of Sept. 7, 2016 Hrg., p. 46:5, 12-13 (Court observing that Plaintiffs "don't want to go down that road").

*United Airlines, Inc*., 216 F.3d at 860); *Cholakyan*, 281 F.R.D. at 565 (where plaintiff sought individualized injunctive reprocessing remedy, noting "Plaintiff seeks injunctive and declaratory relief on behalf of a Rule 23(b)(2) class; by doing so, he has, at a minimum, placed class members' ability to pursue individualized claims for monetary relief in question"). Notice and a chance to opt out is necessary "to enable class members to make an informed decision about their participation" in the litigation with a full understanding of the possible preclusive effects of a class-wide judgment. Manual for Complex Litigation (4th) § 21.311; *accord* Fed. R. Civ. P. 23(c)(2)(B)(iii), (c)(2)(B)(vii) (providing that class notice must fully advise absent class members of "the class claims, issues, or defenses" and "the binding effect of a class judgment" in addition to an opportunity to opt out).

Absent class members will be subject to significant risk of preclusion for both Plaintiffs' surcharge remedy and their request for reprocessing of individual benefit claims. As to the surcharge remedy, class members may be precluded from seeking monetary damages for guidelines-based benefits denials that are different from or in addition to the surcharge remedy plaintiffs seek. *See* Op. Br., *Wit* Dkt. No. 214, at 7:16-26. And as to the reprocessing of individual benefits, class members who do not opt out may be precluded from bringing any future litigation challenging their denial of benefits on any ground, because the "cause of action" that would trigger preclusion is the denial of benefits, not the basis for that denial. *See Daley v. Marriott Int'l, Inc*., 415 F.3d 889, 896 (8th Cir. 2005) (holding subsequent ERISA lawsuit arose from the "same nucleus of operative facts" because "the wrong for which [plaintiff sought] redress-the denial of her claims based on the plan-year limit-[was] the same"); Op. Br., *Wit* Dkt. No. 214, at 9:17-26.[5]

---

[5] UBH filed a petition pursuant to Rule 23(f) seeking permission to file an interlocutory appeal of the class certification order to address, among other things, the preclusive effect of a possible class judgment on absent class members. On March 2, 2017, the Court of Appeals denied UBH's petition without comment. The preclusive impact of plaintiffs' class claims remains unsettled. Absent class members are entitled, at minimum, to notice of the risk that a class judgment *could* preclude some or all of their individual claims for relief.

**3. Plaintiffs' Willingness To Abandon Notice And Opt-Out Procedures Itself Demonstrates Why Those Procedures Are Required.**

Finally, regardless of which subsection of Rule 23 applies here, due process requires notice and an opportunity to opt out based on Plaintiffs' questionable adequacy in representing absent class members.

Throughout this litigation, Plaintiffs have demonstrated a willingness to sacrifice individual rights to facilitate class treatment. As with Plaintiffs' last-minute decision to drop their request for out-of-pocket damages at the expense of absent class members to facilitate class certification, Plaintiffs now seek to deprive class members of their due process rights to notice and an opportunity to opt out. Yet, the complexities of class notice in this case are the direct result of the way Plaintiffs have structured and pursued their claims. Rather than amend their claims, or amend their proposed notice, Plaintiffs propose to cut absent class members out of the process entirely.

As the district court in *Cholakyan* observed, Plaintiffs' strategic decision to abandon a request for Rule 23(b)(3) certification, and the accompanying rights to notice and a chance to opt out, "affects…class members rights." *Cholakyan*, 281 F.R.D. at 562. Such conduct raises concerns that Plaintiffs "may have prioritized success in the litigation over the right of individual class members to pursue possibly valid claims." *Id.* "While [Plaintiffs] and [their] attorneys may be satisfied with these trade-offs," this sort of "tactical decision" calls their adequacy as class representatives into question. *Id.* This inadequacy of representation is a basis for decertifying the class. But at the very least, for now, it demonstrates that absent members should be informed of their rights and make the decision for themselves about whether to participate, rather than relying on representatives that have demonstrate a willingness to elevate their own interests over those of absent class members.

## III. CONCLUSION

UBH's proposed class notices, submitted by UBH as Exhibits E, F and G to the December 9, 2016 Joint Motion for Approval of Notice Plan, are the only proposed notices that take into account both (1) the purpose of Rules 23(b)(1) and (b)(2) and (2) class members' rights to notice

and the chance to opt out of Plaintiffs' request for relief affecting class members' individualized interests. UBH respectfully requests that the Court adopt UBH's proposed notices.

Dated: March 3, 2017

CROWELL & MORING LLP

By: */s/ Jennifer S. Romano*

Christopher Flynn
Jennifer S. Romano
April N. Ross
Nathaniel P. Bualat
Attorneys for Defendant
UNITED BEHAVIORAL HEALTH