1  THOMAS F. KOEGEL (SBN 125852)
   tkoegel@crowell.com
2  NATHANIEL P. BUALAT (SBN 226917)
   nbualat@crowell.com
3  CROWELL & MORING LLP
   275 Battery Street, 23rd Floor
4  San Francisco, California  94111
   Telephone: (415) 986-2800
5  Facsimile: (415) 986-2827

6  CHRISTOPHER FLYNN (admitted *pro hac vice*)
   cflynn@crowell.com
7  APRIL N. ROSS (admitted *pro hac vice*)
   aross@crowell.com
8  CROWELL & MORING LLP
   1001 Pennsylvania Avenue, N.W.
9  Washington, D.C. 20004-2595
   Telephone: (202) 624-2500
10 Facsimile: (202) 628-5116

11 JENNIFER S. ROMANO (SBN 195953)
   jromano@crowell.com
12 ANDREW HOLMER (SBN 268864)
   aholmer@crowell.com
13 MANA ELIHU LOMBARDO (SBN 228846)
   melombardo@crowell.com
14 CROWELL & MORING LLP
   515 South Flower Street, 40th Floor
15 Los Angeles, California 90071
   Telephone: (213) 622-4750
16 Facsimile: (213) 622-2690

17 Attorneys for Defendant
   UNITED BEHAVIORAL HEALTH

18

19              UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA
20                 SAN FRANCISCO DIVISION

21 DAVID AND NATASHA WIT, et al.,        Case No. 3:14-CV-02346-JCS

22           Plaintiffs,                 **JOINT CASE MANAGEMENT
                                         STATEMENT**
23      v.

24 UNITED BEHAVIORAL HEALTH,             Date:     May 5, 2017
                                         Time:     2:00 p.m.
25           Defendant.                  Judge:    Hon. Joseph C. Spero
                                         Courtroom: G
26

27

28

Crowell
& Moring LLP
Attorneys At Law

SFACTIVE-904446312.1

1   GARY ALEXANDER, et al.,                    Case No. 3:14-cv-05337-JCS

2           Plaintiffs,

3   v.

4   UNITED BEHAVIORAL HEALTH,

5           Defendant.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

SFACTIVE-904446312.1

1    Pursuant to Civil Local Rule 16-10(d), Plaintiffs and Defendant, by and through their

2    respective counsel, submit the following Joint Case Management Statement. As set forth in Local

3    Rule 16-10(d), the parties are reporting progress or changes since the last statements were filed in

4    the two above-captioned cases. Where indicated by the headings "Plaintiffs' ____" and

5    "Defendant's ____," Plaintiffs and Defendant, respectively, have set forth their separate positions.

6    **I.    Status of Pleadings:**

7    Neither Party currently contemplates further amendments to the pleadings in this case. On

8    September 19, 2016, the Court granted Plaintiffs' motion for class certification, and on October

9    16, 2016, the Court denied Defendant's motion for leave to file a motion for reconsideration and

10   request to certify the Order for immediate appeal under 28 U.S.C. § 1292(b).

11   On October 27, 2016, Defendant filed a Petition for Leave to Appeal Order Granting

12   Motion for Class Certification [Pursuant to Federal Rule of Civil Procedure 23(f)] in the United

13   States Court of Appeals for the Ninth Circuit. Briefing was complete on the Petition as of

14   December 8, 2016.  On March 2, 2017, the Ninth Circuit denied Defendant's petition for

15   permission to appeal the class certification order.

16   **II.   Status of Discovery:**

17        **A.    Plaintiffs' Discovery**

18             **1.    Requests for Production**

19   Plaintiffs served their First Set of Requests for Production of Documents on December 8,

20   2014. Defendant confirmed that it had substantially completed production of documents

21   responsive to the first set of requests on October 28, 2015.

22   Plaintiffs served their Second Set of Requests for Production of Documents on June 5,

23   2015.  Defendant confirmed that it had substantially completed production of documents

24   responsive to the majority of the requests on October 28, 2015, and as to the remaining requests

25   (which had been deferred by agreement) on March 4, 2016.

26   Defendant served its first privilege log on August 31, 2015, and Plaintiffs challenged a

27   number of assertions of privilege, ultimately filing a Motion to Compel.  Following the Court's

28   January 21, 2016 ruling on the motion, Defendant produced additional documents and served a

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-1-                    JOINT CASE MANAGEMENT STATEMENT;
                       CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

SFACTIVE-904446312.1

1   revised privilege log on February 20, 2016.

2       Plaintiffs served their Third Set of Requests for Production of Documents on November

3   30, 2015. Defendant confirmed that it substantially completed production of documents

4   responsive to the third set of requests on March 4, 2016.

5       Defendant served a second privilege log on March 4, 2016. The parties thereafter met and

6   conferred regarding the scope of Defendant's privilege, and Defendant completed production of

7   additional responsive documents on August 21, 2016.

8       Plaintiffs served their Fourth Set of Requests for Production of Documents on September

9   21, 2016.  Plaintiffs served their Fifth Set of Requests for Production of Documents on December

10   22, 2016.  Defendant substantially completed production of documents responsive to the fourth

11   and fifth sets of requests on March 23, 2017.

12       On December 13, 2016, Plaintiffs formally demanded that Defendant supplement its

13   discovery responses consistent with Defendant's obligations under Federal Rule of Civil

14   Procedure 26(e).  Defendant supplemented certain of its discovery responses on January 17, 2017

15   and substantially supplemented its supplemental responses to Plaintiffs' requests for production

16   on March 23, 2017.

17       Defendant served a cumulative privilege log on March 22, 2017, which included hundreds

18   of entries not contained on Defendant's previous logs. The parties met and conferred regarding

19   the scope of Defendant's privilege, and Defendant completed production of additional responsive

20   documents on March 28, 2017.

21           **2.**    **Interrogatories**

22       Plaintiffs served their First Set of Interrogatories (containing Interrogatory Nos. 1-3) on

23   December 8, 2014. Defendant timely served objections to the interrogatories on January 21, 2015,

24   and, following a meet and confer process, Defendant served responses.  In addition, Defendant

25   supplemented its response to Interrogatory No. 1 on January 11, 2017.

26       Plaintiffs served their Second Set of Interrogatories on November 30, 2015 (containing

27   Interrogatory Nos. 4-10). Defendant timely served objections and responses to the interrogatories.

28   Defendant supplemented its responses to certain Interrogatories on January 17, 2017, and, by

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-2-    JOINT CASE MANAGEMENT STATEMENT;
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

SFACTIVE-904446312.1

agreement, supplemented additional Interrogatory responses on March 3, 2017.

Plaintiffs served their Third Set of Interrogatories on September 21, 2016 (containing Interrogatory Nos. 11-12). Defendant served objections to the interrogatories on October 28, 2016. The parties met and conferred repeatedly about the Interrogatories.  Defendant served partial responses to Interrogatory No. 12 on December 23, 2017 and January 17, 2017.  Since January, the parties have met and conferred on multiple occasions about Defendant's response to Interrogatory 12, and Defendant has produced data on a rolling basis over the course of several months.  Defendant's most recent production of data was on April 25, 2017, and due to depositions and related travel schedules, Plaintiffs have not yet had an opportunity to assess the data.  The parties met and conferred on April 26, 2017, and tentatively agreed to discuss this data on May 3 or 4, 2017.

Plaintiffs served their Fourth Set of Interrogatories (containing Interrogatory No. 13) on October 28, 2016.  Defendant served objections on December 2, 2016.  The parties met and conferred, and on December 13, 2016, Plaintiffs agreed to hold the Interrogatory in abeyance pending Defendant's response to Interrogatory No. 12.  On January 30, 2017, Plaintiffs informed Defendant that because there were still open issues regarding Interrogatory No. 12, Plaintiffs required an answer to Interrogatory No. 13.  However, after meeting and conferring regarding Interrogatory Nos. 12 and 13 on February 15, 2017; February 21, 2017; March 8, 2017; and March 9, 2017, Plaintiffs agreed on March 10, 2017 to "to hold off on seeking to compel a response to Interrogatory No. 13 until the parties complete[d] their discussions of the rate charts and how to 'tie' them back to the class lists."  UBH produced that spreadsheet to Plaintiffs on April 25, 2017.  The parties have not yet resolved whether UBH will provide a response to Interrogatory 13, but are meeting and conferring in an effort to resolve it.

Plaintiffs served their Fifth Set of Interrogatories (containing Interrogatory Nos. 14-17) on December 22, 2016.  Defendant served objections to the Interrogatories on January 23, 2017.  The parties met and conferred about Defendant's objections, and worked out a resolution agreeable to both sides.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

SFACTIVE-904446312.1

-3-

JOINT CASE MANAGEMENT STATEMENT;
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

### 3.      Requests for Admission

Plaintiffs served their First Set of Requests for Admission on December 11, 2015. Defendant timely served objections and responses to the requests for admission.

### 4.      Other Discovery

Plaintiffs served a request for inspection of Defendant's computer-based claims processing system on June 5, 2015. Plaintiffs agreed to hold their request for inspection in abeyance so long as substitute written and deposition discovery into the same subject proves adequate to the needs of this case.

The parties entered into a Stipulation on February 8, 2017 setting forth a protocol and schedule for discovery concerning whether the Class members' plans were subject to ERISA. The parties are working cooperatively pursuant to the stipulation, and expect the ERISA-related discovery to be completed by September 26, 2016 as contemplated in that agreement.

### 5.      Depositions

Prior to submission of the class certification briefs, Plaintiffs took a 30(b)(6) deposition of the Defendant (for which Defendant designated a total of four witnesses), the depositions of four of Defendant's medical directors and peer reviewers, and the deposition of Defendant's class certification expert witness, Mary Beth Edwards, which were completed as of March 18, 2016. Following class certification briefing but before the February 3, 2017 status conference, Plaintiffs took one merits-related deposition.

Since the February 3, 2017 status conference, Plaintiffs have taken the depositions of eleven fact witnesses, including witnesses designated to testify on certain topics in Plaintiffs' 30(b)(6) notice.  Plaintiffs have also taken the depositions of five of Defendant's retained and non-retained experts. Plaintiffs will take three more depositions before the end of the discovery period.  In addition, by agreement, Defendant will produce one of its witnesses (who, in addition to being identified on Plaintiffs' list of fact witnesses, was also disclosed by Defendant as a non-retained expert and designated as its representative for one of the 30(b)(6) topics noticed by Plaintiffs) for a second day of deposition on May 10, 2017.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-4-

JOINT CASE MANAGEMENT STATEMENT;
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

SFACTIVE-904446312.1

### 6. Experts

Plaintiffs have now disclosed a total of four experts, which includes one expert designated for rebuttal purposes.

### B. Defendant's Discovery

#### 1. Written Discovery

Defendant served one set of requests for production and two sets of interrogatories on each named Plaintiff in each case, including the two Intervenor Plaintiffs. Plaintiffs have confirmed that they have substantially completed the production of documents responsive to Defendant's discovery requests, including discovery related to the two Intervenor Plaintiffs who joined these cases on February 9, 2016. Each of the named Plaintiffs has served responses and objections to Defendant's two sets of interrogatories.

Defendant served third-party subpoenas on various providers of mental health and substance abuse services to the Named Plaintiffs in each case. Defendant has received responses to its third-party subpoenas, and has provided copies of the documents it has received to Plaintiffs.

On January 27, 2017, Defendant asked each Plaintiff to either confirm that none of his or her interrogatory responses require supplementation or to supplement his or her interrogatory responses. On February 13, the Court issued an Order regarding pretrial schedules, which set March 3 as the deadline for the parties to supplement their interrogatory responses. On March 3, 2017, in accordance with the parties' discussions and narrowing of Defendant's request, the Plaintiffs provided the following information: (1) whether or not they continued to be covered by UBH-administered plans; (2) whether the *Wit* plaintiffs had sought, or been denied, residential treatment claims since their original interrogatory; and (3) whether UBH had issued new denials for outpatient/intensive outpatient claims for the *Alexander* plaintiffs. Plaintiffs also provided Amended and Supplemental Objections and Responses to Interrogatories 15-19 and 22-24. Pursuant to an agreement extending the deadline to provide information from Ms. Klein, on March 21, 2017, Plaintiffs supplemented Ms. Klein's response to Interrogatory 5.

### 2. Depositions

Defendant has taken the depositions of all named Plaintiffs and all providers for whom it has noticed depositions other than Dr. Leopold Walder, whose deposition notice has been withdrawn due to Dr. Walder's health condition.

In August 2015, Defendant subpoenaed for deposition three beneficiaries, Casey Flanzraich, Emily Holdnak and Jordan Alexander, who are not named Plaintiffs in this action but whose parents filed suit on their behalf. Plaintiffs objected to these depositions on the grounds that they are unnecessary, unduly burdensome, and oppressive to these non-parties, all of whom suffer from serious mental health conditions and one of whom is still a minor. The Parties agreed to hold their discussions about Defendant's deposition subpoenas of these three individuals in abeyance pending completion of the other depositions noticed by Defendant. To date, Defendant has not renewed its request to depose these three beneficiaries.

### 3. Experts

Defendant has disclosed two merits-related retained experts and four unretained experts under Rule 26(a)(2), which includes one witness designated for rebuttal purposes.

Defendant has taken the depositions of two of Plaintiffs' expert witnesses and will complete the depositions of the other two expert witnesses disclosed by Plaintiffs by May 5.

### C. Limitations on Discovery

At this time, the parties continue to believe that no changes are needed to the presumptive limits on depositions contained in the Federal Rules of Civil Procedure.

## II. Settlement and ADR

The parties participated in several calls with an ADR Coordinator for the Court.  On November 4, 2016, the Court referred the parties to Magistrate Judge Ryu for a settlement conference.  The parties met with Judge Ryu on February 16, 2017 and April 20, 2017, and conferred via telephone with Judge Ryu on several occasions. The parties have scheduled a further call with Judge Ryu to occur on May 23, 2017.

## III. Class Notice

At the February 3, 2017 status conference, the Court requested additional briefing relating

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-6-

JOINT CASE MANAGEMENT STATEMENT;
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

SFACTIVE-904446312.1

to the parties' Joint Motion for Approval of Notice Plan and to Amend Class Definitions. Following supplemental briefing, the Court entered an Order that granted the parties' jointly proposed amendments to the Class definitions, decided issues regarding the Class notices, and directed the parties to submit stipulated Notices by March 24, 2017.  ECF No. 224.  On March 24, 2017, the parties submitted a Joint Motion for Approval of Revised Form of Class Notices, ECF No. 231, and the Court entered an Order approving the parties' stipulation regarding class notice, ECF No. 236.   The Notice Plan calls for direct notice to all class members.  The deadline for Class members to exclude themselves from the Class is July 27, 2017, one day before oral argument on dispositive motions. *Id.*

## IV.    Pretrial Motions Practice

The parties are in the process of meeting and conferring on possible stipulations to resolve evidentiary, factual and other issues prior to trial. To the extent the parties are unable to agree to stipulations, or to the extent otherwise appropriate, Plaintiffs may file a motion for partial summary judgment on one or more of their claims for relief, elements of such claims, or Defendant's affirmative defenses.  Plaintiffs also reserve the right to file other dispositive or evidentiary motions—including motions in limine and *Daubert* motions—as appropriate.

Defendant expects that it will file a motion for summary judgment, or in the alternative partial summary judgment on one or more of the claims for relief, elements of such claims or affirmative defenses. Defendant also reserves the right to file other dispositive or evidentiary motions—including motions in limine and *Daubert* motions—as appropriate.

Plaintiffs also intend to file a motion to formally consolidate the *Wit* and *Alexander* cases for trial.

## V.    Revised Trial Plan

The parties were unable to reach agreement on how to describe their respective positions on this question. Thus, their respective statements are set forth below:

### **Plaintiffs' Position**

As ordered by the Court, Plaintiffs' revised trial plan assumes that the class will remain certified and that the elements of Plaintiffs' claims will be those set forth by the Court.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-7-                    JOINT CASE MANAGEMENT STATEMENT;
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

SFACTIVE-904446312.1

Plaintiffs bring two claims on behalf of three classes: the *Wit* Guideline Class, the *Wit* State Mandate Class, and the *Alexander* Guideline Class. At the November 4, 2016 status conference, the Court described the elements of proof Plaintiffs will be required to meet at trial.

First, with respect to liability on the breach of fiduciary duty claim based on Counts I and III of the operative complaints ("Claim One"), the Court stated that Plaintiffs must establish: (1) that UBH acted as fiduciary when creating its Guidelines and, as such, owed fiduciary duties to Plaintiffs; (2) that UBH owed a fiduciary duty to develop Guidelines that are consistent with generally accepted standards and/or the requirements of state law; (3) that UBH breached its fiduciary duties; and (4) that UBH applied its Guidelines in denying the Plaintiffs' claims for benefits.

Second, with respect to liability on the improper denial of benefits claim based on Counts II and IV of the operative complaints ("Claim Two"), the Court stated that Plaintiffs must establish: (1) that Plaintiffs' Plans required UBH to use generally accepted standards or the standards mandated by state law to administer benefit claims; (2) that UBH' Guidelines were not consistent with generally accepted standards or the standards mandated by state law; and (3) that UBH used its faulty Guidelines to deny coverage to Plaintiffs.

In addition to proving the elements of these claims, Plaintiffs will submit evidence relevant to any factual issues relating to the requested equitable relief, including the amount of a potential surcharge remedy. As the Court noted at the November 4, 2016 status conference, the parties agree that there is no need to bifurcate the trial as between liability and remedy.

The Court requested more specifics from the parties concerning the mechanics of a trial, including any relevant groupings according to which evidence will be submitted.

### A.    Plaintiffs' Evidence

The following discussion forecasts the likely proof Plaintiffs currently expect to present at trial, based on the information known to Plaintiffs at this time. Fact and expert discovery is still ongoing. Plaintiffs are also seeking stipulations on matters that they do not believe should be contested. For those reasons, and because Plaintiffs may refine their plans as trial approaches, Plaintiffs reserve the right to modify or supplement this trial plan, add or delete elements or

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-8-                    JOINT CASE MANAGEMENT STATEMENT;
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

SFACTIVE-904446312.1

categories of proof, and change their estimate of the time needed as more information becomes available.[1]  Plaintiffs currently estimate that Plaintiffs' case, including opening and closing statements, can be presented in 7 days, with up to 2 additional days needed for rebuttal.

### 1.     Claim One

#### a.     UBH Acted in a Fiduciary Capacity When it Created its Guidelines.

Plaintiffs will demonstrate that UBH acted in its fiduciary capacity when it created its Guidelines by relying primarily upon the Named Plaintiffs' Plan term documents and denial letters; UBH's Guidelines; other internal UBH documents setting forth UBH's policies and procedures relating to clinical coverage determinations; and the testimony of UBH employees involved in the creation of the Guidelines or otherwise knowledgeable about the Guidelines' purpose and use.

#### b.     UBH Owed Fiduciary Duties to Develop Guidelines that Were Consistent with Generally Accepted Standards and/or the Requirements of State Law.

To establish facts supporting this element, Plaintiffs intend to rely primarily upon the Named Plaintiffs' Plan term documents; UBH's Guidelines; other internal UBH documents describing the purpose of the Guidelines; and the testimony of one or more UBH employees knowledgeable about the Guidelines' purpose and use.

#### c.     UBH Breached its Fiduciary Duties.

As the Court stated at the November 4, 2016 status conference, Plaintiffs may establish that UBH breached its fiduciary duties by developing guidelines that were inconsistent with generally accepted standards or the requirements of state law or that the Guidelines were influenced by a conflict of interest.  Similarly, Plaintiffs also intend to prove a breach of fiduciary duty by demonstrating that UBH failed to use due care when it created its Guidelines.  Plaintiffs intend to rely on the evidence outlined below to prove these breaches.

---

[1] Plaintiffs indicate from time to time below that they intend to prove certain matters primarily with documents. By so stating, Plaintiffs do not limit the way that they will publish this information to the Court, which may involve a number of methods, including the testimony of a lay or expert witness.

Crowell
& Moring LLP
Attorneys At Law

-9-

JOINT CASE MANAGEMENT STATEMENT;
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

SFACTIVE-904446312.1

   **(1)**  **UBH's Guidelines Were Inconsistent with Generally Accepted Standards.**

Plaintiffs will rely upon UBH's Guidelines; guidelines issued by national medical organizations such as the American Academy of Child and Adolescent Psychiatry ("AACAP"), The American Association of Community Psychiatrists ("AACP"), and The American Society of Addiction Medicine ("ASAM"); the testimony of Plaintiffs' expert witnesses; internal UBH documents; and the testimony of one or more UBH witnesses.

First, Plaintiffs will establish primarily through documentary evidence that UBH's Guidelines (including Level of Care Guidelines and Coverage Determination Guidelines) can be grouped by year, such that the level of care criteria at issue are identical with respect to all Guidelines in each group.[2]  Plaintiffs anticipate that these groupings can be established before trial either by stipulation or via a pretrial motion.  Plaintiffs' current proposed Guideline Groups are set forth in Exhibit 1 hereto.  Plaintiffs reserve all rights to amend the proposed groupings as fact discovery continues.

Second, Plaintiffs intend to offer expert testimony, documentary evidence, and the testimony of one or more UBH witnesses, to establish that the level of care criteria with respect to each Guideline Group are inconsistent with generally accepted standards of care.  Plaintiffs intend to offer three expert witnesses, each of whom will offer testimony relevant to Guideline Groups 1 through 6.  Plaintiffs anticipate that the evidence will show that the level of care criteria in each Guideline are fundamentally flawed, *in toto*, for a number of reasons.[3]

   **(2)**  **UBH's Guidelines Applicable to Substance Use Disorders Were Inconsistent with the Requirements of Relevant State Laws.**

With respect to the *Wit* State Mandate Class's claim, Plaintiffs will establish prior to trial that the state laws of Connecticut, Illinois, and Rhode Island explicitly mandate that insurance

---

[2] As noted below, the proposed groupings also include a group relevant to the *Wit* State Mandate Class, which includes guidelines from multiple years.

[3] For avoidance of doubt, it is Plaintiffs' position that all of the Guidelines suffer from the same defects, which Plaintiffs have previously identified. *See, e.g.,* Exhibit A-1 to Plaintiffs' Motion for Class Certification (listing ways in which UBH's Guidelines are inconsistent with generally accepted standards of care)

1  companies make determinations of medical necessity with respect to treatment of substance use

2  disorders according to the clinical criteria issued by the American Society of Addiction Medicine

3  (hereafter, the "ASAM Guidelines").  Plaintiffs will also establish prior to trial that the state law

4  of Texas mandates that insurance companies make determinations of medical necessity with

5  respect to treatment of substance use disorders according to clinical criteria issued by the Texas

6  Department of Insurance (hereafter, the "TDI Criteria").

7       For purposes of proving the *Wit* State Mandate claim, Plaintiffs will establish primarily

8  through documentary evidence which of UBH's Guidelines contain level of care criteria

9  applicable to residential treatment of substance use disorders.  *See* Ex. 1 hereto (Guideline Group

10  6).[4]  Plaintiffs anticipate that this group can also be established before trial either by stipulation or

11  via a pretrial motion.

12       Plaintiffs will rely primarily on documentary evidence, including admissions by UBH, to

13  establish that the level of care criteria in Guideline Group 6: (a) are not the criteria set forth in the

14  ASAM Guidelines; and (b) are not the criteria set forth in the TDI Criteria.  Plaintiffs anticipate

15  that these facts can be established before trial either by stipulation or via a motion *in limine*.

16       At least one of Plaintiffs' expert witnesses will also offer testimony to establish that the

17  level of care criteria contained in Guideline Group 6: (a) are not equivalent to the criteria set forth

18  in the ASAM Guidelines; and (b) are not equivalent to the TDI Criteria.  Plaintiffs also intend to

19  submit documentary evidence, including internal UBH documents, and the testimony of one or

20  more UBH witnesses, in support of these facts.

21                 **(3)**     **UBH's Guidelines Were Influenced by a Conflict of**

22                         **Interest.**

     Plaintiffs intend to offer internal UBH documents and the testimony of one or more UBH

23  witnesses to establish that UBH was influenced by a conflict of interest when it developed its

24  Guidelines, such that UBH elevated its own financial interests above the interests of participants

25  and beneficiaries in the Plans.

26

27       [4] Plaintiffs reserve all rights to amend this proposed grouping as fact discovery is ongoing.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-11-

JOINT CASE MANAGEMENT STATEMENT;
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

SFACTIVE-904446312.1

**(4) UBH Failed to Use Due Care When Creating its Guidelines**

Plaintiffs intend to offer internal UBH documents, the testimony of one or more UBH witnesses, and the testimony of Plaintiffs' experts, to establish that UBH failed to use due care when creating its Guidelines, including by developing level of care criteria that were not supported by an adequate evidentiary base and/or that distorted the evidence on which they purport to be based.

       d.       **UBH Applied its Guidelines in Denying the Plaintiffs' Claims for Benefits.**

To establish that UBH applied its Guidelines in connection with the benefit denials at issue, Plaintiffs intend to offer at trial: (a) the testimony of the Named Plaintiffs; (b) documentary evidence concerning UBH's denials of coverage with respect to each of the Named Plaintiffs, including denial letters sent to each Named Plaintiff and UBH's internal records concerning the denials; (c) internal UBH documents evidencing UBH's policies and procedures with respect to clinical coverage determinations; and (d) the testimony of one or more UBH witnesses.

       **2.**       **Claim Two**

       a.       **Plaintiffs' Plans Required UBH to Administer Benefit Claims According to Generally Accepted Standards or the Standards Mandated by State Law.**

To establish that the Plans of members of the *Wit* Guideline Class and the *Alexander* Guideline Class required UBH to make clinical coverage determinations pursuant to criteria that were consistent with generally accepted standards of care, Plaintiffs intend to offer at trial: (a) the testimony of the Class Representatives for the two Guideline Classes; (b) documentary evidence of the terms of those Class Representatives' Plans; and (c) the testimony of one or more UBH witnesses concerning the terms of those Plans.

To establish that the Plans of members of the *Wit* State Mandate Class required UBH to make clinical coverage determinations pursuant to standards mandated by state law, Plaintiffs intend to offer at trial: (a) the testimony of Named Plaintiff Brandt Pfeifer concerning the terms of his Plan; (b) documentary evidence of the terms of Mr. Pfeifer's Plan; (c) evidence from UBH's records reflecting that the state law governing each Plan, including Mr. Pfeifer's Plan, is indicated

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-12-

JOINT CASE MANAGEMENT STATEMENT;
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

SFACTIVE-904446312.1

in a particular field in UBH's electronic claims data records; and (d) the testimony of one or more UBH witnesses.

        **b.**    **UBH' Guidelines were not consistent with generally accepted standards or the standards mandated by state law.**

The proof of this element will be identical to the proof outlined in section V.A.1.b, above.

        **c.**    **UBH denied coverage to Plaintiffs pursuant to its faulty Guidelines.**

The proof of this element will be identical to the proof outlined in section V.A.1.d, above.

    **3.**    **Remedy**

Plaintiffs intend to offer at trial the following evidence to establish the appropriate surcharge: (a) documentary evidence, possibility including admissions and/or stipulations by UBH, concerning the amount of revenue UBH received in exchange for its claims administration services with respect to the members of the Classes; and (b) the testimony of one or more UBH witnesses.

    **4.**    **Order of Proof**

Plaintiffs currently anticipate that the proof described above will be presented in the following order, although the following order may not be strictly followed, consistent with Plaintiffs' attempt to present the proof in the most persuasive and understandable manner:

        **a.**    **Presentation of stipulations and admissions.**

        **b.**    **Testimony of the Named Plaintiffs, submission of relevant documentary evidence [1 to 1.5 days].**

        **c.**    **Testimony of UBH Witnesses, submission of relevant documentary evidence [2 to 2.5 days].**

        **d.**    **Testimony of  Plaintiffs' Experts [2.5 to 3 days]**

In rebuttal to Defendant's evidence regarding Defendant's affirmative defenses, Plaintiffs expect to offer documentary evidence, expert testimony and the testimony of one or more UBH employees.  Plaintiffs reserve the right to re-call relevant witnesses at the rebuttal phase, to the extent appropriate.

    **5.**    **Post-Trial Briefing**

Following trial and the Court's finding on liability, Plaintiffs will submit a brief

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-13-

JOINT CASE MANAGEMENT STATEMENT;
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

SFACTIVE-904446312.1

1  addressing appropriate remedies for the Claims on which the Court has found Defendant liable.

2  To the extent relevant in light of the Court's liability ruling, Plaintiffs' proposed brief would: (1)

3  propose the specific terms of the final injunctive relief sought, including stating how revision of

4  Defendant's Guidelines and the subsequent reprocessing of class members' claims should

5  proceed; and (2) propose the amount requested as an equitable surcharge (consistent with the

6  evidence previously offered at trial). Defendant will respond, and Plaintiffs will reply. Plaintiffs

7  do not anticipate that any additional trial phase would be necessary for the Court to enter final

8  relief based upon the post-trial briefing.

9        **B.**     **Defendant's Position**

10        Defendant contends that the elements of proof for Plaintiffs' claims against Defendant are

11  those set forth by Defendant in the parties' Joint Case Management Statement filed on October

12  28, 2016, and Defendant re-asserts that position and does not waive the right to re-assert those

13  elements as appropriate in this litigation.  Defendant recognizes that, at the Case Management

14  Conference on November 4, 2016, the Court indicated that it was inclined to agree with Plaintiffs'

15  proposed elements of proof.  And, the Court requested that Plaintiffs explain the mechanics for

16  trying all of the plans and all of the guidelines together in the next Case Management Conference

17  Statement.

18        Defendant hereby sets forth a summary of evidence that will be offered by Defendant to

19  refute Plaintiffs' claims and responds to Plaintiffs' statements relating to the trial plan set forth

20  above.  The following discussion forecasts the likely proof Defendant currently expects to present

21  at trial.  Because fact and expert discovery is ongoing, Defendant may refine its plan as trial

22  approaches, and Defendant reserves the right to modify or supplement the information set forth

23  below.  Defendant currently estimates that its case, including opening statement and closing

24  argument, can be presented in 7 days.

25        **1.**     **Claim 1: Breach of Fiduciary Duty**

26        With respect to liability on the breach of fiduciary duty claim brought by the *Wit*

27  Guideline Class and the *Alexander* Guideline Class in Counts I and III of the operative complaints

28  ("Claim One"), Defendant will offer affirmative evidence and rebuttal evidence demonstrating

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-14-

JOINT CASE MANAGEMENT STATEMENT;
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

SFACTIVE-904446312.1

1   that its creation of the guidelines was not a fiduciary act, but rather an act to define the coverage

2   terms under each of the health benefit plans at issue in this case. Defendant will offer further

3   testimony and documentary evidence, including the health benefit plans at issue in the case,

4   demonstrating that the obligation owed to the class members under the ERISA plans was to

5   administer health benefits consistent with each of their varying health benefit plans, and in fact,

6   UBH's obligations to the multiple class members varied depending on the terms of the individual

7   benefit plans. The evidence offered by UBH will demonstrate that UBH complied with its

8   obligations under the plans. Percipient and expert testimony, as well as documentary evidence

9   also will show that the utilization management guidelines created and utilized by UBH were

10  developed using a rigorous evidence-based process and were (and are) consistent with evidence-

11  based treatment and the terms of the health plans. The evidence will show that there is no single

12  set of external guidelines that reflect the generally accepted standards of care or the health benefit

13  plan terms, and UBH's process for creating its guidelines and the content of the guidelines is

14  consistent with both.

15      With respect to liability on the breach of fiduciary duty claim brought by the *Wit* State

16  Mandate Class in Counts I and III, UBH will offer evidence demonstrating that for many of the

17  class members, UBH strictly complied with the applicable state law as interpreted by Plaintiffs,

18  and with respect to the other members of this class, Plaintiffs' interpretation is wrong, and UBH

19  complied with the law.

20      For all three classes, UBH will offer evidence demonstrating that for each of the class

21  members, UBH's doctoral level clinicians referenced one or more of the dozens of utilization

22  management guidelines challenged in this case, and that those guidelines varied, as did their

23  application based on the clinical diagnosis and circumstances of each of the class members. The

24  evidence will demonstrate that the guidelines alone were not determinative of the coverage

25  decision, and regardless of Plaintiffs' critiques of each of the UBH utilization management

26  guidelines at issue, the class members' treatment was not covered under the applicable health

27  benefit plan.

28      Further, Plaintiffs continue to offer no orderly method for trying all of the plans and all of

CROWELL
& MORING LLP
ATTORNEYS AT LAW

SFACTIVE-904446312.1

the guidelines together.  In their "Exhibit 1" to the January 27, 2017 Case Management

Statement, Plaintiffs purport to group the guidelines into six groupings, which they say "can be

established before trial either by stipulation or via a pretrial motion."  Plaintiffs do not, however,

explain why the guidelines should be grouped in this manner, how these groupings align with

their claims, or how these groupings will advance the efficient trial and resolution of this matter.

It appears that Plaintiffs have done nothing more than group together all of the guidelines issued

in a given year, without regard to the particular mental health or substance use disorder at issue in

each guideline and without regard to the level of care addressed in each guideline.  And with

respect to the thousands of health benefit plans at issue, Plaintiffs say nothing. This falls short of

the Court's directive that Plaintiffs must explain the mechanics for trying all of the plans and all

of the guidelines together.

## 2.      Claim 2: Improper Denial of Benefits

With respect to liability on the improper denial of benefits claim based on Counts II and

IV of the operative complaints ("Claim Two"), Defendant will offer testimony and documentary

evidence, including the health benefit plans at issue in the case, demonstrating that the obligation

owed to the class members under the ERISA plans was to administer health benefits consistent

with each of their varying health benefit plans, and in fact, UBH's obligations to the multiple

class members varied depending on the terms of the individual benefit plans.  The evidence

offered by UBH will demonstrate that UBH complied with its obligations under the plans.

Percipient and expert testimony, as well as documentary evidence also will show that the

utilization management guidelines created and utilized by UBH were developed through a

rigorous evidence-based process and were (and are) consistent with evidence-based treatment and

the terms of the health plans.  The evidence will show that there is no single set of external

guidelines that reflect the generally accepted standards of care or the health benefit plan terms,

and UBH's process for creating its guidelines and the content of the guidelines is consistent with

both.

With respect to the *Wit* State Mandate Class, UBH will offer evidence demonstrating that

for many of the class members, UBH strictly complied with the applicable state law as interpreted

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-16-

JOINT CASE MANAGEMENT STATEMENT;
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

SFACTIVE-904446312.1

by Plaintiffs, and with respect to the other members of this class, Plaintiffs' interpretation is wrong, and UBH complied with the law.

For all three classes, UBH will offer evidence demonstrating that for each of the class members, UBH's doctoral level clinicians referenced one or more of the dozens of utilization management guidelines challenged in this case, and that those guidelines varied, as did their application based on the clinical diagnosis and circumstances of each of the class members. The evidence will demonstrate that the guidelines alone were not determinative of the coverage decision, and regardless of Plaintiffs' critiques of each of the UBH utilization management guidelines at issue, the class members' treatment was not covered under the applicable health benefit plan.

### 3.    Remedies

With respect to the remedies Plaintiffs seek, Plaintiffs still fail to address the prospective and retrospective injunctive relief they seek, other than to state that they will present information to the Court on these issues after the trial concludes.  With respect to prospective injunctive relief, what do Plaintiffs seek to prove with respect to the content that should be included in the guidelines?  Will it be the same for all diagnoses?  Will it be the same for all levels of care?  Will it come from the same source?  Will it be administrable by UBH and the Court?  Is it subject to class-wide proof?  These issues cannot wait until after trial.

Similarly, how will retrospective injunctive relief work for a class of divergent class members, some of whom never received the treatment at issue, others who received coverage for other treatment to their satisfaction and still others who were not entitled to coverage even applying the hypothetical standard that Plaintiffs seeks to have applied?  Plaintiffs cannot defer until after trial proof of a workable plan to administer the relief they seek.

Finally, with respect to the surcharge remedy sought by Plaintiffs, Plaintiffs fail to explain how it will be calculated and how it will be allocated among class members. And, regardless, UBH will offer evidence demonstrating that UBH paid far more in benefits to the class members than what UBH received for administering them, and that Plaintiffs otherwise are not entitled to the surcharge remedy they seek.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-17-

JOINT CASE MANAGEMENT STATEMENT;
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

SFACTIVE-904446312.1

**VI.     Schedule**

On February 13, 2017, the Court entered a stipulation and order regarding extension of discovery deadlines and pretrial schedule.  The parties are currently proceeding pursuant to that schedule.  In a few instances, however, due to scheduling issues or in an effort to resolve discovery disputes, the parties have agreed to extend deadlines beyond the discovery cut-off (e.g., the agreement, discussed above, to continue a deposition on May 10, 2017), or not to contest the timeliness of a discovery issue if the parties are unable to reach a resolution by agreement.

**VII.     Possible Deferral of Status Conference**

As noted above, the parties have worked cooperatively to resolve disputes and complete discovery by the deadline.  There is one issue currently in dispute (*see* § I.A.2, above), which the parties are actively attempting to resolve.  The parties will keep the Court apprised of whether they are able to resolve the issue.  If so, the parties will request to postpone the status conference. If not, the parties will respectfully request the Court's assistance in resolving the dispute.


Dated: April 28, 2017                                   ZUCKERMAN SPAEDER LLP

                                                                  /s/ Caroline E. Reynolds

                                                               Caroline E. Reynolds
                                                               Adam Abelson
                                                               Attorneys for Plaintiffs

Dated: April 28, 2017                                   CROWELL & MORING LLP

                                                                  /s/ Nathaniel P. Bualat

                                                               Christopher Flynn
                                                               Jennifer S. Romano
                                                               Nathaniel P. Bualat
                                                               Attorneys for Defendant

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-18-                    JOINT CASE MANAGEMENT STATEMENT;
                       CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

SFACTIVE-904446312.1

1

**ATTESTATION**

2          Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest that concurrence in the

3   filing of this document has been obtained from the other signatories.

4

5   Dated: April 28, 2017                                    /s/ Nathaniel P. Bualat
                                                             Nathaniel P. Bualat

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-19-

JOINT CASE MANAGEMENT STATEMENT;
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

SFACTIVE-904446312.1