THOMAS F. KOEGEL (SBN 125852)
tkoegel@crowell.com
NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Phone: (415) 986-2800
Fax: (415) 986-2827

CHRISTOPHER FLYNN (admitted *pro hac vice*)
cflynn@crowell.com
APRIL N. ROSS (admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116

JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Phone: (213) 622-4750
Fax: (213) 622-2690

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **DAVID WIT et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED BEHAVIORAL HEALTH**, <br><br> Defendant. | Case No. 14-cv-02346 JCS <br> Related Case No. 14-cv-05337 JCS <br><br> **UNITED BEHAVIORAL HEALTH'S MOTION FOR SUMMARY JUDGMENT** <br><br> Hon. Joseph C. Spero <br><br> Hearing Date: July 28, 2017 <br> Hearing Time: 9:30 a.m. <br> Courtroom: G |

1 | **GARY ALEXANDER et al.,**

2 | Plaintiffs,

3 | v.

4 | **UNITED BEHAVIORAL HEALTH**,

5 | Defendant.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Crowell
& Moring LLP
Attorneys At Law

# TABLE OF CONTENTS

**Page**

I. Introduction ...................................................................................................... 1

II. Uncontroverted Facts ........................................................................................ 2

    A. UBH Administered ERISA Health Benefit Plans Providing Behavioral Health Insurance Coverage to Plaintiffs and Class Members During the Class Period ................................................................................................. 2

    B. Plaintiffs Are Beneficiaries of Different Health Benefit Plans Governed by ERISA ........................................................................................................... 3

    C. Eleven Named Plaintiffs Represent Tens of Thousands of Class Members Across Three Certified Classes ................................................................... 4

    D. Plaintiffs Bring a Facial Challenge to UBH's Guidelines, Without Proof That A Denial Occurred For Any Individual Class Member Because of Any Deficiency in the Guidelines .................................................................. 6

    E. Plaintiffs Seek Declaratory and Injunctive Relief, and a Surcharge Calculated as Disgorgement of Revenue Received by UBH .................................. 8

III. Legal Standard .................................................................................................. 9

IV. Argument ......................................................................................................... 10

    A. UBH is Entitled to Summary Judgment on Plaintiffs' Fiduciary Duty Claims Because Plaintiffs Lack Proof of the Essential Element of Causation .................................................................................................... 10

    B. UBH is Entitled to Summary Judgment on Plaintiffs' Claims for Denial of Benefits Because Plaintiffs Lack Evidence Establishing That Alleged Flaws in the Guidelines Caused Any Denial of Benefits ..................................... 12

    C. Plaintiffs Lack Constitutional Standing ..................................................... 14

        1. Plaintiffs Cannot Show an Injury In Fact ............................................ 15

        2. Plaintiffs Cannot Show an Injury Fairly Traceable to UBH's Allegedly Wrongful Conduct ................................................................ 16

    D. UBH Is Entitled to Summary Judgment on the Claims of Plaintiffs Wit, Wit, Pfeifer, Holdnak, Muir, Tillitt, Alexander and Driscoll and Similarly Situated Class Members Because their Health Plans Explicitly Excluded Coverage for Services That Are Not Consistent with the Challenged Guidelines, Creating an Independent Basis for Coverage Denials ...................... 16

    E. UBH Is Entitled to Summary Judgment on Claims of the Wit State Mandate Class with Respect to Texas Law Because UBH Applied Texas-Specific Guidelines During the Class Period ...................................................... 18

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-i-

UNITED BEHAVIORAL HEALTH'S MOTION FOR
SUMMARY JUDGMENT; CASE NOS. 14-CV-02346 JCS;
14-CV-05337 JCS

**TABLE OF CONTENTS**
**(continued)**

                                                                                        **Page**

F.    Even If They Could Prove Liability, UBH Is Entitled to Summary
      Judgment on Plaintiffs' Prayer for a Surcharge Remedy ..................................... 18

      1.    The Proposed Surcharge Is Not Available Under Traditional
            Equitable Principles .................................................................................. 19

      2.    The Proposed Surcharge Is Not Appropriately Tailored to Redress a
            Loss Flowing from the Alleged Breach or Prevent Unjust
            Enrichment ................................................................................................ 20

V.    Conclusion ....................................................................................................... 22

1

2
<u>**TABLE OF AUTHORITIES**</u>

3
**Page(s)**

4
**Federal Cases**

5
*A.F. v. Providence Health Plan,*
  173 F. Supp. 3d 1061, 1073 (D. Or. 2016)...............................................................................18

6

7
*Abatie v. Alta Health & Life Ins. Co.,*
  458 F.3d 955 (9th Cir. 2006) (Kleinfeld, J., concurring) .......................................................12

8

9
*Allee v. Medrano,*
  416 U.S. 802 (1974) ...............................................................................................................14

10
*Anderson v. Liberty Lobby Inc.,*
  477 U.S. 242 (1986) ...............................................................................................................10

11

12
*Biba v. Wells Fargo & Co.,*
  No. C 09-3249 MEJ, 2010 WL 4942559 (N.D. Cal. Nov. 10, 2010) .................................12, 17

13

14
*Brooks v. Wapato Point Mgmt. Co. Health,*
  No. 2:14-CV-00250-LRS, 2015 WL 12683959 (E.D. Wash. Mar. 11, 2015).........................19

15
*Carrier v. Aetna Life Ins. Co.,*
  116 F. Supp. 3d 1067, 1079 (C.D. Cal. 2015)........................................................................12

16

17
*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ............................................................................................................9, 10

18

19
*CIGNA Corp. v. Amara,*
  563 U.S. 421 (2011) ...............................................................................................................19

20
*Gabriel v. Alaska Elec. Pension Fund,*
  773 F.3d 945 (9th Cir. 2014)..................................................................................................19

21

22
*Graddy v. Blue Cross BlueShield of Tenn., Inc.,*
  No. 4:09-CV-84, 2010 WL 670081 (E.D. Tenn. Feb. 19, 2010) ...........................................11

23

24
*Heimeshoff v. Hartford Life & Acc. Ins. Co.,*
  134 S. Ct. 604 (2013) .............................................................................................................17

25
*Hein v. F.D.I.C.,*
  88 F.3d 210 (3d Cir. 1996)..........................................................................................11, 12, 17

26

27
*Keenan v. Allan,*
  91 F.3d 1275 (9th Cir. 1996)..................................................................................................10

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

UNITED BEHAVIORAL HEALTH'S MOTION FOR SUMMARY
                                                        JUDGMENT; CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Krieger v. Nationwide Mut. Ins. Co.,*
    No. CV 11-01059-PHX-DGC, 2012 WL 1029526 (D. Ariz. Mar. 27, 2012) ........................20

*Kuper v. Iovenko,*
    66 F.3d 1447 (6th Cir. 1995)...............................................................................................10

*Lorenz v. Safeway, Inc.,*
    No. 16-CV-04903-JST, 2017 WL 952883 (N.D. Cal. Mar. 13, 2017) ....................................15

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) .....................................................................................................14, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio,*
    475 U.S. 574 (1986) ...........................................................................................................10

*Monper v. Boeing Co.,*
    104 F. Supp. 3d 1170, 1185 (W.D. Wash. 2015) ..................................................................18

*N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.,*
    798 F.3d 125 (2d Cir. 2015).................................................................................................20

*Payne v. POMCO Grp.,*
    No. 10 CIV. 7285 (BSJ), 2011 WL 4576545 (S.D.N.Y. Sept. 30, 2011) ...............................12

*Romberio v. Unumprovident Corp.,*
    385 F. App'x 423 (6th Cir. 2009) ......................................................10, 11, 12, 17

*Saffle v. Sierra Pacific Power Company Bargaining Unit Long Term Disability*
    *Income Plan,*
    85 F.3d 455 (9th Cir. 1996)...........................................................................................13, 14

*Scott v. Harris,*
    550 U.S. 372 (2007) ...........................................................................................................10

*Sedlack v. Braswell Servs. Grp., Inc.,*
    134 F.3d 219 (4th Cir. 1998)..........................................................................................11, 12

*Sereboff v. Mid Atl. Med. Servs., Inc.,*
    547 U.S. 356 (2006) ...........................................................................................................19

*Skinner v. Northrop Grumman Ret. Plan B,*
    673 F.3d 1162 (9th Cir. 2012)..............................................................................................19

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ..................................................................................................15, 16

*Steel Co. v. Citizens for Better Env't,*
    523 U.S. 83 (1998) .............................................................................................................15

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Travelers Cas. & Sur. Co. of Am. v. K.O.O. Constr., Inc.*,
   No. 16-CV-00518-JCS, 2016 WL 7324988 (N.D. Cal. Dec. 16, 2016) ...................................10

*U.S. Airways, Inc. v. McCutchen*,
   133 S. Ct. 1537 (2013) ........................................................................................................17

**Federal Statutes**

29 U.S.C. § 1132(a)(1)(B)........................................................................................................12

ERISA Section 502(a) .................................................................................................................6

ERISA § 502(a)(3) .............................................................................................................19, 20

**State Statutes**

Tex. Administrative Code, Title 28, § 3.8011..............................................................................18

**Other Authorities**

Civil Local Rule 7-4(a)(3).............................................................................................................1

Fed. R. Civ. P. 23 ........................................................................................................................1

Fed. R. Civ. P. 56 ........................................................................................................................1

Fed. R. Civ. P. 56(a).....................................................................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

**NOTICE OF MOTION, STATEMENT OF RELIEF SOUGHT, AND STATEMENT OF**

**ISSUES TO BE DECIDED**

On Friday, July 28, 2017, at 9:30 a.m. in Courtroom G of the United States District Court for the Northern District of California, San Francisco Division, the Court will hear this Motion filed by Defendant United Behavioral Health ("UBH").

Through this Motion, UBH seeks summary judgment under Federal Rule of Civil Procedure 56 for UBH and against Plaintiffs on all of Plaintiffs' claims. In the alternative, if the Court does not grant summary judgment on all of Plaintiffs' claims, UBH seeks partial summary judgment on all claims and remedies for which this Court determines there is no genuine issue of material fact.

UBH is entitled to summary judgment for several reasons. Consistent with Civil Local Rule 7-4(a)(3), UBH identifies the following issues for the Court to decide in this Motion:

1.     Is UBH entitled to summary judgment on Plaintiffs' claim for breach of fiduciary duty, where Plaintiffs admit they will not offer evidence that UBH's alleged breach caused harm to any Plaintiff or class member?

2.     Is UBH entitled to summary judgment on Plaintiffs' claim for improper denial of benefits, where Plaintiffs admit they will not offer evidence that alleged flaws in UBH's guidelines caused UBH to deny any benefits otherwise due to any Plaintiff or class member?

3.     Is UBH entitled to summary judgment on each of Plaintiffs' claims because Plaintiffs lack Article III standing, having admitted that they will not offer evidence that there was any actual, concrete harm to Plaintiffs or class members?

4.     Is UBH entitled to summary judgment on each of Plaintiffs' claims because Plaintiffs lack Article III standing, having admitted that they will not offer evidence that harm to Plaintiffs or class members is fairly traceable to alleged flaws in UBH's guidelines?

5.     Is UBH entitled to summary judgment on each of the claims of Plaintiffs David and Natasha Wit, Pfeifer, Holdnak, Muir, Tillitt, Alexander and Driscoll, where their respective benefit plans explicitly permit UBH to deny coverage based on the challenged guidelines, providing an independent contractual basis for denials of benefits?

CROWELL
& MORING LLP
ATTORNEYS AT LAW

6.      Is UBH entitled to summary judgment on the claims of the *Wit* State Mandate Class with respect to Texas-specific guidelines where the undisputed evidence shows that UBH applied the required state guidelines during the class period?

7.      Is UBH entitled to summary judgment on Plaintiffs' request for a surcharge remedy, where Plaintiffs admit they will not offer evidence that UBH's alleged breach of fiduciary duty injured any Plaintiff or class member?

8.      Is UBH entitled to summary judgment on Plaintiffs' request for a surcharge remedy, where Plaintiffs cannot establish that the surcharge they seek is available under traditional equitable principles of disgorgement?

9.      Is UBH entitled to summary judgment on Plaintiffs' request for a surcharge remedy, where the undisputed evidence shows that the surcharge they seek would not redress their alleged loss?

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the attached exhibits, all relevant filings by the parties and the Court, all relevant arguments advanced by the parties at oral argument, and all other relevant matters presented to the Court in connection with this Motion.

Dated:      May 19, 2017          **CROWELL & MORING LLP**

*/s/ Jennifer S. Romano*

Jennifer S. Romano

Attorneys for UNITED BEHAVIORAL HEALTH

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    Introduction**

3        Plaintiffs bring ERISA claims for improper denial of benefits and breach of fiduciary duty

4    against United Behavioral Health ("UBH"), contending that UBH developed guidelines for

5    determining medical necessity that are inconsistent with the terms of the thousands of ERISA

6    plans implicated in this case. When this Court was considering Plaintiffs' motion for class

7    certification, without reaching their ability to ultimately succeed on the merits, the Court

8    recognized that Plaintiffs' claims cannot proceed on a classwide basis if they require proof that

9    UBH's guidelines caused the wrongful denial of claimants' benefits under their respective ERISA

10   plans. Rule 23 precludes class certification of such claims, the Court explained, because they

11   necessarily turn on individualized benefits decisions rather than on a common, classwide injury.

12       Plaintiffs did not disagree with the Court's analysis. Instead, in their reply brief in support

13   of their motion for class certification, they abandoned any claim of actual injury or causation, and

14   reframed their case as a purely facial challenge to UBH's guidelines—a claim that ostensibly

15   requires no proof that flaws in the guidelines caused any claimant's benefit denial. By Plaintiffs'

16   own account, the individual benefit decisions for each class member, including whether any

17   coverage decision would have been different using other standards, are "irrelevant" to their

18   claims. Thus, Plaintiffs asserted they could prove their claims with evidence that is generally

19   applicable to the class.

20       The problem for Plaintiffs is that, while this reformulation of their claims may have

21   facilitated class treatment, Plaintiffs' decision to eschew any attempt to prove injury or causation

22   dooms their claims on the merits. Plaintiffs have developed no evidence that any individual class

23   member suffered an adverse benefits decision caused by any alleged defect in UBH's guidelines.

24   Indeed, Plaintiffs *admit* that their case essentially seeks an advisory opinion—whether "UBH

25   created bad guidelines and then used them to administer claims." But "bad guidelines" alone are

26   not enough to impose classwide liability if Plaintiffs cannot also show that the alleged flaws in

27   those guidelines caused them actual injury, as these are indispensable elements of Plaintiffs'

28   benefits and fiduciary claims. Plaintiffs have thus chosen to pursue claims for which they lack

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1  required elements of proof and standing, and to seek remedies that are unavailable to them as a

2  matter of law. Plaintiffs' strategic choice to limit the scope of their claims to secure class

3  certification entitles UBH to summary judgment on all of Plaintiffs' claims in this action.

4        There are additional grounds for summary judgment. As to certain Plaintiffs, some claims

5  challenge UBH's conduct even where it is expressly authorized by Plaintiffs' own benefit plans.

6  As to these and other sub-sets of class members, the undisputed evidence establishes that UBH

7  fully complied with its legal obligations. Having reached the merits stage of this case, the burden

8  rests with Plaintiffs to adduce evidence establishing each element of their claims. They cannot

9  carry that burden. UBH is entitled to summary judgment.

10 **II.    Uncontroverted Facts**

11      **A.    UBH Administered ERISA Health Benefit Plans Providing Behavioral Health
           Insurance Coverage to Plaintiffs and Class Members During the Class Period.**

12      UBH administers behavioral health (mental health and substance use disorder) benefits,

13 including for various ERISA health benefit plans. (*See* Martorana Tr., Ex. 3, at 25:3–22.) Among

14 other responsibilities, UBH determines whether plan members are entitled under the terms of

15 their respective plans to receive benefits to cover behavioral health treatment. (*Id.* at 25:2–4.)

16      UBH developed level of care guidelines ("LOCs") and coverage determination guidelines

17 ("CDGs") to help its clinical staff make coverage determinations. (*Id.*, at 76:18–22, 77:22–78:1.)

18 The LOCs are organized by level of care (*e.g.*, inpatient hospitalization, residential treatment, and

19 intensive outpatient and outpatient settings) and are used to make medical necessity

20 determinations for members of certain plans. (*See* 2011–2017 Level of Care Guidelines, Exs. 10-

21 16; Triana Decl., Ex. 2, at 1:22–27.) In each year during the class period, the LOCs included an

22 Introduction, a set of Common Criteria applicable to all of the LOCs, and individual LOCs

23 specific to each level of care. (*See* 2011–2017 Level of Care Guidelines, Exs. 10-16.) The LOCs

24 evolved over time, and there have been multiple LOCs in use each year since 2011. (*Id.*)

25      The CDGs, in contrast, are organized by diagnosis (*e.g.*, major depressive disorder,

26 ADHD, and substance use) and are used to make coverage decisions for members of different

27 plans than the LOCs. (*See* Brennecke Tr., Ex. 17, at 186:5–11 (noting CDGs are "diagnostic

28

2

UNITED BEHAVIORAL HEALTH'S MOTION FOR SUMMARY
JUDGMENT; CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS

specific"); *see also* Niewenhous Tr., Ex. 18, at 60:10–18 (noting that CDGs are used for benefit plans that do not "have a provision for medical necessity.").) There also are CDGs specifically addressing "custodial care," which Plaintiffs also challenge. (*See* Custodial Care CDGs, Ex. 4–9.) Many, but not all, of the CDGs incorporate language from LOCs in use in the same year. (Triana Decl., Ex. 2, at 2:1–6.) The CDGs have also evolved over time, and there have been several dozen CDGs in use in each year since 2011. (*Id.*) Throughout the class period, UBH annually reviewed the LOCs and CDGs and revised them as necessary. (Brennecke Tr., Ex. 17, at 190:11–15.) While some LOCs and CDGs received substantial substantive revisions in a given year, others did not. (*Id.* at 190:16–191:6.) Which guideline applied to a particular member's coverage decision was based on the year, the member's plan documents, the requested level of care, and/or the member's diagnosis. (*See id.* at 119:25–120:11, 186:22–l87:7, 191:7–l 92:4.) State law also impacts which guideline applies. For example, UBH applies Texas-specific guidelines to substance use claims in that state in accordance with state law. (Triana Decl., Ex. 2, at 2:7–12.)

**B.**      **Plaintiffs Are Beneficiaries of Different Health Benefit Plans Governed by ERISA.**

Plaintiffs and the class members are beneficiaries of thousands of individual health benefit plans governed by ERISA. (*See* Order Granting Class Cert., ECF No. 174, at 3:2–7.) The terms of each plan set forth the scope of benefits available, including specific coverage terms and exclusions, as well as cost-sharing arrangements such as deductibles, co-pays, and co-insurance. (Dehlin Tr., Ex. 19, at 54:23–55:25.)

The benefit plans differ in what they cover, as reflected in each plan's language. For example, some plans exclude coverage for treatment that is not "medically necessary." (*See, e.g.*, IBM Certificate of Coverage, Ex. 20, at UBHWIT0042750.) Others exclude coverage for treatment that is not "clinically appropriate." (*See, e.g.*, MetLife Summary Plan Description, Ex. 21, at UBHWIT0040901.) Some plans, including the health plans applicable to all but three of the named Plaintiffs, separately exclude coverage for treatment that is "not consistent with [UBH]'s level of care guidelines, or best practices as modified from time to time." (*See, e.g.*, UnitedHealthcare Basic Health Plan, Ex. 22, at UBHWIT0001958.) Even among the sample

benefit plans produced in this case (covering only 110 of the more than 60,000 class members), there are dozens of variations in the language describing behavioral health benefits. (*See* Ex. 71 to UBH's Opp'n to Class Cert., ECF No. 149-6, at 15–50.)

Similarly, all of the named Plaintiffs' plans exclude coverage for "Custodial Care", but the definitions of "Custodial Care" vary. For example, the benefit plan applicable to Ms. Holdnak defines "Custodial Care" as:

> Services that don't require skills or training and that:
>
> - Provide assistance in activities of daily living (including, but not limited to, feeding, dressing, bathing, ostomy care, incontinence care, checking of routine vital signs, transferring, and ambulating);
>
> - Don't seek to cure or which are provided during periods when the medical condition of the patient who requires the service isn't changing; or
>
> - Don't require continued administration by trained medical personnel to be delivered safely and effectively.

(American Express Medical Plan, Ex. 24, at UBHWIT0008159.) Other plans include different, or more expansive, definitions of "Custodial Care". (*See, e.g.*, Lockton, Inc. Summary Plan Description, Ex. 31, at UBHWIT0262177–78 (SPD applicable to Ms. Tillitt, excluding skilled services "that are provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function . . . , as opposed to improving that function to an extent that might allow for a more independent existence.").)

These health plans and their varying language establish the individual obligations owed by UBH to Plaintiffs and the class members under ERISA.

**C.    Eleven Named Plaintiffs Represent Tens of Thousands of Class Members Across Three Certified Classes.**

The eleven named Plaintiffs represent three certified classes: (1) the *Wit* Guideline Class, (2) the *Wit* State Mandate Class, and (3) the *Alexander* Guideline Class. (Order Granting Class Cert., ECF No. 174, at 12:8–22, 13:4–11.)

Plaintiffs David and Natasha Wit, Lori Flanzraich, Cecelia Holdnak, Brian Muir, and

1   Linda Tillitt (or their children) were not approved for benefits to cover certain residential services

2   in 2013 (Wit, Muir, Flanzraich), 2014 (Holdnak), and 2015 (Tillitt). (*See* FAC, ECF No. 39, at

3   18:17–28, 27:25–28:20, 48:21–49:12, 56:16–57:3; Tillitt Intervenor Compl., ECF No. 123, at

4   22:18–28.) They represent the *Wit* Guideline Class:

5
6   > Any member of a health benefit plan governed by ERISA whose
    > request for coverage of residential treatment services for a mental
6   > illness or substance use disorder was denied by UBH, in whole or
    > in part, between May 22, 2011 and June 1, 2017, based upon
7   > UBH's Level of Care Guidelines or UBH's Coverage
8   > Determination Guidelines.

9   (Order Granting Class Cert., ECF No. 174, at 12:7–13; Stip. & Order Re Class Notice, ECF No.

10  236.)

11  Plaintiff Brandt Pfeifer's claims relate to an adverse benefit determination from UBH in

12  2013 under a fully-insured benefit plan governed by Illinois law. (FAC, ECF No. 39, at 42:1–5,

13  42:16–22.) He represents the *Wit* State Mandate Class:

14
15  > Any member of a fully-insured health benefit plan governed by
    > both ERISA and the state law of Connecticut, Illinois, Rhode
15  > Island, or Texas, whose request for coverage of residential
16  > treatment services for a substance use disorder was denied by
    > UBH, in whole or in part, within the Class period, based upon
17  > UBH's Level of Care Guidelines or UBH's Coverage
    > Determination Guidelines, and not upon the level-of-care criteria
18  > mandated by the applicable state law.

19  > The Class period for the *Wit* State Mandate Class includes denials
    > governed by Texas law that occurred between May 22, 2011 and
20  > June 1, 2017, denials governed by Illinois law that occurred
    > between August 18, 2011 and June 1, 2017, denials governed by
21  > Connecticut law that occurred between October 1, 2013 and June
22  > 1, 2017, and denials governed by Rhode Island law that occurred
    > between July 10, 2015 and June 1, 2017.
23
24  (Order Granting Class Certification, ECF No. 174, at 12:13–13:2; Stip. & Order Re Class Notice,

    ECF No. 236.)
25
26  Plaintiffs Gary Alexander, David Haffner, Corinna Klein, and Michael Driscoll (or their

27  children) experienced adverse benefit determinations in 2011(Haffner), 2013 (Driscoll and

    Alexander), and 2014 (Klein). (*See Alexander* Class Action Compl., 3:14-CV-5337-JCS , ECF
28

5

CROWELL
& MORING LLP
ATTORNEYS AT LAW

No. 1, at 25:19–26:27, 33:1–22, 41:3–26; Driscoll Intervenor Compl., 3:14-CV-5337-JCS, ECF No. 87, at 20:7–11, 21:6–12, 21:25–22:7.) They represent the *Alexander* Guideline Class:

> Any member of a health benefit plan governed by ERISA whose request for coverage of outpatient or intensive outpatient services for a mental illness or substance use disorder was denied by UBH, in whole or in part, between May 22, 2011 and June 1, 2017, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines.

> The *Alexander* Guideline Class excludes any member of a fully insured plan governed by both ERISA and the state law of Connecticut, Illinois, Rhode Island or Texas, whose request for coverage of intensive outpatient treatment or outpatient treatment related to a substance use disorder.

(Order Granting Class Certification, ECF No. 174, at 13:3–12; Stip. & Order Re Class Notice, ECF No. 236.)

### D.   Plaintiffs Bring a Facial Challenge to UBH's Guidelines, Without Proof That A Denial Occurred For Any Individual Class Member Because of Any Deficiency in the Guidelines.

Plaintiffs assert two claims (broken down into four "Counts") against UBH, all under Section 502(a) of ERISA. (FAC, ECF No. 39 at 64:23–68:9.) Counts I and III allege that UBH breached its fiduciary duty. (*Id.*) Counts II and IV allege that UBH improperly denied benefits. (*Id.*) By their own account, Plaintiffs' case does not depend on the application of the guidelines to any particular claim; it is a facial attack on the guidelines themselves. In other words, Plaintiffs have disavowed any intention of proving that the guidelines, as applied, resulted in any *actual* benefits decision that violated generally accepted standards of care or the terms of any claimant's ERISA plan. Instead, Plaintiffs contend that hundreds of UBH's guidelines from 2011 to 2017 are facially inconsistent with generally accepted standards of care and, as a result, UBH breached its fiduciary duty. (*See* Case Management Statement, ECF No. 243, at 10:4–10; *see also id.* at 12:19–20 n.3.) Plaintiffs further claim that, solely by developing these allegedly inconsistent guidelines and using them to make coverage determinations, UBH wrongfully denied benefits to the class. (*See id.* at 10:11–16.)

Specifically, Plaintiffs contend that UBH has a fiduciary duty to administer behavioral

health benefits consistent with plan terms, and that UBH violated this duty by developing and implementing guidelines that are more restrictive than generally accepted standards of care. (Order Granting Class Cert., ECF No. 174, at 9:10–16.) Plaintiffs will not seek to prove that UBH denied any class member benefits that they were otherwise entitled to receive, or that they would have received but for the alleged flaws in the guidelines. (*See* Pls. Reply Memo. Supp. Class. Cert., ECF No. 153 at 12:11–14 (arguing that Plaintiffs' "individual clinical presentation[s]" are irrelevant to the breach-of-fiduciary-duty claim).) Rather, Plaintiffs assert that the mere creation and use of the guidelines constituted a general breach of fiduciary duty as to tens of thousands of members, relying on experts to speculate that UBH's conduct *might* have led UBH to deny a claim that should have been approved. (*See* FAC, ECF No. 39, at 66:9–12; Fishman Tr., Ex. 25, at 71:11–13 ("The scope of what I was asked to render an opinion on was not the individual cases and the details of their care."); Chenven Tr., Ex. 26, at 264:1–10 (noting Dr. Chenven did not conduct a formal analysis of members' conditions to see if application of other guidelines would have led to a different outcome); Plakun Tr., Ex. 27, at 28:15–19.)

Likewise, with respect to their claim for improper denial of benefits, Plaintiffs allege that UBH improperly adjudicated and denied requests for coverage by relying on overly restrictive guidelines, regardless of whether the challenged portions of those guidelines contributed to the individual benefit determinations or whether the actual benefit decisions were inconsistent with generally accepted standards of care. (*See* Order Granting Class Cert., ECF No. 174, at 10:4–6.) Initially, Plaintiffs recognized that their improper-denial-of-benefits claim required proof that the denials were caused by the challenged conduct. (*See* FAC, ECF No. 39, at 66:21–67:4 (discussing UBH's alleged failure to consider patient-specific evidence as to each request for coverage).) They soon realized, however, that asking "the Court to make determinations as to whether class members were *actually* entitled to benefits" would preclude class certification because it "would require the Court to consider a multitude of individualized circumstances relating to the medical necessity for coverage and the specific terms of the member's plan." (Order Granting Class Cert., ECF No. 174, at 31:8–11.)

To obtain class certification, Plaintiffs recast their denial of benefits claim as a purely

facial challenge to the guidelines. Specifically, "[a]t oral argument, Plaintiffs stipulated that if the Court certifies the proposed classes the Named Plaintiffs will drop" any theory of recovery other than the claim that "UBH improperly adjudicated and denied . . . requests for coverage by . . . relying on . . . overly restrictive [g]uidelines" that were not consistent with generally accepted standards of care. (*Id.* at 10:6, 10:6 n.10.) The Court explicitly relied on Plaintiffs' stipulation in granting class certification, reiterating that the Court's decision "depends on the fact" that Plaintiffs are not seeking an order that benefits are owed. (Pretrial Schedule Hr'g Tr., Ex. 36, at 17:14–24.) Plaintiffs' claims, in their own words, "are that UBH created bad guidelines and then used them to administer claims." (Class Cert. Hr'g Tr., Ex. 37, at 14:2–3.) While the Court has ruled that this abstract theory of liability is susceptible to classwide proof, the Court has not addressed Plaintiffs' reformed theory of the case on the merits, as raised in this Motion.

### E.   Plaintiffs Seek Declaratory and Injunctive Relief, and a Surcharge Calculated as Disgorgement of Revenue Received by UBH.

To remedy UBH's alleged breach of fiduciary duty, Plaintiffs seek (1) a declaration that UBH breached its fiduciary duties by developing guidelines that are inconsistent with generally accepted standards of care; (2) an injunction ordering UBH to stop using its guidelines, and to develop and use new ones going forward (*i.e.*, a prospective mandatory injunction); and (3) a surcharge in the form of disgorgement of revenue UBH received from its customers to administer the class members' behavioral health benefits. (*See* FAC, ECF No. 39, at 68:11–69:22.) To remedy UBH's alleged wrongful denial of benefits, Plaintiffs seek (1) an order requiring UBH to "reprocess" past claims for benefits using new guidelines that are consistent with generally accepted standards of care; and (2) a surcharge in the form of disgorgement of UBH's revenue. (*Id.*)

With respect to the surcharge remedy, Plaintiffs confirmed that they do not seek make-whole relief for the class members (*i.e.*, benefits payment or recoupment of out-of-pocket costs for treatment that was not covered), but rather disgorgement of the revenue UBH received (in most cases, from the class members' employers) for administering benefits for the class members throughout the class period. (*See* Class Cert. Hr'g Tr., Ex. 37, at 4:15–23 ("The measure of the

CROWELL & MORING LLP ATTORNEYS AT LAW

surcharge is not make-whole relief on behalf of the class . . . . It is not an award of the benefits. We are not asking this Court to make individualized benefit determinations. It's really a measure of sort of unjust enrichment theory, trying to disgorge from UBH some of the profits that it unjustly earned by administering the plans according to these inappropriate criteria".)) In pressing Plaintiffs' counsel for a proposed method to calculate the surcharge remedy they seek, the Court reminded Plaintiffs that it is their burden to show that Plaintiffs can appropriately fashion a surcharge remedy on a class-wide basis. (*Id.* at 19:18–23.)

With respect to the reprocessing remedy, Plaintiffs' experts offer no opinion as to how UBH's guidelines should be reformed to conform to generally accepted standards of care. (Fishman Tr., Ex. 25, at 73:20–24 ("I do not understand my scope as to be to attempt to correct or improve those guidelines inasmuch as we might discuss in what ways they deviate from those standards."). One of Plaintiffs' experts admitted that even if new guidelines are imposed, there is not enough information in the Plaintiffs' administrative records to reprocess Plaintiffs' claims. (*See* Plakun Tr., Ex. 27, at 220:21–24, 233:1–5, 242:9–16.) When asked whether he had determined if individual Plaintiffs would have been approved for the benefits they sought if UBH had applied one of Plaintiffs' preferred guidelines—the LOCUS tool—Dr. Eric Plakun testified that he had not and that the record did not contain enough information to permit him to do so. (*See id.* at 233:12–16.) Plaintiffs' other experts similarly fail to demonstrate how Plaintiffs' requested reprocessing remedy would work in practice, whether it could afford relief to the named Plaintiffs, much less the thousands of individuals they represent, or how it would be any different than a delayed, non-adjudicative evaluation of individualized injury. (*See* Chenven Tr., Ex. 26, at 260:22–261:1; Fishman Tr., Ex. 25, at 158:18–23.)

## III.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, the moving party must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the party opposing summary judgment to

UNITED BEHAVIORAL HEALTH'S MOTION FOR SUMMARY
JUDGMENT; CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1    designate "specific facts showing that there is a genuine issue for trial." *Id.* "[T]he inquiry

2    involved in a ruling on a motion for summary judgment . . . implicates the substantive evidentiary

3    standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby Inc.*, 477

4    U.S. 242, 252 (1986). "The non-moving party has the burden of identifying, with reasonable

5    particularity, the evidence that precludes summary judgment." *Travelers Cas. & Sur. Co. of Am.*

6    *v. K.O.O. Constr., Inc.*, No. 16-CV-00518-JCS, 2016 WL 7324988, at *6 (N.D. Cal. Dec. 16,

7    2016) (citing *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996)). On summary judgment, the

8    court draws all reasonable factual inferences in favor of the non-movant. *Scott v. Harris*, 550 U.S.

9    372, 378 (2007). But where a rational trier of fact could not find for the non-moving party based

10   on the record as a whole, there is no "genuine issue for trial" and summary judgment is

11   appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

12   **IV.    Argument**

13         **A.    UBH is Entitled to Summary Judgment on Plaintiffs' Fiduciary Duty Claims
               Because Plaintiffs Lack Proof of the Essential Element of Causation.**

14

15         Plaintiffs cannot prevail at trial without evidence demonstrating a causal link between the

16   alleged breach of fiduciary duty and actual harm suffered by Plaintiffs and the class members.

17   They must show that "the defendant not only breached its fiduciary duty but also caused harm by

18   that breach. A causal connection between the alleged breach and the alleged harm is thus a

19   necessary element of an ERISA-participant's breach-of-fiduciary-duty claim." *Romberio v.*

20   *Unumprovident Corp.*, 385 F. App'x 423, 429 (6th Cir. 2009) (citation omitted) (citing *Kuper v.*

21   *Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995)).

22         Yet Plaintiffs have affirmatively admitted that they will not offer evidence to prove that

23   each (or any) class member was denied benefits because of the specific flaws they identify in the

24   guidelines. Indeed, Plaintiffs have avowed on numerous occasions that it will be enough for them

25   to prove that (1) UBH was acting in a fiduciary capacity when it created the guidelines; (2) UBH

26   used the guidelines to administer plan benefits for the class members; (3) the guidelines were

27   more restrictive than generally accepted standards of care in one or more ways; and (4) the class

28   members' benefit plans covered treatment that is consistent with generally accepted standards of

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1   care (regardless of what other language or coverage terms apply to the various health benefit

2   plans applicable to the class members). (*See, e.g.*, Case Management Statement, ECF No. 243, at

3   10:4–16 (4/28/17); Case Management Statement, ECF No. 194, at 12:21–13:7 (1/27/17); Case

4   Management Statement, ECF No. 185, at 9:6–28 (10/28/16).) Plaintiffs do not intend to prove

5   that the alleged flaws in the guidelines *caused* UBH to deny any particular claim for benefits, or

6   that any benefit determination would have been different but for UBH's alleged misconduct.

7          Plaintiffs' strategic choice to narrow their breach of fiduciary duty claim to a facial attack

8   on the guidelines, without proving that the alleged breach caused any claimant to lose benefits she

9   was otherwise entitled to receive, is fatal to the claim. Causation is "a necessary element of an

10  ERISA-participant's breach-of-fiduciary-duty claim," *Romberio*, 385 F. App'x at 429, and

11  Plaintiffs openly concede they will not establish this element.

12         The Third Circuit's decision in *Hein v. F.D.I.C.* is on point. The *Hein* plaintiff sought

13  equitable remedies for breach of fiduciary duty arising out of the defendant's alleged

14  mismanagement and underfunding of plan assets, alleging that the underfunding was one of the

15  considerations in denying the plaintiff benefits under the plan. *Hein v. F.D.I.C.*, 88 F.3d 210, 224

16  (3d Cir. 1996). The Third Circuit rejected the plaintiff's breach of fiduciary duty claims because,

17  among other things, he failed to allege facts establishing that the purported breach of duty caused

18  the denial of benefits. The court held that a plaintiff "cannot claim benefits to which he is not

19  entitled. Because [the plaintiff] was not entitled to the benefits in the first place, there is no causal

20  link between the alleged breach of fiduciary duty by [the plan administrator] and the denial of

21  benefits to [the plaintiff]." *Id.*

22         *Hein* does not stand alone. It is well-settled that a plaintiff asserting a claim for breach of

23  fiduciary duty under ERISA must show that the defendant's breach of fiduciary duty caused the

24  plaintiff harm. *See, e.g.*, *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 225 (4th Cir. 1998)

25  (affirming judgment against plaintiff where there was no causal link between the defendant's

26  alleged breaches of fiduciary duty and the harm for which the plaintiff sought to recover); *Graddy*

27  *v. Blue Cross BlueShield of Tenn., Inc.*, No. 4:09-CV-84, 2010 WL 670081, at *8 (E.D. Tenn.

28  Feb. 19, 2010) ("A causal connection between the alleged breach and the alleged harm is thus a

1    necessary element of an ERISA participant's breach of fiduciary duty claim.").

2        Without evidence that UBH's alleged breach of fiduciary duty caused UBH to deny

3    benefits to the class members, Plaintiffs cannot prove an essential element of this claim, and UBH

4    is entitled to judgment as a matter of law.

5        **B.    UBH is Entitled to Summary Judgment on Plaintiffs' Claims for Denial of
          Benefits Because Plaintiffs Lack Evidence Establishing That Alleged Flaws in
6         the Guidelines Caused Any Denial of Benefits.**

7        Plaintiffs' improper-denial-of-benefits claim also fails as a matter of law because it

8    ignores the well-settled requirement that Plaintiffs and the class members must prove they were

9    improperly denied benefits they were otherwise entitled to receive. As with their fiduciary breach

10   claim, Plaintiffs intend to try this claim as a classwide "procedural challenge" to the development

11   and use of allegedly improper coverage guidelines, untethered from any specific benefit decision.

12       A claim for improper denial of plan benefits "rests upon three elements, namely that 1) the

13   plan at issue is an employee benefit plan covered by ERISA, 2) the plaintiff is covered by this

14   plan, and 3) the plaintiff was wrongfully denied benefits under the plan." *Payne v. POMCO Grp.*,

15   No. 10 CIV. 7285 (BSJ), 2011 WL 4576545, at *2 (S.D.N.Y. Sept. 30, 2011); *see Abatie v. Alta*

16   *Health & Life Ins. Co.*, 458 F.3d 955, 977 (9th Cir. 2006) (Kleinfeld, J., concurring) (in an

17   ERISA denial of benefits case, the "focus should be on whether the claimant is entitled to the

18   claimed benefits."); *Carrier v. Aetna Life Ins. Co.*, 116 F. Supp. 3d 1067, 1079 (C.D. Cal. 2015)

19   (in an ERISA improper termination of benefits case, a plaintiff "bears burden of proving

20   entitlement to benefits"); *Biba v. Wells Fargo & Co.*, No. C 09-3249 MEJ, 2010 WL 4942559, at

21   *7 (N.D. Cal. Nov. 10, 2010) ("To be eligible for benefits under 29 U.S.C. § 1132(a)(1)(B),

22   [plaintiff] has the burden of showing that: (1) the Plan is covered by ERISA, (2) [plaintiff] is a

23   participant or beneficiary of the Plan, and (3) [plaintiff] was wrongfully denied [benefits] owed

24   under the Plan."). "Absent a showing that benefits were *wrongfully* denied, there can be no causal

25   link between an alleged breach and a denial of benefits; and whether a claim for benefits is

26   *wrongfully* denied depends on a number of factors peculiar to the claimant's case." *Romberio*,

27   385 F. App'x at 429 (citing *Hein*, 88 F.3d at 224); *see also Sedlack*, 134 F.3d at 225 (citing *Hein*,

28   88 F.3d at 224–25).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

Faced with the strict requirements for class certification, Plaintiffs reframed their denial of benefits claim to avoid having to prove that any specific plan member's benefits were denied because of the alleged flaws in the guidelines. Rather, Plaintiffs have represented that their evidence will be limited to showing that the plans were ERISA plans; that UBH abused its discretion in creating the guidelines because they deviate from generally accepted standards; and that UBH was influenced by a conflict of interest in creating its guidelines. (*See* Case Management Statement, ECF No. 194, at 13:2–7 (Plaintiffs' formulation of the elements of their improper denial of benefits claim).) Absent from Plaintiffs' proffer is any evidence that they or the class members were entitled to benefits under the terms of their plans, and were denied those benefits as a result of UBH's alleged abuse of discretion in creating the guidelines. (*See id.*) While Plaintiffs have offered expert reports in which behavioral health clinicians opine that certain language in the UBH guidelines is (or could be interpreted to be) more restrictive than generally accepted standards of care (and UBH has offered reports of other clinicians setting forth the opposite opinion), Plaintiffs and their experts have confirmed that they do not intend to offer any evidence at trial that alleged flaws in the guidelines had a material impact on UBH's decisions to deny coverage for the specific treatment sought by the thousands of individual class members under their respective health benefit plans. (*See supra* Section II.D.)

Plaintiffs have repeatedly—and wrongly—relied on the Ninth Circuit's decision in *Saffle v. Sierra Pacific Power Company Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455 (9th Cir. 1996), to argue that because the remedy they seek is "reprocessing" of benefit claims, and not payment of benefits, Plaintiffs do not need to prove causation. *Saffle's* discussion of the remedy for a denial of benefits claim under ERISA does not change the elements for the claim itself, and the case does not stand for the proposition that a plaintiff can bring an ERISA claim for denial of benefits divorced from a specific benefit decision. In *Saffle,* an individual ERISA claim for denial of benefits and not a class action, an employee challenged her plan's interpretation of the phrase "total disability." *Id.* at 456. The plaintiff offered actual evidence demonstrating that the plan administrator's arbitrary interpretation of the term "total disability" impacted the plan's decision to deny the plaintiff benefits. *Id.* at 458. The Ninth Circuit agreed,

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1    and remanded the case back to the plan administrator to reprocess the benefit claims at issue

2    using a standard for "total disability" that was consistent with the court's interpretation. *Id.* at

3    461.

4         In contrast to the evidence offered in *Saffle*, Plaintiffs have confirmed that they do *not*

5    intend to causally connect any of their criticisms of UBH's guidelines to any benefit decision, nor

6    do they intend to offer any evidence from the administrative record to show whether the coverage

7    decisions for the class members were inconsistent with their plans, such that they would have

8    received benefits but for UBH's alleged abuse of discretion. Without evidence that UBH's

9    allegedly overly restrictive coverage guidelines caused the Plaintiffs or the class members to be

10   wrongfully denied benefits, there is no genuine dispute of fact with regard to causation. Plaintiffs'

11   denial of benefit claims accordingly fail as a matter of law.

12        **C.      Plaintiffs Lack Constitutional Standing.**

13        For similar reasons, Plaintiffs lack constitutional standing to pursue their claims. "[T]he

14   irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of*

15   *Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an injury in fact—an

16   invasion of a legally protected interest which is (1) concrete and particularized and (2) actual or

17   imminent, and not conjectural or hypothetical. *Id.* Second, there must be a causal connection

18   between the injury and the conduct complained of—the injury must be fairly traceable to the

19   challenged action of the defendant. *Id.* Third, it must be likely that the injury will be redressed by

20   a favorable decision. *Id.* at 561. A plaintiff bears the burden of establishing these elements. *See id.*

21   "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's

22   case, each element must be supported in the same way as any other matter on which the plaintiff

23   bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive

24   stages of the litigation." *Id.* These rules apply fully to named plaintiffs in class actions; class

25   representatives must have standing to bring claims on behalf of the class under all legal theories

26   giving rise to the claims. *Allee v. Medrano*, 416 U.S. 802, 828–29 (1974).

27        Here, Plaintiffs cannot carry their burden on Article III standing. First, Plaintiffs fail to

28   sufficiently show an injury in fact because, by their own admission, Plaintiffs and class members

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1    contend they *may* have been injured by UBH's allegedly improper guidelines, with actual injury

2    in fact to be established, if at all, only after reprocessing is complete. Second, because Plaintiffs

3    fail to adequately establish a causal connection between the UBH conduct they complain about

4    and the alleged injury, they cannot satisfy the traceability element of standing.

5                    **1.      Plaintiffs Cannot Show an Injury In Fact.**

6          Injury in fact is "the 'first and foremost of standing's three elements.'" *Spokeo, Inc. v.*

7    *Robins*, 136 S. Ct. 1540, 1547 (2016) (alteration omitted) (quoting *Steel Co. v. Citizens for Better*

8    *Env't*, 523 U.S. 83, 103 (1998)). An injury in fact sufficient to confer standing must be both

9    "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at

10   1548 (quoting *Lujan*, 504 U.S. at 560). Though an injury need not necessarily be "tangible," a

11   "concrete" injury is one that actually exists; in other words it is "real" and not "abstract." *Id.* at

12   1548–49. Congress cannot eliminate these standing requirements by statute. *Id.* at 1547–48. Nor

13   do bare statutory violations, without concrete injury, suffice to confer standing. *Id.* at 1549

14   (holding that "Article III standing requires a concrete injury even in the context of a statutory

15   violation"); *Lorenz v. Safeway, Inc.*, No. 16-CV-04903-JST, 2017 WL 952883, at *5 (N.D. Cal.

16   Mar. 13, 2017) (a plaintiff must show more than "a statutory violation of ERISA"). To establish

17   Article III standing, a plaintiff must also prove sufficient facts to show a "particularized" injury;

18   that is, "the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at

19   560 n.1; *see id.* at 560–61 (injury in fact is an "irreducible constitutional minimum" that must be

20   demonstrated by facts, not bare, conclusory allegations).

21         Plaintiffs do not seek to establish, and indeed cannot establish on the record, the concrete

22   and particularized injury required by Article III. Instead, Plaintiffs claim the existence of abstract

23   violations of the law without specifying what actual, concrete harm this conduct caused. Indeed,

24   they affirmatively disavow any need to prove more than an abstract legal violation. In the absence

25   of evidence that the alleged conduct caused a concrete injury in fact to each Plaintiff and class

26   member, Plaintiffs seek nothing more than an advisory opinion about whether the guidelines

27   violate ERISA plan terms.

28         At best, Plaintiffs identify the *possibility* of injury. In their fiduciary duty claim, Plaintiffs

UNITED BEHAVIORAL HEALTH'S MOTION FOR SUMMARY
JUDGMENT; CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS

1    speculate that UBH's purported misconduct *might* have led UBH to improperly deny a claim.

2    (*See* FAC, ECF No. 39, at 66:9–12.) Similarly, Plaintiffs' experts contend that UBH "could have"

3    denied claims based on overly restrictive interpretations of the guidelines, but do not do the work

4    to identify and opine on any such wrongful denial. (*See* Plakun Tr., Ex. 27, at 27:7–28:19;

5    Chenven Tr., Ex. 26, at 264:1–10; Fishman Tr., Ex. 25, at 71:11–13.) This is precisely the

6    conjectural and hypothetical injury the Supreme Court identified as inadequate. For example, Dr.

7    Chenven's opinion that the use of CALOCUS or CASII would have led to different level-of-care

8    determinations was not based on an analysis of Plaintiffs' conditions but, rather, a vague

9    "impression" formed after reviewing limited information. (Chenven Tr., Ex. 26, at 262:5–264:6.)

10   Dr. Chenven admitted that, "[a]s a hypothetical," the use of CASII or CALOCUS could have

11   resulted in the same outcome derived by application of UBH's guidelines. (*Id*. at 264:17–265:1.)

12       It is not enough to speculate that some class members, or some Plaintiffs, may receive

13   additional benefits through reprocessing if it turns out that their earlier denials were caused by the

14   conduct challenged in this case. Plaintiffs must prove that now, or fail for lack of standing.

15   Having made clear that they do not intend to provide evidence of any such concrete individual

16   injury, Plaintiffs cannot demonstrate standing as a matter of law. *See Spokeo*, 136 S. Ct. at 1548.

17              **2.    Plaintiffs Cannot Show an Injury Fairly Traceable to UBH's Allegedly**
18                     **Wrongful Conduct.**

19       As discussed in Sections IV.A and IV.B above, Plaintiffs cannot—and do not intend to—

20   prove a causal link between UBH's allegedly improper guidelines and any specific denial of

21   benefits to the Plaintiffs or class members. Plaintiffs' disavowal of any need to prove

22   traceability—*i.e.*, that the alleged flaws in the guidelines caused any harm to Plaintiffs or the class

23   members, or that the Plaintiffs and class members would have received benefits but for UBH

24   creating and applying its guidelines—is fatal to their claims.

25        **D.    UBH Is Entitled to Summary Judgment on the Claims of Plaintiffs Wit, Wit,**
              **Pfeifer, Holdnak, Muir, Tillitt, Alexander and Driscoll and Similarly Situated**
26            **Class Members Because their Health Plans Explicitly Excluded Coverage for**
              **Services That Are Not Consistent with the Challenged Guidelines, Creating**
27            **an Independent Basis for Coverage Denials.**

28       The Supreme Court has repeatedly emphasized that liability in an ERISA action turns on

1   plan language. *See Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 612 (2013); *U.S.*

2   *Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1548 (2013) ("The plan, in short, is at the center of

3   ERISA."). Both a claim for breach of fiduciary duty and a claim for denial of benefits under

4   ERISA require a showing that the defendant breached an obligation owed under the benefit plan.

5   *See Romberio*, 385 F. App'x at 429 (citing *Hein*, 88 F.3d at 224). There can be no claim under

6   ERISA based on conduct specifically permitted by the benefit plan. *See Biba*, 2010 WL 4942559,

7   at *7 (holding that, among other things, a plaintiff asserting an ERISA denial-of-benefits claim

8   must show that the plaintiff "was wrongfully denied severance pay owed under the Plan").

9       All of Plaintiffs' claims rest on the theory that UBH is required by the terms of the plans

10   to provide coverage for services that is consistent with generally accepted standards of care. (Mot.

11   for Class Certification, ECF. No. 133, at 2:8–20.) But Plaintiffs ignore that many of the plans at

12   issue, including the benefit plans applicable to all but three of the named Plaintiffs and potentially

13   thousands of class members, *separately and independently* provide that coverage is *excluded* if

14   the services are not consistent with the UBH LOCs. It is undisputed that the health plans

15   applicable to Plaintiffs Wit (both David and Natasha), Pfeifer, Holdnak, Muir, Tillitt, Alexander

16   and Driscoll specifically exclude coverage for treatment that is "[n]ot consistent with [UBH's][1]

17   level of care guidelines or best practices as modified from time to time."[2] There can be no ERISA

18   violation when UBH does what it is expressly authorized to do under the plan. Because Plaintiffs'

19   ERISA claims challenge the creation and use of these very guidelines as inconsistent with their

20   plans' terms, UBH is entitled to judgment as a matter of law as to these Plaintiffs and all class

21   members whose plans included substantially similar language.

22

23

24   _____

[1] Some of the plans reference "the MH/SUD administrator's" level of care guidelines and others

25   reference "our" level of care guidelines. Both terms refer to UBH. (Dehlin Tr., Ex. 19, at 156:12–19, 181:12–14.)

26   [2] *See, e.g.*, Ex. 28, at UBHWIT0003720, 725 (Wit); Ex. 29, at WIT_PTFS_0003162, 167

27   (Pfeifer); Ex. 30, at WIT_PTFS_0000576 (Holdnak); Ex. 22, at UBHWIT0001958–959 (Muir); Ex. 31, at UBHWIT0262126 (Tillitt); Ex. 32, at UBHALEXANDER0000928, 933 (Alexander);

Ex. 33, at UBHALEXANDER0043924 (Driscoll).

28

UNITED BEHAVIORAL HEALTH'S MOTION FOR SUMMARY
JUDGMENT; CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1

2

**E.      UBH Is Entitled to Summary Judgment on Claims of the *Wit* State Mandate Class with Respect to Texas Law Because UBH Applied Texas-Specific Guidelines During the Class Period.**

3

On behalf of the "*Wit* State Mandate Class," Plaintiff Brandt Pfeifer alleges that UBH

4

breached fiduciary duties owed to members of fully-insured health benefit plans governed by the

5

laws of four states—Texas, Illinois, Rhode Island, and Connecticut—because those states

6

mandate the use of specific criteria in administering benefits relating to substance use disorders,

7

and UBH purportedly failed to use these state-mandated criteria. Throughout the class period,

8

Texas mandated the use of state-specific Texas Department of Insurance guidelines ("TDI"

9

guidelines) for substance use treatment. Tex. Administrative Code, Title 28, § 3.8011.

10

The undisputed evidence demonstrates that it has been UBH's policy and practice to apply

11

TDI guidelines—not UBH guidelines—to coverage decisions for plans subject to Texas law for

12

the entire class period. (Brennecke Tr., Ex. 17, at 115:7–118:10 (explaining UBH's use of Texas

13

state mandated guidelines)); *see also* Triana Decl., Ex. 2, at 2:7–12.) Indeed, among the sample of

14

110 coverage decisions produced in this case, only two plans were governed by Texas law, and

15

Plaintiffs conceded in their motion for class certification that "UBH used Texas Department of

16

Insurance criteria to adjudicate the claims *as required under Texas state law* . . . ." (Mot. for Class

17

Certification, ECF No. 133, at 13:27 (emphasis added); *see also* Plaintiffs' Ex. F, ECF No. 129-1,

18

at 3 (noting that Texas guidelines used in coverage determination for Sample ID No. 8873).)

19

Plaintiffs offer no evidence that Texas law was violated with respect to any class members. UBH

20

is entitled to summary judgment on the claims of the *Wit* State Mandate class to the extent they

21

rely on a violation of Texas law.

22

**F.      Even If They Could Prove Liability, UBH Is Entitled to Summary Judgment on Plaintiffs' Prayer for a Surcharge Remedy.**

23

24

To be entitled to a surcharge remedy, a plaintiff must offer evidence sufficient to prove at

25

least five elements: "[1] a breach of fiduciary duties by an ERISA trustee, [2] that the violation

26

injured her or him, and [3] that the remedy of surcharge is available for the claimed injury by

27

reference to traditional equitable principles." *Monper v. Boeing Co.*, 104 F. Supp. 3d 1170, 1185

28

(W.D. Wash. 2015); *see also A.F. v. Providence Health Plan*, 173 F. Supp. 3d 1061, 1073 (D. Or.

2016). Further, the beneficiary must show [4] that "the remedy of surcharge could hold the [plan administrator] liable for benefits it gained through unjust enrichment or for harm caused as the result of its breach." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 963 (9th Cir. 2014) (alteration in original and quotation marks omitted) (quoting *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012)). The alleged breach of duty must also [5] "be egregious enough to warrant enforcing a surcharge in favor of the Plaintiffs." *Brooks v. Wapato Point Mgmt. Co. Health*, No. 2:14-CV-00250-LRS, 2015 WL 12683959, at *3 (E.D. Wash. Mar. 11, 2015).

Even if Plaintiffs can somehow prove at trial that UBH breached its obligations under the plans, acted as an ERISA trustee when it did so, and that its breach was sufficiently egregious to warrant a surcharge, the surcharge they seek is not available under traditional equitable principles. Plaintiffs also do not have evidence sufficient to show that the purported breach injured the class members—as discussed above, they do not even plan to make such a showing—or that the proposed surcharge appropriately redresses the alleged loss of benefits for the class members.

### 1.     The Proposed Surcharge Is Not Available Under Traditional Equitable Principles.

Plaintiffs seek surcharge as an equitable remedy under ERISA § 502(a)(3)'s "appropriate equitable relief" language. In *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011), the Supreme Court explained that it has "interpreted the term 'appropriate equitable relief' in § 502(a)(3) as referring to those categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity) were *typically* available in equity." *Id.* at 439 (quotation marks omitted) (quoting *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361 (2006)). "[J]ust as a court of equity would not surcharge a trustee for a nonexistent harm, a fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm—proved (under the default rule for civil cases) by a preponderance of the evidence." *Id.* at 444 (citation omitted). Therefore, the Court concluded, a plan beneficiary must conclusively prove both harm and causation "to obtain relief by surcharge for violations of §§ 102(a) and 104(b)." *Id.* Yet as discussed at length above, Plaintiffs will not offer evidence of harm or causation resulting from the conduct that gives rise to their classwide

CROWELL
& MORING LLP
ATTORNEYS AT LAW

claim for breach of fiduciary duty. Plaintiffs are thus not entitled to a surcharge remedy as a matter of law.

**2.     The Proposed Surcharge Is Not Appropriately Tailored to Redress a Loss Flowing from the Alleged Breach or Prevent Unjust Enrichment.**

The Court also should reject the surcharge proposed by Plaintiffs because it is not sufficiently related to an alleged injury flowing from UBH's alleged breach of fiduciary duty, nor is it appropriately tailored to address UBH's alleged unjust enrichment. "If . . . the relief [a plaintiff] seeks is merely monetary compensation resembling legal damages—such as compensation that would neither redress a loss flowing from United's breach of fiduciary duty nor prevent United's unjust enrichment—the relief sought [is] unavailable as an equitable remedy under § 502(a)(3)." *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 135 (2d Cir. 2015); *see also Krieger v. Nationwide Mut. Ins. Co.*, No. CV 11-01059-PHX-DGC, 2012 WL 1029526, at *6 (D. Ariz. Mar. 27, 2012) ("A surcharge remedy may hold a plan administrator liable for benefits gained through unjust enrichment or for harm caused as the result of its breach.").

Plaintiffs concede their proposed surcharge is not "make whole relief" for costs incurred by class members as a result of denied benefits and have told the Court repeatedly that they will not seek to prove that class members suffered any loss of benefits *because of* the alleged breach. Accordingly, the surcharge—by Plaintiffs' own admission—will not redress any loss of benefits flowing from the alleged breach of fiduciary duty.

Plaintiffs' proposed surcharge also has no reasonable relation to their contention that UBH was unjustly enriched by improperly denying benefit claims based on the guidelines. Rather than seek to disgorge money UBH retained specifically relating to these denials—which would require Plaintiffs to assess the reasons for each benefit determination and prove a causal relationship between their guideline complaints and those decisions—Plaintiffs assert that UBH should not be entitled to retain the monthly fee paid to UBH per member for administering the class members' benefits. These monthly fees are not paid by the class members; the amount of the fee does not vary based on the requests for authorization sought by members; and these fees have no relation

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1    to the actual benefits paid for each member. (*See* Catlin Decl., Ex. 38, at 1:21–26.)

2           Indeed, Plaintiffs contend that UBH should not be able to retain *any* of the revenue it

3    received for administering *any* of the class members' benefits over the course of the *entire* class

4    period because at some point during that seven year period, UBH denied a particular request for

5    coverage for each class member. But Plaintiffs ignore that during this seven-year period, many

6    class members received substantial benefits from UBH's administration of their behavioral health

7    benefits. For "self-insured" class members, the undisputed evidence shows that UBH received

8    REDACTED                        per member per month to administer the behavioral health benefits

9    of the class members. (*Id*. at 1:17–20.) For "fully-insured" class members, the undisputed

10   evidence shows that UBH received REDACTED                        per member per month to both

11   pay for health benefits for the member and provide administrative services. (*Id*.) The undisputed

12   evidence shows that UBH provided substantial benefits on behalf of these class members over the

13   period at issue, often at a cost far above the amount UBH received to administer their coverage.

14   (*See id*. at 1:17–26.)[3]

15          Plaintiffs are unable to offer evidence that disgorgement of all revenue UBH received

16   from its customers for administering each class member's benefits over a seven-year period

17   would remedy the alleged unjust enrichment arising from a single denial of coverage for a service

18   that was determined to be not medically necessary. Because Plaintiffs do not intend to offer any

19   evidence causally connecting the alleged guideline defects with any particular benefit decision,

20   Plaintiffs have no evidence that the surcharge they propose has any connection to any alleged

21   unjust enrichment. For this reason, or any one of the several other independent reasons discussed,

22

23   [3] For example, Plaintiff Holdnak received coverage for care at a residential treatment center over
     a period of 49 days in late 2013 and early 2014. (FAC, ECF No. 39, at 23:13–16, 27:25–28:20).
24   Plaintiff Haffner received coverage for both outpatient sessions with a psychologist and coverage
     for twice-weekly medication management sessions with a psychiatrist (*Alexander* Class Action
25   Compl., 3:14-CV-5337-JCS , ECF No. 1, at 39:22–40:4, 41:3–26.) His challenge here is that after
     a period of time, his coverage was reduced to once-a-month visits. (*Alexander* Class Action
26   Compl., 3:14-CV-5337-JCS , ECF No. 1, at 45:21–15.) In each of these cases, UBH paid more in
     benefits than it received in revenue for the member during the relevant time period. (*Compare*
27   Holdnak Interrogatory Responses, Ex. 34, at 6, *with id.* at 9–15; *compare* Haffner Interrogatory
     Responses, Ex. 35, at 2–3, *with id.* at 155–201.)

28

UNITED BEHAVIORAL HEALTH'S MOTION FOR SUMMARY
JUDGMENT; CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1   UBH is entitled to summary judgment as to Plaintiffs' request for surcharge as a remedy.

2   **V.      Conclusion**

3         For all the foregoing reasons, UBH is entitled to judgment as a matter of law as to all of

4   Plaintiffs' claims, or in the alternative, partial summary judgment as to each of the claims and

5   remedies for which this Court determines there is no genuine issue of material fact such that UBH

6   is entitled to judgment as a matter of law.

7

8   Dated:       May 19, 2017                **CROWELL & MORING LLP**

9                                            */s/ Jennifer S. Romano*

10                                           Jennifer S. Romano

11                                           Attorneys for UNITED BEHAVIORAL HEALTH

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28