PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs and the Classes*
*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS), <br><br> Defendant. | Case No. 3:14-CV-02346-JCS <br> Action Filed: May 21, 2014 <br><br><br> **PLAINTIFFS' TRIAL BRIEF** |
| GARY ALEXANDER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS), <br><br> Defendant. | Case No. 3:14-CV-05337-JCS <br> Action Filed: December 4, 2014 <br><br> Trial Date:     October 16, 2017 <br> Time:     8:30 A.M. <br> Judge:     Hon. Joseph C. Spero <br> Courtroom:     G |

1

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION .................................................................................................1

II.    BACKGROUND ..................................................................................................2

III.   PROCEDURAL ISSUES .....................................................................................3

     A.    Consolidation for Trial.............................................................................3

     B.    Standard of Review ..................................................................................3

IV.    ISSUES THAT NEED NOT BE ADDRESSED AT TRIAL .............................5

     A.    Individualized Facts Concerning Absent Class Members. .....................5

     B.    Incorporation of the LOCGs Into the CDGs ...........................................7

     C.    The Exact Remedies the Court Will Order If Plaintiffs Prove UBH's Liability..............................................................8

V.     PRINCIPAL ISSUES FOR TRIAL ..................................................................10

     A.    What Are the Generally Accepted Standards of Care for Making Level of Care Placement Decisions?.....................................10

     B.    Are UBH's Level of Care Guidelines More Restrictive Than Generally Accepted Standards of Care For Selecting Levels of Care?...............12

     C.    In Developing And Applying Its Guidelines, Did UBH Act Solely In The Interest Of Participants And Beneficiaries And Honor Its Duty of Care?.............14

     D.    UBH's Affirmative Defenses.................................................................15

VI.    CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amato v. Bernard*,
  618 F.2d 559 (9th Cir. 1980) ........................................................................ 19

*Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*,
  270 F.R.D. 488 (N.D. Cal. 2010) .................................................................. 18

*Conkright v. Frommert*,
  559 U.S. 506 (2010) ...................................................................................... 16

*Coppola v. Smith*,
  2015 WL 2127965 (E.D. Cal. May 6, 2015) ................................................... 9

*Demer v. IBM Corp. LTD Plan*,
  835 F.3d 893 (9th Cir. 2016) .......................................................................... 4

*Des Roches v. Cal. Physicians' Serv.*,
  2017 WL 2591874 (N.D. Cal. June 15, 2017) ............................................... 18

*Diaz v. United Agric. Emp. Welfare Benefits Plan &Trust*,
  50 F.3d 1478 (9th Cir. 1995) ........................................................................ 19

*Firestone Tire & Rubber Co. v. Bruch*,
  489 U.S. 101 (1989)......................................................................................... 5

*Gatti v. Reliance Standard Life Ins. Co.*,
  415 F.3d 978 (9th Cir. 2005) .......................................................................... 4

*In re Household Int'l Tax Reduction Plan*,
  441 F.3d 500 (7th Cir. 2006) ........................................................................ 18

*Johnson v. Couturier*,
  572 F.3d 1067 (9th Cir. 2009) ........................................................................ 1

*Jones v. Kodak Med. Assistance Plan*,
  169 F.3d 1287 (10th Cir. 1999) .................................................................... 19

*Kearney v. Standard Ins. Co.*,
  175 F.3d 1084 (9th Cir. 1999) ................................................................. 3, 15

*Leon v. Standard Ins. Co.*,
  2016 WL 768908 (C.D. Cal. Jan. 28, 2016) ................................................. 18

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996) ...................................................................................... 20

*Metropolitan Life Ins. Co. v. Glenn*,
  554 U.S. 105 (2008) ................................................................................ 4, 15

*Morais v. Cent. Beverage Corp. Union Emps.' Supplemental Ret. Plan*,
  167 F.3d 709 (1st Cir. 1999) ........................................................................ 17

*Moyle v. Liberty Mut. Retirement Ben. Plan*,
  823 F.3d 948 (9th Cir. 2016) ........................................................................ 16

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Income Plan*,
  85 F.3d 455 (9th Cir. 1996) ..................................................................... 3, 19

*Sias v. City Demonstration Agency*,
  588 F.2d 692 (9th Cir. 1978) ......................................................................... 9

*State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*,
  425 F.3d 708 (9th Cir. 2005) ......................................................................... 9

*Stephan v. Unum Life Ins. Co. of Am.*,
  697 F.3d 917 (9th Cir. 2012) ......................................................................... 4

*Upadhyay v. Aetna Life Ins. Co.*,
  2014 WL 186709 (N.D. Cal. Jan. 16, 2014), *aff'd*, 645 F. App'x 569 (9th Cir. 2016) ........... 17

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996) ...................................................................................... 16

**Statutes**

215 Ill. Comp. Stat. 5/370c (2017) .................................................................. 14

27 R.I. Gen. Laws § 27-38.2-1(g) ................................................................... 14

28 Tex. Admin. Code § 3.8011 ........................................................................ 14

29 U.S.C. § 1002(21)(A)(iii) ............................................................................ 19

29 U.S.C. § 1104 ..................................................................... 3, 14, 15, 16

29 U.S.C. § 1110(a) ......................................................................................... 18

29 U.S.C. § 1132(a)(1)(B) ............................................................................... 16

29 U.S.C. § 1132(a)(3) .................................................................................... 16

Conn. Gen. Stat. Ann. § 38a-591c ................................................................. 14

**Rules**

Fed. R. Civ. P. 15(a) ....................................................................................... 9

Fed. R. Civ. P. 15(b)(1) ............................................................................................ 9

Fed. R. Civ. P. 54(c) ............................................................................................... 9

**Treatises**

1 Newberg on Class Actions §1:1 (5th ed. 2011) ..................................................... 6

Pursuant to the Court's Case Management and Pretrial Order dated July 28, 2017, Plaintiff-Class Representatives David and Natasha Wit, Lori Flanzraich, Cecilia Holdnak, Brian Muir, Linda Tillitt, Brandt Pfeifer, Gary Alexander, Michael Driscoll, David Haffner, and Corinna Klein (collectively, "Plaintiffs") submit this Trial Brief.

## I.   INTRODUCTION

The commercial health insurance market in the United States places great power in private companies like Defendant United Behavioral Health ("UBH") to determine who gets coverage for what types of treatment, and for how long. The principal backstop that prevents claims administrators from running roughshod over the rights of health plan members and beneficiaries are the federal courts, through their jurisdiction to enforce ERISA fiduciary duties, which are "the highest known to the law." *Johnson v. Couturier*, 572 F.3d 1067, 1077 (9th Cir. 2009) (citation omitted). Plaintiffs in these cases were each told by behavioral health providers (psychiatrists and clinical psychologists) that they or their family members needed treatment at one or more of three levels of care: residential, intensive outpatient, or outpatient. Plaintiffs' plans required UBH, in determining whether to approve coverage at the prescribed level of care, to apply standards consistent with generally accepted standards of care. But UBH overrode their providers' determinations, and denied coverage, pursuant to the level of care criteria contained in its Level of Care Guidelines ("LOCGs") and incorporated in its Coverage Determination Guidelines ("CDGs") (collectively, UBH's "Guidelines").

When an ERISA fiduciary like UBH is required to apply a particular standard in deciding requests for coverage, it violates its fiduciary duties and abuses its discretion if it applies a different, more restrictive standard. *See, e.g.*, Order Granting in Part & Denying in Part UBH's Mot. Summ. J. 21-22, ECF No. 286 ("Summ. J. Order"). It also violates its fiduciary duties if it fails to act solely in the interest of its participants and beneficiaries and/or breaches its duty of care. Plaintiffs' two claims (breach of fiduciary duty and wrongful denial of benefits) challenge UBH's violations of its duties under ERISA. UBH's Guidelines are deeply and fundamentally flawed, in holistic and interrelated ways, ranging from their narrow focus on short-term, acute

conditions (typified by UBH's "Why Now" framework) even though many behavioral health conditions are chronic in nature, to their failure to account for co-occurring behavioral and medical conditions, which are widely recognized as fundamental to deciding appropriate treatment. As the Court has recognized, deciding the merits of Plaintiffs' claims is straightforward. The trial will focus principally on three questions: (1) how, under generally accepted standards of care, a patient's level of care should be selected; (2) whether UBH's Guidelines accurately reflect generally accepted standards of care; and (3) whether UBH, in developing and applying its guidelines, acted solely in the interest of participants and beneficiaries.

## II.    BACKGROUND

As the Court has explained, Plaintiffs' claims are straightforward: "in essence, that UBH breached its fiduciary duty and abused its discretion by developing and applying Guidelines that were more restrictive than either: 1) the generally accepted standards the insurance plans required UBH to follow (the Guideline Classes); or 2) the applicable standards under state law (the *Wit* State Mandate Class)." Order Granting Mot. For Class Certification, 30:17-21, ECF No. 174 ("Class Cert. Order").

In their portions of the parties' Proposed Final Pretrial Order, Plaintiffs have set forth in more detail the elements of each of their claims, the relief Plaintiffs seek, the Court's prior findings of fact, and the factual issues remaining to be tried. *See* Proposed Final Pretrial Order at §§ I.A.1, II.A., IV.A. Plaintiffs have also set forth in their Proposed Findings of Fact and Conclusions of Law the key facts they intend to prove at trial and the legal conclusions the Court should draw from those facts. Rather than reiterating those recitations here, Plaintiffs incorporate by reference their sections of the Proposed Final Pretrial Order and their Proposed Findings of Fact.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   PROCEDURAL ISSUES

### A.   Consolidation for Trial

The *Wit* complaint was filed May 21, 2014, and relates to residential treatment of mental health conditions and substance use disorders. The *Alexander* complaint was filed December 4, 2014, challenging the Guidelines related to outpatient and intensive outpatient treatment. Since January 22, 2015, the two cases have been informally consolidated for discovery as related cases. Order Granting Plaintiffs' Administrative Motion to Relate Case Nos. 14-cv-2346 and 14-cv-5337, *Alexander* ECF No. 19. The parties will be filing a joint motion to formally consolidate the two cases for trial pursuant to Federal Rule of Civil Procedure 42(a).

### B.   Standard of Review

The standard of review on Plaintiffs' breach of fiduciary duty claim (Claim One) is straightforward: UBH either did, or did not, discharge its duties "with . . . care, skill, prudence, and diligence," "solely in the interest of the participants and beneficiaries," and "in accordance with the documents and instruments governing the plan." *See* 29 U.S.C. § 1104(a)(1).

As to Plaintiffs' wrongful denial of benefits claim (Claim Two), the Court need not decide, before trial, the precise formulation of the standard of review, because evidence offered at trial may alter that standard. The usual standard of review on an ERISA denial of benefits claim is "abuse of discretion." *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Income Plan*, 85 F.3d 455, 458 (9th Cir. 1996). Under that standard, Plaintiffs will succeed on Claim Two if they establish that the standard UBH applied to decide Plaintiffs' requests for coverage (*i.e.*, the standard set by its Guidelines' level-of-care criteria) was more restrictive than the standard required by Plaintiffs' plans (*i.e.*, generally accepted standards of care). *See id.* ("An ERISA plan administrator abuses its discretion if it construes provisions of the plan in a way that 'conflicts with the plain language of the plan.'") (citation omitted). After all, "[t]he administrator of an employee welfare benefit plan has no discretion to flout the fiduciary obligations imposed by ERISA, or to deny benefits in contravention of the plan's plain terms." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1102 (9th Cir. 1999) (citation and alterations omitted).

Plaintiffs also intend to prove, however, that (a) UBH had a structural conflict of interest when it developed its Guidelines (because, as to much of its business, UBH is responsible for paying any approved benefits from its own revenues), and that, moreover, (b) UBH permitted its financial interests, in particular its efforts to minimize "benefit expense," to influence the coverage criteria in its Guidelines, both for fully insured plans, for which UBH pays the benefits, and administrative-services-only ("ASO") plans, for which UBH has every motive to decrease benefit payments in order to please current customers and attract new ones. Evidence of either type of conflict will "weigh[] as a factor in determining whether there is an abuse of discretion." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008). In applying the abuse of discretion standard of review, "the degree of skepticism with which [courts] regard a plan administrator's decision when determining whether the administrator abused its discretion varies based upon the extent to which the decision appears to have been affected by a conflict of interest." *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012). "The weight of this factor depends upon the likelihood that the conflict impacted the administrator's decisionmaking." *Id.* As a practical matter, such evidence means the standard of review is properly formulated as "abuse of discretion with skepticism." *Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 900 n.3 (9th Cir. 2016). In effect, proof of a conflict of interest can tip the scales in favor of a finding of abuse of discretion if the Court finds that two alternatives are equally reasonable. *See Glenn*, 554 U.S. at 116-17 (holding that a conflict of interest is "one factor among many that a reviewing judge must take into account," and "any one factor will act as a tiebreaker when the other factors are closely balanced").

Alternatively, the Court may conclude that the evidence establishes that UBH engaged in such "flagrant" violations of its ERISA obligations as to require application of a *de novo* standard of review. *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir. 2005). In that case, UBH is not entitled to any deference whatsoever, and the Court decides *de novo* whether UBH's Guidelines are consistent with generally accepted standards of care. *Firestone*

*Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989) (explaining that under *de novo* review, courts "construe terms in [plans] without deferring to either party's interpretation").

The Court, however, need not and should not decide now the precise formulation of the standard of review. Whether the evidence will support the application of "skepticism," or even *de novo* review, necessarily depends on the Court's findings based on the evidence at trial. But given the nature of Plaintiffs' claims, the standard of review is unlikely to affect whether Plaintiffs are entitled to relief. Nor is it clear that the Court will ever have to definitively determine whether "skepticism" or "*de novo*" applies, because if Plaintiffs prove that the Guidelines are more restrictive than generally accepted standards of care, then they will have proven an abuse of discretion and will prevail under the usual formulation.

## IV.   ISSUES THAT NEED NOT BE ADDRESSED AT TRIAL

Based on the parties' exchange of draft filings and UBH's assertions at the in-person meet and confer on September 1, 2017, it appears UBH intends to try certain matters that the Court has previously resolved. As explained further below, the Court should not re-open these issues.

### A.   Individualized Facts Concerning Absent Class Members.

When the Court granted class certification, it determined, among other things, that by adjudicating the Named Plaintiffs' claims, it would *by definition* also be adjudicating the class claims. That is because, in addition to finding that the Named Plaintiffs were adequate class representatives, Plaintiffs' claims satisfied both the commonality and typicality requirements of Rule 23:

> <u>Commonality</u>: "[W]hether Plaintiffs are entitled to the requested remedy – adoption of new Guidelines that are consistent with generally accepted standards and/or state law and reprocessing of claims that were denied under the allegedly defective guidelines – can be addressed on a common basis." Class Cert. Order at 31:5-8.

> <u>Typicality</u>: "With respect to the Guideline Classes, the named Plaintiffs who seek to represent those classes (all of the named Plaintiffs except for Brandt Pfeifer), like the members of those

> classes, are covered by insurance plans that require coverage consistent with generally accepted standards of care but were denied coverage by UBH under Guidelines that Plaintiffs allege are more restrictive than generally accepted standards of care. . . . Similarly, the named Plaintiff who seeks to represent the *Wit* State Mandate Class, Brandt Pfeifer, asserts a claim that UBH denied coverage under its own Guidelines instead of the allegedly broader standards mandated by State law, just as do the members of the *Wit* State Mandate Class." *Id.* at 34:21-28.

On several occasions, including in its portion of the Proposed Pretrial Order, UBH has suggested that, at trial, Plaintiffs must prove not only that their own denials were wrongful, but also prove with individualized evidence that each class member's denial was wrongful. That is, UBH repeatedly suggests that Plaintiffs must prove more at trial than that they are entitled to relief on their claims. *See, e.g.*, Proposed Pretrial Order at § I.B.2 ("UBH contends that it did not . . . issue arbitrary and capricious benefit decisions to Plaintiffs *or class members* by using the Guidelines"; "Plaintiffs will not be able to satisfy their burden of proof as to each element of each of their claims *on a class-wide basis*"; "*Class members' claims* are barred to the extent they did not exhaust their administrative remedies under their Plans") (emphases added).

"Class actions are a form of representative litigation" in which "[o]ne or more class representatives litigate on behalf of many absent class members[]." 1 Newberg on Class Actions §1:1 (5th ed. 2011). UBH's recurrent references to the "class members' claims" and similar references are a distraction, and apparently part of UBH's efforts to make the trial far more complicated than it needs to be and to repeatedly re-litigate this Court's class certification decision. There simply is no relevant distinction between the named Plaintiffs' claims and the "class members' claims." The claims the Plaintiffs are pursuing—they were denied RTC, IOP and OP coverage under the Guidelines—*are* the claims that have been certified. After all, the class—*by definition*—is made up of persons whose requests for coverage of RTC, IOP or OP treatment were denied "based on UBH's [Guidelines]."[1]

---

[1] That is also why evidence related specifically to absent class members should be excluded. *See* Plaintiffs' Motion in Limine No. 1 to Exclude Evidence Specific to the Benefit Claims of Absent Class Members.

In short, each time UBH argues that there is something Plaintiffs have to prove at trial that they would not have to prove in an individual case, the Court should see such arguments for what they are: irrelevant arguments as to the claims asserted and the classes certified and, at best, thinly veiled decertification motions. If UBH comes upon new evidence, whether at trial or otherwise, that would support a decertification motion, it is free to request leave to file such a motion. But the trial is not, and should not be, about whether the Court's class certification order was correct. It was correct, but for purposes of trial the correctness of that decision is irrelevant. Instead, this trial is, finally, about the merits of Plaintiffs' claims.

**B.      Incorporation of the LOCGs Into the CDGs**

The Court has previously found, as a matter of fact, that "[a]ll of the CDGs at issue in this case incorporated the LOCs." *See* Summ. J. Order at 2:23-32 (citing deposition of Andrew Martorana, M.D. at 76-77). As set forth in more detail in Plaintiffs' Proposed Findings of Fact, the parties have stipulated as to which version of the LOCGs is referenced in each CDG. *See* Pls.' Proposed Findings of Fact and Conclusions of Law at § II.C. *See also Wit* Stipulations of Fact, ECF No. 257 ("Guideline Stipulation"). Thus, to the extent the Court finds any particular LOCG to be more restrictive than generally accepted standards of care or inconsistent with state law— and Plaintiffs intend to prove that *all* versions were—the parties' stipulation makes clear exactly which CDGs were also overly restrictive as a result.

Nevertheless, UBH continues to dispute whether *any* CDGs, in fact, incorporate the LOCGs, and contend that this issue remains to be tried. Guideline Stipulation 2:1-2 (UBH contending that the stipulated CDGs do not "incorporate the entirety of the referenced LOCG(s)" or "warrant imposing all the findings about the referenced LOCG(s) onto the CDG"). This is improper, and a waste of the Court's and the parties' time and resources.[2] For that reason,

---

[2] Indeed, UBH refused to stipulate to incorporation even where it admits that the CDGs *copied verbatim* the LOCGs' level of care criteria or included a hyperlink cross-reference to the LOCGs themselves. *See* Guideline Stipulation at ¶ 30(g), (h). Positions such as these have no justifiable basis and only serve to waste time.

1   Plaintiffs have not included incorporation in their version of Section IV of the Joint Proposed

2   Final Pretrial Order, addressing factual issues remaining to be tried.

3        Although Plaintiffs do not agree that there is any need for the Court to revisit its prior

4   factual finding, the incorporation issue is straightforward. If necessary, Plaintiffs will prove,

5   again, at trial that the CDGs in Groups 1 through 7 incorporate the corresponding LOCGs. The

6   evidence establishing these facts will consist primarily of (a) testimony from UBH witnesses

7   unequivocally admitting that the CDGs incorporate the LOCGs and (b) the parties' Guideline

8   Stipulation, which sets forth the specific incorporation references contained in the CDGs

9   themselves (the "incorporation language").[3]

10       **C.     The Exact Remedies the Court Will Order If Plaintiffs Prove UBH's Liability**

11       In the course of preparing and conferring on the parties' joint pretrial filings, UBH has

12   suggested that Plaintiffs' entitlement to relief is somehow circumscribed by the exact wording of

13   the allegations and prayer for relief in the Complaints. UBH takes issue with the fact that

14   Plaintiffs do not break down the relief requested on a count-by-count basis, apparently on the

15   theory that Plaintiffs can now obtain certain relief only in relation to particular counts of the

16   Complaints. UBH's position is not consistent with the facts or the law.

17       First, each of the operative complaints broadly alleges, in Counts III and IV, that

18   Plaintiffs and class are entitled to enjoin UBH's wrongful "acts and practices" and to obtain

19   "appropriate equitable relief." *See*, *e.g.*, *Wit* First Amended Complaint (ECF No. 39) ¶¶ 211, 216

20   & p. 66; *Alexander* Class Action Complaint (ECF No. 1) ¶¶ 147, 152. Moreover, each of the

21   operative complaints includes, in the last paragraph of the prayer for relief, a request for "such

22   other and further relief as is just and proper." *Wit* ECF No. 39 at p. 66; *Alexander* ECF No. 1 at

23   p. 52. Those allegations, along with Plaintiffs' more specific prayers for relief, are more than

24

25   _____

26   [3]  The parties stipulated that there are only eight types of incorporation language, Guideline
     Stipulation at ¶ 30, and further stipulated as to which CDGs contain each type. *See id.* at Ex. A
27   ("Level of Care Guideline References" column). Thus, there is no dispute as to where each type
     of language appears.

28

1   sufficient to put UBH on notice that Plaintiffs intend to seek all relief to which they are entitled

2   under ERISA.

3       Second, Rule 54(c) states that every final judgment (other than a default judgment)

4   "should grant the relief to which each party is entitled, *even if the party has not demanded that*

5   *relief in its pleadings*." Fed. R. Civ. P. 54(c) (emphasis added). *See also Coppola v. Smith*, 2015

6   WL 2127965, at *3 (E.D. Cal. May 6, 2015) ("Therefore, a court may award relief not prayed for

7   in a complaint."); *id*. at *4 ("If the proper evidentiary showing is made at the trial level, and as

8   long as such relief is available through one of Cal Water's pled causes of action, Cal Water could

9   obtain this relief even if the SAC and the answer thereto had never been filed."); *State of Idaho*

10  *Potato Comm'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 720 (9th Cir. 2005) ("[T]he

11  district court may award relief not prayed for under Federal Rule of Civil Procedure 54(c).");

12  *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978) ("Sias contends, and the

13  City concedes, that the trial court erred in concluding that Sias' failure to request reinstatement in

14  his complaint barred the court from considering such relief."). Thus, if Plaintiffs prove UBH's

15  liability, they will be entitled to any relief the Court finds available under the statute, regardless

16  of the specific wording of their prayer for relief.

17      Third, even if the Court found some defect in the Complaints, Rule 15(a) liberally allows

18  for pretrial amendment of pleadings. *See* Fed. R. Civ. P. 15(a). Rule 15(b)(1) also "freely

19  permit[s]" amendment *during trial* to embrace issues/evidence outside the pleadings "when

20  doing so will aid in presenting the merits" and there is no prejudice to the opposing party. Fed.

21  R. Civ. P. 15(b)(1). UBH certainly cannot argue prejudice, as it has long been on notice as to the

22  nature of the relief Plaintiffs seek in this action.

23

24

25

26

27

28

In short, the Court need not devote time and resources to parsing whether Plaintiffs pled their prayer for relief exactly right. Instead, the Court should determine, only after trial, what relief Plaintiffs and the class are entitled to under the statute.[4]

## V.   PRINCIPAL ISSUES FOR TRIAL

There are only a handful of principal issues that remain for trial.

### A.   What Are the Generally Accepted Standards of Care for Making Level of Care Placement Decisions?

As discussed above, the Plaintiffs' plans, like those of the class members, "required as one (though not the only) condition of coverage that the mental health or substance use disorder treatment at issue must be consistent with generally accepted standards of care." Summ. J. Order 2:17-20. UBH developed its LOCGs purportedly to convert that standard into "criteria" for its clinicians to follow when making clinical coverage determinations. The Guidelines themselves make this clear. *See, e.g.*, Trial Ex. 5 (2015 LOCG) at 6 ("Care Advocates use the *Level of Care Guidelines* when making medical necessity determinations . . . . Services are medically necessary when they are provided . . . [among other things] [i]n accordance with Generally Accepted Standards of Medical Practice."). In other words, as this Court has already found, UBH's LOCGs were required to be consistent with generally accepted standards of care.

Thus, the first question for the Court will be: Under generally accepted standards of care in the behavioral health community, what factors should be taken into account in deciding on the appropriate level of care placement for a patient? What factors are specifically relevant to whether a patient with a mental health condition and/or substance use disorder should receive treatment at the residential, intensive outpatient, or outpatient levels of care?

Plaintiffs' experts will explain that generally accepted standards of care require that many considerations beyond acuity be taken into account in determining the proper level of care for treatment, including chronicity, comorbidity, recovery environment, patient age and motivation,

---

[4] Plaintiffs do not contend that they are still entitled to seek a surcharge, which the Court dismissed at summary judgment. Although Plaintiffs reserve all rights to appeal that order, Plaintiffs have not included the surcharge remedy in the relief they intend to seek after trial.

and history of interventions. Dr. Eric Plakun, who is the Associate Medical Director at the Austen Riggs Center in Stockbridge, Massachusetts, a highly respected psychiatric hospital and residential treatment center, will focus on these issues in the context of mental health treatment for adults. Dr. Marc Fishman, who co-authored both editions of the ASAM Criteria (2001 and 2013), will focus on generally accepted standards for selecting levels of care for persons with substance use disorders and co-occurring conditions. Dr. Mark Chenven, who co-authored the Child and Adolescent Level of Care Utilization System ("CALOCUS") and the Child and Adolescent Service Intensity Instrument ("CASII"), will focus on considerations specific to children, adolescents, and transition-age youth (roughly through age 24).

There is no dispute that generally accepted standards of care are reflected in a range of sources. UBH's sole retained expert on clinical and guideline-related matters, Dr. Thomas Simpatico, testified at deposition that generally accepted standards are articulated not only in "peer-reviewed literature," but also "expert guidelines" and "professional society observations." Simpatico Dep. 61:7-15, 62:5-18 (Apr. 28, 2017).

The parties also agree that the level of care criteria in the ASAM Criteria, LOCUS CALOCUS, and CASII all are consistent with generally accepted standards of care. UBH has not disputed this fact to date, and its experts, including Dr. Simpatico, are committed on this issue. *See*. *e.g.*, *id.* 64:7-65:9. *See also id.* 142:6-16 (explaining that "the various factors that LOCUS takes into account" are "the proper set of factors . . . in deciding level of care"); 233:12-15 (explaining that "[t]he breadth of consideration[s]" that are "reflected in the six [ASAM] assessment areas are all important considerations in selecting level of care").

Indeed, the parties largely agree on not only *where to look* to understand what generally accepted standards of care require, but also what those standards *provide*—which is interesting, given the ways in which UBH's Guidelines both (a) fail to take into account relevant factors, and (b) incorporate criteria that should *not* be a condition for RTC, IOP or OP coverage. *See* § V.B, *infra*. Even UBH's retained expert, Dr. Simpatico, agrees on what generally accepted standards require. *See, e.g.*, Simpatico Dep. 56:13-14 ("Many behavioral health conditions are understood

as chronic illnesses."); *id.* 34:22-35:7 ("[C]o-occuring psychiatric [and/or substance use] conditions" are a "fundamental part" of "deciding what treatment a person needs."); *id.* 114:10-22 (A patient's "[s]igns and symptoms" are only one "component of understanding a condition" and "are not de facto indicative of a particular aspect of a patient's presentation.").

In short, because the plans UBH administers require it to make clinical coverage decisions consistent with generally accepted standards of care, UBH's Level of Care Guidelines were required to take into account many considerations, and should not have required that any singular factor, such as acute changes in signs and symptoms, be a prerequisite for coverage of treatment.

**B.     Are UBH's Level of Care Guidelines More Restrictive Than Generally Accepted Standards of Care For Selecting Levels of Care?**

Plaintiffs will establish not only what generally accepted standards of care provide, but also that UBH's level of care criteria fell below these generally accepted standards in four principal and interconnected ways. These flaws made the Guidelines, as a whole, fundamentally more restrictive, and made it more likely that a claim would be denied.

**First**, the Guidelines required a showing of acute crisis necessitating the level of care requested, and once the crisis passed, the member was no longer eligible for continued coverage. This narrow focus on acuity negated consideration of chronic conditions and symptoms and inherently drove members towards lower levels of care, or ensured they received no coverage at all. Sometimes UBH framed the focus as on "presenting problems," other times on so-called "why now" factors, a concept that UBH adopted from literature on "crisis intervention." This single-minded focus on providing coverage only when patients had short-term, acute symptoms, rather than through treatment of longer-term, underlying conditions, is far more restrictive than generally accepted standards of care.

**Second**, UBH's Level of Care criteria failed to consider co-occurring medical and behavioral conditions as an aggravating factor that could necessitate treatment in a more intensive level of care. UBH took into account whether co-morbid conditions could be "safely

managed." But it omitted from its level of care criteria any evaluation of whether co-morbid conditions could be *effectively treated* in the requested level of care or whether co-morbid conditions complicated or aggravated the Member's situation such that a safe and effective treatment plan required a more intensive level of care than might otherwise be appropriate.

**Third**, UBH's Level of Care criteria precluded coverage for services to prevent deterioration or maintain a level of functioning, but rather required an expectation that services would cause a patient to continually progress toward recovery. UBH's Guidelines also cover treatment only if the member or provider can show that UBH's narrow conception of "improvement" (*i.e.*, "reduction or control" of the member's "acute signs and symptoms" that "necessitated treatment") will be achieved "within a reasonable period of time." But not only does "reasonable expectation of improvement," under generally accepted standards of care, include "maintaining a level of function," particularly for persons with long-term chronic conditions. It also includes treatment, particularly treatment by skilled providers (as opposed to, say, assistance with activities of daily living), to prevent a patient from deteriorating upon discharge.

**Fourth**, UBH failed to adopt any level-of-care criteria tailored to the unique needs of children and adolescents. Under generally accepted standards of care, as reflected for example in the CASII, selecting the appropriate level of care for children requires considerations that are different than, and additional to, those that are relevant for adults. For example, a child's level of development is critical to determining whether a particular level of care will be effective, just as it is critical to take into account the level of parental and community support the child has at home. UBH's Guidelines bear little to no resemblance to these generally accepted standards.

Plaintiffs will prove these interconnected flaws in the Guidelines principally through their experts, Drs. Plakun, Fishman and Chenven, who will explain the ways in which the Guidelines' express criteria fail to take into account relevant factors, and incorporate criteria that should *not*

be prerequisites for RTC, OP or IOP treatment.[5] Plaintiffs' experts also will refer to the named Plaintiffs' administrative records and circumstances to illustrate the ways in which the Guidelines are more restrictive than generally accepted standards of care and rendered their denials wrongful.

The Court will readily find at trial that UBH's Guidelines are more restrictive than generally accepted standards of care or the applicable state-mandated standards. That finding alone will entitle Plaintiffs to relief on both their claims: on **Claim Two**, their wrongful denial of benefits claim, because, by applying a standard more restrictive than that provided by Plaintiffs' plans, UBH's denial of Plaintiffs' requests for coverage was wrongful; and on **Claim One** because UBH had a fiduciary duty to comply with plan terms, 29 U.S.C. § 1104(a)(1)(D), and to discharge its duties "with . . . care, skill, prudence, and diligence," *id.* § 1104(a)(1)(B), which it cannot have done if it violated the plans it was administering.[6]

---

[5] For largely the same reasons, UBH violated the state laws of Connecticut and Texas. Connecticut requires that UBH, if it does not use the ASAM Criteria, must use "clinical review criteria" that are "consistent with" the ASAM Criteria. Conn. Gen. Stat. Ann. § 38a-591c. Texas also mandates particular SUD criteria, issued by the Texas Department of Insurance (28 Tex. Admin. Code § 3.8011). Its violation of Illinois and Rhode Island law was even more straightforward. Those states have required (Illinois since August 2011, and Rhode Island since July 10, 2015) that UBH use the ASAM Criteria themselves. 215 Ill. Comp. Stat. 5/370c (2017) ("Medical necessity determinations for substance use disorders shall be made in accordance with appropriate patient placement criteria established by the American Society of Addiction Medicine."); 27 R.I. Gen. Laws § 27-38.2-1(g) ("Payors shall rely upon the criteria of the American Society of Addiction Medicine when developing coverage for levels of care for substance-use disorder treatment.").

[6] Plaintiffs also have alleged an independent entitlement to relief in Claim One based on UBH's breaches of its duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Much of the evidence of UBH's breach of its duty of care is the same evidence that will establish that UBH's Guidelines are more restrictive than generally accepted standards of care.

### C.   In Developing And Applying Its Guidelines, Did UBH Act Solely In The Interest Of Participants And Beneficiaries And Honor Its Duty of Care?

Plaintiffs have also alleged that UBH labored under a conflict of interest, and permitted its Guideline-development process to be infected by the company's incessant efforts to minimize "benefit expense." As discussed above, as to a substantial portion of its business, UBH not only administers behavioral health benefits, but pays benefits—it bears "risk." The evidence of UBH's conflict of interest is relevant to Claim One because Plaintiffs also alleged that UBH violated its duty to act "solely in the interest of the participants and beneficiaries." *See* 29 U.S.C. § 1104(a)(1). And it is relevant to Claim Two because, as discussed above, UBH's conflict will "weigh[] as a factor in determining whether there is an abuse of discretion," *Glenn*, 554 U.S. at 115. At trial, Plaintiffs will prove several examples of UBH's conflict of interest and the ways it allowed its financial interests to impermissibly taint its development of its Guidelines. *See generally* Plaintiffs' Proposed Findings of Fact and Conclusions of Law at § IV.B.

### D.   UBH's Affirmative Defenses

UBH has raised a raft of affirmative defenses, which are meritless and will be easily resolved based on the evidence at trial and this Court's prior legal rulings:

**Good faith**. UBH asserts that Plaintiffs' claims are "barred" because "UBH at all times acted in good faith and consistent with reasonable care." Proposed Pretrial Order at § I.B.2.a. Neither "good faith" nor "reasonable care" is the applicable standard under the plans UBH administers. Rather, as this Court has found, the plans require UBH to make decisions consistent with generally accepted standards of care. Any evidence or argument about "good faith" or "reasonable care" is beside the point.

In the parties' in-person meet-and-confer, UBH's counsel suggested that by "good faith" UBH is simply referring to the abuse-of-discretion standard of review. As explained above, the Court need not decide the precise formulation of the standard of review at this point. *See* § III.B, *supra*. In any event, the standard of review emphatically *cannot* be reframed as a matter of "good faith" and "bad faith." UBH's overriding obligation is to comply with the terms of the plans it administers. *See, e.g.*, *Kearney*, 175 F.3d at 1102 (administrator "has no discretion to . . . deny

benefits in contravention of the plan's plain terms"). In fact, in the case on which UBH relies for its purported "good faith" standard, *Conkright v. Frommert*, 559 U.S. 506 (2010), the Supreme Court made clear that "[m]ultiple erroneous interpretations of the same plan provision, *even if issued in good faith*, might well support a finding that a plan administrator is too incompetent to exercise his discretion fairly." *Id.* at 521.

**Standing**. UBH has rehashed the same "standing" arguments on which it based its motion for summary judgment. The Court has already rejected them as a matter of law. Summ. J. Order at 23-25.

**Applicability of 29 U.S.C. § 1132(a)(3)**. Plaintiffs brought each claim under 29 U.S.C. § 1132(a)(1)(B) and, to the extent adequate relief is not available under that provision, under § 1132(a)(3). Those two sections provide as follows:

> § 1132(a)(1)(B): "A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[]."

> § 1132(a)(3): "A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter [including 29 U.S.C. § 1104 ("Fiduciary duties")] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provisions of this subchapter or the terms of the plan[]."

The question whether relief is available under (a)(3) turns on whether another subsection provides "adequate relief for a beneficiary's injury." *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). A plaintiff can bring both an (a)(1)(B) and (a)(3) claim "so long as there is no double recovery." *Moyle v. Liberty Mut. Retirement Ben. Plan*, 823 F.3d 948, 961 (9th Cir. 2016). Here, the only conceivably appropriate time to consider whether granting Plaintiffs relief under (a)(3) would result in "double recovery" is after trial, once the Court has decided on UBH's liability and Plaintiffs' entitlement to all requested relief.

**Waiver**. UBH asserts two preposterous "waiver" defenses. *First*, it asserts that "Plaintiffs and the class members waived their rights to declaratory relief, prospective injunctive relief, and reprocessing to the extent they did not proceed with the treatment that was the subject of the authorization request." Proposed Pretrial Order at § I.B.2.d. In other words, UBH apparently intends to argue that even if UBH violated its fiduciary duties and applied an illegally restrictive standard in denying Plaintiffs' claims, Plaintiffs are entitled to *no* relief, whether retrospective or prospective, declaratory or injunctive, unless, after UBH's illegal denial, they nevertheless went forward and received—at their own expense—the treatment that UBH refused to cover in violation of ERISA. That position is entirely inconsistent with the law. ERISA entitles a Plaintiff, among other things, "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[],"causes of action that are not dependent on what happened *after* the administrator breached its duties. Nor are the substantive rights and procedural protections ERISA confers limited only to relatively more wealthy members and families who have the means to pay out-of-pocket for treatment when coverage is denied.

Moreover, courts apply "heightened scrutiny" when ERISA fiduciaries like UBH assert that a member or beneficiary waived his or her rights under ERISA. *Upadhyay v. Aetna Life Ins. Co.*, 2014 WL 186709, at *4 (N.D. Cal. Jan. 16, 2014), *aff'd*, 645 F. App'x 569 (9th Cir. 2016) (quoting *Morais v. Cent. Beverage Corp. Union Emps.' Supplemental Ret. Plan*, 167 F.3d 709, 712 (1st Cir. 1999)). For such a waiver to be valid, the defendant must prove that the waiver was:

> "knowing and voluntary," by examining the totality of the circumstances, including but not limited to "(1) plaintiff's education and business sophistication; (2) the respective roles of employer and employee in determining the provisions of the waiver; (3) the clarity of the agreement; (4) the time plaintiff had to study the agreement; (5) whether plaintiff had independent advice, such as that of counsel; and (6) the consideration for the waiver.

*Id.* There is no evidence in the record of any such knowing and voluntary waiver by any of the Named Plaintiffs. Finally, this "waiver" theory further fails because any "agreement or

instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty" is "void as against public policy." 29 U.S.C. § 1110(a).

*Second*, UBH argues that Plaintiffs are entitled to no relief—*at all*—if they "terminated their health coverage administered by UBH." This affirmative defense goes way too far. The fact that a Plaintiff is no longer a member of a plan administered by UBH could only conceivably be relevant to his or her entitlement to prospective relief—specifically, Plaintiffs' request for an injunction requiring a change to UBH's Guidelines going forward. A change in Plaintiff's plan does not erase an existing cause of action arising from UBH's past conduct or their entitlement to retrospective relief (including reprocessing) relating to those prior violations. In any event, of course, this affirmative defense has no relevance to Plaintiffs who are still covered by UBH-administered plans, including Plaintiffs Haffner, Driscoll, Muir, Holdnak and Tillitt.

**Exhaustion**. UBH asserts, in its portion of the Proposed Pretrial Order, that "Class members' claims are barred to the extent they did not exhaust their administrative remedies." But Plaintiffs need only show that *they* satisfactorily exhausted administrative remedies – not that all class members also would satisfy an exhaustion requirement. *See, e.g.*, *Des Roches v. Cal. Physicians' Serv.*, 2017 WL 2591874, at *10 (N.D. Cal. June 15, 2017) ("[U]nnamed class members in an ERISA class action need not exhaust their administrative remedies.") (quoting *Leon v. Standard Ins. Co.*, 2016 WL 768908, at *4 (C.D. Cal. Jan. 28, 2016)); *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 270 F.R.D. 488, 494 (N.D. Cal. 2010) ("To begin with, in ERISA suits, absent class members are not required to have exhausted their claims through a plan's internal review procedures so long as the named plaintiff has done so.") (citing *In re Household Int'l Tax Reduction Plan*, 441 F.3d 500, 500-02 (7th Cir. 2006)). And UBH does not dispute that Plaintiffs exhausted administrative remedies.

In any event, as to all Plaintiffs (and class members), the evidence will establish that any obligation to pursue appeals or administrative remedies beyond those they pursued should be excused, because any such efforts would have been futile. As to class members who may not

have exhausted administrative remedies, UBH obviously would not have applied different, more appropriate guidelines if those people had appealed. *See Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980) (exhaustion excused where "resort to the administrative route is futile or the remedy inadequate"); *Diaz v. United Agric. Emp. Welfare Benefits Plan &Trust*, 50 F.3d 1478, 1485 (9th Cir. 1995) ("[F]utility exception . . . is designed to avoid the need to pursue an administrative review that is demonstrably doomed to fail.").

**Conditions Precedent/Subsequent**. UBH first asserts that "[w]ithout evidence that Plaintiffs and the Class were entitled to the benefits at issue" they have not "satisfied the conditions precedent to pursue their claims." As an initial matter, UBH again misstates the elements of Plaintiffs' claim and the questions presented at trial. *See* Proposed Pretrial Order at I.B.1. The Court also has repeatedly rejected this defense as a matter of law, including most recently in denying UBH's summary judgment motion. *See, e.g.*, Summ. J. Order at 21 (explaining that, in *Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan,* 85 F.3d 455 (9th Cir. 1996), "the relevant injury for the purposes of the district court action was the defective *process* that was applied to the determination of the plaintiff's coverage").

UBH also asserts that "obtain[ing] the treatment for which coverage was denied" is a "condition[] subsequent to pursue their claims." As noted above, there is no legal or factual support for imposing such a requirement, which would be contrary to the plain language of ERISA.

**"Settlor" Defense**. UBH's final affirmative defense is that its "[c]reation of guidelines such as the ones at issue here involve the setting of plan terms and is a settlor, not a fiduciary, function." Proposed Pretrial Order at § I.B.2.g (citing *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1292 (10th Cir. 1999)). This defense fails for two independent reasons. First, UBH apparently fails to recognize that it is a "fiduciary" within the meaning of ERISA whenever it is exercising "any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(iii). The evidence will clearly establish that UBH had, and

1   exercised, "discretionary authority or discretionary responsibility" in creating, amending, and

2   applying its Guidelines. Second, UBH cannot possibly prove that it was a "settlor" of the plans

3   that it administers. It administers plans, it does not "adopt, modify, or terminate" them. *See*

4   *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). In short, the Court will readily reject UBH's

5   argument that it is entitled to end-run its statutory fiduciary duties through its "settlor" defense.

6   **VI.    CONCLUSION**

7        For the reasons set forth above, at the conclusion of the trial, Plaintiffs will request that

8   the Court grant the relief set forth in section II.A of the Joint Proposed Final Pretrial Order.

9

10   Dated:  September 6, 2017                    ZUCKERMAN SPAEDER LLP

11                                                */s/ Caroline E. Reynolds*
                                                  Caroline E. Reynolds
12                                                Carl S. Kravitz
                                                  Aitan D. Goelman
13                                                D. Brian Hufford
                                                  Jason S. Cowart
14                                                Adam B. Abelson
                                                  Sara Alpert Lawson
15
                                                  PSYCH-APPEAL, INC.
16                                                Meiram Bendat

17                                                *Attorneys for Class Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28