JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
JEFFREY H. RUTHERFORD (SBN 181695)
jrutherford@crowell.com
ANDREW HOLMER (SBN 268864)
aholmer@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Phone: (213) 622-4750
Fax: (213) 622-2690

NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Phone: (415) 986-2800
Fax: (415) 986-2827

APRIL N. ROSS (admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **DAVID WIT et al.**,<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED BEHAVIORAL HEALTH**,<br><br>Defendant. | Case No. 14-cv-02346 JCS<br>Related Case No. 14-cv-05337 JCS<br><br>**UNITED BEHAVIORAL HEALTH'S TRIAL BRIEF**<br><br>Hon. Joseph C. Spero<br><br>Trial: October 16, 2017, at 8:30 a.m.<br>Courtroom: G, 15th Floor |

1   **GARY ALEXANDER et al.**,

2                          Plaintiffs,

3        v.

4   **UNITED BEHAVIORAL HEALTH**,

5                          Defendant.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. PLAINTIFFS' CLAIMS AND RELIEF SOUGHT ................................................... 3

III. LEGAL STANDARD AT TRIAL ............................................................................ 4

    A.   The Abuse-of-Discretion Standard Applies to Counts I and II Brought Under 29 U.S.C. § 1132(a)(1)(B) ................................................................... 4

         1.   UBH's Interpretation of the Plans Must Be Upheld if it is Based Upon a Reasonable Interpretation of the Plan Terms ................................ 5

         2.   The Abuse-of-Discretion Standard Applies Even in the Face of a Conflict of Interest ..................................................................................... 7

    B.   The Abuse-of-Discretion Standard Applies to Plaintiffs' Counts III and IV Under § 1132(a)(3) ................................................................................... 9

IV. DISCUSSION ............................................................................................................ 9

    A.   Plaintiffs Will Not Prove on a Class-Wide Basis that UBH Owed Class Members a Fiduciary Duty to Develop and Utilize Guidelines that Were Solely Consistent with Generally Accepted Standards of Care ...................... 10

    B.   UBH Did Not Abuse Its Discretion in Developing and Using the Guidelines Because the Guidelines are a Reasonable Interpretation of the Plans ................................................................................................................. 13

         1.   The Guidelines Are a Reasonable and Good Faith Interpretation of Plan Terms and Generally Accepted Standards of Care ........................... 13

         2.   Any Purported Conflict Of Interest Does Not Alter a Finding That The Guidelines Are a Reasonable and Good Faith Interpretation of Plan Terms and Generally Accepted Standards of Care ........................... 17

    C.   Plaintiffs Will Not Prove on a Class-Wide Basis that UBH's Alleged Abuse of Discretion in Interpreting the Plans Caused Harm to the Class ........... 19

    D.   Plaintiffs Will Not Prove on a Class-Wide Basis that the Class Is Entitled to the Injunctive Relief Sought ..................................................................... 21

         1.   Plaintiffs Must Prove at Trial that They Are Entitled to the Specific Injunctions They Seek ............................................................................... 21

         2.   Plaintiffs Will Not Establish the Necessary Element of Irreparable Injury by a Preponderance of the Evidence ............................................. 21

    E.   No Relief Is Available Under Counts III and IV because the Remedies Sought by Plaintiffs Are Otherwise Available Under § 1132(a)(1)(B) ............... 24

V. CONCLUSION .......................................................................................................... 25

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Abatie v. Alta Health & Life Ins. Co.*,
5
   458 F.3d 955 (9th Cir. 2006)................................................................7, 8

6

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004) ...........................................................................5
7

*Apple Inc. v. Psystar Corp.*,
8
   673 F. Supp. 2d 943 (N.D. Cal. 2009) .................................................22

9

*Bailey v. Union Bank Ret. Plan*,
10
   2014 WL 1364910 (C.D. Cal. Apr. 7, 2014) ..........................................5

11

*Bd. of Trustees of Bay Area Roofers Health & Welfare Tr. Fund v. Westech*
   *Roofing*,
12
   No. 12-CV-05655-JCS, 2014 WL 4383062 (N.D. Cal. Sept. 4, 2014)....................10

13

*Black & Decker Disability Plan v. Nord*,
14
   538 U.S. 822 (2003) ...........................................................................6

15

*Boesel v. Chase Manhattan Bank, N.A.*,
   62 F. Supp. 2d 1015 (W.D.N.Y. 1999) ................................................15
16

*Bowman v. U.S. W., Inc.*,
17
   No. CIV. 95-1923-FR, 1997 WL 118437 (D. Or. Mar. 10, 1997)....................20, 24

18

*Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*,
19
   410 F.3d 1173 (9th Cir. 2005)........................................................6, 8, 18

20

*Brosted v. Unum Life Ins. Co. of Am.*,
   421 F.3d 459 (7th Cir. 2005)........................................................10, 19

21

*Burke v. Pitney Bowes Inc. Long-Term Disability Plan*,
22
   544 F.3d 1016 (9th Cir. 2008)........................................................7, 17

23

*Cator v. Herrgott & Wilson, Inc.*,
   609 F. Supp. 12 (N.D. Cal. 1984) ...................................................6, 24
24

*Champion v. Black & Decker (U.S.), Inc.*,
25
   550 F.3d 353 (4th Cir. 2008)............................................................7

26

*Conkright v. Frommert*,
27
   559 U.S. 506 (2010) .......................................................................5, 6, 7

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Corenco Corp. v. Schiavone & Sons, Inc.*,
   362 F. Supp. 939 (S.D.N.Y. 1973) ................................................................10, 21

*Des Roches v. Cal. Physicians' Serv.*,
   No. 16-CV-02848-LHK, 2017 WL 2591874 (N.D. Cal. June 15, 2017) ..............................21

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) .........................................................................................21

*Eden Surgical Ctr. v. Budco Grp., Inc.*,
   No. CV 09-3991 AHM (Ex), 2010 WL 2180360 (C.D. Cal. May 27, 2010) .........................12

*Espencheid v. DirectSat USA, LLC*,
   705 F.3d 770 (7th Cir. 2013) ...............................................................................10

*Firestone Tire & Rubber Co. v. Burch*,
   489 U.S. 101 (1989) ...........................................................................................7

*Forsyth v. Humana, Inc.*,
   114 F.3d 1467 (9th Cir. 1997) .............................................................................25

*Graddy v. Blue Cross BlueShield of Tenn., Inc.*,
   No. 4:09-CV-84, 2010 WL 670081 (E.D. Tenn. Feb. 19, 2010) .........................10, 19

*Grasso Enters., LLC v. Express Scripts, Inc.*,
   809 F.3d 1033 (8th Cir. 2016) ............................................................................21

*Haas Automation Inc. v. Denny*,
   No. 09-CV-8336 CBM (PLA), 2011 WL 13143677 (C.D. Cal., Oct. 14, 2011) ....................22

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
   134 S. Ct. 604 (2013) ........................................................................................12

*Hein v. F.D.I.C.*,
   88 F.3d 210 (3d Cir. 1996) .................................................................................10

*Hinman v. John Alden Life Ins. Co.*,
   No. 08-CV-1070-PK, 2010 WL 466155 (D. Or. Feb. 8, 2010) ..........................8, 24

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999) ....................................................................................12, 13

*Z.D. ex rel. J.D. v. Grp. Health Co-op.*,
   No. C11-1119RSL, 2012 WL 5033422 (W.D. Wash. Oct. 17, 2012) ...............................21

*Jones v. Kodak Med. Assistance Plan*,
   169 F.3d 1287 (10th Cir. 1999) ...........................................................................11

*Katz v. Comprehensive Plan of Grp. Ins.*,
   197 F.3d 1084 (11th Cir. 1999) ...........................................................................25

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Lafferty v. Providence Health Plans*,
     436 F. App'x 780 (9th Cir. 2011) .................................................................5, 6

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
     941 F.2d 970 (9th Cir. 1991).............................................................................22

*Lees v. Munich Reinsurance Am., Inc.*,
     No. 14-2532 (MAS) (TJB) 2016 WL 164611 (D. N.J. Jan. 13, 2016) ...................9

*Lipstein v. UnitedHealth Grp.*,
     296 F.R.D. 279 (D.N.J. 2013) ............................................................................21

*MacDonald v. Pan Am. World Airways, Inc.*,
     859 F.2d 742 (9th Cir. 1988)...............................................................................5

*Marlo v. United Parcel Serv., Inc.*,
     251 F.R.D. 476 (C.D. Cal. 2008) ................................................................10, 23

*Mass. Mut. Life Ins. Co. v. Russell*,
     473 U.S. 134 (1985) ...........................................................................................25

*Metro. Life Ins. Co. v. Glenn*,
     554 U.S. 105 (2008) ...........................................................................5, 7, 8, 18

*Monsanto Co. v. Geertson Seed Farms*,
     561 U.S. 139 (2010) ....................................................................................22, 23

*Moyle v. Liberty Mut. Retirement Ben. Plan*,
     823 F.3d 948 (9th Cir. 2016).............................................................5, 8, 10, 25

*O'Neil v. Ret. Plan for Salaried Emps. of RKO General, Inc.*,
     37 F.3d 55 (2d Cir. 1994).....................................................................................6

*Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*,
     636 F.3d 1150 (9th Cir. 2011).................................................................21, 22, 23

*Patel-Puri v. Metro. Life Ins.*
     Co., No. C-05-0455 MMC, 2008 WL 2609711 (N.D. Cal. June 27, 2008) ...........19

*Rochow v. Life Ins. Co. of N. Am.*,
     780 F.3d 364 (6th Cir. 2015) (en banc)...............................................................25

*Romberio v. Unumprovident Corp.*,
     385 F. App'x 423 (6th Cir. 2009) .................................................................10, 19

*Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income
     Plan*,
     85 F.3d 455 (9th Cir. 1996)..........................................................................22, 25

Crowell
& Moring LLP
Attorneys At Law

*Schultz v. Stoner*,
    308 F. Supp. 2d 289 (S.D.N.Y. 2004) ..................................................................................9

*Skinner v. Northrop Grumman Ret. Plan B*,
    673 F.3d 1162 (9th Cir. 2012) ..........................................................................................19

*St. Paul Mercury Ins. Co. v. Am. Saf. Indem. Co.*,
    No. 12–CV–05952–LHK, 2014 WL 2120347 (N.D. Cal. May 21, 2014) .............................20

*Stockwell v. City & Cty. of San Francisco*,
    No. C 08-5180 PJH, 2015 WL 2173852 (N.D. Cal. May 8, 2015).........................................10

*Taft v. Equitable Life Assur. Soc.*,
    9 F.3d 1469 (9th Cir. 1993)................................................................................................5

*Teen Help, Inc. v. Operating Eng'rs Health & Welfare Trust Fund*,
    No. C 98–2084 VRW, 1999 WL 1069756 (N.D. Cal. Aug. 24, 1999)....................................12

*Tolson v. Avondale Indus.*,
    141 F.3d 604 (5th Cir. 1998)............................................................................................25

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996) ..........................................................................................5, 6, 9, 25

*Williby v. Aetna Life Ins. Co.*,
    __ F.3d __, No. 15-56394, 2017 WL 3482390 (9th Cir. 2017) ...........................................8, 17

*Wright v. Or. Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004)..........................................................................................6, 12

*Zhu v. Fujitsu Grp. 401(K) Plan*,
    No. C-03-1148RMW, 2003 WL 24030329 (N.D. Cal. Sept. 9, 2003) ....................................5

**Statutes**

29 U.S.C. § 1104(a)(1) ..............................................................................................................6

29 U.S.C. § 1132(a)(1)(B) ................................................................................................ *passim*

29 U.S.C. § 1132(a)(3) .................................................................................................... *passim*

**Other Authorities**

Restatment (Third) of Trusts § 50 ........................................................................................7, 15

Restatment (Third) of Trusts § 87 ..........................................................................................14

Crowell
& Moring LLP
ATTORNEYS AT LAW

## I.  INTRODUCTION

Plaintiffs have narrowed this case to a class-wide, facial challenge to 222 Level of Care Guidelines ("LOCGs") and Coverage Determination Guidelines ("CDGs") (collectively, the "Guidelines") created and used by UBH to make coverage determinations for mental health or substance use disorder treatments under employer-sponsored behavioral health benefit plans governed by ERISA ("Plans"). Plaintiffs allege that UBH breached a fiduciary duty and improperly denied benefits to the Class under 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3), because the Guidelines were more restrictive than permitted under the Plans.

It is undisputed that UBH has wide discretion to interpret the Plans. Thus, the Court reviews UBH's interpretation of the Plans in developing and using the Guidelines under the deferential abuse-of-discretion standard. This is the case for all of Plaintiffs' claims, regardless of whether they are styled as "breach of fiduciary duty" or as "denial of benefits" and regardless of whether they are brought under 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3). To prevail in this case on any Count, Plaintiffs must prove on a class-wide basis that the Guidelines are an unreasonable interpretation of the Plans.

At trial, Plaintiffs' experts will likely testify that the Guidelines are too restrictive because they focus too much on "acute" symptoms and progress toward recovery and do not focus enough on issues like chronic symptoms, co-morbid conditions, prevention of deterioration, and distinctions based on age. In contrast, UBH will offer testimony of its independent experts and the Board-certified psychiatrists involved in creating, approving, and applying the Guidelines, who will testify that a focus on acute symptoms and recovery is consistent with sound clinical practice and that the Guidelines do, in fact, provide for its clinicians to take into account numerous individualized circumstances of the member, including chronic symptoms, co-morbid conditions, potential deterioration, and age.

In many ways, the trial will be a classic battle of the experts, with one critical distinction. Because the Court must review UBH's interpretation of the Plans—including the meaning of the term "generally accepted standards of care"—using the deferential abuse-of-discretion standard, it will not be enough for Plaintiffs to persuade the Court that their interpretation of the Plans or

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1   "generally accepted standards of care" is the better one. Nor will it be enough for Plaintiffs to

2   persuade the Court that the Court would have created guidelines different from those created by

3   UBH. Rather, to satisfy this heightened standard, Plaintiffs must show that UBH's interpretation

4   of each Class members' health benefit plan, as reflected in the Guidelines, is illogical,

5   implausible, or unsupported by the factual record.

6        Plaintiffs will not be able to satisfy this heavy burden. While Plaintiffs promote their

7   preferred third-party guidelines, there is no single set of generally accepted standards identifying

8   the appropriate level of care for the wide range of individuals seeking all manner of substance use

9   and mental health treatments. Providers, professional groups, health plans, and governmental

10   entities use a variety of sources, including various third-party guidelines, to determine whether

11   certain treatment is medically necessary or covered under a health benefit plan. None of these

12   sources is *the* generally accepted standard of care. Indeed, because it is so accepted that

13   companies like UBH will create their own set of guidelines, two accreditation organizations have

14   designed a process of creating and updating these company-specific guidelines. UBH followed

15   those practices in developing the LOCGs (including the portions of the LOCGs that Plaintiffs

16   contend are incorporated into the CDGs). Consistent with these accreditation standards, UBH

17   developed and updated the LOCGs with input from external providers and sub-specialty groups,

18   its own clinical leadership, and appropriate clinical oversight committees, including review and

19   approval by multiple Board-certified psychiatrists.

20        The testimony from both Plaintiffs' and UBH's experts will demonstrate that the

21   Guidelines are a reasonable interpretation of the Plans, were created in good faith, and are

22   consistent with generally accepted standards of care. Plaintiffs and their experts may believe

23   UBH should have selected other guidelines or emphasized particular criteria more and other

24   criteria less, but that will not be the relevant question at trial. What matters is whether Plaintiffs

25   can prove that UBH's Guidelines are illogical, implausible, or unsupported by the facts. Plaintiffs

26   cannot do this, and will not prevail in their facial challenge.

27        Plaintiffs will not satisfy their burden of class-wide proof as to each and every element of

28   their claims. They will not prove on a class-wide basis that the Guidelines were developed as part

CROWELL
& MORING LLP
ATTORNEYS AT LAW

of UBH's fiduciary duties. They will not prove on a class-wide basis that the Guidelines are inconsistent with the language in each of the Plans. They will not prove that the alleged "flaws" in the Guidelines caused damage to each of the Class members. And, they will not prove that the injunctive remedies they seek (notably, the "reprocessing" injunctive remedy) will cure a specific irreparable harm to each of the Class members. While this is a class action trial, Plaintiffs have no intention of offering the necessary class-wide evidence to prove the elements of their claims on behalf of the Class. The evidence will support judgment in favor of UBH on all Counts.

## II.     PLAINTIFFS' CLAIMS AND RELIEF SOUGHT

In the operative complaints, Plaintiffs allege four separate counts. Count I alleges a "breach of fiduciary duty" under 29 U.S.C. § 1132(a)(1)(B) (*See Wit* First Am. Compl. ("FAC"), ECF No. 39, at 61–63; *Alexander* Compl., *Alexander* ECF No. 1, at 47–50), which provides an ERISA plan participant a cause of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Count II is similarly pleaded under § 1132(a)(1)(B), but styled as a claim for "improper denial of benefits." (*Wit* FAC, ECF No. 39, at 63–64; *Alexander* Compl., *Alexander* ECF No. 1, at 49.) Counts III and IV are brought under § 1132(a)(3), (*Wit* FAC, ECF No. 39, at 64; *Alexander* Compl., *Alexander* ECF No. 1, at 49–50), which authorizes plan members "to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or . . . obtain other appropriate equitable relief."

The underlying basis for each of Plaintiffs' Counts is identical: Plaintiffs allege that UBH, as claims administrator of each Plan at issue for the Class, misconstrued each Plan by developing Guidelines allegedly inconsistent with generally accepted standards of care, which Plaintiffs say each Plan prohibits. In the complaints, Plaintiffs seek the following relief:

1. pursuant to Count I, or alternatively pursuant to Count III, a declaration that the Guidelines are inconsistent with generally accepted standards of care;

2. pursuant to Count I, or alternatively pursuant to Count III, an injunction requiring UBH to develop new, compliant guidelines;

3. pursuant to Count II, or alternatively pursuant to Count III, a declaration that UBH's denial of claims for benefits based on the Guidelines was improper; and

4. pursuant to Count II, or alternatively pursuant to Count III, a remand requiring UBH

1  retroactively to reprocess all class members' benefits claims under new, compliant

2  guidelines.

3  (*See Wit* FAC, at 64–66; *Alexander* Compl., *Alexander* ECF No. 1, at 50–51.)[1] Although

4  Plaintiffs have previously ascribed these remedies to specific Counts in the complaints, Plaintiffs'

5  counsel recently informed counsel for UBH that Plaintiffs seek *all* forms of declaratory and

6  injunctive relief noted above as to *all* of their Counts. UBH objects to Plaintiffs' attempt to amend

7  the complaint well after the deadline for amendment has past and only weeks before trial.

8      Irrespective of the relief sought, the core question under each Count is the same: whether

9  UBH's interpretation of the Plans in creating the Guidelines was an abuse of discretion. As

10  explained below, whether framed as a claim for fiduciary breach or improper denial of benefits,

11  all claims under § 1132(a)(1)(B)—including Plaintiffs' claims under Counts I and II—turn on

12  whether a plan fiduciary (UBH) abused its discretion in construing the terms of the plans. Thus,

13  Plaintiffs can only prevail under Counts I and II if they prove that UBH abused its discretion in

14  determining that the Guidelines were consistent with the terms of Class members' Plans. The

15  same abuse of discretion standard applies to Counts III and IV. In addition, Counts III and IV

16  independently fail because § 1132(a)(1)(B) offers Plaintiffs adequate relief if they can prove their

17  claims, so Counts III and IV under § 1132(a)(3) are impermissibly duplicative.[2]

18      In sum, under all four Counts in the operative complaints, Plaintiffs seek the same relief

19  for the same conduct, which is subject to the same deferential standard of review.

## III.    LEGAL STANDARD AT TRIAL

### A.    The Abuse-of-Discretion Standard Applies to Counts I and II Brought Under 29 U.S.C. § 1132(a)(1)(B).

20

21      In Counts I and II, Plaintiffs allege that UBH erred in developing and using Guidelines

22  that are inconsistent with the terms of each applicable ERISA plan. It is undisputed that each Plan

23

---

24      [1] The only form of relief Plaintiffs sought in connection with Count IV was the surcharge relief that the Court dismissed in its recent order granting in part UBH's motion for summary judgment. (*See* Order, ECF No. 286, at 25:19–26:18.) Count IV is no longer at issue in this case.

25

26      [2] To the extent Plaintiffs are permitted to amend their complaint to seek all forms of relief under all four Counts, it only underscores the that: (a) Counts III and IV are impermissibly duplicative of Counts I and II; and (2) all four Counts hinge on the same question of plan interpretation and must be reviewed under the deferential abuse of discretion standard.

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1    gives UBH discretionary authority to determine benefits and construe the Plan's terms. When an

2    ERISA plan delegates this interpretive authority to the plan administrator, courts review disputes

3    over the administrator's construction and application of plan terms for abuse of discretion. *See*

4    *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008).

5         The abuse-of-discretion standard applies regardless of whether the § 1132(a)(1)(B) claim

6    is styled as a claim for "breach of fiduciary duty" or for "denial of benefits"—because "[a]ny

7    dispute over the precise terms of the plan" is reviewed for abuse of discretion. [3] *Aetna Health Inc.*

8    *v. Davila*, 542 U.S. 200, 210 (2004); *see Varity Corp. v. Howe*, 516 U.S. 489, 514–15 (1996);

9    *Bailey v. Union Bank Ret. Plan*, 2014 WL 1364910, at *2 (C.D. Cal. Apr. 7, 2014) (no breach of

10   ERISA fiduciary duty "where a plan administrator acts within its discretionary authority"); *Zhu v.*

11   *Fujitsu Grp. 401(K) Plan*, No. C-03-1148RMW, 2003 WL 24030329, at *2 (N.D. Cal. Sept. 9,

12   2003) ("A claim for breach of fiduciary duty is actually a claim for benefits when a resolution of

13   the claim rests upon an interpretation and application of an ERISA regulated plan").

14        **1.    UBH's Interpretation of the Plans Must Be Upheld if it is Based Upon
             a Reasonable Interpretation of the Plan Terms.**

15        Under the abuse-of-discretion standard, "the plan administrator's interpretation of the plan

16   will not be disturbed if reasonable" and made in good faith. *Conkright v. Frommert*, 559 U.S.

17   506, 521 (2010) (quotation omitted); *MacDonald v. Pan Am. World Airways, Inc.*, 859 F.2d 742,

18   744 (9th Cir. 1988) (quotation omitted) (an ERISA administrator's "decision is not arbitrary or

19   capricious if it is based on a reasonable interpretation of the plan's terms and was made in good

20   faith"). In determining whether the administrator's interpretation is reasonable, "[t]he court must

21   look to the plain language of the [plan]." *Moyle v. Liberty Mut. Retirement Ben. Plan*, 823 F.3d

22   948, 958 (9th Cir. 2016) (quotation omitted). The question is not "whose interpretation of the plan

23   documents is most persuasive, but whether the administrator's interpretation is unreasonable." *Id.*

24   (quotation and alterations omitted); *see also Lafferty v. Providence Health Plans*, 436 F. App'x

25   780, 781 (9th Cir. 2011) (quotation omitted) ("Reasonableness does not mean that [the Court]

26

27        [3] Courts sometimes use "arbitrary and capricious" to describe this deferential standard of
     review, but as the Ninth Circuit has explained, in the ERISA context that is a "distinction without
28   a difference." *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1471 n.2 (9th Cir. 1993).

1    would make the same decision" in interpreting the plan terms). "Even if the provisions of the Plan

2    are susceptible to more than one reasonable interpretation, the Court must give way to the

3    trustee's interpretation." *Cator v. Herrgott & Wilson, Inc.*, 609 F. Supp. 12, 18 (N.D. Cal. 1984).

4          The test for an abuse of discretion is whether the court is "left with a definite and firm

5    conviction that a mistake has been committed." *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret.*

6    *Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005). The question is whether UBH's interpretation of the

7    Plans, as reflected in the Guidelines, was "(1) illogical, (2) implausible, or (3) without support in

8    inferences that may be drawn from the facts in the record." *Lafferty*, 436 F. App'x at 781. The

9    court may not merely substitute its view, or the views of Plaintiffs' experts or treating providers,

10   for that of the ERISA plan administrator. *Id.*; *accord Black & Decker Disability Plan v. Nord*,

11   538 U.S. 822, 831 (2003) ("[C]ourts have no warrant to require administrators automatically to

12   accord special weight to the opinions of a claimant's physician").

13         This deferential standard of review applies notwithstanding a fiduciary's duty to

14   "discharge his duties with respect to a plan solely in the interest of the participants and

15   beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and

16   their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C.

17   § 1104(a)(1). That is because this "duty of loyalty" "does not require . . . that a fiduciary resolve

18   every issue of interpretation in favor of the plan beneficiaries." *O'Neil v. Ret. Plan for Salaried*

19   *Emps. of RKO General, Inc.*, 37 F.3d 55, 61 (2d Cir. 1994); *see also Wright v. Or. Metallurgical*

20   *Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) (quotation omitted) (omission in original) ("The duty

21   to act in accordance with the plan document does not . . . require a fiduciary to resolve every issue

22   of interpretation in favor of plan beneficiaries."). "[A] fiduciary obligation . . . does not

23   necessarily favor payment over nonpayment," because "[t]he common law of trusts recognizes

24   the need to preserve assets to satisfy future, as well as present, claims and requires a trustee to

25   take impartial account of the interests of all beneficiaries." *Varity*, 516 U.S. at 514. Because Plan

26   administrators "have a duty to all beneficiaries to preserve limited plan assets," deference to

27   discretionary matters of plan interpretation "helps prevent . . . windfalls for particular

28   employees." *Conkright,* 559 U.S. at 520.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2.    The Abuse-of-Discretion Standard Applies Even in the Face of a Conflict of Interest.

Plaintiffs contend that UBH acted under a conflict of interest when it developed and applied the Guidelines to Class members' benefit requests. To prove that UBH operated under a conflict of interest, Plaintiffs must prove that UBH acted in the "dual role of administering and funding an ERISA plan." *Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1024 (9th Cir. 2008). As discussed more fully below, the evidence will show that UBH did not act under a conflict of interest as to the large majority of the Class members, and to the extent UBH operated under a *technical* conflict of interest in a minority of cases, it did not affect the substance of the Guidelines or any Class member's benefit decision.

Even if Plaintiffs could prove that UBH operated under a conflict of interest, that does not alter the applicable standard of review. When "the terms of a plan grant discretionary authority to the plan administrator, a deferential standard of review remains appropriate even in the face of a conflict," *Conkright*, 559 U.S. at 512, including where the same entity that makes coverage decisions also pays the benefits. *Glenn*, 554 U.S. at 112,115–16; *see also* Rest. (Third) of Trusts § 50 notes to cmts. a & b (2003) ("[E]ven when a possibility of conflict of interests is present, a court will decline to intervene without a showing of abuse."). Courts instead simply weigh the conflict "as a factor in determining whether there is an abuse of discretion." *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 115 (1989) (quotation omitted). That exercise "requires a case-by-case balance." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968 (9th Cir. 2006).[4]

A conflict is "more important . . . where circumstances suggest a higher likelihood that it affected the benefits decision," but the conflict "should prove less important (perhaps to the vanishing point)" where the circumstances indicate that the conflict did *not* influence the

---

[4] At the common law of trusts, factors considered in determining whether an administrator abused its discretion include: "(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have." *Champion v. Black & Decker (U.S.), Inc.*, 550 F.3d 353, 359 (4th Cir. 2008) (quotation omitted).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1    administrator's decisions. *Glenn*, 554 U.S. at 117. "The level of skepticism with which a court

2    views a conflicted administrator's decision may be low if a structural conflict of interest is

3    unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious

4    claims-granting history." *Abatie*, 458 F.3d at 968.

5              In addition, "the conflict question is less clear where (as here) the plan administrator is not

6    the employer itself but rather a professional insurance company . . . because the insurance

7    company typically charges a fee that attempts to account for the cost of claims payouts, with the

8    result that paying an individual claim does not come to the same extent from the company's own

9    pocket." *Glenn*, 554 U.S. at 114. While the law "treats insurance company administrators and

10   employers alike in respect to the *existence* of a conflict," courts "can nonetheless take account of

11   the" inherently reduced nature of the conflict "so far as it treats those, or similar, circumstances as

12   diminishing the *significance or severity* of the conflict in individual cases." *Id*. at 115.

13             Regardless, even where there is a moderate or significant conflict of interest, the

14   reasonableness standard still applies. A "mere tally of experts is insufficient to demonstrate that

15   an ERISA fiduciary has abused its discretion, for even a single persuasive medical opinion may

16   constitute substantial evidence upon which a plan administrator may rely." *Boyd*, 410 F.3d at

17   1179; *see Hinman v. John Alden Life Ins. Co.*, No. 08-CV-1070-PK, 2010 WL 466155, at *6 (D.

18   Or. Feb. 8, 2010) (same); *see also Williby v. Aetna Life Ins. Co.*, __ F.3d __, No. 15-56394, 2017

19   WL 3482390, at *7 (9th Cir. 2017) (quotation omitted) ("[T]he existence of a single persuasive

20   medical opinion supporting the administrator's decision can be sufficient to affirm . . . .").

21             Because the Plans gave UBH discretionary authority to determine eligibility for benefits

22   and to construe the terms of the Plans, the question for the Court will be whether UBH's

23   determination that the Guidelines are consistent with the Plans was "unreasonable." *Moyle*, 823

24   F.3d at 959. Even if the Court determines that UBH was operating in a "dual role" as both the

25   administrator and funder of a particular Plan, that is but one factor for the Court to consider in its

26   abuse-of-discretion analysis, and even then only to the extent Plaintiffs can demonstrate that the

27   conflict actually influenced UBH's decision with respect to the specific Guidelines at issue.

28

Crowell
& Moring LLP
ATTORNEYS AT LAW

**B.     The Abuse-of-Discretion Standard Applies to Plaintiffs' Counts III and IV Under § 1132(a)(3).**

Because Counts III and IV also are based on UBH's alleged misinterpretation of the Plan terms by developing Guidelines allegedly inconsistent with generally accepted standards of care, and seek identical injunctive relief to the relief sought under Counts I and II, the abuse-of-discretion standard applies to Counts III and IV. *See Varity Corp.*, 516 U.S. at 514–15 (when basis for claim is that administrator misconstrued plan terms, abuse-of-discretion standard does not change simply because fiduciary-breach claim is pleaded under § 1132(a)(3)).

Plaintiffs may not use Counts III and IV as a backdoor to a *de novo* standard of review. "[A] section 502(a)(3) challenge . . . predicated on a plan interpretation that participants claim is faulty does not nullify the terms of the plan granting the administrator the right and responsibility, in the first instance, to interpret the plan provisions . . . ." *Schultz v. Stoner*, 308 F. Supp. 2d 289, 303 (S.D.N.Y. 2004) (applying abuse of discretion standard to (a)(3) fiduciary breach claim relating to interpretation of plan terms); *see Lees v. Munich Reinsurance Am., Inc.*, No. 14-2532 (MAS) (TJB) 2016 WL 164611, at *4 (D. N.J. Jan. 13, 2016) ("[E]ven if Plaintiff asserted his claim for . . . breach of fiduciary duty theory under § 1132(a)(3), the same arbitrary and capricious standard that the Court applied to Plaintiff[']s § 1132(a)(1) claim . . . would apply."). Plaintiffs' § 1132(a)(3) claims thus necessarily rise or fall along with their § 1132(a)(1)(B) claims in Counts I and II, as they are based on the same alleged fiduciary breaches.

## IV.   DISCUSSION

To satisfy their burden on both Counts I and II under 29 U.S.C. § 1132(a)(1)(B) and Counts III and IV under 29 U.S.C. § 1132(a)(3), Plaintiffs must prove on a class-wide basis and by a preponderance of the evidence that:

(1)     UBH owed a fiduciary duty to all class members under their ERISA Plans to develop Guidelines that are solely consistent with generally accepted standards of care, without regard to Plan exclusions and other terms that govern what healthcare services are covered under the Plans;

(2)     UBH abused its discretion in interpreting the Plans by developing and using

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1          Guidelines that were more restrictive than generally accepted standards of care;

2      (3)    UBH's abuse of discretion in interpreting the Plans caused damage to the class

3          members; and

4      (4)    Plaintiffs are entitled to the injunctive relief sought.

5   *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005); *see also Romberio v.*

6   *Unumprovident Corp.*, 385 F. App'x 423, 429 (6th Cir. 2009); *Hein v. F.D.I.C.*, 88 F.3d 210, 224

7   (3d Cir. 1996); *Graddy v. Blue Cross BlueShield of Tenn., Inc.*, No. 4:09-CV-84, 2010 WL

8   670081, at *8 (E.D. Tenn. Feb. 19, 2010); *Corenco Corp. v. Schiavone & Sons, Inc.*, 362 F. Supp.

9   939, 944 (S.D.N.Y. 1973); *Bd. of Trustees of Bay Area Roofers Health & Welfare Tr. Fund v.*

10  *Westech Roofing*, No. 12-CV-05655-JCS, 2014 WL 4383062, at *3 (N.D. Cal. Sept. 4, 2014).

11         In addition, with respect to Counts III and IV brought under 29 U.S.C. § 1132(a)(3), even

12  if Plaintiffs offer evidence to prove the above elements, no relief is available under these counts if

13  adequate remedies are available under § 1132(a)(1)(B). *Moyle*, 823 F.3d at 959 (collecting cases).

14         Plaintiffs also must prove each of the elements of their claims "at trial through evidence

15  . . . common to the class rather than individual to its members." *Stockwell v. City & Cty. of San*

16  *Francisco*, No. C 08-5180 PJH, 2015 WL 2173852, at *6 (N.D. Cal. May 8, 2015) (quotation

17  omitted). "Common proof of some kind is necessary to support [a] class-wide determination."

18  *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 483, 488 (C.D. Cal. 2008). Plaintiffs cannot

19  satisfy their burden by proving their own cases and extrapolating those results to the class.

20  *Espencheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013) (rejecting testimony of 42

21  class members hand-picked by plaintiffs' counsel because "[w]hat can't support an inference

22  about the [circumstances] of thousands of [class members] is evidence of the experience of a

23  small, unrepresentative sample of them").

24      **A.    Plaintiffs Will Not Prove on a Class-Wide Basis that UBH Owed Class
            Members a Fiduciary Duty to Develop and Utilize Guidelines that Were**
25          **Solely Consistent with Generally Accepted Standards of Care.**

26         There are over a thousand different ERISA health plans applicable to the Class members

27  in this case over the Class period, with varying terms relating to what services are covered and

28  what services are not covered under the Plans. It is generally true that the Plaintiffs' and Class

CROWELL
& MORING LLP
ATTORNEYS AT LAW

members' plans do not cover treatment that is *not* consistent with generally accepted standards of care. But the Plans do not cover *all* services that are consistent with generally accepted standards, as UBH will demonstrate at trial. For example, some Plans define "Covered Health Services" to be services that are both *consistent* with generally accepted standards of care and not subject to a Plan exclusion, among other requirements. Others simply *exclude* coverage for services that are *inconsistent* with generally accepted standards of care. Just as important, some Plans explicitly incorporate the Guidelines by excluding from coverage any service that "in the reasonable judgment" of UBH is "[n]ot consistent with [UBH's] level of care guidelines or best practices as modified from time to time." Others exclude from coverage all services that are not "Medically Necessary," including any treatment that is determined to be medically unnecessary under the Plan's "Utilization Review protocols," which include UBH's coverage guidelines. These Plans specify that, under those protocols and guidelines, treatments that are not the "most appropriate supply or level of service which can safely be provided" are not "Covered Services" under the Plan.

The Guidelines are either: (a) part of the Plan terms, as UBH argues; or (b) a fiduciary act of Plan interpretation, as Plaintiffs argue, and, therefore, subject to review for abuse of discretion. UBH will present evidence that it created the Guidelines to define the terms of coverage for members consistent with these Plan terms. Its development of the Guidelines therefore involved the setting of Plan terms and that it acted as a settlor (not a fiduciary) in developing and approving the Guidelines. Accordingly, UBH's creation of the Guidelines does not implicate ERISA's fiduciary requirement.[5] *See Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1292

---

[5] In denying UBH's motion to dismiss the Complaint in the *Alexander* action, the Court agreed with Plaintiffs that the Plan exclusion for services "[n]ot consistent with [UBH's] level of care guidelines" was too "vague [of a] reference" to incorporate the LOCGs because it did not "suggest any intent to incorporate those guidelines…" (Order Denying UBH's Mot. to Dismiss *Alexander* Compl., *Alexander* ECF No. 42, at 14:27–28.) Yet Plaintiffs now rely on this exact language where it appears in the CDGs to argue that the CDGs incorporate the LOCGs by reference. (*See* Stip. of Fact, ECF No. 257, p. 8:2–5; *see also* Exh. A to Stip. of Fact, ECF No. 257-1.) Plaintiffs cannot have it both ways. Either this language is sufficient to incorporate the LOCGs, in which case the LOCGs are incorporated into many of the Plans and not subject to judicial review under ERISA, or it is insufficient to incorporate them into the Plans or the CDGs.

Crowell
& Moring LLP
Attorneys At Law

1  (10th Cir. 1999) (internal coverage guidelines created by third-party mental health claims

2  administrator "constituted part of the Plan and thus lay outside the scope of judicial review"); *see*

3  *also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999); *Eden Surgical Ctr. v. Budco*

4  *Grp., Inc.*, No. CV 09-3991 AHM (Ex), 2010 WL 2180360, *6 (C.D. Cal. May 27, 2010); *Teen*

5  *Help, Inc. v. Operating Eng'rs Health & Welfare Trust Fund*, No. C 98–2084 VRW, 1999 WL

6  1069756, *3 (N.D. Cal. Aug. 24, 1999).

7       But if, as Plaintiffs argue, the Guidelines do not reflect a settlor function and instead were

8  developed by UBH as part of its fiduciary responsibilities in interpreting and administering the

9  Plans, UBH's decision to adopt and utilize them is subject to review for abuse of discretion.

10  Plaintiffs will not prove that UBH abused its discretion because they will not prove that the

11  Guidelines are an unreasonable interpretation of the Plans. Plaintiffs will not prove that the Plans

12  required the Guidelines to be solely consistent with generally accepted standards of care, without

13  regard to other Plan terms and exclusions. The evidence will show that the Plans do not cover *all*

14  services simply because they are consistent with generally accepted standards. As administrator of

15  the Plans, UBH's prime directive is to "comply with the plan as written unless it is inconsistent

16  with ERISA." *Wright*, 360 F.3d at 1100; *see id.* (quotation omitted) (no breach of ERISA

17  fiduciary duty to act for "exclusive purpose of . . . providing benefits" where plan administrator

18  complied with the terms of the plan because "ERISA does not create an exclusive duty to

19  maximize pecuniary benefits"); *see also Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct.

20  604, 612 (2013) ("This focus on the written terms of the plan is the linchpin" of ERISA). It is

21  irrelevant whether the Guidelines are consistent or inconsistent with the abstract notion of "generally

22  accepted standards of care." What matters is whether Plaintiffs can affirmatively prove that each

23  Guideline at issue was inconsistent with every one of the Plans at issue.

24       Plaintiffs cannot satisfy this burden of class-wide proof. Plaintiffs contend, for example,

25  that the Guidelines were and are inconsistent with generally accepted standards of care because

26  "the Guidelines required a showing of acute crisis necessitating the level of care". (Pl.'s Opp'n to

27  UBH's Mot. for Summ. J., ECF No. 261, at 4:25–5:3.) Yet many Plans *expressly require* such a

28  showing. To take just one example, the Plan governing Sample Member 13292 expressly limited

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1   coverage of residential treatment services to "[a]cute residential treatment." Plaintiffs also assert

2   that the Guidelines were "flawed" because they emphasized whether a members' condition could

3   be "safely managed." (*Id*. at 5:10–11.) Again, however, this consideration is dictated by many

4   Plans, including Plaintiff Flanzraich's Plan, which restricted the definition of "medically

5   necessary" services to "the most appropriate supply or level of service which can safely be

6   provided." Plaintiffs further assert that the Guidelines "precluded coverage for services to prevent

7   deterioration or maintain a level of functioning, but rather required an expectation that services

8   would cause a patient to continually progress toward recovery." (*Id*. at 6:3–5.) But, many Plans,

9   like the one for Plaintiff Klein, exclude "long-term care" or "maintenance care . . . which is

10  rendered to assist a member who, in [UBH's] opinion, has reached the maximum level of . . .

11  function possible and will not make further significant clinical improvement."[6]

12      Where the Plans explicitly permit the conditions in the Guidelines, Plaintiffs' claims are a

13  back-door challenge to the Plans themselves, which are not subject to judicial review under

14  ERISA. *Hughes Aircraft Co.*, 525 U.S. at 444 ("ERISA's fiduciary duty requirement simply is

15  not implicated where" the settlor "makes a decision regarding the form or structure of the Plan").

16  There is no breach of fiduciary duty where the conduct (development and use of the Guidelines)

17  complies with the Plan terms, and Plaintiffs will not prove a violation on a class-wide basis.

  **B.**  **UBH Did Not Abuse Its Discretion in Developing and Using the Guidelines Because the Guidelines are a Reasonable Interpretation of the Plans.**

    **1.**  **The Guidelines Are a Reasonable and Good Faith Interpretation of Plan Terms and Generally Accepted Standards of Care.**

21      Even if UBH's development of the Guidelines is a discretionary act of plan interpretation,

22  rather than a settlor function, the evidence will show that the Guidelines are a reasonable and

23  good faith interpretation of the ERISA Plan terms and generally accepted standards of care. UBH

24  did not abuse its discretion in developing or using Guidelines with respect to the Plan members.[7]

---

25      [6] Plaintiffs take issue with the Guidelines' definition of "Custodial Care" for excluding
services that are "for the primary purpose of . . . maintaining a level of function." (Pl.'s Opp'n to

26  UBH's Mot. for Summ. J., ECF No. 261, at 6 n.11.) However, this definition of Custodial Care is
precisely the definition adopted (and excluded) by countless Plans, including Klein's Plan.

27      [7] Even if UBH's development of the Guidelines is a discretionary act, language in some of the
Plans giving UBH discretion to develop its own "level of care guidelines" at minimum informs

28  the *extent* of UBH's discretion. When the settlor manifests "an intention to grant greater than
(Continued...)

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1        Among other things, the evidence will show that UBH developed the LOCGs (including

2  the portions of the LOCGs that Plaintiffs contend are incorporated into the CDGs) according to a

3  generally accepted process for clinical guideline development, accredited by two independent

4  national accreditation organizations. The Guidelines were written and approved by doctoral-level

5  and masters-level clinicians based on their independent review of the relevant clinical evidence

6  and third-party guidelines from organizations, such as American Society of Addiction Medicine

7  ("ASAM"), the American Psychiatric Association ("APA"), and the Centers for Medicare and

8  Medicaid Services ("CMS"). UBH sought feedback from professional organizations and

9  providers about the content of its Guidelines, which UBH routinely incorporated into the

10  substance of the Guidelines through an ongoing process of review, revision, and improvement.

11  Many of the practice and placement guidelines produced by these sub-specialty groups, including

12  the ASAM criteria, the LOCUS tool, and the CALOCUS tool, served as part of the foundation for

13  UBH's own guidelines. The evidence will show that UBH developed its Guidelines in good faith

14  using a process for developing reasonable, clinically-appropriate Guidelines.

15        Plaintiffs identify four purported "flaws" in the substance of the Guidelines, alleging that

16  UBH:

- 17    over-emphasized "short-term, acute symptoms, rather than longer-term, underlying conditions";

- 18, 19    "failed to consider co-occurring medical and behavioral conditions as an aggravating factor that could necessitate treatment in a more intensive level of care";

- 20, 21    "precluded coverage for services to prevent deterioration or maintain a level of functioning, but rather required an expectation that services would cause a patient to continually progress toward recovery"; and

- 22    "failed to adopt any level-of-care criteria tailored to the unique needs of children and adolescents."

23  (Pl.'s Opp'n to UBH's Mot. for Summ. J., ECF No. 261, at 4:25–6:12.) But the provisions that

24  Plaintiffs contend are "flawed" are entirely consistent with the express terms of the Plans and

25  commonly accepted clinical practices. They may not be worded exactly in the way Plaintiffs'

26

_____

27  ordinary latitude" to the administrator, courts will generally only intervene upon a showing that that the administrator's interpretation was made in bad faith or was "extravagantly unreasonable."

28  Rest. (Third) of Trusts § 87 cmt. d & Reporter's Notes to cmt. d.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

experts would word them, but difference of opinion does not amount to an abuse of discretion.

UBH will demonstrate through testimony of its independent experts and the Board-certified psychiatrists involved in the creation, approval, and application of the Guidelines, that a focus on acute symptoms and progress toward recovery is entirely consistent with sound clinical practice, and that the Guidelines appropriately permit clinicians to take into account chronic symptoms, co-morbid conditions, prevention of deterioration, and other individualized circumstances such as age. The evidence will show, for example:

- References to "acuity" and "why now" factors are drawn from generally accepted standards of care, which balance the need to treat a patient's immediate symptoms and the root or chronic causes of those symptoms. It is essential for a clinician to evaluate the acute condition of the patient and what led the patient to seek treatment.

- Generally accepted standards of care provide that patients should be treated in the least restrictive setting that is safe and effective in light of the patient's entire clinical presentation. This reflects the generally accepted goals of progressing toward recovery and helping patients retain maximum autonomy at a baseline level of functioning that is appropriate for the patient's individual circumstances.

- The Guidelines expressly account for a member's age and co-morbid conditions and prevention of deterioration, both on their face and, just as importantly, in their reliance on the clinical judgment of UBH's doctoral-level clinicians who are tasked with applying the Guidelines.

Plaintiffs' challenge to the definition of "Custodial Care" in the Guidelines faces the additional hurdle that most of the Plans expressly define (and exclude from coverage) "Custodial Care" in a manner that is consistent with the Guidelines. Many Plans—including Plaintiff Klein's—expressly exclude coverage for "long-term care" or "maintenance care" where the member is not likely to "make further significant clinical improvement." Likewise, some Plans limit coverage of residential treatment services to "acute residential treatment," and others restrict coverage to "the most appropriate supply or level of service which can safely be provided."[8]

---

[8] Plaintiffs cannot cherry-pick a single phrase in the Plans ("generally accepted standards of care"), read it in isolation, and convert it into a fiduciary duty. A dispute about interpretation of an ERISA plan "does not turn upon one section of the plan viewed in isolation, but rather, upon an interpretation of the plan as a whole." *Boesel v. Chase Manhattan Bank, N.A.*, 62 F. Supp. 2d 1015, 1029 (W.D.N.Y. 1999). Plaintiffs' experts did not review the Plans and will not offer any opinion about the meaning of "generally accepted standards of care" as used in the context of the Plans at issue in light of other limitations and exclusions, like the ones noted above. *See* Rest. (Third) of Trusts § 50 cmt. g ("rather than relying on speculation about the import of specific . . . wording, it is often more instructive to analyze . . . [the] provisions of the trust as a whole").

CROWELL
& MORING LLP
ATTORNEYS AT LAW

The evidence will underscore the inherent flexibility of the Guidelines, and the significant discretion that the Guidelines give to UBH's doctoral-level clinicians in applying them to the individualized circumstances of each Plan member and exercising their clinical judgment based on the unique facts of each member's request for benefits.

At its core, Plaintiffs' experts' assessment of the "flaws" in the Guidelines is premised on a series of assumptions about how the Guidelines *might* be used *if* the peer reviewer applied the Guideline with the subjective interpretation of Plaintiffs' experts. For example, Plaintiffs' experts will testify, not that "chronic problems" are excluded from consideration in the Guidelines, but that they "believe" the chronic conditions are not "sufficiently emphasized" based on their interpretation of the Guidelines "as written." They will opine that the Guidelines do not "go far enough" based on their subjective reading of how certain "sentence[s] are modifying" other sentences, all of which they concede are "open to professional judgment." But Plaintiffs' experts can only "speculate" as to whether those assumptions are correct, and whether they "might" lead to a denial of coverage in any particular circumstance. Plaintiffs' experts can make technical challenges to precise wording and impose their subjective views on how the Guidelines might be applied, but that is not proof that the Guidelines are more restrictive than generally accepted standards of care. It certainly does not prove that UBH's interpretation of the Plan terms is unreasonable, illogical, implausible, or not based on proper inferences of fact.

Indicative of UBH's good faith was its retention in 2013 of a third-party consultant who was one of the principal authors of the ASAM criteria. The evidence will show that, in 2013, UBH was considering adopting the then recently-revised ASAM criteria, and retained the consultant to review UBH's LOCGs and substance use-related CDGs for the *express purpose* of identifying and addressing inconsistencies between the Guidelines and the ASAM criteria. After a comprehensive review, the consultant told UBH that he was "impressed" with the Guidelines. Although he suggested a handful of changes not at issue in this lawsuit, he did not identify any of the language challenged by Plaintiffs as inconsistent with the ASAM criteria.[9] While UBH

---

[9] The consultant also made recommendations related to levels of care not at issue in this lawsuit. For example, he recommended that UBH consider covering treatment at three "Clinically (Continued...)

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1  ultimately decided not to adopt the ASAM criteria, it made that decision with the reasonable and

2  good faith understanding—based on the consultant's assessment and its own review—that its

3  Guidelines were consistent with the ASAM criteria in all material respects at issue in this lawsuit.

> **2.  Any Purported Conflict Of Interest Does Not Alter a Finding That The Guidelines Are a Reasonable and Good Faith Interpretation of Plan Terms and Generally Accepted Standards of Care.**

6  The evidence will show UBH did not operate under a conflict of interest when it

7  developed and allegedly applied the Guidelines to Class member's non-coverage determinations.

8  The parties stipulate that the majority of non-coverage determinations at issue relate to members

9  of plans as to which UBH provided administrative services only ("self-funded plans"). For self-

10  funded plans, UBH did not bear any direct financial risk for the payment of benefits because

11  benefits were paid by a third-party, usually the plan sponsor or employer. With respect to the

12  class members who were beneficiaries of self-funded plans, who account for approximately 62

13  percent of non-coverage determinations at issue in this case, UBH "has no . . . conflict of interest

14  here, as [the plan sponsor or employer] funded the [benefit] plan." *Williby*, 2017 WL 3482390, at

15  *7. In other words, UBH did not operate with a structural conflict of interest when it construed

16  the terms of the self-funded plans at issue because UBH did not act in the "dual role of

17  administering and funding an ERISA plan." *Burke*, 544 F.3d at 1024.

18  The parties also stipulate that other Class members were members of plans as to which

19  UBH not only provided administrative services, but UBH (or an affiliated third-party) also was

20  responsible for paying members' benefit claims ("fully insured plans"). UBH charges a fee to the

21  plan sponsor or employer of fully insured plans, which includes a fee to administer the benefits

22  and also a fee that attempts to account for the costs of claims payout. UBH readjusts the fee it

23  charges annually based on expected claims payouts, and can readjust its fee mid-year in response

24  Managed," levels of residential care that do not involve regular supervision of a physician. He
contrasted these levels of care with "Medically Monitored" residential treatment "in which a

25  physician is involved in the patient's treatment (monitoring)." None of these "Clinically
Managed" levels of residential care are at issue in this case. Indeed, some plans *expressly*

26  *excluded* coverage for this sort of non-medical residential treatment. For example, under the terms
of Plaintiff Muir's Plan, residential treatment was only covered if it occurred "under the active

27  participation and direction of a Physician," with "Physician" defined as a "legally qualified"
individual holding one of eight specifically-defined medical degrees.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

to significant changes, such as new regulations that mandate coverage for previously-excluded treatments. For this minority of Class members, accounting for 38 percent of the non-coverage decisions at issue, any nominal conflict of interest is minimized because UBH "charges a fee that attempts to account for the cost of claims payouts, with the result that paying an individual claim does not come to the same extent from [UBH's] own pocket." *Glenn*, 554 U.S. at 114.

In any event, the evidence will show that any technical conflict of interest had no actual impact on the substance of the Guidelines or their application to Class members' benefit claims. [10] The Guidelines were developed and updated by doctoral-level and masters-level clinicians using a rigorous—and in the case of the LOCGs, independently-accredited—process, with input from external providers and sub-specialty groups, UBH's clinical leadership, and appropriate clinical oversight committees, including review and approval by multiple Board-certified psychiatrists. The evidence will also show that UBH took steps to insulate its peer reviewers from financial considerations when applying those guidelines to Class members' benefit decisions.

Plaintiffs can no longer rely solely on their allegations, and the evidence at trial will show that the Guidelines are the result of the reasonable, diligent, and good faith efforts of countless doctors, psychologists, psychiatrists, social workers, providers, consultants, and third-party organizations working together over the course of nearly a decade through a rigorous—and in the case of the LOCGs, nationally-accredited—process to ensure that the members of the Plans UBH administers have access to high quality and appropriate treatment available under the terms of each member's health benefit plan. The evidence will show that this process resulted in Guidelines that were and are consistent with the terms of Class members' benefit Plans, generally accepted standards of care, and UBH's dual "obligat[ions] to guard the assets of the Plan from improper claims, as well as to pay legitimate claims." *Boyd*, 410 F.3d at 1178 (quotation and alteration omitted).

---

[10] Plaintiffs will cite out-of-context evidence relating to guidelines and policies that are *not at issue in this case* to argue that financial considerations affected the substance of the Guidelines. As UBH explains in its concurrently-filed Motion *in Limine* to Exclude Evidence Relating to UBH Coverage Determination Guidelines and Policies Not at Issue, such evidence should be excluded from trial because it is (1) irrelevant, (2) improper "other acts" evidence, and (3) would waste trial time with needless mini-trials about those irrelevant guidelines.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

C.      **Plaintiffs Will Not Prove on a Class-Wide Basis that UBH's Alleged Abuse of Discretion in Interpreting the Plans Caused Harm to the Class.**

Whether styled as a claim for breach of fiduciary duty or improper denial of benefits, Plaintiffs' claims under Counts I and II (or alternatively Counts III and IV) require proof that UBH's alleged abuse of discretion in interpreting the Plans caused class members harm. *See, e.g.*, *Romberio*, 385 F. App'x at 429 (emphasis omitted) ("Absent a showing that benefits were wrongfully denied, there can be no causal link between an alleged breach and a denial of benefits"); *Patel-Puri v. Metro. Life Ins.* Co., No. C-05-0455 MMC, 2008 WL 2609711, at *5 n.12 (N.D. Cal. June 27, 2008) ("A showing of injury is, of course, also required to obtain equitable relief" under section (a)(3)).

Harm is an independent element of Plaintiffs' claims, which is distinct from the element of breach. *Brosted*, 421 F.3d at 465 ("To state a claim for breach of fiduciary duty under ERISA, the plaintiff must establish: (1) that the defendants are plan fiduciaries; (2) that the defendants breached their fiduciary duties; and (3) that the breach caused harm to the plaintiff."). Absent class-wide evidence that UBH's alleged breach resulted in tangible harm to Class members, Plaintiffs cannot prevail at trial. *Graddy*, 2010 WL 670081, at *8; *see also Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012) ("Appellants argue that the 'harm' of being deprived of their statutory right [under ERISA] is a compensable harm, but we disagree."). Plaintiffs will not satisfy this burden at trial with evidence that is common to the Class.

First, the "harm" Plaintiffs allege is not capable of class-wide proof. "Where, as here, the alleged breach purportedly results in the wrongful denial or termination of a participant's benefits, the existence of a causal link between the breach and the harm is particularly dependent upon the equities of the participant's claim" and inherently "depends on a number of factors peculiar to the claimant's case." *Romberio*, 386 F. App'x at 429.

Second, it is not enough for Plaintiffs to show that UBH "applied" a Guideline to Class members' benefit decisions. UBH's Guidelines, some of which exceed 100 pages, consist of countless individual provisions, only a handful of which Plaintiffs actually challenge. Plaintiffs' experts concede that many, if not most, of the provisions in the Guidelines are unobjectionable.

Yet Plaintiffs will not offer evidence to show that any of the specific "flaws" were even relevant—let alone consequential—to thousands of the Class members' benefit decisions. A Class member cannot have been harmed if UBH "applied" a portion of the Guidelines that is indisputably consistent with generally accepted standards of care, was otherwise consistent with the Class member's plan, or which Plaintiffs do not challenge in this case. *See Bowman v. U.S. W., Inc.*, No. CIV. 95-1923-FR, 1997 WL 118437, at *6 (D. Or. Mar. 10, 1997) ("The administrator of an ERISA plan does not breach a fiduciary duty by not providing benefits where a claimant is not entitled to benefits under the express provisions of the Plan.").

Third, with the exception of the Custodial Care CDGs, Plaintiffs do not challenge the unique content of any of the 200+ CDGs in this case, despite the fact that thousands of Class members had their benefit decisions reviewed according to a CDG, not an LOCG. Rather, Plaintiffs contend that each of the CDGs in this case incorporates some portion of the LOCGs by several different theories. But many of the CDGs at issue do not incorporate the substantive provisions of the LOCGs or any of the specific "flaws" Plaintiffs allege.

The evidence will show that a number of CDGs merely reference or cite to an LOCG, include a hyperlink to an LOCG, or quote some small portion of an LOCG. Such passing references do not incorporate the substantive language of the LOCGs because they do not "contain some clear and unequivocal reference to the fact that the [LOCGs] are incorporated." *St. Paul Mercury Ins. Co. v. Am. Saf. Indem. Co.*, No. 12–CV–05952–LHK, 2014 WL 2120347, at *10 (N.D. Cal. May 21, 2014) (quotation omitted) ("To impliedly incorporate an external document by reference, the subject document must contain some clear and unequivocal reference to the fact that the terms of the external document are incorporated.") Indeed, Plaintiffs previously argued that the principal language upon which they rely to incorporate the LOCGs into the CDGs is "so vague it cannot fairly be construed as incorporating by reference a particular set of existing criteria." (Pl.'s Opp'n to UBH's Mot. to Dismiss *Alexander* Compl., *Alexander* ECF No. 30, at 14:14–18.) Plaintiffs will not establish class-wide harm because they will not be able to prove that the "flaws" they allege in the LOCGs were actually applied to thousands of Class members whose benefit determinations were reviewed using a CDG.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

**D.     Plaintiffs Will Prove on a Class-Wide Basis that the Class Is Entitled to the Injunctive Relief Sought.**

**1.     Plaintiffs Must Prove at Trial that They Are Entitled to the Specific Injunctions They Seek.**

Whether Plaintiffs are entitled to the specific injunctions they seek is a question for proof at trial, not a matter for post-trial briefing. "At a trial on the merits for a permanent injunction, the party seeking relief is required to prove" the elements for injunctive relief "by a preponderance of the evidence." *Corenco Corp.*, 362 F. Supp. at 944 (discussing element of irreparable injury).

Under "well-established principles of equity," to be entitled to the proposed injunctions,[11] Plaintiffs "must demonstrate" *at trial* that the class "has suffered an irreparable injury." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011) ("those seeking injunctive relief, not those opposing that relief, are responsible for showing irreparable injury"); *see also Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1039–40 (8th Cir. 2016) (applying irreparable injury requirement to request for injunction under 29 U.S.C. § 1132(a)(1)(B) and (a)(3)).

**2.     Plaintiffs Will Not Establish the Necessary Element of Irreparable Injury by a Preponderance of the Evidence.**

Plaintiffs will not satisfy the element of irreparable injury for at least three reasons.

First, as discussed above, Plaintiffs' claims are all based on the premise that they were entitled to have their benefit decisions reviewed according to guidelines that were consistent solely with generally accepted standards of care. Plaintiffs will not present evidence that the alleged violation of this supposed right affected any class members in a personal way. This fact

---

[11] Plaintiffs admit that "reprocessing" is an injunction. (Mot. for Class Cert., ECF No. 133, at 7:12–15 (describing reprocessing as "an injunction ordering UBH to reprocess the Class members' claims").) This Court has joined the unanimous conclusion of courts in characterizing reprocessing under 29 U.S.C. § 1132(a)(1)(B) as "injunctive relief." (Order re UBH's Mot. for Summ. J., ECF No. 286, at 19 n.6.); *see also Des Roches v. Cal. Physicians' Serv.*, No. 16-CV-02848-LHK, 2017 WL 2591874, at *19 (N.D. Cal. June 15, 2017) (applying *Saffle* and describing the remedy in *Saffle* as a "reprocessing injunction"); *Z.D. ex rel. J.D. v. Grp. Health Co-op.*, No. C11-1119RSL, 2012 WL 5033422, at *2 (W.D. Wash. Oct. 17, 2012) (in ERISA class action, describing remedy under (a)(1)(B) as an "injunction requiring defendants to process claims"); *Lipstein v. UnitedHealth Grp.*, 296 F.R.D. 279, 287 (D.N.J. 2013) (same).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1   alone is fatal to both of Plaintiffs' proposed injunctions.[12] Courts "do not presume irreparable

2   harm simply because a defendant violates a statute that authorizes injunctive relief." *Park Vill.*,

3   636 F.3d at 1162 (quotation omitted); *accord Haas Automation Inc. v. Denny*, No. 09-CV-8336

4   CBM (PLA), 2011 WL 13143677 at *2 (C.D. Cal., Oct. 14, 2011) (same). Even if Plaintiffs can

5   satisfy the elements of constitutional standing and causation for the purpose of establishing

6   *liability* under 29 U.S.C. § 1132(a)(1)(B) (they cannot), that is insufficient to prove irreparable

7   harm to the entire class. *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 948 (N.D. Cal. 2009)

8   (injunctions do "not automatically issue upon a finding of liability"); *see also Monsanto Co. v.*

9   *Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (same). Plaintiffs must prove that each of the

10  roughly 66,000 Class members suffered an "irreparable injury" separate and apart from the bare

11  violation of ERISA.

12          Plaintiffs likely will rely on *Saffle* to suggest that they are entitled to reprocessing upon a

13  showing that UBH "applied a wrong standard to [Class members'] benefits determination." *Saffle*

14  *v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455 (9th

15  Cir. 1996). But Plaintiffs do not challenge a single "standard," such as the definition of "total

16  disability" at issue in *Saffle*. This case involves 222 distinct Guidelines, each consisting of

17  countless individual "standards," only a handful of which Plaintiffs actually challenge. Plaintiffs

18  cannot show that any Class member was irreparably injured because Plaintiffs cannot prove

19  whether *any* of the "standards" at issue was actually "applied . . . to [any Class members'] benefit

20  determination." *Id*. at 461; *see Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th

21  Cir. 1991) ("Injunctive relief . . . must be tailored to remedy the specific harm alleged.").

22          <u>Second</u>, Plaintiffs must prove that the specific reprocessing remedy they seek will cure the

23  specific harm they allege for the entire Class. *Park Vill.*, 636 F.3d at 1160 (quotation and

24  alteration omitted) ("[T]he person . . . seeking injunctive relief must demonstrate that irreparable

25  injury is *likely* in the absence of an injunction" and the "injunctive relief ... must be tailored to

26

27          [12] Plaintiffs' experts disclaim any opinion about how UBH's guidelines were applied to or
    affected absent Class members' benefit decisions and admitted they could do no more than
28  "speculate" about how the guidelines are actually used "in particular instances."

1   remedy the *specific harm alleged*"); *Marlo*, 251 F.R.D. at 483. A "conjectural or hypothetical

2   injury" will not suffice. *Park Vill.*, 636 F.3d at 1160 (quotation omitted). Plaintiffs cannot make

3   this showing with class-wide evidence because, for many Class members, reprocessing cannot

4   result in any noticeable change in their right to past, present, or future benefits under the Plans.

5       The Classes are composed of individuals who made specific requests for specific benefits

6   at a specific point in time during a six-year class period. Some of those Class members, like

7   Plaintiff Klein, received the requested treatment notwithstanding UBH's benefit decision, and

8   without paying anything extra out of pocket. Likewise, the evidence will show that other Class

9   members decided not to receive the requested treatment, often because they accepted benefits at a

10  different level of care without any additional out-of-pocket costs. Those Class members, and

11  many others, suffered no compensable harm under ERISA. Plaintiffs will not offer any evidence

12  to prove that a Class member who requested residential treatment in 2012, but instead received

13  benefits for treatment at a different level of care, still wants or needs coverage for residential

14  treatment nearly five years later. Under these circumstances, reprocessing cannot result in the

15  payment of past benefits because there is nothing to pay.[13] Nor will reprocessing clarify or

16  enforce these Class members' right to any future benefits because there is no evidence that they

17  still want or need the treatment for which they originally sought coverage years ago.[14]

18      Third, Plaintiffs propose an injunction that would require UBH to either: (a) adopt

19  Plaintiffs' proposed guidelines wholesale; or (b) "adopt[] and utilize[e] amendments to [UBH's]

20  Guidelines, which shall be identified in Plaintiffs' Remedy brief, so that the Guidelines are

21  consistent with generally accepted standards of care." (Joint [Proposed] Pretrial Order, § II.A.)

22  _____

23      [13] It is also not clear what Plaintiffs would have UBH "reprocess" for class members who
    did not receive the treatment for which they initially sought coverage. In most instances, there
24  would be no actual *claim* to pay because the benefit request came in the form of a pre-
    authorization—i.e., before any treatment or claim for payment.

25      [14] UBH offers these examples only to illustrate *Plaintiffs' burden of proof*. But it is not
    UBH's burden to *disprove* irreparable harm. *Park Vill.*, 636 F.3d at 1160 ("those seeking
26  injunctive relief, not those opposing that relief, are responsible for showing irreparable injury").
    Courts do not ask "whether there is a good reason why an injunction should not issue; rather, a
27  court must determine that an injunction should issue under the traditional four-factor test . . . ."
    *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. at 158.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1   But the alternative nature of Plaintiffs' request concedes that UBH has no duty to adopt the

2   specific guidelines Plaintiffs propose. Plaintiffs admit that there is no single benchmark for

3   "generally accepted standards of care," and they cannot compel UBH to adopt a specific

4   interpretation of the Plans when they acknowledge there are multiple reasonable interpretations.

5   *Cator*, 609 F. Supp. at 18 (if plan term is "susceptible to more than one reasonable interpretation,

6   the Court must give way to the trustee's interpretation"). Plaintiffs cannot prove that Class

7   members will suffer an irreparable injury without an injunction ordering UBH to adopt their

8   preferred guidelines because UBH is not required to adopt them. *Hinman*, 2010 WL 466155, at

9   *10 (even if plaintiff's "interpretation was ultimately the correct one, [defendant's] finding was

10  reasonable and supported by evidence in the record, and therefore not arbitrary or capricious.").

11       Nor can Plaintiffs carry their burden of proof relating to their alternative proposal to force

12  UBH to adopt unspecified amendments to the Guidelines, which Plaintiffs will propose only *after*

13  trial. Plaintiffs will not offer any evidence of the specific changes UBH must make to its

14  guidelines to render them consistent with generally accepted standards of care—their experts

15  disclaim any such opinions. Plaintiffs will not prove that class members will be irreparably

16  harmed in the absence of unspecified changes to UBH's guidelines because they have no

17  evidence of (1) what those changes should be, or (2) whether those unspecified changes—against

18  which they would have UBH reprocess Class members' benefit claims—are consistent with the

19  terms of each Class member's Plan. *See Bowman*, 1997 WL118437, at *6 ("There is no legal

20  basis for the court to issue . . . an injunction" that "would require the plan administrator . . . to

21  provide coverage to a person who is not eligible to be covered under the express terms of the

22  Plan"). Argument of counsel in a post-trial "Remedy brief" is not a substitute for Plaintiffs'

23  burden to prove with evidence at trial that class members will suffer irreparable injury in the

24  absence of a specific, narrowly-tailored injunction.

25       **E.    No Relief Is Available Under Counts III and IV because the Remedies Sought
         by Plaintiffs Are Otherwise Available Under § 1132(a)(1)(B).**

26       In addition to the reasons set forth above, Plaintiffs will not satisfy their burden of proof

27  on Counts III and IV because "equitable relief under § 1132(a)(3) is not available if §

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1  1132(a)(1)(B) provides an adequate remedy." *Moyle*, 823 F.3d at 959. "[R]elief under § 502(a)(3)

2  is contingent on a showing that the claimant could not avail himself or herself of an adequate

3  remedy pursuant to § 502(a)(1)(B)." *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th

4  Cir. 2015) (en banc); *see Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997),

5  *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012).

6      The remedies sought by Plaintiffs under § 1132(a)(3) would all be available under §

7  1132(a)(1)(B) if Plaintiffs could prove their claims in Counts I and II. *Mass. Mut. Life Ins. Co. v.*

8  *Russell*, 473 U.S. 134, 146–47 (1985) (declaratory relief and prospective injunction clarifying

9  rights to future benefits available under (a)(1)(B)); *Saffle*, 85 F.3d at 460–61 (reprocessing

10 available under (a)(1)(B)). Because § 1132(a)(1)(B) "specifically provides a remedy for breaches

11 of fiduciary duty with respect to the interpretation of plan documents and the payment of claims,"

12 *Varity*, 516 U.S. at 512, Plaintiffs' remedies under § 1132(a)(1)(B) are adequate. This is so even

13 if Plaintiffs ultimately fail to prove their claims under section (a)(1)(B) because the "availability

14 of an adequate remedy under the law for *Varity* purposes does not mean, nor does it guarantee, an

15 adjudication in one's favor." *Katz v. Comprehensive Plan of Grp. Ins.*, 197 F.3d 1084, 1089 (11th

16 Cir. 1999); *see Rochow*, 780 F.3d at 372 (*Varity* rule operates "irrespective of the degree of

17 success obtained on a claim for recovery of benefits under § 502(a)(1)(B)"); *Tolson v. Avondale*

18 *Indus.*, 141 F.3d 604, 610 (5th Cir. 1998) (same). Plaintiffs will not be entitled to judgment in

19 their favor on their claims under § 1132(a)(3).

20 **V.   CONCLUSION**

21     After all the evidence has been adduced at trial, the evidence will show that Plaintiffs have

22 failed to satisfy their burden to prove any of the elements of their four Counts, whether brought

23 under 29 U.S.C. §1132(a)(1)(B) or (a)(3). Accordingly, at the conclusion of trial UBH will ask

24 the Court to enter a judgment in UBH's favor on all counts alleged in the operative complaints.

25 Dated:      September 6, 2017          **CROWELL & MORING LLP**

26                                        */s/ Jennifer S. Romano*
                                         Jennifer S. Romano
27                                        Attorneys for UNITED BEHAVIORAL HEALTH

28