PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

DAVID AND NATASHA WIT, *et al.*,

Plaintiffs,

v.

UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),

Defendant.

Case No. 3:14-CV-02346-JCS
Action Filed: May 21, 2014

**PLAINTIFFS' OPPOSITION TO UBH'S MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE OF UBH'S RATES, REVENUES, AND PROFITS**

GARY ALEXANDER, *et al.*,

Plaintiffs,

v.

UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),

Defendant.

Case No. 3:14-CV-05337-JCS
Action Filed: December 4, 2014

Trial Date: October 16, 2017
Time: 8:30 A.M.
Judge: Hon. Joseph C. Spero
Courtroom: G

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

UBH's financial information is relevant to at least two of the issues for trial: (1) whether UBH acted solely in the interests of plan participants and beneficiaries when UBH created and adopted its Guidelines, and (2) whether UBH had a conflict of interest when it created and adopted its Guidelines. *See* Pls.' Trial Brief, *Wit* ECF No. 299 at 15 (setting forth issues for trial on Plaintiffs' claims). With respect to the first trial issue, there is substantial evidence that financial considerations – in particular, the benefit expense to UBH of approving coverage for certain services – had a direct, and provable, impact on the Guidelines. *See* Pls.' Opp. to UBH's Mot. *in Limine* No. 2. With respect to the second trial issue, the conflict of interest impacts the applicable standard of review. Contrary to UBH's contention, the aggregate and per-member profits *do* matter. These numbers show how much UBH had at stake and how increased benefit expense could whittle away its already slim profit margins, and they reinforce the evidence concerning specific instances where potential benefit expenses impacted decisions concerning the Guidelines. Plaintiffs are entitled to present that evidence at trial.

Moreover, UBH's contention in its Motion *in Limine* No. 3 to Exclude Evidence of UBH's Rates, Revenues, and Profits ("Mot.") that admitting the stipulated financial information would be a waste of time is hugely overblown. The specific evidence concerning the impact of benefit expense on the Guidelines and coverages is going to be a part of the trial. Also admitting Trial Exhibits 711, 712, and 714, the aggregate and per-member data, will not add much trial time, particularly because the elaborate process by which UBH calculated the numbers is set forth in the parties' stipulation, appended to the parties' Joint Final Pretrial Order. *See* Pretrial Order App'x 2, Stipulation Concerning Per-Member-Per-Month Rates, *Wit* ECF No. 305-4. [1]

---

[1] UBH does not identify any exhibits other than those three that it believes should be excluded. It suggests there may be other exhibits at issue. *See* Mot. at i. ("Such evidence includes, but is not limited to . . . [Trial Exs. 711, 712, 714]."). But the point of motions *in limine* is to permit the other party to respond to, and the Court to consider, the evidentiary issues presented. The Court should construe this motion to apply only to the exhibits UBH actually identified.

## I. UBH'S AGGREGATE AND PER-MEMBER RATE INFORMATION IS RELEVANT TO UBH'S CONFLICT OF INTEREST AND ITS FAILURE TO ACT SOLELY IN THE PARTICIPANTS' AND BENEFICIARIES' INTERESTS.

As explained in Plaintiffs' trial brief, UBH labored under a conflict of interest, and permitted its Guideline-development process to be infected by the company's incessant efforts to minimize "benefit expense." Pls.' Trial Brief, *Wit* ECF No. 299 at 15. Evidence of that conflict of interest is relevant in two ways. It goes directly to Plaintiffs' claim that UBH breached its duty of loyalty under Claim One, namely its duty to act "solely in the interest of the participants and beneficiaries." *See* 29 U.S.C. § 1104 (a)(1). And it is relevant to Claim Two because the Court will "consider that conflict as a factor in determining whether the plan administrator has abused its discretion." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008).

UBH does not dispute that the evidence that it was conflicted by its financial interests, and that those interests tainted its Guidelines, is relevant at trial. Instead, it argues that "evidence of the *amounts* UBH charged its customers, the *amounts* of revenue UBH received, and the *amount* of profit, if any, UBH or its affiliates recorded during the Class period is irrelevant to Plaintiffs' burden of proving that UBH acted under a conflict of interest." Mot. 4:1-4 (emphasis in original). *See also id.* 3:16-26 (arguing that its charged rates and revenues "have no bearing on . . . whether UBH abused its discretion to interpret the terms of each Class members' Plan[]"). UBH is wrong both as a legal and factual matter.

As a legal matter, as to Plaintiffs' breach of fiduciary duty claim, a core question for trial is whether, and to what extent, UBH was incentivized to adopt restrictive level-of-care criteria. And as to the wrongful denial of benefits claim, it is the *severity* of UBH's conflict of interest that is relevant to whether it has abused its discretion. *Glenn* requires the Court to consider the specific factual "circumstances of the particular case." 554 U.S. at 108. "The conflict of interest at issue . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision." 554 U.S. at 117 (citing

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)).[2] Thus, the Supreme Court has made clear that in conducting an abuse-of-discretion analysis, the courts *must* consider the specific "circumstances" of an administrator's conflict of interest, the extent of the conflict including in relation to other factors, and the "likelihood" that the conflict "affected" the decision at issue. *See also Pac. Shores Hosp. v. United Behavioral Health*, 764 F.3d 1030, 1041 (9th Cir. 2014) (emphasizing the need to consider "all of the relevant circumstances" and counseling against "talismans or formulas" in reviewing fiduciary's decision).

As a factual matter, the evidence UBH moves to exclude not only (a) explains the "circumstances of the particular case," *i.e.*, the ways in which UBH is incentivized to minimize its "benefit expense" costs, but also (b) tends to show the *degree* of UBH's incentive to minimize those expenses, and (c) tends to "suggest a higher likelihood that it affected the benefits decision," *i.e.*, the content of the Guidelines at issue. *Glenn*, 554. U.S. at 117.

For purposes of UBH's business, plans were either "fully insured" ("FI") or "administrative services only" ("ASO"). Whether a plan was FI or ASO was determined by which entity bore the "risk"—*i.e.*, which entity was responsible for paying the benefit expense associated with approved requests for coverage. Ex. 1 (PMPM Stipulation) (Trial Ex. 711) at 3-4. UBH was paid far more to administer fully-insured plans, because, among other things, UBH was expected to use that (higher) revenue to pay its members' benefits. Between 2011 and 2016, UBH was paid the following per-member, per month ("PMPM") rates, on average, for administering the plans of the Class members:

| Year | Avg. Fully Insured PMPM Rate | Avg. ASO PMPM Rate |
|---|---|---|
| 2011 | [redacted] | [redacted] |
| 2012 | [redacted] | [redacted] |

[2] UBH tries to distinguish *Glenn* by asserting that "denying medically necessary benefits can actually *increase* overall costs" by worsening patients' conditions, leading to higher long-term outlays. *See* Mot. 4:26-28 (emphasis in original). First, the case law has not drawn a distinction between medical benefits or other ERISA benefits for purposes of analyzing *Glenn*-type conflicts of interest. *See Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 707 (9th Cir. 2012). Second, UBH's reasoning – that UBH self-cured its conflict of interest by weighing speculative future claims over immediate savings – is obviously a disputed question of fact, and thus goes to weight, not admissibility.

| | | |
|---|---|---|
| 2013 | [redacted] | [redacted] |
| 2014 | [redacted] | [redacted] |
| 2015 | [redacted] | [redacted] |
| 2016 | [redacted] | [redacted] |

Romano Decl. Ex. 22 (excerpt of Trial Ex. 711). These numbers are also reflected on an aggregate basis. UBH received between [redacted] in revenue from its "commercial" business, the lion's share of which revenue is from fully insured plans:

[redacted]

Reynolds Ex. 9 (Trial Ex. 712) (revenue in millions).

[redacted]

Reynolds Ex. 10 (Trial Ex. 714).

Thus, UBH received up to [redacted] in annual revenue during the class period for its commercial business alone (Trial Ex. 712). Between [redacted] percent of that revenue was for fully-insured plans (Trial Ex. 714), for which UBH makes far more revenue on a per-member basis (Trial Ex. 711), and for which UBH undisputedly has an incentive to minimize the amount it spends on benefit expense. *See* Mot. 4:5-15.

Moreover, during the same time period, UBH was operating on slim profit margins: between [redacted] percent (Trial Ex. 712). As a result, developing restrictive Guidelines, and tightly managing its coverages, could have a real impact on its continued profitability. And, the financial evidence goes hand-in-glove with the evidence of specific instances where financial considerations impacted decisions on the Guidelines' content. *See* Pls.' Opp'n to UBH's Mot. *in Limine* No. 2.

Indeed, UBH's witnesses surely will argue that when they were trying to minimize "benefit expense" they were only looking out for the interests of UBH's "customers," *i.e.*, the plans. Even setting aside whether such testimony is relevant to UBH's duty to act "solely in the interest of the participants and beneficiaries," the evidence UBH is now trying to exclude will show that defense for what it is: untethered to reality. The vast bulk of UBH's revenue is derived from fully-insured plans. And UBH operates on thin profit margins that surely make even more potent the incentives to minimize costs.

That is also why UBH's argument about the particular "amounts" UBH received from particular plans is beside the point. *See* Mot. 3, 4. Plaintiffs do not intend to spend trial time on, for example, particular dollar figures for particular plans appearing on the spreadsheets underlying the PMPM Stipulation. The precise dollar figures are not what Plaintiffs intend to rely on. It is the relative size of those rates, on an average basis, and considered together with UBH's aggregate revenue and profits, that go to the core of UBH's conflict of interest and the extent to which the conflict incentivized UBH to adopt restrictive Guidelines. And *that* evidence is what is reflected in the exhibits UBH wants to exclude.

UBH also incorrectly asserts that "it is undisputed . . . UBH *did not* operate with a structural conflict of interest" for claims under self-funded plans. Mot. 4:22-24 (emphasis in original). But the evidence will show that UBH still had a conflict of interest even when it did not directly pay benefit claims. Put simply, UBH is more attractive to employer customers where it keeps benefit payments low. *See Pac. Shores Hosp.*, 764 F.3d at 1041 (court noting, but not reaching, contention that "UBH, even though a third-party administrator, was operating under a conflict of interest . . . [based on] UBH's self-interest in continuing its contractual relationship with [the employer sponsor]"); *Meguerditchian v. Aetna Life Ins. Co.*, 999 F. Supp. 2d 1180, 1186 (C.D. Cal. 2014) ("The fact that [employer] funds the Plan but delegates claims-administration responsibilities to Aetna does not negate a structural conflict outright. In such a situation, the symbiotic relationship between [employer] and Aetna creates an incentive for Aetna to reach results that are favorable to [employer] to foster and sustain their business

relationship.”), *aff’d*, 648 F. App’x 605 (9th Cir. 2016).[3]

For these reasons, the evidence UBH moves to exclude “has a[] tendency to make a fact more or less probable than it would be without the evidence.” Fed. R. Evid. 401(a). At bottom, UBH’s motion does not raise a question of admissibility, but of weight; the Court will decide what evidence to believe and determine what inferences should be drawn. *See Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 902 (9th Cir. 2016) (“[I]t is [plaintiff’s] burden, as the party claiming a conflict, to produce evidence of a financial conflict *sufficient* to warrant a degree of skepticism,” which plaintiff satisfied by “[t]he magnitudes of [payment] numbers . . . rais[ing] a fair inference that there is a financial conflict.”) (emphasis added).

## II. UBH’S OTHER ARGUMENTS ALSO FAIL.

UBH also argues that even if the aggregate and per-member financial data is relevant, it should be excluded because (a) Plaintiffs “[a]pparently intend[]” to rely on the evidence “solely” to support their request for a surcharge and (b) based on that “apparent[] inten[t],” Plaintiffs should be barred from relying on financial evidence for any purpose other than the (dismissed) surcharge remedy. Mot. 1-3. This argument fails for two independent reasons.

First, UBH does not point to any requirement that Plaintiffs, during discovery or otherwise, must identify and disclose every relevancy theory for every piece of evidence, or every piece of evidence that would support each part of its claims. No such requirement exists.

Second, even if there were such a requirement (which there is not), Plaintiffs have never stated that, at trial, UBH’s aggregate financial data and per-member rates would be “exclusively” relevant to Plaintiffs’ surcharge claim. *Cf.* Mot. at 2:18. UBH points to no such representation. To the contrary, Plaintiffs have made clear that the evidence is also relevant to UBH’s conflict of interest. *See, e.g.*, Joint Case Mgmt. Stmt. 6:15-19, *Wit* ECF No. 273 (explaining that “Plaintiffs intend to offer internal UBH documents and the testimony of one or more UBH witnesses to

[3] The case cited by UBH, *Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1025 (9th Cir. 2008), is irrelevant, as it does not address the question of a claim administrator’s conflict of interest vis-à-vis a self-funded plan.

establish that UBH was influenced by a conflict of interest when it developed its Guidelines, *such that UBH elevated its own financial interests* above the interests of participants and beneficiaries in the Plans.") (emphasis added). Indeed, UBH's own motion makes clear that it understood and anticipated that Plaintiffs would offer the evidence as proof of UBH's conflict of interest. *See* Mot. 3:26-28 ("Plaintiffs may argue that [the] evidence . . . is relevant to prove that UBH acted under a conflict of interest.").

In a single paragraph at the end of its motion, UBH makes the fallback argument that admitting this evidence would be "needlessly cumulative and time-consuming." Mot. 5:17-6:2. UBH posits that admitting the evidence would necessitate extensive testimony about how UBH set its rates and how it calculated profits. This argument overstates the need. As discussed above, the aspects of the evidence on which Plaintiffs intend to rely are straightforward and easy to explain. It is UBH that threatens to create an unnecessary, irrelevant, and wasteful sideshow with respect to such evidence. Such an effort would give rise to possible Rule 403 concerns, but that is not a bar to Plaintiffs' use of appropriate evidence in the first instance.

Finally, UBH argues the evidence should be excluded because it would raise "sealing issues." Mot. 6:1. UBH does not point to any language in Rule 403 or elsewhere to support the proposition that Plaintiffs can be barred from admitting otherwise relevant evidence on the basis of "sealing issues." Plaintiffs vigorously dispute the notion that any of the financial information at issue rises to the level of a trade secret that would require sealing. But even if some or all of the evidence would need to be filed under seal that has nothing to do with whether the evidence should be admitted in the first place.

## CONCLUSION

The Court should deny UBH's Motion *in Limine* No. 3. The evidence illustrates the severity of UBH's conflict of interest and the ways in which UBH had, and continues to have, a potent incentive to adopt restrictive level-of-care criteria, and is directly pertinent to whether it acted solely in the interests of plans and beneficiaries. Trial Exhibits 711, 712, and 714 should be admitted.

Dated: September 15, 2017

ZUCKERMAN SPAEDER LLP

s/ Caroline E. Reynolds
D. Brian Hufford
Jason S. Cowart
Carl S. Kravitz
Aitan D. Goelman
Caroline E. Reynolds
Adam B. Abelson
Sara Alpert Lawson

PSYCH-APPEAL, INC.
Meiram Bendat

*Attorneys for Plaintiffs*