PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br>Action Filed: May 21, 2014<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S ADMINISTRATIVE MOTION TO SEAL TRIAL EXHIBITS** |
| GARY ALEXANDER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-05337-JCS<br>Action Filed: December 4, 2014<br><br>Judge: Hon. Joseph C. Spero<br>Courtroom: G<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

UBH asks the Court to seal **154** trial exhibits in full. Def.'s Admin. Mot. to Seal Trial Exs., *Wit* ECF No. 332 ("Mot.").[1] But UBH fails to make the particularized showing required to justify sealing each exhibit for "compelling reasons." Moreover, the reasons it asserts—competitive-standing concerns and privilege—are refuted by inspection of the documents themselves. Remarkably, UBH concedes that, as to some or all of the documents, only some (unspecified) *portion* should be sealed. *Id.* 5:22-23. It suggests that "[t]o the extent" that an exhibit "requires redaction," UBH "will prepare redacted versions . . . upon the Court's request or their admission into evidence." *Id.* 5:22-25. But it does not even attempt to identify, for the Court or Plaintiffs, *which* portion(s) should be redacted, let alone why *those portions* satisfy the "compelling reasons" standard. The Court should reject UBH's motion in its entirety.

Access to trial records lies "at the heart of the interest in ensuring the public's understanding of the judicial process and of significant public events." *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (internal quotes omitted). The Court "start[s] with a strong presumption in favor of access to court records," *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003), and UBH bears the burden of demonstrating "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178 (internal cites and quotes omitted). It is not enough to offer "unsupported hypothesis or conjecture," *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995), and in general, "compelling reasons" exist only in a narrow set of circumstances—where the records may be used to "gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179. The fact that disclosure "may lead to a litigant's embarrassment, incrimination, or exposure to further litigation" is ***not*** enough to compel sealing. *Id.*

[1] By counsel's count, UBH's proposed order actually lists 175 exhibits. Of those listed, 21 exhibits are subject to the parties' joint motion to seal. *Wit* ECF No. 331. This opposition does not pertain to those exhibits. This figure also does not include any exhibits UBH identified in its Exhibit A (ECF No. 332-2) but did not list in its proposed order. To avoid doubt, Plaintiffs also oppose sealing those exhibits, as well, for the reasons stated herein.

## I. FOR ABOUT HALF OF THE EXHIBITS, UBH HAS NOT ATTEMPTED THE PARTICULARIZED SHOWING NECESSARY TO SUPPORT SEALING.

Courts have rejected litigants' requests to seal documents where they fail to tie a broad-based and abstract assertion of confidentiality to the concrete particulars of specific documents. "Simply mentioning a general category of privilege, without any further elaboration ***or any specific linkage with the documents***, does not satisfy the burden." *Kamanaka*, 447 F.3d at 1184 (emphasis added); *GoDaddy.com v. LLC v. RPost Comm'ns Ltd.*, 2016 WL 1158851, at *5 (N.D. Cal. Mar. 24, 2016) (rejecting request to seal on this basis). *See also Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 2015 WL 984121, at *2 (N.D. Cal. Mar. 4, 2015) ("[A]lthough there may be compelling reasons to seal some portions of some or all of these exhibits, [defendant] has failed to articulate these reasons or to explain why the exhibits must be sealed in their entirety."). *Cf. Foltz*, 331 F.3d at 1130 ("A party asserting good cause bears the burden, ***for each particular document it seeks to protect***, of showing that specific prejudice or harm will result[].") (emphasis added).

UBH's motion is grossly overbroad. While its proposed order (ECF No. 332-5) asks the Court to seal more than 150 exhibits falling into various abstract categories, its declarations in support of the motion only address the specifics of about half the documents. The Bualat declaration does not even touch on 74 of the exhibits at issue; the motion clearly fails as to each of those exhibits.[2] The Easterday declaration does not fix this infirmity, because it simply points to the marked-up exhibit list (Exhibit A), while making no effort to establish that the listed exhibits ***actually*** contain any information that is competitively-sensitive, a trade secret, or privileged. The Easterday declaration also is not a detailed exhibit-by-exhibit explanation of how UBH would be harmed by disclosure, such that compelling reasons exist for sealing. *Compare Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1218 (Fed. Cir. 2013) ("The declarations individually addressed ***each*** document Apple sought to seal[].") (emphasis added).

---

[2] The Bualat declaration is silent as to Trial Exhibits 279, 285, 296, 304, 327, 329, 358, 372, 373, 394, 397, 405, 430, 432, 433, 435, 437, 438, 440, 441, 442, 443, 444, 466, 470, 472, 500, 504, 505, 528, 531, 535, 544, 548, 552, 564, 573, 711, 712, 713, 714, 715, 716, 729, 730, 731, 732, 736, 737, 738, 745, 747, 749, 752, 755, 762, 765, 777, 787, 788, 789, 792, 795, 797, 799, 800, 806, 812, 813, 814, 1026, 1067, 1190, and 1210.

Where the Bualat declaration does focus on specific exhibits (as "examples"), some were part of the parties' joint motion to seal, *Wit* ECF No. 331, as noted above, and need not be addressed here. *See* Bualat Decl. ¶ 5(b) (referencing Ex. 782); ¶ 16 (referencing Exs. 757, 758, 759, 761, 763). Others were omitted from UBH's proposed order on its motion to seal, and therefore it is unclear whether UBH even wants them to be sealed. *See* Bualat Decl. ¶ 5(b) (referencing Exs. 720, 722, 723, 724, 774, 790); ¶ 7(a) (referencing Ex. 499); ¶ 11(d) (Ex. 748).

The blunderbuss nature of UBH's motion militates against granting it. Even assuming that UBH has identified theoretically valid grounds for sealing, UBH cannot ask the Court, or Plaintiffs, to do its work for it—undertaking a robust, document-by-document assessment of whether each exhibit truly involves competition concerns, trade secrets, or attorney-client privilege, in the absence of representations or argument by UBH about why they do. If UBH wants the Court to take the extraordinary step of sealing a sizeable portion of the record of a public trial, it has to present compelling reasons for each exhibit. After all, "[t]he 'compelling reasons' standard is a strict one." *Icon-IP*, 2015 WL 984121, at *2.

## II. THE EXHIBITS DO NOT CONTAIN SENSITIVE INFORMATION PRESENTING A "COMPELLING REASON" FOR SEALING.

The "compelling reasons" standard, which undisputedly applies here, is more stringent than the "good cause" standard for non-dispositive motions. *See Kamakana*, 447 F.3d at 1180-81. This distinction is manifest in *Kamakana*'s listing of "trade secrets" among the narrow categories that establish compelling reasons for secrecy, while omitting the more generic reasons for a Rule 26(c) protective order (addressing "confidential research, development, or commercial information"). As noted above, "compelling reasons" generally require a movant to show that disclosure of the documents would "gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179.

UBH's exhibits do not contain "trade secrets," and UBH does not suggest otherwise. Instead, its motion is premised on (a) purported harm to UBH's "competitive standing," *see In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008), and (b) its broad-brush assertion of attorney-client privilege, including as to documents it has *never before* claimed were privileged.

As to each class of documents, UBH's motion should be denied.

**A) Documents containing "financial information."** UBH is correct that if it could show certain information would harm its competitive standing, such information should be sealed. *See Elec. Arts*, 298 F. App'x at 569; Mot. at 2:7-3:16.[3] But it cannot simply assert that it does not want its customers or competitors to know particular information. And it cannot rely on "unsupported hypothesis or conjecture" that its business will be harmed. *Hagestad*, 49 F.3d at 1434. Instead, it must articulate "compelling reasons supported by specific factual findings," *Kamakana*, 447 F.3d at 1178, that disclosure of particular information in particular documents would "harm its competitive standing." *Elec. Arts*, 298 F. App'x at 569.

The documents that UBH seeks to seal do not contain information the disclosure of which would "harm [UBH's] competitive standing." At the least, they are not comprised solely of such information, so as to warrant sealing of the entire exhibit. *See Elec. Arts*, 298 F. App'x at 570 (holding that a redacted version of a licensing agreement, omitting only the sensitive information, had to be public); *Apple*, 727 F.3d at 1218 ("In most instances, rather than asking to seal documents in their entirety, Apple sought only to redact certain information.").

For example, Exhibit 764 [redacted] It is difficult to discern any special "metrics," concrete data, or unique processes that a competitor could glean from this exhibit and use to UBH's disadvantage. It is similarly difficult to hypothesize how a competitor could use Exhibit 433, [redacted], to "undercut" UBH or "market to" its customers. *Contra*

---

[3] *Electronic Arts* involved a sealing dispute around a single exhibit that the sealing proponent felt so strongly about that it sought mandamus, apparently in the middle of trial. That sort of limited, focused inquiry is a far cry from the dragnet approach UBH takes here, seeking to seal over 150 exhibits in their entirety. Also instructive is *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214 (Fed. Cir. 2013) (applying Ninth Circuit law). Even in that case—"The Patent Trial of the Century"—the parties sought to seal fewer trial exhibits than UBH seeks to seal in its motion, and did so with targeted redactions. *See id.* at 1218 (46 from Apple, 12 from Samsung). The Court noted that the parties' employees provided declarations that "individually addressed each document, explaining the measures [taken] to maintain each document's confidentiality and describing the competitive harm [the respective party] would suffer from disclosure." *Id.* at 1218. The comparison underscores the extraordinary breadth of UBH's motion.

Easterday Decl. ¶ 5. In the same vein, Exhibit 387, [redacted] does not appear to contain any specialized data—[redacted] Likewise, Exhibit 443 [redacted] but not in a way specialized enough to give UBH's competitors meaningful insight. The same goes for Exhibit 573; [redacted] but it is hard to see how a competitor could utilize such information. Neither Bualat nor Easterday explains exactly how disclosure of these exhibits could harm UBH competitively.

To the extent any of the exhibits contains concrete data about UBH's "profit, profit margins, or revenue," it is difficult to see, in the abstract, how such information could harm UBH. *See GoDaddy.com*, 2016 WL 1158851, at *4 ("Nor is the Court persuaded that such revenue information is a sealable trade secret. [The proponent's] explanations for sealing are generalized . . . and lack substantiation with specific examples or articulated reasoning."). For example, UBH seeks to seal Exhibit 284, [redacted] that its alleged usefulness for competitors is vitiated.

UBH also points to exhibits comprising third-party agreements. But Exhibits 736, 737, and 738 [redacted] UBH has not articulated how disclosure could harm its competitive standing: [redacted] In any event, the case law is again clear that only the competitively-sensitive portions of agreements should be sealed. *See Elec. Arts*, 298 F. App'x at 570. UBH fails entirely to identify what those portions might be, or why.

**B) Documents containing "business information."** UBH asserts certain exhibits should be sealed because they contain information about "UBH's internal processes and product strategies." Bualat Decl. ¶ 6. This category conflates a host of different considerations, *see* Mot.

2:15-3:19, obfuscating what specific basis is advanced for each listed exhibit. In any event, there are various exhibits the disclosure of which does not present any discernable risk to competitive standing. For example, [redacted] that comprise Exhibit 535, [redacted] Exhibit 279, [redacted] but does not provide any details on how they work. [redacted] reveals less information than UBH publishes on its own website about the ALERT program.[4] Likewise, Exhibit 792 [redacted]—information that has been incorporated into UBH's publicly-available guidelines.[5]

UBH asserts broadly that some exhibits contain "future business plans," which information could be used to UBH's disadvantage. Mot. at 2:2-4, 3:15-16. But the documents are from years ago, so it is not self-evident that such information could be harmful *now*. And if the information simply reveals consideration of possible strategies, it is also not self-evident such information is helpful to UBH's competitors. Other documents allegedly contain "Customer Usage Data," including information about denial rates and average length of stay. *See* Bualat Decl. ¶ 10. UBH nowhere explains how such information could be used to its competitive disadvantage. *See* Easterday Decl. ¶ 9 (focusing solely on cost of treatment data, which could possibly affect provider negotiations). The connection between denial rates and "negotiations [with providers] to UBH's detriment" is not clear at all. Thus, there is no compelling reason to seal exhibits because they might contain utilization data ([redacted]).

---

[4] "ALERT® (ALgorithms for Effective Reporting and Treatment), Certification of Outpatient Benefits and Care Advocacy Processes," https://www.providerexpress.com/content/dam/ope-provexpr/us/pdfs/ourNetworkMain/welcomeNtwk/alertFlyer.pdf. *See also* "ALERT® - Algorithms for Effective Reporting and Treatment," https://www.providerexpress.com/content/ope-provexpr/us/en/admin-resources/alert-introduction.html. The latter webpage includes sections entitled, "How the Process Works," and "The Science."

[5] *See, e.g.*, https://www.providerexpress.com/content/dam/ope-provexpr/us/pdfs/clinResourcesMain/guidelines/optumLOCG/locg/locgTMS.pdf.

**C) Documents containing employee performance evaluations.** UBH asserts that Exhibits 815 through 870 should be sealed because they "contain information about the performance of individual employees at UBH." Bualat Decl. ¶ 12. The Easterday Declaration adds only that the reviews are "generally kept confidential." *Id.* at ¶ 16. Those reasons do not meet the compelling reason standard; indeed, UBH does not even try to do so. UBH's motion notes the Court's previous finding of *good cause* to seal the reviews and cites cases that appear to apply a *good cause* standard. *See* Mot. at 3:24-4:4; *Hechevarria v. City and Cty. of San Francisco*, 2011W L 1099861, at *2 (N.D. Cal. Mar. 24, 2011) (contrasting good-cause sealing under protective order with compelling reason standard: "embarrassment [of the employee] alone is not a compelling reason"); *Seals v. Mitchell*, 2011 WL 1233650, at *3 (N.D. Cal. Mar. 30, 2011) (appearing to apply "good cause" standard). Thus, these exhibits should not be sealed.

**D) Documents over which UBH asserts privilege.** UBH asserts that certain documents must be sealed because they are attorney-client privileged (they were shared with Plaintiffs pursuant to the fiduciary exception). *See* Mot. 4:6-5:16. Even if the privilege could be a compelling reason to seal, UBH fails the threshold step of proving it applies to each document.[6]

As to 17 of the exhibits that UBH now argues contain privileged communications, UBH has waived the privilege. *See* Bualat Decl. ¶ 16 (referencing Exs. 351, 389, 398, 439, 458, 459, 460, 558, 757, 758, 763, 768, 802-804, 809, 810). It produced the documents in the ordinary course of discovery, *not* pursuant to the parties' carefully-negotiated stipulations and process by which UBH (a) logged allegedly privileged documents and then (b) produced only those that were covered by the fiduciary exception to the attorney-client privilege.[7] The privilege is clearly

---

[6] UBH's motion also references attorney work-product protection as a basis for sealing. *See* Mot. at 4:7, Bualat Decl. at ¶ 13. But its privilege log only mentions attorney work product in connection with Exhibit 438, which is already part of the parties' joint motion to seal. *See* Reynolds Decl. ¶ 4. There is no explanation as to which, if any, exhibits present work-product concerns, or how. Indeed, given that documents pertaining to specific litigation or anticipated litigation against UBH would fall *outside* the fiduciary exception, to the extent UBH produced such documents to Plaintiffs, it waived any work-product assertion it might otherwise have been entitled to assert. UBH's attorney work-product argument, to the extent it raises one, should be rejected.

[7] Besides the documents wholly omitted from UBH's log, there is one exhibit at issue—Exhibit 795—which was listed, but *not* identified as produced pursuant to the stipulations. *See* Reynolds

waived as to each such document—and moreover, UBH's production to Plaintiffs in each instance constitutes a subject-matter waiver. *See Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir. 1996) ("[T]he focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship, not the holder's intent to waive the privilege. . . . [And] a holder's disclosure of privileged communications during discovery waives the holder's right to claim the privilege as to communications about the matter actually disclosed[].").

UBH now asserts that it had no obligation to log all the documents it thought were privileged, claiming they were logged for "administrative purposes only." Mot. 4:9-10. Nothing could be further from the truth. Even after the Court ordered UBH to produce documents covered by the fiduciary exception, *Wit* ECF No. 118, UBH withheld privileged documents from subsequent productions and would only provide them pursuant to stipulations specifically acknowledging that UBH produced the documents pursuant to the exception and was not waiving its privilege. Reynolds Decl. Exs. 1 and 2. The stipulations attached UBH's privilege logs and identified the documents as to which UBH continued to assert privilege notwithstanding production to Plaintiffs. Both stipulations provide that they apply "***solely with respect to the privileged documents on***" the attached privilege logs. Ex. 1 at ¶ 5 (emphasis added); Ex. 2 at ¶ 5 (same). UBH did not make any provision for documents outside the attached logs. At no time during the protracted negotiations of these stipulations did UBH suggest that its productions included other privileged documents not mentioned in the stipulations. As to those documents, Plaintiffs were not "within the privilege" alongside UBH. *Contra* Mot. at 4:26-27. UBH's production of those documents without so much as listing them on the log, let alone bringing them within the stipulations, effected a subject-matter waiver.[8]

---

Decl. ¶ 5. Rather, that exhibit has attorney-client redactions in the document itself—meaning UBH took the time to withhold targeted information and produced the rest freely. This exhibit is a perfect example of just how after-the-fact UBH's privilege invocation is.

[8] This background shows the rich irony of UBH's assertion that Plaintiffs' challenge to the invocation of privilege is "belated[]." Mot. at 4:15. Plaintiffs could not challenge the invocation where it was not made. And UBH cites no authority that Plaintiffs were required to make a challenge earlier, especially given that UBH produced the documents and the stipulations expressly reserved without deadline Plaintiffs' "right to dispute UBH's assertion of privilege

A number of the purportedly privileged exhibits [redacted]. *See, e.g.*, Exs. 327, 358, 439, 458, 459, 460, 504, 558, 564, 768, 802. Copying in-house counsel on an email chain dedicated primarily or exclusively to business concerns does not give rise to the privilege. *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) ("The privilege does not protect an attorney's business advice. Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys."). Even where a lawyer might offer unsolicited advice, or the matter has regulatory implications, the privilege does not attach: UBH "must demonstrate that the '***primary purpose***' of the communication was securing legal advice." *Id.* at 1076 (emphasis added); *United States v. Chevron Corp.*, 1996 WL 264769, at *3 (N.D. Cal. Mar. 13, 1996) ("If the document was prepared for purposes of simultaneous review by legal and nonlegal personnel, it cannot be said that the primary purpose . . . is to secure legal advice."). And any privileged *portion* does not automatically render the *whole* exhibit privileged. *See United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 306 F.R.D. 234, 240 (N.D. Cal. 2015) ("A single email of a 'legal nature' does not privilege the entire email thread.") (alterations omitted). Applying these principles to the documents that UBH seeks to seal on the basis of privilege shows that UBH's motion must fail.

Some of the exhibits are so far from any recognizable basis for privilege that it raises questions about how carefully UBH has considered its invocation. For example, Exhibit 755 [redacted] Even if that comment could somehow be construed as seeking legal advice, it certainly does not make the whole chain privileged.

---

over particular documents[]." Reynolds Decl. Ex. 1 at ¶ 6(a); Ex. 2 at ¶ 6(a). The dispute over invocation has only arisen because of UBH's improper attempt to seal the exhibits.

Exhibit 461 [redacted]. *See ChevronTexaco*, 241 F. Supp. 2d at 1076.

Similarly, Exhibit 564 [redacted] or that it might have given rise to *separate* communications involving the provision of legal counsel does not make *this* email chain privileged.

It is UBH's burden to prove the privilege applies. *ChevronTexaco*, 241 F. Supp. 2d at 1076 ("With respect to internal communications involving in-house counsel, [proponent] must make a 'clear showing' that the 'speaker' made the communications for the purpose of obtaining or providing legal advice."); *Kamanaka*, 447 F.3d at 1178 (proponent of sealing bears burden). UBH has failed to do so. Even if small portions of some exhibits may be privileged, UBH has instead chosen to argue they must be sealed in their entirely. That is patently not true. *See generally Christensen*, 828 F.3d at 803 ("The claim of privilege must be made and sustained . . . on a document-by-document basis; a blanket claim of privilege is unacceptable. The scope of the privilege should be strictly confined within the narrowest possible limits."). Again, it is not the Court's or Plaintiffs' obligation to go through the exhibits with a fine-toothed comb to identify what might be privileged, all for UBH's benefit.

## CONCLUSION

For these reasons, UBH's Administrative Motion to Seal Trial Exhibits should be denied.

Dated: October 2, 2017

ZUCKERMAN SPAEDER LLP

/s/ Caroline E. Reynolds

Carl S. Kravitz
Aitan D. Goelman
Caroline E. Reynolds
Adam B. Abelson

PSYCH-APPEAL, INC.
Meiram Bendat

*Attorneys for Plaintiffs*