JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
JEFFREY H. RUTHERFORD (SBN 181695)
jrutherford@crowell.com
ANDREW HOLMER (SBN 268864)
aholmer@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Phone: (213) 622-4750
Fax: (213) 622-2690

NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Phone: (415) 986-2800
Fax: (415) 986-2827

APRIL N. ROSS (admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED BEHAVIORAL HEALTH, <br><br> Defendant. | Case No. 3:14-CV-02346-JCS <br> Related Case No. 3:14-CV-05337-JCS <br><br> **DEFENDANT'S ADMINISTRATIVE MOTION TO SEAL TRIAL EXHIBIT NUMBERS 290, 291, 525, 715, 772, 777 AND 812** <br><br> Trial Date: October 16, 2017 <br><br> Judge: Hon. Joseph Spero <br> Courtroom: G |

DEFENDANT'S ADMINISTRATIVE MOT. TO SEAL;
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

SFACTIVE-904627757.1

CROWELL
& MORING LLP
ATTORNEYS AT LAW

| | |
|---|---|
| 1 | GARY ALEXANDER, et al., |
| 2 | Plaintiffs, |
| 3 | v. |
| 4 | UNITED BEHAVIORAL HEALTH, |
| 5 | Defendant. |

CROWELL
& MORING LLP
ATTORNEYS AT LAW

SFACTIVE-904627757.1

DEFENDANT'S ADMINISTRATIVE MOT. TO SEAL;
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Civil Local Rules 79-5 and 7-11 and the protective order ("Protective Order") entered by the Court in this action, Defendant United Behavioral Health ("UBH") hereby moves to seal the Trial Exhibit Numbers 290, 291, 525, 715, 772, 777 and 812. Pursuant to Civil Local Rule 79-5(d)(1), this motion is accompanied by the Declaration of Nisha Patterson (the "Patterson Decl."), the October 17, 2017 Declaration of Adam Easterday ("Easterday Decl."), the Declaration of Joyce McCulloch[1] (the "McCulloch Decl."), and a proposed order.

Pursuant to the Court's guidance at the October 5, 2017 Pretrial Conference, UBH seeks to seal only the most sensitive financial, proprietary, and privileged information, where possible by means of the "minimal redactions" that the Court requested. (Oct. 5, 2017 Hrg. Tr., at 48:23–49:2.) As stated more fully below, and as set forth in the Patterson and Easterday declarations, compelling reasons exist to seal, in whole or in part, the public versions of these documents to the extent they are used at trial. *See FTC v. DIRECTV, Inc.*, 2017 WL 840379, at *1 (N.D. Cal. Mar. 3, 2017) ("a party seeking to seal evidence at trial must articulate 'compelling reasons' for doing so.").

**I.    Compelling Reasons Exist to Seal UBH's PMPM Rates and Financial Information.**

Compelling reasons exist to seal the portions of Trial Exhibit Numbers 525, 715, 772 and 777 that contain information about UBH's Per-Member Per-Month ("PMPM") rates from 2014 through the present. Redacted versions of Exhibits 525, 715, 722 and 777 are filed concurrently herewith. As discussed in the Patterson and Easterday Declarations, this information is highly sensitive because it is the foundation for the price that UBH charges to administer, and in some cases insure, its customers' health plans. Patterson Decl., ¶¶ 2, 4; Easterday Decl., ¶¶ 3, 5. *See also* ECF No. 264-3 (Declaration of Heather Catlin noting same regarding similar financial information). If one of UBH's competitors were to obtain information about UBH's PMPM rates, they could then price their rates under UBH's, thereby placing UBH in a diminished bargaining position in future negotiations. Patterson Decl., ¶ 5; Easterday Decl., ¶ 6.

---

[1] The McCulloch Decl. was previously filed in this case at ECF No. 138-1.

In an effort to protect the free and open access to Court records, UBH has prepared redacted versions of Exhibits which redact only sensitive PMPM rate information (or information that could easily be used to calculate a PMPM rate) from 2014–present because this is most relevant for current negotiations. As discussed further in the Patterson and Easterday Declarations, UBH's parent company, United Healthcare, typically negotiates rates on a 3-year cycle, so information about PMPM rates from 2014 is still relevant in current negotiations. Patterson Decl., ¶ 4; Easterday Decl., ¶ 6.

As explained more fully in the Patterson and Easterday declarations, Trial Exhibits 525, 715, 772 and 777 each contains sensitive financial information about UBH's PMPM rates—either the actual rates or data that could easily be combined to calculate the actual rates. Patterson Decl., ¶ 6; Easterday Decl., ¶¶ 7–9. If this information were allowed to enter the public domain, there is a substantial risk that UBH would suffer serious competitive harm. It is for this reason that PMPM rates are kept as some of the most closely guarded and proprietary information in the insurance industry. Patterson Decl., ¶ 5; Easterday Decl., ¶ 6. For example, if one of UBH's competitors obtained UBH's PMPM rate information (or sufficient information to calculate that rate), UBH would be at a significant disadvantage in competitive negotiations with potential customers because its competitors could undercut UBH with information that is not generally shared. Patterson Decl., ¶ 5; Easterday Decl., ¶ 6. This limited, timely, and highly confidential financial information is relevant to ongoing competitive negotiations and is precisely the sort of information that "could really . . . change a competitor's conduct," such that it warrants sealing. (Oct. 5, 2017 Hrg. Tr., at 49:3–5.)

Courts in the Northern District consistently hold that "compelling reasons" exist to seal such confidential rate information. *See, e.g.*, *In re Electronic Arts, Inc.*, 298 Fed. App'x 568, 569 (9th Cir. 2008) (finding that "pricing terms . . . plainly fall[] within the definition of 'trade secrets'" under the "compelling reasons" standard). *See also Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 2015 WL 984121, at *2 (N.D. Cal. Mar. 4, 2015) ("pricing, profit, and customer usage information, when kept confidential . . .is appropriately sealable under the 'compelling reasons' standard").

**II.     Compelling Reasons Exist to Seal Privileged Information.**

Compelling reasons also exist to seal Trial Exhibit Number 812 because it contains privileged attorney-client communications. Easterday Decl., ¶¶ 10–12. In the rare case that a party produces a document containing privileged information without waiving privilege, that document should be sealed if it is filed. *Guidiville Rancheria of California v. United States*, 2013 WL 6571945, at *9 (N.D. Cal. Dec. 13, 2013) ("[T]he attorney-client privilege . . . establishes compelling reasons for sealing [a document] from the public record"). *Accord Salcido v. Chappell*, 2012 WL 6126368, at *1 (N.D. Cal. Dec. 10, 2012). It is for this reason that the Court has already ordered a number of privileged documents sealed for the purposes of trial. (*See* Oct. 5, 2017 Hrg. Tr., at 47:20–48:1.) In *United States v. ChevronTexaco Corp.*, Judge Chesney observed that, as long as the primary purpose' of the communication was securing or providing legal advice, communications with an in-house attorney may be protected by the privilege, even where—in that case—the request involves a business transaction. *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002).

Only one privileged exhibit is currently at issue, Trial Exhibit Number 812. As discussed in Mr. Easterday's declaration, this document is a chain of emails, beginning with notes about legal advice that Mr. Easterday provided at an internal meeting and ending with Martha Temple's response to this legal advice, her reasons for this response, and her request for more legal advice. Easterday Decl. ¶¶ 10–12. Because Mr. Easterday's legal advice permeated this document and because he continued to provide legal advice throughout the email discussion, UBH seeks to seal it in its entirety.

The context of Ex. 812 shows that the primary purpose for Mr. Easterday's advice was not to provide business advice but rather to provide legal advice regarding UBH's response to regulatory inquiries. In or around early 2016, UBH was in the process of responding to multiple inquiries from various states' regulatory agencies regarding the Coverage Determination Guideline for Applied Behavior Analysis ("ABA"), an emergent treatment for Autism. Easterday Decl. ¶ 10. Mr. Easterday provided legal advice about the legal implications of potential responses on multiple occasions. *Id*. In other words, the intent behind Mr. Easterday's

1  communications and the reason he was asked to provide advice in the internal meeting and email
2  chain was to consider the potential responses proposed by various businesspeople and use that
3  information to provide legal advice regarding UBH's obligations under state and federal law.

4  **III.    Compelling Reasons Exist to Seal the Data Dictionaries.**

5  Compelling reasons also exist to seal Trial Exhibit Numbers 290 and 291 (the "Data
6  Dictionaries"). McCulloch Decl., ECF No. 138-1 ¶¶ 1–4.[2] These Data Dictionaries represent the
7  tables that UBH uses to store members' (including the class members') Personal Health
8  Information and Personally Identifying Information in the LINX and ARTT databases, including
9  highly sensitive information about members' behavioral health condition and their history of
10 treatment. *Id.* at ¶ 2. These data dictionaries provide a virtual "roadmap" of UBH's clinical
11 LINX and ARTT databases. *Id.* at ¶ 4. If this information were made public, it would give
12 hackers access to this roadmap and could lead to or affect the severity of security and privacy
13 breaches, increasing the risk that some of UBH's members' most private and confidential
14 personal information would be made public. *Id.* at ¶ 4. Because the information contained in
15 these databases is protected PHI and PII, this risk poses a compelling, if unique, reason that these
16 documents should be filed under seal.

17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///

---

[2] UBH initially filed the McCullouch Declaration in support of its motion to seal documents filed by Plaintiffs in support of their motion for class certification, which the Court granted. At class certification, Plaintiffs filed what are now identified as Trial Exhibits 290 and 291 as a combined Exhibit Q in support of their motion for class certification. References to Exhibit Q in the McCullouch declaration references to Exhibit Q refer to the identical documents which are now lodged with the Court as Trial Exhibits 290 and 291.

### IV. Conclusion

For the reasons set forth above and in the Patterson, McCulloch, and Easterday Declarations, filed concurrently herewith, UBH requests that this Court grant this Motion.

Dated: September 26, 2017

CROWELL & MORING LLP

*/s/ Nathaniel Bualat*
Nathaniel P. Bualat
Attorneys for Defendant
United Behavioral Health