PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted pro hac vice)
Jason S. Cowart (admitted pro hac vice)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs and the Classes*
*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED BEHAVIORAL HEALTH<br>(operating as OPTUMHEALTH<br>BEHAVIORAL SOLUTIONS),<br><br>        Defendant. | Case No. 3:14-CV-02346-JCS<br>Action Filed: May 21, 2014<br><br><br>**PLAINTIFFS' CLAIMS CHART:<br>CHALLENGED UBH GUIDELINE<br>PROVISIONS** |
| GARY ALEXANDER, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED BEHAVIORAL HEALTH<br>(operating as OPTUMHEALTH<br>BEHAVIORAL SOLUTIONS),<br><br>        Defendant. | Case No. 3:14-CV-05337-JCS<br>Action Filed: December 4, 2014<br><br><br>Trial Date:        October 16, 2017<br>Time:              8:30 A.M.<br>Judge:             Hon. Joseph C. Spero<br>Courtroom:         G |

# TABLE OF CONTENTS

PAGE

I.  Introduction ................................................................................................... a

II.  2011 Level of Care Guidelines (Ex. 1) ........................................................ 1

A.  Common Criteria (Ex. 1-0005 to -0008 & Ex. 1-0078 to -0079) ................ 1

1.  Admission Criteria (Ex. 1-0005 to -0008) ........................ 1

2.  Continued Service Criteria (Ex. 1-0078 to -0079)................ 2

B.  Intensive Outpatient Program: Mental Health Conditions (Ex. 1-0018 to -0020)........ 3

C.  Outpatient: Mental Health Conditions (Ex. 1-0021 to -0022) ..................... 4

D.  Residential Treatment Center: Mental Health Conditions (Ex. 1-0026 to -0028)........ 5

E.  Intensive Outpatient Program: Substance Use Disorders (Ex. 1-0042 to -0045) ......... 6

F.  Outpatient: Substance Use Disorders (Ex. 1-0046 to -0048)...................... 7

G.  Residential Rehabilitation: Substance Use Disorders (Ex. 1-0056 to -0059)............... 7

III.  2012 Level of Care Guidelines (Ex. 2) ....................................................... 10

A.  Common Criteria (Ex. 2-0006 to -0009 & Ex. 2-0082)......................... 10

1.  Admission Criteria (Ex. 2-0006 to -0009) ........................ 10

2.  Continued Service Criteria (Ex. 2-0082) ........................ 11

B.  Intensive Outpatient Program: Mental Health Conditions (Ex. 2-0020 to -0022)...... 11

C.  Outpatient: Mental Health Conditions (Ex. 2-0023 to -0024) ................... 12

D.  Residential Treatment Center: Mental Health Conditions (Ex. 2-0028 to -0031)...... 13

E.  Intensive Outpatient Program: Substance Use Disorders (Ex. 2-0047 to -0050) ....... 15

F.  Outpatient: Substance Use Disorders (Ex. 2-0051 to -0053)..................... 16

G.  Residential Rehabilitation: Substance Use Disorders (Ex. 2-0062 to -0065)............. 16

IV.  2013 Level of Care Guidelines (Ex. 3) ....................................................... 19

A.  Common Criteria (Ex. 3-0007 to -0011 & Ex. 3-0089)......................... 19

1.  Admission Criteria (Ex. 3-0007 to -0011) ........................ 19

2.  Continued Service Criteria (Ex. 3-0089) ........................ 20

B.  Intensive Outpatient Program: Mental Health Conditions (Ex. 3-0022 to -0025)...... 21

C.  Outpatient: Mental Health Conditions (Ex. 3-0026 to -0028) ................... 21

D.  Residential Treatment Center: Mental Health Conditions (Ex. 3-0033 to -0036)...... 21

E.    Intensive Outpatient Program: Substance Use Disorders (Ex. 3-0052 to -0055) ....... 23

F.    Outpatient: Substance Use Disorders (Ex. 3-0056 to -0058)..................................... 24

G.    Residential Rehabilitation: Substance Use Disorders (Ex. 3-0067 to -0070)............. 24

**V.    2014 Level of Care Guidelines (Ex. 4)..................................................................... 27**

A.    Common Criteria (Ex. 4-0007 to -0010)..................................................................... 27

    1.    Admission Criteria (Ex. 4-0007 to -0010, first column under "Level of Care Criteria") ....................................................................................... 27

    2.    Continued Service Criteria (Ex. 4-0007 to -0009, second column under "Level of Care Criteria") ........................................................................ 28

    3.    Discharge Criteria (Ex. 4-0007 to -0008, third column under "Level of Care Criteria") ....................................................................................... 28

B.    Intensive Outpatient Program: Mental Health Conditions (Ex. 4-0027 to -0033)...... 29

    1.    Admission Criteria (Ex. 4-0027 to -0033, first column under "Level of Care Criteria")................................................................................................ 29

C.    Outpatient: Mental Health Conditions (Ex. 4-0034 to -0035) ..................................... 29

    1.    Admission Criteria (Ex. 4-0034 to -0035, first column under "Level of Care Criteria")................................................................................................ 30

D.    Residential Treatment Center: Mental Health Conditions (Ex. 4-0043 to -0045)...... 30

    1.    Admission Criteria (Ex. 4-0043 to -0045, first column under "Level of Care Criteria")................................................................................................ 30

    2.    Continued Service Criteria (Ex. 4-0043, second column under "Level of Care Criteria")................................................................................................ 31

    3.    Discharge Criteria (Ex. 4-0043, third column under "Level of Care Criteria") ............................................................................................................ 31

E.    Intensive Outpatient Program: Substance-Related Disorders (Ex. 4-0059 to -0065)............................................................................................................................ 32

    1.    Admission Criteria (Ex. 4-0059 to -0065, first column under "Level of Care Criteria")................................................................................................ 32

F.    Outpatient: Substance-Related Disorders (Ex. 4-0066 to -0067) ............................... 32

    1.    Admission Criteria (Ex. 4-0066 to -0067, first column under "Level of Care Criteria")................................................................................................ 33

G.    Residential Rehabilitation: Substance-Related Disorders (Ex. 4-0077 to -0080)....... 33

      1.     Admission Criteria (Ex. 4-0077 to -0080, first column under "Level of Care Criteria").......................................................................................... 33

      2.     Continued Service Criteria (Ex. 4-0077, second column under "Level of Care Criteria").......................................................................................... 34

      3.     Discharge Criteria (Ex. 4-0077, third column under "Level of Care Criteria")  35

**VII.**   **2015 Level of Care Guidelines (Ex. 5)** ................................................. **36**

   A.   Common Criteria (Ex. 5-0008 to -0010)...................................................... 36

      1.     Admission Criteria (Ex. 5-0008 to -0009) ......................................... 36

      2.     Continued Service Criteria (Ex. 5-0009) ........................................... 37

      3.     Discharge Criteria (Ex. 5-0009 to -0010) .......................................... 38

   B.   Intensive Outpatient Program: Mental Health Conditions (Ex. 5-00030 to -0032).... 38

   C.   Outpatient: Mental Health Conditions (Ex. 5-0033 to -0034) ................................... 38

      1.     Admission Criteria (Ex. 5-0033)........................................................ 39

   D.   Residential Treatment Center: Mental Health Conditions (Ex. 5-0038 to -0040)...... 39

      1.     Admission Criteria (Ex. 5-0038)........................................................ 39

      2.     Continued Service Criteria (Ex. 5-0038 to -0039)............................. 40

   E.   Intensive Outpatient Program: Substance-Related Disorders (Ex. 5-0055 to -0058). 40

   F.   Outpatient: Substance-Related Disorders (Ex. 5-0070 to -0072) ............................... 40

      1.     Admission Criteria (Ex. 5-0070)........................................................ 41

   G.   Residential Rehabilitation: Substance-Related Disorders (Ex. 5-0081 to -0083)....... 41

      1.     Admission Criteria (Ex. 5-0081)........................................................ 41

      2.     Continued Service Criteria (Ex. 5-0082) ........................................... 42

**VIII.**  **2016 Level of Care Guidelines (Ex. 6)** ................................................. **43**

   A.   Common Criteria (Ex. 6-0009 to -0011)...................................................... 43

      1.     Admission Criteria (Ex. 6-0009 to -0010) ......................................... 43

      2.     Continued Service Criteria (Ex. 6-0010) ........................................... 44

      3.     Discharge Criteria (Ex. 6-0010 to -0011) .......................................... 45

   B.   Intensive Outpatient Program: Mental Health Conditions (Ex. 6-00032 to -0035).... 45

   C.   Outpatient: Mental Health Conditions (Ex. 6-0036 to -0038) ................................... 45

      1.     Admission Criteria (Ex. 6-0036)........................................................ 46

D.   Residential Treatment Center: Mental Health Conditions (Ex. 6-0043 to -0045)...... 46

2.   Admission Criteria (Ex. 6-0043)........................................................................ 47

3.   Continued Service Criteria (Ex. 6-0043 to -0044)............................................. 47

E.   Intensive Outpatient Program: Substance-Related Disorders (Ex. 6-0062 to -0065). 48

F.   Outpatient: Substance-Related Disorders (Ex. 6-0079 to -0081) ............................... 48

1.   Admission Criteria (Ex. 6-0079)........................................................................ 48

G.   Residential Rehabilitation: Substance-Related Disorders (Ex. 6-0090 to -0092)....... 49

1.   Admission Criteria (Ex. 6-0090 to -0091) ......................................................... 49

2.   Continued Service Criteria (Ex. 6-0091) ........................................................... 50

X.   **2016 Level of Care Guidelines (Ex. 7)**........................................................................ **51**

A.   Common Criteria (Ex. 7-0009 to -0011).................................................................... 51

1.   Admission Criteria (Ex. 7-0009 to -0010) ......................................................... 51

2.   Continued Service Criteria (Ex. 7-0010) ........................................................... 52

3.   Discharge Criteria (Ex. 7-0010 to -0011) .......................................................... 53

B.   Intensive Outpatient Program: Mental Health Conditions (Ex. 7-0032 to -0035)...... 53

C.   Outpatient: Mental Health Conditions (Ex. 7-0036 to -0038) ................................... 53

1.   Admission Criteria (Ex. 7-0036)........................................................................ 54

D.   Residential Treatment Center: Mental Health Conditions (Ex. 7-0043 to -0045)...... 54

1.   Admission Criteria (Ex. 7-0043)........................................................................ 54

2.   Continued Service Criteria (Ex. 7-0043 to -0044)............................................. 55

E.   Intensive Outpatient Program: Substance-Related Disorders (Ex. 7-0062 to -0066). 55

F.   Outpatient: Substance-Related Disorders (Ex. 7-0080 to -0082) ............................... 55

3.   Admission Criteria (Ex. 7-0080)........................................................................ 56

G.   Residential Rehabilitation: Substance-Related Disorders (Ex. 7-0091 to -0093)....... 56

1.   Admission Criteria (Ex. 7-0091 to -0092) ......................................................... 56

2.   Continued Service Criteria (Ex. 7-0092) ........................................................... 57

XI.   **2017 Level of Care Guidelines (Ex. 8)**......................................................................... **58**

A.   Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024
to -0025)...................................................................................................................... 58

1.   Admission Criteria (Ex. 8-0006 to -0007; Ex. 8-0011, Ex. 8-0024) ................ 58

        2.     Continued Service Criteria (Ex. 8-0007, Ex. 8-0011, Ex. 8-0024)................... 59

        3.     Discharge Criteria (Ex. 8-0007, Ex. 8-0011 to -0012, Ex. 8-0024 to -0025) .... 59

   B.    Outpatient: Mental Health Conditions (Ex. 8-0013 to -0014) ................................... 60

   C.    Intensive Outpatient Program: Mental Health Conditions (Ex. 8-0014 to -0015)...... 60

   D.    Residential Treatment Center: Mental Health Conditions (Ex. 8-0018 to -0019) ...... 60

        1.     Admission Criteria (Ex. 8-0018)........................................................... 61

        2.     Continued Service Criteria (Ex. 8-0018 to -0019).............................. 61

   E.    Outpatient: Substance-Related Disorders (Ex. 8-0026 to -0027) ............................. 62

   F.    Intensive-Outpatient Program: Substance-Related Disorders (Ex. 8-0032 to -0033). 62

   G.    Residential Rehabilitation: Substance-Related Disorders (Ex. 8-0035 to -0036)....... 63

        1.     Admission Criteria (Ex. 8-0035 to -0036) ......................................... 63

        2.     Continued Service Criteria (Ex. 8-0036) ............................................ 64

**XII.    August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003) ................................................................................................................. 64**

**XIII.   December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004) ................................................................................................. 66**

**XIV.   January 2013 Custodial Care Coverage Determination Guideline (Ex. 84-0003) ................................................................................................................. 68**

**XV.    February 2014 Custodial Care Coverage Determination Guideline (Ex. 108-0003) ............................................................................................................... 70**

**XVI.   March 2015 Custodial Care Coverage Determination Guideline (Ex. 148-0003) ............................................................................................................... 72**

**XVII.  April 2016 Custodial Care Coverage Determination Guideline (Ex. 195) ............... 74**

**XVIII. March 2017 Custodial Care Coverage Determination Guideline (Ex. 221) ............. 75**

## I.    <u>INTRODUCTION</u>

The following chart identifies each distinct provision in UBH's Level of Care Guidelines, from 2011 through 2017, that Plaintiffs contend falls short of generally accepted standards of care, notes the reasons supporting Plaintiffs' contention, and cites the evidence on which Plaintiffs rely with respect to that particular provision.  The chart also catalogues the same information with respect to each version of UBH's Custodial Care Coverage Determination Guideline in effect from 2011 to 2017.

Plaintiffs' Post-Trial Brief ("Br.") and Proposed Findings of Fact ("PFF") explain and catalog the evidence showing the many ways the specific challenged provisions make these Guidelines more restrictive than generally accepted standards of care. *See* Br. § II.G, PFF § IX. The chart below incorporates both of those filings. Specifically, in the "Why Flawed" column, several of the flaws discussed in detail in the Brief and Proposed Findings of Fact are referenced using "short forms" and cross-references to the other filings, as follows:

| Flaw category | "Why Flawed" Column |
|---|---|
| Overemphasis on Acuity | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A) |
| Failure to Consider Effective Treatment of Co-Occurring Conditions | <u>Co-occurring</u> (*see* Br. § II.G.2; PFF § X.B) |
| Drive Toward Lower Levels of Care Rather than Erring on the Side of Caution | <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) |
| Preclusion of Coverage for Treatment to Maintain a Level of Function | <u>Maintenance of Function</u>  (*see* Br. § II.G.5; PFF § X.E) |
| Lack of Motivation is Grounds for Denying Coverage, Even Where the Member has the Capacity to Recover | <u>Motivation</u> (*see* Br. § II.G.6; PFF § X.F) |
| Overbroad Definition of Custodial Care and Overly Narrow View of Improvement and Active Treatment | <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) |

In addition, however, it is important to note that Plaintiffs challenge the Guidelines for reasons that are not expressly reflected on the chart below:

**First**, Plaintiffs challenge the Guidelines because of omissions that render the criteria, as a whole, incompatible with generally accepted standards of care.  One of these omissions – the Guidelines' failure to consider effective treatment of co-occurring conditions – relates in part to existing Guideline provisions and, therefore, is referenced below.  But the failure to provide for coverage at a level of care at which co-occurring conditions can be effectively treated is an omission that, apart from any specific provision, causes the Guidelines overall to fall short of generally accepted standards.

Similarly, there are two flaws in the Guidelines that do not correspond directly to any existing provisions: (1) the Guidelines' use of mandatory prerequisites for coverage, rather than ensuring that level of care decisions turn on a multi-dimensional assessment of each patient, Br. § II.G.4; PFF § X.D; and (2) the Guidelines' failure to address the unique needs of children and

adolescents, Br. § II.G.7; PFF § X.G. Plaintiffs do not cite those flaws in the chart below because they apply, in effect, to every provision in every year.

**Second**, the sections in the Level of Care Guidelines that set forth additional criteria for coverage at specific levels of care also incorporate the Common Criteria, either explicitly or implicitly. Thus, in each year, for coverage upon admission and for coverage of continued services, members must have satisfied the Common Criteria. *See, e.g.*, Ex. 4-0027 ("(See Common Criteria for all Levels of Care)"); Ex. 1-0078 (¶ 1) ("The member continues to meet the criteria for the current level of care."). Although not cited on the chart below, Plaintiffs also challenge those sections' provisions incorporating the Common Criteria, for the same reasons that they challenge the Common Criteria.

**Third**, Plaintiffs also challenge the level of care criteria in the Coverage Determination Guidelines, which incorporate the level of care criteria in the Level of Care Guidelines, in one or (more often) multiple ways. *See* Br. § II.B.2(a); PFF § V.B.

Finally, the omission from the chart below of any particular Guideline provision should not be construed as an admission by Plaintiffs that the provision *is* consistent with generally accepted standards of care.  The chart below focuses only on the provisions reflecting defects addressed at trial.

## II.     2011 LEVEL OF CARE GUIDELINES (EX. 1)

### A.     Common Criteria (Ex. 1-0005 to -0008 & Ex. 1-0078 to -0079)

#### 1.     Admission Criteria (Ex. 1-0005 to -0008)

| ¶ | Criterion | Why Flawed | Testimony[1] |
|---|-----------|------------|--------------|
| 5 | The member's current condition cannot be effectively and safely treated in a lower level of care even when the treatment plan is modified, attempts to enhance the member's motivation have been made, or referrals to community resources or peer supports have been made. | Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: *E.g.*, Tr. 97:10-14 ("[W]hat we want from a level of care placement matching guideline are decision rules that direct a user to place a patient where the treatment will be *most effective*, where the outcomes will be best, where their journey of recovery will likely be aided in the *most successful* way."); 213:6-18 ("what typically drives decisions are [what level of care will be] most effective"); Plakun: *E.g.*, Tr. 511:25-512:6 ("The more important issue is, what's the *most effective* way for this person to get better."). |

---

[1] The evidentiary cites herein do not identify all testimony that pertains to all the *reasons* the identified criterion is flawed; those reasons are explicated in greater detail in the relevant portions of Plaintiffs' Post-Trial Brief ("Br.") and Plaintiffs' Proposed Findings of Fact ("PFF"). Instead, as the Court requested, the "Testimony" column identifies the testimony that specifically pertained to the particular provision being challenged. For example, there was a great deal of testimony regarding why criteria focused on "presenting" and "acute" symptoms and "acute changes" render the Guidelines more restrictive than generally accepted standards of care; Plaintiffs have not repeated citations to all that evidence in every row where a criterion overemphasizes acuity, assuming such duplication would not be of assistance to the Court.

| ¶ | Criterion | Why Flawed | Testimony[1] |
|---|---|---|---|
| 6 | There must be a reasonable expectation that essential and appropriate services will improve the member's presenting problems within a reasonable period of time. "Improvement" in this context is measured by weighing the effectiveness of treatment against the evidence that the member's condition will deteriorate if treatment is discontinued in the current level of care. Improvement must also be understood within the framework of the member's broader recovery goals. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E) | Fishman: Tr. 132:13-16, 132:20-133:02; Plakun: Tr. 537:15-18; Niewenhous: Tr. 321:01-15, 335:17-25. |
| 7 | The goal of treatment is to improve the member's presenting symptoms to the point that treatment in the current level of care is no longer required. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 132:13-16, 133:04-14; Plakun: Tr. 537:15-18. |
| 8 | Treatment is not primarily for the purpose of providing respite for the family, increasing the member's social activity, or for addressing antisocial behavior or legal problems, but is for the active treatment of a behavioral health condition. | Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 133:20-134:22. |
| 10 | The treatment plan stems from the member's presenting condition, and clearly documents realistic and measurable treatment goals as well as the treatments that will be used to achieve the goals of treatment.… | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 219:12-19. |

## 2.  Continued Service Criteria (Ex. 1-0078 to -0079)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 2 | The member continues to present with symptoms and/or history that demonstrate a significant likelihood of deterioration in functioning/relapse if transitioned to a less intensive level of care, or in the case of outpatient care, is discharged. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 136:24-137:9, 137:10-15; Plakun: Tr. 538:1-4. |
| 4 | The member is actively participating in treatment or is reasonably likely to adhere after an initial period of stabilization and/or motivational support. | Motivation (*see* Br. § II.G.6; PFF § X.F); | Fishman: Tr. 135:10-136:15. |

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 8 | Measurable and realistic progress has occurred or there is clear and compelling evidence that continued treatment at this level of care is required to prevent acute deterioration or exacerbation that would then require a higher level of care. Lack of progress is being addressed by an appropriate change in the treatment plan or other intervention to engage the member. | Acuity (*see* Br. § II.G.1; PFF § X.A); | Fishman: Tr. 136:24-137:9, 137:10-15; Plakun: Tr. 538:1-4, 538:15-539:4, 539:6-8; Simpatico: Tr. 1238:7-1244:5; Niewenhous: Tr. 336:01-337:13 (THE COURT: Where did you get the clear and compelling? THE WITNESS: You know, I honestly don't know where we got that. THE COURT: You didn't get it from Medicare; right? THE WITNESS: No. No."). |
| 10 | The member cannot effectively move toward recovery and be safely treated in a lower level of care, or in the case of outpatient care, is discharged. | Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: *E.g.*, Tr. 97:10-14 ("[W]hat we want from a level of care placement matching guideline are decision rules that direct a user to place a patient where the treatment will be *most effective*, where the outcomes will be best, where their journey of recovery will likely be aided in the *most successful* way."); 213:6-18 ("what typically drives decisions are [what level of care will be] most effective"); Plakun: *E.g.*, Tr. 511:25-512:6 ("The more important issue is, what's the *most effective* way for this person to get better."). |

## B.    Intensive Outpatient Program: Mental Health Conditions (Ex. 1-0018 to -0020)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [Any] 2[2] | The member's mood, affect or cognition has deteriorated to the extent that a higher level of care will likely be needed if intensive outpatient treatment is not provided. | Acuity (*see* Br. § II.G.1; PFF § X.A); | Fishman: Tr. 145:8-12, 146:5-13. |

---

[2] Some LOCG subsections have their own subsections, prefaced by, for example, "Any one of the following criteria must be met" and "And all of the following…" *See, e.g.*, Ex. 1-0018. On the Claims Chart, "[Any] __" refers to paragraphs within the former section; "[All] __" refers to paragraphs within the latter section. *See also* Br. at 61 n.41 (explaining

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [All] 3 | Co-occurring substance use disorders, if present, can be treated in a dual diagnosis program, or can be safely managed at this level of care. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 107:20-108:24; Plakun: Tr. 526:14-16. |
| [All] 7 | The provider and, whenever possible, the member collaborate to update the treatment plan every 3 to 5 treatment days in response to changes in the member's condition, or provide compelling evidence that continued treatment in the current level of care is required to prevent acute deterioration or exacerbation of the member's current condition. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Plakun: Tr. 571:3-6, 571:12-572:5. |

## C.    Outpatient: Mental Health Conditions (Ex. 1-0021 to -0022)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [All] 3 | Co-occurring substance use disorders, if present, are stable and are unlikely to undermine treatment of the mental health condition at this level of care. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 107:20-108:24; Plakun: Tr. 526:14-16. |
| [Consider] 2 | The member refuses further treatment or repeatedly does not adhere with recommended treatment despite the deployment of motivational enhancement interventions, peer support and other community support services. In such cases, the provider explains the risks of discontinuing treatment to the member and, as appropriate, the member's family/social supports; alternative referrals are provided in writing; and the member is provided with instructions for resuming services should the need arise in the future. | Motivation (*see* Br. § II.G.6; PFF § X.F); | Fishman: Tr. 236:12-237:4, 135:10-136:15. |

why flaws in the "Any ONE" sections render the Guidelines more restrictive even though not *all* of them must be satisfied for coverage). In one instance, the subsection begins with "Consider." Ex. 1-0022.

**D.      Residential Treatment Center: Mental Health Conditions (Ex. 1-0026 to -0028)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [Any] 2 | The member is experiencing a disturbance in mood, affect or cognition resulting in behavior that cannot be safely managed in a less restrictive setting. (This criterion is not intended for use solely as a long-term solution to maintain the stabilization acquired during treatment in a residential facility/program.) | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E) | Plakun: Tr. 572:12-573:16. |
| [Any] 3 | There is an imminent risk of deterioration in the member's functioning due to the presence of severe, multiple and complex psychosocial stressors that are significant enough to undermine treatment at a lower level of care. (This criterion is not intended for use solely as a long-term solution to maintain the stabilization acquired during treatment in a residential facility/program.) | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E). | Plakun: Tr. 572:12-13, 572:16-17, 573:3-16. |
| [All] 2(a) | Within 48 hours of admission, the following occurs:<br>    a.   A psychiatrist completes a comprehensive evaluation of the member. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 142:15-143:10; Alam: Tr. 1586:19-1587:21 (conceding that residential treatment does not "require[] a physician to do anything like what – to do what is required by the Level of Care Guidelines"). |
| [All] 3 | Subsequent psychiatric evaluations and consultations are available 24 hours a day. Visits with the treating psychiatrist occur at least 2 times per week. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 142:15-143:10; Alam: Tr. 1586:19-1587:21. |
| [All] 4 | All relevant general medical services, including assessment and diagnostic, treatment, and consultative services are available as needed and provided with an urgency commensurate with the member's medical need. Co-occurring medical conditions can be safely treated in this level of care. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 221:23-223:23. |

5

E.      **Intensive Outpatient Program: Substance Use Disorders (Ex. 1-0042 to -0045)**[3]

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|-----------|-----------|
| [Any] 1 | The member continues to use substances despite appropriate motivation, peer support such as can be provided in an organized sobriety group, and an adequate trial of routine outpatient care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Motivation (*see* Br. § II.G.6; PFF § X.F) | Fishman: Tr. 145:8-21. |
| [Any] 2 | The member's psychosocial functioning has become impaired by moderate-severe symptoms of a substance use disorder, and treatment cannot be safely managed in a less intensive level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 145:8-12, 145:22-146:4. |
| [Any] 3 | The member's mood, affect or cognition has deteriorated to the extent that a higher level of care will likely be needed if treatment in an intensive outpatient program is not provided | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 145:8-12, 146:5-13. |
| [Any] 4 | The member's symptoms have deteriorated to the extent that there is a likelihood of imminent relapse if treatment is not provided in an intensive outpatient program. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 225:19-226:13. |
| [All] 3 | Co-occurring medical conditions, if any, can be safely managed in an outpatient setting. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 107:20-108:24. |
| [All] 4 | Co-occurring mental health conditions, if any can be managed in a dual diagnosis program, or can be safely managed at this level of care. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 107:20-108:24; Plakun: Tr. 526:14-16. |
| [All] 5 | The member or his/her family/social support system understands and can comply with the requirements of an IOP, or the member is likely to participate in treatment with the structure and supervision afforded by an IOP. | Motivation (*see* Br. § II.G.6; PFF § X.F) | Fishman: Tr. 146:17-147:9. |
| [All] 6(a) | Within the first 3 days of treatment, the following should occur: (a) A psychiatrist completes a comprehensive evaluation of the member when the member has been directly admitted from an inpatient setting. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 147:10-12, 147:24-148:2. |
| [All] 8 | The provider and, whenever possible, the member collaborate to update the treatment plan every 3 to 5 treatment days in response to changes in the member's condition, or provide compelling evidence that continued treatment in the current level of care is required to prevent acute deterioration or exacerbation of the member's current condition. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 148:3-19. |

---

[3] In each year, for admission and continued service, members must have satisfied the Common Criteria. Thus, insofar as the LOCG subsections for each level of care incorporates the Common Criteria, Plaintiffs challenge those as well.

**F.     Outpatient: Substance Use Disorders (Ex. 1-0046 to -0048)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [Any] 2 | Lapse has occurred or is imminent, and treatment is needed to maintain/regain abstinence. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A) | <u>Fishman</u>: Tr. 148:20-149:16. |
| [All] 3 | Co-occurring mental health conditions, if present, are stable and are unlikely to undermine treatment of the substance use disorder at this level of care. | <u>Co-occurring</u> (*see* Br. § II.G.2; PFF § X.B) | <u>Fishman</u>: Tr. 107:20-108:24. |
| [Consider] 2 | The member refuses further treatment or repeatedly does not adhere with recommended treatment despite motivational support from the provider, peer support and other community support services. In such cases, the provider explains the risks of discontinuing treatment to the member and, as appropriate, the member's family/social supports, alternative referrals are provided in writing, and the member is provided with instructions for resuming services should the need arise in the future. | <u>Motivation</u> (*see* Br. § II.G.6; PFF § X.F); | <u>Fishman</u>: Tr. 236:12-237:4, 135:10-136:15. |

**G.     Residential Rehabilitation: Substance Use Disorders (Ex. 1-0056 to -0059)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Intro | Residential rehabilitation is comprised of acute overnight services… | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A) | <u>Fishman</u>: Tr. 281:1-6 (explaining improper focus of acuity for residential rehabilitation). |
| [Any] 1 | The member continues to use substances despite appropriate motivation and recent treatment in an intensive outpatient program or partial hospital/day treatment program. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Motivation</u> (*see* Br. § II.G.6; PFF § X.F); | <u>Fishman</u>: Tr. 138:1-16, 140:1-23. |
| [Any] 2 | The member continues to use substances, and the member's functioning has deteriorated to the point that the member cannot be safely treated in a less restrictive level of care. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 138:22-139:13, 140:1-23. |
| [Any] 3 | The member continues to use substances, is at risk of exacerbating a serious co-occurring medical condition, and cannot be safely treated in a lower level of care. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Co-occurring</u> (*see* Br. § II.G.2; PFF § X.B); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 138:22-139:20, 140:1-23. |

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [Any] 4 | The member is at risk of developing withdrawal symptoms which cannot be safely treated in a lower level of care. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 138:22-139:13, 140:1-23. |
| [Any] 5 | Severe impairment in the member's family or social support system has heightened the risk that the member will use substances if not in residential rehabilitation. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A) | <u>Fishman</u>: Tr. 141:20-142:14, 140:1-23. |
| [Any] 6 | The member is experiencing withdrawal symptoms that do not compromise the member's medical status, but are of extreme subjective severity accompanied by the lack of resources or functional social supports to manage the symptoms. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 138:22-139:20, 140:1-23. |
| [All] 2.a. | Within 48 hours of admission, the following occurs:<br>    a.  A psychiatrist/addictionologist completes a comprehensive evaluation of the member. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A) | <u>Fishman</u>: Tr. 142:15-143:10; <u>Alam</u>: Tr. 1586:19-1587:21 (conceding that residential treatment does not "require[] a physician to do anything like what – to do what is required by the Level of Care Guidelines"). |
| [All] 3 | Subsequent psychiatric evaluations and consultations are available 24 hours a day. Visits with the treating psychiatrist/addictionologist occur at least 2 times per week. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A) | <u>Fishman</u>: Tr. 142:24-144:23; <u>Alam</u>: Tr. 1586:19-1587:21. |
| [All] 4 | All relevant general medical services, including assessment and diagnostic, treatment, and consultative services are available as needed and provided with an urgency that is commensurate with the member's medical need. Co-occurring medical conditions can be safely treated in this level of care. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Co-occurring</u> (*see* Br. § II.G.2; PFF § X.B) | <u>Fishman</u>: Tr. 221:23-223:23. |
| [All] 5 | The treating psychiatrist/addictionologist and, whenever possible, the member collaborate to update the treatment plan at least every 5 days in response to changes in the member's condition, or provide compelling evidence that continued treatment in the current level of care is required to prevent acute deterioration or exacerbation of the member's current condition… | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Maintenance of Function</u>  (*see* Br. § II.G.5; PFF § X.E);  <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 142:24-144:23; <u>Alam</u>: 1582:24-1583:9; 1584:1-6; 1584:11-13 (agreeing that "compelling" is not "a medical term" and does not comply with generally accepted standards of care). |

8

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [All] 5.a | a. Treatment in a residential setting is not for the purpose of providing custodial care, but is for the active treatment of a substance use disorder. Active treatment is a clinical process involving 24-hour care that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare. Active treatment is indicated by services that are all of the following:<br>i.    Supervised and evaluated by a physician;<br>ii.   Provided under an individualized treatment plan;<br>iii.  Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>iv.  Unable to be provided in a less restrictive setting; and are<br>v.   Focused on interventions that are based on generally accepted standards of medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's condition to the extent that the member can be safely treated in a lower level of care | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) | <u>Fishman</u>: Tr. 142:24-144:23. |

## III.   2012 LEVEL OF CARE GUIDELINES (EX. 2)

### A.   Common Criteria (Ex. 2-0006 to -0009 & Ex. 2-0082)

#### 1.   Admission Criteria (Ex. 2-0006 to -0009)

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| 5 | The member's current condition cannot be effectively and safely treated in a lower level of care even when the treatment plan is modified, attempts to enhance the member's motivation have been made, or referrals to community resources or peer supports have been made. | Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: *E.g.*, Tr. 97:10-14 ("[W]hat we want from a level of care placement matching guideline are decision rules that direct a user to place a patient where the treatment will be *most effective*, where the outcomes will be best, where their journey of recovery will likely be aided in the *most successful* way."); 213:6-18 ("what typically drives decisions are [what level of care will be] most effective"); Plakun: *E.g.*, Tr. 511:25-512:6 ("The more important issue is, what's the *most effective* way for this person to get better."). |
| 6 | There must be a reasonable expectation that essential and appropriate services will improve the member's presenting problems within a reasonable period of time. Improvement of the member's condition is indicated by the reduction or control of the acute symptoms that necessitated treatment in a level of care. Improvement in this context is measured by weighing the effectiveness of treatment against the evidence that the member's condition will deteriorate if treatment is discontinued in the current level of care. Improvement must also be understood within the framework of the member's broader recovery goals. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 218:6-23; Plakun: Tr. 539:14-19, 540:3-6; Niewenhous: Tr. 332:6-334:12 (testimony regarding CMS standards). |
| 7 | The goal of treatment is to improve the member's presenting symptoms to the point that treatment in the current level of care is no longer required. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 218:24-219:4; Plakun: Tr. 539:14-17, 19-23. |

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| 8 | Treatment is not primarily for the purpose of providing respite for the family, increasing the member's social activity, or for addressing antisocial behavior or legal problems, but is for the active treatment of a behavioral health condition. | Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 219:5-11. |
| 10 | The treatment plan stems from the member's presenting condition, and clearly documents realistic and measurable treatment goals as well as the treatments that will be used to achieve the goals of treatment. … | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 219:12-19. |

### 2.  Continued Service Criteria (Ex. 2-0082)

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| 5 | There continues to be evidence that the member is receiving active treatment, and there continues to be a reasonable expectation that the member's condition will improve further. Lack of progress is being addressed by an appropriate change in the member's treatment plan, and/or an intervention to engage the member in treatment. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 220:6-18; Plakun: Tr. 540:11-24. |
| 6 | The member's current symptoms and/or history provider [sic] evidence that relapse or a significant deterioration in functioning would be imminent if the member was transitioned to a lower level of care or, in the case of outpatient care, was discharged. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Level of Care (*see* Br. § II.G.3; PFF § X.C) Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 220:19-221:10; Plakun: Tr. 540:11-14, 541:1-10. |

### B.    Intensive Outpatient Program: Mental Health Conditions (Ex. 2-0020 to -0022)

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| [Any] 1 | The member's psychosocial functioning has become impaired by moderate-severe symptoms of a mental health condition, and treatment cannot be adequately managed in a lower level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: *E.g.*, Tr. 97:10-14; 213:6-18; Plakun: *E.g.*, Tr. 511:25-512:6. |

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [Any] 2 | The member's mood, affect or cognition has deteriorated to the extent that a higher level of care will likely be needed if intensive outpatient treatment is not provided. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A) | <u>Fishman</u>: Tr. 145:8-12, 146:5-13, 225:19-226:8. |
| [All] 3 | Co-occurring substance use disorders, if present, can be treated in a dual diagnosis program, or can be safely managed at this level of care. | <u>Co-occurring</u> (*see* Br. § II.G.2; PFF § X.B) | <u>Fishman</u>: Tr. 221:23-223:23; <u>Plakun</u>: Tr. 526:14-16, 525:11-529:14. |
| [All] 4 | The member and/or his/her family/social support system understands and can comply with the requirements of an IOP, or the member is likely to participate in treatment with the structure and supervision afforded by an IOP. | <u>Motivation</u> (*see* Br. § II.G.6; PFF § X.F) | <u>Fishman</u>: Tr. 146:17-147:9. |
| [All] 7 | The provider and, whenever possible, the member collaborate to update the treatment plan every 3 to 5 treatment days in response to changes in the member's condition, or provide compelling evidence that continued treatment in the current level of care is required to prevent acute deterioration or exacerbation of the member's current condition. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Plakun</u>: Tr. 575:8-10, 14-21. |

## C. Outpatient: Mental Health Conditions (Ex. 2-0023 to -0024)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [All] 3 | Co-occurring substance use disorders, if present, are stable and are unlikely to undermine treatment of the mental health condition at this level of care. | <u>Co-occurring</u> (*see* Br. § II.G.2; PFF § X.B) | <u>Fishman</u>: Tr. 221:23-223:23; <u>Plakun</u>: Tr. 526:14-16, 525:11-529:14. |
| [Consider] 2 | The member refuses further treatment or repeatedly does not adhere with recommended treatment despite attempts to enhance the member's engagement in treatment, peer support and other community support services. In such cases, the provider explains the risks of discontinuing treatment to the member and, as appropriate, the member's family/social supports; alternative referrals are offered; and the member is provided with instructions for resuming services should the need arise in the future. | Motivation (*see* Br. § II.G.6; PFF § X.F); | <u>Fishman</u>: Tr. 236:12-237:4, 135:10-136:15. |

12

**D.      Residential Treatment Center: Mental Health Conditions (Ex. 2-0028 to -0031)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [Any] 1 | The member is experiencing a disturbance in mood, affect or cognition resulting in behavior that cannot be safely managed in a less restrictive setting. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 145:8-12, 146:5-13, 225:19-226:8; Plakun: Tr. 526:8-16, 528:15-19 |
| [Any] 2 | There is an imminent risk that severe, multiple and/or complex psychosocial stressors will produce significant enough distress or impairment in psychological, social, occupational/educational, or other important areas of functioning to undermine treatment in a lower level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 236:2-10, 272:9-19; Plakun: Tr. 540:11-14, 541:1-10. |
| [Any] 3 | The member has a co-occurring medical disorder or substance use disorder which complicates treatment of the presenting mental health condition to the extent that treatment in a Residential Treatment Center is necessary. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 221:23-223:23; Plakun: Tr. 526:14-16, 525:11-529:14. |
| [All] 2(a) | Within 48 hours of admission, the following occurs: <br> a.   A psychiatrist completes a comprehensive evaluation of the member. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 142:15-143:10; Alam: Tr. 1586:19-1587:21 (conceding that residential treatment does not "require[] a physician to do anything like what – to do what is required by the Level of Care Guidelines"). |
| [All] 3 | Subsequent psychiatric evaluations and consultations are available 24 hours a day. Visits with the treating psychiatrist occur at least 2 times per week. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 142:15-143:10; Alam: Tr. 1586:19-1587:21 (conceding that residential treatment does not "require[] a physician to do anything like what – to do what is required by the Level of Care Guidelines"). |
| [All] 4 | All relevant general medical services, including assessment and diagnostic, treatment, and consultative services are available as needed and provided with an urgency commensurate with the member's medical need. Co-occurring medical conditions can be safely treated in this level of care. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 221:23-223:23; Plakun: Tr. 518:4-8, 526:8-16, 528:15-19. |

13

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [All] 5 | The provider and, whenever possible, the member collaborate to update the treatment plan at least weekly in response to changes in the member's condition, or provide compelling evidence that continued treatment in the current level of care is required to prevent acute deterioration or exacerbation of the member's current condition. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) | <u>Plakun</u>: Tr. 576:1-15, 18-21; Alam: Tr. 1616:11-25 (identifying "compelling" as not consistent with generally accepted standards of care); <u>Triana</u>: Tr. 1738:23-1739:13, 1739:19-1740:23 (agreeing that b.iv) and v) are not in the CMS definition of "active treatment"). |
| [All] 5.a | a. Treatment in a residential setting is not for the purpose of providing custodial care. Custodial care in a residential setting is the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's mental health condition is not changing, or does not require trained clinical personnel to safely deliver services. Examples of custodial care include respite services, daily living skills instruction, days awaiting placement, activities that are social and recreational in nature, and interventions that are solely to prevent runaway/truancy or legal problems. Custodial care is characterized by the following:<br>  i)   The member's presenting signs and symptoms have been stabilized, resolved, or a baseline level of functioning has been achieved;<br>  ii)  The member is not responding to treatment or otherwise is not improving;<br>  iii) The intensity of active treatment provided in a residential setting is no longer required or services can be safely provided in a less intensive setting. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E);  <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) | <u>Plakun</u>: Tr. 576:1-22. |

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [All] 5.b | b.  Treatment in a residential setting is for the active treatment of a mental health condition. Active treatment is a clinical process involving 24-hour care that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare. Active treatment is indicated by services that are all of the following:<br>i)  Supervised and evaluated by a physician;<br>ii)  Provided under an individualized treatment plan;<br>iii)  Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>iv)  Unable to be provided in a less restrictive setting; and are<br>v)  Focused on interventions that are based on generally accepted standards of medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilized the member's condition to the extent that the member can be safely treated in a lower level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E);  Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Plakun: Tr. 576:1-22. |

E.  **Intensive Outpatient Program: Substance Use Disorders (Ex. 2-0047 to -0050)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [Any] 1 | The member's psychosocial functioning has become impaired by moderate-severe symptoms of a substance use disorder, and treatment cannot be safely managed in a less intensive level of care; or | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 225:19-226:3. |
| [Any] 2 | The member's mood, affect or cognition has deteriorated to the extent that a higher level of care will likely be needed if treatment in an intensive outpatient program is not provided; or | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 225:19-226:8. |
| [Any] 3 | The member's symptoms have deteriorated to the extent that there is a likelihood of imminent relapse if treatment is not provided in an intensive outpatient program; or | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 225:19-226:13. |
| [Any] 5 | The member has a non-supportive or unstable living situation creating an environment in which the member is unlikely to remain sober without the structure and support of the intensive outpatient program. | Motivation (*see* Br. § II.G.6; PFF § X.F) | Fishman: Tr. 225:19-226:26. |

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [All] 3 | Co-occurring medical conditions, if any, can be safely managed in an outpatient setting. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 225:19-24, 228:2-14. |
| [All] 4 | Co-occurring mental health conditions, if any can be managed in a dual diagnosis program, or can be safely managed at this level of care. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 225:19-24, 228:2-14. |
| [All] 8 | The provider and, whenever possible, the member collaborate to update the treatment plan every 3 to 5 treatment days in response to changes in the member's condition, or provide compelling evidence that continued treatment in the current level of care is required to prevent acute deterioration or exacerbation of the member's current condition. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 225:19-24, 229:17-230:16. |

**F.  Outpatient: Substance Use Disorders (Ex. 2-0051 to -0053)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [Any] 2 | Lapse has occurred or is imminent, and treatment is needed to maintain/regain abstinence. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 230:19-231:5. |
| [All] 3 | Co-occurring mental health conditions, if present, are stable and are unlikely to undermine treatment of the substance use disorder at this level of care. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 107:20-108:24. |
| [Consider] 2 | The member refuses further treatment or repeatedly does not adhere with recommended treatment despite attempts to enhance the member's engagement in treatment, and/or peer support and other community support services. In such cases, the provider explains the risks of discontinuing treatment to the member and, as appropriate, the member's family/social supports, alternative referrals are provided in writing, and the member is provided with instructions for resuming services should the need arise in the future. | Motivation (*see* Br. § II.G.6; PFF § X.F) | Fishman: Tr. 236:12-237:4, 135:10-136:15. |

**G.  Residential Rehabilitation: Substance Use Disorders (Ex. 2-0062 to -0065)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | Residential rehabilitation is comprised of acute overnight services… | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 281:1-6 (explaining improper focus of acuity for residential rehabilitation) |

16

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [Any] 1 | The member continues to use alcohol or drugs, and the member's functioning has deteriorated to the point that the member cannot be safely treated in a less restrictive level of care; or | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 221:23-222:16. |
| [Any] 2 | The member continues to use alcohol or drugs, is at risk of exacerbating a serious co-occurring medical condition, and cannot be safely treated in a lower level of care; or | Acuity (*see* Br. § II.G.1; PFF § X.A); Co-occurring (*see* Br. § II.G.2; PFF § X.B); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 221:23-222:19. |
| [Any] 3 | There is a high risk of harm to self or others due to continued and severe alcohol or drug use which prohibits treatment from safely occurring in a less restrictive level of care; or | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 221:23-223:01. |
| [Any] 4 | There is a high risk that continued use of alcohol or drugs will exacerbate a co-occurring medical condition to the extent that treatment in a less restrictive level of care cannot be safely provided; or | Acuity (*see* Br. § II.G.1; PFF § X.A); Co-occurring (*see* Br. § II.G.2; PFF § X.B); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 221:23-223:03. |
| [Any] 5 | There is a high risk of developing severe withdrawal symptoms which cannot be safely treated in a lower level of care; or | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 221:23-223:05. |
| [Any] 6 | The member is experiencing withdrawal symptoms that do not compromise the member's medical status to the extent that treatment in an inpatient setting is indicated, but the symptoms are of extreme subjective severity and the member lacks resources or a functional social support system needed to manage the symptoms in a lower level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 221:23-222:19. |
| [All] 2.a. | Within 48 hours of admission, the following occurs:<br>a. A psychiatrist/addictionologist completes a comprehensive evaluation of the member. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 221:23-223:11; Alam: Tr. 1586:19-1587:21 (conceding that residential treatment does not "require[] a physician to do anything like what – to do what is required by the Level of Care Guidelines"). |
| [All] 3 | Subsequent psychiatric evaluations and consultations are available 24 hours a day. Visits with the treating psychiatrist/addictionologist occur at least 2 times per week. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 221:23-223:16; Alam: Tr. 1586:19-1587:21 (conceding that residential treatment does not "require[] a physician to do anything like what – to do what is required by the Level of Care Guidelines"). |

17

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| [All] 4 | All relevant general medical services, including assessment and diagnostic, treatment, and consultative services are available as needed and provided with an urgency that is commensurate with the member's medical need. Co-occurring medical conditions can be safely treated in this level of care. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Co-occurring</u> (*see* Br. § II.G.2; PFF § X.B) | <u>Fishman</u>: Tr. 221:23-223:23; <u>Alam</u>: Tr. 1586:19-1587:21. |
| [All] 5 | The treating psychiatrist/addictionologist and, whenever possible, the member collaborate to update the treatment plan at least every 5 days in response to changes in the member's condition, or provide compelling evidence that continued treatment in the current level of care is required to prevent acute deterioration or exacerbation of the member's current condition. … | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); | <u>Fishman</u>: Tr. 221:23-224:3; <u>Alam</u>: Tr. 1586:19-1587:21. |
| [All] 5.a | a.  Treatment in a residential setting is not for the purpose of providing custodial care. Custodial care in a residential setting involves the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's substance use disorder is not changing, or does not require trained clinical personnel to safely deliver services. Examples of custodial care include respite services, daily living skills instruction, days awaiting placement, activities that are social and recreational in nature, and interventions that are solely to prevent runaway/truancy or legal problems. Custodial care is characterized by the following:<br>i)  The member's presenting signs and symptoms have been stabilized, resolved, or a baseline level of functioning has been achieved;<br>ii)  The member is not responding to treatment or otherwise is not improving;<br>iii)  The intensity of active treatment provided in a residential setting is no longer required or services can be safely provided in a less intensive setting. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) | <u>Fishman</u>: Tr. 221:23-225:14. |

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| | b.  Treatment in a residential setting is for the active treatment of a substance use disorder. Active treatment is a clinical process involving 24-hour care that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare. Active treatment is indicated by services that are all of the following:<br>i)  Supervised and evaluated by a physician;<br>ii)  Provided under an individualized treatment plan;<br>iii)  Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>iv)  Unable to be provided in a less restrictive setting; and are focused on interventions that are based on generally accepted standards of medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's condition to the extent that the member can be safely treated in a lower level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 223:24-225:14. |

## IV.    2013 LEVEL OF CARE GUIDELINES (EX. 3)

### A.    Common Criteria (Ex. 3-0007 to -0011 & Ex. 3-0089)

#### 1.    Admission Criteria (Ex. 3-0007 to -0011)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 6 | The member's current condition cannot be effectively and safely treated in a lower level of care even when the treatment plan is modified, attempts to enhance the member's engagement in treatment have been made; or referrals to community resources or peer supports have been made. | Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: *E.g.*, Tr. 97:10-14; 213:6-18; Plakun: *E.g.*, Tr. 511:25-512:6, 526:2-527:1. |

19

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| 7 | There must be a reasonable expectation that essential and appropriate services will improve the member's presenting problems within a reasonable period of time. Improvement of the member's condition is indicated by the reduction or control of the acute symptoms that necessitated treatment in a level of care. Improvement in this context is measured by weighing the effectiveness of treatment against the evidence that the member's condition will deteriorate if treatment is discontinued in the current level of care. Improvement must also be understood within the framework of the member's broader recovery/resiliency goals. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); | Fishman: Tr. 231:14-232:2; Plakun: Tr. 542:3-13. |
| 8 | The goal of treatment is to improve the member's presenting symptoms to the point that treatment in the current level of care is no longer required. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 232:3-7; Plakun: Tr. 542:3-7, 14-20. |
| 9 | Treatment is not primarily for the purpose of providing respite for the family, increasing the member's social activity, or for addressing antisocial behavior or legal problems, but is for the active treatment of a behavioral health condition. | Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E) | Fishman: Tr. 232:8-10. |
| 10 | The provider and, whenever possible, the member develop a treatment plan that  stems from the member's presenting condition, and includes. . . outcomes that are . . . directly related to the reason service in the proposed level of care is being requested. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 219:12-19. |

## 2.  Continued Service Criteria (Ex. 3-0089)

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| 5 | There continues to be evidence that the member is receiving active treatment, and there continues to be a reasonable expectation that the member's condition will improve further. Lack of progress is being addressed by an appropriate change in the member's treatment plan, and/or an intervention to engage the member in treatment. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); | Fishman: Tr. 232:24-233:11. |

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 6 | The member's current symptoms and/or history provide evidence that relapse or a significant deterioration in functioning would be imminent if the member was transitioned to a lower level of care or, in the case of outpatient care, was discharged. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); | Plakun: Tr. 543:3-16. |

**B.    Intensive Outpatient Program: Mental Health Conditions (Ex. 3-0022 to -0025)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [Any] 1 | Moderate symptoms of a mental health condition cannot be managed in a less intensive level of care. . . | Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); | Fishman: *E.g.*, Tr. 97:10-14; 213:6-18; Plakun: *E.g.*, Tr. 511:25-512:6, 526:2-527:1.. |
| [All] 2 | The member's co-occurring medical, mental health or substance use conditions can be safely managed in an intensive outpatient program. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Plakun: Tr. 525:11-529:14. |

**C.    Outpatient: Mental Health Conditions (Ex. 3-0026 to -0028)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [Consider] 2 | The member refuses further treatment or repeatedly does not adhere with recommended treatment despite attempts to enhance the member's engagement in treatment, peer support and other community support services. In such cases, the provider explains the risks of discontinuing treatment to the member and, as appropriate, the member's family/social supports; alternative referrals are offered; and the member is provided with instructions for resuming services should the need arise in the future. | Motivation (*see* Br. § II.G.6; PFF § X.F) | Fishman: Tr. 236:12-237:4, 135:10-136:15. |
| [All] 3 | Co-occurring substance use disorders, if present, are stable and are unlikely to undermine treatment of the mental health condition at this level of care. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 221:23-223:23; Plakun: Tr. 526:14-16, 525:11-529:14. |

**D.    Residential Treatment Center: Mental Health Conditions (Ex. 3-0033 to -0036)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [Any] 1 | The member is experiencing a disturbance in mood, affect, or cognition resulting in behavior that cannot be safely managed in a less restrictive setting. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: *E.g.*, Tr. 97:10-14; 213:6-18; Plakun: *E.g.*, Tr. 511:25-512:6, 526:2-527:1. |

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [Any 2] | There is an imminent risk that severe, multiple, and/or complex psychosocial stressors will produce significant enough distress or impairment in psychological, social, occupational/educational, or other important areas of functioning to undermine treatment in a lower level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); | Fishman: *E.g.*, Tr. 97:10-14; 213:6-18; Plakun: *E.g.*, Tr. 511:25-512:6. |
| [All] 2.a. | Within 48 hours of admission, the following occurs: <br> a. A psychiatrist completes a comprehensive evaluation of the member. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 142:15-143:10; Alam: Tr. 1586:19-1587:21 (conceding that residential treatment does not "require[] a physician to do anything like what – to do what is required by the Level of Care Guidelines"). |
| [All] 3 | Subsequent psychiatric evaluations and consultations are available 24 hours a day. Visits with the treating psychiatrist occur at least 2 times per week. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 142:15-143:10; Alam: Tr. 1586:19-1587:21. |
| [All] 4 | All relevant general medical services, including assessment and diagnostic, treatment, and consultative services are available as needed and provided with an urgency commensurate with the member's medical need. Co-occurring medical conditions can be safely treated in this level of care. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 221:23-223:23. |
| [All] 5 | Treatment in a Residential Treatment Center is not for the purpose of providing custodial care. Custodial care in a Residential Treatment Center is the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's mental health condition is not changing, or does not require trained clinical personnel to safely deliver services. Examples of custodial care include respite services, daily living skills instruction; days awaiting placement, activities that are social and recreational in nature, and interventions that are solely to prevent runaway/truancy or legal problems. Custodial care is characterized by the following: <br> a. The member's presenting signs and symptoms have been stabilized, resolved, or a baseline level of functioning has been achieved; <br> b. The member is not responding to treatment or otherwise is not improving; <br> c. The intensity of active treatment provided in a residential setting is no longer required or services can be safely provided in a less intensive setting. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Plakun: Tr. 577:9-578:4. |

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [All] 6 | Treatment in a Residential Treatment Center is for the active treatment of a mental health condition. Active treatment is a clinical process involving 24-hour care that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare. Active treatment is indicated by services that are all of the following:<br>a.  Supervised and evaluated by a physician;<br>b.  Provided under an individualized treatment plan;<br>c.  Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>d.  Unable to be provided in a less restrictive setting; and are<br>e.  Focused on interventions that are based on generally accepted standards of medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's condition to the extent that the member can be safely treated in a lower level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Plakun: Tr. 577:9-21. |

**E.      Intensive Outpatient Program: Substance Use Disorders (Ex. 3-0052 to -0055)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [Any] 1 | Moderate symptoms of a mental health condition cannot be managed in a less intensive level of care. . . | Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); | Fishman: *E.g.*, Tr. 97:10-14; 213:6-18; Plakun: *E.g.*, Tr. 511:25-512:6, 526:2-527:1. |
| [All] 3 | The member's co-occurring medical, mental health or substance use conditions can be safely managed in an intensive outpatient program. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. Tr. 225:19-24, 228:2-14. |
| [All] 4 | The member or his/her family/social support system understands and can comply with the requirements of an IOP, or the member is likely to participate in treatment with the structure and supervision afforded by an IOP. | Motivation (*see* Br. § II.G.6; PFF § X.F) | Fishman: Tr. 235:8-14. |
| [All] 5.a. | A psychiatrist or addictionologist completes a comprehensive evaluation of the member when the member has been directly admitted from an inpatient setting. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 235:15-19. |
| [All] 7.a. | A psychiatrist or addictionologist continues to see the member at least weekly when the member has been directly admitted from an inpatient setting. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 235:20-25. |

**F.     Outpatient: Substance Use Disorders (Ex. 3-0056 to -0058)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [Any] 2 | Lapse has occurred or is imminent and treatment is needed to maintain/regain abstinence. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 236:2-10. |
| [Consider] 2 | The member refuses further treatment or repeatedly does not adhere with recommended treatment despite attempts to enhance the member's engagement in treatment, and/or peer support and other community support services. In such cases, the provider explains the risks of discontinuing treatment to the member and, as appropriate, the member's family/social supports, alternative referrals are provided in writing, and the member is provided with instructions for resuming services should the need arise in the future. | Motivation (*see* Br. § II.G.6; PFF § X.F) | Fishman: Tr. 236:12-237:4, 135:10-136:15. |

**G.     Residential Rehabilitation: Substance Use Disorders (Ex. 3-0067 to -0070)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | Residential rehabilitation is comprised of acute overnight services… | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 281:1-6 (explaining improper focus of acuity for residential rehabilitation) |
| [Any] 1 | The member continues to use alcohol or drugs, and the member's functioning has deteriorated to the point that the member cannot be safely treated in a less restrictive level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 233:13-20. |
| [Any] 2 | The member continues to use alcohol or drugs, is at risk of exacerbating a serious co-occurring medical condition, and cannot be safely treated in a lower level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Co-occurring (*see* Br. § II.G.2; PFF § X.B); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 233:13-20. |
| [Any] 3 | There is a high risk of harm to self or others due to continued and severe alcohol or drug use which prohibits treatment from safely occurring in a less restrictive level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 233:13-20. |
| [Any] 4 | There is a high risk that continued use of alcohol or drugs will exacerbate a co-occurring medical condition to the extent that treatment in a less restrictive level of care cannot be safely provided. | Acuity (*see* Br. § II.G.1; PFF § X.A); Co-occurring (*see* Br. § II.G.2; PFF § X.B); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 233:13-23. |

24

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [Any] 5 | There is a high risk of developing severe withdrawal symptoms which cannot be safely treated in a lower level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 233:13-25. |
| [Any] 6 | The member is experiencing withdrawal symptoms that do not compromise the member's medical status to the extent that treatment in Acute Inpatient is indicated, but the symptoms are of extreme subjective severity and the member lacks resources or a functional social support system needed to manage the symptoms in a lower level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 221:23-222:19. |
| [All] 2.a. | Within 48 hours of admission, the following occurs:<br>  a.  A psychiatrist/addictionologist completes a comprehensive evaluation of the member… | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 234:1-7; Alam: Tr. 1586:19-1587:21 (conceding that residential treatment does not "require[] a physician to do anything like what – to do what is required by the Level of Care Guidelines"). |
| [All] 3 | Subsequent psychiatric evaluations and consultations are available 24 hours a day. Visits with the treating psychiatrist/addictionologist occur at least 2 times per week. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 234:1-10; Alam: Tr. 1586:19-1587:21. |
| [All] 4 | All relevant general medical services, including assessment and diagnostic, treatment, and consultative services are available as needed and provided with an urgency that is commensurate with the member's medical need. Co-occurring medical conditions can be safely treated in this level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 221:23-223:23. |

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| [All] 5 | Treatment in Residential Rehabilitation is not for the purpose of providing custodial care. Custodial care in Residential Rehabilitation involves the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's substance use disorder is not changing, or does not require trained clinical personnel to safely deliver services. Examples of custodial care include respite services, daily living skills instruction, days awaiting placement, activities that are social and recreational in nature, and interventions that are solely to prevent runaway/truancy or legal problems. Custodial care is characterized by the following:<br>a. The member's presenting signs and symptoms have been stabilized, resolved, or a baseline level of functioning has been achieved;<br>b. The member is not responding to treatment or otherwise is not improving;<br>c. The intensity of active treatment provided in a residential setting is no longer required or services can be safely provided in a less intensive setting. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 234:11-14. |
| [All] 6.a. | 6. Treatment in Residential Rehabilitation is for the active treatment of a substance use disorder. Active treatment is a clinical process involving 24-hour care that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare. Active treatment is indicated by services that are all of the following:<br>a. Supervised and evaluated by a physician;<br>b. Provided under an individualized treatment plan;<br>c. Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>d. Unable to be provided in a less restrictive setting; and are<br>e. Focused on interventions that are based on generally accepted standards of medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's condition to the extent that the member can be safely treated in a lower level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 234:25-235:3. |

## V.  2014 LEVEL OF CARE GUIDELINES (EX. 4)

### A.  Common Criteria (Ex. 4-0007 to -0010)

#### 1.  Admission Criteria (Ex. 4-0007 to -0010, first column under "Level of Care Criteria")

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| 2nd black bullet (page 4-0007) | The member's current condition cannot be safely, efficiently and effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission). | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 250:8-251:7; Plakun: Tr. 544:12-15, 544:21-545:5; Allchin: Tr. 1389:1-1390:14. |
| 6th black bullet and sub-bullets (page 4-0009 to -0010) | There is a reasonable expectation that services will improve the member's presenting problems within a reasonable period of time.<br>  o  Improvement of the member's condition is indicated by the reduction or control of the acute signs and symptoms that necessitated treatment in a level of care.<br>  o  Improvement in this context is measured by weighing the effectiveness of treatment against evidence that the member's signs and symptoms will deteriorate if treatment in the current level of care ends. Improvement must also be understood within the broader framework of the member's recovery and resiliency goals. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 250:8-15, 251:8-24, 252:6-253:1; Plakun: Tr. 544:12-15, 545:9-13, 545:21-23. |
| 7th black bullet (page 4-0010) | Treatment is not primarily for the purpose of providing social, custodial, recreational, or respite care. | Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 250:8-15; 251:25-252:4; Plakun: Tr. 519:18-22. |

## 2. Continued Service Criteria (Ex. 4-0007 to -0009, second column under "Level of Care Criteria")

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1st black bullet and sub-bullets (page 4-0007 to -0008) | The admission criteria are still met, and active treatment is being delivered. For treatment to be considered "active treatment" services must be:<br>○ Supervised and evaluated by the admitting provider;<br>○ Provided under an individualized treatment plan that is focused on addressing the "why now" factors and makes use of clinical best practices; and<br>○ Reasonably expected to stabilize the member's condition and/or the precipitating "why now" factors within a reasonable period of time. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 250:8-15, 253:10-18; Plakun: Tr. 546:1-19. |

## 3. Discharge Criteria (Ex. 4-0007 to -0008, third column under "Level of Care Criteria")

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Black bullet and sub-bullets (page 4-0007 to -0008) | The continued stay criteria are no longer met. Examples include:<br>○ The "why now" factors which led to admission have been addressed to the extent that the member can be safely transitioned to a less intensive level of care or no longer requires treatment.<br>…<br>○ The member requires care that is primarily social, custodial, recreational, or respite.<br>…<br>○ The member is unwilling or unable to participate in treatment and involuntary treatment or guardianship is not being pursued. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Motivation (*see* Br. § II.G.6; PFF § X.F) | Fishman: Tr. 250:8-15, 253:21-254:14; Plakun: Tr. 546:22, 547:1-9. |

**B.      Intensive Outpatient Program: Mental Health Conditions (Ex. 4-0027 to -0033)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care…. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Plakun: Tr. 578:9-579:1, 579:4-15. |

**1.      Admission Criteria (Ex. 4-0027 to -0033, first column under "Level of Care Criteria")**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 3rd black bullet (page 4-0028) | Co-occurring behavioral health or physical conditions can be safely managed. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 190:23-191:13; 107:11-108:5; 108:7-24; Plakun: Tr. 523:19-21; 523:24-524:1; 525:8-25; 526:6-527:1; 527:4-528:25; 529:1-14; 529:17-530:2; Niewenhous: Tr. 1818:9-1820:18 (discussing Ex. 539). |

**C.      Outpatient: Mental Health Conditions (Ex. 4-0034 to -0035)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | Assessment and diagnosis and active behavioral health treatment that are provided in an ambulatory setting. The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Plakun: Tr. 579:19-580:10. |

29

1. **Admission Criteria (Ex. 4-0034 to -0035, first column under "Level of Care Criteria")**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 3rd black bullet (page 4-0034) | Co-occurring behavioral health or physical conditions can be safely managed. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Plakun: Tr. 580:25-581:4. |
| 4th black bullet (page 4-0035) | Acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current condition can be safely, efficiently and effectively assessed and/or treated in this setting. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Plakun: Tr. 579:19-20, 580:13-24. |

D. **Residential Treatment Center: Mental Health Conditions (Ex. 4-0043 to -0045)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | …The course of treatment in a Residential Treatment Center is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Plakun: Tr. 581:11-22. |

1. **Admission Criteria (Ex. 4-0043 to -0045, first column under "Level of Care Criteria")**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 3rd black bullet (page 4-0043) | Co-occurring behavioral health or physical conditions can be safely managed. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Plakun: Tr. 581:11-12, 581:24-25, 582:3-5, 582:11-13. |

30

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|-----------|-----------|
| 4th black bullet and sub-bullets (page 4-0044 | The "why now" factors leading to admission cannot be safely, efficiently or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors. Examples include:<br>• Acute impairment of behavior or cognition that interferes with activities of daily living to the extent that the welfare of the member or others is endangered.<br>• Psychosocial and environmental problems that are likely to threaten the member's safety or undermine engagement in a less intensive level of care without the intensity of services offered in this level of care. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Plakun</u>: Tr. 581:11-12, 581:24-25, 582:7-13. |

**2.   Continued Service Criteria (Ex. 4-0043, second column under "Level of Care Criteria")**

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|-----------|-----------|
| Language after "AND" | Treatment is not primarily for the purpose of providing custodial care.<br>• Custodial care involves services that don't seek to cure, are provided when the member's condition is unchanging, are not required to maintain stabilization, or don't have to be delivered by trained clinical personnel. | <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) | <u>Fishman</u>: Tr. 250:8-15; 251:25-252:4; <u>Plakun</u>: Tr. 581:11-12, 581:24-25, 582:19-21. |

**3.   Discharge Criteria (Ex. 4-0043, third column under "Level of Care Criteria")**

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|-----------|-----------|
| Language after "AND" | Care is custodial.<br>Indications include:<br>• The member's signs and symptoms have been stabilized, resolved, or a baseline level of functioning has been achieved;<br>• The member's condition is not improving; or<br>• The intensity of active treatment in Inpatient is no longer required. | <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) | <u>Fishman</u>: Tr. 250:8-15; 251:25-252:4; <u>Plakun</u>: Tr. 581:11-12, 581:24-25, 582:19-583:7. |

31

**E.    Intensive Outpatient Program: Substance-Related Disorders (Ex. 4-0059 to -0065)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care…. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A) <br> <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 254:15-24. |

**1.    Admission Criteria (Ex. 4-0059 to -0065, first column under "Level of Care Criteria")**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 3rd black bullet (page 4-0060) | Co-occurring behavioral health or physical conditions can be safely managed. | <u>Co-occurring</u> (*see* Br. § II.G.2; PFF § X.B) | <u>Fishman</u>: Tr. 254:15-255:10. |

**F.    Outpatient: Substance-Related Disorders (Ex. 4-0066 to -0067)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | … The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 255:16-21. |

1. **Admission Criteria (Ex. 4-0066 to -0067, first column under "Level of Care Criteria")**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 3rd black bullet (page 4-0066) | Co-occurring behavioral health or physical conditions can be safely managed. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 190:23-191:13; 107:11-108:5; 108:7-24; Plakun: Tr. 523:19-21; 523:24-524:1; 525:8-25; 526:6-527:1; 527:4-528:25; 529:1-14; 529:17-530:2; Niewenhous: Tr. 1818:9-1820:18 (discussing Ex. 539). |
| 5th black bullet (page 4-0067) | Acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current condition can be safely, efficiently and effectively assessed and/or treated in this setting. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E) | Fishman: Tr. 255:16-17, 255:22-256:05. |

G.      **Residential Rehabilitation: Substance-Related Disorders (Ex. 4-0077 to -0080)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | …The course of treatment in Residential Rehabilitation is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that rehabilitation can be safely, efficiently and effectively continued in a less intensive level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 256:9-18. |

1. **Admission Criteria (Ex. 4-0077 to -0080, first column under "Level of Care Criteria")**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 3rd black bullet (page 4-0077) | The "why now" factors leading to admission suggest that physical complications, if present, can be safely managed. | Acuity (*see* Br. § II.G.1; PFF § X.A); Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 255:16-17, 255:22-256:05; Alam: Tr. 1611:6-1612:1 (conceding that "this purposefully excludes the notion of effective care for physical complications if present"). |

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 4th black bullet (page 4-0078) | The "why now" factors leading to admission and/or the member's history of response to treatment suggest that there is imminent or current risk of relapse which cannot be safely, efficiently and effectively managed in a less intensive level of care. Examples include:<br>• A co-occurring mental health condition is stabilizing but the remaining signs and symptoms are likely to undermine treatment in a less intensive setting;<br>• The member is in immediate danger of relapse, and the history or treatment suggest that the structure and support provided in this level will be needed to control the recurrence. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C); <u>Co-occurring</u> (*see* Br. § II.G.2; PFF § X.B) | <u>Fishman</u>: Tr. 256:9-22. |
| 5th black bullet and sub-bullets (page 4-0079 to -0080) | The "why now" factors leading to admission cannot be safely, efficiently or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors. Examples include:<br>• Acute impairment of behavior or cognition that interferes with activities of daily living to the extent that the member's condition cannot be safely, efficiently and effectively managed in a less intensive level of care;<br>• Psychosocial and environmental problems that threaten the member's safety or undermines engagement in a less intensive level of care. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 256:9-11, 258:5-10. |

## 2. Continued Service Criteria (Ex. 4-0077, second column under "Level of Care Criteria")

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Language after "AND" | Treatment is not primarily for the purpose of providing custodial care.<br><br>Custodial care involves services that don't seek to cure, are provided when the member's condition is unchanging, are not required to maintain stabilization, or don't have to be delivered by trained clinical personnel. | <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) | <u>Fishman</u>: Tr. 256:9-11, 258:11-15. |

34

3.   **Discharge Criteria (Ex. 4-0077, third column under "Level of Care Criteria")**

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| Language after "AND" | Care is custodial.<br><br>Indications include:<br>• The member's signs and symptoms have been stabilized, resolved, or a baseline level of functioning has been achieved;<br>• The member's condition is not improving; or<br>• The intensity of active treatment in Inpatient [sic] is no longer required. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 256:9-11, 258:11-15. |

## VII.   2015 LEVEL OF CARE GUIDELINES (EX. 5)

### A.   Common Criteria (Ex. 5-0008 to -0010)

#### 1.   Admission Criteria (Ex. 5-0008 to -0009)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.4 | The member's current condition cannot be safely, efficiently, and effectively assessed and/or treated in a less intensive level of care due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission). | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 104:11-105:7; 191:14-193:14; 208:2-16; <u>Plakun</u>: Tr. 523:19-22; 524:8-21; <u>Allchin</u>: Tr. 1389:1-1390:14. |
| 1.5 | The member's current condition can be safely, efficiently, and effectively assessed and/or treated in the proposed level of care. Assessment and/or treatment of acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) require the intensity of services provided in the proposed level of care. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 104:11-105:7; <u>Plakun</u>: Tr. 523:19-21; 523:23; 524:8-10; 524:17-525:6. |
| 1.6 | Co-occurring behavioral health and medical conditions can be safely managed. | <u>Co-occurring</u> (*see* Br. § II.G.2; PFF § X.B) | <u>Fishman</u>: Tr. 190:23-191:13; 107:11-108:5; 108:7-24; <u>Plakun</u>: Tr. 523:19-21; 523:24-524:1; 525:8-25; 526:6-527:1; 527:4-528:25; 529:1-14; 529:17-530:2; <u>Niewenhous</u>: Tr. 1818:9-1820:18 (discussing Ex. 539); <u>Martorana</u>: Tr. 975:15-977:6, 977:8-978:1, 978:2-21; <u>Simpatico</u>: Tr. 1179:12-1180:1, 1182:23-1183:6. |

36

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.8 | There is a reasonable expectation that services will improve the member's presenting problems within a reasonable period of time.<br>1.8.1. Improvement of the member's condition is indicated by the reduction or control of the acute signs and symptoms that necessitated treatment in a level of care.<br>1.8.2. Improvement in this context is measured by weighing the effectiveness of treatment against evidence that the member's signs and symptoms will deteriorate if treatment in the current level of care ends. Improvement must also be understood within the broader framework of the member's recovery, resiliency and wellbeing. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) | <u>Fishman</u>: Tr. 109:3-110:1; 110:2-111:23, 112:10-113:4; <u>Plakun</u>: Tr. 530:6-19; 669:10-20. |
| 1.9 | Treatment is not primarily for the purpose of providing social, custodial, recreational, or respite care. | <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) | <u>Fishman</u>: Tr. 250:8-15; 251:25-252:4; <u>Plakun</u>: Tr. 581:11-12, 581:24-25, 582:19-21. |

## 2. Continued Service Criteria (Ex. 5-0009)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 2.1 | The admission criteria continue to be met and active treatment is being provided. For treatment to be considered "active" services must be:<br>2.1.1. Supervised and evaluated by the admitting provider;<br>2.1.2. Provided under an individualized treatment plan that is focused on addressing the "why now" factors, and makes use of clinical best practices;<br>2.1.3. Reasonably expected to improve the member's presenting problems within a reasonable period of time. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) | <u>Fishman</u>: Tr. 113:10-114:6; 114:7-13; 135:10-136:15; <u>Plakun</u>: Tr. 530:23-531:1; 531:1-13; 531:14-532:2; 532:4-7. |
| 2.2 | The "why now" factors leading to admission have been identified and are integrated into the treatment and discharge plans. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A) | <u>Fishman</u>: Tr. 113:25-114:6; 114:7-13. |

37

### 3.   Discharge Criteria (Ex. 5-0009 to -0010)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 3.1 | The continued stay criteria are no longer met. Examples include:<br>3.1.1. The "why now" factors which led to admission have been addressed to the extent that the member can be safely transitioned to a less intensive level of care, or no longer requires care.<br>…3.1.3. Treatment is primarily for the purpose of providing social, custodial, recreational, or respite care.<br>...3.1.5. The member is unwilling or unable to participate in treatment and involuntary treatment or guardianship is not being pursued. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Motivation (*see* Br. § II.G.6; PFF § X.F) | Fishman: Tr. 114:19-20, 25, 115:1-5, 115:10-24, 116:23-118:1; Plakun: Tr. 532:8-533:3. |

### B.   Intensive Outpatient Program: Mental Health Conditions (Ex. 5-00030 to -0032)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care… | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Plakun: Tr. 583:5-7; 583:14-21. |

### C.   Outpatient: Mental Health Conditions (Ex. 5-0033 to -0034)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | … The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | Acuity (*see* Br. § II.G.1; PFF § X.A) Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E) | Fishman: Tr. 255:16-21. |

1.  **Admission Criteria (Ex. 5-0033)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.3 | Acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current condition can be safely, efficiently, and effectively assessed and/or treated in this setting. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E) | Plakun: Tr. 584:1-2; 584:11-17. |

D.   **Residential Treatment Center: Mental Health Conditions (Ex. 5-0038 to -0040)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | …The course of treatment in a Residential Treatment Center is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Plakun: Tr. 584:24-585:8. |

1.  **Admission Criteria (Ex. 5-0038)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.3 | The "why now" factors leading to admission cannot be safely, efficiently or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors. Examples include:<br>1.3.1. Acute impairment of behavior or cognition that interferes with activities of daily living to the extent that the welfare of the member or others is endangered.<br>1.3.2. Psychosocial and environmental problems that are likely to threaten the member's safety or undermine engagement in a less intensive level of care without the intensity of services offered in this level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Plakun: Tr. 584:24-25; 585:10-17. |

2.   <u>Continued Service Criteria (Ex. 5-0038 to -0039)</u>

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 2.2 | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . .<br>2.2.2. Health-related services that are provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence. . . .<br>2.2.3. Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | <u>Maintenance of Function</u>  (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) | <u>Plakun</u>: Tr. 584:24-25; 585:18-22. |

E.   **Intensive Outpatient Program: Substance-Related Disorders (Ex. 5-0055 to -0058)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 254:15-24 |

F.   **Outpatient: Substance-Related Disorders (Ex. 5-0070 to -0072)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | … The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A) <u>Maintenance of Function</u>  (*see* Br. § II.G.5; PFF § X.E); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 255:16-21. |

40

1. **Admission Criteria (Ex. 5-0070)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.4 | Acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current condition can be safely, efficiently, and effectively assessed and/or treated in this setting. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E) | Fishman: Tr. 130:2-24; 130:25-131:18. |

G.     **Residential Rehabilitation: Substance-Related Disorders (Ex. 5-0081 to -0083)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | …The course of treatment in Residential Rehabilitation is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that rehabilitation can be safely, efficiently and effectively continued in a less intensive level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 256:9-18. |

1. **Admission Criteria (Ex. 5-0081)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.3 | The "why now" factors leading to admission and/or the member's history of response to treatment suggest that there is imminent or current risk of relapse which cannot be safely, efficiently, and effectively managed in a less intensive level of care. Examples include:<br><br>1.3.1. A co-occurring mental health condition is stabilizing but the remaining signs and symptoms are likely to undermine treatment in a less intensive setting.<br><br>1.3.2. The member is in immediate or imminent danger of relapse, and the history of treatment suggests that the structure and support provided in this level of care is needed to control the recurrence. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 124:16-22; 125:10-14; Alam: Tr. 1601:5-1602:12. |

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.4 | The "why now" factors leading to admission cannot be safely, efficiently, or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors. Examples include:<br><br>1.4.1. Acute impairment of behavior or cognition is interfering with Activities of Daily Living to the extent that the welfare of the member or others is endangered.<br><br>1.4.2. Psychosocial and environmental problems threaten the member's safety, or undermine engagement in a less intensive level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 124:16-22; 125:10-14. |

## 2. Continued Service Criteria (Ex. 5-0082)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 2.2.3 | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . .<br><br>2.2.2. Health-related services provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence.<br><br>2.2.3. Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 125:1-6; 125:15-126:16. |

42

## VIII.   2016 LEVEL OF CARE GUIDELINES (EX. 6)

### A.      Common Criteria (Ex. 6-0009 to -0011)

#### 1.   Admission Criteria (Ex. 6-0009 to -0010)

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| 1.4 | The member's current condition cannot be safely, efficiently, and effectively assessed and/or treated in a less intensive level of care due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission). | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 260:9-261:9; <u>Plakun</u>: Tr. 548:18-23; 548:25-549:4; <u>Allchin</u>: Tr. 1389:1-1390:14. |
| 1.5 | The member's current condition can be safely, efficiently, and effectively assessed and/or treated in the proposed level of care. Assessment and/or treatment of acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) require the intensity of services provided in the proposed level of care. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 261:4-5; 261:10-11; <u>Plakun</u>: 548:18-23, 548:25-549:4. |
| 1.6 | Co-occurring behavioral health and medical conditions can be safely managed. | <u>Co-occurring</u> (*see* Br. § II.G.2; PFF § X.B) | <u>Fishman</u>: Tr. 261:4-5; 261:12-18; <u>Plakun</u>: Tr. 548:18-23; 548:25-549:4; <u>Allchin</u>: Tr. 1389:1-1390:14; <u>Martorana</u>: Tr. 975:15-977:6, 977:8-978:1, 978:2-21; <u>Simpatico</u>: Tr. 1179:12-1180:1, 1182:23-1183:6. |

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.8 | There is a reasonable expectation that services will improve the member's presenting problems within a reasonable period of time.<br><br>1.8.1. Improvement of the member's condition is indicated by the reduction or control of the acute signs and symptoms that necessitated treatment in a level of care.<br><br>1.8.2. Improvement in this context is measured by weighing the effectiveness of treatment against evidence that the member's signs and symptoms will deteriorate if treatment in the current level of care ends. Improvement must also be understood within the broader framework of the member's recovery, resiliency and wellbeing. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: 261:4-5; 261:19-262:2; Plakun: Tr. 548:18-23, 548:25-549:4. |
| 1.9 | Treatment is not primarily for the purpose of providing social, custodial, recreational, or respite care. | Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 250:8-15; 251:25-252:4; Plakun: Tr. 581:11-12, 581:24-25, 582:19-21. |

## 2.  Continued Service Criteria (Ex. 6-0010)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 2.1 | The admission criteria continue to be met and active treatment is being provided. For treatment to be considered "active" services must be as follows:<br><br>2.1.1. Supervised and evaluated by the admitting provider;<br><br>2.1.2. Provided under an individualized treatment plan that is focused on addressing the "why now" factors, and makes use of clinical best practices;<br><br>2.1.3. Reasonably expected to improve the member's presenting problems within a reasonable period of time. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 262:3-7; Plakun: Tr. 549:10-17. |
| 2.2 | The "why now" factors leading to admission have been identified and are integrated into the treatment and discharge plans. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 262:3-10. |

44

### 3.   Discharge Criteria (Ex. 6-0010 to -0011)

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| 3.1 | The continued stay criteria are no longer met. Examples include:<br><br>3.1.1. The "why now" factors which led to admission have been addressed to the extent that the member can be safely transitioned to a less intensive level of care, or no longer requires care.<br>... 3.1.3. Treatment is primarily for the purpose of providing social, custodial, recreational, or respite care.<br>... 3.1.5. The member is unwilling or unable to participate in treatment and involuntary treatment or guardianship is not being pursued. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Motivation (*see* Br. § II.G.6; PFF § X.F) | Fishman: Tr. 262:11-12, 262:13-16; Plakun: Tr. 549:20-550:2. |

**B.   Intensive Outpatient Program: Mental Health Conditions (Ex. 6-00032 to -0035)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care…. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Plakun: Tr. 585:25-586:10; 656:3-22. |

**C.   Outpatient: Mental Health Conditions (Ex. 6-0036 to -0038)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| Preamble | … The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E). | Plakun: Tr. 586:16-24. |

45

1. **Admission Criteria (Ex. 6-0036)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.3 | Acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current condition can be safely, efficiently, and effectively assessed and/or treated in this setting. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); | Plakun: Tr. 586:25-587:2-10. |

D.   **Residential Treatment Center: Mental Health Conditions (Ex. 6-0043 to -0045)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | …The course of treatment in a Residential Treatment Center is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Plakun: Tr. 587:15-21. |

46

## 2.  Admission Criteria (Ex. 6-0043)

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|-----------|-----------|
| 1.3 | The "why now" factors leading to admission cannot be safely, efficiently or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors. Examples including the following:<br><br>1.3.1. Acute impairment of behavior or cognition that interferes with activities of daily living to the extent that the welfare of the member or others is endangered.<br><br>1.3.2. Psychosocial and environmental problems that are likely to threaten the member's safety or undermine engagement in a less intensive level of care without the intensity of services offered in this level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Plakun: Tr. 587:15-17; 587:22-588:2; 588:8-16; 588:19-21. |

## 3.  Continued Service Criteria (Ex. 6-0043 to -0044)

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|-----------|-----------|
| 2.2 | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . .<br><br>2.2.2. Health-related services provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence;<br><br>2.2.3. Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); | Plakun: Tr. 587:15-17; 588:3-7. |

E.     **Intensive Outpatient Program: Substance-Related Disorders (Ex. 6-0062 to -0065)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care… | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 262:18-263:2. |

F.     **Outpatient: Substance-Related Disorders (Ex. 6-0079 to -0081)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | … The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 263:6-11. |

1.     **Admission Criteria (Ex. 6-0079)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.4 | Acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current condition can be safely, efficiently, and effectively assessed and/or treated in this setting. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); | Fishman: Tr. 263:12-20. |

48

G.      **Residential Rehabilitation: Substance-Related Disorders (Ex. 6-0090 to -0092)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | … The course of treatment in Residential Rehabilitation is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that rehabilitation can be safely, efficiently and effectively continued in a less intensive level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 263:22-264:2. |

   1.   **Admission Criteria (Ex. 6-0090 to -0091)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.3 | The "why now" factors leading to admission and/or the member's history of response to treatment suggest that there is imminent or current risk of relapse which cannot be safely, efficiently, and effectively managed in a less intensive level of care.<br>  1.3.1. A co-occurring mental health condition is stabilizing but the remaining signs and symptoms are likely to undermine treatment in a less intensive setting.<br>  1.3.2. The member is in immediate or imminent danger of relapse, and the history of treatment suggests that the structure and support provided in this level of care is needed to control the recurrence. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 263:22-264:8. |
| 1.4 | The "why now" factors leading to admission cannot be safely, efficiently, or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 263:22-264:10. |

49

## 2. **Continued Service Criteria (Ex. 6-0091)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| 2.2 | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following:…<br><br>2.2.2. Health-related services that are provided for the primary purpose of meeting the personal needs of the member or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence.<br><br>2.2.3. Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E);<br>Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 263:22-264:19. |

50

## X.  2016 LEVEL OF CARE GUIDELINES (EX. 7)

### A.  Common Criteria (Ex. 7-0009 to -0011)

#### 1.  Admission Criteria (Ex. 7-0009 to -0010)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.4 | The member's current condition cannot be safely, efficiently, and effectively assessed and/or treated in a less intensive level of care due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission). | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 260:9-261:9; Plakun: Tr. 548:18-23; 548:25-549:4; 550:23-551:5; Allchin: Tr. 1389:1-1390:14. |
| 1.5 | The member's current condition can be safely, efficiently, and effectively assessed and/or treated in the proposed level of care. Assessment and/or treatment of acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) require the intensity of services provided in the proposed level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 261:4-5; 261:10-11; Plakun: 548:18-23, 548:25-549:4, 550:23-551:5. |
| 1.6 | Co-occurring behavioral health and medical conditions can be safely managed. | Co-occurring (*see* Br. § II.G.2; PFF § X.B) | Fishman: Tr. 261:4-5; 261:12-18; Plakun: Tr. 548:18-23; 548:25-549:4, 550:23-551:5; Martorana: Tr. 975:15-977:6, 977:8-978:1, 978:2-21; Simpatico: Tr. 1179:12-1180:1, 1182:23-1183:6. |

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.8 | There is a reasonable expectation that services will improve the member's presenting problems within a reasonable period of time.<br><br>1.8.1. Improvement of the member's condition is indicated by the reduction or control of the acute signs and symptoms that necessitated treatment in a level of care.<br><br>1.8.2. Improvement in this context is measured by weighing the effectiveness of treatment against evidence that the member's signs and symptoms will deteriorate if treatment in the current level of care ends. Improvement must also be understood within the broader framework of the member's recovery, resiliency and wellbeing. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: 261:4-5; 261:19-262:2; Plakun: Tr. 548:18-23, 548:25-549:4, 550:23-551:5. |
| 1.9 | Treatment is not primarily for the purpose of providing social, custodial, recreational, or respite care. | Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 250:8-15; 251:25-252:4; Plakun: Tr. 581:11-12, 581:24-25, 582:19-21. |

## 2. Continued Service Criteria (Ex. 7-0010)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 2.1 | The admission criteria continue to be met and active treatment is being provided. For treatment to be considered "active" services must be as follows:<br><br>2.1.1. Supervised and evaluated by the admitting provider;<br><br>2.1.2. Provided under an individualized treatment plan that is focused on addressing the "why now" factors, and makes use of clinical best practices;<br><br>2.1.3. Reasonably expected to improve the member's presenting problems within a reasonable period of time. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Plakun: Tr. 550:23-551:3; 551:7-8. |
| 2.2 | The "why now" factors leading to admission have been identified and are integrated into the treatment and discharge plans. | Acuity (*see* Br. § II.G.1; PFF § X.A) | Fishman: Tr. 113:25-114:6; 114:7-13. |

### 3. Discharge Criteria (Ex. 7-0010 to -0011)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 3.1 | The continued stay criteria are no longer met. Examples include:<br><br>3.1.1. The "why now" factors which led to admission have been addressed to the extent that the member can be safely transitioned to a less intensive level of care, or no longer requires care.<br>… 3.1.3. Treatment is primarily for the purpose of providing social, custodial, recreational, or respite care.<br>… 3.1.5. The member is unwilling or unable to participate in treatment and involuntary treatment or guardianship is not being pursued. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Motivation (*see* Br. § II.G.6; PFF § X.F) | Plakun: Tr. 550:23-551:3; 551:9-10. |

### B.   Intensive Outpatient Program: Mental Health Conditions (Ex. 7-0032 to -0035)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Plakun: Tr. 591:24, 592:2-14, 657:20-658:1. |

### C.   Outpatient: Mental Health Conditions (Ex. 7-0036 to -0038)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | … The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); | Plakun: Tr. 590:2-6. |

1.  **Admission Criteria (Ex. 7-0036)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.3 | Acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current condition can be safely, efficiently, and effectively assessed and/or treated in this setting. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E) | Plakun: Tr. 590:2-3; 590:7-9. |

D.    **Residential Treatment Center: Mental Health Conditions (Ex. 7-0043 to -0045)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | …The course of treatment in a Residential Treatment Center is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Plakun: Tr. 590:11-16. |

1.  **Admission Criteria (Ex. 7-0043)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.3 | The "why now" factors leading to admission cannot be safely, efficiently or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors. Examples include the following:<br><br>1.3.1. Acute impairment of behavior or cognition that interferes with activities of daily living to the extent that the welfare of the member or others is endangered.<br><br>1.3.2. Psychosocial and environmental problems that are likely to threaten the member's safety or undermine engagement in a less intensive level of care without the intensity of services offered in this level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Plakun: Tr. 590:11-12; 590:17-20. |

### 2. Continued Service Criteria (Ex. 7-0043 to -0044)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 2.2 | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . .<br><br>2.2.2. Health-related services provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence;<br><br>2.2.3. Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Plakun: Tr. 590:11-12. |

### E. Intensive Outpatient Program: Substance-Related Disorders (Ex. 7-0062 to -0066)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 206:17-207:16. |

### F. Outpatient: Substance-Related Disorders (Ex. 7-0080 to -0082)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | … The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 255:16-21. |

### 3. Admission Criteria (Ex. 7-0080)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.4 | Acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors (i.e.; the "why now" factors leading to admission) have occurred, and the member's current condition can be safely, efficiently, and effectively assessed and/or treated in this setting. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A). <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); | Fishman: Tr. 263:12-20. |

### G.   Residential Rehabilitation: Substance-Related Disorders (Ex. 7-0091 to -0093)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| Preamble | …The course of treatment in Residential Rehabilitation is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that rehabilitation can be safely, efficiently and effectively continued in a less intensive level of care. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 263:22-264:2. |

### 1. Admission Criteria (Ex. 7-0091 to -0092)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.3 | The "why now" factors leading to admission and/or the member's history of response to treatment suggest that there is imminent or current risk of relapse which cannot be safely, efficiently, and effectively managed in a less intensive level of care. Examples include:<br><br>1.3.1. A co-occurring mental health condition is stabilizing but the remaining signs and symptoms are likely to undermine treatment in a less intensive setting.<br><br>1.3.2. The member is in immediate or imminent danger of relapse, and the history of treatment suggests that the structure and support provided in this level of care is needed to control the recurrence. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E) | Fishman: Tr. 263:22-264:8. |

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1.4 | The "why now" factors leading to admission cannot be safely, efficiently, or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors. Examples include:<br><br>1.4.1. Acute impairment of behavior or cognition is interfering with Activities of Daily Living to the extent that the welfare of the member or others is endangered.<br><br>1.4.2. Psychosocial and environmental problems threaten the member's safety, or undermine engagement in a less intensive level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 263:22-264:10. |

## 2. Continued Service Criteria (Ex. 7-0092)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 2.2 | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . .<br><br>2.2.2. Health-related services that are provided for the primary purpose of meeting the personal needs of the member or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence.<br><br>2.2.3. Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 250:8-15; 251:25-252:4; Plakun: Tr. 581:11-12, 581:24-25, 582:19-21, 590:11-12. |

**XI.**     **2017 LEVEL OF CARE GUIDELINES (EX. 8)**

    **A.**     **Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025)**

        **1.**   **Admission Criteria (Ex. 8-0006 to -0007; Ex. 8-0011, Ex. 8-0024)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 4th black bullet (page 8-0007 | The member's current condition cannot be safely, efficiently, and effectively assessed and/or treated in a less intensive level of care. | <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 261:4-5; 261:10-11; <u>Plakun</u>: 548:18-23, 548:25-549:4, 550:23-551:5. |
| 5th black bullet (page 8-0007) | The member's current condition can be safely, efficiently, and effectively assessed and/or treated in the proposed level of care. Assessment and/or treatment of the factors leading to admission require the intensity of services provided in the proposed level of care. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 261:4-5; 261:10-11; <u>Plakun</u>: 548:18-23, 548:25-549:4, 550:23-551:5. |
| 6th black bullet (page 8-0007) | Co-occurring behavioral health and medical conditions can be safely managed. | <u>Co-occurring</u> (*see* Br. § II.G.2; PFF § X.B) | <u>Plakun</u>: Tr. 552:19-22, 553:1-3; <u>Martorana</u>: Tr. 975:15-977:6, 977:8-978:1, 978:2-21; <u>Simpatico</u>: Tr. 1179:12-1180:1, 1182:23-1183:6. |
| 8th black bullet and sub-bullets (page 8-0007) | There is a reasonable expectation that service(s) will improve the member's presenting problems within a reasonable period of time.<br>    o  Improvement of the member's condition is indicated by the reduction or control of the signs and symptoms that necessitated treatment in a level of care.<br>    o  Improvement in this context is measured by weighing the effectiveness of treatment against evidence that the member's signs and symptoms will deteriorate if treatment in the current level of care ends. Improvement must also be understood within the broader framework of the member's recovery, resiliency, and wellbeing. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) | <u>Fishman</u>: Tr. 267:10-20, 267:21-23; <u>Plakun</u>: Tr. 552:19-22, 553:4-8, 555:15-22, 555:24-556:2; <u>Martorana</u>: Tr. 1129:11-1130:11, 1130:12-14. |

## 2. Continued Service Criteria (Ex. 8-0007, Ex. 8-0011, Ex. 8-0024)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1st black bullet and sub-bullets (pages 8-0007, -0011, and -0024) | The admission criteria continue to be met and active treatment is being provided. For treatment to be considered "active", service(s) must be as follows:<br>o  Supervised and evaluated by the admitting provider;<br>o  Provided under an individualized treatment plan that is focused on addressing the factors leading to admission, and makes use of clinical best practices;<br>o  Reasonably expected to improve the member's presenting problems within a reasonable period of time. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Plakun: Tr. 552:19-22, 553:15-23. |

## 3. Discharge Criteria (Ex. 8-0007, Ex. 8-0011 to -0012, Ex. 8-0024 to -0025)

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1st black bullet and sub-bullets (pages 8-0007, -0011 to -0012, and -0024 to -025) | The continued stay criteria are no longer met. Examples include:<br>o  The factors which led to admission have been addressed to the extent that the member can be safely transitioned to a less intensive level of care, or no longer requires care.<br>…<br>o  Treatment is primarily for the purpose of providing social, custodial, recreational, or respite care.<br>…<br>o  The member is unwilling or unable to participate in treatment, and involuntary treatment or guardianship is not being pursued. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E) Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Motivation (*see* Br. § II.G.6; PFF § X.F) | Fishman: Tr. 268:06-13, 268:14-20; Plakun: Tr. 552:19-22, 553:25-554:5; Martorana: Tr. 994:10-998:19. |

**B.    Outpatient: Mental Health Conditions (Ex. 8-0013 to -0014)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|-----------|-----------|
| Preamble | … The course of treatment in Outpatient is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the factors that precipitated admission no longer require treatment. Individual outpatient psychotherapy is generally provided in sessions lasting up to 45 minutes. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E) | Plakun: Tr. 591:24, 592:2-14, 657:20-658:1. |

**C.    Intensive Outpatient Program: Mental Health Conditions (Ex. 8-0014 to -0015)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|-----------|-----------|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Plakun: Tr. 591:24, 592:2-14, 657:20-658:1. |

**D.    Residential Treatment Center: Mental Health Conditions (Ex. 8-0018 to -0019)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|-----------|-----------|
| Preamble | …The course of treatment in a Residential Treatment Center is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care…. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Plakun: Tr. 592:20-593:4. |

1.  **Admission Criteria (Ex. 8-0018)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 3rd black bullet and sub-bullets (page 8-0018) | The factors leading to admission cannot be safely, efficiently, or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors. Examples include the following:<br>o  Acute impairment of behavior or cognition that interferes with activities of daily living to the extent that the welfare of the member or others is endangered.<br>o  Psychosocial and environmental problems that are likely to threaten the member's safety or undermine engagement in a less intensive level of care without the intensity of services offered in this level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Plakun: Tr. 592:20-21, 593:5-11. |

2.  **Continued Service Criteria (Ex. 8-0018 to -0019)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 2nd black bullet and sub-bullets (pages 8-0018 to -0019) | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . .<br>o  Health-related services provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence;<br>o  Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E) Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Plakun: Tr. 592:20-21, 593:5-11; Martorana: Tr. 1006:15-1007:2. |

61

E.   **Outpatient: Substance-Related Disorders (Ex. 8-0026 to -0027)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| Preamble | Assessment and diagnosis and active behavioral health treatment that are provided in an ambulatory setting. The course of treatment in Outpatient is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the factors that precipitated admission no longer require treatment. Individual outpatient psychotherapy is generally provided in sessions lasting up to 45 minutes.<br><br>Extended outpatient sessions are individual psychotherapy sessions with or without evaluation and management services lasting longer than 95 minutes. Extended outpatient sessions require pre-service notification before services are received, except in extenuating circumstances, such as a crisis when notification should occur as soon as possible. In the event that the Mental Health/Substance Use Disorder Designee is not notified of extended outpatient sessions, benefits may be reduced. Check the member's specific plan document for the applicable penalty and allowance of a grace period. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 269:8-270:7. |

F.   **Intensive-Outpatient Program: Substance-Related Disorders (Ex. 8-0032 to -0033)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care…. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 271:18-272:1. |

G.   **Residential Rehabilitation: Substance-Related Disorders (Ex. 8-0035 to -0036)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|-----------|-----------|
| Preamble | …The course of treatment in Residential Rehabilitation is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that rehabilitation can be safely, efficiently and effectively continued in a less intensive level of care. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 272:2-8. |

1.   **Admission Criteria (Ex. 8-0035 to -0036)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|-----------|-----------|
| 3rd black bullet and sub-bullets (page 8-0035) | The factors leading to admission and/or the member's history of response to treatment suggest that there is imminent or current risk of relapse which cannot be safely, efficiently, and effectively managed in a less intensive level of care.<br>  ○  A co-occurring mental health condition is stabilizing but the remaining signs and symptoms are likely to undermine treatment in a less intensive setting.<br>  ○  The member is in immediate or imminent danger of relapse, and the history of treatment suggests that the structure and support provided in this level of care is needed to control the recurrence. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 272:9-19. |
| 4th black bullet (page 8-0036) | The factors leading to admission cannot be safely, efficiently, or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors. | Acuity (*see* Br. § II.G.1; PFF § X.A); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 272:20-273:2. |

**2.  Continued Service Criteria (Ex. 8-0036)**

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 2nd black bullet and sub-bullets (page 8-0036) | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . . <br> o  Health-related services provided for the primary purpose of meeting the personal needs of the member or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence. <br> o  Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | Maintenance of Function  (*see* Br. § II.G.5; PFF § X.E) <br> Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 273:3-9. |

## XII.   AUGUST 2010 CUSTODIAL CARE COVERAGE DETERMINATION GUIDELINE (EX. 10-0003)[4]

| ¶ | Criterion | Why Flawed | Testimony |
|---|---|---|---|
| 1st black bullet | United Behavioral Health maintains that optimal clinical outcomes result when evidence-based treatment is provided in the least restrictive level of available care that is structured and intensive enough to safely and adequately treat a member's presenting problem. | Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 213:06-214:04; Plakun: Tr. 511:25-512:6. |
| 2nd black bullet | Patient has been determined to require intensive, 24 hour, specialized psychiatric intervention that cannot be provided in a less restrictive setting. | Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 213:06-214:04; Plakun: Tr. 511:25-512:6 |
| 3rd black bullet | United Behavioral Health maintains that treatment of a behavioral health condition in an acute inpatient unit or RTC is not for the purpose of providing custodial care, but is for the active treatment of a behavioral health condition. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 274:5-275:25; Plakun: Tr. 557:5-558:23. |

---

[4] The criteria listed in Sections XII to XVII appear in the "Key Points" section of the Coverage Determination Guidelines for Custodial Care. They also appear in the body of those CDGs; Plaintiffs challenge the provisions cited herein wherever they appear in the CDG, for the same reasons identified here.  The criteria listed in Section XVIII appear in the "Coverage Rationale" section of the CDG.

| ¶ | Criterion | Why Flawed | Testimony |
|---|-----------|------------|-----------|
| 4th black bullet | Active inpatient or residential treatment is a clinical process involving the 24-hour care of patients that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare, under the direction of a psychiatrist. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 274:5-275:25; Plakun: Tr. 509:25-510:8. 557:5-558:23. |
| 5th black bullet and sub-bullets | "Active Treatment" in this context is indicated by services that are all of the following:<br>○ Supervised and evaluated by a physician<br>○ Provided under an individualized treatment or diagnostic plan;<br>○ Reasonably expected to improve the patient's condition or for the purpose of diagnosis and<br>○ Unable to be provided in a less restrictive setting<br>○ Focused on interventions that are based on generally accepted standard medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the patient's condition to the extent that they can be safely treated in a lower level of care. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 274:5-275:25; Plakun: Tr. 509:25-510:8, 557:5-558:23, 562:11-564:4. |
| 6th black bullet | Improvement of the patient's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment in an acute or Residential Treatment Center. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 274:5-275:25; Plakun: Tr. 563:16-566:16. |
| 7th black bullet | "Improvement' in this context is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 274:5-275:25; Plakun: Tr. 563:16-566:16; Niewenhous: Tr. 340:16-345:01, 345:04-10, 354:25-357:19. |

XIII.   **DECEMBER 2011 CUSTODIAL CARE COVERAGE DETERMINATION GUIDELINE (EX. 47-0003 TO -0004)**

| ¶ | Criterion | Why Flawed | Evidence |
|---|---|---|---|
| 1st black bullet | United Behavioral Health maintains that treatment of a behavioral health condition in an acute inpatient unit or RTC is not for the purpose of providing custodial care, but is for the active treatment of a behavioral health condition. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 274:5-275:25, 276:6-277:16; Plakun: Tr. 509:25-510:8, 557:5-558:23. |
| 2nd black bullet | Custodial care in a psychiatric inpatient or residential setting is the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's behavioral health condition is not changing, or does not require trained clinical personnel to safely deliver services. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 276:6-277:16; Plakun: Tr. 509:25-510:8, 557:5-558:7. |
| 3rd black bullet | "Custodial Care" in this context is characterized by the following:<br>o   The presenting signs and symptoms of the patient have been stabilized, resolved, or a baseline level of functioning has been achieved;<br>o   The patient is not responding to treatment or otherwise not improving;<br>o   The intensity of active treatment provided in an inpatient or residential treatment setting is no longer required or services can be safely provided in a less intensive setting.<br>o   Examples include respite services, daily living skills instruction, days awaiting placement, activities that are social and recreational in nature, solely to prevent runaway/truancy or legal problems. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 120:12-123:06; Plakun: Tr. 509:25-510:8, 557:5-558:7, 560:16-563:23; Niewenhous: Tr. 363:13-364:14, 367:16-368:25 |
| 4th black bullet | The provision of Custodial Care by trained behavioral health personnel, such as a psychiatrist or licensed clinician, does not cause the services to be classified as skilled services. If the nature of the services can be safely and effectively performed by a nontrained person, the services will be considered Custodial Care. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 274:5-275:25, 276:6-277:16; Plakun: Tr. 509:25-510:8, 557:5-558:7, 560:16-563:23. |
| 5th black bullet | Active treatment in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of patients that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare, under the direction of a psychiatrist. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 274:5-275:25, 276:6-277:16; Plakun: Tr. 509:25-510:8, 557:5-558:7, 562:11-564:4. |

66

| ¶ | Criterion | Why Flawed | Evidence |
|---|---|---|---|
| 6th black bullet and sub bullets | "Active Treatment" in this context is indicated by services that are all of the following:<br>○ Supervised and evaluated by a physician<br>○ Provided under an individualized treatment or diagnostic plan;<br>○ Reasonably expected to improve the patient's condition or for the purpose of diagnosis and<br>○ Unable to be provided in a less restrictive setting<br>○ Focused on interventions that are based on generally accepted standard medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the patient's condition to the extent that they can be safely treated in a lower level of care | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 276:6-22, 277:6-7; Plakun: Tr. 557:5-558:7, 562:11-564:4, 565:5-566:16; Martorana: Tr. 1131:3-9, 1131:13-1132:6. |
| 7th black bullet | Improvement of the patient's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment in an acute or Residential Treatment Center. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 276:6-277:5, 277:8-16; Plakun: 563:16-566:16, 565:21-22, 566:5-16,; Martorana: Tr. 1093:5-8. |
| 8th black bullet | "Improvement" in this context is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued. | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 274:5-275:25, 276:6-277:16; Plakun: Tr. 563:16-566:16; Martorana: Tr. 1093:5-8. |
| 9th black bullet | United Behavioral Health maintains that inpatient or residential treatment should be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less restrictive setting. | Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 213:06-214:04; Plakun: Tr. 511:25-512:6. |

## XIV.    JANUARY 2013 CUSTODIAL CARE COVERAGE DETERMINATION GUIDELINE (EX. 84-0003)

| ¶ | Criterion | Why Flawed | Evidence |
|---|-----------|------------|----------|
| 1st black bullet | **Custodial Care** in a psychiatric inpatient or residential setting is the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's behavioral health condition is not changing, or does not require trained clinical personnel to safely deliver services (Certificate of Coverage (COC), 2011). | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 278:1-278:6; Plakun: Tr. 509:25-510:8, 557:5-558:23. |
| 2nd black bullet and sub-bullets | "Custodial Care" in this context is characterized by the following:<br>○ The presenting signs and symptoms of the patient have been stabilized, resolved, or a baseline level of functioning has been achieved;<br>○ The patient is not responding to treatment or otherwise not improving;<br>○ The intensity of active treatment provided in an inpatient or residential treatment setting is no longer required or services can be safely provided in a less intensive setting. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 120:12-123:06; Plakun: Tr. 509:25-510:8, 557:5-558:23, 560:16-563:23. |
| 3rd black bullet | Examples of Custodial Care include respite services, daily living skills instruction, days awaiting placement, activities that are social and recreational in nature, or solely to prevent runaway/truancy or legal problems (Centers for Medicare and Medicaid Services, Benefit Manual, (CMS), 2010). | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 278:1-278:6; Plakun: Tr. 560:16-563:23. |
| 4th black bullet | The provision of Custodial Care by trained behavioral health personnel, such as a psychiatrist or licensed clinician, does not cause the services to be classified as skilled services. If the nature of the services can be safely and effectively performed by a non-trained person, the services will be considered Custodial Care. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 278:1-278:6; Plakun: Tr. 560:16-563:23. |
| 5th black bullet | **Active treatment** in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of patients that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare, under the direction of a psychiatrist. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 278:1-278:6; Plakun: Tr. 562:2-563:18. |

| ¶ | Criterion | Why Flawed | Evidence |
|---|---|---|---|
| 6th black bullet and sub bullets | "Active Treatment" in this context is indicated by services that are <u>all</u> of the following (CMS, 2010):<br>○ Supervised and evaluated by a physician;<br>○ Provided under an individualized treatment or diagnostic plan;<br>○ Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>○ Unable to be provided in a less restrictive setting; and<br>○ Focused on interventions that are based on generally accepted standard medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's condition to the extent that they can be safely treated in a lower level of care. | <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 278:1-278:6; <u>Plakun</u>: Tr. 562:11-564:4, 565:5-13, 566:17-23. |
| 7th black bullet | **Improvement** of the patient's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment in an acute or Residential Treatment Center. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) | <u>Fishman</u>: Tr. 276:6-277:5, 277:8-16; <u>Plakun</u>: Tr. 563:16-566:16, 565:21-22, 566:5-16. |
| 8th black bullet | "Improvement" in this context is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued. | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 278:1-278:6; <u>Plakun</u>: Tr. 563:16-566:16; <u>Martorana</u>: Tr. 1093:5-8. |
| 9th black bullet | Optum maintains that inpatient or residential treatment should be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less restrictive setting. | <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 213:06-214:04; <u>Plakun</u>: Tr. 511:25-512:6. |

69

## XV.   FEBRUARY 2014 CUSTODIAL CARE COVERAGE DETERMINATION GUIDELINE (EX. 108-0003)

| ¶ | Criterion | Why Flawed | Evidence |
|---|---|---|---|
| 1st black bullet | *Custodial Care* in a psychiatric inpatient or residential setting is the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's behavioral health condition is not changing, or does not require trained clinical personnel to safely deliver services (Certificate of Coverage (COC), 2001, 2007, 2009, 2011). | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 278:7-279:3; Plakun: Tr. 509:25-510:8, 557:5-558:23. |
| 2nd black bullet and sub-bullets | "*Custodial Care*" in this context is characterized by the following (COC, 2001, 2007, 2009, 2011): <br> o The presenting signs and symptoms of the member have been stabilized, resolved, or a baseline level of functioning has been achieved; or <br> o The member is not responding to treatment or otherwise not improving; or <br> o The intensity of active treatment provided in an inpatient or residential treatment setting is no longer required or services can be safely provided in a less intensive setting. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 120:12-123:06, 278:7-20, 278:7-279:3; Plakun: Tr. 560:16-563:23. |
| 3rd black bullet | Examples of Custodial Care include respite services, daily living skills instruction, days awaiting placement, activities that are social and recreational in nature, or solely to prevent runaway/truancy or legal problems (Centers for Medicare and Medicaid Services, Benefit Manual, (CMS), 2013). | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 278:7-9, 278:21-22; Plakun: Tr. 560:16-563:23. |
| 4th black bullet | The provision of Custodial Care by trained behavioral health personnel, such as a psychiatrist or licensed clinician, does not cause the services to be classified as skilled services. If the nature of the services can be safely and effectively performed by a nontrained person, the services will be considered Custodial Care. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H) | Fishman: Tr. 278:7-279:3; Plakun: Tr. 560:16-563:23. |

70

| ¶ | Criterion | Why Flawed | Evidence |
|---|---|---|---|
| 5th black bullet | *Active Treatment* in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of members that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare under the direction of a psychiatrist (CMS, 2013). | <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) | <u>Fishman</u>: Tr. 278:7-279:3; <u>Plakun</u>: Tr. 562:11-564:4. |
| 6th black bullet and sub-bullets | "*Active Treatment*" in this context is indicated by services that are <u>all</u> of the following (CMS, 2013):<br>o Supervised and evaluated by a physician;<br>o Provided under an individualized treatment or diagnostic plan;<br>o Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>o Unable to be provided in a less restrictive setting; and<br>o Focused on interventions that are based on generally accepted standard medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's condition to the extent that they can be safely treated in a lower level of care. | <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 278:7-9, 278:23-24; <u>Plakun</u>: Tr. 562:11-564:4. |
| 7th black bullet | *Improvement* of the member's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment (CMS, 2013). | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) | <u>Fishman</u>: Tr. 278:7-9, 278:25-279:3; <u>Plakun</u>: Tr. 563:16-566:16; |
| 8th black bullet | "*Improvement*" in this context is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued (CMS, 2013). | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 278:7-279:3; <u>Plakun</u>: Tr. 563:16-566:16. |

71

| ¶ | Criterion | Why Flawed | Evidence |
|---|---|---|---|
| 9th black bullet | Optum maintains that inpatient or residential treatment should be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less restrictive setting. | Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 213:06-214:04; Plakun: Tr. 511:25-512:6. |

## XVI.   MARCH 2015 CUSTODIAL CARE COVERAGE DETERMINATION GUIDELINE (EX. 148-0003)

| ¶ | Criterion | Why Flawed | Evidence |
|---|---|---|---|
| 1st black bullet | **Services provided in psychiatric inpatient and residential treatment settings that are not active and are solely for the purpose of Custodial Care as defined below are excluded.** | Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); | Fishman: Tr. 120:12-121:13, 120:12-123:06; Plakun: Tr. 560:16-563:23; Niewenhous: Tr. 369:1-371:3. |
| 2nd black bullet and sub-bullets | Custodial Care in a psychiatric inpatient or residential setting is any of the following (Certificate of Coverage (2011): <br> o Non-health-related services, such as assistance in activities of daily living (examples include feeding, dressing, bathing, transferring and ambulating). <br> o Health-related services that are provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence. <br> o Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 120:12-121:13, 120:12-123:06; Plakun: Tr. 560:16-563:23; Niewenhous: Tr. 369:1-371:3. |

| ¶ | Criterion | Why Flawed | Evidence |
|---|---|---|---|
| 3rd black bullet and sub-bullets | Active Treatment in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of members that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare under the direction of a psychiatrist (CMS Psychiatric Inpatient Local Coverage Determinations, 2014).<br>  ○ Active Treatment is indicated by services that are <u>all</u> of the following (CMS Benefit Policy Manual, Chapter 2, 30.2.2.1, 2014):<br>    ■ Supervised and evaluated by a physician;<br>    ■ Provided under an individualized treatment or diagnostic plan;<br>    ■ Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>    ■ Unable to be provided in a less restrictive setting; and<br>    ■ Focused on interventions that are based on generally accepted standard medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's condition to the extent that they can be safely treated in a lower level of care. | <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H) | <u>Fishman</u>: Tr. 121:18-122:07, 122:19-123:6; <u>Plakun</u>: Tr. 562:11-564:4, 562:11-564:4. |
| 4th black bullet and sub-bullet | Improvement of the member's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment (CMS Psychiatric Inpatient Local Coverage Determinations, 2014).<br>  ○ Improvement is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued (CMS Psychiatric Inpatient Local Coverage Determinations, 2014). | <u>Acuity</u> (*see* Br. § II.G.1; PFF § X.A); <u>Maintenance of Function</u> (*see* Br. § II.G.5; PFF § X.E); <u>Custodial/Improvement</u> (*see* Br. § II.G.8; PFF § X.H); <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 123:16-23; <u>Plakun</u>: Tr. 563:16-23, 564:5-15; |
| 5th black bullet | Optum maintains that inpatient or residential treatment should be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less restrictive setting. | <u>Drive Toward Lower Levels of Care</u> (*see* Br. § II.G.3; PFF § X.C) | <u>Fishman</u>: Tr. 213:06-214:04; <u>Plakun</u>: Tr. 511:25-512:6. |

## XVII.  APRIL 2016 CUSTODIAL CARE COVERAGE DETERMINATION GUIDELINE (EX. 195)

| ¶ | Criterion | Why Flawed | Evidence |
|---|---|---|---|
| 1st black bullet | **Services provided in psychiatric inpatient and residential treatment settings that are not active and are solely for the purpose of Custodial Care as defined below are excluded.** | Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); | Fishman: Tr. 120:12-123:06¸ 279:04-14; Plakun: Tr. 509:25-510:8, 557:5-558:23, 560:16-563:23. |
| 2nd black bullet & sub-bullets | Custodial Care in a psychiatric inpatient or residential setting is any of the following (Certificate of Coverage (2011): <br> o Non-health-related services, such as assistance in activities of daily living (examples include feeding, dressing, bathing, transferring and ambulating). <br> o Health-related services that are provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence. <br> o Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 120:12-123:06¸ 279:04-14; Plakun: Tr. 509:25-510:8, 557:5-558:23, 560:16-563:23. |
| 3rd black bullet & sub-bullets | Active Treatment in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of members that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare under the direction of a psychiatrist that cannot be managed in a less restrictive setting (CMS Psychiatric Inpatient Local Coverage Determinations, 2016) <br> o Active Treatment is indicated by services that are all of the following (CMS Benefit Policy Manual, Chapter 2, 30.2.2.1, Retrieved March, 2016): <br> ▪ Supervised and evaluated by a physician; <br> ▪ Provided under an individualized treatment or diagnostic plan; and <br> ▪ Reasonably expected to improve the member's condition or for the purpose of diagnosis. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 279:04-06; 279:15-19; Plakun: Tr. 562:11-564:4. |

74

| ¶ | Criterion | Why Flawed | Evidence |
|---|---|---|---|
| 4th black bullet & sub-bullets | Improvement of the member's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment (CMS Psychiatric Inpatient Local Coverage Determinations, 2016)<br>   ○  Improvement is measured by weighing the effectiveness of treatment and the risk that the members condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued (CMS Psychiatric Inpatient Local Coverage Determinations, 2016) | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 279:04-06; 279:20-22; Plakun: Tr. 563:16-566:16. |
| 5th black bullet | Optum maintains that inpatient or residential treatment should be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less restrictive setting (Certificate of Coverage, 2011). | Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 213:06-214:04; Plakun: Tr. 511:25-512:6. |

## XVIII. MARCH 2017 CUSTODIAL CARE COVERAGE DETERMINATION GUIDELINE (EX. 221)

| ¶ | Criterion | Why Flawed | Evidence |
|---|---|---|---|
| 1st ¶ | Services provided in psychiatric inpatient and residential treatment settings that are not active and are solely for the purpose of Custodial Care as defined below are excluded. | Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); | Fishman: Tr. 120:12-123:06, 279:24-280:12, 279:24-280:04; 280:13-18; Plakun: Tr. 509:25-510:8, 557:5-558:23, 560:16-563:23. |
| 2nd ¶ | Custodial Care in a psychiatric inpatient or residential setting is any of the following (Certificate of Coverage, 2011):<br>• Non-health-related services, such as assistance in activities of daily living (examples include feeding, dressing, bathing, transferring, and ambulating).<br>• Health-related services that are provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence.<br>• Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 120:12-123:06, 279:24-280:12, 279:24-280:04; 280:13-18; Plakun: Tr. 509:25-510:8, 557:5-558:23, 560:16-563:23. |

75

| ¶ | Criterion | Why Flawed | Evidence |
|---|-----------|------------|----------|
| 3rd ¶ | Active Treatment in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of members that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare under the direction of a psychiatrist that cannot be managed in a less restrictive setting (CMS Psychiatric Inpatient Local Coverage Determinations, 2016).<br>• Active Treatment is indicated by services that are all of the following (CMS Benefit Policy Manual, Chapter 2, 30.2.2.1):<br>○ Supervised and evaluated by a physician;<br>○ Provided under an individualized treatment or diagnostic plan; and<br>○ Reasonably expected to improve the member's condition or for the purpose of diagnosis. | Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 279:24-280:04, 280:13-18, 279:24-280:04; 280:19-25; Plakun: Tr. 562:11-564:4. |
| 4th ¶ | Improvement of the member's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment (CMS Psychiatric Inpatient Local Coverage Determinations, 2016).<br>• Improvement is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued (CMS Psychiatric Inpatient Local Coverage Determinations, 2016). | Acuity (*see* Br. § II.G.1; PFF § X.A); Maintenance of Function (*see* Br. § II.G.5; PFF § X.E); Custodial/Improvement (*see* Br. § II.G.8; PFF § X.H); Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 279:24-280:04; 281:01-06; Plakun: Tr. 563:16-566:16. |
| 5th ¶ | Optum maintains that inpatient or residential treatment should be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less restrictive setting (Certificate of Coverage, 2011). | Drive Toward Lower Levels of Care (*see* Br. § II.G.3; PFF § X.C) | Fishman: Tr. 213:06-214:04; Plakun: Tr. 511:25-512:6. |

76