# UNITED BEHAVIORAL HEALTH'S POST-TRIAL CLAIMS CHART

# PART 2

**V.A.3 2015 Level of Care Guidelines (Ex. 5)**
**Common Criteria (Ex. 5-0008 to -0010) | Discharge Criteria (Ex. 5-0009 to -0010)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | the discharge criteria, thus ensuring that the member will be discharged to a lower level unless the member treatment will be both safe and effective. (**Trial Tr. 1424:11–1426:6 (Allchin**).)<br>• **[Regarding the 2017 LOCGs]**<br>○ (**Trial Tr. 994:10–995:2 (Martorana)** (discharge involves a feedback loop which assesses whether a patient can be safely and effectively treated in the transitional level of care per that level's admission criteria).)<br>• **[Regarding Generally Accepted Standards of Care Generally]**<br>○ (**Trial Ex. 656-0033 (Medicare Benefit Policy Manual, Chapter 6, § 70.3 "Partial Hospitalization Services")** (it is "reasonably necessary" to deny coverage where the member "cannot, or refuse[s], to participate (due to their behavioral or cognitive status) with active treatment of their mental disorder (except for a brief admission necessary for diagnostic purposes), or . . . cannot tolerate the intensity of PHP.").) |

**B.** Intensive Outpatient Program: Mental Health Conditions (Ex. 5-00030 to -0032)

| ¶ | Criterion | Why Flawed | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care… | • Argument<br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Plakun: Tr. 583:5-7; 583:14-21 | • **[Regarding the June 2016 LOCGs]** Plaintiff's own expert described a portion of the preamble as containing "commendable" language.<br>o (**Trial Tr. 655:25–656:2 (Plakun)**.)<br>• *See* IV.B "2014 Intensive Outpatient Program: Mental Health Conditions, Preamble" (pg. 114) (addressing identical language) |

**C.** Outpatient: Mental Health Conditions (Ex. 5-0033 to -0034)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | … The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | • Argument<br>  o Acuity<br>  o Maintenance of Function<br>• Testimony<br>  o Fishman: Tr. 255:16-21 | • Dr. Fishman's testimony concerns the 2014 Outpatient Substance-Related Disorder LOCG<br>• *See* IV.F "2014 Outpatient: Mental Health Conditions, Preamble" (referring to IV.A.1 "2014 Common Criteria: 2nd black bullet (page 4-0007") (pg. 126) (addressing identical language). |

**V.C.1 2015 Level of Care Guidelines (Ex. 5)**

**Outpatient: Mental Health Conditions (Ex. 5-0033 to -0034) | Admission Criteria (Ex. 5-0033)**

1. Admission Criteria (Ex. 5-0033)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.3 | Acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current condition can be safely, efficiently, and effectively assessed and/or treated in this setting. | • Argument<br>  ○ Acuity<br>  ○ Maintenance of Function<br>• Testimony<br>  ○ Plakun: Tr. 584:1-2; 584:11-17 | • Similar language appears in the 2014 Level of Care Guidelines.<br>  ○ (**Trial Tr. 1335:21–23 (Simpatico).**)<br>• *See* IV.C.1 "2014 Outpatient: Mental Health Conditions, 4th black bullet (page 4-0035)" (pg. 118-119) (addressing identical language). |

**D.** Residential Treatment Center: Mental Health Conditions (Ex. 5-0038 to -0040)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in a Residential Treatment Center is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | • Argument<br>  o Acuity<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Plakun: Tr. 584:24-585:8 | • Similar language is in the 2014 Level of Care Guidelines.<br>  o (**Trial Tr. 1326:11–1327:4 (Simpatico)**.)<br>• *See* IV.D "2014 Residential Treatment Center: Mental Health Conditions, Preamble" (referring to IV.C "2014 Outpatient: Mental Health Disorders, Preamble" and IV.A.1 "Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)") (pg. 120, 105-107) (addressing identical language). |

**1.** Admission Criteria (Ex. 5-0038)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.3 | The "why now" factors leading to admission cannot be safely, efficiently or effectively assessed and/or treated in a less intensive setting due to acute changes | • Argument<br>  o Acuity<br>  o Maintenance of Function<br>  o Drive Toward Lower Levels of Care | • *See* IV.D.1 "2014 Residential Treatment Center: Mental Health Conditions, Admission Criteria, 4th black bullet" (pg. 121-122) (addressing identical language). |

V.D.1 2015 Level of Care Guidelines (Ex. 5)

Residential Treatment Center: Mental Health Conditions (Ex. 5-0038 to -0040) | Admission Criteria (Ex. 5-0038)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | in the member's signs and symptoms and/or psychosocial and environmental factors. Examples include:<br>1.3.1. Acute impairment of behavior or cognition that interferes with activities of daily living to the extent that the welfare of the member or others is endangered.<br>1.3.2. Psychosocial and environmental problems that are likely to threaten the member's safety or undermine engagement in a less intensive level of care without the intensity of services offered in this level of care. | • Testimony<br>o Plakun: Tr. 584:24-25; 585:10-17 | |

**2.** Continued Service Criteria (Ex. 5-0038 to -0039)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2.2 | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . .<br>2.2.2. Health-related services that are provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence. . . .<br>2.2.3. Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | • Argument<br>  ○ Maintenance of Function<br>  ○ Custodial/ Improvement<br>• Testimony<br>  ○ Plakun: Tr. 584:24-25; 585:18-22 | • Under generally accepted standards of care, custodial care is not covered.<br>  ○ (**Trial Tr. 1261:7–1262:7, 1310:15–18 (Simpatico)**.)<br>• *See* XII "March 2015 Custodial Care Coverage Determination Guideline, 2nd black bullet and sub-bullets" (pg. 230-231) (discussing similar language found in the 2015 Custodial Care CDG). |

**E.** Intensive Outpatient Program: Substance-Related Disorders (Ex. 5-0055 to -0058)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent with Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | • Argument<br>○ Acuity<br>○ Drive Toward Lower Levels of Care<br>• Testimony<br>○ Fishman: Tr. 254:15-24 | • Dr. Fishman's testimony concerns the 2014 Level of Care Guidelines.<br>• The same language appears in the 2014 Level of Care Guidelines.<br>○ (**Trial Tr. 1336:23–1337:11 (Simpatico)**.)<br>• *See* IV.E "2014 Intensive Outpatient Program: Substance-Related Disorder, Preamble" (referring to IV.G "2014 Residential Rehabilitation: Substance Related Disorder, Preamble"). (pg. 125) (addressing identical language). |

**F.** Outpatient: Substance-Related Disorders (Ex. 5-0070 to -0072)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | … The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | • Argument<br>  ○ Acuity<br>  ○ Maintenance of Function<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Fishman: Tr. 255:16-21 | • Dr. Fishman's testimony concerns the 2014 Level of Care Guidelines.<br>• *See* IV.F "2014 Outpatient: Substance-Related Disorders, Preamble" (pg. 126) (addressing identical language). |

**1.** Admission Criteria (Ex. 5-0070)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.4 | Acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current condition can be | • Argument<br>  ○ Acuity<br>  ○ Maintenance of Function<br>• Testimony<br>  ○ Fishman: Tr. | • Dr. Fishman ignores the "or" language in formulating his opinion.<br>• (**Trial Tr. 208:19–209:3 (Fishman)**.)<br>• The same language appears in the 2014 LOCGs.<br>  ○ (**Trial Tr. 1337:14–18 (Simpatico)**.)<br>• *See* IV.F.1 "2014 Outpatient: Substance-Related Disorders, |

**V.F.1 2015 Level of Care Guidelines (Ex. 5)**

**Outpatient: Substance-Related Disorders (Ex. 5-0070 to -0072) | Admission Criteria (Ex. 5-0070)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | safely, efficiently, and effectively assessed and/or treated in this setting. | 130:2-24; 130:25-131:18 | Admission Criteria, 5th black bullet (page 4-0067)" (pg. 127) (addressing identical language). |

**G.** Residential Rehabilitation: Substance-Related Disorders (Ex. 5-0081 to -0083)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in Residential Rehabilitation is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that rehabilitation can be safely, efficiently and effectively continued in a less intensive level of care. | • <u>Argument</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 256:9-18 | • Dr. Fishman's testimony concerns the 2014 LOCG.<br>• The same language appears in the 2014 LOCG.<br>o (**Trial Tr. 1336:5–11** (**Simpatico**).)<br>• *See* IV.G "2014 Residential Rehabilitation: Substance-Related Disorders, Preamble" (pg. 128) (addressing identical language).<br>• The "why now" language does not overemphasize acuity. The language emphasizes determining why a patient is seeking treatment at a given time in order to best formulate an individualized treatment plan. Additionally, "acute symptoms" generally refer acute changes of a chronic condition.<br>o (**Trial Tr. 1597:18–1600:1** (**Alam**).) |

**1.** Admission Criteria (Ex. 5-0081)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.3 | The "why now" factors leading to admission and/or the member's history of response to treatment suggest that there is imminent or current risk of relapse which cannot be safely, efficiently, and effectively managed in a less intensive level of | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care | • This criterion holds that a member can be admitted to residential treatment based on the "'why now' factors alone" or, if there is "a risk of relapse and needs for a structure to prevent that."<br>o (**Trial Tr. 1601:2–1601:10** (**Alam**).)<br>• *See* IV.G "2014 Residential Rehabilitation: Substance-Related Disorders, Admission Criteria, 4th black bullet" (pg. 129-130) |

**V.G.1 2015 Level of Care Guidelines (Ex. 5)**

**Residential Rehabilitation: Substance-Related Disorders (Ex. 5-0081 to -0083) | Admission Criteria (Ex. 5-0081)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | care. Examples include:<br>1.3.1. A co-occurring mental health condition is stabilizing but the remaining signs and symptoms are likely to undermine treatment in a less intensive setting.<br><br>1.3.2. The member is in immediate or imminent danger of relapse, and the history of treatment suggests that the structure and support provided in this level of care is needed to control the recurrence. | • <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 124:16-22; 125:10-14<br>  ○ <u>Alam</u>: Tr. 1601:5-1602:12 | (addressing identical language). |
| 1.4 | The "why now" factors leading to admission cannot be safely, efficiently, or<br>effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors. Examples include:<br><br>1.4.1. Acute impairment of behavior or cognition is interfering with Activities of Daily Living to the extent that the welfare of the member or others is endangered.<br><br>1.4.2. Psychosocial and | • <u>Argument</u><br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 124:16-22; 125:10-14 | • The same language is in the 2014 LOCG.<br>  ○ (**Trial Tr. 1336:12–16 (Simpatico)**.)<br>• *See* IV.G.1 "2014 Residential Rehabilitation: Substance-Related Disorder, Admission Criteria, 4th black bullet" (page 4-0078) (pg. 129-130 (addressing identical language).<br>• The phrase "acute changes" does not overemphasize acuity because it is referring to acute exacerbations of an underlying chronic condition.<br>  ○ (**Trial Tr. 1604:14–1605:1** (**Alam**).) |

**V.G.1 2015 Level of Care Guidelines (Ex. 5)**

**Residential Rehabilitation: Substance-Related Disorders (Ex. 5-0081 to -0083) | Admission Criteria (Ex. 5-0081)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | environmental problems threaten the member's safety, or undermine engagement in a less intensive level of care. | | |

**V.G.2 2015 Level of Care Guidelines (Ex. 5)**

**Residential Rehabilitation: Substance-Related Disorders (Ex. 5-0081 to -0083) | Continued Service Criteria (Ex. 5-0082)**

**2.** Continued Service Criteria (Ex. 5-0082)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2.2.3 | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . .<br><br>2.2.2. Health-related services provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence.<br><br>2.2.3. Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | • Argument<br>  o Maintenance of Function<br>  o Custodial/ Improvement<br>• Testimony<br>  o Fishman: Tr. 125:1-6; 125:15-126:16 | • An individual that does not require the care of a licensed, medical professional does not need to continue treatment at this given level of care.<br>  o (**Trial Tr. 1605:2–1606:7 (Alam)**.)<br>• *See* XII "March 2015 Custodial Care Coverage Determination Guideline, 2nd black bullet and sub-bullets" (pg. 225-226) (discussing similar language found in the 2015 Custodial Care CDG). |

**VI.** 2016 Level of Care Guidelines (Ex. 6)

**A.** Common Criteria (Ex. 6-0009 to -0011)

**1.** Admission Criteria (Ex. 6-0009 to -0010)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.4 | The member's current condition cannot be safely, efficiently, and effectively assessed and/or treated in a less intensive level of care due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission). | • Argument<br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 260:9-261:9<br>o Plakun: Tr. 548:18-23; 548:25-549:4<br>o Allchin: Tr. 1389:1-1390:14 | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. __). (discussing concept of least restrictive effective level of care).<br>• *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105-107). *and* V.A.1 "Common Criteria, Admission Criteria, ¶1.4" (pg. 134).<br>o The same language is in the 2014 2015 Level of Care Guidelines. (***See* Trial Tr. 1072:22–1073:5 (Martorana)**.)<br>• The phrase "the member's current condition" is "an all-encompassing look at how is that this [member] presenting currently; which means not only an understanding of chronic issues and how they're presenting now as well as acute issues and any kind of co-morbid medical conditions that might also be occurring." (**Trial Tr. 1387:10–14 (Allchin)**.) |
| 1.5 | The member's current condition can be safely, efficiently, and effectively assessed and/or treated in the proposed level of care. Assessment and/or treatment of acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" | • Argument<br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 261:4-5; 261:10-11 | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 15-107). (discussing meaning of "why now").<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6-8). (discussing concept of least restrictive effective level of care).<br>• *See* V.A.1 "2015 Common Criteria, Admission Criteria, ¶1.5" (pg. 134-135).<br>o The same language is in the 2015 Level of Care |

**VI.A.1 2016 Level of Care Guidelines (Ex. 6)**
**Common Criteria (Ex. 6-0009 to -0011) | Admission Criteria (Ex. 6-0009 to -0010)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | factors leading to admission) require the intensity of services provided in the proposed level of care. | ○ Plakun: 548:18-23, 548:25-549:4 | Guidelines. (**Trial Tr. 1072:22–1073:5 (Martorana)**.) |
| 1.6 | Co-occurring behavioral health and medical conditions can be safely managed. | • Argument<br>○ Co-occurring<br>• Testimony<br>○ Fishman: Tr. 261:4-5; 261:12-18<br>○ Plakun: Tr. 548:18-23; 548:25-549:4<br>○ Allchin: Tr. 1389:1-1390:14<br>○ Martorana: Tr. 975:15-977:6, 977:8-978:1, 978:2-21<br>○ Simpatico: Tr. 1179:12-1180:1, 1182:23-1183:6 | • *See* V.A.1 "2015 Common Criteria, Admission Criteria, ¶1.6" (pg. 135-136).<br>• This criterion contains the same language as the 2015 Level of Care Guidelines.<br>○ (**Trial Tr. 1072:22–1073:5 (Martorana)**.)<br>• The "safely managed" requirement of Section 1.6 is intended "as a failsafe way to make sure [Care Advocates] look at the medical conditions" because "the patient's safety is the paramount thing." (**Trial Tr. 1387:24–1388:25 (Allchin)**.)<br>○ Section 1.6 ensures that, even if the facility is not capable of treating the member's co-occurring condition, the facility is at least capable of "safely managing" the co-occurring condition while it treats the diagnosis for which the patient is seeking treatment. (**Trial Tr. 1387:24–1388:25 (Allchin)**.)<br>• **[Regarding the 2017 LOCGs]**<br>○ The separate criterion that the member's "current condition" can be effectively treated in the proposed level of care encompasses co-occurring conditions, including "whether the co-occurring problem is such that it requires a higher intensity of service." (**Trial Tr. 974:23–975:14, 977:8–16 (Martorana)**.) |
| 1.8 | There is a reasonable expectation that services will improve the | • Arguments<br>○ Acuity | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 6" (pg. 8-9). |

**VI.A.1 2016 Level of Care Guidelines (Ex. 6)**
**Common Criteria (Ex. 6-0009 to -0011) | Admission Criteria (Ex. 6-0009 to -0010)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | member's presenting problems within a reasonable period of time.<br><br>1.8.1. Improvement of the member's condition is indicated by the reduction or control of the acute signs and symptoms that necessitated treatment in a level of care.<br><br>1.8.2. Improvement in this context is measured by weighing the effectiveness of treatment against evidence that the member's signs and symptoms will deteriorate if treatment in the current level of care ends. Improvement must also be understood within the broader framework of the member's recovery, resiliency and wellbeing. | o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: 261:4-5; 261:19-262:2<br>o <u>Plakun</u>: Tr. 548:18-23, 548:25-549:4 | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 6th black bullet and sub-bullets (page 4-0009 to -0010)" (pg. 107-108.)<br>• *See* V.A.1 "2015 Common Criteria, Admission Criteria, 1.8" (pg. 136-137.)<br>o The same language is in the 2015 Level of Care Guidelines. (**Trial Tr. 1073:6–10 (Martorana)**.)<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 8th black bullet and sub-bullets (page 8-0007)") (pg. 107-108).<br>• The phrase "[t]here is a reasonable expectation that services will improve …" comes from Medicare sources. **(Trial Tr. 319:5–320:12 (Niewenhous); Trial Ex. 655-0007) (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services).)**<br>• Determination of what constitutes a "reasonable period of time" is dependent on factors specific to the member seeking care. (**Trial Tr. 1413:25–2 (Allchin)**.) (noting that a "reasonable period of time [for children and adolescents] tends to be a much more expanded look than it would be with an adult.")<br>• The phrase "acute signs and symptoms" refers to the patient's presenting problems, which often includes an exacerbation of a chronic condition. (**Trial Tr. 1414:5–1415:4 (Allchin)**.)<br>• "Improvement" includes treatment of chronic conditions, and does not require constant, linear improvement of a member's condition. (**Trial Tr. 1419:18–1420:7 (Allchin)**.)<br>o (**Trial Tr. 1420:7–11 (Allchin)**.) ("People stumble, people occasionally have a mild regression from what their improvement is. But the important thing of that is: How does the treatment plan deal with that regression to |

**VI.A.1 2016 Level of Care Guidelines (Ex. 6)**
**Common Criteria (Ex. 6-0009 to -0011) | Admission Criteria (Ex. 6-0009 to -0010)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | get the person back up and moving in the right direction again?").)<br>• Criterion 1.8.2 requires an individualistic weighing of the pros and cons of moving a member to a lower level of care before doing so. This weighing is based on clinical judgment. (**Trial Tr. 1415:5–1417:12 (Allchin)**.)<br>• Concerns regarding an adolescent's or child's resiliency would result in a continued stay under Criterion 1.8.2. **(Trial Tr. 1417:13–1419:17 (Allchin).)** |
| 1.9 | Treatment is not primarily for the purpose of providing social, custodial, recreational, or respite care. | • <u>Arguments</u><br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 250:8-15; 251:25-252:4<br>o <u>Plakun</u>: Tr. 581:11-12, 581:24-25, 582:19-21 | • Dr. Fishman's and Dr. Plakun's testimony concern the 2014 Level of Care Guidelines.<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 8" (pg. 14-15). |

**VI.A.2 2016 Level of Care Guidelines (Ex. 6)**
**Common Criteria (Ex. 6-0009 to -0011) | Continued Service Criteria (Ex. 6-0010)**

**2.** Continued Service Criteria (Ex. 6-0010)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2.1 | The admission criteria continue to be met and active treatment is being provided. For treatment to be considered "active" services must be as follows:<br><br>2.1.1. Supervised and evaluated by the admitting provider;<br><br>2.1.2. Provided under an individualized treatment plan that is focused on addressing the "why now" factors, and makes use of clinical best practices;<br><br>2.1.3. Reasonably expected to improve the member's presenting problems within a reasonable period of time. | • Arguments<br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• Testimony<br>o Fishman: Tr. 262:3-7<br>o Plakun: Tr. 549:10-17 | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105-107) (discussing meaning of "why now")<br>• *See* IV.A.2 "2014 Common Criteria, Continued Service Criteria, 1st black bullet and sub-bullets (page 4-0007 to -0008)" (pg. 109-110). *and* VIII.A.2 "2017 Common Criteria, Continued Service Criteria, 1st black bullet and sub-bullets (pages 8-0007, -0011, and -0024)" (pg. 17-).<br>o The same or similar language is in the 2014 Level of Care Guidelines and the 2017 Level of Care Guidelines. (**Trial Tr. 1073:11–14** (**Martorana**).)<br>• Provider supervision, at certain levels, is necessary to ensure that the member is receiving effective care.<br>o (**Trial Tr. 1420:23–1422:12** (**Allchin**).)<br>• An individualized treatment plan includes consideration of "any past issues via whether they're acute or chronic in nature." (**Trial Tr. 1422:24–25** (**Allchin**).)<br>• Criterion 2.1.3 ensures that treatment is efficient (i.e., that it will occur within a timely fashion).<br>o (**Trial Tr. 1423:3–9** (**Allchin**).) |
| 2.2 | The "why now" factors leading to admission have been identified and are integrated into the treatment and discharge plans. | • Arguments<br>o Acuity<br>• Testimony<br>o Fishman: Tr. 262:3-10 | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105-107) (discussing meaning of "why now")<br>• *See* V.A.2 "2015 Common Criteria, Continued Service Criteria, ¶2.2" (pg. 138-139).<br>o The same as language is in the 2015 Level of Care Guidelines. (**Trial Tr. 1073:11–14** (**Martorana**).) |

**3.** Discharge Criteria (Ex. 6-0010 to -0011)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3.1 | The continued stay criteria are no longer met. Examples include:<br><br>3.1.1. The "why now" factors which led to admission have been addressed to the extent that the member can be safely transitioned to a less intensive level of care, or no longer requires care.<br>... 3.1.3. Treatment is primarily for the purpose of providing social, custodial, recreational, or respite care.<br>... 3.1.5. The member is unwilling or unable to participate in treatment and involuntary treatment or guardianship is not being pursued. | • <u>Arguments</u><br>  o Acuity<br>  o Drive Toward Lower Levels of Care<br>  o Maintenance of Function<br>  o Custodial/ Improvement<br>  o Motivation<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 262:11-12, 262:13-16<br>  o <u>Plakun</u>: Tr. 549:20-550:2 | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105-107). (discussing meaning of "why now").<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6-8). (discussing concept of least restrictive effective level of care).<br>• *See* VIII.A.3 "2017 Common Criteria, Discharge Criteria, 1st black bullet and sub-bullets (pages 8-0007, -0011 to -0012, and -0024 to -0025)" (pg. 181-183).<br>  o The admission criteria for the level of care to which the member is being transitioned is part of the discharge criteria, thus ensuring that the member will be discharged to a lower level unless the member treatment will be both safe and effective. (**Trial Tr. 1424:11–1426:6 (Allchin)**.)<br>• **[Regarding the 2017 LOCGs]**<br>  o (**Trial Tr. 994:10–995:2 (Martorana)** (discharge involves a feedback loop which assesses whether a patient can be safely and effectively treated in the transitional level of care per that level's admission criteria).)<br>• **[Regarding the 2015 LOCGs]**<br>  o This criterion comports with generally accepted standards of care because "it's stating in a similar manner as previous versions that the continued stay criteria are no longer met and that the reasons for |

**VI.A.3 2016 Level of Care Guidelines (Ex. 6)**
**Common Criteria (Ex. 6-0009 to -0011) | Discharge Criteria (Ex. 6-0010 to -0011)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | presentation, the so-called 'why now' factors, which led to admission, have been addressed to the extent that the member can be safely transitioned to a less intensive level of care, which is the whole point of treatment. And then, finally, it again addresses a situation where excluding an involuntary population, which is sort of a separate consideration, if a member is—that has capacity is unwilling or unable to participate in their own treatment after inadequate attempt to motivate them and engage them, then by definition they're not capable of participating in active treatment and there wouldn't be a medical necessity to continue treatment." (**Trial Tr. 1332:25–1333:13 (Simpatico**).)<br>• **[Regarding Generally Accepted Standards of Care Generally]**<br>  ○ (**Trial Ex. 656-0033 (Medicare Benefit Policy Manual, Chapter 6, § 70.3 "Partial Hospitalization Services")** (it is "reasonably necessary" to deny coverage where the member "cannot, or refuse[s], to participate (due to their behavioral or cognitive status) with active treatment of their mental disorder (except for a brief admission necessary for diagnostic purposes), or . . . cannot tolerate the intensity of PHP.").) |

**B.** Intensive Outpatient Program: Mental Health Conditions (Ex. 6-00032 to -0035)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care…. | • Argument<br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Plakun: Tr. 585:25-586:10; 656:3-22 | • **[Regarding the June 2016 LOCGs]**<br>  ○ Dr. Plakun testified that portions of the preamble are "commendable." (**Trial Tr. 655:17–656:22 (Plakun)**.)<br>• *See* IV.B."2014 Intensive Outpatient Program: Mental Health Conditions, Preamble" (pg. ___) (addressing identical language). |

**C.** Outpatient: Mental Health Conditions (Ex. 6-0036 to -0038)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | … The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | • Argument<br>o Acuity<br>o Maintenance of Function<br>• Testimony<br>o Plakun: Tr. 586:16-24 | • *See* IV.C "2014 Outpatient: Mental Health Conditions, Preamble" (referring to IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)") (pg. ___) (addressing identical language). |

**1.** Admission Criteria (Ex. 6-0036)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.3 | Acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current | • Argument<br>o Acuity<br>o Maintenance of Function<br>• Testimony<br>o Plakun: Tr. 586:25-587:2-10 | • *See* IV.C "2014 Outpatient: Mental Health Conditions, Preamble" (referring to IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)") (pg. ___) (addressing identical language). |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | condition can be safely, efficiently, and effectively assessed and/or treated in this setting. | | |

**D.** Residential Treatment Center: Mental Health Conditions (Ex. 6-0043 to -0045)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in a Residential Treatment Center is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | • Argument<br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Plakun: Tr. 587:15-21 | • *See* IV.D "2014 Residential Treatment Center: Mental Health Conditions, Preamble" (referring to IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)") (pg. ___) (addressing identical language). |

**1.** Admission Criteria (Ex. 6-0043)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.3 | The "why now" factors leading to admission cannot be safely, efficiently or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and | • Argument<br>o Acuity<br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care | • *See* IV.D "2014 Residential Treatment Center: Mental Health Conditions, Admission Criteria, 4th black bullet" (pg. ___) (addressing identical language). |

**VI.D.1 2016 Level of Care Guidelines (Ex. 6)**

**Residential Treatment Center: Mental Health Conditions (Ex. 6-0043 to -0045) | Admission Criteria (Ex. 6-0043)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | symptoms and/or psychosocial and environmental factors. Examples including the following:<br><br>1.3.1. Acute impairment of behavior or cognition that interferes with activities of daily living to the extent that the welfare of the member or others is endangered.<br><br>1.3.2. Psychosocial and environmental problems that are likely to threaten the member's safety or undermine engagement in a less intensive level of care without the intensity of services offered in this level of care. | • Testimony<br>o Plakun: Tr. 587:15-17; 587:22-588:2; 588:8-16; 588:19-21 | |

**VI.D.2 2016 Level of Care Guidelines (Ex. 6)**

**Residential Treatment Center: Mental Health Conditions (Ex. 6-0043 to -0045) | Continued Service Criteria (Ex. 6-0043 to -0044)**

**2.** Continued Service Criteria (Ex. 6-0043 to -0044)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2.2 | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . .<br><br>2.2.2. Health-related services provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence;<br><br>2.2.3. Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | • Argument<br>  o Maintenance of Function<br>  o Custodial/ Improvement<br>• Testimony<br>  o Plakun: Tr. 587:15-17; 588:3-7 | • Dr. Plakun's testimony does not address any issues with ¶2.2.3, and addresses only ¶2.2 and ¶2.2.2.<br>• *See* V.D.2 "2015 Residential Treatment Center: Mental Health Conditions, Continued Service Criteria, ¶2.2" (pg. ___) (addressing identical language).<br>• *See* VIII.D.2 "2017 Residential Treatment Center: Mental Health Conditions, Continued Service Criteria, 2nd black bullet and sub-bullets" (pages 8-0018 to -19) (pg. ___) (addressing identical language). |

**E.** Intensive Outpatient Program: Substance-Related Disorders (Ex. 6-0062 to -0065)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care… | • Argument<br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Fishman: Tr. 262:18-263:2 | • *See* IV.E "2014 Intensive Outpatient Program: Substance-Related Disorder, Preamble" (referring to IV.G "2014 Residential Rehabilitation: Substance-Related Disorder, Preamble") (pg. ___) (addressing identical language). |

**F.** Outpatient: Substance-Related Disorders (Ex. 6-0079 to -0081)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | … The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | • Argument<br>o Acuity<br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 263:6-11 | • *See* IV.E "2014 Outpatient: Substance-Related Disorder, Preamble" (referring to IV.E "2014 Intensive Outpatient: Substance-Related Disorder, Preamble") (pg. ___) (addressing identical language). |

**1.** Admission Criteria (Ex. 6-0079)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.4 | Acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current condition can be safely, efficiently, and effectively assessed and/or treated in this setting. | • Argument<br>o Acuity<br>o Maintenance of Function<br>• Testimony<br>o Fishman: Tr. 263:12-20 | • *See* IV.F.1 "2014 Outpatient: Substance-Related Disorder, Admission Criteria, 5th black bullet (page 4-0067)" (pg. ___) (addressing identical language). |

**G.** Residential Rehabilitation: Substance-Related Disorders (Ex. 6-0090 to -0092)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | … The course of treatment in Residential Rehabilitation is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that rehabilitation can be safely, efficiently and effectively continued in a less intensive level of care. | • <u>Argument</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 263:22-264:2 | • *See* IV.A.1 "2014 Residential Rehabilitation: Sustance-Related Disorders, Preamble" (pg. ___) (addressing identical language). |

**1.** Admission Criteria (Ex. 6-0090 to -0091)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.3 | The "why now" factors leading to admission and/or the member's history of response to treatment suggest that there is imminent or current risk of relapse which cannot be safely, efficiently, and effectively managed in a less intensive level of care.<br>1.3.1. A co-occurring mental health condition is stabilizing but the remaining | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. | • *See* IV.G.1 "2014 Residential Rehabilitation: Substance-Related Disorders, Admission Criteria, 4th black bullet (page 4-0077)" (pg. ___) (addressing identical language). |

**VI.G.1 2016 Level of Care Guidelines (Ex. 6)**

**Residential Rehabilitation: Substance-Related Disorders (Ex. 6-0090 to -0092) | Admission Criteria (Ex. 6-0090 to -0091)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | signs and symptoms are likely to undermine treatment in a less intensive setting.<br>1.3.2. The member is in immediate or imminent danger of relapse, and the history of treatment suggests that the structure and support provided in this level of care is needed to control the recurrence. | 263:22-264:8 | |
| 1.4 | The "why now" factors leading to admission cannot be safely, efficiently, or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors. | • Argument<br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 263:22-264:10 | • *See* IV.G.1 "2014 Residential Rehabilitation: Substance-Related Disorders, Admission Criteria, 5th black bullet" (pg. ___) (addressing identical language). |

**VI.G.2 2016 Level of Care Guidelines (Ex. 6)**
**Residential Rehabilitation: Substance-Related Disorders (Ex. 6-0090 to -0092) | Continued Service Criteria (Ex. 6-0091)**

**2.** Continued Service Criteria (Ex. 6-0091)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2.2 | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following:…<br><br>2.2.2. Health-related services that are provided for the primary purpose of meeting the personal needs of the member or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence.<br><br>2.2.3. Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | • Argument<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• Testimony<br>o Fishman: Tr. 263:22-264:19 | • Dr. Fishman's testimony addresses only ¶2.2.2.<br>• *See* VIII.D.2 "2017 Residential Treatment Center: Mental Health Conditions, Continued Service Criteria, 2nd black bullet and sub-bullets (page 8-0018 to -0019)" (pg. ___).<br>• *See, e.g.*, X "December 2011 Custodial Care Coverage Determination Guidelines" (pg. ___). |

**VII. 2016 Level of Care Guidelines (Ex. 7)**

**VII.** 2016 Level of Care Guidelines (Ex. 7)[1]

[1] There are no substantive differences between the January 2016 Level of Care Guidelines and the June 2016 Level of Care Guidelines. (**Trial Tr. 264:21–265:16 (Fishman)**; **Trial Tr. 1072:7–21 (Martorana)**.) UBH incorporates is responses for the January 2016 Level of Care Guidelines in full with respect to the June 2016 Level of Care Guidelines.

# VIII. 2017 Level of Care Guidelines (Ex. 8)

## A. Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025)

### 1. Admission Criteria (Ex. 8-0006 to -0007; Ex. 8-0011, Ex. 8-0024)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 4th black bullet (page 8-0007 | The member's current condition cannot be safely, efficiently, and effectively assessed and/or treated in a less intensive level of care. | • Argument<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Fishman: Tr. 261:4-5; 261:10-11; Plakun: 548:18-23, 548:25-549:4, 550:23-551:5 | • Dr. Fishman's and Dr. Plakun's testimony concerns the 2016 Level of Care Guidelines.<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. __). (discussing concept of least restrictive effective level of care).<br>• The preferred method of treatment is to treat an individual in a less restrictive setting that offers safe and effective care. This criterion requires care advocates and providers to assess the member's entire condition and determine whether that member can be safely and effectively treated at a less restrictive level of intensity.<br>  ○ (**Trial Tr. 968:22–24 (Martorana)** ("[P]eople should be free to live their lives as much as possible, as much as reasonable, as safe as you can when you're instituting psychiatric treatment.").)<br>  ○ (**Trial Tr. 1175:1–1177:7 (Simpatico)**.)<br>• The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association.<br>  ○ (**Trial Tr. 968:25–971:23 (Martorana)**.)<br>  ○ (**Trial Ex. 634-0022 (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders)** ("Individuals should be treated in the least restrictive setting that is likely to prove safe and effective.").)<br>  ○ (**Trial Ex. 639-0016 (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder)** ("The psychiatrist should determine the least restrictive setting |

**VIII.A.1 2017 Level of Care Guidelines (Ex. 8)**

**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Admission Criteria (Ex. 8-0006 to -0007; Ex. 8-0011, Ex. 8-0024)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | for treatment that will be most likely not only to address the patient's safety, but also to promote improvement in the patient's condition.").)<br>• UBH trains it clinicians to interpret "current condition" as including both acute and chronic conditions.<br>  ○ (**Trial Tr. 977:16–20 (Martorana)**.) ("When we take new clinicians and current clinicians through the process of how to use these guidelines, we wouldn't be separating it out or parsing it in that way. It's more of a don't forget to consider these things; it's important.")<br>• **[Regarding the 2013 LOCGs]**<br>  ○ Dr. Fishman did "not particularly object" to a similarly-worded criterion in the 2013 LOCGs, which, like the 2017 LOCGs, lacked the phrases "why now" and "acute changes." **(Trial Tr. 232:12–18 (Fishman)**.) |
| 5th black bullet (page 8-0007) | The member's current condition can be safely, efficiently, and effectively assessed and/or treated in the proposed level of care. Assessment and/or treatment of the factors leading to admission require the intensity of services provided in the proposed level of care. | • <u>Argument</u><br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 261:4-5; 261:10-11<br>  ○ <u>Plakun</u>: 548:18-23, 548:25-549:4, 550:23-551:5 | • Dr. Fishman's and Dr. Plakun's testimony concerns the 2016 Level of Care Guidelines.<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. __). (discussing concept of least restrictive effective level of care).<br>• *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. __).<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. __). (discussing concept of least restrictive effective level of care).<br>• *See* V.A.1 "2015 Common Criteria, Admission Criteria, ¶1.5" (pg. ___).<br>• This criterion requires the care advocate and provider to assess whether the member can be safely and effectively treated at the proposed level of care. This includes consideration of chronic conditions and the "why now" factors.<br>  ○ (**Trial Tr. 972:5–8 (Martorana)** ("The current condition is the |

**VIII.A.1 2017 Level of Care Guidelines (Ex. 8)**

**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Admission Criteria (Ex. 8-0006 to -0007; Ex. 8-0011, Ex. 8-0024)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | set of symptoms that the member brings to the treatment, to the proposed treatment. So it has to do with, well, pretty much everything that is going on with them that has brought them to this point.").)<br>o (**Trial Tr. 1438:12–1439:13 (Allchin)**.) |
| 6th black bullet (page 8-0007) | Co-occurring behavioral health and medical conditions can be safely managed. | • Argument<br>o Co-occurring<br>• Testimony<br>o Plakun: Tr. 552:19-22, 553:1-3<br>o Martorana: Tr. 975:15-977:6, 977:8-978:1, 978:2-21<br>o Simpatico: Tr. 1179:12-1180:1, 1182:23-1183:6 | • The separate criterion that the member's "current condition" can be effectively treated in the proposed level of care encompasses co-occurring conditions, including "whether the co-occurring problem is such that it requires a higher intensity of service." (**Trial Tr. 974:23–975:14, 977:8–16 (Martorana)**.)<br>• The criterion that co-occurring medical conditions can be "safely managed" is an intentional redundancy, designed to "make sure people think it through in the clinical process" and ensure that clinicians, especially new clinicians "don't forget to consider" whether co-occurring conditions can be safely managed. (**Trial Tr. 977:17–978:20 (Martorana)**.)<br>• This criterion is in accord with generally accepted standards of care because "it speaks to . . . compiling a comprehensive understanding of a patient's current and past medical history and circumstances in order to understand how to understand the presenting picture, and it necessarily includes an understanding of their behavioral health history and any general medical conditions that they may have."(**Trial Tr. 1179:5–10 (Simpatico)**.)<br>• "Manage" means an individual's co-occurring conditions are treated to the point where their symptoms do not interfere with the treatment of the primary diagnosis. In order for a condition to be "managed," it must also be treated effectively, if possible.<br>o (**Trial Tr. 973:16–18 (Martorana); *see also* Trial Tr. 975:1–2**)("That's how you manage something; you [consider whether co-occurring conditions can be effectively addressed at the level |

**VIII.A.1 2017 Level of Care Guidelines (Ex. 8)**

**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Admission Criteria (Ex. 8-0006 to -0007; Ex. 8-0011, Ex. 8-0024)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | of care].")<br>• **[Regarding the 2016 LOCGs]**<br>  ○ The "safely managed" requirement is intended "as a failsafe way to make sure [Care Advocates] look at the medical conditions" because "the patient's safety is the paramount thing." **(Trial Tr. 1387:24–1388:25 (Allchin)**<br>  ○ Section 1.6 ensures that, even if the facility is not capable of treating the member's co-occurring condition, the facility is at least capable of "safely managing" the co-occurring condition while it treats the diagnosis for which the patient is seeking treatment. (**Trial Tr. 1387:24–1388:25 (Allchin).**) |
| 8th black bullet and sub-bullets (page 8-0007) | There is a reasonable expectation that service(s) will improve the member's presenting problems within a reasonable period of time.<br>  ○ Improvement of the member's condition is indicated by the reduction or control of the signs and symptoms that necessitated treatment in a level of care.<br>  ○ Improvement in | • Argument<br>  ○ Acuity<br>  ○ Maintenance of Function<br>  ○ Custodial/ Improvement<br>• Testimony<br>  ○ Fishman: Tr. 267:10-20, 267:21-23<br>  ○ Plakun: Tr. 552:19-22, 553:4-8, 555:15-22, 555:24-556:2<br>  ○ Martorana: Tr. 1129:11-1130:11, 1130:12-14 | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 6" (pg. ___).<br>• *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 6th black bullet and sub-bullets (page 4-0009 to -0010)" (pg. __.)<br>• *See* V.A.1 "2015 Common Criteria, Admission Criteria, 1.8" (pg. __.)<br>• A member's "presenting problems" are "the issues, complaints, and the condition that [the member] present[s] to treatment." (**Trial Tr. 982:5–6 (Martorana)**.)<br>• This criterion defines improvement as reduction or control of symptoms as well as prevention of deterioration.<br>  ○ (**Trial Tr. 982:9–18 (Martorana).**) ("Well, this defines two ways that you can assess improvement. One is that by objective means that—well, first of all, they have to have a treatment plan that you will expect to improve their condition. Then when that's in place, then you would measure the improvement—this is basic treatment planning—in an objective manner. So it can be either reduction or control. And then, also, you can consider improvement in someone by looking at and considering whether if you took this level of care away would they then deteriorate?") |

**VIII.A.1 2017 Level of Care Guidelines (Ex. 8)**

**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Admission Criteria (Ex. 8-0006 to -0007; Ex. 8-0011, Ex. 8-0024)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | this context is measured by weighing the effectiveness of treatment against evidence that the member's signs and symptoms will deteriorate if treatment in the current level of care ends. Improvement must also be understood within the broader framework of the member's recovery, resiliency, and wellbeing. | | • Maintenance of a member's condition, i.e., the prevention of deterioration, is included in this definition of improvement.<br>    ○ (**Trial Tr. 982:21–25 (Martorana)**.)<br>• "Presenting problem" also includes chronic conditions. (**Trial Tr. 983:1–8 (Martorana)**.)<br>• "Reasonable period of time" allows a reviewer to apply clinical judgment by taking into consideration both the member's condition as well as the nature of the presenting problem. (**Trial Tr. 983:11–984:1 (Martorana)**.)<br>• (**Trial Tr. 1189:23–1190:2 (Simpatico)** ("Because the UBH guidelines simply defin[e] 'active treatment' in the context of amelioration of symptoms or prevention of deterioration, [UBH guidelines are] silent on duration of illness; and this is simply making an explicit example of chronic mental illness. . . .").) |

**VIII.A.2 2017 Level of Care Guidelines (Ex. 8)**

**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Continued Service Criteria (Ex. 8-0007, Ex. 8-0011, Ex. 8-0024)**

**2.** Continued Service Criteria (Ex. 8-0007, Ex. 8-0011, Ex. 8-0024)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet and sub-bullets (pages 8-0007, -0011, and -0024) | The admission criteria continue to be met and active treatment is being provided. For treatment to be considered "active", service(s) must be as follows:<br>• Supervised and evaluated by the admitting provider;<br>• Provided under an individualized treatment plan that is focused on addressing the factors leading to admission, and makes use of clinical best practices;<br>• Reasonably expected to improve the member's presenting problems within a reasonable period of time. | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvemen t<br>• <u>Testimony</u><br>o <u>Plakun</u>: Tr. 552:19-22, 553:15-23 | • *See* IV.A.2 "2014 Common Criteria, Continued Service Criteria, 1st black bullet and sub-bullets (page 4-0007 to -0008)" (pg. ___).<br>• This language is based in part on language from the Chapter 2 of the Medicare Benefit Policy Manual.<br>o (**Trial Tr. 988:16–989:7 (Martorana)**.)<br>o (**Trial Ex. 655-0007**) (**Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services**) ("For services in an IPF to be designated as active treatment, they must be … *reasonably expected to improve the patient's condition* …")<br>• The phrase "focused on addressing the factors leading to admission" emphasize that treatment planning should be both individualized and focused on the factors that caused a member to be placed in a given level of care. (**Trial Tr. 990:20–991:4 (Martorana)**.)<br>o It also ensures a member can "be treated safely, effectively, and efficiently in a less restrictive setting." (**Trial Tr. 991:17–21 (Martorana)**.)<br>o (**Trial Tr. 1194:21–1195:12 (Simpatico)**.)<br>• This criterion allows for treatment of chronic conditions because it calls for an individualized treatment plan that will address all factors noted while collecting the information listed in the Best Practices section of the guideline. (**Trial Tr. 991:5–991:12 (Martorana)**.)<br>• The use of the phrase "reasonable period of time" is "an additional piece to being effective," as there is an expectation for the member's problems to improve in a reasonable period of time because "the treatment plan is matched properly and the diagnosis is made appropriately." (**Trial Tr. 993:14–17 (Martorana)**.)<br>o (**Trial Tr. 1195:13–24 (Simpatico)**.) |

**VIII.A.2 2017 Level of Care Guidelines (Ex. 8)**

**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Continued Service Criteria (Ex. 8-0007, Ex. 8-0011, Ex. 8-0024)**

**VIII.A.3 2017 Level of Care Guidelines (Ex. 8)**
**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Discharge Criteria (Ex. 8-0007, Ex. 8-0011 to -0012, Ex. 8-0024 to -0025)**

**3.** Discharge Criteria (Ex. 8-0007, Ex. 8-0011 to -0012, Ex. 8-0024 to -0025)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet and sub-bullets (pages 8-0007, -0011 to -0012, and -0024 to -025) | The continued stay criteria are no longer met. Examples include:<br>○ The factors which led to admission have been addressed to the extent that the member can be safely transitioned to a less intensive level of care, or no longer requires care.<br>…<br>○ Treatment is primarily for the purpose of providing social, custodial, recreational, or respite care.<br>…<br>○ The member is unwilling or unable to participate in treatment, and involuntary treatment or guardianship is not being pursued. | • <u>Argument</u><br>○ Acuity<br>○ Drive Toward Lower Levels of Care<br>○ Maintenance of Function<br>○ Custodial/ Improvement<br>○ Motivation<br>• <u>Testimony</u><br>○ <u>Fishman</u>: Tr. 268:06-13, 268:14-20<br>○ <u>Plakun</u>: Tr. 552:19-22, 553:25-554:5<br>○ <u>Martorana</u>: Tr. 994:10-998:19 | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. __). (discussing concept of least restrictive effective level of care).<br>• This criterion provides that a member should be transitioned to a lower level of care once the goals of treatment are accomplished. This decision also involves assessing whether the member can be treated safely, efficiently, and effectively at the lower level of care, per that level of care's admission requirements.<br>○ (**Trial Tr. 994:10–995:2 (Martorana)** (discharge involves a feedback loop which assesses whether a patient can be safely and effectively treated in the transitional level of care per that level's admission criteria).)<br>○ (**Trial Tr. 1197:18–1198:20 (Simpatico)** ("As [treatment] happens, we are constantly reassessing for the opportunity to be able to provide safe and effective treatment in a less restrictive manner . . . .").)<br>• This criterion ensures that treatment will address a member's condition or suffering by ensuring that the member is willing and able to participate in treatment.<br>○ (**Trial Tr. 995:21– 996:21 (Martorana)** (noting that the treatment plan must be adjusted to ensure the member is participating in treatment).)<br>○ (**Trial Tr. 1198:16–1199:16 (Simpatico)**.) |

**VIII.A.3 2017 Level of Care Guidelines (Ex. 8)**

**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Discharge Criteria (Ex. 8-0007, Ex. 8-0011 to -0012, Ex. 8-0024 to -0025)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | • **[Regarding the 2016 LOCGs]**<br>o The admission criteria for the level of care to which the member is being transitioned is part of the discharge criteria, thus ensuring that the member will be discharged to a lower level unless the member treatment will be both safe and effective. **(Trial Tr. 1424:11–1426:6 (Allchin).)**<br>• **[Regarding the 2015 LOCGs]**<br>o This criterion comports with generally accepted standards of care because "it's stating in a similar manner as previous versions that the continued stay criteria are no longer met and that the reasons for presentation, the so-called 'why now' factors, which led to admission, have been addressed to the extent that the member can be safely transitioned to a less intensive level of care, which is the whole point of treatment. And then, finally, it again addresses a situation where excluding an involuntary population, which is sort of a separate consideration, if a member is—that has capacity is unwilling or unable to participate in their own treatment after inadequate attempt to motivate them and engage them, then by definition they're not capable of participating in active treatment and there wouldn't be a medical necessity to continue treatment." (**Trial Tr. 1332:25–1333:13 (Simpatico**).) |

**VIII.A.3 2017 Level of Care Guidelines (Ex. 8)**

**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Discharge Criteria (Ex. 8-0007, Ex. 8-0011 to -0012, Ex. 8-0024 to -0025)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | • **[Regarding Generally Accepted Standards of Care Generally]**<br>○ (**Trial Ex. 656-0033 (Medicare Benefit Policy Manual, Chapter 6, § 70.3 "Partial Hospitalization Services")** (it is "reasonably necessary" to deny coverage where the member "cannot, or refuse[s], to participate (due to their behavioral or cognitive status) with active treatment of their mental disorder (except for a brief admission necessary for diagnostic purposes), or . . . cannot tolerate the intensity of PHP.").) |

**VIII.B. 2017 Level of Care Guidelines (Ex. 8)**
**Outpatient: Mental Health Conditions (Ex. 8-0013 to -0014)**

**B.** Outpatient: Mental Health Conditions (Ex. 8-0013 to -0014)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | … The course of treatment in Outpatient is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the factors that precipitated admission no longer require treatment. Individual outpatient psychotherapy is generally provided in sessions lasting up to 45 minutes. | • Argument<br>  o Acuity<br>  o Maintenance of Function<br>• Testimony<br>  o Plakun: Tr. 591:24, 592:2-14, 657:20-658:1 | • The criterion's focus on "the factors that precipitated admission" ensures that the symptoms that have the greatest influence on selecting a level of care are being treated in a setting that offers safe and effective treatment and is also the least restrictive.<br>  o (**Trial Tr. 1204:16-1205:18 (Simpatico)**.)<br>• The phrase "the factors that precipitated admission" includes consideration of both chronic conditions and acute symptoms.<br>  o (**Trial Tr. 1205:19–1206:1 (Simpatico)**.)<br>  o (**Trial Tr. 1000:20–1001:1 (Martorana)** ("Well, again, these are all the considerations that have led this member to this point in time seeking treatment. So the symptoms that caused them distress, if there were precipitants for that; what their prior history has been; their co-morbidities; what's worked and what hasn't. All these things come into play as the factors necessitating or precipitating admission.").) |

**C.** Intensive Outpatient Program: Mental Health Conditions (Ex. 8-0014 to -0015)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Pream ble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | • Argument<br>  o Acuity<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Plakun: Tr. 591:24, 592:2-14, 657:20-658:1 | • The preamble contains the same language as the preamble for the 2017 Outpatient: Mental Health Conditions LOCG.<br>  o (**Trial Tr. 1002:16–1003:8 (Martorana)**.)<br>  o (**Trial Tr. 1206:25–1207:13 (Simpatico)**.)<br>  o *See* VIII.B "2017 Outpatient: Mental Health Conditions, Preamble" (pg. ___).<br>• The preamble makes specific reference to the treatment of co-occurring conditions.<br>  o (**Trial Tr. 1003:9–23 (Martorana)**.)<br>  o (**Trial Tr. 1207:17–1208:5 (Simpatico)**.) |

**D.** Residential Treatment Center: Mental Health Conditions (Ex. 8-0018 to -0019)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in a Residential Treatment Center is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care…. | • <u>Argument</u><br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  ○ <u>Plakun</u>: Tr. 592:20-593:4 | • This preamble is substantially similar to the preamble for the 2017 Outpatient: Mental Health ConditionsLOCG.<br>  ○ (**Trial Tr. 1004:14–1005:2** (**Martorana**).)<br>  ○ (**Trial Tr. 1208:6–21** (**Simpatico**).)<br>  ○ *See* VIII.B "2017 Outpatient: Mental Health Conditions, Preamble" (pg. ___). |

**1.** Admission Criteria (Ex. 8-0018)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3rd black bullet and sub-bullets (page 8-0018) | The factors leading to admission cannot be safely, efficiently, or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors. Examples include the following:<br>o Acute impairment of behavior or cognition that interferes with activities of daily living to the extent that the welfare of the member or others is endangered.<br>o Psychosocial and environmental problems that are likely to threaten the member's safety or undermine engagement in a less | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Plakun</u>: Tr. 592:20-21, 593:5-11 | • This criterion requires a care advocate to assess immediate changes causing a member to seek treatment, the member's living situation, and factors such as a member's employment, education level, and relationships when deciding whether this level of care is appropriate.<br>o (**Trial Tr. 1005:7–1006:14** (**Martorana**).)<br>o (**Trial Tr. 1211:9–1212:14** (**Simpatico**).)<br>• The phrase "acute changes" is included to ensure the reason the member is seeking the intense treatment provided under this level of care is fully understood by the care advocate and the providers.<br>o (**Trial Tr. 1006:15–1007:2** (**Martorana**).)<br>• "The notion 'acute changes' refers to—again, regarding why does the person present now, is referring to a departure from a baseline that would have brought the person to the attention of healthcare providers or, in this case, behavioral health care providers." (**Trial Tr. 1209:18-23** (**Simpatico**).)<br>• This criterion does not exclude consideration of chronic conditions.<br>o (**Trial Tr. 1209:24–1210:18** (**Simpatico**).)<br>• This criterion contains language similar to Section 70.3 of Chapter 6 of the Medicare Benefit Policy Manual. Section 70.3 discusses requirements for partial hospitalization, a less intense level of care than residential treatment.<br>o (**Trial Tr. 1008:19–1014:7** (**Martorana**).)<br>o (**Trial Ex. 656-0029, -30, -31, -33** (**Medicare Benefit Policy Manual Chapter 6–Hospital** |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | intensive level of care without the intensity of services offered in this level of care. | | **Services Covered Under Part B**).)<br>• This criterion also contains language substantially similar to that contained in the Local Coverage Determinations for partial hospitalization services and psychiatric inpatient hospitalization.<br>○ (**Trial Tr. 1014:19–1019:2 (Martorana)**.)<br>○ (**Trial Ex. 1502-0009 (Local Coverage Determination (LCD): Psychiatric Inpatient Hospitalization)**.)<br>○ (**Trial Ex. 1507-0003, -17 (Local Coverage Determination (LCD): Psychiatric Partial Hospitalization)**.) |

**VIII.D.2 2017 Level of Care Guidelines (Ex. 8)**

**Residential Treatment Center: Mental Health Conditions (Ex. 8-0018 to -0019) | Continued Service Criteria (Ex. 8-0018 to -0019)**

**2.** Continued Service Criteria (Ex. 8-0018 to -0019)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2nd black bullet and sub-bullets (pages 8-0018 to -0019) | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . .<br>o Health-related services provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence;<br>o Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Plakun</u>: Tr. 592:20-21, 593:5-11<br>o <u>Martorana</u>: Tr. 1006:15-1007:2 | • Martorana's testimony cited by plaintiffs does not concern this criterion.<br>• Language in this criterion comes from the member's coverage documents.<br>o (**Trial Tr. 1019:6–1020:2 (Martorana).**)<br>• ((**Trial Ex. 655-0007 (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services)** ("For services in an IPF to be designated as active treatment, they must be: Provided under an individualized treatment or diagnostic plan; Reasonably expected to improve the patient's condition or for the purpose of diagnosis; and Supervised and evaluated by a physician.").)<br>• (**Trial Ex. 655-0008 (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services)** ("Physician participation in the services is an essential ingredient of active treatment. . . . [T]he physician must serve as a source of information and guidance for all members of the therapeutic team who work directly with the patient in various roles.").) |

**VIII.E. 2017 Level of Care Guidelines (Ex. 8)**
**Outpatient: Substance-Related Disorders (Ex. 8-0026 to -0027)**

**E.** Outpatient: Substance-Related Disorders (Ex. 8-0026 to -0027)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | Assessment and diagnosis and active behavioral health treatment that are provided in an ambulatory setting. The course of treatment in Outpatient is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the factors that precipitated admission no longer require treatment. Individual outpatient psychotherapy is generally provided in sessions lasting up to 45 minutes.<br><br>Extended outpatient sessions are individual psychotherapy sessions with or without evaluation and management services lasting longer than 95 minutes. Extended outpatient sessions require pre-service notification before services are received, except in extenuating circumstances, such as a crisis when notification should occur | • <u>Argument</u><br>  ○ Acuity<br>  ○ Maintenance of Function<br>  ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 269:8-270:7 | • Dr. Fishman's cited testimony does not address the second paragraph.<br>• This is the same language that appears in the 2017 Outpatient: Mental Health Conditions LOCGs.<br>  ○ (**Trial Tr. 1020:12-1021:10** (**Martorana**).)<br>  ○ (**Trial Tr. 1213:12–1214:17** (**Simpatico**).)<br>  ○ *See* VIII.B "2017 Outpatient: Mental Health Conditions, Preamble" (pg. ___). |

**VIII.E. 2017 Level of Care Guidelines (Ex. 8)**
**Outpatient: Substance-Related Disorders (Ex. 8-0026 to -0027)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | as soon as possible. In the event that the Mental Health/Substance Use Disorder Designee is not notified of extended outpatient sessions, benefits may be reduced. Check the member's specific plan document for the applicable penalty and allowance of a grace period. | | |

**F.** Intensive-Outpatient Program: Substance-Related Disorders (Ex. 8-0032 to -0033)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care…. | • Argument<br>  o Acuity<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Fishman: Tr. 271:18-272:1 | • The preamble does not limit Intensive Outpatient treatment to acute changes.<br>  o (**Trial Tr. 1022:4-20** (**Martorana**).)<br>• The preamble gives consideration to chronic conditions and comorbid conditions.<br>  o (**Trial Tr. 1022:4-20** (**Martorana**).)<br>• The preamble limits treatment time for children and adolescents to ensure treatment does not interfere with their education and to ensure that children are actively engaged in treatment.<br>  o (**Trial Tr. 1023:8-19** (**Martorana**).)<br>• This is the same language that appears in the 2017 Outpatient: Mental Health Conditions LOCG.<br>  o (**Trial Tr. 1216:18–1217:14** (**Simpatico**).)<br>  o *See* VIII.B "2017 Outpatient: Mental Health Conditions, Preamble" (pg. ___). |

**G.** Residential Rehabilitation: Substance-Related Disorders (Ex. 8-0035 to -0036)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in Residential Rehabilitation is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that rehabilitation can be safely, efficiently and effectively continued in a less intensive level of care. | • Argument<br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Fishman: Tr. 272:2-8 | • The same language appears in the 2017 Outpatient: Mental Health Conditions LOCG.<br>  ○ (**Trial Tr. 1024:24–1025:12 (Martorana)**.)<br>  ○ (**Trial Tr. 1217:15–1218:10 (Simpatico)**.)<br>  ○ *See* VIII.B "2017 Outpatient: Mental Health Conditions, Preamble" (pg. ___).<br>• **[Regarding the phrase "Why Now" in the 2014 LOCGs]** LOCUS similarly emphasizes the "here and now" in assessing a patient's treatment level.<br>  ○ (**Trial Ex. 653-0007 (LOCUS for Psychiatric and Addiction Services)** ("Since LOCUS is designed as a dynamic instrument, scores should be expected to change over time. Scores are generally assigned on a here and now basis representing the clinical picture at the time of evaluation.").) |

**VIII.G.1 2017 Level of Care Guidelines (Ex. 8)**

**Residential Rehabilitation: Substance-Related Disorders (Ex. 8-0035 to -0036) | Admission Criteria (Ex. 8-0035 to -0036)**

**1.** Admission Criteria (Ex. 8-0035 to -0036)

| ¶ | Criterion | Plaintiff's Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3rd black bullet and sub-bullets (page 8-0035) | The factors leading to admission and/or the member's history of response to treatment suggest that there is imminent or current risk of relapse which cannot be safely, efficiently, and effectively managed in a less intensive level of care.<br>o A co-occurring mental health condition is stabilizing but the remaining signs and symptoms are likely to undermine treatment in a less intensive setting.<br>o The member is in immediate or imminent danger of relapse, and the history of treatment suggests that the structure and support provided in this level of care is | • Argument<br>o Acuity<br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 272:9-19 | • This criterion accounts for co-morbidities by requiring reviewers to monitor the progress of co-occurring mental health conditions.<br>o (**Trial Tr. 1025:13–1026:11 (Martorana)**.)<br>• An "imminent or current risk of relapse" is required to ensure that the recidivism is triggered by the transfer to a lower level of care.<br>o (**Trial Tr. 1218:21–1219:5 (Simpatico)** ("Means that it's in the judgment of the clinicians working with the person that it's felt that if the person were to be moved to a less restrictive level of care, the fact that they no longer were in the current level of care, in this case residential rehab, would have a causal effect on their recisdivating [sic]. And the time element refers to there being a short enough time frame to be able to conclude that the active ingredient or the reason why a person recidivates is a fact more than likely attributable to the level of service.")<br>o (**Trial Tr. 1027:4–6** (**Martorana)** ("Well, you can't keep people indefinitely in a 24-hour monitored situation just because someday down the road the might relapse. That wouldn't be good clinical treatment.").)<br>• This criterion is consistent with the ASAM provision stating that "[i]ndividuals are transferred to less intensive levels of care at the point that they have established sufficient skills to safely continue treatment without the immediate risk of relapse, continued use or other continued problems, and are no longer in imminent danger of harm to themselves or others." (**Trial Ex. 662-0136 (ASAM Criteria)**<br>o (**Trial Tr. 1221:7–1222:10 (Simpatico)**.)<br>• This criterion also provides for the treatment of co-occurring conditions. (**Trial Tr. 1219:6–1220:7 (Simpatico)**.)<br>• Dr. Fishman applauded the inclusion of the phrase "or current" in this |

**VIII.G.1 2017 Level of Care Guidelines (Ex. 8)**

**Residential Rehabilitation: Substance-Related Disorders (Ex. 8-0035 to -0036) | Admission Criteria (Ex. 8-0035 to -0036)**

| ¶ | Criterion | Plaintiff's Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | needed to control the recurrence. | | criterion. (**Trial Tr. 272:9–11 (Fishman)**.) |
| 4th black bullet (page 8-0036) | The factors leading to admission cannot be safely, efficiently, or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors. | • <u>Argument</u><br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 272:20-273:2 | • The same language appears in the 2017 Residential Rehabilitation: Mental Health Conditions LOCG.<br>  ○ (**Trial Tr. 1222:18–1223:6 (Simpatico)**.)<br>  ○ (**Trial Tr. 1027:10–22** (**Martorana**).)<br>  ○ *See* VIII.D.1 "2017 Residential Treatment Center: Mental Health Conditions, Admission Criteria, 3rd black bullet and sub-bullets (page 8-0018)" (pg. ___). |

**VIII.G.2 2017 Level of Care Guidelines (Ex. 8)**
**Residential Rehabilitation: Substance-Related Disorders (Ex. 8-0035 to -0036) | Continued Service Criteria (Ex. 8-0036)**

**2.** Continued Service Criteria (Ex. 8-0036)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2nd black bullet and sub-bullets (page 8-0036) | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . .<br>• Health-related services provided for the primary purpose of meeting the personal needs of the member or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence.<br>• Services that do not require continued administration by trained medical | • Argument<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• Testimony<br>o Fishman: Tr. 273:3-9 | • The same language appears in the 2017 Residential Rehabilitation: Mental Health Conditions LOCG.<br>o (**Trial Tr. 1027:23–10** (**Martorana**).)<br>o (**Trial Tr. 1223:7–16** (**Simpatico**).)<br>o *See* VIII.D.1 "2017 Residential Treatment Center: Mental Health Conditions, Admission Criteria, 2nd black bullet and sub-bullets (page 8-0018 to -0019)" (pg. ___). |

**VIII.G.2 2017 Level of Care Guidelines (Ex. 8)**

**Residential Rehabilitation: Substance-Related Disorders (Ex. 8-0035 to -0036) | Continued Service Criteria (Ex. 8-0036)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | personnel in order to be delivered safely and effectively. | | |

**IX.** August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet | United Behavioral Health maintains that optimal clinical outcomes result when evidence-based treatment is provided in the least restrictive level of available care that is structured and intensive enough to safely and adequately treat a member's presenting problem. | • Argument<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Fishman: Tr. 213:06-214:04<br>  o Plakun: Tr. 511:25-512:6 | • Dr. Fishman's and Dr. Plakun's testimony consists of generalized comments that do not directly address this criterion.<br>• Every class member's plan excludes "custodial care" and the Custodial Care CDGs are intended to interpret plan exclusions. (**Trial Ex. 1654**; **Trial Ex. 1654; Trial Tr. 455:24–456:19 (Niewenhous)**; **Trial Tr. 895:20–897:6 (Dehlin).**)<br>  o Plan definitions of "custodial care" prevail over the Custodial Care CDGs in the event of a disagreement. (**Trial Exs. 10-0002; 47-0002; 84-0002; 108-0002; 148-0002; 195-0002; 221-0002.**)<br>  o Active treatment is the inverse of custodial care. **(Trial Tr. 1079:24 – 1080:9 (Martorana).**)<br>• *See* discussion of least restrictive level of care that is safe and effective, at I.A.1 "2011 Common Criteria, Admission Criteria, ¶5" (pg. ___).<br>  o This criterion requires a higher level of care if a lower level would not be *safe* or *effective*. (**Trial Tr. 1031:21–1032:3 (Martorana**).)<br>  o The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources. (**Trial Tr. 968:25-971:23 (Martorana)**; **Trial Ex. 634-0022** (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders); **Trial Ex. 639-0016** (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder).) |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | o<br>• **[Regarding the 2017 Level of Care Guidelines]**<br>o The term "presenting problems" reflects "the totality of . . . what the member is presenting," including "co-morbidity or chronic" conditions. **(Trial Tr. 983:1-8 (Martorana).)**<br>• **[Regarding the 2015 Level of Care Guidelines]**<br>o Dr. Plakun described the concept of "adequately treat[ing]" a patient as an appropriate standard of care. **(Trial Tr. 523:8 – 524:1 (Plakun).)** |
| 2nd black bullet | Patient has been determined to require intensive, 24 hour, specialized psychiatric intervention that cannot be provided in a less restrictive setting. | • <u>Argument</u><br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 213:06-214:04<br>o <u>Plakun</u>: Tr. 511:25-512:6 | • Dr. Fishman's and Dr. Plakun's testimony consists of generalized comments that do not directly address this criterion.<br>• *See* discussion of least restrictive level of care that is safe and effective, at I.A.1 "2011 Common Criteria, Admission Criteria, ¶5" (pg. ___).<br>o This criterion requires a higher level of care if a lower level would not be *safe* or *effective*. (**Trial Tr. 1031:21–1032:3 (Martorana)**.)<br>o The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources. (**Trial Tr. 968:25-971:23** (**Martorana**); **Trial Ex. 634-0022** (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders); **Trial Ex. 639-0016** (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder).) |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3rd black bullet | United Behavioral Health maintains that treatment of a behavioral health condition in an acute inpatient unit or RTC is not for the purpose of providing custodial care, but is for the active treatment of a behavioral health condition. | • Argument<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• Testimony<br>o Fishman: Tr. 274:5-275:25<br>o Plakun: Tr. 557:5-558:23 | • Dr. Fishman's and Dr. Plakun's testimony consists of generalized comments that do not directly address this criterion.<br>• Every plan in evidence specifically excludes coverage for "custodial care" and defines that term. **(Trial Ex. 1654** (summarizing custodial care definitions and exclusions in class members' plans); **Trial Tr. 895:20 – 897:6 (Dehlin)** (explaining Exhibit 1654)**.)**<br>• The Custodial Care CDG cautions that the terms of an individual member's plan "may differ greatly from the standard benefit plans upon which this guideline is based," and "[i]n the event that . . . there is a conflict between this document and the [member's plan], the *enrollee's specific benefit* document supersedes these guidelines." **(Trial Exs. 10-0002; 47-0002; 84-0002; 108-0002; 148-0002; 195-0002; 221-0002.)**<br>• **[Regarding the 2017 Custodial Care Coverage Determination Guideline]**<br>o Custodial care is the inverse of active treatment. If treatment is not active, it is custodial and vice-versa. **(Trial Tr. 1079:24 – 1080:9 (Martorana).)**<br>• **[Regarding the 2015 Custodial Care Coverage Determination Guideline]**<br>o The definition of "custodial care" reflected in UBH's Custodial Care CDGs either tracks the plan language verbatim or is intended to interpret the plan language of the majority of the plans in evidence. **(Trial Ex. 1654; Trial Tr. 455:24–456:19 (Niewenhous)**<br>• **[Regarding the 2017 Custodial Care Coverage Determination Guideline]** |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | ○ Dr. Plakun testified that a similar criterion is "totally consistent with generally accepted standards of care." (**Trial Tr. 560:8–15 (Plakun)**.)<br>• The first three sub-bullets of the definition of "active treatment" come from CMS guidelines. (**Trial Tr. 1087:21–1088:11 (Martorana)**; (**Trial Ex. 655-0007 (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services)**<br>○ The fourth sub-bullet is consistent with CMS guidelines for outpatient, partial hospitalization, and inpatient services. (**Trial Ex. 656-0025 to -26** (Medicare Benefit Policy Manual, Chapter 6 "Outpatient Hospital Psychiatric Services")**; Trial Ex. 655-0004** (Medicare Benefit Policy Manual, Chapter 6 "Inpatient Psychiatric Hospital Services")**; Trial Ex. 1507-0017** (CMS Local Coverage Determination for Psychiatric Partial Hospitalization Program").)<br>○ The fifth sub-bullet is consistent with CMS guidelines for partial hospitalization and inpatient services, which is an appropriate reference point for higher levels of care like residential and inpatient treatment. (**Trial Ex. 656-0029–33**) (CMS Medicare Benefit Policy Manual, Chapter 6 "Partial Hospitalization"); **Trial Tr. 488:3–8 (Plakun); Trial Tr. 936:18–937:9, 1009:9–12 (Martorana)**.) |
| 4th black bullet | Active inpatient or residential treatment is a clinical process involving the 24-hour care of patients that includes assessment, diagnosis, | • <u>Argument</u><br>○ Maintenance of Function<br>○ Custodial/ Improvement | • Dr. Fishman's and Dr. Plakun's testimony consists of generalized comments that do not directly address this criterion.<br>• Every class member's plan excludes "custodial care" and the Custodial Care CDGs are intended to interpret plan |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | intervention, evaluation of care, treatment and planning for discharge and aftercare, under the direction of a psychiatrist. | • Testimony<br>  ○ Fishman: Tr. 274:5-275:25<br>  ○ Plakun: Tr. 509:25-510:8. 557:5-558:23 | exclusions. (**Trial Ex. 1654**; **Trial Ex. 1654; Trial Tr. 455:24–456:19 (Niewenhous)**; **Trial Tr. 895:20–897:6 (Dehlin).**)<br>  ○ Plan definitions of "custodial care" prevail over the Custodial Care CDGs in the event of a disagreement. (**Trial Exs. 10-0002; 47-0002; 84-0002; 108-0002; 148-0002; 195-0002; 221-0002.**)<br>  ○ Active treatment is the inverse of custodial care. **(Trial Tr. 1079:24 – 1080:9 (Martorana).**)<br>• The first three sub-bullets of the definition of "active treatment" come from CMS guidelines. (**Trial Tr. 1087:21–1088:11 (Martorana)**; (**Trial Ex. 655-0007 (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services)**<br>  ○ The fourth sub-bullet is consistent with CMS guidelines for outpatient, partial hospitalization, and inpatient services. (**Trial Ex. 656-0025 to -26** (Medicare Benefit Policy Manual, Chapter 6 "Outpatient Hospital Psychiatric Services")**; Trial Ex. 655-0004** (Medicare Benefit Policy Manual, Chapter 6 "Inpatient Psychiatric Hospital Services")**; Trial Ex. 1507-0017** (CMS Local Coverage Determination for Psychiatric Partial Hospitalization Program").)<br>  ○ The fifth sub-bullet is consistent with CMS guidelines for partial hospitalization and inpatient services, which is an appropriate reference point for higher levels of care like residential and inpatient treatment. (**Trial Ex. 656-0029–33)** (CMS Medicare Benefit Policy Manual, Chapter 6 "Partial Hospitalization); **Trial Tr. 488:3–8 (Plakun); Trial Tr. 936:18–937:9, 1009:9–12** |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | **(Martorana**).)<br>• This criterion is similar to Medicare guidelines, which provide: "For services in an IPF to be designated as active treatment, they must be . . . [s]upervised and evaluated by a physician."<br>  ○ (**Trial Ex. 655-0007 (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services**).)<br>• The members' plans often define residential treatment.<br>  ○ (***See, e.g.*****, Trial Tr. 873:16–875:7 (Dehlin)** (discussing **Trial Ex. 2014-0168**).)<br>• **[Regarding the 2017 Level of Care Guidelines]**<br>  ○ "[R]esidential treatment is a 24-hour level of care for someone who requires a higher, more intensive level of care." **(Trial Tr. 1006:19 – 24 (Martorana).)**<br>• **[Regarding the 2011 Level of Care Guidelines]**<br>  ○ This language is consistent with a definition of active treatment that "either ameliorates signs and symptoms or prevents deterioration," and does not "address only crisis situations." **(Trial Tr. 1261:8 – 1262:15 (Simpatico).)**<br>  ○ "It is prudent to have a physician see a patient in a setting which requires 24-hour confinement. It really is the community standard. It is the expectation that a patient will be seen by a physician as promptly as possible." (**Trial Tr. 1582:8–10 (Alam)**.) |
| 5th black bullet and sub-bullets | "Active Treatment" in this context is indicated by services that are all of the following:<br>  ○ Supervised and evaluated | • <u>Argument</u><br>  ○ Maintenance of Function<br>  ○ Custodial/ | • Dr. Fishman's testimony consists of generalized comments that do not directly address this criterion.<br>• Dr. Plakun's testimony consists of generalized comments as well as comments on the 2015 Custodial Care and Inpatient & |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | by a physician<br>○ Provided under an individualized treatment or diagnostic plan;<br>○ Reasonably expected to improve the patient's condition or for the purpose of diagnosis and<br>○ Unable to be provided in a less restrictive setting<br>○ Focused on interventions that are based on generally accepted standard medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the patient's condition to the extent that they can be safely treated in a lower level of care. | Improvement<br>○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>○ <u>Fishman</u>: Tr. 274:5-275:25<br>○ <u>Plakun</u>: Tr. 509:25-510:8, 557:5-558:23, 562:11-564:4 | Residential Services Coverage Determination Guideline. They do not directly address this criterion.<br>• The first three sub-bullets of this criterion are drawn from the CMS definition of active treatment.<br>○ (**Trial Tr. 1087:21–1088:11 (Martorana)**.)<br>○ (**Trial Ex. 655-0007 (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services)** ("For services in an IPF to be designated as active treatment, they must be: Provided under an individualized treatment or diagnostic plan; Reasonably expected to improve the patient's condition or for the purpose of diagnosis; and Supervised and evaluated by a physician.").)<br>• The fourth sub-bullet that treatment must be "[u]nable to be provided in a less restrictive setting" tracks language in numerous CMS guidelines, including the guidelines for "Outpatient Hospital Psychiatric Services" (Medicare Benefit Policy Manual § 70.1), which provides that "[s]ervices are noncovered" if "stability can be maintained without further treatment or with less intensive treatment." **(Trial Ex. 656-0025 to -26)**<br>○ **(Trial Ex. 665-0004)** (Medicare inpatient guidelines providing 24-hour care should be limited to "only those patients whose admission to the unit is required for active treatment, of an intensity that can be provided appropriately only in an inpatient hospital setting.").)<br>○ **(Trial Ex. 1507-0017**) (CMS partial hospitalization guidelines, providing: "In general, patients should be treated in the least intensive and restrictive setting |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | which meets the needs of their illness.")<br>• The fifth sub-bullet is consistent with CMS guidance that the purpose of partial hospitalization is to treat the patient's "serious *presenting* psychiatric symptoms" and is characterized by patients with "an *acute* onset or decompensation of a covered . . . mental health disorder. . . ." **(Trial Ex. 656-0029–33)** (CMS Medicare Benefit Policy Manual for partial hospitalization).)<br>o Because Medicare does not cover residential treatment, CMS guidelines for partial hospitalization and inpatient treatment are the closest analogues to residential treatment. **(Trial Tr. 936:18–937:9 (Martorana).)**<br>o Partial hospitalization is "lower than residential or inpatient" on the "continuum of care." (**Trial Tr. 488:3–8 (Plakun); Trial Tr. 1009:9 – 12** (partial hospitalization is a less intensive level of care than residential treatment).)<br>• This criterion also assesses whether treatment requires a 24-hour setting.<br>o (**Trial Tr. 1088:22–1089:1** (**Martorana**) ("Well, part of the decision-making on active treatment is that there may be treatment interventions going on but if they don't require the use of the—of a restrictive setting, then that would make them not active treatment for these 24-hour levels of care.").)<br>• **[Regarding the 2017 Level of Care Guidelines]**<br>o The term "presenting problems" reflects "the totality of…what the member is presenting," including "co-morbidity or chronic" conditions. **(Trial Tr. 983:1-8** |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | **(Martorana).)**<br>• *See* discussion of least restrictive level of care that is safe and effective, at I.A.1 "2011 Common Criteria, Admission Criteria, ¶5" (pg. ___).<br>  o "Current condition" encompasses all symptoms the member brings to treatment, not only crisis conditions. (**Trial Tr. 1031:3–8** (**Martorana**).)<br>  o This criterion requires a higher level of care if a lower level would not be *safe* or *effective*. (**Trial Tr. 1031:21–1032:3** (**Martorana**).)<br>  o The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources. (**Trial Tr. 968:25-971:23** (**Martorana**); **Trial Ex. 634-0022** (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders); **Trial Ex. 639-0016** (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder).)<br>• *See* discussion of reasonable expectation of improvement in I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 6" (pg. __).<br>  o The phrase "[t]here is a reasonable expectation that services will improve …" comes from Medicare sources. **(Trial Tr. 319:5–320:12 (Niewenhous); Trial Ex. 655-0007)** (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services).)<br>  o This criterion allows for maintenance treatment by covering treatment if withdrawal would result in the member's condition deteriorating. (**Trial Tr. 1033:21–1034:10 (Martorana)** ("[I]t has language about |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | determining whether the member might deteriorate if the current treatment was withdrawn. So that's one definition of 'improvement' that's mentioned here. . . . That's another way of describing maintenance treatment.").)<br>o This criterion does not require continuous improvement, and it does not require the withdrawal of care once the presenting symptoms are improved. (**Trial Tr. 1034:22--1035:2 (Martorana)**; **Trial Tr. 1228:10–12 (Simpatico)**.)<br>o Improvement requires an individualistic weighing of the pros and cons of moving a member to a lower level of care before doing so. This weighing is based on clinical judgment. **(Trial Tr. 1415:5–1417:12 (Allchin)**.) |
| 6th black bullet | Improvement of the patient's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment in an acute or Residential Treatment Center. | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 274:5-275:25<br>o <u>Plakun</u>: Tr. 563:16-566:16 | • Dr. Fishman's testimony consists of generalized comments that do not directly address this criterion.<br>• Dr. Plakun's testimony concerns the March 2015 and the December 2011 Custodial Care and Inpatient & Residential Services Coverage Determination Guideline.<br>• *See* discussion of reasonable expectation of improvement in I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 6" (pg. __).<br>o The phrase "[t]here is a reasonable expectation that services will improve …" comes from Medicare sources. **(Trial Tr. 319:5–320:12 (Niewenhous); Trial Ex. 655-0007)** (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services).)<br>o This criterion allows for maintenance treatment by covering treatment if withdrawal would result in the |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | member's condition deteriorating. (**Trial Tr. 1033:21–1034:10 (Martorana)** ("[I]t has language about determining whether the member might deteriorate if the current treatment was withdrawn. So that's one definition of 'improvement' that's mentioned here. . . . That's another way of describing maintenance treatment.").)<br>○ This criterion does not require continuous improvement, and it does not require the withdrawal of care once the presenting symptoms are improved. (**Trial Tr. 1034:22--1035:2 (Martorana)**; **Trial Tr. 1228:10–12 (Simpatico)**.)<br>○ Improvement requires an individualistic weighing of the pros and cons of moving a member to a lower level of care before doing so. This weighing is based on clinical judgment. **(Trial Tr. 1415:5–1417:12 (Allchin)**.)<br>• This criterion, in conjunction with the 7th black bullet, considers whether the member is receiving treatment that reduces the symptoms requiring them to be in a 24-hour care environment and whether withdrawal of this treatment will cause the member's condition to worsen. If the member's condition will worsen upon withdrawal, treatment is considered active. **(Trial Tr. 1089:5–16 (Martorana).)** |
| 7th black bullet | "Improvement" in this context is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or | • <u>Argument</u><br>○ Acuity<br>○ Maintenance of Function<br>○ Custodial/ | • Dr. Plakun's testimony concerns the March 2015 and the December 2011 Custodial Care and Inpatient & Residential Services Coverage Determination Guideline.<br>• *See* discussion of least restrictive level of care that is safe and effective, at I.A.1 "2011 Common Criteria, Admission |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | relapse if inpatient or residential treatment were to be discontinued. | Improvement<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 274:5-275:25<br>o <u>Plakun</u>: Tr. 563:16-566:16<br>o <u>Niewenhous</u>: Tr. 340:16-345:01, 345:04-10, 354:25-357:19 | Criteria, ¶5" (pg. ___).<br>o "Current condition" encompasses all symptoms the member brings to treatment, not only crisis conditions. (**Trial Tr. 1031:3–8 (Martorana)**.)<br>o This criterion requires a higher level of care if a lower level would not be *safe* or *effective*. (**Trial Tr. 1031:21–1032:3 (Martorana)**.)<br>o The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources. (**Trial Tr. 968:25-971:23 (Martorana)**; **Trial Ex. 634-0022** (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders); **Trial Ex. 639-0016** (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder).)<br>• *See* discussion of reasonable expectation of improvement in I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 6" (pg. __).<br>o The phrase "[t]here is a reasonable expectation that services will improve …" comes from Medicare sources. **(Trial Tr. 319:5–320:12 (Niewenhous); Trial Ex. 655-0007)** (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services).)<br>o This criterion allows for maintenance treatment by covering treatment if withdrawal would result in the member's condition deteriorating. (**Trial Tr. 1033:21–1034:10 (Martorana)** ("[I]t has language about determining whether the member might deteriorate if the current treatment was withdrawn. So that's one definition of 'improvement' that's mentioned here. . . . |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | That's another way of describing maintenance treatment.").)<br>o This criterion does not require continuous improvement, and it does not require the withdrawal of care once the presenting symptoms are improved. (**Trial Tr. 1034:22--1035:2 (Martorana)**; **Trial Tr. 1228:10–12 (Simpatico)**.)<br>o Improvement requires an individualistic weighing of the pros and cons of moving a member to a lower level of care before doing so. This weighing is based on clinical judgment. (**Trial Tr. 1415:5–1417:12 (Allchin)**.)<br>• This criterion, in conjunction with the 6th black bullet, considers whether the member is receiving treatment that reduces the symptoms requiring them to be in a 24-hour care environment and whether withdrawal of this treatment will cause the member's condition to worsen. If the member's condition will worsen upon withdrawal, treatment is considered active. (**Trial Tr. 1089:5–16 (Martorana)**.) |

## X. December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet | United Behavioral Health maintains that treatment of a behavioral health condition in an acute inpatient unit or RTC is not for the purpose of providing custodial care, but is for the active treatment of a behavioral health condition. | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 274:5-275:25, 276:6-277:16<br>o <u>Plakun</u>: Tr. 509:25-510:8, 557:5-558:23 | • Dr. Fishman's and Dr. Plakun's testimony does not address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. __)<br>o This language is similar to language found in the August 2010 Custodial Care CDG. |
| 2nd black bullet | Custodial care in a psychiatric inpatient or residential setting is the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's behavioral health condition is not changing, or does not require trained clinical personnel to safely deliver services. | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 276:6-277:16<br>o <u>Plakun</u>: Tr. 509:25-510:8, 557:5-558:7 | • This language comes directly from the terms of class members' health plans.<br>o (**Trial Tr. 1090:9–21 (Martorana)**.)<br>o (**Trial Tr. 904:25-905:5 (Dehlin)** (noting that it is appropriate for "UBH to make coverage determinations based on the definitions of 'custodial care' that appear in the plan documents.").)<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. __)<br>o Every class member's plan excludes "custodial care" and the Custodial Care CDGs are intended to interpret plan exclusions. (**Trial Ex. 1654**; **Trial Ex. 1654; Trial Tr. 455:24–456:19 (Niewenhous)**; **Trial Tr. 895:20–897:6 (Dehlin)**.)<br>o Plan definitions of "custodial care" prevail over the |

**X. December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | Custodial Care CDGs in the event of a disagreement. (**Trial Exs. 10-0002; 47-0002; 84-0002; 108-0002; 148-0002; 195-0002; 221-0002.**)<br>o Active treatment is the inverse of custodial care. **(Trial Tr. 1079:24 – 1080:9 (Martorana).**)<br>• The provision in this criterion that "clinical … services" can constitute custodial care is consistent with CMS guidance that, in a 24-hour treatment setting, clinical services (including active clinical supervision) can constitute custodial care in the absence of active treatment: "The fact that a patient is under the supervision of a physician does not necessarily mean the patient is getting active treatment. For example, *medical supervision* of a patient may be necessary to assure the early detection of significant changes in his/her condition; however, in the absence of a specific program of therapy designed to effect improvement; a finding that the patient is receiving active treatment would be precluded. (**Trial Ex. 655-0007**) (Medicare Benefit Policy Manual, Chapter 2, Inpatient Psychiatric Hospital Services).)<br>• **[Regarding the 2017 Custodial Care Coverage Determination Guidelines]**<br>o Plans are free to define custodial care in any manner they see fit.(**Trial Tr. 1078:9–1079:2 (Martorana)**.) |
| 3rd black bullet | "Custodial Care" in this context is characterized by the following:<br>• The presenting signs and symptoms of the patient | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement | • Dr. Fishman's and Dr. Plakun's testimony does not directly address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. __)<br>o Every class member's plan excludes "custodial |

**X. December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | have been stabilized, resolved, or a baseline level of functioning has been achieved;<br>• The patient is not responding to treatment or otherwise not improving;<br>• The intensity of active treatment provided in an inpatient or residential treatment setting is no longer required or services can be safely provided in a less intensive setting.<br>• Examples include respite services, daily living skills instruction, days awaiting placement, activities that are social and recreational in nature, solely to prevent runaway/truancy or legal problems. | ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>○ <u>Fishman</u>: Tr. 120:12-123:06<br>○ <u>Plakun</u>: Tr. 509:25-510:8, 557:5-558:7, 560:16-563:23<br>○ <u>Niewenhous</u>: Tr. 363:13-364:14, 367:16-368:25 | care" and the Custodial Care CDGs are intended to interpret plan exclusions. (**Trial Ex. 1654**; **Trial Ex. 1654; Trial Tr. 455:24–456:19 (Niewenhous)**; **Trial Tr. 895:20–897:6 (Dehlin).**)<br>○ Plan definitions of "custodial care" prevail over the Custodial Care CDGs in the event of a disagreement. (**Trial Exs. 10-0002; 47-0002; 84-0002; 108-0002; 148-0002; 195-0002; 221-0002.**)<br>○ Active treatment is the inverse of custodial care. **(Trial Tr. 1079:24 – 1080:9 (Martorana).**)<br>• *See* discussion of least restrictive level of care that is safe and effective, at I.A.1 "2011 Common Criteria, Admission Criteria, ¶5" (pg. ___).<br>○ The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources. (**Trial Tr. 968:25-971:23 (Martorana)**; **Trial Ex. 634-0022** (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders); **Trial Ex. 639-0016** (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder).)<br>• *See* discussion of reasonable expectation of improvement in I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 6" (pg. __).<br>○ Improvement requires an individualistic weighing of the pros and cons of moving a member to a lower level of care before doing so. This weighing is based on clinical judgment. (**Trial Tr. 1415:5–1417:12 (Allchin)**.) |

**X. December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | • Custodial care is often defined by member's plans, and UBH must make coverage determinations based on those definitions.<br>  o (**Trial Tr. 895:6–17; 904:25–905:5 (Dehlin)**.)<br>• **[Regarding the 2011 Common Criteria]**<br>  o This criterion limits only those instances in which the *primary* purpose of treatment is addressing antisocial behavior or legal problems.<br>  o (**Trial Tr. 1036:5–10 (Martorana)** ("That—that describes an exclusion for treatment that's—and the keyword here is 'primarily.' So if the focus of treatment has to do with someone being sentenced to a residential treatment program, as an example, instead of going to jail and they otherwise wouldn't need this treatment, then that would be—that would be an exclusion.").) |
| 4th black bullet | The provision of Custodial Care by trained behavioral health personnel, such as a psychiatrist or licensed clinician, does not cause the services to be classified as skilled services. If the nature of the services can be safely and effectively performed by a nontrained person, the services will be considered Custodial Care. | • <u>Argument</u><br>  o Maintenance of Function<br>  o Custodial/ Improvement<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 274:5-275:25, 276:6-277:16<br>  o <u>Plakun</u>: Tr. 509:25-510:8, 557:5-558:7, 560:16-563:23 | • Dr. Fishman's and Dr. Plakun's testimony does not directly address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. __)<br>  o Every class member's plan excludes "custodial care" and the Custodial Care CDGs are intended to interpret plan exclusions. (**Trial Ex. 1654**; **Trial Ex. 1654; Trial Tr. 455:24–456:19 (Niewenhous)**; **Trial Tr. 895:20–897:6 (Dehlin).**)<br>  o Plan definitions of "custodial care" prevail over the Custodial Care CDGs in the event of a disagreement. (**Trial Exs. 10-0002; 47-0002; 84-0002; 108-0002; 148-0002; 195-0002; 221-0002.**) |

**X. December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | ○ Active treatment is the inverse of custodial care. **(Trial Tr. 1079:24 – 1080:9 (Martorana).)**<br>• This criterion is consistent with CMS guidance, which provides that "Physician participation in the services is an essential ingredient of active treatment. . . . [T]he physician must serve as a source of information and guidance for all members of the therapeutic team who work directly with the patient in various roles." (**Trial Ex. 655-0008**) (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services).)<br>○ The provision in this criterion that services are not necessarily considered "active" simply because they are provided by a clinician. (**Trial Ex. 655-0007**) (Medicare Benefit Policy Manual, Chapter 2, Inpatient Psychiatric Hospital Services).) |
| 5th black bullet | Active treatment in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of patients that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare, under the direction of a psychiatrist. | • Argument<br>○ Maintenance of Function<br>○ Custodial/ Improvement<br>• Testimony<br>○ Fishman: Tr. 274:5-275:25, 276:6-277:16<br>○ Plakun: Tr. 509:25-510:8, 557:5-558:7, 562:11-564:4 | • Dr. Fishman's and Dr. Plakun's testimony does not directly address this criterion.<br>• [*See* IX "August 2010 Custodial Care Coverage Determination Guideline, 4th black bullet" (pg. __)<br>○ This language is similar to language found in the August 2010 Custodial Care CDG. |
| 6th black bullet and sub | "Active Treatment" in this context is indicated by services that are all of the | • Argument<br>○ Maintenance of Function | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 5th black bullet" (pg. __)<br>○ This language is similar to language found in the |

**X. December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| bullets | following:<br>• Supervised and evaluated by a physician<br>• Provided under an individualized treatment or diagnostic plan;<br>• Reasonably expected to improve the patient's condition or for the purpose of diagnosis and<br>• Unable to be provided in a less restrictive setting<br>• Focused on interventions that are based on generally accepted standard medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the patient's condition to the extent that they can be safely treated in a lower level of care. | ○ Custodial/ Improvement<br>○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>○ <u>Fishman</u>: Tr. 276:6-22, 277:6-7<br>○ <u>Plakun</u>: Tr. 557:5-558:7, 562:11-564:4¸ 565:5-566:16<br>○ <u>Martorana</u>: Tr. 1131:3-9, 1131:13-1132:6 | August 2010 Custodial Care CDG. (**Trial Tr. 1092:19– 1093:1 (Martorana)**.) |
| 7th black bullet | Improvement of the patient's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment in an | • <u>Argument</u><br>○ Acuity<br>○ Maintenance of Function<br>○ Custodial/ Improvement | • Dr. Fishman's testimony does not address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 6th black bullet" (pg. __)<br>○ This language is similar to language found in the August 2010 Custodial Care CDG. (**Trial Tr. 1093:2–8 (Martorana)**.) |

**X. December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | acute or Residential Treatment Center. | • <u>Testimony</u><br>o <u>Fishman</u>: Tr. 276:6-277:5, 277:8-16<br>o <u>Plakun</u>: 563:16-566:16, 565:21-22, 566:5-16<br>o <u>Martorana</u>: Tr. 1093:5-8 | |
| 8th black bullet | "Improvement" in this context is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued. | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 274:5-275:25, 276:6-277:16<br>o <u>Plakun</u>: Tr. 563:16-566:16<br>o <u>Martorana</u>: Tr. 1093:5-8 | • Dr. Plakun's and Dr. Fishman's testimony does not address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 7th black bullet" (pg. __)<br>o This language is similar to language found in the August 2010 Custodial Care CDG. (**Trial Tr. 1093:2–8** (**Martorana**).) |
| 9th black bullet | United Behavioral Health maintains that inpatient or residential treatment should | • <u>Argument</u><br>o Drive Toward Lower Levels of | • Dr. Fishman's and Dr. Plakun's testimony does not address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage |

**X. December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less restrictive setting. | Care<br>• Testimony<br>○ Fishman: Tr. 213:06-214:04<br>○ Plakun: Tr. 511:25-512:6 | Determination Guideline, 1st black bullet" (pg. __)<br>○ This language is similar to language found in the August 2010 Custodial Care CDG. |

## XI. January 2013 Custodial Care Coverage Determination Guideline (Ex. 84-0003)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet | **Custodial Care** in a psychiatric inpatient or residential setting is the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's behavioral health condition is not changing, or does not require trained clinical personnel to safely deliver services (Certificate of Coverage (COC), 2011). | • Argument<br>  o Maintenance of Function<br>  o Custodial/ Improvement<br>• Testimony<br>  o Fishman: Tr. 278:1-278:6<br>  o Plakun: Tr. 509:25-510:8, 557:5-558:23 | • Dr. Plakun's testimony does not address this criterion.<br>• *See* X "December 2011 Custodial Care Coverage Determination Guideline, 2nd black bullet" (pg. __)<br>  o This language is similar to language found in the December 2011 Custodial Care CDG. |
| 2nd black bullet and sub-bullets | "Custodial Care" in this context is characterized by the following:<br>• The presenting signs and symptoms of the patient have been stabilized, resolved, or a baseline level of functioning has been achieved;<br>• The patient is not responding to treatment or otherwise not improving;<br>• The intensity of active treatment provided in an inpatient or residential treatment setting is no longer required or services can be safely provided in a less intensive setting. | • Argument<br>  o Maintenance of Function<br>  o Custodial/ Improvement<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Fishman: Tr. 120:12-123:06<br>  o Plakun: Tr. 509:25-510:8, 557:5-558:23, 560:16-563:23 | • Dr. Fishman's and Dr. Plakun's testimony does not directly address this criterion.<br>• *See* X "December 2011 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. __)<br>  o This language is similar to language found in the December 2011 Custodial Care CDG. (**Trial Tr. 1094:2–7 (Martorana)**.) |

**XI. January 2013 Custodial Care Coverage Determination Guideline (Ex. 84-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3rd black bullet | Examples of Custodial Care include respite services, daily living skills instruction, days awaiting placement, activities that are social and recreational in nature, or solely to prevent runaway/truancy or legal problems (Centers for Medicare and Medicaid Services, Benefit Manual, (CMS), 2010). | • <u>Argument</u><br>  ○ Maintenance of Function<br>  ○ Custodial/ Improvement<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 278:1-278:6<br>  ○ <u>Plakun</u>: Tr. 560:16-563:23 | • Dr. Fishman's and Dr. Plakun's testimony does not directly address this criterion.<br>• *See* X "December 2011 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. __)<br>  ○ This language is similar to language found in the December 2011 Custodial Care CDG. (**Trial Tr. 1094:8-14 (Martorana)**.) |
| 4th black bullet | The provision of Custodial Care by trained behavioral health personnel, such as a psychiatrist or licensed clinician, does not cause the services to be classified as skilled services. If the nature of the services can be safely and effectively performed by a non-trained person, the services will be considered Custodial Care. | • <u>Argument</u><br>  ○ Maintenance of Function<br>  ○ Custodial/ Improvement<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 278:1-278:6<br>  ○ <u>Plakun</u>: Tr. 560:16-563:23 | • Dr. Plakun's testimony concerns the March 2015 Custodial Care Coverage Determination Guidelines.<br>• Dr. Fishman's testimony does not directly address this criterion.<br>• *See* X "December 2011 Custodial Care Coverage Determination Guideline, 4th black bullet" (pg. __)<br>  ○ This language is similar to language found in the December 2011 Custodial Care. |
| 5th black bullet | **Active treatment** in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of patients that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare, under the direction of a psychiatrist. | • <u>Argument</u><br>  ○ Maintenance of Function<br>  ○ Custodial/ Improvement<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 278:1-278:6<br>  ○ <u>Plakun</u>: Tr. 562:2-563:18 | • Dr. Plakun's testimony concerns the March 2015 Custodial Care Coverage Determination Guidelines.<br>• Dr. Fishman's testimony does not directly address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 4th black bullet" (pg. __)<br>  ○ This language is similar to language found in the August 2010 Custodial Care CDG. |

**XI. January 2013 Custodial Care Coverage Determination Guideline (Ex. 84-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 6th black bullet and sub bullets | "Active Treatment" in this context is indicated by services that are all of the following (CMS, 2010):<br>• Supervised and evaluated by a physician;<br>• Provided under an individualized treatment or diagnostic plan;<br>• Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>• Unable to be provided in a less restrictive setting; and<br>• Focused on interventions that are based on generally accepted standard medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's condition to the extent that they can be safely treated in a lower level of care. | • Argument<br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 278:1-278:6<br>o Plakun: Tr. 562:11-564:4, 565:5-13, 566:17-23 | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 5th black bullet" (pg. __)<br>o This language is similar to language found in the August 2010 Custodial Care CDG. |
| 7th black bullet | **Improvement** of the patient's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment in an acute or Residential | • Argument<br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 6th black bullet" (pg. __)<br>o This language is similar to language found in the August 2010 Custodial Care CDG. (**Trial Tr. 1094:19–22** (**Martorana**).) |

**XI. January 2013 Custodial Care Coverage Determination Guideline (Ex. 84-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | Treatment Center. | • <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 276:6-277:5, 277:8-16<br>  ○ <u>Plakun</u>: 563:16-566:16, 565:21-22, 566:5-16 | |
| 8th black bullet | "Improvement" in this context is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued. | • <u>Argument</u><br>  ○ Acuity<br>  ○ Maintenance of Function<br>  ○ Custodial/ Improvement<br>  ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 278:1-278:6<br>  ○ <u>Plakun</u>: Tr. 563:16-566:16<br>  ○ <u>Martorana</u>: Tr. 1093:5-8 | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 7th black bullet" (pg. __)<br>  ○ This language is similar to language found in the August 2010 Custodial Care CDG. (**Trial Tr. 1094:19–22** (**Martorana**).) |
| 9th black bullet | Optum maintains that inpatient or residential treatment should be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less | • <u>Argument</u><br>  ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 213:06-214:0 | • Dr. Fishman's and Dr. Plakun's testimony does not address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 1st black bullet" (pg. __)<br>  ○ This language is similar to language found in the August 2010 Custodial Care CDG. |

**XI. January 2013 Custodial Care Coverage Determination Guideline (Ex. 84-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | restrictive setting. | ○ Plakun: Tr. 511:25-512:6 | |

**XII. February 2014 Custodial Care Coverage Determination Guideline (Ex. 108-0003)**

**XII.** February 2014 Custodial Care Coverage Determination Guideline (Ex. 108-0003)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet | *Custodial Care* in a psychiatric inpatient or residential setting is the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's behavioral health condition is not changing, or does not require trained clinical personnel to safely deliver services (Certificate of Coverage (COC), 2001, 2007, 2009, 2011). | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 278:7-279:3<br>o <u>Plakun</u>: Tr. 509:25-510:8, 557:5-558:23 | • Dr. Plakun's testimony consists of generalized comments not directed at this criterion.<br>• *See* X "December 2011 Custodial Care Coverage Determination Guideline, 2nd black bullet" (pg. __)<br>o This language is similar to language found in the December 2011 Custodial Care CDG. |
| 2nd black bullet and sub-bullets | "*Custodial Care*" in this context is characterized by the following (COC, 2001, 2007, 2009, 2011):<br>• The presenting signs and symptoms of the member have been stabilized, resolved, or a baseline level of functioning has been achieved; or<br>• The member is not responding to treatment or otherwise not improving; or<br>• The intensity of active treatment provided in an inpatient or residential | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 120:12-123:06, 278:7-20, 278:7-279:3<br>o <u>Plakun</u>: Tr. 560:16-563:23 | • *See* X "December 2011 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. __)<br>o This language is similar to language found in the December 2011 Custodial Care CDG. (**Trial Tr. 1095:13–19 (Martorana)**.) |

**XII. February 2014 Custodial Care Coverage Determination Guideline (Ex. 108-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | treatment setting is no longer required or services can be safely provided in a less intensive setting. | | |
| 3rd black bullet | Examples of Custodial Care include respite services, daily living skills instruction, days awaiting placement, activities that are social and recreational in nature, or solely to prevent runaway/truancy or legal problems (Centers for Medicare and Medicaid Services, Benefit Manual, (CMS), 2013). | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 278:7-9, 278:21-22<br>o <u>Plakun</u>: Tr. 560:16-563:23 | • *See* X "December 2011 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. __)<br>o This language is similar to language found in the December 2011 Custodial Care CDG. |
| 4th black bullet | The provision of Custodial Care by trained behavioral health personnel, such as a psychiatrist or licensed clinician, does not cause the services to be classified as skilled services. If the nature of the services can be safely and effectively performed by a nontrained person, the services will be considered Custodial Care. | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 278:7-279:3<br>o <u>Plakun</u>: Tr. 560:16-563:23 | • *See* X "December 2011 Custodial Care Coverage Determination Guideline, 4th black bullet" (pg. __)<br>o This language is similar to language found in the December 2011 Custodial Care. |
| 5th black bullet | *Active Treatment* in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of members that | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ | • *See* X "December 2011 Custodial Care Coverage Determination Guideline, 5th black bullet" (Pg. ___)<br>o This language is similar to language found in the December 2011 Custodial Care. |

**XII. February 2014 Custodial Care Coverage Determination Guideline (Ex. 108-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare under the direction of a psychiatrist (CMS, 2013). | Improvement<br>• Testimony<br>o Fishman: Tr. 278:7-279:3<br>o Plakun: Tr. 562:11-564:4 | |
| 6th black bullet and sub-bullets | "*Active Treatment*" in this context is indicated by services that are all of the following (CMS, 2013):<br>• Supervised and evaluated by a physician;<br>• Provided under an individualized treatment or diagnostic plan;<br>• Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>• Unable to be provided in a less restrictive setting; and<br>• Focused on interventions that are based on generally accepted standard medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's | • Argument<br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 278:7-9, 278:23-24<br>o Plakun: Tr. 562:11-564:4 | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 5th black bullet" (pg. __)<br>o This language is similar to language found in the August 2010 Custodial Care CDG. (**Trial Tr. 1095:23– 25 (Martorana)**.) |

**XII. February 2014 Custodial Care Coverage Determination Guideline (Ex. 108-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | condition to the extent that they can be safely treated in a lower level of care. | | |
| 7th black bullet | *Improvement* of the member's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment (CMS, 2013). | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 278:7-9, 278:25-279:3<br>o <u>Plakun</u>: Tr. 563:16-566:16 | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 6th black bullet" (pg. __)<br>o This language is similar to language found in the August 2010 Custodial Care CDG. (<u>**Martorana**</u>**: 1096:1-3**) |
| 8th black bullet | *"Improvement"* in this context is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued (CMS, 2013). | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 278:7-279:3<br>o <u>Plakun</u>: Tr. 563:16-566:16 | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 7th black bullet" (pg. __)<br>o This language is similar to language found in the August 2010 Custodial Care CDG. (**Trial Tr. 1096:1– 3 (Martorana)**.) |
| 9th black bullet | Optum maintains that inpatient or residential treatment should | • <u>Argument</u><br>o Drive Toward | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 1st black bullet" (pg. __) |

**XII. February 2014 Custodial Care Coverage Determination Guideline (Ex. 108-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less restrictive setting. | Lower Levels of Care<br>• Testimony<br>  o Fishman: Tr. 213:06-214:04<br>  o Plakun: Tr. 511:25-512:6 | o This language is similar to language found in the August 2010 Custodial Care CDG. |

**XIII. March 2015 Custodial Care Coverage Determination Guideline (Ex. 148-0003)**

**XIII.** March 2015 Custodial Care Coverage Determination Guideline (Ex. 148-0003)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet | **Services provided in psychiatric inpatient and residential treatment settings that are not active and are solely for the purpose of Custodial Care as defined below are excluded.** | • Argument<br>  o Custodial/ Improvement<br>• Testimony<br>  o Fishman: Tr. 120:12-121:13, 120:12-123:06<br>  o Plakun: Tr. 560:16-563:23<br>  o Niewenhous: Tr. 369:1-371:3 | • Dr. Plakun testified that this criterion is "totally consistent with generally accepted standards of care."<br>  o (**Trial Tr. 560:8 –15 (Plakun)**.) |
| 2nd black bullet and sub-bullets | Custodial Care in a psychiatric inpatient or residential setting is any of the following (Certificate of Coverage (2011):<br>• Non-health-related services, such as assistance in activities of daily living (examples include feeding, dressing, bathing, transferring and ambulating).<br>• Health-related services that are provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence.<br>• Services that do not require continued | • Argument<br>  o Maintenance of Function<br>  o Custodial/ Improvement<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Fishman: Tr. 120:12-121:13, 120:12-123:06<br>  o Plakun: Tr. 560:16-563:23<br>  o Niewenhous: Tr. 369:1-371:3 | • *See* X "December 2011 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. __)<br>  o This language is similar to the definition of "Custodial Care" found in the December 2011 Custodial Care CDG<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. __)<br>  o Every class member's plan excludes "custodial care" and the Custodial Care CDGs are intended to interpret plan exclusions. (**Trial Ex. 1654**; **Trial Ex. 1654; Trial Tr. 455:24–456:19 (Niewenhous)**; **Trial Tr. 895:20–897:6 (Dehlin).**)<br>  o Plan definitions of "custodial care" |

**XIII. March 2015 Custodial Care Coverage Determination Guideline (Ex. 148-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | administration by trained medical personnel in order to be delivered safely and effectively. | | prevail over the Custodial Care CDGs in the event of a disagreement. (**Trial Exs. 10-0002; 47-0002; 84-0002; 108-0002; 148-0002; 195-0002; 221-0002.**)<br>o Active treatment is the inverse of custodial care. (**Trial Tr. 1079:24 – 1080:9 (Martorana).**)<br>• Dr. Plakun testified that the portion of this criterion discussing non-health-related services is "fully consistent with what the Medicare manual says." (**Trial Tr. 560:16–19 (Plakun)**.)<br>• **[Regarding the 2015 Level of Care Guidelines]**<br>o This revised language in the 2015 Custodial Care CDG was drawn directly from UBH health plans in effect in 2015. (**Trial Tr. 1620:11 – 1621:2 (Alam)** (discussing identical language in the 2015 LOCGs).) |
| 3rd black bullet and sub-bullets | Active Treatment in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of members that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare under the direction of a psychiatrist (CMS Psychiatric Inpatient Local Coverage Determinations, 2014).<br>• Active Treatment is indicated by services that are <u>all</u> of the following (CMS Benefit Policy Manual, Chapter 2, 30.2.2.1, 2014):<br>o Supervised and evaluated by a | • <u>Argument</u><br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 121:18- | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 5th black bullet" (pg. __)<br>o This language is similar to language found in the August 2010 Custodial Care CDG. (**Trial Tr. 1097:6–10 (Martorana)**.) |

**XIII. March 2015 Custodial Care Coverage Determination Guideline (Ex. 148-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | physician;<br>○ Provided under an individualized treatment or diagnostic plan;<br>○ Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>○ Unable to be provided in a less restrictive setting; and<br>○ Focused on interventions that are based on generally accepted standard medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's condition to the extent that they can be safely treated in a lower level of care. | 122:07, 122:19-123:6<br>○ Plakun: Tr. 562:11-564:4, 562:11-564:4 | |
| 4th black bullet and sub-bullet | Improvement of the member's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment (CMS Psychiatric Inpatient Local Coverage Determinations, 2014).<br>• Improvement is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued (CMS Psychiatric Inpatient Local Coverage Determinations, 2014). | • Argument<br>○ Acuity<br>○ Maintenance of Function<br>○ Custodial/ Improvement<br>○ Drive Toward Lower Levels of Care<br>• Testimony<br>○ Fishman: Tr. 123:16-23<br>○ Plakun: Tr. 563:16-23, 564:5- | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, "6th black bullet" and "7th black bullet" (pg. __)<br>○ This language is similar to language found in the August 2010 (**Trial Tr. 1097:11–14** (**Martorana**).) |

**XIII. March 2015 Custodial Care Coverage Determination Guideline (Ex. 148-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | 15 | |
| 5th black bullet | Optum maintains that inpatient or residential treatment should be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less restrictive setting. | • Argument<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Fishman: Tr. 213:06-214:04<br>  ○ Plakun: Tr. 511:25-512:6 | • Dr. Fishman and Dr. Plakun's testimony is generalized comments not directed at this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 1st black bullet" (pg. __)<br>  ○ This language is similar to language found in the August 2010 Custodial Care CDG. |

**XIV. April 2016 Custodial Care Coverage Determination Guideline (Ex. 195)**

**XIV.** April 2016 Custodial Care Coverage Determination Guideline (Ex. 195)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet | **Services provided in psychiatric inpatient and residential treatment settings that are not active and are solely for the purpose of Custodial Care as defined below are excluded.** | • Argument<br>o Custodial/ Improvement<br>• Testimony<br>o Fishman: Tr. 120:12-123:06¸ 279:04-14<br>o Plakun: Tr. 509:25-510:8, 557:5-558:23, 560:16-563:23 | • *See* XIII "March 2015 Custodial Care Coverage Determination Guideline, 1st black bullet" (pg. __)<br>o This language is similar to language found in the March 2015 Custodial Care CDG. |
| 2nd black bullet & sub-bullets | Custodial Care in a psychiatric inpatient or residential setting is any of the following (Certificate of Coverage (2011):<br>• Non-health-related services, such as assistance in activities of daily living (examples include feeding, dressing, bathing, transferring and ambulating).<br>• Health-related services that are provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services | • Argument<br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 120:12-123:06¸ 279:04-14<br>o Plakun: Tr. 509:25-510:8, 557:5-558:23, 560:16-563:23 | • *See* XIII "March 2015 Custodial Care Coverage Determination Guideline, 2nd black bullet" (pg. __)<br>o This language is similar to language found in the March 2015 Custodial Care CDG. |

**XIV. April 2016 Custodial Care Coverage Determination Guideline (Ex. 195)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence.<br>• Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | | |
| 3rd black bullet & sub-bullets | Active Treatment in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of members that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare under the direction of a psychiatrist that cannot be managed in a less restrictive setting (CMS Psychiatric Inpatient Local Coverage Determinations, 2016)<br>• Active Treatment is indicated by services that are <u>all</u> of the following (CMS Benefit Policy Manual, Chapter 2, 30.2.2.1, Retrieved March, 2016):<br>o Supervised and evaluated by a | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 279:04-06; 279:15-19<br>o <u>Plakun</u>: Tr. 562:11-564:4 | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶5" (Pg. ___)<br>o "Current condition" encompasses all symptoms the member brings to treatment, not only crisis conditions. (**Trial Tr. 1031:3–8** (**Martorana**).)<br>o This criterion requires a higher level of care if a lower level would not be *safe* or *effective*. (**Trial Tr. 1031:21–1032:3** (**Martorana**).)<br>o The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources. (**Trial Tr. 968:25-971:23** (**Martorana**); **Trial Ex. 634-0022** (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders); **Trial Ex. 639-0016** (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder).)<br>• *See* X "December 2011 Custodial Care Coverage Determination Guideline, 5th black bullet" (Pg. ___)<br>o The first portion of the definition of active |

**XIV. April 2016 Custodial Care Coverage Determination Guideline (Ex. 195)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | physician;<br>o Provided under an individualized treatment or diagnostic plan; and<br>o Reasonably expected to improve the member's condition or for the purpose of diagnosis. | | treatment is virtually identical to language found in the December 2011 Custodial Care CDG, but has added the concept of a least restrictive level of care.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 5th black bullet" (pg. __)<br>o The first three bullet points in this definition of "active treatment" are virtually identical to the first three bullet points found in the definition of "active treatment" in the August 2010 Custodial Care CDG.<br>• This language is from Chapter 2 of the Medicare Benefit Policy Manual.<br>o (**Trial Tr. 1098:13-1099:19 (Martorana)**.)<br>• The additional two bullets from previous definitions of "active treatment" were removed to more closely align with the Medicare Benefit Policy Manual.<br>o (**Trial Tr. 1098:13–1100:1 (Martorana)**.) |
| 4th black bullet & sub-bullets | Improvement of the member's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment (CMS Psychiatric Inpatient Local Coverage Determinations, 2016)<br>• Improvement is measured by weighing the effectiveness of treatment and the risk that the members condition would | • Argument<br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 279:04-06; 279:20- | • Dr. Plakun's testimony concerns the March 2015 Custodial Care Coverage Determination Guideline.<br>• *See* XIII "March 2015 Custodial Care Coverage Determination Guideline, 4th black bullet" (pg. __)<br>o This language is similar to language found in the March 2015 Custodial Care CDG. |

**XIV. April 2016 Custodial Care Coverage Determination Guideline (Ex. 195)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | deteriorate or relapse if inpatient or residential treatment were to be discontinued (CMS Psychiatric Inpatient Local Coverage Determinations, 2016) | 22<br>o Plakun: Tr. 563:16-566:16 | |
| 5th black bullet | Optum maintains that inpatient or residential treatment should be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less restrictive setting (Certificate of Coverage, 2011). | • Argument<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 213:06-214:04<br>o Plakun: Tr. 511:25-512:6 | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 1st black bullet" (pg. __)<br>o This language is similar to language found in the August 2010 Custodial Care CDG. |

**XV.** March 2017 Custodial Care Coverage Determination Guideline (Ex. 221)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st ¶ | Services provided in psychiatric inpatient and residential treatment settings that are not active and are solely for the purpose of Custodial Care as defined below are excluded. | • <u>Argument</u><br>  o Custodial/ Improvement<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 120:12-123:06, 279:24-280:12, 279:24-280:04; 280:13-18<br>  o <u>Plakun</u>: Tr. 509:25-510:8, 557:5-558:23, 560:16-563:23. | • Dr. Plakun's testimony does not directly address this criterion.<br>• *See* XIII "March 2015 Custodial Care Coverage Determination Guideline, 1st black bullet" (pg. __)<br>  o This language is similar to language found in the March 2015 Custodial Care CDG. |
| 2nd ¶ | Custodial Care in a psychiatric inpatient or residential setting is any of the following (Certificate of Coverage, 2011):<br>• Non-health-related services, such as assistance in activities of daily living (examples include feeding, dressing, bathing, transferring, and ambulating).<br>• Health-related services that are provided for the primary purpose of | • <u>Argument</u><br>  o Maintenance of Function<br>  o Custodial/ Improvement<br>  o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 120:12-123:06, 279:24-280:12, 279:24-280:04; 280:13-18<br>  o <u>Plakun</u>: Tr. 509:25- | • *See* XIII "March 2015 Custodial Care Coverage Determination Guideline, 2nd black bullet" (pg. __)<br>  o This language is similar to language found in the March 2015 Custodial Care CDG.<br>• This language comes from the generic Certificate of Coverage for 2011. Plans are free to define custodial care in any manner they see fit.<br>  o (**Trial Tr. 1078:11–1079:2, 1080:10–18 (Martorana)**.) |

**XV. March 2017 Custodial Care Coverage Determination Guideline (Ex. 221)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence.<br>• Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | 510:8, 557:5-558:23, 560:16-563:23 | |
| 3rd ¶ | Active Treatment in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of members that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare under the direction of a psychiatrist that cannot be managed in a less restrictive setting (CMS | • Argument<br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 279:24-280:04, 280:13-18, 279:24- | • *See* XIV "April 2016 Custodial Care Coverage Determination Guideline, 3rd black bullet and sub-bullets" (pg. __)<br>o This language is similar to language found in the April 2016 Custodial Care CDG.<br>• This language is taken from the Medicare Benefit Policy Manual.<br>o (**Trial Tr. 1080:19–1082:14** (**Martorana**).)<br>o (**Trial Ex. 1502-006** (**Local Coverage Determination (LCD): Psychiatric Inpatient Hospitalization**) ("For services in an IPF (Inpatient Psychiatric Facility) to be designated as 'active treatment,' they must be: provided under an individualized treatment or |

**XV. March 2017 Custodial Care Coverage Determination Guideline (Ex. 221)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | Psychiatric Inpatient Local Coverage Determinations, 2016).<br>• Active Treatment is indicated by services that are all of the following (CMS Benefit Policy Manual, Chapter 2, 30.2.2.1):<br>o Supervised and evaluated by a physician;<br>o Provided under an individualized treatment or diagnostic plan; and<br>o Reasonably expected to improve the member's condition or for the purpose of diagnosis. | 280:04; 280:19-25<br>o <u>Plakun</u>: Tr. 562:11-564:4 | diagnostic plan; reasonably expected to improve the patient's condition or for the purpose of diagnosis; and supervised and evaluated by a physician.").)<br>o (**Trial Ex. 655-0007 (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services)** ("For services in an IPF to be designated as active treatment, they must be: Provided under an individualized treatment or diagnostic plan; Reasonably expected to improve the patient's condition or for the purpose of diagnosis; and Supervised and evaluated by a physician.").) |
| 4th ¶ | Improvement of the member's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment (CMS Psychiatric | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement | • *See* XIII "March 2015 Custodial Care Coverage Determination Guideline, 4th black bullet" (pg. __)<br>o This language is similar to language found in the March 2015 Custodial Care CDG. |

**XV. March 2017 Custodial Care Coverage Determination Guideline (Ex. 221)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | Inpatient Local Coverage Determinations, 2016).<br>• Improvement is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued (CMS Psychiatric Inpatient Local Coverage Determinations, 2016). | o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 279:24-280:04; 281:01-06<br>o Plakun: Tr. 563:16-566:16 | |
| 5th ¶ | Optum maintains that inpatient or residential treatment should be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less restrictive setting (Certificate of Coverage, 2011). | • Argument<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 213:06-214:04<br>o Plakun: Tr. 511:25-512:6 | • Dr. Fishman's and Dr. Plakun's testimony does not address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 1st black bullet" (pg. __)<br>o This language is similar to language found in the August 2010 Custodial Care CDG. |