JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
JEFFREY H. RUTHERFORD (SBN 181695)
jrutherford@crowell.com
ANDREW HOLMER (SBN 268864)
aholmer@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Phone: (213) 622-4750
Fax: (213) 622-2690

NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Phone: (415) 986-2800
Fax: (415) 986-2827

APRIL N. ROSS (admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**DAVID WIT et al.**,

Plaintiffs,

v.

**UNITED BEHAVIORAL HEALTH**,

Defendant.

**Case No. 14-cv-02346 JCS**
**Related Case No. 14-cv-05337 JCS**

**UNITED BEHAVIORAL HEALTH'S CORRECTED POST-TRIAL CLAIMS CHART**

Hon. Joseph C. Spero

Trial: October 16, 2017 at 8:30 a.m.
Courtroom: G, 15th Floor

**GARY ALEXANDER et al.**,

Plaintiffs,

v.

**UNITED BEHAVIORAL HEALTH**,

Defendant.

## INTRODUCTION

As the Court instructed at trial, UBH submits the following chart identifying each provision Plaintiffs challenge in UBH's 2011–2017 Level of Care Guidelines ("LOCGs") and Custodial Care Coverage Determination Guidelines ("Custodial Care CDGs").

The question before the Court is whether Plaintiffs proved on a classwide basis that UBH's guidelines are such an unreasonable interpretation of the class members' plans that their creation and use constitutes an abuse of UBH's discretion, and whether that abuse of discretion amounts to a breach of fiduciary duty or improper denial of benefits under ERISA. In the attached chart, UBH catalogues the evidence at trial supporting the conclusion that each particular provision in each guideline is a reasonable interpretation of the class members' plans and generally accepted standards of care in the behavioral health field. For the Court's convenience, UBH also includes, without alteration, Plaintiffs' position as to each provision, and their cited evidence as set forth in Plaintiffs' Claim Chart (ECF No. 395).

In addition to the evidence cited in the chart specific to individual criteria in particular guidelines, UBH presented evidence at trial that its guidelines are consistent with generally accepted standards of care in their overall structure, guiding principles, and their express incorporation of clinical judgment into the benefit determination process, and that UBH's process for developing the guidelines was reasonable and exceeded the standards established by the two most prominent national organizations that accredit health insurers' utilization review programs.

UBH's Post-Trial Brief and Proposed Findings of Fact and Conclusions of Law explain in detail the reasons why UBH's interpretation of the plans and of generally accepted standards of care was not an abuse of the discretion afforded UBH by the class members' benefit plans. While UBH has attempted to capture all relevant evidence about each provision in the following chart, the chart may not identify all testimony or all exhibits supporting UBH's position as to each particular criterion, particularly where the same criteria appear in multiple years. To the extent the guidelines in certain years contain language that is the same or substantially similar to the language in other years, UBH incorporates by reference those portions of the chart pertaining to

the same or substantially similar language. UBH also explains in its Post-Trial brief why Plaintiffs are mistaken in their claim that the hundreds of Coverage Determination Guidelines they challenge incorporate the challenged LOCG criteria.

**I. 2011 Level of Care Guidelines (Ex. 1)....6**

**A.** COMMON CRITERIA (EX. 1-0005 TO -0008 & EX. 1-0078 TO -0079)....6

**1.** Admission Criteria (Ex. 1-0005 to -0008)....6

**2.** Continued Service Criteria (Ex. 1-0078 to -0079)....12

**B.** INTENSIVE OUTPATIENT PROGRAM: MENTAL HEALTH CONDITIONS (EX. 1-0018 TO -0020)....17

**C.** OUTPATIENT: MENTAL HEALTH CONDITIONS (EX. 1-0021 TO -0022)....22

**D.** RESIDENTIAL TREATMENT CENTER: MENTAL HEALTH CONDITIONS (EX. 1-0026 TO -0028)....25

**E.** INTENSIVE OUTPATIENT PROGRAM: SUBSTANCE USE DISORDERS (EX. 1-0042 TO -0045)....30

**F.** OUTPATIENT: SUBSTANCE USE DISORDERS (EX. 1-0046 TO -0048)....37

**G.** RESIDENTIAL REHABILITATION: SUBSTANCE USE DISORDERS (EX. 1-0056 TO -0059)....40

**II. 2012 Level of Care Guidelines (Ex. 2)....47**

**A.** COMMON CRITERIA (EX. 2-0006 TO -0009 & EX. 2-0082)....47

**1.** Admission Criteria (Ex. 2-0006 to -0009)....47

**2.** Continued Service Criteria (Ex. 2-0082)....52

**B.** INTENSIVE OUTPATIENT PROGRAM: MENTAL HEALTH CONDITIONS (EX. 2-0020 TO -0022)....54

**C.** OUTPATIENT: MENTAL HEALTH CONDITIONS (EX. 2-0023 TO -0024)....57

**D.** RESIDENTIAL TREATMENT CENTER: MENTAL HEALTH CONDITIONS (EX. 2-0028 TO -0031)....59

**E.** INTENSIVE OUTPATIENT PROGRAM: SUBSTANCE USE DISORDERS (EX. 2-0047 TO -0050)....66

**F.** OUTPATIENT: SUBSTANCE USE DISORDERS (EX. 2-0051 TO -0053)....69

**G.** RESIDENTIAL REHABILITATION: SUBSTANCE USE DISORDERS (EX. 2-0062 TO -0065)....71

**III. 2013 Level of Care Guidelines (Ex. 3)....79**

**A.** COMMON CRITERIA (EX. 3-0007 TO -0011 & EX. 3-0089)....79

**1.** Admission Criteria (Ex. 3-0007 to -0011)....79

**2.** Continued Service Criteria (Ex. 3-0089)....83

**B.** INTENSIVE OUTPATIENT PROGRAM: MENTAL HEALTH CONDITIONS (EX. 3-0022 TO -0025) ..... 85

**C.** OUTPATIENT: MENTAL HEALTH CONDITIONS (EX. 3-0026 TO -0028) ..... 88

**D.** RESIDENTIAL TREATMENT CENTER: MENTAL HEALTH CONDITIONS (EX. 3-0033 TO -0036) ..... 90

**E.** INTENSIVE OUTPATIENT PROGRAM: SUBSTANCE USE DISORDERS (EX. 3-0052 TO -0055) ..... 95

**F.** OUTPATIENT: SUBSTANCE USE DISORDERS (EX. 3-0056 TO -0058) ..... 98

**G.** RESIDENTIAL REHABILITATION: SUBSTANCE USE DISORDERS (EX. 3-0067 TO -0070) ..... 99

**IV. 2014 Level of Care Guidelines (Ex. 4) ..... 105**

**A.** COMMON CRITERIA (EX. 4-0007 TO -0010) ..... 105

**1.** Admission Criteria (Ex. 4-0007 to -0010, first column under "Level of Care Criteria") ..... 105

**2.** Continued Service Criteria (Ex. 4-0007 to -0009, second column under "Level of Care Criteria") ..... 109

**3.** Discharge Criteria (Ex. 4-0007 to -0008, third column under "Level of Care Criteria") ..... 111

**B.** INTENSIVE OUTPATIENT PROGRAM: MENTAL HEALTH CONDITIONS (EX. 4-0027 TO -0033) ..... 114

**1.** Admission Criteria (Ex. 4-0027 to -0033, first column under "Level of Care Criteria") ..... 115

**C.** OUTPATIENT: MENTAL HEALTH CONDITIONS (EX. 4-0034 TO -0035) ..... 117

**1.** Admission Criteria (Ex. 4-0034 to -0035, first column under "Level of Care Criteria") ..... 118

**D.** RESIDENTIAL TREATMENT CENTER: MENTAL HEALTH CONDITIONS (EX. 4-0043 TO -0045) ..... 120

**1.** Admission Criteria (Ex. 4-0043 to -0045, first column under "Level of Care Criteria") ..... 120

**2.** Continued Service Criteria (Ex. 4-0043, second column under "Level of Care Criteria") ..... 123

**3.** Discharge Criteria (Ex. 4-0043, third column under "Level of Care Criteria") ..... 124

**E.** INTENSIVE OUTPATIENT PROGRAM: SUBSTANCE-RELATED DISORDERS (EX. 4-0059 TO -0065) ..... 125

1. Admission Criteria (Ex. 4-0059 to -0065, first column under "Level of Care Criteria") ... 125

F. OUTPATIENT: SUBSTANCE-RELATED DISORDERS (EX. 4-0066 TO -0067) ... 126

1. Admission Criteria (Ex. 4-0066 to -0067, first column under "Level of Care Criteria") ... 126

G. RESIDENTIAL REHABILITATION: SUBSTANCE-RELATED DISORDERS (EX. 4-0077 TO -0080) ... 128

1. Admission Criteria (Ex. 4-0077 to -0080, first column under "Level of Care Criteria") ... 128

2. Continued Service Criteria (Ex. 4-0077, second column under "Level of Care Criteria") ... 132

3. Discharge Criteria (Ex. 4-0077, third column under "Level of Care Criteria") ... 133

**V. 2015 Level of Care Guidelines (Ex. 5) ... 134**

A. COMMON CRITERIA (EX. 5-0008 TO -0010) ... 134

1. Admission Criteria (Ex. 5-0008 to -0009) ... 134

2. Continued Service Criteria (Ex. 5-0009) ... 138

3. Discharge Criteria (Ex. 5-0009 to -0010) ... 140

B. INTENSIVE OUTPATIENT PROGRAM: MENTAL HEALTH CONDITIONS (EX. 5-00030 TO -0032) ... 142

C. OUTPATIENT: MENTAL HEALTH CONDITIONS (EX. 5-0033 TO -0034) ... 143

1. Admission Criteria (Ex. 5-0033) ... 144

D. RESIDENTIAL TREATMENT CENTER: MENTAL HEALTH CONDITIONS (EX. 5-0038 TO -0040) ... 145

1. Admission Criteria (Ex. 5-0038) ... 145

2. Continued Service Criteria (Ex. 5-0038 to -0039) ... 147

E. INTENSIVE OUTPATIENT PROGRAM: SUBSTANCE-RELATED DISORDERS (EX. 5-0055 TO -0058) ... 148

F. OUTPATIENT: SUBSTANCE-RELATED DISORDERS (EX. 5-0070 TO -0072) ... 149

1. Admission Criteria (Ex. 5-0070) ... 149

G. RESIDENTIAL REHABILITATION: SUBSTANCE-RELATED DISORDERS (EX. 5-0081 TO -0083) ... 151

1. Admission Criteria (Ex. 5-0081) ... 151

2. Continued Service Criteria (Ex. 5-0082)........154

**VI. 2016 Level of Care Guidelines (Ex. 6)........155**

A. COMMON CRITERIA (EX. 6-0009 TO -0011)........155

1. Admission Criteria (Ex. 6-0009 to -0010)........155

2. Continued Service Criteria (Ex. 6-0010)........159

3. Discharge Criteria (Ex. 6-0010 to -0011)........160

B. INTENSIVE OUTPATIENT PROGRAM: MENTAL HEALTH CONDITIONS (EX. 6-00032 TO -0035)........162

C. OUTPATIENT: MENTAL HEALTH CONDITIONS (EX. 6-0036 TO -0038)........163

1. Admission Criteria (Ex. 6-0036)........163

D. RESIDENTIAL TREATMENT CENTER: MENTAL HEALTH CONDITIONS (EX. 6-0043 TO -0045)........165

1. Admission Criteria (Ex. 6-0043)........165

2. Continued Service Criteria (Ex. 6-0043 to -0044)........167

E. INTENSIVE OUTPATIENT PROGRAM: SUBSTANCE-RELATED DISORDERS (EX. 6-0062 TO -0065)........168

F. OUTPATIENT: SUBSTANCE-RELATED DISORDERS (EX. 6-0079 TO -0081)........169

1. Admission Criteria (Ex. 6-0079)........169

G. RESIDENTIAL REHABILITATION: SUBSTANCE-RELATED DISORDERS (EX. 6-0090 TO -0092)........170

1. Admission Criteria (Ex. 6-0090 to -0091)........170

2. Continued Service Criteria (Ex. 6-0091)........172

**VII. 2016 Level of Care Guidelines (Ex. 7)........173**

**VIII. 2017 Level of Care Guidelines (Ex. 8)........174**

A. COMMON CRITERIA (EX. 8-0006 TO -0007, EX. 8-0011 TO -0012 & EX. 8-0024 TO -0025)........174

1. Admission Criteria (Ex. 8-0006 to -0007; Ex. 8-0011, Ex. 8-0024)........174

2. Continued Service Criteria (Ex. 8-0007, Ex. 8-0011, Ex. 8-0024)........179

3. Discharge Criteria (Ex. 8-0007, Ex. 8-0011 to -0012, Ex. 8-0024 to -0025)........181

B. OUTPATIENT: MENTAL HEALTH CONDITIONS (EX. 8-0013 TO -0014)........184

C. INTENSIVE OUTPATIENT PROGRAM: MENTAL HEALTH CONDITIONS (EX. 8-0014 TO -0015)........185

**D.** RESIDENTIAL TREATMENT CENTER: MENTAL HEALTH CONDITIONS (EX. 8-0018 TO -0019) ..... 186

**1.** Admission Criteria (Ex. 8-0018) ..... 187

**2.** Continued Service Criteria (Ex. 8-0018 to -0019) ..... 189

**E.** OUTPATIENT: SUBSTANCE-RELATED DISORDERS (EX. 8-0026 TO -0027) ..... 190

**F.** INTENSIVE-OUTPATIENT PROGRAM: SUBSTANCE-RELATED DISORDERS (EX. 8-0032 TO -0033) ..... 192

**G.** RESIDENTIAL REHABILITATION: SUBSTANCE-RELATED DISORDERS (EX. 8-0035 TO -0036) ..... 193

**1.** Admission Criteria (Ex. 8-0035 to -0036) ..... 194

**2.** Continued Service Criteria (Ex. 8-0036) ..... 196

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003) ..... 198**

**X. December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004) ..... 211**

**XI. January 2013 Custodial Care Coverage Determination Guideline (Ex. 84-0003) ..... 219**

**XII. February 2014 Custodial Care Coverage Determination Guideline (Ex. 108-0003) ..... 224**

**XIII. March 2015 Custodial Care Coverage Determination Guideline (Ex. 148-0003) ..... 229**

**XIV. April 2016 Custodial Care Coverage Determination Guideline (Ex. 195) ..... 233**

**XV. March 2017 Custodial Care Coverage Determination Guideline (Ex. 221) ..... 237**

# I. 2011 Level of Care Guidelines (Ex. 1)

## A. Common Criteria (Ex. 1-0005 to -0008 & Ex. 1-0078 to -0079)

### 1. Admission Criteria (Ex. 1-0005 to -0008)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 5 | The member's current condition cannot be effectively and safely treated in a lower level of care even when the treatment plan is modified, attempts to enhance the member's motivation have been made, or referrals to community resources or peer supports have been made. | • <u>Argument</u><br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o Fishman: *E.g.*, Tr. 97:10-14; 213:6-18<br>o Plakun: *E.g.*, Tr. 511:25-512:6 | • Dr. Fishman's and Dr. Plakun's testimony consist of generalized statements not directly related to this criterion.<br>• Dr. Fishman testified that he *did not object* to a nearly identical criterion in the 2013 Common Criteria. (**Trial Tr. 232:12–18 (Fishman)**.)<br>• This criterion places members in the least restrictive safe and effective level of care.<br>o It guarantees that treatment occurs at the least restrictive safe and effective level of care by requiring treatment at higher levels when care at a lower level would not be *safe* or *effective*. (**Trial Tr. 1031:21–1032:3 (Martorana)**.)<br>o This criterion "specifically identifies an attempt to . . . fit . . . the needs of the presenting problem with the level of care that provides for the least restrictive safe and effective place to mete out treatment." (**Trial Tr. 1226:11–14 (Simpatico)**.)<br>• The phrase "current condition" encompasses all symptoms bringing a member to treatment, not just crisis conditions.<br>o (**Trial Tr. 1031:3–8 (Martorana)**.) ("[Current condition] means the symptoms that the member is bringing to treatment, those that cause him distress and wants to be addressed in the context of looking at all factors that led to this point in time with this particular individual.")<br>• Criterion 5 must be read in the context of Criterion 4 and 6.<br>o (**Trial Tr. 1228:19–1229:2 (Simpatico)**.) |

**I.A.1 2011 Level of Care Guidelines (Ex. 1)**

**Common Criteria (Ex. 1-0005 to -0008 & Ex. 1-0078 to -0079) | Admission Criteria (Ex. 1-0005 to -0008)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | • The criterion is not a "fail first" requirement.<br>  ○ (**Trial Tr. 1032:10–17 (Martorana)**.)<br>• **[Regarding the 2013 LOCGs]**<br>  ○ Dr. Fishman did "not particularly object" to almost identically worded criterion in the 2013 LOCGs. (**Trial Tr. 232:12–18 (Fishman)** ("I think this is better than we've seen it in other years. I don't particularly object.").)<br>• **[Regarding Generally Accepted Standards of Care in General]**.<br>  ○ Matching patients to the least restrictive level of care that will provide effective treatment is "a generally standard approach" and "an important principle" because the concepts of a least restrictive level of care and of effective treatment are "equally important" principles. (**Trial Tr. 162:3–9 (Fishman)**.)<br>  ○ CMS outpatient guidelines provide that "[s]ervices are noncovered . . . where the evidence clearly establishes . . . that stability can be maintained without treatment or with less intensive treatment." (**Trial Ex. 626-0026 to -27 (Medicare Benefit Policy Manual Chapter 6, § 70 – Outpatient Hospital Services)**.)<br>  ○ (**Trial Ex. 1659, at 179:17–180:6, 181:1–18 (Bonfield)**.)<br>• **[Regarding the 2017 LOCGs]**<br>  ○ The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources.<br>  ○ (**Trial Tr. 968:25-971:23 (Martorana)**.)<br>  ○ (**Trial Ex. 634-0022** (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders) ("Individuals should be treated in the *least restrictive setting* that is likely to prove safe and effective.") (emphasis added).)<br>  ○ (**Trial Ex. 639-0016** (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder) ("The psychiatrist |

**I.A.1 2011 Level of Care Guidelines (Ex. 1)**
**Common Criteria (Ex. 1-0005 to -0008 & Ex. 1-0078 to -0079) | Admission Criteria (Ex. 1-0005 to -0008)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | should determine *the least restrictive setting* for treatment that will be most likely not only to address the patient's safety, but also to promote improvement in the patient's condition.") (emphasis added).) |
| 6 | There must be a reasonable expectation that essential and appropriate services will improve the member's presenting problems within a reasonable period of time. "Improvement" in this context is measured by weighing the effectiveness of treatment against the evidence that the member's condition will deteriorate if treatment is discontinued in the current level of care. Improvement must also be understood within the framework of the member's broader recovery goals. | • <u>Arguments</u><br>o Acuity<br>o Maintenance of Function<br>• <u>Testimony</u><br>o Fishman: Tr. 132:13-16, 132:20-133:02<br>o Plakun: Tr. 537:15-18<br>o Niewenhous: Tr. 321:01-15, 335:17-25 | • The criterion allows for maintenance treatment by covering treatment if withdrawal would result in the member's condition deteriorating.<br>o (**Trial Tr. 1033:21–1034:10** (**Martorana**) ("[I]t has language about determining whether the member might deteriorate if the current treatment was withdrawn. So that's one definition of 'improvement' that's mentioned here. . . . That's another way of describing maintenance treatment.").)<br>o (**Trial Tr. 1227:8–16** (**Simpatico**) ("[To "improve" means] either the signs and symptoms that are part of the clinical picture are ameliorated by treatment, or treatment actually prevents the deterioration of—of the person's ability to function . . . .").)<br>• This criterion does not require continuous improvement, and it does not require the withdrawal of care once the presenting symptoms are improved.<br>o (**Trial Tr. 1034:22--1035:2** (**Martorana**).)<br>o (**Trial Tr. 1228:10–12** (**Simpatico**).)<br>• **[Regarding the 2016 LOCGs]**<br>o The phrase "[t]here is a reasonable expectation that services will improve …" comes from Medicare sources. **(Trial Tr. 319:5–320:12 (Niewenhous); Trial Ex. 655-0007) (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services)**.)<br>o Determination of what constitutes a "reasonable period of time" is dependent on factors specific to the member seeking care. (**Trial Tr. 1413:25–2** (**Allchin**).)<br>o "Improvement" includes treatment of chronic conditions, and does not require constant, linear improvement of a member's |

**I.A.1 2011 Level of Care Guidelines (Ex. 1)**

**Common Criteria (Ex. 1-0005 to -0008 & Ex. 1-0078 to -0079) | Admission Criteria (Ex. 1-0005 to -0008)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | condition. (**Trial Tr. 1419:18–1420:11 (Allchin)**.)<br>o Improvement requires an individualistic weighing of the pros and cons of moving a member to a lower level of care before doing so. This weighing is based on clinical judgment.<br>▪ (**Trial Tr. 1415:5–1417:12 (Allchin)**.)<br>o Concerns regarding an adolescent's or child's resiliency would result in a continued stay under Criterion 1.8.2.<br>▪ (**Trial Tr. 1417:13–1419:17 (Allchin)**.)<br>• **[Regarding the 2017 LOCGs]**<br>o Maintenance of a member's condition, i.e., the prevention of deterioration, is included in this definition of improvement. (**Trial Tr. 982:21–25 (Martorana)**.)<br>o "Presenting problem" also includes chronic conditions. (**Trial Tr. 983:1–8 (Martorana)**.)<br>o "Reasonable period of time" allows a reviewer to apply clinical judgment by taking into consideration both the member's condition as well as the nature of the presenting problem. (**Trial Tr. 983:11–984:1 (Martorana)**.) |
| 7 | The goal of treatment is to improve the member's presenting symptoms to the point that treatment in the current level of care is no longer required. | • <u>Arguments</u><br>o Acuity<br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o Fishman: Tr. 132:13-16, 133:04-14<br>o Plakun: Tr. 537:15-18 | • This criterion captures the principle contained in generally accepted standards of care "that being in a least restrictive level of care is desirable."<br>o (**Trial Tr. 1035:3–15 (Martorana)**.)<br>o (**Trial Tr. 1229:3--19 (Simpatico)** ("The goal of treatment is to make people better. And so, again, if there are certain signs or symptoms or criteria that are disproportionately influential in the selection of a particular level of care, such that they determine, as a practical matter, the most restrictive level of care because of the intensity of those symptoms, the goal would be to ameliorate those symptoms to the point where it was no longer necessary to stay at that level of care and ideally to move to a less restrictive level of care.").) |

**I.A.1 2011 Level of Care Guidelines (Ex. 1)**
**Common Criteria (Ex. 1-0005 to -0008 & Ex. 1-0078 to -0079) | Admission Criteria (Ex. 1-0005 to -0008)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | • This principle is contained in external sources such as ASAM.<br>o (**Trial Tr. 1035:16–20 (Martorana)**.)<br>o (**Trial Ex. 662-0136** (ASAM Criteria) ("Individuals are transferred to less intensive levels of care at the point that they have established sufficient skills to safely continue treatment without the immediate risk of relapse, continued use or other continued problems, and are no longer in imminent danger of harm to themselves or others.").)<br>o (**Trial Ex. 662-0133 (ASAM Criteria)** ("Once acute medical/psychiatric stabilization has been achieved, the initial placement for substance use/addiction treatment services should reflect an assessment of the patient's status in all six ASAM criteria dimensions. The principle here is that the highest severity problem (particularly those in Dimensions 1, 2, or 3) should determine the patient's entry point into the treatment continuum. *Subsequent resolution of the acute problem creates an opportunity to transfer the patient to a less intensive level of care*.") (emphasis added).)<br>• **[Regarding Generally Accepted Standards of Care in General]**.<br>o Matching patients to the least restrictive level of care that will provide effective treatment is "a generally standard approach" and "an important principle" because the concepts of a least restrictive level of care and of effective treatment are "equally important" principles. (**Trial Tr. 162:3–9 (Fishman)**.) |
| 8 | Treatment is not primarily for the purpose of providing respite for the family, increasing the member's social activity, or for addressing | • Arguments<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• Testimony | • This criterion limits only those instances in which the *primary* purpose of treatment is addressing antisocial behavior or legal problems.<br>o (**Trial Tr. 1036:5–10 (Martorana)** ("That—that describes an exclusion for treatment that's—and the keyword here is 'primarily.' So if the focus of treatment has to do with someone being sentenced to a residential treatment program, as an |

**I.A.1 2011 Level of Care Guidelines (Ex. 1)**

**Common Criteria (Ex. 1-0005 to -0008 & Ex. 1-0078 to -0079) | Admission Criteria (Ex. 1-0005 to -0008)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | antisocial behavior or legal problems, but is for the active treatment of a behavioral health condition. | ○ Fishman: Tr. 133:20-134:22 | example, instead of going to jail and they otherwise wouldn't need this treatment, then that would be—that would be an exclusion.").)<br>• Treatment for only antisocial behavior or legal problems is not medically necessary.<br>○ (**Trial Tr. 1230:21–1231:2, 1231:19–22 (Simpatico)**.)<br>• Patients suffering psychiatric conditions that "manifest . . . as antisocial behavior" are not excluded.<br>○ (**Trial Tr. 1036:15–22 (Martorana)**.)<br>○ (**Trial Tr. 1232:13–15 (Simpatico)** ("[I]f [antisocial behavior or legal problems] were presented in the context of another condition that did meet the medical necessity standard, then they could and would be addressed.").) |
| 10 | The treatment plan stems from the member's presenting condition, and clearly documents realistic and measurable treatment goals as well as the treatments that will be used to achieve the goals of treatment.… | • <u>Arguments</u><br>○ Acuity<br>• <u>Testimony</u><br>○ Fishman: Tr. 219:12-19 | • Dr. Fishman's testimony concerns the 2012 Level of Care Guidelines, and not this criterion.<br>• This criterion requires that the "treatment plan articulates the problems . . . in such a way that it lends itself to having a way of measuring progress and allocating tasks to team members."<br>○ (**Trial Tr. 1233:10–12 (Simpatico)**.) |

**I.A.2 2011 Level of Care Guidelines (Ex. 1)**

**Common Criteria (Ex. 1-0005 to -0008 & Ex. 1-0078 to -0079) | Continued Service Criteria (Ex. 1-0078 to -0079)**

**2.** Continued Service Criteria (Ex. 1-0078 to -0079)

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2 | The member continues to present with symptoms and/or history that demonstrate a significant likelihood of deterioration in functioning/relapse if transitioned to a less intensive level of care, or in the case of outpatient care, is discharged. | • Arguments<br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 136:24-137:9, 137:10-15<br>o Plakun: Tr. 538:1-4 | • The criterion provides that treatment should continue as long as the symptoms that initiated treatment are present, or there is more than a theoretical likelihood that the member will deteriorate in function or relapse if treatment ceases.<br>o (**Trial Tr. 1037:15–1038:3 (Martorana)** ("[S]o one way to continue authorization at a level of care is that the member still has the symptoms that got them into it in the first place, or that we understand that they—they could—that there's a good likelihood that if withdrawn, they'll deteriorate. . . . [M]ental health and substance use conditions have a high likelihood of relapse, and so the idea being that there's a clinical judgment about is this person really—he's about to relapse or it's imminent or immediate, or is this something theoretical for down the road that there's a good chance in months to years that they will.").)<br>• **[Regarding the 2017 LOCGs]**<br>o "[Y]ou would need to define the reason for the immediacy of treatment depending on how acute or immediate the risk of relapse is. Because . . . if they might relapse in 6 months or 10 months, then that may not really be a good reason to keep them in a 24-hour level of care. . . . [Y]ou can't keep people indefinitely in a 24-hour monitored situation just because someday down the road they might relapse. That wouldn't be good clinical treatment."<br>o (**Trial Tr. 1026:17–1027:6 (Martorana)**.)<br>o (**Trial Tr. 994:10–995:2 (Martorana)** (discharge involves a feedback loop which assesses whether a patient can be safely and effectively treated in the transitional level of care per that |

**I.A.2 2011 Level of Care Guidelines (Ex. 1)**
**Common Criteria (Ex. 1-0005 to -0008 & Ex. 1-0078 to -0079) | Continued Service Criteria (Ex. 1-0078 to -0079)**

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | level's admission criteria).) |
| 4 | The member is actively participating in treatment or is reasonably likely to adhere after an initial period of stabilization and/or motivational support. | • Argument<br>  o Motivation<br>• Testimony<br>  o Fishman: Tr. 135:10-136:15 | • This criterion provides that the member is receiving active treatment and that the member will actually benefit from treatment.<br>  o (**Trial Tr. 1038:17–20 (Martorana)** ("Well, it would be an indication that treatment is occurring or about to occur that will improve the member's condition. So that there's some level of active treatment happening.").)<br>• This criterion is consistent with generally accepted standards of care: if a patient not willing to participate in treatment even after a reasonable period time has passed that allows for attempts at engagement, the patient likely is not benefitting from the treatment. (**Trial Tr. 1235:24–1236:20 (Simpatico)**.)<br>• This criterion ensures that coverage is not denied simply because the member lacks motivation as long as the provider is taking reasonable steps to engage the member in treatment that will help the member.<br>  o (**Trial Tr. 135:21–24 (Fishman)** ("[T]here is acknowledgement made that there might be an initial period of stabilization in which that wouldn't happen, and there might be a period in which additional motivational support might be needed."<br>  o (**Trial Tr. 1038: 7–14 (Martorana)** ("So as a condition of treatment, the member is getting something out of the care and in a situation where they're not there right now, that there are efforts to get them to participate and engage in treatment.").)<br>• This criterion allows for a reasonable period of time to engage a member in treatment, but allows for the exercise of clinical judgment if motivational efforts have failed and the likelihood of further engagement is low.<br>  o (**Trial Tr. 1236:9–20 (Simpatico)** (There "would be a reasonable period of time when there would be an attempt at engagement. But at a certain point there would have to be a judgment made that the likelihood of engagement was |

**I.A.2 2011 Level of Care Guidelines (Ex. 1)**
**Common Criteria (Ex. 1-0005 to -0008 & Ex. 1-0078 to -0079) | Continued Service Criteria (Ex. 1-0078 to -0079)**

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | significantly low; that it no longer warranted keeping the person in a motivational phase.")<br>• **[Regarding the 2015 LOCGs]**<br>  o "[I]f a member is—that has capacity is unwilling or unable to participate in their own treatment after an adequate attempt to motivate them and engage them, then by definition they're not capable of participating in active treatment and there wouldn't be a medical necessity to continue treatment." (**Trial Tr. 1333:8–13 (Simpatico)**.)<br>• **[Regarding the 2017 LOCGs]**<br>  o This criterion ensures that treatment will address a member's condition or suffering by ensuring that the member is willing and able to participate in treatment.<br>  o (**Trial Tr. 995:21–996:21 (Martorana)**.)<br>  o (**Trial Tr. 1198:16–1199:16 (Simpatico)**.) |
| 8 | Measurable and realistic progress has occurred or there is clear and compelling evidence that continued treatment at this level of care is required to prevent acute deterioration or exacerbation that would then require a higher level of care. Lack of progress is being addressed by an appropriate change in the treatment plan or other intervention to engage the member. | • <u>Argument</u><br>  o Acuity<br>• <u>Testimony</u><br>  o Fishman: Tr. 136:24-137:9, 137:10-15<br>  o Plakun: Tr. 538:1-4, 538:15-539:4, 539:6-8<br>  o Simpatico: Tr. 1238:7-1244:5<br>  o Niewenhous: Tr. 336:01-337:13 | • This criterion provides for continued treatment in instances where the risk of relapse is not just theoretical, *i.e.*, where there is evidence that, given the patient and his/her history, relapse is likely to occur.<br>  o (**Trial Tr. 1039:17–1040:1 (Martorana)** ("So—and, that, again, is that the evidence is not just theoretical; that . . . we know that this illness . . . tends to relapse but that this person . . . with all we know about him and his history and his current condition is likely to relapse.").)<br>  o **[Regarding the 2017 LOCGs]**<br>    ▪ (**Trial Tr. 1026:17–1027:6 (Martorana)** ("[Y]ou would need to define the reason for the immediacy of treatment depending on how acute or immediate the risk of relapse is. Because . . . if they might relapse in 6 months or 10 months, then that may not really be a good reason to keep them in a 24-hour level of care. . . . [Y]ou can't keep people indefinitely in a 24-hour monitored situation |

**I.A.2 2011 Level of Care Guidelines (Ex. 1)**

**Common Criteria (Ex. 1-0005 to -0008 & Ex. 1-0078 to -0079) | Continued Service Criteria (Ex. 1-0078 to -0079)**

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | just because someday down the road they might relapse. That wouldn't be good clinical treatment.").)<br>• Measurable and realistic progress is needed because such progress can be documented in order to ensure the patient is progressing through his or her treatment plan.<br>  ○ (**Trial Tr. 1237:4–12 (Simpatico)** ("[Requiring this is consistent with generally accepted standards of care because] it's consistent with the language of writing a treatment plan; which is, measurable and realistic progress can be documented. That's one of the essential purposes of writing a treatment plan.").)<br>• "Clear and compelling evidence" is not a medical term.<br>  ○ (**Trial Tr. 137:3–5 (Fishman)** ("it would be hard to know what that would exactly mean in a clinical treatment context").)<br>  ○ (**Trial Tr. 1239:2–3 (Simpatico)**.)<br>• "Clear and compelling evidence" was not interpreted by UBH's clinicians as imposing a higher burden than ordinary clinical judgment about appropriate treatment.<br>  ○ (**Trial Tr. 1040:5–10 (Martorana)**.) |
| 10 | The member cannot effectively move toward recovery and be safely treated in a lower level of care, or in the case of outpatient care, is discharged. | • <u>Argument</u><br>  ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  ○ Fishman: *E.g.*, Tr. 97:10-14, 213:6-18<br>  ○ Plakun: *E.g.*, Tr. 511:25-512:6 | • Dr. Fishman's and Dr. Plakun's testimony consist of generalized statements not directed at this criterion.<br>• **[Regarding Generally Accepted Standards of Care in General]**<br>  ○ A criterion providing that a member should receive treatment in the lowest level of care that is safe and effective to treat the member is a foundational principle of treatment.<br>  ○ (**Trial Tr. 162:23–163:9 (Fishman)** (matching patients to the least restrictive level of care that will provide effective treatment is "a generally standard approach" and "an important principle" because the concepts of a least restrictive level of care and of effective treatment are "equally important" principles).)<br>  ○ (**Trial Ex. 1659, at 179:17–180:6, 181:1–18 (Bonfield)**.)<br>  ○ (**Trial Ex. 626-0026 to -27 (Medicare Benefit Policy Manual** |

**I.A.2 2011 Level of Care Guidelines (Ex. 1)**

**Common Criteria (Ex. 1-0005 to -0008 & Ex. 1-0078 to -0079) | Continued Service Criteria (Ex. 1-0078 to -0079)**

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | **Chapter 6, § 70 – Outpatient Hospital Services)** ("Services are noncovered . . . where the evidence clearly establishes . . . that stability can be maintained without treatment or with less intensive treatment.").)<br>• **[Regarding the 2013 LOCGs]**<br>o A criterion that a member's "current condition cannot be effectively and safely treated in a lower level of care even when [the] treatment plan is modified" is consistent with generally accepted standards of care.<br>o (**Trial Tr. 232:12–18 (Fishman)** ("I think this is better than we've seen it in other years. I don't particularly object.").)<br>• **[Regarding the 2017 LOCGs]**<br>o The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources.<br>o (**Trial Tr. 968:25–971:23 (Martorana)**.)<br>o (**Trial Ex. 634-0022** (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders) ("Individuals should be treated in the least restrictive setting that is likely to prove safe and effective.").)<br>o (**Trial Ex. 639-0016** (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder) ("The psychiatrist should determine the least restrictive setting for treatment that will be most likely not only to address the patient's safety, but also to promote improvement in the patient's condition.").) |

**B.** Intensive Outpatient Program: Mental Health Conditions (Ex. 1-0018 to -0020)

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | Any one of the following criteria must be met:<br>******************** | • Plaintiffs do not challenge criteria 1, 3, and 4.<br>• Plaintiffs challenge only "Any" 2.<br>• Argument<br>  o Acuity<br>• Testimony<br>  o Fishman: Tr. 145:8-12, 146:5-13 | • Plaintiffs fail to offer proof that these alternative criteria, when considered together, deviate from generally accepted standards of care.<br>• "Any" 2 is not overly restrictive for an IOP level of care.<br>• **[Regarding the 2011 LOCGs IOP SUD Admission Criteria]**<br>  o An identically-worded criterion reflects the generally accepted standard that members should be treated in the lowest level of care that is safe and effective to treat the member. (**Trial Tr. 1252:9–12 (Simpatico)** ("[T]hey are defining the appropriateness of—of intensity of services in the context of not being able to—care not being able to successfully be provided at the next lower level of intensity").)<br>• *See* I.A.2. "2011 Common Criteria, Continued Service Criteria ¶ 2" (pg. 12–13).<br>  o (**Trial Tr. 1037:15–1038:3 (Martorana)** ("[S]o one way to continue authorization at a level of care is that the member still has the symptoms that got them into it in the first place, or that we understand that they—they could—that there's a good likelihood that if withdrawn, they'll deteriorate. . . . [M]ental health and substance use conditions have a high likelihood of relapse, and so the idea being that there's a clinical judgment about is this person really—he's about to relapse or it's imminent or immediate, or is this something theoretical for down the road that there's a good chance in months to years that they will.").)<br>  o **[Regarding the 2017 LOCGs]**<br>    ▪ "[Y]ou would need to define the reason for the |
| [Any] 1 | The member's psychosocial functioning has become impaired by moderate-severe symptoms of a mental health condition, and treatment cannot be adequately managed in a lower level of care.<br>******************** | | |
| [Any] 2 | The member's mood, affect or cognition has deteriorated to the extent that a higher level of care will likely be needed if intensive outpatient treatment is not provided.<br>******************** | | |
| [Any] 3 | The member has completed inpatient, residential treatment or a partial hospital/day treatment program, and requires the structure and monitoring available in an intensive outpatient program.<br>******************** | | |
| [Any] 4 | The member has a non-supportive living situation creating an environment in which the member's mental health condition is likely without the structure and support of | | |

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | the intensive outpatient program. | | immediacy of treatment depending on how acute or immediate the risk of relapse is. Because . . . if they might relapse in 6 months or 10 months, then that may not really be a good reason to keep them in a 24-hour level of care. . . . [Y]ou can't keep people indefinitely in a 24-hour monitored situation just because someday down the road they might relapse. That wouldn't be good clinical treatment." (**Trial Tr. 1026:17–1027:6 (Martorana)**.)<br>• **[Regarding Generally Accepted Standards of Care in General]**.<br>  o Matching patients to the least restrictive level of care that will provide effective treatment is "a generally standard approach" and "an important principle" because the concepts of a least restrictive level of care and of effective treatment are "equally important" principles. (**Trial Tr. 161:23–162:9 (Fishman)**.)<br>  o CMS outpatient guidelines provide that "[s]ervices are noncovered . . . where the evidence clearly establishes . . . that stability can be maintained without treatment or with less intensive treatment." (**Trial Ex. 626-0026 to -27 (Medicare Benefit Policy Manual Chapter 6, § 70 – Outpatient Hospital Psychiatric Services)**.)<br>• (**Trial Ex. 1659, at 179:17–180:6, 181:1–18 (Bonfield)**.) |
| [All] 3 | Co-occurring substance use disorders, if present, can be treated in a dual diagnosis program, or can be safely managed at this level of care. | • <u>Argument</u><br>  o Co-occurring<br>• <u>Testimony</u><br>  o Fishman: Tr. 107:20-108:24<br>  o Plakun: Tr. | • Dr. Fishman's and Dr. Plakun's testimony concerns ¶ 1.6 of the Common Criteria of the 2015 Level of Care Guidelines.<br>• **[Regarding Generally Accepted Standards of Care In General]**<br>  o "Dual diagnosis" treatment is specialized treatment that is focused on treating multiple, or co-occurring |

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | 526:14-16 | disorders.<br>○ (**Trial Tr. 147:15–19 (Fishman)** (Dual diagnosis programs focus on ASAM Dimension 3 or co-occurring conditions).)<br>• **[Regarding the 2017 LOCGs]**<br>○ "Dual diagnosis" programs can focus on co-occurring medical or behavioral health conditions, and generally have a specialized focus depending on the expertise of the practitioners.<br>○ (**Trial Tr. 1208:1–2 (Simpatico)**.)<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 6th black bullet (page 8-0007)" (pg. 176–177).<br>○ The criterion that co-occurring medical conditions can be "safely managed" is an intentional redundancy, designed to "make sure people think it through in the clinical process" and ensure that clinicians, especially new clinicians "don't forget to consider" whether co-occurring conditions can be safely managed. (**Trial Tr. 977:17–978:20 (Martorana)**.)<br>○ This criterion is in accord with generally accepted standards of care because "it speaks to . . . compiling a comprehensive understanding of a patient's current and past medical history and circumstances in order to understand how to understand the presenting picture, and it necessarily includes an understanding of their behavioral health history and any general medical conditions that they may have." (**Trial Tr. 1179:5–10 (Simpatico)**.)<br>○ "Manage" means an individual's co-occurring conditions are treated to the point where their symptoms |

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | do not interfere with the treatment of the primary diagnosis. In order for a condition to be "managed," it must also be treated effectively, if possible.<br>o (**Trial Tr. 973:16–18 (Martorana);** *see also* **Trial Tr. 975:1–2**) ("That's how you manage something; you [address the co-occurring conditions] effectively.").)<br>• **[Regarding the 2012 LOCGs]**<br>o Trial Tr. 1277:24–1278:8 (Simpatico).) Identically-worded criterion in the 2012 LOCGs "stating the obvious, that these important aspects of a person's presentation can be adequately managed at this level of care should they exist." |
| [All] 7 | The provider and, whenever possible, the member collaborate to update the treatment plan every 3 to 5 treatment days in response to changes in the member's condition, or provide compelling evidence that continued treatment in the current level of care is required to prevent acute deterioration or exacerbation of the member's current condition. | • <u>Arguments</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o Plakun: Tr. 571:3-6, 571:12-572:5 | • It is consistent with generally accepted standards of care to require the member to collaborate with the provider to update the member's treatment plan every three to five days at the intensive outpatient level of care.<br>o (**Trial Tr. 1256:14–25 (Simpatico)** (discussing 2011 IOP guidelines for substance use disorder).)<br>o (**Trial Tr. 1262:16–1263:13 (Simpatico)** (testifying that his opinion was the same for the IOP mental health guidelines).)<br>• **[Regarding the Residential Treatment Center: Mental Health Conditions section of the 2011 LOCGs]**<br>o "I think it's reasonable to take a look at your treatment plan every week, to address, you know, progress, et cetera. And that's how it's generally done in clinical practice." (**Trial Tr. 1583:19–21 (Alam)**.)<br>• **[Regarding the Continued Service Criteria section of the 2011 LOCGs]**<br>o "Clear and compelling evidence" is not a medical |

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | term.<br>○ (**Trial Tr. 137:3–5 (Fishman)** ("it would be hard to know what that would exactly mean in a clinical treatment context); *see also* **Trial Tr. 1239:2–3 (Simpatico)**.)<br>○ "Clear and compelling evidence" was not interpreted by UBH's clinicians as imposing a higher burden than ordinary clinical judgment about appropriate treatment. (**Trial Tr. 1040:5–10 (Martorana)**.) |

**C.** Outpatient: Mental Health Conditions (Ex. 1-0021 to -0022)

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| [All] 3 | Co-occurring substance use disorders, if present, are stable and are unlikely to undermine treatment of the mental health condition at this level of care. | • Argument<br>  ○ Co-occurring<br>• Testimony<br>  ○ Fishman: Tr. 107:20-108:24<br>  ○ Plakun: Tr. 526:14-16 | • Dr. Fishman's and Dr. Plakun's testimony concerns 2015 Level of Care Guidelines.<br>• **[Regarding the 2017 LOCGs]**<br>  ○ A criterion regarding a "co-occurring mental health condition" that is "likely to undermine treatment in a less intensive level of care" indicates that treatment should take place in a higher level of care.<br>  ○ (**Trial Tr. 1219:8–1220:3 (Simpatico)**.)<br>• **[Regarding the 2013 Level of Care Guidelines**]<br>  ○ A member's refusal to participate in treatment "despite appropriate levels of motivation" is an appropriate consideration in making the clinical judgment about whether to discontinue treatment. However this criterion does not disallow coverage under those circumstances. (**Trial Tr. 1294:23–1295:21 (Simpatico)**.)<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 6th black bullet (page 8-0007)" (pg. 176–177).<br>  ○ The criterion that co-occurring medical conditions can be safely managed is designed to "make sure people think it through in the clinical process" and ensure that clinicians, especially new clinicians "don't forget to consider" whether co-occurring conditions can be safely managed. (**Trial Tr. 977:17–978:20 (Martorana)**.)<br>  ○ This criterion is in accord with generally accepted standards of care because "it speaks to . . . compiling a comprehensive understanding of a patient's current and past medical history and circumstances in order to understand how to understand |

**I.C. 2011 Level of Care Guidelines (Ex. 1) | Outpatient: Mental Health Conditions (Ex. 1-0021 to -0022)**

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | the presenting picture, and it necessarily includes an understanding of their behavioral health history and any general medical conditions that they may have."(**Trial Tr. 1179:5–10 (Simpatico)**.) |
| [Consider] 2 | The member refuses further treatment or repeatedly does not adhere with recommended treatment despite the deployment of motivational enhancement interventions, peer support and other community support services. In such cases, the provider explains the risks of discontinuing treatment to the member and, as appropriate, the member's family/social supports; alternative referrals are provided in writing; and the member is provided with instructions for resuming services should the need arise in the future. | • Argument<br>  o Motivation<br>• Testimony<br>  o Fishman: Tr. 236:12-237:4, 135:10-136:15 | • Dr. Fishman's testimony concerns the Continued Service Criteria section of 2011 Level of Care Guidelines and the Outpatient: Substance Use Disorders section of the 2013 Level of Care Guidelines, and not this criterion.<br>• *See* III.F "2013 Outpatient: Substance Use Disorders, [Consider] 2" (pg. 98–99).<br>  o Treatment is not effective if the member refuses to engage. (**Trial Tr. 1295:13–21 (Simpatico)** ("Because this describes a situation where a person is by definition not engaging and actively participating in their own treatment despite appropriate levels of motivation; and, you know, at a certain point a judgment needs to be made that the person is not engaging in their own treatment, and so treatment—that's a legitimate basis to terminate treatment and to do so under—under the—by leaving the door open if the patient—person changes their mind in the future, and to give them alternatives is the correct way to do that.").)<br>• **[Regarding the 2013 LOCGs** ] This provision does not disallow coverage when a member is not engaging in the member's own treatment despite appropriate levels of motivation. Rather, it acknowledges that at a certain point judgment must be exercised to end this particular treatment and look to alternatives. (**Trial Tr. 1294:20–1295:25 (Simpatico)**.)<br>• **[Regarding the 2015 LOCGs**] "[I]f a member is—that has capacity is unwilling or unable to participate in their own |

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | treatment after an adequate attempt to motivate them and engage them, then by definition they're not capable of participating in active treatment and there wouldn't be a medical necessity to continue treatment." (**Trial Tr. 1333:8–13 (Simpatico)**.)<br>• **[Regarding the 2017 Level of Care Guidelines]**<br>  ○ This criterion ensures that treatment will address a member's condition or suffering by ensuring that the member is willing and able to participate in treatment. (**Trial Tr. 995:21–996:21 (Martorana)**; (**Trial Tr. 1198:16–1199:16 (Simpatico)**.)<br>• **[Regarding Generally Accepted Standards of Care Generally]**<br>  ○ **Trial Ex. 656-0033 (Medicare Benefit Policy Manual, Chapter 6, § 70.3 "Partial Hospitalization Services")** (it is "reasonably necessary" to deny coverage where the member "cannot, or refuse[s], to participate (due to their behavioral or cognitive status) with active treatment of their mental disorder (except for a brief admission necessary for diagnostic purposes), or . . . cannot tolerate the intensity of PHP.") |

**D.** Residential Treatment Center: Mental Health Conditions (Ex. 1-0026 to -0028)

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| <br><br><br>[Any] 1<br><br><br><br><br><br><br>[Any] 2<br><br><br><br><br><br><br><br><br><br>[Any] 3 | Any one of the following criteria must be met…<br>*************************<br>The member's psychosocial functioning has deteriorated to the degree that the member is at risk for being unable to safely and adequately care for themselves in the community.<br>*************************<br>The member is experiencing a disturbance in mood, affect or cognition resulting in behavior that cannot be safely managed in a less restrictive setting. (This criterion is not intended for use solely as a long-term solution to maintain the stabilization acquired during treatment in a residential facility/program.)<br>*************************<br>There is an imminent risk of deterioration in the member's functioning due to the presence of severe, multiple and complex psychosocial stressors that are significant enough to undermine treatment at a lower level of care. | • Plaintiffs' <u>do not</u> challenge criteria "Any" 1 and "Any" 4.<br>******************<br>**"Any" 2**<br>• <u>Arguments</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>o Maintenance of Function<br>• <u>Testimony</u><br>o Plakun: Tr. 572:12-573:16<br>******************<br>**"Any" 3**<br>• <u>Arguments</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>o Maintenance of Function<br>• <u>Testimony</u><br>Plakun: Tr. 572:12-13, 572:16-17, 573:3-16 | • Plaintiffs fail to offer proof that these alternative criteria, when considered together, deviate from generally accepted standards of care.<br>o "[N]umber 1 is quite broad. So I think it's—I'd be hard pressed to think of an example that's appropriate that doesn't fit into one of these criteria." (**Trial Tr. 1260:12–14 (Simpatico)**.)<br>• (**Trial Tr. 1258:16–1259:1 (Simpatico)**.) ("Well, it says: 'The member is experiencing a disturbance in mood, affect or cognition resulting in behavior that cannot be safely managed in a less restrictive setting.' That's the essence of the determination. And then it goes on to say: 'This criterion is not intended for use solely as a long-term solution to maintain the stabilization.' It's a caveat against using residential treatment centers inappropriately after the—the assessment and the stabilization phase has occurred.")<br>• "Any" 3 allows a provider "to reasonably conclude that it is the presence or absence of a particular level of care that is causal about whether or not deterioration will happen." (**Trial Tr. 1259:25–1260:2 (Simpatico)**.)<br>• *See* I.A.2. "2011 Common Criteria, Continued Service Criteria ¶ 2" (pg. 12–13).<br>o (**Trial Tr. 1037:15–1038:3 (Martorana)** ("[S]o one way to continue authorization at a level of care is that the member still has the symptoms that got them into it in the first place, or that we understand that they—they could—that there's a good likelihood that if withdrawn, they'll deteriorate. . . . [M]ental health and substance |

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| [Any] 4 | (This criterion is not intended for use solely as a long-term solution to maintain the stabilization acquired during treatment in a residential facility/program.)<br>**************************<br>A lower level of care in which a member may be effectively treated is unavailable, an intensified schedule of ambulatory care or a change in the treatment plan has not proven effective, or community support services that might augment ambulatory mental health services and pre-empt the need for Residential Treatment are unavailable, insufficient or inadequate. | | use conditions have a high likelihood of relapse, and so the idea being that there's a clinical judgment about is this person really—he's about to relapse or it's imminent or immediate, or is this something theoretical for down the road that there's a good chance in months to years that they will.").)<br>o **[Regarding the 2017 LOCGs]** "[Y]ou would need to define the reason for the immediacy of treatment depending on how acute or immediate the risk of relapse is. Because . . . if they might relapse in 6 months or 10 months, then that may not really be a good reason to keep them in a 24-hour level of care. . . . [Y]ou can't keep people indefinitely in a 24-hour monitored situation just because someday down the road they might relapse. That wouldn't be good clinical treatment." (**Trial Tr. 1026:17–1027:6 (Martorana)**.)<br>• **[Regarding Generally Accepted Standards of Care in General]**.<br>o Matching patients to the least restrictive level of care that will provide effective treatment is "a generally standard approach" and "an important principle" because the concepts of a least restrictive level of care and of effective treatment are "equally important" principles. **(Trial Tr. 162:3–9 (Fishman)**.)<br>o CMS outpatient guidelines provide that "[s]ervices are noncovered . . . where the evidence clearly establishes . . . that stability can be maintained without treatment or with less intensive treatment." (**Trial Ex. 626-0026 to -27 (Medicare Benefit Policy Manual Chapter 6, § 70 – Outpatient Hospital Services)**.) |

**I.D. 2011 Level of Care Guidelines (Ex. 1) | Residential Treatment Center: Mental Health Conditions (Ex. 1-0026 to -0028)**

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | ○ (**Trial Ex. 1659, at 179:17–180:6, 181:1–18 (Bonfield)**.) |
| [All] 2(a) | Within 48 hours of admission, the following occurs:<br>a. A psychiatrist completes a comprehensive evaluation of the member. | • <u>Arguments</u><br>○ Acuity<br>• <u>Testimony</u><br>○ Fishman: Tr. 142:15-143:10<br>○ Alam: Tr. 1586:19-1587:21 | • **[Regarding the 2011 LOCGs for Residential Rehabilitation: Substance Use Disorders section of the 2011 Level of Care Guidelines]**<br>○ "It is prudent to have a physician see a patient in a setting which requires 24-hour confinement. It really is the community standard. It is the expectation that a patient will be seen by a physician as promptly as possible." (**Trial Tr. 1582:8–10 (Alam)**.) |
| [All] 3 | Subsequent psychiatric evaluations and consultations are available 24 hours a day. Visits with the treating psychiatrist occur at least 2 times per week. | • <u>Argument</u><br>○ Acuity<br>• <u>Testimony</u><br>○ Fishman: Tr. 142:15-143:10<br>○ Alam: Tr. 1586:19-1587:21 | • **[Regarding the 2012 LOCGs for Residential Rehabilitation: Substance Use Disorders]**<br>○ "The expectation that a patient in a 24-hour confinement is seen by a physician a couple of times a week is reasonable and generally followed in the community." (**Trial Tr. 1588:9–22 (Alam)**.) |

**I.D. 2011 Level of Care Guidelines (Ex. 1) | Residential Treatment Center: Mental Health Conditions (Ex. 1-0026 to -0028)**

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| [All] 4 | All relevant general medical services, including assessment and diagnostic, treatment, and consultative services are available as needed and provided with an urgency commensurate with the member's medical need. Co-occurring medical conditions can be safely treated in this level of care. | • Argument<br>  ○ Co-occurring<br>• Testimony<br>  ○ Fishman: Tr. 221:23-223:23 | • **[Regarding the 2012 LOCGs for Residential Treatment Facility: Substance Use Disorders]**<br>  ○ "This is really speaking to co-morbid conditions that a patient may have, and the need for treating these co-morbid conditions… . The expectation that someone in a 24-hour confinement is seen by a physician, their medical conditions are actively treated; that's consistent." (**Trial Tr. 1589:13–1590:10 (Alam)**.)<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 6th black bullet (page 8-0007)" (pg. 176–177).<br>  ○ The criterion that co-occurring medical conditions can be "safely managed" is an intentional redundancy, designed to "make sure people think it through in the clinical process" and ensure that clinicians, especially new clinicians "don't forget to consider" whether co-occurring conditions can be safely managed. (**Trial Tr. 977:17–978:20 (Martorana)**.)<br>  ○ This criterion is in accord with generally accepted standards of care because "it speaks to . . . compiling a comprehensive understanding of a patient's current and past medical history and circumstances in order to understand how to understand the presenting picture, and it necessarily includes an understanding of their behavioral health history and any general medical conditions that they may have."(**Trial Tr. 1179:5–10 (Simpatico)**.)<br>  ○ "Manage" means an individual's co-occurring conditions are treated to the point where their symptoms do not interfere with the treatment of the primary diagnosis. In order for a condition to be "managed," it |

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | must also be treated effectively, if possible. (**Trial Tr. 973:16–18 (Martorana);** ***see also*** **Trial Tr. 975:1–2**)("That's how you manage something; you [consider whether co-occurring conditions can be effectively addressed at the level of care].") |

**E.** Intensive Outpatient Program: Substance Use Disorders (Ex. 1-0042 to -0045)

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| <br><br><br>[Any] 1<br><br><br><br><br>[Any] 2<br><br><br><br><br>[Any] 3<br><br><br><br><br>[Any] 4 | Any one of the following criteria must be met…<br>******************************<br>The member continues to use substances despite appropriate motivation, peer support such as can be provided in an organized sobriety group, and an adequate trial of routine outpatient care.<br>******************************<br>The member's psychosocial functioning has become impaired by moderate-severe symptoms of a substance use disorder, and treatment cannot be safely managed in a less intensive level of care.<br>******************************<br>The member's mood, affect or cognition has deteriorated to the extent that a higher level of care will likely be needed if treatment in an intensive outpatient program is not provided<br>******************************<br>The member's symptoms have deteriorated to the extent that there is a likelihood of imminent relapse if treatment is not provided in an | • Plaintiffs' <u>do not</u> challenge criteria "Any" 5, and 6.<br>********************<br>**"Any" 1**<br>• <u>Arguments</u><br>o Acuity<br>o Motivation<br>• <u>Testimony</u><br>o Fishman: Tr. 145:8-21<br>********************<br>**"Any" 2**<br>• <u>Arguments</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o Fishman: Tr. 145:8-12, 145:22-146:4<br>********************<br>**"Any" 3**<br>• <u>Arguments</u> | • Plaintiffs fail to offer proof that these alternative criteria, when considered together, deviate from generally accepted standards of care.<br>• "[Criteria 1, 2, and 3] are defining the appropriateness of—of intensity of services in the context of not being able to—care not being able to successfully be provided at the next lower level of intensity . . . without requiring a fail first model. . . . [In conjunction with 4, 5, and 6,] these are worded in such a way that I think it would be—would take a fair amount of thinking to come up with a scenario that would not be able to be understood in terms of one of these scenarios." (**Trial Tr. 1252:9–24 (Simpatico)**.)<br>• *See* I.A.2. "2011 Common Criteria, Continued Service Criteria ¶ 2" (pg. 12–13).<br>o (**Trial Tr. 1037:15–1038:3 (Martorana)** ("[S]o one way to continue authorization at a level of care is that the member still has the symptoms that got them into it in the first place, or that we understand that they—they could—that there's a good likelihood that if withdrawn, they'll deteriorate. . . . [M]ental health and substance use conditions have a high likelihood of relapse, and so the idea being that there's a clinical judgment about is this person really—he's about to relapse or it's imminent or immediate, or is this something theoretical for down the road that there's a good chance in months to years that they will.").)<br>o **[Regarding the 2017 LOCGs]** "[Y]ou would need to define the reason for the immediacy of treatment |

**I.E. 2011 Level of Care Guidelines (Ex. 1) | Intensive Outpatient Program: Substance Use Disorders (Ex. 1-0042 to -0045)**

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| <br><br>[Any] 5<br><br><br><br><br><br><br>[Any] 6 | intensive outpatient program.<br>******************************<br>The member has completed inpatient, residential treatment or a partial hospital/day treatment program, and requires the structure and monitoring available in an intensive outpatient program.<br>******************************<br>The member has a non-supportive or unstable living situation creating an environment in which the member is unlikely to remain sober without the structure and support of the intensive outpatient program. | ◦ Acuity<br>• Testimony<br>◦ Fishman: Tr. 145:8-12, 146:5-13<br>*********************<br>**"Any" 4**<br>• Arguments<br>◦ Acuity<br>◦ Drive Toward Lower Levels of Care<br>• Testimony<br>◦ Fishman: Tr. 225:19-226:13 | depending on how acute or immediate the risk of relapse is. Because . . . if they might relapse in 6 months or 10 months, then that may not really be a good reason to keep them in a 24-hour level of care. . . . [Y]ou can't keep people indefinitely in a 24-hour monitored situation just because someday down the road they might relapse. That wouldn't be good clinical treatment." (**Trial Tr. 1026:17–1027:6 (Martorana)**.)<br>• **[Regarding Generally Accepted Standards of Care in General]**.<br>◦ Matching patients to the least restrictive level of care that will provide effective treatment is "a generally standard approach" and "an important principle" because the concepts of a least restrictive level of care and of effective treatment are "equally important" principles. (**Trial Tr. 162:3–9 (Fishman)**.)<br>◦ CMS outpatient guidelines provide that "[s]ervices are noncovered . . . where the evidence clearly establishes . . . that stability can be maintained without treatment or with less intensive treatment." (**Trial Ex. 626-0026 to -27 (Medicare Benefit Policy Manual Chapter 6, § 70 – Outpatient Hospital Services)**.)<br>• (**Trial Ex. 1659, at 179:17–180:6, 181:1–18 (Bonfield)**.) |
| [All] 3 | Co-occurring medical conditions, if any, can be safely managed in an outpatient setting. | • Arguments<br>◦ Co-occurring<br>• Testimony<br>◦ Fishman: Tr. | • Dr. Fishman's testimony concerns the 2015 Level of Care Guidelines.<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 6th black bullet (page 8-0007)" (pg. 176–177). |

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | 107:20-108:24 | ○ The criterion that co-occurring medical conditions can be "safely managed" is an intentional redundancy, designed to "make sure people think it through in the clinical process" and ensure that clinicians, especially new clinicians "don't forget to consider" whether co-occurring conditions can be safely managed. (**Trial Tr. 977:17–978:20 (Martorana)**.)<br>○ This criterion is in accord with generally accepted standards of care because "it speaks to . . . compiling a comprehensive understanding of a patient's current and past medical history and circumstances in order to understand how to understand the presenting picture, and it necessarily includes an understanding of their behavioral health history and any general medical conditions that they may have."(**Trial Tr. 1179:5–10 (Simpatico)**.)<br>○ "Manage" means an individual's co-occurring conditions are treated to the point where their symptoms do not interfere with the treatment of the primary diagnosis. In order for a condition to be "managed," it must also be treated effectively, if possible.<br>○ (**Trial Tr. 973:16–18 (Martorana);** *see also* **Trial Tr. 975:1–2**)("That's how you manage something; you [consider whether co-occurring conditions can be effectively addressed at the level of care].").) |
| [All] 4 | Co-occurring mental health conditions, if any can be managed in a dual diagnosis program, or can be | • <u>Arguments</u><br>○ Co-occurring<br>• <u>Testimony</u> | • Dr. Fishman's and Dr. Plakun's testimony concerns the 2015 LOCGs.<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, |

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | safely managed at this level of care. | ○ Fishman: Tr. 107:20-108:24<br>○ Plakun: Tr. 526:14-16. | 6th black bullet (page 8-0007)" (pg. 176–177).<br>○ The criterion that co-occurring medical conditions can be "safely managed" is an intentional redundancy, designed to "make sure people think it through in the clinical process" and ensure that clinicians, especially new clinicians "don't forget to consider" whether co-occurring conditions can be safely managed. (**Trial Tr. 977:17–978:20 (Martorana)**.)<br>○ This criterion is in accord with generally accepted standards of care because "it speaks to . . . compiling a comprehensive understanding of a patient's current and past medical history and circumstances in order to understand how to understand the presenting picture, and it necessarily includes an understanding of their behavioral health history and any general medical conditions that they may have."(**Trial Tr. 1179:5–10 (Simpatico)**.)<br>○ "Manage" means an individual's co-occurring conditions are treated to the point where their symptoms do not interfere with the treatment of the primary diagnosis. In order for a condition to be "managed," it must also be treated effectively, if possible. (**Trial Tr. 973:16–18 (Martorana);** *see also* **Trial Tr. 975:1–2** ("That's how you manage something; you [consider whether co-occurring conditions can be effectively addressed at the level of care]."").) |
| [All] 5 | The member or his/her family/social support system understands and can | • <u>Arguments</u><br>○ Motivation | • This criterion does not prevent treatment if the family or other aspects of the social support system cannot comply |

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | comply with the requirements of an IOP, or the member is likely to participate in treatment with the structure and supervision afforded by an IOP. | • Testimony<br>○ Fishman: Tr. 146:17-147:9 | with or understand the Intensive Outpatient program.<br>○ (**Trial Tr. 1253:18–1254:1 (Simpatico)** ("Well, it makes the—it takes into account the possibility that a person—the patient, or the identified patient, may not be ready, willing and able to avail themselves of services, and there may be a bit of an intervention and support of their support system to get them in, in the hopes that there would be ample motivational opportunity to get them to engage in treatment. Or the patient may be willing and able to engage in treatment from the get-go. And this anticipates both possibilities.").)<br>• *See* III.F "2013 Outpatient: Substance Use Disorders, [Consider] 2" (pg. 98–99).<br>○ Treatment is not effective if the member refuses to engage. (**Trial Tr. 1295:13–21 (Simpatico)**.) ("Because this describes a situation where a person is by definition not engaging and actively participating in their own treatment despite appropriate levels of motivation; and, you know, at a certain point a judgment needs to be made that the person is not engaging in their own treatment, and so treatment—that's a legitimate basis to terminate treatment and to do so under—under the—by leaving the door open if the patient—person changes their mind in the future, and to give them alternatives is the correct way to do that.").)<br>• **[Regarding the 2015 LOCGs]** "[I]f a member is—that has capacity is unwilling or unable to participate in their own treatment after an adequate attempt to motivate them and |

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | engage them, then by definition they're not capable of participating in active treatment and there wouldn't be a medical necessity to continue treatment." (**Trial Tr. 1333:8–13 (Simpatico)**.)<br>• **[Regarding the 2017 LOCGs]**<br>  ○ This criterion ensures that treatment will address a member's condition or suffering by ensuring that the member is willing and able to participate in treatment. (**Trial Tr. 995:21–996:21 (Martorana)**; (**Trial Tr. 1198:16–1199:16 (Simpatico)**.)<br>• **[Regarding Generally Accepted Standards of Care Generally]**<br>  ○ (**Trial Ex. 656-0033** (Medicare Benefit Policy Manual, Chapter 6, § 70.3 "Partial Hospitalization Services") (it is "reasonably necessary" to deny coverage where the member "cannot, or refuse[s], to participate (due to their behavioral or cognitive status) with active treatment of their mental disorder (except for a brief admission necessary for diagnostic purposes), or . . . cannot tolerate the intensity of PHP.").) |
| [All] 6(a) | Within the first 3 days of treatment, the following should occur: (a) A psychiatrist completes a comprehensive evaluation of the member when the member has been directly admitted from an inpatient setting. | • <u>Argument</u><br>  ○ Acuity<br>• <u>Testimony</u><br>  ○ Fishman: Tr. 147:10-12, 147:24-148:2 | • It is reasonable to perform an assessment on someone within three days of them being admitted into an intensive outpatient program.<br>  ○ (**Trial Tr. 1255:3–6 (Simpatico)** ("Well, again, we're talking about intensive outpatient program. And, you know, the 'i' does stand for intensive. And doing an assessment within three days of someone being admitted directly from an impatient setting is quite reasonable.").) |

**I.E. 2011 Level of Care Guidelines (Ex. 1) | Intensive Outpatient Program: Substance Use Disorders (Ex. 1-0042 to -0045)**

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| [All] 8 | The provider and, whenever possible, the member collaborate to update the treatment plan every 3 to 5 treatment days in response to changes in the member's condition, or provide compelling evidence that continued treatment in the current level of care is required to prevent acute deterioration or exacerbation of the member's current condition. | • <u>Arguments</u><br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  ○ Fishman: Tr. 148:3-19 | • **[Regarding the 2012 LOCGs for Residential Treatment Center: Mental Health Conditions]** Updating a treatment plan on at least a weekly basis is the generally accepted standard of care.<br>  ○ (**Trial Tr. 1617:4–8 (Alam)** ("That, you know, the expectation that you take a look at how the patient is doing and update the treatment plan at least on a weekly basis, I believe that's the standard of care.").)<br>• **[Regarding the Continued Service Criteria section of the 2011 LOCGs]**<br>  ○ "Clear and compelling evidence" is not a medical term.<br>  ○ (**Trial Tr. 137:3–5 (Fishman)** ("it would be hard to know what that would exactly mean in a clinical treatment context); *see also* **Trial Tr. 1239:2–3 (Simpatico)**.)<br>  ○ "Clear and compelling evidence" was not interpreted by UBH's clinicians as imposing a higher burden than ordinary clinical judgment about appropriate treatment. (**Trial Tr. 1040:5–10 (Martorana)**.) |

**F.** Outpatient: Substance Use Disorders (Ex. 1-0046 to -0048)

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| [Any] 1<br><br>[Any] 2 | Any one of the following criteria must be met . . .<br>********************<br>The member's use of alcohol or drugs meets criteria for a substance use disorder.<br>********************<br>Lapse has occurred or is imminent, and treatment is needed to maintain/regain abstinence. | • Plaintiffs <u>do not</u> challenge criterion "Any" 1.<br>***********************<br>**"Any" 2**<br>• <u>Argument</u><br>  ○ Acuity<br>• <u>Testimony</u><br>  ○ Fishman: Tr. 148:20-149:16 | • Plaintiffs fail to offer proof that these alternative criteria, when considered together, deviate from generally accepted standards of care.<br>• "Well, I think, number one [of the "Any" criteria] is essentially the definition of who would be eligible to be appropriate for an outpatient substance use disorder program. And two is actually superfluous. So, I think, 'The member's use of alcohol or drugs meets criteria for a substance use disorder,' that is a pretty inclusive criteria." (**Trial Tr. 1257:16–21 (Simpatico)**.) |
| [All] 3 | Co-occurring mental health conditions, if present, are stable and are unlikely to undermine treatment of the substance use disorder at this level of care. | • <u>Argument</u><br>  ○ Co-occurring<br>• <u>Testimony</u><br>  ○ Fishman: Tr. 107:20-108:24 | • Dr. Fishman's testimony concerns the 2015 Level of Care Guidelines<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 6th black bullet (page 8-0007)" (pg. 176–177).<br>  ○ The criterion that co-occurring medical conditions can be safely managed is designed to "make sure people think it through in the clinical process" and ensure that clinicians, especially new clinicians "don't forget to consider" whether co-occurring conditions can be safely managed. (**Trial Tr. 977:17–978:20 (Martorana)**.)<br>  ○ This criterion is in accord with generally accepted standards of care because "it speaks to . . . compiling a comprehensive understanding of a patient's current and past medical history and circumstances in order |

**I.F. 2011 Level of Care Guidelines (Ex. 1) | Outpatient: Substance Use Disorders (Ex. 1-0046 to -0048)**

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | to understand how to understand the presenting picture, and it necessarily includes an understanding of their behavioral health history and any general medical conditions that they may have."(**Trial Tr. 1179:5–10 (Simpatico)**.) |
| [Consider] 2 | The member refuses further treatment or repeatedly does not adhere with recommended treatment despite motivational support from the provider, peer support and other community support services. In such cases, the provider explains the risks of discontinuing treatment to the member and, as appropriate, the member's family/social supports, alternative referrals are provided in writing, and the member is provided with instructions for resuming services should the need arise in the future. | • <u>Argument</u><br>  ○ Motivation<br>• <u>Testimony</u><br>  ○ Fishman: Tr. 236:12-237:4, 135:10-136:15 | • Dr. Fishman's testimony concerns the Continued Service section of the 2011 Level of Care Guidelines and the Outpatient: Substance Use Disorders section of the 2013 Level of Care Guidelines.<br>• *See* III.F "2013 Outpatient: Substance Use Disorders, [Consider] 2" (pg. 98–99).<br>  ○ Treatment is not effective if the member refuses to engage. (**Trial Tr. 1295:13–21 (Simpatico)**.) ("Because this describes a situation where a person is by definition not engaging and actively participating in their own treatment despite appropriate levels of motivation; and, you know, at a certain point a judgment needs to be made that the person is not engaging in their own treatment, and so treatment—that's a legitimate basis to terminate treatment and to do so under—under the—by leaving the door open if the patient—person changes their mind in the future, and to give them alternatives is the correct way to do that.").)<br>• **[Regarding the 2015 LOCGs]**<br>  ○ "[I]f a member is—that has capacity is unwilling or unable to participate in their own treatment after an adequate attempt to motivate them and engage them, then by definition they're not capable of participating in active treatment and there wouldn't be a medical |

**I.F. 2011 Level of Care Guidelines (Ex. 1) | Outpatient: Substance Use Disorders (Ex. 1-0046 to -0048)**

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | necessity to continue treatment." (**Trial Tr. 1333:8–13 (Simpatico)**.)<br>• **[Regarding the 2017 LOCGs]**<br>○ This criterion ensures that treatment will address a member's condition or suffering by ensuring that the member is willing and able to participate in treatment. (**Trial Tr. 995:21–996:21 (Martorana)**; **(Trial Tr. 1198:16–1199:16 (Simpatico)**.)<br>• **[Regarding Generally Accepted Standards of Care Generally]**<br>○ (**Trial Ex. 656-0033 (Medicare Benefit Policy Manual, Chapter 6, § 70.3 "Partial Hospitalization Services")** (it is "reasonably necessary" to deny coverage where the member "cannot, or refuse[s], to participate (due to their behavioral or cognitive status) with active treatment of their mental disorder (except for a brief admission necessary for diagnostic purposes), or . . . cannot tolerate the intensity of PHP.").) |

## G. Residential Rehabilitation: Substance Use Disorders (Ex. 1-0056 to -0059)

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Intro | Residential rehabilitation is comprised of acute overnight services… | • Argument<br>  ○ Acuity<br>• Testimony<br>  ○ Fishman: Tr. 281:1-6 | • Dr. Fishman's testimony concerns the March 27, 2017 version of the Custodial Care Coverage Determination Guideline.<br>• This preamble is consistent with generally accepted standards of care because it accurately describes the instances when residential rehabilitation treatment is appropriate.<br>  ○ (**Trial Tr. 1244:25–1245:12 (Simpatico)** ("[I]t's a description of the place in the continuum of services that residential rehab programs play. . . . So it has ruled out a more—the need for a more restrictive intensive level of service in a hospital but says that in order to meet these clinical needs, this would be the—would be deemed the appropriate level of intensity of services.").) |
| <br><br>[Any] 1<br><br><br><br><br><br>[Any] 2 | Any one of the following criteria must be met …<br>******************************<br>The member continues to use substances despite appropriate motivation and recent treatment in an intensive outpatient program or partial hospital/day treatment program.<br>******************************<br>The member continues to use substances, and the member's functioning has deteriorated to the | **"Any" 1**<br>• Argument<br>  ○ Acuity<br>  ○ Motivation<br>• Testimony<br>  ○ Fishman: Tr. 138:1-16, 140:1-23<br>*************************<br>**"Any" 2**<br>• Argument<br>  ○ Acuity | • The "any" criteria allow for treatment when *any* of the criteria are met.<br>  ○ (**Trial Tr. 1245:21–22 (Simpatico)** ("Well, it's listing—it says any one is appropriate. And there's a number that are clearly appropriate.").)<br>• The criterion contained in the "any" criteria are vaguely worded, making it unlikely that a member would not satisfy a single criterion.<br>  ○ (**Trial Tr. 1249:8–12 (Simpatico)** ("Well, they are… fairly vaguely worded so that . . . I would have to think a bit about a circumstance that I wouldn't be able to conceptualize that warranted admission to a residential rehab level of care that couldn't be |

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| [Any] 3<br><br>]Any] 4<br><br>[Any] 5<br><br>[Any] 6 | point that the member cannot be safely treated in a less restrictive level of care.<br>******************************<br>The member continues to use substances, is at risk of exacerbating a serious co-occurring medical condition, and cannot be safely treated in a lower level of care.<br>******************************<br>The member is at risk of developing withdrawal symptoms which cannot be safely treated in a lower level of care.<br>******************************<br>Severe impairment in the member's family or social support system has heightened the risk that the member will use substances if not in residential rehabilitation.<br>******************************<br>The member is experiencing withdrawal symptoms that do not compromise the member's medical status, but are of extreme subjective severity accompanied by the lack of resources or functional social supports to manage the symptoms. | ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>○ Fishman: Tr. 138:22-139:13, 140:1-23<br>*************************<br>**"Any" 3**<br>• <u>Argument</u><br>○ Acuity<br>○ Co-occurring<br>○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>○ Fishman: Tr. 138:22-139:20, 140:1-23<br>***************************<br>**"Any" 4**<br>• <u>Arguments</u><br>○ Acuity<br>○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>○ Fishman: Tr. | understood in one of these conditions.").)<br>• Moving a member to a more intense level of care is appropriate when properly provided care at a lower level is not effective.<br>○ (**Trial Tr. 1246:11–17 (Simpatico)** ("[I]t implies or says that the—the services made available in the intensive outpatient program were provided in a manner that one could determine they were provided correctly to the extent that one could determine that that level of care was insufficient . . . to meet the needs of the patient; and, therefore, it would be reasonable to move them to a higher level of care.").)<br>• Criterion "Any" 1 is not a fail-first criterion.<br>○ (**Trial Tr. 1246:23–1247:3 (Simpatico)**.) ("Well, it would only be fail first if there was an expectation that they necessarily had to go to a lower level, demonstrate that that wasn't sufficient before entering the higher level. This does not in any way instruct someone necessarily has to go to a lower level before going to a higher level.").)<br>• Criterion "Any" 2 is consistent with generally accepted standards of care—it simply notes that a member continues to use substances and cannot be treated in a less restrictive level of care. (**Trial Tr. 1247:4–15 (Simpatico)**.)<br>• Criterion "Any" 3 explicitly considers co-occurring conditions and speaks to the need for a certain intensity of service if that co-occurring condition is going to exacerbate a substance use disorder or the substance use disorder will interfere with the treatment of the co-occurring condition. (**Trial Tr. 1247:16–1248:2 (Simpatico)**.) |

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | 138:22-139:13, 140:1-23<br>****************************<br>**"Any" 5**<br>• <u>Argument</u><br>o Acuity<br>• <u>Testimony</u><br>o Fishman: Tr. 141:20-142:14, 140:1-23<br>****************************<br>**"Any" 6**<br>• <u>Arguments</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o Fishman: Tr. 138:22-139:20, 140:1-23 | • Criteria "Any" 4, 5, and 6 are also consistent with generally accepted standards of care and reinforces that residential rehabilitation is the appropriate level of care. (**Trial Tr. 1248:3–1249:1 (Simpatico)**.)<br>• *See* I.A.2. 2011 Common Criteria, Continued Service Criteria ¶ 2:<br>o (**Trial Tr. 1037:15–1038:3 (Martorana)** ("[S]o one way to continue authorization at a level of care is that the member still has the symptoms that got them into it in the first place, or that we understand that they—they could—that there's a good likelihood that if withdrawn, they'll deteriorate. . . . [M]ental health and substance use conditions have a high likelihood of relapse, and so the idea being that there's a clinical judgment about is this person really—he's about to relapse or it's imminent or immediate, or is this something theoretical for down the road that there's a good chance in months to years that they will.").)<br>o **[Regarding the 2017 Level of Care Guidelines]** "[Y]ou would need to define the reason for the immediacy of treatment depending on how acute or immediate the risk of relapse is. Because . . . if they might relapse in 6 months or 10 months, then that may not really be a good reason to keep them in a 24-hour level of care. . . . [Y]ou can't keep people indefinitely in a 24-hour monitored situation just because someday down the road they might relapse. That wouldn't be good clinical treatment." (**Trial Tr. 1026:17–1027:6 (Martorana)**.)<br>• **[Regarding Generally Accepted Standards of Care in** |

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | **General]**.<br>o Matching patients to the least restrictive level of care that will provide effective treatment is "a generally standard approach" and "an important principle" because the concepts of a least restrictive level of care and of effective treatment are "equally important" principles. (**Trial Tr. 162:3–9 (Fishman)**.)<br>o CMS outpatient guidelines provide that "[s]ervices are noncovered . . . where the evidence clearly establishes . . . that stability can be maintained without treatment or with less intensive treatment." (**Trial Ex. 626-0026 to -27 (Medicare Benefit Policy Manual Chapter 6, § 70 – Outpatient Hospital Services)**.)<br>• *See* VIII.G "2017 Residential Rehabilitation: Substance-Related Disorders":<br>o (**Trial Tr. 1218:21–1219:5 (Simpatico)** ("Means that it's in the judgment of the clinicians working with the person that it's felt that if the person were to be moved to a less restrictive level of care, the fact that they no longer were in the current level of care, in this case residential rehab, would have a causal effect on their recisdivating [sic]. And the time element refers to there being a short enough time frame to be able to conclude that the active ingredient or the reason why a person recidivates is a fact more than likely attributable to the level of service.").)<br>o (**Trial Tr. 1221:7–1222:10 (Simpatico)**.) This criterion is consistent with the ASAM provision |

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | stating that "[i]ndividuals are transferred to less intensive levels of care at the point that they have established sufficient skills to safely continue treatment without the immediate risk of relapse, continued use or other continued problems, and are no longer in imminent danger of harm to themselves or others." (**Trial Ex. 662-0136** (ASAM Criteria)<br>o This criterion also provides for the treatment of co-occurring conditions. (**Trial Tr. 1219:6–1220:7 (Simpatico)**.)<br>o Dr. Fishman applauded the inclusion of the phrase "or current" in this criterion. (**Trial Tr. 272:9–11 (Fishman)**.) |
| [All] 2.a. | Within 48 hours of admission, the following occurs:<br>a. A psychiatrist/ addictionologist completes a comprehensive evaluation of the member. | • <u>Argument</u><br>o Acuity<br>• <u>Testimony</u><br>o Fishman: Tr. 142:15-143:10<br>o Alam: Tr. 1586:19-1587:21 | • "It is prudent to have a physician see a patient in a setting which requires 24-hour confinement. It really is the community standard. It is the expectation that a patient will be seen by a physician as promptly as possible." (**Trial Tr. 1582:8–10 (Alam)**.) |
| [All] 3 | Subsequent psychiatric evaluations and consultations are available 24 hours a day. Visits with the treating psychiatrist/ addictionologist occur at least 2 times per week. | • <u>Argument</u><br>o Acuity<br>• <u>Testimony</u><br>o Fishman: Tr. 142:24-144:23<br>o Alam: Tr. | • "I think it's reasonable to take a look at your treatment plan every week, to address, you know, progress, et cetera. And that's how it's generally done in clinical practice." (**Trial Tr. 1583:19–21 (Alam)**.) |

**I.G. 2011 Level of Care Guidelines (Ex. 1) | Residential Rehabilitation: Substance Use Disorders (Ex. 1-0056 to -0059)**

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | 1586:19-1587:21 | |
| [All] 4 | All relevant general medical services, including assessment and diagnostic, treatment, and consultative services are available as needed and provided with an urgency that is commensurate with the member's medical need. Co-occurring medical conditions can be safely treated in this level of care. | • <u>Arguments</u><br>o Acuity<br>o Co-occurring<br>• <u>Testimony</u><br>o Fishman: Tr. 221:23-223:23 | • Dr. Fishman's testimony concerns the 2012 Level of Care Guidelines.<br>• *See* II.G "2012 Residential Rehabilitation: Substance Use Disorders, [All] 4" (pg. 74–75).<br>o (**Trial Tr. 1274:3–1274:5 (Simpatico)** ("[I]t's commensurate with having 24-hour access to physicians and for the nature of an instability of the presentations that are treated at this level.").)<br>o This criterion does not require a physician to be onsite at all times. (**Trial Tr. 1589:11–1591:6 (Alam)**.) |
| [All] 5 | The treating psychiatrist/addictionologist and, whenever possible, the member collaborate to update the treatment plan at least every 5 days in response to changes in the member's condition, or provide compelling evidence that continued treatment in the current level of care is required to prevent acute deterioration or exacerbation of the member's current condition… | • <u>Arguments</u><br>o Acuity<br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o Fishman: Tr. 142:24-144:23<br>o Alam: | • Dr. Fishman's testimony concerns ¶ 2.a of the Residential Rehabilitation: Substance Use Disorders section of the 2011 Level of Care Guidelines.<br>• The update requirement "[is] a reasonable amount of time for the level of intensity of the services being provided." (**Trial Tr. 1250:23–24 (Simpatico)**.)<br>o (**Trial Tr. 1583:19–21 (Alam)** ("[I]t's reasonable to take a look at your treatment plan every week, to address, you know, progress, et cetera. And that's how it's generally done in clinical practice.").)<br>• **[Regarding the Continued Service Criteria section of the 2011 LOCGs]** "Clear and compelling evidence" is not a medical term.<br>o (**Trial Tr. 137:3–5 (Fishman)** ("it would be hard to know what that would exactly mean in a clinical |

**I.G. 2011 Level of Care Guidelines (Ex. 1) | Residential Rehabilitation: Substance Use Disorders (Ex. 1-0056 to -0059)**

| ¶ | Criterion | Plaintiffs' Position And Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | 1582:24-1583:9; 1584:1-6; 1584:11-13 | treatment context); *see also* **Trial Tr. 1239:2–3 (Simpatico)**.)<br>○ "Clear and compelling evidence" was not interpreted by UBH's clinicians as imposing a higher burden than ordinary clinical judgment about appropriate treatment. (**Trial Tr. 1040:5–10 (Martorana)**.) |

**II.** 2012 Level of Care Guidelines (Ex. 2)

**A.** Common Criteria (Ex. 2-0006 to -0009 & Ex. 2-0082)

**1.** Admission Criteria (Ex. 2-0006 to -0009)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 5 | The member's current condition cannot be effectively and safely treated in a lower level of care even when the treatment plan is modified, attempts to enhance the member's motivation have been made, or referrals to community resources or peer supports have been made. | • <u>Argument</u><br>  o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  o <u>Fishman</u>: *E.g.*, Tr. 97:10-14, 213:6-18<br>  o <u>Plakun</u>: *E.g.*, Tr. 511:25-512:6 | • Dr. Fishman's and Dr. Plakun's testimony consist of generalized statements not directly related to this criterion.<br>• Dr. Fishman testified that he *did not object* to a nearly identical criterion in the 2013 Common Criteria. (**Trial Tr. 232:12–18 (Fishman)**.)<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8).<br>• **[Regarding the 2013 LOCGs]**<br>  o Dr. Fishman did "not particularly object" to identically worded criterion in the 2013 LOCGs. (**Trial Tr. 232:12–18 (Fishman)** ("I think this is better than we've seen it in other years. I don't particularly object.")<br>• **[Regarding Generally Accepted Standards of Care in General]**.<br>  o Matching patients to the least restrictive level of care that will provide effective treatment is "a generally standard approach" and "an important principle" because the concepts of a least restrictive level of care and of effective treatment are "equally important" principles. (**Trial Tr. 162:3–9 (Fishman)**.)<br>  o CMS outpatient guidelines provide that "[s]ervices are noncovered . . . where the evidence clearly establishes . . . that stability can be maintained without treatment or |

**II.A.1 2012 Level of Care Guidelines (Ex. 2)**

**Common Criteria (Ex. 2-0006 to -0009 & Ex. 2-0082) | Admission Criteria (Ex. 2-0006 to -0009)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | with less intensive treatment." (**Trial Ex. 626-0026 to -27 (Medicare Benefit Policy Manual Chapter 6, § 70 – Outpatient Hospital Services)**.)<br>○ (**Trial Ex. 1659, at 179:17–180:6, 181:1–18 (Bonfield)**.)<br>• **[Regarding the Common Criteria section of the 2017 LOCGs]** The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association.<br>○ (**Trial Tr. 968:25–971:23 (Martorana)**.)<br>○ (**Trial Ex. 634-0022** (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders) ("Individuals should be treated in the least restrictive setting that is likely to prove safe and effective.").)<br>○ (**Trial Ex. 639-0016** (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder) ("The psychiatrist should determine the least restrictive setting for treatment that will be most likely not only to address the patient's safety, but also to promote improvement in the patient's condition.").) |
| 6 | There must be a reasonable expectation that essential and appropriate services will improve the member's presenting problems within a reasonable period of time. Improvement of the member's condition is indicated by the reduction or control of the acute symptoms that | • <u>Argument</u><br>○ Acuity<br>○ Maintenance of Function<br>○ Custodial/Improvement<br>• <u>Testimony</u><br>○ <u>Fishman</u>: Tr. 218:6-23<br>○ <u>Plakun</u>: Tr. 539:14- | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 6" (pg. 8–9).<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 8th black bullet and sub-bullets (page 8-0007)" (pg. 177–178).<br>• "Improvement" is not limited to a reduction or control of the acute symptoms that necessitated treatment.<br>○ (**Trial Tr. 1042:23–1043:1 (Martorana)** ("As in other language we've seen that's similar, improvement is also considered when the member is likely to deteriorate if not for this level of care or this treatment |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | necessitated treatment in a level of care. Improvement in this context is measured by weighing the effectiveness of treatment against the evidence that the member's condition will deteriorate if treatment is discontinued in the current level of care. Improvement must also be understood within the framework of the member's broader recovery goals. | 19, 540:3-6<br>○ Niewenhous: Tr. 332:6-334:12 | plan.").)<br>• The definition of improvement is consistent with generally accepted standards of care because it ensures that the signs and symptoms that necessitated treatment are being addressed.<br>○ (**Trial Tr. 1265:13–19 (Simpatico**) ("So it's a paraphrase of what we already said; which is to say that, the symptoms that are determinative in the level of care are to be included in the active problem list because they are balanced in a more central way, because they are such that they are determining the most restrictive level of care that's necessary to provide the least restrictive, most effective level of care.").)<br>• **[Regarding the 2016 LOCGs]**<br>○ The phrase "acute signs and symptoms" refers to the patient's presenting problems, which often includes an exacerbation of a chronic condition. (**Trial Tr. 1414:5–1415:4 (Allchin)**.)<br>• **[Regarding the 2017 LOCGs]**<br>○ "Presenting problems" are "the issues, complaints, and the condition that [the member] present[s] to treatment," and includes chronic conditions. (**Trial Tr. 982:5–6, 983:1–8 (Martorana)**.)<br>○ This criterion defines improvement as reduction or control of symptoms as well as prevention of deterioration. (**Trial Tr. 982:9–18 (Martorana)**.)<br>○ Maintenance of a member's condition, i.e., the prevention of deterioration, is included in this definition of improvement. (**Trial Tr. 982:21–25 (Martorana)**.)<br>○ "Reasonable period of time" is another way of saying |

**II.A.1 2012 Level of Care Guidelines (Ex. 2)**
**Common Criteria (Ex. 2-0006 to -0009 & Ex. 2-0082) | Admission Criteria (Ex. 2-0006 to -0009)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | "that the treatment is effective," and takes into account "the individual aspects of a member's condition." There is no "set period of time" because the determination of what is reasonable is "part of the clinical judgement that the reviewer is applying." (**Trial Tr. 983:9–984:1** (**Martorana**).)<br>o Dr. Fishman conceded that he is not "looking for an unreasonable period of time." (**Trial Tr. 110:3–4** (**Fishman**).) |
| 7 | The goal of treatment is to improve the member's presenting symptoms to the point that treatment in the current level of care is no longer required. | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 218:24-219:4<br>o <u>Plakun</u>: Tr. 539:14-17, 19-23 | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 7" (pg. 9–10).<br>• This criterion does not state that care ceases once presenting symptoms are improved. It also does not state that coverage is provided only for crises.<br>o (**Trial Tr. 1043:2–15** (**Martorana**).)<br>o (**Trial Tr. 1266:1–10** (**Simpatico**).)<br>• **[Regarding the 2011 LOCGs]**<br>o "The goal of treatment is to make people better." (**Trial Tr. 1229:4–11** (**Simpatico**).)<br>• **[Regarding the 2017 LOCGs]** The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association.<br>o (**Trial Tr. 968:25–971:23** (**Martorana**).)<br>o (**Trial Ex. 634-0022** (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders) ("Individuals should be treated in the least restrictive setting that is likely to prove safe and effective.").)<br>o (**Trial Ex. 639-0016** (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder) ("The psychiatrist should determine the least restrictive |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | setting for treatment that will be most likely not only to address the patient's safety, but also to promote improvement in the patient's condition.").) |
| 8 | Treatment is not primarily for the purpose of providing respite for the family, increasing the member's social activity, or for addressing antisocial behavior or legal problems, but is for the active treatment of a behavioral health condition. | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 219:5-11 | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 8" (pg. 10–11).<br>o The same language appears in the 2011 Level of Care Guidelines. (**Trial Tr. 1043:16–1044:1** (**Martorana**); (**Trial Tr. 1266:11–22** (**Simpatico**).) |
| 10 | The treatment plan stems from the member's presenting condition, and clearly documents realistic and measurable treatment goals as well as the treatments that will be used to achieve the goals of treatment. … | • <u>Argument</u><br>o Acuity<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 219:12-19 | • "This, again, highlights what basic good clinical treatment is in regard to the treatment plan so that a good treatment plan would be taking into account the member's presenting condition and the factors that require this level of care, setting specific goals for improvement, they're measurable and specific interventions, and then would obviously adjust them as time went on if the member improved, didn't improve, or got worse." (**Trial Tr. 1044:11–18** (**Martorana**).)<br>• This criterion allows for the inclusion of chronic conditions in the treatment plan.<br>• (**Trial Tr. 1044:19–25** (**Martorana**).) |

**2.** Continued Service Criteria (Ex. 2-0082)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion is Consistent with Generally Accepted Standards of Care |
|---|---|---|---|
| 5 | There continues to be evidence that the member is receiving active treatment, and there continues to be a reasonable expectation that the member's condition will improve further. Lack of progress is being addressed by an appropriate change in the member's treatment plan, and/or an intervention to engage the member in treatment. | • <u>Argument</u><br>  o Acuity<br>  o Maintenance of Function<br>  o Custodial/Improvement<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 220:6-18<br>  o <u>Plakun</u>: Tr. 540:11-24 | • This criterion ensures that members are receiving active treatment that is expected to improve their condition.<br>  o (**Trial Tr. 1046:2–6 (Martorana)** ("So it allows the expectation of good clinical treatment, that active treatment is occurring, that they're getting treatment that's expected to improve their condition; and if they're not, that the treatment plan is being changed and modified to address all that.").)<br>  o (**Trial Tr. 1267:24–1268:3 (Simpatico)** ("Because it, again, is stating that the member continues to— there's evidence that the member is receiving active treatment, which we've talked about; and there continues to be a reasonable expectation that the condition will improve further, so that's a basis for continuing the active treatment.").)<br>• "Improvement" means that "the problems that have been identified have decreased in a measurable fashion." Prevention of deterioration is a component of improvement.<br>  o (**Trial Tr. 1045:15–1046:13 (Martorana)**.)<br>• The Medicare Benefit policy manual defines active treatment as services that, among other things, must be "[r]easonably expected to improve the patient's condition." (**Trial Ex. 655-0007 (Medicare Benefit Policy Manual Chapter 2 – Inpatient Psychiatric Hospital Services)**.)<br>• **[Regarding the 2017 LOCGs]** (**Trial Tr. 994:10–995:2 (Martorana)** (discharge involves a feedback loop which assesses whether a patient can be safely and effectively treated in the transitional level of care per that level's admission |

**II.A.2 2012 Level of Care Guidelines (Ex. 2)**
**Common Criteria (Ex. 2-0006 to -0009 & Ex. 2-0082) | Continued Service Criteria (Ex. 2-0082)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion is Consistent with Generally Accepted Standards of Care |
|---|---|---|---|
| | | | criteria).) |
| 6 | The member's current symptoms and/or history provider [sic] evidence that relapse or a significant deterioration in functioning would be imminent if the member was transitioned to a lower level of care or, in the case of outpatient care, was discharged. | • <u>Argument</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>o Maintenance of Function<br>o Custodial/Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 220:19-221:10<br>o <u>Plakun</u>: Tr. 540:11-14, 541:1-10 | • The risk of relapse needs to be near in time, rather than indefinite in time, in order to keep a member in a level of care because relapse is a common occurrence in psychiatric and substance abuse treatment.<br>o (**Trial Tr. 1047:14–21 (Martorana)** ("As we discussed before, there's—relapse is a common feature of psychiatric and substance abuse treatment, so there's an expectation that there's a high likelihood that someone will relapse at some point in time. So—but if you're making a level-of-care determination that continued care must be in this level of care, then really the risk should be near time rather than somewhere down the road and an indefinite time.").)<br>o "'[I]mminent' means a period of time, a duration of time that is consistent with being able to conclude that it is the removal from that level of care that causes the deterioration." (**Trial Tr. 1269:15–18 (Simpatico)**.) |

**B.** Intensive Outpatient Program: Mental Health Conditions (Ex. 2-0020 to -0022)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | Any <u>ONE</u> of the following criteria must be met… | • Plaintiffs do not challenge criteria "Any" 3 and 4. | *************************** <br>• Plaintiffs fail to offer proof that these alternative criteria, when considered together, deviate from generally accepted standards of care. |
| [Any] 1 | *********************** <br>The member's psychosocial functioning has become impaired by moderate-severe symptoms of a mental health condition, and treatment cannot be adequately managed in a lower level of care. | ******************** <br>**"Any" 1** <br>• <u>Arguments</u> <br>  o Acuity <br>  o Drive Toward Lower Levels of Care <br>• <u>Testimony</u> <br>  o <u>Fishman</u>: *E.g.*, Tr. 97:10-14; 213:6-18 <br>  o <u>Plakun</u>: *E.g.*, Tr. 511:25-512:6. | *********************** <br>**"Any" 1** <br>• Dr. Fishman's and Dr. Plakun's testimony is generalized comments not directed to this level of care. <br><br>**"Any" 1** <br>• *See* II.E "2012 Intensive Outpatient Program: Substance Use Disorders, [Any] 1" (pg. 66–67). <br>• **[Regarding the 2017 LOCGs]** The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources. <br>  o (**Trial Tr. 968:25–971:23 (Martorana)**.) <br>  o (**Trial Ex. 634-0022 (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders)** ("Individuals should be treated in the least restrictive setting that is likely to prove safe and effective.").) <br>  o (**Trial Ex. 639-0016 (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder)** ("The psychiatrist should determine the least restrictive setting for treatment that will be most likely not only to address the patient's safety, but also to |
| [Any] 2 | *********************** <br>The member's mood, affect or cognition has deteriorated to the extent that a higher level of care will likely be needed if intensive outpatient treatment is not provided. | ******************** <br>**"Any" 2** <br>• <u>Argument</u> <br>  o Acuity <br>• <u>Testimony</u> <br>  o <u>Fishman</u>: Tr. 145:8-12, 146:5-13, 225:19-226:8 | |
| [Any] 3 | *********************** <br>The member has completed inpatient, residential treatment or a partial hospital/day treatment program, and requires the structure and monitoring available in an intensive outpatient program; or <br>*********************** | | |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| [Any] 4 | The member has a non-supportive living situation creating an environment in which the member's mental health condition is likely to worsen without the structure and support of the intensive outpatient program. | | promote improvement in the patient's condition.").)<br>*******************************<br>**"Any" 2**<br>• *See* I.B "2011 Intensive Outpatient Program: Mental Health Conditions, [Any] 2" (pg. 17–18) (addressing identical language). |
| [All] 3 | Co-occurring substance use disorders, if present, can be treated in a dual diagnosis program, or can be safely managed at this level of care. | • <u>Argument</u><br>o Co-occurring<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 221:23-223:23<br>o <u>Plakun</u>: Tr. 526:14-16, 525:11-529:14. | • Dr. Fishman's testimony concerns 2012 Intensive Outpatient Program: Substance Use Disorders<br>• Dr. Plakun's testimony concerns the ¶ 1.6 of the Common Criteria of the 2015 LOCGs.<br>• *See* I.B "2011 Intensive Outpatient Program: Mental Health Conditions, [All] 3" (pg. 18–20) (addressing identical language). |
| [All] 4 | The member and/or his/her family/social support system understands and can comply with the requirements of an IOP, or the member is likely to participate in treatment with the structure and supervision afforded by an IOP. | • <u>Argument</u><br>o Motivation<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 146:17-147:9 | • Dr. Fishman's comments address Intensive Outpatient Program: Substance Use Disorder section of the 2011 Level of Care Guidelines.<br>• *See* I.E "2011 Intensive Outpatient Program: Substance Use Disorders, [All] 5" (pg. 33–35) (addressing identical language). |

**II.B. 2012 Level of Care Guidelines (Ex. 2) | Intensive Outpatient Program: Mental Health Conditions (Ex. 2-0020 to -0022)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| [All] 7 | The provider and, whenever possible, the member collaborate to update the treatment plan every 3 to 5 treatment days in response to changes in the member's condition, or provide compelling evidence that continued treatment in the current level of care is required to prevent acute deterioration or exacerbation of the member's current condition. | • Argument<br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Plakun: Tr. 575:8-10, 14-21 | • (**Trial Tr. 1280:17–1281:4 (Simpatico)**.)<br>• *See* I.B. "2011 Intensive Outpatient Program: Mental Health Conditions, [All] 7" (pg. 20–21) (addressing identical language).<br>• *See* II.E "2012 Intensive Outpatient Program: Substance Use Disorders, [All] 8" (pg. 68). |

## C. Outpatient: Mental Health Conditions (Ex. 2-0023 to -0024)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards Of Care |
|---|---|---|---|
| [All] 3 | Co-occurring substance use disorders, if present, are stable and are unlikely to undermine treatment of the mental health condition at this level of care. | • Argument<br>o Co-occurring<br>• Testimony<br>o Fishman: Tr. 221:23-223:23<br>o Plakun: Tr. 526:14-16, 525:11-529:14 | • Dr. Fishman's testimony concerns the Intensive Outpatient Program: Substance Use Disorders section of the 2012 Level of Care Guidelines.<br>• Dr. Plakun's testimony concerns the 2015 Level of Care Guidelines.<br>• Plaintiffs' own expert testified that no part of the Outpatient guidelines for 2012 fell below generally accepted standards of care. (**Trial Tr. 575:3-5 (Plakun)**.)<br>• *See* I.B "2011 Outpatient: Mental Health Conditions, [All] 3" (pg. 18–20) (addressing identical language). |

**II.C. 2012 Level of Care Guidelines (Ex. 2) | Outpatient: Mental Health Conditions (Ex. 2-0023 to -0024)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards Of Care |
|---|---|---|---|
| [Consider] 2 | The member refuses further treatment or repeatedly does not adhere with recommended treatment despite attempts to enhance the member's engagement in treatment, peer support and other community support services. In such cases, the provider explains the risks of discontinuing treatment to the member and, as appropriate, the member's family/social supports; alternative referrals are offered; and the member is provided with instructions for resuming services should the need arise in the future. | • <u>Argument</u><br>  ○ Motivation<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 236:12-237:4, 135:10-136:15 | • Dr. Fishman's testimony concerns the Continued Service Criteria section of the 2011 Level of Care Guidelines and the Outpatient: Substance Use Disorders section of the 2013 Level of Care Guidelines.<br>• *See* I.A.2 "2011 Common Criteria, Continued Service Criteria, ¶ 4" (pg. 13–14).<br>• *See* III.F "2013 Outpatient: Substance Use Disorders, [Consider] 2" (pg. 98–99).<br>• Plaintiffs' own expert testified that no part of the Outpatient guidelines for 2012 fell below generally accepted standards of care. (**Trial Tr. 575:3-5 (Plakun)**.)<br>• *See* I.C "2011 Outpatient: Mental Health Conditions, [Consider] 2" (pg. 23–24) (addressing identical language). |

**D.** Residential Treatment Center: Mental Health Conditions (Ex. 2-0028 to -0031)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| <br><br><br>[Any] 1<br><br><br><br><br><br><br>[Any] 2<br><br><br><br><br><br><br><br><br><br>[Any] 3 | Any ONE of the following criteria must be met …<br>**************************<br>The member is experiencing a disturbance in mood, affect or cognition resulting in behavior that cannot be safely managed in a less restrictive setting.<br>**************************<br>There is an imminent risk that severe, multiple and/or complex psychosocial stressors will produce significant enough distress or impairment in psychological, social, occupational/educational, or other important areas of functioning to undermine treatment in a lower level of care.<br>**************************<br>The member has a co-occurring medical disorder or substance use disorder which complicates treatment of the presenting mental health condition to the extent that treatment in a Residential Treatment Center is | "Any" 1<br>• Argument<br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Fishman: Tr. 145:8-12, 146:5-13, 225:19-226:8<br>  ○ Plakun: Tr. 526:8-16, 528:15-19<br>****************************<br>"Any" 2<br>• Argument<br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Fishman: Tr. 236:2-10, 272:9-19<br>  ○ Plakun: Tr. 540:11-14, 541:1-10.<br>****************************<br>"Any" 3<br>• Argument<br>  ○ Co-occurring<br>• Testimony | "Any" 1<br>• Dr. Fishman's testimony concerns Intensive Outpatient: Substance Use Disorders for the 2011 LOCGs and 2012 LOCGs.<br>• Dr. Plakun's testimony concerns the 2015 LOCGs and also consists of generalized comments not addressing the 2012 Level of Care Guidelines.<br>• *See* I.D "2011 Residential Treatment Center: Mental Health Conditions, [Any] 2" (pg. 25–27) (addressing identical language).<br>**************************************<br>"Any" 2<br>• Dr. Plakun's comments concern the Continued Service Criteria for the 2012 LOCGs<br>• Dr. Fishman's comments concern the Outpatient criteria for the 2013 LOCGs and the 2017 Level of Care Guidelines.<br>• **[Commenting on the 2017 LOCGs]** The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association.<br>  ○ (**Trial Tr. 968:25–971:23 (Martorana)**.)<br>  ○ (**Trial Ex. 634-0022** (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders) ("Individuals should be treated in the least restrictive setting that is likely to prove safe and effective.").) |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | necessary. | ○ Fishman: Tr. 221:23-223:23<br>○ Plakun: Tr. 526:14-16, 525:11-529:14 | ○ (**Trial Ex. 639-0016 (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder)** ("The psychiatrist should determine the least restrictive setting for treatment that will be most likely not only to address the patient's safety, but also to promote improvement in the patient's condition.").)<br>• *See* I.D "2011 Residential Treatment Center: Mental Health Conditions, [Any] 3" (pg. 25–27) (addressing identical language).<br><br>**************************************<br>"Any" 3<br>• Dr. Fishman's testimony concerns the Intensive Outpatient Program: Substance Use Disorders of the 2012 Level of Care Guidelines.<br>• Dr. Plakun's testimony concerns the 2015 Level of Care Guidelines<br>• *See* V.A "2015 Common Criteria, Admission Criteria, ¶ 1.6" (pg. 135–136) (referring to VIII.A.1 "2017 Common Criteria, Admission Criteria, 6th black bullet (page 8-0007" (pg. 176–177)).<br>• *See* II.E "2012 Intensive Outpatient Program: Substance Use Disorders, [All] 3" (pg. 67).<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 6th black bullet (page 8-0007)" (pg. 176–177).<br>○ This criterion is in accord with generally accepted standards of care because "it speaks |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | to . . . compiling a comprehensive understanding of a patient's current and past medical history and circumstances in order to understand how to understand the presenting picture, and it necessarily includes an understanding of their behavioral health history and any general medical conditions that they may have." (**Trial Tr. 1179:5–10 (Simpatico)**.) |
| [All] 2(a) | Within 48 hours of admission, the following occurs:<br>a. A psychiatrist completes a comprehensive evaluation of the member. | • <u>Argument</u><br>o Acuity<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 142:15-143:10<br>o <u>Alam</u>: Tr. 1586:19-1587:21 | • Dr. Fishman's testimony concerns the 2011 Level of Care Guidelines.<br>• *See* I.D "2011 Residential Treatment Center: Mental Health Conditions, [All] 2(a)" (pg. 27) (addressing identical language). |
| [All] 3 | Subsequent psychiatric evaluations and consultations are available 24 hours a day. Visits with the treating psychiatrist occur at least 2 times per week. | • <u>Argument</u><br>o Acuity<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 142:15-143:10<br>o <u>Alam</u>: Tr. 1586:19-1587:21 | • Dr. Fishman's testimony concerns the 2011 Level of Care Guidelines.<br>• *See* I.D "2011 Residential Treatment Center: Mental Health Conditions, [All] 3" (pg. 27) (addressing identical language). |

**II.D. 2012 Level of Care Guidelines (Ex. 2) | Residential Treatment Center: Mental Health Conditions (Ex. 2-0028 to -0031)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | |
| [All] 4 | All relevant general medical services, including assessment and diagnostic, treatment, and consultative services are available as needed and provided with an urgency commensurate with the member's medical need. Co-occurring medical conditions can be safely treated in this level of care. | • Argument<br>o Co-occurring<br>• Testimony<br>o Fishman: Tr. 221:23-223:23<br>o Plakun: Tr. 518:4-8, 526:8-16, 528:15-19 | • Dr. Plakun's cited testimony consists of generalized statements that do not address the challenge criterion.<br>• Dr. Fishman's testimony concerns the 2011 Level of Care Guidelines.<br>• *See* I.D "2011 Residential Treatment Center: Mental Health Conditions, [All] 4" (pg. 28–29) (addressing identical language). |
| [All] 5 | The provider and, whenever possible, the member collaborate to update the treatment plan at least weekly in response to changes in the member's condition, or provide compelling evidence that continued treatment in the current level of care is required to prevent acute deterioration or exacerbation of the member's current condition. | • Argument<br>o Acuity<br>o Drive Toward Lower Levels of Care<br>o Maintenance of Function<br>o Custodial/Improvement<br>• Testimony<br>o Plakun: Tr. 576:1-15, 18-21<br>o Alam: Tr. 1616:11-25 (identifying "compelling" as not consistent with generally accepted standards of care)<br>o Triana: Tr. 1738:23-1739:13, 1739:19-1740:23 | • Updating a treatment plan on a weekly basis is the standard of care.<br>o (**Trial Tr. 1617:4–8 (Alam)** ("That, you know, the expectation that you take a look at how the patient is doing and update the treatment plan at least on a weekly basis, I believe that's the standard of care.").)<br>• **[Regarding the Continued Service Criteria section of the 2011 LOCGs]** "Clear and compelling evidence" is not a medical term.<br>o (**Trial Tr. 137:3–5 (Fishman)** ("it would be hard to know what that would exactly mean in a clinical treatment context); *see also* **Trial Tr. 1239:2–3 (Simpatico)**.)<br>o "Clear and compelling evidence" was not interpreted by UBH's clinicians as imposing a higher burden than ordinary clinical judgment about appropriate treatment. (**Trial Tr. 1040:5–10 (Martorana)**.) |

**II.D. 2012 Level of Care Guidelines (Ex. 2) | Residential Treatment Center: Mental Health Conditions (Ex. 2-0028 to -0031)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | |
| [All] 5.a | a. Treatment in a residential setting is not for the purpose of providing custodial care. Custodial care in a residential setting is the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's mental health condition is not changing, or does not require trained clinical personnel to safely deliver services. Examples of custodial care include respite services, daily living skills instruction, days awaiting placement, activities that are social and recreational in nature, and interventions that are solely to prevent runaway/truancy or legal problems. Custodial care is characterized by the following: … | • Argument<br>  ○ Acuity<br>  ○ Maintenance of Function<br>  ○ Drive Toward Lower Levels of Care<br>  ○ Custodial/ Improvement<br>• Testimony<br>  ○ Plakun: Tr. 576:1-22 | • (**Trial Tr. 1280:4–16 (Simpatico)** (testifying that this criterion is consistent with generally accepted standards of care for reasons previously stated).)<br>• *See, e.g.*, X "December 2011 Custodial Care Coverage Determination Guidelines, 2nd black bullet" and "third black bullet" (pg. 211–214).<br>• **[Regarding the March 2017 Custodial Care Coverage Determination Guideline]**<br>  ○ UBH's customers are free to define Custodial Care in any manner they see fit in Plans. (**Trial Tr. 1078:23–1079:2 (Martorana)**.) |

**II.D. 2012 Level of Care Guidelines (Ex. 2) | Residential Treatment Center: Mental Health Conditions (Ex. 2-0028 to -0031)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | |
| [All] 5.b | b. Treatment in a residential setting is for the active treatment of a mental health condition. Active treatment is a clinical process involving 24-hour care that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare. Active treatment is indicated by services that are all of the following:<br>i) Supervised and evaluated by a physician;<br>ii) Provided under an individualized treatment plan;<br>iii) Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>iv) Unable to be provided in a less restrictive setting; and are<br>v) Focused on interventions that are | • Argument<br>o Acuity<br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care<br>o Custodial/Improvement<br>• Testimony<br>o Plakun: Tr. 576:1-22 | • (**Trial Tr. 1280:4–16 (Simpatico)** (testifying that this criterion is consistent with generally accepted standards of care for reasons previously stated).)<br>• *See, e.g.*, IX "August 2010 Custodial Care Coverage Determination Guidelines, 5th black bullet and sub-bullets" (pg. 203–207). |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | based on generally accepted standards of medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilized the member's condition to the extent that the member can be safely treated in a lower level of care. | | |

**E.** Intensive Outpatient Program: Substance Use Disorders (Ex. 2-0047 to -0050)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consist With Generally Accepted Standards Of Care |
|---|---|---|---|
| | Any <u>ONE</u> of the following criteria must be met … | • Plaintiffs do not challenge Criteria 4. | • Plaintiffs fail to offer proof that these alternative criteria, when considered together, deviate from generally accepted standards of care.<br>• "Any" Criteria 1, 2, 3, and 5 must be read in conjunction. When done so, the criteria ensure that a member receives treatment at an intensive outpatient facility under a broad array of circumstances.<br>  o (**Trial Tr. 1277:8–16 (Simpatico)** ("So what they have in common—one, two, and three have in common—the fact that a less intensive or less restrictive level of care cannot safely manage the problem, and it basically makes the distinction between psychosocial functioning has become impaired or mood affect or cognition has become impaired or symptoms have deteriorated to the extent that there's a likelihood of imminent relapse. So it's basically—each one of these is addressing one of the aspects of the presentation that if it were sufficiently at a sufficient level, which is being defined, it has declined to a sufficient level that it cannot be safely managed at a lower level, then these are, again, a fairly broad entryway for the appropriate use of this level of care.").)<br>• *See* I.E "2011 Intensive Outpatient Program: Substance Use Disorder, [Any] 1-6" (pg. 30–31) (addressing |
| [Any] 1 | ****************************<br>The member's psychosocial functioning has become impaired by moderate-severe symptoms of a substance use disorder, and treatment cannot be safely managed in a less intensive level of care; or | ***********************<br>"Any" 1<br>• <u>Argument</u><br>  o Acuity<br>  o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 225:19-226:3 | |
| [Any] 2 | ***************************<br>The member's mood, affect or cognition has deteriorated to the extent that a higher level of care will likely be needed if treatment in an intensive outpatient program is not provided; or | ********************<br>"Any" 2<br>• <u>Argument</u><br>  o Acuity<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 225:19-226:8 | |
| [Any] 3 | ***************************<br>The member's symptoms have deteriorated to the extent that there is a likelihood of imminent relapse if treatment is not provided in an intensive outpatient program; or | ***********************<br>"Any" 3<br>• <u>Argument</u><br>  o Acuity<br>  o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 225:19-226:13 | |
| [Any] 4 | ****************************<br>The member has completed inpatient, residential treatment or a partial hospital/day treatment | | |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consist With Generally Accepted Standards Of Care |
|---|---|---|---|
| [Any] 5 | program, and requires the structure and monitoring available in an intensive outpatient program; or<br>****************************<br>The member has a non-supportive or unstable living situation creating an environment in which the member is unlikely to remain sober without the structure and support of the intensive outpatient program. | ***********************<br>"Any" 5<br>• Argument<br>  o Motivation<br>• Testimony<br>  o Fishman: Tr. 225:19-226:26 | identical language). |
| [All] 3 | Co-occurring medical conditions, if any, can be safely managed in an outpatient setting. | • Argument<br>  o Co-occurring<br>• Testimony<br>  o Fishman: Tr. 225:19-24, 228:2-14 | • This criterion guarantees that co-occurring medical treatments can be safely treated at this level of care.<br>  o (**Trial Tr. 1278:6–8 (Simpatico)** ("[I]t's just in a way stating the obvious, that these important aspects of a person's presentation can be adequately managed at this level of care should they exist.").)<br>• Plaintiffs criticize this criterion for not including co-occurring mental health conditions, but those conditions are addressed in Criterion [All] 4.<br>  o (**Trial Tr. 228:5–8 (Fishman)** ("That's certainly laudable, but we're missing the reasons especially for a co-occurring mental health condition because co-occurring medical is mentioned in the section above but co-occurring mental is not.").)<br>• *See* I.E "2011 Intensive Outpatient Program: Substance Use Disorder, [All] 3" (pg. 31–32) (addressing identical language). |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consist With Generally Accepted Standards Of Care |
|---|---|---|---|
| [All] 4 | Co-occurring mental health conditions, if any can be managed in a dual diagnosis program, or can be safely managed at this level of care. | • Argument<br>o Co-occurring<br>• Testimony<br>o Fishman: Tr. 225:19-24, 228:2-14 | • This criterion guarantees that co-occurring mental health conditions can be safely treated at this level of care.<br>o (**Trial Tr. 1278:6–8 (Simpatico)** ("[I]t's just in a way stating the obvious, that these important aspects of a person's presentation can be adequately managed at this level of care should they exist.").)<br>• *See* I.E "2011 Intensive Outpatient Program: Substance Use Disorder, [All] 4" (pg. 32–33) (addressing identical language). |
| [All] 8 | The provider and, whenever possible, the member collaborate to update the treatment plan every 3 to 5 treatment days in response to changes in the member's condition, or provide compelling evidence that continued treatment in the current level of care is required to prevent acute deterioration or exacerbation of the member's current condition. | • Argument<br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 225:19-24, 229:17-230:16 | • (**Trial Tr. 1279:2–16 (Simpatico)**.)<br>• **[Regarding the 2012 LOCGs for Residential Treatment Center: Mental Health Conditions]** Updating a treatment plan on a weekly basis is the generally accepted standard of care.<br>o (**Trial Tr. 1617:4–8 (Alam)** ("That, you know, the expectation that you take a look at how the patient is doing and update the treatment plan at least on a weekly basis, I believe that's the standard of care.").)<br>• *See* I.E "2011 Intensive Outpatient Program: Substance Use Disorder, [All] 8" (pg. 36) (addressing identical language). |

**F.** Outpatient: Substance Use Disorders (Ex. 2-0051 to -0053)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consist With Generally Accepted Standards of Care |
|---|---|---|---|
| [Any] 1<br><br>[Any] 2 | Any <u>ONE</u> of the following criteria must be met …<br>******************<br>The member's use of alcohol or drugs meets criteria for a substance disorder; or<br>******************<br>Lapse has occurred or is imminent, and treatment is needed to maintain/regain abstinence. | • Plaintiffs <u>do not</u> criticize criterion "Any" 1.<br>******************<br>"Any" 2<br>• <u>Argument</u><br>  o Acuity<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 230:19-231:5 | • Plaintiffs fail to offer proof that these alternative criteria, when considered together, deviate from generally accepted standards of care.<br>• *See* I.F "2011 Outpatient: Substance Use Disorders, [Any] 2" (pg. 37) (addressing identical language).<br>• (**Trial Tr. 1279:17–1280:3 (Simpatico)**.)<br>• Dr. Plakun testified that no parts of the Outpatient guidelines fall below the standard of care. (**Trial Tr. 575:3-4 (Plakun)**.) |
| [All] 3 | Co-occurring mental health conditions, if present, are stable and are unlikely to undermine treatment of the substance use disorder at this level of care. | • <u>Argument</u><br>  o Co-occurring<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 107:20-108:24 | • Dr. Fishman's testimony addresses the Common Criteria, Admission Criteria of the 2015 LOCGs.<br>• *See* I.F "2011 Outpatient: Substance Use Disorders, [All] 3" (pg. 37–38) (addressing identical language).<br>• Plaintiffs' own expert testified that no part of the Outpatient guidelines for 2012 fell below generally accepted standards of care. (**Trial Tr. 575:3-5 (Plakun)**.) |
| [Consider] 2 | The member refuses further treatment or repeatedly does not adhere with recommended treatment despite attempts to | • <u>Argument</u><br>  o Motivation<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 236:12-237:4, 135:10-136:15 | • Dr. Fishman's testimony addresses the Continued Service Criteria in the 2011 LOCGs and the Outpatient: Substance Use Disorders section of the 2013 LOCGs.<br>• *See* I.A.2 "2011 Common Criteria, Continued Service Criteria, ¶ 4" (pg. 13–14).<br>• *See* I.F "2011 Outpatient: Substance Use Disorders, [Consider] |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consist With Generally Accepted Standards of Care |
|---|---|---|---|
| | enhance the member's engagement in treatment, and/or peer support and other community support services. In such cases, the provider explains the risks of discontinuing treatment to the member and, as appropriate, the member's family/social supports, alternative referrals are provided in writing, and the member is provided with instructions for resuming services should the need arise in the future. | | 2" (pg. 38–39) (addressing identical language). |

## G. Residential Rehabilitation: Substance Use Disorders (Ex. 2-0062 to -0065)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | Residential rehabilitation is comprised of acute overnight services… | • <u>Argument</u><br>  ○ Acuity<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 281:1-6 | • Dr. Fishman's testimony concerns the March 27, 2017 Custodial Care Coverage Determination Guideline.<br>• *See* XV "March 2017 Custodial Care Coverage Determination Guidelines, 4th ¶" (pg. 239–240).<br>• **[Regarding identical language in the 2011 Residential Rehabilitation: Substance Use Disorders LOCG]:**<br>  ○ This preamble is consistent with generally accepted standards of care because it accurately describes the instances when residential rehabilitation treatment is appropriate.<br>  ○ (**Trial Tr. 1244:25–1245:12 (Simpatico)** ("[I]t's a description of the place in the continuum of services that residential rehab programs play. . . . So it has ruled out a more—the need for a more restrictive intensive level of service in a hospital but says that in order to meet these clinical needs, this would be the—would be deemed the appropriate level of intensity |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | of services.").) |
| <br><br><br><br>[Any] 1<br><br><br><br><br><br>[Any] 2<br><br><br><br><br>[Any] 3<br><br><br><br><br>[Any] 4 | Any <u>ONE</u> of the following criteria must be met …<br>*******************************<br>The member continues to use alcohol or drugs, and the member's functioning has deteriorated to the point that the member cannot be safely treated in a less restrictive level of care; or<br>*******************************<br>The member continues to use alcohol or drugs, is at risk of exacerbating a serious co-occurring medical condition, and cannot be safely treated in a lower level of care; or<br>*******************************<br>There is a high risk of harm to self or others due to continued and severe alcohol or drug use which prohibits treatment from safely occurring in a less restrictive level of care; or<br>*******************************<br>There is a high risk that continued use of alcohol or drugs will exacerbate a co-occurring medical condition to the extent that treatment in a less restrictive level of care cannot be safely provided; or<br>******************************* | • Plaintiffs <u>do not</u> criticize criterion "Any" 6.<br>*******************************<br>"Any" 1<br>• <u>Argument</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 221:23-222:16<br>*******************************<br>"Any" 2<br>• <u>Argument</u><br>o Acuity<br>o Co-occurring<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 221:23-222:19<br>*******************************<br>"Any" 3<br>• <u>Argument</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 221:23-223:01<br>******************************* | • Plaintiffs fail to offer proof that these alternative criteria, when considered together, deviate from generally accepted standards of care.<br>• Criterion "Any" 1 serves as a broad catch all for anyone for whom this level of care is appropriate.<br>o (**Trial Tr. 1270:11–17 (Simpatico)** ("It is [consistent with generally accepted standards of care], and it's largely a catchall for anyone that's appropriate for this level of care. . . . [I]t's a pretty broad definition. It's anyone who continues to use and the functioning has deteriorated to the point that the member cannot be safely treated in a less restrictive level of care.").)<br>o (**Trial Tr. 1585:5–1586:2 (Alam)**.)<br>• Criterion "Any" 2<br>o (**Trial Tr. 1270:18–1271:6 (Simpatico)**.)<br>o (**Trial Tr. 1585:5–1586:2 (Alam)**.)<br>• Criterion "Any" 3<br>o (**Trial Tr. 1271:7–21 (Simpatico)**.)<br>o (**Trial Tr. 1585:5–1586:2 (Alam)**.)<br>• Criterion "Any" 4<br>o (**Trial Tr. 1271:22–1272:9** |

**II.G. 2012 Level of Care Guidelines (Ex. 2) | Residential Rehabilitation: Substance Use Disorders (Ex. 2-0062 to -0065)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| [Any] 5<br><br><br><br><br><br>[Any] 6 | There is a high risk of developing severe withdrawal symptoms which cannot be safely treated in a lower level of care; or<br>******************************<br>The member is experiencing withdrawal symptoms that do not compromise the member's medical status to the extent that treatment in an inpatient setting is indicated, but the symptoms are of extreme subjective severity and the member lacks resources or a functional social support system needed to manage the symptoms in a lower level of care. | "Any" 4<br>• <u>Argument</u><br>  ○ Acuity<br>  ○ Co-occurring<br>  ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br><u>Fishman</u>: Tr. 221:23-223:03<br>******************************<br>"Any" 5<br>• <u>Argument</u><br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 221:23-223:05 | **(Simpatico)**.)<br>  ○ (**Trial Tr. 1585:5–1586:2 (Alam)**.)<br>• Criterion "Any" 5<br>  ○ (**Trial Tr. 1272:10–16 (Simpatico)**.)<br>  ○ (**Trial Tr. 1585:5–1586:2 (Alam)**.)<br>• Criteria Generally<br>  ○ (**Trial Tr. 1272:17–22 (Simpatico)**.) |
| [All] 2.a. | Within 48 hours of admission, the following occurs:<br>a. A psychiatrist/ addictionologist completes a comprehensive evaluation of the member. | • <u>Argument</u><br>  ○ Acuity<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 221:23-223:11<br>  ○ <u>Alam</u>: Tr. 1586:19-1587:21 | • *See* I.G "2011 Residential Rehabilitation: Substance Use Disorders, [All] 2.a" (pg. 44) (addressing identical language). |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| [All] 3 | Subsequent psychiatric evaluations and consultations are available 24 hours a day. Visits with the treating psychiatrist/addictionologist occur at least 2 times per week. | • <u>Argument</u><br>  ○ Acuity<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 221:23-223:16<br>  ○ <u>Alam</u>: Tr. 1586:19-1587:21 | • (**Trial Tr. 1273:7–16 (Simpatico)** ("As before, I would expect to see this at a level 3.7. I'd be happy to see it at a 3.5.").)<br>• (**Trial Tr. 1588:6–1589:10 (Alam)** ("The expectation that a patient in a 24-hour confinement is seen by a physician a couple of times a week is reasonable and generally followed in the community. . . . [U]sually there is a degree of risk that has led patients into this level of care. Part of our role is to monitor that safe and appropriate care as provided to our members. And part of that monitoring role, you know, requires that we make sure that a physician is seeing our members. And a number of times this is the first level that members enter; and we don't know much about them. And so it is prudent to expect . . . close physician follow up.").) |
| [All] 4 | All relevant general medical services, including assessment and diagnostic, treatment, and consultative services are available as needed and provided with an urgency that is commensurate with the member's medical need. Co-occurring medical conditions can be safely treated in this level of care. | • <u>Argument</u><br>  ○ Acuity<br>  ○ Co-occurring<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 221:23-223:23<br>  ○ <u>Alam</u>: Tr. 1586:19-1587:21 | • (**Trial Tr. 1274:3–1274:5 (Simpatico)** ("[I]t's commensurate with having 24-hour access to physicians and for the nature of an instability of the presentations that are treated at this level.").)<br>• This criterion does not require a physician to be onsite at all times. (**Trial** |

**II.G. 2012 Level of Care Guidelines (Ex. 2) | Residential Rehabilitation: Substance Use Disorders (Ex. 2-0062 to -0065)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | **Tr. 1589:11–1591:6** (**Alam**).) |
| [All] 5 | The treating psychiatrist/ addictionologist and, whenever possible, the member collaborate to update the treatment plan at least every 5 days in response to changes in the member's condition, or provide compelling evidence that continued treatment in the current level of care is required to prevent acute deterioration or exacerbation of the member's current condition. … | • Argument<br>  o Acuity<br>  o Drive Toward Lower Levels of Care<br>  o Maintenance of Function<br>• Testimony<br>  o Fishman: Tr. 221:23-224:3<br>  o Alam: Tr. 1586:19-1587:21 | • *See* I.G "2011 Residential Rehabilitation: Substance Use Disorders, [All] 5" (pg. 45–46) (addressing identical language).<br>  o (**Trial Tr. 1274:6–18** (**Simpatico**).)<br>  o (**Trial Tr. 1591:7-20** (**Alam**).) |
| [All] 5.a | a. Treatment in a residential setting is not for the purpose of providing custodial care. Custodial care in a residential setting involves the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's substance use disorder is not changing, or does not require trained clinical personnel to safely deliver services. Examples of custodial care include respite services, daily living skills instruction, days awaiting placement, | • Argument<br>  o Acuity<br>  o Drive Toward Lower Levels of Care<br>  o Maintenance of Function<br>  o Custodial/ Improvement<br>• Testimony<br>  o Fishman: Tr. 221:23-225:14 | • (**Trial Tr. 1274:19–1275:17** (**Simpatico**) (noting this language is no more restrictive than language generally describing custodial care).)<br>• (**Trial Tr. 1591:21–1593:3** (**Alam**).) (noting that custodial care is generally defined in the member's health plan)<br>• *See, e.g.*, X "December 2011 Custodial Care Coverage Determination Guidelines, 2nd black bullet" and "3rd black bullet" (pg. 211–214). |

## II.G. 2012 Level of Care Guidelines (Ex. 2) | Residential Rehabilitation: Substance Use Disorders (Ex. 2-0062 to -0065)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | activities that are social and recreational in nature, and interventions that are solely to prevent runaway/truancy or legal problems. Custodial care is characterized by the following:<br>i) The member's presenting signs and symptoms have been stabilized, resolved, or a baseline level of functioning has been achieved;<br>ii) The member is not responding to treatment or otherwise is not improving;<br>iii) The intensity of active treatment provided in a residential setting is no longer required or services can be safely provided in a less intensive setting. | | |
| [All] 5.b | b. Treatment in a residential setting is for the active treatment of a substance use disorder. Active treatment is a clinical process involving 24-hour care that includes | • <u>Argument</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>o Maintenance of Function<br>o Custodial/ | • (**Trial Tr. 1275:18–1276:7 (Simpatico)** (noting that this definition of active treatment is consistent with generally accepted standards of care).)<br>• (**Trial Tr. 1593:22–1594:1 (Alam)** ("[A]ctive treatment is really the |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare. Active treatment is indicated by services that are all of the following:<br>i) Supervised and evaluated by a physician;<br>ii) Provided under an individualized treatment plan;<br>iii) Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>iv) Unable to be provided in a less restrictive setting; and are focused on interventions that are based on generally accepted standards of medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's condition to the extent that the member can | Improvement<br>• Testimony<br>  ○ Fishman: Tr. 223:24-225:14 | expectation of medical necessity; that if you're confined in a 24-hour setting, hopefully, you're there to receive treatment. And when the treatment ends, you're able to transition to a less restrictive setting.").)<br>• *See, e.g.*, IX "August 2010 Custodial Care Coverage Determination Guidelines, 5th black bullet and sub-bullets" (pg. 203–207). |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | be safely treated in a lower level of care.<br>v) Focused on interventions that are based on generally accepted standards of medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's condition to the extent that the member can be safely treated in a lower level of care. | | |

# III. 2013 Level of Care Guidelines (Ex. 3)

## A. Common Criteria (Ex. 3-0007 to -0011 & Ex. 3-0089)

### 1. Admission Criteria (Ex. 3-0007 to -0011)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 6 | The member's current condition cannot be effectively and safely treated in a lower level of care even when the treatment plan is modified, attempts to enhance the member's engagement in treatment have been made; or referrals to community resources or peer supports have been made. | • Argument<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Fishman: *E.g.*, Tr. 97:10-14; 213:6-18<br>  o Plakun: *E.g.*, Tr. 511:25-512:6, 526:2-527:1 | • Dr. Fishman's and Dr. Plakun's testimony consists of generalized statements not specific to this criterion.<br>• Dr. Fishman did "not particularly object" to this criterion. (**Trial Tr. 232:12–18 (Fishman)** ("I think this is better than we've seen it in other years. I don't particularly object.").)<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8).<br>• **[Regarding Generally Accepted Standards of Care in General]**.<br>  o Matching patients to the least restrictive level of care that will provide effective treatment is "a generally standard approach" and "an important principle" because the concepts of a least restrictive level of care and of effective treatment are "equally important" principles. (**Trial Tr. 162:3–9 (Fishman)**.)<br>  o CMS outpatient guidelines provide that "[s]ervices are noncovered . . . where the evidence clearly establishes . . . that stability can be maintained without treatment or with less intensive treatment." (**Trial Ex. 626-0026 to -27 (Medicare Benefit Policy Manual Chapter 6, § 70 – Outpatient Hospital Services)**.)<br>  o (**Trial Ex. 1659, at 179:17–180:6, 181:1–18 (Bonfield)**.) |

**III.A.1 2013 Level of Care Guidelines (Ex. 3)**

**Common Criteria (Ex. 3-0007 to -0011 & Ex. 3-0089) | Admission Criteria (Ex. 3-0007 to -0011)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 7 | There must be a reasonable expectation that essential and appropriate services will improve the member's presenting problems within a reasonable period of time. Improvement of the member's condition is indicated by the reduction or control of the acute symptoms that necessitated treatment in a level of care. Improvement in this context is measured by weighing the effectiveness of treatment against the evidence that the member's condition will deteriorate if treatment is discontinued in the current level of care. Improvement must also be understood within the framework of the member's broader recovery/resiliency goals. | • Argument<br>  o Acuity<br>  o Maintenance of Function<br>  o Custodial/ Improvement<br>• Testimony<br>  o Fishman: Tr. 231:14-232:2<br>  o Plakun: Tr. 542:3-13 | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 6" (pg. 8–9).<br>• *See* II.A.1 "2012 Common Criteria, Admission Criteria, ¶ 6" (pg. 48–50).<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 8th black bullet and sub-bullets (page 8-0007)" (pg. 176–177).<br>• **[Regarding the 2012 LOCGs]**<br>  o "[I]mprovement is also considered when the member is likely to deteriorate if not for this level of care or this treatment plan." (**Trial Tr. 1042:23–1043:1 (Martorana)**.)<br>  o (**Trial Tr. 1055:6–16 (Martorana)** (same language has the same meaning in the 2013 LOCGs).)<br>  o (**Trial Tr. 1265:13–19 (Simpatico)**.)<br>• **[Regarding the 2017 LOCGs]**<br>  o "Presenting problems" are "the issues, complaints, and the condition that [the member] present[s] to treatment," and includes chronic conditions. (**Trial Tr. 982:5–6, 983:1–8 (Martorana)**.)<br>  o This criterion defines improvement as reduction or control of symptoms as well as prevention of deterioration. (**Trial Tr. 982:9–18 (Martorana)**.)<br>  o Maintenance of a member's condition, i.e., the prevention of deterioration, is included in this definition of improvement. (**Trial Tr. 982:21–25 (Martorana)**.)<br>  o "Reasonable period of time" is another way of saying "that the treatment is effective," and takes into account "the individual aspects of a member's condition." There is no "set period of time" because the determination of what is reasonable is "part of the clinical judgement that |

**III.A.1 2013 Level of Care Guidelines (Ex. 3)**
**Common Criteria (Ex. 3-0007 to -0011 & Ex. 3-0089) | Admission Criteria (Ex. 3-0007 to -0011)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | the reviewer is applying." (**Trial Tr. 983:9–984:1 (Martorana)**.)<br>o Dr. Fishman conceded that he is not "looking for an unreasonable period of time." (**Trial Tr. 110:3–4 (Fishman)**.) |
| 8 | The goal of treatment is to improve the member's presenting symptoms to the point that treatment in the current level of care is no longer required. | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 232:3-7<br>o <u>Plakun</u>: Tr. 542:3-7, 14-20 | • *See* II.A.1 "2012 Common Criteria, Admission Criteria, ¶ 7" (pg. 50–51).<br>o The same language is in the 2012 Level of Care Guidelines. (**Trial Tr. 1284:23–1285:5 (Simpatico)**.)<br>• **[Regarding the 2012 LOCGs]**<br>o This criterion does not state that care ceases once presenting symptoms are improved. It also does not state that coverage is provided only for crises. (**Trial Tr. 1043:2–15 (Martorana)**.)<br>o (**Trial Tr. 1266:1–10 (Simpatico)**.)<br>• **[Regarding the 2011 LOCGs]**<br>o "The goal of treatment is to make people better." (**Trial Tr. 1229:4–11 (Simpatico)**.) |
| 9 | Treatment is not primarily for the purpose of providing respite for the family, increasing the member's social activity, or for addressing antisocial behavior or legal problems, but is for the active treatment of a behavioral health condition. | • <u>Argument</u><br>o Custodial/ Improvement<br>o Maintenance of Function<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 232:8-10 | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 8" (referring to I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 8" (pg. 10–11).<br>o The same language is in the 2012 Level of Care Guidelines. (**Trial Tr. 1055:17–1056:3 (Martorana); Trial Tr. 1285:6–16 (Simpatico)**.) |

**III.A.1 2013 Level of Care Guidelines (Ex. 3)**

**Common Criteria (Ex. 3-0007 to -0011 & Ex. 3-0089) | Admission Criteria (Ex. 3-0007 to -0011)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 10 | The provider and, whenever possible, the member develop a treatment plan that stems from the member's presenting condition, and includes. . . outcomes that are . . . directly related to the reason service in the proposed level of care is being requested. | • Argument<br>  o Acuity<br>• Testimony<br>  o Fishman: Tr. 219:12-19 | • Dr. Fishman's testimony refers to Criterion 10 of the 2012 Level of Care Guidelines.<br>• *See* II.A.1 "2012 Common Criteria, Admission Criteria, ¶ 10" (pg. 51).<br>• **[Regarding 2011 LOCGs]**<br>  o Similar criterion requires that the "treatment plan articulates the problems . . . in such a way that it lends itself to having a way of measuring progress and allocating tasks to team members." (**Trial Tr. 1233:10–12 (Simpatico)**.)<br>• **[Regarding the 2012 LOCGs]**<br>  o Similar criterion "highlights what basic good clinical treatment is in regard to the treatment plan so that a good treatment plan would be taking into account the member's presenting condition and the factors that require this level of care, setting specific goals for improvement, they're measurable and specific interventions, and then would obviously adjust them as time went on if the member improved, didn't improve, or got worse." (**Trial Tr. 1044:11–18 (Martorana)**.) |

**III.A.2 2013 Level of Care Guidelines (Ex. 3)**
**Common Criteria (Ex. 3-0007 to -0011 & Ex. 3-0089) | Continued Service Criteria (Ex. 3-0089)**

**2.** Continued Service Criteria (Ex. 3-0089)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 5 | There continues to be evidence that the member is receiving active treatment, and there continues to be a reasonable expectation that the member's condition will improve further. Lack of progress is being addressed by an appropriate change in the member's treatment plan, and/or an intervention to engage the member in treatment. | • Argument<br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• Testimony<br>o Fishman: Tr. 232:24-233:11 | • *See* II.A.2 "2012 Common Criteria, Continued Service Criteria, ¶ 5" (pg. 52–53).<br>o The same language appears in the 2012 Level of Care Guidelines. (**Trial Tr. 1056:4–11 (Martorana)**; (**Trial Tr. 1285:17–1286:1 (Simpatico)**.)<br>• **[Regarding the 2012 LOCGs]**<br>o This criterion ensures that members are receiving active treatment that is expected to improve their condition. (**Trial Tr. 1046:2–6 (Martorana); Trial Tr. 1267:24–1268:3 (Simpatico)**.)<br>o "Improvement" means that "the problems that have been identified have decreased in a measurable fashion." Prevention of deterioration is a component of improvement. (**Trial Tr. 1045:15–1046:13 (Martorana)**.)<br>o The Medicare Benefit policy manual defines active treatment as services that, among other things, must be "[r]easonably expected to improve the patient's condition." (**Trial Ex. 655-0007 (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services)**.) |
| 6 | The member's current symptoms and/or history provide evidence that relapse or a significant deterioration in functioning would be imminent if the member was transitioned to a lower level of care or, in the case of outpatient care, | • Argument<br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Plakun: Tr. | • *See* II.A.2 "2012 Common Criteria, Continued Criteria, ¶ 6" (pg. 53).<br>o The same language appears in the 2012 Level of Care Guidelines. (**Trial Tr. 1056:4–11 (Martorana)**; (**Trial Tr. 1285:17–1286:1 (Simpatico)**.)<br>• **[Regarding the 2012 LOCGs]**<br>o The risk of relapse needs to be near in time, rather than |

**III.A.2 2013 Level of Care Guidelines (Ex. 3)**
**Common Criteria (Ex. 3-0007 to -0011 & Ex. 3-0089) | Continued Service Criteria (Ex. 3-0089)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | was discharged. | 543:3-16 | indefinite in time, in order to keep a member in a level of care because relapse is a common occurrence in psychiatric and substance abuse treatment. (**Trial Tr. 1047:14–21 (Martorana)**.)<br>○ "'[I]mminent' means a period of time, a duration of time that is consistent with being able to conclude that it is the removal from that level of care that causes the deterioration." (**Trial Tr. 1269:15–18 (Simpatico)**.)<br>○ **[Regarding the 2017 LOCGs]** (**Trial Tr. 994:10–995:2 (Martorana)** (discharge involves a feedback loop which assesses whether a patient can be safely and effectively treated in the transitional level of care per that level's admission criteria).) |

**B.** Intensive Outpatient Program: Mental Health Conditions (Ex. 3-0022 to -0025)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards Of Care |
|---|---|---|---|
| [Any] 1<br><br>[Any] 2<br><br>[Any] 3 | Any ONE of the following criteria must be met …<br>************************<br>Moderate symptoms of a mental health condition cannot be managed in a less intensive level of care. . .<br>************************<br>Moderate impairment in the member's psychological, social, occupational, education, or other area of functioning has impacted the member's ability to perform regular daily activities as compared to baseline. -OR-<br>************************<br>The member requires the support of a structured environment to complete treatment goals and develop a plan for post-discharge services in a less intensive setting. | • Plaintiffs do not challenge criteria "Any" 2 and 3.<br>************************<br>"Any" 1<br>• Argument<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Fishman: *E.g.*, Tr. 97:10-14; 213:6-18<br>  o Plakun: *E.g.*, Tr. 511:25-512:6, 526:2-527:1 | "Any" 1<br>• Dr. Fishman's and Dr. Plakun's testimony consists of generalized statements not directed at this criterion.<br>• Plaintiffs fail to offer proof that these alternative criteria, when considered together, deviate from generally accepted standards of care.<br>• **[Regarding the 2017 LOCGs]**<br>  o The preferred method of treatment is to treat an individual in a less restrictive setting that offers safe and effective care. This criterion requires care advocates and providers to assess the member's entire condition and determine whether that member can be safely and effectively treated at a less restrictive level of intensity. (**Trial Tr. 967:12–977:24 (Martorana)**; **Trial Tr. 1175:1–1177:7 (Simpatico)**.)<br>  o The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources.<br>    ▪ (**Trial Tr. 968:25–971:23 (Martorana)**.)<br>    ▪ (**Trial Ex. 634-0022** (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders) ("Individuals should be treated in the least restrictive setting that is likely to prove safe and effective.").)<br>    ▪ (**Trial Ex. 639-0016** (APA Practice |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards Of Care |
|---|---|---|---|
| | | | Guideline for the Treatment of Patients With Major Depressive Disorder) ("The psychiatrist should determine the least restrictive setting for treatment that will be most likely not only to address the patient's safety, but also to promote improvement in the patient's condition.").)<br>• **[Regarding Generally Accepted Standards of Care in General]**.<br>○ Matching patients to the least restrictive level of care that will provide effective treatment is "a generally standard approach" and "an important principle" because the concepts of a least restrictive level of care and of effective treatment are "equally important" principles. (**Trial Tr. 162:3–9 (Fishman)**.)<br>○ CMS outpatient guidelines provide that "[s]ervices are noncovered . . . where the evidence clearly establishes . . . that stability can be maintained without treatment or with less intensive treatment." (**Trial Ex. 626-0026 to -27 (Medicare Benefit Policy Manual Chapter 6, § 70 – Outpatient Hospital Services)**.)<br>○ (**Trial Ex. 1659, at 179:17–180:6, 181:1–18 (Bonfield)**.) |
| [All] 2 | The member's co-occurring medical, mental health or substance use conditions can be safely managed in an intensive outpatient program. | • <u>Argument</u><br>○ Co-occurring<br>• <u>Testimony</u><br>○ <u>Plakun</u>: Tr. 525:11-529:14 | • Dr. Plakun's testimony concerns the 2015 Level of Care Guidelines.<br>• *See* V.A.1 "2015 Common Criteria, Admission Criteria, ¶ 1.6" (pg. 135–136) (referring to VIII.A.1 "2017 Common Criteria, Admission Criteria, 6th black bullet (page 8- |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards Of Care |
|---|---|---|---|
| | | | 0007)" (pg. 176–177).)<br>○ The criterion that co-occurring medical conditions can be "safely managed" is an intentional redundancy, designed to "make sure people think it through in the clinical process" and ensure that clinicians, especially new clinicians "don't forget to consider" whether co-occurring conditions can be safely managed. (**Trial Tr. 977:17–978:20 (Martorana)**.)<br>○ This criterion is in accord with generally accepted standards of care because "it speaks to . . . compiling a comprehensive understanding of a patient's current and past medical history and circumstances in order to understand how to understand the presenting picture, and it necessarily includes an understanding of their behavioral health history and any general medical conditions that they may have."(**Trial Tr. 1179:5–10 (Simpatico)**.)<br>○ "Manage" means an individual's co-occurring conditions are treated to the point where their symptoms do not interfere with the treatment of the primary diagnosis. In order for a condition to be "managed," it must also be treated effectively, if possible. (**Trial Tr. 973:16–18 (Martorana);** *see also* **Trial Tr. 975:1–2**)("That's how you manage something; you [consider whether co-occurring conditions can be effectively addressed at the level of care].").) |

**C.** Outpatient: Mental Health Conditions (Ex. 3-0026 to -0028)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| [Consider] 2 | The member refuses further treatment or repeatedly does not adhere with recommended treatment despite attempts to enhance the member's engagement in treatment, peer support and other community support services. In such cases, the provider explains the risks of discontinuing treatment to the member and, as appropriate, the member's family/social supports; alternative referrals are offered; and the member is provided with instructions for resuming services should the need arise in the future. | • Argument<br>  ○ Motivation<br>• Testimony<br>  ○ Fishman: Tr. 236:12-237:4, 135:10-136:15 | • Dr. Fishman's testimony consists of generalized comments about the Continued Service Criteria for the 2011 Level of Care Guidelines and the Outpatient: Substance Use Disorders section of the 2013 LOCGs.<br>• Plaintiffs' own expert did not have any critiques of the Outpatient level of care for the 2013 LOCGs.<br>  ○ (**Trial Tr. 576:23–577:1** (**Plakun**).)<br>• *See* I.A.2 "2011 Common Criteria, Continued Service Criteria, ¶ 4" (pg. 13–14).<br>• *See* I.C "2011 Outpatient: Mental Health Conditions, [Consider] 2" (pg. 23–24) (addressing identical language). |
| [All] 3 | Co-occurring substance use disorders, if present, are stable and are unlikely to undermine treatment of the mental health condition at this level of care. | • Argument<br>  ○ Co-occurring<br>• Testimony<br>  ○ Fishman: Tr. 221:23-223:23<br>  ○ Plakun: Tr. 526:14-16, 525:11-529:14. | • Dr. Fishman's testimony is directed at the guidelines for Residential Rehabilitation: Substance Use Disorders section of the 2012 LOCG.<br>• Dr. Plakun's testimony is directed at the Common Criteria section of the 2015 LOCG.<br>• Plaintiffs' own expert did not have any critiques of the outpatient level of care for the 2013 LOCG. (**Trial Tr. 576:23–577:1** (**Plakun**).) |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | • *See* I.C "2011 Outpatient: Mental Health Conditions, [All] 3" (pg. 22–23) (addressing identical language).<br>• *See* V.A.1 "2015 Common Criteria, Admission Criteria, ¶ 1.6" (pg. 135–136). |

**D.** Residential Treatment Center: Mental Health Conditions (Ex. 3-0033 to -0036)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| [Any] 1<br><br>[Any] 2<br><br>[Any] 3 | Any ONE of the following must be met …<br>******************<br>The member is experiencing a disturbance in mood, affect, or cognition resulting in behavior that cannot be safely managed in a less restrictive setting.<br>******************<br>There is imminent risk that severe, multiple and/or complex psychosocial stressors will produce significant enough distress or impairment in psychological, social, occupational/educational, or other important areas of functioning to undermine treatment in a lower level of care.<br>******************<br>The member has a co-occurring medical disorder or substance use disorder which complicates treatment of the presenting | • Plaintiffs do not challenge criterion "Any" 3.<br>******************<br>"Any" 1<br>• Argument<br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: *E.g.*, Tr. 97:10-14; 213:6-18<br>o Plakun: *E.g.*, Tr. 511:25-512:6, 526:2-527:1.<br>******************<br>"Any" 2<br>• Argument<br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: *E.g.*, Tr. 97:10-14; 213:6-18<br>o Plakun: *E.g.*, Tr. 511:25-512:6 | "Any" 1 and 2<br>• Dr. Fishman's and Dr. Plakun's testimony consists of only generalized comments not directed at this criterion.<br>• Plaintiffs fail to offer proof that these alternative criteria, when considered together, deviate from generally accepted standards of care.<br>• *See* I.D "2011 Residential Treatment Center: Mental Health Conditions, [Any] 2 and [Any] 3" (pg. 25–27) (addressing identical language).<br>• **[Regarding the 2017 LOCGs]** The preferred method of treatment is to treat an individual in a less restrictive setting that offers safe and effective care. This criterion requires care advocates and providers to assess the member's entire condition and determine whether that member can be safely and effectively treated at a less restrictive level of intensity.<br>o (**Trial Tr. 968:22–24 (Martorana)** ("[P]eople should be free to live their lives as much as possible, as much as reasonable, as safe as you can when you're instituting psychiatric treatment.").)<br>o (**Trial Tr. 1175:1–1177:7 (Simpatico)**.)<br>• **[Regarding the 2017 LOCGs]** The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources.<br>o (**Trial Tr. 968:25–971:23 (Martorana)**.)<br>o (**Trial Ex. 634-0022** (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders) ("Individuals should be treated in the least restrictive setting that is likely to prove safe and effective.").) |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | mental health condition to the extent that treatment in a Residential Treatment Center is necessary. | | ○ (**Trial Ex. 639-0016 (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder)** ("The psychiatrist should determine the least restrictive setting for treatment that will be most likely not only to address the patient's safety, but also to promote improvement in the patient's condition.").)<br>• According to the Medicare Benefit Policy Manual, Chapter 2, Inpatient Psychiatric Hospital Services, inpatient facilities "are required to admit only those patients whose admission to the unit is required for active treatment, *of an intensity that can be provided appropriately only in an inpatient hospital setting*."<br>○ (**Trial Ex. 655-0004 (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services)** (emphasis added).)<br>• *See* VIII.D.1 "2017 Residential Treatment Center: Mental Health Conditions, Admission Criteria, 3rd black bullet and sub-bullets (page 8-0018)" (pg. 187–188). |
| [All] 2.a. | Within 48 hours of admission, the following occurs:<br>a. A psychiatrist completes a comprehensive evaluation of the member. | • Argument<br>○ Acuity<br>• Testimony<br>○ Fishman: Tr. 142:15-143:10<br>○ Alam: Tr. 1586:19-1587:21 | • Dr. Fishman's testimony concerns the 2011 LOCGs.<br>• *See* I.D "2011 Residential Rehabilitation: Mental Health Conditions, [All] 2.a" (pg. 27) (addressing identical language).<br>• "It is prudent to have a physician see a patient in a setting which requires 24-hour confinement. It really is the community standard. It is the expectation that a patient will be seen by a physician as promptly as possible." (**Trial Tr. 1582:8–10 (Alam)**.) |
| [All] 3 | Subsequent psychiatric evaluations and consultations are available 24 hours a day. Visits with the treating psychiatrist | • Argument<br>○ Acuity<br>• Testimony<br>○ Fishman: Tr. 142:15-143:10 | • Dr. Fishman's testimony concerns the 2011 LOCGs.<br>• *See* I. D "2011 Residential Rehabilitation: Mental Health Conditions, [All] 3" (pg. 27) (addressing identical language). |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | occur at least 2 times per week. | ○ Alam: Tr. 1586:19-1587:21 | |
| [All] 4 | All relevant general medical services, including assessment and diagnostic, treatment, and consultative services are available as needed and provided with an urgency commensurate with the member's medical need. Co-occurring medical conditions can be safely treated in this level of care. | • Argument<br>○ Co-occurring<br>• Testimony<br>○ Fishman: Tr. 221:23-223:23 | • Dr. Fishman's testimony concerns the 2011 Level of Care Guidelines.<br>• *See* I. D "2011 Residential Rehabilitation: Mental Health Conditions, [All] 4" (pg. 28–29) (addressing identical language). |
| [All] 5 | Treatment in a Residential Treatment Center is not for the purpose of providing custodial care. Custodial care in a Residential Treatment Center is the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's mental health condition is not changing, or does not require trained clinical personnel to safely deliver services. Examples of | • Argument<br>○ Acuity<br>○ Drive Toward Lower Levels of Care<br>○ Maintenance of Function<br>○ Custodial/ Improvement<br>• Testimony<br>○ Plakun: Tr. 577:9-578:4 | • The same language appears in the 2012 LOCG.<br>○ (**Trial Tr. 1296:1–18 (Simpatico)**.)<br>○ *See* II.G "2012 Residential Rehabilitation: Substance Use Disorders, [All] 5.a" (pg. 75–76).<br>• Criterion 5(c) does not define custodial care. Rather, it addresses "continued active treatment, which is not custodial care but care that doesn't necessarily have to be provided at this level of treatment—level of intensity." Once a given level of intensity is no longer needed, it is appropriate for a member to step down.<br>○ (**Trial Tr. 1292:1–18 (Simpatico)**.) |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | custodial care include respite services, daily living skills instruction; days awaiting placement, activities that are social and recreational in nature, and interventions that are solely to prevent runaway/truancy or legal problems. Custodial care is characterized by the following:… | | |
| [All] 6 | Treatment in a Residential Treatment Center is for the active treatment of a mental health condition. Active treatment is a clinical process involving 24-hour care that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare. Active treatment is indicated by services that are all of the following:<br>a. Supervised and evaluated by a physician;<br>b. Provided under an individualized | • <u>Argument</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Plakun</u>: Tr. 577:9-21 | • This is an appropriate definition of active treatment.<br>o (**Trial Tr. 1292:19–1293:4 (Simpatico)**.)<br>• *See* X "December 2011 Custodial Care Coverage Determination Guideline, 6th black bullet and sub-bullets" (pg. 215-216). |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | treatment plan;<br>c. Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>d. Unable to be provided in a less restrictive setting; and are<br>e. Focused on interventions that are based on generally accepted standards of medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's condition to the extent that the member can be safely treated in a lower level of care. | | |

**E.** Intensive Outpatient Program: Substance Use Disorders (Ex. 3-0052 to -0055)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | Any <u>ONE</u> of the following criteria must be met … ******************** | • Plaintiffs <u>do not</u> criticize criteria "Any" 2 and 3. ************************ | "Any" 1<br>• Dr. Fishman's and Dr. Plakun's testimony is generalized, not directed at this specific criterion.<br>• Plaintiffs fail to offer proof that these alternative criteria, when considered together, deviate from generally accepted standards of care.<br>• **[Regarding the 2017 LOCGs]** The preferred method of treatment is to treat an individual in a less restrictive setting that offers safe and effective care. This criterion requires care advocates and providers to assess the member's entire condition and determine whether that member can be safely and effectively treated at a less restrictive level of intensity.<br>  ○ (**Trial Tr. 967:12–977:24** (**Martorana**).)<br>  ○ (**Trial Tr. 1175:1-1177:7** (**Simpatico**).)<br>• **[Regarding the 2017 LOCGs]**<br>  ○ The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association.<br>  ○ (**Trial Tr. 968:25–971:23** (**Martorana**).)<br>  ○ (**Trial Ex. 634-0022** (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders) ("Individuals should be treated in the least restrictive setting that is likely to prove safe and effective.").)<br>  ○ (**Trial Ex. 639-0016** (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder) ("The psychiatrist should determine the least restrictive setting for treatment that will be most likely not only to address the patient's safety, but also to promote |
| [Any] 1 | Moderate symptoms of a mental health condition cannot be managed in a less intensive level of care … -OR- ******************** | "Any" 1<br>• <u>Argument</u><br>  ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: *E.g.*, Tr. 97:10-14; 213:6-18<br>  ○ <u>Plakun</u>: *E.g.*, Tr. 511:25-512:6, 526:2-527:1 | |
| [Any] 2 | Moderate impairment in the member's psychological, social, occupational, educational, or other area of functioning has impacted the member's ability to perform regular daily activities as compared to baseline. –OR- ******************** | | |
| [Any] 3 | The member requires the support of a structured environment to complete treatment goals and develop a plan for post-discharge services in a less intensive setting. | | |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | improvement in the patient's condition.").)<br>• **[Regarding Generally Accepted Standards of Care in General]**.<br>  o Matching patients to the least restrictive level of care that will provide effective treatment is "a generally standard approach" and "an important principle" because the concepts of a least restrictive level of care and of effective treatment are "equally important" principles. (**Trial Tr. 162:3–9 (Fishman)**.)<br>  o CMS outpatient guidelines provide that "[s]ervices are noncovered . . . where the evidence clearly establishes…that stability can be maintained without treatment or with less intensive treatment." (**Trial Ex. 626-0026 to -27 (Medicare Benefit Policy Manual Chapter 6, § 70 – Outpatient Hospital Services)**.) |
| [All] 3 | The member's co-occurring medical, mental health or substance use conditions can be safely managed in an intensive outpatient program. | • <u>Argument</u><br>  o Co-occurring<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 225:19-24, 228:2-14 | • Dr. Fishman's testimony concerns the Intensive Outpatient: Substance Use Disorders section of the 2012 Level of Care Guidelines.<br>• *See* I.E "2011 Intensive Outpatient Program: Substance Use Disorders, [All] 3-4" (pg. 31–33) (addressing similar language).<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 6th black bullet (page 8-0007)" (pg. 176–177). |
| [All] 4 | The member or his/her family/social support system understands and can comply with the requirements of an IOP, or the member is likely to participate in treatment | • <u>Argument</u><br>  o Motivation<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 235:8-14 | • *See* I.E "2011 Intensive Outpatient Program: Substance Use Disorders, [All] 5" (pg. 33–35) (addressing identical language).<br>  o (**Trial Tr. 1293:5–19 (Simpatico)**.) |

**III.E. 2013 Level of Care Guidelines (Ex. 3) | Intensive Outpatient Program: Substance Use Disorders (Ex. 3-0052 to -0055)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | with the structure and supervision afforded by an IOP. | | |
| [All] 5.a. | A psychiatrist or addictionologist completes a comprehensive evaluation of the member when the member has been directly admitted from an inpatient setting. | • Argument<br>  ○ Acuity<br>• Testimony<br>  ○ Fishman: Tr. 235:15-19 | • *See* I.E "2011 Intensive Outpatient Program: Substance Use Disorders, [All] 6.a." (pg. 35) (addressing nearly identical language).<br>  ○ (**Trial Tr. 1293:20–1294:1** (**Simpatico**).)<br>  ○ (**Trial Tr. 1619:14–1620:1** (**Alam**) ("Most of our patients get into IOP. They've not had care before. But, more importantly, IOP is a common step down from an acute treatment setting such as inpatient. So they transition from a higher level of care to IOP. That can—there's a significant transition, especially for an individual who has recently been at higher risk, as determined by a risk assessment. So it is prudent to make sure that a patient is seen quickly after an acute transition between levels of care.").) |
| [All] 7.a. | A psychiatrist or addictionologist continues to see the member at least weekly when the member has been directly admitted from an inpatient setting. | • Argument<br>  ○ Acuity<br>• Testimony<br>  ○ Fishman: Tr. 235:20-25 | • (**Trial Tr. 1256:9-13** (**Simpatico**) ("Well, it describes what we would expect to have happen if there was good continuity of care and reaching out to crucial pieces of the person's—the patient's world so as to, again, have as many links to relevant consequences of their substance use disorder folded into the treatment plan.").) |

**F.** Outpatient: Substance Use Disorders (Ex. 3-0056 to -0058)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| <br><br>[Any] 1<br><br><br><br>[Any] 2 | Any ONE of the following criteria must be met …<br>**************************<br>The member's use of alcohol or drugs meets criteria for a substance use disorder.<br>**************************<br>Lapse has occurred or is imminent and treatment is needed to maintain/regain abstinence. | • Plaintiffs do not challenge criterion "Any" 1.<br>*******************<br>"Any" 2<br>• Argument<br>  o Acuity<br>• Testimony<br>  o Fishman: Tr. 236:2-10 | • Plaintiffs fail to offer proof that these alternative criteria, when considered together, deviate from generally accepted standards of care.<br>• **[Regarding identical language in the 2011 LOCGs]**<br>  o "Well, I think, number one [of the "Any" criteria] is essentially the definition of who would be eligible to be appropriate for an outpatient substance use disorder program. And two is actually superfluous. So, I think, 'The member's use of alcohol or drugs meets criteria for a substance use disorder,' that is pretty inclusive criteria." (**Trial Tr. 1257:16-21 (Simpatico)**.) |
| [Consider] 2 | The member refuses further treatment or repeatedly does not adhere with recommended treatment despite attempts to enhance the member's engagement in treatment, and/or peer support and other community support services. In such cases, the provider explains the risks of discontinuing treatment to the member and, as appropriate, the member's family/social supports, alternative referrals are provided in writing, and the member is provided with instructions for resuming services should the need arise in the future. | • Argument<br>  o Motivation<br>• Testimony<br>  o Fishman: Tr. 236:12-237:4, 135:10-136:15 | • *See* I.F "2011 Outpatient: Substance Use Disorders, [Consider] 2" (pg. 38–39) (addressing identical language).<br>• Treatment is not effective if the member refuses to engage.<br>  o (**Trial Tr. 1295:13–21 (Simpatico)** ("Because this describes a situation where a person is by definition not engaging and actively participating in their own treatment despite appropriate levels of motivation; and, you know, at a certain point a judgment needs to be made that the person is not engaging in their own treatment, and so treatment—that's a legitimate basis to terminate treatment and to do so under—under the—by leaving the door open if the patient—person changes their mind in the future, and to give them |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | alternatives is the correct way to do that.").) |

## G. Residential Rehabilitation: Substance Use Disorders (Ex. 3-0067 to -0070)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | Residential rehabilitation is comprised of acute overnight services . . . . | • <u>Argument</u><br>  o Acuity<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 281:1-6 | • Dr. Fishman's testimony discusses the March 27, 2017 Custodial Care CDG.<br>• *See* I.G "2011 Residential Rehabilitation: Substance Use Disorders, Intro." (pg. 40) (addressing identical language). |
| <br><br><br>[Any] 1<br><br><br><br><br><br><br>[Any] 2 | Any <u>ONE</u> of the following criteria must be met …<br>**********************<br>The member continues to use alcohol or drugs, and the member's functioning has deteriorated to the point that the member cannot be safely treated in a less restrictive level of care.<br>**********************<br>The member continues to use alcohol or drugs, is at risk of exacerbating a serious co-occurring medical condition, and cannot be safely treated in a lower level of care.<br>********************** | "Any" 1-3<br>• <u>Argument</u><br>  o Acuity<br>  o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 233:13-20<br>*******************<br>"Any" 4<br>• <u>Argument</u><br>  o Acuity<br>  o Co-occurring<br>  o Drive Toward Lower Levels of Care | "Any" 6<br>• Dr. Fishman's testimony concerns the Residential Rehabilitation: Substance Use Disorders section of the 2012 LOCGs.<br>• Plaintiffs fail to offer proof that these alternative criteria, when considered together, deviate from generally accepted standards of care.<br>• The "Any" Criteria must be read in conjunction. Members do not need to satisfy each criterion.<br>  o (**Trial Tr. 1287:2–4** (**Simpatico**) ("[T]hat's a pretty broad landing pad to match someone who is in need of this level of care, but it's not necessary that that one is satisfied. There are other options as well.").)<br>  o (**Trial Tr. 1594:19–1595:7** (**Alam**).)<br>• Criterion "Any" 2<br>  o (**Trial Tr. 1287:5–1288:7** (**Simpatico**).) |

**III.G. 2013 Level of Care Guidelines (Ex. 3) | Residential Rehabilitation: Substance Use Disorders (Ex. 3-0067 to -0070)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| [Any] 3<br><br><br><br><br><br><br>[Any] 4<br><br><br><br><br><br><br><br>[Any] 5<br><br><br><br><br>[Any] 6 | There is a high risk of harm to self or others due to continued and severe alcohol or drug use which prohibits treatment from safely occurring in a less restrictive level of care.<br>**********************<br>There is a high risk that continued use of alcohol or drugs will exacerbate a co-occurring medical condition to the extent that treatment in a less restrictive level of care cannot be safely provided.<br>*********************<br>There is a high risk of developing severe withdrawal symptoms which cannot be safely treated in a lower level of care.<br>*********************<br>The member is experiencing withdrawal symptoms that do not compromise the member's medical status to the extent that treatment in Acute Inpatient is indicated, but the symptoms are of extreme subjective severity and the member lacks resources or a functional social support system needed to manage the symptoms | • <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 233:13-23<br>********************<br>"Any" 5<br>• <u>Argument</u><br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 233:13-25<br>********************<br>"Any" 6<br>• <u>Argument</u><br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 221:23-222:19 |   ○ (**Trial Tr. 1594:19–1595:7 (Alam)**.)<br>• Criterion "Any" 3<br>  ○ (**Trial Tr. 1288:8–21 (Simpatico)**.)<br>  ○ (**Trial Tr. 1594:19–1595:7 (Alam)**.)<br>• Criterion "Any" 4<br>  ○ (**Trial Tr. 1288:22–1289:13 (Simpatico)**.)<br>  ○ (**Trial Tr. 1594:19–1595:7 (Alam)**.)<br>• Criterion "Any" 5<br>  ○ (**Trial Tr. 1289:14–1290:2 (Simpatico)**.)<br>  ○ (**Trial Tr. 1594:19–1595:7 (Alam)**.)<br>• Criterion "Any" 6<br>  ○ *See* II.G "2012 Residential Rehabilitation: Substance Use Disorders, [Any] Criterion" (pg. 72–73).<br>• *See* I.G "2011 Residential Rehabilitation: Substance Use Disorders, [Any] 1-6." (pg. 40–44) (addressing substantially similar language). |

**III.G. 2013 Level of Care Guidelines (Ex. 3) | Residential Rehabilitation: Substance Use Disorders (Ex. 3-0067 to -0070)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | in a lower level of care. | | |
| [All] 2.a. | Within 48 hours of admission, the following occurs:<br>a. A psychiatrist/addictionologist completes a comprehensive evaluation of the member… | • Argument<br>  o Acuity<br>• Testimony<br>  o Fishman: Tr. 234:1-7<br>  o Alam: Tr. 1586:19-1587:21 | • *See* I.G "2011 Residential Rehabilitation: Substance Use Disorders, [All] 2.a." (pg. 44) (addressing identical language).<br>  o (**Trial Tr. 1595:8–1596:5 (Alam)**.)<br>  o (**Trial Tr. 1290:3–8 (Simpatico)**.) |
| [All] 3 | Subsequent psychiatric evaluations and consultations are available 24 hours a day. Visits with the treating psychiatrist/addictionologist occur at least 2 times per week. | • Argument<br>  o Acuity<br>• Testimony<br>  o Fishman: Tr. 234:1-10<br>  o Alam: Tr. 1586:19-1587:21 | • *See* I.G "2011 Residential Rehabilitation: Substance Use Disorders, [All] 3" (pg. 44–45) (addressing identical language).<br>  o (**Trial Tr. 1291:6–13 (Simpatico)**.)<br>  o (**Trial Tr. 1595:8–1596:5 (Alam)**.) |
| [All] 4 | All relevant general medical services, including assessment and diagnostic, treatment, and consultative services are available as needed and provided with an urgency that is commensurate with the member's medical need. Co-occurring medical conditions can be safely treated in this level of care. | • Argument<br>  o Acuity<br>  o Co-occurring<br>• Testimony<br>  o Fishman: Tr. 221:23-223:23 | • Dr. Fishman's testimony concerns the Residential Rehabilitation: Substance Use Disorders section of the 2012 Level of Care Guidelines.<br>• *See* II.G "2012 Residential Rehabilitation: Substance Use Disorders, [All] 4" (pg. 74–75) (addressing identical language). |
| [All] 5 | Treatment in Residential Rehabilitation is not for the | • Argument<br>  o Acuity | • *See* II.G "2012 Residential Rehabilitation: Substance Use Disorders, [All] 5.a." (pg. 75–76) (addressing |

**III.G. 2013 Level of Care Guidelines (Ex. 3) | Residential Rehabilitation: Substance Use Disorders (Ex. 3-0067 to -0070)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | purpose of providing custodial care. Custodial care in Residential Rehabilitation involves the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's substance use disorder is not changing, or does not require trained clinical personnel to safely deliver services. Examples of custodial care include respite services, daily living skills instruction, days awaiting placement, activities that are social and recreational in nature, and interventions that are solely to prevent runaway/truancy or legal problems. Custodial care is characterized by the following:<br>a. The member's presenting signs and symptoms have been stabilized, resolved, or a baseline level of functioning has been achieved;<br>b. The member is not responding to treatment or otherwise is not improving;<br>c. The intensity of active | ◦ Maintenance of Function<br>◦ Drive Toward Lower Levels of Care<br>◦ Custodial/ Improvement<br>• <u>Testimony</u><br>◦ <u>Fishman</u>: Tr. 234:11-14 | identical language).<br>◦ (**Trial Tr. 1291:6–13 (Simpatico)**.)<br>◦ (**Trial Tr. 1595:8–1596:5 (Alam)**.)<br>• *See, e.g.*, X "December 2011 Custodial Care Coverage Determination Guidelines, 2nd black bullet" and "3rd black bullet" (pg. 211–214). |

III.G. 2013 Level of Care Guidelines (Ex. 3) | Residential Rehabilitation: Substance Use Disorders (Ex. 3-0067 to -0070)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | treatment provided in a residential setting is no longer required or services can be safely provided in a less intensive setting. | | |
| [All] 6.a. | 6. Treatment in Residential Rehabilitation is for the active treatment of a substance use disorder. Active treatment is a clinical process involving 24-hour care that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare. Active treatment is indicated by services that are all of the following:<br>a. Supervised and evaluated by a physician;<br>b. Provided under an individualized treatment plan;<br>c. Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>d. Unable to be provided in a less restrictive setting; and are | • <u>Argument</u><br>  ○ Acuity<br>  ○ Maintenance of Function<br>  ○ Drive Toward Lower Levels of Care<br>  ○ Custodial/ Improvement<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 234:25-235:3 | • *See* II.G "2012 Residential Rehabilitation: Substance Use Disorders, [All] 5.b." (pg. 76–78) (addressing identical language).<br>  ○ (**Trial Tr. 1291:6–13 (Simpatico)**.)<br>  ○ (**Trial Tr. 1595:8–1596:5 (Alam)**.)<br>• The subparts of this criterion constitute an accurate description of "active services."<br>  ○ (**Trial Tr. 1292:19–1293:4 (Alam)**.)<br>• *See, e.g.*, IX "August 2010 Custodial Care Coverage Determination Guidelines, 5th black bullet and sub-bullets" (pg. 203–207). |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | e. Focused on interventions that are based on generally accepted standards of medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's condition to the extent that the member can be safely treated in a lower level of care. | | |

# IV. 2014 Level of Care Guidelines (Ex. 4)

## A. Common Criteria (Ex. 4-0007 to -0010)

### 1. Admission Criteria (Ex. 4-0007 to -0010, first column under "Level of Care Criteria")

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2nd black bullet (page 4-0007) | The member's current condition cannot be safely, efficiently and effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission). | • <u>Argument</u><br>  o Acuity<br>  o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 250:8-251:7<br>  o <u>Plakun</u>: Tr. 544:12-15, 544:21-545:5<br>  o <u>Allchin</u>: Tr. 1389:1-1390:14 | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8).<br>• *See* II.A.1 "2012 Common Criteria, Admission Criteria, ¶ 6 (pg. 48–50).<br>• "Why now" factors "should and must be considered" in making appropriate patient placement decisions and are "a vital clinical concern." (**Trial Tr. 164:17–165:25 (Fishman)**.)<br>• **[Commenting on various LOCGs]**<br>  o The concept of "why now" is not limited to acute factors, and includes consideration of a member's underlying chronic conditions to identify and treat the root cause of a member's condition. (**Trial Tr. 1000:8–1001:12, 1003:3–8, 1058:15–17 (Martorana); Trial Tr. 1396:22–1397:6 (Allchin); Trial Tr. 1576:10–1577:24 (Alam); Trial Ex. 1657, at 128:10–129:8 (Robinson-Beale); Trial Ex. 1659, at 214:4–5 (Bonfield)**.)<br>• Patients are typically driven to seek care after experiencing an acute change resulting from an internal or external change or an exacerbation of a co-occurring condition.<br>  o (**Trial Tr. 1058:18–1059:12 (Martorana); Trial Tr. 1604:14–1605:1 (Alam)**.)<br>• An "acute change" is "a departure from a baseline . . . such that it |

**IV.A.1 2014 Level of Care Guidelines (Ex. 4)**

**Common Criteria (Ex. 4-0007 to -0010) | Admission Criteria (Ex. 4-0007 to -0010, first column under "Level of Care Criteria")**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | likely is the basis for which someone comes to the attention for seeking care or changing ongoing care." (**Trial Tr. 1303:12–15 (Simpatico)**.)<br>• An acute change does not require an "acute crisis." (**Trial Tr. 1303:16–1304:4 (Simpatico)**.)<br>• "Sometimes it's external motivation" that constitutes the "acute change" leading the member to seek treatment. (**Trial Tr. 1396:22–1397:16 (Allchin)**.)<br>• For someone who is "just chronically miserable" and "just sick and tired of being sick and tired," the decision to seek treatment "now and not yesterday" is itself "the acute change" that constitutes the "why now." (**Trial Tr. 193:17–10 (Fishman)**.)<br>• ASAM contains similar language directing providers to focus on the patient's "current status" and "changing situation."<br>  ○ (**Trial Ex. 662-0077** (ASAM Criteria) ("Risk assessment must integrate the patient's history, *current status*, and *changing situation*. The patient's historical function *does not* override the current status when assessing 'here and now' severity and level of function. However, the 'here and now' current status of an individual's severity and level of function *does* override the patient's history.") (emphases added).)<br>  ○ (**Trial Tr. 1305:2–1306:6 (Simpatico)**.)<br>• LOCUS similarly emphasizes the "here and now" in assessing a patient's treatment level.<br>  ○ (**Trial Ex. 653-0007** (LOCUS for Psychiatric and Addiction Services) ("Since LOCUS is designed as a dynamic instrument, scores should be expected to change over time. Scores are generally assigned on a here and |

**IV.A.1 2014 Level of Care Guidelines (Ex. 4)**

**Common Criteria (Ex. 4-0007 to -0010) | Admission Criteria (Ex. 4-0007 to -0010, first column under "Level of Care Criteria")**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | now basis representing the clinical picture at the time of evaluation."); *see also* **Trial Tr. 1304:21–23 (Simpatico)**.)<br>• **[Regarding Generally Accepted Standards of Care in General]**.<br>  o Matching patients to the least restrictive level of care that will provide effective treatment is "a generally standard approach" and "an important principle" because the concepts of a least restrictive level of care and of effective treatment are "equally important" principles. (**Trial Tr. 162:3–9 (Fishman)**.)<br>  o CMS outpatient guidelines provide that "[s]ervices are noncovered . . . where the evidence clearly establishes . . . that stability can be maintained without treatment or with less intensive treatment." (**Trial Ex. 626-0026 to -27 (Medicare Benefit Policy Manual Chapter 6, § 70 – Outpatient Hospital Services)**.)<br>  o (**Trial Ex. 1659, at 179:17–180:6, 181:1–18 (Bonfield)**.) |
| 6th black bullet and sub-bullets (page 4-0009 to -0010) | There is a reasonable expectation that services will improve the member's presenting problems within a reasonable period of time.<br>o Improvement of the member's condition is indicated by the reduction or control of the acute signs and symptoms that | • <u>Argument</u><br>  o Acuity<br>  o Maintenance of Function<br>  o Custodial/Improvement<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 250:8-15, 251:8-24, 252:6-253:1 | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 6" (pg. 8–9).<br>• *See* II.A.1 "2012 Common Criteria, Admission Criteria, ¶ 5" (pg. 47–48).<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 8th black bullet and sub-bullets (page 8-0007)" (pg. 177–178).<br>• Plaintiffs' own expert recognizes that this criterion gives attention to the prevention of deterioration.<br>  o (**Trial Tr. 252:12–14 (Fishman)** ("And exactly as before… in referring to the context where there is a tip of the hat to the prevention of deterioration . . . .").) |

**IV.A.1 2014 Level of Care Guidelines (Ex. 4)**

**Common Criteria (Ex. 4-0007 to -0010) | Admission Criteria (Ex. 4-0007 to -0010, first column under "Level of Care Criteria")**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | necessitated treatment in a level of care.<br>◦ Improvement in this context is measured by weighing the effectiveness of treatment against evidence that the member's signs and symptoms will deteriorate if treatment in the current level of care ends. Improvement must also be understood within the broader framework of the member's recovery and resiliency goals. | ◦ Plakun: Tr. 544:12-15, 545:9-13, 545:21-23 | • "'[A]cute' in this context refers to a departure from a baseline in a timely manner that represents an actionable departure from a clinical baseline."<br>◦ (**Trial Tr. 1309:14–16 (Simpatico)**.)<br>• This criterion is "consistent with the developing concept of the recovery movement in the mental health advocacy world and the general notion that care should be patient centric and should take into consideration in a prominent way how a patient conceptualizes their clinical—their mental illness or their substance use disorder; and that whatever is proposed and implemented in the way of treatment should be sensitive to that and be—be conducted in accordance with that."<br>◦ (**Trial Tr. 1309:20–1310:4 (Simpatico)**.) |
| 7th black bullet (page 4-0010) | Treatment is not primarily for the purpose of providing social, custodial, recreational, or respite care. | • Argument<br>◦ Custodial/Improvement<br>• Testimony<br>◦ Fishman: Tr. 250:8-15; 251:25-252:4<br>◦ Plakun: Tr. 519:18-22 | • *See* III.A.1 "2013 Common Criteria, Admission Criteria, ¶ 9" (pg. 81).<br>This language is substantially similar to the 2013 Level of Care Guidelines. (**Trial Tr. 1061:2–9 (Martorana); Trial Tr. 1310:10–18 (Simpatico)**.) |

**2.** Continued Service Criteria (Ex. 4-0007 to -0009, second column under "Level of Care Criteria")

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet and sub-bullets (page 4-0007 to -0008) | The admission criteria are still met, and active treatment is being delivered. For treatment to be considered "active treatment" services must be:<br>o Supervised and evaluated by the admitting provider;<br>o Provided under an individualized treatment plan that is focused on addressing the "why now" factors and makes use of clinical best practices; and<br>o Reasonably expected to stabilize the member's condition and/or the precipitating "why now" factors within a reasonable period of time. | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 250:8-15, 253:10-18<br>o <u>Plakun</u>: Tr. 546:1-19 | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107) (discussing meaning of "why now").<br>• Plaintiffs' expert admits "there's not a problem with the first sub-bullet."<br>o (**Trial Tr. 546:10 (Plakun)**.)<br>• The definition of "active treatment" is based on language contained in CMS Medicare guidelines.<br>o (**Trial Tr. 1062:5–9 (Martorana)**.)<br>o (**Trial Ex. 655-0007 (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services)** ("For services in an IPF to be designated as active treatment, they must be: Provided under an individualized treatment or diagnostic plan; Reasonably expected to improve the patient's condition or for the purpose of diagnosis; and Supervised and evaluated by a physician.").)<br>• The purpose of "why now" is to remind the care advocates and providers to assess all the reasons an individual is seeking treatment at a given point in time.<br>o (**Trial Tr. 1062:16–22** (**Martorana**).)<br>• **[Regarding the 2016 LOCGs]**<br>o Provider supervision, at certain levels, is necessary to ensure that the member is receiving effective care. (**Trial Tr. 1420:23–1422:12 (Allchin)**.)<br>o An individualized treatment plan includes consideration of "any past issues via whether they're |

**IV.A.2 2014 Level of Care Guidelines (Ex. 4)**

**Common Criteria (Ex. 4-0007 to -0010) | Continued Service Criteria (Ex. 4-0007 to -0009, second column under "Level of Care Criteria")**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | acute or chronic in nature." **(Trial Tr. 1422:24–25 (Allchin).)**<br>• **[Regarding the 2017 LOCGs]**<br>o "Reasonable period of time" is another way of saying "that the treatment is effective," and takes into account "the individual aspects of a member's condition." There is no "set period of time" because the determination of what is reasonable is "part of the clinical judgement that the reviewer is applying." (**Trial Tr. 983:9–984:1** (**Martorana**).)<br>o Dr. Fishman conceded that he is not "looking for an unreasonable period of time." (**Trial Tr. 110:3–4** (**Fishman**).)<br>• **[Regarding the 2017 LOCGs]**<br>(**Trial Tr. 994:10–995:2** (**Martorana**) (discharge involves a feedback loop which assesses whether a patient can be safely and effectively treated in the transitional level of care per that level's admission criteria).) |

**IV.A.3 2014 Level of Care Guidelines (Ex. 4)**

**Common Criteria (Ex. 4-0007 to -0010) | Discharge Criteria (Ex. 4-0007 to -0008, third column under "Level of Care Criteria")**

**3.** Discharge Criteria (Ex. 4-0007 to -0008, third column under "Level of Care Criteria")

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Black bullet and sub-bullets (page 4-0007 to -0008) | The continued stay criteria are no longer met. Examples include:<br>○ The "why now" factors which led to admission have been addressed to the extent that the member can be safely transitioned to a less intensive level of care or no longer requires treatment.<br>…<br>○ The member requires care that is primarily social, custodial, recreational, or respite.<br>…<br>○ The member is unwilling or unable to participate in treatment and involuntary treatment or guardianship is not being pursued. | • <u>Argument</u><br>○ Acuity<br>○ Maintenance of Function<br>○ Drive Toward Lower Levels of Care<br>○ Custodial/ Improvement<br>○ Motivation<br>• <u>Testimony</u><br>○ <u>Fishman</u>: Tr. 250:8-15, 253:21-254:14<br>○ <u>Plakun</u>: Tr. 546:22, 547:1-9 | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107) (discussing meaning of "why now").<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8) (discussing concept of least restrictive effective level of care).<br>• A member would not be discharged into a lower level of care if that level of care did not provide effective treatment.<br>○ (**Trial Tr. 1064:3–1065:7 (Martorana)**.)<br>• This criterion is "in accordance with the principle of care should be provided in a least restrictive, safe, and effective manner possible; and presuming that the 'why now' factors include a departure from a baseline that required services in a particular level of care, once those have been ameliorated or stabilized, it at least raises the question to see whether or not a less restrictive level of care would now be appropriate." (**Trial Tr. 1313:8–1313:14 (Simpatico)**.)<br>• **[Regarding the 2016 LOCGs]**<br>• The admission criteria for the level of care to which the member is being transitioned is part of the discharge criteria, thus ensuring that the member will be discharged to a lower level unless the member treatment will be both safe and effective. **(Trial Tr. 1424:11–1426:6 (Allchin)**.)<br>• **[Regarding the 2017 LOCGs]**<br>○ (**Trial Tr. 994:10–995:2 (Martorana)** (discharge involves a feedback loop which assesses whether a patient can be safely and effectively treated in the |

**IV.A.3 2014 Level of Care Guidelines (Ex. 4)**
**Common Criteria (Ex. 4-0007 to -0010) | Discharge Criteria (Ex. 4-0007 to -0008, third column under "Level of Care Criteria")**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | transitional level of care per that level's admission criteria).)<br>○ This criterion ensures that treatment will address a member's condition or suffering by ensuring that the member is willing and able to participate in treatment. (**Trial Tr. 995:21–996:21** (**Martorana**); (**Trial Tr. 1198:16–1199:16** (**Simpatico**).)<br>• **[Regarding the 2015 LOCGs]**<br>○ This criterion comports with generally accepted standards of care because "it's stating in a similar manner as previous versions that the continued stay criteria are no longer met and that the reasons for presentation, the so-called 'why now' factors, which led to admission, have been addressed to the extent that the member can be safely transitioned to a less intensive level of care, which is the whole point of treatment. And then, finally, it again addresses a situation where excluding an involuntary population, which is sort of a separate consideration, if a member is—that has capacity is unwilling or unable to participate in their own treatment after inadequate attempt to motivate them and engage them, then by definition they're not capable of participating in active treatment and there wouldn't be a medical necessity to continue treatment." (**Trial Tr. 1332:25–1333:13** (**Simpatico**).)<br>• **[Regarding Generally Accepted Standards of Care Generally]**<br>○ (**Trial Ex. 656-0033 (Medicare Benefit Policy Manual, Chapter 6, § 70.3 "Partial Hospitalization Services")** |

**IV.A.3 2014 Level of Care Guidelines (Ex. 4)**

**Common Criteria (Ex. 4-0007 to -0010) | Discharge Criteria (Ex. 4-0007 to -0008, third column under "Level of Care Criteria")**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | (it is "reasonably necessary" to deny coverage where the member "cannot, or refuse[s], to participate (due to their behavioral or cognitive status) with active treatment of their mental disorder (except for a brief admission necessary for diagnostic purposes), or . . . cannot tolerate the intensity of PHP.").) |

**B.** Intensive Outpatient Program: Mental Health Conditions (Ex. 4-0027 to -0033)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care…. | • <u>Argument</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Plakun</u>: Tr. 578:9-579:1, 579:4-15 | • **[Regarding the June 2016 LOCGs]**<br>o Dr. Plakun describes a portion of this criterion as "commendable."(**Trial Tr. 655:25–656:2 (Plakun)**.)<br>o The preamble is "a fairly succinct description of what this particular level of care is intended to focus upon in terms of severity of signs and symptoms and skills that might be imparted at this level to minimize the likelihood of recidivism to this more restrictive level of care." (**Trial Tr. 1324:3–7 (Simpatico)**.)<br>• *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107) (discussing "why now"). |

**IV.B.1 2014 Level of Care Guidelines (Ex. 4)**

**Intensive Outpatient Program: Mental Health Conditions (Ex. 4-0027 to -0033) | Admission Criteria (Ex. 4-0027 to -0033, first column under "Level of Care Criteria")**

**1.** Admission Criteria (Ex. 4-0027 to -0033, first column under "Level of Care Criteria")

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3rd black bullet (page 4-0028) | Co-occurring behavioral health or physical conditions can be safely managed. | • Argument<br>  ○ Co-occurring<br>• Testimony<br>  ○ Fishman: Tr. 190:23-191:13; 107:11-108:5; 108:7-24<br>  ○ Plakun: Tr. 523:19-21; 523:24-524:1; 525:8-25; 526:6-527:1; 527:4-528:25; 529:1-14; 529:17-530:2<br>  ○ Niewenhous: Tr. 1818:9-1820:18 | • The same language appears in the Common Criteria: Admission Criteria section of the 2017 Level of Care Guidelines.<br>  ○ (**Trial Tr. 1330:2–7 (Simpatico)**.)<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 6th black bullet (page 8-0007)" (pg. 176–177).<br>  ○ The criterion that co-occurring conditions can be "safely managed" is an intentional redundancy, designed to "make sure people think it through in the clinical process" and ensure that clinicians—especially new clinicians — "don't forget to consider" whether co-occurring conditions can be safely managed. (**Trial Tr. 977:17–978:20 (Martorana)**.)<br>  ○ This criterion is in accord with generally accepted standards of care because "it speaks to . . . compiling a comprehensive understanding of a patient's current and past medical history and circumstances in order to understand how to understand the presenting picture, and it necessarily includes an understanding of their behavioral health history and any general medical conditions that they may have."(**Trial Tr. 1179:5–10 (Simpatico)**.)<br>  ○ "Manage" means an individual's co-occurring conditions are treated to the point where their symptoms do not interfere with the treatment of the primary diagnosis. In order for a condition to be "managed," it must also be treated effectively, if possible.<br>  ○ (**Trial Tr. 973:16–18 (Martorana); *see also* Trial Tr. 975:1–2**) ("That's how you manage something; you [consider whether co-occurring conditions can be |

**IV.B.1 2014 Level of Care Guidelines (Ex. 4)**

**Intensive Outpatient Program: Mental Health Conditions (Ex. 4-0027 to -0033) | Admission Criteria (Ex. 4-0027 to -0033, first column under "Level of Care Criteria")**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | effectively addressed at the level of care].") |

**C.** Outpatient: Mental Health Conditions (Ex. 4-0034 to -0035)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | Assessment and diagnosis and active behavioral health treatment that are provided in an ambulatory setting. The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | • <u>Argument</u><br>  o Acuity<br>  o Maintenance of Function<br>  o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  o <u>Plakun</u>: Tr. 579:19-580:10 | • This criterion is substantially similar to language contained in the Common Criteria section of the 2014 Level of Care Guidelines.<br>  o (**Trial Tr. 1329:12-24 (Simpatico)**.)<br>  o *See* IV.A.1 "2014 Common Criteria: 2nd black bullet (page 4-0007)" (pg. 105–107) (discussing "why now"). |

**IV.C.1 2014 Level of Care Guidelines (Ex. 4)**

**Outpatient: Mental Health Conditions (Ex. 4-0034 to -0035) | Admission Criteria (Ex. 4-0034 to -0035, first column under "Level of Care Criteria")**

**1.** Admission Criteria (Ex. 4-0034 to -0035, first column under "Level of Care Criteria")

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3rd black bullet (page 4-0034) | Co-occurring behavioral health or physical conditions can be safely managed. | • Argument<br>o Co-occurring<br>• Testimony<br>o Plakun: Tr. 580:25-581:4 | • Similar language appears in the 2017 LOCGs.<br>o (**Trial Tr. 1330:2–7 (Simpatico)**.)<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 6th black bullet (page 8-0007)" (pg. 176–177).<br>o The criterion that co-occurring conditions can be safely managed is designed to "make sure people think it through in the clinical process" and ensure that clinicians, especially new clinicians "don't forget to consider" whether co-occurring conditions can be safely managed. (**Trial Tr. 977:17–978:20 (Martorana)**.)<br>o This criterion is in accord with generally accepted standards of care because "it speaks to . . . compiling a comprehensive understanding of a patient's current and past medical history and circumstances in order to understand how to understand the presenting picture, and it necessarily includes an understanding of their behavioral health history and any general medical conditions that they may have."(**Trial Tr. 1179:5–10 (Simpatico)**.) |
| 4th black bullet (page 4-0035) | Acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current | • Argument<br>o Acuity<br>• Testimony<br>o Plakun: Tr. 579:19-20, 580:13-24 | • This criterion allows for treatment for the prevention of relapse.<br>o (**Trial Tr. 1326:1–8 (Simpatico)**.)<br>• *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107) (discussing "why now"). |

**IV.C.1 2014 Level of Care Guidelines (Ex. 4)**

**Outpatient: Mental Health Conditions (Ex. 4-0034 to -0035) | Admission Criteria (Ex. 4-0034 to -0035, first column under "Level of Care Criteria")**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | condition can be safely, efficiently and effectively assessed and/or treated in this setting. | | |

**IV.D.1 2014 Level of Care Guidelines (Ex. 4)**
**Residential Treatment Center: Mental Health Conditions (Ex. 4-0043 to -0045) | Admission Criteria (Ex. 4-0043 to -0045, first column under "Level of Care Criteria")**

**D.** Residential Treatment Center: Mental Health Conditions (Ex. 4-0043 to -0045)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in a Residential Treatment Center is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | • Argument<br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Plakun: Tr. 581:11-22 | • The same language appears in the Outpatient: Mental Health section of the 2014 Level of Care Guidelines.<br>o (**Trial Tr. 1326:9–1327:4 (Simpatico)**.)<br>o *See* IV.C "2014 Outpatient: Mental Health, Preamble" (pg. 117) (referring to IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (discussing "why now")) (pg. 105–107)). |

**1.** Admission Criteria (Ex. 4-0043 to -0045, first column under "Level of Care Criteria")

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3rd black bullet (page 4-0043) | Co-occurring behavioral health or physical conditions can be safely managed. | • Argument<br>o Co-occurring<br>• Testimony<br>o Plakun: Tr. 581:11-12, 581:24-25, 582:3-5, | • The same language appears in the 2014 Outpatient: Mental Health section of the LOCG.<br>o (**Trial Tr. 1327:5-14 (Simpatico)**.)<br>• *See* IV.C.1 "2014 Outpatient Mental Health: Admission Criteria, 3rd black bullet (page 4-0034)" (pg. 118) (referring to VIII.A.1 "2017 Common Criteria, Admission Criteria, 6th black bullet (page 8-0007)") (pg. 176–177)). |

**IV.D.1 2014 Level of Care Guidelines (Ex. 4)**

**Residential Treatment Center: Mental Health Conditions (Ex. 4-0043 to -0045) | Admission Criteria (Ex. 4-0043 to -0045, first column under "Level of Care Criteria")**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | 582:11-13 | |
| 4th black bullet and sub-bullets (page 4-0044 | The "why now" factors leading to admission cannot be safely, efficiently or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors. Examples include:<br>• Acute impairment of behavior or cognition that interferes with activities of daily living to the extent that the welfare of the member or others is endangered.<br>• Psychosocial and environmental problems that are likely to threaten the member's safety or undermine | • Argument<br>○ Acuity<br>○ Maintenance of Function<br>○ Drive Toward Lower Levels of Care<br>• Testimony<br>○ Plakun: Tr. 581:11-12, 581:24-25, 582:7-13 | • The same language appears in the 2014 Residential Rehabilitation: Substance Use Disorders LOCG.<br>○ (**Trial Tr. 1327:5–14 (Simpatico)**.)<br>○ *See* IV.G.1 "2014 Residential Rehabilitation: Substance Use Disorders, Admission Criteria, 4th black bullet (page 4-0078)" (pg. 129–130).<br>• *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107) (discussing "why now"). |

**IV.D.1 2014 Level of Care Guidelines (Ex. 4)**

**Residential Treatment Center: Mental Health Conditions (Ex. 4-0043 to -0045) | Admission Criteria (Ex. 4-0043 to -0045, first column under "Level of Care Criteria")**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | engagement in a less intensive level of care without the intensity of services offered in this level of care. | | |

**IV.D.2 2014 Level of Care Guidelines (Ex. 4)**

**Residential Treatment Center: Mental Health Conditions (Ex. 4-0043 to -0045) | Continued Service Criteria (Ex. 4-0043, second column under "Level of Care Criteria")**

**2.** Continued Service Criteria (Ex. 4-0043, second column under "Level of Care Criteria")

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Language after "AND" | Treatment is not primarily for the purpose of providing custodial care.<br>• Custodial care involves services that don't seek to cure, are provided when the member's condition is unchanging, are not required to maintain stabilization, or don't have to be delivered by trained clinical personnel. | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 250:8-15; 251:25-252:4<br>o <u>Plakun</u>: Tr. 581:11-12, 581:24-25, 582:19-21. | • This is similar to language in the 2012 Residential Rehabilitation: Substance Use Disorders LOCG.<br>o (**Trial Tr. 1327:22–1328:5 (Simpatico)**.)<br>• *See* II.G "2012 Residential Rehabilitation: Substance Use Disorders, [All] 5.a" (pg. 75–76). |

**IV.D.3 2014 Level of Care Guidelines (Ex. 4)**
**Residential Treatment Center: Mental Health Conditions (Ex. 4-0043 to -0045) | Discharge Criteria (Ex. 4-0043, third column under "Level of Care Criteria")**

**3.** Discharge Criteria (Ex. 4-0043, third column under "Level of Care Criteria")

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Language after "AND" | Care is custodial.<br>Indications include:<br>• The member's signs and symptoms have been stabilized, resolved, or a baseline level of functioning has been achieved;<br>• The member's condition is not improving; or<br>• The intensity of active treatment in Inpatient is no longer required. | • Argument<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• Testimony<br>o Fishman: Tr. 250:8-15; 251:25-252:4<br>o Plakun: Tr. 581:11-12, 581:24-25, 582:19-583:7 | • This is similar to language in the 2012 Residential Rehabilitation: Substance Use Disorders LOCG.<br>o (**Trial Tr. 1328:6–10 (Simpatico)**.)<br>• *See* II.G "2012 Residential Rehabilitation: Substance Use Disorders, [All] 5.a" (pg. 75–76). |

**IV.E.1 2014 Level of Care Guidelines (Ex. 4)**
**Intensive Outpatient Program: Substance-Related Disorders (Ex. 4-0059 to -0065) | Admission Criteria (Ex. 4-0059 to -0065, first column under "Level of Care Criteria")**

**E.** Intensive Outpatient Program: Substance-Related Disorders (Ex. 4-0059 to -0065)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care…. | • Argument<br>  o Acuity<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Fishman: Tr. 254:15-24 | • The preamble is substantially similar to the preamble for the 2014 Residential Rehabilitation: Substance-Related Disorders LOCG.<br>  o (**Trial Tr. 1322:25–1324:10 (Simpatico)**.)<br>• *See* IV.G "2014 Residential Rehabilitation: Substance Related Disorders, Preamble" (pg. 128). |

**1.** Admission Criteria (Ex. 4-0059 to -0065, first column under "Level of Care Criteria")

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3rd black bullet (page 4-0060) | Co-occurring behavioral health or physical conditions can be safely managed. | • Argument<br>  o Co-occurring<br>• Testimony<br>  o Fishman: Tr. 254:15-255:10 | • The language is substantially similar to language in the 2017 LOCG.<br>  o (**Trial Tr. 1324:11–19 (Simpatico)**.)<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 6th black bullet (page 8-0007)" (pg. 176–177).<br>• *See* II.E "2012 Intensive Outpatient Program: Substance Use Disorders, [All] 3-4" (pg. 67–68) (addressing substantially similar language). |

**IV.F.1 2014 Level of Care Guidelines (Ex. 4)**
**Outpatient: Substance-Related Disorders (Ex. 4-0066 to -0067) | Admission Criteria (Ex. 4-0066 to -0067, first column under "Level of Care Criteria")**

**F.** Outpatient: Substance-Related Disorders (Ex. 4-0066 to -0067)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | … The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 255:16-21 | • The same language appears in the 2014 Intensive Outpatient Program: Substance Related-Disorders LOCG and the 2014 Residential Rehabilitation: Substance-Related Disorder LOCG.<br>o (**Trial Tr. 1324:20–1325:21 (Simpatico)**.)<br>o *See* IV.E "2014 Intensive Outpatient Program: Substance-Related Disorder, Preamble" (pg. 125).<br>o *See* IV. G "2014 Residential Rehabilitation: Substance-Related Disorder, Preamble" (pg. 128). |

**1.** Admission Criteria (Ex. 4-0066 to -0067, first column under "Level of Care Criteria")

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3rd black bullet (page 4-0066) | Co-occurring behavioral health or physical conditions can be safely managed. | • <u>Argument</u><br>o <u>Co-occurring</u><br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 190:23-191:13; 107:11-108:5; 108:7-24<br>o <u>Plakun</u>: Tr. 523:19-21; 523:24-524:1; | • Dr. Fishman's and Dr. Plakun's testimony concerns the 2015 Level of Care Guidelines.<br>• *See* VI.A.1 "2016 Common Criteria, Admission Criteria, ¶ 1.6" (pg. 156) (referring to VIII.A.1 "2017 Common Criteria, Admission Criteria, 6th black bullet (page 8-0007)" (pg. 176–177)).<br>o The criterion that co-occurring medical conditions can be safely managed is designed to |

**IV.F.1 2014 Level of Care Guidelines (Ex. 4)**

**Outpatient: Substance-Related Disorders (Ex. 4-0066 to -0067) | Admission Criteria (Ex. 4-0066 to -0067, first column under "Level of Care Criteria")**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | 525:8-25; 526:6-527:1; 527:4-528:25; 529:1-14; 529:17-530:2<br>◦ Niewenhous: Tr. 1818:9-1820:18 | "make sure people think it through in the clinical process" and ensure that clinicians, especially new clinicians "don't forget to consider" whether co-occurring conditions can be safely managed. (**Trial Tr. 977:17–978:20 (Martorana)**.)<br>◦ This criterion is in accord with generally accepted standards of care because "it speaks to . . . compiling a comprehensive understanding of a patient's current and past medical history and circumstances in order to understand how to understand the presenting picture, and it necessarily includes an understanding of their behavioral health history and any general medical conditions that they may have."(**Trial Tr. 1179:5–10 (Simpatico)**.) |
| 5th black bullet (page 4-0067) | Acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current condition can be safely, efficiently and effectively assessed and/or treated in this setting. | • Argument<br>◦ Acuity<br>◦ Maintenance of Function<br>• Testimony<br>◦ Fishman: Tr. 255:16-17, 255:22-256:05 | • This criterion provides for treatment of the prevention of relapse.<br>◦ (**Trial Tr. 1325:22–1326:8 (Simpatico)**.) |

**IV.G.1 2014 Level of Care Guidelines (Ex. 4)**

**Residential Rehabilitation: Substance-Related Disorders (Ex. 4-0077 to -0080) | Admission Criteria (Ex. 4-0077 to -0080, first column under "Level of Care Criteria")**

**G.** Residential Rehabilitation: Substance-Related Disorders (Ex. 4-0077 to -0080)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in Residential Rehabilitation is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that rehabilitation can be safely, efficiently and effectively continued in a less intensive level of care. | • Argument<br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 256:9-18 | • Similar language is in the 2014 Common Criteria of the LOCGs.<br>o (**Trial Tr. 1316:7–1317:8 (Simpatico)**.)<br>• *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105-107). |

**1.** Admission Criteria (Ex. 4-0077 to -0080, first column under "Level of Care Criteria")

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3rd black bullet (page 4-0077) | The "why now" factors leading to admission suggest that physical complications, if present, can be safely managed. | • Argument<br>o Acuity<br>o Co-occurring<br>• Testimony<br>o Fishman: Tr. 255:16-17, 255:22-256:05<br>o Alam: Tr. 1611:6- | • Dr. Fishman's testimony concerns the 2014 Outpatient: Substance-Related Disorder LOCG.<br>• This criterion is "one of the fundamental inclusion criteria of making a judgment about the least restrictive, safe, and effective place where care can be provided, and here it is explicitly taking into consideration other general medical complications; and that in making a |

**IV.G.1 2014 Level of Care Guidelines (Ex. 4)**

**Residential Rehabilitation: Substance-Related Disorders (Ex. 4-0077 to -0080) | Admission Criteria (Ex. 4-0077 to -0080, first column under "Level of Care Criteria")**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | 1612:1 | determination about level of care, you would necessarily determine that those conditions could be safely managed in that level of care."<br>  ○ (**Trial Tr. 1317:18–24** (**Simpatico**).)<br>• If a member requires effective medical care, that member should be treated first in a medical setting.<br>  ○ (**Trial Tr. 1610:7–1612:1** (**Alam**).) |
| 4th black bullet (page 4-0078) | The "why now" factors leading to admission and/or the member's history of response to treatment suggest that there is imminent or current risk of relapse which cannot be safely, efficiently and effectively managed in a less intensive level of care. Examples include:<br>• A co-occurring mental health condition is stabilizing but the remaining signs and symptoms are likely to undermine treatment in a less intensive setting;<br>• The member is in immediate danger of relapse, and the history or treatment suggest that the structure and support | • <u>Argument</u><br>  ○ Acuity<br>  ○ Maintenance of Function<br>  ○ Drive Toward Lower Levels of Care<br>  ○ Co-occurring<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 256:9-22 | • This criterion is "a really nice example of illustrating why there's not a finite time period in many of these definitions, because care needs to be individualized and this explicitly says your consideration of the likelihood of relapse is to be informed by the—that individual patient's history. . . . [H]istory is a reasonably good predictor of future events, and so this requires the consideration of past events in the case of that particular patient to make a determination of how—how it meets the inclusion criteria for admitting someone to residential rehab."<br>  ○ (**Trial Tr. 1319:13–23** (**Simpatico**).)<br>• Similar language appears in the 2015 and 2016 LOCGs.<br>  ○ (**Trial Tr. 1612:3–23** (**Alam**).)<br>  ○ *See* V.G.1 "2015 Residential Rehabilitation: Substance-Related Disorders, Admission Criteria, ¶ 1.3" (pg. 151–152).<br>  ○ *See* VI.G.1 "2016 Residential Rehabilitation: Substance-Related Disorders, Admission Criteria, ¶ 1.3" (pg. 170–171) (referring to VIII.G.1 "2017 Residential Rehabilitation: Substance-Related Disorders, Admission Criteria, 3rd black bullet |

**IV.G.1 2014 Level of Care Guidelines (Ex. 4)**
**Residential Rehabilitation: Substance-Related Disorders (Ex. 4-0077 to -0080) | Admission Criteria (Ex. 4-0077 to -0080, first column under "Level of Care Criteria")**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | provided in this level will be needed to control the recurrence. | | and sub-bullets (page 8-0035)" (pg. 194–195)). |
| 5th black bullet and sub-bullets (page 4-0079 to -0080) | The "why now" factors leading to admission cannot be safely, efficiently or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors. Examples include:<br>• Acute impairment of behavior or cognition that interferes with activities of daily living to the extent that the member's condition cannot be safely, efficiently and effectively managed in a less intensive level of care;<br>• Psychosocial and environmental problems that threaten the member's safety or undermines engagement | • <u>Argument</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 256:9-11, 258:5-10 | • This criterion "speaks to a departure from a baseline as the basis for considering a change in the intensity or appropriate level of care to deliver safe, efficient, and effective care, and it specifically lists categories in which the departure from the baseline might occur; and, again, it does so not in the way of necessary inclusion criteria but in the way of examples."<br>o (**Trial Tr. 1320:13–19 (Simpatico)**.)<br>• The ASAM criteria contains language noting that it is appropriate to reevaluate a patient's level of a care once the patient's presenting symptoms have stabilized.<br>o (**Trial Ex. 662-0133 (ASAM Criteria)** ("Once acute medical/psychiatric stabilization has been achieved, the initial placement for substance use/addiction treatment services should reflect an assessment of the patient's status in all six ASAM criteria dimensions. The principle here is that the highest severity problem (particularly those in Dimensions 1, 2, or 3) should determine the patient's entry point into the treatment continuum. *Subsequent resolution of the acute problem creates an opportunity to transfer the patient to a less intensive level of care.*") (emphasis added).)<br>o (**Trial Tr. 1320:20–1322:6 (Simpatico)**.) |

**IV.G.1 2014 Level of Care Guidelines (Ex. 4)**

**Residential Rehabilitation: Substance-Related Disorders (Ex. 4-0077 to -0080) | Admission Criteria (Ex. 4-0077 to -0080, first column under "Level of Care Criteria")**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | in a less intensive level of care. | | |

**IV.G.2 2014 Level of Care Guidelines (Ex. 4)**
**Residential Rehabilitation: Substance-Related Disorders (Ex. 4-0077 to -0080) | Continued Service Criteria (Ex. 4-0077, second column under "Level of Care Criteria")**

**2.** Continued Service Criteria (Ex. 4-0077, second column under "Level of Care Criteria")

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Language after "AND" | Treatment is not primarily for the purpose of providing custodial care.<br><br>Custodial care involves services that don't seek to cure, are provided when the member's condition is unchanging, are not required to maintain stabilization, or don't have to be delivered by trained clinical personnel. | • Argument<br>  ○ Maintenance of Function<br>  ○ Custodial/Improvement<br>• Testimony<br>  ○ Fishman: Tr. 256:9-11, 258:11-15 | • "Custodial care" is defined by the member's health plan.<br>  ○ (**Trial Tr. 1613:21–1614:16 (Alam)**.)<br>• *See, e.g.*, X "December 2011 Custodial Care Coverage Determination Guidelines" (pg. 211–218). |

**IV.G.3**

**Residential Rehabilitation: Substance-Related Disorders (Ex. 4-0077 to -0080) | Discharge Criteria (Ex. 4-0077, third column under "Level of Care Criteria")**

**3.** Discharge Criteria (Ex. 4-0077, third column under "Level of Care Criteria")

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Language after "AND" | Care is custodial.<br><br>Indications include:<br>• The member's signs and symptoms have been stabilized, resolved, or a baseline level of functioning has been achieved;<br>• The member's condition is not improving; or<br>• The intensity of active treatment in Inpatient [sic] is no longer required. | • <u>Argument</u><br>  ○ Maintenance of Function<br>  ○ Custodial/Improvement<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 256:9-11, 258:11-15 | • The 2014 UBH health plans define custodial care.<br>  ○ (**Trial Tr. 1613:21–1614:16 (Alam)**.)<br>• *See, e.g.*, X "December 2011 Custodial Care Coverage Determination Guidelines" (pg. 211–218). |

**V.** 2015 Level of Care Guidelines (Ex. 5)

**A.** Common Criteria (Ex. 5-0008 to -0010)

**1.** Admission Criteria (Ex. 5-0008 to -0009)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.4 | The member's current condition cannot be safely, efficiently, and effectively assessed and/or treated in a less intensive level of care due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission). | • <u>Argument</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 104:11-105:7; 191:14-193:14; 208:2-16<br>o <u>Plakun</u>: Tr. 523:19-22; 524:8-21<br>o <u>Allchin</u>: Tr. 1389:1-1390:14 | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107) (discussing meaning of "why now").<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8) (discussing concept of least restrictive effective level of care).<br>o This language is the same as language contained the 2014 Level of Care Guidelines. (**Trial Tr. 1067:23–1068:12** (**Martorana**); (**Trial Tr. 1330:8–20** (**Simpatico**).)<br>• Current condition "involves how [the member is] presenting at th[e] time, which may or may not include past issues and chronic issues that are occurring as well."<br>o (**Trial Tr. 1460:14–17** (**Allchin**).)<br>• This criterion and ¶1.5 interrelate.<br>o (**Trial Tr. 1331:5–13** (**Simpatico**) ("[O]ne is the corollary of the other, and they address considering the appropriate level of care the represents the least restrictive, safe, and effective manner of providing treatment.") |
| 1.5 | The member's current condition can be safely, efficiently, and effectively assessed and/or treated in the proposed level of care. | • <u>Argument</u><br>o Acuity<br>o Drive Toward Lower Levels of Care | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107) (discussing meaning of "why now").<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, |

**V.A.1 2015 Level of Care Guidelines (Ex. 5)**

**Common Criteria (Ex. 5-0008 to -0010) | Admission Criteria (Ex. 5-0008 to -0009)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | Assessment and/or treatment of acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) require the intensity of services provided in the proposed level of care. | • <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 104:11-105:7<br>  ○ <u>Plakun</u>: Tr. 523:19-21; 523:23; 524:8-10; 524:17-525:6. | ¶ 5" (pg. 6–8) (discussing concept of least restrictive effective level of care).<br>• This criterion and criterion 1.4 interrelate. The criteria work together to ensure the member is assigned to the appropriate level of care.<br>  ○ (**Trial Tr. 1331:5–13 (Simpatico**) ("[O]ne is the corollary of the other, and they address considering the appropriate level of care that represents the least restrictive, safe, and effective manner of providing treatment.")<br>  ○ (**Trial Tr. 1068:23–1069:4 (Martorana)** ("We've had discussion about similar language, and basically there's two clinical thought processes involved. When someone's asking for a level—particular level of care, one, can the person be safely, effect effectively, and efficiently treated in that level of care; and if not, then we have to think about where they should be, for instance, a higher level of care. And then the flip side of that is that, well, can they—can all this happen in a less restrictive, less intensive level of care, which is always the preference when thinking about treating people. And so those two go hand in hand like that.").)<br>  ○ *See* VIII.A.1 "Common Criteria, Admission Criteria, 5th black bullet (page 8-0007)" |
| 1.6 | Co-occurring behavioral health and medical conditions can be safely managed. | • <u>Argument</u><br>  ○ Co-occurring<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 190:23- | • *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 6th black bullet (page 8-0007)" (pg. 176–177).<br>• There is similar language is in the 2017 Level of Care Guidelines. (**Trial Tr. 1069:15–23 (Martorana); Trial** |

**V.A.1 2015 Level of Care Guidelines (Ex. 5)**

**Common Criteria (Ex. 5-0008 to -0010) | Admission Criteria (Ex. 5-0008 to -0009)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | 191:13; 107:11-108:5; 108:7-24<br>o Plakun: Tr. 523:19-21; 523:24-524:1; 525:8-25; 526:6-527:1; 527:4-528:25; 529:1-14; 529:17-530:2<br>o Niewenhous: Tr. 1818:9-1820:18<br>o Martorana: Tr. 975:15-977:6, 977:8-978:1, 978:2-21<br>o Simpatico: Tr. 1179:12-1180:1, 1182:23-1183:6 | **Tr. 1331:14–22 (Simpatico)**.)<br>• **[Regarding the 2016 LOCGs]**<br>o The "safely managed" requirement of Section 1.6 is intended "as a failsafe way to make sure [Care Advocates] look at the medical conditions" because "the patient's safety is the paramount thing." (**Trial Tr. 1387:24–1388:25 (Allchin)**.)<br>o Section 1.6 ensures that, even if the facility is not capable of treating the member's co-occurring condition, the facility is at least capable of "safely managing" the co-occurring condition while it treats the diagnosis for which the patient is seeking treatment. (**Trial Tr. 1387:24–1388:25 (Allchin)**.)<br>• **[Regarding the 2017 LOCGs]**<br>o The separate criterion that the member's "current condition" can be effectively treated in the proposed level of care encompasses co-occurring conditions, including "whether the co-occurring problem is such that it requires a higher intensity of service." (**Trial Tr. 974:23–975:14, 977:8–16 (Martorana)**.) |
| 1.8 | There is a reasonable expectation that services will improve the member's presenting problems within a reasonable period of time.<br>1.8.1. Improvement of the member's condition is indicated by the reduction or control of the acute signs and symptoms that necessitated treatment in a level of | • Argument<br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• Testimony<br>o Fishman: Tr. 109:3-110:1; 110:2-111:23, | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 6th black bullet and sub-bullets (page 4-0009 to-10)" (pg. 107–108).<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 8th black bullet and sub-bullets (page 8-0007)" (pg. 177–178).<br>o Similar language is in the 2014 Level of Care Guidelines and the 2017 Level of Care Guidelines (**Trial Tr. 1069:24–1070:5 (Martorana)**; **Trial** |

**V.A.1 2015 Level of Care Guidelines (Ex. 5)**

**Common Criteria (Ex. 5-0008 to -0010) | Admission Criteria (Ex. 5-0008 to -0009)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | care.<br>1.8.2. Improvement in this context is measured by weighing the effectiveness of treatment against evidence that the member's signs and symptoms will deteriorate if treatment in the current level of care ends. Improvement must also be understood within the broader framework of the member's recovery, resiliency and wellbeing. | 112:10-113:4<br>○ Plakun: Tr. 530:6-19; 669:10-20 | **Tr. 1331:23–1332:4 (Simpatico)**.)<br>• **[Regarding the 2017 LOCGs]**<br>○ A member's "presenting problems" are "the issues, complaints, and the condition that [the member] present[s] to treatment," and includes any underlying chronic conditions. (**Trial Tr. 982:5–6, 983:1–8 (Martorana)**.)<br>○ This criterion defines improvement as reduction or control of symptoms as well as prevention of deterioration. (**Trial Tr. 982:9–18 (Martorana)**.)<br>○ Maintenance of a member's condition, i.e., the prevention of deterioration, is included in this definition of improvement. (**Trial Tr. 982:21–25 (Martorana)**.)<br>○ "Reasonable period of time" allows a reviewer to apply clinical judgment by taking into consideration both the member's condition as well as the nature of the presenting problem. (**Trial Tr. 983:11–984:1 (Martorana)**; (**Trial Tr. 1189:23–1190:2 (Simpatico)**.) |
| 1.9 | Treatment is not primarily for the purpose of providing social, custodial, recreational, or respite care. | • Argument<br>○ Custodial/ Improvement<br>• Testimony<br>○ Fishman: Tr. 250:8-15; 251:25-252:4<br>○ Plakun: Tr. 581:11-12, 581:24-25, 582:19-21 | • Dr. Fishman's testimony concerns the 2014 Level of Care Guidelines.<br>• Dr. Plakun's testimony concerns the 2014 Level of Care Guidelines.<br>• *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 7th black bullet (page 4-0010)" (pg. 108). |

**2.** Continued Service Criteria (Ex. 5-0009)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2.1 | The admission criteria continue to be met and active treatment is being provided. For treatment to be considered "active" services must be:<br>2.1.1. Supervised and evaluated by the admitting provider;<br>2.1.2. Provided under an individualized treatment plan that is focused on addressing the "why now" factors, and makes use of clinical best practices;<br>2.1.3. Reasonably expected to improve the member's presenting problems within a reasonable period of time. | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 113:10-114:6; 114:7-13; 135:10-136:15<br>o <u>Plakun</u>: Tr. 530:23-531:1; 531:1-13; 531:14-532:2; 532:4-7 | • Dr. Fishman's testimony at Trial Transcript lines 135:10–136:15 concern the 2011 Level of Care Guidelines.<br>• *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107) (discussing meaning of "why now").<br>• *See* IV.A.2 "2014 Common Criteria, Continued Service Criteria, 1st black bullet and sub-bullets (page 4-0007 to -08) (pg. 109–110).<br>• *See* VIII.A.2 "2017 Common Criteria, Continued Service Criteria, 1st black bullet and sub-bullets (pages 8-0007, -0011, and -0024)" (pg. 179).<br>• This language is the same or similar to language contained in the 2014 Level of Care Guidelines and the 2017 Level of Care Guidelines. (**Trial Tr. 1070:6–10 (Martorana); Trial Tr. 1332:8–11 (Simpatico)**.)<br>• **[Regarding the 2016 LOCGs]**<br>o Provider supervision, at certain levels, is necessary to ensure that the member is receiving effective care. (**Trial Tr. 1420:23–1422:12 (Allchin)**.)<br>o An individualized treatment plan includes consideration of "any past issues via whether they're acute or chronic in nature." (**Trial Tr. 1422:24–25 (Allchin)**.)<br>o Criterion 2.1.3 ensures that treatment is efficient (i.e., that it will occur within a timely fashion). (**Trial Tr. 1423:3–9 (Allchin)**.) |
| 2.2 | The "why now" factors leading to admission have been identified and | • <u>Argument</u><br>o Acuity | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107). |

**V.A.2 2015 Level of Care Guidelines (Ex. 5)**
**Common Criteria (Ex. 5-0008 to -0010) | Continued Service Criteria (Ex. 5-0009)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | are integrated into the treatment and discharge plans. | • Testimony<br>  ○ Fishman: Tr. 113:25-114:6; 114:7-13 | (discussing meaning of "why now").<br>• "[T]his calls the clinician to focus on the member in a total, holistic way to address the problems in the treatment plan, as well as the treatment interventions themselves, and then the discharge plan as well." (**Trial Tr. 1070:17–20 (Martorana);** ***see also*** **Trial Tr. 1070:21–1071:6 (Martorana)** (noting that the clinical judgment of reviewers allows them to consider new symptoms when making level of care determinations).) |

**3.** Discharge Criteria (Ex. 5-0009 to -0010)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3.1 | The continued stay criteria are no longer met. Examples include:<br>3.1.1. The "why now" factors which led to admission have been addressed to the extent that the member can be safely transitioned to a less intensive level of care, or no longer requires care.<br>…3.1.3. Treatment is primarily for the purpose of providing social, custodial, recreational, or respite care.<br>...3.1.5. The member is unwilling or unable to participate in treatment and involuntary treatment or guardianship is not being pursued. | • <u>Argument</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>o Maintenance of Function<br>o Custodial/Improvement<br>o Motivation<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 114:19-20, 25, 115:1-5, 115:10-24, 116:23-118:1<br>o <u>Plakun</u>: Tr. 532:8-533:3 | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107) (discussing meaning of "why now").<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8) (discussing concept of least restrictive effective level of care).<br>• *See* VIII.A.3 "2017 Common Criteria, Discharge Criteria, 1st black bullet and sub-bullets (pages 8-0007, -0011 to -0012, and -0024 to -0025)" (pg. 181–183).<br>• This criterion comports with generally accepted standards of care because "it's stating in a similar manner as previous versions that the continued stay criteria are no longer met and that the reasons for presentation, the so-called 'why now' factors, which led to admission, have been addressed to the extent that the member can be safely transitioned to a less intensive level of care, which is the whole point of treatment. And then, finally, it again addresses a situation where excluding an involuntary population, which is sort of a separate consideration, if a member is—that has capacity is unwilling or unable to participate in their own treatment after inadequate attempt [sic] to motivate them and engage them, then by definition they're not capable of participating in active treatment and there wouldn't be a medical necessity to continue treatment." (**Trial Tr. 1332:25–1333:13 (Simpatico)**.)<br>• **[Regarding the 2016 LOCGs]**<br>o The admission criteria for the level of care to which the member is being transitioned is part of |

**V.A.3 2015 Level of Care Guidelines (Ex. 5)**
**Common Criteria (Ex. 5-0008 to -0010) | Discharge Criteria (Ex. 5-0009 to -0010)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | the discharge criteria, thus ensuring that the member will be discharged to a lower level unless the member treatment will be both safe and effective. (**Trial Tr. 1424:11–1426:6 (Allchin**).)<br>• **[Regarding the 2017 LOCGs]**<br>  ○ (**Trial Tr. 994:10–995:2 (Martorana)** (discharge involves a feedback loop which assesses whether a patient can be safely and effectively treated in the transitional level of care per that level's admission criteria).)<br>• **[Regarding Generally Accepted Standards of Care Generally]**<br>  ○ (**Trial Ex. 656-0033 (Medicare Benefit Policy Manual, Chapter 6, § 70.3 "Partial Hospitalization Services"**) (it is "reasonably necessary" to deny coverage where the member "cannot, or refuse[s], to participate (due to their behavioral or cognitive status) with active treatment of their mental disorder (except for a brief admission necessary for diagnostic purposes), or . . . cannot tolerate the intensity of PHP.").) |

**B.** Intensive Outpatient Program: Mental Health Conditions (Ex. 5-00030 to -0032)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care… | • Argument<br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Plakun: Tr. 583:5-7; 583:14-21 | • **[Regarding the June 2016 LOCGs]** Plaintiffs' own expert described a portion of the preamble as containing "commendable" language.<br>  ○ (**Trial Tr. 655:25–656:2 (Plakun)**.)<br>• *See* IV.B "2014 Intensive Outpatient Program: Mental Health Conditions, Preamble" (pg. 114) (addressing identical language). |

**C.** Outpatient: Mental Health Conditions (Ex. 5-0033 to -0034)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | … The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | • Argument<br>  ○ Acuity<br>  ○ Maintenance of Function<br>• Testimony<br>  ○ Fishman: Tr. 255:16-21 | • Dr. Fishman's testimony concerns the 2014 Outpatient Substance-Related Disorder LOCG<br>• *See* IV.F "2014 Outpatient: Mental Health Conditions, Preamble" (pg. 126) (referring to IV.A.1 "2014 Common Criteria: 2nd black bullet (page 4-0007") (pg. 105–107) (addressing identical language)). |

**V.C.1 2015 Level of Care Guidelines (Ex. 5)**

**Outpatient: Mental Health Conditions (Ex. 5-0033 to -0034) | Admission Criteria (Ex. 5-0033)**

**1.** Admission Criteria (Ex. 5-0033)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.3 | Acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current condition can be safely, efficiently, and effectively assessed and/or treated in this setting. | • Argument<br>  ○ Acuity<br>  ○ Maintenance of Function<br>• Testimony<br>  ○ Plakun: Tr. 584:1-2; 584:11-17 | • Similar language appears in the 2014 Level of Care Guidelines.<br>  ○ (**Trial Tr. 1335:21–23 (Simpatico)**.)<br>• *See* IV.C.1 "2014 Outpatient: Mental Health Conditions, 4th black bullet (page 4-0035)" (pg. 118–119) (addressing identical language). |

**D.** Residential Treatment Center: Mental Health Conditions (Ex. 5-0038 to -0040)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in a Residential Treatment Center is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | • Argument<br>  o Acuity<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Plakun: Tr. 584:24-585:8 | • Similar language is in the 2014 Level of Care Guidelines.<br>  o (**Trial Tr. 1326:11–1327:4 (Simpatico)**.)<br>• *See* IV.D "2014 Residential Treatment Center: Mental Health Conditions, Preamble" (referring to IV.C "2014 Outpatient: Mental Health Disorders, Preamble" (pg. 120) *and* IV.A.1 "Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)") (pg. 105–107) (addressing identical language). |

**1.** Admission Criteria (Ex. 5-0038)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.3 | The "why now" factors leading to admission cannot be safely, efficiently or effectively assessed and/or treated in a less intensive setting due to acute changes | • Argument<br>  o Acuity<br>  o Maintenance of Function<br>  o Drive Toward Lower Levels of Care | • *See* IV.D.1 "2014 Residential Treatment Center: Mental Health Conditions, Admission Criteria, 4th black bullet" (pg. 121–122) (addressing identical language). |

**V.D.1 2015 Level of Care Guidelines (Ex. 5)**

**Residential Treatment Center: Mental Health Conditions (Ex. 5-0038 to -0040) | Admission Criteria (Ex. 5-0038)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | in the member's signs and symptoms and/or psychosocial and environmental factors. Examples include:<br>1.3.1. Acute impairment of behavior or cognition that interferes with activities of daily living to the extent that the welfare of the member or others is endangered.<br>1.3.2. Psychosocial and environmental problems that are likely to threaten the member's safety or undermine engagement in a less intensive level of care without the intensity of services offered in this level of care. | • Testimony<br>○ Plakun: Tr. 584:24-25; 585:10-17 | |

**2.** Continued Service Criteria (Ex. 5-0038 to -0039)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2.2 | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . .<br>2.2.2. Health-related services that are provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence. . . .<br>2.2.3. Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | • <u>Argument</u><br>  ○ Maintenance of Function<br>  ○ Custodial/ Improvement<br>• <u>Testimony</u><br>  ○ <u>Plakun</u>: Tr. 584:24-25; 585:18-22 | • Under generally accepted standards of care, custodial care is not covered.<br>  ○ (**Trial Tr. 1261:7–1262:7, 1310:15–18 (Simpatico)**.)<br>• *See* XII "March 2015 Custodial Care Coverage Determination Guideline, 2nd black bullet and sub-bullets" (pg. 229–230) (discussing similar language found in the 2015 Custodial Care CDG). |

**E.** Intensive Outpatient Program: Substance-Related Disorders (Ex. 5-0055 to -0058)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent with Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | • Argument<br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Fishman: Tr. 254:15-24 | • Dr. Fishman's testimony concerns the 2014 Level of Care Guidelines.<br>• The same language appears in the 2014 Level of Care Guidelines.<br>  ○ (**Trial Tr. 1336:23–1337:11 (Simpatico)**.)<br>• *See* IV.E "2014 Intensive Outpatient Program: Substance-Related Disorder, Preamble" (pg. 125) (referring to IV.G "2014 Residential Rehabilitation: Substance Related Disorder, Preamble" (pg. 128) (addressing nearly identical language)). |

**F.** Outpatient: Substance-Related Disorders (Ex. 5-0070 to -0072)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | … The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | • Argument<br>  o Acuity<br>  o Maintenance of Function<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Fishman: Tr. 255:16-21 | • Dr. Fishman's testimony concerns the 2014 Level of Care Guidelines.<br>• *See* IV.F "2014 Outpatient: Substance-Related Disorders, Preamble" (pg. 126) (addressing identical language). |

**1.** Admission Criteria (Ex. 5-0070)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.4 | Acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current condition can be | • Argument<br>  o Acuity<br>  o Maintenance of Function<br>• Testimony<br>  o Fishman: Tr. | • Dr. Fishman ignores the "or" language in formulating his opinion.<br>• (**Trial Tr. 208:19–209:3 (Fishman)**.)<br>• The same language appears in the 2014 LOCGs.<br>  o (**Trial Tr. 1337:14–18 (Simpatico)**.)<br>• *See* IV.F.1 "2014 Outpatient: Substance-Related Disorders, |

**V.F.1 2015 Level of Care Guidelines (Ex. 5)**

**Outpatient: Substance-Related Disorders (Ex. 5-0070 to -0072) | Admission Criteria (Ex. 5-0070)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | safely, efficiently, and effectively assessed and/or treated in this setting. | 130:2-24; 130:25-131:18 | Admission Criteria, 5th black bullet (page 4-0067)" (pg. 127) (addressing identical language). |

**G.** Residential Rehabilitation: Substance-Related Disorders (Ex. 5-0081 to -0083)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in Residential Rehabilitation is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that rehabilitation can be safely, efficiently and effectively continued in a less intensive level of care. | • <u>Argument</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 256:9-18 | • Dr. Fishman's testimony concerns the 2014 LOCG.<br>• The same language appears in the 2014 LOCG.<br>o (**Trial Tr. 1336:5–11** (**Simpatico**).)<br>• *See* IV.G "2014 Residential Rehabilitation: Substance-Related Disorders, Preamble" (pg. 128) (addressing identical language).<br>• The "why now" language does not overemphasize acuity. The language emphasizes determining why a patient is seeking treatment at a given time in order to best formulate an individualized treatment plan. Additionally, "acute symptoms" generally refer acute changes of a chronic condition.<br>o (**Trial Tr. 1597:18–1600:1** (**Alam**).) |

**1.** Admission Criteria (Ex. 5-0081)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.3 | The "why now" factors leading to admission and/or the member's history of response to treatment suggest that there is imminent or current risk of relapse which cannot be safely, efficiently, and effectively managed in a less intensive level of | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care | • This criterion holds that a member can be admitted to residential treatment based on the "'why now' factors alone" or, if there is "a risk of relapse and needs for a structure to prevent that."<br>o (**Trial Tr. 1601:2–1601:10** (**Alam**).)<br>• *See* IV.G "2014 Residential Rehabilitation: Substance-Related Disorders, Admission Criteria, 4th black bullet" (pg. 129–130) |

**V.G.1 2015 Level of Care Guidelines (Ex. 5)**

**Residential Rehabilitation: Substance-Related Disorders (Ex. 5-0081 to -0083) | Admission Criteria (Ex. 5-0081)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | care. Examples include:<br>1.3.1. A co-occurring mental health condition is stabilizing but the remaining signs and symptoms are likely to undermine treatment in a less intensive setting.<br><br>1.3.2. The member is in immediate or imminent danger of relapse, and the history of treatment suggests that the structure and support provided in this level of care is needed to control the recurrence. | • Testimony<br>  ○ Fishman: Tr. 124:16-22; 125:10-14<br>  ○ Alam: Tr. 1601:5-1602:12 | (addressing identical language). |
| 1.4 | The "why now" factors leading to admission cannot be safely, efficiently, or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors. Examples include:<br><br>1.4.1. Acute impairment of behavior or cognition is interfering with Activities of Daily Living to the extent that the welfare of the member or others is endangered.<br><br>1.4.2. Psychosocial and | • Argument<br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Fishman: Tr. 124:16-22; 125:10-14 | • The same language is in the 2014 LOCG.<br>  ○ (**Trial Tr. 1336:12–16 (Simpatico)**.)<br>• *See* IV.G.1 "2014 Residential Rehabilitation: Substance-Related Disorder, Admission Criteria, 4th black bullet" (page 4-0078) (pg. 129–130) (addressing identical language).<br>• The phrase "acute changes" does not overemphasize acuity because it is referring to acute exacerbations of an underlying chronic condition.<br>  ○ (**Trial Tr. 1604:14–1605:1 (Alam)**.) |

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | environmental problems threaten the member's safety, or undermine engagement in a less intensive level of care. | | |

**2.** Continued Service Criteria (Ex. 5-0082)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2.2.3 | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . .<br><br>2.2.2. Health-related services provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence.<br><br>2.2.3. Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | • Argument<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• Testimony<br>o Fishman: Tr. 125:1-6; 125:15-126:16 | • An individual that does not require the care of a licensed, medical professional does not need to continue treatment at this given level of care.<br>o (**Trial Tr. 1605:2–1606:7** (**Alam**).)<br>• *See* XII "March 2015 Custodial Care Coverage Determination Guideline, 2nd black bullet and sub-bullets" (pg. 224–225) (discussing similar language found in the 2015 Custodial Care CDG). |

# VI. 2016 Level of Care Guidelines (Ex. 6)

## A. Common Criteria (Ex. 6-0009 to -0011)

### 1. Admission Criteria (Ex. 6-0009 to -0010)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.4 | The member's current condition cannot be safely, efficiently, and effectively assessed and/or treated in a less intensive level of care due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission). | • Argument<br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Fishman: Tr. 260:9-261:9<br>  ○ Plakun: Tr. 548:18-23; 548:25-549:4<br>  ○ Allchin: Tr. 1389:1-1390:14 | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8) (discussing concept of least restrictive effective level of care).<br>• *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107) *and* V.A.1 "Common Criteria, Admission Criteria, ¶ 1.4" (pg. 134).<br>  ○ The same language is in the 2014 2015 Level of Care Guidelines. (***See* Trial Tr. 1072:22–1073:5 (Martorana)**.)<br>• The phrase "the member's current condition" is "an all-encompassing look at how is that this [member] presenting currently; which means not only an understanding of chronic issues and how they're presenting now as well as acute issues and any kind of co-morbid medical conditions that might also be occurring." (**Trial Tr. 1387:10–14 (Allchin)**.) |
| 1.5 | The member's current condition can be safely, efficiently, and effectively assessed and/or treated in the proposed level of care. Assessment and/or treatment of acute changes in the member's signs and symptoms and/or psychosocial and environmental factors (i.e., the "why now" | • Argument<br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Fishman: Tr. 261:4-5; 261:10-11 | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107) (discussing meaning of "why now").<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8) (discussing concept of least restrictive effective level of care).<br>• *See* V.A.1 "2015 Common Criteria, Admission Criteria, ¶ 1.5" (pg. 134–135).<br>  ○ The same language is in the 2015 Level of Care |

**VI.A.1 2016 Level of Care Guidelines (Ex. 6)**
**Common Criteria (Ex. 6-0009 to -0011) | Admission Criteria (Ex. 6-0009 to -0010)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | factors leading to admission) require the intensity of services provided in the proposed level of care. | ○ Plakun: 548:18-23, 548:25-549:4 | Guidelines. (**Trial Tr. 1072:22–1073:5 (Martorana)**.) |
| 1.6 | Co-occurring behavioral health and medical conditions can be safely managed. | • Argument<br>○ Co-occurring<br>• Testimony<br>○ Fishman: Tr. 261:4-5; 261:12-18<br>○ Plakun: Tr. 548:18-23; 548:25-549:4<br>○ Allchin: Tr. 1389:1-1390:14<br>○ Martorana: Tr. 975:15-977:6, 977:8-978:1, 978:2-21<br>○ Simpatico: Tr. 1179:12-1180:1, 1182:23-1183:6 | • *See* V.A.1 "2015 Common Criteria, Admission Criteria, ¶ 1.6" (pg. 135–136).<br>• This criterion contains the same language as the 2015 Level of Care Guidelines.<br>○ (**Trial Tr. 1072:22–1073:5 (Martorana)**.)<br>• The "safely managed" requirement of Section 1.6 is intended "as a failsafe way to make sure [Care Advocates] look at the medical conditions" because "the patient's safety is the paramount thing." (**Trial Tr. 1387:24–1388:25 (Allchin)**.)<br>○ Section 1.6 ensures that, even if the facility is not capable of treating the member's co-occurring condition, the facility is at least capable of "safely managing" the co-occurring condition while it treats the diagnosis for which the patient is seeking treatment. (**Trial Tr. 1387:24–1388:25 (Allchin)**.)<br>• **[Regarding the 2017 LOCGs]**<br>○ The separate criterion that the member's "current condition" can be effectively treated in the proposed level of care encompasses co-occurring conditions, including "whether the co-occurring problem is such that it requires a higher intensity of service." (**Trial Tr. 974:23–975:14, 977:8–16 (Martorana)**.) |
| 1.8 | There is a reasonable expectation that services will improve the | • Arguments<br>○ Acuity | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 6" (pg. 8–9). |

**VI.A.1 2016 Level of Care Guidelines (Ex. 6)**
**Common Criteria (Ex. 6-0009 to -0011) | Admission Criteria (Ex. 6-0009 to -0010)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | member's presenting problems within a reasonable period of time.<br><br>1.8.1. Improvement of the member's condition is indicated by the reduction or control of the acute signs and symptoms that necessitated treatment in a level of care.<br><br>1.8.2. Improvement in this context is measured by weighing the effectiveness of treatment against evidence that the member's signs and symptoms will deteriorate if treatment in the current level of care ends. Improvement must also be understood within the broader framework of the member's recovery, resiliency and wellbeing. | ○ Maintenance of Function<br>○ Custodial/ Improvement<br>• <u>Testimony</u><br>○ <u>Fishman</u>: 261:4-5; 261:19-262:2<br>○ <u>Plakun</u>: Tr. 548:18-23, 548:25-549:4 | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 6th black bullet and sub-bullets (page 4-0009 to -0010)" (pg. 107–108).<br>• *See* V.A.1 "2015 Common Criteria, Admission Criteria, 1.8" (pg. 136–137.)<br>○ The same language is in the 2015 Level of Care Guidelines. (**Trial Tr. 1073:6–10 (Martorana)**.)<br>• *See* VIII.A.1 "2017 Common Criteria, Admission Criteria, 8th black bullet and sub-bullets (page 8-0007)") (pg. 177–178).<br>• The phrase "[t]here is a reasonable expectation that services will improve" comes from Medicare sources. (**Trial Tr. 319:5–320:12 (Niewenhous); Trial Ex. 655-0007 (Medicare Benefit Policy Manual Chapter 2 – Inpatient Psychiatric Hospital Services)**.)<br>• Determination of what constitutes a "reasonable period of time" is dependent on factors specific to the member seeking care. (**Trial Tr. 1413:25–2 (Allchin)** (noting that a "reasonable period of time [for children and adolescents] tends to be a much more expanded look than it would be with an adult.").)<br>• The phrase "acute signs and symptoms" refers to the patient's presenting problems, which often includes an exacerbation of a chronic condition. (**Trial Tr. 1414:5–1415:4 (Allchin)**.)<br>• "Improvement" includes treatment of chronic conditions, and does not require constant, linear improvement of a member's condition. (**Trial Tr. 1419:18–1420:7 (Allchin)**.)<br>○ (**Trial Tr. 1420:7–11 (Allchin)** ("People stumble, people occasionally have a mild regression from what their improvement is. But the important thing of that is: How does the treatment plan deal with that regression to get the |

**VI.A.1 2016 Level of Care Guidelines (Ex. 6)**
**Common Criteria (Ex. 6-0009 to -0011) | Admission Criteria (Ex. 6-0009 to -0010)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | person back up and moving in the right direction again?").)<br>• Criterion 1.8.2 requires an individualistic weighing of the pros and cons of moving a member to a lower level of care before doing so. This weighing is based on clinical judgment. (**Trial Tr. 1415:5–1417:12** (**Allchin**).)<br>• Concerns regarding an adolescent's or child's resiliency would result in a continued stay under Criterion 1.8.2. (**Trial Tr. 1417:13–1419:17** (**Allchin**).) |
| 1.9 | Treatment is not primarily for the purpose of providing social, custodial, recreational, or respite care. | • Arguments<br>o Custodial/ Improvement<br>• Testimony<br>o Fishman: Tr. 250:8-15; 251:25-252:4<br>o Plakun: Tr. 581:11-12, 581:24-25, 582:19-21 | • Dr. Fishman's and Dr. Plakun's testimony concern the 2014 Level of Care Guidelines.<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 8" (pg. 14–15). |

**2.** Continued Service Criteria (Ex. 6-0010)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2.1 | The admission criteria continue to be met and active treatment is being provided. For treatment to be considered "active" services must be as follows:<br><br>2.1.1. Supervised and evaluated by the admitting provider;<br><br>2.1.2. Provided under an individualized treatment plan that is focused on addressing the "why now" factors, and makes use of clinical best practices;<br><br>2.1.3. Reasonably expected to improve the member's presenting problems within a reasonable period of time. | • Arguments<br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• Testimony<br>o Fishman: Tr. 262:3-7<br>o Plakun: Tr. 549:10-17 | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107) (discussing meaning of "why now").<br>• *See* IV.A.2 "2014 Common Criteria, Continued Service Criteria, 1st black bullet and sub-bullets (page 4-0007 to -0008)" (pg. 109–110) *and* VIII.A.2 "2017 Common Criteria, Continued Service Criteria, 1st black bullet and sub-bullets (pages 8-0007, -0011, and -0024)" (pg. 179).<br>o The same or similar language is in the 2014 Level of Care Guidelines and the 2017 Level of Care Guidelines. (**Trial Tr. 1073:11–14 (Martorana)**.)<br>• Provider supervision, at certain levels, is necessary to ensure that the member is receiving effective care.<br>o (**Trial Tr. 1420:23–1422:12 (Allchin)**.)<br>• An individualized treatment plan includes consideration of "any past issues via whether they're acute or chronic in nature." (**Trial Tr. 1422:24–25 (Allchin)**.)<br>• Criterion 2.1.3 ensures that treatment is efficient (i.e., that it will occur within a timely fashion).<br>o (**Trial Tr. 1423:3–9 (Allchin)**.) |
| 2.2 | The "why now" factors leading to admission have been identified and are integrated into the treatment and discharge plans. | • Arguments<br>o Acuity<br>• Testimony<br>o Fishman: Tr. 262:3-10 | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107) (discussing meaning of "why now").<br>• *See* V.A.2 "2015 Common Criteria, Continued Service Criteria, ¶ 2.2" (pg. 138–139).<br>o The same as language is in the 2015 Level of Care Guidelines. (**Trial Tr. 1073:11–14 (Martorana)**.) |

**3.** Discharge Criteria (Ex. 6-0010 to -0011)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3.1 | The continued stay criteria are no longer met. Examples include:<br><br>3.1.1. The "why now" factors which led to admission have been addressed to the extent that the member can be safely transitioned to a less intensive level of care, or no longer requires care.<br>... 3.1.3. Treatment is primarily for the purpose of providing social, custodial, recreational, or respite care.<br>... 3.1.5. The member is unwilling or unable to participate in treatment and involuntary treatment or guardianship is not being pursued. | • <u>Arguments</u><br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>  ○ Maintenance of Function<br>  ○ Custodial/ Improvement<br>  ○ Motivation<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 262:11-12, 262:13-16<br>  ○ <u>Plakun</u>: Tr. 549:20-550:2 | • *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107) (discussing meaning of "why now").<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8) (discussing concept of least restrictive effective level of care).<br>• *See* VIII.A.3 "2017 Common Criteria, Discharge Criteria, 1st black bullet and sub-bullets (pages 8-0007, -0011 to -0012, and -0024 to -0025)" (pg. 181–183).<br>  ○ The admission criteria for the level of care to which the member is being transitioned is part of the discharge criteria, thus ensuring that the member will be discharged to a lower level unless the member treatment will be both safe and effective. (**Trial Tr. 1424:11–1426:6 (Allchin)**.)<br>• **[Regarding the 2017 LOCGs]**<br>  ○ (**Trial Tr. 994:10–995:2 (Martorana)** (discharge involves a feedback loop which assesses whether a patient can be safely and effectively treated in the transitional level of care per that level's admission criteria).)<br>• **[Regarding the 2015 LOCGs]**<br>  ○ This criterion comports with generally accepted standards of care because "it's stating in a similar manner as previous versions that the continued stay criteria are no longer met and that the reasons for |

**VI.A.3 2016 Level of Care Guidelines (Ex. 6)**
**Common Criteria (Ex. 6-0009 to -0011) | Discharge Criteria (Ex. 6-0010 to -0011)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | presentation, the so-called 'why now' factors, which led to admission, have been addressed to the extent that the member can be safely transitioned to a less intensive level of care, which is the whole point of treatment. And then, finally, it again addresses a situation where excluding an involuntary population, which is sort of a separate consideration, if a member is—that has capacity is unwilling or unable to participate in their own treatment after inadequate attempt to motivate them and engage them, then by definition they're not capable of participating in active treatment and there wouldn't be a medical necessity to continue treatment." (**Trial Tr. 1332:25–1333:13 (Simpatico**).)<br>• **[Regarding Generally Accepted Standards of Care Generally]**<br>  ○ (**Trial Ex. 656-0033 (Medicare Benefit Policy Manual, Chapter 6, § 70.3 "Partial Hospitalization Services")** (it is "reasonably necessary" to deny coverage where the member "cannot, or refuse[s], to participate (due to their behavioral or cognitive status) with active treatment of their mental disorder (except for a brief admission necessary for diagnostic purposes), or . . . cannot tolerate the intensity of PHP.").) |

**B.** Intensive Outpatient Program: Mental Health Conditions (Ex. 6-00032 to -0035)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care…. | • Argument<br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Plakun: Tr. 585:25-586:10; 656:3-22 | • **[Regarding the June 2016 LOCGs]**<br>  ○ Dr. Plakun testified that portions of the preamble are "commendable." (**Trial Tr. 655:17–656:22 (Plakun)**.)<br>• *See* IV.B."2014 Intensive Outpatient Program: Mental Health Conditions, Preamble" (pg. 114) (addressing identical language). |

## C. Outpatient: Mental Health Conditions (Ex. 6-0036 to -0038)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | … The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | • Argument<br>o Acuity<br>o Maintenance of Function<br>• Testimony<br>o Plakun: Tr. 586:16-24 | • *See* IV.C "2014 Outpatient: Mental Health Conditions, Preamble" (pg. 117) (referring to IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107)). |

### 1. Admission Criteria (Ex. 6-0036)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.3 | Acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current | • Argument<br>o Acuity<br>o Maintenance of Function<br>• Testimony<br>o Plakun: Tr. 586:25-587:2-10 | • *See* IV.C "2014 Outpatient: Mental Health Conditions, Preamble" (pg. 117) (referring to IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107)). |

**VI.C.1 2016 Level of Care Guidelines (Ex. 6)**

**Outpatient: Mental Health Conditions (Ex. 6-0036 to -0038) | Admission Criteria (Ex. 6-0036)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | condition can be safely, efficiently, and effectively assessed and/or treated in this setting. | | |

**D.** Residential Treatment Center: Mental Health Conditions (Ex. 6-0043 to -0045)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in a Residential Treatment Center is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | • Argument<br>○ Acuity<br>○ Drive Toward Lower Levels of Care<br>• Testimony<br>○ Plakun: Tr. 587:15-21 | • *See* IV.D "2014 Residential Treatment Center: Mental Health Conditions, Preamble" (pg. 120) (referring to IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107)). |

**1.** Admission Criteria (Ex. 6-0043)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.3 | The "why now" factors leading to admission cannot be safely, efficiently or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and | • Argument<br>○ Acuity<br>○ Maintenance of Function<br>○ Drive Toward Lower Levels of Care | • *See* IV.D "2014 Residential Treatment Center: Mental Health Conditions, Admission Criteria, 4th black bullet" (pg. 121–122) (addressing identical language). |

**VI.D.1 2016 Level of Care Guidelines (Ex. 6)**

**Residential Treatment Center: Mental Health Conditions (Ex. 6-0043 to -0045) | Admission Criteria (Ex. 6-0043)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | symptoms and/or psychosocial and environmental factors. Examples including the following:<br><br>1.3.1. Acute impairment of behavior or cognition that interferes with activities of daily living to the extent that the welfare of the member or others is endangered.<br><br>1.3.2. Psychosocial and environmental problems that are likely to threaten the member's safety or undermine engagement in a less intensive level of care without the intensity of services offered in this level of care. | • Testimony<br>   o Plakun: Tr. 587:15-17; 587:22-588:2; 588:8-16; 588:19-21 | |

**VI.D.2 2016 Level of Care Guidelines (Ex. 6)**

**Residential Treatment Center: Mental Health Conditions (Ex. 6-0043 to -0045) | Continued Service Criteria (Ex. 6-0043 to -0044)**

**2.** Continued Service Criteria (Ex. 6-0043 to -0044)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2.2 | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . .<br><br>2.2.2. Health-related services provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence;<br><br>2.2.3. Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | • Argument<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• Testimony<br>o Plakun: Tr. 587:15-17; 588:3-7 | • Dr. Plakun's testimony does not address any issues with ¶ 2.2.3, and addresses only ¶ 2.2 and ¶ 2.2.2.<br>• *See* V.D.2 "2015 Residential Treatment Center: Mental Health Conditions, Continued Service Criteria, ¶ 2.2" (pg. 147) (addressing identical language).<br>• *See* VIII.D.2 "2017 Residential Treatment Center: Mental Health Conditions, Continued Service Criteria, 2nd black bullet and sub-bullets" (pages 8-0018 to -0019) (pg. 189) (addressing identical language). |

**E.** Intensive Outpatient Program: Substance-Related Disorders (Ex. 6-0062 to -0065)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | . . . The course of treatment in an Intensive Outpatient Program is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care . . . | • Argument<br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Fishman: Tr. 262:18-263:2 | • *See* IV.E "2014 Intensive Outpatient Program: Substance-Related Disorder, Preamble" (pg. 125) (referring to IV.G "2014 Residential Rehabilitation: Substance-Related Disorder, Preamble" (pg. 128) (addressing nearly identical language)). |

**F.** Outpatient: Substance-Related Disorders (Ex. 6-0079 to -0081)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | . . . The course of treatment in Outpatient is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the "why now" factors that precipitated admission no longer require treatment. | • <u>Argument</u><br>  o Acuity<br>  o Maintenance of Function<br>  o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 263:6-11 | • *See* IV.F "2014 Outpatient: Substance-Related Disorder, Preamble" (pg. 126) (referring to IV.E "2014 Intensive Outpatient: Substance-Related Disorder, Preamble" (pg. 125) (addressing nearly identical language)). |

**1.** Admission Criteria (Ex. 6-0079)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.4 | Acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors (i.e., the "why now" factors leading to admission) have occurred, and the member's current condition can be safely, efficiently, and effectively assessed and/or treated in this setting. | • <u>Argument</u><br>  o Acuity<br>  o Maintenance of Function<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 263:12-20 | • *See* IV.F.1 "2014 Outpatient: Substance-Related Disorder, Admission Criteria, 5th black bullet (page 4-0067)" (pg. 127) (addressing identical language). |

**VI.G.1 2016 Level of Care Guidelines (Ex. 6)**
**Residential Rehabilitation: Substance-Related Disorders (Ex. 6-0090 to -0092) | Admission Criteria (Ex. 6-0090 to -0091)**

**G.** Residential Rehabilitation: Substance-Related Disorders (Ex. 6-0090 to -0092)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | … The course of treatment in Residential Rehabilitation is focused on addressing the "why now" factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that rehabilitation can be safely, efficiently and effectively continued in a less intensive level of care. | • Argument<br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 263:22-264:2 | • *See* IV.G "2014 Residential Rehabilitation: Substance-Related Disorders, Preamble" (pg. 128) (addressing identical language). |

**1.** Admission Criteria (Ex. 6-0090 to -0091)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1.3 | The "why now" factors leading to admission and/or the member's history of response to treatment suggest that there is imminent or current risk of relapse which cannot be safely, efficiently, and effectively managed in a less intensive level of care.<br>1.3.1. A co-occurring mental health condition is stabilizing but the remaining | • Argument<br>o Acuity<br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. | • *See* IV.G.1 "2014 Residential Rehabilitation: Substance-Related Disorders, Admission Criteria, 4th black bullet (page 4-0077)" (pg. 129–130) (addressing identical language). |

**VI.G.1 2016 Level of Care Guidelines (Ex. 6)**

**Residential Rehabilitation: Substance-Related Disorders (Ex. 6-0090 to -0092) | Admission Criteria (Ex. 6-0090 to -0091)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | signs and symptoms are likely to undermine treatment in a less intensive setting.<br>1.3.2. The member is in immediate or imminent danger of relapse, and the history of treatment suggests that the structure and support provided in this level of care is needed to control the recurrence. | 263:22-264:8 | |
| 1.4 | The "why now" factors leading to admission cannot be safely, efficiently, or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors. | • Argument<br>  o Acuity<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Fishman: Tr. 263:22-264:10 | • *See* IV.G.1 "2014 Residential Rehabilitation: Substance-Related Disorders, Admission Criteria, 5th black bullet" (pg. 130–131) (addressing identical language). |

**VI.G.2 2016 Level of Care Guidelines (Ex. 6)**
**Residential Rehabilitation: Substance-Related Disorders (Ex. 6-0090 to -0092) | Continued Service Criteria (Ex. 6-0091)**

**2.** Continued Service Criteria (Ex. 6-0091)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2.2 | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following:…<br><br>2.2.2. Health-related services that are provided for the primary purpose of meeting the personal needs of the member or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence.<br><br>2.2.3. Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | • Argument<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• Testimony<br>o Fishman: Tr. 263:22-264:19 | • Dr. Fishman's testimony addresses only ¶ 2.2.2.<br>• *See* VIII.D.2 "2017 Residential Treatment Center: Mental Health Conditions, Continued Service Criteria, 2nd black bullet and sub-bullets (page 8-0018 to -0019)" (pg. 189).<br>• *See, e.g.*, X "December 2011 Custodial Care Coverage Determination Guidelines" (pg. 211–218). |

## **VII.** 2016 Level of Care Guidelines (Ex. 7)[1]

[1] There are no substantive differences between the January 2016 Level of Care Guidelines and the June 2016 Level of Care Guidelines. (**Trial Tr. 264:21–265:16 (Fishman)**; **Trial Tr. 1072:7–21 (Martorana)**.) UBH incorporates is responses for the January 2016 Level of Care Guidelines in full with respect to the June 2016 Level of Care Guidelines.

**VIII.** 2017 Level of Care Guidelines (Ex. 8)

**A.** Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025)

**1.** Admission Criteria (Ex. 8-0006 to -0007; Ex. 8-0011, Ex. 8-0024)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 4th black bullet (page 8-0007 | The member's current condition cannot be safely, efficiently, and effectively assessed and/or treated in a less intensive level of care. | • Argument<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Fishman: Tr. 261:4-5; 261:10-11; Plakun: 548:18-23, 548:25-549:4, 550:23-551:5 | • Dr. Fishman's and Dr. Plakun's testimony concerns the 2016 Level of Care Guidelines.<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8) (discussing concept of least restrictive effective level of care).<br>• The preferred method of treatment is to treat an individual in a less restrictive setting that offers safe and effective care. This criterion requires care advocates and providers to assess the member's entire condition and determine whether that member can be safely and effectively treated at a less restrictive level of intensity.<br>  o (**Trial Tr. 968:22–24 (Martorana)** ("[P]eople should be free to live their lives as much as possible, as much as reasonable, as safe as you can when you're instituting psychiatric treatment.").)<br>  o (**Trial Tr. 1175:1–1177:7 (Simpatico)**.)<br>• The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association.<br>  o (**Trial Tr. 968:25–971:23 (Martorana)**.)<br>  o (**Trial Ex. 634-0022 (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders)** ("Individuals should be treated in the least restrictive setting that is likely to prove safe and effective.").)<br>  o (**Trial Ex. 639-0016 (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder)** ("The psychiatrist should determine the least restrictive setting |

**VIII.A.1 2017 Level of Care Guidelines (Ex. 8)**

**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Admission Criteria (Ex. 8-0006 to -0007; Ex. 8-0011, Ex. 8-0024)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | for treatment that will be most likely not only to address the patient's safety, but also to promote improvement in the patient's condition.").)<br>• UBH trains it clinicians to interpret "current condition" as including both acute and chronic conditions.<br>  ○ (**Trial Tr. 977:16–20 (Martorana)** ("When we take new clinicians and current clinicians through the process of how to use these guidelines, we wouldn't be separating it out or parsing it in that way. It's more of a don't forget to consider these things; it's important.") .)<br>• **[Regarding the 2013 LOCGs]**<br>  ○ Dr. Fishman did "not particularly object" to a similarly-worded criterion in the 2013 LOCGs, which, like the 2017 LOCGs, lacked the phrases "why now" and "acute changes." **(Trial Tr. 232:12–18 (Fishman)**.) |
| 5th black bullet (page 8-0007) | The member's current condition can be safely, efficiently, and effectively assessed and/or treated in the proposed level of care. Assessment and/or treatment of the factors leading to admission require the intensity of services provided in the proposed level of care. | • <u>Argument</u><br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 261:4-5; 261:10-11<br>  ○ <u>Plakun</u>: 548:18-23, 548:25-549:4, 550:23-551:5 | • Dr. Fishman's and Dr. Plakun's testimony concerns the 2016 Level of Care Guidelines.<br>• *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8) (discussing concept of least restrictive effective level of care).<br>• *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 2nd black bullet (page 4-0007)" (pg. 105–107).<br>• *See* V.A.1 "2015 Common Criteria, Admission Criteria, ¶ 1.5" (pg. 134–135).<br>• This criterion requires the care advocate and provider to assess whether the member can be safely and effectively treated at the proposed level of care. This includes consideration of chronic conditions and the "why now" factors.<br>  ○ (**Trial Tr. 972:5–8 (Martorana)** ("The current condition is the set of symptoms that the member brings to the treatment, to the |

**VIII.A.1 2017 Level of Care Guidelines (Ex. 8)**
**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Admission Criteria (Ex. 8-0006 to -0007; Ex. 8-0011, Ex. 8-0024)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | proposed treatment. So it has to do with, well, pretty much everything that is going on with them that has brought them to this point.").)<br>○ (**Trial Tr. 1438:12–1439:13 (Allchin)**.) |
| 6th black bullet (page 8-0007) | Co-occurring behavioral health and medical conditions can be safely managed. | • <u>Argument</u><br>○ Co-occurring<br>• <u>Testimony</u><br>○ <u>Plakun</u>: Tr. 552:19-22, 553:1-3<br>○ <u>Martorana</u>: Tr. 975:15-977:6, 977:8-978:1, 978:2-21<br>○ <u>Simpatico</u>: Tr. 1179:12-1180:1, 1182:23-1183:6 | • The separate criterion that the member's "current condition" can be effectively treated in the proposed level of care encompasses co-occurring conditions, including "whether the co-occurring problem is such that it requires a higher intensity of service." (**Trial Tr. 974:23–975:14, 977:8–16 (Martorana)**.)<br>• The criterion that co-occurring medical conditions can be "safely managed" is an intentional redundancy, designed to "make sure people think it through in the clinical process" and ensure that clinicians, especially new clinicians "don't forget to consider" whether co-occurring conditions can be safely managed. (**Trial Tr. 977:17–978:20 (Martorana)**.)<br>• This criterion is in accord with generally accepted standards of care because "it speaks to . . . compiling a comprehensive understanding of a patient's current and past medical history and circumstances in order to understand how to understand the presenting picture, and it necessarily includes an understanding of their behavioral health history and any general medical conditions that they may have."(**Trial Tr. 1179:5–10 (Simpatico)**.)<br>• "Manage" means an individual's co-occurring conditions are treated to the point where their symptoms do not interfere with the treatment of the primary diagnosis. In order for a condition to be "managed," it must also be treated effectively, if possible.<br>○ (**Trial Tr. 973:16–18 (Martorana); *see also* Trial Tr. 975:1–2**) ("That's how you manage something; you [consider whether co-occurring conditions can be effectively addressed at the level of care].").) |

**VIII.A.1 2017 Level of Care Guidelines (Ex. 8)**

**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Admission Criteria (Ex. 8-0006 to -0007; Ex. 8-0011, Ex. 8-0024)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | • **[Regarding the 2016 LOCGs]**<br>  ○ The "safely managed" requirement is intended "as a failsafe way to make sure [Care Advocates] look at the medical conditions" because "the patient's safety is the paramount thing." (**Trial Tr. 1387:24–1388:25 (Allchin)**.)<br>  ○ Section 1.6 ensures that, even if the facility is not capable of treating the member's co-occurring condition, the facility is at least capable of "safely managing" the co-occurring condition while it treats the diagnosis for which the patient is seeking treatment. (**Trial Tr. 1387:24–1388:25 (Allchin)**.) |
| 8th black bullet and sub-bullets (page 8-0007) | There is a reasonable expectation that service(s) will improve the member's presenting problems within a reasonable period of time.<br>  ○ Improvement of the member's condition is indicated by the reduction or control of the signs and symptoms that necessitated treatment in a level of care.<br>  ○ Improvement in this context is | • <u>Argument</u><br>  ○ Acuity<br>  ○ Maintenance of Function<br>  ○ Custodial/ Improvement<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 267:10-20, 267:21-23<br>  ○ <u>Plakun</u>: Tr. 552:19-22, 553:4-8, 555:15-22, 555:24-556:2<br>  ○ <u>Martorana</u>: Tr. 1129:11-1130:11, 1130:12-14 | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 6" (pg. 8–9).<br>• *See* IV.A.1 "2014 Common Criteria, Admission Criteria, 6th black bullet and sub-bullets (page 4-0009 to -0010)" (pg. 107-108).<br>• *See* V.A.1 "2015 Common Criteria, Admission Criteria, 1.8" (pg. 136–137.)<br>• A member's "presenting problems" are "the issues, complaints, and the condition that [the member] present[s] to treatment." (**Trial Tr. 982:5–6 (Martorana)**.)<br>• This criterion defines improvement as reduction or control of symptoms as well as prevention of deterioration.<br>  ○ (**Trial Tr. 982:9–18 (Martorana)** ("Well, this defines two ways that you can assess improvement. One is that by objective means that—well, first of all, they have to have a treatment plan that you will expect to improve their condition. Then when that's in place, then you would measure the improvement—this is basic treatment planning—in an objective manner. So it can be either reduction or control. And then, also, you can consider improvement in someone by looking at and considering whether if you took this level of care away would they then deteriorate?").) |

**VIII.A.1 2017 Level of Care Guidelines (Ex. 8)**

**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Admission Criteria (Ex. 8-0006 to -0007; Ex. 8-0011, Ex. 8-0024)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | measured by weighing the effectiveness of treatment against evidence that the member's signs and symptoms will deteriorate if treatment in the current level of care ends. Improvement must also be understood within the broader framework of the member's recovery, resiliency, and wellbeing. | | • Maintenance of a member's condition, i.e., the prevention of deterioration, is included in this definition of improvement.<br>   ○ (**Trial Tr. 982:21–25 (Martorana)**.)<br>• "Presenting problem" also includes chronic conditions. (**Trial Tr. 983:1–8 (Martorana)**.)<br>• "Reasonable period of time" allows a reviewer to apply clinical judgment by taking into consideration both the member's condition as well as the nature of the presenting problem. (**Trial Tr. 983:11–984:1 (Martorana)**.)<br>• (**Trial Tr. 1189:23–1190:2 (Simpatico)** ("Because the UBH guidelines simply defin[e] 'active treatment' in the context of amelioration of symptoms or prevention of deterioration, [UBH guidelines are] silent on duration of illness; and this is simply making an explicit example of chronic mental illness. . . .").) |

**VIII.A.2 2017 Level of Care Guidelines (Ex. 8)**

**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Continued Service Criteria (Ex. 8-0007, Ex. 8-0011, Ex. 8-0024)**

**2.** Continued Service Criteria (Ex. 8-0007, Ex. 8-0011, Ex. 8-0024)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet and sub-bullets (pages 8-0007, -0011, and -0024) | The admission criteria continue to be met and active treatment is being provided. For treatment to be considered "active", service(s) must be as follows:<br>• Supervised and evaluated by the admitting provider;<br>• Provided under an individualized treatment plan that is focused on addressing the factors leading to admission, and makes use of clinical best practices;<br>• Reasonably expected to improve the member's presenting problems within a reasonable period of time. | • <u>Argument</u><br>  o Acuity<br>  o Maintenance of Function<br>  o Custodial/ Improvement<br>• <u>Testimony</u><br>  o <u>Plakun</u>: Tr. 552:19-22, 553:15-23 | • *See* IV.A.2 "2014 Common Criteria, Continued Service Criteria, 1st black bullet and sub-bullets (page 4-0007 to -0008)" (pg. 109–110).<br>• This language is based in part on language from the Chapter 2 of the Medicare Benefit Policy Manual.<br>  o (**Trial Tr. 988:16–989:7 (Martorana)**.)<br>  o (**Trial Ex. 655-0007**) (**Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services**) ("For services in an IPF to be designated as active treatment, they must be . . . *[r]easonably expected to improve the patient's condition* . . . .") (emphasis added).)<br>• The phrase "focused on addressing the factors leading to admission" emphasize that treatment planning should be both individualized and focused on the factors that caused a member to be placed in a given level of care. (**Trial Tr. 990:20–991:4 (Martorana)**.)<br>  o It also ensures a member can "be treated safely, effectively, and efficiently in a less restrictive setting." (**Trial Tr. 991:17–21 (Martorana)**.)<br>  o (**Trial Tr. 1194:21–1195:12 (Simpatico)**.)<br>• This criterion allows for treatment of chronic conditions because it calls for an individualized treatment plan that will address all factors noted while collecting the information listed in the Best Practices section of the guideline. (**Trial Tr. 991:5–991:12 (Martorana)**.)<br>• The use of the phrase "reasonable period of time" is "an additional piece to being effective," as there is an expectation for the member's problems to improve in a reasonable period of time because "the treatment plan is matched properly and the diagnosis is made appropriately." (**Trial Tr. 993:14–17 (Martorana)**.)<br>  o (**Trial Tr. 1195:13–24 (Simpatico)**.) |

**VIII.A.2 2017 Level of Care Guidelines (Ex. 8)**

**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Continued Service Criteria (Ex. 8-0007, Ex. 8-0011, Ex. 8-0024)**

**3.** Discharge Criteria (Ex. 8-0007, Ex. 8-0011 to -0012, Ex. 8-0024 to -0025)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet and sub-bullets (pages 8-0007, -0011 to -0012, and -0024 to -025) | The continued stay criteria are no longer met. Examples include:<br>○ The factors which led to admission have been addressed to the extent that the member can be safely transitioned to a less intensive level of care, or no longer requires care.<br>…<br>○ Treatment is primarily for the purpose of providing social, custodial, recreational, or respite care.<br>…<br>○ The member is unwilling or unable to participate in treatment, and involuntary treatment or guardianship is not being pursued. | • <u>Argument</u><br>○ Acuity<br>○ Drive Toward Lower Levels of Care<br>○ Maintenance of Function<br>○ Custodial/ Improvement<br>○ Motivation<br>• <u>Testimony</u><br>○ <u>Fishman</u>: Tr. 268:06-13, 268:14-20<br>○ <u>Plakun</u>: Tr. 552:19-22, 553:25-554:5<br>○ <u>Martorana</u>: Tr. 994:10-998:19 | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8) (discussing concept of least restrictive effective level of care).<br>• This criterion provides that a member should be transitioned to a lower level of care once the goals of treatment are accomplished. This decision also involves assessing whether the member can be treated safely, efficiently, and effectively at the lower level of care, per that level of care's admission requirements.<br>○ (**Trial Tr. 994:10–995:2 (Martorana)** (discharge involves a feedback loop which assesses whether a patient can be safely and effectively treated in the transitional level of care per that level's admission criteria).)<br>○ (**Trial Tr. 1197:18–1198:20 (Simpatico)** ("As [treatment] happens, we are constantly reassessing for the opportunity to be able to provide safe and effective treatment in a less restrictive manner . . . .").)<br>• This criterion ensures that treatment will address a member's condition or suffering by ensuring that the member is willing and able to participate in treatment.<br>○ (**Trial Tr. 995:2–996:21 (Martorana)** (noting that the treatment plan must be adjusted to ensure the member is participating in treatment).)<br>○ (**Trial Tr. 1198:16–1199:16 (Simpatico)**.) |

**VIII.A.3 2017 Level of Care Guidelines (Ex. 8)**

**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Discharge Criteria (Ex. 8-0007, Ex. 8-0011 to -0012, Ex. 8-0024 to -0025)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | • **[Regarding the 2016 LOCGs]**<br>  ○ The admission criteria for the level of care to which the member is being transitioned is part of the discharge criteria, thus ensuring that the member will be discharged to a lower level unless the member treatment will be both safe and effective. (**Trial Tr. 1424:11–1426:6 (Allchin)**.)<br>• **[Regarding the 2015 LOCGs]**<br>  ○ This criterion comports with generally accepted standards of care because "it's stating in a similar manner as previous versions that the continued stay criteria are no longer met and that the reasons for presentation, the so-called 'why now' factors, which led to admission, have been addressed to the extent that the member can be safely transitioned to a less intensive level of care, which is the whole point of treatment. And then, finally, it again addresses a situation where excluding an involuntary population, which is sort of a separate consideration, if a member is—that has capacity is unwilling or unable to participate in their own treatment after inadequate attempt to motivate them and engage them, then by definition they're not capable of participating in active treatment and there wouldn't be a medical necessity to continue treatment." (**Trial Tr. 1332:25–1333:13 (Simpatico)**.) |

**VIII.A.3 2017 Level of Care Guidelines (Ex. 8)**

**Common Criteria (Ex. 8-0006 to -0007, Ex. 8-0011 to -0012 & Ex. 8-0024 to -0025) | Discharge Criteria (Ex. 8-0007, Ex. 8-0011 to -0012, Ex. 8-0024 to -0025)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | • **[Regarding Generally Accepted Standards of Care Generally]**<br>○ (**Trial Ex. 656-0033 (Medicare Benefit Policy Manual, Chapter 6, § 70.3 "Partial Hospitalization Services")** (it is "reasonably necessary" to deny coverage where the member "cannot, or refuse[s], to participate (due to their behavioral or cognitive status) with active treatment of their mental disorder (except for a brief admission necessary for diagnostic purposes), or . . . cannot tolerate the intensity of PHP.").) |

**B.** Outpatient: Mental Health Conditions (Ex. 8-0013 to -0014)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | … The course of treatment in Outpatient is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the factors that precipitated admission no longer require treatment. Individual outpatient psychotherapy is generally provided in sessions lasting up to 45 minutes. | • Argument<br>  o Acuity<br>  o Maintenance of Function<br>• Testimony<br>  o Plakun: Tr. 591:24, 592:2-14, 657:20-658:1 | • The criterion's focus on "the factors that precipitated admission" ensures that the symptoms that have the greatest influence on selecting a level of care are being treated in a setting that offers safe and effective treatment and is also the least restrictive.<br>  o (**Trial Tr. 1204:16-1205:18** (**Simpatico**).)<br>• The phrase "the factors that precipitated admission" includes consideration of both chronic conditions and acute symptoms.<br>  o (**Trial Tr. 1205:19–1206:1** (**Simpatico**).)<br>  o (**Trial Tr. 1000:20–1001:1** (**Martorana**) ("Well, again, these are all the considerations that have led this member to this point in time seeking treatment. So the symptoms that caused them distress, if there were precipitants for that; what their prior history has been; their co-morbidities; what's worked and what hasn't. All these things come into play as the factors necessitating or precipitating admission.").) |

**C.** Intensive Outpatient Program: Mental Health Conditions (Ex. 8-0014 to -0015)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | . . . The course of treatment in an Intensive Outpatient Program is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care. | • Argument<br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Plakun: Tr. 591:24, 592:2-14, 657:20-658:1 | • The preamble contains the same language as the preamble for the 2017 Outpatient: Mental Health Conditions LOCG.<br>  ○ (**Trial Tr. 1002:16–1003:8 (Martorana)**.)<br>  ○ (**Trial Tr. 1206:25–1207:13 (Simpatico)**.)<br>  ○ *See* VIII.B "2017 Outpatient: Mental Health Conditions, Preamble" (pg. 184).<br>• The preamble makes specific reference to the treatment of co-occurring conditions.<br>  ○ (**Trial Tr. 1003:9–23 (Martorana)**.)<br>  ○ (**Trial Tr. 1207:17–1208:5 (Simpatico)**.) |

**D.** Residential Treatment Center: Mental Health Conditions (Ex. 8-0018 to -0019)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in a Residential Treatment Center is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care…. | • Argument<br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Plakun: Tr. 592:20-593:4 | • This preamble is substantially similar to the preamble for the 2017 Outpatient: Mental Health Conditions LOCG.<br>  ○ (**Trial Tr. 1004:14–1005:2** (**Martorana**).)<br>  ○ (**Trial Tr. 1208:6–21** (**Simpatico**).)<br>  ○ *See* VIII.B "2017 Outpatient: Mental Health Conditions, Preamble" (pg. 184). |

**VIII.D.1 2017 Level of Care Guidelines (Ex. 8)**
**Residential Treatment Center: Mental Health Conditions (Ex. 8-0018 to -0019) | Admission Criteria (Ex. 8-0018)**

**1.** Admission Criteria (Ex. 8-0018)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3rd black bullet and sub-bullets (page 8-0018) | The factors leading to admission cannot be safely, efficiently, or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors. Examples include the following:<br>o Acute impairment of behavior or cognition that interferes with activities of daily living to the extent that the welfare of the member or others is endangered.<br>o Psychosocial and environmental problems that are likely to threaten the member's safety or undermine engagement in a less | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Plakun</u>: Tr. 592:20-21, 593:5-11 | • This criterion requires a care advocate to assess immediate changes causing a member to seek treatment, the member's living situation, and factors such as a member's employment, education level, and relationships when deciding whether this level of care is appropriate.<br>o (**Trial Tr. 1005:7–1006:14** (**Martorana**).)<br>o (**Trial Tr. 1211:9–1212:14** (**Simpatico**).)<br>• The phrase "acute changes" is included to ensure the reason the member is seeking the intense treatment provided under this level of care is fully understood by the care advocate and the providers.<br>o (**Trial Tr. 1006:15–1007:2** (**Martorana**).)<br>• "The notion 'acute changes' refers to—again, regarding why does the person present now, is referring to a departure from a baseline that would have brought the person to the attention of healthcare providers or, in this case, behavioral health care providers." (**Trial Tr. 1209:18–23** (**Simpatico**).)<br>• This criterion does not exclude consideration of chronic conditions.<br>o (**Trial Tr. 1209:24–1210:18** (**Simpatico**).)<br>• This criterion contains language similar to Section 70.3 of Chapter 6 of the Medicare Benefit Policy Manual. Section 70.3 discusses requirements for partial hospitalization, a less intense level of care than residential treatment.<br>o (**Trial Tr. 1008:19–1014:7** (**Martorana**).)<br>o (**Trial Ex. 656-0029, -30, -31, -33** (**Medicare Benefit Policy Manual Chapter 6 – Hospital** |

**VIII.D.1 2017 Level of Care Guidelines (Ex. 8)**

**Residential Treatment Center: Mental Health Conditions (Ex. 8-0018 to -0019) | Admission Criteria (Ex. 8-0018)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | intensive level of care without the intensity of services offered in this level of care. | | **Services Covered Under Part B**).)<br>• This criterion also contains language substantially similar to that contained in the Local Coverage Determinations for partial hospitalization services and psychiatric inpatient hospitalization.<br>○ (**Trial Tr. 1014:19–1019:2** (**Martorana**).)<br>○ (**Trial Ex. 1502-0009** (**Local Coverage Determination (LCD): Psychiatric Inpatient Hospitalization**).)<br>○ (**Trial Ex. 1507-0003, -17** (**Local Coverage Determination (LCD): Psychiatric Partial Hospitalization**).) |

**2.** Continued Service Criteria (Ex. 8-0018 to -0019)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2nd black bullet and sub-bullets (pages 8-0018 to -0019) | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . .<br>o Health-related services provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence;<br>o Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Plakun</u>: Tr. 592:20-21, 593:5-11<br>o <u>Martorana</u>: Tr. 1006:15-1007:2 | • Dr. Martorana's testimony cited by plaintiffs does not concern this criterion.<br>• Language in this criterion comes from the member's coverage documents.<br>o (**Trial Tr. 1019:6–1020:2 (Martorana)**.)<br>• (**Trial Ex. 655-0007 (Medicare Benefit Policy Manual Chapter 2 – Inpatient Psychiatric Hospital Services)** ("For services in an IPF to be designated as active treatment, they must be: Provided under an individualized treatment or diagnostic plan; Reasonably expected to improve the patient's condition or for the purpose of diagnosis; and Supervised and evaluated by a physician.").)<br>• (**Trial Ex. 655-0008 (Medicare Benefit Policy Manual Chapter 2 – Inpatient Psychiatric Hospital Services)** ("Physician participation in the services is an essential ingredient of active treatment. . . . [T]he physician must serve as a source of information and guidance for all members of the therapeutic team who work directly with the patient in various roles.").) |

**E.** Outpatient: Substance-Related Disorders (Ex. 8-0026 to -0027)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | Assessment and diagnosis and active behavioral health treatment that are provided in an ambulatory setting. The course of treatment in Outpatient is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the factors that precipitated admission no longer require treatment. Individual outpatient psychotherapy is generally provided in sessions lasting up to 45 minutes.<br><br>Extended outpatient sessions are individual psychotherapy sessions with or without evaluation and management services lasting longer than 95 minutes. Extended outpatient sessions require pre-service notification before services are received, except in extenuating circumstances, such as a crisis when notification should occur | • <u>Argument</u><br>○ Acuity<br>○ Maintenance of Function<br>○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>○ <u>Fishman</u>: Tr. 269:8-270:7 | • Dr. Fishman's cited testimony does not address the second paragraph.<br>• This is the same language that appears in the 2017 Outpatient: Mental Health Conditions LOCGs.<br>○ (**Trial Tr. 1020:12-1021:10** (**Martorana**).)<br>○ (**Trial Tr. 1213:12–1214:17** (**Simpatico**).)<br>○ *See* VIII.B "2017 Outpatient: Mental Health Conditions, Preamble" (pg. 184). |

**VIII.E. 2017 Level of Care Guidelines (Ex. 8)**
**Outpatient: Substance-Related Disorders (Ex. 8-0026 to -0027)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | as soon as possible. In the event that the Mental Health/Substance Use Disorder Designee is not notified of extended outpatient sessions, benefits may be reduced. Check the member's specific plan document for the applicable penalty and allowance of a grace period. | | |

**F.** Intensive-Outpatient Program: Substance-Related Disorders (Ex. 8-0032 to -0033)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in an Intensive Outpatient Program is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that the member's condition can be safely, efficiently and effectively treated in a less intensive level of care…. | • Argument<br>  ○ Acuity<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Fishman: Tr. 271:18-272:1 | • The preamble does not limit Intensive Outpatient treatment to acute changes.<br>  ○ (**Trial Tr. 1022:4-20** (**Martorana**).)<br>• The preamble gives consideration to chronic conditions and comorbid conditions.<br>  ○ (**Trial Tr. 1022:4-20** (**Martorana**).)<br>• The preamble limits treatment time for children and adolescents to ensure treatment does not interfere with their education and to ensure that children are actively engaged in treatment.<br>  ○ (**Trial Tr. 1023:8-19** (**Martorana**).)<br>• This is the same language that appears in the 2017 Outpatient: Mental Health Conditions LOCG.<br>  ○ (**Trial Tr. 1216:18–1217:14** (**Simpatico**).)<br>  ○ *See* VIII.B "2017 Outpatient: Mental Health Conditions, Preamble" (pg. 184). |

## G. Residential Rehabilitation: Substance-Related Disorders (Ex. 8-0035 to -0036)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| Preamble | …The course of treatment in Residential Rehabilitation is focused on addressing the factors that precipitated admission (e.g., changes in the member's signs and symptoms, psychosocial and environmental factors, or level of functioning) to the point that rehabilitation can be safely, efficiently and effectively continued in a less intensive level of care. | • <u>Argument</u><br>○ Acuity<br>○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>○ <u>Fishman</u>: Tr. 272:2-8 | • The same language appears in the 2017 Outpatient: Mental Health Conditions LOCG.<br>○ (**Trial Tr. 1024:24–1025:12 (Martorana)**.)<br>○ (**Trial Tr. 1217:15–1218:10 (Simpatico)**.)<br>○ *See* VIII.B "2017 Outpatient: Mental Health Conditions, Preamble" (pg. 184).<br>• **[Regarding the phrase "Why Now" in the 2014 LOCGs]** LOCUS similarly emphasizes the "here and now" in assessing a patient's treatment level.<br>○ (**Trial Ex. 653-0007 (LOCUS for Psychiatric and Addiction Services)** ("Since LOCUS is designed as a dynamic instrument, scores should be expected to change over time. Scores are generally assigned on a here and now basis representing the clinical picture at the time of evaluation.").) |

**VIII.G.1 2017 Level of Care Guidelines (Ex. 8)**

**Residential Rehabilitation: Substance-Related Disorders (Ex. 8-0035 to -0036) | Admission Criteria (Ex. 8-0035 to -0036)**

**1.** Admission Criteria (Ex. 8-0035 to -0036)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3rd black bullet and sub-bullets (page 8-0035) | The factors leading to admission and/or the member's history of response to treatment suggest that there is imminent or current risk of relapse which cannot be safely, efficiently, and effectively managed in a less intensive level of care.<br>o A co-occurring mental health condition is stabilizing but the remaining signs and symptoms are likely to undermine treatment in a less intensive setting.<br>o The member is in immediate or imminent danger of relapse, and the history of treatment suggests that the structure and support provided in this level of care is | • Argument<br>o Acuity<br>o Maintenance of Function<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 272:9-19 | • This criterion accounts for co-morbidities by requiring reviewers to monitor the progress of co-occurring mental health conditions.<br>o (**Trial Tr. 1025:13–1026:11 (Martorana)**.)<br>• An "imminent or current risk of relapse" is required to ensure that the recidivism is triggered by the transfer to a lower level of care.<br>o (**Trial Tr. 1218:21–1219:5 (Simpatico)** ("Means that it's in the judgment of the clinicians working with the person that it's felt that if the person were to be moved to a less restrictive level of care, the fact that they no longer were in the current level of care, in this case residential rehab, would have a causal effect on their recisdivating [sic]. And the time element refers to there being a short enough time frame to be able to conclude that the active ingredient or the reason why a person recidivates is a fact more than likely attributable to the level of service.")<br>o (**Trial Tr. 1027:4–6** (**Martorana)** ("Well, you can't keep people indefinitely in a 24-hour monitored situation just because someday down the road the might relapse. That wouldn't be good clinical treatment.").)<br>• This criterion is consistent with the ASAM provision stating that "[i]ndividuals are transferred to less intensive levels of care at the point that they have established sufficient skills to safely continue treatment without the immediate risk of relapse, continued use or other continued problems, and are no longer in imminent danger of harm to themselves or others." (**Trial Ex. 662-0136 (ASAM Criteria)**<br>o (**Trial Tr. 1221:7–1222:10 (Simpatico)**.)<br>• This criterion also provides for the treatment of co-occurring conditions. (**Trial Tr. 1219:6–1220:7 (Simpatico)**.)<br>• Dr. Fishman applauded the inclusion of the phrase "or current" in this |

**VIII.G.1 2017 Level of Care Guidelines (Ex. 8)**

**Residential Rehabilitation: Substance-Related Disorders (Ex. 8-0035 to -0036) | Admission Criteria (Ex. 8-0035 to -0036)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | needed to control the recurrence. | | criterion. (**Trial Tr. 272:9–11 (Fishman)**.) |
| 4th black bullet (page 8-0036) | The factors leading to admission cannot be safely, efficiently, or effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms, and/or psychosocial and environmental factors. | • <u>Argument</u><br>o Acuity<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 272:20-273:2 | • The same language appears in the 2017 Residential Rehabilitation: Mental Health Conditions LOCG.<br>o (**Trial Tr. 1222:18–1223:6 (Simpatico)**.)<br>o (**Trial Tr. 1027:10–22** (**Martorana**).)<br>o *See* VIII.D.1 "2017 Residential Treatment Center: Mental Health Conditions, Admission Criteria, 3rd black bullet and sub-bullets (page 8-0018)" (pg. 187–188). |

**2.** Continued Service Criteria (Ex. 8-0036)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 2nd black bullet and sub-bullets (page 8-0036) | Treatment is not primarily for the purpose of providing custodial care. Services are custodial when they are any of the following: . . .<br>• Health-related services provided for the primary purpose of meeting the personal needs of the member or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence.<br>• Services that do not require continued administration by trained medical | • Argument<br>  ○ Maintenance of Function<br>  ○ Custodial/ Improvement<br>• Testimony<br>  ○ Fishman: Tr. 273:3-9 | • The same language appears in the 2017 Residential Rehabilitation: Mental Health Conditions LOCG.<br>  ○ (**Trial Tr. 1027:23–10** (**Martorana**).)<br>  ○ (**Trial Tr. 1223:7–16** (**Simpatico**).)<br>  ○ *See* VIII.D.1 "2017 Residential Treatment Center: Mental Health Conditions, Continued Service Criteria, 2nd black bullet and sub-bullets (page 8-0018 to -0019)" (pg. 189). |

**VIII.G.2 2017 Level of Care Guidelines (Ex. 8)**

**Residential Rehabilitation: Substance-Related Disorders (Ex. 8-0035 to -0036) | Continued Service Criteria (Ex. 8-0036)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | personnel in order to be delivered safely and effectively. | | |

**IX.** August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet | United Behavioral Health maintains that optimal clinical outcomes result when evidence-based treatment is provided in the least restrictive level of available care that is structured and intensive enough to safely and adequately treat a member's presenting problem. | • Argument<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Fishman: Tr. 213:06-214:04<br>  o Plakun: Tr. 511:25-512:6 | • Dr. Fishman's and Dr. Plakun's testimony consists of generalized comments that do not directly address this criterion.<br>• Every class member's plan excludes "custodial care" and the Custodial Care CDGs are intended to interpret plan exclusions. (**Trial Ex. 1654**; **Trial Ex. 1654; Trial Tr. 455:24–456:19 (Niewenhous)**; **Trial Tr. 895:20–897:6 (Dehlin)**.)<br>  o Plan definitions of "custodial care" prevail over the Custodial Care CDGs in the event of a disagreement. (**Trial Exs. 10-0002; 47-0002; 84-0002; 108-0002; 148-0002; 195-0002; 221-0002**.)<br>  o Active treatment is the inverse of custodial care. (**Trial Tr. 1079:23–1080:9 (Martorana)**.)<br>• *See* discussion of least restrictive level of care that is safe and effective, at I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8).<br>  o This criterion requires a higher level of care if a lower level would not be *safe* or *effective*. (**Trial Tr. 1031:21–1032:3 (Martorana)**.)<br>  o The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources. (**Trial Tr. 968:25-971:23 (Martorana)**; **Trial Ex. 634-0022 (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders); Trial Ex. 639-0016 (APA Practice Guideline for the Treatment of Patients With** |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | **Major Depressive Disorder**).)<br>• **[Regarding the 2017 Level of Care Guidelines]**<br>  o The term "presenting problems" reflects "the totality of . . . what the member is presenting," including "co-morbidity or chronic" conditions. (**Trial Tr. 983:1-8 (Martorana)**.)<br>• **[Regarding the 2015 Level of Care Guidelines]**<br>  o Dr. Plakun described the concept of "adequately treat[ing]" a patient as an appropriate standard of care. (**Trial Tr. 523:8–524:1 (Plakun)**.) |
| 2nd black bullet | Patient has been determined to require intensive, 24 hour, specialized psychiatric intervention that cannot be provided in a less restrictive setting. | • <u>Argument</u><br>  o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 213:06-214:04<br>  o <u>Plakun</u>: Tr. 511:25-512:6 | • Dr. Fishman's and Dr. Plakun's testimony consists of generalized comments that do not directly address this criterion.<br>• *See* discussion of least restrictive level of care that is safe and effective, at I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8).<br>  o This criterion requires a higher level of care if a lower level would not be *safe* or *effective*. (**Trial Tr. 1031:21–1032:3 (Martorana)**.)<br>  o The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources. (**Trial Tr. 968:25-971:23 (Martorana)**; **Trial Ex. 634-0022 (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders); Trial Ex. 639-0016 (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder)**.) |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3rd black bullet | United Behavioral Health maintains that treatment of a behavioral health condition in an acute inpatient unit or RTC is not for the purpose of providing custodial care, but is for the active treatment of a behavioral health condition. | • <u>Argument</u><br>○ Maintenance of Function<br>○ Custodial/ Improvement<br>• <u>Testimony</u><br>○ <u>Fishman</u>: Tr. 274:5-275:25<br>○ <u>Plakun</u>: Tr. 557:5-558:23 | • Dr. Fishman's and Dr. Plakun's testimony consists of generalized comments that do not directly address this criterion.<br>• Every plan in evidence specifically excludes coverage for "custodial care" and defines that term. (**Trial Ex. 1654** (summarizing custodial care definitions and exclusions in class members' plans); **Trial Tr. 895:20–897:6 (Dehlin)** (explaining Exhibit 1654).)<br>• The Custodial Care CDG cautions that the terms of an individual member's plan "may differ greatly from the standard benefit plans upon which this guideline is based," and "[i]n the event that . . . there is a conflict between this document and the [member's plan], the *enrollee's specific benefit* document supersedes these guidelines." (**Trial Exs. 10-0002; 47-0002; 84-0002; 108-0002; 148-0002; 195-0002; 221-0002**.)<br>• **[Regarding the 2017 Custodial Care Coverage Determination Guideline]**<br>○ Custodial care is the inverse of active treatment. If treatment is not active, it is custodial and vice-versa. (**Trial Tr. 1079:23–1080:9 (Martorana)**.)<br>• **[Regarding the 2015 Custodial Care Coverage Determination Guideline]**<br>○ The definition of "custodial care" reflected in UBH's Custodial Care CDGs either tracks the plan language verbatim or is intended to interpret the plan language of the majority of the plans in evidence. (**Trial Ex. 1654; Trial Tr. 455:24–456:19 (Niewenhous)**.)<br>• **[Regarding the 2017 Custodial Care Coverage Determination Guideline]** |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | ○ Dr. Plakun testified that a similar criterion is "totally consistent with generally accepted standards of care." (**Trial Tr. 560:8–15 (Plakun)**.)<br>• The first three sub-bullets of the definition of "active treatment" come from CMS guidelines. (**Trial Tr. 1087:21–1088:11 (Martorana)**; **Trial Ex. 655-0007 (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services)**.)<br>○ The fourth sub-bullet is consistent with CMS guidelines for outpatient, partial hospitalization, and inpatient services. (**Trial Ex. 656-0025 to -26** (Medicare Benefit Policy Manual, Chapter 6 "Outpatient Hospital Psychiatric Services")**; Trial Ex. 655-0004** (Medicare Benefit Policy Manual, Chapter 6 "Inpatient Psychiatric Hospital Services")**; Trial Ex. 1507-0017** (CMS Local Coverage Determination for Psychiatric Partial Hospitalization Program").)<br>○ The fifth sub-bullet is consistent with CMS guidelines for partial hospitalization and inpatient services, which is an appropriate reference point for higher levels of care like residential and inpatient treatment. (**Trial Ex. 656-0029–33)** (CMS Medicare Benefit Policy Manual, Chapter 6 "Partial Hospitalization"); **Trial Tr. 488:3–8 (Plakun); Trial Tr. 936:18–937:9, 1009:9–12 (Martorana)**.) |
| 4th black bullet | Active inpatient or residential treatment is a clinical process involving the 24-hour care of patients that includes assessment, diagnosis, | • <u>Argument</u><br>○ Maintenance of Function<br>○ Custodial/ Improvement | • Dr. Fishman's and Dr. Plakun's testimony consists of generalized comments that do not directly address this criterion.<br>• Every class member's plan excludes "custodial care" and the Custodial Care CDGs are intended to interpret plan |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | intervention, evaluation of care, treatment and planning for discharge and aftercare, under the direction of a psychiatrist. | • <u>Testimony</u><br>o <u>Fishman</u>: Tr. 274:5-275:25<br>o <u>Plakun</u>: Tr. 509:25-510:8. 557:5-558:23 | exclusions. (**Trial Ex. 1654**; **Trial Ex. 1654; Trial Tr. 455:24–456:19 (Niewenhous)**; **Trial Tr. 895:20–897:6 (Dehlin)**.)<br>o Plan definitions of "custodial care" prevail over the Custodial Care CDGs in the event of a disagreement. (**Trial Exs. 10-0002; 47-0002; 84-0002; 108-0002; 148-0002; 195-0002; 221-0002**).<br>o Active treatment is the inverse of custodial care. **(Trial Tr. 1079:23–1080:9 (Martorana)**.)<br>• The first three sub-bullets of the definition of "active treatment" come from CMS guidelines. (**Trial Tr. 1087:21–1088:11 (Martorana)**; (**Trial Ex. 655-0007 (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services)**.)<br>o The fourth sub-bullet is consistent with CMS guidelines for outpatient, partial hospitalization, and inpatient services. (**Trial Ex. 656-0025 to -26 (Medicare Benefit Policy Manual, Chapter 6 "Outpatient Hospital Psychiatric Services"); Trial Ex. 655-0004 (Medicare Benefit Policy Manual, Chapter 6 "Inpatient Psychiatric Hospital Services"); Trial Ex. 1507-0017 (CMS Local Coverage Determination for Psychiatric Partial Hospitalization Program")**.)<br>o The fifth sub-bullet is consistent with CMS guidelines for partial hospitalization and inpatient services, which is an appropriate reference point for higher levels of care like residential and inpatient treatment. (**Trial Ex. 656-0029–33)** (CMS Medicare Benefit Policy Manual, Chapter 6 "Partial Hospitalization); **Trial Tr. 488:3–8** |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | **(Plakun); Trial Tr. 936:18–937:9, 1009:9–12 (Martorana)**.)<br>• This criterion is similar to Medicare guidelines, which provide: "For services in an IPF to be designated as active treatment, they must be . . . [s]upervised and evaluated by a physician."<br>  ○ (**Trial Ex. 655-0007 (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services)**.)<br>• The members' plans often define residential treatment.<br>  ○ (***See, e.g.*, Trial Tr. 873:16–875:7 (Dehlin)** (discussing **Trial Ex. 2014-0168**).)<br>• **[Regarding the 2017 Level of Care Guidelines]**<br>  ○ "[R]esidential treatment is a 24-hour level of care for someone who requires a higher, more intensive level of care." (**Trial Tr. 1006:19–24 (Martorana)**.)<br>• **[Regarding the 2011 Level of Care Guidelines]**<br>  ○ This language is consistent with a definition of active treatment that "either ameliorates signs and symptoms or prevents deterioration," and does not "address only crisis situations." (**Trial Tr. 1261:8–1262:15 (Simpatico)**.)<br>  ○ "It is prudent to have a physician see a patient in a setting which requires 24-hour confinement. It really is the community standard. It is the expectation that a patient will be seen by a physician as promptly as possible." (**Trial Tr. 1582:8–10 (Alam)**.) |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 5th black bullet and sub-bullets | "Active Treatment" in this context is indicated by services that are all of the following:<br>○ Supervised and evaluated by a physician<br>○ Provided under an individualized treatment or diagnostic plan;<br>○ Reasonably expected to improve the patient's condition or for the purpose of diagnosis and<br>○ Unable to be provided in a less restrictive setting<br>○ Focused on interventions that are based on generally accepted standard medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the patient's condition to the extent that they can be safely treated in a lower level of care. | • <u>Argument</u><br>○ Maintenance of Function<br>○ Custodial/ Improvement<br>○ Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>○ <u>Fishman</u>: Tr. 274:5-275:25<br>○ <u>Plakun</u>: Tr. 509:25-510:8, 557:5-558:23, 562:11-564:4 | • Dr. Fishman's testimony consists of generalized comments that do not directly address this criterion.<br>• Dr. Plakun's testimony consists of generalized comments as well as comments on the 2015 Custodial Care and Inpatient & Residential Services Coverage Determination Guideline. They do not directly address this criterion.<br>• The first three sub-bullets of this criterion are drawn from the CMS definition of active treatment.<br>○ (**Trial Tr. 1087:21–1088:11 (Martorana)**.)<br>○ (**Trial Ex. 655-0007 (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services)** ("For services in an IPF to be designated as active treatment, they must be: Provided under an individualized treatment or diagnostic plan; Reasonably expected to improve the patient's condition or for the purpose of diagnosis; and Supervised and evaluated by a physician.").)<br>• The fourth sub-bullet that treatment must be "[u]nable to be provided in a less restrictive setting" tracks language in numerous CMS guidelines, including the guidelines for "Outpatient Hospital Psychiatric Services" (Medicare Benefit Policy Manual § 70.1), which provides that "[s]ervices are noncovered" if "stability can be maintained without further treatment or with less intensive treatment." (**Trial Ex. 656-0025 to -26**).)<br>○ (**Trial Ex. 655-0004** (Medicare inpatient guidelines providing 24-hour care should be limited to "only those patients whose admission to the unit is required for active treatment, of an intensity that can be provided appropriately only in an inpatient hospital |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | setting.").)<br>○ (**Trial Ex. 1507-0017** (CMS partial hospitalization guidelines, providing: "In general, patients should be treated in the least intensive and restrictive setting which meets the needs of their illness.").)<br>• The fifth sub-bullet is consistent with CMS guidance that the purpose of partial hospitalization is to treat the patient's "serious *presenting* psychiatric symptoms" and is characterized by patients with "an *acute* onset or decompensation of a covered . . . mental health disorder. . . ." **(Trial Ex. 656-0029–33) (CMS Medicare Benefit Policy Manual for partial hospitalization)**.)<br>○ Because Medicare does not cover residential treatment, CMS guidelines for partial hospitalization and inpatient treatment are the closest analogues to residential treatment. (**Trial Tr. 936:18–937:9 (Martorana)**.)<br>○ Partial hospitalization is "lower than residential or inpatient" on the "continuum of care." (**Trial Tr. 488:3–8 (Plakun); Trial Tr. 1009:9–12** (partial hospitalization is a less intensive level of care than residential treatment).)<br>• This criterion also assesses whether treatment requires a 24-hour setting.<br>○ (**Trial Tr. 1088:22–1089:1 (Martorana)** ("Well, part of the decision-making on active treatment is that there may be treatment interventions going on but if they don't require the use of the—of a restrictive setting, then that would make them not active treatment for these 24-hour levels of care.").) |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | • **[Regarding the 2017 Level of Care Guidelines]**<br>  o The term "presenting problems" reflects "the totality of . . . what the member is presenting," including "co-morbidity or chronic" conditions. **(Trial Tr. 983:1-8 (Martorana)**.)<br>• *See* discussion of least restrictive level of care that is safe and effective, at I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8).<br>  o "Current condition" encompasses all symptoms the member brings to treatment, not only crisis conditions. (**Trial Tr. 1031:3–8 (Martorana)**.)<br>  o This criterion requires a higher level of care if a lower level would not be *safe* or *effective*. (**Trial Tr. 1031:21–1032:3 (Martorana)**.)<br>  o The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources. (**Trial Tr. 968:25-971:23 (Martorana)**; **Trial Ex. 634-0022 (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders); Trial Ex. 639-0016 (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder)**.)<br>• *See* discussion of reasonable expectation of improvement in I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 6" (pg. 8–9).<br>  o The phrase "[t]here is a reasonable expectation that services will improve …" comes from Medicare sources. (**Trial Tr. 319:5–320:12 (Niewenhous); Trial Ex. 655-0007**) (Medicare Benefit Policy Manual |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | Chapter 2–Inpatient Psychiatric Hospital Services).)<br>o This criterion allows for maintenance treatment by covering treatment if withdrawal would result in the member's condition deteriorating. (**Trial Tr. 1033:21–1034:10 (Martorana)** ("[I]t has language about determining whether the member might deteriorate if the current treatment was withdrawn. So that's one definition of 'improvement' that's mentioned here. . . . That's another way of describing maintenance treatment.").)<br>o This criterion does not require continuous improvement, and it does not require the withdrawal of care once the presenting symptoms are improved. (**Trial Tr. 1034:22--1035:2 (Martorana)**; **Trial Tr. 1228:10–12 (Simpatico)**.)<br>o Improvement requires an individualistic weighing of the pros and cons of moving a member to a lower level of care before doing so. This weighing is based on clinical judgment. (**Trial Tr. 1415:5–1417:12 (Allchin)**.) |
| 6th black bullet | Improvement of the patient's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment in an acute or Residential Treatment Center. | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 274:5-275:25<br>o <u>Plakun</u>: Tr. | • Dr. Fishman's testimony consists of generalized comments that do not directly address this criterion.<br>• Dr. Plakun's testimony concerns the March 2015 and the December 2011 Custodial Care and Inpatient & Residential Services Coverage Determination Guideline.<br>• *See* discussion of reasonable expectation of improvement in I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 6" (pg. 8–9).<br>o The phrase "[t]here is a reasonable expectation that services will improve …" comes from Medicare |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | 563:16-566:16 | sources. (**Trial Tr. 319:5–320:12 (Niewenhous); Trial Ex. 655-0007)** (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services).)<br>o This criterion allows for maintenance treatment by covering treatment if withdrawal would result in the member's condition deteriorating. (**Trial Tr. 1033:21–1034:10 (Martorana)** ("[I]t has language about determining whether the member might deteriorate if the current treatment was withdrawn. So that's one definition of 'improvement' that's mentioned here. . . . That's another way of describing maintenance treatment.").)<br>o This criterion does not require continuous improvement, and it does not require the withdrawal of care once the presenting symptoms are improved. (**Trial Tr. 1034:22--1035:2 (Martorana)**; **Trial Tr. 1228:10–12 (Simpatico)**.)<br>o Improvement requires an individualistic weighing of the pros and cons of moving a member to a lower level of care before doing so. This weighing is based on clinical judgment. (**Trial Tr. 1415:5–1417:12 (Allchin)**.)<br>• This criterion, in conjunction with the 7th black bullet, considers whether the member is receiving treatment that reduces the symptoms requiring them to be in a 24-hour care environment and whether withdrawal of this treatment will cause the member's condition to worsen. If the member's condition will worsen upon withdrawal, treatment is considered active. (**Trial Tr. 1089:5–16 (Martorana)**.) |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 7th black bullet | "Improvement" in this context is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued. | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 274:5-275:25<br>o <u>Plakun</u>: Tr. 563:16-566:16<br>o <u>Niewenhous</u>: Tr. 340:16-345:01, 345:04-10, 354:25-357:19 | • Dr. Plakun's testimony concerns the March 2015 and the December 2011 Custodial Care and Inpatient & Residential Services Coverage Determination Guideline.<br>• *See* discussion of least restrictive level of care that is safe and effective, at I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8).<br>o "Current condition" encompasses all symptoms the member brings to treatment, not only crisis conditions. (**Trial Tr. 1031:3–8 (Martorana)**.)<br>o This criterion requires a higher level of care if a lower level would not be *safe* or *effective*. (**Trial Tr. 1031:21–1032:3 (Martorana)**.)<br>o The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources. (**Trial Tr. 968:25-971:23 (Martorana)**; **Trial Ex. 634-0022 (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders); Trial Ex. 639-0016 (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder)**.)<br>• *See* discussion of reasonable expectation of improvement in I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 6" (pg. 8–9).<br>o The phrase "[t]here is a reasonable expectation that services will improve " comes from Medicare sources. (**Trial Tr. 319:5–320:12 (Niewenhous); Trial Ex. 655-0007) (Medicare Benefit Policy Manual Chapter 2 – Inpatient Psychiatric Hospital Services)**.) |

**IX. August 2010 Custodial Care Coverage Determination Guideline (Ex. 10-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | ◦ This criterion allows for maintenance treatment by covering treatment if withdrawal would result in the member's condition deteriorating. (**Trial Tr. 1033:21–1034:10 (Martorana)** ("[I]t has language about determining whether the member might deteriorate if the current treatment was withdrawn. So that's one definition of 'improvement' that's mentioned here. . . . That's another way of describing maintenance treatment.").)<br>◦ This criterion does not require continuous improvement, and it does not require the withdrawal of care once the presenting symptoms are improved. (**Trial Tr. 1034:22--1035:2 (Martorana)**; **Trial Tr. 1228:10–12 (Simpatico)**.)<br>◦ Improvement requires an individualistic weighing of the pros and cons of moving a member to a lower level of care before doing so. This weighing is based on clinical judgment. (**Trial Tr. 1415:5–1417:12 (Allchin)**.)<br>• This criterion, in conjunction with the 6th black bullet, considers whether the member is receiving treatment that reduces the symptoms requiring them to be in a 24-hour care environment and whether withdrawal of this treatment will cause the member's condition to worsen. If the member's condition will worsen upon withdrawal, treatment is considered active. (**Trial Tr. 1089:5–16 (Martorana)**.) |

**X.** December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet | United Behavioral Health maintains that treatment of a behavioral health condition in an acute inpatient unit or RTC is not for the purpose of providing custodial care, but is for the active treatment of a behavioral health condition. | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 274:5-275:25, 276:6-277:16<br>o <u>Plakun</u>: Tr. 509:25-510:8, 557:5-558:23 | • Dr. Fishman's and Dr. Plakun's testimony does not address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. 200–201).<br>o This language is similar to language found in the August 2010 Custodial Care CDG. |
| 2nd black bullet | Custodial care in a psychiatric inpatient or residential setting is the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's behavioral health condition is not changing, or does not require trained clinical personnel to safely deliver services. | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 276:6-277:16<br>o <u>Plakun</u>: Tr. 509:25-510:8, 557:5-558:7 | • This language comes directly from the terms of class members' health plans.<br>o (**Trial Tr. 1090:9–21 (Martorana)**.)<br>o (**Trial Tr. 904:25-905:5 (Dehlin)** (noting that it is appropriate for "UBH to make coverage determinations based on the definitions of 'custodial care' that appear in the plan documents.").)<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. 200–201).<br>o Every class member's plan excludes "custodial care" and the Custodial Care CDGs are intended to interpret plan exclusions. (**Trial Ex. 1654**; **Trial Ex. 1654; Trial Tr. 455:24–456:19 (Niewenhous)**; **Trial Tr. 895:20–897:6 (Dehlin)**.)<br>o Plan definitions of "custodial care" prevail over the |

**X. December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | Custodial Care CDGs in the event of a disagreement. (**Trial Exs. 10-0002; 47-0002; 84-0002; 108-0002; 148-0002; 195-0002; 221-0002**.)<br>o Active treatment is the inverse of custodial care. (**Trial Tr. 1079:23–1080:9 (Martorana)**.)<br>• The provision in this criterion that "clinical … services" can constitute custodial care is consistent with CMS guidance that, in a 24-hour treatment setting, clinical services (including active clinical supervision) can constitute custodial care in the absence of active treatment: "The fact that a patient is under the supervision of a physician does not necessarily mean the patient is getting active treatment. For example, *medical supervision* of a patient may be necessary to assure the early detection of significant changes in his/her condition; however, in the absence of a specific program of therapy designed to effect improvement; a finding that the patient is receiving active treatment would be precluded. (**Trial Ex. 655-0007**.) (Medicare Benefit Policy Manual, Chapter 2, Inpatient Psychiatric Hospital Services).)<br>• **[Regarding the 2017 Custodial Care Coverage Determination Guidelines]**<br>o Plans are free to define custodial care in any manner they see fit. (**Trial Tr. 1078:9–1079:2 (Martorana)**.) |
| 3rd black bullet | "Custodial Care" in this context is characterized by the following:<br>• The presenting signs and symptoms of the patient | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement | • Dr. Fishman's and Dr. Plakun's testimony does not directly address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. 200–201).<br>o Every class member's plan excludes "custodial |

**X. December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | have been stabilized, resolved, or a baseline level of functioning has been achieved;<br>• The patient is not responding to treatment or otherwise not improving;<br>• The intensity of active treatment provided in an inpatient or residential treatment setting is no longer required or services can be safely provided in a less intensive setting.<br>• Examples include respite services, daily living skills instruction, days awaiting placement, activities that are social and recreational in nature, solely to prevent runaway/truancy or legal problems. | o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 120:12-123:06<br>o <u>Plakun</u>: Tr. 509:25-510:8, 557:5-558:7, 560:16-563:23<br>o <u>Niewenhous</u>: Tr. 363:13-364:14, 367:16-368:25 | care" and the Custodial Care CDGs are intended to interpret plan exclusions. (**Trial Ex. 1654**; **Trial Ex. 1654; Trial Tr. 455:24–456:19 (Niewenhous)**; **Trial Tr. 895:20–897:6 (Dehlin)**.)<br>o Plan definitions of "custodial care" prevail over the Custodial Care CDGs in the event of a disagreement. (**Trial Exs. 10-0002; 47-0002; 84-0002; 108-0002; 148-0002; 195-0002; 221-0002**.)<br>o Active treatment is the inverse of custodial care. (**Trial Tr. 1079:23–1080:9 (Martorana)**.)<br>• *See* discussion of least restrictive level of care that is safe and effective, at I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8).<br>o The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources. (**Trial Tr. 968:25–971:23 (Martorana)**; **Trial Ex. 634-0022** (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders); **Trial Ex. 639-0016** (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder).)<br>• *See* discussion of reasonable expectation of improvement in I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 6" (pg. 8–9).<br>o Improvement requires an individualistic weighing of the pros and cons of moving a member to a lower level of care before doing so. This weighing is based on clinical judgment. (**Trial Tr. 1415:5–1417:12 (Allchin)**.) |

**X. December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | • Custodial care is often defined by member's plans, and UBH must make coverage determinations based on those definitions.<br>  ○ (**Trial Tr. 895:6–17; 904:25–905:5** (**Dehlin**).)<br>• **[Regarding the 2011 Common Criteria]**<br>  ○ This criterion limits only those instances in which the *primary* purpose of treatment is addressing antisocial behavior or legal problems.<br>  ○ (**Trial Tr. 1036:5–10** (**Martorana**) ("That—that describes an exclusion for treatment that's—and the keyword here is 'primarily.' So if the focus of treatment has to do with someone being sentenced to a residential treatment program, as an example, instead of going to jail and they otherwise wouldn't need this treatment, then that would be—that would be an exclusion.").) |
| 4th black bullet | The provision of Custodial Care by trained behavioral health personnel, such as a psychiatrist or licensed clinician, does not cause the services to be classified as skilled services. If the nature of the services can be safely and effectively performed by a nontrained person, the services will be considered Custodial Care. | • <u>Argument</u><br>  ○ Maintenance of Function<br>  ○ Custodial/ Improvement<br>• <u>Testimony</u><br>  ○ <u>Fishman</u>: Tr. 274:5-275:25, 276:6-277:16<br>  ○ <u>Plakun</u>: Tr. 509:25-510:8, 557:5-558:7, 560:16-563:23 | • Dr. Fishman's and Dr. Plakun's testimony does not directly address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. 200–201).<br>  ○ Every class member's plan excludes "custodial care" and the Custodial Care CDGs are intended to interpret plan exclusions. (**Trial Ex. 1654**; **Trial Ex. 1654; Trial Tr. 455:24–456:19** (**Niewenhous**); **Trial Tr. 895:20–897:6** (**Dehlin**).)<br>  ○ Plan definitions of "custodial care" prevail over the Custodial Care CDGs in the event of a disagreement. (**Trial Exs. 10-0002; 47-0002; 84-0002; 108-0002; 148-0002; 195-0002; 221-0002**.) |

**X. December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | | ◦ Active treatment is the inverse of custodial care. **(Trial Tr. 1079:23–1080:9 (Martorana)**.)<br>• This criterion is consistent with CMS guidance, which provides that "Physician participation in the services is an essential ingredient of active treatment. . . . [T]he physician must serve as a source of information and guidance for all members of the therapeutic team who work directly with the patient in various roles." (**Trial Ex. 655-0008**.) (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services).)<br>◦ The provision in this criterion that services are not necessarily considered "active" simply because they are provided by a clinician. (**Trial Ex. 655-0007**) (Medicare Benefit Policy Manual, Chapter 2, Inpatient Psychiatric Hospital Services).) |
| 5th black bullet | Active treatment in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of patients that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare, under the direction of a psychiatrist. | • <u>Argument</u><br>◦ Maintenance of Function<br>◦ Custodial/ Improvement<br>• <u>Testimony</u><br>◦ <u>Fishman</u>: Tr. 274:5-275:25, 276:6-277:16<br>◦ <u>Plakun</u>: Tr. 509:25-510:8, 557:5-558:7, 562:11-564:4 | • Dr. Fishman's and Dr. Plakun's testimony does not directly address this criterion.<br>• [*See* IX "August 2010 Custodial Care Coverage Determination Guideline, 4th black bullet" (pg. 201–203).<br>◦ This language is similar to language found in the August 2010 Custodial Care CDG. |
| 6th black bullet and sub | "Active Treatment" in this context is indicated by services that are all of the | • <u>Argument</u><br>◦ Maintenance of Function | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 5th black bullet" (pg. 203–207).<br>◦ This language is similar to language found in the |

**X. December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| bullets | following:<br>• Supervised and evaluated by a physician<br>• Provided under an individualized treatment or diagnostic plan;<br>• Reasonably expected to improve the patient's condition or for the purpose of diagnosis and<br>• Unable to be provided in a less restrictive setting<br>• Focused on interventions that are based on generally accepted standard medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the patient's condition to the extent that they can be safely treated in a lower level of care. | o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 276:6-22, 277:6-7<br>o <u>Plakun</u>: Tr. 557:5-558:7, 562:11-564:4¸ 565:5-566:16<br>o <u>Martorana</u>: Tr. 1131:3-9, 1131:13-1132:6 | August 2010 Custodial Care CDG. (**Trial Tr. 1092:19–1093:1 (Martorana)**.) |
| 7th black bullet | Improvement of the patient's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment in an | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement | • Dr. Fishman's testimony does not address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 6th black bullet" (pg. 207–208).<br>o This language is similar to language found in the August 2010 Custodial Care CDG. (**Trial Tr. 1093:2–8 (Martorana)**.) |

**X. December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | acute or Residential Treatment Center. | • Testimony<br>○ Fishman: Tr. 276:6-277:5, 277:8-16<br>○ Plakun: 563:16-566:16, 565:21-22, 566:5-16<br>○ Martorana: Tr. 1093:5-8 | |
| 8th black bullet | "Improvement" in this context is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued. | • Argument<br>○ Acuity<br>○ Maintenance of Function<br>○ Custodial/ Improvement<br>○ Drive Toward Lower Levels of Care<br>• Testimony<br>○ Fishman: Tr. 274:5-275:25, 276:6-277:16<br>○ Plakun: Tr. 563:16-566:16<br>○ Martorana: Tr. 1093:5-8 | • Dr. Plakun's and Dr. Fishman's testimony does not address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 7th black bullet" (pg. 208–210).<br>○ This language is similar to language found in the August 2010 Custodial Care CDG. (**Trial Tr. 1093:2–8 (Martorana)**.) |
| 9th black bullet | United Behavioral Health maintains that inpatient or residential treatment should | • Argument<br>○ Drive Toward Lower Levels of | • Dr. Fishman's and Dr. Plakun's testimony does not address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage |

**X. December 2011 Custodial Care Coverage Determination Guideline (Ex. 47-0003 to -0004)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less restrictive setting. | Care<br>• Testimony<br>  ○ Fishman: Tr. 213:06-214:04<br>  ○ Plakun: Tr. 511:25-512:6 | Determination Guideline, 1st black bullet" (pg. 198–199).<br>  ○ This language is similar to language found in the August 2010 Custodial Care CDG. |

**XI.** January 2013 Custodial Care Coverage Determination Guideline (Ex. 84-0003)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet | **Custodial Care** in a psychiatric inpatient or residential setting is the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's behavioral health condition is not changing, or does not require trained clinical personnel to safely deliver services (Certificate of Coverage (COC), 2011). | • Argument<br>  o Maintenance of Function<br>  o Custodial/ Improvement<br>• Testimony<br>  o Fishman: Tr. 278:1-278:6<br>  o Plakun: Tr. 509:25-510:8, 557:5-558:23 | • Dr. Plakun's testimony does not address this criterion.<br>• *See* X "December 2011 Custodial Care Coverage Determination Guideline, 2nd black bullet" (pg. 211–212).<br>  o This language is similar to language found in the December 2011 Custodial Care CDG. |
| 2nd black bullet and sub-bullets | "Custodial Care" in this context is characterized by the following:<br>• The presenting signs and symptoms of the patient have been stabilized, resolved, or a baseline level of functioning has been achieved;<br>• The patient is not responding to treatment or otherwise not improving;<br>• The intensity of active treatment provided in an inpatient or residential treatment setting is no longer required or services can be safely provided in a less intensive setting. | • Argument<br>  o Maintenance of Function<br>  o Custodial/ Improvement<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Fishman: Tr. 120:12-123:06<br>  o Plakun: Tr. 509:25-510:8, 557:5-558:23, 560:16-563:23 | • Dr. Fishman's and Dr. Plakun's testimony does not directly address this criterion.<br>• *See* X "December 2011 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. 212–214).<br>  o This language is similar to language found in the December 2011 Custodial Care CDG. (**Trial Tr. 1094:2–7 (Martorana)**.) |

**XI. January 2013 Custodial Care Coverage Determination Guideline (Ex. 84-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 3rd black bullet | Examples of Custodial Care include respite services, daily living skills instruction, days awaiting placement, activities that are social and recreational in nature, or solely to prevent runaway/truancy or legal problems (Centers for Medicare and Medicaid Services, Benefit Manual, (CMS), 2010). | • Argument<br>  ○ Maintenance of Function<br>  ○ Custodial/ Improvement<br>• Testimony<br>  ○ Fishman: Tr. 278:1-278:6<br>  ○ Plakun: Tr. 560:16-563:23 | • Dr. Fishman's and Dr. Plakun's testimony does not directly address this criterion.<br>• *See* X "December 2011 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. 212–214).<br>  ○ This language is similar to language found in the December 2011 Custodial Care CDG. (**Trial Tr. 1094:8-14 (Martorana)**.) |
| 4th black bullet | The provision of Custodial Care by trained behavioral health personnel, such as a psychiatrist or licensed clinician, does not cause the services to be classified as skilled services. If the nature of the services can be safely and effectively performed by a non-trained person, the services will be considered Custodial Care. | • Argument<br>  ○ Maintenance of Function<br>  ○ Custodial/ Improvement<br>• Testimony<br>  ○ Fishman: Tr. 278:1-278:6<br>  ○ Plakun: Tr. 560:16-563:23 | • Dr. Plakun's testimony concerns the March 2015 Custodial Care Coverage Determination Guidelines.<br>• Dr. Fishman's testimony does not directly address this criterion.<br>• *See* X "December 2011 Custodial Care Coverage Determination Guideline, 4th black bullet" (pg. 214–215).<br>  ○ This language is similar to language found in the December 2011 Custodial Care. |
| 5th black bullet | **Active treatment** in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of patients that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare, under the direction of a psychiatrist. | • Argument<br>  ○ Maintenance of Function<br>  ○ Custodial/ Improvement<br>• Testimony<br>  ○ Fishman: Tr. 278:1-278:6<br>  ○ Plakun: Tr. 562:2-563:18 | • Dr. Plakun's testimony concerns the March 2015 Custodial Care Coverage Determination Guidelines.<br>• Dr. Fishman's testimony does not directly address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 4th black bullet" (pg. 201–203).<br>  ○ This language is similar to language found in the August 2010 Custodial Care CDG. |

**XI. January 2013 Custodial Care Coverage Determination Guideline (Ex. 84-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 6th black bullet and sub bullets | "Active Treatment" in this context is indicated by services that are <u>all</u> of the following (CMS, 2010):<br>• Supervised and evaluated by a physician;<br>• Provided under an individualized treatment or diagnostic plan;<br>• Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>• Unable to be provided in a less restrictive setting; and<br>• Focused on interventions that are based on generally accepted standard medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's condition to the extent that they can be safely treated in a lower level of care. | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 278:1-278:6<br>o <u>Plakun</u>: Tr. 562:11-564:4, 565:5-13, 566:17-23 | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 5th black bullet" (pg. 203–207).<br>o This language is similar to language found in the August 2010 Custodial Care CDG. |
| 7th black bullet | **Improvement** of the patient's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment in an acute or Residential | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 6th black bullet" (pg. 207–208).<br>o This language is similar to language found in the August 2010 Custodial Care CDG. (**Trial Tr. 1094:19–22 (Martorana)**.) |

**XI. January 2013 Custodial Care Coverage Determination Guideline (Ex. 84-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | Treatment Center. | • Testimony<br>o Fishman: Tr. 276:6-277:5, 277:8-16<br>o Plakun: 563:16-566:16, 565:21-22, 566:5-16 | |
| 8th black bullet | "Improvement" in this context is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued. | • Argument<br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 278:1-278:6<br>o Plakun: Tr. 563:16-566:16<br>o Martorana: Tr. 1093:5-8 | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 7th black bullet" (pg. 208–210).<br>o This language is similar to language found in the August 2010 Custodial Care CDG. (**Trial Tr. 1094:19–22 (Martorana)**.) |
| 9th black bullet | Optum maintains that inpatient or residential treatment should be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less | • Argument<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 213:06-214:0 | • Dr. Fishman's and Dr. Plakun's testimony does not address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 1st black bullet" (pg. 198–199).<br>o This language is similar to language found in the August 2010 Custodial Care CDG. |

**XI. January 2013 Custodial Care Coverage Determination Guideline (Ex. 84-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | restrictive setting. | ○ Plakun: Tr. 511:25-512:6 | |

**XII.** February 2014 Custodial Care Coverage Determination Guideline (Ex. 108-0003)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet | *Custodial Care* in a psychiatric inpatient or residential setting is the implementation of clinical or non-clinical services that do not seek to cure, or which are provided during periods when the member's behavioral health condition is not changing, or does not require trained clinical personnel to safely deliver services (Certificate of Coverage (COC), 2001, 2007, 2009, 2011). | • Argument<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• Testimony<br>o Fishman: Tr. 278:7-279:3<br>o Plakun: Tr. 509:25-510:8, 557:5-558:23 | • Dr. Plakun's testimony consists of generalized comments not directed at this criterion.<br>• *See* X "December 2011 Custodial Care Coverage Determination Guideline, 2nd black bullet" (pg. 211–212).<br>o This language is similar to language found in the December 2011 Custodial Care CDG. |
| 2nd black bullet and sub-bullets | "*Custodial Care*" in this context is characterized by the following (COC, 2001, 2007, 2009, 2011):<br>• The presenting signs and symptoms of the member have been stabilized, resolved, or a baseline level of functioning has been achieved; or<br>• The member is not responding to treatment or otherwise not improving; or<br>• The intensity of active treatment provided in an inpatient or residential | • Argument<br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 120:12-123:06, 278:7-20, 278:7-279:3<br>o Plakun: Tr. 560:16-563:23 | • *See* X "December 2011 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. 212–214).<br>o This language is similar to language found in the December 2011 Custodial Care CDG. (**Trial Tr. 1095:13–19 (Martorana)**.) |

**XII. February 2014 Custodial Care Coverage Determination Guideline (Ex. 108-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | treatment setting is no longer required or services can be safely provided in a less intensive setting. | | |
| 3rd black bullet | Examples of Custodial Care include respite services, daily living skills instruction, days awaiting placement, activities that are social and recreational in nature, or solely to prevent runaway/truancy or legal problems (Centers for Medicare and Medicaid Services, Benefit Manual, (CMS), 2013). | • Argument<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• Testimony<br>o Fishman: Tr. 278:7-9, 278:21-22<br>o Plakun: Tr. 560:16-563:23 | • *See* X "December 2011 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. 212–214).<br>o This language is similar to language found in the December 2011 Custodial Care CDG. |
| 4th black bullet | The provision of Custodial Care by trained behavioral health personnel, such as a psychiatrist or licensed clinician, does not cause the services to be classified as skilled services. If the nature of the services can be safely and effectively performed by a nontrained person, the services will be considered Custodial Care. | • Argument<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• Testimony<br>o Fishman: Tr. 278:7-279:3<br>o Plakun: Tr. 560:16-563:23 | • *See* X "December 2011 Custodial Care Coverage Determination Guideline, 4th black bullet" (pg. 214–215).<br>o This language is similar to language found in the December 2011 Custodial Care. |
| 5th black bullet | *Active Treatment* in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of members that | • Argument<br>o Maintenance of Function<br>o Custodial/ | • *See* X "December 2011 Custodial Care Coverage Determination Guideline, 5th black bullet" (pg. 215).<br>o This language is similar to language found in the December 2011 Custodial Care. |

**XII. February 2014 Custodial Care Coverage Determination Guideline (Ex. 108-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare under the direction of a psychiatrist (CMS, 2013). | Improvement<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 278:7-279:3<br>o <u>Plakun</u>: Tr. 562:11-564:4 | |
| 6th black bullet and sub-bullets | "*Active Treatment*" in this context is indicated by services that are <u>all</u> of the following (CMS, 2013):<br>• Supervised and evaluated by a physician;<br>• Provided under an individualized treatment or diagnostic plan;<br>• Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>• Unable to be provided in a less restrictive setting; and<br>• Focused on interventions that are based on generally accepted standard medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 278:7-9, 278:23-24<br>o <u>Plakun</u>: Tr. 562:11-564:4 | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 5th black bullet" (pg. 203–207).<br>o This language is similar to language found in the August 2010 Custodial Care CDG. (**Trial Tr. 1095:23–25 (Martorana)**.) |

**XII. February 2014 Custodial Care Coverage Determination Guideline (Ex. 108-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | condition to the extent that they can be safely treated in a lower level of care. | | |
| 7th black bullet | *Improvement* of the member's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment (CMS, 2013). | • Argument<br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>• Testimony<br>o Fishman: Tr. 278:7-9, 278:25-279:3<br>o Plakun: Tr. 563:16-566:16 | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 6th black bullet" (pg. 207–208).<br>o This language is similar to language found in the August 2010 Custodial Care CDG. (**Trial Tr. 1096:1–3 (Martorana)**.) |
| 8th black bullet | *"Improvement"* in this context is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued (CMS, 2013). | • Argument<br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 278:7-279:3<br>o Plakun: Tr. 563:16-566:16 | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 7th black bullet" (pg. 208–210).<br>o This language is similar to language found in the August 2010 Custodial Care CDG. (**Trial Tr. 1096:1–3 (Martorana)**.) |
| 9th black bullet | Optum maintains that inpatient or residential treatment should | • Argument<br>o Drive Toward | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 1st black bullet" (pg. 198– |

**XII. February 2014 Custodial Care Coverage Determination Guideline (Ex. 108-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less restrictive setting. | Lower Levels of Care<br>• Testimony<br>o Fishman: Tr. 213:06-214:04<br>o Plakun: Tr. 511:25-512:6 | 199).<br>o This language is similar to language found in the August 2010 Custodial Care CDG. |

**XIII.** March 2015 Custodial Care Coverage Determination Guideline (Ex. 148-0003)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet | **Services provided in psychiatric inpatient and residential treatment settings that are not active and are solely for the purpose of Custodial Care as defined below are excluded.** | • Argument<br>  o Custodial/ Improvement<br>• Testimony<br>  o Fishman: Tr. 120:12-121:13, 120:12-123:06<br>  o Plakun: Tr. 560:16-563:23<br>  o Niewenhous: Tr. 369:1-371:3 | • Dr. Plakun testified that this criterion is "totally consistent with generally accepted standards of care."<br>  o (**Trial Tr. 560:8–15 (Plakun)**.) |
| 2nd black bullet and sub-bullets | Custodial Care in a psychiatric inpatient or residential setting is any of the following (Certificate of Coverage (2011):<br>• Non-health-related services, such as assistance in activities of daily living (examples include feeding, dressing, bathing, transferring and ambulating).<br>• Health-related services that are provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence.<br>• Services that do not require continued | • Argument<br>  o Maintenance of Function<br>  o Custodial/ Improvement<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Fishman: Tr. 120:12-121:13, 120:12-123:06<br>  o Plakun: Tr. 560:16-563:23<br>  o Niewenhous: Tr. 369:1-371:3 | • *See* X "December 2011 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. 212–214).<br>  o This language is similar to the definition of "Custodial Care" found in the December 2011 Custodial Care CDG<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 3rd black bullet" (pg. 200–201).<br>  o Every class member's plan excludes "custodial care" and the Custodial Care CDGs are intended to interpret plan exclusions. (**Trial Ex. 1654**; **Trial Ex. 1654; Trial Tr. 455:24–456:19 (Niewenhous)**; **Trial Tr. 895:20–897:6 (Dehlin)**.)<br>  o Plan definitions of "custodial care" |

**XIII. March 2015 Custodial Care Coverage Determination Guideline (Ex. 148-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | administration by trained medical personnel in order to be delivered safely and effectively. | | prevail over the Custodial Care CDGs in the event of a disagreement. (**Trial Exs. 10-0002; 47-0002; 84-0002; 108-0002; 148-0002; 195-0002; 221-0002**.)<br>○ Active treatment is the inverse of custodial care. (**Trial Tr. 1079:23–1080:9 (Martorana)**.)<br>• Dr. Plakun testified that the portion of this criterion discussing non-health-related services is "fully consistent with what the Medicare manual says." (**Trial Tr. 560:16–19 (Plakun)**.)<br>• **[Regarding the 2015 Level of Care Guidelines]**<br>○ This revised language in the 2015 Custodial Care CDG was drawn directly from UBH health plans in effect in 2015. (**Trial Tr. 1620:11–1621:2 (Alam)** (discussing identical language in the 2015 LOCGs).) |
| 3rd black bullet and sub-bullets | Active Treatment in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of members that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare under the direction of a psychiatrist (CMS Psychiatric Inpatient Local Coverage Determinations, 2014).<br>• Active Treatment is indicated by services that are <u>all</u> of the following (CMS Benefit Policy Manual, Chapter 2, 30.2.2.1, 2014):<br>○ Supervised and evaluated by a | • <u>Argument</u><br>○ Maintenance of Function<br>○ Drive Toward Lower Levels of Care<br>○ Custodial/ Improvement<br>• <u>Testimony</u><br>○ <u>Fishman</u>: Tr. 121:18- | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 5th black bullet" (pg. 203–207).<br>○ This language is similar to language found in the August 2010 Custodial Care CDG. (**Trial Tr. 1097:6–10 (Martorana)**.) |

**XIII. March 2015 Custodial Care Coverage Determination Guideline (Ex. 148-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | physician;<br>o Provided under an individualized treatment or diagnostic plan;<br>o Reasonably expected to improve the member's condition or for the purpose of diagnosis;<br>o Unable to be provided in a less restrictive setting; and<br>o Focused on interventions that are based on generally accepted standard medical practice and are known to address the critical presenting problem(s), psychosocial issues and stabilize the member's condition to the extent that they can be safely treated in a lower level of care. | 122:07, 122:19-123:6<br>o <u>Plakun</u>: Tr. 562:11-564:4, 562:11-564:4 | |
| 4th black bullet and sub-bullet | Improvement of the member's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment (CMS Psychiatric Inpatient Local Coverage Determinations, 2014).<br>• Improvement is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued (CMS Psychiatric Inpatient Local Coverage Determinations, 2014). | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 123:16-23<br>o <u>Plakun</u>: Tr. 563:16-23, 564:5- | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, "6th black bullet" and "7th black bullet" (pg. 207–210).<br>o This language is similar to language found in the August 2010 (**Trial Tr. 1097:11–14 (Martorana)**.) |

**XIII. March 2015 Custodial Care Coverage Determination Guideline (Ex. 148-0003)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | | 15 | |
| 5th black bullet | Optum maintains that inpatient or residential treatment should be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less restrictive setting. | • Argument<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Fishman: Tr. 213:06-214:04<br>  ○ Plakun: Tr. 511:25-512:6 | • Dr. Fishman and Dr. Plakun's testimony is generalized comments not directed at this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 1st black bullet" (pg. 198–199).<br>  ○ This language is similar to language found in the August 2010 Custodial Care CDG. |

**XIV.** April 2016 Custodial Care Coverage Determination Guideline (Ex. 195)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st black bullet | **Services provided in psychiatric inpatient and residential treatment settings that are not active and are solely for the purpose of Custodial Care as defined below are excluded.** | • Argument<br>  o Custodial/ Improvement<br>• Testimony<br>  o Fishman: Tr. 120:12-123:06¸ 279:04-14<br>  o Plakun: Tr. 509:25-510:8, 557:5-558:23, 560:16-563:23 | • *See* XIII "March 2015 Custodial Care Coverage Determination Guideline, 1st black bullet" (pg. 229).<br>  o This language is similar to language found in the March 2015 Custodial Care CDG. |
| 2nd black bullet & sub-bullets | Custodial Care in a psychiatric inpatient or residential setting is any of the following (Certificate of Coverage (2011):<br>• Non-health-related services, such as assistance in activities of daily living (examples include feeding, dressing, bathing, transferring and ambulating).<br>• Health-related services that are provided for the primary purpose of meeting the personal needs of the patient or maintaining a level of function (even if the specific services | • Argument<br>  o Maintenance of Function<br>  o Custodial/ Improvement<br>  o Drive Toward Lower Levels of Care<br>• Testimony<br>  o Fishman: Tr. 120:12-123:06¸ 279:04-14<br>  o Plakun: Tr. 509:25-510:8, 557:5-558:23, 560:16-563:23 | • *See* XIII "March 2015 Custodial Care Coverage Determination Guideline, 2nd black bullet" (pg. 229–230).<br>  o This language is similar to language found in the March 2015 Custodial Care CDG. |

**XIV. April 2016 Custodial Care Coverage Determination Guideline (Ex. 195)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence.<br>• Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | | |
| 3rd black bullet & sub-bullets | Active Treatment in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of members that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare under the direction of a psychiatrist that cannot be managed in a less restrictive setting (CMS Psychiatric Inpatient Local Coverage Determinations, 2016)<br>• Active Treatment is indicated by services that are <u>all</u> of the following (CMS Benefit Policy Manual, Chapter 2, 30.2.2.1, Retrieved March, 2016):<br>  o Supervised and evaluated by a | • <u>Argument</u><br>  o Maintenance of Function<br>  o Custodial/ Improvement<br>  o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>  o <u>Fishman</u>: Tr. 279:04-06; 279:15-19<br>  o <u>Plakun</u>: Tr. 562:11-564:4 | • *See* I.A.1 "2011 Common Criteria, Admission Criteria, ¶ 5" (pg. 6–8).<br>  o "Current condition" encompasses all symptoms the member brings to treatment, not only crisis conditions. (**Trial Tr. 1031:3–8** (**Martorana**).)<br>  o This criterion requires a higher level of care if a lower level would not be *safe* or *effective*. (**Trial Tr. 1031:21–1032:3** (**Martorana**).)<br>  o The principle of treatment in the least restrictive, safe, and effective setting is supported by the American Psychiatric Association and other external sources. (**Trial Tr. 968:25-971:23** (**Martorana**); **Trial Ex. 634-0022** (APA Practice Guideline for the Treatment of Patients With Substance Use Disorders); **Trial Ex. 639-0016** (APA Practice Guideline for the Treatment of Patients With Major Depressive Disorder).)<br>• *See* X "December 2011 Custodial Care Coverage Determination Guideline, 5th black bullet" (pg. 215).<br>  o The first portion of the definition of active |

**XIV. April 2016 Custodial Care Coverage Determination Guideline (Ex. 195)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | physician;<br>o Provided under an individualized treatment or diagnostic plan; and<br>o Reasonably expected to improve the member's condition or for the purpose of diagnosis. | | treatment is virtually identical to language found in the December 2011 Custodial Care CDG, but has added the concept of a least restrictive level of care.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 5th black bullet" (pg. 203–207).<br>o The first three bullet points in this definition of "active treatment" are virtually identical to the first three bullet points found in the definition of "active treatment" in the August 2010 Custodial Care CDG.<br>• This language is from Chapter 2 of the Medicare Benefit Policy Manual.<br>o (**Trial Tr. 1098:13-1099:19 (Martorana)**.)<br>• The additional two bullets from previous definitions of "active treatment" were removed to more closely align with the Medicare Benefit Policy Manual.<br>o (**Trial Tr. 1098:13–1100:1 (Martorana)**.) |
| 4th black bullet & sub-bullets | Improvement of the member's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment (CMS Psychiatric Inpatient Local Coverage Determinations, 2016)<br>• Improvement is measured by weighing the effectiveness of treatment and the risk that the | • <u>Argument</u><br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. | • Dr. Plakun's testimony concerns the March 2015 Custodial Care Coverage Determination Guideline.<br>• *See* XIII "March 2015 Custodial Care Coverage Determination Guideline, 4th black bullet" (pg. 231–232).<br>o This language is similar to language found in the March 2015 Custodial Care CDG. |

**XIV. April 2016 Custodial Care Coverage Determination Guideline (Ex. 195)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | members condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued (CMS Psychiatric Inpatient Local Coverage Determinations, 2016) | 279:04-06; 279:20-22<br>o <u>Plakun</u>: Tr. 563:16-566:16 | |
| 5th black bullet | Optum maintains that inpatient or residential treatment should be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less restrictive setting (Certificate of Coverage, 2011). | • <u>Argument</u><br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 213:06-214:04<br>o <u>Plakun</u>: Tr. 511:25-512:6 | • *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 1st black bullet" (pg. 198–199).<br>o This language is similar to language found in the August 2010 Custodial Care CDG. |

**XV.** March 2017 Custodial Care Coverage Determination Guideline (Ex. 221)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| 1st ¶ | Services provided in psychiatric inpatient and residential treatment settings that are not active and are solely for the purpose of Custodial Care as defined below are excluded. | • Argument<br>  ○ Custodial/ Improvement<br>• Testimony<br>  ○ Fishman: Tr. 120:12-123:06, 279:24-280:12, 279:24-280:04; 280:13-18<br>  ○ Plakun: Tr. 509:25-510:8, 557:5-558:23, 560:16-563:23. | • Dr. Plakun's testimony does not directly address this criterion.<br>• *See* XIII "March 2015 Custodial Care Coverage Determination Guideline, 1st black bullet" (pg. 229).<br>  ○ This language is similar to language found in the March 2015 Custodial Care CDG. |
| 2nd ¶ | Custodial Care in a psychiatric inpatient or residential setting is any of the following (Certificate of Coverage, 2011):<br>• Non-health-related services, such as assistance in activities of daily living (examples include feeding, dressing, bathing, transferring, and ambulating).<br>• Health-related services that are provided for the primary purpose of | • Argument<br>  ○ Maintenance of Function<br>  ○ Custodial/ Improvement<br>  ○ Drive Toward Lower Levels of Care<br>• Testimony<br>  ○ Fishman: Tr. 120:12-123:06, 279:24-280:12, 279:24-280:04; 280:13-18<br>  ○ Plakun: Tr. 509:25- | • *See* XIII "March 2015 Custodial Care Coverage Determination Guideline, 2nd black bullet" (pg. 229–230).<br>  ○ This language is similar to language found in the March 2015 Custodial Care CDG.<br>• This language comes from the generic Certificate of Coverage for 2011. Plans are free to define custodial care in any manner they see fit.<br>  ○ (**Trial Tr. 1078:11–1079:2, 1080:10–18 (Martorana)**.) |

XV. March 2017 Custodial Care Coverage Determination Guideline (Ex. 221)

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | meeting the personal needs of the patient or maintaining a level of function (even if the specific services are considered to be skilled services), as opposed to improving that function to an extent that might allow for a more independent existence.<br>• Services that do not require continued administration by trained medical personnel in order to be delivered safely and effectively. | 510:8, 557:5-558:23, 560:16-563:23 | |
| 3rd ¶ | Active Treatment in an inpatient or residential treatment setting is a clinical process involving the 24-hour care of members that includes assessment, diagnosis, intervention, evaluation of care, treatment and planning for discharge and aftercare under the direction of a psychiatrist that cannot be managed in a less restrictive setting (CMS | • <u>Argument</u><br>o Maintenance of Function<br>o Custodial/ Improvement<br>o Drive Toward Lower Levels of Care<br>• <u>Testimony</u><br>o <u>Fishman</u>: Tr. 279:24-280:04, 280:13-18, 279:24- | • *See* XIV "April 2016 Custodial Care Coverage Determination Guideline, 3rd black bullet and sub-bullets" (pg. 234–235).<br>o This language is similar to language found in the April 2016 Custodial Care CDG.<br>• This language is taken from the Medicare Benefit Policy Manual.<br>o (**Trial Tr. 1080:19–1082:14** (**Martorana**).)<br>o (**Trial Ex. 1502-006 (Local Coverage Determination (LCD): Psychiatric Inpatient Hospitalization**) ("For services in an IPF (Inpatient Psychiatric Facility) to be designated as 'active treatment,' they must be: provided under an individualized treatment or |

**XV. March 2017 Custodial Care Coverage Determination Guideline (Ex. 221)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | Psychiatric Inpatient Local Coverage Determinations, 2016).<br>• Active Treatment is indicated by services that are all of the following (CMS Benefit Policy Manual, Chapter 2, 30.2.2.1):<br>o Supervised and evaluated by a physician;<br>o Provided under an individualized treatment or diagnostic plan; and<br>o Reasonably expected to improve the member's condition or for the purpose of diagnosis. | 280:04; 280:19-25<br>o Plakun: Tr. 562:11-564:4 | diagnostic plan; reasonably expected to improve the patient's condition or for the purpose of diagnosis; and supervised and evaluated by a physician.").)<br>o (**Trial Ex. 655-0007 (Medicare Benefit Policy Manual Chapter 2–Inpatient Psychiatric Hospital Services)** ("For services in an IPF to be designated as active treatment, they must be: Provided under an individualized treatment or diagnostic plan; Reasonably expected to improve the patient's condition or for the purpose of diagnosis; and Supervised and evaluated by a physician.").) |
| 4th ¶ | Improvement of the member's condition is indicated by the reduction or control of the acute symptoms that necessitated hospitalization or residential treatment (CMS Psychiatric | • Argument<br>o Acuity<br>o Maintenance of Function<br>o Custodial/ Improvement | • *See* XIII "March 2015 Custodial Care Coverage Determination Guideline, 4th black bullet" (pg. 231–232).<br>o This language is similar to language found in the March 2015 Custodial Care CDG. |

**XV. March 2017 Custodial Care Coverage Determination Guideline (Ex. 221)**

| ¶ | Criterion | Plaintiffs' Position and Cited Testimony | Response to Plaintiffs' Cited Testimony & Evidence That Criterion Is Consistent With Generally Accepted Standards of Care |
|---|---|---|---|
| | Inpatient Local Coverage Determinations, 2016).<br>• Improvement is measured by weighing the effectiveness of treatment and the risk that the member's condition would deteriorate or relapse if inpatient or residential treatment were to be discontinued (CMS Psychiatric Inpatient Local Coverage Determinations, 2016). | ○ Drive Toward Lower Levels of Care<br>• Testimony<br>○ Fishman: Tr. 279:24-280:04; 281:01-06<br>○ Plakun: Tr. 563:16-566:16 | |
| 5th ¶ | Optum maintains that inpatient or residential treatment should be consistent with nationally recognized scientific evidence as available, prevailing medical standards and clinical guidelines and cannot be provided in a less restrictive setting (Certificate of Coverage, 2011). | • Argument<br>○ Drive Toward Lower Levels of Care<br>• Testimony<br>○ Fishman: Tr. 213:06-214:04<br>○ Plakun: Tr. 511:25-512:6 | • Dr. Fishman's and Dr. Plakun's testimony does not address this criterion.<br>• *See* IX "August 2010 Custodial Care Coverage Determination Guideline, 1st black bullet" (pg. 198–199).<br>○ This language is similar to language found in the August 2010 Custodial Care CDG. |