PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs*

UNITED STATED DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br>Action Filed: May 21, 2014<br><br>**PLAINTIFFS' CONSOLIDATED (1) RESPONSE TO DEFENDANT'S OBJECTION TO ADMITTED TRIAL EVIDENCE CITED IN PLAINTIFFS' POST-TRIAL REPLY BRIEF AND (2) OPPOSITION TO DEFENDANT'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A POST-TRIAL SUR-REPLY BRIEF** |
| GARY ALEXANDER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>Defendant. | Case No. 3:14-CV-05337-JCS<br>Action Filed: December 4, 2014<br><br>Judge: Hon. Joseph C. Spero<br>Courtroom: G |

Defendant UBH has filed what it captioned Objections to Plaintiffs' Reply Evidence ("Objections") (*Wit* ECF No. 406), and an Administrative Motion For Leave To File A Post-Trial Sur-Reply Brief ("Sur-Reply Motion") (*Wit* ECF No. 407) and a proposed brief ("Def.'s Surreply") (*Wit* ECF No. 407-2), all ostensibly in response to Plaintiffs' references in their post-trial reply brief to: (1) a data field in Trial Exhibit 255, (2) a chart compiling page citations to the benefit plan exhibits, and (3) dictionary definitions of words in UBH's Guidelines that, in its post-trial brief, UBH contended meant something other than their plain meaning. UBH's filings are procedurally improper and meritless, and should be overruled and/or denied.

**I. UBH's Objections and Sur-Reply Motion Are Procedurally Improper.**

UBH's Objections. UBH cites no Rule of Civil Procedure or Local Rule in its Objections. And for good reason: there is none authorizing them. Local Rule 7-3(d)(1) applies only to evidence cited in a reply in support of a motion, not a post-trial brief. Moreover, UBH does not argue in its Objections that any of the evidence it complains about is irrelevant or otherwise inadmissible – and even if UBH had any such objections to the trial exhibits Plaintiffs cited, it waived them by not asserting them at trial. Nor does UBH argue that any of Plaintiffs' references are inaccurate, *e.g.*, that their description of the claims data or their citations to the benefit plans are in error. So UBH's "objections" are not even evidentiary objections at all. In reality, the filing is no more than a disguised sur-reply, filed without leave of court, and should be rejected for that reason as well. *See, e.g.*, *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 261 (N.D. Cal. 2016) (striking unauthorized surreply party filed "under the guise of 'objections").

UBH's Sur-Reply Motion. There also is no rule in this District authorizing the filing of sur-reply briefs. Courts generally bar sur-reply briefs absent "exceptional or extraordinary circumstances." *Old Republic Ins. Co. v. City Plan Dev.*, Inc., 2018 WL 283250, at *3 (D. Nev. Jan. 3, 2018). *See also Buffin v. City & Cty. of San Francisco,* 2016 WL 2606865, at *1 (N.D. Cal. May 6, 2016) ("Surreplies are disfavored and the Court routinely rejects them.").

UBH has not even attempted to make such a showing. While UBH claims that Plaintiffs' Reply injected brand new evidence into the case, Def.'s Surreply at 1:1-10, the supposedly "new" evidence consists of exhibits admitted without objection at trial and excerpts from

dictionaries – reference materials that are not "evidence" at all.[1] Moreover, Plaintiffs cited those materials to refute arguments asserted by UBH. Particularly where Plaintiffs did not introduce any new, unanticipated issues, UBH is not entitled to seize the last word through a surreply. *See, e.g., Old Republic Ins. Co.*, 2018 WL 283250, at *3 (D. Nev. Jan. 3, 2018) ("[T]he '[f]iling of surreplies is highly disfavored, as it typically constitutes a party's improper attempt to have the last word on an issue. . .'") (citations omitted).

**II. UBH's Objections/Arguments Are Meritless.**

UBH's objections and sur-reply arguments, if considered, also fail on their merits.

**A. Texas Class Members Identified on Trial Exhibit 255**

UBH violated Texas law and thereby ERISA by applying its Guidelines to class members whose plans were governed by Texas law and who sought treatment in Texas. *See* Pls.' Br. at 79:25-80:3 & 82:4-8. Those class members were entitled to have their requests for coverage adjudicated under the criteria promulgated by the Texas Department of Insurance ("TDI"), as even UBH concedes. In its post-trial brief, UBH asserted that the "only evidence" that it applied its Guidelines when it should have used the TDI criteria was a "single email" (Exhibit 493), and further asserted that "UBH clinicians have been using TDI Criteria continuously since as early as 2002." UBH Br. at 104:9-10, 105:2-3. Exhibit 493 certainly does put the lie to UBH's claim, as Mr. Niewenhous admitted that UBH's personnel in Houston were "using the CDGs" rather than "the [Texas Commission on Alcohol and Drug Abuse] guidelines." Ex. 493-0002. But it was not the "only evidence" in the trial record. UBH's own data, contained in the agreed-upon Trial Exhibit 255, showed that UBH did apply its Guidelines to claims governed by Texas law. And the pertinent denial letter from the claim sample (Ex. 1293), cited by UBH, also confirms that rather than applying only the TDI criteria, UBH was also applying its own Guidelines.[2]

---

[1] UBH's proposed surreply, moreover, includes arguments that do not even purport to relate to any brand-new evidence. *See, e.g.* Def.'s Surreply at 6 nn. 5, 6. Those arguments are entirely improper and should be ignored.

[2] UBH also urges the Court to ignore the evidence because the "facility name" data field was not cited in Plaintiffs' proposed findings of fact or opening post-trial brief. Objections at 1:16-2:8. But Plaintiffs' proposed findings did include all findings of fact facts necessary for the Court to

UBH asks the Court to ignore that trial evidence because it was not "discussed at trial" with a "sponsoring witness." Objections at 1:10-12. But Exhibit 255 was admitted at trial not only without objection (Tr. 824:12-25), but through a stipulation of the parties (Ex. 896), and the parties *did* present testimony on it, including Francis Bridge's testimony on the meaning of the data fields, including the criteria Plaintiffs identify as relevant to determining which class members had Texas-governed plans and where they sought treatment. *See, e.g.*, Tr. 1474:12-1482:25. Although Ms. Bridge testified that the "facility name" field does not necessarily "indicate where the facility is located," Tr. 1481:9-11, often the facility's name itself makes clear it is located in Texas. *See* Pls.' Reply at 77:24-25 & n.82. And although UBH discounts the relevance of the Guideline data field as being the result of "drop-down menus that only allow the user to select a UBH guideline," Def.'s Surreply at 4:6-7, it does not claim that its claims data is inaccurate or that the field *falsely* reflects that the UBH Guideline was used. UBH concedes that it *did* apply its own Guidelines rather than relying exclusively on the TDI criteria, a point confirmed by the only other evidence UBH cites: the claims sample denial letter, Ex. 1293.

Finally, UBH argues that Exhibit 255 also includes, as part of the State Mandate class, members whose plans were governed by Texas law but who sought treatment outside of Texas. Def.'s Surreply at 2:22-25 (n.1). (That is, UBH contends Exhibit 255 mistakenly categorizes some members of the *Wit* Guideline Class as members of the *Wit* State Mandate Class.) But that argument is not relevant to UBH's liability. The *liability* question is whether UBH violated ERISA by developing and using its Guidelines to deny coverage to the State Mandate Class members. A preponderance of the evidence shows that it did so, including with respect to class members with Texas plans who sought treatment in Texas. The fact that the class list might miscategorize some *other* class members has no bearing on whether Plaintiffs proved their claim.

Nor do the alleged errors in the Class List categorizations suggest that the Court's order on *remedy* would apply to anyone outside the Class. Plaintiffs will seek a remedy for the State Mandate Class as defined in the Court's class certification order (as amended) – which makes no

---

order liability as to the Texas portion of the State Mandate class. *See* Plaintiffs' Post-Trial Proposed Findings of Fact (ECF No. 393) at ¶¶ 616-620.

reference at all to UBH's claims data or to Exhibit 255, but instead defines the class substantively, in relevant part, to include members whose plans are governed by Texas law who sought treatment in Texas.[3] *See, e.g.*, *Wit* ECF No. 281 at 1:10-12.

**B. Page Citations Listed on Exhibit A to Plaintiffs' Reply Brief**

In its Post-Trial Brief, UBH urged the Court to find that UBH was a settlor of the class members' plans. UBH Br. at 17:25-24:9. In response, Plaintiffs cited the many types of evidence *in the trial record* to the contrary, including that UBH was not identified in any plan as the plan administrator, Pls.' Reply Br. at 11 n.14, and that no plan authorized UBH to amend plan terms. *Id.* at 14:18-20 & 15:15-17. Rather than listing the pertinent exhibit page numbers in the body of their brief, Plaintiffs used a more easily readable chart form. There is no new "evidence" on the chart; the cited exhibits were all admitted at trial – without objection by UBH. Tr. at 678:10-679:7. The chart also is not an inadmissible summary exhibit under Rule 1006; that rule applies when "voluminous writings . . . cannot be conveniently examined in court." Fed. R. Evid. 1006. Here, the underlying evidence *was* admitted into evidence and examined at trial.

Finally, UBH argues that the citations to the amendment provisions "demonstrate[] that the process for amending the plans varies from plan-to-plan." Defs.' Surreply at 6:12-13. That argument, again, is irrelevant to liability. It also fails on its own terms; there is no *relevant* variation among the amendment provisions; none permits UBH, as the claims administrator tasked with *interpreting* plans, to amend plan terms through issuance of its clinical Guidelines.

**C. Dictionary Definitions Are Not "Evidence" Requiring Admission At Trial.**

In its post-trial brief, UBH relied heavily on its Orwellian linguistic argument that words in the Guidelines, such as "acute," "acute changes," and "presenting," do not mean what they

---

[3] As the parties and the Court have repeatedly recognized, all of the information relevant to class membership is contained in UBH's records, including not only its claims data but also the denial letters, which it has so far refused to produce except as to the claim sample members. *See, e.g.*, Transcript of Pretrial Conference (Oct. 5, 2017) ("PTC Tr.") at 13:20-22, 32:24-33:3. The fact that denial letters may need to be reviewed to determine whether a given person is a State Mandate class member does not convert that class into a "fail-safe" class; the class is defined by objective, verifiable terms – nothing about the class suggests that it "cannot be defined until the case is resolved on the merits." *Cf.* Def.'s Surreply at 5 n.4.

say. Those words, on their face, simply do not bear the meaning UBH now attributes to them, as reflected in the dictionary definitions cited in Plaintiffs' reply brief. Pls.' Reply at 27:1-33:17.

UBH wants the Court to blind itself to the plain meaning of those words, because the cited dictionaries were not "on the Joint Trial Exhibit List" (Surreply at 7:12) or "discuss[ed]" with a witness at trial (Objections at 3:21-22). But courts regularly consult dictionaries to confirm the "plain and ordinary meaning" of English words and phrases. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (cited in Pls.' Reply at 26 n.30). When courts do so, they do not require that the dictionary be entered into "evidence" or that a witness testify that, for example, Webster's contains definitions of English words; they are not "evidence" in that sense. Rather, courts look directly to dictionaries to confirm the meaning of disputed words or phrases – including on motions to dismiss, when "evidence" is not being considered at all. *See, e.g.*, *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1118 (9th Cir. 2015) (the "ordinary or natural meaning" of a term "often be discerned by reference to the dictionary definition of that word"). The Court does not need to look to dictionaries to know that UBH's Guidelines mean what they say, but it is entirely free to look to them to confirm that fact.

UBH alternatively argues that if the Court considers the dictionary definitions, they "support UBH's position that . . . the term 'acute' can indicate the severity of a symptom, the temporal question of when the symptom or condition arose, or both." Def.'s Surreply at 7:20-8:1. But the definitions UBH cites belie any notion that "acute" includes treatment of "chronic" conditions just because the chronic symptoms are "sever[e]." *See* Pls.' Reply at 28:5-14.[4]

## III. Conclusion

For these reasons, UBH's objections to evidence cited in Plaintiffs' post-trial reply brief should be overruled, and its arguments raised in sur-reply should be rejected.

---

[4] UBH also cites testimony from Dr. Fishman and misleadingly suggests that he agreed that it is proper to limit treatment to patients who present with an "acute change." Def.'s Surreply at 8:3-5. In fact, Dr. Fishman's testimony was the opposite. He explained that a patient who is "chronically miserable" *should* be treated, even if he or she does not demonstrate acute symptoms, or acute "changes" in his or her signs and symptoms. Tr. 192:22-193:4. The "'why now' is the acute change and *is different from the chronicity*." Tr. 193:13-14 (emphasis added).

Dated: February 27, 2018

ZUCKERMAN SPAEDER LLP

*/s/ Caroline E. Reynolds*
Caroline E. Reynolds
Jason S. Cowart
Carl S. Kravitz
Aitan D. Goelman
Adam B. Abelson

PSYCH-APPEAL, INC.
Meiram Bendat

*Attorneys for Class Plaintiffs*