JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
ANDREW HOLMER (SBN 268864)
aholmer@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Phone: (213) 622-4750
Fax: (213) 622-2690

THOMAS F. KOEGEL (SBN 125852)
tkoegel@crowell.com
NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Phone: (415) 986-2800
Fax: (415) 986-2827

APRIL N. ROSS (admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **DAVID WIT et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED BEHAVIORAL HEALTH**, <br><br> Defendant. | Case No. 14-cv-02346 JCS <br> Related Case No. 14-cv-05337 JCS <br><br> **UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION FOR CLASS DECERTIFICATION** <br><br> Hon. Joseph C. Spero |

1   **GARY ALEXANDER et al.**,

2                          Plaintiffs,

3         v.

4   **UNITED BEHAVIORAL HEALTH**,

5                          Defendant.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................... 1

II.   LEGAL STANDARD ................................................................................... 2

III.  ARGUMENT ............................................................................................... 3

    A.    Plaintiffs Did Not Establish Commonality And Typicality As Required By Rule 23(a)(2) And Rule 23(a)(3). ............................................................... 3

          1.    There Are Not Common Questions Of Liability Because Some Class Members Were Not Denied Benefits. ................................. 3

          2.    There Is No Commonality Because The CDGs Were Used For Benefit Decisions For Roughly One-Third Of The Class, And Plaintiffs Failed To Prove That The CDGs Incorporate The LOCGs Or Are Inconsistent With The Class Members' Plans. ............................ 4

          3.    The Unrefuted Trial Evidence On Plan Variations Shows There Is No Typicality or Common Question Of Liability For All Class Members. .......................................................................................... 6

          4.    Plaintiffs Did Not Introduce Common Proof of Injury. .............................. 9

    B.    Plaintiffs Did Not Prove They Are Adequate Class Representatives. .................. 11

    C.    Plaintiffs Did Not Establish The Requirements Of Class Certification For Members Of The *Wit* State Mandate Class Whose Benefit Decisions Were Governed By Texas Law. ........................................................................... 14

IV.  CONCLUSION ........................................................................................... 15

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Amchem Prods., Inc. v. Windsor*
 521 U.S. 591 (1997) ...................................................................................................... 10

5

6

*Andrews-Clarke v. Lucent Technologies, Inc.*
 157 F. Supp. 2d 93 (D. Mass. 2001) ............................................................................. 12

7

*Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*
 637 F.3d 827 (7th Cir. 2011) ......................................................................................... 14

8

9

*Brown v. Ticor Title Ins. Co.*
 982 F.2d 386 (9th Cir. 1992) ......................................................................................... 12

10

*Cimino v. Raymark Indus., Inc.*
 151 F.3d 297 (5th Cir. 1998) ......................................................................................... 10

11

12

*Cole v. CRST, Inc.*
 317 F.R.D. 141 (C.D. Cal. 2016) ..................................................................................... 2

13

*Cooper v. Fed. Reserve Bank of Richmond*
 467 U.S. 867 (1984) ...................................................................................................... 12

14

15

*Daley v. Marriott Int'l, Inc.*
 415 F.3d 889 (8th Cir. 2005) ......................................................................................... 12

16

*Dupree v. Holman Prof'l Counseling Centers*
 572 F.3d 1094 (9th Cir. 2009) ......................................................................................... 7

17

18

*Eisen v. Carlisle & Jacquelin*
 417 U.S. 156 (1974) ...................................................................................................... 13

19

20

*Elizabeth L. v. Aetna Life Ins. Co.*
 No. CV 13-2554 SC, 2015 WL 799417 (N.D. Cal. Feb. 23, 2015), *aff'd*, 689 F.
 App'x 551 (9th Cir. 2017) ................................................................................................ 9

21

22

*Ellis v. Costco Wholesale Corp.*
 657 F.3d 970 (9th Cir. 2011) ......................................................................................... 15

23

24

*Espenscheid v. DirectSat USA, LLC*
 705 F.3d 770 (7th Cir. 2013) ......................................................................................... 15

25

*Fosmire v. Progressive Max Ins. Co.*
 277 F.R.D. 625 (W.D. Wash. 2011) ............................................................................... 13

26

27

*Gilliam v. Nev. Power Co.*
 488 F.3d 1189 (9th Cir. 2007) ......................................................................................... 7

28

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998)...............................................................................14

*Huffman v. Prudential Ins. Co. of Am.*
    No. 2:10-CV-05135, 2016 WL 5724293 (E.D. Pa. Sept. 30, 2016) .........................7

*Huffman v. Prudential Ins. Co. of Am.*
    No. 2:10-CV-05135, 2016 WL 9776067 (E.D. Pa. Dec. 13, 2016) ..........................7

*Johnson v. Gen. Motors Corp.*
    598 F.2d 432 (5th Cir. 1979)................................................................................12

*Larson v. Wis. Physicians Serv. Ins. Corp.*
    No. 14-cv-215- BBC, 2014 WL 4265916 (W.D. Wisc. Aug. 29, 2014) ..................12

*Lewis v. Casey*
    518 U.S. 343 (1996)...............................................................................................9

*Marlo v. United Parcel Serv., Inc.*
    251 F.R.D. 476 (C.D. Cal. 2008) ............................................................................2

*Marlo v. United Parcel Serv., Inc.*
    639 F.3d 942 (9th Cir. 2011) ..................................................................................2

*McClain v. Lufkin Indus., Inc.*
    519 F.3d 264 (5th Cir. 2008)................................................................................13

*In re Processed Egg Products Antitrust Litig.*
    312 F.R.D. 124 (E.D. Pa. 2015).............................................................................13

*Rader v. Teva Parenteral Medicines, Inc.*
    276 F.R.D. 524 (D. Nev. 2011)........................................................................13, 14

*Rodriguez v. West Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009), *aff'd,* 688 F.3d 645 (9th Cir. 2012)...........................2

*Romberio v. UNUMProvident Corp.*
    385 F. App'x 423 (6th Cir. 2009) .........................................................................10

*Sali v. Corona Reg'l Med. Ctr.*
    909 F.3d 996 (9th Cir. 2018)..................................................................................9

*Slayman v. FedEx Ground Package Sys., Inc.*
    765 F.3d 1033 (9th Cir. 2014)..............................................................................11

*Standard Fire Ins. Co. v. Knowles*
    568 U.S. 588 (2013).............................................................................................14

*Stockwell v. City & Cty. of S.F.*
    No. C 08-5180 PJH, 2015 WL 2173852 (N.D. Cal. May 8, 2015)...........................15

*Tyson Foods, Inc. v. Bouaphakeo*
   136 S. Ct. 1036 (2016) ......................................................................................................11

*Vaught v. Scottsdale Healthcare Corp. Health Plan*
   546 F.3d 620 (9th Cir. 2008)...............................................................................................7

*W. States Wholesale, Inc. v. Synthetic Indus., Inc.*
   206 F.R.D. 271 (C.D. Cal. 2002) .......................................................................................13

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011)...........................................................................................................2, 9

*Wright v. Oregon Metallurgical Corp.*
   360 F.3d 1090 (9th Cir. 2004).............................................................................................6, 9

**Statutes**

29 U.S.C. § 1132 ......................................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

1   **NOTICE OF MOTION FOR CLASS DECERTIFICATION**

2   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3           PLEASE TAKE NOTICE that on May 3, 2019, Defendant United Behavioral Health

4   ("UBH") will and hereby does move in the above-captioned actions for class decertification

5   pursuant to Federal Rule of Civil Procedure 23(c)(1)(C). UBH's motion is made pursuant to

6   Federal Rule of Civil Procedure 23 and instructions from the Court at the March 29, 2019 Case

7   Management Conference. UBH's motion is based on this Notice of Motion and Motion, the

8   accompanying Memorandum of Points and Authorities, exhibits that were presented at trial, all

9   pleadings on file, and such other support as may be presented to the Court.

10          **STATEMENT OF ISSUES TO BE DECIDED**

11          The issues for this Court to decide are whether the classes in this case should be

12  decertified pursuant to Federal Rule of Civil Procedure 23(a)(2), (a)(3), (a)(4), (b)(1), (b)(2),

13  (b)(3), (c)(1)(C) and/or Article III of the United States Constitution.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                                   **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.     INTRODUCTION**

3        The Court certified three classes in this case based on Plaintiffs' assurances that Plaintiffs

4 would establish at trial by common evidence all of the elements of their claims as to all of the

5 absent class members. But, at trial, "[t]hat evidence did not materialize." *Dilts v. Penske*

6 *Logistics, LLC*, No. 08-CV-318-CAB BLM, 2014 WL 305039, at *3 (S.D. Cal. Jan. 21, 2014). To

7 the contrary, the trial evidence revealed Plaintiffs' inability to establish the commonality,

8 typicality, and adequacy prongs of Rule 23(a) and their failure to meet the requirements of any

9 provision of Rule 23(b).

10        Plaintiffs did not identify, much less answer, common classwide questions on any of the

11 elements of their claims. They did not prove unlawful denial of benefits or breach of fiduciary

12 duty on a classwide basis because the evidence showed that some class members were not denied

13 benefits at all, while others were lawfully denied benefits according to the governing terms of

14 their plans. Plaintiffs did not establish common injury on a classwide basis because the

15 challenged guidelines were not applied to all class members' benefits claims, and Plaintiffs did

16 not show that all class members' claims would have been approved but for the challenged

17 guidelines. And, Plaintiffs did not establish a common right to relief on a classwide basis because

18 Plaintiffs failed to show that any (much less all) class members paid out of pocket for the services

19 UBH declined to authorize, and that any Plaintiff is a current member of a UBH-governed benefit

20 plan with standing to seek prospective injunctive relief.

21        While these shortcomings support judgment as a matter of law for UBH,[1] they also show

22 that Plaintiffs failed to keep their promise that they would try this case with evidence common to

23 the class. These deficiencies cannot simply be relegated to the "remedies" phase because they go

24 to the heart of Plaintiffs' ongoing obligation throughout the life of this litigation to demonstrate

25 that this case can and should be maintained as a class action consistent with the rigorous demands

26

27        [1] UBH made an oral motion for judgment as a matter of law on these grounds at the March 29, 2019 Case Management Conference. The Court orally denied that motion.

28

1   of Rule 23. The Court's findings of fact and conclusions of law simply do not apply to all class

2   members, whose claims are governed by different plans, different guidelines, and different laws.

3   Nor have Plaintiffs adequately represented all of the class members' interests, since they are

4   pursuing only some of the allegations and some of the remedies under the causes of action they

5   originally brought. Accordingly, the classes should be decertified pursuant to Rule 23(c)(1)(C).

6   **II.       LEGAL STANDARD**

7         Courts have "a continuing duty to ensure compliance with class action requirements

8   pursuant to Rule 23." *Cole v. CRST, Inc.*, 317 F.R.D. 141, 144 (C.D. Cal. 2016) (granting motion

9   for decertification). Accordingly, a court's decision to grant class certification is "inherently

10  tentative" and can be modified or reversed at any time "before final judgment" under Rule

11  23(c)(1)(C). *Marlo v. United Parcel Serv., Inc.* ("*Marlo I*"), 251 F.R.D. 476, 479 (C.D. Cal. 2008)

12  (citations omitted). "A district court may decertify a class at any time." *Rodriguez v. West Publ'g*

13  *Corp.*, 563 F.3d 948, 966 (9th Cir. 2009), *aff'd,* 688 F.3d 645 (9th Cir. 2012) (factoring whether

14  defendants were likely to seek decertification of nationwide class into whether to approve

15  settlement).

16        A motion for class decertification is subject to the same standard as a motion for class

17  certification. Plaintiffs bear the burden of meeting the requirements of Rule 23 based on the

18  evidence and the Court's "substantive rulings in the context of the history of the case." *Marlo I*,

19  251 F.R.D. at 480; *Marlo v. United Parcel Serv., Inc.* ("*Marlo II*"), 639 F.3d 942, 947-48 (9th

20  Cir. 2011). The Court must continue to apply a "rigorous" analysis in assessing whether Plaintiffs

21  have demonstrated the four requirements of Rule 23(a) – numerosity; common questions of law

22  or fact; typicality of the named plaintiffs' claims or defenses; and adequacy of the named

23  plaintiffs to fairly protect the interests of the class – and whether Plaintiffs also meet the

24  requirements of at least one provision of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes* ("*Dukes*"),

25  564 U.S. 338, 351-52 (2011).

26

27

28

1

III.     **ARGUMENT**

2

     A.    **Plaintiffs Did Not Establish Commonality And Typicality As Required By Rule 23(a)(2) And Rule 23(a)(3).**

3

4

          1.    **There Are Not Common Questions Of Liability Because Some Class Members Were Not Denied Benefits.**

5

Plaintiffs committed to prove at trial, on a classwide basis, that each Plaintiff and each

6

individual absent class member were denied benefits based on UBH's application of Level of

7

Care Guidelines ("LOCGs") that are inconsistent with generally accepted standards of care and

8

with the terms of the class members' plans. While the Court held that Plaintiffs did not need to

9

prove that each individual class member was entitled to and would have received benefits *but for*

10

the challenged portions of the guidelines, Plaintiffs did need to prove on a classwide basis that all

11

class members' requests for benefits were *actually denied* after the submission of subsequent

12

appeals.[2] Plaintiffs failed to do so.

13

The only evidence introduced at trial concerning the vast majority of absent class

14

members was Trial Exhibit 255, which Plaintiffs contend lists class members whose requests for

15

coverage were denied by UBH "in whole or in part, within the Class period, based upon UBH's

16

Level of Care Guidelines or UBH's Coverage Determination Guidelines [("CDGs")]" based on

17

class definitions. Pls.' Post-Trial Proposed Findings of Fact ¶¶ 95-96, Dkt. No. 393 (citing Trial

18

Ex. 255). While UBH concedes the "class list" reflects members who received *initial* adverse

19

clinical benefit determinations from UBH for the relevant levels of care during the relevant class

20

period, the only witness to testify about this list explained that many individuals on the list

21

appealed and ultimately *received* the benefits they requested. Trial Tr. 1484:6-17 (Bridge).

22

Notably, among the small sample of members whose administrative records were offered into

23

24

     [2] At a minimum, this failure dooms class certification of Plaintiffs' Claim Two for arbitrary and capricious denial of benefits under ERISA. 29 U.S.C. § 1132(a)(1)(B). As Plaintiffs conceded at class certification, "to prevail on this claim they must establish 1) that those Class members' plans required UBH to make clinical coverage determinations pursuant to criteria that were consistent with generally accepted standards of care; 2) that UBH's fatally flawed Guidelines were not, in fact, consistent with those required standards; and 3) that UBH adjudicated *and denied* the members' requests for coverage pursuant to a Guideline." *See Wit* Order Granting Class Cert. at 10:12-17 (quoting Pls.' Mot. for Class Cert. at 6) (emphasis added), Dkt. No. 174.

25

26

27

28

evidence, 36 percent opted to appeal the initial benefit decision reflected in Trial Exhibit 255. Trial Tr. 1503:21-24 (Bridge). Of the members who appealed, UBH fully overturned the initial benefit decision for 12 percent, meaning that these members *received* the full amount of benefits requested. Trial Ex. 1655; Trial Tr. 1484:10-17, 1502:10-12, 1503:18-1504:14 (Bridge). This was no anomaly; 15 to 25 percent of appeals result in an overturn of the initial decision and authorization of benefits.[3] Trial Tr. 1504:15-1505:1 (Bridge). Because Plaintiffs failed to carry their burden of proving commonality and typicality, they cannot maintain class certification.

> **2.** **There Is No Commonality Because The CDGs Were Used For Benefit Decisions For Roughly One-Third Of The Class, And Plaintiffs Failed To Prove That The CDGs Incorporate The LOCGs Or Are Inconsistent With The Class Members' Plans.**

While Plaintiffs challenged 224 different guidelines at trial (Trial Exs. 1-224), they offered testimony about only 15 guidelines: eight LOCGs (Trial Exs. 1-8) and seven CDGs specific to custodial care (Trial Exs. 10, 47, 84, 108, 148, 195, 221). Plaintiffs offered no testimony about the remaining 209 diagnosis-specific CDGs, despite the fact that decisions based on those additional CDGs account for roughly one-third of all class members. *See* Trial Ex. 255. Instead, "Plaintiffs challenge these CDGs *only to the extent they incorporate the Level of Care Guidelines*." Pls.' Post-Trial Br. at 5:6-7 (emphasis added), Dkt. No. 392. The Court has not yet determined whether Plaintiffs satisfied their burden at trial to prove with classwide evidence that any LOCG was incorporated into any of the 209 diagnosis-specific CDGs under any of Plaintiffs' eight varying theories of incorporation, or if so, to what effect. *See* Court's Findings of Fact and

---

[3] This evidence also shows why the class members' ERISA plans require that each member individually exhaust all administrative remedies and appeal rights before filing suit. *See, e.g.,* Trial Exs. 1535-0057 (plan for class member 659 prohibiting legal action "until you have completed all the steps in the appeal process"); 1557-0084 (same for class member 6600); 1583-0085 (same for class member 12605); 1633-0090 (same for class member 7292); 1635-0080 (same for class member 8242). At trial, Plaintiffs did not identify a single plan that does not require exhaustion of administrative remedies before seeking remedies in court. Based on the appeal statistics, a significant number of class members who were initially denied benefits ultimately would have received the benefits if they had appealed those decisions as required under their plans. But, while the named Plaintiffs submitted appeals, many of the class members failed to fully exhaust their appeals before this suit was filed. *See* Trial Tr. 1503:21-24. (Bridge). This is yet another basis for decertification based on lack of commonality and typicality.

1    Conclusions of Law ("FFCL") ¶ 49 n.7, Dkt. No. 418. As the Court recently acknowledged, to the

2    extent Plaintiffs failed to satisfy their burden of classwide proof as to the fact (and significance)

3    of the "incorporation issue" for any CDG or group of CDGs, class members with benefit

4    decisions made using those CDGs must be "carve[d] out" of the class. 3/29/2019 Hr'g. Tr. at 12,

5    Dkt. No. 424.

6    　　　In addition, even if Plaintiffs had proven that the LOCGs were somehow "incorporated"

7    into some CDGs, class members with benefit decisions made using CDGs still have no place in

8    the class because Plaintiffs offered no evidence that such "incorporation" ever resulted in a

9    LOCG being applied to any CDG benefit decision, let alone on a classwide basis. To the contrary,

10   the evidence at trial, including benefit determinations for multiple named Plaintiffs, showed that

11   UBH clinicians *did not* refer to the LOCGs or their challenged content when applying the CDGs.

12   Trial Tr. 1725:15-22 (Triana); Trial Ex. 229 (Driscoll denial letter); Trial Ex. 240 (Muir denial

13   letter); Trial Ex. 226 (Alexander denial letter). There is no evidence in the record that the LOCG

14   cross-references Plaintiffs pointed to were actually used to make a single benefit determination

15   for any member for whom a CDG was used – much less any classwide evidence of such use.

16   　　　The class also should be decertified for lack of commonality because Plaintiffs failed to

17   prove that UBH owed class members a fiduciary obligation under their plans to develop CDGs

18   that were consistent *solely* with generally accepted standards of care *to the exclusion of* other plan

19   terms. The uncontroverted evidence at trial showed that CDGs are designed to do precisely what

20   their name suggests: *determine coverage* according to the full terms of a member's benefit plan.

21   Throughout the class period, UBH's Guideline Applicability Tool directed Care Advocates and

22   Peer Reviewers to utilize the CDGs "[w]hen determinations are based on the terms of the benefit

23   plan" rather than on evaluations of medical necessity. *See* Trial Ex. 450-0005; *see also* Trial Tr.

24   388:23-389:4 (Niewenhous). Each CDG specifies on its face the UnitedHealthcare Certificate of

25   Coverage or Summary Plan Description templates to which it applies, states in one way or

26   another that the purpose of the CDG is to "provide[] assistance in interpreting behavioral health

27   benefit plans that are managed by [Optum]," that "the enrollee specific document must be

28   referenced" before applying the CDG, and that the CDG does not apply where the plan terms do

1  not align with the CDG's coverage criteria. *See*, *e.g.*, Trial Ex. 11-0002 to -03 (2010 CDG for

2  Residential Rehabilitation of Substance Use Disorders); Trial Ex. 120-0002 (2014 CDG for

3  Treatment of Bulimia Nervosa); Trial Ex. 224-0002, -05 (2017 CDG for Trauma- and Stressor-

4  Related Disorders).

5        While UBH sought to incorporate generally accepted standards into the CDGs, Trial Tr.

6  298:19-21 (Niewenhous), each CDG was expressly intended to describe the full extent of benefit

7  coverage available under class members' plans, even if the scope of that coverage was more

8  limited than generally accepted standards of care. *See*, *e.g.*, Trial Ex. 167-0003 to -04 (providing

9  that "[b]enefits are available for covered services that are not otherwise limited or excluded")

10  (emphasis added). Plaintiffs' failure to introduce classwide proof that UBH owed class members

11  a fiduciary duty to develop CDGs that are consistent *solely* with "generally accepted standards of

12  care," regardless of other plan terms, coupled with their failure to prove that the CDGs are

13  *inconsistent* with the terms of all class members' plans, precludes any finding of liability as to the

14  class members whose claims were determined using a CDG. The class should be decertified for

15  lack of commonality, or at a minimum, class members whose claims were determined using a

16  CDG should be excluded from the class.

17        **3.**    **The Unrefuted Trial Evidence On Plan Variations Shows There Is No
             Typicality or Common Question Of Liability For All Class Members.**

18

19        Plaintiffs had the burden to prove that the LOCGs were inconsistent with class members'

20  plan terms, and to do so with classwide evidence applicable to all of the plans at issue. FFCL ¶¶

21  203, 211; *see also Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004)

22  ("ERISA does no more than protect the benefits which are due to an employee under a plan").

23  Not only did Plaintiffs fail to carry this burden, the unrefuted trial evidence establishes that class

24  members' plans vary in multiple material ways that require class decertification.

25        The only evidence offered by Plaintiffs about the class members' plans was a summary

26  exhibit showing that the phrase "generally accepted standards of care" (or a variant thereof)

27  appears in each plan. Trial Ex. 892. Plaintiffs cast aside the remainder of the plan language and

28  asked the Court to treat that isolated phrase as alone defining the scope of coverage and the

1    standards that should be applied in making benefit determinations for plan members. That narrow

2    approach runs directly contrary to the Ninth Circuit's dictate that when interpreting ERISA plans,

3    courts must "examine the plan documents as a whole," *Vaught v. Scottsdale Healthcare Corp.*

4    *Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) (citations omitted), because "[t]he intended

5    meaning of even the most explicit language can, of course, only be understood in the light of the

6    context that gave rise to its inclusion." *Gilliam v. Nev. Power Co.*, 488 F.3d 1189, 1194 (9th Cir.

7    2007). A court must look "to the agreement's language in context and construe each provision in

8    a manner consistent with the whole such that none is rendered nugatory." *Dupree v. Holman*

9    *Prof'l Counseling Centers*, 572 F.3d 1094, 1097 (9th Cir. 2009).

10           Because the plans must be viewed holistically, pointing to a single common phrase across

11    different ERISA plans is not enough to satisfy Rule 23's commonality and predominance

12    requirements. *See Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-CV-05135, 2016 WL

13    5724293, at *1 (E.D. Pa. Sept. 30, 2016). In *Huffman*, the court refused to certify a class of

14    beneficiaries of 2,200 different ERISA plans who alleged that defendant's practice of putting

15    beneficiaries' life insurance proceeds in an investment account violated the plans' requirement

16    that proceeds be paid directly in one sum. *Id.* To avoid the need to individually construe the terms

17    of 2,200 plans, plaintiffs proposed a class limited to members of plans containing the specific

18    phrase "Life Insurance is normally paid to the Beneficiary in one sum" and excluding plans that

19    specified that payment "will be made by establishing a retained asset account in the Beneficiary's

20    name." *Id.* at *6. As the *Huffman* court recognized, the complexities in interpreting multiple

21    conflicting documents and provisions "belie the notion that the parties will only need to skim the

22    text of one clause in each of the plans to see if it has the [specified] language." *Id.* at *7. Even if

23    all plans contained that same phrase, an individual plan may *also* contain *other* provisions that

24    need to be interpreted to understand the full scope of coverage. *Huffman v. Prudential Ins. Co. of*

25    *Am.*, No. 2:10-CV-05135, 2016 WL 9776067, at *3 (E.D. Pa. Dec. 13, 2016) (denying

26    reconsideration). Because the cited phrase here must be reviewed in the full context of the plan

27    language for each class member, Plaintiffs failed to establish commonality or predominance

28    under Rule 23.

Plaintiffs made no attempt at trial or in their post-trial briefs to show that the LOCGs are incompatible with the full terms of *any* of the plans, much less all of them, and they ignored unrefuted evidence showing material variations in class members' plans that preclude a common finding of liability. For example, at trial and in their post-trial briefing, Plaintiffs focused on the supposed "common question" of whether the LOCGs' emphasis on acuity was inconsistent with class members' plan terms. *See, e.g.,* Pls.' Post-Trial Br. at 32-39. But, Plaintiffs ignored language from a sample plan that specifically excludes coverage for behavioral health services "beyond the period necessary for short-term evaluation diagnosis, treatment or crisis intervention" and covers only short-term outpatient and intensive outpatient therapy. *See* Trial Ex. 2023 at 0042-43. Accordingly, the Court's finding that the LOCGs over-emphasize acuity does not mean that those guidelines are inconsistent with this plan, which expressly emphasizes acuity in defining the scope of coverage. *See, e.g.*, FFCL ¶ 96. The supposed common question of whether UBH improperly focused on acuity could not (and did not) generate the same common answer for members of this plan and class members whose plans do not have these provisions.[4]

Other unrefuted evidence of plan variation underscores that Plaintiffs' claims are not common with, or typical of, all class members. For residential treatment, UBH introduced evidence showing that some plans limit coverage to residential services that will "stabilize the presenting problem within a reasonable period of time," Trial Ex. 2014-0168, or dictate that "[a]dmission to a residential treatment center is not intended for use solely as a long-term solution or to maintain the stabilization acquired during treatment in a residential facility or program," Trial Ex. 1539-0053. Indeed, one plan "does not provide long-term care coverage" for *any* facility-based treatment, including residential care (whether for medical or behavioral health services). Trial Ex. 2011-0081.

Each of these variations in plan language, like many others,[5] relates directly to the liability

---

[4] For the same reasons, the *Wit* and *Alexander* classes do not satisfy Rule 23(b)(1) or (b)(2). Both sections are premised on a uniform set of obligations and are inapplicable when UBH owes materially different obligations to class members under different plans with different terms.

[5] As demonstrated at trial, the class members' plans varied in many other material ways. *See, e.g.*, Trial Ex. 1548-0030 (excluding coverage for services that "[t]ypically do not result in (Continued...)

CROWELL
& MORING LLP

1  questions in this case. Plaintiffs' burden at trial was to prove through common evidence that the

2  LOCGs were inconsistent with the terms of each class members' plan as a whole. The LOCGs

3  cannot be an unreasonable interpretation of a particular class member's plan if the LOCGs

4  impose restrictions on coverage that are *consistent with* or *required by* that class member's plan.

5  *See Wright*, 360 F.3d at 1100 (holding that ERISA fiduciaries cannot be liable for following plan

6  terms unless they were under a legal obligation to deviate from those plan terms); *Elizabeth L. v.*

7  *Aetna Life Ins. Co.*, No. CV 13-2554 SC, 2015 WL 799417, at *2, *4 (N.D. Cal. Feb. 23, 2015),

8  *aff'd*, 689 F. App'x 551 (9th Cir. 2017) ("Plaintiffs cannot state a claim for breach of fiduciary

9  duty" against a plan administrator for "not paying claims it is not required to pay in the first

10  place"). Plaintiffs' failure to prove that the LOCGs are inconsistent with the terms of *all* class

11  members' plans as a whole is fatal to both the commonality and typicality prongs under Rule 23.

12  *Dukes*, 564 U.S. at 350 ("Dissimilarities within the proposed class are what have the potential to

13  impede the generation of common answers") (citation omitted).

14  **4.    Plaintiffs Did Not Introduce Common Proof of Injury.**

15  Plaintiffs did not attempt to prove that each of them and each class member "suffered, or

16  will imminently suffer, actual harm." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Sali v. Corona*

17  *Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (requiring class plaintiffs to prove their

18  injury as required by each stage of litigation including trial). Indeed, they did not attempt to offer

19  evidence showing the members were denied benefits based on the specific LOCG provisions they

20  challenge. The certified classes are defined as members denied benefits during the class period

21  based on the LOCGs, but there is no evidence showing those denials were commonly premised

22  on the portions of the LOCGs the Court found deficient, or that each class member ever obtained

23

24  outcomes demonstrably better than other available treatment alternatives that are less intensive or
    more cost effective"); Trial Ex. 1654-0001 through 0009, 0031 (UBH chart summarizing plans

25  that exclude custodial care services for the "primary purpose of meeting the personal needs of the
    patient or maintaining a level of function . . . as opposed to improving that function to an extent

26  that might allow for a more independent existence"); *id.* at 13-14 (summarizing plans that exclude
    services "which do not seek to cure" or "are provided during periods when the medical condition

27  . . . is not changing"); *id.* at 16 (summarizing plans that exclude services when the member "has
    reached the maximum level of physical or mental function possible").

28

the services at issue or paid anything out of pocket for those services. Maintaining a certified class without such proof violates the Rules Enabling Act by substantively revising the elements of Plaintiffs' ERISA fiduciary-breach and benefits claims. *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 312 (5th Cir. 1998); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997); *see* FFCL ¶ 196 (concluding that an element of Plaintiffs' breach of Fiduciary Duty claim was that "the breach caused harm to Plaintiffs") (citing *LYMS, Inc. v. Millimaki*, No. 08-CV-1210-GPC-NLS, 2013 WL 1147534, at *9 (S.D. Cal. Mar. 19, 2013)); *see Romberio v. UNUMProvident Corp.*, 385 F. App'x 423, 429 (6th Cir. 2009) ("Absent a showing that benefits were *wrongfully* denied, there can be no causal link between an alleged breach and a denial of benefits.")[6]

Indisputably, many portions of the LOCGs were not challenged in this case, and others were found by the Court to be *consistent* with the generally accepted standards of care. *See* FFCL ¶¶ 110 n.14, 125. The class definitions and Plaintiffs' evidence make no attempt to carve out individuals *properly* denied coverage under such provisions. For example, the current class definitions sweep in members denied coverage based on the 2015 LOCG requirement that "services are within the scope of the provider's professional training and licensure" (*see* Trial Ex. 5-0008), a requirement Plaintiffs do not challenge. Similarly, the class definitions sweep in members denied coverage based on the 2013 LOCGs' Common Criteria ¶ 6 addressing a member's ability to be "effectively and safely treated in a lower level of care," which the Court found is consistent with generally accepted standards of care. FFCL ¶ 110 n.14. Class members denied coverage by applying these provisions would not be entitled to relief on stand-alone claims based on the evidence introduced at trial, yet they remain certified class members under Plaintiffs' overbroad class definitions.

Plaintiffs' failure to present evidence that each class member was injured in a common

---

[6] As UBH previously argued, Plaintiffs failed to prove an injury on a classwide basis because they did not prove class members were actually entitled to the benefits they now seek. *See* UBH's Post-Trial Br. at 99, Dkt. 400; *but see* Court's Order on Summ. J. at 19, Dkt. No. 286 (holding that Plaintiffs did not need to prove that the alleged flaws in UBH's Guidelines were a "but-for" cause of the injury). Indeed, Plaintiffs did not attempt to offer evidence showing that the alleged flaws in UBH's guidelines were a "but-for" cause of any injury.

1    way by the challenged portions of the LOCGs creates commonality, typicality, and Article III

2    standing problems that require decertification.[7] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct.

3    1036, 1053 (2016) ("Article III does not give federal courts the power to order relief to any

4    uninjured plaintiff, class action or not . . . . [I]f there is no way to ensure that the jury's damages

5    award goes only to injured class members, that award cannot stand.") (Roberts, C.J., concurring).

6             **B.        Plaintiffs Did Not Prove They Are Adequate Class Representatives.**

7             Plaintiffs failed to adequately represent the interests of the absent class as required under

8    Rule 23(a)(4), and that failure also requires decertification. For nearly two years after filing their

9    complaints, and throughout class discovery, Plaintiffs pursued their claim for wrongful denial of

10   benefits based on three different theories of liability: (i) that UBH applied improper guidelines to

11   class members' benefit decisions; (ii) that UBH improperly applied the existing guidelines; and

12   (iii) that UBH did not adequately consider patient-specific evidence presented to UBH with

13   respect to each request for coverage. *See Wit* First Am. Compl., ¶ 205, Dkt. No. 32; *Alexander*

14   Compl., ¶ 136, Dkt. No. 1. Plaintiffs brought these claims on the express premise that absent class

15   members were actually entitled to the denied benefits that are the subject of this case. *See Wit*

16   First Am. Compl., ¶ 206; *Alexander* Compl., ¶ 142; *see also Wit* Pls.' Opp'n to Mot. to Dismiss at

17   25:11-12, Dkt. No. 47 (Plaintiffs arguing that "they were unlawfully deprived of benefits to which

18   they were entitled"); *Alexander* Pls.' Opp'n to Mot. to Dismiss at 24 n.11 (Plaintiffs arguing that

19   "they were entitled to coverage, which was improperly denied by UBH."). To remedy these

20   purported injuries, Plaintiffs sought on behalf of the class "the out-of-pocket costs for . . .

21   treatment that Plaintiffs and members of the Class incurred" as a result of their individual benefit

22   decisions. *Wit* First Am. Compl. at 66; *accord Alexander* Compl. at 51.

23             Recognizing that they could not obtain class certification on their claims that UBH

24   ───────────────────────────

25            [7] Plaintiffs' class claims also fail for lack of commonality, typicality, and Article III
      standing because while Plaintiffs seek prospective injunctive relief in the form of revised
26    guidelines applicable to their benefit plans, they failed to offer any evidence that they remain
      members of health plans administered by UBH and would benefit from the relief sought. *See*
27    *Slayman v. FedEx Ground Package Sys., Inc*., 765 F.3d 1033, 1048 (9th Cir. 2014) (decertifying
      class for prospective relief on appeal because former employee lacked Article III standing since
      he could not benefit from such relief).

28

improperly applied its guidelines in individual class members' cases and failed to consider

patient-specific evidence or their request for individualized benefit payments, at the hearing on

class certification, Plaintiffs "stipulated" to "drop" such claims *on behalf of the entire class*. *See*

*Wit* Order Granting Class Cert. at 10 n.10; *see also* 9/7/2016 *Wit* Hr'g Tr. at 4:4-7, 7:25-8:4, 8:9-

10, Dkt. No. 173. In doing so, Plaintiffs precluded absent class members from bringing later

benefits claims arising out of the same denial of benefits, even if those later claims are based on

different theories of wrongful denial of benefits relating to the guidelines. *See Cooper v. Fed.*

*Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("[U]nder elementary principles of prior

adjudication a judgment in a properly entertained class action is binding on class members in any

subsequent litigation[.]"). This includes waiver of the many alleged wrongs Plaintiffs previously

identified as important rights in this case, including claims that UBH applied the wrong

guidelines, "ignor[ed] the evidence presented to it," "applied undisclosed additional criteria" not

set forth in the written guidelines, or applied a CDG when Plaintiffs' plans required use of an

LOCG.[8] *See Wit* First Am. Compl., ¶ 205*; see Daley v. Marriott Int'l, Inc.*, 415 F.3d 889, 896

(8th Cir. 2005) (holding a subsequent individual ERISA lawsuit arose from the "same nucleus of

operative facts" as prior class action because the individual sought redress of the same wrong);

*Andrews-Clarke v. Lucent Technologies, Inc.*, 157 F. Supp. 2d 93, 102-3 (D. Mass. 2001)

(holding "the fundamental cause of action" in a claim for wrongful denial of benefits is "the

defendant's failure to approve" benefits, and new legal theories and relief did not impact the res

judicata analysis). The waiver also includes any claims for out-of-pocket expenses or the payment

of benefits based on the same underlying denial of benefits, which, for the vast majority of class

---

[8] Neither Plaintiffs nor absent class members can split their equitable relief claims (including an equitable surcharge) into multiple actions arising from the same common nucleus of operative facts to seek similar relief seriatim for the same denial of benefits under different legal theories. *See Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992) (prior class action judgment "foreclosed [plaintiff] from seeking other or further injunctive relief"); *Johnson v. Gen. Motors Corp.*, 598 F.2d 432, 438 (5th Cir. 1979) (res judicata would bar all equitable relief that could have been sought in prior class action); *Larson v. Wis. Physicians Serv. Ins. Corp.*, No. 14-cv-215- BBC, 2014 WL 4265916, at *1, *4 (W.D. Wisc. Aug. 29, 2014) (holding putative ERISA class action challenging practice of applying copayments "on an unequal basis" was precluded because claims could have been raised in prior case challenging defendant's practice of charging any chiropractic copayments under ERISA plan).

1  members will constitute their most significant option for potential recovery. *See In re Processed*

2  *Egg Products Antitrust Litig.*, 312 F.R.D. 124, 167 (E.D. Pa. 2015) (noting "[t]he perils of claim

3  preclusion when certifying a Rule 23(b)(2) class alongside Rule 23(b)(3) classes has troubled

4  many courts"); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974) (explaining that

5  the notice requirements specific to a Rule 23(b)(3) class were "intended to insure that the

6  judgment, whether favorable or not, would bind all class members who did not request exclusion

7  from the suit").

8      Plaintiffs' tactical decision to gut class members' individual claims for the sake of

9  sustaining a certifiable class renders them inadequate representatives of the very class they aim to

10  represent. "While this decision may maximize [Plaintiffs'] ability to assert commonality between

11  [their] claim[s] and other class members' claims under Rule 23(a)(2)," it creates a serious risk

12  that the doctrines of claim or issue preclusion will prevent absent class members from pursuing

13  relief for the same denial of benefits in another lawsuit. *See Fosmire v. Progressive Max Ins. Co.*,

14  277 F.R.D. 625, 634 (W.D. Wash. 2011); *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 283 (5th

15  Cir. 2008) (district court properly denied class certification where Plaintiffs "dropped their

16  demand for compensatory and punitive damages in order to achieve Rule 23(b)(2) certification"

17  because "class members would not have had the right to opt out of the class and might be barred

18  from bringing individual damage claims"); *W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206

19  F.R.D. 271, 277 (C.D. Cal. 2002) ("A class representative is not an adequate representative when

20  the class representative abandons particular remedies to the detriment of the class."). Plaintiffs'

21  "attempt to split… class members' claim by excluding" significant alternative theories of liability

22  and relief which Plaintiffs believe to be meritorious "creates a conflict between [Plaintiffs']

23  interests and the interests of the putative class, rendering [them] inadequate class

24  representative[s]." *Fosmire*, 277 F.R.D. at 634.

25      Plaintiffs "cannot be allowed to represent a class where, as here, [they have] opted to

26  pursue certain claims on a classwide basis while jeopardizing the class members' ability to

27  subsequently pursue other claims." *Rader v. Teva Parenteral Medicines, Inc.*, 276 F.R.D. 524,

28  529 (D. Nev. 2011) (citation omitted). Put simply, Plaintiffs "can't throw away" claims and

1   remedies which "could be a major component" of recovery for individual class members without

2   rendering themselves inadequate representatives under Rule 23(a)(4). *Back Doctors Ltd. v. Metro.*

3   *Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011); *see Standard Fire Ins. Co. v. Knowles*,

4   568 U.S. 588, 594 (2013) (quoting *Back Doctors* with approval and suggesting a named

5   plaintiff's willingness to artificially cap class damages for tactical reasons could render him an

6   inadequate representative); *Rader*, 276 F.R.D. at 529 ("[C]lass members here will be bound by

7   any judgment and precluded from pursuing claims at a later date that could have been asserted in

8   the class action[.]").

9       Plaintiffs abandoned theories, claims, and requests for relief of individual class members

10  solely to facilitate class certification, undermining those class members' due process rights. *See*

11  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("To satisfy constitutional due

12  process concerns, absent class members must be afforded adequate representation before entry of

13  a judgment which binds them."). Plaintiffs' failure to adequately represent the interests of the

14  class requires that each of the classes be decertified in their entirety. Fed. R. Civ. P. 23(a)(4).

15      **C.    Plaintiffs Did Not Establish The Requirements Of Class Certification For
16              Members Of The *Wit* State Mandate Class Whose Benefit Decisions Were
                Governed By Texas Law.**

17      Plaintiffs are not entitled to maintain class certification for any members of the *Wit* State

18  Mandate Class whose benefit decisions were governed by Texas law. This Court found "UBH

19  violated Texas law *at some point* during the class period by applying its own CDGs rather than

20  the TDI [Texas Department of Insurance] Criteria," but found that the evidence "*does not*

21  *establish how long the violation lasted or which CDGs UBH applied*." FFCL ¶ 167 (emphasis

22  added). At trial, Plaintiffs failed to offer evidence of any class member whose benefit decision

23  required use of the TDI Criteria, but where TDI Criteria was not used. Indeed, the only named

24  Plaintiff in the *Wit* State Mandate Class lived in Illinois, received treatment in California, and

25  never filed a claim that required use of the TDI Criteria, all of which demonstrate a lack of

26  typicality and commonality on its face. *Id.* at ¶ 5.

27      Under this Court's findings, the *Wit* State Mandate Class must be decertified as it relates

28  to Texas (*i.e.*, members of fully-insured plans governed by both ERISA and Texas law who

1   sought coverage for residential treatment for a substance use disorder to be provided in the state

2   of Texas). Evidence that UBH violated Texas law as to some unknown class members at some

3   unknown time is not classwide proof that UBH did so for *all class members* for the *entire class*

4   *period*. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013) (noting "what

5   can't support an inference about the [circumstances] of thousands of [class members] is evidence

6   of the experience of a small, unrepresentative sample of them"). Because "there is no evidence

7   that the *entire class* was subject to the same . . . practice" of applying UBH's LOCGs or CDGs

8   instead of the TDI Criteria when required by Texas law, "there is no question common to the

9   class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) (emphasis added).

10          Nor should the Court permit Plaintiffs to shift their fundamental burden to prove

11   classwide liability to UBH to address during the *remedy* phase. Pls.' Post-Trial Reply Br. at 77:6-

12   11, Dkt. No. 404 (arguing evidence of whether UBH violated Texas law will be adduced during

13   "reprocessing"). Plaintiffs did not satisfy their burden of proof at trial and have failed to prove

14   their claims or the requirements of Rule 23 as to the Texas portion of the *Wit* State Mandate

15   Class. This failure is fatal to the merits of those claims and fatal to class certification on this issue.

16   *Stockwell v. City & Cty. of S.F.*, No. C 08-5180 PJH, 2015 WL 2173852, at *6 (N.D. Cal. May 8,

17   2015) (Plaintiffs were required to prove all the elements of liability "at trial through evidence . . .

18   common to the class rather than individual to its members").

19   **IV.    CONCLUSION**

20          For these reasons, UBH respectfully requests that the Court decertify the *Wit* Guideline

21   Class, the *Alexander* Guideline Class, and the *Wit* State Mandate Class. Alternatively, the class

22   definitions should be amended to carve out any class members for whom Plaintiffs failed to carry

23   their burden of common proof at trial including, but not limited to, class members denied

24   coverage based on CDGs and members of the *Wit* State Mandate Class as it relates to Texas.

25   Dated:      May 3, 2019              **CROWELL & MORING LLP**

26                                        */s/ Jennifer S. Romano*

27                                        Jennifer S. Romano
                                          Attorneys for UNITED BEHAVIORAL HEALTH

28

CROWELL
& MORING LLP

UBH'S MOTION FOR CLASS DECERTIFICATION
CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS