PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs and the Classes*
*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*, | Case No. 3:14-CV-02346-JCS |
| Plaintiffs, | Action Filed: May 21, 2014 |
| v. | |
| UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS), | **PLAINTIFFS' OPENING REMEDIES BRIEF** |
| Defendant. | |
| GARY ALEXANDER, *et al.*, | Case No. 3:14-CV-05337-JCS |
| Plaintiffs, | Action Filed: December 4, 2014 |
| v. | |
| UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS), | |
| Defendant. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

I.    Introduction ........................................................................................................ 1

II.   The Court's Broad Authority to Remedy UBH's ERISA Violations ................................ 1

III.  Declaratory Relief ............................................................................................... 5

IV.  Notice to the Class Members ................................................................................ 6

V.   Remand for Reprocessing ..................................................................................... 7

     A.     Completion of the Administrative Record. ......................................................... 10

     B.     Criteria to be Applied Upon Remand. ............................................................. 12

     C.     Other Protections for Class Members on Remand. .............................................. 14

     D.    Procedures Following Claim Adjudication ......................................................... 17

          1.     Procedures in the Event of a Denial After Reprocessing. ......................... 17

          2.     Procedures in the Event of Approval After Reprocessing. ....................... 18

     E.     Prejudgment Interest. .................................................................................... 18

     F.     Certification and Reporting. ........................................................................... 19

     G.    Interim and Final Deadlines ........................................................................... 20

VI.  Injunctive Relief ................................................................................................ 21

VII. Appointment of a Special Master .......................................................................... 27

VIII. Other Appropriate Equitable Relief ...................................................................... 32

IX.  Conclusion ....................................................................................................... 32

i

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Anthuis v. Colt Indus. Op. Corp.*,
  971 F.2d 999 (3d Cir. 1992) ............................................................. 19

*Bassett v. Snyder*,
  951 F. Supp. 2d 939 (E.D. Mich. 2013)........................................... 25

*Bd. of Trs. of Bay Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*,
  No. 12-cv-05655-JCS, 2014 WL 4383062 (N.D. Cal. Sept. 4, 2014) ............................... 22, 26

*Beck v. Levering*,
  947 F.2d 639 (2d Cir. 1991) ............................................................. 25

*Blankenship v. Liberty Life Assurance Co. of Bos.*,
  486 F.3d 620 (9th Cir. 2007) ........................................................... 19

*Brown v. Unum Life Ins. Co. of Am.*,
  356 F. Supp. 3d 949 (C.D. Cal. 2019) ............................................. 10

*Bunn Enters., Inc. v. Ohio Operating Eng'rs Fringe Benefit Programs*,
  No. 2:13-CV-357, 2013 WL 3147956 (S.D. Ohio June 19, 2013)......................... 23

*Carrier v. Aetna Life Ins. Co.*,
  116 F. Supp. 3d 1067 (C.D. Cal. 2015) ...................................... 12, 16

*Cherene v. First Am. Fin. Corp. Long-Term Disab. Plan*,
  303 F. Supp. 2d 1030 (N.D. Cal. 2004) ........................................... 12

*CIGNA Corp. v. Amara*,
  563 U.S. 421 (2011).......................................................... 3, 22, 23

*Copeland v. Carpenters Dist. Council of Hous. & Vicinity Pension Fund*,
  771 F. Supp. 807 (E.D. Tex. 1991) .................................................. 31

*CoxCom, Inc. v. Chaffee*,
  536 F.3d 101 (1st Cir. 2008).......................................................... 27

*Dakotas & W. Minn. Elec. Indus. Health & Welfare Fund v. First Agency, Inc.*,
  865 F.3d 1098 (8th Cir. 2017) .......................................................... 5

*Donovan v. Bryans*,
  566 F. Supp. 1258 (E.D. Pa. 1983) ("*Donovan II*") ........................ 29

*Donovan v. Mazzola*,
  716 F.2d 1226 (9th Cir. 1983) ("*Donovan I*")........................... passim

ii

*Duarte v. Aetna Life Ins. Co.*,
   No. SACV 13-00492-JLS (RNBx), 2014 WL 1672855 (C.D. Cal. Apr. 24,
   2014) ....................................................................................................... 8, 10, 17, 18

*Eaves v. Penn*,
   587 F.2d 453 (10th Cir. 1978) ............................................................... 2, 3, 27, 32

eBay Inc. v. MercExchange, L.L.C.,
   547 U.S. 388 (2006) ............................................................................................. 22

*Firestone Tire & Rubber Co. v. Bruch*,
   489 U.S. 101 (1989) ............................................................................................... 2

*Fotta v. Trs. of United Mine Workers of Am., Health & Ret. Fund of 1974*,
   165 F.3d 209 (3d Cir. 1998) ............................................................................... 19

*Gary W. v. Lousiana*,
   601 F.2d 240 (5th Cir. 1979) ............................................................................. 28

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States, Inc.*,
   549 F.3d 1079 (7th Cir. 2008) ........................................................................... 25

*Gould v. Lambert Excavating, Inc.*,
   870 F.2d 1214 (7th Cir. 1989) ........................................................................... 27

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ............................................................................................... 3

*Harlick v. Blue Shield of Cal.*,
   686 F.3d 699 (9th Cir. 2012) ............................................................................. 15

*Hatten-Gonzales v. Earnest*,
   Civ. No. 88-0385 KG/CG, 2018 WL 1665643 (D.N.M. Apr. 5, 2018) .................. 31

*Hecht Co. v. Bowles*,
   321 U.S. 321 (1944) ............................................................................................. 32

*Henry v. Home Ins. Co.*,
   907 F. Supp. 1392 (C.D. Cal. 1995) .................................................................. 10

*Holmberg v. Armbrecht*,
   327 U.S. 392 (1946) ............................................................................................... 3

*Hook v. Ariz. Dep't of Corr.*,
   107 F.3d 1397 (9th Cir. 1997) ........................................................................... 30

*Huizinga v. Genzink Steel Supply & Welding Co.*,
   No. 1:10-CV-223, 2013 WL 4511291 (W.D. Mich. Aug. 23, 2013) .............. 28, 30

*Int'l Res., Inc. v. N.Y. Life Ins. Co.*,
   950 F.2d 294 (6th Cir. 1991) ................................................................. 27

*Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*,
   370 F.3d 869 (9th Cir. 2004) .................................................................... 8

*K-Mart Corp. v. Oriental Plaza, Inc.*,
   875 F.2d 907 (1st Cir. 1989) ................................................................... 23

*Lancaster v. U.S. Shoe Corp.*,
   934 F. Supp. 1137 (N.D. Cal. 1996) .................................................. 8, 31

*Marshall v. Snyder*,
   572 F.2d 894 (2d Cir. 1978) ................................................................ 2, 28

*Martin v. Feilen*,
   965 F.2d 660 (8th Cir. 1992) .................................................................. 29

*Mass. Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985) ................................................................................. 2

*McLeod v. Oregon Lithoprint Inc.*,
   102 F.3d 376 (9th Cir. 1996) .................................................................. 23

*Meehan v. Gristede's Supermarkets, Inc.*,
   No. 95-CV-2104 (JG), 1997 WL 1097751 (E.D.N.Y. Sep.25, 1997) ..................................... 24

*Meidl v. Aetna, Inc.*,
   346 F. Supp. 3d 223 (D. Conn. 2018) ...................................................... 8

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ................................................................................. 3

*Meyer v. CUNA Mut. Ins. Soc'y*,
   648 F.3d 154 (3d Cir. 2011) ................................................................... 30

*Mongeluzo v. Baxter Travenol Long Term Disab. Benefit Plan*,
   46 F.3d 938 (9th Cir. 1995) .................................................................... 10

*Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*,
   -- U.S. --, 136 S. Ct. 651 (2016) .............................................................. 3

*Morales Feliciano v. Rullan*,
   303 F.3d 1 (1st Cir. 2002) ...................................................................... 28

*Nat'l Org. for the Reform of Marijuana Laws v. Mullen*,
   828 F.2d 536 (9th Cir. 1987) .................................................................. 30

iv

*Nelson v. EG&G Energy Measurements Grp., Inc.*,
   37 F.3d 1384 (9th Cir. 1994) ................................................................. 18

*O'Connor v. Uber Techs., Inc.*,
   No. C-13-3826 EMC, 2014 WL 1760314 (N.D. Cal. May 2, 2014) ........................ 6

*Oldoerp v. Wells Fargo & Co. Long Term Disab. Plan*,
   No. C 08-05278 RS, 2013 WL 6000587 (N.D. Cal. Nov. 12, 2013) ...................... 10

*Opeta v. Nw. Airlines Pension Plan for Contract Emps.*,
   484 F.3d 1211 (9th Cir. 2007) ............................................................. 10

*Pannebecker v. Liberty Life Assurance Co. of Bos.*,
   542 F.3d 1213 (9th Cir. 2008) .............................................................. 7

*Rivera v. Benefit Tr. Life Ins. Co.*,
   921 F.2d 692 (7th Cir. 1991) ............................................................. 19

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*,
   217 F.3d 8 (1st Cir. 2000) ................................................................ 23

*Saffle v. Sierra Pac. Power Co. Barg. Unit Long Term Disab. Income Plan*,
   85 F.3d 455 (9th Cir. 1996) ............................................................. 7, 8

*Schuman v. Microchip Tech. Inc.*,
   302 F. Supp. 3d 1101 (N.D. Cal. 2018) .................................................... 24

*Scothorn v. Conn. Gen. Life Ins. Co.*,
   No. C 95-20437 JW, 1996 WL 341110 (N.D. Cal. June 13, 1996) ......................... 10

*Sheet Metal Workers Nat'l Health Fund v. Cunningham*,
   No. 3:10-0695, 2011 WL 1257822 (M.D. Tenn. Apr. 4, 2011), report and recommendation
   adopted, No. 3:10-0695, 2011 WL 1740189 (M.D. Tenn. May 5, 2011) ................... 27

*Thompson v. Enomoto*,
   915 F.2d 1383 (9th Cir. 1990) ........................................................... 28

*Triple Five of Minn., Inc. v. Simon*,
   No. Civ. 99-1894 (PAM/JGL), 2003 WL 22859834 (D. Minn. Dec. 1, 2003) ............... 29

*United Here Health v. Tinoco's Kitchen, LLC*,
   No. 2:11-CV-02025-MMD-GWF, 2012 WL 5511639 (D. Nev. Nov. 13, 2012) ............. 24, 26

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) ....................................................................... 3

*Wang v. Chinese Daily News, Inc.*,
   623 F.3d 743 (9th Cir. 2010), *judgment vacated on other grounds*, 132 S. Ct. 74 (2011) ......... 6

*Wheaton Coll. v. Burwell*,
   50 F. Supp. 3d 939 (N.D. Ill. 2014) ............................................................... 23

*Wooten v. Prudential Ins. Co. of Am.*,
   No. C 03-2558 MJJ, 2004 WL 2125853 (N.D. Cal. Sept. 20, 2004)........................ 10

*Z.D. ex rel. J.D. v. Grp. Health Coop.*,
   No. C11-1119RSL, 2012 WL 5033422 (W.D. Wash. Oct. 17, 2012).................................. 6, 7

**Statutes**

28 U.S.C. § 1961 ............................................................................................................ 19

29 U.S.C. § 1001(a) ....................................................................................................... 27

29 U.S.C. § 1001(b) ................................................................................................... 3, 27

29 U.S.C. § 1104(a)(1)(A) ............................................................................................... 4

29 U.S.C. § 1104(a)(1)(B) ............................................................................................... 4

29 U.S.C. § 1104(a)(1)(D) ............................................................................................... 4

29 U.S.C. § 1109(a) .................................................................................................... 3, 28

29 U.S.C. § 1132(a)(1) ..................................................................................................... 8

29 U.S.C. § 1132(a)(1)(B) ....................................................................................... passim

29 U.S.C. § 1132(a)(3) ..................................................................................... 2, 5, 10, 22

29 U.S.C. § 1132(a)(3)(A) .................................................................................... 1, 2, 22

29 U.S.C. § 1132(a)(3)(B) ....................................................................................... passim

29 U.S.C. § 1132(g) .......................................................................................................... 5

29 U.S.C. § 1140 ............................................................................................................. 15

29 U.S.C. § 1185a(a)(3)(A)(ii) ...................................................................................... 16

**Other Authorities**

3 A. Scott, Law of Trusts § 199 (1967) ........................................................................... 2

Restatement (Third) of Trusts § 37 (2003) ................................................................... 28

Restatement (Third) of Trusts § 95 (2003) ..................................................................... 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Rules**

Fed. R. Civ. P. 23(d) ............................................................................................... 9

Fed. R. Civ. P. 23(d)(1)(B) ...................................................................................... 6

Fed. R. Civ. P. 53(a)(1)(C) .................................................................................... 28

Fed. R. Civ. P. 53(b) ............................................................................................. 29

**Regulations**

29 C.F.R. § 2560.503-1 .......................................................................... 9, 17, 18, 20

29 C.F.R. § 2590.712 ............................................................................................ 16

## I.   INTRODUCTION

In its February 28, 2019, Findings of Fact and Conclusions of Law, *Wit* ECF No. 413 ("FFCL"), the Court held Defendant United Behavioral Health ("UBH") liable to a class of more than 50,000 UBH insureds on all of the ERISA counts asserted against it for breach of fiduciary duty and improper denial of benefits under 29 U.S.C. §§ 1132(a)(1)(B), (a)(3)(A), and (a)(3)(B). The Court's findings show that UBH's violations were pervasive, brazen and intentional. The Court found that UBH was driven by its own financial interests—not the interests of plan participants and beneficiaries, as required of an ERISA fiduciary. At the very moment the class members were at their most vulnerable—seeking assistance from their fiduciary to obtain covered treatment that their provider recommended for their mental health condition or substance use disorder—UBH applied its own Level of Care Guidelines and Coverage Determination Guidelines ("Guidelines"), which were much more restrictive than the generally accepted standards of care, to their claims for coverage. UBH then used its self-serving Guidelines to deny the class members' claims in order to save itself and its plan-sponsor customers money.

ERISA's remedial regime was explicitly designed to give courts a broad array of legal and equitable tools to remedy this type of broad-based dereliction of fiduciary duty. The Court should fully avail itself of those remedial options. It should adopt the remedies advocated herein and, if necessary, order any other relief that the Court deems just and proper.[1]

## II.   THE COURT'S BROAD AUTHORITY TO REMEDY UBH'S ERISA VIOLATIONS

"Where there has been a breach of fiduciary duty, ERISA grants to the courts broad authority to fashion remedies for redressing the interests of participants and beneficiaries." *Donovan v. Mazzola*, 716 F.2d 1226, 1235 (9th Cir. 1983) ("*Donovan I*") (citing *Eaves v. Penn*,

---

[1] As directed by the Court, Plaintiffs attempted to meet and confer with UBH to determine whether UBH would consent to any of the relief Plaintiffs propose. Plaintiffs sent a preliminary draft of their proposed order to UBH on Friday, April 5, 2019, and the parties conferred by telephone about remedies on Monday, April 12, 2019. UBH's counsel declined to consent to any remedies at that time, even in theory, and also declined to propose any alternative remedies. Counsel for UBH stated that they would follow up with Plaintiffs after conferring with their client. Plaintiffs have received no further communications from UBH relating to remedies.

587 F.2d 453, 462 (10th Cir. 1978) & *Marshall v. Snyder*, 572 F.2d 894, 901 (2d Cir. 1978)). Guided by the "[t]raditional trust law" roots of ERISA, the Court has a "duty 'to enforce the remedy which is most advantageous to the participants and most conducive to effectuating the purposes of the trust.'" *Donovan I*, 716 F.2d at 1235 (quoting *Eaves*, 587 F.2d at 462). "[A] fundamental concept of trust law is that courts 'will give to the beneficiaries of a trust such remedies as are necessary for the protection of their interests.'" *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 157 (1985) (Brennan, J., concurring in the judgment) (citing 3 A. Scott, Law of Trusts § 199, p. 1638 (1967)). The "ultimate consideration" in ordering remedies for violations of ERISA is thus how to "best effectuate the underlying purposes of ERISA – enforcement of strict fiduciary standards of care in the administration of all aspects of pension plans and promotion of the best interests of participants and beneficiaries." *Id.* at 158.

ERISA's "'panoply of remedial devices' for participants and beneficiaries of benefit plans," *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989) (quoting *Russell*, 473 U.S. at 146), includes, among other things:

- Clarification/declaration of rights: to "clarify [their] rights to future benefits under the terms of the plan[s]," 29 U.S.C. § 1132(a)(1)(B)[2];

- Enforcement of rights: to "enforce [class members'] rights under the terms of the plan[s]," *id.*;

- Recovery of benefits: to grant class members "recover[y] [of] benefits due to [them] under the terms of [their] plan[s]," *id.*;

- Injunctive relief: to "enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan[s]," *id.* § 1132(a)(3)(A);

- Other equitable relief to redress violations: to "obtain other appropriate equitable relief . . . to redress such violations," *id.* § 1132(a)(3)(B), including "removal of such

---

[2] As set forth in greater detail below, even remedies that are expressly authorized by ERISA § 1132(a)(1)(B) are also authorized by section (a)(3)'s grant of authority to provide injunctive and equitable relief; citation of only subsection (a)(1)(B) in this list does not suggest that that is the only source of the Court's authority to grant each of these forms of relief.

fiduciary," *id.* § 1109(a); and

- Other equitable relief to enforce ERISA and the plans: to "obtain other appropriate equitable relief . . . to enforce any provisions of [ERISA] or the terms of the plan[s]," *id.* § 1132(a)(3)(B).

These forms of relief are broad and flexible. ERISA was enacted because Congress was concerned that employer-sponsored benefit plans "were being corruptly or ineptly mismanaged." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 264 (1993) (White, J., concurring). The "policy of [the statute]" was to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by not only "establishing standards of conduct, responsibility, and obligation for fiduciaries" of such plans, but also by "providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b).

The breadth and flexibility of ERISA's remedial provisions also reflect their genesis in trust law. *Donovan I*, 716 F.2d at 1235 (quoting *Eaves*, 587 F.2d at 462). ERISA "typically treats [a plan fiduciary] as a trustee" and a plan "as a trust." *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011). "With the exception of the relief now provided by § [1132](a)(1)(B), the remedies available to [courts of equity] were traditionally considered equitable remedies." *Id.* at 440. "Equity eschews mechanical rules; it depends on flexibility." *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946). To determine whether a particular remedy was "'***typically*** available in equity' during the days of the divided bench," *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, -- U.S. --, 136 S. Ct. 651, 657 (2016) (quoting *Mertens*, 508 U.S. at 256), courts "turn to standard treatises on equity, which establish the 'basic contours' of what equitable relief was typically available" in those courts. *Id.* (quoting *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 217 (2002)). It bears emphasis, however, that traditional trust law, as incorporated into ERISA, provides only the ***minimum*** forms of relief available for breaches of fiduciary duty. "ERISA's standards and procedural protections partly reflect a congressional determination that the common law of trusts did not offer [beneficiaries] completely satisfactory protection." *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996) (citing legislative history).

As the Court found, every class member was entitled to have UBH, their fiduciary,

3

> "discharge [its] duties with respect to [their] plan[s] solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; . . . and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]."

FFCL at 99 (quoting 29 U.S.C. § 1104(a)(1)(A), (B) & (D)); *see also id.* at 100 (finding that UBH owed those fiduciary duties to the class members). When UBH "adopt[ed] and applie[d] its Guidelines to coverage determinations, UBH [was] required to act in a manner . . . consistent with the fiduciary duties set forth above, that is, the duty of loyalty, the duty of due care and the duty to comply with plan terms." *Id.* at 100.

As the Court also found, every class member was a victim of UBH's breaches of those duties. As to Plaintiffs' breach of fiduciary duty claim, the Court found that the class members were each denied "their right to fair adjudication of their claims for coverage based on Guidelines that were developed solely for their benefit." FFCL at 104. "UBH has breached its fiduciary duty by violating its duty of loyalty, its duty of due care, and its duty to comply with plan terms by adopting Guidelines that are unreasonable and do not reflect generally accepted standards of care." *Id.* at 104. As to Plaintiffs' improper denial of benefits claim, the Court found that every class member's plan conditioned coverage on the services being consistent with generally accepted standards of care and/or standards mandated by state law, which UBH interpreted and applied through its Guidelines. *Id.* at 25 & 105-06. Its Guidelines were "unreasonable and an abuse of discretion because they were more restrictive than generally accepted standards of care" and, for members of the State Mandate Class, than the standards imposed by the laws of Illinois, Connecticut, Rhode Island and Texas. FFCL at 106. By denying the class members' requests for coverage based, in whole or in part on those Guidelines, therefore, UBH violated every class member's rights under their plans and ERISA. *Id.*

As discussed further below, the class is entitled to significant remedies for this

1   misconduct, including: declaratory relief stating, among other things, that UBH's Guidelines

2   violated the terms of the class members' plans and clarifying the class members' rights under the

3   plan terms; an order remanding UBH's wrongful determinations for reprocessing under

4   standards that are consistent with generally accepted standards of care; injunctive relief designed

5   to prevent UBH from harming the class members in the same way in the future; and appointment

6   of a Special Master to monitor UBH's reprocessing of claims and compliance with the other

7   remedies ordered by the Court. Each of these remedies is both appropriate and necessary to

8   provide adequate relief to the class.[3]

9   **III.   DECLARATORY RELIEF**

10          As set forth in the accompanying Proposed Order, the Court's core liability findings,

11  already set forth in the Court's Findings of Fact and Conclusions of Law, should be issued as

12  Declaratory Judgments by the Court. *See* Proposed Order at § I.

13          ERISA expressly entitles plaintiffs who establish liability to a declaratory judgment.

14  Declaratory relief is authorized not only by subsection (a)(1)(B) itself, 29 U.S.C. § 1132(a)(1)(B)

15  (entitling participants and beneficiaries to bring actions to "enforce" plan terms and to "clarify

16  [their] rights to future benefits under the terms of the plan[s]"), but also by the principles of

17  equity underlying ERISA's remedial provisions. "[A] declaratory judgment action to enforce [an

18  ERISA] plan as it applies to [a plaintiff's] claim for benefits" is "an equitable claim seeking

19  remedies typically available in equity and therefore available under § [1132](a)(3)." *Dakotas &*

20  *W. Minn. Elec. Indus. Health & Welfare Fund v. First Agency, Inc.*, 865 F.3d 1098, 1103, 1104

21  (8th Cir. 2017). The availability of such relief under ERISA is not only "consistent with the plain

22  language of § [1132](a)(3)," but also is confirmed by the fact that it would be "anomal[ous]" to

23

24  [3] Plaintiffs also intend to seek an award of attorneys' fees and expenses pursuant to § 1132(g), as
25  well as service awards to the Named Plaintiffs. As the Court directed, however, Plaintiffs will
    submit their fee application at a later juncture. Plaintiffs' Proposed Order calls for the parties to
26  submit a briefing schedule for the fee application and request for service awards within 14 days
    after the Court enters its remedies order. *See* Proposed Order at § VII.
27  In addition, Plaintiffs reserve the right to appeal the Court's dismissal at summary judgment of
28  their class-wide claim for a surcharge.

1    "interpret[] ERISA so as to leave those Congress set out to protect—the participants in ERISA-

2    governed plans and their beneficiaries—with less protection than they enjoyed before ERISA

3    was enacted." *Id.* (internal quotation marks and citation omitted); *see also, e.g.*, *Z.D. ex rel. J.D.*

4    *v. Grp. Health Coop.*, No. C11-1119RSL, 2012 WL 5033422, at *8 (W.D. Wash. Oct. 17, 2012)

5    (issuing declaratory judgment that the ERISA defendant had breached its fiduciary duties

6    including by providing erroneous coverage information to its members); Restatement (Third) of

7    Trusts § 95 cmt. c (2003) (providing that in lieu of surcharge, "alternative remedies" for a

8    trustee's breach of fiduciary duties includes "instructing the trustee as may be necessary

9    regarding the terms of the trust or the powers and duties of the trusteeship").

10   **IV.    NOTICE TO THE CLASS MEMBERS**

11          The Court has discretion under Rule 23 to order appropriate notice to the class of "any

12   step in the action," in order "to protect class members and fairly conduct the action." Fed. R. Civ.

13   P. 23(d)(1)(B).[4] *See also, e.g.*, *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 755 (9th Cir.

14   2010), *judgment vacated on other grounds*, 132 S. Ct. 74 (2011) (Rule 23(d) "gives district

15   courts discretionary authority . . . to exercise control over a class action"); *O'Connor v. Uber*

16   *Techs., Inc.*, No. C-13-3826 EMC, 2014 WL 1760314, at *3 (N.D. Cal. May 2, 2014) ("[T]he

17   purpose of Rule 23(d)'s conferral of authority is not only to protect class members in particular

18   but to safeguard generally the administering of justice and the integrity of the class certification

19   process."). The Court should exercise its discretion to direct the Class Administrator, at UBH's

20   expense, to give notice to the class of the Court's findings on UBH's liability, as well as any

21   remedies the Court may award to the class members and any actions the class members need to

22   take. Such notice is essential to ensure that class members are informed about what happened in

23   the case, what UBH did wrong, and what the Court decided, and to afford class members the

24

25   [4] The Court previously directed Plaintiffs to notify all class members of the pendency of this
     action and to inform class members of the procedures to follow should they wish to opt out of the
26   action. *See Wit* ECF No. 236 (Stipulation and Order re Class Notice); *Wit* ECF No. 269
     (Stipulation and Order Regarding Class Notice Deadline); *Wit* ECF No. 281 (Order Regarding
27   Supplemental Class Notice). Pursuant to the Court's orders, notices were ultimately sent to more
     than 65,000 class members. Only 155 of those individuals opted out of the class action.
28

maximum possible opportunity to avail themselves of the remedies the Court awards them, particularly a remand for reprocessing. The need for a notice will be particularly pronounced if, as Plaintiffs request, the Court orders that the reprocessing remedy include an opportunity for class members to complete the administrative record with respect to their requests for benefits. *See* § V(A), *infra*. Likewise, the prospective injunctive relief Plaintiffs request, *see* § VI, *infra*, would lose much of its effectiveness if the class members were not made aware of their right to have their future benefits claims adjudicated under appropriate standards. A notice will also give class members an opportunity to consider whether they should take other steps appropriate to their individual circumstances (*e.g.*, filing individual legal claims, if any, that were not resolved in this litigation; bringing UBH's misconduct to the attention of their union or employer plan sponsor; contacting their legislators; and so forth).

Accordingly, Plaintiffs request that the Court's order on remedies require the parties to confer and to submit, within 14 days after entry of the order, a joint filing with the proposed form(s) of notice, which identifies areas of disagreement, if any, as to the content of the notice. *See, e.g.*, *Z.D.*, 2012 WL 5033422, at *1 (ordering Defendant to notify the class of a particular ruling and directing the parties to submit a joint filing on the notice content).

## V.    REMAND FOR REPROCESSING

It is well-settled that "remand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination." *Saffle v. Sierra Pac. Power Co. Barg. Unit Long Term Disab. Income Plan*, 85 F.3d 455, 461 (9th Cir. 1996); *see also id.* (explaining that "apply[ing] the correct standard to the participant's claim" is a function "reserved to the Plan administrator," not the court) (quotation omitted); *see also Pannebecker v. Liberty Life Assurance Co. of Bos.*, 542 F.3d 1213, 1221 (9th Cir. 2008) ("Where an administrator's initial denial of benefits is premised on a failure to apply plan provisions properly, [a court should] remand to the administrator to apply the terms correctly in the first

instance.").[5] In this case, the Court has found that "[o]ne condition of coverage under each class member's plan was that the services for which coverage was requested are consistent with generally accepted standards of care and/or the standards mandated by state law"; that "[i]n applying its Guidelines to class members' requests for coverage, UBH was interpreting the terms of their Plans"; and that "UBH's Guidelines were unreasonable and an abuse of discretion because they were more restrictive than generally accepted standards of care." FFCL at 105-106. Having found that UBH applied an overly restrictive standard when it denied the class members' requests for benefits, the correct course is for the Court to remand the class members' benefit determinations to UBH for reprocessing according to the proper standard.

Further, the Court can, and should, lay out with specificity the procedures UBH is to follow on remand, including substantive protections for the class members, as discussed below. *See, e.g.*, *Lancaster v. U.S. Shoe Corp.*, 934 F. Supp. 1137, 1170 (N.D. Cal. 1996) (remanding to Benefit Committee to determine benefits owed "pursuant to the specific instructions we will give in the concluding section of this opinion and order."). While remand orders sometimes presume that the administrator will act in good faith in implementing the court's reasoning,[6] UBH is not entitled to such a presumption. The Court has found that—for years—UBH knowingly breached

---

[5] Although a reprocessing order is akin to a form of retrospective injunctive relief, courts do not require plaintiffs to establish the four factors traditionally required for an injunction before ordering remand. *See, e.g.*, *Meidl v. Aetna, Inc.*, 346 F. Supp. 3d 223, 242 (D. Conn. 2018) (rejecting defendant's argument that the four factors were required for reprocessing and noting that defendant did "not cite to a single case in which a court relied on [the] four-factor test for injunctive relief when determining whether to issue a reprocessing order under section 1132(a)(1)" and that "[t]he court's own independent searches have similarly failed to identify any such cases."). Applying the four-factor test to a request for remand would ignore the reason courts remand in the first place: because, when a plan invests its administrator with discretion to make a benefit determination, "the plan has put the locus for decision in the plan administrator, not in the courts," which means that the courts should not "substitute [their] judgment for the administrator's" in the first instance. *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004); *see also Saffle*, 85 F.3d at 460 (when additional factual findings are required in order to make a determination as to eligibility for benefits, "[i]t should be up to the administrator, not the courts, to make that call in the first instance.").

[6] *See, e.g.*, *Duarte v. Aetna Life Ins. Co.*, No. SACV 13-00492-JLS (RNBx), 2014 WL 1672855, at *11 (C.D. Cal. Apr. 24, 2014) ("The determination of LTD benefits is remanded to Aetna so that it can re-review Plaintiff's medical evidence and determine, in good faith, whether she qualifies for LTD benefits.").

8

its duty of loyalty, its duty of due care, and its duty to comply with plan terms when developing its Guidelines, in part due to its desire to advance its own financial interests. *See* FFCL at 103-04; *see also id.* at 88-97. The Court also found that UBH intentionally misled regulators concerning how it was processing claims, *see, e.g.*, FFCL at 86, and, significantly, the Court even concluded that UBH's own witnesses were deceptive during the trial. *See* FFCL at 13-18. In light of those findings, UBH cannot simply be trusted to carry out the reprocessing remedy solely in the interests of the class members. Even if UBH's good faith were not in doubt, setting forth uniform instructions for UBH to follow on remand would serve both ERISA's interest in ensuring that plan terms are "applied consistently with respect to similarly situated claimants," 29 C.F.R. § 2560.503-1(b)(5), and the interest in judicial economy reflected in the Rule 23 class action mechanism. *Cf.*, *e.g.*, Fed. R. Civ. P. 23(d) (court has discretion to issue orders to "determine the course of proceedings").

As set forth in further detail below, Plaintiffs request that the Court's remand order: (a) provide for completion of the class members' administrative records; (b) specify the criteria to be applied on remand; (c) enumerate additional protections for the class members on remand; (d) specify certain procedures to be followed when UBH's reprocessing determination is complete; (e) expressly require the payment of pre- and post-judgment interest on any benefits to which a class member is entitled after reprocessing is complete; (f) require UBH to certify its compliance with, and report to the Court on, the results of the reprocessing procedures; and (g) set interim and final deadlines to ensure that reprocessing proceeds expeditiously. *See* Proposed Order at §§ III.A-F, VI. The Court also should appoint a Special Master to monitor and report on UBH's compliance with this Court's remand order, among other duties. *See id.* at § V; *see also* § VII, *infra*. As explained below, each part of the proposed remand order is essential to providing adequate relief for UBH's fiduciary breaches and wrongful denials of the class members' requests for coverage. *See, e.g.*, *Donovan I*, 716 F.2d at 1235 ("Courts also have a duty 'to enforce the remedy which is most advantageous to the participants and most conducive

1    to effectuating the purposes of the trust.'").[7]

2         **A.    Completion of the Administrative Record.**

3         The Court's remand order should provide the class members with an opportunity to

4    complete the administrative record with respect to their requests for coverage. *See, e.g.*, *Henry v.*

5    *Home Ins. Co.*, 907 F. Supp. 1392, 1399 n.8 (C.D. Cal. 1995) (ordering that because "the present

6    administrative record was made under a misapprehension of the applicable Plan provisions,"

7    plaintiff "should be given the opportunity to supplement the record" upon remand); *Duarte*, 2014

8    WL 1672855, at *10 (directing administrator to support its "detailed findings" on remand with

9    "appropriate medical evidence including . . . a more recent MRI, and any other clinical tests

10   Aetna deems appropriate"); *Scothorn v. Conn. Gen. Life Ins. Co.*, No. C 95-20437 JW, 1996 WL

11   341110, at *4 (N.D. Cal. June 13, 1996) (remanding to administrator "for an initial factual

12   determination based on a record with additional vocational evidence"); *Wooten v. Prudential Ins.*

13   *Co. of Am.*, No. C 03-2558 MJJ, 2004 WL 2125853, at *6 (N.D. Cal. Sept. 20, 2004) ("A district

14   court may remand the case back to the Plan Administrator for a factual determination or a fuller

15   development of the record."); *cf. also*, *e.g.*, *Brown v. Unum Life Ins. Co. of Am.*, 356 F. Supp. 3d

16   949, 963 (C.D. Cal. 2019) (declining to strike additional evidence because it was "relevant to

17   issues on remand" even though not considered by the Court on *de novo* review).[8]

18   ───────────────

     [7] Thus, if any aspect of the requested remand remedy is not available under ERISA section
19   1132(a)(1)(B), then that statutory provision does not provide an adequate remedy, and the Court
     must turn to section 1132(a)(3). There is no question that the Court has the equitable authority
20   under section 1132(a)(3) to order each part of the proposed remand remedy.

21   [8] Even courts engaged in *de novo* review of adverse benefit determinations—which are generally
     limited to the administrative record that was before the administrator at the time of its
22   determination—consider additional evidence when necessary. *See, e.g.*, *Mongeluzo v. Baxter*
     *Travenol Long Term Disab. Benefit Plan*, 46 F.3d 938, 943 (9th Cir. 1995); *see also Oldoerp v.*
23   *Wells Fargo & Co. Long Term Disab. Plan*, No. C 08-05278 RS, 2013 WL 6000587, at *1 (N.D.
     Cal. Nov. 12, 2013) (setting forth "non-exhaustive list" of circumstances warranting admission
24   of extrinsic evidence, including "claims that require consideration of complex medical
     questions") (citing *Opeta v. Nw. Airlines Pension Plan for Contract Emps.*, 484 F.3d 1211, 1217
25   (9th Cir. 2007)). In *Mongeluzo*, for example, the Ninth Circuit found that the District Court
     should have accepted new evidence offered by the plaintiff, because the plan administrator had
26   made its determination under a misconception as to the meaning of a key plan term. 46 F.3d at
     944. After the misconception was corrected, the District Court needed the new evidence in order
27   to conduct an adequate *de novo* review. *Id.* Likewise, here, UBH applied overly narrow criteria
     to its benefit decisions. Now that the Court has corrected UBH's "misconception" of generally
28

                                          10
                                                    PLAINTIFFS' OPENING REMEDIES BRIEF
                                              CASE NOS. 3:14-CV-02346-JCS; 3:14-CV-05337-JCS

1    The current administrative records for many, if not all, of the class members' insurance

2    claims are incomplete. First, the current administrative record is likely to be missing relevant

3    medical records or clinical information because UBH made the present administrative record

4    "under a misapprehension" of what generally accepted standards of care required. As the Court

5    found, UBH's Guidelines in each year were pervasively flawed and focused excessively on acute

6    criteria rather than effective treatment of patients' underlying and co-occurring conditions. FFCL

7    at 42, 55. One of the many ways the Court found UBH's Guidelines fell short of generally

8    accepted standards of care was their failure to premise level-of-care decisions on a

9    multidimensional assessment of each patient, even while ostensibly instructing clinicians to

10   collect a wide array of information. *Id.* at 78. The Court also found that UBH's Guidelines failed

11   to address "in any meaningful way" the unique needs of children and adolescents. FFCL at 68.

12   These findings give rise to a significant risk that UBH may not have collected all of the

13   necessary information when it first reviewed the class members' coverage requests.

14         In addition, UBH's records show that the vast majority of the class members' requests for

15   coverage were denied on either a pre-service basis, meaning that coverage was denied before any

16   services were received, or on a concurrent basis, meaning that coverage was denied after

17   treatment began but before it was complete. *See* Trial Ex. 255 (columns labeled "Denial Review

18   Type Desc" and "Deriv_Rev_Typ_Desc"). Some of those class members went on to obtain the

19   requested treatment at their own expense, but just as it would have been futile for them to appeal

20   the earlier denial because UBH would have simply resolved those appeals against them "based

21   on UBH's application of faulty Guidelines in making benefit determinations," FFCL at 97 ¶ 191,

22   it would also have been futile for them to submit post-service claims because UBH had already

23   denied coverage for those services. In those instances, the record as to the amount and cost of

24   services the patient actually received, as well as the clinical evidence relating to such services, is

25   incomplete—but only because UBH's wrongful denial made it futile to submit such information

26   at the time.

27   ─────────────────────────────────────────────

accepted standards of care, UBH may need additional evidence in order to fully and fairly

28   evaluate the benefit requests on remand.

1    In order to ensure that each class member's administrative record is sufficient to

2    determine on remand whether he or she was entitled to benefits under proper Guidelines,

3    Plaintiffs request that the remand order provide for an opportunity for the class members to

4    submit additional information during reprocessing, including but not limited to: (i) medical

5    records and/or other clinical information relevant to the claim for coverage; and (ii) records

6    substantiating services received at the requested level of care after a pre-service or concurrent

7    denial, including any bills relating to such services.[9] *See* Proposed Order at § III.A. If a class

8    member's administrative record remains incomplete after the close of this period, such that UBH

9    is unable to make specific findings applying the Court-approved criteria, the Court should

10   preclude UBH from denying the claim again unless UBH has first made a good-faith effort to

11   contact the provider listed on the relevant request for coverage and attempted to collect the

12   additional necessary clinical information. *Id.* [10] UBH should share the burden of completing the

13   record with the class members, lest UBH be able to unfairly benefit from the fact that its own

14   pervasively flawed criteria prevented it from collecting the necessary information the first time

15   around.

16        **B.        Criteria to be Applied Upon Remand.**

17        On remand, UBH must be bound to evaluate the class members' requests for coverage

18   according to criteria that are consistent with the Court's Findings of Fact and Conclusions of

19   Law.[11] Specifically, UBH will have to use criteria that comport with generally accepted

---

20   [9] Plaintiffs also contemplate that class members would have the option of authorizing their
21   providers to submit the information on the class member's behalf. In practice, most requests for
     coverage are submitted to UBH in the first instance by the provider, not the patient, and the
22   providers normally have ready access to the most relevant medical information.

23   [10] Plaintiffs' proposed order contemplates that the Special Master will determine what steps are
     sufficient to constitute a "good faith effort" to obtain information from the class member's
24   provider. *See* Proposed Order at § III.A.3. At a minimum, UBH should contact the provider by
     phone and in writing.

25   [11] *See, e.g.*, *Cherene v. First Am. Fin. Corp. Long-Term Disab. Plan*, 303 F. Supp. 2d 1030, 1041
26   (N.D. Cal. 2004) (remanding to administrator "for a determination ***consistent with the principles
     set forth in this order***") (emphasis added); *Carrier v. Aetna Life Ins. Co.*, 116 F. Supp. 3d 1067,
27   1084 (C.D. Cal. 2015) (remanding to administrator to determine whether plaintiff was disabled
     "under the 'any reasonable occupation' standard, ***consistent with this opinion***") (emphasis
28   added).

standards of care, as required by the class members' plans. *See* FFCL at 105-06; *see also id.* at 27-88. The Court has already made factual findings, based upon expert testimony offered by *both sides*, that the following sets of level-of-care criteria reflect generally accepted standards of care:

- The American Society of Addiction Medicine Criteria ("ASAM Criteria"), admitted as Trial Exhibit 662.[12] The Court found that the ASAM Criteria "are the most widely accepted articulation of the generally accepted standards of care for how to conduct a comprehensive multidimensional assessment of a patient with substance related disorder, translate that into patient treatment needs and match those needs to the appropriate level of care." FFCL at 28.

- The Level of Care Utilization System ("LOCUS"), admitted as Trial Exhibit 653.[13] The Court found that the LOCUS was developed to "articulate generally accepted standards for level of care placement for mental health treatment of adults." FFCL at 29.

- The Child and Adolescent Service Intensity Instrument ("CASII"), admitted as Trial Exhibit 645.[14] The Court found that CASII reflects "generally accepted standards of care for determining the most appropriate level of care for children and adolescents." FFCL at 29.

Accordingly, the Court should order UBH to use those criteria when re-evaluating the class members' requests for coverage on remand.[15] *See* Proposed Order at § III.B.

In addition, with respect to the ASAM Criteria in particular, the Court's order should

---

[12] Although at trial, the parties also relied on an earlier version of the ASAM Criteria, it makes sense to order UBH to use only the later version for reprocessing purposes.

[13] A more recent version of the LOCUS was published in December 2016. Plaintiffs would not object to UBH using the more recent version of LOCUS.

[14] The Court also found that the precursor to CASII, the Child and Adolescent Level of Care Utilization System ("CALOCUS"), reflects generally accepted standards of care. FFCL at 27. However, since CASII was developed as a refinement of CALOCUS, it is appropriate to direct UBH to use only the later instrument.

[15] Because the Court found the defects in UBH's internally-developed Guidelines to be "pervasive," FFCL at 42, those Guidelines cannot be used for reprocessing. Rewriting UBH's Guidelines to make them consistent with generally accepted standards would be an unnecessary waste of effort, given that the Court has found, based upon a fully-developed evidentiary record, that there are criteria already in existence that meet those standards. Attempting to reform the Guidelines would also unnecessarily extend the remedies phase of this case, even in a best-case scenario. More likely than not, the parties would not agree on exactly how the Guidelines should be revised to give effect to the Court's ruling, potentially necessitating an additional evidentiary hearing at which experts would have to opine on the parties' alternative suggestions. The Court can and should avoid the needless waste of the parties' and the Court's resources by ordering UBH to use the existing third-party criteria.

13

specify that, when making its re-determinations as to requests for coverage for residential

treatment of a substance use disorder, UBH must evaluate whether the class member qualified

for coverage for treatment at *any* of the four sub-levels of care defined in the ASAM Criteria

(3.1, 3.3, 3.5, and 3.7) and if so, UBH must approve coverage. *See, e.g.*, FFCL at 31-32

(describing the sub-levels of residential treatment as differentiated by the ASAM Criteria). As

the Court found, UBH's Guidelines "simply do not provide criteria for coverage of services" at

ASAM levels 3.1, 3.3 and 3.5. FFCL at 80; *id*. at 81 (noting UBH's concession in its post-trial

briefs that its Guidelines did *not* provide for coverage at ASAM levels 3.1, 3.3 or 3.5 and

rejecting UBH's "hodge-podge of excuses for this omission").[16] As a result of this omission,

whenever UBH evaluated the medical necessity or clinical appropriateness of *any* claim for

residential treatment of substance use disorders, it applied its *only* set of criteria for residential

treatment of substance use disorders—criteria that were so restrictive they only arguably applied

to ASAM level 3.7, and even then fell short of generally accepted standards.[17] The only way to

fully remedy UBH's wrongful denials of these class members' benefit requests is to require UBH

to re-evaluate the requests according to the complete range of service intensities recognized by

generally accepted standards of care (as reflected in the ASAM Criteria).

      **C.**      **Other Protections for Class Members on Remand.**

      The Court's remand order should include additional protections to ensure that the

reprocessing remedy inures to the class members' benefit and that UBH does not misuse the

process to retaliate against class members or further enrich itself at the class's expense. *See*

*generally, e.g.*, *Donovan I*, 716 F.2d at 1235 ("Courts also have a duty 'to enforce the remedy

---

[16] UBH nevertheless misrepresented to Connecticut regulators that its Guidelines *did* apply to ASAM levels 3.1, 3.3, and 3.5, *see* FFCL at 80-81, even while justifying their absence to its own consultant by "incorrectly" claiming that those levels of care are not covered by the plans UBH administers. *See* FFCL at 80 (discussing testimony of UBH witness Dr. Danesh Alam). UBH's history of misrepresentations about whether its Guidelines properly account for the lower levels of residential care further underscores the need for the Court's order to be explicit on this point.

[17] *See generally, e.g.*, FFCL at 78-79 (finding UBH's Guidelines deviate from the generally accepted standards reflected in the ASAM Criteria "in a multitude of ways . . . throughout the Class Period").

1   which is most advantageous to the participants and most conducive to effectuating the purposes

2   of the trust.'").

3          Earlier in this litigation, UBH took the position that, if it were ordered to reprocess the

4   claims at issue in this case, it would then have the option to *reduce* benefits it previously

5   approved for *other* treatment that is not at issue in this case. *See Wit* ECF 189 (Joint Mot. for

6   Approval of Notice Plan and to Amend Class Definitions and Mem. of Points & Authorities in

7   Supp. Thereof) at 11 (lines 7-13) (citing supposed "risk" that if the Court orders remand, "a re-

8   review could result in a *less favorable* benefit decision" including denying coverage for claims

9   for other forms of treatment previously approved by UBH) (emphasis added); *Wit* ECF No. 224

10  (Order re Joint Mot. for Approval of Notice Plan and Amend Class Definitions) at 6 (citing

11  UBH's proposed class notice language warning that reprocessing could result in "a different

12  coverage decision that provides for *fewer benefits* than were previously approved") (emphasis

13  added). At the time, the Court reasoned that the likelihood that "UBH would be permitted to

14  reopen benefits determinations granting coverage as to treatments *other* than the . . . treatment

15  that is the subject of Plaintiffs' claims" was "remote," especially given that UBH could not point

16  to any case in which such a remedy was actually ordered. *See Wit* ECF No. 224 at 7-8. The Court

17  should now make clear that the "remote" possibility is foreclosed, and UBH is not permitted to

18  retaliate against class members in this manner. Allowing such retaliation would be completely

19  inconsistent with ERISA's remedial regime and would perversely encourage fiduciary breaches

20  and wrongful denials. Indeed, it would discourage the assertion of meritorious ERISA claims,

21  such as those here, even though ERISA explicitly prohibits retaliation "for the purpose of

22  interfering with the attainment of any right to which such participant may become entitled under

23  the plan . . . ." 29 U.S.C. § 1140.

24         For similar reasons, the Court's order should make explicit that UBH is precluded from

25  asserting new grounds for denying coverage that it did not assert when it denied the claim. An

26  ERISA plan administrator is prohibited from asserting, in litigation, "a reason for denial of

27  benefits that it had not given during the administrative process." *Harlick v. Blue Shield of Cal.*,

28  686 F.3d 699, 719-20 (9th Cir. 2012). This is because "[a] contrary rule would allow

15

1   claimants . . . to be 'sandbagged' by a rationale the plan administrator adduces only after the suit

2   has commenced." *Id.* at 720. Just as UBH was not permitted to advance new rationales for its

3   denials in this Court, it should not be permitted to do so on remand.  It would be particularly

4   inequitable to permit UBH to come up with new reasons for denial now, years after its original

5   adverse benefit determinations and after the class members have persevered through five years of

6   class-action litigation and proven that the denials were based on fundamentally flawed

7   Guidelines whose development was driven by UBH's own financial interests. If UBH failed to

8   assert some non-clinical rationale the first time around, in effect, it represented to the class

9   member that there ***were*** no such bases to deny coverage. After all, as the Court explained, the

10  first step in UBH's claims administration process is to determine whether there are any non-

11  clinical bases to deny coverage, FFCL at 23, and UBH's denial letters are required to

12  "summarize *all* the reasons for denial." *Id.* at 24. Allowing UBH, on remand, to mask its own

13  breaches of fiduciary duty by raising exclusions or limitations that it failed to assert the first time

14  around would pervert the reprocessing remedy and make it a windfall for UBH, rather than a tool

15  to benefit the class members. *See Donovan I*, 716 F.2d at 1235 (court's duty is "to enforce the

16  remedy which is most advantageous to the participants").[18]

17         For these reasons, the Court's remand order should specify that the remand is limited to

18  the question of whether the services for which coverage was requested, at the requested level of

19  care, were consistent with generally accepted standards of care. *See* Proposed Order at § III.B.[19]

20

21  [18] Such a result would be particularly Kafkaesque if UBH were permitted to assert new denial
    rationales that violate ERISA—for example, by seeking to enforce exclusions or limitations that
22  only apply to behavioral health treatment. *See, e.g.*, 29 U.S.C. § 1185a(a)(3)(A)(ii) (prohibiting,
    *inter alia*, "separate treatment limitations that are applicable only with respect to mental health or
23  substance use disorder benefits"); 29 C.F.R. § 2590.712(c)(4)(ii)(H) ("[r]estrictions based on . . .
    facility type . . . that limit the scope or duration of benefits for services provided under the plan"
24  violate the Parity Act). Yet UBH has suggested in the past that it should be able to enforce
    exactly that type of exclusion. *See, e.g.*, UBH's Post-Trial Brief, ECF No. 400 (Jan. 22, 2018) at
25  42-43 (arguing that UBH might have denied class members' requests for coverage pursuant to
    exclusions of coverage for residential mental health treatment, or for residential treatment not
26  limited to "crisis" services).

27  [19] Courts remanding benefit determinations to the administrator commonly limit the remand to
28  specific issues. *See, e.g.*, *Carrier*, 116 F. Supp. 3d at 1084 (remanding to plan administrator

In addition, the order should explicitly preclude UBH from:

- Re-opening or reversing any prior authorization of benefits to a class member;
- Deducting or offsetting benefits previously paid in connection with other requests for coverage from any amounts owed to a class member after remand; or
- Recouping from any class member any amounts paid to the class member after remand, including by withholding or reducing benefits authorized in connection with any subsequent claim for coverage.

*See* Proposed Order at § III.C.

### D.    Procedures Following Claim Adjudication.

On remand, the Court should direct UBH to make specific and detailed findings to support each claim determination. *See Duarte*, 2014 WL 1672855, at *10 (directing administrator to "support its decision" about disability benefits "with detailed findings . . . supported by appropriate medical evidence"); *see also* 29 C.F.R. 2560.503-1(g). Those findings should include, at a minimum, citations to the specific provisions of the Court-approved criteria on which UBH's determination on remand is based, and to the specific clinical information supporting UBH's application of those criteria.

### 1.    Procedures in the Event of a Denial After Reprocessing.

If, following a full and fair review of all the available information and application of the Court-ordered criteria, UBH continues to believe in good faith that coverage is not available to the member for the services, UBH will issue an adverse benefit determination. The class member will then have a right to appeal the determination, as per the usual procedures under ERISA and the member's plan. *See* Proposed Order at § III.D.1; *see also* 29 C.F.R. §§ 2560.503-1(f)-(h).

As noted above, the Court should also direct UBH to include specific and detailed findings supporting its decision in the written notice of its adverse benefit determination, which will be provided to the class member. *Duarte*, 2014 WL 1672855, at *10; *see also* Proposed Order at § III.D.1. In addition, the notice should provide clear and direct instructions for

---

"only in regard to Plaintiffs' LTD benefits subsequent to August 10, 2013" to determine whether plaintiff met the disability standard enunciated by the court).

appealing the determination, including instructions on how to obtain an external appeal of the

determination. To ensure that any such external reviewer applies the correct standard to the class

member's appeal, the Court should also direct UBH to include a copy of the Court's Findings of

Fact and Conclusions of Law, as well as the Court's Order on Remedies, within the

administrative record for any class member whose request for coverage is denied after remand.

Finally, UBH should notify each such class member of their right to file a new ERISA lawsuit

challenging the new determination after the administrative appeals are exhausted. *See, e.g.*, 29

C.F.R. § 2560.503-1(j)(4).

### 2.  Procedures in the Event of Approval After Reprocessing.

If, following a full and fair review of all the available information and application of the

Court-ordered criteria, UBH determines that coverage existed for the services at issue, UBH will

notify the class member of that determination. Again, as specified above, the Court should direct

UBH to include specific and detailed findings in its notification. *Duarte*, 2014 WL 1672855, at

*10; Proposed Order at § III.D.2.b.

UBH should then be ordered to calculate and pay the benefits to which each such class

member was entitled under their plan, plus pre- and post-judgment interest. *See* Proposed Order

at §§ III.D.2.c; *see also* § V.E, *infra*. For the reasons discussed above, UBH's calculation of

benefits should include all of the services the class member received at the requested level of

care, regardless of whether the class member submitted a post-service claim after UBH denied

coverage. *See* § V.A, *supra*; Proposed Order at § III.D.2.c(i). As also discussed above, when

calculating the benefits, UBH should not be permitted to offset any amounts the class member

was previously paid for services at other levels of care or other forms of treatment. *See* § V.C,

*supra*; Proposed Order at § III.D.2.d.

### E.     Prejudgment Interest.

Class members are entitled to prejudgment interest on any benefit payments awarded to

them following reprocessing. *Nelson v. EG&G Energy Measurements Grp., Inc.*, 37 F.3d 1384,

1391 (9th Cir. 1994) ("[P]re-judgment interest is intended to cover the lost investment potential

of funds to which the plaintiff was entitled, from the time of entitlement to the date of

judgment."); *Anthuis v. Colt Indus. Op. Corp.*, 971 F.2d 999, 1009-10 (3d Cir. 1992) ("[I]n the absence of an explicit congressional directive, the awarding of prejudgment interest under federal law is committed to the trial court's broad discretion.") (citation omitted). Given "[t]he growing recognition of the time value of money, . . . prejudgment interest should be **presumptively** available to victims of federal law violations." *Rivera v. Benefit Tr. Life Ins. Co.*, 921 F.2d 692, 696 (7th Cir. 1991) (emphasis added). "This presumption in favor of prejudgment interest awards is specifically applicable to ERISA cases." *Id.* "To allow [a plan or claims administrator] to retain the interest it earned on funds wrongfully withheld" would not only "be to approve of unjust enrichment" but "would fall short of making the claimant whole because he has been denied the use of money which was his." *Fotta v. Trs. of United Mine Workers of Am., Health & Ret. Fund of 1974*, 165 F.3d 209, 212 (3d Cir. 1998) (alterations, internal quotation marks and citation omitted); *see also id.* at 213 ("[P]ayment for the time value of money, when appropriate, is an implicit term of the underlying contractual obligation. Therefore, an award of interest is an equitable remedy enforcing an ERISA plan provision, albeit an implied one, within the meaning of section [1132](a)(3)(B).").

As for the rate of interest, "[g]enerally, 'the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate.'" *Blankenship v. Liberty Life Assurance Co. of Bos.*, 486 F.3d 620, 628 (9th Cir. 2007) (citations omitted).

###### F.    Certification and Reporting.

Finally, upon completion of the reprocessing procedures described above, the Court should order UBH to certify that it has reprocessed all claims according to the requirements set by the Court. In addition, the Court should direct UBH to report on the outcome of reprocessing by informing the Court, at a minimum, as to: (1) the total number of requests for coverage, by level of care, that were reprocessed; (2) the number of class members, by level of care, whose requests for coverage were denied on remand; (3) the number of class members, by level of care, whose adverse benefit determinations were reversed in whole or in part on remand (including

1    how many were reversed in whole, and how many in part); and (d) the number of class members

2    who received a benefit payment following reprocessing, and the lowest, highest, median, and

3    average amount of the payments, by level of care. *See* Proposed Order at § III.F.

4           **G.      Interim and Final Deadlines.**

5           The Court should set reasonable deadlines by which UBH must complete the

6    reprocessing procedures, to ensure that UBH moves expeditiously to provide relief to the class

7    members. First, Plaintiffs propose that the Court set two deadlines by which UBH must comply

8    with the Court's injunction requiring UBH to train its employees and external consultants on

9    their fiduciary duties and the Court-approved criteria UBH is to use for reprocessing (*see* § VI,

10   *infra*): one for personnel who will make clinical determinations on the claims remanded by the

11   Court, and a second, later deadline, for training all other personnel and making other changes to

12   its business practices. *See* Proposed Order at §§ IV.B.2.a-b & 3.a-b.[20] The Court should also set

13   two deadlines for UBH to complete its reprocessing of particular class members' claims: first, if

14   a class member submits additional information in support of his or her request for coverage,

15   UBH should complete its determination as to that class member's request for coverage within

16   thirty days of receiving that information. *See* Proposed Order at § VI.2(a). In all other cases,

17   UBH should complete its review within thirty days after the deadline for submitting

18   supplemental information.[21] *See id.* at § VI.2(b). These reprocessing deadlines are entirely

19   consistent with the ERISA claims regulation, which requires post-service adverse benefit

20   determinations to be rendered within 30 days. *See* 29 C.F.R. § 2560.503-1(f)(2)(iii)(B). The

21   Court should also specify a final deadline for all reprocessing to be completed; Plaintiffs propose

22   an interval of nine months from the entry of the Court's remedies order, which would allow for

23   sufficient time for class members to supplement the administrative record and for reprocessing to

24

25   [20] Plaintiffs contemplate that the initial period for training personnel who will make reprocessing
     decisions will occur at the same time as the Class Notice is being prepared and sent to the Class
26   members. *See* Proposed Order at § II.

27   [21] Plaintiffs' Proposed Order also contemplates that the Special Master, *see* § VII *infra*, could
     extend the reprocessing deadline in particular cases either upon the request of the class member
28   or, following a showing of good cause, upon UBH's request. *See* Proposed Order at § VI.2.

1   begin only after UBH trains the relevant personnel. *See* Proposed Order at § VI.3. Finally, the

2   Court should set interim deadlines for UBH and/or the Special Master to report to the Court on

3   the progress of reprocessing, as well as a final deadline for UBH to report on the outcome and

4   certify its compliance with the Court's remedies order. *See id.* at § VI.4. Imposing this schedule

5   will ensure that UBH implements the reprocessing remedy expeditiously.

6   **VI.    INJUNCTIVE RELIEF**

7           Plaintiffs also seek injunctive relief designed to protect the rights of the class members,

8   going forward, to have their benefit claims adjudicated fairly by UBH and to attempt to hold

9   UBH to the strict standards ERISA demands of fiduciaries.  In light of the Court's findings that

10  UBH's Guidelines were pervasively defective and thus provided for a "significantly narrower

11  scope of coverage than is consistent with generally accepted standards of care," FFCL at 42 *et*

12  *seq.*, and that the process through which UBH created its Guidelines was tainted by UBH's

13  financial interests, FFCL at 90 *et seq.*, the Court should issue injunctive relief as follows:[22]

14          • Precluding UBH from using the Guidelines the Court found to be pervasively flawed,
              or any Guidelines that include substantively the same flawed criteria, when making
15            coverage determinations about whether services are consistent with generally
              accepted standards, *see* Proposed Order at §§ IV.A.1-2;
16

17          • Requiring UBH to use criteria that do reflect generally accepted standards when
              making such determinations, *see* Proposed Order at §§ IV.B.1;

18          • Requiring UBH to change the business practices the Court found to contribute to the
              conflict of interest that infected UBH's Guideline-development process, *see* Proposed
19            Order at §§ IV.B.2-4;

20          • Requiring UBH to disclose the Court's findings to the class members' plan sponsors
              and named Plan Administrators, as well as to UBH's regulators, *see* Proposed Order
21            at § IV.B.5.

22          These injunctions are essential to adequately remedy the ERISA violations the Court has

23  found, and are expressly authorized by ERISA's remedial provisions. In particular, ERISA

24  section 1132(a)(1)(B) authorizes causes of action by a participant or beneficiary "to enforce his

25  rights under the terms of the plan" as well as to "clarify" those rights. That is precisely the

26  purpose of the injunctive relief set forth above: to ***enforce*** the class members' rights to have

27  _____
    [22] The specific wording of the injunctions Plaintiffs request is included in the cited portions of
28  the Proposed Order.

1    UBH adjudicate their requests for coverage consistent with the terms of their benefit plans and

2    applicable state law and to **clarify** the existence of that right, going forward, in the context of

3    UBH's Guidelines. Further, ERISA section 1132(a)(3) authorizes the Court to "enjoin any act or

4    practice which violates [ERISA] or the terms of the plan" and "to [order] other appropriate

5    equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the

6    terms of the plan." 29 U.S.C. § 1132(a)(3)(A)-(B); *see also Amara*, 563 U.S. at 440 (holding that

7    "affirmative and negative injunctions" were "obviously" within category of remedies

8    "traditionally considered equitable," such that they were available under § 1132(a)(3)).

9         This Court has previously analyzed requests for prospective injunctions in ERISA cases

10   under the traditional four-factor test, namely whether "(1) [the] plaintiff has suffered an

11   irreparable injury; (2) the remedies at law are inadequate to compensate for that injury; (3) the

12   balance of hardships favors an injunction; and (4) the public interest would not be disserved by

13   an injunction." *Bd. of Trs. of Bay Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*,

14   No. 12-cv-05655-JCS, 2014 WL 4383062, at \*3 (N.D. Cal. Sept. 4, 2014) (Spero, J.) (citations

15   omitted); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (stating

16   traditional four-factor test for permanent injunction).[23] Whether to grant permanent injunctive

17   relief "is an act of equitable discretion by the district court, reviewable on appeal for abuse of

18   discretion." *eBay Inc.*, 547 U.S. at 391. The facts of this case easily satisfy each of the four

19   factors.

20        <u>*Irreparable Injury with No Adequate Legal Remedy*</u>.[24] As the Court has found, UBH

21

22   [23] Plaintiffs expressly reserve, and do not waive, the argument that the traditional four-factor test
     for injunctive relief is not applicable to requests for prospective injunctive relief under ERISA
23   sections 1132(a)(1)(B) or (a)(3), particularly in cases where, as here, liability has been
     established following trial on the merits. Because ERISA expressly authorizes prospective
24   injunctions to "enforce" and "clarify" the terms of a plan and to "enjoin any act or practice which
     violates" ERISA or the terms of a plan, where the Court has found both such violations,
25   injunctive relief should naturally follow. Congress did not restrict courts' authority to provide
     injunctive relief to circumstances where a beneficiary can also show, for example, "irreparable
26   injury." In any event, however, because the facts of this case easily satisfy the four-factor
     balancing test, the Court need not reach the question of whether the test is required.
27
     [24] The first two elements "tend to merge" because it is the inadequacy or unavailability of legal
28   remedies that makes the harm irreparable. *See, e.g.*, *Wheaton Coll. v. Burwell*, 50 F. Supp. 3d

injured the class members by denying them their right to fair adjudication of their claims for

coverage based on Guidelines that were consistent with their plans and developed solely for their

benefit. FFCL at 104; *see also Amara*, 563 U.S. at 444 ("[A]ctual harm" in ERISA cases may

"come from the loss of a right protected by ERISA or its trust-law antecedents."). This betrayal

of the class members' trust is not an injury that can be accurately quantified, or even wholly

accounted for, in monetary terms—making it quintessentially "irreparable" harm with no legal

remedy.[25] *See, e.g.*, *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir.

2000) (finding it "settled beyond peradventure that irreparable harm can consist of a substantial

injury that is not accurately measurable or adequately compensable by money damages")

(citation and internal quotation marks omitted); *Wheaton Coll.*, 50 F. Supp. 3d at 952 ("An injury

is 'irreparable' when it is of such a nature that the injured party cannot be adequately

compensated in damages or when damages cannot be measured by any pecuniary standard.").

Far from some formalistic procedural gaffe, UBH's conduct deprived the class members

of the full benefit of their health plans and the protections ERISA guarantees. The Court's

extensive Findings of Fact and Conclusions of Law establish that the "pervasive" flaws in

UBH's Guidelines operated to "significantly narrow[]" the scope of coverage otherwise available

under the class members' plans. FFCL at 42; *see also id.* at 42-82 (detailing the numerous ways

in which UBH's Guidelines were more restrictive than the generally accepted standards of care

required by class members' plans); *id.* at 24 (finding that "each class member's denial was based

on UBH's determination that the member failed to meet the criteria in UBH's Guidelines")

(citing Trial Exs. 894 and 896). Numerous courts have found just this sort of consequence—the

loss or threatened loss of health benefits—to meet the irreparable harm standard. *See, e.g.*, *Bunn

Enters., Inc. v. Ohio Operating Eng'rs Fringe Benefit Programs*, No. 2:13-CV-357, 2013 WL

3147956, at *12 (S.D. Ohio June 19, 2013) ("[C]ourts have repeatedly acknowledged that the

---

939, 952 (N.D. Ill. 2014); *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 914 (1st Cir.
1989) ("The necessary concomitant of irreparable harm is the inadequacy of traditional legal
remedies. The two are flip sides of the same coin . . . .").

[25] In any case, compensatory damages as such are not even available under ERISA's remedial
regime. *See, e.g.*, *McLeod v. Oregon Lithoprint Inc.*, 102 F.3d 376, 378-79 (9th Cir. 1996).

loss of health care benefits—or, in some circumstances, even the imposition of cost-sharing for such benefits—constitutes 'irreparable harm.'") (citing cases); *Meehan v. Gristede's Supermarkets, Inc.*, No. 95-CV-2104 (JG), 1997 WL 1097751, at *3 (E.D.N.Y. Sep.25, 1997) (loss of health insurance benefits may irreparably harm employees and their families); *United Here Health v. Tinoco's Kitchen, LLC*, No. 2:11-CV-02025-MMD-GWF, 2012 WL 5511639, at *7 (D. Nev. Nov. 13, 2012) ("[F]ailure to pay benefits to employees under an obligation in an ERISA plan has been held to constitute irreparable injury due to its non-monetary consequences."); *Schuman v. Microchip Tech. Inc.*, 302 F. Supp. 3d 1101, 1118 (N.D. Cal. 2018) ("[T]he consequences of losing job benefits are not always 'merely monetary,' and can 'carr[y] emotional damages and stress, which cannot be compensated by mere back payment of wages.'") (quotation omitted).

Moreover, the class members remain at risk. If UBH is not enjoined from utilizing self-serving, restrictive coverage criteria, it will almost certainly re-injure the class members the next time they seek coverage for their mental health conditions or substance use disorders. As the Court has found, mental health conditions and substance use disorders tend to be chronic, with flare-ups in symptoms that occur from time to time. *See, e.g.*, FFCL at 33-34 (discussing evidence adduced at trial); *see also* Trial Tr. at 92:7-8 (testimony of Dr. Marc Fishman explaining that substance use disorder "is a chronic disorder with a chronic vulnerability. It's remitting and relaxing. It's waxing and waning."); *id.* at 492:1-9 (testimony of Dr. Eric Plakun discussing mental illnesses and explaining, "except in those relatively rare instances when that's a one-time thing, . . . in the vast majority of instances this pot will keep boiling over unless you turn the flame down underneath it," such that it is "all too familiar" that patients have "chronic ongoing crises that need to be managed"); *id.* at 1230:10-11 (Dr. Thomas Simpatico admitting that "many, if not most, behavioral health conditions are in and of themselves chronic conditions."); *id.* at 1599:24-1600:1 (Dr. Danesh Alam admitting that "[m]ost of what we treat now, whether it's substance use disorders or mental health conditions, they are chronic conditions."). This immutable feature of the class members' conditions makes it highly likely that they will make future claims for behavioral health coverage, and if they are again subjected

24

1   to UBH's pervasively flawed criteria, they will suffer the same injuries—which, again, money

2   alone cannot cure. *See, e.g., Bassett v. Snyder*, 951 F. Supp. 2d 939, 970 (E.D. Mich. 2013)

3   (holding that the "potential risk to the plaintiffs' health resulting from the loss of medical

4   insurance qualifies as irreparable harm," where facts suggested plaintiffs had "chronic conditions

5   that could lead to serious complications if left untreated" and plaintiffs could not afford

6   insurance absent injunctive relief). *See also Girl Scouts of Manitou Council, Inc. v. Girl Scouts

7   of the United States, Inc.*, 549 F.3d 1079, 1089 (7th Cir. 2008) (harm is irreparable "if it cannot

8   be prevented or fully rectified by the final judgment after trial.") (quotation marks omitted).

9          "ERISA imposes a high standard on fiduciaries, and serious misconduct that violates

10   statutory obligations is sufficient grounds for a permanent injunction." *Beck v. Levering*, 947

11   F.2d 639, 641 (2d Cir. 1991) (finding that injunctive relief was justified where the defendants'

12   "violations of ERISA . . . were neither technical nor isolated" because defendants "had done

13   precisely what the statute expressly forbids and in a massive way."). Here, as in *Beck*, UBH has

14   "done precisely what [ERISA] expressly forbids"—by placing its own financial interests ahead

15   of the class members' interests when it administered their plans—and in a "massive way,"

16   issuing more than 65,000 improper denials under its pervasively flawed standards over the

17   course of the six-year Class Period. *See* Trial Ex. 255.  And even after receiving the Court's

18   extensive Findings of Fact and Conclusions of Law, UBH and its corporate parent continue to

19   deny it did anything wrong, stating publicly that the company still intends (somehow) to show

20   that all of the class members "received appropriate care."[26]

21          The only way to protect the class members from being repeatedly subjected to the same

22   irreparable injuries is to impose effective injunctive relief. The injunctions precluding UBH from

23   using its pervasively flawed Guidelines and from re-packaging the same restrictive criteria the

---

[26] *See, e.g.*, Reed Abelson, "Mental Health Treatment Denied to Customers by Giant Insurer's Policies, Judge Rules," New York Times, March 5, 2019, available at https://www.nytimes.com/ 2019/03/05/health/unitedhealth-mental-health-parity.html (last visited May 1, 2019) (reporting that "[i]n the aftermath of the ruling, the company maintained that it had not failed to provide the proper care" and quoting an "emailed statement" from UnitedHealth Group as saying, "We look forward to demonstrating in the next phase of this case how our members received appropriate care.").

25

1    Court invalidated into some other criteria, as well as the injunction requiring UBH to use

2    appropriate criteria, are narrowly tailored to require UBH to comply with the terms of the class

3    members' plans and to specify exactly what criteria will allow it to do so. *See* Proposed Order at

4    §§ IV.A, B.1. The injunctions requiring training and changes to UBH's business similarly go

5    directly to the source of the problem: only by altering the way UBH approaches its Guideline

6    development process and mandating that UBH's employees be trained on both the appropriate

7    criteria and their fiduciary obligations can the Court be assured that UBH will not simply find

8    some way around the Court's findings in this case. *Id*. at § IV.B.2-4. Finally, the injunction

9    mandating disclosure is also essential to repair UBH's wrongdoing and prevent a repetition of

10   the same injuries as in this case. The required disclosures are designed to require UBH to take

11   responsibility for what it has done and to provide appropriate notice to those who can hold UBH

12   accountable in the future: not only the class members, but their plans and UBH's regulators. All

13   of these steps are essential in order to adequately remedy the class members' injuries and prevent

14   a repetition of this case; none can be accomplished through legal relief.

15        <u>*Balance of Hardships*</u>. The balance of hardships tips sharply in favor of the class

16   members in this case, where the requested injunctions would do no more than require UBH to do

17   what it has always been required to do anyway: to make decisions about whether services are

18   consistent with generally accepted standards of care according to criteria that do, in fact, reflect

19   those generally accepted standards—rather than according to criteria driven by its own self-

20   interest. "It is little hardship upon Defendants to be subject to an injunction ordering them to

21   comply with obligations they are already subject to . . . ." *United Here Health*, 2012 WL

22   5511639, at *8; *see also Westech Roofing*, 2014 WL 4383062, at *4 (citation omitted) (balance

23   of hardships weighed in favor of plaintiffs where "injunctive relief requested by Plaintiffs is

24   narrow in scope and only requires [defendant] to comply with its existing obligations. . .").

25        If the Court declines to issue the requested injunctive relief, on the other hand, the class

26   members could be subjected to the same irreparable injuries again and again, suffering all of the

27   same deleterious consequences. "Generally, a finding of irreparable harm tips the balance of

28   hardships that may result from an injunction in favor of the plaintiff." *Westech Roofing*, 2014

26

1  WL 4383062, at *4 (citation omitted) (finding defendant's long pattern of violations

2  demonstrated that the balance of hardships favored injunctive relief).

3       *Public Interest*. Finally, the permanent injunction sought here would not disserve the

4  public interest. Quite the contrary: the public has a substantial interest in enforcing ERISA and

5  its stringent fiduciary requirements. As stated in the Congressional findings and declarations of

6  policy prefacing ERISA, employee benefit plans "are affected with a national public interest"

7  because, among other reasons, "the continued well-being and security of millions of employees

8  and their dependents are directly affected by these plans." 29 U.S.C. § 1001(a). For those

9  reasons, Congress passed ERISA expressly to "protect . . . the interests of participants in

10  employee benefit plans and their beneficiaries, by" among other things, "establishing standards

11  of conduct, responsibility, and obligation for fiduciaries . . . and by providing for appropriate

12  remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b).

13       For that reason, "[c]ourts have held that public policy weighs in favor of an injunction to

14  enforce ERISA rights." *Sheet Metal Workers Nat'l Health Fund v. Cunningham*, No. 3:10-0695,

15  2011 WL 1257822, at *1 (M.D. Tenn. Apr. 4, 2011), report and recommendation adopted, No.

16  3:10-0695, 2011 WL 1740189 (M.D. Tenn. May 5, 2011) (citing *Int'l Res., Inc. v. N.Y. Life Ins.*

17  *Co.*, 950 F.2d 294, 302 (6th Cir. 1991)); *see also Gould v. Lambert Excavating, Inc.*, 870 F.2d

18  1214, 1221 (7th Cir. 1989) (issuing injunction under ERISA and finding that ERISA plans are

19  "affected with a national public interest"); *CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir.

20  2008) (upholding injunction under Cable Communications Policy Act of 1984 after finding that

21  "the public has an interest in the enforcement of federal statutes") (citation omitted).

22  **VII.   APPOINTMENT OF A SPECIAL MASTER**

23       As discussed above, the Court has a "duty 'to enforce the remedy which is most

24  advantageous to the participants and most conducive to effectuating the purposes of the trust.'"

25  *Donovan I*, 716 F.2d at 1235 (quoting *Eaves*, 587 F.2d at 462). A remand for reprocessing and

26  prospective injunctions are core components of the relief necessary to remedy UBH's pervasive

27  and brazen violations of its fiduciary duties. But those remedies are only likely to be effective if

28  overseen by one or more special masters.

Federal Rule 53 authorizes the appointment of a special master where necessary to "address" any "posttrial matters that cannot be effectively and timely addressed" by the trial court. Fed. R. Civ. P. 53(a)(1)(C). Such an appointment is also authorized by ERISA. In *Donovan I*, for example, the defendants had violated their fiduciary duties to the pension fund, including their duty of care (by failing to use "accepted procedures" to review financial transactions or to adequately diversify the fund's investments) and their duty of loyalty (by approving transactions as to which they had a conflict of interest). 716 F.2d at 1230. The district court appointed a third-party manager to "control" the fund's investments for a term of ten years. *Id.* The Ninth Circuit affirmed the appointment as "necessary to protect . . . the interests of the beneficiaries and participants" in light of the "general pattern of failure on the part of the trustees properly to acquit their fiduciary responsibilities . . . ." 716 F.2d at 1236-37.[27]

Appointment of an independent special master (or "monitor" or "receiver") is especially appropriate where, as here, a defendant's breaches of fiduciary duty include conflicts of interest. *See, e.g.*, *Huizinga v. Genzink Steel Supply & Welding Co.*, No. 1:10-CV-223, 2013 WL 4511291, at *12 (W.D. Mich. Aug. 23, 2013) (ordering appointment of "an independent fiduciary" to "oversee[] the proper implementation of the restitution remedy" and "for reviewing the investment and fee structure of the Plan," in order to "purge any lingering doubts about the fiduciary supervision of the Plan").

Indeed, ERISA and the common law go further, expressly permitting **removal** of breaching fiduciaries. *See* 29 U.S.C. § 1109(a); Restatement (Third) of Trusts § 37, cmt. d (2003)

---

[27] Such appointment as part of an injunctive remedial regime is a well-established practice in a variety of other contexts as well. *See, e.g.*, *Thompson v. Enomoto*, 915 F.2d 1383, 1385-88 (9th Cir. 1990) (discussing responsibilities of a monitor appointed in a case challenging conditions in San Quentin Prison); *Morales Feliciano v. Rullan*, 303 F.3d 1, 3-4 (1st Cir. 2002) (in another prison conditions case, describing the district court's appointment of a monitor to "study[] the relevant elements of the corrections program and recommend[] remedial action"); *Gary W. v. Lousiana*, 601 F.2d 240, 244-45 (5th Cir. 1979) (affirming the appointment of special master to oversee compliance with a court order related to treatment of mentally ill children in Texas); *Marshall v. Snyder*, 572 F.2d 894, 901 (2d Cir. 1978) (affirming appointment of receiver as "peculiarly appropriate" because the defendants had been shown "to be continuing conduct violative both of the [judgment] and of the provisions of ERISA").

("A court may remove a trustee whose continuation in that role would be detrimental to the interests of the beneficiaries."); *Martin v. Feilen*, 965 F.2d 660, 673 (8th Cir. 1992) (reversing district court's refusal to remove fiduciary of employee stock ownership plan who had engaged in self-dealing and who had "demonstrate[d] such a fundamental misunderstanding of the ERISA statute, regulations, and case law as to require that he have no further opportunity to subvert this important federal law"); *Donovan v. Bryans*, 566 F. Supp. 1258, 1268 (E.D. Pa. 1983) ("*Donovan II*") (barring defendants from serving as ERISA fiduciaries for five years because "[t]heir failures in the past to faithfully discharge [their] duties to the Plan furnish ample reason why they should not now be entrusted with this responsibility"). The evidence here would certainly support an order removing UBH as fiduciary with respect to the class members' plans. But, at a minimum, that evidence demonstrates the need for an independent third party to oversee the remedies the Court orders. Put simply, nothing about the trial evidence suggests that UBH can be trusted to act with loyalty to the class members, as ERISA requires.

Here, the Court should appoint a Special Master to oversee and ensure UBH's compliance with the reprocessing and prospective relief aspects of the Court's remedies order, as set forth in greater detail below.[28] The Special Master should further have authority to retain and/or designate one or more Associate Special Masters (together with the Special Master, the "Special Masters") as appropriate and necessary, such as one or more psychiatrists with expertise in mental health and substance use disorder treatment. *See, e.g.*, *Triple Five of Minn., Inc. v. Simon*, No. Civ. 99-1894 (PAM/JGL), 2003 WL 22859834, at *2 (D. Minn. Dec. 1, 2003) (authorizing the Special Master to, among other things, "hire accountants, real estate consultants, attorneys, or others as necessary to assist him in carrying out his duties under this Order"); *see also, e.g.*, Order at 1, *State of Illinois v. City of Chicago*, Case No. 17-cv-6260 (N.D. Ill. Apr. 1,

---

[28] Plaintiffs propose that, within 14 days after the Court issues its order on remedies, Plaintiffs will submit to the Court at least three candidates for the position of Special Master, along with a detailed proposed order of appointment. *See* Proposed Order § V; *see also* Fed. R. Civ. P. 53(b). This will allow Plaintiffs time to incorporate relevant portions of the Court's remedies order into the Special Master's order of appointment, and will also allow additional time for Plaintiffs to complete the process of identifying and vetting appropriate candidates to present to the Court.

2019), ECF No. 725 (noting that the Special Master will "manage a large team of deputy monitors, subject matter experts, and community engagement specialists"); Academy of Court Appointed Masters, *Sample Appointment Order 3: Where Master Will Serve as Monitor in a Class Action*, Appointing Special Masters And Other Judicial Adjuncts: A Handbook for Judges and Lawyers (2d ed.), at 44 ¶ 11 ("The Monitor shall have the authority to employ and/or contract with all necessary attorney, paralegal, administrative, and clerical staff within a budget cap approved by the Court."), *available at* https://www.uww-adr.com/zupload/zgraph-content/uploads/pdfs/acambenchbook-11-20-09.pdf.

In particular, the Court should authorize the Special Masters to do the following:

**Reprocessing**. The Special Masters should be authorized to take any steps they deem necessary to ensure UBH's faithful compliance with the remand order, including but not limited to reviewing some or all of the reprocessed claims and underlying documentation to ensure UBH's faithful application of the guidelines ordered by the Court; ensuring adequate procedures are in place for class members to submit additional records to complete their administrative records; and reporting to the Court on the status of reprocessing and UBH's compliance therewith. After all, in the appropriate case, a court can order reforms to an insurer's claim-adjudication practices that include recourse to the court itself. *See Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 169 (3d Cir. 2011). Appointment of a Special Master, with a requirement of periodic reports to the Court, is a means to accomplish the same end through a more efficient process that reduces the burden on the Court. *See, e.g.*, *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1403 (9th Cir. 1997) ("The district court appointed the special masters because the court did not have the resources to constantly monitor compliance with the injunctions and decree."); *Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 543 (9th Cir. 1987) (appointment of special master to monitor compliance with injunction can be justified based on "complexity" of remedial regime); *Huizinga*, 2013 WL 4511291, at *12 (ordering the court-appointed independent fiduciary to "report[] to the Court" the "nature of its activities").

**Training and internal policy remediation**. As set forth above, remedying UBH's breaches of its duties of care and loyalty also requires other forms of prospective relief, including

30

1   requiring UBH to design and implement a training program for UBH personnel on their duties

2   under ERISA and the Court-ordered guidelines, and to make changes to UBH's business

3   practices to remedy UBH's conflicts of interest and other breaches of its duty of loyalty. Courts

4   regularly delegate to special masters responsibility for overseeing the development and

5   implementation of such programs as part of remedial injunctive orders. *See, e.g.*, Twenty-First

6   Report of Special Master at 1, 3-4, 10, 13, 22, 27, *Farrell v. Cate*, Case No. RG03079344 (Cal.

7   Sup. Ct. Apr. 12, 2012) (describing the status of various training programs overseen by a Special

8   Master and two Deputy Special Masters in a case challenging mental health treatment conditions

9   in California's juvenile prisons), *available at* https://prisonlaw.com/wp-

10  content/uploads/2015/09/OSM21.pdf; *Hatten-Gonzales v. Earnest*, Order Appointing Special

11  Master at 2, Civ. No. 88-0385 KG/CG (D.N.M. Aug. 23, 2016), ECF No. 751 (in case

12  challenging the New Mexico Human Services Department's failure to provide SNAP and

13  Medicaid benefits to which the class members were entitled, authorizing the special master to,

14  among other things, "advis[e] . . . on issues related to compliance to include the content and

15  issuance of policies and procedures, staff directives, training (content and delivery), notices,

16  application processing timeliness, and all aspects of HSD's SNAP and Medicaid eligibility

17  processes necessary to bring those processes into compliance with the Consent Decree, all other

18  Court Orders, and federal law"); *Hatten-Gonzales v. Earnest*, Civ. No. 88-0385 KG/CG, 2018

19  WL 1665643, at *12-14 (D.N.M. Apr. 5, 2018) (ordering Defendant to implement "refresher

20  training" and to "enhance new employee training," under oversight of special master).

21  **VIII.   RETENTION OF JURISDICTION**

22          The Court should retain jurisdiction in this case, at least until the reprocessing procedures

23  are complete and the Special Master has completed his or her oversight of UBH's

24  implementation of the training programs and changes to business practices that the Court orders.

25  *See, e.g.*, *Lancaster*, 934 F. Supp. at 1170 (remanding ERISA case to plan administrator where

26  the denial of benefits was based, *inter alia*, on a legally impermissible interpretation of the

27  benefits plan, and retaining jurisdiction) (citing *Copeland v. Carpenters Dist. Council of Hous. &*

28  *Vicinity Pension Fund*, 771 F. Supp. 807, 810 (E.D. Tex. 1991) (remanding ERISA action to

1  plan administrator for further proceedings and retaining jurisdiction "until such time as the court

2  determines that all matters arising out of [the] action have been finally disposed of")).

3  **IX.    OTHER APPROPRIATE EQUITABLE RELIEF**

4        ERISA not only authorizes the Court to award appropriate relief to the class; it also

5  imposes on the Court a "duty 'to enforce the remedy which is most advantageous to the

6  participants and most conducive to effectuating the purposes of the trust.'" *Donovan I*, 716 F.2d

7  at 1235 (quoting *Eaves*, 587 F.2d at 462). Plaintiffs have elaborated a number of remedies

8  herein, but the Court need not view itself as limited to those forms of relief. It can tailor as

9  needed the remedies Plaintiffs have proposed, and it can order additional equitable relief that it

10 deems appropriate. As Justice Douglas observed long ago, "[t]he essence of equity jurisdiction

11 has been the power of the Chancellor to do equity and to mould each decree to the necessities of

12 the particular case. Flexibility rather than rigidity has distinguished it." *Hecht Co. v. Bowles*, 321

13 U.S. 321, 329 (1944). The Court should exercise its discretion and its flexibility, sitting in equity,

14 to craft an order that provides adequate and meaningful relief for the class.

15 **X.     CONCLUSION**

16       For the reasons set forth above, the Court should enter the attached Proposed Order.

17

18 Dated:  May 3, 2019                                ZUCKERMAN SPAEDER LLP

19                                                  */s/ Caroline E. Reynolds*
                                                    Caroline E. Reynolds
20                                                  Carl S. Kravitz
                                                    Aitan D. Goelman
21                                                  Jason S. Cowart
                                                    Adam B. Abelson
22
                                                    PSYCH-APPEAL, INC.
23                                                  Meiram Bendat

24                                                  *Attorneys for Class Plaintiffs*

25

26

27

28