JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
ANDREW HOLMER (SBN 268864)
aholmer@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Phone: (213) 622-4750
Fax: (213) 622-2690

THOMAS F. KOEGEL (SBN 125852)
tkoegel@crowell.com
NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Phone: (415) 986-2800
Fax: (415) 986-2827

APRIL N. ROSS (admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **DAVID WIT et al.,**<br>Plaintiffs,<br>v.<br>**UNITED BEHAVIORAL HEALTH,**<br>Defendant. | Case No. 14-cv-02346 JCS<br>Related Case No. 14-cv-05337 JCS<br>**UNITED BEHAVIORAL HEALTH'S RESPONSE TO PLAINTIFFS' REMEDIES BRIEF**<br>Hon. Joseph C. Spero<br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

**GARY ALEXANDER et al.,**

Plaintiffs,

v.

**UNITED BEHAVIORAL HEALTH,**

Defendant.

# TABLE OF CONTENTS

**Page(s)**


INTRODUCTION .......... 1

ARGUMENT .......... 5

I. Plaintiffs' Available Remedies Are Limited To Those Explicitly Authorized Under ERISA, 29 U.S.C. § 1132(a)(1)(B) And (a)(3), And By Their Own Decision To Abandon Pursuit Of Monetary Judgments. .......... 5

A. Remedies Under ERISA § 1132(a)(1)(B) Are Limited To Enforcement Of Plan Terms And Clarification Of Future Benefits Under A Plan. .......... 7

B. Plaintiffs Are Not Entitled To Relief Under ERISA § 1132(a)(3) Because ERISA § 1132(a)(1)(B) Provides Adequate Remedies. .......... 8

II. Plaintiffs Are Not Entitled To Reprocessing Of Denied Benefit Claims Because They Did Not Prove That Reprocessing Will Redress Any Classwide Injury. .......... 10

III. In The Alternative, If The Court Orders Reprocessing, The Reprocessing Remedy Must Comport With The Legal Limitations And Discretionary Authority Imposed By Erisa And The Class Members' Plans. .......... 15

A. ERISA's Reprocessing Remedy Is Premised On The Administrator's Right to Exercise Its Discretion To Interpret Coverage and Determine Benefits Under The Plan. .......... 16

B. Under ERISA, The Appropriate Reprocessing Remedy Is Remand To UBH To Develop Or Adopt New Guidelines And Reprocess Certain Class Members' Claims For Benefits Using Those Guidelines. .......... 18

1. If Any Reprocessing Is Ordered, It Must Be Limited To Class Members Who May Benefit From Reprocessing Under The Limited Liability Theory That Gave Rise To Class Certification. .......... 19

a. Any Reprocessing Remedy Must Be Limited To Class Members Who Received The Treatment That Was The Subject Of The Adverse Benefit Determination At Issue. .......... 20

b. Any Reprocessing Remedy Must Be Limited To Class Members Who Timely Submitted Claims Demonstrating Payment For Treatment. .......... 21

c. Any Reprocessing Remedy Must Be Limited To Those Class Members Who Respond To The Notice And Affirm Eligibility. .......... 23

d. Any Reprocessing Remedy Must Exclude Class Members Who Obtained Benefits Through The Administrative Appeal Process. .......... 27

e. Any Reprocessing Remedy Must Exclude Members Of The Texas Portion Of The *Wit* State Mandate Class. .......... 28

## TABLE OF CONTENTS

**Page(s)**


f. Any Remand And Reprocessing Should be Limited To The Existing Administrative Record. ..... 29

g. If Reprocessing Is Ordered, And Particularly If The Record Is Expanded, UBH Should Be Allowed To Exercise Its Discretion To Reassess The Requested Coverage Under Newly Adopted Guidelines, As Well As Any Other Applicable Plan Terms. ..... 31

C. Since Plaintiffs Abandoned Money Relief In Favor Of A Classwide Injunctive Reprocessing Remedy, Prejudgment and Postjudgment Interest Is Unavailable. ..... 33

D. The Court Should Defer Establishing Interim And Final Deadlines For Reprocessing Until After UBH's New Guidelines Are Approved And The Number Of Plaintiffs Entitled To Reprocessing Is Known. ..... 35

IV. Plaintiffs Are Not Entitled To Prospective Injunctive Relief Because They Failed To Prove By The Preponderance Of The Evidence Each Of The Elements For Each Of The Ten Mandatory Injunctions They Seek. ..... 38

A. Plaintiffs Are Not Entitled To Prospective Injunctions Indefinitely Dictating UBH's Use Of Future Guidelines Because Such Orders Usurp UBH's Discretionary Authority Under ERISA And Improperly Pre-Determine The Meaning Of Plans Not In Evidence. ..... 39

B. Plaintiffs Are Not Entitled To A Mandatory Injunction Directing How UBH Trains Its Clinicians. ..... 46

C. Plaintiffs Are Not Entitled To A Mandatory Injunction Directing How UBH Trains Its Senior Leadership. ..... 48

D. Plaintiffs Are Not Entitled To a Mandatory Injunction Directing UBH's Corporate Structure. ..... 49

E. Plaintiffs Are Not Entitled To A Mandatory Injunction Directing UBH's Interactions With its Regulators and Customers. ..... 51

V. Appointment Of Multiple Special Masters Is Unjustified At This Time. ..... 52

VI. Plaintiffs Are Not Entitled To Declaratory Relief Because The Declarations They Seek Will Serve No Useful Purpose And Because Plaintiffs Failed To Prove They Are Likely To Seek Future Benefits Under The Plans At Issue In This Case. ..... 54

VII. Retention Of Jurisdiction. ..... 56

CONCLUSION ..... 57

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.F. v. Providence Health Plan*
157 F. Supp. 3d 899, 910 (D. Or. 2016) ....................22, 23

*Aetna Health Inc. v. Davila*
542 U.S. 200 (2004) ....................5, 21

*Barnes v. AT & T Pension Ben. Plan--Nonbargaines Program*
No. C-08-4058 EMC, 2012 WL 1657054 (N.D. Cal. May 10, 2012), *aff'd*, 622 F. App'x 669 (9th Cir. 2015) ....................33

*Bartlett-Collins Co. v. Surinam Nav. Co.*
381 F.2d 546 (10th Cir. 1967) ....................52

*Bast v. Prudential Ins. Co. of Am.*
150 F.3d 1003 (9th Cir. 1998) ....................6, 9

*Bd. of Trustees of Bay Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*
No. 12-CV-05655-JCS, 2014 WL 4383062 (N.D. Cal. Sept. 4, 2014) ....................10, 38, 40

*Beacon Theatres, Inc. v. Westover*
359 U.S. 500 (1959) ....................10

*Bellanger v. Health Plan of Nev., Inc.*
814 F. Supp. 914 (D. Nev. 1992) ....................43

*Berman v. Microchip Tech. Inc.*
No. 17-CV-01864-HSG, 2018 WL 732667 (N.D. Cal. Feb. 6, 2018) ....................55

*Blankenship v. Liberty Life Assur. Co. of Bos.*
486 F.3d 620 (9th Cir. 2007) ....................34

*Bowman v. U.S. W., Inc.*
No. CIV. 95-1923-FR, 1997 WL 118437 (D. Or. Mar. 10, 1997) ....................18, 45

*Carpenters Sw. Admin. Corp. v. Short*
No. CV-10-0519-SVW-RNBX, 2010 WL 11597575 (C.D. Cal. Dec. 2, 2010) ....................47, 51

*Carrier v. Aetna Life Ins. Co.*
116 F. Supp. 3d 1067, 1084 (C.D. Cal. 2015) ....................17

*Cator v. Herrgott & Wilson, Inc.*
609 F. Supp. 12 (N.D. Cal. 1984) ....................40

**TABLE OF AUTHORITIES**

**Page(s)**

*Cholakyan v. Mercedes-Benz, USA, LLC*
281 F.R.D. 534 (C.D. Cal. 2012) .......... 12

*Chorosevic v. MetLife Choices*
No. 4:05-CV-2394 CAS, 2009 WL 723357 (E.D. Mo. Mar. 17, 2009), aff'd, 600 F.3d 934 (8th Cir. 2010) .......... 16

*CIGNA Corp. v. Amara*
563 U.S. 421 (2011) .......... 8, 9, 23

*City of New York v. Mickalis Pawn Shop, LLC*
645 F.3d 114 (2d Cir. 2011) .......... 48, 49

*Conkright v. Frommert*
559 U.S. 506 (2010) .......... 17, 41, 44

*Corenco Corp. v. Schiavone & Sons, Inc.*
362 F. Supp. 939 (S.D.N.Y. 1973) .......... 40

*Craft v. Health Care Serv. Corp.*
No. 14 C 5853, 2016 WL 1270433 (N.D. Ill. Mar. 31, 2016) .......... 16, 43

*Curtiss-Wright Corp. v. Schoonejongen*
514 U.S. 73 (1995) .......... 44

*Dailey v. Blue Cross & Blue Shield of Kansas City*
No. 17-01036-CV-W-ODS, 2019 WL 539119 (W.D. Mo. Feb. 11, 2019) .......... 23

*DeMaria v. Horizon Healthcare Servs., Inc.*
No. 11-7298 WJM, 2015 WL 3460997 (D.N.J. June 1, 2015) .......... 25

*Des Roches v. California Physicians' Serv.*
320 F.R.D. 486 (N.D. Cal. 2017) .......... 16, 42, 43

*DiGregorio v. Hartford Comprehensive Employee Ben. Serv. Co.*
423 F.3d 6 (1st Cir. 2005) .......... 14, 28, 29

*Dirienzo v. Dunbar Armored, Inc.*
No. 09CV2745 DMS (JMA), 2010 WL 11591907 (S.D. Cal. May 12, 2010) .......... 55

*Donovan v. Mazzola*
716 F.2d 1226 (9th Cir. 1983) .......... 6

*Duarte v. Aetna Life Ins. Co.*
No. SACV 13-00492-JLS RN, 2014 WL 1672855 (C.D. Cal. Apr. 24, 2014) .......... 29, 30

## TABLE OF AUTHORITIES


**Page(s)**

*Dupree v. Holman Prof'l Counseling Centers*
572 F.3d 1094 (9th Cir. 2009)....................44

*Durham v. Health Net*
No. C-94-3575 MHP, 1995 WL 429252 (N.D. Cal. June 22, 1995), *aff'd*, 108 F.3d 337 (9th Cir. 1997)....................20, 21, 23

*E. & J. Gallo Winery v. Gallo Cattle Co.*
967 F.2d 1280 (9th Cir. 1992)....................50

*E.E.O.C. v. Prospect Airport Servs., Inc.*
No. 2:05-CV-01125-KJD, 2012 WL 3042693 (D. Nev. July 25, 2012)....................53

*Fairview Health Servs. v. Ellerbe Becket Co. Employee Med. Plan*
No. CIV.06-2585(MJDAJB), 2007 WL 978089 (D. Minn. Mar. 28, 2007)....................16

*Fed. Election Comm'n v. Furgatch*
869 F.2d 1256 (9th Cir. 1989)....................45

*Firestone Tire & Rubber Co. v. Bruch*
489 U.S. 101 (1989)....................55, 56

*Fotta v. Trustees of United Mine Workers*
165 F.3d 209 (3rd Cir. 1998)....................34

*Gabriel v. Alaska Elec. Pension Fund*
773 F.3d 945 (9th Cir. 2014)....................5, 9, 17, 45

*Gilliam v. Nev. Power Co.*
488 F.3d 1189 (9th Cir. 2007)....................43

*Giordano v. Thomson*
564 F.3d 163 (2d Cir. 2009)....................14

*Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*
739 F.2d 466 (9th Cir. 1984)....................43

*Grasso Enters., LLC v. Express Scripts, Inc.*
809 F.3d 1033 (8th Cir. 2016)....................10, 40

*Greg Young Publ'g, Inc. v. Zazzle, Inc.*
No. 2:16-CV-04587-SVW-KS, 2018 WL 836276 (C.D. Cal. Feb. 8, 2018)....................47

*Grosz-Salomon v. Paul Revere Life Ins. Co.*
237 F.3d 1154 (9th Cir. 2001)....................12, 14

## TABLE OF AUTHORITIES

**Page(s)**

*Hamann v. Independence Blue Cross*
543 Fed. Appx. 355 (5th Cir.2013) ........ 18, 21, 23

*Hancock v. Montgomery Ward Long Term Disability Tr.*
787 F.2d 1302 (9th Cir. 1986) ........ 36, 40

*Harlick v. Blue Shield of Cal.*
686 F.3d 699 (9th Cir. 2012) ........ 31, 32, 33

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*
571 U.S. 99 (2013) ........ 7, 28

*Huffman v. Prudential Ins. Co. of Am.*
No. 2:10-CV-05135, 2016 WL 5724293 (E.D. Pa. Sept. 30, 2016) ........ 44

*Hurd v. Garcia*
454 F. Supp. 2d 1032 (S.D. Cal. 2006) ........ 55

*Hynix Semiconductor Inc. v. Rambus Inc.*
609 F. Supp. 2d 951 (N.D. Cal. 2009) ........ 41, 47

*Impress Commc'ns v. Unumprovident Corp.*
335 F. Supp. 2d 1053 (C.D. Cal. 2003) ........ 43

*Jansen v. Greyhound Corp.*
692 F. Supp. 1029 (N.D. Iowa 1987) ........ 52, 53

*Kamar v. RadioShack Corp.*
375 F. App'x 734 (9th Cir. 2010) ........ 29

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*
555 U.S. 285 (2009) ........ 7

*Krauss v. Oxford Health Plans, Inc.*
517 F.3d 614 (2d Cir. 2008) ........ 6, 14

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*
941 F.2d 970 (9th Cir. 1991) ........ *passim*

*Lancaster v. U.S. Shoe Corp.*
934 F. Supp. 1137 (N.D. Cal. 1996) ........ 56, 57

*Marcus v. Bowen*
No. 85 C 453, 1989 WL 39709 (N.D. Ill. Apr. 18, 1989) ........ 25

*Marlo v. United Parcel Serv., Inc.*
251 F.R.D. 476 (C.D. Cal. 2008), *aff'd* 639 F.3d 942 ........ 12, 28, 29

# TABLE OF AUTHORITIES

**Page(s)**

*Martinez v. Beverly Hills Hotel & Bungalows Employee Benefit Tr. Employee Welfare Plan*
No. 2:09-CV-01222-SVW-PLA, 2015 WL 12843760 (C.D. Cal. Oct. 29, 2015) .................... 33

*Mason v. Bowen*
No. CIV.A. 83-224, 1986 WL 15765 (D. Vt. Oct. 8, 1986) .................... 25

*Mass. Mut. Life Ins. Co. v. Russell*
473 U.S. 134 (1985) .................... 5, 6, 7, 8

*McCartha v. Nat'l City Corp.*
419 F.3d 437 (6th Cir. 2005) .................... 33

*Meidl v. Aetna, Inc.*
346 F. Supp. 3d 223, 242 (D. Conn. 2018) .................... 10

*Metro. Life Ins. Co. v. Glenn*
554 U.S. 105 (2008) .................... 41

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*
518 F. Supp. 2d 1197 (C.D. Cal. 2007) .................... 51

*Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*
46 F.3d 938 (9th Cir. 1995) .................... 30

*Monsanto Co. v. Geertson Seed Farms*
561 U.S. 139 (2010) .................... 47

*Moyle v. Liberty Mut. Ret. Benefit Plan*
823 F.3d 948 (9th Cir. 2016) .................... 8, 40

*Nelson v. EG & G Energy Measurements Grp., Inc.*
37 F.3d 1384 (9th Cir. 1994) .................... 34

*New Hampshire v. Maine*
532 U.S. 742 (2001) .................... 15

*New York, S. & W. R. Co. v. Follmer*
254 F.2d 510 (3d Cir. 1958) .................... 52

*Orantes-Hernandez v. Thornburgh*
919 F.2d 549 (9th Cir. 1990) .................... 43

*Pakovich v. Verizon LTD Plan*
653 F.3d 488 (7th Cir. 2011) .................... 14, 24, 28

## TABLE OF AUTHORITIES

**Page(s)**


*Pannebecker v. Liberty Life Assurance Co. of Bos.*
542 F.3d 1213 (9th Cir. 2008)....................16

*Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*
636 F.3d 1150 (9th Cir. 2011).................... *passim*

*Perfect 10, Inc. v. Google, Inc.*
653 F.3d 976 (9th Cir. 2011)....................10

*Potter v. Blue Cross Blue Shield of Michigan*
No. 10-CV-14981, 2013 WL 12183410 (E.D. Mich. Nov. 4, 2013)....................25, 26, 38

*Pratt v. Bowen*
642 F. Supp. 883 (D.D.C. 1986)....................25

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL*
No. 1869, 725 F.3d 244 (D.C. Cir. 2013)....................12

*Rivera v. Benefit Trust Life Ins. Co.*
921 F.2d 692 (7th Cir. 1991)....................34

*Robertson v. Standard Ins. Co.*
No. 3:14-CV-01572-HZ, 2017 WL 3319114 (D. Or. Aug. 3, 2017)....................9

*Rodrigues v. Bank of Am.*
No. C 16-1390 CW, 2016 WL 3566950 (N.D. Cal. July 1, 2016)....................7

*Rolland v. Cellucci*
198 F. Supp. 2d 25 (D. Mass. 2002)....................53

*Rush Prudential HMO v. Moran*
536 U.S. 355 (2002)....................5

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*
85 F.3d 455 (9th Cir. 1996).................... *passim*

*Sage v. Automation, Inc. Pension Plan & Tr.*
845 F.2d 885 (10th Cir. 1988)....................14

*Sanford v. Charles Robinson, Inc.*
No. 2:05-CV-1941-GEB-KJM, 2006 WL 1867616 (E.D. Cal. July 6, 2006)....................48, 49

*Schmidt v. Lessard*
414 U.S. 473 (1974)....................45, 46

## TABLE OF AUTHORITIES


**Page(s)**

*Silk v. Metro. Life Ins. Co.*
310 F. App'x 138 (9th Cir. 2009) ....................24, 28

*Skinner v. Northrop Grumman Ret. Plan B*
673 F.3d 1162 (9th Cir. 2012)....................9

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*
770 F.3d 1282 (9th Cir. 2014)....................25, 33

*Stockwell v. City & Cty. of S.F.*
No. C 08-5180 PJH, 2015 WL 2173852 (N.D. Cal. May 8, 2015)....................12

*Taiebat v. Scialabba*
No. 17-CV-0805-PJH, 2017 WL 839807 (N.D. Cal. Mar. 2, 2017)....................10

*Tolson v. Avondale Indus.*
141 F.3d 604 (5th Cir. 1998)....................55

*Tyson Foods, Inc. v. Bouaphakeo*
136 S. Ct. 1036 (2016) ....................14, 28, 29

*United States v. Holtzman*
762 F.2d 720 (9th Cir. 1985)....................51

*United States v. Washington*
759 F.2d 1353 (9th Cir. 1985)....................55

*US Airways, Inc. v. McCutchen*
569 U.S. 88 (2013) ....................9, 32

*Varity Corp. v. Howe*
516 U.S. 489 (1996) ....................8

*Vizcaino v. Microsoft Corp.*
120 F.3d 1006 (9th Cir. 1997) (en banc)....................16, 32

*Wal-Mart Stores, Inc. v. Dukes*
564 U.S. 338 (2011) ....................12, 14

*Williams v. Bank of Am.*
No. 2:12-CV-2513 JAM AC, 2013 WL 1907529 (E.D. Cal. May 7, 2013)....................55, 56

*Wilson v. Cox*
No. 3:15-CV-00059-SI, 2015 WL 6123776 (D. Or. Oct. 16, 2015)....................8, 17, 31, 45

*Wise v. Verizon Commc'ns, Inc.*
600 F.3d 1180 (9th Cir. 2010)....................7

## TABLE OF AUTHORITIES

Page(s)

*Wright v. Oregon Metallurgical Corp.*
360 F.3d 1090 (9th Cir. 2004)....17, 32, 44

*Young v. Nationwide Mut. Ins. Co.*
693 F.3d 532 (6th Cir. 2012)....29

*Z.D. ex rel. J.D. v. Grp. Health Co-op.*
No. C11-1119RSL, 2012 WL 5033422 (W.D. Wash. Oct. 17, 2012)....25

**Federal Statutes**

28 U.S.C. 1961(a)....34

29 U.S.C. § 1109....6, 7

29 U.S.C. § 1132(a)....5

29 U.S.C. §§ 1132(a)(1)(B)....*passim*

29 U.S.C. § 1132(a)(2)....6, 7

29 U.S.C. § 1132(a)(3)....*passim*

**Other State Statutes**

28 Tex. Admin. Code § 3.8005(a)....56

**Other Authorities**

29 C.F.R. 2560.503-1(f)(2)(iii)....31

29 C.F.R. 2560.503-1(h)....32

Fed. R. Civ. P. 23....3, 12, 14, 29

Fed. R. Civ. P. 53....52, 53

Fed. R. Civ. P. 53(b)(1)....53

Fed. R. Civ. P. 53(b)(3)(A)....53

Fed. R. Civ. P. 65....*passim*

Fed. R. Civ. P. 65(d)(1)(C)....45, 49

U.S. Const., Art. III....43, 55

## INTRODUCTION

Through five years of litigation, Plaintiffs sought to maintain class action claims against United Behavioral Health ("UBH") based on the promise that if the Court found for Plaintiffs at the first phase, then Plaintiffs' requested remedies would be a straightforward remand to UBH to exercise its discretion under the ERISA plans at issue and reprocess benefit claims in a manner applicable to the class as a whole. But with the evidence closed and the remedies phase at hand, Plaintiffs now seek a slew of unnecessary declarations and impermissible injunctions that are inconsistent with ERISA law, the class members' ERISA benefit plans, and the evidence adduced at trial. Plaintiffs fail to identify a single classwide remedy to which the class as a whole is entitled, and each of their requested remedies should be rejected.

ERISA does not create every remedy a plaintiff may want. Rather, ERISA contains six carefully crafted remedial provisions, which together provide a set of exclusive remedies for violations of ERISA and ERISA-governed benefit plans. Plaintiffs brought claims under just two of those provisions—29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3)—and are limited to the remedies those provisions create. Critically, three of the most significant remedies available under those two provisions are not at issue in this case because they were either jettisoned at the class certification stage (payment of benefits), dismissed with prejudice at summary judgment (equitable surcharge), or never sought in the first place (plan reformation).

Plaintiffs' inability to articulate a single classwide remedy to which the certified classes are entitled is a direct result of the tactical decisions Plaintiffs made in litigating this case. To bolster their arguments in favor of class certification, they chose to narrow the claims they would pursue, the remedies they would seek, and the evidence they would introduce at trial. They must now accept the consequences of those decisions on the remedies they seek on behalf of the class.

Plaintiffs repeatedly represented to the Court that they would seek two principal forms of injunctive relief, which they promised would be applicable to the classes as a whole. First, Plaintiffs represented that they would seek an injunction "order[ing] UBH to propose new Guidelines that remedy the specific defects that render the current Guidelines inconsistent with generally accepted standards of care and [setting] forth a process for the Court to evaluate such

new Guidelines." Pls. Reply ISO Class Cert, ECF 153, at 19 n.24; *accord* Mot. for Class Cert., ECF 133, at 7. Second, Plaintiffs asserted that, upon the adoption of such new guidelines, the proper remedy would be a simple matter of "remand to [UBH] for ***it***" –not the Court—"to redo the benefit determination" in the first instance using those newly-adopted guidelines. Pls. Opp. to UBH MSJ, ECF 261, at 1 (emphasis in original); *see also id*. at 19 (analogizing reprocessing to "a new jury after a mistrial," where "in the exercise of its lawful discretion" UBH might still "reach the same result for a different reason"). Plaintiffs also assured the Court that reprocessing was an available classwide remedy because they would prove with common evidence that UBH's guidelines "affected all class members in the same way. . . ." Pls. Mot. for Class Cert., ECF 133, at 2–3.

Having acknowledged for years the limited remedies afforded by ERISA, Plaintiffs now ask the Court to disregard that law and the terms of the ERISA plans at issue and instead exercise its "general discretion" to fashion remedies in this case. Pls. Opening Remedy Brief, ECF 426, at 1 (citing *Donovan v. Mazzola*, 716 F.2d 1226 (9th Cir. 1983)). Plaintiffs' about-face is inconsistent with ERISA. The exclusive remedies available for their claims are set forth in 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3). Plaintiffs' request for dozens of redundant declarations and a host of overbroad injunctions usurping UBH's plan-conferred discretion as the benefit administrator of class members' plans is incongruous with not just Plaintiffs' prior positions but with clear ERISA statutory provisions and should be rejected for the following reasons.

<u>First</u>, Plaintiffs' request for a "retrospective" injunction "remand[ing] to UBH" for reprocessing "each and every adverse benefit determination listed" on Trial Exhibit 255 should be denied because Plaintiffs demonstrably failed to prove on a classwide basis that each member is eligible for reprocessing. ECF 426-1, at 6; ECF 426, at 7–9. It is undisputed that some class members were denied benefits based on criteria that are unchallenged. Others already received the full amount of benefits they sought through the administrative appeals process. Still others on the list who were denied benefits based on the challenged guidelines never received the requested services and therefore cannot benefit from reprocessing. And still others received services at a different level of care and thus are not entitled to reprocessing. Plaintiffs' failure to prove

classwide entitlement to reprocessing cannot be glossed over under the guise of Rule 23. This fundamental failure of classwide proof renders reprocessing unavailable to the classes.

Second, even if reprocessing otherwise were appropriate, it would need to be limited to a simple remand to UBH to "redo the benefit determination" (Pls. Opp. to UBH MSJ, ECF 261, at 1, 19) for those class members who are entitled to reprocessing because they: (1) received the same treatment with the same provider at the same level of care that was the subject of the benefit decision at issue; (2) were billed for those services; (3) did not assign rights to benefits to any other person or entity; and (4) did not already receive benefits for the service (*e.g.*, from another insurance entity or from UBH after a successful administrative appeal). Plaintiffs cannot usurp UBH's undisputed discretion to adopt guidelines of its choosing so long as they are consistent with the Court's Findings of Fact and Conclusions of Law ("FFCL," ECF 418) and class members' plans (as UBH has already done by adopting the ASAM Criteria and revised LOCGs for mental health benefit determinations).[1] Nor are Plaintiffs entitled to dictate how UBH reprocesses claims without regard to plan terms or the substantial discretion given to UBH to administer the claims.

Third, Plaintiffs' requests for prospective injunctive relief should be rejected because Plaintiffs cannot usurp UBH's discretionary authority to select guidelines to be used for coverage decisions indefinitely into the future. Nor is Plaintiffs' unsupported speculation that UBH *might* return to old guidelines sufficient to prove the irreparable harm necessary to support any of the mandatory or prohibitive injunctions they seek. Additionally, Plaintiffs' proposed injunctions relating to training programs, company structure, and interactions with employers who purchase its services are unsupported in the record. Plaintiffs offered no proof that any of these injunctions are required under the ERISA plans or necessary to prevent specific harm.

The Court's Phase One findings under §§ 1132(a)(1)(B) and (a)(3) do not automatically

---

[1] UBH also recently approved the adoption of LOCUS and CALOCUS for mental health benefit determinations, with the goal of implementation in early 2020. If the Court orders UBH to reprocess any claims in this case, UBH is prepared to use these guidelines to reprocess claims for mental health services and the ASAM Criteria to reprocess claims for substance use services.

entitle Plaintiffs to the broad injunctive and declaratory relief they seek. This is particularly true since UBH no longer uses the guidelines challenged at trial. For each proposed remedy, Plaintiffs must demonstrate that the specific relief is (a) available under ERISA, (b) supported by common evidence presented at trial that is applicable to the class as a whole, and (c) otherwise appropriate. They failed to do so, and each of the proposed remedies requested by Plaintiffs should be rejected or, at minimum, substantially modified to comply with ERISA. Specifically:

- Plaintiffs are not entitled to reprocessing of denied benefit claims because they have not established, on a classwide basis, that reprocessing will remedy any harm suffered by individual class members;

- In the alternative, if the Court orders reprocessing despite Plaintiffs' failure of classwide proof, reprocessing must comport with the legal limitations and discretionary authority imposed by ERISA and the class members' plans, and must be limited to class members who could conceivably benefit from reprocessing;

- Plaintiffs' strategic decision to jettison any request for the payment of benefits precludes their request for prejudgment or postjudgment interest because there will be no money judgment in this case to which interest can attach;

- If the Court orders reprocessing, Plaintiffs' truncated timeline for completing reprocessing is unreasonable, impracticable, and not supported by ERISA, and the Court should defer establishing interim and final deadlines for reprocessing until after UBH's new guidelines are approved and the number of class members entitled to reprocessing is known;

- Plaintiffs are not entitled to prospective injunctions indefinitely dictating UBH's use of future guidelines because such orders usurp UBH's discretionary authority under ERISA and improperly pre-determine the meaning of plans not in evidence;

- Plaintiffs' requests for overbroad injunctions requiring UBH to conduct unspecified "training" on new guidelines and ERISA, requiring UBH to notify its regulators and customers about the outcome in this case, and dictating UBH's corporate structure and the metrics UBH shares with its employees are not supported in the evidence or in the law, are impermissibly vague under Rule 65, and would improperly delegate the Court's responsibility to craft injunctions to a special master;

- Appointment of a special master is unjustified at this time, and is simply a backdoor attempt by Plaintiffs to strip UBH of the lawful discretion that forms the basis for the very reprocessing remedy they seek; and

- Plaintiffs' request for 26 "declarations" about UBH's purported prior actions serves no useful purpose because Plaintiffs themselves describe the declarations as a restatement of the "core liability findings, already set forth in the Court's" FFCL, and none of their backward-looking declarations would

clarify class members' right to *future* benefits under the terms of their plans.[2]

For these reasons, and as explained further below, the Court should reject Plaintiffs' requests for remedies in their entirety.

## ARGUMENT

### I. Plaintiffs' Available Remedies Are Limited To Those Explicitly Authorized Under ERISA, 29 U.S.C. § 1132(a)(1)(B) And (a)(3), And By Their Own Decision To Abandon Pursuit Of Monetary Judgments.

Plaintiffs concede that the only remedies they can recover in this action are those authorized under the Employee Retirement Income Security Act ("ERISA"), at 29 U.S.C. § 1132(a). ERISA is a legislative balancing act: Congress chose to regulate employee benefit plans, but at the same time it wanted to avoid discouraging employers from offering benefits in the first place. Congress thus set out in ERISA to "induce[e] employers to offer benefits by assuring a predictable set of liabilities under . . . a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Rush Prudential HMO v. Moran,* 536 U.S. 355, 379 (2002). To ensure this predictability, Congress enacted a set of "limited remedies" in the form of the six remedial provisions of 29 U.S.C. § 1132(a). *Aetna Health Inc. v. Davila*, 542 U.S. 200, 215 (2004). Congress intended that these "six carefully integrated civil enforcement provisions" would be exclusive of other remedies; ERISA does "*not* . . . authorize other remedies that [Congress] simply forgot to expressly incorporate." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985); *see also Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 953 (9th Cir. 2014) (quotation omitted) ("The civil enforcement provisions of ERISA, codified in [29 U.S.C.] §

---

[2] Plaintiffs claim they "attempted to meet and confer with UBH" but UBH "declined to consent to any remedies" proposed by Plaintiffs. ECF 426, at 1 n.1. Yet as they concede, Plaintiffs and UBH did, in fact, meet and confer as directed by the Court (although it was based on the six-page "preliminary draft" proposed order referenced by Plaintiffs, not the 15-page substantially modified proposed order they submitted to the Court a week later). *Id*. It was during that meet and confer discussion that counsel for UBH reminded Plaintiffs' counsel that UBH had already adopted the ASAM Criteria for substance use benefit determinations, and had made significant changes to its LOCGs for mental health benefit determinations consistent with the Court's FFCL—facts Plaintiffs failed to mention in their Remedies Brief. In any event, as discussed herein, UBH declined to stipulate to the overbroad, unnecessary, and inappropriate remedies Plaintiffs chose to seek because none of them are supported by the evidence or the law.

1132(a), are the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits."). This limitation applies strictly, "even if the result is that a claimant, relegated to asserting a claim only under ERISA, is left without a remedy. The focus is on ERISA. If it does not provide a remedy, none exists." *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1010 (9th Cir. 1998).

Plaintiffs brazenly ignore Congress's purposeful limitation on ERISA's remedial scheme, and cite extensively (and vaguely) to the Ninth Circuit's decision in *Donovan v. Mazzola*, 716 F.2d 1226 (9th Cir. 1983), arguing that "ERISA grants to the courts broad authority to fashion" whatever "remedy which is most advantageous" to class members. *See* ECF 426, at 1, 2, 3, 9, 14, 16, 27, 28, 32. But *Donovan* does not remotely support Plaintiffs' proposed remedial scheme. *Donovan* involved claims asserted by the Secretary of Labor under 29 U.S.C. § 1132(a)(2) to enforce the remedies available under 29 U.S.C. § 1109. The portions of *Donovan* quoted by Plaintiffs explicitly address the scope of remedial relief available under § 1109 *via a § 1132(a)(2) claim*. *Donovan*, 716 F.2d at 1235; *see also Russell*, 473 U.S. at 142 n.9 (explaining that § 1132(a)(2)—not §§ (a)(1)(B) or (a)(3)—is "the enforcement provision for" § 1109). Plaintiffs in this case did not pursue a § 1132(a)(2) claim, and the relief under § 1109 discussed in *Donovan* is not available to them in any way.

Even if it applied, *Donovan* was decided two years before the Supreme Court held in *Russell* that § 1109 is limited to those "remedies that would protect the entire plan, rather than…the rights of an individual beneficiary." *Russell*, 473 U.S. 142 (emphasis added). And Plaintiffs do not ever assert that the remedies they seek benefit the *plans* at issue, as opposed to the class members. (That is not surprising, since reprocessing will deplete the limited assets of those plans.) Accordingly, to the extent *Donovan* could ever have been construed to allow the kind of unfettered relief to individual participants and beneficiaries urged by Plaintiffs here, that holding was abrogated by *Russell* more than 30 years ago.

Here, Plaintiffs seek relief under two of the six enforcement provisions outlined in Section 1132(a) —§§ 1132(a)(1)(B) and 1132(a)(3)—and they are limited to the relief specifically

authorized by those sections.[3]

### A. Remedies Under ERISA § 1132(a)(1)(B) Are Limited To Enforcement Of Plan Terms And Clarification Of Future Benefits Under A Plan.

The common thread among each of ERISA's remedial provisions is a "straightforward rule" of "hewing to" the contractual "plan documents" which set forth the plan terms. *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan,* 555 U.S. 285, 300 (2009). ERISA "is built around reliance on the face of [those] written plan documents," *id.* (citation omitted), as its "repeatedly emphasized purpose [is] to protect contractually defined benefits. . . ." *Russell*, 473 U.S. at 148. This is especially true in Section 1132(a)(1)(B), as to which the Supreme Court has emphasized "the particular importance of enforcing plan terms as written . . . ." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013). Under § 1132(a)(1)(B), plan participants and beneficiaries can seek relief (1) to "enforce [their] rights under the terms of the plan[s]" or (2) to "clarify [their] rights to future benefits under the terms of the plan[s]."

To be sure, Section 1132(a)(1)(B) also provides for the "recovery of benefits due . . . under the terms of [the] plan," but Plaintiffs voluntarily and explicitly dropped any request for payment of plan benefits in exchange for class certification. *See* Pls. Reply ISO Class Cert., ECF 153, at 7 (arguing that class certification is appropriate because "Plaintiffs seek reprocessing, not court-ordered benefit payments"); *see also id.*, at 5 ("Plaintiffs are not asking this Court to determine whether Class members were owed benefits or whether UBH should be ordered to cause its plans to pay such benefits."); *id.*, at 16 n.22 (arguing: "Plaintiffs of course hope that

---

[3] Plaintiffs cite 29 U.S.C. § 1109 to suggest that "removal of [a] fiduciary" is an available remedy in this case. *See* ECF 426, at 2:24-3:1, 28:19-20. That is wrong. The remedies described in § 1109, including removal of a fiduciary, can only be sought in a derivative action brought under ERISA § 1132(a)(2). *Russell*, 473 U.S. at 142; *Rodrigues v. Bank of Am.*, No. C 16-1390 CW, 2016 WL 3566950, at *3 (N.D. Cal. July 1, 2016) (citing *Russell* and explaining that the remedies provided in § 1109 are not available to a plaintiff asserting claims only under §§ 1132(a)(1)(B) an (a)(3)). Plaintiffs have never asserted a claim or asked for relief under § 1132(a)(2). Accordingly, Plaintiffs waived the remedies provided under § 1109, including removal of a plan fiduciary, and this remedy is foreclosed to them as a matter of law. *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) ("Because removal of the ERISA fiduciary is an available remedy under . . . [§] 1132(a)(2), Wise may not resort to [§ (a)(3)] to seek the same relief."). Plaintiffs cannot use the specter of a remedy they decided to waive under a cause of action that they did not pursue as a backdoor to usurp UBH's undisputed discretion under ERISA and class members' plans to interpret coverage and determine benefits.

when their benefit claims are reprocessed, UBH will find that the previous clinical coverage determination was improper and Plaintiffs will recover any money that they lost. ***But that hope is not a prayer for relief.***") (emphasis added). Thus, payment of plan benefits is no longer an available remedy in this case. *See* Order Granting Class Cert., ECF No. 174, at 10 n.10, 27.

Section 1132(a)(1)(B) does not provide extracontractual damages beyond those expressly authorized by the plan. *Russell*, 473 U.S. at 144. Nor can § 1132(a)(1)(B) be invoked to reform class members' plans, or to obtain benefits or compel conduct that is different or more expansive than what is required under the express terms of the underlying benefit plans. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 435–438 (2011) (§ 1132(a)(1)(B) does not authorize the reformation of a plan with directions to pay benefits according to the plan as reformed); *Wilson v. Cox*, No. 3:15-CV-00059-SI, 2015 WL 6123776, at *3 (D. Or. Oct. 16, 2015) (a "claim pursuant to Section 1132(a)(1)(B) can only be successful if [the relief] is consistent with the terms of the plan").

### B. Plaintiffs Are Not Entitled To Relief Under ERISA § 1132(a)(3) Because ERISA § 1132(a)(1)(B) Provides Adequate Remedies.

ERISA § 1132(a)(3) allows participants and beneficiaries, in limited circumstances, to "(A) enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." However, it is well-settled that "equitable relief under § 1132(a)(3) *is not available* if § 1132(a)(1)(B) provides an adequate remedy." *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 959 (9th Cir. 2016) (emphasis added). As the Supreme Court explained more than twenty years ago, "where Congress elsewhere provided adequate relief for a beneficiary's injury," awarding additional relief under § 1132(a)(3) "normally would not be 'appropriate.'" *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).

Here, each form of relief Plaintiffs seek—declaratory relief, reprocessing of claims, and prospective injunctive relief to enforce the terms of class members' plans—is available under § 1132(a)(1)(B). *Russell*, 473 U.S. at 146–47 (declaratory relief and prospective injunction clarifying rights to future benefits available under § (a)(1)(B)); *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460–61 (9th Cir. 1996)

(reprocessing). Because § 1132(a)(1)(B) provides for each of the remedies sought by Plaintiffs, relief under § 1132(a)(3) is unavailable as a matter of law and Plaintiffs are limited to the relief provided under § 1132(a)(1)(B). *Robertson v. Standard Ins. Co.*, No. 3:14-CV-01572-HZ, 2017 WL 3319114, at *4 (D. Or. Aug. 3, 2017) ("As a matter of law, now that Plaintiff's § 1132(a)(1)(B) has been resolved, Plaintiff cannot proceed with § 1132(a)(3) breach of fiduciary duty . . . claims unless such claims stem from an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 1132(a)(1)(B) is otherwise shown to be inadequate").

Even to the extent the Court were inclined to entertain Plaintiffs' baseless request for duplicative relief under § 1132(a)(3), Plaintiffs' ability to obtain equitable relief under that section is further constrained by two additional limitations. First, the "equitable relief" available under § (a)(3) is limited to those categories of relief that were typically available in courts of equity "before the merger of law and equity". *Amara*, 563 U.S. at 422 (quotation omitted). Accordingly, both compensatory and extracontractual damages, as well as other forms of legal relief, are not available under ERISA § 1132(a)(3). *Bast*, 150 F.3d at 1009.[4] Second, § (a)(3) "'does not . . . authorize 'appropriate equitable relief' *at large*,' [citation]; rather, it countenances only such relief as will enforce 'the *terms of the plan*' or" ERISA. *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) (emphasis in original). Accordingly, since Plaintiffs did not bring a claim for plan reformation, § 1132(a)(3) cannot provide a remedy that is "inconsistent with the written plan, or would, as a practical matter, result in an amendment or modification of a plan" in violation of ERISA's "writing and amendment requirements" for plan documents.[5] *Gabriel*, 773 F.3d at 956; *see also McCutchen*, 569 U.S. at 98, 100 (explaining that "hewing to

[4] In limited cases, § 1132(a)(3) may also authorize an equitable "surcharge" on theories of unjust enrichment or to compensate for a "loss of value to the trust or for any profits that the trust would have accrued in the absence of the breach" of fiduciary duty. *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012). The Court dismissed Plaintiffs' request for surcharge with prejudice at the summary judgment stage. ECF 286, at 26:17–18.

[5] "The power to reform [an ERISA plan] is available only in the event of mistake or fraud" in the drafting or adoption of the plan. *Gabriel*, 773 F.3d at 955. Plaintiffs never sought reformation of their plans, or offered any evidence of mistake or fraud in the formation of or adoption of class members' plans that would support such relief.

the [plan] yields 'appropriate' as well as 'equitable' relief" under § (a)(3) and is consistent with "ERISA's principal function: to 'protect contractually defined benefits'") (citation omitted).

**II. Plaintiffs Are Not Entitled To Reprocessing Of Denied Benefit Claims Because They Did Not Prove that Reprocessing Will Redress Any Classwide Injury.**

At the liability phase, Plaintiffs did not present evidence, and the Court did not conclude, that each of the Plaintiff's and class member's benefit decisions was impacted by the challenged portions of the guidelines.

Now, at the remedies stage, Plaintiffs have not established, on a classwide basis, a right for each class member to have his or her request for coverage reprocessed. As with any injunctive relief, to obtain a reprocessing injunction, Plaintiffs were required to prove that the specific irreparable harm they allege—the "loss or threatened loss of health benefits" (ECF 426, at 23)—"can be remedied by the proposed injunction" they seek. *Taiebat v. Scialabba*, No. 17-CV-0805-PJH, 2017 WL 839807, at *6 (N.D. Cal. Mar. 2, 2017); *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011) (injunctive relief requires a "sufficient causal connection between" the harm alleged and the injunction sought). This is a fundamental issue of remedial fit, which Plaintiffs were required to establish *in addition to* liability. *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) ("Injunctive relief . . . must be tailored to remedy the specific harm alleged."); *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1162 (9th Cir. 2011) (injunctive relief will not issue "simply because a defendant violates a statute that authorizes injunctive relief") (quotation omitted); *see also* FFCL, ¶ 156 (holding that certain of UBH's arguments regarding the failure of classwide proof "might be relevant to remedies" even if they did "not change the Court's findings with respect to liability").[6]

[6] Plaintiffs cite *Meidl v. Aetna, Inc.*, 346 F. Supp. 3d 223, 242 (D. Conn. 2018) to argue that they are not required to satisfy the traditional four-factor test to obtain a reprocessing injunction. ECF 426, at 8 n.5; *but see Bd. of Trustees of Bay Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*, No. 12-CV-05655-JCS, 2014 WL 4383062, at *3 (N.D. Cal. Sept. 4, 2014) ("the right to injunctive relief under ERISA is subject to a traditional equity analysis"); *see also Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1039–40 (8th Cir. 2016) (applying irreparable injury requirement to request for injunction under §§ (a)(1)(B) and (a)(3)). The Court need not determine whether all four of the traditional elements of injunctive relief are required to obtain reprocessing. Irrespective of whether Plaintiffs have satisfied the other elements, the requirement of an irreparable injury that can actually be redressed by the proposed injunction (*i.e.*, remedial fit) is inherent in *every form* of injunctive relief. *Beacon Theatres, Inc.* (Continued...)

Plaintiffs seek a reprocessing injunction for every member of the certified classes, and to obtain that relief, they were required to make a showing of remedial fit on behalf of the class as a whole with evidence applicable to the entire class. *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 483, 488 (C.D. Cal. 2008), *aff'd* 639 F.3d 942 ("Common proof of some kind is necessary to support this class-wide determination"); *Stockwell v. City & Cty. of S.F.*, No. C 08-5180 PJH, 2015 WL 2173852, at *6 (N.D. Cal. May 8, 2015) (classwide determination must be proven "at trial through evidence . . . common to the class rather than individual to its members"). To obtain such a classwide remedy, Plaintiffs were required to prove that the reprocessing they seek would benefit every member of the certified classes. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 365 (2011) (classwide injunctive relief unavailable where "about half the members of the class . . . have no claim for injunctive or declaratory relief at all"); *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL* No. 1869, 725 F.3d 244, 252 (D.C. Cir. 2013) (to obtain classwide relief under Rule 23(b)(3), plaintiff must "prove, through common evidence, that all class members were in fact injured"); *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 559 (C.D. Cal. 2012) (classwide injunctive relief could not issue under Rule 23(b)(2) where "the class includes [members] who will not benefit from declaratory or injunctive relief"). They failed to do so.

In the FFCL, the Court found that certain portions of UBH's LOCGs for the years 2011–2017 were inconsistent with "generally accepted standards of care" as that phrase (or its equivalents) were used in class members' benefit plans. *See* FFCL, ¶¶ 203, 211–212. Yet there remains no dispute that *many* portions of the LOCGs were never challenged in this case, and that the Court found other portions of the LOCGs to be consistent with generally accepted standards of care. *See* Pls. Consol. Claims Chart, ECF 404-2; FFCL ¶¶ 110 n.14, 125. This fact alone precludes a reprocessing injunction with respect to the class as a whole because Plaintiffs deliberately chose not to introduce evidence that every class member was harmed in a way that could actually be redressed through reprocessing using revised or different guidelines.

---

*v. Westover*, 359 U.S. 500, 506–07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.").

For example, UBH's LOCGs included as Common Criteria applicable to all levels of care requirements that "[t]he member's current condition can be most efficiently and effectively treated in the proposed level of care," or, similarly, that services be "backed by credible research soundly demonstrating that services will have a measurable and beneficial health outcome . . . ." Trial Exs. 1-0005, 2-0006–07, 3-0008, 4-0008, 5-0008, 6-0009, 7-0009, 8-0007. Neither of these criteria were challenged in this case, and the Court did not find that including them in UBH's LOCGs or applying them to class members' benefit requests constituted an abuse of UBH's discretion or a misinterpretation of the phrase "generally accepted standards of care." *See generally* Pls. Consol. Claims Chart, ECF 404-2; FFCL. And because *all* of the Common Criteria "had to be satisfied in order to obtain coverage at any level of care," failure to satisfy any one of them, including either of these two criteria, would constitute an independent basis to deny coverage under the LOCGs. FFCL, ¶ 43. Any class member denied coverage under these unchallenged criteria—or any other criterion Plaintiffs either did not challenge or that the Court found was consistent with generally accepted standards of care—was denied benefits "based upon" UBH's guidelines, and therefore is a member of one of the certified classes in this case. Order re Suppl. Class Notice, ECF 281. But those members have no claim under ERISA, were not damaged by the deficiencies the Court found in the guidelines, and are entitled to no relief in this case based on the evidence submitted at trial.

Even if the mere existence of other "flaws" in the LOCGs could give rise to an actionable claim for breach of fiduciary duty under ERISA for members who never experienced a denial based on those flaws, those class members are not entitled to *reprocessing* because reprocessing will not redress that injury. *Lamb-Weston, Inc.*, 941 F.2d at 974 ("Injunctive relief . . . must be tailored to remedy the specific harm alleged."); *see Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001) (reprocessing "is not justified" where the administrator "applied the right standard"); *Park Vill.*, 636 F.3d 1162–63 ("an overbroad mandatory injunction" that will not redress an irreparable injury is an abuse of discretion).[7] Plaintiffs cannot use Rule 23

[7] This is equally true with respect to the state mandate class. Plaintiffs did not prove that *any* member of the Connecticut, Illinois, and Rhode Island portions of the *Wit* State Mandate (Continued...)

to obtain a substantive remedy on behalf of individual class members who are not entitled to receive it. *Dukes*, 564 U.S. at 367 ("the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right'"), quoting 28 U.S.C. § 2072(b). Accordingly, the law dictates that Plaintiffs' request for classwide reprocessing be rejected. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) (failure of classwide proof on an element of a class claim should be addressed in a decision on the merits applicable to the class as a whole).

Evidence introduced at trial proves this point. For example, [redacted] Trial Ex. 2018-0004. Nothing in UBH's decision indicates that UBH denied coverage based upon any of the criteria challenged by Plaintiffs or identified by the Court as constituting an abuse of UBH's discretion to interpret the phrase "generally accepted standards of care." Likewise, [redacted], and *not* based on any of the level of care criteria that the Court found to be an abuse of UBH's discretion. Trial Ex. 1383-0002.[8]

Irrespective of UBH's *liability* to these class members for developing criteria that the Court found to be inconsistent with class members' plans (which UBH disputes), these class members and countless others like them are not entitled to the *remedy* of reprocessing.

---

Class was denied benefits based on any of the criteria the Court found inconsistent with (or not "in accordance" with) the ASAM Criteria. And with respect to the Texas portion of the *Wit* State Mandate Class, the evidence and the Court's FFCL demonstrate that UBH *did* comply with Texas law and apply the TDI Criteria to at least *some* class members' benefit requests. FFCL, ¶¶ 165–167 (summarizing voluminous evidence demonstrating that UBH applied the TDI Criteria where required by Texas law, but finding that UBH did not "consistently" apply the TDI Criteria for the entire class period).

[8] [redacted]. Trial Ex. 899-0127–29.

Reprocessing is only available where the evidence shows the administrator "applied a wrong standard" to a benefits determination. *Saffle*, 85 F.3d at 461. Here, there is no evidence that any of the "standards" the Court found to be "wrong" in this case was actually "applied" by UBH to deny benefits to these class members. UBH should not be ordered to reprocess their benefit requests because reprocessing would not redress any injury to these class members. *Lamb-Weston, Inc.*, 941 F.2d at 974; *accord Grosz-Salomon*, 237 F.3d at 1163; *DiGregorio v. Hartford Comprehensive Employee Ben. Serv. Co.*, 423 F.3d 6, 16 (1st Cir. 2005) ("To be entitled to a remand, [an ERISA plaintiff] must 'show prejudice in a relevant sense.'").[9]

To be clear, the unavailability of classwide reprocessing is a direct and natural consequence of Plaintiffs' strategic choices in pursuing this case. In order to bolster their arguments for class certification, Plaintiffs decided to discard any individual requests for benefits and instead to seek what amounts to 67,000 mandatory injunctions to individually reprocess benefit decisions.[10] *See* Order re Jt. Mot. for Approval of Notice Plan, ECF 224, at 3–4 (reprocessing is a form of individualized relief "that may be awarded only under Rule 23(b)(3)").

At trial, Plaintiffs doubled down on this strategy. None of the Plaintiffs testified about their individual benefit decisions and they did not even try to prove how their criticisms of the

[9] *See also Giordano v. Thomson,* 564 F.3d 163, 168 n.3 (2d Cir. 2009) (ERISA plaintiff who was not entitled to benefits could not obtain remand for reprocessing; "remand is unnecessary where it would be futile"); *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008) (ERISA plaintiff asserting claim for breach of fiduciary duty based on improper consideration of her claim is not entitled to remand where the "benefits determination . . . was, as a substantive matter, an appropriate implementation of" the plan); *Sage v. Automation, Inc. Pension Plan & Tr.*, 845 F.2d 885, 895 (10th Cir. 1988) (refusing remand to ERISA administrator where the result of the benefit decision was correct because "no purpose would be served by a further, but procedurally correct, review of appellants' claims by the trustee").

[10] Dissatisfied with Plaintiffs' decision to "drop" any request for the payment of benefits, numerous class members have pursued claims against UBH and/or self-insured plan sponsors for the direct payment of benefits in separate litigation. *See e.g.*, *Graham O., et al. v. United Behavioral Health, et al.*, Case No. 1:18-cv-00031-BSJ (D. Utah), ECF 60 (action by *Wit* Guideline Class member who did not opt out, in which the class member asserts that, among other things, the *Wit* class claims do not adequately represent the class member's interest in obtaining benefits). To the extent a class member has already received the benefits sought via a separate judgment under § 1132(a)(1)(B) or a settlement agreement, that class member's claim for the improper denial of benefits is now moot and the Court lacks jurisdiction to provide them with the substantive remedy of reprocessing. *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011).

guidelines relate to those decisions or any coverage decision for any other class member. Plaintiffs understood the risks. If they tried to introduce evidence to prove individual causation, they risked class decertification. If they excluded that evidence, they risked a finding of liability with no reprocessing relief available because there is no classwide proof that reprocessing will redress injury for all class members. They chose the latter and now must accept the consequences of that choice.[11] *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (a party is generally precluded from "prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase") (quotation omitted).

## III. In The Alternative, If The Court Orders Reprocessing, The Reprocessing Remedy Must Comport With The Legal Limitations And Discretionary Authority Imposed By ERISA And The Class Members' Plans.

In outlining a plan for reprocessing denied benefit claims for the class members, Plaintiffs ask the Court to enter a host of orders that are directly at odds with ERISA and the terms of class members' plans, including UBH's undisputed discretionary authority to interpret those plans. If the Court orders reprocessing of any class members' claims for benefits (as discussed above, it should not), the method and scope of that remedy must be aligned with ERISA law and with the evidence in this case.

Specifically, reprocessing of claims must proceed, if at all, upon confirmation from each class member that he or she is entitled to reprocessing because he or she: (1) received the same treatment with the same provider at the same level of care that was the subject of the benefit decision at issue; (2) was billed for those services; (3) did not assign rights to benefits to any

[11] Plaintiffs challenge the 209 diagnosis-specific CDGs at issue in this case "only to the extent they incorporate the Level of Care Guidelines." Pls. Post-Trial Brief, ECF No. 392, at 5; FFCL, ¶ 47. The Court has not yet determined whether Plaintiffs satisfied their burden at trial to prove with classwide evidence that any LOCG was incorporated into any of the 209 diagnosis-specific CDGs under any of Plaintiffs' eight varying theories of incorporation, or if so, to what effect. FFCL, ¶ 47 n.7. However, as UBH argued in its Post-Trial Brief, Plaintiffs did not satisfy their burden of classwide proof to establish liability as to the CDGs. UBH Post-Trial Brief, ECF 400, at 94–98; *see also* UBH Mot. for Class Decertification, ECF 425, at 4–6. Because Plaintiffs failed to prove liability as to any of the CDGs at issue, Plaintiffs are not entitled to reprocessing as to any of these 209 CDGs (or, at minimum, as to any CDGs that the Court finds did not incorporate the LOCGs). But even if the Court finds Plaintiffs proved that some of the CDGs did incorporate the LOCGs, Plaintiffs' request for classwide reprocessing still fails for all the same reasons that their request for reprocessing fails as to the LOCGs themselves.

other party; (4) did not already receive benefits for the same service from other insurance (including a secondary insurer); and (5) did not already receive benefits for the same service through an administrative appeal or separate litigation.

### A. ERISA's Reprocessing Remedy Is Premised On The Administrator's Right to Exercise Its Discretion To Interpret Coverage and Determine Benefits Under The Plan.

Reprocessing is "a form of retrospective injunctive relief" (ECF 426, at 8 n.5) available under § 1132(a)(1)(B), whereby the court orders an ERISA administrator to "determine what benefits [plaintiffs] are entitled to and under what conditions" based on the terms of the plan as written.[12] *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1013-14 (9th Cir. 1997) (discussing reprocessing as a § 1132(a)(1)(B) remedy, and explaining "it is the terms of the [plan] which control," and "[t]hus, we cannot, and will not, predict how the plan administrator, who has the primary duty of construction, will construe the terms of the" plan upon remand); *Pannebecker v. Liberty Life Assurance Co. of Bos.*, 542 F.3d 1213, 1221 (9th Cir. 2008) (describing reprocessing under *Saffle* as "remand to the administrator to apply the terms correctly in the first instance").

Reprocessing is not available under § 1132(a)(3). *Chorosevic v. MetLife Choices*, No. 4:05-CV-2394 CAS, 2009 WL 723357, at *11 (E.D. Mo. Mar. 17, 2009), aff'd, 600 F.3d 934 (8th Cir. 2010) (dismissing request for reprocessing under § 1132(a)(3) because "[t]his claim for reprocessing . . . is precisely what the Supreme Court disallowed under § 1132(a)(3)"); *Craft v. Health Care Serv. Corp.*, No. 14 C 5853, 2016 WL 1270433, at *6 (N.D. Ill. Mar. 31, 2016) (same); *Fairview Health Servs. v. Ellerbe Becket Co. Employee Med. Plan*, No. CIV.06-2585(MJDAJB), 2007 WL 978089, at *6 (D. Minn. Mar. 28, 2007) (same).

The remedy of reprocessing under § 1132(a)(1)(B) derives from the foundational principle that where the "Plan itself reposes discretion in the [benefit administrator] to determine" whether

---

[12] Plaintiffs concede reprocessing is "a form of retrospective injunctive relief." *See* ECF 426, at 8 n.5; *see also* Mot. for Class Cert., ECF No. 133, at 7:12–15 (describing reprocessing as "an injunction ordering UBH to reprocess the Class members' claims"); Order Granting Class Cert, ECF 174, at 42 (describing "an injunction requiring that all claims decided under the allegedly faulty guidelines be reprocessed"); *see also* 320 F.R.D. 486, 508-510 (N.D. Cal. 2017) (describing the remedy in *Saffle* as a "reprocessing injunction").

coverage is available under the terms of the plan, ERISA requires that courts respect that discretion. *Saffle*, 85 F.3d at 460. This deference is central to ERISA, which counsels "[d]eference to plan administrators, who have a duty to all beneficiaries to preserve limited plan assets" and to "prevent [] windfalls for particular employees." *Conkright v. Frommert*, 559 U.S. 506, 520 (2010) ("deference serves to . . . preserve the 'careful balancing' of interests that ERISA represents). Thus, even where a plan administrator initially "abused its discretion" and "misconstrued the Plan and applied a wrong standard to a benefits determination," "[i]t is not the court's function *ab initio* to apply the correct standard to the participant's claim. That function, under the Plan, is reserved to the Plan administrator." *Saffle*, 85 F.3d at 460–61 (quotes and alterations omitted). "It should be up to the administrator, not the courts, to make that call in the first instance."[13] *Id*. at 460.

As with all § 1132(a)(1)(B) remedies, Plaintiffs and class members are entitled to receive through reprocessing only what their individual plan allows. Reprocessing cannot be used to reform class members' plans and cannot impose obligations to pay or process benefits that are inconsistent with the terms of class members' plans, as written. *Wilson*, 2015 WL 6123776, at *3 (a "claim pursuant to Section 1132(a)(1)(B) can only be successful if [the relief] is consistent with the terms of the plan"); *see also Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) ("ERISA requires fiduciaries to comply with a plan as written unless it is inconsistent with ERISA" and "does no more than protect the benefits which are due to an employee under a plan"). Indeed, ERISA *prohibits* remedial measures that "would result in a payment of benefits that would be inconsistent with the written plan." *Gabriel*, 773 F.3d at 956. "While §

---

[13] Plaintiffs' reliance on *Carrier v. Aetna Life Ins. Co.*, 116 F. Supp. 3d 1067, 1084 (C.D. Cal. 2015), to argue that courts "commonly limit the remand to specific issues" is off base. ECF 426, at 16 n.19. In *Carrier*, the defendant did not have discretionary authority under the plan. *Carrier*, 116 F.3d at 1077–78. Thus, the court held that *Saffle* was "inapposite" and applied a *de novo* standard of review. *Id*. at 1083–84. However, because the court concluded that the record was insufficient to conduct its *de novo* review, the court exercised its own discretion to remand the matter to the administrator for further fact-finding on a specific issue, rather than take new evidence in court. *Id*. at 1084. Just as *Saffle* was "inapposite" in *Carrier*, *Carrier* is inapposite here. The remand order in *Carrier* did not account for the administrator's discretion because the administrator had no discretion to begin with.

[1132](a)(1)(B) allows beneficiaries and plan participants to recover benefits to which they are entitled, it does not provide that beneficiaries can recover benefits they did not, and now cannot, receive." *Hamann v. Independence Blue Cross*, 543 Fed. Appx. 355, 357 (5th Cir.2013); *see also Bowman v. U.S. W., Inc.*, No. CIV. 95-1923-FR, 1997 WL 118437, at *6 (D. Or. Mar. 10, 1997) (in an ERISA case, court lacked authority to "require the plan administrator . . . to provide coverage to a person who is not eligible to be covered under the express terms of the Plan"). To order otherwise would impermissibly require UBH to violate its "fiduciary duty to administer the ERISA plan in accordance with the terms of the plan." *Bowman*, 1997 WL 118437, at *6 (refusing an injunction that would result in payment of benefits to "a claimant [who] is not entitled to benefits under the express provisions of the Plan" because "[t]o hold otherwise would be to impose conflicting fiduciary duties upon the administrator of the ERISA plan").

### B. Under ERISA, The Appropriate Reprocessing Remedy Is Remand To UBH To Develop Or Adopt New Guidelines And Reprocess Certain Class Members' Claims For Benefits Using Those Guidelines.

Relying heavily on *Saffle*, Plaintiffs sought class certification on the premise that the appropriate remedy in this case is a simple remand to UBH to exercise its lawful discretion to re-determine class members' eligibility for benefits. *See* Pls. Reply ISO Class Cert., ECF 153 at 6 (citing *Saffle* and arguing "reprocessing is the preferred form of judicial relief" in this case because courts should be "diligent in avoiding becoming ultimate claims administrators"). Plaintiffs assured the Court that "they are only seeking as a remedy the reprocessing of claims in a manner that is consistent with generally accepted standards of care" and that the Court would not need to "usurp the role of the claims administrator." Order Granting Class Cert., ECF 174 at 27. The Court agreed, noting that, under *Saffle*, the appropriate remedy for Plaintiffs' claims would be "remand [to UBH] for reevaluation of the merits" of class members' requests for benefits, consistent with UBH's "discretion to apply [the] plan[s] . . . ." *Id.* at 47 (quoting *Saffle*). Plaintiffs later confirmed that, upon the adoption of new guidelines, the proper remedy would be a simple matter of "remand to [UBH] for ***it***"—not the Court—"to redo the benefit determination[s]" in the first instance. Pls. Opp. to UBH MSJ, ECF 261, at 1 (emphasis in original).

Now, having obtained class certification on the basis of those assurances, Plaintiffs are taking a very different view. Plaintiffs now ask the Court to dictate not only how UBH reformulates the guidelines, but which specific third-party guidelines UBH should use and how UBH should reprocess class members' claims. But Plaintiffs cannot have it both ways, invoking UBH's discretion over reprocessing when it is necessary to obtain class certification and then eschewing it at the remedies phase to dictate the method and outcome of reprocessing.

While Plaintiffs' preferred guidelines – LOCUS, CASII, and ASAM – are not mentioned in or mandated by the applicable ERISA plans, if reprocessing is ordered, UBH is willing to reprocess claims using those guidelines, including to determine benefits at ASAM Levels 3.1 through 3.5 to the extent those levels of care are covered under the terms of class members' plans.[14] But, as the Court acknowledged in its FFCL, the fact that class members' plans do not uniformly provide coverage for these "clinically managed" ASAM Levels of residential treatment "might be relevant to remedies" even if it does "not change the Court's findings with respect to liability." FFCL, ¶ 156. UBH maintains its discretionary authority to conduct any reprocessing according to plan terms. Even if the Court determines that reprocessing is available, any reprocessing order must comport with the remedies available under ERISA, rather than those invented by Plaintiffs.

#### 1. If Any Reprocessing Is Ordered, It Must Be Limited To Class Members Who May Benefit From Reprocessing Under The Limited Liability Theory That Gave Rise To Class Certification.

As the Court is aware, to pursue certification of a broad class encompassing over 67,000

---

[14] Plaintiffs seek an order requiring UBH to use the 2013 edition of the ASAM Criteria, the 2010 edition of the LOCUS instrument, and the 2014 edition of the CASII instrument, which are the versions of those criteria admitted at trial. ECF 426, at 13; ECF 426-1, at 7–8. Yet, Plaintiffs concede that the LOCUS instrument was updated in 2016 and they "do not object" to UBH using the 2016 edition of LOCUS instead of the outdated version they relied on at trial. ECF 426, at 13 n.13. While UBH will agree to use the ASAM, LOCUS, and CASII Criteria (as appropriate) to the extent reprocessing is ordered, Plaintiffs concession regarding the outdated LOCUS criteria highlights why UBH cannot and should not be ordered to use specific criteria selected by Plaintiffs, or be bound to use certain criteria in perpetuity. The generally accepted standards of care are not static, but constantly evolve and UBH has the discretion to adapt to those changes. If reprocessing is ordered, UBH will agree to use the current version of the ASAM, LOCUS, and CASII criteria in effect at the time of reprocessing.

benefits requests, Plaintiffs aimed to avoid the individualized determinations of medical necessity needed for monetary recovery of benefits denied. Plaintiffs thus abandoned the notion of a court-ordered payment of benefits under ERISA § 1132(a)(1)(B) and instead pursued a reprocessing remedy that would remand previous benefit determinations to UBH to make new determinations under reformulated guidelines. But Plaintiffs now ask this Court to order UBH to reprocess all 67,000 requests for benefits even though Plaintiffs concede that only a subset of the class actually received treatment and submitted claims for payment and thus might even conceivably benefit from reprocessing. If the Court determines that any reprocessing is available, the remedy must be limited to those class members with the potential to benefit from reprocessing.

#### a. Any Reprocessing Remedy Must Be Limited To Class Members Who Received The Treatment That Was The Subject Of The Adverse Benefit Determination At Issue.

The classes in this case include members who received adverse benefit determinations at different stages of treatment. Some requested preauthorization of benefits before seeking medical services ("pre-service denials"); some requested additional authorization during an ongoing course of treatment ("concurrent denials"); and some requested benefits after treatment was already completed ("post-service denials"). Of the pre-service and concurrent denials, some individual members went on to receive the requested treatment and paid out-of-pocket, while others elected not to pursue the treatment or pursued alternative treatment that may or may not have been covered by UBH or another insurer. Plaintiffs acknowledge in their remedies brief and proposed order that class members who did not receive the treatment for which they requested coverage at the specific level of care requested cannot obtain benefits through reprocessing. *See* ECF 426-1 at 9 (seeking an order for calculation and payment of benefits for "all services ***received*** by the class member ***at the requested level of care***") (emphasis added); ECF 426 (same).

Plaintiff's concession is compelled by law. A class member who did not receive the requested treatment "during the time that it would have benefitted her" and "is no longer a candidate for the treatment . . .does not have legal recourse under section [1132](a)(1)(B)." *Durham v. Health Net,* No. C-94-3575 MHP, 1995 WL 429252, at *3 (N.D. Cal. June 22, 1995), *aff'd*, 108 F.3d 337 (9th Cir. 1997) (explaining the plaintiff had "not accrued recoverable costs"

under § (a)(1)(B)); *see also Hamann,* 543 Fed.Appx. at 357 ("While § [1132](a)(1)(B) allows beneficiaries and plan participants to recover benefits to which they are entitled, it does not provide that beneficiaries can recover benefits they did not, and now cannot, receive"). This is because § 1132(a)(1)(B)'s remedies are limited to those available under the terms of the plan and the plans only provide benefits for covered health services that are actually received by an eligible plan beneficiary.[15]

While Plaintiffs concede that members who did not receive the treatment cannot benefit from reprocessing, they do ***not*** concede the logical corollary: only those class members who actually received services are legally *eligible* for reprocessing. If a class member did not receive the services that were the subject of the adverse benefit determination challenged in this case, the remedy of reprocessing is unavailable and would be pointless. Even if UBH were to determine that coverage was available, if the Plaintiff did not receive the service, no benefits can be paid based on that determination. *Durham*, 1995 WL 429252, at *3; *Hamann,* 543 Fed.Appx. at 357.

**b. Any Reprocessing Remedy Must Be Limited To Class Members Who Timely Submitted Claims Demonstrating Payment For Treatment.**

A second, related limitation on reprocessing flows from the first. Reprocessing must be limited to class members who submitted timely claims for payment after receiving covered health services. As discussed above, under ERISA and the class certification theory pursued by Plaintiffs, class members can obtain injunctive or declaratory relief to enforce their rights *under their plan*. If UBH determines that a class member was entitled to coverage for a service, and

[15] A class member who went on to receive treatment at a *different level of care* than the one requested also cannot possibly obtain benefits through reprocessing. As Plaintiffs concede, reprocessing is limited to a re-assessment of whether class members were entitled to benefits "at the requested level of care," not whether class members were entitled to benefits at some other level of care. For example, a member who sought benefits for services at the residential level of care, but subsequently received treatment at the partial hospitalization level of care cannot obtain benefits through reprocessing—even if she paid out-of-pocket for partial hospitalization services—because she did not actually receive the benefits requested and denied based on the guidelines. *Durham,* 1995 WL 429252, at *3; *Hamann*, 543 Fed.Appx. at 357; *see also Davila*, 542 U.S. at 211 (where ERISA beneficiaries were denied benefits for one drug and subsequently took a different drug rather than pay for the preferred drug out of pocket, claim for damages from use of second drug held preempted; "[u]pon the denial of benefits, respondents could have paid for the treatment themselves and then sought reimbursement through a § [1132](a)(1)(B) action").

that he received that service and paid for that service, the plan would be required to pay benefits consistent with the schedule of benefits set forth in the applicable plan, and any plan terms addressing deductibles, cost-sharing, and coordination of benefits. But under the terms of the plans, to have any right to payment of benefits, class members were first required to submit a timely claim for payment. *See*, *e.g.*, Trial Ex. 1550-0074 (providing that "claims must be filed within 12 months of the date you or your covered dependent received services . . . otherwise no benefits will be paid"); Trial Ex. 1539-0035 ("Claims filed more than 12 months after the date of treatment or services" are excluded from coverage). Class members who received treatment but did not submit timely benefit claims to UBH do not have claims to reprocess and cannot receive any remedy from reprocessing, and thus reprocessing would be futile.

*A.F. v. Providence Health Plan*, 157 F. Supp. 3d 899, 910 (D. Or. 2016), is directly on point. In *A.F.*, the plaintiffs brought an individual claim for payment of benefits under § 1132(a)(1)(B) arising out of the ERISA administrator's denial of authorization for a particular treatment for autism (Applied Behavioral Analysis or "ABA"). The plaintiffs received the treatment anyway, and eventually submitted claims for some (but not all) of the sessions, which the administrator denied. Plaintiffs sued for both the timely submitted and un-submitted amounts.

The court in *A.F.* granted summary judgment for plaintiffs on the timely submitted claims, but denied summary judgment on the un-submitted amounts. *Id.* at 910-912. The court held that the plaintiffs' plans "did not entitle them to compensation for services for which no claim was timely made," and they could not use § 1132(a)(1)(B) to obtain benefits that they were not entitled to receive under the express terms of their plan. *Id.* at 910. The court reached this conclusion despite the fact that the plan administrator denied the pre-service requests for authorization (and the post-service submitted claims) under a uniform policy excluding ABA treatment from coverage. Indeed, the Court held that administrative appeals of the adverse benefit decisions would have been futile. *Id.* at 909. Nevertheless, the Court denied summary judgment on the un-submitted claims because § 1132(a)(1)(B) cannot be used to compel payment of benefits inconsistent with the express terms of the plan, which requires submission of a claim for payment after services are received. *Id.* at 910-912.

*A.F.* shows why Plaintiffs are wrong in arguing that class members who did not submit claims should be excused because doing so was "futile." They cite no authority for the proposition that the Court may deviate from the terms of the plans and require UBH to pay benefits on claims never submitted, or submitted for the first time during reprocessing years after the services were received. Whether framed as an order to pay benefits or an administrative remand to reprocess new claims, as the Supreme Court stated in *Amara*, 563 U.S. at 435–438, § 1132(a)(1)(B) does not authorize the reformation of a plan to require payment of benefits according to the plan as reformed. It authorizes only the payment of benefits that accord with the existing terms of the plan, including the timely claim submission requirement.

#### c. Any Reprocessing Remedy Must Be Limited To Those Class Members Who Respond To The Notice And Affirm Eligibility.

The third condition for reprocessing is compelled by the limited evidence Plaintiffs offered at trial, and is necessary to identify the class members entitled to reprocessing. Plaintiffs opted at the liability trial to forego proving that each class member was entitled to benefits that were wrongfully denied because of the flaws in the guidelines. Beyond failing to prove individual causation, Plaintiffs also submitted no evidence on the basic facts entitling each class member to reprocessing – *i.e.* that they received, and incurred expenses for, health services that may be covered by the plan when evaluated using clinical guidelines approved by the Court. *See Durham,* 1995 WL 429252, at *1 (relief is not available under § 1132(a)(1)(B) if the member did "not obtain the treatment and is no longer a candidate for it"); *Hamann*, 543 Fed. Appx. at 357 (§ 1132(a)(1)(B) "does not provide that beneficiaries can recover benefits they did not, and now cannot, receive"); *Dailey v. Blue Cross & Blue Shield of Kansas City*, No. 17-01036-CV-W-ODS, 2019 WL 539119, at *7 (W.D. Mo. Feb. 11, 2019) ("Plaintiff is not entitled to payment for benefits not received – i.e., the cost of receiving care at a . . . facility from which Plaintiff did not seek any treatment"); *accord* Trial Exs. 1549-0089 (sample limiting "Eligible Expenses" under the plan to "Covered Health Services incurred while the plan is in effect"); Trial Ex. 1557-0110 (defining "Eligible Expenses" as "charges for Covered Health Services that are provided while the plan is in effect").

To take part in the reprocessing remedy, class members should be required to affirm the minimum facts that qualify them for the reprocessing remedy, including that: (1) the class member received the same treatment with the same provider at the same level of care that was the subject of the benefit decision at issue; (2) the class member was billed for those services; (3) the class member did not assign rights to benefits to any other person or entity; and (4) no other insurance entity (including a primary or secondary insurer) has already paid benefits under another plan in connection with the same services.[16] This is necessary information because, to the extent a class member has already received benefits for the requested service (either through separate insurance or from UBH via the administrative appeal process or individual litigation), his or her claim is moot, and the Court lacks subject-matter jurisdiction to order a substantive remedy. *Silk v. Metro. Life Ins. Co.*, 310 F. App'x 138, 139 (9th Cir. 2009) (a claim under § 1132(a)(1)(B) is moot where benefits requested have already been paid); *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011) (same); Trial Ex. 1544-0081–85 ("Coordination of Benefits" plan provisions explaining effect of coverage under multiple insurance policies on available benefits under the plan"). Receipt of health care services does not always mean that the member was billed for them or suffered any injury if coverage was denied. *See* Trial Ex. 1286-0002 (benefit decision letter explaining that, because the member sought services from an in-network provider, the member could not be billed for any services by the provider absent a separate written payment agreement). Likewise, if a class member assigned his or her rights to

[16] While UBH has some records of claims for payment submitted by class members or their providers, these records are stored in separate "claims databases" that are not connected to the coverage database that was used to create Trial Exhibit 255. The information in the claims databases is inadequate to identify class members for reprocessing. For example, the level of care at issue in *Wit,* residential treatment, often is not segregated from other types of inpatient treatment in the claims databases. The claims databases also do not contain information about whether the provider pursued the member for payments beyond the member's deductible, co-pay or other responsibilities under the plan, which is often the case for in-network providers who agree with UBH not to pursue payment from the member for treatment not authorized. The databases also do not contain information about whether the member assigned rights to payments to the provider or other third party. And, the databases do not reflect whether the member already received coverage for the services from another, primary or secondary insurer (*e.g.*, insurance provided through a spouse's benefit plan or government-sponsored health plan). Decl. of Heather M. Bowden, at ¶¶ 3–8. This information is needed to identify which class members are entitled to reprocessing.

benefits under the ERISA plan to a provider, that member has no right to reprocessing, which must be sought, if at all, by the provider to whom benefits were assigned. *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1293 (9th Cir. 2014) (where ERISA beneficiaries have "assigned their right to seek payment from their plans, they may not themselves seek payment of those claims"); *DeMaria v. Horizon Healthcare Servs., Inc.*, No. 11-7298 WJM, 2015 WL 3460997, at *5–9 (D.N.J. June 1, 2015) (where proposed class of providers had been assigned rights to ERISA benefits, providers were the correct parties to seek reprocessing under § (a)(1)(B)).

Providing this basic information will not impose undue burden on the class members, as it may be as simple as checking boxes on a prepared form. Courts regularly employ notice and response procedures like this in order to provide an effective and efficient remedy to a large class. For example, in *Marcus v. Bowen*, No. 85 C 453, 1989 WL 39709, at *1 (N.D. Ill. Apr. 18, 1989), the court ordered reprocessing only for those claimants who requested it because it was the most efficient method of identifying and paying claimants who were owed benefits under the court's remedial order. The court noted that an approach targeting reprocessing to those class members potentially eligible for actual relief would help manage what would otherwise be an unwieldy process. "Although the breadth of the class definition is broad indeed, we expect the number of individuals affected by the remedial scheme to be, by comparison, quite small, and the number of claimants who will actually receive benefits even smaller." *Id.* at *1.[17]

Here, class members with actual claims for reimbursement can identify themselves for the reprocessing remedy though a simple form. The court in *Potter v. Blue Cross Blue Shield of*

---

[17] *See also Mason v. Bowen*, No. CIV.A. 83-224, 1986 WL 15765, at *1, 5 (D. Vt. Oct. 8, 1986) (ordering reprocessing only for class members who respond to a notice issued by defendants because "notices provide a practical tool for efficient large scale reprocessing of claims."); *Pratt v. Bowen*, 642 F. Supp. 883, 888 (D.D.C. 1986) (rejecting plaintiff's proposed remedy as "excessive and expensive and . . . assum[ing] a reluctance . . . to accede to the Court's ruling for which there is at the moment no evidence" and adopting the defendant's claims-made reprocessing procedure); *Z.D. ex rel. J.D. v. Grp. Health Co-op.,* No. C11-1119RSL, 2012 WL 5033422 (W.D. Wash. Oct. 17, 2012) (certifying a class for which the available remedy would be "an injunctive order requiring Defendants to notify their beneficiaries of their breach and of each beneficiary's ability to resubmit an initial claim").

*Michigan*, No. 10-CV-14981, 2013 WL 12183410 (E.D. Mich. Nov. 4, 2013), approved a similar approach, in which BCBS mailed a notice letter to class members designed to obtain the information BCBS required to reprocess their claims:

> The letter notifies the potential plaintiffs of the Court's judgment and requests that the potential plaintiffs provide proof of out-of-pocket cost, proof of treatment provided, proof of dates of service, provider credentials, and the provider's participating status with BCBS.

*Id.* at *2. The Court had elected to remand to BCBS "to determine which potential class claims or portions thereof were denied for specific and valid reasons not related to that for which the Court certified the class" and acknowledged that BCBS's own records "may not yield requisite information to readminister all the claims." *Id.* at *3. The less onerous approach proposed by UBH here, which would not require the submission of any medical records or other documents to support reprocessing, will achieve a similar, salutary effect of gathering basic information and streamlining recovery for those genuinely entitled without imposing undue burden on class members.

A notice and confirmation requirement also alleviates serious privacy concerns inherent in Plaintiffs' proposal. Plaintiffs' proposed order would have UBH reprocess requests for coverage for the entire class without any individual class member having asked for such a result. Under Plaintiffs' proposal, without further word from any class member, UBH would reprocess requests for service—some from as long as eight years ago—and send determinations containing sensitive and protected personal health information about their behavioral health diagnoses, symptoms and treatments (including information about minors who are now adults) to the last-known addresses of those class members. Asking individual class members to affirm that they want to participate in reprocessing and to confirm their contact information eliminates the risk of privacy concerns while speeding up the resolution of those claims for which tangible relief may be granted.[18]

[18] The issue of the incorporation of the LOCGs in the CDGs also must be resolved before notice should be given. As many as one-third of the class members had their requests for service denied as a result of the CDGs and not the challenged LOCGs. Trial Ex. 255. If those plaintiffs have no actionable claim (beyond the general right to reformulated guidelines), it would be impermissible to require the meaningless but burdensome exercise of reprocessing.

**d. Any Reprocessing Remedy Must Exclude Class Members Who Obtained Benefits Through The Administrative Appeal Process.**

Plaintiffs ask the Court for an order directing UBH to reprocess "each and every adverse benefit determination listed on the Class List admitted at trial as Trial Exhibit 255 . . . ." ECF 426-1, at 6. But it is undisputed that the "class list" (Trial Ex. 255) includes numerous class members who *received* the full benefits they requested. Plaintiffs' request for such an overboard classwide reprocessing injunction should be denied for this reason alone. But even if reprocessing is ordered, UBH should not be ordered to reprocess the benefit claims of any class member whose original request for benefits was ultimately approved through the administrative appeals process.

The "class list" found at Trial Exhibit 255 shows ERISA plan members who received *initial* adverse clinical benefit determinations from UBH for the relevant levels of care during the relevant class period. But, as the only witness to testify about this list at trial explained, the list shows only the outcome of UBH's *initial* benefit determination. Trial Tr. 1483:15–1484:17 (Bridge). The "class list" does not indicate whether any class member submitted an administrative appeal, and does not reflect the outcome of any appeals. *Id.* If a class member received an *initial* adverse benefit determination, that benefit decision would appear on Trial Exhibit 255 even if the member successfully appealed the initial decision and actually received the full amount of benefits requested. *Id.* This is not just a theoretical possibility: 15 to 25 percent of appeals regularly result in an overturn of the initial decision and authorization of benefits. Trial Tr. 1504:15-1505:1 (Bridge). In fact, among the small sample of members whose administrative records were offered into evidence, 36 percent opted to appeal the initial benefit decision reflected in Trial Exhibit 255. Trial Tr. 1503:21-24 (Bridge). Of the members who appealed, UBH fully overturned the initial benefit decision for 12 percent, meaning that these members received the full amount of benefits requested. Trial Ex. 1655; Trial Tr. 1484:10-17, 1502:10-12, 1503:18-1504:14 (Bridge).

A "participant's cause of action under ERISA . . . does not accrue until the plan issues a *final* denial." *Heimeshoff*, 571 U.S. at 105 (emphasis added). UBH cannot be enjoined under

ERISA to reprocess claims for class members who have already received everything that reprocessing could provide them (authorization of benefits), and further reprocessing cannot redress any ongoing injury. *Lamb-Weston, Inc.*, 941 F.2d at 974; *accord DiGregorio*, 423 F.3d at 16 ("To be entitled to a remand, [an ERISA plaintiff] must 'show prejudice in a relevant sense'"). "Since [these class members] ha[ve] received everything [they] requested in [their] benefit claim[s], [those] claim[s] became moot and the district court lack[s] jurisdiction" to redress them. *Pakovich*, 653 F.3d at 492; *Silk*, 310 F. App'x, at 139 ("payment of . . . benefits . . . moots [a] claim to such benefits" under ERISA).

Because Plaintiffs failed to establish that such a significant portion of the class is entitled to the reprocessing injunction, the proper result is for the Court to reject reprocessing as a classwide remedy.[19] *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) (failure of classwide proof on an element of a class claim should be addressed in a decision on the merits applicable to the class); *see Marlo*, 251 F.R.D. at 483, 488. But if the Court does order reprocessing of some claims, it should exclude any class member whose initial adverse benefit determination was overturned on appeal.

**e. Any Reprocessing Remedy Must Exclude Members Of The Texas Portion Of The *Wit* State Mandate Class.**

For similar reasons, UBH cannot be enjoined to reprocess benefit requests for the Texas portion of the *Wit* State Mandate Class. The Court's FFCL confirm that the Texas portion of the *Wit* State Mandate Class includes individuals whose requests for benefits were properly reviewed using the TDI Criteria. FFCL, ¶¶ 165–167 (summarizing voluminous evidence demonstrating that UBH applied the TDI Criteria where required by Texas law, but finding that UBH did not "consistently" apply the TDI Criteria for the entire class period). Because the evidence and the Court's FFCL establish that Trial Exhibit 255 includes members whose requests for benefits were correctly adjudicated under Texas law using the TDI Criteria, Plaintiffs' request for an overbroad injunction directing UBH to reprocess "each and every adverse benefit determination" on "Trial

[19] Alternatively, the class should be decertified, as discussed in UBH's pending motion for class decertification. ECF 425 at 3–4.

Exhibit 255" should be denied.[20] *Tyson Foods*, 136 S. Ct. at 1047; *Lamb-Weston, Inc.*, 941 F.2d at 974; *DiGregorio*, 423 F.3d at 16; *Marlo*, 251 F.R.D. at 483. To the extent the Court orders reprocessing, it should exclude the Texas portion of the *Wit* State Mandate Class.[21]

#### f. Any Remand And Reprocessing Should be Limited To The Existing Administrative Record.

Reprocessing, if allowed at all, should be limited to claims that were timely submitted and should be based on the existing administrative record. Plaintiffs ask the Court to supplant UBH's discretion in reprocessing by *requiring* that class members be given "an opportunity to complete the administrative record with respect to their requests for coverage." ECF 426, at 10:3-4. But as Plaintiffs' own cited cases explain, where a court orders reprocessing under ERISA, "[t]he proper remedy is to remand the case to [UBH] for reevaluation of whether [class members] qualif[y] for benefits *based on the medical evidence previously submitted*." *Duarte v. Aetna Life Ins. Co.*, No. SACV 13-00492-JLS RN, 2014 WL 1672855, at *10 (C.D. Cal. Apr. 24, 2014) (emphasis added). Plaintiffs ignore this limitation and declare they are entitled to an affirmative injunction requiring UBH to reopen the administrative record for every class member, years after it closed, based on their unsubstantiated and conclusory argument that class members' administrative records are somehow uniformly incomplete. ECF 426, at 10-12. Notably, Plaintiffs do not cite evidence of a single instance where a class member's administrative record is not sufficiently complete to adequately determine the member's eligibility for benefits under their plan.

---

[20] Plaintiffs also failed to offer any classwide proof demonstrating which benefit determinations on Trial Exhibit 255 were governed by Texas law, but for which UBH failed to apply the TDI Criteria. *See* Trial Tr. at 1471:3–11, 1491:22–1492:7, 1493:11–15 (Bridge) (explaining that it is impossible to tell using Trial Ex. 255 whether the TDI Criteria were mandated for any particular benefit decision or whether the TDI Criteria were, in fact, used); Trial Ex. 1298-0007 to -08 (letter to Sample Member stating that benefit decision was explicitly based on the TDI Criteria *in addition to* a CDG).

[21] In making this alternative argument, UBH does not concede that a reprocessing injunction that excludes class members whose benefit requests were overturned on appeal or the Texas portion of the *Wit* State Mandate class is permissible under Rule 23. To the contrary, such an order would impermissibly convert the certified classes into prohibited "fail-safe" classes whose membership "cannot be defined until the case is resolved on its merits." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). "When the class is so defined, once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class. That is palpably unfair to the defendant . . . ." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010).

Plaintiffs' reliance on cases directing the administrator to consider additional evidence on remand is misplaced. Each of those decisions followed an individualized determination about the sufficiency of the administrative records at issue. Plaintiffs made no similar showing on the sufficiency of class members' administrative records in this case, and are not entitled to an injunction requiring UBH to expand the administrative record for every class member. To the contrary, the Court found that UBH's guidelines required the collection of information "on a wide variety of topics" relevant to generally accepted standards of care, including information that is "relevant to a member's chronic condition . . . ." FFCL, ¶ 105. While the Court found UBH's decision criteria did not mandate *sufficient consideration* of this information "in the actual determination of coverage," *id*., Plaintiffs made no showing that the necessary information is *missing* from class members' underlying administrative records. *See Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944 (9th Cir. 1995) (holding in the context of *de novo* review—where the Court, rather than the administrator, re-reviews the benefit decision—additional evidence should only be considered upon a showing that additional evidence is "necessary to conduct an adequate . . . review of the benefit decision").[22]

Nevertheless, to the extent the Court allows class members to supplement the administrative record at all, the process and timeline for doing so must be determined by the procedures set out in each class member's plan. For example, Plaintiffs' demand that UBH be prohibited from denying a request for benefits during reprocessing "unless UBH has first made a good-faith effort to contact the provider listed . . . to collect the additional necessary clinical information" (ECF 426, at 12; ECF 426-1, at 7) has no basis in ERISA or class members' plans. Once UBH notifies a plan member that additional clinical information is necessary to determine benefits, the law and class members' plans place the onus of obtaining and providing that information on the member, not UBH, and some plans even *prohibit* the payment of benefits to members who fail to satisfy that obligation. *See*, *e.g.*, Trial Ex. 231-0053 (Flanzraich plan)

[22] Of course, UBH would have the *discretion* to consider additional evidence that was not previously submitted at the time of an initial benefit determination, to the extent such evidence is necessary to determine benefits under class members' plans as construed by the Court.

(providing that additional information required to evaluate a claim must be submitted within "45 days from the date you receive Our request to provide the additional information" and that "if you do not submit the additional information within the above timeframes, your claim or request for services will be denied"); *see also* 29 C.F.R. 2560.503-1(f)(2)(iii) (allowing for an extension of the time to decide a benefit request in certain circumstances "due to a ***failure of the claimant*** to submit the information necessary to decide the claim"); *Wilson*, 2015 WL 6123776, at *3 (relief under § 1132(a)(1)(B) must be consistent with the terms of the plan). Ordering that UBH consider new clinical records or other information outside the administrative record or assume class members' responsibility to prove entitlement to benefits without regard to plan terms contravenes the foundational principles of the reprocessing remedy under ERISA.

**g. If Reprocessing Is Ordered, And Particularly If The Record Is Expanded, UBH Should Be Allowed To Exercise Its Discretion To Reassess The Requested Coverage Under Newly Adopted Guidelines, As Well As Any Other Applicable Plan Terms.**

In the event the Court orders reprocessing, Plaintiffs ask the Court to prohibit UBH from "asserting new grounds for denying coverage that it did not assert when it denied the claim" in the first instance, even if new information is submitted by the class member. ECF 426, at 15. Plaintiffs' requested order is not supported by ERISA and is not permitted under class members' plans.

Plaintiffs rely on the Ninth Circuit's decision in *Harlick v. Blue Shield of Cal.*, 686 F.3d 699 (9th Cir. 2012), to argue that affording UBH its lawful discretion to determine benefits based on standards consistent with the plan language would amount to "sandbagging" class members with a "rationale the plan administrator adduces only after the suit has commenced." ECF 426, at 15–16 (quoting *Harlick*, 686 F.3d at 719–20). But *Harlick* says nothing about an administrator's discretion to apply plan terms upon remand for reprocessing. To the contrary, the Ninth Circuit's decision in *Harlick* was premised on the court's *refusal* to remand the benefit request to the administrator for reprocessing. *Harlick*, 686 F.3d at 719. Because the Ninth Circuit declined to remand, the Court observed that allowing the benefit administrator to assert new bases for a benefit denial *in litigation* would unfairly deny the claimant the benefit of the administrative

review process or to prepare an adequate administrative record. *Id.* at 719–21.

Plaintiffs do not cite a single case applying *Harlick*'s rationale to an administrative remand for reprocessing. In fact, the broad injunction sought by Plaintiffs supports permitting UBH to exercise in full the discretion granted to it by the plans in reprocessing benefit claims. Plaintiffs seek a mandate from this Court that any adverse benefit decision by UBH on remand "shall be considered an initial adverse benefit determination for purposes of ERISA . . . and the class member shall be entitled to avail himself or herself of all rights to administrative appeal pursuant to ERISA and the class member's plan," as well as any subsequent judicial remedies. ECF 426-1, at 8–9. Likewise, Plaintiffs ask the Court to grant class members the opportunity to expand the administrative record with additional evidence regarding their request for benefits. To the extent the Court remands to UBH for reprocessing, and particularly if the Court allows class members to supplement the administrative record, the concerns addressed in *Harlick* are non-existent. Class members will have the full benefit of the administrative review process to challenge any and all bases for UBH's benefit decision at reprocessing, and UBH must be permitted to exercise its plan-conferred discretion and its fiduciary duty to only pay benefits to members entitled to receive those benefits under the express terms of their plans.[23] *See Wright*, 360 F.3d at 1100 ("ERISA does not create an exclusive duty to maximize pecuniary benefits," but instead imposes a "duty to act in accordance with the plan document") (citation omitted).

Even if the reasoning of *Harlick* applied in this case, Plaintiffs' proposed order categorically prohibiting UBH from denying coverage based on anything other than "generally accepted standards of care" is overbroad and should be rejected. First, for cases where UBH

---

[23] Plaintiffs appear to seek an order requiring UBH to provide all class members with a right of external appeal. ECF 426-1, at 8–9. Such a request has no basis in ERISA, which requires only one level of administrative appellate review, and does not require that such an appeal be offered through an external appeal organization. *See* 29 C.F.R. 2560.503-1(h). While some class members' plans and certain state laws provide for additional levels of administrative review, sometimes including external appellate review, UBH cannot be forced to offer appellate rights beyond those provided by ERISA, the member's plan, and state law. *Vizcaino*, 120 F.3d at 1013-14 ("it is the terms of the [plan] which control" on reprocessing under § (a)(1)(B)); *McCutchen*, 569 U.S. at 100 (holding that § (a)(3) "'does not . . . authorize 'appropriate equitable relief' *at large*'," but "only such relief as will enforce 'the *terms of the plan*' or ERISA") (emphasis in original) (citation and quotation omitted).

denied benefits on multiple grounds, nothing in *Harlick* would preclude UBH from denying benefits on any ground previously identified by UBH. Plaintiffs cannot veto denial rationales that they did not challenge in this case under the guise of a reprocessing injunction.[24] Second, where the facts giving rise to a new decision rationale were not previously known to the administrator, the Ninth Circuit recognizes an exception to *Harlick*'s rule against raising a new rationale for the first time in litigation. *Spinedex*, 770 F.3d at 1297 (distinguishing *Harlick* and holding the defendants "did not waive their objection" because "there is no evidence that United was aware, or should have been aware, during the administrative process" of the basis for the new decision rationale). If class members are permitted to expand the administrative record with new information, UBH must be permitted to evaluate that information and make a *de novo* benefit determination on the full record.[25] *Martinez v. Beverly Hills Hotel & Bungalows Employee Benefit Tr. Employee Welfare Plan*, No. 2:09-CV-01222-SVW-PLA, 2015 WL 12843760, at *6 (C.D. Cal. Oct. 29, 2015) (noting an "exception to [*Harlick*'s] waiver rule where there is insufficient information for plan administrators to assert a particular ground for denial).

### C. Since Plaintiffs Abandoned Money Relief In Favor Of A Classwide Injunctive Reprocessing Remedy, Prejudgment and Postjudgment Interest Is Unavailable.

Because Plaintiffs made the strategic choice to abandon the pursuit of monetary recovery

---

[24] To the extent UBH denied benefits on multiple grounds that include grounds not challenged in this case (e.g., because the requested services were not covered under the plan or subject to a different plan exclusion), UBH should not be ordered to reprocess those claims at all. *See McCartha v. Nat'l City Corp.*, 419 F.3d 437, 447 (6th Cir. 2005) (where benefit administrator relied on "two independent reasons for denying [] benefits," the fact that one of those two grounds was invalid did not entitle plaintiff to remand for reprocessing; because at least one of the independent grounds was correct, the administrator's violation of ERISA as to the other ground did "not require a substantive remedy"); *see also Barnes v. AT & T Pension Ben. Plan--Nonbargaines Program*, No. C-08-4058 EMC, 2012 WL 1657054, at *6 (N.D. Cal. May 10, 2012), *aff'd*, 622 F. App'x 669 (9th Cir. 2015) (granting summary judgment on claim for improper denial of plan benefits, but denying request for reprocessing; it was clear that "remand would be a useless formality" and plaintiff was "not entitled to any real relief").

[25] For example, a member who initially sought prior authorization for residential treatment might supplement the administrative record with medical records demonstrating that the residential treatment the member received was experimental and therefore excluded from coverage under the terms of her plan. Even under *Harlick*, UBH cannot be ordered to ignore that information and pay benefits in violation of an exclusion in the class member's plan for unproven or experimental treatment.

in favor of a classwide reprocessing remedy (where any reimbursement they receive will be issued by UBH and not the Court), prejudgment and postjudgment interest is not available. As Plaintiffs made clear in seeking class certification, reprocessing is "not court-ordered benefit payments" and will "not [result in] a court order requiring UBH to pay previously denied benefit claims." Pls. Reply ISO Class Cert, ECF 153, at 7, 15. Plaintiffs therefore cannot obtain an order of prejudgment or postjudgment interest: by their own admission, they did not prove that a single class member was actually entitled to benefits, and this case will not result in a "money judgment" for the payment of benefits to which any interest can attach. *See* 28 U.S.C. 1961(a) (providing for postjudgment interest "on any money judgment in a civil case"). *Nelson v. EG & G Energy Measurements Grp., Inc.*, 37 F.3d 1384, 1391 (9th Cir. 1994) (explaining in an ERISA case that prejudgment interest is designed to compensate for the "lost investment potential of funds to which the plaintiff was entitled"); *see also Blankenship v. Liberty Life Assur. Co. of Bos.*, 486 F.3d 620, 627 (9th Cir. 2007) (explaining that prejudgment interest is available "on an award of ERISA benefits").

The ERISA cases cited by Plaintiffs are not to the contrary. In *Fotta v. Trustees of United Mine Workers,* 165 F.3d 209 (3rd Cir. 1998), the Court determined that a claim for prejudgment interest for wrongful delay of ERISA benefits could go forward even though the benefits themselves had been paid prior to suit. But the plaintiffs in *Fotta* brought the suit specifically seeking the remedy of prejudgment interest and had not abandoned the pursuit of monetary claims. Even in that setting, the Third Circuit declined to determine as a matter of law that that an award of interest was appropriate. The Circuit remanded to the trial court for determination of whether the court should exercise its discretion to award interest. *Id.* at 214. Here, where the entitlement to benefits has not yet been determined, any award of interest is at best premature. Likewise, in *Rivera v. Benefit Trust Life Ins. Co.,* 921 F.2d 692 (7th Cir. 1991), the plaintiff sought payment of benefits, and prejudgment interest was only awarded (and affirmed by the Seventh Circuit) concurrent with the entry of a monetary judgment.

At this time, the most Plaintiffs seek is a remand to UBH for reprocessing. Any obligation on UBH to pay interest to individual plan members as part of reprocessing will be

dictated by their individual ERISA plans. *Compare* Trial Ex. 1542-0077 (setting out time frames for the payment of benefits and interest terms if time frames are not satisfied); *with* Trial Ex. 1539-0036 (prohibiting payment of "interest or late fees due to untimely payment for services").

### D. The Court Should Defer Establishing Interim And Final Deadlines For Reprocessing Until After UBH's New Guidelines Are Approved And The Number Of Plaintiffs Entitled To Reprocessing Is Known.

Plaintiffs and UBH agree that the Court should set "reasonable deadlines" by which UBH must comply with any remedies the Court may order. Plaintiffs and UBH further agree that notice to the class, to the extent ordered, can take place concurrently with the implementation of new guidelines and the training of employees and consultants regarding those guidelines. But Plaintiffs and UBH do not agree on what deadlines would be reasonable. Reprocessing will take considerably longer than Plaintiffs suggest. With Plaintiffs insisting that UBH must reprocess all 67,000 "requests for coverage" regardless of whether a particular class member even received the requested health service and even has a "claim" to reprocess,[26] it is absurd for them to suggest that reprocessing could be completed in as little as 30 days from the submission of new information from a class member.

First, any wholesale change to UBH's mental health guidelines will require regulatory approvals prior to reprocessing, which cannot be accomplished on Plaintiffs' truncated timeline. Although UBH has recently approved the adoption of the LOCUS and CALOCUS Criteria for determining mental health benefits, and is currently considering approving the adoption of the CASII Criteria, UBH will be required to submit those changes to regulators in as many as 25 states. *See* Decl. of Kristen C. Clark, at ¶ 3. For example, as part of UBH's accreditation process, UBH is required to (and does) specify the clinical review criteria to be used in benefit determinations in its annual Utilization Management Program Description ("UMPD"). Trial Tr. 1764:25–1765:20 (Goddard); *see also* Trial Ex. 261-0042 (2016 UMPD specifying the clinical

[26] Plaintiffs continue to conflate pre-service and concurrent "requests for coverage," where it is possible that no service may have been rendered and thus no individual remedy is available to the class member, with post-service "claims," where the service has been rendered and the class member has either paid or may have incurred debt for the service. It is only in the latter situation that reprocessing even has the potential to result in the payment of benefits.

criteria to be used by UBH). If UBH makes any material modification to the UMPD, including any change to the guidelines described in its UMPD, UBH is required to notify regulators in several states. Decl. of Kristen C. Clark, at ¶ 4. In addition, five states require that UBH file its clinical review guidelines directly with state regulators and provide notice of any material change to those guidelines. *Id.*, at ¶ 5. Other states require prior approval or notice to the extent UBH's adoption of new guidelines impacts any other documents on file with those states. *Id.*, at ¶ 6.

The process for providing notice or obtaining approval of a material modification varies by state, as well. Some states require that UBH obtain prior approval before it can materially modify a document on file with the state, and in some of those states, UBH is required to give either a 30- or 60-day notice before it can make material modifications to its UMPD, clinical guidelines, or other documentation on file. *Id.*, at ¶ 7. Even in states where UBH is required to give notice rather than seek prior approval, state regulators typically have the authority to reject, or require changes or amendments be made, and it is UBH's practice to confirm that such modifications have been accepted even in states where UBH is required to provide notice, rather than to seek prior approval. *Id.*, at ¶ 8. Approval or confirmation that a material change has been accepted can take up to four months, as it did with one state after UBH internally approved the adoption of the ASAM Criteria in 2018. *Id.*, at. ¶ 9. Because UBH will agree to use the LOCUS and CALOCUS Criteria[27] in the event of reprocessing, any timeline for reprocessing under those guidelines should be deferred until after UBH has followed the required regulatory process.

Plaintiffs' proposed 30-day timeline is also unreasonable and unworkable for other reasons. As the trial testimony demonstrates, making benefit determinations is a fact-intensive process. Since health benefit plans cover a discrete and defined set of health services, each proposed service must fall within the defined scope of coverage by satisfying all of the criteria

---

[27] The Court found and Plaintiffs agree that the CALOCUS Criteria are consistent with generally accepted standards of care. FFCL, at ¶ 24; ECF 426, at 13 n.14. While UBH has the discretion to later adopt the CASII Criteria during reprocessing or in future benefit decisions, it cannot be compelled to do so, so long as the CALOCUS Criteria is also a reasonable construction of "generally accepted standards of care." *Hancock v. Montgomery Ward Long Term Disability Tr.*, 787 F.2d 1302, 1308 (9th Cir. 1986) ("Under ERISA, where provisions are susceptible to more than one interpretation, we may not substitute our judgment for that of the" administrator).

identified in the applicable plan documents. Trial Tr. 852:15–17 (Dehlin) (discussing criteria for one exemplar plan document).) These criteria can vary significantly from plan to plan, and decisions involving the application of clinical guidelines are made by clinicians, including medical doctors. *Id*. at 857:17–19. Each review requires a detailed assessment of the member's individualized medical information, as well as information about the services being requested and the proposed course of treatment. Trial Tr. 1101:20–1102:19 (Martorana). A full-time UBH peer reviewer is typically able to complete approximately eight of these time-intensive medical necessity determinations per day. *Id*. at 1101:3–7.

Thus, if UBH is ordered to reprocess each of the 67,000 benefit determinations on Trial Exhibit 255, the clinical review alone is likely to require roughly 8,375 full-time equivalent days of work to complete. Plaintiffs' proposed 30-day timeline would require 280 peer reviewers working full-time, seven days per week for 30 days. And because this would need to occur in addition to the reviews that UBH's peer reviewers complete every day—which are themselves governed by strict timetables imposed by regulation—the only feasible way to accomplish that task would be for UBH to hire hundreds of licensed physicians (including physicians with the necessary state licensures) and Ph.D.-level psychologists to conduct those reviews. Trial Tr. 720:24–721:13, 722:10–13 (Triana) (explaining that only licensed physicians and doctoral-level psychologists can serve as peer reviewers); *see also* Trial Ex. 261-0028–29 (2016 Utilization Management Program Description describing required qualifications for Regional Medical Directors, Associate Medical Directors, and Psychologist Peer Reviewers).

Plaintiffs also are wrong that Department of Labor regulations require UBH to complete reprocessing within 30 days. ECF 426, at 20 (citing 29 C.F.R. § 2560.503-1(f)(2)(iii)(B)). The DOL regulation they cite says nothing about time requirements applicable in the event of a court-ordered reprocessing injunction. And Plaintiffs' overbroad request for relief demonstrates why that DOL regulation cannot reasonably apply to a classwide reprocessing injunction in this case. Plaintiffs are insisting that UBH reprocess each and every one of the 67,000 requests for coverage encompassed within the class definitions, regardless of whether the member actually received any covered health services, incurred any costs, or is entitled to any benefits. Plaintiffs' own

argument for expedition underscores the need for a process through which class members who may benefit from reprocessing can identify themselves and provide the information UBH needs to provide that remedy. Only after the Court knows the number of class members who actually received service, paid for or incurred costs for that service, and timely submitted claims for reimbursement can the Court effectively set deadlines for the reprocessing of these claims.[28]

The deadlines to be set now are deadlines for issuing notice and obtaining responses from class members. UBH proposes that if reprocessing is ordered, the parties should submit a joint proposed form of notice within 14 days of the entry of a remedies order. That notice will propose deadlines for class members to respond to the notice.

## IV. Plaintiffs Are Not Entitled To Prospective Injunctive Relief Because They Failed To Prove By The Preponderance Of The Evidence Each Of The Elements For Each Of The Ten Mandatory Injunctions They Seek.

Plaintiffs seek ten mandatory injunctions despite failing to introduce evidence to support this relief. For each of the proposed injunctions, "the right to injunctive relief under ERISA is subject to a traditional equity analysis." *Bd. of Trustees of Bay Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*, No. 12-CV-05655-JCS, 2014 WL 4383062, at *3 (N.D. Cal. Sept. 4, 2014). As Plaintiffs concede, this means that to obtain any of their requested prospective injunctions, Plaintiffs were required to satisfy "the traditional four-factor test" for injunctive relief. ECF 426, at 22:9-10.[29] Plaintiffs cannot bypass their burden of proof or shift it to UBH.

---

[28] Courts in similar class action cases have allowed considerably more than 30 days to complete a classwide reprocessing remedy. For example, in *Potter v. Blue Cross Blue Shield of Michigan*, No. 10-CV-14981, 2013 WL 12183410 (E.D. Mich. Nov. 4, 2013), where the court approved a procedure requiring individuals to submit evidence demonstrating they had incurred a "claim" on which benefits may be paid and not merely a pre-service "request for service," the docket indicates approximately 2 years elapsed between notice of the remedy to potential class members and the completion of reprocessing and entry of final judgment.

[29] In a footnote, Plaintiffs "reserve . . . the argument that the traditional four-factor test for injunctive relief is not applicable to requests for prospective injunctive relief under ERISA," which Plaintiffs contend should issue automatically upon a finding of liability under ERISA. ECF 426, at 22 n.23. If Plaintiffs wished to make this argument, they were required to do so in their opening brief. They cannot reserve the right to make a new argument on reply. Regardless, as even Plaintiffs acknowledge, the law is directly to the contrary. *Westech Roofing*, 2014 WL 4383062, at *3 ("the right to injunctive relief under ERISA is subject to a traditional equity analysis"). Courts "do not presume irreparable harm simply because a defendant violates a statute that authorizes injunctive relief." *Park Vill.*, 636 F.3d at 1162 (quotation omitted).

Specifically, Plaintiffs were required to establish at trial: "(1) plaintiff has suffered an irreparable injury; (2) the remedies at law are inadequate to compensate for that injury; (3) the balance of hardships favors an injunction; and (4) the public interest would not be disserved by an injunction." *Westech Roofing*, 2014 WL 4383062, at *3 (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006). This four-part showing is required for injunctive relief under both § 1132(a)(1)(B) and § 1132(a)(3). *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1039–40 (8th Cir. 2016) (applying traditional requirements for injunctive relief to request for injunction under §§ (a)(1)(B) and (a)(3)). Plaintiffs, not UBH, bear the burden to prove each of these four elements for each form of injunctive relief sought by a preponderance of the evidence. *Corenco Corp. v. Schiavone & Sons, Inc.*, 362 F. Supp. 939, 944 (S.D.N.Y. 1973); *Lamb-Weston*, 941 F.2d at 974 ("Injunctive relief . . . must be tailored to remedy the specific harm alleged."). This burden is especially heavy where, as here, Plaintiffs seek mandatory injunctions, which are "particularly disfavored" and "are not granted unless extreme or very serious damage will result, and are not issued in doubtful cases." *Park Vill.*, 636 F.3d at 1160 (9th Cir. 2011) (quotations and alterations omitted) (noting that mandatory injunctions are subject to a "heightened standard" of proof).

### A. Plaintiffs Are Not Entitled To Prospective Injunctions Indefinitely Dictating UBH's Use Of Future Guidelines Because Such Orders Usurp UBH's Discretionary Authority Under ERISA And Improperly Pre-Determine The Meaning Of Plans Not In Evidence.

In addition to seeking an order requiring UBH to use Plaintiffs' preferred guidelines during reprocessing, Plaintiffs also ask the Court to forever dictate UBH's choice of clinical guidelines. Specifically, Plaintiffs ask that the Court: (1) compel UBH to adopt Plaintiffs' selected guidelines indefinitely in the future; and (2) indefinitely prohibit UBH from using "any of the Guidelines listed on [Trial Ex. 880]" or "any Guidelines that include substantively the same coverage criteria as the Guidelines listed in" Trial Ex. 880. ECF 426-1, at 11–12. Plaintiffs' proposed injunctions fail for several reasons.

First, the Court cannot compel UBH to adopt a particular plan construction (or set of guidelines) so long as the construction adopted by UBH is reasonable. In the Joint Pretrial Order,

Plaintiffs represented that in their remedies brief, they would propose "the precise amendments to the Guidelines that would be necessary to bring them into conformity with generally accepted standards of care." Jt. Proposed Final Pretrial Order, ECF 296, at 10 n.7. Now, however, they insist that the Court order UBH to use *only* the specific guidelines Plaintiffs have chosen, and to do so in perpetuity regardless of whether those guidelines continue to reflect generally accepted standards of care (which are constantly evolving) or continue to comport with the terms of future benefit plans. ECF 426-1, at 11–12 (requesting an order that UBH must "[h]enceforth make any and all coverage-related determinations about whether services are consistent with generally accepted standards of care according to criteria" selected by Plaintiffs). Neither ERISA nor the class members' plans permit such an order.

As the Court has found, "[t]here is no single source of generally accepted standards of care. Rather, they can be gleaned from multiple sources." FFCL, at ¶ 57. The Court further found that "[a]ll of the class members' health benefit plans grant discretion to UBH . . . to interpret plan terms" and that "[t]he Guidelines UBH promulgates are an exercise of the discretion the Plans delegated to UBH as the claims administrator." FFCL, at ¶ 54. Faced with multiple reasonable interpretations of the term "generally accepted standards of care," UBH cannot be compelled to adopt and use a specific interpretation proposed by Plaintiffs, much less to do so forever into the future.[30] *Hancock v. Montgomery Ward Long Term Disability Tr.*, 787 F.2d 1302, 1308 (9th Cir. 1986) ("Under ERISA, where provisions are susceptible to more than one interpretation, we may not substitute our judgment for that of the" administrator); *Cator v. Herrgott & Wilson, Inc.*, 609 F. Supp. 12, 18 (N.D. Cal. 1984) ("if the provisions of the Plan are susceptible to more than one reasonable interpretation, the Court must give way to the trustee's interpretation"); *see also Moyle*, 823 F.3d at 958 (court's review of ERISA administrator's discretionary act is not to determine the best or "most persuasive" construction of an ambiguous term, but only whether the "administrator's interpretation is reasonable").

[30] Of course, UBH has the *discretion* to adopt any of the guidelines advanced by Plaintiffs, or any other guideline that is consistent with class members' plans, as it did when it adopted the ASAM Criteria and when it recently approved the adoption of the LOCUS and CALOCUS Criteria.

The Court's finding that UBH previously abused its discretion in adopting its LOCGs does not change this result. Courts cannot "reject a reasonable interpretation of the Plan offered by the Plan Administrator, solely because [the court] had overturned a previous interpretation by the Administrator." *Conkright*, 559 U.S. at 513 (rejecting "this 'one-strike-and-you're-out' approach"); *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008) (ERISA administrator's conflict of interest does not strip administrator of discretion). Plaintiffs miss the point with their argument that respecting the discretion afforded to UBH under ERISA and class members' plans would be a "waste of effort" because Plaintiffs have already identified guidelines that reasonably interpret class members' plans (ECF 426, at 13 n.15). As Plaintiffs admit elsewhere in their brief, Plaintiffs cannot "substitute [their] judgment for the administrator's" simply because it would be more convenient. ECF 426, at 8 n.5 (quoting *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004).[31]

Second, Plaintiffs failed to prove the essential element of irreparable harm to obtain the prohibitive and mandatory injunctions they seek. Plaintiffs were required to prove that, in the absence of an injunction, class members face a "real or immediate threat that [they] will be wronged again." *Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 968 (N.D. Cal. 2009) (the element of irreparable injury "cannot be met" in the absence of such an affirmative showing) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111(1983). Plaintiffs cannot show a threat of future harm based on trial evidence of past practices that have already changed. UBH made substantial changes to both its mental health and substance use guidelines in early 2018.[32]

[31] Plaintiffs also argue (without authority) that the Court should strip UBH of its lawful discretion because "[a]ttempting to reform the Guidelines would also unnecessarily extend the remedies phase of this case" and would lead to lengthy disputes about the appropriate changes to UBH's guidelines. ECF 426, at 13 n.15. In addition to being legally meritless, this argument is specious. Plaintiffs told the Court that they would propose "amendments to [UBH's] Guidelines . . . in Plaintiffs' Remedy brief . . . ." ECF 296, at 10. Had Plaintiffs done so, the issue would already be before the Court and ripe for resolution at the upcoming remedies hearing. Plaintiffs' failure to follow through on that promise is not a basis to deprive UBH of the lawful exercise of its discretion. In any event, as noted above, UBH is willing to use LOCUS, CALOCUS, and the ASAM Criteria in reprocessing claims.

[32] UBH's current LOCGs (the 2019 Level of Care Guidelines) are publicly available on UBH's website. Consistent with the directives of this Court, the 2019 LOCGs explicitly provide coverage for services that will "safely, efficiently, and effectively" treat the member's current (Continued...)

Then, effective January 2019, UBH adopted the ASAM Criteria where permitted by law to replace the use of LOCGs in determining substance use benefits to the extent covered under the member's plan.[33] The parties discussed those changes in the Court-ordered meet and confer prior to Plaintiffs' filing their remedies brief. More recently, UBH approved the adoption of LOCUS and CALOCUS for mental health benefit determinations in place of its LOCGs, with the goal of implementation in early 2020, subject to required regulatory approvals. Plaintiffs fail to even acknowledge that these changes were made, much less show that they are insufficient, and they offer no evidence to support their speculation that UBH might revert back to its old guidelines.[34]

As Judge Koh explained in a similar ERISA case brought by Plaintiffs' counsel alleging that other clinical guidelines were inconsistent with "generally accepted standards of care," to demonstrate irreparable injury, the plaintiffs were required to prove "that [the administrator is] likely to return to the Guidelines" in the absence of an injunction. *Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486, 510-511 (N.D. Cal. 2017) (rejecting request for prospective injunctive relief that would have prohibited administrator from using prior mental health coverage guidelines as inconsistent with "generally accepted standards of care" where administrator had already adopted new guidelines). UBH has never re-adopted (and does not intend to re-adopt) a superseded or decommissioned LOCG or CDG, and Plaintiffs offered no evidence to suggest that

---

condition, which is explicitly defined to include "the acute *and chronic* symptoms in the member's history and presentation *including co-occurring behavioral health or medical conditions* . . . ." The 2019 LOCGs further provide for coverage of services designed to "maintain the patient's level of functioning" and state that, for "long-term chronic conditions, control of symptoms and maintenance of a functional level to avoid further deterioration or hospitalization is an acceptable expectation of improvement." UBH 2019 Level of Care Guidelines, at 2-3, https://www.providerexpress.com/content/dam/ope-provexpr/us/pdfs/clinResourcesMain/guidelines/optumLOCG/locg/StandardLOCG.pdf.

[33] *See* "Optum Provider Notice, Adoption of The ASAM Criteria for Level of Care Guidance in the Treatment of Substance Use Conditions," dated November 2018 (announcing adoption of ASAM criteria effective January 31, 2019), https://www.providerexpress.com/content/dam/ope-provexpr/us/pdfs/home/asamCriteria.pdf.

[34] As evidence that class members are likely to suffer irreparable harm in the absence of their proposed injunctions, Plaintiffs cite a recent news article purporting to quote UBH as stating its intent to demonstrate that class members "received appropriate care." ECF 426 at 25. Plaintiffs fail to explain how such a statement demonstrates that class members are likely to suffer future irreparable harm, especially given Plaintiffs' strategic decision not to offer ***any evidence*** that a single class member received inappropriate care.

UBH's current mental health LOCGs or the ASAM Criteria are inconsistent with the Court's FFCL, let alone any benefit plan currently in effect. *See Craft v. Health Care Serv. Corp.*, 2016 WL 1270433 (N.D. Ill. Mar. 31, 2016) (holding that plaintiffs did not establish injury in fact to challenge new insurance guidelines enacted after plaintiffs' claims were denied). Plaintiffs' bald assertion of irreparable injury in the absence of such an injunction is pure conjecture, and cannot support their requested mandatory and prohibitory injunctions. *Des Roches*, 320 F.R.D. at 511 ("the possibility that Defendants will return to the Guidelines is only 'conjectural or hypothetical' and is therefore insufficient to establish" a likelihood of future injury).[35]

Third, the plan documents in evidence are from 2010-2016, and there is no evidence that any plan in evidence is still in effect or that the plan language will remain unchanged in perpetuity. Absent such evidence, Plaintiffs cannot satisfy the necessary elements for a permanent injunction. *See Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990) (requirements for a permanent injunction must be proven by preponderance of the evidence). An injunction cannot issue based on Plaintiffs' speculation about the language and construction of countless future benefit plans not in evidence (or even in existence). "Speculative injury does not constitute irreparable injury." *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984). This is so even if current or future benefit plans include the phrase "generally accepted standards of care." The Court cannot predetermine the proper construction of that phrase as it is used in plans the Court has never had an opportunity to review. *Gilliam v. Nev.*

---

[35] Plaintiffs also failed to establish Article III standing to seek such an injunction. *See Des Roches*, 320 F.R.D. at 510–511. To demonstrate standing, Plaintiffs were required to prove that at least one named Plaintiff is: (1) still a member of an ERISA health benefit plan administered by UBH; (2) likely to seek coverage for outpatient, intensive outpatient, or residential treatment services for a mental health or substance use condition; and (3) likely to have that request for benefits reviewed according to one of the guidelines challenged in this case. *Bellanger v. Health Plan of Nev., Inc.*, 814 F. Supp. 914, 917 (D. Nev. 1992) (to establish standing for prospective injunction in an ERISA case, plaintiff was required to establish "that he is likely to be injured again in the near future, that he would then submit a claim to Defendant, who would then deny this claim in violation of ERISA, and that this denial of medical coverage would result in an injury not subject to a remedy at law"); *see also Impress Commc'ns v. Unumprovident Corp.*, 335 F. Supp. 2d 1053, 1060 (C.D. Cal. 2003) (ERISA plaintiff who is no longer enrolled in benefit plan lacks standing to seek prospective injunctive relief). Plaintiffs failed to establish any of these requirements for any named plaintiff.

*Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007) ("The intended meaning of even the most explicit language can, of course, only be understood in the light of the context that gave rise to its inclusion") (quotation omitted); *Dupree v. Holman Prof'l Counseling Centers*, 572 F.3d 1094, 1097 (9th Cir. 2009) (proper interpretation of an ERISA plan requires courts to "look at the agreement's language in context and construe each provision in a manner consistent with the whole such that none is rendered nugatory").[36]

Fourth, and relatedly, Plaintiffs seek a mandatory injunction requiring UBH to apply the ASAM Criteria in perpetuity, including a requirement that UBH authorize benefits for ASAM Levels 3.1, 3.3, and 3.5, under current and future benefit plans the Court has never reviewed, based solely on whether the plan makes a reference to "generally accepted standards of care." But the fact that a plan might *exclude* coverage for services that are *inconsistent* with generally accepted standards of care does not mean that a plan offers coverage for ASAM Levels 3.1, 3.3, and 3.5. Although UBH has exercised its discretion to adopt the ASAM Criteria for determination of substance use benefits, UBH has a fiduciary obligation under ERISA to only use the ASAM Criteria to approve benefits that are actually covered under the terms of the plans as written. *Conkright*, 559 U.S. at 520 (ERISA imposes a "duty to all beneficiaries to preserve limited plan assets" and to "prevent [] windfalls for particular employees.") Plaintiffs cannot use the ASAM Criteria to force coverage for services that are excluded under the plans. Plaintiffs' proposed order compelling coverage of all ASAM Levels, regardless of plan terms, would

---

[36] Whatever the "generally accepted standards of care" may mean in the abstract, the only question under ERISA is what that phrase means *in the context of each of those future ERISA benefit plans*; a question that can only be determined in the context of each plan itself. *Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-CV-05135, 2016 WL 5724293, at *7 (E.D. Pa. Sept. 30, 2016) (requirement that ERISA plans be read as a whole "belie[s] the notion" that a plan can properly be construed by "skim[ming] the text of one clause in each of the plans to see if it has the [relevant] language"). Nothing in ERISA would prevent a plan sponsor from adopting a benefit plan that uses the phrase "generally accepted standards of care" to mean something other than what the Court has articulated in its FFCL (*e.g.*, as a defined term, or by other context or implication), which UBH would have a fiduciary obligation to enforce under ERISA. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). ("Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans"); *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) ("ERISA requires fiduciaries to comply with a plan as written unless it is inconsistent with ERISA").

impermissibly require UBH to violate its "fiduciary duty to administer the ERISA plan in accordance with the terms of the plan." *Bowman*, 1997 WL 118437, at *6 (refusing an injunction that would result in payment of benefits to "a claimant [who] is not entitled to benefits under the express provisions of the Plan" because "[t]o hold otherwise would be to impose conflicting fiduciary duties upon the administrator of the ERISA plan").

Finally, Plaintiffs' proposed injunction prohibiting UBH from "[u]sing any Guidelines that include substantively the same coverage criteria as the Guidelines" challenged in this case is impermissibly vague because it fails to "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). This is "no mere technical requirement"; it embodies the rule that "basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). As discussed above, each guideline at issue includes numerous criteria not challenged in this case or found by the Court to be an appropriate exercise of UBH's discretion. This would include, for example, criteria that services must be covered under the member's benefit plan, must be effective to treat the member's condition, and must be clinically appropriate. *See e.g.*, Trial Exs. 1-0005, 2-0006, 3-0007–08, 4-0007–09, 5-0008, 6-0009, 7-0009, 8-0006–07. It would also include criteria for entire levels of care that are not at issue in this case, including partial hospitalization and inpatient levels of care. On its face, Plaintiffs' proposed injunction would appear to indefinitely forbid UBH from using any guidelines with "substantively the same" criteria without regard to plan terms; a result that has no legal or evidentiary foundation. *Gabriel*, 773 F.3d at 956; *Wilson*, 2015 WL 6123776, at *3. And, to the extent Plaintiffs seek a more narrow injunction prohibiting UBH from using guidelines that "include substantively the same coverage criteria" as some more narrow set of criteria *within* the challenged guidelines, Plaintiffs' failure to specify those criteria is fatal to their request for this relief. Fed. R. Civ. P. 65(d)(1)(C) (an injunction cannot specify prohibited conduct "by referring to the complaint or other document"); *Fed. Election Comm'n v. Furgatch*, 869 F.2d 1256, 1263–64 (9th Cir. 1989) (injunction prohibiting "future similar violations" of a statute held impermissibly vague under Rule 65, even when construed to apply "narrowly on only two provisions" of the statute and even if limited to "future violations of these

provisions which are factually similar" to the plaintiffs' claims).

Nor do Plaintiffs specify what it means for a future guideline to "include" a criterion that is "substantively the same" as the criteria at issue here. For example, Plaintiffs' expert Dr. Fishman testified that a number of the criteria Plaintiffs challenge specific to the substance use residential rehabilitation level of care are "appropriate" or "reasonable" for the ASAM 3.7 residential level of care. *See, e.g.*, Trial Tr. 142:24 – 4 (testifying that a criterion requiring a comprehensive evaluation by a psychologist or addictionologist would be "absolutely appropriate for the highest medically monitored 3.7 level of care"); 143:11 – 144:2 (testifying that requirement for updated treatment plan every 5 days would be "a reasonable criteria" for ASAM Level 3.7); 234:25 – 235:3 (testifying that a requirement of physician supervision LOCGs for substance use residential rehabilitation is "appropriate for the higher levels of residential care such as ASAM Level 3.7"). UBH cannot be prohibited from adopting a guideline simply because the guideline "includes" these criteria, which are indisputably appropriate for at least some levels of care. *Compare* Trial Ex. 662-0293, -0295 (ASAM criteria stating that ASAM Level 3.7 services must be staffed by a "licensed physician to oversee the treatment process and assure quality of care" and should include "a physical examination, performed by a physician within 24 hours of admission"). Plaintiffs' vague prohibitory injunction fails to reasonably describe the specific criteria UBH would be prohibited from applying, and to which specific level(s) of care, and cannot issue as a matter of law. *Schmidt*, 414 U.S. at 476 (1974) (injunction instructing defendants "not to enforce 'the present Wisconsin scheme' against those in the appellee's class" rejected as impermissibly vague under Rule 65(d)).

### B. Plaintiffs Are Not Entitled To A Mandatory Injunction Directing How UBH Trains Its Clinicians.

Plaintiffs are not entitled to a mandatory injunction ordering UBH to "develop and implement a program for training UBH's" clinical staff, let alone according to the arbitrary deadlines Plaintiffs have chosen. *See* ECF 426-1, at 12. To the extent UBH adopts or has adopted new or different guidelines, UBH does not dispute that internal training on the proper use of those new guidelines is appropriate. However, Plaintiffs are not entitled to a *mandatory*

*injunction* simply because training would be a good idea. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) ("An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course.") Rather, Plaintiffs had the burden to prove by a preponderance of the evidence that, in the absence of a mandatory injunction *compelling* additional training, class members face a "real or immediate threat that [they] will be wronged again." *Hynix Semiconductor*, 609 F. Supp. 2d at 968. Plaintiffs did not and cannot satisfy this evidentiary burden.

First, Plaintiffs offered *no evidence* that UBH is unlikely to offer such training in the absence of an injunction, and thus have not shown a risk of irreparable harm. *Carpenters Sw. Admin. Corp. v. Short*, No. CV 10-0519 SVW (RNBX), 2010 WL 11597575, at *8 (C.D. Cal. Dec. 2, 2010) ("Because Plaintiffs have not demonstrated that irreparable injury will occur in the absence of injunctive relief, their motion for injunctive relief is denied"). To the contrary, the evidence at trial showed that UBH regularly trains its Care Advocates and Peer Reviewers on its guidelines, including training on any changes to its guidelines and training on the ASAM Criteria UBH adopted in certain states before its national adoption of the ASAM Criteria in January 2019. Trial Tr. 954:6–957:21, 1100:17–24 (Martorana), 1373:7–1374:2 (Allchin), 1572:7–16, (Alam) (explaining that Dr. Alam trains UBH staff on ASAM and testifying that, when UBH previously considered adopting ASAM nationally, it planned to hire an outside consultant to train UBH's clinical staff on ASAM). The fact that UBH did not previously train its employees on guidelines *it had not yet adopted or used* does not satisfy Plaintiffs' heightened burden to prove that UBH is unlikely to adequately train its employees on those criteria if or when they are adopted. *See Greg Young Publ'g, Inc. v. Zazzle, Inc.*, No. 2:16-CV-04587-SVW-KS, 2018 WL 836276, at *4 (C.D. Cal. Feb. 8, 2018) ("Irreparable harm cannot be established solely on the fact of past" wrongdoing) (quotation omitted).

Second, Plaintiffs' proposed injunction requiring UBH to "develop and implement a program for training UBH's" clinical staff "on the faithful application" of new guidelines should be denied because it is impermissibly vague under Rule 65. Plaintiffs offer no guidance as to "what type of training and direction" UBH would be required to provide its clinical staff under

the terms of their proposed injunction, and it "lacks [the] specificity" required by Rule 65. *Sanford v. Charles Robinson, Inc.*, No. 2:05-CV-1941-GEB-KJM, 2006 WL 1867616, at *1 (E.D. Cal. July 6, 2006) (rejecting a stipulated injunction to "train and direct employees to make all services offered to the general public available to mobility impaired persons" as not sufficiently specific under Rule 65). Plaintiffs' proposal that this unspecified training be conducted "[w]ith the oversight of" and "to the satisfaction of" a special master does not cure their vague injunction. Such "sweeping delegations of power to the special master violate Rule 65(d)" because they would give to a special master "broad power to determine the *content* of [the] injunction," which is a power reserved exclusively for the Court. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011) (emphasis added) (noting that such delegations also raise "serious constitutional questions"). Nevertheless, to the extent that the court appoints a special master, UBH will comply with reasonable requests by the special master to review UBH's training materials and protocols for the purpose of reporting such information to the Court.

### C. Plaintiffs Are Not Entitled To A Mandatory Injunction Directing How UBH Trains Its Senior Leadership.

As with training its clinical staff about any new guidelines adopted by UBH, UBH does not object to training its clinical staff and senior executive leadership on UBH's role as a fiduciary under ERISA as it relates to UBH's administration of ERISA-governed benefit plans. *See* ECF 426-1, at 12 – 13 (requesting mandatory injunction to "develop and implement a program, to train" UBH's clinical staff and senior leadership "on UBH's duties under ERISA"). Again, however, a good idea is not sufficient to justify the extraordinary remedy of a mandatory injunction, and Plaintiffs did not satisfy their heightened burden of proof to show that they are entitled to an injunction dictating such training.

Plaintiffs make the conclusory argument that "only by . . . mandating that UBH's employees be trained on . . . their fiduciary obligations can the Court be assured that UBH will not simply find some way around the Court's findings in this case." ECF 426, p. 26:5–8. But Plaintiffs do not cite any evidence to support this unfounded proposition, which they did not prove by a preponderance of the evidence at trial. There is simply no evidence that this proposed

ERISA training is necessary to prevent the "irreparable harm" asserted by Plaintiffs—"the loss or threatened loss of health benefits"—and Plaintiffs are not entitled to this overbroad injunction based on purely speculative harm. *Park Vill.*, 636 F.3d at 1162–63 ("Because Plaintiffs must show a *likelihood*, not a mere *possibility*, of irreparable injury, [citation] and because Plaintiffs have made no such showing, the district court abused its discretion by issuing an overbroad mandatory injunction") (emphasis in original, citation omitted).

Additionally, like Plaintiffs' proposed injunction regarding the training of UBH staff on new guidelines, Plaintiffs' proposed injunction requiring UBH to "develop and implement a program, to train" UBH's clinical staff and senior leadership "on UBH's duties under ERISA" is impermissibly vague in violation of Rule 65. *Sanford*, 2006 WL 1867616, at *1. Plaintiffs provide no guidance as to what UBH must do (under threat of contempt) to adequately "train" its employees on UBH's fiduciary obligations under ERISA, and again ask the Court to impermissibly delegate that judicial task to a special master. Indeed, there is no evidence demonstrating what that training should include. Again, Plaintiffs cannot delegate the responsibility of writing the specific terms of their vague injunction to a special master. *Mickalis*, 645 F.3d at 145. Under Rule 65, it was Plaintiffs' obligation to set forth in detail their proposed injunctive relief. Fed. R. Civ. P. 65(d)(1)(C). Plaintiffs failed to do so, and their request for a vague "ERISA training" injunction should be denied.

### D. Plaintiffs Are Not Entitled To a Mandatory Injunction Directing UBH's Corporate Structure.

Plaintiffs also seek an order dictating UBH's corporate and committee structure through a vague injunction requiring UBH to "design and implement structural changes, firewalls, and safeguards sufficient to ensure (a) that no person in any finance, accounting, or 'affordability' department at UBH is permitted to serve on or have authority over any committee charged with developing or adopting clinical coverage criteria or Guidelines, and (b) that no person serving on or advising any such committee is notified of UBH's financial performance or performance against financial targets, including but not limited to targets, budgets or goals related to benefit expense or average length of stay." ECF 426-1, at 13. Notably, Plaintiffs do not cite a single

case to support their request for an injunction to dictate who is permitted to sit on various internal committees at UBH, or what corporate information UBH is entitled to share with its employees. Nor do Plaintiffs explain why such a drastic remedy is necessary to prevent “the loss or threatened loss of health benefits” in the future.

Instead, Plaintiffs again rely on the conclusory argument (unsupported by any evidence) that “only by altering the way UBH approaches its Guideline development process . . . can the Court be assured that UBH will not simply find some way around the Court’s findings in this case.” ECF 426, at 26:4–8. But there is simply no evidence that class members are likely to suffer additional irreparable harm in the absence of this specific requested injunction. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992) (injunctive relief must be “tailored to eliminate only the specific harm alleged”). To the contrary, UBH has already adopted the ASAM Criteria and has approved the adoption of the LOCUS and CALOCUS criteria in the absence of any such injunction.

Moreover, Plaintiffs’ proposed injunction would constrain UBH’s ability to exercise the fiduciary responsibilities imposed on it by ERISA. As the trial evidence shows, for example, UBH’s affordability department was primarily charged with identifying wasteful and abusive treatment practices because such practices result in both *worse* health outcomes for UBH’s members and *waste* of trust assets. Trial Ex. 1660-0005, 10–11 (Brock Dep.) (describing the function of UBH’s affordability department). Plaintiffs seek to impermissibly tie UBH’s hands in performing these critical fiduciary functions, with no evidence that this specific injunction is necessary. Likewise, many of the “financial” metrics Plaintiffs would have UBH conceal from its clinicians—such as information about member average lengths of stay or trends in benefit expense—are directly relevant to clinical operations, and are often indicators of the quality of patient care. *Id.*, at -0003–04 (Brock Dep.) (explaining that “quality is inversely related to cost” because, when providers are not providing quality, evidence-based care, the “consequences usually end up being longer hospital stays [and] readmissions” which “cost a lot more” than quality care); Trial Tr. 927:2–14 (Martorana) (testifying that UBH regularly meets with network providers to “go over data with them” in an effort to “improve the quality of care” for UBH’s

members). Such overbroad injunctive relief would hamstring UBH's ability to identify and address abusive providers or practices and negatively impact the quality of care available to UBH's members. Plaintiffs have not met their burden to prove a right to such extreme relief. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1231 (C.D. Cal. 2007) ("injunctive relief should avoid prohibiting legitimate conduct").

**E. Plaintiffs Are Not Entitled To A Mandatory Injunction Directing UBH's Interactions With its Regulators and Customers.**

Last, Plaintiffs seek a mandatory injunction compelling UBH to "[d]isclose" the Court's publicly available FFCL and remedies order "to the plan sponsor for each of the class members' plans, the Plan Administrator named in each such plan, each state insurance regulator overseeing UBH's activities, and the Employee Benefits Security Administration of the United States Department of Labor . . . ." ECF 426-1, at 13:20–14:13. Notably, Plaintiffs do not even try to argue that this proposed injunction is necessary to prevent the specific harm asserted by Plaintiffs in this case—the loss or threatened loss of benefits under their health plans. Instead, Plaintiffs argue that such disclosures are necessary for "UBH to take responsibility for what it has done and to provide appropriate notice to those who can hold UBH accountable in the future". ECF 426, at 26:10–14. This argument easily fails for two reasons.

First, Plaintiffs introduced no evidence that such disclosures are necessary to inform state regulators, the Department of Labor, or plan sponsors of the result in this case, which is publicly available and has received attention in media outlets.

Second, Plaintiffs introduced no evidence or argument that class members are likely to suffer any irreparable harm in the absence of such an injunction. *Carpenters Sw. Admin. Corp.*, 2010 WL 11597575, at *8 (in ERISA case, plaintiffs' speculation about what might happen do in the absence of an injunction held insufficient to establish irreparable injury). Plaintiffs specifically request that this Court "retain jurisdiction" in this case, and fail to explain why the Court is incapable of "hold[ing] UBH accountable in the future" under ERISA's existing remedial structure. *See United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985) (injunctive relief must be crafted to "avoid an unreasonably punitive or nonremedial effect"). Plaintiffs make no

showing of how this proposed injunction satisfies any of the elements for injunctive relief. It does not.

**V. Appointment Of Multiple Special Masters Is Unjustified At This Time.**

Appointing a special master is "the exception and not the rule," Fed. R. Civ. P. 53, Advisory Committee Notes (2003 Amendments), and "references to masterships, although provided for by the federal rules, should be very sparingly used by district judges." *New York, S. & W. R. Co. v. Follmer,* 254 F.2d 510, 511 (3d Cir. 1958); *Bartlett-Collins Co. v. Surinam Nav. Co.,* 381 F.2d 546, 550 (10th Cir. 1967) ("[R]eference to a Master [] shall be the exception and not the rule.").

Plaintiffs' request for appointment of a special master is unsupported, as there are no complicated questions of fact that require a special master's attention at this time. Under ERISA, reformulation of the guidelines and reprocessing of claims is left to the discretion of the plan administrator. Should Plaintiffs feel UBH's new guidelines do not comport with ERISA and this Court's FFCL, or that UBH is not appropriately applying those guidelines during reprocessing, Plaintiffs may seek appropriate relief including the appointment of a special master at that time. Plaintiffs cannot justify the burden and cost associated with appointing multiple special masters purely based on their speculation that UBH will fail to respect the orders of this Court. There is no evidence in this case that UBH has not complied with prior court orders, nor is there anything to suggest it will seek to subvert any future order of the Court.

Indeed, in the cases Plaintiffs cite where a monitor or special master was appointed to monitor the defendant's implementation of Court orders, the courts made those appointments only after the defendant continuously violated a standing court order or consent decree. For example, in *Jansen v. Greyhound*, the plaintiffs brought class action ERISA claims against the plan sponsor and administrator for changing the benefits available under their plan in violation of their collective bargaining agreement. *Jansen v. Greyhound Corp.,* 692 F. Supp. 1029, 1035 (N.D. Iowa 1987). Following a bench trial, the court held that the defendants breached their fiduciary duties and awarded plaintiffs a declaratory judgment, a permanent injunction requiring the defendants to reinstate the prior benefits plan and enjoining them from either reducing the

plaintiffs' benefits or terminating their plan, and damages. The plaintiffs requested appointment of a special master to supervise "the calculation of damages," which was in effect a reprocessing remedy by which the difference between benefits actually paid and benefits that should have been paid were computed. *Id.* at 1044. The court denied the request for a special master, stating, "[t]he Court has no reason to believe that defendants will proceed improperly with the processing of claims. Indeed, the defendants have every incentive to proceed appropriately in this regard, because if they do not the Court will appoint a Master at the defendants' expense." *Id.*

Appointment of a special master is similarly unjustified where the defendant is a sophisticated entity capable of managing its own compliance. *See Rolland v. Cellucci*, 198 F. Supp. 2d 25, 45 (D. Mass. 2002) ("[T]he court is not going to appoint a special master to oversee Defendants' implementation of specialized services. The settlement agreement is comprehensive enough at this time to ensure, and Plaintiffs' attorneys skilled enough to monitor, Defendants' ongoing compliance."); *E.E.O.C. v. Prospect Airport Servs., Inc.,* No. 2:05-CV-01125-KJD, 2012 WL 3042693, at *4 (D. Nev. July 25, 2012) (declining to mandate the defendant to retain a consultant to review and revise its policies because the defendant appeared to be "a sophisticated enterprise capable of ensuring its own compliance").

Finally, Plaintiffs offer no support for their suggestion that "psychiatrists with expertise in mental health and substance use disorder treatment" should be appointed as associate special masters. None of the cases Plaintiffs cite involve special masters occupying a comparable role. To the extent the Court orders reprocessing, the matter will be remanded to UBH to exercise its discretion under the ERISA plans consistent with the Court's order. That discretion cannot be usurped by "associate special masters" just because they also have clinical expertise.[37]

[37] If the Court appoints one or more special masters, Plaintiffs' proposed order violates Rule 53. *See* ECF 426-1, at 14. Plaintiffs' proposal that they alone should be permitted to suggest candidates for an appropriate special master is improper on its face. Rule 53 is explicit that "[a]ny party may suggest candidates for appointment." Fed. R. Civ. P. 53(b)(1) (emphasis added). Further, before a master may be appointed, "the court must give the parties notice and an opportunity to be heard" regarding the Court's selection of a master and the scope of the master's authority. *Id.* Finally, even after the Court has selected a master, an order appointing the master cannot issue unless and until he or she has submitted "an affidavit disclosing whether there is any ground for disqualification" from serving as a master. Fed. R. Civ. P. 53(b)(3)(A). If the Court is inclined to appoint one or more special masters, the appointment should be governed by Rule 53.

## VI. Plaintiffs Are Not Entitled To Declaratory Relief Because The Declarations They Seek Will Serve No Useful Purpose And Because Plaintiffs Failed To Prove They Are Likely To Seek Future Benefits Under The Plans At Issue In This Case.

Plaintiffs ask the Court to enter 26 "declarations" rehashing portions of the Court's Findings of Fact and Conclusions of Law. Pls.' Proposed Remedies Order, ECF 462-1, at 1-6. Plaintiffs' request for declaratory relief should be denied for two fundamental reasons.

First, none of Plaintiffs' proposed declarations would serve any useful purpose. "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1356–57 (9th Cir. 1985) (en banc) (per curiam) (citations omitted). Here, Plaintiffs readily concede that their proposed "declarations" are nothing more than a restatement (albeit, sometimes inaccurate) of "the Court's core liability findings" which Plaintiffs admit are "already set forth in the Court's Findings of Fact and Conclusions of Law. . . ." ECF 426, at 5:10–11. Although UBH respectfully contests those findings and reserves all rights on appeal, Plaintiffs' litany of proposed declarations are duplicative, entirely unnecessary, and do not meet the criteria for declaratory relief "because [they] would merely require findings of fact and law identical to those necessary to support" the Court's existing FFCL. *Hurd v. Garcia*, 454 F. Supp. 2d 1032, 1054 (S.D. Cal. 2006). "As such, a declaratory judgment would serve 'no useful purpose' in this case" and should be denied. *Id.* (quoting *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984)) (denying duplicative request for declaratory relief).

Second, the declaratory relief available under ERISA is inherently forward-looking, and must "clarify [class members'] rights to *future benefits* under the terms of the plan[s]" at issue. 29 U.S.C. § 1132(a)(1)(B); *accord Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989) (section 1132(a)(1)(B) permits "declaratory judgment of future entitlement to benefits under the provisions of the plan contract").[38] To obtain declaratory relief, Plaintiffs must prove

[38] Even if declaratory relief is *sometimes* available under § 1132(a)(3), it is not available under § 1132(a)(3) *in this case*, where Plaintiffs concede that § 1132(a)(1)(B) allows for declaratory relief. *Berman v. Microchip Tech. Inc.*, No. 17-CV-01864-HSG, 2018 WL 732667, at *11 (N.D. Cal. Feb. 6, 2018) (rejecting declaratory relief under § 1132(a)(3) because the plaintiff (Continued...)

that the specific declarations they seek will clarify class members' rights to *future* benefits under their plans, not their right to *past* benefits (which are the subject of their request for reprocessing). *See Williams v. Bank of Am.*, No. 2:12-CV-2513 JAM AC, 2013 WL 1907529, at *5 (E.D. Cal. May 7, 2013) ("Declaratory judgment is not a corrective remedy and should not be used to remedy past wrongs."). Here, Plaintiffs admit that their proposed declarations are intended merely to rehash the Court's FFCL (ECF 426, at 5:10–11), which set out the Court's findings on *past* plan terms and *past* UBH conduct.[39] *See e.g.*, ECF 426-1, at 2 – 6 (seeking declarations about rights class members "had" under their prior benefit plans, the propriety of adverse benefit determinations made prior to "June 1, 2017" and past breaches of fiduciary duty through developing the guidelines). The Court's FFCL did not and could not address any class member's "future entitlement to benefits under the provisions of [a] plan contract" (*Firestone*, 489 U.S. at 108) because Plaintiffs did not offer any evidence showing that any plan at issue is still in effect, or that any class member is a current participant or beneficiary of such a plan, that any class member is likely to seek benefits in the future under any of the plans at issue, or that UBH continues to use any of the guidelines at issue (it does not).[40] Plaintiffs' request for retrospective declarations based on the Court's FFCL is improper under ERISA and should be denied. *See*

---

also had a claim under § 1132(a)(1)(B); *see* ECF 426, at 5 (Plaintiffs arguing the declarations they seek are available under § 1132(a)(1)(B)). The fact that Plaintiffs failed to establish their entitlement to the specific declarations they seek under § 1132(a)(1)(B) does not open the door to relief under § 1132(a)(3). *Tolson v. Avondale Indus.*, 141 F.3d 604, 610 (5th Cir. 1998) (that plaintiff "did not prevail on his claim under section 1132(a)(1) does not make his alternative claim under section 1132(a)(3) viable"); *Dirienzo v. Dunbar Armored, Inc.*, No. 09CV2745 DMS (JMA), 2010 WL 11591907, at *3 (S.D. Cal. May 12, 2010) (same).

[39] The benefit plans administered by UBH are not open-ended, and are "[t]ypically effective for one year." Trial Tr., at 843:24–844:1 (Dehlin). Here, the class period ran from May 2011 to June 1, 2017, and the plans introduced into evidence were in effect from 2011 to 2016. Plaintiffs offered no evidence that any of the plans are still in effect up to eight years later.

[40] Indeed, Plaintiffs failed to prove either statutory or Article III standing to "clarify" or "enforce" *any* benefit plan that is currently in effect. Relief under § 1132(a)(1)(B) is limited to a "participant or beneficiary" of an ERISA-governed plan. 29 U.S.C. § 1132(a)(1). Likewise, claims under § 1132(a)(3) are only available to "a participant, beneficiary, or fiduciary" of an ERISA plan. 29 U.S.C. § 1132(a)(3). Plaintiffs presented no evidence that they or any class member is still a participant, beneficiary, or fiduciary of any ERISA-governed plan administered by UBH that is currently in effect, let alone evidence of *which* current plans Plaintiffs have standing to "clarify" or "enforce" under §§ (a)(1)(B) or (a)(3).

*Williams*, 2013 WL 1907529, at *5; *see also Firestone*, 489 U.S. at 108; 29 U.S.C. § 1132(a)(1)(B).

Additionally, Plaintiffs are not entitled to their 20th proposed declaration because it blatantly misstates the Court's FFCL. Plaintiffs seek a declaration that "UBH violated Texas law throughout the Class Period by applying its own Guidelines rather than applying solely the TDI Criteria to claims covered by the Texas statute." ECF 426-1, at 5. The Court did not find that UBH "violated Texas law throughout the Class Period." Rather, the Court found that "UBH violated Texas law *at some point* during the class period" based on the Court's finding that UBH did not "*consistently* apply the TDI Criteria to claims for benefits that were governed by Texas law during the class period." FFCL, at ¶ 167 (emphasis added). While UBH respectfully disagrees with the Court's finding, Plaintiffs' proposed declaration is directly contradicted by the Court's findings. Nor did the Court conclude that UBH was required to apply "solely the TDI Criteria to claims covered by the Texas statute." ECF 426-1, at 5. Plaintiffs have never cited any authority to support their contention that Texas law prohibits UBH from consulting other guidelines *in addition to the TDI Criteria*, so long the decision itself is "in accordance with" the TDI Criteria cited in the benefit decision. 28 Tex. Admin. Code § 3.8005(a). And, the Court made no such holding. Likewise, in their 22nd proposed declaration, Plaintiffs incorrectly assert that UBH violated Illinois law "between August 18, 2011 and June 1, 2017" because UBH did not apply the ASAM Criteria to requests for substance use benefits governed by Illinois law. ECF 426-1, at 5. But the Court found that UBH began "using the ASAM Criteria for Illinois substance use disorder claims" in "January 2016." FFCL, at ¶ 161. To the extent the Court enters any declarations, they should correctly reflect the Court's findings and the evidence admitted at trial.

## VII. Retention of Jurisdiction.

Plaintiffs request that the Court retain jurisdiction throughout the reprocessing procedure, citing Judge Brazil's opinion in *Lancaster v. U.S. Shoe Corp.*, 934 F. Supp. 1137 (N.D. Cal. 1996). In *Lancaster,* the individual plaintiff sought recovery of actual monetary recovery and the court remanded for a determination of damages, reserving jurisdiction for the determination of

attorneys' fees and prejudgment interest on the judgment that would ultimately ensue. *Id.* at 1170. Here, where the Plaintiffs on behalf of the classes relinquished claims for monetary recovery, the Court need not retain jurisdiction beyond the time necessary to approve the new guidelines and oversee the notice period that will be followed by remand to the administrator.

## CONCLUSION

Plaintiffs chose to litigate this case based on a series of promises about what they would prove at trial with classwide evidence and about a simple remedial scheme grounded in ERISA and UBH's discretion. They did not deliver on those promises. Instead, Plaintiffs' classwide proof failed to materialize, and they now propose a vast and impermissible set of remedial declarations and injunctions that are unsupported by both the evidence and the law. Neither ERISA, nor class members' plans, nor the evidence adduced at trial allows the remedies they now claim, and UBH respectfully requests that the remedies proposed by Plaintiffs in their Opening Remedies Brief and Proposed Remedies Order be denied in their entirety.

If, however, the Court orders reprocessing of some class members' claims notwithstanding Plaintiffs' failure of classwide proof, UBH requests that reprocessing proceed on a claims-made basis such that class members' requests for benefits be remanded to UBH to determine benefits consistent with their benefit plans and the Court's FFCL, and only upon a sufficient showing by individual class members that they are entitled to reprocessing.

Dated: June 14, 2019

**CROWELL & MORING LLP**

*/s/ Jennifer S. Romano*
Jennifer S. Romano
Attorneys for UNITED BEHAVIORAL HEALTH