PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs and the Classes*
*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br>Action Filed: May 21, 2014<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT UBH'S MOTION FOR CLASS DECERTIFICATION** |
| GARY ALEXANDER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-05337-JCS<br>Action Filed: December 4, 2014<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

## TABLE OF CONTENTS


PAGE

TABLE OF AUTHORITIES ............ ii

I. THE CERTIFIED CLASSES SATISFY RULE 23(a)(2) COMMONALITY ............ 2

A. Administrative Appeals ............ 3

B. The "Incorporation Issue" ............ 5

C. Purported Plan "Variation" ............ 7

D. Common Injury ............ 9

II. THE CLASSES SATISFY THE TYPICALITY REQUIREMENT ............ 10

III. THE NAMED PLAINTIFFS ARE ADEQUATE CLASS REPRESENTATIVES ............ 12

IV. THE STATE MANDATE CLASS PROPERLY INCLUDES TEXAS MEMBERS ............ 13

V. THE CLASSES SATISFY RULES 23(b)(1), (b)(2) AND (b)(3) ............ 15

VI. CONCLUSION ............ 15

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Akootchook v. United States*,
271 F.3d 1160 (9th Cir. 2001) .......... 12

*Day v. Celadon Trucking Servs., Inc.*,
827 F.3d 817 (8th Cir. 2016) .......... 1, 2

*Dupree v. Holman Prof'l Counseling Ctrs.*,
572 F.3d 1094 (9th Cir. 2009) .......... 8

*Elizabeth L. v. Aetna Life Ins. Co.*,
Case No. CV 13-2554 SC, 2015 WL 799417 (N.D. Cal. Feb. 23, 2015) .......... 8

*Estrella v. Freedom Fin. Network, LLC*,
No. CV 09-03156 SI, 2012 WL 214856 (N.D. Cal. 2012) .......... 1

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) .......... 5

*Gilliam v. Nev. Power Co.*,
488 F.3d 1189 (9th Cir. 2007) .......... 8

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 2, 11, 14

*Holman v. Experian Info. Sols., Inc.*,
No. C 11-0180 CW, 2013 WL 4873496 (N.D. Cal. Sept. 12, 2013) .......... 1

*Huffman v. Prudential Ins. Co. of Am.*,
No. 2:10-cv-05135, 2016 WL 5724293 (E.D. Pa. Sept. 30, 2016) .......... 8

*In re Apple iPod iTunes Antitrust Litig.*,
Case No.: 05-CV-0037 YGR, 2014 WL 6783763 (N.D. Cal. Nov. 25, 2014) .......... 1

*In re Korean Ramen Antitrust Litig.*,
Case No. 13-cv-04115-WHO, 2018 WL 1456618 (N.D. Cal. Mar. 23, 2018) .......... 1

*In re MyFord Touch Consumer Litig.*,
Case No. 13-cv-03072-EMC, 2018 WL 3646895 (N.D. Cal. Aug. 1, 2018) .......... 2

*Marlo v. United Parcel Serv., Inc.*,
251 F.R.D. 476 (C.D. Cal. 2008) .......... 1, 2

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......... 2, 3

*Pitts v. Terrible Herbst, Inc.*,
653 F.3d 1081 (9th Cir. 2011) .......... 11

*Sandoval v. M1 Auto Collisions Ctrs.*,
Case No. 13-cv-03230-EDL, 2016 WL 6561580 (N.D. Cal. Sept. 23, 2016) .......... 1

*Slayman v. FedEx Ground Package Sys., Inc.*,
765 F.3d 1033 (9th Cir. 2014) .......... 11

*Vaught v. Scottsdale Healthcare Corp. Health Plan*,
546 F.3d 620 (9th Cir. 2008) .......... 8

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 3

**Other Authorities**

29 C.F.R. § 2560.503-1(g) .......... 9

3 Newberg on Class Actions § 7:39 (5th ed. 2011) .......... 1

**Rules**

Fed. R. Civ. P. 23(a) .......... 2, 11, 13

Fed. R. Civ. P. 23(a)(2) .......... 2, 3

Fed. R. Civ. P. 23(a)(3) .......... 11

Fed. R. Civ. P. 23(b) .......... 13, 15

Fed. R. Civ. P. 23(b)(1) .......... 1, 15

Fed. R. Civ. P. 23(b)(2) .......... 1, 15

Fed. R. Civ. P. 23(b)(3) .......... 1, 2, 15

Fed. R. Civ. P. 23(c)(1)(C) .......... 5

On September 19, 2016, the Court certified three classes in these consolidated cases. After a rigorous review of the extensive evidentiary record, the Court issued an opinion meticulously addressing each and every requirement under Rule 23 and finding certification appropriate under Rules 23(b)(1), (b)(2), *and* (b)(3). *See* Order Granting Mot. for Class Certification, *Wit* ECF No. 174 (Sept. 19, 2016) (hereafter "Cert. Order"). Having been found liable after trial, UBH now asks the Court to decertify the classes in their entirety—not based on anything new, but rather on arguments the Court previously rejected or on theories UBH could have raised years ago, but inexplicably did not.

"The burden of showing why [the Court] should consider decertification falls squarely on the shoulders of defendants." *In re Korean Ramen Antitrust Litig.*, Case No. 13-cv-04115-WHO, 2018 WL 1456618, at *2 (N.D. Cal. Mar. 23, 2018); *see also Holman v. Experian Info. Sols., Inc.*, No. C 11-0180 CW, 2013 WL 4873496, at *6 (N.D. Cal. Sept. 12, 2013) (citing cases). "Decertification . . . should theoretically only take place after some change, unforeseen at the time of the class certification, that makes alteration of the initial certification decision necessary." *In re Apple iPod iTunes Antitrust Litig.*, Case No.: 05-CV-0037 YGR, 2014 WL 6783763, at *5 (N.D. Cal. Nov. 25, 2014) (analyzing cases); *see also* 3 Newberg on Class Actions § 7:39 (5th ed. 2011) (explaining that "a defendant seeking decertification or modification ought to be required to make some showing of changed circumstances or law"); *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 832 (8th Cir. 2016) (where defendant "had a full and fair opportunity to contest class certification" and district court addressed the objections that defendant raised, "principles of fair adjudication require [defendant] to provide good reason before the district court revisits the issue."). On a motion to decertify, "[d]oubts should be resolved in favor of certification." *Estrella v. Freedom Fin. Network, LLC*, No. CV 09-03156 SI, 2012 WL 214856, at *4 (N.D. Cal. 2012); *see also Sandoval v. M1 Auto Collisions Ctrs.*, Case No. 13-cv-03230-EDL, 2016 WL 6561580, at *12 (N.D. Cal. Sept. 23, 2016).[1]

---

[1] UBH's reliance on the *Marlo* case for a different rule is misplaced. *See* Mot. at 2 (citing, *inter alia*, *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 479 (C.D. Cal. 2008)). No motion to decertify was before the district court in *Marlo*; rather, the judge ordered additional briefing on class certification *sua sponte*, after its pre-trial discussions with the parties raised concerns about

At the last status hearing, the Court told UBH that the Court was "not inclined to go through anything that even resembles the issues we've already addressed." Hr'g Tr. at 11-12. UBH's counsel responded that UBH's proposed motion would be based on "evidence in the record through trial that was not there in 2016 when the class [certification] decision came out" and on the Court's "findings of fact and conclusions of law." *Id.* at 13. Notwithstanding the Court's admonition and UBH's assurances, UBH's motion repeats or repackages arguments UBH has made—and lost—several times before, or turns on evidence UBH could have offered in 2016, but did not. UBH fails to demonstrate that anything has changed to make the Court's prior decision on class certification incorrect. Decertification should be denied.

## I. THE CERTIFIED CLASSES SATISFY RULE 23(a)(2) COMMONALITY.

Most of UBH's motion is devoted to arguing that the certified classes fail Rule 23(a)'s commonality requirement. Mot. at 3-11. As the Court previously explained, this requirement is met where "the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] with one stroke.'" Cert. Order at 19 (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012)). Recognizing that "[t]he commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)," *id.* at 20 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)), the Court then concluded:

> The resolution of [the Plaintiffs'] claims will turn on several common legal and factual questions, including whether UBH was acting as an ERISA fiduciary when it developed the Guidelines and adopted a policy of applying them to all coverage determinations, whether the Guidelines are consistent with generally

---

predominance and manageability. *Marlo*, 251 F.R.D. at 479. The decision correctly observes that the Court has a duty to ensure that the certification elements are met, but as the Eighth Circuit explained, it is that very duty that supports "requiring the movant to bear the burden of showing that the district court mistakenly maintained class certification," especially when the court's "initial certification decision was carefully considered and made after certification-related discovery." *Day*, 827 F.3d at 832; *see also, e.g.*, *In re MyFord Touch Consumer Litig.*, Case No. 13-cv-03072-EMC, 2018 WL 3646895, at *1 (N.D. Cal. Aug. 1, 2018) (noting that the "Eighth Circuit appears to be the only court of appeals to directly confront the question" of the burden of proof on a motion to decertify). In any event, as was the case in *MyFord*, the Court need not resolve this question. The allocation of the burden is not remotely dispositive, as none of UBH's arguments has any merit.

> accepted standards, whether UBH breached its fiduciary duty by using its Guidelines to adjudicate claims for coverage, and what remedies are available to the classes.

Cert. Order at 30. Thus, the Court found the commonality requirement was satisfied. *Id.*

UBH does not challenge that holding—in fact, UBH does not even refer to it. Nor does UBH explain how its arguments undermine the Court's holding that the class members' claims share at least four important common questions. As the Court pointed out, "commonality only requires a ***single*** significant question of law or fact." Cert. Order at 20 (quoting *Mazza*, 666 F.3d at 589) (emphasis added); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The trial, and the Court's findings and conclusions, confirm that this test is still met. This is reason enough to deny UBH's motion, but its arguments fail on their own terms as well.

**A. Administrative Appeals.** The classes the Court certified are comprised of individuals "whose request[s] for coverage" of behavioral health services were "denied by UBH, in whole or in part," based upon UBH's Guidelines. *Wit* ECF No. 413 (Feb. 28, 2019) Findings of Fact and Conclusions of Law ("FFCL") at 8-9. UBH contends that these classes should be de-certified, in their entirety, because in a tiny minority of cases—less than 3% of the class—UBH later decided to approve some coverage following an appeal. Mot. at 3-4.[2]

According to UBH, its subsequent actions in these few cases mean that "there are not common questions of liability" uniting ***any*** of the class members for Rule 23(a)(2) purposes. *Id.* This argument—which UBH could have raised years ago because it is based on evidence UBH has always possessed about its own appeals decisions—is really just a new spin on UBH's familiar refrain that Plaintiffs' claims require them to establish that every class member is

---

[2] UBH argues that 36% of the Claim Sample members appealed UBH's initial denial of coverage, and that UBH reversed its decision in 12% of those appeals. Mot. at 3-4; *see also* Trial Ex. 1655 (reflecting 34 appeals and reversal for Member IDs 828, 3262, 8301, and 1252). By UBH's reasoning, then, UBH reversed itself on appeal in only 4% of the class members' cases. But in reality, the number is even smaller: UBH did ***not*** reverse its decision on Member ID 1252's request for residential treatment; instead, UBH [redacted]. *See* Trial Ex. 899-0097. UBH also completely ignores the Named Plaintiffs, who were part of the Claim Sample. All of the Named Plaintiffs appealed, and UBH did not reverse its denial of any of their claims. *See* Trial Ex. 895. Thus, in reality, 44 out of 110 Claim Sample members appealed, and ***only 3*** of them—less than 3% of the sample—obtained a "full" overturn of the initial adverse determination.

actually entitled to benefits. The Court has repeatedly rejected that argument, and it should do so again now. UBH's decisions on appeal are irrelevant to Plaintiffs' challenge to the criteria UBH used to make its adverse coverage determinations. As the Court found after trial, UBH violated ERISA by developing its pervasively flawed and self-serving Guidelines and then using them to deny coverage. FFCL at 10-11, 99-106. Thus, UBH's ERISA violations were complete when it issued its initial adverse benefit determinations to the class members. What happened afterward is not relevant to either class membership or the common questions that support certification.

Nothing about the subsequent appeals suggests that the Court's prior ruling on commonality was wrong. UBH's later actions did not cure its misconduct as to the few class members who obtained some coverage after appeal. Far from demonstrating that UBH did not apply its flawed Guidelines in making coverage decisions, these appeals merely prove that UBH reversed itself in a few instances because it found that the patient's symptoms were acute enough at that moment to ***meet*** UBH's restrictive Guidelines.[3] Nor does the mere payment of benefits after such appeals eliminate the injury to these class members. For one thing, just like other members of the classes, these members were deprived of the right to have a faithful fiduciary adjudicate their claims pursuant to plan-compliant Guidelines. All the class members are entitled to know whether their claims satisfy appropriate standards. For another thing, UBH has offered ***no*** evidence to establish that ***any*** class member ultimately received all the benefits or services he

---

[3] *See* Trial Ex. 899 at 899-0011 (as to Member ID 3262, [redacted]); *id.* at 899-0039 (as to Member ID 8301, [redacted]; *id.* at 899-0097 (as to Member ID 1252, [redacted]). *See also* Ex. B hereto (as to Member ID 828, UBH denied two levels of appeal under its Guidelines; the denial was not reversed until the member appealed to an external review organization, which also received a copy of UBH's CDG). Only a portion of Exhibit B was included in Trial Ex. 899, but the Court should consider the remainder now. Because UBH held this argument until after trial, even though it has always possessed all the evidence necessary to make it, Plaintiffs were not on notice at trial of the need to introduce this member's full appeal record (which is otherwise irrelevant to Plaintiffs' claim).

or she would have received if UBH had used appropriate Guidelines, from the outset, to administer the request for coverage.[4] Further, even if UBH approved the requested coverage in full after an appeal, that decision was not issued until after a delay of anywhere from hours to months. *See, e.g.*, Trial Ex. 1655 (reflecting time lags between initial denial and issuance of decision on appeal). In the meantime, these class members were kept in the dark about whether they could receive coverage for the treatment they had been prescribed.

At most, UBH's argument might support the Court amending the class definitions to include one additional phrase: "and was not subsequently approved, in full, following an administrative appeal." *See* Ex. A (showing potential amendments to class definitions). While unnecessary, such an amendment is well within the Court's discretion. *See, e.g.*, Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). As explained above, however, trimming off this tiny sliver of the Class would needlessly exclude people who were injured by UBH's wrongful conduct.

**B.** **<u>The "Incorporation Issue."</u>** As UBH admits, Plaintiffs challenged UBH's development and use of its CDGs only insofar as those standards incorporate the flawed criteria of UBH's LOCGs. UBH cannot seriously dispute that, if a CDG does incorporate the LOCGs' flawed criteria, then UBH's liability under that CDG necessarily turns on exactly the same common question of whether the LOCGs are consistent with generally accepted standards.

Instead, UBH reiterates arguments it has previously made about ***whether*** the CDGs incorporate the LOCGs—specifically: (1) that there is supposedly "no evidence" that the "LOCG cross-references Plaintiffs pointed to were actually used to make a single benefit determination," *compare* Mot. at 5:8-15 *with* UBH's Post-Trial Br. at 95:10-96:1; and (2) that Plaintiffs did not

---

[4] In effect, UBH asks the Court to *assume* that, in the 3-4% of cases (at most) in which UBH approved some coverage after appeal, reprocessing will result in findings that the members in fact received all benefits they were owed under their Plans. But it would obviously be improper to assume the outcome of remand in a small subset of cases, without any evidentiary basis, and then to de-certify the entire class based on that unsupported assumption.

prove that the CDGs had to be "consistent ***solely*** with generally accepted standards of care ***to the exclusion of*** other plan terms," *compare* Mot. at 5:16-6:14 (original emphasis) *with* UBH's Post-Trial Br. at 97:15-98:19. Plaintiffs have previously refuted these arguments, and incorporate by reference their prior analysis rather than repeating it here. *See* Pls.' Post-Trial Br. at 5:3-6:19; Pls.' Post-Trial Reply Br. at 70:16-73:13; Pls.' Proposed Findings of Fact at ¶¶ 145-165.[5]

UBH seems to be implying that, if the Court finds that one or more CDGs do ***not*** incorporate the flawed LOCG criteria, then class members whose requests for coverage were decided under those CDGs do not share common questions with the rest of the class. Even if true, the solution would not be to decertify the entire class. Rather, like the appeal issue above, the issue could easily be addressed, if necessary, by amending the Class definition to exclude the

---

[5] The only argument UBH now offers on the merits of the incorporation issue that it has not made before (despite the fact that merits briefing is closed) is that denial letters citing the CDGs, without also citing the LOCGs, somehow "show[] that UBH clinicians *did not* refer to the LOCGs . . . when applying the CDGs." Mot. at 5 (original emphasis). But that is not a fair inference from those letters or the other record evidence. Plaintiffs proved at trial that the CDGs direct UBH's clinicians to follow the LOCG criteria, Pls.' Post-Trial Br. at 5:3-6:19; Pls.' Post-Trial Reply Br. at 70:16-73:13; Pls.' Proposed Findings of Fact at ¶¶ 145-165, and that UBH's clinicians apply the CDGs with near-perfect consistency—something that is only possible if the clinicians follow those Guidelines (including cross-references) exactly as written. *See, e.g.*, Trial Ex. 299 (96.8% rate of inter-rater reliability ("IRR") for LOCGs and CDGs in 2013); Trial Ex. 300 (98% rate of IRR in 2014); Trial Ex. 301 (98.8% rate of IRR in 2015); and Trial Ex. 302 (98.6% rate of IRR in 2016). Plaintiffs also established that UBH has a single "Acute Care Utilization Management Model," which is operationalized through the Guidelines. *See* FFCL at 44 ¶ 84. There was no evidence that UBH has some *separate* model for the CDGs. UBH's only response to all this evidence, Mot. at 5:6-15, is to cite the unsupported testimony of Dr. Triana—whom this Court found to be not credible on other issues. FFCL at 15 ¶ 30. The Court should not simply accept Dr. Triana's bare assertion, particularly in the face of all the evidence going the other way, including the distinct lack of evidence of any policy or training directing clinicians to *ignore* the cross-references. *Cf., e.g.*, FFCL at 15 ¶ 28 ("there is no evidence in the record that the words in the Guidelines can be ignored by the Peer Reviewers . . .").

UBH also cites (without analysis) three denial letters, Mot. at 5:6-15, but these do not prove its point, either. All three denials, citing the CDGs, refer to the same type of acute-focused clinical reasons as denials under the LOCGs. *See* Trial Ex. 229 (coverage denied because Driscoll, a minor, had "[redacted]" and "[redacted]); Trial Ex. 240 (coverage denied because Muir was "[redacted]"); Trial Ex. 226 (coverage denied because Alexander, a minor, was "[redacted]"). They provide no support for the claim that UBH's clinicians ignore the CDGs' cross-references to the LOCGs.

impacted individuals. Indeed, the Court anticipated this simple solution when it noted that, if the Court were to "carve out some or all of the CDGs because of the incorporation issue," that decision could lead to a "class definition issue." Hr'g Tr. (Mar. 29, 2019) at 12.[6]

**C. <u>Purported Plan "Variation."</u>** UBH has twice previously raised—and the Court has twice previously rejected—the argument that "variation" in the terms of the class members' plans precludes class certification. *See, e.g.*, Cert. Order at 30-31, 33; FFCL at 25 ¶ 53. Yet, in this motion, UBH again incorrectly asserts that Plaintiffs "asked the Court to treat [one] isolated phrase as alone defining the scope of coverage and the standards that should be applied in making benefit determinations for plan members." Mot. at 6-7.[7] This is not Plaintiffs' claim, as the Court has explained multiple times. *See, e.g.*, Cert. Order at 4 n.6 (noting that Plaintiffs do not contend that "adherence to generally accepted standards is the ***sole*** condition for coverage."); *Wit* ECF No. 286, Order Granting in Part & Denying in Part UBH's Mot. for Summ. J. (Aug. 14, 2017) at 29; Trial Tr. at 1879:9-1880:4 (Court explaining Plaintiffs' claim to UBH counsel); FFCL at 25 ¶ 53. As the Court has held, because Plaintiffs challenged only the criteria UBH used to determine whether services were consistent with generally accepted standards (a necessary but not exclusive condition for coverage), to prevail, Plaintiffs did not have to show that there was "actually coverage for any particular person" based on all the terms of that person's plan. Trial Tr. at 1879:20-22. UBH admits, and the Court has found, that the plans uniformly contain the only term that matters to Plaintiffs' claims—a term making adherence to generally accepted standards of care ***one*** essential condition of coverage.[8] UBH's refusal to grapple with Plaintiffs'

---

[6] The Court invited the parties to anticipate how the Class definitions should be changed if the Court were to decide to "carve out" one or more CDGs. Hr'g Tr. (Mar. 29, 2019) at 12. Although Plaintiffs do not believe any changes are necessary, their proposals—in the event the Court concludes changes are needed—are included in Exhibit A hereto.

[7] UBH also falsely asserts that the "only evidence" Plaintiffs offered "about the class members' plans was a summary exhibit . . ." Mot. at 6. As UBH well knows, the parties jointly submitted *all* of the Claim Sample members' plans into evidence. *See* Trial Ex. 892 (summary chart citing Trial Exhibit numbers for all Claim Sample plans). The Court, therefore, had before it all of the plan terms UBH claims Plaintiffs "cast aside." Mot. at 6. The important point is that the evidence proved that those "other" plan terms were not relevant to UBH's development and use of its Guidelines and thus are not relevant to Plaintiffs' claims.

actual claims dooms its arguments.[9]

UBH's arguments continue to fail both factually and legally. As a factual matter, UBH did ***not*** actually apply the restrictive terms it now claims preclude certification. There is ***no*** record evidence that UBH actually cited any of these restrictive plan terms in denying coverage to these class members[10]—even though the regulations implementing ERISA require UBH's

---

[8] *See*, *e.g.*, FFCL at 25 ¶ 53 (finding that "[e]very class member's health benefit plan includes, as one condition of coverage, a requirement that the requested treatment must be consistent with generally accepted standards of care."); Cert. Order at 4 n.6, 33, 41; Trial Tr. at 1876:10-21 (UBH's counsel admitting that "it is a necessary but not sufficient condition to coverage under all of the plans that the treatment at issue be consistent with generally accepted standards of care"); Trial Tr. at 1879:16-19 (Court explaining, "if you're going to give guidance to the people making coverage determinations on what is generally accepted standards of care, it better be generally accepted standards of care.").

[9] UBH's cases, Mot. at 6-9, are equally inapposite. Only one even involved a class action, and there, the question was whether common issues would predominate where the only way to establish a violation required analysis of multiple ambiguous, and potentially conflicting, provisions in various documents, as well as individualized questions about whether the beneficiary chose to receive benefits in a particular manner. *See Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-cv-05135, 2016 WL 5724293, at *6-8 (E.D. Pa. Sept. 30, 2016). Nothing about that case, however, suggests that a court could not certify an ERISA class action where the relevant plan terms are uniform, as the Court found here.

Nor do UBH's other cases—individual actions seeking benefits—suggest that plan "variation" inevitably precludes certification of classes under ERISA. Despite stating that courts read plans "as a whole," what the courts actually *did* in those cases was to focus on the specific plan terms that were relevant to the questions at hand—just as the Court has done here. *See Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 627-29 (9th Cir. 2008) (where question was whether plaintiff exhausted administrative remedies, extensively examining plan terms defining remedies, without citing or discussing any other plan terms); *Gilliam v. Nev. Power Co.*, 488 F.3d 1189, 1195-97 (9th Cir. 2007) (limiting discussion to relevant plan terms only); *Dupree v. Holman Prof'l Counseling Ctrs.*, 572 F.3d 1094, 1098-99 (9th Cir. 2009) (same); *Elizabeth L. v. Aetna Life Ins. Co.*, Case No. CV 13-2554 SC, 2015 WL 799417, at *2-3 (N.D. Cal. Feb. 23, 2015) (same). None of those cases suggests that a court is bound in every case to review and examine every single term in a plan, no matter how irrelevant to the questions at issue in the case, as UBH urges here.

[10] For example, Member ID 8988 sought residential treatment, but UBH did not deny her claim based on the plan's (illegal) administrative exclusion of coverage for behavioral health services at that level of care, nor did UBH base its denial on the facial question of whether the services sought qualified as "short-term." *See* Trial Ex. 1314 (denial letter to Member ID 8988). Instead, UBH denied coverage because the "[redacted]" *Id.* at 1314-0001. The record is similarly devoid of any evidence of UBH actually applying any of the other plan provisions UBH now invokes. *Compare* Mot. at 8 (citing exclusions and limitations on residential treatment in plans of Member IDs 5117 (Trial Ex. 2014-

denials to cite "the specific plan provisions on which the determination is based." *See* 29 C.F.R. § 2560.503-1(g). The mere claim that UBH, in theory, ***could*** have cited some restrictive plan provisions—when in fact it did not—does not defeat class certification. And as a matter of law, ERISA prohibits UBH from enforcing plan terms that violate the Parity Act, like many of those UBH cites here.[11] *See, e.g.*, Pls.' Opening Remedies Br. at 16 n.18.

**D. Common Injury.** Finally, despite promising to limit its motion to new issues, UBH argues for at least the fifth time that Plaintiffs were obligated to prove that each class member was actually entitled to benefits. *See Wit* ECF No. 149 at 30-32; ECF No. 177 at 10-11; ECF No. 248 at 10-12, 15-16; ECF No. 400 at 99-102. UBH tries to re-phrase the argument by suggesting Plaintiffs had to show "that each class member . . . obtained the services at issue or paid . . . out of pocket for those services," Mot. at 9-10, but this is just another way of saying the same thing. Many class members, as UBH evidently concedes, could not afford to pay for the services at issue, and thus did not obtain those services or incur expenses for them. But UBH's wrongdoing—UBH's development and use of its restrictive guidelines to deny coverage—and the class member's injury, had already occurred at that point. Without reference to the *additional* consequences to any specific class member (as serious, or even life-threatening, as those may have been), the injury proven at trial that *all* class members suffered, and which will be remedied by the prospective and retrospective relief Plaintiffs are seeking, is the use of UBH's flawed, self-serving criteria and the denial of coverage itself. The Court has ruled repeatedly on this

---

0168), 986 (Trial Ex. 1539-0053), and 4013 (Trial Ex. 2011-0081)) *with* Trial Ex. 1299 (denial letter for Member ID 5117) (no mention of plan term UBH now cites); Trial Ex. 2005 (denial letter for Member ID 986) (same); Trial Ex. 1357 (denial letter for Member ID 4013) (same). *Compare also* Mot. at 8-9 n.5 (citing exclusions in plan of Member ID 3435) *with* Trial Ex. 1295 (denial letter for Member ID 3435) (no mention of plan term UBH now cites). UBH's reliance on its chart summarizing various plans' definitions of "custodial" care, Mot. at 9 n.5 (citing Trial Ex. 1654), is equally unavailing. As the Court found, the ultra-restrictive definition of custodial care in UBH's Guidelines does not appear in *any* of the Claim Sample members' plans. FFCL at 77 ¶ 148. Nor did UBH even attempt to prove that it ever applied the restrictive plan terms on which it now relies. *See, e.g.*, Pls.' Post-Trial Reply Br. at 53 n.64.

[11] Several of the exclusions and limitations UBH cites, Mot. at 8-9 & n.5, apply only to behavioral health services, in violation of the Parity Act. *See* Trial Ex. 2023-0042-43 (limitation cited by UBH is applicable only to behavioral health services); Trial Ex. 2014-0168 (same); Trial Ex. 1539-0053 (same); Trial Ex. 1548-0030 (same).

aspect of the case. Plaintiffs incorporate their prior arguments, *Wit* ECF No. 153 at 17-18; ECF No. 179 at 11-13; ECF No. 260-3 at 10-19; ECF No. 404 at 7-8, and the Court's reasoning on the issue. *See Wit* ECF No. 174 at 31-33, 54-55; Order Denying Mot. for Leave to File Mot. for Recons., *Wit* ECF No. 181 ("Recons. Order") at 5; *Wit* ECF No. 286 at 24-25; FFCL at 104 ¶ 204.[12]

UBH also argues that Plaintiffs failed to prove, at trial, that the class members "were denied benefits based on the specific LOCG provisions they challenge." Mot. at 9. Besides being a procedurally improper attack on the Court's merits findings, this assertion is just incorrect. Plaintiffs proved at trial that, in every year of the Class Period, the LOCGs' Common Criteria—the mandatory criteria all class members had to satisfy ***in full*** in order to obtain coverage, FFCL at 21-22 ¶¶ 43-44—were "riddled with requirements that provided for narrower coverage than is consistent with generally accepted standards of care." FFCL at 93 ¶ 183. Given that the mandatory, threshold criteria for coverage were holistically and fatally flawed, the weight of the evidence proved that all class members were subjected to improper criteria, as the Court found. FFCL at 19 ¶ 37; 21-22 ¶ 43. The presence of some discrete criterion that may not have been flawed (or was not challenged) does not change this critical fact.[13]

## II. THE CLASSES SATISFY THE TYPICALITY REQUIREMENT.

For the first time, UBH challenges typicality, largely folding its challenge into its

---

[12] The Court has also previously rejected UBH's Rules Enabling Act argument, Mot. at 10, because it turns on UBH's incorrect "assumption that ERISA provides a remedy only for a wrongful denial of benefits." *See* Recons. Order at 5.

[13] Specifically, UBH notes that the Court found two criteria appearing in each of the 2011, 2012 and 2013 Guidelines to be consistent with generally accepted standards of care. *See* Mot. at 10; *see also* FFCL at 57 ¶ 110 n.14; *id.* at 67 ¶ 129. However, the Court found several *other* mandatory criteria in those years were inconsistent with generally accepted standards. *See, e.g.*, FFCL at 45 ¶¶ 86-87; 50 ¶¶ 99-100. Likewise, the fact that the Guidelines require services to be within the "scope of the provider's professional training and licensure," Mot. at 10, does nothing to rehabilitate the problematic criteria invalidated by the Court. In any case, UBH offers no evidence that *any* class member's denial was based solely on any of these criteria—nor could it, because UBH's denials cite the Guidelines as a whole, rather than citing any specific criterion. *See* Trial Ex. 894 (chart of denial rationales). UBH cannot now seek to capitalize on its own lack of precision to defeat a class—especially where Plaintiffs proved it was impossible to apply the Guidelines without applying a flawed provision. *See, e.g.*, FFCL at 42 ¶ 82 (finding the "focus on acuity" was a "pervasive" defect throughout all versions of the Guidelines at issue).

arguments about Rule 23(a) commonality—but again, UBH fails to grapple with or even cite the Court's prior analysis. As the Court has explained, under Rule 23(a)(3)'s permissive standards, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Cert. Order at 34 (quoting *Hanlon*, 150 F.3d at 1020). The Court examined the Named Plaintiffs' claims and found them typical, *id*. at 34-35, while also noting that "UBH [did] not dispute that the typicality requirement is met." *Id*. at 35.

None of UBH's 13th-hour arguments, discussed above, comes close to refuting the Court's ruling. UBH's only argument truly going to typicality appears in a footnote, where it asserts that Plaintiffs "failed to offer any evidence that they remain members of health plans administered by UBH." Mot. at 11 n.7. Yet, this argument relates only to one requested remedy (prospective injunctive relief), and has no bearing on liability or on Plaintiffs' request for a remand. In any event, UBH shunted this argument to a footnote for good reason: no such showing was necessary, as the case on which UBH relies holds: "If the district court certifies a class before the plaintiff's claim becomes moot, mooting the putative class representative's claim will not moot the class action." *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1047-48 (9th Cir. 2014) (quotations omitted); *see also Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011) (explaining that mooting class representative's claim does not moot a class action because "upon certification the class 'acquire[s] a legal status separate from the interest asserted by [the class representative]'").[14] There was no dispute that, at the time the Court certified the classes, at least one representative for each class was a member of a plan administered by UBH—and that fact is sufficient to enable the class to seek prospective relief,

[14] UBH's suggestion that the Named Plaintiffs failed to prove standing on this basis, Mot. at 11 n.7, has even less merit. As the Ninth Circuit held in *Slayman*, "[w]hen evaluating [standing], we must look at the facts as they exist at the time the complaint was filed." 765 F.3d at 1047. All of the Named Plaintiffs were members of plans administered by UBH when their respective Complaints were filed. *See* FFCL at 2 ¶ 2("Each of the named Plaintiffs was *at all relevant times* a beneficiary of an ERISA-governed health benefit plan for which UBH acted as a claims administrator.") (emphasis added); *see also Wit* Compl., *Wit* ECF No. 39, ¶¶ 39 (Wit), 52 (Holdnak), 116 (Pfeifer), 134 (Muir), 156 (Flanzraich); *Tillitt* Compl., *Wit* ECF No. 123, ¶ 1; *Alexander* Compl., *Alexander* ECF No. 1, ¶¶ 49 (Alexander), 76 (Klein), 94 (Haffner); *Driscoll* Compl., *Alexander* ECF No. 87, ¶ 1.

even if some Named Plaintiffs subsequently changed administrators.[15]

**III. THE NAMED PLAINTIFFS ARE ADEQUATE CLASS REPRESENTATIVES.**

Despite the Court's admonition that UBH "restrict" its motion to "truly new arguments," Hr'g Tr. (Mar. 29, 2019) at 15, UBH recycles its argument that Plaintiffs "failed to adequately represent the interests of the absent class [members]," claiming Plaintiffs "precluded absent class members from bringing later benefits claims arising out of the same denial of benefits, even if those later claims are based on different theories of wrongful denial of benefits relating to the guidelines." Mot. at 11-12. This argument is no better now than it was before.

First, the argument is premised on the false assertion that Plaintiffs "'stipulated' to 'drop' . . . on behalf of the entire class" claims that their denials were wrongful for reasons other than UBH's adoption and application of unlawfully restrictive Guidelines. Mot. at 11-12. But Plaintiffs did not, as UBH suggests, "drop" any claims "on behalf of the class." In rejecting this argument previously, the Court explained: "Plaintiffs' class certification motion . . . request[ed] only that the Court certify the proposed classes based on the theory that UBH abused its discretion by adjudicating class members' claims using flawed Guidelines." Recons. Order at 3. Plaintiffs did not request—and the Court did not order—certification on any other claims or theories.

Second, the argument is still wrong for reasons the Court and Plaintiffs have previously explained. *See* Recons. Order at 5 ("[U]nder the doctrine of *res judicata* adjudication of claims that are common to a class does not preclude subsequent litigation of ***individual*** claims that were not pursued by the class.") (citing *Akootchook v. United States*, 271 F.3d 1160, 1164 (9th Cir. 2001)); Pls.' Opp'n to Def.'s Mot. for Leave, *Wit* ECF No. 179 (Oct. 11, 2016) at 13-23; Pls.' Answer to UBH's Rule 23(f) Pet., 9th Cir. ECF No. 2 (Nov. 7, 2016), at 11-18; Pls.' Opp'n to Mot. for Leave to File Reply, 9th Cir. ECF No. 4 (Nov. 28, 2016), at 3-5.

---

[15] In any case, as UBH ought to know, Michael Driscoll, David Haffner, Cecilia Holdnak, Brian Muir, and Linda Tillitt all remain members of plans UBH administers. Brandt Pfeifer's company switched insurers, but only after the Court certified the State Mandate Class. Having laid in the weeds on this argument until after trial, UBH cannot fault Plaintiffs for failing to prove at trial facts that are beyond dispute, which easily could have been established by a stipulation.

## IV. THE STATE MANDATE CLASS PROPERLY INCLUDES TEXAS MEMBERS.

UBH argues that the *Wit* State Mandate Class must be purged of members whose plans were governed by Texas law and who sought coverage for services in Texas ("Texas Members") because Plaintiffs supposedly "failed to prove their claims" as to those class members. Mot. at 14-15. But this Court found otherwise. FFCL at 88 ("Plaintiffs have demonstrated . . . that during the class period UBH violated Texas law by applying its own Guidelines to claims for benefits that should have been decided under TDI Criteria."). A motion to decertify is not an appropriate mechanism to challenge that finding.[16]

UBH also claims Plaintiffs failed to prove "the requirements of Rule 23" as to the Texas Members. Mot. at 15. Again, the Court has found otherwise. *See* Cert. Order at 19, 30, 34, 38, 43, 51, & 55 (holding that all three classes satisfy every element of Rule 23(a) and (b)). As usual, UBH ignores the Court's ruling and fails to identify anything that has changed to undermine the Court's decision. UBH's primary argument is that the Class Representative for the State Mandate Class, Brandt Pfeifer, lacks "typicality and commonality" with the Texas Members because his plan was governed by Illinois—not Texas—law. Mot. at 14. UBH has never objected to Mr. Pfeifer as class representative on this basis before. Yet the State Mandate Class has always comprised members with plans governed by the laws of four states; this is nothing new. UBH nonetheless fails to lay out even a ***theory*** for why including Texas could possibly undermine typicality or commonality. It plainly does not: the State Mandate Class's claim, proven at trial, is that ERISA and the members' Plans required UBH to follow state laws that mandated the criteria UBH was to use, but that UBH instead used its own, self-serving criteria to deny the class members' requests for coverage.[17] Mr. Pfeifer's claim, based on Illinois law, was reasonably co-

---

[16] The Court should likewise disregard UBH's claim that Plaintiffs "failed to offer evidence of any class member whose benefit decision required use of the TDI Criteria, but where TDI Criteria was not used." Mot. at 14. The argument is flat wrong in any event; the trial record was more than sufficient to establish, by a preponderance of the evidence, that UBH violated ERISA with respect to the Texas Members. *See* Pls.' Post-Trial Br. at 65-66 (discussing evidence); Pls.' Post-Trial Reply Br. at 77-78 (same); FFCL at 87-88 (same); Trial Ex. 255; Trial Ex. 896 ¶¶ 2-4.

[17] The Court found that Plaintiffs proved this claim at trial as to all states. *See* FFCL at 82-88 (discussing Court's findings that "during the class period UBH violated the laws of Illinois, Connecticut, Rhode Island, and Texas by failing to apply criteria that were in compliance with

extensive with the Texas Members' claim, and did not need to be identical to them in every respect. *See* Cert. Order at 34 (citing *Hanlon*, 150 F.3d at 1020).[18]

Finally, UBH contends that the evidence establishing UBH's violation of Texas law "is not classwide proof that UBH did so for *all class members* for the *entire class period*." *See* Mot. at 15 (original emphasis); *see also id*. at 14 (citing Court's finding that the evidence does not establish how long UBH's violation of Texas law lasted or which CDGs UBH applied). This argument misconstrues both the evidence and the Court's findings. Citing the 2015 email admitting that UBH's Houston personnel were "using the CDGs" to adjudicate requests for coverage where "the TCADA guidelines apply," Trial Ex. 493, the Court found that UBH violated ERISA and Texas law "at some point during the class period." FFCL at 88 ¶ 167. The Court also found that the class list "reflects that UBH applied its own Guidelines, rather than TDI Criteria, . . . during the class period." *Id*. The Court decidedly did ***not*** find that UBH's violation only impacted a subset of the Texas Members, a finding that would be impossible since the class is defined to include only people whose requests for coverage were denied by UBH pursuant to its Guidelines and ***not*** the state-mandated TDI Criteria. FFCL at 8-9 ¶ 13. In other words, there is no way to be a Texas Member of the State Mandate Class and not have been subjected to application of UBH's Guidelines in violation of Texas law.

UBH's argument also conflates the class list it produced (which is evidence, among other things, of the uniformity of UBH's policy and practice of applying its Guidelines) with the criteria for class membership (which are set forth in the class definition as ordered by the Court). The same confusion seems to animate UBH's contention that Plaintiffs somehow "shift[ed]" their burden to prove liability "to UBH to address during the *remedy* phase" by noting that the denial letters will clearly establish whether UBH used its own Guidelines or solely the TDI Criteria. Mot. at 15 (original emphasis). Class membership turns on UBH's denial rationale, which is reflected in UBH's denial letters, and not on whether the denial appears on the class list.

---

the laws of those states . . .").

[18] Likewise, Mr. Pfeifer and the other class members shared multiple common questions, as the Court previously found. *See* Cert. Order at 30. UBH offers no reason to find otherwise now.

That is why UBH may need to review the actual denial letters for each class member to confirm that he or she satisfies the class definition. Pretrial Conf. Tr. (Oct. 5, 2017) at 13:20-22 ("If you have to look at the denial letters, then you look at the denial letters."). Regardless, Plaintiffs have already proven UBH's liability to everyone who *is* a member of the class as it is defined.[19]

## V. THE CLASSES SATISFY RULES 23(b)(1), (b)(2) AND (b)(3).

UBH baldly asserts that the classes fail to satisfy any of the requirements of Rule 23(b), but fails to offer any analysis, let alone proof, that this is so. Mot. at 1:8-9, 8 n.4.[20] The Court previously found, after rigorous analysis, that the classes satisfied the requirements for all three types of classes under Rule 23(b), and UBH offers no reason to disturb that finding.

## VI. CONCLUSION

For these reasons, the Court should deny UBH's Motion for Class Decertification.

Dated: June 14, 2019

ZUCKERMAN SPAEDER LLP

*/s/ Caroline E. Reynolds*
Caroline E. Reynolds
Carl S. Kravitz
Aitan D. Goelman
Jason S. Cowart
Adam B. Abelson

PSYCH-APPEAL, INC.
Meiram Bendat

*Attorneys for Class Plaintiffs*

---

[19] If the Court concludes that the class definition should be clearer, it could add the following language: "The State Mandate Class also excludes any member whose request for coverage of services in Texas was denied by UBH based solely on the Texas Department of Insurance Criteria (sometimes referred to as the Texas Commission on Alcohol and Drug Abuse ("TCADA") Guidelines)." *See* Ex. A. As explained above, however, Plaintiffs believe the definition ordered by the Court is clear as it is written.

[20] UBH's unsupported assertion that the classes fail to meet Rule 23(b)(1) and (b)(2) because it "owes materially different obligations to class members under different plans with different terms," Mot. at 8 n.4, is a case in point. The evidence proved that all of UBH's plans make satisfaction of generally accepted standards of care one essential condition of coverage, that the Guidelines were designed to capture those standards, and that all the class members' denials were based on UBH's Guidelines. In light of those facts, ERISA imposes on UBH a uniform set of fiduciary obligations in connection with the development and use of its Guidelines, as this Court found. *See* FFCL at 99 ¶ 194.