JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
ANDREW HOLMER (SBN 268864)
aholmer@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690

THOMAS F. KOEGEL (SBN 125852)
tkoegel@crowell.com
NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Telephone: 415.986.2800
Facsimile: 415.986.2827

APRIL N. ROSS (admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **DAVID WIT, et al.,** | Case No. 14-cv-02346 JCS<br>Related Case No. 14-cv-05337 JCS |
| Plaintiffs, | |
| v. | **UNITED BEHAVIORAL HEALTH'S REPLY IN SUPPORT OF MOTION FOR CLASS DECERTIFICATION** |
| **UNITED BEHAVIORAL HEALTH,** | Hon. Joseph C. Spero |
| Defendant. | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1  **GARY ALEXANDER, et al.,**

2           Plaintiffs,

3       v.

4  **UNITED BEHAVIORAL HEALTH,**

5           Defendant.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

UBH'S REPLY IN SUPPORT OF MOTION
FOR CLASS DECERTIFICATION;
CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS

**TABLE OF CONTENTS**

Page

I.   Introduction ............................................................................................................... 1

II.  Plaintiffs Needed To Prove The Requirements Of Rule 23 At Trial By A
     Preponderance Of The Evidence And Cannot Shift The Burden To UBH ......................... 1

III. Plaintiffs' Belated Effort To Narrow The Class Definitions Underscores Their
     Fundamental Flaws, Which Cannot Be Remedied As Plaintiffs Suggest ........................... 3

     A.   The Certified Classes Improperly Include Members With No Viable
          ERISA Claim Because They Received The Full Benefits Requested .................... 3

     B.   Plaintiffs Did Not Prove That Any Coverage Decision Based On A CDG
          Rests On The LOCG Criteria Allegedly "Incorporated" Into That CDG ............... 5

     C.   Plaintiffs Did Not Prove The Rule 23 Requirements For Members Of The
          *Wit* State Mandate Class Whose Benefit Decisions Were Governed By
          Texas Law ................................................................................................ 6

IV.  Plaintiffs Did Not Prove With Common Evidence That The Guidelines Were
     Inconsistent With Class Members' Plans Or That Class Members Suffered A
     Common Injury ........................................................................................................ 8

V.   Plaintiffs Did Not Prove At Trial That Named Plaintiffs Are Adequate
     Representatives As Required Under Rule 23(A)(4) ...................................................... 10

VI.  Plaintiffs Did Not Prove At Trial That They Satisfied Any Subsection Of Rule
     23(B) ..................................................................................................................... 12

VII. Conclusion ............................................................................................................. 12

CROWELL
& MORING LLP
ATTORNEYS AT LAW

i

UBH'S REPLY IN SUPPORT OF MOTION
FOR CLASS DECERTIFICATION;
CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.H. by & through G.H. v. Microsoft Corp. Welfare Plan*,
  No. C17-1889-JCC, 2018 WL 2684387 (W.D. Wash. June 5, 2018).........................................9

*In re Apple iPod iTunes Antitrust Litig.*,
  No. 05-CV-0037 YGR, 2014 WL 6783763 (N.D. Cal. Nov. 25, 2014) ....................................2

*Brownell v. State Farm Mut. Ins. Co.*,
  757 F. Supp. 526 (E.D. Pa. 1991) ..............................................................................................3

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .....................................................................................................................7

*Dilts v. Penske Logistics, LLC*,
  No. 08-CV-318-CAB BLM, 2014 WL 305039 (S.D. Cal. Jan. 21, 2014) ............................1, 2

*Fosmire v. Progressive Max Ins. Co.*,
  277 F.R.D. 625 (W.D. Wash. 2011) ........................................................................................11

*Gabriel v. Alaska Elec. Pension Fund*,
  773 F.3d 945 (9th Cir. 2014).....................................................................................................5

*Gilliam v. Nev. Power Co.*,
  488 F.3d 1189 (9th Cir. 2007)...................................................................................................9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)...................................................................................................8

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
  571 U.S. 99 (2013) .....................................................................................................................5

*Huffman v. Prudential Ins. Co. of Am.*,
  No. 2:10-CV-05135, 2016 WL 9776067 (E.D. Pa. Dec. 13, 2016)...........................................9

*In re Initial Pub. Offerings Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006).........................................................................................................2

*Kamar v. RadioShack Corp.*,
  375 F. App'x 734 (9th Cir. 2010) ..............................................................................................7

*In re Korean Ramen Antitrust Litig.*,
  No. 13-CV-04115-WHO, 2018 WL 1456618 (N.D. Cal. Mar. 23, 2018).................................2

*Lambert v. Nutraceutical Corp.*,
  870 F.3d 1170 (9th Cir. 2017)...................................................................................................2

CROWELL
& MORING LLP
ATTORNEYS AT LAW

ii

UBH'S REPLY IN SUPPORT OF MOTION
FOR CLASS DECERTIFICATION;
CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS

## **TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ............................................................................................................... 1

*Marlo v. United Parcel Serv., Inc.*,
 639 F.3d 942 (9th Cir. 2011) .................................................................................................. 2

*Martinez v. Beverly Hills Hotel*,
 695 F. Supp. 2d 1085 (C.D. Cal. 2010) ................................................................................ 11

*Mazza v. Am. Honda Motor Co.*,
 666 F.3d 581 (9th Cir. 2012) ................................................................................................ 12

*Mazzei v. Money Store*,
 829 F.3d 260 (2d Cir. 2016) .......................................................................................... 2, 3, 6

*Pakovich v. Verizon LTD Plan*,
 653 F.3d 488 (7th Cir. 2011) .................................................................................................. 5

*In re Paxil Litig.*,
 212 F.R.D. 539 (C.D. Cal. 2003) ........................................................................................... 8

*Rader v. Teva Parenteral Medicines, Inc.*,
 276 F.R.D. 524 (D. Nev. 2011) ............................................................................................ 11

*Randleman v. Fid. Nat. Title Ins. Co.*,
 646 F.3d 347 (6th Cir. 2011) .................................................................................................. 7

*Sali v. Corona Reg'l Med. Ctr.*,
 909 F.3d 999 (9th Cir. 2018) ........................................................................................ *passim*

*Silk v. Metro. Life Ins. Co.*,
 310 F. App'x 138 (9th Cir. 2009) ........................................................................................... 5

*Skinner v. Northrop Grumman Ret. Plan B*,
 673 F.3d 1162 (9th Cir. 2012) ................................................................................................ 5

*Stockwell v. City & Cty. of S.F.*,
 No. C 08-5180 PJH, 2015 WL 2173852 (N.D. Cal. May 8, 2015) ........................................ 7

*W. States Wholesale, Inc. v. Synthetic Indus., Inc.*,
 206 F.R.D. 271 (C.D. Cal. 2002) ......................................................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ............................................................................................................. 12

CROWELL
& MORING LLP
ATTORNEYS AT LAW

iii

UBH'S REPLY IN SUPPORT OF MOTION
FOR CLASS DECERTIFICATION;
CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  No. MDL 09-2074 PSG FFMX, 2014 WL 6888549 (C.D. Cal. Sept. 3, 2014) ........................12

*Withrow v. Halsey*,
  655 F.3d 1032 (9th Cir. 2011) ..................................................................................................5

**Statutes**

29 U.S.C. § 1132(a)(3) ..................................................................................................................5

**Other Authorities**

Fed. R. Civ. Proc. 23 ............................................................................................................. *passim*

Fed. R. Civ. Proc. 23(a)(4) ...........................................................................................................10

Fed. R. Civ. Proc. 23(b) ...............................................................................................................12

U.S. Const., Art. III .........................................................................................................................1

CROWELL
& MORING LLP
ATTORNEYS AT LAW

iv

UBH'S REPLY IN SUPPORT OF MOTION
FOR CLASS DECERTIFICATION;
CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS

## I. Introduction

The Court cautioned Plaintiffs at the pretrial conference that "you can't rely on the evidence that was put in at summary judgment, class certification, or the factual conclusions the Court reached in those decisions. You cannot. You have to try the case." Pretrial Hr'g. Tr. at 9:8–11(Oct. 5, 2017), Dkt. 351.

Plaintiffs failed to heed that directive. They did not prove each element of Rule 23 certification with the "manner and degree of evidence required" at trial – *i.e.*, by a preponderance of the evidence. Instead, they attempt to foist the burden onto UBH to *disprove* the appropriateness of class certification and ask the Court to reconstitute their facially flawed classes to evade the consequences of their failure to present common proof of their claims on behalf of all class members. But it was Plaintiffs who bore that burden at trial, and it is Plaintiffs who failed to carry it. Decertification is the natural consequence of their failure to present classwide proof *at trial* in a manner sufficient to satisfy the elements of Rule 23.

## II. Plaintiffs Needed To Prove The Requirements Of Rule 23 At Trial By A Preponderance Of The Evidence And Cannot Shift The Burden To UBH.

The elements of Rule 23 are "an indispensable part of the plaintiff's case" which "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 999, 1006 (9th Cir. 2018) (analogizing Rule 23 to Article III standing, and quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)) (emphasis in original). Thus, the "manner and degree of evidence required at the preliminary class certification stage is not the same as . . . at trial." *Id*. (quotations omitted). While a plaintiff may obtain class certification based on a showing that her claims are *capable* of proof at trial through evidence common to the class, to maintain certification, a plaintiff at trial must actually *present* such common evidence or face decertification of the class. *Dilts v. Penske Logistics, LLC*, No. 08-CV-318-CAB BLM, 2014 WL 305039, at *3 (S.D. Cal. Jan. 21, 2014) (decertifying class after a bench trial because the "common evidence" necessary to support a finding of commonality "did not materialize" at trial). Plaintiffs did not present such evidence here.

Plaintiffs seek to pass their burden to UBH on the false notion that UBH was somehow required to *disprove* the requirements for class certification at trial (or in its motion to decertify). Plaintiffs are wrong. At all times, "[t]he party seeking to maintain class certification bears the burden of demonstrating that the Rule 23 requirements are satisfied, even on a motion to decertify." *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017), *rev'd on other grounds*, 139 S. Ct. 710, 203 L. Ed. 2d 43 (2019); *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011); *see also Mazzei v. Money Store*, 829 F.3d 260, 270 (2d Cir. 2016) ("In opposing the decertification motion [after a jury verdict for the plaintiff, plaintiff] retained the burden to demonstrate that these requirements were satisfied.").

Plaintiffs also are wrong to suggest that UBH's post-trial motion for decertification should be treated like a pre-trial motion for reconsideration of the initial class certification decision. *See* Opp'n at 1:9–25, Dkt. 431. In each of the cases Plaintiffs cite, the defendant moved for decertification *at the same pre-trial stage of litigation* as the original motion for class certification, and the motion was therefore subject to the same proof. *See In re Korean Ramen Antitrust Litig.*, No. 13-CV-04115-WHO, 2018 WL 1456618, at *1 (N.D. Cal. Mar. 23, 2018) (decertification motion filed prior to trial). As Plaintiffs' own cases make clear, trial on the merits changes those circumstances, and post-trial decertification is appropriate if the "evidence adduced at trial warrants" decertifying the class, regardless of the parties' pre-trial arguments. *In re Apple iPod iTunes Antitrust Litig.*, No. 05-CV-0037 YGR, 2014 WL 6783763, at *6 (N.D. Cal. Nov. 25, 2014); *accord Dilts*, 2014 WL 305039, at *3.

Plaintiffs were required to prove every element of Rule 23 at trial by a preponderance of the evidence.[1] *See Sali*, 909 F.3d at 1006; *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) ("the determination as to a Rule 23 requirement is made only for

---

[1] For this reason, Plaintiffs' assertion that decertification should be denied if it "turns on evidence UBH could have offered" in response to their class certification motion falls flat. The decertification question does not turn on the evidence before the court at the class certification stage, but instead *on the trial evidence*. UBH's motion is premised entirely on the evidence admitted at trial and the Court's Findings of Fact and Conclusions of Law based on that evidence. At the pre-trial class certification stage, UBH did not and could not have waived any arguments about the adequacy of the evidence Plaintiffs would ultimately offer at trial more than a year later.

purposes of class certification and is not binding on the trier of facts, even if that trier is the class certification judge."). Because Plaintiffs failed to do so, the classes should be decertified. *Mazzei*, 829 F.3d at 271 (class decertified after jury verdict "given the failure of class-wide evidence . . . at trial" necessary to satisfy "Rule 23(a) and (b)(3)").[2]

### III. Plaintiffs' Belated Effort To Narrow The Class Definitions Underscores Their Fundamental Flaws, Which Cannot Be Remedied As Plaintiffs Suggest.

Plaintiffs effectively concede that the classes certified by the Court are not supported by the evidence admitted at trial. In a bid to avoid decertification, Plaintiffs for the first time propose to narrow the class definitions to exclude class members whose benefit requests were: (i) approved on an administrative appeal; (ii) reviewed using a CDG that the Court finds did not incorporate flawed LOCG criteria; or (iii) governed by Texas law and reviewed by UBH using the Texas Department of Insurance ("TDI") Criteria. Opp'n at 5, 6–7, 15 n.19; Opp'n, Ex. A. Plaintiffs' request to redefine the classes post-trial to cure fundamental deficiencies in proof is not supported by credible argument or evidence, and only confirms that the certified classes do not satisfy Rule 23's rigorous standards. *Brownell v. State Farm Mut. Ins. Co.*, 757 F. Supp. 526, 544 (E.D. Pa. 1991) ("The burden is on the plaintiff" to "adequately and accurately . . . define an appropriate class").

#### A. The Certified Classes Improperly Include Members With No Viable ERISA Claim Because They Received The Full Benefits Requested.

Plaintiffs cannot dispute that numerous class members received the *full amount of benefits*

---

[2] Plaintiffs incorrectly state that UBH "promis[ed] to limit its motion [for decertification] to new issues." Opp'n at 9. UBH was clear that it intended to move for decertification for a host of reasons based on the Court's "findings of fact and conclusions of law" and "the evidence that came in a trial." CMC Hr'g Tr. at 13–14 (March 29, 2019), Dkt. 426. The Court expressly declined to limit the issues UBH could assert in its motion for decertification, and instead imposed a 15-page limitation on UBH's motion. *Id.* (court stating "you can say whatever you want" in a "decertification [motion] of not more than 15 pages"). In any event, UBH limited its Motion to grounds for decertification that are directly impacted by the trial evidence (or lack thereof) and the Court's FFCL, which the Court could not and did not address at the class certification stage. While UBH respectfully disagrees with the Court's order granting class certification on other grounds raised by UBH at the class certification stage (including, for example, pure questions of law), and while UBH reserves the right to challenge class certification on appeal on all grounds previously raised, UBH does not repeat those arguments here.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

3

UBH'S REPLY IN SUPPORT OF MOTION
FOR CLASS DECERTIFICATION;
CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS

requested through the administrative appeal process.[3] Trial Ex. 1655; Trial Tr. 1484:10–17, 1502:6–12, 1503:5– 1505:4 (Bridge) (testifying that an overturn on appeal results in authorization of benefits). By Plaintiffs' own calculation, *thousands* of benefit requests at issue in this case were *approved in full* through the administrative appeal process.[4] Remarkably, Plaintiffs argue that class members who *received* benefits[5] and those *denied* benefits suffered a common injury and "[w]hat happened afterward" on administrative appeal "is not relevant to either class membership or the common questions that support class certification." Opp'n at 4. Plaintiffs support this proposition with the argument that "UBH's ERISA violations were complete when it issued its initial adverse benefit determinations to the class members." *Id*. It is unsurprising that Plaintiffs cite no case supporting this bold contention because the law is exactly the opposite.

The outcome of a class member's administrative appeal is not only "relevant," it is

---

[3] Plaintiffs misrepresent the record when they argue that "UBH did ***not*** reverse its decision" on appeal for one class member identified on Trial Exhibit 1655 because, on appeal, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp'n at 3 n.2 (emphasis in original). The member at issue ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Trial Ex. 899-0091. UBH ▮▮▮▮▮▮▮▮▮▮. *Id*. at -0092. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. at -0097–98. The uncontroverted evidence establishes that through the administrative appeal process, the member was approved for the full amount of benefits initially requested.

[4] Plaintiffs dismiss this as "less than 3% of the class." Opp'n at 3. Even assuming the statistical validity of Plaintiffs' extrapolation, the class list on which Plaintiffs seek to base the reprocessing remedy includes more than 67,000 benefit decisions. *See* Pls. Proposed Remedies Order, Dkt 426-1, at 6 (seeking reprocessing of "each and every adverse benefit determination listed on . . . Trial Exhibit 255"); Trial Ex. 255. Applying Plaintiffs' 3% figure yields over 2,600 benefit decisions overturned in full on administrative appeal.

[5] Plaintiffs announce that "UBH has offered ***no*** evidence that ***any*** class member ultimately received all the benefits or services he or she would have received if UBH had used appropriate guidelines" in the initial benefit determination. Plaintiffs simply ignore the uncontroverted testimony of Frances Bridge, cited in UBH's Motion, who testified that if an appeal resulted in an overturn, the "impact would be that the member would now have benefit coverage available" and that "services would be paid for or could be paid for and authorized" as applicable. Trial Tr. 1584:10–17 (Bridge). Indeed, after UBH initially denied one class member's request for additional residential treatment benefits, UBH fully overturned that decision on administrative appeal *the very next day* and authorized the additional residential treatment benefits requested using the exact same guideline. Trial Exs. 899-0010–11 & 1294. In any event, it was Plaintiffs' burden to prove by a preponderance of classwide evidence that class members were *denied* benefits. *See Sali*, 909 F.3d at 1006; FFCL, ¶ 13 (certified classes only consist of members whose request for benefits "was denied by UBH"). They did not meet that burden.

*jurisdictional*. An initial denial of benefits, even a "flawed" denial, is not actionable in its own right. "A participant's cause of action under ERISA . . . does not accrue until the plan issues a final denial." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105 (2013). Thus, as a matter of law, an ERISA cause of action does not accrue "until the appeal [is] denied or the time for appeal" has ended.[6] *Withrow v. Halsey*, 655 F.3d 1032, 1036 (9th Cir. 2011) (citation omitted). If through administrative appeal, an ERISA plaintiff "receive[s] everything she requested in her benefit claim, that claim [becomes] moot and the district court lack[s] jurisdiction" under ERISA. *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011); *Silk v. Metro. Life Ins. Co.*, 310 F. App'x 138, 139 (9th Cir. 2009) (holding that the payment of benefits moots an ERISA claim). The classes include thousands of members whose benefit requests were authorized in full by UBH. Those class members have no claim under ERISA, and Plaintiffs' claims are neither common nor typical of a class that includes them. *See* Opp'n at 5.

### B. Plaintiffs Did Not Prove That Any Coverage Decision Based On A CDG Rests On The LOCG Criteria Allegedly "Incorporated" Into That CDG.

If the Court finds that Plaintiffs failed to satisfy their burden of classwide proof as to the fact (and significance) of the "incorporation issue" for any CDG or group of CDGs, Plaintiffs concede that class members with benefit decisions made using those CDGs must be "carve[d] out" of the class. Opp'n at 7. But, as UBH explained in its Motion, it is not enough simply to "carve out" certain CDGs from the class definition. Even if the Court finds that some CDGs incorporate language from one or more LOCGs, Plaintiffs still fundamentally failed to meet their burden to prove commonality or typicality under Rule 23 as to the CDG-based determinations.

Plaintiffs still do not identify a single CDG determination in evidence that references or cites an LOCG that was "incorporated" into the CDG. Instead, Plaintiffs cherry-pick language in

---

[6] This is equally true with respect to Plaintiffs' duplicative request for relief under 29 U.S.C. § 1132(a)(3). Under § (a)(3), "the 'harm' of being deprived of [a] statutory right" under ERISA is not "a compensable harm" because ERISA does not make ERISA fiduciaries "strictly liable for every mistake." *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012); *see also Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 965 (9th Cir. 2014) (Kozinski, J, concurring) (under § (a)(3) "[t]he claimed harm must be something more than the mere violation of a statutory right" under ERISA).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

5

UBH'S REPLY IN SUPPORT OF MOTION
FOR CLASS DECERTIFICATION;
CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS

certain CDG decision letters, which they characterize as giving "acute-focused clinical reasons" for the benefit denial, and then improperly try to shift the burden to UBH to prove that those decisions were *not* based on an "incorporated" LOCG. Opp'n at 6 n.5. But it was *Plaintiffs'* burden to show that the decisions were based on an incorporated LOCG. *See Sali*, 909 F.3d at 1006. Plaintiffs do not challenge the CDGs to the extent they may include "acute-focused" clinical criteria; "Plaintiffs challenge these CDGs *only to the extent they incorporate the Level of Care Guidelines*." Pls.' Post-Trial Br., Dkt. 392, at 5:6-7 (emphasis added); *see also* Opp'n at 5; FFCL ¶ 47. Plaintiffs thus were required to prove – on a classwide basis – that all of the class members who were denied benefits under a CDG were actually denied benefits based on criteria incorporated into those CDGs from one or more of the LOCGs at issue, and not based on any of the CDG-specific criteria, whether or not that criteria might be "acute-focused."[7] Plaintiffs did not prove by a preponderance of the evidence that their claims are common with or typical of any class member whose request for benefits was denied based on a CDG.

### C. Plaintiffs Did Not Prove The Rule 23 Requirements For Members Of The *Wit* State Mandate Class Whose Benefit Decisions Were Governed By Texas Law.

Despite years of discovery, three weeks of trial, and hundreds of pages of post-trial briefing, Plaintiffs did not prove, and the Court did not find, a single instance in which: (1) a class member's benefit decision required the use of the TDI Criteria; and (2) UBH failed to cite the TDI Criteria in the benefit decision letter. Plaintiffs do not deny this. Instead, Plaintiffs cite the Court's limited finding that UBH violated Texas law "at some point during the class period" and conclude, without authority, that this satisfies their burden of proving commonality and typicality for all class members throughout the entire class period. Opp'n at 13-14. Plaintiffs are wrong for multiple reasons. *See Mazzei*, 829 F.3d at 271.

First, Plaintiffs turn Rule 23 on its head in arguing that they met their affirmative burden

---

[7] For example, one class member's ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████ and *not* based on any of the level of care criteria that the Court found to be an abuse of UBH's discretion. Trial Ex. 1383-0002.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

6

UBH'S REPLY IN SUPPORT OF MOTION
FOR CLASS DECERTIFICATION;
CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS

to prove commonality and typicality because the Court did not "find that UBH's violation only impacted a subset of the Texas Members" of the *Wit* State Mandate Class.  Opp'n at 14.  It was not UBH's burden at trial to *disprove* commonality and typicality by demonstrating the purported violation of Texas law only affected a "subset of the Texas Members" of the State Mandate class.  It was Plaintiffs' burden at trial to prove that the purported violation impacted *all* Texas class members *in the same way*. *Stockwell v. City & Cty. of S.F.*, No. C 08-5180 PJH, 2015 WL 2173852, at *6 (N.D. Cal. May 8, 2015) (class action plaintiff must prove class claims "at trial through evidence . . . common to the class rather than individual to its members") (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 30 (2013)).  Plaintiffs do not claim that they satisfied this burden, and the Court's limited findings show they did not.

Second, Plaintiffs admit that Texas members of the *Wit* State Mandate Class cannot be identified based on the trial record or common evidence, but instead only by "review[ing] the actual denial letters for each class member to confirm that he or she satisfies the class definition." Opp'n at 14-15 (arguing that membership in the Texas portion of the State Mandate Class does not turn on "whether the denial appears on the class list" admitted at trial).[8]  In other words, to determine whether a Texas class member is a class member at all, Plaintiffs admit that the Court must first grant that member the substantive remedy of reprocessing.  That is the definition of an impermissible failsafe class, in which "once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010).  "Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (holding that a class so defined

---

[8] Plaintiffs' passing reference to the Court's comment at the pretrial conference that "[i]f you have to look at the denial letters, then you have to look at the denial letters" highlights their failure of proof.  Opp'n at 15.  The Court's comment concerned *the evidence that would be required at trial* in order to answer the Court's "question about whether or not the denial was made in whole or in part using the guidelines." Pretrial Hr'g Tr. at 11–13 (Oct. 5, 2017), Dkt. 351.  Plaintiffs failed to offer that evidence, and accordingly failed to satisfy their burden under Rule 23.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

7

UBH'S REPLY IN SUPPORT OF MOTION
FOR CLASS DECERTIFICATION;
CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS

constitutes an independent basis for decertification). Rule 23 does not permit such a result.[9]

Third, Plaintiffs do not cite a shred of evidence supporting their conclusory assertion that the only State Mandate Class representative, Mr. Pfeifer (who was a resident of Illinois and whose wife sought treatment in California), FFCL ¶¶ 5, 157, has claims typical of a Texas member of the State Mandate Class. This is unsurprising, since Plaintiffs did not even attempt to prove that Mr. Pfeifer's claim was "reasonably co-extensive with those of absent [Texas] class members" and failed to identify a single Texas member of the *Wit* State Mandate Class with whom Mr. Pfeifer's claim shares any factual elements. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *In re Paxil Litig.*, 212 F.R.D. 539, 549 (C.D. Cal. 2003) ("the typicality requirement cannot be met" where "there is no 'generic' plaintiff properly typified by the class representatives").

### IV. Plaintiffs Did Not Prove With Common Evidence That The Guidelines Were Inconsistent With Class Members' Plans Or That Class Members Suffered A Common Injury.

Plaintiffs concede that they had the burden at trial to prove on a classwide basis that the LOCGs were inconsistent with each class member's plan. They also must concede that the only evidence they introduced at trial about those plans was a summary exhibit (and related testimony of their summary witness Ms. Duh) showing that each plan references "generally accepted standards of care." Plaintiffs summarily declare that the Court need not "examine every single term in a plan, no matter how irrelevant" to reach a common determination of liability here. Opp'n at 8 n.9. But this misstates their burden and the law, because the Court cannot determine a contract term's relevance without examining it. The "intended meaning of even the most explicit language [in an ERISA plan] can, of course, only be understood in the light of the context that

---

[9] Plaintiffs' proposed change to the *Wit* State Mandate Class definition does nothing to resolve this problem. As currently defined, the State Mandate Class already excludes individuals whose benefit determination was based upon the "level-of-care criteria mandated by the applicable state law" (for Texas, the TDI Criteria). Order re Supp. Class Notice at 1, Dkt. 281. The problem for Plaintiffs is that they did not identify a single Texas member of the *Wit* State Mandate Class who fits that definition at trial, and they cannot foist their burden of proof onto UBH to determine class membership through the post-trial reprocessing remedy.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

8

UBH'S REPLY IN SUPPORT OF MOTION
FOR CLASS DECERTIFICATION;
CASE NOS. 14-CV-02346 JCS; 14-CV-05337 JCS

gave rise to its inclusion." *Gilliam v. Nev. Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007) (quotation omitted).

If Plaintiffs contend that all other terms in the class members' plans are "irrelevant" to the proper construction of those plans, Plaintiffs bore the burden to prove this at trial based on the specific plans at issue. *See id; Sali*, 909 F.3d at 1006. But Plaintiffs offered no evidence showing on a classwide basis that the LOCGs are inconsistent with the complete coverage terms of any, much less every, plan at issue.[10] Mot. at 6–9. Plaintiffs cannot meet the rigorous demands of Rule 23 simply by skimming through ERISA plans with different terms, plucking a single phrase out of context from each, and treating them as identical without regard to the surrounding context or influence of other plan terms. *See Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-CV-05135, 2016 WL 9776067, at *3 (E.D. Pa. Dec. 13, 2016) (noting even if all 2,200 plans contained the same phrase, plaintiffs failed to show that individual plans did not have relevant provisions that would need to be interpreted to determine whether the plan administrator had violated plan terms). At trial, UBH identified multiple plans with provisions directly relevant to the question of whether the LOCGs are consistent with the coverage terms of specific class members' plans. *See* Mot. at 6-9. Plaintiffs offer no argument to explain – or evidence to prove – why those and similar plan terms are "irrelevant" to the question of whether UBH's guidelines are consistent with class members' plans read as a whole.[11]

---

[10] Instead, Plaintiffs argue that the undisputed variation among class members' plans is irrelevant because, according to Plaintiffs, UBH did not cite those provisions in class members' benefit decision letters. Opp'n at 8. But Plaintiffs expressly dropped any class claims premised on the validity or sufficiency of the rationale provided by UBH in its decision letters. By Plaintiffs own logic, the reasons cited in an individual decision letter are immaterial to Plaintiffs' "facial" attack on the guidelines, and they have no bearing on Plaintiffs' burden to prove that the Guidelines are inconsistent with the plans.

[11] Plaintiffs now argue that some of the provisions identified by UBH are illegal because they violate the Parity Act. Opp'n at 9 n.11. Plaintiffs cannot raise this argument now, having dropped their Parity Act claims years ago, nor would this bare assertion buried in an opposition brief after a fully litigated trial be sufficient to prove a parity violation. *See A.H. by & through G.H. v. Microsoft Corp. Welfare Plan*, No. C17-1889-JCC, 2018 WL 2684387, at *6 (W.D. Wash. June 5, 2018) (holding that a parity violation requires a showing that the health plan is subject to the Parity Act; the plan provides both medical/surgical benefits and mental health or substance use disorder benefits; the plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than medical/surgical benefits; and the (Continued…)

Additionally, Plaintiffs stretch the concept of common injury beyond recognition, claiming that "UBH's ERISA violations were complete when it issued its initial adverse benefit determinations to the class members" even for class members who (i) appealed and received their benefits in full or (ii) were denied benefits based on provisions Plaintiffs never challenged in this case or that the Court upheld. Opp'n at 4. Even if the Court excused Plaintiffs from showing a causal link between the guidelines and individual class members' benefit decisions, the Court still required that they show that UBH denied benefits to each class member using the guidelines challenged in this case. FFCL ¶¶ 204, 209. Further, class members whose claims were denied based on unchallenged or upheld LOCG provisions also suffered no injury, and certainly did not suffer an injury common to or typical of those whose claims were denied based on criteria the Court found inconsistent with generally accepted standards of care. Plaintiffs' conclusory argument that "it is impossible to apply the Guidelines without applying a flawed provision" is not supported by evidence, and does not satisfy Plaintiffs' burden to prove commonality and typicality at trial by a preponderance of the evidence. *See Sali*, 909 F.3d at 1006. *Compare* Opp'n at 10, *with* UBH's Resp. to Pls.' Remedies Br. at 13, Dkt. 334-4 (citing to Trial Exs. 1383-0002, 2018-0004).[12]

## V. Plaintiffs Did Not Prove At Trial That Named Plaintiffs Are Adequate Representatives As Required Under Rule 23(a)(4).

Plaintiffs do not dispute that a "class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class." *W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002). Nor do Plaintiffs dispute that, at the class certification stage, they "stipulated that if the Court certifies the proposed classes the Named Plaintiffs will drop" all "other theories in support of their claim that UBH's

---

mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared).

[12] Plaintiffs assert that they proved typicality for prospective injunctive relief because, according to Plaintiffs, "[t]here was no dispute" at the class certification stage that at least one representative for each class was a member of a plan administered by UBH . . . ." Opp'n at 11. Again, however, the evidence and arguments offered at *class certification* are not a substitute for Plaintiffs' burden of proof at trial. Plaintiffs were required to prove that element of Rule 23 at trial with evidence. They concede that they did not.

denial of benefits was improper." Order Granting Class Cert., Dkt. 174, at 10 n.10. While this decision to seek reprocessing "maximize[d] [Plaintiffs'] ability to assert commonality between [their] claim and other class members' claims under Rule 23(a)(2)," it necessarily prevents class members from "ever pursuing [benefits] in another lawsuit" based on the original denial of benefits at issue. *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 634 (W.D. Wash. 2011) (holding that such conduct "creates a conflict between [the named plaintiff's] interests and the interests of the putative class, rendering her an inadequate class representative").

Irrespective of the formal *res judicata* effect of a classwide judgment in this case (which Plaintiffs cannot predetermine), the reprocessing remedy Plaintiffs seek will preclude class members from challenging the benefit decisions at issue in this case on any different grounds or from seeking payment of benefits based on that decision. Any reprocessing order will vacate the prior benefit denials in their entirety. *Martinez v. Beverly Hills Hotel*, 695 F. Supp. 2d 1085, 1087, 1116 (C.D. Cal. 2010) (applying *Saffle* and issuing an order "vacat[ing] the Plan's prior determinations and remand[ing]" for further proceedings). Thus, upon remand, any claims based on that vacated benefit determination – including claims for the payment of benefits – will be moot. Plaintiffs "cannot be allowed to represent a class where, as here, [they have] opted to pursue certain claims on a classwide basis while jeopardizing the class members' ability to subsequently pursue other claims." *Rader v. Teva Parenteral Medicines, Inc.*, 276 F.R.D. 524, 529 (D. Nev. 2011).[13]

---

[13] Dissatisfied with Plaintiffs' decision to "drop" any request for the payment of benefits here, numerous class members who did not opt out of this case have attempted to bring claims against UBH and/or self-insured plan sponsors for the direct payment of benefits in separate litigation. At least one absent class member seeking the payment of benefits has argued that Plaintiffs' decision to gut his claim for the payment of benefits renders this litigation inadequate to represent his interests. *See e.g., Graham O., et al. v. United Behavioral Health*, et al., Case No. 1:18-cv-00031-BSJ (D. Utah), Dkt. 60, at 2, 7 (action by *Wit* Guideline Class members who did not opt out, in which the class members assert "they have not been adequately represented by the certified class in *Wit*" because *Wit* will not provide an "adequate remedy for their grievances"). And in separate litigation brought by a different *Wit* class member, the court recently issued a report and recommendation staying all proceedings on the ground that "final judgment or settlement in *Wit* will be *res judicata* as to (or collaterally estop) at least some of plaintiffs' claims in this case" based on the same denial of benefits. *Richard K., et al. v. United Behavioral Health, et al.*, Case No. 1:18-cv-06318-GHW-BCM (S.D.N.Y), Dkt. 51, at 14.

**VI.  Plaintiffs Did Not Prove At Trial That They Satisfied Any Subsection Of Rule 23(b).**

Plaintiffs argue they meet the requirements of Rule 23(b) because the evidence at trial showed that "ERISA imposes on UBH a uniform set of fiduciary obligations in connection with the development and use of its Guidelines, as this Court found."  Opp'n at 15 n.20 (citing FFCL at 99 ¶ 194).  But even if there is one term in each UBH-administered plan that is the same, different outcomes are likely to occur because UBH owes materially different obligations to class members under different plans with different terms, each of which UBH has the discretionary authority to interpret.  *See* FFCL ¶ 197 (finding that the plans "delegated discretionary authority to UBH to interpret and apply plan terms").  As such, Rule 23(b)(1), (b)(2), and (b)(3) classes are not justified.  *Dukes*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class"); *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 596 (9th Cir. 2012) (class does not satisfy Rule 23(b)(3) predominance where it "almost certainly includes" some uninjured class members); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, No. MDL 09-2074 PSG FFMX, 2014 WL 6888549, at *20 (C.D. Cal. Sept. 3, 2014) ("certification under Rule 23(b)(1)(A) or 23(b)(1)(B) would be improper" where an ERISA administrator's "obligations differ between its plans").

**VII.  Conclusion**

For the foregoing reasons, and for the reasons stated in UBH's Motion for Class Decertification, UBH respectfully requests that the Court decertify the *Wit* Guideline Class, the *Alexander* Guideline Class, and the *Wit* State Mandate Class.

DATED: July 10, 2019  CROWELL & MORING LLP

By: */s/ April N. Ross*
April N. Ross

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH