# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br>Action Filed:   May 21, 2014<br><br>**[PROPOSED]**<br>**REMEDIES ORDER** |
| GARY ALEXANDER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-05337-JCS<br>Action Filed:   December 4, 2014 |

For the reasons set forth in the Court's February 28, 2019 Findings of Fact and Conclusions of Law (*Wit* ECF No. 413; *Alexander* ECF No. 329), and having considered the parties' additional submissions on appropriate remedies, pursuant to its authority under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B), (a)(3)(A) and (a)(3)(B), and Federal Rules of Civil Procedure 23(d) and 53, the Court hereby **ORDERS** as follows:

# I. DECLARATORY JUDGMENT

The Court hereby **DECLARES** as follows:

1. Defendant United Behavioral Health ("UBH"), which also operates as OptumHealth Behavioral Solutions, administers mental health and substance use disorder benefits for commercial welfare benefit plans. In that capacity, UBH exercises discretion with respect to the administration of benefits, and is a fiduciary with respect to the plans it administers.

2. UBH has developed Level of Care Guidelines and Coverage Determination Guidelines (collectively, "Guidelines") that it uses for making coverage determinations.

3. UBH issued an adverse benefit determination to each class member[1] that was based, in whole or in part, on UBH's Guidelines.

4. UBH's Guidelines are not terms of the class members' plans.

5. The terms of the plans of each class member of the Wit and Alexander Guidelines Classes required, as one condition of coverage, that services be consistent with generally accepted standards of care.  UBH uses its Guidelines to interpret and apply those plan terms, and acts in a fiduciary capacity when it develops, revises and applies its Guidelines.

6. The class members had a right, under ERISA and their plans, to have UBH adjudicate whether requested services met that condition according to criteria that were, in fact, consistent with generally accepted standards of care.

7. The following standards are generally accepted in the field of mental health and substance use disorder treatment and placement:

    a. Effective treatment requires treatment of the individual's underlying condition and is not limited to alleviation of the individual's current symptoms.

    b. Effective treatment requires treatment of co-occurring behavioral

---

[1] The class definitions for the Wit Guidelines Class, the Alexander Guidelines Class, and the Wit State Mandate Class, as well as the applicable Class Periods, are all set forth in the Court's February 28, 2019 Findings of Fact and Conclusions of Law at page 8-9. The members of the three classes are referred to collectively herein as the "class members."

health disorders and/or medical conditions in a coordinated manner that considers the interactions of the disorders and conditions and their implications for determining the appropriate level of care.

　　　　c.　　Patients should receive treatment for mental health and substance use disorders at the least intensive and restrictive level of care that is safe and effective. Placement in a less restrictive environment is appropriate only if it is likely to be safe and *just as effective* as treatment at a higher level of care in addressing a patient's overall condition, including underlying and co-occurring conditions.

　　　　d.　　When there is ambiguity as to the appropriate level of care, the practitioner should err on the side of caution by placing the patient in a higher level of care.

　　　　e.　　Effective treatment of mental health and substance use disorders includes services needed to maintain functioning or prevent deterioration.

　　　　f.　　The appropriate duration of treatment for behavioral health disorders is based on the individual needs of the patient; there is no specific limit on the duration of such treatment.

　　　　g.　　The unique needs of children and adolescents must be taken into account when making level of care decisions involving their treatment for mental health or substance use disorders.

　　　　h.　　The determination of the appropriate level of care for patients with mental health and/or substance use disorders should be made on the basis of a multidimensional assessment that takes into account a wide variety of information about the patient.

8.　　The UBH Guidelines at issue in this case – *i.e.*, those listed on the attached Exhibit A (Trial Exhibit 880) – are significantly and pervasively more restrictive than generally accepted standards of care, in the following ways:

　　　　a.　　UBH's Guidelines place excessive emphasis on acuity and crisis

stabilization, while ignoring the effective treatment of members' underlying conditions.

    b.    UBH's Guidelines fail to address the effective treatment of co-occurring conditions.

    c.    UBH's Guidelines fail to err on the side of caution in favor of higher levels of care when there is ambiguity and, instead, push patients to lower levels of care where such a transition is safe, even if the lower level of care is likely to be less effective.

    d.    UBH's Guidelines preclude coverage for treatment to maintain level of function.

    e.    UBH's Guidelines from 2014 to 2017 preclude coverage based on lack of motivation.

    f.    UBH's Guidelines fail to address the unique needs of children and adolescents.

    g.    UBH's Guidelines use an overly broad definition of "custodial care," coupled with an overly narrow definition of "active" treatment and "improvement."

    h.    UBH's Guidelines impose mandatory prerequisites for coverage rather than determining the appropriate level of care based on a multidimensional approach.

9. For these reasons, as to each member of the Wit Guideline Class, each and every adverse benefit determination made by UBH based in whole or in part on any of the Guidelines listed on the attached Exhibit A (Trial Exhibit 880) between May 22, 2011 and June 1, 2017, was wrongful and made in violation of plan terms and ERISA.

10. For these reasons, as to each member of the Alexander Guideline Class, each and every adverse benefit determination made by UBH based in whole or in part on any of the Guidelines listed on the attached Exhibit A (Trial Exhibit 880) between December 4, 2011 and June 1, 2017, was wrongful and made in violation of plan terms and ERISA.

<pre>
</pre>

11. The UBH Guidelines at issue in this case also deviate from the ASAM Criteria, published by the American Society for Addiction Medicine, in a multitude of ways, including by failing to provide for coverage of residential treatment at levels 3.1, 3.3 and 3.5.

12. Since August 18, 2011, Illinois law has required insurers to use the ASAM Criteria to make coverage determinations for treatment of substance abuse disorders.

13. UBH violated Illinois law between August 18, 2011 and January 2016 because UBH did not use the ASAM Criteria to administer claims for substance use disorder treatment and UBH's own Guidelines were not consistent with the ASAM Criteria.

14. Since October 1, 2013, Connecticut law has required insurers to use the ASAM Criteria, or a set of criteria an insurer "demonstrates to the Insurance Department is consistent with" the ASAM Criteria.

15. UBH violated Connecticut law throughout the Class Period because UBH did not use the ASAM Criteria to administer claims for substance use disorder treatment and UBH's own Guidelines were not consistent with the ASAM Criteria.

16. The "crosswalks" UBH submitted to Connecticut regulators in 2013 and 2015 to demonstrate its Guidelines were consistent with the ASAM Criteria materially mischaracterized the UBH Guidelines by stating that "the criteria from all 3 ASAM levels [3.1, 3.3 and 3.5] are included in the admission criteria for Reside[n]tial Rehabilitation." At the time these statements were made to Connecticut regulators, UBH knew them to be false.

17. Since July 10, 2015, Rhode Island law has required that payors including insurers "rely upon the criteria of the American Society of Addiction Medicine when developing coverage for levels of care for substance-use disorder treatment." 27 R.I. Gen. Laws § 27-38.2-1(g) (2015); 2015 R.I. Pub. Laws 15-236 (15-H 5837A).

18. UBH violated Rhode Island law from July 10, 2015 through the end of the Class Period because UBH did not use the ASAM Criteria to administer claims for substance use disorder treatment and UBH's Guidelines were not "consistent with" the ASAM Criteria.

19. Throughout the entire Class Period, Texas Law required insurance companies to apply criteria issued by the Texas Department of Insurance ("TDI Criteria") in making medical

necessity determinations with respect to claims for substance use disorder treatment when an individual's plan was governed by Texas law and treatment was sought from a provider or facility in Texas. 28 Tex. Admin. Code § 3.8011 (1991).

20. UBH violated Texas law ~~throughout~~ during the Class Period by applying its own Guidelines rather than applying solely the TDI Criteria to claims covered by the Texas statute.

21. The Wit State Mandate Class members' plans and applicable state law ~~all~~ required UBH to use specific state-mandated criteria to make medical necessity determinations. These class members, therefore, had a right, under ERISA and their plans, to have UBH adjudicate their claims solely according to the state-mandated criteria. UBH did not do so, thereby violating ERISA and these class members' plans.

22. As to the Wit State Mandate Class, each and every adverse benefit determination made by UBH based in whole or in part on the Guidelines listed on the attached Exhibit A (Trial Exhibit 880) within the following periods was wrongful and made in violation of plan terms, ERISA, and the applicable state law:

    a. Between May 22, 2011 and June 1, 2017 for plans governed by Texas law;

    b. Between August 18, 2011 and ~~June 1, 2017~~January 1, 2016 for plans governed by Illinois law;

    c. Between October 1, 2013 and June 1, 2017 for plans governed by Connecticut law; and

    d. Between July 10, 201~~7~~5 and June 1, 2017 for plans governed by Rhode Island law.

23. UBH's Guideline development process ~~is fundamentally flawed because it is~~was tainted by UBH's financial interests throughout the Class Period.

24. UBH is a fiduciary within the meaning of ERISA, 29 U.S.C. § 1001 et seq.

25. As a fiduciary, UBH owes fiduciary duties to the participants and beneficiaries of the plans UBH administers, including the duties set forth in 29 U.S.C § 1104(a)(1).

26. For all the reasons stated above and in the Court's Findings of Fact and Conclusions of Law, UBH breached its fiduciary duties to the class members, including its obligations under 29 U.S.C. § 1104(a)(1)(A), (a)(1)(B), and (a)(1)(D), when it developed, revised and applied the Guidelines.

## II. NOTICE TO THE CLASS MEMBERS

It is hereby **ORDERED** that the parties will confer on the content of one or more notices to be sent to all class members to inform them that Plaintiffs succeeded on the merits of their claims, describe the forms of relief ordered by the Court, and provide detailed information on the procedures governing the reprocessing remedy and how class members may submit additional information.

The Court further directs the parties to submit, within **14 days** after entry of this Order, a joint filing attaching the proposed content of the notice(s) and identifying areas of disagreement between the parties, if any. The Court, thereafter, will approve the form or form(s) of notice to be sent to the class members.

It is further **ORDERED** that, at UBH's expense, the Class Administrator will thereafter promptly send the approved notice(s) to all class members by Certified Mail.

## III. REMAND TO THE ADMINISTRATOR

It is hereby **ORDERED** that each and every adverse benefit determination <ins>meeting the criteria for Class Membership in this case</ins> <del>listed on the Class List admitted at trial as Trial Exhibit 255</del> is hereby remanded to UBH to be reprocessed in a manner consistent with the Court's Findings of Fact and Conclusions of Law and this Order. Such reprocessing shall be completed as follows, all at UBH's expense:

**A. Completion of the Administrative Record**.

1. Class members and/or their healthcare providers may (but are not required to) submit to UBH additional evidence relevant to the class member's request for benefits, including but not limited to (i) medical records and/or other clinical information concerning the request for coverage at the proposed level of care; and/or (ii) records substantiating services received at the requested level of care after a pre-service or concurrent denial, including any bills related thereto,

whether or not the class member submitted a post-service claim to UBH.

  2. UBH shall set up user-friendly processes to enable class members to submit such additional information via mail; fax; and/or an online web portal, at the class member's option, and to ensure that any such information is promptly added to the class member's administrative record. The Special Master[2] shall review and approve the processes to ensure their adequacy for this purpose.

  3. A class member's submission shall be deemed timely if it is postmarked or received by UBH within ~~180~~90 **days** after the Class Administrator sends the Class Notice pursuant to § II above. The Special Master shall have the discretion to extend this time period for a particular class member upon request.

  ~~3~~4. If a class member's administrative record remains incomplete after the close of this period, such that UBH is unable to make specific findings applying the Court-approved criteria, UBH shall not issue an adverse benefit determination unless UBH first makes a good-faith effort to contact the provider listed on the relevant request for coverage and attempts to collect the additional necessary clinical information from the provider. The Special Master shall determine what steps are sufficient to constitute a good-faith effort for these purposes.

  **B.  Criteria to be Applied Upon Remand.**

  On remand, UBH will re-evaluate only whether the proposed treatment at the requested level of care was consistent with generally accepted standards of care. In order to make this redetermination, UBH will conduct a full and fair review of all of the available clinical information and will apply the following criteria, which the Court has found are consistent with generally accepted standards of care:

    1. To re-evaluate requests for coverage for the treatment of adults with a primary diagnosis of substance use disorder, UBH will apply the American Society of Addiction Medicine Criteria ("ASAM Criteria"), the 2013 edition of which was admitted at trial as Trial Exhibit 662. When re-evaluating requests for residential treatment of a substance use disorder, UBH shall approve coverage if the member qualified for services at any of the sub-

---

[2] *See* § V, below, regarding the appointment of the Special Master.

levels identified in the ASAM Criteria (*i.e.*, Levels 3.1, 3.3, 3.5, and 3.7).

2.  To re-evaluate requests for coverage of treatment of adults with a primary diagnosis of a mental health condition, UBH will apply the Level of Care Utilization System ("LOCUS"), the 2010 edition of which was admitted at trial as Trial Exhibit 653.

3.  To re-evaluate requests for coverage of treatment of children and adolescents (ages 18 and younger), UBH will apply the Child and Adolescent Service Intensity Instrument ("CASII"), the 2014 edition of which was admitted at trial as Trial Exhibit 645.

**C.  No Retaliation**

In reprocessing the class members' requests for coverage on remand, UBH is prohibited from: (i) denying a request on any ground other than the lack of medical necessity or the clinical inappropriateness of the services, as determined according to the criteria required by the Court in § III.B of this Order, except exclusions or limitations UBH explicitly cited in its original written notification of denial to the class member; (ii) re-evaluating any coverage determination made with respect to a class member other than the adverse benefit determinations covered by this class action and subject to this remand Order as supplemented pursuant to § III.A above; and (iii) seeking to recoup, from the class member or their provider, any amounts UBH pays pursuant to this Order, including by withholding or reducing any benefits authorized in connection with any subsequent request for coverage by the class member.

**D.  Procedures Following Re-Determination**

Following a full and fair review, UBH shall issue its benefit determination on remand, as follows.

**1.  <u>Procedures in the Event of a Denial or Partial Denial on Remand</u>**

If, following a full and fair review of all of the available information and application of the relevant criteria under § III.B of this Order, UBH determines in good faith that coverage is not available to the class member in whole or in part, UBH will issue an adverse benefit determination that complies strictly with 29 C.F.R. §2560.503-1.

a.  UBH's determination shall be considered an initial adverse benefit determination for purposes of ERISA and its implementing regulations, including

29 CFR § 2560.503-1, and the class member shall be entitled to avail himself or herself of all rights to administrative appeal, including external appeal, available pursuant to ERISA and the class member's plan, ~~including external appeal,~~ and/or any causes of action arising from such adverse benefit determination.

      b. UBH's written notice of the determination shall include specific and detailed findings supporting the determination, including citations to the clinical evidence and the specific provisions of the applicable criteria on which UBH's conclusion is based. The notice shall also include specific instructions for appealing the determination, including, where applicable, instructions on how to obtain an external appeal, and shall inform the class member of his or her right to file an ERISA lawsuit challenging the new determination after the administrative appeals are exhausted.

**2. Procedures in the Event of Approval of Coverage on Remand**

If, following a full and fair review of all of the available information and application of the relevant criteria under § III.B of this Order, UBH determines in good faith that the requested services were consistent with generally accepted standards of care and therefore coverage should be approved on remand, in whole or in part:

      a. UBH will notify the class member of its determination.

      b. UBH's written notice of the determination shall include specific and detailed findings supporting the determination, including citations to the clinical evidence and the specific provisions of the applicable criteria on which UBH's conclusion is based.

      c. UBH will then calculate the amount of benefits the class member is owed under the terms of the applicable plan in effect at the time the request for coverage was originally received.

          (i) In calculating the amount of benefits, UBH shall include coverage for all services received by the class member at the requested level of care, regardless of whether the class member

submitted a post-service claim for them after UBH originally denied coverage.

   (ii) UBH shall pay to the class member <u>or the class member's assignee</u> the calculated benefit amount, plus pre- and post-judgment interest pursuant to § III.E of this Order, within **30 days** after UBH notifies the class member of its determination approving coverage.

  d. UBH may not offset against the benefits calculated pursuant to § III.D.2.c of this Order any benefits previously paid to the class member or his or her provider in connection with other services requested by the member.

**E.  Interest**

UBH shall pay pre- and post-judgment interest ("Interest") on all amounts it is required to pay pursuant to this Order, calculated at the rate provided pursuant to 28 U.S.C. § 1961 (the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment, compounded annually) from the date of the class member's original request for coverage until the date on which payment is made to the class member.

**F.  Certification and Reporting**

Upon completion of the reprocessing procedures described above, and in no event later than nine months after entry of this Order, UBH shall submit to the Court the following: (1) a certification that it has reprocessed all claims according to the requirements set by the Court; and (2) a report on the outcome of reprocessing, including, at a minimum, the following information: (a) the total number of requests for coverage, by level of care, that were reprocessed pursuant to this Order; (b) the number of class members, by level of care, whose requests for coverage were denied on remand; (c) the number of class members, by level of care, whose adverse benefit determinations were reversed in whole or in part on remand (including how many were reversed in whole, and how many in part); and (d) the number of class members who received a benefit payment following reprocessing, and the lowest, highest, median, and average amount of the

payments, by level of care.

## IV. INJUNCTIVE RELIEF

    **A. UBH is hereby permanently ENJOINED from:**

        1.    Using any of the Guidelines listed on Exhibit A to this Order when making coverage-related determinations as to whether services are consistent with generally accepted standards of care.

        2.    Using~~, any Guidelines that include substantively the same coverage criteria as the Guidelines listed on Exhibit A to this Order~~ when making coverage-related determinations as to whether services are consistent with generally accepted standards of care<ins>, any Guidelines that include, alone or in combination, as a mandatory prerequisite for coverage, any criterion listed on the Consolidated Claims Chart filed in this matter on February 12, 2018 (ECF No. 404-2), regardless of whether any such criterion is expressed in facially different language, except that UBH is not enjoined from using the following criteria: Common Criteria ¶¶ 4-5 from UBH's 2011 and 2012 Level of Care Guidelines; Common Criteria ¶ 6 from UBH's 2013 Level of Care Guidelines; and Continued Service Criterion ¶ 5 from UBH's 2012 and 2013 Level of Care Guidelines.</ins>

    **B. UBH is hereby ORDERED to:**

        1.    Henceforth make any and all coverage-related determinations about whether services are consistent with generally accepted standards of care according to criteria that are consistent with generally accepted standards of care, as established in this Court's Findings of Fact and Conclusions of Law, and the requirements of any applicable state law.

            a.    Unless applicable state law requires UBH to use different criteria, UBH shall use the following criteria:

                (i)    With respect to requests for coverage for the treatment of adults with a primary diagnosis of substance use disorder, the American Society of Addiction Medicine Criteria (the "ASAM Criteria"). Faithful application of the ASAM Criteria to requests

1  for coverage of residential treatment requires consideration of the
2  criteria applicable to each of the sub-levels of residential treatment
3  identified in the ASAM Criteria (*i.e.*, Levels 3.1, 3.3, 3.5, and 3.7).
4      (ii)    With respect to requests for coverage of treatment of adults
5  with a primary diagnosis of a mental health condition, the Level of
6  Care Utilization System ("LOCUS") published by the American
7  Association of Community Psychiatrists.
8      (iii)    With respect to requests for coverage of treatment of
9  children and adolescents (ages 18 and younger), the Child and
10  Adolescent Service Intensity Instrument ("CASII"), published by
11  the American Academy of Child and Adolescent Psychiatrists.
12      b.    If applicable state law mandates the use of different criteria from
13  those set forth above, UBH shall faithfully apply the state-mandated criteria.
14      2.    With the oversight of the Special Master, develop and implement a program for
15  training UBH's Care Advocates, Peer Reviewers, external clinical consultants, and any other
16  personnel who make or have input into coverage determinations, on the faithful application of
17  the coverage criteria prescribed in § III.B, above.
18      a.    UBH shall complete its training of any such personnel who will
19  make or have input into reprocessing of coverage determinations on remand (*see*
20  § III, above), to the satisfaction of the Special Master, within **30 days** following
21  entry of this Order. The Special Master shall report to the Court when this initial
22  phase of training is complete.
23      b.    UBH shall complete its training of any other personnel covered by
24  this subsection 2, to the satisfaction of the Special Master, within **60 days**
25  following entry of this Order. The Special Master shall report to the Court when
26  this second phase of training is complete.
27      c.    UBH's training program shall include plans for training new
28  personnel as they may be hired in the future and for refreshing the training of

existing employees on at least an annual basis.  UBH shall be required to obtain the approval of the Special Master on the design of UBH's ongoing training program within **60 days** following entry of this Order.

3. With the oversight of the Special Master, develop and implement a program, to train UBH's Care Advocates, Peer Reviewers, external clinical consultants, any other personnel who make or have input into coverage determinations, and all senior and executive management on UBH's duties under ERISA, including what it means to be an ERISA fiduciary and to administer benefit plans solely in the interests of participants and beneficiaries, as well as the need to comply with plan terms.

    a. UBH shall complete its training of any such personnel who will make or have input into reprocessing of coverage determinations on remand (*see* § III, above), to the satisfaction of the Special Master, within **30 days** following entry of this Order.  The Special Master shall report to the Court when this initial phase of training is complete.

    b. UBH shall complete its training of any other personnel covered by this subsection 3, to the satisfaction of the Special Master, within **60 days** following entry of this Order.  The Special Master shall report to the Court when this second phase of training is complete.

    c. UBH's training program shall include plans for training new personnel as they may be hired in the future and for refreshing the training of existing employees on at least an annual basis.  UBH shall be required to obtain the approval of the Special Master on the design of UBH's ongoing training program within **60 days** following entry of this Order.

4. With the oversight and approval of the Special Master, design and implement structural changes, firewalls, and safeguards  sufficient to ensure (a) that no person in any finance, accounting, or "affordability" department at UBH, or any differently-named successor department performing the same functions, is permitted to serve on or have authority over any committee charged with developing or adopting clinical coverage criteria or Guidelines, and (b)

1 that no person serving on or advising any such committee is notified of UBH's financial

2 performance or performance against financial targets, including but not limited to targets,

3 budgets or goals related to benefit expense or average length of stay.

4     5. Disclose to the plan sponsor for each of the class members' plans, the Plan

5 Administrator named in each such plan, each state insurance regulator overseeing UBH's

6 activities, and the Employee Benefits Security Administration of the United States Department

7 of Labor, that UBH was found liable by this Court for breaches of fiduciary duty and improper

8 denial of benefits due to its development and use of coverage criteria that were inconsistent with

9 generally accepted standards of care, by sending by certified mail to each such plan sponsor,

10 Plan Administrator, and regulator a copy of the Court's Findings of Fact and Conclusions of Law

11 and its Order on Remedies, with a cover letter that states as follows:

> The United States District Court for the Northern District of California (the "Court") has ordered United Behavioral Health ("UBH") to notify you that, because the Court found UBH's medical necessity guidelines to be pervasively inconsistent with generally accepted standards of care, the Court has found UBH liable for breaches of fiduciary duty and wrongful denial of benefits in connection with UBH's administration of the [NAME OF ~~ALL~~ THE AFFECTED PLAN~~(S)~~].  UBH has been ordered to reprocess one or more requests for coverage under the plan~~[s]~~ and to make certain changes to its business practices. UBH intends to appeal the Court's ruling.
>
> For more information, please refer to the attached Findings of Fact and Conclusions of Law, issued by the Court on February 28, 2019, and the Order on Remedies, issued by the Court on [DATE].

    a. UBH shall not include any other assertions or arguments in this disclosure, including making any suggestion that the Court has not yet reached a ~~verdict~~ conclusion on UBH's liability in the case.

    b. UBH shall complete its disclosures under this subsection, to the satisfaction of the Special Master, within **30 days** following entry of this Order. The Special Master shall report to the Court when these disclosures are complete.

## V.  SPECIAL MASTER

The Court will appoint, at UBH's expense, a Special Master to serve as an independent

monitor to oversee and verify UBH's compliance with this Order, including UBH's faithful implementation of the training program, changes to UBH's business practices, disclosures and reprocessing procedures ordered herein.

Within **14 days** after entry of this Order, Plaintiffs shall submit to the Court a filing that (1) identifies at least three candidates for the position of Special Master and details those candidates' qualifications for the position; and (2) attaches a proposed Order of Appointment that sets forth in detail the duties of the Special Master in accordance with this Order.

## VI.   INTERIM AND FINAL DEADLINES

The following deadlines shall apply to the remedies ordered above:

1. UBH's reprocessing of the remanded requests for coverage shall begin promptly after the Special Master approves UBH's training of the personnel who will make determinations on remand. *See* §§ IV.B.2.a & IV.B.3.a, above.

2. UBH shall complete its reprocessing of the class members' requests for coverage ~~within **30 days** after~~ either (1) within **30 days** after the submission of additional evidence by the class member or the class member's provider, if any, or (2) within **90 days** after the close of the period for submitting such evidence (*see* § III.A, above), whichever is earlier. The Special Master shall have the authority to extend this deadline ~~with respect to a particular class member~~ either upon the request of ~~the~~ a class member or, following a showing of good cause, upon UBH's request.

3. UBH shall complete the reprocessing of all class members' requests for coverage within **nine months** following entry of this Order.

4. The Special Master shall file a report in the docket for this case **every 30 days** on his/her activities, including the status of the reprocessing procedures. The Special Master shall have the authority to require UBH to report to the Special Master or to the Court on other issues and at other times, in his/her discretion.

## VII.   ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS TO CLASS REPRESENTATIVES

The Court directs the parties to confer on Plaintiffs' request for an Order requiring UBH

to pay Plaintiffs' reasonable attorneys' fees and litigation expenses, and service awards to the class representatives, and within **14 days** after this Order is entered to submit a joint schedule for briefing on Plaintiffs' request.

## VIII. RETENTION OF JURISDICTION

The Court retains jurisdiction.

**IT IS SO ORDERED**.

Dated: _____     _____
                                          The Honorable Joseph C. Spero
                                          Chief United States Magistrate Judge