JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
ANDREW HOLMER (SBN 268864)
aholmer@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Phone: (213) 622-4750
Fax: (213) 622-2690

THOMAS F. KOEGEL (SBN 125852)
tkoegel@crowell.com
NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Phone: (415) 986-2800
Fax: (415) 986-2827

APRIL N. ROSS (admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **DAVID WIT et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED BEHAVIORAL HEALTH**, <br><br> Defendant. | Case No. 14-cv-02346 JCS <br> Related Case No. 14-cv-05337 JCS <br><br> **UNITED BEHAVIORAL HEALTH'S OPENING SUPPLEMENTAL REMEDIES BRIEF (TOPICS 2, 4, AND 6)** <br> Hon. Joseph C. Spero |

1    **GARY ALEXANDER et al.**,

2                      Plaintiffs,

3           v.

4    **UNITED BEHAVIORAL HEALTH**,

5                      Defendant.

Crowell
& Moring LLP

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.  The Administrative Remand And Reprocessing Remedy Precludes Separate Litigation Over The Denied Benefits At Issue In This Case (Topic 2)....................................................................................................................... 2

    A.  Under ERISA, The Reprocessing Remedy Is An Administrative Remand Premised On the Administrator's Right to Exercise Its Discretion In The First Instance ................................................................. 3

    B.  The Necessary Consequence Of A Reprocessing Award In This Action Is To Preclude Litigation By Class Members Based On The Same Benefit Determinations. ................................................................... 5

    C.  Summary Of Litigation By Individual Class Members. ........................... 7

II.  UBH Should Not Be Limited To Matters That Were Not "Known or Reasonably Knowable" In Reprocessing (Topic 4). ............................................... 8

    A.  The Ninth Circuit's Holding in *Spinedex* Does Not Restrict The Administrator's Discretion To Administer Benefits Following A Remand For Reprocessing. ..................................................................... 8

    B.  UBH Should Not Be Limited To A "Known or Reasonably Knowable" Standard On Remand. ........................................................ 12

III.  UBH Has Adopted Third-Party Medical Necessity Criteria For Use In All 50 States (Topic 6)............................................................................................ 14

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Abatie v. Alta Health & Life Ins. Co.*,
458 F.3d 955 (9th Cir. 2006) ........................................................................................ 9

5

*Alves v. Hewlett-Packard Comprehensive Welfare Benefits Plan*,
785 F. App'x 397 (9th Cir. 2019) ............................................................................. 4, 6

6

7

*Andrews-Clarke v. Lucent Techs., Inc.*,
157 F. Supp. 2d 93 (D. Mass. 2001) ............................................................................ 5

8

9

*Boyd v. Sysco Corp.*,
No. 4:13-CV-00599-RBH, 2015 WL 7737966 (D.S.C. Dec. 1, 2015) ........................ 4

10

*Brown v. Ticor Title Ins. Co.*,
982 F.2d 386 (9th Cir. 1992) ....................................................................................... 5

11

12

*Conkright v. Frommert*,
559 U.S. 506 (2010) ................................................................................................. 3, 8

13

14

*Daley v. Marriott Int'l, Inc.*,
415 F.3d 889 (8th Cir. 2005) ....................................................................................... 5

15

16

*Devlin v. Scardelletti*,
536 U.S. 1 (2002) ......................................................................................................... 5

17

*Duarte v. Aetna Life Ins. Co.*,
No. SACV 13-00492-JLS RN, 2014 WL 1672855 (C.D. Cal. Apr. 24, 2014) ......... 11

18

19

*Fisher v. Aetna Life Ins. Co.*,
No. 16-CV-144 (RJS), 2017 WL 1246133 (S.D.N.Y. Mar. 31, 2017) ....................... 6

20

21

*Fort Halifax Packing Co. v. Coyne*,
482 U.S. 1 (1987) ......................................................................................................... 8

22

*Hackett v. Xerox Corp. Long-Term Disability Income Plan*,
315 F.3d 771 (7th Cir. 2003) ..................................................................................... 10

23

24

*Harlick v. Blue Shield of California*,
686 F.3d 699 (9th Cir. 2012) ...........................................................................9, 10, 14

25

*Hatfield v. Blue Cross & Blue Shield of Mass., Inc.*,
162 F. Supp. 3d 24, 43 (D. Mass. 2016) .............................................................10, 11

26

27

*La Buy v. Howes Leather Co.*,
352 U.S. 249 (1957) ................................................................................................... 14

28

*Larson v. Wis. Physicians Serv. Ins. Corp.*,
No. 14-0215, 2014 WL 4265916 (W.D. Wis. Aug. 29, 2014) ................................................. 5

*Martinez v. Beverly Hills Hotel*,
695 F. Supp. 2d 1085 (C.D. Cal. 2010) ................................................. 4, 6

*Meeropol v. Meese*,
790 F.2d 942 (D.C. Cir. 1986) ................................................. 14

*Meridian Treatment Services v. United Behavioral Health*,
Case No. 3:19-cv-05721 (N.D. Cal.) ................................................. 7

*Miles v. Principal Life Ins. Co.*,
720 F.3d 472 (2d Cir. 2013) ................................................. 4, 10, 14

*Miller v. Am. Airlines, Inc.*,
632 F.3d 837 (3d Cir. 2011) ................................................. 4, 10

*Mpoyo v. Litton Electro-Optical Sys.*,
430 F.3d 985 (9th Cir. 2005) ................................................. 3, 5

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ................................................. 11

*Pakovich v. Verizon LTD Plan*,
653 F.3d 488 (7th Cir. 2011) ................................................. 7

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income
Plan*,
85 F.3d 455 (9th Cir. 1996) ................................................. 3, 4, 11

*Silk v. Metro. Life Ins. Co.*,
310 F. App'x 138 (9th Cir. 2009) ................................................. 6

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*,
770 F.3d 1282 (9th Cir. 2014) ................................................. 8, 9, 10, 13, 14

*Taylor v. Sturgell*,
553 U.S. 880 (2008) ................................................. 7

*Vizcaino v. Microsoft Corp.*,
120 F.3d 1006 (9th Cir. 1997) ................................................. 4, 10, 14

**Statutes and Rules**

Fed. R. Civ. P. 23(b)(1)(A) ................................................. 1

Fed. R. Civ. P. 23(b)(2) ................................................. 1

Fed. R. Civ. P. 23(b)(3) ................................................. 1

Fed. R. Civ. P. 53(a)(1)(C)...................................................................................................... 14

Fed. R. Civ. P. 53(f)(3) ........................................................................................................... 14

Fed. R. Civ. P. 53(f)(4) ........................................................................................................... 14

**INTRODUCTION**

Defendant United Behavioral Health ("UBH") addresses in this supplemental brief the second, fourth, and sixth topics on which the Court requested further briefing, specifically: (2) the preclusive implications of any remedies awarded by this Court for class members; (4) whether during reprocessing, UBH may invoke exclusions or other grounds for denying coverage that it did not invoke when it originally adjudicated class members' claims; and (6) the status of UBH's adoption of ASAM, LOCUS, CASII, and ECSII criteria for making clinical coverage determinations for mental health and substance use treatment.[1]

If this Court issues a judgment remanding each of the class member's claims to the administrator for reprocessing, the necessary and logical consequences are that any other legal claims of the class members arising out of the same benefit decision are precluded, and UBH has broad discretion to reprocess the claims based on the Court's rulings, plan terms, and other available information. Plaintiffs' decisions about the remedies they seek in this case dictate this result.

Throughout this litigation, Plaintiffs repeatedly represented to the Court that they would seek two principal forms of injunctive relief for their ERISA claims. First, Plaintiffs said they would seek an injunction "order[ing] UBH to propose new Guidelines that remedy the specific defects that render the current Guidelines inconsistent with generally accepted standards of care and [setting] forth a process for the Court to evaluate such new Guidelines." Pls.' Reply ISO Class Cert., ECF 153, at 19 n.24; *accord* Mot. for Class Cert., ECF 133, at 7. UBH has already voluntarily adopted the ASAM, LOCUS, CASII, and ECSII criteria in all 50 states to make medical necessity determinations for covered behavioral health benefits under both fully-insured and self-funded ERISA-governed plans, except where it is required by state law to apply other

---

[1] On April 7, 2020, the Court ordered that UBH would address these topics in its opening brief, while Plaintiffs would address the first and fifth topics in their opening brief: (1) the implications of the Court's decision to certify the class under Rules 23(b)(1)(A), (b)(2), and (b)(3); and (5) how the Court should calculate pre- and post-judgment interest, if the Court determines an award of interest is appropriate in this case. The parties are submitting a joint report in response to the Court's third topic on the accuracy of the class list and means of identifying members of the Texas portion of the *Wit* State Mandate Class.

1    standards. Plaintiffs agree these guidelines are consistent with generally accepted standards of

2    care. This renders moot any need for an injunction dictating the standards UBH should choose.

3        Second, Plaintiffs argued that once UBH adopted these guidelines, the proper remedy

4    would be a "remand to [UBH] for *it*"—not the Court—"to redo the benefit determination" in the

5    first instance using these newly-adopted guidelines. Pls.' Opp'n to UBH MSJ, ECF 261, at 1

6    (emphasis in original); *see also id.* at 19 (analogizing reprocessing to "a new jury after a mistrial,"

7    where "in the exercise of its lawful discretion" UBH might still "reach the same result for a

8    different reason"). By seeking a reprocessing remedy, Plaintiffs necessarily ask for an order that

9    vacates the initial benefit determinations, moots any separate action by class members based on

10   those earlier determinations, and remands the coverage request to UBH to start the administrative

11   process anew. To the extent the Court orders remand and reprocessing for any class member's

12   benefit claims, not only are those individual class members *legally* precluded from separately

13   pursuing ERISA claims to recover denied benefits, they are *practically* barred from doing so

14   because their original determinations will no longer be in effect once reprocessing is ordered.

15       In addition, following remand, UBH must apply all applicable plan terms and exercise the

16   full scope of its plan-conferred discretion in reprocessing benefit claims using its new guidelines.

17   Nothing in ERISA or Ninth Circuit law limits the discretion of the administrator to matters that

18   were not "known or reasonably knowable" during the administrative process, or restricts its

19   fiduciary duty to enforce all terms of the plan when administering benefits. To the contrary,

20   imposing this restriction would be wholly impractical; it would also contradict ERISA authorities

21   requiring that benefits are paid only where allowed by the terms of the plan and requiring courts

22   to preserve administrators' discretion on remand.

**ARGUMENT**

23

24   **I.    The Administrative Remand And Reprocessing Remedy Precludes Separate**

25   **        Litigation Over The Denied Benefits At Issue In This Case (Topic 2).**

26       This Court's March 24 order directs the parties to address the "[r]es [j]udicata effect of a

27   judgment in this action" and "the effect of the Court's judgment on [class members'] rights to

28   bring (or proceed with) individual claims in other courts." ECF No. 448, at 2. As this Court

1  recognized in its March 24 Order, "it is not appropriate for this Court to instruct other courts" on

2  the *res judicata* effect of the Court's judgment on other actions by class members. *Id*. To the

3  extent the question nonetheless informs the Court's decision, the answer is as follows: A

4  judgment in this action would bar any claims challenging the same benefit determinations at issue

5  in this case, asserting breaches of fiduciary duty related to the administration of those claims, or

6  any other causes of action or legal theories that arise out of the same operative facts. *See Mpoyo*

7  *v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).

8          In any event, irrespective of *res judicata*, class members' claims would be foreclosed in

9  practice because a remand for reprocessing—whether considered a final judgment or not—would

10 eliminate any Article III case or controversy regarding the original benefit decision. Article III's

11 foundational "case or controversy" limitation on judicial power generally prevents a federal court

12 from deciding a question that once affected the rights of litigants, but no longer does. If the Court

13 orders remand and reprocessing, it must also vacate the earlier adverse benefit determinations,

14 rendering any separate litigation over those determinations moot. Likewise, to the extent any class

15 member has already received the benefits he or she requested through administrative appeal or

16 separate litigation, or has released any claim to those benefits through a separate settlement

17 agreement, that class member is not entitled to reprocessing because he or she no longer has a

18 ripe dispute over the claim for benefits.

19     **A.    Under ERISA, The Reprocessing Remedy Is An Administrative Remand**

20             **Premised On the Administrator's Right to Exercise Its Discretion In The**

21             **First Instance.**

22          Reprocessing under ERISA derives from the foundational principle that where the "Plan

23 itself reposes discretion in the [benefit administrator] to determine" coverage under the terms of

24 the plan, ERISA requires courts to respect that discretion. *Saffle v. Sierra Pac. Power Co.*

25 *Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460 (9th Cir. 1996); *see also*

26 *Conkright v. Frommert*, 559 U.S. 506, 520 (2010) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481

27 U.S. 41, 54 (1987)) ("[D]eference serves to . . . preserve the 'careful balancing' of interests that

28 ERISA represents."). This is so even when an administrator has previously abused its discretion

1   by denying plan benefits based on an erroneous interpretation of plan terms. *Saffle*, 85 F.3d at

2   460. ERISA requires strict adherence to the plan's decision to vest discretion in the administrator,

3   and provides a narrow role for the courts to *clarify* the meaning of disputed plan terms and then

4   "vacate[] the Plan's prior determination[] and remand[] the matter to the Plan to make a proper

5   decision on [the] Plaintiff's claim in the first instance." *Martinez v. Beverly Hills Hotel*, 695 F.

6   Supp. 2d 1085, 1087 (C.D. Cal. 2010).

7       On remand, "it is the terms of the [plan] which control," and courts "cannot, and will not,

8   predict how the plan administrator, who has the primary duty of construction, will construe the

9   terms of the [plan]" on remand. *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1013 (9th Cir. 1997).

10  This, too, is compelled by the limited role courts play in resolving ERISA coverage disputes

11  when the plan has relegated the discretionary acts of interpreting the plan and determining

12  benefits to the administrator. "It should be up to the administrator, not the courts, to make that

13  call in the first instance." *Saffle*, 85 F.3d at 460; *see also Miles v. Principal Life Ins. Co.*, 720 F.3d

14  472, 490 (2d Cir. 2013) (holding that, while "remand will afford Principal the opportunity to

15  consider the evidence under the appropriate legal standards . . . [w]e do not suggest that those are

16  the only appropriate considerations on remand, and we intend no limitation by mentioning them.

17  Principal is expected to provide a full and fair reconsideration of Miles's claim"); *Boyd v. Sysco

18  Corp.*, No. 4:13-CV-00599-RBH, 2015 WL 7737966, at *19 (D.S.C. Dec. 1, 2015) (footnote

19  omitted) (ordering "remand[] to the claims administrator to consider the administrative record and

20  the relevant plan provisions and internal guidelines for the correct year and begin the review

21  process anew").

22      As the Ninth Circuit recently explained, reprocessing effectively starts the administrative

23  process anew by ordering the administrator "to **redo its evaluation** and correctly apply the terms

24  of the Plan." *Alves v. Hewlett-Packard Comprehensive Welfare Benefits Plan*, 785 F. App'x 397,

25  398 (9th Cir. 2019) (emphasis added); *see also Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 856 (3d

26  Cir. 2011) ("In a situation where benefits are improperly denied at the outset, it is appropriate to

27  remand to the administrator for full consideration of whether the claimant" is entitled to benefits).

28  In other words, a remand for reprocessing returns UBH and the class members to the start of the

1    administrative review process, with the same rights and responsibilities they had before the initial

2    (vacated) determination.

3        **B.      The Necessary Consequence Of A Reprocessing Award In This Action Is To**

4                  **Preclude Litigation By Class Members Based On The Same Benefit**

5                  **Determinations.**

6              Under well-settled principles of *res judicata*, any class-wide judgment would bar claims

7    by class members concerning "the same 'claim' or cause of action." *Mpoyo*, 430 F.3d at 987

8    (quoting *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002)). In this context, "claim" refers to

9    any lawsuit, legal theory, or challenge arising out of the same "nucleus of operative facts." *Id.* at

10   987; *see also id.* at 988 (finding "common nucleus criterion to be outcome determinative" as to

11   whether two actions involve the same legal claim).

12             Here, any claim by a class member challenging the same benefit determinations at issue in

13   this case, asserting breaches of fiduciary duty challenging UBH's level of care guidelines and/or

14   administration of those claims, or any other causes of action or legal theories that were or could

15   have been brought in this case would be barred. In an ERISA action arising from the denial of

16   benefits, courts have held that "the fundamental cause of action" is "the defendant's failure to

17   approve" benefits, and subsequent challenges to the same benefit decision are precluded, even if

18   based on "legal theories not previously asserted" in the prior litigation. *Andrews-Clarke v. Lucent*

19   *Techs., Inc.*, 157 F. Supp. 2d 93, 102–03 (D. Mass. 2001); *accord Daley v. Marriott Int'l, Inc.*,

20   415 F.3d 889, 896 (8th Cir. 2005) (holding subsequent ERISA lawsuit arose from the "same

21   nucleus of operative facts" because "the wrong for which [plaintiff sought] redress—the denial of

22   her claims based on the plan-year limit—[was] the same").

23             It is also well-settled that any class-wide judgment would be binding on absent class

24   members. *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002) (absent class members are "bound by the

25   judgment" in a class proceeding); *see also Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 392 (9th

26   Cir. 1992) (prior class action judgment "foreclosed" plaintiff "from seeking other or further

27   injunctive relief"); *Larson v. Wis. Physicians Serv. Ins. Corp.*, No. 14-0215, 2014 WL 4265916,

28   at *1, *4 (W.D. Wis. Aug. 29, 2014) (holding putative ERISA class action challenging practice of

1    applying copayments "on an unequal basis" was precluded because claims could have been raised

2    in prior case challenging defendant's practice of charging any chiropractic copayments under

3    ERISA plan). Absent class members will therefore be barred, both legally and practically, from

4    pursuing individual litigation arising from the benefit decisions at issue here.

5         Further, irrespective of how a court in subsequent litigation rules on the issue of *res*

6    *judicata*, or whether any remand ordered by this Court is considered a final judgment or not,

7    reprocessing will bar class members from initiating or continuing to pursue separate litigation

8    arising from the same benefit determinations that were litigated in this action, because those

9    determinations will be overridden through a new administrative process.

10        Plaintiffs request that "each and every adverse benefit determination meeting the criteria

11   for Class Membership in this case" be "remanded to UBH" for a new initial determination. Pls.'

12   Proposed Remedies Order, ECF 435-1 at 6. Plaintiffs also ask the Court for an express order that,

13   on remand, any adverse benefit decision by UBH "shall be considered an initial adverse benefit

14   determination for purposes of ERISA . . . and the class member shall be entitled to avail himself

15   or herself of all rights to administrative appeal, including external appeal, available pursuant to

16   ERISA and the class member's plan," as well as any subsequent judicial remedies. *Id.* at 8–9.

17        Any reprocessing order therefore would (a) involve vacating prior benefit decisions and

18   (b) require new initial benefit determinations that would start the administrative process anew,

19   giving rise to a new set of administrative appeal and judicial review rights governed by the

20   member's relevant ERISA plan terms. *See Martinez*, 695 F. Supp. 2d at 1087; *Fisher v. Aetna*

21   *Life Ins. Co.*, No. 16-CV-144 (RJS), 2017 WL 1246133, at *6 (S.D.N.Y. Mar. 31, 2017)

22   ("Accordingly, the Court vacates Aetna's denial of benefits and remands to Aetna for

23   reconsideration of Plaintiff's claims"); *see also Alves*, 785 F. App'x at 398. Indeed, the Ninth

24   Circuit has held that "subsequent administrative review" of ERISA claim denials moots a lawsuit

25   challenging the original denials. *Silk v. Metro. Life Ins. Co.,* 310 F. App'x 138, 139–40 (9th Cir.

26   2009) (subsequent re-review would either "negate the need for further judicial review" by

27   approving benefits or the plaintiff would have the "right to file a new action" based on the re-

28   review); *see also Fisher*, 2017 WL 1246133, at *6 n.4 (explaining that remand for reprocessing

1   based on an arbitrary and capricious benefit denial would "likely . . . moot[]" the plaintiff's

2   claims about out-of-pocket maximum limits imposed by the plan); *Pakovich v. Verizon LTD Plan*,

3   653 F.3d 488, 491–92 (7th Cir. 2011) (ERISA claim is moot where benefits requested have

4   already been paid). Class members will not be able to separately sue (or maintain ongoing

5   lawsuits) based on those original vacated denials because they are no longer in force.

6       Finally, for any named plaintiff or class member who has assigned benefits to a provider,

7   claims by the provider-assignee may also be barred or rendered moot. *See Taylor v. Sturgell*, 553

8   U.S. 880, 894 (2008) ("Qualifying relationships" under established rules of nonparty preclusion

9   "include . . . assignee and assignor."). For example, at least one of the named plaintiffs in this

10  action seeks relief for a claim submitted to UBH by a provider claiming an assignment of

11  benefits. *See* Decl. of Jennifer Kinberger ¶ 6, ECF No. 20-11. Also, several providers that are

12  plaintiffs in a separate case, *Meridian Treatment Services v. United Behavioral Health*, Case No.

13  3:19-cv-05721 (N.D. Cal.)—through which they seek reprocessing of residential treatment

14  denials based on UBH's Level of Care Guidelines—allege that they took assignments of benefits

15  from members of UBH-administered plans whom they treated. *See* UBH Req. for Jud. Notice,

16  ECF 440. These providers submitted claims based on purported assignments from *Wit* and

17  *Alexander* class members during the class period at issue here. *See* Decl. of Ngoc Han S. Nguyen.

18  Claims by providers for payment of benefits based on the same mooted benefit decision may also

19  be rendered moot by any remand for reprocessing.

20      **C.    Summary Of Litigation By Individual Class Members.**

21      The court also requested "a summary of cases nationwide that involve members of the

22  classes that have been certified in this action, including any motions or arguments asserted by

23  UBH in those actions that claims should be dismissed or stayed in light of this action, and how

24  courts have ruled on those requests." ECF 448, at 2. UBH submits this information as Exhibit A.

25  As reflected in Exhibit A, to date, at least 17 members of the certified classes have filed separate

26  actions based on the same underlying benefit determinations, which will be barred by *res judicata*

27  and/or rendered moot by any reprocessing order.

28

II.     **UBH Should Not Be Limited To Matters That Were Not "Known or Reasonably Knowable" In Reprocessing (Topic 4).**

If the Court remands any class members' benefit determinations to UBH for reprocessing using different medical necessity criteria, the Court should not limit UBH's ability to undertake a full coverage review based on all relevant plan terms and available information in the administrative record for the claim at issue. Limiting UBH's decision-making authority to reasons given during the initial review, or restricting UBH to asserting reasons not "known or knowable" during the first review, would impermissibly undermine the terms of the plans. Such an order also would infringe on UBH's duties to "prevent … windfalls for particular employees" and "preserve limited plan assets," *Conkright*, 559 U.S. at 520, and would undermine the purpose of ERISA by raising expenses for plans and plan sponsors, which could "lead . . . employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987).

While UBH is entitled to assert new reasons that were not "known or knowable" during the first review, it is also entitled to assert any other reason supported by the administrative record and the relevant plan terms. To hold otherwise would contravene the terms of these plans, as well as UBH's fiduciary duties to preserve plan assets and pay claims only when authorized by the plan, and would fundamentally interfere with the claims administration process.

A.     **The Ninth Circuit's Holding in *Spinedex* Does Not Restrict The Administrator's Discretion To Administer Benefits Following A Remand For Reprocessing.**

The Ninth Circuit's decision in *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1297 (9th Cir. 2014), does not support the "middle ground" suggested by the Court. *Spinedex* did not involve a remand or reprocessing, and it does not support a rule that would restrict UBH—on a remand or reprocessing—from denying benefits based on exclusions (or other grounds) not invoked at the time of the original review. Rather, in *Spinedex*, the Ninth Circuit addressed the equities of allowing a claims administrator to assert a

*litigation* defense for the first time after the plaintiff had exhausted all administrative remedies. *Id.* at 1296–97.

*Spinedex* relied on *Harlick v. Blue Shield of California*, 686 F.3d 699 (9th Cir. 2012), which also focused on *litigation* defenses; neither case addressed what bases could be considered on remand to a claims administrator. In *Harlick*, the Ninth Circuit expressed concern that allowing the administrator to assert a new defense for the first time *during litigation* would amount to unfair "sandbagging" of the plaintiff by depriving her of the opportunity to adequately develop the administrative record. *Id.* at 720 (explaining that allowing new litigation defenses would deny plaintiffs the right to "prepare adequately for any further administrative review, as well as appeal to the federal courts") (quotation marks and citation omitted). This concern arises from the narrow scope of review in ERISA *litigation*, where plaintiffs are typically limited to the administrative record to establish the merits of their claim. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 969–70 (9th Cir. 2006). In short, *Harlick* holds that an administrator cannot "bring out a reason" *in court* "that it has 'held in reserve'" during the administrative process. *Harlick*, 686 F.3d at 720.

In *Spinedex*, the court again addressed an administrator's right to invoke litigation defenses not raised in the administrative review process. There, the plan administrator sought to invoke the plan's anti-assignment provision against the provider-plaintiff for the first time in litigation, arguing that the administrator was previously unaware during the administrative process that the provider was seeking benefits as an assignee. Applying *Harlick*, the court in *Spinedex* explained that "an administrator may not hold in reserve a known or reasonably knowable reason for denying a claim" only to spring it on the plaintiff "for the first time when the claimant challenges a benefits denial *in court*." *Spinedex*, 770 F.3d at 1296 (emphasis added). But the court held that the *Harlick* rule is not absolute; the administrator could properly assert a defense for the first time *during litigation* where there was "no evidence that [the administrator] was aware, or should have been aware, during the administrative process that [the provider] was acting as its patients' assignee." *Id.* at 1296–97.

CROWELL
& MORING LLP

Neither *Harlick* nor *Spinedex* addresses the scope of an administrator's discretion to determine benefits during the administrative process following a remand for reprocessing. And imposing limits on matters to be considered during reprocessing is fundamentally inconsistent with the remand process and applicable authorities. The effect of reprocessing is to return class members to the "*status quo* prior to the denial" and "provide [them] with the procedures that [they] sought in the first place." *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 776 (7th Cir. 2003). Reprocessing necessarily avoids any risk of "sandbagging" a beneficiary with new rationales for denial that the member has no ability to challenge through the administrative process because it *restarts the administrative process.*[2] *See Miller*, 632 F.3d at 856. For this reason, numerous courts have rejected the argument that "remand should be limited to the [original basis for denial] and that . . . contractual limitations on coverage which were not raised in the initial administrative review cannot now be raised upon remand." *Hatfield v. Blue Cross & Blue Shield of Mass., Inc.*, 162 F. Supp. 3d 24, 43 (D. Mass. 2016) (limiting the administrator's review on remand to a re-determination of medical necessity is not appropriate; a plaintiff "is not entitled to, for example, treatment at an excluded . . . program simply because there was inadequate notice of the bases of his denial. A remedy that could provide such a windfall is to be avoided."); *see also Vizcaino*, 120 F.3d at 1013 ("[W]e cannot, and will not, predict how the plan administrator, who has the primary duty of construction, will construe the terms of the" plan on remand); *Miles*, 720 F.3d at 490 (Although remand would afford the administrator the opportunity to reconsider the issues identified by the court, "[w]e do not suggest that those are the only appropriate considerations on remand, and we intend no limitation by mentioning them. Principal is expected to provide a full and fair reconsideration of Miles's claim.").

---

[2] Indeed, Plaintiffs seek an order from this Court compelling this result. Plaintiffs ask the Court for an express order that, on remand, any adverse benefit decision by UBH "shall be considered an initial adverse benefit determination for purposes of ERISA . . . and the class member shall be entitled to avail himself or herself of all rights to administrative appeal, including external appeal, available pursuant to ERISA and the class member's plan," as well as any subsequent judicial remedies. Pls.' Proposed Remedies Order, ECF 435-1, at 8–9.

1    The concerns motivating the Ninth Circuit in *Spinedex* and *Harlick* do not apply to a

2    remand. If the Court orders reprocessing, then class members will have the full benefit of the

3    administrative review process to challenge any and all bases for UBH's new benefit decision and

4    develop the administrative record through appeal for subsequent judicial review. They would not

5    and could not be "sandbagged." *Hatfield*, 162 F. Supp. 3d at 43.

6    This is precisely the result Plaintiffs advocated to obtain class certification based on a

7    reprocessing remedy. As Plaintiffs argued, the purpose of reprocessing under *Saffle* is to ensure

8    that courts remain "diligent in avoiding becoming the ultimate claims administrators." Pls.' Reply

9    ISO Class Cert, ECF 153, at 6. Plaintiffs' own cases cited in support of class certification confirm

10   that the "proper remedy" under *Saffle* is to vacate the prior benefit decision and "remand the case

11   to [the administrator] for reevaluation of whether Plaintiff qualifies for . . . benefits" under the

12   terms of the plan. *See Duarte v. Aetna Life Ins. Co.*, No. SACV 13-00492-JLS RN, 2014 WL

13   1672855, at *10–11 (C.D. Cal. Apr. 24, 2014) ("Aetna's decision denying Plaintiff's claim for

14   LTD benefits is vacated" and "remanded to . . . determine, in good faith, whether she qualifies for

15   LTD benefits"); *see* Pls.' Reply ISO Class Cert, ECF 153, at 7 n.8 (citing *Duarte*). The Court

16   agreed with Plaintiffs and certified the classes based on the notion that courts should not "usurp

17   the role of the claims administrator" because "the preferred remedy is to remand the claim for

18   evaluation on the merits." Order Granting Class Cert., ECF 174, at 27.

19   Plaintiffs have successfully argued for years that the effect of reprocessing is to "set aside

20   [UBH's] action and remand the case—even though [UBH] (like a new jury after a mistrial) might

21   later, in the exercise of its lawful discretion, reach the same result for a different reason." Pls.'

22   Opp'n to UBH MSJ, ECF 261 at 19 (quoting *FEC v. Akins*, 524 U.S. 11, 25 (1998)). They are

23   precluded from making any contrary argument now. *See New Hampshire v. Maine*, 532 U.S. 742,

24   749 (2001) (a party is generally precluded from "prevailing in one phase of a case on an argument

25   and then relying on a contradictory argument to prevail in another phase") (quoting *Pegram v.

26   Herdrich*, 530 U.S. 211, 227, n.8 (2000)). UBH must be permitted to exercise its plan-conferred

27   discretion and its fiduciary duty to only pay benefits to members entitled to receive those benefits

28   under the express terms of their plans.

1    **B.    UBH Should Not Be Limited To A "Known or Reasonably Knowable"**

2    **Standard On Remand.**

3    The Court's March 24 Order also asked the parties to address whether a "known or

4    reasonably knowable" standard is "sufficiently clear-cut" that it could be implemented by UBH

5    on remand, and what procedures would be appropriate for addressing disputes that might arise

6    with respect to whether the basis for an exclusion was "known or knowable." ECF 448, at 3.

7    As discussed above and in UBH's Response to Plaintiffs' Remedies Brief (*see* ECF 429,

8    at 16–18, 31–33), if reprocessing is ordered, ERISA and the case law do not support any

9    limitation on UBH's discretion upon remand to determine benefits under the full terms of each

10   class member's benefit plan. Moreover, this Court's rulings and the new guidelines to be applied

11   by UBH on remand may *require* UBH to analyze or give different consideration to aspects of a

12   plan member's condition or treatment. Thus, even though the member's condition or treatment

13   may have been "known or knowable" when UBH made its original determination, for reasons

14   wholly consistent with this Court's rulings, UBH might now need to assess a particular condition

15   or treatment differently, and may reach a different conclusion or basis for its conclusion through

16   reprocessing using different standards.

17   Separate and apart from the nature of a remand, there are multiple practical reasons why

18   the "known or reasonably knowable" limitation should not be imposed in a remand. In particular,

19   imposing such a limitation would require a fact-intensive, individualized analysis of the full

20   original administrative record in potentially countless individual benefit determinations to

21   determine which grounds were adequately presented and/or preserved in the original (vacated)

22   benefit determination. Making this determination would require someone—and likely multiple

23   people in the event of an inevitable dispute—to perform a detailed analysis of the old and new

24   coverage determinations. Rather than starting from a clean slate, medical directors would need to

25   begin their review of the administrative record on remand by reviewing the original determination

26   so that they are informed by a complete understanding of the reasons that a claim was previously

27   denied. Or, alternatively, someone (it is unclear who) would need to conduct a burdensome

28

1    comparison, after completion of the remand review, of the voluminous individualized files and

2    determinations.[3]

3            These inquiries would be complicated by the fact that new medical directors would need

4    to reexamine voluminous medical records, and in many cases may give greater or less weight to

5    particular aspects of a member's condition or treatment based on the new guidelines to be applied

6    and/or the clinical judgment of the reviewer. Or they may use different words, or summarize the

7    conditions in a different way, than the medical director involved in the original determination.

8    Additionally, if class members are permitted to supplement the record with additional information

9    in support of their request for benefits, there will be difficult questions about whether a particular

10   basis for denial arose from the new records or the old records. For example, a class member who

11   initially sought authorization may be permitted to supplement the record with additional evidence

12   (such as medical records or treatment notes) providing supplemental information about a

13   condition or treatment that was previously disclosed but not in as much detail. Reprocessing is

14   likely to result in many difficult and nuanced issues that are not clear cut.

15           Invariably, disputes will arise between UBH and Plaintiffs over whether particular

16   information was "known or reasonably knowable" at the time of the original benefit

17   determination based on the information available to UBH at the time, which may have been

18   partial or incomplete. Ultimately, the parties and the Court would be required to spend countless

19   hours on fact-intensive inquiries to resolve these individualized disputes based on a

20   comprehensive review of the underlying administrative record.

21           Nor would the appointment of a special master resolve this problem.[4] As with the court

22   from which a special master's power derives, a special master cannot usurp UBH's plan-

23

24           [3] The analysis in *Spinedex* underscores why, as a practical matter, restricting UBH's
     discretion on remand would result in a morass of individualized, fact-specific inquiries. In
25   *Spinedex*, which was not a class action, the court needed to review detailed evidence about the
     specific details of the provider plaintiff's claims history in order to determine whether the
26   administrator "knew or should have known" that the provider was proceeding based on an
     assignment during the administrative process. *Spinedex*, 770 F.3d at 1297.

27           [4] UBH opposes the appointment of a special master on multiple grounds. *See* UBH
     Response to Pls.' Remedies Brief, ECF 429, at 52–53.

28

conferred discretion (and its fiduciary obligation) to conduct a full and fair review of each remanded class member's eligibility for benefits under the full terms of his or her plan. *See* Fed. R. Civ. P. 53(a)(1)(C) (appointment of a master to address post-trial matters is limited to matters that "cannot be effectively and timely addressed by an available district judge or magistrate judge"); *La Buy v. Howes Leather Co.*, 352 U.S. 249, 256 (1957) (a master cannot "displace the court"); *Vizcaino*, 120 F.3d at 1013; *Miles*, 720 F.3d at 490. But even if the court did have authority to disregard class member's plans and restrict UBH's review to a "known or reasonably knowable" standard, the appointment of a master would not resolve the practical challenges of implementing such a standard. Each determination by a master would be subject to challenge by either Plaintiffs or UBH, and the Court would be required to conduct a *de novo* review. Fed. R. Civ. P. 53(f)(3), (f)(4). Indeed,

> in litigation of this size, the appointment of a special master will often present more problems than it will solve. If the master makes significant decisions without careful review by the trial judge, judicial authority is effectively delegated to an official who has not been appointed pursuant to article III of the Constitution; if the trial judge carefully reviews each decision made by the master, it is doubtful that judicial time or resources will have been conserved to any significant degree.

*Meeropol v. Meese*, 790 F.2d 942, 961 (D.C. Cir. 1986).

The Ninth Circuit was not confronted with these challenges in *Harlick* and *Spinedex* because the plaintiffs in those cases did not seek reprocessing. Plaintiffs repeatedly have argued that they seek a remand for reprocessing, which is a redo of the administrative process. The necessary consequence of the remand and reprocessing remedy is that the claims administration process should be allowed to proceed in the manner authorized by their plans.

### III.  UBH Has Adopted Third-Party Medical Necessity Criteria For Use In All 50 States (Topic 6).

Finally, the Court's March 24 Order asked UBH to "provide a report to the Court, supported by declarations and evidence as appropriate, listing the guidelines it is using in every State, including any anticipated changes and the status of any regulatory or licensing approvals that it has sought or is in the process of obtaining" and identifying any limitations on UBH's use

of third-party guidelines. The Court further directed UBH to respond to Plaintiffs' assertion that "UBH re-adopted its Custodial Care Guidelines in 2019." ECF 448, at 4.

As UBH explained in its Response to Plaintiffs' Remedies Brief, UBH adopted the ASAM Criteria effective January 2019 to replace UBH's former Level of Care Guidelines where permitted by law for use in determining the medical necessity of covered substance use disorder benefits under ERISA-governed benefit plans. Decl. of Dr. Lorenzo Triana, ¶ 4. UBH currently uses the ASAM Criteria for medical necessity determinations of substance use disorder benefits under ERISA-governed plans in all 50 states with the exception of fully-insured benefit plans governed by New York law, where UBH is required by state law to apply New York's LOCADTR criteria. *Id.* UBH has no plans to discontinue or change its current use of the ASAM criteria for determining the medical necessity of covered substance use disorder benefits under ERISA-governed plans. *Id.*, ¶ 10.

Effective January 31, 2020 UBH adopted the LOCUS (adult), CASII (children age 6–18), and ECSII (children age 0–5) criteria for use in determining the medical necessity of covered mental health benefits under ERISA-governed benefit plans. *Id.*, ¶¶ 5–7. UBH currently uses the LOCUS, CASII, and ECSII criteria for medical necessity determinations of mental health benefits under ERISA-governed benefit plans in all 50 states. *Id.* In Massachusetts, UBH also uses supplemental Children's Behavioral Health criteria mandated by the state of Massachusetts for use in determining benefits for certain limited behavioral health services. *Id.*, ¶ 8. UBH has no plans to discontinue or change its current use of the LOCUS, CASII, or ECSII criteria for determining the medical necessity of covered mental health benefits under ERISA-governed plans. *Id.*, ¶ 10.

All regulatory submissions and approvals necessary for UBH's transition to the ASAM, LOCUS, CASII, and ECSII criteria are complete (or with respect to South Carolina will be complete by July 1, 2020),[5] and UBH has fully discontinued the use of its prior Level of Care

---

[5] Consistent with South Carolina law, UBH will be providing notice to South Carolina of its use of the ASAM, LOCUS, CASII, and ECSII criteria on July 1, 2020. Clark Decl., ¶ 7. However, because South Carolina only requires notice, and not prior approval, of changes to (Continued...)

1  Guidelines. *Id.*, ¶ 9; Decl. of Kristen C. Clark, ¶¶ 7–8. A summary of UBH's applicable medical

2  necessity guidelines, by state, as well as the status of all related regulatory submissions and

3  approvals is attached as Exhibit B.

4  The vast majority of the ERISA-governed plans administered by UBH, including all fully-

5  insured plans, require that the administrator find the treatment is "medically necessary" before

6  coverage is approved. Triana Decl., ¶ 12. For these plans, medical necessity is determined using

7  the ASAM, LOCUS, CASII, and ECSII criteria, as described above. *Id*. A limited number of self-

8  funded plans administered by UBH do not condition coverage on a determination of medical

9  necessity. *Id.*, ¶ 13. For these plans, UBH applies Coverage Determination Guidelines intended to

10  describe the benefits available under the terms of the plans. *Id*. UBH adopted its 2019 Coverage

11  Determination Guideline: Custodial Care (Inpatient & Residential Services) on May 20, 2019 to

12  describe excluded custodial care services as defined under the terms of the limited number of self-

13  funded plans to which it applies. *Id.*, ¶ 14.

14  According to data stored in UBH's adverse benefit determination database, since it was

15  adopted in May 20, 2019, the Custodial Care CDG has not been cited in any adverse benefit

16  determinations for coverage of residential treatment services, or for any plans or members at issue

17  in this case. *Id*. This Court also asked about anticipated changes, so UBH therefore reports that it

18  expects to discontinue its Custodial Care CDG on May 18, 2020. *Id.*, ¶ 15.

19

20  Dated:  May 15, 2020          **CROWELL & MORING LLP**

21

22          */s/ Jennifer S. Romano*
           Jennifer S. Romano
23          Attorneys for UNITED BEHAVIORAL HEALTH

24

25

26

27  UBH's use of medical necessity criteria, UBH's use of the ASAM, LOCUS, CASII, and ECSII
   criteria is not limited or inhibited in South Carolina by the pending regulatory notification. *Id*.

28