Psych-Appeal, Inc.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

Zuckerman Spaeder LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs and the Classes*
*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS), <br><br> Defendant. | Case No. 3:14-CV-02346-JCS <br> Action Filed: May 21, 2014 <br><br><br> **PLAINTIFFS' SUPPLEMENTAL REMEDIES BRIEF** |
| GARY ALEXANDER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS), <br><br> Defendant. | Case No. 3:14-CV-05337-JCS <br> Action Filed: December 4, 2014 |

On March 24, 2020, the Court requested additional briefing and information on six topics relating to Plaintiffs' pending request for remedies. Order re Further Remedies Proceedings, *Wit* ECF No. 448 (Mar. 24, 2020). Pursuant to the briefing schedule ordered by the Court, *see Wit* ECF No. 450, Plaintiffs submit the following brief on Topics 1 and 5. The remaining topics will be addressed in separate filings to be submitted today.

## I. Topic 1: Implications of Certifying Classes Under Rules 23(b)(1)(A), (b)(2) and (b)(3)

The Court first asked the parties to address "the implications with respect to remedies for class members – both those who have opted out and those who have not – of certifying under all three sections of Rule 23(b)." *Wit* ECF No. 448 at 1. Specifically, the Court requested briefing on the following questions:

- Will or should class members who have opted out be bound by any of the remedies that Plaintiffs have requested?

- [C]an or should the Court specify that certain remedies are awarded under Rule 23(1)(A) and/or (b)(2) and therefore, that class members cannot opt out of those remedies?

- If the Court were to take such an approach, would it be necessary or appropriate to create remedies subclasses?

*Id.* at 1-2. Plaintiffs first set forth the relevant procedural history, then address each of the Court's questions in turn.

### A. Procedural History

In their Motion for Class Certification, Plaintiffs sought class certification for three different classes, under Rules 23(b)(1)(A) and (b)(2), and, in the alternative, Rule 23(b)(3). Mot. for Class Certification & Mem. of P. & A. in Supp. Thereof, *Wit* ECF No. 128-4 (Mar. 28, 2016) at 20-22. Following briefing and argument on the motion, the Court issued its Order Granting Motion for Class Certification on September 19, 2016. *Wit* ECF No. 174. The Court found that each of the classes satisfied the requirements for certification under Rules 23(b)(1)(A), (b)(2), and (b)(3). It therefore certified each of the classes under all three rules. *Id.* at 43, 51, 55.

After the parties submitted a joint motion for approval of a notice plan, the Court ordered

1  briefing on (i) whether an opt-out procedure was necessary in this case; (ii) if so, what the proper
2  opt-out procedure was; and (iii) whether permitting an opt-out right would require the Court to
3  amend the class certification order. *See* Pls.' Mem. of P. & A. re Opt-Out Procedures, *Wit* ECF
4  No. 215 (Feb. 24, 2017) at 3. The parties agreed that, because the Court had certified each of the
5  classes under Rule 23(b)(3), notice and an opt-out right were mandatory. *See id.* at 3-4; Def.'s
6  Suppl. Br. re Class Notice & Opt-Out Procedures, *Wit* ECF No. 214 (Feb. 24, 2017) at 4-6. The
7  parties disagreed, however, about whether class members should have the right to opt out of the
8  case as a whole, or only as to some claims and/or remedies.

9  Plaintiffs proposed that one way to avoid these complications would be to amend the
10 class certification order to certify the classes only under Rules 23(b)(1) and (b)(2), such that
11 notice and an opportunity to opt-out would not be required. *Wit* ECF No. 215 at 5-8. UBH
12 strenuously opposed such a step. Def.'s Reply to Pls.' Br. re Class Notice & Opt-Out Procedures,
13 *Wit* ECF No. 219 (Mar. 3, 2017) at 2-6. The Court ultimately rejected Plaintiffs' proposal,
14 concluding that there were "sound reasons" for permitting class members to opt out of the sought
15 after reprocessing and surcharge remedies. *Wit* ECF No. 224 at 10. The Court reasoned:

> With respect to the reprocessing remedy, while Plaintiffs are correct that class members will not be barred from bringing separate actions asserting claims that were not addressed in this action even if they do not opt out of the class . . . , a class member may nonetheless prefer to assert all of his or her claims relating to a denial of benefits in a single proceeding rather than having to go through two proceedings to challenge a denial of benefits. . . . [T]here may be class members who would, due to the specific circumstances of the claim denial, prefer to forego any reprocessing remedy that may be ordered in this case in favor of a proceeding where they can assert all of their challenges in a single (or different) forum. For these reasons, the Court finds that neither the reprocessing remedy nor the surcharge remedy is mandatory.

23 *Id.* The Court further held that class members should have the right to opt out of the class as a
24 whole, explaining that "giving class members multiple options for opting out of specific
25 remedies" could give rise to "manageability problems (and potential confusion)." *Id*.
26 Accordingly, the notice approved by the Court and sent to the class members provided
27 instructions on how to be excluded from class membership. *See Wit* ECF No. 235 (Mar. 31, 2017
28 Stipulation & [Proposed] Order re Class Notice) at Exs. A, B, & C; *see also Wit* ECF No. 236

(Apr. 3, 2017 Order approving form of class notice).[1] The notice explained the implications of opting out as follows:

> **IF YOU CHOOSE TO BE EXCLUDED: (1) you will NOT be entitled to share in any relief from any settlement or judgment that results from this lawsuit; (2) you will NOT be bound by any judgment or settlement release entered in this lawsuit; and (3) at your own expense, you MAY pursue any claims that you have by filing litigation.** Even if you choose to be excluded from the lawsuit, if the Court orders UBH to revise its guidelines, UBH may apply those revised Guidelines to your future claims.

*Wit* ECF No. 235-1 at 3 (original emphasis); *see also Wit* ECF No. 235-2 at 3 (same), *Wit* ECF No. 235-3 at 3 (same). The notice exhorted class members to "**Only request exclusion if you do NOT wish to participate in this litigation and do NOT wish to share in any potential relief that might be obtained on behalf of the Class in this lawsuit**." *Wit* ECF No. 235-1 at 3 (original emphasis); *see also Wit* ECF No. 235-2 at 3 (same), *Wit* ECF No. 235-3 at 3 (same). The notice was mailed to 63,292 individuals and set a deadline for opting out of July 27, 2017. In total, only 139 people opted out.

Following a bench trial, the Court issued its Findings of Fact and Conclusions of Law on the merits of the class members' claims. *Wit* ECF No. 413 (Feb. 28, 2019) ("Merits Findings"). The Court found in favor of the three Classes on the merits of all of their claims. *Id*. at 99-105 (holding that UBH breached its fiduciary duties); *id*. at 105-06 (holding that UBH's denials of the class members' requests for coverage violated ERISA).

Plaintiffs then filed a request for remedies, seeking (1) a declaratory judgment; (2) an order remanding to UBH for reprocessing of class members' wrongfully-denied requests for coverage; and (3) prospective injunctive relief designed to alter the UBH policies and practices that the Court held constituted abuses of discretion and breaches of fiduciary duty. *See* Pls.' Opening Remedies Br. & Proposed Order, *Wit* ECF No. 426 (May 3, 2019).

### B. Plaintiffs' Responses to the Court's Questions

As noted above, the Court's first specific question was whether class members who opted

---

[1] The relevant portions of the notice were identical for each of the three classes.

1  out "[w]ill or should . . . be bound by any of the remedies that Plaintiffs have requested." *Wit*
2  ECF No. 448 at 1-2. The answer to this question is no. Individuals who timely submitted a
3  request to be excluded from a class are *not* members of the class. *See, e.g.*, 3 Newberg on Class
4  Actions § 9:39 (5th ed.) ("Once an individual opts out of a class action, she is excluded entirely
5  from the suit."). Just as those individuals would not have been bound by any liability ruling
6  *adverse* to the class, now that the class has prevailed at trial, they do not share in the class's
7  victory and they are not entitled to any remedies the Court may order.

8        The implications of opting out are thus straightforward—individuals who opted out are
9  no different than other non-class members. Such opt-outs have the same rights to file legal
10 claims and/or seek remedies against UBH that any other non-class member might have (*e.g.*, an
11 individual whose claim was denied the day after the class period ended), but like other non-class
12 members, they are not entitled to any of the remedies the Court orders (*e.g.*, reprocessing of their
13 claims). Although it is true that some opt-outs, like other non-class members, may be indirectly
14 affected by some of those remedies (*e.g.*, some of the sought-after forward-looking injunctive
15 and declaratory relief), this is a common feature of Rule 23(b)(1)(A) and (b)(2) classes. *Cf., e.g.*,
16 *Melendres v. Maricopa Cty.*, 897 F.3d 1217, 1219 (9th Cir. 2018) (affirming injunction entered
17 in favor of class of Latino drivers and passengers who were stopped and searched in Maricopa
18 County, Arizona, which included "appointing an independent monitor to assess and report on
19 [defendant's] compliance with the injunction, increasing the training of [defendant's] employees,
20 improving traffic-stop documentation, and developing an early identification system for racial-
21 profiling problems."). That does not mean that such non-class members are somehow "bound"
22 by the injunction.

23       Nor *should* the Court seek to bind the opt-outs through its remedial order. Doing so
24 would require the Court to reverse the exclusion from the Classes of each of the individuals who
25 timely submitted the required opt-out notification in accordance with the class notice—albeit
26 only for some remedies, not all of them. As the Court observed when rejecting a piecemeal opt-
27 out procedure in the first place, such an order is likely to cause substantial confusion. *Wit* ECF
28 No. 224 at 10.

The Court next inquired whether it "can or should . . . specify that certain remedies are awarded under Rule 23(b)(1)(A) and/or (b)(2) and therefore, that class members cannot opt out of those remedies." *Wit* ECF No. 448 at 2. Relatedly, the Court asked whether it would "be necessary or appropriate to create remedies subclasses" if the Court were to issue such an order. *Id.* Plaintiffs do not believe the Court should take such an approach for two related reasons.

First, Plaintiffs' claims were properly certified under Rule 23(b)(1)(A), (b)(2) *and* (b)(3) because they satisfied all of the requirements of all of those rules. This included the requirement, at least for certification under Rule 23(b)(1)(A) and (b)(2), that Plaintiffs sought uniform injunctive and declaratory relief. The fact that a small number of people opted out of the classes does not undermine those certifications.

Second, the type of modifications the Court has inquired about seem to implicate, and indeed could exacerbate, the confusion-related concerns that previously led the Court to conclude that opting out was an all-or-nothing question in this case. Creating subclasses after trial, and specifying that *some* remedies, but not all, are mandatory might be confusing. This is especially so because putative class members were previously informed that the opposite was true and that they could opt out of the case entirely.

## II.     Topic 5: Pre- and Post-Judgment Interest

As explained in Plaintiffs' opening remedies brief, class members who are determined through reprocessing to be entitled to benefit payments wrongfully withheld are also entitled to prejudgment interest. *Wit* ECF No. 426 at 18-19 (citing various cases, including *Nelson v. EG&G Energy Measurements Grp., Inc.*, 37 F.3d 1384, 1391 (9th Cir. 1994), and *Blankenship v. Liberty Life Assurance Co. of Bos.*, 486 F.3d 620, 628 (9th Cir. 2007)). The Court requested that the parties address the appropriate rate of pre- and post-judgment interest, given that one of the claims sample plans contains a provision setting interest at 12% if members submit requests for payment "'that include all required information which are not paid within [specified time frames]'" (30 days for electronic requests, 40 days for others). *Wit* ECF No. 448 at 3 (quoting

Trial Ex. 1542-77).[2]

Plaintiffs maintain that 28 U.S.C. § 1961 sets forth the appropriate rate of interest. The Ninth Circuit has expressly ruled that "[g]enerally" the "appropriate" interest rate in ERISA cases is the rate prescribed by 28 U.S.C. § 1961. *Blankenship*, 486 F.3d at 628. Only upon a showing of "substantial evidence" that "the equities of that particular case require a different rate" do district courts have discretion to use a different rate. *Id.* UBH has never identified a single class member's plan that designates a rate of interest to be applied where UBH has wrongfully denied a request for coverage. The interest rate in the Gucci plan (Trial Ex. 1542-77) applies on its terms to requests for coverage that UBH deemed covered, and then paid—just belatedly. Even that plan term does not address the appropriate interest rate where, as here, UBH wrongfully *denied* a claim based on conduct that violated its fiduciary duties. If UBH cannot identify a single plan that mandates an interest rate for such claims, it certainly has not satisfied the "substantial evidence" standard in *Blankenship*. There is no need for the Court to address the purely hypothetical scenario of a plan that has such a term.

Dated: May 15, 2020

ZUCKERMAN SPAEDER LLP

*/s/ Caroline E. Reynolds*
Caroline E. Reynolds

PSYCH-APPEAL, INC.
Meiram Bendat

*Attorneys for Class Plaintiffs*

---

[2] The Court directed UBH to address "whether it has found any class member plan that explicitly prohibits a court award of pre- or post-judgment interest on benefits that it has found were improperly denied." *Wit* ECF No. 448 at 4. UBH has never brought any such plan to Plaintiffs' attention. As the Court notes, the only plan UBH purports to identify (Trial Ex. 1539-0036) "does not appear to lend strong support to UBH's position." *Id.* at 3. This is, of course, because the provision UBH cites does not address interest on late-paid *benefits*; rather, the provision excludes coverage of interest imposed by a *provider* if a patient pays the billed charge late. *See* Trial Ex. 1539-0036.