PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs and the Classes*
*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS), <br><br> Defendant. | Case No. 3:14-CV-02346-JCS <br> Action Filed: May 21, 2014 <br><br><br> **JOINT SUBMISSION REGARDING CLASS LISTS** |
| GARY ALEXANDER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS), <br><br> Defendant. | Case No. 3:14-CV-05337-JCS <br> Action Filed: December 4, 2014 |

On March 24, 2020, the Court requested, among other things, a status report on the parties' efforts to "develop a complete and accurate class list," and directed the parties to address what measures may be required with respect to notice. Order re Further Remedies Proceedings (ECF No. 448) at 2.

### A.     Completeness of the Class Lists

The parties agree that a class list need not be precisely complete and accurate to satisfy due process; what Rule 23 requires is "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "[N]otice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The parties remain confident that in all respects, the Court-approved notice plan satisfied, and indeed far exceeded, the requirements of due process and Rule 23.

As to the Court's questions as to whether and how Trial Exhibit 255 may be over- and under-inclusive, the parties state their positions below.[1]

### 1.     170 Administrative Non-Coverage Determinations

As reflected in the trial stipulation entered into evidence as Trial Exhibit 896, the parties discovered during trial that Trial Exhibit 255 erroneously included 170 denials that were

---

[1] **UBH Position**: For the reasons explained in UBH's response to Plaintiffs' Remedies Brief, it is UBH's position that if the Court orders reprocessing of any class member's claims for benefits, not all of the class members listed in Exhibit 255 are entitled to reprocessing. UBH contends that consistent with the limitations imposed by ERISA and the evidence in this case, reprocessing of claims must proceed, if at all, upon confirmation from each class member that he or she is entitled to reprocessing because he or she: (1) received the same treatment with the same provider at the same level of care that was the subject of the benefit decision at issue; (2) was billed for those services; (3) did not assign rights to benefits to any other party; (4) did not already receive benefits for the same service from other insurance (including a secondary insurer); and (5) did not already receive benefits for the same service through an administrative appeal or separate litigation.

**Plaintiffs' Response**: For reasons Plaintiffs have explained, all class members are entitled to reprocessing. Pls.' Remedies Reply, *Wit* ECF No. 435 at 53-54. UBH's suggestion that class members must "confirm[]" the items listed above to be "entitled to reprocessing" has no more merit than the last time UBH made this argument. *See, e.g.*, *id.* at 18-19, 21-25, 27-28, 42-46.

1  administrative, rather than clinical. *See* Trial Ex. 896-0004 at ¶ 5. The parties agreed by
2  stipulation that those "170 Administrative Non-Coverage Determinations are Non-Coverage
3  Determinations that would not entitle the corresponding members to membership in the Classes."
4      Although class notice was sent to those individuals, the parties believe there is no need to
5  notify them of their non-class-member status because, among other things, the class notices did
6  not state the recipients *were* class members, but rather provided the information necessary for
7  recipients to determine *whether* they were class members. *See, e.g.*, ECF No. 279-1 at 4 ("If you
8  fall within the definition of the class set forth above, you are a class member.").
9      The parties agree that any non-class member should now be removed from the Class List,
10 but as described below, differ as to whether any additional steps are needed to verify that the
11 individuals do not meet the class criteria.
12     **Plaintiffs' Position:** Plaintiffs have now requested that UBH produce the denial letters
13 for those determinations to confirm that they do not meet the class criteria. In Plaintiffs' view, it
14 makes sense to confirm that that those denials do not meet the class criteria before removing the
15 class members from the class list. Two of the individuals the parties agree should be added to the
16 class list (see § A.4, below) were inadvertently left off of the list because of errors in how the
17 denials were entered into the database. While the parties have no reason to believe such errors
18 are widespread, before an individual who previously received notice of the action is removed
19 from the list, Plaintiffs believe it would be prudent to verify that such removal is correct—a
20 straightforward matter of confirming that the denial letters do not refer to the Guidelines.
21     **UBH's Position:** UBH contends that no additional steps are needed on this issue. There
22 is no evidence in the trial record that any of these 170 individuals is a member of any of the
23 certified classes in this case. The data pulled from UBH's benefit determination databases and
24 produced to Plaintiffs during discovery demonstrates that these 170 individuals are not members
25 of the class based on the objective criteria agreed to by the parties. Trial Ex. 255. Plaintiffs
26 stipulated on the record at trial "that these 170 Administrative Non-Coverage Determinations are
27 Non-Coverage Determinations that would **not entitle the corresponding members to**
28

2

**membership in the Classes**." Trial Ex. 896-0004 (emphasis added). Plaintiffs do not cite any authority for the proposition that UBH should be ordered to reengage in discovery to "confirm" a fact to which Plaintiffs have already stipulated, and Plaintiffs are estopped from taking a contrary position. Under controlling authority, Plaintiffs' stipulation that these 170 individuals are not class members had the effect of "withdrawing [the] fact from issue" and is "conclusive in the case." *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez*, 561 U.S. 661, 677-78 (2010) ("factual stipulations are 'formal concessions... that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact'") (quoting McCormick on Evidence § 254 (6th ed. 2006)).*Id*. (courts will not "consider a party's argument that contradict[s] a joint stipulation"); *Thomas v. Bostwick*, No. 13-cv-02544-JCS, 2014 WL 6386806, at *3 (N.D. Cal. Nov. 14, 2014) (Spero, J.) (same).

### 2.   Initial Administrative Decisions With Subsequent Clinical Non-Coverage Appeal Determination

**Plaintiffs' Position:** As noted below, in addition to fielding nearly 1,000 calls from class members, Plaintiffs' counsel has fielded hundreds of calls from other individuals. There were three callers who were not listed on Trial Exhibit 255 but whose appeals were, as set forth in the class definition, "denied by UBH, in whole or in part, between May 22, 2011 and June 1, 2017, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines" (for the *Wit* Guideline class). Based on subsequent correspondence and conferences with counsel for UBH about these three callers, it has come to Plaintiffs' attention that there is a subset of class members whose adverse benefit determinations ("ABDs") apparently were not captured in the data that were used to identify potential class members for notice and ultimately to prepare the class list in trial Exhibit 255—specifically individuals whose *initial* ABDs did not, standing alone, meet the class definition (for example, because the denials were administrative in nature, or predated the class period), but whose *appeals* UBH denied based in whole or in part on the Guidelines. Such individuals are undeniably members of the classes as defined.[2]

---

[2] UBH contends repeatedly that Plaintiffs failed to submit class-wide proof as to these denials.

1  UBH argues that even if the facts of these individuals' denials render them class

2 members, they "are *not* class members, because their initial denials did not meet the criteria for

3 inclusion on the class list agreed to by UBH and Plaintiffs." But it is the class definitions that

4 control class membership; nothing in any of the class definitions limits the classes to individuals

5 whose *initial* requests for coverage were denied in whole or in part based on the Guidelines.

6 Moreover, UBH does not identify "the criteria for inclusion on the class list agreed to by UBH

7 and Plaintiffs." In fact, the parties never discussed, and certainly never agreed, that individuals

8 whose appeals were Guideline denials within the class period and whose initial denials were not

9 should be excluded from the class.[3] These are class members and, although some or all may not

10 have received notice, nothing about any of the matters addressed in this filing renders the parties'

11 notice plan to have violated Rule 23 or due process.

12  **UBH's Position:** In the six-year history of this litigation, Plaintiffs have never requested

13 reprocessing of appeal determinations. *See* ECF 426-1 at 6 (Pls. Initial Proposed Remedies

14 Order, requesting reprocessing of "every adverse benefit determination listed on the Class List

15 admitted at trial as Trial Exhibit 255", which is composed exclusively of initial benefit

16 determinations); ECF No. 435 at 18 (Pls. Remedies Reply ISO their Requested Remedies,

17 arguing: "Plaintiffs' claims challenge the criteria UBH used to make its *initial* adverse benefit

18 determinations."). As a consequence of that strategic decision, Plaintiffs offered no class-wide

---

But since the appeal denials meet the class definition, the class-wide proof on which the Court's liability ruling was based equally applies to these class members.  UBH's ERISA violations were the same, regardless of whether it used its excessively restrictive Guidelines on appeal or for the initial denial.  For the same reason, UBH's concerns about one-way intervention are misplaced: these individuals are not joining the class post-trial, they are already class members.

[3] Nor did Plaintiffs purport to address these class members, who were then unknown to Plaintiffs, when responding to UBH's argument that, if a Guideline denial was overturned on appeal, the class member should be excluded from the class. Just as the initial Guideline denial for such class members still violated ERISA even if the denial was subsequently overturned, the appeal Guideline denials violate ERISA even if the initial denial was made on some other ground. Plaintiffs have never contended otherwise, nor did Plaintiffs make a "strategic decision" to exclude these people from the class: rather, they *are* class members under the existing definition.

1  proof at trial about the administrative appeal determinations for any such individuals, let alone

2  how the identity of such individuals would be determined on a class-wide basis.[4] After a full trial

3  and liability decision, and after hundreds of pages of briefing on the issue of remedies, Plaintiffs'

4  eleventh-hour demand for reprocessing for individuals based *solely* on an administrative appeal

5  determination, is too late. To the extent any such individuals arguably fall within the definitions

6  of the certified classes in this case, the classes must be decertified as to them for a complete

7  failure of class-wide proof.[5]

8  Indeed, including such individuals in the class at this late juncture would violate

9  established principles of due process because it would either: (a) deprive them of an opportunity

10 to receive notice and opt-out of the class;[6] or (b) would violate the rule against one-way

---

[4] Plaintiffs attempt to justify their failure of class-wide proof by misleadingly suggesting that "these class members" were previously "unknown to Plaintiffs". While the identity of the specific individuals who have purportedly contacted plaintiffs may have been "unknown", Plaintiffs have been well-aware throughout this litigation that the data used to create the class list reflected only *initial* adverse benefit determinations. This was confirmed at trial with uncontroverted testimony. Trial Tr. 1483:15-1484:9, 1492:8-24 (Bridge).

[5] The only individuals who might arguably meet the class definitions based *solely* on an appeal determination would be limited to two potential circumstances: First, Plaintiffs speculate that there could be individuals whose initial determinations were non-clinical (e.g. denials based on ineligibility for benefits or where the member seeks services that are expressly excluded from coverage under the plan), but whose appeal determinations were converted for some reason to a clinical review. This would be atypical, since an initial non-clinical determination is generally reviewed as a non-clinical appeal, for which the guidelines would not be used. Second, for initial adverse benefit determinations issued in 2011 before the start of the class period that were based on the 2011 Level of Care Guidelines, some members may have received appeal determinations within the class period even though they fall outside the class period based on the original determinations.

[6] UBH asserts that, based on the parties' agreed criteria for class notice, the parties made no attempt to provide class notice to individuals who Plaintiffs now argue should be included within the scope of the class. UBH contends that this distinguishes such individuals from the handful of class members identified by Plaintiffs who the parties agree based on the parties agreed-upon criteria should have been, but were inadvertently omitted from, the class list. UBH argues that, as to individuals to whom (by agreement) the parties did not even *attempt* to provide notice, they did not receive the best notice practicable because the notice provided was not "reasonably calculated, under all the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections.'" *Eisen*, 417 U.S. at 173.

intervention by affording them an opportunity to opt out *after* the Court has already ruled on summary judgment and issued its Findings of Fact and Conclusions of Law. *See* ECF No. 224 at 10 (the Court explaining there are "sound reasons for treating the reprocessing and surcharge remedies as (b)(3) remedies that require notice and allow class members to opt out"); *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) (in order to avoid "one-way intervention," Rule 23(c)(2) contemplates that class notice will be sent "*before* the parties are aware of the district court's judgment on the merits.").

It is also not clear whether it would even be feasible to identify these members using UBH's appeals data system because that system does not contain the same fields as the ABD data used to generate the class list and does not necessarily capture information about the decision rationale (e.g. lack of medical necessity) or the guideline used in reaching the appeal determination. UBH is continuing to look into this feasibility issue and will be prepared to provide further information at the August 6 hearing.

### 3. Members of Health Benefit Plans Not Governed By ERISA.

Neither of the databases used to prepare the class list at Exhibit 255 contains a field tracking whether ERISA applies to a given benefit plan or benefit request. *See* Trial Ex. 897-003. Accordingly, it was not possible to automatically limit the data set to ERISA-governed plans, and some entries for members in plans not governed by ERISA remained in the datasets used to generate the class list. Before the class administrator issued the class notices, the parties engaged in an extensive process, pursuant to a detailed stipulation and protocol, to attempt to identify and exclude from the class list individuals whose plans the parties could agree are not governed by ERISA. *See* Ex. A (Stipulation Concerning Discovery Relating To Whether Class Members' Plans Are Governed By ERISA) (Feb. 8, 2017) ("ERISA Stipulation"). Based on that process, and a supplemental stipulation identifying members of plans of plans the parties agreed were not governed by ERISA, the class administrator removed entries for members in plans that are not governed by ERISA before issuing the class notice.

It has since come to UBH's attention that some individuals remain on the class list whose

benefit coverage requests were not governed by ERISA because, for example, their plan was sponsored by a state or local government, but whose plans were not flagged pursuant to the ERISA Stipulation.[7] UBH will be identifying those individuals and the parties will meet and confer regarding whether they are in fact not members of the certified classes in this case, as the parties did under the ERISA Stipulation. Although class notice was sent to these individuals, the parties believe there is no need to notify them of their non-class-member status because, among other things, the class notices did not state the recipients *were* class members, but rather provided the information necessary for recipients to determine *whether* they were class members. *See, e.g.*, ECF No. 279-1 at 4 ("If you fall within the definition of the class set forth above, you are a class member.").

### 4. Additional Three Members Added To Class List.

Three individuals who are not on the class list but are class members based on their initial denials reached out to Plaintiffs' counsel.[8] UBH agrees these three individuals are class members. The class administrator has been or will be notified to add them to the class list. The parties are working together to determine whether any other individuals should be added to the class list for the same reasons as these three people.

### B.   Determining Membership in the Texas State Mandate Class

"[T]o the extent that the Court finds that the Texas class members may remain in the State Mandate Class," the Court now "seeks additional guidance as to how the review of denial letters should be conducted so as to ensure that these class members are included on the class list

---

[7] Plaintiffs' position: Although UBH has declined to estimate the number of affected individuals, Plaintiffs have no reason to believe there are large numbers of non-ERISA plans remaining on the list. In the parties' meet and confer discussions, UBH indicated that it had identified one such plan.

UBH's Position: UBH is evaluating the class list to identify additional non-ERISA plans, a process which requires manual review and searching of the voluminous class list. While UBH is not presently able to accurately estimate the ultimate results of that process, UBH will be prepared to update the Court on this issue at the August 6 hearing.

[8] Plaintiffs' counsel has fielded nearly 1,000 calls from class members, and hundreds of calls from other individuals with inquiries regarding potential class membership and similar inquiries.

7

that will be used going forward to implement the Court's remedies order." (Order re Further Remedies Proceedings at 3.) The Parties set forth their respective positions below.

### 1. **Plaintiffs' Position**

As to Texas class members, the Court has ruled that the State Mandate Class includes, by definition:

> Any member of a fully-insured health benefit plan governed by both ERISA and the state law of . . . Texas, whose request for coverage of residential treatment services for a substance use disorder was denied by UBH, in whole or in part, within the Class period, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines, and not upon the level-of-care criteria mandated by the applicable state law. With respect to plans governed by Texas law, the Wit State Mandate Class includes only denials of requests for coverage of substance use disorder services that were sought or received in Texas. The Class period for the Wit State Mandate Class includes denials governed by Texas law that occurred between May 22, 2011 and June 1, 2017.

Findings of Fact and Conclusions of Law ("FFCL") (ECF No. 418) at 8-9. The Class List contains sufficient information to identify the Texas class members, with two exceptions: (1) The Class List, in its current form, does not reflect the provider's location; and (2) for denials issued before January 1, 2014, the Class List does not include a field identifying the level of care criteria on which the determination was based. UBH added that field to its LINX database starting in January 2014, but nevertheless now contends that the field is not sufficient evidence of the grounds on which the determination was made. This information can easily be supplemented.

First, UBH admits, below, that its databases do contain a field identifying the provider's location. UBH can thus extract that data from its database and add it to the class list for the 840 individuals potentially included in the class.[9] Identifying individuals who received services outside of Texas is then a simple matter of sorting by state and removing denials relating to non-Texas providers – a task that can be completed in minutes once the data is available.

---

[9] To be clear, this information must be produced to Plaintiffs as well since members may be removed from the class list based upon it.

8

Second, UBH should collect and review the written notification of denial for each claim left on the list to determine whether coverage was "denied by UBH, in whole or in part . . . based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines, and not upon the level-of-care criteria mandated by the applicable state law," as provided in the Class Definition. FFCL (ECF No. 418) at 8-9. In other words, UBH will determine whether the denial rationale cites a UBH Guideline (whether an LOCG or CDG[10]); if it does, the claim meets the class definition.[11]

UBH estimates, below, that it will take UBH three days to collect the letters, and another one to two days to review them. UBH would then produce to Plaintiffs a list of the individuals

---

[10] UBH argues, below, for the first time that whether it violated Texas law by using its CDGs instead of the TDI Criteria depends on whether the CDGs incorporate the LOCGs. UBH is incorrect. UBH violated ERISA with respect to the State Mandate Class by using criteria other than the ones required by state law. *See* FFCL, ECF No. 418, at 88 ("Plaintiffs have demonstrated by a preponderance of the evidence that during the class period UBH violated Texas law by applying its own Guidelines to claims for benefits that should have been decided under TDI Criteria."). The CDGs were not the correct criteria, whether they incorporated the LOCGs or not.

[11] UBH also includes in its section, below, argument on whether the Texas State Mandate class should include individuals whose claims were denied based on *both* the Texas criteria and the UBH Guidelines. But the class definition has always stated that the State Mandate Class includes any denial "based, in whole **or in part**" on the UBH Guidelines rather than the state-mandated criteria. Plaintiffs thus disagree with UBH's arguments, but do not believe this filing is the place to re-hash those long-settled issues. Plaintiffs merely note that this is why the "Guid_Cd" field in the data UBH has produced – which shows that UBH did use its own Guidelines in numerous cases – is evidence both of the substantive violation and that there are at least some Texas members in the State Mandate Class. UBH argues below that testimony of Frances Bridge "contradict[s]" this point. Far from it. Ms. Bridge testified that, if the "Guid_Cd" field refers to a Level of Care Guideline or Coverage Determination Guideline, that means UBH *did* apply one of those Guidelines. *See* Tr. Ex. 903 (F. Bridge Deposition Testimony) at -0007 ("[T]hese were the clinical guidelines used to make the benefit determination that would be recorded. . . . Q. And so, if a benefit determination was made using the coverage determination guidelines, the coverage determination guide would be entered here? A. That's what should be entered; yes. Q. And if a determination was made using the level of care guidelines, then the level of care value would be entered in this field? THE WITNESS: That would be the practice of what should be entered in that place; yes."). It is a separate question whether UBH *also* applied the TDI guidelines in adjudicating a given request for coverage. The testimony UBH cites below pertains only to that latter question.

9

JT. SUBMISSION RE CLASS LISTS
CASE NOS. 3:14-CV-02346-JCS; 3:14-CV-05337-JCS

UBH proposes to remove from the class list, along with evidence that UBH applied the mandated Texas criteria in making that claim determination. As Plaintiffs understand the process, anyone UBH did *not* so identify would remain in the State Mandate Class.

If, after meeting and conferring, the parties cannot reach agreement on whether to remove members from the class list, those disagreements can be presented to the Court.

### 2. **UBH's Position**

In its Findings of Fact and Conclusions of Law, the Court found "UBH violated Texas law at some point during the class period by applying its own CDGs rather than the TDI [Texas Department of Insurance] Criteria," but found that the evidence "does not establish how long the violation lasted or which CDGs UBH applied." (FFCL ¶ 167.) On May 3, 2019, UBH moved to decertify the portion of the *Wit* State Mandate Class whose benefit decisions were governed by Texas law. The Court has not yet ruled on whether the Texas class members may remain in the State Mandate Class. In the event that the Court does not decertify the Texas portion of the State Mandate Class, Plaintiffs have stipulated and the Court has ordered that class membership is limited to members of fully-insured health benefit plans governed by both ERISA and Texas law, who received residential treatment for substance use disorders from a provider located in Texas, and whose benefit determinations were "based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines, *and not upon the level-of-care criteria mandated by the applicable state law*." (Jt. Mot. to Amend Class Definitions, ECF No. 279 at 1 (emphasis added); Order Regarding Supp. Class Ntc., ECF 281 at 1 (emphasis added).) The current class list may be over-inclusive with respect to the Texas portion of the State Mandate Class because it may include members whose benefit determinations were made using the TDI criteria and it may include members who received treatment outside of Texas.

As UBH has explained in its motion for class decertification, Plaintiffs did not offer class-wide evidence of a violation of Texas law for all class members for the entire class period. (*See* ECF No. 425 at 14-15; ECF No. 433 at 6-8.) The evidence introduced at trial demonstrated no typicality or commonality with respect to the Texas law claims brought by the State Mandate

Class because the only class representative for the *Wit* State Mandate class lived in Illinois, received treatment in California, and never filed a claim that required use of the TDI Criteria, and because Plaintiffs offered no evidence of any class members whose benefit decisions required use of the Texas criteria, but where the Texas criteria was not used. *Id.* Plaintiffs' burden on this issue cannot be shifted to the remedy phase because Plaintiffs must prove class-wide liability on behalf of the State Mandate Class with respect to a violation of Texas law before being entitled to any relief through reprocessing or otherwise. *Id*.

To the extent the Court declines to decertify the Texas portion of the *Wit* State Mandate Class, the following additional steps will be required to identify members of this class.

First, UBH would need to supplement the data in the class list for the 840 individuals identified on Exhibit 255 who were members of fully-insured benefit plans governed by Texas law and who received a clinical adverse benefit determination for a request for coverage of residential treatment for a substance use disorder to include additional data fields showing the location of the treating provider associated with the adverse benefit determination at issue. UBH would then filter the list of 840 individuals to include only those whose adverse benefit determinations are related to treatment by providers located in the State of Texas.

Second, UBH would need to individually pull the adverse benefit determination letter for each remaining member on the Texas State Mandate Class list (*i.e.* members of fully insured plans governed by Texas law who were denied coverage for substance use residential treatment in Texas during the class period). Assuming that two-thirds of the 840 adverse benefit determinations involved treatment provided or sought to be provided in Texas, UBH estimates this would take approximately 90 hours to complete. Decl. of Ngoc Han S. Nguyen ISO UBH Opening Supp. Remedies Br., ¶¶ 18-20.

Third, UBH would need to manually review the benefit determination letters for each adverse benefit determination at issue to determine whether UBH applied its Level of Care or Coverage Determination Guidelines in making any of the benefit decisions. This is necessary because Plaintiffs introduced no evidence at trial of any instance when UBH applied its Level of

11

1 Care or Coverage Determination Guidelines in place of the TDI Criteria for a coverage decision
2 involving a member of a fully-insured health benefit plan governed by both ERISA and Texas
3 law who received residential treatment for substance use disorder in Texas.[12] Again, assuming
4 that two-thirds of the 840 adverse benefit determinations require manual review, UBH estimates
5 that it would take approximately 45 hours to manually review the benefit determination letters
6 for this purpose. Nguyen Decl., ¶¶ 21–22.

Fourth, UBH would prepare and send to Plaintiffs a list of the members UBH contends should be excluded from the State Mandate Class based on its review of the individual administrative records, along with evidence showing that UBH applied the TDI criteria in making benefit decisions for those members. To the extent the parties cannot agree on exclusion for one or more putative class members, the parties would present their respective positions to the Court for determination.

UBH anticipates that the parties will not agree on multiple issues with respect to determining membership in the Texas portion of the state mandate class, and will require the Court's involvement. These include, but are not limited to, whether the State Mandate Class includes Texas members whose denial letters cite both the TDI criteria and UBH's Coverage Determination Guidelines ("CDG"). Plaintiffs argue that a member whose denial letter cites both the TDI Criteria and a UBH CDG is necessarily part of the class. But, as noted above, the Texas

---

[12] Plaintiffs' argument that the "Guid_Cd" field in the data drawn from UBH's LINX database "shows that UBH did use its own Guidelines in numerous cases" governed by Texas law ignores, and is directly contradicted by, the unrefuted trial evidence. Trial Tr. 1493:2-15 (Bridge) (testifying that UBH's LINX and ARTT systems do not capture "whether a non[-]UBH guideline was applied" and that information indicating "whether UBH utilized guidelines written by the Texas Department of Insurance" is not "captured in the report"). Plaintiffs misleadingly quote the testimony of Ms. Bridge to argue that the "Guid_Cd" field in UBH's LINX system somehow proves that UBH applied some other criteria, and not the TDI criteria. To the contrary, Ms. Bridge's testimony confirms that the TDI Criteria is *not an available option* in that field of UBH's LINX system. Trial Ex. 903-0007 (Bridge Dep.) (testifying that the only "valid values for the field are "Best Practice, Coverage Determination, Level of Care, Psychological Testing, and Supplemental and Measurable"). The fact that a UBH medical director did not select a non-existent option in UBH's database is not evidence that UBH did "not [rely] upon the level-of-care criteria mandated by" Texas law. *See* Order Regarding Supp. Class Ntc., ECF 281 at 1.

1  portion of the State Mandate Class is limited to individuals whose request for benefits were
2  reviewed using a UBH guideline in place of the TDI criteria. (Order Regarding Supp. Class Ntc.,
3  ECF 281 at 1 (the state mandate class includes individuals who, among other things, had their
4  requests for benefits "based upon UBH's Level of Care Guidelines or UBH's Coverage
5  Determination Guidelines, *and not* upon the level-of-care criteria mandated by the applicable
6  state law.") (emphasis added). And the Court did not find that UBH violated Texas law by
7  applying a CDG *in addition to* the TDI criteria. The Court's liability determination (which UBH
8  disputes) found that "UBH violated Texas law at some point during the class period by applying
9  its own CDGs *rather than the TDI Criteria*." (FFCL ¶ 167(emphasis added).) Moreover,
10 "Plaintiffs challenge [the diagnosis-specific] CDGs only to the extent they incorporate the Level
11 of Care Guidelines" (ECF No. 392 at 5, Pls.' Post-Trial Br.), the Court has not yet determined
12 whether Plaintiffs satisfied their burden to prove such incorporation, and the Court made no
13 findings regarding any other aspect of those CDGs. Plaintiffs did not offer any evidence on the
14 impact of any purported "incorporation" of the LOCGs into a CDG when the TDI Criteria –
15 which are themselves level of care criteria – were also cited. To the extent that a benefit
16 determination letter cites both the TDI Criteria and a diagnosis-specific CDG, there is *no*
17 *evidence whatsoever* that the level of care determination was "based on" a portion of the CDG
18 challenged in this case.[13]

---

[13] As with all class members, for the Texas portion of the State Mandate Class, UBH contends that consistent with the limitations imposed by ERISA and the evidence in this case, reprocessing of claims must proceed, if at all, upon confirmation from each class member that he or she is entitled to reprocessing because he or she: (1) received the same treatment with the same provider at the same level of care that was the subject of the benefit decision at issue; (2) was billed for those services; (3) did not assign rights to benefits to any other party; (4) did not already receive benefits for the same service from other insurance (including a secondary insurer); and (5) did not already receive benefits for the same service through an administrative appeal or separate litigation

13

| | |
|---|---|
| Dated: May 15, 2020 | ZUCKERMAN SPAEDER LLP |
| | /s/ Caroline E. Reynolds |
| | Caroline E. Reynolds (admitted *pro hac vice*) |
| | Adam B. Abelson (admitted *pro hac vice*) |
| | D. Brian Hufford (admitted *pro hac vice*) |
| | Jason S. Cowart (admitted *pro hac vice*) |
| | |
| | PSYCH-APPEAL, INC. |
| | Meiram Bendat (Cal. Bar No. 198884) |
| | |
| | *Counsel for Plaintiffs and the Classes* |
| | |
| Dated: May 15, 2020 | CROWELL & MORING LLP |
| | |
| | /s/ Jennifer S. Romano |
| | Jennifer S. Romano |
| | April N. Ross |
| | Andrew Holmer |
| | |
| | *Counsel for Defendant* |
| | *United Behavioral Health* |

**FILER'S ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

Dated: May 15, 2020                                                                 /s/ Caroline E. Reynolds
                                                                                                    Caroline E. Reynolds