PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs and the Classes*
*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br>Action Filed: May 21, 2014<br><br><br>**DECLARATION OF MARC J. FISHMAN IN SUPPORT OF PLAINTIFFS' RESPONSE TO UBH'S SUPPLEMENTAL REMEDIES BRIEF** |
| GARY ALEXANDER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-05337-JCS<br>Action Filed: December 4, 2014 |

I, MARC J. FISHMAN, declare and state as follows:

1. I am over the age of 18 and competent to make this declaration. I make this declaration in support of Plaintiffs' Response to UBH's Supplemental Remedies Brief. I have personal knowledge of the matters stated in this declaration, and I could and would testify competently about them if called upon to do so.

2. I am an addiction psychiatrist and addiction medicine specialist, and have been engaged for 28 years in clinical care, teaching, scholarship, and advocacy for patients and improving treatment. I have extensive experience in behavioral health treatment, and particularly with respect to substance use disorders ("SUD"), from the perspectives of clinical care, administration, and research.

3. One of my particular areas of expertise is in patient treatment matching and placement criteria. I have been closely involved with the American Society of Addiction Medicine's efforts in the development and refinement of *The ASAM Criteria* for almost two decades. I served as a co-editor for the most recent editions of *The ASAM Criteria* (The ASAM Criteria, 3rd Edition, 2014, and 2nd Edition- Revised, PPC2-R, 2001), and was the chief editor for the ASAM Patient Placement Criteria Supplement on Pharmacotherapies for Alcohol Use Disorders. I am a member of the ASAM's Steering Committee for *The ASAM Criteria*, and chair the Steering Committee's Adolescent Workgroup. I have also served on the 2015 Guideline Committee that authored the ASAM National Practice Guideline for the Use of Medications in the Treatment of Addiction Involving Opioid Use and on the 2020 Focused Update Guideline Committee.

4. I testified on behalf of the Plaintiffs in the above-referenced case at the trial in October 2017, and the Court accepted my testimony as an expert.

5. I understand that UBH asserts it has adopted *The ASAM Criteria* as its standard criteria for making medical necessity determinations with respect to substance use disorder treatment.

6. I have reviewed UBH's Behavioral Clinical Policy: ASAM Level of Care 3.1 and 3.3 Coverage Criteria, Document Number: BH727ASAMBCP_112019, Effective Date:

November 18, 2019 (the "Policy"), which states that "Level 3.1 services at this time are not a covered benefit" and that "Level 3.3 services are … excluded from the substance use disorder residential benefit." *See* Policy at 2. The Policy cites *The ASAM Criteria* in support of those assertions. I understand that to mean that UBH is taking the position that *The ASAM Criteria*, as a clinical matter, supports excluding from coverage services at Levels 3.3 and 3.1. Nothing could be further from the truth.

7. By declaring Levels 3.3 and 3.1 ineligible for coverage, UBH is rejecting a vital element of *The ASAM Criteria*.

8. As *The ASAM Criteria* expressly notes:

> ***All*** Level 3 programs serve individuals who, because of specific functional limitations, need safe and stable living environments and 24-hour care . . . Such services are community-based rather than hospital based services, although they might be housed in a hospital. The living environments may be housed in the same facility as the treatment services, or they may be in separate facilities that are affiliated with the treatment provider . . . The sublevels within Level 3 exist on a continuum ranging from the least intensive residential services to the most intensive medically monitored intensive inpatient services. Sublevels of Level 3 programs, however, are not distinguished by the number of hours of services. Indeed, Level 3 always has consisted of a range of intensities of service . . . While the duration of treatment varies with the severity of an individual's illness and his or her response to treatment, the length of service in clinically managed Level 3 programs tends to be longer than in the more intensive medically monitored and medically managed levels of care.

*See* Trial Ex. 662 at 662-0240.

9. Clinically-managed levels of residential care (Levels 3.5, 3.3, and 3.1) are integral and essential components of a full continuum of care for SUD treatment.

10. Level 3.3 services are required for extended care for patients whose cognitive difficulties make them less responsive to the characteristic programming offered and pace of change anticipated in more typical Level 3.5 programs. Such patients need a slower pace of treatment because of mental health problems or reduced cognitive functioning (Dimension 3) or because of the chronicity of their illness (Dimensions 4 and 5).

11. *The ASAM Criteria* notes that "Level 3.3 program services may be offered in a (usually) freestanding, appropriately licensed facility located in a community setting or a specialty unit within a licensed health care facility. . . ." *See* Trial Ex. 662 at 662-0245.

12. Level 3.1 programs offer at least 5 hours per week of low-intensity treatment of substance-related disorders (or as specified by state licensure requirements). Treatment is directed toward applying recovery skills, preventing relapse, improving emotional functioning, promoting personal responsibility and reintegrating the individual into the worlds of work, education and family life. The services provided may include individual, group and family therapy; medication management and medication education. Level 3.1 services are often offered as step down from higher intensity residential services, or as step-up form outpatient services.

13. Level 3.1 services may be offered by any licensed residential treatment center. *The ASAM Criteria* expressly notes that "Level 3.1 program services may be offered in a (usually) freestanding, appropriately licensed facility located in a community setting" and that "Level 3.1 is not intended to describe or include sober houses, boarding houses, or group homes where treatment services are not provided." Trial Ex. 662 at 662-0245.

14. One of the rationales UBH gives for non-coverage is lack of clinical evidence, claiming that "There are no well-designed trials or studies published within the past 5 years addressing clinically managed residential care for substance use disorder treatment" and that "There are no systematic reviews or meta-analyses published within the past 5 years addressing clinically managed residential care for substance use disorder treatment." Policy at 2 ("Clinical Evidence").

15. These statements are misleading and inconsistent with *The ASAM Criteria*. First of all, UBH has already acknowledged, by its coverage of Level 3.5 (Clinically Managed High Intensity Residential Treatment for Adults and Clinically Managed Medium Intensity Residential Treatment for Adolescents), that generally accepted standards of care include clinically managed residential care for SUD. Second, the very notion that clinical management in SUD care has no standing is absurd, as most episodes of SUD care delivered in the U.S., and covered by UBH

(whether outpatient or residential) are clinically managed, as opposed to medically monitored or medically managed.

16. The Policy's invocation of the standard of recent trials, systematic reviews, or meta-analyses as the threshold of clinical evidence, is spurious. First of all, the treatment guidelines and delineation of the appropriate levels of care contained in *The ASAM Criteria* constitute an articulation of the generally accepted standards of care, supported both by broad converging empirical evidence, but also by expert consensus, and principals of practice. They do not rely on any one specific study, and certainly not with any time-delineated limitation, for every level of care and every treatment principle. This is consistent with the constitution and evolution of standards of care throughout all medical and clinical care. To hold any particular level of care to the standard of recent trials, systematic reviews, or meta-analyses, would mean that the entire enterprise of SUD treatment, including all the levels of care that UBH does cover, would be stymied.

17. In any event, UBH is incorrect that the effectiveness of these levels of care have not been studied. Indeed, my own research group presented a study at a scientific conference in 2017 regarding positive outcomes of Level 3.3 treatment, although the work has not yet been submitted for publication.

18. Another rationale UBH gives for non-coverage is that the residential levels of care in question are alleged to be the same as or similar to settings, such as sober living or recovery housing, that provide residential support without the requirements for professional treatment: "Sober houses, boarding houses, halfway houses, group homes, transitional living, and other supported living environments are excluded from coverage." Policy at 2.

19. This statement reflects a conflation of the treatment levels of care in question with recovery housing, which is a recovery support service, not a treatment level of care. While recovery housing and Level 3.1 do share some common elements (*e.g.,* ". . . a need to provide a safe and stable living environment to stabilize and develop recovery skills. . ."), Level 3.1 also adds professional treatment services and clinically monitored structure, supervision and therapeutic programming.

20. Although there actually is clinical evidence to support recovery housing as a significant intervention in treating SUD, Level 3.1 is not the same as recovery housing. Sober houses, boarding houses, transitional living are examples of recovery housing, classified as recovery support services, rather than treatment levels of care. But both level 3.3 and level 3.1 are defined as treatment levels of care, where professional treatment services are provided as part of the requirements of their standing and certification. Level 3.1 is not intended to describe or include sober houses, boarding houses or group homes where treatment services are not provided, as UBH's Policy seems to contemplate. Additionally—and most notably—UBH disregards that, under *The ASAM Criteria*, Level 3.1, like any other sub-level of residential treatment, may be provided by any suitably licensed residential treatment facility, and that facilities offering higher intensity residential services may offer lower intensity services.

21. Another of UBH's rationales for non-coverage is lack of state certification: "Level 3.1 services at this time are not a covered benefit; these services are currently not licensed or accredited by most state or non-governmental agencies." Policy at 2.

22. Many states do have regulatory standards and licensure for Levels 3.3 and 3.1, including Maryland, where I practice. For example, Maryland Treatment Centers, where I serve as Medical Director, operates a program (Mountain Manor – Sykesville) that is licensed to provide services from Levels 3.5 to 3.1 in a single facility, and we do so on a seamless, integrated continuum of care that allows for patients to progress from one level of intensity to another, without disruption.

23. Another UBH rationale is the relationship of Level 3.3 to cognitive deficits: "Level 3.3 services are designed specifically to treat patients with cognitive deficits, either developmental or of acute onset (e.g., traumatic brain injury, stroke), and therefore excluded from the substance use disorder residential benefit." Policy at 2.

24. UBH's rationale does not constitute a legitimate reason for excluding treatment at this of level of care. Level 3.3 services are not intended to provide primary treatment for developmental disabilities, but rather to address situations where a co-morbid cognitive deficit complicates treatment for a primary diagnosis of substance use disorder. The presence of a co-

occurring condition like autism, Down's Syndrome, or cognitive deficits from a traumatic brain injury, for example, may mean that treating the substance use disorder entails different approaches and a different timeline than when those conditions are not present. Likewise, in many cases, substance use itself may cause cognitive and processing difficulties leading to the need for Level 3.3.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of June, 2020, in Lutherville, Maryland

*/s/ Marc Fishman*
Marc Fishman MD