PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs and the Classes*
*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>          Defendant. | Case No. 3:14-CV-02346-JCS<br>Action Filed: May 21, 2014<br><br><br><br>**PLAINTIFFS' REPLY IN SUPPORT OF SUPPLEMENTAL REMEDIES BRIEF** |
| GARY ALEXANDER, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>          Defendant. | Case No. 3:14-CV-05337-JCS<br>Action Filed: December 4, 2014 |

# TABLE OF CONTENTS

**Page**

I.  Topic 1: Impact of Certifying the Classes Under Rules 23(b)(1), (b)(2) and (b)(3) .......... 1

    A.  Impact on People Who Opted Out ........................................................................ 2

        1.  The Court Allowed Class Members to Opt Out of the Case as a
            Whole, Not Just Retrospective Relief ........................................................ 3

        2.  The Court Had Discretion to Allow Class Members to Opt Out of
            the Case as a Whole ................................................................................... 4

        3.  The Risks UBH Touts as Posed by the Opt-Outs Are Purely
            Academic .................................................................................................... 7

    B.  Certification Under All Three Subsections of Rule 23(b) Did Not Have Any
       Impact on Class Members Who Did Not Opt Out ................................................. 7

    C.  The Court Need Not Decide the Res Judicata Effect of its Judgment, and
       UBH's Arguments are Wrong in Any Event ....................................................... 10

II. Topic 5: Pre- and Post-Judgment Interest ........................................................................ 11

    A.  UBH has not established that "substantial evidence" requires deviating from
       the 28 U.S.C. § 1961 rate ..................................................................................... 11

    B.  The Court has authority to order payment of interest on any wrongful
       denials reversed through reprocessing ................................................................ 13

    C.  UBH's decertification gambit fails for the same reasons its prior ones failed ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*,
   938 F.3d 1170 (11th Cir. 2019) ........................................................................................ 8, 16

*Adair v. Town of Cicero*,
   Case No. 18 C 3526, 2019 WL 2866708 (N.D. Ill. July 3, 2019) ............................................ 9

*Anthuis v. Colt Indus. Operating Corp.*,
   971 F.2d 999 (3d Cir. 1992) .................................................................................................. 14

*Blankenship v. Liberty Life Assur. Co. of Bos.*,
   486 F.3d 620 (9th Cir. 2007) .................................................................................... 11, 12, 13

*Blanton v. Anzalone*,
   813 F.2d 1574 (9th Cir. 1987) ............................................................................................... 13

*Brown v. Ticor Title Ins. Co.*,
   982 F.2d 386 (9th Cir. 1992) ............................................................................................... 5, 6

*Carlotti v. ASUS Computer Int'l*,
   Case No. 18-cv-03369-DMR, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) .......................... 9

*Dickey v. Advanced Micro Devices, Inc.*,
   Case No. 15-cv-04922-HSG, 2019 WL 251488 (N.D. Cal. Jan. 17, 2019) .............................. 9

*Finkel v. Robco Elec. Corp.*,
   No. 11-CV-2353 NGG, 2012 WL 3306963 (E.D.N.Y. Mar. 30, 2012) ................................... 13

*Fotta v. Trs. of United Mine Workers of Am., Health & Ret. Fund of 1974*,
   165 F.3d 209 (3d Cir. 1998) ........................................................................................... 14, 16

*Frank v. United Airlines, Inc.*,
   216 F.3d 845 (9th Cir. 2000) .................................................................................................. 5

*Grosz-Salomon v. Paul Revere Life Ins. Co.*,
   237 F.3d 1154 (9th Cir. 2001) ............................................................................................... 12

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) ............................................................................................... 12

*Lemon v. Int'l Union of Operating Eng'rs*,
   216 F.3d 577 (7th Cir. 2000) .................................................................................................. 9

*Lutheran Med. Ctr. of Omaha, Neb. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan*,
   25 F.3d 616 (8th Cir. 1994) .................................................................................................. 14

*Melendres v. Maricopa Cty.*,
    897 F.3d 1217 (9th Cir. 2018) ................................................................ 6

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ..................................................................... 2, 7

*Raffin v. Medicredit, Inc.*,
    No. CV 15-4912-GHK (PJWx), 2017 WL 131745 (C.D. Cal. Jan. 3, 2017) .......................... 7

*Short v. Cent. States, Se. & Sw. Areas Pension Fund*,
    729 F.2d 567 (8th Cir. 1984) ................................................................ 14

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
    322 F.3d 1064 (9th Cir. 2003) ............................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................... 5

*Wise v. Glickman*,
    257 F. Supp. 2d 123 (D.D.C. 2003) .......................................................... 10

*Zakinov v. Blue Buffalo Pet Prods., Inc.*,
    Case No. 17-cv-01301-AJB-WVG, 2018 WL 1426932 (S.D. Cal. Mar. 22, 2018) ................. 10

**Statutes**

28 U.S.C. § 1961 ......................................................................... 11, 12, 13, 14

29 U.S.C. § 1132(a)(3) ......................................................................... 13

**Rules**

Fed. R. Civ. P. 23 ...................................................................... *passim*

**Treatises**

3 Newberg on Class Actions § 9:51 (5th ed.) ..................................................... 6

On March 24, 2020, the Court requested additional briefing and information on six topics relating to Plaintiffs' pending request for remedies. Order re Further Remedies Proceedings (Mar. 24, 2020), *Wit* ECF No. 448 ("Order"). Pursuant to the briefing schedule ordered by the Court, *see Wit* ECF No. 450, Plaintiffs filed an opening brief on Topics 1 and 5 on May 15, 2020, *see Wit* ECF No. 452 ("Pls.' Suppl. Br."), and UBH responded to that brief on June 15, 2020, *see Wit* ECF No. 457 ("Def.'s Resp."). Plaintiffs now submit the following Reply.

**I.      Topic 1: Impact of Certifying the Classes Under Rules 23(b)(1), (b)(2) and (b)(3).**

UBH's response to Topic 1 is highly misleading. It is also legally wrong. UBH's argument starts from the incorrect notion that the Court lacked the authority to permit class members to opt out of the action with respect to prospective remedies, thus making the opt-out notices ineffective in some sense. UBH then raises the specter that the people who opted out of this action (but are still somehow part of the class) might one day obtain injunctive relief that conflicts with this Court's as-yet unissued remedies order, and argues that this mere possibility means the injunctive relief Plaintiffs seek is not "uniform," and that the classes were never properly certified under Rules 23(b)(1) and (b)(2) and should thus be decertified. UBH tops its argument off by declaring (without support) that prospective relief is barred to a Rule 23(b)(3) class, thus conveniently closing off all avenues for these certified classes to obtain a prospective injunction that would protect them from future abuses by UBH.

No part of UBH's dizzying web of arguments has merit. The Court properly certified the classes under Rules 23(b)(1), (b)(2) and (b)(3) because the classes met the requirements of each subsection, and the Court rightly drew no distinctions as to the relief the classes could pursue because all the relief Plaintiffs sought is available under each subsection. The Court then requested additional briefing on whether the opt-right required by Rule 23(b)(3) should be limited to specific remedies. After carefully considering the parties' arguments, the Court concluded that the efficient management of the action called for class members to be permitted to opt out of the case as a whole, rather than proceeding on a piecemeal basis. The Court accordingly authorized class members to opt out, and only 139 people—out of the more than 60,000 notices that were disseminated—exercised that right.

The Court had more than enough discretion under Rule 23 to manage the class action in the way that it did. The people who opted out are no longer parties to this action, and just like any other non-party, the mere fact that an injunction might affect them does not mean the injunction is not uniform and indivisible *as to the class*—which is all that Rules 23(b)(1) and (b)(2) require.

For class members who did not opt out, nothing has changed since the Court certified the classes. The classes still satisfy all of the elements of all three subsections of Rule 23(b), and the relief they seek is still available to them under all three subsections. UBH urges the Court to second-guess its earlier decisions, reinstate the opt-outs as class members (against their will), and start slicing and dicing the classes and the relief it awards to them based on distinctions that do not even exist. The Court should not do so. The Court properly exercised its discretion to manage this action, and attempting to unwind those decisions now would only cause confusion and uncertainty, the very problems this Court sought to avoid in its well-thought out class certification opinion.

### A.   Impact on People Who Opted Out

People who opted out of the classes are non-class members—and nonparties to this case. *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810–11 (1985) (if a plaintiff takes advantage of the opportunity to opt out, "he is removed from the litigation entirely").[1] They are no different than other non-class members who were treated similarly by UBH (e.g., ERISA beneficiaries whose claims were denied the day after the class period ended, or non-ERISA beneficiaries whose claims were denied during the class period). They have the same right to pursue individual relief as other non-class members. The fact that someday, they might do something that might conflict with something this Court has done or will do does not in any way

---

[1] UBH accuses Plaintiffs of "misleadingly" citing a treatise stating this proposition because the statement was made in a section on Rule 23(b)(3), Def.'s Resp. at 5 n.2, but it is black-letter law that the effect of opting out of a class action is to become a non-party to that case. The *consequences* of opting out do not differ based on the subsection of Rule 23(b) under which the class was certified, and UBH does not even try to argue that it does.

undermine class certification or suggest that the remedies sought and obtained by the class are not uniform.

### 1. The Court Allowed Class Members to Opt Out of the Case as a Whole, Not Just Retrospective Relief

To start with, UBH seems unwilling to acknowledge what actually happened in this case: class members *were* allowed to opt out of the case as a whole, not just to exclude themselves from certain remedies. *See, e.g.*, Def.'s Resp. at 1 (asserting that "class members could not ***and did not*** opt out" of "[m]andatory prospective remedies" under Rules 23(b)(1)(A) and (b)(2)) (emphasis added). UBH misleadingly quotes from the Court's order on class notice to make it appear as though the Court "concluded" that "class members effectively cannot opt out" of the prospective relief in this case, *see* Def.'s Resp. at 4:12–15, but in reality, in the quoted passage, the Court was summarizing the ***parties'*** positions on that issue. *See* Order re Joint Mot. for Approval of Notice Plan, *Wit* ECF No. 224 at 9 ("***The parties agree that*** . . . class members effectively cannot opt out, at least as to prospective injunctive relief.") (emphasis added).[2] What the ***Court*** actually ordered could not have been more clear:

> [B]ecause of the manageability problems (and potential confusion) that may arise from giving class members multiple options for opting out of specific remedies, the Court concludes that ***there should be only a single option offered to class members for opting out of the case as a whole***.

*Id.* at 10 (emphasis added).

UBH also incorrectly states that the Class Notice informed class members that "they may be bound by certain prospective remedies '[e]ven if [they] choose to be excluded from the lawsuit.'" Def.'s Resp. at 4:16–18. The Class Notice said no such thing. In fact, it said exactly

---

[2] Plaintiffs' position then was the same as it is now: that prospective injunctive relief will apply across-the-board to all UBH beneficiaries, whether the Court permitted opt-outs or not:

> The new Guidelines the Court will impose will not only benefit class members (whose claims UBH denied), but also many, many non-class members (such as those who may make claims in the future). Allowing class members to "opt out" of the case as a whole—as opposed to only specified remedies—would simply put them in the same position, with respect to prospective relief, as non-class members.

Pls.' Reply Mem. of P. & A. Re: Opt-Out Procedures at 6, *Wit* ECF No. 218.

the opposite, in bold type, with the word "not" in capital letters: "**IF YOU CHOOSE TO BE EXCLUDED . . . you will NOT be bound by any judgment or settlement release entered in this lawsuit** . . . ." *Wit* ECF No. 279-1 at 4.

To be sure, the notice informed class members that even if they opted out, UBH might apply new, Court-ordered criteria to their future benefit claims. *Id.* ("Even if you choose to be excluded from the lawsuit, if the Court orders UBH to revise its guidelines, UBH may apply those revised Guidelines to your future claims."). But a statement about what UBH "may" do as a practical matter if the Court orders a change to the Guidelines is a far cry from notifying class members that their opt-out requests would not apply to prospective remedies—especially when the immediately preceding sentence proclaimed that they would "**NOT be bound by any judgment**" if they opted out of the class. Instead, that sentence in the Notice merely acknowledged the practical reality that UBH adopts one uniform set of medical necessity criteria, which it uses company-wide (for example, the Level of Care Guidelines it used for its medical necessity-based commercial plans during the class period). Thus, it is likely that UBH ***will*** apply any Court-ordered criteria to entire groups of its members, including people who opted out of the classes and other non-parties, even if UBH is not expressly ordered to do so. But that does not mean those non-parties are class members, and it does not mean that any non-class member can be "bound" by the injunctive relief in any preclusion sense of the term.

**2.   The Court Had Discretion to Allow Class
Members to Opt Out of the Case as a Whole**

The crux of UBH's argument is that, "as a matter of law, class members cannot opt out" of any "relief that may be awarded under sections (b)(1) and (b)(2)." Def.'s Resp. at 4:19–20. While UBH insists that the Court lacked authority to allow class members to opt out of the (b)(1) and (b)(2) classes, and thus simply treats the 139 opt-out requests as though they never happened at all, it is wrong.[3]

---

[3] This logical fallacy is also the basis for UBH's contention—notably made without citation to Plaintiffs' argument—that Plaintiffs supposedly admitted that "the Court can award reprocessing for some class members and not others." Def.'s Resp. at 2:5. Plaintiffs made no such argument. UBH gets there only by disingenuously treating people who opted out as though they are still

4

UBH notably fails to identify any legal authority that *prohibits* a court, as a matter of law, from allowing class members to opt out of a (b)(1) or (b)(2) class. Rule 23 contains no such prohibition; not requiring an opt-out right for such classes is not the same thing as prohibiting it. To the contrary, the Rule does give the Court wide discretion over the management of class actions. Fed. R. Civ. P. 23(d)(1)(E). In this case, on these facts, the Court concluded that piecemeal opt-outs from some remedies, but not all, would cause confusion and manageability concerns. In so doing, the Court properly exercised its discretion to manage this class action.

The *dicta* UBH cites from a handful of cases does not undermine this conclusion. For example, UBH relies on the observation in the *Wal-Mart Stores, Inc. v. Dukes* opinion that Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out." Def.'s Resp. at 4:21–22 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011)). While it is true that the Rule does not expressly provide for (b)(1)/(b)(2) opt-outs, as noted above, the Rule also does not *prohibit* them. Nor did *Dukes* announce any such prohibition: apart from noting that the lack of an express opt-out right in the Rule is why such classes are often called "mandatory," *Dukes* said nothing about a court's discretion to permit opt-outs in (b)(1) and (b)(2) cases in appropriate circumstances.

UBH's Ninth Circuit cases are even more inapposite. *See* Def.'s Resp. at 4–5 (citing *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000), and *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992)). Both decisions addressed claim preclusion, not class certification, in fact patterns where a member of a (b)(2) class that did not permit opt-outs sought to pursue subsequent litigation. *Frank*, 216 F.3d at 851-52; *Brown*, 982 F.2d at 392. Neither case stands for the proposition for which UBH cites them; in particular, neither case presented the question whether courts have the authority, as a matter of law, to ever authorize (b)(1) or (b)(2) class members to opt out. Thus, the *Frank* court's offhand comment that "class members are not allowed to opt out" of a (b)(2) class is, again, no more than *dicta* that applied to a case where the

---

class members. *See id.* at 7:4–6. Plaintiffs seek reprocessing only for class members, not for anyone who is not a class member, including those who opted out.

district court had elected not to allow such opt-out rights. *See* 216 F.3d at 851. The *Brown* court, likewise, did not purport to state any general rule about whether courts could ever permit opt-outs from a (b)(1) or (b)(2) class—notwithstanding UBH's misleading citation of the decision as though it does so. *See* Def.'s Resp. at 5:2–5. Rather, the *Brown* court merely observed that (b)(1) and (b)(2) "do not provide for the ***right*** to opt out," 982 F.2d at 392 (emphasis added), which as noted above, is not the same thing as prohibiting opt-outs, or otherwise limiting the discretion granted to the district court judge by Rule 23.

The only other authority UBH cites is Newberg on Class Actions. Remarkably, however, that treatise actually provides direct support for Plaintiffs' position, and firmly refutes UBH's own argument. *See* Def.'s Resp. at 4–5 (citing 3 Newberg on Class Actions § 9:51 (5th ed.)). Newberg notes that (b)(1) and (b)(2) classes "tend to" prohibit opt-outs, but it does not state or imply that courts are prohibited as a matter of law from allowing class members to opt out of such classes. Quite the opposite, as Newberg explains:

> [C]ourts have on certain occasions permitted class members to opt out of Rule 23(b)(1) or (b)(2) class actions. In so doing, these courts have acknowledged that this is a discretionary decision, not an automatic right as in Rule 23(b)(3) class actions. The courts have found the discretionary authority to lie in Rule 23(d)(1)(E), which permits a court to issue orders that deal with procedural matters similar to those mentioned in the remainder of Rule 23(d)(1).

3 Newberg on Class Actions § 9:51 (5th ed.) (citing cases).

As demonstrated by Newberg, the Court properly exercised its discretion under Rule 23 to allow 139 people to opt out of this case; having done so, there is absolutely no reason for the Court to now attempt to reverse or disregard those opt-outs.[4]

---

[4] UBH inaccurately complains that Plaintiffs "cite no authority" for the argument that opt-outs, like other non-class members, may be affected by injunctive relief without being "bound" by it the way class members are. Def.'s Resp. at 5; *see also* Pls.' Suppl. Br. at 4:8–22. To the contrary, Plaintiffs pointed out that this is a common feature of injunctive-relief classes and cited an example—*Melendres v. Maricopa Cty.*, 897 F.3d 1217, 1219 (9th Cir. 2018)—in which injunctive relief awarded to a class also benefits non-class members. UBH chose not to discuss that case or to try to show why the non-class members who stood to benefit from the injunction awarded in *Melendres* are any different than non-class members here. The fact is, there is no difference.

6

### 3. The Risks UBH Touts as Posed by
### the Opt-Outs Are Purely Academic

UBH's main objection to honoring the opt-outs is its professed concern that one of those people will file a similar case seeking an order requiring UBH to use different medical-necessity criteria than the Court orders in this case. Def.'s Resp. at 5. UBH, however, does not identify a single case in which a person who opted out of this action is actually seeking injunctive relief that would be incompatible with the injunctions Plaintiffs request here. Nearly three years after the opt-out deadline, any such litigation should long since have been filed, and its absence demonstrates that, at this point, concerns about conflicting injunctions have been effectively neutralized by the Court's certification of a (b)(1)(A) class. *See* Order Granting Mot. For Class Cert., *Wit* ECF No. 174 at 41:14–16 ("[C]hallenges to the Guidelines by multiple class members could subject UBH to inconsistent legal obligations with respect to the use of its Guidelines, making certification under Rule 23(b)(1) appropriate.").

In the end, though, UBH's argument lacks legal support because it makes no sense. Those who opt out of a class are no longer class members. *See, e.g.*, *Shutts*, 472 U.S. at 810–11. They are like all other non-class members (e.g., people whose claims were denied after the class period ended). It is true that non-class members might pursue all type of claims and remedies against UBH, but that does not mean that the injunctions Plaintiffs seek are not "uniform" ***as to all class members***.

### B. Certification Under All Three Subsections of Rule 23(b) Did Not Have
### Any Impact on Class Members Who Did Not Opt Out

UBH faults Plaintiffs for failing to separately address the implications of class certification under Rules 23(b)(1), (b)(2) and (b)(3) for those who remain in the classes, Def.'s Resp. at 3, but that is because there are no implications to address. The Court correctly found that the classes met all of the requirements of each subsection. Among other things, it correctly found that Plaintiffs seek only uniform injunctive and declaratory relief, which are remedies available under all three subsections. Thus, there is no reason to subclass or attempt to assign remedies to

7

particular subsections.[5] UBH's arguments to the contrary are convoluted and baseless, stray far afield from the Court's questions, and appear principally designed to complicate a remedies order that can and should be straightforward.

First, UBH is wrong when it contends that the reprocessing remedy Plaintiffs request could not be awarded to the classes if they were certified only under Rules 23(b)(1) or (b)(2). UBH bases this argument on an illogical chain of inaccurate assertions: if the Court lacked authority to permit class members to opt out of the (b)(1)/(b)(2) classes, then the people who opted out are still class members, which means that when Plaintiffs seek reprocessing for class members only and not for those who opted out, Plaintiffs "admit" that "the Court can award reprocessing for some class members and not others," which in turn makes reprocessing non-mandatory and thus, unavailable under Rules (b)(1) and (b)(2). Def.'s Resp. at 2, 6–7. But as discussed above, this tortured argument fails at its first step. The opt-outs were proper, and those people are no longer class members. Plaintiffs seek the same relief for all class members to remedy their prior wrongful denials: an injunction requiring reprocessing. This injunctive remedy is uniform and indivisible (b)(1)/(b)(2) relief.[6]

Nor does the Court's order on class notice, which identified "sound reasons" for treating reprocessing as a (b)(3) remedy when deciding whether to require notice and opt-outs, somehow undermine the fact that reprocessing is an appropriate remedy for the (b)(1) and (b)(2) classes as

_____

[5] The *Raffin* case, on which UBH relies, Def.'s Resp. at 8, does not establish that such slicing and dicing is always required. There, the plaintiff sought to certify a claim for injunctive relief under Rule 23(b)(2), but also sought damages. The Court concluded that it could certify the plaintiff's "claim for injunctive relief under (b)(2) and her claim for monetary relief under (b)(3)." *Raffin v. Medicredit, Inc.*, No. CV 15-4912-GHK (PJWx), 2017 WL 131745, at *10 (C.D. Cal. Jan. 3, 2017). Plaintiffs here do not seek any form of relief (like money damages) that is unavailable under Rules (b)(1)/(b)(2). Given that the injunctive and declaratory relief Plaintiffs seek is available under all three subsections, no such differentiation is required here.

[6] UBH cites a single, out-of-circuit, case in support of the proposition that reprocessing is unavailable under Rule 23(b)(2). Def.'s Resp. at 7 (citing *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1175 (11th Cir. 2019)). Plaintiffs have previously explained why the non-ERISA *Suncoast* case is utterly irrelevant to this ERISA action, and incorporates that explanation here. *See* Pls.' Resp. to UBH's Notice of Recent Authority (Oct. 1, 2019), *Wit* ECF No. 443. UBH made no attempt to address any of the points Plaintiffs made.

well. *See* Def.'s Resp. at 6; Order, *Wit* ECF No. 224 at 10. The Court's decision on notice was largely driven by the fact that Plaintiffs were also seeking surcharge, a monetary remedy, and the Court thought some class members might prefer to press surcharge theories that were different from the class's theory. Order, *Wit* ECF No. 224 at 10. The Court was inclined to treat reprocessing the same way as surcharge, not because it viewed reprocessing as an individualized remedy, but because some class members might "prefer [to opt out to] assert all of their challenges in a single (or different) forum." *Id*. In other words, while the Court identified sound reasons for managing the class action the way it did, those reasons did not include a finding that a reprocessing injunction could not be awarded under (b)(1) or (b)(2). To the contrary, the Court was explaining why class members should be permitted to opt out of the case entirely. *Id.* In its order granting class certification, by contrast, the Court unequivocally found that a reprocessing remedy ***can*** be awarded to a (b)(1)/(b)(2) class. *See* Order Granting Mot. For Class Cert. at 42, 47, *Wit* ECF No. 174.

Second, UBH is equally misguided when it argues that a class certified under Rule 23(b)(3) cannot obtain prospective injunctive relief. Def.'s Resp. at 7. The mere fact that a remedy ***can*** be awarded to a (b)(1)/(b)(2) class does not mean such a remedy can ***only*** be awarded to those classes. UBH cites no authority for such a proposition. To the contrary, courts regularly award such relief to (b)(3) classes. *See, e.g.*, *Dickey v. Advanced Micro Devices, Inc.*, Case No. 15-cv-04922-HSG, 2019 WL 251488, at *2 & n.1 (N.D. Cal. Jan. 17, 2019) (certifying (b)(3) class seeking both monetary and injunctive relief); *Carlotti v. ASUS Computer Int'l*, Case No. 18-cv-03369-DMR, 2019 WL 6134910, at *19 (N.D. Cal. Nov. 19, 2019) (granting preliminary approval of (b)(3) class for settlement with an agreement that provided for injunctive relief in the form of repairs); *Adair v. Town of Cicero*, Case No. 18 C 3526, 2019 WL 2866708, at *2 (N.D. Ill. July 3, 2019) ("[C]ertification under Rule 23(b)(3) is appropriate if the putative class seeks both an injunction and money damages.") (citing *Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 581 (7th Cir. 2000)).

1      In short, Plaintiffs seek uniform remedies on behalf of classes that were properly

2  certified, and the relief Plaintiffs request is available under each of Rule 23(b)'s subsections. The

3  Court should not needlessly complicate its remedies order by belatedly slicing and dicing the

4  classes according to distinctions that, as a legal or practical matter, do not exist.

### C.      The Court Need Not Decide the Res Judicata Effect of its Judgment, and UBH's Arguments are Wrong in Any Event

6      Finally, UBH uses its Topic 1 response to push, yet again, its meritless position on the res

7  judicata effect of a judgment as to "class members who did not opt out." *See* Def.'s Resp. at 3–4.

8  UBH, however, does not (and cannot) contend that the res judicata effect turns in any way on the

9  Rule 23 sub-paragraph(s) under which the class was certified. Thus, UBH's argument is not only

10 non-responsive to the Court's question, it is legally wrong (again), for the same reasons it has

11 been wrong every time before. *See, e.g.*, Pls.' Resp. to UBH's Suppl. Remedies Br., *Wit* ECF No.

12 455 at 2–3. And the new cases UBH cites confirm this reality.

13     In *Wise v. Glickman*, 257 F. Supp. 2d 123 (D.D.C. 2003), the liability theory the court

14 held was precluded was precisely the same as the one asserted in the earlier class action: that the

15 plaintiffs were discriminated against on the basis of race in USDA's response to applications for

16 federal farm credit and benefit programs. *Id*. at 128–29 & 130. In the unpublished case UBH

17 cites, *Zakinov v. Blue Buffalo Pet Prods., Inc.*, Case No. 17-cv-01301-AJB-WVG, 2018 WL

18 1426932 (S.D. Cal. Mar. 22, 2018), the core issue was whether the plaintiff's claim was barred

19 by a prior release—which it plainly was, given the "very broad release language" in the

20 settlement agreement; the court's res judicata analysis flowed directly from the contractual

21 release. *Id*. at *2; *see also id*. at *5 ("The settlement agreement resolved the plaintiffs' common

22 legal claims, provided the plaintiffs redress, as well as released Defendant from any and all

23 claims."). Neither of these decisions suggests that the res judicata effect of a class action in this

24 Circuit reaches farther than the class claims litigated.

25     As for *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064

26 (9th Cir. 2003), it was not even a class action, and so has little if any bearing on the theory for

27 which UBH cites it. In any event, the two sets of claims at issue were identical: that the

28

10

Defendant agency had affected an unconstitutional "taking" when, pursuant to a 1987 Regional

Plan, it prohibited development on certain properties. *Id*. at 1075, 1078. Moreover, UBH fails to

even alert the Court to this salient portion of the Ninth Circuit's analysis: "Often, an as-applied

challenge will not be precluded by an earlier facial challenge because the 'transactional nucleus

of facts' surrounding the enactment of a regulation will be different from the nucleus of facts

involved when that regulation is applied to a particular property." *Id*. at 1080.

## II.    Topic 5: Pre- and Post-Judgment Interest

As the Ninth Circuit has held, in ERISA cases where, as here, a claims administrator has

abused its discretion and violated its fiduciary duties, a district court "may award prejudgment

interest." *Blankenship v. Liberty Life Assur. Co. of Bos.*, 486 F.3d 620, 627 (9th Cir. 2007). As

for the appropriate rate of interest, the standard federal rate under 28 U.S.C. § 1961 applies

unless the defendant proves, by "substantial evidence"—i.e., "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion"—that "the equities of that

particular case require a different rate." *Id.* at 628.

With Plaintiffs having established that class members who secure payments through

reprocessing are entitled to interest on such payments, the Court requested briefing on (1) the

appropriate ***rate*** of interest and (2) whether any class member's plan "explicitly prohibits a court

award of pre- or post-judgment interest on benefits that it has found were improperly denied."

Order at 3–4. UBH barely touches those questions, instead spending the bulk of its Topic 5 brief

(Def.'s Resp. at 8–13) arguing that the Court somehow lacks "authority" to order payment of

interest at all, and seeking class decertification. Plaintiffs will start by addressing the questions

the Court actually asked (*see* § II.A, *infra*), and then refute UBH's non-responsive arguments

(*see* §§ II.B-C, *infra*).

### A.    UBH has not established that "substantial evidence" requires deviating from the 28 U.S.C. § 1961 rate

UBH's sole argument for deviating from the standard federal rate is that "some plans may

mandate" an interest rate lower or higher than the § 1961 rate, or may "prohibit interest

altogether." Def.'s Resp. at 10. While that may pose an interesting theoretical question, the Court

may only entertain it if UBH backs it up by "substantial evidence." *Blankenship*, 486 F.3d at 628. UBH's "evidence," however, is non-existent; UBH failed to identify a single such plan. *See* Pl.'s Suppl. Br. at 5–6 & n.2 (addressing Trial Exhibits 1539 and 1542). In fact, UBH expressly disclaims even being aware of such evidence—despite ample time and even though the Court expressly directed that UBH point to evidence if any exists. Order at 4. UBH concedes that it "has not yet identified a plan that expressly references 'a court award of pre- or post-judgment interest.'" Def.'s Resp. at 10 n.6. There simply is no evidence that even begins to suggest that "the equities" require a rate less than the § 1961 rate.

In fact, the equities weigh overwhelmingly the other way. The class members are tens of thousands of people whose mental health providers determined they needed residential, outpatient or intensive outpatient treatment for substance use disorders and mental health conditions ranging from major depressive disorder to bipolar disorder to drug addiction. Findings of Fact & Conclusions of Law at 2-8 (¶¶ 3–12) (Mar. 5, 2019), *Wit* ECF No. 418. These class members filed claims for coverage at such levels of care with their ERISA plan's administrator, UBH. It owed them the "highest [duties] known to the law," *Johnson v. Couturier*, 572 F.3d 1067, 1082 (9th Cir. 2009), including the fiduciary duty to honor the written terms of their plans and act loyally. Yet, the Court found that UBH knowingly violated these duties, and wrongfully denied class members' claims, all to serve its own interests. Not all those class members paid out of pocket for the treatment for which UBH denied coverage, but many did. For them, the tragedy of being denied coverage based on Guidelines with "pervasive" defects, which resulted in "significantly narrower scope of coverage than is consistent with generally accepted standards of care," *id.* at 42 (¶ 82)—by a faithless fiduciary laboring under a conflict of interest that was "embedded in UBH's Guideline development process," *id.* at 103 (¶ 202)—was amplified by having to shell out funds to pay for that treatment. In light of UBH's pervasive breaches of its ERISA duties, and of the written plan terms it was hired to administer, UBH's suggestion that the "equities" do not support an order requiring payment of interest is offensive.

UBH's failure to meet the governing standard is also confirmed by the cases on which the Ninth Circuit relied in *Blankenship*. In *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154 (9th Cir. 2001) (cited in *Blankenship*, 486 F.3d at 628), the plaintiff argued that she was entitled to interest higher than the § 1961 rate because her employer had "garnered substantially more than [the then-applicable § 1961 rate of 4.91%] on its investments during the period in question." *Id.* at 1164. But even that was insufficient to requiring "diverg[ing] from the norm." *Id.* And in *Blanton v. Anzalone*, 813 F.2d 1574, 1575 (9th Cir. 1987) (cited in *Blankenship*, 486 F.3d at 628), the Ninth Circuit made clear that not only must a party seeking to diverge from the § 1961 standard in ERISA cases make a showing on "substantial evidence" for why "a different rate is appropriate," but also, any court deviating from the § 1961 standard must make specific "finding[s] as to the equities which justif[y] departing from the Treasury bill rate." *Id.* at 1575–76. The Ninth Circuit vacated and remanded because the district court had "abuse[d] [its] discretion" by having "fail[ed] to heed our instruction to apply the Treasury bill rate unless the equities demanded otherwise." *Id.*

Finally, even indulging UBH's academic argument, UBH cites only one case for the proposition that "the availability and amount of interest due . . . will be dictated by the terms of the individual benefit plans and ERISA." Def.'s Resp. at 10 (citing *Finkel v. Robco Elec. Corp.*, No. 11-CV-2353 NGG, 2012 WL 3306963, at *5 (E.D.N.Y. Mar. 30, 2012)). In *Finkel*, the plan at issue explicitly addressed the precise issue: the date from which interest on late-paid employer contributions should be calculated. 2012 WL 3306963, at *5. Here, again, UBH has not identified a single plan with any language that addresses the appropriate rate of interest where a plan has denied coverage in violation of its fiduciary duties and ERISA and reverses such denial after court-ordered reprocessing.

**B.     The Court has authority to order payment of interest on any wrongful denials reversed through reprocessing**

UBH's first non-responsive argument is to argue that the Court "[l]acks [a]uthority" to impose pre-judgment interest because *Blankenship* "involved a money judgment" and this Court will not be entering a "money judgment." Def.'s Resp. at 9. To be sure, *Blankenship* involved a

judgment awarding immediate payment of benefits. But nothing in that opinion or its logic suggests that the rule should be limited to such judgments, and UBH identifies no law to suggest such a limitation. In fact, caselaw is uniformly to the contrary. The Court has authority to order any "appropriate equitable relief." 29 U.S.C. § 1132(a)(3). The relief Plaintiffs seek—an order requiring that any payments made through reprocessing be accompanied by interest from the date of the original denial through the date of payment—is precisely such relief, and thus is authorized by ERISA itself. *See, e.g.*, *Lutheran Med. Ctr. of Omaha, Neb. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan*, 25 F.3d 616, 623 (8th Cir. 1994) ("An award of prejudgment interest is necessary to allow a prevailing ERISA beneficiary to obtain 'appropriate equitable relief.'"); *Fotta v. Trs. of United Mine Workers of Am., Health & Ret. Fund of 1974*, 165 F.3d 209, 213 (3d Cir. 1998) ("[A]warding of prejudgment interest under ERISA is within the district court's discretion, 'given in response to considerations of fairness and denied when its exaction would be inequitable.'") (quoting *Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1010 (3d Cir. 1992)).[7]

Moreover, the only courts of which Plaintiffs are aware that have addressed the issue have concluded that prejudgment interest can and should be awarded regardless of whether the court is entering a judgment awarding benefits or remand. In *Short v. Cent. States, Se. & Sw. Areas Pension Fund*, 729 F.2d 567 (8th Cir. 1984), for example, the pension plan had denied benefits based on a finding that the plaintiffs were not "employees." But as the district court and Eighth Circuit held, the plan had applied an incorrect, unlawfully restrictive standard—and remanded to the plan to reprocess the claims "in accordance with the substantive principles in [cited cases] and the cases decided today," *id.* at 575, as Plaintiffs seek here. Despite not ordering

---

[7] Because ERISA itself authorizes the Court to order payment of interest—to essentially require UBH to disgorge the time value of funds it unlawfully withheld—UBH's argument that 28 U.S.C. § 1961 does not confer ***authority*** to do so, Def.'s Resp. at 9:12–16 ("that section provides only for interest on a 'money judgment'"), is beside the point. Which statute confers such authority, or both, is a separate question from the appropriate rate. For the reasons discussed before and above, § 1961 provides the appropriate rate of interest. *See* Pls.' Suppl. Br. at 6:2–14; § II.A, *supra*.

entry of an award of benefits, the Eighth Circuit held that the plaintiffs were entitled to prejudgment interest "as a matter of law." *Id.* at 576.

The Third Circuit too has held that prejudgment interest should attach regardless of whether a court has ordered payment of benefits. In *Fotta*, the pension plan had denied disability benefits. 154 F.3d at 210-11. After years of litigation in state court over the *Fotta* plaintiff's worker's compensation benefits, the plan reversed the ERISA denial and granted benefits back to the date of his injury, but denied his request for interest. He sued under ERISA for prejudgment interest, which the Third Circuit held was "presumptively appropriate," *id.* at 214—even though his lawsuit did not seek an award of benefits. *See id.* at 212 ("The principles justifying prejudgment interest also justify an award of interest where benefits are delayed but paid ***without the beneficiary's having obtained a judgment***. . . . To hold that the absence of a judgment [awarding prejudgment interest] deprives the injured beneficiary of the time value of his or her money would create a financial incentive for plans to delay payment and thus retain interest that rightfully belongs to the beneficiary.") (emphasis added).

### C.   UBH's decertification gambit fails for the same reasons its prior ones failed

Finally, UBH argues that an order requiring interest on payments determined through reprocessing to have been unlawfully withheld would "require decertification as to the reprocessing remedy." Def.'s Resp. at 11.

As an initial matter, this "Hail Mary" decertification argument is premised on a misunderstanding of what Plaintiffs have requested. UBH argues that "[a]ny award of pre- or post-judgment interest ***prior to reprocessing***" would "convert the reprocessing remedy into a classwide money judgment." *Id.* at 8 (emphasis added). But Plaintiffs have not requested that the Court "award" interest "prior to reprocessing." Interest would only attach ***after*** reprocessing, for any class members whose denials are reversed (in whole or in part) through reprocessing, providing for interest running from the date of the original denial through the date of payment. For example, in Plaintiffs' Proposed Remedies Order, the section on pre- and post-judgment interest (section III.E) immediately follows section III.D entitled "Procedures ***Following*** Re-

Determination," and specifically the section III.D.2, "***Procedures in the Event of Approval of***

***Coverage on Remand***." Pls.' Proposed Remedies Order at 8–10 (July 10, 2019), *Wit* ECF No.

435-1 (emphases added). In short, UBH's argument that an order requiring payment of interest

would "confirm[]" that Plaintiffs "sought, and obtained, a monetary remedy," Def.'s Resp. at 11,

is a non-sequitur.[8]

In any event, UBH's decertification argument fails on its own terms. Its argument is that

"the question 'whether to award prejudgment interest to an ERISA plaintiff'" is an "equitable

judgment" that "depends on particular circumstances," which would require "individualized

factual inquir[ies]." Def.'s Resp. at 11–12. But as Plaintiffs have explained, and as reflected in

the Court's questions, class members are entitled to interest because of common, class-wide

equitable considerations. ***All*** class members (or their assignees) as to whom UBH makes

payments through reprocessing are entitled to interest, to compensate for the lost "time value of

his or her money." *Fotta*, 165 F.3d at 212.

In its desperation to support its contrary argument, UBH contends that "the record shows

that the circumstances vary from class member to class member, even for the hypothetical subset

of class members whose denials could potentially change to approvals through a reprocessing,"

but then highlights "circumstances" that have nothing to do with the question at hand. UBH

posits that one such circumstance is if class members "chose not to pursue the treatment after the

denial of their request for preauthorization." Def.'s Resp. at 12.[9] But UBH seems to not have

---

[8] As for UBH's citation to *AA Suncoast*, the case is inapposite for reasons Plaintiffs have explained before. *See* Pls.' Resp. to UBH's Notice of Recent Authority at 2–3 (Oct. 1, 2019), *Wit* ECF No. 443.

[9] UBH's backhanded reference to class members who "chose not to pursue the treatment" after a pre-authorization request was denied based on UBH's application of its patently improper guidelines, Def.'s Resp. at 12, highlights how little concern it actually has for its own beneficiaries. Class members who did not pursue the treatment ***for which they had sought approval***, are far more likely to have been forced to forego treatment because of their inability to afford it rather than to have voluntarily "chosen" to walk away. UBH's misconduct, which this Court so clearly articulated in its trial decision, has had widespread adverse consequences for class members, which is one reason that a broad and forceful remedy is so important.

16

even read Plaintiffs' proposed order. It expressly provides for payments (and interest on such

payments) only for services the class members actually "received":

> **[III.D.]2. Procedures in the Event of Approval of Coverage on Remand**
> If, following a full and fair review of all of the available information and application of
> the relevant criteria under § III.B of this Order, UBH determines in good faith that the
> requested services were consistent with generally accepted standards of care and
> therefore coverage should be approved on remand, in whole or in part:
> . . .
> c. UBH will then calculate the amount of benefits the class member is owed under the
> terms of the applicable plan in effect at the time the request for coverage was originally
> received.
>> (i) *In calculating the amount of benefits*, *UBH shall include coverage **for all
>> services received** by the class member at the requested level of care*, regardless of
>> whether the class member submitted a post-service claim for them after UBH
>> originally denied coverage.
>> (ii) UBH shall pay to the class member or the class member's assignee the
>> calculated benefit amount, plus pre- and post-judgment interest pursuant to § III.E
>> of this Order, within **30 days** after UBH notifies the class member of its
>> determination approving coverage.

*Wit* ECF No. 435-1 at 9–10 (emphases added).

UBH's final recycled argument is that ordering payment of interest would require

decertification because "some plan participants assigned their claims to providers," and thus

"have no basis to receive any monetary award—much less interest on a monetary award—on

reprocessing." Def.'s Resp. at 12. As addressed in prior briefing, the argument should be rejected

because UBH has long since waived it; there is no evidence in the trial record to support it; and

the only trial evidence is to the contrary. *See* Pls.' Reply in Supp. of Req. for Remedies, *Wit* ECF

No. 435 (July 10, 2019), at 27:3–23. Even if some class members assigned their rights to file

lawsuits challenging the precise denials at issue here, those assignments at most might affect

who has a right to collect benefit payments, not whether the claims should be reprocessed. *Id.* at

27:24–28:6. In any event, the Court could even specify in its remedies order that insofar as a

class member has assigned his or her rights to pursue remedies for wrongful denials, any

payments made through reprocessing should be directed to the applicable provider(s). *Id.* at 28

n.34; *see also* Pls.' Proposed Remedies Order, *Wit* ECF No. 435-1 at 10 (§ III.D.2.c.(ii) ("UBH

shall pay to the class member *or the class member's assignee* the calculated benefit amount, plus

pre- and post-judgment interest pursuant to § III.E of this Order, within 30 days after UBH

notifies the class member of its determination approving coverage.") (emphasis added).


Dated: July 2, 2020                                    ZUCKERMAN SPAEDER LLP

                                                       */s/ Caroline E. Reynolds*
                                                       Caroline E. Reynolds
                                                       Adam Abelson

                                                       PSYCH-APPEAL, INC.
                                                       Meiram Bendat

                                                       *Attorneys for Class Plaintiffs*

18