JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
ANDREW HOLMER (SBN 268864)
aholmer@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Phone: (213) 622-4750
Fax: (213) 622-2690

THOMAS F. KOEGEL (SBN 125852)
tkoegel@crowell.com
NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Phone: (415) 986-2800
Fax: (415) 986-2827

APRIL N. ROSS (admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **DAVID WIT et al.**,<br><br>      Plaintiffs,<br><br>      v.<br><br>**UNITED BEHAVIORAL HEALTH**,<br><br>      Defendant. | Case No. 14-cv-02346 JCS<br>Related Case No. 14-cv-05337 JCS<br><br>**UNITED BEHAVIORAL HEALTH'S REPLY SUPPLEMENTAL REMEDIES BRIEF (TOPICS 2, 4, AND 6)**<br><br>Hon. Joseph C. Spero |

**GARY ALEXANDER et al.**,

        Plaintiffs,

   v.

**UNITED BEHAVIORAL HEALTH**,

        Defendant.

1

**TABLE OF CONTENTS**

2

**Page**

3

INTRODUCTION ........................................................................................................... 1

4

EVIDENTIARY OBJECTIONS ..................................................................................... 2

5

ARGUMENT ................................................................................................................... 3

6

I.     If Ordered Over UBH's Objection, Plaintiffs' Requested Remedy Of Administrative Remand And Reprocessing Will Preclude Separate Litigation Over The Denied Benefits At Issue In This Case (Topic 2). ....................................... 3

7

        A.     Class Members Who Did Not Opt Out Will Be Precluded From Bringing Any Future Claims Based On The Same Benefit Determinations. ........................ 3

8

9

        B.     Plaintiffs Concede That Any Reprocessing Order "May Well 'Moot'" The Claims Of Absent Class Members. ............................ 7

10

II.    If The Court Orders Reprocessing, The Law Of This Circuit Requires That UBH Be Afforded Discretion To Determine Class Members' Eligibility For Benefits Under The Full Terms Of Their Plans (Topic 4). .................................................. 9

11

12

III.   Plaintiffs' Arguments About Other Guidelines And Benefit Decisions for Non-Class Members Do Not Support Classwide Remedies, and Instead Demonstrate Why The Classes Should Be Decertified (Topic 6). ............................................. 14

13

14

        A.     Plaintiffs' Argument About A 2019 Policy That Is Not At Issue In This Case Is Irrelevant And Confirms That The Classes Should Be Decertified. ........ 14

15

        B.     Plaintiffs' Argument About A Benefit Decision Issued Outside The Class Period Under Plaintiffs' Preferred Guidelines Confirms That Plaintiffs' Claims Turn On Individualized Questions Of Medical Necessity And Demonstrates Why Appointment Of A Special Master Is Inappropriate. ............ 17

16

17

        C.     Plaintiffs' Argument About A Custodial Care Guideline That Was Not Used And Is Not At Issue In This Case Is Irrelevant. ........................................... 18

18

        D.     Plaintiffs' Argument About CDGs That Are Not In Evidence, And That Plaintiffs Admit Do Not Incorporate UBH's Former LOCGs, Is Irrelevant ......... 19

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akootchook v. United States,*
  271 F.3d 1160 (9th Cir. 2001)...........................................................................3, 5, 6

*Alves v. Hewlett-Packard Comprehensive Welfare Benefits Plan,*
  785 F. App'x 397 (9th Cir. 2019) ...........................................................................10

*Andrews- Clarke v. Lucent Techs., Inc.,*
  157 F. Supp. 2d 93 (D. Mass. 2001) ........................................................................7

*Bowman v. U.S. West, Inc.,*
  1997 WL 118437 (D. Or. Mar. 10, 1997) ..........................................................13, 16

*Brown v. Ticor Title Ins. Co.,*
  982 F.2d 386 (9th Cir. 1992)....................................................................................5

*Colindres v. QuitFlex Mfg.,*
  235 F.R.D. 347 (S.D. Tex. 2006)...............................................................................4

*Conkright v. Frommert,*
  559 U.S. 506 (2010)...........................................................................................13, 14

*Cooper v. Fed. Reserve Bank of Richmond,*
  467 U.S. 867 (1984).............................................................................................3, 5, 6

*Daley v. Marriott Int'l, Inc.,*
  415 F.3d 889 (8th Cir. 2005).....................................................................................5

*Dep't of Homeland Sec. v. Regents of the Univ. of California,*
  591 U.S. __, 2020 WL 3271746 (U.S. June 18, 2020) ...........................................11

*Dupree v. Holman Prof'l Counseling Centers,*
  572 F.3d 1094 (9th Cir. 2009)..................................................................................20

*Gator.com Corp. v. L.L. Bean, Inc.,*
  398 F.3d 1125 (9th Cir. 2005)....................................................................................9

*Gilliam v. Nev. Power Co.,*
  488 F.3d 1189 (9th Cir. 2007)..................................................................................20

*Glista v. Unum Life Ins. Co. of Am.,*
  378 F.3d 113 (1st Cir. 2004)....................................................................................11

*Hackett v. Xerox Corp. Long-Term Disability Income Plan,*
  315 F.3d 771 (7th Cir. 2003)....................................................................................10

*Harlick v. Blue Shield of Cal.*,
   686 F.3d 699 (9th Cir. 2012)........................................................................9, 10, 11

*Hatfield v. Blue Cross & Blue Shield of Massachusetts, Inc.*
   162 F. Supp. 3d 24 (D. Mass. 2016) ..................................................................12

*L.P. ex rel. J.P. v. BCBSM, Inc.*,
   2020 WL 981186 (D. Minn. Jan. 17, 2020)....................................................11, 12

*Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*,
   349 F.3d 1098 (9th Cir. 2003)............................................................................11

*Marlo v. United Parcel Serv., Inc.*,
   251 F.R.D. 476 (C.D. Cal. 2008), *aff'd* 639 F.3d 942 ..................................7, 16, 17

*Marolt v. Alliant Techsystems, Inc.*,
   146 F.3d 617 (8th Cir. 1998)..............................................................................11

*Martinez v. Beverly Hills Hotel*,
   695 F. Supp. 2d 1085 (C.D. Cal. 2010) ...............................................................10

*Meeropol v. Meese*,
   790 F.2d 942 (D.C. Cir. 1986) ...........................................................................18

*Miller v. Am. Airlines, Inc.*,
   632 F.3d 837 (3d Cir. 2011)...............................................................................10

*Mpoyo v. Litton-Electro Optical Sys.*,
   430 F.3d 985 (9th Cir. 2005)................................................................................3

*Pannebecker v. Liberty Life Assur. Co. of Bos.*,
   542 F.3d 1213 (9th Cir. 2008)............................................................................10

*Piatt v. Money Store*,
   __ Fed. App'x __, 2020 WL 3121030 (9th Cir. 2020) ..................................3, 4, 6, 7

*In re Processed Egg Prods. Antitrust Litig.*,
   312 F.R.D. 124 (E.D. Penn. 2015) ........................................................................5

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disab. Income Plan*,
   85 F.3d 455 (9th Cir. 1996)............................................................................10, 11

*Silk v. Metro. Life Ins. Co.*,
   310 F. App'x 138 (9th Cir. 2009) ...................................................................7, 8, 9

*Soseeah v. Sentry Ins.*,
   2016 WL 7435792 (D.N.M. Sept. 6, 2016) ...........................................................4

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
   770 F.3d 1282 (9th Cir. 2014)..............................................................................9

*Spradley v. Owens-Illinois Hourly Employees Welfare Ben. Plan*,
   686 F.3d 1135 (10th Cir. 2012) .................................................................................11

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
   322 F.3d 1064 (9th Cir. 2003) ....................................................................................4

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) .................................................................................................13

*Vizcaino v. Microsoft Corp.*,
   120 F.3d 1006 (9th Cir. 1997) ..................................................................................10

*Wise v. Glickman*,
   257 F. Supp. 2d 123 (D.D.C. 2003) ............................................................................6

*Wright v. Oregon Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ............................................................................13, 16

*Zakinov v. Blue Buffalo Pet Products, Inc.*,
   2018 WL 1426932 (S.D. Cal. Mar. 22, 2018) ......................................................4, 5, 6

**Statutes**

29 U.S.C. § 1104(a)(1)(D) ...............................................................................................13

**Other Authorities**

Fed. R. Civ. P. 23 ......................................................................................................5, 16

Fed. R. Civ. P. 53 ............................................................................................................18

U.S. Const., Art. III ..........................................................................................................9

1

**INTRODUCTION**

2

Defendant United Behavioral Health ("UBH") submits this Reply Supplemental Remedies

3

Brief, addressing the second, fourth, and sixth topics on which the Court requested further

4

briefing, including: (2) the preclusive implications of any remedies awarded by this Court for

5

class members; (4) whether, if reprocessing is ordered, UBH may invoke exclusions or other

6

grounds for denying coverage that it did not invoke when it originally adjudicated class members'

7

claims; and (6) the status of UBH's adoption of ASAM, LOCUS, CASII, and ECSII criteria for

8

making clinical coverage determinations for mental health and substance use treatment.

9

In their Response to UBH's Supplemental Remedies Brief (ECF No. 455), Plaintiffs

10

ignore the law of this Circuit, the cases cited by UBH, and their own arguments made throughout

11

this case. Seeking to dodge the questions posed by the Court, Plaintiffs misapply inapposite law

12

and interject irrelevant (and improper) new evidence. But Plaintiffs cannot escape the

13

consequences of the relief they chose to seek in this case. If this Court issues a judgment

14

remanding each of the class member's claims to UBH for administrative reprocessing, then

15

controlling Ninth Circuit law holds that any other legal claims of the class members arising out of

16

the same benefit decision are precluded. Indeed, despite their repeated assurances that a judgment

17

in this case will have no effect on the individual claims of absent class members, Plaintiffs now

18

admit that any reprocessing "may well 'moot'" class members' individual claims.

19

Further, Plaintiffs ignore the law of this Circuit, which dictates that UBH has broad

20

discretion to reprocess the claims based on the Court's rulings, plan terms, and other available

21

information. Instead, Plaintiffs repeat arguments based on inapplicable cases, which even

22

Plaintiffs admit address the separate issue of litigation defenses offered "in court" when a plaintiff

23

seeks *the payment of benefits*. But Plaintiffs abandoned years ago any claim for payment of

24

benefits, and elected instead to pursue a class-wide remedy of administrative remand that is based

25

on UBH's discretion to determine benefits. Plaintiffs are bound by that choice. If the Court orders

26

remand, UBH must apply all applicable plan terms and exercise the full scope of its plan-

27

conferred discretion to determine benefits under the full terms of class members' plans.

28

Finally, unable to refute that UBH has already adopted Plaintiffs' preferred guidelines to determine medical necessity in all 50 states, Plaintiffs throw out a hodge-podge of irrelevant arguments based on improper and inadmissible new evidence. Plaintiffs' eleventh-hour attempt to inject new arguments about policies, plans, benefit decisions, and guidelines which are neither at issue nor in evidence only demonstrate that the relief they seek is individualized, untethered to the plans they purport to enforce, and not suitable for class treatment.

## EVIDENTIARY OBJECTIONS

UBH asserts the following objections to new evidence cited by Plaintiffs:

- Declaration of Marc J. Fishman in Support of Plaintiffs' Response to UBH's Supplemental Remedies Brief (ECF No. 455-1): UBH objects to this declaration in its entirety, and to each and every paragraph therein, on the grounds that it is irrelevant to any issue presented in this case, lacks foundation, is inadmissible hearsay, is not proper expert opinion, was not disclosed to UBH prior to trial, and was not offered into evidence at trial.

- Declaration of Meiram Bendat in Support of Plaintiffs' Response to UBH's Supplemental Remedies Brief (ECF No. 455-2): UBH objects to this declaration in its entirety, and to each and every paragraph therein, on the grounds that it is irrelevant to any issue presented in this case, lacks foundation, is inadmissible hearsay, and was not offered into evidence at trial.

- Exhibit 1 to the Declaration of Meiram Bendat (ECF No. 455-3): UBH objects to this document in its entirety, on the grounds that it is irrelevant to any issue presented in this case, lacks authentication, is inadmissible hearsay, and was not offered into evidence at trial.

- Exhibit 2 to the Declaration of Meiram Bendat (ECF Nos. 455-4 & 454-6): UBH objects to this document in its entirety, on the grounds that it is irrelevant to any issue presented in this case, lacks authentication, is inadmissible hearsay, and was not offered into evidence at trial.

- Exhibit 4 to the Declaration of Meiram Bendat (ECF No. 455-6): UBH objects to this document in its entirety, on the grounds that it is irrelevant to any issue presented in this case, lacks authentication, is inadmissible hearsay, and was not offered into evidence at trial.

///
///
///
///
///
///

1

**ARGUMENT**

2

**I.    If Ordered Over UBH's Objection, Plaintiffs' Requested Remedy Of Administrative**
3     **Remand And Reprocessing Will Preclude Separate Litigation Over The Denied**
      **Benefits At Issue In This Case (Topic 2).**

4

**A.    Class Members Who Did Not Opt Out Will Be Precluded From Bringing Any**
5         **Future Claims Based On The Same Benefit Determinations.**

6          As UBH explained in its Opening Supplemental Remedies Brief (ECF No. 451, at 2–7)

7     and in its Response to Plaintiffs' Supplemental Remedies Brief (ECF No. 457, at 3–4), class

8     members who did not opt out are barred in future litigation from asserting claims based on the

9     same benefit determination, even if they challenge those determinations on different grounds.

10    Plaintiffs largely ignore the case law cited by UBH for this proposition, waiving any argument to

11    the contrary.

12         While Plaintiffs now admit that a judgment in this case will have the "preclusive effect" of

13    "bar[ring] class members from asserting the same claims asserted here", they cite two cases—

14    *Akootchook v. United States*, 271 F.3d 1160 (9th Cir. 2001) and *Cooper v. Fed. Reserve Bank of*

15    *Richmond*, 467 U.S. 867 (1984)—to argue that the preclusive effect of a judgment in this action

16    will be limited to the *precise legal theories* advanced by Plaintiffs in this case. Pls. Resp. to

17    UBH's Supp. Remedies Br., ECF No. 455, at 2–3. Plaintiffs' argument conflicts with the law of

18    this circuit.

19         "'Basic principles of res judicata ... apply' with equal force in the class action context."

20    *Piatt v. Money Store*, __ Fed. App'x __, 2020 WL 3121030, at *1 (9th Cir. 2020), quoting

21    *Cooper*, 467 U.S. at 874.[1] In the class action context, as elsewhere, courts "most importantly"

22    consider whether the prior class action and the subsequent litigation "arise out of the same

23    transactional nucleus of fact." *Id*. (quotation omitted). If the subsequent litigation asserts claims

24    that are "related to the same set of facts," such that they could have been tried together in

25    _____

26         [1] Plaintiffs' attempt to distinguish *Mpoyo v. Litton-Electro Optical Sys.*, 430 F.3d 985, 987
      (9th Cir. 2005), is thus unavailing. A prior judgment bars further litigation on "the same 'claim'
27    or cause of action" (*Mpoyo*, 430 F.3d at 987 (quotation omitted)), irrespective of whether the
      prior judgment was a class or individual judgment. *See Piatt v*, 2020 WL 3121030, at *1.

28

1  the prior class action, the subsequent litigation will be barred by *res judicata*. *Id.*; *see also Tahoe-*

2  *Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078, 1083 n.18 (9th

3  Cir. 2003) (analogizing prior litigation to a class action and explaining that "[n]ewly articulated

4  claims based on the same nucleus of facts may still be subject to a res judicata finding if the

5  claims could have been brought in the earlier action").[2]

6       *Zakinov v. Blue Buffalo Pet Products, Inc.*, 2018 WL 1426932 (S.D. Cal. Mar. 22, 2018),

7  illustrates how Plaintiffs' class claims will preclude future claims by class members related to the

8  same underlying benefit decisions. *See* ECF No. 457, at 3 (citing *Zakinov*). In *Zakinov*, the

9  plaintiff was a member of a prior class action alleging that certain advertisements for dog food

10  manufactured by the defendant were fraudulent because the dog food contained various by-

11  product ingredients. 2018 WL 1426932, at *2. After a judgment was entered in the class action,

12  the plaintiff asserted individual claims based on the allegation that the same advertisements for

13  the same dog food were fraudulent because the dog food was allegedly contaminated by lead,

14  which was a different issue "not touched upon in the prior [class] action". *Id.* at *2, 5. The court

15  held that the plaintiff's individual action was nonetheless precluded by the prior class action

16  judgment. The prior class action and the individual action both challenged the same underlying

17  advertising materials, and the claims "ar[ose] from the same transactional nucleus of facts," even

18  though the latter suit asserted that the advertisements were unlawful for a different reason. *Id.* at

19  *6. Because the plaintiff's second theory of *why* the advertisements were misleading could have

20  been raised in the prior class action, the fact that the individual plaintiff's theory was not

21  previously litigated on behalf of the class did not change the *res judicata* analysis. *Id.* at *6–7.

22  The prior class action judgment precluded the individual plaintiff's subsequent claim for damages

23                 _____

24       [2] Many courts express concern that a "decision not to pursue claims for compensatory damages in a class action may waive that claim on behalf of the individual class members" in

25  subsequent litigation. *Colindres v. QuitFlex Mfg.*, 235 F.R.D. 347, 375 (S.D. Tex. 2006) (denying class certification because the "preclusive effect of the class action could prevent class members from seeking those damages in an individual lawsuit"); *Soseeah v. Sentry Ins.*, 2016 WL

26  7435792, at *10 (D.N.M. Sept. 6, 2016) (same, and denying class certification of claims for an injunction requiring defendant to notify class members of their potential right to insurance

27  benefits due to the potential preclusive effects of such a judgment on class members' ability to seek damages).

28

1    based on the same nucleus of facts. *Id.*

2            As in *Zakinov*, absent class members should be precluded from pursuing a separate

3    litigation arising from the same denial of benefits, even if they allege that their denial of benefits

4    was improper for a different reason than the arguments Plaintiffs pursued here. *See Daley v.*

5    *Marriott Int'l, Inc.*, 415 F.3d 889, 896 (8th Cir. 2005) (holding subsequent ERISA lawsuit arose

6    from the "same nucleus of operative facts" because "the wrong for which [plaintiff sought]

7    redress—the denial of her claims based on the plan-year limit—[was] the same"). Were Plaintiffs

8    suing individually, it would be self-evident that they cannot litigate *seriatim* different grounds for

9    challenging the same denial of benefits in successive lawsuits. Under the Rules Enabling Act, the

10   class action mechanism cannot be used to change that result.

11           Plaintiffs' authorities do not prove otherwise. Contrary to plaintiffs' suggestion,

12   *Akootchook* does not create a class-action exception to the *res judicata* analysis. As an initial

13   matter, *Akootchook* did not address the preclusive effect of a judgment under <u>Rule 23(b)(3)</u>.[3] The

14   plaintiff in *Akootchook* was a member of two prior Rule 23(b)(2) class actions challenging

15   Department of Interior policies regarding "ancestral use" of native Alaskan lands. 271 F.3d at

16   1163. *Several years after* those class judgments were entered, the plaintiffs received adverse

17   administrative decisions which turned on a *different* Department of Interior policy on the meaning

18   of "personal use occupancy" of native Alaskan lands. *Id*. As the Ninth Circuit explained, the

19   plaintiffs could not have raised their challenge to the "personal use occupancy" policy in the prior

20   class action litigation because that challenge arose from administrative decisions rendered years

21   ///

22   _____

23           [3] This distinguishes *Akootchook*, which was limited to the preclusive effect of prior
     mandatory class judgments entered under Rule 23(b)(2). The Ninth Circuit did not address the
24   situation presented here, where the Court has also certified non-mandatory classes under Rule
     23(b)(3) and afforded class members due process in the form of notice and an opportunity to opt-
25   out. *Cf. Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992) (holding that prior
     mandatory class judgment entered under Rule 23(b)(1) and (b)(2) would not preclude future
26   damages claims "[b]ecause [the plaintiff] had no opportunity to opt out," but holding that the
     plaintiff would nonetheless be "foreclosed from seeking other or further injunctive relief" in the
27   subsequent litigation); *see also In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 167
     (E.D. Penn. 2015) (explaining "[t]he perils of claim preclusion when certifying a Rule 23(b)(2)
28   class alongside Rule 23(b)(3) classes has troubled many courts").

1   later that "were not ripe for review at the time of the class actions." *Id*. at 1165. Applying

2   standard *res judicata* principles, the Ninth Circuit concluded that the later action arising from

3   administrative decisions entered years after the prior class action judgments, and challenging a

4   different policy, was not precluded. *Id*. at 1164–65.

5        *Cooper* is similarly inapposite. There, the Supreme Court confirmed that "a judgment in a

6   properly entertained class action is binding on class members in any subsequent litigation."

7   *Cooper*, 467 U.S. at 874. Although the Court held that claim preclusion did not apply under the

8   particular facts of that pattern-and-practice employment discrimination suit, courts applying

9   *Cooper* regularly conclude that a prior class action judgment precludes any future claims by class

10  members that could have been raised in the prior class action.[4] *Piatt*, 2020 WL 3121030, at *1;

11  *see also Zakinov*, 2018 WL 1426932, at *6–7; *Wise v. Glickman*, 257 F. Supp. 2d 123, 129

12  (D.D.C. 2003) ("persons who did not opt out and who pursued their claims [in a prior class

13  action] cannot raise claims [in subsequent litigation] that they raised, or could have raised" in the

14  prior class action).

15       Here, each class member's claims "arise" from an underlying denial of benefits, which

16  Plaintiffs initially challenged on a class-wide basis for multiple reasons *in this case*. *See e.g., Wit*

17  First Am. Compl., ECF No. 32 ¶ 205 (alleging a class claim based on purported "systematic

18  practice[s]" of allegedly "ignoring the evidence presented" to UBH, "applying undisclosed

19  additional criteria to benefit claims," and "relying upon . . . restrictive CDGs even though CDGs

20  (as opposed to LOCs) are not a recognized basis for denying claims under Plaintiffs' Plans").

21  Plaintiffs' strategic choice to drop certain theories challenging the same underlying benefit

22  determinations, or not to pursue other challenges, does not void the *res judicata* effect of a

23  judgment in this case. *Zakinov*, 2018 WL 1426932, at *6–7. Any claims that are "related" to the

24

25       [4] Plaintiffs try to avoid this result by arguing that the court can "constrain the preclusive
    effects of [its] own judgments" by making clear at class certification which claims are certified.
26  Pls. Resp. to UBH's Suppl. Remedies Br., ECF No. 455 at 3. Plaintiffs' sole authority for this
    proposition is a 15-year old law review article that is contrary to the law of this circuit. In any
27  event, the certified classes here, and the Court's findings of fact and conclusions of law relating to
    those classes, broadly encompass all denials of benefits that were "based upon" the challenged
28  guidelines. FFCL, ECF No. 418 ¶ 13.

same benefit decisions at issue in this case and which "could have been" raised in this action will be barred by *res judicata*. *Piatt*, 2020 WL 3121030, at *1.

Most fundamentally, Plaintiffs' argument that "the only claims litigated" in this case were "those based on UBH's adoption and application of overly restrictive Guidelines" (ECF No. 455, at 1) confirms that Plaintiffs failed to meet their burden of proof at trial. While Plaintiffs concede that their narrow "facial" challenge to UBH's guidelines requires "denials [of benefits] based on those guidelines," (ECF No. 455, at 2), they did not prove that UBH denied any Plaintiff or class member benefits based on the alleged flaws in the guidelines. The "fundamental cause of action" in an ERISA claim for denial of benefits is "the defendant's failure to approve" benefits that it should have approved. *Andrews- Clarke v. Lucent Techs., Inc.*, 157 F. Supp. 2d 93, 102–03 (D. Mass. 2001). Plaintiffs did not prove this "fundamental cause of action" because, as Plaintiffs admit now, the "claims" of class members arising from those same benefit decisions are broader than Plaintiffs' artificially narrow facial theory at trial. By Plaintiffs' own argument, their full claims for wrongful denial of benefits were not "actually litigated" in this case, and Plaintiffs did not prove facts sufficient to support a liability determination on a single "claim" asserted by any, much less every, class member. *See id*. Plaintiffs' failure of proof requires that judgment be entered in favor of UBH or, alternatively, that the classes be decertified. *See Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 483, 488 (C.D. Cal. 2008) ("Common proof of some kind is necessary to support [a] classwide determination."), *aff'd* 639 F.3d 942.

**B. Plaintiffs Concede That Any Reprocessing Order "May Well 'Moot'" The Claims Of Absent Class Members.**

Plaintiffs also admit that any reprocessing order "may well 'moot'" the claims of many absent class members. Pls. Resp. to UBH Supp. Remedies Br., ECF 455 at 5. If the Court orders class-wide remand for reprocessing (which it should not), the natural consequence will be that each of the original benefit determinations at issue in this case will be vacated. *See* ECF No. 451 at 3–5. Thus, irrespective of the formal *res judicata* effect of a judgment in this case, if the Court orders reprocessing, UBH's "subsequent administrative review" of any remanded determinations will moot other challenges class members may have to their prior benefit determinations. *See Silk*

1  *v. Metro. Life Ins. Co.,* 310 F. App'x 138, 139–40 (9th Cir. 2009); UBH Opening Supp. Remedies

2  Br., ECF No. 451, at 6–7.

3       Plaintiffs misleadingly quote the Ninth Circuit's decision in *Silk* and argue that it is *only*

4  the "payment of benefits" after reprocessing that moots a class member's ERISA claim. Pls.

5  Resp. to UBH's Supp. Remedies Br., ECF No. 455, at 5. In other words, Plaintiffs contend that if

6  UBH determines on remand using different guidelines that a class member is not entitled to

7  benefits, then that class member may still bring suit challenging the *original* denial of benefits

8  rendered many years ago. Plaintiffs' unsupported assertion is not the law and misstates the Ninth

9  Circuit's holding in *Silk*.

10      In *Silk*, the plaintiff brought suit under ERISA to recover two forms of long-term

11  disability benefits: "own occupation" and "any occupation" benefits. *Silk*, 310 F. App'x at 139.

12  After the defendant paid the requested "own occupation" benefits and "agreed to consider [the

13  plaintiff's] claim for 'any occupation'" benefits, the district court dismissed the pending suit. *Id*.

14  The Ninth Circuit affirmed the dismissal, finding that both payment of benefits and "subsequent

15  administrative review" of an earlier request for benefits moots future claims based on the original

16  determinations. The claim for "own occupation" benefits was mooted by the payment of those

17  benefits. *Id*. Separately, the Ninth Circuit held that the claim for "any occupation" benefits was

18  mooted, not by the payment of benefits, but by the administrator's "subsequent administrative

19  review of the claim," which would either: (a) "negate the need for further judicial review"

20  through the payment of benefits; or (b) give the plaintiff "the right to file a new action." *Id*. at

21  139–140. Either way, the old claim would be moot. *Id*. Plaintiffs ignore this holding in *Silk*

22  because it confirms that the "subsequent administrative review" they seek (reprocessing) would

23  necessarily moot the claims of every class member subject to reprocessing. *Id*.

24      Recognizing the necessary result of a reprocessing remedy, Plaintiffs now argue that the

25  mooting of absent class members' claims is unimportant. But whether or not absent class

26  members are "interested in bringing" individual litigation or would be time-barred from doing so

27

28

is beside the point.[5] *See* ECF No. 455, at 3–4. If the Court orders reprocessing, absent class members' "interest" in bringing suit will be moot. Any absent class members who file subsequent litigation challenging the same benefit decision will lack Article III standing to pursue their mooted claims. *See Silk,* 310 F. App'x at 139–40; *see also Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (once a matter "has become moot . . . its resolution is no longer within [a court's] constitutional purview").

## II. If The Court Orders Reprocessing, The Law Of This Circuit Requires That UBH Be Afforded Discretion To Determine Class Members' Eligibility For Benefits Under The Full Terms Of Their Plans (Topic 4).

Plaintiffs admit that the rule announced in *Harlick v. Blue Shield of Cal.*, 686 F.3d 699 (9th Cir. 2012) is an "anti-sandbagging" rule designed to preserve the "purposes of the administrative process," and that it applies to defenses offered "in court". ECF 455 at 6 –7. This admission confirms that neither *Harlick* nor *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282 (9th Cir. 2014), has any application here. Neither case addressed what a claims administrator may consider *on administrative remand*. *See* UBH's Opening Supp. Remedies Br., ECF No. 451, at 8–14.

The remand Plaintiffs seek flows from UBH's discretion in the first instance to interpret plan terms and determine class members' eligibility for benefits under the full terms of their plans. *See* UBH's Resp. to Pls.' Remedies Br., ECF No. 429, at 31–33; UBH's Opening Supp. Remedies Br., ECF No. 451, at 8–14. Indeed, Plaintiffs now freely admit that if remand is ordered, UBH must be permitted "to take full stock of the administrative record to redetermine medical necessity," confirming that *Harlick* is inapplicable in this case. ECF 455, at 14 n.5; *see Harlick*, 686 F.3d at 719, 721 (refusing to remand and ordering payment of benefits). Under the law of this Circuit, reprocessing effectively starts the administrative process anew by ordering the

---

[5] Plaintiffs chide UBH for declining to violate its HIPAA obligations and protective orders entered by other courts and disclose the protected health information of individuals who deliberately chose to bring separate litigation pseudonymously and with the assistance of different counsel. ECF 455, at 4. If Plaintiffs wished to obtain that protected health information (or consent for UBH to disclose it), they were free to contact counsel for those individual litigants. *Id*. Plaintiffs either failed to do so, or attempted and were rebuffed.

administrator "to **redo its evaluation** and correctly apply the terms of the Plan." *Alves v. Hewlett-Packard Comprehensive Welfare Benefits Plan*, 785 F. App'x 397, 398 (9th Cir. 2019) (emphasis added); *see also Martinez v. Beverly Hills Hotel*, 695 F. Supp. 2d 1085, 1087 (C.D. Cal. 2010). Thus, upon remand, the original benefit determination will be vacated, and UBH will be tasked with reevaluating each class member's eligibility for benefits under the terms of his or her benefit plan. *Pannebecker v. Liberty Life Assur. Co. of Bos.*, 542 F.3d 1213, 1221 (9th Cir. 2008) ("Where an administrator's initial denial of benefits is premised on a failure to apply plan provisions properly, we remand to the administrator to apply the terms correctly in the first instance."). The Court "cannot, and [should] not, predict how [UBH], who has the primary duty of construction, will construe the terms of the" plans on remand because "it is the terms of the [plan] which control". *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1013 (9th Cir. 1997). "It should be up to the administrator, not the courts, to make that call in the first instance." *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disab. Income Plan*, 85 F.3d 455, 460 (9th Cir. 1996).

Plaintiffs make no attempt to distinguish this controlling Ninth Circuit law, and thus waive any argument to the contrary. *See* UBH's Resp. to Pls.' Remedies Br., ECF No. 429, at 16–18, 31–33; UBH's Opening Supp. Remedies Br., ECF No. 451, at 3–5, 8–14.[6] Instead, Plaintiffs rely on a handful of inapposite, out-of-circuit cases to argue that the Court "clearly has the power to limit reprocessing in the manner Plaintiffs have requested." ECF 455 at 7. Notably, none of the cases Plaintiffs cite involve the situation presented here, where Plaintiffs seek to remand and restart the administrative process. They also are distinguishable for the same reasons as *Harlick*:

---

[6] Plaintiffs do not dispute that, under the law of the *Ninth Circuit*, remand for reprocessing vacates the initial benefit determination and vests discretion back to the administrator to "redo its evaluation and correctly apply the terms of the Plan." *Alves v*, 785 F. App'x 398. This Court thus does not need to rely on *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771 (7th Cir. 2003) and *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 856–57 (3d Cir. 2011), to reach that conclusion. *See* ECF No. 455 at 11 n.3. In any event, those cases unambiguously hold that the proper remedy when an administrator denied benefits using "defective procedures" is to return the parties to the "*status quo* prior to the denial or termination." *Hackett*, 315 F.3d at 776. In the situation presented in this case—an "initial denial of benefits"— the "status quo" is not that Plaintiffs would have received benefits, or been denied benefits, but merely that they would receive "the procedures that [they] sought in the first place." *Id.*; *Miller*, 632 F.3d at 856–57.

each of Plaintiffs' cases concerns a remedy—the direct payment of benefits—that Plaintiffs

voluntarily dropped here. In each of Plaintiffs' cases, the court's concerns about "sandbagging"

flowed directly from the fact that there would be *no further administrative process*.[7] That is the

opposite of what they seek in this case.

Plaintiffs' analogy to administrative law to argue that "an agency's order must be upheld,

if at all, on the same basis articulated in the order by the agency itself,' not a subsequent rationale

articulated by counsel," fares no better. ECF No. 455, at 6 n.1 (citation omitted).[8] That rule

concerns an initial administrative appeal of an agency order, and does not apply to a subsequent

remand to the agency for further action. As the Supreme Court recently reiterated, when an

administrative agency is directed to "take[] *new* agency action" on remand, the agency "is not

limited to its prior reasons". *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591

U.S. __, 2020 WL 3271746, at *9 (U.S. June 18, 2020). The same is true here. If class members'

claims are remanded to UBH to make a new determination, UBH "is not limited to its prior

reasons" in re-determining benefits.

Plaintiffs' reliance on *L.P. ex rel. J.P. v. BCBSM, Inc*., 2020 WL 981186 (D. Minn. Jan.

17, 2020), is equally misplaced. *L.P.* did not involve the sort of remand Plaintiffs request here. In

*L.P*, the plaintiff sought an award of benefits. The district court concluded that the administrative

---

[7] In *Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113 (1st Cir. 2004), like in *Harlick*, the court was presented with a rationale for denial of benefits that the "administrator articulates" for the first time "in litigation" when the member was seeking an order directing *payment of benefits*. *Id*. at 116. Noting that "courts have a range of options available" under such circumstances, the First Circuit declined to consider the administrator's litigation defense and ordered the administrator to "pay the benefits". *Id*. at 132. The Tenth Circuit's holding in *Spradley v. Owens-Illinois Hourly Employees Welfare Ben. Plan*, 686 F.3d 1135 (10th Cir. 2012) and the Eight's Circuit's decision in *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617 (8th Cir. 1998) are similarly distinguishable—both cases involved *litigation defenses* in which the Circuit Court *refused* to remand to the administrator. *Spradley*, 686 F.3d at 1142 (declining to consider administrator's defense raised for the first time in litigation, and directing the payment of benefits "rather than remanding for further administrative proceedings"); *Marolt* 146 F.3d at 620 (declining to consider "plan interpretations devised for purposes of litigation").

[8] The case Plaintiffs cite for this proposition, *Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098 (9th Cir. 2003), is inapposite. There, the Ninth Circuit refused to remand because the administrator never had discretion to determine benefits in the first place, confirming that remand flows from the administrator's discretion to determine benefits. *Jebian*, 349 F.3d at 1110 n.9 (applying a *de novo* standard of review and distinguishing *Saffle* as "explicitly limited to the abuse of discretion context").

record was insufficient to determine whether the administrator abused its discretion in denying benefits, and if so, the amount of benefits due. *Id.* at \*9–10. The Court therefore ordered a narrow remand for "further limited development of the record" so that the *court* (not the administrator) could ultimately determine whether the plaintiff was entitled to benefits, and, if so, the appropriate amount. *Id.* at \*9. Notably, the court's decision in *L.P.* to remand for further factual development was motivated by its concern that, without a better-developed administrative record, the court might "affirmatively grant[] coverage for services the Plan explicitly does not cover." *Id.* at \*10. As this Court explained in its order granting class certification, the result in *L.P.*— development of the individual factual record for a court determination of benefits—would undoubtedly preclude class certification here. Order Granting Class Cert., ECF No. 174, at 31 ("Of particular significance is the fact that Plaintiffs do not ask the Court to make determinations as to whether class members were *actually* entitled to benefits."). To the extent *L.P.* is relevant at all, it only demonstrates that the classes should be decertified if Plaintiffs seek to dictate how UBH reprocesses claims, as that would amount to a court-ordered determination of individual class members' rights to benefits.

By contrast, Plaintiffs admit that *Hatfield v. Blue Cross & Blue Shield of Massachusetts, Inc.* 162 F. Supp. 3d 24 (D. Mass. 2016), cited by UBH, is directly on point. *See* ECF 455, at 10 (Plaintiffs conceding that *Hatfield* "actually addresses the issue at hand"). In *Hatfield*, the court held that the very result Plaintiffs urge here – limiting UBH's discretion to determine benefits on remand – would not be "appropriate" because it could effectively compel coverage of services that were excluded by the plan, resulting in improper "windfall" payments. *Hatfield*, 162 F. Supp. 3d at 43. The same is true here.[9]

---

[9] Plaintiffs try to distinguish *Hatfield* by citing dicta in which the court speculated that it "may have the power to limit the scope of the remedy in [the] way" urged by Plaintiffs. ECF 455 at 10, quoting *Hatfield*, 162 F. Supp. 3d at 43. But the court in *Hatfield* refused to exercise that hypothesized "power" for the same reason the Court should refuse to do so here. Restricting UBH's review on remand "to the question of medical necessity" without regard to any other "contractual limitations on coverage" may for some class members "have the effect, indirectly" of ordering benefits that are not covered by the plan. *Hatfield*, 162 F. Supp. 3d at 43. The court in *L.P.* raised similar concerns. *L.P.*, 2020 WL 981186, at \*10 (refusing to "affirmatively grant[] coverage for services the Plan explicitly does not cover").

1    Plaintiffs do not dispute that limiting UBH's discretion on remand could result in payment

2    of benefits to which members are not entitled under the terms of their plans. Instead, they

3    announce that "'preserv[ing] limited plan assets'" and "'prevent[ing] . . . [such] windfalls,' . . .

4    are not (and never have been) ERISA fiduciary duties." ECF No. 455, at 9. Plaintiffs cite no

5    authority for this position because the law is the opposite. ERISA "plan administrators . . . have a

6    duty to *all beneficiaries* to preserve limited plan assets" by "prevent[ing] … windfalls for

7    particular employees." *Conkright v. Frommert*, 559 U.S. 506, 520 (2010) (emphasis added); *see

8    also Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996) (ERISA's "fiduciary obligation . . . does not

9    necessarily favor payment over nonpayment" because administrators have a duty to all plan

10   members "to preserve assets to satisfy future, as well as present, claims").

11   By contrast, "there is no legal authority" for Plaintiffs' position, which seeks an order that

12   could force UBH to provide coverage to class members "who [are] not eligible under the express

13   terms of the[ir] Plan[s]." *Bowman v. U.S. West., Inc.*, 1997 WL 118437, at *6 (D. Or. Mar. 10,

14   1997). The Supreme Court has expressly rejected such a "one-strike-and-you're-out" approach

15   and ERISA does not permit "ad hoc exceptions" to the plan administrator's deference. *Conkright*,

16   559 U.S. at 513. This is so, even when a court has "overturned a previous interpretation by the

17   Administrator" because a plan administrator's discretion is not "limited to first efforts to construe

18   the Plan." *Id.*[10] "To hold otherwise would be to impose conflicting fiduciary duties upon" UBH.

19   *Bowman*, 1997 WL 118437, at *6; *see also Wright v. Oregon Metallurgical Corp.*, 360 F.3d

20   1090, 1100 (9th Cir. 2004) ("ERISA requires fiduciaries to comply with a plan as written");

21   *accord* 29 U.S.C. § 1104(a)(1)(D). Adopting an interpretation of ERISA that requires a claims

22   administrator to always exercise its discretion in favor of granting benefits rather than preserving

23   plan assets would expose plan sponsors to limitless liability and could "discourage employers

24

25        [10] Plaintiffs attempt to distinguish *Conkright* because, according to Plaintiffs, UBH "will not exercise [its] discretion fairly." Pls. Reply ISO their Requested Remedies, ECF 435, at 33. If that were true (it is not), Plaintiffs' remedy was to seek a court award of benefits. *See Conkright*,

26   559 U.S. at 514 (when an administrator fails to exercise its discretion "honestly and fairly" the remedy is for the court to "fix the amount to be paid itself") (quotation and alteration omitted).

27   Instead, Plaintiffs pursued a remedy of reprocessing that necessarily depends on the very discretion Plaintiffs would now strip away. Plaintiffs cannot have it both ways.

28

from offering [ERISA] plans in the first place"— precisely the harm Congress intended to avoid in crafting the ERISA statute, as the Supreme Court has recognized time and again. *Conkright*, 559 U.S. at 517 (quoting *Varity*, 516 U.S. at 497).

If Plaintiffs had wanted to limit UBH to the grounds for denial articulated in the class members' original benefit decisions, they could have done so by pursuing their prayer for a Court order directing the payment of plan benefits. Instead, Plaintiffs dropped that request and elected to pursue a remand for reprocessing, which is predicated entirely on UBH's discretion to interpret plan terms and determine benefits in the first instance under the full terms of class members plans. Plaintiffs are bound by the consequence of choosing which remedies to pursue for the class. If the Court orders reprocessing over UBH's objection, UBH must be permitted to exercise its plan-conferred discretion and its fiduciary duty to apply the terms of those plans by only paying benefits to members entitled to receive them under the terms of their plans.

## III. Plaintiffs' Arguments About Other Guidelines And Benefit Decisions for Non-Class Members Do Not Support Classwide Remedies, and Instead Demonstrate Why The Classes Should Be Decertified (Topic 6).

### A. Plaintiffs' Argument About A 2019 Policy That Is Not At Issue In This Case Is Irrelevant And Confirms That The Classes Should Be Decertified.

Since January 31, 2019, UBH has used the ASAM criteria to determine the medical necessity of covered substance use disorder services under ERISA-governed benefit plans in all 50 states.[11] ECF No. 451 at 14–16. Plaintiffs do not dispute this fact, and instead refer to a November 2019 Behavioral Clinical Policy (the "2019 Policy") and the foundationless, undisclosed, and erroneous declaration of their expert, Dr. Marc Fishman, to announce that UBH has somehow "eliminat[ed] coverage for low-intensity residential services" at ASAM Levels 3.1 and 3.3. ECF No. 455, at 16.[12] Plaintiffs' argument about the 2019 Policy is not only wrong as a factual matter, it underscores why the classes should be decertified.

---

[11] In New York, UBH uses the state-mandated LOCADTR tool for substance use disorder medical necessity determinations, but uses the ASAM Criteria for self-funded plans. *See* Decl. of Dr. Lorenzo Triana., ECF No. 451-2, ¶ 4.

[12] Dr. Fishman does not declare that he has reviewed a single benefit plan that the 2019 Policy purports to interpret, including relevant plan definitions for terms such as "residential (Continued...)

On its face, and contrary to Plaintiffs' unfounded speculation, the 2019 Policy *does not* interpret plan terms relating to "generally accepted standards of care" or "medical necessity." Rather, the Policy is expressly intended to describe "coverage" under certain plans administered by UBH. Decl. of Meiram Bendat Ex. 1, ECF No. 455-3, at 1. The Policy provides that it must be read in conjunction with "the member's specific benefits." *Id*. If a particular plan defines coverage "differently or there is otherwise a conflict between [the] guideline and the member's specific benefit, the member's specific benefit supersedes [the] guideline." *Id*. Further, in the event that a member's plan provides for different coverage, the Policy explicitly notes that "[o]ther clinical criteria may apply."

This is confirmed by the declaration of UBH Medical Director Dr. Andrew Martorana. Unlike Dr. Fishman, who has never read any of the plans covered by the 2019 Policy and has no idea how it is used, Dr. Martorana confirms that the 2019 Policy is not based on, and does not interpret, plan terms regarding "medical necessity" or "generally accepted standards of care." Decl. of Dr. Andrew Martorana ¶ 6. The Policy instead relates to *different* plan terms, including plan terms regarding state licensure requirements, plan definitions of covered behavioral health services and residential treatment, and plan exclusions for "transitional living" services. *Id*. ¶ 6; Bendat Decl. Ex. 1, ECF No. 455-3, at 2. Where the policy applies, UBH Care Advocates and Medical Directors are to deny coverage based on the 2019 Policy (or the plan terms addressed by the 2019 Policy), and *not* based on the ASAM Criteria or plan terms relating to medical necessity or generally accepted standards of care. Martorana Decl. ¶ 7. In the event that UBH were to determine these are covered behavioral health services under a member's plan and proceed to review the requested ASAM 3.1 or 3.3 services for medical necessity, UBH Care Advocates and

treatment," "transitional living," or "experimental/unproven services." ECF No. 455-1; *see also* Trial Tr. 196:10 – 197:6 (Dr. Fishman) (Dr. Fishman testifying that he did not review any benefit plans in preparation for trial, was not offering an opinion "on any of the language that might or might not be in those health benefit plans," and had no "information regarding whether or not plan restrictions cover, for instance, residential treatment"). Further, Dr. Fishman did not offer any opinions about ASAM Level 3.3 at trial, and Plaintiffs' belated attempt to supplement the record with undisclosed expert opinion about ASAM Level 3.3 (untethered to any plan terms) should be rejected for that additional reason.

1    Medical Directors are to apply the ASAM Criteria. *Id*. at ¶ 8; UBH's Opening Supp. Remedies

2    Br., ECF No. 451, at 15; Triana Decl., ECF No. 451-2, ¶ 4.

3          Plaintiffs have previously assured the court that their proposed mandatory injunction

4    dictating UBH's use of particular guidelines "does not purport to prohibit UBH, in the future,

5    from applying any enforceable exclusions that exclude coverage for one or more of those sub-

6    levels" of the ASAM Criteria. Pls. Reply ISO their Requested Remedies, ECF 435, at 69. They

7    insisted that, under their proposed injunction, UBH would only be required to apply the ASAM

8    Criteria "when determining whether services are consistent with generally accepted standards of

9    care." *Id*. But Plaintiffs' new request for the court to override a *different policy* relating to

10   *different plan terms* for countless *different benefit plans* (none of which are in the trial record)

11   shows those were false assurances.

12         As Plaintiffs now effectively concede, their requests for mandatory injunctive relief and a

13   "monitor" go much further, and would force UBH to offer coverage for services rendered at

14   ASAM Levels 3.1 and 3.3 without regard to the unique terms of thousands of benefit plans, and

15   whether the plans cover those services. This contradicts Plaintiffs' prior concession that denials

16   based on plan exclusions of such services is entirely "proper." *See* Pls. Resp. to UBH Supp.

17   Remedies Br., ECF 455 at 18. In challenging the 2019 Policy *post-trial*, Plaintiffs are not seeking

18   a class-wide determination on the meaning of generally accepted standards of care, but rather an

19   improper declaration by this Court, with no class-wide proof, that thousands of benefit plans that

20   were never introduced into evidence all provide coverage for ASAM Levels 3.1 and 3.3. Both

21   ERISA and Rule 23 prohibit such a result. *See Wright*, 360 F.3d at 1100; *Bowman*, 1997 WL

22   118437, at *6 (in an ERISA case, court lacked authority to "require the plan administrator . . . to

23   provide coverage to a person who is not eligible to be covered under the express terms of the

24   Plan"); *Marlo*, 251 F.R.D. at 483, 488.

25         In any event, Plaintiffs' focus on the 2019 Policy is a distraction from the question asked

26   by this Court on the status of UBH's adoption of different guidelines. As UBH stated in its prior

27   brief, UBH uses the ASAM Criteria to determine the *medical necessity* of covered substance use

28   disorder services in all 50 states, with the exception of fully-insured plans governed by New York

law, and UBH's use of the ASAM Criteria is not limited by any regulatory impediments. *Id.*;
Decl. of Kristen Clark, ECF No. 451-4, ¶¶ 7–8.[13] Whether a specific ASAM level is otherwise
covered by a plan is a separate question that is not before this Court, and can only be answered by
reviewing the individual terms of that specific benefit plan. None of those plans are in the trial
record, and Plaintiffs fail to offer any competent evidence that the 2019 Policy is relevant, much
less that it misconstrues any plan to which it applies. *See* UBH's Resp. to Pls. Admin Mot. to
Submit Newly Discovered Evid., ECF No. 447, at 2–4. Plaintiffs' conclusory argument about this
Policy, which was developed years after trial, is wrong, irrelevant, and wholly improper.

**B.     Plaintiffs' Argument About A Benefit Decision Issued Outside The Class Period Under Plaintiffs' Preferred Guidelines Confirms That Plaintiffs' Claims Turn On Individualized Questions Of Medical Necessity And Demonstrates Why Appointment Of A Special Master Is Inappropriate.**

Plaintiffs' discussion of a 2020 benefit decision involving "Jane Brown", issued nearly
*three years* after the close of the class period, and based on Plaintiffs' preferred LOCUS
guidelines, is equally irrelevant to any issue before this court. *See* Pls. Unredacted Resp. to
UBH's Supp. Remedies Br., ECF No. 454-5, at 19–20; Bendat Decl., Ex. 2, ECF No. 454-6. Jane
Brown has already challenged this benefit determination in a separate, individual lawsuit filed by
Plaintiffs' counsel. *See Brown v. United Behavioral Health, et al.*, Case No. 3:20-cv-04129 (N.D.
Cal.). Plaintiffs' unfounded speculation about the meaning of notes prepared by a UBH medical
director during that individual medical necessity determination simply confirm that Plaintiffs'
claims turn on individualized questions of causation, requiring decertification.

Plaintiffs' argument about this recent benefit determination also demonstrates why
appointment of a special master is inappropriate. In the event that the Court orders reprocessing
over UBH's objection, other disputes will inevitably arise over UBH's application of the ASAM,

---

[13] Plaintiffs misconstrue Ms. Clark's declaration to falsely cast her statement regarding
required regulatory approvals as an attempt to "[i]nterpret[] the Court's questions about
limitations as narrowly as possible". ECF 455 at 16. But as Ms. Clark's declaration makes clear,
her statement that "UBH's ability to use the ASAM . . . criteria is [not] currently limited by or
inhibited due to a required regulatory approval" reflects a narrow issue relating to the timing of a
regulatory submission in South Carolina. UBH's Opening Supp. Remedies Br., ECF No. 451, at
15 n.5; Clark Decl., ECF No. 451-4 ¶¶ 7–8.

1    LOCUS, CASII, and/or ECSII criteria, or other coverage terms UBH may interpret in the exercise

2    of its discretion during reprocessing. Normally, these disputes would be addressed through

3    administrative appeals and, following exhaustion, individual litigation if necessary. Plaintiffs ask

4    the Court (over UBH's objection) to appoint a special master to oversee any reprocessing order.

5    But recommendations by a special master about any individual dispute would be subject to

6    challenge by either Plaintiffs or UBH, and the Court would be required to conduct a *de novo*

7    review. Fed. R. Civ. P. 53(f)(3), (f)(4). For this reason:

8           in litigation of this size, the appointment of a special master will often present
            more problems than it will solve. If the master makes significant decisions

9           without careful review by the trial judge, judicial authority is effectively delegated
            to an official who has not been appointed pursuant to article III of the

10          Constitution; if the trial judge carefully reviews each decision made by the
            master, it is doubtful that judicial time or resources will have been conserved to

11          any significant degree.

12   *Meeropol v. Meese*, 790 F.2d 942, 961 (D.C. Cir. 1986).

13          To the extent the Court affords any consideration to this 2020 benefit decision for a non-

14   class member (it should not), it simply confirms that disputes about individualized benefit

15   decisions made in reprocessing should not be resolved by a special master (and ultimately by this

16   Court). To do so would lead to the very result this Court held would *preclude* class certification:

17   "ask[ing] the Court to make determinations as to whether class members were *actually* entitled to

18   benefits (which would require the Court to consider a multitude of individualized circumstances

19   relating to the medical necessity for coverage and the specific terms of the member's plan)."

20   Order Granting Class Cert., ECF No. 174, at 31 (emphasis in original). Rather, any such disputes

21   should be resolved first through the administrative appeal process and, if necessary, separate

22   litigation brought by the member, as Jane Brown has filed.

23          **C.    Plaintiffs' Argument About A Custodial Care Guideline That Was Not Used
                    And Is Not At Issue In This Case Is Irrelevant.**

24          Data from UBH's adverse benefit determination database shows that its 2019 Custodial

25   Care Coverage Determination Guideline ("CDG") was not used to deny a single request for

26   residential treatment benefits during the approximately one-year period it was in effect. Triana

27   Decl., ¶ 14. Plaintiffs' discussion about a guideline that was not used to deny residential treatment

28

1    benefits, and that was adopted nearly two years after the close of the class period (*see id.*, ¶ 12) is

2    irrelevant.

3            Plaintiffs misrepresent the record, arguing that it is "'impossible' to tell from [UBH's]

4    database fields alone whether any other criteria were used in a given denial." Pls. Opp. to UBH

5    Supp. Remedies Br., ECF 455, at 20, citing UBH's Resp. to Pls. Remedies Br., ECF No. 429, at

6    29 n.20. But the trial testimony Plaintiffs cite from UBH witness Frances Bridge was limited to

7    whether the UBH data fields would reflect application of the Texas Department of Insurance

8    Chemical Dependency Standards, which were not an available choice in UBH's LINX database

9    during the class period. See Trial Tr. at 1493:11–15. Contrary to Plaintiffs' assertion, the trial

10   evidence confirms that it *is possible* using UBH's data system to know whether an adverse benefit

11   determination was based on UBH's Custodial Care CDG. Trial Ex. 255 (identifying adverse

12   benefit determinations for the residential treatment level of care based on UBH's Custodial Care

13   CDG). Plaintiffs' misleading, irrelevant, and baseless argument about the discontinued 2019

14   Custodial Care CDG should be disregarded.

15       **D.    Plaintiffs' Argument About CDGs That Are Not In Evidence, And That
               Plaintiffs Admit Do Not Incorporate UBH's Former LOCGs, Is Irrelevant.**

16           Finally, as Plaintiffs have argued for years, Plaintiffs challenge UBH's diagnosis-specific

17   CDGs in this case "only to the extent they incorporate the Level of Care Guidelines." Pls. Post-

18   Trial Br., ECF No. 392, at 5. The Court has not ruled on whether any CDG "incorporated" any

19   portion of UBH's LOCGs (let alone the portions challenged by Plaintiffs in this case). Aside from

20   their erroneous "incorporation theory," Plaintiffs have never offered a shred of evidence that any

21   aspect of UBH's numerous, diagnosis-specific CDGs are inconsistent with the terms of any plan

22   or with generally accepted standards of care.

23           Remarkably, in their Response, Plaintiffs now take issue with UBH's current CDGs even

24   though UBH "has removed from the CDGs all of the previously-existing cross-references to its

25   Level of Care Guidelines". ECF 455, at 22 n.14. They argue for the first time that UBH's current

26   CDGs (which are not in evidence) somehow violate the terms of the plans described by those

27   CDGs (which are also not in evidence) *because* those CDGs "do not purport to incorporate" level

28

1    of care criteria. ECF 455, at 21–22.[14] Plaintiffs' naked attempt to inject a completely new

2    argument about the CDGs should be rejected.

3          Plaintiffs' argument also shows why their request for a prospective injunction compelling

4    the use of other guidelines to interpret future plans that are not in evidence (and not at issue) is

5    improper. The Court cannot predetermine the proper construction of plans the Court has never

6    had an opportunity to review. *Gilliam v. Nev. Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007)

7    ("The intended meaning of even the most explicit language can, of course, only be understood in

8    the light of the context that gave rise to its inclusion") (quotation omitted); *Dupree v. Holman*

9    *Prof'l Counseling Centers*, 572 F.3d 1094, 1097 (9th Cir. 2009) (proper interpretation of an

10   ERISA plan requires courts to "look at the agreement's language in context and construe each

11   provision in a manner consistent with the whole such that none is rendered nugatory"). To the

12   extent Plaintiffs now argue that their claims encompass CDGs issued years later that *do not*

13   incorporate the discontinued LOCGs, and that interpret plans outside the class period and not

14   before the Court, this only highlights why their requested class-wide remedies are wholly

15   improper. Plaintiffs' eleventh-hour attempt to insert an entirely new argument about CDGs that

16   are neither in evidence nor at issue in this case should be rejected.

17

18   Dated:  July 2, 2020                    **CROWELL & MORING LLP**

19

20                                          */s/ Jennifer S. Romano*
                                            Jennifer S. Romano
21                                          Attorneys for UNITED BEHAVIORAL HEALTH

22

23

24        [14] Citing no evidence, Plaintiffs argue that UBH's current CDGs "fall well short of"
     generally accepted standards of care for the sole reason that the CDGs "do not even mention
25   LOCUS or CASII". *Id.* at 21. But even the improper and irrelevant new opinions offered by Dr.
     Fishman are silent on UBH's current CDGs. Plaintiffs offer no evidence that UBH's current
26   CDGs are inconsistent with generally accepted standards. Whether UBH's current CDG's
     "mention LOCUS or CASII" is immaterial; UBH was not required to mention, incorporate, or
27   adopt LOCUS or CASII specifically. FFCL, ECF No. 418, at ¶ 57 ("[t]here is no single source of
     generally accepted standards of care. Rather, they can be gleaned from multiple sources.").

28