1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7

8

9 DAVID WIT, et al.,

Plaintiffs,

10

v.

11

UNITED BEHAVIORAL HEALTH,

12

Defendant.

13

14 GARY ALEXANDER, et al.,

15

Plaintiffs,

16

v.

17

UNITED BEHAVIORAL HEALTH,

18

Defendant.

19

20

Case No.  14-cv-02346-JCS
Related Case No. 14-cv-05337 JCS

**FURTHER FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

21 **I.      INTRODUCTION**

22         On February 28, 2019, the Court issued its Findings of Fact and Conclusions of Law

23 ("FFCL") following a bench trial.  The Court deferred ruling on the question of whether the

24 diagnosis-specific Coverage Determination Guidelines ("CDGs") listed in Trial Exhibit 880

25 incorporate UBH's Level of Care Guidelines ("LOCGs").   The Court's findings of fact and

26 conclusions of law on that question are set forth herein.  The parties have consented to the

27

28

United States District Court
Northern District of California

1    jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).[1]

2    **II.    FINDINGS OF FACT**

3        **217.**    Plaintiffs challenge 216 CDGs in this action.  Seven of these are the Custodial Care

4    CDGs that the Court has found were inconsistent with generally accepted standards of care.  *See*

5    FFCL ¶¶ 133-145.  Plaintiffs challenge these CDGs on the additional ground that they incorporate

6    the LOCGs that the Court has found are inconsistent with generally accepted standards of care.

7    *See* Plaintiffs' Post-Trial Brief at 6 ("While the Custodial Care CDGs do contain incorporation

8    language, Plaintiffs also challenge the Custodial Care CDGs independently of their incorporation

9    of the LOCGs.").  The remaining 209 CDGs are diagnosis-specific CDGs that Plaintiffs challenge

10   solely on the basis that they incorporate the level of care criteria in UBH's LOCGs.  Plaintiffs

11   have identified eight categories of language used in these CDGs to incorporate the LOCGs.  Trial

12   Ex. 880-0008 to -0020.   The categories are as follows:

13       **Category A**:  the CDG contains a reference to a plan exclusion for
14       services that are "not consistent with . . . [UBH's] level of care
         guidelines as modified from time to time" or an exclusion for
15       services that is similar to it.

16       **Category B**:   the CDG contains language stating that UBH
         "maintains that treatment . . . should be consistent with its level of
17       care guidelines . . . ." or language similar to it.

18       **Category C**:   the CDG contains language stating that UBH
         "maintains clinical protocols that include the Level of Care
19       Guidelines which describe the scientific evidence, prevailing
         medical standards and clinical guidelines supporting our
20       determinations regarding treatment . . . [that are] available . . . upon
         request" or language similar to it.

21       **Category D**:   the CDG contains language stating that UBH
22       "maintains clinical protocols that describe the scientific evidence,
         prevailing medical standards and clinical guidelines supporting our
23       determinations regarding [treatment/specific services] . . . [that are]
         available . . . upon request," or language similar to it, but this
24       language does not include the words, "Level of Care Guidelines."

25       **Category E**: the CDG cites a Level of Care Guideline as support in
         a specific paragraph or paragraphs.

---

[1] This order should be read in conjunction with the Court's previous Findings of Fact and
Conclusions of Law; the Court does not repeat here findings and conclusions related to the CDGs
contained in its previous order.   The numbering of the findings of fact and conclusions of law
picks up where the previous order left off.

United States District Court
Northern District of California

United States District Court
Northern District of California

**Category F**: the CDG contains language that is similar to the "Common Criteria" and/or language relating to various levels of care from a specific Level of Care Guideline.

**Category G**:  the CDG contains all of the provisions of the "Common Criteria and Clinical Best Practices for All Levels of Care" section of UBH's 2015 and 2016 Level of Care Guidelines.

**Category H**: the CDG includes a section entitled "Level of Care Guidelines," with a hyperlink to the Level of Care Guidelines, which states: "Optum/ OptumHealthBehavioral Solutions of California Level of Care Guidelines are available at: https://www.providerexpress.com/content/opeprovexpr/us/en/clinicalresources/guidelinespolicies/locg.html.  The Level of Care Guidelines are a set of objective and evidence-based behavioral health guidelines used to standardize coverage determinations, promote evidence-based practices, and support members' recovery, resiliency, and wellbeing."

See Trial Ex. 880-0008-0010, ¶¶ 30(a)-(h); Trial Ex. 880-0012 to -0020.

218.    Although UBH does not agree with Plaintiffs that use of this language results in incorporation of the LOCGs in the CDGs, it has stipulated that the language in these categories is used in the CDGs as reflected in Exhibit A to Trial Exhibit 880.  The Court further finds that although not reflected in Exhibit A, the CDGs in the following exhibits fall within Category G because they contain all the criteria in the Common Criteria in the 2015 and 2016 LOCGs: Trial Exs. 146, 147, 153, 155, 173, 178, 179, 180, 181, 182, 183, 207.

219.    Based on the stipulation of the parties and the findings set forth above, the Court finds that all but 30 of the CDGs Plaintiffs challenge contain Category A language, which expressly states that coverage is excluded under the CDG for services that are not consistent with United Behavioral Health's LOCGs.  For example, the CDG for Outpatient Treatment of Obsessive Compulsive Disorder that was effective from June 1, 2010 to February 1, 2012 contained no level of care criteria but included an exclusion for services and supplies that UBH determines are "[n]ot consistent with United Behavioral Health's level of care guidelines or best practice guidelines as modified from time to time."  Trial Ex. 9-0007.  This language on its own is sufficient to incorporate the level of care criteria of the LOCGs into these CDGs.  Therefore, the Court finds that all of the CDGs that contain Category A language, as reflected in Trial Ex. 880, Exhibit A, incorporate UBH's LOCGs.

3

United States District Court
Northern District of California

**220.** Of the 30 CDGs that do not contain Category A language, 15 CDG's contain Category C language that equally clearly incorporates the LOCGs.[2]  These CDGs provide that a covered service must be "[c]onsistent with nationally recognized scientific evidence as available, and prevailing medical standards and clinical guidelines as described below" and then expressly state that UBH's LOCGs "describe the scientific evidence, prevailing medical standards and clinical guidelines supporting [its] determinations."  *See, e.g.,* Trial Ex. 38-0005 to -0006 (CDG for Not Otherwise Specified Conditions (NOS) effective April 1, 2011 to September 1, 2012).

**221.** Another 10 CDGs that do not contain Category A or Category C language contain Category D language very similar to Category C language.[3]  Like the CDGs that contain Category C language, those that use Category D language make clear that covered services must be "[c]onsistent with nationally recognized scientific evidence as available, and prevailing medical standards and clinical guidelines as described" and further state that UBH "maintains clinical protocols . . . that describe the scientific evidence, prevailing medical standards and clinical guidelines supporting [its] determinations."  *See, e.g.,* Trial Ex. 15-0004 (CDG for Conduct Disorders effective October 1, 2010 to April 17, 2012).  While Category D language does not use the term "LOCGs," the Court finds that in referring to "protocols" in this language UBH was referring to its LOCGs.   Therefore, the meaning of the Category D language is the same as the Category C language, that is, it refers to the LOCGs and thereby incorporates the LOCGs into the CDGs that use this language.

**222.** There are only 5 challenged CDGs that do not contain Category A, C or D language.  All of them contain Category E language.  *See* Trial Ex. 80 (CDG for Impulse Control Disorder effective November 1, 2012 to September 1, 2013); Trial Ex. 100 (CDG for Impulse Control Disorders effective September 1, 2013 to October 1, 2014);  Trial Ex. 144 (CDG for Impulse Control Disorders effective October 1, 2014 to October 1, 2015); Trial Ex. 175 (CDG for Impulse Control Disorders effective October 1, 2015 to March 1, 2016); Trial Ex. 194 (CDG for

---

[2] These CDGs are listed in Trial Ex. 880, Exhibit A and are found in Trial Exhibits 38, 67, 98, 102, 138, 141, 143, 145, 157, 170, 172, 176, 191, 212 and 213.
[3] These CDGs are listed in Trial Ex. 880, Exhibit A and are found in Trial Exhibits 15, 16, 18, 23, 43, 55, 56, 58, 59 and 81.

Impulse Control Disorders effective March 1, 2016 to February 1, 2017). The Court finds that this language incorporates UBH's LOCGs in all of these CDGs. In particular, all of these CDGs provide that coverage for Impulse Control Disorder as a primary diagnosis is excluded but that where a plan covers Impulse Control Disorder as a *secondary* diagnosis, treatment must be "consistent with available best practices and generally accepted standards of medical practice" and reference in parentheses "Optum Level of Care Guidelines (LOCGs)" and the year of the LOCGs that were in effect at the time. *See* Trial Ex. 80-0003 ("In the event that the benefit plan document provides coverage for an Impulse Control Disorder as a 'secondary diagnosis', services should be consistent with available best practices and generally accepted standards of medical practice (Optum Level of Care Guidelines (LOCGs), 2012."); Trial Ex. 100-0003 ("In the event that the benefit plan document provides coverage for an Impulse Control Disorder as a 'secondary diagnosis', services should be consistent with available best practices and generally accepted standards of medical practice (Optum Level of Care Guidelines (LOCGs), 2013."); Trial Ex. 144-0002 ("In the event that the benefit plan document provides coverage for an Impulse Control Disorder as a 'secondary diagnosis', services should be consistent with available best practices and generally accepted standards of medical practice (Optum Level of Care Guidelines (LOCGs), 2014."); Trial Ex. 175 ("In the event that the benefit plan document provides coverage for an Impulse Control Disorder as a 'secondary diagnosis', services should be consistent with available best practices and generally accepted standards of medical practice (Optum Level of Care Guidelines (LOCGs), 2015."); Trial Ex. 194-0002 ("In the event that the benefit plan document provides coverage for an Impulse Control Disorder as a 'secondary diagnosis', services should be consistent with available best practices and generally accepted standards of medical practice (Optum Level of Care Guidelines (LOCGs), 2016.").

**223.** The Court's finding that all of the CDGs listed in Trial Exhibit 880, Exhibit A incorporate UBH's LOCGs finds further support in the fact that the vast majority of them contain not just one of the categories of incorporating language described above but *multiple* categories of language incorporating the LOCGs. For example, the September 2010 CDG for Residential Treatment for Major Depressive disorder contains both Category A and C language and *also*

Category B language stating that "United Behavioral Health maintains that residential treatment of MDD should be consistent with its Level of Care Guidelines and the Best Practice Guidelines adopted by United Behavioral Health."  There are also 41 CDGs that contain – verbatim – the Common Criteria of the 2015 and 2016 LOCGs (Category G).  These CDGs also contain Category A language.  In addition, many of the challenged CDGs in the later years of the class period (2016 and 2017) contain, along with other categories of incorporating language, Category H language, that is, a hyperlink to the LOCGs, along with the statement that "[t]he Level of Care Guidelines are a set of objective and evidence-based behavioral health guidelines used to standardize coverage determinations, promote evidence-based practices, and support members' recovery, resiliency, and wellbeing."

**224.**     The CDGs can be grouped, by effective date, to identify which version of the LOCGs they incorporate. The parties have stipulated to seven such groupings and have identified the CDGs falling within each group.  Trial Ex. 880-0006 to -0008.   All of the CDGs within a group incorporate the version of the LOCGs corresponding to that Group, as follows:

- The CDGs in Group 1 incorporate the 2011 Level of Care Guidelines (Trial Ex. 880-0021 to -0022 (Ex. A.1)).

- The CDGs in Group 2 incorporate the 2012 Level of Care Guidelines (Trial Ex. 880-0023 to -0026 (Ex. A.2)).

- The CDGs in Group 3 incorporate the 2013 Level of Care Guidelines (Trial Ex. 880-0027 to -0030 (Ex. A.3)).

- The CDGs in Group 4 incorporate the 2014 Level of Care Guidelines (Trial Ex. 880-0031 to -0033 (Ex. A.4)).

- The CDGs in Group 5 incorporate the 2015 Level of Care Guidelines (Trial Ex. 880-0034 to -0036 (Ex. A.5)).

- The CDGs in Group 6 incorporate the 2016 Level of Care Guidelines (Trial Ex. 880-0037 to -0038 (Ex. A.6)).

- The CDGs in Group 7 incorporate the 2017 Level of Care Guidelines (Trial Ex. 880-0039 (Ex. A.7)).

United States District Court
Northern District of California

The Court adopts these groupings for the purposes of identifying which version of the LOCGs is incorporated into each of the challenged CDGs.

225.    During the class period, UBH's Peer Reviewers treated the CDGs as incorporating the LOCGs when making benefits determinations.  Although Dr. Theodore Allchin, who conducts peer reviews at UBH, testified at trial that there was one CDG in 2011 that did *not* incorporate the LOCGs, that testimony was not credible because he could not identify that CDG.  Trial Tr. 1444:4-19.  Rather, the Court finds credible Dr. Allchin's testimony at his deposition that the CDGs *do* incorporate the LOCGs. Trial Tr. 1445:2-7.  Likewise, the Court finds that Dr. Triana's testimony that UBH Peer Reviewers who were making coverage determinations under a CDG would not "have been allowed to open up the Level of Care Guidelines and apply them in a CDG benefit determination" if the words of the CDG were not "copied and pasted" into the CDG is not credible to the extent he was suggesting that Peer Reviewers were not allowed to review the LOCGs in making coverage determinations under the CDGs.  *See* Trial Tr. 1725:15-19.   This testimony is not consistent with evidence that the diagnosis-specific CDGs referred to the LOCGs and sometimes were even hyperlinked to them.

## III.    CONCLUSIONS OF LAW

226.   Because the CDGs discussed above incorporate UBH's LOCGs, which the Court has found to be more restrictive than generally accepted standards of care, UBH's use of these CDGs to make benefits determinations was wrongful for the same reasons its use of the LOCGs was wrongful.

**IT IS SO ORDERED**

Dated:  August 6, 2020

_____
JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California