PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs and the Classes*
*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br>Action Filed: May 21, 2014<br><br>**PLAINTIFFS' RESPONSE TO UBH'S MOTION FOR LEAVE TO SUBMIT EVIDENCE IN OPPOSITION TO PROPOSED REMEDIES ORDER** |
| GARY ALEXANDER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-05337-JCS<br>Action Filed: December 4, 2014 |

Plaintiffs submit this response to UBH's Administrative Motion for Leave to Submit Evidence in Opposition to Proposed Remedies Order (*Wit* ECF 484) ("Motion") to correct UBH's mischaracterization of Plaintiffs' position with respect to coverage of treatment at the same level of care as a Remanded ABD but with a different provider; to illustrate how the Motion offers nothing new and instead rehashes issues the parties have already briefed, extensively; and to explain why UBH's arguments are meritless in any event.

## I. NOTHING UBH SUBMITS OR ARGUES IS NEW, AND UBH'S MOTION VIOLATES THIS COURT'S ORDERS.

UBH submits its Motion purportedly "in light of statements made by Plaintiffs' counsel at the September 2, 2020, remedies hearing." Mot. 1:3-4. This is pure pretext. UBH's motion is procedurally improper.

UBH submitted 106 pages of Court-authorized briefing, plus exhibits, to address remedies issues. At the conclusion of the remedies hearing, the Court ordered the parties to submit redlined remedies orders to clarify specific provisions, but prohibited the parties from submitting additional legal briefs or arguments. Remedies Hr'g. Tr. at 129 ("No briefing. Just language."). UBH's motion violates that prohibition. It re-hashes arguments UBH has made before, sometimes repeatedly, and which Plaintiffs have previously addressed.

UBH's belatedly submitted evidence fares no better. The Court could not have been clearer that any evidence that existed at the time of trial, and that any party wanted to rely on at the remedies phase, had to be presented at trial. Tr. of Pretrial Conf. (Oct. 5, 2017) at 21:2-3. The spreadsheets and other documents UBH submits come from UBH's files, were produced by UBH in this litigation long before trial, and could have been submitted at any point before now. Yet UBH made no effort to offer this material to the Court until now—at the very end of the process, after Plaintiffs have been foreclosed from challenging the evidence through cross-examination or by offering evidence of their own.

UBH continues to act as if this Court's orders, like ERISA, do not apply to it. This misplaced belief must be corrected.

## II. CLASS MEMBERS ARE ENTITLED TO COVERAGE OF TREATMENT OBTAINED AT THE SAME LEVEL OF CARE AS THEIR WRONGFULLY DENIED REMANDED ABDS.

As set forth in Plaintiffs' proposed remedies order, in the event that (1) reprocessing reveals that a class member's Remanded ABD should have been approved; and (2) the class member submits records showing that he or she obtained treatment at the same level of care for which UBH denied coverage in the Remanded ABD, UBH should be required to approve benefits for such treatment. *See Wit* ECF No. 476-1 at 10 (¶ III.D.2.c.i). The parties have already briefed these issues. *See, e.g.*, ECF No. 426 at 18:17-20; ECF No. 428-4 at 20-21.

UBH now suggests that, at the September 2nd hearing, Plaintiffs "agreed" that such treatment should be covered only if Class Members obtained treatment from *the same provider* as the one at issue in the pre-service denial. Mot. at 1:8-15 (citing Remedies Tr. 76:23-80:14). Not so. In the colloquy between the Court and Plaintiff's counsel that UBH cites, the distinction being discussed was between treatment obtained at the same *level of care* as the treatment for which the class member originally requested coverage, and treatment at a *different* level of care. Remedies Hr'g. Tr. at 77-78 ("[A]t the end of the day you don't expect UBH to pay for anything other than the level of care [that] was applied for? Ms. Reynolds: Correct."). *See also id*. at 74-75 ("If they then go and get a different level of care, that's really a different request for coverage. . . .").

There is no equitable justification for excluding class members from the reprocessing remedy if, following UBH's wrongful denial of benefits, they actually obtained treatment *at the same level of care* but from a different provider. After all, UBH used its Level of Care Guidelines to assess whether services at a given level of care were consistent with generally accepted standards of practice. The criteria at issue in this case, which this Court invalidated, focused on characteristics of the patient and the level of care, not on the identity of the provider. If, after reprocessing, UBH finds that services should have been authorized at the requested level of care, and the class member obtained services at that level of care, UBH should cause benefits to be paid for those services.

## III. CLASS MEMBERS MUST HAVE AN OPPORTUNITY TO COMPLETE THE ADMINISTRATIVE RECORD AS TO TREATMENT OBTAINED AT THE SAME LEVEL OF CARE AS THE REMANDED ABD.

UBH also speciously argues that the fact that its own records for the claims sample rarely reflect submission of post-service claims for the same level of care after UBH denied a pre-service claim "shows that Plaintiffs' requested reprocessing remedy likely will not result in any actual payment of benefits for a majority of the class." Mot. 3:10-11. But UBH's evidence does not prove any such thing. As Plaintiffs have explained, a pre-service denial is highly likely to deter a beneficiary from submitting post-service claims for treatment at the same level of care. After all, a rational patient, having just been told that UBH deems his or her treatment not medically necessary, would reasonably conclude that asking for *the same coverage* again would be futile, as the parties already briefed. *See* ECF No. 426 at 11:14-12:15; ECF 428-4 at 23:1-9; ECF 434-4 at 48-52. Similarly, a provider is unlikely to push for an appeal of the pre-authorization denial if the patient is paying out-of-pocket. To the extent beneficiaries were deterred from submitting post-service claims after having been denied coverage, UBH's records likely do not accurately reflect whether a given beneficiary actually received services or paid out of pocket for them. Thus, the small number of post-denial, post-service claims in UBH's records does not support the conclusion that class members rarely obtained the requested treatment.

It is for this reason that Plaintiffs seek a remedies order that requires UBH to supplement the class members' administrative records, including through submissions by class members and their providers. *See Wit* ECF No. 476-1 at 6-7 (¶ III.A.1-3). Even if it turns out to be relatively infrequent that class members paid out of pocket for the denied services without submitting post-service claims, those class members who did pay—or who still owe providers for those services—remain entitled to reprocessing and, if coverage should have been authorized, they are entitled to payment of benefits.

## IV. CLASS MEMBERS WHO COULD NOT PAY FOR TREATMENT AFTER UBH WRONGFULLY DENIED COVERAGE ALSO ARE ENTITLED TO REPROCESSING.

UBH also rehashes, again, its bordering-on-cruel argument that if UBH denied a class member's pre-service request for coverage, and the class member was not wealthy enough to pay

out-of-pocket or otherwise obtain the treatment their providers prescribed and deemed medically necessary, UBH should not even have to reprocess such claims, despite having breached its fiduciary duties to those class members in numerous respects. Mot. 3:13-19. In effect, UBH takes the position that if the patient was forced to forego medically necessary treatment, UBH should be allowed to get away with its ERISA violations.

The Court expressly rejected that theory, affirming that every class member is entitled to reprocessing, Remedies Tr. at 118. And rightfully so, for the reasons Plaintiffs have explained before. ECF No. 426 at 11:14-12:15; ECF 434-4 at 21-25, 46-52.[1] Among other things, class members and UBH alike need the members' insurance records properly to reflect what care was necessary. Without reprocessing, the class members' records will remain distorted by including denials of care that, in fact, they needed, which could impact future coverage when UBH evaluates the patient's clinical history and prior response to treatment. Moreover, class members who did not pay out-of-pocket for care may nevertheless have individual claims for relief arising from UBH's improper denial of authorization for their medically necessary care, such as disgorgement, surcharge, a return of premiums, or other equitable relief. They also may choose to use the information in another way, such as to pressure their employers to change benefit administrators or to lobby their legislators. Each class member was injured when UBH adopted its self-serving Guidelines and then used them to deny coverage, and each class member is entitled to be returned to the state he or she would have been in without the breach. Accordingly, each class member is entitled to reprocessing.

* * *

For these reasons, UBH's Motion to submit evidence far too late, in support of arguments the parties have amply briefed and the Court has already rejected, should be denied.

---

[1] UBH also, for the first time, seems to draw a distinction between "reconsideration" of the Remanded ABDs and "reprocessing" of those denials. Mot. 3:13. It is unclear what UBH means, or is trying to accomplish, by injecting such a distinction at the 11th hour. In any event, the parties and the Court have consistently used the term "reprocessing" to refer to the standard, default disposition when an ERISA fiduciary incorrectly interprets a plan term.

Dated: September 21, 2020

ZUCKERMAN SPAEDER LLP

*/s/ Caroline E. Reynolds*
Caroline E. Reynolds (admitted *pro hac vice*)
Adam B. Abelson (admitted *pro hac vice*)
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)

PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)

*Counsel for Plaintiffs and the Classes*