1
2
3
4                        UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    DAVID WIT, et al.,
                                          Case No.  14-cv-02346-JCS
8              Plaintiffs,                 Related Case No. 14-cv-05337 JCS

9        v.
                                          **ORDER PARTIALLY DECERTIFYING**
10   UNITED BEHAVIORAL HEALTH,            **CLASSES, REQUIRING NOTICE TO**
                                          **EXCLUDED CLASS MEMBERS,**
11             Defendant.                  **STAYING ALL PROCEEDINGS AS TO**
                                          **THOSE CLASS MEMBERS AND**
12   ─────────────────────────            **TOLLING LIMITATION PERIOD ON**
     GARY ALEXANDER, et al.,              **THEIR INDIVIDUAL CLAIMS**
13
                                          Dkt. No. 425
14             Plaintiffs,

15       v.

16   UNITED BEHAVIORAL HEALTH,

17             Defendant.

18

19

20   **I.      INTRODUCTION**

21           Defendant United Behavioral Health ("UBH") brings a Motion for Class Decertification

22   ("Motion" or "Decertification Motion") in which it asks the Court to decertify the three classes it

23   certified for trial.  In addition, in the supplemental briefs requested by the Court, UBH argues that

24   the classes should be decertified under certain subsections of Rule 23(b) of the Federal Rules of

25   Civil Procedure with respect to particular remedies.  Finally, issues that have arisen in connection

26   with finalizing the class lists have raised a question as to whether the class definitions must be

27   modified to exclude certain individuals who were left off the class lists and were not sent notices

28   as a result of the method used to create the original class lists.   A hearing addressing issues related

1    to decertification and remedies was held on September 2, 2020.  For the reasons stated below, the

2    Court intends to decertify the classes in certain respects and to order that appropriate notice is

3    given to class members who are excluded from the classes by virtue of the Court's Order.  To

4    allow time for such notice to be given, the Court STAYS all proceedings as to the class members

5    who are excluded from the classes as a result of this Order and tolls the limitations period on their

6    individual claims for 120 days after notice is sent to them pursuant to this Order.[1]

7    **II.     BACKGROUND**

8         **A.     The September 19, 2016 Class Certification Order[2]**

9         In its September 19, 2016 Order (Docket No. 174) ("Class Certification Order"), [3] the

10   Court certified three classes – the Wit Guideline Class, the Wit State Mandate Class and the

11   Alexander Guideline Class – finding that they met all the requirements of Rule 23(a) of the

12   Federal Rules of Civil Procedure (numerosity, commonality, typicality and adequate

13   representation of the class) and also met the requirements of Rule 23(b)(1)(A), Rule 23(b)(2) and

14   Rule 23(b)(3).[4]

15        In finding that the classes met the commonality requirement of Rule 23(a)(2), the Court

16   reasoned as follows:

17              The Court concludes that Plaintiffs meet the commonality
               requirement as to both the Guideline Classes and the Wit State
18             Mandate Class. The theory of Plaintiffs' claims is, in essence, that
               UBH breached its fiduciary duty and abused its discretion by
19             developing and applying Guidelines that were more restrictive than

20
_____

21   [1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28
     U.S.C. § 636(c).
22   [2] The Court summarizes here only aspects of its Class Certification Order that are pertinent to the
     issues addressed below.
23   [3] All docket number references are to the docket numbers in Case No. 14-cv-02346 JCS. For
     simplicity, the Court does not provide herein the docket numbers for the identical documents filed
24   in Case No. 14-cv-05337 JCS.
     [4] In its August 14, 2017 Summary Judgment Order (Docket No. 286) ("Summary Judgment
25   Order"), the Court inadvertently omitted mention of the fact that it certified the proposed classes
     not only under Rule 23(b)(2) and Rule 23(b)(3) but also under Rule 23(b)(1)(A).  *See* Class
26   Certification Order at 38-43.  The Court also inadvertently cited to Rule 23(b) in describing its
     previous holdings with respect to commonality, instead of citing to Rule 23(a)(2), the subsection
27   governing commonality (which the Court correctly cited in its Class Certification Order).  *See*
     Summary Judgment Order at 6: 6 & 7: 20.  While these errors were clerical and were not intended
28   to modify the Court's previous holdings in its Class Certification Order, the Court concurrently
     with this Order issues an Amended Summary Judgment Order correcting those errors.

United States District Court
Northern District of California

either: 1) the generally accepted standards all class members' insurance plans required UBH to follow (the Guideline Classes); or 2) the applicable standards under state law (the Wit State Mandate Class). The resolution of these claims will turn on several common legal and factual questions, including whether UBH was acting as an ERISA fiduciary when it developed the Guidelines and adopted a policy of applying them to all coverage determinations, whether the Guidelines are consistent with generally accepted standards, whether UBH breached its fiduciary duty by using its Guidelines to adjudicate claims for coverage, and what remedies are available to the classes. These common questions of law and fact are sufficient to satisfy the permissive requirements of Rule 23(a).

Class Certification Order at 30.

The Court rejected UBH's argument that variations in the class members' medical necessity determinations and insurance plans defeated commonality, finding that they were "not material to the theories upon which Plaintiffs' claims [were] based" because "[t]he harm alleged by Plaintiffs – the promulgation and application of defective guidelines to the putative class members – is common to all of the putative class members." *Id.* at 31. Further, the Court found, "whether Plaintiffs are entitled to the requested remedy – adoption of new [g]uidelines that are consistent with generally accepted standards and/or state law and reprocessing of claims that were denied under the allegedly defective guidelines – can be addressed on a common basis." *Id.* The Court noted that in reaching this conclusion, it was of "particular significance" that Plaintiffs did "not ask the Court to make determinations as to whether class members were *actually* entitled to benefits (which would require the Court to consider a multitude of individualized circumstances relating to the medical necessity for coverage and the specific terms of the member's plan)." *Id.*

The Court also found that Plaintiffs satisfied the typicality requirement as to all of the proposed classes. *Id.* at 34. In particular, the Court concluded that "[w]ith respect to the Guideline Classes, the named Plaintiffs who seek to represent those classes (all of the named Plaintiffs except for Brandt Pfeifer), like the members of those classes, are covered by insurance plans that require coverage consistent with generally accepted standards of care but were denied coverage by UBH under Guidelines that Plaintiffs allege are more restrictive than generally accepted standards of care." *Id.* (citation omitted). Similarly, the Court found, "the named Plaintiff who seeks to represent the Wit State Mandate Class, Brandt Pfeifer, asserts a claim that UBH denied coverage under its own Guidelines instead of the allegedly broader standards

mandated by State law, just as do the members of the Wit State Mandate Class." *Id*.

The Court subsequently denied UBH's motion for reconsideration of its Class Certification Order or for leave to file an interlocutory appeal. *See* Docket No. 181 ("Class Certification Reconsideration Order"). Among other things, the Court addressed UBH's argument that an immediate interlocutory appeal was necessary to avoid manifest injustice to absent class members because Plaintiffs had narrowed their theory of the case to obtain class certification by stipulating that they were not seeking a determination by the Court as to whether class members were actually owed the benefits that had been denied. *Id.* at 5. According to UBH, because of this "tactical decision," absent class members were at risk of substantial prejudice because "a decision on the merits in this case will preclude absent class members from bringing later benefits claims, including for injunctive or equitable relief (such as reprocessing of the denied benefit claims), arising out of the same denial of benefits, even if those later claims are based on different theories of wrongful denial of benefits relating to the guidelines." *See* Docket No. 177 ("Motion to Reconsider Class Certification") at 11-12. The Court rejected UBH's argument on the basis that "under the doctrine of res judicata adjudication of claims that are common to a class does not preclude subsequent litigation of individual claims that were not pursued by the class." Class Certification Reconsideration Order at 5 (citing *Akootchook v. United States*, 271 F.3d 1160, 1164 (9th Cir. 2001) (holding that adjudication of class claims did not preclude class members from subsequently pursuing individual claims and noting that a contrary result "would destroy the purpose of class actions under Rule 23(b)(2) [because] [i]f all class members had to bring their own individual claims in addition to the common class claims, it would destroy the efficiency of having class actions and reduce the benefit of joining such a suit.")).

**B.    The Classes**

The three classes that were certified for trial are as follows:

> **Wit Guideline Class**:  Any member of a health benefit plan governed by ERISA whose request for coverage of residential treatment services for a mental illness or substance use disorder was denied by UBH, in whole or in part, between May 22, 2011 and June 1, 2017, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines. The Wit Guideline Class excludes members of the Wit State Mandate Class, as defined below.

United States District Court
Northern District of California

**The Wit State Mandate Class**: Any member of a fully-insured health benefit plan governed by both ERISA and the state law of Connecticut, Illinois, Rhode Island, or Texas, whose request for coverage of residential treatment services for a substance use disorder was denied by UBH, in whole or in part, within the Class period, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines, and not upon the level-of-care criteria mandated by the applicable state law. With respect to plans governed by Texas law, the Wit State Mandate Class includes only denials of requests for coverage of substance use disorder services that were sought or received in Texas. The Class period for the Wit State Mandate Class includes denials governed by Texas law that occurred between May 22, 2011 and June 1, 2017, denials governed by Illinois law that occurred between August 18, 2011 and June 1, 2017, denials governed by Connecticut law that occurred between October 1, 2013 and June 1, 2017, and denials governed by Rhode Island law that occurred between July 10, 2015 and June 1, 2017.

**The Alexander Guideline Class**: Any member of a health benefit plan governed by ERISA whose request for coverage of outpatient or intensive outpatient services for a mental illness or substance use disorder was denied by UBH, in whole or in part, between December 4, 2011 and June 1, 2017, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines. The Alexander Guideline Class excludes any member of a fully insured plan governed by both ERISA and the state law of Connecticut, Illinois, Rhode Island or Texas, whose request for coverage of intensive outpatient treatment or outpatient treatment was related to a substance use disorder, except that the Alexander Guideline Class includes members of plans governed by the state law of Texas who were denied coverage of substance use disorder services sought or provided outside of Texas.

Findings of Fact and Conclusions of Law ("FFCL"), ¶ 13. These classes are substantially similar to the classes the Court certified in its September 19, 2016 Order but contain minor modifications to which the parties stipulated with respect to class period, among other things.

### C.   UBH's Challenges to Class Certification

#### 1.   The Motion to Decertify

UBH asks the Court to decertify all three classes. First, UBH argues that Plaintiffs failed to establish that the commonality and typicality requirements of Rule 23(a)(2) and (3) were met because: 1) some class members' claim denials were overturned following an administrative appeal; 2) the claims of many class members were decided based on CDGs that were challenged only on the basis that they incorporated the LOCGs and Plaintiffs did not prove that these CDGs incorporate the LOCGs, that claims that were denied under these CDGs were denied on the basis

5

of the LOCGs or that these CDGs are inconsistent with those class members' plans; 3) Plaintiffs did not prove the LOCGs were inconsistent with the terms of the class members' plans; and 4) Plaintiffs did not offer common proof of injury because they did not prove that the class members' denials were premised on the portions of the LOCGs the Court found deficient or that the class members obtained the services at issue or paid anything out-of-pocket for those services. Decertification Motion at 3-11.  UBH also argues (in a footnote) that Plaintiffs' claims "fail for commonality, typicality, and Article III standing because while Plaintiffs seek prospective injunctive relief in the form of revised guidelines applicable to their benefit plans, they failed to offer any evidence that they remained members of health plans administered by UBH and would benefit from the relief sought." *Id.* at 11 n. 7.

Second, UBH argues that Plaintiffs are not adequate class representatives because they "dropped" their claim for benefits in this action in order to obtain class certification, thereby precluding class members from bringing later claims for benefits arising out of the same denial of benefits.  *Id.* at 11-14.

Finally, UBH argues that as to the Wit State Mandate Class, the class must be decertified as to claimants whose claim denials were governed by Texas law because Plaintiffs did not prove that UBH violated Texas law as to all class members for the entire class period.  UBH contends Plaintiffs did not offer evidence of any class member whose claim was governed by Texas Department of Insurance ("TDI") Criteria but where these criteria were not used.  Moreover, UBH argues, the class should be decertified as to Texas denials because the Court found only that UBH violated Texas law "at some point during the class period."  *Id.* at 14-15.

### 2.  The Supplemental Briefing

In the supplemental briefs, UBH argues that the Court erred to the extent it certified the classes under all three subsections of Rule 23(b) because some of the remedies Plaintiffs sought were mandatory remedies that are appropriate for certification only under Rule 23(b)(1)(A) and (b)(2) and others are individualized remedies that may be awarded only under Rule 23(b)(3). Therefore, it contends, the Court should decertify the classes under Rule 23(b)(3) as to the former remedies and decertify under Rule 23(b)(1)(A) and (b)(2) as to the latter remedies.  *See* Dkt. No.

457 at 1.

Another issue raised in the supplemental briefs relates to a subset of class members who were inadvertently omitted from the class lists as a result of the method the parties agreed upon to identify class members. *See* Docket No. 453 at 3-6.  In particular, the class lists do not include individuals who met the class definitions based on a denial  at the administrative appeal level even though their initial denial did not fit the class definitions because it occurred before the class period began or was not based on the Guidelines.   According to Plaintiffs' counsel, they became aware of this issue when they were contacted by at least three class members who fall into this category and who learned of this case through the website established by Plaintiffs as part of the notice plan.   Plaintiffs argue that these individuals should be added to the class lists because they fit the class definitions.  On the other hand, UBH argues that the classes should be decertified as to this category of people because: 1) they did not receive notice that was "reasonably calculated, under all the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections[;]"  Dkt. No. 453 at 5 n. 6 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)); 2) allowing them to participate in the case violates the rule against one-way intervention; and 3) it may be difficult to identify these people.

## III.   ANALYSIS

### A.   Legal Standards Governing Decertification

Under Rule 23(c)(1)(C), the district court's determination on the maintainability of a class action "may be altered or amended before the decision on the merits."  Thus, "[e]ven 'after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.'"  *In re Korean Ramen Antitrust Litig*., No. 13-CV-04115-WHO, 2018 WL 1456618, at *2 (N.D. Cal. Mar. 23, 2018) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)).  "The types of 'developments' that lead to modification or decertification can be evidentiary or legal" and it is the burden of the party seeking decertification to show that such developments justify revisiting the question of class certification.  *Id.* (citing 3 Newberg on Class Actions §§ 7:37, 7:39 (5th ed.); *Brady v. Deloitte & Touche*, 587 Fed. App'x. 363 (9th Cir. 2014)).  "Once a party provides a good reason to revisit certification, and the court

considers the merits of a decertification motion, the burden to show that Rule 23's requirements are still met remains on [the] plaintiff[s]." *Id.* at *2 n. 1 (citing *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947-48 (9th Cir. 2011)).  "However, the decision on whether to decertify lies within the Court's sound discretion." *Weigele v. FedEx Ground Package Sys., Inc.*, 267 F.R.D. 614, 617 (S.D. Cal. 2010) (citing *Knight v. Kenai Peninsula Borough Sch. Dist.*, 131 F.3d 807, 816 (9th Cir. 1997)).

**B.**   **Whether UBH Has Provided a "Good Reason" for Revisiting Class Certification**

As discussed below, many of the arguments UBH makes in its Motion to Decertify and in its supplemental briefs have been raised before.  This does not, however, mean they should not be considered or lack merit.  The showing that is required as to class certification may change at different stages of a case.  *See Ramirez v. TransUnion* LLC 951 F.3d 1008, 1023 n. 6 (9th Cir. 2020).  Because the evidence that was offered at trial may have implications for whether the classes were properly certified and because additional evidence and issues relevant to class certification came to light in connection with the parties' finalization of the class lists and remedies briefing, the Court finds that there is a good reason to revisit the question of whether the classes it previously certified need to be modified or decertified.

**C.**   **Notice and Timing of Decertification**

When a district court "certifie[s] the propriety of the class action, the class of unnamed persons described in the certification acquire[s] a legal status separate from the interest asserted by" the named plaintiff. *Sosna v. Iowa*, 419 U.S. 393, 399 (1975).   Further, Rule 23(d)(1)(B)(i) authorizes courts to issue orders to require "giving appropriate notice to some or all class members of . . . any step in the action" "to protect class members and fairly conduct the action." Fed. R. Civ. P. 23(d)(1)(B)(i).  Thus, courts have held that when a district court decertifies a class, it must "see that timely notification of decertification is sent to the class" alerting members "that the statute of limitations has begun to run again on their individual claims." *Birmingham Steel Corp. v. Tennessee Valley Auth.*, 353 F.3d 1331, 1339 (11th Cir. 2003).  Moreover, in *Birmingham Steel Corp.*, the court held that the district court abused its discretion by "summarily" decertifying the class when the class representative became inadequate rather than allowing "a reasonable period

United States District Court
Northern District of California

of time" for the class to find a new class representative before decertifying. *Id.* at 1339-1340. Even where a class has not yet been certified, courts have ordered notice to putative class members who were excluded from the class when a narrower class was certified than the one described in the complaint. *See, e.g., McReynolds v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* No. 05 C 6583, 2012 WL 5278555, at *2 (N.D. Ill. July 13, 2012) (certifying a class that excluded certain putative class members, ordering that notice be sent to the former putative class members pursuant to Rule 23(d)(1)(B)(i), staying all proceedings as to those class members and tolling the limitations period for their individual claims for 120 days).

Here, class members have been waiting many years for the resolution of this action and looking to this Court for a remedy.  The Court does not take lightly its determination that certain individuals who fall within the class definitions that were adopted at the class certification stage of the case must now be excluded.  Therefore, in the interests of fairness, the Court will require notice to former class members of its actions pursuant to Rule 23(d)(1)(B)(i).  It will also stay all proceedings as to the excluded former class members and toll the limitations period as to their individual claims for 120 days after such notice is given, which the Court concludes is a reasonable period of time to allow former class members to initiate individual actions if they choose.

### D.    Stipulated Modification of Wit State Mandate Class

Plaintiffs stated in their remedies reply brief that the Wit State Mandate Class needed to be modified to reflect an end date of January 1, 2016 for coverage determinations governed by Illinois law, consistent with the Court's finding in its FFCL that UBH began using the ASAM criteria for coverage determinations governed by Illinois law at that point.  *See* Dkt. No. 435 at 60. At the September 2, 2020 hearing, UBH stipulated to that modification of the class definition. Therefore, pursuant to the parties' stipulation, the Wit State Mandate Class will be modified to specify that for individuals whose denials were governed by Illinois law the class period is August 18, 2011 through **January 1, 2016**.  Wit State Mandate Class members shall be notified in writing that if their claims for coverage were governed by Illinois law and the denial occurred after January 1, 2016, they are no longer members of the class.

1
2
3
4
5
6
7
8
9
10
11

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E.     Whether the Court Should Modify the Class Definitions or Decertify Because the Requirements of Rule 23 Are Not Met**

**1.  Legal Standard Under Rule 23**

A class action may be maintained under Rule 23 of the Federal Rules of Civil Procedure if all of the requirements of Rule 23(a) are satisfied and the plaintiffs demonstrate that one of the requirements of Rule 23(b) is met as well.  Rule 23(a) requires that a plaintiff seeking to assert claims on behalf of a class demonstrate: 1) numerosity; 2) commonality; 3) typicality; and 4) fair and adequate representation of the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(1)(A) allows a class to be certified where "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[.]"  Rule 23(b)(2) allows a class action to be maintained where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(3) allows a class action to be maintained where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The commonality requirement of Rule 23(a)(2) is met where "the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] with one stroke.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal citation omitted) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  Thus, plaintiffs seeking to certify a class must "demonstrate 'the capacity of classwide proceedings to generate common answers' to common questions of law or fact that are 'apt to drive the resolution of the litigation.'"  *Id.* (quoting *Wal-Mart*, 564 U.S. at 350).  "[C]ommonality only requires a single significant question of law or fact." *Id.* at 589 (citing *Wal-Mart*, 564 U.S. at 359).  "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "The existence of shared legal issues with divergent factual predicates

is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

The typicality requirement of Rule 23(a)(3) provides that "the [legal] claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d at 1020, *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

### 2. Whether the Classes Should be Decertified Because Plaintiffs Did Not Establish that the Commonality or Typicality Requirements are Met

UBH asserts a variety of challenges to commonality and typicality, but most of them boil down to the same basic theory that the Court has already rejected, both at the class certification stage of the case and on summary judgment. That theory is that it is Plaintiffs' burden to prove *classwide* that UBH denied the class members' claim for benefits based on the specific criteria in the Guidelines that were found by the Court to be inconsistent with the generally-accepted-standard-of-care provision that is in all of their plans and not on the basis of: a) other terms or exclusions contained in specific class members' plans (but not common to all class members); b) provisions of the LOCGs that the Court did not find to be improper and/or which were not challenged by Plaintiffs; or, c) as to the diagnosis-specific CDGs (which the Court has now found in its supplemental findings of fact and conclusions of law incorporate the LOCGs), limitations in the CDGs that are independent of the LOCGs that they incorporate and which have not been challenged and/or found improper in this case. The Court once again rejects these challenges.

First and foremost, the injury that is the basis of Plaintiffs' claims was the adoption and use of flawed Guidelines in deciding whether Plaintiffs were entitled to coverage. As the Court explained on summary judgment, such an injury is cognizable under ERISA and consistent with existing case law, which does not require that Plaintiffs demonstrate that the flaws in UBH's Guidelines were the but-for cause of the denial of their benefits. Summary Judgment Order, Dkt. No. 286, at 19-25. The Court does not repeat here the detailed explanation for its conclusion that

1   Plaintiffs' theory is consistent with the case law on both causation and Article IIII standing.

2   Nonetheless, it is worth highlighting its conclusion on summary judgment that under *Saffle v.*

3   *Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455 (9th

4   Cir. 1996), it is generally more appropriate for the district court to remand to allow the plan

5   administrator to reprocess under proper standards than for the court to adjudicate the ultimate

6   question of whether the claimant would have been entitled to benefits if proper standards had been

7   applied.  Moreover, if UBH were correct that plan members asserting ERISA claims for wrongful

8   denial of benefits were required to prove that they would *actually* have been entitled to benefits if

9   proper standards had been applied in order to establish liability, the reprocessing remedy would be

10  entirely superfluous.  Yet that is not the law.

11         UBH's position is unconvincing for other reasons as well.  As to its argument that

12  Plaintiffs were required to prove that the LOCGs were incompatible with their plans as a whole –

13  and that this inquiry requires an individualized analysis of the terms and exclusions of each class

14  member's plan – UBH did not offer any evidence at trial suggesting that the meaning of the

15  common provision in all of the plans, requiring as one condition of coverage that services must be

16  consistent with generally accepted standards of care, would be affected in any way by other terms

17  and exclusions in the plans that are *not* common to all class members.  The fact that a class

18  member's plan might contain exclusions for services that would be considered medically

19  necessary under generally accepted standards of care does not eliminate the requirement that

20  where services are *not* covered by such an exclusion they must be consistent with generally

21  accepted standards of care.   To the extent that UBH has used Guidelines that are excessively

22  narrow to determine whether services adhere to generally accepted standards of care, the

23  variations in class members' plans with respect to other terms and exclusions are not material to

24  the ERISA violations alleged in this case and do not defeat commonality or typicality.

25  Furthermore, UBH failed to present evidence at trial that any class members' claims were actually

26  denied on the basis of limitations or exclusions in their individual plans that are not common to

27  the class.

28         The Court also rejects UBH's argument that the classes do not satisfy the commonality and

12

1    typicality requirements because some class members' claims may have been denied on the basis of

2    criteria in the LOCGs that the Court did not find were improper (such as the requirement of ¶ 6 of

3    the Common Criteria of the 2013 LOCGs, which instructs that in making level of care

4    determinations, one of the considerations is whether the member's condition can "be effectively

5    and safely treated in a lower level of care").  The Court found that for all years in the class period,

6    the Guidelines contained numerous *mandatory* criteria in the Common Criteria that were

7    inconsistent with generally accepted standards of care and that these flawed criteria pervaded the

8    LOCGs.  *See* FFCL ¶¶ 43-44.  The fact that the Common Criteria also contained some criteria that

9    were consistent with generally accepted standards of care does not cancel out the many criteria

10   that were improper.  Moreover, UBH merely speculates that some class members' denials might

11   have been premised solely on one of these acceptable criteria; it presented no evidence that any

12   class member's claim was actually denied solely on the basis of such criteria.   Therefore, the

13   Court rejects UBH's argument that Plaintiffs have failed to establish a common injury on this

14   basis.

15          Similarly, the Court is not persuaded by UBH's argument that as to the class members

16   whose claims were denied under the diagnosis-specific CDGS, Plaintiffs do not meet the

17   commonality and typicality requirements because UBH may not have relied on the flawed LOCGs

18   incorporated into those CDGs in denying these class members' claims.  UBH relies on the fact that

19   the denial letters for some of the named Plaintiffs whose denials were based on the diagnosis-

20   specific CDGs do not specifically cite the LOCGs or the provisions of the LOCGs that the Court

21   found to be defective.  *See* Dkt No. 425 at 5.  This is of no consequence, however, because the

22   flawed criteria of the LOCGs were part of the diagnosis-specific CDGs by virtue of incorporation,

23   that is, the criteria that improperly limited coverage under the LOCGs also caused the diagnosis-

24   specific CDGs to be overly narrow in the same ways. Thus, UBH's failure to actually refer to the

25   LOCGs does not establish that the flaws in the LOCGs did not result in the same injury to the

26   class members whose claims were denied under the diagnosis-specific CDGs as the class members

27   whose claims were denied under the LOCGs.

28

United States District Court
Northern District of California

### 3. Whether the Classes Should be Decertified Because Some Class Members' Claims for Benefits Were Approved Following an Administrative Appeal

UBH also contends the classes must be decertified because of evidence introduced at trial showing that a small percentage of the Claim Sample members (approximately 3 to 4 percent) appealed the initial denial of benefits through an administrative appeal and received approval for some or all of the benefits they sought. *See* Trial Ex. 1655. The theory of Plaintiffs' case is that the wrongful conduct by UBH was the development of faulty Guidelines and application of those Guidelines to class members' benefit claims to deny benefits. Under that theory, the ERISA violation occurred when benefits were initially denied – even if they were later approved as the result of an appeal – because the class members were deprived of the right to have a faithful fiduciary adjudicate their claims using proper Guidelines. The Court is troubled, however, by the inclusion of these individuals in the class definitions because neither the Court nor the parties addressed at the class certification or summary judgment stages of the case how their arguments relating to liability and standing applied to class members who received all of their claimed benefits following an administrative appeal.

With respect to standing, the Court did not specifically address on summary judgment whether the reasoning justifying its findings as to Article III standing applied to claims of class members who ultimately received all of the benefits they requested. Rather, in rejecting UBH's standing argument, the Court found that the rights that were denied were not "bare procedural violations" and implicated a "real risk of harm" because "the Guidelines that are at the heart of Plaintiffs' claims were used to deny Plaintiffs' claims for coverage." *See* Summary Judgment Order, Dkt. No. 286, at 24-25. Likewise, Plaintiffs argued in opposition to summary judgment that there was standing as to the Denial of Benefits Claim because "Plaintiffs' claims were, in fact, denied," seeming to imply that UBH did not pay the benefits requested by those class members. *See* Dkt. No. 260-4 at 19. Indeed, it has always been the Court's understanding that class members were, in fact, denied coverage of the services for which they claimed coverage and that the reprocessing remedy that Plaintiffs seek was aimed at determining whether those services *should* have been covered so that class members could receive appropriate relief even though the Court would not make individualized determinations as to each class member's denial.

14

United States District Court
Northern District of California

The Court is also concerned that the parties did not address – and the Court did not consider – whether imposing liability on a plan administrator for an initial denial of benefits that it later overturned on appeal is consistent with ERISA's scheme, which generally allows an ERISA lawsuit to be brought after exhaustion of the administrative process.   As this scheme presumably was intended by Congress to encourage plan administrators to correct their errors through their own administrative appeals process, imposing liability on the basis of an initial denial that was overturned in full may undermine that scheme, even if the reason for overturning the denial may not have been related to the plaintiff's challenge.  The Court does not reach any legal conclusions on these questions.  Nor does it hold either that class members who were awarded benefits following an administrative appeal would not have standing to assert the ERISA claims asserted in this case on an individual basis or that their claims would fail as a matter of law.  It does, however, find that these serious issues as to the rights of this subset of the classes to assert the claims at issue in this case are sufficient to defeat commonality and typicality as to these individuals. Therefore, the Court modifies the class definitions in the manner proposed by Plaintiffs, that is, by adding to the class definitions the phrase "and was not subsequently approved, in full, following an administrative appeal."  *See* Dkt. No. 431 at 5 & Ex. A.  Class members shall be notified in writing that if their claims for coverage were granted in full as the result of an administrative appeal, they are no longer members of the class.

### 4.  Whether the Classes Should be Decertified Because Plaintiffs Have Not Satisfied the Adequacy Requirement

UBH argues that the named Plaintiffs are not adequate representatives of the classes because they dropped certain theories of liability to obtain certification and "the reprocessing remedy they seek will preclude class members from challenging the benefits decisions at issue in this case on any different grounds or from seeking payment of benefits based on that decision." Dkt. No. 433 at 10-11.   This is essentially the same argument UBH made when it asked the Court to reconsider class certification.  *See* Dkt. No. 177 at 13 ("If Plaintiffs prevail here, absent class members will be forced to accept the limited remedy the named Plaintiffs seek, and forgo other grounds upon which they may have challenged their denials. And, if Plaintiffs lose, absent class

1    members will be foreclosed from bringing their own challenge to the guidelines, or to their

2    application in their individual cases.").  The Court rejects it for the same reasons it set forth in its

3    order denying reconsideration of its class certification order.  *See* Dkt. No. 1818 at 5.

### 5.  Whether the Wit State Mandate Class Should be Decertified as to Class Members Whose Claims are Governed by Texas Law

6          The Court rejects UBH's argument that the Wit State Mandate Class must be partially

7    decertified to remove the members of the class whose claims are governed by Texas law.

8          First, the Court finds unpersuasive UBH's arguments that Plaintiffs have failed to

9    demonstrate commonality and typicality as to these individuals.  As set forth in the Court's class

10   certification order (Dkt. No. 174), there are a number of common questions related to the claims of

11   the Wit State Mandate Class, including whether UBH was acting as a fiduciary when it developed

12   the Guidelines, whether the Guidelines were consistent with generally accepted standards of care

13   and whether UBH breached its fiduciary duty by applying its Guidelines to the class members'

14   claims.  These issues are common to the Texas class members as well.  Further, the named

15   plaintiff for the Wit State Mandate Class, Brandt Pfeifer – like the Texas class members – alleges

16   that UBH violated ERISA by improperly applying its own flawed guidelines to deny coverage

17   instead of applying the guidelines mandated under state law.  Therefore, his claims are typical of

18   the claims of the Texas class members. The Court also concludes that UBH has not pointed to any

19   specific issues that defeat predominance as to these class members.

20         In reaching these conclusions, the Court has considered carefully the arguments of the

21   parties with respect to the significance of an issue that was not raised by UBH at trial or even in

22   the post-trial briefs, namely, whether the Court found that UBH was liable as to individuals whose

23   denial letters cited *both* UBH Guidelines and the Texas guidelines.  In the course of the parties'

24   briefing on decertification and remedies – and as the parties have attempted to finalize the class

25   lists – it has become apparent that the parties have a basic disagreement on this issue, with UBH

26   arguing that the Court found liability only as to individuals whose denials were based exclusively

27   on UBH Guidelines and Plaintiffs arguing that the Court found liability as to all Texas class

28   members, that is, all individuals whose claims were governed by Texas law and were denied "in

16

whole or in part" based on UBH Guidelines.  Plaintiffs are correct.

UBH points to Paragraph 167 of the FFCL, in which the Court stated that evidence offered by Plaintiffs "support[ed] the conclusion that UBH violated Texas law at some point during the class period by applying its own CDG's rather than the TDI Criteria" and concluded that Plaintiffs had "demonstrated by a preponderance of the evidence that during the class period UBH violated Texas law by applying its own Guidelines to claims for benefits that should have been decided under TDI Criteria."  UBH argues that this language amounts to a holding by the Court that limited liability to Texas class members whose claims were denied *solely* on the basis of UBH Guidelines, but the Court held no such thing.  To the contrary, it found that UBH was liable as to the Wit State Mandate Class claims, including the Texas members' claims, without limitation. As the Wit State Mandate Class includes individuals whose claims were denied "in whole or in part" based on the UBH Guidelines, the Court's liability finding covers individuals whose claims were denied exclusively on the basis of the UBH Guidelines *and* individuals whose claims were denied on the basis of both UBH Guidelines and the Texas guidelines.  To the extent the FFCL was unclear on this question, the Court clarifies its liability finding here.

The Court also notes that while UBH faults Plaintiffs for offering insufficient evidence of specific denials involving Texas class members, the issue it now relies upon to support decertification was apparent from the evidence Plaintiffs introduced at trial and could have been raised at that time.  In particular, it points to a denial letter sent to a member of the Claim Sample that cited both UBH Guidelines and the Texas criteria.  UBH Response to Plaintiffs' Remedies Brief, Dkt. No. 428-4, at 29 n. 20 (arguing that Plaintiffs "failed to offer any classwide proof demonstrating which benefits determinations on Trial Exhibit 255 were governed by Texas law, but for which UBH failed to apply the TDI Criteria" and citing Trial Exhibit 1298).  The trial exhibit UBH now relies upon was offered into evidence at trial and was described on a chart summarizing the denial letters of the Claim Sample, Trial Exhibit 894.  That chart contained the language in Trial Exhibit 1298 citing the UBH Guidelines but did not include other language in the letter referencing the Texas guidelines.  UBH had an opportunity to cross-examine the witness who introduced this evidence, Josephine Duh, and in fact, cross examined this witness in

United States District Court
Northern District of California

connection with a number of the letters that were described in the chart; it did not, however, cross-examine Duh as to Trial Exhibit 1298 or bring to the Court's attention the language in that letter citing Texas guidelines. *See* Trial Transcript at 684-692.

Therefore, the Court declines UBH's invitation to decertify the Wit State Mandate Class as to the Texas class members. In light of the Court's clarification regarding the basis of liability, the process for identifying these individuals will not require determinations as to which denials were based exclusively on UBH Guidelines – a source of concern identified by the Court during oral argument given the likelihood that numerous disputes would arise in connection with such determinations. Rather, any Texas class member who received a denial letter that cited UBH Guidelines will be included on the class list regardless of whether Texas criteria also were cited in the letter. While the identification process may still be time-consuming, the Court concludes that the process for reviewing the denial letters sent to putative Texas class members to determine class membership will not be unduly burdensome.

### 6. Whether the Classes Should be Decertified Under Specific Subsections of Rule 23(b) with Respect to Specific Remedies

As discussed above, UBH argued in supplemental briefing that the Court should amend its class certification order by decertifying under subsections of Rule 23(b) as to particular remedies. In particular, UBH argues that the mandatory and prospective injunctive and declaratory remedies Plaintiffs seek are indivisible and to the extent class members were allowed to opt out of these remedies, the classes were not properly certified under those subsections and need to be decertified. Conversely, UBH contends, to the extent the classes seek reprocessing, they should not have been certified under Rule 23(b)(1)(A) or Rule 23(b)(2) because this relief is not indivisible. UBH's arguments raise difficult questions about the implications of *Wal-Mart v. Dukes*, 564 U.S. 338 (2011) and the limits of courts' discretion to allow class members to opt out of mandatory remedies. Having considered these arguments carefully, however, the Court concludes that its certification of the classes under all three subsections of Rule 23(b) – and its decision to allow class members to opt out of mandatory remedies (the bulk of which will, as a practical matter, apply to class members and non-class members alike, as was explained in the

United States District Court
Northern District of California

1   class notice) was correct.  While the Court did not address in detail the nature of the specific

2   remedies requested by Plaintiffs as they related to certification under particular subsections of

3   Rule 23(b), it does address that issue in its Remedies Order (issued concurrently with this Order)

4   by specifying the particular subsection(s) of Rule 23(b) each particular remedy is awarded under.

5      **7.  Whether the Classes Should Be Decertified to Exclude Individuals Who Fall**
       **Within the Class Definition Based on a Denial at the Administrative Appeals**

6          **Level Rather than an Initial Denial**

7        Finally, the Court must decide whether the class members who were omitted from the class

8   lists because of the method used by the parties to identify class members may remain in the class

9   given that they were not sent written notice of this case.  The parties agree that these individuals

10  should remain in the classes for the purposes of any remedies awarded under Rule 23(b)(1)(A) and

11  (b)(2) as written notice is not required as to such classes.  The dispute relates to whether the notice

12  requirement of Rule 23(c)(2) – which applies only to Rule 23(b)(3) classes – has been met.  As a

13  practical matter, the resolution of this dispute will determine whether these individuals will be

14  entitled to have their claims reprocessed.  While this issue presents a close call, the Court

15  concludes that the classes must be partially decertified to exclude these individuals from the

16  classes with respect to the Rule 23(b)(3) remedies unless they received actual and timely notice

17  sufficient to meet the requirements of due process.

18       Rule 23(c)(2) provides that "[f]or any class certified under Rule 23(b)(3) . . .  the court

19  must direct to class members the best notice that is practicable under the circumstances, including

20  individual notice to all members who can be identified through reasonable effort."  Fed. R.Civ.P.

21  23(c)(2).  "The purpose of Rule 23(c)(2) is to ensure that the plaintiff class receives notice of the

22  action well before the merits of the case are adjudicated." *Schwarzschild v. Tse*, 69 F.3d 293, 295

23  (9th Cir. 1995).  This rule "was adopted to prevent 'one-way intervention'—that is, the

24  intervention of a plaintiff in a class action after an adjudication favoring the class had taken

25  place." *Id.* (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 759 (3d Cir. 1974)).  Thus, to the

26  extent that the Court finds that the notice that was given in this case fell short, the deficiency likely

27  cannot be cured simply by sending notices to the individuals who were omitted from the class lists

28  and allowing them to opt out at this late date.

1       The key question is whether the notice that was given satisfied the requirements of Rule

2   23(c)(2).  Rule 23(c)(2) is designed to fulfill the requirements of due process.  *Eisen v. Carlisle &*

3   *Jacquelin*, 417 U.S. 156, 173 (1974) (citing Advisory Committee note to Rule 23 and *Mullane v.*

4   *Central Hanover Bank & Trust Co*., 339 U.S. 306 (1950)).  Therefore, the starting point for

5   resolving the parties' dispute is the constitutional standard articulated in *Mullane*, in which the

6   Supreme Court held that "[a]n elementary and fundamental requirement of due process in any

7   proceeding which is to be accorded finality is notice reasonably calculated, under all the

8   circumstances, to apprise interested parties of the pendency of the action and afford them an

9   opportunity to present their objections."  339 U.S. at 314 (citations omitted).   Based on this

10  principle, the Court held in *Eisen* that "[i]ndividual notice must be sent to all class members whose

11  names and addresses may be ascertained through reasonable effort."  417 U.S. at 173.

12      As a general rule, "[c]lass representatives must be prepared, at the outset of the suit, to

13  accept the responsibility of identifying absentee class members and paying for their individual

14  notice."  *Hunt v. Check Recovery Sys., Inc*., No. C05 04993 MJJ, 2007 WL 2220972, at *4 (N.D.

15  Cal. Aug. 1, 2007), *aff'd sub nom. Hunt v. Imperial Merch. Servs., Inc*., 560 F.3d 1137 (9th Cir.

16  2009).  However, "[w]hen resolving whether the names and last known addresses of absentee class

17  members are identifiable through reasonable effort, the district court must consider the relative

18  ability of the parties to furnish identification of absentee class members."  *In re Nissan Motor*

19  *Corp. Antitrust Litig*., 552 F.2d 1088, 1102 (5th Cir. 1977).

20      Here, UBH was in a better position to identify the members of the classes the Court

21  certified because much of the information needed to identify these individuals was found in its

22  databases and UBH had a better understanding of the functioning of those databases than did

23  Plaintiffs' counsel.  For this reason, if it were clear that UBH had failed to provide Plaintiffs

24  sufficient information to understand that the method they agreed to for identifying class members

25  was flawed, the Court might find that Plaintiffs' efforts to give notice to the class were reasonable,

26  or that UBH was estopped from now arguing that these class members must now be removed from

27  the class. The record on this question is poorly developed, however.

28      UBH asserted in supplemental briefing that Plaintiffs "have been well-aware throughout

United States District Court
Northern District of California

United States District Court
Northern District of California

1   this litigation that the data used to create the class list reflected only *initial* adverse benefit

2   determinations." Dkt. No. 453 at 5 n. 4.  It points out that at trial, one of its experts confirmed the

3   static nature of the database fields at issue.  *Id.* (citing Trial Tr. 1483-84, 1492 (Bridge)).   On the

4   other hand, Plaintiffs' counsel stated at that September 2, 2020 hearing that they did not

5   understand when they agreed to the method used to identify class members that a particular field

6   in UBH's databases that was used to identify class members was "static" and therefore would not

7   identify class members whose denials at the administrative appeals level (but not at the initial

8   denial level) placed them within the class.   What Plaintiffs did not offer was any evidence

9   establishing that counsel acted diligently with respect to these class members, that is, that UBH

10  did not provide sufficient information to put Plaintiffs' counsel on notice that the method to which

11  they agreed would exclude a subset of the class. In the absence of such evidence, the Court finds

12  that the omission was simply an oversight on the part of Plaintiffs' counsel.  Therefore, the Court

13  concludes that as to these individuals, the efforts that were made to identify them were not

14  reasonable and the "best notice practicable" requirement was not met to the extent that they were

15  not sent individual notices.

16       While the implication of the Court's conclusion is that the classes must be partially

17  decertified as to the individuals who were left off the class lists because of the method used to

18  identify class members, the Court must also consider two questions that were not briefed by the

19  parties.  First, should the three individuals who fell within this category but received *actual* notice

20  of the class action through the website that was maintained by Plaintiffs' counsel as part of the

21  official notice plan approved by the Court be excluded from the class for the purposes of Rule

22  23(b)(3) remedies?   The case law offers little guidance on this question.  Typically, the question

23  of whether class notice satisfied the requirements of due process and Rule 23(c)(2) arises when

24  class members assert that they should *not* be bound by a judgment against the class because they

25  did not receive notice of the class action.  In that context, it is well-established that actual notice is

26  not required so long as the notice approved by the court was the "best notice practicable." *See*

27  *Silber v. Mabon*, 18 F.3d 1449, 1453 (9th Cir. 1994).

28       Here, the Court is faced with a slightly different question, namely, should a class member

21

United States District Court
Northern District of California

1   who was not sent an individual notice but nonetheless received actual notice of the class action

2   through other means of notice approved by the court in the class action be bound by the judgment

3   entered in a class action where the individual had the opportunity to opt out but did not do so.  The

4   Court has found no authority to suggest that such a class member would be permitted to avoid a

5   class judgment and further concludes that reaching such a result would not further the purposes of

6   Rule 23 or due process as it would allow class members whose due process rights were not

7   infringed to invoke the rights of absent class members to avoid the class judgment even though

8   they had notice and opportunity to opt out but failed to do so.   For these reasons, the Court

9   concludes that any class members who became aware of this action through the website

10   maintained in this case before the last deadline to opt out and did not opt out are bound to the

11   Court's judgment and thus entitled to all of the remedies awarded by the Court, including those

12   awarded under Rule 23(b)(3).[5]

13       The second issue related to actual notice involves the 170 individuals addressed in the

14   supplemental briefing who were inadvertently included on the class list based on administrative

15   denials and therefore were sent notices of this action.  *See* Dkt. No. 453 at pp. 1-3.  The flaw in the

16   method used to identify class members that has now been brought to the Court's attention raises

17   the possibility that some of these individuals may fall within the class definition based on an

18   administrative appeal even though their initial denials were administrative.  As these 170

19   individuals were sent individual notices and given the opportunity to opt out, any among them

20   who fall under the class definition are entitled to all of the remedies awarded by the Court to class

21   members because notice to this group of individuals satisfied Rule 23(c)(2).  Therefore, UBH will

22   be required to review the files of these 170 individuals to determine whether any of them fall

23   within that category and should remain in the classes.

24       In sum, the Court concludes that any class members who fell under the class definition by

25   virtue of a denial at the administrative level and were omitted from the class list as a result of the

26

27   [5] To the extent that any of these individuals did not become aware of this case until after the  last
     opt-out deadline had passed, however, the Court concludes that they  cannot be bound with respect
28   to the Rule 23(b)(3) remedies and therefore must be excluded from the class as to those remedies
     under the rule against one-way intervention.

method used to identify class members shall be removed from the class for the purposes of Rule 23(b)(3) remedies only with the following exceptions:  1) those who were inadvertently placed on the class list whose initial denials were administrative will remain in the class as to all remedies if UBH's review of their denial letters at the administrative appeal level reveals that they do, in fact, fall within the class definition and they did not opt out; and 2) those who received actual notice of this action before the opt-out deadline by viewing the official website maintained by Plaintiffs' counsel and who did not opt out by the deadline to opt out will also remain in the class as to all remedies

As the class members who will be removed from the classes for the reasons discussed above did not receive individual notices of the action, the Court does not order that notice be sent to the excluded class members.  However, Plaintiffs' counsel shall alert the classes of this modification by placing a notice on the case website for informing class members of the Court's partial decertification on this ground and alerting them that any applicable statutes of limitations will begin to run on claims of the excluded class members when the decertification goes into effect.  The Court's decertification as to these individuals will go into effect 120 days after Plaintiffs' counsel have posted the notice on the case website.

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part UBH's Decertification Motion and will decertify the classes in the following respects:

1) The class definitions shall be modified in the manner proposed by Plaintiffs in Dkt. No. 431-1 to exclude individuals who were granted *all* of the benefits that they sought following an administrative appeal.

2)  The State Mandate Class definition shall be modified to reflect that the Illinois class period ends on January 1, 2016.

3) The classes will be decertified as to Rule 23(b)(3) remedies to exclude class members who were omitted from the class lists because of the flaw in the method used to identify class members and who do not fit into the two exceptions discussed above.

With these modifications, the class definitions will be defined as follows when the Court's

decertification takes effect:

**Wit Guideline Class**:  Any member of a health benefit plan governed by ERISA whose request for coverage of residential treatment services for a mental illness or substance use disorder was denied by UBH, in whole or in part, between May 22, 2011 and June 1, 2017, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines, and was not subsequently approved in full, following an administrative appeal.    The Wit Guideline Class excludes members of the Wit State Mandate Class, as defined below.  In addition, with respect to remedies awarded under Rule 23(b)(3) of the Federal Rules of Civil Procedure only, the Wit Guideline Class excludes individuals who meet the requirement set forth in the first sentence of the class definition based only upon a denial at the administrative appeal level of UBH's coverage determination process and: 1) to whom an individual notice of this action was not sent; and 2) who did not receive actual notice of this action before the applicable deadline to opt out of the class from the website maintained by Plaintiffs' counsel as part of the official notice plan approved by the Court.

**The Wit State Mandate Class**:  Any member of a fully-insured health benefit plan governed by both ERISA and the state law of Connecticut, Illinois, Rhode Island, or Texas, whose request for coverage of residential treatment services for a substance use disorder was denied by UBH, in whole or in part, within the Class period, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines, and not upon the level-of-care criteria mandated by the applicable state law, and was not subsequently approved, in full, following an administrative appeal; except that with respect to remedies awarded under Rule 23(b)(3) of the Federal Rules of Civil Procedure only, the Wit State Mandate Class excludes individuals who meet the requirement set forth in the previous sentence based only upon a denial at the administrative appeal level of UBH's coverage determination process and: 1) to whom an individual notice of this action was not sent; and 2) who did not receive actual notice of this action before the applicable deadline to opt out of the class from the website maintained by Plaintiffs' counsel as part of the official notice plan approved by the Court.  With respect to plans governed by Texas law, the Wit State Mandate Class includes only denials of requests for coverage of substance use disorder services that were sought or received in Texas.  The Class period for the Wit State Mandate Class includes denials governed by Texas law that occurred between May 22, 2011 and June 1, 2017, denials governed by Illinois law that occurred between August 18, 2011 and January 1, 2016, denials governed by Connecticut law that occurred between October 1, 2013 and June 1, 2017, and denials governed by Rhode Island law that occurred between July 10, 2015 and June 1, 2017.

**The Alexander Guideline Class**:  Any member of a health benefit plan governed by ERISA whose request for coverage of outpatient or intensive outpatient services for a mental illness or substance use disorder was denied by UBH, in whole or in part, between December 4, 2011 and June 1, 2017, based upon UBH's Level of Care

Guidelines or UBH's Coverage Determination Guidelines, and was not subsequently approved, in full, following an administrative appeal. The Alexander Guideline Class excludes any member of a fully insured plan governed by both ERISA and the state law of Connecticut, Illinois, Rhode Island or Texas, whose request for coverage of intensive outpatient treatment or outpatient treatment was related to a substance use disorder, except that the Alexander Guideline Class includes members of plans governed by the state law of Texas who were denied coverage of substance use disorder services sought or provided outside of Texas. In addition, with respect to remedies awarded under Rule 23(b)(3) of the Federal Rules of Civil Procedure only, the Alexander Guideline Class excludes individuals who meet the requirement set forth in the first sentence of the class definition based only upon a denial at the administrative appeal level of UBH's coverage determination process and: 1) to whom an individual notice of this action was not sent; and 2) who did not receive actual notice of this action before the applicable deadline to opt out of the class from the website maintained by Plaintiffs' counsel as part of the official notice plan approved by the Court.

As to class members who will be excluded from the classes as a result of this Order, the case will be stayed and the limitations period on their individual claims will be tolled for 120 days after notice is sent or, if applicable, posted on the website for this case maintained by Plaintiffs' counsel.

The parties should meet and confer with respect to:  1) the development of a protocol and schedule for identifying the Texas members of the Wit State Mandate Class and finalizing the class lists consistent with the Court's conclusions in this Order; 2) the schedule and proposed process for giving notice to affected class members of the Court's rulings regarding decertification; and 3) the content of the notices to be sent to former class members and the notice to be posted on the website maintained in this case by Plaintiffs' counsel for those former class members who were not sent individual notices.  Within 14 days of this Order, the parties should submit their proposals, which should be joint to the extent possible, to the Court for approval.

**IT IS SO ORDERED.**

Dated:  November 3, 2020

_____
JOSEPH C. SPERO
Chief Magistrate Judge