1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7    DAVID WIT, et al.,                          Case No.  14-cv-02346-JCS
                                                 Related Case No. 14-cv-05337 JCS
                    Plaintiffs,
8
9          v.                                    **REMEDIES ORDER**

10   UNITED BEHAVIORAL HEALTH,

              Defendant.
11

12   GARY ALEXANDER, et al.,

13
                    Plaintiffs,
14
15         v.

16   UNITED BEHAVIORAL HEALTH,

              Defendant.
17

18

19   **I.      INTRODUCTION**

20          This case arises out of pervasive and long-standing violations of ERISA by United

21   Behavioral Health ("UBH").  UBH denied mental health and substance use disorder treatment

22   coverage to tens of thousands of class members using internal guidelines that were inconsistent

23   with the terms of the class members' health insurance plans.  UBH engaged in this course of

24   conduct deliberately, to protect its bottom line.  To conceal its misconduct, UBH lied to state

25   regulators and UBH executives with responsibility for drafting and implementing the guidelines

26   deliberately attempted to mislead the Court at trial in this matter.  After the trial, the Court found

27   for Plaintiffs.  Having prevailed at trial, Plaintiffs now seek the following categories of relief: 1)

28   declaratory relief in the form of a declaration that UBH violated the terms of the class members'

plans requiring that coverage be consistent with generally accepted standards of care and clarifying class members' rights under the plans; 2) an order remanding UBH's coverage determinations for reprocessing under standards that are consistent with generally accepted standards of care; 3) injunctive relief designed to prevent UBH from harming class members in the same way in the future; and 4) appointment of a special master to monitor UBH's compliance with the Court's remedies order.   After an initial round of briefing on remedies, the parties supplied supplemental briefing on specific issues at the request of the Court.   Following a hearing on September 2, 2020, the parties submitted additional proposed language to be used in the Court's remedies order and UBH filed an Administrative Motion for Leave to Submit Evidence in Opposition to Proposed Remedies Order ("Administrative Motion"), Dkt. No. 478.  The Court's rulings on remedies and the Administrative Motion are set forth below.[1]

## II.     GENERAL LEGAL STANDARDS GOVERNING ERISA REMEDIES

Plaintiffs assert their claims for breach of fiduciary duty and arbitrary and capricious denial of benefits under 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). Under 29 U.S.C. § 1132(a)(1)(B), a plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  Under § 1132(a)(3), a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

"Where there has been a breach of fiduciary duty, ERISA grants to the courts broad authority to fashion remedies for redressing the interests of participants and beneficiaries." *Donovan v. Mazzola*, 716 F.2d 1226, 1235 (9th Cir. 1983) (citing *Eaves v. Penn*, 587 F.2d 453, 462 (10th Cir. 1978); *Marshall v. Snyder*, 572 F.2d 894, 901 (2d Cir. 1978)).  "Courts also have a duty to 'enforce the remedy which is most advantageous to the participants and most conducive to

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

effectuating the purposes of the trust.'" *Id.* (quoting *Eaves*, 587 F.2d at 462).[2]   The Supreme

Court explained in *Varity Corp. v. Howe*,  that 29 U.S.C. § 1132(a)(3) is a "catchall" provision

that "act(s) as a safety net, offering appropriate equitable relief for injuries caused by violations

that [§ 1132] does not elsewhere adequately remedy." 516 U.S. 489, 512 (1996).  The "equitable

relief" authorized under § 1132(a)(3) refers to "those categories of relief that were typically

available in equity (such as injunction, mandamus, and restitution, but not compensatory

damages)."  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993).  In *Varity*, the Court stated in

dicta, "[w]e should expect that where Congress elsewhere provided adequate relief for a

beneficiary's injury, there will likely be no need for further equitable relief, in which case such

relief normally would not be 'appropriate.'" *Id.* at 515.  The Court did not actually decide whether

plan members can seek relief under both §§ 1132(a)(1)(B) and (a)(3) for a breach of fiduciary

duty.   In *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), however, the Court found that they can.

In *Amara*, employees brought a class action against their employer after the employer

changed the terms of their pension plan without providing adequate notice of the new plan as

required by ERISA.  563 U.S. at 429.  The district court found that the employees had been misled

---

[2]The Court rejects UBH's contention in its remedies brief that these rules do not apply here because *Donovan* involved a breach of fiduciary duty claim brought by the Secretary of Labor under 29 U.S.C. §§ 1109 and 1132(a)(2), and Plaintiffs do not assert their claims under these provisions.   *See* United Behavioral Health's Response to Plaintiffs' Remedies Brief ("Opposition"), Dkt. No. 428-4, at 6.  While it is well-established that §§ 1109 and 1132(a)(2) authorize only relief that benefits the plan as a whole, *see Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 144 (1985), there is nothing in *Donovan* or *Russell* that suggests that the rules quoted above are limited to the remedies available under § 1132(a)(2).  To the contrary, the cases the Ninth Circuit cited in *Donovan* rely on Congress's expressed purpose in enacting the ERISA enforcement provisions "to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Retirement Income Security for Employees Act" based on "principles of traditional trust law" and thereby "to establish uniform fiduciary standards to prevent transactions which dissipate or endanger plan assets; and to provide effective remedies for breaches of trust."  *Eaves*, 587 F.2d  at 462 (citing Statement of the Honorable Harrison A. Williams, Jr., 120 Cong.Rec. S-15737, August 22, 1974, Reprinted (1974) U.S.Code Cong. & Admin.News, pp. 5177, 5186);  *see also Marshall*, 572 F.2d at 901 ("The legislative history of ERISA makes it clear that, as the House report on HR2 indicates, '[t]he intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants.'") (quoting H. Rep. No. 533, 93d Cong., 2d Sess., reprinted in (1974) 3 U.S. Code, Cong. & Admin. News, pp. 4639, 4655).  These cases do not support the narrow reading of *Donovan* proposed by UBH.

United States District Court
Northern District of California

and that many of them were worse off under the new plan. *Id*. at 432.  It ordered a two-step remedy:  first, the terms of the plan would be reformed to remedy the false or misleading information and then the reformed plan would be enforced, which for at least some class members would result in the payment of benefits that would have been due under the old plan. *Id*. at 434-435, 440.  The Court addressed whether ERISA authorized the relief fashioned by the district court and found that it did.

The *Amara* Court found that enforcement of the reformed plan was consistent with § 1132(a)(1)(B), "for that provision grants a participant the right to bring a civil action to 'recover benefits due . . . under the terms of his plan.'" *Id*. at 435.  The more difficult question was whether § 1132(a)(1)(B) allowed for reformation of the plan that was to be enforced.  The Court concluded that it did not because that section authorizes only the *enforcement* of an ERISA plan. *Id*. at 436-438.  Nonetheless, it went on to find that reformation of the plan was allowable under § 1132(a)(3) because that remedy constituted a traditional equitable remedy.  *Id*. at 439-440.  It further found that "the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief," explaining that "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id*. at 441.

The Ninth Circuit has held that *Varity* and *Amara*, read together, "'prohibit duplicate recoveries when a more specific section of the statute, such as § 1132(a)(1)(B), provides a remedy similar to what the plaintiff seeks under the equitable catchall provision, § 1132(a)(3).'" *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 961 (9th Cir. 2016), as amended on denial of reh'g and reh'g en banc (Aug. 18, 2016) (quoting *Silva v. Metro. Life Ins. Co*., 762 F.3d 711, 726 (8th Cir. 2014));  *see also McGlasson v. Long Term Disability Coverage for All Active Full-Time & Part-Time Employees*, 161 F. Supp. 3d 836, 844 (D. Ariz. 2016) ("the district court must evaluate a plaintiff's ERISA claims under both sections before deciding whether recovery of benefits under § 1132(a)(1)(B) fully compensates the plan participant for his injury, thereby rendering any other remedy duplicative, or whether an additional equitable remedy is appropriate to make the plan participant whole").

III.    **DECLARATORY RELIEF**

    A.    **Background**

        **1.    Motion**

Plaintiffs ask the Court to issue its "core liability findings" as a declaratory judgment. Plaintiffs' Opening Remedies Brief ("Motion") at 5-6; *see also* Plaintiffs' Amended Proposed Remedies Order § I.[3] They contend such relief is authorized under 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3) and is consistent with traditional equitable remedies.  Motion at 5-6 (citing *Dakotas & W. Minnesota Elec. Indus. Health & Welfare Fund by Stainbrook & Christian v. First Agency, Inc.*, 865 F.3d 1098 (8th Cir. 2017)).

        **2.    Opposition**

UBH argues that Plaintiffs' request for declaratory relief should be denied.  Opposition at 54-55.  In particular, UBH argues that the declaratory relief Plaintiffs seek should not be awarded because: 1) it merely "rehash[es]" portions of the Court's Findings of Fact and Conclusions of Law ("FFCL") and therefore will not serve a useful purpose; *id.* at 54 (citing *United States v. Washington*, 769 F.2d 1353, 1356-1357 (9th Cir. 1985); *Hurd v. Garcia*, 454 F. Supp. 2d 1032, 1053 (S.D. Cal. 2006)); and 2) declaratory relief under ERISA is available only to clarify the class members' rights to future benefits under their plans, not their rights to past benefits.  *Id.* at 55 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989); *Williams v. Bank of Am.*, 2013 WL 1907529, at *5 (E.D. Cal. May 7, 2013)).  With respect to the second argument, UBH asserts that Plaintiffs cannot show that the declaratory relief they seek will clarify a right to future benefits because they have not offered evidence that any plan at issue is still in effect, that any class member is a current participant or beneficiary of such a plan, or that UBH still uses its Guidelines.  *Id.* They also argue that Plaintiffs cannot obtain the declaratory relief they seek under

---

[3] Plaintiffs filed a proposed remedies order with their opening brief on remedies (Dkt. No. 426-1) ("Plaintiffs' Proposed Remedies Order") and an amended proposed remedies order with their reply brief (Dkt. No. 435-1) ("Plaintiffs' Amended Proposed Remedies Order").  In addition, following the September 2, 2020 hearing, Plaintiffs filed a Revised Proposed Remedies Order (Dkt. No. 476) ("Plaintiffs' Post-Hearing Revised Proposed Remedies Order") and UBH filed a response to that version proposing some alternative language.  *See* Dkt. No. 477 ("UBH Post-Hearing Submission re Proposed Remedies Order").

United States District Court
Northern District of California

§ 1132(a)(3) because they have conceded that declaratory relief is available under § 1132(a)(1)(B). *Id.* at 54 n. 38.

UBH also objects to Paragraph 20 of the Declaratory Judgment section of Plaintiffs' Proposed Remedies Order, which states that "UBH violated Texas law throughout the Class Period by applying its own Guidelines rather than applying solely TDI Criteria to claims covered by the Texas statute." *Id.* at 56. UBH argues that this declaration misstates the Court's finding that UBH violated Texas law "at some point" during the class period and that UBH did not "consistently apply the TDI Criteria to claims for benefits that were governed by Texas law during the class period." *Id.* (quoting FFCL ¶ 167). Similarly, UBH objects to Paragraph 22, subsection b of Plaintiffs' Proposed Remedies Order, which states that UBH violated Illinois law by applying its Guidelines rather than those mandated by state law between August 18, 2011 and June 1, 2017, whereas the Court found that UBH began using the ASAM Criteria for Illinois substance use disorder claims in January 2016. *Id.* (citing FFCL ¶ 161).

### 3. Reply

In their Reply in Support of their Request for Remedies, Dkt. No. 435 ("Reply"), Plaintiffs reject UBH's argument that the declaratory relief they request is not useful because it merely restates the Court's conclusions in the FFCL. Reply at 56-57. They contend that neither of the cases UBH cites – *United States v. Washington* and *Hurd v. Garcia* – stands for a general rule that a declaratory judgment is not appropriate where it restates the court's separate findings. *Id.* To the contrary, according to Plaintiffs, in *United States v. Washington*, the district court ordered the parties to file a proposed order consistent with its factual findings and legal conclusions and the court of appeals upheld one of the two proposed declarations; the other it vacated because it was "imprecise in definition and uncertain in dimension" and amounted to a "general admonition" to comply with an existing treaty. *Id.* at 57 (citing 769 F.2d at 1356-1357). Plaintiffs contend *Hurd v. Garcia* also is not on point as in that case the court dismissed the plaintiff's declaratory relief claim only because it was based on the same legal theory as the plaintiff's damages claims, which the court had already dismissed on summary judgment. *Id.* at 56 n. 65 (citing 454 F. Supp. 2d at 1054).

1      Plaintiffs also reject UBH's argument that they can obtain a declaratory judgment only to

2  clarify their rights to future benefits.   *Id*. at 57-59.  Plaintiffs argue that § 1132(a)(1)(B) expressly

3  authorizes participants not only to "clarify [their] rights to future benefits under the terms of the

4  plan" but also to "enforce [their] rights under the terms of the plan" and that UBH has offered no

5  explanation as to why the declaratory relief they seek would not be allowable under the latter

6  clause.  *Id*. at 57. Plaintiffs reject UBH's reliance on *Firestone*, arguing that that case stated only

7  that § 1132(a)(1)(B) allows a plaintiff to "obtain a declaratory judgment of future entitlement to

8  benefits" but does not purport to address the full scope of declaratory relief that is available under

9  that section.  *Id*. at 57 n. 67 (citing 489 U.S. at 108).  Plaintiffs also reject UBH's reliance on

10  *Williams v. Bank of America* because that case "is not even an ERISA case, making it inapposite."

11  *Id*. (citing 2013 WL 1907529, at * 5).

12      Furthermore, Plaintiffs assert, to the extent that UBH suggests Plaintiffs failed to meet

13  their burden because they did not introduce evidence at trial showing that class members' plans

14  continue to condition coverage on generally accepted standards of care, that argument is

15  "preposterous[]" as the plan documents that would have proven this were not yet in existence at

16  the time of the trial.  *Id*. at 58.  According to Plaintiffs, UBH knows that the plans it administers

17  continue to include this requirement and that is why it did not support its argument with a

18  declaration stating that none of the class members' current plans conditions coverage on adherence

19  to generally accepted standards of care.  *Id*.  The evidence that is now available, Plaintiffs contend,

20  shows that many of the named Plaintiffs' plans continue to condition coverage on generally

21  accepted standards of care.  *Id*. (citing Reply Ex. C (2019 Driscoll Plan) at 124, 130-31 ("Covered

22  Health Services" "must be in accordance with Generally Accepted Standards of Medical

23  Practice"); Reply Ex. D (2019 Holdnak Plan) at 152-53, 158 (same); Reply Ex. E (2019 Muir

24  Plan) at 72, 77 (same); Reply Ex. G (2019 Tillit Plan) at 129, 136 (same)).  Plaintiffs also argue

25  that to the extent that the Court has found six years of biased claims administration, the

26  declarations Plaintiffs seek are forward looking because they are relevant to the appropriate

27  standard of review to be applied in future cases brought by class members against UBH.  *Id*.

28      Plaintiffs argue that even if they were limited to future-looking declaratory relief under §

7

1132(a)(1)(B), they could obtain the declarations they seek under § 1132(a)(3) as UBH does not dispute that a declaratory judgment is a traditional remedy in equity. *Id.* at 59.

With respect to Paragraph 20 of the Declaratory Judgment section of Plaintiffs' Proposed Remedies Order, Plaintiffs agree that the words "throughout the Class Period" should be changed to "during the Class Period." *Id.* In Plaintiffs' Amended Proposed Remedies Order, Plaintiffs have amended this language. Plaintiffs do not agree, however, that the Court's findings allowed UBH to use its own Guidelines "alongside" the TDI Criteria or that the declaration in Paragraph 20 should be revised to suggest as much. *Id.* at 59-60. Plaintiffs argue that adopting UBH's position would amount to creating a "massive unstated exception" that was not raised at trial or in post-trial briefing. *Id.* at 60.

As to Paragraph 22, Plaintiffs agree with UBH that the declaration should be amended to reflect the Court's finding that with respect to the Wit State Mandate Class, UBH's adverse benefit determinations for plans governed by Illinois law were in violation of state law between August 18, 2011 and January 1, 2016. They also note that the Class Definition should be amended to reflect the accurate end date with respect to the denial of Illinois claims. *Id.* at 60 n. 71.

### B. Discussion

There is no dispute that § 1132(a)(1)(B) allows plan members to seek a declaratory judgment to "clarify" their entitlement to future benefits. Nor has UBH cited any persuasive authority that a declaratory judgment is inappropriate simply because it is consistent with findings the court has made in a separate order. Neither *United States v. Washington,* 769 F.2d 1353 (9th Cir. 1985) nor *Hurd v. Garcia*, 454 F. Supp. 2d 1032 (S.D. Cal. 2006) holds as much. The only remaining question is whether the declaratory relief Plaintiffs seek is barred because it is not forward-looking relief related to future benefits. The Court finds that it is not.

First, the language of the statute itself is inconsistent with UBH's argument as § 1132(a)(1)(B) allows a plan participant to bring an action "to enforce his rights under the terms of the plan, *or* to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). Clearly, the statute does not limit the relief plan participants may seek to clarification of their right to future benefits. Furthermore, the Court finds that the

United States District Court
Northern District of California

United States District Court
Northern District of California

1  declaratory relief relating to past denials of benefits falls comfortably within the ambit of the first

2  clause, allowing a plan member to bring an action to "enforce his rights under the terms of the

3  plan."

4           The scant authority UBH cites does not support its position.  In *Firestone Tire & Rubber*

5  *Co. v. Bruch*, the Court stated in dicta that § 1132(a)(1)(B) "allows a suit to recover benefits due

6  under the plan, to enforce rights under the terms of the plan, and to obtain a declaratory judgment

7  of future entitlement to benefits under the provisions of the plan contract."  489 U.S. at 108.  But

8  the plaintiffs in that case were seeking an award of benefits they asserted had been wrongfully

9  denied, and the question addressed by the Court was the "appropriate standard of review for

10  actions under § 1132(a)(1)(B) challenging benefit eligibility determinations."  *Id.* at 109.  The

11  Court had no cause to consider whether declaratory relief under § 1132(a)(1)(B) was *limited* to a

12  plan member's right to future benefits and it did not purport to do so.  The only other case UBH

13  cites in support of its contention that only forward-seeking declaratory relief is available under

14  ERISA is not an ERISA case and sheds no light on that question whatsoever.  *See Williams v.*

15  *Bank of Am.*, 2013 WL 1907529 (E.D. Cal. May 7, 2013).

16           Therefore, the Court concludes that even assuming that the relief Plaintiffs seek is not

17  forward-looking, it is available under § 1132(a)(1)(B).  In the alternative, the Court finds that if

18  such relief is unavailable under § 1132(a)(1)(B) because that section limits declaratory relief to

19  clarification of a plan member's rights to future benefits, the declaratory relief Plaintiffs seek is

20  available under § 1132(a)(3) under the authority discussed in the legal standards section of this

21  Order.

22           The Court further finds that UBH is incorrect as a factual matter in its characterization of

23  the declaratory relief Plaintiffs seek as relating only to the denial of past benefits. While the Court

24  instructed the parties that all of their evidence related to remedies must be introduced at trial, that

25  requirement certainly did not mean that the Court would disregard highly relevant evidence that

26  *could* not have been introduced at trial – such as plans that had not yet been issued.  Plaintiffs have

27  offered the 2019 health care plans of four named Plaintiffs showing that they continued to

28  condition coverage on generally accepted standards of care.  In addition, at the September 2, 2020

9

1    hearing, UBH stipulated that there are still named Plaintiffs who are covered by UBH plans with

2    medical necessity provisions.  Transcript of Proceedings, September 2, 2020, at 69-70.  Therefore,

3    the Court finds that the declaratory relief Plaintiffs seek is allowable under § 1132(a)(1)(B) on the

4    additional ground that it clarifies their "rights to future benefits under the terms of the plan[s]."

5        With respect to the specific declarations requested by Plaintiffs, UBH challenges only

6    Paragraphs 20 and 22.  As discussed above, Plaintiffs agree that some of the language in these

7    paragraphs should be modified and the Court therefore adopts the modifications in these

8    paragraphs proposed in Plaintiffs' Amended Proposed Remedies Order.

9        Plaintiffs do not agree, however, that the word "solely" should be removed from Paragraph

10   20, arguing that doing so would suggest that UBH was allowed to use its own Guidelines

11   alongside the TDI Criteria to make coverage determinations.  Plaintiffs are correct.  As the Court

12   explains in its concurrently filed order on UBH's motion to decertify, it found in its FFCL that

13   UBH was liable as to the Wit State Mandate Class claims, including the Texas members' claims,

14   without limitation. As the Wit State Mandate Class includes individuals whose claims were denied

15   "in whole or in part" based on the UBH Guidelines, the Court's liability finding covers individuals

16   whose claims were denied exclusively on the basis of the UBH Guidelines *and* individuals whose

17   claims were denied on the basis of both UBH Guidelines and the Texas guidelines.  In other

18   words, UBH violated these class members' right to have their claims adjudicated *solely* on the

19   basis of the criteria mandated under Texas law.

20       Therefore, the Court awards the declaratory relief requested in Section I of Plaintiffs'

21   Amended Proposed Remedies Order.[4]  This relief is awarded under Rule 23(b)(1)(A) and (b)(2).

22   IV.  **REMAND FOR REPROCESSING**

23       A.  **Background**

24           1.  **Motion**

25       Plaintiffs contend reprocessing of the class members' claims is an appropriate remedy

26   under *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, in

27   _____

28   [4] This section is identical to Section I of Plaintiffs' Post-Hearing Revised Proposed Remedies
     Order, Dkt. No. 476.

United States District Court
Northern District of California

1   which the Ninth Circuit held "that remand for reevaluation of the merits of a claim is the correct

2   course to follow when an ERISA plan administrator, with discretion to apply a plan, has

3   misconstrued the Plan and applied a wrong standard to a benefits determination." Motion at 7

4   (citing 85 F.3d 455, 461 (9th Cir. 1996); *Pannebecker v. Liberty Life Assur. Co. of Bos.*, 542 F.3d

5   1213, 1221 (9th Cir. 2008)).  According to Plaintiffs, the class members' claims must be

6   reprocessed using standards that are consistent with the class members' plans in light of the

7   Court's finding that UBH misconstrued the terms of the class members' plans by applying overly

8   narrow guidelines to determine whether the requested services were consistent with generally

9   accepted standards of care, which was a requirement of all of the class members' plans.  *Id.*

10      Plaintiffs assert that although reprocessing is a form of retrospective injunctive relief,

11   courts do not require that the four-factor test that usually applies to injunctive relief must be

12   satisfied.  *Id.* at 8 n. 5.  Plaintiffs point to *Meidl v. Aetna, Inc.*, in support of their position.  *Id.*

13   (citing 346 F. Supp. 3d 223, 242 (D. Conn. 2018)).  In that case, the court found that "the Second

14   Circuit has never suggested that a plaintiff must meet [the] traditional four-factor test for

15   injunctive relief in order to secure a reprocessing order under section 1132(a)(1). . . . Accordingly,

16   district courts in this Circuit have routinely issued reprocessing orders under section 1132(a)(1)

17   without inquiring into whether the plaintiff satisfies the traditional elements for injunctive relief."

18   *Id*. (citing *Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*, 217 F.Supp.3d 608, 635

19   (N.D.N.Y. 2016); *Benjamin v. Oxford Health Ins.*, Inc., No. 3:16-CV-00408 (CSH), 2018 WL

20   3489588, at *9 (D. Conn. July 19, 2018)). Plaintiffs further assert that applying the traditional

21   four-factor test for injunctive relief would be inconsistent with the purposes of remanding to the

22   ERISA plan administrator, which is to allow the administrator – and not the court – to make the

23   eligibility determination in the first instance.  *Id*. (citing *Jordan v. Northrop Grumman Corp*

24   *Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004)).

25      Plaintiffs argue further that it is appropriate for the Court to remand with "specific

26   instructions" about how the reprocessing will be conducted, citing *Lancaster v. U.S. Shoe Corp.*,

27   934 F. Supp. 1137, 1170 (N.D. Cal. 1996) (remanding for reprocessing of claims under *Saffle* and

28   holding that "[o]n remand, the Benefit Committee must determine the correct amount of benefits

owed, pursuant to the specific instructions we will give in the concluding section of this opinion and order.").   Plaintiffs contend that while courts sometimes presume that the plan administrator will act in good faith upon remand, such a presumption is not warranted here in light of the Court's findings that UBH put its financial interests ahead of its duties to plan members and misled regulators about how it was processing claims.  *Id*. at 8-9 (citing *Duarte v. Aetna Life Ins. Co.,* No. SACV 13-00492-JLS RN, 2014 WL 1672855, at *11 (C.D. Cal. Apr. 24, 2014)).   Under these circumstances, Plaintiffs assert, detailed instructions about how the reprocessing will be conducted are necessary to protect the interests of the class members and to ensure that plan terms are "applied consistently with respect to similarly situated claimants."  *Id*. at 9 (citing 29 C.F.R. § 2650.503-1(b)(5)).

Plaintiffs request specific instructions that: 1) allow for completion of the class members' records on remand; 2) specify the criteria to be applied on remand; 3) specify the procedures UBH should follow when the reprocessing is complete; 4) expressly require the payment of pre- and post-judgment interest on any benefits to which a class member is entitled after reprocessing; 5) require UBH to certify compliance with the reprocessing procedures and report to the Court on its compliance; and 6) set deadlines that ensure that reprocessing proceeds expeditiously.  *Id*. at 9. Plaintiffs also ask the Court to appoint a special master to monitor compliance.  *Id*.

**Completion of Administrative Record.**  Plaintiffs argue that upon remand, class members should be permitted to complete the administrative record with respect to their requests for coverage.  *Id*. at 10 (citing *Henry v. Home Ins. Co*., 907 F. Supp. 1392, 1399 (C.D. Cal. 1995); *Duarte v. Aetna Life Ins. Co.,* 2014 WL 1672855, at *10; *Scothorn v. Connecticut Gen. Life Ins. Co*., No. C 95-20437 JW, 1996 WL 341110, at *4 (N.D. Cal. June 13, 1996); *Wooten v. Prudential Ins. Co. of Am*., No. C 03-2558 MJJ, 2004 WL 2125853, at *8 (N.D. Cal. Sept. 20, 2004);  *Brown v. Unum Life Ins. Co. of Am*., 356 F. Supp. 3d 949, 963 (C.D. Cal. 2019)).

According to Plaintiffs, the current administrative record for many, if not all of the class members is incomplete because UBH was under a "misapprehension" of what generally accepted standards of care required; among other things, this misapprehension resulted in UBH failing to conduct the required "multidimensional assessment" of each patient or to take into account the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    unique needs of children and adolescents.  *Id*. at 11.  Plaintiffs further note that based on UBH's

2    records, "the vast majority of the class members' requests for coverage were denied on either a

3    pre-service basis, meaning that coverage was denied before any services were received, or on a

4    concurrent basis, meaning that coverage was denied after treatment began but before it was

5    complete." *Id.*  As to those class members who went on to obtain the requested treatment at their

6    own expense, it would have been futile to submit post-service claims for coverage that UBH had

7    already denied and as a consequence, the records of many class members are incomplete in that

8    they do not include the cost of services these class members actually received or clinical evidence

9    related to that treatment, Plaintiffs contend.  *Id*.  Therefore, Plaintiffs assert, class members should

10   be permitted to supplement the administrative record to supply both: 1) relevant medical and

11   clinical information; and 2) "records substantiating services received at the requested level of care

12   after a pre-service or concurrent denial, including any bills relating to such services." *Id*. at 12;

13   Plaintiffs' Amended Proposed Remedies Order § III.A.  Plaintiffs further ask that the burden of

14   completing the record be shared by prohibiting UBH from denying any claim during reprocessing

15   based on an insufficient record unless UBH has made a "good-faith effort" to obtain the additional

16   medical information from the provider.  Motion at 12.  Plaintiffs ask that the special master be

17   given responsibility for determining what constitutes a "good faith effort."  *Id*. n. 10.

18          **Criteria to be Applied on Remand.**  Plaintiffs assert that the class members' claims must

19   be reprocessed under criteria that are consistent with the Court's FFCL, that is, reflect generally

20   accepted standards of care.  *Id*. at 13.  Because the Court has found that the ASAM Criteria (2013

21   edition) (Trial Exhibit 662), LOCUS (2010 edition) (Trial Exhibit 653) and CALOCUS (2014

22   edition) (Trial Exhibit 645), are consistent with generally accepted standards of care, Plaintiffs ask

23   the Court to apply these standards when reprocessing the class members' claims.  *Id*. at 13.

24   Plaintiffs further ask the Court to require that in applying the ASAM Criteria, UBH must evaluate

25   whether the claimant qualified for care at any of the four levels of care (3.1, 3.3, 3.5 and 3.7) and

26   extend coverage if any of them are met.  *Id*. at 14;  *see also* Plaintiffs' Amended Proposed

27   Remedies Order § III.B.1 ("When re-evaluating requests for residential treatment of a substance

28   use disorder, UBH shall approve coverage if the member qualified for services at any of the sub-

United States District Court
Northern District of California

1    levels identified in the ASAM Criteria (*ie*., Levels 3.1, 3.3. 3.5, and 3.7).").  Plaintiffs point to the

2    Court's finding that UBH did not have criteria for coverage at the three lower levels in its

3    Guidelines and that it misrepresented its Guidelines to Connecticut regulators with respect to these

4    lower levels of residential care. Motion at 14 (citing FFCL at 80-81).

5         **Procedures to Protect Class Members**.  Plaintiffs contend it is necessary to put into place

6    protections to ensure that UBH does not retaliate against class members or "further enrich itself at

7    the class's expense." *Id.* (citing *Donovan*, 716 F.2d at 1235).  In particular, Plaintiffs ask the

8    Court to put into place the following protective measures:

- **No reduction in class member benefits.** Plaintiffs ask the Court to make
  clear that UBH will not be permitted to revisit coverage determinations for
  treatments *other* than the treatment that was denied, pointing to UBH's
  suggestions earlier in the case that reprocessing might result in a *reduction*
  of a class member's benefits. *Id*. at 15, 17.  In particular, Plaintiffs ask the
  Court to prohibit UBH from: 1) re-opening or reversing any prior
  authorization of benefits to a class member; 2) deducting or offsetting
  benefits previously paid in connection with other requests for benefits from
  any amounts owed to a class member after remand; or 3) recouping from any
  class member any amounts paid to the class member after remand, including
  withholding or reducing benefits authorized in connection with any
  subsequent claim for coverage.  *Id.* at 17.

- **No denial based on limitations or exclusions that were not listed in
  original denial letter.**  Plaintiffs also assert that UBH should not be allowed
  to deny coverage on grounds other than the ones listed in the denial letter.
  Plaintiffs point to the rule that "a court will not allow an ERISA plan
  administrator to assert a reason for denial of benefits [in litigation] that it had
  not given  during the administrative process" to protect claimants from being
  "sandbagged" after litigation has begun. *Id.* at 15-16 (quoting *Harlick v. Blue
  Shield of California*, 686 F.3d 699, 719–20 (9th Cir. 2012)).  Plaintiffs also
  point out that UBH was required to list the reasons for the denial in its denial
  letter; thus, "[i]f UBH failed to assert some non-clinical rationale the first
  time around, in effect it represented to the class members that there were no
  such bases to deny coverage." *Id.* at 16.  Plaintiffs contend it would be unfair
  to invoke exclusions or limitations that it did not raise the first time around.

23   *Id.*  In sum, Plaintiffs contend that upon remand, UBH should be "limited to the question of

24   whether the services for which coverage was requested, at the requested level of care, were

25   consistent with generally accepted standards of care."  *Id.*

26        **Procedures following claim adjudication**. Plaintiffs ask the Court to order that UBH

27   provide detailed findings with its reprocessing decisions, including identifying the specific

28   provisions of the Court-approved criteria it relies on and what specific clinical evidence supports

its application of the criteria to the medical record. *Id*. at 17. Plaintiffs also ask the Court to order that UBH provide any class member whose claims are denied on reprocessing with instructions on how to pursue an external appeal and to include a copy of the FFCL and remedies order in the administrative record that is provided to the external reviewer for that class member. *Id*. at 18. In addition, Plaintiffs contend class members should be permitted to appeal an adverse benefits determination on reprocessing under the usual procedures set forth in ERISA and their plans by bringing a new ERISA lawsuit and that the notice that UBH sends to class members should contain clear instructions for doing so. *Id*. (citing 29 C.F.R. § 2560.503-1(j), which specifies the "manner and content of notification of benefit determination on review.").

If a class member's claim is approved after reprocessing, Plaintiffs assert that UBH should then be required to calculate and pay the benefits to which the class member was entitled, plus pre- and post-judgment interest. *Id*. Plaintiffs assert that "UBH's calculation of benefits should include all of the services the class member received at the requested level of care, regardless of whether the class member submitted a post-service claim after UBH denied coverage." They reiterate that in calculating benefits, UBH "should not be permitted to offset any amounts the class member was previously paid for services at other levels of care or other forms of treatment." *Id.*

**Interest.** Plaintiffs contend class members should be awarded pre- and post- judgment interest on any benefits payments awarded as a result of reprocessing. *Id*. (citing *Nelson v. EG&G Energy Measurement Grp., Inc.*, 37 F.3d 1384, 1391 (9th Cir. 1994)); *see also* Plaintiffs' Post-Hearing Revised Proposed Remedies Order, § III.E. ("UBH shall pay interest ('Interest') on all amounts it is required to pay pursuant to this Order, calculated at the rate provided pursuant to 28 U.S.C. § 1961 (the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment, compounded annually) from the date on which the Remanded [Adverse Benefit Determination] was issued until the date on which payment is made to the class member or provider pursuant to an assignment or direction to pay."). In support of this request, Plaintiffs cite cases holding that it is in the discretion of the trial court to award prejudgment interest and that there is a presumption in favor of awarding it, including in ERISA cases. Motion at 19 (citing

*Anthuis v. Colt Indus. Operating Corp*., 971 F.2d 999, 1009 (3d Cir. 1992) ("While it is true that Congress did not mandate prejudgment interest payments for other than delinquent contributions, we have held generally that '[i]n the absence of an explicit congressional directive, the awarding of prejudgment interest under federal law is committed to the trial court's broad discretion.'") (quoting *Ambromovage v. United Mine Workers*, 726 F.2d 972, 981–82 (3d Cir. 1984)); *Rivera v. Benefit Tr. Life Ins. Co*., 921 F.2d 692, 696 (7th Cir. 1991) ("The Supreme Court has held that "[p]rejudgment interest is an element of complete compensation.") (quoting *West Virginia v. United States*, 479 U.S. 305, 310–11 (1987));  *Fotta v. Trustees of United Mine Workers of Am., Health & Ret. Fund of 1974*, 165 F.3d 209, 212 (3d Cir. 1998) ("we have previously recognized that a beneficiary may seek prejudgment interest in a suit to recover benefits due, notwithstanding the lack of an express directive from Congress to that effect.")).  Plaintiffs contend the interest awarded to class members who prevail on their claims should be calculated under 28 U.S.C. § 1961. *Id*.

     **Certification and Reporting**.   Plaintiffs ask the Court to order that after UBH has reprocessed all of the class members' claims, it must report to the Court: 1) the total number of requests for coverage, by level of care, that were reprocessed; 2) the number of class members, by level of care, whose requests were denied on remand; 3) the number of class members, by level of care, whose benefit determinations were reversed in whole or in part; and 4) the number of class members who received a benefit payment as the result of reprocessing, including lowest, highest, median and average amounts of payments by level of care. *Id.* at 19-20.

     **Interim and Final Deadlines**.  Plaintiffs ask the Court to set deadlines for training UBH personnel and consultants with respect to their fiduciary duties and the Court-approved criteria to be used for reprocessing, which they anticipate can be completed while the class notice is being prepared. *Id*. at 20. They also ask the Court to set deadlines for reprocessing, proposing that the reprocessing of denied claims should be completed within 30 days of: 1) the date on which the class member provided supplemental information; or 2) the deadline for submitting additional materials. *Id*.  They assert that this timeframe is consistent with ERISA regulations. *Id*. (citing

16

29 C.F.R. § 2560.503-1(f)(2)(iii)(B).[5]  Plaintiffs envision that these deadlines could be modified

by the special master if good cause is shown.  *Id.* n. 21.  Plaintiffs also ask the Court to set a

deadline by which all reprocessing would be completed and suggest a period of nine months from

the time the Court enters its remedies order.  *Id.*   In addition, Plaintiffs ask the Court to set interim

deadlines for UBH and/or the special master to report to the Court on the progress of the

reprocessing, as well a deadline for a final report and certification that the reprocessing remedy

has been completed.  *Id.*

### 2.  Opposition

UBH argues that Plaintiffs have not established that the reprocessing remedy would benefit

every member of the certified class and therefore such relief should not be awarded.  Opposition at

10-11 (citing *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 365 (2011)).  In particular, it points

out that the Court did not find that *all* of the criteria in the Common Criteria of the Guidelines

were flawed and contends Plaintiffs have not established that each of the class members' denials

was based on the specific criteria that the Court *did* find were flawed.  As a result, UBH asserts,

classwide injunctive relief requiring reprocessing is improper because not all class members are

entitled to that remedy and awarding that remedy will violate the Rules Enabling Act.  *Id*. at 13

(citing *Dukes*, 564 U.S. at 367).

UBH offers two examples of Claim Sample members whose denials it contends were

based on reasons other than the flaws in UBH's Guidelines identified by the Court.  *Id.* (citing

---

[5] This regulation states as follows:

> Post-service claims. In the case of a post-service claim, the plan administrator shall notify
> the claimant, in accordance with paragraph (g) of this section, of the plan's adverse benefit
> determination within a reasonable period of time, but not later than 30 days after receipt of
> the claim. This period may be extended one time by the plan for up to 15 days, provided that
> the plan administrator both determines that such an extension is necessary due to matters
> beyond the control of the plan and notifies the claimant, prior to the expiration of the initial
> 30–day period, of the circumstances requiring the extension of time and the date by which
> the plan expects to render a decision. If such an extension is necessary due to a failure of the
> claimant to submit the information necessary to decide the claim, the notice of extension
> shall specifically describe the required information, and the claimant shall be afforded at
> least 45 days from receipt of the notice within which to provide the specified information.

29 C.F.R. § 2560.503-1(f)(2)(iii)(B).

1    Trial Ex. 2018-004 (Claim Sample Member 6254 Denial Letter); Trial Ex. 1383-002 (Claim

2    Sample Member 9836 Denial Letter)).  UBH argues that the unavailability of classwide

3    reprocessing as a remedy is "a direct and natural consequence of Plaintiffs' strategic choices" as

4    they "decided to discard any individual requests for benefits and instead to seek what amounts to

5    67,000 mandatory injunctions to individually reprocess benefit decisions."  *Id*. at 14.

6        Even if the Court awards a reprocessing remedy, UBH argues it should be more limited in

7    scope than what Plaintiffs seek.  *Id*. at 15.  In particular, UBH asserts that reprocessing should

8    proceed only as to class members who confirm that:  1) they received the same treatment with the

9    same provider at the same level of care that was the subject of the benefit decision at issue; 2) they

10   were billed for those services; 3) they did not assign their rights to benefits to any other party; 4)

11   they did not already receive benefits for the same service from other insurance; and 5) they  did

12   not receive benefits for the same service through an administrative appeal or separate litigation.

13   *Id*. at 16.

14       UBH argues further that to the extent it is permitted at all, reprocessing is a remedy that is

15   authorized under § 1132(a)(1)(B) and is based on the "foundational principal" that "where the

16   'Plan itself reposes discretion in the [benefits administrator] to determine' whether coverage is

17   available under the terms of the plan, ERISA requires that courts respect that discretion."  *Id*. at

18   16-17 (quoting *Saffle*, 85 F.3d at 460).  Under that principal, UBH argues, reprocessing "cannot be

19   used to reform class members' plans and cannot impose obligations to pay or process benefits that

20   are inconsistent with the terms of the class members' plans as written."  *Id*. at 17 (citing *Wilson v.*

21   *Cox*, No. 3:15-CV-00059-SI, 2015 WL 6123776, at *3 (D. Or. Oct. 16, 2015) ("The Ninth Circuit

22   has emphasized that a recovery of benefits claim pursuant to Section 1132(a)(1)(B) can only be

23   successful if recovering the benefits is consistent with the terms of the plan."); *Wright v. Oregon*

24   *Metallurgical Corp*., 360 F.3d 1090, 1100 (9th Cir. 2004) ("ERISA requires fiduciaries to comply

25   with a plan as written unless it is inconsistent with ERISA. 'ERISA does no more than protect the

26   benefits which are due to an employee under a plan.'") (quoting *Bennett v. Conrail Matched Sav.*

27   *Plan Admin. Comm*., 168 F.3d 671, 677 (3d Cir. 1999))).  Nor does ERISA authorize reprocessing

28   under § 1132(a)(3), UBH asserts.  *Id*. at 16 (citing *Chorosevic v. MetLife Choices*, No. 4:05-CV-

United States District Court
Northern District of California

2394 CAS, 2009 WL 723357, at *11 (E.D. Mo. Mar. 17, 2009), aff'd, 600 F.3d 934 (8th Cir. 2010); *Craft v. Health Care Serv. Corp*., No. 14 C 5853, 2016 WL 1270433, at *6 (N.D. Ill. Mar. 31, 2016); *Fairview Health Servs. v. Ellerbe Becket Co. Employee Med. Plan*, No. CIV.06-2585(MJDAJB), 2007 WL 978089, at *6 (D. Minn. Mar. 28, 2007)).

UBH also argues that because the reprocessing remedy is based on UBH's discretion in administering class members' plans, Plaintiffs cannot "dictate the method and outcome of reprocessing." *Id*. at 19.  UBH stipulates that it does not object to using the most up-to-date versions of ASAM, CASII and LOCUS in reprocessing the class members' claims, "including to determine benefits at ASAM levels 3.1 through 3.5 to the extent those levels of care are covered under the terms of the class members' plans." *Id*. at 19.  However, it objects to many other aspects of the reprocessing remedy proposed by Plaintiffs.

First, UBH challenges Plaintiffs' assertion that all of the approximately 67,000 requests for benefits of the class members should be remanded for reprocessing; instead, it argues that reprocessing should be conducted only for class members who have the potential to benefit from reprocessing, that is, those who actually received the treatment that they requested.  *Id*. at 20.  Thus, even a class member who received treatment at a lower level of care when their request was denied cannot be awarded benefits upon reprocessing and is not eligible for that remedy, UBH contends.  *Id*. at 21 (citing *Durham v. Health Net*, No. C-94-3575 MHP, 1995 WL 429252, at *3 (N.D. Cal. June 22, 1995), aff'd, 108 F.3d 337 (9th Cir. 1997); *Hamann v. Indep. Blue Cross*, 543 F. App'x 355, 357 (5th Cir. 2013)).

UBH argues further that only those who timely submitted a claim for payment *after* receiving the requested treatment are eligible for reprocessing.  *Id*. at 21.  According to UBH, this is because under their plans, class members would have had a right to payment for services they received only if they submitted a timely claim for benefits.  *Id*. at 22 (citing Trial Ex. 1550-0074; Trial Ex. 1539-0035).  It argues that *A.F. v. Providence Health Plan*, 157 F. Supp. 3d 899, 910 (D. Or. 2016) is directly on point because in that case, the court found that a beneficiary was not entitled to reimbursement for services that were actually received because a timely claim had not been submitted and § 1132(a)(1)(B) does not allow for an award of benefits that is not consistent

United States District Court
Northern District of California

1    with the terms of the plan.  *Id.* at 22-23.

2          Next, UBH argues that because Plaintiffs did not submit evidence at trial of the "basic

3    facts entitling each class member to reprocessing," that is, that they received treatment and

4    incurred expenses for it, the reprocessing order should require that class members affirmatively

5    request reprocessing and provide the information necessary to determine if the class member

6    qualifies for reprocessing.  *Id.* at 24- 25 (citing *Marcus v. Bowen*, No. 85 C 453, 1989 WL 39709,

7    at *1 (N.D. Ill. Apr. 18, 1989)).   According to UBH, this information is not contained in the

8    coverage database that was used to create Trial Exhibit 255, and only some of it can be found in

9    separate claims databases maintained by UBH.  *Id.* at 24 n. 16; *see generally* Declaration of

10   Heather Bowden in Support of United Behavioral Health's Response to Plaintiffs' Remedies Brief

11   ("Bowden Decl.") (describing databases and systems used by UBH for processing claims

12   payment).  UBH contends this process can be accomplished using a "simple form" and that it will

13   not impose an excessive burden on the class.  *Id.* at 25-26 (citing *Potter v. Blue Cross Blue Shield*

14   *of Michigan*, No. 10-CV-14981, 2013 WL 12183410, at *2 (E.D. Mich. Nov. 4, 2013)).  UBH

15   asserts that a notice and confirmation process also addresses privacy concerns that would arise if it

16   were to reprocess all class members' denied claims even without being asked to do so.  *Id*. at 26.

17   Among other things, UBH notes that with no confirmation process, it would be sending highly

18   personal information to class members' last known addresses.  *Id.*

19         UBH also argues that class members who obtained the benefits they requested as the result

20   of an appeal must be excluded from the reprocessing remedy.  *Id*. at 27-28.  Similarly, it contends

21   the Texas class members should be denied reprocessing, again arguing that the class list includes

22   class members whose claims were "correctly adjudicated under Texas law using the TDI Criteria."

23   *Id*. at 28.  UBH also challenges the language in Plaintiffs' proposed remedies order requiring

24   reprocessing of "each and every adverse benefit determination listed on the Class List admitted at

25   trial as Trial Exhibit 255" on the ground that that list includes individuals whose requests for

26   benefits were correctly adjudicated under Texas law using the TDI Criteria.  *Id.*

27         UBH challenges Plaintiffs' assertion that class members should be permitted to supplement

28   the record, arguing that the proper remedy when a case is remanded for reprocessing is to limit the

1    record to the medical evidence previously submitted.  *Id*. at 29 (citing *Duarte v. Aetna Life Ins.*

2    *Co*., 2014 WL 1672855, at *10).  UBH argues that Plaintiffs "do not cite evidence of a single

3    instance where a class member's administrative record is not sufficiently complete to adequately

4    determine the member's eligibility for benefits under their plan."  *Id*.  It also asserts that the cases

5    on which Plaintiffs rely allowed for additional evidence to be submitted only after an

6    individualized determination that there were gaps in the record – something that the Court here has

7    not found on a classwide basis.  *Id*. at 30.

8         Further, if class members *are* permitted to supplement the record, UBH contends, the

9    procedures for doing so must be consistent with the class members' plans.  In particular, UBH

10   objects to Plaintiffs' request that the Court's remedies order impose an obligation on UBH to

11   make a good-faith effort to obtain the required information, noting that the class members' plans

12   generally require that UBH give notice of the need for additional information but that they place

13   the burden on the class member to obtain the information.  *Id*.  (citing Trial Ex. 231-0053

14   (Flanzraich Plan) (providing that claim will be denied if member does not provide additional

15   information within 45 days of UBH's request);  29 C.F.R. 2560.503-1(f)(2)(iii);  *Wilson*, 2015 WL

16   6123776, at * 3).

17        Finally, UBH argues that if class members are permitted to supplement the record, it must,

18   in turn, be allowed to reassess the requested services under the newly adopted guidelines and any

19   other applicable plan terms.  *Id*. at 31-32.  In other, words, UBH objects to Plaintiffs' proposal that

20   it should not be permitted to assert new grounds for denying coverage that it did not assert when it

21   originally denied the class members' claims.  *Id*. at 31.  According to UBH, Plaintiffs' reliance on

22   *Harlick*, 686 F.3d 699 (9th Cir. 2012) is misplaced as that case did not involve a remand to the

23   plan administrator;  rather, it prohibited the plan administrator from asserting new grounds for a

24   denial in litigation where the court refused to remand the request for reprocessing.  *Id*.  UBH

25   argues that in light of Plaintiffs' assertion that class members should have full rights under ERISA

26   to challenge the reprocessing determination as a new decision, an order limiting the grounds upon

27   which it can decide the class members' claims improperly deprives it of the discretion to which it

28   is entitled.  *Id*.  In addition, UBH argues that as to some class members it denied benefits on

United States District Court
Northern District of California

1    multiple grounds and there is no reason why it should be barred from asserting grounds it already

2    relied upon and which were not challenged in reprocessing the class members' claims.  Further,

3    UBH argues that the Ninth Circuit recognizes an exception to *Harlick's* rule against raising new

4    grounds for the first time in litigation where the facts giving rise to a new decision rationale were

5    not previously known to the administrator.  *Id.* at 33 (citing *Spinedex Physical Therapy USA Inc.*

6    *v. United Healthcare of Arizona, Inc*., 770 F.3d 1282, 1297 (9th Cir. 2014)).  If the reasoning of

7    *Harlick* is applied to the reprocessing remedy here and class members are permitted to introduce

8    new evidence, UBH argues that it should be permitted to assert denial rationales that it did not

9    previously raise under the *Spinedex* exception.  *Id.* (citing *Martinez v. Beverly Hills Hotel &*

10   *Bungalows Employee Benefit Tr. Employee Welfare Plan*, No. 209CV01222SVWPLA, 2015 WL

11   12843760, at *6 (C.D. Cal. Oct. 29, 2015)).

12         Next, UBH rejects Plaintiffs' assertion that class members who prevail on reprocessing are

13   entitled to an award of pre- and post-judgment interest.  *Id.* at 33-35.  UBH contends this remedy

14   is not available to Plaintiffs because they made the "strategic choice to abandon the pursuit of

15   monetary recovery in favor of a classwide reprocessing remedy."  *Id*. at 33-34.  According to

16   UBH, any obligation on its part to pay interest to individual plan members is governed by the

17   individual members' plan terms.  *Id*. at 34-35 (citing Trial Ex. 1542-0077; Trial Ex. 1539-0036).[6]

18         With respect to setting deadlines, UBH argues that the Court should wait to set

19   reprocessing deadlines until UBH's adoption of new Guidelines has been fully implemented and

20   the number of class members entitled to reprocessing is determined.  *Id.* at 35-38.  UBH states that

21   it has "recently approved the adoption of the LOCUS and CALOCUS Criteria for determining

22   mental health benefits, and is currently considering approving the adoption of the CASII Criteria,

23   [but that it] will be required to submit those changes to regulators in as many as 25 states."  *Id*.

24   (citing Decl. of Kristen C. Clark ¶ 3).  UBH also argues that the 30-day timeline proposed by

25

26   ───────────────────

27   [6] Trial Exhibit 1539-0036 is a class-member plan that includes an exclusion for "interest or late fees charged due to untimely payment for services." Trial Exhibit 1542-0077 is another class-member plan and affirmatively provides that "[r]equests for payment that include all required information which are not paid within [specified time frames] will include an overdue payment  of simple interest at the rate of 12% per annum."

28

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

Plaintiffs for completing benefit determinations is unrealistic as the benefit determination is a fact-intensive process and in order to meet this deadline UBH would "require 280 peer reviewers working full-time, seven days per week for 30 days." *Id*. at 36-37. UBH also argues that the Department of Labor requirement that claims be processed in thirty days, 29 C.F.R. § 2560.503-1(f)(2)(iii)(B), does not apply to a court order remanding for reprocessing. *Id*. at 37.

### 3. Reply

In their Reply brief, Plaintiffs reject UBH's arguments that the Court does not have the authority under ERISA to award the remedies Plaintiffs seek because those remedies "intrude on the administrator's unfettered 'right' to exercise discretion, and cannot be used in combination." Reply at 2 (citing Opposition at 8-10, 39-41). To the contrary, they assert, the case law, including *Varity* and *Amara*, makes clear that the remedies available for breach of fiduciary duty under § 1132(a)(1)(B) are "expansive" and that even if the remedies they seek are not available under that provision, they can be awarded under § 1132(a)(3), which provides a "safety net" that authorizes equitable relief that is not available under § 1132(a)(1)(B). *Id.* at 2-10.

Plaintiffs next argue that most of UBH's Opposition is devoted to trying to "pick off" subsets of the classes and that this approach is an improper attempt to challenge the Court's certification of the classes and its findings of liability as to the classes as a whole. *Id.* at 10-11. According to Plaintiffs, the underlying premise of UBH's arguments is that "only class members who were *actually owed* benefits suffered any injury from UBH's misconduct, have any claim under ERISA, or could 'conceivably benefit from reprocessing.'" *Id.* at 11-12 (quoting Opposition at 4, 20, 35 n. 26) (emphasis in original). Plaintiffs contend this "misguided focus" leads UBH to argue that only remedies that lead to payment of benefits can constitute "actual relief" but that the Court has consistently rejected this approach to Plaintiffs' claims and should do so again. *Id.* Plaintiffs contend that their claims are not just about "accidental failure to pay benefits" or "innocent misapplication of an appropriate standard" but instead, are based on UBH's affirmative misconduct, which injured all class members in the same way. *Id*. at 12-13.

As to UBH's argument that reprocessing would not benefit every member of the classes because some denials may have been based on criteria that the Court found were not flawed,

United States District Court
Northern District of California

1    Plaintiffs contend this is an improper attack on the Court's liability findings.  *Id.* at 13.   Plaintiffs

2    argue further that UBH is incorrect for the same reasons Plaintiffs set forth in their opposition to

3    UBH's motion to decertify.  *Id.* at 13-17.  Plaintiffs also oppose UBH's argument that class

4    members whose denials were overturned at the administrative appeals level are not entitled to

5    reprocessing, arguing that these class members are "still entitled to know the truth about their

6    claims after faithful application of criteria that comply with their plans."  *Id.* at 18-19.  Plaintiffs

7    also argue that the Texas members of the Wit State Mandate Class are entitled to reprocessing,

8    rejecting UBH's argument that these individuals should be excluded from the class for many of

9    the reasons also set forth in Plaintiffs' Opposition to UBH's decertification motion.  *Id.* at 20-21.

10    Plaintiffs contend UBH is also incorrect in its assertion that class members who did not

11    receive the services for which UBH denied coverage are not entitled to reprocessing.  *Id.* at 21-25.

12    According to Plaintiffs, UBH cites no authority for this proposition "which, in effect, reduces the

13    reprocessing remedy to a proxy for benefits."  *Id.* at 21-22.  The argument is wrong, Plaintiffs

14    contend, because it "misconstrues the full scope of the injury Plaintiffs seek to redress through

15    reprocessing[,]" which was the same for every class member; namely, "developing Guidelines that

16    restricted the scope of available coverage under their plans and denying coverage pursuant to those

17    pervasively flawed, self-serving criteria."  *Id.* at 22.   Plaintiffs contend the appropriate remedy for

18    that injury under *Saffle* is to remand for the application of the correct standards to the clinical facts

19    for all class members.  *Id.*

20    Plaintiffs reject UBH's assertion that class members who did not receive treatment (and

21    therefore will not be eligible for reimbursement) will not benefit from reprocessing.  *Id.* at 23.

22    First, Plaintiffs contend, class members will receive "the truth" about what their plans actually

23    cover and if the treatment they requested was clinically appropriate and should have been covered.

24    *Id.*   According to Plaintiffs, class members "can use that information in a number of ways that are

25    consistent with ERISA's purpose – whether to support a complaint to a regulator or legislator; to

26    pursue a new legal action against UBH or the class member's employer or plan to obtain different,

27    individualized relief; to convince their employer to change administrators; or even just to have

28    closure and peace of mind."  *Id.*  Further, Plaintiffs assert, it is not just the class members who

need this information.  *Id*. at 24.  Plaintiffs contend UBH conceded at trial that decisions about coverage "should turn, at least in part, on a patient's prior treatment and coverage history."  *Id*. (citations to Trial Transcript omitted).   Plaintiffs argue that "[r]ight now, none of the class members' records are either accurate *or* complete, because the adverse determinations they reflect were based on the wrong standard."  *Id*. (emphasis in original).  According to Plaintiffs, "UBH's open disdain for all of the non-monetary reasons why reprocessing is important relief for all class members demonstrates that UBH still does not understand its role as a fiduciary."  *Id*. at 25.

Next, Plaintiffs argue that the Court should reject UBH's "backdoor decertification arguments related to ascertainability" based on the fact that UBH's records of claims for payment are stored in a different database than the one that was used to create the class list.  *Id*. at 25.  The "minimum facts" UBH says must be obtained from class members through a claims process are not required, Plaintiffs contend, because none of them are prerequisites to reprocessing.  *Id*. at 26.  Plaintiffs also argue that UBH waived this argument by failing to include it in its decertification motion, and that the Bowden Declaration submitted in support of UBH's request for a claims process is improper because the trial record is closed.  *Id*.  In any event, Plaintiffs assert, the Bowden Declaration only indicates that to the extent any of the facts UBH points to are necessary to determine if an individual is eligible for reprocessing, "pulling together that information would require some 'manual work' on UBH's part[.]"  *Id*.

Plaintiffs also reject UBH's argument that "some class members may lack capacity to sue because they may have assigned some or all of their ERISA rights to their providers."  *Id*. at 27.  According to Plaintiffs, this argument goes to whether the classes should have been certified and therefore has been waived as a result of UBH's failure to raise it in opposition to Plaintiffs' motion for class certification or in UBH's more recent motion to decertify.  *Id*.  Furthermore, Plaintiffs assert, while it is common for providers to ask patients to sign a document that entitles the provider to direct payment from an insurer, there is no evidence in the record that any class member "formally assigned any of the ERISA rights at issue here or gave up their own right to sue UBH for violating its fiduciary duties."  *Id*.   In addition, Plaintiffs contend, even if some class members assigned their rights to challenge the denials at issue in this case, "those assignments at

25

most might affect who has a right to collect benefit payments, not whether the claims should be reprocessed." *Id.*   To the extent there is such an assignment, UBH "is free to send any . . . benefits [resulting from reprocessing] to a provider holding an assignment." *Id.* at 28.

Plaintiffs contend the Court should reject UBH's argument that the Court may not dictate the standards it uses to determine medical necessity because doing so would "usurp" UBH's role as the plan administrator. *Id.* at 32 (citing Opposition at 39-41). According to Plaintiffs, the Court has already found that UBH abused its discretion in interpreting plan terms and therefore UBH is not entitled to a "second bite at the apple." *Id.* UBH's reliance on *Conkright v. Frommert*, 559 U.S. 506 (2010) is misplaced, Plaintiffs assert. *Id.* at 33. In that case, Plaintiffs contend, the administrator was found to have made a "single honest mistake" in interpreting a plan term that had multiple reasonable interpretations. *Id.* (citing 559 U.S. at 518). The Court observed, however, that it might have been appropriate to limit the administrator's discretion if there had been multiple erroneous interpretations by the administrator, even if made in good faith, as that would have shown that the plan administrator was "too incompetent to exercise his discretion fairly." *Id.* (citing 559 U.S. at 521). The facts here are "infinitely more egregious" than those of *Conkright*, Plaintiffs contend, warranting a remedy that deprives UBH of the discretion to which it otherwise would have been entitled. *Id.* at 33-35.

With respect to UBH's argument that it should not be prohibited from asserting new grounds for denying coverage, Plaintiffs argue that because ERISA and UBH's policies required it to list *all* of the reasons for denying coverage in the initial denial letter, if it failed to list other reasons for the denial it necessarily already decided that the exclusion did not apply. *Id.* at 36-37. While this omission might constitute a breach of duty to the plans, Plaintiffs assert, this is something the plans can sue UBH for. *Id.* at 37. Plaintiffs contend "there is no reason for the Court to help UBH avoid the liability it may have to the plans if reprocessing leads to some *other* fiduciary breach being exposed." *Id.* Moreover, they argue, *Harlick* shows that even if an administrator made a mistake about whether a person was entitled to coverage, the plan can still be ordered to pay benefits if the administrator waived the argument by failing to raise it during the administrative appeals. *Id.* They also assert that UBH's reliance on *Martinez v. Beverly Hills*

26

*Hotel & Bungalows Employee Benefit Tr. Employee Welfare Plan*, 2015 WL 12843760 (C.D. Cal. Oct. 29, 2015) is misplaced as that case only held that where coverage is approved, the plan's terms and conditions still apply. *Id*. at 38.

Plaintiffs stipulate that they do not object to UBH applying deductible and coinsurance requirements in accordance with class members' plans but contend these are the only limitations on coverage "that could conceivably become applicable only after a class member submits information about services obtained following a preservice denial." *Id*. n. 48.

Plaintiffs also argue that UBH has offered no evidence showing that supplemental information submitted by class members might justify the application of an exclusion or limitation UBH "previously decided not to apply." *Id*. at 38. And they reject UBH's assertion that it should be allowed to "re-open all of its other decisions, even if they were not at issue in this case[,]" on the basis that class members will be sufficiently protected by their right to pursue an appeal of the decision. *Id*. at 39. Plaintiffs clarify that they are not asking that all class members be afforded a right to an external appeal as part of the administrative appeal process despite language in their original proposed remedies order that might be read that way; rather, they ask only that class members whose plans afford the right to an external appeal be given one. *Id*. at 39 n. 49. They note that they have modified their proposed order to make it clearer on that point. *Id*.

Plaintiffs object strenuously to UBH's arguments that class members should be required to request reprocessing and to confirm that reprocessing will benefit them. *Id*. at 42-46. They contend UBH is improperly attempting to convert the classes to opt-in classes and ignoring the fact that the Court has already found liability with respect to *all* class members based on UBH's reliance on its faulty Guidelines to make coverage determinations. *Id*. at 42-44. They argue that there is no evidence that any class members' benefits were paid by some other insurance or that they assigned their claims to someone else. *Id*. at 43-44. As to the possibility of assignments, Plaintiffs contend this argument is untimely and moreover, to the extent class members' plans permit assignments, they require UBH's consent. *Id*. at 44. Therefore, Plaintiffs argue, if there was a valid assignment UBH has that information and can simply pay any benefits awarded on

reprocessing to the provider "as per UBH's usual procedures." *Id*.[7]  Plaintiffs also reject UBH's

assertion that requiring class members to submit claims would not be unduly burdensome,

pointing out that the percentage of class members who will receive relief will be dramatically less

if this requirement is imposed.  *Id*. at 45-46.

On the question of whether class members should be permitted to submit additional

evidence, Plaintiffs reject UBH's assertion that there is no evidence of gaps in class members'

records.  *Id*. at 46.  Plaintiffs assert that the opportunity to submit additional information is

required because the rules of decision under UBH's criteria "turned on a considerably narrower

range of facts than under generally accepted standards."  *Id*.  Plaintiffs contend the Guidelines

themselves provide circumstantial evidence that UBH reviewers "did not always collect or record

all of the facts needed to render a decision under different, generally accepted criteria."  *Id*.

Plaintiffs argue that *Duarte,* cited by UBH in support of limiting the record, actually supports

Plaintiffs' position because in that case the court remanded for reevaluation based on the "existing

record" but went on to require the administrator to provide detailed reasons for its decision based

on appropriate medical evidence, including "a more recent MRI, and any clinical test [the

administrator] deems appropriate."  *Id*. at 47 (citing 2014 WL 1672855, at *10).  Plaintiffs also

---

[7] After remedies briefing was complete, UBH filed a Request for Judicial Notice in Support of UBH's Response to Plaintiffs' Remedies Brief, Dkt. No. 440, in which it asked the Court to take judicial notice of the complaint in *Meridian Treatment Services v. United Behavioral Health*, Case No. 19-cv-5721.  In that case, the plaintiffs are residential treatment centers that seek to assert claims on behalf of individuals who may be class members in these related cases on the basis of assignments they allege were made to them by the class members.  UBH points to these allegations to show that there is a "need for claim-by-claim determination of who . . . may be entitled to relief under ERISA."  Plaintiffs oppose UBH's request on the grounds that: 1) allegations in a complaint are not judicially noticeable facts under Rule 201 of the Federal Rules of Evidence; 2) the request is procedurally improper because it is an attempt to file a surreply on remedies without seeking leave to do so; and 3) even if the Court takes judicial notice of the complaint, it is irrelevant because the plaintiffs in that case only seek payment for their services, which is not sufficient to assign a claim for breach of fiduciary duty under ERISA.  Plaintiffs' Opposition to UBH's Request for Judicial Notice at 2 (citing *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1293-1294 (9th Cir. 2014); *DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc*., 852 F.3d 868, 877 (9th Cir. 2017)).  The Court DENIES UBH's request.  The *Meridian* complaint merely contains allegations; it does not contain any facts of which the Court may take judicial notice.  To the extent UBH seeks to rely on the *Meridian* complaint to illustrate its arguments regarding the possibility that some class members assigned their claims to treatment providers, those arguments were sufficiently raised in its Opposition brief.

United States District Court
Northern District of California

1    reject UBH's assertion that it should not have to bear any of the burden of collecting additional

2    information, noting that UBH's Utilization Management Program Description requires Care

3    Advocates to "make at least two (2) attempts to gather needed information" before denying a

4    claim for lack of information. *Id*. at 48 (citing Trial Ex. 260-0013).

5           Plaintiffs also argue that class members should be permitted to submit evidence of services

6    they received after UBH denied their claims, even if they did not submit another claim after

7    receiving the services. *Id*. at 48. Plaintiffs argue that under these circumstances, the Court is

8    authorized to relieve class members of the claim requirement under § 1132(a)(3) as a form of

9    equitable relief even if § 1132(a)(1)(B) does not authorize such relief. *Id*. (citing *Mathews v.*

10   *Chevron Corp.*, 362 F.3d 1172, 1186 (9th Cir. 2004); *Gabriel v. Alaska Elec. Pension Fund*, 773

11   F.3d 945, 962 (9th Cir. 2014)). Plaintiffs contend the relief they seek is similar to the relief

12   awarded in *Mathews* and in *Varity* under § 1132(a)(3) as it will put the class members in the

13   position they would have been in if UBH had not wrongfully denied their pre-service requests for

14   benefits. *Id*. at 49-50. They further contend that even under § 1132(a)(1)(B), courts "regularly

15   waive timeliness requirements when appropriate based on the defendant's conduct[.]" *Id.* at 50

16   (citing *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 727 (9th Cir. 2000); *Des Roches v. California*

17   *Physicians' Serv.*, 320 F.R.D. 486, 505 (N.D. Cal. 2017); *Flom v. Holly Corp.*, 276 F. App'x 615,

18   617 (9th Cir. 2008); *Gorbacheva v. Abbott Labs. Extended Disability Plan*, 309 F. Supp. 3d 756,

19   763 (N.D. Cal. 2018), aff'd, No. 18-15400, 2019 WL 6716022 (9th Cir. Dec. 10, 2019); *Puccio v.*

20   *Standard Ins. Co.*, 80 F. Supp. 3d 1034, 1042 (N.D. Cal. 2015); *Magee v. Metro. Life Ins. Co.*, 632

21   F. Supp. 2d 308, 321 (S.D.N.Y. 2009); *Shannon v. Jack Eckerd Corp.*, 113 F.3d 208, 210 (11th

22   Cir. 1997)). Plaintiffs contend *A.F.*, cited by UBH, does not stand for the proposition that a plan

23   administrator may not adjudicate post-denial claims on remand under § 1132(a)(3) because the

24   court did not consider that question. *Id*. at 51 (citing 157 F. Supp. 3d at 910-912).

25          Plaintiffs also argue that pre- and post-judgment interest on any benefits paid as a result of

26   reprocessing should be awarded because it is "presumptively" available to victims of federal law

27   violations. *Id*. at 52 (citing *Rivera v. Benefit Tr. Life Ins. Co.*, 921 F.2d 692, 696 (7th Cir. 1991)).

28   This is true in the ERISA context, Plaintiffs contend. *Id*. at 53 (citing *Fotta v. Trustees of United*

*Mine Workers of Am., Health & Ret. Fund of 1974*, 165 F.3d 209, 212 (3d Cir. 1998)).  Plaintiffs further assert that UBH's argument that interest should not be awarded because Plaintiffs have not asked the Court to award benefits is a non-sequitur as class members' entitlement to pre- and post-judgment interest is based on "the time value of money."  *Id*. (quoting *Rivera*, 921 F.2d at 696).

Plaintiffs agree with UBH that their original proposed remedies order is overbroad to the extent that it requires reprocessing as to every individual listed in Trial Exhibit 255.  *Id*. at 53. While Plaintiffs reject UBH's arguments about the Texas members of the Wit State Mandate Class, they concede that UBH has "inadvertently" raised a valid point as UBH should be required to reprocess the denials of all class members regardless of whether they are listed on Exhibit 255. *Id*. at 53-54.  According to Plaintiffs, since the trial, "the parties have agreed that some class members' denials were inadvertently omitted."  *Id*. at 54.  Plaintiffs also concede that the list may contain a small number of individuals who do not belong on it (including the 170 administrative denials that were mistakenly included on the list, as stated in Trial Ex. 896).

Finally, Plaintiffs argue that UBH's complaints about being held to tight deadlines for reprocessing should be rejected because it was UBH's own breach of fiduciary duty owed to the class members that put it in this position.  *Id*. at 54-55.  In any event, they assert, the evidence does not support UBH's estimate as to how long reprocessing will take.  *Id*. at 55 (citing Trial Transcript at 1101) (testimony of Dr. Martorana that Peer Reviewers spend approximately 30 minutes on each medical necessity review and complete approximately eight reviews a day). Plaintiffs state that their request that the reviews be completed within thirty days was based on an ERISA claim regulation (29 C.F.R. § 2560.503-1(f)(2)(iii)(b)) but they do not object to allowing "a slightly longer overall timeframe" so long as UBH is required to "proceed diligently."  *Id*. Plaintiffs note that in their Amended Proposed Remedies Order they have proposed revisions to the reprocessing deadlines and they request that if the Court adopts only an aggregate deadline for completion of all reprocessing, that it require interim reporting so that Plaintiffs can take action if UBH is not proceeding in a timely manner.  *Id*. at 56.

### 4.  Supplemental Briefing

On March 24, 2020, the Court requested additional briefing on several topics, including: 1)

whether UBH should be allowed to deny benefits during reprocessing based on exclusions it did not invoke when it originally denied class members' claims; and 2)  whether the Court should award pre- and post-judgment interest on benefits that are found in reprocessing to have been wrongfully denied. *See* Dkt. No. 448. The parties' arguments in their supplemental briefs are summarized below.

a.   Exclusions UBH Should be Permitted to Invoke on Reprocessing

In its request for additional briefing, the Court asked the parties to specifically address "whether *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc*., 770 F.3d 1282, 1297 (9th Cir. 2014) suggests a middle ground [between the parties' positions] whereby UBH would be limited to denying benefits based on exclusions that were not originally invoked only where the basis for invoking the exclusion was not 'known or reasonably knowable.'" *Id*. The parties were in agreement that the Court's proposed middle ground would not be workable but that is where their agreement ended.

UBH argues in its opening supplemental brief that *Spinedex* does not apply to administrative remands, which are supposed to restore the parties to the status quo ante.  Dkt. No. 451 at 10 (citing *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 776 (7th Cir. 2003)). It cites cases it says stand for the proposition that it is improper to limit the remand to the original basis for the denial and that "sandbagging" on remand is not a problem because remand restarts the administrative process. *Id*. (citing *Miller v. Am. Airlines, Inc*., 632 F.3d 837, 856 (3d Cir. 2011) ("a remedy for a violation of ERISA § 503 is a remand to the plan administrator so as to provide the claimant with the benefit of a full and fair review of the claim"); *Hatfield v. Blue Cross & Blue Shield of Massachusetts, Inc*., 162 F. Supp. 3d 24, 43 (D. Mass. 2016) (holding that where there was a procedural violation by the administrator the proper remedy was to remand for further proceedings and finding that it would be inappropriate to limit the scope of the reprocessing remedy to medical necessity – even though the court had the power to do so – but also that the class members "must have a full opportunity to submit new information into the record, both on the medical necessity issues that were clumsily raised in the first instance and on the contractual limitations that could be raised upon remand");  *Vizcaino v. Microsoft Corp*., 120

United States District Court
Northern District of California

F.3d 1006, 1013 (9th Cir. 1997) ("[W]e have determined that we should not allow ourselves to be seduced into making a decision which belongs to the plan administrator in the first instance . . . We cannot, and will not, predict how the plan administrator, who has the primary duty of construction, will construe the terms of the [plan]."); *Miles v. Principal Life Ins. Co*., 720 F.3d 472, 490 (2d Cir. 2013) ("Our precedents make clear that even where we conclude a plan administrator's finding was arbitrary and capricious, we will typically not substitute our own judgment, but rather will return the claim for reconsideration . . . remand will afford [the plan administrator] the opportunity to consider the evidence under the appropriate legal standards and, if it wishes, to evaluate [the plaintiff]. We do not suggest that those are the only appropriate considerations on remand, and we intend no limitation by mentioning them. [The plan administrator] is expected to provide a full and fair reconsideration of [the plaintiff's] claim.")).

According to UBH, *Saffle* holds that the court should not usurp the role of the claims administrator and this Court recognized that principle in its class certification order. *Id*. at 11 (citing Dkt. No.174 at 27). UBH also points out that Plaintiffs argued in their opposition to UBH's motion for summary judgment that the effect of the reprocessing remedy is to set aside UBH's denials and remand "even though [UBH] (like a jury after a mistrial), might later, in the exercise of its lawful discretion, reach the same result for a different reason." *Id.* (quoting Dkt. No. 261 at 19). UBH argues that Plaintiffs are precluded from making a contrary argument now. Finally, UBH argues that limiting it to exclusions or reasons for denial that were not "known or knowable" at the time of the prior denial is also impractical because the remand may require UBH to assess particular conditions or treatment differently than it did before. It further asserts that implementation of such a rule would be burdensome as UBH administrators would have to go through the history of each claim denial to figure out what fell into this exception. *Id*. at 12-13.

In their response, Plaintiffs also reject the Court's proposed "known or knowable" approach but reach the opposite conclusion. According to Plaintiffs, it would be highly inequitable to allow UBH to provide new and previously unraised justifications for denials of benefits on remand. Dkt. No. 454-5 at 6. They cite cases holding that the court must uphold remedies that are most advantageous to the class and assert that the Court has the equitable power

32

to impose such limitations.  *Id.* at 7 (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) ("Equity eschews mechanical rules; it depends on flexibility.");  *Donovan v. Mazzola*, 716 F.2d 1226, 1235 (9th Cir. 1983) ("Courts also have a duty 'to enforce the remedy which is most advantageous to the participants and most conducive to effectuating the purposes of the trust.'"); *Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 132 (1st Cir. 2004) (finding that the "appropriate equitable relief" was to hold the administrator "to the basis that it articulated in its internal claims review process for denying benefits" and award benefits rather than remanding for reprocessing so that the plan administrator could "make the first determination as to the availability of benefits" even though "that remand may be appropriate in some, or even many, cases" and citing "countervailing concerns raised on the facts" of that case, including the fact that the plaintiff's medical condition was terminal and the controversy needed to be resolved "quickly.")).  Given the Court's findings about UBH's bad faith, Plaintiffs argue, limiting the scope of reprocessing is imperative.  *Id.* at 8-10.

Plaintiffs argue that UBH's reliance on *Hatfield* is misplaced to the extent that the court in that case recognized it had the power to limit the scope of review, even though it declined to do so in that case.  *Id.* at 10.  They also point to another case in which a judge remanded to the plan administrator but only allowed the administrator to consider certain limited issues and prohibited the administrator from considering medical necessity, saying it was not going to allow the administrator to play "benefits denial ping-pong."  *Id.* at 11 (quoting *L.P. by & through J.P. v. BCBSM, Inc.*, No. 18-CV-1241 (MJD/DTS), 2020 WL 981186, at *10 (D. Minn. Jan. 17, 2020), report and recommendation adopted, No. CV 18-1241 (MJD/DTS), 2020 WL 980171 (D. Minn. Feb. 28, 2020)).

Plaintiffs reject UBH's argument that the Court must return the class members to the *status quo ante* by vacating the previous administrative denials in their entirety and allowing UBH to start anew, including raising reasons for denial that it did not previously rely upon in its denial letters.  *Id.*  They argue that reliance on the *status quo ante* language in *Hackett* is misleading because that case involved a termination of benefits (rather than an initial eligibility determination) and actually found that no remand was necessary, instead awarding retroactive

33

reinstatement of the benefits the plaintiff should have been receiving during the pendency of the case because the *status quo ante* before the improper termination was that the plaintiff had been receiving benefits. *Id*. n. 3 (citing 315 F.3d at 773-777). According to Plaintiffs, the same analysis applies as to *Miller. Id.* (citing 632 F.3d at 856-857). They contend that the Court's job is to return each class member to "the position he or she would have attained but for the trustee's breach." *Id*. at 12 (quoting *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 958 (9th Cir. 2014)). Plaintiffs argue that this does not mean UBH has to be allowed to "backtrack" or get a "windfall." *Id*. Plaintiffs also object to UBH's suggestion that class members would receive a windfall if it is not allowed to deny claims on other grounds. *Id*. at 13. As in their remedies briefs, Plaintiffs argue that *Harlick v. Blue Shield of California*, 686 F.3d 699, 719–20 (9th Cir. 2012) makes clear that the Ninth Circuit is concerned about the administrator engaging in "sandbagging" and therefore doesn't allow the administrator to offer new reasons for a denial that were not listed in the denial letter. *Id.* That said, Plaintiffs recognize that UBH should be allowed to "take full stock of the administrative record to re-determine medical necessity," which was the basis for the original denials, and should also consider any additional evidence on that question that Plaintiffs wish to submit. *Id*. at 14 n. 5.

UBH argues in its reply, as it did in its previous remedies briefing, that *Harlick* is aimed at preventing "sandbagging" in litigation and does not have anything to do with what a claims administrator can consider on remand. Dkt. No. 460 at 9. According to UBH, under controlling Ninth Circuit precedent, "reprocessing effectively starts the administrative process anew by ordering the administrator 'to redo its evaluation and correctly apply the terms of the plan.'" *Id*. at 9-10 (citing *Alves v. Hewlett-Packard Comprehensive Welfare Benefits Plan*, 785 F. App'x 397, 398 (9th Cir. 2019); *Martinez v. Beverly Hills Hotel*, 695 F. Supp. 2d 1085, 1087 (C.D. Cal. 2010); *Pannebecker v. Liberty Life Assur. Co. of Bos.*, 542 F.3d 1213, 1221 (9th Cir. 2008); *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d at 460). UBH contends the cases upon which Plaintiffs rely all involve a request for direct payment of benefits from the court – a remedy Plaintiffs dropped in this case.

UBH argues that the rule of administrative law invoked by Plaintiffs in a footnote of their

brief – that agency action can be upheld only on the same basis as is articulated in the agency's order – is not applicable in this case because the remand here involves "new" agency action. *Id*. at 11. UBH cites to a recent Supreme Court decision involving the Deferred Action for Childhood Arrivals ("DACA") program in support of this argument. *Id.* (citing *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1908 (2020)).  In that case, the Court explained that judicial review of agency action is limited to the grounds invoked by the agency, and that if those grounds are inadequate the court must remand either for amplification of the reasons for the action or to allow the agency to take new action.  140 S.Ct. at 1909.  If the former route is taken (as it was in that case) the agency is limited to its original reasons to prevent *post hoc* rationalizations.  *Id*.  But in this case, the remand for reprocessing will be new action and will not be subject to that limitation, UBH contends.  Dkt. No.460 at 11.

UBH argues that the *L.P.* case is not on point because the plaintiff in that case sought an award of benefits and the court ordered a different sort of remand than is at issue here, in which the administrator would develop the record further but the court would ultimately determine whether the plaintiff was entitled to benefits.  *Id*. at 12.  According to UBH, that case is distinguishable because the court remanded in part to be sure that it did *not* award benefits that arguably were excluded under a different plan provision that the administrator had invoked as a basis for the denial.  *Id*.  UBH also argues that *Hatfield* is on point for the reasons set forth in its opening brief on this topic.

UBH further asserts that Plaintiffs' position ignores the duty of the plan administrator to conserve plan assets, which requires that the reprocessing remedy not result in payment of claims that are excluded under other provisions of class members' plans.  *Id.* at 13 (citing *Conkright v. Frommert,* 559 U.S. 506, 520 (2010);  *Bowman v. U.S. W., Inc*., No. CIV. 95-1923-FR, 1997 WL 118437, at *6 (D. Or. Mar. 10, 1997) ("Such an injunction would require the plan administrator of U.S. West to provide coverage to a person who is not eligible to be covered under the express terms of the Plan. There is no legal basis for the court to issue such an injunction.");  *Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996)).

United States District Court
Northern District of California

b. Pre- and Post-Judgment Interest

In its request for supplemental briefing, the Court asked the parties to address the following specific issues related to Plaintiffs' request that interested be awarded on wrongfully denied benefits: 1) whether an award of interest at a uniform rate under 28 U.S.C. § 1961 (which provides that post-judgment interest shall be calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [ ] the date of the judgment") is appropriate given that this may conflict with explicit provisions in some class members' plans (and that the rate provided for in some class members' plans may be higher than the rate sought by Plaintiffs); and  2)  whether it would be permissible or appropriate to award pre- and post-judgment interest at the rate set in the class members' plans, or if their plans are silent, at the uniform rate under 28 U.S.C. § 1961.  The Court also asked UBH to address whether it had found any class member plan that explicitly prohibits a court award of pre- or post-judgment interest on benefits that it has found were improperly denied.  *See* Dkt. No. 448.

In their opening supplemental brief, Plaintiffs contend the two plan provisions that UBH pointed to with respect to the availability of interest (in Trial Exs. 1539-0036 and 1542-0077) do not apply to the situation where UBH has been found to have wrongfully denied benefits.  Dkt. No. 452 at 6.  They further assert that UBH has not been able to point to any class member plan in which there is a provision that actually does address that question and therefore, the Court need not be concerned that awarding interest will conflict with the terms of class members' plans.  *Id*. They also assert that the rate applied under 28 U.S.C. § 1961 should be awarded because it is the standard rate.  *Id*. (citing *Blankenship v. Liberty Life Assur. Co. of Bos*., 486 F.3d 620, 627 (9th Cir. 2007)).

UBH counters in its Reply that if the Court awards interest on benefits paid on reprocessing, it will be converting the remedy to monetary relief and therefore decertification is required. Dkt. No. 457 at 11.  It points out that in *Blankenship*, interest was awarded on a money judgment, not in connection with a remand order.  It also argues that if it is required to pay interest on benefits awarded as a result of reprocessing it will need to conduct individualized inquiries as

United States District Court
Northern District of California

to the circumstances of each claim, making class certification inappropriate.  Even if such interest were available, UBH contends, the question of whether to award interest is based on a balancing of the equities and depends on particular circumstances.  *Id.* at 12 (citing *Landwehr v. DuPree*, 72 F.3d 726, 739 (9th Cir. 1995) ("Whether to award prejudgment interest to an ERISA plaintiff is 'a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities.'  . . .  Among the factors to be considered in determining whether prejudgment interest should be awarded is the presence or absence of 'bad faith or ill will.'")).  According to UBH, Plaintiffs have not proven on a classwide basis that an award of interest is supported by the equities.  *Id.* at 12.  For example, UBH notes, some class members did not pay charges out of pocket for the services they received, or assigned their claim to the service provider.  *Id.* According to UBH, an award of interest as to these individuals would amount to a windfall and therefore would be improper.  *Id.* (citing *Acosta v. Cty Nat'l Corp.*, 922 F.3d 880, 891 (9th Cir. 2019)).

Plaintiffs argue in their Reply that there is not substantial evidence showing that an award of interest conflicts with any class members' plans. Dkt. No. 459 at 12.  They reiterate that an award of interest is supported by equity and is the type of equitable remedy that is expressly permitted by ERISA.  *Id.* at 14 (citing 29 U.S.C. § 1132(a)(3);  *Lutheran Med. Ctr. of Omaha, Neb. v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan*, 25 F.3d 616, 623 (8th Cir. 1994), abrogated by *Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966 (8th Cir. 2002) ("An award of prejudgment interest is necessary to allow a prevailing ERISA beneficiary to obtain 'appropriate equitable relief.'");  *Fotta v. Trustees of United Mine Workers of Am., Health & Ret. Fund of 1974*, 165 F.3d 209, 213 (3d Cir. 1998);  *Short v. Cent. States, Se. & Sw. Areas Pension Fund*, 729 F.2d 567, 575 (8th Cir. 1984)).  Plaintiffs also reject UBH's assertion that the Court does not have the authority to award interest or that doing so will raise individualized issues that require decertification.  *Id.* at 15-17.

With respect to UBH's argument that individuals who may have assigned their rights to pursue remedies for wrongful denials of benefits will receive a windfall if interest is awarded, Plaintiffs contend this argument has been waived.  *Id.*  at 17.  In any event, they note, the Court

could avoid such a windfall by "specify[ing] in its remedies order that insofar as a class member has assigned his or her rights to remedies for wrongful denials, any payments made through reprocessing should be directed to the applicable provider(s)." *Id.*

### 5.  The September 2, 2020 Hearing and Post-Hearing Filings

At the hearing, the parties addressed the scope of the reprocessing remedy Plaintiffs seek, including: 1) whether UBH will be permitted to enforce terms of class members' plans governing the calculation of benefits to which class members are entitled if they are awarded benefits upon reprocessing; and 2) whether class members will be limited to seeking an award of benefits only for the services they actually applied for.  *See* Transcript of Proceedings, September 2, 2020 at 74-84.

On the first issue, Plaintiffs' counsel stipulated that while UBH should not be permitted to deny coverage based on an exclusion that was not listed in the denial letter, UBH's calculation of the amount owed to class members who are awarded benefits upon reprocessing will be governed by the terms of the class member's plan, including terms relating to copays, deductibles and in- and out-of-network coverage rates.  *Id.* at 79-83.  The Court requested that after the hearing Plaintiffs propose additional language to make this clearer in their proposed remedies order.

On the second issue, the Court engaged in the following colloquy with Plaintiffs' counsel:

> COURT:  If someone was denied a particular request for a level of care to which they were entitled – okay – and on reprocessing it – and then we go into reprocessing, it turns out they got something different than what they asked for, they went out and got something different, you're saying UBH does not have to reimburse for that?
>
> COUNSEL:  No, I don't – I don't believe so. I mean, I think the question is whether they –
>
> COURT:  "I don't believe so." What does that mean? You don't believe that UBH has to reimburse for anything other than the exact care that they should have approved?
>
> COUNSEL: Right.
> . . .
>
> COURT: But if they went out and got something that is different than what they applied for, they don't get reimbursed for that?
>
> COUNSEL: No. We haven't asked that they get that relief. I think this is about whether they get the relief that they originally requested – or

38

1

the benefits, excuse me, that they originally requested.

2

COURT: . . . at the end of the day you don't expect
UBH to pay for anything other than the level of care than what
was applied for?

3

4

COUNSEL:  Correct.

5

*Id.* at 76-77.

6

       After the hearing, Plaintiffs filed their Post-Hearing Revised Proposed Remedies Order,

7

Dkt. No. 476.  In it, Plaintiffs proposed language making clear that the reprocessing remedy would

8

require reimbursement only for services received at the same level of care as was requested in the

9

denied claim.  Plaintiffs also proposed more detailed language explaining that in calculating

10

benefits awarded as a result of reprocessing, UBH will apply the  class members' plan terms,

11

including terms governing copays, deductibles and coverage rates for in- and out-of network

12

providers.  Plaintiffs also added a subsection to the section governing criteria to be applied upon

13

remand reflecting the parties' agreement at the hearing that UBH will apply the most recent

14

edition of the Early Childhood Service Intensity Instrument ("ECSII") to re-evaluate requests for

15

coverage of treatment for class members who were ages 5 or under at the time of the relevant

16

treatment and had a primary diagnosis of a mental health condition.

17

       UBH filed a response to Plaintiffs' revised version of the proposed order in which it

18

preserved its argument that the Court should not award any reprocessing remedy but also proposed

19

alternative language for the remedies order consistent with its arguments in the briefs and at the

20

hearing that the remedy, if awarded, should be narrower in scope than what is proposed by

21

Plaintiffs.  *See* Dkt. No. 477.  On the same day, UBH filed the Administrative Motion.  In the

22

Administrative Motion, UBH contends it should be permitted to offer evidence showing that the

23

majority of class members will not be entitled to reimbursement as a result of reprocessing

24

because UBH's records show that most did not submit post-service claims to UBH reflecting that

25

they received the "exact" same services for which coverage was denied.  Administrative Motion at

26

2-3.  Based on this evidence, UBH contends the Court should deny Plaintiffs' request for

27

reprocessing or at least, "specify in its remedies order that UBH is not required to reconsider and

28

reprocess claims if, following the 90-day notice period, UBH's files lack evidence that the services

United States District Court
Northern District of California

United States District Court
Northern District of California

1    at issue were received at the same level of care from the same provider and during the same period

2    of time as the services that were originally requested and denied for coverage." *Id.* at 3.

3            Plaintiffs oppose the Administrative Motion, arguing that UBH has mischaracterized

4    counsel's statements at the hearing; according to Plaintiffs, counsel stipulated that they are seeking

5    reimbursement only for treatment obtained by class members at the same level of care as the

6    treatment for which they originally requested coverage but that they did *not* agree that the

7    treatment that the class member actually obtained had to be from the same provider in order to be

8    eligible for reimbursement.  Dkt. No.  487 at 2.   Nor would such a limitation be justified,

9    Plaintiffs assert, because "[t]he criteria at issue in this case, which this Court invalidated, focused

10   on characteristics of the patient and the level of care, not on the identity of the provider. If, after

11   reprocessing, UBH finds that services should have been authorized at the requested level of care,

12   and the class member obtained services at that level of care, UBH should cause benefits to be paid

13   for those services." *Id.*

14           Furthermore, Plaintiffs contend, UBH's request to supplement the record assumes that

15   class members who did not file post-service claims did not actually receive the treatment that was

16   denied and therefore, that the relatively low percentage of class members who filed such claims

17   shows that the reimbursement rate that will result from reprocessing will also be low.  *Id.* at 3.

18   According to Plaintiffs, UBH's assumption is incorrect because "a pre-service denial is highly

19   likely to deter a beneficiary from submitting post-service claims for treatment at the same level of

20   care." *Id.*  Plaintiffs point out that this dispute has already been briefed in connection with the

21   question of whether during reprocessing class members should be permitted to submit evidence of

22   the treatment they received even if they did not submit a post-service claim.  *Id.*

23           Finally, to the extent that UBH's argument is premised on the assumption that class

24   members who did not obtain treatment after their claim was denied are not entitled to

25   reprocessing, Plaintiffs strongly object.   Plaintiffs contend this amounts to an argument that "if

26   the patient was forced to forego medically necessary treatment, UBH should be allowed to get

27   away with its ERISA violations." *Id.* at 4.  Consistent with their arguments in earlier remedies

28   briefing, Plaintiffs contend class members are entitled to reprocessing even if they did not obtain

1   the treatment for which coverage was denied, explaining as follows:

2           Among other things, class members and UBH alike need the
3           members' insurance records properly to reflect what care was
            necessary. Without reprocessing, the class members' records will
4           remain distorted by including denials of care that, in fact, they needed,
            which could impact future coverage when UBH evaluates the
5           patient's clinical history and prior response to treatment. Moreover,
            class members who did not pay out-of-pocket for care may
6           nevertheless have individual claims for relief arising from UBH's
            improper denial of authorization for their medically necessary care,
7           such as disgorgement, surcharge, a return of premiums, or other
            equitable relief. They also may choose to use the information in
8           another way, such as to pressure their employers to change benefit
            administrators or to lobby their legislators. Each class member was
9           injured when UBH adopted its self-serving Guidelines and then used
            them to deny coverage, and each class member is entitled to be
10          returned to the state he or she would have been in without the breach.
            Accordingly, each class member is entitled to reprocessing.

11   *Id.*

12       **B.   Discussion**

13           **1.   The Administrative Motion**

14           As a preliminary matter, the Court DENIES UBH's Administrative Motion.  UBH's only

15   justification for requesting leave to submit additional evidence at this late date (and after two

16   rounds of briefing on remedies) is Plaintiffs' purported stipulation at the September 2, 2020

17   hearing that they are asking only for reimbursement of services at the same level of care and from

18   *the same provider* as those for which coverage was denied.  Plaintiffs did not, however, make such

19   a concession, agreeing only that class members were seeking reimbursement of treatment at the

20   same level of care as their denied claims for coverage.  Counsel's statements on this issue were

21   consistent with the position Plaintiffs took in all of their prior briefing on remedies and therefore

22   do not justify UBH's eleventh-hour attempt to supplement the record.

23           In any event, even if the Court were to consider this new evidence – and assuming that the

24   evidence UBH seeks to introduce shows what UBH says it does, namely, that only a small

25   percentage of class members submitted post-service claims to UBH for the exact same services

26   that had been denied – the Court rejects UBH's arguments in the Administrative Motion because

27   they are based on the assumptions that: 1) class members who did not submit post-service claims

28   will not be entitled to reimbursement even if it is found in reprocessing that their pre-service

41

claims were improperly denied; and 2) class members who did not obtain treatment after their claims for coverage were denied will not be entitled to have their claims reprocessed to determine whether the treatment should have been authorized.  As discussed below, the Court rejects both assumptions.

### 2. Whether Reprocessing is Available as a Remedy and Whether it is Governed by § 1132(a)(1)(B), § 1132(a)(3) or Both

Having found that UBH breached its fiduciary duty to Plaintiffs by applying Guidelines that were inconsistent with the terms of their plans, the appropriate remedy is to remand to UBH for reprocessing of their claims using proper criteria.  *Pannebecker v. Liberty Life Assur. Co. of Bos.*, 542 F.3d 1213, 1221 (9th Cir. 2008) ("Where an administrator's initial denial of benefits is premised on a failure to apply plan provisions properly, we remand to the administrator to apply the terms correctly in the first instance") (citing *Saffle*, 85 F.3d at 460-461).  Although the Court's authority is limited under § 1132(a)(1)(B) to awarding relief to enforce the terms of the class members' plans, if that relief does not adequately address their injury, the Court may also award equitable relief under § 1132(a)(3).  *See Amara,* 563 U.S. at 439-441;  *see also Moyle*, 823 F.3d at 962 ("Some of our pre-*Amara* cases held that litigants may not seek equitable remedies under § 1132(a)(3) if § 1132(a)(1)(B) provides adequate relief. . . .  However, those cases are now 'clearly irreconcilable' with *Amara* and are no longer binding.").  Thus, to the extent that the Court orders reprocessing, it does so based on its authority to enforce the class members' plans under § 1132(a)(1)(B) and, when specific aspects of the reprocessing remedy are unavailable under that section, based on its authority under § 1132(a)(3) to award relief traditionally available in equity.

The Court rejects UBH's assertion that reprocessing should be denied outright because Plaintiffs have not established on a classwide basis that they are entitled to reprocessing of their claims.  This is essentially the same argument UBH makes in support of decertification and which the Court rejects in its separate order addressing UBH's decertification motion. To the extent UBH now points to two denial letters (Trial Ex. 2018-004 (Claim Sample Member 6254 Denial Letter) and Trial Ex. 1383-002 (Claim Sample Member 9836 Denial Letter)) that it contends show that some denials were not based on the flaws identified by the Court in the FFCL and were, instead,

based solely on criteria in the Guidelines that the Court did not find were flawed, its argument is untimely as UBH did not raise this issue at trial or in its decertification motion. In any event, neither of the denial letters supports UBH's position because both cite Guidelines that the Court found to be flawed and the rationales that are offered in the letters are too general to establish that the coverage determinations were not tainted by the flaws in the cited Guidelines.

The Court also rejects UBH's argument that reprocessing is not available under § 1132(a)(3). UBH cites a handful of cases in support of this proposition but none of them holds as much. In *Chorosevic*, the plaintiffs asserted a claim for improper denial of benefits under § 1132(a)(1)(B) and a claim for equitable relief under § 1132(a)(3), asking the Court to award an injunction "to order defendants to reprocess plaintiff's claims to award" the amount of the benefits he claimed had been wrongfully denied. 2009 WL 723357, at *1. The court concluded that the request for reprocessing was "essentially a request for an injunction to enforce a contractual obligation to pay money past due" and therefore could not be awarded under § 1132(a)(3) because it was not truly equitable relief. *Id.* at *11 (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). Similarly, in *Fairview Health Servs. v. Ellerbe Becket Co. Employee Med. Plan,* an ERISA plaintiff asked for an injunction under § 1132(a)(3) requiring the plan to reprocess and pay benefits to which he claimed he was entitled. No. CIV.06-2585(MJDAJB), 2007 WL 978089, at *6 (D. Minn. Mar. 28, 2007). The court found that the equitable relief the plaintiff requested was "a claim for benefits expressed in equitable language" and therefore was not available under § 1132(a)(3) and *Great-West Life*. *Id.* at *7. Likewise, in *Craft v. Health Care Serv. Corp.*, the court found that the plaintiff's claim under § 1132(a)(3) seeking an injunction to reprocess the denied claim and award benefits was "a mere repackaging of" the plaintiff's claim for denied benefits under § 1132(a)(1). No. 14 C 5853, 2016 WL 1270433, at *6 (N.D. Ill. Mar. 31, 2016).

This case differs from the cases discussed above because the injunction Plaintiffs seek does not require UBH to reach a predetermined outcome with respect to the class members' claims and therefore is not simply a claim for benefits "expressed in equitable language." Rather, UBH will retain discretion to determine whether benefits are available under the terms of the class members'

plans when using criteria that are consistent with their plans.  Therefore, the Court rejects UBH's argument that reprocessing is not an available remedy under § 1132(a)(3).   The Court will require reprocessing of the class members' claims for coverage as further described below.  Because the reprocessing will involve some individualized inquiries by UBH, the Court awards this remedy under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

### 3.   Eligibility for Reprocessing Remedy and Whether Class Members Should be Required to Request Reprocessing through a Claims Process

UBH contends that if the Court orders reprocessing, it should also put in place a claims process requiring that class members submit a form requesting reprocessing and certifying that they are eligible for reprocessing.   The Court rejects UBH's arguments regarding eligibility and therefore finds that a claims process is unnecessary and excessively burdensome.

#### a.   The reprocessing remedy is not limited to class members who actually received the exact same services after UBH denied coverage

With respect to UBH's contention that class members must establish that they received the same treatment with the same provider at the same level of care that was the subject of the benefit decision at issue in order to be eligible for reprocessing, this argument appears to be based on cases that hold that § 1132(a)(1)(B) does not allow a plan member to receive reimbursement for services that they did not receive because such a remedy would amount to extra-contractual compensatory damages. *See, e.g., Durham v. Health Net*, No. C-94-3575 MHP, 1995 WL 429252, at *3 (N.D. Cal. June 22, 1995), aff'd, 108 F.3d 337 (9th Cir. 1997) ("the benefit referred to in this section of ERISA consists either of the accrued costs of the benefit or the benefit itself. . . . Because Durham did not obtain the treatment, she has not accrued recoverable costs.  Because she is no longer a candidate for the treatment, she cannot obtain the treatment as a form of relief."); *Hamann v. Indep. Blue Cross*, 543 F. App'x 355, 357 (5th Cir. 2013) ("While § 502(a)(1)(B) allows beneficiaries and plan participants to recover benefits to which they are entitled, it does not provide that beneficiaries can recover benefits they did not, and now cannot, receive.")  Yet Plaintiffs do not ask the Court to award the benefits UBH denied under § 1132(a)(1)(B) and § 1132(a)(3) contains no such limitation. Moreover, Plaintiffs do not run afoul of this rule with

United States District Court
Northern District of California

respect to their requested reprocessing remedy as they do not dispute that class members whose denials are overturned as a result of reprocessing will be entitled to reimbursement only for services they actually received.

Nor is the Court persuaded by UBH's argument that class members who went on to obtain the same treatment at the same level care but with a different provider should be deprived of the reprocessing remedy.  UBH has offered no principled reason for imposing such a limitation, which finds no legal basis in the theory of Plaintiffs' claims or the Court's liability findings and also is not supported by any equitable principle – especially as Plaintiffs have stipulated that class members' plan provisions governing in- and out-of-network coverage, copays and deductibles will apply to the calculation of benefits to which class members are entitled on reprocessing.

More broadly, the Court rejects UBH's argument that class members who were denied benefits under the Guidelines but did not subsequently obtain the treatment for which they had requested coverage are not entitled to have their claims reprocessed.  The harm that UBH caused by applying overly restrictive guidelines to make coverage determinations goes beyond the money spent by class members who could afford to obtain the treatment that UBH refused to cover. Rather, it was the unfair adjudication of claims that was experienced by *all* of the class members (and for some deprived them of much-needed treatment that should have been covered by their health plans). Conversely, the potential benefits of reprocessing to class members is not limited to monetary reimbursement for treatment that class members had to pay for themselves.  A fair determination of class members' claims will also allow them to correct the "record" so that they can, if appropriate, pursue other remedies.  A proper adjudication as to past requests for services will also benefit some class members who did not obtain the treatment for which they requested coverage because UBH takes into account past treatment and coverage decisions in making further coverage determinations, as UBH's witnesses conceded at trial.  Thus, a reversal of UBH's past denial as a result of reprocessing may help class members to obtain coverage for future treatment.

For these reasons the Court rejects UBH's argument that only those who obtained the exact same services after their request for coverage was denied should be awarded a reprocessing remedy.

1

2

     b.  The reprocessing remedy is not limited to class members who actually paid for the same services and did not assign their right to receive payment to the service providers or receive reimbursement from other insurance

3

       The Court also rejects UBH's arguments that the reprocessing remedy should exclude class

4

members who received the same treatment but did not incur the associated expense because they

5

assigned the right to seek payment for the services to the treatment provider or obtained coverage

6

of the treatment through other insurance.

7

       As a preliminary matter, UBH has pointed to no evidence in the record that any class

8

members formally assigned their ERISA rights, including their right to sue for a breach of

9

fiduciary duty, to any third party. Nor has UBH pointed to evidence that any class members who

10

went on to receive the same treatment received coverage of that treatment under a separate

11

insurance policy. Further, these challenges amount to a collateral attack on the Court's

12

certification of the classes and therefore could and should have been raised long ago. Even

13

assuming there is evidence to support UBH's contention that some class members obtained the

14

requested treatment without having to pay out-of-pocket for them (either as a result of an

15

assignment or because the treatment was covered by other insurance), UBH's arguments fail on

16

the merits. As discussed above, the injury experienced by *all* class members was UBH's unfair

17

adjudication of their claims and the reprocessing remedy redresses that injury, resulting in actual

18

benefits to class members that go beyond reimbursement for the cost of the services that some of

19

them obtained. Therefore, while assignments to service providers of the right to seek payment and

20

coverage by other insurance can and should be taken into account when determining the benefits

21

due and the proper recipient of benefits if reprocessing results in a reversal of an earlier denial of

22

coverage, class members' eligibility for reprocessing does not turn on these things.

23

       Therefore, the Court rejects UBH's request to establish a claims process as part of the

24

reprocessing remedy. [8]

25

_____

26

[8] The Court also is not convinced that the privacy concerns cited by UBH justify requiring that

27

class members affirmatively request that their claims be reprocessed in order to be afforded that remedy. UBH suggests that reprocessing will require it to mail sensitive medical information to the last known addresses of class members, raising the possibility that it will be disclosed to

28

strangers without the consent of class members. The Court is confident that safeguards can be put

United States District Court
Northern District of California

### 4. Whether Class Members Who Received Services After a Denial May Seek Reprocessing as to those Services if They Did not File a Timely Post-Service Claim

UBH argues that class members are barred from obtaining reimbursement for services that were obtained after a pre-service denial where the class members did not also submit a claim after receiving those services within the time period allowed under their plans.  This argument is premised on the principal that § 1132(a)(1)(B) does not allow for an award of benefits that is inconsistent with the terms of the class members' plans. Yet, as discussed above, Plaintiffs are also entitled to equitable relief under § 1132(a)(3) where the relief that is available under § 1132(a)(1)(B) is inadequate.  The Court concludes that that section authorizes the relief that Plaintiffs request here.

Plaintiffs ask UBH to modify plan records to deem claims for post-denial services to have been timely submitted, which is similar to the equitable remedy that was approved by the Ninth Circuit in *Mathews*, 362 F.3d at 1185-1187.  In that case, the district court ordered that plan records be modified as to plaintiffs who had retired based on misinformation promulgated by the plan about the availability of certain benefits.  *Id.* at 1186.  In particular, the plan was ordered to modify its records to reflect that these plaintiffs had been involuntarily discharged, which meant that they would be entitled to receive the benefits that were the subject of the misinformation.  *Id.* at 1185-1186.  The Ninth Circuit rejected the argument of the plan administrator that this was not equitable relief because it would result in the payment of benefits, reasoning that "an order to modify plan records is not an award of monetary damages" and finding further that the district court had "simply put[ ] [the plaintiffs] in the position they would have been had [the plan administrator] not breached its fiduciary duty."  *Id.*   The court also concluded that the relief that the district court had awarded was similar to the relief that the Supreme Court approved in *Varity* as a permissible form of equitable relief under § 1132(a)(3), where the court ordered reinstatement of employees into its plan so that they could obtain benefits.  *Id.* (citing *Varity*, 516 U.S. at 495).

---

into place to protect class members' privacy and that this concern does not justify imposing a requirement that class members submit claims requesting reprocessing.

Based on this authority, the Court finds that the modification of plan records to deem class members' post-service claims timely is a permissible form of equitable relief under § 1132(a)(3). As in *Mathews*, deeming post-service claims to have been timely submitted so that they can be considered under guidelines consistent with their plans will simply put the class members in the position they would have been in if UBH had not denied their pre-service requests under flawed Guidelines.

The holding in *A.F. v. Providence Health Plan*, cited by UBH, does not stand for a contrary result. In that case, the court denied the plaintiffs' motion for summary judgment as to claims for wrongfully denied benefits under § 1132(a)(1)(B) on the basis that there were genuine issues of fact as to whether they had submitted claims for the services they had received and § 1132(a)(1)(B) does not allow for an award of benefits that is inconsistent with the terms of the plaintiff's plan. 157 F. Supp. 3d at 910. The plaintiffs did not request reprocessing as a remedy and the court simply did not address the question of whether § 1132(a)(3) would allow it to order a modification of plan documents to reflect that the plaintiffs' claims were timely if the Court were to remand to the administrator for reprocessing.

### 5. Reprocessing Issues Related to Texas Members

The Court has rejected UBH's argument that the Wit State Mandate Class should be modified to eliminate the Texas members. For the same reasons the Court rejected UBH's decertification argument the Court also rejects its assertion that these members are not entitled to reprocessing.

### 6. Whether Class Members Should Be Allowed to Supplement the Record

#### a. Additional Medical Records

Plaintiffs ask the Court to allow class members to submit additional medical information to support their denied claims. This request is reasonable and consistent with authority that holds that a claimant should be permitted to supplement the record on remand where the original decision was made under a misapprehension as to the proper standards to apply. *See Henry v. Home Ins. Co.*, 907 F. Supp. 1392, 1399 (C.D. Cal. 1995) (remanding for reprocessing of question of whether claimant's retina detached due to a fall or rather, whether it resulted from a preexisting

48

1   condition and therefore was not covered, and finding that "[b]ecause the present administrative

2   record was made under a misapprehension of the applicable Plan provisions, [the claimant] should

3   be given the opportunity to supplement the record in the light of this disposition."); *Duarte v.*

4   *Aetna Life Ins. Co.,* 2014 WL 1672855, at *10 (ordering remand to determine if plaintiff had a

5   long term disability based on "the medical evidence previously submitted" as well as "a physical

6   examination of Plaintiff, a more recent MRI, and any other clinical tests [the plan administrator]

7   deem[ed] appropriate" where the administrator had previously denied coverage based on a 26-

8   week waiting period and therefore had not reached the question of whether the medical evidence

9   demonstrated that claimant had a long-term disability).

10             b.   Information Related to Post-Denial Services

11         Plaintiffs also assert that class members should be permitted to supplement the record to

12   provide information about the treatment they received after pre-service denials.  For the same

13   reasons the Court concludes Plaintiffs' post-service claims should be deemed timely, discussed

14   above, it also concludes that Plaintiffs may submit information in support of those claims on

15   remand.

16         **7.   Whether UBH Should Be Permitted to Deny Claims for Reasons that Were
             not Included in Denial Letters**

17         Plaintiffs ask the Court to preclude UBH from offering any new reasons for denying

18   benefits that were not contained in the original denial letters.  UBH, on the other hand, argues that

19   if class members' claims are remanded for reprocessing, it must be allowed not only to reassess

20   whether the requested services are consistent with generally accepted standards of care under the

21   newly adopted guidelines but also to consider any other plan terms that may be applicable to the

22   coverage determination, regardless of whether they were cited in the original denial letter.  The

23   parties' dispute raises two basic questions.   First, does the Court have the authority to remand for

24   reprocessing while limiting the scope of the issues that will be addressed?  And second, if the

25   Court has that authority, how should it be exercised under the circumstances here?

26         With respect to the first question, the Court finds that it does have the authority to limit the

27   scope of the reprocessing remedy.  This conclusion flows from the Ninth Circuit's decision in

28   *Harlick v. Blue Shield of California*, in which the court held that "[t]he general rule . . . in this

United States District Court
Northern District of California

49

circuit and in others, is that a court will not allow an ERISA plan administrator to assert a reason

for denial of benefits that it had not given during the administrative process." 686 F.3d 699, 719

(9th Cir. 2012). The court in *Harlick* explained the reasons for this conclusion as follows:

> We wrote recently:
>
>> Requiring that plan administrators provide a participant with specific reasons for denial "enable[s] the claimant to prepare adequately for any further administrative review, as well as appeal to the federal courts." "[A] contrary rule would allow claimants, who are entitled to sue once a claim has been 'deemed denied,' to be 'sandbagged' by a rationale the plan administrator adduces only after the suit has commenced."
>
> *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1199 n. 2 (9th Cir. 2010) (quoting *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992), and *Jebian v. Hewlett–Packard Co., Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1104 (9th Cir. 2003)). ERISA and its implementing regulations are undermined "'where plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary.'" *Id.* (quoting *Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 129 (1st Cir.2004)).

*Id.*

The same rule was recognized in *Hatfield v. Blue Cross & Blue Shield of Massachusetts, Inc.*, cited by UBH, in which the court noted that "[i]n a pair of cases, the First Circuit has held that plan administrators may not introduce in litigation new reasons for denying benefits that were not raised in the internal claims process." 162 F. Supp. 3d 24, 37 (D. Mass. 2016) (citing *Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 131 (1st Cir. 2004); *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 245 (1st Cir. 2006)).

To the extent the rule articulated in these cases applies to the question of what defenses may be raised in litigation, they do not directly answer the question raised here, namely, the scope of review upon remand to the plan administrator. Nonetheless, the reasoning of these cases does not suggest that when a court remands for reprocessing as an equitable remedy it must give the plan administrator the opportunity to deny on grounds that it did not offer the first time around; rather, the policies discussed in *Harlick* of requiring insurers to include all of the reasons for denying coverage in their denial letter are implicated in the remand situation as well, even if the

1    unfairness in that situation may be mitigated somewhat by the fact that claimants might be able to

2    introduce additional evidence in response to these new reasons during reprocessing.

3            The cases cited by the parties also support the conclusion that the Court is permitted under

4    ERISA to limit the scope of review upon remand for reprocessing.  The court in *Hatfield*, for

5    example, concluded that it would be inappropriate to limit the scope of review upon remand to the

6    reasons originally offered by the plan for denying benefits because the ERISA violation in that

7    case was procedural and imposing such a limitation "would . . . have the effect, indirectly, of

8    giving a form of substantive relief for a procedural violation."  162 F. Supp. 3d at 37.

9    Nonetheless, it recognized that it likely had the power to impose such a limitation.  *Id*.   On the

10   other hand, the court in *L.P. by & through J.P. v. BCBSM, Inc*., cited by Plaintiffs in their

11   supplemental briefs, found that it was appropriate to remand the case for further administrative

12   proceedings while limiting the reasons that could be invoked by the plan to deny benefits.   No.

13   18-CV-1241 (MJD/DTS), 2020 WL 981186 (D. Minn. Jan. 17, 2020), report and recommendation

14   adopted, No. CV 18-1241 (MJD/DTS), 2020 WL 980171 (D. Minn. Feb. 28, 2020).

15           In *L.P.*, the plaintiff had been denied coverage for certain mental health services under a

16   plan exclusion that had the effect of creating a disparity in coverage that the court found violated

17   the Mental Health Parity Act.  2020 WL 981186, at *8-9.  Although the plaintiff asked the court to

18   award benefits, it declined to do so, finding that "limited development of the record" was required

19   on two questions.  *Id*. at *9.  First, the court found that the plan might have an alternative basis for

20   denying coverage based on lack of physician oversight that had been cited by the plan in the

21   original administrative process and in the litigation but had not been adequately fleshed out.  *Id*.

22   Second, the court could not determine the amount of the benefit improperly denied because of the

23   way the facility that had provided treatment had coded its charges, which could have included

24   charges for activities that clearly were not covered under the plan.  *Id*.  It therefor remanded to the

25   administrator to: 1) allow "L.P. to submit any additional evidence of physician oversight and for

26   BCBSM to further develop its findings and rationale on the same"; and 2) "allow L.P. and J.P. to

27   resubmit the claims, appropriately coded, and allow BCBSM to reprocess the claims consistent

28   with this Recommendation."  *Id*. at *9-10.  The administrator asked the court to remand for the

United States District Court
Northern District of California

51

1    additional purpose of allowing it to address a ground that had not been offered as a reason for the

2    denial during the original administrative process, namely, whether the treatment at issue satisfied

3    the medical necessity requirement of the plaintiff's plan, but the court emphatically denied the

4    plan administrator's request, stating:

> The recommended remand does not give BCBSM the right to consider medical necessity for the first time. During oral arguments, BCBSM requested remand, if the Court found a Parity Act violation, to reach the question of medical necessity. BCBSM failed to offer that as a basis for its decision during the administrative review, despite having an "antecedent duty ... to provide [L.P.] with notice and review" of its grounds for denial. *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.2d 1079, 1085 (8th Cir. 2009). This Court will not entertain this attempt at benefits denial ping-pong, in which BCBSM attempts to find other, apparently post hoc, grounds that L.P. was not given the chance to exhaust during her mandatory administrative appeal.

12   *Id*. at *10 n. 7.

13       UBH attempts to distinguish *L.P.* on the basis that it "did not involve the sort of remand

14   Plaintiffs request here," instead involving a remand that permitted limited factual development,

15   with the court ultimately making the decision whether benefits should be awarded.   Dkt. No. 460

16   at 11-12.   This distinction is unpersuasive.   While the decision itself is not crystal clear as to

17   whether benefits would be awarded by the administrator or the court if it was found that the

18   plaintiff was entitled to them, it is apparent that the court did not remand merely for further

19   development of the facts; instead, the court remanded so that the administrator could "reprocess

20   the claims consistent with" the court's order.  *Id*. at * 10.  Moreover, the court clearly concluded

21   that it was appropriate to limit the scope of the issues to be considered on remand even if there

22   might be other grounds for denying coverage that the plan administrator had not previously

23   offered as a reason for denying the plaintiff's claim.  Thus, regardless of whether benefits would

24   ultimately be awarded by the administrator or the court, the question in that case, as it is here, was

25   the scope of the issues the administrator would be allowed to consider in reprocessing the claim.

26       UBH also argues that *Harlick* does not apply here because it addressed only what reasons a

27   plan may invoke in litigation and that the sandbagging concerns expressed by the court in that case

28   are not relevant here because the entire administrative process is restarted when the remand

occurs.  In support of this argument, UBH cites *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 776 (7th Cir. 2003) for the proposition that the proper remedy is to vacate the previous administrative decision entirely in order to return the claimant to the "status quo ante" when it is determined that the administrator's denial of benefits was improper.    In *Hackett*, the court held that where the claimant had been receiving disability benefits for twelve years before the plan arbitrarily and capriciously cut them off, the proper remedy was to order reinstatement of the benefits.  *Id*. It also noted that to "fully remedy the defective procedures" in a case involving an *initial* denial of benefits, rather than a termination of benefits, the appropriate remedy would be to "provide the claimant with the procedures that she sought in the first place." *Id.* The court in *Harlick* did not, however, address whether it is ever appropriate to limit the scope of the issues to be addressed upon remand in order to achieve that objective; nor does it appear that the court considered that question.   The same is true of *Miller v. Am. Airlines, Inc*., another case cited by UBH in which the court found that where the plan administrator improperly terminated benefits the plaintiff had already been receiving, the proper remedy was to award benefits rather than remanding for further administrative proceedings. 632 F.3d 837, 856 (3d Cir. 2011).

Other cases UBH cites in support of its all-or-nothing approach to remand also do not support the conclusion that the Court is not permitted to limit the scope of the issues that can be considered on remand.  In *Miles v. Principal Life Ins. Co.,* the court remanded for a "full and fair reconsideration" of the claimant's claim after the plan administrator arbitrarily and capriciously denied benefits based on failure to properly consider his subjective complaints. 720 F.3d 472, 490 (2d Cir. 2013).  The court declined to award benefits, finding that it was appropriate to remand to the administrator, stating:

> Among other things, remand will afford [the plan administrator] the opportunity to consider the evidence under the appropriate legal standards and, if it wishes, to evaluate Miles. We do not suggest that those are the only appropriate considerations on remand, and we intend no limitation by mentioning them.

*Id*.  However, there is nothing in the decision that suggests that the plan administrator sought to rely on other plan exclusions during reprocessing that were not raised in the litigation or that the

United States District Court
Northern District of California

1    court found that it did not have the authority to limit the administrative process on remand to

2    preclude the plan administrator from denying coverage on those grounds.

3         Likewise, in *Duarte v. Aetna Life Ins. Co.*, where the court found that the plan

4    administrator had erred in declining coverage based on a 26-week waiting period, it remanded to

5    allow the plan administrator to "re-review Plaintiff's medical evidence and determine, in good

6    faith, whether she qualifie[d]" for the requested benefits.  2014 WL 1672855, at *11.  There is no

7    suggestion in *Duarte* that the remand allowed the plan administrator to invoke other exclusions to

8    deny benefits upon remand.  Rather, the court specified the scope of the remand by limiting the

9    plan administrator to consideration of whether the claimant qualified for benefits based on the

10   medical evidence.  *Id.*  Therefore, the Court concludes that it has the authority to limit the scope of

11   the reprocessing remedy to consideration of whether the requested treatment was consistent with

12   generally accepted standards of care under appropriate guidelines and to prohibit UBH from

13   denying benefits on grounds other than those cited in its original denial letters.

14        The Court further concludes that it is appropriate to limit the scope of reprocessing in this

15   manner under the facts of this case.  The Ninth Circuit in *Saffle* ordered a remand for reprocessing

16   because "[u]nlike other instances where an ERISA plan administrator abuses its discretion (for

17   example, rendering a decision without explanation, or relying on clearly erroneous findings of

18   fact, . . .), the [plan administrator in *Saffle*] ha[d] not yet had the opportunity of applying the Plan,

19   properly construed, to [the plaintiff's] application for benefits."   85 F.3d at 460.  The court

20   continued, "[i]t should be up to the administrator, not the courts, to make *that call* in the first

21   instance."  *Id.* (emphasis added).  Thus, the reasoning of *Saffle* points to the conclusion that when

22   a court finds the administrator has denied benefits based on an improper interpretation of plan

23   terms, the purpose of the remand is to allow the administrator to revisit its determination under

24   proper standards.  While courts are generally required to afford discretion to plan administrators

25   by allowing them to make the initial determination with respect to whether an award of benefits is

26   warranted under the plan, however, there does not appear to be any justification under *Saffle* for

27   allowing plan administrators a *second* bite at the apple as to other plan exclusions that they already

28   had an opportunity to invoke in their initial denial where they failed to do so.  Indeed, allowing

United States District Court
Northern District of California

54

plan administrators to invoke plan exclusions they did not include in the original denial letter subverts the policies ERISA is intended to advance, described in *Harlick*, of ensuring that plan administrators provide claimants with notice of *all* of the reasons for denying a claim so that the claimant can address them in the administrative process.

### 8.   Whether Class Members Who are Awarded Benefits on Remand are Entitled to Pre- and Post-Judgment Interest

Plaintiffs ask the Court to order that UBH pay pre- and post-judgment interest on all benefits it pays to class members as a result of reprocessing.  There is no question that if the Court were to directly award benefits to the class members, they would presumptively be entitled to interest under federal common law.  *See Rivera v. Benefit Tr. Life Ins. Co*., 921 F.2d 692, 696 (7th Cir. 1991) (recognizing that presumption in favor of awarding prejudgment interest under federal common law is specifically applicable to ERISA cases).  The question is whether the Court can or should order UBH to pay such interest as part of the reprocessing remedy.  The Court concludes that it can and that such relief is appropriate under the facts of this case.

First, the Court rejects UBH's argument that requiring it to pay interest on any benefits that are awarded as a result of reprocessing converts the Court's remedy to money damages and requires the Court to make individualized inquiries that are inconsistent with its class certification order.  Requiring UBH to compensate class members who are found through reprocessing to be entitled to benefits for the monetary value of the delay in payment of those benefits is not the same as the Court ordering the payment of interest as part of a money damages award made directly to the class members.  In the former case, it is UBH, and not the Court, that will be calculating and paying interest and it will only be doing so if it has already determined under appropriate standards that the class members' treatment should have been covered.  The Court also is not persuaded by UBH's argument that requiring it to pay interest on the benefits payments made as a result of reprocessing would conflict with terms of any individual class members' plans.   The two examples UBH offers (Trial Ex. 1542-0077and Trial Ex. 1539-0036) do not apply to the situation where UBH has been found to have wrongfully denied benefits and UBH has not pointed to any class member plan in which there is a provision that actually does address that question.

Further, while § 1132(a)(1)(B) authorizes the Court only to enforce the terms of the class members' plans, it is within the Court's equitable powers under § 1132(a)(3) to require that UBH's calculation of benefits for those who are found to have been entitled to coverage under appropriate standards also include an award of interest to account for the delay in payment. *See Fotta v. Trustees of United Mine Workers of Am., Health & Ret. Fund of 1974*, 165 F.3d 209, 213 (3d Cir. 1998) (holding that pre-judgment interest on delayed payments could be awarded as "other equitable relief" under ERISA); *Short v. Central States, Southeast & Southwest Areas Pension Fund*, 729 F.2d 567 (8th Cir.1984) (holding that plaintiff was entitled to prejudgment interest on delayed benefits under ERISA because "[t]o allow the Fund to retain the interest it earned on funds wrongfully withheld would be to approve of unjust enrichment").

Finally, the equities here warrant such an award. "[I]n the ERISA context, an award of prejudgment interest is 'a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities.'" *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 891 (9th Cir. 2019) (quoting *Landwehr v. DuPree*, 72 F.3d 726, 739 (9th Cir. 1995) (internal quotation marks omitted)). Here, class members have been waiting years for payment of benefits that were denied as a result of UBH's deliberate conduct aimed at protecting its bottom line rather than faithfully applying the terms of the class members' plans to make coverage decisions. Those class members who would have been entitled to benefits when they initially sought treatment if UBH had not applied its overly restrictive Guidelines deserve to be fully compensated, which requires that UBH pay interest to account for the delay in payment of the wrongfully denied benefits.

Therefore, the Court finds that for class members whose denials are reversed on reprocessing and who went on to obtain the same treatment at the same level of care after coverage was denied, UBH should pay interest at the rate established in 28 U.S.C. § 1961 on the benefits that are awarded as a result of reprocessing. Interest will run from the date on which the bill for services from the service provider who provided services to the class member came due.

1

### 9.  Criteria Upon Remand

2        Although UBH asserts that Plaintiffs and the Court should not dictate the criteria to be

3  used for reprocessing, it has stipulated that it does not object to using the versions of CALOCUS,

4  CASII and ASAM that are in effect when reprocessing occurs.  The Court has already found that

5  the versions of these criteria that were in effect during the class period reflected generally accepted

6  standards of care.  In addition, at the September 2, 2020 hearing, the parties stipulated that ECSII

7  reflects generally accepted standards of care that may be used to evaluate requests for coverage of

8  treatment for class members who were ages 5 or under at the time of the relevant treatment and

9  had a primary diagnosis of a mental health condition.  The parties are also in agreement that the

10  most recent versions of these guidelines should be used in reprocessing.  Therefore, the Court will

11  order that the most recent versions of the guidelines listed above will be used for reprocessing.

12       ### 10. Deadlines for Reprocessing

13        Plaintiffs ask the Court to order that reprocessing be completed for each class member

14  within 30 days from the date of submission of any additional evidence or 90 days from the

15  deadline to submit additional evidence, whichever is earlier.  They also ask the Court to order that

16  all reprocessing be completed within nine months.  UBH asserts that this is not enough time to

17  complete reprocessing.  As an alternative, Plaintiffs have stipulated that they are willing to accept

18  longer deadlines so long as UBH is required to act diligently in reprocessing and to provide

19  regular reports to the special master so that they can ensure that UBH is acting diligently in

20  reprocessing.   The Court finds that a thirty-day turn-around time for reprocessing claims is

21  unrealistic.  Rather, UBH will be required to proceed diligently with reprocessing and to complete

22  reprocessing for each class member within 90 days from the date of submission of any additional

23  evidence or 120 days from the deadline to submit additional evidence, whichever is earlier.

24  Reprocessing for the entire class should be completed within one year of the date of this Order.

25  However, the special master (discussed below) will have the authority to extend these deadlines

26  for good cause so long as UBH is proceeding diligently.

27

28

United States District Court
Northern District of California

V.     **INJUNCTIVE RELIEF**

A.     **Background**

1. **Motion**

Plaintiffs seek injunctive relief to protect the classes going forward.  In particular, in the Motion they ask the Court to: 1) prohibit UBH from using the Guidelines that the Court found were flawed – or any guidelines that "include substantively the same coverage criteria" as those Guidelines (Plaintiffs' Proposed Remedies Order §§ IV.A.1-2);  2) require UBH to use coverage criteria that reflect generally accepted standards of care (*id.*, § IV.B.1);  3) require UBH to change its business practices to ensure that its "bottom line" will not influence the development of future coverage criteria (*id.*, §§ IV.B.2-4);[9] and 4) disclose the Court's findings to class members' plan sponsors and named plan administrators, as well as to state insurance regulators and the United States Department of Labor (*id.*, § IV.B.5).  Motion at 21.  Plaintiffs contend such injunctive relief is necessary to remedy the ERISA violations the Court has found and that the Court is authorized to award this relief under 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3).

While noting in a footnote that the traditional test for injunctive relief may not apply to injunctions under ERISA, Plaintiffs assert that those requirements are easily satisfied as to the injunctive relief they seek here.  *Id.* at 22 (citing *Bd. of Trustees of Bay Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*, No. 12-CV-05655-JCS, 2014 WL 4383062, at *3 (N.D. Cal. Sept. 4, 2014) ("The right to injunctive relief under ERISA is subject to a traditional equity analysis.")).

**Irreparable harm/no adequate legal remedy:**  Plaintiffs argue that they have shown irreparable harm and no adequate legal remedy based on the Court's finding that class members were denied the right to fair adjudication of their claims.  *Id.* at 23 (citing FFCL at 104; *CIGNA Corp. v. Amara*, 563 U.S. 421, 444 (2011) ("actual harm may sometimes consist of detrimental

---

[9] Plaintiffs requests that this injunctive relief be carried out under the supervision of a special master, with whom UBH would work to design and implement firewalls and other safeguards to: 1) ensure that no one in the finance, accounting or affordability departments will have authority with respect to the development of coverage criteria; and 2) prohibit individuals on committees that develop such criteria from receiving notifications about UBH's financial performance, including "benex." Plaintiffs' Proposed Remedies Order § IV.B.4.

United States District Court
Northern District of California

reliance, but it might also come from the loss of a right protected by ERISA or its trust-law antecedents.")).  According to Plaintiffs, this is an injury that cannot be "accurately quantified, or even wholly accounted for, in monetary terms – making it quintessentially 'irreparable' harm with no legal remedy."  *Id*. at 23 (citing *Ross-Simons of Warwick, Inc. v. Baccarat, Inc*., 217 F.3d 8, 13 (1st Cir. 2000) ("It is settled beyond peradventure that irreparable harm can consist of 'a substantial injury that is not accurately measurable or adequately compensable by money damages.'"); *Wheaton Coll. v. Burwell*, 50 F. Supp. 3d 939, 952 (N.D. Ill. 2014), aff'd, 791 F.3d 792 (7th Cir. 2015) ("An injury is 'irreparable' when it is of such a nature that the injured party cannot be adequately compensated in damages or when damages cannot be measured by any pecuniary standard.")).   In particular, Plaintiffs argue that UBH's conduct has resulted in the loss – or threatened loss – of health benefits, which has been found by numerous courts to meet the irreparable harm requirement.  *Id*. at 23 (citing *Bunn Enterprises, Inc. v. Ohio Operating Engineers Fringe Ben. Programs*, No. 2:13-CV-357, 2013 WL 3147956, at *12 (S.D. Ohio June 19, 2013), aff'd, 606 F. App'x 798 (6th Cir. 2015);  *Meehan v. Gristede's Supermarkets, Inc*., No. 95-CV-2104 (JG), 1997 WL 1097751, at *3 (E.D.N.Y. Sept. 25, 1997) ("Given defendant's repeated failure to make timely contributions, as well as the fact that those violations lead to the suspension of its employees' medical benefits, I find that the plaintiffs have demonstrated that, without the issuance of the injunction, irreparable harm would result for which there is no adequate remedy at law."); *United Here Health v. Tinoco's Kitchen*, LLC, No. 2:11-CV-02025-MMD, 2012 WL 5511639, at *7 (D. Nev. Nov. 13, 2012) ("Although purely monetary damages typically cannot sustain a finding of irreparable harm, failure to pay benefits to employees under an obligation in an ERISA plan has been held to constitute irreparable injury due to its non-monetary consequences."); *Schuman v. Microchip Tech. Inc*., 302 F. Supp. 3d 1101, 1118 (N.D. Cal. 2018) ("At this stage of the litigation, Plaintiffs have adequately pled irreparable harm, as the consequences of losing job benefits are not always 'merely monetary,' and can 'carr[y] emotional damages and stress, which cannot be compensated by mere back payment of wages.'")).

Plaintiffs argue further that class members remain at risk because mental illness tends to be chronic (as the Court found in the FFCL at pp. 33-34), so if UBH continues to use guidelines that

are overly restrictive, class members are likely to be injured again in the future.  *Id.* at 24.

Plaintiffs argue that these future denials of health benefits cannot be adequately redressed through

money damages for the reasons discussed above. *Id.*  Instead, they assert, UBH must be enjoined

from using the same guidelines or merely "repackaging them."  *Id.* at 25-26.  Plaintiffs also

contend injunctive relief requiring training is necessary to ensure that UBH employees understand

the new guidelines; likewise, they contend, requiring UBH to make changes to its business

practices that contributed to their flawed Guidelines and to make disclosures to plans and

regulators is necessary to prevent a repetition of its past wrongdoing.  *Id.* at 26.

**Balance of hardships:** Plaintiffs contend that the balance of hardships tips sharply in their

favor because UBH is merely being required to do what the class members' plans already require.

*Id.* (citing *United Here Health v. Tinoco's Kitchen, LLC*, 2012 WL 5511639, at *8 ("It is little

hardship upon Defendants to be subject to an injunction ordering them to comply with obligations

they are already subject to, while Trustees have demonstrated hardship that would result from

continued delinquencies by Defendants."); *Bd. of Trustees of Bay Area Roofers Health & Welfare

Tr. Fund v. Westech Roofing*, No. 12-CV-05655-JCS, 2014 WL 4383062, at *4 (N.D. Cal. Sept. 4,

2014) ("While Westech's prolonged and repeated noncompliance has imposed a significant

burden on the Trust Funds, as discussed above, the injunctive relief requested by Plaintiffs is

narrow in scope and only requires Westech to comply with its existing obligations under the

[Collective Bargaining Agreement] and Trust agreements.")).

**Public interest:** Plaintiffs further assert that the injunctive relief they request is in the

public interest, pointing to the purpose for which ERISA was enacted as set forth in 29 U.S.C. §

1001.  *Id.* at 27. In particular, in § 1001(a), Congress recognized that "the continued well-being

and security of millions of employees and their dependents are directly affected by [employee

benefit] plans."  29 U.S.C. § 1001(a).  Plaintiffs point out that in §1001(b), Congress declared that

it is the policy of ERISA "to protect interstate commerce and the interests of participants in

employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to

participants and beneficiaries of financial and other information with respect thereto, by

establishing standards of conduct, responsibility, and obligation for fiduciaries of employee

benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the

Federal courts." *Id.* (citing 29 U.S.C. § 1001(b)).

### 2. Opposition

UBH argues that Plaintiffs have not met their burden in demonstrating that the traditional

requirements for awarding injunctive relief are satisfied.  Opposition at 38-39.  With respect to the

injunctive relief requested in §§ IV.A. and B.1 of Plaintiffs' Proposed Remedies Order,

prohibiting UBH from using any of the Guidelines the Court found were flawed or any guidelines

that "include substantively the same coverage criteria" and further requiring that UBH use ASAM,

LOCUS and CASII to make future coverage determinations, UBH argues that Plaintiffs cannot

dictate the specific guidelines it should use because doing so usurps the discretion of the

administrator.  *Id.* at 39-40.  UBH points to the Court's finding that "there is no single source of

generally accepted standards of care," arguing that as administrator, it is entitled to decide which

of multiple reasonable interpretations of generally accepted standards of care to adopt.  *Id.* at 40

(citing FFCL ¶¶ 54, 57; *Conkright v. Frommert*, 559 U.S. 506, 513 (2010)).

UBH further asserts that Plaintiffs have failed to show irreparable harm because they have

not demonstrated that there is a "real or immediate threat that [they] will be wronged again" and

they have not addressed why the "substantial changes" it says it has made since the trial are not

sufficient.  *Id.* at 41-42.  In particular, UBH represents that it made "substantial changes to both its

mental health and substance use guidelines in early 2018."  *Id.* at 41.[10]  It also represents that it has

adopted the ASAM Guidelines "where permitted by law" to determine substance use coverage,

effective January 2019.[11]  *Id.* at 42.  It further states that "more recently" it has approved adoption

of LOCUS and CALOCUS for mental health benefits determinations, "with the goal of

---

[10] UBH states in a footnote that its 2019 Guidelines are available on its public website and notes that those guidelines were revised in response to the Court's FFCL to refer to both "acute and chronic symptoms" and to take into account "cooccurring behavioral health or medical conditions."  UBH also notes that the 2019 Guidelines provide for coverage of services designed to "maintain the patient's level of functioning" and state that, for "long-term, chronic conditions, control of symptoms and maintenance of a functional level to avoid further deterioration or hospitalization is an acceptable expectation of improvement." *Id.* at 41 n.32.

[11] According to UBH, its adoption of ASAM  is set forth in an Optum Provider Notice "dated November 2018."  *Id.* at 42 n. 33.

United States District Court
Northern District of California

implementation in early 2020, subject to required regulatory approvals." *Id*. at 42.  In light of these changes, UBH argues, Plaintiffs' "bald assertion of irreparable injury is pure conjecture." *Id*. at 43.

UBH also contends Plaintiffs' assertions that they face irreparable harm are speculative and unsupported by the evidence because the plan documents introduced into evidence at trial are from 2010-2016 and Plaintiffs have not offered evidence that "the plan language will remain unchanged in perpetuity." *Id*. (citing *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990);  *Goldie's Bookstore, Inc. v. Superior Court of State of Cal*., 739 F.2d 466, 472 (9th Cir. 1984) ("Speculative injury does not constitute irreparable injury.")).  According to UBH, even if future plans contain the phrase "generally accepted standards of care," the Court "cannot predetermine the proper construction of that phrase as it is used in plans the Court has never had an opportunity to review." *Id*. (citing *Gilliam v. Nevada Power Co*., 488 F.3d 1189, 1194 (9th Cir. 2007); *Dupree v. Holman Prof'l Counseling Centers*, 572 F.3d 1094, 1097 (9th Cir. 2009)).

Next, UBH objects to the following language in Plaintiffs' Proposed Remedies Order with respect to the requirement that UBH use the ASAM Criteria to make future coverage determinations:

> Faithful application of the ASAM Criteria to requests for coverage of residential treatment requires consideration of the criteria applicable to each of the sub-levels of residential treatment identified in the ASAM Criteria (*i.e.,* Levels 3.1, 3.3, 3.5, and 3.7).

Plaintiffs' Proposed Remedies Order § IV.B.1.a.(i).  UBH argues that this language would require it to cover substance use treatment under ASAM levels that may be excluded from coverage under members' plans, which is inconsistent with UBH's fiduciary responsibility to "only use the ASAM Criteria to approve benefits that are actually covered under the terms of the plans as written."  Opposition at 44 (citing *Conkright*, 559 U.S. at 520).

UBH also argues that Plaintiffs' request to enjoin use of criteria that "include substantively the same coverage criteria" as the Guidelines is impermissibly vague under Rule 65(d)(1)(C) of the Federal Rules of Civil Procedure. *Id*. at 45-46.  In particular, it argues, Plaintiffs' proposed order prohibits use of the Guidelines generally, but does not identify the specific criteria UBH

62

would be prohibited from using; as the Court held that some criteria in the Guidelines were consistent with generally accepted standards of care – and some criteria address levels of care that were not at issue in this case – the proposed injunction is overbroad.  *Id.* at 45.  UBH also challenges the use of the word "include" in § IV.A.2 of Plaintiffs' Proposed Remedies Order on the grounds that some of its Guidelines are consistent with generally accepted standards of care at a higher level of care even if they are not consistent with generally accepted standards of care at a lower level.  *Id.* at 46.   As an example of this scenario, UBH points to evidence that its guideline for treatment of substance use at the residential treatment level of care was consistent with generally accepted standards of care at ASAM level 3.7 even if it was not consistent with standards for the lower ASAM levels of care.  *Id.* (citing Trial Tr. at 142-144, 234-235) (Fishman testimony that some criteria for treatment of substance use would be consistent with ASAM level 3.7).  UBH argues that it would be consistent with the Court's findings to "include" these criteria in future guidelines for level 3.7 even if the criteria were not consistent with generally accepted standards of care at lower levels.  *Id.*

With respect to Plaintiffs' request for an injunction requiring UBH to train its clinicians and senior staff, *see* Plaintiffs' Proposed Remedies Order §§ IV.B.2-3, UBH argues that Plaintiffs have not established that this requirement must be mandatory to avoid irreparable harm even if it may be a good idea to conduct such training.  *Id.* at 46-49.  UBH does not disagree that as to clinical staff, "internal training on the proper use of the new guidelines is appropriate."  *Id.* at 46.  Nor does it "object to training its clinical staff and senior executive leadership on UBH's role as a fiduciary under ERISA as it relates to UBH's administration of ERISA-governed benefit plans."  *Id.* at 48.  It contends, however, that Plaintiffs have offered no evidence that UBH is unlikely to offer such training.  *Id.* at 47. To the contrary, it asserts, the evidence presented at trial shows that it regularly trains Peer Reviewers and Care Advocates, including providing training on changes to its guidelines and use of the ASAM Criteria in the states where their use is required.  *Id.* at 47.  UBH also argues that the language of Plaintiffs' Proposed Remedies Order as to the required training of clinical staff is impermissibly vague under Rule 65 because it does not specify the type of training that would be required.  *Id.* at 47-49.  UBH stipulates, however, that "to the extent that

United States District Court
Northern District of California

the court appoints a special master, UBH will comply with reasonable requests by the special master to review UBH's training materials and protocols for the purpose of reporting such information to the Court." *Id*. at 48.

UBH argues that Plaintiffs also are not entitled to an injunction requiring that it change its corporate practices or structure to ensure that financial considerations do not taint future guideline development. UBH argues that Plaintiffs cite no authority in support of their request to dictate who sits on UBH's internal committees and do not show irreparable harm will occur if the Court does not order this "drastic remedy." *Id*. at 50. It again points out that it has already adopted ASAM, LOCUS and CALOCUS, showing that Plaintiffs' concerns that UBH will "simply find some way around the Court's findings in this case" does not justify the injunctive relief they request. *Id*. UBH also argues that the "financial metrics" that Plaintiffs "would have UBH conceal from its clinicians" are "directly relevant to clinical operations, and are often indicators of the quality of patient care." *Id*. Therefore, the requested injunction as to corporate structure and practice should be rejected, UBH contends, as it will prevent UBH from performing its fiduciary duty to prevent "wasteful and abusive treatment practices." *Id*. at 51 (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd*., 518 F. Supp. 2d 1197, 1231 (C.D. Cal. 2007) ("injunctive relief should avoid prohibiting legitimate conduct.")).

UBH also argues that the Court should deny Plaintiffs' request for an injunction requiring it to make disclosures about the FFCL and the Court-ordered remedies to plan sponsors and administrators, state regulators and the Department of Labor. *Id*. at 51-52 (addressing Plaintiffs' Proposed Remedies Order § IV.B.5). According to UBH, this requested relief is not aimed at preventing harm to class members but instead, at making UBH "take responsibility for what it has done" so it can be held accountable in the future. *Id*. at 51. Yet there is no evidence such disclosures are necessary, UBH contends, because the Court's orders are publicly available. *Id*. Further, it asserts, Plaintiffs have offered no evidence that they will suffer irreparable harm in the absence of this injunction – particularly as Plaintiffs have asked the Court to retain jurisdiction. *Id*. UBH argues that this injunctive relief is unreasonably punitive and nonremedial. *Id*. (*citing United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985) ("necessary and appropriate

injunction against otherwise lawful conduct must be carefully limited in time and scope to avoid an unreasonably punitive or nonremedial effect.")).

### 3. Reply

Plaintiffs assert that because UBH addresses only the irreparable harm requirement in its Opposition brief it has implicitly conceded that Plaintiffs have satisfied the other elements of the test, that is, that their remedies at law are inadequate, the balance of the hardships tips in their favor and the injunctive relief they request is in the public interest. Reply at 61. Plaintiffs reject all of UBH's arguments about irreparable harm. *Id.*

First, Plaintiffs argue that under "black-letter law," a "court's power to grant injunctive relief survives the discontinuance of the illegal conduct." *Id.* at 61 (citing *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1201 (10th Cir. 2009) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Therefore, Plaintiffs contend, UBH cannot escape a finding of irreparable harm by voluntarily abandoning its Guidelines. *Id.* (citing *W.T. Grant*, 345 U.S. at 633; *United States v. Laerdal Mfg. Corp.*, 73 F.3d 852, 854 (9th Cir. 1995) (quoting *Federal Election Comm'n v. Furgatch*, 869 F.2d 1256, 1263 n. 5 (9th Cir.1989) (listing factors courts may consider in making determination of whether there is a cognizable danger of recurring violation)); *United States v. Parke, Davis & Co.*, 362 U.S. 29, 48 (1960) ("trial court's wide discretion in fashioning remedies is not to be exercised to deny relief altogether by lightly inferring an abandonment of the unlawful activities from a cessation which seems timed to anticipate suit.")).

Plaintiffs argue that in light of UBH's "egregious" fiduciary breach, the long period of time it used its flawed Guidelines, the finding of the Court that UBH's witnesses tried to mislead the Court, the burden on Plaintiffs of litigating this case and UBH's continuing insistence that it did nothing wrong, its recent efforts do not show that Plaintiffs do not face irreparable harm. *Id.* (citing *E.C. v. Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir. 1978) ("Promises of reformation and acts of contrition are relevant in deciding whether an injunction shall issue, but neither is conclusive or even necessarily persuasive, especially if no evidence of remorse surfaces until the violator is caught.")). To the contrary, Plaintiffs assert, UBH's "past and current behavior easily evidences future risk serious enough to support the grant of an injunction." *Id.* at 63 (citing

*Laerdal*, 73 F.3d at 856-857).  They point to cases where they contend courts have found a likelihood of irreparable harm based on "far less persuasive facts."  *Id.* at 64 (citing *Accusearch*, 570 F.3d at 1202;  *Marie v. Mosier*, 196 F. Supp. 3d 1202, 1213 (D. Kan. 2016); *Long v. U.S. I.R.S.*, 693 F.2d 907, 910 (9th Cir. 1982)).  Plaintiffs note in a footnote that just *after* they filed their opening remedies brief, "UBH re-adopted its defective Custodial Care CDGs."  *Id.* n.74.[12]

Plaintiffs reject UBH's argument that injunctive relief is not justified because Plaintiffs have presented no evidence that any plan in evidence is still in effect or that the relevant plan language will remain unchanged.  *Id.* at 66.  Plaintiffs note that as the trial was conducted in 2017 it is not surprising that class members' 2019 plans were not offered as evidence.  *Id.*  Nonetheless, they argue that there is evidence in the record that the class members were participants in thousands of plans and "[t]here is no factual basis for concluding that every one of those thousands of plans terminated in the last two years."  *Id.*  Plaintiffs also point out that the Court required all evidence related to remedies to be offered at trial and therefore they did not introduce evidence of class members' current plans in support of their remedies brief;  nonetheless, they offer to provide additional evidence if needed to show that many class members' plans do, in fact, remain in effect.  *Id.* n. 76.

Plaintiffs also reject UBH's argument that the Court cannot "predetermine the proper construction" of the phrase "generally accepted standards of care" in future plans, arguing that UBH's argument is based on the "faulty premise that courts cannot review or construe any terms of an ERISA plan without reading and applying every plan term at the same time."  *Id.* at 67.  According to Plaintiffs, "that is not how ERISA plan construction works – nor is it how UBH operates."  *Id.*  Plaintiffs point out that at trial, the Court found that UBH used its Guidelines to interpret the term "generally accepted standards of care" across *all* plans.  *Id.* (citing FFCL ¶ 38-39, 45).  Plaintiffs do not dispute that plan terms must be read in context, but they assert that this

---

[12] In addition, after briefing on remedies was already complete, Plaintiffs filed a Motion for Leave to Submit Newly Discovered Evidence in Support of Remedies in which they asserted that new evidence had come to light showing that UBH was not applying the ASAM Criteria faithfully, contrary to UBH's representations to the Court.  *See* Docket No. 444.  The Court granted that motion.

United States District Court
Northern District of California

does not require the Court to read every single plan term but instead, only to consider other plan terms that are relevant. *Id.* at 68. Plaintiffs also argue that while it is theoretically possible for a plan to ascribe a different definition to the phrase "generally accepted standards of care," UBH is merely speculating on this point and has offered no evidence of any plan actually adopting a different meaning of the phrase. *Id.*

With respect to UBH's objection to the language in Plaintiffs' Proposed Remedies Order requiring it to consider all ASAM levels, *see* Proposed Order § IV.B.1.a.(i), Plaintiffs argue that this language does not require that UBH cover individuals at levels that are excluded under their plans but simply to apply the ASAM Criteria faithfully for all levels. *Id.* at 69. In light of the Court's finding that UBH failed to include any criteria in its Guidelines for the lower levels of care under the ASAM Criteria, Plaintiffs assert, it is reasonable to include language in the injunction to ensure UBH does not ignore these lower levels of care going forward. *Id.* at 70.

Plaintiffs reject UBH's argument that the injunction requiring UBH to use ASAM, LOCUS and CASII should not be of indefinite duration. *Id.* at 71. Plaintiffs contend UBH's position is based on an exaggeration of the speed at which generally accepted standards of care evolve. *Id.* They point out that UBH's 2017 Guidelines relied on the 2013 version of the ASAM criteria and the 2010 versions of LOCUS and CALOCUS. *Id.* They also assert there is no dispute that both the 2001 and 2013 versions of the ASAM Criteria reflect generally accepted standards of care as set forth in the FFCL, which is indicative of the fact that generally accepted standards of care change slowly. *Id.* (citing FFCL ¶ 58).

Plaintiffs reject UBH's challenges to the "substantively the same coverage criteria" language in their original Proposed Remedies Order. *Id.* at 72-73. They argue that this language is not impermissibly vague and in any event, this is not a reason to deny injunctive relief as it is in the Court's power to revise the scope of the proposed injunctive relief. *Id.* at 73-74. Nonetheless, they offer revised language to address UBH's argument, replacing the phrase to which UBH objects with language prohibiting UBH from using "any Guidelines that include, alone or in combination, as a mandatory prerequisite for coverage, any criterion listed on the Consolidated Claims Chart filed in this matter on February 12, 2018 (ECF No. 404-2), regardless of whether

any such criterion is expressed in facially different language, except that UBH is not enjoined from using the following criteria: Common Criteria ¶¶ 4-5 from UBH's 2011 and 2012 Level of Care Guidelines; Common Criteria ¶ 6 from UBH's 2013 Level of Care Guidelines; and Continued Service Criterion ¶ 5 from UBH's 2012 and2013 Level of Care Guidelines."  Plaintiffs' Revised Proposed Remedies Order, § IV.A.2.   They note that they included the original language in the version of the proposed order they sent to UBH when the parties met and conferred prior to filing their opening brief and that UBH did not object to it; had it done so, Plaintiffs assert, they would not have needed to propose new language on their Reply.  *Id*. n. 81.

With respect to their request for an injunction requiring that UBH train its employees and make changes to UBH's corporate structure, Plaintiffs asserts that "UBH does not dispute that these steps are appropriate."  *Id.* at 74.  According to Plaintiffs, UBH's problem with these injunctions is that they will make UBH's obligations *enforceable*.  *Id*. at 75.  Given UBH's ongoing conduct showing a lack of good faith and lack of understanding of its fiduciary duty to plan members, Plaintiffs assert, it is appropriate that these obligations be included in the Court's injunctive relief.  *Id*. at 75-76.  Plaintiffs also argue that these aspects of the proposed injunction "should not be construed as wholly separate injunctions" but instead as "part and parcel of any injunction the Court enters requiring UBH to change its Guidelines going forward."  *Id*. at 75. Plaintiffs argue that these requirements are justified because UBH "deliberately misled its personnel for years by instructing them that its self-serving, pervasively flawed Guidelines were consistent with generally accepted standards of care."  *Id*.   They also argue that UBH "refuses to acknowledge that, under ERISA, [it] owes fiduciary duties *to* the participants and beneficiaries of the plans," and instead "argues as though it owes a duty . . .  to protect plan assets *from* the plan participants and beneficiaries, which it portrays as bad actors who are seeking 'windfalls' by requesting coverage for their behavioral health treatment."  *Id*. at 76.

Plaintiffs reject UBH's argument that it must be permitted to continue providing financial information to those who are entrusted with developing coverage criteria because that information helps it to carry out its fiduciary duty.  *Id.*  Plaintiffs assert that this argument is directly contradicted by the evidence in the case, which showed that UBH drafted its restrictive Guidelines

to protect its own "bottom line" and not to fulfill its fiduciary duty to the plans.  *Id*. (citing FFCL ¶¶ 174-189).

As to injunctive relief requiring disclosures to plan sponsors, plan administrators and regulators, Plaintiffs argue that these are necessary to effectively implement the injunction requiring UBH to change its Guidelines.  *Id*. at 77.  Plaintiffs contend it is entirely appropriate that disclosures be made to plan sponsors and administrators as UBH's improper denials were issued in their name.  *Id*.  Plaintiffs contend disclosures to state regulators are warranted because the Court has found that UBH lied to state regulators in the past and it is essential that regulators understand what UBH has been ordered to do and why.  *Id*. at 77-78.  Plaintiffs point out that UBH itself has emphasized its obligations to notify state regulators of changes to its Guidelines and in some case, obtain approval of those changes.  *Id*. at 78.

### 4.  Supplemental Briefing

On March 24, 2020, the Court requested supplemental briefing and updated information about the changes UBH had made in its mental health and substance use guidelines.  Dkt. No. 448. The parties' responses are summarized below.

In its opening supplemental brief, UBH represents that it has adopted third-party guidelines (ASAM, LOCUS, CASII, ESCII and certain specific criteria required under New York and Massachusetts law, where applicable) in all 50 states.  Dkt. No. 451 at 14-16.  It has supplied a declaration by Dr. Triana stating that UBH has fully discontinued the use of its LOCGs for the determination of mental health and substance use benefits in all 50 states, along with a chart summarizing the guidelines used in each state.  Dkt. No. 451-2 (Triana Decl.); *see also* Dkt. No. 451-3 (chart showing guidelines used in all 50 states).  UBH states that on May 20, 2019, it adopted the 2019 Coverage Determination Guideline: Custodial Care (Inpatient and Residential Services) "to describe excluded custodial care services as defined under the limited number of self-funded plans to which it applies."  Dkt. No. 451 at 16.  It states that since it was adopted it has "not been cited in any adverse benefits determinations for coverage of residential treatment services, or for any plans or members at issue in this case."  *Id*. (citing Dkt. No. 451-4 (Clark Decl.) ¶¶ 14-15).  UBH states that it "expects to discontinue its Custodial Care CDG on May 18,

1   2020." *Id.*

2       In their response, Plaintiffs contend UBH's update is misleading because it fails to

3   acknowledge many limitations on its uses of the third-party guidelines, even though the Court

4   asked UBH to identify any such limitations in its request for supplemental briefing.  Dkt. No. 454-

5   5 at 14-22. While Plaintiffs say they would need discovery to get a full picture of what is really

6   going on with respect to UBH's application of third-party guidelines, they argue that the Court

7   should not take UBH's representations about what it is doing at face value given its past bad faith,

8   including its misrepresentations about coverage at ASAM levels 3.1 and 3.3.  *Id.* at 15.

9       Further, Plaintiffs argue that UBH's description of its current use of ASAM is misleading

10  because it fails to mention that along with ASAM, UBH *also* adopted in January 2019 a

11  "'Behavioral Clinical Policy' that fundamentally rewrites ASAM to continue UBH's over-

12  emphasis on acuity."  *Id.* at 16 (citing Dkt. No. 455-2 (Bendat Decl.) ¶ 2 & Ex. 1 thereto (Dkt.-

13  No. 455-3 (Behavioral Clinical Policy ("2019 Policy")).  The 2019 Policy states that ASAM level

14  3.1 services are not a covered benefit and level 3.3 services are excluded from the substance use

15  residential treatment benefit.  *Id.*  In particular, the 2019 Policy contains the following section

16  entitled "Coverage Rationale," which is quoted here in full:

17      **The ASAM Criteria Level 3.1 Clinically Managed Low-Intensity
        Residential Services and Level 3.3 Clinically Managed Population-**
18      **Specific High-Intensity Residential Services, Third Edition:**

19      • Level 3.1 services: The ASAM Criteria promotes a flexible outcome-
          based approach that takes into account the actual progress and dynamic
20        needs of the unique individual. There is little data and knowledge on
          the dose response relationship for residential treatment and further
21        research is needed to clarify these matters. The defining characteristics
          of these services are a need to provide a safe and stable living
22        environment to stabilize and develop recovery skills (ASAM, 2013).
          Level 3.1 services at this time are not a covered benefit; these services
23        are currently not licensed or accredited by most state or non-
          governmental agencies. Sober houses, boarding houses, halfway
24        houses, group homes, transitional living, and other supported living
          environments are excluded from coverage.
25      • Level 3.3 services are designed specifically to treat patients with
          cognitive deficits, either developmental or of acute onset (e.g.,
26        traumatic brain injury, stroke), and therefore excluded from the
          substance use disorder residential benefit.
27      • There is no evidence-based research published within the past 5 years
          regarding ASAM level 3.1 and 3.3 residential care for substance use
28        disorder treatment; no systematic reviews, meta-analyses, or well-

designed trials could be found to demonstrate effectiveness. There is no clinical evidence to support residential care that includes sober houses, boarding houses, halfway houses, group homes, transitional living, and other supported living environments where treatment services are not provided, as a significant intervention in treating substance use disorders.

Dkt. No. 455-3.  This section is followed by a section entitled "Clinical Evidence," which states that "[t]here are no well-designed trials or studies published within the past 5 years addressing clinically managed residential care for substance use disorder treatment." *Id.*  It further states that "[t]here are no systematic reviews or meta-analyses published within the past 5 years addressing clinically managed residential care for substance use disorder treatment." *Id.*

Plaintiffs have supplied a declaration by Dr. Fishman addressing the 2019 Policy. Dkt. No. 455-1 (Fishman Decl.).  Dr. Fishman opines that "[b]y declaring Levels 3.3 and 3.1 ineligible for coverage, UBH is rejecting a vital element of The ASAM Criteria" and that "[c]linically-managed levels of residential care (Levels 3.5, 3.3, and 3.1) are integral and essential components of a full continuum of care for [substance use disorder] treatment." *Id.* ¶¶ 7, 9.  He goes on to explain at length why the justifications UBH sets forth in the 2019 Policy are both factually incorrect and based on mischaracterizations of ASAM. *Id.* ¶¶ 14-24.  Dr. Fishman notes that to the extent the 2019 Policy points to lack of state certification for Level 3.1 services, it ignores the facts that many states do have regulatory standards and licensing for services at this level and in those states, there are licensed facilities at that level. *Id.* ¶¶ 21-22.

Plaintiffs also point to the evidence they submitted in connection with their administrative motion requesting leave to file "newly discovered evidence," which the Court granted.  Dkt. No. 454-5 at 17-18 (citing Dkt. No. 444).  These materials include communications between UBH and a residential detoxification treatment center in California (The Lakes Treatment Center) that Plaintiffs say show that UBH is not applying ASAM faithfully and is still refusing to cover the lower levels of care.  UBH opposed Plaintiffs' request to file this evidence, filing an Opposition in which it argued that the evidence actually showed that UBH is following ASAM.  Dkt. No. 447.

Plaintiffs also challenge Dr. Triana's claim that UBH is applying LOCUS.  Dkt. No. 454-5 at 19-20.  They offer evidence that a recent denial for residential treatment sought by "Jane Brown" cited LOCUS but did not go through the six LOCUS factors.  *Id.* at 19 (citing Dkt. No.

455-2 (Bendat Decl.) ¶ 3 & Ex. 2 thereto (Dkt. No. 454-6)).  According to Plaintiffs, the claim administration notes from UBH showed that the claimant had a LOCUS score from an evaluation from three days before the denial that qualified her for the treatment she was seeking coverage for. *Id.*  As to the Custodial Care CDG, Plaintiffs argue that UBH's decision to renew it after the Court found it to be faulty shows that it cannot be trusted.  *Id.* at 20.  And even if UBH did not find any denials based on this CDG in its database, Plaintiffs assert, that does not mean peer reviewers did not consider it when applying other guidelines.  *Id.*  In addition, Plaintiffs point out that UBH continues to use its CDGs for the self-funded plans, which do not include a medical necessity requirement.  *Id.* at 21.  More broadly, Plaintiffs contend that the CDGs do not reflect generally accepted standards of care:  as to substance use disorder, UBH refers to ASAM in the CDGs but has "distorted" ASAM in applying it through the lens of the 2019 Policy that limits coverage at the lower levels of care; as to mental health treatment, Plaintiffs contend the CDGs do not expressly incorporate LOCUS or CASII.  *Id.*  Plaintiffs acknowledge in a footnote that UBH has removed all of the cross-references in the CDGs to the LOCGs.  *Id.* at 22.

Plaintiffs also argue that the Court should give little weight to UBH's statement that it "has no plans" to discontinue or change its use of the criteria it has now adopted, asserting that UBH has shown how easy it is to "jettison a set of guidelines . . . and that it is perfectly willing to adopt criteria that it knows to be inconsistent with generally accepted standards."  *Id.* at 22.

In its Reply, UBH rejects Plaintiffs' assertion that it is not faithfully applying ASAM and contends Plaintiffs' arguments about the 2019 Policy support UBH's position that the classes should be decertified.  Dkt. No. 460 at 14.  UBH asserts the 2019 Policy has nothing to do with generally accepted standards of care for determining medical necessity but instead describes coverage under certain UBH plans and must be read in conjunction with the members' specific benefit plans.  *Id.* at 15.  UBH has submitted a declaration by Dr. Martorana stating that the 2019 Policy is about plan members' coverage and does not purport to interpret "medical necessity" in support of its position.  Dkt. No. 460-1 (Martorana Decl.).   UBH argues that it applies ASAM to medical necessity determinations and that Plaintiffs' focus on the 2019 Policy is a distraction, confusing the question of what members' plans cover with the question of whether a service is

1    medically necessary.  Dkt. No. 460 at 16-17.

2         UBH also rejects Plaintiffs' reliance on the recent denial of "Jane Brown's" claim.  *Id*. at

3    17-18.  It asserts that because she has brought her own individual lawsuit and the denial falls

4    outside of the class period of this case it is not proper for the Court to "speculate" about the

5    meaning of the notes prepared by the UBH medical director about her case, which simply

6    highlights that medical necessity determinations are individualized and not suitable for class

7    treatment.  *Id*. at 17. UBH also asserts that to the extent that disputes such as this are likely to arise

8    as reprocessing is conducted, appointment of a special master carries a danger that challenges that

9    would ordinarily work their way through the administrative and then judicial processes will,

10   instead, be taken over by an official designated by the Court to resolve these issues.  *Id*. at 18.

11   Moreover, it asserts, because both sides will have the right to challenge the decision of the special

12   master under Fed.R.Civ. P. 53(f)(3) and (f)(4), and the Court will be required to conduct a de novo

13   review of those decisions, the appointment of a special master is likely to "'present more problems

14   than it solves.'"  *Id*. (quoting *Meeropol v. Meese*, 790 F.2d 942, 961 (D.C. Cir. 1986)).

15        **B.    Discussion**

16        "According to well-established principles of equity, a plaintiff seeking a permanent

17   injunction" must demonstrate:

18              (1) that it has suffered an irreparable injury; (2) that remedies
             available at law, such as monetary damages, are inadequate to
19              compensate for that injury; (3) that, considering the balance of
             hardships between the plaintiff and defendant, a remedy in equity is
20              warranted; and (4) that the public interest would not be disserved by
             a permanent injunction.
21

22   *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006).  Irreparable harm requires a

23   showing that there is a "'real or immediate threat that the plaintiff will be wronged again.'"  *Hynix*

24   *Semiconductor Inc. v. Rambus Inc*., 609 F. Supp. 2d 951, 968 (N.D. Cal. 2009) (quoting *City of*

25   *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

26        Numerous courts have recognized that a loss of health care benefits is sufficient to

27   establish irreparable harm because it raises the specter that individuals will be unable to pay for –

28   and therefore will not receive – necessary medical treatment.  *Whelan v. Colgan*, 602 F.2d 1060,

United States District Court
Northern District of California

73

1061 (2nd Cir. 1979) (affirming preliminary injunction prohibiting employer-trustee from cutting

off health care benefits during a strike on the basis that "the threatened termination of benefits

such as medical coverage for workers and their families obviously raised the spect[er] of

irreparable injury."); *Bunn Enterprises, Inc. v. Ohio Operating Engineers Fringe Ben. Programs*,

No. 2:13-CV-357, 2013 WL 3147956, at *12 (S.D. Ohio June 19, 2013), aff'd, 606 F. App'x 798

(6th Cir. 2015) ("Courts have repeatedly acknowledged that the loss of health care benefits – or, in

some circumstances, even the imposition of cost-sharing for such benefits – constitutes

'irreparable harm.'");   *United Steelworkers of Am. v. Textron, Inc*., No. CIV.A. 85-4590-MC,

1987 WL 33023, at *2 (D. Mass. Feb. 2, 1987), aff'd sub nom. *United Steelworkers of Am., AFL-*

*CIO v. Textron, Inc*., 836 F.2d 6 (1st Cir. 1987) (finding irreparable harm where retirees' health

insurance benefits had been cut off).

UBH does not challenge Plaintiffs' arguments with respect to the inadequacy of legal

remedies, the balance of hardships and the public interest, thus implicitly conceding those factors

are satisfied.  Nor does UBH challenge the general proposition that a loss of health care benefits

may result in irreparable harm.  Rather, it contends the injunctive relief Plaintiffs seek is not

justified because Plaintiffs have not established that there is a "real or imminent" threat that they

will be harmed in the absence of the injunctive relief they seek.  UBH also challenges some of the

injunctive relief Plaintiffs request on the basis that it improperly interferes with the discretion to

which UBH is entitled under the class member' plans.  Below, the Court addresses these

objections in connection with the four categories of injunctive relief sought by Plaintiffs.

### 1. Injunctive Relief Related to What Criteria May and May Not be Used to Make Future Coverage Determinations

#### a. Whether there is Irreparable Harm even though UBH Purportedly Has Adopted ASAM, LOCUS and CALOCUS

UBH argues that no injunctive relief is warranted with respect to what coverage criteria it

uses in the future because it has already adopted coverage criteria that are consistent with the

Court's FFCL and therefore Plaintiffs have not shown that they face irreparable harm.   The Court

rejects this argument.

"A district court cannot issue an injunction unless 'there exists some cognizable danger of

United States District Court
Northern District of California

1   recurrent violation.'" *United States v. Laerdal Mfg. Corp*., 73 F.3d 852, 854–55 (9th Cir. 1995)

2   (quoting *United States v. W. T. Grant Co*., 345 U.S. 629, 632 (1953)).  "[V]oluntary cessation of

3   allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case,

4   *i.e*., does not make the case moot."  *United States v. W. T. Grant Co*., 345 U.S. 629, 632 (1953).

5   Rather, a case is only moot "if the defendant can demonstrate that there is no reasonable

6   expectation that the wrong will be repeated . . .[and] [that] burden is a heavy one."  *Id*. (internal

7   quotation and citation omitted).   *Id*.

8         The court must make "appropriate findings supported by the record" that there is a danger

9   of recurrence when it awards injunctive relief. *Laerdal Mfg. Corp*., 73 F.3d at 854–55 (quoting

10   *Federal Election Comm'n v. Furgatch*, 869 F.2d 1256, 1263 (9th Cir.1989)).  The factors courts

11   may consider in determining whether there is a likelihood of recurrence are:

12              the degree of scienter involved; the isolated or recurrent nature of the
              infraction; the defendant's recognition of the wrongful nature of his
13              conduct; the extent to which the defendant's professional and
              personal characteristics might enable or tempt him to commit future
14              violations; and the sincerity of any assurances against future
              violations.
15

16   *Furgatch*, 869 F.2d at 1263, n. 5 (citations omitted).

17         Here, the Court finds that there is a significant danger of recurrent violation.  As the Court

18   set forth in detail in its FFCL, UBH applied Guidelines that were inconsistent with the class

19   members' plans year after year, and the flaws in those Guidelines were "pervasive."  The

20   violations were in no way "isolated."  *See id.*  Further, UBH's scienter supports the conclusion that

21   there is a danger of recurrence.  In particular, at trial, many of UBH's witnesses were evasive and

22   even tried to mislead the Court as to the meaning of the Guidelines.  UBH also knowingly misled

23   Connecticut regulators about the scope of coverage afforded under its Guidelines.  And the

24   evidence showed that UBH executives put in place business practices that ensured that financial

25   considerations would take precedence over faithful administration of class members' plans.  These

26   financial considerations may "tempt [UBH] to commit future violations."

27         Further, although it is premature for the Court to make any formal factual findings as to

28   whether UBH is faithfully applying ASAM, LOCUS and other third-party guidelines it says it is

United States District Court
Northern District of California

now using to make coverage determinations, the evidence UBH has presented is incomplete and inconclusive on this question. The Court notes that UBH relies, in part, on declarations from witnesses that the Court already found were not credible (Drs. Martorana and Triana). Moreover, Plaintiffs have presented evidence – including the 2019 Policy discussed above, which appears to directly contradict the Court's conclusions in the FFCL that all levels of care under ASAM reflect generally accepted standards of care – suggesting that there are serious questions as to whether UBH has abrogated its longstanding practice of making coverage determinations under overly restrictive criteria.

Therefore, the Court rejects UBH's argument that because it has adopted certain third-party guidelines to make coverage determinations Plaintiffs have failed to demonstrate a likelihood of irreparable harm if the Court does not award injunctive relief addressing the guidelines UBH must use in making coverage determinations.

> b. Whether Class Members Will Continue to be Covered by the Plans and Whether the Plans Will Continue to Require Coverage to be Consistent with Generally Accepted Standards of Care as Set forth by the Court in the FFCL

UBH asserts Plaintiffs have not demonstrated irreparable harm for the additional reason that there is no evidence in the record that any class members continue to be covered by plans administered by UBH or that those plans condition coverage on adherence to generally accepted standards of care. UBH also raises the possibility that going forward some class members' plans may decide to give a different meaning to this term. The Court rejects these arguments.

With respect to the first two arguments, it would have been impossible for Plaintiffs to introduce at trial evidence that did not yet exist to establish that at least some named Plaintiffs continue to be covered by plans that are administered by UBH and that they continue to require that coverage be consistent with generally accepted standards of care. Therefore, it is appropriate for the Court to consider the evidence Plaintiffs now offer in response to UBH's objections showing that those objections are unfounded. Given that UBH has in its possession all of the class members' plans and certainly knew that some of the named Plaintiffs continue to be covered by plans that it administers – and the terms class members' plans contain – UBH's assertion of these arguments shows a lack of good faith that supports the Court's conclusions as to the likelihood of

United States District Court
Northern District of California

1    future violations.  The Court also notes that UBH stipulated at the hearing that there are still

2    named Plaintiffs who are covered by UBH plans with medical necessity provisions, as discussed

3    above.

4            As to the possibility that some future plan may ascribe a new meaning to the term

5    "generally accepted standards of care," the Court finds this argument to be speculative as UBH has

6    not pointed to a single plan that has adopted some alternative meaning for this term during the

7    class period or currently.  Moreover, for years UBH has used uniform guidelines to interpret this

8    term, even though it is used in thousands of different plans, reflecting the belief that the meaning

9    of the term is the same in all of the class members' plans. UBH's longstanding practice of

10   applying uniform criteria to determine whether members' coverage is consistent with generally

11   accepted standards of care, which continues to the present, suggests this argument also was not

12   made in good faith.

13           c.   Whether the Court Should Order that UBH Apply Specific Criteria

14           UBH argues that the Court may not order it to apply specific coverage criteria – even if

15   they are the same criteria it has already decided to adopt – because there are multiple possible

16   guidelines that would be consistent with generally accepted standards of care as the Court defined

17   that term and UBH should be permitted to exercise its discretion in deciding which of those

18   criteria to use.  The Court rejects this argument for two reasons.

19           First, UBH has abused its discretion for many years and the Court has found that there is a

20   significant danger that it will continue to do so for the reasons stated above.  Allowing UBH to

21   craft new guidelines rather than adopting guidelines developed by professional associations that

22   do not have the financial incentives that caused UBH to develop flawed guidelines would

23   dramatically increases the opportunities for UBH to engage in continued violations and the

24   likelihood that it would do so.  Under these circumstances, the injunctive relief that Plaintiffs

25   request is necessary to provide an adequate remedy and will also allow for Court oversight to

26   prevent future violations.

27           Second, the Court notes that as a practical matter, ordering UBH to apply criteria that it has

28   already adopted of its own volition does not significantly interfere with UBH's discretion in

United States District Court
Northern District of California

determining coverage criteria.  It simply brings UBH's use of those criteria within the scope of the Court's authority for the purposes of enforcement.

### d.   Length of the Court's Injunction

UBH argues that the Court's injunction should not be indefinite because generally accepted standards of care evolve over time.  In light of the evidence introduced at trial, which shows that generally accepted standards of care evolve slowly, the Court finds that an appropriate term for the injunction is ten years.  After five years, however, the Court will consider, following appropriate discovery and briefing, whether the injunction should be kept in place for another five years.  At that point, the burden will be on UBH to establish that the injunctive relief that is awarded herein has accomplished its objective and is no longer necessary.

### e.   "Faithful application of the ASAM Criteria"

UBH contends the language requiring faithful application of ASAM Criteria will require it to cover substance use residential treatment at all of the ASAM levels of care, regardless of whether a class members' plan covers that level of care.  The Court agrees with Plaintiffs that the sentence to which they object contains no such requirement and therefore the Court rejects this argument.

### f.   "Substantively the Same Coverage Criteria"

UBH objected to Plaintiffs' original proposed remedies order on the basis that it did not clearly identify the criteria that UBH would not be permitted to use in making future coverage determinations.  Plaintiffs subsequently proposed language that is more precise for this section of the proposed remedies order and the Court finds that this revised language meets the requirements of Rule 65(d) of the Federal Rules of Civil Procedure.  Therefore, this argument is moot.

For the reasons discussed above the Court awards injunctive relief governing the criteria UBH will be required to apply to coverage determinations as set forth in the final section of this Order.  This relief is awarded under Rule 23(b)(1)(A) and 23(b)(2) of the Federal Rules of Civil Procedure.

United States District Court
Northern District of California

### 2. Injunctive Relief Requiring Changes to UBH Business Practices/Corporate Structure

UBH objects to Plaintiffs' requests for injunctive relief related to the implementation of firewalls and other mechanisms to ensure that UBH's financial concerns will not taint the development of future guidelines. While Plaintiffs' concerns are understandable in light of UBH's past practices, the Court declines to award such injunctive relief at this time. First, to the extent that UBH is shifting to use of guidelines developed by third parties – and will be required under the Court's injunction to faithfully apply these guidelines going forward – that injunctive relief may render unnecessary injunctive relief aimed at insulating the guideline development process from financial considerations. Second, although evidence was presented at trial that financial considerations were an important factor in UBH's adoption of criteria that were inconsistent with the terms of class members' plans, the Court did not make findings one way or the other as to whether the financial metrics used by UBH administrators may also allow it to avoid wasteful and ineffective treatment, as UBH contends. The Court therefore declines to award this form of injunctive relief.

### 3. Injunctive Relief Requiring Training of Clinicians and Top Level Executives

UBH does not object to conducting training of its employees about the guidelines to be used for reprocessing and the duties of an ERISA fiduciary. However, it argues that injunctive relief *requiring* such training is unnecessary because it has already stated its intention to conduct such training. Like its argument that there is no irreparable harm because UBH has changed its guidelines, the mere fact that UBH has agreed to conduct training is not sufficient to defeat Plaintiffs' showing of irreparable harm. As discussed above, Plaintiffs have shown irreparable harm based on the danger that UBH will continue to violate ERISA by making coverage determinations that are inconsistent with the terms of their plans. That danger applies in the context of reprocessing and in adjudicating new claims. The training Plaintiffs ask the Court to order is aimed at ensuring that the individuals who are making coverage decisions understand their obligations under ERISA. It is an important element of the remedial plan and making it enforceable will offer protection for Plaintiffs that is appropriate in light of UBH's conduct.

The Court also rejects UBH's argument that the section of the injunction requiring UBH

1   to conduct training is impermissibly vague.  Therefore, the Court concludes that Plaintiffs are

2   entitled to the injunctive relief they request with respect to training.  This relief is awarded under

3   Rule 23(b)(1)(A) and 23(b)(2) of the Federal Rules of Civil Procedure.

### 4.  Injunctive Relief Requiring Disclosures to Plan Sponsors and Regulators

5   UBH argues that there is no need to issue an injunction requiring it to disclose what the

6   Court has ordered with respect to remedies because its FFCL and the remedies order are matters of

7   public record and therefore such relief is unnecessary.  The Court agrees and therefore denies this

8   request.

9   **VI.   SPECIAL MASTER**

### A.   Background

### 1.   Motion

12   Plaintiffs contend the reprocessing remedy is only likely to be effective if it is overseen by

13   one or more special masters and that the Court is authorized to appoint a special master under both

14   Rule 53(a)(1)(C) of the Federal Rules of Civil Procedure and ERISA.  *Id.* at 27-28 (citing

15   *Donovan*, 716 F.2d at 1236-1237).  Plaintiffs further assert that appointment of a special master is

16   particularly appropriate here because UBH's breach of its fiduciary duties to the classes included a

17   conflict of interest.  *Id.* (citing *Huizinga v. Genzink Steel Supply & Welding Co*., No. 1:10-CV-

18   223, 2013 WL 4511291, at *12 (W.D. Mich. Aug. 23, 2013), amended in part, No. 1:10-CV-223,

19   2013 WL 12249781 (W.D. Mich. Oct. 11, 2013)).  Plaintiffs argue that ERISA even permits

20   courts to remove plan fiduciaries who have breached their fiduciary duties, though Plaintiffs do

21   not request that remedy here.  *Id.* at 28-29 (citing 29 U.S.C. § 1109(a); Restatement (Third) of

22   Trusts § 37, cmt. D (2003);  *Martin v. Feilen*, 965 F.2d 660, 673 (8th Cir. 1992); *Donovan v.*

23   *Bryans*, 566 F. Supp. 1258, 1268 (E.D. Pa. 1983)).

24   Plaintiffs ask that a special master be appointed to oversee UBH's compliance with both

25   reprocessing and prospective injunctive relief and that the special master be authorized to appoint

26   one or more associate special masters as necessary, such as a psychiatrist with special expertise in

27   mental health and substance use disorder.  *Id.* at 29 (citing *Triple Five of Minnesota, Inc. v. Simon*,

28   No. CIV.99-1894(PAM/JGL), 2003 WL 22859834, at *2 (D. Minn. Dec. 1, 2003) ("The special

United States District Court
Northern District of California

master may hire accountants, real estate consultants, attorneys, or others as necessary to assist him in carrying out his duties under this Order."); Order at 1, *State of Illinois v. City of Chicago*, Case No. 17-cv-6260 (N.D. Ill. Apr. 1, 2019), ECF No. 725 (noting that the special master will "manage a large team of deputy monitors, subject matter experts, and community engagement specialists"); Academy of Court Appointed Masters, Sample Appointment Order 3: Where Master Will Serve as Monitor in a Class Action, Appointing Special Masters And Other Judicial Adjuncts: A Handbook for Judges and Lawyers (2d ed.), at 44 ¶ 11 ("The Monitor shall have the authority to employ and/or contract with all necessary attorney, paralegal, administrative, and clerical staff within a budget cap approved by the Court."), available at https://www.uww-adr.com/zupload/zgraphcontent/ uploads/pdfs/acambenchbook-11-20-09.pdf).  They propose that within 14 days of the Court's order on remedies, they will submit three candidates for the special master position, along with a detailed order of appointment.  *Id.* at 29 n. 28.

With respect to reprocessing, Plaintiffs ask that the special master be authorized "to take any steps they deem necessary to ensure UBH's faithful compliance with the remand order, including but not limited to reviewing some or all of the reprocessed claims and underlying documentation to ensure UBH's faithful application of the guidelines ordered by the Court; ensuring adequate procedures are in place for class members to submit additional records to complete their administrative records; and reporting to the Court on the status of reprocessing and UBH's compliance therewith." *Id.* at 30.   With respect to training and internal policy remediation (the prospective injunctive relief), Plaintiffs ask that the special master be authorized to oversee UBH's training program and changes in UBH business practices.

### 2.  Opposition

UBH opposes the appointment of a special master, arguing that appointing a special master is "the exception and not the rule" under Rule 53.  Opposition at 52 (citing *New York, S. & W. R. Co. v. Follmer*, 254 F.2d 510, 511 (3d Cir. 1958) ("references to masterships, although provided for by the federal rules, should be very sparingly used by district judges.");  *Bartlett-Collins Co. v. Surinam Nav. Co.*, 381 F.2d 546, 550 (10th Cir. 1967)). It contends Plaintiffs' request for a special master is "unsupported, as there are no complicated questions of fact that require a special

United States District Court
Northern District of California

master's attention at this time." *Id.* It further asserts that there is no evidence that it has failed to comply with prior court orders, and if Plaintiffs believe at some point in the future that UBH is not adopting appropriate guidelines or conducting the reprocessing in a manner that is consistent with the FFCL they may request appointment of a special master at that time. *Id.* According to UBH, appointment of a special master is unjustified because it is a sophisticated entity capable of managing its own compliance. *Id.* at 53 (citing *Rolland v. Cellucci*, 198 F. Supp. 2d 25, 45 (D. Mass. 2002), aff'd sub nom. *Rolland v. Romney*, 318 F.3d 42 (1st Cir. 2003); *E.E.O.C. v. Prospect Airport Servs., Inc*., No. 2:05-CV-01125-KJD, 2012 WL 3042693, at *4 (D. Nev. July 25, 2012)).

UBH argues further that there is no support for Plaintiffs' argument that the special master should be permitted to appoint associate special masters who are psychiatrists. UBH argues that the "matter will be remanded to UBH to exercise its discretion under the ERISA plans" and "[t]hat discretion cannot be usurped by 'associate special masters' just because they also have clinical expertise." *Id.* at 53. Finally, it contends Plaintiffs' proposed remedies order is flawed with respect to the procedures for appointing a special master under Rule 53, which permits *any* party to propose a special master and requires that all parties are given notice and an opportunity to be heard as to the adequacy of the proposed special master. The proposed order is inadequate, UBH contends, because it specifies that Plaintiffs will submit a filing that identifies three candidates for the position of special master but does not include any provision allowing UBH to propose candidates or to respond to Plaintiffs' proposed candidates. *See* Plaintiffs' Proposed Remedies Order § V.

### 3.  Reply

Plaintiffs contend the record in this case amply demonstrates that a special master is required to ensure UBH complies with the Court's order with respect to reprocessing and injunctive relief. Reply at 79. It argues that UBH's reliance on *New York, S. & W. R. Co. v. Follmer*, 254 F.2d 510, 511 (3d Cir. 1958) for the proposition that appointment of a special master is "the exception and not the rule" is misplaced because at the time that case was decided, Rule 53 was more restrictive than it is now and expressly stated that appointment of a special master was

United States District Court
Northern District of California

1   "the exception and not the rule."  *Id.* (citing *La Buy v. Howes Leather Co.*, 352 U.S. 249, 254

2   (1957)).  It also argues that neither *Rolland v. Cellucci* nor *E.E.O.C. v. Prospect Airport Services*

3   supports its assertion that oversight is not necessary because in both of those cases the defendants

4   had largely agreed to the remedial measures at issue, in contrast to UBH here.  *Id.* at 80.

5       Plaintiffs agree with UBH that the Court's remedies order should be consistent with Rule

6   53.  *Id.* at 81.  In Plaintiffs' Post-Hearing Revised Proposed Remedies Order, Plaintiffs revised the

7   language of Section V. to conform to the procedures specified in Rule 53.

8       **B.   Discussion**

9       Rule 53(a)(1)(C) of the Federal Rules of Civil Procedure allows for the appointment of a

10   special master to "address pretrial and posttrial matters that cannot be effectively and timely

11   addressed by an available district judge or magistrate judge of the district."  The Court concludes

12   that requirement is met here.  UBH abused its discretion in administering the class members'

13   plans, placing its financial interests before its duties to plan members and depriving members of

14   their right to determinations of coverage that were consistent with their plans.  UBH misled

15   regulators.  Many of the high level UBH executives who testified at trial were evasive and offered

16   testimony that was not credible.  And UBH has opposed virtually every form of relief Plaintiffs

17   request.  Under these circumstances, oversight of the reprocessing remedy and prospective

18   injunctive relief is necessary to ensure that UBH complies with the Court's remedies order.

19   Furthermore, the size of the class and the magnitude of the undertaking, especially with respect to

20   reprocessing, supports the appointment of a special master.

21       The Court finds that it is premature to decide whether associate special masters will be

22   needed but will as part of the process of appointing a special master establish a process for the

23   special master and/or the parties to request the appointment of associate special masters if they

24   believe it is appropriate.

25   **VII.   RETENTION OF JURISDICTION**

26       **A.   Background**

27       Plaintiffs ask the Court to retain jurisdiction over this action until the reprocessing remedy

28   is complete and the special master has completed their oversight over any other injunctive relief

83

United States District Court
Northern District of California

awarded by the Court.  Motion at 31 (citing *Lancaster v. U.S. Shoe Corp.*, 934 F. Supp. 1137, 1170 (N.D. Cal. 1996) (remanding to plan administrator under ERISA  for redetermination of benefits eligibility under proper standard and retaining jurisdiction indefinitely) (citing *Copeland v. Carpenters Dist. Council of Houston & Vicinity Pension Fund*, 771 F. Supp. 807, 810 (E.D.Tex.1991) (remanding ERISA action to plan administrator for further proceedings and retaining jurisdiction "until such time as the court determines that all matters arising out of [the] action have been finally disposed of"))).

UBH argues that it is not necessary for the Court to retain jurisdiction "beyond the time necessary to approve the new guidelines and oversee the notice period that will be followed by remand to the administrator because in this case Plaintiffs have relinquished claims for monetary recovery.  Opposition at 56-57.  UBH asserts that *Lancaster* is not on point because in that case, Judge Brazil retained jurisdiction in order to determine attorneys' fees and prejudgment interest on the judgment that would ultimately ensue.  *Id.*

Plaintiffs reject UBH's argument in their Reply brief, arguing that there is no rule providing that a court may retain jurisdiction over the remedial process only if the plaintiffs have sought monetary relief and that *Lancaster* states no such limitation.  Reply at 78. They assert that the Court may – and should – retain jurisdiction to ensure that UBH complies with the Court's remedies order so that Plaintiffs need not file a new lawsuit or ask to reopen the case if UBH does not comply.  *Id.*

### B.    Discussion

For the same reasons the Court finds that appointment of a special master is appropriate, it also concludes that retention of jurisdiction over this case to ensure UBH's compliance with the remedies ordered by the Court is warranted.  Therefore, the Court will retain jurisdiction over this action for the duration of the injunction, that is, ten years, unless the injunction is terminated sooner, as set forth above.

## VIII.   NOTICE TO CLASS MEMBERS

Plaintiffs ask the Court to give notice of the Court's findings on liability, the remedies it awards and any actions class members need to take, under Rule 23(d)(1)(B), which provides that

"[i]n conducting an action under [Rule 23], the court may issue orders that . . . require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class members of . . . any step in the action."   UBH does not object to Plaintiffs' request.  Therefore, the Court orders that notice be sent to the class members informing them of the Court's liability findings and the remedies is has awarded.  The parties should meet and confer on a schedule for submitting proposed notices for Court approval and for accomplishing the required notice; they should submit their proposed schedule (which should be joint to the extent possible) within 14 days of this Order.   To the extent that the Court has also ordered the parties to submit a proposal for handling the class notices required in connection with its Order addressing issues of decertification (concurrently filed), the Court requests that the parties submit a single proposed schedule that will address all issues related to class notices.

## IX.    CONCLUSION

For the reasons set forth above and in the Court's February 28, 2019 FFCL and pursuant to its authority under ERISA, 29 U.S.C. §§ 1132(a)(1)(b), (a)(3)(a) and (a)(3)(b), and Federal Rules of Civil Procedure 23(d) and 53, **THE COURT HEREBY ORDERS:**

## I.    DECLARATORY JUDGMENT

The Court hereby DECLARES as follows:

1. UBH, which also operates as OptumHealth Behavioral Solutions, administers mental health and substance use disorder benefits for commercial welfare benefit plans. In that capacity, UBH exercises discretion with respect to the administration of benefits, and is a fiduciary with respect to the plans it administers.

2. UBH has developed Level of Care Guidelines and Coverage Determination Guidelines (collectively, "Guidelines") that it uses for making coverage determinations.

3. UBH issued an adverse benefit determination to each class member[13] that was based, in whole or in part, on UBH's Guidelines.

---

[13] The final class definitions for the Wit Guidelines Class, the Alexander Guidelines Class, and the Wit State Mandate Class, as well as the applicable Class Periods, are set forth in the Court's Order on UBH's decertification motion, concurrently filed herewith.  The members of the three classes are referred to collectively herein as the "class members."

United States District Court
Northern District of California

4.  UBH's Guidelines are not terms of the class members' plans.

5.  The terms of the plans of each class member of the Wit and Alexander Guidelines Classes required, as one condition of coverage, that services be consistent with generally accepted standards of care. UBH uses its Guidelines to interpret and apply those plan terms, and acts in a fiduciary capacity when it develops, revises and applies its Guidelines.

6.  The class members had a right, under ERISA and their plans, to have UBH adjudicate whether requested services met that condition according to criteria that were, in fact, consistent with generally accepted standards of care.

7.  The following standards are generally accepted in the field of mental health and substance use disorder treatment and placement:

a. Effective treatment requires treatment of the individual's underlying condition and is not limited to alleviation of the individual's current symptoms.

b. Effective treatment requires treatment of co-occurring behavioral health disorders and/or medical conditions in a coordinated manner that considers the interactions of the disorders and conditions and their implications for determining the appropriate level of care.

c. Patients should receive treatment for mental health and substance use disorders at the least intensive and restrictive level of care that is safe and effective. Placement in a less restrictive environment is appropriate only if it is likely to be safe and just as effective as treatment at a higher level of care in addressing a patient's overall condition, including underlying and co-occurring conditions.

d. When there is ambiguity as to the appropriate level of care, the practitioner should err on the side of caution by placing the patient in a higher level of care.

e. Effective treatment of mental health and substance use disorders includes services needed to maintain functioning or prevent deterioration.

f. The appropriate duration of treatment for behavioral health disorders is based on the individual needs of the patient; there is no specific limit on the duration of such treatment.

g. The unique needs of children and adolescents must be taken into account when making level of care decisions involving their treatment for mental health or substance use

86

1  disorders.

2  h. The determination of the appropriate level of care for patients with mental health and/or

3  substance use disorders should be made on the basis of a multidimensional assessment that

4  takes into account a wide variety of information about the patient.

5  8. The UBH Guidelines at issue in this case – *i.e.*, those listed in Trial Exhibit 880 (attached

6  hereto as Exhibit A) – are significantly and pervasively more restrictive than generally

7  accepted standards of care, in the following ways:

8  a. UBH's Guidelines place excessive emphasis on acuity and crisis stabilization, while

9  ignoring the effective treatment of members' underlying conditions.

10  b. UBH's Guidelines fail to address the effective treatment of co-occurring conditions.

11  c. UBH's Guidelines fail to err on the side of caution in favor of higher levels of care when

12  there is ambiguity and, instead, push patients to lower levels of care where such a

13  transition is safe, even if the lower level of care is likely to be less effective.

14  d. UBH's Guidelines preclude coverage for treatment to maintain level of function.

15  e. UBH's Guidelines from 2014 to 2017 preclude coverage based on lack of motivation.

16  f. UBH's Guidelines fail to address the unique needs of children and adolescents.

17  g. UBH's Guidelines use an overly broad definition of "custodial care," coupled with an

18  overly narrow definition of "active" treatment and "improvement."

19  h. UBH's Guidelines impose mandatory prerequisites for coverage rather than determining

20  the appropriate level of care based on a multidimensional approach.

21  9. For these reasons, as to each member of the Wit Guideline Class, each and every adverse

22  benefit determination made by UBH based in whole or in part on any of the Guidelines

23  listed in Exhibit A between May 22, 2011 and June 1, 2017, was wrongful and made in

24  violation of plan terms and ERISA.

25  10. For these reasons, as to each member of the Alexander Guideline Class, each and every

26  adverse benefit determination made by UBH based in whole or in part on any of the

27  Guidelines listed in Exhibit A between December 4, 2011 and June 1, 2017, was wrongful

28  and made in violation of plan terms and ERISA.

United States District Court
Northern District of California

11.  The UBH Guidelines at issue in this case also deviate from the ASAM Criteria, published by the American Society for Addiction Medicine, in a multitude of ways, including by failing to provide for coverage of residential treatment at levels 3.1, 3.3 and 3.5.

12. Since August 18, 2011, Illinois law has required insurers to use the ASAM Criteria to make coverage determinations for treatment of substance abuse disorders.

13. UBH violated Illinois law between August 18, 2011 and January 1, 2016 because UBH did not use the ASAM Criteria to administer claims for substance use disorder treatment and UBH's own Guidelines were not consistent with the ASAM Criteria.

14. Since October 1, 2013, Connecticut law has required insurers to use the ASAM Criteria, or a set of criteria an insurer "demonstrates to the Insurance Department is consistent with" the ASAM Criteria.

15. UBH violated Connecticut law throughout the Class Period because UBH did not use the ASAM Criteria to administer claims for substance use disorder treatment and UBH's own Guidelines were not consistent with the ASAM Criteria.

16. The "crosswalks" UBH submitted to Connecticut regulators in 2013 and 2015 to demonstrate its Guidelines were consistent with the ASAM Criteria materially mischaracterized the UBH Guidelines by stating that "the criteria from all 3 ASAM levels [3.1, 3.3 and 3.5] are included in the admission criteria for Reside[n]tial Rehabilitation." At the time these statements were made to Connecticut regulators, UBH knew them to be false.

17. Since July 10, 2015, Rhode Island law has required that payors including insurers "rely upon the criteria of the American Society of Addiction Medicine when developing coverage for levels of care for substance-use disorder treatment."  27 R.I. Gen. Laws § 27-38.2-1(g) (2015); 2015 R.I. Pub. Laws 15-236 (15-H 5837A).

18. UBH violated Rhode Island law from July 10, 2015 through the end of the Class Period because UBH did not use the ASAM Criteria to administer claims for substance use disorder treatment and UBH's Guidelines were not "consistent with" the ASAM Criteria.

19.  Throughout the entire Class Period, Texas Law required insurance companies to apply

United States District Court
Northern District of California

criteria issued by the Texas Department of Insurance ("TDI Criteria") in making medical necessity determinations with respect to claims for substance use disorder treatment when an individual's plan was governed by Texas law and treatment was sought from a provider or facility in Texas. 28 Tex. Admin. Code § 3.8011 (1991).

20. UBH violated Texas law during the Class Period by applying its own Guidelines rather than applying solely the TDI Criteria to claims covered by the Texas statute.

21. The Wit State Mandate Class members' plans and applicable state law required UBH to use specific state-mandated criteria to make medical necessity determinations. These class members, therefore, had a right, under ERISA and their plans, to have UBH adjudicate their claims solely according to the state-mandated criteria. UBH did not do so, thereby violating ERISA and these class members' plans.

22. As to the Wit State Mandate Class, each and every adverse benefit determination made by UBH based in whole or in part on the Guidelines listed in Exhibit A within the following periods was wrongful and made in violation of plan terms, ERISA, and the applicable state law:

   a. Between May 22, 2011 and June 1, 2017 for plans governed by Texas law;

   b. Between August 18, 2011 and January 1, 2016 for plans governed by Illinois law;

   c. Between October 1, 2013 and June 1, 2017 for plans governed by Connecticut law; and

   d. Between July 10, 2015 and June 1, 2017 for plans governed by Rhode Island law.

23. UBH's Guideline development process was tainted by UBH's financial interests throughout the Class Period.

24. UBH is a fiduciary within the meaning of ERISA, 29 U.S.C. § 1001 *et seq*.

25. As a fiduciary, UBH owes fiduciary duties to the participants and beneficiaries of the plans UBH administers, including the duties set forth in 29 U.S.C § 1104(a)(1).

26. For all the reasons stated above and in the Court's FFCL, UBH breached its fiduciary duties to the class members, including its obligations under 29 U.S.C. §§ 1104(a)(1)(A), (a)(1)(B), and (a)(1)(D), when it developed, revised and applied the Guidelines.

## II.   NOTICE TO THE CLASS MEMBERS

It is hereby ORDERED that the parties will confer on the process for giving notice to class members and the content of one or more notices to be sent to all class members to inform them that Plaintiffs succeeded on the merits of their claims, describe the forms of relief ordered by the Court, and provide detailed information on the procedures governing the reprocessing remedy and how class members may submit additional information. The Court further directs the parties to submit, within 14 days after entry of this Order, a joint filing containing a schedule and proposed process for giving such notice to class members, as well as a proposed schedule for obtaining Court approval of the content of the notices that will be sent to class members.  In developing a schedule for giving notice to class members, the parties should take into account the implications, if any, of the Court's conclusions in the concurrently filed Order addressing decertification issues ("the Decertification Order") that the classes must be decertified in some respects, requiring notice to some class members that they will no longer be class members when the decertification order goes into effect.

## III.   REMAND TO THE ADMINISTRATOR FOR REPROCESSING

It is hereby ORDERED that each and every adverse benefit determination meeting the criteria for Class Membership in this case (each one, a "Remanded ABD") is hereby remanded to UBH to be reprocessed in a manner consistent with the Court's FFCL and this Order. Such reprocessing shall be completed as follows, all at UBH's expense:

### A.   Completion of the Administrative Record

1. Class members and/or their healthcare providers may (but are not required to) submit to UBH additional evidence relevant to the services for which coverage was denied in the Remanded ABD, including but not limited to (i) medical records and/or other clinical information concerning the request for coverage at the proposed level of care; and/or (ii) records substantiating services received at the requested level of care after a pre-service or concurrent denial, including any bills related thereto, whether or not the class member submitted a post-service claim to UBH for such services.

2. UBH shall set up user-friendly processes to enable class members to submit such

United States District Court
Northern District of California

additional information via mail; fax; and/or an online web portal, at the class member's option, and to ensure that any such information is promptly added to the class member's administrative record. The Special Master (discussed in § V, below) shall review and approve the processes to ensure their adequacy for this purpose.

3. A class member's submission shall be deemed timely if it is postmarked or received by UBH within 90 days after the Class Administrator sends the Class Notice pursuant to § II above. The Special Master shall have the discretion to extend this time period for all class members, for a subset of class members, or for a particular class member.

4. If a class member's administrative record remains incomplete after the close of this period, such that UBH is unable to make specific findings applying the Court-approved criteria, UBH shall not issue an adverse benefit determination unless UBH first makes a good-faith effort to contact the provider listed on the relevant request for coverage and attempts to collect the additional necessary clinical information from the provider. The Special Master shall determine what steps are sufficient to constitute a good-faith effort for these purposes.

**B.   Criteria to be Applied Upon Remand**

On remand, UBH will re-evaluate only whether the proposed treatment at the requested level of care was consistent with generally accepted standards of care. In order to make this redetermination, UBH will conduct a full and fair review of all of the available clinical information for all services received by the class member at the requested level of care, regardless of whether the member submitted a post-service claim for such services prior to this Order, and will apply the following criteria, which the Court has found are consistent with generally accepted standards of care:

1. To re-evaluate requests for coverage for the treatment of class members with a primary diagnosis of substance use disorder, UBH will apply the most recent edition of the ASAM Criteria, the 2013 edition of which was admitted at trial as Trial Exhibit 662. When re-evaluating requests for residential treatment of a substance use disorder, UBH shall approve coverage if the member qualified for services at any of the sub-levels identified in the ASAM Criteria (*i.e.*, Levels 3.1, 3.3, 3.5, and 3.7).

United States District Court
Northern District of California

2.  To re-evaluate requests for coverage of treatment for class members who were adults at the time of the relevant treatment with a primary diagnosis of a mental health condition, UBH will apply the latest edition of the LOCUS, the 2010 edition of which was admitted at trial as Trial Exhibit 653.

3.  To re-evaluate requests for coverage of treatment for class members who were between the ages of 6 and 18 at the time of the relevant treatment and had a primary diagnosis of a mental health condition, UBH will apply the most recent edition of the CASII, the 2014 edition of which was admitted at trial as Trial Exhibit 645.

4.  To re-evaluate requests for coverage of treatment for class members who were ages 5 or under at the time of the relevant treatment and had a primary diagnosis of a mental health condition, UBH will apply the most recent edition of the ECSII.

**C.    No Retaliation**

In reprocessing the class members' requests for coverage on remand, UBH is prohibited from: (i) denying a request on any ground other than the lack of medical necessity or the clinical inappropriateness of the services, as determined according to the criteria required by the Court in § III.B of this Order, except exclusions or limitations UBH explicitly cited in its original written notification of denial to the class member; (ii) re-evaluating any coverage determination made with respect to a class member other than the Remanded ABD; and (iii) seeking to recoup or offset, from the class member or their provider(s), any amounts UBH pays pursuant to this Order, including by withholding or reducing any benefits authorized in connection with any subsequent request for coverage by the class member.

**D.    Procedures Following Re-Determination**

Following a full and fair review, UBH shall issue its benefit determination on remand, as follows:

### 1.  Procedures in the Event of a Denial or Partial Denial on Remand

If, following a full and fair review of all of the available information and application of the relevant criteria under § III.B of this Order, UBH determines in good faith that coverage is not available to the class member in whole or in part, UBH will issue an adverse benefit

determination that complies strictly with 29 C.F.R. § 2560.503-1.

    a.   UBH's determination shall be considered an initial adverse benefit determination for purposes of ERISA and its implementing regulations, including 29 C.F.R. § 2560.503-1, and the class member shall be entitled to avail himself or herself of all rights to administrative appeal, including external appeal, available pursuant to ERISA and the class member's plan and/or any causes of action arising from such adverse benefit determination.

    b.   UBH's written notice of the determination shall include specific and detailed findings supporting the determination, including citations to the clinical evidence and the specific provisions of the applicable criteria on which UBH's conclusion is based. The notice shall also include specific instructions for appealing the determination, including, where applicable, instructions on how to obtain an external appeal, and shall inform the class member of his or her right to file an ERISA lawsuit challenging the new determination after the administrative appeals are exhausted.

### 2. Procedures in the Event of Approval of Coverage on Remand

If, following a full and fair review of all of the available information and application of the relevant criteria under § III.B of this Order, UBH determines in good faith that the requested services at the requested level of care were consistent with generally accepted standards of care and therefore coverage should be approved on remand, in whole or in part:

    a.   UBH will notify the class member of its determination.

    b.   UBH's written notice of the determination shall include specific and detailed findings supporting the determination, including citations to the clinical evidence and the specific provisions of the applicable criteria on which UBH's conclusion is based.

    c.   UBH will then calculate the amount of benefits the class member is owed under the terms of the applicable plan in effect at the time the request for coverage was originally received.

        i.   In calculating the amount of benefits owed, UBH shall include benefits owed for all services the class member received at the level of care at issue in the Remanded ABD that UBH finds are consistent with the criteria in § III.B, above, regardless of

United States District Court
Northern District of California

United States District Court
Northern District of California

whether the class member submitted a post-service claim for them prior to this Order. UBH is not required to cause benefits to be paid for services the class member received at a level of care that is different than the one at issue in the Remanded ABD.

ii.   In calculating the amount of benefits owed, UBH shall apply the financial terms contained in the class member's plan in effect as of the date the Remanded ABD was issued, including deductibles, out-of-pocket maximums, co-pays or coinsurance, coordination of benefits and subrogation. For in-network claims, UBH shall apply the applicable contracted provider reimbursement rates in effect as of the date of the Remanded ABD. If, prior to this Order, a class member otherwise met his or her deductible or out-of-pocket maximum for the plan or calendar year(s) at issue, UBH shall deem the deductible or maximum to have been met for purposes of calculating the amount of benefits owed.

iii.   UBH shall pay to the class member the calculated benefit amount, plus interest pursuant to § III.E of this Order, within 30 days after UBH adjudicates the claim. If UBH's records reflect that the class member assigned the benefits to another recipient, including through a direction to pay a provider, UBH shall make the benefit payment in accordance with its usual policies and practice relating to such assignments and/or directions. Where the benefit payment is made, in whole or in part, to one or more assignees, the recipient(s) of the payment shall also receive their proportionate share of the interest provided for under § III.E.

d.   UBH may not offset against the benefits calculated pursuant to § III.D.2.c of this Order any benefits previously paid to the class member or his or her provider in connection with other services requested by the member.

**E.     Interest**

UBH shall pay interest on all amounts it is required to pay pursuant to this Order, calculated at the rate provided under 28 U.S.C. § 1961 (the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System,

for the calendar week preceding the date of the judgment, compounded annually) from the date on which the bill for services from the provider who provided services to the class member initially came due until the date on which payment of benefits is made by UBH.

## F.   Certification and Reporting

Within 60 days after completing the reprocessing procedures described above for all class members, UBH shall submit to the Court the following: (1) a certification that it has reprocessed all Remanded ABDs according to the requirements set by the Court; and (2) a report on the outcome of reprocessing, including, at a minimum, the following information: (a) the total number of requests for coverage, by level of care, that were reprocessed pursuant to this Order; (b) the number of class members, by level of care, whose requests for coverage were denied on remand; (c) the number of class members, by level of care, whose adverse benefit determinations were reversed in whole or in part on remand (including how many were reversed in whole, and how many in part); and (d) the number of class members who received a benefit payment following reprocessing, and the lowest, highest, median, and average amount of the payments, by level of care.

## IV.   INJUNCTIVE RELIEF

### A.   UBH is hereby permanently ENJOINED from:

1. Using any of the Guidelines listed on Exhibit A to this Order when making coverage-related determinations as to whether services are consistent with generally accepted standards of care.

2. Using, when making coverage-related determinations as to whether services are consistent with generally accepted standards of care, any Guidelines that include, alone or in combination, as a mandatory prerequisite for coverage, any criterion listed on the Consolidated Claims Chart filed in this matter on February 12, 2018 (ECF No. 404-2), regardless of whether any such criterion is expressed in facially different language, except that UBH is not enjoined from using the following criteria: Common Criteria ¶¶ 4-5 from UBH's 2011 and 2012 Level of Care Guidelines; Common Criteria ¶ 6 from UBH's 2013 Level of Care Guidelines; and Continued Service Criterion ¶ 5 from UBH's 2012 and 2013

1     Level of Care Guidelines.

2    **B.**    **UBH is hereby ORDERED to:**

3   1.  Henceforth, and for a period of ten (10) years from the date of this Order – unless this term

4     is modified by the Court following discovery and briefing at the conclusion of the first five

5     years this injunction is in effect, make any and all coverage-related determinations under

6     ERISA-governed plans about whether services are consistent with generally accepted

7     standards of care according to criteria that are consistent with generally accepted standards

8     of care, as established in this Court's FFCL, and the requirements of any applicable state

9     law.

10   a.  Unless applicable state law requires UBH to use different criteria, UBH shall use the

11     following criteria:

12       i.   With respect to requests for coverage for the treatment of class members with a

13           primary diagnosis of substance use disorder, the most recent edition of the ASAM

14           Criteria. Faithful application of the ASAM Criteria to requests for coverage of

15           residential treatment requires consideration of the criteria applicable to each of the

16           sub-levels of residential treatment identified in the ASAM Criteria (*i.e*., Levels 3.1,

17           3.3, 3.5, and 3.7).

18       ii.   With respect to requests for coverage of treatment of adults with a primary

19           diagnosis of a mental health condition, the most recent edition of LOCUS

20           published by the American Association of Community Psychiatrists.

21      iii.   With respect to requests for coverage of treatment of children and adolescents (ages

22           6 through 18) who have a primary diagnosis of a mental health condition, the most

23           recent edition of the CASII, published by the American Academy of Child and

24           Adolescent Psychiatrists.

25      iv.   With respect to requests for coverage of treatment of children and adolescents (ages

26           5 or younger) who have a primary diagnosis of a mental health condition, the most

27           recent edition of the ECSII, published by the American Academy of Child and

28           Adolescent Psychiatrists.

United States District Court
Northern District of California

b.  If applicable state law mandates the use of different criteria from those set forth above, UBH shall faithfully apply the state-mandated criteria.

2.  With the oversight and approval of the Special Master, UBH shall promptly develop and implement a program for training UBH's Care Advocates, Peer Reviewers, external clinical consultants, and any other personnel who make or have input into clinical coverage determinations, on the faithful application of the coverage criteria prescribed in § III.B, above.

a.  UBH shall complete its training of any such personnel who will make or have input into reprocessing of coverage determinations on remand (see § III, above), to the satisfaction of the Special Master, within 60 days following the Court's appointment of the Special Master. The Special Master shall report to the Court when this initial phase of training is complete.

b.  UBH shall complete its training of any other personnel covered by this subsection, to the satisfaction of the Special Master, within 90 days following the Court's appointment of the Special Master. The Special Master shall report to the Court when this second phase of training is complete.

c.  UBH's training program shall include plans for training new personnel as they may be hired in the future and for refreshing the training of existing employees on at least an annual basis. UBH shall be required to obtain the approval of the Special Master on the design of UBH's ongoing training program within 90 days following the Court's appointment of the Special Master.

3.  With the oversight of the Special Master, promptly develop and implement a program, to train UBH's Care Advocates, Peer Reviewers, external clinical consultants, any other personnel who make or have input into coverage determinations, and all senior and executive management on UBH's duties under ERISA, including what it means to be an ERISA fiduciary and to administer benefit plans solely in the interests of participants and beneficiaries, as well as the need to comply with plan terms.

a. UBH shall complete its training of any such personnel who will make or have input into

United States District Court
Northern District of California

reprocessing of coverage determinations on remand (see § III, above), to the satisfaction of the Special Master, within 60 days following the Court's appointment of the Special Master.  The Special Master shall report to the Court when this initial phase of training is complete.

b. UBH shall complete its training of any other personnel covered by this subsection, to the satisfaction of the Special Master, within 90 days following the Court's appointment of the Special Master. The Special Master shall report to the Court when this second phase of training is complete.

c. UBH's training program shall include plans for training new personnel as they may be hired in the future and for refreshing the training of existing employees on at least an annual basis. UBH shall be required to obtain the approval of the Special Master on the design of UBH's ongoing training program within 90 days following the Court's appointment of the Special Master.

## V.   SPECIAL MASTER

The Court will appoint, at UBH's expense, a Special Master to serve as an independent monitor to oversee and verify UBH's compliance with this Order, including UBH's faithful implementation of the training program, disclosures and reprocessing procedures ordered herein. Within 14 days after entry of this Order, the parties shall submit to the Court a filing that (1) identifies at least three agreed-upon candidates for the position of Special Master (or, in the absence of agreement, three candidates each) and details those candidates' qualifications for the position; and (2) attaches a proposed Order of Appointment that sets forth in detail the duties of the Special Master in accordance with this Order and Federal Rule of Civil Procedure 53.

## VI.   INTERIM AND FINAL DEADLINES

1. UBH's reprocessing of the Remanded ABDs shall begin upon the earlier of (a) UBH's receipt of additional information pursuant to Section III.A, above; or (b) the conclusion of the 90-day period for submitting such information, as specified in § III.A.3, above.

2. UBH shall complete its reprocessing of the class members' requests for coverage within one (1) year of the earliest date on which the notices required under § II  are sent to the

98

1    class. The Special Master shall have the authority to extend this deadline either upon the

2    request of a class member or, following a showing of good cause, upon UBH's request.

3.   The Special Master shall file a report in the docket for this case every 60 days on his/her

    activities, including the status of the reprocessing procedures.  The Special Master shall

    have the authority to require UBH to report to the Special Master or to the Court on other

    issues and at other times, in his/her discretion.

## VII.   ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS TO CLASS REPRESENTATIVES

The Court directs the parties to confer on Plaintiffs' request for an Order requiring UBH to pay Plaintiffs' reasonable attorneys' fees and litigation expenses, and service awards to the class representatives, and  to submit a joint schedule for briefing on Plaintiffs' request no later than 14 days after this Order is entered.

## VIII.   RETENTION OF JURISDICTION

The Court retains jurisdiction over this action for the duration of the injunction, that is, ten years, unless the injunction is terminated sooner, as set forth in § IV.B.1 .

**IT IS SO ORDERED.**

Dated:  November 3, 2020

_____

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California