JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
ANDREW HOLMER (SBN 268864)
aholmer@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690

THOMAS F. KOEGEL (SBN 125852)
tkoegel@crowell.com
NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Telephone: 415.986.2800
Facsimile: 415.986.2827

APRIL N. ROSS (admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **DAVID WIT, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED BEHAVIORAL HEALTH,**<br><br>Defendant. | Case No. 14-cv-02346 JCS<br>Related Case No. 14-cv-05337 JCS<br><br>**DEFENDANT UNITED BEHAVIORAL HEALTH'S REPLY BRIEF IN SUPPORT OF MOTION TO STAY REMEDIES ORDER PENDING APPEAL**<br><br>Hearing Date: January 8, 2021<br>Hearing Time: 9:30 a.m.<br>Hon. Joseph C. Spero |

| |
|---|
| **GARY ALEXANDER, et al.,**<br>Plaintiffs,<br>v.<br>**UNITED BEHAVIORAL HEALTH,**<br>Defendant. |

# TABLE OF CONTENTS


INTRODUCTION ........ 1

ARGUMENT ........ 2

I. UBH's Appeal Raises Serious Legal Questions On Which UBH Is Likely To Prevail. ........ 2

A. ERISA And Article III Required Plaintiffs To Prove A Causal Link Between UBH's Challenged Conduct And Class Members' Benefit Denials. ........ 3

B. This Case Presents Serious Questions About Application Of The Abuse-Of-Discretion Standard To Plaintiffs' Claims. ........ 7

II. UBH Will Be Irreparably Harmed Absent A Stay. ........ 10

A. Reprocessing Will Impose Burdens And Costs That Will Be Unrecoverable If UBH Prevails On Appeal. ........ 10

B. Plaintiffs Do Not Dispute That The Court's Remedies Order Will Cause UBH Irreparable Injury In The Form Of Improper Overpayments. ........ 12

III. Plaintiffs And The Class Will Not Be Irreparably Harmed Or Prejudiced By A Stay Of The Reprocessing Remedy Only. ........ 13

IV. The Public Interest Favors A Stay Pending Appeal. ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020)....................11

*All. for Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011)....................2

*Bergman v. Fed. Express Corp. Long Term Disability Plan*,
No. 16-cv-1179, 2017 WL 4310751 (S.D. Cal. Sept. 27, 2017)....................8

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*,
563 F.3d 847 (9th Cir. 2009)....................12

*California v. Azar*,
911 F.3d 558 (9th Cir. 2018)....................11

*Carrier v. Aetna Life Ins. Co.*,
116 F. Supp. 3d 1067 (C.D. Cal. 2015)....................5

*Chu v. CFTC*,
823 F.3d 1245 (9th Cir. 2016)....................10

*Conkright v. Frommert*,
559 U.S. 506 (2010)....................6

*Cox v. Keystone Carbon Co.*,
894 F.2d 647 (3d Cir. 1990)....................7

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020)....................11, 14, 15

*Frank v. Gaos*,
139 S. Ct. 1041 (2019)....................6

*Garvey v. Kmart Corp.*,
No. 3:11-cv-2575, 2012 WL 12919626 (N.D. Cal. Aug. 22, 2012)....................2

*Grosz-Salomon v. Paul Revere Life Ins. Co.*,
237 F.3d 1154 (9th Cir. 2001)....................9

*Hill v. Emp. Benefits Admin. Comm. of Mueller Grp. LLC*,
971 F.3d 1321 (11th Cir. 2020)....................5, 6

*hiQ Labs, Inc. v. LinkedIn Corp.*,
938 F.3d 985 (9th Cir. 2019)....................11

*Kearney v. Standard Ins. Co.*,
175 F.3d 1084 (9th Cir. 1999)....................9

*Krieger v. Nationwide Mut. Ins. Co.*,
No. 11-cv-1059, 2011 WL 3760876 (D. Ariz. Aug. 25, 2011)....................2

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011)....................1, 2, 14

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
634 F.2d 1197 (9th Cir. 1980)....................10

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985)....................7

*McCartha v. Nat'l City Corp.*,
419 F.3d 437 (6th Cir. 2005)....................4, 5

*Metro. Life Ins. Co. v. Glenn*,
554 U.S. 105 (2008)....................6, 8

*Mori v. Int'l Bhd. of Boilermakers*,
454 U.S. 1301 (1981)....................12

*Nken v. Holder*,
556 U.S. 418 (2009)....................2

*Olson v. California*,
No. 19-cv-10956, 2020 WL 905572 (C.D. Cal. Feb. 10, 2020)....................11

*Philip Morris USA Inc. v. Scott*,
561 U.S. 1301 (2010)....................11, 12

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*,
85 F.3d 455 (9th Cir. 1996)....................4, 5, 6

*Scholl v. Mnuchin*,
No. 20-cv-5309, 2020 WL 5702129 (N.D. Cal. Sept. 24, 2020)....................11

*Snow v. Standard Ins. Co.*,
87 F.3d 327 (9th Cir. 1996)....................9

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)....................6

*Tapley v. Locals 302 & 612 of Int'l Union of Operating Eng's-Emps. Constr. Indus. Ret. Plan*,
728 F.3d 1134 (9th Cir. 2013)....................8

*Thole v. U.S. Bank N.A.*,
140 S. Ct. 1615 (2020) ........ 6, 7

*Tibble v. Edison Int'l*,
729 F.3d 1110 (9th Cir. 2013) ........ 9

*Varity Corp. v. Howe*,
516 U.S. 489 (1996) ........ 9, 14

*Ward v. Estate of Goossen*,
No. 3:14-cv-3510, 2014 WL 7273911 (N.D. Cal. Dec. 22, 2014) ........ 2, 4

*Williby v. Aetna Life Ins. Co.*,
867 F.3d 1129 (9th Cir. 2017) ........ 8

*Zaborowski v. MHN Gov't Servs., Inc.*,
No. 12-cv-5109, 2013 WL 1832638 (N.D. Cal. May 1, 2013) ........ 6, 13

**Statutes**

28 U.S.C. § 2072(b) ........ 5

29 U.S.C. § 1132(a)(1)(B) ........ 5, 7, 9

29 U.S.C. § 1132(a)(3) ........ 9

## INTRODUCTION

In opposing UBH's motion for a stay of reprocessing pending appeal, Plaintiffs seek to insulate their central claim for relief in this litigation from appellate review. Plaintiffs have maintained throughout this suit—over UBH's vigorous objection—that reprocessing 67,000 denials is an end in itself, a remedy that, once complete, restores Plaintiffs' right to have their claims fairly adjudicated irrespective of whether it results in any change in UBH's determination or any payment of benefits. Plaintiffs do not dispute that if this remedy is not stayed pending appeal, they will obtain that precise benefit—at a cost of more than $30 million to UBH—even if the Ninth Circuit reverses *every* ruling of this Court. Nor do Plaintiffs deny that in practice, any class member found to be entitled to payment will likely receive it before any appeal can be completed, and will likely keep it given the impediments to UBH recovering payments. Denying a stay would deprive the Ninth Circuit of adequate time for review before these consequences become irreparable. Plaintiffs' effort to lock down forever the benefits of their long-sought reprocessing remedy (and potentially force an emergency on appeal after six-and-a-half years of unexpedited litigation) is the height of gamesmanship. The Court should reject it and grant a stay.

Plaintiffs' strategy is all the more inappropriate given their concurrent insistence, in seeking attorneys' fees, that their legal theories are unprecedented and have never been considered or approved by an appellate court—or any court, for that matter. "No other lawyer," Plaintiffs proclaim, "ha[s] ever brought similar claims"—a classwide facial challenge seeking reprocessing of up to tens of thousands of denials—"much less prevailed on them." ECF No. 507 ("Fee Petition") at 1. Given the novelty of these hard-fought claims, UBH easily satisfies the threshold requirement for a stay pending appeal: that the appeal presents "serious questions" on the merits. *Leiva-Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011) (per curiam). Plaintiffs rehearse the arguments they will raise on appeal, but the point is not whether this Court agrees with its prior rulings (surely it does); it is that the issues are complex enough to warrant preserving a meaningful opportunity for appellate relief.

Plaintiffs' new-found urgency likewise rings hollow. Plaintiffs did not ask for expedited treatment from this Court for the better part of a decade that this case has been litigated. Their

purported sudden discovery that their clients are being harmed by the passage of time suggests either that they have been delinquent in accounting for the time sensitivity of their clients, or more likely, that they know there is no real urgency. UBH is not seeking to stay any prospective remedy. It seeks only a stay of the retrospective remedy of reprocessing. Plaintiffs do not contest UBH's testimony that it is *not* using—and will not use—past denials as a factor in assessing current or future requests for benefits. And this Court's decision to award interest on any payouts protects Plaintiffs from any delay in payment.

The safest course—and the course most respectful of the appellate process—is therefore to stay reprocessing pending appeal. This Court should grant that relief.

## ARGUMENT

### I. UBH's Appeal Raises Serious Legal Questions On Which UBH Is Likely To Prevail.

Plaintiffs loudly concede this case's "major impact on the legal landscape." ECF No. 510 ("Opp.") at 24. That concession alone satisfies the first stay requirement: "serious questions" on the merits. *Leiva-Perez*, 640 F.3d at 967. All agree that "serious legal questions" suffice—and UBH "need not . . . 'demonstrat[e] that it is more likely than not that [it] will win,'" Opp. 2—so it is irrelevant that this Court (like any court) stands by its rulings and has done so over multiple orders, *id.* at 1. What matters is that the issues are concededly "novel," *Garvey v. Kmart Corp.*, No. 3:11-cv-2575, 2012 WL 12919626, at *1 (N.D. Cal. Aug. 22, 2012), and affirmance would undeniably require the Ninth Circuit to face "'difficult'" questions. *Ward v. Estate of Goossen*, No. 3:14-cv-3510, 2014 WL 7273911, at *2 (N.D. Cal. Dec. 22, 2014). The Ninth Circuit should decide these issues before reprocessing is a *fait accompli* and meaningful relief is unavailable.[1]

---

[1] Plaintiffs' concession that "serious legal questions" suffice undercuts their argument that *Nken v. Holder*, 556 U.S. 418 (2009), requires more, Opp. 2 n.1. As *Leiva-Perez* recognized, "*Nken* . . . did not disturb the overall manner in which courts balance the various stay factors," 640 F.3d at 964–65 (citation omitted), so that a party "need not make as strong a showing of the likelihood of success on the merits" if balance of hardship weighs strongly enough in his favor, *Krieger v. Nationwide Mut. Ins. Co.*, No. 11-cv-1059, 2011 WL 3760876, at *1 (D. Ariz. Aug. 25, 2011) (citing *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)). In any event, UBH's showing here is sufficiently strong to satisfy any formulation of this requirement.

### A. ERISA And Article III Required Plaintiffs To Prove A Causal Link Between UBH's Challenged Conduct And Class Members' Benefit Denials.

Plaintiffs litigated this case based on the "stipulat[ion] that they d[id] not seek" to establish causation, and the claim that they did not need to do so. ECF No. 492 ("Amended S.J. Order") at 19. This Court thus accepted that "Plaintiffs' claims would fail for lack of causation" if it were required, *id.*, and held that it can award reprocessing of 67,000 claims on a classwide basis "without [Plaintiffs first] establishing that the alleged violation has caused an actual loss, such as a denial of benefits," *id.* at 21–22. Now that an appeal is imminent, however, Plaintiffs shift their theory entirely, claiming that this Court *did* "require Plaintiffs to show a 'causal link'" to the denial of benefits—precisely the showing they disclaimed any effort or ability to make on a classwide basis. Opp. 4. But it turns out that this supposed "finding" amounts to nothing more than the Court's characterization of the undisputed criteria for class membership—that each denial letter cites an LOCG or CDG. ECF No. 174 ("Class Cert. Order") at 38.

Plaintiffs do not suggest that in supposedly finding a "causal link," the Court ever considered whether any denial letters identified independent grounds for denial. To the contrary, they now concede that the remedy order leaves that question to UBH on remand. Opp. 8. Further, Plaintiffs "challenge the CDGs only to the extent that they incorporate[d] the [LOCGs]," FFCL, ECF No. 413, ¶ 47, and there was no evidence or finding that the CDGs were flawed "*in toto*," Opp. 7—only that some part of each CDG "contains language" that referenced the LOCGs at least once. ECF No. 469 ¶¶ 217–25.[2] Yet Plaintiffs never sought to show that the "incorporated" LOCGs—rather than some other unchallenged provision of the CDG—drove those denials. Nor did the Court require a showing that each class member received the requested services.

UBH's argument that these showings are required is the "same argument" that Plaintiffs acknowledge UBH has made "throughout this case." Opp. 3 & n.2. And this Court's rejection of that requirement is the supposed "watershed" holding—never before adopted by *any* court—that is the premise of Plaintiffs' fee petition. Fee Petition 2–3. Plaintiffs cannot avoid the issue by

---

[2] Even as to the LOCGs, Plaintiffs are wrong to assert that the Court rejected UBH's guidelines "*in toto*." Opp. 7. In fact, the Court found that certain challenged provisions were flawed in specified ways, and expressly *upheld* other guidelines provisions. *See* FFCL ¶¶ 110 & n.14, 125.

redefining causation. Nor is UBH's stay motion the place to relitigate the issues. Plaintiffs will have their chance to defend this Court's rulings on appeal. But the Court should recognize that since "none of [the prior] cases address facts similar to the ones at hand," the Court's causation rulings plainly "present substantial questions" supporting a stay. *Ward*, 2014 WL 7273911, at *3.

Plaintiffs also distort UBH's argument in other fundamental ways. The issue in this case has never been whether this Court was required to pre-decide "the specific questions that required remand" to UBH, Opp. 5—*i.e.*, whether the coverage determinations in question are consistent with criteria approved by the Court. ECF No. 491 ("Remedies Order") at 43–44. Instead, the issue is the *antecedent* question—whether remand was "required" in the first place, Opp. 5, because each member's denial actually was "based on" the errors they assert. Mot. 8–9 (quoting *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 456, 459 (9th Cir. 1996)). In *individual* cases—which account for *all* precedent on this issue because Plaintiffs' classwide facial challenge is unprecedented—courts routinely address that causation question by examining the specific administrative record before them. *See, e.g.*, *Saffle*, 85 F.3d at 457–58 (quoting denial of benefits "*because*" claimant "'could perform a substantial portion of [her] regular job'" (emphasis added)); *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 447 (6th Cir. 2005) (denying reprocessing because record reflected "two independent reasons for denying . . . benefits"). Plaintiffs never square their theory that reprocessing obviates *this* causation analysis, Opp. 5–6, with the fact that the cases on which they rely *all* perform it. At a minimum, Plaintiffs cite no case ordering reprocessing *without* such analysis.

Plaintiffs' own brief repeatedly confirms the need for individualized analysis of the administrative record to determine causation. They concede that denial letters provide a "record of whether any independent ground . . . exists," and that if such an "independent reason[n]" is "valid," then under *McCartha*, "remand [is] not necessary." Opp. 8 n.9. Indeed, Plaintiffs' responses to specific denials illustrate precisely the sort of fact-intensive, individualized analysis of the administrative record that is required to determine whether remand is warranted. *Id.* at 7 n.8

(reviewing denial letter language, CPT code, and specific guideline provisions cited).[3]

It is no answer to say that UBH may make these determinations on remand. Before the Court can order UBH to review 67,000 denial letters to "identif[y]" any "additional ground[s] for denial," or look outside of the administrative record or trial record to see "whether the other sample members obtained such services" following UBH's denials, Opp. 8 & n.10, Plaintiffs have to establish the elements of their claim—including causation—as individual cases like *Saffle* and *McCartha* make clear. Punting those costly determinations to the claims administrator to facilitate a class action "enlarge[s]" Plaintiffs' substantive rights in violation of the Rules Enabling Act, 28 U.S.C. § 2072(b).

Plaintiffs do not dispute that when *de novo* review applies—because the plan confers no discretion on the claims administrator—claimants seeking relief under § 1132(a)(1)(B) must show that they were "wrongfully denied . . . 'benefits due'" as recognized in *Hill v. Employee Benefits Administrative Committee of Mueller Group LLC*, 971 F.3d 1321, 1332 (11th Cir. 2020), and *Carrier v. Aetna Life Insurance Co.*, 116 F. Supp. 3d 1067, 1079 (C.D. Cal. 2015), among other

[3] Plaintiffs nonetheless misread the record on the two denial letters discussed in note 8 of their brief. To start, UBH's argument about these denial letters is not "new." The denials were admitted into the trial record without objection, as part of a claim sample stipulated to by Plaintiffs. *See* FFCL ¶ 14. And they merely illustrate the argument that UBH has been making since at least the class certification stage—that "the question of whether UBH breached any fiduciary duty owed to any putative class member or wrongfully denied coverage based on specific criteria in the guidelines . . . requires a complex, individualized inquiry" that "cannot be answered on a class-wide basis." ECF No. 149 ("Class Cert. Opp.") at 2–3. It is particularly rich for Plaintiffs to accuse UBH of raising new factual evidence on *these* denial letters as to their reliance on *diagnosis-specific CDG*s when the trial focused on LOCGs and custodial-care CDGs, and Plaintiffs deliberately declined to present *any* evidence at trial challenging diagnosis-specific CDGs. *See* FFCL ¶ 47.

Plaintiffs are also wrong on the merits of these two individual members' requests for coverage. Member 8878's denial letter did not purport to limit psychotherapy to members "in crisis," as Plaintiffs imply. Opp. 7 n.8. Instead, UBH found that the member did not meet any of the "limited" grounds for "*Extended*" (60-minute) outpatient sessions recognized by the CDG, rather than the standard 45-minute session, Trial Ex. 89-0003 (emphasis added). Plaintiffs concede that the CDG provision referenced in the letter was the sole basis for the denial. Trial Ex. 1381-0001 (listing "crisis management" as one of several possible grounds for lengthier sessions, none of which was present). Member 9836, meanwhile, requested coverage for 12 additional extended sessions of a particular treatment (EMDR) after receiving 24 extended sessions. Trial Ex. 1383-0002. UBH limited coverage to only 1 additional extended session because the governing CDG expressly set "a maximum of 25 sessions." Trial Ex. 89-0004. This limitation was the sole rationale cited to deny further coverage, *see* Trial Ex. 1383-0002; ECF No. 434-5; as UBH has repeatedly explained in prior briefing, ECF No. 432-4 at 6 n.7; ECF No. 428-4 at 13 & n.8.

cases. *See* Opp. 5 n.5. Their attempt to distinguish these cases from claims subject to abuse-of-discretion review fundamentally misunderstands the reprocessing remedy. When plans give claims administrators "discretionary authority" to interpret plan terms—as ERISA permits, *Conkright v. Frommert*, 559 U.S. 506, 512 (2010), and Plaintiffs' plans each did here, FFCL ¶¶ 54, 197—courts respect that discretion both by reviewing claims administrators' decisions "deferential[ly]," *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008), and by "remand[ing]" to the claims administrator where needed so that the administrator can decide an issue "in the first instance," *Saffle*, 85 F. 3d at 460. The purpose of the remand is to respect the proper role of administrators in deciding specific, dispositive questions that only they can answer. It is not, as Plaintiffs perversely suggest, to punish plans for giving their administrators discretion by allowing a remedy where it would otherwise be foreclosed on other grounds—and certainly not where those grounds can be determined by the court *without* further input from the administrator and without the burden and expense of a remand. No court may order *any* remedy, including reprocessing, for a plaintiff who has not already prevailed on the merits by proving all elements of his or her cause of action under ERISA. Those elements remain the same whether a plaintiff proceeds under abuse-of-discretion review, as here, or *de novo*, as in *Hill*, 971 F.3d at 1332.

Plaintiffs' pivot from the denial of benefits to a claim of procedural injury—the asserted "rights to Guidelines that were developed for their benefit" and "to have their claims adjudicated under" such guidelines, Amended S.J. Order 23–24—does not dispel the serious questions presented by this appeal; it amplifies them. The Supreme Court and lower courts have been wrestling with where to draw the line on procedural harms for years. *See, e.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016); *Frank v. Gaos*, 139 S. Ct. 1041 (2019) (per curiam). The Supreme Court's latest word on the issue in *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020), specifically addressed ERISA. Indeed, "the exact contours of this [issue] after [*Thole*] are still being determined" by the lower courts, which necessarily makes the legal controversy here "legitimate" and "substantial" enough to support a stay, *Zaborowski v. MHN Gov't Servs., Inc.*, No. 12-cv-5109, 2013 WL 1832638, at *2 (N.D. Cal. May 1, 2013), notwithstanding Plaintiffs' attempt to cabin *Thole* to its facts, Opp. 9. Moreover, that attempt lacks merit. *Thole* did not hold

only that Article III standing is lacking where plaintiffs "*could not* be" injured, *id.*; it held that ERISA plaintiffs lack standing when "the outcome of this suit would not affect their future benefit payments," and places the burden squarely on Plaintiffs to prove that "[w]inning or losing this suit would . . . change [their] benefits" payments, 140 S. Ct. at 1619, 1622.[4]

**B. This Case Presents Serious Questions About Application Of The Abuse-Of-Discretion Standard To Plaintiffs' Claims.**

Plaintiffs fare no better in denying that UBH has raised serious and essential questions about this Court's application of the abuse-of-discretion standard.

*First*, Plaintiffs fundamentally misunderstand UBH's arguments regarding the "guidelines exclusions"—plan provisions expressly authorizing UBH to develop and apply guidelines, and excluding coverage for treatment not consistent with those guidelines. UBH does not claim "unfettered discretion to adopt Guidelines that say whatever UBH wants them to say." Opp. 9. UBH only contends that the plans should be applied as written and in the manner by which all parties (UBH, plan sponsors, and beneficiaries) agreed, consistent with guidelines that were published on UBH's website and available to both plan sponsors and beneficiaries in deciding whether to accept the terms of their plans. *See, e.g.*, Trial Ex. 225-0106–07; Trial Ex. 1647-0063.

It is not enough to say, as Plaintiffs do, that the Court "really mean[t]" to apply an abuse-of-discretion standard and gave reasons for its interpretation of the guidelines exclusions. Opp. 9–10. The abuse-of-discretion standard requires the Court to *defer to UBH's interpretation* of plan terms unless that interpretation "'clearly conflicts with the plain language' of the Plan," "'renders

[4] Plaintiffs' invocation of other clauses of § 1132(a)(1)(B)—in an attempt to sidestep the need for proof that they are entitled to benefits, Opp. 4 n.4—likewise raises further serious questions of first impression. Plaintiffs do not seek to "enforc[e]" any "plan ter[m]" (the second clause of § 1132(a)(1)(B)) beyond the right to payment of "benefits due" (the first clause). Instead, the plan terms they invoke merely *define* those benefits by excluding coverage for claims inconsistent with "generally accepted standards of care." FFCL ¶ 53. Nor does reprocessing "clarif[y]" Plaintiffs' rights to "*future* benefits" (the third clause of § 1132(a)(1)(B). As Plaintiffs conceded and this Court recognized, reprocessing is a "*retrospective*" remedy addressing *past* benefits. Remedies Order 11; *see also id.* at 81, 83 (distinguishing reprocessing from "the prospective injunctive relief" separately ordered). The second and third clauses of § 1132(a)(1)(B) authorize claims for injunctions against violating plan terms and claims for declaratory relief regarding future benefits. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146–47 (1985); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 650 (3d Cir. 1990) (these "clause[s] give[] a claimant only action 'to enforce his rights *under the terms of the plan*,'" such as the right to "an appeal process for participants and beneficiaries"). Invoking them as a basis for reprocessing is at minimum a novel theory.

nugatory' other provisions of the Plan," or "'lacks any rational nexus to the primary purpose' of the Plan." *Tapley v. Locals 302 & 612 of Int'l Union of Operating Eng'rs-Emps. Constr. Indus. Ret. Plan*, 728 F.3d 1134, 1140 (9th Cir. 2013).

The proper standard confirms UBH's interpretation. The natural reading of the guidelines exclusions—and certainly *one* possible reading—is that they mean what their "plain language" says, *Tapley*, 728 F.3d at 1140: Coverage is excluded if treatment is "not consistent with [UBH's] guidelines." Trial Ex. 1653. And Plaintiffs do not dispute that the Court's reading of the guidelines exclusions—as merely allowing guidelines that echo "'generally accepted standards,'" Class Cert. Order 33—treats those exclusions as redundant with the separate plan exclusion for services inconsistent with generally accepted standards.

*Second*, Plaintiffs cite no prior instance of a court holding that the administrator of a self-funded plan can have a "structural conflict of interest" that warrants "significant skepticism" of the administrator's discretionary decisions. FFCL ¶ 202. If the commonplace fact of "hav[ing] an incentive to keep benefit costs down for [self-funded] customers" were enough to create a conflict, *id.* ¶ 176; Opp. 10, cases finding conflicts as to self-funded plans would be rampant. Instead, courts regularly find no conflict of interest when "the administrator and payor" are not "one and the same." *Williby v. Aetna Life Ins. Co.*, 867 F.3d 1129, 1138 (9th Cir. 2017); *see also, e.g.*, *Bergman v. Fed. Express Corp. Long Term Disability Plan*, No. 16-cv-1179, 2017 WL 4310751, at *8 (S.D. Cal. Sept. 27, 2017) (no structural conflict of interest exists when separate administrator administers self-funded plan). *Williby*'s straightforward reasoning applies equally here: UBH "has no such conflict of interest here" as to self-funded plans, "as [the plan sponsors] funded th[ose] plan[s]." 867 F.3d at 1138. Likewise, the Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), ruled only that a "conflict of interest" can be considered "as a factor" when the same entity—an insurer or administrator—"both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Id.* at 108.

Plaintiffs argue that this case is different because UBH's "financial incentives" purportedly "infected the Guideline development process." Opp. 10 (quoting FFCL ¶ 180); *id.* at 11 n.12. But Plaintiffs merely claimed that there were *three* instances, out of 180 meetings, where benefit

expense was discussed in any context at meetings regarding the guideline development process. Trial Tr. 698:17–24, 786:2. And Plaintiffs offered no evidence connecting these purported discussions of benefit expense to UBH's incentives as an administrator of *self-funded* plans specifically, or suggesting that financial incentives in any way clouded UBH's judgment in choosing to apply the same set of guidelines to self-funded and fully insured plans.

*Third*, it is Plaintiffs—not UBH—who "jumbl[e]" the standard of review applicable to UBH's assessment of generally accepted standards. Opp. 11–14. They claim the "abuse of discretion" here is that UBH's guidelines "conflic[t] with the plain language of the plan." *Id.* at 12. But Plaintiffs never contended that the *plans* specify which standards are "generally accepted." Determining what standards are generally accepted involves precisely the sort of "factual determinatio[n]" that falls within the discretion granted to UBH under the plans. *E.g.*, Trial Ex. 1653-0008. Any uncertainty about what standards are generally accepted is therefore to be resolved by UBH, and upheld if "there is substantial evidence to support the decision . . . even if it is possible to draw two inconsistent conclusions from the evidence." *Snow v. Standard Ins. Co.*, 87 F.3d 327, 332 (9th Cir. 1996). Plaintiffs fail to cite a single case in which a court applied a preponderance of the evidence standard to a question delegated to a plan administrator's discretion and not unambiguously resolved by the plan.[5]

The Court's application of a disputed standard of review is far from "academic," as Plaintiffs claim. Opp. 14. The "normal" remedy when a district court applies the "wrong standard of review" is to "reverse and remand." *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1162 (9th Cir. 2001) (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094–95 (9th Cir. 1999) (en banc)). It would be remarkable for Plaintiffs to argue otherwise when the central

---

[5] Contrary to Plaintiffs' argument at 11 n.13, the same deferential standard holds for Plaintiffs' fiduciary duty claims under 28 U.S.C. § 1132(a)(3). When the basis for a claim is that the administrator exceeded its discretion in denying benefits, "characterizing [the] claim . . . as a breach of fiduciary duty does not necessarily change the standard [of] revie[w]." *Varity Corp. v. Howe*, 516 U.S. 489, 514–15 (1996). "Not applying . . . deference" to all claims touching on plan interpretation would risk "uniformity problems" because "parts of a plan could be assigned one meaning when litigated under section 1132(a)(1)(B) and another meaning when litigated" as a breach of the duty of loyalty or care. *Tibble v. Edison Int'l*, 729 F.3d 1110, 1129 (9th Cir. 2013), *vacated on other grounds*, 575 U.S. 523 (2015).

premise of their facial challenge to UBH's guidelines is that remand to UBH is warranted even if it changes nothing. And here, applying the appropriate standard, there is ample reason to believe that the evidence presented at trial meets the substantial evidence threshold. As Plaintiffs acknowledge, UBH presented evidence at trial demonstrating that it solicited feedback from external practicing clinicians and professional societies about whether there were any "criteria which should be added or deleted" in evaluating their guidelines—and those physicians broadly *accepted* UBH's standards. And Dr. Allchin's testimony alone establishes that there was substantial evidence that UBH's guidelines did not deviate from generally accepted standards of care. *See* Opp. 14:18–19; Trial Tr. 1376:16–22, 1385:22–1386:4, 1408:23–1411:25 (Allchin). Contrary to Plaintiffs' assertion, UBH did provide "more than a mere scintilla" of evidence necessary to support the conclusion that UBH's guidelines meet generally accepted standards. *Chu v. CFTC*, 823 F.3d 1245, 1250 (9th Cir. 2016).

## II. UBH Will Be Irreparably Harmed Absent A Stay.

### A. Reprocessing Will Impose Burdens And Costs That Will Be Unrecoverable If UBH Prevails On Appeal.

Plaintiffs do not dispute UBH's argument or evidence demonstrating that, absent a stay, UBH will incur millions of dollars in unrecoverable expenses necessary to reprocess up to 67,000 benefit determinations. Plaintiffs concede, as they must, that many of these expenses will be incurred before UBH can even begin reprocessing, and almost certainly before the Ninth Circuit decides UBH's appeal on the merits. *See* Opp. 16. Nor do Plaintiffs dispute that UBH will have no remedy to recover the significant costs of reprocessing if UBH prevails on appeal. Plaintiffs' tacit admission that the Court's Remedies Order will require the expenditure of more than $30 million in unrecoverable costs, separate and apart from any benefit payments, is itself an admission that UBH will suffer irreparable harm, which weighs heavily in favor of a stay.

Plaintiffs quote inapposite case law to wrongly declare that "[m]onetary costs can only be considered 'irreparable'" if those "costs are so immense" that they would put UBH out of business. Opp. 17. That grossly misstates the law. To be sure, "monetary injury is not *normally* considered irreparable." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634

F.2d 1197, 1202 (9th Cir. 1980) (emphasis added). But that is because that harm can *normally* be remedied by "adequate compensatory or other corrective relief . . . available at a later date, in the ordinary course of litigation." *Id.* By contrast, "[i]f expenditures cannot be recouped, the resulting loss may be irreparable." *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers) ("Normally the mere payment of money is not considered irreparable, . . . but that is because money can usually be recovered from the person to whom it is paid."); *accord California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) ("harm is irreparable" if the movant "will not be able to recover monetary damages"). As a result, "the general rule that '[e]conomic harm is not normally considered irreparable' does not apply where there is no adequate remedy to recover those damages." *Scholl v. Mnuchin*, No. 20-cv-5309, 2020 WL 5702129, at *17 (N.D. Cal. Sept. 24, 2020) (quoting *Azar*, 911 F.3d at 581).

Plaintiffs' supposedly contrary authorities are not on point, because none involve the payment of millions of dollars without any opportunity to recover those amounts. Opp. 17. *Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020), involved allegations of extra time spent conducting interviews of asylum seekers absent a stay, but the court found that the extra time was due entirely to the petitioners' own poor record keeping, could be largely mitigated, and was grossly overblown. *Id.* at 1008. Likewise, *Doe #1 v. Trump*, 957 F.3d 1050 (9th Cir. 2020), found no irreparable harm based on "monetary injury to third parties" where those costs would be "minimal." *Id.* at 1060. And in *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985 (9th Cir. 2019), the Court held only that monetary harm *can* be irreparable, "*even when damages may be available*," if the *compensable* economic harm would drive the party out of business in the interim. *Id.* at 993 (emphasis added).

Finally, Plaintiffs do not dispute the additional unquantifiable costs and burdens UBH would incur, absent a stay. Mot. 15–17. Here, unlike Plaintiffs' cases, there is no dispute that without a stay, UBH will be required to expend as much as $30 million for personnel and related capital expenses to conduct reprocessing, and those amounts will indisputably be unrecoverable if UBH prevails on appeal. *See Olson v. California*, No. 19-cv-10956, 2020 WL 905572, at *14 (C.D. Cal. Feb. 10, 2020) (holding "payroll taxes and other sums" defendants would have to pay

for "newly hired employees" would not be recoverable and constituted irreparable harm); *see also Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009) ("the economic injury doctrine . . . does not apply where, as here, the [injured party] can obtain no remedy in damages."), *vacated on other grounds and remanded sub nom. Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012). Under settled law, such unrecoverable expenses are irreparable harm. *See Philip Morris*, 561 U.S. at 1304 (Scalia, J., in chambers) (granting a stay where district court's order required the defendant to pay a largely irrevocable fee of $11,501,928 to set up a court-ordered program, before the Supreme Court could consider the appeal). This factor weighs heavily in favor of a stay.

### B. Plaintiffs Do Not Dispute That The Court's Remedies Order Will Cause UBH Irreparable Injury In The Form Of Improper Overpayments.

Plaintiffs do not even try to dispute that UBH will suffer irreparable harm if it is required to pay benefits through the Court's Remedies Order, and the Remedies Order is subsequently reversed or modified on appeal. They also do not dispute UBH's evidence that the likelihood of UBH recovering benefits after they are paid as a result of reprocessing is low. Plaintiffs therefore concede that UBH (and the trust assets of the self-funded benefit plans UBH administers) are likely to suffer irreparable injury from reprocessing pending appeal.

Plaintiffs instead argue, without citing any authority, that a stay is "premature" because, under the Remedies Order, a "series of steps must occur"—many of which would independently injure UBH—before UBH is irreparably injured. Opp. 16. But the Remedies Order imposes strict deadlines for these additional steps—deadlines which allow less than nine months for UBH to reprocess and pay out claims if a stay is denied. Remedies Order 57, 90–99; ECF No. 499 at 8. Absent a stay, that schedule makes it likely that UBH will be compelled to pay out at least some benefits before an appeal can be decided, and that UBH will be unable to recover most of those benefit payments even if it prevails on appeal. *See Philip Morris USA Inc.*, 561 U.S. at 1304 (Scalia, J., in chambers) (irreparable harm was satisfied: "before this Court will be able to consider and resolve applicants' claims, a substantial portion of the fund established by [defendants' court-ordered] payment will be irrevocably expended"); *Mori v. Int'l Bhd. of*

*Boilermakers*, 454 U.S. 1301, 1303 (1981) (Rehnquist, J., in chambers) (granting stay where $150,000 of "funds held in escrow . . . would be very difficult to recover should applicants' stay not be granted"). This additional, uncontested irreparable harm, too, weighs heavily in favor of a stay.

**III. Plaintiffs And The Class Will Not Be Irreparably Harmed Or Prejudiced By A Stay Of The Reprocessing Remedy Only.**

Plaintiffs counter with their own claims of irreparable harm, Opp. 19–20, but those claims cannot be squared with the course of the litigation. All acknowledge that the "requests for coverage that will be reprocessed were for treatment in 2017 or earlier." *Id.* at 19. Were it really true that "every month of additional delay harms Plaintiffs" in any meaningful way, *id.*, Plaintiffs could have urged the Court to expedite the six-and-a-half-year course of this litigation, but they did not. Plaintiffs' assertions of harm from delay lack merit.

Plaintiffs speculate that "a substantial portion of the class likely has ongoing needs for coverage," Opp. 19, but fail to explain how any class member's need for behavioral health services in the *future* will in any way be prejudiced by a stay of the *retrospective* reprocessing remedy for years-old benefit decisions. The uncontroverted evidence is exactly the opposite: UBH has already adopted the guidelines ordered by this Court and is not seeking to stay the Court's *prospective* injunctive relief during appeal, including the use of those guidelines to adjudicate current and future benefit claims. And Plaintiffs do not question UBH's under-oath statements that reprocessing the class members' years-old requests for authorization will have no impact on any ongoing treatment, eligibility for future benefits, or on the criteria that will be used to adjudicate future requests. Triana Decl. ¶ 28.

Plaintiffs also declare that "[e]very month of additional delay in reprocessing strips class members of the benefits that will flow from future determinations that their requests for coverage should have been approved in the first place." But as UBH explained in its motion, any delay in receiving payment will "be mitigated by remedies such as prejudgment interest," which the Court ordered over UBH's objection. *Zaborowski*, 2013 WL 1832638, at *3. Plaintiffs have no response to this point. In fact, by proposing that the parties "meet and confer about whether to seek an

extension of the deadlines relating to check issuance," Opp. 16, Plaintiffs tacitly admit that a delay in payment while UBH's appeal is pending will not prejudice absent class members.

**IV. The Public Interest Favors A Stay Pending Appeal.**

Plaintiffs do not contest the well-established rule that the "public interest lies with maintaining the *status quo* while the appeal is pending." *Doe #1*, 957 F.3d at 1068. Nor do they deny that the public interest in preserving the *status quo* pending appeal is heightened here because of the severe shortage of mental health professionals in the United States. *See* Triana Decl. ¶¶ 23, 27. Instead, Plaintiffs misrepresent UBH's argument to falsely announce that UBH "threaten[s] new, current harm to its members" by "redirect[ing] behavioral health resources" to conduct reprocessing. Opp. 20. UBH has no intention to (and would not) sacrifice its capacity to conduct current and future benefit reviews for critical behavioral healthcare services to conduct reprocessing. *See* Triana Decl. ¶¶ 15–18. That is precisely why reprocessing will require UBH to engage up to 200 *new* full-time-equivalent psychiatrists, psychologists, social workers, masters-level therapists, and nurses to conduct the reprocessing. Triana Decl. ¶¶ 6, 16, 17. Engaging *new* clinicians on a full-time-equivalent basis will necessarily limit the time those same clinicians have available to provide behavioral health treatments services in the community. Plaintiffs' "blithe assertions" are not evidence to the contrary. *Leiva-Perez*, 640 F.3d at 970–71 (public interest favored a stay where opposing party "has made no arguments to the contrary, nor any showing" to rebut movant's evidence of the public interest).[6]

Plaintiffs' remaining assertions of the impact the Court's Findings of Fact and Conclusions of Law have had on other legislation and court decisions have no bearing on UBH's limited request to stay only the reprocessing components of the Court's Remedies Order. Such a

---

[6] Plaintiffs also do not dispute that, if reprocessing results in the payment of benefits for members of self-funded benefit plans, the costs of such payments, which may ultimately be reversed on appeal, could be passed through by the plan sponsor to members in the form of reduced benefits, higher premiums, or in other ways. Nor do Plaintiffs contest that such a result would fly in the face of Congress' intent in enacting ERISA to avoid "administrative costs, or litigation expenses" that would "unduly discourage employers from offering [ERISA] plans in the first place," *Varity*, 516 U.S. at 497, and would be contrary to the public interest. Plaintiffs simply repeat their argument that a stay is "premature" to avoid this harm because it has not occurred yet. Opp. 20. Again, though, they miss the point of a stay: to prevent harm *before* it occurs.

narrow stay will not change the Court's Findings of Fact or Conclusions of Law, and it will have no impact on any future legislative or regulatory decisions. It will not stay the declaratory relief ordered by the court or the implementation of the Court's *prospective* injunctions.

Ensuring meaningful appellate review of significant legal questions with broad, classwide impact serves the public interest. Here, that meaningful review would be frustrated by requiring UBH to incur the irreparable costs and burdens of reprocessing before the Ninth Circuit has had an opportunity to consider whether reprocessing is warranted. "Given the irreparable harm to [UBH], the lack of irreparable harm to the [Plaintiffs] for maintaining the *status quo* pending resolution of [UBH's] appeal, and the injury to other parties if the [Court's reprocessing order] is immediately implemented, the public interest favors preserving the *status quo*" with a stay of the reprocessing remedy. *Doe #1*, 957 F.3d at 1069.

**CONCLUSION**

UBH respectfully requests that the Court grant UBH's motion for a stay pending appeal.

Dated: December 11, 2020

CROWELL & MORING LLP

By: */s/ Jennifer S. Romano*
Jennifer S. Romano

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH