UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WIT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED BEHAVIORAL HEALTH, <br><br> Defendant. | Case No. 14-cv-02346-JCS <br> Related Case No. 14-cv-05337 JCS <br><br> **ORDER DENYING MOTION FOR PARTIAL STAY AND CONTINUING JANUARY 8, 2021 CASE MANAGEMENT CONFERENCE TO JANUARY 29, 2021 AT 2:00 P.M.** |
| GARY ALEXANDER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED BEHAVIORAL HEALTH, <br><br> Defendant. | Re: Dkt. No. 506 |

## I.  INTRODUCTION

Defendant United Behavioral Health ("UBH") brings a Motion to Stay Remedies Order Pending Appeal ("Motion"). The Court finds that the Motion is suitable for determination without oral argument and therefore vacates the motion hearing scheduled for January 8, 2021 pursuant to Civil Local Rule 7-1(b). The Further Case Management Conference set for the same date is continued to January 29, 2021 at 2:00 p.m. For the reasons stated below, the Motion is DENIED.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. THE MOTION

UBH brings the instant Motion under Rule 62(d) of the Federal Rules of Civil Procedure, asking the Court to stay enforcement of the following sections the remedial section of its Remedies Order (dkt. no. 491), related to the reprocessing remedy: Sections III, IV.B.2.a, IV.B.3.a, VI.1 and VI.2. UBH argues that there are serious questions with respect to the Court's treatment of causation and its application of the abuse of discretion standard. It further contends that it will suffer irreparable harm if it is required to reprocess class members' claims before the appeal is decided as reprocessing will cost millions of dollars that will not be recoverable and require it to make changes to its business in order to hire and train the additional employees required to conduct the reprocessing. UBH asserts there is also a danger that if it pays benefits to class members as a result of reprocessing and later prevails on appeal it may be unable to recoup those benefits and/or class members will be confused when they are asked to return benefits they may have received from UBH as a result of reprocessing of their claims.

On the other hand, UBH argues, the class members will not be seriously prejudiced by having to wait for the appeal to be decided before their claims are reprocessed because reprocessing their "years-old" claims will have no impact on their ongoing treatment. In particular, it asserts that it has already adopted the third-party guidelines ordered by the Court and that the reprocessing remedy is purely retrospective relief. UBH also points out that it is unknown at this point whether any particular class member is actually entitled to payment of the denied benefits; for those who ultimately are determined *not* to be entitled to benefits as a result of reprocessing, there can be no prejudice. And for those who are found to be entitled to benefits, any harm can be addressed by remedies such as prejudgment interest. For these reasons, UBH contends, the balance of the hardships favors entry of the requested stay.

Finally, UBH contends a stay of the reprocessing remedy is in the public interest because it would maintain the status quo pending appeal. According to UBH, this is particularly important because reprocessing will result in diversion of UBH's resources away from the provision of mental health and substance use disorder services at a time when COVID-19 has resulted in a dramatic increase in demand for those services. UBH also suggests that to the extent that some

1  class members who are found eligible for reimbursement are members of self-funded plans, those
2  plans may reduce coverage and/or raise premiums to make up for their losses, which would
3  undermine Congress's intent when it enacted ERISA.

**III. ANALYSIS**

  **A. Legal Standards Under Rule 62(d)**

   "While an appeal is pending from an interlocutory order or final judgment that grants . . . an injunction, the court may suspend . . . [the] injunction on terms that . . . secure the opposing party's rights." Fed. R. Civ. P. 62(d). "'A stay is not a matter of right. . . . It is instead "an exercise of judicial discretion" . . . [that] "is dependent upon the circumstances of the particular case."'" *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal citations omitted) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672–73 (1926))). "Judicial discretion in exercising a stay is to be guided by the following legal principles, as distilled into a four factor analysis in *Nken*: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Id.* (quoting *Nken*, 556 U.S. at 434 (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987))). "The first two *Nken* factors 'are the most critical.'" *Id.* (quoting *Nken*, 556 U.S. at 434). Courts "consider the last two factors if the first two factors are satisfied." *Id.* (citing *Nken,* 556 U.S. at 435). Further, "*Nken* instructed 'that if the petition has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors.'" *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (per curium) (citing *Nken*, 556 U.S. at 433-434)).

   "The minimum threshold showing for a stay pending appeal requires that irreparable injury is *likely* to occur during the period before the appeal is likely to be decided." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (citing *Leiva-Perez v. Holder*, 640 F.3d at 968) (emphasis added). This burden is higher than the burden that applies to the likelihood of success factor, which does not require a party moving for a stay to make a showing that success is more likely

3

than not. *Leiva-Perez v. Holder*, 640 F.3d at 968. In *Leiva-Perez*, the court noted that there are "many ways to articulate the minimum quantum of likely success necessary to justify a stay—be it a 'reasonable probability' or 'fair prospect,' as [*Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010)] suggests; 'a substantial case on the merits,' in [the words of *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987)]; or, as articulated in [*Abbassi v. I.N.S.*, 143 F.3d 513, 514 (9th Cir. 1998)] that 'serious legal questions are raised.'" *Id.* at 967-968. It concluded, however, that these standards are "essentially interchangeable" and are met if the party has "a substantial case for relief on the merits." *Id.* at 968. The court explained that this lower threshold "makes good sense" because "[a] more stringent requirement would either, in essence, put every case in which a stay is requested on an expedited schedule, with the parties required to brief the merits of the case in depth for stay purposes, or would have the court attempting to predict with accuracy the resolution of often-thorny legal issues without adequate briefing and argument." *Id.* at 967.

"A party requesting a stay pending appeal 'bears the burden of showing that the circumstances justify an exercise of that discretion.'" *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (quoting *Nken*, 556 U.S. at 433–34).

### B. Discussion

#### 1. Likelihood of Success

UBH contends is has raised serious legal questions as to this Court's rulings, including questions related to causation and the Court's application of the abuse of discretion standard. UBH has raised these issues in a number of contexts throughout the case and the Court has already explained on multiple occasions its reasons for rejecting UBH's arguments. To the extent that some of the Court's rulings have involved issues of first impression and raise thorny legal issues, the Court finds that this factor is satisfied.

#### 2. Irreparable Injury

UBH's primary argument with respect to irreparable harm is that reprocessing will be expensive. "'[M]onetary injury is not normally considered irreparable.'" *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 993 (9th Cir. 2019) (quoting *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980)). The Ninth Circuit has recognized

an exception to that rule, however, when there is a "sufficient" "'threat of being driven out of business.'" *Id.* (quoting *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985)). In addition, monetary loss may be irreparable if the money cannot be recouped. *See California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018), cert. denied sub nom. *Little Sisters of the Poor Jeanne Jugan Residence v. California*, 139 S. Ct. 2716 (2019). Here, UBH estimates the administrative cost of reprocessing will be approximately $30 million. It does not dispute, however, Plaintiff's assertion that UBH had a "record-setting" second quarter 2020 net income of close to 7 *billion* dollars, partially as a result of 'savings from surgeries, hospital stays and doctor visits canceled amid the coronavirus pandemic.'" *See* Opposition at 17 (quoting Anna Wilde Mathews and Dave Sebastian, UnitedHealth's Profits Surge Amid Health-Care Cancellations, Wall St. J. (last updated July 15, 2020, 12:16 PM EST), https://www.wsj.com/articles/unitedhealth-groups-second-quarter-profit-rose-11594809964). Nor does it contend the money it will be required to spend on reprocessing will threaten to drive it out of business. The Court concludes that even if the administrative cost of reprocessing cannot be recouped, in the context of UBH's overall financial picture this cost does not constitute irreparable injury. *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough.") (citing *Sampson v. Murray*, 415 U.S. 61, 90, (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958))).[2]

### 3. Injury to the Parties

Even assuming has UBH satisfied the irreparable injury requirement, the Court concludes

---

[2] The Court rejects UBH's assertion that the benefits it may be required to pay to class members as a result of reprocessing will cause it to suffer irreparable injury because class members may not repay those benefits if UBH prevails on appeal. The Court is confident that the parties, with the help of the Special Master, if necessary, can work together to implement procedures that will protect UBH from that result. The Court also is not persuaded by Dr. Triana's assertions, in his declaration, about the financial strain that reprocessing is likely to place on UBH and the difficulty UBH is likely to experience in hiring and training additional staff to conduct the reprocessing. As the Court has previously found that Dr. Triana offered less-than-credible testimony about the role that financial considerations played in influencing the development of UBH's Guidelines, it does not place great weight on his opinions related to the administrative and financial burden that will result from requiring it to carry out the reprocessing remedy.

that a stay would be inappropriate because of the substantial harm that at least some class members would likely experience as a result of the delay caused by a stay. Contrary to UBH's argument in the Motion that the payment of wrongfully denied claims is a purely retrospective remedy involving reimbursement for monetary losses, the Court found in its Remedies Order that "the potential benefits of reprocessing to class members is not limited to monetary reimbursement for treatment that class members had to pay for themselves." Remedies Order at 45. Rather, reprocessing will allow class members who are found to have been entitled to benefits to "correct the 'record' so that they can, if appropriate, pursue other remedies." *Id.* Even more importantly, "[a] proper adjudication as to past requests for services will . . . benefit some class members who did not obtain the treatment for which they requested coverage because UBH takes into account past treatment and coverage decisions in making further coverage determinations[.]" *Id.* As the denial of treatment for mental health or substance abuse disorder can have life-or-death consequences that cannot be redressed by remedies such as the award of prejudgment interest, the potential harm to these class members strongly outweighs any injury that UBH will experience as a result of a denial of its stay request.

### 4. Public Interest

While both parties contend the public interest favors their position, the Court concludes that this factor does not point strongly in favor of either party. UBH argues that it will have to divert resources from other important tasks related to fighting COVID-19 if it is required to go forward with reprocessing, but it does not back that assertion up with evidence that reprocessing will impose the sort of financial strain that would lead to that result. Likewise, its suggestion that self-funded employer benefit plans might raise their premiums or cut back on coverage if required to reimburse class members for wrongfully denied benefits is entirely speculative. On the flip side, Plaintiffs point to significant interest in this case on the part of the media, legislatures and regulators to show that a delay will not be in the public interest, but they have not offered a persuasive explanation of why the relief requested here will significantly impair any associated public interest.

## IV. CONCLUSION

For the reasons stated above, the Motion Is DENIED.

**IT IS SO ORDERED.**

Dated: December 28, 2020

                                                    JOSEPH C. SPERO
                                                  Chief Magistrate Judge