JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
ANDREW HOLMER (SBN 268864)
aholmer@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Phone: (213) 622-4750
Fax: (213) 622-2690

THOMAS F. KOEGEL (SBN 125852)
tkoegel@crowell.com
NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Phone: (415) 986-2800
Fax: (415) 986-2827

APRIL N. ROSS (admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**DAVID WIT et al.**,

Plaintiffs,

v.

**UNITED BEHAVIORAL HEALTH**,

Defendant.

Case No. 14-cv-02346 JCS
Related Case No. 14-cv-05337 JCS

**UNITED BEHAVIORAL HEALTH'S OPPOSITION TO PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS**

Hon. Joseph C. Spero

Hearing Date: January 29, 2021

Hearing Time: 9:30 a.m.

Courtroom: F

**GARY ALEXANDER et al.,**

Plaintiffs,

v.

**UNITED BEHAVIORAL HEALTH,**

Defendant.

# TABLE OF CONTENTS


Page(s)

INTRODUCTION ..... 1

LEGAL STANDARDS ..... 2

ARGUMENT ..... 3

I. PLAINTIFFS DO NOT ESTABLISH THEIR ENTITLEMENT TO FEES UNDER ERISA. ..... 3

A. Plaintiffs Did Not Prevail Completely As They Claim. ..... 3

B. The Hummell Factors Also Do Not Support An Award Of Fees. ..... 6

II. IT IS PREMATURE TO AWARD FEES PENDING APPEAL AND REPROCESSING. ..... 7

III. PLAINTIFFS' FEE PETITION SHOULD BE DENIED OR THE LODESTAR REDUCED BECAUSE THEY FAIL TO PROPERLY SUBSTANTIATE THEIR REQUEST FOR ATTORNEYS' FEES. ..... 8

IV. PLAINTIFFS' LODESTAR CALCULATION IS NOT REASONABLE. ..... 10

A. Plaintiffs' Proposed Hourly Rates Are Not Reasonable. ..... 10

1. The Court Should Not Apply 2020 Rates To Work Performed In Earlier Years. ..... 10

2. Associate-Level Tasks Should Be Compensated At Associate Rates. ..... 12

3. Unreasonable Paralegal and Litigation Support Hourly Rates ..... 12

4. Unreasonable Billing Rates for Solo Practitioners Bendat and Maul ..... 13

B. The Hours Claimed Are Not Necessary Or Reasonable. ..... 13

V. THE COURT SHOULD NOT APPLY A LODESTAR MULTIPLIER. ..... 16

A. There Is A Strong Presumption That The Lodestar Amount Is Sufficient. ..... 16

B. Plaintiffs Have Not Shown That Extraordinary Circumstances Warrant A Positive Multiplier. ..... 17

C. Even If A Multiplier Were Allowed, It Cannot Be Applied To All Fees. ..... 19

VI. PLAINTIFFS' UNSUBSTANTIATED REQUEST FOR COSTS SHOULD BE DENIED. ..... 19

VII. PLAINTIFFS' UNSUBSTANTIATED COSTS ARE NOT REASONABLE OR RECOVERABLE. ..... 20

## TABLE OF CONTENTS
(continued)

**Page**

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

*Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541 (9th Cir. 1996) .......... 25

*Allen v. City of Los Angeles*, 1995 WL 433720 (C.D. Cal. Jan. 13, 1995) .......... 15

*Ang v. Bimbo Bakeries USA, Inc.*, 2020 WL 5798152 (N.D. Cal. Sept. 29, 2020) .......... 16

*Asarco LLC v. Atl. Richfield Co.*, 2018 WL 11225131 (D. Mont. Oct. 5, 2018) .......... 21

*Ashker v. Cate*, 2018 WL 3108924 (N.D. Cal. June 25, 2018) .......... 15

*Banas v. Volcano Corp.*, 47 F. Supp. 3d 957 (N.D. Cal. 2014) .......... 10

*Blum v. Stenson*, 465 U.S. 886 (1984) .......... 11, 17, 18, 19

*Cancio v. Fin. Credit Network, Inc.*, 2005 WL 1629809 (N.D. Cal. July 6, 2005) .......... 14

*Castellano v. Charter Commc'ns., LLC*, 2014 WL 1569242 (W.D. Wash. Apr. 17, 2014) .......... 25

*Christoff v. Ohio N. Univ. Emp. Benefit Plan*, 2010 WL 3958735 (N.D. Ohio Oct. 8, 2010) .......... 8

*City of Burlington v. Dague*, 505 U.S. 557 (1992) .......... 18

*Clark v. City of Los Angeles*, 803 F.2d 987 (9th Cir. 1986) .......... 14

*Congdon v. Uber Techs., Inc.*, 2019 WL 2327922 (N.D. Cal. May 31, 2019) .......... 20

*Cruz v. Starbucks Corp.*, 2013 WL 2447862 (N.D. Cal. June 5, 2013) (Spero, J.) .......... 13, 22

*Cuviello v. Feld Ent., Inc.*, 2015 WL 154197 (N.D. Cal. Jan. 12, 2015) .......... 12

*In re CV Therapeutics, Inc., Sec. Litig.*, 2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) ....................20

*Davis v. Prison Health Servs.*, 2012 WL 4462520 (N.D. Cal. Sept. 25, 2012) ....................9

*Defenbaugh v. JBC & Assocs.*, 2004 WL 1874978 (N.D. Cal. Aug. 10, 2004) (Spero, J.) ....................15

*Delson v. CYCT Mgmt. Grp., Inc.*, 2013 WL 1819265 (N.D. Cal. Apr. 30, 2013) ....................19

*Demmings v. KKW Trucking, Inc.*, 2018 WL 4495461 (D. Or. Sept. 19, 2018)....................23

*Dickens v. Aetna Life Insurance Co.*, 2011 WL 1258854 (S.D.W.Va. Mar. 28, 2011)....................5, 6

*Dine v. Metro. Life Ins. Co.*, 2011 WL 6131312 (C.D. Cal. Dec. 9, 2011) ....................11

*Duncan v. Hartford Life & Accident Ins. Co.*, 2013 WL 1785904 (E.D. Cal. Apr. 25, 2013)....................5, 8

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211 (9th Cir. 1997)....................9

*Facebook, Inc. v. Grunin*, 2015 WL 884035 (N.D. Cal. Feb. 19, 2015)....................20

*Farris v. Cox*, 508 F. Supp. 222 (N.D. Cal. 1981) ....................14, 15

*Gates v. Gomez*, 60 F.3d 525 (9th Cir. 1995)....................15

*Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 (E.D. Cal. Sept. 9, 2013)....................14

*Gonzalez v. City of Maywood*, 729 F.3d 1196 (9th Cir. 2013)....................9

*Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010) ....................2, 5, 6, 8

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ....................3, 9, 13

*Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir. 1980)....................2, 3, 6

*James v. AT&T W. Disability Benefits Prog.*,
2014 WL 7272983 (N.D. Cal. Dec. 22, 2014) ....10, 14

*Jeremiah B. v. Dep't of Educ.*,
2010 WL 346454 (D. Haw. Jan 29, 2010) ....13

*Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*,
741 F.3d 955 (9th Cir. 2013) (per curiam) ....21

*King v. Aetna Life Ins. Co.*,
2011 WL 2682102 (C.D. Cal. July 7, 2011) ....5

*Kopp v. U.S. Secret Serv.*,
2019 WL 2327933 (N.D. Cal. May 31, 2019) (Spero, J.) ....15

*Kronzer v. Hintz*,
501 F. App'x 687 (9th Cir. 2012) ....4

*Lehr v. City of Sacramento*,
2013 WL 1326546 (E.D. Cal. Apr. 2, 2013) ....15

*Loomis v. Exelon Corp.*,
2010 WL 1005037 (N.D. Ill. Mar. 11, 2010) ....21

*Loretz v. Regal Stone, Ltd.*,
756 F. Supp. 2d 1203 (N.D. Cal. 2010) ....15

*Mahach-Watkins v. Depee*,
2008 WL 512707 (N.D. Cal. Feb. 25, 2008) ....15

*Mashburn v. Yamhill County*,
2014 WL 1383563 (D. Or. Apr. 8, 2014) ....15

*McCarthy v. R.J. Reynolds Tobacco Co.*,
2011 WL 4928623 (E.D. Cal. Oct. 17, 2011) ....9

*McCollum v. Life Ins. Co. of N. Am.*,
2013 WL 308978 (E.D. Mich. Jan. 25, 2013) ....8

*McElwaine v. US W., Inc.*,
176 F.3d 1167 (9th Cir. 1999) ....3

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ....23

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) ....9

*Munoz v. Cal. Bus. Bureau, Inc.*,
2017 WL 3009210 (E.D. Cal. July 14, 2017) ....13

*N.L. v. Credit One Bank, N.A.*, 2019 WL 1428122 (E.D. Cal. Mar. 29, 2019) ....... 21

*Nelson v. EG&G Energy Measurements Group, Inc.*, 37 F. 3d 1384 (9th Cir. 1994) ....... 3

*Notter v. City of Pleasant Hill*, 2017 WL 5972698 (N.D. Cal. Nov. 30, 2017) ....... 14

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 2016 WL 1255454 (N.D. Cal. Mar. 31, 2016) ....... 9

*Oberfelder v. City of Petaluma*, 2002 WL 472308 (N.D. Cal. Jan. 29, 2002) ....... 16

*Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 2014 WL 2621202 (N.D. Cal. June 12, 2014) ....... 10

*Patterson v. Hughes Aircraft Co.*, 11 F.3d 948 (9th Cir. 1993) ....... 7

*Payne v. Bay Area Rapid Transit Dist.*, 2009 WL 1626588 (N.D. Cal., June 5, 2009) ....... 21, 22

*People Who Care v. Rockford Bd. of Educ.*, 1990 WL 25883 (N.D. Ill. Feb. 23, 1990) ....... 21

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) ....... *passim*

*Pomerleau v. Health Net of Cal., Inc.*, 2012 WL 5829850 (C.D. Cal. Nov. 15, 2012) ....... 4

*Reg'l Local Union No. 846 v. QPL, Inc.*, 2013 WL 3972431 (D. Or. July 31, 2013) ....... 21

*Reyes v. Bakery & Confectionery Union & Inds. Int'l Pension Fund*, 281 F. Supp. 3d 833 (N.D. Cal. 2017) ....... 23

*Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975 (N.D. Cal. 2017) ....... 19

*Rogers v. Baxter Intern. Inc.*, 2011 WL 941188 (N.D. Ill. Mar. 16, 2011) ....... 21

*Ryan v. Editions Ltd. W.*, 786 F.3d 754 (9th Cir. 2015) ....... 10

*Saffle v. Sierra Pacific Power Co. Long Term Disability Income Plan*, 85 F.3d 455 (9th Cir. 1996) ....... 7

*Simonia v. Glendale Nissan/Infiniti Disability Plan*,
608 F.3d 1118 (9th Cir. 2010)....3

*Slaight v. Tata Consultancy Servs.*,
2019 WL 3934934 (N.D. Cal. Aug. 20, 2019)....20

*Sorchini v. City of Covina*,
250 F.3d 706 (9th Cir. 2001) (per curiam)....8

*Sorenson v. Mink*,
239 F.3d. 1140 (9th Cir. 2001)....15

*Stewart v. Applied Materials, Inc.*,
2017 WL 3670711 (N.D. Cal. Aug. 25, 2017)....12

*Terry v. City of San Diego*,
583 F. App'x 786 (9th Cir. 2014)....13

*Vivas v. Hartford Life & Accident Ins. Co.*,
2013 WL 5226720 (S.D. Fla. June 17, 2013)....5

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
2020 WL 2086368 (N.D. Cal. Apr. 30, 2020)....16, 20

*In Re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994)....10, 16

*Webb v. Hartford Fin. Servs. Grp., Inc.*,
608 F. Supp. 2d 1218 (C.D. Cal. 2009)....6

*Welch v. Metro. Life Ins. Co.*,
480 F.3d 942 (9th Cir. 2007)....10

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
445 F. Supp. 3d 508 (N.D. Cal. 2020)....9

*White v. Coblentz Patch Duffy & Bass LLLP Long Term Disability Ins. Plan*,
2008 WL 340479 (N.D. Cal. Feb. 5, 2008)....6

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2020 WL 4212811 (N.D. Cal. July 22, 2020)....16

*Yates v. Bechtel Jacobs Co LLC*,
2011 WL 2462840 (E.D. Tenn. May 5, 2011)....8

*Yue v. Storage Tech. Corp.*,
2008 WL 11256331 (N.D. Cal. Aug. 6, 2008)....12

*Yufa v. TSI Inc.*,
2014 WL 4071902 (N.D. Cal. Aug. 14, 2014)....9

**Federal Statutes**

28 U.S.C. § 1961 ....................11

29 U.S.C. § 1132(g)(1 .................... *passim*

**Rules**

9th Cir. R. 36-3(c) ....................8

Local Rule 54-1(a) ....................19

**Other Authorities**

*What's Ahead This Year*, Groom L. Grp. (Jan. 3, 2021), https://www.groom.com/resources/2020-erisa-litigation-trends-hint-at-whats-ahead-this-year ....................17

## INTRODUCTION

Plaintiffs obtained a classwide judgment comprised of solely declaratory and injunctive relief. Plaintiffs made a strategic choice *not* to try to prove that any plaintiff or any class member was entitled to benefits, or that United Behavioral Health ("UBH") denied any benefits to any class member that should have been covered under that member's individual benefit plan. As a result, Plaintiffs obtained no monetary remedy for the class, and there is no certainty that class members will receive additional benefit payments following reprocessing. There also is no certainty that the Court's rulings will withstand UBH's pending appeal, which this Court recognized raises "serious questions" of "first impression" under ERISA. Plaintiffs' three law firms, Zuckerman Spaeder LLP, Psych-Appeal, Inc., and The Maul Firm, P.C. (collectively "Class Counsel") now ask the Court to award them more than $28 million in legal fees, which includes a 50% enhancement above their claimed lodestar amount, and more than $1.2 million in expenses. Class Counsel's extraordinary request should be denied.

Class Counsel are not entitled to an award of attorneys' fees under ERISA because they cannot satisfy the threshold requirement that Plaintiffs achieved success on the merits and not a purely procedural victory. The Court did not find that any plaintiff or any class member is entitled to benefits. The relief Plaintiffs obtained in this case is procedural, consisting primarily of a remand to UBH for reprocessing of prior benefit determinations and an injunction requiring UBH to continue using the guidelines it voluntarily adopted. Plaintiffs abandoned their request for benefits at the class certification stage and lost their request for a surcharge at the summary judgment stage. Under Ninth Circuit and Supreme Court law, a purely procedural victory such as this does not entitle Plaintiffs to recover attorneys' fees. Alternatively, the Court should deny Plaintiffs' fee petition as premature because the Court cannot assess the relevant factors for recovering attorneys' fees under ERISA—including whether Plaintiffs achieved success on the merits and whether they obtained more than a procedural victory for the class—until all appeals are exhausted and reprocessing, if any, is complete.

If the Court finds it is appropriate to address attorneys' fees now, the Court should still

deny or reduce Class Counsel's requested fees and expenses. James P. Schratz, an expert in attorney-fee audits, conducted a detailed audit of Class Counsel's claimed hours and expenses. His audit reveals a host of deficiencies, such as vague and redacted time entries, block billing, partners performing associate-level work, excessive internal meetings, and a total absence of original, supporting documentation of expenses. As a result, Class Counsel's fees are far from reasonable. Among the most egregious are Class Counsel's request for a *$2.7 million windfall*, through application of current billing rates to work they performed years ago, their request for *more than $1 million in fees* simply for preparing their fee petition, and their assertion that UBH should compensate them for promoting their victory to the media. They also ask the Court to order UBH to reimburse them for *more than $1.2 million* in unsubstantiated expenses, including unexplained "investigator" fees and nearly $400,000 in travel expenses – including more than $150,000 to stay at the luxury Intercontinental Hotel during trial, scores of presumably first-class flights that cost as much as $4,000 each, and individual meals topping $2,000. They also seek hundreds of dollars for "laundry" charges, more than $35,000 for the clerical task of "PDF linking", and thousands of dollars for conference calls among themselves. As explained below and in Mr. Schratz's declaration, these records should be closely scrutinized, and the Court should deny or reduce the fees and expenses requested by Class Counsel for multiple reasons. Finally, in seeking to further inflate the requested fees with a 50% "enhancement," Plaintiffs ignore and misread controlling case law, none of which supports this remarkable request.

Class Counsel's fee petition is legally and factually unsupported, and at a minimum, premature. And even if this Court were to conclude that some part of the fee petition should be considered, the Court should substantially reduce the requested fees and expenses.

## LEGAL STANDARDS

To obtain an award of attorneys' fees under ERISA, 29 U.S.C. §1132(g)(1), Plaintiffs must demonstrate that they achieved "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). A "purely procedural victory" does not entitle a party to fees. *Id.* Only if the moving party carries its threshold burden to show success on the merits, the district court then must consider the five *Hummell* factors to determine if a fee award

is warranted. *See Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1121 (9th Cir. 2010). These factors are:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980). No one factor is dispositive. *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999).

If the Court finds that Plaintiffs are entitled to fees under ERISA, the Court then must determine the reasonable fees using the lodestar approach, which multiplies the reasonable number of hours incurred by a reasonable hourly rate. This is a two-part inquiry under *Hensley v. Eckerhart*, 461 U.S. 424 (1983). First, the court must exclude fees for work on unsuccessful claims and theories. *Id.* at 434. Second, the court must evaluate the remaining time entries to determine if they were reasonably necessary to achieve the results obtained. *Id.* There is a "strong presumption that the lodestar is sufficient" under a fee-shifting statute like ERISA and that no enhancement is warranted. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010). If counsel request an enhancement to the lodestar, "factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." *Id.*

## ARGUMENT

### I. Plaintiffs Do Not Establish Their Entitlement To Fees Under ERISA.

#### A. Plaintiffs Did Not Prevail Completely As They Claim.

Plaintiffs claim that they "prevailed completely" in this case and obtained "the entire relief sought." Pls.' Pet. for Att'ys' Fees & Costs (ECF No. 507) ("Pls.' Pet.") at 3. Based on this assertion, they cite *Nelson v. EG&G Energy Measurements Group, Inc.*, 37 F. 3d 1384 (9th Cir. 1994), and argue that the Court may bypass any further analysis of their "success on the merits."

But Plaintiffs did not obtain the entire relief sought in the complaint, and their subsequent maneuvering to shift the goalposts—by seeking only a reprocessing, rather than an actual award of benefits and surcharge—is not a basis to declare complete victory in the case. Success is defined in relation to the claims alleged in the complaint, not claims as redefined and narrowed for trial. *See, e.g.*, *Kronzer v. Hintz*, 501 F. App'x 687, 691 (9th Cir. 2012); *Pomerleau v. Health Net of Cal., Inc.*, 2012 WL 5829850, at *2 (C.D. Cal. Nov. 15, 2012) (the question is whether "Plaintiff received the relief she sought in her Complaint").

In Plaintiffs' complaint, they sought payment of benefits for each member of the class. *See* First Am. Class Action Compl. (ECF No. 32) ¶ 206 ("Plaintiffs and the members of the Class have been harmed by Defendants' improper benefit denials because they were deprived of insurance benefits they were owed."). They sought significant monetary recovery in the form of:

> a surcharge . . . in an amount equivalent to the revenue [UBH] generated from its corporate affiliates or the plans for providing mental health and substance abuse-related claims administration services with respect to claims filed by Plaintiffs and members of the Class, expenses that UBH's corporate affiliates saved due to UBH's wrongful denials, the out-of-pocket costs for residential treatment that Plaintiffs and members of the Class incurred following UBH's wrongful denials, and/or pre-judgment interest[.]

*Id.* at 66. But at the hearing on class certification over two years after the case was filed, Plaintiffs jettisoned any attempt to show that they were entitled to any denied benefits because they recognized that they could not obtain class certification while pursuing that relief. Class Cert. Order (ECF No. 174) at 10 n.10, 11. At the class certification hearing, Plaintiffs also stipulated to limit the surcharge request to "the amount UBH was paid to process the claims that were denied." *Id.* at 43. Nine months later, in their opposition to UBH's motion for summary judgment, Plaintiffs argued for a surcharge calculated as an unstated percentage of UBH's <u>total</u> revenues over a six-year period. ECF No. 260-04 (filed under seal). The Court granted summary judgment to UBH on the surcharge remedy because Plaintiffs did not present any evidence to support that calculation. Am. Summ. J. Order (ECF No. 492) at 26. While Plaintiffs may have prevailed on the aspects of their claims that remained for trial, they did not achieve a "complete" success or the "entire relief" they sought in this case.

The Supreme Court addressed the standard for obtaining attorneys' fees in ERISA cases in *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242 (2010). Under ERISA, a "purely procedural victor[y]" does not entitle the plaintiff to fees. *Hardt*, 560 U.S. at 255. While the Court concluded fees were appropriate in that case, it was only *after* the district court found compelling evidence that she should prevail on her benefits claim and *after* the administrator found that the plaintiff was entitled to benefits on remand. *Id.* at 255-56. The Supreme Court did not reach the question of whether an order remanding for reprocessing is by itself sufficient to trigger a fee award or whether it is a "purely procedural victory." A number of district courts have since concluded that, where the court does not decide whether benefits are due under ERISA, and instead remands that determination to the plan administrator, the plaintiff is not entitled to recover fees under ERISA. *See, e.g.*, *Duncan v. Hartford Life & Accident Ins. Co.*, 2013 WL 1785904, at *2 (E.D. Cal. Apr. 25, 2013) (characterizing remand so that plan could conduct second independent review as a purely procedural victory); *King v. Aetna Life Ins. Co.*, 2011 WL 2682102, at *5 (C.D. Cal. July 7, 2011) (concluding plaintiffs did not achieve success within the meaning of *Hardt* because court did not make any determination as to whether they were eligible for coverage); *Vivas v. Hartford Life & Accident Ins. Co.*, 2013 WL 5226720, at *3 (S.D. Fla. June 17, 2013) (denying fees where remand was ordered based on finding that administrator violated regulation), *R.&R. adopted*, 2013 WL 5226506 (Aug. 27, 2013).[1]

*Dickens v. Aetna Life Insurance Co.*, 2011 WL 1258854 (S.D.W.Va. Mar. 28, 2011), is illustrative. In *Dickens*, the district court found that Aetna abused its discretion under the plaintiff's ERISA plan by failing to address certain evidence submitted in support of the plaintiff's disability claim. *Id.* at *5. The court remanded the benefits claim to the administrator, expressing no opinion as to whether the plaintiff was entitled to benefits on remand. *Id.* The court then denied the plaintiff's request for attorneys' fees under ERISA because a remand, without a corresponding finding of entitlement to benefits, is a purely procedural victory. *Id.* at *5–6. Like

[1] The other remedies Plaintiffs obtained in this case—an injunction requiring UBH to continue using the third-party guidelines it had voluntarily adopted and to train its staff on those guidelines and ERISA—also are purely procedural.

in *Dickens*, and unlike in *Hardt*, Plaintiffs in this case pursued a purely procedural remand, and the Court made no findings as to whether any plaintiff or class member was entitled to benefits under ERISA. At summary judgment and trial, they argued that the harm underlying their claims was not the "denial of benefits," but the "intangible," "procedural violation" of "the denial of their right to fair adjudication of their claims for coverage based on Guidelines that were developed solely for their benefit." *See* FFCL (ECF No. 418) ¶ 204; Am. Summ. J. Order at 19–20, 24. This choice to pursue a facial challenge to an alleged "procedural violation" was successful, and the resulting procedural remand does not entitle Class Counsel to recover fees under ERISA.

### B. The *Hummell* Factors Also Do Not Support An Award Of Fees.

Plaintiffs also fail to show that the *Hummell* factors support a fee award in this case.

On the first factor, culpability or bad faith, Plaintiffs did not prove at trial that UBH wrongfully denied benefits or caused any non-procedural harm to any plaintiff or class member. The evidence at trial also does not support Plaintiffs' contention of bad faith. Uncontroverted evidence showed that UBH solicited hundreds of comments on its guidelines from a host of external clinicians and professional societies, including regularly asking whether there were any "criteria that should be added or deleted" from the guidelines, and substantial evidence supported UBH's interpretation of standards of care. Trial Ex. 1114-0001; Trial Tr. at 1702:23–1703:1, 1726:12–20 (Triana); *see* Trial Exs. 0408, 1252–54. If "reasonable," medically trained minds "can disagree" about whether UBH's guidelines are consistent with generally accepted standards of care, then UBH "cannot be characterized as acting arbitrarily for disagreeing with a plaintiff" on these issues. *Webb v. Hartford Fin. Servs. Grp., Inc.*, 608 F. Supp. 2d 1218, 1227 (C.D. Cal. 2009); *accord White v. Coblentz Patch Duffy & Bass LLLP Long Term Disability Ins. Plan*, 2008 WL 340479, at *2 (N.D. Cal. Feb. 5, 2008) (finding that defendant wrongfully denied ERISA benefits does not support finding a high degree of culpability or bad faith under *Hummell* in light of disputed and contradictory medical evidence).

The second *Hummell* factor, UBH's ability to satisfy an award of attorneys' fees, is not

determinative and should carry little weight. Even if UBH is able to satisfy an award of attorneys' fees, Plaintiffs' unprecedented demand for more than $28 million is not reasonable.

Third, an award of attorneys' fees is not needed to deter other plan fiduciaries' conduct because this case was a facial challenge to UBH's internally-developed clinical guidelines, which UBH no longer uses.

Fourth, the Court looks at whether Plaintiffs "sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA." Here, Plaintiffs abandoned any request for benefits for the class and instead sought a purely procedural remedy. The evidence shows that at least a substantial portion of the class cannot benefit from the reprocessing remedy, including members who never got the services or who assigned their rights to benefits to someone else. *See* UBH's Mot. to Stay (ECF No. 506) at 6–7; *id.*, Decl. of Mary Beth Edwards (ECF No. 506-3) ¶ 8.

Finally, the relative merits of the parties' positions do not favor Plaintiffs. While Plaintiffs prevailed in the district court, the Court conceded that this case presents "thorny legal issues" involving matters of "first impression" and that UBH's arguments will present "serious questions" on appeal. Mot. to Stay Order (ECF No. 517) at 4.

## II. It Is Premature To Award Fees Pending Appeal And Reprocessing.

The Court also should deny Plaintiffs' petition for attorneys' fees because the question of whether Class Counsel are entitled to fees under ERISA is not yet ripe.

It is premature to award fees before reprocessing, if any, is completed. In certifying the classes, the Court relied on *Saffle v. Sierra Pacific Power Co. Long Term Disability Income Plan,* 85 F.3d 455 (9th Cir. 1996), to hold that Plaintiffs could receive a reprocessing without first establishing a causal connection between the challenged provisions of the guidelines and each of the class members' benefits decisions. In ordering a remand in *Saffle*, the Ninth Circuit concluded that it was premature to award attorneys' fees until after the reprocessing occurred. *Id.* at 460–61 (reversing the district court's order to pay benefits, directing that the court remand to the administrator for further consideration, and declining to award fees on appeal as "premature" pending reprocessing); *see also Patterson v. Hughes Aircraft Co.,* 11 F.3d 948, 951 n.4 (9th Cir.

1993) (ordering the district court to remand a benefits claim to the plan for reconsideration and summarily declining to award fees on appeal). Applying the same reasoning here, Plaintiffs' fee petition also is "premature." Plaintiffs introduced no proof at trial that the challenged guidelines caused any class member harm. Plaintiffs likewise never attempted to show that reprocessing is likely to result in meaningful relief to the class as a whole; to the contrary, the evidence shows that a substantial portion of the class would not benefit from reprocessing. Edwards Decl. (ECF No. 506-3) at ¶ 8.

Plaintiffs' claims for unpaid benefits are no more adjudicated today than they were when they originally filed this lawsuit. Only after reprocessing is complete will the Court be able to assess whether Plaintiffs achieved meaningful success on the merits for the class, and not a purely procedural victory. *See Duncan*, 2013 WL 1785904, at *2 (where ERISA claim for disability benefits was remanded to the insurer to conduct an administrative review, court denied plaintiff's motion for fees on the grounds that "Plaintiff has not shown that her success was other than a procedural victory"); *McCollum v. Life Ins. Co. of N. Am.*, 2013 WL 308978, at *1 (E.D. Mich. Jan. 25, 2013) (denying fees, without prejudice and subject to refiling following remand to administrator); *Christoff v. Ohio N. Univ. Emp. Benefit Plan*, 2010 WL 3958735, *1–2 (N.D. Ohio Oct. 8, 2010) (same); *Yates v. Bechtel Jacobs Co LLC*, 2011 WL 2462840, *2 (E.D. Tenn. May 5, 2011) (same), *R.&R. adopted*, 2011 WL 2462811 (June 20, 2011).[2]

## III. Plaintiffs' Fee Petition Should Be Denied Or The Lodestar Reduced Because They Fail To Properly Substantiate Their Request For Attorneys' Fees.

The Court also should deny or reduce Plaintiffs' request for attorneys' fees because they do not substantiate their claims of billed hours with original time records containing detailed

---

[2] Plaintiffs argue that it is not premature to award fees before reprocessing, citing *Mizzell v. Provident Life & Accident Ins. Co.*, 32 F. App'x 352, 354 (9th Cir. 2002) and *Hardt*, 560 U.S. at 255. *Mizell* is a pre-2017 unpublished decision that cannot be cited or relied upon in the Ninth Circuit. *See* 9th Cir. R. 36-3(c); *Sorchini v. City of Covina,* 250 F.3d 706, 708 (9th Cir. 2001) (per curiam). The court's ultimate decision to award fees in *Hardt* is inapposite, as the district court found compelling evidence that the plaintiff was entitled to benefits and awarded fees only after the plaintiff obtained benefits on remand. Here, Plaintiffs expressly asked the Court *not* to make such findings and requested – and obtained – a procedural remand with no assurance that any benefit claim by any plaintiff or class member would be approved through reprocessing.

descriptions and because certain timekeepers engaged in inappropriate block billing that makes it impossible to assess the reasonableness of their fees.[3]

Class Counsel did not produce original billing records.[4] Instead, they submit declarations summarizing their incurred fees, to which they attach summary charts of time billed by each firm. *See* Decl. of Caroline E. Reynolds (Zuckerman Spaeder LLP) (ECF No. 507-2); Decl. of Meiram Bendat (Psych-Appeal) (ECF No. 507-3); Decl. of Anthony Maul (The Maul Firm, P.C.) (ECF No. 507-4). Many of the entries in Class Counsel's summary charts do not describe the services rendered in sufficient detail to justify the time and fees billed. Courts in this District have found "reductions appropriate where 'entries such as "reviewed email," "SJ motion," and "review documents" d[o] not provide enough detail about the work performed to allow the Court to determine whether the claimed hours are reasonable.'" *In re Wells Fargo & Co. S'holder Derivative Litig.,* 445 F. Supp. 3d 508, 532 (N.D. Cal. 2020) (quoting *Boconvi v. Velocity Express*, LLC, 2018 WL 2248988, at *4 (N.D. Cal. May 17, 2018)).[5] Redacted time entries similarly do not permit the Court to make a reasonableness determination. *See O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 2016 WL 1255454, at *7 (N.D. Cal. Mar. 31, 2016). The Court should accordingly reduce Plaintiffs' lodestar by $1,409,393.63 to account for vague and redacted time entries. Schratz Decl. ¶ 168.

---

[3] A district court may make either hour-by-hour reductions in the claimed lodestar or an across-the-board percentage cut in the hours claimed or in the final lodestar figure, as long as the court provides a clear explanation for the chosen percentage. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (district court may impose up to 10% haircut for hours that are unnecessarily duplicative, based on its exercise of discretion, without a more specific explanation).

[4] The Court may inspect the original billing records to determine whether the time incurred was reasonable. *See Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc*., 122 F.3d 1211, 1232 (9th Cir. 1997). Summary charts do not suffice if they lack sufficient detail. *Yufa v. TSI Inc.*, 2014 WL 4071902, at *8 (N.D. Cal. Aug. 14, 2014). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

[5] *See also Davis v. Prison Health Servs*., 2012 WL 4462520, at *11–12 (N.D. Cal. Sept. 25, 2012) (concluding that such billing entries as "conference calls with co-counsel," "review e-mail from opposing counsel," "review e-mail chain," "draft e-mail," and "legal research" are insufficiently detailed and reducing the fee award on that ground); *McCarthy v. R.J. Reynolds Tobacco Co.,* 2011 WL 4928623, at *4 (E.D. Cal. Oct. 17, 2011) (reducing a fee award where most of counsel's entries refer generally to "legal research" and "conversations with [co-counsel]" "without identifying the subject of the research or conversations").

Compounding this deficiency, certain timekeepers engaged in excessive block billing that makes it impossible to assess the reasonableness of the time spent on particular tasks. Schratz Decl. ¶¶ 150–52. The Court has discretion to reduce a fee request based on block billing where the entries are inadequate to allow the Court to determine whether the time spent on particular tasks is reasonable. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *Ryan v. Editions Ltd. W.*, 786 F.3d 754, 765 (9th Cir. 2015); *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 966–68 (N.D. Cal. 2014) (reducing fee request by 20% due to block billing). The Court should reduce Plaintiffs' lodestar by 15% due to improper block billing. Schratz Decl. ¶ 160.

## IV. Plaintiffs' Lodestar Calculation Is Not Reasonable.

### A. Plaintiffs' Proposed Hourly Rates Are Not Reasonable.

#### 1. The Court Should Not Apply 2020 Rates To Work Performed In Earlier Years.

Class Counsel argue that the Court should apply current (2020) hourly billing rates in calculating the lodestar for all time incurred since 2014. Pls.' Pet. at 11–12. While courts have discretion to calculate fees using an attorney's current rate as compensation for a delay in receiving payment, "[c]urrent rates are not required in every case." *James v. AT&T W. Disability Benefits Prog.*, 2014 WL 7272983, at *4 n.5 (N.D. Cal. Dec. 22, 2014); *In Re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1305 (9th Cir. 1994) (a district court is "free to use *either* current rates for attorneys of comparable ability and experience or historical rates coupled with a prime rate enhancement"). Instead, "[t]he question for the district court is the reasonableness of the fee in light of the totality of the circumstances and the relevant factors, including delay in payment." *James*, 2014 WL 7272983, at *4 n.5 (quotation marks omitted). The application of current rates should not "trigger an inordinate increase in the overall fee award." *Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 2014 WL 2621202, at *4 (N.D. Cal. June 12, 2014). Here, Plaintiffs' request to apply current rates would result in an enormous windfall, far exceeding a reasonable interest rate. *See Perdue*, 559 U.S. at 555 (suggesting that delay in payment of fees should be calculated on a reasonable basis "such as by applying a standard rate of interest").

Between 2014 and 2020, Zuckerman Spaeder's top five timekeepers each billed over 2,000 hours to this case,[6] with 84% of those hours recorded in 2017 or earlier. *See* Reynolds Decl., Ex. 3; Decl. of Matthew Ryan ¶ 4, Ex. A. These timekeepers' rates increased 20–28% over the course of this litigation, with an average rate increase of 24.2%. Reynolds Decl., Ex. 2. Between the trial in 2017 and the filing of their fee petition in 2020, their rates increased 10.7–16.6%, with an average increase of 12.8%.[7] *Id.* Applying historical annual billing rates to the hours incurred in each year, Zuckerman Spaeder's total fees, had they been contemporaneously billed to a fee-paying client without any discounts, are $15,213,075.35. Schratz Decl. ¶¶ 46, 47; Ryan Decl. ¶ 5. Applying 2020 hourly rates across the board increases the lodestar to $17,022,102.83—an inflation of $1,809,027.48. Applying the 1.5x multiplier on top of their current rates magnifies this inflation to $2.7 million.

Plaintiffs cite no authority—and UBH knows of none—authorizing such an enormous windfall purely on the basis of delayed payment. The Supreme Court instructs that "a reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys." *Blum v. Stenson*, 465 U.S. 886, 897 (1984). At most, this Court should apply standard interest rates to account for the delay in payment. *See Dine v. Metro. Life Ins. Co.*, 2011 WL 6131312, at *2 (C.D. Cal. Dec. 9, 2011) ("[T]he Court finds that using the attorneys' historical rates and adding a prime rate enhancement is more appropriate than using current rates."). Here, using interest rates, rather than inflated hourly rates, also would ensure that Class Counsel are not compensated more generously than the class they represent (who this Court has ruled should receive interest on any benefit payments that result from reprocessing). Applying simple interest to Plaintiffs' actual rates through December 31, 2020 using the one-year Treasury Constant Maturity Rate, consistent with 28 U.S.C. § 1961, yields interest of $759,133.49 above

---

[6] Caroline Reynolds (4,464.62 hours); Lori V. Duignan (2,652.45 hours); Adam Abelson (2,350.47 hours); Jason S. Cowart (2,063.10 hours); Andrew Caridas (2,421.40 through 2016).

[7] This calculation does not include post-trial rate increases for Mr. Caridas, who stopped working on this matter in 2016.

the base lodestar amount for Zuckerman Spaeder.[8] Ryan Decl. ¶¶ 6-7, Ex. B.

**2. Associate-Level Tasks Should Be Compensated At Associate Rates.**

Mr. Schratz's audit of Class Counsel's timekeeping charts reveals that a substantial number of hours were billed by partner-level lawyers performing work that could have—and therefore should have—been performed by more junior lawyers with lower billing rates. Specifically, Class Counsel requests $1,845,770.25 for entries referencing "legal research" performed by the highest-billing-rate senior lawyers. Schratz Decl. ¶ 192. This work could have been performed by any of the 7 associates or 12 staff attorneys listed in their time records.

The Northern District of California requires associate-level work, such as legal research, to be billed at associate rates. *See, e.g.*, *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *10 (N.D. Cal. Aug. 25, 2017) ("While the Court would expect [the most senior attorneys] to review and edit the Motion before filing, basic research and drafting tasks should have been left to a more junior lawyer."); *Cuviello v. Feld Ent., Inc.*, 2015 WL 154197, at *4 (N.D. Cal. Jan. 12, 2015) (reducing counsel's hours spent on "tasks that did not need the expertise of a partner and could have been performed by an associate at a lower billing rate," including "analyzing documents and legal authorities"); *Yue v. Storage Tech. Corp.*, 2008 WL 11256331, at *4 (N.D. Cal. Aug. 6, 2008) (reducing attorneys' fees where certain tasks performed by a partner "such as reviewing standing orders and conducting legal research[ ]could have been performed by an associate at a lower billing rate"). The Court should reduce the lodestar rate for these entries by a minimum of 10% to adjust partner-level rates to associate-level rates. Schratz Decl. ¶ 191.

**3. Unreasonable Paralegal and Litigation Support Hourly Rates**

Among its dozens of timekeepers, Zuckerman Spaeder seeks fees for three paralegals at rates of $300 to $370 per hour and two "Litigation Support" timekeepers at rates of $250 to $360 per hour. In total, Plaintiffs seek $1,269,088.90 for these non-attorney timekeepers (before applying any multiplier). As Mr. Schratz explains in his declaration, these proposed rates are not

---

[8] Co-counsel Bendat and Maul do not provide their historical billing rates. As explained below, their proposed billing rates are not reasonable and should be reduced.

reasonable and do not reflect prevailing market rates or rates awarded in comparable cases. Schratz Decl. ¶¶ 116–21. The court should reduce the rates for these timekeepers to reflect reasonable hourly rates of no more than $250 for paralegals and $150 for litigation support personnel. Schratz Decl. ¶¶ 122–25.

#### 4. Unreasonable Billing Rates for Solo Practitioners Bendat and Maul

Co-counsel Meiram Bendat (Psych-Appeal, Inc.) and Anthony Maul (The Maul Firm, P.C.) are solo practitioners. Their requested hourly rates of $900 and $675, respectively, are not consistent with prevailing market rates for solo practitioners or small firms and should accordingly be reduced in calculating Class Counsel's lodestar amount. *See* Schratz Decl. ¶¶ 137, 141 (recommending hourly rate of $700 for Mr. Bendat and $600 for Mr. Maul).

### B. The Hours Claimed Are Not Necessary Or Reasonable.

In determining the appropriate lodestar amount, the Court should exclude from the fee request any hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Here, the following unnecessary or unreasonable fees should be excluded or reduced.

**Clerical Work:** Clerical work is considered overhead, and is subsumed in the attorney's hourly rate. *Jeremiah B. v. Dep't of Educ.*, 2010 WL 346454, at *5 (D. Haw. Jan 29, 2010); *Terry v. City of San Diego*, 583 F. App'x 786, 790 (9th Cir. 2014) ("The district court correctly held that attorney hours devoted to clerical work should be deducted."). Mr. Schratz's analysis shows that attorneys billed 43.8 hours for clerical tasks, totaling $16,924.50 in fees, and paralegals and litigation-support timekeepers billed 538.2 hours for clerical work, totaling $446,569.05 (before applying any multiplier). Schratz Decl. ¶¶ 123-125, 172, 173. These hours should be disallowed.

**Excessive Internal Conferencing:** The Court should further reduce the requested fees by $200,532 due to excessive amounts of inter- and intra-office conferencing. Schratz Decl. ¶¶ 181, 182. "While it is reasonable to spend some time coordinating legal resources, it is not reasonable to double or triple-bill a client for internal meetings . . . ." *Munoz v. Cal. Bus. Bureau, Inc.*, 2017 WL 3009210, *5 (E.D. Cal. July 14, 2017) (reducing fee award due to excessive "interoffice conversations"); *accord Cruz v. Starbucks Corp.*, 2013 WL 2447862, at *7 (N.D. Cal. June 5,

2013) (Spero, J.) (accepting Mr. Schratz's audit recommendation and reducing attorney time by 11% due to excessive internal conferencing); *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594, at *3 (E.D. Cal. Sept. 9, 2013) (finding it unreasonable for counsel to collectively "triple-bill" for internal meetings).

**Preparing the Fee Petition:** Plaintiffs claim more than 1,279 hours, equating to just shy of $700,000 in fees, for preparing their petition for attorneys' fees. Schratz Decl. ¶ 202; *id.*, Ex. 30. With their proposed 1.5x multiplier, Plaintiffs ask the Court to award them *more than $1 million for preparing their fee petition*. This amount is entirely unreasonable and should either be denied outright or drastically reduced.

While courts generally allow fees for time spent preparing a fee motion, the hours spent on the motion must be "reasonably expended," and courts have "an obligation to scrutinize the hours spent preparing the fee petitions to ensure that the total is reasonable and that it does not represent a windfall for the attorneys." *Cancio v. Fin. Credit Network, Inc.*, 2005 WL 1629809, at *5 (N.D. Cal. July 6, 2005) (quoting *Farris v. Cox*, 508 F. Supp. 222, 226 (N.D. Cal. 1981)); *James*, 2014 WL 7272983, at *7 (reducing hours for fee motion). It is also not appropriate to apply an enlarging multiplier to time spent on a fee petition. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("[T]he factors that justified an upward adjustment for fees associated with the trial were generally absent or at least greatly reduced for litigation of the fee petition. . . . Use of the multiplier to increase the fees for fee-petition work was an abuse of discretion."); *Notter v. City of Pleasant Hill*, 2017 WL 5972698, at *7 (N.D. Cal. Nov. 30, 2017) ("[T]he multiplier only applies to the lodestar prior to the fees on fees.").

Plaintiffs' fee petition consists of a single 25-page brief, and a handful of supporting declarations (most from experts whose fees are not recoverable). Because Class Counsel were required to track their time over the course of this litigation, preparing the supporting charts and exhibits should have been largely a clerical task. There is no reasonable justification for expending more than 1,200 hours preparing this motion. Moreover, the vast majority of time entries associated with the fee petition are too vague to allow any meaningful review of their reasonableness. The court should reduce Class Counsel's demand for "fees on fees" down to

$150,000. Schratz Decl. ¶ 203.

**Media Contacts:** The Court also should disallow 54.41 hours (equating to $50,108.25 in their lodestar amount and more than $75,000 with their claimed 1.5x multiplier) spent by Class Counsel speaking to the media and related publicity work. Schratz Decl. ¶ 198. Press conferences, media interviews, and similar public-relations activities "are the kinds of activities that attorneys generally do at their own expense." *Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995). "[M]edia-related time spent by a lawyer may be compensable where it is narrowly focused on furthering the client's goals in litigation," but is not recoverable where—as here—it does not further the litigation. *Allen v. City of Los Angeles*, 1995 WL 433720, at *11 (C.D. Cal. Jan. 13, 1995).[9] As the Court explained in *Loretz v. Regal Stone, Ltd.*, 756 F. Supp. 2d 1203 (N.D. Cal. 2010), "Class Counsel should not be compensated for time spent interacting with the media. Such contacts serve to enhance Class Counsel's reputation, and that is compensation enough." *Id.* at 1215.

**Duplicative Work:** Plaintiffs' lodestar should be reduced by an additional $75,000 for unnecessarily duplicative attendance and work related to depositions. The Ninth Circuit directs that district courts should strike duplicative fees resulting from excessive staffing. *See Sorenson v. Mink*, 239 F.3d. 1140, 1146–47 (9th Cir. 2001). Fees should accordingly be disallowed where multiple attorneys attend the same deposition, particularly where the presence of more than one attorney does not provide additional benefit to the client. *Farris v. Cox*, 508 F. Supp. 222, 225–26 (N.D. Cal. 1981) (disallowing time billed by two of the three attorneys attending a deposition and time billed by one of the three attorneys attending a hearing); *Defenbaugh v. JBC & Assocs*., 2004

---

[9] *See also Kopp v. U.S. Secret Serv.*, 2019 WL 2327933, at *6 (N.D. Cal. May 31, 2019) (Spero, J.) (denying attorneys' fees where attorneys fail to explain "why outreach to the press was necessary to any litigation goal"); *Ashker v. Cate*, 2018 WL 3108924, at *19 (N.D. Cal. June 25, 2018) (disallowing fees for time spent "addressing media inquiries and communications" because plaintiffs "fail to show how this work is 'directly and intimately' related to Plaintiffs' representation" as they fail to "describe the contents of the media requests" or "explain how responding to media inquiries and communications is reasonably related to the Settlement"); *Mahach-Watkins v. Depee*, 2008 WL 512707, at *3 (N.D. Cal. Feb. 25, 2008) (disallowing fees for "time spent on media contacts"); *Mashburn v. Yamhill County*, 2014 WL 1383563, at *8 (D. Or. Apr. 8, 2014) ("Efforts to obtain publicity for a case are 'activities that attorneys generally do at their own expense.'" (quoting *Gates*, 60 F.3d at 535)); *Lehr v. City of Sacramento*, 2013 WL 1326546, at *12 (E.D. Cal. Apr. 2, 2013) ("Hours spent for media contacts and press conferences are generally not compensable.").

WL 1874978, at *8 (N.D. Cal. Aug. 10, 2004) (Spero, J.) (noting that "the Court almost certainly would have found the attendance of all three of Plaintiff's counsel at the mediation to be unreasonable"); *Oberfelder v. City of Petaluma*, 2002 WL 472308, at *7 (N.D. Cal. Jan. 29, 2002) ("Duplicative hours are those where the presence of more than one attorney does not provide benefit to the client."). Per Mr. Schratz's audit, the Court should reduce the lodestar amount by $75,000 for unnecessarily duplicative work and attendance. Schratz Decl. ¶¶ 193–95.

**Travel Time:** "Courts in this district have frequently reduced travel time by half to create a reasonable rate." *Ang v. Bimbo Bakeries USA, Inc.*, 2020 WL 5798152, *10 (N.D. Cal. Sept. 29, 2020); *see also Wash. Pub. Power*, 19 F.3d at 1298–99; *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2020 WL 2086368, at *8 (N.D. Cal. Apr. 30, 2020). Class Counsel's respective hourly rates should be reduced by at least 50 percent for travel time.

## V. The Court Should Not Apply A Lodestar Multiplier.

### A. There Is A Strong Presumption That The Lodestar Amount Is Sufficient.

Plaintiffs' massive proposed enhancement—a multiplier of 150%—rests on a misstatement of controlling case law. The Supreme Court addressed whether, and when, a district court should award an enhancement above and beyond the lodestar amount in *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010). The Court cautioned that "there is a strong presumption that the lodestar calculation is sufficient" and only in "rare" or "extraordinary" cases should it be adjusted. *Id.* at 546. This is because "the lodestar calculation will in virtually every case already reflect all indicia of attorney performance relevant to a fee award." *Id.* at 561 (Thomas, J., concurring). Thus, "factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and providing with specificity that an enhanced fee is justified." *Id.* at 546. There is no basis to apply a positive lodestar multiplier of 1.5x in this case, which would increase Class Counsel's lodestar by over $9 million. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, *30 (N.D. Cal. July 22, 2020) (rejecting request for $10 million enhancement on $20 million lodestar because it "would provide

an unreasonable windfall to Class Counsel.”).

**B. Plaintiffs Have Not Shown That Extraordinary Circumstances Warrant A Positive Multiplier.**

Plaintiffs argue that they are entitled to a 1.5x fee enhancement because their $18 million lodestar is not sufficient to attract capable attorneys to bring complex ERISA class actions on a contingent basis. Pls.’ Pet. at 19–20; *see generally* Decl. of Brian Fitzpatrick (ECF No. 507-11). These factors cannot support application of a positive multiplier.

First, Class Counsel argue that, if they had not brought this suit, it would not have been brought because it requires special skills and expertise. Pls.’ Pet. at 21. They argue that an upwards enhancement of the lodestar is necessary to ensure that future plaintiffs can “attract qualified counsel to represent them in future cases similar to this one.” *Id.* at 20. But “the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors ‘presumably are fully reflected in the number of billable hours recorded by counsel’” and their hourly rates. *Perdue*, 559 U.S. at 553 (quoting *Blum*, 465 U.S. at 898). Likewise, “quality of an attorneys’ performance” generally “may not be used as a ground for an enhancement.” *Id.*

Here, Plaintiffs’ stated justifications for their hourly rates and their time entries rest on arguments about the scope and complexity of this case and the novelty of their legal theory. Plaintiffs present no evidence to support an adjustment on top of their already-massive lodestar. They offer only unsupported speculation of Professor Fitzpatrick—whose career focuses on promoting class actions—that a positive multiplier is required to attract skilled ERISA counsel to bring class actions such as this. To the contrary, “the lodestar method yields a fee that is presumptively sufficient to achieve this objective.” *Id.* at 552. Scores of ERISA class actions are filed each year seeking classwide relief for alleged misapplication of plan terms or wrongful denials of benefits claims.[10] There is an entire bar of plaintiffs’ counsel sufficiently incentivized to

---

[10] *See, e.g.*, Lars Golumbic, William Delany, & Samuel Levin, *2020 ERISA Litigation Trends Hint at What’s Ahead This Year*, Groom L. Grp. (Jan. 3, 2021), https://www.groom.com/resources/2020-erisa-litigation-trends-hint-at-whats-ahead-this-year (noting that over 200 new ERISA class actions were filed in 2020).

bring these cases and to pursue them vigorously without the promise of a windfall recovery. "[U]njust enhancements that serve only to enrich attorneys are not consistent" with the aim of federal fee-shifting statutes. *Perdue*, 559 U.S. at 558; *accord Blum*, 465 U.S. at 897 ("A reasonable fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys."). And the 1.5x multiplier suggested by Class Counsel is purely arbitrary, which the Supreme Court precludes. *Perdue*, 559 U.S. at 557 (rejecting multiplier as arbitrary where plaintiff and court did not specifically quantify factors supporting 75% enhancement).

Second, Plaintiffs' argument that a multiplier is needed to induce future attorneys to take cases seeking injunctive relief to trial on a contingent basis is directly contradicted by Supreme Court precedent. The Supreme Court has squarely held that "enhancement for contingency is not permitted under [federal] fee-shifting statutes." *City of Burlington v. Dague,* 505 U.S. 557, 567 (1992). The central premise of Class Counsel's proposed multiplier is that no attorney working on a contingent basis would have taken on the risks of bringing this case (and potentially recovering nothing or only non-monetary relief) without the inducement of a fee multiplier. That argument was squarely addressed and soundly rejected by the Supreme Court in *Burlington* and reaffirmed in *Perdue*. *Burlington,* 505 U.S. at 564–65; *Perdue*, 559 U.S. at 556. Nor does Plaintiffs' decision to accept the risk of pursuing this case through trial—rather than settlement—justify an enhancement of the lodestar amount. It is simply another way of saying that they seek a contingency multiplier to compensate for the possible risk of non-payment. *See Burlington*, 505 U.S. at 564–65; *see also Blum*, 465 U.S. at 900 ("Because acknowledgment of the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award.").

Third, Class Counsel is not entitled to a positive multiplier to account for the expenses of financing out-of-pocket litigation expenses. Their arbitrary 1.5x multiplier would yield an enhancement of $9,370,152—*nearly eight times* the total expenses themselves.[11] As Mr. Schratz's

[11] Plaintiffs also argue that the existence of "litigation funding" companies supports a multiplier, although they concede that Class Counsel did not use litigation funding in this case, Pls.' Pet. at 24–25, n.18, and cite no authority finding that the existence of third-party funding supports an enhancement of a plaintiff's lodestar fee. If relevant at all, Plaintiffs' argument about

declaration demonstrates, Plaintiffs' expenses are already wildly inflated (including various luxury hotels, first-class flights, etc.), showing a lack of cost sensitivity completely inconsistent with their argument that a multiplier is needed to ensure future cases can be funded. In any event, as the Supreme Court recognized in *Perdue*, "enhancement to compensate for delay in reimbursement for expenses must be reserved for unusual cases." 559 U.S. at 555. And where such enhancements are allowed, "the amount of the enhancement must be calculated using a method that is reasonable, objective, and capable of being reviewed on appeal, such as by applying a standard rate of interest to the qualifying outlays of expenses."[12] *Id.* Class Counsel's insistence on an arbitrary 50% mark-up on $18 million in claimed fees to account for the delay in recovering $1.2 million in claimed expenses is not only unreasonable, it is arbitrary, and arbitrary enhancements are not allowed. *Id.*

### C. Even If A Multiplier Were Allowed, It Cannot Be Applied To All Fees.

As explained above, courts routinely carve out "fees on fees" from any multiplier. The Court should decline to apply a positive multiplier to any hours spent on preparing the fee petition. *See supra* Section IV.B. Travel time also is not subject to a positive multiplier. *See id.* (citing cases showing common practice is to apply 50% *negative* multiplier to travel time).

## VI. Plaintiffs' Unsubstantiated Request For Costs Should Be Denied.

To recover costs and expenses, Civil Local Rule 54-1(a) requires Plaintiffs to submit "[a]ppropriate documentation to support each item claimed." Generally, this requires detailed invoices documenting each expense. *See, e.g.*, *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1001 (N.D. Cal. 2017); *Delson v. CYCT Mgmt. Grp., Inc.*, 2013 WL 1819265, at *9 (N.D. Cal. Apr. 30, 2013). Self-created spreadsheets listing costs by category do not suffice. *See, e.g.*,

---

litigation funding, and the declaration of Charles M. Agee on that subject, simply reinforces that no multiplier should be applied here because Class Counsel did not incur external financing costs to pursue this case. *See, e.g.*, Agee Decl. (ECF No. 507-13) ¶¶ 15, 16 (noting that litigation funder may have demanded multiples on its investment return if Class Counsel had used such funding).

[12] To the extent Plaintiffs argue that they should receive a multiplier enhancement on their fees because this case impacted a large class and the broader mental-health community, the Supreme Court has expressly rejected that notion in the context of federal fee-shifting statutes. *Blum*, 465 U.S. at 900 n.16 ("Nor do we believe that the *number* of persons benefited is a consideration of significance in calculating fees . . . .").

*Slaight v. Tata Consultancy Servs.,* 2019 WL 3934934, at *9 (N.D. Cal. Aug. 20, 2019).

The only substantiation Plaintiffs provide for their claim of more than $1.2 million in litigation expenses is an attorney-generated chart with no explanation, substantiation, or documentation to support any of the listed expenses. Reynolds Decl., Ex. 6. There is no way for the Court to determine if these costs are reasonable or if they were reasonably and necessarily incurred for this litigation. *See, e.g.*, *Congdon v. Uber Techs., Inc*., 2019 WL 2327922, at *9 (N.D. Cal. May 31, 2019) ("plaintiffs are not entitled to recover for meal expenses of class counsel because they have provided little evidence to substantiate these expenses, including explaining who attended the lunches or why they were necessary to further the litigation"); *In re CV Therapeutics, Inc., Sec. Litig.*, 2007 WL 1033478, at *1 (N.D. Cal. Apr. 4, 2007) (requiring "dates, reason for travel, and amounts spent on transportation, hotel and meals").

Here, Plaintiffs offer no substantiation, documentation, or explanation for <u>*any*</u> of the $1,242,685.84 in claimed costs and expenses.[13] Vague explanations such as "meal reimbursement," "hotel," and "misc expense" are insufficient to substantiate expenses. *Facebook, Inc. v. Grunin*, 2015 WL 884035, at *4 (N.D. Cal. Feb. 19, 2015); *accord Volkswagen "Clean Diesel"*, 2020 WL 2086368, at *9 (disallowing "miscellaneous" costs because such label fails to explain "what they are"). The Court should accordingly deny all costs.

## VII. Plaintiffs' Unsubstantiated Costs Are Not Reasonable Or Recoverable.

In the event the Court does not deny costs in their entirety based on Plaintiffs' failure to substantiate any expense, the Court should reduce nearly all categories of claimed costs because the expenses claimed are not recoverable, not reasonable, or both.[14]

**<u>Computer Rentals</u>:** Plaintiffs seek $2,074.00 for "computer rentals" between February

---

[13] Plaintiffs initially sought $1,585,439.60 in expenses. On December 8, 2020, Plaintiffs filed a Notice of Correction because they categorized $342,753.76 in contract-attorney expenses as both fees and costs. ECF No. 512. Plaintiffs now seek to recover their contract-attorney fees as part of their lodestar amount and have reduced their cost demand by $342,753.76.

[14] For the Court's convenience, UBH addresses Plaintiffs' claimed costs/expenses using the categories assigned by Plaintiffs' counsel in Exhibits 6 and 7 of the Reynolds Declaration. UBH does not necessarily agree that all expenses are appropriately categorized. UBH does not dispute that class administration costs, including $213.94 in webhosting fees for the class administrator's website, are reasonable.

2016 and March 2017. They offer no explanation for these charges, except that Zuckerman Spaeder hired additional attorneys who needed computers. Reynolds Decl. ¶ 195. Office equipment for use by Plaintiffs' counsel is overhead, not taxable litigation expenses. *See Asarco LLC v. Atl. Richfield Co.*, 2018 WL 11225131, *5 (D. Mont. Oct. 5, 2018); *People Who Care v. Rockford Bd. of Educ.*, 1990 WL 25883, *7 (N.D. Ill. Feb. 23, 1990).

**Conferencing:** Plaintiffs seek $1,673.07 for teleconferencing, but they do not provide any backup documentation substantiating these charges, so they should be denied.

**Court Costs:** The only "Court Costs" recoverable in this action are the $400 filing fees for the *Wit* and *Alexander* complaints. The remaining expenses Class Counsel categorize as "Court Costs" are not taxable to UBH because they are for *pro hac vice* filing fees and related fees to obtain certificates of good standing. *See* Reynolds Decl. ¶ 190. *Pro hac vice* filing fees are not taxable costs. *See Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc*., 741 F.3d 955, 958 (9th Cir. 2013) (per curiam). Courts in the Ninth Circuit also do not allow plaintiffs to recover *pro hac vice* fees as part of their fee awards, including awards under ERISA. *See, e.g.*, *Reg'l Local Union No. 846 v. QPL, Inc*., 2013 WL 3972431, at *3 (D. Or. July 31, 2013); *N.L. v. Credit One Bank, N.A*., 2019 WL 1428122, at *5 (E.D. Cal. Mar. 29, 2019). Accordingly, the Court should reduce the taxable costs in the "Court Costs" category from $8,874 to $800.

**Electronic Discovery:** Plaintiffs claim $232,381.01 for electronic discovery "including e-discovery processing and hosting expenses" for documents produced to Plaintiffs. Reynolds Decl. ¶ 196. Plaintiffs submit no documentation or evidence to substantiate these charges, so they should be denied. *Rogers v. Baxter Intern. Inc.*, 2011 WL 941188, *4 (N.D. Ill. Mar. 16, 2011) (declining to award e-discovery vendor costs where claimant failed to provide documentation detailing the work performed and noting that e-discovery costs incurred to make data more amenable to review are not recoverable); *Loomis v. Exelon Corp.*, 2010 WL 1005037, *4 (N.D. Ill. Mar. 11, 2010) (denying costs for electronic discovery).

**Legal Research:** Plaintiffs claim $111,993.75 for "[c]omputerized research costs." Reynolds Decl. ¶ 192. These charges should be disallowed because Plaintiffs submit no supporting documentation. *Payne v. Bay Area Rapid Transit Dist.,* 2009 WL 1626588, at *9

(N.D. Cal., June 5, 2009) (declining to award legal research costs where Plaintiff failed to provide sufficient information); *Cruz*, 2013 WL 2447862, at *10 (same).

**PDF Hyperlinking:** Plaintiffs seek $35,976.72 for "PDF hyperlinking," explaining that they hired a vendor to prepare hyperlinked versions of their post-trial brief and post-trial proposed findings of fact. Reynolds Decl. ¶ 200. While plaintiffs argue this was more "cost-effective[]" than doing the work "in[ ]house," they do not explain why this clerical task is recoverable or why it was reasonable. *See id.* They also did not submit invoices showing the vendor's charges or any other evidence showing these clerical costs would be passed through to hourly-paying clients. Plaintiffs thus fail to carry their burden to show that these charges are reasonable, necessarily incurred, and taxable to UBH. The Court should decline to award "PDF hyperlinking" costs.

**Photocopy, Delivery, and Related Services:** Plaintiffs claim $63,575.28 for "photocopying, delivery, and related services." Reynolds Decl. ¶ 202. Plaintiffs do not provide the cost billed per page, the number of pages, or any information about the documents that were copied or why they were necessary. They also do not provide any information on why expedited delivery services were needed or what the "related services" in this category include. Because Plaintiffs submit no documentation or evidence to substantiate these charges, they should be disallowed. *See Payne,* 2009 WL 1626588, at *9 ("without a description of the number of pages copied, the number of overnight deliveries, and the length of time spent doing on-line research, the Court cannot assess whether the amount sought for these charges is reasonable"); *Cruz*, 2013 WL 2447862, at *10 (same).

**Process Service and Investigation:** Plaintiffs seek $15,194.57 categorized as "Process Service and Point Investigation." Reynolds Decl. ¶ 193. These charges include $10,975 described as "Investigator Fee – Vendor: On Point Investigations." *Id.*, Ex. 6 at 57. Plaintiffs' vague reference to "fact gathering" does not state what was investigated, why the investigation was necessary, or how it advanced this litigation. *See id.* ¶ 193. The Court should decline to award these costs. *See, e.g.*, *Cruz*, 2013 WL 2447862, at *10 (declining costs because "[t]he Court cannot determine whether this amount is reasonable in the absence of any information about the services [] provided").

Plaintiffs also include $4,219.57 in charges attributed to an entity, "Serving by Irving," *id.*, Ex. 6 at 57, which provides process service and investigation services. Plaintiffs provide no substantiation of these charges and offer only that they served third-party subpoenas to plans and former UBH employees. *Id.* ¶ 193. Plaintiffs have not shown that these expenses were reasonably necessary to prosecute this action.

**Transcripts:** Plaintiffs seek $194,049.89 for transcripts, including "Court and deposition transcript fees." Reynolds Decl. ¶ 197. Plaintiffs provide no substantiation for these charges. As a result, the Court cannot assess whether there are duplicative or unnecessary charges. The Court should deny these charges for lack of substantiation.

**Travel and Meal Expenses:** Plaintiffs seek $357,504.14 in "Travel and Meal Expenses." These charges are described only in the vaguest terms. *See* Reynolds Decl. ¶ 201; *id.*, Ex. 6 at 61–90 (listing "non-local travel" charges with descriptors such as "taxi" "meals" "airfare" "misc expenses"). Plaintiffs did not produce invoices, receipts, or any other documents for any of these charges that would permit the Court to assess their reasonableness, so they should be denied. *In re Media Vision Tech. Sec. Litig*., 913 F. Supp. 1362, 1369–70 (N.D. Cal. 1996) ("requiring counsel to submit a detailed documentation of the number of flights undertaken, destination, cost per flight, necessity of the trip, as well as cost for meals and hotel accommodations"); *Reyes v. Bakery & Confectionery Union & Inds. Int'l Pension Fund*, 281 F. Supp. 3d 833, 859 (N.D. Cal. 2017) (rejecting travel expenses as unreasonable where attorneys over-billed for their time in connection with travel and where they "flew first or business class"); *Demmings v. KKW Trucking, Inc.*, 2018 WL 4495461, at *18 (D. Or. Sept. 19, 2018) (rejecting costs for travel-related expenses because "the Court cannot ascertain the reasonable amount in travel expenses" where "the costs are not detailed by airfare for each trip, hotel expenses for each trip, meals for each trip, etc."). Even a cursory review of Class Counsel's proposed "Travel and Meal Expenses" shows there is good reason to heavily discount or wholesale exclude them as unreasonable.

First, Class Counsel include more than $146,000 in charges for their stay at the luxury San Francisco Intercontinental Hotel during trial. *See* Schratz Decl. ¶ 207. They make no effort to show that these rates are reasonable or that more economical accommodations were unavailable.

They also provide no information about how many rooms they booked, how many nights they stayed, or how many guests were accommodated. It is impossible to tell, for example, if Class Counsel stayed in San Francisco beyond the time needed for trial or if they provided rooms for guests whose presence was not necessary for the litigation. There are also other, unexplained hotel expenses throughout the log; but, without backup documentation, it is impossible to say where or why these were incurred, much less that they were necessary or reasonable.

Second, Class Counsel's summary records show that they routinely charged for excessively expensive flights. Without underlying invoices, it is not possible to confirm whether they flew first-class or otherwise inflated their travel expenses beyond what is reasonable and necessary, but many airfare entries show $2,000 to $4,000 charged for a single flight.[15] To cite just a few of many examples, on November 23, 2015, both Caroline Reynolds and Andrew Caridas submitted charges for "airfare" topping $2,000 each, and on October 23, 2017, Aitan Goelman charged $3,834.30 for airfare. It is well established that costs for first-class flights are not reasonable expenses subject to recovery.[16]

Third, Class Counsel's summary records include scores of entries simply labeled "meals" with no further explanation or substantiation. Many of these charges are excessively high: 9/21/2015 (Reynolds) - $423.08; 11/23/2015 (Reynolds) - $229.85 and (Caridas) - $571.82; 2/17/2016 (Caridas) - $325.05; 4/5/2016 (Caridas) - $436.81; 5/9/2017 (Kravitz) - $259.43; 5/30/2017 (Reynolds) - $373.04; 10/16/2017 (Kravitz) - $1,489.35 and (Goelman) - $234.93; 10/30/2017 (Abelson) - $1,445.06; 11/6/2017 (Kravitz) - $3,175.85; 11/10/2017 (Goelman) - $2,314.53; 11/21/2017 (Schmidt) - $3,247.38; 11/28/2017 (Bendat) - $947.29; 12/5/2017 (Reynolds) - $2,561.76; 12/19/2017 (Cowart) - $399.50; 4/9/2019 (Kravitz) - $410.65. These are only examples. There are many, many more.

In addition to requesting excessively high and unsubstantiated expenses for Class

---

[15] Zuckerman Spaeder attorneys generally divided their time and expenses between the two matters (*Wit* and *Alexander*) such that each travel or meal expense entry on Exhibit 6 generally reflects only half of the total charge. *See* Reynolds Decl. ¶ 79.

[16] Zuckerman Spaeder's summary chart also includes numerous charges for limousine services, when more reasonably priced ride-sharing or taxi options were surely available.

Counsel's travel during the litigation, they also request recovery for Plaintiffs' personal travel expenses. Those charges are not recoverable. *See Castellano v. Charter Commc'ns., LLC*, 2014 WL 1569242, at *4 (W.D. Wash. Apr. 17, 2014) ("A motion for attorney's fees is to recoup fees and counsel's expenses of litigation. This does not include personal expenses—meals, parking, and mileage—incurred by Plaintiff as an individual."). The Court should disallow $12,666.19 in travel expenses attributed to the individual plaintiffs. *See* Schratz Decl. ¶ 209. Class Counsel also include myriad miscellaneous expenses under the category of "Travel and Meal Expenses." Reynolds Decl., Ex. 6 at 60–90. Some are simply labeled "misc expense" with no further detail. Others include charges for "wifi," "food," "tips," and even $653.80 for "laundry." Plaintiffs also include $1,949.90 for "non-local travel" by vendor "Schooner Strategies LLC," which is the entity that employs one of their experts, Gary Carneal. Plaintiffs concede that expert fees are not recoverable in the Ninth Circuit. Pls.' Pet. at 24 (citing *Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541 (9th Cir. 1996)). The Court should reject all of these charges.

Finally, Class Counsel include travel and meal expenses for two individuals—Stacie M. Haselberger and Martin S. Himeles—who are not otherwise identified in their submission. These charges should be excluded.

**Trial Presentations:** Plaintiffs seek to recover $75,537.23 for "trial presentations," which includes outside vendor services and equipment rentals. Reynolds Decl. ¶ 198. They do not explain why this was necessary or how the charges are reasonable, nor do they provide underlying vendor invoices that would allow the Court to make those determinations. These expenses should be denied.

**Trial summary exhibits:** Plaintiffs seek to recover $92,246.55 they paid to The Brattle Group, an expert consulting firm, to prepare summary exhibits and provide a witness—Josephine Duh—to testify at trial. Reynolds Decl. ¶ 199. These charges are properly categorized as expert fees and are not recoverable. *Agredano*, 75 F.3d at 544.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' petition for attorneys' fees and costs.

Dated: January 15, 2021

**CROWELL & MORING LLP**

*/s/ Jennifer S. Romano*
Jennifer S. Romano
Attorneys for UNITED BEHAVIORAL HEALTH