JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
ANDREW HOLMER (SBN 268864)
aholmer@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690

THOMAS F. KOEGEL (SBN 125852)
tkoegel@crowell.com
NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, California 94111
Telephone: 415.986.2800
Facsimile: 415.986.2827

APRIL N. ROSS (admitted *pro hac vice*)
aross@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **DAVID WIT, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED BEHAVIORAL HEALTH,**<br><br>Defendant. | Case No. 14-cv-02346 JCS<br>Related Case No. 14-cv-05337 JCS<br><br>**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS**<br><br>Hon. Joseph C. Spero |

**GARY ALEXANDER, et al.,**

Plaintiffs,

v.

**UNITED BEHAVIORAL HEALTH,**

Defendant.

## DECLARATION OF JAMES P. SCHRATZ

I, JAMES P. SCHRATZ, being duly sworn, deposes and says:

1. I have been retained in this matter by CROWELL & MORING LLP on behalf of Defendant UNITED BEHAVIORAL HEATH to provide an audit and opinion regarding the reasonableness of the attorneys' fees requested in Plaintiffs' Petition for Attorneys' Fees and Costs ("Fee Petition") filed by ZUCKERMAN SPAEDER LLP ("Zuckerman"), PSYCH-APPEAL, INC. ("Psych-Appeal"), and THE MAUL FIRM, P.C. ("Maul Firm") (collectively, "Class Counsel") on behalf of Plaintiffs, DAVID WIT, et al. The three attorneys working on this matter, Scott Comerford, Mark Hom, and I, put in over 200 hours in reviewing the information and preparing this declaration. A table setting forth my total recommended fee disallowances is at the end of this declaration. My opinions herein relate to the following areas of Class Counsel's fee disallowances:

I. Unreasonable Paralegal and Litigation Support Rates;

II. Round Number Billing;

III. Billing More Than 10 Hours Per Day;

IV. Block Billing;

V. Vague Entries;

VI. Billing for Clerical Work;

VII. Excessive Intra/Inter-Office Conferencing;

VIII. Excessive Research by Partners;

IX. Duplicative Attendance;

X. Fees for Unnecessary Work;

XI. Excessive Time Spent on Fee Petition; and

XII. All Costs Disallowed

## QUALIFICATIONS

### I. My Background as a Legal Fee Auditor.

2. I am an attorney at law licensed to practice in the State of California and have been so licensed since 1976. I received my law degree from the University of San Francisco School of Law in June 1976 where I was the Editor-in-Chief of *The Law Review*. In September 1976 I joined the law firm of Heller, Ehrman, White & McAuliffe, where I worked as an associate in its litigation department.

3. In March 1978 I left Heller, Ehrman, White & McAuliffe and joined a smaller firm until August 1980, when I joined Fireman's Fund Insurance Company in San Francisco, California, in its General Counsel's Office. My responsibilities included representing Fireman's Fund as attorney of record in various litigation matters throughout the country. In addition, I supervised outside counsel throughout the country on various types of cases, including many complex civil litigation cases.

4. In 1984 I left the General Counsel's Office and transferred to the Claims Department where I established the Major Litigation Unit, which was responsible for managing complex litigation throughout the country, including the $65 million bankruptcy of The Woodson Company. In this role, I was responsible for approximately 1,000 cases and a staff of ten people and became very familiar with the rates charged not only by Fireman's Fund "panel counsel," but also rates charged by solo practitioners and small, medium, and large law firms throughout the United States.

5. In July 1990 I was promoted to Vice President Major Claims, where my duties were expanded to include responsibility for any case throughout the world that had potential exposure of $3 million or more, and responsibility for supervising approximately 100 adjusters. Again, I continued my involvement in supervising cases throughout the United States and stayed

abreast of what solo practitioners and small, medium, and large law firms charged their respective clients.

6. On January 1, 1994 I left Fireman's Fund to establish my own litigation management and consulting firm. I am the principal of Jim Schratz and Associates, a firm that conducts legal fee audits of various law firms throughout the country. Over the past twenty–six years, I have personally supervised or conducted approximately 3,000 legal fee audits throughout the country on behalf of law firms, governmental agencies, corporations, and private individuals. Of these 3,000 audits, at least 90 percent have been in California.

**A. Court Opinions Considering My Audits in Ruling on Fee Requests.**

7. I have qualified as an expert witness in numerous state and federal courts, including San Diego Superior Court, Los Angeles Superior Court, San Francisco Superior Court, Sacramento Superior Court, Orange County Superior Court, Alameda Superior Court, Sonoma County Superior Court and the Federal District Court in San Francisco, and San Diego California and elsewhere.

8. In 1999 I was appointed by the District Court for the Northern Mariana Islands to audit approximately $22 million in legal fees in *In re the Estate of Larry Lee Hillblom*, one of the founders of DHL Express, whose estate was valued at approximately $1 billion. I was also retained by the United States Department of Justice to conduct an audit of a fee request in a nationwide class action lawsuit against the Immigration and Naturalization Service. I have served as an arbitrator for the Sonoma County Bar Association and the State Bar of California in their mandatory fee arbitration programs.

9. In January 2010 I was retained by investor Carl Icahn to serve as special litigation counsel to review approximately $60 million in legal fees in the *In re Tropicana Entertainment, LLC, et al*, Case No. 08-10856 (KJC) ("*Tropicana*") in the United States Bankruptcy Court for the District of Delaware.

10. In February 2010, in *Department of Fair Employment and Housing v. United Dominion Realty* (Case Nos. 07CC12067, 02CC12069), the court accepted our audit findings stating,

> In awarding fees in these amounts, the court has fully accepted the declaration of James P. Schratz in opposition to the motion, including all of his recommended reductions. The court finds his qualifications to be impressive. Likewise his reasoning as to why the fees sought are excessive is persuasive.

11. In April 2010 I was again retained by Mr. Icahn to serve as special litigation counsel to review an additional $6 million in legal fees in the related *In re Adamar of New Jersey, Inc. and Manchester Mall, Inc.*, Case Nos. 09-20711 and 09-20716 in the United States Bankruptcy Court for the District of New Jersey.

12. In the case of *Madrid v. Gomez*, Case No. C-90-3094, United States District Court for the Northern District of California, I was retained by the California Department of Justice to audit a fee request of $8.3 million in connection with a prisoners' civil rights case at Pelican Bay State Prison. The audit disclosed a number of billing concerns and the audit report was submitted to Judge King, the settlement judge. The case resulted in a negotiated settlement of $4.25 million, or a reduction of approximately 50 percent. A copy of an article from *The Recorder* dated September 26, 1995, describing the settlement is attached as **Exhibit 1**.

13. In *Rios v. Rowland*, Case No. 330211, Superior Court of California, County of Sacramento, I was retained to audit a fee request of $1.5 million. The audit disallowed a significant amount of the fees requested. The court upheld the audit results and reduced the fee request to approximately $227,000.

14. In *CVB Corporation v. John Cavallucci*, Case No. 156505, Superior Court of California, County of Marin, I was retained to audit a fee request of approximately $2 million pursuant to a contractual provision. The audit uncovered a number of billing abuses, and the court disallowed approximately 50 percent of the fee request.

15. In *Aguilar v. Avis Rent-A-Car System*, Case No. 948597, Superior Court of California, County of San Francisco, I was retained to audit a fee request of approximately $1.3

million. The audit disclosed a number of problem areas and disallowed a significant amount. The court followed the audit findings and reduced the request by approximately 50 percent, to $650,000.

16. In *McCauley v. BFC Direct Mailing*, Case No. 5711562, Superior Court of California, County of Orange, the plaintiff alleged violations of campaign election laws and sought attorneys' fees of $1.1 million. The defendant, Howard Jarvis Tax Reform Movement, hired this office to conduct a legal fee audit, and we disallowed approximately 50 percent of the fees. The court followed the audit findings and awarded approximately $525,000 of the $1.1 million requested.

17. In *Florida Asset Financing Corp. v. Borton, Petrini & Conron*, United States District Court, Central District of California, Southern Division (Santa Ana), Case No. 8:96-cv-01144 AHS-MLG, we were retained by a private client to audit a fee request of $600,000. Based on the audit report, the court awarded $80,000.

18. I conducted an audit of plaintiff's motion for attorneys' fees in *Adam v. Norton,* Northern District of California, Case No. C-98-2094 CW, a case in which plaintiff sought total fees in the sum of $1,726,312.92. The Special Master appointed by Judge Claudia Wilken to adjudicate the fee petition cited my declaration and recommended a total award of only $434,581.95 in attorneys' fees, less than 25 percent of the amount originally sought. The Special Master stated, "I believe Mr. Schratz' expert testimony meets the standard. Schratz's testimony is relevant, in that Schratz has provided a useful breakdown of the time spent by Plaintiff's attorneys, and reliable, in that Schratz has accurately summarized the time and expenses claimed by Plaintiff's attorneys." It must be stated the Special Master did not follow all of the audit recommendations. However, the Special Master did recommend reducing the fee request by approximately 75 percent, from $1,726,312.92 to $434,581.95, a result that Judge Claudia Wilken adopted in total in July 2005.

19. In January 2004, in *Frieders v. City of Glendale*, Case No. BC263271, Los Angeles County Superior Court Judge David A. Workman adopted our findings with respect to an audit of Plaintiff's fee request. As a result, Plaintiff's request of $4.1 million in fees was reduced

to $1.1 million. The court specifically referred to our audit and reduced the fee request by approximately 75 percent. A copy of that order is attached as **Exhibit 2**.

20. In August 2005, in *Rose v. Lancaster School District,* Case No. BC 303843, Superior Court of California, County of Los Angeles, the court adopted the methodology, analysis, and recommendations contained in our audit, and reduced plaintiff's request for fees by 58 percent from $498,000 to $209,000.

21. In *North Pacifica, LLC v. City of Pacifica*, United States District Court, Northern District of California, Case No. C-01-4823 EMC, plaintiff sought damages at trial of approximately $16 million. I was retained by the defendant to audit plaintiff's request for $2,046,759.16 in fees and costs. In awarding plaintiffs only $453,810.75 in fees, Magistrate Judge Edward M. Chen cited my audit with approval with respect to various billing issues. A copy of the order dated December 16, 2005 is attached as **Exhibit 3**, and states, in pertinent part:

> [B]ased on the information provided in the declaration, Mr. Schratz has demonstrated that he is qualified to opine about fee awards and that his methodology in evaluating the billing records of NP's attorneys in this case is reasonable and sufficiently reliable. For example, Mr. Schratz's approach to categorizing the nature of the work of the attorneys is reasonable and sufficiently reliable as is, overall, his approach to unblocking the block-billed time entries.

22. In *Poland v. L.A. Boxing*, Orange County Superior Court, Case No. 30-2009 0121184, plaintiff filed a lawsuit alleging eight causes of action against the defendants. Based upon their expert's testimony at trial, plaintiff had suffered $4,959,023 to $6,423,566 in damages. The jury found in favor of the plaintiff on two causes of action and on the statutory failure to pay owed wages claim awarded $2,800. This was the only cause of action on which they were successful that contained a statutory attorneys' fee provision. Plaintiff's counsel submitted a motion for attorneys' fees. They submitted bills totaling $709,242.50, and initially sought a 1/6 allocation (because two causes of action had been dismissed just prior to trial), or $118,207.08 in fees. I was retained by the defendant to audit plaintiff's request. Based upon deficiencies in the billing records such as block billing, redactions, excessive time to create deposition summaries, and excessive internal conferencing, and allocation issues, I recommended that plaintiff's counsel

only be awarded fees in the range of $25,000 to $30,000. In a subsequent supplemental declaration, plaintiff increased the amount of attorneys' fees sought to approximately $350,000. In July 2011, the Court found that plaintiff should only be awarded $30,000 – which is the amount that I had recommended.

23. In *Shiow Huey-Chang v. County of Santa Clara, et al.*, Santa Clara County Superior Court, Case No. 5:15-cv-02502-RMW, plaintiff filed a lawsuit alleging excessive force by police. Plaintiff prevailed at jury trial and was awarded $40,000.00, although certain parts of the verdict were overturned by a defense post-trial motion for judgment as a matter of law. Plaintiff was deemed the prevailing party for purposes of attorneys' fees and defendants did not dispute that finding for purposes of the fee motion. Plaintiff sought $970,063.74 in attorneys' fees and costs. I was retained by the defendant to audit plaintiff's request. I recommended that the billing rates being requested be reduced and that fees related to excessive staffing and time billed for certain aspects of the case be adjusted. I recommended that the fee request should be reduced to $236,860.38 plus costs of $27,575.72 for a total of $264,436.10. The court's reasoning and deductions tracked many of those set forth in my declaration and it ruled that plaintiff's fee award, including costs, should be reduced to $350,000.00.

24. In *Carroll v. State of California, et al.,* Sacramento County Superior Court Case No. 34-2012-00135527-CU-OE-GDS, plaintiff was dismissed from her employment as a Staff Attorney with the California Commission on Teacher Credentialing. She filed suit alleging the termination was a wrongful retaliation for whistleblowing. Plaintiff prevailed at trial and sought attorneys' fees of $1,542,397.75, plus a 2.0 multiplier for a total of $3,084,795.50. I recommended that the billing rates being requested be reduced and that fees related to transient billers, unsuccessful claims, clerical billing, and duplicative billing be adjusted. I recommended that the fee request should be reduced to $323,720.37. The court awarded $638,484 or approximately 21 percent of the fees requested after reducing the requested billing rates, reducing the time billed for certain tasks, and reducing the requested multiplier.

25. In *Whitfield v. Broadspectrum*, Los Angeles County Superior Court Case No. BC632479, plaintiff alleged she was terminated from her employment due to discrimination,

harassment, and retaliation. In all, she initially alleged eight causes of action against five defendants. Three defendants were dismissed prior to trial as were all causes of action except for a FEHA retaliation claim and termination in violation of public policy. Plaintiff prevailed at trial and sought attorneys' fees of $672,086.66 with a 1.25 multiplier for a total of $840,108.325. I recommended that the fee request should be reduced to $293,420.79 with no multiplier. The court reviewed the fee application and awarded $483,600 with no multiplier.

26. In *United States of America et al. ex rel. John Miller v. Carecore National, LLC et al.*, Case No. 13-cv-1177(RJS), in the United States District Court, Southern District of New York, Relator John Miller ("Relator") filed suit alleging defendants engaged in medical billing practices that defrauded the federal government and several states. The United States intervened and entered into a stipulation of settlement and dismissal with defendant CareCore National LLC. As part of the stipulation, Relator filed a motion for attorney's fees and costs and expenses seeking a total of $2,319,023.30 against CareCore. I recommended that the billing rates being requested be reduced and that fees related to excessive billing entries for drafting the complaint, legal research, document review, and intraoffice conferencing be adjusted. The court awarded $1,401,813.10 after reducing the time billed for certain tasks. A copy of the court opinion is attached as **Exhibit 4**.

27. In *Lopez v. City of Lynwood*, Los Angeles County Superior Court Case No. BC517338 (August 3, 2017), the court ruled on a motion for attorneys' fees brought by Carney Shegerian and his law firm following resolution of a FEHA case. Mr. Shegerian requested an hourly rate of $950. I audited the fees and recommended a lower rate for Mr. Shegerian and proportionately lower rates for the other timekeepers. The court accepted the reasoning presented in my declaration and awarded Mr. Shegerian a rate of $700 per hour for his time in that case. A copy of the court's tentative ruling on the motion, which I understand was adopted as the final ruling on the motion, is attached as **Exhibit 5**.

28. In *Vista Outdoor, Inc. v. Reeves Family Trust, et al.,* Case No. 16 Civ. 5766, in United States District Court, Southern District of New York (May 24, 2018), Plaintiff Vista Outdoor, Inc. ("Vista") filed suit asserting breach of contract and additional claims arising out of

its purchase of Jimmy Styks, LLC, a stand-up paddle board manufacturer. The Court granted partial summary judgment for Vista, which was awarded $126,642 in damages. Vista then sought $5,737,240.84 in attorney's fees, costs and pre-judgment interest. I recommended that the associate and paralegal billing rates being requested be reduced and that fees be further reduced related to block billing, overstaffing, excessive conferencing, clerical tasks and unfiled motions. The court ultimately reduced all associate and paralegal rates, reduced all attorney hours by 35%, reduced fees for clerical work, reduced expert rates by 50% and declined to impose pre-judgment interest.

**B. <u>Deposition or Trial Testimony In Support Of Law Firm Fee Requests.</u>**

29. The following is a sampling of cases where I have provided deposition and/or trial testimony in support of a law firm's fee request. It is important to emphasize that we use the same legal fee audit methodology whether we are retained by a law firm in support of its fee request or retained by an opposing party in opposition to the fee request. The purpose of the audit is to give an honest, unbiased opinion on the reasonableness of the legal fees.

30. In *PNY Technologies, Inc. v. Miller, Kaplan, Arase & Co., LLP*, Case No. 3:15-cv-01728-MMC, in the United States District Court, Northern District of California, I testified in support of the national law firm Winston & Strawn's request for fees.

31. In *Gen. Charles E. Yeager, Victoria Yeager, Charles E. Yeager Revocable Living Trust, and General Chuck Yeager Foundation v. Don A. Lesser, The Lesser Law Group, and Does 1 through 20, inclusive*, Case No. 34-2011-00109638, in the Superior Court of California, County of Sacramento, I testified in support of the law firm's request for fees.

32. In *North Coast Engineering, Inc. v. State Farm General Insurance Company, et al.,* Case No. SCV 243762, in the Superior Court of California, County of Sonoma, I testified in support of a request for fees submitted by the Law Offices of Duncan James.

33. In *Victaulic Company v. American Home Assurance Company, et al.,* Case No. RG12642929, in the Superior Court of California, County of Alameda, I testified in support of Pillsbury Winthrop's request for fees.

34. In *Sonic Automotive, Inc., v. Chrysler Insurance Company, et al.,* Case No. 1:10CV717, in the United States District Court for the Southern District of Ohio – Western Division, we were retained to audit fees and expenses for over $10 million submitted by the law firms of Hinshaw & Culbertson LLP, Broad & Cassel, James McElroy & Diehl, P.A., and Williams & Connolly LLP. We performed a legal fee audit according to our standard audit methodology.

35. In *EDUCAP, Inc. et al., v. Philadelphia Indemnity Insurance Company*, Civil Action No. 1:13-cv-72 LO/IDD, in the United States District Court for the Eastern District of Virginia – Alexandria Division, we were retained to audit $3.9 million in fees for the law firms of Williams & Connolly LLP, Simpson Thacher & Bartlett LLP, Skadden, Arps, Alte, Meagher & Flom LLP, and Jaffe Raitt Heuer & Weiss PC. We performed a legal fee audit according to our standard audit methodology.

36. Of course, not all courts have accepted my audit findings.[1] However, even in the cases in which the Court has not accepted all of the audit findings, the court has often reduced the fee application by a significant amount. *See, e.g., Lopez v. San Francisco Unified School District,* United States District Court, Northern District of California, Case No. CV-96-3585SI.

37. Attached hereto as **Exhibit 6** is a true and correct copy of my Curriculum Vitae, which lists my work history, my publications, and my general experience.

---

[1] *See Oberfelder v. City of Petaluma,* United States District Court, Northern District of California, Case No. 3:98-cv-01470-MHP; *Estrada v. FedEx,* Superior Court of California, County of Los Angeles, Case No. BC210130 (Court of Appeal reversed trial court's award of attorneys' fees using a 2.0 multiplier as excessive, and remanded for recalculation of an appropriate fee award); *Millar v. BART,* Superior Court of California, County of Alameda, Case No. C830013-9; *Lopez v. San Francisco Unified School District,* United States District Court, Northern District of California, Case No. CV-96-3585 SI; *Gober v. Ralph's Grocery Company,* Superior Court of California, County of San Diego, North County Judicial District, Case No. N72142; *Miller v. Vicorp,* United States District Court, Northern District of California, San Jose Division, Case No. CV-03-00777-RMW; *Pop, et al. v. Pasadena Area Community College District*, Superior Court of California, County of Los Angeles – Central District, Case No. BC481207.

38. An audit does not always uncover overbilling. On numerous occasions, I have been retained by a client to audit a legal bill and have informed the client that there is little, if any, overbilling and that the client should pay most, if not all, of the invoice.

39. As a standard practice, I make an offer to all of my clients to review the bills free of charge and arrive at a preliminary opinion as to whether an audit would uncover any overbilling, so as to make an audit cost efficient. I estimate that in approximately 10 to 15 percent of the requests I receive, I suggest to the client that an audit is not cost justified.

40. On numerous occasions, I have been retained by a law firm engaged in litigation with a client to conduct an audit, and if the audit discloses no overbilling I testify as an expert witness on behalf of the law firm. The following is a partial list of the law firms that I have audited where the audit disclosed that most, if not all of the fees, were reasonable.

Pillsbury Winthrop Shaw Pittman
Skadden Arps
Sidley & Austin
Manatt, Phelps & Phillips
Mower, Koeller, Nebeker, Carlson & Halluck
Lanahan & Reilley
Lurie & Zepeda
Banning, Micklow, Bull & Lopez
Robles & Castles
Thelen Reid & Priest
Stoel Rives
Robinson & Cole
LeBoeuf, Lamb, Greene & MacRae,
Husch & Eppenberger
Parson, Behle & Latimer
Christiansen Miller Fink Jacobs Glaser Weil & Shapiro, LLP
Berding & Weil
Meredith Weinstein & Numbers
Spector Law Offices

41. I have published approximately 35 articles, many of which involve the control of legal fees and abuses in the billing practices of attorneys. Over the past several years, I have given numerous presentations on legal auditing and controlling legal costs throughout the United States, Canada, and England. I have made a number of presentations to various Bar Associations, insurance industry groups, and other organizations, including the American Bar Association, on

how to assist the court in analyzing fee requests. I wrote an article on employing legal fee auditors in fee-shifting cases, which was published in *Trial Diplomacy Journal.* Most recently, I wrote an article, "How to Win a Fee Petition," which was published in a number of publications including *The Rhode Island Bar Journal*, *The Practical Litigator*, *The Federal Lawyer* and Business Laws, Inc.'s *Law Department Management Adviser*. Among other points, this article listed various "red flags" or questionable billing practices that should be avoided in submitting a fee application.

**SCOPE OF REVIEW**

42. As part of this audit, I reviewed Plaintiffs' Fee Petition and all declarations related thereto with accompanying billing records. In addition, I reviewed the pleadings, documents and deposition transcripts set forth in **Exhibit 7**.

43. I am not being compensated based upon my "success" at reducing the requested fees.

**AUDIT METHODOLOGY**

44. As part of the audit process, all of the billing time records were input into a computer database to allow for comprehensive searching and analysis. The computerized database permitted creation of summary reports of billing by categories of activities. To the best of my information and belief, all of these reports accurately reflect the information contained in the submitted billing records. Having the records in the computer database also allowed for accurate quantification of various other issues including, but not limited to, those discussed in this declaration.

**SCOPE OF AUDIT**

45. The starting point in any audit is to determine the lodestar, or the amount being requested. Class Counsel states that they are requesting a lodestar and multiplier as set forth in the following table:

**LODESTAR GRAND TOTAL**

| Firm | Hours | Lodestar | Requested Attorneys' Fees (With Multiplier) |
|---|---|---|---|
| Zuckerman Spaeder LLP | 26,422.50 | $17,022,102.83 | $2,553,3154.25 |
| Contract Attorney Fees (at cost) (*see also* Ex. 4) | 2,917.89 | $342,753.76 | $514,130.64 |
| Psych-Appeal, Inc. | 1330.80 | $1,197,720.00 | $1,796,580.00 |
| The Maul Firm | 263.30 | $177,727.50 | $266,591.25 |
| **TOTAL:** | **30,934.49** | **$18,740,304.09** | **$28,110,456.14** |

Declaration of Caroline E. Reynolds in Support of Plaintiffs' Petition for Attorneys' Fees and Costs ("Reynolds Declaration" or "Reynolds Decl.") (ECF 507-2), ¶ 77; Ex. 1.

46. My independent calculations do not match the Zuckerman total requested lodestar which has multiplied the firm's total hours of 26,422.50 by its timekeeper's 2020 hourly rates (or the hourly rate of the last year that the timekeeper billed 10 or more hours in the matter). (Reynolds Declaration, 1). Instead, I have calculated the Zuckerman lodestar to be $15,213,075.35 based on the hourly rates from 2014 through 2020 set forth in Exhibit 2 to the Reynolds Declaration.

47. If the Zuckerman firm had been billing their clients throughout this litigation, they would not have been billing at 2020 rates, but at the rates for each year. Therefore, for purposes of this declaration, the auditor will use the actual hourly rates for the timekeepers for all disallowances (except for the Zuckerman paralegals and litigation support personnel for whom I recommend reduced rates.) Accordingly, I use $15,213,075.35 as the starting point of the Zuckerman audit.

48. I use $1,197,720.00 as the starting point of the Psych-Appeal audit.

49. I use $177,727.50 as the starting point of the Maul Firm audit.

**STANDARD OF REVIEW**

50. Based on my experience as an attorney, client, and legal fee expert, it is my opinion that billing standards have changed over the past 20 plus years. Back then many courts nor clients were sensitive to the numerous potential problems caused by block billing, vague entries, or excessive minimum billing increments. However, as academicians such as William

Ross, a law school professor at Samford University and author of The Honest Hour, began to study both the prevalence of such billing practices and their potentially harmful effects, both courts and clients began to pay close attention. In response, the profession of legal fee auditing developed to aid clients and the courts in quantifying those potentially harmful effects. Courts began to look at these expert reports and then developed an increasing body of case law that the legal fee experts used as part of their methodology.

51. As law firm fees began to be reduced because they were employing these questionable billing practices, law firms began establishing their own internal billing guidelines requiring timekeepers to refrain from such practices. I personally have put on presentations to such law firms. In addition, many law firms instituted Quality Control procedures to assure themselves that such questionable billing practices would not be permitted within the law firm. These Quality Control procedures developed because the law firms realized that certain questionable billing practices such as block billing, vague entries, excessive minimum billing increments, and excessive intra-firm conferencing were within the control of the law firm and to the degree they could be controlled or eliminated the law firm increased its chances of recovering its fees. Many of the more sophisticated law firms even issued their own internal billing guidelines prohibiting such practices.

52. In conducting a legal fee audit, I analyze the invoices and work product generated in light of one of two standards. The first standard is contained in any retainer agreement between the law firm and client, or in billing guidelines or any other instructions provided by the client to the law firm. In addition to looking at such agreement, guidelines, or instructions, I look to established case law for what are acceptable billing practices. To the extent there are instructions from the client, State Bar opinions and case law may supplement or even override the instructions. **The case law referenced in this report is not being cited for its legal authority, but to establish that there is a foundation for the opinions stated herein.** In that way the cases may be analogized to Generally Accepted Accounting Principles, commonly-known as GAAP, which are a collection of commonly-followed accounting rules and standards for financial reporting. I am not aware of any billing guidelines that may be in place in this matter.

53. In a fee shifting case such as this, if a jury or court found that the defense prevailed, plaintiffs would not be entitled to any attorneys' fees whatsoever. On the other hand, if a jury or court found that plaintiffs prevailed on the merits of a fee-shifting claim, then they would be entitled to seek to recover their reasonable and necessary attorneys' fees related to those fee-shifting claims from the defendant against whom plaintiff prevailed.

54. This type of arrangement appears to reward liberal, if not actual excessive billing by the attorneys and other legal professionals: That is, the more they billed, the more fees they could claim under the fee motion, and the more the attorneys stand to recover.

55. Furthermore, in the auditor's experience, there are no billing guidelines in a matter like this and the firms' billing is not contemporaneously reviewed by the client(s). The lack of any incentive to conserve fees can lead to lax oversight of billing practices, particularly when any billing overages accrue to the benefit of the ones who are billing. This lack of incentive to control fees is especially troublesome in light of the magnitude of the fees requested in this case.

56. The auditor approaches all legal fee audits with the assumption that most attorneys do not intentionally inflate their bills, and that there must be a "preponderance of the evidence" to support an audit finding that a certain amount of fees should be disallowed. In this regard, the auditor also believes that attorneys should be given the benefit of the doubt where possible overbilling may have occurred. On the other hand, in those cases where it is difficult to determine the nature and extent of the possible overbilling due to the firms' questionable billing practices, such as block billing or vague entries, it is incumbent upon the law firms to justify their fees.

**BILLING RECORDS**

57. The auditor views a law firm's billing records as a representation by the law firm that a particular task was performed on a particular day, by a particular timekeeper, and that the timekeeper spent the amount of time stated on the invoice. Billing format or billing practice irregularities that bring into question the credibility, integrity or reliability of a law firm's billing records are not only unacceptable, they are potentially grounds for a significant disallowance of fees.

58. The time records in this case show the date on which the task or tasks were performed, the timekeeper, a narrative description of the task or tasks and the hours billed for each billing entry.

**FINDINGS AND OPINIONS**

**Zuckerman Spaeder**

**I. <u>Unreasonable Paralegal and Litigation Support Hourly Rates</u>**

59. I regularly have access to current law firm rates in conducting legal fee audits and auditing law firms' billing invoices. I also regularly review court opinions on attorneys' fee motions and requests and I am familiar with what law firms practicing in the United States District Court for the Northern District of California are seeking as hourly rates and what courts are awarding, including, but not limited to, firms specializing in ERISA law. Based on my experience in having conducted approximately 3,000 legal fee audits, my experience as an attorney and expert in legal fees over the past 40 years, and my review of the above-mentioned material, I have personal knowledge of hourly billing rates for attorneys and staff in the Northern District of California market area. On that basis, it is my opinion that the billing rates being claimed for paralegals and litigation support personnel in Plaintiffs' Fee Petition are unreasonable for the reasons set forth below and that the requested rates should be adjusted. The Zuckerman Firm seeks the following rates for the paralegals and litigation support personnel who billed to this matter:

| Name | Title | Years of Experience[1] | Hourly Rate[2] | Hours[3] | Lodestar |
|---|---|---|---|---|---|
| Lori V. Duignan | Paralegal | 18 years | $370 (2020) | 2352.45 | $870,406.50 |
| Patrick Schmidt | Litigation Support | 19 years | $360 (2020) | 561.30 | $202,068.00 |
| Jer-Wei (Jay) Chen | Paralegal | 17 years | $340 (2018) | 310.11 | $105,437.40 |
| Cara London | Paralegal | 1 year | $300 (2017) | 268.54 | $80,562.00 |
| Tareq Nascher | Litigation Support | 12 years | $250 (2017) | 42.50 | $10,625.00 |
| | | | **TOTAL:** | **3,534.90** | **$1,269,098.90** |

[1] During year(s) assigned to matter.
[2] Current (2020), or in last year billing ten hours or more on the matter.
[3] As of October 31, 2020.

Reynolds Declaration, Ex. 1, page 3.

60. As with the fees for the attorneys, they are seeking these rates even though they acknowledge that the historic rates varied as follows:

| Name | Title | Hours | '14 | '15 | '16 | '17 | '18 | '19 | '20 |
|---|---|---|---|---|---|---|---|---|---|
| Chen, Jer-Wei (Jay) | Paralegal | 310.11 | | 300 | 330 | 330 | 340 | 355 | 370 |
| Duignan, Lori V. | Paralegal | 2,352.45 | 295 | 300 | 330 | 330 | | 355 | 370 |
| London, Cara | Paralegal | 273.54 | | | | 300 | | | |
| Nascher, Tareq | Litigation Support | 42.50 | | 200 | 225 | 250 | | | |
| Schmidt, Patrick | Litigation Support | 561.30 | 270 | 280 | 300 | 315 | 330 | 345 | 360 |

Reynolds Declaration, ¶ 78; Ex. 2.

61. First, these rates are excessive as discussed further below. Second, seeking the most recent claimed rates for all of their timekeepers, including paralegals and litigation support personnel, and then asking for a multiplier on top of these rates is doubly (or more) excessive.

**A. The Qualifications of the Paralegals.**

62. Under California law, certain requirements are imposed on those who claim to be paralegals. (California Business and Professions Code § 6454.) Failure to provide supporting data on the qualifications of these individuals can result in fees being denied for those timekeepers. (See, e.g. *Sanford v. GMRI, Inc. dba Red Lobster*, Civ. No. S-04-1535 (E.D. Cal. Nov. 14, 2005) (Fees denied due to paralegals not meeting requirements of B&P Code 6450.); *White v. GMRI, Inc. dba Red Lobster*, Civ. No. S-04-0620 (E.D. Cal. April 12, 2006) (Fees denied due to missing declaration of supervising attorney proving paralegal qualifications under B&P Code 6450.).)

63. Ms. Reynolds has provided insufficient information as to the education or experience of any of these paralegals. (Reynolds Decl., ¶¶ 69-71.) Furthermore, even though Ms. London is identified as and billed as a paralegal in Ms. Reynolds' exhibits, she is not

described as a "paralegal" but as a "paralegal assistant" in the declaration proper and absolutely no information has been provided as to her education or experience. (Reynolds Decl., ¶ 71.) Business and Professions Code section 6450(c) requires paralegals to have certain specified qualifications and without that information they should not be considered paralegals and billed at a lower rate. That subsection states:

> (c) A paralegal shall possess at least one of the following:
> (1) A certificate of completion of a paralegal program approved by the American Bar Association.
> (2) A certificate of completion of a paralegal program at, or a degree from, a postsecondary institution that requires the successful completion of a minimum of 24 semester, or equivalent, units in law-related courses and that has been accredited by a national or regional accrediting organization or approved by the Bureau for Private Postsecondary and Vocational Education.
> (3) A baccalaureate degree or an advanced degree in any subject, a minimum of one year of law-related experience under the supervision of an attorney who has been an active member of the State Bar of California for at least the preceding three years or who has practiced in the federal courts of this state for at least the preceding three years, and a written declaration from this attorney stating that the person is qualified to perform paralegal tasks.
> (4) A high school diploma or general equivalency diploma, a minimum of three years of law-related experience under the supervision of an attorney who has been an active member of the State Bar of California for at least the preceding three years or who has practiced in the federal courts of this state for at least the preceding three years, and a written declaration from this attorney stating that the person is qualified to perform paralegal tasks. This experience and training shall be completed no later than December 31, 2003.

64. Although the auditor understands this Court is not required to follow these California laws in this case, the type of work billed by the paralegals should be taken into consideration when determining the appropriate hourly rates to be charged for them.

**B. The Work Billed by the Paralegals and Litigation Support Personnel Was Frequently Clerical or Vague.**

65. **THE PARALEGALS.** The primary paralegal on this case was Lori V. Duignan. She billed 2,352.45 hours, or 80 percent of the time billed by all three paralegals. (2,352.45/2,931.10 = 80%).

66. Given the limited amount of time available to categorize all the time entries in the Zuckerman time records that totaled 13,250 billing entries, I was unable to categorize all of Ms. Duignan's work. However, an initial overview of her billing entries found a significant amount of clerical and vague billing entries.

67. For example, the following tasks as billed by Ms. Duignan are clerical, in whole or in part. Due to block billing, we were not able to determine the exact amount of time spent on the clerical portion of the time entry.

| | | | |
|---|---|---|---|
| Alex (14026) | 6/22/17 | 2.00 | Prepare index to deposition exhibits. |
| Wit (13877) | 6/22/17 | 2.10 | Prepare index to deposition exhibits. |
| Alex (14026) | 6/23/17 | 3.70 | Prepare index to deposition exhibits. |
| Wit (13877) | 6/23/17 | 3.60 | Prepare index to deposition exhibits. |
| Wit (13877) | 6/16/14 | 0.30 | Review and integrate court filings into document management system. |
| Wit (13877) | 6/18/14 | 0.40 | Review and integrate court filings into document management system. |
| Wit (13877) | 2/10/16 | 1.00 | Review and maintain court filings and written discovery databases. |
| Wit (13877) | 5/8/14 | 0.50 | Review and manage chart tracking potential plaintiffs. |
| Alex (14026) | 4/4/16 | 1.00 | Review and manage court filings database and internal docket. |
| Wit (13877) | 4/4/16 | 0.50 | Review and manage court filings database and internal docket. |
| Alex (14026) | 10/12/20 | 0.10 | Review and manage internal docket and update court filings database. |
| Wit (13877) | 10/12/20 | 0.10 | Review and manage internal docket and update court filings database. |
| Wit (13877) | 4/28/15 | 0.20 | Review and manage internal docket. |
| Alex (14026) | 1/13/16 | 0.20 | Review and manage internal docket. |
| Wit (13877) | 1/13/16 | 0.30 | Review and manage internal docket. |
| Alex (14026) | 1/27/16 | 0.30 | Review and manage internal docket. |
| Wit (13877) | 1/27/16 | 0.30 | Review and manage internal docket. |
| Alex (14026) | 2/9/16 | 0.30 | Review and manage internal docket. |
| Alex (14026) | 3/2/16 | 0.30 | Review and manage internal docket. |
| Wit (13877) | 3/2/16 | 0.20 | Review and manage internal docket. |

| | | | |
|---|---|---|---|
| Alex (14026) | 8/7/17 | 0.20 | Review and update court filings database and internal docket. |
| Wit (13877) | 8/7/17 | 0.20 | Review and update court filings database and internal docket. |
| Alex (14026) | 12/12/16 | 0.20 | Review and update court filings database. |
| Wit (13877) | 12/12/16 | 0.30 | Review and update court filings database. |
| Alex (14026) | 7/14/20 | 0.20 | Review and update court filings database. |
| Wit (13877) | 7/14/20 | 0.20 | Review and update court filings database. |
| Alex (14026) | 7/24/17 | 0.30 | Review and update internal docket and case schedule. |
| Wit (13877) | 7/24/17 | 0.40 | Review and update internal docket and case schedule. |
| Alex (14026) | 10/3/16 | 0.20 | Review and update internal docket and court filings database. |
| Wit (13877) | 10/3/16 | 0.30 | Review and update internal docket and court filings database. |
| Wit (13877) | 9/4/14 | 0.30 | Review and update internal docket. |
| Alex (14026) | 1/26/16 | 0.20 | Review and update internal docket. |
| Wit (13877) | 1/26/16 | 0.30 | Review and update internal docket. |
| Wit (13877) | 2/8/16 | 0.30 | Review and update internal docket. |
| Alex (14026) | 10/12/16 | 0.20 | Review and update internal docket. |
| Wit (13877) | 10/12/16 | 0.20 | Review and update internal docket. |
| Alex (14026) | 6/6/17 | 0.30 | Review and update internal docket. |
| Wit (13877) | 6/6/17 | 0.30 | Review and update internal docket. |
| Alex (14026) | 11/20/19 | 0.10 | Review and update internal docket. |
| Wit (13877) | 11/20/19 | 0.20 | Review and update internal docket. |
| Alex (14026) | 11/22/19 | 0.10 | Review and update internal docket. |
| Wit (13877) | 11/22/19 | 0.10 | Review and update internal docket. |
| Wit (13877) | 3/16/16 | 0.20 | Review court filings and update internal docket. |

| | | | |
|---|---|---|---|
| Alex (14026) | 7/18/16 | 0.30 | Review court filings and update internal docket. |
| Wit (13877) | 7/18/16 | 0.30 | Review court filings and update internal docket. |
| Alex (14026) | 3/16/16 | 0.20 | Review court filings and update internal docket. |
| Alex (14026) | 3/5/19 | 0.10 | Review ECF notices and update court filings database. |
| Wit (13877) | 3/5/19 | 0.20 | Review ECF notices and update court filings database. |
| Alex (14026) | 7/14/17 | 0.50 | Review information and manuals for Trial Director software. |
| Wit (13877) | 7/14/17 | 0.50 | Review information and manuals for Trial Director software. |
| Alex (14026) | 12/15/14 | 0.50 | Update and maintain court filings database. |
| Wit (13877) | 2/25/16 | 0.50 | Update and manage court filings database and internal docket. |
| Wit (13877) | 1/20/16 | 0.40 | Update and manage court filings database and internal docket. |
| Alex (14026) | 2/25/16 | 0.50 | Update and manage court filings database and internal docket. |
| Wit (13877) | 5/26/15 | 0.40 | Update and manage court filings database. |
| Alex (14026) | 8/10/15 | 0.20 | Update and manage court filings database. |
| Wit (13877) | 8/10/15 | 0.20 | Update and manage court filings database. |
| Alex (14026) | 8/24/16 | 0.30 | Update and organize court filings database. |
| Wit (13877) | 8/24/16 | 0.30 | Update and organize court filings database. |
| Wit (13877) | 6/5/15 | 0.20 | Update court filings database and internal docket. |
| Wit (13877) | 9/7/16 | 0.50 | Update court filings database and internal docket. |
| Wit (13877) | 11/14/16 | 0.40 | Update court filings database and internal docket. |
| Alex (14026) | 6/5/15 | 0.20 | Update court filings database and internal docket. |
| Alex (14026) | 9/7/16 | 0.30 | Update court filings database and internal docket. |
| Alex (14026) | 11/14/16 | 0.40 | Update court filings database and internal docket. |
| Alex (14026) | 11/4/15 | 0.30 | Update court filings database and manage internal docket. |

| | | | |
|---|---|---|---|
| Wit (13877) | 11/4/15 | 0.50 | Update court filings database and manage internal docket. |
| Alex (14026) | 12/4/15 | 0.50 | Update court filings database with plaintiffs' motion to compel and motion to seal filings. |
| Wit (13877) | 4/30/15 | 0.20 | Update court filings database. |
| Wit (13877) | 10/14/16 | 0.20 | Update court filings database. |
| Alex (14026) | 12/8/16 | 0.30 | Update court filings database. |
| Wit (13877) | 12/8/16 | 0.30 | Update court filings database. |
| Alex (14026) | 7/8/16 | 0.30 | Update court filings database. |
| Alex (14026) | 10/14/16 | 0.20 | Update court filings database. |
| Wit (13877) | 9/17/15 | 0.30 | Update deposition transcript database. |
| Wit (13877) | 10/15/15 | 0.30 | Update deposition transcript database. |
| Alex (14026) | 10/7/15 | 0.30 | Update written discovery database. |
| Wit (13877) | 10/7/15 | 0.30 | Update written discovery database. |
| Alex (14026) | 7/12/17 | 3.60 | Work on deposition exhibit index. |
| Wit (13877) | 7/12/17 | 3.70 | Work on deposition exhibit index. |
| Alex (14026) | 7/13/17 | 2.20 | Work on deposition exhibit index. |
| Wit (13877) | 7/13/17 | 2.10 | Work on deposition exhibit index. |
| Alex (14026) | 6/26/17 | 2.60 | Work on index to deposition exhibits. |
| Wit (13877) | 6/26/17 | 2.70 | Work on index to deposition exhibits. |
| Alex (14026) | 11/18/16 | 0.90 | Work on master contact list. |
| Wit (13877) | 11/18/16 | 0.80 | Work on master contact list. |
| Wit (13877) | 11/22/16 | 0.30 | Work on master contact list. |
| Alex (14026) | 9/28/16 | 0.90 | Attend to electronic case filing registration in the 9th Circuit for D. Brian Hufford, Jason S. Cowart and Caroline E. Reynolds. |

| | | | |
|---|---|---|---|
| Wit (13877) | 9/28/16 | 1.00 | Attend to electronic case filing registration in the 9th Circuit for D. Brian Hufford, Jason S. Cowart and Caroline E. Reynolds. |
| Alex (14026) | 6/24/19 | 0.20 | Attend to ordering hearing transcript in Utah case. |
| Wit (13877) | 6/24/19 | 0.20 | Attend to ordering hearing transcript in Utah case. |
| Alex (14026) | 9/26/19 | 0.10 | Circulate defendant's court filings to team. |
| Wit (13877) | 9/26/19 | 0.10 | Circulate defendant's court filings to team. |
| Alex (14026) | 9/8/20 | 0.10 | Communicate with court reporter regarding transcript of remedies hearing. |
| Alex (14026) | 6/26/19 | 0.10 | Communicate with court reporter regarding transcript order. |
| Wit (13877) | 6/26/19 | 0.10 | Communicate with court reporter regarding transcript order. |
| Alex (14026) | 4/29/16 | 1.00 | Download and organize defendant's class certification opposition filings for attorney review. |
| Wit (13877) | 4/29/16 | 2.00 | Download and organize defendant's class certification opposition filings for attorney review. |
| Alex (14026) | 4/29/15 | 0.40 | Draft and electronically file notice of change of attorney information for Meiram Bendat. |
| Alex (14026) | 1/9/15 | 0.20 | Electronically file waiver of service with the court. |
| Wit (13877) | 11/18/14 | 0.30 | Manage and update internal case docket. |
| Wit (13877) | 3/22/16 | 0.50 | Manage court filings database and internal docket. |
| Alex (14026) | 5/23/16 | 0.50 | Manage court filings database and internal docket. |
| Wit (13877) | 5/23/16 | 0.50 | Manage court filings database and internal docket. |
| Alex (14026) | 3/22/16 | 0.40 | Manage court filings database and internal docket. |
| Alex (14026) | 5/20/16 | 0.50 | Manage court filings database and internal docket. |
| Alex (14026) | 3/4/16 | 0.80 | Manage court filings database and review internal docket. |
| Wit (13877) | 3/4/16 | 1.00 | Manage court filings database and review internal docket. |
| Alex (14026) | 7/22/16 | 0.20 | Manage internal docket. |

| | | | |
|---|---|---|---|
| Wit (13877) | 10/24/16 | 0.20 | Manage internal docket. |
| Alex (14026) | 10/25/16 | 0.20 | Manage internal docket. |
| Wit (13877) | 12/8/14 | 0.90 | Organize and update court filings and written discovery databases. |
| Wit (13877) | 6/16/15 | 0.30 | Organize and update internal database with documents regarding potential related plaintiff. |
| Wit (13877) | 8/15/16 | 4.90 | Organize class certification court filings for attorney review. |
| Alex (14026) | 9/29/15 | 0.40 | Organize deposition transcripts and documents related to potential new plaintiff. |
| Alex (14026) | 8/27/15 | 0.30 | Organize documents regarding potential plaintiff for attorney review. |
| Alex (14026) | 11/2/17 | 4.60 | Post-trial organization and clean up. |
| Wit (13877) | 11/2/17 | 4.60 | Post-trial organization and clean up. |
| Alex (14026) | 11/3/17 | 4.80 | Post-trial organization and clean up. |
| Wit (13877) | 11/3/17 | 4.90 | Post-trial organization and clean up. |
| Alex (14026) | 11/4/17 | 3.90 | Post-trial organization and clean up. |
| Wit (13877) | 11/4/17 | 3.90 | Post-trial organization and clean up. |
| Alex (14026) | 3/29/19 | 0.20 | Prepare and e-file request for transcript of status conference. |
| Wit (13877) | 3/29/19 | 0.20 | Prepare and e-file request for transcript of status conference. |
| Wit (13877) | 8/19/14 | 2.50 | Attend to courtesy copy submission to court of opposition to motion to transfer venue; confer with Jason S. Cowart and litigation support department regarding preservation of evidence on United's websites; finalize litigation hold memorandum to the Wits. |
| Alex (14026) | 5/4/17 | 2.00 | Attend to deposition scheduling and coordination; review and update internal docket; review and analyze guidelines produced by defendant. |
| Wit (13877) | 5/4/17 | 2.10 | Attend to deposition scheduling and coordination; review and update internal docket; review and analyze guidelines produced by defendant. |
| Alex (14026) | 3/24/17 | 1.90 | Attend to deposition scheduling; assist with review and collection of documents from Relativity for attorney review. |

| | | | |
|---|---|---|---|
| Wit (13877) | 3/24/17 | 1.90 | Attend to deposition scheduling; assist with review and collection of documents from Relativity for attorney review. |
| Wit (13877) | 3/30/17 | 1.30 | Attend to deposition scheduling; e-mails with process server regarding service of subpoena; review draft stipulation and order regarding class notice. |
| Alex (14026) | 3/30/17 | 1.20 | Attend to deposition scheduling; e-mails with process server regarding service of subpoena; review draft stipulation and order regarding class notice. |
| Alex (14026) | 4/20/17 | 1.90 | Attend to deposition scheduling; work on expert disclosures for Dr. Chenven |
| Wit (13877) | 4/20/17 | 1.90 | Attend to deposition scheduling; work on expert disclosures for Dr. Chenven. |
| Alex (14026) | 12/8/14 | 2.50 | Attend to organizing and updating court filings and client documents databases; manage and update internal docket. |
| Wit (13877) | 9/9/16 | 0.50 | Attend to payment of class certification hearing transcript; update court filings database. |
| Alex (14026) | 9/11/20 | 0.20 | Communicate with court reporter regarding transcript of remedies hearing (.1); update court filings database (.1). |
| Wit (13877) | 9/11/20 | 0.20 | Communicate with court reporter regarding transcript of remedies hearing (.1); update court filings database (.1). |
| Wit (13877) | 2/1/17 | 3.30 | Coordinate loading of plaintiffs' documents to Relativity database; conduct background research on Rhonda Robinson Beale; research rules regarding service of subpoena on individual and discuss same with Adam Abelson; research local rules regarding appearance by telephone at court conference; confer with clerk's office regarding request for court reporter at case management conference and motion hearing; review order on plaintiffs' motion to seal portions of motion to amend schedule and e-mail with attorneys regarding next steps; review and update internal docket. |
| Alex (14026) | 5/24/17 | 1.00 | Coordinate updates to deposition transcript database; confer with litigation support department regarding same. |
| Wit (13877) | 5/24/17 | 1.00 | Coordinate updates to deposition transcript database; confer with litigation support department regarding same. |

| | | | |
|---|---|---|---|
| Alex (14026) | 3/29/16 | 3.60 | Download and organize motion to seal and motion for class certification and supporting exhibits in court filings database; prepare copies of all for chambers; draft letter to Judge Spero regarding chambers copies; draft letter to the Clerk regarding manually filed exhibits; prepare manually filed exhibits for filing with the court. |
| Wit (13877) | 3/29/16 | 3.60 | Download and organize motion to seal and motion for class certification and supporting exhibits in court filings database; prepare copies of all for chambers; draft letter to Judge Spero regarding chambers copies; draft letter to the Clerk regarding manually filed exhibits; prepare manually filed exhibits for filing with the court. |
| Wit (13877) | 4/29/15 | 0.70 | Draft and electronically file notice of change of attorney information for Meiram Bendat; update ECF account for Meiram Bendat. |
| Alex (14026) | 5/18/16 | 0.60 | Manage and organize court filings database; review internal docket. |
| Wit (13877) | 5/18/16 | 0.80 | Manage and organize court filings database; review internal docket. |
| Alex (14026) | 4/27/15 | 0.30 | Manage and update court filings database; docket pretrial order deadlines. |
| Wit (13877) | 4/27/15 | 0.40 | Manage and update court filings database; docket pretrial order deadlines. |
| Wit (13877) | 1/22/15 | 0.80 | Manage and update written discovery database; review order relating cases; update internal docket. |
| Wit (13877) | 12/16/14 | 0.40 | Manage and update written discovery database; update internal docket. |
| Wit (13877) | 4/14/16 | 1.00 | Manage court filings database; review internal docket. |
| Wit (13877) | 4/18/16 | 1.20 | Manage court filings database; review internal docket. |
| Wit (13877) | 10/26/15 | 0.50 | Manage deposition transcript database; calculate and docket deadlines for errata sheets. |
| Wit (13877) | 10/14/14 | 0.50 | Manage internal docket; e-mails with Caroline E. Reynolds and Andrew Caridas regarding preparation of pro hac vice motions; update written discovery file. |
| Alex (14026) | 8/2/16 | 0.50 | Manage internal docket; update court filings database. |
| Wit (13877) | 12/6/16 | 0.50 | Manage internal docket; update court filings database. |
| Alex (14026) | 6/23/16 | 0.40 | Manage internal docket; update court filings database. |

| | | | |
|---|---|---|---|
| Wit (13877) | 6/23/16 | 0.30 | Manage internal docket; update court filings database. |
| Wit (13877) | 8/2/16 | 0.40 | Manage internal docket; update court filings database. |
| Alex (14026) | 5/3/16 | 1.60 | Manage internal docket; update court filings database; organize written discovery. |
| Wit (13877) | 5/3/16 | 1.50 | Manage internal docket; update court filings database; organize written discovery. |
| Wit (13877) | 11/17/15 | 3.30 | Organize and manage deposition transcripts; calculate and docket due dates for errata sheets; work on review and tagging of documents in document production database. |
| Wit (13877) | 5/20/20 | 0.50 | Organize court filings database (.2); review ECF notifications (.1); review and manage internal docket (.2). |
| Wit (13877) | 11/6/17 | 6.10 | Post-trial organization and clean up; travel from San Francisco to NY. |
| Alex (14026) | 11/6/17 | 6.10 | Post-trial organization and clean up; travel from San Francisco to NY. |
| Alex (14026) | 12/18/14 | 1.00 | Prepare and electronically file magistrate consent form and notice of address change with the court; serve same on opposing counsel; update court filings database. |
| Wit (13877) | 10/27/14 | 0.40 | Prepare courtesy copy of opposition to motion to dismiss for chambers; update court filings database. |
| Alex (14026) | 7/11/19 | 0.50 | Prepare electronic copy of reply in support of request for remedies, exhibits, proposed order and sealing motion for submission to chambers; coordinate preparation of chambers copy and delivery to court. |
| Wit (13877) | 7/11/19 | 0.50 | Prepare electronic copy of reply in support of request for remedies, exhibits, proposed order and sealing motion for submission to chambers; coordinate preparation of chambers copy and delivery to court. |
| Alex (14026) | 12/15/17 | 0.50 | Prepare flash drive of plaintiffs' hyperlinked post-trial briefing for service on UBH; review cover letter to the court enclosing same. |
| Wit (13877) | 12/15/17 | 0.50 | Prepare flash drive of plaintiffs' hyperlinked post-trial briefing for service on UBH; review cover letter to the court enclosing same. |
| Alex (14026) | 6/20/17 | 2.90 | Prepare index to deposition exhibits; update court filings database and internal docket. |
| Wit (13877) | 6/20/17 | 3.00 | Prepare index to deposition exhibits; update court filings database and internal docket. |

| | | | |
|---|---|---|---|
| Alex (14026) | 11/17/16 | 2.60 | Prepare master contact list; review defendant's motion for leave to file reply in support of 23(f) petition; research procedure and requirements regarding opposition to same and filing of sur-reply. |
| Wit (13877) | 11/17/16 | 2.50 | Prepare master contact list; review defendant's motion for leave to file reply in support of 23(f) petition; research procedure and requirements regarding opposition to same and filing of sur-reply. |
| Alex (14026) | 12/18/14 | 0.50 | Prepare notice of firm address change; coordinate filing of same with local counsel. |
| Wit (13877) | 12/18/14 | 0.50 | Prepare notice of firm address change; electronically file same with the court. |
| Wit (13877) | 6/25/14 | 0.50 | Review and integrate court filings into document management system; review and confirm upcoming deadlines. |
| Wit (13877) | 2/29/16 | 0.50 | Review and manage court filings and discovery databases; review internal docket. |
| Alex (14026) | 2/29/16 | 0.40 | Review and manage court filings and discovery databases; review internal docket. |
| Wit (13877) | 7/6/20 | 0.50 | Review and manage internal docket (.2); update court filings database (.3). |
| Alex (14026) | 10/20/16 | 0.20 | Review and manage internal docket; manage court filings database. |
| Wit (13877) | 10/20/16 | 0.30 | Review and manage internal docket; manage court filings database. |
| Wit (13877) | 11/15/16 | 0.50 | Review and manage internal docket; organize court filings database. |
| Alex (14026) | 11/16/16 | 0.50 | Review and manage internal docket; organize court filings database. |
| Wit (13877) | 7/31/14 | 1.00 | Review and manage internal docket; review and organize documents received from Meiram Bendat related to patient Holdnak. |
| Alex (14026) | 6/28/17 | 1.10 | Review and organize deposition transcripts and exhibits; review and manage Livenote database; work on index to deposition exhibits. |
| Wit (13877) | 6/28/17 | 1.20 | Review and organize deposition transcripts and exhibits; review and manage Livenote database; work on index to deposition exhibits. |
| Alex (14026) | 5/26/17 | 1.40 | Review and update court filings and discovery databases; review deposition transcript database; manage internal docket. |
| Wit (13877) | 5/26/17 | 1.50 | Review and update court filings and discovery databases; review deposition transcript database; manage internal docket. |

| | | | |
|---|---|---|---|
| Alex (14026) | 5/19/17 | 0.20 | Review and update court filings database; review internal docket. |
| Wit (13877) | 5/19/17 | 0.30 | Review and update court filings database; review internal docket. |
| Alex (14026) | 9/3/20 | 0.30 | Review and update internal docket (.1); communicate with court reporter regarding transcript of remedies hearing (.2). |
| Wit (13877) | 9/3/20 | 0.30 | Review and update internal docket (.1); communicate with court reporter regarding transcript of remedies hearing (.2). |
| Alex (14026) | 7/28/17 | 2.00 | Review case management order; update internal docket with pretrial deadlines; review and edit case schedule; work on trial exhibit list. |
| Wit (13877) | 7/28/17 | 2.10 | Review case management order; update internal docket with pretrial deadlines; review and edit case schedule; work on trial exhibit list. |
| Wit (13877) | 12/15/15 | 0.50 | Review court filings; update court filings database and internal docket. |
| Wit (13877) | 10/23/14 | 0.20 | Review court notice amending deadlines; update court filings database; update internal docket. |
| Wit (13877) | 11/19/14 | 0.30 | Review court order setting deadlines; update internal docket. |
| Alex (14026) | 11/11/16 | 0.50 | Review internal docket; organize court filings database. |
| Wit (13877) | 11/11/16 | 0.50 | Review internal docket; organize court filings database. |
| Alex (14026) | 1/4/17 | 0.20 | Review notices of court filings; update court filings database and internal docket. |
| Wit (13877) | 1/4/17 | 0.40 | Review notices of court filings; update court filings database and internal docket. |
| Alex (14026) | 3/2/15 | 0.30 | Review notices of court filings; update court filings database; manage and update internal docket. |
| Alex (14026) | 3/5/15 | 0.40 | Review notices of court filings; update court filings database; manage internal docket. |
| Wit (13877) | 3/5/15 | 0.20 | Review notices of court filings; update court filings database; manage internal docket. |
| Alex (14026) | 2/9/15 | 0.50 | Review notices of court filings; update court filings database; review local rules and docket motion to dismiss deadlines. |
| Alex (14026) | 12/3/15 | 1.20 | Update and manage internal docket; update court filings database; attend to document collection from potential new plaintiff. |
| Alex (14026) | 6/27/17 | 4.00 | Update and organize deposition transcript database; e-mails with litigation support regarding same. |

| | | | |
|---|---|---|---|
| Wit (13877) | 6/27/17 | 4.10 | Update and organize deposition transcript database; e-mails with litigation support regarding same. |
| Alex (14026) | 5/26/16 | 0.40 | Update court filings database and index; manage internal docket. |
| Wit (13877) | 5/26/16 | 0.40 | Update court filings database and index; manage internal docket. |
| Wit (13877) | 12/4/15 | 4.80 | Update court filings database with plaintiffs' motion to compel and motion to seal filings; review defendant's declaration regarding plaintiffs' motion to seal and discuss next steps with Caroline E. Reynolds; review, proofread and edit notice of motion and brief in support of motion to intervene; confer with Andrew Caridas regarding same and plan for filing. |
| Wit (13877) | 12/3/14 | 0.40 | Update court filings database; manage and update internal docket. |
| Alex (14026) | 3/19/15 | 0.30 | Update court filings database; manage and update internal docket. |
| Wit (13877) | 3/19/15 | 0.40 | Update court filings database; manage and update internal docket. |
| Alex (14026) | 2/10/15 | 0.40 | Update court filings database; manage internal docket. |
| Wit (13877) | 8/12/16 | 0.40 | Update court filings database; manage internal docket. |
| Wit (13877) | 2/9/16 | 0.50 | Update court filings database; review and manage internal docket. |
| Wit (13877) | 6/7/16 | 1.00 | Update court filings database; review and manage internal docket. |
| Alex (14026) | 6/7/16 | 0.80 | Update court filings database; review and manage internal docket. |
| Alex (14026) | 3/15/17 | 0.20 | Update court filings database; review and update internal docket. |
| Wit (13877) | 3/15/17 | 0.30 | Update court filings database; review and update internal docket. |
| Alex (14026) | 11/8/16 | 0.90 | Update court filings database; review and update internal docket; prepare and circulate schedule of deadlines to team. |
| Wit (13877) | 11/8/16 | 1.00 | Update court filings database; review and update internal docket; prepare and circulate schedule of deadlines to team. |
| Wit (13877) | 6/17/16 | 0.50 | Update court filings database; review internal docket. |
| Alex (14026) | 9/21/16 | 0.30 | Update court filings database; review internal docket. |
| Alex (14026) | 6/5/17 | 0.40 | Update court filings database; review internal docket. |

| | | | |
|---|---|---|---|
| Wit (13877) | 6/5/17 | 0.40 | Update court filings database; review internal docket. |
| Alex (14026) | 5/1/15 | 0.20 | Update court filings database; review revised scheduling order and update internal docket. |
| Wit (13877) | 5/1/15 | 0.20 | Update court filings database; review revised scheduling order and update internal docket. |
| Alex (14026) | 6/12/17 | 0.90 | Update court filings database; serve deposition errata of Drs. Fishman and Plakun on counsel. |
| Wit (13877) | 6/12/17 | 0.90 | Update court filings database; serve deposition errata of Drs. Fishman and Plakun on counsel. |
| Wit (13877) | 1/8/16 | 0.30 | Update court filings database; update internal docket. |
| Alex (14026) | 12/21/15 | 0.70 | Update discovery database; review and manage internal docket. |
| Wit (13877) | 12/21/15 | 0.80 | Update discovery database; review and manage internal docket. |
| Alex (14026) | 1/8/16 | 0.20 | Update internal docket; update court filings database. |
| Alex (14026) | 5/31/17 | 0.40 | Work with litigation support to update deposition transcript database; e-mail with expert regarding deposition transcript review. |
| Wit (13877) | 5/31/17 | 0.50 | Work with litigation support to update deposition transcript database; e-mail with expert regarding deposition transcript review. |
| Alex (14026) | 8/3/20 | 1.70 | Assist with factual research and preparation of documents for remedies hearing (1.6); review order and update internal docket (.1). |
| Wit (13877) | 8/3/20 | 1.70 | Assist with factual research and preparation of documents for remedies hearing (1.6); review order and update internal docket (.1). |
| Alex (14026) | 6/9/17 | 3.00 | Assist with preparation of exhibits to stipulations of fact regarding guideline groupings; review and file stipulations of fact and exhibits with the court; attend to service of deposition signature and errata of Dr. Chenven; update court filings database. |
| Wit (13877) | 6/9/17 | 3.00 | Assist with preparation of exhibits to stipulations of fact regarding guideline groupings; review and file stipulations of fact and exhibits with the court; attend to service of deposition signature and errata of Dr. Chenven; update court filings database. |

68. These 242 entries total 231.20 hours. Most, if not all, of these tasks do not require the education or experience of a paralegal and in my experience in most law firms would have

been handled by secretarial or administrative staff, and thus included in the overhead built into the hourly rates charged by the professionals.

69. An additional 76 billing entries related to document collection, which as described also appeared to be a clerical task not requiring legal education or experience:

| | | | |
|---|---|---|---|
| Alex (14026) | 3/26/19 | 0.20 | Attend to collection of documents from potential class members. |
| Wit (13877) | 3/26/19 | 0.20 | Attend to collection of documents from potential class members. |
| Alex (14026) | 4/4/19 | 0.10 | Attend to collection of documents from potential class members. |
| Wit (13877) | 4/4/19 | 0.10 | Attend to collection of documents from potential class members. |
| Alex (14026) | 4/11/19 | 0.20 | Attend to collection of documents from potential class members. |
| Wit (13877) | 4/11/19 | 0.20 | Attend to collection of documents from potential class members. |
| Alex (14026) | 4/16/19 | 0.20 | Attend to collection of documents from potential class members. |
| Wit (13877) | 4/16/19 | 0.20 | Attend to collection of documents from potential class members. |
| Alex (14026) | 4/22/19 | 0.30 | Attend to collection of documents from potential class members. |
| Wit (13877) | 4/22/19 | 0.30 | Attend to collection of documents from potential class members. |
| Alex (14026) | 4/23/19 | 0.20 | Attend to collection of documents from potential class members. |
| Wit (13877) | 4/23/19 | 0.20 | Attend to collection of documents from potential class members. |
| Alex (14026) | 5/6/19 | 0.20 | Attend to collection of documents from potential class members. |
| Wit (13877) | 5/6/19 | 0.20 | Attend to collection of documents from potential class members. |
| Alex (14026) | 5/9/19 | 0.10 | Attend to collection of documents from potential class members. |
| Wit (13877) | 5/9/19 | 0.20 | Attend to collection of documents from potential class members. |
| Alex (14026) | 5/10/19 | 0.20 | Attend to collection of documents from potential class members. |
| Wit (13877) | 5/10/19 | 0.20 | Attend to collection of documents from potential class members. |
| Alex (14026) | 5/30/19 | 0.20 | Attend to collection of documents from potential class members. |

| | | | |
|---|---|---|---|
| Wit (13877) | 5/30/19 | 0.20 | Attend to collection of documents from potential class members. |
| Alex (14026) | 6/3/19 | 0.30 | Attend to collection of documents from potential class members. |
| Wit (13877) | 6/3/19 | 0.30 | Attend to collection of documents from potential class members. |
| Alex (14026) | 6/5/19 | 0.20 | Attend to collection of documents from potential class members. |
| Wit (13877) | 6/5/19 | 0.30 | Attend to collection of documents from potential class members. |
| Alex (14026) | 6/6/19 | 0.30 | Attend to collection of documents from potential class members. |
| Wit (13877) | 6/6/19 | 0.40 | Attend to collection of documents from potential class members. |
| Alex (14026) | 6/7/19 | 0.20 | Attend to collection of documents from potential class members. |
| Wit (13877) | 6/7/19 | 0.20 | Attend to collection of documents from potential class members. |
| Alex (14026) | 6/10/19 | 0.10 | Attend to collection of documents from potential class members. |
| Wit (13877) | 6/10/19 | 0.20 | Attend to collection of documents from potential class members. |
| Alex (14026) | 7/8/19 | 0.30 | Attend to collection of documents from potential class members. |
| Wit (13877) | 7/8/19 | 0.30 | Attend to collection of documents from potential class members. |
| Alex (14026) | 7/24/19 | 0.20 | Attend to collection of documents from potential class members. |
| Wit (13877) | 7/24/19 | 0.20 | Attend to collection of documents from potential class members. |
| Alex (14026) | 8/1/19 | 0.10 | Attend to collection of documents from potential class members. |
| Wit (13877) | 8/1/19 | 0.20 | Attend to collection of documents from potential class members. |
| Alex (14026) | 8/9/19 | 0.20 | Attend to collection of documents from potential class members. |
| Wit (13877) | 8/9/19 | 0.20 | Attend to collection of documents from potential class members. |
| Alex (14026) | 8/19/19 | 0.30 | Attend to collection of documents from potential class members. |
| Wit (13877) | 8/19/19 | 0.30 | Attend to collection of documents from potential class members. |
| Alex (14026) | 8/26/19 | 0.20 | Attend to collection of documents from potential class members. |
| Wit (13877) | 8/26/19 | 0.20 | Attend to collection of documents from potential class members. |

| | | | |
|---|---|---|---|
| Alex (14026) | 8/29/19 | 0.10 | Attend to collection of documents from potential class members. |
| Wit (13877) | 8/29/19 | 0.20 | Attend to collection of documents from potential class members. |
| Alex (14026) | 9/3/19 | 0.20 | Attend to collection of documents from potential class members. |
| Wit (13877) | 9/3/19 | 0.30 | Attend to collection of documents from potential class members. |
| Alex (14026) | 1/22/20 | 0.20 | Attend to document collection from class member. |
| Wit (13877) | 1/22/20 | 0.20 | Attend to document collection from class member. |
| Alex (14026) | 6/29/19 | 0.50 | Attend to collection of documents from potential class members; circulate internally. |
| Wit (13877) | 6/29/19 | 0.50 | Attend to collection of documents from potential class members; circulate internally. |
| Alex (14026) | 5/28/19 | 0.50 | Attend to collection of documents from potential class members; communicate with potential class members. |
| Wit (13877) | 5/28/19 | 0.50 | Attend to collection of documents from potential class members; communicate with potential class members. |
| Alex (14026) | 5/14/19 | 0.50 | Attend to collection of documents from potential class members; emails and calls with potential class members. |
| Wit (13877) | 5/14/19 | 0.50 | Attend to collection of documents from potential class members; emails and calls with potential class members. |
| Alex (14026) | 5/7/19 | 0.30 | Attend to collection of documents from potential class members; prepare redline of proposed remedies order for defendant. |
| Wit (13877) | 5/7/19 | 0.30 | Attend to collection of documents from potential class members; prepare redline of proposed remedies order for defendant. |
| Alex (14026) | 5/20/19 | 0.30 | Attend to collection of documents from potential class members; share documents with Meiram Bendat. |
| Wit (13877) | 5/20/19 | 0.30 | Attend to collection of documents from potential class members; share documents with Meiram Bendat. |
| Alex (14026) | 5/21/19 | 1.00 | Attend to collection of documents from potential class members; share documents with Meiram Bendat. |
| Wit (13877) | 5/21/19 | 1.00 | Attend to collection of documents from potential class members; share documents with Meiram Bendat. |

| | | | |
|---|---|---|---|
| Alex (14026) | 5/23/19 | 0.50 | Attend to collection of documents from potential class members; share documents with Meiram Bendat. |
| Wit (13877) | 5/23/19 | 0.50 | Attend to collection of documents from potential class members; share documents with Meiram Bendat. |
| Alex (14026) | 3/21/19 | 0.30 | Attend to collection of documents from potential class members; update tracking spreadsheet. |
| Wit (13877) | 3/21/19 | 0.30 | Attend to collection of documents from potential class members; update tracking spreadsheet. |
| Alex (14026) | 3/29/19 | 0.20 | Attend to collection of documents from potential class members; update tracking spreadsheet. |
| Wit (13877) | 3/29/19 | 0.30 | Attend to collection of documents from potential class members; update tracking spreadsheet. |
| Alex (14026) | 4/5/19 | 0.20 | Attend to collection of documents from potential class members; update tracking spreadsheet. |
| Wit (13877) | 4/5/19 | 0.20 | Attend to collection of documents from potential class members; update tracking spreadsheet. |
| Alex (14026) | 4/12/19 | 0.30 | Attend to collection of documents from potential class members; update tracking spreadsheet. |
| Wit (13877) | 4/12/19 | 0.30 | Attend to collection of documents from potential class members; update tracking spreadsheet. |
| Alex (14026) | 4/18/19 | 0.30 | Attend to collection of documents from potential class members; update tracking spreadsheet. |
| Wit (13877) | 4/18/19 | 0.40 | Attend to collection of documents from potential class members; update tracking spreadsheet. |
| Alex (14026) | 4/24/19 | 0.20 | Attend to collection of documents from potential class members; update tracking spreadsheet. |
| Wit (13877) | 4/24/19 | 0.20 | Attend to collection of documents from potential class members; update tracking spreadsheet. |
| Alex (14026) | 5/29/19 | 0.30 | Attend to collection of documents from potential class members; update tracking spreadsheet. |
| Wit (13877) | 5/29/19 | 0.30 | Attend to collection of documents from potential class members; update tracking spreadsheet. |

70. These 76 entries total 21.30 hours for a total of 252.50 clerical hours. (231.20 + 21.30 = 252.50).

71. Clerical work is generally not recoverable in an attorney's fee motion because all such work is considered overhead. Instead, it should be taken into account when the law firm sets its attorney's hourly rates.

72. Even if the work was done by one of the timekeepers designated as a paralegal, clerical work is not recoverable. "...[F]ee requests for ministerial tasks performed by counsel such as 'file organization' should not be allowed as compensable time." [*In re Taylor*, 100 B.R. 42, 44 (Bankr. D. Colo. 1989)] And, "...[t]ruly ministerial services such as xeroxing and filing documents with the Court should not be compensated at the same rate as those services which are legal. Even if an attorney or paralegal performs the ministerial services, it does not increase the value of that service." [*Ibid.*] (*See also Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."); *Hall*, 2018 WL 2298431, at *4 ("Courts have discounted paralegal billing entries for "clerical tasks" such as "filing, transcript, and document organization time.") (citing *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009)); *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1105 (N.D. Cal. 2010) ("Clerical and secretarial work is not compensable as attorneys' fees") (*citing Davis v. City and County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993).

73. Ms. Duignan also billed for vague trial preparation.

| | | | |
|---|---|---|---|
| Wit (13877) | 10/16/17 | 10.10 | Prepare for and attend trial. |
| Wit (13877) | 10/17/17 | 8.70 | Prepare for and attend trial. |
| Alex (14026) | 10/18/17 | 7.50 | Prepare for and attend trial. |
| Wit (13877) | 10/18/17 | 7.50 | Prepare for and attend trial. |
| Alex (14026) | 10/23/17 | 8.90 | Prepare for and attend trial. |
| Wit (13877) | 10/23/17 | 8.90 | Prepare for and attend trial. |
| Alex (14026) | 10/24/17 | 7.80 | Prepare for and attend trial. |
| Wit (13877) | 10/24/17 | 7.90 | Prepare for and attend trial. |
| Alex (14026) | 10/25/17 | 8.30 | Prepare for and attend trial. |
| Wit (13877) | 10/25/17 | 8.30 | Prepare for and attend trial. |

| | | | |
|---|---|---|---|
| Alex (14026) | 10/26/17 | 6.20 | Prepare for and attend trial. |
| Wit (13877) | 10/26/17 | 6.20 | Prepare for and attend trial. |
| Alex (14026) | 10/30/17 | 5.20 | Prepare for and attend trial. |
| Wit (13877) | 10/30/17 | 5.30 | Prepare for and attend trial. |
| Alex (14026) | 10/31/17 | 6.40 | Prepare for and attend trial. |
| Wit (13877) | 10/31/17 | 6.40 | Prepare for and attend trial. |
| Alex (14026) | 11/1/17 | 5.00 | Prepare for and attend trial. |
| Wit (13877) | 11/1/17 | 5.00 | Prepare for and attend trial. |
| Alex (14026) | 10/16/17 | 10.00 | Prepare for and attend trial. |
| Alex (14026) | 10/17/17 | 8.60 | Prepare for and attend trial. |
| Alex (14026) | 10/8/17 | 4.00 | Prepare for trial. |
| Wit (13877) | 10/8/17 | 4.00 | Prepare for trial. |
| Wit (13877) | 10/9/17 | 5.60 | Prepare for trial. |
| Alex (14026) | 10/10/17 | 6.20 | Prepare for trial. |
| Wit (13877) | 10/10/17 | 6.30 | Prepare for trial. |
| Alex (14026) | 10/11/17 | 6.60 | Prepare for trial. |
| Wit (13877) | 10/11/17 | 6.60 | Prepare for trial. |
| Alex (14026) | 10/12/17 | 6.00 | Prepare for trial. |
| Wit (13877) | 10/12/17 | 6.00 | Prepare for trial. |
| Alex (14026) | 10/13/17 | 5.10 | Prepare for trial. |
| Wit (13877) | 10/13/17 | 5.20 | Prepare for trial. |
| Alex (14026) | 10/14/17 | 4.10 | Prepare for trial. |
| Wit (13877) | 10/14/17 | 4.20 | Prepare for trial. |

| | | | |
|---|---|---|---|
| Alex (14026) | 10/15/17 | 7.00 | Prepare for trial. |
| Wit (13877) | 10/15/17 | 7.00 | Prepare for trial. |
| Wit (13877) | 10/19/17 | 3.80 | Prepare for trial. |
| Alex (14026) | 10/20/17 | 4.60 | Prepare for trial. |
| Wit (13877) | 10/20/17 | 4.60 | Prepare for trial. |
| Alex (14026) | 10/21/17 | 5.80 | Prepare for trial. |
| Wit (13877) | 10/21/17 | 5.80 | Prepare for trial. |
| Alex (14026) | 10/22/17 | 6.20 | Prepare for trial. |
| Wit (13877) | 10/22/17 | 6.30 | Prepare for trial. |
| Alex (14026) | 10/27/17 | 3.70 | Prepare for trial. |
| Wit (13877) | 10/27/17 | 3.80 | Prepare for trial. |
| Alex (14026) | 10/9/17 | 5.50 | Prepare for trial. |
| Alex (14026) | 10/19/17 | 3.70 | Prepare for trial. |
| Alex (14026) | 10/29/17 | 4.80 | Prepare for trial. |
| Wit (13877) | 10/29/17 | 4.70 | Prepare for trial. |

74. These 48 billing entries total 295.40 hours.

75. It is not possible from these entries to determine whether the amount of time billed to perform these tasks were reasonable given the vague subject of the preparation. While the auditor does not question whether Ms. Duignan assisted in the preparation for trial, vague entries are problematic because they provide little or no information about the nature or significance of the work performed and can severely hamper a realistic assessment of the utility or reasonableness of associated fees. In general, the billing records ought to provide: "…sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *United Slate, Tile & Composition v. G&M Roofing,* 732 F.2d 495, 502 n.2 (6th Cir. 1984).

76. It is impossible to determine from these billing entries whether the work billed was necessary, whether the time billed for that work was reasonable, and whether that work was duplicative of work billed by other timekeepers.

77. Vague entries have in common that they omit a basic element of information necessary to communicate what was done, be it the person conferred with, or more typically, the subject addressed. As the Supreme Court notes in *Hensley v. Eckerhart,* 461 U.S. 424, 76 L.Ed. 2d 40, 103 S. Ct. 1933 (1983), "plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley,* 461 U.S. at 437 n. 12. See also *Davis v City and County of San Francisco,* 976 F.2d at 1542 (9th Cir. 1992).

78. The California State Bar issued Arbitration Advisory 2016-02 on March 25, 2016. It is titled "Analysis of Potential Bill Padding and Other Billing Issues."

> Furthermore, generalized time entries such as "research issues", "review file", "attention to file", "discovery", "prepare for trial", "trial prep", and other similar general statements are not specific enough to let the client know what was done. If a lawyer uses such non-specific task descriptions, it may be appropriate for the arbitrator to place on the lawyer the burden of clarifying what was actually done to assess whether the generalized time entries are actually compensable and appropriate.

Arbitration Advisory 2016-02, ¶ 5. A true and correct copy of this Advisory is attached as **Exhibit 8**.

79. Vague entries not only fail to inform the client, in this case they also fail to inform the party being asked to pay for the fees and the Court as to precisely what work was being done.

80. It is the obligation of the moving party to "submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 433 (1983). Billing records must at least identify the general subject matter of time expenditures so as to enable the reviewing court to determine whether the time spent is related to a prevailing claim. *Id.* 461 U.S. at 437, fn 12. If plaintiff's counsel fails to do so, the Court may be justified in "throwing up its hands and refusing to award any fees whatsoever." *Norris v. Sysco Corp.,* 191 F.3d 1043, 1052 (9th Cir. 1999).

81. In *In re Samuel R. Pierce, Jr.,* 190 F.3d 586, 593-594 (D.C. Cir. 1999), the D.C. Circuit confirmed that its general practice was to reduce vaguely entered hours of plaintiffs' attorneys by 10 percent. Similarly, the Eighth Circuit in *H.J. Inc. v. Flygt Corp.,* 925 F.2d 257, 260 (8th Cir. 1991) upheld a district court's reduction of hours billed by the prevailing Petitioner's Attorneys by 20 percent for vague billing entries. Finally, in *Gratz v. Bollinger,* 353 F.Supp.2d 929, 939 (E.D. Mich. 2005), District Judge Duggan reduced requested fees 10 percent due to block billing and vague entries.

82. Rather than reducing the hours billed, the same result can be achieved by reducing the billing rate of the timekeeper billing those tasks.

83. The time billed for these three categories (clerical, document collection, and vague trial preparation) total 547.9 hours, or 23 percent of her total time. (547.9/2352.45 = 23%.)

84. The other paralegal on this case was Jer-Wei (Jay) Chen. He also billed for performing clerical tasks:

| | | | |
|---|---|---|---|
| Alex (14026) | 10/6/17 | 0.10 | Assist with obtaining transcript of pretrial conference. |
| Wit (13877) | 10/6/17 | 0.10 | Assist with obtaining transcript of pretrial conference. |
| Alex (14026) | 3/29/16 | 2.20 | Prepare courtesy copy of motion for class certification, motion to seal, and exhibits for Judge Spero. |
| Wit (13877) | 3/29/16 | 2.10 | Prepare courtesy copy of motion for class certification, motion to seal, and exhibits for Judge Spero. |
| Alex (14026) | 5/4/16 | 1.00 | Prepare hyperlink of exhibits in support of motion for class certification per Court's order. |
| Wit (13877) | 5/4/16 | 1.00 | Prepare hyperlink of exhibits in support of motion for class certification per Court's order. |
| Alex (14026) | 6/27/17 | 3.00 | Review and index deposition exhibits. |
| Alex (14026) | 7/11/17 | 0.80 | Review and index deposition exhibits. |
| Alex (14026) | 6/26/17 | 1.50 | Review and index deposition exhibits. |
| Wit (13877) | 6/26/17 | 1.50 | Review and index deposition exhibits. |

| | | | |
|---|---|---|---|
| Wit (13877) | 6/27/17 | 3.00 | Review and index deposition exhibits. |
| Alex (14026) | 6/28/17 | 2.40 | Review and index deposition exhibits. |
| Wit (13877) | 6/28/17 | 2.40 | Review and index deposition exhibits. |
| Alex (14026) | 6/29/17 | 1.40 | Review and index deposition exhibits. |
| Wit (13877) | 6/29/17 | 1.40 | Review and index deposition exhibits. |
| Alex (14026) | 6/30/17 | 2.20 | Review and index deposition exhibits. |
| Wit (13877) | 6/30/17 | 2.20 | Review and index deposition exhibits. |
| Alex (14026) | 7/10/17 | 2.20 | Review and index deposition exhibits. |
| Wit (13877) | 7/10/17 | 2.20 | Review and index deposition exhibits. |
| Wit (13877) | 7/11/17 | 0.80 | Review and index deposition exhibits. |
| Alex (14026) | 7/12/17 | 2.20 | Review and index deposition exhibits. |
| Wit (13877) | 7/12/17 | 2.20 | Review and index deposition exhibits. |
| Alex (14026) | 10/12/17 | 0.30 | Prepare and forward Robinson Beale's transcript to Lori V. Duignan. |
| Wit (13877) | 10/12/17 | 0.30 | Prepare and forward Robinson Beale's transcript to Lori V. Duignan. |

85. These 24 billing entries total 38.50 hours and reflect tasks that should have been performed by secretarial or administrative staff.

86. Mr. Chen also billed for vague trial preparation:

| | | | |
|---|---|---|---|
| Wit (13877) | 9/23/17 | 1.23 | Assist with preparation of trial exhibits. |
| Wit (13877) | 7/31/17 | 0.50 | Assist with preparation of trial exhibits. |
| Alex (14026) | 8/7/17 | 0.50 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 8/7/17 | 0.50 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 8/14/17 | 2.50 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 8/22/17 | 3.30 | Assist with the preparation of trial exhibits. |

| | | | |
|---|---|---|---|
| Alex (14026) | 8/23/17 | 2.50 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 9/11/17 | 2.00 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 9/13/17 | 0.50 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 9/22/17 | 2.70 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 9/24/17 | 1.68 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 8/9/17 | 0.80 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 8/9/17 | 0.80 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 8/10/17 | 1.00 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 8/10/17 | 1.00 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 8/11/17 | 1.60 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 8/11/17 | 1.60 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 8/14/17 | 2.50 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 8/18/17 | 1.30 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 8/18/17 | 1.30 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 8/22/17 | 3.30 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 8/23/17 | 2.50 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 8/24/17 | 0.30 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 8/24/17 | 0.30 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 9/8/17 | 1.60 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 9/8/17 | 1.60 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 9/11/17 | 2.00 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 9/12/17 | 2.00 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 9/12/17 | 2.00 | Assist with the preparation of trial exhibits. |

| | | | |
|---|---|---|---|
| Wit (13877) | 9/13/17 | 0.50 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 9/14/17 | 1.50 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 9/14/17 | 1.50 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 9/15/17 | 1.40 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 9/15/17 | 1.40 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 9/18/17 | 2.20 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 9/18/17 | 2.20 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 9/19/17 | 2.50 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 9/19/17 | 2.50 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 9/21/17 | 1.90 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 9/21/17 | 1.90 | Assist with the preparation of trial exhibits. |
| Wit (13877) | 9/22/17 | 2.70 | Assist with the preparation of trial exhibits. |
| Alex (14026) | 9/5/17 | 0.40 | Assist with trial preparation. |
| Wit (13877) | 9/5/17 | 0.40 | Assist with trial preparation. |

87. These 43 billing entries total 68.41 hours. It is impossible to know what trial exhibits he might have worked on, whether those exhibits were worked on by other timekeepers, or what he actually did to assist.

88. This last point, of Mr. Chen's penchant to "assist" on tasks, was also evident in the following entries:

| | | | |
|---|---|---|---|
| Wit (13877) | 8/25/16 | 0.80 | Assist Jason S. Cowart with document review. |
| Wit (13877) | 7/10/19 | 4.50 | Assist with cite-checking reply in support of remedies. |
| Wit (13877) | 3/22/19 | 0.50 | Assist with finalizing and filing joint case management statement. |
| Alex (14026) | 11/30/17 | 2.50 | Assist with grouping analysis of CDGs and LOCGs in preparation for post-trial brief. |

| | | | |
|---|---|---|---|
| Wit (13877) | 11/30/17 | 2.50 | Assist with grouping analysis of CDGs and LOCGs in preparation for post-trial brief. |
| Alex (14026) | 12/1/17 | 1.20 | Assist with grouping analysis of CDGs and LOCGs in preparation for post-trial brief. |
| Wit (13877) | 12/1/17 | 1.20 | Assist with grouping analysis of CDGs and LOCGs in preparation for post-trial brief. |
| Alex (14026) | 12/4/17 | 0.60 | Assist with grouping analysis of CDGs and LOCGs in preparation for post-trial brief. |
| Wit (13877) | 12/4/17 | 0.60 | Assist with grouping analysis of CDGs and LOCGs in preparation for post-trial brief. |
| Wit (13877) | 2/27/18 | 1.10 | Assist with preparing and filing response to defendant's objections to trial evidence and motion for leave to file sur-reply. |
| Wit (13877) | 1/31/17 | 0.20 | Assist with research in preparation for status conference. |
| Alex (14026) | 12/10/15 | 0.70 | Assist with the filing of unredacted memorandum of law and exhibits in support of motion to compel. |
| Wit (13877) | 12/10/15 | 0.70 | Assist with the filing of unredacted memorandum of law and exhibits in support of motion to compel. |
| Alex (14026) | 11/29/17 | 2.30 | Assist with the grouping analysis of CDGs and LOCGs in preparation for post-trial brief. |
| Wit (13877) | 11/29/17 | 2.30 | Assist with the grouping analysis of CDGs and LOCGs in preparation for post-trial brief. |
| Alex (14026) | 2/12/18 | 2.60 | Assist with the preparation and filing of post-trial reply brief, consolidated claims chart, and plans summary. |
| Wit (13877) | 2/12/18 | 2.60 | Assist with the preparation and filing of post-trial reply brief, consolidated claims chart, and plans summary. |
| Alex (14026) | 2/14/18 | 0.50 | Assist with the preparation and service of hyperlinked post-trial reply brief, consolidate claims chart, and exhibit. |
| Wit (13877) | 2/14/18 | 0.50 | Assist with the preparation and service of hyperlinked post-trial reply brief, consolidate claims chart, and exhibit. |
| Alex (14026) | 2/10/18 | 3.70 | Assist with the preparation of claims chart for post-trial reply brief. |
| Wit (13877) | 2/10/18 | 3.80 | Assist with the preparation of claims chart for post-trial reply brief. |
| Alex (14026) | 2/11/18 | 2.20 | Assist with the preparation of claims chart for post-trial reply brief. |
| Wit (13877) | 2/11/18 | 2.20 | Assist with the preparation of claims chart for post-trial reply brief. |

| | | | |
|---|---|---|---|
| Alex (14026) | 2/6/18 | 1.10 | Assist with the preparation of claims chart for post-trial reply. |
| Wit (13877) | 2/6/18 | 1.10 | Assist with the preparation of claims chart for post-trial reply. |
| Alex (14026) | 2/7/18 | 2.10 | Assist with the preparation of claims chart for post-trial reply. |
| Wit (13877) | 2/7/18 | 2.10 | Assist with the preparation of claims chart for post-trial reply. |
| Alex (14026) | 9/26/17 | 1.70 | Assist with the preparation of deposition transcripts for trial. |
| Alex (14026) | 10/17/17 | 1.50 | Assist with preparing and filing revised joint trial exhibit list; update guideline group chart pursuant to admitted trial exhibits. |
| Wit (13877) | 10/17/17 | 1.50 | Assist with preparing and filing revised joint trial exhibit list; update guideline group chart pursuant to admitted trial exhibits. |
| Wit (13877) | 9/26/17 | 1.70 | Assist with the preparation of deposition transcripts for trial. |
| Alex (14026) | 9/28/17 | 2.00 | Assist with the preparation of deposition transcripts for trial. |
| Wit (13877) | 9/28/17 | 2.00 | Assist with the preparation of deposition transcripts for trial. |
| Wit (13877) | 5/10/16 | 1.00 | Assist with the preparation of hyperlinks for exhibits regarding briefs in support of motion for class certification. |
| Wit (13877) | 3/25/16 | 4.90 | Assist with reviewing and cite checking brief in support of motion for class certification; assist preparation of exhibits regarding same. |
| Wit (13877) | 3/28/16 | 2.80 | Assist with reviewing and cite checking brief in support of motion for class certification; prepare proposed order for same. |
| Alex (14026) | 12/5/17 | 1.70 | Assist with the preparation of post-trial brief. |
| Wit (13877) | 12/5/17 | 1.70 | Assist with the preparation of post-trial brief. |
| Alex (14026) | 2/8/18 | 0.50 | Assist with the preparation of summary of plans chart for post-trial reply brief. |
| Wit (13877) | 2/8/18 | 0.50 | Assist with the preparation of summary of plans chart for post-trial reply brief. |
| Alex (14026) | 9/27/17 | 3.20 | Assist with the preparation of deposition transcripts for trial; assist with the preparation of deposition designations for trial. |
| Wit (13877) | 9/27/17 | 3.20 | Assist with the preparation of deposition transcripts for trial; assist with the preparation of deposition designations for trial. |

| | | | |
|---|---|---|---|
| Alex (14026) | 12/11/17 | 2.10 | Assist with the review and preparation of claims chart for post-trial submission. |
| Wit (13877) | 12/11/17 | 2.10 | Assist with the review and preparation of claims chart for post-trial submission. |
| Alex (14026) | 12/6/17 | 3.00 | Assist with the review and preparation of claims chart regarding LOCGs for post-trial submission. |
| Wit (13877) | 12/6/17 | 3.00 | Assist with the review and preparation of claims chart regarding LOCGs for post-trial submission. |
| Alex (14026) | 11/14/17 | 1.30 | Assist with the review of CDGs and LOCGs in preparation for post-trial briefing. |
| Wit (13877) | 11/14/17 | 1.30 | Assist with the review of CDGs and LOCGs in preparation for post-trial briefing. |
| Alex (14026) | 11/15/17 | 1.70 | Assist with the review of CDGs and LOCGs in preparation for post-trial briefing. |
| Wit (13877) | 11/15/17 | 1.70 | Assist with the review of CDGs and LOCGs in preparation for post-trial briefing. |
| Alex (14026) | 11/16/17 | 1.50 | Assist with the review of CDGs and LOCGs in preparation for post-trial briefing. |
| Wit (13877) | 11/16/17 | 1.50 | Assist with the review of CDGs and LOCGs in preparation for post-trial briefing. |
| Alex (14026) | 10/18/17 | 0.30 | Assist with the review of trial exhibits regarding benefit plans and denial letters. |
| Wit (13877) | 10/18/17 | 0.30 | Assist with the review of trial exhibits regarding benefit plans and denial letters. |

89. These 54 billing entries total 95.90 hours. These task descriptions fail to provide any meaningful insight into what he did to "assist" in these tasks. For example, he could have made copies of documents to assist in a review. He could have made up binders to "assist" in a project.

90. The categories of billing entries set out in the three tables above total 202.81 hours, or 65 percent of his total time billed to this matter. (202.81/310.11 = 65%.)

91. The last paralegal (or paralegal assistant) Cara London had similar billing patterns. She billed for clerical work:

| | | | |
|---|---|---|---|
| Wit (13877) | 5/9/17 | 1.00 | Calculating number of years guideline grouping applied for. |

| | | | |
|---|---|---|---|
| Wit (13877) | 5/9/17 | 4.35 | Calculating number of years in excel spreadsheet that guideline grouping applied. |
| Wit (13877) | 7/20/17 | 1.17 | Call log index |
| Wit (13877) | 9/18/17 | 7.00 | Checking Bates numbers for court documents. |
| Wit (13877) | 9/19/17 | 4.00 | Checking bates numbers for documents. |
| Wit (13877) | 7/18/17 | 1.25 | Cleaning up class lists |
| Wit (13877) | 7/11/17 | 1.70 | Defendant Excel Spreadsheet |
| Wit (13877) | 8/31/17 | 0.52 | E-mail Name Deps |
| Wit (13877) | 9/6/17 | 4.00 | E-mails of Data for Jason M. Knott. |
| Wit (13877) | 7/6/17 | 2.01 | Excel spreadsheet of incoming calls and speaking with potential clients. |
| Wit (13877) | 7/7/17 | 1.97 | Excel Spreadsheet organizing Bates Numbers for Dep. |
| Wit (13877) | 10/12/17 | 2.43 | Exhibit List |
| Wit (13877) | 8/15/17 | 4.00 | Finding Bates Numbers for plaintiffs. |
| Wit (13877) | 9/26/17 | 4.54 | finding duplicates of exhibits |
| Wit (13877) | 6/28/17 | 4.20 | Handling calls and index. |
| Wit (13877) | 8/28/17 | 2.03 | Index |
| Wit (13877) | 6/27/17 | 6.79 | Index for brief and index for incoming calls in regards to the letter. |
| Wit (13877) | 6/26/17 | 5.30 | Index for brief and index for incoming calls regarding letter. |
| Wit (13877) | 6/16/17 | 5.01 | Index for brief. |
| Wit (13877) | 6/21/17 | 3.58 | Index for brief. |
| Wit (13877) | 6/23/17 | 2.71 | Index for Brief. |
| Wit (13877) | 8/30/17 | 4.77 | Index for exhibits highlighted in depositions. |
| Wit (13877) | 8/24/17 | 0.68 | Index for exhibits. |
| Wit (13877) | 7/27/17 | 5.74 | looking for witnesses |

| | | | |
|---|---|---|---|
| Wit (13877) | 9/11/17 | 5.73 | matching Bates numbers |
| Wit (13877) | 9/12/17 | 4.57 | Matching Bates Numbers |
| Wit (13877) | 9/25/17 | 4.00 | Organized Deposition Transcripts. |
| Wit (13877) | 7/5/17 | 5.00 | Organized incoming calls into excel spreadsheet/ spoke with potential persons who have questions/concerns/or discussions about the class action. |
| Wit (13877) | 8/25/17 | 5.30 | Organized productions within excel. |
| Wit (13877) | 7/19/17 | 3.79 | Organizing Bates Numbers |
| Wit (13877) | 7/18/17 | 3.02 | Organizing excel sheet of callers. |
| Wit (13877) | 11/15/17 | 3.00 | Organizing exhibits. |
| Wit (13877) | 7/12/17 | 3.43 | Organizing incoming calls and exhibit planning |
| Wit (13877) | 7/10/17 | 0.50 | Organizing phone calls into excel from the weekend. |
| Wit (13877) | 8/26/17 | 1.17 | PDF documents. |
| Wit (13877) | 8/29/17 | 8.24 | Plaintiff Deposition organization. |
| Wit (13877) | 8/20/17 | 4.00 | production organization |
| Wit (13877) | 8/31/17 | 3.31 | Recording Plaintiff Names into Excel. |
| Wit (13877) | 9/29/17 | 6.52 | Sorting exhibits |
| Wit (13877) | 8/30/17 | 1.59 | Witness Exhibit List |

92. These 40 billing entries total 143.92 hours.

93. She also billed for vague work, including vague trial preparation:

| | | | |
|---|---|---|---|
| Wit (13877) | 8/21/17 | 1.12 | Alexander Produced |
| Wit (13877) | 8/22/17 | 1.04 | Checking Production for Adam. |
| Wit (13877) | 8/16/17 | 8.42 | DRS Production |
| Wit (13877) | 12/9/17 | 2.01 | Exhibit work for Adam. |

| | | | |
|---|---|---|---|
| Wit (13877) | 9/8/17 | 4.22 | exhibits |
| Wit (13877) | 9/7/17 | 2.00 | Jason M. Knott project, memos of e-mails with case data. |
| Alex (14026) | 1/6/17 | 3.00 | Obtain research for trial. |
| Wit (13877) | 1/19/17 | 0.30 | Obtained evidence for trial. |
| Wit (13877) | 1/19/17 | 1.60 | Obtained evidence for trial. |
| Wit (13877) | 1/23/17 | 3.90 | Obtained evidence for trial. |
| Wit (13877) | 1/24/17 | 2.00 | Obtained evidence for trial. |
| Wit (13877) | 1/26/17 | 1.00 | Obtained evidence for trial. |
| Wit (13877) | 1/18/17 | 2.10 | Obtained evidence for use at trial. |
| Alex (14026) | 1/12/17 | 0.20 | Obtained evidence for use at trial. |
| Alex (14026) | 1/12/17 | 2.01 | Obtained evidence for use at trial. |
| Wit (13877) | 1/17/17 | 2.10 | Obtained evidence for use at trial. |
| Alex (14026) | 1/5/17 | 2.57 | Obtaining evidence for use at trial. |
| Wit (13877) | 8/23/17 | 6.74 | Produced documents, indexes |
| Wit (13877) | 8/20/17 | 0.63 | production |
| Wit (13877) | 8/17/17 | 9.51 | Production in Relativity |
| Wit (13877) | 8/24/17 | 1.84 | Production Work |
| Wit (13877) | 8/18/17 | 8.68 | Putting together productions |
| Wit (13877) | 8/3/17 | 5.00 | Record research in Relativity. |
| Wit (13877) | 8/4/17 | 0.47 | Research for Caroline and relativity. |
| Alex (14026) | 1/11/17 | 2.32 | Research for Trial |
| Wit (13877) | 6/13/17 | 5.72 | Researched and studied cases on Westlaw for Comparative Research. |
| Wit (13877) | 6/14/17 | 4.88 | Researched and studied cases on Westlaw for Comparative Research. |

| | | | |
|---|---|---|---|
| Wit (13877) | 6/19/17 | 1.44 | Researched and studied cases on Westlaw for Comparative Research. |
| Wit (13877) | 6/15/17 | 7.76 | Researched and studied cases on Westlaw for Comparative Research. Index for brief. |
| Wit (13877) | 6/20/17 | 7.29 | Researched and studied cases on Westlaw for Comparative Research. Index for brief. |
| Wit (13877) | 1/25/17 | 4.00 | Researched for trial. |

94. These 31 billing entries total 105.87 hours.

95. Together, these two categories account for 93 percent of her total billed time. (249.79/268.54 = 93%.)

96. All three paralegals billed significant amounts of time to clerical or vague tasks that could not unequivocally be characterized as requiring a paralegal's education, experience, or skill. This is one reason why the requested rates for these timekeepers are excessive.

97. **THE LITIGATION SUPPORT PERSONNEL.** Ms. Reynolds also seeks fees for what she describes as litigation support personnel. These two individuals are Mr. Schmidt and Mr. Nascher. (Reynolds Decl., ¶¶ 72-73.)

98. To the extent that either of these individuals billed for clerical tasks or billed using vague billing entries, their time (or alternatively, the billing rates) should be discounted as should be done for the paralegals.

99. Mr. Schmidt billed for some tasks that were clerical:

| | | | |
|---|---|---|---|
| Wit (13877) | 6/24/15 | 0.30 | Discuss transfer of production to third party hosting tool. |
| Wit (13877) | 7/2/15 | 0.70 | Transfer production material to firm's network for attorney review. Correspond regarding review platform selection. |
| Wit (13877) | 7/7/15 | 2.30 | Export production data from Concordance. Prepare DAT and OPT files for transfer to Modus. Correspond regarding project specifications. |
| Wit (13877) | 7/8/15 | 3.10 | Export production data from Concordance. Prepare DAT and OPT files for transfer to Modus. Correspond regarding project specifications. |
| Wit (13877) | 8/4/15 | 0.20 | Coordinate load of Wit scanned material into Relativity. |

| | | | |
|---|---|---|---|
| Wit (13877) | 8/5/15 | 1.00 | Coordinate production of WIT-PTFS002. |
| Wit (13877) | 8/12/15 | 1.20 | Download WIT production, extract to network, and transmit to vendor for database load. |
| Wit (13877) | 9/3/15 | 0.90 | Revise load files per opposing counsel's request. |
| Wit (13877) | 1/30/16 | 0.70 | Transfer UBHWIT 021.zip to Modus. Correspond regarding processing and load into Relativity. |
| Wit (13877) | 12/16/16 | 1.10 | Download UBHWIT 034 and UBHWIT 035 from FTP. Post to vendor's FTP site and correspond regarding load into Relativity. |
| Wit (13877) | 2/1/17 | 1.00 | Transfer production documents to vendor for load into Relativity. |
| Wit (13877) | 4/24/17 | 0.40 | Download UBHWIT055, extract, post to Secure Share, and transmit to vendor for Relativity review. |
| Wit (13877) | 4/25/17 | 0.70 | Download UBHWIT054, extract, post to Secure Share, and transmit to vendor for Relativity review. Prepare thumb drive of Generally Accepted Standards for blowback by Office Services. |
| Wit (13877) | 9/12/17 | 2.60 | Trial preparation. Order trial equipment. Correspond with Intercontinental IT staff. |
| Wit (13877) | 9/14/17 | 3.70 | Finalize drive containing deposition exhibit videos and transcripts. Correspond regarding trial exhibits. Place equipment order. |
| Wit (13877) | 9/15/17 | 1.30 | Correspond with hotel staff regarding war room setup. |
| Wit (13877) | 9/18/17 | 4.70 | Coordinate print of trial exhibits. Correspond with case team and vendor regarding blow back. Archive trial exhibits and transfer to Innovative. |
| Wit (13877) | 9/22/17 | 5.20 | Trial preparation. Assist with Exhibit creations. Correspond with hotel staff. Coordinate courier for exhibits. |
| Wit (13877) | 9/27/17 | 6.50 | Trial preparation. Order supplies. Configure network and printer. Correspond regarding war room setup. |
| Wit (13877) | 9/28/17 | 6.00 | Trial preparation. Pack trial equipment. Test printers and scanners on war room network. Correspond with Intercontinental IT staff. |
| Wit (13877) | 10/2/17 | 7.00 | Pack trial equipment. Correspond with legal media. Prepare loaner laptops. Test trial equipment. |

| | | | |
|---|---|---|---|
| Wit (13877) | 10/3/17 | 6.30 | Trial preparation. Pack remaining equipment and correspond regarding network setup. Correspond regarding IT setup. Post Allchin deposition videos to Secure Share. |
| Wit (13877) | 11/7/17 | 3.80 | Unpack war room supplies and trial exhibits. |
| Wit (13877) | 12/14/17 | 0.40 | Renumber trial exhibits for transmittal to court. Correspond regarding same. |
| Wit (13877) | 12/15/17 | 0.40 | Modify trial exhibit filenames. Overwrite versions on network. Correspond regarding same. |

100. These 25 entries totaled 61.50 hours. The auditor notes that in the block-billed entries, not all of the time was necessarily clerical. However, due to the block billing, it is impossible to determine how much of the time in each entry was clerical versus non-clerical. The burden of producing adequate time records rests on the party seeking their fees. To the extent that they have failed to do so, they should suffer the negative consequences and all of the time in each of these entries disallowed.

101. In contrast, all of Mr. Nascher's time was clerical – mostly consisting of uploading or downloading documents:

| | | | |
|---|---|---|---|
| Wit (13877) | 1/23/15 | 1.00 | Coordinate with vendor to pick up and scan boxes of papers for concordance load files. |
| Wit (13877) | 1/28/15 | 1.50 | Process and load electronic data received from Andrew for attorney review in a concordance database. Create a concordance database. |
| Wit (13877) | 3/11/15 | 1.50 | Create a new database and load production documents received from Crowell and Morning. |
| Wit (13877) | 3/13/15 | 3.00 | Generate a concordance production from the review database. |
| Wit (13877) | 3/18/15 | 1.00 | Load production documents into new concordance database created. |
| Wit (13877) | 3/25/15 | 1.00 | Coordinate with LexisNexis for a FYI license server and create a login for the user. |
| Wit (13877) | 7/13/15 | 0.50 | Coordinate with vendor to upload documents and give instructions for processing and scanning documents. |
| Wit (13877) | 8/19/15 | 0.50 | Pull data from FTP site then upload to our server and Modus FTP site. |

| | | | |
|---|---|---|---|
| Wit (13877) | 8/26/15 | 0.50 | Download ZIP files from FTP site to our network and also Modus FTP site as well. |
| Wit (13877) | 8/27/15 | 0.50 | Download ZIP files from FTP site to our network and also Modus FTP site as well. |
| Wit (13877) | 8/31/15 | 0.50 | Download data from FTP site to our network and Modus FTP site to be loaded into Relativity. |
| Wit (13877) | 9/4/15 | 1.50 | Overlay the correct metadata for the first production of WIT and send the database to Modus. |
| Wit (13877) | 11/9/15 | 0.50 | Send documents to Modus FTP site to process and load into Relativity. |
| Wit (13877) | 11/30/15 | 0.50 | Download production set from Modus FTP site to our network. |
| Wit (13877) | 2/2/16 | 1.00 | Download data from FTP to transfer to Modus to process documents. |
| Wit (13877) | 2/3/16 | 1.50 | Generate 6 copies of CDs and create CD labels. |
| Wit (13877) | 3/1/16 | 0.50 | Download data production from FTP site and transfer to Modus to process and load into Relativity |
| Wit (13877) | 3/5/16 | 1.50 | Come in the office to download and transfer data to Modus to process and load into Relativity |
| Wit (13877) | 3/8/16 | 0.50 | Upload a production set data to a Secure Share. |
| Wit (13877) | 3/13/16 | 0.50 | Download zip files from FTP site. Then coordinate with vendor Modus to upload the zip files to process. |
| Wit (13877) | 3/14/16 | 1.00 | Uploaded depositions videos and exhibits to the network. |
| Wit (13877) | 3/21/16 | 0.50 | Download zip files from FTP site to our network. Then coordinate with Modus to process and load into database. |
| Wit (13877) | 3/22/16 | 0.50 | Download zip files from FTP site to our network. Then coordinate with Modus to process and load into database |
| Wit (13877) | 3/24/16 | 0.50 | Download production from Modus FTP then upload to our network. |
| Wit (13877) | 4/13/16 | 2.00 | Upload deposition videos, exhibits to the network on L drive. |
| Wit (13877) | 8/19/16 | 1.00 | Download the zip files from a FTP site then upload the zip files to Vendor (Modus) to process and load into Relativity. |
| Wit (13877) | 9/16/16 | 1.00 | Create a new LIVENOTE database and add multiple users for the case. |

| | | | |
|---|---|---|---|
| Wit (13877) | 11/17/16 | 0.50 | Upload data to Modus FTP site to import the data into Relativity database. |
| Wit (13877) | 3/13/17 | 0.50 | Download data from vendor ftp to our network drive. |
| Wit (13877) | 4/4/17 | 0.50 | Download data from FTP site to our network. |
| Wit (13877) | 4/7/17 | 0.50 | Merge PDFs into ONE PDF. |
| Wit (13877) | 4/26/17 | 1.50 | Create a searchable PDFs. |
| Wit (13877) | 5/22/17 | 4.50 | Upload all deposition videos on our network and load them into LiveNote. |
| Wit (13877) | 5/23/17 | 1.00 | Import transcripts and videos into LiveNote. |
| Wit (13877) | 5/24/17 | 1.00 | Upload depositions videos to network and import transcripts and videos into LiveNote. |
| Wit (13877) | 6/27/17 | 2.50 | Import exhibits and videos into LiveNote. |
| Wit (13877) | 6/28/17 | 3.00 | Import exhibits and videos into LiveNote. |
| Wit (13877) | 8/25/17 | 1.00 | Generate a concordance production which includes images, text and concordance load files. |

102. Mr. Schmidt also utilized vague billing entries, some of which related to trial preparation or attendance. Those entries are as follows:

| | | | |
|---|---|---|---|
| Wit (13877) | 6/30/15 | 1.20 | Correspond regarding external review platform. |
| Wit (13877) | 7/1/15 | 1.40 | Correspond regarding review platform selection. |
| Wit (13877) | 7/25/17 | 1.80 | Correspond regarding database setup. Call regarding same. |
| Wit (13877) | 7/26/17 | 1.20 | Correspond regarding database setup with Xact. |
| Wit (13877) | 7/31/17 | 1.00 | Correspond regarding database design. Correspond regarding database access. |
| Wit (13877) | 8/1/17 | 3.70 | Correspond regarding database design and permissions. Transfer UBHWIT 061 and UBHWIT 062 to Xact. Correspond regarding load of production volumes. |
| Wit (13877) | 8/9/17 | 1.30 | Trial preparation. |
| Wit (13877) | 8/14/17 | 1.60 | Correspond regarding review of saved searches. |

| | | | |
|---|---|---|---|
| Wit (13877) | 8/16/17 | 0.40 | Correspond regarding Relativity database access. |
| Wit (13877) | 8/22/17 | 1.50 | Correspond regarding equipment rental for trial. |
| Wit (13877) | 8/24/17 | 2.10 | Trial preparation. Correspond regarding hotel setup. |
| Wit (13877) | 8/25/17 | 3.70 | Correspond regarding trial IT needs. Correspond with Palace hotel IT staff regarding quote for internet connection. |
| Wit (13877) | 8/28/17 | 2.50 | Correspond with Palace hotel IT staff regarding ping and trace route tests. |
| Wit (13877) | 8/29/17 | 4.60 | Trial preparation. Coordinate IT needs and equipment rental. |
| Wit (13877) | 8/30/17 | 3.70 | Trial preparation. |
| Wit (13877) | 9/5/17 | 2.80 | Trial preparation. |
| Wit (13877) | 9/6/17 | 1.60 | Trial preparation. Equipment order and correspond regarding trial exhibits. |
| Wit (13877) | 9/7/17 | 3.50 | Trial preparation. |
| Wit (13877) | 9/8/17 | 4.50 | Trial preparation. Correspond regarding trial exhibit labels and formats. Call discussing same. Export deposition videos and transcripts from Livenote to external drive for transmittal to Legal Media. |
| Wit (13877) | 9/13/17 | 3.00 | Trial preparation. |
| Wit (13877) | 9/20/17 | 3.50 | Trial preparation. |
| Wit (13877) | 9/21/17 | 3.90 | Trial preparation. Coordinate IT setup. Assist with exhibit creation. |
| Wit (13877) | 10/4/17 | 7.50 | Trial preparation. |
| Wit (13877) | 10/5/17 | 9.50 | War room setup. |
| Wit (13877) | 10/6/17 | 12.00 | War room setup. |
| Wit (13877) | 10/7/17 | 8.00 | War room setup, trial preparation. |
| Wit (13877) | 10/8/17 | 8.00 | Trial support. |
| Wit (13877) | 10/9/17 | 11.00 | Trial support. |
| Wit (13877) | 10/10/17 | 11.00 | Trial support. |

| | | | |
|---|---|---|---|
| Wit (13877) | 10/11/17 | 12.50 | Trial support. OCR Trial exhibits for attorney review. |
| Wit (13877) | 10/12/17 | 12.00 | Trial support. |
| Wit (13877) | 10/13/17 | 10.00 | Trial support. |
| Wit (13877) | 10/14/17 | 8.00 | Trial support. |
| Wit (13877) | 10/15/17 | 14.00 | Trial support. |
| Wit (13877) | 10/16/17 | 20.00 | Trial support. |
| Wit (13877) | 10/17/17 | 17.00 | Trial support. |
| Wit (13877) | 10/18/17 | 15.00 | Trial support. |
| Wit (13877) | 10/19/17 | 7.00 | Trial support. |
| Wit (13877) | 10/20/17 | 6.00 | Trial support. |
| Wit (13877) | 10/21/17 | 11.00 | Trial support. |
| Wit (13877) | 10/22/17 | 12.50 | Trial support. |
| Wit (13877) | 10/23/17 | 17.50 | Trial support. |
| Wit (13877) | 10/24/17 | 15.50 | Trial support. |
| Wit (13877) | 10/25/17 | 16.50 | Trial support. |
| Wit (13877) | 10/26/17 | 9.00 | Trial support. |
| Wit (13877) | 10/27/17 | 4.00 | Trial support. |
| Wit (13877) | 10/28/17 | 4.20 | Trial support. Coordinate transporting equipment and documents back to DC office. Coordinate final document shred. |
| Wit (13877) | 10/29/17 | 7.00 | Trial support. Coordinate transporting equipment and documents back to DC office. Shipping logistics discussion. |
| Wit (13877) | 10/30/17 | 12.00 | Trial support. |
| Wit (13877) | 10/31/17 | 7.00 | Trial support. |
| Wit (13877) | 11/1/17 | 12.00 | Trial support. |

| | | | |
|---|---|---|---|
| Wit (13877) | 11/2/17 | 11.00 | Trial support. |
| Wit (13877) | 11/3/17 | 12.00 | Trial support. |
| Wit (13877) | 11/4/17 | 7.00 | Trial support. |
| Wit (13877) | 11/6/17 | 13.00 | Trial support/travel. |
| Wit (13877) | 11/10/17 | 1.80 | Correspond regarding invoices for trial equipment. Organize trial equipment. |
| Wit (13877) | 3/16/18 | 2.00 | Correspond regarding database archival. |
| Wit (13877) | 3/1/19 | 1.00 | Conference call. |
| Wit (13877) | 3/14/19 | 0.50 | Correspond regarding Secure Share transfer of client documents. |
| Wit (13877) | 4/8/20 | 2.70 | Correspond regarding programmatic redaction of Fee petition Excel worksheet. Test programmatic redaction in Excel and Word. |
| Wit (13877) | 8/5/20 | 0.60 | Correspond regarding bio for fee petition. |

103. These 61 entries total 422.80 hours.

104. In the entries referencing correspondence, Mr. Schmidt usually failed to identify the person with whom he was corresponding. Thus, we cannot tell if he was communicating with someone inside the firm, with co-counsel, opposing counsel, a vendor, or someone else.

105. With his entries for "trial preparation" or "trial support", it cannot be determined what exactly he did. Even on those days where the trial was ongoing, the trial did not go for 20.0 hours, 17.5 hours, 17.0 hours, or any of the other exceedingly long days he billed. Even if he was at the trial table (or behind or beside it) during trial, the time outside of the courtroom has not been adequately described or accounted for.

### C. Not Usual and Customary Rates That Are Paid by Clients or Awarded by Courts.

106. There is no indication in the moving papers that the rates being sought here for the paralegals and litigation support are their usual and customary rates and that their clients routinely pay these rates or that courts have awarded them these rates.

107. We scoured PACER and several other legal databases and were unable to find any cases in which the Zuckerman paralegals and legal support personnel were ever awarded the rates they are seeking in this matter.

108. "The established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "[A] reasonable hourly rate ... is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum*, 465 U.S. at 895-96 n. 11, 104 S.Ct. 1541).

**D. Insufficient Documentation of Reasonableness of Requested Rates.**

109. Ms. Reynolds fails to provide evidence that the rates she requests for the paralegals and litigation support personnel is reasonable.

110. The supporting declaration of Richard M. Pearl (ECF 507-12) is also insufficient here. He states:

> I also have reviewed counsel's charges for paralegals and "litigation support," i.e., non-attorney professionals with specialized, non-clerical skills, and have considered the roles those professionals played in this case, as described in Plaintiffs' counsel's declarations. In my experience, it is common practice for Bay Area law firms to bill clients for such services at prevailing market rates. The rates requested by Plaintiffs' counsel here for that work are clearly in line with the rates charged in this legal community. *See, e.g.,* Exhibit H (rates charged for paraprofessionals range between $250 and $435 per hour); *Trustees of the Constr. Indus. & Laborers Health & Welfare Trust v Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006).

Pearl Decl., ¶ 24.

111. Mr. Pearl's declaration presents a list of hourly rates from various inapposite cases and for firms of varying sizes, mostly large firms, of differing legal specialties, and in various locations. This is typical of Mr. Pearl's practice. He submits a boilerplate declaration containing years of data from law firms of all sizes from all over California handling all types of cases. This type of information is not helpful in determining a reasonable rate.

112. His Exhibit B is identical with Ms. Reynold's exhibit listing the timekeepers who billed to these matters. His Exhibit C purports to be a list of rates approved by Bay Area courts

without any explanation as to the types of cases, the nature of any particular case, or any other relevant detail. Exhibit D is an order from a Bankruptcy case, which is a completely different type of case than this case. Exhibit E is a list of Bankruptcy court hourly rates from across the country, again inapposite. Exhibit F is a 2015 survey of rates, without any information as to the types of cases, sizes of the law firms, or any other relevant information. Exhibit G is a 2014 survey of nationwide law firms, again without reference to the size of the firm, the nature of the cases, or other information. Exhibit H is an article about billing rates in Bankruptcy cases. If this were a bankruptcy case, several of the exhibits that Mr. Pearl submits may be relevant, However, this is not a bankruptcy case and Mr. Pearl has not provided any basis or rationale to compare rates awarded in Bankruptcy cases with those sought here.

113. In *Gauchat-Hargis v. Forest River, Inc.* (E.D. Cal.) Case No. No. 2:11-cv-02737-KJM-EFB, the court found Mr. Pearl's declaration to be irrelevant because the information he supplied related to rates was unrelated to the legal market where the matter was pending. The Court stated:

> In support of the request, plaintiff provides her own declaration (ECF 49), declarations of her attorneys (ECF 50, 56, 57), and a declaration of Richard Pearl, who provides his opinion as to the reasonableness of the rates requested as a specialist in the area (ECF 51). Almost all of this evidence is irrelevant to the court's analysis of the reasonableness of the rates requested, because the declarations seek to justify the rates as reasonable for the San Francisco legal market. (See, e.g., Declaration of Richard Pearl (ECF 51) (justifying plaintiff's counsel's rates as compared to attorneys working at large law firms in San Francisco, Los Angeles and San Diego, without once in its seventy-nine pages of evidence discussing rates charged in Sacramento).) As discussed above, the appropriate venue for comparison is the Eastern District of California in Sacramento, not the Northern District of California in San Francisco. Plaintiff has not established that this action required unique expertise that could not [p. 16] be obtained locally. Plaintiff also fails to direct the court to a single case in the Eastern District where the rates claimed by her counsel, or similar rates by other law firms, have been upheld. The court therefore finds that plaintiff has failed to meet her burden of proving the rates requested are reasonable for litigation in the Sacramento federal court, and conducts its own analysis of a reasonable rate.

*Gauchat-Hargis v. Forest River, Inc.* (E.D. Cal. September 6, 2013) Order, pp. 15-16, footnote omitted. A true and correct copy of this order is attached as **Exhibit 9.** See also *Antoninetti v. Chipotle Mexican Grill, Inc.* (S.D. Cal. July 17, 2012) Order, p. 10 (attached as **Exhibit 10.**) wherein the Court disregarded Mr. Pearl's declaration because it did not introduce evidence supporting rates in the Southern District of California.

114. The court in *Payne v. Bay Area Rapid Transit District* (2009) 2009 U.S. Dist. LEXIS 53455 rejected the Pearl declaration filed in that case: "Mr. Pearl's declaration is of limited utility with respect to the appropriate way for work by Mr. Meltzer. The figures provided by Mr. Pearl set forth rates charged by attorneys for complex litigation not for relatively straightforward personal injury cases. Additionally, Mr. Pearl lists a variety of cases without describing the subject matter of the cases or qualifications of the attorneys. Finally, Mr. Pearl's list of rates charged by specifically identified law firms is not relevant here because he only lists large firms or high-profile boutique practices."

115. The auditor's opinion is that Mr. Pearl's declaration in this case is also irrelevant because the cases, venues, law firm sizes, and areas of law presented therein are for the most part not at all similar to, related to, or informative as to what the appropriate rates should be here for paralegals and litigation support.

### E. Zuckerman's Failure to Substantiate Their Rates

116. The result of Plaintiffs' Attorneys' insufficient evidence of paralegal and litigation support rates and lack of supporting declarations is that "[Plaintiffs] have provided the court with no credible source to determine if the hourly rates they seek are reasonable. Reasonable hourly rates are calculated by reference to 'prevailing market rates in the relevant community,' with a special emphasis on fees charged by lawyers of 'comparable skill, experience, and reputation.' *Davis v. City of San Francisco, 976 F.2d 1536, 1546 (9th Cir. 1992).*" *Jacobs v. California State Automobile Association Inter-Insurance Bureau* (N.D. Cal. 2009) 2009 U.S. Dist. LEXIS 101586, *8-9. A true and correct copy of the *Jacobs* opinion is attached hereto as **Exhibit 11** and incorporated herein by this reference.

### F. Recommended Paralegal and Litigation Support Rates

117. Regardless of the title that may be appended to an individual, one factor that must be considered is the actual work that that individual performs. Someone may be a partner, but if that partner bills to copy documents or arrange for a court reporter, that work should not be billed at partner rates, if at all.

118. As shown above, the paralegals have not been shown to meet California's requirements for paralegals, nor any nationwide criteria[5]. Furthermore, some to most of the time billed by the paralegals and litigation support personnel was clerical and/or vague. The former tasks were those that a secretary or administrative assistant could perform. The latter tasks were insufficiently described to allow the auditor, the opposing party who is being asked to pay for the fees, or the court to understand what work was done. A significant portion of the hours billed by these timekeepers could be disallowed on this basis. An alternative approach would be to reduce the hourly rates for these timekeepers. The auditor recommends a hybrid approach of disallowing the identified clerical time and adjusting the billing rate for the remaining billing entries.

119. The Real Rate Report provides billing data for attorneys and, in certain contexts, paralegals broken down into various geographic areas, by years of experience, and by the area of law. The 2018 Real Rate Report identifies the following rates for paralegals:

| First Quartile | Median | Third Quartile |
|---|---|---|
| 125 | 193 | 268 |

2018 Real Rate Report, p. 8. A true and correct copy of this Report is attached as **Exhibit 12**.

120. In *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) the court found that billing rates ranging from $80 to $490 for paralegals were reasonable "given the complexities of this case and the extraordinary result achieved for the Class.") This is a very wide range. The average of the extremes here is $285. ((80 + 490)/2 = 285.)

121. In *In re Magsafe Apple Power Adapter Litig.*, 2015 WL 428105, at *11 (citing *Vizcaino v. Microsoft*, 290 F.3d 1043, 1051) the court opined that in the Bay Area, reasonable hourly rates for for paralegals and litigation support staff range from $150 to $240." The average of the extremes here is $195. ((150 + 240)/2 = 195.)

122. Given the clerical and vague billing and lack of paralegal certification, the auditor recommends the paralegals be compensated at no more than $250 per hour. (See *Der-Hacopian*

---

[5] See, e.g., <https://www.nala.org/certification/certified-paralegal-cp-program>

*v. Darktrace, Inc.*, Case No. 18-cv-06726-HSG (N.D. Cal. Dec. 10, 2020), *12 ("With respect to hourly rates, the rates requested are between $145 and $225 for paralegal time ….”). This is very generous for Ms. London, somewhat generous for Mr. Chen, and appropriate for Ms. Duignan.

123. The clerical entries billed by the paralegals should be disallowed entirely and the remaining paralegal time compensated at $250 per hour. Adjustment for vague billing entries is addressed elsewhere.

124. A proportionate adjustment should be made to the rates for the litigation support timekeepers. The auditor recommends that the litigation support personnel be compensated at no more than $150 per hour.

125. The clerical entries billed by the litigation support timekeepers should be disallowed entirely and the remaining litigation support time compensated at $150 per hour. Again, adjustment for vague billing entries is addressed elsewhere.

**RECOMMENDED DISALLOWANCES**

**Zuckerman Paralegal Rate and Hours:**

| | Total Hours | Claimed Fees | Clerical Hours | Net Hours | Rate | Net Fees |
|---|---|---|---|---|---|---|
| **Duignan** | 2352.45 | $775,635.75 | 252.50 | 2099.95 | $250 | **$524,987.50** |
| **Chen** | 310.11 | $102,482.30 | 38.50 | 271.61 | $250 | **$67,902.50** |
| **London** | 268.54 | $80,562.00 | 143.92 | 124.62 | $250 | **$31,155.00** |
| **TOTALS** | | $958,680.05 | | | | **$624,045.00** |

**Paralegal Adjustment:**

| | |
|---|---|
| **Claimed** | **$958,680.05** |
| **Net** | **– $624,045.00** |
| **Adjustment** | **$334,635.05** |

**Zuckerman Litigation Support Rate and Hours:**

| | Total Hours | Claimed Fees | Clerical Hours | Net Hours | Rate | Net Fees |
|---|---|---|---|---|---|---|
| **Schmidt** | 561.30 | $177,291.50 | 61.50 | 499.80 | $150 | **$74,970.00** |
| **Nascher** | 42.50 | $9612.50 | 42.50 | 0.00 | $150 | **$0.00** |
| **TOTALS** | | $186,904.00 | | | | **$74,970.00** |

**Litigation Support Adjustment:**

| | |
|---|---|
| **Claimed** | **$186,904.00** |
| **Net** | **– $74,970.00** |
| **Adjustment** | **$111,934.00** |

**Zuckerman Net Fees**

| | |
|---|---|
| **Claimed** | **$15,213,075.35** |
| **Paralegal Adjustment** | – $334,635.05 |
| **Net Fees** | **$14,878,440.30** |
| **Lit Support Adjustment** | – $111,934.00 |
| **Net Fees** | **$14,766,506.30** |

**Bendat and Maul**

126. The rates sought by attorneys Mr. Bendat and Mr. Maul are, in my opinion, excessive. Mr. Bendat is seeking $900 per hour (Bendat Decl., ¶ 20). Mr. Maul is seeking $675 per hour. (Maul Decl.¶ 11.)

127. Mr. Bendat does not provide sufficient justification for the rate he is seeking. He is a 1998 admittee to the California Bar. Although he states that $900 is his current rate, in three recent cases, all cited by him, he sought, and was awarded, fees at $750 per hour in unopposed fee motions. (Bendat Decl., ¶ 20.)

128. In *Weil v. Cigna Health & Life Ins. Co.*, 2:15-cv-07074-16 MWF-JPR (C.D. Cal. Aug. 29, 2017), the motion was apparently unopposed and the Court did not indicate that it had performed any analysis of the rates of any of the billers. It simply stated:

> 17. Plaintiff's Motion for Attorneys' Fees and Expenses and an Incentive Award (Dkt. No. 78) is granted; the Court awards Class Counsel attorneys' fees in the amount of $907,500 and payment of expenses in the amount of $9,370.47. Consistent with the Settlement Agreement,

> the Court approves payment of the awarded attorneys' fees and expenses immediately upon payment of the Settlement Amount.

A true and correct copy of the order is attached as **Exhibit13**.

129. In *Weil* Mr. Bendat stated that his hourly rate was $750. (*See* Bendat Declaration in *Weil*, ¶ 7.) A true and correct copy of this declaration is attached as **Exhibit 14**.

130. In *Craft v. Health Care Serv. Corp*., 1:14-cv-05853-VMK (N.D. Ill. Feb. 26, 2018), the motion was unopposed and the Court did not indicate that it had performed any analysis of the rates of any of the billers. It simply approved the fee motion without indicating any detailed analysis of the fee application.

131. In *Craft* Mr. Bendat stated that his hourly rate was $750. (*See* Bendat Declaration in *Craft*, ¶ 7.) A true and correct copy of this declaration is attached as **Exhibit 15**.

132. In *Doe v. Health Care Serv. Corp*., No. 1:16-cv-04571-VMK (N.D. Ill. Oct. 19, 2018), the motion was unopposed and the Court issued another order similar to the ones that had been issued in *Weil* and *Craft*.

133. In *Doe* Mr. Bendat stated that his hourly rate was $750. (*See* Bendat Declaration in *Doe*, ¶ 7.) A true and correct copy of this declaration is attached as **Exhibit 16**.

134. In *Des Roches v. California Physicians' Service*, Case No 5:16-cv-2848 (LHK) (N.D. Cal. July 5, 2018), Mr. Bendat also stated that his hourly rate was $750. (*See* Bendat Declaration in *Des Roches*, ¶ 17.) A true and correct copy of this declaration is attached as **Exhibit 17**.

135. In my review of the billing records, the case documents, and transcripts, and having discussed the matter with defense counsel, Mr. Bendat appeared to have performed average work in this matter, regardless of his years of experience or credentials.

136. I recently provided a declaration in *Zuegel v. Mountain View Police Department*, No. 5:17-cv-03249 BLF (N.D. Cal.). The lead counsel in that case, Violet Elizabeth Grayson is a 1986 admittee to the California bar. Based on my review of the file, I recommended an hourly rate of no more than $525 for her. That motion is still pending.

137. Based on the above, it is my opinion that Mr. Bendat should be compensated at no more than $700 per hour in this matter.

138. The hourly rate sought by Mr. Maul, $675, is, in my opinion, similarly excessive. (Maul Decl., ¶ 11.)

139. Mr. Maul is a 2003 law school graduate. He was admitted to the New York Bar in 2005 and to the California Bar in 2017.

140. He cites to two cases in which he was awarded $600 per hour. (*Pa. Chiropractic Ass'n* and *Demaria*, Maul Decl., ¶ 11.a., b.) In the last case he cites, *Integrated Orthopedics*, he states in his declaration that his rate is $675 per hour. (Maul Declaration in *Integrated Orthopedics*, ECF 424-2 at page 36 of 37, ¶ 7.) A true and correct copy of this document is attached as **Exhibit 18.** However, Mr. Maul had apparently been an associate at Pomerantz LLC, former co-lead counsel in the case through 2013. (Gross Declaration in *Integrated Orthopedics*, ECF 424-2 at page 19 of 37, ¶ 1.) Although his firm's work on the case ended in 2013, on January 13, 2021 Mr. Gross requested fees at 2020 rates. (Gross Declaration in *Integrated Orthopedics*, ECF 424-2 at page 24 of 37, ¶ 5.) Mr. Maul, listed as an associate, was being billed at $600 per hour. (*Id.*)

141. In my review of the billing records, the case documents, and transcripts, and having discussed the matter with defense counsel, Mr. Maul appeared to have primarily served as local counsel this matter. He billed to review and analyze documents, performed document review, and took certain depositions. However, based on all of the above, it is my opinion that Mr. Maul should be compensated at no more than $600 per hour in this matter.

**RECOMMENDED DISALLOWANCES**

**Bendat and Maul Rates**

| | **Total Hours** | **Recommended Rate** | **Net Fees** |
|---|---|---|---|
| **Bendat** | 1330.80 | $700 | **$931,560.00** |
| **Maul** | 263.30 | $600 | **$157,980.00** |
| **TOTAL** | | | **$1,089,540.00** |

## II. Round Number Billing

142. The March 2016 Los Angeles County Bar Association Arbitration Advisory on bill padding states, in relevant part, at pages 8-9: "If the bills show time entries in whole numbers, especially large time entries such as 8.0, 9.0 or 10.0, these are probably estimates rather than actual time spent and should be scrutinized, [except where the event involved trial, mediation, day-long deposition, or other inherently extended activity]." The State Bar of California Mandatory Fee Arbitration Advisory No. 2003-01, "Detecting Attorney Bill Padding," January 29, 2003, at page 6 (attached as **Exhibit 19**), likewise states that such entries "are probably estimates rather than actual time spent and should be investigated."

143. Zuckerman billed numerous large time entries ending in whole numbers. Attached as **Exhibit 20** are the 1,329 billing entries reflecting round number billing of 1 hours or more totaling 3,984.00 hours and $2,230,830.00 in fees at adjusted paralegal/litigation support hourly rates. While I do not recommend a fee reduction for these entries, I point them out to the Court as an example of billing irregularities.

## III. Billing More than 10 Hours Per Day

144. Timekeepers billing more than 10 hours a day, when they are not traveling, not in court and not at a deposition, should be suspect. 387 times Zuckerman timekeepers billed more than ten hours in a single day. These entries total 4,921.00 hours and $3,095,506.35 in fees. Attached as **Exhibit 21** is a spreadsheet listing these entries. For example, Zuckerman timekeepers billed 12 or more hours per day on 213 occasions including four days of billing 20 or more hours:

| | | | |
|---|---|---|---|
| Alex (14026) | 4/20/17 | Caroline E. Reynolds | 10.20 |
| Wit (13877) | 4/20/17 | Caroline E. Reynolds | 10.30 |

| | | | |
|---|---|---|---|
| Alex (14026) | 5/5/17 | Caroline E. Reynolds | 10.40 |
| Wit (13877) | 5/5/17 | Caroline E. Reynolds | 10.50 |

| | | | |
|---|---|---|---|
| Wit (13877) | 10/16/17 | Lori V. Duignan | 10.10 |
| Alex (14026) | 10/16/17 | Lori V. Duignan | 10.00 |

| | | | |
|---|---|---|---|
| Wit (13877) | 10/16/17 | Patrick Schmidt | 20.00 |

145. Based on my experience as an attorney, as a client who supervised attorneys, and as a legal fee expert it has been my experience that in order to bill 10 hours a day in the office an attorney must spend at least an additional two or three hours in the office in order to account for bathroom breaks, personal business etc. In the auditor's experience, the longer the billed day, the greater the inefficiencies are due to fatigue.

146. In the U.S. District Court for the District of Colorado, the Court in *Strachan v. Pandaw Cruises India Pvt, Ltd* (D. Colo 2013) No. 10-cv- 02593 (affirmed on appeal April 14, 2014, No. 13-1482), questioned an attorney's billing entry for 20.2 hours, noting that "[g]iven the time needed to eat, sleep and generally take care of oneself, the Court finds it impossible to believe that this entry is accurate."

147. The courts have applied percentage reductions where the records reveal a pattern of billing for long days, considered evidence of lack of ethical "billing judgment." *Chrapliwy v. Uniroyal,* 583 F. Supp. 40, 49-50 (1983). A court should question reported time significantly in excess of the norm, which is six to seven billable hours per day for a five-day week., i.e., 30 to 35 hours a week. *Ramos v. Lamm,* 713 F 2d 546, 553. "A day with 10 billable hours, while extraordinary, will occasionally occur. But 17 days where billable hours equaled or exceeded 12 hours is not justifiable." *Chrapliwy,* 583 F. Supp. At 50. In *Chrapliwy,* the court reduced the overall hours of an attorney who billed long days by 10%.

148. In an exercise of caution, I do not recommend any disallowance in this category, but merely point out these excessive days to the Court.

**IV. Block Billing**

149. "Block billing" is the lumping together of daily time entries consisting of two or more task descriptions, or the grouping of different tasks within a single block of time on a time record. Block billing hinders the reader in discerning the amount of time actually spent on individual tasks and opens the door to both understatement and overstatement of time and fees. As discussed below state and federal courts have long disapproved of block billing and disallowed fees where this practice exists.

150. In block billing, the different task descriptions are usually separated by semicolons or some other punctuation. In this instance, most of the timekeepers used semicolons. Therefore, to quantify the extent of block billing in the billing records, I searched for this punctuation mark in each and every one of the billing entries, removed the billing entries that contained more than one task but also contained discrete time entries for each task, and then counted the individual task items in the remaining block-billed entries.

| Tasks/Entry | Hours | % of Total Hours | Fees |
|---|---|---|---|
| **1** | 19,280.27 | 73.0% | $10,729,268.75 |
| **2** | 2,414.55 | 9.1% | $1,503,382.20 |
| **3** | 2,397.46 | 9.1% | $1,563,187.75 |
| **4** | 1,272.37 | 4.8% | $806,666.90 |
| **5** | 615.35 | 2.3% | $382,694.25 |
| **6** | 202.30 | 0.8% | $119,790.50 |
| **7** | 106.50 | 0.4% | $56,858.50 |
| **8** | 74.90 | 0.3% | $30,450.00 |
| **9** | 37.40 | 0.1% | $13,942.00 |
| **10** | 21.40 | 0.1% | $6,834.50 |
| **Totals** | 26,422.50 | | $15,213,075.35 |

151. 73 percent of the billing entries were single-task billed (or, if they contained multiple tasks, identified the length of time billed for each discrete task). The remaining 27 percent of the billing entries were block billed.

152. It is impossible to tell how long each of the individual tasks took in a block billed entry. Therefore, it is also impossible to determine whether the amount of time billed for each of

the tasks was reasonable. It is for these reasons that block billing has been criticized by a number of courts: because it seriously hampers review of billing data to determine the reasonableness of fees for services performed. In this case block billing also prevented us from determining how much work was spent on unproductive tasks given the limited success of the plaintiff.

153. In a December 2005 decision by the District Court in the Northern District of California, *North Pacifica LLC v. City of Pacifica, et al.*, Case No. C01-4823 EMC, Magistrate Chen cited my audit report and confirmed my disapproval of block billing in that case. In so doing, Magistrate Chen referred to the California State Bar fee arbitration advisory that I cite in my report, "Detecting Attorney Bill Padding," January 29, 2003, No. 03-01. The advisory states, in pertinent part: "… [block billing] hides accountability and may increase time by 10 to 30 percent. The larger the 'block,' the more care should be exercised," at page 5. Magistrate Chen also disapproved of block billing *in Defenbaugh v. JBC & Associates, Inc.*, No. C-03-0651 JCS, 2004 WL 1874978*9 (N.D. Cal., August 10, 2004), and *Navarro v. General Nutrition Corp.*, Northern District Case No. C-03-0603. A copy of the State Bar of California Mandatory Fee Arbitration Advisory No. 2003-01, "Detecting Attorney Bill Padding," January 29, 2003, is attached as Exhibit 19.

154. On March 25, 2016, the State Bar of California updated this Fee Advisory, replacing and superseding the original. A copy of the updated advisory is attached as Exhibit 8**.** The language related to disallowances for block billing expands upon the earlier opinion. It states, in pertinent part:

> In the prior version of this arbitration advisory titled "Detecting Attorney Bill Padding" (Arbitration Advisory 2003-01) (January 29, 2003), at section C 4 on page 7, the State Bar's Committee on Mandatory Fee Arbitration ["Committee"] opined that block billing "hides accountability and may increase time by 10% to 30%." However, the arbitrator's discretion is not limited to the 10% to 30% range.

155. The original California State Bar advisory was also used to reduce hours billed in block format in *Welch v. Metropolitan Life Inc. Co.,* 480 F.3d 942, 948 (9th Cir. 2007). While disapproving the District Court's across-the-board reduction of hours by 20 percent (because only

about one-half of the entries were actually blocked), the Ninth Circuit acknowledged the lower court's right to "impose a reduction for block billing," at page 7. The *Welch* court further states, in pertinent part, at page 6:

> We do not quarrel with the district court's authority to reduce hours that are billed in block format. The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. See *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir. 1992). It was reasonable for the district court to conclude that Welch failed to carry her burden, because block billing makes it more difficult to determine how much time was spent on particular activities. See, e.g., *Role Models Am., Inc. v. Brownlee,* 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness"); see also *Hensley v. Eckerhart,* 461 U.S. [424,] at 437 (holding that applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims"); *Fischer v. SJB-P.D. Inc.,* 214 F.3d 1115, 1121 (9th Cir. 2000) (holding that a district court may reduce hours to offset "poorly documented" billing).

156. In *Banas v. Volcano Corp.,* 47 F.Supp.3d 957 (N.D. Cal. 2014), Judge Orrick reduced the attorneys' fee request by 20 percent due to block billing. In doing so, he referenced the *Welch* case as well as another case in which a 30 percent disallowance for block billing was upheld:

> I am reducing Volcano's bill by 20% for block billing.14 In Welch v. Metro. Life Ins. Co., the Ninth Circuit affirmed a district court's authority to reduce block billed hours by 10% to 30%. 480 F.3d 942, 948 (9th Cir. 2007). *See Lahiri v. Universal Music & Video Distrib. Corp.,* 606 F.3d 1216, 1222–23 (9th Cir. 2010) (affirming district court's reduction of 80% of attorneys' and paralegals' hours by 30% to account for block-billing). *Banas, 47 F.Supp.3d at 968.*

157. The party seeking fees argued that block billing was the typical practice for the Northern District of California. Judge Orrick's response was: "If block billing is still a "typical practice" in this District, which I doubt, it flies in the face of repeated criticism by courts throughout the country, including in this District." (*Banas*, 47 F.Supp.3d at 966-967).

158. In *Lahiri*, cited by Judge Orrick, the district court found an 80 percent block billing rate in the bills that were presented and reduced those block billed hours by 30 percent. The 9th Circuit Court of Appeal held this reduction to be "permissible and not an abuse of discretion." (*Lahiri,* 606 F.3d at 1223.)

159. I recommend a 15 percent disallowance of the blocked billed fees in this matter. The 15 percent adjustment is within the guidelines set forth in case law and the State Bar opinion

cited above. *Bell v. Vista Unified School Dist.,* 82 Cal.App.4th 672, 689 (2001), the seminal California state case on block billing, supports the proposition "the trial court should exercise its discretion in assigning a reasonable percentage to the entries, or simply cast them aside" if counsel "cannot further define his billing entries …." The Fourth District, Division One ruled in the unpublished decision of *AntiCancer, Inc. v. Novartis Corp*., 2006 WL 147530 at *5-6 (4th Dist., Div. 1 Jan. 20, 2006) (unpublished) that, in the context of awarding fees to a successful SLAPP defendant, "[w]e decline to categorically condemn the use of block billing." However, the appellate court did give stern warning to practitioners adopting this billing practice that they may be unhappy with a resultant fee award: If block billing entries are used, counsel "places itself at risk of receiving a substantially reduced recovery or no recovery at all based on an unjustified or unsupported request." (Id. at *5.) The *AntiCancer* court did quote *Bell*, sustaining a trial court's 37 percent reduction due to block billing and apportionment issues (with the trial court indicating it gave the claimant the benefit of the doubt on most block billing entries, but still made some appropriate reductions).

160. Based upon my review of the billing entries in this case and my experience in reviewing block billed invoices, it is my opinion that a 15 percent adjustment to the blocked-billed fees of $4,483,806.60 ($15,213,075.35 - $10,729,268.75 = $4,483,806.60) should be applied for this billing practice, which adjustment is well within the guidelines established by the court. Fifteen percent of $4,483,806.60 equals $672,570.99. A list of the block billed entries is attached as **Exhibit 22.**

**Zuckerman Net Fees**

| | |
|---|---|
| **Net Fees** | **$14,766,506.30** |
| **Block Billing** | <u>– $672,570.99</u> |
| **Net Fees** | **$14,093,935.31** |

## V. <u>Vague Entries</u>

161. The auditor identified a number of entries that are vague to the extent that they are lacking sufficient specificity about what was done to justify the time and fees billed. Based on a review of all the billing records in the case, the auditor found redacted vague entries throughout

the billing records. Vague entries provide little or no information about the nature or significance of the work performed, thereby severely hampering a realistic assessment of its utility or the reasonableness of the associated fees. Redactions made it even more difficult to assess.

162. Vague entries omit crucial information about one or more essential elements of a time description, such as the specific activity undertaken, a particular document reviewed or drafted, identities of participants in a meeting or telephone conference, and the like. Vague time entries simply mention or hint at a particular task, and leave it to the reader to fill in the gaps. Vague time entries are essentially incomplete time entries. As such, they neither sufficiently document nor adequately support a statement for fees for services, such as a petition for fees.

163. Lack of detail is acknowledged in the January 29, 2003 State Bar of California Arbitration Advisory, No. 2003-01, that states, in pertinent part, at page 7: ‘‘Research issues’, ‘attention to file’, ‘discovery’, ‘prepare for trial’, and similar statements are not specific enough to let the reader know what was done.” (See Exhibit 19.). In my opinion, both case law and standard billing practice require more in the way of justification for the excessively redacted vague billing entries in this case.

164. The Zuckerman fee entries contain multiple entries that are almost completely redacted without providing any details as to the purpose or subject matter. Below are examples of Zuckerman’s vague billing entries containing redactions:

| | | | | |
|---|---|---|---|---|
| Wit (13877) | 4/19/17 | Caroline E. Reynolds | 7.40 | Travel from Dallas, TX to Oakland, CA (including work on plane 4.50); prepare [redacted] in preparation for settlement conference (1.70); confer with Meiram Bendat (0.70), Jason S. Cowart (0.50) regarding same (time for all tasks split between Alexander and Wit cases). {redaction: mental impressions/legal strategy} |

| | | | | |
|---|---|---|---|---|
| Alex (14026) | 10/29/17 | Adam Abelson | 7.30 | Draft and revise Goddard cross-examination (1.0); prepare for Danesh Alam cross-examination (2.0); review Jerry Shulman-related documents and [redacted] (2.0); meeting with [redacted] (0.7); prepare for Garry Carneal testimony (0.8); review potential rebuttal exhibits (0.8) (time for all tasks split evenly between Wit and Alexander cases). {redactions: mental impressions/trial strategy} |
| Wit (13877) | 10/29/17 | Adam Abelson | 7.30 | Draft and revise Goddard cross-examination (1.0); prepare for Danesh Alam cross-examination (2.0); review Jerry Shulman-related documents and [redacted] (2.0); meeting with [redacted] (0.7); prepare for Garry Carneal testimony (0.8); review potential rebuttal exhibits (0.8) (time for all tasks split evenly between Wit and Alexander cases). {redactions: mental impressions/trial strategy} |
| Wit (13877) | 8/26/19 | Devon Galloway | 7.00 | Research cases regarding [redacted]. {Redaction: mental impressions/ legal strategies} |
| Wit (13877) | 8/23/19 | Devon Galloway | 7.00 | Research cases regarding [redacted]. Draft memorandum regarding same issue {Redaction: mental impressions/ legal strategies} |
| Wit (13877) | 8/16/19 | Devon Galloway | 6.50 | Research [redacted], review [redacted] regarding the same. {Redaction: mental impressions/ legal strategies} |
| Wit (13877) | 10/12/20 | David Reiser | 6.00 | Begin revising fee petition and declaration [redacted]. {Redaction: mental impressions/ legal strategies} |
| Wit (13877) | 12/19/14 | Andrew Caridas | 6.00 | Review [redacted] and correspondence with [redacted] regarding same (0.7); Draft related case motion (2.2); Review answer (3.1). {redaction: mental impression/legal strategy} |
| Wit (13877) | 8/15/19 | Devon Galloway | 6.00 | Review cases regarding [redacted]. {Redaction: mental impressions/ legal strategies} |
| Wit (13877) | 9/6/19 | Devon Galloway | 5.61 | Continue case law research regarding [redacted]. {Redaction: mental impressions/ legal strategies} |

| | | | | |
|---|---|---|---|---|
| Wit (13877) | 9/3/19 | Devon Galloway | 5.50 | Research issues regarding [redacted]. {Redaction: mental impressions/ legal strategies} |
| Wit (13877) | 6/12/20 | Caroline E. Reynolds | 5.30 | Revise supplemental remedies brief (2.5); compile exhibits in connection with same (1.0); confer with Meiram Bendat (.1), Jason Cowart (.4), Adam Abelson (.3) regarding same; confer with Marc Fishman and Meiram Bendat regarding declaration in support (.6); revise draft memo to [redacted] (.4); confer with Jason Cowart regarding same (.1). {redaction: mental impressions/legal strategy} |
| Wit (13877) | 11/9/15 | Caroline E. Reynolds | 5.20 | Confer with Sasha Miller, Ramya Kasturi, Meiram Bendat, Jason S. Cowart regarding [redacted]; confer with Jason S. Cowart, Andrew Caridas regarding case status and legal strategy; confer with April Ross concerning expert report deadline and stipulations; review documents in connection with case management tasks; revise and send retainer letters to potential new clients (total of 3.20 hours for latter four items split evenly between Alexander and Wit cases). {redaction: mental impressions/legal strategy} |
| Wit (13877) | 3/17/16 | Ramya Kasturi | 5.12 | Research [redacted]; research [redacted]; compare answers to intervenor complaints to answers to class complaints; review plaintiff deposition transcripts [redacted]. {redaction: mental impressions/legal strategy} |
| Wit (13877) | 7/16/15 | Andrew Caridas | 5.00 | Call and correspondence with team regarding [redacted] (1.8); Review factual background regarding same (1.3); Research regarding expert fees (HALF) (1.9). {redaction: mental impressions/legal strategy} |

| | | | | |
|---|---|---|---|---|
| Alex (14026) | 10/28/17 | Adam Abelson | 5.00 | Draft cross-examination of Thomas Goddard (2.5); telephone call with Garry Carneal (0.5); telephone call with [redacted] (0.3); review legal research (0.1); confer with team (0.5); assist with preparation for Danesh Alam cross-examination and Gerry Shulman direct examination (1.1) (time for all tasks split evenly between Wit and Alexander cases). {redactions: mental impressions/trial strategy} |
| Wit (13877) | 10/28/17 | Adam Abelson | 5.00 | Draft cross-examination of Thomas Goddard (2.5); telephone call with Garry Carneal (0.5); telephone call with [redacted] (0.3); review legal research (0.1); confer with team (0.5); assist with preparation for Danesh Alam cross-examination and Gerry Shulman direct examination (1.1) (time for all tasks split evenly between Wit and Alexander cases). {redactions: mental impressions/trial strategy} |
| Wit (13877) | 8/30/19 | Devon Galloway | 5.00 | Perform research regarding [redacted] and start memorandum regarding the same. {Redaction: mental impressions/ legal strategies} |
| Wit (13877) | 5/21/20 | Devon Galloway | 5.00 | Research [redacted]; draft memorandum to Adam Abelson regarding same. {Redaction: mental impressions/ legal strategies} |
| Wit (13877) | 11/3/15 | Caroline E. Reynolds | 4.70 | Review claim sample documents; confer with team regarding [redacted]; review and revise draft interrogatory responses; confer with Ramya Kasturi regarding same; confer with Jason S. Cowart regarding legal strategy issues. {redaction: mental impressions/legal strategy} |
| Wit (13877) | 7/30/20 | Devon Galloway | 4.50 | Research case law regarding [redacted]. {Redaction: mental impressions/ legal strategies} |
| Wit (13877) | 2/25/14 | D. Brian Hufford | 4.40 | Fly to Phoenix; meet with [redacted] regarding claims; research claims; review/analyze plaintiff documents regarding same; review/analyze [redacted]. {redaction: mental impressions/legal strategy} |

| | | | | |
|---|---|---|---|---|
| Wit (13877) | 5/20/20 | Devon Galloway | 4.00 | Research case law regarding [redacted]. {Redaction: mental impressions/ legal strategies} |
| Wit (13877) | 6/15/20 | Caroline E. Reynolds | 3.90 | Finalize supplemental remedies brief (3.2); confer with Adam Abelson (.3), Meiram Bendat (.3) regarding same; revise memorandum [redacted] (.1). {redaction: mental impressions/legal strategy} |
| Alex (14026) | 6/5/17 | Caroline E. Reynolds | 3.90 | Review and suggest revisions to draft stipulations (0.30); discuss same with Adam Abelson (0.50); prepare [redacted] (1.00); confer with Carl S. Kravitz (0.20), Jason S. Cowart (0.20) regarding legal strategy issues; review and annotate class lists produced by UBH (1.70) (time for all tasks split between Alexander and Wit cases).{redaction: mental impressions/legal strategy related to settlement} |
| Wit (13877) | 6/5/17 | Caroline E. Reynolds | 3.80 | Review and suggest revisions to draft stipulations (0.30); discuss same with Adam Abelson (0.50); prepare [redacted] (1.00); confer with Carl S. Kravitz (0.20), Jason S. Cowart (0.20) regarding legal strategy issues; review and annotate class lists produced by UBH (1.70) (time for all tasks split between Alexander and Wit cases).{redaction: mental impressions/legal strategy related to settlement} |
| Alex (14026) | 7/10/17 | Caroline E. Reynolds | 3.80 | Revise settlement demand [redacted] (2.20); confer with Adam Abelson (0.20), Jason S. Cowart (0.40) regarding same; participate in meeting regarding [redacted] (0.70); follow up conversation with Jason S. Cowart and D. Brian Hufford (0.30) (time for all tasks split between Alexander and Wit cases). {redaction: mental impressions/settlement strategy} |

| | | | | |
|---|---|---|---|---|
| Wit (13877) | 7/10/17 | Caroline E. Reynolds | 3.80 | Revise settlement demand [redacted] (2.20); confer with Adam Abelson (0.20), Jason S. Cowart (0.40) regarding same; participate in meeting regarding [redacted] (0.70); follow up conversation with Jason S. Cowart and D. Brian Hufford (0.30) (time for all tasks split between Alexander and Wit cases). {redaction: mental impressions/settlement strategy} |
| Wit (13877) | 12/16/15 | Andrew Caridas | 3.70 | Correspondence with opposing counsel regarding remaining discovery and extension (HALF) (1.5); Calls and correspondence with team regarding same (HALF) (1.3); Correspondence with opposing counsel regarding settlement (0.3); Correspondence with client regarding [redacted] (0.4).{redaction: attorney-client privilege} |
| Wit (13877) | 9/19/19 | Devon Galloway | 3.60 | Legal research for [redacted]; legal research regarding [redacted]. {Redaction: mental impressions/ legal strategies} |
| Alex (14026) | 6/12/17 | Caroline E. Reynolds | 3.50 | Revise class designations on class data spreadsheets and forward same to opposing counsel (0.90); forward class lists to notice administrator (0.20); prepare [redacted] (0.40); confer with Carl S. Kravitz regarding summary judgment brief (0.40); review and suggest revisions to summary judgment opposition (1.40); confer with Kendra Alfieri (Dahl Administration) regarding class data (0.10); return phone calls to absent class members (0.10) (time for all tasks split between Wit and Alexander cases). {redaction: mental impressions/settlement strategy} |
| Wit (13877) | 1/12/15 | Andrew Caridas | 3.40 | Correspondence [redacted] (1.2); Revise motion to relate cases (0.9); Correspondence regarding same (0.6); Call with potential expert (0.7). {redaction: mental impressions/legal strategy} |

| | | | | |
|---|---|---|---|---|
| Wit (13877) | 6/12/17 | Caroline E. Reynolds | 3.40 | Revise class designations on class data spreadsheets and forward same to opposing counsel (0.90); forward class lists to notice administrator (0.20); prepare [redacted] (0.40); confer with Carl S. Kravitz regarding summary judgment brief (0.40); review and suggest revisions to summary judgment opposition (1.40); confer with Kendra Alfieri (Dahl Administration) regarding class data (0.10); return phone calls to absent class members (0.10) (time for all tasks split between Wit and Alexander cases). {redaction: mental impressions/settlement strategy} |
| Wit (13877) | 4/25/19 | Caroline E. Reynolds | 3.30 | Draft remedies brief and conduct legal research in connection with same (3.1); review memorandum from Adam Abelson regarding [redacted] (.2) (time for all tasks split between Wit and Alexander cases). {Redactions: mental impressions/ legal strategies} |
| Wit (13877) | 8/27/20 | Caroline E. Reynolds | 3.30 | Review [redacted] (1.2); confer with Meiram Bendat (.3), Jason Cowart (.3) regarding same; draft outline in preparation for remedies hearing (.9); confer with Jason Cowart regarding legal strategies in connection with remedies hearing (.6). {Redaction: Mental impressions/ legal strategies.} |
| Alex (14026) | 4/25/19 | Caroline E. Reynolds | 3.20 | Draft remedies brief and conduct legal research in connection with same (3.1); review memorandum from Adam Abelson regarding [redacted] (.1) (time for all tasks split between Wit and Alexander cases). {Redactions: mental impressions/ legal strategies} |
| Wit (13877) | 6/13/19 | Jason S. Cowart | 2.00 | Edit draft opposition to motion for decertification (0.9); call with Caroline Reynolds and various emails regarding same (0.3); factual research regarding same (0.4); emails and calls with Meiram Bendat and Steve |

| | | | | |
|---|---|---|---|---|
| | | | | Herman regarding [redacted] {redaction: legal strategy } (0.4). |
| Alex (14026) | 9/11/19 | Jason S. Cowart | 2.00 | Calls and emails with [redacted] and members of team (including Brian Hufford and Caroline Reynolds) regarding [redacted] (1.3); review previous briefing, cited decisions, and court's class certification decision related to [redacted] (0.7). {redactions: legal strategy } |
| Wit (13877) | 9/11/19 | Jason S. Cowart | 2.00 | Calls and emails with [redacted] and members of team (including Brian Hufford and Caroline Reynolds) regarding [redacted] (1.3); review previous briefing, cited decisions, and court's class certification decision related to [redacted] (0.7). {redactions: legal strategy } |
| Alex (14026) | 8/3/20 | Jason S. Cowart | 1.70 | Prepare for upcoming remedies hearing by, among other things, reviewing prior briefs and caselaw and developing oral argument outline (0.4); prepare and participate in call with Caroline Reynolds and others regarding fee brief (0.2); call with Caroline Reynolds regarding remedies hearing and arguments (0.3); call with Adam Abelson regarding fee issues (0.2); research regarding and call with possible special master, [redacted] (0.4); research regarding and call to possible fee expert, Brian Fitzpatrick (0.2). {redaction: undisclosed special master candidate} |
| Wit (13877) | 8/3/20 | Jason S. Cowart | 1.70 | Prepare for upcoming remedies hearing by, among other things, reviewing prior briefs and caselaw and developing oral argument outline (0.4); prepare and participate in call with Caroline Reynolds and others regarding fee brief (0.2); call with Caroline Reynolds regarding remedies hearing and arguments (0.3); call with Adam Abelson regarding fee issues (0.2); research regarding and call with |

| | | | | |
|---|---|---|---|---|
| | | | | possible special master, [redacted] (0.4); research regarding and call to possible fee expert, Brian Fitzpatrick (0.2). {redaction: undisclosed special master candidate} |
| Alex (14026) | 9/26/19 | Jason S. Cowart | 1.30 | Review defendant's notice of supplemental authority (0.3); emails with Caroline Reynolds and others regarding same (0.3); call with counsel to Meridian plaintiffs regarding same (0.1); review prior briefing, decisions and cited decisions related to [redacted] (0.5); draft email regarding suggested strategy in responding to same (0.1). {redaction: legal strategy } |
| Wit (13877) | 9/26/19 | Jason S. Cowart | 1.30 | Review defendant's notice of supplemental authority (0.3); emails with Caroline Reynolds and others regarding same (0.3); call with counsel to Meridian plaintiffs regarding same (0.1); review prior briefing, decisions and cited decisions related to [redacted] (0.5); draft email regarding suggested strategy in responding to same (0.1). {redaction: legal strategy } |
| Alex (14026) | 10/21/20 | Jason S. Cowart | 1.10 | Legal research regarding [redacted]. {Redaction: mental impressions/ legal strategies.} |
| Wit (13877) | 10/21/20 | Jason S. Cowart | 1.10 | Legal research regarding [redacted]. {Redaction: mental impressions/ legal strategies.} |
| Alex (14026) | 7/20/20 | Jason S. Cowart | 1.00 | Emails regarding upcoming hearing logistics, including participation of class representatives (0.1); emails regarding [redacted] (0.1); review and respond to emails concerning recoverability of expert expenses as "costs" or attorneys' fees and conduct related legal research (0.5); review [redacted] and related emails (0.3). {redactions: legal strategy } |

| | | | | |
|---|---|---|---|---|
| Wit (13877) | 7/20/20 | Jason S. Cowart | 1.00 | Emails regarding upcoming hearing logistics, including participation of class representatives (0.1); emails regarding [redacted] (0.1); review and respond to emails concerning recoverability of expert expenses as "costs" or attorneys' fees and conduct related legal research (0.5); review [redacted] and related emails (0.3). {redactions: legal strategy } |
| Wit (13877) | 12/9/14 | Jason S. Cowart | 1.00 | Call with [redacted] regarding retention. {redaction: mental impression/legal strategy} |

165. Certain other entries did not appear to contain redactions but were nonetheless vague due to lack of sufficient descriptive language. For example:

| | | | | |
|---|---|---|---|---|
| Alex (14026) | 4/1/17 | Jason S. Cowart | 0.20 | E-mails regarding hot documents. |
| Wit (13877) | 4/1/17 | Jason S. Cowart | 0.20 | E-mails regarding hot documents. |
| Alex (14026) | 4/2/17 | Jason S. Cowart | 0.10 | E-mails regarding discovery stipulation. |
| Wit (13877) | 4/2/17 | Jason S. Cowart | 0.10 | E-mails regarding discovery stipulation. |
| Alex (14026) | 4/2/17 | Jason S. Cowart | 0.30 | Review deposition outline. |
| Wit (13877) | 4/2/17 | Jason S. Cowart | 0.30 | Review deposition outline. |
| Alex (14026) | 4/3/17 | Jason S. Cowart | 0.50 | E-mails regarding hot documents and review same. |
| Wit (13877) | 4/3/17 | Jason S. Cowart | 0.50 | E-mails regarding hot documents and review same. |
| Alex (14026) | 4/3/17 | Andrew McWilliams | 3.80 | half of time reviewing and tagging documents |
| Wit (13877) | 4/3/17 | Andrew McWilliams | 3.80 | half of time reviewing and tagging documents |
| Alex (14026) | 4/3/17 | Jason S. Cowart | 0.60 | Review deposition outlines. |
| Wit (13877) | 4/3/17 | Jason S. Cowart | 0.60 | Review deposition outlines. |
| Alex (14026) | 4/3/17 | Jason S. Cowart | 0.30 | Review draft expert reports. |

| | | | | |
|---|---|---|---|---|
| Wit (13877) | 4/3/17 | Jason S. Cowart | 0.30 | Review draft expert reports. |
| Alex (14026) | 4/4/17 | Nell Zora Peyser | 0.40 | Conduct review of key documents from recent production. |
| Wit (13877) | 4/4/17 | Nell Zora Peyser | 0.40 | Conduct review of key documents from recent production. |
| Alex (14026) | 4/4/17 | Jason S. Cowart | 0.10 | E-mail regarding non-ERISA plans. |
| Wit (13877) | 4/4/17 | Jason S. Cowart | 0.10 | E-mail regarding non-ERISA plans. |
| Alex (14026) | 4/4/17 | Jason S. Cowart | 0.10 | E-mails regarding confidentiality designations. |
| Wit (13877) | 4/4/17 | Jason S. Cowart | 0.10 | E-mails regarding confidentiality designations. |
| Alex (14026) | 4/4/17 | Jason S. Cowart | 0.30 | Review deposition outlines. |
| Wit (13877) | 4/4/17 | Jason S. Cowart | 0.30 | Review deposition outlines. |

166. The vague entries billed by the paralegals and litigation support personnel were detailed above.

167. The vagueness of these and other similarly deficient billing entries makes it impossible for the Court to assess whether the time claimed was reasonably expended. *See Davis v. Prison Health Servs.*, No. C 09-2629 SI, 2012 WL 4462520, at *11 (N.D. Cal. Sept. 25, 2012) (concluding that such billing entries as "conference calls with co-counsel," "review e-mail from opposing counsel," "review e-mail chain," "draft e-mail," and "legal research" were insufficiently detailed and reducing the fee award on that ground); *McCarthy v. R.J. Reynolds Tobacco Co.,* No. CIV. 2:09-2495 WBS DAD, 2011 WL 4928623, at *4 (E.D. Cal. Oct. 17, 2011) (reducing a fee award where most of counsel's entries referred generally to "legal research" and "conversations with [co-counsel]" "without identifying the subject of the research or conversations"); *Ambriz v. Arrow Fin. Servs., LLC*, No. CV 07-5423-JFW (SSx), 2008 WL 2095617, at *5 (C.D. Cal. May 15, 2008) (finding that billing entries for a "telephone conference" were inadequate because the Court could not determine the reasonableness of the time spent without being provided any information on the "nature of the conference"); *Lowe v. Unum Life Ins. Co. of Am.*, No. CIV. S-05-00368 WBS GGH, 2007 WL 4374020, at *4-5 (E.D. Cal. Dec. 14, 2007) (denying attorney's

fees for time spent on "monthly file review," "review" and "paperwork" for lack of sufficiently detailed time records).

168. A more comprehensive list of excessively vague entries by the attorneys totaling $1,692,170.25 is attached hereto as **Exhibit 23.** I recommend a ten percent reduction of the net Zuckerman fees due to the considerable vague nature of the billing in this particular case, where the lack of specificity severely interferes with the auditor's ability to analyze the billing records in this case.

**Zuckerman Net Fees**

| | |
|---|---|
| **Net Fees** | **$14,093,935.31** |
| **Vague Billing** | – $1,409,393.63 |
| **Net Fees** | **$12,684,541.68** |

**VI. Billing for Clerical Work**

169. As discussed above, clerical work is considered overhead, and as such, it is neither billable nor recoverable. "[C]lerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate." *Jeremiah B. v. Dep't of Educ.*, Civil No. 09-00262 DAE-LEK, 2010 WL 34654, at *5 (D.Haw. Jan 29, 2010) (citing *Sheffer v. Experian Info. Solutions, Inc.*, 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003)).

170. As the Court in *Pelayo Pelayo, et al. v. Platinum Limousine Services, Inc., et al.*, 2016 WL 5402185 (Civil No. 15-00023, September 27, 2016) stated:

> Clerical costs, on the other hand, are part of an attorney's overhead and are subsumed in the attorney's charged hourly rate. Jeremiah B. v. Dep't of Educ., 2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010) (citation omitted). See also Frankl v. HGH Corp., 2012 WL 1755423, at *8 (D. Haw. Apr. 23, 2012), F&R adopted by, 2012 WL 1753644 (D. Haw. May 14, 2012) ("[I]t is not customary to bill for purely clerical or secretarial work separately from attorney's services. As previously stated, in this district, such tasks are subsumed in an attorney's overhead costs.")

*Pelayo* at *7.

171. Tasks such as reviewing Court-generated notices, notifying clients of court hearings, filing documents with the Court, communication with court staff, scheduling, and corresponding regarding deadlines, are clerical and not compensable.

172. Most of the clerical work was billed by the paralegals and litigation support personnel. Zuckerman's attorneys billed 43.80 hours in single task entries involving or relating to clerical tasks. See **Exhibit 24** attached hereto.

173. Although all of these tasks may not be strictly clerical, they are not appropriately billed. The clerical tasks total $16,924.50 at the adjusted rates and should be disallowed.

**Zuckerman Net Fees**

| | |
|---|---|
| **Net Fees** | **$12,684,541.68** |
| **Clerical Tasks** | – $16,924.50 |
| **Net Fees** | **$12,667,617.18** |

## VII. Excessive Intra/Inter-Office Conferencing

174. Conferencing is not directly related to any particular work product and consists of exactly what it says – attorneys and paralegals discussing the case amongst themselves. I identified a significant amount of conferencing between the timekeepers in this case. In my experience, excessive conferencing is typically subject to disallowance by courts. Some strategic conferencing among attorneys does have value, but not when done to excess.

175. In *Munoz v. California Business Bureau, Inc.*, Case No. 1:15-cv-1345-BAM, 2017 U.S. Dist. LEXIS 212842 (E.D. Cal., July 14, 2017), the court examined the issue of intra-office conferencing in the context of evaluating a fee request. A true and correct copy of this opinion is attached as **Exhibit 25**. The court reasoned as follows:

> With regard to the time and labor required, the Court has reviewed the billing records submitted by Plaintiff's counsel and finds that, with two exceptions, the number of hours expended to be reasonable. First, a review of counsels' billing records reveals that counsel billed over 10 attorney hours for interoffice conversations between all three attorneys to discuss case status or strategy. While it is reasonable to spend some time coordinating legal resources, it is not reasonable to double or triple-bill a client for internal meetings, many of which appear to be for partner, Mr. Hyde, to provide instructions to his junior associates, Mr. Connolly and Ms. Dorman. See Gauchat-Hargis v. Forest River, Inc., No. 2:11-cv-02737-KJM-EFB, 2013 U.S. Dist. LEXIS 128508, 2013 WL 4828594, (E.D. Ca l. Sep. 6, 2013) (finding it unreasonable for partners and associates to collectively "triple-bill" a client for attending internal meetings).
>
> For example, on June 16, 2016, Mr. Connolly and Ms. Dorman each billed .4 hours to "speak with Robert Hyde" about "opposing counsel's summary judgment letter." (Doc. 29-8, Exh. A at 4). Mr. Hyde billed a slightly longer .6 hours for that same meeting ostensibly in preparation to provide Mr. Connolly and Ms. Dorman further instruction at

> the meeting. Given the triple-billing here for these kinds of internal communications, the Court agrees with Defendant that such charges are excessive. See Chalmers, 796 F.2d at 1211 (The court may reduce those hours where a case is overstaffed and hours are duplicated and where the hours expended are deemed to be excessive). Thus, while the billing of 3.3 hours to conduct strategy meetings by Mr. Hyde was reasonable, the additional duplicative billing to attend those meetings was not. Accordingly, the Court will deduct the 3.3 hours each spent by Ms. Dorman and Mr. Connolly to attend meetings with co-counsel for a total reduction of 6.6 hours.

(*12-13.)

176. The court thus allowed the time for one timekeeper to be involved in a meeting, but disallowed the time billed by other timekeepers for that same meeting. The same analysis can apply in cases in which one timekeeper bills to draft and send an email or memo and another timekeeper bills to receive and review that communication.

177. To quantify the extent of intra-office conferencing in Class Counsel's billing records, I conducted a word search for words pertaining to conferencing such as "meet with", "discuss" and "team meeting". I also searched in the task descriptions for the names or initials of the timekeepers who billed to this matter for entries that would indicate communications with those personnel.

178. The number of references to intra-office conferences in single task entries in this case totaled $341,173.10 in fees or approximately 2.2 percent of the fees billed by the timekeepers at adjusted hourly rates relate to or involve such conferencing. A table showing entries containing some form of Zuckerman firm's intra-office conferencing is attached as **Exhibit 26**. It is important to note that the entries are underestimated due to block billed entries that also contain conferencing entries. Over the past 27 years, I have audited major national and international laws firms and in general the amount of intra-office conferencing in well-managed litigation averaged between two to four percent of the total fees so the conferencing here in single task entries is within the reasonable amount.

179. Based on the fact that conferencing is also referenced in block-billed entries and not delineated in a way in which it is reasonable to determine how much time in the block billed entry has been billed for intra-office conferencing, it is impossible to assign a specific amount to excessive conferencing in this case. However, the party seeking fees has the burden of showing

compensable time and to the extent that they have failed to do so, Defendant should not be penalized for opposing party's failures.

180. In an exercise of caution, I do not recommend any disallowance of Zuckerman fees in this category, but merely point out these conferences to the Court.

181. Mr. Bendat billed 231 billing entries involving conferencing totaling 610.4 hours and $427,280.00 in fees. A table showing entries containing some form of Mr. Bendat's intra-firm conferencing is attached as **Exhibit 31**. His conferencing equals 45.9 percent of his total hours. (610.4/1330.8 = 45.9.) This is clearly an excessive amount of time spent in conferencing. Based upon the above analysis, the excess hours over 4.0 percent of his total time (or 41.9 percent of his time) could be disallowed. However, in an exercise of discretion I recommend disallowing only 20 percent of his time for excessive intra-office conferencing. This still allows over 20 percent of his time for conferencing activities.

182. Mr. Maul billed 96 billing entries involving conferencing totaling 56.4 hours and $33,840.00 in fees. A table showing entries containing some form of Mr. Maul's intra-firm conferencing is attached as **Exhibit 32**. His conferencing equals 21.4 percent of his total hours. (56.4/263.3 = 21.4.) This, too, is an excessive amount of time spent in conferencing. Again, based upon the above analysis, the excess hours over 4.0 percent of his total time (or 17.4 percent of his time) could be discounted. However, in an exercise of discretion I recommend disallowing only 9 percent of his time for excessive intra-office conferencing. This still allows approximately 9 percent of his time for conferencing activities.

**Psych-Appeal Conferencing Adjustment**

| | |
|---|---|
| **Total Hours** | **1,330.80** |
| **20% Conferencing Hours** | 266.16 |
| **Rate** | x $700.00 |
| **Total Adjustment** | **$186,312.00** |

**Psych-Appeal Net Fees**

| | |
|---|---|
| **Net Fees** | **$931,560.00** |
| **Conferencing Tasks** | – $186,312.00 |
| **Net Fees** | **$745,248.00** |

**Maul Conferencing Adjustment**

| | |
|---|---|
| **Total Hours** | **263.30** |
| **9% Conferencing Hours** | 23.70 |
| **Rate** | x $600.00 |
| **Total Adjustment** | **$14,220.00** |

**Maul Net Fees**

| | |
|---|---|
| **Net Fees** | **$157,980.00** |
| **Conferencing Tasks** | – $14,220.00 |
| **Net Fees** | **$143,760.00** |

## VIII. Excessive Research by Partners

183. Zuckerman Partners spent a considerable amount of time on research that could have been performed by lower billing Associates.

184. As argued in the brief in opposition, the Northern District of California requires associate-level work, such as legal research, to be billed at associate-level rates. (*Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *10 (N.D. Cal. Aug. 25, 2017); *Cuviello v. Feld Entm't, Inc.*, 2015 WL 154197, at *4 (N.D. Cal. Jan. 12, 2015); *Yue v. Storage Tech. Corp.*, 2008 WL 11256331, at *4 (N.D. Cal. Aug. 6, 2008).

185. The California State Bar Arbitration Advisory 2016-02 referenced above also discusses this issue at page 5.

186. 539 of D. Brian Hufford's billing entries (mostly block-billed) contain references to "research." These entries total 794.15 hours and $767,803.75 in fees at rates ranging from $905 to $1,145 per hour.

187. 589 of Jason S. Cowart's billing entries (mostly block-billed) contain references to "research." These entries total 720.80 hours and $631,664.00 in fees at rates ranging from $755 to $980 per hour.

188. 183 of Caroline E. Reynolds's billing entries contain references to "research." These entries total 620.30 hours and $446,302.50 in fees at rates ranging from $590 to $825 per

hour. Due to the limited amount of time available, we were unable to quantify the discrete entries related just to research.

189. These billing entries are set forth in **Exhibit 27**.

190. Based on my review of the pleadings, depositions, and time entries I saw no reason why one of the other billers such as Adam Abelson who was admitted in 2010 or Anant Kumar, a 2012 admittee, and are therefore experienced attorneys and who bill at much lower rates of $525 – $690 and $475 – $610 could not have performed the research. Utilizing either one of these attorneys would have saved a significant amount of fees.

191. Based on the case law and the State Bar advisory, I recommend that the research entries be reduced by a minimum of 10 percent to adjust from Partner rates to Associate rates.

192. Mr. Bendat also billed to perform legal research. 30 of his entries contain references to "research." These entries total 96.1 hours and $86,490.00 in fees at his requested rate of $900 per hour. See **Exhibit 28**. As I have already recommended that his billing rate be reduced to $700 per hour, as an exercise of caution I do not recommend any further reduction for his research tasks but I point them out to the Court as an example of potentially improper billing practices.

**Zuckerman Partner Research Fees**

| | |
|---|---|
| **Hufford** | $767,803.75 |
| **Cowart** | $631,664.00 |
| **Reynolds** | $446,302.50 |
| **Total Research** | **$1,845,770.25** |
| | |
| **10% Adjustment** | **$184,577.03** |

**Zuckerman Net Fees**

| | |
|---|---|
| **Net Fees** | **$12,667,617.18** |
| **Partner Research** | – $184,577.03 |
| **Net Fees** | **$12,483,040.15** |

## IX. Duplicative Attendance and Work

193. Due to the number of attorneys working on the case, there was often double (or more) attendance at various depositions, hearings, etc. and duplicative work on various tasks such

as drafting documents and travel time. However, due to the block billing, the task descriptions are so intertwined that it is impossible to get any sort of accurate totals for this duplicative work.

194. In reviewing the following deposition transcripts, I found that one or more attorneys or a paralegal attended, but did not ask any questions or otherwise participate on the record. My conversations with defense counsel confirm that the extra bodies attending the following depositions did not add any substantive value by their attendance:

- Alam
- Allchin
- Haffner
- Martorana
- Niewenhous
- Robinson Beale
- Rockswold
- Simpatico
- Triana

195. Although it is difficult to quantify, I believe that an additional reduction of $75,000 would adjust for the duplicative preparation, attendance, and travel for these depositions.

**Zuckerman Net Fees**

| | |
|---|---|
| **Net Fees** | **$12,483,040.15** |
| **Duplicative** | – $75,000.00 |
| **Net Fees** | **$12,408,040.15** |

## X. Fees for Unnecessary Work

196. As discussed in the opposition to the motion for fees, Class Counsel billed for their various media contacts. Such contacts do not advance the case and have no bearing on the case outcome.

197. In *Lehr v. City of Sacramento*, No. 2:07-cv-01565-MCE-GGH, at *21 (E.D. Cal. Apr. 1, 2013), the court opined:

> Hours spent for media contacts and press conferences are generally not compensable. See Gates v. Gomez, 60 F.3d 525, 535 (9th Cir. 1995) (finding that district court abused its

> discretion in awarding fees for time spent for media contacts because "[t]hese are the kinds of activities that attorneys generally do at their own expense."); Greater Los Angeles Council on Deafness v. Cmty. Television of S. Cal., 813 F.2d 217, 221 (9th Cir.1987) (concluding that the district court "reasonably disallowed time spent on publicity"); Taylor, 2009 WL 453050, at *18 (declining to award attorney's fees for contacts with press because "it is not reasonable to charge one's opponent for media time"); Camarillo v. City of Maywood, 2011 WL 3665028, at *13 (C.D. Cal. Aug. 22, 2011) (concluding that plaintiffs' attorney's fees regarding efforts with the media and the press are not compensable).

198. The 54 billing entries, totaling 54.41 hours and $50,108.25 in fees are set forth in **Exhibit 29** and should be disallowed.

**Zuckerman Net Fees**

| | |
|---|---|
| **Net Fees** | **$12,408,040.15** |
| **Media** | – $50,108.25 |
| **Net Fees** | **$12,357,931.90** |

## XI. Excessive Fees for Fee Petition

199. Our analysis found that Zuckerman timekeepers billed approximately $700,000 in preparing the fee petition. In our 3,000 audits we have *never* seen such an extraordinary amount of time spent on a rather basic fee motion. While the amount of fees being sought are significant, there was nothing unusual about the fee motion itself.

200. The Court in *Cancio v. Financial Credit Network, Inc.*, No. C04-03755 TEH, at *8 (N.D. Cal. July 6, 2005) had the following comments regarding billing for the motion for attorney's fees:

> This Circuit allows the recovery of attorney's fees for time spent preparing and filing a motion for attorney's fees and costs. *Jordan v. Multnomah County,* 185 F.2d 1258, 1264 (9th Cir. 1987); *Rosenfeld v. S. Pac. Co.,* 519 F.2d 527, 530 (9th Cir. 1975). **However, the hours must be reasonably expended to be compensable.** *Jordan,* 815 F.2d at 1263; *see also Trichilo v. Sect'y of Health and Human Servs.,* 823 F.2d 702, 708 (2d Cir. 1987). Further, **courts have "an obligation to scrutinize the hours spent preparing the fee petitions to insure that the total is reasonable and that it does not represent a windfall for the attorneys.**" *Farris v. Cox,* 508 F.Supp. 222, 226 (N.D. Cal. 1981). In this case, Plaintiff requests a total of 23.75 hours (over $9,000 in fees) in pursuit of $28,988.52 for work on the merits. Time spent pursuing "fees on fees" thus represents approximately 27 percent of the hours spent working on the entire case. The Court finds this amount to be excessive.

(Emphases added.)

201. The *Cancio* court analyzed the case and the motion for fees and reduced the total fees for the motion for fees by 67 percent. Here, the percentage of fees is "only" 4.6 percent ($699,635.80/$15,213,075.35).

202. The 758 billing entries, totaling 1,279.13 hours and $699,635.80 in fees are set forth in **Exhibit 30**.

203. Although the percentage of total fees for preparing the fee motion does not approach the percentage identified in *Cancio*, the fees are nearly $700,000 and in my opinion is excessive for what was in all respects a typical fee motion. I recommend allowing $150,000 for preparing this motion, which I believe is very generous. The disallowance would be $699,635.80 – $150,000 = $549,635.80.

**Zuckerman Net Fees**

| | |
|---|---|
| **Net Fees** | **$12,357,931.90** |
| **Fee Petition** | – $549,635.80 |
| **Net Fees** | **$11,808,296.10** |

## XII. All Costs Disallowed

204. Class counsel are seeking their expenses as follows[2] (Reynolds Decl., Ex. 7):

| Category | Total |
|---|---|
| Class Administration | $51,391.69 |
| Computer Rentals | $2,074.00 |
| Conferencing | $1,673.07 |
| Contract Attorneys | $342,753.76 |
| Court Costs | $8,874.00 |
| Electronic Discovery | $232,381.01 |
| Legal Research | $111,993.75 |
| PDF Linking | $35,976.72 |

[2] Class Counsel has withdrawn their request to treat Contract Attorneys as an expense but are now including these fees in their requested lodestar.

| | |
|---|---|
| Photocopying, Delivery, and Related Services | $63,575.28 |
| Process Service and Investigation | $15,194.57 |
| Transcripts | $194,049.89 |
| Travel and Meal Expenses | $357,504.14 |
| Trial Presentations | $75,537.23 |
| Trial Summary Exhibits | $92,246.55 |
| Webhosting | $213.94 |
| **Grand Total** | **$1,585,439.60** |

205. It is my understanding that Class Counsel have not produced any documentation in the form of receipts or invoices to substantiate any of their costs thereby making it impossible to determine the reasonableness of the costs incurred.

206. This is concerning because some of the claimed costs are troubling.

| | | | | |
|---|---|---|---|---|
| 11/29/2017 | Travel and Meal Expenses (Trial) | HOTEL | $53,807.50 | Non-local Travel - - Vendor: One Nob Hill Associates, LLC (Balance for InterContinental – hotel during trial for counsel, staff, clients and witnesses) |
| 11/29/2017 | Travel and Meal Expenses (Trial) | HOTEL | $53,807.50 | Non-local Travel - - Vendor: One Nob Hill Associates, LLC (Balance for InterContinental – hotel during trial for counsel, staff, clients and witnesses) |
| 9/5/2017 | Travel and Meal Expenses (Trial) | HOTEL | $19,522.80 | Miscellaneous - - Vendor: One Nob Hill Associates, LLC (Deposit for InterContinental – hotel during trial for counsel, staff, clients and witnesses) |
| 9/5/2017 | Travel and Meal Expenses (Trial) | HOTEL | $19,522.80 | Miscellaneous - - Vendor: One Nob Hill Associates, LLC (Deposit for InterContinental – hotel during trial for counsel, staff, clients and witnesses) |
| 11/6/2017 | Travel and Meal Expenses (Trial) | Abelson | $3,640.59 | Non-local Travel - - Vendor: Adam Abelson Hotel - San Francisco, CA |

| | | | | |
|---|---|---|---|---|
| 11/6/2017 | Travel and Meal Expenses (Trial) | Abelson | $3,640.59 | Non-local Travel - - Vendor: Adam Abelson Hotel - San Francisco, CA |
| 11/21/2017 | Travel and Meal Expenses (Trial) | Schmidt | $2,324.54 | Non-local Travel - - Vendor: Patrick Schmidt misc expense |
| 11/21/2017 | Travel and Meal Expenses (Trial) | Schmidt | $2,324.54 | Non-local Travel - - Vendor: Patrick Schmidt misc expense |
| 11/21/2017 | Travel and Meal Expenses (Trial) | Schmidt | $1,623.69 | Non-local Travel - - Vendor: Patrick Schmidt meals |
| 11/21/2017 | Travel and Meal Expenses (Trial) | Schmidt | $1,623.69 | Non-local Travel - - Vendor: Patrick Schmidt meals |
| 11/6/2017 | Travel and Meal Expenses (Trial) | Kravitz | $1,587.93 | Non-local Travel - - Vendor: Carl S. Kravitz meals |
| 11/6/2017 | Travel and Meal Expenses (Trial) | Kravitz | $1,587.92 | Non-local Travel - - Vendor: Carl S. Kravitz meals |
| 10/27/2017 | Travel and Meal Expenses (Trial) | Abelson | $1,517.17 | Non-local Travel - - Vendor: Adam Abelson hotel |
| 10/27/2017 | Travel and Meal Expenses (Trial) | Abelson | $1,517.17 | Non-local Travel - - Vendor: Adam Abelson San Francisco - hotel |
| 11/10/2017 | Travel and Meal Expenses (Trial) | Goelman | $1,157.27 | Non-local Travel - - Vendor: Aitan Goelman meals |
| 11/10/2017 | Travel and Meal Expenses (Trial) | Goelman | $1,157.26 | Non-local Travel - - Vendor: Aitan Goelman meals |

207. The hotel and meal expenses are completely unsubstantiated as with all of the expenses. The hotel expenses alone total $146,660.60. Mr. Abelson's travel expenses total $7,281.18. If these travel expenses are for single flights, the cost indicates they are for First Class travel, not coach or coach premium. The meal expenses listed above total $11,772.12. Mr. Schmidt's undefined, uncategorized "miscellaneous" expenses total $4,649.08.

208. While hotel, meal, and travel expenses are necessary, they must be reasonable. First Class airfare would not be reasonable. Eating filet mignon and ordering expensive wines every night would not be reasonable. Staying in hotel suites may or may not be reasonable. However, without any receipts, it is impossible to tell how they spent over $1.5 million.

209. In addition, they appeared to have billed for client travel. We identified $12,669.19 in travel fees related to clients. This amount should be disallowed, even if they do eventually produce receipts or other documentation.

210. Therefore, pending receipt of backup documentation for all of the claimed costs, no expenses should be compensated.

**SUMMARY OF FEE DISALLOWANCES**

211. The following tables summarize my recommended Zuckerman fee disallowances:

| **Calculated Zuckerman Lodestar Amount** | **$15,213,075.35** |
|---|---|
| Paralegal Clerical Work & Rate Adjustment | (334,635.05) |
| Litigation Support Clerical Work & Rate Adjustment | (111,934.00) |
| Block Billing | (672,570.99) |
| Vague Billing | (1,409,393.63) |
| Clerical Work by Attorneys | (16,924.50) |
| Excessive Research by Partners | (184,577.03) |
| Duplicative Attendance | (75,000.00) |
| Fees for Unnecessary Work | (50,108.25) |
| Excessive Fees for Fee Petition | (549,635.80) |
| Round Number Billing | 0.00 |
| Billing More Than 10 Hours Per Day | 0.00 |
| Excessive Intra/Inter-Office Conferencing | 0.00 |
| **Subtotal Disallowed** | **($3,404,779.25)** |
| **Total Allowed** | **$11,808,296.10** |

212. My recommended Zuckerman fee disallowances total **$3,404,779.25** with recommended allowed fees of **$11,808,296.10**.

213. The following tables summarize my recommended Psych-Appeal fee disallowances:

| **Calculated Psych-Appeal Lodestar Amount** | **$1,197,720.00** |
|---|---|
| Adjusted Rate | (266,160.00) |
| Conferencing | (186,312.00) |
| **Subtotal Disallowed** | **($452,472.00)** |
| **Total Allowed** | **$745,248.00** |

214. My recommended Psych-Appeal fee disallowances total **$452,472.00** with recommended allowed fees of **$745,248.00**.

215. The following tables summarize my recommended Maul Firm fee disallowances:

| **Calculated Maul Firm Lodestar Amount** | **$177,727.50** |
|---|---|
| Adjusted Rate | (19,747.50) |
| Conferencing | (14,220.00) |
| **Subtotal Disallowed** | **($33,967.50)** |
| **Total Allowed** | **$143,760.00** |

216. My recommended Maul Firm fee disallowances total **$33,967.50** with recommended allowed fees of **$143,760.00**.

217. Accordingly, the total Zuckerman, Psych-Appeal, and Maul Firm allowed fees should be no more than **$ $12,697,304.10.** No expenses should be allowed at this time.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 15th day of January, 2021, at Sonoma, California.

James P. Schratz