# EXHIBIT 3

FILED

DEC 16 2005

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

592

NORTH PACIFICA, LLC,

Plaintiff,

v.

CITY OF PACIFICA, *et al.*,

Defendants.

____________________________________/

No. C-01-4823 EMC

**ORDER RE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES (Docket No. 528)**

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

# TABLE OF CONTENTS

I. FACTUAL & PROCEDURAL BACKGROUND . . . . -4-
II. DISCUSSION . . . . -6-
A. Lodestar . . . . -7-
1. Reasonable Hourly Rate . . . . -10-
a. Keith Fromm . . . . -11-
b. Jaquelynn Pope . . . . -16-
2. Reasonable Number of Hours . . . . -17-
a. NP's Motion to Strike Declaration of James P. Schratz . . . . -18-
b. Adequacy of Documentation of Hours Expended . . . . -20-
i. Excessive Block Billing . . . . -20-
ii. Excessive Long Billing Days . . . . -22-
iii. Vague Time Entries . . . . -23-
c. Noncompensable Hours . . . . -25-
i. Fees Billed Prior to Supplemental Complaint . . . . -25-
ii. Fees Billed on Unrelated Litigation . . . . -26-
iii. Fees Billed by Mr. Fromm as Member or Principal of NP . . . . -37-
iv. Cure Costs . . . . -40-
d. Billing Judgment . . . . -44-
i. Clerical Tasks . . . . -46-
ii. Travel Time . . . . -47-
iii. Cross-Motions for Summary Judgment . . . . -49-
iv. Trial Preparation . . . . -50-
v. Deposition Attendance . . . . -51-
vi. Other Failures to Exercise Billing Judgment . . . . -54-
(a) Case Management or Status Conference Attendance . . . . -54-
(b) Case Management or Status Conference Statements . . . . -55-

(c) Trial Exhibits . . . . . . . . . . -56-
(d) Trial Brief for Damages Phase . . . . . . . . . . -57-
(e) Miscellany . . . . . . . . . . -57-
vii. Summary re Billing Judgment . . . . . . . . . . -58-
3. Total Lodestar . . . . . . . . . . -60-
B. Adjustment to Lodestar . . . . . . . . . . -60-
1. Unrelated Claims -- Hours Incurred Prior to July 15, 2002 . . . . . . . . . . -60-
2. Unrelated Claims -- Hours Incurred After July 15, 2002 . . . . . . . . . . -64-
a. Hours Incurred Between Approximately July 15, 2002, and June 30, 2003 . . . . . . . . . . -66-
b. Hours Incurred After June 30, 2003 . . . . . . . . . . -67-
c. Summary . . . . . . . . . . -68-
3. Limited Success on Condition 13(b) Claim . . . . . . . . . . -69-
C. Work on Fee Application . . . . . . . . . . -70-
D. Costs . . . . . . . . . . -73-
III. CONCLUSION . . . . . . . . . . -75-

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Having considered the parties' briefs and accompanying submissions as well as the argument of counsel, and good cause appearing therefor, the Court hereby GRANTS Plaintiff North Pacifica LLC's ("NP") motion for attorney's fees pursuant to 42 U.S.C. § 1988.

## I. FACTUAL & PROCEDURAL BACKGROUND

On December 7, 2001, NP filed suit against Defendant the City of Pacifica, asserting claims for denial of substantive due process, denial of equal protection, violation of 42 U.S.C. § 1983, and declaratory relief. *See* Docket No. 1. In essence, NP challenged the City's handling and treatment of NP's permit application for the development of a condominium project on a parcel known as the "Bowl." Subsequently, on January 7, 2002, NP filed a first amended complaint raising the same claims. *See* Docket No. 5.

The City moved to dismiss NP's first amended complaint. On June 12, 2002, pursuant to leave of the Court, NP filed a second amended complaint which included the four claims in the first amended complaint and added a fifth cause of action for denial of substantive due process with respect to a parcel known as the "Fish." *See* Docket No. 34.

On July 30, 2002, the Court granted in part and denied in part the City's motion to dismiss the first amended complaint. *See* Docket No. 40. More specifically, the Court dismissed the substantive due process claim as well as the claim for declaratory relief but allowed the equal protection claim to proceed. Subsequently, on November 26, 2002, the Court dismissed the second substantive due process claim raised in the second amended complaint. *See* Docket No. 69.

On November 26, 2002, the Court also addressed NP's motion, asking the Court to reconsider its order dismissing the substantive due process claim asserted in the first amended complaint. The Court granted the motion to reconsider but ultimately dismissed the claim on another basis. *See* Docket No. 70. Thus, as of November 26, 2002, the case was proceeding on NP's claim for equal protection only.

The parties thereafter filed cross-motions for summary judgment on the equal protection claim. In its briefing, NP argued that the City had violated NP's right to equal protection in six different ways: (1) by sending NP seven deficiency letters from August 16, 1999, to December 4, 2000, thus delaying the completion date of NP's development permit application; (2) by treating

NP's development permit application as if it had been terminated in December 2000, thereby delaying the completion date of the application and necessitating a second initial study and environmental impact report ("EIR"); (3) by waiting until the last minute to tell NP that its development project did not comply with the City's design guidelines, thus forcing NP to incur added expense; (4) by imposing joint and several liability on the individual homeowners for the development project's common areas, a more onerous condition (known as Condition 13(b)) than that imposed on other development projects, (5) by banning Keith Fromm, a member and principal of NP, from meeting with the Planning Department staff; and (6) by delaying in giving funds to a geotechnical consultant.

On June 30, 2003, the Court issued a summary order denying NP's motion for summary judgment in its entirety and granting in part and denying in part the City's. *See* Docket No. 180. On July 15, 2003, the Court issued a detailed order explaining its ruling on the summary judgment motions. *See* Docket No. 216.

First, the Court refused to consider the fifth equal protection violation because NP had not included allegations regarding the banning in its second amended complaint and had no reason not to include such allegations, having known the underlying facts all along. Although NP had not included any allegations regarding the third and fourth violations in its second amended complaint, this was because the underlying facts did not arise until after the second amended complaint was filed. Given these circumstances as well as the absence of any prejudice to the City, the Court allowed NP to file a supplemental complaint to assert the third and fourth violations. NP filed that supplemental complaint on July 18, 2003. *See* Docket No. 219.

Second, the Court refused to consider the sixth violation because NP only argued the delay in providing funds as part of the declaration of Mr. Fromm, not its motion for summary judgment.

Third, regarding the merits of the first through fourth violations, the Court granted summary judgment to the City on the first through third violations but denied summary judgment to the City on the fourth violation. This left for trial only the fourth equal protection for violation -- *i.e.*, that the City had violated NP's right to equal protection through Condition 13(b), which imposed joint and

United States District Court
For the Northern District of California

several liability on the individual homeowners for the development project's common areas, a more onerous condition than that imposed on other development projects.

On July 28, 2003, the liability phase of the trial on Condition 13(b) began.[1] It concluded on August 1, 2003. Subsequently, on October 23, 2003, the Court issued its findings of fact and conclusions of law on the Condition 13(b) claim. *See* Docket No. 264. It determined that the City had in fact violated NP's right to equal protection by imposing on it Condition 13(b).

On February 7, 2005, the damages phase of the trial began. Testimony and evidence were presented from February 7 to 11, 2005, and closing arguments on March 16, 2005. On May 4, 2005, the Court issued its findings of fact and conclusions of law, holding that NP was entitled to damages in the amount of $156,741.19 (including prejudgment interest but exclusive of attorney's fees). *See* Docket No. 493. NP had sought damages in the amount of $10.1 to $16.3 million (exclusive of both attorney's fees and prejudgment interest). Final judgment was entered on May 4 as well. *See* Docket No. 494.

Subsequently, on June 2, 2005, NP asked the Court for an indication that it would entertain or grant a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). According to NP, a recent Supreme Court decision, *Lingle v. Chevron*, 125 S. Ct. 2074 (2005), presented a change of law that resuscitated the substantive due process claim presented in its first amended complaint. On August 4, 2005, the Court declined NP's request. *See* Docket No. 521.

Now pending before the Court is NP's motion for attorney's fees.

## II. DISCUSSION

Under 42 U.S.C. § 1988, a court has the discretion to "allow the prevailing party [in a § 1983 case], other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). NP argues that it was the prevailing party in the instant litigation because the Court found that the City had violated NP's equal protection rights with respect to Condition 13(b) and awarded it more than $150,000 in damages. The City does not dispute that NP was the prevailing party. *See* *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) ("[T]o qualify as a prevailing party, a civil rights plaintiff

---

[1] On July 7, 2003, the Court had bifurcated the trial into a liability phase and a damages phase. *See* Docket No. 198.

must obtain at least some relief on the merits of his claim."). Rather, the City challenges the amount of attorney's fees sought by NP as unreasonable.

While not all of the City's arguments persuasive, the Court does conclude that the fee award sought by NP is unreasonable. The specific reasons for this conclusion are provided below.

A. Lodestar

The fee applicant has the burden of proving a reasonable attorney's fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (stating that "the fee applicant bears the burden of establishing entitlement to an award [of attorney's fees] and documenting the appropriate hours expended and hourly rates"). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. This is commonly known as the lodestar.

According to NP, the lodestar for Mr. Fromm is $1,182,468 (based on an hourly rate of $300 for fees incurred prior to January 1, 2004, and $350 for fees incurred thereafter and a total of 3,682.1 hours), and for Ms. Pope $803,255 (based on an hourly rate of $240 and a total of 3,255.32 hours). *See* Mot. at 2. Based on the billing records submitted, however, NP made errors in its calculations.

| KEITH FROMM | | |
|---|---|---|
| **DATE** | **HOURS** | **FEES** |
| As of 10/31/01 | 8.00 | $2,400 |
| As of 11/26/01 | 21.25 | $6,375 |
| As of 12/18/01 | 32.00 | $9,600 |
| As of 1/31/02 | 23.50 [not 24.50] | $7,050 [not $7,350] |
| As of 2/28/02 | 56.50 | $16,950 |
| As of 3/31/02 | 111.50 | $33,450 |
| As of 4/28/02 | 188.50 | $56,550 |
| As of 5/7/02 | 10.00 | $3,000 |
| As of 6/28/02 | 113.50 | $34,050 |
| As of 7/31/02 | 115.00 | $34,500 |
| As of 8/30/02 | 131.50 [not 132.00] | $39,450 |
| As of 9/26/02 | 40.00 | $12,000 |

United States District Court
For the Northern District of California

| DATE | HOURS | FEES |
|---|---|---|
| As of 10/30/02 | 58.50 | $17,550 |
| As of 11/22/02 | 32.00 | $9,600 |
| As of 12/4/02 | 1.00 | $300 |
| As of 2/25/03 | 20.50 | $6,150 |
| As of 3/31/03 | 125.00 [not 127.00] | $37,500 [not $38,100] |
| As of 4/29/03 | 288.00 [not 290.00] | $86,400 [not $87,000] |
| As of 5/31/03 | 263.00 [not 267.50] | $78,900 [not $80,250] |
| As of 6/16/03 | 71.00 | $21,300 |
| As of 7/31/03 | 213.00 | $63,900 |
| As of 8/29/03 | 81.50 | $24,450 |
| As of 10/27/03 | 10.00 | $3,000 |
| As of 11/19/03 | 45.00 | $13,500 |
| As of 12/25/03 | 55.60 | $16,680 |
| As of 1/25/05 | 100.00 | $35,000 |
| As of 2/26/04 | 33.00 | $11,550 |
| As of 3/31/04 | 70.5. | $24,675 |
| As of 4/28/04 | 6.50 | $2,275 |
| As of 5/24/04 | 19.00 | $6,650 |
| As of 6/30/04 | 53.50 [not 53.00] | $18,725 [not $18,550] |
| As of 7/29/04 | 52.00 | $18,200 |
| As of 8/30/04 | 105.75 | $37,012.50 |
| As of 9/29/04 | 22.00 | $7,700 |
| As of 10/31/04 | 106.50 | $37,275 |
| As of 11/19/04 | 127.50 | $44,625 |
| As of 12/31/04 | 199.00 | $69,650 |
| As of 1/31/05 | 341.00 | $119,350 |
| As of 2/25/05 | 167.00 | $58,450 |
| As of 3/22/05 | 56.00 | $19,600 |
| As of 5/31/05 | 44.00 | $15,400 |
| As of 6/16/05 | 23.50 | $8,225 |

| DATE | HOURS | FEES |
|---|---|---|
| As of 9/7/05 | 18.50 | $6,475 |
| **TOTAL** | **3,660.60** | **$1,175,442.50** |

| JAQUELYNN POPE | | |
|---|---|---|
| **DATE** | **HOURS** | **FEES** |
| 12/10/01 Statement | 86.30 | $20,712 |
| 1/16/02 Statement | 18.50 [not 18.00] | $4,440 [not $4,320] |
| 2/10/02 Statement | 12.3. | $2,952 |
| 3/13/02 Statement | 56.00 [not 56.52] | $13,440 [not $13,565.44] |
| 4/11/02 Statement | 54.60 [not 53.60] | $13,104 [not $12,864] |
| 5/10/02 Statement | 73.00 | $17,520 |
| 6/19/02 Statement | 54.35 [not 54.85] | $13,044 [not $13,164] |
| 7/26/02 Statement | 51.75 | $12,420 |
| 8/26/02 Statement | 74.7 | $17,928 |
| 9/12/02 Statement | 108.00 [not 109.00] | $25,920 [not $26,160] |
| 10/11/02 Statement | 40.00 | $9,600 |
| 12/10/02 Statement | 43.50 | $10,440 |
| 5/1/03 Statement | 290.00 | $69,600 |
| 6/1/03 Statement | 251.50 | $60,360 |
| 8/2/03 Statement | 386.00 | $92,640 |
| 10/25/03 Statement | 93.50 | $22,440 |
| 12/31/03 Statement | 700 | $16,800 |
| 3/1/04 Statement | 101.40 | $24,336 |
| 7/5/04 Statement | 152.60 | $36,624 |
| 9/5/04 Statement | 136.80 | $32,832 |
| 11/5/04 Statement | 159.00 | $38,160 |
| 12/1/04 Statement | 141.00 | $33,840 |
| 2/1/05 Statement | 384.50 | $92,280 |
| 4/1/05 Statement | 288.50 | $69,240 |

United States District Court
For the Northern District of California

| DATE | HOURS | FEES |
|---|---|---|
| 9/6/05 Statement | 111.50 | $26,760 |
| **TOTAL** | **3,239.30** | **$777,432** |

Taking into account the errors in calculation, the lodestar -- at least based on the billing records -- for Mr. Fromm is $1,175,442.50 (based on an hourly rate of $300 for fees incurred prior to January 1, 2004, and $350 for fees incurred thereafter and a total of 3,660.6 hours), and for Ms. Pope $777,432 (based on an hourly rate of $240 and a total of 3,239.3 hours).

1. Reasonable Hourly Rate

In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court held that the hourly rates to be employed in calculating reasonable fees are determined by the "prevailing market rates in the relevant community, regardless of whether the plaintiff is represented by private or nonprofit counsel." *Id.* at 895. The Supreme Court acknowledged that

> determining an appropriate "market rate" for the services of a lawyer is inherently difficult. Market prices of commodities and most services are determined by supply and demand. In this traditional sense there is no such thing as a prevailing market rate for the service of lawyers in a particular community. The type of services rendered by lawyers, as well as their experience, skill, and reputation, varies extensively – even within a law firm. Accordingly, the hourly rates of lawyers in private practice also vary widely. . . .
>
> In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to – for convenience – as the prevailing market rate.

*Id.* at 896 n.11.

As made clear by the Supreme Court in *Blum*, in making a determination about prevailing market rates, a court must take into account the experience, skill, and reputation of the attorneys whose fees are at issue. *See also Chalmers v. Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986) ("In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and



United States District Court
For the Northern District of California

reputation."). Furthermore, as suggested in *Blum*, a party cannot meet its burden of establishing the prevailing market rates by relying on the affidavits of its own self-interested counsel alone. *See also Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987) ("The fee applicant has the burden of producing satisfactory evidence, *in addition to the affidavits of its counsel*, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.") (emphasis added).

In the instant case, the services of two of NP's attorneys are at issue: Mr. Fromm (in-house counsel for NP as well as a member and principal of NP) and Ms. Pope (outside counsel for NP). NP argues that the reasonable hourly rate for Mr. Fromm was $300 until January 1, 2004, and thereafter $350. For Ms. Pope, NP argues that the reasonable hourly rate was $240.

a. Keith Fromm

NP's "proof" of the reasonableness of Mr. Fromm's $300-$350 hourly rate is premised solely on Mr. Fromm's own declaration. The declaration establishes only that: (1) Mr. Fromm was in-house counsel for NP and, as of February 2003 or so, a litigation attorney of record; (2) Mr. Fromm was admitted to the California Bar in 1977; and (3) Mr. Fromm has primarily practiced real estate and land use law. *See* Fromm Decl. ¶ 6. It should be noted that Mr. Fromm has played several roles for NP. He is a principal and co-owner of NP. He has handled the bulk of the administrative and legal work in prosecuting the permit applications. He has also served as co-counsel in the litigation. Mr. Fromm claims fees only in his role as litigation attorney for NP. Although he has experience in other roles, his declaration provides no evidence demonstrating that he has any prior experience as a litigator.

In his declaration, Mr. Fromm asserts that he "interviewed several land use lawyers in Los Angeles, and their hourly rates were $350 to in excess of $500 an hour." *Id.* However, Mr. Fromm does not identify how many lawyers were interviewed, nor does he provide any information about who those lawyers are, let alone their experience, skill, and reputation. More important, Mr. Fromm

United States District Court
For the Northern District of California

does not provide any evidence about the hourly rates of litigators as opposed to land use attorneys.[2] As noted above, NP claims fees for Mr. Fromm as a litigator in this case, not as a transactional attorney working on a real estate deal.

In his declaration, Mr. Fromm also claims that two attorneys who were potential experts in the case, Sanford Skaggs and Daniel Curtin, have a customary hourly fee of $600. *See id.* However, Mr. Fromm does not provide any information about their relative experience, skill, and reputation. Furthermore, there is no indication that Mr. Skaggs and Mr. Curtin are litigators as opposed to land use attorneys.

Finally, in his declaration, Mr. Fromm points out that outside counsel for the City, Michelle Kenyon and Natalie West (both from the McDonough, Holland & Allen firm) charge $230 and $285 an hour respectively. While Ms. Kenyon and Ms. West are both litigators, Mr. Fromm does not provide any information about their experience, skill, and reputation as compared to his experience, skill, and reputation as a litigator.

The Court finds that NP has failed to satisfy its burden of producing satisfactory evidence that the requested rates for Mr. Fromm are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.[3] First, NP has failed to provide any evidence in support of Mr. Fromm's fees other than the self-interested declaration of Mr. Fromm himself. Second, NP cannot establish the proper rates for Mr. Fromm just by referring to the rates actually charged NP, especially since he is a principal of NP. *See Chalmers*, 796 F.2d at 1210-11 ("Determination of a reasonable rate is not made by reference to rates actually charged the prevailing party. In determining a reasonable hourly rate, the district court should be guided by the

---

[2] The Court does not address whether the appropriate legal community would be Los Angeles or the San Francisco Bay Area. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) ("[T]he general rule is that the rates of attorneys practicing in the forum district, here the Eastern District of California -- Sacramento, are used. Although we have not ruled on the issue, a number of circuits have held that rates, other than those of the forum, may be employed if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.").

[3] Although the City did not in its opposition brief expressly challenge the rates requested by NP for either Mr. Fromm or Ms. Pope, it has challenged the lodestar and the reasonableness of the fees sought. As noted above, NP has the burden of establishing reasonable hourly rates for each attorney.

rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."). The fact that Mr. Fromm is a principal for NP suggests that any arrangement between him and NP for legal services was not an arms' length transaction. Third, Mr. Fromm's declaration speaks largely to his experience but says very little about his reputation and skill, factors that are equally important under Supreme Court case law. *See* Fromm Decl. ¶ 6 (mentioning at best his "lectur[ing] on real estate law and related matters at such educational institutions as University of Southern California and Mount St. Mary's College"). Fourth, Mr. Fromm's declaration discusses the rates of other attorneys but provides no reason why these attorneys are reasonably comparable to Mr. Fromm in terms of skill, experience, and reputation as a litigator. Finally, contrary to what Mr. Fromm claims in his declaration, a proper comparator is *not* a land use attorney because, although this case involves land use issues, it is not a transactional matter but rather a litigation matter. The services for which fees are sought are Mr. Fromm's efforts as a litigator representing NP. There is no evidence that any client has paid Mr. Fromm the rates he asserts for his services as a litigator.[4] *See Blum*, 465 U.S. at 896 n.11 (noting that requested rates should be "in line with those prevailing in the community for *similar services* by lawyers of reasonably comparable skill, experience, and reputation") (emphasis added); *Navarro v. General Nutrition Corp.*, No. C 03-0603 SBA, 2005 WL 2333803, at *10 (N.D. Cal. Sept. 22, 2005) (Armstrong, J.) (in employment discrimination case, noting that "it is not even clear from Mr. Hoffman's Supplemental Declaration whether Mr. Rosenthal actually practices civil litigation or has any experience with employment litigation in particular."); *Finkelstein v. Bergna*, 804 F. Supp. 1235, 1244 (N.D. Cal. 1992) (Brazil, J.) (report and recommendation) (looking to "hourly rates for cases of roughly comparable complexity across the full spectrum of case types in federal court litigation").

Although NP has not met its burden of establishing a reasonable hourly rate for Mr. Fromm, the Court shall not therefore deny NP any attorney's fees as a result. This is because a court may consider not only evidence submitted by the parties but also its own knowledge and experience of

---

[4] In his reply declaration, Mr. Fromm claims that other people have tried to hire him after NP prevailed in one of the state cases involving NP and the City. *See* Fromm Reply Decl. ¶ 35. However, not only does Mr. Fromm not identify who and how many people tried to hire him, but he also fails to say whether those people wanted to hire him as a litigator.

United States District Court
For the Northern District of California

local hourly rates; indeed, a court's knowledge and experience generally assume greater weight if the parties provide only scant evidence. *See Oberfelder v. City of Petaluma*, No. C-98-1470 MHP, 2002 U.S. Dist. LEXIS 8635, at *13-14 (N.D. Cal. Jan. 29, 2002) (Patel, J.) ("Fee applicants sustain their burden of proof by submitting sufficient evidence that requested rates are comparable to the current market rates. Alternatively, in evaluating the requested hourly rate, a district court may rely on its own knowledge of comparable rates charged by other lawyers in the district."); *Keith v. Volpe*, 644 F. Supp. 1312, 1316 (C.D. Cal. 1986) (in absence of submissions from defendants controverting rates requested by plaintiffs, relying on "its prior orders in this case, the rates recently awarded in comparable cases, and its own experience of legal practice in Los Angeles in determining appropriate hourly rates"); *see also Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940) ("The court, either trial or appellate, is itself an expert on the question and consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.").

Mr. Fromm has not substantiated any prior experience as a litigator. The Court must therefore presume that he has none. Accordingly, although experienced in land use transactions, Mr. Fromm has no more litigation experience (based on the record) than a starting associate. NP contends, however, that Mr. Fromm should be awarded a higher rate "because of his special knowledge and experience of real estate law, including his experience drafting CC&R's and the process of approval by the California Department of Real Estate, and further, and as importantly, his specific familiarity with the history between NP and the City and the administrative proceedings herein." Reply at 13.

There are several problems with this argument. First, Mr. Fromm brought much of this knowledge as a member of NP – *i.e.*, as a *client*. Second, at most, Mr. Fromm's background in real estate was helpful (as NP argued at the hearing on the motion for attorney's fees) with respect to the depositions of experts. This would not, however, entitle Mr. Fromm to a fee he might command as a land use attorney for all aspects of his work in this litigation. Third, whatever the value of Mr. Fromm's real estate background, that value was largely compromised because of his lack of skill as a litigator (and lack of independent billing judgment, being a member and principal of NP). This was

United States District Court
For the Northern District of California

evident throughout the litigation of this case but was perhaps most evident during the liability phase of the trial where Mr. Fromm repeatedly asked long, confusing, and tortured questions of witnesses and also spent large amounts of time – in a bench trial – having witnesses read documents out loud until NP was left with very little time to complete the presentation of its case. Moreover, this litigation has been papered to death by NP, with seemingly little restraint.

Taking into account all of the above, the Court concludes that a reasonable hourly rate for Mr. Fromm is the rate for a relatively junior litigator. Although arguably his rate should be no more than a first-year litigation associate, the Court shall give some credit (albeit limited) to Mr. Fromm's real estate background so as to support a slightly higher rate. A rate higher than this is not justified given the utter lack of litigation experience by Mr. Fromm. Moreover, such a rate is not appropriate because the result in this case could have been obtained by a litigator with a broad range of experience, and not just a litigator with land use experience. *See Lopez v. San Francisco Unified Sch. Dist.*, 385 F. Supp. 2d 981, 988 (N.D. Cal. 2005) (Illston, J.) (stating that result in the case "could have been obtained by lawyers with a broad range of experience" such that attorney's "customary hourly rate as a partner for a global law firm with nearly 30 years of experience on behalf of corporate clients in complicated environmental and securities litigation is not the reasonable market for this case.").

Accordingly, the Court shall award Mr. Fromm an hourly rate of $225. This award is consistent with awards made by other judges in this District for relatively junior litigation associates. *See, id.* at 990 (awarding as market rates for highly qualified civil rights attorneys $225 for a second-year associate and $260 for third-year associate); *Fleming v. Kemper Nat'l Servs.*, 373 F. Supp. 2d 1000, 1012 (N.D. Cal. 2005) (Chesney, J.) (taking note of declaration of partner at "Lieff, Cabraser, Heimann & Bernstein LLP who litigates class actions involving ERISA, product defects, and employment issues, which stated that firm's hourly billing rate for second-and third-year associates is $ 285; ultimately awarding first-year associates $200); *Velez v. Roche*, No. 02-0337 EMC (awarding $225 hourly rate for 2001 graduate); *Oberfelder*, 2002 U.S. Dist. LEXIS 8635, at *15 (awarding hourly rates from $190 to $250 for junior associates).

United States District Court
For the Northern District of California

b. Jaquelynn Pope

Similarly, NP's "proof" of the reasonableness of Ms. Pope's $240 hour rate is premised solely on Ms. Pope's own declaration. The declaration establishes only that: (1) Ms. Pope was a litigation attorney of record since the inception of this case; (2) Ms. Pope was admitted to the California Bar in 1977; (3) Ms. Pope has primarily practiced appellate and civil litigation, "especially in the areas of real estate and land use"; (4) Ms. Pope's "current customary charge" is $400 per hour and (5) Ms. Pope has "charged more recent land use clients (in 1994) that rate." Pope Decl. ¶ 3. Ms. Pope's declaration reflects that her experience has mostly been in state court, although her experience in state court involves all levels, including the California Supreme Court. *See Galland v. City of Clovis*, 24 Cal. 4th 1003 (2001) (identifying Ms. Pope along with Worthington & Worthington as counsel for plaintiffs and respondents).

For reasons similar to above, the Court finds that NP has failed to satisfy its burden of producing satisfactory evidence that the requested rate for Ms. Pope is in line with that prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Moreover, although an attorney's customary billing rate is relevant to the market value of the attorney's services, it is not binding or conclusive. *See* 2 Schwartz & Kirklin, Section 1983 Litigation § 5.5, at 261. Moreover, an attorney's current stated hourly rate is not necessarily his actual customary rate. *See Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1192 (N.D. Cal. 2004) (noting that billing rates do not say anything "about discounts given clients, write-off time, collection experience or the host of other matters that determine the attorney fees that actually prevail in the market").

That being said, the Court finds that, based on its knowledge and experience of local hourly rates, a rate of $240 an hour for Ms. Pope's services is not unreasonable. Such a rate is well in line, at least, with the rates of litigators with comparable years of experience. The Court emphasizes, however, that its award of $240 per hour is reasonable based not only on experience but also her skill demonstrated in this litigation. Although some attorneys with comparable experience may charge higher rates, Ms. Pope's conduct of this litigation has not been commensurate with her experience level. Ms. Pope, for example, repeatedly filed supplemental papers without leave of Court, filed

long and rambling declarations often containing useless or marginally relevant information, asked to lodge over 18,000 pages of exhibits for the liability phase of the trial, and repeatedly called chambers asking for essentially legal advice as to basic procedural questions.

2. Reasonable Number of Hours

A trial court has discretion in determining the number of hours reasonably expended in advancement of the litigation. *See Chalmers*, 796 F.2d at 1211; *see also Hensley*, 461 U.S. at 437 (noting that a district court has discretion in determining the amount of a fee award, which is "appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters").

The fee applicant bears the burden of "documenting the appropriate hours expended" in the litigation and therefore must "submit evidence supporting the hours worked." *Id.* at 433, 437. Moreover, the fee applicant

> should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, billing judgment is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Id.* at 434 (internal quotation marks omitted; emphasis in original). Or, to state the matter somewhat differently, "the question is not how many hours did one work, but how many hours are properly billed to one's clients." *Chrapliwy v. Uniroyal, Inc.*, 583 F. Supp. 40, 50 (N.D. Ind. 1983).

Importantly, "[t]he lawyer must not abandon self-restraint or careful billing judgment because of the expectation that the obligation to pay the fee will be statutorily shifted to the losing party." *Hall v. Borough of Roselle*, 747 F.2d 838, 841 (3d Cir. 1984). Moreover, "'overkill,' or the indulgence of the plaintiff's counsel in the expenditure of excessive hours on a case, cannot be justified on the grounds that counsel was striving to provide representation of the highest possible quality." 2 Schwartz & Kirklin, Section1983 Litigation § 4.3, at 173; *see also Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 953 (1st Cir. 1984) (rejecting the assumption underlying the fee application "that the standard of service to be rendered and compensated is one of perfection, the best that illimitable expenditures of time can achieve").



United States District Court
For the Northern District of California

a. NP's Motion to Strike Declaration of James P. Schratz

As a preliminary matter, the Court addresses NP's challenge to the declaration of the City's expert, James P. Schratz, upon which the City largely relies in contesting the reasonableness of the number of hours. NP makes essentially four arguments in support of its motion to strike.

First, NP argues that the Schratz declaration should be stricken because the City did not disclose Mr. Schratz as an expert pursuant to Federal Rule of Civil Procedure 26(a)(2). *See* Fed. R. Civ. P. 26(a)(2). This rules provides, *inter alia*, that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence" and that, "[i]n the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial." The Court rejects NP's argument. Rule 26(a)(2)'s concern is with expert testimony to be used for a trial; here, the Court is dealing with a *post*-trial motion for attorney's fees. Moreover, the City could not be expected to disclose any expert it intended to use until after NP's motion for attorney's fees was filed.

NP protests still that the Schratz declaration is problematic because it is incomplete, missing, for example, a recitation of the information or data used in reaching his opinions and a statement about the compensation he received. Neither is a compelling reason to strike the Schratz declaration. It is clear that Mr. Schratz's declaration is based on an evaluation of the billing records provided by NP's records and his experience gleaned from other audits. *See* Fed. R. Evid. 702, 2000 advisory committee notes ("[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience."). Also, the Court is aware of the fact that Mr. Schratz is not an objective neutral but rather a retained expert. The exact amount of his compensation is unlikely to be material. It is also important to note that the Court gave NP the opportunity to depose Mr. Schratz but NP chose not to do so. NP's claim that it decided not to take this one deposition because it was too expensive and burdensome is not credible.

Second, NP contends that the Schratz declaration should be stricken because Mr. Schratz is not an auditor, *i.e.*, a certified public accountant, within the meaning of California Business & Professions Code § 5058 and in any event has no credible expertise because he failed to account for

United States District Court
For the Northern District of California

the fact that the City's attorneys expended virtually the same number of hours as NP's attorneys. Again, the Court is not persuaded by either argument. Nowhere in Mr. Schratz's declaration does he claim to be a certified public accountant and it is clear from the substance of the declaration what he means by using the terms "auditor" and "audit." *See* 16 Cal. Code Regs. § 16 (stating only that it is likely that the terms "accountant," "auditor, "accounting," or auditing" would be confused with the title "certified public accountant" or "public accountant"). Also, as discussed below, how many hours the City's attorneys worked on the case is not dispositive. At most, Mr. Schratz's failure to address the hours worked by the City's attorneys would go to the weight of his declaration, not its admissibility.

Third, NP argues that Mr. Schratz does not qualify as an expert pursuant to Federal Rule of Civil Procedure 702 and that admitting his declaration would unfairly prejudice NP pursuant to Federal Rule of Evidence 403. Again, neither argument is persuasive. The undersigned and other judges in this District have in other cases considered Mr. Schratz's expert opinion with respect to fee awards, at least to a limited extent. *See, e.g.*, *Lopez*, 385 F. Supp. 2d 981, 993 ("The Court will not strike the Schratz declaration in its entirety; however, it will consider the declaration only when it is accompanied by specific factual support."). More important, based on the information provided in the declaration, Mr. Schratz has demonstrated that he is qualified to opine about fee awards and that his methodology in evaluating the billing records of NP's attorneys in this case is reasonable and sufficiently reliable. For example, Mr. Schratz's approach to categorizing the nature of the work of the attorneys is reasonable and sufficiently reliable as is, overall, his approach to unblocking the block-billed time entries. NP's challenges to Mr. Schratz's declaration largely go towards weight rather than admissibility. As for prejudice to NP pursuant to Rule 403, the Court notes that there has been no undue delay by the City because Rule 26(a)(2) does not appear to be applicable. Furthermore, there has been no prejudice because the Court gave NP an opportunity to challenge Mr. Schratz as an expert, both through a deposition and through an extension for NP to file its reply brief in response to the City's opposition.

Finally, NP protests that the exhibits attached to Mr. Schratz's declaration constitute an expert report which is inadmissible hearsay. The Court rejects this argument because Mr. Schratz

could have testified to the same if the Court conducted an evidentiary hearing. In addition, the exhibits are admissible as facts relied on by an expert. *See* Fed. R. Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.").

As for NP's specific objections to the Schratz declaration, they are denied on the basis that they are largely duplicative of the arguments made in the motion to strike and primarily go to weight rather than admissibility.

b. Adequacy of Documentation of Hours Expended

As noted above, the fee applicant bears the burden of "documenting the appropriate hours expended" in the litigation and therefore must "submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433, 437. To support the hours claimed, NP's attorneys have provided their contemporaneous billing records. The City argues, however, that the contemporaneous billing records of Ms. Pope and Mr. Fromm do not support the claimed hours for several reasons: (1) because of the excessive use of block billing, (2) because of excessive long billing days, and (3) because of vague time entries.

i. Excessive Block Billing

The Court acknowledges that block billing is generally frowned upon because the practice makes it difficult to determine whether the amount of time spent on a specific task was reasonable. *See Defenbaugh v. JBC & Associates, Inc.*, No. C-03-0651 JCS, 2004 U.S. Dist. LEXIS 16256, at *25 (N.D. Cal. Aug. 10, 2004) (Spero, J.); *see also Freitag v. California Dep't of Corr.*, No. C 00-02278 THE, 2003 U.S. Dist. LEXIS 26579, at *12 (N.D. Cal. Oct. 17, 2003) (Henderson, J.) (stating that "the better practice would be to avoid block billing altogether"). Indeed, California State Bar's Committee on Mandatory Fee Arbitration has taken note that "[t]he practice hides accountability and may increase time by 10% to 30%. [Thus,] [t]he larger the block, the more care should be exercised." *Welch v. Metro. Life Ins. Co.*, No. CV 04-00084 PA (CTx), 2004 U.S. Dist. LEXIS 28576, at *8-9 (C.D. Cal. Sept. 20, 2004) (internal quotation marks omitted); *see also*

*Trulock v. Hotel Victorville*, 92 Fed. Appx. 433, 434 (9th Cir. 2004) (noting that "block billing creates some impediments to the analysis of attorney fee bills," but adding that "the Supreme Court has indicated that it is not a basis for refusing to award attorneys' fees"; also stating that the case law did not require the district court to do more than consider block billing as "one factor that 'led the Court to conclude that a reduction in the number of hours charged should be imposed'").

According to Mr. Schratz, both Mr. Fromm and Ms. Pope engaged in excessive block billing. *See* Schratz Decl. ¶ 16(A) at 11. Mr. Fromm, for example, routinely engaged in "'daily' billing -- [*i.e.*,] all tasks from a single day were billed in a single, collective time entry." *Id.* Moreover, many of the time entries did not provide an actual explanation of work performed but rather "read like 'stream of consciousness,' diary-like entries." *Id.* ¶ 16(A) at 12 & Ex. G. As for Ms. Pope, "[a]pproximately 46 percent of all hours and fees billed . . . contain at least two or more different block-billed tasks," and "20 percent of the total hours she billed contained three or more different block-billed tasks." *Id.* ¶ 16(A) at 11.

Based on the Court's review of the billing records, it is clear that Mr. Fromm and Ms. Pope did engage in block billing and that this practice has hampered the Court in assessing the reasonableness of each specific task. That being said, it is possible -- as demonstrated by Mr. Schratz himself -- to "'unblock' the blocked time entries by manually reviewing each entry, and to the extent possible, allocat[e] time to each tasks within that entry to reach the most accurate results possible." *Id.* ¶ 14, at 9. The Court has reviewed the unblocking done by Mr. Schratz and deems it, on the whole, reasonable. For example, in spite of what Mr. Fromm argues in his reply declaration, *see* Fromm Reply Decl. ¶ 31, it was reasonable for Mr. Schratz to assume -- absent any evidence to the contrary -- that, for a block time entry that included a telephone conference call, the call would usually last no longer than half an hour. To the extent the "unblocking" may disfavor NP, that is a consequence to be borne by NP because its attorneys engaged in the discouraged practice of block billing. But the Court shall not deny NP its fees outright or make a generalized across-the-board percentage reduction simply because of block billing.

According to the City, however, there is another problem beyond the "basic" block billing by Mr. Fromm and Ms. Pope that makes the billing records unreliable. More specifically, Mr. Schratz



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

states in his declaration that traditionally law firms have billed in one-tenth-of-an-hour increments but, in the instant case, the majority of time entries by NP's attorneys are billed in large time increments of every half hour or every hour. *See* Schratz Decl. ¶ 17(A)(1) at 18.

Although there are instances in which NP's attorneys did bill in one-tenth-of-an-hour increments, and also in one-quarter-of-hour increments, based on the Court's review of the billing records, Mr. Schratz is correct that the majority of time entries are in larger increments of every half hour or every hour. Indeed, in her reply declaration, Ms. Pope admits that she "do[es] generally round to the nearest half hour." Pope Reply Decl. ¶ 12. The only defense Ms. Pope tenders for this practice is that "it is not true that I always round up[;] I am just as likely to round down to the nearest half hour." *Id.* While the Court does not condone the practice, the Court is not persuaded that the above evidence is sufficient proof of unreliability such that the Court should deny NP its fees altogether or make an across-the-board percentage reduction. The evidence does, however, lend support to the Court's conclusion, discussed below, of the repeated failure of NP's attorneys to exercise billing judgment.

ii. <u>Excessive Long Billing Days</u>

The City claims that not only excessive block billing but also excessive long billing days (*i.e.*, eight hours or more in one day) render the billing records of NP's attorneys unreliable. According to Mr. Schratz, "long days account for approximately 75 percent of the total hours billed by Mr. Fromm and 62 percent of the total hours billed by Ms. Pope." Schratz Decl. ¶ 17(A)(2) at 19. Mr. Schratz questions the extensive long billing days because, *inter alia*, "a succession of days of long hours raises questions about the timekeeper's implied endurance, if not the accuracy of the billed time. Long hours are also markers for inefficient or unnecessary effort, as well as excessive billing estimates." *Id.*

The Court acknowledges that Mr. Schratz's concerns are valid. However, the time periods identified by Mr. Schratz as problematic correlate with "large" events in this litigation -- *e.g.*, cross-motions for summary judgment and trial preparation. To the extent Mr. Fromm and/or Ms. Pope may have billed an excessive number of hours for these events, such is addressed below.

iii. Vague Time Entries

Finally, the City questions the hours claimed by NP because of vague time entries in Mr. Fromm and Ms. Pope's billing records. *See* Schratz Decl. ¶ 16(A) at 12. The examples provided by Mr. Schratz in his declaration are not very compelling. The Ninth Circuit has emphasized that "plaintiff's counsel is not required to record in great detail how each minute of his time was expended" but rather "can meet his burden -- although just barely -- by simply listing his hours and identifying the general subject matter of his time expenditures." *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (internal quotation marks omitted). The examples provided by Mr. Schratz do identify the general subject matter of the time expenditures.

That being said, based on the Court's review, both Mr. Fromm and Ms. Pope's billing records do contain vague entries such as "telephone conference with [person]," "draft correspondence [to person]," "review e-mail," and "legal research," without any identification of the subject matter of the conference, correspondence, e-mail, or research. *See* 2 Schwartz & Kirklin, Section 1983 Litigation § 4.14, at 222 ("The subject matter of the activity must be indicated; entries like 'conference with Jones,' 'telephone call to Smith,' 'letter to client,' or 'research' will not suffice."). *See, e.g.*, *Tennessee Gas Pipeline v. 104 Acres of Land*, 32 F.3d 632, 634 (1st Cir. 1994) (in case involving fee request pursuant to 42 U.S.C. § 4654, affirming district court's reduction of fees by 30% because, *inter alia*, time entries had descriptions such as "confer with co-counsel," "confer with client," "review materials," "review documents," and "legal research" without any indication of subject matter involved; this made it "impossible for the court to gage whether the task performed was warranted . . . [and] to determine if the time factor allocated was appropriate or excessive"), *superseded by statute on other grounds*, *Cohen v. Brown Univ.*, R.I. C.A. No. 92-197, N.H. C.A. No. 99-485-B, 2003 U.S. Dist. LEXIS 12512 (D.R.I. Mar. 31, 2003); *Gonzalez v. Town of Stratford*, 830 F. Supp. 111, 114 (D. Conn. 1992) (reducing fee award by 10% because "some of the entries are too vague to enable the court to consider whether the time was reasonably spent" -- *e.g.*, some time entries simply said that an attorney performed "research" or had a "telephone conference" without specifying the issue researched or the subject of the telephone conference). Moreover, there



United States District Court
For the Northern District of California

is not always a context from which the Court would be able to infer what the subject matter of the conference, correspondence, e-mail, or research was.

Accordingly, the Court shall make a 5% reduction from Mr. Fromm's hours as well as a 5% reduction from Ms. Pope's hours because of the vague time entries. The Court finds that a reduction of some kind is necessary because, without more specificity, the Court could not determine whether the task performed was warranted or determine if the time factor allocated was appropriate or excessive. Also, without more specificity, the Court could not ensure that the task performed was related to the instant case rather than the 11 other lawsuits involving NP and the City.[5] Notably, for at least part of the billing time period, Ms. Pope failed to maintain separate billing records for this lawsuit specifically. Ms. Pope admits this in her reply declaration. *See* Pope Reply Decl. ¶ 8 ("I kept separate records [starting] from the beginning of the year 2003.").

The Court, however, shall not make a larger reduction because, at least in some instances, the Court could hazard a guess as to subject matter based on a time entry taken as a whole. In addition, Ms. Pope and Mr. Fromm's billing records were not infected with vague entries in all respects, just in the ways identified above. *See Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000) ("[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage. Whichever option the district court chooses, it is required to 'provide a concise but clear explanation of its reasons for the fee award' that is sufficient to permit appellate review.").

In taking the 5% reduction, the Court shall use the hours that were incurred, for the most part, *after* July 15, 2002. The use of this benchmark is described in Part II.B.1., *infra* (discussing exclusion of hours incurred primarily *before* July 15, 2002). This will ensure that there is no double counting of hours against NP.

---

[5] NP was involved in 11 other lawsuits in addition to this one (8 against the City, 2 against the City as the real party in interest, and 1 against the representatives of the California Coastal Commission). *See* Opp'n at 3; Siegel Decl. ¶ 4.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

After July 15, 2002, Ms. Pope spent 2,832.50 hours on this litigation (*i.e.*, 3,239.30 – 406.80 = 2,382.50). Five percent of 2,832.50 is 141.60 (*i.e.*, 2,832.50 x 5% ≈ 141.60). This leaves Ms. Pope with **3,097.70 hours** (*i.e.*, 3,239.30 – 141.60 = 3,097.70).

After July 15, 2002, Mr. Fromm spent 3,065.85 hours on this litigation (*i.e.*, 3,660.60 – 594.75 = 3,065.85). Five percent of 3,065.85 is 153.30 (*i.e.*, 3,065.85 x 5% ≈ 153.30). This leaves Mr. Fromm with **3,507.30 hours** (*i.e.*, 3,660.60 – 153.30 = 3,507.30).

c. Noncompensable Hours

As noted above, even if the hours claimed by a fee applicant are properly documented, the fee applicant must still demonstrate that there has been the exercise of billing judgment. Before discussing billing judgment, however, the Court must first consider the City's argument that some of the hours claimed by NP are not even compensable under § 1988. According to the City, the following are hours for which NP cannot be compensated: (1) fees billed prior to the supplemental complaint which first alleged the Condition 13(b) claim; (2) fees billed on unrelated litigation (as opposed to unrelated claims); and (3) fees billed by Mr. Fromm as a member or principal of NP. *See* Schratz Decl. ¶ 17(A) at 13-17. At the hearing on the motion for attorney's fees, the Court also discussed cure costs claimed by NP.

i. Fees Billed Prior to Supplemental Complaint

The City argues first that all fees billed prior to the supplemental complaint -- which first raised the Condition 13(b) claim -- should be heavily reduced. *See* Opp'n at 5, 17-18; Schratz Decl. ¶ 17(A)(1) at 13-14. More specifically, according to the City, fees incurred prior to July 18, 2003, the day the supplemental complaint was filed, should be disallowed by 90%.

While the City's position cannot be fully credited, the Court does find that a reduction of some hours is warranted given the timeline in this case, wherein the only issue on which NP prevailed was raised late in the litigation. However, this reduction is more appropriately taken as a downward adjustment to the lodestar for limited success because it is based on NP's having prevailed on only one claim out of those asserted in its original, amended, and supplemental complaints. *See* Part II.B.3., *infra*. As discussed below, because Condition 13(b) did not even come

United States District Court
For the Northern District of California

into existence until shortly before July 15, 2002, the Court shall exclude all fees incurred prior to that time.[6]

ii. Fees Billed on Unrelated Litigation

While the Court shall not discuss until later the reduction of fees because of NP's limited success in *this* litigation, it shall discuss here the City's contention that there should be a reduction of fees because NP's attorneys included on their billing records time spent on *unrelated* litigation.

As noted above, for at least part of the billing time period, Ms. Pope failed to maintain separate billing records for this lawsuit specifically. The Court finds that, although Ms. Pope did make some effort to cross out from her billing records time entries related to other litigation, she did not successfully exclude all of that time. As best as the Court can determine, the following time entries involve unrelated litigation and therefore should be excluded:

| JAQUELYNN POPE[7] | | | |
|---|---|---|---|
| **DATE** | **HOURS** | **FEES** | **DESCRIPTION** |
| 7/13/02 | 1.00 | | *Draft corresp. re: Commissioner Tan "Street Scene" request* |
| 7/15/02 | 1.00 | | *Receipt & review State Court Demurrer to First Amended Complaint* |
| 7/23/02 | 10.00 | | JAMS Mediation w/City of Pacifica in Street Case |

[6] In the sections that follow, the Court does not consider fees incurred at or about July 15, 2002, and prior thereto because the Court excludes all such hours as part of the analysis of limited success as discussed below.

[7] The Court largely relies upon the unblocking of time entries done by Mr. Schratz. Unblocking by Mr. Schratz is reflected by the use of italics. Where the Court has done its own or additional unblocking, such is reflected by the use of underlining.

United States District Court
For the Northern District of California

| DATE | HOURS | FEES | DESCRIPTION |
|---|---|---|---|
| 7/25/02 | 2.00 | | *Draft response to Curtis Appeal*[8] |
| 7/27/02 | 3.00 | | Re[c]eipt & review City's Replies re: Motion to Strike, Demurrer to Writs; draft objection, etc.[9] |
| 8/3/02 | 1.50 | | *Draft response to Curtis Appeal of EIR* |
| 8/4/02 | 1.50 | | Draft response to Curtis appeal |
| 8/5/02 | 0.20 | | *Tel. conf. w/T. Reid re: response to Curtis appeal* |
| 8/5/02 | 2.50 | | *[D]raft response to appeal* |
| 8/6/02 | 3.00 | | *[C]omplete response re: EIR, Draft response to Curtis appeal re: permits* |
| 8/7/02 | 2.00 | | *Receipt & revise opposition to appeals K. Fromm* |
| 8/8/02 | 1.00 [counting only 0.50 only][10] | | *Rev. e-mails re sewer objections; revise corresp. re: 65589.5* |

[8] Mr. Curtis challenged the City's ultimate certification of the environmental impact report ("EIR"). This had nothing to do with the instant litigation, which involved, *inter alia*, claims by NP that the City violated NP's constitutional rights by requiring an EIR before its development application was deemed complete in violation of the California Environmental Quality Act ("CEQA") and by requiring a second brand new EIR after the application was deemed complete.

[9] In her reply declaration, Ms. Pope states that NP is willing to delete 1.50 hours. *See* Pope Reply Decl. ¶ 43. However, the entirety of the time entry seems related to the state court litigation; thus, there should be a reduction of all of the hours -- *i.e.*, 3.00 hours.

[10] In his unblocking, Mr. Schratz attributed 1.00 hours total to reviewing e-mails and revising correspondence. The Court has done additional unblocking and attributed 0.50 hours out of the 1.00 to revising e-mails. Therefore, the Court shall only "count" 0.50 hours instead of 1.00 as being subject to exclusion.

United States District Court
For the Northern District of California

| DATE | HOURS | FEES | DESCRIPTION |
|---|---|---|---|
| 8/8/02 | 1.30 [counting only 0.60] | | *[T]el. confs. w/K. Fromm; B. Kalmbach; M. Kenyon; Tel. San Mateo court (x5)* |
| 8/14/02 | 1.50 | | *[R]eview demurrer to State Complaint, etc.* |
| 8/19/02 | 2.00 | | *Draft corrected Request for Judicial Notice*[11] |
| 8/20/02 | 1.60 | | *[R]eview K. Fromm correspondence re Fish & Bowl committee, Curtis, etc.* |
| 8/28/02 | 1.50 | | *Legal research re: Coastal Commission*[12] |
| 8/29/02 | 7.00 [counting only 3.50] | | *Draft Motion for Reconsideration, legal research re: Coastal Commission*[13] |
| 8/29/02 | 0.50 [counting only 0.20 only] | | *Tel. conf. w/K. Fromm; B. Kalmbach; attn to Quiet Title action* |

---

[11] NP did not file a request for judicial notice in this Court at or about this time. Thus, the Court finds that the request for judicial notice was for a different lawsuit and not compensable herein.

[12] In her reply declaration, Ms. Pope states that hours incurred at this time were related to the City's seeking the assistance of NP in responding to the Coastal Commission's assertion that it had appellate jurisdiction over the issuance of the coastal development permit to NP. *See* Pope Reply Decl. ¶ 30. NP cannot charge the City for this time. The Coastal Commission's actions here had nothing to do with the Condition 13(b) claim or the other claims asserted by NP *against the City* in the instant litigation. Also, in its findings of fact for the damages phase, the Court specifically stated that NP could not recover as part of its cure costs the fees it incurred with respect to the Coastal Commission litigation. *See* Damages FF ¶ 92.

[13] In her reply declaration, Ms. Pope states that NP is willing to deduct 2.00 hours from the *entire* time entry for August 29, 2002. *See* Pope Reply Decl. ¶ 46. The Court has done its own unblocking for the time entry.

| DATE | HOURS | FEES | DESCRIPTION |
|---|---|---|---|
| 9/5/02 | 5.50 [counting only 3.00] | | *[R]eview R. [sic] Fromm corresp. Office conf. w/K. Fromm re administrative writ documents*[14] |
| 9/7/02 | 4.00 | | Draft correspondence to Coastal Commission re regulations etc. |
| 9/8/02 | 6.00 | | Continue draft of long correspondence to Coastal Commission re regulations, etc. |
| 9/9/02 | 2.00 | | *Draft correspondence to Shenfeld re discovery*[15] |
| 9/10/02 | 6.00 | | Corresp. Coastal Commission; legal research Coastal Commission; tel. confs. w/M. Kenyon; R. Kalmbach[16] |
| 10/2/02 | 7.50 | | *[Re]vise petition for writ of mandate/prohibition; etc.*[17] |

[14] In her reply declaration, Ms. Pope claims that "[t]he documents included in the administrative writ are also the documents that are the basis of the within lawsuit and the administrative writ documents were introduced as exhibits in the liability trial." Pope Reply Decl. ¶ 26. However, the fact that the same evidence may have been used for the litigation involving the administrative writ and the instant litigation does not mean that NP can get its fees for the former litigation by virtue of this litigation. The issue is what NP can recover as the prevailing party in *this* litigation.

[15] *See* Pope Reply Decl. ¶ 47 (stating that "NP will delete the remaining two hours" related to "the discovery correspondence regarding the Quiet Title action").

[16] *See* Pope Reply Decl. ¶ 48 ("This entry was overlooked when I was redacting the bills. NP will delete the 6.0 hours.").

[17] In her reply declaration, Ms. Pope states that NP will delete 6.00 out of 8.00 hours because of the work on unrelated litigation. *See* Pope Reply Decl. ¶ 44. The Court has done its own unblocking.

| DATE | HOURS | FEES | DESCRIPTION |
|---|---|---|---|
| 10/23/02 | 9.00 [counting only 4.50] | | Complete draft Judge Chen letter briefs, receipt & review Coastal Commission opposition to writ[18] |
| 4/1/03 | 0.80 | | *Draft corresp. H. Gould re John Curtis* |
| 11/10/03 | 12.00 [counting only 5.00] | | Meetings with J. Tanner staff re: clearing and grubbing, App. at Council meeting[19] |
| **TOTAL** | **77.90** | | |

The Court also finds that, like Ms. Pope's billing records, Mr. Fromm's billing records also contain time spent on unrelated litigation. As best as the Court can determine:

| KEITH FROMM | | | |
|---|---|---|---|
| **DATE** | **HOURS** | **FEES** | **DESCRIPTION** |
| 7/29/02 | 8.00 [counting only 0.50] | | Reviewed letter from Siegel re: appeal of project approval, prepared settlement agreement draft. Research re: 65589.5j |
| 8/7/02 | 8.25 [counting only 4.25] | | Prepared opposition to Appeal of Permit Approvals. Revised J. Pope's appeal of EIR certification |
| 8/8/02 | 3.00 | | *[P]repared and reviewed responses by KMF and JCP to Curtis' appeal* |

[18] *See* Pope Reply Decl. ¶ 49 ("NP will delete 4.5 hours for this entry.").

[19] In its findings of fact for the damages phase of trial, the Court also determined that the cost of clearing and grubbing was not a proper cure cost. *See* Damages FF ¶ 91.



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

| DATE | HOURS | FEES | DESCRIPTION |
|---|---|---|---|
| 8/9/02 | 1.00 | | Reviewed court's ruling on City's Motion to Strike damages, prepared mm to RJK |
| 8/14/02 | 6.50 [counting only 6.30] | | Prepared letter to John Curtis, faxed to RJK and JCP for comments |
| 8/19/02 | 16.00 [counting only 4.00] | | Downloaded all articles from Fishnbowl.org from the web. They are located both in Myimages and Mydocuments. poffishnbowlnewsletters, evidence as to statements of city council members and Crabtree as to treatment of NP's project. Worked on preparing letter to Fishnbowl.org people to dissuade from pursuing appeals. Reviewed all of the fishnbowl.org newsletters, [r]evised letter to John Curtis. Telecon Roy Hills |
| 8/20/02 | 9.00 [counting only 2.00] | | Several revisions to letters to Fishnbowl and John Curtis, several telecons with Jaquelynn Pope. Reviewed expenses for project to compile info for initial disclosures, including potential witness list. Mailed letters to John Curtis and Fishnbowl people |

United States District Court
For the Northern District of California

| DATE | HOURS | FEES | DESCRIPTION |
|---|---|---|---|
| 11/10/03 | 13.00 [counting only 5.00] | | *Attended Bowl project, met with police, met with Steve Brandvold, met with Joe Tanner, removed stop work order, attended and spoke at City Council meeting* |
| 1/15/04 | 3.00 [counting only 1.50] | | Prepared letter to Cecilia Quick re: amendment of conditions, prepared letter to Cecilia Quick re: procedure for vacating Edgemar Road, violation of equal protection |
| 1/23/04 | 5.00 | | Preparation of letter to City in response to proposed action to refuse to consider application to vacate Farallon. Reminded them of violation of equal protection and enclosed Olech case |
| 1/24/04 | 9.50 | | Preparation of letter in response to proposed refusal to consider application to vacate Farallon, both alone and with J Pope |
| 12/7/04 | 4.00 [counting only 1.00] | | Prepared Trial Brief and reviewed evidence. Reviewed joint letter to Judge Chen, reviewed and revised letter to Joel Jacobs re: sending letter to Judge Illston. Read deposition of Peter Imhof |
| **TOTAL** | **43.05** | | |

The City also asserts that some of the time entries related to settlement should be excluded or at least discounted because they are not related to the instant litigation. More specifically, the City

argues that time entries related to settlement in the July 2002 time period should be excluded in their entirety. *See* Siegel Decl. ¶ 30 (noting that Mr. Fromm refers to 8.00 hours expended on July 26, 2002, preparing a settlement agreement in the form of a stipulated judgment but that, "[t]o the best of my recollection, neither the City nor its counsel participated in any settlement discussions relative to this lawsuit in or around July 2002 which involved a proposed stipulation for judgment"). The City also argues that subsequent settlement discussions were global in nature and not limited solely to this lawsuit and, thus, there should be a discount of some sort. *See id.* ¶ 32.

In its reply brief, NP does not contest the City's assertion that the entries related to settlement in the July 2002 period are not related to the instant litigation and so the time shall be excluded.

| **JAQUELYNN POPE** | | | |
|---|---|---|---|
| **DATE** | **HOURS** | **FEES** | **DESCRIPTION** |
| 7/25/02 | 0.30 | | *Rev. e-mails re: Settlement etc.* |
| 7/25/02 | 0.80 | | *[R]eview Settlement Agreement* |
| 7/28/02 | 0.50 | | *Review K. Fromm draft stipulated Judgment* |
| 7/29/02 | 1.60 [counting only 0.80] | | Draft letter re: settlement; receipt & review e-mails |
| 7/30/02 | 1.50 | | *Revise letter re: settlement; revise stipulated judgment* |
| **TOTAL** | **3.90** | | |

| **KEITH FROMM** | | | |
|---|---|---|---|
| **DATE** | **HOURS** | **FEES** | **DESCRIPTION** |
| 7/26/02 | 8.00 | | Prepared form of settlement agreement in form of stipulated judgment |



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

| DATE | HOURS | FEES | DESCRIPTION |
|---|---|---|---|
| 7/29/02 | 8.00 [counting only 3.50] | | Reviewed letter from Siegel re: appeal of project approval, prepared settlement agreement draft. Research re: 65589.5j |
| 7/30/02 | 2.00 [counting only 1.00] | | Preparation of settlement draft, Research on 655895j Reviewed ruling on Motion to Dismiss, won on equal protection, failed to establish a protected property interest, discriminated against for an arbitrary reason |
| **TOTAL** | **12.50** | | |

As for subsequent settlement discussions, NP concedes that they were part of global settlement discussions, *see* Pope Reply Decl. ¶ 17, and therefore the Court shall take a percentage reduction. Although there were 11 other actions involving NP, the City, and/or the Coastal Commission in addition to the instant lawsuit, Ms. Pope claims that "this case and the Street lawsuit were, by far, the most important pieces of litigation which the parties sought to settle." *Id.* Accordingly, the Court shall limit the discount for the unrelated litigation to 50%.

| **JAQUELYNN POPE** | | | |
|---|---|---|---|
| **DATE** | **HOURS** | **FEES** | **DESCRIPTION** |
| 8/21/02 | 2.00 [counting only 1.00] | | *Review damages; review settlement agreement* |
| 8/22/02 | 7.00 | | Preparation and attendance at settlement conference at McDonough, Holland |
| 2/18/03 | 6.00 | | Draft Settlement conf. statement |

| DATE | HOURS | FEES | DESCRIPTION |
|---|---|---|---|
| 2/25/03 | 8.00 | | Preparation for and attendance at settlement conf. |
| 5/13/04 | 0.60 | | Tel confs. w/P. McMahon; clients re settlement conference |
| 5/19/04 | 0.20 | | *Receipt & review Judge Brazil Order re further settlement conf* |
| 5/31/04 | 1.00 | | Draft corresp. to Judge Brazil |
| 6/1/04 | 0.20 | | *Receipt & review order re settl[e]ment conf.* |
| 6/17/04 | 2.00 [counting only 0.50] | | Protective order; Judge Brazil's order re settlement |
| 7/8/04 | 9.00 | | Attendance at settlement conference w/Judge Brazil in Oakland, CA |
| 7/26/04 | 0.30 | | *Tel. conference P. McMahon re settlement offers* |
| **TOTAL** | **33.80** | | |
| | **33.80 x 50% = 16.90** | | |

| KEITH FROMM | | | |
|---|---|---|---|
| **DATE** | **HOURS** | **FEES** | **DESCRIPTION** |
| 8/22/02 | 10.00 [counting only 4.00] | | Flew to Oakland and attended settlement meeting with Michelle Kenyon, Cecilia Quick, Kevin Siegel, Jaquelynn Pope, Bob Kalmbach, returned at night |
| 2/25/03 | 6.00 | | *Attended settlement conference* |

United States District Court
For the Northern District of California

| DATE | HOURS | FEES | DESCRIPTION |
|---|---|---|---|
| 12/8/03 | 4.00 | | Reviewing and revising statement re: Mediation re: conditions lawsuit, preparing materials for meeting with Joe Tanner re: settlement, tt [sic] Joe Tanner |
| 12/9/03 | 2.00 | | *[A]ttended meeting with Joe Tanner to discuss settlement* |
| 12/10/03 | 5.00 | | *Attended settlement conference with Cecilia Quick, Michelle Kenyon, Joe Tanner, Bob Kalmbach, Jaquelynn Pope* |
| 12/18/03 | 7.00 [counting only 3.00] | | *Prepared and revised letters to City re: deleting conditions, various conversations with Michelle, <u>long conversation with Joe Tanner re: possible settlement scenarios</u>* |
| 12/25/03 | 1.00 | | Researched City's Sneath Lane property to see if it could be used for settlement of judgment per Joe Tanner's suggestion |
| 2/3/04 | 5.50 | | Prepared summary of settlement proposal for Joe Tanner |
| 2/14/04 | 1.50 | | Prepared and revised pre-trial offer and demand |
| 7/7/04 | 4.00 | | *Attended settlement conference* |
| 8/6/04 | 0.25 | | Telephone call to Mark Armstrong re: status of settlement offer. Left message |

| DATE | HOURS | FEES | DESCRIPTION |
|---|---|---|---|
| 5/30/05 | 1.00 | | Teleconference with J. Pope re: settlement strategy |
| 6/3/05 | 1.00 | | *Memos to Kalmbach and Johnson re: conference and settlement issues* |
| 6/12/05 | 1.50 | | Conference and reviewed various emails re: settlement and settlement conference, with J Pope |
| 6/16/05 | 7.00 | | Conference with J. Pope, Kalmbach, Johnson, re: settlement of EQ lawsuit and global settlement with City |
| 8/8/05 | 1.50 | | Preparation of response to Pat McMahon's latest draft confidentiality agreement and telcon with J. Pope concerning same |
| **TOTAL** | **48.25** | | |
| | **48.25 x 50% ≈24.10** | | |

Excluding the hours above leaves Ms. Pope with **2,999.00 hours** (*i.e.*, 3,097.70 – 77.90 – 3.90 – 16.90 = 2,999.00).

Excluding the hours above leaves Mr. Fromm with **3,427.65** hours (*i.e.*, 3,507.30 – 43.05 – 12.50 – 24.10 = 3,427.65).

iii. <u>Fees Billed by Mr. Fromm as Member or Principal of NP</u>

Finally, the City argues that the Court should exclude the fees of Mr. Fromm because (1) as a member and principal of NP, he "lacked independent judgment to ensure that reason and rationality dictated the conduct of this litigation," Opp'n at 18; (2) the purpose of fee shifting under § 1988 is to protect disadvantaged persons who have been subjected to unlawful discrimination; and (3) he



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

violated the advocate-witness rule. Alternatively, the City asks that the Court limit Mr. Fromm's time "to work performed by him *as an attorney*" and not as member or principal of NP. *Id.* at 19 (emphasis in original).

The Court is not persuaded by the City's first three arguments. To the extent the City's concern is Mr. Fromm's lack of independent judgment, the Court has taken such into account in determining what was a reasonable hourly rate for his services (which takes into consideration the lawyer's skill) and in determining what was a reasonable number of hours for the tasks he performed. Also, while one purpose of fee-shifting under § 1988 may be to provide access to the federal judicial system to disadvantaged persons, another purpose is to encourage the private enforcement of civil rights statutes. *See Green v. Torres*, 361 F.3d 96, 100 (2d Cir. 2004). Here, NP is a separate legal entity from Mr. Fromm. Mr. Fromm is not the sole owner of NP. NP was entitled to legal representation and may recover fees reasonably incurred in prevailing in this litigation. Finally, the City has not offered any authority demonstrating that a lawyer's violation of an ethical rule, if there was one here (the City did not previously raise this assertion), is grounds for denying the client statutory attorney's fees.

That being said, the Court does agree with the City that Mr. Fromm's hours should be limited to his work as an attorney and not as a member or principal of NP. In particular, hours spent by Mr. Fromm testifying as a deponent or witness at trial shall be excluded. (The fact that NP will not concede that these hours are improper demonstrates once again the lack of billing judgment.) The Court, however, shall not exclude hours spent by Mr. Fromm *preparing questions* for his trial testimony (see, for example, the time entry for February 4, 2005) because such a task likely involved his skill as an attorney conducting the litigation. Similarly, the Court shall not exclude hours spent by Mr. Fromm for attending Planning Commission meetings because it is not clear that this participation did not require his skill as an attorney in relation to this litigation. Accordingly, the following hours should be excluded from the fee award:

| KEITH FROMM | | | |
|---|---|---|---|
| **DATE** | **HOURS** | **FEES** | **DESCRIPTION** |
| 4/18/03 | 11.00 [counting only 8.00] | | *Prepared opposition for Motion to Compel, attended Oakland for my deposition* |
| 4/21/03 | 4.00 | | *Flew to Oakland to attend deposition of Keith Fromm at McDonnough [sic], Holland* |
| 4/22/03 | 8.00 [counting only 5.50] | | *[A]ttneded [sic] deposition of Keith Fromm at offices of McDonnough [sic], attended deposition of Robert Kalmbach at offices of McDonnough [sic]* |
| 7/28/03 | 8.00 [counting only 2.50] | | *Trial[;] conducted trial*[20] |
| 7/29/03 | 8.00 [counting only 2.50] | | *Trial[;] conducted trial*[21] |
| 2/7/05 | 8.00 [counting only 5.00] | | *Conducted trial*[22] |
| 2/8/05 | 8.00 [counting only 2.50] | | *Conducted trial*[23] |
| **TOTAL** | **30.00** | | |

The above has no effect on Ms. Pope's hours, which remain at **2,999.00 hours**.

Excluding the hours above leaves Mr. Fromm with **3,397.65** hours (*i.e.*, 3,427.65 – 30.00 = 3,397.65).

---

[20] On July 28, 2003, the only witnesses who testified were Maxine Gonsalves and Mr. Fromm.

[21] On July 29, 2003, the only witnesses who testified were Mr. Fromm and Harvey Lind.

[22] On February 7, 2005, the only witness who testified was Mr. Fromm.

[23] On February 8, 2005, the only witnesses who testified were Mr. Fromm and Jeff Costell.



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

iv. Cure Costs

Finally, as part of the attorney's fees request, NP included time spent by its attorneys on trying to "cure" Condition 13(b). The City suggests that, contrary to the Court's findings of fact and conclusions of law at the damages phase, NP is not entitled to such. But the Court has already ruled on this issue. It is the law of the case. Moreover, on the merits, the Court is not persuaded by the City's argument. NP had an obligation to mitigate its damages and the City did obtain a benefit from the curing of Condition 13(b) -- it ensured that the damages would be assessed based on a temporary taking only as opposed to a permanent taking.

The City contends still that some of the purported cure costs claimed by NP after the end date of the constitutional injury – *i.e.*, after November 10, 2003 – should not be compensable. *See* Damages FF ¶ 90 (stating that attorney's fees incurred by NP after November 10, 2003, in obtaining satisfactory administrative completion of the cure arguably may be recovered – "[i]n that regard, issues of what constituted a complete administrative cure and whether NP fulfilled its duty to mitigate in obtaining that cure may inform the reasonableness of any fee assessed under § 1988"). But the City has not provided any substantive argument as to why; nor has it identified which specific hours should be eliminated.

That being said, the Court shall exclude some hours as obviously falling outside the realm of cure costs or at least reasonable cure costs. More specifically, the Court shall exclude hours related to efforts by Mr. Fromm to sell the development project in 2004. These hours should not be included because they have nothing to do with actually curing Condition 13(b). Moreover, these hours were largely incurred well past the temporary takings period, and it is not clear that Mr. Fromm was spending these hours acting in a capacity as a lawyer as opposed to a member and principal of NP.

United States District Court
For the Northern District of California

| KEITH FROMM | | | |
|---|---|---|---|
| **DATE** | **HOURS** | **FEES** | **DESCRIPTION** |
| 1/8/04 | 4.50 | | *Conversation with Jim Pollart of Obrien Homes and Roy Hills re: possibility of selling project and getting assurances from City as to development of Fish lots* |
| 1/13/04 | 4.00 [counting only 2.00] | | Removal of 13(b) is an affirmative defense which was not pleaded. It would be retrying liability.. He said judicial estoppel, they could not remove the condition. Judge Chen said you have to mitigate damages. Want to have early trial and therefore early execution upon assets.<br><br>Failure to mitigate damages is an affirmative defense, it is not raised No time, no money and City has poisoned the project, a reasonable person know when to quit. <u>Four to six months Marchetti exclusive right to negotiate. Marchetti thinks they can get 170 units approved. It would be worth a lot of money if that were the case.</u> Research and conference with JCP |

United States District Court
For the Northern District of California

| DATE | HOURS | FEES | DESCRIPTION |
|---|---|---|---|
| 2/2/04 | 3.50 | | Spoke to Jim Pollart today about buying the Bowl project. He said he was busy fighting his own battles with the City and was not eager to wade into any more messy situations. He was reticent to put money into a project . . . . |
| 5/24/04 | 9.00 | | Prepared and revised form of Purchase and Sale Agreement for Bowl project in order to mitigate damages and establish project value |
| 6/14/04 | 3.00 | | Prepared revised form of LOI, and conference with Bruce Bauer re: sale to Silverstone of Bowl project, to mitigate damages and est. value |
| 6/17/04 | 1.50 | | Spoke to John McMorrow re: various matters relating to purchase and sale of Bowl re: mitigation of damages |
| 6/18/04 | 1.50 | | Reviewed draft purchase agreement for Bowl from Silverstone |
| 6/21/04 | 2.50 | | Conversation with John McMorrow re: terms of purchase agreement, conversation with R. Kalmbach re: terms of purchase agreement for Bowl, for mitigation of damages |

United States District Court
For the Northern District of California

| DATE | HOURS | FEES | DESCRIPTION |
|---|---|---|---|
| 6/22/04 | 2.00 | | Conference call with Marc Gottschalk, John McMorrow, Jeff Gilman re: terms of deal |
| 6/24/04 | 3.00 | | Prepared due diligence items and emailed and faxed them to Silverstone re: mitigation of damages[24] |
| 6/24/04 | 2.00 | | Telecon with R. Kalmbach re: his meeting today with Western Pacific, he indicated that because of the ill-will the City has shown in connection with the issuance of the Tentative Tract Map they are hesitant to purchase the project unless it is contingent upon the issuance of the Final Tract Map |
| 6/25/04 | 3.00 | | Prepared due diligence items for submittal to Buyer to mitigate damages |
| 6/27/04 | 9.00 [counting only 2.00] | | Assembling all Bowl environmental reports for trial and making copies and exhibit books. Various emails and faxes to Silverstone re: due diligence to mitigate damages |
| 6/28/04 | 10.00 | | Assembled and delivered documents for due diligence of Silverstone purchase, to mitigate damages and to prepare exhibits for Oct. trial |

[24] Faxing is also a clerical task.

United States District Court
For the Northern District of California

| DATE | HOURS | FEES | DESCRIPTION |
|---|---|---|---|
| 7/19/04 | 3.00 | | Meeting with Hearthstone, Jim Pugash re: sale of Bowl to mitigate damages |
| 7/22/04 | 3.00 | | Revised form of purchase agreement for Bowl, re: mit. of damages |
| 7/23/04 | 4.00 | | Revised purchase agreement for Bowl, re: mit. of damages |
| 7/27/04 | 3.50 [counting only 1.00] | | Revised purchase agreement for Bowl. Reviewed and revised letter to Joel Jacobs and Court re: Peter Douglas deposition. Conference call with Paul Talmage |
| 8/19/04 | 3.00 | | Conference call with Greg Wasserman, John McMorrow et. al. re: sales agreement |
| **TOTAL** | **63.50** | | |

The above has no effect on Ms. Pope's hours, which remain at **2,999.00 hours**.

Excluding the hours above leaves Mr. Fromm with **3,334.15 hours** (*i.e.*, 3,397.65 – 63.50 = 3,334.15).

d. Billing Judgment

Having excluded noncompensable hours from the hours claimed by NP, the Court now turns to the issue of billing judgment. The City contends that both Ms. Pope and Mr. Fromm failed to exercise billing judgment by, *inter alia*, (1) seeking fees for an unsuccessful motion (in particular, a motion to disqualify); (2) seeking fees for doing clerical work only; (3) seeking fees for travel time; (4) billing an excessive number of hours for the cross-motions for summary judgment; (5) billing an excessive number of hours for trial preparation; and (6) seeking fees for the attendance of two attorneys at depositions.

United States District Court
For the Northern District of California

The Court does not find persuasive the City's argument with respect to the unsuccessful motion to disqualify. According to the City, the Court should reduce the hours spent by NP's attorneys on the motion to disqualify because, even though the Court granted the motion with respect to Sanford Skaggs and Daniel Curtin, "the balance of the motion was denied, including the disqualification of defendant's counsel." Schratz Decl. ¶ 17(E) at 25. However, "[i]n the Ninth Circuit, fees for an unsuccessful motion are not automatically excluded. Rather, an ultimately successful plaintiff should be compensated for steps along the path to victory, even if every step is not successful, where the motion constituted 'a method of pursuing her ultimately successful claims,' was a necessary stage of the case, or otherwise contributes to the plaintiff's ultimate success." *Freitag*, 2003 U.S. Dist. LEXIS 26579, at *18. Similarly, the Sixth Circuit has said that "the question is not whether a party prevailed on a particular motion" but "whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990). Given the above standard, the Court shall not reduce any hours spent on the motion to disqualify because it was not unreasonable for NP to seek to disqualify the City's experts and counsel for the City.

The Court, however, does conclude that NP's attorneys failed to exercise billing judgment in the remaining ways specified by the City. NP contends otherwise, arguing that the hours claimed must be reasonable because its attorneys spent "virtually the same amount of hours in this case as NP's attorneys." Reply at 1. The Court acknowledges that the hours spent by the attorneys for the opposing party is "a useful guide in evaluating the appropriateness of time claimed [by the plaintiff]." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004). A "useful guide," however, is only just that. The Court has conducted a "systematic perusal of the actual billing entries" of NP's attorneys which confirms that the reason for high number of hours incurred is not "careful compliance with the attorneys' responsibilities" but rather inefficiency. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001). At the same time, the Court recognizes that the City's attorneys did mount a vigorous defense to this case, and "[t]hose who elect a militant defense in the face of a statute allowing attorney's fees if they are defeated must take into

account the time and effort they extract from their opponents."[25] *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (plurality opinion).

i. Clerical Tasks

The Supreme Court has noted that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 (1989). Clerical activities include time spent on filing and document organization. *See Keith*, 644 F. Supp. at 1315 (deducting 170.7 hours from a fee request for time spent on filing, document organization, and other "clerical matters"); *see also* 2 Schwartz & Kirklin, Section 1983 Litigation § 4.6, at 195 ("[A]ttorneys generally should receive no compensation for time spent on purely secretarial or other nonlegal services, such as serving or filing documents, photocopying documents, or making scheduling or travel arrangements, that are appropriately performed by messengers, secretaries, or clerks whose services ordinarily are part of a law office's overhead and are not billable to fee-paying clients.").

Based on the Court's review of the billing records, both Ms. Pope and Mr. Fromm charged NP for doing clerical work only. Ms. Pope, for instance, billed NP for, *inter alia*, filing papers, making the exhibit books, re-tabbing exhibits, and picking up documents. *See, e.g.*, Pope Reply Decl. ¶ 7 (indicating that she spent a fair amount of time making copies of exhibits and preparing the binders for the exhibits (five sets each), as well as causing two sets to be transported to the Court). Similarly, Mr. Fromm billed NP for, *inter alia*, filing papers, making the exhibit books, making copies, sending faxes, transmitting documents, and serving documents. *See, e.g.*, Fromm Decl. (time entry for October 31, 2004, reflecting that Mr. Fromm spent 6.00 hours on "sen[ding] more document production request transmissions to Pat McMahon [opposing counsel]"). In his reply declaration, Mr. Fromm protests that, in general, secretarial tasks such as sending faxes do not entail a large amount of time. *See* Fromm Reply Decl. ¶ 29. While this may be true, the secretarial tasks

[25] NP makes much of the fact that some 33 attorneys worked on behalf of the City. However, not all 33 were working on the case at the same time. Moreover, it is not uncommon for a case to have many different timekeepers but only a few with a substantial number of hours. This appears to have been such a case. *See* Pope Reply Decl., Ex. A.



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

that Mr. Fromm did involved more than just sending faxes, and even small increments of time can add up.

ii. Travel Time

Both Ms. Pope and Mr. Fromm charged NP for their travel time, the most notable travel time consisting of trips from Los Angeles (where both Ms. Pope and Mr. Fromm are located) to the San Francisco Bay Area (where the Court, the City, and the property at issue are located). As a preliminary matter, the Court notes that, while there are many cases that discuss travel time by an attorney, the travel at issue in those cases is typically different from that in the instant case, involving for example, travel for an out-of-state deposition, *see Defenbaugh*, 2004 U.S. Dist. LEXIS 16256, at *34 (Spero, J.), or local travel. *See United States v. San Francisco*, 748 F. Supp. 1416, 1422 (N.D. Cal. 1990) (Patel, J.) (discussing "commuting to the office of co-counsel"). In such circumstances, travel time is usually deemed compensable and often at an attorney's full hourly rate. *See id.* ("Reasonable attorneys' fees include reasonable travel time compensated at the full hourly rate."). *But see MacDougal v. Catalyst Nightclub*, 58 F. Supp. 2d 1101, 1106-07 (N.D. Cal. 1999) (Jenkins, J.) (reducing the hourly rate for part of an attorney's travel time, from $325 to$ 195).

The travel at issue here is somewhat different because NP could have hired local counsel which would have eliminated or at least drastically reduced travel time (not to mention costs). Some courts have addressed this specific scenario. For example, as pointed out by the City, the Tenth Circuit has indicated that, "because there is no need to employ counsel from outside the area in most cases, . . . travel expenses for such counsel between their offices and the city in which the litigation is conducted should [not] be reimbursed" and "[d]eparture from this rule should be made in unusual cases only." *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 483 U.S. 711 (1987). The Eleventh Circuit has taken a similar approach, stating that, because a party has "the right to retain more than one attorney, the exclusion of out-of-town counsel's travel time is proper only if it was unreasonable not to hire qualified local counsel." *Johnson v. University College of University of Alabama*, 706 F.2d 1205, 1208 (11th Cir. 1983). Thus, for instance, in *Marbled Murrelet v. Pacific Lumber Co.*, 163 F.R.D. 308 (N.D. Cal. 1995) (Bechtle, J.), the court concluded that it was

United States District Court
For the Northern District of California

"perfectly reasonable for [the plaintiff in the case] to go outside of the San Francisco area to seek legal assistance" because it "demonstrated that it was unable to persuade any private law firm or nonprofit legal aid society in the San Francisco area to take on the risk of challenging [the defendant] in this lawsuit." *Id.* at 327.

Informed by the above case law, the Court concludes that it was not reasonable for NP to hire Ms. Pope, an attorney outside of the Bay Area, and charge the City for her travel time. While it may have been convenient for NP to have counsel in Los Angeles, as that is where NP is located, the Court is situated in the Bay Area, the property at issue is located in the Bay Area, the fact witnesses largely reside in the Bay Area, and the underlying events took place in the Bay Area. It was highly inefficient to have counsel incur travel time from Southern California for every court appearance, meeting, and deposition in the Bay Area. Moreover, there is nothing to indicate that Ms. Pope was uniquely equipped to handle this case. There are highly qualified counsel in the Bay Area who could have represented NP on the constitutional issues asserted.

NP suggests that Ms. Pope was unique in the sense that she was willing to charge a lower rate than other attorneys. However, before retaining Ms. Pope, NP appears to have interviewed only "several land use lawyers in Los Angeles," Fromm Decl. ¶ 6, not any land use lawyers in the Bay Area, let alone any litigators in the Bay Area. Also, there is no evidence to demonstrate that counsel in the Bay Area would not also have been willing to charge below-market rates because of "the large amount of hours necessary for the litigation." Pope Decl. ¶ 4. Finally, as found above, Ms. Pope's rate of $240 for this case was not far off from, *e.g.*, Bay Area opposing counsel Michelle Kenyon's purported rate of $230.

That being said, the Court recognizes that NP cannot be blamed for the fact that in-house counsel, Mr. Fromm, is located in Los Angeles rather than the Bay Area. Accordingly, the Court concludes that at least the travel time of Ms. Pope, but not Mr. Fromm, should be excluded.[26]

---

[26] Unfortunately, determining the amount of travel time for Ms. Pope is difficult because, in general, she did not specifically list travel in her time entries. It becomes even more complicated because, based on the Court's review of her billing records, it appears that sometimes Ms. Pope charged for her travel time (even if a time entry did not specify travel), sometimes she charged for part of her travel time, and other times she did not charge at all for her travel time. Instances in which Ms. Pope clearly charged for her travel time include those time entries describing her attendance at a case

iii. Cross-Motions for Summary Judgment

According to Mr. Schratz, the billing records reflect that NP's attorneys spent more than 600 hours in working on the cross-motions for summary judgment, which were heard by the Court in June 2003. Based on the Court's review of the billing records, the number of hours calculated by Mr. Schratz is reasonably accurate, and the Court agrees that this number of hours was excessive. The issues raised in the cross-motions were not complex and the briefs themselves were not lengthy (generally 25 pages or less).

The Court acknowledges that, in addition to the briefs, NP filed several declarations. However, the only declarations that seem to have involved any substantial amount of time were those of Mr. Fromm -- *e.g.*, his declaration in support of NP's motion for summary judgment, which was 64 pages in length; his reply declaration in support of the motion, which was 33 pages; and his declaration in opposition to the City's motion for summary judgment, which was 53 pages in length. Mr. Fromm's declarations, however, were hardly declarations in the sense of being evidence to support the legal arguments in NP's briefs. Instead, Mr. Fromm's declarations were largely legal arguments themselves and therefore were improper. The Court suspected then and continues to suspect today that this was done to get around the page limitations on briefs as established by the Civil Local Rules. (Notably, the Court denied the request for a page extension for the briefing on the motions for summary judgment.).

---

management or status conference. A case management or status conference typically lasts 30 minutes to an hour; Ms. Pope routinely charged 8.00 to 10.00 hours for an appearance. Therefore, implicitly, Ms. Pope must have been including travel time as part of the hours claimed.

The Court notes that, as a general matter, it seems that a one-way trip from Los Angeles to the Bay Area, or vice-versa, consisted of approximately 4.00 hours. This estimation is based on the billing records of Mr. Fromm, which indicate that travel from Los Angeles to the Bay Area, or vice-versa, took anywhere from 3.00 to 6.00 hours -- usually somewhere in the neighborhood of 4.00 hours.

For example, Mr. Fromm's time entry for August 13, 2002, provides: "Flew back from San Jose after appeal of approvals. [¶] 6.0 hours." His time entry for November 9, 2003, provides: "Flew to Oakland. [¶] 4.0 hours." His time entry for May 4, 2004, provides: "Flew to Oakland in preparation for status conference hearing before Judge Chen on May 5, 2004. [¶] 4.0 hours." His time entry for July 13, 2004, provides: "Flew to S.F. for conference with Judge Chen. [¶] 3.0 hours." His time entry for December 22, 2004, provides: "Flew back to L.A. [¶] 5.0 hours." His time entry for January 2, 2005, provides: "Flew back to S.F. in preparation for Carney's depo. [¶] 4.5 hours."



United States District Court
For the Northern District of California

The Court also recognizes that NP spent time on supplemental briefing related to the motions for summary judgment but such briefing was never requested by the Court. In fact, NP never even asked leave of the Court to file the supplemental briefing. Moreover, even after the Court specifically admonished the parties about filing documents without leave to do so after briefing was complete, NP still continued to do so, resulting in the Court's order of June 20, 2003, which struck materials filed by NP.

iv. <u>Trial Preparation</u>

According to Mr. Schratz, NP's attorneys spent more than 750 hours on trial preparation, *excluding* the time spent on specific filings such as joint pretrial statements, trial briefs, post-trial briefs, motions in limine, and exhibits. Based on the Court's review of the billing records, the number of hours calculated by Mr. Schratz is reasonably accurate, and the Court agrees that this number of hours was excessive. There was no reason for NP's attorneys to spend this amount of time given that the issues in the case were relatively straightforward and that this was a bench trial only. Perhaps most notably, together, Ms. Pope and Mr. Fromm spent more than 100 hours working on only the closing argument for the damages phase, which was limited to 40 minutes in length.

The Court acknowledges that the trial in this case consisted of a liability phase, which lasted 5 days, and a damages phase, which lasted 6 days (with the last day being reserved for closing arguments only, each 40 minutes in length). But given the relative simplicity of the case and the fact that the 750 hours of time was *in addition to* hours devoted to specific filings such as joint pretrial statements, trial briefs, and the like, there is little doubt that NP's attorneys spent an excessive amount of time on trial preparation. As a rough calculation, based on 10 days of trial and more than 750 hours of trial preparation (exclusive of specific filings), NP's attorneys spent approximately 75 hours preparing for each day of trial -- *i.e.*, each attorney worked approximately a week on each day of trial. This, quite simply, was not reasonable. *See Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1031 (3d Cir. 1996) (upholding district court's determination that 69.9 hours of trial preparation, an amount twice as long as the trial itself, was excessive and unreasonable even in light of the number of issues raised and the voluminous record); *Ogden v. Johnson*, No. C00-0034, 2002 U.S. Dist. LEXIS 17684, at *19 (N.D. Iowa Sept. 5, 2002)



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

(concluding that 85 hours of trial preparation time was excessive in a case where 14 witnesses were called over a two-and-a-half-day trial); *Growchowski v. Ajet Constr. Corp.*, No. 97 Civ. 6269 (NRB), 2002 U.S. Dist. LEXIS 5031, at *11-12 (S.D.N.Y. Mar. 27, 2002) (holding that 306.1 hours for preparation of one-week trial was excessive given limited issues tried; awarding three weeks of partner time for preparation as reasonable); *Apple Corps. v. International Collection Society*, 25 F. Supp. 3d 480, 491 (D.N. J. 1998) (finding it excessive for senior partner to spend almost three times as long to prepare for hearing as having to attend it).

v. Deposition Attendance

Based on the Court's review of the billing records, it appears that Ms. Pope and Mr. Fromm both appeared for 21 depositions together (excluding the deposition of Mr. Fromm), with Mr. Fromm taking or defending all or the large majority of the depositions.[27] It also appears that there were an additional 6 depositions for which only Mr. Fromm appeared and not Ms. Pope (*i.e.*, Adrienne Tissier and Mike Pacelli (April 2, 2003); John Curtis (April 9, 2003); Christine Schneider (April 10, 2003); Thomas Reid (April 11, 2003); and Barbara Carr (April 28, 2003)). Ms. Pope's billing records did not reflect any attendance at these depositions. *See also* Pope Reply Decl. ¶ 18 (conceding that she was not present at the depositions of Mr. Reid, Ms. Schneider, and Mr. Curtis).

As a starting point, the Court notes that "[i]t is for the plaintiff to justify the presence of multiple attorneys for particular activities." 2 Schwartz & Kirklin, Section 1983 Litigation § 4.4, at 181. As noted by one court,

> a fee applicant is entitled to recover for the hours of multiple attorneys if he satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation. But the fee applicant has the burden of showing that, and where there is an objection raising the point, it is not a make-believe burden.

---

[27] Those depositions were for the following persons: Jason Kliewer, Michael Crabtree (twice) Lee Diaz, Robert Kalmbach (twice), Peter DeJarnatt, James Vreeland (twice), David MacLellan, Peter Imhof, Sanford Skaggs, Cecilia Quick (twice), Jeff Costell, Jeffrey Wagner, William Abbott, Kevin Siegel, Michelle Kenyon, Walter Karney, and Steven Johnson.

*ACLU v. Barnes*, 168 F.3d 423, 432 (11th Cir. 1999); *see also Ramos v. Lamm*, 713 F.2d 546, 554 n.4 (10th Cir. 1983) ("[W]e think that the presence of more than two lawyers during trial or the presence of more than one lawyer at depositions and hearings must be justified to the court.").

> The work of multiple attorneys on the same activity is more easily justified in difficult or complex cases that require a litigation team approach. It is also recognized that the use of multiple attorneys may be particularly appropriate in a "documents" case in order to "manage the logistics of handling a paper blizzard."

2 Schwartz & Kirklin, Section 1983 Litigation § 4.4, at 182.

NP defends the presence of Ms. Pope at the depositions along with Mr. Fromm in several ways. First, NP argues that it was necessary because of the deposition schedules. *See* Reply at 14 ("[T]he deposition schedules required that Pope be familiar with the testimony of the prior witness in order to prepare for the next witness and there was not time between witnesses to obtain and review a transcript."). The Court rejects this argument because, while there were some depositions that were sandwiched together, most of them were not. For example, Mr. Kliewer was deposed on March 21, 2003; the next deposition (of Mr. Crabtree) did not take place until five days later. The depositions of Ms. Tissier, Mr. Pacelli, Mr. Curtis, and Ms. Schneider followed (from April 2 to 11, 2003); however, these depositions were all taken by Mr. Fromm alone. After that, the next deposition (of Mr. Diaz) did not take place until April 17, 2003. The depositions of Mr. Kalmbach and Mr. DeJarnatt followed on April 22 and 23, 2003, respectively, and the deposition of Mr. Vreeland not until May 5, 2003. (In between these depositions, Mr. Fromm took the deposition of Ms. Carr without the assistance of Ms. Pope.) Subsequently, Mr. MacLellan and Mr. Crabtree were not deposed until July 23 and 24, 2003. The next deposition (of Mr. Vreeland) did not take place until a year later.

Second, NP argues that Ms. Pope's attendance must have been necessary because she "participated by passing written questions to [Mr.] Fromm and facilitated questioning by identifying relevant documents as to issues that arose in light of the witnesses' answers." Pope Reply Decl. ¶ 18. However, the Court does not find either fact particularly compelling. That Ms. Pope handed some written questions to Mr. Fromm during the depositions is not especially significant, especially when there is no evidence as to the extent of this kind of participation and the Court is not excluding

United States District Court
For the Northern District of California

any hours in which Ms. Pope might have helped Mr. Fromm prepare for the deposition in advance. As for Ms. Pope's identification of relevant documents during the depositions, there should have been a relatively small number of key documents needed for any given deposition.

Third, NP asserts that Ms. Pope was needed at the depositions "to ensure that[,] in light of the voluminous documents in this case, comprising tens of thousands of pages, and the short time between depositions I would be able to provide input as to the strategy for the next deposition and to observe the witnesses at [sic] first hand." *Id.* However, as noted above, the deposition schedule was not as demanding as NP claims. Also, contrary to what NP asserts, this was not a document heavy case. Indeed, based on the Court's knowledge of this case, a large number of documents produced in this case were of marginal relevance only. Finally, it is hard to believe that Ms. Pope was necessary to assess a witness's credibility, especially when many of the depositions were videotaped.

The Court therefore concludes that NP has not sufficiently demonstrated that both Ms. Pope and Mr. Fromm were needed for 21 out of 27 depositions, *i.e.*, more than 75% of the depositions. *Compare Oberfelder v. City of Petaluma*, No. C-98-1470 MHP, 2002 U.S. Dist. LEXIS 8635, at *21 (N.D. Cal. Jan. 29, 2002) (Patel, J.) ("The court finds that the presence of two attorneys for plaintiff at four out of twenty four depositions is not unreasonable nor atypical."). There is nothing unique about this case or these depositions that would require attendance by two attorneys. Moreover, it was clear that one attorney was capable of taking or defending a deposition as demonstrated by the fact that Mr. Fromm took care of the depositions of Ms. Tissier, Mr. Pacelli, Mr. Curtis, Ms. Schneider, Mr. Reid, and Ms. Carr on his own. At the very least, one attorney was capable of taking or defending the depositions of less important witnesses such as Mr. Kliewer, Mr. DeJarnatt, Mr. Vreeland, and Mr. Imhof. Notably, Mr. Fromm was able to do Ms. Carr's deposition without the assistance of Ms. Pope; therefore, he should have been able to do the same with respect to Mr. DeJarnatt and Mr. Vreeland, both of whom were City Council members like Ms. Carr. Similarly, since Mr. Fromm was able to do the depositions of Ms. Tissier, Mr. Pacelli, Ms. Schneider, and Mr. Reid by himself, all of whom worked on the development permit application, he should have been able to do the same with Mr. Kliewer, who also worked on the application. Finally, there is no indication that Ms. Pope was needed in addition to Mr. Fromm for any given deposition because of

United States District Court
For the Northern District of California

special competence or ability. *Compare United States v. 4,432 Mastercases of Cigarettes*, 322 F. Supp. 2d 1075, 1080 (C.D. Cal. 2004) ("[T]he government argues that Pollack's firm's hours should be reduced because his firm participated in three depositions in which Honig also participated. The Court finds that Pollack's presence at, and his firm's participation in, the depositions were reasonable, because Pollack and Honig have expertise in different areas of the law.").

The Court emphasizes here that it is not finding that it was duplicative for both Ms. Pope and Mr. Fromm to *prepare* for a deposition. Rather, the question it was necessary for both attorneys to *attend* the deposition. And, of course, where only one attorney was sufficient for a deposition, NP would have incurred the travel expense for only one attorney, as opposed to two.

vi. Other Failures to Exercise Billing Judgment

As discussed above, the City has identified a number of failures to exercise billing judgment by NP's attorneys. Based on the Court's review of the billing records, there are many other examples demonstrating additional failures to exercise billing judgment, including but not limited to (1) charging NP for the attendance of two attorneys at case management or status conferences, (2) billing an excessive number of hours for case management or status conference statements, (3) billing an excessive number of hours for working on trial exhibits; and (4) billing an excessive number of hours on the damages trial brief. *See Lucas v. White*, 63 F. Supp. 2d 1046, 1060 (N.D. Cal. 1999) (Henderson, J.) ("While defendants have not objected to the number of hours expended on the fees matter, the Court has an independent obligation to ensure that the fee award is reasonable.").

(a) Case Management or Status Conference Attendance

As noted above, the City legitimately questioned the billing judgment of NP's attorneys because they charged NP for the attendance of both lawyers at 21 out of 27 depositions. Similarly, it is problematic that NP's attorneys billed for the attendance of both Ms. Pope and Mr. Fromm at a majority of the case management and status conferences. For example, based on the Court's review of the billing records, both Ms. Pope and Mr. Fromm were present for the following conferences (not including the initial case management conference and the pretrial conferences): July 31, 2002;

November 19, 2003; January 21, 2004; June 16, 2004; July 14, 2004; August 25, 2004; November 10, 2004; and May 25, 2005.

In *Oberfelder*, Judge Patel rejected the defendants' argument that the appearance of two attorneys for the plaintiff at a case management conference was duplicative. She explained: "The court uses these conferences for more than the mere formality of setting dates; issues are discussed, the case shaped for pretrial and trial and concessions and agreements are made. Attorneys empowered to make decisions on behalf of their client or those with substantive contributions are needed at case management conferences." *Oberfelder*, 2002 U.S. Dist. LEXIS 8635, at *22. The Court agrees with Judge Patel that conferences before a court can involve more than just scheduling. However, in contrast to *Oberfelder*, in the instant case, there is more than just one conference at issue; instead, there are at least eight. Moreover, the conferences of concern to the Court do not consist of the initial case management conference or any of the pretrial conferences, rather, the conferences were largely nondispositive, held for the purpose of getting an update as to the status of the litigation or of moving the litigation along. In addition, the conferences were not conducted on the same day as a hearing on a motion in the case (which might justify the presence of more than one attorney).

Given the nondispositive nature of the conferences, the fact that Ms. Pope and Mr. Fromm were equally empowered to make substantive decisions on behalf of NP, and the fact that the two did not make distinct contributions to the conferences, the Court concludes that it was unnecessary for both attorneys to attend all of the case management and/or status conferences. Again, where only one attorney was sufficient for a conference, NP would have incurred the travel expense for only one attorney, as opposed to two.

(b) <u>Case Management or Status Conference Statements</u>

On a related matter, based on the Court's review of the billing records, NP's attorneys spent an excessive amount of time on case management conference statements. The Court clarifies that its concern here is not the time spent on the initial case management conference statement filed by the parties but rather the time spent on subsequent case management or status conference statements. The purpose of such a statement is to update the court as to how litigation is proceeding and to

United States District Court
For the Northern District of California

inform the court if there are any issues that need to be addressed. For many of the statements, NP's attorneys did far more than this -- repeatedly using the statements to make motions for relief, to provide legal briefing, or to raise matters unrelated to the litigation (in particular, new "wrongdoings" by the City).

Examples where NP's attorneys spent an excessive amount of time on case management conference or status conference statements are as follows:

(1) For the conference in November 2003, NP's attorneys spent approximately 20 hours on a statement.

(2) For the conference in January 2004, NP's attorneys spent approximately 25 hours on a statement (including a supplement and a lengthy declaration on the parties' inability to file a joint statement).

(3) For the conference in May 2004, NP's attorneys spent almost 10 hours on a statement.

(4) For the conference in November 2004, NP's attorneys spent almost 20 hours on a statement.

While the Court would expect such hours to be incurred for a motion, such was not necessary for a mere statement.

(c) <u>Trial Exhibits</u>

Based on the Court's review of the billing records and its own knowledge of the history of this case, NP's attorneys were extremely inefficient with respect to their trial exhibits. For example, NP's lawyers engaged in overdesignation of exhibits, with NP lodging more than 100 exhibits for each phase of the trial -- and this does not even count the multiple subparts that many of the exhibits contained.[28] Given the limited scope of the trial, *i.e.*, whether Condition 13(b) was an equal protection violation and if so what were NP's damages, there was no need for NP to provide more than 200 exhibits. And in fact the vast majority of exhibits were only of marginal relevance.

NP's overdesignation of exhibits had at least two results, both of which necessitated the expenditure of more attorney time. First, the Court compelled the parties to meet and confer to, *inter*

---

[28] Notably, for the liability phase of the trial, NP's lawyers asked to lodge over 18,000 pages as exhibits. In the end, NP's attorneys did not appear to lodge all 18,000 pages but still provided a large number of documents as exhibits.

United States District Court
For the Northern District of California

*alia*, narrow down the number of exhibits or at least reach agreements about admissibility. The fact that NP withdrew a fair number of exhibits after these meetings demonstrates that there was indeed overdesignation. *See, e.g.*, Docket No. 432 (NP's notice of withdrawal of 40 trial exhibits). Second, even after NP withdrew some exhibits, a large number still remained, again, the majority of which were of only marginal relevance. But because NP did not withdraw more of these marginally relevant exhibits, it was necessary for the Court to require the City to make objections and NP to then make responses to the objections. This process resulted in a large expenditure of time by Mr. Fromm in particular for the damages phase.

In addition, NP's lawyers failed to exercise due care in their preparation of the exhibits, an impediment in both the liability and damages phase -- *e.g.*, failing to provide an exhibit list that complied with the Court's standing order (thus necessitating revisions), failing to "tab" exhibits properly (thus necessitating re-tabbing), providing the same exhibit two or three times, designating the entire administrative record one exhibit, and so forth. Significantly, the Court issued sanctions because of problems with NP's liability phase exhibits.

(d) <u>Trial Brief for Damages Phase</u>

Based on the Court's review of the billing records, NP's attorneys spent more than 125 hours on the trial brief for the damages phase of the trial. This was an excessive amount of time. The Court acknowledges that the large amount of time can be attributed in part to the length of the brief, which consisted of 123 pages. However, it was not reasonable for NP to file a trial brief of this length, especially when the purpose of a trial brief is simply to inform the Court of the major factual and legal issues to be resolved at trial. NP was well aware of this fact as demonstrated by its trial brief for the liability phase of the trial, which consisted of only 8 pages. For the damages phase of the trial, however, NP did far more than required or even desired by the Court -- essentially presenting the entirety of its case in written form.

(e) <u>Miscellany</u>

Finally, in addition to the above, there are various other examples that demonstrate a lack of billing judgment by NP's attorneys. For example:

United States District Court
For the Northern District of California

(1) Mr. Fromm billed NP for public relations work but the Ninth Circuit has stated that such work is compensable only if it contributes "directly and substantially" to the achievement of plaintiff's litigation goal and NP has made no demonstration of such. *See Davis v. City of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992); *see also Greater Los Angeles Council on Deafness v. Community Television of S. Cal.*, 813 F.2d 217, 221 (9th Cir. 1987) ("The court reasonably disallowed time spent on publicity, lobbying, and unrelated claims . . . .").

(2) For Ms. Pope's time entries, several reflect that she did not charge NP for the hours spent, and "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (internal quotation marks omitted; emphasis in original).

(3) On January 16, 2004, both Ms. Pope and Mr. Fromm billed NP one-and-a-half to two hours each for sheer waiting time for a meeting with Ms. Quick, the City Attorney, even though nothing indicates that it was justified for them to expect an immediate meeting with her.

(4) At hearings before the Court, Ms. Pope and Mr. Fromm repeatedly wasted time disagreeing with one another and fighting to speak at the podium, leading the Court to issue an order requiring that only one counsel at a time make an argument at the podium.

(5) Throughout the litigation, NP's attorneys filed supplemental briefing even though not permitted by the Federal Civil Rules of Civil Procedure or the Civil Local Rules and without leave of the Court.

vii. <u>Summary re Billing Judgment</u>

For all of the above reasons, the Court finds that all of the hours claimed by NP's attorneys in their billing records are not reasonable because of a failure to exercise billing judgment. NP's attorneys included in their billing records (1) hours excessive in relationship to the task performed, (2) hours that were redundant or duplicative because of unnecessary time spent by multiple attorneys on the same task, and (3) hours that were otherwise unnecessary or inappropriate. *See Hensley*, 461 U.S. at 434.

In making an appropriate adjustment because of the lack of billing judgment, a court is not required to set forth an hour-by-hour analysis of the fee request and may instead reduce the award on

United States District Court
For the Northern District of California

a percentage basis so long as there is a concise but clear explanation of the court's reasons for choosing a given percentage reduction. *See Gates v. Deukmejian*, 987 F.2d 1392, 1399-1400 (9th Cir. 1993). Because of the block billing by NP and the size of the fee application, an hour-by-hour analysis of the fee request in the instant case is difficult and impractical; thus, the Court shall instead reduce the award on a percentage basis. Taking into consideration the above problems, and estimating what an hour-by-hour analysis would yield, the Court concludes that a reduction of 30% is appropriate.

A smaller reduction is not appropriate given the numerous instances in which NP's attorneys failed to use billing judgment (not to mention the inordinate number of hours for each instance). It is especially telling that, from what the Court can divine, there was no attempt whatsoever by NP's lawyers to make any reduction in the hours claimed, with the limited exception of Ms. Pope's exclusion of some hours attributable to unrelated litigation. *See* 2 Schwartz & Kirklin, Section 1983 Litigation § 1983, at 174-75 (noting that "the plaintiff's elimination of a substantial number of hours from a fee application in the exercise of billing judgment tends to fortify the argument that the remaining hours were reasonably expended"). Moreover, a 30% reduction can hardly be said to be unfair to NP -- in fact, could be said to be generous to NP -- as demonstrated by the application of that percentage reduction to the examples identified above in which NP's attorneys failed to exercise billing judgment. For example, for the cross-motions for summary judgment for which NP's attorneys billed more than 600 hours, a 30% reduction would result in 420 hours, which is still a significant, indeed perhaps overly generous, number of hours for that task. For trial preparation (exclusive of specific filings) for which NP's attorneys billed more than 750 hours, a 30% reduction would result in 525 hours, which is also a substantial and possibly overly generous number of hours for that task.

On the other hand, a larger reduction is not appropriate given that this case was vigorously litigated and contested by the City, which contributed at least in part to the hours spent by both parties' counsel on this litigation.

With a 30% reduction, Ms. Pope's hours are **2,099.30** (*i.e.*, 2,999.00 x 70% = 2,099.30), and Mr. Fromm's **2,333.90** (*i.e.*, 3,334.15 x 70% ≈ 2,333.90).

3. Total Lodestar

Based on an hourly rate of $240 and 2,099.30 hours, the lodestar for Ms. Pope's fees is $503,832.

Based on an hourly rate of $225 and 2,333.90 hours, the lodestar for Mr. Fromm's fees is $525,127.50.

B. Adjustment to Lodestar

The City argues next that, after excluding certain hours from those claimed by NP's attorneys as unreasonable, the Court should adjust the lodestar to account for NP's limited success.

In *Hensley*, the Supreme Court emphasized that a crucial consideration as to whether the lodestar should be adjusted is the level of success obtained by the plaintiff. *See Hensley*, 461 U.S. at 434. If the plaintiff succeeded on some claims but not others, and the unsuccessful claims are not related to the successful claims, then the court should exclude fees related to the unsuccessful claims. *See id.* at 434-35. If the unsuccessful and successful claims are related, then the court should look at "the significance of the overall relief obtained by the plaintiff." *Id.* at 435. If the plaintiff obtained excellent results, then it should be awarded a fully compensatory attorney's fee. *See id.* If the plaintiff had only partial or limited success, then a fully compensatory fee may be excessive. *See id.* at 436. For example, a reduced fee award would be appropriate if, even though the plaintiff achieved significant relief, it was still "limited in comparison to the scope of the litigation as a whole." *Id.* at 440. If the plaintiff achieved only partial or limited success, then the court may try "to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37.

1. Unrelated Claims -- Hours Incurred Prior to July 15, 2002

In the instant case, there is no dispute that NP prevailed on only one claim – *i.e.*, the Condition 13(b) claim – out of the many that it raised in its original, amended, and supplemental complaints. Thus, based on *Hensley*, the first question for the Court is to determine whether Condition 13(b) was related to the other claims raised by NP on which it did not prevail. In *Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895 (9th Cir. 1995), the Ninth Circuit provided an extensive discussion on the issue of related versus unrelated claims.

United States District Court
For the Northern District of California

The court began by noting that, in *Hensley*, the Supreme Court indicated that "claims are unrelated if they are 'distinctly different claims for relief that are based on different facts and legal theories'" while "claims are related if they 'involve a common core of facts or [are] based on related legal theories.'" *Id.* at 902. However, these were general principles only: "*Hensley* also recognized that 'there is no certain method of determining when claims are "related" or "unrelated."'" *Id.* at 902-03. The Ninth Circuit then went on to say that, based on previous case law, the focus was "whether the unsuccessful and successful claims arose out of the same 'course of conduct.'" *Id.* at 903. If not, then the claims would be unrelated. *See id.*

The *Schwarz* court recognized that, in a few cases, it had added to the above test by asking not only whether the unsuccessful claims arose from the same core of facts as the successful claim but also whether it was likely that some of the work performed with respect to the unsuccessful claim also aided the work done on the merits of the successful claim. *See id.* However, in the most recent cases, the Ninth Circuit had applied the traditional test "without further adornment." *Id.*

Based on the above, the *Schwarz* court concluded that, in the case under consideration, the plaintiff's unsuccessful claims were not related to her sole successful claim. *See id.* First, the plaintiff's successful claim (sex discrimination) was based on a different legal theory from the unsuccessful claims (violation of the Indian Preference Act, race discrimination, and nepotism). *See id.* Second, the course of conduct as well as the relief sought "were entirely distinct and separate." *Id.* The successful claim concerned events that took place in Portland whereas the unsuccessful claims involved events that took place in Phoenix. *See id.* at 904. For similar reasons, the Ninth Circuit determined that the plaintiff's efforts expended on the unsuccessful claims did not contribute to her prevailing on the successful claim. *See id.* ("[E]xtensive discovery had been undertaken before transfer [of the case to Portland] but it didn't focus on the Portland claims, which took their form shortly before the case was transferred and viewed different people as the prime perpetrators of the wrongs alleged.").

In the instant case, the Court finds that NP's successful Condition 13(b) claim was not related to the claims on which it did not succeed. As discussed in Part I., *supra*, NP's unsuccessful claims against the City (*i.e.*, substantive due process claims and equal protection claims) were all based on

United States District Court
For the Northern District of California

the City's handling and processing of NP's development permit application – all of which took place *before* the City Council hearing on July 15, 2002, at which time the permits were finally approved. In contrast, the Condition 13(b) claim was not based on the City's handling and processing of the permit application; rather, it was based on the permits that were actually approved *on* July 15, 2002. That is, the Condition 13(b) claim did not arise until on or shortly before July 15, 2002, because Condition 13(b) did not even exist until that time; it was one of the conditions of the permits that were approved on that date. *See* Liability FF ¶¶ 9-11, 13-15, 17 (noting that Condition 13(b) was not part of condition of approvals presented to City Council on July 1, 2002; that it was part of conditions of approval presented on July 15, 2002; and that parties stipulated to the fact that NP received a copy of the conditions of approval that included Condition 13(b) on or about July 14, 2002). Because the successful Condition 13(b) claim arose out of a different course of conduct from the unsuccessful claims, the claims are unrelated. *See also* 2 Schwartz & Kirklin, Section 1983 Litigation § 6.3, at 320 (noting that claims are unrelated "[i]f the events giving rise to the litigation are divisible into distinctly different time periods").

NP tries to argue otherwise, asserting that the unsuccessful claims contributed to its prevailing on the Condition 13(b) claim in two ways: (1) because the City imposed Condition 13(b) on NP out of hostility and the way that the City handled and processed NP's development permit application was evidence that the City had previously been hostile to NP; and (2) because the City would never even have approved the permits (for which Condition 13(b) was one of the conditions) unless NP had pressed forward with its unsuccessful claims related to the City's handling and processing of the permit application. The latter argument was raised for the first time at the hearing on the motion for attorney's fees. In any event, the Court does not find either argument persuasive.

Regarding the first argument, evidence of the City's prior hostility could have had some relevance with respect to the Condition 13(b) claim but it was at best collateral evidence. If Condition 13(b) had been the only claim pursued by NP, it is highly unlikely that NP's attorneys would have expended the time that they did on events prior to July 15, 2002. Furthermore, in this case, as in *Schwarz*, the extensive work undertaken by NP's attorneys before July 15, 2002, did not focus on Condition 13(b). *See Schwarz*, 73 F.3d at 904 (noting that "extensive discovery . . .

United States District Court
For the Northern District of California

undertaken before transfer [of the case to Portland] didn't focus on the [successful] Portland claims, which took their form shortly before the case was transferred and viewed different people as the prime perpetrators of the wrongs alleged").[29] Importantly, the focus of the analysis of Condition 13(b) was whether it constituted disparate treatment (as compared to other developers) and whether there was a rational justification for it. The Court found the Condition was not objectively justified. The Court did not find the Condition was motivated by subjective hostility.

As for the second argument, what motivated the City (other than an unconstitutional motive) to approve the permit is irrelevant; the challenge here was to the legality of the Condition the City ultimately imposed. To the extent NP contends its earlier litigation effort on its unsuccessful claims led the City to approve of NP's development permit application (albeit with Condition 13(b) as a hidden "poison pill"), and which in turn led to its successful challenge to Condition 13(b), a claim for fees is based on such a causal analysis is not only remote, it is barred by *Buckhannon Board & Care Home v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001). In *Buckhannon*, the Supreme Court specifically rejected the argument that a party could be deemed a prevailing party under Section 1983 if its lawsuit served as a catalyst in bringing about a voluntary change in the defendant's conduct.

Because the successful Condition 13(b) claim is unrelated to the claims on which NP did not prevail, the Court excludes all hours expended by NP's hours prior to July 15, 2002, *i.e.*, at or about the time that Condition 13(b) first came into existence.

| **JAQUELYNN POPE** | | |
|---|---|---|
| 12/10/01 Statement | 86.3 | |
| 1/16/02 Statement | 18.5 [not 18] | |

[29] Notably, the claims based on the processing and handling of NP's development permit application were largely focused on hostility on the part of Mr. Crabtree, who appears to have no input on Condition 13(b). *See* Liability FF ¶ 16 ("Mr. Diaz inserted the phrase 'jointly and severally' [into Condition 13(b)] at the direction of Mr. Siegel of the McDonough firm, outside litigation counsel for the City."); Liability FF ¶ 88(c) ("Both Mr. Diaz and Mr. Crabtree testified credibly that Mr. Crabtree did not have anything to do with the drafting of Condition 13(b) and did not review it substantively prior to the presentations to the Planning Commission and City Council.").

| | | |
|---|---|---|
| 2/10/02 Statement | 12.3 | |
| 3/13/02 Statement | 56 [not 56.52] | |
| 4/11/02 Statement | 54.6 [not 53.6] | |
| 5/10/02 Statement | 73 | |
| 6/19/02 Statement | 54.35 [not 54.85] | |
| 7/26/02 Statement | 51.75 | |
| **TOTAL** | **406.80** | |

| **KEITH FROMM** | | |
|---|---|---|
| As of 10/31/01 | 8 | |
| As of 11/26/01 | 21.25 | |
| As of 12/18/01 | 32 | |
| As of 1/31/02 | 23.5 [not 24.5] | |
| As of 2/28/02 | 56.5 | |
| As of 3/31/02 | 111.5 | |
| As of 4/28/02 | 188.5 | |
| As of 5/7/02 | 10 | |
| As of 6/28/02 | 113.5 | |
| As of 7/8/02 | 30 | |
| **TOTAL** | **594.75** | |

Excluding the above hours, Ms. Pope is left with **1,692.50 hours** (*i.e.*, 2,099.30 – 406.80 = 1,692.50), and Mr. Fromm with **1,739.15 hours** (*i.e.*, 2,333.90 – 594.75 = 1,739.15).

2. <u>Unrelated Claims -- Hours Incurred After July 15, 2002</u>

As for hours incurred after July 15, 2002, NP's attorneys spent time working on both the Condition 13(b) claim and the unsuccessful claims. Notably, however, the Court's summary judgment ruling of June 30, 2003, made clear that the only claim that would proceed to trial was the Condition 13(b) claim. Thus, after June 30, 2003, NP's attorneys for the most part litigated only the Condition 13(b) claim, the one exception being hours incurred in May and June 2005 when NP tried

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

to resuscitate its substantive due process claims based on the Supreme Court's holding in *Lingle v. Chevron U.S.A. Inc.*, 125 S. Ct. 2074 (2005). In contrast, between July 15, 2002, and June 30, 2003, the majority of hours incurred were related to the unsuccessful claims and not Condition 13(b). The declaration of Kevin Siegel bears this out, *see, e.g.*, Siegel Decl. ¶¶ 11-21 & Exs. A-D (discussing depositions taken in spring 2003, which spent minimal time on Condition 13(b)), and NP has not provided evidence to the contrary. Indeed, the relative insignificance of Condition 13(b) to NP during this time period is reflected in NP's motion for summary judgment, which devoted less than a page to the issue of Condition 13(b).[30] *See also* Damages FF ¶ 46 ("Significantly, NP's own actions demonstrated that, for quite some time, it considered Condition 13(b) as having only a nuisance value. Until the spring of 2003 (*i.e.*, around the time summary judgment motions were filed), Condition 13(b) was not of special significance to NP. For example, NP did not do much to highlight to the City its concern over Condition 13(b) before the condition was formally imposed on August 12, 2002.").

In short, for approximately one year (from July 15, 2002, to June 30, 2003), NP's attorneys focused their efforts on the unsuccessful claims and, for approximately two years thereafter (from July 1, 2003, to the present), they focused their efforts on Condition 13(b). *See also* 2 Schwartz & Kirklin, Section 1983 Litigation § 6.3, at 320 (noting that claims are also unrelated "[i]f the several claims are litigated at distinctly separate stages of the suit").

[30] Similarly, in his declaration in support of NP's motion for summary judgment, Mr. Fromm spent only 6 out of 65 pages on Condition 13(b). Mr. Fromm's declaration also demonstrates that there was very limited discovery on Condition 13(b). *See, e.g.*, Fromm Decl. ISO NP's Mot. for Summary Judgment ¶¶ 178-84 (discussing two projects approved by the City that did not contain any condition like Condition 13(b); the deposition of Ms. Carr, who testified that she had never heard of a condition like Condition 13(b); and the deposition of Mr. Diaz, who testified that he had generated Condition 13(b) with the input of counsel).

a. Hours Incurred Between Approximately July 15, 2002, and June 30, 2003

Given the above situation, the Court excludes 75% of the hours spent by NP's attorneys between approximately July 15, 2002, and June 30, 2003, to account for time spent on unrelated claims as opposed to the Condition 13(b) claim. *See Schwarz*, 73 F.3d at 904 (providing that a district court may take a percentage reduction to account for work spent on unsuccessful claims). Arguably, the Court could take a higher percentage reduction given the relative unimportance of Condition 13(b) to NP (playing virtually no express role relative to the other claims) until the Court's ruling denying the City summary judgment on the Condition 13(b) claim. However, the Court concludes that 75% is an appropriate percentage reduction since the condition was significant enough for NP to take some (albeit limited) discovery that ultimately could have had some relevance to the Condition 13(b) claim and that was included in its motion for summary judgment.

| **JAQUELYNN POPE** | | |
|---|---|---|
| 8/20/02 Statement | 74.7 | |
| 9/12/02 Statement | 108.00 [not 109.00] | |
| 10/11/02 Statement | 40.00 | |
| 12/10/02 Statement | 43.50 | |
| 5/1/03 Statement | 290.00 | |
| 6/1/03 Statement | 251.50 | |
| 8/2/03 Statement [from 6/2/03 to 6/30/03] | 70.50 | |
| **TOTAL** | **878.20** | |
| | **878.20 x 75% ≈658.70** | |

| **KEITH FROMM** | | |
|---|---|---|
| As of 7/31/02 [from 7/11/02 to 7/31/02] | 85.00 | |
| As of 8/30/02 | 131.50 [not 132.00] | |
| As of 9/26/02 | 40.00 | |
| As of 10/30/02 | 58.50 | |
| As of 11/22/02 | 32.00 | |



United States District Court
For the Northern District of California

| | | |
|---|---|---|
| As of 12/4/02 | 1.00 | |
| As of 2/25/03 | 20.50 | |
| As of 3/31/03 | 125.00 [not 127.00] | |
| As of 4/29/03 | 288.00 [not 290.00] | |
| As of 5/31/03 | 263.00 [not 267.50] | |
| As of 6/16/03 | 71.00 | |
| **TOTAL** | **1,115.50** | |
| | **1,115.50 x 75% ≈ 836.60** | |

b. Hours Incurred After June 30, 2003

As for hours spent by NP's attorney's after June 30, 2003, the Court shall count all hours except for those related to the substantive due process claim that NP tried to resuscitate based on *Chevron*. Those hours are as follows.

| **JAQUELYNN POPE** | | | |
|---|---|---|---|
| **DATE** | **HOURS** | **FEES** | **DESCRIPTION** |
| 5/23/05 | 1.00 | | Review Chevron case |
| 5/26/05 | 8.00 | | LR re Chevron; substantive due proces; prep. applicatoin [sic] to extend time to appeal |
| 5/28/05 | 3.00 | | LR re procedure; remand from 9th Cir. etc. |
| 6/1/05 | 6.00 | | Draft application for indication re Chev[r]on issue |
| 6/2/05 | 2.00 | | Draft App. re Chevron; LR re remand |
| 6/3/05 | 2.50 | | Prep for and conference call w/Judge Chen |
| 6/12/05 | 6.00 | | Prep Brief Why Court Should Hear Chevron Issue |

| | | | |
|---|---|---|---|
| 6/14/05 | 1.00 | | Receipt & review City's brief on Chevron issue |
| 8/6/05 | 1.50 | | Receipt and review of Court's order declining indication; review file |
| **TOTAL** | **31.00** | | |

| **KEITH FROMM** | | | |
|---|---|---|---|
| **DATE** | **HOURS** | **FEES** | **DESCRIPTION** |
| 5/31/05 | 1.50 | | Reviewed cases re: Armendariz and whether overturned by Chevron case |
| 6/1/05 | 1.00 [counting only 0.80] | | Reviewed and revised Request for Indication of Interest in 60(b) Motion to Judge Chen. Teleconference with J. Pope |
| 6/3/05 | 1.00 | | *Telephone conference with J. Chen, J. Pope and Pat McMahon* |
| 6/3/05 | 1.00 | | *Memos to Kalmbach and Johnson re: conference and settlement issues* |
| 6/12/05 | 2.00 | | Reviewed and revised brief on 60(b) motion |
| 6/13/05 | 1.00 | | Revised brief re: 60(b) motion |
| **TOTAL** | **7.30** | | |

c. Summary

Excluding the above hours, Ms. Pope is left with **1,002.80 hours** (*i.e.*, 1,692.50 – 658.70 – 31.00 = 1,064.80), and Mr. Fromm with **895.25 hours** (*i.e.*, 1,739.15 – 836.60 – 7.30 = 895.25). In calculating the adjusted lodestar, the Court arrives to the following conclusion:



United States District Court
For the Northern District of California

1,002.80 x $240 = $240,672.00 for Ms. Pope.

895.25 x $225 = $201,431.25 for Mr. Fromm.

Total = $442,103.25

3. Limited Success on Condition 13(b) Claim

Finally, the City argues that there should be a reduction in the hours claimed by NP because of its limited success on the Condition 13(b) claim, the one claim upon which it did prevail. The City points out that NP was awarded damages in the amount of $156,741.19 (including prejudgment interest but exclusive of attorney's fees). *See* Docket No. 493. Without prejudgment interest, the damages would have been approximately $124,000. *See* Opp'n at 14. According to the City, this must be considered limited success because NP had sought damages in the amount of $10.1 to $16.3 million (exclusive of both attorney's fees and prejudgment interest): "NP was awarded only "1.23% of the damages it sought under its temporary takings analysis and only .76% of the damages NP sought under its permanent takings analysis." Opp'n at 14.

As a preliminary matter, the Court acknowledges that NP sought only monetary damages for the constitutional violation by the City and that the small damages awarded compared to the amount sought arguably is relevant to the level of success achieved by NP. *See McGinnis v. Kentucky Fried Chick of Cal.*, 51 F.3d 805, 810 (9th Cir. 1994) (emphasizing that, "[w]here the relief sought and obtained is limited to money, the terms 'extent of success' and 'level of success' are euphemistic ways of referring to money"). But the award of $124,000 can hardly be said to be nominal damages.

Moreover, the Supreme Court has emphasized that fee awards need not "be proportionate to the amount of damages a civil rights plaintiff actually recovers." *City of Riverside v. Rivera*, 477 U.S. 561, 564-65 (1986) (plurality opinion). In *Riverside*, the Supreme Court affirmed a fee award of approximately $245,456.25 even though the actual damages award was only $33,350. In other words, the fee award was approximately seven times greater than the damages award. Therefore, the City's reliance on *McGinnis*, in which the Ninth Circuit stated that "no reasonable person would pay lawyers $148,000 to win $34,000" (and therefore directed the district court to reduce the fee award "so that it is commensurate with the extent of the plaintiff's success"), is not dispositive. *Id.*; *see also Corder v. Brown*, 25 F.3d 833, 837 (9th Cir. 1994) ( instructing district court to recalculate fee



United States District Court
For the Northern District of California

award, taking into consideration (1) the fact that the amount of damages awarded as compared to the amount of damages sought was minimal -- *i.e.*, $24,006 compared to $1 million -- and (2) the fact that the number of defendants found liable as compared to the number of defendants sued was insignificant -- *i.e.*, 3 defendants out of the 45 named in the complaint).

The only fact that gives the Court some pause is that NP sought with this case a permanent taking but the Court concluded that there had been in the end only a temporary taking. In *Hensley*, the Supreme Court discussed an Eighth Circuit case in which a fired schoolteacher sought reinstatement, lost wages, $25,000 in damages, and expungement of derogatory material from her employment record. *See Hensley*, 461 U.S. at 440 n.14. The schoolteacher recovered her lost wages and the requested expungement but not the reinstatement or damages. *See id.* The Supreme Court noted that the schoolteacher "had lost on the major issue of reinstatement" and so "obtained only a minor part of the relief she sought." *Id.* (internal quotation marks omitted). Consequently, it was within the trial court's decision to have made a limited fee award in light of the minor relief obtained. *See id.* Given this analysis in *Hensley*, one could argue that NP obtained only a minor part of the relief sought – *i.e.*, a temporary taking instead of a permanent taking – which would justify a downward adjustment to the lodestar.

However, a further reduction in the fee award is not appropriate on this basis. The gravamen of the complaint was the unconstitutional imposition of an unreasonable condition. NP proved the claim and obtained more than nominal monetary relief. The issue of permanent versus temporary takings pertained to the measure of damages not the type of relief sought as in the Eighth Circuit case.

Finally, the Court has already substantially reduced the lodestar. The adjusted lodestar of $442,103.25 is not disproportionate to the $124,000 in damages obtained.

C. Work on Fee Application

A § 1983 plaintiff may recover attorney's fees for time reasonably spent in pursuing a motion for attorney's fees. However, "[f]ee petition litigation should be treated as a 'separate entity subject to lodestar and *Hensley* reduction analysis.'" *Rode v. Dellarciprette*, 892 F.2d 1177, 1192 (3d Cir. 1990); *see also Public Interest Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1190 (3d Cir. 1995)



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

(holding that request for fees-on-fees award should be analyzed separately from the request for fees for the merits litigation).

The Court addresses first what is the proper lodestar. In terms of a reasonable hourly rate, the Court finds that the rates used for the merits litigation are appropriate (*i.e.*, hourly rates of $240 for Ms. Pope and $225 for Mr. Fromm).

As for a reasonable number of hours, based on the Court's review of the billing records, Ms. Pope spent the following hours on the fee application (including the bill of costs).

| **JAQUELYNN POPE** | | | |
|---|---|---|---|
| **DATE** | **HOURS** | **FEES** | **DESCRIPTION** |
| 5/10/05 | 6.00 | | LR Attorney Fees; review files |
| 5/11/05 | 7.00 | | LR attorney fees; review files; etc. |
| 5/16/05 | 4.00 | | Prep. attorney fees motion |
| 5/17/05 | 6.00 | | Prep. attorney fees, review fees |
| 5/18/05 | 8.00 | | LR attorney fees; prep atty fees |
| 5/19/05 | 2.50 | | LR atty fees |
| 5/20/05 | 6.00 | | Review costs |
| 8/9/05 | 1.00 | | Stipulation and order to extend time to file attorneys fees |
| 9/1/05 | 3.00 | | Prepare declarations re attorneys fees; etc. |
| 9/4/05 | 6.50 | | Prepare points and authorities re attorneys' fees |
| 9/5/05 | 9.00 | | Prep. P&A's; memorandum of costs |
| **TOTAL** | **59.00** | | |

In her reply declaration, Ms. Pope claims to have spent an additional 71.50 hours preparing the reply brief and other papers such as the motion to strike the Schratz declaration. *See* Pope Reply Decl. ¶ 51. Further, Ms. Pope asserts that she anticipates spending 24.00 more hours on reviewing the City's opposition to NP's motion to strike and preparing for, traveling to, and attending the hearing on the motion for attorney's fees. *See id.* Ms. Pope, however, provides no evidence such as contemporaneous billing records to support the claim for the additional 71.50 hours. Moreover, she provides no explanation as to how she determined that 24.00 more hours constituted a reasonable amount of time to review the City's opposition to the motion to strike and to prepare for, travel to, and attend the hearing. The Court, therefore, shall not award any of these fees, especially when NP was specifically warned that all briefing and accompanying submissions related to the motion for fees had to be provided by October 31, 2005. *See* Docket No. 551.

| KEITH FROMM | | | |
|---|---|---|---|
| **DATE** | **HOURS** | **FEES** | **DESCRIPTION** |
| 5/16/05 | 6.00 | | Prepared attorneys' fees motion and back up documentation |
| 5/17/05 | 4.00 | | Prepared Attorneys' fees motion and backup documentation |
| 5/18/05 | 8.00 | | Prepared Attorneys' fees motion and back up documentation |
| 5/24/05 | 3.50 | | Prepared motion for legal fees |
| 9/6/05 | 7.00 | | Prepared and revised Motion for Attorneys Fees |
| 9/7/05 | 10.00 | | Prepared and revised Motion for Attorneys fees, declarations etc. |
| **TOTAL** | **38.50** | | |

United States District Court
For the Northern District of California

NP does not appear to make any claim for fees based on hours spent by Mr. Fromm on the reply brief and supporting declarations. Mr. Fromm's reply declaration also does not provide any accounting of hours.

Thus, *excluding* the hours claimed by Ms. Pope in her reply declaration, NP seeks 97.50 hours for time spent on the fee application -- *i.e.*, on the opening brief and supporting declarations only. The Court finds that this number of hours is excessive. The opening brief was only 15 pages and the declarations in support of the opening brief were only a few pages in length each. Moreover, it should not have taken a significant amount of time for NP's attorneys to print out their contemporaneous billing records, assemble them, and calculate the total number of hours. The Court finds that, under the circumstances, it should have taken no longer than 50.00 hours total to prepare the opening brief and supporting declarations. The Court shall therefore exclude 28.50 hours from Ms. Pope's time and 19.00 hours from Mr. Fromm's time (for a total of 47.50 hours), in rough proportion to their time spent on the task. This leaves Ms. Pope with 30.50 hours (*i.e.*, 59.00 – 28.50 = 30.50) and Mr. Fromm with 19.50 hours (*i.e.*, 38.50 – 19.00 = 19.50). The lodestar for the fee application is thus $11,707.50 ($7,320 for Ms. Pope and $4,387.50 for Mr. Fromm).

Having determined the lodestar, the Court now turns to whether there should be an adjustment to the lodestar under *Hensley*. *See Schwarz*, 73 F.3d at 909 (observing that fees-on-fees award must be adjusted to reflect partial success on underlying fee motion); *In re Burlington Northern, Inc.*, 832 F.2d 430, 434 (7th Cir. 1987) (holding that *Hensley* applies to a fees-on-fees award). While NP did seek some $1.9 million in fees related to substantive work on the case but receives only $442,103.25 in fees for the merits, the adjusted lodestar for fees work -- $11,707.50 -- is reasonable in light of the substantial fees obtained by virtue of the fee motion.

D. <u>Costs</u>

Finally, regarding costs, the Court notes that certain litigation expenses may be recovered as statutory costs pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920. *See also* Civ. L.R. 54-3 (providing more details about recoverable statutory costs). Other litigation expenses, however, are recoverable as part of attorney's fees. Section 1988 has been interpreted by courts to authorize the recovery of litigation expenses that exceed or are not included within statutory costs

pursuant to § 1920. *See* 2 Schwartz & Kirklin, Section 1983 Litigation § 8.8, at 417-18. The Fourth Circuit has stated that the difference between the scope of costs taxable under Rule 54(d)/§ 1920 and under § 1988

> is due to the fact that "these two bodies of law . . . are grounded in antithetical policies." Rule 54(d) and § 1920 are premised on the traditional "American Rule" that each party to a lawsuit bear its own costs. Section 1988 was intended as an exception to the American Rule and is premised on the idea of fee shifting. Because meritorious civil rights plaintiffs are "private attorney generals" enforcing important congressional policies, § 1988 is intended to encourage them to bring suit by shifting the costs of litigation to defendants who have been found to be wrongdoers.

*Daly v. Hill*, 790 F.2d 1071, 1083 (4th Cir. 1986).

NP has filed a bill of costs (amended on October 3, 2005, *see* Docket No. 539) pursuant to Rule 54(d) and § 1920. In addition, in its motion for attorney's fees, NP also seeks compensation for certain litigation expenses as part of her attorney's fees. It appears that NP's fee motion includes at least some of the litigation expenses itemized on its amended bill of costs -- *i.e.*, there is some duplication. Accordingly, the Court hereby orders the parties to proceed as follows.

First, the Court shall not in the first instance rule on the bill of costs but rather shall direct the Clerk of the Court to tax costs pursuant to Rule 54(d) and § 1920. *See* 10-54 Moore's Fed. Prac. -- Civ. § 54.100[3] ("The initial responsibility for the taxing of costs is placed upon the clerk of the district court."). Once the Clerk of the Court tax costs, then either party may -- pursuant to Rule 54(d) -- ask that the decision be reviewed by the Court. Although Rule 54(d) provides that judicial review of the clerk's action may be obtained by serving a motion within five days of the Clerk's action, the Court shall modify the time schedule as follows: Each party shall have seven court days (upon receipt of the Clerk's decision) to file a motion asking for judicial review of the Clerk's action, after which the opposing party shall have seven court days to file an opposition. There shall be no reply brief.

In the meantime, to the extent NP seeks costs *beyond* the statutory costs permitted by Rule 54(d) and § 1920 -- *i.e.*, additional costs permitted under § 1988 -- the Court shall allow NP to file a motion asking for such costs. *In this motion, NP shall not ask for any costs already covered in its*

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

*bill of costs in order to avoid duplication.* NP shall file such a motion by January 4, 2006; the City an opposition by January 11, 2006; and NP a reply by January 18, 2006.

The Court acknowledges that the parties have already made some arguments regarding costs in their briefing on the motion for attorney's fees but concludes that the above approach makes the most sense to ensure that there is no duplication of a cost award. The Court also notes that NP will *not* be entitled to fees for this additional work on costs under § 1988 because NP should have properly submitted a request for costs as part of attorney's fees that was *not* duplicative of its bill of costs. In other words, the confusion here is one of NP's making and therefore NP will not be rewarded for its inefficiency.

## III. CONCLUSION

In sum, NP is entitled to $442,103.25 in fees on the merits portion of this case, and $11,707.50 in fees for the fees work herein.

This order disposes of Docket No. 528.

IT IS SO ORDERED.

Dated: December 16, 2005

EDWARD M. CHEN
United States Magistrate Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

North Pacifica LLC,

Plaintiff,

v.

City of Pacifica et al,

Defendant.
_______________________________________/

Case Number: CV01-04823 EMC

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 16, 2005, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Amy DeVaudreuil
Goldfarb & Lipman LLP
1300 Clay Street, Ninth Floor
City Center Plaza
Oakland, CA 94612

Benjamin Louis Stock
McDonough Holland & Allen PC
1901 Harrison Street
9th Floor
Oakland, CA 94612

Cecilia Quick
City of Attorney City of Pacifica
170 Santa Maria Avenue
Pacifica, CA 94044

James T. Diamond
Goldfarb & Lipman LLP
1300 Clay Street
Ninth Floor
City Center Plaza
Oakland, CA 94612

Jaquelynn C. Pope
Warshaw & Pope
934 Hermosa Avenue
Suite 14
Hermosa Beach, CA 90254

Joel Samuel Jacobs
California Attorney General's Office
1515 Clay Street
Suite 2000
Oakland, CA 94612-0550

Keith Mitchell Fromm
KEITH FROMM, ATTORNEY
914 Westwood Boulevard
Suite 500
Los Angeles, CA 90024

Kevin Drake Siegel
McDonough Holland & Allen PC
1901 Harrison Street
9th Floor
Oakland, CA 94612

Lee Charles Rosenthal
Goldfarb & Lipman LLP
1300 Clay Street, Ninth Floor
City Center Plaza
Oakland, CA 94612

Mark D. Warshaw
Warshaw & Pope
934 Hermosa Avenue
Suite 14
Hermosa Beach, CA 9054

Mark L. Armstrong
Gagen McCoy McMahon & Armstrong
279 Front Street
P.O. Box 218
Danville, CA 94526-0218

Megan Holt Matthew
McDonough Holland & Allen PC
1901 Harrison Street
9th Floor
Oakland, CA 94612

Michelle Marchetta Kenyon F
McDonough Holland & Allen PC
1901 Harrison Street
9th Floor
Oakland, CA 94612

Natalie Elsa West
McDonough Holland & Allen PC
1901 Harrison Street
9th Floor
Oakland, CA 94612

Patrick Joseph McMahon
Gagen McCoy McMahon & Armstrong
279 Front Street
P.O. Box 218
Danville, CA 94526-0218

Dated: December 16, 2005

RICHARD W. WIEKING, CLERK

By: **LENI DOYLE**
Leni Doyle, Deputy Clerk