# EXHIBIT 4

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/26/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA *et al. ex rel.* JOHN MILLER,

Plaintiffs,

-v-

CARECORE NATIONAL, LLC *et al.*,

Defendants.

No. 13-cv-1177 (RJS)
ORDER AND JUDGMENT

RICHARD J. SULLIVAN, District Judge:

In 2013, Relator John Miller ("Relator") brought this case under the False Claims Act, alleging that Defendants engaged in medical billing practices that defrauded the federal government and several states. On April 21, 2017, the United States intervened in this action, filed a complaint, and entered into a stipulation of settlement and dismissal with Defendant CareCore National LLC ("CareCore" or "Defendant"). (Doc. Nos. 14–16.) As part of the stipulation of settlement, Relator agreed to release CareCore from "any and all manner of claims, proceedings, liens, and causes of action of any kind or description that . . . Relator has against CareCore related to or arising from . . . Relator's allegations; provided, however, that nothing in this Stipulation shall preclude Relator from seeking to recover his reasonable expenses and attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d)." (Doc. No. 16 at ¶ 8.) The United States also entered into a separate stipulation of settlement with Relator pursuant to 31 U.S.C. § 3730(d)(1), in which the government agreed to pay him "$9,000,000 plus applicable interest." (Doc. No. 17 at ¶ 1.) The Court subsequently approved that stipulation of settlement pursuant to 31 U.S.C. § 3730(d)(1),

finding that "Relator's assistance went well beyond the bare minimum required and that a share amount of $9 million, just under 20 percent, is appropriate." (Doc. No. 23.)[1]

Now before the Court is Relator's motion for attorneys' fees, costs, and expenses. (Doc. No. 50.) Relator requests that he be awarded a total of $2,319,023.30, including: $1,505,059.50 in legal fees incurred by Seeger Weiss LLP ("Seeger Weiss"); $787,966.00 in legal fees incurred by Milberg Tadler Phillips Grossman LLP ("Milberg"); and $25,997.80 in costs incurred by both law firms. (Doc. Nos. 51, 62–63.) For the reasons set forth below, Relator's motion for attorneys' fees, costs, and expenses is GRANTED, but the Court reduces Relator's attorneys' fees by 40%.

The False Claims Act provides that successful qui tam plaintiffs "*shall* . . . receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs *shall* be awarded against the defendant." 31 U.S.C. § 3730(d)(1) (emphasis added). Relator is therefore entitled to recover his reasonable attorneys' costs, fees, and expenses spent pursuing this action against CareCore.

A district court has "considerable discretion" in determining what amount of attorneys' fees is reasonable. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). However, the Second Circuit has recognized that the lodestar method results in a "presumptively reasonable fee." *Id.* at 183. Under the lodestar method, a court must first set a "reasonable hourly rate" for each attorney, keeping in mind all case-specific variables. *Id.* at 184. "[C]ourts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal

[1] On June 20, 2017, Relator and the remaining Plaintiff States entered into a stipulation of partial dismissal, in which Relator dismissed with prejudice all remaining claims against CareCore. (Doc. No. 40.) Relator again "expressly reserve[d] its claims against Defendant CareCore for reasonable attorneys' fees, costs, and expenses spent successfully pursuing this matter . . . ." (*Id.*)

quotations omitted). Second, the court must determine the number of hours reasonably expended. *Arbor Hill*, 522 F.3d at 186. And third, the court must multiply the reasonable hourly rate by the number of hours reasonably expended to determine the "presumptively reasonable fee." *See Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

Nevertheless, while the lodestar calculation results in a presumptively reasonable fee, "attorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1139 (2d Cir. 1983) (internal citations omitted). "It is Plaintiff's burden to demonstrate satisfactory evidence that the costs requested are reasonable." *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09-cv-7830 (RJS), 2012 WL 5177491, at *2 (S.D.N.Y. Oct. 19, 2012), *aff'd*, 533 F. App'x 1 (2d Cir. 2013).

Here, Defendant does not contest the hourly rates charged by Relator's attorneys. (Doc. No. 56 at 1.) Nor does Defendant challenge the reasonableness of Relator's attorneys' costs and expenses. Rather, Defendant argues that the number of hours expended by Relator's attorneys was "patently unreasonable" for two reasons. First, Defendant contends that Relator's attorneys spent an "excessive" number of hours on certain tasks. And second, Defendant asserts that Relator's attorneys "employed certain timekeeping practices" – specifically, block billing, billing in quarter-hour increments, and entering "vague" descriptions in time entries – "which prevent meaningful evaluation of the time that was actually spent on specific tasks."[2] (*Id.* at 2.) To support its

[2] Defendant also states in a footnote that "CareCore is being asked to pay Relator's attorneys' fees to develop the facts and theories as to [a number of different health plan defendants that Plaintiff ultimately declined to pursue], without apportionment." (Doc. No. 56 at 6 n.2.) However, Defendant does not appear to object to Relator's lodestar figure on this basis, and the Court therefore does not address whether a defendant is required to pay attorneys' fees for claims against other defendants dismissed or withdrawn but "pursued in good faith." *Green v. Torres*, 361 F.3d 96, 100 (2d Cir. 2004). *Cf. Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("A contention is not sufficiently presented for appeal if it is conclusorily asserted only in a footnote.")

arguments, Defendant retained James P. Schratz, who conducted an audit of the attorneys' fees sought by Relator. (Doc. No. 57.)

The Court first turns to Defendant's assertion that Relator spent an excessive number of hours on specific tasks. According to Mr. Schratz, Relator's counsel spent "an unreasonable amount of time": (1) "on tasks relating to, including, or involving the drafting of the Complaint [742.4 hours]"; (2) "attributable to intra-office conferencing [1,177.5 hours]"; (3) "on research [763.6 hours]"; and (4) "on document review [746.8 hours]." (Doc. No. 56 at 5, 7–10.) Relator correctly points out that Mr. Schratz "redundantly included Relator's counsel's time entries in multiple categories" (Doc. No. 61) when calculating some of the hours that Relators' attorneys spent on each category of task, essentially double- or triple-counting hundreds of hours. (*See* Doc. Nos. 62-2, 63-2.) Nevertheless, the Court agrees with Defendant that Relator's attorneys spent an unreasonable amount of time on many of these tasks. For example, while the Court recognizes that attorneys can sometimes "bill for speaking to one another, especially in a case as complex as this one" (Doc. No. 61 at 5), Relator's attorneys took this to the extreme, billing at least 690 hours[3] for interoffice conferencing, constituting at least fifteen percent of the time billed in the overall matter.

Even more problematic is the fact that many of the time records prepared by Relator's attorneys in this matter are extremely vague. *See Matteo*, 2012 WL 5177491, at *4 ("Courts look unfavorably on block billing and vagueness in billing because imprecise entries limit courts' ability to decipher whether the time expended has been reasonable."). For example, a Milberg partner billed seven and a half hours over two days under the cryptic description "vetting possible case,"

[3] Although Mr. Schratz estimates that Relator's attorneys billed 1,177.5 hours attributable to intra-office conferencing, Relator asserts that Mr. Schratz inflated Seeger Weiss's intra-office conferencing time by 219.60 hours (Doc. No. 62 at ¶ 7) and Milberg's intra-office conferencing time by 264.25 hours (Doc. No. 61 at 5). But even crediting Relator's deductions, Relator's attorneys spent nearly 700 hours on intra-office conferencing.

while another Milberg partner billed nearly 50 hours in less than a month for generic "document review." (Doc. No. 63-1.) Similarly, an associate at Seeger Weiss billed over 100 hours in one month under the generic description "research." (Doc. No. 62-1.) The timekeeping records from both firms are littered with examples such as these, and Seeger Weiss's practice of block billing only exacerbates this problem, regardless of whether Mr. Weiss has "used block billed descriptions for [his] time submissions throughout [his] entire 27-year career[.]" (Doc. No. 62 at 3.) *See, e.g.*, *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003) (reducing attorneys' fees by fifteen percent where "the substantial amount of block billing in the fee requests render[ed] it difficult to determine whether, and/or the extent to which, the work done by Buyers's attorneys is duplicative or unnecessary."); *Erickson Productions, Inc. v. Only Websites, Inc.*, No. 12-cv-1693 (PGG) (KNF), 2016 WL 1337277, at *4 (S.D.N.Y. Mar. 31, 2016) (applying a "40% across-the-board reduction in Plaintiffs' requested attorneys' fees" where "Plaintiffs' vague entries and use of block-billing impede[d] the Court's ability to make a meaningful review of the reasonableness of the work performed and the hours claimed.") (internal quotations omitted).

Relator's attorneys' vague time entries and block billing practices also make it nearly impossible for the Court to compare different time entries to determine whether they are internally consistent. For example, on May 14, 2013, a Seeger Weiss attorney billed nine hours for a telephone conference with three other attorneys on the case and "further research." (Doc. No. 62-1.) However, the latter three attorneys listed in the time entry billed .8 hours, .5 hours, and 1.5 hours, respectively, for that same conference call. (Doc. Nos. 62-1, 63-1.) Perhaps the attorneys spent differing amounts of time on the call and then, after the conclusion of the call, the first Seeger Weiss attorney billed a large number of hours for "further research." However, it is impossible to

Case 1:15-cv-01177-RJS Document 67 Filed 03/26/18 Page 6 of 7

know for certain what occurred, and therefore impossible for the Court to decipher whether the time expended by the attorneys was reasonable.

Milberg's practice of billing time in quarter-hour increments makes it even more difficult for the Court to assess the reasonableness of their lodestar figure. *See*, *e.g.*, *Spalluto v. Trump Int'l Hotel & Tower*, No. 04-cv-7497 (RJS) (HBP), 2008 WL 4525372, at *10 (S.D.N.Y. Oct. 2, 2008) (reducing an attorney's lodestar amount by 75% in part because "the inability to assess the reasonableness of [the attorney's] hours [was] compounded by the fact that the smallest increment [the attorney] used to bill his time was one-quarter of an hour."). And even though Milberg changed its billing policy in 2015 to record time in .10 hour increments and "revised downward to the nearest .10 hour" any "time entries that had been recorded in .25 hour increments prior to 2015" (Doc. No. 63 at 3), it still appears that Milberg's hours are inflated. Indeed, Milberg's time records are filled with entries that bill exactly .20 hours for numerous short tasks, often emailing or calling other attorneys at Milberg or Seeger Weiss, that could have taken fewer than six minutes. Under Milberg's "rounding down" methodology, even tasks that took less than a minute will still appear as .20 hours. Similarly, any task that took between fifteen minutes and a half hour will appear as .50 hours. While it is true that in some cases Milberg likely deflated its hours by as much as three minutes when it revised its time entries downward to the nearest tenth of an hour, Milberg's methodology likely causes many more hours to be inflated than deflated.

"[I]n dealing with . . . surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal quotations omitted); *see also Matteo*, 2012 WL 5177491, at *2 ("Where time entries submitted by the party seeking fees reflect excessive billing, the Court can reduce the rate or hours claimed, or it may

Case 1:15-cv-01177-RJS Document 67 Filed 03/26/18 Page 7 of 7

order an across-the-board percentage reduction to achieve a reasonable award."). In this case, given the significant deficiencies in Relator's attorneys' time records, the Court deems it appropriate to reduce Relator's lodestar attorneys' fees figure by 40%, yielding a total of $1,375,815.30 in attorneys' fees.[4] The Court notes that this figure is fairly close to Defendant's attorneys' lodestar amount of $1,362,995. (Doc. No. 56 at 18.) *See, e.g.*, *James v. Nat'l R.R. Passenger Corp.*, No. 02-cv-3915 (RJH), 2005 WL 6182322, at *14 (S.D.N.Y. Mar. 28, 2005) ("Although by no means a perfect proxy, the time billed by defendant's counsel is certainly a rough measure of what was 'reasonable' in this case[.]").

Accordingly, IT IS HERBY ORDERED THAT Relator's motion for attorneys' fees, costs, and expenses is GRANTED. The Clerk of Court is respectfully directed to enter judgment in favor of Relator and against Defendant CareCore in the amount of $1,375,815.30 for Relator's reasonable attorneys' fees – $903,035.70 for Seeger Weiss's attorneys' fees and $472,779.60 for Milberg's attorneys' fees – and another $25,997.80 for Relator's attorneys' costs and expenses, for a total of $1,401,813.10. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 50 and to close this case.

SO ORDERED.

Dated: March 26, 2018
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

---

[4] The Court notes that the deficiencies of Seeger Weiss's time records differ, in some respects, from the deficiencies of Milberg's. Specifically, block billing was more prevalent in Seeger Weiss's time records while billing in quarter-hour increments was unique to Milberg. Nevertheless, the Court finds that both firms provided inadequate records and that a 40% reduction in attorneys' fees is equally appropriate for both firms.