# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT COURT OF CALIFORNIA

JEAN GAUCHAT-HARGIS,

Plaintiff, No. 2:11-cv-02737-KJM-EFB

vs.

FOREST RIVER, INC.; TIMOTHY DE MARTINI,

Defendants. ORDER

__________________________________/

This matter is before the court on plaintiff's motion for attorneys' fees and costs under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2). The parties have reached settlement on all other aspects of this case. For the reasons below, plaintiff's motion is granted in part and denied in part.

I. BRIEF FACTUAL BACKGROUND

Plaintiff purchased a 2010 Forest River motor home from De Martini RV Sales in early 2010 for $169,784.71, receiving a $20,000 trade-in value and rolling over $68,159.72 in negative equity from her previous motor home. (Mot. Att'ys' Fees at 8, ECF 48.) Shortly thereafter, plaintiff began experiencing problems with the motor home and sought repairs under her warranty. (ECF 48 at 9.) In June 2011, after continued problems, she contacted the manufacturer for a refund but her request was denied. (ECF 48 at 9.) She later retained

counsel and filed a complaint in this District in October 2011, seeking compensation under the Magnuson-Moss Warranty Act. (ECF 48 at 10.) A major controversy arose over whether plaintiff's use of the vehicle for purposes of transporting show dogs made the vehicle's warranty inapplicable. (ECF 48 at 10 n.1.)

After extended attempts at dispute resolution, the parties reached settlement on all aspects of the case in January 2013. (Kemnitzer Decl., Ex. A at 2, ECF 50-1 ("Settlement Agreement").) Defendants agreed to pay off the outstanding balance of plaintiff's loan on the motor home, in exchange for her surrendering the vehicle in saleable condition. (Settlement Agreement at 5.[1]) As part of the settlement, the parties agreed that plaintiff is the prevailing party for purposes of the Magnuson-Moss Warranty Act and that defendant Forest River would be responsible for plaintiff's attorneys' fees. (Settlement Agreement at 3-4.) On April 16, 2013, plaintiff filed a motion for attorneys' fees and costs requesting $213,895.21. (ECF 48.) On May 23, 2013, defendant Forest River filed an opposition, arguing that such an award would be excessive and requesting either that no award be granted or that it be in the range of $38,443.78 to $42,828.78. (Def.'s Opp'n, ECF 54 at 6.)

## II. STANDARD

The Magnuson-Moss Warranty Act permits a prevailing consumer to recover reasonable attorneys' fees and costs. 15 U.S.C. § 2310(d)(2).[2] As part of their settlement, the parties agreed that plaintiff is the prevailing party for purposes of this fee-shifting provision. (Settlement Agreement at 4.) The Ninth Circuit uses the lodestar method for determining reasonable attorneys' fee. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

---

[1] Page cites are to those assigned by the court's CM/ECF system.

[2] This subsection provides in full: "If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate."

This method for calculating fees is "generally applicable to all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley v. Eckhart*, 461 U.S. 424, 433 n.7 (1983). In calculating an attorneys' fee award using the lodestar method, a court must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation. *Id.* A court may then adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Reasonable costs and expenses incurred during the course of the litigation may also be recovered. 15 U.S.C. § 2310(d)(2).

## III. ANALYSIS

### A. Attorneys' Fees

#### 1. Number of Hours

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). To determine the number of compensable hours, the court must consider "whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Id.* Hours that are not reasonably expended, because they are "excessive, redundant, or unnecessary," should be excluded from the lodestar. *Van Gerwen*, 214 F.3d at 1045 (internal quotation marks and citation omitted). Time spent on the fee request itself may be included in the lodestar calculation. *Comm'r, INS v. Jean*, 496 U.S. 154, 162 (1990).

Plaintiff requests that the lodestar be calculated based on the following record of hours spent on this case:

/////

/////

/////

/////

/////

| **Timekeeper** | **Hours Spent** |
| --- | --- |
| Bryan Kemnitzer (Partner) | 92.8 |
| Nancy Barron (Partner) | 11.9 |
| Jade Jurdi (Associate) | 61.9 |
| Kristin Kemnitzer (Associate) | 127.5 |
| Sean Barry (Paralegal) | 44.7 |
| Total: | 338.8[3] |

Defendant objects to numerous billing entries by plaintiff's law firm, and requests the fee award be reduced to the following amounts:

| **Timekeeper** | **Hours Spent** |
| --- | --- |
| Bryan Kemnitzer (Partner) | 45.3 |
| Nancy Barron (Partner) | 0.0 |
| Jade Jurdi (Associate) | 28.8 |
| Kristin Kemnitzer (Associate) | 43.4 |
| Sean Barry (Paralegal) | 12.3 |
| Total: | 129.8[4] |

[3] This table combines the initial hours requested (Kemnitzer Decl., ECF 50 at 3) with the hours requested for additional time spent on the fee request (Kemnitzer Reply Decl., Ex. A, ECF 57 at 10), with a reduction of 0.8 hours of Sean Barry's time that plaintiff concedes was mistakenly included in her original request. (ECF 57 at 4.)

[4] This table reflects the detailed objections provided by defendant in the Halvorsen Declaration (Halvorsen Decl., ECF 54-1), which does not include any time requested by plaintiff after April 16, 2013. The Halvorsen Declaration does not completely align with the summary table provided by defendant (ECF 54 at 5), but because it includes the rationale for each objection, the court considers it a more accurate understanding of defendant's objections; thus, it serves as the basis for the court's analysis.

Defendant's objections fall into five main categories: entries that should be (1) reduced or eliminated as inappropriate duplicative billing for interoffice conferences or training of associates; (2) eliminated as not relevant to the prosecution of the case; (3) reduced or eliminated as inappropriate secretarial work; (4) reduced or eliminated due to block billing practices that mask the total time spent on each task; and (5) reduced or eliminated as inappropriate billing of travel time. (*See* ECF 54 at 4.) Each of these categories is analyzed below.

a. Internal communications and associate training

Defendant's first objection to plaintiff's proposed lodestar calculation is that many of the hours requested were spent on duplicative interoffice communications and training of junior associates, and therefore do not qualify as part of a "reasonable attorneys' fee." When making its assessment of reasonableness, the court is justified in excluding hours spent on redundant activities. *Hensley*, 461 U.S. at 434. While the Ninth Circuit has recognized that "the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort," *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989), many courts have nonetheless reduced fee awards for time spent in "interoffice conferences" or other internal communications. *See Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1194 (S.D. Cal. 2003) (reducing selected time entries by ten-percent because attorneys "billed an inordinate amount of time for interoffice conferences"); *Coles v. City of Oakland*, No. C03-2961 TEH, 2007 WL 39304, at *10 (N.D. Cal. Jan. 4, 2007) ("Claiming a disproportionate number of hours for communication between attorneys may indicate unreasonable overstaffing such that a reduction in hours is appropriate."); *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 987 (N.D. Ill. 2012) (eliminating time entries for duplicative tasks).

Time billed by junior associates is not "reasonably expended" where it serves as training rather than productive legal work, and courts are justified in eliminating "hours not necessary in light of the experience of the attorney." *Ward v. Tipton Cnty. Sheriff Dep't*, 937 F. Supp. 791, 801 (S.D. Ind. 1996); *see also Vilkhu v. City of New York*, No. 06-CV-2095 CPS (JO), 2009 WL 1851019, at *11 (E.D.N.Y. June 26, 2009) (reducing junior associate time

by five-percent for time spent training), *vacated and remanded on other grounds*, 372 F. App'x 222 (2d Cir. 2010). However, in general, the court "may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests." *Moreno*, 534 F.3d at 1115.

Looking at the descriptions of the time entries provided by plaintiff's law firm, a number of entries reflect duplicative interoffice communications or time spent inefficiently because more senior attorneys were training junior associates. For example, on June 14, 2012, partner Bryan Kemnitzer and associate Jade Jurdi each billed approximately an hour-and-a-half for their conversation regarding revisions to plaintiff's settlement demand. (ECF 50-4 at 14.) On November 1, 2012, associate Kristin Kemnitzer and partner Nancy Barron each billed an hour for a conversation on legal strategy and responses to discovery. (ECF 50-4 at 24.) In total, defendant claims that plaintiff's attorneys are billing for 109 such internal conferences. (ECF 54 at 5.) Defendant also objects to the forty-eight internal memoranda that were drafted, primarily by partner Bryan Kemnitzer to other staff members, as a waste of resources. (ECF 54 at 5.) While it is reasonable to spend some time coordinating legal resources, it is not reasonable to double or triple-bill a client for internal meetings, many of which appear to be for partners to provide instructions to junior associates. Given the sheer volume of references to these kinds of internal communications, the court agrees with defendant that such charges are excessive.

After a detailed review of plaintiff's time entries and defendant's objections, the court has determined that 20.5 hours of time can be eliminated for such duplicative entries. In making this calculation, the court reasons that such internal discussions were likely as productive as one attorney working alone, especially where it appears that senior attorneys were spending time educating more junior attorneys. For example, for the internal meeting on November 13, 2012 between Bryan Kemnitzer and Kristin Kemnitzer, for which each billed 0.2 hours, (ECF 50-4 at 27), the court has eliminated Bryan Kemnitzer's time entry but preserved Kristin Kemnitzer's entry. Included in this reduction is the 2.4 hours spent bringing new

attorneys up to speed about the status of the case, which is not appropriate to bill to a client. *Ford v. Bender*, 903 F. Supp. 2d 90, 103 (D. Mass. 2012).

Furthermore, defendant objects to dozens of entries as unreasonably excessive given the tasks performed, due to the fact that junior associates were staffed on the case. After a careful review of defendant's objections, the court finds that the majority of these entries do not qualify as unreasonable. It is true that the time spent drafting the complaint or responding to discovery may have been longer than strictly necessary, but this is not sufficient to make the fee award unreasonable. As noted above, it is not the court's place to micromanage the prosecution of the case, or its staffing.

At the same time, the court finds plaintiff has failed to meet her burden of proving that the amount of time spent was reasonable in one area: the preparation of the fee request itself. Although plaintiff is entitled to compensation for time spent on the fee request, it still must meet the burden of reasonableness. Between the original request and the reply memorandum, plaintiff's attorneys assert they spent more than sixty hours just preparing these documents, constituting about twenty percent of the hours requested for the entire case. The court finds this time excessive, especially given the fact that the entries are vague, block-billed, and often double-count internal conferences. This conclusion is bolstered by the fact that the declaration of Nancy Barron, filed May 31, 2013, asserts she has spent 2.2 hours responding to defendant's opposition to the fee motion, (ECF 56 at 5), yet the billing detail attached to Bryan Kemnitzer's declaration filed the same day requests compensation for 6.5 hours of Nancy Barron's time spent responding to the opposition. (ECF 57 at 8–9.) The court therefore imposes a fifty-percent "haircut" on all entries relating to the fee request, resulting in a total of 33.35 hours. This is more than enough time to have prepared the declarations and responded to defendant's objections.

b. Entries not relevant to prosecution

Time spent on tasks that are not relevant to the case at issue should be eliminated from the lodestar analysis. Obviously, time spent on another case that is inadvertently included in the fee request cannot be reasonably compensated. Similarly, work

on an unsuccessful claim is not expended in pursuit of the ultimate result achieved, and cannot be properly billed. *Hensley*, 461 U.S. at 435; *see also Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) ("Hours expended on unrelated, unsuccessful claims should not be included in an award of fees."). Courts must be careful to correctly distinguish time spent on "unrelated" claims versus time "devoted generally to the litigation as a whole." *Sorenson*, 239 F.3d at 1147 (quoting *Hensley*, 461 U.S. at 435) (internal quotation marks omitted). Cases with multiple claims involving "a common core of facts" that are "based on related legal theories" often "cannot be viewed as a series of discrete claims." *Id.* (quoting *Hensley*, 461 U.S. at 435) (internal quotation marks omitted).

Defendant objects to a number of entries that it claims are not relevant to the prosecution of plaintiff's case and thus are not appropriately billed. Among these, defendant identifies 1.9 hours of time that appear to be related to other cases, but were unintentionally billed. (*See* ECF 50-4 at 9, 29 (entries from February 10, 2012 (Jade Jurdi) and November 25, 2012 (Kristin Kemnitzer) & ECF 54-2 at 17, 64 (defendant's objections).) Plaintiff's reply memorandum does not address these objections. After careful review, the court finds that these entries appear to be inadvertently included in the fee request and deducts the 1.9 hours from the fee award. Defendant also objects to one hour billed on March 2, 2012 for a letter to defendant it claims it never received. (*See* ECF 50-4 at 11 (March 2 2012 entry (Jade Jurdi): "Draft letter to opposing counsel re potential settlement and potential exposure of defendants") & ECF 54-2 at 22 (defendant's objection).) Again, plaintiff did not respond to this objection in her reply. The court sustains the objection and reduces the award by one hour.

Defendant claims that any time spent by plaintiff's counsel on filing a complaint in Sacramento County Superior Court should be eliminated from the fee award as unnecessary, given that the complaint was voluntarily dismissed from that court. (ECF 54 at 6.) Defendant thus requests a reduction in the fee award by 3.4 hours for entries from August and September 2011. (*Id.*) The court finds that unnecessary time spent on the state court claim cannot be properly billed to defendant, as it was not reasonably required for the resolution of plaintiff's case. However, the court finds that at least some of the time spent drafting the initial complaint

would have been expended drafting the federal complaint, as the claims were similar, making a reduction of all 3.4 hours not justified. After careful review, the court reduces the award by 2.4 hours for time spent unnecessarily on the preparation of the state court complaint.

Defendant similarly objects to any time spent amending the federal complaint, arguing that such amendments were unnecessary for plaintiff's case. As defendant points out, entries regarding research of a claim under the Consumers Legal Remedy Act, CAL. CIV. CODE § 1750, *et seq*. ("CLRA"), are questionable as furthering plaintiff's case, as no such claims were ever added to the complaint. Plaintiff has not responded to this objection in her reply. In light of plaintiff's silence, and based on a review of the time entries and the two complaints, the court finds the amendments did not reasonably advance plaintiff's case. Thus, the court eliminates 14.9 hours of requested entries from July and August of 2012 relating to the CLRA research and amendments.

Lastly, defendant objects that any time spent on seeking admission for attorneys to practice in the Eastern District of California cannot be billed to defendant. (ECF 54 at 4.) Plaintiff concedes that billing such time would be improper, and voluntarily reduces the fee request by 0.8 hours. (Reply Mem. P.&A., ECF 55 at 10.) However, the court finds that the billing records contain an additional 1.3 hours of time related to this matter that must also be eliminated for a total 2.1 hour reduction. *See* ECF 50-4 (entries for Sean Barry on September 29, 2011 (0.8 hours), December 6, 2012 (two entries totaling 0.5 hours), and April 11, 2013 (0.8 hours)).

c. Secretarial work

Costs associated with clerical or "secretarial" tasks are typically considered overhead expenses reflected in the hourly billing rate and are not properly included in the lodestar analysis, even at the reduced hourly rate of a paralegal. *Frevach Land Co. v. Multnomah Cnty.*, No. CV-99-1295-HU, 2001 WL 34039133, at *12 (D. Or. Dec. 18, 2001) ("'[P]urely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them . . . .'" (quoting *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)). Such excludable tasks include proofreading, indexing and assembling documents. *Id.*

Defendant objects to approximately thirty hours of time spent, primarily by paralegal Sean Barry, on what it describes as “secretarial tasks.” These include updating the internal calendar, scanning documents, and preparing electronic filings. While the court agrees that some of these tasks are clerical in nature, each is interspersed with non-objectionable tasks in the form of “block-billed” entries, discussed in more detail below. This makes it impossible for the court to determine how much time was spent on non-objectionable activities, and whether the time billed was reasonable. In order to avoid double-counting the objections, the court declines to eliminate any specific entries as “secretarial” and deals with them along with other block-billed entries below.

d. Block billing

A major defense objection to plaintiff’s request concerns the block-billed nature of the time entries. Where time entries used to calculate the lodestar fee describe multiple, unrelated tasks, courts are often unable to determine whether the amount of time spent was reasonable. While block billing is not prohibited by law, *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000), courts have reduced fee awards through an across the board “haircut” for such practices. *See Gibson*, 873 F. Supp.2d at 987 (reducing block-billed entries by fifty percent); *Okla. Natural Gas Co. v. Apache Corp.*, 355 F. Supp.2d 1246, 1265 (N.D. Okla. 2004) (reducing block-billed entries by fifteen percent); *Reyes v. Nations Title Agency of Ill., Inc.*, No. 00 C 7763, 2001 WL 687451, at *2 (N.D. Ill. June 19, 2001) (reducing block-billed entries by ten percent). However, courts have at the same time exempted from the haircut entries where the “combined tasks are related” and are “performed in connection with the same end-product.” *Gibson*, 873 F. Supp.2d at 987. This court therefore will impose such a haircut only where the time entry description makes it difficult or impossible to assess the reasonableness of the time requested.

The court agrees with defendant that the billing entries in plaintiff’s fee request “are almost entirely ‘block billed.’” (ECF 54 at 5.) Incredibly, in litigation spanning more than two years and utilizing five billable employees, on only four days did any employee create more than one time entry. Many of the block-billed entries are vague about how much time

was spent on particular activities. This practice makes it almost impossible to determine how much time was spent on each identified task, frustrating the court's inquiry into whether the time requested was reasonable. For example, on July 3, 2012, associate Jade Jurdi billed 2.6 hours for:

> Phone call with opposing counsel x2[5] re breaking of welds, dangerous condition of RV, inability to accept any type of cash and keep offer, new plaintiff expert inspection of RV, and offer opportunity for defendants to inspect RV. Phone call with client x4 to facilitate expert inspection, discuss current condition of vehicle, need for vehicle, and pending procedural issues in the litigation. Phone call with experts x3 regarding retainer agreement, and needed inspection and report. Conf. with BK to update re current condition of vehicle, how previous noted defects were symptoms of the bad welds, need to amend to allege new complaints, his settlement negotiations with opposing counsel, and inspection of vehicle.

(ECF 50-4 at 15.)

In another objectionable entry, on November 19, 2012, associate Kristin Kemnitzer billed 7.9 hours, with the following description: "Conf with SB re: expert report; conf with BK re: same; prepare responses to discovery; conf with SB re: depos; conf with NB re: discovery responses." (ECF 50-4 at 28–29.) This entry not only bills time for four separate internal meetings, some of which were double-billed by partners, but it gives no indication of how much time was spent on each task. The meetings could have taken twenty minutes or six hours. In total, the court finds that at least sixty entries comprise objectionable block-billing, even after eliminating time for other objectionable practices. In some cases, one or more of the tasks remaining is unrelated to the others and would, on its own, be subject to reduction or elimination because it is not appropriate to bill to defendant. In these cases, the court is unable to reduce the entry based on the time spent on objectionable tasks because it cannot assess how much time was spent on this activity as compared to non-objectionable activities. In other

[5] The "x2" and similar coded references are not explained in the record.

cases, there are simply so many tasks listed that the court cannot reasonably conclude whether the time spent on any listed activity is reasonable. After deducting clearly objectionable time where possible, the court finds that 92.0 hours of time is still objectionable.[6] Given the volume of entries billed in this fashion, and the overly vague nature of the entries themselves, the court finds that a fifty percent "haircut" is appropriate for these entries. Thus, the court reduces the fee award by 46.0 hours for inappropriate block-billing practices.

e. Travel time

In general, the costs of attorney travel are included as "expenses," including an amount for the time the attorney spends in transit. *See Int'l Woodworkers, Local 3–98 v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1986) ("'Expenses' includes those that are normally billed a client, such as telephone calls, postage, and attorney travel expenses."). In determining what hours can reasonably be compensated by the lodestar analysis, courts have sometimes reduced hours billed for time spent traveling. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) (affirming reduction in travel time award by fifty percent due to the inevitable "distractions associated with travel" that likely reduced attorneys' effectiveness); *Alnutt v. Cleary*, 27 F. Supp. 2d 395, 400 (W.D.N.Y. 1998) (reducing travel time by fifty percent); *Hiram C. v. Manteca Unified Sch. Dist.*, No. S-03-2568 WBS KJM, 2004 WL 4999156, at *2 (E.D. Cal. Nov. 5, 2004) (affirming award for travel time at less than fifty percent of ordinary hourly rate).

However, in the Eastern District of California, courts have generally compensated attorneys at their full hourly rate for travel time. *See, e.g.*, *Jones v. Cnty. of Sacramento*, No. CIV S–09–1025 DAD, 2011 WL 3584332, at *15 (E.D. Cal. Aug. 12, 2011) (awarding three hours of travel time from Sacramento to San Jose and back to conduct deposition at full rate); *Jones v. McGill*, No. 1:08–CV–00396–LJO–DLB, 2009 WL 1862457,

---

[6] For example, where multiple entries describe the same interoffice conference, this time is deducted prior to an assessment of whether the entries contain objectionable block-billing. Entries relating to the generation of the fee request, already subject to a fifty-percent haircut, were exempt from this reduction, despite the fact that many were also block-billed.

at *3 (E.D. Cal. June 29, 2009) (awarding fifteen hours of travel time for meetings with experts and witnesses at full rate); *Davis v. Sundance Apartments*, No. CIV. S-07-1922 FCD GGH, 2008 WL 3166479, at *5 (E.D. Cal. Aug. 5, 2008) (awarding six hours of travel time at full rate). Thus, so long as the amount of time spent traveling is reasonable, and the meeting or event to which the attorney is traveling is necessary to the case, the court will award compensation of travel time at the attorney's full hourly rate.

Defendant objects to 7.9 hours of entries as inappropriately charged travel time. (*See* ECF 50-4 (entries for February 16, 2012 (Jade Jurdi) and November 29, 2012 (Bryan Kemnitzer).) Defendant argues that time spent traveling to and from San Francisco cannot be appropriately billed because plaintiff's law firm has an office in Sacramento, which is much closer to the location of all depositions and necessary meetings. In her reply, plaintiff asserts her counsel's office in Sacramento has no "support staff, files or servers" and is not used as a primary office. (ECF 57 at 4.) Defendant further contends that even if the amount of travel time is reasonable, it should be billed at a discounted rate because "no attorney work is being performed." The court finds that the amount of time requested for travel is reasonable given that the attorneys on the case work in San Francisco, and only traveled to attend necessary depositions. As it is common practice to compensate travel time at the full hourly rate in the Eastern District of California, and because the meetings to which plaintiff's attorneys traveled were not objectionable in nature, the court declines to reduce the fee award for time spent traveling.

f. Conclusion on hours spent

The requesting party bears the burden of proving the amount requested is reasonable. As explained above, the record before the court justifies a reduction in the hours awarded for excessive internal communications, for activities not relevant to the prosecution of the case, and where block billing has impeded the court's ability to properly make a lodestar assessment. In sum, the court eliminates the following hours as objectionable:

/////

| Timekeeper | Duplicative | Fee Motion | Unrelated to Case | State Claim | Amending Complaint | Adm. to Practice | Block Billing |
|---|---|---|---|---|---|---|---|
| Bryan Kemnitzer (Partner) | 9.4 | 3.75 | 0.0 | 0.3 | 2.6 | 0.0 | 10.9 |
| Nancy Barron (Partner) | 4.6 | 4.3 | 0.0 | 0.0 | 0.0 | 0.0 | 0.5 |
| Jade Jurdi (Associate) | 0.3 | 0.0 | 2.6 | 1.0 | 7.9 | 0.0 | 6.75 |
| Kristin Kemnitzer (Associate) | 4.6 | 25.3 | 0.3 | 0.0 | 0.0 | 0.0 | 17.2 |
| Sean Barry (Paralegal) | 1.6 | 0.0 | 0.0 | 1.1 | 4.4 | 1.3 | 10.65 |
| **Total:** | **20.50** | **33.35** | **2.90** | **2.40** | **14.90** | **1.30** | **46.00** |

After eliminating this time, the court concludes that the following is an appropriate number of hours to calculate the lodestar for plaintiff's attorneys' fee:

| Timekeeper | Hours Awarded |
|---|---|
| Bryan Kemnitzer (Partner) | 65.85 |
| Nancy Barron (Partner) | 2.50 |
| Jade Jurdi (Associate) | 43.35 |
| Kristin Kemnitzer (Associate) | 80.10 |
| Sean Barry (Paralegal) | 25.65 |
| **Total:** | **217.45** |

/////

2. Prevailing Local Rate

The "prevailing local rate" is calculated according to the rates of attorneys practicing in the forum district: here, the Eastern District of California-Sacramento. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). The burden is on the movant to produce satisfactory evidence, in addition to the attorneys' own affidavits, to establish the prevailing local rate. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). A district court must explain how it came up with the amount it awards; "[t]his explanation need not be elaborate, but it must be comprehensible." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Plaintiff has requested the following hourly rates be used in the lodestar analysis (ECF 50 at 3):

| **Timekeeper** | **Rate** |
|---|---|
| Bryan Kemnitzer (Partner) | $700.00/hr |
| Nancy Barron (Partner) | $700.00/hr |
| Jade Jurdi (Associate) | $350.00/hr |
| Kristin Kemnitzer (Associate) | $350.00/hr |
| Sean Barry (Paralegal) | $250.00/hr |

In support of the request, plaintiff provides her own declaration (ECF 49), declarations of her attorneys (ECF 50, 56, 57), and a declaration of Richard Pearl, who provides his opinion as to the reasonableness of the rates requested as a specialist in the area (ECF 51). Almost all of this evidence is irrelevant to the court's analysis of the reasonableness of the rates requested, because the declarations seek to justify the rates as reasonable for the San Francisco legal market. (*See, e.g.*, Declaration of Richard Pearl (ECF 51) (justifying plaintiff's counsel's rates as compared to attorneys working at large law firms in San Francisco, Los Angeles and San Diego, without once in its seventy-nine pages of evidence discussing rates charged in Sacramento).) As discussed above, the appropriate venue for comparison is the Eastern District of California in Sacramento, not the Northern District of California in San Francisco. Plaintiff has not established that this action required unique expertise that could not

be obtained locally. Plaintiff also fails to direct the court to a single case in the Eastern District where the rates claimed by her counsel, or similar rates by other law firms, have been upheld.[7] The court therefore finds that plaintiff has failed to meet her burden of proving the rates requested are reasonable for litigation in the Sacramento federal court, and conducts its own analysis of a reasonable rate.

In a 2006 civil rights case in this district, a court rejected rates requested by a Los Angeles law firm and awarded fees based on the rates it found to be reasonable in the Sacramento area: $300 per hour for a partner, $225 for an associate, and $90 for a paralegal. *Cal. State Outdoor Adver. Ass'n, Inc. v. State of Cal.*, No. S-05-0599 FCD/DAD, 2006 WL 662747, at *11 (E.D. Cal. Mar. 16, 2006). In a 2013 copyright infringement case, this court awarded fees at the rate of $275 per hour for a partner and $175 per hour for an associate. *Broadcast Music Inc. v. Antigua Cantina & Grill, LLC*, No. 2:12-CV-1196 KJM DAD, 2013 WL 2244641, at *2 (E.D. Cal. May 21, 2013). Courts in the Eastern District repeatedly have found $250 per hour to be a reasonable rate for attorneys bringing actions under the Fair Debt Collection Practices Act ("FDCPA"). *See, e.g., Miranda v. Law Office of D. Scott Carruthers*, No. 1:10-CV-01487-BAM, 2012 WL 78236, at *7 (E.D. Cal. Jan. 10, 2012) ("The Court's review of some of the most recent attorney fee awards in FDCPA cases indicate[s] that the most common hourly rate awarded to plaintiff's counsel in FDCPA cases is $250.").

The court also considers the complexity of the legal issues at hand and the experience of the attorneys on the case in assessing a reasonable hourly rate. Although there are few cases discussing the complexity of a Magnuson-Moss claim at length, the court finds that such claims are not as complex as plaintiff's attorneys assert. *See Moshir v. Automobili Lamborghini Am. LLC*, __ F. Supp. 3d __, No. CV 11-1611-PHX-JAT, 2013 WL 693413, at *5

---

[7] The Declaration of Bryan Kemnitzer does cite to three cases in the Sacramento Superior Court where courts have approved counsel's hourly rate. (ECF 50 at 13, 14.) Not only is the court unable to confirm the validity of such California state court decisions, the rates the courts are said to have approved were all lower than the request here, and no evidence is provided that the cases were similar. That the declaration calls the cases "similar class action cases," an obvious error as the present case is not a class action, does not lend an aura of credibility.

(D. Ariz. Feb. 26, 2013) (finding a rate of $300 per hour reasonable for attorneys working on an uncontested Magnuson-Moss claim); *Gill v. Bluebird Body Co.*, 353 F. Supp. 2d 1265, 1270 (M.D. Ga. 2005) (finding that a rate of $225 per hour for an attorney with nineteen years of experience and $75 per hour for a paralegal was reasonable), *rev'd and remanded on other grounds sub nom.*, *Gill v. Blue Bird Body Co.*, 147 F. App'x 807 (11th Cir. 2005).

The court accepts that plaintiff's attorneys are experts in consumer litigation and warranty claims, with partners Nancy Barron and Bryan Kemnitzer each having significant experience. However, given that the claims in this case were not extraordinarily complex, and in light of prevailing rates in the Sacramento area, the court finds their requested rate of $700 per hour is unjustified. Rather, an hourly rate of $300 is reasonable given their experience and expertise. As for the junior associates on the case, the court also finds plaintiff's request of $350 per hour to be unreasonable. A rate of $200 per hour is sufficient given their experience. *See MFC Twin Builders, LLC v. Fajardo*, No. 1:12-CV-00219-AWI-SKO, 2012 WL 3862399, at *9 (E.D. Cal. Sept. 5, 2012) (awarding a rate of $195 for a first-year associate), *report and recommendation adopted*, No. 1:12-CV-00219-AWI, 2012 WL 4468751 (E.D. Cal. Sept. 27, 2012); *J.A.A.H. v. Modesto City Sch.*, No. 1:08CV01465LJODLB, 2009 WL 55951, at *8 (E.D. Cal. Jan. 6, 2009) (awarding a rate of $195 for a first-year associate). Lastly, the court finds a rate of $250 per hour for paralegal work is well outside the prevailing rates in Sacramento, and awards a rate of $100 per hour for the work of Sean Barry, which is justifiably above average given his extensive experience. *See, e.g.*, *Yeager v. Bowlin*, No. CIV.2:08-102WBSJFM, 2010 WL 2303273, at *6 (E.D. Cal. June 7, 2010) (awarding a rate of $75 for a paralegal), *aff'd*, 495 F. App'x 780 (9th Cir. 2012).

In sum, based on the court's assessment of the complexity of the issues in this case and the experience of the attorneys in question, the court finds that the following rates are reasonable for the lodestar analysis in this case:

/////

/////

| **Timekeeper** | **Rate** |
|---|---|
| Bryan Kemnitzer (Partner) | $300.00/hr |
| Nancy Barron (Partner) | $300.00/hr |
| Jade Jurdi (Associate) | $200.00/hr |
| Kristin Kemnitzer (Associate) | $200.00/hr |
| Sean Barry (Paralegal) | $100.00/hr |

3. Adjustment of the Lodestar

Given these rates, the lodestar in this case is $47,760. A strong presumption exists that the lodestar fee is the reasonable amount, *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 n.6 (9th Cir. 1987), but a court may use a multiplier to "adjust the lodestar amount upward or downward in 'rare' and 'exceptional' cases, supported both by 'specific evidence' on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). To determine whether the lodestar is reasonable, courts in this Circuit consider eleven factors:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation and ability of the attorneys; (9) the "undesirability" of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases.

*Id.* at 1045 n.2. However, many of these factors are subsumed by the lodestar analysis. *Jordan*, 815 F.2d at 1262. The novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, and the results obtained cannot serve as independent bases for adjusting fee awards. *Id.* at 1262 n.6.

The court finds that none of the other factors warrant an adjustment; $47,760 is a reasonable amount considering the length of time spent on the litigation, the novelty and difficulty of the issues involved, the skill of the attorneys, and the results obtained. Plaintiff has requested a multiplier of 1.5 to reflect the "excellent result" achieved in the settlement and because of the unique skills and expertise of plaintiff's law firm. While the settlement agreement was a success for plaintiff in this case, the case does not qualify as "rare" or "exceptional" so as to justify an adjustment of the lodestar. The court denies plaintiff's request for a multiplier and awards $47,760 in legal fees.

B. Costs

Prevailing parties under a Magnuson-Moss claim may be reimbursed for reasonable costs incurred as part of the attorneys' fee award. 15 U.S.C. § 2310(d)(2); *see also Hines v. Chrysler Corp.*, 971 F. Supp. 212, 216 (E.D. Pa. 1997) (awarding "reasonable expenses incurred"); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1368 (N.D. Cal. 1996) ("With the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of the litigation, or as an aspect of settlement of the case" may be reimbursed.). Expenses "related to discovery . . . incurred in [depositions] are recoverable" as part of the attorneys' fee award. *Harris v. Marhoefer*, 24 F.3d 16, 20 (9th Cir. 1994).

Plaintiff submits $11,837.71 in costs incurred due to the litigation. (ECF 50-4 at 45.) Defendant objects to $2,493.93 of these as inappropriate; these costs are reviewed here. (ECF 54 at 21.) The cost for admission to practice in the Eastern District has been conceded by plaintiff as inappropriate, and the court reduces the costs awarded by this amount, $180. For the reasons discussed above, the court also eliminates $624.80 in costs associated with the filing and withdrawal of the complaint from Sacramento Superior Court as unnecessary to prosecute plaintiff's case. Also for the reasons cited above, the court grants the full $129.88 in travel costs incurred by Jade Jurdi to attend the court status conference. The court also grants the award of the $75 service of process fee as reasonable despite defendant's objection. Lastly, defendant objects to the per diem requested for an "MJ Lynn" amounting to $1,484.25, on the

grounds that the request does not identify her or why the request is reasonable. (ECF 54 at 21.) Plaintiff's response explains she was the court reporter used for depositions. (ECF 55 at 11.) The court finds the award of this cost to be reasonable. In sum, the court finds the total reimbursable costs incurred by plaintiff in this case to be $11,032.91.

IV. CONCLUSION

For the foregoing reasons, plaintiff's motion is granted in part and denied in part. The court awards plaintiff $47,760.00 in fees and $11,032.91 in costs.

IT IS SO ORDERED.

DATED: September 6, 2013.

UNITED STATES DISTRICT JUDGE