# EXHIBIT 11

**ALEXANDER JACOBS, individually and on behalf of all others similarly situated, Plaintiff, v. CALIFORNIA STATE AUTOMOBILE ASSOCIATION INTER-INSURANCE BUREAU, Defendant.**

**No. C 07-00362 MHP**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

***2009 U.S. Dist. LEXIS 101586***

**October 26, 2009, Decided**
**October 27, 2009, Filed**

**PRIOR HISTORY:** *Jacobs v. CSAA Inter-Insurance, 2009 U.S. Dist. LEXIS 37153 (N.D. Cal., Apr. 30, 2009)*

**COUNSEL:** **[*1]** For Alexander Jacobs, individually & on behalf of all others similarly situated, Plaintiff: Alan Dale Harris, LEAD ATTORNEY, David Sohn Zelenski, Harris & Ruble, Los Angeles, CA.

For CSAA Inter Insurance Bureau, a business entiity, Defendant: John R. Hurley, DLA Piper US LLP, San Francisco, CA; Tonya Marie Cross, DLA Piper US LLP, San Diego, CA.

**JUDGES:** MARILYN HALL PATEL, United States District Court Judge.

**OPINION BY:** MARILYN HALL PATEL

**OPINION**

***AMENDED MEMORANDUM & ORDER***

**Re: Plaintiff's Motion for Attorneys' Fees**

Plaintiff Alexander Jacobs ("Jacobs") brought this action against his former employer, California State Automobile Association Inter-Insurance Bureau ("CSAA"), on behalf of himself and all others similarly situated, alleging violations of California state law and the federal Fair Labor Standards Act. The court granted the parties' joint motion for final approval of settlement. Now before the court is plaintiff's motion for an award of attorneys' fees and costs. Having considered plaintiff's unopposed submissions, the court enters the following memorandum and order.

*BACKGROUND*

Because the facts of the case have been reviewed in prior orders issued by the court, only a brief summary is needed here. *See Jacobs v. CSAA Inter-Insurance Bureau, No. C 07-00362, 2009 U.S. Dist. LEXIS 37153, 2009 WL 1201996, at *1-2 (N.D. Cal. May 1, 2009).* **[*2]** Plaintiff commenced this action on January 18, 2007. After some discovery, and a preliminary injunction preventing federal class members from cooperating or participating in a related state court action asserting essentially the same claims asserted in this action, the parties settled the instant action.

The settlement notice was mailed to a total of 8,057 class members, 1,317 of which filed claims against the initial common settlement fund of $ 850,000. *See* Docket No. 82 (Harris Dec.) P 8. After noticing that more members had filed claims than originally expected, at the urging of the court, the parties agreed to increase the common fund to $ 1.5 million, to appropriately cover allegedly unpaid overtime, damages owing on account of unpaid wages, improper pay stubs and civil penalties. There were ninety opt-outs and the sole objector has withdrawn his challenge to the settlement terms.

Between 2006 and 2009 class counsel have devoted approximately 530 hours to this action. Class counsel now request $ 375,000 in attorneys' fees, representing 25% of the common fund established for the benefit of the class, and costs of $ 3,150.22. Class counsel also

request a $ 25,000 incentive payment **[*3]** to Jacobs for service to the class. *Id*. PP 4, 9.

*LEGAL STANDARD*

In class actions, "a litigant or a lawyer who recovers a common fund for the benefit of [the class] is entitled to a reasonable attorney's [sic] fee from the fund as a whole." *Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980)*. The common fund doctrine applies to those instances when "(1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefitting." *In re Petition of Hill, 775 F.2d 1037, 1041 (9th Cir. 1985)*. The present action meets these requirements, as class members have been identified, there is a precise estimation of the benefits available to the class, and class counsel have submitted records justifying an award of attorneys' fees.

In the Ninth Circuit, it is within the district court's discretion to award attorneys' fees in common fund cases under either the percentage or the lodestar method. *Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002)*. In selecting a method, the district court must consider the circumstances of the case. *Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989)* **[*4]** (applying percentage method because detailed billing records were unavailable). Courts usually apply the percentage method but then use the lodestar method to cross-check the reasonableness of the percentage to be awarded. *See, e.g., Vizcaino, 290 F.3d at 1047, 1050*; *Glass v. UBS Fin. Servs., Inc., Nos. 07-15278, 07-15309, 331 Fed. Appx. 452, 2009 U.S. App. LEXIS 10328, 2009 WL 1360920, at *2 (9th Cir. May 14, 2009)* (applying and discussing the percentage method). Regardless of the method selected, when attorneys' fees are to be paid from a common settlement fund, "the relationship between plaintiffs and their attorneys turns adversarial" and "the district court must assume the role of fiduciary for the class plaintiffs." *In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994)* ("*WPPSSSL*"). It thus becomes crucial for the court to scrutinize the attorneys' request in light of their role in the litigation.

The "benchmark" for attorneys' fees in common fund class actions is 25% of the common fund. *Paul, Johnson, 886 F.2d 268, 272-73*; *see also Glass, 2009 U.S. App. LEXIS 10328, 2009 WL 1360920, at *2*. This percentage may be adjusted up or down, as appropriate. *Paul, Johnson, 886 F.2d at 272*. If an adjustment is warranted, the court must **[*5]** provide a reasonable explanation of both "why the benchmark is unreasonable under the circumstances" and "how it arrive[s] at the figure ultimately awarded." *Id. at 272-73*. The Ninth Circuit has set forth a number of factors which may be relevant to the district court's determination of the percentage ultimately awarded: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See Vizcaino, 290 F.3d at 1048-50*. "[T]here is no necessary correlation between any particular percentage and a reasonable fee." *WPPSSSL, 19 F.3d at 1297*. The Ninth Circuit has noted that in cases involving common funds, "picking a percentage without reference to all the circumstances of the case, including the size of the fund, would be like picking a number out of the air." *Id*.

*DISCUSSION*

I. *Percentage Method*

Noting that 25% of the common fund is the benchmark award in the Ninth Circuit, class counsel request attorneys' fees of $ 375,000, representing that percentage of the $ 1.5 million fund secured for the class. The results achieved in this litigation **[*6]** were acceptable, especially considering the risks plaintiffs would have faced at the class certification stage. That plaintiffs were able to recover at all speaks to the diligence and skill of their attorneys. Plaintiffs' attorneys have generally submitted well-drafted documents to support their positions. Plaintiffs' counsel also took this case on a contingent basis. There is no question that class counsel should receive a substantial fee in this case.

Two factors have, however, led the court to grant an award lower than what plaintiffs' attorneys have requested. The first and most important consideration is the role played by class counsel in increasing the size of the common fund from $ 850,000 to its current $ 1,500,000. As is discussed above, after agreeing on a $ 850,000 common fund, the parties discovered that the numbers of claims by class members outnumbered their initial estimate. As a result, the court pressured the defendants to increase the size of the common fund in order to accommodate the larger number of claims. Although plaintiffs' counsel played some role in arriving at a larger common fund, in their motion for attorneys' fees, plaintiffs' counsel assert that their **[*7]** efforts were responsible for the entire increase. *See* Docket No. 81 (Mot.) at 1 ("Indeed, after the Settlement Administrator received more claims than the parties originally anticipated, Plaintiff's Counsel negotiated a *$ 650,000 increase* in the settlement amount.") (emphasis in original). Although it matters not to the class who is responsible for an increase in the common fund and the concomitant increase in each class members' recovery, that plaintiffs' counsel played a minimal role in achieving that result should factor into the court's analysis regarding attorneys fees. The skill, dili-

gence and efforts of plaintiffs' counsel unquestionably resulted in the initial settlement amount, and for that they should be compensated. To grant an award for a portion of the settlement for which the attorneys played a limited role, however, would ignore the specific circumstances of this case.

Secondly, plaintiffs' counsel's submissions intended to permit the court to conduct a lodestar "crosscheck" are woefully inadequate, leaving the court unable to confirm the appropriateness of a $ 375,000 award. "When a party seeks an award of attorneys' fees, that party bears the burden of submitting evidence **[*8]** of the hours worked and the rate paid." *Carson v. Billings Police Dep't, 470 F.3d 889, 891 (9th Cir. 2006)*. Courts applying the percentage method typically use the lodestar method to cross-check the reasonableness of the percentage to be awarded. *See, e.g., Vizcaino, 290 F.3d at 1047, 1050*; *Glass, 2009 U.S. App. LEXIS 10328, 2009 WL 306120, at *2* (applying and discussing the percentage method). The "lodestar is the product of reasonable hours times a reasonable rate." *City of Burlington v. Dague, 505 U.S. 557, 559, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992)* (citations omitted). The Supreme Court has established a "strong presumption" that lodestar fees are reasonable. *Id. at 562*. Plaintiffs' attorneys bear the burden of submitting detailed records documenting "the hours worked and rates claimed." *Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)*.

Although plaintiffs' counsel have done an admirable job maintaining contemporaneous records of the hours expended on this litigation, *see* Docket No. 82 (Harris Dec.), Exh. 1 (Time records), they have provided the court with no credible source to determine if the hourly rates they seek are reasonable. Reasonable hourly rates are calculated by reference to "prevailing market rates in the relevant community," **[*9]** with a special emphasis on fees charged by lawyers of "comparable skill, experience, and reputation." *Davis v. City of San Francisco, 976 F.2d 1536, 1546 (9th Cir. 1992)*. As a general rule, the forum district represents the relevant legal community. *See Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992)*.

To justify the requested hourly rates, plaintiffs' counsel Alan Harris has submitted his own declaration and a declaration from Peter D. Zeughauser. *See* Harris Dec.; *id.*, Exh. 2 (Zeughauser Dec.). Harris' declaration lays out the hourly fees requested by class counsel, which range from $ 800 per hour for Harris, an attorney with more than 30 years experience, to $ 355 per hour for an attorney with Harris' firm with approximately four years experience. Harris provides minimal information--undergraduate and law school institution, year of graduation, and whether they have passed the California bar--about the individuals who worked on this case. Harris then concludes that based on his "own understanding of the market rates in Los Angeles," the rates requested by class counsel are reasonable. Harris Dec. P 6. Similarly, Zeughauser states, without any explanation, that all of the rates **[*10]** requested by plaintiffs' counsel are reasonable. Zeughauser Dec. P 11. Without intending any disrespect to Zeughauser, his stated "qualifications" to proffer this blanket assertion include his tenure as general counsel for The Irvine Company in Irvine, California, a number of "talks" to "over three hundred audiences comprised of attorneys," "numerous articles in . . . legal publications," and the authorship of a volume entitled "Lawyers Are From Mercury, Clients Are From Pluto." Zeughauser Dec. PP 2, 3, 5, 6. Mr. Zeughauser's declaration does not include a list of academic publications or a curriculum vitae.

The court cannot rely on these unsubstantiated opinions in determining the reasonableness of the requested hourly rates, especially in a common fund case, where the fee is awarded at the detriment of the class and the fee request is unopposed. To begin, there is no information about the attorneys' skills, experience or reputations. Second, Harris and Zeughauser provide no justification, other than their own opinions, that the requested rates are reasonable. An examination of awards made in other cases indicates that the requested rates are not reasonable, but rather are extraordinary. **[*11]** For example, Harris seeks to be compensated at $ 800 per hour. The court has not been able to locate a single case from any forum in the entire country where a court approved an $ 800 per hour rate for any attorney. In fact, the court identified only a single case where a judge awarded an attorney even a rate of $ 700 per hour. *See Create-A-Card, Inc. v. INTUIT, Inc., No. C 07-06452, 2009 U.S. Dist. LEXIS 93989, 2009 WL 3073920, at *2 (N.D. Cal. Sept. 22, 2009)* (Alsup, J.). Further, some of the rates requested for other attorneys in this action--$ 475 for two attorneys with eight years experience, $ 430 for two attorneys with six years of experience, $ 355 for an attorney with four years experience--are, in this court's experience, extremely high for the San Francisco Bay Area. Third, both Harris and Zeughauser fail to explain the reasonableness of the rates for the Northern District of California, instead stating that they are reasonable in general or reasonable for the Los Angeles, California, area. In sum, the information provided by plaintiffs' counsel is simply insufficient to permit the court to conduct a credible cross-check of the percentage award requested by plaintiffs' counsel.

Given these deficiencies **[*12]** in class counsel's moving papers, the court awards class counsel $ 255,000 in attorneys' fees, which is equal to 30% of the $ 850,000 common fund that class counsel originally negotiated for the class members. The court believes this figure more

than adequately compensates plaintiffs' attorneys for their performance in this case. They should be commended for bringing this case to an early and favorable resolution, which is reflected in the 30% award, in excess of this Circuit's benchmark. At the same time, the court does not believe that class counsel should receive much if any benefit from the increase in the common fund in which they played a minimal role. Even though class counsel will receive a lower than requested award, they are still being compensated handsomely; the $ 255,000 award results in $ 481 hourly rate for the 530 hours class counsel expended on this case.

II. *Costs*

Class counsel have also requested reimbursement for costs in the amount of $ 3,150.22, representing costs for meals, parking, copy and delivery services, and transportation. These costs are well-documented and reasonable. The court awards reimbursement of costs in their entirety.

III. *Incentive Award for Named* **[*13]** *Plaintiff Jacobs*

Class counsel have also requested an incentive award of $ 25,000 for named plaintiff Jacobs, to compensate him for his efforts on behalf of the class he represents. "Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp., 563 F.3d 948, 958-59 (9th Cir. 2009)* (citation omitted). In this case, according to class counsel, Jacobs helped class counsel by "conferring over discovery matters, gathering documents, conversing with Class Counsel and other Class members, and advising Counsel of his various opinions during settlement negotiations." Harris Dec. P 9. Jacobs and class counsel also had "over twenty-five conversations regarding this case." *Id.*

It is clear that Jacobs invested some amount of time in this litigation, although Harris' declaration does not attempt to quantify the amount. The court holds, however, that Jacobs is not entitled to a $ 25,000 incentive fee. A $ 25,000 incentive payment is quite high **[*14]** for this district, in which a $ 5,000 payment is presumptively reasonable. *See Hopson v. Hanesbrands Inc., No. CV-08-0844, 2009 U.S. Dist. LEXIS 33900, 2009 WL 928133, at *10 (N.D. Cal.Apr. 3, 2009)* (LaPorte, M.J.). In cases where class representatives received incentive payments of $ 25,000 or higher, the class representatives spent a much greater amount of time assisting class counsel, *see Cook v. Niedert, 142 F.3d 1004, 1016 (9th Cir. 1998)* (upholding $ 25,000 incentive payment in case with more than a $ 13,000,000 settlement where class representative spent "hundreds" of hours with class counsel), or the case resulted in a far larger overall recovery, *see e.g., id.; In re Domestic Air Transp., 148 F.R.D. 297, 357-58 (N.D. Ga. 1993)* (awarding $ 142,500 to class representatives out of $ 50 million fund); *In re Dun & Bradstreet, 130 F.R.D. 366, at 373-74 (S.D. Ohio 1990)* (awarding $ 215,000 to several class representatives out of an $ 18 million fund). Here, Jacobs has not estimated the amount of time that he spent aiding class counsel, and the overall recovery on behalf of the class is substantial, but by no means extraordinary. In similar cases, courts have awarded $ 5,000 incentive payments. *See, e.g., Knight v. Red Door Salons, Inc., No. 08-01520, 2009 U.S. Dist. LEXIS 11149, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009)* **[*15]** (Conti, J.) (awarding $ 5,000 for named plaintiffs expending 40-50 hours each to help recover $ 500,000); *Hopson, 2009 U.S. Dist. LEXIS 33900, 2009 WL 928133, at *10* (awarding $ 5,000 to named plaintiffs who helped to recover $ 408,000). Recognizing that Jacobs spent somewhat more time assisting counsel than occurs in the average case resulting in a $ 5,000 incentive payment, the court grants Jacobs an incentive payment of $ 7,500.

*CONCLUSION*

Plaintiffs' motion for an award of attorneys' fees and costs is GRANTED for a total amount of $ 258,150.22, representing $ 255,000 in attorneys' fees and $ 3,150.22 in costs. Named plaintiff Alexander Jacobs is awarded an incentive payment of $ 7,5000.

IT IS SO ORDERED.

Dated: October 26, 2009

/s/ Marilyn Hall Patel

MARILYN HALL PATEL

United States District Court Judge

Northern District of California