# EXHIBIT 18

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INTEGRATED ORTHOPEDICS, INC., *on behalf of itself and a certified class of others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>UNITEDHEALTH GROUP, *et al.*,<br><br>Defendants. | No. 11-cv-425 (ES)(CLW) |

**DECLARATION OF ANDREW N. GOLDFARB IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARD FOR CLASS REPRESENTATIVE**

I, Andrew N. Goldfarb, declare as follows:

1. I am an attorney-at-law licensed to practice in the District of Columbia, New York, and California, and have been admitted to this Court.

2. I am a partner at Zuckerman Spaeder LLP ("Zuckerman"), and am counsel to Plaintiff and the certified class in the above-captioned action. I have personal knowledge of the facts contained in this declaration and, if called, could and would testify competently thereto under oath.

3. I submit this Declaration in support of Plaintiff's Motion for Attorneys' Fees and Expenses and Service Award and the supporting Memorandum of Law.

4. Exhibit A hereto is the Declaration of Marc I. Gross, Esq., of Pomerantz LLP (the "Gross Declaration").

5. Exhibit B hereto is the Declaration of John W. Leardi, Esq., of Buttaci Leardi & Werner, LLC (the "Leardi Declaration").

6. Exhibit C hereto is the Declaration of Anthony Maul, Esq., of The Maul Law Firm, P.C. (the "Maul Declaration").

## I. <u>Class Counsel</u>

7. On October 15, 2020, the Court preliminarily appointed Zuckerman, Buttaci Leardi & Werner, LLC ("BLW"), and The Maul Law Firm, P.C. ("Maul") to serve as Class Counsel representing the class (the "Class"). ECF No. 423.

### A. Zuckerman Spaeder LLP

8. Founded in 1975, Zuckerman is a national litigation boutique that represents individual and institutional clients in high-stakes civil and criminal cases. Zuckerman counts among its ranks many of the nation's leading lawyers, including former federal prosecutors and public defenders, as well as attorneys who have served in congressional offices and federal agencies. The firm is frequently named to *The National Law Journal's* "Midsize Hot List," and was recognized by The American Lawyer as a finalist for its "Litigation Boutique of the Year" each year it has selected firms for such distinction. Zuckerman is also the top-listed firm for white collar criminal defense in Best Lawyers, with more

attorneys recognized in that category than any other firm in the country, and in 2016 *U.S. News and World Report* ranked the firm in the top-tier nationally for commercial litigation. The firm's attorneys have extensive experience in matters related to securities violations, tax controversy, political law, legal ethics, food and drug law, and health care fraud.

9. Zuckerman sets hourly rates to be competitive with peer firms in the national market for complex litigation. Those rates do not account for the assumption of risk that comes from taking cases on a full contingency basis, as in this case.

10. Here, Zuckerman calculated its lodestar using the rates that Zuckerman presumptively and regularly charges for complex, high-stakes litigation matters, which—as in this case—often involve well-funded adversaries represented by large, sophisticated, national law firms. These rates are set annually after analysis of information about billing rates from multiple sources regarding peer firms that engage in such litigation, including proprietary surveys published by accounting firms. Such information contains rates based on position (e.g., partner, associate) and experience (i.e., number of years out of law school). Zuckerman concentrates its analysis on firms engaged in complex litigation matters (other than intellectual property), including firms against which Zuckerman regularly competes for business and firms that Zuckerman regularly litigates with or against.

The rates typically fall in the middle range of relevant reported rates for such firms, i.e., the band that is 25% below and 25% above the median rate for a lawyer with the same level of experience. For hourly fee engagements in some cases (such as a large volume matter unlikely to raise payment issues, a matter for a longtime client, or a matter involving particular circumstances, such as smaller or local litigation), the firm may discount these rates.

11. I understand that for the past three years, the firm's realization rate (dollars collected on dollars billed) on its charged rates has averaged just under 95% in matters with hourly billing arrangements.

12. Zuckerman clients have paid the rates of Mr. Hufford, Mr. Cowart, and me (as well as the other lawyers and firm personnel included in the lodestar) in hourly fee arrangements. For example, in the past year Mr. Hufford and Mr. Cowart have represented medical laboratories, oncology facilities, and other medical providers on different ERISA matters on an hourly fee basis. And in different lawsuits over the past few years, clients including a post-bankruptcy liquidating trustee, a manufacturer of certain aerospace products, and a drug manufacturer have paid my hourly rates to prosecute and defend cases in both state and federal court.

13. Messrs. Hufford and Cowart, and William Meyer, were the attorneys at Zuckerman with principal responsibility for this matter from 2014-2018. After Mr. Meyer left the firm, I also assumed primary responsibility for the case.

14. Mr. Hufford holds a Bachelor of Arts and a Master of Urban Affairs from Wichita State University. He graduated from Yale Law School in 1985. After law school, he spent two years in the Honors' Attorney program for the U.S. Department of the Treasury and six years as a litigation associate at Davis Polk. Mr. Hufford then moved to one of the oldest plaintiff-side class action securities law firms in the country, founded by the dean of the class action bar, Abraham Pomerantz. By the time he left the firm, at the end of 2013, he was a named partner of the firm, Pomerantz Grossman Hufford Dahlstrom & Gross LLP. Now known as Pomerantz LLP, Pomerantz was historically a firm that focused on § 10(b) securities litigation, Mr. Hufford created a successful new practice group, focusing on ERISA-based litigation brought on behalf of healthcare providers and their patients against health insurers. In 2014, Mr. Hufford moved his practice to Zuckerman.

15. While at Pomerantz, Mr. Hufford led litigation that resulted in two of the largest recoveries ever obtained in health insurance class actions. His work on litigation against United Healthcare led to a $350 million settlement to reimburse providers and subscribers whose ERISA rights had been violated (*American*

*Medical Ass'n et al. v. United HealthCare Corp., et al.*, Master File No. 00 Civ. 2800 (LMM) (GWG) (S.D.N.Y. 2010)). Similar consolidated actions against Health Net resulted in a $250 million settlement (*McCoy v. Health Net, Inc., et al.* (03-cv-1801), *Wachtel v. Health Net, Inc., et al.* (0l-cv-4183), and *Scharfman v. Health Net, Inc., et al.* (05-cv-0301) (D.N.J. 2008)).

16. Mr. Hufford was named by *Law360* as a "Health MVP" in 2015, 2016, and 2017. He was chosen as a Plaintiff's Attorney "Trailblazer" in 2017 by *The National Law* Journal. He has successfully argued landmark health care appeals, including:

a. *N. Jersey Brain & Spine Ctr. v. Aetna Inc.*, 2015 WL 5295125 (3d Cir. Sept. 11, 2015), and *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 2015 WL 5313631 (3d Cir. Sept. 11, 2015), which established a new Third Circuit standard for provider standing to sue under ERISA;

b. *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125 (2d Cir. 2015), which held that a health plan administrator may be sued under ERISA for both benefits and ERISA violations; and

c. *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376 (5th Cir. 2011), concerning the scope of ERISA preemption.

17. Mr. Cowart graduated from the University of Michigan in 1993 and Northwestern University Law School in 1999. Upon graduation, he served as a Law Clerk to the Honorable Richard Enslen, Chief Judge of the United States District Court for the Western District of Michigan. Thereafter, from 2000 through

2005, Mr. Cowart was a Litigation Associate at Sidley Austin LLP, specializing in complex commercial litigation. From 2005 through 2013, Mr. Cowart was an Associate and then a Partner at Pomerantz, specializing in ERISA, securities, antitrust, and consumer fraud class action litigation. In 2014, Mr. Cowart joined Zuckerman as a partner when he and Mr. Hufford moved their practice there.

18. In addition to the cases cited above, Mr. Hufford and/or Mr. Cowart have also served as co-lead counsel in other national health care litigation against United, Aetna, WellPoint, CIGNA, and Blue Cross and Blue Shield entities, including:

a. *Wit v. United Behavioral Health*, No. 14-CV-02346-JCS (N.D. Cal.) (trial victory in March 2019 requiring defendant to reprocess claims for class of more than 50,000 people with behavioral health or substance abuse disorders);

b. *Alexander v. United Behavioral Health*, No. 14-CV-02346-JCS (N.D. Cal.);

c. *DeMaria v. Horizon Healthcare Svces., Inc.*, No. 2:11-cv-07298 (WJM), 2016 WL 6089713 (D.N.J. Oct. 18, 2016)

d. *Craft v. Health Care Serv. Corp.*, 84 F. Supp. 3d 748 (N.D. Ill. 2015);

e. *Conn. Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP*, 128 F. Supp. 3d 501 (D. Conn. 2015);

f. *Blue Cross & Blue Shield of Rhode Island v. Korsen et al.*, No. 09-cv-00317-L-LDA (D.R.I. 2014);

g. *Meidl v. Aetna Inc., et al.*, No. 15-cv-01319-JCH (D. Conn.) ($6.2 million settlement for certified class of people with major depression); and

h. *Des Roches v. Cal. Physicians' Serv., et al.*, No. 16-cv-02848-LHK (N.D. Cal.).

19. Mr. Meyer is a 1977 graduate of The Ohio State University and received his J.D. from The George Washington University Law School in 1982. From 1982-88, Mr. Meyer was an associate, and then partner, at the Baltimore firm of Weinberg and Green. From 1988-91, Mr. Meyer was an Assistant United States Attorney for the District of Maryland, responsible for litigating a wide variety of criminal and civil matters. As counsel at ZS, Mr. Meyer focused his practice on class action litigation, including Medicaid class actions against state agencies, class actions against banks and title insurance companies, and ERISA class action litigation.

20. I am a 1990 graduate of Harvard College, and received my J.D. from Georgetown University Law Center in 1995. After four years at a boutique firm focused on food and drug law, I spent six years as a trial attorney in the United States Department of Justice, where I was a core member of the team that successfully prosecuted the federal government's civil RICO action against the tobacco industry. In 2005, I moved to Zuckerman, where I have litigated a wide variety of civil and criminal matters, along with a focus on pharmaceutical and health law. Class action litigation has been a focus of my litigation work, including ERISA class actions. In addition to this case, class action or putative cases I have litigated or am currently litigating include:

a. *Meidl v. Aetna Inc., et al.*, No. 15-cv-01319-JCH (D. Conn.) ($6.2 million settlement for certified class of people with major depression);

b. *Weil v. Cigna Health and Life Ins. Co.*, No. 2:15-cv-07074-MWF-JPR (C.D. Cal.) ($2.75 million settlement for people with major depression);

c. *Peterson v. UnitedHealth Group, Inc.*, No. 14-2101 (PJS/BRT) (D. Minn.);

d. *Riverview Health Inst. v. UnitedHealth Group, Inc.*, No. 15-3064 (PJS/BRT) (D. Minn.); and

e. *O'Dowd v. Anthem, Inc.*, No. 14-cv-02787-KLM (D. Colo.).

**B. Pomerantz LLP**

21. As more fully set out in the Gross Declaration (Ex. A), the Pomerantz firm is a nationally recognized leader in class action litigation. While Pomerantz historically focused on § 10(b) securities litigation, Mr. Hufford helped to develop an ERISA health care practice. Pomerantz lead the prosecution of this case from its pre-filing investigation through the initial round of briefing on class certification.

**C. Buttaci Leardi & Werner LLC**

22. As more fully set out in the Leardi Declaration (Ex. B), BLW's practice for the last 15 years has focused exclusively on representing health care providers and provider-related entities, including many ONET providers who are members of the Class. BLW has partnered with Zuckerman on several ERISA class action cases.

**D. Maul Law Firm**

23. As more fully set out in the Maul Declaration (Ex. C), the Maul Law Firm focuses on litigation, including ERISA individual and class action cases. As an associate at Pomerantz, Mr. Maul who dedicated almost 1,000 hours to this case before leaving in 2014 to start his own firm. He continued to work actively on this case.

## II. Plaintiff's Retention of Class Counsel in this Case

24. In 2010, the original plaintiffs retained Mr. Hufford to investigate, and potentially litigate, ERISA claims against United on behalf of Plaintiff and a putative class of similarly situated ONET providers relating to their lack of procedural rights to challenge Claim Redeterminations that result in Overpayment Determinations and Repayment Requests. The initial complaint was filed in January 2011. ECF No. 1. When Messrs. Hufford and Cowart moved to Zuckerman at the start of 2014, Plaintiff retained Zuckerman to continue to litigate the case along with BLW and, later in 2014, Mr. Maul.

25. After extensive discovery, negotiated stipulations by the parties and orders by this Court, and multiple rounds of class certification briefing, on August 28, 2014, this Court granted plaintiffs' motion to certify a class of out-of-network providers with unresolved Repayment Requests. See ECF No. 308 at 44 n.25; ECF No. 295 (describing class definition). The certification was subject to submission

of additional evidence that one of the named plaintiffs at the time, Tri3, had a claim that fit within the definition of the Class. ECF No. 308.

26. On December 2, 2014, this Court entered an order granting the unopposed motion filed by plaintiffs to substitute Integrated Orthopedics ("IO") in place of Tri3 as Named Plaintiff and Class Representative. ECF No. 319. On December 15, 2014, the Court entered an order vacating the August 28, 2014 class certification order and unconditionally certifying the Class under Rule 23(b)(1) and (b)(2), with IO as Class Representative. ECF No. 321.

## III. Activities of Class Counsel and Hours Expended

27. Counsel have collectively spent over 11,400 hours on this case. The principal activities have been (a) performing an extensive pre-suit investigation; (b) conducting legal and factual research, including evaluating the case under Rule 23; (c) drafting multiple complaints and oppositions to motions to dismiss; (d) conducting extensive class-related discovery; (e) drafting and arguing a motion for class certification, which involved multiple rounds of briefing and multiple decisions by the Court; (f) conducting additional fact document and deposition discovery about the merits of the case, including 11,600 documents consisting of approximately 162,000 pages and 27 separate depositions between the parties; (g) briefing a motion for summary judgment; (h) opposing United's cross-motion for summary judgment; (i) opposing United's motion to decertify the Class; (j)

engaging in extensive settlement negotiations; (k) participating in a mediation with Judge Garrett Brown of JAMS; (l) meeting and conferring with the client; and (m) developing and implementing case strategy and management.

28. To achieve the result in the case, Class Counsel had to address the practical obstacles faced by ONET providers when United makes an after-the-fact redetermination that it overpaid them for a prior service. Class Counsel marshalled the evidence, and devised the legal theories, to successfully argue that: (i) Overpayment Determinations constitute "adverse benefit determinations" under ERISA; (ii) ONET providers whose services are subject to Claim Redeterminations by United that result in Repayment Requests lacked access to important information, such as the relevant plan terms about ONET reimbursement, that is necessary to effectively challenge Overpayment Determinations; (iii) ONET providers who have assignments from their patients should have the same ERISA rights as the assignor-patients to challenge such Overpayment Determinations; (iv) United had waived its right to enforce anti-assignment provisions in its plans; and (v) the Court should certify a class of ONET providers who were subject to such Claim Redeterminations and Repayment Requests.

29. Through December 2020, the total hours spent on this case by each of the firms are as follows:

| Firm | Total Hours |
|---|---:|
| Pomerantz | 6,313.65 |
| Zuckerman Spaeder | 2,992.05 |
| Buttaci Leardi & Werner | 1,057.00 |
| Maul Law Firm | 1,045.90 |
| **Total** | **11,408.60** |

30. I estimate that Class Counsel will spend another 40-50 hours on the case in connection with settlement-related activities, including preparing the Fee Motion and the motion for final approval, addressing any objections to the settlement that the Settlement Administrator may receive through the notice period, which runs until April 5, 2019, and preparing for and participating in the Fairness Hearing currently scheduled for May 24, 2019.

31. The 11,408 hours spent to date by Class Counsel on this matter represent a significant investment of time on a risky, contingent matter with no guarantee of success. The vast majority of revenue earned by Zuckerman comes from billable time, and those hours could have been spent on billable matters that would have generated substantial revenue for Zuckerman. This investment of time was particularly significant because Zuckerman, BLW, and Maul are relatively small firms that do not have the personnel or resources of much larger law firms. In short, the time devoted by Class Counsel to this case was a major investment of both firms' resources to the financial detriment of other uses of that time.

## IV. <u>Class Counsel's Lodestar</u>

32. To facilitate the Court's determination of a reasonable fee in this case, counsel are providing charts that reflect the current rates charged by each timekeeper who billed time in this matter, and total hours expended by each timekeeper. Plaintiff requests fees that are less than half of Class Counsel's lodestar. Lodestar calculations use current rates because "[t]o take into account delay in payment, the hourly rate at which compensation is to be awarded should be based on current rates rather than those in effect when the services were performed." *Lanni v. State of New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001) (quotation and citation omitted).[1] The total lodestar of each firm is as follows:

| **Firm** | **Lodestar** |
|---|---|
| Pomerantz | $4,369,647.25 |
| Zuckerman | $2,355,475.00 |
| Buttaci Leardi & Werner | $673,682.50 |
| Maul Law Firm | $705,982.50 |
| **Total Lodestar** | **$8,104,787.25** |

33. The Settlement provides for United to pay $4,210,000 for attorneys' fees and expenses. After accounting for the expenses of $250,511.62 (described below), the amount available for attorneys' fees is $3,959,488.38.

[1] Upon request, Class Counsel will provide time records for the listed timekeepers for *in camera* review by the Court.

34. Dividing the amount available for attorneys' fees by Class Counsel's total lodestar shows that Plaintiff's fee request amounts to 49.45% of Class Counsel's lodestar.

35. Zuckerman's lodestar, broken down by timekeeper, is as follows:

| **Name** | **Title** | **Hourly Rate ($)** | **Hours** | **Amount ($)** |
|---|---|---|---|---|
| Michael R. Smith | Partner | 1,145.00 | 12.20 | 13,969.00 |
| Cyril V. Smith | Partner | 980.00 | 11.60 | 11,368.00 |
| Caroline E. Reynolds | Partner | 825.00 | 40.40 | 33,330.00 |
| Ellen D. Marcus | Partner | 670.00 | 7.30 | 4,891.00 |
| Andrew N. Goldfarb | Partner | 860.00 | 73.30 | 63,038.00 |
| John J. Connolly | Partner | 895.00 | 14.60 | 13,067.00 |
| Conor O'Croinin | Partner | 765.00 | 0.50 | 382.50 |
| Jason S. Cowart | Partner | 980.00 | 533.15 | 522,487.00 |
| D. Brian Hufford | Partner | 1,145.00 | 510.20 | 584,179.00 |
| William K. Meyer | Counsel | 800.00 | 961.60 | 769,280.00 |
| Brian K. Mahanna | Associate | 575.00 | 10.10 | 5,807.50 |
| Rachel F. Cotton | Associate | 735.00 | 1.00 | 735.00 |
| Ramya Kasturi | Associate | 475.00 | 299.20 | 142,120.00 |
| Devon Galloway | Associate | 595.00 | 9.60 | 5,712.00 |
| Nina J. Falvello | Staff Attorney | 390.00 | 4.40 | 1,716.00 |
| Jer-Wei (Jay) Chen | Paralegal | 370.00 | 8.00 | 2,960.00 |
| Christine L. Vandergriff | Paralegal | 370.00 | 17.30 | 6,401.00 |
| Lori V. Duignan | Paralegal | 370.00 | 439.40 | 162,578.00 |
| Ashley C. Voss | Lit. Support | 330.00 | 3.10 | 1,023.00 |
| Rey Caling | Lit. Support | 210.00 | 0.70 | 147.00 |
| Patrick Schmidt | Lit. Support | 360.00 | 13.40 | 4,824.00 |
| Tareq Nascher | Lit. Support | 260.00 | 21.00 | 5,460.00 |
| **Total** | | | **2,992.05** | **2,355,475.00** |

The timekeeper-by-timekeeper breakdown of the lodestar for Pomerantz, BLW, and Maul are contained in Exs. A-C, respectively.

## V. Litigation Expenses

36. The table below reflects the $250,737.99 in total litigation expenses incurred by Class Counsel. As the firms' respective breakdown of their costs demonstrates, *see* Exhibits A-C, there were no large expenditures (*e.g.*, experts), but only normal litigation costs:[2]

| **Firm** | **Costs** |
|---|---:|
| Pomerantz | $131,512.95 |
| Zuckerman | $94,372.84 |
| Buttaci Leardi & Werner | $20,708.43 |
| Maul | $3,993.77 |
| **Total Costs** | **$250,737.99** |

37. The breakdown of Zuckerman's expenses by category is as follows:

| **Cost Description** | **Amount ($)** |
|---|---:|
| Court costs | 252.00 |
| Court reporters | 635.00 |
| Mediation | 12,712.50 |
| Express Delivery/Courier | 85.35 |
| Transcripts | 8,713.55 |
| Depositions | 632.35 |
| Auto Rental | 279.54 |
| Telephone Reimbursed | 401.19 |
| Pacer - Docket Research | 1,286.00 |
| Local Transportation | 520.07 |
| Non-local Travel | 14,150.36 |
| Meal Reimbursement | 159.21 |
| Outside Services | 21,708.50 |
| Miscellaneous | 1,686.41 |
| Lexis/Nexis Research | 268.27 |
| Westlaw Research | 30,882.54 |

[2] Upon request, Class Counsel will provide receipts for the listed expenses to the Court.

| | |
|---|---|
| **TOTAL** | **$94,372.84** |

## VI. Incentive Award for Named Plaintiff/Class Representative

38. Class Counsel’s experience is that providers, who depend upon insurance companies and plan administrators for the payment for their services, are reluctant to serve as named plaintiffs or class representatives in cases challenging health insurance practices. Here, Integrated Orthopedics willingly participated as the Named Plaintiff and Class Representative, and invested substantial time to locate and produce a significant volume of internal records. Three IO personnel sat for lengthy depositions—one IO executive gave two depositions. Its participation shined light on a practice alleged to be wrong and illegal, and to pursue relief that would ensure that not just it, but tens of thousands of other ONET providers, have procedural and information rights that are critical to allow them to challenge Repayment Requests that result from Claim Redeterminations. IO deserves the $40,000 incentive award that United agreed to pay.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 13, 2021 in Chevy Chase, Maryland.

Respectfully submitted,

____________________________

Andrew N. Goldfarb

**Exhibit A**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INTEGRATED ORTHOPEDICS, INC., *on behalf of itself and a certified class of others similarly situated,*<br><br>Plaintiff,<br>v.<br><br>UNITEDHEALTH GROUP, *et al.*,<br><br>Defendants. | No. 11-cv-425 (ES)(CLW) |

**DECLARATION OF MARC I. GROSS, ESQ. IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARD FOR CLASS REPRESENTATIVE**

I, Marc I. Gross Esq., submit this unsworn declaration under penalty of perjury and subject to the provisions of 28 U.S.C. § 1746, and declare as follows:

1. I am Senior Counsel in the firm of Pomerantz LLP ("Pomerantz" or the "Firm"), which served as co-lead counsel to Plaintiffs in this action through 2013. I submit this Declaration in support of Plaintiffs' Unopposed Motion for Award of Attorneys' Fees and Expenses and Service Award for Class Representative.

## I. Pomerantz LLP

2. The attorney at Pomerantz with principal responsibility for this matter was D. Brian Hufford. At the end of 2013, Mr. Hufford switched firms, moving to Zuckerman Spaeder LLP with Jason Cowart, Esq., another Pomerantz partner

working on the case. Anthony Maul, an associate who also dedicated substantial time to this matter, left Pomerantz in 2014 to open his own law firm.

3. Other Pomerantz attorneys who worked on this case include:

- **Robert J. Axelrod** was a former partner, member of the Firm's Insurance Practice Group, and leader of the Group's title, automobile, and homeowners insurance actions, as well as consumer fraud actions. He was on the successful trial team in *Addison v. American Medical Security* (Fla. Cir. Ct., Palm Beach Co.), the trial team in *Blue Cross Blue Shield of Rhode Island*, and the settled actions *American Medical Ass'n v. United Healthcare Corp.* ($350 million), *American Dental Ass'n v. Aetna, Inc.* (S.D. Fla.), *Steinberg v. Nationwide Mut. Ins. Co.* (E.D.N.Y.) (automobile insurance), and *Wachtel v. Health Net, Inc.* ($250 million) Mr. Axelrod was also lead counsel in *Raffone v. First American Title Ins. Co*. (Fla. Cir. Ct., Nassau Co. Fl.), *Higgins v. Commonwealth Land Title Ins. Co*. (Fla. Cir. Ct., Nassau Co. Fl.) (class certifications upheld on appeal), and *Grosso v. Fidelity National Title Ins. Co.* (Fla. Cir. Ct. Broward Co.) (class certification granted). Mr. Axelrod co-wrote the *amicus* brief on behalf of the American Medical Association and the Medical Society of New Jersey in *Oxford Health Plans, LLC v. Sutter.*

- **Shaheen Rushd** joined the Firm January 1983, became a partner in July 1991 and retired from practice while this case was pending. Ms. Rushd specialized in securities, antitrust, and wage and hour class actions and was a member of the Firm's Institutional Investor Practice Group. She was involved in many of the Firm's major cases, including *Treasurer of New Jersey v. AOL Time Warner Inc.* (Super. Ct. N.J.) ($50 million settlement in opt out action); *Comverse* (E.D.N.Y.) ($225 million settlement*); EBC I, Inc. v. Goldman Sachs & Co.* (New York State's highest court, for the first time, found that lead underwriters of IPOs may owe fiduciary duties to the issuer); and *Kronfeld v. TWA* (non-disclosure of preliminary merger negotiations can be misleading). She was also part of the successful trial teams in *Walsh v. Northrop Grumman, et al.*, CV-94-5105 (E.D.N.Y.) and *Rauch v. Bilzerian*, 88 Civ. 15624 (Super. Ct. N.J.). In *Bilzerian*, the court complimented the Pomerantz team as being "exceptionally competent counsel."

Ms. Rushd graduated *summa cum laude* from New York Law School in 1981 and obtained her undergraduate degree *magna cum laude* in 1977 from Kalamazoo College, where she was elected to Phi Beta Kappa.

- **Murielle Steven Walsh** joined the Firm in 1998 and became Partner in 2007. She was named a 2020 Plaintiffs' Lawyer Trailblazer by the *National Law Journal*, an award created to "honor a handful of individuals from each practice area that are truly agents of change" and was also honored as a 2020 Plaintiffs' Trailblazer by the *New York Law Journal*. Ms. Walsh was honored in 2019 and 2020 as a Super Lawyers® "Top-Rated Securities Litigation Attorney," a recognition bestowed on 5% of eligible attorneys in the New York Metro area. Lawdragon name her a Top Plaintiffs' Financial Lawyer in 2019 and 2020.

  During her career at Pomerantz, Ms. Walsh prosecuted highly successful securities class action and corporate governance cases. She was one of the lead attorneys litigating *In re Livent Noteholders' Securities Litigation*, a securities class action in which she obtained a $36 million judgment against the company's top officers, a ruling which was upheld by the Second Circuit on appeal. Ms. Walsh was also part of the team litigating *EBCI v. Goldman Sachs*, where the Firm obtained a landmark ruling from the New York Court of Appeals, that underwriters may owe fiduciary duties to their issuer clients in the context of a firm-commitment underwriting of an initial public offering.

- **Tamar A. Weinrib** joined Pomerantz in early 2008. She was Of Counsel to the Firm from 2014 through 2018 and became Partner in 2019. In 2020, The Legal 500 honored her as a Next Generation Partner. Ms. Weinrib was named a 2018 Rising Star under 40 years of age by Law360, a prestigious honor awarded to a select few "top litigators and dealmakers practicing at a level usually seen from veteran attorneys." Tamar has been recognized by Super Lawyers® as a New York Metro Rising Star every year from 2014 through 2019.

  In 2019, Ms. Weinrib and Managing Partner Jeremy Lieberman achieved a $27 million settlement for the Class in *Strougo v. Barclays PLC*, a high-profile securities class action in which Pomerantz was Lead Counsel. Plaintiffs alleged that Barclays PLC misled institutional investor clients about the extent of the banking giant's use of so-called "dark pool" trading systems. In approving the settlement in *Strougo*, Judge Victor Marrero of the

Southern District of New York stated: “Let me thank counsel on both sides for the extraordinary work both sides did in bringing this matter to a reasonable conclusion. As the parties have indicated, the matter was intensely litigated, but it was done in the most extraordinary fashion with cooperation, collaboration, and high levels of professionalism on both sides, so I thank you.”

- **Leigh Handelman Smollar** was Partner in the Firm from January 2012 till her recent retirement. Just before her stepping out, she won an Eleventh Circuit reversal of the motion to dismiss In June 2019 Ms. Smollar achieved a settlement of $11,900,000 for the Class in a litigation against medical device company Thoratec Corporation alleging that the company misled investors about the safety of one of its primary products, the HeartMate II Left Ventricular Assist Device. *Cooper v. Thoratec Corp.*, No. 14-cv-360 (N.D. Cal.) She was an integral member of the litigation team that achieved a settlement of $19 million in cash and $1 million worth of shares of common stock on behalf of investors who suffered losses as the result of an alleged “pump and dump” scheme orchestrated by Galena Biopharma. *In re Galena Biopharma, Inc.*, No. 14-cv-00367 (D. Or.)

  In 2015, Ms. Smollar published an article in the Loyola Law Journal entitled, *The Importance of Conducting Thorough Investigations of Confidential Witnesses in Securities Fraud Litigation*. She has authored several articles and updates for the Illinois Institute for Continuing Legal Education (IICLE), including *Shareholder Derivative Suits and Stockholder Litigation in Illinois*, published in IICLE Chancery and Special Remedies 2004 Practice Handbook; *Prosecuting Securities Fraud Class Actions*, published in IICLE Chancery and Special Remedies 2009 Practice Handbook, including a 2011 supplement to Chancery and Special Remedies; and a new chapter in the 2013 Edition of the Chancery and Special Remedies Practice Handbook. In June 2011, as a panelist at the Illinois Public Employee Retirement Systems Summit in Chicago, Ms. Smollar gave a presentation entitled *Carrying out Fiduciary Responsibilities in Management and Investments*.

- Personally, I have been with Pomerantz LLP for over four decades, serving as its Managing Partner from 2009 to 2016. During that time frame, I led securities lawsuits against SAC Capital (Steven Cohen - insider trading); Chesapeake Energy (Aubrey McClendon - insider bail out); Citibank (analyst Jack Grubman - AT&T research report upgrade to facilitate

underwriting role); Charter Communications (Paul Allen - accounting fraud); and numerous others. I also litigated the market efficiency issues in the Firm's landmark $2.95 billion recovery in *In re Petrobras Securities Litigation* (S.D.N.Y), a securities class action arising from a multi-billion-dollar kickback and bribery scheme involving Brazil's largest oil company, Petróleo Brasileiro S.A. (Petrobras). I am currently Senior Counsel to the Firm.

I am the President of the Institute of Law and Economic Policy ("ILEP"), which has organized symposiums each year where leading academics have presented papers on securities law and consumer protection issues. These papers have been cited in over 60 cases, including several in the United States Supreme Court. http://www.ilep.org.

- **Susan J. Weiswasser** was a member of the team litigating the *Petrobras* securities class action lawsuit in which the Firm, as sole Lead Counsel, achieved, in January 2018, an historic $2.95 billion settlement for the Class. She also played an active role in other high-profile securities fraud cases.

- **Jennifer Banner Sobers** focuses her practice on securities litigation, and is currently Of Counsel to the Firm. In 2020, both the *New York Law Journal* and Law360 honored Ms. Sobers with Rising Star awards. In 2019, after a rigorous nomination and vetting process, she was honored as a member of the National Black Lawyers Top 100, an elite network of the top 100 African American attorneys from each state. Ms. Sobers also played an integral role on the team litigating the *Petrobras* case.

## II. <u>Pomerantz's Substantial Role in the Case</u>

4. As co-lead counsel on the case for over three years, from pre-suit investigation through motions to dismiss at the end of 2013, Pomerantz shouldered the load in the development, filing, and class certification phases of the case. Pomerantz prepared multiple complaints, defeated a motion to dismiss, aggressively pursued fact discovery related to both class certification and the merits, and then briefed the initial motion for class certification.

## III. Pomerantz's Lodestar

5. The following charts reflect the 2020 rates charged by each of the Pomerantz attorneys who billed time in this matter.[1]

| NAME | TITLE | HOURLY RATE ($) | HOURS | LODESTAR ($) |
|---|---|---|---|---|
| Axelrod, Robert J. | Partner | $790 | 263.75 | $208,362.50 |
| Cowart, Jason S. | Partner | $980 | 163.50 | $160,230.00 |
| Graham, Cary S. | Project Associate | $450 | 151.70 | $68,265.00 |
| Grant, Delisha J. | Staff Attorney | $475 | 571.80 | $271,605.00 |
| Gross, Marc I. | Partner | $1,000 | 2.50 | $2,500.00 |
| Hollman, Daniel | Attorney | $505 | 1707.70 | $862,388.50 |
| Hufford, D. B. | Partner | $1,095 | 1379.30 | $1,510,333.50 |
| Maul, Anthony F. | Associate | $600 | 994.80 | $596,880.00 |
| Rushd, Shaheen | Partner | $810 | 141.40 | $114,534.00 |
| Smollar, Leigh H. | Partner | $870 | 43.00 | $37,410.00 |
| Sobers, Jennifer B. | Associate | $560 | 107.00 | $59,920.00 |
| Staple, Dina | Attorney | $570 | 270.25 | $154,042.50 |
| Walsh, Murielle J. | Partner | $890 | 34.25 | $30,482.50 |
| Weinrib, Tamar A. | Partner | $765 | 9.25 | $7,076.25 |
| Weiswasser, Susan J. | Associate | $625 | 332.70 | $207,937.50 |
| Wright, Ryan | Associate | $560 | 136.75 | $76,580.00 |
| Cavener, Ann M. | Paralegal | $275 | 4.00 | $1,100.00 |
| | | | | |
| **TOTALS** | | | **6313.65** | **$4,369,647.25** |

## IV. Pomerantz's Expenses

6. Below is a table with the breakdown of Pomerantz's expenses by

[1] Upon request, Class Counsel will provide time records for the listed timekeepers for *in camera* review by the Court.

category.[2]

| Cost Description | Amount ($) |
|---|---|
| Filing fees | 605.00 |
| Computer research | 13,180.00 |
| Database charges | 55,593.19 |
| Deposition | 10,620.09 |
| Meals | 1,347.12 |
| Photocopy charges | 15,164.57 |
| Postage | 9.45 |
| FedEx | 466.87 |
| Press releases/newswires | 580.00 |
| Process server | 270.00 |
| Telephone charges | 1,558.41 |
| Non-local travel | 25,362.95 |
| Local transport | 6,034.79 |
| Misc. | 720.51 |
| | |
| **TOTAL** | **$131,512.95** |

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 13, 2021 in New York, NY.

Respectfully submitted,

/s/__Marc I. Gross__________________
Marc I. Gross, Esq.

[2] Upon request, Class Counsel will provide receipts for the listed expenses to the Court.

<u>**Exhibit B**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INTEGRATED ORTHOPEDICS, INC., *on behalf of itself and a certified class of others similarly situated,*<br><br>Plaintiff,<br>v.<br><br>UNITEDHEALTH GROUP, *et al.*,<br><br>Defendants. | No. 11-cv-425 (ES)(CLW) |

**DECLARATION OF JOHN W. LEARDI, ESQ. IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES AND SERVICE AWARD FOR CLASS REPRESENTATIVE**

I, John W. Leardi, Esq., submit this unsworn declaration under penalty of perjury and subject to the provisions of 28 U.S.C. § 1746, and declare as follows:

1. I am a Member of the law firm of Buttaci Leardi & Werner LLC ("BLW"), which served as co-lead counsel to Plaintiffs and Class Counsel in the above-referenced matter. I submit this Declaration in support of Plaintiffs' Unopposed Motion for Award of Attorneys' Fees and Costs and Service Award.

2. I am the attorney with principal responsibility for BLW's representation of Plaintiffs and the Certified Class in this matter. I am a 1997 graduate of the University of Scranton where I obtained a Bachelor of Science degree; and a 2004 graduate of the Seton Hall University School of Law from which I received a J.D.

*cum laude*. From 2004-05, I was an associate with the firm of Porzio, Bromberg & Newman P.C. where I represented pharmaceutical and medical device manufacturers in product liability and consumer fraud litigation. In 2005, I joined Buttaci & Associates LLC to form Buttaci & Leardi LLC. In 2015, the firm name changed again to Buttaci Leardi & Werner LLC.

3. BLW is a progressive, multi-service health law boutique that caters primarily to healthcare providers, provider-related entities, and their patients. Our clients include a diverse range of healthcare providers and organizations, including physicians and physician groups, physical therapists and other allied health professionals, urgent care centers, outpatient surgical facilities, behavioral health systems, substance abuse disorder treatment facilities, comprehensive outpatient rehabilitation facilities, adult day centers, clinical laboratories, durable medical equipment suppliers, independent pharmacies, payment clearinghouses, group purchasing organizations, health IT companies, management service organizations, and third-party billing services. These provider clients include many "out-of-network" providers, who choose not to contract with managed care networks.

4. While our firm's offerings run the full gamut of health law, our practice has a special focus on provider reimbursement issues, including third-party payer audits, and benefit claim reimbursement disputes. While healthcare providers have seen a dramatic rise in refund requests and overpayment demands from both

Medicare and commercial payers over the last 15 years, these disputes have been a core focus of our firm from the first day we opened our doors. And today we routinely counsel providers (and their attorneys) throughout the country in overpayment disputes with both governmental agencies and private insurance carriers. Similarly, we counsel our clients on how to handle third-party claims submissions from the moment the patient walks in the door for the first time to when the patient is discharged, and a significant balance remains unpaid. Our efforts on behalf of our provider (and patient) clients have secured millions upon millions of dollars in previously denied reimbursement.

5. The overwhelming majority of BLW's revenue is generated through fee-based engagements, including hourly, monthly flat-fees, and per-transaction flat-fees. Only a small portion (less than 10%) of the firm's revenues are earned on fully-contingent or partial-contingent fee matters. That said, we have collaborated often with our co-counsel in this case, Zuckerman Spaeder LLP, in bringing several ERISA class actions, including, but not limited to: (i) *DeMaria v. Horizon Healthcare Svces., Inc.*, No. 2:11-cv-07298 (WJM), 2016 WL 6089713 (D.N.J. Oct. 18, 2016) (granting plaintiffs' motions for final approval of class action settlement creating a $33 million-dollar settlement fund to compensate chiropractors affected by Horizon's improper bundling policies and payment of attorneys' fees and costs from the fund); and (ii) *Med. Soc'y of N.Y. v.*

*UnitedHealth Grp. Inc.*, 332 F.R.D. 138 (S.D.N.Y. 2019) (certifying a class of United beneficiaries or their assignees for purposes of seeking declaratory and injunctive relief related to United's refusal to reimburse claims submitted by office-based surgery providers and appointing Zuckerman Spaeder LLP and BLW as co-lead class counsel). In addition to our contingent work in managed care class actions, our firm is also co-lead counsel in two other putative class actions seeking recourse on behalf of providers harmed by the deceptive marketing practices of certain medical device manufacturers and their duly-authorized distributors. *See Bhambhani v. Innovative Health Sols., Inc.*, No. RDB-19-0355 (D. Md.) and *Munderloh v. Biegler GmbH*, No. 21-cv-08004-GMS (D. Az.).

## I. <u>BLW's Participation in the Case</u>

6. Our participation in the case and our collaboration with Messrs. Hufford and Cowart dates to the discussions and vetting of the original plaintiffs and claims, continued through the successful mediation sessions before Judge Brown, and culminated in the submission of the current motion. Our role extended beyond merely serving as local counsel, with our having participated in strategy discussions and decisions, contributed to briefing and motion-related submissions, reviewing and responding to written discovery, defending depositions, and serving as a primary point of contact for Integrated Orthopedics, the Class Representative; as our firm represents Integrated Orthopedics in multiple other matters.

## II. BLW's Lodestar

7. The following chart reflects rates charged by each of the BLW attorneys who billed time in this matter.[1] Notably, the hourly rates set forth below are in line with the hourly fees charged by our firm to our fee-based clients, subject of course, to discounting or other accommodations made on individual matters, or when accepting panel work from liability-carriers, particularly in the audit defense and false claims defense areas, where our number of insured matters has increased exponentially over the course of the last several years.

| NAME | TITLE | HOURLY RATE ($) | HOURS | LODESTAR ($) |
|---|---|---|---|---|
| John W. Leardi | Member | 650 | 773.30 | 502,645.00 |
| Vincent N. Buttaci | Member | 650 | 87.90 | 57,135.00 |
| Paul D. Werner | Member | 650 | 160.70 | 104,455.00 |
| Alyssa Sajczuk | Associate | 325 | 13.70 | 4,452.50 |
| Elizabeth A. Rice | Associate | 325 | 7.40 | 2,405.00 |
| Ashley M. Kotarski | Paralegal | 185 | 6.30 | 1,165.50 |
| Dana M. Large | Paralegal | 185 | 3.60 | 666.00 |
| Valerie R. Roche | Paralegal | 185 | 4.10 | 758.50 |
| **TOTALS** | | | **1,057.00** | **$673,682.50** |

[1] Upon request, Class Counsel will provide time records for the listed timekeepers for *in camera* review by the Court.

### III. <u>BLW's Expenses</u>

8. Below is a table with the breakdown of BLW's expenses by category. [2]

| **Cost Description** | **Amount ($)** |
|---|---:|
| Court costs | 1,350.00 |
| Transcripts | 2,990.45 |
| Mediation Fees | 16,517.98 |
| **TOTAL** | **$20,858.43** |

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 13, 2021 in Princeton, New Jersey.

Respectfully submitted,

John W. Leardi

[2] Upon request, Class Counsel will provide receipts for the listed expenses to the Court.

# <u>Exhibit C</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INTEGRATED ORTHOPEDICS, INC., *on behalf of itself and a certified class of others similarly situated*,<br><br>Plaintiff,<br>v.<br><br>UNITEDHEALTH GROUP, *et al.*,<br><br>Defendants. | No. 11-cv-425 (ES)(CLW) |

**DECLARATION OF ANTHONY MAUL, ESQ. IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEY'S FEES AND EXPENSES AND SERVICE AWARD FOR CLASS REPRESENTATIVE**

I, Anthony Maul, Esq., submit this unsworn declaration under penalty of perjury and subject to the provisions of 28 U.S.C. § 1746, and declare as follows:

1. I am the principal attorney of The Maul Law Firm, P.C., which serves as co-counsel to Plaintiffs and Class Counsel in the class action. I submit this declaration in support of Plaintiffs' Unopposed Motion for Award of Attorneys' Fees and Costs and Service Award.

2. I am a graduate of the University of California, Berkeley (B.A. 2000) and the New York University School of Law (J.D. 2003). I am licensed to practice law in both New York and California.

3. Prior to founding the Maul Firm in 2014, I was a litigation associate in

the New York offices of Latham & Watkins LLP (2004-2009) and Pomerantz LLP (2009-2014). This case was among the cases I worked on at Pomerantz LLP. I billed almost 1,000 hours on this case while at Pomerantz LLP. Since forming the Maul Firm, I have continued to work actively on this case.

4. For more than a decade, my practice has focused almost entirely on health insurance litigation arising out of ERISA and related laws. Through my legal practice, I have been able to compel significant reforms in the health insurance and managed care industries, and have recovered tens of millions of dollars in wrongly denied benefits on behalf of my clients.

5. In collaboration with my co-counsel, I have spearheaded cutting-edge health litigation around the country, including the following:

a. *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125 (2d Cir. 2015)

b. *Wit v. United Behavioral Health*, No. 3:14-cv-02346-JCS (N.D. Cal.)

c. *Alexander v. United Behavioral Health*, No. 3:14-cv-05337-JCS (N.D. Cal.)

d. *Peterson v. UnitedHealth Grp. Inc.*, No. 14–cv–2101 (D. Minn.)

e. *Riverview Health Inst. v. UnitedHealth Grp. Inc.*, No. 15-cv-03064 (D. Minn.)

f. *DeMaria v. Horizon Healthcare Servs., Inc.*, No. 11-cv-7298 (D.N.J.)

g. *In re Cigna-Am. Specialty Health Admin. Fee Litig.*, No. 16-cv-03967 (E.D. Pa.)

h. *High Street Rehab., LLC v. Am. Specialty Health Inc.*, No. 12-cv-07243 (E.D. Pa.)

6. The revenue generated by the Maul Firm comes from a mixture of hourly fee paying clients and contingency fee representation. In this case, I represented the Plaintiffs on a contingency basis.

7. My current hourly rate for complex litigation is $675 per hour, which reflects my training, education, and experience. My hourly rate is set to be competitive among ERISA litigation practitioners in the New York City and San Francisco markets. My previous fee applications have been approved in this and other Districts. *See Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 76 F. Supp. 3d 722 (N.D. Ill. 2014) (approving as reasonable $600/hr. fee*), rev'd on other grounds sub nom. Pa. Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*, 802 F.3d 926 (7th Cir. 2015); *DeMaria v. Horizon Healthcare Servs., Inc.*, No. 2:11-CV-07298 (WJM), 2016 WL 6089713, at *1 (D.N.J. Oct. 18, 2016) (approving as reasonable $600/hr. fee)

8. While at the Maul Firm, my work on this case included extensive involvement in discovery (including taking critical Rule 30(b)(6) depositions), drafting briefs for Plaintiffs' motions for class certification and summary judgment, drafting briefs in opposition to the Defendants' motions for summary judgment and to decertify the class, and providing important strategic input throughout the pendency of the litigation.

## I. Maul Firm's Lodestar

9. The following chart reflects my 2020 rate and the number of hours I worked on this case.

| NAME | TITLE | HOURLY RATE | HOURS | LODESTAR |
|---|---|---|---|---|
| Anthony Maul | Principal Attorney | $675.00 | 1045.9 | $705,982.50 |

## II. Maul Firm's Expenses

10. Below is a table with the breakdown of the Maul Firm's expenses by category.

| Cost Description | Amount ($) |
|---|---|
| Pacer - Docket Research | 201.60 |
| Non-local Travel | 3,097.52 |
| Meal Reimbursement | 16.39 |
| Outside Services | 123.31 |
| Westlaw Research | 554.95 |
| | |
| **TOTAL** | **$3,993.77** |

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 13, 2021 in Oakland, California.

Respectfully submitted,



Anthony Maul, Esq.