PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs and the Classes*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br>Related Case No. 3:14-CV-05337-JCS<br><br>**SUPPLEMENTAL DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS** |
| GARY ALEXANDER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>Defendant. | |

1     I, Richard M. Pearl, declare:

2     1.      I am a member in good standing of the California State Bar. I am in private

3  practice as the principal of my own law firm, the Law Offices of Richard M. Pearl, in Berkeley,

4  California. I specialize in issues related to court-awarded attorneys' fees, including the

5  representation of parties in fee litigation and appeals, serving as an expert witness, and serving as

6  a mediator and arbitrator in disputes concerning attorneys' fees and related issues. In this case, I

7  was retained by Plaintiffs' attorneys to render my opinion on the reasonableness of the attorneys'

8  fees they are requesting for their work in this matter, and my declaration doing so was filed with

9  Plaintiffs' fee motion on November 24, 2020 [Doc 507-12] ("Pearl 11/24/20 Decl."). This

10 Supplemental Declaration in support of Plaintiffs' motion is presented to address the objections

11 to Plaintiffs' requested fees presented in Defendants' Opposition, especially those submitted by

12 Defendants' fee auditor, James P. Schratz.

13    2.      The facts set forth herein are true of my own personal knowledge, and if called

14 upon to testify thereto, I could and would competently do so under oath.

15 **I.      Mr. Schratz's Opinions Are Entitled to Little or No Weight.**

16        **A.      Schratz Has No Meaningful Litigation Experience.**

17    3.      In my opinion, Schratz's lack of relevant qualifications, his record before other

18 courts, and the careless and dubious practices he employs to identify supposedly non-

19 compensable work seriously undermine his opinions and his credibility as an expert in the *Wit*

20 case.

21    4.      Initially, it bears noting that Schratz's opinions reflect a fundamental lack of prior

22 litigation experience involving vigorously contested trial court work undertaken on a contingent

23 fee basis on behalf of a nationwide class of plaintiffs. In fact, it appears that his actual practice as

24 an attorney mainly consisted of cases in which insurance companies would have funded the

25 defense at below-market rates. *See Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, 650.

26 *See* Schratz Decl., Exhibit 12 – Real Rate Report of 2018, p. 166 ("insurance litigation tends to

27 be less expensive than other types of litigation, as it is typically more repetitive and less

28

complex"). Since 1994, Schratz has mainly run a consulting firm focusing on fee audits, but has nowhere described involvement in litigating comparably complex cases.

5. Likewise, the overwhelming number of exhibits that Schratz has provided to this Court are significantly outdated, going back as far as 25 years. *See, e.g..*, Exhibit 1 (1995); Exhibit 2 (2004); Exhibit 3 (2005).

6. In contrast, I have been a consulting expert and/or expert witness in numerous similar California cases, both on the merits and with respect to attorneys' fees. *See* Pearl Decl., Ex. A. As ¶¶ 8 and 9 of my 11/24/20 declaration show, my testimony has been cited favorably in at least 37 reported opinions and fee orders. It also has been relied on in unreported fee orders that are too numerous to list. The three cases Schratz cites rejecting my opinion (at ¶¶ 113-114) do not undermine my opinion here in any way. The first (Exhibit 9) was based on a finding that a different forum applied, not that my rate evidence was inaccurate or insufficient. The second (Exhibit 10) was the same; it's worth noting that for the appellate fee motion in the same case, my opinion *was* cited and relied on as a basis for awarding a significantly higher rate (*Antoninetti v. Chipotle Mexican Grill, Inc.,* No. 08-558 67 (9th Cir. 2012), Order filed Dec. 26, 2012, at 6. In the third case, *Payne v. Bay Area Rapid Transit Dist.*, 2009 U.S. Dist. LEXIS 53455 (N.D. Cal. 2009), the prevailing attorney submitted my declaration from another case as an exhibit to his declaration in an attempt to justify another attorney's rate; it was rejected because the case was not complex and did not involve "high-profile boutique practices." At *7 n.3.

7. In contrast, this case is complex and does involve a highly respected litigation firm. Moreover, those few cases pale in comparison to the number of courts that have relied on my opinions; they also pale in comparison to the large number of cases expressly rejecting Schratz's opinions (*see* ¶ 8 *infra*).

**B.** **Schratz's Opinions Are Frequently Rejected by the Courts.**

8. In my opinion, Schratz's lack of relevant qualifications and his record before other courts seriously undermine his opinions and his credibility as an expert in the *Wit* case. In a footnote (¶ 36, fn. 1), Schratz lists seven cases in which he concedes that his opinions have been

rejected in whole or substantial part[1]: *Oberfelder v. City of Petaluma*, 2002 U.S. Dist. LEXIS 8635 (N.D. Cal. 2002), *aff'd*, 2003 U.S. App. LEXIS 11371 (9th Cir. 2003); *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1 (Cal. Ct. App. 2007); *Millar v. S.F. Bay Area Rapid Transit Dist.*, No. C830013-9, 2004 WL 5136089 (Cal. Super. Ct. Apr. 12, 2004); *Lopez v. S.F. Unified Sch. Dist.*, 385 F. Supp. 2d 981 (N.D. Cal. 2005); *Gober v. Ralphs Grocery*, No. N72142, 2007 WL 5465707 (Cal. Super. Ct. Mar. 28, 2017); *Miller v. Vicorp Rests., Inc.*, No. C-03-00777 RMW, 2006 WL 212021 (N.D. Cal. Jan. 11, 2006); Minute Order [Awarding Attorneys' Fees & Costs], *Pop, et al. v. Pasadena Area Cmty. Coll.*, Case No. BC481207 (Cal. Super. Ct., Cty. of Los Angeles, Feb. 5, 2014). That list, however, greatly understates the number of such cases. In fact, I am aware of at least fifteen (15) other cases in which Schratz's opinions regarding fee awards were either totally or largely rejected, including:

- *Curtin v. County of Orange* (C. D. Cal. Jan. 31, 2018, No. SACV16-00591-SVW-PLA) [In Chambers Order Regarding Renewed Motion for Judgment as a Matter of Law and Motion for Attorneys' Fees];

- *Bickley v. CenturyLink, Inc.* (C.D. Cal. Nov. 29, 2016) No. CV 15-1014-JGB (ASx), 2016 WL 9046911 [rejecting entirely Schratz's opinion regarding billing rates and accepting Schratz's opinions regarding reasonable hours only as to the issues that were unopposed, and even then not accepting his opinions in full];

- *Cruz v. Starbucks* (N.D. Cal. June 5, 2013) No. C-10-01868 JCS, 2013 WL 2447862 [rejecting Schratz's opinion as to billing rates in its entirety, along with his opinions regarding blocked bills and his approach to intra-office conferencing, and rejecting in substantial part his opinions regarding overstaffing and his general objection regarding excessive hours];

- *Davis v. Prison Health Services* (N.D. Cal. Sep. 25, 2012) No. C 09-2629 SI, 2012 WL 4462520, at *9 fn. 8 [declining to strike Schratz's declaration in its

---

[1] Cases in which I have been the opposing expert or counsel have been denoted with an asterisk (*).

entirety because some of his analysis was "not objectionable," but rejecting in whole certain categories in his declaration based on unsupported methodologies];

- *Johnson v. Sears*, Sacramento County Superior Court No. 34-2009-00054053-CU-WT-GDS, Ruling on Motion for Attorneys' Fees filed May 23, 2012;

- *Brown v. City of Pittsburgh* (W.D. Pa. May 27, 2010) No. 06-393, 2010 WL 2207935 [rejecting in full Schratz's opinions regarding reductions for partial success, the form of plaintiff's billing records, block billing, and costs; partially accepting Schratz' opinions as to excessive billings and the compensability of clerical tasks; and accepting his opinion regarding overstaffing as to only one billing entry];

- *\*Duran v. U.S. National Bank Association* (Alameda Cty. Super. Ct., Dec. 16, 2010, No. 2001-035537) [Order Granting in Part and Denying in Part: (1) Plaintiffs' Motion for Reasonable Attorneys' Fees; (2) Plaintiffs' Motion for Interest on Attorney Fees (vacated upon reversal of the merits);

- *Campbell v. AMTRAK* (N.D. Cal. 2010) 718 F. Supp. 2d 1093;

- *Pande v. ChevronTexaco Corp.* (N.D. Cal. Apr. 1, 2008) No. C-04-05107 JCS, 2008 WL 906507;

- *\*Rogers v. Colletto*, Sonoma County Superior Ct. No. 232836;

- *\*Kotla v. Regents of Univ. of Calif.*, Alameda County Superior Court No. V 014799-8; 12);

- *Armenta v. Osmose Wood Preserving Inc.*, San Luis Obispo County Superior Court, Case No. CV 000999, Order Granting Motion for Attorneys' Fees filed July 14, 2004;

- *Richards v. CH2MHill*, Sacramento County Superior Court No. 538663;

- *Besler v. Bd. of Educ. of West Windsor-Plainsboro Regional School Dist.*, Superior Court of New Jersey, Mercer County, Docket No. MER-L-000236-98. (Copies of the fee orders in these cases can be provided to the Court if requested);

4

- *Velez v. Wynne* (9th Cir. Jan. 29, 2007), No. 04-17425, 2007 WL 295502, where the Magistrate Judge who initially reviewed plaintiff's fee request, rejected most of Schratz' proposed reductions, and the Ninth Circuit reversed two additional reductions Schratz had recommended;

- *Davis v. Carlisle,* ADRS # 14-0571-BLS, Award on Petition for Arbitrator to Determine the Amount of of Attorneys' Fees and Costs, dated October 6, 2014;

- *Nadaf-Rahrov v. Nieman Marcus Group Inc.,* San Francisco Superior Court No. CGC-05-437680, Order Granting in Part and Denying in Part Planitiffs' [sic] Motion for Award of Attorneys' Fees, filed January 4, 2012.

9.     Schratz also has employed in this case, as I have seen him do in other cases, dubious practices in quantifying his proposed reductions: a) he often double or triple counts the same time entries as a basis for separate reductions (*see* Reynolds Supp. Decl., ¶¶ 9-11); b) by objecting to any entry in which the word "research" appears to justify his "legal research" objection, and to any entry in which a semi-colon appears as "block billing," he bases his proposed reductions on nothing more than his computer's word recognition program rather than whether the time entry reflects compensable work; c) he compounds that error by urging that *none* of the time in the entry be fully compensated, a practice the courts have condemned as "overbroad". *See Collins v. City of Los Angeles*, 205 Cal.App.4th 140, 158 (2012), in which the appellate court rejected an auditor's proposed reduction of an entire time entry when only one task was objectionable: "We conclude that there was no reasonable basis for the trial court to deny compensation for that part of the attorney and paralegal time designated by [the auditor] as administrative involving legal work that ordinarily is compensable. The court offered no reason to deny compensation for those billing entries apart from [the auditor's] facially overbroad conclusion that all of the time in those entries was administrative. On remand, the court should determine what part of those entries involved compensable attorney or paralegal work and award fees accordingly."

10.     As he has done in many cases, Schratz's nit-picking of Plaintiffs' time records and staffing practices fails to see the forest for the trees. The overall effort required to win this

case has been enormous. Throughout its 6+-year history, this case has been strenuously opposed by UBH and vigorously litigated – resulting in extensive discovery, law and motion practice, a heavily contested bench trial with approximately 600 exhibits and testimony from eight experts followed by extensive post-trial briefing, and vigorously contested post-trial proceedings over remedies and the form of the Judgment. The end results were the Court's 106-page Findings of Fact and Conclusions of Law and 99-page Remedies Order. The thoroughness of those opinions and the Court's many other rulings reflect the immense complexity and heavily litigated nature of this case. In my opinion, any case that is so vigorously litigated for more than six years against a well-funded, well-represented defendant is, by any reasonable measure, extremely complex and difficult litigation that should not be subject to the significant fee reductions that Schratz proposes.

11. Likewise, Defendant and Schratz also wholly ignore the highly probative fact that *Defendant* itself frequently had the same or more attorneys at the same depositions, something Schratz fails to consider. Reynolds Supp. Decl. ¶ 97. Considering that Plaintiffs' counsel had the burdens of proof and persuasion, and that the majority of the evidence was controlled by Defendant and its mega law firm, it would have been very surprising to me if Plaintiffs had *not* utilized multiple attorneys for events like key depositions, hearings, and meetings.

12. In my opinion, Defendant's shopworn theme—that Plaintiffs' attorneys presented "vague" and "block-billed" time entries to obscure their work in order to run up their bill—is both speculative and unjustified. The standard for compensability is whether "the hours billed were truly the result of advocacy *reasonably calculated to advance the [client's] interests* as opposed to those of [the client's] lawyers, ..." *Irvine Unified School Dist. v. K. G.*, 853 F.3d 1087, 1095 (9th Cir. 2017).

13. Schratz's suggestion that attorneys working on a contingent fee basis in cases like this one are unconstrained by the oversight that a fee-paying client might provide (at ¶¶ 53-55) is off-base and has been firmly rejected by many courts. As the Ninth Circuit recognized in *Moreno*:

"It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106, 1112.

In my opinion, nothing in this file or in Defendant's opposition supports a finding that any of the Plaintiffs' firm's efforts were for any reason other than to advance the Plaintiffs' interests.

## II.    Schratz's Specific Objections Are Fundamentally Unsound.

14.    Schratz's specific objections also are almost entirely factually unsupportable and legally unsound. Taken individually or as a whole, they fail to meet Defendant's burden of showing that Plaintiffs' fully-documented fees are unreasonable. See, e.g., *McGrath v County of Nevada,* 67 F.3d 248, 255 (9th Cir. 1995) (fee opponent "bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged")

### A.    Plaintiffs' Paralegal and Litigation Support Rates Are Amply Supported.

15.    Plaintiffs' fee motion requests market-rate compensation for the work performed by the Zuckerman firm's paralegals and litigation support staff. *See* Reynolds Decl., ¶ 81 & Ex. 1. In response, Schratz does not dispute that work performed by paralegals and other professional support staff is regularly billed to fee-paying clients in this community. Rather, he claims that the hourly rates requested for that work are too high. The record is otherwise.

16.    *First*, Schratz misstates the record. He claims that Plaintiffs have provided "insufficient" background information concerning their paralegals. Schratz Decl., ¶ 63. I disagree. Ms. Reynolds expressly set out the experience and expertise of Zuckerman Spaeder's paralegals in paragraphs 69-71 of her November 24 Declaration (Doc. 507-02). In this reply, Ms. Reynolds has provided an even more detailed description of the backgrounds and work performed by her firm's paralegals and support staff. *See* Reynolds Supp. Decl., ¶¶ 14-18, 21-34.

7

17.     Likewise, Schratz's claim that some of the paralegal/support staff work was "clerical" reflects his lack of familiarity with how major litigation like *Wit* is staffed, in general and in this case. *See* Reynolds Supp. Decl., ¶ 20-34; Harriman Reply Declaration, ¶ 3. In my opinion, based on the many law firm bills that I have reviewed, work that requires such high levels of responsibility, expertise and legal knowledge would routinely be billed by high-quality Bay Area law firms at comparable rates.

18.     *Second*, Schratz's claim is belied by the fact that these are the same tasks that the Zuckerman firm bills to and is paid by its private clients. Reynolds Decl., ¶ 75.

19.     *Third*, Schratz misstates the record when he claims that no evidence was presented that the rates requested here have been billed to Zuckerman Spaeder's fee-paying clients. Schratz Decl., ¶ 106. To the contrary, Plaintiffs motion expressly states that the fees requested here are charged to and have been paid by the firm's fee-paying clients. *See* Reynolds Decl., ¶ 75. Zuckerman Spaeder's standard rates also have been approved in many other cases. *See* Reynolds Decl., ¶ 76.

20.     *Fourth*, the requested rates are fully supported by the hourly rates presented in my initial declaration. *See* Pearl 11/24/20 Decl., ¶¶ 15-20 and supporting exhibits. These include:

- Duane Morris: $395 per hour for paralegals in 2018;

- Gibson Dunn & Crutcher: $480 per hour for paralegals in 2020;

- Lieff Cabraser <u>Heimann & Bernstein</u>: $345-390 per hour for paralegals and $345-495 per hour for "Litigation Support" in 2020; $350-360 per hour for paralegals in 2019 (found reasonable in *In re Anthem, Inc. Data Breach Litigation,* No. 15-MD-02617, 2018 WL 3960068, at *16 (N.D. Cal. Aug. 17, 2018);

- Rosen Bien Galvan & Grunfeld: $250-350 (paralegals) in 2020; $250-350 per hour for paralegals in 2019 (found reasonable in *National Federation of the Blind of California v. Uber Technologies, Inc.,* 2016 U.S. Dist. LEXIS 192176 (N.D. Cal. 2016):

1      •    Simpson Thacher & Bartlett: 2019 rates of $420 to $455 per hour billed

2      for "Paralegal – Litigation" or "Knowledge Management" in PG&E

3      bankruptcy matter (Pearl 11/24/20 Decl., Ex. D). [2]

4  Zuckerman Spaeder's rates for comparable work here are certainly "in line with" these rates. [3]

5      21.    *Fifth*, the only *evidence* Schratz cites is the 2018 Real Rate Report's *national*

6  survey of paralegal rates. Schratz Decl., ¶ 119 and Ex. 12, p. 8. On its face, however, that

7  evidence has no probative value here because it is based on a *nationwide* average of paralegal

8  rates, *not* Northern District rates. Hourly rates *must* be based on the rates charged in the local

9  community and for that reason alone, the courts have uniformly rejected the usefulness of such

10  non-local surveys. *See, e.g.*, *Schwarz v. Secty. of Health & Human Services*, 73 F.3d 895, 908

11  (9th Cir. 1995) (rejecting proffered surveys because not restricted to forums in which case

12  litigated); *U.S. v. City & County of San Francisco*, 748 F. Supp. 1416, 1431 (N.D. Cal. 1990),

13  *aff'd in relevant part sub nom Davis v. City & County of San Francisco*, 976 F.2d 1536, 1547

14  (9th Cir. 1992), *modified on other grounds* (9th Cir. 1993) 984 F.2d 345 ("*Davis*") (statewide

15  survey "properly dismissed by the district court as shedding no light on the matter"); *Rodriguez*

16  *v. U.S.*, 2006 U.S. Dist. LEXIS 95839, n.11 (C.D. Cal. 2006), *aff'd in part and rev'd in part on*

17  *other grounds*, 542 F.3d 704 (9th Cir. 2008); *Common Cause v. Jones*, 235 F. Supp. 2d 1076,

18

19  [2] Schratz claims that the bankruptcy rates stated in my declaration are not probative here. Schratz Decl., ¶ 112. However, federal bankruptcy rules require firms to attest that the rates they are

20  requesting do not exceed their rates for other types of work. *See, e.g.*, *Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees for the Northern District of California*, effective February 19, 2014,

21  https://www.canb.uscourts.gov/procedure/guidelines-compensation-and-expense-reimbursement-professional-and-trustees, at § 8 (requiring certification that, among other things, "the

22  compensation and expense reimbursement requested are billed at rates, in accordance with practices, no less favorable than those customarily employed by the applicant and generally

23  accepted by the applicant's clients"); *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter*

24  *11 Cases*, https://www.justice.gov/sites/default/files/ust/legacy/2013/06/28/Fee_Guidelines.pdf, 78 Fed. Reg. 36248, 36250 (June 17, 2013) ("The United States Trustee will ordinarily object to

25  fees that are above the market rate for comparable services.").

26  [3] *See also Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (paralegal rates between $245 and $350); *700 Valencia St. LLC v. Farina*

27  *Focaccia & Cucina Italiana, LLC*, No. 15-CV-04931-JCS, 2018 WL 783930, at *4 (N.D. Cal. Feb. 8, 2018) (finding hourly rate of $335 to $350 per hour for paralegals with over 20 years of

28  legal assistance reasonable, and $335 reasonable for paralegal with 10 years of experience).

1091 n.1 (C.D. Cal. 2002). In contrast, the surveys I have relied upon (Exhibits B-F) contain specific information on San Francisco area rates charged by firms that engage in complex civil litigation like this case.

22.     Schratz's opinion also improperly presumes that Plaintiffs' paralegals and litigation support personnel are entitled only to "median" rates, when in fact Plaintiffs' paralegals and other professional staff have the kind of experience and expertise that would justify significantly higher than "median" rates. *See* Reynolds Supp. Decl., ¶¶ 14-16, 18, 21-34. Given their impressive experience and credentials, the quality of their work, and the results achieved, even if the Real Rate Report applied, counsel's rates should be at or above the "Third Quartile" level.[4]

### B.    The Hourly Rates Requested by Attorneys Meiram Bendat and Anthony Maul Are In Line With Bay Area Rates.

23.     Schratz also claims that the rates requested for Meiram Bendat and Anthony Maul are too high and should be reduced. Schratz Decl., ¶¶ 137, 141. Again, his opinion is both arbitrary and unsupported by either fact or law.

24.     Schratz's primary error is his misunderstanding of their roles in the case. Mr. Bendat, a known national expert on mental health issues, played a critical role throughout the case. *See* Supp. Bendat Decl., ¶¶ 6, 11; Reynolds Supp. Decl., ¶ 74-75. Likewise, Mr. Maul took several critical depositions and played an important role supporting the Zuckerman team during document discovery and trial. Supp. Maul Decl., ¶¶ 7-9; Reynolds Supp. Decl., ¶ 84.

25.     Schratz's only *evidence* to support his opinion is the rates Mr. Bendat and Mr. Maul sought and were awarded in prior cases, which he then inexplicably uses to support an opinion that they should be compensated at even *lower* rates here. Schratz Decl., ¶¶ 127-34, 137, 140-41. Again, Schratz's evidence is off-base. In fact, Mr. Bendat raised his rate to $900 per

---

[4] Schratz also claims that reasonable rates for Plaintiffs' paralegals and litigation support, and for Mr. Bendat and Mr. Maul, must take into account the size of their law firms and the area of practice. Schratz Decl., ¶ 115. The error in that reasoning is addressed *infra* at ¶¶ 33-41.

1  hour in January 2019, based on his intervening doctoral degree, experience, and numerous

2  professional distinctions. Supp. Bendat Decl., ¶¶ 10-13.

3     26.    As for Mr. Maul, his hourly rate of $675 is perfectly in line with prevailing rates

4  for attorneys in this District of comparable skill, experience, and reputation. He has 18 years of

5  practice experience, including many of those years dedicated to litigating complex class actions,

6  including involving health insurance under ERISA. Maul Decl., ECF 507-4 ¶¶ 5-8. In light of his

7  experience and specialized skills, and the central and substantive role he played in litigating this

8  case—*not* as "local counsel" as Schratz inaccurately contends—$675 per hour is well in line, in

9  fact well *below* what comparable counsel in this District command from their clients.

10    27.    In short, as with Plaintiffs' paralegal rates, Bendat and Maul's rates are squarely

11  in line with the rate evidence set out in my November 24 declaration (¶¶ 12-16 and Ex. B.).

12    28.    Schratz's reliance on "firm size" as a measure of the market value of Mr.

13  Bendat's and Mr. Maul's work is misplaced. Many sole proprietors, small and mid-size firms

14  charge and are awarded rates that are comparable to larger firms' rates. After all, the relevant

15  factors are the attorneys' skill, background, and experience, the market value of the work

16  produced, the type of case, the stakes involved, the client's ability to pay, the nature of the

17  opposition and the like.

18    29.    Costs, overhead, and the size of the firm have no relevance to the determination of

19  reasonable hourly rates under fee-shifting statutes. To the contrary, it has long been established

20  that law firm costs and overhead are not relevant to determining a reasonable attorney's fee. *See*,

21  *e.g., U.S. v City & County of San Francisco,* 748 F. Supp. 1416, 1431 (N.D. Cal. 1990)

22  (plaintiffs' sole practitioners, small law firms, and nonprofit law firms entitled to commercial

23  rates charged by "corporate attorneys of equal caliber"), *aff'd in relevant part sub nom Davis v.*

24  *City & County of San Francisco,* 976 F.2d 1536, 1545 (9th Cir. 1992) ("rates should be

25  established by reference to the fees that private attorneys of an ability and reputation comparable

26  to that of prevailing counsel charge their paying clients for legal work of similar complexity").

27  *See also* Cal. Rules of Prof. Cond. 1.5(b)(1)–(13) (factors used to determine reasonableness of

28  attorney fees do not include size of firm or firm's costs). Federal law is the same. *See, e.g.,*

*Charlebois v Angels Baseball, LP,* 993 F. Supp. 2d 1109, 120-21 (C.D. Cal. 2012) (rejecting argument that it was inappropriate to compare attorneys at 12-attorney firm to attorneys at larger firms, noting that "the Supreme Court and the Ninth Circuit have expressly endorsed comparisons to '*lawyers* of reasonably comparable skill, experience, and reputation' and have never required prevailing party's counsel to *also* prove that their *firm* is the same size or has the same level of prestige as that of comparator attorneys" (emphasis in original)); *Bankston v Illinois,* 60 F.3d 1249, 1256 (7th Cir. 1995), disapproved on other grounds in *Auer v Robbins,* 519 U.S. 452 (1997) ("*the district court may not reduce the established market rate by some factor that it believes accounts for differences between large firms and small firms. Lawyers of common expertise and experience in the same market are entitled to the same rate.*" [Emphasis added].) Rates are determined by the market value of the lawyer's work and the client's ability and willingness to pay for those services.

30.     In addition, when smaller law firms take on difficult but important litigation like the instant case, they frequently litigate against major law firms. It makes no sense to award them lower rates when they have comparable skills, experience, and expertise, and produce work that is equally as good, if not better, as the work produced by their big firm opponents.

31.     Moreover, my opinions regarding Bendat's and Maul's hourly rates here are *not* based solely or even largely on the rates charged by larger firms. To the contrary, they are significantly *less* than big firm rates. The fact is that their requested rates are comparable to many small or midsize firms whose rates are set out in Exhibit C to my opening declaration: e.g., Altshuler Berzon, Cotchett, Pitre & McCarthy, Keker & Van Nest, Pearson Simon & Warshaw, Rosen Bien Galvan & Grunfeld, and the Law Office of James Sturdevant. They also are 30-40% *lower* than the rates charged by "large firms," such as Duane Morris and Morrison Foerster.

32.     Schratz also objects to Mr. Bendat's and Mr. Maul's rates on the grounds that because their participation involved significant conferencing with the Zuckerman Spaeder attorneys, it was less valuable than the rates they request. Schratz Decl. ¶ 181-82 & Exs. 31 & 32. Neither the case law nor the circumstances of this case support that objection.

33.     It is not reasonably disputable that in complex, unique, litigation like this one, especially cases that end up being tried, regular conferencing and communication among counsel are *required* in order to achieve maximize efficiency and effectiveness. My view is consistent with the case law, which recognizes that "conferencing" time may only be reduced if it is "obviously and convincingly excessive under the circumstances." *Charlebois v Angels Baseball, LP,* 2012 U.S. Dist. Lexis 91069, *38 (C.D. Cal. 2012). *See also, e.g.*, *Continental Illinois Securities Litigation*, 962 F.2d 566, 570 (7th Cir. 1992) (because of its value, conferencing time should not be arbitrarily slashed); *Ramos v. Lamm*, 632 F. Supp. 376, 383 (D. Colo. 1986) ("In any complex litigation, efficiency derives from organization and coordination rather than lawyers operating independently.").

34.     In my opinion, the same is true for complex, multi-party cases like this one: conferencing and communication among counsel are *essential,* both in terms of efficiency and effectiveness. That appears to certainly have been true here, where, in addition to the direct work product Mr. Bendat contributed, his psychology training, specialization, and expertise were invaluable to the team's ongoing motions practice, discovery, depositions, document review, and post-trial work. Supp. Bendat Decl., ¶¶ 7-8, 11; Reynolds Supp. Decl., ¶ 74-75. Indeed, without communication among the team, it is far too easy for counsel to duplicate efforts unnecessarily or overlook important points. Again, this work is routinely and properly billed to clients, whose primary interest is to win the case. *See* American Bar Association, Section of Business Law, Task Force on Lawyer Business Ethics, Statements of Principles (1995), p. 14 (participation in conferences by multiple attorneys is often necessary and beneficial, and therefore billable to clients).

35.     Schratz also complains that the evidence I present is not limited to mental health cases. Schratz Decl., ¶ 111, 115. Again, his opinion is squarely in conflict with well-established case law. Under federal law, reasonable hourly rates under ERISA and other fee-shifting statutes are *not* limited to the particular type of case or practice area involved. Rather, successful attorneys in such cases are entitled to the rates they request if those rates are within the range of rates charged by San Francisco Area attorneys practicing *all types of comparably complex*

13

*litigation*. *See, e.g., Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9ᵗʰ Cir. 2010) (in prisoner rights action under Prison Litigation Reform Act of 1995 (PLRA) (42 USC § 1997e(d)(3)), applicable comparison is to rates charged in relevant community for equally complex federal litigation, not lower rates set by PLRA); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (consumer attorneys not limited to rates charged by or awarded to other consumer attorneys); *Christensen v. Stevedoring Servs. Of Am.*, 557 F.3d 1049, 1054 (9th Cir. 2009) (same re Longshore and Harbor Workers Compensation Act); *Cal. Fee Awards,* § 9.106, p. 9-97.

36.     Regardless of their prior awards or the size of their law firms, therefore, my opinion remains that given their high levels of expertise and support in this case, the 2020 rates they request are "in line with" the rates charged by comparably qualified attorneys for comparably complex work. Neither the Defendant nor Schratz has presented any evidence that would cause me to even doubt that opinion.

## C.     Schratz's Failure to Account for Delay in Payment

37.     Although I firmly agree with Plaintiffs' request for current hourly rates, Schratz chooses to base his opinion on Plaintiffs' attorneys' historical rates, claiming that the rate increases reflected in counsel's 2020 rates overcompensate them for delay in payment. Schratz Decl., ¶47. In my November 24 declaration, I testified that I also had reviewed counsel's "historical" rates and found them reasonable, and that the rate increases taken by Zuckerman Spaeder have been entirely consistent with the legal marketplace. Pearl 11/24/20 Decl., ¶ 20. It went without saying, however, that if those historical rates had been used, they would have had to be adjusted to reflect the delay in payment engendered by using non-current rates. *See, e.g.*, Richard M. Pearl, *California Attorney Fee Awards* (3d ed.) § 10.51 (citing cases).

38.     Schratz does not address this issue – he fails to include *any* adjustment for the delay in payment engendered by using historical rates. In fact, however, he recently testified that "a 4 percent annual rate increase is a typical benchmark". *See* attached Ex. A (relevant pages of Schratz 10/1/2020 Declaration in *Caldera v. State of California,* San Bernardino Superior Ct.

No. CIVDS100177). In fact, the pace of rate increases has generally higher than 4%. *See* my

11/24/20 Decl., ¶ 20 and Exhibits I-J.

**D.** **Schratz's Objections to Plaintiffs' Hours Are Fallacious.**

    **1.** **Plaintiffs' documentation readily complies with marketplace standards.**

39.    The vast majority of Schratz's objections to Plaintiffs' hours do not go to whether the time was actually and reasonably spent but to a series of objections going to Plaintiffs' attorneys' time records and billing practices, from which he opines that this Court should drastically cut Plaintiffs' compensable hours so that they would be paid for only 77.6% of their otherwise reasonable fees.

40.    In my opinion, however, Plaintiffs' documentation provides all the information required to determine whether their attorneys' and professional staff's hours were reasonably expended because they allow the Court to assess the amount of time devoted to various tasks and events in the lawsuit. Parties seeking statutory attorneys' fees are not required to specify every detail of counsel's work: they need only identify "the general subject matter of [counsel's] time expenditures." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2001). *See also Hensley,* 461 U.S. at 437 n.12 ("[P]laintiff's counsel…is not required to record in great detail how each minute of his time was expended."). Attorneys "need only 'keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed.'" *United Steelworkers of Am. v. Retirement Income Plan for Hourly-Rated Emps. of ASARCO, Inc.,* 512 F.3d 555, 565 (9th Cir. 2008) (citations omitted); *Davis v. City & Cty. of S.F.*, 976 F.2d 1536 (9th Cir. 1992), *rev'd on other grounds*, 984 F.2d 345 (9th Cir. 1993) (time records must be viewed in context). Indeed, the Ninth Circuit has expressly "warn[ed] against imposing too high a standard of documentation on fee claimants." *Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995). In my opinion, Schratz's objections to counsel's documentation here offend these well-established principles. To the extent they also are based on highly inaccurate and misleading factual assertions, I refer the Court to Ms. Reynolds's Supplemental Declaration, filed this day, which thoroughly and

persuasively demonstrates these inaccuracies and mischaracterizations. Reynolds Supp. Decl., ¶¶ 1-103.

41.     I have carefully reviewed Plaintiffs' responses and unqualifiedly concur with them. Indeed, I have reviewed the billing practices of innumerable attorneys, from sole practitioners to mega law firms. In my opinion, counsel's time records here are at least as descriptive as the majority of time records I have seen.

### 2.     Counsel's "block-billing" does not impede the determination of whether their hours were reasonably spent.

42.     UBH's "auditor" claims that because Plaintiffs' counsel "block-billed" some of their time entries, this Court should reduce their requested lodestar by $672,570.99. *See* Schratz Decl., ¶ 160. I strongly disagree. In my opinion, Plaintiffs' attorneys' billing practices were entirely reasonable and appropriate, and Schratz's objection based on "block-billing" should not be sustained, for several reasons.

43.     *First,* as Ms. Reynolds catalogues, at least one-quarter of the time entries Defendants challenged are not "block-billing" under any definition. Reynolds Supp. Decl., ¶¶ 35-44. Simply put, the notion that the presence of a semi-colon makes a time entry objectionable as "block-billing" (*cf.* Schratz Decl. ¶ 150) has no basis in logic or in the legal marketplace. Reynolds Supp. Decl.*, ¶¶* 39-40. Here, even when multiple tasks are billed as a block, it's quite apparent roughly how much time was spent on each task. The issue is whether the time spent on the work described overall is reasonable, not how much time was spent on each particular component or if the time entry contains a semi-colon. *See, e.g., Perfect 10, Inc. v. Giganews, Inc.* 2015 U.S. Dist. Lexis 54063, at *80 (C.D. Cal. Mar. 24, 2015). On that issue, other than time spent on the fee petition, Schratz does not contend that *too much* time was spent on any of the block-billed tasks.

44.     *Second,* based on my experience, block billing does not impede the determination of whether hours were reasonably spent in most cases because the important issue is not how much time was spent on a particular task – *i.e.* research, drafting, conferring, etc. – but on how much time was spent on a particular document, phase, or event: "It is not necessary to know the

exact number of minutes spent nor the precise activity to which each hour was devoted. o enable opposing counsel adequately to assess the merits of the fee motion, and the court to fulfill its obligations, no more is necessary than fairly definite information as to the hours devoted to various general activities, *e.g.,* pretrial discovery, settlement negotiation, and the hours spent by various classes of attorneys, *e.g.,* senior partners, junior partners, [and] associates. . . ." *Jordan v. U.S. Dep't of Justice,* 691 F.2d 514, 520 (D.C. Cir. 1982) (internal citations and quotations omitted).

45.     Moreover, the courts have recognized that block-billing objections are especially meritless when, as here, there is no need to apportion time spent on distinct unrelated claims. Here, all of counsel's time is compensable because Plaintiffs' attorneys presented only one claim: that UBH's practices regarding mental health claims violated the law, a claim that they won unequivocally.

46.     *Third,* as to the minority of Plaintiffs' counsel's time records that actually include multiple tasks in a single entry, in my experience "block billing" continues to be the prevailing practice among California law firms, a fact that Schratz never denies. Over the last several years, I have reviewed the billing records of hundreds of California law firms, large and small. Most, if not the great majority, of these firms submit billing records that describe each time keeper's daily activities but provide only a single daily numerical total for each time keeper's activities – so-called "block billing." Such records are accepted both by clients who pay by the hour, including by Zuckerman Spaeder's clients (Reynolds Supp. Decl., ¶ 36) and by courts that must determine reasonable fees. *See, e.g., Stonebrae, L.P. v. Toll Bros.*, 2011 US Dist. LEXIS 39832, at *29 (N.D. Cal. April 7, 2011) ("Block-billing is a typical practice in this district, and blocked-bills have been found to provide a sufficient basis for calculating a fee award"), *aff'd* 521 F. App'x 592 (9th Cir. 2013).

47.     *Fourth*, the cases cited by Schratz as setting out the applicable standard are all at least six years old. Not surprisingly, he has failed to take into account or even acknowledge the many subsequent cases holding that block billing is *not* automatically suspect or grounds for a fee reduction. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 U.S. Dist. LEXIS

17

24951, *309 (N.D. Cal. Jan. 28, 2016) ("Having himself recorded time for almost 50 years, the Special Master is aware how silly it is to insist (as insurance companies sometimes do) on showing a specific amount of time on each action taken during a day."); *Oberfelder v. City of Petaluma,* 2002 U.S. Dist Lexis 8635, at *9 (N.D. Cal. Jan. 29, 2002) (block billing "does not undermine the compensability of time reasonably expended where the billing statement meets the basic requirement of listing the hours and identifying the general subject matter of time expenditures"), *aff'd* 2003 U.S. App. LEXIS 11371 (9th Cir. June 4, 2003). As the court stated in *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1340 (C.D. Cal. 2015):

> *The [block-billed] entry is representative of commonly used billing practices…* It appears that Plaintiff seeks "task billing," allocating every moment of attorney time to a plethora of specific tasks. That level of specificity improperly creates "a pretense of mathematical precision" criticized by Justice O'Connor. *Arbor Hill Concerned Citizens Neighborhood Ass'n,* 522 F.3d at 189. It also improperly makes trial courts "green-eyeshade accountants" seeking accounting precision rather than rough justice. *Fox,* 131 S.Ct. at 2216. It is inefficient…. [A] court may include amounts "block-billed" without a reduction "because counsel 'is not required to record in great detail how each minute of his time was expended.'" *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co., Ltd.,* 668 F.3d 677, 690 (9th Cir. 2012) (quoting *Hensley,* 461 U.S. at 437 n. 12, 103 S.Ct. 1933) [Emphasis added].

48.     Accordingly, "block-billing" objections similar to Schratz's have been rejected by numerous other courts. *See, e.g., Tech Props. v. Canon Inc.*, 2017 U.S. Dist. LEXIS 219618, at *9 (N.D. Cal. April 12, 2017); *O'Bannon v. NCAA,* 2016 U.S. Dist. LEXIS 44131, at *26 (N.D. Cal. Mar. 31, 2016); *CRT*, 2016 U.S. Dist. LEXIS 24951, at *309, *adopted in relevant part* 2016 U.S. Dist. LEXIS 88665 (N.D. Cal. July 7, 2016); *A.D. v. Cal. Highway Patrol,* 2009 U.S. Dist. LEXIS 110743, at *11 (N.D. Cal. Nov. 10, 2009) ("block billing" summaries "sufficiently describe the tasks performed to enable . . . review of the fee petition"), *rev'd on other grounds,*

712 F.3d 446 (9th Cir. 2013), *restated on remand*, 2013 U.S. Dist. LEXIS 169275 (N.D. Cal., Nov. 27, 2013).[5]

49.     *Fifth,* in my experience, "block billing" is seldom intended to or results in "padding" the bill. The vast majority of lawyers are honest. Lawyers are just as likely to understate the total number of hours spent on a case by "block billing" as they are to overstate it; indeed, if lawyers listed every separate task as a .1, such as reading a series of emails, they could be accused of "chipping," *i.e.,* separately billing .1 hours for each of a series of short tasks.

50.     In this respect, Schratz cherry-picks language from the Arbitration Advisory issued by California Bar's Committee of Mandatory Fee Arbitration by implying that it *requires* fees to be reduced when block-billing occurs. Schratz Decl., ¶¶ 154-155 and Ex. 8. For several reasons, that is wrong.

51.     *First*, the Advisory itself expressly states that the Advisory Committee's "views or opinions . . . do not reflect the official opinion or policy of the State Bar of California." *Id.,* Ex. 8 at p. 1 (in box).

52.     *Second*, the Advisory expressly recognizes that block billing may be acceptable: "An arbitrator may consider all evidence to determine the propriety of any block billed entry and may conclude, upon due consideration of all such evidence, that the entire time billed is appropriate or some portion is not." Arbitration Advisory 2016-02 at 10. In my opinion, *Wit* is precisely the type of complex case where "the entire time billed is appropriate."

53.     Nor does Schratz explain why a 15% penalty against Plaintiffs' attorneys, as opposed to any other percentage, is warranted for the time entries he calls "block billing;" his explanation is merely that it stems from his "review of the time records" and his "experience reviewing block-billed invoices." Schratz Decl., ¶ 160. However, as shown above (¶¶ 51-52),

---

[5] *See also Ridgeway v Wal-Mart Stores Inc.* (N.D. Cal., Sept. 14, 2017, No. 08–cv–05221–SI) 2017 U.S. Dist LEXIS 149440, *21 (rejecting block-billing objection); *Lewis v County of San Diego* (S.D. Cal., Dec. 8, 2017, No. 13-CV-02818-H-JMA) 2017 U.S. Dist LEXIS 203457, *24 (block-billing objection rejected); *Dragu v Motion Picture Indus. Health Plan* (N.D. Cal. 2016) 159 F. Supp. 3d 1121, 1129 (entries not actually block-billed because all pertained to same task); *Latoya A. v San Francisco Unified Sch. Dist.* (N.D. Cal., Jan. 28, 2016, No. 3:15-cv-04311-LB) 2016 U.S. Dist LEXIS 11048, *26 (same); *Cruz v. Starbucks Corp.*, 2013 U.S. Dist. LEXIS 79231, at *20 (N.D. Cal. June 5, 2013).

many courts impose *no* reduction for block-billing. The 15% figure is entirely arbitrary, especially when Schratz's double and triple counting are factored in. *See* Reynolds Supp. Decl., ¶¶ 9-11.

54.     Last but not least, in my view, as a matter of fee-shifting policy, to deny the prevailing parties' attorneys compensation for hundreds of thousands of dollars' worth of work just because some of its attorneys, for discrete periods of time, used the billing practice that prevails in the California legal community, greatly undermines the purpose of the fee-shifting statutes.

### 3.     Counsel's redactions do not impede the determination of whether their hours were reasonably spent.

55.     Schratz also claims that "multiple" entries are "almost completely redacted without providing any details as to the purpose or subject matter." Schratz Decl. ¶ 164. In fact, redactions of privileged information are perfectly permissible under Ninth Circuit law. See, e.g., *Democratic Party v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004); *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013). Nonetheless, to eliminate any question, Plaintiffs' counsel have further explained the context for the challenged entries. *See* Supp. Reynolds Decl., ¶ 27 and Exhibit D.

### 4.     Counsel's time entries are sufficiently specific.

56.     Schratz also claims that because Plaintiffs' time records are supposedly "vague", their lodestar should be reduced by $1,409,393.63. Schratz Decl., ¶¶ 165-168. In my opinion, that type of penalty is entirely inappropriate here: to the contrary, counsel's time records filed here, which are based on contemporaneous time records, are perfectly adequate under federal standards because they readily identify "the general subject matter of [counsel's] time expenditures." *See, e.g.*, *Fischer v. SJB-P.D. Inc.,* 214 F.3d 1111, 1121 (9th Cir. 2001), citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

57.     The applicable time-keeping principle was well-stated in *Jordan v. U.S. Dept. of Justice*, 691 F.2d 514, 520 (D.C Cir. 1982): "It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted. To enable opposing

counsel adequately to assess the merits of the motion, and the court to fulfill its obligations, no more is necessary than fairly definite information as to the hours devoted to various general activities, *e.g.*, pretrial discovery, settlement negotiation, and the hours spent by various classes of attorneys, *e.g.*, senior partners, junior partners, [and] associates ….." (Internal citations and quotations omitted.) Accordingly, time records must be viewed in context. *See also, e.g.*, *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1542 (9th Cir. 1992) (holding that a "time record describing several hours as having been spent at a counsel's meeting that occurred less than a month before the plaintiff's complaint was filed and at which a host of issues were discussed in connection with the filing conveys information sufficient to pass muster under the *Hensley* standard.")

58. Consequently, the Ninth Circuit repeatedly has "warn[ed] against imposing too high a standard of documentation on fee claimants." *Gates v. Gomez*, 60 F.3d at 535. And, both the courts and clients readily accept descriptions like Plaintiffs' here when the total time spent on the broader task is reasonable. For example, in my opinion it is appropriate, and consistent with prevailing practices and client expectations, to describe work in the level of detail accepted, for example, by courts that have granted fees for entries including "legal research re hearing issue" or "legal research" where the surrounding time entries for that or nearby days "sufficiently identify how the time was spent." *LaToya A. v. San Francisco Unified Sch. Dist.*, No. 3:15-CV-04311-LB, 2016 WL 344558, at *8 (N.D. Cal. Jan. 28, 2016); *see also Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1103 (N.D. Cal. 2008); *O'Bannon v. NCAA,* 2015 U.S. Dist. LEXIS 91514, at *27 (N.D. Cal. 2015), adopted in relevant part, 2016 U.S. Dist. LEXIS 44131, at *28 (entry titled "preparation for hearing" reasonable in context); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 U.S. Dist. LEXIS 24951, at *309 (N.D. Cal. 2016), adopted in relevant part at 2016 U.S. Dist. LEXIS 88665, *306 (accepting time entries for "trial prep"); *Jaramillo v. County of Orange*, 200 Cal. App. 4th 811, 830 (2011) (time records included very general descriptions, e.g. "trial prep", "T-C Client").

59. Here, Plaintiffs have thoroughly refuted Schratz's objections. *See* Reynolds Supp. Decl., ¶¶ 46-62. In my opinion, those responses squarely comport with the standards that prevail in

21

the legal marketplace. Thus, although Schratz wholly ignores the principle that time records must be read in context, when viewed in context, virtually every disputed time record is perfectly adequate to show "the general subject matter of [counsel's] time expenditures." *See* Reynolds Supp. Decl., ¶¶ 46-62.

60.     Likewise, although Schratz objects to every entry marked, for example, "review documents," "review deposition transcripts," and "trial preparation", in my opinion, taken in context, those descriptions and the others Schratz calls out are perfectly adequate for describing and compensating work that was actually done.

61.     *First,* time entries for "trial preparation" are perfectly common and acceptable in the legal marketplace. See, e.g., *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 U.S. Dist. LEXIS 24951, at *309 (N.D. Cal. 2016), adopted in relevant part at 2016 U.S. Dist. LEXIS 88665, *306 (accepting time entries for "trial prep"). It is common knowledge that the months preceding trial, at trial, and after trial are almost always the most hectic and intense period in a case, requiring counsel to move frequently from one task to another. How that time was divided between reviewing documents, preparing witnesses, drafting motions or oppositions to motions, planning cross examination, or any of the myriad tasks involved, is a matter of personal style and experience; every attorney and case is different.

62.     The proof is in the pudding. Rather than require attorneys to waste time recording each sub-task, both clients and courts can assess whether the total time spent on trial preparation was reasonable in light of the demands of the trial, the attorneys' performance, and the results achieved. In my opinion, invaluable trial preparation time that is otherwise compensable should not go uncompensated simply because attorneys do not stop working after each sub-task to record how many minutes were spent.

63.     As noted above, I have reviewed the billing practices of hundreds of attorneys, and in my opinion, Plaintiffs' attorneys' time records here are at least as descriptive as the majority of time records I have seen. Moreover, in my opinion, they provide all the information required to determine whether counsel's hours were reasonably expended because they allow the

1  Court to assess the amount of time devoted to various tasks and events (*e.g.*, pleadings,

2  depositions, hearings, etc.) in the lawsuit.

3       5.      **"Non-Billable Clerical Time"**

4       64.     Mr. Schratz also criticizes Zuckerman Spaeder's paralegals and Litigation

5  Support professionals (and, to a far lesser degree, some of its attorneys) for spending time on

6  tasks that he describes as "clerical." Again, Plaintiffs have thoroughly refuted this objection.

7  Reynolds Supp. Decl., ¶¶ 63-68. And again, I have carefully reviewed Plaintiffs' responses and

8  agree that the time Schratz challenges involves work that is customarily billed to fee-paying

9  clients in this legal community.

10      65.     Nor is Schratz's objection to attorneys occasionally performing what he calls

11  "clerical work" valid. Those entries, however, are not "clerical" at all, as Ms. Reynolds explains.

12  Reynolds Supp. Decl., ¶¶ 63-68. Moreover, in the long course of conducting complex litigation,

13  most attorneys occasionally perform some paralegal or "clerical"-type tasks but are not required

14  or expected to bill such tasks at a lower rate. *See Suzuki v. Yuen,* 678 F.2d 761, 764 (9th Cir.

15  1982) (one rate for research, discussion, drafting, proofreading and court appearances by

16  counsel). That is in part because it would take more attorney billing time to explain the task and

17  then review the product than to simply do it oneself.

18      6.      **"Partners Doing Research"**

19      66.     Mr. Schratz criticizes Zuckerman Spaeder's partners for sometimes engaging in

20  legal and/or factual "research," which he indiscriminately calls an "associate-level task." Again,

21  Plaintiffs have thoroughly refuted this objection. Reynolds Supp. Decl., ¶¶ 86-93. And again, I

22  have carefully reviewed Ms. Reynolds's response and agree that the time Schratz challenges is

23  time that in this legal community would readily be billed at partner rates to fee-paying clients.

24      67.     Schratz's objection is premised on the "pyramidal staffing pattern" that many

25  insurance defense firms are required to use and that other firms adopt because it is more

26  profitable. In my opinion, however, it is often the case that the smaller firm model with the

27  partners doing considerable research themselves is more effective and less expensive to the

28  client, especially when the case goes all the way to trial.

68.     My opinion is shared by the numerous courts which have recognized that pyramidal staffing is not the only reasonable way to win a case. In *Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106, 1114, for example, the Ninth Circuit reversed a trial court for an abuse of discretion in reducing fees and specifically stated "the cost effectiveness of various firm models is an open question and it is by no means clear whether a larger law firm would have billed more or less for the entire case." *See also Chabner v United of Omaha Life Ins. Co.*, 1999 U.S. Dist. LEXIS 16552, *16 n.2 (N.,D. Cal. Oct. 12, 1999, No. C-95–0447 MHP) (insurance defense law firm rate structure inapplicable to plaintiffs' public interest attorneys), *aff'd* (9th Cir. 2000) 225 F.3d 1042, 1053 fn.11; *Cruz v. Starbucks, supra.*

69.     Nothing Schatz offers shows that any research performed by partners could have been done as efficiently and effectively had it been first delegated to a lower-rate attorney. To the contrary, even the Real Rate Report cited by Schratz recognizes that "a more experienced, higher-profile lawyer is often going to charge more, but absorbing this higher cost at the outset may make more sense than hiring a less expensive lawyer who will likely take time and billable hours to come up to speed on unfamiliar legal and procedural issues." 2018 Real Rate Report (Schratz Decl., Ex. 12), at p. 166.

### 7.     Duplicative Attendance at Depositions

70.     Particularly in light of the additional information provided by Ms. Reynolds (Reynolds Supp. Decl., ¶¶ 94-98), I also strongly disagree with Schratz's opinion (at ¶ 211) that an arbitrary $75,000 should be deducted from Plaintiffs' lodestar because they sent more than one attorney to some depositions. In my view, his opinion that only one lawyer should attend even key depositions is entirely inconsistent with how the legal marketplace actually works.

71.     Contrary to Schratz's insurance defense perspective, the courts generally recognize that a team approach is often necessary in complex litigation and accordingly, that fees should be denied for duplication "only if the attorneys are *unreasonably* doing the *same* work." *Johnson v University College*, 706 F.2d 1205, 1208 (11th Cir. 1983) (emphasis the Court's). ("[t]he use in involved litigation of a team of attorneys who divide up the work is

common today for both plaintiff and defense work …"). Given this common practice, it was UBH's burden to provide persuasive reasons why *specific instances* of multiple attorneys working on a component of the litigation are unreasonable. *See Gates v. Gomez,* 60 F.3d 525, 535 (9th Cir. 1995). *See also Moreno,* 534 F.3d at 1112 (9th Cir. 2008). That burden is not met by a blanket objection to more than one biller participating in a deposition.

72.     Here, as Ms. Reynolds explains, there was nothing unreasonable about Plaintiffs' occasional use of more than one biller at key depositions. Reynolds Supp. Decl., ¶¶ 95-96. Indeed, *UBH* had multiple attorneys present at depositions to a greater extent than Plaintiffs did. *Id., ¶ 97.* When, as here, the fee opponent also uses multiple attorneys, the argument that multiple attorneys are excessive has little force. *See Democratic Party of Washington v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004).

**8.     Time Allegedly Spent on "Unnecessary" Work**

73.     Schratz also alleges that Plaintiffs' counsel have billed for "unnecessary work", citing specifically to time spent dealing with the media. In response, Ms. Reynolds explains the important role that responding to the media can have in class action cases, both in terms of reaching the class members and ensuring that the media's portrayal of the litigation is accurate, and why the limited hours at issue here were necessary and reasonable. Reynolds Supp. Decl., ¶¶ 99-103. I concur; in my experience, time spent by class action attorneys with the media is often invaluable and would be billed to a fee-paying client.

**9.     Time Spent on the Fee Motion**

74.     Schratz also objects to the amount of time Plaintiffs' counsel have spent on this fee motion. As counsel explain, however, Schratz overstates that amount of time. Reynolds Supp. Decl., ¶¶ 104-113. In my opinion, the actual time spent was fully justified by the amount at stake: it is less than 4.6% of the amount being sought (4.1% of the hours). *Id., ¶ 106.* It also was justified by the need to balance the requirement that the time spent be adequately documented against the dangers of misstating or revealing crucial information in an on-going case. *Id., ¶¶ 46-49; 109.* And, of course, counsel knew from past experience that, unlike in

many class action settlements that involve "clear sailing" agreements, UBH would vigorously oppose their request. *Id.,* ¶ 107.

75.    In the end, the time actually spent on the fee motion is comparable to the number of hours found reasonable for fee motion work in comparably complex cases. For example, in *Independent Living Center of S. Cal. v. Kent,* 2020 U.S. Dist. LEXIS 13019 (C.D. Cal. 2020), a challenge to the state's reduction of Medi-Cal rates, the court found that the attorneys for the intervenor health organizations had reasonably expended 1,234 hours on the fee motion. Similarly, in *U.S. v City & County of San Francisco, supra,* 748 F. Supp. at 1441, in which I served as fee counsel for the plaintiffs, the district court found that plaintiffs' counsel reasonably spent almost 600 hours on the fee application. That ruling was affirmed by the Ninth Circuit in *Davis v City & County of San Francisco, supra,* 976 F.2d at 1545. *See also Communities for Equity v Michigan High Sch. Athletic Ass'n,* 2008 U.S. Dist. LEXIS 25640, at *62 (W.D. Mich, Mar. 31, 2008, No. 1:98–CV–479) (1,172 hours reasonable for work on fee motion).

I declare under penalty of perjury under the laws of the United States that the foregoing facts are true and correct.

Executed on February 16, 2021 at Berkeley, California.

RICHARD M. PEARL