1  KEKER, VAN NEST & PETERS LLP
   SUSAN J. HARRIMAN - # 111703
2  sharriman@keker.com
   633 Battery Street
3  San Francisco, CA 94111-1809
   Telephone:    415 391 5400
4  Facsimile:    415 397 7188

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| DAVID WIT, et al., | Case No. 14-cv-02346-JCS |
| --- | --- |
| Plaintiffs, | Related Case No. 14-cv-05337-JCS |
| v. | **REPLY DECLARATION OF SUSAN J. HARRIMAN IN SUPPORT OF PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES** |
| UNITED BEHAVIORAL HEALTH, | |
| Defendant. | Judge:    Hon. Joseph C. Spero |
| GARY ALEXANDER, et al., | |
| Plaintiffs, | |
| v. | |
| UNITED BEHAVIORAL HEALTH, | |
| Defendant. | |

DECLARATION OF SUSAN J. HARRIMAN IN SUPPORT OF REPLY TO ZUCKERMAN'S REQUEST FOR ATTORNEYS' FEES
Case No. v14-cv-02346-JCS

1635430

7627934.1

I, Susan J. Harriman, declare and say that:

1. I am an attorney licensed to practice law in the State of California and serve as the General Counsel to the law firm of Keker, Van Nest & Peters LLP, where I was a partner from January 1, 1989 until December 31, 2019.

2. The law firm of Zuckerman Spaeder LLP ("Zuckerman") asked me to opine on the reasonableness of the rates that members of Plaintiffs' trial team charged in the instant litigation. In connection with that request, Zuckerman also asked me to review the declaration of James P. Schratz and to comment on his opinions set forth therein.

3. I have reviewed Mr. Schratz' declaration and disagree with many of his opinions. Mr. Schratz showed limited understanding of how complex, high stakes litigation works, the responsibilities and requirements of all the members of a trial team, and what makes for an effective, persuasive and well-prepared trial presentation. He also does not appear to appreciate that trial practice has changed since the days of paper filings and that all good law firms now have litigation support personnel who specialize in e-discovery, metadata, and related technical tasks necessary for document review and production – tasks that secretaries and clerical persons are not qualified to do. In these days of e-filing and e-discovery, paralegals have developed an expertise in making sure the litigation team is organized, prepared and able to easily access the necessary pleadings or exhibits for all aspects of a complex, document-intensive case, from motions and depositions to trial and appeal. Perhaps in a slip and fall case that Fireman's Fund might have handled years ago, a secretary could have managed control over the docket and document production, but it would border on malpractice to have someone other than a skilled paralegal or litigation support specialist handling those tasks now. There still are plenty of tasks that are appropriately delegated to secretarial or office services staff for which the client is not billed, but the tasks that Mr. Schratz labels as "clerical" are not in that category.

2
DECLARATION OF SUSAN J. HARRIMAN IN SUPPORT OF REPLY TO ZUCKERMAN'S REQUEST FOR ATTORNEYS' FEES
Case No. v14-cv-02346-JCS

1635430

4.  Mr. Schratz devotes the lion's share of his declaration to criticizing the work and billing rates for paralegals and litigation support personnel. In my experience in trying large civil cases, it is hard to overstate the importance of having competent litigation paralegals and litigation support personnel as part of the litigation team. Their assistance is invaluable. He also is critical of the fact that plaintiffs are seeking current rates for prior years. That is a legal issue for the Court to decide, and it should not be the opinion of any expert, including me. As for the current rates, he provides no reasoning as to why those rates are unreasonable. He cites to the Real Rate Report, but that table is not focused on the Bay Area, nor does it give any indication of the experience of the paralegals or the sophistication of the practice of the law firms at which the paralegals work. As set forth in my initial declaration at paragraph 11, Zuckerman's rates for its paralegals are well within the customary range for paralegals at comparable law firms in the Bay Area. They correspond closely to the 2020 hourly rates of the paralegals at Keker, Van Nest & Peters, which ranged from $290 to $360 with seven out of 17 paralegals being billed at $360 an hour.

5.  At Keker, Van Nest & Peters, we try to have our bills contain sufficient information so that the client understands what he/she/or it is paying for, while avoiding making the review process too daunting or time-consuming. For years, I have served as a Risk Management partner at Keker, Van Nest & Peters. Every year, I conduct a one-hour class on "Ethics and Billing," and I instruct our new associates on how to bill time to their cases. I stress the importance of accuracy and timeliness in recording their billing entries. I also inform them that it is important to avoid adding too much detail to their billing descriptions.

6.  Mr. Schratz devotes 22 pages of his declaration to criticizing the time of lead paralegal Lori Duignan. I found no merit in his nitpicking attacks. I list below several examples as to why Ms. Duignan's time is appropriately billed.

3
DECLARATION OF SUSAN J. HARRIMAN IN SUPPORT OF REPLY TO ZUCKERMAN'S
REQUEST FOR ATTORNEYS' FEES
Case No. v14-cv-02346-JCS

1635430

1  a. Mr. Schratz claims that the time entries "review and manage internal docket" and "review and update internal docket" constitute block billing and are clerical tasks. He is wrong on both counts. "Review and manage" or "update internal docket" is a descriptive way to describe a common paralegal task that in turn allows the lawyers to seamlessly do their jobs. In this day of e-filing, the paralegals organize materials that are downloaded from the Court's docket, and they save them onto an internal work network or a database. Paralegals do these tasks in a manner that requires an understanding of the case and the issues so that the lawyers can access the information when needed. Our clients routinely pay for our paralegals to perform such a task, which is not assigned to a secretary or clerical person. Ms. Duignan's description of "review and manage internal docket" or "review and update internal docket" accurately describes that task. I understand that task to describe the process of carefully reviewing every filing, knowing the local rules regarding deadlines, calculating and keeping track of deadlines, and ensuring that the firm's docketing system (i.e. the system for keeping deadlines and sending reminders to the case teams) is accurate and up to date. That critical task is appropriately assigned to experienced paralegals like Ms. Duignan. Further, she lists the amount of time it took to perform the task and does not combine that one task with others; therefore, there is no block billing involved.

b. Mr. Schratz also takes issue with the time entry "work on master contact lists". Again, the entry is specific and not combined with any other task—therefore it's not block billing. It adequately describes a paralegal's task, particularly one working for plaintiffs' class counsel. It is important to keep a chart compiling contact information for the wide range of individuals whom the litigation team may need to contact, including potential plaintiffs' class members, opposing counsel, clients and courthouse staff, so that the members of the trial team can communicate with those persons.

4
DECLARATION OF SUSAN J. HARRIMAN IN SUPPORT OF REPLY TO ZUCKERMAN'S
REQUEST FOR ATTORNEYS' FEES
Case No. v14-cv-02346-JCS

1635430

c. Mr. Schratz criticizes approximately 76 billing entries related to document collection (e.g. "attend to collection of documents from potential class members"), which he claims is a clerical task not requiring legal education or experience. In our firm, and likely in any other firm that does high stakes litigation, the collection of documents from clients is always done by either an associate or a paralegal. Proper document collection is mandated by court rules and, if not done properly, is potentially sanctionable. This highly time-consuming task requires a paralegal or associate with the experience, sophistication, and detail orientation to be done properly, thus ensuring that all potentially-relevant materials are collected, preserved, and saved in appropriate places. The documents need to be kept track of and produced if responsive to discovery requests. These are tasks that are appropriately assigned to paralegals, and it is standard law firm practice to bill the tasks conducted by paralegals to clients. Indeed, I would have been concerned if such tasks had been delegated to secretaries or clerical personnel.

d. In every case that I have tried, at some point shortly before trial, I always request and receive permission from a client to have every member of the trial team record their time as "Prepare for and attend trial." While trial is ongoing, every work task during the day is related to the trial. And once in trial, there are so many tasks to do that it would be needlessly time consuming to summarize each and every task and to record time throughout the day. In fact, it is impossible to bill throughout the day since most of the day is spent in the courtroom. I have never had a client complain about such time entries. In this case, the Court is well-positioned to know what days the team was in trial and who was there, and to know how much work preparing for each day of trial required. There are tasks before and after every court day that relate to preparation for trial. In my experience, the attorneys and the paralegals have many late nights during trial. The paralegals, in particular, are responsible for ensuring that the voluminous witness exhibit binders are ready to go, that they contain the correct materials and that there are sufficient copies. Of course, these tasks are more complicated when trial is out

5

DECLARATION OF SUSAN J. HARRIMAN IN SUPPORT OF REPLY TO ZUCKERMAN'S
REQUEST FOR ATTORNEYS' FEES
Case No. v14-cv-02346-JCS

1635430

of town and the trial team is working out of hotel rooms.  In the days shortly before trial and on weekends during trial, the appropriate time entry is "Prepare for Trial."  This complaint appears to stem from Mr. Schratz' lack of trial experience.

7. Mr. Schratz also criticizes the time entries of paralegal Jay Chen as vague, and I disagree.  Mr. Schratz suggests adding detail where none is needed.

a. For example, Mr. Schratz takes issue with Mr. Chen's entry of "assist with preparation of trial exhibits."  In his view, Mr. Chen should have listed the trial exhibit on which he worked and what he actually did to assist.  In a case with hundreds, if not thousands, of trial exhibits, that opinion is entirely divorced from reality.  In reviewing our bills before they go to the client, I would have deleted the additional information Mr. Schratz proposes.  Most clients do not want that level of detail, nor should paralegals be forced to waste their time adding such detail.  "Assist with" means doing whatever task is needed to make sure that the job is done properly, efficiently and in a way that makes it useable for the trial team.  The time entry as written provides the client with sufficient information to determine if the billing entry is fair and accurate.

b. For some inexplicable reason, Mr. Schratz also takes issue with the description "review and index deposition exhibits."  This time entry is not an example of block billing because it constitutes only one task with a reasonable amount of time allocated to it.  The entry itself reflects the fact that paralegals are in charge of tracking exhibits marked in deposition, often with the purpose of later preparing an exhibit list for trial and/or sharing deposition exhibits with experts. It is important that the index of deposition exhibits stays up to date, accurate and in a form that members of the trial team can access.  The deposition exhibit index often includes background information for each deposition exhibit, such as bates number, deponent, date of the original document exhibit and a short description of the exhibit.  Having such a detailed index of deposition exhibits facilitates the taking of further depositions, the process of preparing a list of trial exhibits,

6
DECLARATION OF SUSAN J. HARRIMAN IN SUPPORT OF REPLY TO ZUCKERMAN'S REQUEST FOR ATTORNEYS' FEES
Case No. v14-cv-02346-JCS

1635430

and other trial preparation. The amount of time billed to this task of course depends on the frequency and the number of depositions.

8. Mr. Schratz also complains about some time entries of two litigation support personnel. He attacks many of their entries as "clerical", thereby displaying his own lack of understanding as to the invaluable role played these days by litigation support personnel. Clerical personnel are not qualified to get involved in e-discovery, nor do they understand metadata or have the certifications and technical training necessary to conduct these tasks. I found none of Mr. Nascher's time to be clerical. Mr. Schmidt's time also is appropriately billed, and he adequately described what he did and how long he spent doing that task. He has several time entries of "trial support" which is a typical time entry for a litigation support person helping the trial team with set up and presentation of evidence. I also understand that Mr. Schmidt served multiple roles during trial, not only serving in his litigation support capacity, but also pitching in as a full-time trial paralegal and providing critical computer assistance to the trial team, all of whom were working in makeshift workspaces in hotel rooms.

9. Mr. Schratz opines that "[s]ome strategic conferencing among attorneys does have value, but not when done to excess." Perhaps we disagree merely over the phrase "to excess" but conferences among trial team members enrich a law firm's work product. The pandemic has proven how invaluable it is to conduct informal, in-person conferences so that we may gain further support for our opinions and give clients the benefit of a reasoned, well-discussed strategy. For several years now, in nearly all of our cases at Keker, Van Nest & Peters, we have weekly team meetings of the entire case team so that key information flows to all team members. Those in-person meetings also ensure that the task list is up to date and that people are timely doing the work that needs to be done. They keep all members of the team, including paralegals and young associates, on the same page—with each person well aware of the overall strategic decisions in the case. That way, every team member has a vested interest in helping the team reach those goals

7
DECLARATION OF SUSAN J. HARRIMAN IN SUPPORT OF REPLY TO ZUCKERMAN'S
REQUEST FOR ATTORNEYS' FEES
Case No. v14-cv-02346-JCS

1635430

and the information necessary to do so.  They allow attorneys to prepare witnesses for either deposition or trial, knowing all the key themes of the case.  It is also important that the members of any particular team feel free to discuss ideas with each other.  It is always helpful to bounce an idea off another trial member—whether two paralegals are talking together or two associates or a partner with anyone else on the trial team.  Educated clients, who are well sophisticated in the practice of law, welcome these types of interactions among their trial team.  Mr. Schratz complains that approximately 2.2% of the fees billed by the timekeepers related to or involve conferencing.  I find that percentage to be minor and far from excessive.

10. Mr. Schratz targets Zuckerman's co-counsel to claim that their billing rates are excessive.  For the reasons set forth in my opening Declaration at paragraph 9, I disagree and find both Mr. Bendat's and Mr. Maul's hourly rates to be reasonable and well in line with the rates charged in the Bay Area legal community by lawyers of reasonably comparable skill and expertise.  And for the reasons set forth above in Paragraph 9, I believe that the time spent in conferences by Mr. Maul and Mr. Bendat are appropriate.

11. I have reviewed the list of entries that Mr. Schatz claims are vague, a list of which is set forth in paragraph 164 of his declaration.  I disagree.  Each and every entry provides sufficient detail for the client to understand for what he/she/it is paying.

12. Mr. Schratz also complains about excessive research by partners, again displaying his lack of understanding about how certain law firms are run.  Legal research is a legal skill shared by all lawyers, not just associates.  In our firm, and, I believe, in the Zuckerman firm, once work begins on a case, there is a concerted effort not to add new bodies to the case team unless necessary.  Clients appreciate the consistency of keeping a case team intact without unfamiliar names on a bill.  We also strive to share the work.  On my case teams, we discuss who is going to do a particular task.  It is common for me to ask another partner (or for a partner to offer) to do legal research for several reasons.

8
DECLARATION OF SUSAN J. HARRIMAN IN SUPPORT OF REPLY TO ZUCKERMAN'S REQUEST FOR ATTORNEYS' FEES
Case No. v14-cv-02346-JCS

1635430

First, the partner might already be familiar with the law and will be able to conduct the research more quickly and efficiently. Second, the partner may have more time than an associate. We all have more than a few cases on which we work. If an associate is busy on another case, it is far better to ask another team member to do research than to bring in someone unfamiliar with the case. Moreover, while editing briefs, partners frequently do legal research to confirm that cases are being fairly presented or to track down additional authority. Our billing rates reflect our experience. Therefore, someone with a higher billing rate and more experience tends to do legal research more efficiently than a younger lawyer. In my opinion, Mr. Schratz' complaint about partners doing legal research has no merit.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration was executed on February 14, 2021 in Sausalito, California.

_____
SUSAN J. HARRIMAN

9
DECLARATION OF SUSAN J. HARRIMAN IN SUPPORT OF REPLY TO ZUCKERMAN'S
REQUEST FOR ATTORNEYS' FEES
Case No. v14-cv-02346-JCS

1635430