Douglas R. Young (State Bar No. 073248)
dyoung@fbm.com
Christopher C. Wheeler (State Bar No. 224872)
cwheeler@fbm.com
Russell E. Taylor (State Bar No. 320375)
rtaylor@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WIT, et al.,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>　　　　Defendant.<br><br>GARY ALEXANDER, et al.,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>　　　　Defendant. | Case No. 14-cv-02346-JCS<br>Related Case No. 14-cv-05337 JCS<br><br>**SPECIAL MASTER'S ORDER RE SCRIPT FOR ASYNCHRONOUS FIDUCIARY TRAINING** |

In the agenda for the June 3, 2021 meeting with the parties, the Special Master set forth the following process for issuing orders: After receiving a draft of a proposed order, the parties have three days to provide suggested edits for accuracy. (Dates to be computed per Rule 6 of the Federal Rules of Civil Procedure.) If a party objects to the substance of the proposed order, the party must lodge a written objection with the Special Master and serve the objection upon opposing counsel within 10 days of receiving the proposed order. (Appointment Order ¶ 9.) The Special Master will consider any objection to the proposed order and will endeavor to resolve the issue to the satisfaction of all parties through good-faith discussions. (Appointment Order ¶ 9.) The Special Master will then file the final order on the public docket. If the objecting party remains unsatisfied, that party may, within 45 days of the Special Master's filing of the final order, seek relief from the Court by filing a noticed motion. (Appointment Order ¶ 9.) The parties agreed to follow to this process at the June 3, 2021 meeting.

The Special Master provided a draft of this order to the parties on June 16, 2021, for their review. The Special Master received minor, nonsubstantive proposed edits, which have been incorporated into this order. No party objected to the draft order. Accordingly, it is now final.

## I. BACKGROUND

As part of its Remedies Order, the Court directed United Behavioral Health (UBH), "[w]ith the oversight and approval of the Special Master," "to develop and implement a program, to train [its] Care Advocates, Peer Reviewers, external clinical consultants, any other personnel who make or have input into coverage determinations, and all senior and executive management on UBH's duties under ERISA, including what it means to be an ERISA fiduciary and to administer benefit plans solely in the interests of participants and beneficiaries, as well as the need to comply with plan terms." Remedies Order (ECF No. 491) at Section IV, B.3; *see also* Appointment Order ¶ 19.

Over the past few months, UBH has been collaborating with Plaintiffs to design a training program for its personnel on UBH's fiduciary duties under ERISA. The parties have agreed upon two methods of instruction: live training and asynchronous training (which has interactive components). *See* Joint Case Management Statement (ECF No. 554) at 2. The parties have agreed

that UBH's Care Advocates will receive only the asynchronous training. Joint Case Management Statement (ECF No. 554) at 2. Peer Reviewers and senior and executive management will receive the live training.[1] *Id.*

Care Advocates represent the vast majority of UBH's personnel to receive the fiduciary training under either method.[2] The Court described the role of Care Advocates as "first-line" reviewers:

> When a member or provider submits a request for coverage to UBH, a "Care Advocate" is assigned to (1) determine whether there is an administrative (i.e., non-clinical) basis to deny the request, such as a contractual exclusion for a particular form of treatment or a certain condition, and (2) make an initial determination whether the prescribed treatment, at the proposed level of care, meets criteria in the applicable Guideline. Care Advocates may deny a request on administrative grounds or grant a request on clinical grounds; but if they conclude based on the applicable Guidelines and the information they have collected about the member that the requested service should be denied for clinical reasons they must pass the request on to a Peer Reviewer, who is a physician or doctoral-level psychologist authorized by UBH to make a Clinical Non-Coverage Determination.

FFCL (ECF 329) at 23 (citations omitted). Consistent with the Court's description, UBH has represented, and Plaintiffs do not dispute, that Care Advocates are not involved in developing UBH's guidelines or policies.

The asynchronous training will follow a script. The script begins by providing background on the lawsuit, including the Court's Remedies Order and its Findings of Fact and Conclusion of Law. Participants in the asynchronous training then receive instruction on UBH's fiduciary duties under ERISA, including examples of fiduciary actions that UBH performs. As part of the training,

---

[1] The parties disagree whether UBH's Peer Reviewers and senior and executive management will also need to complete the asynchronous training in addition to the live training. *See* Joint Case Management Statement (ECF No. 554) at 2. If the parties continue to disagree on this point, the Special Master will resolve the disagreement in a subsequent order. The same is true with regard to disputes that may arise with regard to the training of newly hired personnel, an issue the parties have yet to resolve.

[2] UBH estimates that about 1,335 people will receive the fiduciary training initially. Joint Case Management Statement (ECF No. 554) at 2. Of those, UBH estimates 1,175 are Care Advocates; 70 are Peer Reviewers; 10 are External Clinical Consultants; 50 are Senior and Executive Management; and 30 are "other personnel." Letter from Jennifer Romano, Crowell & Moring, to Douglas Young, Special Master (Feb. 24, 2021) (on file with the Special Master).

participants are prompted to answer a number of questions to test and reinforce what they have learned.

Although the parties have largely agreed upon the script's content, two "global" disputes, implicating nine specific disputes, remain. On May 26, 2021, the parties made a joint submission (attached as Exhibit A) including the agreed-upon text and each party's proposed language and position in connection with the nine text disputes. The Special Master has considered the parties' joint submission, the Court's Findings of Fact and Conclusions of Law and the Remedies Order, correspondence from the parties to the Special Master, representations by counsel during the Special Master's meetings with the parties, and the parties' Court filings, and makes the following determinations.

## II. DISCUSSION

### A. Global Dispute No. 1

Global Dispute No. 1 concerns whether there are ever circumstances in connection with UBH's administration of ERISA plans in which UBH is *not* acting as a fiduciary.

As an initial matter, UBH acknowledges that it often acts as a fiduciary in connection with its administration of ERISA plans. Joint Submission at 3 (acknowledging that it "frequently acts in a fiduciary capacity with respect to ERISA-governed plans at issue"); *id*. at 4 ("many, but not all, functions performed by UBH are fiduciary in nature"); *id*. at 5 ("the sort of clinical determinations that were the subject of the FFCL are fiduciary functions"). Indeed, "administrators making benefits determinations . . . are ordinarily acting as plan fiduciaries." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 220 (2004); *id*. at 218 ("A benefit determination under ERISA [] is generally a fiduciary act").

At the same time, the Ninth Circuit recently has acknowledged that a "named fiduciary may perform non-fiduciary functions." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1027 (9th Cir. 2021); *see also Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("the threshold question" is "whether [the] person was acting as a fiduciary (that is, was performing a fiduciary function)

when taking the action subject to complaint").[3] "[A] fiduciary function" involves "discretion or control." *Bafford*, 994 F.3d at 1028.

The parties dispute whether UBH performs any nondiscretionary functions in connection with its administration of ERISA plans. UBH asserts that "there are parts of a claims review that do not involve discretion." Joint Submission at 5. Plaintiffs, in turn, assert that UBH's examples of nondiscretionary acts are, in fact, discretionary. Joint Submission at 5; *id*. at 15 ("the very process of evaluating *whether* a member has 'disenrolled' constitutes a discretionary act" (emphasis in original)).

For the limited purpose of training UBH personnel on UBH's fiduciary duties under ERISA pursuant to the Remedies Order and recognizing UBH's acknowledgment that the clinical determinations that were the subject of the FFCL are "fiduciary functions, Joint Submission at 5, it is not necessary to determine whether (and under what circumstances) UBH ever performs a nonfiduciary function. Introducing this distinction to Care Advocates, the only group of personnel that the parties have agreed will take the asynchronous training exclusively, would not advance the purpose of the training and, worse, could cause confusion. Therefore, the Special Master will resolve the parties' disputes by adopting language that acknowledges UBH's performance of fiduciary functions in connection with its administration of ERISA plans under the applicable facts of this case and in accordance with the Remedies Order, but that does not reflect any determination regarding whether UBH ever performs any nonfiduciary functions in connection with its administration of ERISA plans in other contexts.[4]

---

[3] The Special Master does not interpret the Court's statement in Paragraph 197 of the Findings of Fact and Conclusions of Law to constitute a decision regarding whether UBH ever performs a non-fiduciary function in connection with the ERISA plans it administers. The Special Master understands that this issue was not presented to the Court.

[4] The Special Master acknowledges that UBH may be concerned about the use of the fiduciary training text against UBH in some other proceeding. However, employing the text adopted by the Special Master will not constitute any admission by UBH, and UBH will not waive any appropriate argument in a different proceeding.

**B.     Specific Disputes Implicated by Global Dispute No. 1: Dispute Nos. 1, 2, 4, 6-9**

### 1.     Dispute No. 1 (Pages 3-6)

Early in the training, the trainees are prompted to consider "What is an ERISA fiduciary?" The script answers: "Any person or entity who has discretionary authority or discretionary control over the management or administration of the plan is considered a 'fiduciary,'" and then provides several examples. The first dispute regards the second example of a fiduciary act.

- Plaintiffs propose: "When administering mental health and substance use disorder benefits under ERISA plans, **UBH is** [a] fiduciary" (emphasis in original).

- UBH proposes: "When administering mental health and substance use disorder benefits under ERISA plans, **in many instances, UBH acts as a** fiduciary" (emphasis in original).

The Special Master adopts the following: "UBH acts as a fiduciary in connection with its administration of mental health and substance use disorder benefits under ERISA plans."

### 2.     Dispute No. 4 (Page 8)

The fourth dispute regards the catch-all answer following the list of examples of fiduciary acts on pages 2 through 8.

- Plaintiffs propose: "There are many more examples of 'fiduciary acts.' In effect, whenever UBH is administering benefits for one or more ERISA plans, it **is** acting as a fiduciary" (emphasis in original).

- UBH proposes: "There are many more examples of 'fiduciary acts.' In effect, whenever UBH is administering benefits for one or more ERISA plans, it **may be** acting as a fiduciary" (emphasis in original).

The Special Master adopts the following: "There are many more examples of 'fiduciary acts.' UBH acts as a fiduciary in connection with administering benefits for one or more ERISA plans."

### 3.     Disputes No. 6 and No. 7 (Page 12)

Trainees are prompted to consider, "Why Are ERISA's Fiduciary Duties Relevant to UBH?" The parties dispute the text of the answers to this question.

#### a.     Dispute No. 6 (Page 12)

Dispute No. 6 concerns the first answer.

- Plaintiffs propose: "As noted earlier, UBH is a fiduciary of the ERISA plans it

administers."

- UBH proposes: "As noted earlier, **in many instances**, UBH is a fiduciary of the ERISA plans it administers" (emphasis in original).

The Special Master adopts the following: "As noted earlier, UBH is a fiduciary in connection with the ERISA plans it administers."

### b.  Dispute No. 7 (Page 12)

Dispute No. 7 concerns the explanation of the second answer: "Most of the employer-sponsored plans that UBH administers are governed by ERISA."

- Plaintiffs propose: "This means UBH owes fiduciary duties to the members of those plans, including when it approves or denies benefits, exercises clinical judgment, or otherwise interprets a plan term."

- UBH propose: "This means UBH owes fiduciary duties to the members of those plans, **under certain circumstances**, including when it approves or denies benefits, exercises clinical judgment, or otherwise interprets a plan term" (emphasis added).

The Special Master adopts the following: "This means UBH owes fiduciary duties to the members of those plans, including in connection with its approvals and/or denials of benefits, exercise of clinical judgment, and interpretations of plan terms."

### 4.  Disputes No. 8 and No. 9 (Pages 14–15, 16–17)

The script prompts trainees to consider, "What Do UBH Care Advocates and Peer Reviewers Need to Know about ERISA's Fiduciary Duties?" Disputes No. 8 and No. 9 concern answers to this question.

### a.  Dispute No 8 (Pages 14–15)

The parties dispute the first answer.

- Plaintiffs propose: "When you review a claim for benefits under an ERISA plan, UBH is engaging in a fiduciary act, meaning *you* **are** acting as a fiduciary and need to comply with the fiduciary duties imposed on fiduciaries by ERISA" (emphasis in original).

- UBH propose: "When you review a claim for benefits under an ERISA plan, **in many instances,** UBH is engaging in a fiduciary act, meaning **it is** acting as a fiduciary and needs to comply with the fiduciary duties imposed on fiduciaries by ERISA" (emphasis in original).

The Special Master adopts the following: "UBH engages in fiduciary acts in connection with your review of claims for benefits under ERISA plans, meaning you must comply with the

duties imposed on fiduciaries by ERISA."

### b. Dispute No. 9 (Pages 16–17)

Trainees are then given examples of when they might be engaging in fiduciary acts; Dispute No. 9 concerns one such example.

- Plaintiffs propose: "When you analyze a claim to determine whether other written plan terms are satisfied (i.e., whether 'administrative requirements' have been satisfied, such as precertification requirements), UBH **is** engaging in a fiduciary act" (emphasis in original).

- UBH proposes: "When you analyze a claim to determine whether other written plan terms are satisfied (i.e., whether 'administrative requirements' have been satisfied, such as precertification requirements), UBH **often is** engaging in a fiduciary act" (emphasis in original).

The Special Master's adopts the following: "UBH engages in fiduciary acts in connection with your analysis of claims to determine whether other written plan terms are satisfied (i.e., whether 'administrative requirements' have been satisfied, such as precertification requirements)."

### C. Global Dispute No. 2 (Disputes Nos. 3 and 5)

Global Dispute No. 2 concerns whether there are circumstances in which UBH acts in a nonfiduciary function when developing business-wide guidelines or other internal policies.

#### 1. Dispute No. 3 (Pages 6-8)

The parties propose two versions of an example of a fiduciary act.[5]

- Plaintiffs propose: "Developing guidelines or other internal policies to administer or interpret employer-sponsored plans."

- UBH proposes: "Developing guidelines or other internal policies to administer or interpret a **particular** employer-sponsored plan" (emphasis in original).

UBH contends that "corporate-wide policies that implicate multiple plans" may not implicate fiduciary duties. Joint Submission at 7 (quoting *Peters v. Aetna Inc.*, 2018 WL 3616923, at *8–10 (W.D.N.C. July 27, 2018) for the proposition that "decisions 'that benefited a broad range of health-care consumers and were not directly associated with the Plaintiff's Plan or any other particular benefit plan' were not fiduciary in nature.")); *see also Acosta v. Brain*, 910 F.3d

---

[5] The first two examples are: "(i) Interpreting a plan document, such as deciding whether a given type of treatment is covered by a member's plan; (ii) Making a clinical determination about whether a service or treatment is medically necessary and/or clinically appropriate."

502, 518 (9th Cir. 2018) (actions that constitute a corporate "business decision" are "not subject to fiduciary duties even if those policies have "an effect on an ERISA plan" (quotation marks omitted)). UBH is concerned with the suggestion "that *every* policy that *may have an effect on* the administration of employer-sponsored plans necessarily implicates a fiduciary duty." Joint Submission at 7 (first emphasis in original; second emphasis added).

The Special Master does not read Plaintiffs' proposed text to suggest that "*every* policy that may have an effect on the administration of employer-sponsored plans necessarily implicates a fiduciary duty." UBH Statement: Joint Submission at 7 (emphasis in original). Instead, the Special Master accepts Plaintiffs' observation that the example is limited to developing guidelines or other policies "to administer or interpret employer-sponsored plans." *Id.* Therefore, consistent with the Court's finding that UBH acts as a fiduciary "when it adopts and applies its Guidelines to coverage determinations" (FFCL, ¶ 197), the Special Master adopts Plaintiffs' proposed text.[6]

### 2. Dispute No. 5 (Pages 10-12)

Following the lesson on "What is an ERISA fiduciary?", trainees will be required to answer a series of questions to test their learning. Dispute No. 5 arises in connection with the fourth question. *See* Joint Submission at 10. The fourth question, which is multiple choice, asks: "Which of the following are examples of fiduciary acts, such that UBH owes fiduciary duties to plan members when engaged in these acts?", and provides four answers:

    A. Deciding whether continued service for partial hospitalization is medically necessary for a given member.

    B. Deciding whether residential treatment should be considered custodial.

    C. [The disputed answer].

    D. All of the above.

---

[6] For Dispute No. 2 (page 6), UBH states that it "agrees that the word 'potential' can be deleted from UBH's proposed language in this item" "if the Special Master adopts UBH's proposed language relating to example (iii) below." Joint Submission at 6. Because the Special Master does not adopt UBH's proposed language for example (iii), resolution of that dispute does not resolve Dispute No. 2. The Special Master adopts Plaintiffs' proposed text for Dispute No. 2 ("Examples of 'fiduciary acts' regularly performed by UBH employees include…").

Upon selecting "all of the above," the trainee will receive the following message: "Correct. Each of the acts above involves interpretation of plan terms and discretion in plan administration. Any UBH personnel conducting any of these activities must comply with the fiduciary duties set forth in ERISA and described in this training." Joint Submission at 11–12.

For the third answer,

- Plaintiffs propose: "**Developing a clinical policy regarding whether a category of treatment** is covered or not covered under United's employer-sponsored plans."

- UBH proposes: "**Interpreting plan exclusions to make a determination about whether a specific treatment** is covered or not covered by an employer-sponsored plan."

Plaintiffs contend that "[t]he point of this question is to test UBH personnel's understanding that across-the-board interpretations (i.e., applicable to multiple plans) are still subject to fiduciary duties." Joint Submission at 10. According to Plaintiffs, "UBH's wording . . . removes this important lesson, and would test only whether employees understand that making coverage determinations is a fiduciary act, but not the across-the-board point." *Id.*

Care Advocates, however, will not be called on to "develop[ ] a clinical policy regarding whether a category of treatment is covered or not covered under United's employer-sponsored plans." Joint Submission at 10 (Plaintiffs' proposed example). Instead, Care Advocates are responsible for "[i]nterpreting plan exclusions to make a determination about whether a specific treatment is covered or not covered by an employer-sponsored plan."[7] *Id.* (UBH's proposed example). UBH's example is, therefore, more relevant, and thus of greater practical value, to the Care Advocates. Accordingly, the Special Master adopts UBH's version.

/ / /

/ / /

/ / /

---

[7] "When a member or provider submits a request for coverage to UBH, a Care Advocate is assigned to (1) determine whether there is an administrative (i.e., non-clinical) basis to deny the request, such as a contractual exclusion for a particular form of treatment or a certain condition, and (2) make an initial determination whether the prescribed treatment, at the proposed level of care, meets criteria in the applicable Guideline." FFCL (ECF 329) at 23 (citations omitted).

## III. CONCLUSION AND ORDER

The parties are directed to review and incorporate the Special Master's determinations as set forth above in a final revised joint version of the asynchronous training script.

Dated: June 30, 2021                    FARELLA BRAUN + MARTEL LLP

                                        By:    */s/ Douglas R. Young*
                                               Douglas R. Young

                                        SPECIAL MASTER

39719\14166712.3