UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID WIT, et al.,

Plaintiffs,

v.

UNITED BEHAVIORAL HEALTH,

Defendant.

Case No. 14-cv-02346-JCS

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS**

Re: Dkt. No. 507

## I.      INTRODUCTION

On February 1, 2021, having found Defendant United Behavioral Health ("UBH") liable for breaches of fiduciary duty and violations of the class members' health insurance plans under ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3)(A), the Court entered judgment in this case. Dkt. 531. Presently before the Court is Plaintiffs' Petition for Attorneys' Fees and Costs ("Motion"). For the reasons stated below, the Motion is GRANTED in part and DENIED in part. The Court awards $19,628,071.88 in attorneys' fees and $1,230,729.86 in costs as set forth below.[1]

## II.     BACKGROUND

Zuckerman Spaeder LLP ("Zuckerman Spaeder"), Psych-Appeal, Inc. ("Psych-Appeal"), and The Maul Firm, P.C. ("The Maul Firm") (together, "Class Counsel") seek an award of attorneys' fees incurred in this case in the following amounts: $25,197,592.85 (Zuckerman Spaeder), $1,796,580.00 (Psych-Appeal), $266,591.25 (The Maul Firm), and $514,130.64 (contract attorneys). Suppl. Decl. of Caroline E. Reynolds in Supp. of Pls.' Reply in Supp. of their Pet. for Att'ys Fees and Costs ("Reynolds Reply Decl.") ¶ 8 & Ex. A. These amounts reflect a

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

requested 1.5 multiplier on fees for work on the merits (but not on the instant motion) and are based on the following underlying lodestar amounts:  $17,006,111.83 (Zuckerman Spaeder), $1,197,720.00 (Psych-Appeal), $177,727.50 (The Maul Firm) and $342,753.76 (contract attorneys).  The requested lodestar amounts cover the period from January 2014 through October 31, 2020, and are based on current rather than historical rates, which Plaintiffs contend should be used in order to compensate them for the delay in payment resulting from years of litigation prior to entry of judgment.  Mot. at 9; Reply at 1–2; Reynolds Reply Decl. ¶ 8.

In addition, Plaintiffs seek an award of costs in the amount of $1,242,399.95 incurred by Zuckerman Spaeder, *see* Reynolds Reply Decl., Ex. A & Revised Ex. 6,[2] and $2,683.59 in costs incurred by the Maul Firm.

## III.   ANALYSIS

### A.   Whether Plaintiffs Should be Awarded Fees and Costs Incurred in this Action

#### 1.   Legal Standards

Under ERISA, the court "in its discretion may allow a reasonable attorney's fee and costs of action to either party" in an action brought by a "participant, beneficiary, or fiduciary." 29 U.S.C. §1132(g)(1).  To obtain an award of attorneys' fees under this section, parties must demonstrate that they achieved "some degree of success on the merits."  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010).  "A claimant does not satisfy that requirement by achieving 'trivial success on the merits' or a 'purely procedural victor[y],' but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was substantial or occurred on a central issue.'"  *Id*. (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n.9 (1983) (internal quotations omitted)).

Where the party has achieved some success but did not "prevail[] completely," the Court considers five factors, the "*Hummell* factors," in deciding whether to award fees and costs.

---

[2] Revised Exhibit 6 to the Reynolds Reply Declaration reflects total costs in the amount of $1,585,153.71, but the Court concludes that this number is incorrect for the reasons discussed below.

United States District Court
Northern District of California

1   *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1121 (9th Cir. 2010) (quoting

2   *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980)).  The *Hummell* factors are as

3   follows:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

8   *Hummell*, 634 F.2d at 453.  The court may award fees and costs without considering the *Hummell*

9   factors, however, if the plaintiffs "prevailed completely[,]" "received the entire relief sought, and

10  resolved a significant legal question."  *Nelson v. EG&G Energy Measurements Grp., Inc.*, 37 F.3d

11  1384, 1392 (9th Cir. 1994).

12          **2.  Discussion**

13          Plaintiffs contend they prevailed completely in this case and therefore, that the Court

14  should award fees and costs without reaching the *Hummell* factors.  They further assert, however,

15  that the *Hummell* factors also support their request for attorneys' fees and costs.  UBH, on the

16  other hand, contends Plaintiffs obtained only a procedural victory because the Court remanded for

17  reprocessing instead of awarding benefits to the class members.  Even if Plaintiffs satisfied the

18  threshold established in *Hardt*, they argue, the *Hummell* factors do not support an award of fees

19  and costs.  The Court rejects UBH's argument that Plaintiffs obtained a purely procedural victory

20  and concludes that the *Hummell* factors support an award of attorneys' fees and costs.  Therefore,

21  it need not decide whether Plaintiffs prevailed completely in the case.

22          In support of its argument that Plaintiffs obtained a purely procedural victory, UBH cites

23  cases in which district courts have denied requests for an award of fees and costs where the court

24  did not decide whether benefits were due under ERISA but instead remanded to the plan

25  administrator for determination of that question.  Opp'n at 5–6 (citing *Duncan v. Hartford Life &*

26  *Accident Ins. Co.*, 2013 WL 1785904, at *2 (E.D. Cal. Apr. 25, 2013); *King v. Aetna Life Ins. Co.*,

27  2011 WL 2682102, at *5 (C.D. Cal. July 7, 2011); *Vivas v. Hartford Life & Accident Ins. Co.*,

28  2013 WL 5226720, at *3 (S.D. Fla. June 17, 2013); *Dickens v. Aetna Life Insurance Co.*, 2011

United States District Court
Northern District of California

3

WL 1258854 (S.D.W.Va. Mar. 28, 2011)).  It also points to *Saffle v. Sierra Pacific Power Co. Long Term Disability Income Plan*, 85 F.3d 455 (9th Cir. 1996) and *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 951 n.4 (9th Cir. 1993) in support of its assertion that Plaintiffs' fee request is premature because only after reprocessing will the Court be able to determine whether Plaintiffs obtained meaningful relief.  *Id.* at 7–8.

None of the cases cited by UBH establishes a bright-line rule that a plaintiff who obtains a remand order in an ERISA case rather than an award of benefits does not qualify for an award of fees and costs under § 1132(g)(1).  Indeed, such a rule would be contrary to the holding in *Hardt*, which requires only "some" success and does not condition fees and costs on an award of benefits. *See Gross v. Sun Life Assur. Co. of Canada*, 763 F.3d 73, 80 (1st Cir. 2014) (holding that under *Hardt*, "there is nothing incongruous about rewarding only the successful portion of a mixed decision" and that the plaintiff was entitled to fees based on obtaining "some" success where she had "secured a ruling on the standard of review that improved her likelihood of success on the merits of her claim and [would] impact all similar future claims" even though the court remanded to the claims administrator rather than awarding benefits); *Huss v. IBM Med. & Dental Plan*, 418 F. App'x 498, 512 (7th Cir. 2011) ("easily" concluding that under *Hardt*, plaintiff had demonstrated "some success on the merits" where he had "secured a reversal of the administrative denial of benefits, a remand for further proceedings involving a different controlling document, and the imposition of a statutory penalty against the Defendants."); *Bain v. Oxford Health Ins. Inc.*, No. 15-CV-03305-EMC, 2020 WL 1332080, at *2 (N.D. Cal. Mar. 23, 2020) ("Although the Supreme Court did not address the issue in *Hardt*, most courts have, in the wake of *Hardt* determined that a remand to a plan administrator – by itself – does in fact constitute some success on the merits."); *Barnes v. AT&T Pension Benefit Plan – Nonbargained Program*, 963 F. Supp. 2d 950, 962 (N.D. Cal. 2013); *Olds v. Ret. Plan of Int'l Paper Co.*, No. CIV.A. 09-0192-WS-N, 2011 WL 2160264, at *2–3 (S.D. Ala. June 1, 2011)("The plaintiff claimed that the Plan violated his statutory right to a full and fair review, and the Court held that the Plan did indeed violate that right.  That the relief the plaintiff received on this meritorious claim is a full and fair administrative review rather than a guaranteed award of benefits at the judicial or administrative

1    level may speak to the quantum of his success on the merits of his claim, but it does not convert

2    his substantial success on that claim into failure or trivial success.").

3              Here, the Court has no difficulty concluding that Plaintiffs had "some success on the

4    merits."  Rather than simply remanding for reprocessing, the Court also awarded declaratory relief

5    that the Guidelines used by UBH to administer mental health benefits were improper, as well as

6    injunctive relief to prevent the future use of improper Guidelines in administering mental health

7    and substance use disorder benefits.  Regardless of the results of reprocessing of the class

8    members' claims on remand, the results achieved by Plaintiffs in this case are by no means trivial;

9    nor is their victory purely procedural under *Hardt*.

10             The Court further finds that the *Hummell* factors support an award of fees and costs.  With

11   respect to the degree of culpability or bad faith, the Court has found that "UBH denied mental

12   health and substance use disorder treatment coverage to tens of thousands of class members using

13   internal guidelines that were inconsistent with the terms of the class members' health insurance

14   plans[;]" that "UBH engaged in this course of conduct deliberately, to protect its bottom line[;]"

15   and that "[t]o conceal its misconduct, UBH lied to state regulators and UBH executives with

16   responsibility for drafting and implementing the guidelines deliberately attempted to mislead the

17   Court at trial in this matter."  Remedies Order at 1.  Thus, this factor strongly supports an award

18   of fees and costs.

19             The second factor—the ability of the defendant to satisfy a fee award—also supports

20   Plaintiffs' request for fees and costs.  Although UBH argues that this factor "is not determinative

21   and should carry little weight[,]" it does not dispute that it is able to satisfy a fee award.  *See*

22   Opp'n at 6–7.

23             The third factor, the need for deterrence, also supports an award of attorneys' fees and

24   costs.  The Court rejects UBH's argument that because it no longer uses the challenged Guidelines

25   there is no need for deterrence.  The Court found that UBH breached its fiduciary duty to Plan

26   members over a period of years to protect its bottom line.  The abandonment of the challenged

27   Guidelines does not guarantee that UBH will not breach its fiduciary duty in applying the level of

28   care criteria that have replaced the Guidelines.  An award of Plaintiffs' fees and costs will

United States District Court
Northern District of California

therefore contribute to the goal of deterring further breaches of fiduciary duty.

Under the fourth *Hummell* factor, the Court considers whether Plaintiffs "sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA." *Hummell*, 634 F.2d at 453.  In bringing a broad challenge to the Guidelines UBH used to determine eligibility for mental health and substance use disorder benefits, Plaintiffs clearly sought to benefit plan participants generally by ensuring that they received coverage to which they were entitled under their health insurance plans.  Moreover, Plaintiffs succeeded on their challenges regarding mental health and substance use disorder treatment benefits, benefiting class members.  Indeed, Plaintiffs' claims will likely benefit not only the class members but also tens of thousands of plan participants who are not class members.

Finally, under the fifth *Hummell* factor, the Court considers the relative merits of the parties' positions.  *Id.*  Plaintiffs prevailed on summary judgment and at trial on all of their claims, despite vigorous efforts by UBH to defeat Plaintiffs' claims.  This factor therefore favors an award of fees and costs.

In sum, the Court finds that Plaintiffs have demonstrated "some success on the merits" and that the *Hummell* factors support an award of attorneys' fees and costs.  Therefore, the Court finds it appropriate to exercise its discretion to award Plaintiffs reasonable attorneys' fees and costs incurred in this action.

### B.   Lodestar Amount

#### 1.   Legal Standards Governing Lodestar Calculation

Federal courts have adopted the "lodestar" method for determining reasonable attorneys' fees. *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986).  This approach has two parts.  First, the lodestar figure is calculated by multiplying the number of hours counsel reasonably spent on the case by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Second, the court may "adjust the lodestar upward or downward using a multiplier based on factors not subsumed in the initial calculation."  *Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, No. 3:08-CV-05278 RS, 2014 WL 2621202, at *2 (N.D. Cal. June 12, 2014).  But a "'strong presumption' exists that the lodestar figure represents a 'reasonable fee,' and therefore, it should only be enhanced or reduced in

1   'rare and exceptional cases.'" *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000)

2   (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565

3   (1986)).

### 2. Reasonable Rates

#### a. General Legal Standards

6   In determining reasonable hourly rates, courts must balance "granting sufficient fees to

7   attract qualified counsel to civil rights cases" and "avoiding a windfall to counsel." *Moreno v.*

8   *City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). "The way to do so is to compensate

9   counsel at the prevailing rate in the community for similar work; no more, no less." *Id.* "The

10  hourly rate for successful civil rights attorneys is to be calculated by considering certain factors,

11  including the novelty and difficulty of the issues, the skill required to try the case, whether or not

12  the fee is contingent, the experience held by counsel and fee awards in similar cases." *Id.* at 1114.

13  "The fee applicant has the burden of producing satisfactory evidence, in addition to the

14  affidavits of its counsel, that the requested rates are in line with those prevailing in the community

15  for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v.*

16  *Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). As a general rule, the forum district

17  represents the relevant legal community. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir.

18  1992). Fee applicants may provide affidavits of practitioners from the same forum with similar

19  experience to establish the reasonableness of the hourly rate sought. *See, e.g.*, *Mendenhall v. Nat'l*

20  *Transp. Safety Bd.*, 213 F.3d 464, 471 (9th Cir. 2000); *Jones v. Metro. Life Ins. Co.*, 845 F. Supp.

21  2d 1016, 1024–25 (N.D. Cal. 2012). Decisions by other courts regarding the reasonableness of the

22  rates sought may also provide evidence to support a finding of reasonableness. *See Widrig v.*

23  *Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998) (holding that a rate set by the district court based, in

24  part, on the rate awarded to same attorney in another case, was reasonable).

#### b. Current vs. Historical Rates

26  Plaintiffs request that the Court calculate the amount of the lodestar using 2020 hourly

27  rates, "or, for timekeepers who are not currently working on the matter, their rates in the year in

28  which they last billed 10 or more hours on the matter[,]" in order to compensate them for the

United States District Court
Northern District of California

7

United States District Court
Northern District of California

nearly six-year delay in receiving compensation.  Mot. at 11–12; Decl. of Caroline E. Reynolds in Supp. of Pls.' Petition for Attn'ys Fees and Costs ("Reynolds Mot. Decl.") ¶ 77 & Ex. 1.  UBH argues that calculating fees based on current rates will give Plaintiffs a windfall rather than just compensation for the delay in payment and argues that instead, the lodestar should be calculated using historical rates plus an enhancement calculated using simple interest based on the 1-Year Treasury Constant Maturity Rate.  Opp'n at 10.

The Supreme Court has recognized that "[e]nhancement for delay in payment is, where appropriate, part of a 'reasonable attorney's fee.'"  *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 282 (1989).  Thus, "[i]n setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."  *Id.* (quoting *Delaware Valley Citizens' Council*, 483 U.S. at 716); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) (holding in ERISA case that "[d]istrict courts have the discretion to compensate plaintiff's attorneys for a delay in payment by either applying the attorneys' current rates to all hours billed during the course of the litigation or using the attorneys' historical rates and adding a prime rate enhancement.").  Where an enhancement is used to compensate for delay, "the amount of the enhancement must be calculated using a method that is reasonable, objective, and capable of being reviewed on appeal, such as by applying a standard rate of interest to the qualifying outlays of expenses."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 555 (2010).  A "district court's determination to adjust to current rates rather than to make an interest adjustment squarely [is] within the bounds of its discretion."  *Gates*, 987 F.2d at 1407.

Here, the Court finds that Plaintiffs' request that the lodestar be calculated using current rates to account for the nearly six-year delay in compensation is reasonable.  *See, e.g.*, *Oldoerp*, 2014 WL 2621202, at *4 (granting attorneys' current rates for a case filed five years previously); *Harlick v. Blue Shield of California*, No. C 08-3651-SC, 2013 WL 2422900, at *4 (N.D. Cal. June 3, 2013) (applying current rates to compensate for a five-year delay in payment).  While UBH asserts that this approach will result in a windfall to Plaintiffs, the approach proposed by Plaintiffs results in a *lower* lodestar amount than would result from using the prime rate enhancement

approach—an approach that the Ninth Circuit has also approved.  *See* Reply at 10 (using prime rate enhancement results in a lodestar "over $700,000 higher than the amount requested"); Decl. of Josephine Duh in Supp. of Mot. for Attn'y Fees ("Duh Decl.") ¶¶ 3–6 & Exs. A & B ((calculating lodestar of $17,739,357.46 as of December 31, 2020 using historical rates plus prime rate enhancement as compared to requested lodestar of $17,022,102.83).

Furthermore, Plaintiffs' proposal that for timekeepers who are no longer working on the case the Court use the rates those timekeepers charged in the last year in which they billed at least 10 hours, without enhancement, further lowers Plaintiffs' requested lodestar amount.  *See* Reynolds Mot. Decl., Ex. 2 (listing Zuckerman Spaeder's standard historical rates for each of the same timekeepers, for the years in which they worked on this matter).  Indeed, the Ninth Circuit has held that using the "last rates charged" without an enhancement may result in *inadequate* compensation for delay as to attorneys whose most recent rates predate the filing of the fee petition.  *See In re Washington Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1305 (9th Cir. 1994) (holding that "the last rates charged by attorneys who left [the firm] prior to the fee petition, without a prime rate enhancement, inadequately compensate[d] the firm for the delay in receiving its fees" because "[f]ull compensation requires charging current rates for all work done during the litigation, or by using historical rates enhanced by an interest factor.").  The fact that Plaintiffs have not requested an interest rate enhancement for timekeepers whose requested rates are from years prior to 2020, even though the case law appears to permit such an enhancement as to those timekeepers, further supports the Court's conclusion that the method proposed by Plaintiffs to account for delay results in reasonable rates.

The Court rejects UBH's assertion that it should apply historical rates with an enhancement based on the 1-Year Treasury Constant Maturity Rate.  Opp'n at 10.  UBH cites no authority suggesting that this method of calculating the interest enhancement is appropriate, and in the Ninth Circuit, courts generally use the prime rate to calculate the appropriate enhancement when such an enhancement is used to account for delay.  *See id.* ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of the litigation; or (2) by using the attorneys' historical rates and

United States District Court
Northern District of California

United States District Court
Northern District of California

1     adding a prime rate enhancement.").  In the single case cited by UBH to justify its position, *Dine*

2     *v. Metro. Life Ins. Co*., No. CV 05-3773 RSWL PLAX, 2011 WL 6131312, at *3 (C.D. Cal. Dec.

3     9, 2011), the court used the prime rate and not the 1-Year Treasury Constant Maturity Rate, to

4     calculate the appropriate enhancement.  Therefore, the Court declines UBH's invitation to use

5     historical rates with an enhancement based on the 1-Year Treasury Constant Maturity Rate.

6                c.  Whether Requested Current Rates are Reasonable

7                     i.  Rate Increases Over the Course of Litigation

8        Where the Court awards current hourly rates rather than historical rates for work

9     performed in past years, it may consider the magnitude of yearly rate increases as part of its

10    reasonableness inquiry.  *See Oldoerp*, 2014 WL 2621202, at *4 (noting that counsel's rates had

11    "increased since the inception of the litigation . . . at a fairly modest pace" and finding that

12    "[u]nder these circumstances, where the case was filed nearly six years ago and where rewarding

13    current rates [did] not trigger an inordinate increase in the overall fee award," it was appropriate to

14    base the fee award on counsel's "current reasonable rate.").  UBH contends increases in the rates

15    charged by Plaintiffs' counsel over the course of this case are unreasonable, and therefore, that use

16    of current rates to calculate the lodestar also is not reasonable.  The Court disagrees.

17        Plaintiffs support the rate increases of Class Counsel through experts, who find the

18    increases reasonable and in line with those of comparable Bay area law firms.  *See* Decl. of Susan

19    J. Harriman in Supp. of Pls.' Request for Att'ys' Fees ("Harriman Mot. Decl.") ¶ 15 ("The annual

20    increase in the hourly rates by the timekeepers in the Zuckerman firm are modest, keeping their

21    hourly rates within the range of rates of those charged by comparable Bay Area law firms."); Decl.

22    of Richard M. Pearl in Supp. of Pls.' Request for Att'ys' Fees ("Pearl Mot. Decl.") ¶ 20 ("In my

23    opinion, the surveys cited above  show that the rate increases Zuckerman Spaeder has taken since

24    2014 are reasonable. In fact, courts and commentators have approved even greater increases.").

25    The sources Pearl cites in support of his opinion, including cases and news articles, generally

26    approve rate increases between 3.3% and 10%.  Pearl Mot. Decl. ¶ 20.

27        After reviewing the yearly increases in historical rates of Class Counsel provided by

28    Plaintiffs, the Court finds that Class Counsel's rate increases generally fall within the range

approved in the sources cited by Pearl.  Reynolds Mot. Decl., Ex. 2.  Although rate increases for Andrew Caridas and Ramya Kasturi between 2015 and 2016 are higher (Caridas's hourly rate increased by 28%, from $490 to $625, and Kasturi's hourly rate increased by 25%, from $380 to $475), the Court nonetheless finds these increases to be reasonable because the higher 2016 rates are commensurate with the prevailing rates for associates with similar experience at Bay area law firms in 2016, as discussed further below.

Therefore, the Court rejects UBH's argument that the increases in rates charged by Class Counsel over the course of litigation make use of current rates to calculate Plaintiffs' lodestar unreasonable.

### ii.  Whether Requested Rates are in Line with Prevailing Rates

UBH does not dispute that the rates sought for Zuckerman Spaeder attorneys are in line with prevailing rates in the relevant community for attorneys with comparable qualifications but argues that the rates for Zuckerman Spaeder partners should be reduced by 10% because some of the work they performed should have been done by associates at lower rates.  Opp'n at 12; Decl. of James P. Schratz in Supp. of Def.'s Opp'n to Pls.' Pet. for Att'ys Fees and Costs ("Schratz Opp'n Decl.") ¶ 192.  UBH also argues that the rates charged for paralegals and other litigation support are excessive and should be reduced to $250 and $150 an hour, respectively.  Opp'n at 12–13.  Finally, UBH challenges the rates sought for co-counsel Meiram Bendat (Psych-Appeal) and Anthony Maul (The Maul Firm), arguing that they should be reduced to take into account the fact that prevailing rates for solo practitioners and small firms are lower than hourly rates charged by large law firms.  Opp'n at 13; Schratz Opp'n Decl. ¶¶ 137, 141.  UBH does not challenge the reasonableness of the rates sought for work performed by contract attorneys.

### 1.  Zuckerman Spaeder Attorneys

Plaintiffs request the following hourly rates for Zuckerman Spaeder attorneys:[3]

---

[3] These rates reflect 2020 rates, unless otherwise specified.

United States District Court
Northern District of California

**Partners and Counsel**

| Name | Years of Experience | Rate |
|---|---|---|
| Caroline E. Reynolds | 18 years | $825 |
| Jason S. Cowart | 21 years | $980 |
| Brian Hufford | 35 years | $1,145 |
| Carl S. Kravitz | 39 years | $1,145 |
| Adam B. Abelson | 10 years | $690 |
| Aitan D. Goelman | 24 years | $1,040 |
| Steven N. Herman | 10 years | $665 (2017) |
| Andrew N. Goldfarb | 22 years | $750 (2017) |
| Daniel P. Moylan | 16 years | $625 (2016) |
| William J. Murphy | 42 years | $1,095 |
| David Reiser (Counsel) | 39 years | $930 |

**Associates**

| Name | Years of Experience | Rate |
|---|---|---|
| Andrew Caridas | 8 years | $625 (2016) |
| Anant Kumar | 7 years | $610 (2019) |
| Sara L. A. Lawson | 10 years | $650 (2017) |
| Richard A. Kraus | 1 year | $425 (2017) |
| Ramya Kasturi | 4 years | $475 (2016) |
| Devon Galloway | 6 years | $595 |
| Nell Zora Peyser | 2 years | $450 (2017) |

**Staff Attorneys**

| Name | Years of Experience | Rate |
|---|---|---|
| Nina J. Falvello | 27 years | $390 |
| Benjamin L. Krein | 18 years | $500 (2018) |
| Andrew McWilliams | 5 years | $390 |
| Scott A. Hanna | 21 years | $350 (2016) |
| Kimberly Gainey | 13 years | $375 (2019) |
| Sepaass Shahidi | 13 years | $390 |
| Jason B. Acton | 19 years | $575 (2017) |
| David Wong | 13 years | $350 (2017) |
| Janice Lee | 11 years | $390 |
| Kurt M. Reiser | 13 years | $350 (2017) |
| Laura Eller | 26 years | $390 |
| Sylvia K. Soltis | 7 years | $300 (2016) |

*See* Reynolds Mot. Decl. ¶ 77 & Ex. 1.

In support of these hourly rates, Plaintiffs have offered declarations by attorneys with significant expertise in billing practices, Richard M. Pearl and Susan J. Harriman, who opine that the requested rates are in line with prevailing rates in the community. *See generally* Pearl Mot. Decl.; Harriman Mot. Decl. Harriman's opinion that the attorney rates listed above are reasonable

is based, in part, on data obtained from Peer Rates, a "dynamic web-based billing rate service that" provides "access to accurate, court reported, hourly rate data[,]" including "2018 rates for California attorneys that were previously disclosed in other matters, primarily bankruptcy filing." Harriman Mot. Decl. ¶ 13 & Ex. A.  Pearl's opinion is based on his own experience with prevailing rates nationwide and in California as an expert witness, the fact that numerous courts have found Zuckerman Spaeder's rates to be reasonable, and various surveys and articles.  Pearl Mot. Decl. ¶¶ 13–20 & Exs. C–H.  Pearl also bases his opinion on evidence that "over 90% of Zuckerman Spaeder's practice involves fee-paying clients who have paid and continue to pay the firm's standard hourly rates."  Pearl Decl. ¶ 22 (citing Reynolds Mot. Decl.  ¶ 74).

Having reviewed the Pearl and Harriman declarations and the supporting materials attached thereto, the Court finds that the attorney rates sought by Plaintiffs are reasonable and in line with those charged by firms in the Bay Area conducting complex litigation.  *See Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d at 1079 ("[I]t is reasonable, in identifying appropriate comparators, to distinguish between complex and non-complex litigation.").

 First, the Court places significant weight on Pearl's opinion that the rates charged by all of the timekeepers listed above are reasonable and "in line with the standard hourly noncontingent rates charged by Bay Area law firms that regularly engage in civil litigation of comparable complexity."  Pearl Mot. Decl. ¶ 21.  Pearl has extensive experience in the area of attorney billing rates in this district and has been widely relied upon by both federal and state courts in Northern California (including the undersigned) in determining reasonable billing rates.  *Id*.  ¶¶ 4–7 (describing experience and listing cases in which courts have relied upon Pearl's opinions). Likewise, Harriman has practiced in this district since 1989 and has become familiar with the rates charged in the Bay area, in part because she frequently represents lawyers and law firms in legal malpractice cases.  Harriman Mot. Decl. ¶ 5.

The Court's conclusion that Zuckerman Spaeder's rates are reasonable is further supported by evidence that approximately 90% of Zuckerman Spaeder's revenues come from fee-paying clients and Zuckerman Spaeder bills those clients at the same rates it seeks here.  Reynolds Mot. Decl. ¶¶ 74–75; *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C.

1    Cir. 1982) ("[S]pecific evidence of [counsel's] actual billing practice during the relevant time

2    period, if in fact applicant has a billing practice to report . . . provide[s] important substantiating

3    evidence of the prevailing community rate.").

4         Finally, several judges have found that Zuckerman Spaeder's rates are reasonable.  *See*,

5    *e.g.*, *Des Roches v. Cal. Physicians' Serv.*, 5:16-CV-02848-LHK, ECF No. 272, *8 (N.D. Cal. July

6    5, 2018) ("Class Counsel's rates. . . are reasonable in light of their extensive experience in class

7    actions, complex commercial litigation, and ERISA litigation."); *High St. Rehab., LLC v. Am.*

8    *Specialty Health Networks, Inc.*, 2:12-CV-07243-NIQA (E.D. Pa. Aug. 29, 2019), ECF No. 184

9    ("[Class Counsel's] hourly rates are. . . well within the range of what is reasonable and appropriate

10   in this market."); *In re Cigna-Am. Specialty Health Admin. Fee Litig.*, 2:16-CV-03967-NIQA

11   (E.D. Pa. Aug. 29, 2019).

12        The Court rejects UBH's argument that the rates charged by Zuckerman Spaeder partners

13   should be reduced by 10% for time billed for legal research, which they contend should have been

14   conducted by associates.  The Ninth Circuit cautions courts not to "attempt to impose [their] own

15   judgment regarding the best way to operate a law firm, nor to determine if different staffing

16   decisions might have led to different fee requests."  *Moreno*, 534 F.3d at 1115.  In *Moreno*, the

17   court recognized that "the cost effectiveness of various law firm models is an open question" and

18   that work that might be delegated to associates under the supervision of a partner by a large firm

19   may sometimes be completed more quickly and effectively by a more experienced partner.  *Id.*

20   Here, Class Counsel were litigating a case that involved difficult areas of ERISA law and many

21   unsettled legal issues.  Under those circumstances, it was not unreasonable for the partners who

22   were leading the case to perform legal research and indeed, staffing the case in this manner may

23   have decreased Zuckerman Spaeder's lodestar by reducing the hours billed.  Therefore, the Court

24   declines to reduce hourly rates for partners on time they billed for legal research.

25   *Paralegals and Litigation Support*

26        Plaintiffs request the following rates for paralegals and litigation support professionals,

27   which they contend are in line with the experience levels of each individual:

28

United States District Court
Northern District of California

**Paralegals**

| Name | Years of Experience | Rate |
|------|---------------------|------|
| Lori V. Duignan | 18 years | $370 |
| Jer-Wei (Jay) Chen | 17 years | $340 (2018) |
| Cara London | 1 year | $300 (2017) |

**Litigation Support**

| Name | Years of Experience | Rate |
|------|---------------------|------|
| Patrick Schmidt | 19 years | $360 |
| Tareq Nascher | 12 years | $250 (2017) |

These timekeepers have the following experience:

 Lori Duignan: Duignan has eighteen years of experience as a litigation paralegal, seven of which in her current capacity as a senior paralegal.  Reynolds Mot. Decl. ¶ 69 & Ex. 1; Reynolds Reply Decl. ¶¶ 14–15.

 Jer-wei (Jay) Chen: Chen has 17 years of experience as a paralegal.  Reynolds Mot. Decl. ¶ 70 & Ex. 1; Reynolds Reply Decl. ¶ 16.

 Cara London: London has 1 year of experience as a paralegal assistant.  Reynolds Mot. Decl. ¶ 71 & Ex. 1; Reynolds Reply Decl. ¶ 17.  London does not have formal certification as a paralegal but carries out similar duties.  Reynolds Reply Decl. ¶ 17.

 Patrick Schmidt:  Schmidt is the manager of Zuckerman Spaeder's Litigation Support team, with 19 years of experience specializing in electronic discovery.  Reynolds Mot. Decl. ¶ 72 & Ex. 1; Reynolds Reply Decl. ¶ 18.

 Tareq Nascher: Nascher has 12 years of experience in litigation support.  Reynolds Mot. Decl. ¶ 73 & Ex. 1; Reynolds Reply Decl. ¶ 18.

 Both Pearl and Harriman opine that these rates are well within prevailing rates in the Bay area for individuals with comparable qualifications.  Pearl Mot. Decl. ¶ 24; Harriman Mot. Decl. ¶ 11.  Based on this evidence, the Court finds that the requested rates are reasonable, especially in light of Plaintiffs' exercise of billing judgment to bill contract attorneys at cost rather than seeking the $240 hourly rate that is routinely awarded by courts—which would have increased Plaintiffs' requested fee award by $375,000.  *See* Pearl Mot. Decl. ¶ 24.

 The Court rejects UBH's argument that the rates for paralegals and litigation support

should be reduced to no more than $250 an hour for paralegals and no more than $150 an hour for litigation support. Opp'n at 12–13; Schratz Opp'n Decl. ¶¶ 59–64. While UBH has offered the opinion of Schratz in support of its position, the Court finds that opinion to be unsupported and unpersuasive. First, the Court rejects Schratz's opinion that Plaintiffs have not provided sufficient information about the qualifications of these timekeepers. Schratz Opp'n Decl. ¶ 63. To the contrary, the qualifications of these timekeepers are set forth in sufficient detail in the Reynolds Motion Declaration, ¶¶ 69–71 and the Reynolds Reply Declaration, ¶¶ 14–18, 21–34. Second, Plaintiffs have presented evidence that these are the rates that are billed to fee-paying clients, supporting the conclusion that they are reasonable. Reynolds Mot. Decl. ¶ 75. Schratz's statement that Plaintiffs have provided no evidence of this is incorrect. *See* Schratz Opp'n Decl. ¶ 106. Third, Pearl presented detailed evidence relating to prevailing rates *in this district* in support of his opinion that these rates are in line with prevailing rates in the relevant community. Pearl Mot. Decl. ¶¶ 15–20; Pearl Reply Decl. ¶ 20. In contrast, the single survey cited by Schratz in support of his opinion, the 2018 Real Rate Report, addresses nationwide average paralegal rates, not rates in this district. *See* Schratz Opp'n Decl. ¶ 119 and Ex. 12, p. 8. Therefore, the Court declines to reduce the rates sought by Plaintiffs for paralegals and litigation support.

*Contract Attorneys*

Plaintiffs request a lodestar amount of $342,753.76 ($514,130.64 with the requested 1.5 multiplier) for the ten contract attorneys who worked on the case, performing a total of 2,890.82 hours of work at an average hourly rate of $118.50. Reynolds Mot. Decl. ¶ 187. Plaintiffs do not seek a mark-up on the cost of the contract attorney work, even though some courts permit contract attorney's hours to be billed at market rates regardless of the actual hourly rate charged, *see, e.g.*, *Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp.2d 249, 272 (D.N.H. 2007), and at least one court in this district has found an hourly rate of $240 for contract attorneys to be reasonable. *See In Re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *16–20 (N.D. Cal. Aug. 17, 2018) (finding a rate of $240/hour reasonable for contract attorneys doing document review work). UBH does not challenge the rate used to calculate the lodestar of the contract attorneys, which the Court finds to be reasonable.

1          2.   Psych-Appeal

2          Plaintiffs request that the Court award Dr. Meiram Bendat, of Psych-Appeal, his current

3    hourly rate of $900.  Mot. at 18; Decl. of Meiram Bendat in Supp. of Pls.' Pet. For Att'ys Fees and

4    Costs ("Bendat Mot. Decl.") ¶ 20; Suppl. Decl. of Meiram Bendat in Supp. of Pls.' Pet. for Att'ys

5    Fees and Costs ("Bendat Reply Decl. ") ¶ 9.

6          Dr. Bendat is a licensed psychotherapist with a Ph.D. in psychoanalytic science and is a

7    nationally recognized expert in mental health parity and treatment access.  Bendat Mot. Decl.

8    ¶¶ 4–7.  He is also a practicing attorney, having graduated from the University of Southern

9    California School of Law in 1998, and is admitted to the California bar.  *Id.* at 1.  In 2011, Dr.

10   Bendat founded Psych-Appeal, which is "the country's first private law firm exclusively devoted

11   to mental health insurance advocacy." *Id.* ¶ 8.  The $900 hourly rate sought for Dr. Bendat is his

12   standard rate for clients who are billed by the hour, which make up approximately 25% of his

13   practice.  *Id.* ¶ 20.  Another 25% of his practice is "comprised of (non-contingency) fixed

14   engagements (e.g., ongoing, project-specific retainers)" which is not compensated hourly, but "if

15   broken down to an hourly rate, exceeds $900 per hour." *Id.*  Dr. Bendat does not raise his rates

16   annually; rather he "makes adjustments that are based on [his] professional development,

17   contributions to, and recognitions in, the field."  Bendat Reply Decl. ¶ 10.  He raised his rates in

18   2019 by 20%, from $750 to $900 to "to account for the Ph.D. in psychoanalytic science that [he]

19   earned in mid-2015 and for numerous professional distinctions since then." *Id.*

20         Both Pearl and Harriman find Dr. Bendat's hourly rates to be reasonable and in line with

21   prevailing rates in the Bay Area for attorneys with comparable experience. *See* Pearl Mot. Decl. ¶¶

22   12–16; Harriman Mot. Decl. ¶ 9 (finding "his hourly rate of $900 to be reasonable and well in line

23   with the rates charged in the Bay Area legal community by lawyers of reasonably comparable skill

24   and expertise.").  In addition, four courts awarded Dr. Bendat's rate of $750 between 2014 and

25   2017, prior to his rate increase. *See* Schratz Opp'n Decl. ¶¶ 129–134 (citing *Weil v. Cigna Health*

26   *& Life Ins. Co*., 2:15-CV-07074-16 MWF-JPR (C.D. Cal. Aug. 29, 2017); *Craft v. Health Care*

27   *Serv. Corp*., 1:14-CV-05853-VMK (N.D. Ill. Feb. 26, 2018); *Doe v. Health Care Serv. Corp*., No.

28   1:16-CV-04571-VMK (N.D. Ill. Oct. 19, 2018); *Des Roches v. California Physicians' Service*,

United States District Court
Northern District of California

17

United States District Court
Northern District of California

1   Case No 5:16-CV-2848 (LHK) (N.D. Cal. July 5, 2018)).  Further, Dr. Bendat's 2019 rate of $900

2   was found to be reasonable in *Meidl v. Aetna, Inc.*, No. 3:15-cv-01319 (D. Conn. 2019).

3          In light of Dr. Bendat's education and experience, including his expertise in the mental

4   health field, and because the Court finds that awarding current rates is an appropriate method to

5   compensate Plaintiffs for the delay in payment, as discussed above, the Court finds that Dr.

6   Bendat's rate of $900 per hour is reasonable.

7                          3.   The Maul Firm

8          Plaintiffs request that Anthony Maul, of the Maul Firm, be awarded his current hourly rate

9   of $675 for the purposes of determine his lodestar.  Mot. at 18; Decl. of Anthony Maul in Supp. of

10  Pls.' Pet. for Att'ys Fees and Costs Decl. of Anthony Maul ("Maul Mot. Decl.") ¶ 12.

11         Mr. Maul is a solo practitioner with "more than 16 years of experience in complex and

12  class action litigation focused on the health care and health insurance industry."  Maul Mot. Decl.

13  ¶ 4.  He graduated from New York University School of Law in 2003 and worked as a litigation

14  associate at Latham & Watkins LLP and Pomerantz LLP between 2004 and 2014 before founding

15  The Maul Firm in 2014.  *Id.* ¶ 5.  Both of Plaintiffs' experts opine that Maul's requested rate is in

16  line with prevailing rates.  *See* Pearl Mot. Decl. ¶¶12–16; Harriman Mot. Decl. ¶ 9 ("[Maul's]

17  hourly rate of $675 is well below the rates charged in the Bay Area by lawyers of reasonably

18  comparable skill and experience.").  The Court finds that the $675 hourly rate requested for Maul

19  is reasonable.

20                          **3.   Reasonable Hours**

21                          a.   Legal Standards

22         In determining whether Plaintiffs' request for attorneys' fees is reasonable, the Court's

23  inquiry "must be limited to determining whether the fees requested by this particular legal team

24  are justified for the particular work performed and the results achieved in this particular case."

25  *Moreno*, 534 F.3d at 1115.  It is generally improper for the court to "impose its own judgment

26  regarding the best way to operate a law firm, [or] to determine if different staffing decisions might

27  have led to different fee requests."  *Id.*  It is the "difficulty and skill level of the work performed,

28  and the result achieved—not whether it would have been cheaper to delegate the work to other

attorneys— [that] must drive the district court's decision." *Id.*

    b. Contentions of the Parties

  In the Motion, Plaintiffs requested a total lodestar of $18,740,304.09 (without the requested multiplier). Reynolds Mot. Decl., Ex. 1 at p. 3. In support of the Motion, Plaintiffs provided declarations of Class Counsel summarizing the lodestar amounts they sought, along with exhibits reflecting the specific time entries upon which the lodestar amounts were based. *See generally* Reynolds Mot. Decl. & Ex. 3; Maul Mot. Decl. & Ex. A; Bendat Mot. Decl. & Ex. A. They also supplied declarations by experts attesting that the time is reasonable. *See generally*, Pearl Mot. Decl.; Harriman Mot. Decl.

  UBH opposed the Motion on the ground that "Class Counsel did not produce original billing records[,]" arguing that the "summary charts" supplied by Plaintiffs did not provide sufficient detail about the time billed to substantiate Plaintiffs' fee request. Opp'n at 8–9 (citing Schratz Mot. Decl. ¶ 168). UBH argued that Zuckerman Spaeder's lodestar should be reduced by 10%, or $1,409,393.63 pre-multiplier, to account for vague and redacted time. *Id.* at 9. UBH further asserted that Plaintiffs engaged in impermissible block-billing and requested a 15% reduction in Class Counsel's block-billed fees on that basis. *Id.* at 10 (citing Schratz Opp'n Decl. ¶¶ 150–160). According to Schratz, 27% of Class Counsel's time was block-billed, accounting for $4,483,806.60 of the requested lodestar amount, pre-multiplier. Schratz Opp'n Decl. ¶¶ 150, 160.

  In its Opposition, UBH asked for additional reductions in Plaintiffs' requested lodestar on the following grounds:

- Plaintiffs seek fees for **clerical work** by attorneys and paralegals and litigation support staff, which is overhead and should be subsumed in the timekeepers' hourly rates. Opp'n at 13 (citing Schratz Opp'n Decl., ¶¶ 123–125, 172, 173) (requesting reduction in lodestar for 43.8 hours for attorney time, totaling $16,924.50 in fees pre-multiplier, and 538.2 hours of paralegals and litigation-support time, totaling $446,569.05 pre-multiplier).

- Class Counsel engaged in **excessive conferencing**. *Id.* (citing Schratz Opp'n Decl. ¶¶ 181, 182) (requesting reduction in fees of $200,532 pre-multiplier, to account for excessive conferencing by Maul and Bendat).

- Class Counsel spent too much time on their **fee petition**. *Id.* at 14–15 (citing Schratz Opp'n Decl. ¶¶ 202–203) (asserting that fees for work on the fee petition totaled $699,635.80 but should be capped at $150,000).

- Time spent speaking to the **media and engaging in other public relations work** is not compensable. *Id.* at 15 (citing Schratz Opp'n Decl. ¶ 198 (asserting that 54.41 hours of time spent on these activities, equating to $50,108.25 pre-multiplier, should be deducted from the lodestar amount).

- Plaintiffs seek fees for **duplicative work associated with "extra bodies" attending depositions** who did not add any substantive value by their attendance. *Id.* at 15–16 (citing Schratz Opp'n Decl. ¶¶ 193–195) (requesting a reduction of $75,000, pre-multiplier, of the requested lodestar based on the attendance of unnecessary attorneys or paralegals at depositions).

- "Class Counsel's respective hourly rates should be reduced by at least 50 percent for **travel time**." *Id.* at 16.  UBH does not cite to its expert's report in support of this opinion; nor does it state how many hours of time should be subjected to the 50% reduction for each timekeeper or a total dollar amount of the requested reduction.

In their Reply, Plaintiffs reject UBH's argument that they have not adequately substantiated Class Counsel's time because they did not produce original billing records.  Reply at 11.  Plaintiffs assert that the exhibits they provided listing the time for which they seek fees are not mere "summary charts," as UBH contends, but rather contains contemporaneous time records taken directly from Zuckerman Spaeder's timekeeping system, with minimal redactions and omitting only certain discrete time entries described in their declarations.  *Id.*  They argue that the time entries in the exhibits provide sufficient detail to support their fee request and that Schratz's criticism that the reasonableness of the time cannot be evaluated due to vagueness and block billing is incorrect.  *Id.*

Plaintiffs argue further that Schratz's analysis suffers from "pervasive flaws" and that he

20

United States District Court
Northern District of California

double-counts many of his proposed reductions.[4]  *Id.*  According to Plaintiffs, Schratz "does not seem to have actually *read* any, or at least the vast bulk, of the time entries he pasted into the exhibits to his declaration, and thus took entries completely out of context, and vastly overstates the extent of the supposed flaws even under his own improper notion of what constitutes 'block' billing or 'vague' entries."  *Id.* (emphasis in original) (citing Reynolds Reply Decl. §§ II.E–F). Nonetheless, Plaintiffs have addressed UBH's argument by providing additional details about the time entries.  *Id.* at 11–12 (citing Reynolds Reply Decl. ¶¶ 36–44 & Ex. D (addressing "block" billing critique); *id.* ¶¶ 48; 50–62 & Ex. E (addressing entries labeled as "vague"); *id.* ¶¶ 49–50 & Ex. F (addressing and providing additional information as to redactions)).  They have also supplied supplemental declarations by their experts opining that counsel's time records were sufficiently detailed, not vague, and in line with what clients expect.  *Id.* (citing Pearl Reply Decl. ¶¶ 56–63; Harriman Reply Decl. ¶¶ 7; 11).

Plaintiffs also reject Schratz's specific critiques relating to clerical work, conferencing, time spent on the fee petition, media relations, duplicative work in connection with deposition staffing and travel time.  Reply at 12–13; *see also* Reynolds Reply Decl.; Pearl Reply Decl.; Harriman Reply Decl.  Plaintiffs withdraw certain time, however, revising their total requested lodestar downward to $18,724,313.09, pre-multiplier.  Reynolds Reply Decl. ¶¶ 45, 49, 69 (describing withdrawn time) & Ex. A at p. 3 (reflecting revised lodestar amounts).

### c.  Block-Billing, Vague, and Redacted Entries

While the party seeking attorneys' fees bears the "the burden of documenting the appropriate hours expended in the litigation," *Gates*, 987 F.2d at 1397, attorneys "need only 'keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed.' "  *United Steelworkers of*

---

[4] Plaintiffs point to the following examples of double-counting by Schratz with respect to the reductions he recommends: 1) "138 of the entries Mr. Schratz includes when calculating a 15% reduction for 'block billing' are entries he previously recommended disallowing in their entirety as 'clerical' work performed by paralegals and Litigation Support professionals[;]" 2) "699 of the entries Mr. Schratz reduces by 10% because they reflect research done by partners are entries Mr. Schratz previously included when calculating his 15% reduction for block billing[;]" and 3) "23 of the entries Mr. Schratz disallows in their entirety because they mention media are entries Mr. Schratz previously included in his 15% reduction for block billing." Reynolds Reply Decl. ¶ 10.

*Am. v. Ret. Income Plan for Hourly-Rated Emps. of ASARCO, Inc.*, 512 F.3d 555, 565 (9th Cir.

2008) (quoting *Hensley*, 461 U.S. at 441 (Burger, C.J., concurring)).  Block-billing is discouraged

as it makes it more difficult for the court to determine whether the time spent on particular tasks

was reasonable.  *Elder v. National Conference of Bar Examiners,* 2011 WL 4079623, at *2 n.2

(N.D. Cal., Sept. 12, 2011).

The Court has reviewed the time charts provided by Class Counsel and finds that they

provide sufficient detail for the Court to determine whether the time requested is reasonable,

especially in light of the added information provided by Plaintiffs in their Reply.  Therefore, the

Court rejects UBH's arguments that reductions in Plaintiffs' lodestar should be made due to

vagueness, redactions, and block-billing.  Further, with respect to block-billing, the Court finds

that Schratz's opinion is unreliable as he used a flawed methodology based on simply searching

for semi-colons in time entries to determine if a time-entry was block billed.  Schratz Opp'n Decl.

¶ 150.  A review of the purportedly block-billed time, however, reflects that many of the entries he

has listed describe multiple steps of the same task.  In other words, had Plaintiffs provided *less*

detailed descriptions that only described the broader task, he would not have included them in his

list of block-billed time.

### d.  Clerical Work

UBH argues that the Court should disallow 43.8 hours billed by attorneys, totaling

$16,924.50 in fees, and 538.2 hours billed by paralegals and litigation-support, totaling $446,569.05,

for time spent performing clerical tasks.  Opp'n at 13 (citing Schratz Opp'n Decl.  ¶¶ 123–125, 172,

173).  In response, Plaintiffs withdrew their request for fees with respect to five time entries by

attorney Scott A. Hanna, for a total of 18.7 hours.  Reynolds Reply Decl. ¶ 69.  Plaintiffs contend,

however, that the remaining time identified by Schratz was not clerical work and is therefore

compensable.  The Court agrees.

In *Missouri v. Jenkins*, the Supreme Court observed that "purely clerical or secretarial

tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them."  491

U.S. at 288 n.10 (1989).  Instead, such clerical tasks should be "subsumed in firm

overhead."  *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("filing, transcript, and

United States District Court
Northern District of California

document organization time was clerical in nature and should have been subsumed in firm

overhead rather than billed at paralegal rates"); *Doran v. Corte Madera Inn Best W.*, 360 F. Supp.

2d 1057, 1062 (N.D. Cal. 2005) (clerical tasks "should be included in attorney billing rates as

overhead to run the office, not recoverable in a motion for attorney fees"); *Hernandez v. Spring

Charter Inc.*, No. 19-CV-01479-TSH, 2020 WL 1171121, at *7 (N.D. Cal. Mar. 11, 2020)

("preparing proofs of service, processing records, posting letters for mail, photocopying, three-

hole punching, internal filing, calendaring, and preparing the summons and complaint for filing

have been found to be purely clerical tasks").  On the other hand, "functions [that] would have

[been] performed by lawyers or at least reviewed by them if they had not been performed by

experienced paralegals" are not purely clerical and may, in some circumstances, be billed.  *Hum.

Rts. Def. Ctr. v. Cty. of Napa*, No. 20-CV-01296-JCS, 2021 WL 1176640, at *15 (N.D. Cal. Mar.

28, 2021).

The Court has reviewed the time entries that Schratz has categorized as "clerical" and the

specific responses by Plaintiffs.  *See* Reynolds Reply Decl. ¶¶ 20–34 & Exs. C, D.  In the context

of this highly complex case, the Court does not find the tasks described in these time entries to be

"purely clerical."  Therefore, the Court rejects UBH's argument that Plaintiffs' lodestar should be

reduced on this basis.

### e.  Conferencing

UBH contends attorneys Bendat and Maul spent excessive amount of time conferencing

with co-counsel and asks the Court to reduce their lodestars on that basis; as to Bendat, UBH asks

the Court to disallow 20% of the time billed for conferencing and for Maul it requests that 9% of

his conferencing time be disallowed.  Opp'n at 13–14; Schratz Opp'n Decl. ¶¶ 181, 182 & Exs.

31, 32.  This request is based on Schratz's calculation that Dr. Bendat spent 45.9% of his total

billed time conferencing, and Mr. Maul spent 21.4% of his total billed time on conferencing.

Schratz Opp'n Decl. ¶¶ 181, 182.  Schratz opines that spending more than 4% of an attorneys'

time "conferencing" is excessive but "in an exercise of discretion" recommends reductions that

allow for a somewhat higher percentage of time for conferencing.  *Id.*  The Court finds Schratz's

opinions unpersuasive and declines his invitation to reduce Plaintiffs' lodestar on this basis.

United States District Court
Northern District of California

Courts have discretion to make reductions where conferencing among attorneys, such as internal meetings or conversations, is excessive. *See Cruz v. Starbucks Corp.*, No. C-10-01868 JCS, 2013 WL 2447862, at *8 (N.D. Cal. June 5, 2013) (reducing hours where two attorneys spent 47% and 21% of billed hours in meetings and conferences with co-counsel); *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1281 (N.D. Cal. 2014) (reductions when attorney spent 24% of hours conferencing); *ACLU of Arizona v. United States Dep't of Homeland Sec.*, No. CV-17-01083-PHX-DJH, 2020 WL 1494328, at *6 (D. Ariz. Mar. 27, 2020) (reducing time when 23% of counsel's time was spent conferencing); *cf. Nadarajah*, 569 F.3d at 925 (declining to reduce hours reasonably spent on conferencing). Here, however, Schratz has vastly overcounted the time Bendat and Maul spent conferencing by including numerous time entries describing tasks that do not involve communication between counsel and/or are not properly considered conferencing. *See* Reynolds Reply Decl. ¶¶ 76–84 & Exs. J, K. Moreover, the importance of coordinating strategy and optimizing the specific areas of expertise of the attorneys who served as Class Counsel in this difficult and complicated case justifies the time sought by Plaintiffs for conferencing among Class Counsel. Therefore, the Court declines UBH's invitation to reduce Plaintiffs' lodestar on this basis.

### f.   Preparing the Fee Petition

UBH asks the Court to cap the time awarded for work on the fee petition at $150,000, arguing that the requested amount of time spent on the petition is excessive. Opp'n at 14–15 (citing Schratz Opp'n Decl. ¶ 199).[5] Schratz based this recommendation on his opinion that the fee motion is "rather basic" and that he has "never seen such an extraordinary amount of time" spent on a fee motion. Schratz Decl. ¶ 199.

Courts generally allow fees for preparation of a fee petition so long as those hours are reasonable and "'bear a rational relation to the number of hours spent litigating the merits of the case.'" *Vallejo v. Astrue*, No. 2:09-CV-03088 KJN, 2011 WL 4383636, at *4 (E.D. Cal. Sept. 20,

---

[5] UBH also argued in its Opposition that any multiplier awarded by the Court should not apply to fees for time spent on the fee petition. Because Plaintiffs stipulated in their Reply that they no longer seek a multiplier on hours spent on the fee petition the Court does not address this argument. *See* Reply at 15.

1   2011) (quoting *Spegon v. Catholic Bishop*, 175 F.3d 544, 553–54 (7th Cir.1999)).

2       Class Counsel expended 1,279 hours on preparing this fee petition, constituting 4.1% of

3   their total requested hours.  Reynolds Reply Decl. ¶ 106.  The Court has reviewed the time billed

4   for work on the fee petition and finds it to be reasonable.  *See id*. ¶¶106, 109–112 (describing the

5   method Plaintiffs used to prepare the fee petition).  Schratz's opinion that the fee petition is

6   "basic" is groundless.  To the contrary, the fee petition required Plaintiffs to address fees and

7   litigation costs incurred by three different law firms over many years in a case involving extensive

8   motion practice and a multi-week bench trial.  The fee petition was far from "basic."  Therefore,

9   the Court declines to reduce Class Counsel's hours for this reason.

10            g.   Media Relations

11       UBH asks the Court to disallow fees for 54.41 hours "spent by Class Counsel speaking to

12   the media and related publicity work."  Opp'n at 15.  Plaintiffs contend that this media outreach

13   was in the interest of finding named plaintiffs, keeping class members informed, working on

14   behalf of the class, and advising attorneys and named plaintiffs in navigating requests from the

15   media.  Reynolds Reply Decl. ¶ 102.

16       Generally, media contact is conducted at an attorney's own expense.  *Gates v. Gomez*, 60

17   F.3d 525, 535 (9th Cir.1995); *McKenzie Flyfishers v. McIntosh*, 158 F. Supp. 3d 1085, 1096 (D.

18   Or. 2016) ("[A]n award of attorneys' fees should not include amounts for contact with

19   the media.").  Media contact is compensable, however, where it is "directly and intimately related

20   to the successful representation of a client."  *Davis v. City & Cty. of San Francisco*, 976 F.2d

21   1536, 1545 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir.

22   1993); *see also*, *Pollar v. Judson Steel Corp.*, No. C-82-6833-MHP, 1985 WL 312, at *2 (N.D.

23   Cal. May 21, 1985) ("[P]laintiffs may properly recover for 5.6 hours that their attorneys spent

24   preparing press releases and press conferences in order to publicize this litigation to potential class

25   members.").  Such work must "contribute, directly and substantially, to the attainment of []

26   litigation goals."  *Id*.; *see also*, *Pollinator Stewardship Council v. U.S. Env't Prot. Agency*, No. 13-

27   72346, 2017 WL 3096105, at *11 (9th Cir. June 27, 2017) (affirming *Davis* and clarifying that

28   "[a]ttorney work in other arenas, where narrowly focused on fostering the litigation goals of

United States District Court
Northern District of California

1    clients, is compensable.")

2          The Court finds that most of the time challenged by UBH for "media contacts" is

3    compensable.  As a preliminary matter, it appears that Schratz has significantly overcounted the

4    time Class Counsel billed for this category of work.  *See* Reynolds Reply Decl. ¶¶ 99–101 & Ex.

5    M; *see also* Schratz Opp'n Decl., Ex. 29 (listing time entries challenged on this basis).  Further,

6    the majority of the time identified by Schratz contributed directly and substantially to the effective

7    representation of the Class.  This time included time spent publicizing the case in its early stages

8    to locate additional class members (which did, in fact, result in the location of named Plaintiffs

9    Linda Tillitt and Michael Driscoll); time spent on press releases and interviews of Class Counsel

10   that communicated key developments in the case to the public and the class; meetings and

11   communications related to those interviews and press releases; time spent drafting an internal

12   memorandum "outlining any legal ethics issues that could constrain the statements counsel could

13   make while the trial was ongoing;" time spent advising class members regarding their own contact

14   with the media; and time spent responding to inquiries from class members, the media and

15   behavioral health advocates regarding the Court's decision following the bench trial.  *See*

16   Reynolds Reply Decl. ¶¶ 102–103.

17         In reaching the conclusion that the time described above contributed directly and

18   substantially to Class Counsel's representation of the class, the Court considers the large size of

19   the class (in the tens of thousands), the many years that lead up to the entry of judgment and the

20   profound implications for class members of this case, not only as to past denials of benefits but

21   also as to class members' ability to obtain mental health and substance use disorder coverage

22   under their insurance policies going forward.  Given the expense that would have been required to

23   send regular updates to the class and the importance of ensuring that the class was not misled by

24   inaccurate media coverage, the Court concludes that this time is compensable.  The Court finds,

25   however, that Ms. Reynolds' time for briefing staff members of the United States Senate Finance

26   Committee about this case is not compensable.  In particular, the briefing occurred more than a

27   year after the Court issued its Findings of Fact and Conclusions of law and it is unclear how this

28   work *directly* related to Class Counsel's effective representation of the class.  Therefore, the Court

United States District Court
Northern District of California

excludes $1,237.50 from Plaintiffs' lodestar for this time.  *See* Reynolds Reply Decl., Ex. M at 7 (reflecting 10/20/2020 time entry for 1.5 hours of Ms. Reynolds' time at a rate of $825/hour).

### h.   Duplicative work

UBH contends that Plaintiffs' lodestar should be reduced for "unnecessarily duplicative attendance and work related to depositions."  Opp'n at 15.  UBH points to Schratz's objection to time entries for associates and paralegals who attended nine depositions but did not ask questions. *See* Schratz Decl. ¶¶ 193–195.  According to Schratz, the participation of these individuals did not add any extra value.  *Id. ¶* 194.  He states that this time is "difficult to quantify" and therefore recommends that the Court reduce Plaintiffs' lodestar by $75,000. *Id. ¶* 195.

"The court may reduce the number of hours awarded because the lawyer performed unnecessarily duplicative work."  *Moreno*, 534 F.3d at 1112.  However, "participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort."  *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989) (finding participation by more than one attorney a "reasonable necessity, given the complexity of legal issues and the breadth of factual evidence involved").

Plaintiffs have provided adequate justification for the presence of associates and/or paralegals at the depositions listed by Schratz as involving duplicative work.  Five of the witnesses identified by Schratz were expert witnesses; two were individuals designated person most knowledgeable, and one was an individual who oversaw the creation of UBH's Guidelines.  All of these individuals testified at trial on a broad range of critical topics, and Plaintiffs have offered evidence that counsel prepared for these depositions as a team.  Reynolds Reply Decl. ¶ 96(a)–(b). For this reason, the attorneys and/or paralegals who were involved in this preparation were present at the depositions to consult with the lead attorney and prepare and find exhibits as needed.  *Id.* As to the deposition of Mr. Haffner, a second attorney attended the deposition as part of her preparation for taking depositions in the case herself.  *Id.*  The Court finds the staffing of these depositions to be reasonable and therefore declines to reduce Plaintiffs' lodestar on this basis.

### i.   Travel time

Lastly, UBH requests that the Court reduce counsel's hourly rates for travel time by 50%

to "create a reasonable rate." Opp'n at 16. Some courts in this district have imposed such cuts to reduce unreasonable hours for travel or to penalize block-billed entries including travel. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2020 WL 2086368, at *8 (N.D. Cal. Apr. 30, 2020) (reducing hours by over 50% where Plaintiffs billed 15 hours for a round-trip flight from Orange County to San Francisco); *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-HSG, 2020 WL 5798152, at *10 (N.D. Cal. Sept. 29, 2020) (reducing hours for block-billed time entries including travel by 50%). UBH has not identified any specific travel time that it finds unreasonable, however. The Court has reviewed the time billed for travel and concludes that it is reasonable. Therefore, it rejects UBH's request to reduce hourly rates charged for travel time by 50%.

### 4. Conclusion

For the reasons stated above, the Court finds that Plaintiffs' lodestar is $18,723,075.59; that is, the lodestar requested by Plaintiffs of $18,724,313.09 less the reduction of $1,237.50 discussed above.

### C. Litigation Expenses and Costs

#### 1. Contentions of the Parties

In the Motion, Plaintiffs sought $1,588,123.19 in litigation costs. Mot. at 19 (citing the Reynolds Mot. Decl. ¶¶ 188–205 & Ex. 6). This figure reflects $1,585,439.60 in Zuckerman Spaeder's litigation costs, Reynolds Mot. Decl., Ex. 6 at p. 90 (Zuckerman Spaeder costs), and $2,683.59 in litigation costs incurred by The Maul Firm, Reynolds Mot. Decl. ¶ 205 (The Maul Firm costs).[6] In a later-filed Notice of Correction to Plaintiffs' Fee Petition, Plaintiffs informed the Court that they had inadvertently double-counted the cost of contract attorneys, including those costs in both Zuckerman Spaeder's lodestar *and* as a litigation expense; Plaintiffs therefore corrected the amount of requested costs by deducting out the amount Zuckerman Spaeder paid contract attorneys ($342,753.76), resulting in requested costs of $1,242,685.84. Dkt. 512. In

---

[6]The expenses of the Maul Firm are described in detail in Exhibit A to the Maul Motion Declaration. UBH did not object to these costs and the Court finds them to be reasonable and allowable. Therefore, these costs are awarded in full.

United States District Court
Northern District of California

support of their Reply, Plaintiffs provided a revised exhibit listing their requested costs. Reynolds Reply Decl., Rev. Ex. 6. Plaintiffs withdrew certain costs, *see* Reynolds Reply Decl. ¶¶ 134, 136–138, but again inadvertently included the cost of contract attorneys in their list of costs. *See* Reynolds Reply Decl., Rev. Ex. 6 at 4–17. With the cost of contract attorneys deducted from their revised costs, Plaintiffs now seek $1,242,399.95 in litigation expenses.

Taking into account the expenses that were withdrawn in connection with their Reply brief, Plaintiffs now seek the following costs: 1) $8,855.00 for court fees; 2) $1,673.07 for conference calls; 3) $111,943.75 for computerized research; 4) $15,194.57 for service of process/investigation; 5) $51,391.69 for class administration; 6) $2,074.00 for computer rental equipment; 7) $232,381.01 for electronic discovery; 8) $194,049.89 for transcripts; 9) $75,537.23 for trial presentation technology; 10) $92,246.55 for trial summary exhibits; 11) $35,976.72 for PDF hyperlinking services; 12) $357,287.25 for meals and travel expenses; 13) $63,575.28 for photocopying, delivery, and related expenses; 14) $213.94 for webhosting expenses. Reynolds Mot. Decl. ¶¶ 189–203; Reynolds Reply Decl. ¶¶ 136–38.

Plaintiffs argue that under ERISA, they are entitled to any "'costs an attorney in the relevant community would pass along to a client separately from the attorney's hourly rate,' *Oldoerp*, 2014 WL 2621202, at *8, whether 'taxable' under 28 U.S.C. § 1920 or not." Mot. at 19. According to Plaintiffs, it is the prevailing practice for the cost they seek to be billed separately and these costs were all necessary and reasonably incurred. *See* Reynolds Mot. Decl. ¶ 188 ("All expenditures . . . represent normal litigation costs and are the types of costs Zuckerman Spaeder typically passes on to its hourly-basis clients.").

In its Opposition, UBH requested that the Court disallow all costs, aside from the amounts requested for webhosting and class administration, on the basis that Plaintiffs did not provide the underlying invoices to substantiate their claimed costs. Opp'n at 19–20 (UBH stipulated that it does not contest webhosting and class administration costs. *Id.* at 20, n.14.) It also challenged Plaintiffs' costs in the following specific categories: Computer Rental Equipment, Court Costs, Legal Research, PDF Hyperlinking, Photocopy and Delivery services, Service of Process and Investigation Expenses, Travel and Meals, and Trial Summary Exhibits, as discussed further

below.  *Id.* at 21–25.

In response, Plaintiffs provided invoices for their expenses with their Reply papers.  *See* Reynolds Reply Decl., Ex. P (invoices).  Plaintiffs also withdrew certain expenses and updated the exhibit listing their expenses.  Reynolds Reply Decl., Rev. Ex. 6.  As to the remaining expenses, Plaintiffs rejected UBH's challenges, arguing that they were reasonable and should be awarded in full.  Reply at 15.

UBH submitted a Surreply in response to the newly provided documentation, along with a supplemental declaration by Schratz, arguing that the Court should deny or substantially reduce Plaintiffs' claimed costs.  Surreply at 1.

### 2.  Legal Standards

Under ERISA, 29 U.S.C. § 1132(g), attorneys' fees include non-taxable litigation expenses if "the prevailing practice in a given community [is] for lawyers to bill those costs separately from their hourly rates."  *Trs. of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (quotations omitted).  These expenses are distinct from the standard, taxable costs governed by Federal Rule of Civil Procedure 54(d) and enumerated in 28 U.S.C. §1920, and "do not include costs that, like expert fees, have by tradition and statute been treated as a category of expenses distinct from attorney's fees."  *Id*.

### 3.  Discussion

As a preliminary matter, the Court finds that Plaintiffs have adequately substantiated their costs by providing detailed charts listing their costs, as well as supporting invoices.  As Plaintiffs were unable to find supporting documentation for certain charges, they withdrew those requests in their Reply papers.  In particular, Plaintiffs withdrew their request for Certificates of Good Standing fees in the District of Maryland and the District of Columbia Court of Appeals ($19 in total) and for a legal research charge ($50) because they were unable to find supporting invoices.  Reynolds Reply Decl. ¶ 136.  Although Schratz was unable to account for $28,207.83 in costs, *see* Schratz Surreply Decl. ¶ 10, he did not identify the specific costs he was unable to account for except for the handful of examples he described in paragraphs 11 and 12 of his surreply declaration.  Yet the Court was able to find these cost items in Revised Exhibit 6 even though

Schratz was not.  *See* Reynolds Reply Decl., Rev. Ex. 6 at p. 78 (reflecting expenses described in Schratz Surreply Decl. ¶ 11) and 84–85 (reflecting expenses described in Schratz Surreply Decl. ¶ 12).  The Court further notes that to the extent that the invoices supplied in Exhibit P reflect costs that do not appear in Revised Exhibit 6 or charges that exceed the amounts reflected in that exhibit, this is consistent with the fact that Plaintiffs are not seeking some of their costs, such as the cost of alcohol, and does not cast doubt on the reliability of Plaintiffs' documentation.  The Court therefore does not credit Schratz's opinion that Plaintiffs' costs are not adequately substantiated.

As to the categories of costs that UBH challenged only on the grounds of insufficient substantiation or did not challenge—conference calls, electronic discovery expenses, transcript fees, class administration, web hosting and trial presentation technology—the Court has reviewed these costs and finds them to be reasonable and the sort of costs that are normally billed separately to clients.  Therefore, the Court awards those costs in full.  Below, the Court addresses the remaining disputed costs.

### a.   Computer Rental Equipment

Plaintiffs request $2,074 for computers rented "to aid contract attorneys" in performing voluminous document review during discovery.  Reynolds Mot. Decl. ¶ 195.  UBH argues that these computers constitute office equipment, which is overhead and therefore does not constitute a taxable litigation expense.  Opp'n at 21 (citing *Asarco LLC v. Atl. Richfield Co.*, 2018 WL 11225131, *5 (D. Mont. Oct. 5, 2018); *People Who Care v. Rockford Bd. of Educ.*, 1990 WL 25883, *7 (N.D. Ill. Feb. 23, 1990)).  *Asarco* is not on point, however, because in that case the court found that costs were available only under 28 U.S.C. § 1920 and therefore, that office equipment rental expenses were not available; it did not address whether such costs can be awarded as attorneys' fees.  In *People Who Care v. Rockford Bd. of Educ.*, the court excluded a $357.75 charge for computer rental on the basis that the charge was "unreasonable" but did not hold that such charges were "not a reasonable out-of-pocket expenditure normally charged to a client"—even though it did exclude a separate cost item, for a newspaper subscription, on that basis.  1990 WL 25883, *7.

1    Plaintiffs have supplied evidence that these computers were rented for contract attorneys to

2    review voluminous discovery in this case and that they otherwise would not have purchased these

3    computers.  *See* Reynolds Mot. Decl. ¶ 195; Reynolds Reply Decl., ¶ 139.  The Court therefore

4    concludes that these costs are allowable because they were "incurred specifically for this case and

5    would not otherwise have been a part of counsel's overhead expense."  *Ackerman v. W. Elec. Co.*,

6    113 F.R.D. 143, 145 (N.D. Cal. 1986).  The Court further finds that the amount requested for

7    computer rental expenses is reasonable and therefore declines to disallow these costs.

8              b.  Court Costs

9    Plaintiffs seek $8,855 in court fees, including $800 for filing fees, $7,360 for pro hac vice

10   admission fees, $690 for Ninth Circuit admission fees, and $5 for "expenses related to obtaining

11   certificates of good standing in support of those admissions."  Reynolds Mot. Decl. ¶ 190 (seeking

12   $8,874 in court costs); Reynolds Reply Decl. ¶ 136 (withdrawing four cost entries, totaling $19,

13   for certificate of good standing fees).  UBH concedes that the $800 in filing fees is allowable but

14   argues that *pro hac vice* fees and related fees are not recoverable in the Ninth Circuit.  *Id.* (citing

15   *Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013)).  In *Kalitta*

16   *Air*, the court held that "§ 1920(1) does not allow for an award of pro hac vice fees as taxable

17   costs."  741 F.3d at 95.  Likewise, the two district court cases UBH cites in support of its position

18   simply hold that pro hac vice fees are not a taxable cost under 28 U.S.C. § 1920.  *See* Opp'n at 21

19   (citing *Reg'l Local Union No. 846 v. QPL, Inc.*, 2013 WL 3972431, at *3 (D. Or. July 31, 2013)

20   and *N.L. v. Credit One Bank, N.A.*, 2019 WL 1428122, at *5 (E.D. Cal. Mar. 29, 2019)).

21            Here, however, Plaintiffs do not seek these expenses under Section 1920 but instead as a

22   component of attorneys' fees.  The pro hac vice fees and expenses related to obtaining certificates

23   in good standing requested by Plaintiffs were a reasonable and necessary part of the litigation and

24   are of the type of expenses that are customarily billed to a fee-paying client.  *See Etter v. Allstate*

25   *Ins. Co.*, No. C 17-00184 WHA, 2018 WL 5791883, at *3 (N.D. Cal. Nov. 4, 2018) (awarding pro

26   hac vice fees on the basis that they were "were a reasonable and necessary part of the litigation"

27   and were "the type [of expense] customarily billed to a fee-paying client"); *see also Atl. Recording*

28   *Corp. v. Andersen*, No. CV 05-933 AC, 2008 WL 2536834, at *18 (D. Or. June 24, 2008)

United States District Court
Northern District of California

(awarding pro hac vice fees as non-taxable costs); *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, No. C17-541RSM, 2018 WL 5013764, at *12 (W.D. Wash. Oct. 16, 2018), *aff'd sub nom. Johnson v. MGM Holdings, Inc*, 943 F.3d 1239 (9th Cir. 2019), and *aff'd sub nom. Johnson v. MGM Holdings, Inc*, 794 F. App'x 584 (9th Cir. 2019) (same).  The Court therefore rejects UBH's challenge to these costs, which are awarded in full.

### c.  Legal Research

Plaintiffs request $111,943.75 in "computerized research costs."  Reynolds Mot. Decl. ¶ 192 (seeking $111,993.75 for computerized research costs); Reynolds Reply Decl. ¶ 136 (withdrawing a $50 charge for computer research).  Plaintiffs have supplied the Court with invoices for their legal research on Westlaw, LexisNexis, and PACER reflecting the timekeeper who conducted the research and the date and time when the research was conducted.  *See* Reynolds Reply Decl. Ex. P.  UBH argues, however, that these costs should be reduced because Plaintiffs did not supply documentation showing their contracted rates with the legal research services.  Surreply at 2–3 (citing *Payne v. Bay Area Rapid Transit Dist.*, No. C 08–2098 WDB, 2009 WL 1626588, at. *9 (N.D. Cal., June 5, 2009)).  *Payne* is not on point.  There, the court excluded legal research costs because the plaintiff did not provide invoices or any other evidence showing the amount of time spent conducting online research.  2009 WL 1626588, at. *9.  In contrast, Plaintiffs here have provided invoices reflecting the amount of time spent on legal research.  UBH also has not cited any authority, and the Court has found none, that requires a party seeking an award of costs for online research to demonstrate that their contracted rate with legal research services such as Westlaw and LexisNexis was reasonable.  Rather, it is sufficient that Plaintiffs have shown that the overall cost of this research was reasonable in light of the time spent conducting online legal research.  The Court further finds that these expenses are the type of expenses that are typically billed to clients.  Therefore, the Court awards these costs in full.

### d.  PDF Hyperlinking

Class Counsel seeks $35,976.72 for production of hyperlinked versions of Plaintiff's post-trial brief, proposed findings of fact, and consolidated claims chart, which were requested by the

1   Court and prepared by a vendor, the Strut Group.  Reynolds Mot. Decl. ¶ 200.  UBH argues that

2   this fee is clerical and thus non-recoverable, and that the billed amount is unreasonable.  Surreply

3   at 3.  The Court disagrees.

4          Under Civil Local Rule 54-3(d)(5), "[t]he cost of preparing charts, diagrams, videotapes,

5   and other visual aids to be used as exhibits is allowable if such exhibits are reasonably necessary

6   to assist the jury or the Court in understanding the issues at the trial."  These hyperlinked

7   documents played a critical role in assisting the Court in understanding the issues at trial and the

8   Court therefore finds that these costs are allowable on that basis.  In the alternative, the Court

9   concludes these costs are recoverable as litigation expenses as they are the type of expenses that

10  are typically charged to clients.  *See Nat'l Fed'n of the Blind v. Target Corp.*, No. C 06-01802

11  MHP, 2009 WL 2390261, at *5 (N.D. Cal. Aug. 3, 2009).  The Court also finds that the amount of

12  these costs was reasonable and almost certainly less than they would have been if Class Counsel

13  had created the hyperlinked documents in-house instead of hiring a third-party vendor to conduct

14  this work.  Therefore, the Court awards these costs in full.

15                 e.  Photocopying, Delivery, and Related Expenses

16         Plaintiffs request $63,575.28 for expenses relating to photocopying and delivering of

17  documents and exhibits.  Reynolds Mot. Decl. ¶ 202.  UBH argues that these costs should be

18  reduced due to "excessive per page photo copying charges of up to $.20 per page for in house

19  duplication, when outside vendors could perform the same service for less than half the cost."

20  Surreply at 3 (citing Schratz Surreply Decl. ¶ 19).  "Numerous Courts have endorsed rates of at

21  least twelve cents (and as high as twenty cents) a copy as reasonable."  *Fresenius Med. Care*

22  *Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2008 WL 2020533, at *6 (N.D. Cal. May

23  8, 2008) (citing cases).  Further, copying costs are recoverable as a non-taxable expense as they

24  are routinely billed separately.  *See Oldoerp*, 2014 WL 2621202, at *8 (compiling cases where

25  copying costs are considered a regularly billed expense).  The Court finds these costs to be

26  reasonable and awards them in full.

27                 f.  Process Service/Investigations

28         Plaintiffs seek $15,194.57 in the category described as "Process Service and Point

United States District Court
Northern District of California

Investigation."  Reynolds Mot. Decl. ¶ 193.  These charges include $10,975 described as

"Investigator Fee" and listing the vendor as "On Point Investigations."  *Id.*, Ex. 6 at 57 (reflecting

two cost entries described as "investigators fee" totaling $10,975); *see also* Reynolds Reply Decl.,

Rev. Ex. 6 at 56 (same).  According to Class Counsel, "Plaintiffs retained On Point Investigations

to identify sources of background information to form litigation and discovery strategy."

Reynolds Reply Decl. ¶ 146.  UBH argues, however, that this description of the work performed

by the investigator is "too vague to permit either UBH or the Court to assess whether this charge

was reasonable or necessary."  Surreply at 3.  Although private investigators costs are "routinely

charged to fee-paying clients," *Davis v. Sundance Apartments*, No. CIV S071922FCDGGH, 2008

WL 3166479, at *6 (E.D. Cal. Aug. 5, 2008), the description offered by Plaintiffs does not provide

sufficient detail to allow the Court to evaluate the reasonableness of the two investigator charges.

Therefore, the Court reduces Plaintiffs' requested costs by $10,975.  The Court finds the

remaining costs in this category to be reasonable and awards them in full on the basis that they are

the type of cost that is typically charged to clients.

### g.   Travel and Meal Expenses

Plaintiffs request $357,287.25 for meals and travel expenses.  Reynolds Mot. Decl. ¶ 201

(requesting $357,504.14 for meals and travel); Reynolds Reply Decl. ¶ 137 (withdrawing $135.75

in meals and travel costs), ¶ 138 (withdrawing $81.14 in meals and travel costs).  UBH argued in

its Opposition that these charges were "excessive and unreasonable" because Plaintiffs failed to

justify staying at a luxury hotel during trial, taking expensive flights, charging for expensive meals

and alcohol, charging for personal items, seeking reimbursement for meals and travel of two

individuals (M. Haselberger and Martin Himeles) who were "not otherwise identified in

[Plaintiffs'] submissions[,]" and seeking reimbursement for travel expenses for the named

Plaintiffs to fly to San Francisco for the trial.  Opp'n at 23–24.  UBH argued further that Plaintiffs

had not provided sufficient documentation to determine whether many of the requested costs were

reasonable.  *Id.*  In its surreply, UBH argues that Plaintiffs' invoices reflect unnecessary and

unreasonable charges.  Surreply at 3–4.

Travel and meal expenses are billed by attorneys in the marketplace and commonly

awarded by courts in this district as non-taxable costs.  *See Oldoerp*, 2014 WL 2621202, at *7.

These costs must be reasonable, however.  *Id.* at * 8.  The Court has reviewed Plaintiffs' travel and

meal costs and, with limited exceptions, finds them to be reasonable and the type of costs that are

normally billed separately to clients.  The Court rejects UBH's argument that Plaintiffs incurred

unreasonable costs by choosing to stay in a luxury hotel during trial as Ms. Reynolds has supplied

a declaration explaining that the choice was made due to the need to stay in a hotel close to the

courthouse and to book at a hotel that could accommodate Plaintiffs' trial team.  Reynolds Reply

Decl. ¶ 148(a); *Long v. Nationwide Legal File & Serve, Inc.*, No. 12-CV-03578-LHK, 2014 WL

3809401, at *13 (N.D. Cal. July 23, 2014) (finding proximity to deposition site a valid explanation

for staying at a luxury hotel).  Ms. Reynolds also explains in her declaration that while some of the

meal invoices show that alcohol was consumed, Plaintiffs did not include those expenses in their

claimed costs.  Reynolds Reply Decl. ¶ 148(d).

  The Court also rejects UBH's argument that the costs associated with the named Plaintiffs'

travel to San Francisco to attend the trial ($12,666.19) should not be allowed.  Whether or not

these costs can be awarded on the basis that the named Plaintiffs were expected to testify when

their travel was booked, the Court finds that the cost of the named Plaintiffs' attendance at trial is

an allowable non-taxable cost.

  The Court concludes that some reduction is necessary, however, for a handful of flights

identified by Schratz where Plaintiffs have not justified the purchase of first and business class

fares.  *See* Schratz Surreply Decl. ¶ 15; *Hellenberg v. Ford Motor Co.*, No. 18CV2202 JM (KSC),

2020 WL 1820126, at *7 (S.D. Cal. Apr. 10, 2020) (disallowing expenses for first-class airfare

when not expressly justified by Plaintiffs).  The total charge for these flights is $16,893.41.[7]  To

take into account the higher prices typically charged for first and business class flights, the Court

---

[7] As to one of the charges Schratz identified in paragraph 15 of his surreply declaration, for
$1,043.20, reflected in BATES NO. ZSWIT0002687, the description in the document produced by
Plaintiffs does not specify whether the airfare was first or business class and a notation on the
document indicates the invoice was missing.  Because it is Plaintiffs' burden to establish that their
costs are reasonable and Plaintiffs were unable to locate the underlying invoice, the Court assumes
that this airfare was not at the economy class rate even though the document reflecting this cost
does not expressly state as much.

1  reduces this amount by 20%, that is, by $3,378.68.

2      Therefore, the Court reduces the travel and meal expenses by $3,378.68 for the costs of the

3  first class flights and awards the remainder in full.

4              h.   Trial summary exhibits

5      Plaintiffs seeks $92,246.55 for the services of Josephine Duh and the Brattle Group to

6  "study and summarize relevant portions of the claim sample plans and denial letters, resulting in

7  Trial Exhibits 892–895, and for Ms. Duh to testify regarding those summaries."  Reynolds Mot.

8  Decl. ¶ 199.  Ms. Duh's testimony and the summary exhibits were offered at trial to comply with

9  the Court's requirement that all evidence presented at trial must be introduced through live

10  witnesses.  UBH argues that these costs are unrecoverable under *Agredano v. Mut. of Omaha*

11  *Companies*, 75 F.3d 541 (9th Cir. 1996). *See* Surreply at 4.  *Agredano* prohibits fee-shifting of

12  expert witness costs unless to the extent permitted by 28 U.S.C. §§ 1920 and 1821.  The Court

13  rejects UBH's argument, however, because Ms. Duh was retained to testify as a summary witness

14  and not an expert. *See* Trial Transcript at 672 (dkt. 375).  The Court further finds that these costs

15  are reasonable and the type of cost that is normally billed separately to clients and therefore are

16  compensable as non-taxable costs.  In addition, these costs are taxable under Civil Local Rule 54-

17  3(d)(5) because the testimony and summary exhibits were "reasonably necessary to assist . . . the

18  Court in understanding the issues at the trial."  Therefore, these costs are awarded in full.

19      **4.   Conclusion**

20      For the reasons stated above, the Court awards $1,228,046.27 for Zuckerman Spaeder's

21  costs and $2,683.59 for the Maul Firm's costs, that is, a total of $1,230,729.86 in costs.

22      **D.   Whether Award Should be Subject to a Multiplier**

23          **1.   Contentions of the Parties**

24      Plaintiffs ask the Court to award a 1.5 multiplier on their attorneys' fees, arguing that this

25  is one of the rare and exceptional cases where the lodestar amount is not sufficient to attract

26  competent counsel because lawyers capable of conducting complex nationwide class actions

27  generally take cases seeking money recovery and not injunctive and declaratory relief.  Mot. at

28  19–21 (citing *Perdue*, 559 U.S. at 555).  In such cases, Plaintiffs assert, lawyers tend "to settle

United States District Court
Northern District of California

cases early instead of taking them to trial, and to invest time rather than dollars for out-of-pocket expenses." *Id.* at 20 (citing Decl. of Brian T. Fitzpatrick in Supp. of Pls.' Pet. for Att'ys Fees ("Fitzpatrick Decl.") ¶¶ 14–21). The result, Plaintiffs contend, is "under-enforcement of federal statutory rights like the ERISA rights at issue in this case, contrary to Congress's intent to bolster private enforcement of ERISA by authorizing fee awards." *Id.* at 20 (citing 29 U.S.C. § 1001(b); S. Rep. No. 93–127 (1973), as reprinted in 1974 U.S.C.C.A.N. 4838, 4871). According to Plaintiffs, this is likely why no other lawyer or law firm previously brought claims like the ones asserted by Plaintiffs in this case. *Id.*

Plaintiffs contend that where, as here, there is no common fund "pot of gold" involved because only injunctive and declaratory relief are sought, a multiplier is appropriate. *Id.* at 23. They point to *St. Louis Police Ret. Sys. v. Severson*, No. 12-CV-5086 YGR, 2014 WL 3945655 (N.D. Cal. Aug. 11, 2014) as an "illustrative exception" to the general rule that the lodestar amount is sufficient to attract competent counsel. *Id.* In that case, which was a securities class action that resulted in a preliminary injunction, the court awarded a fee of 1.5 times the lodestar, "even though the case did not 'involve[] extraordinary risk, complexity, or effort on the part of Plaintiff's counsel, given that the most significant achievements in the case were completed at the preliminary injunction stage, with a protracted period of time before settlement that did not add much more to those achievements.'" *Id.* (citing 2014 WL 3945655 at *6).

Plaintiffs argue that a multiplier is also warranted because of "the delayed or incomplete reimbursement of out-of-pocket costs borne by Class Counsel." *Id.* at 24. They point out that while the delay in payment of attorneys' fees may be accounted for by using current rates or a prime rate enhancement, such adjustments do not apply to their out-of-pocket costs. *Id.* at 23–24. Those costs are extraordinary, they contend, not only because they spent nearly $2 million on litigation costs but also because their costs included nearly $370,000 in expert witness fees that counsel knew the Court would likely conclude could not be recovered as costs under 29 U.S.C. § 1132(g) in light of *Agredano*, 75 F.3d at 541. *Id.* at 24.

UBH argues that applying a multiplier in this case would be inconsistent with *Perdue* to the extent Plaintiffs rely on the novelty and complexity of the case to justify the use of a

38

multiplier, as the Court in *Perdue* held that these factors are subsumed in the lodestar, and thus that enhancing the fee award on this ground would "serve only to enrich attorneys." Opp'n at 18 (citing 559 U.S. at 558). UBH further contends Plaintiffs' request runs afoul of *Perdue* because they have not explained why they seek a multiplier of 1.5, which appears to be "purely arbitrary." *Id.* (citing 559 U.S. at 557). UBH argues further that Plaintiffs' argument in favor of a multiplier is inconsistent with *City of Burlington v. Dague*, 505 U.S. 557 (1992), in which the Court held that "'enhancement for contingency is not permitted under [federal] fee-shifting statutes.'" Opp'n at 18. According to UBH, Plaintiffs here are seeking just that, because "[t]he central premise of Class Counsel's proposed multiplier is that no attorney working on a contingent basis would have taken on the risks of bringing this case (and potentially recovering nothing or only non-monetary relief) without the inducement of a fee multiplier." *Id.*

In their Reply, Plaintiffs reiterate their position that a multiplier is appropriate because the lodestar is insufficient to "induce capable attorneys to bring ERISA class actions with high out-of-pocket fees and expenses and that seek equitable relief rather than a common fund with multipliers." Reply at 14. They reject UBH's reliance on *Dague*, arguing that UBH mischaracterizes their multiplier request as a contingency multiplier, which it is not. *Id.* at 14–15. Rather, Plaintiffs assert, "the multiplier sought is based on market incentives to pursue low-cost and common fund cases, not on contingent risk." *Id.* at 15.

### 2. Legal Standards

Under federal fee-shifting statutes, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue*, 559 U.S. at 552 (citing *Delaware Valley Citizens' Council for Clean Air*, 478 U.S. at 565). "[T]he lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Id.* (citation omitted). "The lodestar method was never intended to be conclusive in all circumstances[,]" however. *Id.* at 553. Rather, this presumption "may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 554. For example, an enhancement may be appropriate if "the method used in determining the hourly rate employed in

the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation." *Id.* at 554–555.  An enhancement may also be warranted where "the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted." *Id.* at 555.  On the other hand, "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation[.]" *Id.* at 553.  For example, "the novelty and complexity of a case generally" and the "quality of an attorney's performance generally" are factors that are reflected in the lodestar and therefore are not proper grounds for awarding an enhancement.  *Id.*

It is the fee applicant's burden to show that an enhancement is necessary to provide fair and reasonable compensation.  *Id.*  Where the court awards an enhancement, it must provide "an objective and reviewable basis" for the amount of the enhancement it awards.  *Id.* at 558.

### 3.  Discussion

As a preliminary matter, the Court rejects UBH's argument that Plaintiffs' request for a multiplier is barred under *Dague*.  *Dague* prohibits awarding a fee enhancement on the basis of contingency, *i.e.* to compensate counsel for the risks inherent in taking the litigation.  *See Dague*, 505 U.S. at 567 ("enhancement for contingency is not permitted"); *Perdue*, 559 U.S. at 558 (finding the lower court's reliance on the "contingency of the outcome" to award an enhancement as contrary to its holding in *Dague*).  Plaintiffs' request for a multiplier, however, is not based on the contingent nature of its representation but rather, upon: 1) the market factors that create a disincentive for experienced class counsel to take on a class action like this one that seeks injunctive and declaratory relief rather than money damages; and 2) the extraordinary costs of litigating this case over a long period of time.  Thus, *Dague* is not on point.

The remaining question for the Court is whether either of the justifications offered by Plaintiffs warrant the award of a multiplier.  With respect to the first argument, the Court has found no case that has justified the award of a multiplier on the basis of the type of relief requested in the case.  While the Court places some weight on the evidence Plaintiffs have presented suggesting that qualified class counsel have a greater incentive to take on common fund cases, where the percentage of the common fund approach to fee awards sometimes results in significant

1    multipliers, than cases seeking injunctive or declaratory relief, the Court is also mindful of the

2    Court's admonition in *Perdue* that enhancements are appropriate only in "rare" and "exceptional"

3    cases.  While the *Perdue* Court recognized that an enhancement may be appropriate when the

4    lodestar does not reflect an attorneys' "true market value[,]" 559 U.S. at 554–55, it did not suggest

5    that enhancements that exceed that amount would be appropriate.  Yet to incentivize qualified

6    attorneys to take on class actions that do not involve a potential common fund recovery, it might

7    well be necessary to offer fee awards comparable to those obtained in common fund cases.  *See*

8    Mot. at 22 (noting that "in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. M 07-1827 SI,

9    2013 WL 1365900, at *8 (N.D. Cal. Apr. 3, 2013), the court awarded a fee based on a percentage

10   of the monetary recovery that was equivalent to a lodestar multiplier of 2.4 to 2.6").  Therefore, it

11   is not clear to the Court that this rationale is in line with the guidance in *Perdue.*

12            On the other hand, Plaintiffs' second rationale – that litigation of this case required "an

13   extraordinary outlay of expenses and the litigation [was] exceptionally protracted" is one of the

14   justifications for an enhancement that the Court expressly approved in *Perdue*.  *See* 559 U.S. at

15   555.  Not including expert witness fees, Plaintiffs' expenses totaled close to 1.3 million dollars

16   and many of these costs were incurred by Plaintiffs more than five years ago.  Therefore, the Court

17   concludes that an enhancement on this ground is appropriate.  The amount Plaintiffs seek,

18   however, appears to be disproportionate to their costs.  In particular, the 1.5 multiplier gives rise to

19   an enhancement of more than $9 million, that is, more than seven times their underlying costs.

20   The Court is not persuaded that such a large enhancement is necessary to ensure a fair and

21   reasonable recovery.  Instead, the Court concludes that a 1.05 multiplier is adequate to take into

22   account the extended period of time Plaintiffs were required to shoulder the significant costs of

23   litigating this action.[8]

24

25   ────────────────

     [8] Plaintiffs point out that third party litigation funders may charge as much as 43% a year in
26   interest in support of their request for a 1.5 multiplier.  Mot. at 24–25 n. 18 (citing *Fast Trak Inv.
     Co., LLC v. Sax*, 962 F.3d 455, 464 (9th Cir. 2020).  As Plaintiffs did not use a third-party
27   litigation fund to finance the costs of this action, however, and it is not clear that the high
     interest rate charged in *Fast Trak* is the norm or an outlier, the Court concludes that such rates do
28   not provide an appropriate point of reference for determining the magnitude of the multiplier
     necessary to produce a fair and reasonable award in this case.

United States District Court
Northern District of California

### 4.  Conclusion

For the reasons stated above, the Court applies a 1.05 multiplier to the lodestar of $18,723,075.59, *see* Section II(B)(4), *supra*, adjusted to remove the fees incurred in connection with the fee petition (for which Plaintiffs do not seek a multiplier) in the amount of $623,149.80, *see* Reynolds Reply Decl. ¶¶ 6, 10(d) & Ex. A at p. 3, giving rise to an enhancement of $904,996.29.

## IV.    CONCLUSION

For the reasons stated above, the motion is GRANTED in part and DENIED in part.  The Court awards $19,628,071.88 in fees (that is, the lodestar amount of $18,723,075.59 plus an enhancement based on the 1.05 multiplier of $904,996.29) and $1,230,729.86 in costs.

**IT IS SO ORDERED.**

Dated:  January 5, 2022

_____
JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

42