Douglas R. Young (State Bar No. 073248)
dyoung@fbm.com
Christopher C. Wheeler (State Bar No. 224872)
cwheeler@fbm.com
Michelle Kao (State Bar No. 322758)
mkao@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WIT, et al.,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>　　　　　Defendant.<br><br>GARY ALEXANDER, et al.,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>　　　　　Defendant. | Case No. 14-cv-02346-JCS<br>Related Case No. 14-cv-05337-JCS<br><br>**SPECIAL MASTER'S ORDER REGARDING PLAINTIFFS' SEPTEMBER 24, 2021 LETTER** |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

39719\14537281.4

SPECIAL MASTER'S ORDER REGARDING PLAINTIFFS' SEPTEMBER 24, 2021 LETTER

## I. INTRODUCTION

On December 3, 2021, the Special Master issued an order that resolved fourteen questions posed by Plaintiffs and jointly addressed by the parties. *See* Special Master's Order Regarding Implementation Issues Addressed in the Parties' May 28, 2021 Joint Submission ("Implementation Order") (ECF No. 568). In September 2021, Plaintiffs submitted a letter to the Special Master ("Plaintiffs' Letter") raising additional issues related to the joint submission, to which UBH responded in October 2021 ("UBH Letter"). This Order resolves the issues raised in Plaintiffs' Letter.[1]

## II. BACKGROUND

The Special Master assumes familiarity with the Implementation Order, and therefore focuses on the facts relevant to this Order.

The parties have been litigating UBH's implementation of the Court's Remedies Order for the better part of the past year. In May 2021, the parties summarized their positions on the disputed issues in a joint submission. The joint submission raised fourteen questions. Two are relevant here.

- The first is Question 8: "Does faithful application of the clinical guidelines mandated by the Injunction require UBH to consider which sub-level of residential treatment is most appropriate when the LOCUS analysis shows that residential treatment is indicated?"

- The second is Question 9: "Does the injunction's requirement to faithfully apply the mandated criteria cover only the residential treatment, intensive outpatient, and outpatient treatment levels of care, or is UBH required to faithfully apply the entirety of each clinical guideline, regardless of what level of care is requested?"

Unlike other questions (e.g., Question 7) these two do not call for a "retrospective review" of UBH's benefit determinations since November 2020, when the Remedies Order was entered. For that reason, no "retrospective review" was ordered by the Special Master.

---

[1] On January 7, 2022, UBH indicated that it objected to this order for the reasons stated in the UBH Letter. UBH noted that it would nevertheless meet and confer in good faith with Plaintiffs on the issues and report the results of those discussions within 30 days of the Implementation Order becoming final or the Order on September 24, 2021 Letter becoming final, whichever is later. Since UBH's objections re-state arguments already addressed in this order and in the Implementation Order, the Special Master now files this order over those objections.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

SPECIAL MASTER'S ORDER REGARDING
PLAINTIFFS' SEPTEMBER 24, 2021 LETTER

1

39719\14537281.4

1  On September 14, 2021, the Special Master provided the parties with a draft of the
2  Implementation Order for their review.  At this point, Plaintiffs recognized that the parties' joint
3  submission "did not squarely call for a retrospective review to determine whether erroneous
4  denials occurred because of UBH's failure to apply the criteria for ASAM Level 3.2-WM (i.e.,
5  low-intensity residential detoxification treatment), or the sublevels of mental health residential
6  treatment identified in the LOCUS."  Plaintiffs' Letter at 1–2.  Plaintiffs' Letter, dated September
7  24, 2021, thus "explicitly" requested these "retrospective review[s]."  UBH opposed Plaintiffs'
8  request in a letter dated October 28, 2021.  These letters are attached as Exhibit A and Exhibit B.

**III.    DISCUSSION**

   **A.    ASAM Level 3.2-WM (Clinically Managed Residential Withdrawal Management)**

Level 3.2-WM (Clinically Managed Residential Withdrawal Management) "is an organized service that may be delivered by appropriate trained staff, who provide 24-hour supervision, observation, and support for patients who are intoxicated or experiencing withdrawal."  ASAM Criteria at 137.  This level is intended for patients who are "experiencing signs and symptoms of withdrawal, or there is evidence (based on history of substance intake; age; gender; previous withdrawal history; present symptoms; physical condition; and/or emotional, behavioral, or cognitive condition) that withdrawal is imminent."  *Id.* at 165.

Before the Special Master's Implementation Order, UBH had been instructing its personnel that "ASAM Level 3.2 Withdrawal Management (WM) is Not a Covered Benefit."  *See* B50; *see also* D26; D28; D32; D34; D37; D40; D42; D45.  In the Implementation Order, the Special Master held that "UBH cannot refuse to consider the criteria for ASAM Level 3.2 WM when that level is not excluded by the plan."  Implementation Order at 33.  The Special Master therefore ordered UBH to revise any materials suggesting that Level 3.2-WM is never a covered benefit.  *See id.* at 34.

Plaintiffs are concerned that UBH's instructions on Level 3.2-WM, like the one above, may have led to erroneous denials of requests by members whose plans do not exclude this level.  To assess the scope of this potential problem, Plaintiffs ask the Special Master to investigate

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

SPECIAL MASTER'S ORDER REGARDING
PLAINTIFFS' SEPTEMBER 24, 2021 LETTER

2

39719\14537281.4

UBH's denials of requests for Level 3.2-WM since the Remedies Order was entered in November 2020. Plaintiffs equate UBH's instructions on Level 3.2-WM to the "ASAM Level 3.1 and Level 3.3" section of UBH's ASAM Workflow. As discussed in the Implementation Order, the Special Master found that "UBH's personnel could reasonably interpret [that] section of the ASAM Workflow to mean that ASAM Levels 3.1 and 3.3 are never covered, whether or not those levels are excluded from a plan." Implementation Order at 17. Thus, the Special Master concluded, this section *could have* led to erroneous denials of requests for Levels 3.1 and 3.3. *Id.* To determine whether it actually *did* lead to erroneous denials, the Special Master directed that UBH's denials of requests for these levels be sampled. Plaintiffs ask for the Special Master to order the same kind of "retrospective review" for Level 3.2-WM.

UBH contends that "retrospective review" is inappropriate here for three reasons. *See* UBH Letter at 1–2. First, because Level 3.2-WM "was not a litigated issue in this case." *Id.* Second, because Plaintiffs "cite no evidence" that UBH's instructions did, in fact, result in erroneous denials. *Id.* at 2. Third, because sampling past denials "will impose significant burdens on UBH to collect, redact, and produce potentially voluminous case records." *Id.* at 2. According to UBH, its "structured data does not separately indicate which particular sublevel of residential detoxification services are being requested by a provider," as "providers do not typically request a specific ASAM sublevel of residential detoxification." *Id.* As a result, it would be difficult even to identify which claims should be sampled, "likely requir[ing] a burdensome manual review of the clinical notes associated with each request for withdrawal management services at all 'residential' levels and an individualized clinical assessment of whether the services requested constitute ASAM Level 3.2-WM services." *Id.* UBH also asserts "ASAM does not offer certification or accreditation of ASAM Level 3.2-WM providers," further complicating any review. *See id.*

In the Implementation Order the Special Master explained that "retrospective looks" had been ordered where "there is a substantial risk of violations of the Remedies Order." Implementation Order at 47–48. The Special Master finds such a risk with respect to ASAM Level 3.2-WM. Like the "ASAM Level 3.1 and Level 3.3" section of UBH's ASAM Workflow,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

SPECIAL MASTER'S ORDER REGARDING
PLAINTIFFS' SEPTEMBER 24, 2021 LETTER

3

39719\14537281.4

UBH'S materials with respect to ASAM Level 3.2-WM could reasonably be interpreted to mean that the level at issue – ASAM Level 3.2-WM – is never covered, whether or not that level is excluded from a plan. This would violate the Court's order that UBH must consider "the criteria applicable to each of the sub-levels of residential treatment identified in the ASAM Criteria." Remedies Order, Section IV.b.a at 96.

UBH's arguments to the contrary are unavailing, as already explained in the Implementation Order. First, while the Remedies Order did not specifically identify ASAM Level 3.2-WM, it instructed UBH to apply the criteria for all ASAM levels of care; the Court did not exclude any particular level of care. *See* Implementation Order at 34. Second, UBH's point that Plaintiffs "cite no evidence" of erroneous denials of requests for Level 3.2-WM is unpersuasive. The Special Master is charged with verifying UBH's compliance, and the evidence of UBH's compliance, including whether the risks of such denials have materialized, are in UBH's files, not Plaintiffs'. *See id.* at 27. Third, UBH has provided no evidence of burden, including no estimate of the denials of requests for coverage at Level 3.2-WM. *See id.* at 27–28. Without any substantiation of UBH's burden claim, the Special Master is not in a position to evaluate it. *See id.* at 28. Moreover, sampling is designed to minimize this burden. *See id.*

Therefore, the Special Master orders the parties to meet and confer on a process by which UBH's denials of requests for coverage at Level 3.2-WM since November 3, 2020, may be sampled to determine whether UBH's instructions on Level 3.2-WM have inappropriately resulted in denials for those members whose plans do not exclude this level from coverage. The parties shall report the results of their meet and confer, and propose an appropriate sampling methodology to the Special Master within 30 business days of this Order becoming final or within 30 business days of the Implementation Order becoming final, whichever is later.

### B. LOCUS Level 5 Sublevels

The LOCUS Supplementary Criteria for Residential Placement (Appendix 1 to LOCUS), explains that Level 5 – "Medically Monitored Residential Services" – has three distinct "sublevels." LOCUS at 35. For each sublevel, "specific LOCUS criteria in a client's profile indicate their appropriateness for the designated service." *Id.* at 33.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

SPECIAL MASTER'S ORDER REGARDING
PLAINTIFFS' SEPTEMBER 24, 2021 LETTER

4

39719\14537281.4

In the parties' joint submission, Plaintiffs argued that, for patients who qualify for Level 5, UBH must determine which sublevel is most appropriate. Joint Submission at 44–46. UBH's Guideline Scoring Tool does not identify which Level 5 sublevel is appropriate. While UBH did not dispute this point, it argued that its failure to consider the appropriate sublevel is not a "barrier to coverage." Aug. 16 Tr. at 81:7–8. UBH further represented that: "UBH's current practice is to authorize services for 'residential treatment' so long as the member satisfies *lower* threshold criteria for LOCUS 5. For example, if a provider requests coverage for mental health 'residential treatment' and proposes a treatment plan consistent with LOCUS sublevel 5C, UBH's current practice is to authorize coverage if the member satisfies the threshold criteria for LOCUS Level 5." Objection at 9.

Still, the Special Master ordered that – going forward – UBH must determine the appropriate Level 5 sublevel for patients who qualify for Level 5. *See* Implementation Order at 32. Since UBH represented "its failure to apply the criteria for the sublevels and to determine the appropriate Level 5 sublevel is not a barrier to coverage," *see id.* at 31, the need to correct its failure was less urgent, *see id.* at 32. Thus, the Special Master ordered that, "[u]ntil a final plan for UBH's use of LOCUS Sublevels 5A, 5B, and 5C is approved by the Special Master, UBH shall not be required to determine coverage for mental health residential treatment services for members with a LOCUS Level 5 score based on the application of the supplemental criteria for LOCUS sublevels 5A, 5B, and 5C." *Id.* at 32. The Special Master did not decide whether UBH must sample its claims determinations for requests for LOCUS Level 5 since the Remedies Order.

In their September 24 letter, Plaintiffs ask that the Special Master "investigate whether UBH's failure to apply the LOCUS's criteria for the sub-levels of residential treatment led to any erroneous denials" by "conduct[ing] a review of its post-injunction denials." Plaintiffs' Letter at 2. UBH opposes Plaintiffs' request on three grounds. First, as noted above, UBH's practice is to authorize services for "residential treatment" so long as the member satisfies the lower threshold criteria for LOCUS 5 (that is, the least intensive sublevel). UBH Letter at 2–3. So, UBH contends, its failure to determine the appropriate Level 5 sublevel could not have led to any "erroneous denials." *Id.* Second, UBH asserts that sampling its past claims determinations for

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

SPECIAL MASTER'S ORDER REGARDING
PLAINTIFFS' SEPTEMBER 24, 2021 LETTER

5

39719\14537281.4

1   requests for LOCUS Level 5 would impose "significant burdens" on UBH "to collect, redact, and
2   produce potentially voluminous case records." *Id.* at 3.  Third – and relatedly – UBH's "structured
3   data does not separately indicate which particular LOCUS sublevel of residential treatment is
4   being requested by a provider, in part because providers generally do not request coverage for a
5   specific sublevel." *Id.*  This means that identifying requests for particular sublevels "would likely
6   require a burdensome manual review of the clinical notes associated with each request and an
7   individualized clinical assessment of which (if any) specific LOCUS sublevel was at issue." *Id.*

8   The Special Master declines to order UBH to sample its past denials of requests for Level
9   5 at this time.  The Special Master notes UBH's representation that its failure to apply the criteria
10  for the sublevels and to determine the appropriate Level 5 sublevel is not a "barrier to coverage."
11  Aug. 16 Tr. at 81:7-8.  Moreover (and perhaps in light of UBH's representation), Plaintiffs have
12  agreed that "UBH shall not be required to determine coverage for mental health residential
13  treatment services for members with a LOCUS Level 5 score based on the application of the
14  supplemental criteria for LOCUS sublevels 5A, 5B, and 5C" "[u]ntil a plan for UBH's use of
15  LOCUS Sublevels 5A, 5B, and 5C is approved by the Special Master." Parties' Nov. 5, 2021
16  Agreed Revisions to Special Master's Draft Implementation Order at 30–31; Implementation
17  Order at 32.  This agreement eliminates the need for a "retrospective look" at this time.

18  **C.    UBH's Data Dictionary**

19  Plaintiffs also ask the Special Master to order UBH to produce the current version of its
20  Data Dictionary, which identifies and defines the structured data fields in the databases.  Plaintiffs'
21  Letter at 2.  Plaintiffs believe that their access to UBH's Data Dictionary will facilitate the parties'
22  efforts "to design an appropriate sampling protocol." *Id.*  UBH did not oppose Plaintiffs' request
23  in its October 28 letter; nor has UBH presented evidence that producing the Data Dictionary
24  would be unduly burdensome.  Therefore, the Special Master orders UBH to produce the current
25  version of its Data Dictionary as soon as reasonably possible.

26  **IT IS SO ORDERED.**

27  //

28  //

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

SPECIFIC MASTER'S ORDER REGARDING
PLAINTIFFS' SEPTEMBER 24, 2021 LETTER

6

39719\14537281.4

1  Dated: January 20, 2022                FARELLA BRAUN + MARTEL LLP

         By:   */s/ Douglas R. Young*
               Douglas R. Young
               Special Master

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

SPECIAL MASTER'S ORDER REGARDING      7                39719\14537281.4
PLAINTIFFS' SEPTEMBER 24, 2021 LETTER