**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID WIT; NATASHA WIT; BRIAN MUIR; BRANDT PFEIFER, on behalf of the Estate of his deceased wife, Lauralee Pfeifer; LORI FLANZRAICH, on behalf of her daughter Casey Flanzraich; CECILIA HOLDNAK, on behalf of herself, her daughter Emily Holdnak; GARY ALEXANDER, on his own behalf and on behalf of his beneficiary son, Jordan Alexander; CORINNA KLEIN; DAVID HAFFNER, on behalf of themselves and all others similarly situated, | Nos. 20-17363 21-15193 <br><br> D.C. No. 3:14-cv-02346-JCS <br><br><br> OPINION |
| *Plaintiffs-Appellees,* | |
| LINDA TILLITT; MARY JONES, | |
| *Intervenor-Plaintiffs-Appellees,* | |
| v. | |
| UNITED BEHAVIORAL HEALTH, | |
| *Defendant-Appellant.* | |

| | |
|---|---|
| GARY ALEXANDER, on his own behalf and on behalf of his beneficiary son, Jordan Alexander; CORINNA KLEIN; DAVID HAFFNER, on behalf of themselves and all others similarly situated, | Nos. 20-17364 21-15194 <br><br> D.C. No. 3:14-cv-05337-JCS |

*Plaintiffs-Appellees,*

MICHAEL DRISCOLL,

*Intervenor-Plaintiff-Appellee,*

v.

UNITED BEHAVIORAL HEALTH,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of California
Joseph C. Spero, Magistrate Judge, Presiding

Argued and Submitted August 11, 2021
San Francisco, California

Filed January 26, 2023

Before:  Morgan Christen and Danielle J. Forrest, Circuit
Judges, and Michael M. Anello,[*] District Judge.

Opinion by Judge Anello

**SUMMARY**[**]

**Employee Retirement Income Security Act**

The panel affirmed in part and reversed in part the
district court's judgment finding United Behavioral Health
("UBH") liable, and awarding declaratory and injunctive
relief, to classes of plaintiffs who were beneficiaries of
ERISA-governed health benefit plans for which UBH was
the claims administrator.

Plaintiffs submitted health plan coverage requests, which
UBH denied. Plaintiffs brought claims under ERISA for
breach of fiduciary duty and improper denial of benefits,
based on a theory that UBH improperly developed and relied
on internal guidelines that were inconsistent with the terms
of the class members' plans and with state-mandated
criteria. The parties stipulated to a sample class, from which
they submitted a sample of health insurance plans. Plaintiffs
alleged that the plans provided coverage for treatment
consistent with generally accepted standards of case

---

[*] The Honorable Michael M. Anello, United States District Judge for the
Southern District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

("GASC") or were governed by state laws specifying certain criteria for making coverage or medical necessity determinations. Plaintiffs alleged that UBH's Level of Care Guidelines and Coverage Determination Guidelines for making these determinations were more restrictive than GASC and were also more restrictive than state-mandated criteria.

The district court certified three classes, conducted a bench trial, and entered judgment in plaintiffs' favor, concluding that UBH breached its fiduciary duties and wrongfully denied benefits because UBH's Guidelines impermissibly deviated from GASC and state-mandated criteria. The district court issued declaratory and injunctive relief, directed the implementation of court-determined claims processing guidelines, ordered "reprocessing" of all class members' claims in accordance with the new guidelines, and appointed a special master to oversee compliance for ten years.

The panel held that plaintiffs had Article III standing to bring their claims. The panel held that plaintiffs sufficiently alleged a concrete injury as to their fiduciary duty claim because UBH's alleged fiduciary violation presented a material risk of harm to plaintiffs' interest in their contractual benefits. Plaintiffs also alleged a concrete injury as to the denied of benefits claim because they alleged a harm—the arbitrary and capricious adjudication of benefits claims—that presented a material risk to their interest in fair adjudication of their entitlement to their contractual benefits. Further, plaintiffs alleged a particularized injury as to both claims because the Guidelines materially affected each plaintiff. Finally, plaintiffs' alleged injuries were "fairly traceable" to UBH's conduct.

The panel reversed the part of the district court's class certification order certifying plaintiffs' denial of benefits claims as class actions. The panel held that plaintiffs' "reprocessing" theory, seeking reprocessing of their benefits claims under proper guidelines, was a use of the class action procedure to expand or modify substantive rights provided by ERISA, in violation of Fed. R. Civ. P. 23 and the Rules Enabling Act, 28 U.S.C. § 2072(b).

UBH did not appeal the portion of the district court's judgment finding that the UBH Guidelines were impermissibly inconsistent with state-mandated criteria, and that portion of the district court's decision therefore remained intact.

UBH did argue on appeal that the district court erred in concluding that the Guidelines improperly deviated from GASC and that the district court did not apply an appropriate level of deference to UBH's interpretation of the ERISA plans. The panel concluded that the district court did not clearly err in finding that UBH had a structural conflict of interest in serving a dual role as plan administrator and insurer, and that UBH also had a financial conflict because it was incentivized to keep benefit expenses down. The panel held, however, that these findings did not excuse the district court from reviewing UBH's interpretation of the plans for an abuse of discretion. The panel held that, even assuming the conflicts of interest found by the district court warranted heavy skepticism against UBH's interpretation, UBH's interpretation did not conflict with the plain language of the plans. Accordingly, the district court erred by substituting its interpretation of the plans for UBH's interpretation. The panel reversed the district court's judgment that UBH wrongfully denied benefits to the named plaintiffs based upon the court's finding that the Guidelines

impermissibly deviated from GASC. The panel held that the district court also erred in its judgment on plaintiffs' breach of duty claim, which also relied heavily on the district court's conclusion that the Guidelines impermissibly deviated from GASC.

Finally, the panel held that the district court erred when it excused unnamed class members from demonstrating compliance with the plans' administrative exhaustion requirement. The panel held that when an ERISA plan does not merely provide for administrative review but, as here, explicitly mandates exhaustion of such procedures before bringing suit in federal court and, importantly, provides no exceptions, application of judicially created exhaustion exceptions would conflict with the written terms of the plan. Accordingly, to the extent that any absent class members' plans required exhaustion, the district court erred in excusing the failure to satisfy such a contractual requirement.

In sum, the panel held that plaintiffs had Article III standing to bring their breach of fiduciary duty and improper denial of benefits claims pursuant to 29 U.S.C. §§ 112(a)(1)(B) and (a)(3). And the district court did not err in certifying three classes to pursue the fiduciary duty claim. However, because plaintiffs expressly declined to make any showing, or seek a determination of, their entitlement to benefits, permitting plaintiffs to proceed with their denial of benefits claim under the guise of a "reprocessing" remedy on a class-wide basis violated the Rules Enabling Act. Accordingly, the panel affirmed in part and reversed in part the district court's class certification order. On the merits, the panel held that the district court erred in excusing absent class members' failure to exhaust administrative remedies as required under the plans. The

district court also erred in determining that the Guidelines improperly deviated from GASC based on its interpretation that the plans mandated coverage that was coextensive with GASC. Therefore, the panel reversed the judgment on plaintiffs' denial of benefits claim. To the extent the judgment on plaintiffs' breach of fiduciary duty claim was based on the district court's erroneous interpretation of the plans, it was also reversed. The panel affirmed in part, reversed in part, and remanded for further proceedings.

## COUNSEL

Miguel A. Estrada (argued), Geoffrey M. Sigler, Lucas C. Townsend, and Matthew S. Rozen, Gibson Dunn & Crutcher LLP, Washington, D.C.; April N. Ross, Cromwell & Morning LLP, Washington, D.C.; Jennifer S. Romano and Andrew Holmer, Cromwell & Moring LLP, Los Angeles, California; Nathaniel P. Bualat and Thomas F. Koegel, Crowell & Moring LLP, San Francisco, California; for Defendant-Appellant

Caroline E. Reynolds (argued), David A. Reiser, and Andrew N. Goldfarb, Zuckerman Spaeder LLP, Washington, D.C.; D. Brian Hufford, Jason S. Cowart, Zuckerman Spaeder LLP, New York, New York; Adam Abelson, Zuckerman Spaeder LLP, Baltimore, Maryland; Peter K. Stris, Stris & Maher LLP, Los Angeles, California; Meiram Bendat, Meiram Bendat, Santa Barbara, California; for Plaintiffs-Appellees.

Michael B. Kimberly and Sara P. Hogarth, McDermott Will & Emery LLP, Washington, D.C.; Joshua B. Simon, Warren Haskel, and Richard Diggs; McDermott Will & Emery LLP,

New York, New York; for Amicus Curiae America's Health Insurance Plans Inc.

Andrew J. Pincus, Archis A. Parasharami, and Daniel E. Jones, Mayer Brown LLP, Washington, D.C.; Avi M. Kupfer, Mayer Brown LLP, Chicago, Illinois; Daryl Joseffer and Jennifer B. Dickey, United States Chamber Litigation Center Inc, Washington, D.C.; for Amicus Curiae the Chamber of Commerce of the United States of America.

Joana S. McCallum, Manatt Phelps & Phillips LLP, Los Angeles, California; Joseph E. Laska, and Nathaniel A. Cohen, San Francisco, California; for Amicus Curiae Association for Behavioral Health and Wellness.

Aaron M. Panner and Eric J. Maier, Kellogg Hansen Todd Figel & Frederick PLLC, Washington, D.C.; Alison L. Andersen, ArentFox Schiff LLP, Washington, D.C.; Jack R. Bierig and Neil Lloyd, ArentFox Schiff LLP, Chicago, Illinois; Wendy Qiu, Holland & Knight LLP, Los Angeles, California; for Amici Curiae American Psychiatric Association, American Medical Association, California Medical Association, Southern California Psychiatric Society, Northern California Psychiatric Society, Orange County Psychiatric Society, Central California Psychiatric Society and San Diego Psychiatric Society.

Melissa Moore and Stephen Silverman, Senior Attorneys; Jeffrey Hahn, Counsel for Litigation; G. William Scott, Associate Solicitor for Plan Benefit Security; Elena Goldstein, Acting Solicitor of Labor; United States Department of Labor, Office of the Solicitor, Plan Benefits Security Division, Washington, D.C.; for Amicus Curiae Secretary of Labor.

Ari Dybnis and Martine N. D'Agostino, Deputy Attorney Generals; Karli Eisenberg, Supervising Deputy Attorney General; Renu R. George, Senior Assistant Attorney General; Rob Bonta, Attorney General of California, Office of the Attorney General, Oakland, California; for Amicus Curiae State of California.

Kevin Costello, Center for Health Law & Policy Innovation, Harvard Law School, Cambridge, Massachusetts; Abigail K. Coursolle and Elizabeth Edwards, National Health Law Program, Los Angeles, California; for Amici Curiae National Health Law Program, et al.

Sarah W. Rice, Deputy, Public Protection Bureau; Maria R. Lenz, Assistant Attorney General; Peter F. Neronha, Attorney General; Rhode Island Office of the Attorney General, Providence, Rhode Island; Thomas Ryan, Assistant Attorney General; Clare Kindall, Solicitor General; William Tong, Attorney General of Connecticut, Office of the Attorney General, Hartford, Connecticut; Sarah A. Hunger, Deputy Solicitor General; Kwame Raoul, Attorney General of Illinois, Office of the Illinois Attorney General, Chicago, Illinois; for Amici Curiae states of Rhode Island, Connecticut, and Illinois.

## OPINION

ANELLO, District Judge:

United Behavioral Health ("UBH") appeals from the district court's judgment finding it liable to classes of Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") plaintiffs under 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), as well as several pre- and post-trial orders, including class certification, summary judgment, and a remedies order. UBH contends on appeal that Plaintiffs lack Article III standing, and that the district court erred at class certification and trial in several respects. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse in part.

I

UBH is one of the nation's largest managed healthcare organizations. It administers insurance benefits for mental health conditions and substance use disorders for various commercial health benefit plans. In this role, UBH processes coverage requests made by plan members to determine whether the treatment sought is covered under the respective plans. UBH retains discretion to make these coverage determinations "for specific treatment for specific members based on the coverage terms of the member's plan."

Individually named plaintiffs David and Natasha Wit, Brian Muir, Brandt Pfeifer, Lori Flanzraich, Cecilia Holdnak, Gary Alexander, Corinna Klein, David Haffner, Linda Tillitt, and Michael Driscoll (collectively, "Plaintiffs") are all beneficiaries of ERISA-governed health benefit plans for which UBH was the claims administrator.

Plaintiffs all submitted coverage requests, which UBH denied.

Plaintiffs initiated this action on behalf of three putative classes, asserting, at issue here, two claims against UBH. The first is for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(1)(B) and "to the extent the injunctive relief Plaintiffs seek is unavailable under that section, they assert the claim under 29 U.S.C. § 1132(a)(3)(A)." Second, Plaintiffs brought an improper denial of benefits claim under 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3)(B). Both of Plaintiffs' claims hinge on a theory that UBH improperly developed and relied on internal guidelines that were inconsistent with the terms of the class members' plans and with state-mandated criteria.[1]

Among the individually named Plaintiffs, there are ten different ERISA plans. Among the class members, there may be as many as 3,000 different plans. The Parties stipulated to a sample class of 106 members, from which they submitted a sample of health insurance plans (the "Plans"). Plaintiffs alleged that the Plans provided coverage for treatment consistent with generally accepted standards of care ("GASC") or were governed by state laws specifying certain criteria for making coverage or medical necessity determinations. Some of the plans administered by UBH were fully insured plans where UBH served a dual role as a plan administrator and insurer, both authorized to determine the benefits owed and responsible for paying such benefits.

The Plans provide that a precondition for coverage is that treatment be consistent with GASC. The Plans contain

---

[1] Plaintiffs also alleged that UBH developed the Guidelines to benefit its self-serving financial interests in breach of its fiduciary duties.

additional conditions and exclusions, and Plaintiffs did "not dispute that a service that is consistent with [GASC] may, nonetheless, be excluded from coverage under a particular class member's plan." For example, some plans may exclude "[s]ervices that extend beyond the period necessary for evaluation, diagnosis, the application of evidence-based treatments, or crisis intervention to be effective." Some plans also may require that the service be the "least costly alternative." The Plans grant UBH discretion to interpret these various terms and determine whether a requested service is covered. To assist with the process of making these determinations, UBH developed internal guidelines used by UBH's clinicians in making coverage determinations. These guidelines include the challenged Level of Care Guidelines and Coverage Determination Guidelines ("Guidelines"). The Level of Care Guidelines are used for plans that limit coverage to medically necessary services. The Coverage Determination Guidelines are used for plans not containing a medical necessity requirement.

Plaintiffs alleged that these Guidelines were more restrictive than GASC and were also more restrictive than state-mandated criteria for making medical-necessity or coverage determinations. Plaintiffs further alleged that UBH breached its fiduciary duties to act solely in the interests of the participants and beneficiaries to develop coverage criteria consistent with GASC. UBH also allegedly breached its fiduciary duties by developing guidelines inconsistent with criteria explicitly mandated by state laws. Plaintiffs also contended UBH breached its duties by promulgating self-serving, cost-cutting guidelines that are more restrictive than the Plans. As to their denial of benefits claim, Plaintiffs argued that UBH violated ERISA by improperly denying Plaintiffs benefits based on its

Guidelines, which are more restrictive than the Plans or criteria mandated by state laws.

Plaintiffs sought certification of three proposed classes as to both claims: (1) the *Wit* Guideline Class; (2) the *Wit* State Mandate Class; and (3) the *Alexander* Guideline Class. The *Wit* Guideline Class was defined as:

> Any member of a health benefit plan governed by ERISA whose request for coverage of residential treatment services for a mental illness or substance use disorder was denied by UBH, in whole or in part, on or after May 22, 2011, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines.
>
> The *Wit* Guideline Class excludes members of the *Wit* State Mandate Class, as defined below.

The *Wit* State Mandate Class was defined as:

> Any member of a fully-insured health benefit plan governed by both ERISA and the state law of Connecticut, Illinois, Rhode Island or Texas, whose request for coverage of residential treatment services for a substance use disorder was denied by UBH, in whole or in part, [within the Class period], based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines and not upon the level-of-care criteria mandated by the applicable state law. . . .

The *Alexander* Guideline Class was defined as:

> Any member of a health benefit plan governed by ERISA whose request for coverage of outpatient or intensive outpatient services for a mental illness or substance use disorder was denied by UBH, in whole or in part, on or after May 22, 2011, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines.

> The *Alexander* Guideline Class excludes any member of a fully insured plan governed by both ERISA and the state law of Connecticut, Illinois, Rhode Island or Texas, whose request for coverage of intensive outpatient treatment or outpatient treatment related to a substance use disorder.

The classes differ in that the *Wit* State Mandate Class includes members whose denial of benefits was based on UBH's Guidelines and not on state-mandated level-of-care criteria. The Guideline classes include members whose denials were based on the Guidelines and not on the terms of the Plans. The *Wit* Guideline Class included members who requested coverage of residential treatment services, whereas the *Alexander* Guideline Class included members who requested coverage of outpatient or intensive outpatient services.

For their breach of fiduciary duties claim, Plaintiffs sought injunctive and declaratory relief. As to their denial

of benefits claim, Plaintiffs sought reprocessing of their claims[2] and argued:

> Individual circumstances are . . . irrelevant to [this claim]. Plaintiffs are *not* asking this Court to determine whether Class members were owed benefits or whether UBH should be ordered to cause its plans to pay such benefits. Rather, Plaintiffs seek a reprocessing remedy, which stems directly from their allegation that UBH used an arbitrary process, premised on fatally flawed Guidelines, to deny their requests for coverage. For that reason, Plaintiffs need not prove at trial that UBH reached the wrong outcome in every single one of its coverage determinations.

Plaintiffs also asserted at the class certification hearing that their denial of benefits claim was "a process claim." Plaintiffs stipulated that "if the case is certified as a class case" then "additional theories" requiring "individualized inquiries as to why UBH's denials of the named Plaintiffs' claims for benefits were wrongful" would "not be part of this case."

---

[2] Plaintiffs relatedly sought a declaration that UBH's denial of benefits was improper and an order for UBH to apply the new guidelines in processing future claims.

On September 19, 2016, the district court granted Plaintiffs' motion to certify these classes.[3] In its order, the district court stated:

> Of particular significance is the fact that Plaintiffs do not ask the Court to make determinations as to whether class members were *actually* entitled to benefits (which would require the Court to consider a multitude of individualized circumstances relating to the medical necessity for coverage and the specific terms of the member's plan).

Beginning October 16, 2017, the district court held a ten-day bench trial. The district court, in its post-trial findings of fact and conclusions of law, relied upon Plaintiffs' representations that their denial of benefits claim was a "process claim" only, stating "Plaintiffs stipulated at the class certification stage of the case that they do not ask the Court to make determinations as to whether individual class members were actually entitled to benefits . . . . Rather, they assert only facial challenges to the Guidelines."

The district court entered judgment in Plaintiffs' favor, concluding that UBH breached its fiduciary duties and wrongfully denied benefits because the Guidelines impermissibly deviated from GASC and state-mandated criteria. The district court also found that financial

---

[3] The district court later issued an order partially decertifying the class to exclude class members who successfully appealed their coverage denials, members who were initially improperly included because of a "flaw in the method used to identify class members," and to modify the Illinois State Mandate Class period.

incentives infected UBH's Guideline development process, particularly where the Guidelines "were riddled with requirements that provided for narrower coverage than is consistent with" GASC. Based on these findings, the district court concluded that UBH breached its fiduciary duty to comply with Plan terms and breached its duties of loyalty and care "by adopting Guidelines that are unreasonable and do not reflect" GASC. It also held that UBH improperly denied Plaintiffs benefits by relying on its restrictive Guidelines that were inconsistent with the Plan terms and state law.

The parties had stipulated, and the district court found, that the Plans gave UBH discretionary authority to create tools, such as the Guidelines, to facilitate interpretation and administration of the Plans. But the district court viewed UBH's interpretation with "significant skepticism" because it found that UBH had a financial conflict of interest and a structural conflict of interest as a dual administrator and insurer for some plans. Ultimately, the district court held that UBH's interpretation embodied in the Guidelines was unreasonable and an abuse of discretion.

In its extensive Findings of Fact and Conclusions of Law, the district court excused any unnamed class members for failing to exhaust their administrative remedies under the Plans despite acknowledging evidence that "some class members who did not exhaust available administrative remedies were required under their Plans to exhaust those remedies before they could bring a legal action against UBH." The district court cited to one of the sample plans, which states: "You cannot bring any legal action against us to recover reimbursement until you have completed all the steps [described in the plan]." The district court further found that exhaustion would have been futile.

The district court issued declaratory and injunctive relief, directed the implementation of court-determined claims processing guidelines, ordered "reprocessing" of all class members' claims in accordance with the new guidelines, and appointed a special master to oversee compliance for ten years.

II

ERISA is a federal statute designed to regulate "employee benefit plan[s]." 29 U.S.C. § 1003(a). Congress enacted ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans," *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983), "by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts,'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (alteration in original) (quoting 29 U.S.C. § 1001(b)). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Id.*

ERISA does not "require[] employers to establish employee benefits plans." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). "Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Id.* (first citing *Shaw*, 463 U.S. at 91; and then citing *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 511 (1981)). Rather, ERISA "ensure[s] that employees will not be left empty-handed once employers have guaranteed them certain benefits." *Id.* The Supreme Court has "recognized that ERISA represents a 'careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans.'" *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (quoting *Aetna Health*,

542 U.S. at 215). "Congress sought 'to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place.'" *Id.* (alterations in original) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)). "ERISA 'induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred.'" *Id.* (alteration in original) (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002), *overruled in part on other grounds by Ky. Ass'n of Health Plans v. Miller*, 538 U.S. 329 (2003)).

Accordingly, 29 U.S.C. § 1132(a) "set[s] forth a comprehensive civil enforcement scheme." *Aetna Health*, 542 U.S. at 208 (2004) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987), *overruled in part on other grounds by Miller*, 538 U.S. 329).

### III

UBH argues that Plaintiffs lacked Article III standing to bring their claims because: (1) Plaintiffs did not suffer concrete injuries; and (2) Plaintiffs did not show proof of benefits denied, and so they cannot show any damages traceable to UBH's Guidelines. We disagree. We review de novo the district court's determination that Plaintiffs have Article III standing. *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1288 (9th Cir. 2014).

To establish standing under Article III, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury

would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *Id.* (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)).

To determine whether a statutory violation caused a concrete injury, we ask: "(1) whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270–71 (9th Cir. 2019) (alteration in original) (quoting *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017)).

A

We find Plaintiffs sufficiently alleged a concrete injury as to their fiduciary duty claim. ERISA's core function is to "protect contractually defined benefits," *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985)), and UBH's alleged fiduciary violation presents a material risk of harm to Plaintiffs' interest in their contractual benefits, *see Ziegler v. Conn. Gen. Life Ins. Co*., 916 F.2d 548, 551 (9th Cir. 1990) ("Congress intended to make fiduciaries culpable for certain ERISA violations even in the absence of actual injury to a plan or participant."). Under the fiduciary duties section of ERISA, a fiduciary has a duty to administer plans "solely in the interest of the participants and beneficiaries . .

. with . . . care, skill, prudence, and diligence," and "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a). Plaintiffs alleged that UBH administered their Plans in UBH's financial self-interest and in conflict with Plan terms. This presents a material risk of harm to Plaintiffs' ERISA-defined right to have their contractual benefits interpreted and administered in their best interest and in accordance with their Plan terms. Their alleged harm further includes the risk that their claims will be administered under a set of Guidelines that impermissibly narrows the scope of their benefits and also includes the present harm of not knowing the scope of the coverage their Plans provide. The latter implicates Plaintiffs' ability to make informed decisions about the need to purchase alternative coverage and the ability to know whether they are paying for unnecessary coverage.

We also find Plaintiffs alleged a concrete injury as to the denial of benefits claim. As explained, ERISA protects contractually defined benefits, *see McCutchen*, 569 U.S. at 100. Plaintiffs alleged a harm—the arbitrary and capricious adjudication of benefits claims—that presents a material risk to their interest in fair adjudication of their entitlement to their contractual benefits. Plaintiffs need not have demonstrated that they were, or will be, entitled to benefits to allege a concrete injury. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 424–25 (2011); *cf. Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("When the government erects a barrier that makes it more difficult for" someone "to obtain a benefit" a plaintiff challenging "the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing").

B

We also find that Plaintiffs alleged a particularized injury as to both claims. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted), *as revised* (May 24, 2016). Plaintiffs' alleged injuries are particularized because the Guidelines are applied to the contractual benefits afforded to each individual class member. The fact that Plaintiffs did not ask the court to determine whether they were individually entitled to benefits does not change the fact that the Guidelines materially affected each Plaintiff. *Cf. Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020) (holding no injury where alleged ERISA violations had no effect on plaintiffs' *defined benefit plan*).

Finally, Plaintiffs' alleged injuries are "fairly traceable" to UBH's conduct. An injury is "fairly traceable" where there is a causal connection between the injury and the defendant's challenged conduct. *Lujan*, 504 U.S. at 560. Plaintiffs' alleged injuries are fairly traceable to UBH's conduct because their interest in the proper interpretation of their contractual benefits, inability to know the scope of coverage under their Plans, and denial of coverage requests, are all connected to UBH's alleged conduct of improperly developing Guidelines in its own self-interest and using those improper Guidelines in denying Plaintiffs' coverage requests.

IV

UBH also appeals from the district court's class certification order. The district court's class certification decision is reviewed for an abuse of discretion. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 984 (9th Cir. 2015). A district court abuses its discretion when its ruling

is based "on an erroneous view of the law." *Id.* (citation omitted). We review de novo the district court's interpretation of ERISA. *See Shaver v. Operating Eng'rs Loc. 428 Pension Tr. Fund*, 332 F.3d 1198, 1201 (9th Cir. 2003). UBH argues that the district court erred in certifying the three classes based on Plaintiffs' "novel reprocessing theory" because Rule 23 of the Rules of Civil Procedure and the Rules Enabling Act, 28 U.S.C. § 2072(b), forbid using the class action procedure to expand or modify substantive rights. As to Plaintiffs' denial of benefits claim, we agree.[4]

"[T]he Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (quoting 28 U.S.C. § 2072(b)). We must therefore begin with the ERISA statute to determine Plaintiffs' substantive rights.

As discussed above, the purpose of ERISA is to "provide a uniform regulatory regime over employee benefit plans." *Aetna Health*, 542 U.S. at 208. Accordingly, 29 U.S.C. § 1132(a) "set[s] forth a comprehensive civil enforcement scheme" for accomplishing the overall purposes of ERISA. *Id.* (quoting *Dedeaux*, 481 U.S. at 54). Two provisions are particularly relevant: § 1132(a)(1)(B) and § 1132(a)(3). Under § 1132(a)(1)(B), "[i]f a participant or beneficiary

---

[4] UBH's Rule 23 argument in its Opening Brief disputed class certification only on the grounds that Plaintiffs facially challenged the Guidelines and have asserted a "novel reprocessing theory" to advance their denial of benefits claim on a class-wide basis. This argument does not implicate a Rules Enabling Act issue as to the fiduciary duty claim. Thus, we deem any challenge to certification of the breach of fiduciary duty claim forfeited, and our analysis leaves class certification as to that claim intact.

believes that benefits promised to him under the terms of the
plan are not provided, he can bring suit seeking provision of
those benefits. A participant or beneficiary can also bring
suit generically to 'enforce his rights' under the plan, or to
clarify any of his rights to future benefits." *Id.* at 210
(quoting 29 U.S.C. § 1132(a)(1)(B)). Because the remedy
provided under § 1132(a)(1)(B) is to recover benefits or to
enforce or clarify rights under the plan, a remand to the
administrator for reevaluation is a *means* to the ultimate
remedy. *See Vizcaino v. Microsoft Corp.*, 120 F.3d 1006,
1008, 1013–15 (9th Cir. 1997) (remanding for reevaluation
of plaintiffs' rights under plan pursuant to § 1132(a)(1)(B)'s
right to enforce the plan terms, where plaintiffs "sought a
determination that they were entitled to participate in the
plan benefits"); *see also Saffle v. Sierra Pac. Power Co.
Bargaining Unit Long Term Disability Income Plan*, 85 F.3d
455, 458, 460–61 (9th Cir. 1996) (remanding for
reevaluation to determine whether plaintiff was entitled to
benefits under § 1132(a)(1)(B) where plaintiff filed suit for
benefits due); *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948,
949–51 (9th Cir. 1993) (similar). A plaintiff asserting a
claim for denial of benefits must therefore show that she may
be entitled to a positive benefits determination if outstanding
factual determinations were resolved in her favor. *See, e.g.*,
*Saffle*, 85 F.3d at 460–61; *Patterson*, 11 F.3d at 951. Here,
there are numerous individualized questions involved in
determining Plaintiffs' entitlement to benefits given the
varying Guidelines that apply to their claims and their
individual medical circumstances. To avoid the
individualized inquiry involved in assessing whether
Plaintiffs may be entitled to benefits under the Plan terms,
Plaintiffs framed their denial-of-benefits claims as seeking a
procedural remedy only.

Simply put, reprocessing is not truly the *remedy* that Plaintiffs seek, it is the *means to the remedy* that they seek. But Plaintiffs expressly disclaimed the actual remedy available to them and narrowed their theory of liability under § 1132(a)(1)(B) in an attempt to satisfy Rule 23's commonality requirement.

Yet here, the district court found that "reprocessing" *itself* was an appropriate class-wide remedy for Plaintiffs' denial of benefits claim under § 1132(a)(1)(B). The district court abused its discretion in accepting the erroneous legal view that reprocessing is itself a remedy under § 1132(a)(1)(B) independent from the express statutory remedies that Congress created, justifying class treatment. *See Russell*, 473 U.S. at 146 ("The . . . carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted, however, provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."). Doing so improperly allowed Plaintiffs to use Rule 23 as a vehicle for enlarging or modifying their substantive rights where ERISA does not provide reprocessing as a standalone remedy. *See Dukes*, 564 U.S. at 367.

The district court found that the reprocessing remedy could alternatively fall under § 1132(a)(3). This also was an abuse of discretion. Section 1132(a)(3) is a "catchall" provision to offer appropriate equitable relief for injuries that § 1132 does not otherwise remedy. *Varity*, 516 U.S. at 511–12, 515; *see also Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 959 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016). Where the alleged injury is improper denial of benefits, "a claimant may not bring a claim for denial of benefits under § 1132(a)(3) when a claim under § 1132(a)(1)(B) will afford adequate relief."

*Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1229 (9th Cir. 2020). The issue here is that Plaintiffs have expressly disclaimed a remedy under § 1132(a)(1)(B) by declining to show that reprocessing might allow any plaintiff or class member to recover benefits.  But as discussed above, Plaintiffs cannot modify their ERISA rights to obtain the benefits of proceeding as a class action under Rule 23. *See Dukes*, 564 U.S. at 367.

Further, "[a]n individual bringing a claim under § 1132(a)(3) may seek 'appropriate equitable relief,' which refers to 'those categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity) were *typically* available in equity.'" *Castillo*, 970 F.3d at 1229 (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011)). Plaintiffs and the district court did not explain or refer to precedent showing how a "reprocessing" remedy constitutes relief that was typically available in equity.  Consequently, the district court erred in concluding that "reprocessing" was an available remedy under 29 U.S.C. § 1132(a)(3).

The district court abused its discretion in certifying Plaintiffs' denial of benefits claims as class actions. Therefore, we reverse this part of the district court's class certification order.

V

Turning to the merits of Plaintiffs' claims, UBH challenges the district court's final judgment, arguing that the district court erred in concluding that the UBH Guidelines improperly deviated from GASC, and the district court did not apply an appropriate level of deference to UBH's interpretation of the Plans.  As an initial matter, UBH did not appeal the portions of the district court's judgment finding the Guidelines were impermissibly inconsistent with

state-mandated criteria. This portion of the district court's decision therefore remains intact.

As discussed above, ERISA does not "mandate what kind of benefits employers must provide." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003) (quoting *Lockheed*, 517 U.S. at 887). ERISA "focus[es] on the written terms of the plan" which "in short, [are] at the center of ERISA." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013). The question then is not whether ERISA mandates consistency with GASC—it does not—but whether UBH properly administered the Plans pursuant to the Plan terms. *See id.*

"Where the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, we ordinarily review the plan administrator's decisions for an abuse of discretion." *Schikore v. BankAmerica Suppl. Ret. Plan*, 269 F.3d 956, 960 (9th Cir. 2001); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The administrator's interpretation is an abuse of discretion if the interpretation is unreasonable. *Moyle*, 823 F.3d at 958. Where the administrator or fiduciary has a conflict of interest, review of its interpretation will be "informed by the nature, extent, and effect on the decision-making process" of such conflict. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006). "We review de novo a district court's choice and application of the standard of review to decisions by fiduciaries in ERISA cases." *Williby v. Aetna Life Ins. Co.*, 867 F.3d 1129, 1133 (9th Cir. 2017) (quoting *Estate of Barton v. ADT Sec. Servs. Pension Plan*, 820 F.3d 1060, 1065 (9th Cir. 2016)). We review findings of fact for clear error. *Abatie*, 458 F.3d at 962.

It is undisputed that the Plans in this case confer UBH with discretionary authority to interpret the Plan terms. The parties stipulated, and the district court found as a matter of fact, that this includes the discretion to create interpretive tools, such as the Guidelines. This finding was not clearly erroneous. Accordingly, UBH's interpretation of the Plans via its Guidelines is reviewed for an abuse of discretion. *Schikore*, 269 F.3d at 960. And the district court correctly identified this standard of review.

But the district court also found that UBH had a significant conflict of interest and therefore gave little weight to UBH's interpretation of the Plans. Where an administrator has a dual role as plan administrator and plan insurer, there is a structural conflict of interest. *See Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012). UBH served such a dual role as Plan administrator and insurer (authorized to determine the benefits owed and responsible for paying such benefits) for at least some of the Plans. The district court found, in addition to this structural conflict of interest, that UBH also had a financial conflict because it was incentivized to keep benefit expenses down. Again, the district court's factual findings are not clearly erroneous.

However, the district court's findings did not excuse it from applying the abuse of discretion standard. "Abuse of discretion review applies to a discretion-granting plan *even if* the administrator has a conflict of interest." *Abatie.*, 458 F.3d at 965 (emphasis added). The conflict is weighed as a factor in determining whether the administrator abused its discretion. *Stephan*, 697 F.3d at 929; *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115–17 (2008). The district court purported to apply an abuse of discretion standard tempered by high skepticism of UBH's interpretation given

UBH's conflict of interest. But even with such a tempered abuse of discretion standard, we cannot agree that UBH abused its discretion on the facts of this case.

Even assuming the conflicts of interest found by the district court warrant heavy skepticism against UBH's interpretation, UBH's interpretation does not conflict with the plain language of the Plans. To the contrary, it gives effect to all the Plan provisions. The Plans exclude coverage for treatment *inconsistent* with GASC or otherwise condition treatment on consistency with GASC. While the GASC precondition mandates that a treatment be consistent with GASC as a starting point, it does not compel UBH to cover *all* treatment that is consistent with GASC. Nor does the exclusion—or any other provision in the Plans—require UBH to develop Guidelines that mirror GASC. And while treatment consistent with GASC is a precondition to coverage, there are other Plan provisions that still exclude certain treatments even if they are consistent with GASC. Thus, if UBH had interpreted the GASC exclusion to mandate coverage for and consistency with GASC, these other exclusions would be rendered nugatory.

The district court disagreed. Although it acknowledged some treatment consistent with GASC may be excluded under the Plans, it ultimately ruled that UBH abused its discretion because the Guidelines did not require coverage for all care consistent with GASC. The district court's substitution of its interpretation of the Plans for UBH's interpretation that is consistent with the language of the Plans was erroneous.

We reverse the district court's judgment that UBH wrongfully denied benefits to the named Plaintiffs based upon the court's finding that the Guidelines impermissibly

deviate from GASC. The district court's judgment on Plaintiffs' breach of fiduciary duty claim also relied heavily on its conclusion that the Guidelines impermissibly deviated from GASC.[5] This also was error.

## VI

Finally, UBH contends that the district court erred when it excused unnamed class members from demonstrating compliance with the Plans' administrative exhaustion requirement. We agree.

We review the applicability of exhaustion principles de novo. *See Barboza v. Cal. Ass'n of Pro. Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011). "ERISA itself does not require a participant or beneficiary to exhaust administrative remedies in order to bring an action under § 502 of ERISA, 29 U.S.C. § 1132." *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1088 (9th Cir. 2012) (quoting *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008)). Instead, ERISA mandates an opportunity for administrative review, *see* 29 U.S.C. § 1133(2), and we have treated completion of this administrative review as a prudential exhaustion requirement. *Castillo*, 970 F.3d at 1228. We have also consistently recognized three exceptions to the prudential exhaustion requirement: futility, inadequate remedy, and unreasonable claims procedures. *See Vaught*, 546 F.3d at

---

[5] This was not the only finding relevant to the district court's judgment on the breach of fiduciary duties claim. The district court also found, among other things, that financial incentives infected UBH's Guideline development process and that UBH developed the Guidelines with a view toward its own interests. Our decision does not disturb these findings to the extent they were not intertwined with an incorrect interpretation of the Guidelines as inconsistent with the Plan terms.

626–27. Plaintiffs have not shown that we have extended these exceptions to a contractual exhaustion requirement, and even if we were inclined to do so, here it is uncontested that some beneficiaries successfully appealed the denial of their benefit claims, so these exceptions are not satisfied.

The Supreme Court has explained that "[t]he plan, in short, is at the center of ERISA," and accordingly, "[t]his focus on the written terms of the plan is the linchpin of 'a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place.'" *Heimeshoff*, 571 U.S. at 108 (third and fourth alterations in original) (first quoting *McCutchen*, 569 U.S. at 101; and then quoting *Varity*, 516 U.S. at 497). While Congress, in enacting ERISA, "empowered the courts to develop, in . . . light of reason and experience, a body of federal common law governing employee benefit plans," *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1499 (9th Cir. 1984), federal common law doctrines cannot alter or override clear and unambiguous plan terms, *see Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1444 (9th Cir. 1995).

When an ERISA plan does not merely provide for administrative review but, as here, explicitly mandates exhaustion of such procedures before bringing suit in federal court and, importantly, provides no exceptions, application of judicially created exhaustion exceptions would conflict with the written terms of the plan. *Cf. Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992) ("Because the plan was unambiguous, the Greanys cannot avail themselves of the federal common law claim of equitable estoppel.").

This outcome is consistent with the Rules Enabling Act. Exhaustion is a contractual limitation that impacts the availability of remedies. In this case, by excusing all absent class members' failure to exhaust, the district court abridged UBH's affirmative defense of failure to exhaust and expanded many absent class members' right to seek judicial remedies under Rule 23(b)(3). *Cf. Dukes*, 564 U.S. at 367 ("[A] class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims."). Accordingly, to the extent any absent class members' plans required exhaustion, the district court erred in excusing the failure to satisfy such a contractual requirement. On this basis, we reverse.

## VII

In sum, Plaintiffs have Article III standing to bring their breach of fiduciary duty and improper denial of benefits claims pursuant to 29 U.S.C. §§ 112(a)(1)(B) and (a)(3). And the district court did not err in certifying three classes to pursue the fiduciary duty claim. However, because Plaintiffs expressly declined to make any showing, or seek a determination of, their entitlement to benefits, permitting Plaintiffs to proceed with their denial of benefits claim under the guise of a "reprocessing" remedy on a class-wide basis violated the Rules Enabling Act. Accordingly, we affirm in part and reverse in part the district court's class certification order.

On the merits, the district court erred in excusing absent class members' failure to exhaust administrative remedies as required under the Plans. The district court also erred in determining that the Guidelines improperly deviate from GASC based on its interpretation that the Plans mandate coverage that is coextensive with GASC. Therefore, the

judgment on Plaintiffs' denial of benefits claim is reversed, and to the extent the judgment on Plaintiffs' breach of fiduciary duty claim is based on the district court's erroneous interpretation of the Plans, it is also reversed.

**AFFIRMED in part, REVERSED in part, and REMANDED FOR FURTHER PROCEEDINGS.** Each party to bear its own costs.