PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
7 West Figueroa Street, Suite 300
PMB# 300059
Santa Barbara, CA 93101
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs and the Classes*
*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br>Related Case No. 3:14-CV-05337-JCS<br><br>**PLAINTIFFS' OPENING BRIEF ON SCOPE OF REMAND** |
| GARY ALEXANDER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>Defendant. | |

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................................ ii

Background ........................................................................................................................... 1

    I.     Prior Proceedings Before This Court ....................................................... 1

    II.    The Ninth Circuit Proceedings ................................................................ 2

        A.    *Wit I* ............................................................................................ 2

        B.    *Wit II* ........................................................................................... 4

        C.    *Wit III* .......................................................................................... 5

    III.   Proceedings Following Remand ............................................................... 8

Argument ............................................................................................................................. 8

    I.     The Court Has Authority on Remand to Decide All Issues Not Resolved
        by the Ninth Circuit ................................................................................. 8

    II.    Issues Resolved by the Court of Appeals ............................................... 11

    III.   Issues To Be Resolved on Remand .......................................................... 13

        A.    Issues the Court Should Resolve Immediately Upon Completion
            of the Scope of Remand Briefing ............................................... 13

            1.   The Court Should Clarify that it Interpreted the Plans
                Correctly ........................................................................ 13

            2.   The Court Should Hold that No Exhaustion Requirement
                Applies to Plaintiffs' Breach of Fiduciary Duty Claim. ............... 18

            3.   The Court Should Promptly Lift the Stay on the Prospective
                Injunctive Relief and the Special Master Order. ........................... 21

        B.    Issues on Which the Court Should Order Briefing or Motions Practice .... 22

            1.   The Court Should Consider and Decide Plaintiffs' Motion to
                Recertify the Denial of Benefits Claim and to Certify
                Subclasses to Seek Reprocessing Relief. ...................................... 22

            2.   If the Court Grants Plaintiffs' Motion to Modify the Class
                Certification Order, the Court Should Consider Whether the
                Class and Subclass Members Are Excused from Exhausting
                their Denial of Benefits Claims ....................................................... 25

            3.   The Court Should Order Reprocessing Consistent with the
                Panel's Guidance ............................................................................ 26

            4.   The Court Should Decide Whether to Order any Additional
                Remedies as Appropriate Equitable Relief for the Breach of
                Fiduciary Duty Claims. ................................................................... 27

    IV.   Conclusion ............................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Davis v. United Health Grp. Inc.*,
2023 WL 2955277 (W.D. Wash. Apr. 14, 2023)................................................................ 20

*Diaz v. United Agr. Emp. Welfare Ben. Plan & Tr.*,
50 F.3d 1478 (9th Cir. 1995) ........................................................................................ 18, 20

*Donovan v. Mazzola*,
716 F.2d 1226 (9th Cir. 1983) ............................................................................................ 28

*Dukes v. Wal-Mart Stores, Inc.*,
2012 WL 4329009 (N.D. Cal. Sept. 21, 2012) .............................................................. 23, 25

*Ellenburg v. Brockway, Inc.*,
763 F.2d 1091 (9th Cir. 1985) ............................................................................................ 22

*Firth v. United States*,
554 F.2d 990 (9th Cir. 1977) ................................................................................................ 9

*G.P.P., Inc. v. Guardian Prot. Prods., Inc.*,
2023 WL 4311611 (9th Cir. July 3, 2023)............................................................................ 9

*Glaberson v. Comcast Corp.*,
295 F.R.D. 95 (E.D. Pa. 2013)............................................................................................. 24

*Hall v. City of Los Angeles*,
697 F.3d 1059 (9th Cir. 2012) ........................................................................................... 8, 9

*In re Initial Pub. Offering Sec. Litig.*,
483 F.3d 70 (2d Cir. 2007) .................................................................................................. 24

*In re Sanford Fork & Tool Co.*,
160 U.S. 247 (1895)............................................................................................................... 9

*Jeldness v. Pearce*,
30 F.3d 1220 (9th Cir. 1994) .............................................................................................. 11

*Nationstar Mortg. LLC v. River Glider Ave. Tr.*,
2022 WL 187840 (9th Cir. 2022) ......................................................................................... 9

*Nguyen v. United States*,
792 F.2d 1500 (9th Cir. 1986) ............................................................................................ 27

*Odima v. Westin Tucson Hotel*,
53 F.3d 1484 (9th Cir. 1995) ................................................................................... 9, 13, 26

*Quach v. Cross*,
216 F. App'x 666 (9th Cir. 2007) ....................................................................................... 10

*Radu v. Shon*,
62 F.4th 1165 (9th Cir. 2023) ............................................................................................. 10

*Reyes v. City of Santa Ana*,
2022 WL 14424085 (9th Cir. Oct. 25, 2022) ....................................................................... 9

*Rogers v. Hill,*
 289 U.S. 582 (1933)............................................................................................. 23

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.,*
 770 F.3d 1282 (9th Cir. 2014) .................................................................... 18, 20

*Stacy v. Colvin,*
 825 F.3d 563 (9th Cir. 2016) ............................................................... 9, 10, 26

*United States v. Ameline,*
 409 F.3d 1073 (9th Cir. 2005) ....................................................................... 9

*United States v. Cote,*
 51 F.3d 178 (9th Cir. 1995) ...................................................................... 9, 27

*United States v. Kellington,*
 217 F.3d 1084 (9th Cir. 2000) ....................................................... 9, 10, 11, 17, 27

*United States v. Thrasher,*
 483 F.3d 977 (9th Cir. 2007) ......................................................................... 9

*United States v. Washington,*
 172 F.3d 1116 (9th Cir. 1999) ....................................................................... 9

*Van v. LLR, Inc.,*
 2023 WL 3338630 (D. Alaska May 10, 2023) ........................................... 24

*Wit v. United Behavioral Health,*
 58 F.4th 1080 (9th Cir. 2023) ("*Wit II*")................................................. 4, 5, 26

*Wit v. United Behavioral Health,*
 79 F.4th 1068 (9th Cir. 2023) ("*Wit III*") ...............................................*passim*

*Wit v. United Behavioral Health,*
 317 F.R.D. 106 (N.D. Cal. 2016) ("Class Certification Order") ............... 1, 14, 15, 16

*Wit v. United Behavioral Health,*
 2017 WL 3478775 (N.D. Cal. Aug. 14, 2017) ("Summary Judgment Order")........................ 16

*Wit v. United Behavioral Health,*
 2019 WL 1033730 (N.D. Cal Mar. 5, 2019) ("FFCL")....................................*passim*

*Wit v. United Behavioral Health,*
 2020 WL 6462401 (N.D. Cal. Nov. 3, 2020) ("Partial Decert. Order")................................ 1, 14

*Wit v. United Behavioral Health,*
 2020 WL 6479273 (N.D. Cal. Nov. 3, 2020) ("Remedies Order") ................................ 2, 20, 27

**Statutes**

29 U.S.C. § 1104(a)(1)............................................................................... 18, 19

29 U.S.C. § 1132(a)(1)(B)................................................................................ 4

29 U.S.C. § 1132(a)(3).................................................................................. 4, 6

-iii-

**Rules**

Fed. R. Civ. P. 23(b)(3)..................................................................................................... 24

Fed. R. Civ. P. 23(c)(1)(C)............................................................................................... 23

**Other Authorities**

5 Am. Jur. 2d Appellate Review § 688 ....................................................... 8, 11, 15, 27

14A Cyc. of Federal Proc. § 69:15 (3d ed.) ......................................................... 9, 15

14A Cyc. of Federal Proc. § 69:17 (3d ed.) .............................................................. 10

18B Fed. Prac. & Proc. Juris. § 4478.3 (3d ed.)..................................................... 9, 23

After two false starts, the Court of Appeals has now issued its mandate in this case, in the form of an opinion affirming the judgment in part, reversing it in part, and remanding to this Court for further proceedings. Order and Opinion, *Wit v. United Behavioral Health*, 79 F.4th 1068 (9th Cir. 2023) (hereafter "*Wit III*").

This brief addresses the scope of the remand and issues the Court must decide in order to bring this action to a just and final conclusion consistent with the mandate.

## BACKGROUND

### I.   Prior Proceedings Before This Court

The Court is, of course, deeply familiar with the long history of this litigation. Plaintiffs filed *Wit v. United Behavioral Health* (No. 3:14-CV-02346-JCS) on May 21, 2014, and *Alexander v. United Behavioral Health* (No. 3:14-CV-05337-JCS) on December 4, 2014, and the cases were later consolidated for purposes of discovery and trial.

On September 19, 2016, the Court certified three classes in the consolidated cases, each of which asserted claims for (1) breach of fiduciary duty and (2) wrongful denial of benefits: the *Wit* Guidelines Class; the *Alexander* Guidelines Class; and the *Wit* State Mandate Class. *See Wit v. United Behavioral Health*, 317 F.R.D. 106, 116-17, 141 (N.D. Cal. 2016) (the "Class Certification Order").[1] The members of all three classes were provided notice and an opportunity to opt out of class membership. *See* Dist. ECF Nos. 224, 236, 281.[2]

The consolidated cases proceeded to a bench trial in October 2017, after which the Court issued its post-trial Findings of Fact and Conclusions of Law (the "FFCL"), *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2019 WL 1033730 (N.D. Cal Mar. 5, 2019), finding

---

[1] The Court later issued an order partially decertifying the Classes and amending the class definitions accordingly. Order Partially Decertifying Classes, Requiring Notice to Excluded Class Members, Staying All Proceedings as to those Class Members and Tolling Limitation Period on their Individual Claims, *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2020 WL 6462401 (N.D. Cal. Nov. 3, 2020) ("Partial Decert. Order").

[2] To avoid confusion, Plaintiffs will cite to unpublished materials filed on the *Wit* district court docket by ECF number using the format, "Dist. ECF No. __." Plaintiffs will cite to unpublished materials filed on the docket in the appeal by ECF number using the format, "App. ECF No. __." Citations to specific pages within such materials refer to the ECF page number, rather than the document's internal pagination.

1    UBH liable on the merits of the Classes' two claims. On November 3, 2020, the Court issued a

2    Remedies Order providing prospective and retrospective relief to the Classes for UBH's

3    misconduct, including injunctive relief. *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS,

4    2020 WL 6479273 (N.D. Cal. Nov. 3, 2020). The Court entered final judgment on February 1,

5    2021. Dist. ECF No. 531 (the "Judgment"). UBH appealed. *See* Dist. ECF Nos. 508, 532.[3]

6    **II.     The Ninth Circuit Proceedings**

7            UBH's appeal focused on certification of the denial of benefits claims for reprocessing.

8    UBH asserted three grounds for reversal: (1) that Plaintiffs failed to prove causation as a

9    requirement for Article III injury in fact and a claim for wrongful denial of benefits under the

10   Employee Retirement Income Security Act ("ERISA"); (2) that the Court erroneously failed to

11   defer to UBH's interpretation of plan terms; and (3) that the Court erred in excusing absent class

12   members from exhausting administrative remedies. Def.-Appellant's Opening Brief, App. ECF No.

13   25 (Mar. 15, 2021) ("UBH's Appeal Brief") at ii-iii. UBH did not argue that any of the Court's

14   factual findings were clearly erroneous. *See generally id*.

15          UBH also did not challenge any of the following rulings from this Court: certification of

16   the *Wit* State Mandate Class; certification of the two Guideline Classes, insofar as they asserted

17   breach of fiduciary duty claims; the Court's ruling on the merits of the Plaintiffs' breach of fiduciary

18   duty claims; the Court's ruling on the merits of the State Mandate Class's denial of benefits claim;

19   the Court's entry of a declaratory judgment; the Court's issuance of prospective injunctive relief

20   for the Classes; or the Court's appointment of a Special Master to oversee UBH's compliance with

21   the remedies ordered by the Court. *Id*.

22          **A.      *Wit I***

23          Following briefing and oral argument, the Ninth Circuit panel (the "Panel") initially issued

24   a 7-page, unsigned, and unpublished Memorandum disposition. App. ECF No. 92-1 (Mar. 22, 2022)

25   (hereafter, "*Wit I*"). The Panel rejected UBH's Article III standing argument, ruling among other

26   things that "[t]he fact that plaintiffs did not ask the court to determine whether they were

27   _____

28          [3] UBH's appeals were consolidated under Ninth Circuit case number 20-17363. *See* App.
     ECF No. 21.

individually entitled to benefits does not change the fact that the Guidelines materially affected each plaintiff," and that "plaintiffs need not have demonstrated that they were, or will be, actually denied benefits to allege a concrete injury." *Wit I*, App. ECF No. 92-1 at 5.

With respect to class certification on the denial of benefits claim, the Panel declined to reach "whether the district court's 'reprocessing' remedy overextended Rule 23 in violation of the Rules Enabling Act." *Id.* at 6. Judge Forrest disagreed with this approach. In her opinion concurring in part and concurring in the judgment, Judge Forrest explained that in her view, the district court abused its discretion by certifying a denial of benefits class because of "individualized issues involved in determining plaintiffs' entitlement to benefits." *Id.* at 10.

The Panel also declined to reach UBH's exhaustion argument. *Id.* at 7.

The Panel reversed on the merits of the denial of benefits claim, holding that "UBH's interpretation—that the Plans do not require consistency with the GASC—was not unreasonable." *Id.* at 7.[4] The Panel noted the Court's findings that UBH acted in its own self-interest, but nonetheless concluded that this warranted only a "low level of skepticism" when the Court reviewed UBH's interpretation of the Plans. *Id.* The Panel did not address the Court's ruling on the merits of Plaintiffs' breach of fiduciary duty claims (which UBH did not challenge on appeal). Nor did the Panel say anything at all about the State Mandate Class or the Court's ruling on the merits for that class (which UBH also did not challenge on appeal).

Plaintiffs sought rehearing en banc, supported by numerous amici curiae. Pls.-Appellees' Pet. for Panel Rehearing and Rehearing En Banc, App. ECF No. 97-1 (May 5, 2022) ("First Rehearing Petition").[5]

---

[4] The Panel seems to have meant by this that the Plans did not require UBH to approve coverage for all treatment consistent with generally accepted standards of care—something Plaintiffs never argued. In *Wit I*, the Panel did not address the Court's factual findings that the Guidelines were not consistent with the Plan terms that excluded coverage for services that did not meet GASC. *Wit I*, App. ECF No. 92-1 at 7.

[5] The amici supporting Plaintiffs' petition included the American Psychiatric Association, the American Medical Association, the American Psychological Association, the National Association for Behavioral Healthcare, the National Health Law Program, the Center for Health Law and Policy Innovation at Harvard Law School, and the States of California, Connecticut, Illinois, and Rhode Island, among many others. *See* App. ECF Nos. 99, 103, 104, 105, 112, 113.

PLAINTIFFS' OPENING BRIEF ON
SCOPE OF REMAND
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

1

**B.**     *Wit II*

2          Seven months later, the Panel withdrew its Memorandum disposition. District Judge Anello,

3   sitting by designation, issued an opinion for publication, thereby mooting the rehearing petition.

4   *Wit v. United Behavioral Health*, 58 F.4th 1080 (9th Cir. 2023) (hereafter, "*Wit II*").

5          In its opinion, the Panel again rejected UBH's Article III standing argument. *Wit II*, 58 F.4th

6   at 1092-93. This time, though, the Panel added the express holdings that the Plaintiffs' injuries were

7   particularized because "the Guidelines materially affected each plaintiff" and fairly traceable to

8   UBH's wrongdoing because there was "a causal connection between the injury and the defendant's

9   challenged conduct." *Id*. at 1093.

10         Turning to class certification, the Panel noted that UBH had forfeited any challenge to

11  certification of the breach of fiduciary duty claim, and held that its "analysis leaves class

12  certification as to that claim intact." *Id.* at 1094 n.4. With respect to certification of the denial of

13  benefits claim, the Panel ruled that a remand to the administrator for reprocessing is only a means

14  to a remedy for a denial of benefits claim under 29 U.S.C. § 1132(a)(1)(B), and is not itself a

15  remedy. *Id*. at 1094. The Panel concluded, "[a] plaintiff asserting a claim for denial of benefits must

16  therefore show that she may be entitled to a positive benefits determination if outstanding factual

17  determinations were resolved in her favor." *Id.* The panel also held that reprocessing was not

18  appropriate relief for a denial of benefits claim under 29 U.S.C. § 1132(a)(3). *Id.* at 1095. For those

19  reasons, the Panel held that certification of the denial of benefits claim was an abuse of discretion,

20  and "reverse[d] this part of the district court's class certification order." *Id.* at 1095.

21         Addressing the merits, the Panel noted that "UBH did not appeal the portions of the district

22  court's judgment finding the Guidelines were impermissibly inconsistent with state-mandated

23  criteria." *Id.* at 1096. Accordingly, "[t]his portion of the district court's decision . . . remains intact."

24  *Id.* However, the Panel reversed the judgment "that UBH wrongfully denied benefits to the named

25  Plaintiffs based upon the court's finding that the Guidelines impermissibly deviate from GASC."

26  *Id.* at 1097. The Panel based the reversal, as in *Wit I*, on its understanding that this Court had "ruled

27  that UBH abused its discretion because the Guidelines did not require coverage for all care

28  consistent with GASC." *Id.*

The Panel also ruled that futility was not an exception to a contractual (i.e., plan) exhaustion requirement. *Id.* at 1098. In addition, the Panel concluded that futility could not be shown where "it is uncontested that some beneficiaries successfully appealed the denial of their benefit claims." *Id.*[6]

The Panel summed up its *Wit II* rulings as follows: (1) the Panel affirmed in part and reversed in part the class certification order because "the district court did not err in certifying three classes to pursue the fiduciary duty claim," but certification of the denial of benefits claim for reprocessing "violated the Rules Enabling Act"; (2) the Panel ruled that it was error to excuse the failure of some absent class members to exhaust; and (3) the Panel reversed the judgment on the merits of the denial of benefits claim on the ground that this Court had "erred in determining that the Guidelines improperly deviate from GASC based on its interpretation that the Plans mandate coverage that is coextensive with GASC." *Id.* at 1098-99.[7]

Plaintiffs again sought rehearing en banc, again supported by numerous amici curiae. *See* Pls.-Appellees' Pet. for Panel Rehearing and Rehearing En Banc, App. ECF No. 128 (Mar. 10, 2023) ("Second Rehearing Petition").[8]

## C.   *Wit III*

On August 22, 2023, the Panel withdrew *Wit II* and issued another new opinion, again authored by Judge Anello. *Wit III*, 79 F.4th 1068 (9th Cir. 2023). As it had in the prior two decisions, the Panel rejected UBH's Article III standing argument, again finding with respect to *both* of Plaintiffs' claims that Plaintiffs suffered concrete, particularized injuries-in-fact that were "fairly traceable" to UBH's misconduct. *Id.* at 1082-83.

---

[6] In so ruling, the Panel did not mention (and certainly did not overrule as clearly erroneous) this Court's factual finding that "the same Guidelines UBH used to make initial coverage determinations were also used to decide appeals." FFCL, 2019 WL 1033730, at *50 (¶ 191).

[7] The Panel also reversed the judgment on the breach of fiduciary duty claim "to the extent" it was based on what the Panel ruled was "the district court's erroneous interpretation of the Plans" as mandating coverage of all services consistent with GASC. *Id.* at 1099.

[8] This time, the many amici supporting Plaintiffs' petition for rehearing included the Department of Labor, *see* App. ECF No. 137, as well as a group of fifteen states and the District of Columbia. App. ECF No. 132. As before, dozens of medical professional associations and patient advocacy organizations also supported rehearing. App. ECF Nos. 133, 134, 140.

Turning to the class certification order, the Panel again "deem[ed] any challenge to certification of the breach of fiduciary duty claim forfeited," leaving "class certification as to that claim intact." *Id.* at 1084 n.5. With regard to the denial of benefits claim, however, the Panel concluded "that the district court erred in granting class certification here based on its determination that the class members were entitled to have their claims reprocessed regardless of the individual circumstances at issue in their claims." *Id.* at 1084.[9] Reasoning that "remand" to the administrator is available as relief for a denial of benefits claim only when the participant "might be entitled to benefits under the proper standard," *id.*, the Panel identified two groups of class members who would not meet that standard: (1) class members whose claims were denied based on "unchallenged provisions" of the Guidelines, *id.* at 1085, and (2) class members whose claims were denied "*in part* based on the Guidelines" but also for independent reasons. *Id.* "Because the classes were not limited to those claimants whose claims were denied based only on the challenged provisions of the Guidelines," and reprocessing could not be ordered as class-wide equitable relief for the wrongful denials under § 1132(a)(3), the panel "reverse[d] this part of the district court's class certification order"—that is, certification of the denial of benefits claims. *Id.* at 1086. In contrast to its ruling in *Wit II*, which could have been read to foreclose certification of **any** class seeking reprocessing, in *Wit III*, the Panel squarely predicated the reversal on the inclusion in the certified classes of members who would not be eligible for reprocessing as relief for a wrongful denial of benefits. *Id.* (reversing class certification "[b]ecause the classes were not limited to those claimants whose claims were denied based only on the challenged provisions of the Guidelines").

On the merits, the Panel reiterated its conclusion that "UBH did not appeal the portions of the district court's judgment finding the Guidelines were impermissibly inconsistent with state-mandated criteria," which remains intact. *Id.* The Panel upheld this Court's findings that UBH had a financial conflict of interest, ruling they were "not clearly erroneous." *Id.* at 1087. In contrast to

---

[9] The Panel did not suggest that this error applied to the Court's conclusion that all class members were entitled to the other forms of relief Plaintiffs sought, and the Court awarded, for the wrongful denial of benefits claim. *See Wit III*, at 1079 n.3 (acknowledging that, in addition to reprocessing, Plaintiffs also sought declaratory relief and a forward-looking injunction as relief for UBH's arbitrary and capricious denials).

1    the Panel's unequivocal conclusion in *Wit II* that this Court had misinterpreted the plans to require

2    coverage of all services that were consistent with GASC, the new opinion acknowledged a dispute

3    as to what this Court had done. *Id.* at 1087-88 ("UBH argues that . . . the district court . . . constru[ed

4    the plans] to require coverage for all care consistent with GASC. Plaintiffs respond that the district

5    court made no such mistake."). The Panel held that "it was not error for the district court to rule

6    that UBH abused its discretion because the challenged portions of the Guidelines did not *accurately*

7    reflect GASC." *Id.* at 1088 n.6. But "to the extent" the Court "interpreted the Plans to require

8    coverage for all care consistent with GASC," it erred. *Id.* at 1088. The Panel commented that the

9    Court's "statements on this issue are conflicting," but it did not resolve the dispute about how the

10   Court had, in fact, interpreted the plans. *Id.* Instead, the Panel reversed the judgment on the denial

11   of benefits claim only "***to the extent*** the district court concluded the Plans require coverage for all

12   care consistent with GASC." *Id.* (emphasis added).

13         The Panel noted that the Court's judgment on the breach of fiduciary duty claim also "relied

14   heavily" on the "conclusion that the Guidelines impermissibly deviated from GASC," but

15   acknowledged that other findings were also relevant to the ruling on that claim. *Id*. at 1088 n.7. In

16   particular, the Panel pointed to the Court's findings, "among other things, that financial incentives

17   infected UBH's Guideline development process and that UBH developed the Guidelines with a

18   view toward its own interests," *id.*, and stated that its "decision does not disturb these findings to

19   the extent they were not intertwined with an incorrect interpretation of the Plans." *Id.* The Panel,

20   accordingly, reversed the judgment on the breach of fiduciary duty claim only "***to the extent***" it

21   was based on the "erroneous interpretation of the Plans" that the Panel had identified. *Id*. at 1088

22   (emphasis added).

23         Turning to exhaustion, the Panel did not reinstate its *Wit II* ruling finding error. Instead, the

24   Panel remanded for this Court to address the threshold question of the applicability of exhaustion

25   requirements to Plaintiffs' breach of fiduciary claim, in light of this Court's decision to assume

26   without deciding that they did apply. *Id.* at 1088-89. In contrast to *Wit II*, the Panel expressly

27   declined to decide whether—if exhaustion is applicable—"class members were excused from

28   exhausting their claims." *Id.* at 1089. The Panel directed the Court to determine, on remand,

whether "Plaintiffs' breach of fiduciary duty claim is a 'disguised claim for benefits,'" such that contractual exhaustion requirements would apply, *id.*, and if so, whether exhaustion was excused either for futility or because exhaustion by class representatives was sufficient. *Id.* at 1089-90.

Plaintiffs concluded that the Panel's decision in *Wit III* did not present grounds for a further petition for rehearing en banc, although that determination should not be misinterpreted as agreement with all of the Panel's rulings in *Wit III*. UBH also chose not to seek rehearing. Accordingly, mandate returning the case to this Court issued on September 13, 2023. *See* App. ECF No. 152; Dist. ECF No. 603.

**III.    Proceedings Following Remand**

After the mandate issued, the parties submitted a joint status report to this Court. Dist. ECF No. 604. In their section of the report, Plaintiffs identified certain issues the Court of Appeals' opinion left open and proposed to file one or more motions to present the questions to this Court for resolution. *Id.* at 3-4. Plaintiffs also indicated their intent to file a motion to recertify the denial of benefits claims consistent with *Wit III*. *Id.* at 4-5.

In its section, UBH argued that *Wit III* ordered only a "limited remand" to address the "single, discrete question" of "'whether Plaintiffs' fiduciary duty claim is subject to the [administrative] exhaustion requirement.'" *Id.* at 6-7 (quoting *Wit III*, 79 F.4th at 1090). UBH argued that the Court lacks the "power" to consider or decide any other issue. Dist. ECF No. 604 at 7; *see also id.* 8-12.

The Court, therefore, directed the parties to brief the scope of the remand. Dist. ECF No. 607.

**ARGUMENT**

**I.    The Court Has Authority on Remand to Decide All Issues Not Resolved by the Ninth Circuit.**

As a matter of black letter appellate procedure, the rule governing proceedings on remand is that this Court is "free to decide anything not foreclosed by the mandate." *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012); *see also, e.g.*, 5 Am. Jur. 2d Appellate Review § 688 ("[W]here the appellate court remands for further proceedings without limiting what the

proceedings [are] to be, the trial court on remand has the right to consider and rule on the entire

case . . . ."); 18B Fed. Prac. & Proc. Juris. § 4478.3 (3d ed.) ("[T]he appellate mandate commonly

leaves the trial court free to decide matters that were not resolved on appeal.").[10] The Court's task

in construing the mandate is to "distinguish matters that have been decided on appeal, and are

therefore beyond the jurisdiction of the lower court, from matters that have not." *Kellington*, 217

F.3d at 1093 (citing *In re Sanford Fork & Tool Co.*, 160 U.S. at 255). Only limits that are clear

from the mandate constrain proceedings on remand. *Nationstar Mortg. LLC v. River Glider Ave.

Tr.*, No. 20-17271, 2022 WL 187840, at *1 (9th Cir. 2022) (citing *Hall*, 697 F.3d at 1067). The

Court should interpret the mandate "reasonably and in a manner to avoid injustice," applying its

"common sense" and considering "both the letter and the spirit of the appellate court's remand

order." 14A Cyc. of Federal Proc. § 69:15 (3d ed.).

UBH's erroneous argument that the Panel ordered a "limited remand" exclusively focused

on the exhaustion question, Dist. ECF No. 604 at 7, treats the last paragraph of the Panel's opinion

as if that, alone, constituted the appellate mandate (and misinterprets that paragraph in any event).[11]

---

[10] *See also, e.g.*, *Firth v. United States*, 554 F.2d 990, 993-94 (9th Cir. 1977) ("[A] mandate is controlling as to all matters within its compass, while leaving **any issue not expressly or impliedly disposed of on appeal available for consideration** by the trial court on remand.") (emphasis added); *United States v. Kellington*, 217 F.3d 1084, 1092–93 (9th Cir. 2000) (Lower courts are "free as to '**anything not foreclosed by the mandate**' . . . .") (emphasis added) (citation omitted); *United States v. Cote*, 51 F.3d 178, 182 (9th Cir. 1995) (After jurisdiction revests in the district court, "the [lower] court may consider and decide **any matters left open by the mandate** of [the] court.") (emphasis added) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895)); *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995) ("**[A]ny issue not expressly or impliedly disposed of on appeal** [is] available for consideration by the trial court on remand.") (emphasis added); *United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) (same); *Stacy v. Colvin*, 825 F.3d 563, 568 (9th Cir. 2016) (district court is allowed "to reexamine **any issue** on remand that is **not inconsistent with the mandate**") (emphasis added); *Reyes v. City of Santa Ana*, No. 21-55940, 2022 WL 14424085, at *1 (9th Cir. Oct. 25, 2022) (rule of mandate "allows a lower court to decide **anything not foreclosed by the mandate**") (emphasis added); *G.P.P., Inc. v. Guardian Prot. Prods., Inc.*, No. 22-15569, 2023 WL 4311611, at *2 (9th Cir. July 3, 2023) (district court "**free to reconsider**" an issue on remand where "**it was not 'clear' that the issue was foreclosed** by [the Ninth Circuit's] mandate") (emphasis added).

[11] The Ninth Circuit typically refers to a "limited remand" in a few specific contexts, which do not apply here: (1) when remanding a sentencing order to correct a particular error (as opposed to remanding for a de novo resentencing), *e.g.*, *United States v. Ameline*, 409 F.3d 1073, 1079-80 (9th Cir. 2005) ("limited remand" procedure is the most efficient way to determine whether the district judge "would have imposed a materially different sentence" if he knew sentencing guidelines were advisory); and (2) when remanding to the district court to resolve particular questions before deciding the appeal, *e.g.*, *United States v. Washington,* 172 F.3d 1116, 1118 (9th (Continued…)

1    In reality, the mandate consists of the ***entire*** opinion, and in construing the mandate, the Court must

2    read the entire opinion "holistically." *Stacy*, 825 F.3d at 568. *See also, e.g.*, 14A Cyc. of Federal

3    Proc. § 69:17 (3d ed.) ("[T]he nature of the lower court's remaining tasks is discerned not simply

4    from the language of the judgment, but from the judgment in combination with the accompanying

5    opinion."). The Court may also consider "the procedural posture and substantive law from which

6    [the opinion] arises." *Kellington*, 217 F.3d at 1093. Even a cursory glance at the Panel's *Wit III*

7    opinion makes clear that the last, summary paragraph contains only a fraction of the Panel's rulings,

8    many others of which necessarily raise questions this Court must answer to carry out the mandate.[12]

9         UBH makes a second, and even more fundamental, error by equating the Panel's reversal

10   of a portion of the judgment with dismissal of the underlying claims. *See, e.g.*, Dist. ECF No. 604

11   at 11 (arguing that "the Court is without authority to conduct further proceedings [on the denial of

12   benefit claim] other than to enter judgment in UBH's favor"). If the Panel required the Court to

13   dismiss any claims, it would have said so. It did not; nor did the Panel's reasoning imply that any

14   claim should be dismissed.

15        Appellate review encompasses orders that led up to the judgment, and appellate reversals

16   may require district courts to correct errors in those orders. The Panel's reversal of a portion of the

17   judgment based on an error in the class certification order means that the Court cannot recertify the

18   ***same*** claims for the ***same*** reasons the Panel held to be invalid, but it does not preclude certification

19   of a narrower class consistent with the appellate decision, *see infra* § III.B.1, and it certainly does

20   not require dismissal of the Named Plaintiffs' individual claims. Likewise, the Panel's reversal of

21

22   _____

     Cir. 1999) ("We have used the term 'limited remand' to describe a remand to the district court for
23   proceedings prior to this court's consideration of the merits of an appeal."); *Quach v. Cross*, 216 F.
     App'x 666, 666-67 (9th Cir. 2007) (ordering limited remand to determine whether district court's
24   decision should be certified as appealable under Rule 54(b), and otherwise retaining jurisdiction);
     *Radu v. Shon*, 62 F.4th 1165, 1171 (9th Cir. 2023) (ordering limited remand to clarify aspects of
25   its order "while retaining jurisdiction to avoid further delay").

26        [12] The only way that the exhaustion question, alone, could resolve every issue on remand
     would be if UBH conceded that once the Court holds that Plaintiffs' breach of fiduciary duty claim
27   is not just a benefits claim in disguise—as the Court has already found, having ruled that UBH
     designed its Guidelines to protect its own bottom line, rather than acting in the Plaintiffs' interests,
28   *see infra* § III.A.2—the Court should enter the same judgment ordering the same relief, but solely
     on the breach of fiduciary duty claim.

1    the Court's liability decisions "to the extent" they were based on the wrong standard, just like

2    reversal of a verdict because it was based on an invalid jury instruction, simply means that the Court

3    must determine on remand whether the evidence supports liability under the correct standard. *See,*

4    *e.g.*, *Jeldness v. Pearce*, 30 F.3d 1220, 1231 (9th Cir. 1994) ("[W]hen a district court's findings are

5    based upon an incorrect legal standard, the appropriate remedy is to remand so that findings can be

6    made in accordance with the applicable legal standard."). Nothing in the Ninth Circuit's decision

7    entitles UBH to dismissal of either Plaintiffs' denial of benefits claims or their breach of fiduciary

8    duty claims.

9        In short, the Panel did not order a "limited" remand. It did not direct the Court to dismiss

10   any claims; nor did it instruct the Court to enter judgment in favor of either party. Accordingly, this

11   Court has the power "to consider and rule on the entire case on remand," as long as it does so

12   "consistent with the issues decided by the appellate court." 5 Am. Jur. 2d Appellate Review § 688.

13   **II.    Issues Resolved by the Court of Appeals**

14       The Court's first task on remand is to determine what issues were resolved by the Panel on

15   appeal. *Kellington*, 217 F.3d at 1093. Plaintiffs summarize those matters below, by category.

16       *Standing and Causation*: The Panel found the Plaintiffs have Article III standing to assert

17   both their breach of fiduciary duty and denial of benefits claims, regardless of whether they suffered

18   monetary losses. *Wit III*, 79 F.4th at 1082-83. In analyzing standing, moreover, the Panel clearly

19   rejected UBH's lead argument on appeal: that the Plaintiffs had failed to prove causation as to their

20   denial of benefits claim. UBH's Appeal Br., App. ECF No. 25 at 17. As the Panel explained, the

21   harm Plaintiffs seek to redress through their denial of benefits claim is "the arbitrary and capricious

22   adjudication of benefits claims," which "presents a material risk to their interest in fair adjudication

23   of their entitlement to their contractual benefits." *Wit III*, 79 F.4th at 1083. Proving that injury, the

24   Panel held, does not require Plaintiffs to demonstrate "that they were, or will be, entitled to

25   benefits." *Id*. In concluding that the injury is also particularized, the Panel found that "[t]he fact

26   that Plaintiffs did not ask the court to determine whether they were individually entitled to benefits

27   does not change the fact that the Guidelines materially affected each Plaintiff." *Id*. The Panel also

28   concluded that the material risk to Plaintiffs of having their entitlement to benefits adjudicated

unfairly is "fairly traceable" to UBH's misconduct of "using . . . improper Guidelines in denying Plaintiffs' coverage requests." *Id.* In other words, the Panel held in no uncertain terms that "there is a causal connection between the injury and the defendant's challenged conduct." *Id.*

*Class Certification on the Breach of Fiduciary Duty Claim*: The Panel held that "any challenge to certification of the breach of fiduciary duty claim [is] forfeited," thereby leaving "class certification as to that claim intact." *Id.* at 1084 n.5. This ruling, accordingly, means that all three of the certified classes remain certified and unchanged for purposes of the breach of fiduciary duty claim.

*Class Certification on the Denial of Benefits Claim*: The Panel held that the Court erred in certifying the denial of benefits claim for a reprocessing remedy because the certified classes included individuals who did not show that they "might be entitled to benefits under the proper standard" if their benefit claims were reprocessed. *Id.* at 1084. Specifically, "claimants who were denied coverage solely based on unchallenged provisions of [the] Guidelines" and claimants "whose claims were denied *in part* based on the Guidelines," but also based on independent reasons, are not entitled to reprocessing and should not have been included in classes seeking that relief. *Id.* at 1085.[13] For that reason, the Panel "reverse[d] this part of the district court's class certification order." *Id.* at 1086.

*Merits-Related Findings and Conclusions*: The Panel explicitly mentioned a number of this Court's findings and conclusions that it was leaving "intact" because UBH did not appeal them and/or because the Panel found no error:

---

[13] Contrary to UBH's argument, the Panel did not reverse either the class certification or liability rulings because of any failure of causation. Dist. ECF No. 604 at 9-10. The Panel held that Plaintiffs had not established a right to reprocessing relief for everyone in the certified classes because not all class members were eligible to receive benefits even if their claims were reprocessed under the correct standard. Thus, to the extent the Panel's ruling was concerned with causation, it identified a shortfall only with respect to a remedy, not to liability. Indeed, the panel ***rejected*** UBH's argument that the Plaintiffs could not prove causation without showing "that they were, or will be, entitled to benefits." *Wit III*, 79 F.4th at 1083. And the Panel ***affirmed*** this Court's merits ruling that "UBH abused its discretion" in denying benefits pursuant to its Guidelines "because the challenged portions of the Guidelines did not *accurately* reflect GASC." *Id.* at 1088 n.6. The Panel's discussion in Section IV of *Wit III*, by contrast, is all about—and only about—how to show that a reprocessing remedy is appropriate *relief* for a wrongful denial of benefits. *Id.* at 1083-86.

- The "portions of the district court's judgment finding the Guidelines were impermissibly inconsistent with state-mandated criteria" remain "intact" because UBH did not appeal them. *Id.*
- The Court's factual findings that "in addition to [its] structural conflict of interest, . . . UBH also had a financial conflict because it was incentivized to keep benefit expenses down" were not clearly erroneous. *Id.* at 1087.
- The Court's conclusion that "the challenged portions of the Guidelines represented UBH's *implementation* of the GASC requirement" was not clearly erroneous. *Id.* at 1088.
- "[I]t was not error for the district court to rule that UBH abused its discretion because the challenged portions of the Guidelines did not *accurately* reflect GASC." *Id.* at 1088 n.6.

Regardless of whether the Panel specifically called them out, though, *all* of this Court's factual findings remain in effect because UBH did not challenge any of them as clearly erroneous on appeal.

### III.    Issues To Be Resolved on Remand

In this section, Plaintiffs identify certain questions the Court can and should decide in order to bring the case to a final resolution consistent with the Ninth Circuit's mandate. *See, e.g.*, *Odima*, 53 F.3d at 1497 ("[A]ny issue not expressly or impliedly disposed of on appeal [is] available for consideration by the trial court on remand.").

#### A.    Issues the Court Should Resolve Immediately Upon Completion of the Scope of Remand Briefing

As the Court requested, the parties will submit four rounds of briefing addressing the scope of the remand. Dist. ECF No. 610 (setting briefing schedule). That schedule provides more than enough time and briefing space for the parties to address the substance of the following issues, on which the Court can rule immediately without the need for any further factual findings. Plaintiffs submit that, in the interests of justice, the Court should do so without delay.

#### 1.    The Court Should Clarify that it Interpreted the Plans Correctly.

The Court found UBH liable on the merits of Plaintiffs' denial of benefits claim because, while "[o]ne condition of coverage under each class member's Plan was that the services for which coverage was requested are consistent with [GASC] and/or the standards mandated by state law," the Guidelines UBH used to implement that condition "were unreasonable and an abuse of

discretion because they were more restrictive than [GASC]" and "did not adhere to [the applicable] state law requirements." FFCL, 2019 WL 1033730, at *54-55 (¶¶ 211-213). Nonetheless, UBH argued on appeal that the Court mistakenly predicated its ruling on a belief that the Plans required coverage of **all** services that are consistent with generally accepted standards of care. *See, e.g.*, UBH's Appeal Br., App. ECF No. 25 at 15, 34, 56-58, 60-62. Plaintiffs showed in their appeal brief and rehearing petitions that "the district court made no such mistake." *Wit III*, 79 F.4th at 1088.[14] Even so, the Panel expressed concern that the Court's "statements on this issue are conflicting." *Id*.[15]

Concluding that it would have been error to interpret the Plans' GASC requirement as the **only** condition of coverage, the Panel "reverse[d] the district court's judgment that UBH wrongfully denied benefits to the named Plaintiffs **to the extent** the district court concluded the Plans require coverage for all care consistent with GASC." *Id.* (emphasis added). Then, reasoning that the Court's ruling on the breach of fiduciary duty claim also "relied heavily on its conclusion that the Guidelines impermissibly deviated from GASC," *id*. at 1088 n.7, the Panel reversed the judgment on that claim, as well, "**to the extent**" it was based on—and "intertwined with"—the same "erroneous interpretation of the Plans." *Wit III*, 79 F.4th at 1089 (emphasis added); *see also id.* at 1088 n.7 (opinion "does not disturb" the Court's findings underlying judgment on the breach of

---

[14] *See* Pls.-Appellees' Consolidated Answering Br. (Redacted), App. ECF No. 81 (June 24, 2021) ("Plaintiffs' Appeal Brief") at 20-21, 68; First Rehearing Petition, App. ECF No. 97-1 at 12-14; Second Rehearing Petition, App. ECF No. 128 at 22-23.

[15] The Panel cited two of the Court's statements as "conflicting" with the correct plan interpretation. *Wit III*, 79 F.4th at 1088. The first is a sentence in the Court's Partial Decertification Order that reiterates a reference in the Class Certification Order to the Plaintiffs' evidence that all of the class members' Plans contain a GASC requirement. *See* Partial Decert. Order, 2020 WL 6462401, at *2 (quoting Class Cert. Order, 317 F.R.D. at 129). The sentence does not say that GASC is the *only* requirement for coverage, nor does it imply such a holding, especially in light of the Court's plain statement of the correct Plan interpretation earlier in the Class Certification Order. 317 F.R.D. at 111. The second statement that concerned the Panel was the Court's directive in the reprocessing injunction that UBH should "re-evaluate only whether the proposed treatment at the requested level of care was consistent with generally accepted standards of care." *Wit III*, 79 F.4th at 1088; *see also* Judgment, Dist. ECF No. 531 at 7. That sentence does not purport to interpret the Plans to require coverage of all services consistent with GASC, but rather limits UBH's reprocessing review to the wrongful denial reason that had been invalidated in the case (i.e., the Guideline reason) and to apply GASC rather than the invalid Guideline in that context.

1   fiduciary claim "to the extent they were not intertwined with an incorrect interpretation of the

2   Plans").[16]

3          At the same time, the Panel affirmed the Judgment "[t]o the extent the district court

4   concluded that the challenged portions of the Guidelines represented UBH's *implementation* of the

5   GASC requirement," ruling there was "no clear error" in that finding. *Wit III*, 79 F.4th at 1088. The

6   Panel also affirmed the Court's legal conclusion that "UBH abused its discretion because the

7   challenged portions of the Guidelines did not *accurately* reflect GASC," rejecting UBH's argument

8   to the contrary. *Id.* at 1088 n.6. In sum, the Panel reversed the judgment on the merits of both claims

9   only "to the extent" the Court erroneously interpreted the Plans' GASC requirement as the sole

10  condition of coverage, but it affirmed the judgment "to the extent" the Court correctly interpreted

11  the GASC requirement as one condition of coverage, but not the only one.

12         Carrying out the mandate, accordingly, necessarily entails clarifying the basis for the

13  Court's ruling. *See, e.g.*, 14A Cyc. of Fed. Proc. § 69:15 (3d ed.) ("The interpretation of a mandate

14  is directed to the lower court's common sense . . . ."); 5 Am. Jur. 2d Appellate Review § 688 ("[T]he

15  lower court's actions after the mandate is issued need not be specifically mentioned in the opinion

16  of the appellate court, but only need be consistent with it."). Fortunately, this is a simple matter.

17  This Court never interpreted the Plaintiffs' or Class Members' Plans as requiring coverage for ***all***

18  care that is consistent with GASC. Instead, the Court explicitly held that compliance with GASC

19  was "one (though ***not the only***) condition of coverage" under the Plans, and that UBH used its

20  Guidelines to decide whether that condition was satisfied. *See* Class Cert. Order, 317 F.R.D. at 111

21  (emphasis added). The Court reiterated that interpretation consistently throughout the case—

22

23

24

25

26

27         [16] As discussed below, *infra* § III.A.2, the Court's conclusion that UBH breached its
    fiduciary duties by prioritizing its own financial interests when developing its Guidelines did not
28  turn on plan interpretation, but rather on the extensive evidence of UBH's disloyalty.

PLAINTIFFS' OPENING BRIEF ON
SCOPE OF REMAND
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

1 including at summary judgment,[17] at trial,[18] in its post-trial Findings of Fact and Conclusions of

2 Law, [19] and in the Judgment. [20] The Judgment provides a particularly clear and succinct

3 encapsulation of the Court's interpretation of what the Plans required:

> 5. The terms of the plans of each class member of the Wit and Alexander Guidelines
> Classes required, **as one condition of coverage**, that services be consistent with
> generally accepted standards of care. UBH uses its Guidelines to interpret and apply
> those plan terms, . . .
>
> 6. The class members had a right, under ERISA and their plans, to have UBH
> adjudicate whether requested services met that condition according to criteria that
> were, in fact, consistent with generally accepted standards of care.

8 Dist. ECF No. 531 at 2 (¶¶ 5-6) (emphasis added). In light of this clear record, no further factual

---

[17] Summary Judgment Order, *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2017
WL 3478775, at *1 (N.D. Cal. Aug. 14, 2017) ("The Court has found . . . that the Plans of all of the
named Plaintiffs and of the Sample Plaintiffs required 'as **one (though not the only) condition of
coverage** that the mental health or substance use disorder treatment at issue must be consistent with
generally accepted standards of care.'") (emphasis added) (quoting Class Cert. Order, 317 F.R.D.
at 111).

[18] For example, the Court's colloquy with UBH's counsel during closing arguments clearly
demonstrates the Court's understanding as to how the Plans operate:

> THE COURT: Do you agree that it is a **necessary but not sufficient condition to
> coverage under all of the plans** that the treatment at issue be consistent with
> generally accepted standards of care?
>
> MR. RUTHERFORD: Yes, Your Honor. It's one condition but not the only
> condition.
>
> THE COURT: So every plan, every plan requires as a condition -- **not the only
> condition, there are other conditions, there are other exclusions** -- requires that
> the treatment at issue be consistent with the generally accepted standards of care?
>
> MR. RUTHERFORD: Yes. And I'm going --
>
> THE COURT: And the generally accepted standards of care in terms of level of
> treatment are defined by UBH in its Level of Care Guidelines?
>
> MR. RUTHERFORD: Yes.

Trial Tr. at 1876:10-25 (emphasis added); *see also* Trial Tr. at 1879:9-15 (Court stating: "Plaintiffs'
argument here is that **one of the conditions . . . not a sufficient condition for coverage, but a
necessary condition,** as you just said, is that it be a generally accepted standard of care treatment.
You define it through your Level of Care Guidelines**. That's what UBH does.") (emphasis
added).

[19] FFCL, 2019 WL 1033730, at *13 (¶ 53) ("Every class member's health benefit plan
includes, as **one condition of coverage**, a requirement that the requested treatment must be
consistent with generally accepted standards of care. . . . On the other hand, Plaintiffs do not dispute
that **a service that is consistent with generally accepted standards of care may, nonetheless, be
excluded from coverage under a particular class member's plan**.") (emphasis added); *see also
id.* at *10 (¶ 39) (UBH used its Guidelines "to establish criteria consistent with generally accepted
standards for determining the appropriate level of care.").

[20] Judgment, Dist. ECF No. 531 at 2 (¶¶ 5-6).

findings are necessary. The Court need only state, when construing the mandate, that its merits rulings were based on the plan interpretation approved by the Court of Appeals, and not on the interpretation the Court of Appeals rejected. By doing so, the Court will make clear that its judgment on the merits of the denial of benefits claims **and** the breach of fiduciary duty claims were, in fact, wholly **affirmed** by the Ninth Circuit.

Stated differently, the Panel's conditional "to the extent" reversals do not change the judgment, because the Court did not do what UBH told the Panel it had done. The Panel reversed the judgment on the merits of the Plaintiffs' denial of benefits claims only "to the extent" the Court read the Plans to require coverage for all care that is consistent with GASC, but the Court did not do that. *Wit III*, 79 F.4th at 1088-89. The same is true of the Panel's reversal of the judgment on Plaintiffs' breach of fiduciary duty claims; it, too, applies only "to the extent" the Court erroneously interpreted the plans, *id.* at 1089, which, again, the Court did not do—and which would only matter in any event if the Court's findings as to UBH's breaches of loyalty were "intertwined" with that erroneous interpretation, *id.* at 1088 n.7, which they were not. The "to the extent" reversals, accordingly, have no effect. What really matters is that the Panel **affirmed** the Court's rulings "to the extent" the Court interpreted the Plans to require satisfaction of GASC as one condition of coverage, *id.* at 1088, which is exactly what the Court did.[21] To carry out the mandate, therefore, the Court must simply clarify that it interpreted the Plans in the same way the Panel does, which means the Court must re-enter judgment in the Plaintiffs' favor on the merits of **both** claims. *See, e.g.*, *Kellington*, 217 F.3d at 1092 ("[L]ower courts are obliged to execute the terms of a mandate" when they are clear.).

---

[21] The Panel, moreover, affirmed or otherwise left "intact" this Court's rulings on all of the other elements of the denial of benefits claim, as well. *See Wit III*, 79 F.4th at 1088 (finding "no clear error" in the Court's conclusion "that the challenged portions of the Guidelines represented UBH's *implementation* of the GASC requirement"); *id.* at 1088 n.6 (rejecting UBH's argument that "substantial evidence supports the challenged portions of UBH's Guidelines" and holding that "it was not error for the district court to rule that UBH abused its discretion because the challenged portions of the Guidelines did not *accurately* reflect GASC"); *id.* at 1086 (leaving "intact" the "portions of the district court's judgment finding the Guidelines were impermissibly inconsistent with state-mandated criteria" because UBH did not challenge those findings).

**2.      The Court Should Hold that No Exhaustion Requirement Applies to Plaintiffs' Breach of Fiduciary Duty Claim.**

In *Wit III*, the Panel reaffirmed the general rule that administrative "exhaustion is not required for statutory breach of fiduciary duty claims" under ERISA, but noted that "exhaustion *is* required if a plaintiff's statutory claim is a disguised claim for benefits." 79 F.4th at 1089 (citing *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1294 (9th Cir. 2014) and *Diaz v. United Agr. Emp. Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1484 (9th Cir. 1995)). The Panel, accordingly, directed the Court on remand to "determine the threshold question of whether Plaintiffs' breach of fiduciary duty claim is a 'disguised claim for benefits,' subject to the exhaustion requirement." 79 F.4th at 1089 (quoting *Spinedex*, 770 F.3d at 1294).[22]

Answering this question is also a simple matter. All the Court needs to do is apply the extensive factual findings it has already made—and which the Panel affirmed, *Wit III*, 79 F.4th at 1088 n.7—that UBH breached its fiduciary duties by developing and adopting as its standard GASC criteria Guidelines that were designed to serve, and did serve, its own interests rather than the interests of plan participants and beneficiaries. *See* FFCL, 2019 WL 1033730, at *5 (¶ 17) (describing allegation that UBH breached its fiduciary duties, *inter alia*, by "prioritizing cost savings over members' interests"); *id.* at *45-49 (¶¶ 168-189) (factual findings on UBH's self-serving Guideline development process). That fiduciary breach is distinct from (and antecedent to) UBH's wrongful denials of the class members' benefits by applying the tainted Guidelines.[23]

As the Court previously held, "when it adopts and applies its Guidelines to coverage determinations," UBH acts as a plan fiduciary and is therefore required to abide by the statutory fiduciary duties in 29 U.S.C. § 1104(a)(1). FFCL, 2019 WL 1033730, at *51 (¶ 197). Among other

---

[22] This Court has not previously addressed this question. *See* FFCL, 2019 WL 1033730, at *51 (¶ 195) (assuming without deciding applicability of exhaustion requirement).

[23] To be sure, denying benefit claims on grounds that conflict with plan terms *also* violated UBH's fiduciary duties under ERISA. *See* 29 U.S.C. § 1104(a)(1)(D). But as the Panel acknowledged, the Court's "conclusion that the Guidelines impermissibly deviated from GASC . . . was not the only finding relevant to the [Court's] judgment on the breach of fiduciary duties claim." *Wit III*, 79 F.4th at 1088 n.7. *See also* FFCL, 2019 WL 1033730, at *5 (¶ 17) (summarizing *two* factual bases for Plaintiffs' breach of fiduciary duty claims). UBH's decision to prioritize its own interests by deliberately developing restrictive Guidelines designed to reduce the amount it paid in benefits breached its duties of loyalty and care regardless of whether the Guidelines complied with plan terms.

1   things, ERISA imposes a strict duty of loyalty, which requires UBH to carry out its claims

2   administration duties "solely in the interest of the participants and beneficiaries [of the plans] and

3   . . . for the exclusive purpose of . . . providing benefits" to the plan members. 29 U.S.C.

4   § 1104(a)(1)(A). The statute further demands that fiduciaries like UBH act with "care, skill,

5   prudence, and diligence." *Id.* § 1104(a)(1)(B). The Court found from the extensive trial evidence

6   "that the emphasis on cost-cutting that was embedded in UBH's Guideline development process

7   actually tainted the process, causing UBH to make decisions about Guidelines based as much or

8   more on its own bottom line as on the interests of the plan members, to whom it owes a fiduciary

9   duty." FFCL, 2019 WL 1033730, at *53 (¶ 202); *see also id.* at *47 (¶ 180) ("The Court finds that

10  the financial incentives discussed above have, in fact, infected the Guideline development

11  process."); *id.* at *53 (¶ 203) (concluding that UBH breached its fiduciary duties of loyalty and

12  care, among others).

13          The Court, moreover, based its liability ruling on its detailed findings of fact, which were

14  in turn based on a trial record that was "replete with evidence that UBH's Guidelines were viewed

15  as an important tool for meeting utilization management targets, 'mitigating' the impact of the 2008

16  Parity Act, and keeping 'benex' down." *Id.* at *48 (¶ 182); *see also* Pls.' Post-Trial Br. (Sealed),

17  Dist. ECF No. 391-4 (Dec. 11, 2017) at 66-72 (discussing and citing trial evidence as to UBH's

18  self-interest); Pls.' Post-Trial Proposed Findings of Fact (Sealed), Dist. ECF No. 391-6 (Dec. 11,

19  2017) at 104-112 (citing trial evidence). The Court found, among other things, that UBH's

20  "financial self-interest was a critical consideration in deciding what criteria would be used to make

21  coverage decisions and when Guidelines would be revised," FFCL, 2019 WL 1033730, at *48

22  (¶ 184), including "UBH's decision *not* to adopt the ASAM Criteria for making substance use

23  disorder coverage determinations." *Id.* at *49 (¶ 187). Indeed, the Court found that "[t]he *only*

24  reason UBH declined to adopt the ASAM Criteria was that its Finance Department wouldn't sign

25  off on the change." *Id.* at *53 (¶ 202); *see also id.* (¶ 202) (finding "UBH's Finance Department

26  had veto power with respect to the Guidelines and used it to prohibit even a change in the Guidelines

27  that all of its clinicians had recommended."). And, the Court found, "[t]o conceal its misconduct,

28  UBH lied to state regulators and UBH executives with responsibility for drafting and implementing

the [G]uidelines deliberately attempted to mislead the Court at trial in this matter." Remedies Order, 2020 WL 6479273, at *1; *see also* FFCL, 2019 WL 1033730, at *7-9 (¶¶ 25-35) (finding "UBH's experts . . . had serious credibility problems"). The trial record, in other words, is more than sufficient to support the conclusion that UBH's fiduciary breaches are not just benefit denials in disguise. Placing its own financial interests ahead of plan members' interests when UBH promulgated the Guidelines was a distinct, actionable breach of fiduciary duty under ERISA. *See, e.g.*, *Davis v. United Health Grp. Inc.*, No. C21-01220RSM, 2023 WL 2955277, at *4-5 (W.D. Wash. Apr. 14, 2023) (holding that, even though United's interpretation of the plan could be deemed reasonable, "United cannot apply this interpretation where . . . United did so in alleged violation of its ERISA fiduciary duties," given the allegation that the interpretation was "influenced by its own economic self-interest").

A "disguised benefit claim" is a breach of fiduciary duty claim that—like a denial of benefits claim—focuses exclusively on "an individual's claim for plan benefits under a particularized set of facts." *Diaz*, 50 F.3d at 1483. By contrast, Plaintiffs' breach of fiduciary duty claim is focused on UBH's pre-denial disloyalty in creating criteria that were intentionally designed to prioritize UBH's financial interests at the expense of the ERISA plan members whose interests UBH was supposed to be serving. For exactly that reason, this Court has previously recognized that the fiduciary duty claim is distinct from the denial of benefits claim. *See, e.g.*, FFCL, 2019 WL 1033730, at *5 (¶¶ 17-18) (describing Plaintiffs' claims). Moreover, as was the case in *Spinedex*, this Court has found that UBH's fiduciary breaches were "willful and systematic." 770 F.3d at 1294; *see also, e.g.*, Remedies Order, 2020 WL 6479273, at *1 ("UBH engaged in this course of conduct deliberately, to protect its bottom line."); *see also, e.g.*, FFCL, 2019 WL 1033730, at *8 (¶ 28) (UBH made use of its Guidelines "mandatory" for its Peer Reviewers); *id.* at *10 (¶ 37) (UBH's reviewers applied the Guidelines "consistently" and "as written"); *id.* (¶ 39) (the Guidelines were "intended to standardize coverage determinations with respect to the appropriate level of care"); *id.* at *47 (¶ 179) (UBH maintained "a uniform set of Guidelines for fully insured and self-funded plans"). And the relief Plaintiffs seek for their breach of fiduciary duty claims are equitable remedies, not the payment of benefits. *Cf., e.g.*, *Spinedex*, 770 F.3d at 1294 (breach of fiduciary duty claim

1    seeking injunctive relief benefiting the plan as a whole was not subject to exhaustion); *compare*

2    *Wit III*, 79 F.4th at 1079 (describing relief Plaintiffs seek for each claim).

3           Accordingly, the Court should hold that no exhaustion requirement applies to Plaintiffs'

4    statutory breach of fiduciary duty claim and, as such, that all members of the three classes are

5    entitled to relief for that claim.[24]

6                 **3.      The Court Should Promptly Lift the Stay on the Prospective**
                           **Injunctive Relief and the Special Master Order.**
7
8           As the Court knows, after the Panel issued *Wit I*, the parties stipulated to, and the Court

9    entered, a stay of enforcement of the Remedies Order and all further proceedings before the Special

10   Master "pending the issuance of mandate from the Ninth Circuit on the Merits Appeal." Dist. ECF

11   No. 585 (Mar. 25, 2022) at 4; *see also* Dist. ECF No. 586 (Mar. 28, 2022) at 4. The mandate that

12   ultimately issued from the Court of Appeals, however, is vastly different than the outright reversal

13   ordered in *Wit I*. As shown above, enforcing the mandate from the Court of Appeals calls for the

14   Court to reinstate its rulings in the Plaintiffs' favor on the merits of *both* of their claims. *See supra*

15   § III.A.1. And answering the exhaustion question posed by the Panel necessarily clarifies that all

16   class members are entitled to relief for UBH's breaches of fiduciary duty. *See supra* § III.A.2. The

17   Panel's rulings in *Wit III*, moreover, did not alter any aspect of the forward-looking injunctive relief

18   or Special Master Order, nor did the appeal call into question any of the reasons the Court found it

19   necessary to impose that relief to protect the class members' interests. *See generally Wit III*, 79

20   F.4th 1068.[25]

21          The Court imposed a ten-year injunction on UBH and appointed a Special Master to ensure

22   _____

23          [24] The Panel instructed that, if the Court were to conclude that the breach of fiduciary duty
     claim is merely a benefits claim in disguise, it would then have to "determine if [the exhaustion]
24   requirement was satisfied or otherwise excused in light of our resolution of the issues presented in
     this appeal." 79 F.4th at 1089. Plaintiffs do not believe the Court will need to answer these questions
25   with respect to the breach of fiduciary duty claim because, as explained, no exhaustion requirement
     applies to that claim in any event. If the Court were to disagree with Plaintiffs' conclusion, however,
26   Plaintiffs request an opportunity to brief the additional questions the Panel posed.

27          [25] The Panel's rulings also did not alter any aspect of the declaratory judgment this Court
     previously entered. Dist. ECF No. 531 at 1-6; *compare generally Wit III*, 79 F.4th 1068.
28   Accordingly, the Court should re-issue the same declaratory relief for the class members when it
     enters its final judgment.

that UBH faithfully carried out the injunction. That relief has now been on hold for well over a year, even though UBH *did not even challenge it* on appeal. The Court, therefore, should lift the stay on those remedies at the earliest possible moment, without requiring additional motions practice, which would only needlessly delay reactivating these important protections for the class members.

### B.     Issues on Which the Court Should Order Briefing or Motions Practice

In addition to the matters identified above, the Court should consider and decide the following issues, after expedited briefing or motions practice and (limited) additional factual findings.

#### 1.     The Court Should Consider and Decide Plaintiffs' Motion to Recertify the Denial of Benefits Claim and to Certify Subclasses to Seek Reprocessing Relief.

As discussed above, *supra* p. 6, the Panel partially reversed the class certification order because it found that the reprocessing relief the Plaintiffs sought for that claim was not available to two discrete groups of class members: those whose claims were denied based solely on "unchallenged provisions" of the Guidelines, and those whose claims were denied "*in part* based on the Guidelines" but also for independent reasons. *Wit III*, 79 F.4th at 1085-86.[26] Because reprocessing would not change those other reasons for denial, those class members would still be "ineligible for benefits" after reprocessing, which the Panel suggested would make that form of relief "a 'useless formality'" for those class members. *Id.* at 1084 (quoting *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095-96 (9th Cir. 1985)); *see also id.* at 1086. At the same time, the Panel affirmed the Court's ruling on the merits of the wrongful denial of benefits claim, after explicitly holding that proving their benefit denials were arbitrary and capricious did not require Plaintiffs to demonstrate "that they were, or will be, entitled to benefits." *Id.* at 1083. The Panel upheld this

---

[26] The Panel's concern about including class members whose denials were based solely on unchallenged portions of the Guidelines does not apply to the State Mandate Class, since UBH was prohibited by law from using *any* portion of its own Guidelines to determine those class members' claims. FFCL, 2019 WL 1033730, at *42-45. In other words, there are no "unchallenged portions" of the Guidelines for purposes of the State Mandate Class's claim.

PLAINTIFFS' OPENING BRIEF ON
SCOPE OF REMAND
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

Court's finding that "the challenged portions of the Guidelines represented UBH's *implementation* of the GASC requirement" and affirmed its ruling that "UBH abused its discretion because the challenged portions of the Guidelines did not *accurately* reflect GASC." *Id.* at 1088 & 1088 n.6. The Panel, furthermore, took care to note that Plaintiffs sought other forms of relief for the denial of benefits claim in addition to reprocessing, *id.* at 1079 n.3, and that UBH's arguments on appeal only disputed class certification in relation to the reprocessing remedy for the wrongful benefit denials. *Id.* at 1084 n.5.

In other words, the Panel's opinion affirms that UBH abused its discretion and injured *all* the class members whose denials were based on the challenged portions of the Guidelines, *regardless* of whether the class members would be eligible for benefits after reprocessing. The Panel's opinion also affirms that class members whose denials were based only on the challenged portions of the Guidelines, and not on any independent ground, *are* entitled to a reprocessing remedy. In remanding to the Court "for further proceedings," the Panel left it up to this Court to determine how to implement those rulings—including whether to certify new subclasses limited only to those class members and order UBH to reprocess their claims.

A district court has the discretion to modify its class certification order at ***any time*** before final judgment. Fed. R. Civ. P. 23(c)(1)(C).[27] Consistent with that rule, an appellate court's reversal of a class certification order does not preclude the district court, on remand, from certifying a different class or subclass. *See, e.g.*, *Dukes v. Wal-Mart Stores, Inc.*, No. C 01-02252 CRB, 2012 WL 4329009, at *4 (N.D. Cal. Sept. 21, 2012) ("An appellate ruling rejecting class certification does not change [the district court's] ability to consider a renewed certification motion.") (denying motion to dismiss amended class action complaint after class certification reversed by Supreme

---

[27] UBH's argument that the usual rule does not apply here because final judgment has already been entered in the case is particularly disingenuous. Dist. ECF No. 604 at 11. Even UBH will have to concede that the judgment this Court previously entered has been reversed (albeit in part) and the case has been remanded for further proceedings. *Wit III*, 79 F.4th at 1089-90. The task of entering final judgment is again up to this Court, and until it does so, the Court has broad discretion on how to proceed. *See, e.g.*, 18B Fed. Prac. & Proc. Juris. § 4478.3 (3d ed.) ("Appellate courts . . . ordinarily do not enter the final judgment; that task is accomplished on remand to the district court."); *Rogers v. Hill*, 289 U.S. 582, 587-88 (1933) (absent "unequivocal[]" direction to the contrary, district court on remand has discretion to permit the plaintiff to "file additional pleadings, vary or expand the issues, and take other proceedings").

Court); *Van v. LLR, Inc.*, No. 3:18-CV-00197-JMK, 2023 WL 3338630, at *2 (D. Alaska May 10, 2023) (finding district court was "well within its discretion to entertain" the "[p]laintiffs' proposed narrowed class definition" even though it was "inarguably outside the scope of the Ninth Circuit's remand," and explaining that the "proposed narrower class definition is the natural and foreseeable outcome of the Ninth Circuit's decision"); *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007) (Second Circuit explaining that its prior "ruling rejected class certification only of the class as certified by the District Court," which did not preclude the plaintiffs "from returning to the District Court to seek certification of a more modest class, one as to which the Rule 23 criteria might be met, according to the standards we have outlined"); *see also id.* ("District courts have ample discretion to consider (or to decline to consider) a revised class certification motion after an initial denial.").

One instructive example is *Glaberson v. Comcast Corp.*, 295 F.R.D. 95 (E.D. Pa. 2013). There, after the Supreme Court reversed class certification and the Third Circuit remanded the case "for proceedings consistent with the Supreme Court's opinion," *id.* at 98, the district court certified a new class. *Id.* at 100. The defendant moved to strike the plaintiffs' class recertification motion, arguing (like UBH does here) that the Supreme Court's reversal precluded any further class certification proceedings "even as to a narrowed class." *Id.* at 98.[28] The district court rejected that argument, explaining: "[F]ollowing remand, the district court has discretion to consider a modified class certification, as long as it is consistent with the issues decided by the appellate court." *Id.* at 100 (citing *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d at 73). After extensive discussion and analysis of case law from other circuits, the district court held that the "[p]laintiffs' ability to certify a significantly narrowed class . . . [was] a matter left open by the mandate, since it was not decided by the Supreme Court in the first appeal and deemed finally settled." *Id.* at 103 (cleaned up). *See also id.* at 102 ("That case law clearly states that any issue left open by an appellate court may be addressed at the discretion of the district court, as long as it is consistent with the appellate court's

---

[28] Just like UBH, the defendant in *Glaberson* "argued that under the rule of mandate, an inferior court has no power or authority to deviate from the mandate issued by an appellate court, and the Supreme Court's outright reversal was completely dispositive of whether the Class could ever meet Rule 23(b)(3)." 295 F.R.D. at 98; *compare, e.g.*, Dist. ECF No. 604 at 11-12.

decision, ***irrespective of an explicit order remanding the matter for further proceedings.***") (emphasis added); *Dukes*, 2012 WL 4329009, at *5 (rule of mandate did not preclude plaintiffs from bringing "a narrower class-action claim, which the Supreme Court has yet to consider and did not foreclose"). Likewise, the Panel's opinion here leaves open recertification of the class members' denial of benefits claims insofar as the Classes seek remedies *other* than reprocessing, as well as certification of narrower subclasses defined so that each subclass member meets the opinion's standard for reprocessing relief on the denial of benefits claim.

Accordingly, the Court should set a briefing schedule for Plaintiffs' proposed motion to modify the class certification order.

### 2. If the Court Grants Plaintiffs' Motion to Modify the Class Certification Order, the Court Should Consider Whether the Class and Subclass Members Are Excused from Exhausting their Denial of Benefits Claims.

After the Court rules on Plaintiffs' motion to recertify the denial of benefits claims and to certify new subclasses, and if the motion is granted, Plaintiffs respectfully request that the Court set an expedited briefing schedule to address whether the Court should reinstate two of its prior rulings: (1) that the class representatives' exhaustion excuses exhaustion by absent class members, *see* FFCL, 2019 WL 1033730, at *50 (¶ 190); and (2) that exhaustion of the subclass members' denial of benefits claims is excused because it would have been futile, *id.* (¶ 191). Plaintiffs will argue that the Court should reissue both findings.[29]

The Court previously found that each of the Named Plaintiffs exhausted their administrative remedies, a finding UBH did not dispute previously before this Court or challenge on appeal. FFCL, 2019 WL 1033730, at *1-4 (¶¶ 3-12); *see also id.* at *50 (¶ 190). The Court then excused exhaustion by the absent class members (as to both the breach of fiduciary duty and denial of benefits claims) because, it found, the Named Plaintiffs' administrative appeals fulfilled the purposes of UBH's internal grievance procedures by putting UBH on notice of the absent class members' claims. *Id.* at *50 (¶ 190). Further, the Court found that "requiring class members to exhaust administrative

---

[29] Plaintiffs do not include their substantive arguments on these issues in this brief because the Court will not need to resolve these questions unless it entertains, and grants, Plaintiffs' motion.

remedies would be futile" because "the same Guidelines UBH used to make initial coverage determinations were also used to decide appeals." *Id*. (¶ 191). On appeal, UBH argued that the latter two rulings were erroneous.

In *Wit III*, the Panel "decline[d] to reach the merits" of UBH's argument that the Court "erred in holding that the class members were excused from exhausting their claims." 79 F.4th at 1089. In so doing, the Panel retracted the rulings it had made in *Wit II* that exhaustion by class representatives is insufficient to satisfy the requirement and that futility does not excuse "contractual" exhaustion. *Compare Wit II*, 58 F.4th at 1097-98, *with Wit III*, 79 F.4th at 1088-89.[30] Consequently, both questions are open on remand and the Court can, and should, address them anew. *See, e.g.*, *Odima*, 53 F.3d at 1497 (holding "mandate did not encompass" an issue the Ninth Circuit expressly declined to consider before remanding); *Stacy*, 825 F.3d at 568 ("[A]ny issue not expressly or impliedly disposed of on appeal [is] available for consideration by the trial court on remand.").

### 3. The Court Should Order Reprocessing Consistent with the Panel's Guidance.

After resolving the class certification and exhaustion questions, the Court should decide what relief to award to the Named Plaintiffs and to the class members (if denial of benefits classes and reprocessing subclasses are certified) for UBH's wrongful benefit denials. Specifically, the Court should decide whether to order UBH to reprocess the subclass members' benefit claims.

The Panel confirmed that reprocessing is available as a form of relief for an improper denial of benefits "where a plaintiff has shown that his or her claim was denied based on the wrong standard and that he or she **might be** entitled to benefits under the proper standard." *Wit III*, 79 F.4th at 1084 (emphasis added); *see also id.* at 1083 (proving injury from an arbitrary and capricious benefit denial does not require a plaintiff to prove "that they were, or will be, entitled to benefits"). While the Court must, of course, respect the Panel's ruling defining that two-part test, nothing in

---

[30] Plaintiffs' petition for rehearing en banc following *Wit II* pointed out that those exhaustion rulings by the Panel were erroneous and would have created a split between the Ninth Circuit and its sister courts. Second Rehearing Petition, App. ECF No. 128 at 17-21. *See also* Pls.' Appeal Br., App. ECF No. 81 at 74-84.

1   the Panel's opinion precludes the Court from finding that the Named Plaintiffs and the subclass

2   members **satisfy** that test. *See, e.g.*, *Kellington*, 217 F.3d at 1101 (after reversal of judgment of

3   acquittal, district court on remand was free to consider and grant motion for new trial that was never

4   considered by Court of Appeals); *Cote*, 51 F.3d at 181-82 (where convictions were reversed

5   because of a defect in jury instructions, district court had authority to order a new trial); *Nguyen v.*

6   *United States*, 792 F.2d 1500, 1502 (9th Cir. 1986) (mandate ordering entry of summary judgment

7   in favor of defendant required district court to enter summary judgment but did not preclude court

8   from allowing plaintiff to amend complaint immediately thereafter); 5 Am. Jur. 2d Appellate

9   Review § 688 ("The lower court on remand has a reasonable amount of discretion in complying

10  with a mandate, as long as it is consistent with the issues decided by the appellate court.").

11      As discussed above, *supra* §§ II. & III.A.1, the Panel has already affirmed the Court's ruling

12  that UBH abused its discretion by using its Guidelines to decide whether the class members'

13  treatments were consistent with GASC—that is, the Panel affirmed the finding that UBH denied

14  the Plaintiffs' and Class Members' claims "based on the wrong standard." With respect to the

15  second part of the test enunciated by the Panel, the Court should make additional factual findings,

16  based on the trial record, to clarify that none of the Named Plaintiffs' or subclass members' denials

17  were (1) based solely on unchallenged portions of the Guidelines; or (2) based, in part, on

18  independent (non-Guideline) reasons. After making those additional factual findings, the Court

19  should order UBH to reprocess the claims, amending its prior Remedies Order as appropriate to

20  comply with the guidance provided in the Panel's opinion.

21  **4.    The Court Should Decide Whether to Order any Additional
22        Remedies as Appropriate Equitable Relief for the Breach of
        Fiduciary Duty Claims.**

23      Finally, after resolving each of the questions outlined above, the Court may need to consider

24  whether to modify the Remedies Order to award additional equitable relief for UBH's breach of

25  fiduciary duty in deploying Guidelines it developed in its own financial self-interest rather than in

26  the interests of plan members. Depending upon how the matters presented above are resolved,

27  additional equitable remedies may be necessary to provide adequate relief to the class members. In

28  that event, Plaintiffs will seek such relief. *See generally, e.g.*, Remedies Order, 2020 WL 6479273,

at *1 ("Courts also have a duty to 'enforce the remedy which is most advantageous to the participants and most conducive to effectuating the purposes of the trust.'") (quoting *Donovan v. Mazzola*, 716 F.2d 1226, 1235 (9th Cir. 1983)).

**IV.    Conclusion**

In summary, Plaintiffs respectfully request that in construing the mandate from the Court of Appeals, the Court enter an order as follows:

1. Clarifying that the Court interpreted the Plans correctly as stated in the Panel's opinion, and accordingly, the Court's rulings on the merits of the Plaintiffs' denial of benefits claim and their breach of fiduciary duty claim have been affirmed by the Court of Appeals, *supra* § III.A.1;

2. Holding that Plaintiffs' breach of fiduciary duty claims are not "disguised benefit claims" and no exhaustion requirement applies to those claims, *supra* § III.A.2;

3. Immediately lifting the stay of the previously-awarded prospective injunctive relief and the Special Master order, *supra* § III.A.3; and

4. Setting a briefing schedule for Plaintiffs' motion to modify the class certification order to re-certify the denial of benefits claims for class treatment and to certify subclasses to pursue reprocessing relief for those claims, *supra* § III.B.1.

Dated: October 18, 2023                                  Respectfully submitted,

                                                                        ZUCKERMAN SPAEDER LLP

                                                                        /s/ Caroline E. Reynolds
                                                                        Caroline E. Reynolds
                                                                        D. Brian Hufford
                                                                        Jason S. Cowart
                                                                        Joshua Mathew

                                                                        PSYCH-APPEAL, INC.
                                                                        Meiram Bendat

                                                                        *Attorneys for Plaintiffs and the Classes*