PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
7 West Figueroa Street, Suite 300
PMB# 300059
Santa Barbara, CA 93101
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs and the Classes*
*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

DAVID AND NATASHA WIT, et al.,

Plaintiffs,

v.

UNITED BEHAVIORAL HEALTH,

Defendant.

GARY ALEXANDER, et al.,

Plaintiffs,

v.

UNITED BEHAVIORAL HEALTH,

Defendant.

Case No. 3:14-CV-02346-JCS
Related Case No. 3:14-CV-05337-JCS

**PLAINTIFFS' REPLY BRIEF ON SCOPE OF REMAND**

# TABLE OF CONTENTS


**Page**

Table of Authorities ........ ii

I. This Court Has the Authority on Remand to Decide All Open Issues........ 2

II. The Panel's Reversal, in Part, of the Class Certification Order was Not a Ruling in UBH's Favor on the Merits........ 3

III. No Further Proceedings are Needed for the Court to Clarify its Interpretation of the Plans........ 5

IV. No Further Proceedings Are Needed For the Court to Hold that Plaintiffs' Breach of Fiduciary Duty Claim is Not a "Disguised Claim for Benefits"........ 7

V. The Court has the Authority on Remand to Consider a Motion to Modify its Class Certification Order to Add Narrower Subclasses to Seek a Reprocessing Remedy........ 9

VI. The Court Should Not Amend its Prospective Injunction as UBH Proposes........ 12

VII. Conclusion........ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Creech v. Tewalt*,
84 F.4th 777 (9th Cir. 2023) .......... 2, 3, 9, 14

*Diaz v. United Agric. Emp. Welfare Benefit Plan & Tr.*,
50 F.3d 1478 (9th Cir. 1995) .......... 7, 8

*Firth v. United States*,
554 F.2d 990 (9th Cir. 1977) .......... 11

*Hall v. City of Los Angeles*,
697 F.3d 1059 (9th Cir. 2012) .......... 2, 3

*Mendez-Gutierrez v. Gonzales*,
444 F.3d 1168 (9th Cir. 2006) .......... 2

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
770 F.3d 1282 (9th Cir. 2014) .......... 7, 8

*Stephens v. Pension Benefit Guar. Corp.*,
755 F.3d 959 (D.C. Cir. 2014) .......... 8

*Wit v. United Behavioral Health*,
79 F.4th 1068 (9th Cir. 2023) ("*Wit III*") .......... *passim*

*Wit v. United Behavioral Health*,
317 F.R.D. 106 (N.D. Cal. 2016) ("Class Certification Order") .......... 9

*Wit v. United Behavioral Health*,
2019 WL 1033730 (N.D. Cal Mar. 5, 2019) ("FFCL") .......... 8, 9

*Wit v. United Behavioral Health*,
2020 WL 6462401 (N.D. Cal. Nov. 3, 2020) ("Partial Decert. Order") .......... 11

*Wit v. United Behavioral Health*,
2020 WL 6479273 (N.D. Cal. Nov. 3, 2020) ("Remedies Order") .......... 1, 13

**Statutes**

29 U.S.C. § 1104(a)(1)(A) .......... 8

29 U.S.C. § 1132(a)(1)(B) .......... 3, 4, 5, 12

29 U.S.C. § 1132(a)(3) .......... 3

Rules Enabling Act .......... 4, 10

**Rules**

Fed. R. Civ. P. 23(c)(1)(C) .......... 10

Fed. R. Civ. P. 23(f) .......... 10

Fed. R. Civ. P. 52(b) .......... 6

Fed. R. Civ. P. 59(b) .......... 6

This Court found that UBH breached its fiduciary duties to tens of thousands of class members by prioritizing its own financial interests over the members' interests when it developed its excessively restrictive Guidelines, and that UBH abused its discretion in denying the class members' requests for coverage because it used the Guidelines to implement their plans' generally accepted standards of care ("GASC") requirements. *See, e.g.*, Dist. ECF No. 531 ("Judgment") at 2–6. The Court further found that "UBH engaged in this course of conduct deliberately, to protect its bottom line," and that, "[t]o conceal its misconduct, UBH lied to state regulators and UBH executives with responsibility for drafting and implementing the guidelines deliberately attempted to mislead the Court at trial in this matter." *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2020 WL 6479273, at *1 (N.D. Cal. Nov. 3, 2020) ("Remedies Order"). UBH did not dispute any of this Court's factual findings on appeal, and the Court of Appeals upheld this Court's determination that UBH's Guidelines were inconsistent with the GASC exclusions in the plans. *Wit v. United Behavioral Health*, 79 F.4th 1068, 1088 & n.6 (9th Cir. 2023) ("*Wit III*"). Yet UBH takes the remarkable position on remand that an appellate decision affirming some specified rulings, reversing other specified rulings, and otherwise remanding leaves the Court powerless to prevent future misconduct or remedy past misconduct—for *any* member of the certified classes. UBH's arguments cannot be squared with the controlling "rule of mandate" or with the Panel's opinion.

To muddy the waters, UBH attempts to portray *Plaintiffs* as the wrongdoers here—accusing Plaintiffs of seeking a "complete do-over of this decade-long proceeding" by going back on their "strategic choice" to assert a facial challenge to UBH's Guidelines rather than proving that each class member was actually entitled to benefits. *See, e.g.*, Opp'n 1, 3, 13, 28, 33. This is just not true. The Panel did not impose any "actual entitlement to benefits" standard—either as an element of an ERISA claim, or as a prerequisite to a reprocessing remedy. For that reason, everything Plaintiffs have asked the Court to do on remand—e.g., clarify certain rulings, consider a motion to certify subclasses to apply the Panel's holding to the trial evidence—is consistent with Plaintiffs' approach to the case from the beginning.

UBH's other arguments are equally faulty. They rest on selective, incomplete, and misleadingly altered quotations from the Panel's opinion; they are inconsistent and contradictory;

and they fail to give effect to the *entirety* of the Panel's opinion, construed reasonably and to avoid injustice. *See* Pls.' Br. 9 (citing authorities on the rule of mandate). Rather than construing the mandate as UBH urges, the Court "must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Creech v. Tewalt*, 84 F.4th 777, 787 (9th Cir. 2023) (cleaned up).

## I. This Court Has the Authority on Remand to Decide All Open Issues.

UBH's position on the Court's remand authority is not just wrong, it is at war with itself. UBH concedes that the Panel did not order a special "limited remand." Opp'n 12–13 n.3. And UBH does not really disagree with Plaintiffs that, absent a **clear** limit on the scope of the remand, this Court is "free to decide anything not foreclosed by the mandate." *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012).[1] UBH argues that the Panel implicitly imposed a clear limit in the final summary paragraph of the opinion by directing the Court to decide whether the breach of fiduciary duty claim is a "disguised claim for benefits." *See* Opp'n 12–13, 17. But the Panel did **not** say the remand was limited to that single question—nor could it be, given the other questions the Panel's opinion also leaves unresolved.[2]

Tellingly, even UBH recognizes that deciding the "disguised claim for benefits" issue cannot be the Court's only task on remand—i.e., that the direction to resolve that issue cannot be construed as a limitation prohibiting consideration of other issues left open by the Panel's opinion.

---

[1] UBH suggests that the remand is nevertheless limited because the Panel did not use a talismanic phrase like "for further proceedings consistent with this opinion." Opp'n 13; *see also id.* at 15. UBH cites no authority to support such a rule. Indeed, the Court of Appeals does not have to say anything special to give the district court authority to consider unresolved issues on remand—an "open" remand is the default rule. *See* Pls.' Br. 8–9 & n.10 (citing cases). That is why any **limits** on the scope of a remand have to be clear. *See, e.g.*, *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172 (9th Cir. 2006) ("a district court is limited by this court's remand in situations where the scope of the remand is **clear**") (emphasis added); *Hall*, 697 F.3d at 1067 (similar).

[2] As Plaintiffs pointed out, Pls.' Br. 10 n.12, interpreting the opinion that way would mean that if the Court decides (as it should) that no exhaustion requirement applies to Plaintiffs' breach of fiduciary duty claim, then the Court must simply re-enter the original judgment as to that claim. UBH offers no response to that point. And of course, the opinion itself makes clear that if the Court were to conclude Plaintiffs' breach of fiduciary duty claim is subject to an exhaustion requirement, it would then have to consider whether "that requirement was satisfied or otherwise excused." *Wit III*, 79 F.4th at 1089.

*See, e.g.*, Opp'n 19–20 (arguing for clarification as to rulings on breach of fiduciary duty claim); Opp'n 21–22 (arguing for changes to remedies order). By arguing that this Court has the authority to address **some** open issues beyond the discrete question of administrative exhaustion, UBH necessarily concedes that the Court has the authority to address **all** the open issues.

UBH points to no limit on the scope of the remand actually appearing in the Panel's opinion, let alone a "clear" one. Nor does UBH present any authority indicating that compliance with the mandate means anything more than adhering to the Panel's rulings on the issues it decided on appeal.[3] This Court is not just "free to decide" everything else, *Hall*, 697 F.3d at 1067; it has an obligation to do so, to carry out the Court of Appeals' mandate and give effect to both its letter and its spirit. *Creech*, 84 F.4th at 787.

### II. The Panel's Reversal, in Part, of the Class Certification Order was Not a Ruling in UBH's Favor on the Merits.

UBH attempts to spin straw into gold by converting the Court of Appeals' partial reversal of class certification (on the ground that the Court certified an overbroad class for purposes of Plaintiffs' request for reprocessing relief) into a directive to enter judgment for UBH on the merits for a failure to prove a causation element of an ERISA § 1132(a)(1)(B) claim. Opp'n 17–19. This argument is nothing more than UBH's wishful thinking.

Nothing in the Panel's opinion says that UBH won on the merits of the denial of benefits claim; much less that it won because Plaintiffs supposedly failed to prove causation at trial.[4] The Panel partially reversed the class certification decision because the classes, as certified to pursue claims under §§ 1132(a)(1)(B) and (a)(3) and seek remedies including declaratory and injunctive relief, as well as reprocessing, included some members who, the Panel concluded, would not be

---

[3] UBH's effort to distinguish the cases Plaintiffs cited on the rule of mandate falls flat for the same reason. *See* Opp'n 15–16 & nn. 6–7. As UBH's own discussion of those cases shows, when attempting to determine the scope of a remand, district courts have to determine what issues the Court of Appeals resolved and treat them as settled; all other matters remain open.

[4] For example, UBH has no citations to back up its claims that the Panel "held that Plaintiffs failed on the merits to prove they were harmed by an ERISA violation attributable to UBH and therefore reversed judgment on the denial of benefits claim," Opp'n 17, or that the Panel's "principal basis for reversing on the denial of benefits claim [was that] Plaintiffs failed to make the required showings of causation and harm at trial," *id.* 23. That is because the Panel made no such rulings.

eligible for reprocessing. *Wit III*, 79 F.4th at 1086. Thus, the Panel's decision limits certification of the classes for purposes of a reprocessing remedy.

To support its baseless argument that this was really a ruling on the merits, UBH points to the Panel's statement at the beginning of Section V that "the same errors present in the district court's denial of benefits class certification order also infected its merits and remedy determination." Opp'n 18–19 (quoting *Wit III*, 79 F.4th at 1086). But that is not a holding on the merits of Plaintiffs' § 1132(a)(1)(B) claim; it's referring to the "merits" of a "claim" for reprocessing. The next sentence in the opinion makes it clear that the errors the Panel was referring to were the rulings underlying the reprocessing order, which the Panel found to violate the Rules Enabling Act's constraints on class-wide relief. *Wit III*, 79 F.4th at 1086 ("the district court determined that remand [i.e., for reprocessing] was appropriate anytime UBH referenced any portion of the Guidelines in denying the claims," "[r]ather than determining whether UBH denied Plaintiffs' claims under a flawed provision of the Guidelines"). The Rules Enabling Act problem the Panel identified was that, because of how the classes were defined, the judgment granted reprocessing relief to class members who, the Panel believed, would not be entitled to such relief in an individual case—specifically, class members whose denial letters indicated their denial was based on unchallenged provisions of the Guidelines or on additional grounds independent of the Guidelines. *Id.* As such, the class certification order implicitly resolved a question about the merits of a claim *for reprocessing* for those class members. The Panel's unelaborated statement acknowledging that fact does not add to or change any other part of the Panel's disposition.

UBH also mischaracterizes Section IV of the opinion as though the Panel were examining causation as an element of ERISA claims, rather than identifying a prerequisite for reprocessing relief. Opp'n 18–19. Replacing the start of the Panel's statement with its own words, UBH claims, for example, that "[t]he Ninth Circuit held that **to be entitled to relief under ERISA**, each plaintiff would need to show 'that his or her claim was denied based on the wrong standard *and* that he or she might be entitled to benefits under the proper standard.'" Opp'n 18 (incompletely quoting *Wit III*, 79 F.4th at 1084) (emphasis added). The real beginning to that sentence shows what the Panel was actually discussing: "[w]e have ordered **remand for claim reprocessing** where a plaintiff has

shown . . . ." *Wit III*, 79 F.4th at 1084 (emphasis added).[5] ERISA provides for a wide range of equitable remedies; a reprocessing injunction is just one of them. The Panel's decision to partially decertify because the classes include individuals who are not entitled to reprocessing is just that: a partial reversal of a class certification order, not a direction to enter judgment in favor of UBH, and it was based on eligibility for a particular remedy, not on the merits of Plaintiffs' § 1132(a)(1)(B) claims.[6] The opinion, moreover, says nothing about the claims of the individual class representatives, so it cannot be construed as directing the entry of judgment on their claims—even if UBH were right (which it is not) that the opinion precludes recertification of narrower reprocessing subclasses.

If the Court of Appeals had directed entry of judgment in UBH's favor, UBH would be able to point to something in the opinion that says that. But there is nothing. To the contrary, Section V ends by reversing the denial of benefits claim only "***to the extent*** the district court concluded the Plans require coverage for all care consistent with GASC," *Wit III*, 79 F.4th at 1088 (emphasis added)—a conditional disposition that would make no sense if the Court of Appeals had actually ordered entry of judgment in UBH's favor on the claim on causation grounds, as UBH contends.

## III. No Further Proceedings are Needed for the Court to Clarify its Interpretation of the Plans.

UBH agrees with Plaintiffs that the Panel's conditional, "to the extent" reversals cry out for clarification. Opp'n 2, 19–22. Yet UBH repeatedly insists that the Panel reversed the judgment on the denial of benefits claim even if the Court did not misinterpret the Plans to require coverage of all treatment that is consistent with GASC (as UBH claimed it did), rather than as excluding

---

[5] UBH similarly says the Panel held that Plaintiffs "**could not maintain a denial of benefits claim** based on UBH's allegedly defective LOCGs 'without a showing that application of the wrong standard could have prejudiced the claimant.'" Opp'n 18 (quoting *Wit III*, 79 F.4th at 1084) (emphasis added). But again, that is not what the Panel said; those are UBH's words grafted onto a partial quotation. That sentence actually begins: "[w]e have never held that a plaintiff is **entitled to reprocessing** without a showing . . . ." *Wit III*, 79 F.4th at 1084 (emphasis added).

[6] Congress conferred a right of action under § 1132(a)(1)(B) not only to "recover benefits due" but also to "enforce . . . rights" and "clarify . . . rights to future benefits." 29 U.S.C. § 1132(a)(1)(B). Class members who the Panel ruled were not entitled to reprocessing as a means of recovering benefits due would still be entitled to enforce and clarify their rights under the plans through injunctive and declaratory relief.

coverage inconsistent with GASC. *See, e.g.*, Opp'n 11, 19, 22–23.[7] But the Panel deemed the record unclear on this point, not conclusively supporting *UBH's* position.

UBH can only argue otherwise by ignoring the ruling in Section V of the opinion and misleadingly quoting from the Panel's summary of its rulings in Section VII. The Panel quite explicitly did *not* decide whether the Court committed the error UBH asserted—instead, it identified a dispute between the parties on the issue, threw up its hands, and reversed only "to the extent" the Court erred. *Wit III*, 79 F.4th at 1088. In Section V, the Panel states, "[w]e reverse the district court's judgment that UBH wrongfully denied benefits to the named Plaintiffs **to the extent** the district court concluded the Plans require coverage for all care consistent with GASC." *Id.* (emphasis added). In Section VII, the Panel states: "**On the merits, the district court erred to the extent it determined that the Plans require the Guidelines to be coextensive with GASC. Therefore,** the judgment on Plaintiffs' denial of benefits claim is reversed . . . ." *Id.* at 1089 (emphasis added). UBH just excises all the bolded words from the latter quotation, *e.g.*, Opp'n 11, 23, ignores Section V altogether, and asserts that "the Ninth Circuit ultimately did not limit its reversal of the judgment on the denial of benefits claim 'to the extent' it relied on this Court's erroneous Plan interpretation." Opp'n 23. But that is *exactly* what the Panel did. That is a remand for clarification to determine whether the judgment should stand (based on the understanding that the Guidelines were supposed to implement the GASC exclusion) or be reversed (based on the misinterpretation UBH claimed the Court had relied on).

The Court does not need to gather any new evidence to resolve this issue. The Court need only restate what it has already said a number of times, to eliminate any confusion about whether it predicated judgment on a belief that the plans required coverage of all treatment consistent with GASC. Contrary to UBH's assertions, no legal rules preclude the Court from doing so,[8] and carrying out the Court of Appeals' mandate requires it.

---

[7] Plaintiffs demonstrated that this Court never misinterpreted the Plans. Pls.' Br. 15–16 & nn.17–19. UBH does not respond to Plaintiffs' argument, but merely parrots the reasons the Panel gave for raising the question that now needs to be clarified. Opp'n 20.

[8] UBH repeatedly invokes Federal Rules of Civil Procedure 52(b) and 59(b), *see* Opp'n 29 n.17; *id.* 34–35, but those rules and their time limits have nothing to do with proceedings on remand.

### IV. No Further Proceedings Are Needed For the Court to Hold that Plaintiffs' Breach of Fiduciary Duty Claim is Not a "Disguised Claim for Benefits."

Plaintiffs' opening brief explained why—based on controlling law and the Court's unchallenged findings of fact—the Court can easily dispose of the question whether Plaintiffs' breach of fiduciary duty claim was merely a "disguised claim for benefits" subject to plan exhaustion requirements. Pls.' Br. 18–20. UBH's response, Opp'n 25–28, ignores the teachings of the very two cases the Panel cited to frame the inquiry.[9] *Wit III*, 79 F.4th at 1089 (citing *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1294 (9th Cir. 2014) and *Diaz v. United Agric. Emp. Welfare Benefit Plan & Tr.*, 50 F.3d 1478, 1484 (9th Cir. 1995)).[10]

As Plaintiffs noted, Pls.' Br. 20, the Ninth Circuit in *Diaz* referred to "the kind of scenario . . . that has led this and other Circuits to establish the claimant's need to go the administrative route first rather than turning directly to the courts" as involving "an individual's claim for plan benefits under a particularized set of facts." *Diaz*, 50 F.3d at 1483. But the fiduciary breach claim in this case arises from UBH's development of its Guidelines—standard clinical coverage policies applicable to all of its plans—in its own financial self-interest and in violation of its fiduciary duties

[9] Although UBH refuses to acknowledge it, Opp'n 25–26, the law is well settled that "exhaustion is not required for statutory breach of fiduciary duty claims." *Wit III*, 79 F.4th at 1089 (citing cases). The task before this Court is simply to decide whether Plaintiffs' statutory breach of fiduciary duty claim falls outside the rule (because it is not a real statutory claim, but a "disguised claim for benefits" under the contract), not to reexamine the rule itself. The Panel's opinion did not leave that question open.

[10] UBH makes a halfhearted run at postponing the Court's consideration of this question, arguing that the present briefing is limited to "the *scope* of the issues to be decided on remand, not the substance of those issues." Opp'n 25 n.13. But UBH's brief includes a fulsome response to Plaintiffs' argument, and UBH does not (and cannot) offer any reason why four rounds of briefing are insufficient to present the parties' positions on this straightforward question.

At the same time, UBH tries to put the cart before the horse by arguing that this Court should not even consider certifying reprocessing subclasses because some class members' denial of benefits claims may be subject to an exhaustion requirement. Opp'n 35. Plaintiffs categorically disagree with UBH's contention that doctrines like futility do not apply to ERISA plans' contractual exhaustion requirements. *Id.*; *see also id.* 27–28 & n.16. But, as Plaintiffs explained in their opening brief, Pls.' Br. 25–26, the most rational way for the Court to proceed is first by considering whether to certify the subclasses, and then considering whether members of the subclasses are excused from applicable exhaustion requirements. If the Court wishes to consider the latter question at an earlier point, Plaintiffs respectfully request an opportunity to brief the issues fully.

of loyalty and prudence under ERISA, not solely from its subsequent application of the Guidelines to individual claims under a particularized set of facts. That is a statutory violation.

This Court made unchallenged findings based on the evidence at trial that in developing the Guidelines, UBH did not act "solely in the interest of the participants and beneficiaries" in accord with 29 U.S.C. § 1104(a)(1)(A), but rather, UBH's "financial self-interest was a critical consideration." *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2019 WL 1033730, at *48 (N.D. Cal Mar. 5, 2019) ("FFCL"). UBH cites *Diaz* for the proposition that a plaintiff can't just repackage an individual claim for benefits as a statutory claim merely because the individual claim may implicate statutory requirements. Opp'n 26. But that observation has no bearing on Plaintiffs' claims here. The gravamen of Plaintiffs' breach of fiduciary duty claim is UBH's self-interested creation of excessively restrictive clinical coverage Guidelines to serve its own bottom line, in violation of its ERISA fiduciary duties. The fact that UBH subsequently applied the self-serving Guidelines to requests for coverage does not transform the crux of the claim into a mere "label." *Diaz*, 50 F.3d at 1484.[11] Every statutory violation under ERISA has *something* to do with protecting plan members' interest in their benefits—that is the whole purpose of the statute—so that cannot be enough to transform a statutory violation into a "disguised claim for benefits."

UBH does not even discuss *Spinedex*, the Ninth Circuit's most recent decision on this issue; it acknowledges the case only in parenthetical citations to the Panel's opinion and Plaintiffs' brief on appeal. Opp'n 25–26. But as Plaintiffs explained, Pls.' Br. 20, *Spinedex* held that exhaustion was not required when "United's alleged statutory violations were willful and systematic, . . . and [the plaintiff's] complaint sought injunctive relief that clearly will benefit the Plans." 770 F.3d at 1294 (cleaned up). The same is true here. UBH's adoption of the guidelines in its own interest was willful and systematic, and requiring UBH to cover services consistent with the plans (rather than

[11] As UBH's own case holds, because the Court "found a violation not of the terms of the [plans], but rather of ERISA . . . ," no exhaustion requirement applies. *Stephens v. Pension Benefit Guar. Corp.*, 755 F.3d 959, 967 (D.C. Cir. 2014) (cited in Opp'n at 26) (explaining that "the relevant question is not what action Appellants challenge . . . . Rather, the relevant inquiry is what forms the basis of Appellants' right to relief: the contractual terms of the pension plan or the provisions of ERISA and its regulations.").

narrowing everyone's coverage so it could increase its profits on fully-insured plans) benefits the plans as well as individual members.

In any case, UBH did not even offer an internal administrative review process through which a plan member could challenge the content of UBH's across-the-board Guidelines or its use of those Guidelines to make benefit determinations under that member's plan (and certainly not prospectively). The only internal administrative appeal process UBH offered was for review of individual benefit denials, not for adjudicating alleged breaches of fiduciary duty by UBH. Indeed, UBH has never even claimed that individual Peer Reviewers deciding appeals through its internal administrative process had any power to alter or invalidate the Guidelines. Nor could it—as the Court found based on the trial evidence, UBH's appellate reviewers, like UBH's front-line decisionmakers, were bound by the Guidelines. FFCL, 2019 WL 1033730, at *50 (¶ 191). The reasons for enforcing plan exhaustion requirements as a matter of federal common law developed under ERISA simply have no application to UBH's development of its company-wide Guidelines in violation of its statutory fiduciary duties.

## V. The Court has the Authority on Remand to Consider a Motion to Modify its Class Certification Order to Add Narrower Subclasses to Seek a Reprocessing Remedy.

UBH's argument that the Court of Appeals' mandate forecloses this Court's consideration of any motion to modify the class certification order, Opp'n 28–35, contravenes both the letter and the spirit of the Panel's opinion. *Creech*, 84 F.4th at 787 ("[D]istrict courts must implement both the letter and the spirit of the mandate . . . .") (cleaned up).

As a threshold matter, UBH is just not being honest when it argues "there is nothing for the court to 'modify.'" Opp'n 29. Of course there is; this Court did not certify separate classes for each claim and each remedy; it certified three classes, each of which asserted *both* claims and sought *all* remedies. *Wit v. United Behavioral Health*, 317 F.R.D. 106, 116–17 (N.D. Cal. 2016) ("Class Certification Order"). The Panel did not reverse the class certification order *in toto*, but only with respect to the denial of benefits claim insofar as the class members sought a reprocessing remedy. *Wit III*, 79 F.4th at 1086. And the Panel explicitly left class certification "intact" for the breach of

fiduciary duty claim, *id*. at 1084 n.5, as UBH reluctantly admits. Opp'n 10.[12] As UBH well knows, there are still three certified classes, and the Court has the authority and discretion to modify them at any time before it re-enters a final judgment. Fed. R. Civ. P. 23(c)(1)(C).

UBH next argues that because the Panel decided "[t]he issue of class certification," considering a motion to modify the class certification order *in any respect* would violate the mandate. Opp'n 29–30. This is also nonsense. The mandate, of course, prohibits the Court from re-certifying subclasses for purposes of the reprocessing remedy that include class members the Panel found were not entitled to that relief. But by the same token, the mandate leaves open reprocessing for class members who meet the Court of Appeals' standard for reprocessing, because that is entirely consistent with the Court of Appeals' understanding of the Rules Enabling Act. *Wit III*, 79 F.4th at 1086 (summarizing rationale for partially reversing class certification).

The Panel's ruling, therefore, does not foreclose the Court from considering certification of subclasses trimmed of class members who do not meet the Panel's reprocessing test.[13] Indeed, courts routinely re-certify classes after certification is reversed on appeal, consistent with guidance in the appellate court's opinion. *See* Pls.' Br. 23–25 (citing cases). UBH makes much of the fact that this most frequently happens when certification is reversed after a Rule 23(f) motion, and thus before a decision on the merits. Opp'n 30–31. But UBH fails to explain why that posture makes any difference here, where Plaintiffs merely seek to *narrow* the classes for purposes of one of the

---

[12] UBH misleadingly contends that the Panel "declined to reach the question of whether class certification of Plaintiffs' breach of fiduciary duty claim was proper," as though that issue remains open. Opp'n 10. In fact, the Panel noted that UBH "disputed class certification only on the grounds that Plaintiffs facially challenged the Guidelines and have asserted a 'novel reprocessing theory' to advance their denial of benefits claim on a class-wide basis" and held that "[t]his argument **does not implicate a Rules Enabling Act issue as to the fiduciary duty claim.**" *Wit III*, 79 F.4th at 1084 n.5 (emphasis added). For that reason, the Panel held that "any challenge to certification of the breach of fiduciary duty claim" is "forfeited" and that its "analysis leaves class certification as to that claim intact." *Id.*

[13] UBH frets that Plaintiffs seek to "certify a host of unspecified new classes and subclasses," Opp'n 29, but its concern is unwarranted. Plaintiffs have been as clear as they can be (before being permitted to file their motion) that they intend to seek to certify subclasses that consist only of the members of the currently certified classes who qualify for the reprocessing remedy under the test stated by the Panel. Pls.' Br. 25. Plaintiffs will seek to certify three subclasses because there are three certified classes.

remedies the Court awarded.[14] Nor does this require a "wholesale strategic do-over," as UBH claims. Opp'n 13. Plaintiffs are not asking to amend their complaint, re-do discovery, or hold a new trial. The existing trial evidence will support certification of the subclasses—Plaintiffs merely ask for the opportunity to make that showing.

UBH's next gambit is to claim that the Panel foreclosed consideration of reprocessing subclasses by holding that "the evidence and legal theories on which Plaintiffs chose to try their case were insufficient." Opp'n 14 (citing *Wit III*, 79 F.4th at 1086); *see also id.* at 15 (asserting without citation that the judgment was "reversed for insufficient evidence at trial."). But again, UBH relies on mischaracterization and incomplete quotation. What the Panel wrote, in reversing class certification, was: "In sum, **on this record** Plaintiffs have fallen short of demonstrating that all class members were denied a full and fair review of their claims or that such a common showing is possible." 79 F.4th at 1086 (emphasis added).[15] United omits the key caveat, "on this record," which recognizes that the Ninth Circuit's ruling may well be different if it is presented with a subclass that is more narrowly tailored to include only class members who meet the Panel's two-part reprocessing test.[16]

---

[14] For the same reason, UBH's argument about "one-way intervention," Opp'n 30, entirely misses the mark. The classes *were* certified before the Court ruled on liability. All Plaintiffs are proposing now is to remove some class members for purposes of one form of relief. No one is going to "intervene" in the case as a result of Plaintiffs' motion to modify. Indeed, this is no different than UBH's *own* motion to decertify, which resulted in class members being removed from the classes after the Court made findings on liability. *See generally*, *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2020 WL 6462401 (N.D. Cal. Nov. 3, 2020) ("Partial Decert. Order").

[15] UBH also emphasizes the last clause of the Panel's ruling, as though the Panel ruled that it is impossible to make the necessary showings to obtain reprocessing relief. Opp'n 33. But the Panel's ruling that the record before it on appeal does not demonstrate the necessary common showing is not the same thing as a ruling precluding Plaintiffs from making that showing, consistent with the Panel's instructions, on remand.

[16] This is also why UBH's attempt to liken this case to *Firth* comes to nothing. *See* Opp'n 16 (discussing *Firth v. United States*, 554 F.2d 990, 994 (9th Cir. 1977)). In *Firth*, the Court of Appeals emphasized that its reversal of a contributory negligence finding on the first appeal "was based on a thorough review of all of the evidence and consideration of the same arguments" the government pressed on the second appeal. 554 F.2d at 994. The court stressed that it "had before it and considered on the first appeal all of the evidence on the issue of contributory negligence, and the resulting mandate did not leave the matter open for reappraisal or clarification by the district court." *Id*. By contrast, here, the Panel identified a shortcoming in the record before it, which meant the Panel *could not* consider "all of the evidence" pertinent to the test it prescribed.

In the end, UBH tries to twist Plaintiffs' motion to modify into something it simply is not, claiming that Plaintiffs are abandoning their whole theory of the case and now intend to show that "individual class members were **actually entitled to benefits**." Opp'n 33–34 (emphasis added). UBH calls on the Court to exercise its discretion by declining to hear Plaintiffs' motion, as punishment for Plaintiffs' purportedly wrongful "strategic choice" not to make that showing earlier. Opp'n 1, 28–29, 32. But UBH's whole "strategic choice" narrative is based on a false premise: nothing about Plaintiffs' theory of the case—or their litigation strategy—has changed. Plaintiffs are not changing tactics to abandon a "facial challenge" to the Guidelines or try to prove "actual entitlement to benefits." Nor is there any reason to do that—the Panel did not impose any "actual entitlement to benefits" requirement for reprocessing relief, let alone impose any such standard to prove a § 1132(a)(1)(B) claim. Rather, the Panel was clear that to be entitled to reprocessing, Plaintiffs need to show "that application of the wrong standard ***could have*** prejudiced the claimant" because he or she "***might be*** entitled to benefits under the proper standard." *Wit III*, 79 F.4th at 1084 (emphasis added). Making that showing for a subset of class members, based on the existing trial record, does not reflect any change in Plaintiffs' "strategy."

The Panel's ruling makes clear that class members who *do* meet the Panel's test *are* entitled to reprocessing, and UBH does not (and could not) contend that there are no such class members. For that reason, construing the opinion to preclude relief for those class members would contradict both the letter and the spirit of the mandate. Instead, the Court should exercise its discretion to further the *just* resolution of this action by allowing Plaintiffs to file their motion to modify the class certification order so that the Court can authorize reprocessing for the class members who satisfy the Panel's reprocessing eligibility standard.

## VI. The Court Should Not Amend its Prospective Injunction as UBH Proposes.

Despite its own argument that there is but a single question before the Court on remand, UBH argues that the Court should revise its judgment and prospective injunction to make them more palatable to UBH. Opp'n 19–22. The Court ordered prospective injunctive relief to prevent further irreparable injury to class members, after Plaintiffs proved UBH engaged in a years-long

pattern of disloyal self-interest in its development of its Guidelines. The Court found there was a "significant danger of recurrent violation," given that (among other things) UBH's "violations were in no way 'isolated'"; that UBH's witnesses "were evasive and even tried to mislead the Court" at trial; that "UBH also knowingly misled Connecticut regulators about the scope of coverage afforded under its Guidelines"; and that "UBH executives put in place business practices that ensured that financial considerations would take precedence over faithful administration of class members' plans." Remedies Order, 2020 WL 6479273, at *42. UBH offers no valid justification for curtailing the prospective injunctive relief.

Instead, UBH again misleads. For one thing, UBH invents a ruling by the Ninth Circuit finding error in the injunction, which does not exist. Opp'n 21. The Panel did not consider the injunction at all, mentioning its existence only in passing. *Wit III*, 79 F.4th at 1081. As discussed, the Panel held that this Court "erred to the extent it determined that the Plans require the Guidelines to be coextensive with GASC." *Id.* at 1089. It did **not** hold, as UBH claims, "that it was 'err[or]' to 'require the Guidelines to be coextensive with GASC." Opp'n 21. Nor did the Panel impose any limitations on this Court's equitable power to enjoin further misconduct by UBH, as UBH claims. Opp'n 21–22.

In any case, the prospective injunction the Court ordered does not require UBH to "adopt medical necessity guidelines that [are] solely consistent with GASC," as UBH contends. Opp'n 20–21; *see also id.* at 23–24. The injunction orders UBH to "make any and all coverage-related determinations under ERISA-governed plans about whether services are consistent with [GASC] according to criteria that are consistent with [GASC] . . . ." Remedies Order, 2020 WL 6479273, at *54. The injunction further orders UBH to use specified sets of criteria, which the Court found to be consistent with GASC, for that purpose. *Id.* at *54–55. Nothing in the injunction precludes UBH from enforcing other plan exclusions. The prospective injunction is entirely consistent with the mandate from the Court of Appeals.

**VII. Conclusion**

The Court's duty on remand is to carry out the Court of Appeals' mandate, treating matters actually decided on appeal as resolved, and implementing "both the letter and the spirit of the

mandate." *Creech*, 84 F.4th at 787. Anything the Court of Appeals did not foreclose is within this Court's authority to decide. The Court should make the determinations Plaintiffs have requested, Pls. Br. 28, to bring this case to a conclusion and avoid injustice to the tens of thousands of class members UBH harmed through its years of callous, self-interested conduct.

Dated: November 20, 2023

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

/s/ Caroline E. Reynolds
Caroline E. Reynolds
D. Brian Hufford
Jason S. Cowart
Joshua Mathew

PSYCH-APPEAL, INC.
Meiram Bendat

*Attorneys for Plaintiffs and the Classes*