PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
7 West Figueroa Street, Suite 300
PMB# 300059
Santa Barbara, CA 93101
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs and the Classes*
*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

DAVID AND NATASHA WIT, et al.,

Plaintiffs,

v.

UNITED BEHAVIORAL HEALTH,

Defendant.

GARY ALEXANDER, et al.,

Plaintiffs,

v.

UNITED BEHAVIORAL HEALTH,

Defendant.

Case No. 3:14-CV-02346-JCS
Related Case No. 3:14-CV-05337-JCS

**PLAINTIFFS' OPPOSITION TO UBH'S MOTION FOR STAY PENDING PETITION FOR A WRIT OF MANDAMUS**

# TABLE OF CONTENTS

Page


I. UBH is Not Entitled to a Stay .......... 2

A. UBH Does Not, and Cannot, Show its Mandamus Petition is Likely to Succeed .......... 2

B. UBH Does Not, and Cannot, Show it is Likely to Suffer Irreparable Harm from Briefing Class Certification .......... 4

C. The Balance of Hardships Strongly Favors Plaintiffs .......... 8

II. The Court Should Not Exercise its Inherent Authority Over its Docket to Stay the Case .......... 9

III. Conclusion .......... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Postmates, Inc.*,
2020 WL 1066980 (N.D. Cal. Mar. 5, 2020) ..... 5

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) ..... 2, 4, 7

*Alascom, Inc. v. ITT N. Elec. Co.*,
727 F.2d 1419 (9th Cir. 1984) ..... 6

*Aliff v. Vervent, Inc.*,
2021 WL 2156183 (S.D. Cal. May 27, 2021) ..... 5

*Am. Trucking & Transp. Ins. Co. v. Nelson*,
2018 WL 3609538 (D. Mont. July 27, 2018) ..... 5

*Bradberry v. T–Mobile USA, Inc.*,
2007 U.S. Dist. LEXIS 58801 (N.D. Cal. 2007) ..... 6

*Burgess v. Tesoro Refining & Mktg. Co.*,
2011 WL 13217364 (C.D. Cal. June 6, 2011) ..... 5

*Castaneda v. Molinar*,
2008 WL 9449576 (C.D. Cal. May 20, 2008) ..... 5

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ..... 6

*Consumer Fin. Prot. Bureau v. D & D Mktg., Inc.*,
2017 WL 5974248 (C.D. Cal. Mar. 21, 2017) ..... 5

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020) ..... 4, 8

*Earl v. Boeing Co.*,
21 F.4th 895 (5th Cir. 2021) ..... 7

*F.T.C. v. Standard Oil Co. of Cal.*,
449 U.S. 232 (1980) ..... 4

*Guifu Li v. A Perfect Franchise, Inc.*,
2011 WL 2293221 (N.D. Cal. June 8, 2011) ..... 5, 6

*Henderson v. Duncan*,
779 F.2d 1421 (9th Cir. 1986) ..... 8

*Hilton v. Braunskill*,
481 U.S. 770 (1987) ..... 2

*In re Apple Inc.*,
52 F.4th 1360 (Fed. Cir. 2022) ..... 6

*In re Gallatin Cnty.*,
450 F. App'x 624 (9th Cir. 2011) ..... 4

*Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817 (9th Cir. 2020) .......... 2

*KEE Action Sports, LLC v. Shyang Huei Indus. Co.*, 2014 WL 5780812 (D. Or. Nov. 5, 2014) .......... 5

*Kern Cnty. Superintendent of Schs.-Valley Oaks Charter Sch. Tehachapi v. A.C.*, 2018 WL 4698312 (E.D. Cal. Sept. 28, 2018) .......... 5

*Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394 (1976) .......... 6

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) .......... 9

*Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) .......... 4

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) .......... 5

*Manrique v. Kolc*, 65 F. 4th 1037 (9th Cir. 2023) .......... 2

*Mohamed v. Uber Techs.*, 115 F. Supp. 3d 1024 (N.D. Cal. 2015) .......... 5

*Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716 (9th Cir. 2017) .......... 4

*Nken v. Holder*, 556 U.S. 418 (2009) .......... 2, 4, 8

*Pac. Cheese Co. v. Advanced Coil Tech., LLC*, 2019 WL 1062369 (D. Nev. Mar. 6, 2019) .......... 5, 8

*Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1 (1974) .......... 4

*Romero v. Securus Techs., Inc.*, 383 F. Supp. 3d 1069 (S.D. Cal. 2019) .......... 9

*Salhotra v. Simpson Strong-Tie Co., Inc.*, 2022 WL 1091799 (N.D. Cal. Apr. 12, 2022) .......... 7

*Sampson v. Murray*, 415 U.S. 61 (1974) .......... 5

*Second City Music, Inc. v. City of Chicago*, 333 F.3d 846 (7th Cir. 2003) .......... 7

*Shaw v. Bank of Am.*, 2017 WL 4409426 (S.D. Cal. Oct. 4, 2017) .......... 2

*United States v. Mitchell*, 971 F.3d 993 (9th Cir. 2020) .......... 2, 4

*Universal Semiconductor, Inc. v. Tuoi Vo*,
2016 WL 9211685 (N.D. Cal. Nov. 29, 2016) ........ 5

*Vizcaino v. U.S. Dist. Ct. for W. Dist. of Wash.*,
173 F.3d 713 (9th Cir. 1999) ........ 4, 5, 6

*Wit v. United Behavioral Health*,
2020 WL 6479273 (N.D. Cal. Nov. 3, 2020) ........ 8

**Statutes**

ERISA § 502(a)(1)(B) ........ 1, 3

From the very beginning of this case, UBH's primary legal strategy has been to mischaracterize the law, Plaintiffs' claims, the evidentiary record, and the rulings of this Court and now the Ninth Circuit, all in a cynical, self-interested effort to reduce ERISA and its promised protections to the barest minimum while nullifying UBH's fiduciary and contractual responsibilities to *get it right* when administering its members' potentially life-saving mental health and substance use disorder benefits. UBH's current gambit would have this Court sit on its hands while UBH attempts to wring a more favorable ruling out of the Ninth Circuit, while the more than 65,000 members of the *currently certified* classes, who have *won on the merits* of their breach of fiduciary duty claim, must continue to wait for the relief this Court awarded them more than three years ago. UBH desperately wants to deprive Plaintiffs of the opportunity to move to re-certify the existing class members' denial of benefits claims, and to certify narrow subclasses to seek reprocessing, because UBH knows that Plaintiffs' motion will put the lie to UBH's claim that its years of deliberately using the wrong standard to deny coverage "did not prejudice anyone." UBH knows Plaintiffs can show, based on the existing record, that very nearly all of the class members were denied coverage based on the challenged portions of the Guidelines, and therefore have meritorious claims under ERISA § 502(a)(1)(B)—even if only a subset of the class members will ultimately be entitled to one *form of relief* available to redress that claim (i.e., reprocessing). UBH's primary objective is to prevent Plaintiffs from even making that showing.

To that end, UBH is petitioning the Ninth Circuit for a writ of mandamus "directing this Court to enter judgment for UBH on Plaintiffs' denial of benefits claim and prohibiting further proceedings as to that claim." United Behavioral Health's Mot. for Stay Pending Petition for a Writ of Mandamus ("Mot."), ECF No. 631 at 2. In other words, UBH is misusing the mandamus mechanism to try to obtain rulings it previously sought, but did not win, on appeal—in effect, as a belated petition for a panel rehearing. In the meantime, it also wants to misuse its meritless petition to bring this case to yet another screeching halt.

UBH is not entitled to a stay. It does not (and cannot) meet its burden of proving any element of the established test for a stay. Even if it could, its request to stay the entire case is overbroad, since its mandamus petition, if granted, still would not dispose of the entire case. Plaintiffs and the

class members have been fighting, and waiting, long enough. It is time to bring this case to a conclusion, and there is no justification for failing to move forward.

## I. UBH is Not Entitled to a Stay.

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009); *see also, e.g.*, *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 824 (9th Cir. 2020) (same). Instead, the "party requesting a stay bears the burden of showing" that four factors support a stay:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 426, 433–34 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also United States v. Mitchell*, 971 F.3d 993, 996 (9th Cir. 2020) (quoting *Nken*, 556 U.S. at 434). The first two factors "are the most critical," *Nken*, 556 U.S. at 434, "and the 'mere possibility' of success or irreparable injury is insufficient to satisfy them." *Mitchell*, 971 F.3d at 996 (quoting *Nken*, 556 U.S. at 434). UBH fails to meet its burden on any of the required factors.

### A. UBH Does Not, and Cannot, Show its Mandamus Petition is Likely to Succeed.

"Whether [UBH] will succeed on the merits turns on whether the Ninth Circuit will grant [its] petition for writ of mandamus." *Shaw v. Bank of Am.*, No. 12-CV-1207 DMS (BLM), 2017 WL 4409426, at *2 (S.D. Cal. Oct. 4, 2017) (denying stay). That is, to justify a stay, UBH must make a "strong showing" that the Ninth Circuit is likely to grant its petition. *Nken*, 556 U.S. at 426.[1] UBH cannot do so.

---

[1] *Nken* requires a *strong* showing that UBH is likely to win its mandamus petition. 556 U.S. at 426. The Ninth Circuit has on occasion continued to grant stays on a "sliding scale" when the party seeking a stay has raised a serious legal question and has also made such a strong showing of irreparable injury as to make up for an inability to show likely success. But that approach does not apply here. UBH has not shown any irreparable injury, much less made such an exceptionally strong showing that its weakness on the merits can be excused. *See* § I.B, *infra*; *see also, e.g.*, *Manrique v. Kolc*, 65 F. 4th 1037, 1041 (9th Cir. 2023) ("sliding scale" approach means "the required degree of irreparable harm increases as the probability of success decreases"); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1010 (9th Cir. 2020) ("Where, as here, the showing of irreparable harm is weak at best, the [movant] must make a commensurately strong showing of a likelihood of success on the merits to prevail under the sliding scale approach.").

As it did in its briefs on the scope of remand, UBH continues to argue that the panel's opinion should be read as if it directed entry of judgment as to all of the named Plaintiffs and all members of the three classes on their ERISA § 502(a)(1)(B) claim, even though the opinion says nothing of the kind. This Court has already rejected UBH's disingenuous misreading of the panel's rulings with respect to Plaintiffs' denial of benefits claims, and UBH offers nothing new in its stay motion. *Compare* Mot. at 4 (repeating argument that reversal of the denial of benefits claim was "unqualified" by the panel's "to the extent" caveat) *with* Order re Scope of Mandate (hereinafter "Scope Order"), ECF No. 625, at 41–42 (rejecting UBH's argument and holding that the "more accurate interpretation of this language is that it qualifies the panel's reversal"); *compare* Mot. at 5 (repeating argument that the panel implicitly held that Plaintiffs' denial of benefits claim "failed on the merits" because Plaintiffs "failed to prove prejudice") *with* Scope Order at 42 (holding that UBH "invent[ed] a ruling that was not stated by the panel" by altering the panel's statements to suggest that "the panel reversed on the merits as to the denial of benefits claim based on Plaintiffs' failure to prove statutory causation under ERISA"); *compare* Mot. at 5–6 (repeating argument that the mandate precluded further proceedings with respect to the denial of benefits claims because the panel "found that 'the evidence did not support' reprocessing as to the named Plaintiffs' claim") *with* Scope Order at 42–44 (rejecting UBH's argument that further proceedings are precluded "because the panel purportedly reversed for insufficient evidence following trial" and holding that the opinion "simply does not address, and certainly does not foreclose, the possibility that Plaintiffs can make an adequate evidentiary showing as to potential subclasses that are defined more narrowly").[2] UBH's arguments are no more persuasive now than they were the first time around.

---

[2] UBH also makes the patently false assertion that Plaintiffs did not submit at trial the denial letters for *any* class members. Mot. at 6. To the contrary, as stipulated by the parties after UBH objected to the burdensomeness of producing documents for all potential class members, the absent class member evidence used throughout the case was limited to an agreed-upon Claim Sample. *See* Trial Ex. 897 (Joint Stipulation Concerning Sampling Methodology). At trial, Plaintiffs submitted plans, denial letters, appeal letters, and summary charts relating to all the Claim Sample members, in addition to the named Plaintiffs themselves. *See, e.g.*, Trial Exs. 892, 893 (summary charts citing Trial Exhibit numbers for Plaintiffs' and Sample members' plans); Trial Ex. 894 (summary chart citing Trial Exhibit numbers for Plaintiffs' and Sample members' denial letters); Trial Ex. 899 (compilation of Sample members' appeal denial letters).

UBH's petition could be granted only if this Court had actually failed to comply with "the letter and the spirit of the mandate." *Vizcaino v. U.S. Dist. Ct. for W. Dist. of Wash.*, 173 F.3d 713, 719 (9th Cir. 1999); *see also In re Gallatin Cnty.*, 450 F. App'x 624, 625 (9th Cir. 2011) (denying mandamus petition despite identifying one ruling that "violated the mandate," where alternative holding was not foreclosed by the Court of Appeals' prior ruling). UBH's deliberate misreading of the opinion is insufficient to establish any likelihood—let alone make the required "strong showing"—that its petition will succeed.

**B. UBH Does Not, and Cannot, Show it is Likely to Suffer Irreparable Harm from Briefing Class Certification.**

To satisfy the second element of the *Nken* test, UBH "must demonstrate that irreparable harm is probable—as opposed to merely possible—if the stay is not granted; that is, irreparable harm must be 'the more probable or likely outcome.'" *Mitchell*, 971 F.3d at 996 (quoting *Nken*, 556 U.S. at 435). The "irreparable injury," moreover, must be "likely to occur during the period before the appeal is likely to be decided." *Al Otro Lado*, 952 F.3d at 1007; *see also Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020). "If a stay applicant cannot show irreparable harm, 'a stay may not issue, regardless of the petitioner's proof regarding the other stay factors.'" *Doe #1*, 957 F.3d at 1061 (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011)).

UBH's sole contention as to irreparable harm is that, absent a stay, it will have to use its vast resources to litigate issues that it (wrongly) contends were already resolved. Mot. at 6–8. Specifically, UBH wants to bar the Plaintiffs from even filing their motion to re-certify the class members' denial of benefits claims and to certify narrow subclasses to seek reprocessing, on the theory that if UBH's petition were eventually granted, any resources UBH spent to oppose the motion would have been wasted. Mot. at 6. It is well established, however, that "**[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury**." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 735 n.20 (9th Cir. 2017) (quoting *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974)) (emphasis added). *See also, e.g., F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (defendant's reliance on "the expense and disruption of defending itself in protracted adjudicatory proceedings" insufficient

to constitute irreparable harm); *Mohamed v. Uber Techs.*, 115 F. Supp. 3d 1024, 1032–33 (N.D. Cal. 2015) (On a motion to stay proceedings pending appeal, as here, "nearly all courts 'have concluded that incurring litigation expenses does not amount to an irreparable harm.'"); *Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011 WL 2293221, at *5 (N.D. Cal. June 8, 2011) (expense of opposing plaintiff's motion for class certification not irreparable harm justifying a stay, even though the expense "could be avoided if Defendants win on appeal"); *Adams v. Postmates, Inc.*, No. 19-3042 SBA, 2020 WL 1066980, at *5 (N.D. Cal. Mar. 5, 2020) ("The Court is unpersuaded by Postmates' showing of irreparable harm. First, '[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.'"); *Universal Semiconductor, Inc. v. Tuoi Vo*, No. 5:16-CV-04778-EJD, 2016 WL 9211685, at *3 (N.D. Cal. Nov. 29, 2016) ("[I]t has been established that 'litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.'").[3]

UBH utterly ignores this authority, relying instead on a handful of inapposite decisions. *Vizcaino*, for example, does not even address a stay motion, much less weigh in on what constitutes

[3] *See also, e.g.*, *Consumer Fin. Prot. Bureau v. D & D Mktg., Inc.*, No. CV 15-9692 PSG (Ex), 2017 WL 5974248, at *6 (C.D. Cal. Mar. 21, 2017) (denying stay pending interlocutory appeal and holding that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury"); *Castaneda v. Molinar*, No. CV 07-7241 DDP (JCx), 2008 WL 9449576, at *4 (C.D. Cal. May 20, 2008) (denying stay pending appeal and holding that while "discovery can be burdensome, . . . such a burden, while regrettable, does not constitute an irreparable injury"); *Burgess v. Tesoro Refining & Mktg. Co.*, No. CV 10-5870-VBF(PLAx), 2011 WL 13217364, at *2 (C.D. Cal. June 6, 2011) (denying stay pending resolution of Rule 23(f) appeal and holding defendant "does not show irreparable injury by being forced to defend this litigation"); *Kern Cnty. Superintendent of Schs.-Valley Oaks Charter Sch. Tehachapi v. A.C.*, No. 1:18-CV-01331-LJO-SAB, 2018 WL 4698312, at *1 (E.D. Cal. Sept. 28, 2018) (holding that defending against a meritless claim does not constitute irreparable injury); *KEE Action Sports, LLC v. Shyang Huei Indus. Co.*, No. 3:14-CV-00071-HZ, 2014 WL 5780812, at *4 (D. Or. Nov. 5, 2014) ("The cost of litigation is not irreparable harm."); *Am. Trucking & Transp. Ins. Co. v. Nelson*, No. CV 16-160-M-DLC, 2018 WL 3609538, at *4 (D. Mont. July 27, 2018) ("The expense of litigation does not generally constitute irreparable harm."); *Aliff v. Vervent, Inc.*, No. 20-CV-00697-DMS (AHG), 2021 WL 2156183, at *2 (S.D. Cal. May 27, 2021) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to "demonstrate irreparable harm.") (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)); *Pac. Cheese Co. v. Advanced Coil Tech., LLC*, No. 3:15-CV-00351-MMD-CBC, 2019 WL 1062369, at *4 (D. Nev. Mar. 6, 2019) (rejecting defendant's argument "that the mere fact of going to—and preparing for—trial constitutes irreparable injury") (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005)).

irreparable harm.[4] *Alascom* holds that an order staying arbitration is appealable; the decision does not address any grant or denial of a stay pending appeal. *See generally Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419 (9th Cir. 1984). *Alascom* permitted interlocutory appeal because the stay of arbitration deprived one party "of the inexpensive and expeditious means by which *the parties had agreed* to resolve their disputes." *Id. at* 1422 (emphasis added). *Alascom*, in other words, was all about enforcing a valid arbitration agreement; it did not establish that all litigation expense constitutes irreparable harm. *See, e.g., Guifu Li*, 2011 WL 2293221, at *5 ("Not only is *Alascom* not analogous to this case, in *Bradberry v. T–Mobile USA, Inc.*, the same use of *Alascom* was dismissed as 'unpersuasive.'") (citing *Bradberry v. T–Mobile USA, Inc.*, 2007 U.S. Dist. LEXIS 58801, at *9 (N.D. Cal. 2007)). *Coinbase*, which holds that interlocutory appeals of stays of arbitration under the Federal Arbitration Act give rise to an automatic stay of litigation, *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023), is similarly inapposite. Whereas litigating a case would itself moot an appeal from a stay of *arbitration*, the same is not true here. Even in the unlikely event UBH were to succeed on its mandamus petition, if by that time the Court had already re-certified the denial of benefits claims and certified the reprocessing subclasses (again, an unlikely scenario given the two-month timeline UBH itself estimates for resolution of its petition), that order would simply be vacated. The "benefit" to which UBH claims to be entitled—judgment on the denial of benefits claims—would not be "irretrievably lost" by dint of a few months of briefing.[5] The only

---

[4] *Vizcaino* observes that the "policy against piecemeal litigation" does not apply to petitions for mandamus seeking to enforce a mandate and thereby "avoid relitigation of final judgments." 173 F.3d at 720. That is, a petition to enforce a mandate is not barred by the policy that "as a general rule 'appellate review should be postponed . . . until after final judgment has been rendered by the trial court.'" *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 403 (1976). But this point only establishes that UBH is entitled to file its petition; it does not mean that incurring expense to litigate while the petition is pending constitutes irreparable harm.

[5] *In re Apple Inc.*, 52 F.4th 1360 (Fed. Cir. 2022), is also inapposite. There, the district court ordered the parties to complete fact discovery on the merits *before* ruling on Apple's motion to transfer venue, and Apple sought a writ of mandamus directing the district court to decide the transfer motion and to otherwise stay the proceedings until that motion was resolved. *Id*. at 1361. The Federal Circuit said absolutely nothing to suggest that litigation expenses qualify as irreparable harm, instead ruling that the district court abused its discretion by failing to prioritize the transfer motion. *Id*. at 1362.

"harm" to UBH would be its litigation expense—but, as scores of cases make clear, that type of monetary harm is not considered irreparable.[6]

Much of the litigation expense UBH claims to find so unjustifiable, moreover, would be self-inflicted harm. The remainder of this case could be resolved swiftly if UBH would drop the scorched earth tactics it has deployed throughout the litigation. For example, if UBH had not insisted that the Ninth Circuit imposed limits on the remand that it most certainly did not, the parties could have avoided months of briefing on the scope of the remand and would now be much closer to resolution of the issues the Ninth Circuit left open. And it is UBH, not Plaintiffs, that is arguing for a wholesale re-do of class certification discovery, including abandoning the agreed-upon Claim Sample on which basis the case has been litigated to date.[7] "[S]elf-inflicted wounds are not irreparable injury." *Al Otro Lado*, 952 F.3d at 1008 (quoting *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003)).

UBH (which does business as "Optum") is a goliath of a company that can easily absorb a few months of litigation expenses. In September 2023, Optum's reported third-quarter earnings were $3.9 *billion*, driven in part by a 27% increase in "revenue per consumer served." Ex. A (press release entitled, UnitedHealth Group Reports Third Quarter 2023 Results) at 4. Especially where the question is whether UBH should be required to engage in briefing on a single motion or issue, the true burden of any additional litigation expense is negligible for UBH and therefore not sufficient to establish irreparable harm.

---

[6] The only two cases UBH cites that do refer to litigation expense as "irreparable harm" are neither controlling nor persuasive. *See Salhotra v. Simpson Strong-Tie Co., Inc.*, Case No. 19-cv-7901-TSH, 2022 WL 1091799, at *3 (N.D. Cal. Apr. 12, 2022); *Earl v. Boeing Co.*, 21 F.4th 895 (5th Cir. 2021). Both cases involved stays pending resolution of a Rule 23(f) appeal from a class certification ruling, and both courts reasoned that if the class certification ruling was ultimately reversed, the parties' litigation expenditures in the meantime would necessarily be wasted. *See Salhotra*, 2022 WL 1091799, at *2; *Earl*, 21 F.4th at 899–900. If those cases' reasoning were correct, any party who filed a Rule 23(f) petition would be entitled to an automatic stay, but that is obviously not the case.

[7] Plaintiffs strongly object to this proposition.

### C. The Balance of Hardships Strongly Favors Plaintiffs.

Courts in the Ninth Circuit consider the last two factors—injury to other parties and the public interest—only "if the first two factors are satisfied." *Doe #1*, 957 F.3d at 1058. UBH has failed to make the required showing on the first two elements of the *Nken* test, but even if it had not, the last two factors weigh heavily against a stay.

First, staying the proceedings will injure the Plaintiffs and the more than 65,000 members of the certified classes. UBH disingenuously argues that it "is not currently seeking to stay any relief granted by this Court," Mot. at 7, but of course it is. The declaratory and injunctive relief this Court awarded the class members due to UBH's egregious, years-long pattern of fiduciary breaches—relief to which those still-certified classes are still entitled—is already on hold until the remand proceedings are complete. In awarding that relief in the first place, this Court held that, absent prospective relief, the class members are likely to suffer irreparable harm. Remedies Order, 2020 WL 6479273, at *33. The Ninth Circuit did not disturb that finding, and UBH's mandamus petition has no bearing whatsoever on the breach of fiduciary duty claims, yet UBH seeks to stay the entire case. Every additional day the breach of fiduciary duty claims, and the remedies for those claims, remain stalled further injures the class members and weighs against a stay. *See, e.g.*, *Pac. Cheese Co.*, 2019 WL 1062369, at *4 (assigning "some weight to Plaintiff's allegation it would be prejudiced by further delaying trial" in case pending for over three years).

The public interest also favors expeditiously redressing UBH's egregious breaches of fiduciary duty and the longstanding pattern of ERISA violations Plaintiffs proved at trial. *See, e.g.*, *Pac. Cheese Co.*, 2019 WL 1062369, at *4 (The "public interest favors the expeditious resolution of cases on their merits.") (citing *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)). After all, UBH is the nation's largest administrator of behavioral health benefits in the country and its actions (and inactions) have industry-wide ramifications. UBH incoherently claims the public interest favors a stay because otherwise its (meritless) petition could not be "meaningful[ly]

reviewed," Mot. at 9–10, but it fails to explain why that could be so.[8] In fact, a stay is *not* necessary to make a mandamus writ "meaningful" in this case. As discussed above, even if the Ninth Circuit were to grant the petition after the litigation had continued for some time (UBH estimates less than two months), any orders of this Court deemed inconsistent with the mandate would simply be vacated. UBH's stay motion is really about preventing Plaintiffs from submitting their proof as to re-certification, and saving UBH money. The public has no interest in either of those goals.

## II. The Court Should Not Exercise its Inherent Authority Over its Docket to Stay the Case.

UBH also invokes the Court's inherent discretionary power to manage its docket. *See* Mot. at 10 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) and *Romero v. Securus Techs., Inc.*, 383 F. Supp. 3d 1069, 1073 n.1 (S.D. Cal. 2019)). As UBH concedes, however, the factors governing a stay on this basis largely mirror the factors above, *id.*, which, as explained, do not entitle UBH to a stay.

Notwithstanding all of the foregoing, and even though UBH has no *right* to a stay, Plaintiffs would not object to entry of a schedule that prioritizes proceedings on the breach of fiduciary duty claims, which are separate and distinct from the denial of benefits claims. Indeed, UBH concedes (as it must) that the Ninth Circuit "remanded for further proceedings on Plaintiffs' separate fiduciary duty claim . . ." Mot. at 1. Thus, UBH admits that even if its mandamus petition were granted, it would not dispose of the entire remand.

For that reason, Plaintiffs propose that the Court enter a briefing schedule that first addresses tasks even UBH concedes must be completed on remand: specifically, briefing on the following issues: (1) whether any exhaustion requirement applies to Plaintiffs' separate fiduciary duty claim; (2) the "extent" to which the Court of Appeals reversed on the merits of Plaintiffs' fiduciary duty claim; and (3) whether the remedies previously awarded on the fiduciary duty claim should be revised in any respect. Prioritizing the fiduciary duty claim-related briefing will also have the effect

[8] UBH also contends that the public interest favors a stay so that the Court does not waste judicial resources on proceedings that may be deemed improper. Mot. at 10. But even if that risk were more than negligible (it is not), it is highly unlikely that briefing on Plaintiffs' class certification motion would be completed, and the motion ripe for review, within the 1.8 months UBH estimates it will take for its mandamus petition to be decided.

of delaying Plaintiffs' motion for re-certification on the denial of benefits claim until well after UBH filed its mandamus petition, permitting plenty of time for the petition to be resolved.

## III. Conclusion

For the reasons set forth above, the Court should deny UBH's motion for a stay and should instead order briefing on the fiduciary duty claims, as Plaintiffs propose herein.

Dated: January 23, 2024

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

/s/ Caroline E. Reynolds
Caroline E. Reynolds
D. Brian Hufford
Jason S. Cowart
Joshua Mathew

PSYCH-APPEAL, INC.
Meiram Bendat

*Attorneys for Plaintiffs and the Classes*