1  JENNIFER S. ROMANO (SBN 195953)
   jromano@crowell.com
2  ANDREW HOLMER (SBN 268864)
   aholmer@crowell.com
3  CROWELL & MORING LLP
   515 South Flower Street, 40th Floor
4  Los Angeles, California 90071
   Telephone:  213.622.4750
5  Facsimile:   213.622.2690

6  NICHOLAS DOWD (admitted *pro hac vice*)
   NDowd@crowell.com
7  CROWELL & MORING LLP
   1601 Wewatta Street, Suite 815
8  Denver, CO 80202
   Telephone:  303.524.8660
9  Facsimile:   303.524.8650

10 Attorneys for Defendant
   UNITED BEHAVIORAL HEALTH
11

12                UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                   SAN FRANCISCO DIVISION

15 DAVID AND NATASHA WIT, *et al.*,          Case No. 3:14-CV-02346-JCS
                                             Related Case No. 3:14-CV-05337-JCS
16              Plaintiffs,

17       v.                                  **UNITED BEHAVIORAL HEALTH'S**
                                             **OPENING BRIEF ON BREACH OF**
18 UNITED BEHAVIORAL HEALTH                  **FIDUCIARY DUTY CLAIM**
   (operating as OPTUMHEALTH
19 BEHAVIORAL SOLUTIONS),

20              Defendant.

21 ─────────────────────────────

22 GARY ALEXANDER, *et al.*,                 Hearing Date: July 30, 2025
                                             Hearing Time: 9:30 a.m.
23              Plaintiffs,                   Judge: Joseph C. Spero

24       v.

25 UNITED BEHAVIORAL HEALTH
   (operating as OPTUMHEALTH
26 BEHAVIORAL SOLUTIONS),

27              Defendant.

28

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

PROCEDURAL BACKGROUND ...................................................................... 4

    A.    The Court's Post-Trial Findings of Fact and Conclusions of Law ........................ 4

        1.    The Court Ruled In Favor Of Plaintiffs On Their Breach Of Fiduciary Duty Claim Based On UBH's Use Of The Guidelines To Determine Coverage. ........................ 4

        2.    The Court's Factual Findings Were Principally Concerned With The Content And Use Of The Guidelines In Making Coverage Determinations. ........................ 6

        3.    Findings And Conclusions Concerning Plaintiffs' Exhaustion Of Administrative Remedies. ........................ 7

    B.    The Remedies Order and Final Judgment ........................ 8

    C.    The Ninth Circuit Holds That Plaintiffs' Denial Of Benefits And Breach Of Fiduciary Duty Claims Suffer From Flaws Requiring Reversal Of The Judgment. ........................ 10

ARGUMENT ...................................................................................................... 12

I.    Plaintiffs' Claim For Breach Of Fiduciary Duty Was Reversed In Its Entirety, And Judgment Should Be Entered For UBH. ........................ 12

    A.    Plaintiffs' Theory Of Injury Is Based On The Same Harm That Was Rejected In *Wit III*. ........................ 13

    B.    Plaintiffs' Theory Of Fiduciary Breach Is Based On The Same Erroneous Interpretation Of The Plans That Was Rejected In *Wit III*. ........................ 15

        1.    The Court's Conflict Of Interest Findings Are "Intertwined" With The Reversed Denial Of Benefits Claim And Are Not Independent Breaches. ........................ 17

        2.    The Court's Conflict Of Interest Findings Do Not Support An Independent Fiduciary Duty Claim. ........................ 19

        3.    Plaintiffs' Other Theories Of Fiduciary Liability Also Do Not Survive *Wit III* Because They Are Intertwined With The Same Incorrect Interpretation Of The Plans. ........................ 21

    C.    Plaintiffs Cannot Seek Reprocessing. ........................ 22

II.    Plaintiffs Cannot "Un-Reverse" Their Reversed Claim For Breach Of Fiduciary Duty With New Factual Findings That They Never Requested Prior To Judgment. ........................ 23

III.    Plaintiffs Were Required To Exhaust Available Administrative Remedies Before Asserting Their Breach Of Fiduciary Duty Claim. ........................ 25

    A.    The Breach Of Fiduciary Duty Claim Is Subject To Prudential Exhaustion Requirements Because It Is A Disguised Claim For Benefits. ........................ 25

i

B.    Class Members Were Also Bound To Comply With Contractually-Mandated Exhaustion Requirements Set Forth In Their Plans. ........................... 28

C.    The Failure Of Unnamed Class Members To Comply With Applicable Administrative Exhaustion Requirements Is Not Excused. .................................. 29

CONCLUSION .................................................................................................................... 31

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Page(s)**

4

**Cases**

5

*Amato v. Bernard,*
618 F.2d 559 (9th Cir. 1980) .................................................................................25

6

7

*Casatelli v. Horizon Blue Cross Blue Shield of New Jersey,*
2010 WL 3724526 (D.N.J. Sept. 13, 2010) ......................................................23, 30

8

9

*Cinelli v. Security Pacific Corp.,*
61 F.3d 1437 (9th Cir. 1995) .................................................................................30

10

*City of Oakland v. Wells Fargo & Co.,*
14 F.4th 1030 (9th Cir. 2021) ................................................................................14

11

12

*Conley v. Pitney Bowes,*
34 F.3d 714 (8th Cir. 1994) ...........................................................................25, 28

13

14

*Diaz v. United Agric. Emp. Welfare Benefit Plan and Trust,*
50 F.3d 1478 (9th Cir. 1995) ......................................................................26, 27, 31

15

*East Jefferson Coal. for Leadership & Dev. v. Parish of Jefferson,*
926 F.2d 487 (5th Cir. 1991) .................................................................................24

16

17

*Firestone Tire & Rubber Co. v. Bruch,*
489 U.S. 101 (1989) ........................................................................................19, 20

18

19

*Firth v. United States,*
554 F.2d 990 (9th Cir. 1977) .................................................................................23

20

*Greany v. W. Farm Bureau Life Ins. Co.,*
973 F.2d 812 (9th Cir. 1992) .................................................................................30

21

22

*Harrow v. Prudential Ins. Co. of Am.,*
279 F.3d 244 (3d Cir. 2002)........................................................................26, 27, 30

23

24

*Heimeshoff v. Hartford Life & Acc. Ins. Co.,*
571 U.S. 99 (2013)................................................................................... *passim*

25

*Huntsinger v. The Shaw Grp., Inc.,*
268 F. App'x 518 (9th Cir. 2008) .........................................................................20

26

27

*Hutchins v. HP Inc.,*
*No.* 5:23-CV-05875-BLF, 2025 WL 404594 (N.D. Cal. Feb. 5, 2025)....................20

28

*Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan*,
   111 F.3d 67 (8th Cir. 1997) ...................................................................................28

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)........................................................................................14, 20

*In re McKesson HBOC, Inc. ERISA Litigation*,
   391 F. Supp. 2d 812 (N.D. Cal. 2005) ...................................................................20

*Metro. Life Ins. Co. v. Glenn*,
   554 U.S. 105 (2008)................................................................................................20

*Noren v. Jefferson Pilot Fin. Ins. Co.*,
   378 F. App'x 696 (9th Cir. 2010) ...........................................................................30

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)................................................................................................19

*Schmookler v. Empire Blue Cross & Blue Shield*,
   107 F.3d 4 (2d Cir. 1997) .......................................................................................29

*Smith v. Sydnor*,
   184 F.3d 356 (4th Cir. 1999) ............................................................................26, 27

*Steigleman v. Symetra Life Ins. Co.*,
   2025 WL 602175 (9th Cir. Feb. 25, 2025) .............................................................23

*Stephens v. Pension Ben. Guar. Corp.*,
   755 F.3d 959 (D.C. Cir. 2014) ................................................................................26

*Stephens v. U.S. Airways Grp., Inc.*,
   2012 WL 13054263 (D.D.C. July 18, 2012)...........................................................29

*United Behavioral Health v. U.S. Dist. Ct. for the N. Dist. of Cal.*,
   No. 24-242, 2024 WL 4036574 (9th Cir. Sept. 4, 2024) ................................. *passim*

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
   2013 WL 12130034 (C.D. Cal. July 19, 2013).......................................................31

*Wit v. United Behavioral Health*,
   79 F.4th 1068 (9th Cir. 2023) ......................................................................... *passim*

*Wright v. Oregon Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ................................................................................20

**Statutes**

29 U.S.C. § 1104(a)(1)......................................................................................................9

29 U.S.C. §§ 1104(a)(1)(A)............................................................................................10

1

29 U.S.C. §§ 1104(a)(1)(D) ................................................................................................10

2

29 U.S.C. §§ 1132(a)(1)(B) ........................................................................................4, 15, 19

3

29 U.S.C. § 1132(a)(3) ......................................................................................................15

4

29 U.S.C. § 1132(a)(3)(B) ...................................................................................................4

5

29 U.S.C. § 1132(a)(3)(A) ............................................................................................4, 19

6

**Other Authorities**

7

Fed. R. Civ. P. 52(b) ........................................................................................................24

8

Fed. R. Civ. P. 59(b) ........................................................................................................24

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

This submission addresses the only claim remaining in this case—Plaintiffs' claim for breach of fiduciary duty. Plaintiffs' principal claim, for denial of benefits, has been conclusively resolved in UBH's favor. The Ninth Circuit held in *Wit v. United Behavioral Health*, 79 F.4th 1068 (9th Cir. 2023) ("*Wit III*") that Plaintiffs' denial of benefits claim suffered from fundamental defects, and ordered decertification and entry of judgment for UBH. The Ninth Circuit later confirmed these holdings by awarding UBH extraordinary relief to prevent the denial of benefits claim from being reopened on remand. *See United Behavioral Health v. U.S. Dist. Ct. for the N. Dist. of Cal.*, No. 24-242, 2024 WL 4036574, at *2 (9th Cir. Sept. 4, 2024) ("*Wit IV*").

*Wit III* also reversed the judgment on Plaintiffs' claim for breach of fiduciary duty. *Wit III*, 79 F.4th at 1088. And, again, the Ninth Circuit confirmed in *Wit IV* that the same reasoning that doomed the denial of benefits claim "also applied to the breach of fiduciary duty claim." *Wit IV*, 2024 WL 4036574, at *2. The Ninth Circuit remanded to this Court to decide whether there is "*any surviving aspect of that claim.*" *Id.* (emphasis added).

The Parties agree that there are now two questions before the Court (the latter of which has two subparts): "(1) what portion of the Plaintiffs' breach of fiduciary duty claim, if any, remains in the case; and (2) whether any surviving portion of the breach of fiduciary duty claim is subject to administrative exhaustion (and if so, whether such requirements have been satisfied)." Stipulation Regarding Proposed Briefing Schedule, ECF No. 656 at 1. The parties disagree on the answers to those questions.

Plaintiffs address the first question by arguing this Court should "enter an order clarifying" that the breach of fiduciary duty claim was not reversed at all. Pls. Opening Br., ECF No. 661 at 29. But that is just asking the Court to ignore *Wit III* and *Wit IV* altogether. As the Ninth Circuit reaffirmed in *Wit IV*, this Court's judgment on the breach of fiduciary duty claim was reversed. The question is not whether that claim remains entirely intact. The only question is whether judgment was reversed in its "entirety" or whether there is "any surviving aspect" of that claim that can still proceed. *Wit IV*, 2024 WL 4036574, at *2.

In fact, there is no surviving aspect of the fiduciary duty claim, which mirrors in all material respects the denial of benefits claim the Ninth Circuit rejected in *Wit III* and *Wit IV*. Both claims allege the *same harm*, to the *same class*, flowing from the same *alleged conduct*, and premised on the (erroneous) *same interpretation* of plan documents, for which they sought many of the *same remedies*.

As to injury, both claims involve an alleged denial of Plaintiffs' rights to a "fair adjudication of their claims for coverage based on Guidelines that were developed solely for their benefit." FFCL ¶ 204. Both claims also involve the same class definition, whose core criterion is that benefits were denied under inappropriate Guidelines.

As to conduct, the finding of breach is the same. This Court concluded that UBH improperly denied benefits based on its finding that "UBH's Guidelines were unreasonable and an abuse of discretion because they were more restrictive than generally accepted standards of care," *see* Findings of Fact and Conclusions of Law ("FFCL," ECF No. 418) ¶ 212, and likewise concluded that UBH breached its fiduciary duty to Plaintiffs "by adopting Guidelines that are unreasonable and do not reflect generally accepted standards of care." FFCL ¶ 203. And both claims are based on the same "incorrect interpretation of the Plans" as requiring coverage for services consistent with generally accepted standards of care. *Wit III*, 79 F.4th at 1088 n.7. *Wit III* and *Wit IV* foreclosed Plaintiffs' denial of benefits claim and therefore foreclose any remaining fiduciary duty claim.

Against all this, the singular finding that UBH had financial incentives that created a "structural conflict of interest" in developing the Guidelines does nothing to show that the fiduciary duty claim is somehow distinct in a way that avoids the defects in the denial of benefits claim. *Wit III*, 79 F.4th at 1088 n.7; *see also Wit IV*, 2024 WL 4036574, at *2. For one thing, this Court did not hold that conflicts of interest were the basis for its finding that UBH *breached* its fiduciary duty. Instead, they were relevant to determining the appropriate degree of skepticism to apply to UBH's conduct—which applied to both the fiduciary duty and denial of benefits claims. *See* FFCL ¶¶ 202 & 210. Moreover, Plaintiffs never asserted, and this Court never found, that a

financial interest caused any harm to Plaintiffs that was distinct from the theory of harm rejected by the Ninth Circuit on Plaintiffs' denial of benefits claim. In any event, Plaintiffs' claim that UBH breached a fiduciary duty by improperly considering financial interests in developing the Guidelines is, on its face, "intertwined" with the same "incorrect interpretation of the Plans" that required reversal of their denial of benefits claim. *Wit III*, 79 F.4th at 1088 n.7. Further, any such claim would fail as a matter of law for multiple independent reasons, as do Plaintiffs other hodge-podge new theories of fiduciary breach.

The second question the parties agree the Court should answer on remand is whether, if some aspect of Plaintiffs' breach of fiduciary duty claim survives *Wit III* and *Wit IV*, Plaintiffs were required to exhaust all available administrative remedies before asserting that claim. The answer to that question is yes. Plaintiffs and the class were obligated, by ERISA and the express terms of many of their Plans, to exhaust available administrative remedies before bringing an action in court. The fact that Plaintiffs added a claim for breach of fiduciary duty that was functionally the same as their denial of benefits claim does not relieve any exhaustion requirements.

Although the parties also agreed this Court should decide whether, if exhaustion was required, it was "satisfied" here, Plaintiffs do not address that issue at all. That is no accident. The trial record proves that many class members *did not exhaust* their available remedies. Neither the fact that the named Plaintiffs exhausted, nor the factually incorrect assertion that exhaustion would have been "futile," obviates the need for *all* members of the class to comply with *both* prudential *and* non-waivable contractual exhaustion requirements.

Finally, Plaintiffs appear to concede they are not seeking reprocessing with respect to their fiduciary duty claim. This Court should make clear—in line with *Wit III*—that Plaintiffs are foreclosed from seeking reprocessing in this litigation because (1) the Ninth Circuit held that they sought that remedy only with respect to their defeated denial of benefits claim; and (2) seeking reprocessing on their fiduciary duty claim would further confirm that the claim is a disguised claim for benefits that is fatally defective and subject to unmet and unexcused exhaustion requirements.

1    The Court should thus enter judgment on Plaintiffs' breach of fiduciary duty claim.

2    **PROCEDURAL BACKGROUND**

3    On February 1, 2021, this Court issued judgment in favor of Plaintiffs on their breach of

4    fiduciary duty claim against UBH. ECF No. 531 (the "Judgment"). Under *Wit III*, that Judgment

5    must now be reevaluated in light of merits-related errors the Ninth Circuit identified. *Wit III*, 79

6    F.4th at 1088. That reevaluation calls for an examination not just of the Judgment itself but also of

7    this Court's FFCL on which the Judgment is based, and the Court's November 3, 2020 Remedies

8    Order, ECF No. 491 ("Remedies Order"). *See* Judgment at 1.

9    **A.    The Court's Post-Trial Findings of Fact and Conclusions of Law**

10    The Court certified three classes for trial: a "Wit Guideline Class," a "Wit State Mandate

11    Class," and an "Alexander Guideline Class." FFCL ¶ 13. The Court understood the Guideline

12    classes to be asserting two claims: a denial of benefits claim under 29 U.S.C. § 1132(a)(1)(B) and

13    § 1132(a)(3)(B), and a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(1)(B). FFCL ¶

14    16. Plaintiffs also asserted their breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3)(A) to

15    the extent the injunctive relief Plaintiffs sought was unavailable under § 1132(a)(1)(B). *Id.*

16    After a ten-day bench trial in 2017, the Court issued the FFCL in 2019 and entered

17    judgment in 2021.

18    **1.    The Court Ruled In Favor Of Plaintiffs On Their Breach Of**
19    **Fiduciary Duty Claim Based On UBH's Use Of The Guidelines To**
       **Determine Coverage.**

20    The Court's FFCL sets forth the conclusions of law on which the Court entered judgment

21    for Plaintiffs on their claim for breach of fiduciary duty. *See* FFCL ¶¶ 193–206; *see also* Judgment,

22    at 1 and § I.26 (incorporating the FFCL into the Judgment). The Court explained that, to prove

23    their claim for breach of fiduciary duty, Plaintiffs were required to prove three elements: "(1) UBH

24    was a Plan fiduciary; (2) UBH breached its fiduciary duty; and (3) the breach caused harm to

25    plaintiffs." FFCL ¶ 196. As to each of these elements, the Court focused primarily on UBH's use

26    of the Guidelines in making benefit decisions as the administrator of Plaintiffs' Plans.

27

28

On the first element, the Court concluded that "UBH was a plan fiduciary with respect to Plaintiffs' Plans by virtue of its designation as administrator of mental health and substance use benefits under their Plans." FFCL ¶ 197. The Court focused on UBH's role in resolving claims for benefits, specifying that UBH exercised discretionary authority "when it makes coverage determinations" and "when it adopts Guidelines to standardize its coverage determinations." FFCL ¶ 197. The Court thus identified UBH's relevant fiduciary obligations as pertaining to "when [UBH] adopts and applies its Guidelines to coverage determinations." FFCL ¶ 197.

As to the second element, before assessing whether UBH breached its fiduciary duties, the Court focused on the appropriate "degree of skepticism" to apply when evaluating whether a plan administrator's conduct was an abuse of discretion. *See* FFCL ¶ 200. The Court explained that this question depends on "the extent to which the decision appears to have been affected by a conflict of interest." FFCL ¶ 200 (quoting *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012)); *see also* FFCL ¶ 201 (concluding that the "degree of skepticism that is appropriate when a plan administrator has a conflict of interest depends upon the circumstances"). The Court thus looked at UBH's process for developing the Guidelines to answer the preliminary question of the degree of skepticism to be afforded UBH's conduct. *See* FFCL ¶ 202. The Court held that UBH had a "structural conflict of interest" during the class period because a large portion of its revenues came from fully-insured plans, and that for self-funded plans, "UBH felt pressure to keep benefit expenses down so that it could offer competitive rates to employers." FFCL ¶ 202. Based on these observations, the Court concluded that UBH had a "conflict of interest" that impacted its development of the Guidelines and therefore it was appropriate to evaluate UBH's decision-making with "significant skepticism." *Id.*

The Court then applied that "significant skepticism" to decide whether UBH breached its fiduciary duty. The Court concluded that UBH "breached its fiduciary duty by violating its duty of loyalty, its duty of due care, and its duty to comply with plan terms ***by adopting Guidelines that are unreasonable and do not reflect generally accepted standards of care***." FFCL ¶ 203 (emphasis added).

Finally, the Court turned to the third element of Plaintiffs' breach of fiduciary duty claim—whether UBH's breach of its fiduciary duty caused harm to Plaintiffs. In a single paragraph of the FFCL, the Court concluded:

> As discussed above, the final element of Plaintiffs' Breach of Fiduciary Duty Claim is that the breach must have caused harm to Plaintiffs. The Court finds that this requirement is met. As the Court found on summary judgment, ***the harm that Plaintiffs allege resulted from UBH's breach of fiduciary duty is the denial of their right to fair adjudication of their claims for coverage*** based on Guidelines that were developed solely for their benefit. [Citation] The Court declines to revisit that conclusion.

FFCL ¶ 204 (emphasis added). That was the only harm the Court relied upon to support Plaintiffs' fiduciary duty claim.[1] *Id.*

All of those findings paralleled the findings this Court made concerning Plaintiffs' denial of benefits claims. Just like the fiduciary duty claim, "[t]he Denial of Benefits Claim is based on the theory that UBH improperly adjudicated and denied Plaintiffs' requests for coverage by using its overly restrictive Guidelines to make coverage determinations." FFCL ¶ 18. The Court also made clear that, in evaluating UBH's conduct under the denial of benefits claim, it applied the abuse of discretion standard "with significant skepticism" for the same conflict-of-interest reasons discussed with respect to the breach of fiduciary duty claim. *See* FFCL ¶ 210. And ultimately the Court concluded that UBH improperly denied benefits to Plaintiffs and the class because "UBH's Guidelines were unreasonable and an abuse of discretion because they were more restrictive than generally accepted standards of care." FFCL ¶ 212.

### 2. The Court's Factual Findings Were Principally Concerned With The Content And Use Of The Guidelines In Making Coverage Determinations.

The FFCL does not distinguish between facts relevant to the breach of fiduciary duty claim and facts relevant to the denial of benefits claim, except in describing the claims themselves. *See*

---

[1] The Court described the harm on Plaintiffs' fiduciary duty claim in the same way at the remedies stage of the case, even in granting other relief besides reprocessing. *See, e.g.*, Remedies Order at 58–59 (discussing Plaintiffs' demand for injunctive relief and arguments that they suffered "irreparable harm" by being "denied the right to fair adjudication of their claims" and that "UBH's conduct [] resulted in the loss – or threatened loss – of health benefits").

6

FFCL ¶¶ 16–19. The Court's fact findings focused on the content of the Guidelines and UBH's use of the Guidelines in making coverage determinations. *See* FFCL ¶¶ 193–216. After discussing the nature and purpose of the Guidelines (FFCL § II.E), and their role in UBH's claims administration process (FFCL § II.F), the Court devoted the bulk of its factual analysis to assessing "Whether the UBH Guidelines Adhere to Generally Accepted Standards of Care." *See* FFCL § II.H (¶¶ 57–156).[2] The Court examined the "sources" of generally accepted standards of care, drawing primarily from third-party criteria such as the American Society of Addiction Medicine ("ASAM") Criteria and the Level of Care Utilization System ("LOCUS"). *See* FFCL ¶¶ 57–81. The Court then analyzed whether the challenged Guidelines provisions were consistent with generally accepted standards of care. FFCL ¶¶ 82–156. Throughout this analysis, the Court repeatedly referenced how UBH utilized the Guidelines in making coverage determinations. *See, e.g.*, FFCL ¶ 107 (acknowledging that UBH's Guidelines "instruct[ed] practitioners to consider co-occurring physical and behavioral health conditions in developing a treatment plan" but emphasizing that "[t]he criteria in the Guidelines that actually govern coverage determinations with respect to the treatment of co-occurring conditions" were not consistent with generally accepted standards of care).

After detailing the ways in which provisions of the Guidelines were inconsistent with GASC, the Court addressed the issue of "UBH's Guideline Development Process." *See* FFCL Section II.J (¶¶ 168–189). The Court found, among other things, that UBH had "financial incentives to keep benefit expense down," and that these financial incentives "infected the Guideline development process." *See* FFCL ¶¶ 176–180.

### 3. Findings And Conclusions Concerning Plaintiffs' Exhaustion Of Administrative Remedies.

The FFCL also addressed the question of whether the class members satisfied their obligation to exhaust all administrative remedies before asserting an ERISA claim in court. The Court found that the named plaintiffs had exhausted UBH's internal appeals process before filing

---

[2] The Court subsequently made Further Findings of Fact and Conclusions of Law, which related solely to whether the diagnosis-specific Coverage Determination Guidelines at issue in this case incorporated the challenged LOCGs. *See* ECF No. 469.

suit. *See* FFCL ¶¶ 3–12, 190. However, the Court acknowledged that while some unnamed class members had pursued administrative appeals of their claim denials, other class members did *not* exhaust available administrative remedies even though the terms of their ERISA Plans required them to do so. FFCL ¶ 192 (emphasis added).

Nevertheless, the Court concluded that "any exhaustion requirements contained in class members' plans" applicable to "any" claim were "excused." FFCL ¶ 190. The Court explained, "because the classes bring purely facial challenges to the Guidelines, the claims of named Plaintiffs put UBH on notice of the absent class members' claims, thus fulfilling the purposes of UBH's internal grievance procedure." FFCL ¶ 190. The Court also found that requiring class members to exhaust administrative remedies would be "futile" because UBH used the Guidelines to decide both appeals and initial coverage determinations. FFCL ¶ 191. Given its conclusion that any applicable exhaustion requirements were either "excused" or would have been "futile" to comply with, the Court did "not reach the question of whether the terms of any specific class member's Plan required exhaustion of administrative remedies as to the claims asserted in this action." FFCL ¶ 192.

Briefly returning to the question of exhaustion in its conclusions of law, the Court stated that it assumed, without deciding, that Plaintiffs' breach of fiduciary duty claim was subject to an exhaustion requirement. FFCL ¶ 195. However, the Court held "that the requirement is satisfied as to the named Plaintiffs and excused as to the class members, and in any event, that exhaustion is not required because it would have been futile." FFCL ¶ 195.

## B.     The Remedies Order and Final Judgment

The Court issued its Remedies Order on November 3, 2020. *See* ECF No. 491 (the "Remedies Order"). Having prevailed at trial on both the denial of benefits claim and the breach of fiduciary duty claim, Plaintiffs sought (1) a declaration that "UBH violated the terms of the class members' plans requiring that coverage be consistent with generally accepted standards of care and clarifying class members' rights under the plans"; (2) an order "remanding UBH's coverage determinations for reprocessing under standards that are consistent with generally

accepted standards of care"; (3) prospective injunctive relief; and (4) the appointment of a special master to monitor UBH's compliance with the Remedies Order. Remedies Order at 1–2.

*Declaratory Relief.* On the issue of declaratory relief, Plaintiffs proposed that the Court issue its "core liability findings," which Plaintiffs included in a proposed remedies order. *See* Remedies Order at 5. The Court agreed to grant Plaintiffs declaratory relief, as set forth in the proposed order. *Id.* at 10.

Accordingly, the Final Judgment (ECF No. 531) contains a declaration that the Plans "required, as one condition of coverage, that services be consistent with generally accepted standards of care." Final Judgment § I.5. The Judgment further declares that "UBH uses its Guidelines to interpret and apply those plan terms, and acts in a fiduciary capacity when it develops, revises and applies its Guidelines." *Id.* Next, the Judgment declares that Plaintiffs had a right under ERISA "to have UBH adjudicate whether requested services met that condition according to criteria that were, in fact, consistent with generally accepted standards of care." Judgment § I.6. Paragraphs 7 and 8 of the Judgment then summarize the generally accepted standards of mental health and substance use disorder care and the ways in which the Court concluded that the Guidelines violated those standards. Final Judgment §§ I.7-8. The Judgment then states that, "for these reasons" every "adverse benefit decision made by UBH based in whole or in part on any of the Guidelines listed in Exhibit A between May 22, 2011 and June 1, 2017, was wrongful and made in violation of plan terms and ERISA." Final Judgment § I.9.

After addressing issues related to the state mandate class, the Declaratory Judgment states that "UBH's Guidelines development process was tainted by UBH's financial interests throughout the Class Period" (Final Judgment § I.23); "UBH is a fiduciary within the meaning of ERISA, 29 U.S.C. § 1001 *et seq.*" (*Id.* § I.24) and; "[a]s a fiduciary, UBH owes fiduciary duties to the participants and beneficiaries of the plans UBH administers, including the duties set forth in 29 U.S.C. § 1104(a)(1)" (*Id.* § I.25). Finally, the Declaratory Judgment concludes by stating: "***For all the reasons stated above and in the [FFCL]***, UBH breached its fiduciary duties to the class

members, including its obligations under 29 U.S.C. §§ 1104(a)(1)(A), (a)(1)(B), and (a)(1)(D), when it developed, revised and applied the Guidelines." Final Judgment § I.26 (emphasis added).

*Remand for Reprocessing*. Next, the Court ordered that "each and every adverse benefit determination meeting the criteria for Class Membership in this case" be remanded for reprocessing. Final Judgment § II. The Judgment sets forth in detail how UBH was required to complete the reprocessing of claims. Final Judgment § II.B. The Court specified that in assessing coverage, UBH could "re-evaluate only whether the proposed treatment at the requested level of care was consistent with generally accepted standards of care" and further ordered that in performing this re-evaluation, UBH would be required to use ASAM, LOCUS, CASII, or ECSII, based on the treatment. *Id.*

*Injunctive Relief*. Similarly, as prospective injunctive relief, the Court permanently enjoined UBH from using the Guidelines "when making coverage-related determinations as to whether services are consistent with generally accepted standards of care." Final Judgment §§ III.A.1-2. The Court also ordered that (1) UBH adopt ASAM, LOCUS, CASII, and ESCII for evaluating whether services are consistent with generally accepted standards of care; (2) UBH develop a training program for employees who make or have input into clinical coverage determinations; and (3) UBH develop a training program for both employees who make or have input into clinical coverage determinations and senior management on UBH's duties under ERISA, "including what it means to be an ERISA fiduciary and to administer benefit plans solely in the interests of participants and beneficiaries, as well as the need to comply with plan terms." Final Judgment §§ III.B.

### C. The Ninth Circuit Holds That Plaintiffs' Denial Of Benefits And Breach Of Fiduciary Duty Claims Suffer From Flaws Requiring Reversal Of The Judgment.

On appeal, the Ninth Circuit ordered decertification of the Guidelines classes pursuing a denial of benefits claim for reprocessing and reversed judgment on the denial of benefits claim without remand. *Wit III*, 79 F.4th at 1083–86; *Wit IV*, 2024 WL 4036574, at *2. As for Plaintiffs' breach of fiduciary duty claim, the Ninth Circuit held that judgment was reversed as well, to the

extent it was based on an erroneous interpretation of the Plans. *Wit III*, 79 F.4th at 1088; *Wit IV*, 2024 WL 4036574, at *2. The Ninth Circuit remanded the case to this Court to determine what portions, if any, of the breach of fiduciary duty claim survived and whether any such surviving portions of that claim required exhaustion of administrative remedies. *Id.* at 1088–90.

The Ninth Circuit held that the Court erred in certifying the classes' denial of benefits claim because Plaintiffs did not and could not prove that every member of the class was denied the right to a "full and fair review" of their claim for benefits. *See id.* at 1084. While Plaintiffs had insisted that they asserted only a "facial challenge" to the Guidelines and needed only to show that UBH used the Guidelines in making an individual plaintiff's benefit decision, the Ninth Circuit held that Plaintiffs were not "entitled to have their claims reprocessed regardless of the individual circumstances at issue in their claims." *Id.* The Ninth Circuit explained that there were "many provisions of the [Guidelines] that Plaintiffs did not challenge and that the district court did not find to be overly restrictive," and Plaintiffs had not shown that claimants who were denied based on an unchallenged Guidelines provision were "denied a full and fair review." *Id.* at 1085. Accordingly, the Ninth Circuit concluded that "on this record Plaintiffs have fallen short of demonstrating that all class members were denied a full and fair review of their claims or that such a common showing is possible." *Id.* at 1086.

On the merits of Plaintiffs' claims (including the denial of benefits and breach of fiduciary duty claims), the Ninth Circuit concluded that "the same errors present in the district court's denial of benefits class certification order also infected its merits and remedy determinations." *Id.* at 1086. The Ninth Circuit also held that the Court erred on the merits insofar as it interpreted the Plans to require coverage of any treatment deemed consistent with generally accepted standards of care. *Id.* at 1088. While parts of the record indicated that the Court understood that "consistency with GASC was just one requirement for coverage . . . there [were] other places in the record where the district court stated the opposite." *Id.* The Ninth Circuit thus "reverse[d] the district court's judgment" on the denial of benefits claim. *Wit III*, 79 F.4th at 1088. And because the Ninth Circuit's "reasoning on the merits of the denial of benefit claim also applied to the fiduciary duty claim," that claim

was reversed as well. *Wit IV*, 2024 WL 4036574, at *2. The Ninth Circuit then noted that the district court made other findings relevant to Plaintiffs' breach of fiduciary duty claim. In footnote 7 of *Wit III*, the Ninth Circuit stated:

> The district court also found, among other things, that financial incentives infected UBH's Guideline development process and that UBH developed the Guidelines with a view toward its own interests. Our decision does not disturb these findings to the extent they were not intertwined with an incorrect interpretation of the Plans.

*Wit III*, 79 F.4th at 1088 n.7. Thus, the *only* basis for the breach of the fiduciary claim that the Ninth Circuit identified as *possibly* undisturbed by *Wit III* was the conflict-of-interest findings.

Finally, the Ninth Circuit acknowledged that UBH had contended on appeal that this Court erred when it excused unnamed class members from demonstrating compliance with the Plans' administrative exhaustion requirement. *Id.* at 1088–89. Because the Court had not reached the question of whether Plaintiffs' fiduciary duty claim was subject to exhaustion requirements, the Ninth Circuit remanded with instructions for this Court to determine "the threshold question of whether Plaintiffs' breach of fiduciary duty claim is a 'disguised claim for benefits,' subject to the exhaustion requirement," and if so, "determine if that requirement was satisfied or otherwise excused in light of our resolution of the issues presented in this appeal." *Id.*

After the Ninth Circuit granted UBH's mandamus petition, Plaintiffs and UBH stipulated that there are now two "threshold" questions for this Court to decide: "(1) what portion of the Plaintiffs' breach of fiduciary duty claim, if any, remains in the case; and (2) whether any surviving portion of the breach of fiduciary duty claim is subject to administrative exhaustion (and if so, whether such requirements have been satisfied)." ECF No. 658.

## ARGUMENT

### I.    Plaintiffs' Claim For Breach Of Fiduciary Duty Was Reversed In Its Entirety, And Judgment Should Be Entered For UBH.

The breach of fiduciary duty claim Plaintiffs pursued, and the grounds on which this Court issued judgment on that claim, are indistinguishable from Plaintiffs' now-reversed denial of benefits claim. For both claims, Plaintiffs sought to remedy the *same harm* (the denial of their right to fair adjudication of their claims for benefits), on behalf of the *same class*, flowing from the *same*

*conduct* (UBH's adoption of Guidelines that were inconsistent with GASC), based on the *same interpretation* of plan documents, and for which they sought many of the *same remedies*. Plaintiffs' remaining claim for breach of fiduciary duty thus fails for the same reasons as their rejected claim for denial of benefits.

### A.    Plaintiffs' Theory Of Injury Is Based On The Same Harm That Was Rejected In *Wit III*.

*Same Theory of Harm*. In the FFCL, the only injury this Court found that Plaintiffs and class members suffered from UBH's purported breach of fiduciary duty was "injury result[ing] from 'denial of [Plaintiffs'] right to fair adjudication of their claims for coverage based on Guidelines that were developed solely for their benefit.'" Pls. Opening Br., at 3 (quoting FFCL ¶ 204). That finding is plainly insufficient under the Ninth Circuit's holding in *Wit III*, because the Ninth Circuit held that Plaintiffs *did not prove* that very injury.

In *Wit III*, "Plaintiffs argue[d] that under ERISA, beneficiaries have a right to a 'full and fair review'" of their claims for benefits "under the correct standard," *Wit III*, 79 F.4th at 1084, which Plaintiffs asserted, and this Court agreed, were the ASAM, LOCUS, CASII, and ECSII criteria. *See* FFCL ¶¶ 58–60; Judgment §III.B.1. The Ninth Circuit explicitly rejected Plaintiffs' argument and held that Plaintiffs *failed to prove* that injury, holding: "Plaintiffs have fallen short of demonstrating that all class members were denied a full and fair review of their claims *or that such a common showing is possible*." *Wit III*, 79 F.4th at 1086 (emphasis added).

On that basis, the Ninth Circuit not only reversed class certification of the denial of benefits claim, it also *reversed the named Plaintiffs' denial of benefits claim on the merits*, a point that the Ninth Circuit reiterated in *Wit IV*. *See Wit III*, 79 F.4th at 1086 ("Turning to the merits of Plaintiffs' claims, we begin by noting that the same errors present in the district court's denial of benefits class certification order also infected its merits and remedy determinations."); *Wit IV*, 2024 WL 4036574, at *2 ("*Wit III* established that the errors in the class certification order related to the denial of benefits claim also infected the merits and remedy determinations related to that same claim."). Plaintiffs did not assert, and the Court did not find, any other form of injury to support the fiduciary duty claim besides the "'denial of [Plaintiffs'] right to fair adjudication of their

13

claims" under different guidelines. FFCL ¶ 204; *see also* Pls. Opening Br., at 3. The Court's judgment on the claim for breach of fiduciary duty is predicated on the exact same injury that the Ninth Circuit rejected in *Wit III* and thus also is reversed.

Plaintiffs try to avoid this problem by arguing that the Ninth Circuit "upheld that determination" of injury "as a basis for *standing*" under Article III. Pls. Opening Br., at 3 (emphasis added). But under settled law, Plaintiffs are wrong to conflate Article III standing with proof of an injury to support a statutory claim for relief under ERISA. Article III standing and statutory requirements of proof "are not coextensive." *City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1039 (9th Cir. 2021) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014)). As the Supreme Court has explained, Article III standing is a constitutional "bare minimum," *Lexmark Int'l.*, 572 U.S. at 137, and it does not "allow all factually injured plaintiffs to recover" irrespective of more stringent statutory requirements. *Id*. at 129.

*Wit III* proves this point. In *Wit III*, the Ninth Circuit held the "*risk of harm* to Plaintiffs' interest in their contractual benefits" was sufficient for the limited purposes of Article III standing. *Wit III*, 79 F.4th at 1082 (emphasis added). But the rest of the Ninth Circuit's analysis shows that the *risk of harm* that gave rise to Article III standing was not enough to prove the *actual harm* necessary to establish a claim for relief under ERISA. Were it otherwise, the Ninth Circuit's conclusion that "Plaintiffs have fallen short of demonstrating that all class members were denied a full and fair review of their claims or that such a common showing is possible" would make no sense. *Id*. at 1086.

*Same Class Definitions.* The class definitions are *exactly* the same for the breach of fiduciary duty claim and the denial of benefits claim. Plaintiffs did not seek, and this Court did not certify, a separate fiduciary duty class of individuals who suffered some different harm unrelated to the denial of benefits. Instead, the central, defining criterion for inclusion in the Guideline classes is whether a class member's claim for benefits "was denied by UBH . . . based upon" the Guidelines. FFCL ¶ 13.

*Same Remedies*. With the exception of claim reprocessing (discussed separately below), Plaintiffs also did not distinguish between the remedies they sought for their denial of benefits and their fiduciary duty claims. For both claims, they sought declaratory and prospective injunctive relief (and related appointment of a special master). The Court ordered these same remedies on both claims under both 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). *See* Pls. Opening Remedies Br., ECF No. 426, at 5–6, 21–31; Remedies Order, ECF No. 491, at 5–10, 58–83; Final Judgment, ECF No. 531, at 1–6, 11–14.

Because Plaintiffs' breach of fiduciary duty claim was based on the rejected theory of injury that UBH denied all class members the right to a "fair" adjudication of their benefits claims, Plaintiffs did not prove harm, a necessary element of their claim. Under *Wit III*, their breach of fiduciary duty claim was reversed in its entirety.

## B.    Plaintiffs' Theory Of Fiduciary Breach Is Based On The Same Erroneous Interpretation Of The Plans That Was Rejected In *Wit III*.

*Same Interpretation of Plan Documents.* This Court's finding of breach—the second element of Plaintiffs' fiduciary duty claim—also cannot stand after *Wit III* and *Wit IV* for similar reasons. Throughout this case, Plaintiffs argued that the same conduct supported their claim for denial of benefits and breach of fiduciary duty. For example, in their Trial Brief, they argued that the Court would "readily find at trial that UBH's Guidelines [were] more restrictive than generally accepted standards of care" and that this "finding alone [would] entitle Plaintiffs to relief on both their claims." ECF No. 299 at 14. The Court's Judgment mirrored this request. The actual conduct the Court held to constitute a *breach* of UBH's fiduciary duties was: "adopting Guidelines that are unreasonable and do not reflect generally accepted standards of care." FFCL ¶ 203. That is the exact same conduct that the Court held to be an abuse of discretion in connection with the denial of benefits claim. [3] FFCL ¶ 212 ("[T]he Court finds, by a preponderance of the evidence, that

---

[3] In addition, as to the first element of Plaintiffs' breach of fiduciary duty claim—the existence of a fiduciary duty—the Court described UBH's status as a fiduciary by reference to UBH's role in making coverage determinations by using the Guidelines. *See* FFCL ¶ 197 (explaining that UBH exercises its authority to interpret and apply plan terms "when it makes coverages determinations" and therefore "when [UBH] adopts and applies its Guidelines to coverage determinations, UBH is

15

UBH's Guidelines were unreasonable and an abuse of discretion because they were more restrictive than generally accepted standards of care."); *see also* ECF No. 299 at 14. If it was ever uncertain, *Wit IV* leaves no question that this Court's judgment, based on its conclusion that UBH adopted guidelines that were more restrictive than generally accepted standards of care, was "definitive[ly]" reversed. *See Wit IV*, 2024 WL 4036574, at *2.

In *Wit III*, the Ninth Circuit held that "to the extent the district court interpreted the Plans to require coverage for all care consistent with GASC, the [district] court erred." *Wit III*, 79 F.4th at 1088. As a result, the Ninth Circuit reversed "the district court's judgment that UBH wrongfully denied benefits to the named Plaintiffs to the extent the district court concluded the Plans require coverage for all care consistent with GASC." *Wit III*, 79 F.4th at 1088. As this Court knows, following *Wit III*, Plaintiffs argued, as they do now in connection with the breach of fiduciary duty claim, that *Wit III*'s "to the extent" language effectively meant that the denial of benefits claims was not reversed at all. According to Plaintiffs, this Court never made such an error in the first place, so nothing was actually reversed. *See* ECF No. 612, Pls. Opening Br. on Scope of Remand, at 15 ("This Court never interpreted the Plaintiffs' or Class Members' Plans as requiring coverage for all care that is consistent with GASC."). Plaintiffs repeated this argument to the Ninth Circuit in *Wit IV*, contending that *Wit III* "upholds the district court '[t]o the extent' it 'concluded that the challenged portions of the Guidelines represented UBH's implementation of the GASC requirement'" and asserting that *Wit III* "declined to resolve whether the district court erred in interpreting the plans . . . ." Pls. Opp. to Pet. for Writ of Mandamus, Ninth Cir. Case No. 24-242, ECF No. 14.1 at 8.

In *Wit IV*, the Ninth Circuit flatly rejected Plaintiffs' argument. The panel acknowledged that "we could have said it more plainly" in *Wit III*, but *Wit IV* leaves no room for debate. *Wit III* "reversed (without remand)" the "merits judgment on the denial of benefits claim" and "disposed of the entire claim." *Wit IV*, 2024 WL 4036574 at *2. In other words, "the extent [to which] the

_____

required to act in a matter that is consistent with the fiduciary duties set forth above").

district court" erroneously "concluded the Plans require coverage for all care consistent with GASC," *Wit III*, 79 F.4th at 1088, *was total*.

The Ninth Circuit then reiterated that its "reasoning on the merits of the denial of benefit claim also applied to the fiduciary duty claim." *Wit IV*, 2024 WL 4036574, at *2. And it confirmed that the fiduciary duty claim was reversed to the same "extent" as the denial of benefits claim, because the fiduciary duty claim was, at least principally, based on the same "erroneous interpretation of the plans" that caused the Ninth Circuit to reverse the entire denial of benefits claim. *Id*. (citing *Wit III*, 79 F.4th at 1088 n.7); *see also Wit III*, 79 F.4th at 1088 n.7 ("The district court's judgment on Plaintiffs' breach of fiduciary duty claim also relied heavily on its conclusion that the Guidelines impermissibly deviated from GASC.").

Plaintiffs' request that the Court effectively un-reverse the fiduciary duty claim by simply "clarifying that the Court's ruling that UBH breached its fiduciary duties does not in any way depend on any misinterpretation of the Plan," Pls. Opening Br., at 29, thus invites the exact same error that warranted both reversal and mandamus by the Ninth Circuit. If the erroneous interpretation of the Plans was grounds to reverse Plaintiffs' denial of benefits claim in its entirety, it necessarily is grounds to reverse the indistinguishable breach of fiduciary duty claim in its entirety as well.

### 1. The Court's Conflict Of Interest Findings Are "Intertwined" With The Reversed Denial Of Benefits Claim And Are Not Independent Breaches.

In reversing judgment on the fiduciary duty claim, the Ninth Circuit viewed it as "unclear whether the *entirety* of the fiduciary duty claim was" (like the denial of benefits claim) "based on misinterpretation of the Plans' GASC precondition," or whether the Court's judgment on the fiduciary duty claim was based on any independent ground that might yet "survive under our reasoning" on the fully-reversed denial of benefits claim. *Wit IV*, 2024 WL 4036574, at *2 (emphasis added). Specifically, the Ninth Circuit noted this Court's finding "that financial incentives infected UBH's Guideline development process and that UBH developed the Guidelines with a view toward its own interests," and explained that its "decision does not disturb these

findings *to the extent they were not intertwined with an incorrect interpretation of the Plans*." *Wit III*, 79 F.4th 1088 n.7 (emphasis added).

Effectively recognizing that such conflict-of-interest findings are all that is even *conceivably* left of their fiduciary duty claim, Plaintiffs argue:

> Thus to the extent the Court found that UBH breached its fiduciary duties by placing its financial interests over the interests of its beneficiaries, disregarding and distorting the standards it purported to be implementing, and lying about the nature of its Guidelines, these holdings—which are untethered to any plan interpretation, erroneous or not—remain valid under the Ninth Circuit's decision.

Pls. Opening Br., at 2–3. But, once again, Plaintiffs fail to grapple with this Court's actual findings on the element of fiduciary breach because this Court *made no such finding of breach* that would be "untethered to any plan interpretation" of the GASC precondition.[4]

Again, the act that the Court actually found to be a breach of fiduciary duty was "adopting Guidelines that are unreasonable and do not reflect generally accepted standards of care" to deny benefits. *See* FFCL ¶ 203. While the Court's findings with respect to various financial conflicts of interest (which UBH disputes) were *relevant* to that holding of breach, the conflict findings largely went to the Court's assessment of "the degree of skepticism" to be applied in evaluating UBH's conduct. FFCL ¶¶ 201, 202, 210. Indeed, the Court's conflict-of-interest findings were equally relevant to the denial of benefits claim for the very same reasons. The Court made no distinction between those findings as they related to the fiduciary duty claim and the denial of benefits claim, *see* FFCL ¶¶ 174–189, 210, confirming that those findings are fully "intertwined" with the denial of benefits claim that the Ninth Circuit reversed. *Wit III*, 79 F.4th at 1088 n.7.

---

[4] Plaintiffs' assertion that the Court found UBH liable for breach of fiduciary duty *to Plaintiffs and class members* for supposedly "distorting the standards it purported to be implementing, and lying about the nature of its Guidelines," Pls. Opening Br., at 2–3, is especially far-fetched. Plaintiffs appear to be referencing this Court's finding, which UBH disputes, that UBH made representations "to Connecticut regulators" about the Guidelines' consistency with the ASAM Criteria, which the Court found "UBH knew . . . to be false . . . ." FFCL ¶ 162. But Plaintiffs do not even try to connect that finding about statements made to a *state regulator* to the breach of any fiduciary duty owed to *Plaintiffs or the class*. Nor do they identify any harm flowing to class members from those statements because there is not a shred of evidence that Plaintiffs or any class member ever read or relied on them, or even read the ASAM Criteria, UBH's Guidelines, or their health plans, let alone that anyone was actually misled about the scope of coverage.

In short, Plaintiffs' assertion that UBH acted on its own financial interests to adopt guidelines that were inconsistent with generally accepted standards of care implicates the exact same "incorrect interpretation of the Plans" that caused the Ninth Circuit to reverse the denial of benefits claim in its entirety,[5] and is plainly foreclosed.[6] *Wit III*, 79 F.4th at 1088 n.7; *see also Wit IV*, 2024 WL 4036574, at *2 (explaining that the claim for breach of fiduciary duty is reversed to the extent it is "based on misinterpretation of the Plans' GASC precondition," which is what led to reversal of the denial of benefits claim).

### 2. The Court's Conflict Of Interest Findings Do Not Support An Independent Fiduciary Duty Claim.

Even if the Court's conflict of interest findings could somehow be disentangled from this Court's interpretation of the Plans (it cannot), even a fully independent claim for breach of fiduciary duty based on the Court's conflict of interest findings would still fail for at least two independent reasons.

*First*, a "possible" or even "actual" "conflict of interest" does not establish that the plan administrator abused its discretion in violation of its fiduciary duties of loyalty and care. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 106–08, 115 (1989); *see also Pegram v. Herdrich*, 530 U.S. 211, 225 (2000) ("Under ERISA . . . a fiduciary may have financial interests adverse to beneficiaries."). Even a conflicted fiduciary satisfies the duty of loyalty so long as "they provided

---

[5] Indeed, Plaintiffs' claim for breach of fiduciary duty was principally "brought pursuant to 29 U.S.C. § 1132(a)(1)(B)," Am. Compl., ECF No. 32, ¶ 195; FFCL ¶ 16, which the Supreme Court has explained is "bound up with the [plan's] written instrument." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013). While Plaintiffs also asserted their fiduciary duty claim under 29 U.S.C. § 1132(a)(3)(A), they did so only in the alternative, and only "to the extent the injunctive relief Plaintiffs seek is unavailable under" § 1132(a)(1)(B). FFCL ¶ 16.

[6] In support of this adoption-only theory of breach, Plaintiffs argue that they and class members were harmed because the Guidelines "subjected all Class members to a new limitation on the scope of coverage that was previously available under their Plans." Pls. Opening Br., at 24. But that is just another way of saying that the Guidelines "impermissibly narrow[ed] the scope of their benefits . . . ." *Wit III*, 79 F.4th at 1083. Again, Plaintiffs' assertion that such a risk of harm is sufficient to support a claim for relief under ERISA (as distinct from Article III standing), is irreconcilable with the Ninth Circuit's conclusion that Plaintiffs failed to prove class-wide harm to be entitled to relief. *Wit III*, 1086 F.4th at 1086.

1   Plaintiffs with their benefits due." *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100

2   (9th Cir. 2004) (no claim for breach of fiduciary duties of loyalty or prudence so long as plaintiffs

3   received "their benefits due"); *see also Hutchins v. HP Inc., No.* 5:23-CV-05875-BLF, 2025 WL

4   404594, at *5 (N.D. Cal. Feb. 5, 2025) ("[T]he fiduciary duty is fulfilled where the fiduciary

5   ensures that participants have received their promised benefits.").

6          Instead, any conflict is merely "weighed as a '*facto[r]* in determining whether there is an

7   abuse of discretion.'" *Firestone*, 489 U.S. at 115 (emphasis added; alteration in original); *accord*

8   *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008) (courts must "take account" of any conflict

9   of interest "when determining whether the trustee . . . has abused his discretion"). The existence

10  of a conflict does not even require "a change in the *standard* of review"; "a deferential [abuse-of-

11  discretion] standard" still applies to "the discretionary decisionmaking of a conflicted" fiduciary.

12  *Glenn*, 554 U.S. at 115. Thus, even assuming UBH had a conflict of interest in developing the

13  Guidelines (it did not), that fact alone would not establish a breach of fiduciary duty or any other

14  violation of ERISA. *In re McKesson HBOC, Inc. ERISA Litigation*, 391 F. Supp. 2d 812, 835 (N.D.

15  Cal. 2005) ("No case of which the court is aware has held that ERISA fiduciaries breach their duty

16  of loyalty simply for 'placing themselves in a position' where they might act disloyally.").

17         *Second*, Plaintiffs have not presented adequate "proof" that the newly-asserted breach of

18  fiduciary duty "caused harm," nor even a coherent theory of how they were harmed by any

19  conflicts of interest. *Huntsinger v. The Shaw Grp., Inc.*, 268 F. App'x 518, 520 (9th Cir. 2008);

20  *see Lexmark Int'l*, 572 U.S. at 132 ("we generally presume that a statutory cause of action is limited

21  to plaintiffs whose injuries are proximately caused by violations of the statute"). Under their

22  current theory, so long as UBH labored under a conflict of interest, Plaintiffs would consider

23  themselves "harmed" even if UBH had developed perfect clinical guidelines and made all claims

24  decisions accurately. And as explained above, the Ninth Circuit flatly rejected the only other

25  "harm" Plaintiffs have ever asserted in this case, and they do not identify (to say nothing of prove)

26

27

28

any independent harm that they or any class member suffered as a result of financial conflicts of interest separate and apart from the denial of a full and fair review of their benefit claims.[7]

### 3. Plaintiffs' Other Theories Of Fiduciary Liability Also Do Not Survive *Wit III* Because They Are Intertwined With The Same Incorrect Interpretation Of The Plans.

Plaintiffs' other newly-espoused theories of breach also do not survive *Wit III*.

For instance, Plaintiffs argue that UBH breached its fiduciary duty of care by failing to simply adopt third-party criteria for evaluating whether a service is consistent with generally accepted standards of care, such as ASAM or LOCUS. *See* Pls. Opening Br., at 21. This attempt to construct a fiduciary duty violation from UBH's decision not to simply adopt the ASAM or LOCUS criteria is at odds with this Court's findings and with *Wit III*. For one, this Court was clear that, as a factual matter, there "is no single source of generally accepted standards of care," and the Court highlighted various other potential sources of generally accepted standards of care besides ASAM and LOCUS. FFCL ¶ 57 (citing Trial Ex. 634). Neither ERISA nor the Plans required UBH to adopt Plaintiffs' preferred set of level of care criteria. *See* FFCL ¶¶ 193–206. In addition, Plaintiffs' suggestion that UBH had a fiduciary obligation to adopt ASAM or LOCUS cannot be reconciled with *Wit III*. The Ninth Circuit did not hold that UBH was obligated to adopt third-party criteria to implement the terms of the Plans. Rather, as discussed above, the issue of whether the Guidelines "impermissibly deviated from GASC" is part and parcel with Plaintiffs' now-reversed denial of benefits claim. *See Wit III*, 79 F.4th at 1088 n.7.

---

[7] Indeed, Plaintiffs did not even prove a connection between any conflicts of interest and their defunct *original* theory of harm. At trial, Plaintiffs presented only three instances, across 180 meetings, in which the committee charged with approving the Guidelines discussed benefit expense in any context. In two, consistent with plan requirements, UBH questioned whether to add coverage for specific treatments of questionable efficacy and cost-effectiveness. FFCL ¶¶ 185–86. In the third, UBH declined to make a major overhaul of its Guidelines without being able to "estimate [its] financial impact." *Id.* ¶ 189. But it does not follow that UBH would have made the overhaul had it dispensed with a financial assessment. Without any evidence that UBH's purported financial interests *caused* UBH to use any challenged provision of the Guidelines, Plaintiffs cannot maintain that those interests sustain a viable breach of fiduciary duty claim.

Plaintiffs commit the same error in Sections I.A and I.C. of their Argument. In Section I.A, Plaintiffs tie their breach of fiduciary duty claim to "misrepresentations" that UBH purportedly made regarding whether the Guidelines "faithfully reflected GASC." Pls. Opening Br., at 20; *but see* n. 4, above. Similarly, Plaintiffs insist that UBH violated its fiduciary duty to comply with Plan terms by adopting "unreasonable" Guidelines that did "not reflect generally accepted standards of care." Pls. Opening Br., at 22–23 (citing FFCL ¶ 203). Once again, *Wit III* (and *Wit IV*) specified that the Court's ultimate merits judgment that the Guidelines "impermissibly deviated from GASC" was reversible error that can no longer form part of Plaintiffs' breach of fiduciary duty claim. *Wit III*, 79 F.4th at 1088 n.7.

This process-related conduct cannot support a separate claim for breach of fiduciary duty because it is still conduct that is "intertwined with an incorrect interpretation of the Plans." *Wit III*, 79 F.4th at 1088 n.7. And since these alleged acts have no connection to any harm to Plaintiffs or the class, they cannot support judgment in favor of Plaintiffs or the class.

## C.    Plaintiffs Cannot Seek Reprocessing.

The *only* difference between Plaintiffs' denial of benefits and breach of fiduciary duty claims is the respective remedies they sought. As the Ninth Circuit recognized, Plaintiffs sought "reprocessing" with respect to their "denial of benefits clai[m]" only, whereas they sought only prospective "injunctive and declaratory relief" for their breach of fiduciary duty claim. *Wit*, 79 F.4th at 1079. The Ninth Circuit relied on that premise in holding that Plaintiffs' "novel reprocessing theory" "d[id] not implicate . . . the fiduciary duty claim." *Id.* at 1084 n.5. Plaintiffs never objected to that holding despite filing multiple petitions for rehearing and cannot now contest the Ninth Circuit's characterization of their requested relief. But that difference in relief sought does not save any aspect of the fiduciary duty claim, because both sets of remedies seek to rectify the same (unproven) harm: that UBH's use of the challenged guidelines deprived Plaintiffs of fair adjudication of their claims for benefits.

Notably, Plaintiffs now appear to accept that the Ninth Circuit has definitively closed the book on their attempts to seek reprocessing in this case. *See*, *e.g.*, Pls. Br. at 29 (explaining that

"Plaintiffs seek equitable remedies that will inure to the benefit of *all* plan members, not just to any particular individual"). This Court should thus rule that reprocessing is foreclosed by the Ninth Circuit's unequivocal holdings—in *Wit III* and in *Wit IV*—that Plaintiffs failed to prove any right to reprocessing. *Wit III*, 79 F.4th at 1086; *Wit IV*, 2024 WL 4036574, at *2. Reprocessing cannot be a "surviving" aspect of a fiduciary duty claim that the Ninth Circuit found was limited to prospective injunctive and declaratory relief—especially because Plaintiffs never contested that conclusion despite numerous opportunities to do so.

## II. Plaintiffs Cannot "Un-Reverse" Their Reversed Claim For Breach Of Fiduciary Duty With New Factual Findings That They Never Requested Prior To Judgment.

Plaintiffs also seek to rewrite the record and ask the Court to issue eight pages of *new* findings of fact regarding UBH's development and use of the Guidelines in an effort to essentially "un-reverse" their now-terminated claim. *See* ECF No. 661-2. Plaintiffs' request for new fact findings at this stage of the case is wholly improper for several reasons.[8]

First, the Ninth Circuit did not remand the breach of fiduciary duty claim to the Court to make additional or supplemental findings. To execute the mandate, the Court must simply apply the Ninth Circuit's holding to the facts already found by this Court prior to appeal. *Firth v. United States*, 554 F.2d 990, 993 (9th Cir. 1977) (on remand following reversal of a trial judgment, district court could not make additional findings to "embellish[] or clarify[] [an] intended, albeit unarticulated, finding of fact"). Nowhere in *Wit III* did the Ninth Circuit remotely suggest that additional fact finding would be necessary or appropriate, and Plaintiffs cite no case that supports this extraordinary request.[9] To the contrary, the Ninth Circuit made clear in *Wit IV* that it remanded

---

[8] UBH separately files Objections To Plaintiffs' Post-Remand Proposed Supplemental Findings of Fact concurrently with this Brief.

[9] The Ninth Circuit's unpublished memorandum decision in *Steigleman v. Symetra Life Ins. Co.*, 2025 WL 602175, at *1 (9th Cir. Feb. 25, 2025) is inapposite. *See* Pls. Opening Br., at 3. In *Steigleman*, the trial court had granted summary judgment to the defendant *before trial*, so when the Ninth Circuit reversed the grant of summary judgment on appeal and remanded for further proceedings, the trial court then accepted additional evidence, denied summary judgment, and went on to hold a bench trial. *Id.* In stark contrast to *Steigleman*, this Court has already conducted a full bench trial, made extensive findings of fact (and supplemental findings of fact), all of which has gone up on appeal and been reviewed multiple times by the Ninth Circuit.

23

the breach of fiduciary duty claim *only* "to *identify* any surviving aspect of that claim" in light of the Ninth Circuit's rulings on the merits, *Wit IV*, 2024 WL 4036574, at *2 (emphasis added), not to *create* an entirely new basis for a claim.

Second, as UBH noted in its earlier briefing regarding the scope of remand, ECF No. 616 at 22 n.12, Plaintiffs' deadline to seek amended or additional findings was "no later than 28 days after the entry of judgment . . . ." Fed. R. Civ. P. 52(b); *East Jefferson Coal. for Leadership & Dev. v. Parish of Jefferson*, 926 F.2d 487, 491–92 (5th Cir. 1991) (holding that, as to findings that are not within the scope of the remand order, Rule 52(b)'s deadline applies even after remand). Plaintiffs did not make any such request for additional or amended findings, so their request for "supplemental" findings comes far too late. Indeed, more than seven years have passed since the trial in this matter concluded, and in that time, there have been years of appellate proceedings based on the current record and factual findings. Plaintiffs had a full opportunity to submit proposed findings of fact following the October 2017 trial, *see* ECF No. 394, and offer no basis for their request for a second bite at the apple now. Even now, Plaintiffs do not actually move the Court to make additional findings under Rule 52(b), likely because they know that such a motion would be over four-years too late. Fed. R. Civ. P. 52(b) ("On a party's motion *filed no later than 28 days after the entry of judgment*, the court may amend its findings—or make additional findings—and may amend the judgment accordingly.") (emphasis added); *see also* Fed. R. Civ. P. 59(b) ("A motion for a new trial must be filed no later than 28 days after the entry of judgment.").

Third, Plaintiffs cannot "supplement" their way around the Ninth Circuit's judgment on their breach of fiduciary duty claim. Whatever supplemental fact findings Plaintiffs may seek to have the Court adopt will not alleviate the fundamental errors in the Court's ultimate judgment and remedies orders. The effect of the Court's judgment on the breach of fiduciary duty claim, and the related prospective remedies it imposed, was to compel coverage that is solely consistent with GASC, without regard to any other plan terms, including other requirements of medical necessity. That error cannot be corrected by simply announcing that the Ninth Circuit was wrong. Entering

Plaintiffs' proposed new findings of fact seven years after trial would be both procedurally and substantively improper.

## III. Plaintiffs Were Required To Exhaust Available Administrative Remedies Before Asserting Their Breach Of Fiduciary Duty Claim.

Only if the Court concludes that some portion of Plaintiffs' breach of fiduciary duty claim survives, the next question that the Court must answer is: Were all Plaintiffs required to exhaust available administrative remedies before asserting their claim in court? *See Wit III*, 79 F.4th at 1089. The answer to that question, should the Court reach it, is yes.

Before filing suit to enforce rights under ERISA, a benefits plan member must exhaust available administrative remedies. *Amato v. Bernard*, 618 F.2d 559, 566–68 (9th Cir. 1980). This exhaustion requirement arises from two distinct sources: from the judicial construction of ERISA (*i.e.*, the "prudential" exhaustion requirement) *and*, in relevant cases, the contractual terms of the members' plan itself. *See Conley v. Pitney Bowes*, 34 F.3d 714, 716 (8th Cir. 1994). Here, any surviving breach of fiduciary duty claim would be subject to prudential exhaustion requirements that each class member was obligated to fulfill before asserting an ERISA claim in court. There is also no dispute that at least some class members were enrolled in Plans containing contractually-mandated exhaustion requirements, separate from any prudential requirement that might otherwise apply. FFCL ¶ 192. Many class members, however, did not avail themselves of the administrative remedies available to them under their Plans. FFCL ¶ 192; Trial Ex. 1655. Reversal of the judgment on the breach of fiduciary duty claim is therefore warranted on this ground as well.

### A. The Breach Of Fiduciary Duty Claim Is Subject To Prudential Exhaustion Requirements Because It Is A Disguised Claim For Benefits.

*Wit III* held that while administrative exhaustion is not required for statutory ERISA claims, "exhaustion is required if a plaintiff's statutory claim is a disguised claim for benefits." 79 F.4th at 1089 (citing *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1294 (9th Cir. 2014) and *Diaz v. United Agric. Emp. Welfare Benefit Plan and Trust*, 50 F.3d 1478 (9th Cir. 1995)). Because Plaintiffs' breach of fiduciary duty claim is, at its core, a plan-based claim relating to benefits and grounded in interpretation of plan terms, rather

than a purely statutory claim, each class member was required to exhaust available administrative remedies before seeking relief in court.

Plaintiffs cannot avoid exhaustion by labeling their breach of fiduciary claim a "statutory" claim. *See* Pls. Opening Br., at 24–25. The Ninth Circuit cautioned in *Diaz* that attaching a "statutory violation" sticker to a claim will not justify a failure to pursue required appeal procedures. *Diaz*, 50 F.3d at 1483; *see also Stephens v. Pension Ben. Guar. Corp.*, 755 F.3d 959, 966 n.7 (D.C. Cir. 2014) (a plaintiff cannot "avoid the exhaustion requirement by recharacterizing a claim for benefits as a claim for breach of fiduciary duty"). Instead, prudential exhaustion requirements will apply, regardless of what a plaintiff calls their claim, if "resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan, rather than upon an interpretation and application of ERISA." *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 253 (3d Cir. 2002) (citing *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999)). Here, Plaintiffs' breach of fiduciary duty claim rests upon an interpretation of the Plans, namely the terms related to medical necessity and generally accepted standards of care, not an interpretation of ERISA. The Court's core conclusion in determining that UBH breached its fiduciary duties to Plaintiffs was that UBH failed "to comply with plan terms by adopting Guidelines that [were] unreasonable and [did] not reflect generally accepted standards of care." FFCL ¶ 203. Reaching this conclusion without doubt required interpretation of the Plans.

Plaintiffs themselves cite *Harrow* and *Smith* but draw the wrong conclusions by suggesting that the determinative factor was whether the plaintiff's claim sought monetary relief. *See* Pls. Opening Br., at 27. This distinction is incorrect. In *Harrow*, the plaintiff was required to exhaust the plan's appeals process even as to her breach of fiduciary duty claim because that claim "was actually premised on the plan administrators' failure to furnish plaintiff with insurance coverage." *Harrow*, 279 F.3d at 254. And while the plaintiff alleged ERISA violations that it claimed were "independent" of any denial of benefits claim, the court explained that "many employee claims for plan benefits may implicate statutory requirements imposed by ERISA" but the mere fact that

1  statutory provisions may be implicated does not justify a failure to comply with applicable

2  exhaustion requirements. *Id.* at 254–55 (quoting *Diaz*, 50 F.3d at 1484).

3      Likewise, in focusing on the fact that *Smith* involved a claim for equitable disgorgement

4  and "self-dealing" allegations vaguely similar to the conflict of interest issues raised in this case,

5  Plaintiffs again miss the point. *See* Pls. Opening Br., at 28. In *Smith*, the defendant was accused of

6  violating fiduciary duties to members of a 401(k) plan by "selling . . . preferred stock at a grossly

7  undervalued price" and "acting on behalf of an adverse party in a transaction." *Smith*, 184 F.3d at

8  362–63. Unlike here, none of the alleged conduct required interpreting the terms of the ERISA-

9  regulated plan (*i.e.*, the 401(k) plan). *Smith* concluded that exhaustion was not necessary because

10 the plaintiff "[did] not challenge a denial of benefits or an action *related to* a denial of benefits"

11 and because "the resolution of Smith's claims rest[ed] upon the interpretation and application of

12 ERISA rather than simply upon the interpretation and application of the 401(k) Plan." *Id.* at 363.

13     Whether under *Diaz*, *Harrow*, or even cases like *Smith*, Plaintiffs' breach of fiduciary duty

14 claim cannot avoid ERISA exhaustion requirements because it is not only "related to" a denial of

15 benefits, *Smith*, F.3d at 363, it is inextricably intertwined with Plaintiffs' denial of benefit claim

16 based on the same conduct and theory of harm. That the heart of Plaintiffs' claim is not a question

17 of interpreting ERISA, but whether UBH correctly interpreted and applied the *Plans*' terms

18 concerning medical necessity and generally accepted standards of care.[10] The Court devoted

19 paragraphs of its FFCL to that very issue, examining what is meant by "generally accepted

20 standards of care" as that term is used in the Plans. *See, e.g.*, FFCL ¶¶ 52–156.

21     Plaintiffs' interest in bringing this suit was to protect and pursue their Plan benefits.

22 Membership in the class asserting the breach of fiduciary duty claim *required* an adverse benefit

23 decision based upon the Guidelines. *See* FFCL ¶ 113. Exhaustion was therefore required for *all*

24 *class members* under well-settled prudential exhaustion requirements.[11]

25 [10] As discussed in footnote 5, above, Plaintiff's claim for breach of fiduciary duty was principally

26 asserted under 29 U.S.C. § 1132(a)(1)(B), which the Supreme Court has emphasized is inextricably "bound up with the written instrument" of the plan. *Heimeshoff*, 571 U.S. at 108.

27 [11] Moreover, any (foreclosed) attempt by Plaintiffs to seek reprocessing on their fiduciary duty

28 claim, *see supra* at Argument Section I.C, would simply reinforce that it is a "disguised claim for

### B. Class Members Were Also Bound To Comply With Contractually-Mandated Exhaustion Requirements Set Forth In Their Plans.

In addition, many class members also were bound to exhaust available remedies under the terms of the Plans themselves. *See Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan*, 111 F.3d 67, 70 (8th Cir. 1997) (affirming dismissal of ERISA plaintiff's claim for "failure to exhaust [her] plans' contractual procedural procedures" and recognizing that "the need to exhaust is a question of contract interpretation"); *Conley*, 34 F.3d at 716. Disregarding Plan terms requiring exhaustion of remedies would flout the well-settled principle that ERISA plans are "contract[s]" whose terms "should be enforced as written." *Heimeshoff*, 571 U.S. at 108.

Here, there is no question that many of the Plans contained express, binding terms requiring the exhaustion of available administrative remedies before filing *any* ERISA-based action in court. *See* FFCL ¶ 192 (citing Trial Exs. 1557, 1583, 1633). Class Member 6600's plan, for example, made clear that plan members could not bring "any legal action . . . to recover reimbursement" until 90 days after a claim was submitted and "all required reviews of [the] claim [were] completed." Trial Ex. 1557-0084. The next paragraph of the plan then states that members *also* were barred from bringing a legal action "*for any other reason* unless [the member] first complete[d] all steps in the appeal process described in this section." *See id.* Such exhaustion provisions are unambiguous—plan members were required to complete the entire appeals process before bringing *any* claim, not just those for reimbursement.

Despite the express exhaustion requirements in their Plan, Class Member 6600 did not complete the appeals process—in fact the record shows that they did not file *any* appeal of their initial denial of coverage. *See* Trial Ex. 1655-0002 (entry for Class Member 6600 in summary chart detailing appeals filed by sample class members). Other examples abound. Of the 100 sample class members, 30 were members of a plan containing an identical exhaustion requirement as Class Member 6600,[12] and 26 of those members failed to exhaust administrative appeals requirements.

---

benefits" and therefore subject to exhaustion requirements. *Wit III*, 79 F.4th at 1089.

[12] Trial Exs. 1557-0084 (6600); 1558-0079 (6943); 1559-0073 (8179); 1563-0101 (8697); 1566-0080–81 (8891); 1571-0092 (10769); 1572-0079–80 (10922); 1583-0085 (12605); 1584-0082 (12649); 1588-0093 (14568); 1597-0077–78 (1870); 1599-0069 (2607); 1601-0075 (2928); 1602-

*See* Declaration of Andrew J. Holmer, Exhibit 1. In all, at least 82 sample member plans had some exhaustion requirements, and only 10 sample members exhausted. *See id.*

Tellingly, Plaintiffs do not argue that this Court has authority to disregard or waive such contractually-mandated exhaustion requirements. *See Heimeshoff*, 571 U.S. at 108 (holding that ERISA plan terms "should be enforced as written" and emphasizing "the particular importance of enforcing plan terms as written in § 502(a)(1)(B) claims"). Plaintiffs just ignore them. But this Court cannot do so. Regardless of prudential exhaustion requirements under ERISA, class members whose Plans required exhaustion as a condition for bringing suit must exhaust. Plaintiffs did not prove class-wide exhaustion, and as a result, Plaintiffs did not prove with common evidence that each class member is entitled to relief.

### C.    The Failure Of Unnamed Class Members To Comply With Applicable Administrative Exhaustion Requirements Is Not Excused.

UBH offered unrefuted evidence at trial that a substantial number of Plaintiffs failed to exhaust the administrative remedies that were available to them under their Plans. *See* FFCL ¶ 192; *see also* Trial Ex. 1655-0002. Because, as demonstrated above, any surviving breach of fiduciary duty claim would be subject to exhaustion requirements, the Court must now determine whether the unnamed Plaintiffs' failure to satisfy applicable exhaustion requirements was excused. *See Wit III*, 79 F.4th at 1089. It was not.

There is no basis to excuse unnamed class members from the mandated administrative exhaustion requirements. First, the fact that the named Plaintiffs exhausted their administrative remedies does not excuse unnamed class members from needing to do so. Courts have repeatedly rejected such a proposition. *See, e.g.*, *Schmookler v. Empire Blue Cross & Blue Shield*, 107 F.3d 4 (2d Cir. 1997) (affirming dismissal of subclass containing members who "have not exhausted their administrative remedies"); *Stephens v. U.S. Airways Grp., Inc.*, 2012 WL 13054263, at *3

---

0069 (3034); 1604-0092–93 (3039); 1608-0085 (3501); 1623-0087 (5165); 1628-0071 (6098); 1630-0079 (6254); 1633-0090 (7292); 1644-0082 (7787); 1635-0080 (8242); 1637-0085 (8489); 1639-0085 (8878); 2009-0134 (3661); 2020-0097 (8617); 2021-0080-71 (8623); 2027-0095-96 (11251); 2029-0083-84 (12102) 2032-0167 (8355).

(D.D.C. July 18, 2012) (recognizing that "exhaustion is only waived in 'the most exceptional circumstances'" and declining to certify class where only the named class member exhausted administrative remedies). In fact, permitting a plaintiff to pursue a claim as an unnamed class member that they could not pursue as an individual claimant would represent an enlargement of a "substantive right" and run afoul of the Rules Enabling Act. 28 U.S.C. § 2072(b).

Second, even if Plaintiffs could demonstrate that exhaustion in this case would have been futile, and they cannot, it would not excuse unnamed members of the breach of fiduciary duty class from needing to satisfy *contractually-mandated* exhaustion requirements. "Futility" serves as an exception to "the *prudential* exhaustion doctrine," *Noren v. Jefferson Pilot Fin. Ins. Co.*, 378 F. App'x 696, 698 (9th Cir. 2010), not contract-based exhaustion requirements such as those found in many of the Plans at issue here. *See Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1444 (9th Cir. 1995) (common law principles of equitable estoppel cannot be used to "contradict the written terms of the plan"); *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992) (same). Even in ERISA cases, courts are bound to "enforce[e] plan terms as written," without exceptions based on judge-made rules. *See Heimeshoff*, 571 U.S. at 108. Accordingly, insofar as the Plans required exhaustion of administrative remedies before bringing suit, class members cannot avoid their exhaustion obligations by claiming futility.

Third, even if the class members could avoid exhaustion obligations based on "futility," they failed to satisfy their burden of proof. A "party invoking the futility exception to the requirement of administrative exhaustion bears the burden of proof." *See Casatelli v. Horizon Blue Cross Blue Shield of New Jersey*, 2010 WL 3724526, at *6 (D.N.J. Sept. 13, 2010) (citing *D'Amico v. CBS Corp.,* 297 F.3d 287, 293 (3d Cir. 2002)). Plaintiffs never even attempted to demonstrate that exhaustion would have been futile. To the contrary, the record shows that UBH's administrative appeals process resulted in initial denials being overturned and benefits being approved for numerous class members. *See* Trial Tr. 1504:8–1505:4 (Bridge); *see also* Trial Ex. 1655 (summary chart showing appeals filed by sample class members and initial claim denials overturned on appeal). Such evidence prevents Plaintiffs from clearing the high bar for invoking

the futility exception. *See In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 2013 WL 12130034, at *20 (C.D. Cal. July 19, 2013) ("In order to come under the futility exception to the exhaustion requirement a plaintiff must show that it is certain that her claim will be denied on appeal, not merely that she doubts that an appeal will result in a different decision."); *see also Diaz*, 50 F.3d at 1485 (holding that "bare assertions" of futility are insufficient to show that an administrative appeal was "doomed to fail").

Plaintiffs do not confront these issues. *See* Pls. Opening Br., at 29. Although the parties stipulated that one of the two questions now before the Court was "whether any surviving portion of the breach of fiduciary duty claim is subject to administrative exhaustion (*and if so, whether such requirements have been satisfied*)," ECF No. 658 (emphasis added), Plaintiffs failed to address the latter issue at all in their opening brief. *See* Pls. Opening Br., at 29 n.17 (stating that Plaintiffs "will request the opportunity to demonstrate in further briefing" that any exhaustion required of unnamed class members was excused, that "exhaustion would have been futile," and that the absent class members' exhaustion should be excused for "additional" unspecified reasons as well). Plaintiffs give no reason for their refusal to address this remanded question now, despite their stipulation to do so, and have waived any further argument on the issue. Further briefing on the question should not be permitted.

## CONCLUSION

For the foregoing reasons, and consistent with the Ninth Circuit's mandate, judgment should be entered for UBH on both of Plaintiffs claims for denial of benefits and breach of fiduciary duty, in their entirety.

Dated: April 25, 2025                                CROWELL & MORING LLP

                                                    */s/ Jennifer S. Romano*
                                                    Jennifer S. Romano
                                                    Andrew Holmer
                                                    Nicholas Dowd

                                                    *Counsel for Defendant*
                                                    *United Behavioral Health*

31