JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
ANDREW HOLMER (SBN 268864)
aholmer@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

NICHOLAS DOWD (admitted *pro hac vice*)
NDowd@crowell.com
CROWELL & MORING LLP
1601 Wewatta Street, Suite 815
Denver, CO 80202
Telephone: 303.524.8660
Facsimile: 303.524.8650

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br>Related Case No. 3:14-CV-05337-JCS<br><br>**UNITED BEHAVIORAL HEALTH'S OBJECTIONS TO PLAINTIFFS' POST-REMAND PROPOSED SUPPLEMENTAL FINDINGS OF FACT** |
| GARY ALEXANDER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS),<br><br>Defendant. | |

## GENERAL OBJECTION

United Behavioral Health ("UBH") objects to Plaintiffs' Proposed Supplemental Findings of Fact, which they submit with their Post-Remand Opening Brief on Breach of Fiduciary Duty, on the following grounds. *See* ECF No. 661-2. Each of the below objections and arguments applies to Plaintiffs' Proposed Supplemental Findings of Fact in their entirety.

First, the Ninth Circuit did not remand the breach of fiduciary duty claim to the Court to make additional or supplemental findings. To execute the mandate, the Court must simply apply the Ninth Circuit's holding to the facts already found by this Court prior to appeal. *Firth v. United States*, 554 F.2d 990, 993 (9th Cir. 1977) (on remand following reversal of a trial judgment, district court could not make additional findings to "embellish[] or clarify[] [an] intended, albeit unarticulated, finding of fact"). Nowhere in *Wit III* did the Ninth Circuit remotely suggest that additional fact finding would be necessary or appropriate, and Plaintiffs cite no case that supports this extraordinary request.[1] To the contrary, the Ninth Circuit made clear in *Wit IV* that it remanded the breach of fiduciary duty claim *only* "to *identify* any surviving aspect of that claim" in light of the Ninth Circuit's rulings on the merits, *Wit IV*, 2024 WL 4036574, at *2 (emphasis added), not to *create* an entirely new basis for a claim. To "surviv[e]" *Wit III*, *id.*, all facts supporting judgment must already exist.

Second, as UBH noted in its earlier briefing regarding the scope of remand, ECF No. 616 at 22, Plaintiffs' deadline to seek amended or additional findings was 'no later than 28 days after

[1] The Ninth Circuit's unpublished memorandum decision in *Steigleman v. Symetra Life Ins. Co.*, 2025 WL 602175, at *1 (9th Cir. Feb. 25, 2025) is inapposite. *See* Pls. Opening Br., at 3. In *Steigleman*, the trial court had granted summary judgment to the defendant ***before trial***, so when the Ninth Circuit reversed the grant of summary judgment on appeal and remanded for further proceedings, the trial court then accepted additional evidence, denied summary judgment, and went on to hold a bench trial. *Id.* In stark contrast to *Steigleman*, this Court has already conducted a full bench trial, made extensive findings of fact (and supplemental findings of fact), all of which has gone up on appeal and been reviewed multiple times by the Ninth Circuit. *Steigleman* stands at most for the unremarkable (and, in this case, irrelevant) proposition that a trial court may hold further proceedings after the appellate court reverses a summary judgment decision issued before trial.

the entry of judgment . . . .” Fed. R. Civ. P. 52(b); *East Jefferson Coal. for Leadership & Dev. v. Parish of Jefferson*, 926 F.2d 487, 491-92 (5th Cir. 1991) (holding that, as to findings that are not within the scope of the remand order, Rule 52(b)’s deadline applies even after remand). Plaintiffs did not make any such request for additional or amended findings, so their request for “supplemental” findings comes far too late. Indeed, more than seven years have passed since the trial in this matter concluded, and in that time, there have been years of appellate proceedings based on the current record and factual findings. Plaintiffs had a full opportunity to submit proposed findings of fact following the October 2017 trial, *see* ECF No. 394, and offer no basis for their request for a second bite at the apple now. Even now, Plaintiffs do not actually move the Court to make additional findings under Rule 52(b), likely because they know that such a motion would be over four-years too late. Fed. R. Civ. P. 52(b) (“On a party's motion *filed no later than 28 days after the entry of judgment*, the court may amend its findings—or make additional findings—and may amend the judgment accordingly.”) (emphasis added); see also Fed. R. Civ. P. 59(b) (“A motion for a new trial must be filed no later than 28 days after the entry of judgment.”).

Third, Plaintiffs cannot “supplement” their way around the Ninth Circuit’s judgment on their breach of fiduciary duty claim. Whatever supplemental fact findings Plaintiffs may seek to have the Court adopt will not alleviate the fundamental errors in the Court’s ultimate judgment and remedies orders. The effect of the Court’s judgment on the breach of fiduciary duty claim, and the related prospective remedies it imposed, was to compel coverage that is solely consistent with GASC, without regard to any other plan terms, including other requirements of medical necessity. That error cannot be corrected by simply announcing that the Ninth Circuit was wrong. Entering Plaintiffs’ proposed new findings of fact seven years after trial would be both procedurally and substantively improper.

///

///

///

**SPECIFIC OBJECTIONS**

Subject to and without waiving or departing from the objections identified above, and specifically incorporating those objections into each objection set forth below, UBH sets forth the below specific objections to certain of Plaintiffs' Proposed Supplemental Findings of Fact.

**<u>Plaintiffs' Proposed Finding of Fact No. 3</u>**

Even so, throughout the class period, the CDGs did not contain their own, distinct level of care criteria; instead, they incorporated the LOCGs' level of care criteria. See generally Further Findings of Fact and Conclusions of Law, ECF No. 469 (August 6, 2020).

**<u>UBH's Objection to Proposed Finding of Fact No. 3</u>**

UBH objects to this proposed fact on the ground that it improperly and inaccurately purports to summarize the Court's Further Findings of Fact and Conclusions of Law ("Further FFCL"), ECF No. 469, which speak for themselves. Indeed, to the extent that Proposed Finding No. 3 purports to merely summarize the Court's Further FFCL, it is redundant. More to the point, this Court *did not find* that *every* UBH CDG "throughout the class period" "incorporated the LOCGs' level of care criteria." Instead, the Court found that a defined list of 209 "diagnosis-specific CDGs" identified on Trial Exhibit 880 each incorporated level of care criteria from a specific set of LOCGs in at least one of eight different ways. *See* Further FFCL ¶¶ 217, 224. While UBH disputes the Court's findings on that issue, *see* UBH Post-Trial Br., ECF No. 400 at 94–97, Plaintiffs' Proposed Finding of Fact No. 3 is simply not supported by this Court's prior findings, and Plaintiffs cite no other evidence to support this overbroad proposed new finding.

UBH also objects to this proposed finding of fact to the extent that it suggests that each of the 209 diagnosis-specific CDGs at issue in this case *fully* incorporated the corresponding Level of Care Criteria. Such a finding is not only unsupported by the trial record, *see* UBH Post-Trial Br., ECF No. 400 at 94–97, it is inconsistent with, and thus precluded by, the Ninth Circuit's decision in *Wit III*, in which the Ninth Circuit held that "some Coverage Determination Guidelines incorporated the Level of Care Guidelines only as support in a specific paragraph or paragraphs." *Wit III*, 79 F.4th at 1085; *see also id*. ("the incorporation of flawed Level of Care

Guidelines does not demonstrate that class members whose claims were denied under the Coverage Determination Guidelines were necessarily denied a full and fair review").

**Plaintiffs' Proposed Finding of Fact No. 4**

UBH's Claims Administration Process ensured that all requirements for coverage other than the GASC Requirement were adjudicated before the claim was sent for clinical review under the Guidelines. Indeed, from 2014 forward, the LOCGs themselves explicitly require that "Staff must first identify enrollee eligibility, any federal or state regulatory requirements that supersede the Level of Care Guidelines and the plan benefit coverage prior to use of this guideline." Trial Ex. 4-0006 (2014 LOCGs). See also Trial Ex. 5-0007 (2015 LOCGs) (same); Trial Ex. 6-0007 (Jan. 2016 LOCGs) (same); Trial Ex. 7-0007 (June 2016 LOCGs) (same); Trial Ex. 8-0004 (2017 LOCGs) (same). That admonition is consistent with UBH's standard policy and practice throughout the Class period.

**UBH's Objection to Proposed Finding of Fact No. 4**

UBH objects to this proposed fact on the ground that it misstates, and is in fact directly contradicted by, the very trial record it cites. Contrary to Proposed Finding of Fact No. 4, the LOCGs were not used solely to evaluate "the GASC Requirement" but were to be used "when making medical necessity determinations" under the terms of the applicable benefit plans. Trial Ex. 4-0006 (2014 LOCGs); *see also* Trial Ex. 5-0007 (2015 LOCGs) (same); Trial Ex. 6-0007 (Jan. 2016 LOCGs) (same); Trial Ex. 7-0007 (June 2016 LOCGs) (same); Trial Ex. 8-0004 (2017 LOCGs) (same); *see also Wit III*, 79 F.4th at 1077 ("The Level of Care Guidelines were used for all Plans that limited coverage to medically necessary services.").

Under the express terms of the Plans, questions of medical necessity are not driven by GASC alone and encompass additional factors beyond whether the treatment is consistent with GASC. Among other things, as part of medical necessity, the Plans required that services:

- be "[n]ot more costly than an alternative drug, service(s) or supply that is at least as likely to produce equivalent therapeutic or diagnostic results," Trial Ex. 1588-0122;

- be "the most cost-effective method and yield a similar outcome to other available remedies," Trial Ex. 2014-0164; and/or
- be "[t]he most appropriate . . . level of service which can safely be provided," which for inpatient services, "means that [the] condition cannot safely be diagnosed or treated on an outpatient basis." Trial Ex. 1614-0102.

Thus, while it is true that *non-clinical* administrative grounds for denial were typically addressed prior to a clinical review involving the Guidelines, a review based on the Guidelines was not limited *solely* to evaluating whether the treatment is consistent with GASC. On their face, the LOCGs were *medical necessity* guidelines intended to aid in deciding "whether the benefit plan will pay for any portion of the cost of a health care service" under broader "[d]eterminations of medical necessity . . . ." Trial Ex. 5-0007; Trial Ex. 6-0007; Trial Ex. 7-0007; Trial Ex. 8-0004.

As Plaintiffs have done throughout this case, Proposed Finding of Fact No. 4 asks the court to conflate the necessary (but not sufficient) requirement that the treatment is consistent with GASC with the broader concept of medical necessity defined by the Plans. But as the Ninth Circuit definitively held, the Court cannot rewrite the Plans to deem services medically necessary simply because they are consistent with GASC. *See Wit III*, 79 F.4th at 1088 ("UBH's interpretation that the Plans do not require coverage for all care consistent with GASC does not conflict with the plain language of the Plans. To the contrary, it gives effect to all the Plan provisions because the Plans exclude coverage for treatment *inconsistent* with GASC or otherwise condition treatment on consistency with GASC.").

**<u>Plaintiffs' Proposed Finding of Fact No. 6</u>**

The UMPDs specify that questions about whether a service is a "covered benefit" are subject to administrative review, not clinical review. Trial Ex. 256-0016 (2011 UMPD) (noting that examples include a "request for services in situations where the member is not eligible for benefits," or a "request for services in situations where the member has exhausted his/her allotment of benefits"); Trial Ex. 257-0018 (2012 UMPD) (same); Trial Ex. 258-0017 (2013

UMPD) (same); Trial Ex. 259-0018 (2014 UMPD) (same); Trial Ex. 260-0009 (2015 UMPD) (same); Trial Ex. 261-0011 (2016 UMPD) (same); Trial Ex. 262-0012 (2017 UMPD) (same).

**UBH's Objection to Proposed Finding of Fact No. 6**

UBH objects to this proposed fact on the ground that it is misleading. In context, statements in the UMPD to the effect that determinations of whether services are a "covered benefit" are subject to administrative review are clearly a reference to *non-clinical* determinations, such as "where the member is not eligible for benefits" or "where the member has exhausted his/her allotment of benefits." Trial Ex. 257-0018 (2012 UMPD) (same); Trial Ex. 258-0017 (2013 UMPD) (same); Trial Ex. 259-0018 (2014 UMPD) (same); Trial Ex. 260-0009 (2015 UMPD) (same); Trial Ex. 261-0011 (2016 UMPD) (same); Trial Ex. 262-0012 (2017 UMPD) (same).

Under the terms of the plans, services also are not eligible for coverage, and thus not a "covered benefit" if they are inconsistent with GASC, *Wit III*, 79 F.4th at 1088, or otherwise not "medically necessary," among other possible non-administrative clinical grounds (such as whether services are custodial or experimental). *See*, *e.g.*, Trial Exs. 892, 1653, 1654; *see also*, *e.g.*, Trial Ex. 257-0020 ("A Peer Reviewer makes all clinical non-coverage determinations based on the criteria outlined in the *Level of Care Guidelines*, *Coverage Determination Guidelines*, and/or *Psychological and Neuropsychological Testing Guidelines*, the member's benefit plan, available community resources, and individual need." [emphasis in original]).

**Plaintiffs' Proposed Finding of Fact No. 8**

UBH created its CDGs as part of its implementation of the Mental Health Parity and Addiction Equity Act (the "Parity Act"), 29 U.S.C. § 1185a. Because UBH's affiliate, United Healthcare Insurance Company, used documents called "Coverage Determination Guidelines" to administer medical benefits for certain Plans, UBH determined that the Parity Act required it to use a parallel type of guideline to administer behavioral health benefits for those Plans. Tr. 865:20-866:1 (Dehlin); Ex. 1708:20-1709:2 (Triana).

///

**UBH's Objection to Proposed Finding of Fact No. 8**

UBH objects to this proposed fact on the ground that it is irrelevant to the claims and issues in this lawsuit, and likewise irrelevant to the claims and issues on remand. Plaintiffs dismissed their claims under the Mental Health Parity and Addiction Equity Act (MHPAEA) in 2015 when they voluntarily amended their complaint. Their only remaining claim in this case on remand is for breach of fiduciary duty. Plaintiffs have not asserted that UBH's alleged breach of fiduciary duty involved any violation of MHPAEA, and such a claim was *never* certified under Rule 23, *see* Class Cert. Order, ECF No. 174, and was *never* presented or decided at trial. *See* Joint Proposed Final Pretrial Order, ECF No. 296, at 1 (describing Plaintiff's "Breach of Fiduciary Duty" claim "to be decided at trial," and making no mention of MHPAEA or mental health parity); FFCL ¶ 17 (describing Plaintiffs' fiduciary duty claim and making no mention of MHPAEA or mental health parity). The Court likewise did not find any breach of the MHPAEA. *See generally* FFCL; Further FFCL. Nothing in the Ninth Circuit's narrow remand to "identify" any potentially "surviving" aspects of the Court's *existing* fiduciary duty judgment would permit the re-insertion of a legal theory that they abandoned over a decade ago. *See Firth*, 554 F.2d at 993.

**Plaintiffs' Proposed Finding of Fact No. 9**

But, rather than stop evaluating whether, in UBH's judgment, the requested level of care was clinically appropriate for the member, UBH simply incorporated the Level of Care Guidelines into its CDGs. *See generally* Further Findings of Fact and Conclusions of Law, ECF No. 469 (August 6, 2020).

**UBH's Objection to Proposed Finding of Fact No. 9**

UBH objects to this proposed fact on the ground that it improperly and inaccurately purports to summarize the Court's Further FFCL, which speak for themselves. Indeed, to the extent that Proposed Finding of Fact No. 9 purports to merely summarize the Court's Further FFCL, it is redundant. More to the point, this Court *did not find* that UBH "incorporated the Level of Care Guidelines into" every one of its "CDGs." Instead, the Court found that a defined

list of 209 "diagnosis-specific CDGs" identified on Trial Exhibit 880 each incorporated level of care criteria from a specific set of LOCGs in at least one of 8 different ways. *See* Further FFCL ¶¶ 217, 224. While UBH disputes the Court's findings on that issue, *see* UBH Post-Trial Br., ECF No. 400 at 94–97, Plaintiffs' Proposed Finding No. 9 is simply not supported by this Court's prior findings, and Plaintiffs cite no other evidence to support this overbroad proposed new finding.

UBH also objects to this proposed finding of fact to the extent that it suggests that each of the 209 diagnosis-specific CDGs at issue in this case *fully* incorporated the corresponding Level of Care Criteria. Such a finding is not only unsupported by the trial record, *see* UBH Post-Trial Br., ECF No. 400 at 94–97, it is inconsistent with, and thus precluded by, the Ninth Circuit's decision in *Wit III*, in which the Ninth Circuit held that "some Coverage Determination Guidelines incorporated the Level of Care Guidelines only as support in a specific paragraph or paragraphs." *Wit III*, 79 F.4th at 1085; *see also id*. ("the incorporation of flawed Level of Care Guidelines does not demonstrate that class members whose claims were denied under the Coverage Determination Guidelines were necessarily denied a full and fair review").

**<u>Plaintiffs' Proposed Finding of Fact No. 10</u>**

MHPAEA prohibits ERISA plans from imposing discriminatory financial requirements and treatment limitations on behavioral health coverage. 29 U.S.C. § 1185a(a)(3)(A)(ii). *See* also, e.g., Trial Ex. 768-0007 (UBH presentation highlighting key changes under MHPAEA).

**<u>UBH's Objection to Proposed Finding of Fact No. 10</u>**

UBH objects to this proposed fact on the ground that it is a legal conclusion, and is not a proper factual finding by a Court. The cited provision of the MHPAEA speaks for itself and this proposed finding does not accurately describe the cited provision of law, which states:

> In the case of a group health plan (or health insurance coverage offered in connection with such a plan) that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan or coverage shall ensure that . . . the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment

> limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii).

UBH objects to this proposed fact on the ground that it is irrelevant to the claims and issues in this lawsuit, and likewise irrelevant to the claims and issues on remand. Plaintiffs dismissed their claims under the Mental Health Parity and Addiction Equity Act (MHPAEA) in 2015 when they voluntarily amended their complaint. Their only remaining claim in this case on remand is for breach of fiduciary duty. Plaintiffs have not asserted that UBH's alleged breach of fiduciary duty involved any violation of MHPAEA, and such a claim was *never* certified under Rule 23, *see* Class Cert. Order, ECF No. 174, and was *never* presented or decided at trial. *See* Joint Proposed Final Pretrial Order, ECF No. 296, at 1 (describing Plaintiff's "Breach of Fiduciary Duty" claim "to be decided at trial," and making no mention of MHPAEA or mental health parity); FFCL ¶ 17 (describing Plaintiffs' fiduciary duty claim and making no mention of MHPAEA or mental health parity). The Court likewise did not find any breach of the MHPAEA. *See generally* FFCL; Further FFCL. Nothing in the Ninth Circuit's narrow remand to "identify" any potentially "surviving" aspects of the Court's *existing* fiduciary duty judgment would permit the re-insertion of a legal theory that they abandoned over a decade ago. *See Firth*, 554 F.2d at 993.

**<u>Plaintiffs' Proposed Finding of Fact No. 11</u>**

UBH realized that these new prohibitions would cause benefit expense to rise, because plans—including the fully-insured plans UBH offered—would be required to cover behavioral health treatments that were previously excluded under discriminatory exclusions and limitations. *See, e.g.*, Trial Ex. 768-0014 (noting that in 2010-2011, UBH "estimated and loaded in 2010 budget" that the new MHPAEA rules would have a "$45M Annualized Impact on Benefit Expense (over 2 years)"); *id*. (UBH estimated an additional "$19.75M annualized increase in Benefit Expenses (over 5 years)" based on "Financial Parity" rules set forth in MHPAEA's implementing regulations, plus "$39.1M-$79.7M annualized increase to Benefit Expense (over 5 years)" resulting from the "Procedural Parity" requirements in the regulations).

**UBH's Objection to Proposed Finding of Fact No. 11**

UBH objects to this proposed fact on the ground that it inaccurately purports to summarize a slide titled "Progression of FMHP Regulation and Impacts" from a presentation dated May 2014. Contrary to Plaintiffs' proposed "fact", this Court did not issue any finding that UBH's Plans included discriminatory exclusions or limitations and the cited slide says nothing about discriminatory practices. Nor does the exhibit identify or discuss any "previously excluded" services that UBH "would be required to cover" at additional benefit expense following the implementation of MPHAEA for any health benefit plan, let alone *all* of "the fully-insured plans UBH offered." Plaintiffs' false characterization of an exhibit offered into evidence at trial over seven years ago, without reference to any testimony about its meaning, cannot form the basis for new findings of fact by the Court post-remand. Plaintiffs cite no case law to suggest otherwise.

UBH further objects to this proposed fact on the ground that it is irrelevant to the claims and issues in this lawsuit, and likewise irrelevant to the claims and issues on remand. Plaintiffs dismissed their claims under the Mental Health Parity and Addiction Equity Act (MHPAEA) in 2015 when they voluntarily amended their complaint. Their only remaining claim in this case on remand is for breach of fiduciary duty. Plaintiffs have not asserted that UBH's alleged breach of fiduciary duty involved any violation of MHPAEA, and such a claim was *never* certified under Rule 23, *see* Class Cert. Order, ECF No. 174, and was *never* presented or decided at trial. *See* Joint Proposed Final Pretrial Order, ECF No. 296, at 1 (describing Plaintiff's "Breach of Fiduciary Duty" claim "to be decided at trial," and making no mention of MHPAEA or mental health parity); FFCL ¶ 17 (describing Plaintiffs' fiduciary duty claim and making no mention of MHPAEA or mental health parity). The Court likewise did not find any breach of the MHPAEA. *See generally* FFCL; Further FFCL. Nothing in the Ninth Circuit's narrow remand to "identify" any potentially "surviving" aspects of the Court's *existing* fiduciary duty judgment would permit the re-insertion of a legal theory that they abandoned over a decade ago. *See Firth*, 554 F.2d at 993.

This proposed fact is irrelevant for the additional reason that it relates to all benefits under all benefit plans administered by UBH prior to May 2014, and is not limited to ERISA plans or the services at issue in this lawsuit.

**Plaintiffs' Proposed Finding of Fact No. 12**

Rather than accepting this financial impact and faithfully implementing MHPAEA, UBH came up with a host of "mitigation strategies" to protect its bottom line. *See* generally Trial Ex. 768.

**UBH's Objection to Proposed Finding of Fact No. 12**

UBH objects to this proposed fact on the ground that it is irrelevant to the claims and issues in this lawsuit, and likewise irrelevant to the claims and issues on remand. Plaintiffs dismissed their claims under the Mental Health Parity and Addiction Equity Act (MHPAEA) in 2015 when they voluntarily amended their complaint. Their only remaining claim in this case on remand is for breach of fiduciary duty. Plaintiffs have not asserted that UBH's alleged breach of fiduciary duty involved any violation of MHPAEA, and such a claim was *never* certified under Rule 23, *see* Class Cert. Order, ECF No. 174, and was *never* presented or decided at trial. *See* Joint Proposed Final Pretrial Order, ECF No. 296, at 1 (describing Plaintiff's "Breach of Fiduciary Duty" claim "to be decided at trial," and making no mention of MHPAEA or mental health parity); FFCL ¶ 17 (describing Plaintiffs' fiduciary duty claim and making no mention of MHPAEA or mental health parity). The Court likewise did not find any breach of the MHPAEA. *See generally* FFCL; Further FFCL. Nothing in the Ninth Circuit's narrow remand to "identify" any potentially "surviving" aspects of the Court's *existing* fiduciary duty judgment would permit the re-insertion of a legal theory that they abandoned over a decade ago. *See Firth*, 554 F.2d at 993.

This proposed fact is irrelevant for the additional reason that the cited exhibit relates to all benefits under all benefit plans administered by UBH prior to May 2014, and is not limited to ERISA plans or the services at issue in this lawsuit.

///

**Plaintiffs' Proposed Finding of Fact No. 13**

Among the strategies UBH put into action was to "use . . . concurrent review" (i.e., clinical review pursuant to the Guidelines) to "mitigate[e]" the impact of MHPAEA's "[r]emoval of day and visit limits" on behavioral health care. Trial Ex. 768-0009.

**UBH's Objection to Proposed Finding of Fact No. 13**

UBH objects to this proposed fact on the ground that it inaccurately quotes a slide from a presentation dated May 2014. Contrary to Plaintiffs' proposed fact, the slide does not state that UBH would "put into action" any "concurrent review." Rather, the slide states in plain language that UBH's strategy was: "Continued use of concurrent review to ensure appropriate utilization." Plaintiffs do not cite any evidence or argument to suggest that "the continued use of utilization review to ensure appropriate utilization" is contrary to the MHPAEA. Plaintiffs' false characterization of an exhibit offered into evidence at trial over seven years ago, without reference to any testimony about its meaning, cannot form the basis for new findings of fact by the Court post-remand. Plaintiffs cite no case law to suggest otherwise.

UBH further objects to this proposed fact on the ground that it is irrelevant to the claims and issues in this lawsuit, and likewise irrelevant to the claims and issues on remand. Plaintiffs dismissed their claims under the Mental Health Parity and Addiction Equity Act (MHPAEA) in 2015 when they voluntarily amended their complaint. Their only remaining claim in this case on remand is for breach of fiduciary duty. Plaintiffs have not asserted that UBH's alleged breach of fiduciary duty involved any violation of MHPAEA, and such a claim was *never* certified under Rule 23, *see* Class Cert. Order, ECF No. 174, and was *never* presented or decided at trial. *See* Joint Proposed Final Pretrial Order, ECF No. 296, at 1 (describing Plaintiff's "Breach of Fiduciary Duty" claim "to be decided at trial," and making no mention of MHPAEA or mental health parity); FFCL ¶ 17 (describing Plaintiffs' fiduciary duty claim and making no mention of MHPAEA or mental health parity). The Court likewise did not find any breach of the MHPAEA. *See generally* FFCL; Further FFCL. Nothing in the Ninth Circuit's narrow remand to "identify" any potentially "surviving" aspects of the Court's *existing* fiduciary duty judgment would permit

the re-insertion of a legal theory that they abandoned over a decade ago. *See Firth*, 554 F.2d at 993.

This proposed fact is irrelevant for the additional reason that the cited exhibit relates to all benefits under all benefit plans administered by UBH prior to May 2014, and is not limited to ERISA plans or the services at issue in this lawsuit.

**Plaintiffs' Proposed Finding of Fact No. 14**

Similarly, to "mitigate" the fact that, under MHPAEA, plans could no longer require prior authorization for many behavioral health services, UBH decided to develop "robust" CDGs to use for "plans [without] medical necessity requirements" and to train reviewers on "use of the CDGs to help control costs and appropriately issue [denials] when required." Trial Ex. 768-0011.

**UBH's Objection to Proposed Finding of Fact No. 14**

UBH objects to this proposed fact on the ground that it inaccurately quotes and characterizes a slide from a presentation dated May 2014. The slide refers to "UHC plans w/o medical necessity requirements." Contrary to Plaintiff's proposed fact, neither MHPAEA nor any other federal law governed whether UHC plans should be with, or without medical necessity requirements. Plaintiffs know well that many UHC plans during the relevant period (2011-2017) were without a medical necessity requirement, as their own trial exhibit demonstrated. *See* Trial Ex. 892. Plaintiffs' suggestion that UBH decided to "develop" CDGs in 2014 in response to the implementation of the MHPAEA 2014 Final Rule that was the principal subject of Exhibit 768 is also directly contradicted by the trial evidence, which confirms that UBH utilized CDGs for coverage determinations at least as early as 2010. *See* Trial Ex. 880, Ex. A. Plaintiffs' false characterization of an exhibit offered into evidence at trial over seven years ago, which is contrary to the trial evidence, cannot form the basis for new findings of fact by the Court post-remand. Plaintiffs cite no case law to suggest otherwise.

UBH objects to this proposed fact on the ground that it is irrelevant to the claims and issues in this lawsuit, and likewise irrelevant to the claims and issues on remand. Plaintiffs dismissed their claims under the Mental Health Parity and Addiction Equity Act (MHPAEA) in

2015 when they voluntarily amended their complaint. Their only remaining claim in this case on remand is for breach of fiduciary duty. Plaintiffs have not asserted that UBH's alleged breach of fiduciary duty involved any violation of MHPAEA, and such a claim was *never* certified under Rule 23, *see* Class Cert. Order, ECF No. 174, and was *never* presented or decided at trial. *See* Joint Proposed Final Pretrial Order, ECF No. 296, at 1 (describing Plaintiff's "Breach of Fiduciary Duty" claim "to be decided at trial," and making no mention of MHPAEA or mental health parity); FFCL ¶ 17 (describing Plaintiffs' fiduciary duty claim and making no mention of MHPAEA or mental health parity). The Court likewise did not find any breach of the MHPAEA. *See generally* FFCL; Further FFCL. Nothing in the Ninth Circuit's narrow remand to "identify" any potentially "surviving" aspects of the Court's *existing* fiduciary duty judgment would permit the re-insertion of a legal theory that they abandoned over a decade ago. *See Firth*, 554 F.2d at 993.

This proposed fact is irrelevant for the additional reason that the cited exhibit relates to all benefits under all benefit plans administered by UBH prior to May 2014, and is not limited to ERISA plans or the services at issue in this lawsuit.

**<u>Plaintiffs' Proposed Finding of Fact No. 15</u>**

Based on UBH's own estimates, its "mitigation strategies" saved it between $27.9 million and $29.4 million in benefit expense, annually. Trial Ex. 768-16.

**<u>UBH's Objection to Proposed Finding of Fact No. 15</u>**

UBH objects to this proposed fact on the ground that it inaccurately quotes and characterizes a slide from a presentation dated May 2014. The slide projects an estimated range of $27.9 million and $29.4 million in potential "Benefit Expense Savings from Mitigation" based on four different categories of mitigation "factors," as applied to both inpatient and outpatient services. Plaintiffs cite no evidence to explain, among other things: (1) what the various categories of mitigation "factors" listed on the slide mean; (2) what forms of "mitigation" are included within them; (3) if (to say nothing of *how*) any mitigation factor described on the slide is tied to the challenged guidelines or levels of care at issue in this case; (4) how any projected

savings associated with each factor was calculated; (5) over what time period; (6) whether such savings were actually realized; or (7) if (or how) the projections on the slide impacted any decisions by UBH in connection with the adoption or use of clinical guidelines. Notably, out of the $27.9 million and $29.4 million that Plaintiffs cite in this proposed fact, the category of "Denials" only accounts for between $0.9 million to $1 million in potential "Benefit Expense Savings from Mitigation." Plaintiffs' false characterization of an exhibit offered into evidence at trial over seven years ago, without reference to any testimony about its meaning, cannot form the basis for new findings of fact by the Court post-remand. Plaintiffs cite no case law to suggest otherwise.

UBH further objects to this proposed fact on the ground that it is irrelevant to the claims and issues in this lawsuit, and likewise irrelevant to the claims and issues on remand. Plaintiffs dismissed their claims under the Mental Health Parity and Addiction Equity Act (MHPAEA) in 2015 when they voluntarily amended their complaint. Their only remaining claim in this case on remand is for breach of fiduciary duty. Plaintiffs have not asserted that UBH's alleged breach of fiduciary duty involved any violation of MHPAEA, and such a claim was *never* certified under Rule 23, *see* Class Cert. Order, ECF No. 174, and was *never* presented or decided at trial. *See* Joint Proposed Final Pretrial Order, ECF No. 296, at 1 (describing Plaintiff's "Breach of Fiduciary Duty" claim "to be decided at trial," and making no mention of MHPAEA or mental health parity); FFCL ¶ 17 (describing Plaintiffs' fiduciary duty claim and making no mention of MHPAEA or mental health parity). The Court likewise did not find any breach of the MHPAEA. *See generally* FFCL; Further FFCL. Nothing in the Ninth Circuit's narrow remand to "identify" any potentially "surviving" aspects of the Court's *existing* fiduciary duty judgment would permit the re-insertion of a legal theory that they abandoned over a decade ago. *See Firth*, 554 F.2d at 993.

This proposed fact is irrelevant for the additional reason that the cited exhibit relates to all benefits under all benefit plans administered by UBH prior to May 2014, and is not limited to ERISA plans or the services at issue in this lawsuit.

**<u>Plaintiffs' Proposed Finding of Fact No. 16</u>**

Even years after the statute and implementing regulations first went into effect, UBH continued to cite the need for these "mitigation strategies" to keep a lid on benefit expense—by denying coverage for services that otherwise would be covered under the MPHAEA-compliant plan terms. *See generally* Trial Ex. 768 & id. at 768-0001 (email attaching presentation for May 23, 2014, meeting to discuss "parity legislation history, anticipated vs. realized impact, and mitigation strategies")

**<u>UBH's Objection to Proposed Finding of Fact No. 16</u>**

UBH objects to this proposed fact on the ground that it inaccurately characterizes a presentation dated May 2014. As reflected in the presentation, the MHPAEA Final Rule was effective starting July 1, 2014. Trial Ex. 768-0007. The cited exhibit says nothing about actions by UBH "years" after the relevant Final Rules that were the principal subject of the presentation went into effect. Plaintiffs' false characterization of an exhibit offered into evidence at trial over seven years ago, without reference to witness testimony, cannot form the basis for new findings of fact by the Court post-remand. Plaintiffs cite no case law to suggest otherwise.

UBH further objects to this proposed fact on the ground that it is irrelevant to the claims and issues in this lawsuit, and likewise irrelevant to the claims and issues on remand. Plaintiffs dismissed their claims under the Mental Health Parity and Addiction Equity Act (MHPAEA) in 2015 when they voluntarily amended their complaint. Their only remaining claim in this case on remand is for breach of fiduciary duty. Plaintiffs have not asserted that UBH's alleged breach of fiduciary duty involved any violation of MHPAEA, and such a claim was *never* certified under Rule 23, *see* Class Cert. Order, ECF No. 174, and was *never* presented or decided at trial. *See* Joint Proposed Final Pretrial Order, ECF No. 296, at 1 (describing Plaintiff's "Breach of Fiduciary Duty" claim "to be decided at trial," and making no mention of MHPAEA or mental health parity); FFCL ¶ 17 (describing Plaintiffs' fiduciary duty claim and making no mention of MHPAEA or mental health parity). The Court likewise did not find any breach of the MHPAEA. *See generally* FFCL; Further FFCL. Nothing in the Ninth Circuit's narrow remand to "identify"

any potentially "surviving" aspects of the Court's *existing* fiduciary duty judgment would permit the re-insertion of a legal theory that they abandoned over a decade ago. *See Firth*, 554 F.2d at 993.

This proposed fact is irrelevant for the additional reason that the cited exhibit relates to all benefits under all benefit plans administered by UBH prior to May 2014, and is not limited to ERISA plans or the services at issue in this lawsuit.

**Plaintiffs' Proposed Finding of Fact No. 17**

The Guidelines cited the ASAM Criteria, CALOCUS, LOCUS, and the CMS Benefit Policy Manual in their "evidence base." *See, e.g.*, Trial Ex. 5-0013-14 (2015 LOCGs) (citing, *inter alia*, CALOCUS, LOCUS, and the ASAM Criteria); Trial Ex. 6-0015 (Jan. 2016 LOCGs) (same); Trial Ex. 7-0015 (June 2016 LOCGs) (same); Trial Ex. 8-0009 (2017 LOCGs) (same); Trial Ex. 10-0008 (2010 Custodial Care CDG) (citing CMS Benefit Policy Manual, Chapters 2 and 16); Trial Ex. 47-0010 (2011 Custodial Care CDG) (same); Trial Ex. 84-0008 (2013 Custodial Care CDG) (same); Trial Ex. 108-0008 (2014 Custodial Care CDG) (same); Trial Ex. 148-0010 (2015 Custodial Care CDG) (same); Trial Ex. 195-0009 (2016 Custodial Care CDG) (same); Trial Ex. 221-0006 (2017 Custodial Care CDG) (same).

**UBH's Objection to Proposed Finding of Fact No. 17**

UBH objects to this proposed fact on the ground that it is misleading and incomplete. In addition to the ASAM Criteria, CALOCUS, LOCUS, and the CMS Benefit Policy Manual, UBH's Guidelines cited numerous other third-party sources and guidelines as part of the "evidence base," including but not limited to: (1) Practice Parameters published by the American Academy of Child and Adolescent Psychiatry; (2) practice guidelines published by the American Psychiatric Association; and (3) manuals published by the Commission on Accreditation of Rehabilitation Facilities, and Standards and Guidelines published by the Association for Ambulatory Behavioral Healthcare. *See e.g.*, Trial Ex. 5-0013-14, -32, Trial Ex 6-0015, Trial Ex. 7-0015, Trial Ex. 8-0009.

///

**Plaintiffs' Proposed Finding of Fact No. 21**

Despite the fact that it had many licensed, experienced psychiatrists and Ph.D.- level psychologists on its staff, UBH placed the lion's share of responsibility for researching and drafting the Guidelines on the shoulders of Gerry Niewenhous, an unlicensed social worker with little clinical experience. Tr. 1729:25-1733:11 (Triana).

**UBH's Objection to Proposed Finding of Fact No. 21**

UBH objects to this proposed fact on the ground that it mischaracterizes the trial evidence to falsely suggest that UBH's Guidelines were developed without substantive or critical review and input from psychiatrists and Ph.D.-level clinicians.

As the trial evidence demonstrated, UBH's process of reviewing, revising, and adopting the LOCGs involved multiple stages, with review and input from both external and internal psychiatrists and clinicians, as well as professional societies, subspecialty organizations, consumer organizations and governmental organizations. *See* UBH Post-Trial Br., ECF 400, at 26–28, 89–90 (citing trial evidence).

Plaintiffs' proposed finding of fact also misstates the record in that it suggests that Mr. Niewenhous was the only masters-level clinician responsible for researching and drafting the Guidelines. Between 2011 and 2016, Gerald Niewenhous and Loretta Urban performed this task; the job transitioned to Erik Rockswold in 2017. Trial Tr. 1696:8-14 (Triana); Trial Ex. 1661 at 15:19-24, 42:5-43:2 (Urban); Trial Ex. 904 at 18:20-24 (Rockswold).

Further, although Mr. Niewenhous, Ms. Urban, and Mr. Rockswold were responsible for initial research and drafting in the annual LOCG update process, the trial evidence confirmed that the draft LOCGs were then sent to the LOCG Work Group composed of licensed psychiatrists, including UBH's Chief Medical Officer, who met with the group by phone to review and discuss the internal and external feedback received as well as all of the proposed changes to the LOCGs. Trial Tr. 1695:25–1699:14 (Triana). Based on the LOCG Working Group's discussions, a new draft of the LOCGs would be prepared incorporating all of the

LOCG Working Group's proposed changes to the drafts initially received from Mr. Niewenhous, Ms. Urban, or Mr. Rockswold. Trial Tr. 1707:21–1708:10 (Triana).

The revised LOCGs were then sent to the Behavioral Policy and Analytics Committee ("BPAC") (between 2011 and 2016) or the Utilization Management Committee (2017) for final review and approval. *See* UBH Post-Trial Br., ECF 400 at 28 (citing trial evidence). Once the LOCGs were approved by UBH's BPAC, no further approvals by any department or individuals at UBH were required. Trial Tr. 1709:9–12 (Triana).

UBH applied a similar process in developing the CDGs. *See* UBH Post-Trial Br., ECF 400, at 28 n. 20 (citing trial evidence).

**Plaintiffs' Proposed Finding of Fact No. 22**

Ultimate authority for approving the Guidelines rested with the BPAC, but the BPAC members rarely reviewed the sources Mr. Niewenhous and his assistant, Loretta Urban, cited; they relied on Niewenhous and Urban to do that critical work. Tr. 1730:6-11, 1731:6-9 (Triana).

**UBH's Objection to Proposed Finding of Fact No. 22**

UBH objects to this proposed fact on the ground that it mischaracterizes the trial evidence to falsely suggest that UBH's Guidelines were developed without substantive or critical review and input from psychiatrists and Ph.D.-level clinicians.

As the trial evidence demonstrated, UBH's process of reviewing, revising, and adopting the LOCGs involved multiple stages, with review and input from both external and internal psychiatrists and clinicians, as well as professional societies, subspecialty organizations, consumer organizations and governmental organizations. *See* UBH Post-Trial Br., ECF 400, at 26–28, 89–90 (citing trial evidence).

Plaintiffs' proposed finding of fact also misstates the record in that it suggests that Mr. Niewenhous and Ms. Urban were the only masters-level clinicians responsible for researching and drafting the Guidelines. Between 2011 and 2016, Gerald Niewenhous and Loretta Urban performed this task; the job transitioned to Erik Rockswold in 2017. Trial Tr. 1696:8-14 (Triana); Trial Ex. 1661 at 15:19-24, 42:5-43:2 (Urban); Trial Ex. 904 at 18:20-24 (Rockswold).

Further, although Mr. Niewenhous, Ms. Urban, and Mr. Rockswold were responsible for initial research and drafting in the annual LOCG update process, the trial evidence confirmed that the draft LOCGs were then sent to the LOCG Work Group composed of licensed psychiatrists, including UBH's Chief Medical Officer, who met with the group by phone to review and discuss the internal and external feedback received as well as all of the proposed changes to the LOCGs. Trial Tr. 1695:25–1699:14 (Triana). Based on the LOCG Working Group's discussions, a new draft of the LOCGs would be prepared incorporating all of the LOCG Working Group's proposed changes to the drafts initially received from Mr. Niewenhous, Ms. Urban, or Mr. Rockswold. Trial Tr. 1707:21–1708:10 (Triana).

The revised LOCGs were then sent to the BPAC (between 2011 and 2016) or the Utilization Management Committee (2017) for final review and approval. *See* UBH Post-Trial Br., ECF 400 at 28 (citing trial evidence). Once the LOCGs were approved by UBH's BPAC, no further approvals by any department or individuals at UBH were required. Trial Tr. 1709:9–12 (Triana).

UBH applied a similar process in developing the CDGs. *See* UBH Post-Trial Br., ECF 400, at 28 n. 20 (citing trial evidence).

**<u>Plaintiffs' Proposed Finding of Fact No. 23</u>**

Although UBH personnel annually solicited feedback from some in-network physicians, UBH did not ask whether the Guidelines are consistent with generally accepted standards of care, but rather whether, for example, the guidelines are "easy to use" or "are ambiguous or unclear." *See, e.g.*, Ex. 1114-0002.

**<u>UBH's Objection to Proposed Finding of Fact No. 23</u>**

UBH objects to this proposed fact on the ground that it mischaracterizes and misstates the trial evidence.

UBH sought external feedback on its guidelines from more than "some in-network physicians." UBH annually solicited feedback on its guidelines from external and internal psychiatrists and clinicians, as well as professional societies, subspecialty organizations,

consumer organizations and governmental organizations. *See* UBH Post-Trial Br., ECF 400, at 26–28, 89–90 (citing trial evidence).

Plaintiffs' proposed fact also misleadingly suggests that the only questions UBH asked of those external professionals were non-substantive formatting questions. But the very exhibit they cite proves the opposite. In soliciting external feedback, UBH specifically asked whether there were any "criteria that should be added or deleted" from the LOCGs. Trial Ex. 1114-0001. UBH reasonably expected that these clinicians would offer substantive feedback on UBH's LOCGs, including feedback on whether UBH's guidelines were consistent with generally accepted standards of care, and many did; over the years UBH received hundreds of substantive comments on its LOCGs, some of which were positive, some of which were negative, and others of which were neutral, and all of which UBH carefully considered in its annual review, revisions, and update process. *See* UBH Post-Trial Br., ECF 400, at 26–28, 89–90 (citing trial evidence).

**<u>Plaintiffs' Proposed Finding of Fact No. 24</u>**

Even though they were not asked, some providers nevertheless did provide substantive feedback, criticizing UBH's Guidelines in fundamental ways. *See, e.g.*, Tr. 1007:3- 19 (Martorana) (Clinical Social Work Association criticized use of "the word 'acute' in the lower levels of care," because that "'tilt[ed]' the consideration to just acute care and wasn't really addressing the kind of patient that they often saw: someone that, you know, needed to come in once a week; otherwise, they would not do well; they would deteriorate and require, you know, probably more intensive level of care," and "they felt that that was a reasonable thing to do in terms of treating somebody's condition"); Ex. 516-0007 (Dr. Alan Axelson, "While I understand the focus on 'why now' interventions, I am very concerned that the overemphasis of this type of treatment has contributed to an ineffective and inefficient overall treatment system."); Tr. 743:24-747:6 (Dr. Triana conceding that although "managing serious persistent psychiatric illness is important," and he does not "disagree with Dr. Axelson," the Level of Care Workgroup discussed Dr. Axelson's comments, UBH "did not make a change in the 'why now' language for 2016"). But UBH made no changes based on those criticisms. *Id.*

**<u>UBH's Objection to Proposed Finding of Fact No. 24</u>**

UBH objects to this proposed fact on the ground that it mischaracterizes, misstates, and is contrary to the trial evidence.

The statement in Plaintiffs' proposed fact that external clinicians "were not asked" to provide substantive feedback is not supported, and is in fact, contradicted by the trial record. UBH annually solicited feedback on its guidelines from external and internal psychiatrists and clinicians, as well as professional societies, subspecialty organizations, consumer organizations and governmental organizations. *See* UBH Post-Trial Br., ECF 400, at 26–28, 89–90 (citing trial evidence).

In soliciting external feedback, UBH specifically asked whether there were any "criteria that should be added or deleted" from the LOCGs. Trial Ex. 1114-0002. UBH reasonably expected that these clinicians would offer substantive feedback on UBH's LOCGs, including feedback on whether UBH's guidelines were consistent with generally accepted standards of care, and many did; over the years UBH received hundreds of substantive comments on its LOCGs, some of which were positive, some of which were negative, and others of which were neutral, and all of which UBH carefully considered in its annual review, revisions, and update process. *See* UBH Post-Trial Br., ECF 400, at 26–28, 89–90 (citing trial evidence); *see also* Trial Exs. 1252 (Feedback on 2011 LOCGs); 1253 (2012); 1254 (2013); 408 (2014); 516 (2016).

Further, Plaintiffs' assertion that "UBH made no changes based on those criticisms" is demonstrably false. As the trial evidence showed, the *very first example* Plaintiffs cite—feedback provided by the Clinical Social Work Association regarding the use of the term "acute" in connection with lower levels of care—prompted UBH to remove that term from the 2017 Common Criteria and the criteria specific to Intensive Outpatient and Outpatient levels of care. Trial Tr. 1007:3-1008:14 (Martorana).

Besides the comment by the Clinical Social Work Association, which indisputably prompted a change, Plaintiffs' proposed fact cherry-picks two other critical comments, out of the hundreds of comments UBH received over the years, both delivered by the same individual. But

the fact that UBH did not change its guidelines in response to comments by a particular person is irrelevant to whether UBH breached a fiduciary duty to the class. Indeed, Plaintiffs' proposed fact ignores the numerous comments from providers and professional societies complimenting the clinical soundness of the LOCGs. *See, e.g.*, Trial Exs. 1252-0002 (2011 comment that "As a whole, this document seems clear, comprehensive and well thought out"); 1253-0010 (2012 comment that "UBH should be praised for providing these guidelines and following them"); 408-0004 (2014 comment that "I have reviewed the guidelines and cannot find anything at all to recommend!"); 516-0005 (2016 comment that the LOCGs were "Well written, detailed, comprehensive."). While a handful of clinicians expressed concerns that are similar to some (but not all) of Plaintiffs' criticisms in this case, those comments were neither widespread nor consistent. In fact, UBH also received feedback that directly contradicted Plaintiffs' critiques. For example, in their comments on the 2011 LOCGs, the American Psychological Association recommended *adding* a criterion that "stabilizing individuals and transitioning them to a less intensive level of care" should be the goal of treatment. Trial Ex. 1252-0003.

Dated: April 25, 2025

CROWELL & MORING LLP

*/s/ Jennifer S. Romano*
Jennifer S. Romano
Andrew Holmer
Nicholas Dowd

*Counsel for Defendant*
*United Behavioral Health*