1

Psych-Appeal, Inc.
Meiram Bendat (Cal. Bar No. 198884)

2

7 West Figueroa Street, Suite 300
PMB# 300059

3

Santa Barbara, CA 93101
Tel: (310) 598-3690, x.101

4

Fax: (888) 975-1957
mbendat@psych-appeal.com

5

6

Zuckerman Spaeder LLP
D. Brian Hufford (admitted *pro hac vice*)

7

Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor

8

New York, NY 10022
Tel: (212) 704-9600

9

Fax: (212) 704-4256
dbhufford@zuckerman.com

10

jcowart@zuckerman.com

11

*Attorneys for Plaintiffs and the Classes*
*(Additional Counsel on Signature Page)*

12

13

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

14

SAN FRANCISCO DIVISION

15

DAVID AND NATASHA WIT, et al.,

Case No. 3:14-CV-02346-JCS
Related Case No. 3:14-CV-05337-JCS

16

Plaintiffs,

17

v.

**PLAINTIFFS' REPLY BRIEF ON
BREACH OF FIDUCIARY DUTY
CLAIMS**

18

UNITED BEHAVIORAL HEALTH,

19

Defendant.

20

GARY ALEXANDER, et al.,

21

Plaintiffs,

Hearing Date: July 30, 2025
Hearing Time: 9:30 AM

22

v.

Judge: Joseph C. Spero

23

UNITED BEHAVIORAL HEALTH,

24

Defendant.

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3    I.    The Breach of Fiduciary Duty Claim Was Remanded for Further Proceedings,
      Not Reversed "in its Entirety." .............................................................................. 1

4

5    II.    UBH Does Not—and Could Not—Demonstrate that Any Part of Plaintiffs'
      Breach of Fiduciary Duty Claim is Intertwined with an Incorrect Plan
      Interpretation. ......................................................................................................... 3

6

7          A.    UBH Cannot Make this Court's Factual Findings Disappear by
            Refusing to Acknowledge Them. ................................................................. 3

8

9                1.    The Affirmed Findings of Fact Demonstrate that UBH Breached its
                  Duty of Loyalty. .............................................................................. 5

10

11               2.    The Affirmed Findings of Fact Demonstrate that UBH Breached its
                  Duty of Care. ................................................................................... 7

12

13               3.    The Affirmed Findings of Fact Demonstrate that UBH Breached its
                  Fiduciary Duty to Adhere to Plan Terms. ....................................... 8

14               4.    The Court is Free to Make Additional Findings of Fact on Open Issues
                  Relating to UBH's Breaches of Fiduciary Duty ............................. 9

15

16         B.    The Injury Caused by UBH's Fiduciary Breaches Does Not Disappear
            Simply Because UBH Refuses to Acknowledge It. .................................. 10

17    III.    Plaintiffs' Statutory Claim for Breach of Fiduciary Duty is Not Subject to Any
       Exhaustion Requirement. ...................................................................................... 12

18

19         A.    *All* ERISA Exhaustion Requirements Are Contractual, and None Apply
            to Statutory Breach of Fiduciary Duty Claims. ........................................ 12

20

21         B.    UBH Cannot Make the Breach of Fiduciary Duty Claim into a
            Disguised Claim for Benefits by Ignoring What Plaintiffs Actually
            Proved. ...................................................................................................... 14

22

23    IV.    If the Court Finds that an Exhaustion Requirement Applies, it Should Reinstate
       its Prior Rulings that Exhaustion Was Satisfied and Excused. ............................ 16

24

25    V.    The Court Should Not Issue an Advisory Opinion on Reprocessing ................... 19

26    CONCLUSION .................................................................................................................. 19

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Albermarle Paper Co. v. Moody,*
    422 U.S. 405 (1975) ........................................................................................... 16

*Amaro v. Cont'l Can Co.,*
    724 F.2d 747 (9th Cir. 1984) ............................................................................. 13

*Amato v. Bernard,*
    618 F.2d 559 (9th Cir. 1980) ....................................................................... 18, 19

*Arizona ex rel. Horne v. Geo Grp., Inc.,*
    816 F.3d 1189 (9th Cir. 2016) ........................................................................... 16

*Barnes v. AT & T Pension Benefit Plan–Nonbargained Program,*
    270 F.R.D. 488 (N.D. Cal. 2010) ...................................................................... 17

*Cinelli v. Sec. Pac. Corp.,*
    61 F.3d 1437 (9th Cir. 1995) ............................................................................. 18

*Conley v. Pitney Bowes,*
    34 F.3d 714 (8th Cir. 1994) ................................................................... 12, 13, 14

*Creech v. Tewalt,*
    84 F.4th 777 (9th Cir. 2023) ................................................................................ 9

*DeLeon v. Standard Ins. Co.,*
    No. 2:15-cv-07419-ODW(JC),
    2016 WL 768908 (C.D. Cal. Jan. 28, 2016) ...................................................... 17

*Des Roches v. Cal. Physicians' Svc.,*
    320 F.R.D. 486 (N.D. Cal. 2017) ...................................................................... 17

*Firestone Tire & Rubber Co. v. Bruch,*
    489 U.S. 101 (1989) ............................................................................................. 6

*Firth v. United States,*
    554 F.2d 990 (9th Cir. 1977) .............................................................................. 9

*Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.,*
    491 F.3d 1180 (10th Cir. 2007) ......................................................................... 17

*Fujikawa v. Gushiken,*
    823 F.2d 1341 (9th Cir. 1987) ........................................................................... 13

*Graphic Commc'ns Union, Dist. Council No. 2,*
   *AFL–CIO v. GCIU–Employer Ret. Ben. Plan,*
   917 F.2d 1184 (9th Cir. 1990)..................................................................................... 13

*Greany v. W. Farm Bureau Life Ins. Co.,*
   973 F.2d 812 (9th Cir. 1992)...................................................................................... 18

*Guenther v. Lockheed Martin Corp.,*
   972 F.3d 1043 (9th Cir. 2020) ................................................................................... 13

*Hall v. Los Angeles,*
   697 F.3d 1059 (9th Cir. 2012)..................................................................................... 2

*Harrow v. Prudential Ins. Co. of Am.,*
   279 F.3d 244 (3d Cir. 2002) ...................................................................................... 15

*Heimeshoff v. Hartford Life & Accident Ins. Co.,*
   571 U.S. 99 (2013) ............................................................................................... 14, 19

*Hendricks v. Aetna Life Ins. Co.,*
   339 F.R.D. 143 (C.D. Cal. 2021) .............................................................................. 17

*Horan v. Kaiser Steel Ret. Plan,*
   947 F.2d 1412 (9th Cir.1991)..................................................................................... 13

*Hutchins v. HP Inc.,*
   No. 5:23-CV-05875-BLF,
   2025 WL404594 (N.D. Cal. Feb. 5, 2025).................................................................. 6

*In re Household Int'l Tax Reduction Plan,*
   441 F.3d 500 (7th Cir. 2006) ..................................................................................... 17

*In re McKesson HBOC, Inc. ERISA Litigation,*
   391 F. Supp. 2d 812 (N.D. Cal. 2005) ........................................................................ 6

*In re United Behav. Health,*
   No. 24-242, 2024 WL 4036574 (9th Cir. Sept. 4, 2024) ...................................... 2, 10

*Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan,*
   111 F.3d 67 (8th Cir. 1997)............................................................................. 12, 13, 14

*Moyle v. Liberty Mut. Ret. Benefit Plan,*
   No. 10CV2179 DMS (BLM),
   2012 WL 13149097 (S.D. Cal. Apr. 10, 2012) ........................................................ 17

*Noren v. Jefferson Pilot Fin. Ins. Co.,*
   378 Fed. App'x 696 (9th Cir. 2010)........................................................................... 18

*Pac. Shores Hosp. v. United Behav. Health,*
   764 F.3d 1030 (9th Cir. 2014)............................................................................. 13

*Pegram v. Herdrich,*
   530 U.S. 211 (2000) ........................................................................................... 6

*San Francisco Herring Ass'n v. U.S. Dep't of the Interior,*
   946 F.3d 564 (9th Cir. 2019)............................................................................ 2, 9

*Schmookler v. Empire Blue Cross & Blue Shield,*
   107 F.3d 4 (2d Cir. 1997)................................................................................... 17

*Sierra Club v. Penfold,*
   857 F.2d 1307 (9th Cir. 1988)............................................................................. 9

*Smith v. Sydnor,*
   184 F.3d 356 (4th Cir. 1999).............................................................................. 15

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.,*
   770 F.3d 1282 (9th Cir. 2014)....................................................................... 13, 15

*Stacy v. Colvin,*
   825 F.3d 563 (9th Cir. 2016)........................................................................ 10, 17

*Stephens v. U.S. Airways Grp., Inc.,*
   No. 07-cv-1264 (RMC),
   2012 WL 13054263 (D.D.C. July 18, 2012).................................................... 17

*Vaught v. Scottsdale Healthcare Corp. Health Plan,*
   546 F.3d 620 (9th Cir. 2008)........................................................................ 13, 18

*Wit v. United Behav. Health,*
   79 F.4th 1068 (9th Cir. 2023)............................ 1, 2, 3, 4, 6, 8, 9, 11, 12, 13, 16

*Wit v. United Behav. Health,*
   No. 14-cv-02346-JCS,
   2020 WL 6469764 (N.D. Cal. Nov. 3, 2020)................................................... 11

*Wright v. Oregon Metallurgical Corporation,*
   360 F.3d 1090 (9th Cir. 2004)............................................................................. 6

*Yates v. Symetra Life Ins. Co.,*
   60 F.4th 1109 (8th Cir. 2023)............................................................................ 13

**STATUTES**

29 U.S.C. § 1104(a)(1)(B)........................................................................................ 7

29 U.S.C. §§ 1104(a)(1)(A), (B), & (D) ............................................................... 6

29 U.S.C. § 1133(2) ............................................................................................ 13

**OTHER AUTHORITIES**

2 Newberg and Rubenstein on Class Actions § 5:15 (4th ed. 2024) ................... 17

**RULES**

Federal Rule of Civil Procedure 52(b) .................................................................. 9

Federal Rule of Civil Procedure 59 ...................................................................... 9

UBH turns itself inside-out trying to insist that that question before the Court—whether the Court's ruling that UBH breached its fiduciary duties depended on any erroneous view that the plans mandate coverage coextensive with generally accepted standards of care ("GASC")—has already been decided, and there is nothing more to do on remand other than enter judgment for UBH. Yet UBH cannot point to a single finding or ruling by this Court that so much as suggests that the reason UBH breached its fiduciary duties is because the plans mandate coverage coextensive with GASC. Far from being "intertwined" with any such error, the Court's factual findings and legal conclusions make clear that UBH breached its fiduciary duties by prioritizing its bottom line in developing its Guidelines to facilitate denials and pursuing an intentionally shoddy process that failed to ensure the Guidelines accurately implemented the plans' common GASC precondition—and that this conduct breached UBH's fiduciary duties regardless of whether any *other* plan terms later provided grounds for any individual benefit denial. And because UBH's faithless and imprudent conduct breached its statutory fiduciary duties under ERISA, no exhaustion requirement applies.

## I.   The Breach of Fiduciary Duty Claim Was Remanded for Further Proceedings, Not Reversed "in its Entirety."

UBH insists that judgment on the breach of fiduciary duty claim has *already* been reversed "in its entirety," and there is nothing for this Court to do on remand other than enter judgment for UBH. UBH's Opening Br. on Breach of Fiduciary Duty Claim 12, 15, 17, 19, ECF No. 662 ("UBH Br."). But that is obviously wrong, since even UBH has to admit that the Ninth Circuit explicitly remanded the breach of fiduciary duty claim. As UBH knows, in *Wit III*, the Ninth Circuit reversed the judgment on Plaintiffs' breach of fiduciary duty claim "to the extent" it was "based on" an "erroneous interpretation of the Plans," and, in the next sentence, remanded "for the district court to answer the threshold question of whether Plaintiffs' fiduciary duty claim is subject to the exhaustion requirement." *Wit v. United Behav. Health*, 79 F.4th 1068,1089 (9th Cir. 2023) ("*Wit III*"). That is a direction to hold further proceedings, not to dismiss. The panel confirmed as much in its ruling on UBH's mandamus petition, basing its conclusion that *Wit III* required dismissal of the denial of benefits claim on the difference between the way it worded the disposition of the

denial of benefits claim versus the breach of fiduciary duty claim. *In re United Behav. Health*, No. 24-242, 2024 WL 4036574, at *2 (9th Cir. Sept. 4, 2024) ("*Wit IV*"). The panel emphasized *Wit III*'s "explicit remand on the fiduciary duty claim" to support its ruling that *Wit III* "definitively resolved the denial of benefits claim" because it "reversed (without remand)" on that claim. *Id.* That mandamus ruling leaves UBH no room to argue to this Court, or to the panel, that *Wit III* actually ordered dismissal of the entire case. UBH Br. 17.[1]

The task at hand necessarily requires this Court to re-evaluate the facts supporting Plaintiffs' breach of fiduciary duty claim and, giving explicit consideration to the correct plan interpretation (to the extent relevant to that claim), and determine whether the facts still support the conclusion that UBH is liable on that claim. The required analysis is not limited to merely re-reading the Court's existing legal conclusions to "identify" surviving aspects of the claim, as UBH urges. *See*, *e.g.*, UBH Br. 18, 24. If that were all that was required, the Ninth Circuit could easily, and much more efficiently, have done that itself. Since it instead remanded without "expressly or impliedly dispos[ing] of" questions about the extent to which the Plaintiffs' breach of fiduciary duty claim was "intertwined" with an improper interpretation of the plans, this Court is free to decide that issue. *See*, *e.g.*, *San Francisco Herring Ass'n v. U.S. Dep't of the Interior,* 946 F.3d 564, 574 (9th Cir. 2019) (on remand, district courts can reconsider "any issue not expressly or impliedly disposed of on appeal.") (citations and internal quotation marks omitted); *see also*, *e.g.*, *Hall v. Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) (on remand, district court is "free to decide anything not foreclosed by the mandate.").

---

[1] Tellingly, UBH did not argue that *Wit III* entitled it to outright dismissal of the breach of fiduciary duty claim in its original submissions to this Court on remand. *See*, *e.g.*, Joint Case Mgmt. Statement 12, ECF No. 604 (UBH argument that the parties should "submit briefing on the scope of the Ninth Circuit's reversal as to Plaintiffs' breach of fiduciary duty claim"). Its position only changed after the mandamus ruling. But a mandamus petition ostensibly to enforce the mandate with regard to the denial of benefits claim cannot have changed the mandate with regard to the breach of fiduciary duty claim.

**II.**    **UBH Does Not—and Could Not—Demonstrate that Any Part of Plaintiffs' Breach of Fiduciary Duty Claim is Intertwined with an Incorrect Plan Interpretation.**

UBH successfully prevented the Court from addressing on remand—with regard to the denial of benefits claim—what *Wit III* described as a "conflicting" record about whether this Court had misinterpreted the plans to "require coverage of all care consistent with GASC" (an erroneous interpretation) rather than as "exclud[ing] coverage for treatment *inconsistent* with GASC" (the correct interpretation). *Wit III*, 79 F.4th at 1087-88 (emphasis in original). But the Ninth Circuit panel's mandamus decision that *Wit III* required dismissal of the denial of benefits claims without resolving that conflicted record has no bearing on the breach of fiduciary duty claim. Plaintiffs demonstrated in their opening brief that none of the factual findings on which the Court based its conclusion that UBH breached its fiduciary duties of were "intertwined" with any erroneous belief that the Plans mandated coverage for all services that were consistent with GASC. Pls.' Opening Br. on Breach of Fiduciary Duty Claims 2-18, ECF No. 661 ("Pls.' Br."); *id.* 23-24. Since those findings were not "intertwined" with any "incorrect interpretation of the Plans," *Wit III* did not "disturb" them. 79 F.4th at 1088 n.7. UBH does not—and cannot—demonstrate otherwise.

Plaintiffs also demonstrated in their opening brief that the factual findings *Wit III* left undisturbed—i.e., *affirmed*—still establish that UBH breached its fiduciary duties of loyalty, care, and adherence to plan terms. Pls.' Br. 18-23. UBH fails to meaningfully dispute that argument, too, instead batting down straw man claims Plaintiffs never asserted and otherwise resting on its disingenuous mantra that the breach of fiduciary duty claim and the denial of benefits claim are "the same." None of those arguments, which lack any legal or factual support, hold water.

**A.**    **UBH Cannot Make this Court's Factual Findings Disappear by Refusing to Acknowledge Them.**

Unable to show that anything about the Court's findings and conclusions that UBH breached its fiduciary duties depends on an incorrect interpretation that the plans require coverage of all treatment that is consistent with GASC, UBH tries to equate its fiduciary breaches to wrongful claim denials, so that it can argue that the dismissal of the denial of benefits claim requires dismissal of the breach of fiduciary duty claim as well. *See*, *e.g.*, UBH Br. 2-3, 6, 12-13, 15. But UBH's

1   breaches of fiduciary duty in developing Guidelines in its financial self-interest and manipulating
2   the sources it purported to rely upon so that the Guidelines did not come close to accurately
3   implementing the relevant plan term are factually and legally distinct from whether denials
4   applying those Guidelines to particular benefit claims were or were not correct. The Court's post-
5   trial factual findings and the record supporting those findings establish UBH's liability for breach
6   of fiduciary duty to all class members.

7        UBH's chief tactic is to simply ignore the entire factual basis for the Court's breach of
8   fiduciary duty ruling by selectively quoting from the Court's conclusions of law. Thus, UBH
9   declares that "***the act*** that the Court actually found to be a breach of fiduciary duty was 'adopting
10  Guidelines that are unreasonable and do not reflect generally accepted standards of care' to deny
11  benefits." UBH Br. 18 (incompletely quoting Findings of Fact and Conclusions of Law ¶ 203 ECF
12  No. 418 ("FCCL")) (emphasis added); *see also id.* 15 (same). But a finding that UBH's Guidelines
13  do not match GASC is a determination that UBH drew the coverage line in the wrong place when
14  implementing the common GASC precondition; it does not imply that the Court mistook a coverage
15  exclusion for a coverage mandate.[2] And UBH's truncated quotation cuts out the Court's reference
16  to the factual basis for its ruling—i.e., "the Findings of Fact related to the challenged Guidelines
17  and UBH's Guideline development process"—as well as the ruling itself, that "UBH has breached
18  its fiduciary duty by violating its duty of loyalty, its duty of due care, and its duty to comply with
19  plan terms. . . ." FFCL ¶ 203.[3] Not only does UBH ignore entirely the fact that the Court found

---

20  [2] *Wit III* did not hold that this Court misinterpreted the *GASC precondition*. To the contrary, the
21  Ninth Circuit affirmed that all of the plans contain the GASC precondition, 79 F.4th at 1077, that
    UBH developed its Guidelines to implement that requirement, *id.* at 1088, and that UBH abused its
22  discretion in doing so because the Guidelines did not accurately reflect generally accepted
23  standards. *Id.* at 1088 n.6. The fact that UBH was implementing the plans' common GASC
    precondition (not the plans in their entirety) when it acted disloyally and imprudently demonstrates
24  that neither the breach of fiduciary duty claim nor any factual findings proving it are intertwined
    with an erroneous interpretation that the plans mandate coverage coextensive with GASC.
25
    [3] Paragraph 203 of the Court's post-trial Conclusions of Law states in full:
26
              Applying the standard of review discussed above, and based on the
27            Findings of Fact related to the challenged Guidelines and UBH's
              Guideline development process, the Court finds, by a preponderance
28            of the evidence, that UBH has breached its fiduciary duty by
    (Continued…)

PLS.' REPLY BRIEF ON
FIDUCIARY DUTY CLAIMS
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

breaches of the duties of loyalty and care, not just of the duty to comply with plan terms,[4] but UBH acts like the extensive factual findings on which those conclusions were based do not exist.

### 1. The Affirmed Findings of Fact Demonstrate that UBH Breached its Duty of Loyalty.

UBH ignores entirely this Court's extensive findings of fact establishing that UBH prioritized its own financial interests by deliberately developing Guidelines designed to drive denials and reduce the amount UBH paid in benefits. *See* Pls.' Br. 4-18. Downplaying its proven disloyalty as a mere "structural conflict of interest," UBH Br. 2, 5, UBH ignores that, after trial, this Court not only found that UBH had a structural conflict of interest, but ***also*** found that "the emphasis on cost-cutting that was embedded in UBH's Guideline development process ***actually tainted*** the process, causing UBH to make decisions about Guidelines based as much or more on its own bottom line as on the interests of the plan members, to whom it owes a fiduciary duty." FFCL ¶ 202. *See also id.* ¶ 174 (finding that "the process UBH uses to develop its Guidelines" was "tainted by UBH's financial interests"); *id.* ¶ 180 ("The Court finds that the financial incentives discussed above have, in fact, infected the Guideline development process."); *id*. ¶¶ 175-89 (factual findings relevant to breach of duty of loyalty).

The fact that the Court relied on some of the evidence of UBH's disloyalty to find that its abuse of discretion review of UBH's discretionary decisions should be tempered by "significant skepticism," FFCL ¶ 202, does not somehow make that evidence inapplicable to the separate, substantive question of whether UBH breached its fiduciary duties. UBH Br. 18. Nor does it mean that the breach of fiduciary duty claim itself, or any of the factual findings supporting it, are

---

> violating its duty of loyalty, its duty of due care, and its duty to comply with plan terms by adopting Guidelines that are unreasonable and do not reflect generally accepted standards of care.

FFCL ¶ 203.

[4] UBH even repeatedly refers to Plaintiffs' duty of loyalty and duty of care arguments as "new theories of breach" or "newly-asserted" claims. UBH Br. 3, 20, 21, 24. But those claims are not new; Plaintiffs presented the same arguments in their post-trial briefing, which is why the Court issued factual findings and conclusions of law ruling on them. *See* Pls.' Post-Trial Br. 73-75, ECF No. 391-4 (describing alleged breaches of fiduciary duties of loyalty and care); *id*. 82-85 (legal argument that UBH breached duties of loyalty and care); *id*. 2-71 (summarizing trial evidence).

"intertwined" with any erroneous plan interpretation, as UBH just assumes but does not (and cannot) demonstrate. *Id*. 3, 18, 19, 21-22, 27.

UBH thus accomplishes nothing by expounding on how conflicts of interest impact abuse of discretion review. UBH Br. 19-20. The Ninth Circuit has already affirmed this Court's findings that UBH abused its discretion in creating Guidelines to implement GASC that "did not *accurately* reflect GASC." *Wit III*, 79 F.4th at 1088 & n.6. The question now before the Court is not whether UBH abused its discretion when it created the Guidelines—the Ninth Circuit affirmed that it did— but whether, in doing, UBH acted "solely in the interest of the participants and beneficiaries" of the plans and "with the care, skill, prudence, and diligence" of a prudent person. 29 U.S.C. §§ 1104(a)(1)(A), (B), & (D). The established facts show it did not.

UBH is equally off base when it relies on cases acknowledging that ERISA fiduciaries do not breach their fiduciary duties merely by ***having*** a conflict of interest.[5] UBH Br. 20; *Hutchins v. HP Inc., No.* 5:23-CV-05875-BLF, 2025 WL404594, at *5 (N.D. Cal. Feb. 5, 2025) (dismissing claim for breach of fiduciary duty of loyalty where allegations only established a potential conflict of interest); *In re McKesson HBOC, Inc. ERISA Litigation*, 391 F. Supp. 2d 812, 835 (N.D. Cal. 2005) (same where plaintiffs failed to explain how ESOP administrator's "interests actually deviated from theirs").[6] That is neither what Plaintiffs alleged nor what this Court found. The whole

---

[5] Recognizing that a conflicted fiduciary ***can*** still act loyally is not the same thing as suggesting that conflicts of interest do not matter. In *Firestone*, for example, the Supreme Court held that abuse of discretion review applies where plans grant discretion to the administrator, but it also held that "[o]f course" any conflict of interest "must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 103, 115 (1989) (cleaned up). And in *Pegram*, the Supreme Court recognized that ERISA fiduciaries are allowed to "have financial interests adverse to beneficiaries," *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000), but it also held that when the fiduciary is "making fiduciary decisions," it acts as a fiduciary and owes fiduciary duties, *id.*, including the duty "to act exclusively in the interest of the beneficiary." *Id*. at 234.

[6] UBH also relies on *Wright v. Oregon Metallurgical Corporation,* 360 F.3d 1090, 1100 (9th Cir. 2004), UBH Br. 19-20, but that case is inapposite. *Wright* involved claims against the trustees of an "eligible individual account plan," which was exempt from ERISA's diversification requirement, which meant that allegations of stock fluctuations were insufficient to state a claim that the trustees breached their duties of prudence or loyalty by failing to diversify. 360 F.3d at 1098-99. *Wright* has no bearing on this case, where UBH deliberately acted to benefit itself financially. FFCL ¶ 184.

point is that, here, the Court found that, *in addition* to having a structural conflict of interest, UBH *did* act disloyally by deliberately rigging the Guidelines to serve its own bottom line. *See*, *e.g.*, FFCL ¶¶ 174, 179-89. And that conclusion in no way turns on any erroneous plan interpretation that the plans mandate coverage coextensive with GASC. UBH does not dispute—or even address—that point, thereby conceding it.

UBH also misses the point when it urges the Court to ignore its affirmed findings that UBH repeatedly lied to conceal the fact that its Guidelines were much more restrictive than GASC. UBH Br. 18 n.4. Plaintiffs did not assert a separate misrepresentation claim that would require proof of reliance. Rather, UBH's many misrepresentations that its Guidelines *were* consistent GASC— including in the Guidelines themselves *and* to state regulators, *see* Pls.' Br. 16-17—are additional evidence that UBH created its Guidelines to implement the GASC precondition. UBH well knew that its Guidelines were supposed to be consistent with GASC, and it well knew that they were not. UBH's efforts to conceal the extent to which the Guidelines deviated from GASC thus underscore that it was acting *deliberately* in its own interests.

### 2.     The Affirmed Findings of Fact Demonstrate that UBH Breached its Duty of Care.

UBH misconstrues Plaintiffs' argument as to why its shoddy Guideline development process breached its duty of care. *Compare* UBH Br. 21 *with* Pls.' Br. 20-22. As Plaintiffs explained, the undisputed facts establish that UBH was aware that resources like LOCUS, CALOCUS, and the ASAM Criteria existed, and that UBH knew those criteria were consistent with GASC, but in creating its Guidelines to implement the GASC requirement, UBH made so little effort to ensure that the Guidelines accurately reflected GASC that it came up with a set of criteria that were *so* inconsistent with those readily-available sources that no "practitioners worth their salt" would use them. Pls.' Br. 20-22. That imprudent conduct breached UBH's fiduciary duty to act with care, skill, prudence and diligence. 29 U.S.C. § 1104(a)(1)(B). UBH does not even try to dispute that conclusion.

Nor does UBH even try to demonstrate that the findings supporting the conclusion that UBH breached its duty of care were "intertwined" with any erroneous interpretation of the plans, other

1    than baldly asserting that "the issue of whether the Guidelines 'impermissibly deviated from

2    GASC' is part and parcel with Plaintiffs' now-reversed denial of benefits claim." UBH Br. 21

3    (quoting *Wit III*, 79 F.4th at 1088 n.7). But the finding that the Guidelines deviated from GASC

4    was not erroneous, and the Ninth Circuit never said it was. The Ninth Circuit affirmed the district

5    court's findings that UBH developed its Guidelines to *implement* the GASC requirement and that

6    the challenged Guideline provisions did not *accurately* reflect GASC. *Wit III*, 79 F.4th at 1088 &

7    n.6. The finding that UBH failed to use due care when creating Guidelines *to implement the GASC*

8    *requirement* does not have anything to do with whether denials UBH later based "in whole or in

9    part" on the Guidelines were wrongful in light of *all* the plan terms, and it certainly does not require

10   the Court to believe that the plans mandate coverage coextensive with GASC. UBH does not even

11   argue (let alone establish) otherwise.

### 3.    The Affirmed Findings of Fact Demonstrate that UBH Breached its Fiduciary Duty to Adhere to Plan Terms.

14       For similar reasons, UBH cannot demonstrate that the portion of the breach of fiduciary

15   duty claim alleging that UBH failed to comply with the plans when it implemented the GASC

16   requirement is "intertwined" any erroneous plan interpretation. As Plaintiffs explained in their

17   opening brief, the breach of fiduciary duty claim is all about how UBH went about creating

18   Guidelines to standardize its implementation of the plans' common GASC requirement—not *other*

19   plan terms, let alone *all* plan terms.   Pls.' Br. 22-23.[7] UBH failed to adhere to the GASC

---

[7] UBH's unsupported assertion that it developed its Guidelines to implement not only the plans' common GASC requirement, but also other elements of medical necessity sometimes encompassed in plan terms that were *not* common, UBH Br. 24, 26, 27, is directly contrary to this Court's affirmed findings of fact. *See, e.g.*, FFCL ¶ 39 (UBH's Level of Care Guidelines were used "in particular, to establish criteria consistent with generally accepted standards for determining the appropriate level of care."); *id.* ¶ 197 (finding UBH exercised its discretionary authority under the Plans "when it adopt[ed] Guidelines to standardize its coverage determinations and to ensure that those determinations are consistent with generally accepted standards of care."); Final Judgment 11, ECF No. 531 (enjoining UBH from using its Guidelines specifically to decide "whether services are consistent with generally accepted standard of care"); *Wit III*, 79 F.4th at 1085 ("The district court found that the Level of Care Guidelines represented UBH's interpretation of GASC."); *id.* at 1088 (no error in finding that "the challenged portions of the Guidelines represented UBH's *implementation* of the GASC requirement") (emphasis in original); *id.* at 1077 ("The Guidelines applied across Plans and were not customized based on specific plan terms.").

1    requirement when it created non-GASC criteria to implement the GASC requirement. That

2    conclusion does not implicate any erroneous plan interpretation, and UBH does not show otherwise.

3            **4.    The Court is Free to Make Additional Findings of Fact
                     on Open Issues Relating to UBH's Breaches of Fiduciary
4                    Duty**

5            Just as meritless is UBH's assertion that this Court has no authority to make additional

6    factual findings from the existing record, UBH Br. 23-25—even findings relating to the breach of

7    fiduciary duty claim that are neither foreclosed by nor inconsistent with *Wit III*.[8] *See, e.g.*, *San*

8    *Francisco Herring Ass'n*, 946 F.3d at 574 (despite mandate directing dismissal of complaint,

9    district court had authority to dismiss with leave to amend because the mandate did not "explicitly

10   direct[] to the contrary") (citation and internal quotation marks omitted); *Creech v. Tewalt*, 84 F.4th

11   777, 787 (9th Cir. 2023) (despite mandate directing leave to amend, district court had authority to

12   dismiss the complaint and find that amendment would be futile because "we did not anticipate the

13   sua sponte dismissal, but neither did we foreclose it."); *Sierra Club v. Penfold*, 857 F.2d 1307, 1312

14   (9th Cir. 1988) ("Once remanded, the district court was free to rule not only on the issue directed

15   in the remand, but other issues as well so long as our mandate did not direct to the contrary.")

16   (citation and internal quotation marks omitted).[9] UBH impugns the limited additional factual

17

18   ────────────────
     [8] UBH argues that Federal Rule of Civil Procedure 52(b) precludes the Court from making any
19   additional findings. UBH Br. 24. This Court has previously rejected that argument. *See* Order on
     Scope of Remand 48, ECF 625 ("[T]he Court finds that the time limits under Fed. R. Civ. P. 52(b)
20   and 59 for asking the Court to amend a judgment or make additional fact findings do not apply
     where the court of appeals has reversed and remanded for further proceedings.").

21   [9] Contrary to UBH's assertion, UBH Br. 23, *Firth v. United States,* 554 F.2d 990 (9th Cir. 1977),
22   does not preclude this Court from finding additional facts, if needed, in carrying out the task
     assigned by *Wit III*. In the first appeal in *Firth*, the Court of Appeals held the evidence of
23   contributory evidence was insufficient, which precluded the government's efforts to cure the
     insufficiency with new findings on remand. 554 F.2d at 993. Unlike *Firth,* the Court of Appeals
24   here did not hold the evidence of breach of fiduciary duty insufficient. Instead, the Court of Appeals
     posed a new question about the relationship between factual findings it affirmed with respect to a
25   claim and a legal error that might or might not have borne on that claim. Nothing in *Firth* precludes
     answering that question with new findings on the existing record. Indeed, in *Firth*, the Ninth Circuit
26   emphasized that it "had before it and considered on the first appeal all of the evidence on the issue
     of contributory negligence, and the resulting mandate did not leave the matter open for reappraisal
27   or clarification by the district court." *Id.* By contrast, here, the panel has expressly stated that the
28   (Continued…)

1    findings Plaintiffs proposed as "simply announcing that the Ninth Circuit was wrong," UBH Br.

2    24, but it does not point to any specific proposed fact that would have any such effect (and none

3    do).[10] To the contrary, the handful of factual findings Plaintiffs proposed merely call the Court's

4    attention to evidence already in the trial record and point out additional details that may assist the

5    Court in ruling on the remanded questions.

6        Even as it insists the Court may not make new findings of fact, UBH purports to "dispute"

7    unchallenged and affirmed factual findings that are the law of the case. UBH Br. 18 & n.4; *see also*

8    *id.* 21 & n.7. *That* it may not do. *See*, *e.g.*, *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) ("The

9    law of the case doctrine generally prohibits a court from considering an issue that has already been

10   decided by that same court or a higher court in the same case.").

11
12
       **B.    The Injury Caused by UBH's Fiduciary Breaches Does Not
             Disappear Simply Because UBH Refuses to Acknowledge It.**

13       UBH's argument that Plaintiffs alleged the "same harm" as to both claims, UBH Br. 13-14,

14   20-21, likewise depends on disregarding the parts of this Court's findings that UBH wishes were

15   not there. UBH declares that the "only harm" the Court found in connection with Plaintiffs' breach

16   of fiduciary duty claim was "***the denial of their right to fair adjudication of their claims for***

17   ***coverage*** based on Guidelines that were developed solely for their benefit." UBH Br. 6 (quoting

18   FFCL ¶ 204) (UBH's emphasis). UBH then proceeds to argue throughout the rest of its brief that

19   the harm Plaintiffs alleged for both claims was simply "the denial of their right to fair adjudication

20   of their claims for benefits," *id.* 12, 13-14, 22, which UBH then equates to ERISA claimants' "right

21   to a full and fair review of their claims." *Id.* 13 (cleaned up) (citation omitted); *see also id.* 14, 20-

22   21. UBH completes its mangling of the transitive property by arguing the Ninth Circuit's

23   conclusion that Plaintiffs fell "short of demonstrating that all class members were denied a full and

24   fair review of their claims" amounts to a ruling "that Plaintiffs *did not prove*" injury as to *either* of

25   _____

26   record before it on appeal was *unclear* and that it remanded so that this Court could clear it up—as
     UBH itself even admits. UBH Br. 17 (citing *Wit IV*, 2024 WL 4036574, at *2).

27   [10] Plaintiffs have separately responded to UBH's objections to each proposed fact. *See* Pls.' Reply
28   in Supp. of Proposed Supplemental Findings of Fact (filed contemporaneously with this Reply).

1  their claims. UBH Br. 13 (quoting *Wit III*, F.4th at 1086) (original emphasis). UBH's tortured

2  argument, again, distorts what this Court actually held.[11]

3      By downplaying, and then outright cutting, the portion of the Court's finding that referred

4  to "Guidelines that were developed solely for [Plaintiffs'] benefit," FFCL ¶ 204, UBH omits the

5  key distinction between the injuries Plaintiffs alleged with respect to the two claims. But the Court's

6  summary judgment ruling on this issue—which it expressly incorporated into its post-trial ruling,

7  FFCL ¶ 204—makes clear that Plaintiffs alleged, and proved, harm to first, "their rights to a plan

8  administrator that acts solely in the interests of plan participants in developing the Guidelines that

9  are used to adjudicate their claims," and second, their rights "to have their claims adjudicated under

10  Guidelines that are consistent with the terms of their plans." *Wit v. United Behav. Health*, No. 14-

11  cv-02346-JCS, 2020 WL 6469764, *13 (N.D. Cal. Nov. 3, 2020). And, as Plaintiffs pointed out in

12  their opening brief, the Ninth Circuit likewise held that Plaintiffs alleged different harms with

13  respect to each claim. Pls.' Br. 3 (quoting *Wit III*, 79 F.4th at 1082-83). With respect to breach of

14  fiduciary duty, Plaintiffs alleged (1) "a material risk of harm to Plaintiffs' ERISA-defined right to

15  have their contractual benefits interpreted and administered in their best interest and in accordance

16  with their Plan terms," as opposed to "a set of Guidelines that impermissibly narrows the scope of

17  their benefits," as well as (2) "the present harm of not knowing the scope of the coverage their Plans

18  provide." *Wit III*, 79 F.4th at 1082-83. With respect to the denial of benefits claim, on the other

19  hand, "Plaintiffs alleged a harm—the arbitrary and capricious adjudication of benefits claims—that

20  presents a material risk to their interest in fair adjudication of their entitlement to their contractual

21  benefits." *Wit III*, 79 F.4th at 1083.

22  _____

23  [11] UBH distorts *Wit III* as well. Contrary to UBH's argument, UBH Br. 3, 13-15, *Wit III* did not "reject" Plaintiffs' "theory of harm" with respect to the denial of benefits claim. Nowhere in the opinion does the Ninth Circuit say that an arbitrary and capricious benefit denial pursuant to an incorrect standard does not cause injury for purposes of an ERISA claim. Rather, *Wit III* found the class was overbroad because it included individuals who were not eligible for reprocessing to *redress* that injury (and, for the same reasons, would not have prevailed on the merits of individual claims seeking that relief). 79 F.4th at 1086. And, other than affirming that Plaintiffs sufficiently alleged standing, *id.* at 1082-83, *Wit III* does not address injury with respect to breach of fiduciary duty at all—thus, effectively affirming this Court's conclusion that Plaintiffs proved that element of their claim. FFCL ¶ 204.

1    UBH urges the Court to disregard the Ninth Circuit's rulings because they were made in the

2    context of finding that the Plaintiffs alleged cognizable injuries for purposes of Article III. UBH

3    Br. 14, 19 n.6. But even if Article III injury is not necessarily "coextensive" with the elements of a

4    claim, *id.*, demonstrating standing still requires a plaintiff to allege injury that is "fairly traceable"

5    to the misconduct alleged in the lawsuit and redressable by the substantive claim—elements the

6    Ninth Circuit also held were satisfied here. *Wit III*, 79 F.4th at 1083. And in any case, UBH's

7    argument fails to acknowledge that *this Court* not only addressed Plaintiffs' injuries in ruling on

8    standing, but it later incorporated that ruling into its post-trial conclusion of law holding that

9    Plaintiffs had satisfied the injury element of their breach of fiduciary duty claim. FFCL ¶ 204

10   (incorporating summary judgment ruling).

11   **III.    Plaintiffs' Statutory Claim for Breach of Fiduciary Duty is Not Subject
12            to Any Exhaustion Requirement.**

13         Despite conceding in passing that "administrative exhaustion is not required for statutory

14   ERISA claims," UBH insists that judgment on "any surviving breach of fiduciary duty claim"

15   should be reversed because many class members did not exhaust. UBH Br. 25. UBH's argument

16   fails for at least two reasons.

17   **A.    *All* ERISA Exhaustion Requirements Are Contractual, and
             None Apply to Statutory Breach of Fiduciary Duty Claims.**

18

19         UBH first invokes a false distinction between what it calls "prudential," as opposed to

20   "contractual," exhaustion requirements to argue that while Plaintiffs' breach of fiduciary duty claim

21   is only subject to "prudential" requirements if it is really a "disguised claim for benefits," UBH Br.

22   25-26, "contractual" exhaustion requirements are absolute and apply even to statutory ERISA

23   claims. *Id.* 28-29.[12] But *all* ERISA exhaustion is based on the enforcement of plan provisions

---

24   [12] UBH relies solely on two Eighth Circuit opinions for the proposition that there is some
25   freestanding judge-made requirement to exhaust administrative remedies that is somehow distinct
     from "the contractual terms of the members' plan." UBH's Br. 25 (citing *Conley v. Pitney Bowes*,
26   34 F.3d 714, 716 (8th Cir. 1994)); *see also id.* 28 (citing *Kinkead v. Sw. Bell Corp. Sickness &
     Accident Disability Benefit Plan*, 111 F.3d 67, 70 (8th Cir. 1997)). But the Eighth Circuit itself
27   rejected that argument in 2023, explaining, "a review of our cases confirms that the requirement
     that a plan participant first exhaust her administrative remedies before bringing an ERISA suit has
28   (Continued…)

requiring exhaustion as a matter of contract. That is why the Ninth Circuit describes enforcement of "a plan's own internal review procedures" as its "prudential exhaustion requirement." *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008).[13] ERISA requires plans to offer appeals from benefit denials; it does not require members to exhaust or even use them. 29 U.S.C. § 1133(2) (plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."). Any such requirement, therefore, necessarily arises from the plan. *See*, *e.g.*, *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1299 (9th Cir. 2014) ("[A] claimant need not exhaust when the plan does not require it."). In other words, there is no such thing as a requirement to exhaust an ERISA claim that is *not* contractual.

Thus, when the Ninth Circuit has held, over and over again for decades, that exhaustion is not required for statutory ERISA claims, including breach of fiduciary duty, it was necessarily referring to *contractual* exhaustion requirements set forth in ERISA plans. *See*, *e.g.*, *Wit III,* 79 F.4th at 1089; *Spinedex,* 770 F.3d at 1294; *Guenther v. Lockheed Martin Corp.,* 972 F.3d 1043, 1052 (9th Cir. 2020); *Horan v. Kaiser Steel Ret. Plan,* 947 F.2d 1412, 1416 n. 1 (9th Cir.1991), *overruled on other grounds as recognized by Pac. Shores Hosp. v. United Behav. Health,* 764 F.3d 1030, 1041 (9th Cir. 2014); *Fujikawa v. Gushiken,* 823 F.2d 1341, 1345 (9th Cir. 1987); *Graphic Commc'ns Union, Dist. Council No. 2, AFL–CIO v. GCIU–Employer Ret. Ben. Plan,* 917 F.2d 1184, 1187 (9th Cir. 1990); *Amaro v. Cont'l Can Co.,* 724 F.2d 747, 751 (9th Cir. 1984). UBH

---

consistently been premised on such remedies being expressly prescribed in the participant's written plan documents." *Yates v. Symetra Life Ins. Co.*, 60 F.4th 1109, 1113 (8th Cir. 2023) (discussing, *inter alia*, *Kinkead*, 111 F.3d at 68); *see also id.*, 60 F.4th at 1116 (holding ERISA plaintiffs are "not required to exhaust administrative remedies before bringing a denial-of-benefits suit when their written plan documents do not provide for any internal review or appeal procedures that can be exhausted."). Even *Conley*, on the same page UBH cites, says, "[w]e have required exhaustion in ERISA cases only when it was required by the particular plan involved." 34 F.3d at 716.

[13] The question in *Vaught* was not whether there was some "prudential" exhaustion requirement distinct from a "contractual one." The plan in that case undisputedly mandated two levels of internal appeal, 546 F.3d at 623, and the Ninth Circuit held that its authority to enforce *that requirement* came from a judge-made rule (i.e., a "prudential" one). *Id*. at 626 & n.2.

1    completely ignores all of this controlling authority, even though Plaintiffs cited it in their opening

2    brief. Pls.' Br. 24-25.

3    Instead, UBH relies on the Supreme Court's opinion in *Heimeshoff v. Hartford Life &*

4    *Accident Ins. Co*., 571 U.S. 99, 108 (2013), UBH Br. 28, but *Heimeshoff* was not even about

5    exhaustion, let alone whether plan exhaustion requirements apply to statutory ERISA claims.[14]

6    Still, its reasoning is consistent with the mountain of authority holding they do not. *Heimeshoff*

7    recognized that contractual provisions cannot nullify statutory rights of action, which is why

8    benefits claims based on contracts can be conditioned on exhaustion of plan remedies, but statutory

9    claims cannot. 571 U.S. at 108-09.

   **B.    UBH Cannot Make the Breach of Fiduciary Duty Claim into a
          Disguised Claim for Benefits by Ignoring What Plaintiffs
          Actually Proved.**

12    UBH argues that exhaustion is required here "[b]ecause Plaintiffs' breach of fiduciary duty

13    claim is, at its core, a plan-based claim relating to benefits and grounded in interpretation of plan

14    terms, rather than a purely statutory claim." UBH's Br. 25-26. The only support UBH offers for

15    that mischaracterization is its assertion that the Court's "core conclusion" with regard to the breach

16    of fiduciary duty claim was "that UBH failed 'to comply with plan terms by adopting Guidelines

17    that [were] unreasonable and [did] not reflect generally accepted standards of care.'" UBH Br. 26

18    (quoting FFCL ¶ 203). But again, UBH misleadingly truncated the quotation (albeit in a different

19    place than before) to conceal the Court's conclusions that UBH *also* breached its duties of loyalty

20    and care, as well as the reference to the factual basis for those conclusions:

> Applying the standard of review discussed above, and **based on the
> Findings of Fact related to the challenged Guidelines and UBH's
> Guideline development process**, the Court finds, by a
> preponderance of the evidence, that **UBH has breached its
> fiduciary duty by violating its duty of loyalty, its duty of due care,
> and its duty to comply with plan terms** by adopting Guidelines that

---

[14] UBH also cites *Kinkead* and *Conley*, discussed above at note 12, UBH Br. 28, but those cases
are inapposite. There was no breach of fiduciary duty claim in *Kinkead*, 111 F.3d at 68, and *Conley*
only considered whether the plan exhaustion requirement applied to the plaintiff's denial of benefits
claim, not his claim for breach of fiduciary duty. 34 F.3d at 719.

1    are unreasonable and do not reflect generally accepted standards of
2    care.

3    FFCL ¶ 203 (emphasis added). In keeping with its disingenuous edit to the Court's finding,

4    throughout its "disguised claim for benefits" section, UBH flatly ignores the duties of loyalty and

5    care, offering no argument whatsoever to justify subjecting those claims to any exhaustion

6    requirement. Any such argument, therefore, is now waived.

7        As for Plaintiffs' claim that UBH also breached its fiduciary duty to comply with plan terms,

8    UBH is wrong when it argues the claim is subject to administrative exhaustion. As in *Spinedex*,

9    Plaintiffs' claim challenges a "willful and systematic" displacement of the applicable plan term that

10    applied across-the-board, not a particular application of plan terms to an individual benefit claim.

11    770 F.3d at 1294 (cleaned up). UBH ignores *Spinedex*, but it is controlling authority directly on

12    point.

13        UBH's effort to liken this case to *Harrow* fails. UBH Br. 26 (discussing *Harrow v.*

14    *Prudential Ins. Co. of Am.*, 279 F.3d 244, 253 (3d Cir. 2002)). The difference is not just that the

15    plaintiff in *Harrow* sought monetary relief, unlike the injunctive and declaratory relief Plaintiffs

16    seek here (although that is certainly a telling distinction). As UBH concedes, the breach of fiduciary

17    duty claim in *Harrow* "'was actually premised on the plan administrators' failure to furnish plaintiff

18    with insurance coverage.'" UBH Br. 26 (quoting *Harrow*, 279 F.3d at 254). The plaintiff in *Harrow*

19    was asserting a particular claim for benefits under a plan, not challenging a "willful and systematic"

20    violation of a statutory duty as Plaintiffs do here. *Spinedex*, 770 F.3d at 1294.

21        The heart of UBH's argument is the specious assertion that any breach of fiduciary duty

22    claim that is "'related to' a denial of benefits" in any way is necessarily a "disguised benefit claim."

23    UBH Br. 27 (quoting *Smith v. Sydnor*, 184 F.3d 356, 363 (4th Cir. 1999)). But no case holds that—

24    not even the case UBH relies on for that proposition. *Sydnor* holds that exhaustion is required

25    "where the basis of the claim is a plan administrator's denial of benefits or an action by the

26    defendant ***closely*** related to the plaintiff's claim for benefits, such as withholding of information

27    regarding the status of benefits." *Id*. at 362 (emphasis added). As the example the court gave

28    demonstrates, "closely related" actions are those directly concerning a *particular* benefit denial.

PLS.' REPLY BRIEF ON
FIDUCIARY DUTY CLAIMS
CASE NOS. 3:14-CV-02346-JCS, 3:14-CV-05337-JCS

1   But the case did not suggest that *all* actions relating in any way to benefit denials writ large—even

2   the development of standardized coverage criteria to use in place of plan terms for all plans—

3   somehow become "disguised benefit claims."

4   **IV.    If the Court Finds that an Exhaustion Requirement Applies, it Should**
        **Reinstate its Prior Rulings that Exhaustion Was Satisfied and**
5       **Excused.**

6           UBH next tries to exploit Plaintiffs' attempt to address the issues remanded by the Ninth

7   Circuit in an orderly fashion by claiming that Plaintiffs waived any argument that exhaustion was

8   satisfied or excused because they did not present that argument in their opening brief. UBH Br. 31.

9   UBH is wrong. The Ninth Circuit only directed this Court to address those questions *if* it first

10  concludes that an exhaustion requirement applies. *Wit III*, 79 F.4th at 1089. Contrary to UBH's

11  assertion, Plaintiffs did not stipulate that their opening brief would address exceptions to ERISA

12  exhaustion requirements; the parties merely acknowledged in a scheduling stipulation that that was

13  a question *conditionally* before the Court *on remand. See* Stip. and Order Regarding Proposed

14  Briefing Schedule 1, ECF 657 (noting the parties' agreement that one of the 'threshold' questions

15  the Court must decide is "whether any surviving portion of the breach of fiduciary duty claim is

16  subject to administrative exhaustion (and *if so*, whether such requirements have been satisfied).")

17  (emphasis added). In any case, out of an abundance of caution and while explicitly requesting an

18  opportunity to make additional arguments, Plaintiffs did set forth their position that the Court

19  should reinstate its prior rulings on those issues, Pls.' Br. 29 n.17, and UBH presented its arguments

20  against that position. It would be unjust to preclude Plaintiffs from responding to UBH's arguments,

21  which are meritless for at least three reasons.

22          First, as UBH concedes, UBH Br. 29, this Court previously found that the Named Plaintiffs

23  exhausted their administrative remedies. FFCL ¶ 190. The Ninth Circuit's general rule in class

24  cases is that exhaustion of administrative remedies by a class representative suffices for the class.

25  *Arizona ex rel. Horne v. Geo Grp., Inc.,* 816 F.3d 1189, 1202 (9th Cir. 2016) ("[U]nnamed class

26  members in a private class action need not exhaust administrative remedies."). *See also, e.g.,*

27  *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 414 n.8 (1975) (allowing class claim under Title

28

VII "without exhaustion of administrative procedures by the unnamed class members"); 2 Newberg and Rubenstein on Class Actions § 5:15 (4th ed. 2024). District courts in this Circuit apply that general rule to ERISA class actions. *See, e.g.*, *Hendricks v. Aetna Life Ins. Co.*, 339 F.R.D. 143, 149 n.2 (C.D. Cal. 2021) ("[C]ourts in this district have held that 'unnamed class members in an ERISA class action need not exhaust their administrative remedies' because 'the named plaintiff's claim puts the defendant on notice of the absent class members' claims and thus fulfills the function of the internal grievance procedure.") (quoting *Des Roches v. Cal. Physicians' Svc.,* 320 F.R.D. 486, 500 (N.D. Cal. 2017)); *DeLeon v. Standard Ins. Co.,* No. 2:15-cv-07419-ODW(JC), 2016 WL 768908, at *4 (C.D. Cal. Jan. 28, 2016) (same); *Barnes v. AT & T Pension Benefit Plan– Nonbargained Program*, 270 F.R.D. 488, 494 (N.D. Cal. 2010) (same); *Moyle v. Liberty Mut. Ret. Benefit Plan*, No. 10CV2179 DMS (BLM), 2012 WL 13149097, at *8 (S.D. Cal. Apr. 10, 2012) ("Absent class members in ERISA suits are not required to exhaust administrative remedies."). Two Circuit courts agree, and to date, none disagree. *See In re Household Int'l Tax Reduction Plan,* 441 F.3d 500, 502 (7th Cir. 2006) (in ERISA context, when named plaintiff has exhausted, "requiring exhaustion by the individual class members would merely produce an avalanche of duplicative proceedings and accidental forfeitures, and so is not required."); *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.,* 491 F.3d 1180, 1193 n.5 (10th Cir. 2007) (holding in ERISA case that "only the class representatives must exhaust their administrative claims").[15] Thus, the Named Plaintiffs' exhaustion satisfied any such requirement on behalf of the class as a whole.

Second, this Court previously found, as fact, that exhausting administrative remedies would have been futile in this case. *See* FFCL ¶¶ 191-92. UBH did not challenge those factual findings on appeal, and the Ninth Circuit did not find them to be clearly erroneous. Therefore, they remain the law of the case. *See, e.g.*, *Stacy*, 825 F.3d at 567 ("The law of the case doctrine generally prohibits

---

[15] The two out-of-Circuit cases on which UBH relies are inapposite. UBH Br. 29-30 (citing *Schmookler v. Empire Blue Cross & Blue Shield*, 107 F.3d 4 (2d Cir. 1997); *Stephens v. U.S. Airways Grp., Inc.*, No. 07-cv-1264 (RMC), 2012 WL 13054263, at *3 (D.D.C. July 18, 2012)). In *Schmookler*, ***none*** of the named plaintiffs had exhausted their claims. 107 F.3d at *2. In *Stephens*, a district court applied the D.C. Circuit's strict rule that "exhaustion is only waived in 'the most exceptional circumstances.'" 2012 WL 13054263, at *3. There is no such rule in the Ninth Circuit.

a court from considering an issue that has already been decided by that same court or a higher court in the same case."). UBH's attempt to argue that Plaintiffs "failed to satisfy their burden of proof" on futility, UBH Br. 30, is precluded for the same reason. UBH asserted exactly that argument in its post-trial brief, ECF No. 397-4 at 111-12, but this Court rejected it. *See* FFCL ¶ 191; *see also* Pls.' Post-Trial Reply Brief 79-80, ECF No. 404 (citing evidence demonstrating futility). In any case, UBH's belated offer of supposed evidence that exhaustion would not have been futile is off-target. Evidence that some participants successfully challenged denials of coverage *under* UBH's Guidelines does not demonstrate that any participant could have challenged, in internal appeals, UBH's adoption of the Guidelines as its standard for evaluating whether treatment satisfied the GASC precondition. Indeed, the record shows that such a challenge would have been futile; as this Court previously found, reviewers were bound to follow the Guidelines, including when deciding appeals. FFCL ¶ 191.

Third, UBH's argument that "contractual" exhaustion requirements are not subject to exceptions like futility, UBH Br. 30, is also incorrect. As explained above, *all* ERISA exhaustion requirements are "contractual," and yet ERISA exhaustion is subject to long-recognized exceptions that courts *must* consider before deciding whether to enforce the requirement—including futility. *See*, *e.g.*, *Vaught*, 546 F.3d at 626-27 ("'[D]espite the usual applicability of the exhaustion requirement, there are occasions when a court is obliged to exercise its jurisdiction and is guilty of an abuse of discretion if it does not, the most familiar examples perhaps being when resort to the administrative route is futile or the remedy inadequate.'") (quoting *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980)); *Noren v. Jefferson Pilot Fin. Ins. Co.*, 378 Fed. App'x 696, 697-98 (9th Cir. 2010) (enforcing plans' exhaustion requirement "under the prudential exhaustion doctrine" *and* recognizing that the three recognized exceptions to the doctrine are "1) futility; 2) inadequate remedy; and 3) unreasonable procedures").[16] As *Amato* explains, both the enforcement of

---

[16] The other three cases UBH cites, UBH Br. 30, do not hold otherwise—indeed, none even considers whether or when ERISA plan exhaustion requirements may be excused. *See Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1445 (9th Cir. 1995) (declining to "apply the doctrine of mistake" to vary unambiguous written plan terms concerning when benefits vested); *Greany v. W. Farm Bureau Life Ins. Co.,* 973 F.2d 812, 822 (9th Cir. 1992) (equitable estoppel not available where (Continued…)

1  contractual exhaustion requirements *and* the exception for futility are part of the federal common

2  law Congress authorized courts to apply under ERISA in the same way they had done for collective

3  bargaining agreements. 618 F.2d at 567.

4  **V.    The Court Should Not Issue an Advisory Opinion on Reprocessing**

5        UBH seeks an advisory opinion from this Court that "reprocessing is foreclosed" as relief

6  for the breach of fiduciary duty claim. UBH Br. 22-23. Plaintiffs have not requested that relief on

7  remand, so the question of whether it is "foreclosed" is not before the Court.

8                                    **<u>CONCLUSION</u>**

9

10       For the reasons stated herein and in Plaintiffs' Opening Brief, Plaintiffs respectfully request

11  that the Court enter an order clarifying that its rulings that UBH breached its fiduciary duties of

12  loyalty, care, and adherence to plan terms are not "intertwined" with any erroneous plan

13  interpretation; and that no exhaustion requirement applies to Plaintiffs' breach of fiduciary duty

14  claims, or, if the Court finds that exhaustion was required, enter an order finding that the

15  requirement was satisfied and/or excused for all class members.

16  Dated: May 16, 2025                          Respectfully submitted,

17                                               ZUCKERMAN SPAEDER LLP

18                                               /s/ Caroline E. Reynolds
19                                               Caroline E. Reynolds
20                                               D. Brian Hufford
                                                 Jason S. Cowart
21                                               Joshua Mathew

22                                               PSYCH-APPEAL, INC.
23                                               Meiram Bendat

24                                               *Attorneys for Plaintiffs and the Classes*

25

26  ———————————

27  plan terms concerning termination of coverage were unambiguous); *Heimeshoff*, 571 U.S. at 105-
    06 (contractual limitations period enforceable "as long as the period is reasonable" and no
28  "controlling statute" prevents it from taking effect).