1  JENNIFER S. ROMANO (SBN 195953)
   jromano@crowell.com
2  ANDREW HOLMER (SBN 268864)
   aholmer@crowell.com
3  CROWELL & MORING LLP
   515 South Flower Street, 40th Floor
4  Los Angeles, California 90071
   Telephone:  213.622.4750
5  Facsimile:   213.622.2690

6  NICHOLAS DOWD (admitted *pro hac vice*)
   NDowd@crowell.com
7  CROWELL & MORING LLP
   1601 Wewatta Street, Suite 815
8  Denver, CO 80202
   Telephone:  303.524.8660
9  Facsimile:   303.524.8650

10 Attorneys for Defendant
   UNITED BEHAVIORAL HEALTH
11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15 DAVID AND NATASHA WIT, *et al.*,         Case No. 3:14-CV-02346-JCS
                                            Related Case No. 3:14-CV-05337-JCS
16             Plaintiffs,

17       v.                                 **UNITED BEHAVIORAL HEALTH'S
                                            SUR-REPLY BRIEF ON BREACH OF
18 UNITED BEHAVIORAL HEALTH                 FIDUCIARY DUTY CLAIM**
   (operating as OPTUMHEALTH
19 BEHAVIORAL SOLUTIONS),

20             Defendant.

21 ─────────────────────────────────
   GARY ALEXANDER, *et al.*,                Hearing Date: July 30, 2025
22                                          Hearing Time: 9:30 a.m.
               Plaintiffs,                  Judge: Joseph C. Spero
23
         v.
24
   UNITED BEHAVIORAL HEALTH
25 (operating as OPTUMHEALTH
   BEHAVIORAL SOLUTIONS),
26
               Defendant.
27

28

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 3

I. The Breach Of Fiduciary Duty Claim Cannot Proceed Under Wit III. ............................ 3

  A. Plaintiffs' Breach Of Fiduciary Duty Claim Is Based On The Same Theory Of Breach That The Ninth Circuit Reversed. ........................................ 3

  B. Plaintiffs' Fiduciary Duty Claim Is Based On The Same Theory Of Harm As The Rejected Denial Of Benefits Claim. ........................................ 4

  C. Plaintiffs' Fiduciary Duty Claim Is Contrary To ERISA, Which Requires A Showing Of Harm And Prohibits Duplicative Relief. ........................ 7

II. Plaintiffs Ask The Court To Defy The Ninth Circuit's Mandate. ................................... 9

  A. Plaintiffs Ask The Court To Defy The Ninth Circuit's Mandate By Concluding That No Part Of The Fiduciary Duty Claim Was Reversed. .............. 9

  B. Plaintiffs Ask The Court To Defy The Ninth Circuit's Mandate By Re-Writing The Record. ........................................................................ 11

III. Plaintiffs Failed To Prove That Each Class Member Satisfied Administrative Exhaustion Requirements. ........................................................................ 13

  A. The Contractual Exhaustion Requirements Must Be Enforced. ...................... 13

  B. Plaintiffs' Breach Of Fiduciary Duty Claim Is A Plan-Based Claim Subject To Prudential Exhaustion Requirements As Well. ...................... 17

  C. Plaintiffs' Failure To Exhaust Is Not Excused. .......................................... 18

IV. UBH Is Not Seeking An "Advisory Opinion" On Reprocessing. ................................... 20

CONCLUSION ............................................................................................................... 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amaro v. Cont'l Can Co.*,
 724 F.2d 747 (9th Cir. 1984) ................................................................16

*Amato v. Bernard*,
 618 F.2d 559 (9th Cir. 1980) ................................................................13

*Castillo v. Metro. Life Ins. Co.*,
 970 F.3d 1224 (9th Cir. 2020) ...............................................................8

*Cinelli v. Security Pac. Corp.*,
 61 F.3d 1437 (9th Cir. 1995) .................................................................15

*City of Oakland v. Wells Fargo & Co.*,
 14 F.4th 1030 (9th Cir. 2021) ................................................................6

*Conley v. Pitney Bowes*,
 34 F.3d 714 (8th Cir. 1994) ..................................................................14

*Firth v. United States*,
 554 F.2d 990 (9th Cir. 1977) .................................................................12

*Fujikawa v. Gushiken*,
 823 F.2d 1341 (9th Cir. 1987) ...............................................................16

*Graphic Commc'ns Union, Dist. Council No. 2, AFL–CIO v. GCIU–Employer Ret. Ben. Plan*,
 917 F.2d 1184 (9th Cir. 1990) ...............................................................16

*Guenther v. Lockheed Martin Corp.*,
 972 F.3d 1043 (9th Cir. 2020) ...............................................................16

*Hall v. Los Angeles*,
 697 F.3d 1059 (9th Cir. 2012) ...............................................................11

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
 571 U.S. 99 (2013) ..........................................................................15, 16

*Horan v. Kaiser Steel Ret. Plan*,
 947 F.2d 1412 (9th Cir. 1991) ...............................................................16

*In re Household Int'l Tax Reduction Plan*,
 441 F.3d 500 (7th Cir. 2006) .............................................................14, 15, 19

*Katz v. Comprehensive Plan of Grp. Ins.*,
  197 F.3d 1084 (11th Cir. 1999) ................................................................... 9

*Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan*,
  111 F.3d 67 (8th Cir. 1997) ..................................................................... 14

*Leon v. Standard Ins. Co.*,
  2016 WL 768908 (C.D. Cal. Jan. 28, 2016) ............................................ 19

*In re McKesson HBOC, Inc. ERISA Litigation*,
  391 F. Supp. 2d 812 (N.D. Cal. 2005) ........................................................ 7

*Moyle v. Liberty Mut. Ret. Ben. Plan*,
  823 F.3d 948 (9th Cir. 2016) ....................................................................... 8

*Noren v. Jefferson Pilot Fin. Ins. Co.*,
  378 F. App'x 696 (9th Cir. 2010) ............................................................... 20

*Pac. Shores Hosp. v. United Behav. Health*,
  764 F.3d 1030 (9th Cir. 2014) ................................................................... 20

*Rochow v. Life Ins. Co. of N. Am.*,
  780 F.3d 364 (6th Cir. 2015) (en banc) ....................................................... 9

*Smith v. Sydnor*,
  184 F.3d 356 (4th Cir. 1999) ..................................................................... 18

*Spinedex Physical Therapy USA Inc. United Healthcare of Ariz., Inc.*,
  770 F.3d 1282 (2014) .......................................................................... 16, 17

*Stephens v. Pension Ben. Guar. Corp.*,
  755 F.3d 959 (D.C. Cir. 2014) .............................................................. 13, 19

*Tolson v. Avondale Indus.*,
  141 F.3d 604 (5th Cir. 1998) ....................................................................... 9

*Twentieth Cent. Fox Film Corp. v. Ent. Distrib.*,
  429 F.3d 869 (9th Cir. 2005) ..................................................................... 11

*United Behav. Health v. United States Dist. Ct. for N. Dist. of California*,
  No. 24-242, 2024 WL 4036574 (9th Cir. Sept. 4, 2024) ............................ *passim*

*United States v. Pepe*,
  895 F.3d 679 (9th Cir. 2018) ..................................................................... 15

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996) ........................................................................... 7, 8, 9

*Vaught v. Scottsdale Healthcare Corp. Health Plan*,
  546 F.3d 620 (9th Cir. 2008) .......................................................... 13, 14, 15

*Wit v. United Behav. Health,*
    58 F.4th 1080 (9th Cir. 2023) ................................................................19

*Wit v. United Behav. Health,*
    79 F.4th 1068 (9th Cir. 2023) ........................................................ *passim*

*Yates v. Symetra Life Ins. Co.,*
    60 F.4th 1109 (8th Cir. 2023) ................................................................15

**Statutes**

29 U.S.C. § 1132(a)(1)(B) ................................................................7, 8, 9

29 U.S.C. § 1132(a)(3) ................................................................8, 9

Rules Enabling Act, 28 U.S.C. § 2072(b) ................................................19

**Other Authorities**

Fed. R. Civ. Proc. 52(b) ................................................................12

# INTRODUCTION

To salvage their claims after losing on appeal and mandamus, Plaintiffs continue to press on remand a new theory of liability that this Court *never* adopted despite litigating this case through judgment. Plaintiffs contend that UBH breached its fiduciary duties—and that Plaintiffs are entitled to relief—solely because financial considerations at some point influenced some portion of some of the challenged Guidelines. But the bare existence of a conflict of interest was never the basis for the Court's liability judgment in this case, and if it had been, that would have been reversible error under ERISA. Plaintiffs still fail to show otherwise. As a result, no finding of liability based on that theory could have "survive[d]" the Ninth Circuit's decisions, and Plaintiffs offer no other liability finding that "survive[d]" either.[1] Since that is the purpose of the remand, the lack of any surviving claim leaves nothing for this Court to do but enter judgment.

Plaintiffs are demonstrably wrong that "UBH cannot point to a single finding or ruling" that "the reason UBH breached its fiduciary duties is because the plans mandate coverage coextensive with GASC." ECF No. 663 ("Reply") at 1. As Plaintiffs' own filing admits, this Court's Findings of Fact and Conclusions of Law ("FFCL," ECF No. 418) state clearly at paragraph 203 that UBH breached its fiduciary duty "by adopting Guidelines that are unreasonable *and do not reflect generally accepted standards of care*." Reply at 14–15 (emphasis added). It is irrelevant that the same paragraph also mentions "UBH's Guideline development process," because that process was not the stated breach; it was merely a factor the court considered in determining the standard of review. At a minimum, any reference to the Guideline development process in paragraph 203 is clearly "intertwined" with the finding about GASC. The paragraph is a single sentence that connects that process to the Guidelines' alleged divergence from GASC. The Ninth Circuit's repeated confirmation that this divergence was not actionable thus applies just as much to Plaintiffs' fiduciary duty claim—as litigated—as to its denial of benefits claim.

---

[1] *See Wit v. United Behav. Health*, 79 F.4th 1068 (9th Cir. 2023) ("*Wit III*"); *United Behav. Health v. United States Dist. Ct. for N. Dist. of California*, No. 24-242, 2024 WL 4036574 (9th Cir. Sept. 4, 2024) ("*Wit IV*").

Plaintiffs' reinvented theory also cannot have "survived" *Wit III* and *IV* because it is contrary to ERISA law and ignores the fact that the only *harm* they suffered was denial of benefits. Plaintiffs still cite no case in which the mere consideration of finances in developing a claims determination process is actionable absent evidence that it *caused* a denial of benefits to each plaintiff. Here, that means Plaintiffs had to prove that United's alleged financial considerations resulted in specific differences in UBH's Guidelines that in turn caused the denial of Plaintiffs' claims. Plaintiffs utterly failed to prove any such thing.

There was no other harm to either the plan beneficiaries or the plan itself. The mere consideration of finances would not have harmed Plaintiffs in any way, shape, or form if their benefits had all been approved. And even if this ethereal view of harm conferred standing under Article III, it would not constitute a cognizable harm *under ERISA*. This shows that Plaintiffs' real claim here is for benefits, and that the fiduciary duty claim seeks redundant relief that is not "appropriate" under Section 502(a)(3) of ERISA. At the end of the day, that is the clear principle flowing through both *Wit III* and *Wit IV*.

Plaintiffs' contrary view that *no part* of the fiduciary breach finding is linked to the GASC-based theory of liability that the Ninth Circuit overturned directly flouts *Wit III*. The Court held in clear terms that "Plaintiffs' breach of fiduciary duty claim *also relied heavily* on its conclusion that the Guidelines impermissibly deviated from GASC," 79 F.4th at 1088 n.7 (emphasis added), and it reversed liability on that claim "to the extent" this was true, *id.* at 1089. A ruling that *Wit III* reversed *no* part of that claim would thus defy the Ninth Circuit's mandate. Yet Plaintiffs again invite error by claiming the Ninth Circuit did not reverse *anything* on their fiduciary duty claim.

With no evidence that any finding of breach survived *Wit III* and *IV*, Plaintiffs try to change the Court's task. They ask the Court to make *new* findings years after trial—rather than just "'identify' surviving aspects of the claim," Reply at 2, but that ignores *Wit IV*'s holding that *Wit III* merely "remanded for the district court to identify any surviving aspect of that claim." 2024 WL 4036574, at *2. Plaintiffs' invitation to ignore this binding language—on the theory that it somehow improperly "changed [*Wit III*'s] mandate," Reply at 2 n.1—invites yet more error.

Finally, even if some part of the breach of fiduciary duty claim were to survive, it would be subject to administrative exhaustion requirements with which a significant number of class members failed to comply. Here as well, Plaintiffs cannot meaningfully distinguish their breach of fiduciary duty claim from the denial of benefits claim, which indisputably was subject to prudential administrative exhaustion requirements. Moreover, Plaintiffs provide no basis for the Court to disregard the express terms of class members' plans requiring administrative exhaustion or to excuse noncompliance with those contractual provisions.

## ARGUMENT

### I.    The Breach Of Fiduciary Duty Claim Cannot Proceed Under *Wit III*.

#### A.    Plaintiffs' Breach Of Fiduciary Duty Claim Is Based On The Same Theory Of Breach That The Ninth Circuit Reversed.

Plaintiffs claim in their Reply that no ruling of the Court "so much as suggests" that UBH breached its fiduciary duties "because the plans mandate coverage coextensive with GASC," Reply at 1. That is meritless. After hearing Plaintiffs' case and considering the evidence they presented at trial, the Court stated in clear terms what it concluded to be the basis of UBH's breach of its fiduciary duties. "UBH has breached its fiduciary duty by violating its duty of loyalty, its duty of care, and its duty to comply with plan terms *by adopting Guidelines that are unreasonable and do not reflect generally accepted standards of care*." *See* FFCL ¶ 203 (emphasis added). As Plaintiffs well know, that is the same conduct that formed the basis of the now-reversed denial of benefits claim. *See* FFCL ¶ 212.

The breach this Court *actually identified* as the basis for its judgment on the fiduciary duty claim cannot survive *Wit III*, so Plaintiffs attempt to shift attention to the Court's findings of fact regarding "UBH's Guideline development process" and UBH's financial incentives and structural conflicts of interest, which they claim are "factually and legally distinct" from UBH's denials of particular benefit claims. *See* Reply at 4–5. But the Court did not (and, as explained below, could not) hold that those findings, standing alone, supported liability against UBH. They were not even mentioned in paragraph 203. *See* FFCL ¶ 203. Indeed, in its conclusions of law, the Court referenced UBH's conflict of interest only when identifying the evidence supporting its conclusion

that "significant skepticism" was warranted in determining "*whether* UBH abused its discretion when it adopted the Guidelines that are challenged in this case." *See* FFCL ¶ 202 (emphasis added). In other words, the Court relied on the facts discussed in paragraph 202 to determine how to evaluate the ultimate question of whether UBH's adoption of the Guidelines was a breach of fiduciary duty. The Court should reject Plaintiffs' invitation to rewrite its express holding regarding UBH's breach to circumvent *Wit III*. *See* Reply at 5–6.

In any event, even if UBH's conflicts of interest in developing the Guidelines were the basis for their breach of fiduciary duty claim, Plaintiffs fail to show that such facts are not themselves inextricably "intertwined" with the Court's misinterpretation of the plans. *See* Section II.A, below. Indeed, in the Court's FFCL, the Court relied on these factual findings for the exact same purpose for both the breach of fiduciary duty claim and the now-reversed denial of benefits claim. *See* FFCL ¶¶ 174–189 (discussing UBH's Guidelines development process without distinguishing between Plaintiffs' claims) and ¶¶ 202, 210 (determining appropriate standard of review for UBH's conduct based on UBH's Guidelines development process).[2]

**B.    Plaintiffs' Fiduciary Duty Claim Is Based On The Same Theory Of Harm As The Rejected Denial Of Benefits Claim.**

The breach of fiduciary duty claim also cannot survive because Plaintiffs can no longer satisfy the harm element of their claim. This Court has already recognized that harm is an essential element of a breach of fiduciary duty claim. *See* FFCL ¶ 196 ("The elements Plaintiffs must prove to prevail on their Breach of Fiduciary Claim are: (1) UBH was a Plan fiduciary; (2) UBH breached its fiduciary duty; and (3) the breach caused harm to Plaintiffs."). But the injury underlying the breach of fiduciary duty claim—the denial of their right to a fair adjudication by UBH of their benefits claims—is the same injury the Ninth Circuit held Plaintiffs failed to prove for the denial of benefits claim. *See* UBH Opening Br. at 13–15.

---

[2] Plaintiffs are wrong in insisting that the Ninth Circuit "affirmed" this Court's conflict of interest findings. *See, e.g.*, Reply at 3, 5–8. *Wit III* held that such findings were not disturbed "*to the extent they were not intertwined with an incorrect interpretation of the Plans.*" 79 F.4th at 1088 n.7. Again, Plaintiffs fail to show the findings on UBH's development of the Guidelines and the Court's interpretation of the Plans were not intertwined.

Plaintiffs' attempts at distinguishing the harm underlying the fiduciary duty claim and the denial of benefits claim do not hold water. For one, the Court's own findings and conclusions of law demonstrate that both claims were premised upon the same theory of harm. Once again, Plaintiffs offer nothing to the contrary in their Reply. The Court expressly concluded in the FFCL that the harm caused by UBH's breach of fiduciary duty was "the denial of [Plaintiffs'] right to fair adjudication of their claims for benefits based on Guidelines that were developed solely for their benefit." FFCL ¶ 204. That is the same injury the Ninth Circuit attributed to Plaintiffs' denial of benefits claim and held Plaintiffs failed to prove. *See Wit III*, 79 F.4th at 1084 (discussing how "Plaintiffs argue[d] that under ERISA, beneficiaries have a right to a 'full and fair review'" of their claims "under the correct standard"); *see also* UBH Opening Br. at 13.[3]

Plaintiffs attempt to avoid the Court's actual findings at trial by reaching back in time to the Court's pretrial summary judgment rulings. *See* Reply at 11 (citing *Wit v. United Behav. Health*, 2020 WL 6469764, at *13 (N.D. Cal. Nov. 3, 2020) ("MSJ Order"). But even there, the purported harm to Plaintiffs' rights "to have their claims adjudicated under Guidelines that are consistent with the terms of their plans," *see id.*, is the same harm on which the denial of benefits claim was based, and which Plaintiffs failed to prove. *Wit III*, 79 F.4th at 1085–86.; *see also* MSJ Order, 2020 WL 6469764, at *12–*13 (simultaneously analyzing "Causation of Injury" for "both the Breach of Fiduciary Duty Claim and the Arbitrary and Capricious Denial of Benefits Claim," and holding that both claims sought relief for the exact same "primary harm" (emphasis added)). Plaintiffs' claims have always relied on the same GASC-based harm.

Plaintiffs' new theory of harm—the purported denial of their "rights to a plan administrator that acts solely in the interests of plan participants in developing the Guidelines that are used to adjudicate their claims," Reply at 11, is equally indistinguishable from the theory of harm that Plaintiffs failed to prove. If UBH had acted disloyally and in its own financial self-interest to adopt

---

[3] Plaintiffs' accusation that UBH "downplay[ed]" and "distort[ed]" the Court's FFCL is patently false. Reply at 10–11. UBH repeatedly quoted the Court's description of Plaintiffs' injury, including the portion that Plaintiffs focus on: "Guidelines that were developed solely for [Plaintiffs'] benefit." *See* UBH Opening Br. at 2, 13. In fact, UBH's brief contains a block quote of paragraph 204 *in its entirety*. *See id.* at 6.

Plaintiffs' preferred sets of GASC criteria (*i.e.*, ASAM, LOCUS, CALOCUS), would Plaintiffs or class members have suffered any cognizable injury? Or if UBH had initially *approved* Plaintiffs' claims for benefits under those allegedly self-interested guidelines? Of course not. As UBH argued in its opening brief, UBH Opening Br. at 14, that is why the *defining criterion* for inclusion in the Guidelines classes, which covered both the denial of benefits and the fiduciary duty claim, was whether a class member's claim for benefits "was denied by UBH . . . based upon" the Guidelines, FFCL ¶ 13, regardless of the claim asserted. The Reply is silent on this point because it is dispositive. The touchstone for both of Plaintiffs' claims is a Guidelines-based denial of benefits.[4]

Plaintiffs' last resort to try to differentiate the harm underlying their breach of fiduciary duty claim from the denial of benefits claim is to turn again to *Wit III*'s discussion of Article III standing. *See* Reply at 11–12. UBH addressed this issue in its opening brief and the Reply offers little in the way of a rebuttal. As previously explained, *Wit III*'s discussion of injury for standing purposes is not interchangeable with injury as an element of Plaintiffs' substantive claims. *See* UBH Opening Br. at 13–14. It is settled law that injury as an Article III standing requirement is "not coextensive" with the injury a plaintiff may need to prove to establish their claim. *See City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1039 (9th Cir. 2021) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014)). That is why, as *Wit III* itself demonstrates, what may serve as an injury for Article III purposes may not serve as the basis for a successful merits claim. *See Wit III*, 79 F.4th at 1082–86 (holding that mere risk of harm arising from UBH's use of overly-restrictive Guidelines was not sufficient to sustain a denial of benefits claim despite concluding that risk of harm was sufficient injury for standing purposes). Plaintiffs' reliance on *Wit III*'s standing analysis merely underscores that the Ninth Circuit knocked down every theory of Plaintiffs' case. All four of the Ninth Circuit's decisions exposed the flaws in Plaintiffs' self-proclaimed "novel" ERISA challenge. It is now conclusive that Plaintiffs' theories support no relief.

---

[4] The Reply also ignores UBH's argument that Plaintiffs pursued identical remedies (other than reprocessing) to redress their purported injuries under both claims. UBH Opening Br. at 14.

### C. Plaintiffs' Fiduciary Duty Claim Is Contrary To ERISA, Which Requires A Showing Of Harm And Prohibits Duplicative Relief.

No matter how Plaintiffs frame their fiduciary duty claim, it is incompatible with ERISA. Their newly emphasized theory of fiduciary breach—based on consideration of finances in creating the Guidelines—lacks a resulting harm to satisfy all elements of the claim. Tellingly, Plaintiffs do not cite a single case holding that fiduciary breach is, by itself, sufficient to support a claim under ERISA. Breach (e.g., disloyalty) and harm (injuries to plan members or their benefits that *flow from* the disloyal act) are *independent elements* of a claim for fiduciary breach under ERISA, and both are required to prove the claim. *See* FFCL ¶ 196; s*ee also In re McKesson HBOC, Inc. ERISA Litigation*, 391 F. Supp. 2d 812, 835 (N.D. Cal. 2005) (dismissing ERISA fiduciary breach claim that sought "redress for a harm that never materialized").

Plaintiffs have always argued that the "harm" for their fiduciary duty claim was not UBH's financial considerations themselves, but rather the "harm[]" of having "their claims . . . subjected to UBH's restrictive guidelines making it less likely that UBH will determine that their claims are covered." Am. Compl. ¶ 201 ("Plaintiffs and the members of the Class have been harmed by UBH's breaches of fiduciary duty because their claims have been subjected to UBH's restrictive guidelines making it less likely that UBH will determine that their claims are covered.") That is why this Court repeatedly held that harm only arises, if ever, when the Guidelines "are used to adjudicate [Plaintiffs'] claims." MSJ Order, 2020 WL 6469764, at *13; *see also* Partial Decert. Order, ECF No. 490, at 14 ("The theory of Plaintiffs' case is that . . . the ERISA violation *occurred when benefits were initially denied* . . . because the class members were deprived of the right to have a faithful fiduciary adjudicate their claims using proper Guidelines") (emphasis added).

This brings Plaintiffs right back to relying on a theory of harm predicated on use of the Guidelines in making coverage determinations. But then, Plaintiffs' claim for breach of fiduciary duty is duplicative of their claim for denial of benefits, which the Ninth Circuit reversed in full. Indeed, the fiduciary duty claim was principally "brought pursuant to 29 U.S.C. § 1132(a)(1)(B)," Am. Compl., ECF No. 32, ¶ 195; FFCL ¶ 16, which "provides a remedy for breaches of fiduciary duty with respect to *the interpretation of plan documents and the payment of claims*[.]" *Varity*

*Corp. v. Howe*, 516 U.S. 489, 512 (1996) (emphasis added). And Plaintiffs based their fiduciary duty claim on the exact same "interpretation of plan documents and the payment of claims" as the denial of benefits claim that *Wit III* reversed. *See* Am. Compl., ¶ 198 ("UBH violated these [fiduciary] duties by promulgating the restrictive level of care and coverage determination guidelines").

Moreover, Plaintiffs never connected the specific instances of conflicted conduct by UBH to a provision of the Guidelines that would have been different absent the conflict. *See* UBH Opening Br. at 21 n.7. That means of course that they also never showed that UBH's financial incentives caused an improper modification of the Guidelines that then led to the denial of a member's claim. *Id.* Plaintiffs do not dispute this point because they cannot do so.

Plaintiffs' fallback fiduciary duty claim under § 1132(a)(3) provides no alternative path for relief. Under *Varity* and its progeny, "equitable relief under § 1132(a)(3) is not available if § 1132(a)(1)(B) provides an adequate remedy." *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 959 (9th Cir. 2016) (citing *Varity*, 516 U.S. at 512). Plaintiffs have never argued that their § 1132(a)(3) claim was substantively different from their plan-based fiduciary duty claim under § 1132(a)(1)(B). *See* Pls. Post-Trial Br., ECF No. 392, at 73–75 (Plaintiffs describing their fiduciary duty claim and making no distinction between § (a)(1)(B) and § (a)(3)). To the contrary, Plaintiffs' § (a)(3) fiduciary duty claim was only brought in the alternative to their (a)(1)(B) claim, and only "to the extent the injunctive relief Plaintiffs seek is unavailable under" § 1132(a)(1)(B). FFCL ¶ 16. That is why Plaintiffs sought, and the Court ordered, identical declaratory and injunctive relief on both the denial of benefits and fiduciary duty claims, under both § 1132(a)(1)(B) and § 1132(a)(3). *See* Pls. Opening Remedies Br., ECF No. 426, at 5–6, 21–31; Remedies Order, ECF No. 491, at 5–10, 58–83; Final Judgment, ECF No. 531, at 1–6, 11–14.

ERISA prohibits a duplicative claim under § (a)(3) "when a more specific section of the statute, such as § 1132(a)(1)(B), provides a remedy similar to what the plaintiff seeks under the equitable catchall provision[.]" *Id.* at 961; *see also Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1229 (9th Cir. 2020) ("a claimant may not bring a claim for denial of benefits under § 1132(a)(3)

when a claim under § 1132(a)(1)(B) will afford adequate relief"). Plaintiffs had available relief under § 1132(a)(1)(B) for their duplicative claims for denial of benefits and breach of fiduciary duty. They just failed to prove the elements to be awarded that relief. Their failure of proof is conclusive as to their claim under § 1132(a)(3) as well. *See Katz v. Comprehensive Plan of Grp. Ins.*, 197 F.3d 1084, 1089 (11th Cir. 1999) ("availability of an adequate remedy under the law for *Varity* purposes does not mean, nor does it guarantee, an adjudication in one's favor."); *see also Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th Cir. 2015) (en banc) (the *Varity* rule operates "irrespective of the degree of success obtained on a claim for recovery of benefits under § [1132](a)(1)(B)"); *Tolson v. Avondale Indus.*, 141 F.3d 604, 610 (5th Cir. 1998) (same). Plaintiffs' claim for breach of fiduciary duty is incompatible with *Wit III*, *Wit IV*, and ERISA itself. The Court should enter judgment for UBH on the entire claim.

## II. Plaintiffs Ask The Court To Defy The Ninth Circuit's Mandate.

### A. Plaintiffs Ask The Court To Defy The Ninth Circuit's Mandate By Concluding That No Part Of The Fiduciary Duty Claim Was Reversed.

Plaintiffs concede, as they must, that the fiduciary duty claim is reversed to the extent that it is "intertwined" with an erroneous interpretation of the plans. *See* Reply at 3. And Plaintiffs do not seriously dispute that the fiduciary duty claim is "intertwined" with this Court's interpretation of the Plans, because it plainly is. Thus, to avoid the necessary dismissal of their fiduciary duty claim, Plaintiffs are forced to argue that the Court's interpretation of the Plans was never error in the first place. Reply at 3; *see also id.* at 4 n.2. That argument is simply incompatible with *Wit IV*.

The Ninth Circuit was crystal clear in *Wit IV*: "requiring 'coverage for all care consistent with GASC' was a misinterpretation of the Plans" and *that error* "definitively resolved the denial of benefits claim" in a judgment for Defendants. 2024 WL 4036574, at *2. If, as Plaintiffs argue, the Ninth Circuit "did not hold that this Court misinterpreted the *GASC precondition*" (Reply at 4 n.2), *Wit IV* makes no sense and Plaintiffs' denial of benefits claim would still survive. There is simply no way to square the Ninth Circuit's *complete reversal* of the denial of benefits with their current arguments about the fiduciary duty claim.

The Ninth Circuit made equally clear that judgment on the breach of fiduciary duty claim "*also relied heavily* on its conclusion that the Guidelines impermissibly deviated from GASC." *Wit III*, 79 F.4th at 1088 n.7 (emphasis added). Then, in contrast with its conclusions regarding the Guideline's deviation from GASC, the Ninth Circuit explained that findings concerning UBH's "financial incentives" or conflicted interests *might* survive, but only "to the extent they were not intertwined with an incorrect interpretation of the Plans." *Id.*; *see also* UBH Opening Br. at 11–12.

Rather than give meaning to each part of *Wit III*, Plaintiffs only obliquely confront footnote 7 in their Reply, focusing almost exclusively on the word "intertwined." *See* Reply at 1–3. They argue that whether the fiduciary duty claim is "intertwined" with a *misinterpretation* of the plans *at all* is an open question and that the Court may conclude that *no* aspect of the fiduciary duty claim was "'intertwined' with any erroneous plan interpretation." Reply 1–2, 19. Plaintiffs thus attempt to turn the Ninth Circuit's mandate on its head, urging this Court to undertake an unbounded "re-evaluat[ion] [of] the facts" supporting the breach of fiduciary duty claim rather than determine whether, based on the existing record, the topics identified in footnote 7 are capable of sustaining the breach of fiduciary duty claim. Reply at 1–2. Plaintiffs offer no support for this position from the language of *Wit III* because there is none.

If there was ever any ambiguity regarding the proper interpretation of *Wit III*, the Ninth Circuit removed it in its subsequent mandamus order. *Wit IV* is explicit that *Wit III* "reversed the district court's judgment on" the breach of fiduciary duty claim to the same extent as the denial of benefits claims, and "remanded for the district court to identify any surviving aspect of" the fiduciary duty claim." *Wit IV*, 2024 WL 4036574, at *2. Only "*if* some part of [the breach of fiduciary duty] claim survive[d]" *Wit III*'s reasoning, would the Court then need to determine whether that surviving claim was subject to administrative exhaustion requirements. *Id.* (emphasis added). Thus, the scope and purpose of the remand is clear: the breach of fiduciary duty claim is reversed, but this Court must "identify" *if* there are "any surviving aspects" of the claim that were

not "intertwined" with this Court's misinterpretation of the plans that prompted reversal of the denial of benefits claim. *Id.*

Plaintiffs' response to *Wit IV*'s explanation of the mandate is to essentially ignore it. Based on nothing except their own say-so, Plaintiffs declare that the "required analysis" on remand "is not limited to merely re-reading the Court's existing legal conclusions to 'identify' surviving aspects of the claim." Reply at 2. But that is precisely what the Ninth Circuit instructed the Court to do. *See Wit IV*, 2024 WL 4036574, at *2. Plaintiffs refuse to confront the task the Ninth Circuit actually ordered, and rather than identify which portions of the breach of fiduciary duty claim survive and which do not, they insist the entire claim can remain undisturbed.

Equally baseless is Plaintiffs' suggestion that this Court may conclude that the fiduciary duty claim is not reversed at all, simply because the Ninth Circuit remanded the claim. Reply at 2. Invoking language from cases such as *Hall v. Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012), Plaintiffs insist that the Court is "free to decide" the "extent to which the Plaintiffs' breach of fiduciary duty claim was 'intertwined' with an improper interpretation of the plans." Reply at 2. But as even *Hall* states, a court on remand is only "free to decide *anything not foreclosed by the mandate.*" 697 F.3d at 1067 (emphasis added). *Wit III*'s reversal of the breach of fiduciary duty claim precludes the Court from changing its rulings to skirt the Ninth Circuit's decision.

**B.     Plaintiffs Ask The Court To Defy The Ninth Circuit's Mandate By Re-Writing The Record.**

Plaintiffs cannot identify any part of the breach of fiduciary duty claim that survives *Wit III* under the current record, so Plaintiffs seek to have the record re-written. Under Plaintiffs' view, the Court is free on remand to amend the record as it sees fit by "re-evaluat[ing]" existing facts, "clarify[ing]" prior rulings, and even finding entirely new "supplemental" facts. Here too, Plaintiffs invite the Court to disregard the Ninth Circuit's mandate.

The Ninth Circuit remanded on certain limited issues which can be addressed on the current record and gave express instructions on what this Court is to do now: "identify any surviving aspect of the [breach of fiduciary duty claim]." *Wit IV*, 2024 WL 4036574, at *2. Proceedings on remand must conform to that mandate. *Cf. Twentieth Cent. Fox Film Corp. v. Ent. Distrib.*, 429 F.3d 869,

11

883 (9th Cir. 2005), a*brogated on other grounds by Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873 (2019) (trial court correctly "restrict[ed] the scope of" proceedings on remand" because there was "nothing in [the Ninth Circuit's] prior decision that indicates that [it] issued an open remand").

Plaintiffs offer no support for their argument that the Court is free on remand to modify the existing record with "additional factual findings." *See* Reply at 9–10. After barely addressing the matter in their opening brief, Plaintiffs' belated arguments in favor of their proposed new factual findings rely on inapposite precedents discussing remand following *interlocutory appeals* of *pretrial* rulings, and addressing district court decisions where no new factual findings were made. *See id.* Plaintiffs offer no persuasive authority supporting their view that the Court may now reopen and modify the record years after trial, entry of judgment, and extensive appellate proceedings. Neither the case law nor the Ninth Circuit mandate permits this re-do of the case. *See Firth v. United States*, 554 F.2d 990, 993-34 (9th Cir. 1977) (holding that a court on remand is not permitted to "embellish[] or clarify[]" facts when the mandate does not allow it). Plaintiffs' attempt to distinguish *Firth*, Reply at 9 n.9, is unpersuasive given that *Wit III* remanded only for this Court to assess the impact of the errors it identified on the fiduciary duty claim. Nothing in *Wit III* suggests that assessment requires clarifying existing facts or finding new ones.

Finally, Plaintiffs urge the Court to disregard UBH's arguments under Federal Rule of Civil Procedure 52(b) because the Court rejected a similar argument in its Scope of Remand Order. Reply at 9 n.8 (citing ECF No. 625). But the Ninth Circuit concluded that the Court's reasoning was flawed and disallowed further proceedings on the denial of benefits claim. Plaintiffs also fail to grapple with authority holding that new factual findings are not permitted at this stage of the proceedings given the remand's limited scope. *See* UBH Opening Br. at 24 (citing *East Jefferson Coal. for Leadership & Dev. v. Parish of Jefferson*, 926 F.2d 487, 491–92 (5th Cir. 1991)). The Court should decline Plaintiffs' invitation to once again run afoul of the Ninth Circuit's mandate.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.    Plaintiffs Failed To Prove That Each Class Member Satisfied Administrative Exhaustion Requirements.

### A.    The Contractual Exhaustion Requirements Must Be Enforced.

Plaintiffs do not dispute that a significant number of class members belonged to plans that expressly required exhaustion of administrative remedies before bringing a civil action against UBH. According to Plaintiffs, this does not matter. They claim there is no difference between the administrative exhaustion requirements arising from judicial construction of ERISA (i.e. the "prudential" exhaustion), and exhaustion requirements arising from contractual terms set forth in an ERISA plan. In essence, Plaintiffs assert that express contractual provisions are meaningless, and so they need not be examined or considered. *See* Reply at 12–14. This position is baseless.

It is not accurate that "*all* ERISA exhaustion is based on the enforcement of plan provisions requiring exhaustion as a matter of contract." Reply at 12–13. Because ERISA "requires . . . plans to provide administrative remedies for persons whose claims for benefits have been denied," *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980), plans generally give members the *right* to file an administrative appeal. But not all plans expressly *require* exhaustion of appeals as a *precondition of suing*. For these plans, courts import, as a matter of federal common law, a "prudential exhaustion requirement." *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008). Borrowing from labor law, federal courts concluded that "where administrative remedies are available they must usually be exhausted" and require utilization of available administrative remedies before bringing suit under ERISA. *Amato*, 618 F.2d at 567.

This *prudential* exhaustion requirement reduces frivolous lawsuits and enables "plan administrators to apply their expertise and exercise their discretion to manage the plan's funds, correct errors, make considered interpretations of plan provisions, and assemble a factual record that will assist the court reviewing the administrators' actions." *Stephens v. Pension Ben. Guar. Corp.*, 755 F.3d 959, 965 (D.C. Cir. 2014) (quoting *Comms. Workers of Am. v. AT & T*, 40 F.3d 426, 432 (D.C. Cir. 1994); *see also Amato*, 618 F.2d at 568 (explaining that plan trustees' prior consideration of an issue "may well assist the courts when they are called upon to resolve the controversies"). Because prudential exhaustion is a "judge-made" doctrine developed to promote

13

public policy interests, judges may decline to apply the doctrine in appropriate circumstances. *Vaught*, 546 F.3d at 626-27 (recognizing exceptions "to our prudential exhaustion requirement").

In contrast, *contractual* exhaustion requirements arise from the express terms of an ERISA benefit plan and are distinct from, and in addition to, internal review procedures that are available under the plan. Contractual exhaustion provisions establish the extent to which such procedures must be exhausted before suit may be filed against the plan administrator. *See In re Household Int'l Tax Reduction Plan*, 441 F.3d 500, 502 (7th Cir. 2006) (distinguishing prudential exhaustion requirement from "provision[s] in the plan document itself requiring exhaustion of internal remedies as a precondition to any right of relief").[5] These provisions are part of the contract between the plan member and the plan and must be enforced according to their terms. *See Conley v. Pitney Bowes*, 34 F.3d 714, 716 (8th Cir. 1994) (describing notice and exhaustion provisions in benefit plan as "promises that were exchanged as part of a complex agreement"); *Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan*, 111 F.3d 67, 70 (8th Cir. 1997) (explaining that "the need to exhaust is a question of contract interpretation" but that some circumstances "will trigger the judicially imposed duty to exhaust").[6] Thus, the prudential exhaustion requirement and contractual, plan-based exhaustion requirements have distinct sources and serve distinct purposes.

The cases espousing the prudential exhaustion doctrine nowhere state that the doctrine displaces or supersedes an express exhaustion requirement written into a benefits plan as a term of the contract between the plan and the plan participant. To do so would overlook the distinct nature and purpose of the two types of exhaustion requirements. More significantly, it would also defy

---

[5] For example, many members of the Sample Class in this case belonged to plans that set forth detailed "Claims Procedures" and then specify that the plan member "cannot bring any legal action against [the plan sponsor] or the Claims administrator for any other reason unless [the member] first complete[s] all the steps in the appeal process described in this section." *See* Trial Ex. 1583-0085 (Summary Plan Description for Sample Class Member 12605).

[6] Plaintiffs highlight the Eighth Circuit's statement in *Conley* that "[w]e have required exhaustion in ERISA cases only when it was required by the particular plan involved." 34 F.3d at 716. Three years later, the Eight Circuit in *Kinkead* rejected this sweeping proposition. *See Kinkead*, 111 F.3d at 70 n.3. *Kinkead* explained that "the contractual duty to exhaust was conceded in *Conley*" and the court had considered only whether to impose the duty to exhaust on a claimant who had no knowledge of the plan's claim review procedures. *See id*.

the Supreme Court's admonition that "[t]he plan, in short, is at the center of ERISA" and therefore contractual provisions "ordinarily should be enforced as written." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013)[7]; *see also Cinelli v. Security Pac. Corp.*, 61 F.3d 1437, 1444 (9th Cir. 1995) (noting "ERISA's strong preference for the written plan").

None of Plaintiffs' cases support tossing aside the Plans' contractual terms. For example, *Yates v. Symetra Life Ins. Co.*, 60 F.4th 1109, 1113 (8th Cir. 2023), involved a plan that provided *no* internal appeals procedure, let alone a provision *mandating* administrative exhaustion. *Vaught* also is unhelpful for Plaintiffs because in that case the Ninth Circuit was explicit that its analysis was based on the "prudential exhaustion requirement," which the Court acknowledged was "judge-made," not contractual.[8] *Vaught*, 546 F.3d at 626 – 27 (citing *Amato*, 618 F.2d at 568 and *Diaz v. United Agric. Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995)). Indeed, like *In re Household*, *Vaught* expressly contemplated that "the analysis" of exhaustion "would be different" if a plan mandates pre-suit exhaustion "as a matter of contract." *Id.* at 630, 632 n.4. *Vaught* thus supports UBH's position because it plainly recognizes that contractual exhaustion is distinct from, and can be more demanding than, prudential exhaustion.

---

[7] Plaintiffs argue that *Heimeshoff* supports their position that "benefits claims based on contracts can be conditioned on exhaustion of plan remedies, but statutory claims cannot." Reply at 14. It does not. The question in *Heimeshoff* was whether a contractual limitations period in the plaintiff's ERISA plan was enforceable. *See Heimeshoff*, 571 U.S. at 102. While the Supreme Court recognized that a plan's limitations period may be unenforceable if it is "unreasonably short" (*i.e.*, unconscionable) or if a "controlling statute" bars enforcement, it held that neither condition was present. *Id.* at 109. In so holding, the Supreme Court repeatedly affirmed the importance of enforcing the terms of an ERISA plan as written. *See id.* at 108. *Heimeshoff* thus stands for the principle that express contract provisions in ERISA plans must be enforced unless it is shown that the provision is legally unenforceable. Plaintiffs have never argued in this case, let alone established, that the exhaustion provisions in the class members' plans are unenforceable.

[8] Although the plan in *Vaught* arguably included a contractual exhaustion requirement, the Ninth Circuit did not reach the issue of contractual exhaustion, apparently because the parties did not raise it. *United States v. Pepe*, 895 F.3d 679, 688 (9th Cir. 2018) ("cases are not precedential for propositions not considered"). In any event, in that case the Ninth Circuit held that the plaintiff fully exhausted, so the source of the exhaustion requirement would not have changed the Ninth Circuit's analysis. *See, e.g., Vaught*, 546 F.3d at 629 n.3 (declining to reach "whether . . . an exception to *Amato*'s prudential exhaustion requirement" applied).

While Plaintiffs also cite *Spinedex Physical Therapy USA Inc. United Healthcare of Ariz., Inc.*, 770 F.3d 1282 (2014), that case also reinforces UBH's position. *Spinedex* holds that ERISA plaintiffs need not exhaust administrative remedies *if* the plans "contain language which could reasonably be read as making optional the administrative appeals process." *Id.* at 1299. Thus, *Spinedex* makes clear that the written language of the plan is paramount in determining whether an ERISA plaintiff must exhaust administrative remedies. Nothing about *Spinedex*'s fidelity to the language of the plans is inconsistent with a distinct prudential exhaustion requirement. If the terms of a plan say exhaustion is required, those provisions must be enforced. If the plan says or can be "reasonably read" to say exhaustion is optional, then that must also be given effect and exhaustion will not be required. And if the plan is silent as to exhaustion, then the federal court has the discretion to require a plaintiff to exhaust administrative remedies as a matter of public policy.[9]

The two exceptions to this rule set forth in *Spinedex* do not change its force in this case. First, *Spinedex* observed that no exhaustion is required when the plan fails "to establish or follow claims procedures consistent with" ERISA regulations. *See* 770 F.3d at 1299. This is consistent with the principle stated in *Heimeshoff* that plan terms must be enforced unless they are legally unenforceable. *See supra* footnote 17. Plaintiffs have not argued or proved for any class member that the internal claims procedures under those plans violated ERISA regulations, and so that exception does not apply. Second, in a separate section of *Spinedex* relating to a specific plaintiff, the court declined to require exhaustion for what it deemed to be a "statutory claim." But in addressing that exception, the court did not discuss whether any contractual exhaustion provision

---

[9] Plaintiffs' other cases, Reply at 13, also do not address the distinction between the prudential exhaustion requirement and plan-imposed exhaustion requirements. *See Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1052 (9th Cir. 2020) (single sentence stating exhaustion is not required for breach of fiduciary duty claims with no discussion of plan terms); *Horan v. Kaiser Steel Ret. Plan,* 947 F.2d 1412, 1416 n. 1 (9th Cir. 1991), *overruled on other grounds as recognized by Pac. Shores Hosp. v. United Behav. Health,* 764 F.3d 1030, 1041 (9th Cir. 2014) (short discussion of exhaustion without reference to plan terms); *Fujikawa v. Gushiken,* 823 F.2d 1341, 1345 (9th Cir. 1987) (discussing trust agreement appeal procedures but not whether exhaustion was expressly required); *Graphic Commc'ns Union, Dist. Council No. 2, AFL–CIO v. GCIU–Employer Ret. Ben. Plan,* 917 F.2d 1184, 1187 (9th Cir. 1990) (discussing whether to impose prudential requirement for statutory claim); *Amaro v. Cont'l Can Co.,* 724 F.2d 747, 751 (9th Cir. 1984) (same).

applied to that plaintiff at all. *See Spinedex*, 770 F.3d at 1294. Here, UBH offered undisputed evidence of numerous contractual exhaustion requirements. *See* UBH Opening Br. at 28.

In sum, Plaintiffs fail to show that whatever flexibility federal courts may have to waive the prudential exhaustion requirements extends to allow courts to simply disregard express plan language, including provisions requiring exhaustion of administrative remedies as a mandatory precondition of suit. The contractual exhaustion requirements in the class members' plans must be enforced as written, and Plaintiffs failed to prove that they were satisfied. This is a separate basis to issue judgment to UBH on Plaintiffs' breach of fiduciary duty claim.

**B.    Plaintiffs' Breach Of Fiduciary Duty Claim Is A Plan-Based Claim Subject To Prudential Exhaustion Requirements As Well.**

As discussed above and in UBH's opening brief, Plaintiffs' breach of fiduciary duty claim is premised upon the same theory of harm, same conduct related to interpretation of the plans, and even the same class definition as the denial of benefits claim. *See* UBH Opening Br. at 25–27.[10] Plaintiffs fail to grapple with UBH's showing. They do not identify any portion of their fiduciary duty claim that is not intertwined with their failed denial of benefits claim. There is therefore no basis to treat the fiduciary duty claim as anything other than a plan-based claim for benefits, subject to the same prudential administrative exhaustion requirement as their denial of benefits claim.

Plaintiffs' other arguments contesting prudential exhaustion also fail. Plaintiffs again rely on *Spinedex*, arguing that no prudential exhaustion is required for statutory claims for "willful and systematic" acts. Reply at 15. But a "systematic" denial of claims is precisely what the Ninth Circuit in this case has already concluded Plaintiffs failed to prove. *See Wit III*, 79 F.4th at 1086.

Plaintiffs also attempt to address *Harrow v. Prudential Ins. Co. of Am.*, Reply at 15, but disregard that case's crucial holding that a "claim for breach of fiduciary duty is 'actually a claim

---

[10] Plaintiffs again misdirect when they argue that UBH failed to address the Court's conclusion that UBH breached its duties of loyalty and care. *See* Reply at 14–15. Those conclusions were based on the Court's finding that UBH adopted unreasonable Guidelines that did not reflect GASC. *See* FFCL ¶ 203. UBH addressed those claims repeatedly in its opening brief where it argued that Plaintiffs' *entire* fiduciary duty claim is "inextricably intertwined with Plaintiffs' denial of benefits claim based on the same conduct and theory of harm." *See id.* at 26-27.

for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA.'" 279 F.3d 244, 253-54 (3d Cir. 2002). Plaintiffs' breach of fiduciary duty claim, which was premised upon the adoption of improper Guidelines that were inconsistent with the Plans' GASC term, *see* FFCL ¶ 203, required an interpretation of the Plans—not ERISA. Plaintiffs cannot argue otherwise.

Finally, Plaintiffs acknowledge that under *Smith v. Sydnor*, 184 F.3d 356, 363 (4th Cir. 1999), "exhaustion is required where the basis of the claim is a plan administrator's denial of benefits or an action by the defendant ***closely*** related to the plaintiff's claim for benefits, such as withholding information regarding the status of benefits." Reply at 15 (Plaintiffs' emphasis). Plaintiffs are thus forced to argue that their fiduciary duty claim's relation to the denial of benefits claim is not sufficiently "close." *Id.* This is not an argument Plaintiffs can win, for all the reasons detailed in UBH's opening brief and this sur-reply regarding the indistinguishable theories of liability and harm between Plaintiffs' claims. *See, e.g.*, UBH Opening Br. at 12–14.

## C.    Plaintiffs' Failure To Exhaust Is Not Excused.

Plaintiffs argue for the first time in their Reply that if the Court determines there is a surviving fiduciary duty claim, and that claim is subject to administrative exhaustion requirements, then the failure of various unnamed class members to satisfy those requirements should be excused. Reply at 16.[11] Plaintiffs offer no valid excuse for the undisputed failure of class members to exhaust all available administrative remedies, despite being contractually bound to do so.

First, Plaintiffs cite no Ninth Circuit law for the proposition that the named Plaintiffs' exhaustion of administrative requirements excuses the failure of unnamed class members to exhaust *their* administrative remedies. *See* Reply at 16–17. Plaintiffs' district court and out-of-

---

[11] Plaintiffs' self-serving statement that they did not agree to brief the issue of compliance with any applicable exhaustion requirements is refuted by the record. Plaintiffs never, until now, suggested additional briefing on satisfaction of applicable exhaustion requirements might be necessary. The parties agreed on February 6, 2025 that there were two questions "this Court must **now** decide," the second of which was "whether any surviving portion of the breach of fiduciary duty claim is subject to administrative exhaustion (and if so, whether such requirements have been satisfied)." ECF No. 654 at 1 (emphasis added). Neither party proposed separate briefing on satisfaction of the exhaustion requirement. *See id.*; *see also* ECF No. 657 (same).

circuit precedents do not help their case because they are inapposite, based on dubious reasoning, or both. For example, in *Leon v. Standard Ins. Co.*, 2016 WL 768908, at *4 (C.D. Cal. Jan. 28, 2016), the court made clear that it was applying its discretion related to the "judicially-crafted" exhaustion requirement, which as explained above does not extend to cases involving contractually-mandated exhaustion requirements. The Seventh Circuit's decision in *In re Household* likewise addressed only the prudential exhaustion requirement—it declared that it "need not consider what the effect would be of a provision in the plan document itself requiring exhaustion of internal remedies as a precondition to any right of relief." 441 F.3d at 502.

*Leon* also explained that the named plaintiff's exhaustion was sufficient because it "put[] the defendant on notice of the absent class members' claims and thus fulfill[ed] the function of the internal grievance procedure." *See id.* (citing *In re Household*, 441 F.3d at 502). This reasoning, which is adopted by other cases Plaintiffs cite, could only be sound if the sole purpose of requiring exhaustion were to give "notice" to the plan. But that is plainly wrong. It is well-recognized that internal appeal procedures are valuable because, among other reasons, they are less costly than civil actions and the plan administrator may be better situated to resolve a dispute arising under the plan. *Stephens*, 755 F.3d at 965. *Leon*'s reasoning also fails to justify what would be a violation of the Rules Enabling Act, 28 U.S.C. § 2072(b), by expanding the right to bring a civil action to class members who did not comply with plan-mandated exhaustion provisions.[12]

Second, Plaintiffs argue that the Court's prior finding of futility is definitive and resolves the issue of whether unnamed class members were required to exhaust. Reply at 17–18. This is incorrect. For one, Plaintiffs' assertion that the Court's futility finding was never challenged on appeal is false. UBH squarely appealed that finding, *see Wit v. United Behav. Health*, No. 20-17363 (9th Cir. Mar. 15, 2021), Dkt. No. 25, and the Ninth Circuit specifically addressed this issue in *Wit II* when it held that neither futility nor any other exception to prudential exhaustion applied given the uncontested fact that "some beneficiaries successfully appealed the denial of their benefit claims," *see Wit v. United Behav. Health*, 58 F.4th 1080, 1098 (9th Cir. 2023). That decision was

---

[12] UBH raised this point in its opening brief. *See* UBH Opening Br. at 30. The Reply ignores it.

superseded by *Wit III*, but nothing in *Wit III* directly or indirectly repudiates that prior conclusion. If anything, *Wit III*'s conclusion that mere use of the Guidelines did not necessarily result in an improper claim denial in all cases only further undermined the Court's premise that any attempt to utilize administrative remedies would have been futile.

Third, futility is a judicially-created doctrine that can apply only to cases involving the prudential exhaustion requirement, rather than plan-mandated ones. *Noren v. Jefferson Pilot Fin. Ins. Co.*, 378 F. App'x 696, 698 (9th Cir. 2010) (futility is an exception to "the prudential exhaustion doctrine"). It is undisputed that unnamed class members belonged to plans requiring administrative exhaustion, many of which required exhaustion before bringing "any legal action." *See* UBH Opening Br. at 28–29. Plaintiffs respond to this point by simply rehashing their argument that there is no distinction between the prudential exhaustion requirement and contractual exhaustion requirements. Reply at 18–19. As already demonstrated above, this argument fails.

## IV.    UBH Is Not Seeking An "Advisory Opinion" On Reprocessing.

The question remanded by the Ninth Circuit is whether any portion of the breach of fiduciary duty claim survives reversal. That question necessarily asks whether any reprocessing claim survives the appeal. The answer is plainly "no": the Ninth Circuit held that Plaintiffs sought, and were granted, reprocessing solely for their reversed denial of benefit claims, and the Court relied on that holding in delimiting the scope of UBH's appeal. Recognizing that undisputed fact— so UBH can have finality on those claims—is not a request for an "advisory opinion" merely because Plaintiffs refuse to take a clear position on the matter and offer only a carefully-worded statement that they have not *yet* "requested that relief on remand." Reply at 19. The court should follow the Ninth Circuit's mandate to identify what portions of the fiduciary duty claim survive and hold that no aspect of the claim survives to support reprocessing relief.

## CONCLUSION

For the foregoing reasons, and consistent with the Ninth Circuit's mandate, judgment should be entered for UBH on both of Plaintiffs' claims for denial of benefits and breach of fiduciary duty, in their entirety.

Dated: June 6, 2025                                    CROWELL & MORING LLP

                                                       */s/ Jennifer S. Romano*
                                                       Jennifer S. Romano
                                                       Andrew Holmer
                                                       Nicholas Dowd

                                                       *Counsel for Defendant*
                                                       *United Behavioral Health*