UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID WIT, et al.,

        Plaintiffs,

    v.

UNITED BEHAVIORAL HEALTH,

        Defendant.

Case No.  14-cv-02346-JCS

**ORDER RE BREACH OF FIDUCIARY DUTY CLAIM**

Re: Dkt. No. 661

## I.      INTRODUCTION

On August 22, 2023, the Ninth Circuit issued an opinion affirming this Court's judgment in part, reversing it in part, and remanding for further proceedings. *Wit v. United Behav. Health*, 79 F.4th 1068 (9th Cir. 2023) ("*Wit III*"). After the parties submitted briefing on the scope of the remand, the Court issued an Order re Scope of Remand, dkt. no. 625. UBH filed a petition for writ of mandamus ("Petition") with the Ninth Circuit, asserting that the Court's order was not consistent with the Ninth Circuit's mandate on remand and the Ninth Circuit granted the Petition on September 4, 2024.  *United Behav. Health v. United States Dist. Ct. for N. Dist. of California*, No. 24-242, 2024 WL 4036574 (9th Cir. Sept. 4, 2024) ("*Wit IV*").

While *Wit IV* made clear that the Ninth Circuit's remand requires that this Court enter judgment in favor of UBH on Plaintiffs' denial of benefits claim, the parties continue to disagree about the scope of the remand as it relates to Plaintiffs' breach of fiduciary duty claim.   The parties agree, however, that there are "two 'threshold' questions this Court must now decide: (1) what portion of the Plaintiffs' breach of fiduciary duty claim, if any, remains in the case; and (2) whether any surviving portion of the breach of fiduciary duty claim is subject to administrative exhaustion (and if so, whether such requirements have been satisfied)." Dkt. no. 657.  The parties

United States District Court
Northern District of California

have submitted briefing and a hearing was held on July 30, 2025.  The Court's rulings are set forth

below.[1]

## II.    BACKGROUND[2]

### A.    *Wit III*

On August 22, 2023, the Ninth Circuit panel ("Panel") withdrew *Wit II* and issued a new

opinion, *Wit III*.  The Panel rejected UBH's Article III standing argument, finding with respect to

both of Plaintiffs' claims that Plaintiffs suffered concrete, particularized injuries-in-fact that were

"fairly traceable" to UBH's alleged misconduct. 79 F.4th at 1082-83.   In addressing the breach of

fiduciary duty claim, the Panel found that Plaintiffs' alleged injuries were concrete because

"UBH's alleged fiduciary violation presents a material risk of harm to Plaintiffs' interest in their

contractual benefits . . . ."  *Id.* at 1082.  The Panel continued:

> Under the fiduciary duties section of ERISA, a fiduciary has a duty to
> administer plans "solely in the interest of the participants and
> beneficiaries . . . with . . . care, skill, prudence, and diligence," and
> "in accordance with the documents and instruments governing the
> plan." 29 U.S.C. § 1104(a). Plaintiffs alleged that UBH administered
> their Plans in UBH's financial self interest and in conflict with Plan
> terms. This presents a material risk of harm to Plaintiffs' ERISA-
> defined right to have their contractual benefits interpreted and
> administered in their best interest and in accordance with their Plan
> terms. Their alleged harm further includes the risk that their claims
> will be administered under a set of Guidelines that impermissibly
> narrows the scope of their benefits and also includes the present harm
> of not knowing the scope of the coverage their Plans provide. The
> latter implicates Plaintiffs' ability to make informed decisions about
> the need to purchase alternative coverage and the ability to know
> whether they are paying for unnecessary coverage.

*Id.* at 1082-83.  The Panel found that "concrete" injury was alleged as to the denial of benefits

claim based on "the arbitrary and capricious adjudication of benefits claims—that presents a

material risk to their interest in fair adjudication of their entitlement to their contractual benefits."

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

[2] The Court refers the reader to its Order re Scope of Remand, dkt. no. 625, for a summary of *Wit I* (*Wit v. United Behav. Health,* No. 20-17363, 2022 WL 850647, at *1 (9th Cir. Mar. 22, 2022), opinion withdrawn on denial of reh'g, No. 20-17363, 2023 WL 446880 (9th Cir. Jan. 26, 2023)), and *Wit II* (*Wit v. United Behav. Health,* 58 F.4th 1080, 1089 (9th Cir.), opinion vacated and superseded on reh'g, 79 F.4th 1068 (9th Cir. 2023).  Familiarity with these Panel decisions is assumed herein.

*Id.* at 1083.

The Panel also found that the injury alleged was particularized as to both claims "because the Guidelines are applied to the contractual benefits afforded to each individual class member." *Id.* at 1083. The Panel noted, "[t]he fact that Plaintiffs did not ask the court to determine whether they were individually entitled to benefits does not change the fact that the Guidelines materially affected each Plaintiff." *Id.* Finally, the Panel found as to both claims that Plaintiffs' alleged injuries were "fairly traceable to UBH's conduct because their interest in the proper interpretation of their contractual benefits, inability to know the scope of coverage under their Plans, and denial of coverage requests, are all connected to UBH's alleged conduct of improperly developing Guidelines in its own self-interest and using those improper Guidelines in denying Plaintiffs' coverage requests." *Id.*

Addressing UBH's challenges to class certification, the Panel "deem[ed] any challenge to certification of the breach of fiduciary duty claim forfeited," leaving "class certification as to that claim intact." *Id.* at 1084 n.5. With regard to the denial of benefits claim, the Panel recognized that "remand may be an appropriate remedy in some cases where an administrator has applied an incorrect standard." *Id.* The panel held that such a remedy, however, is only appropriate "where a plaintiff has shown that his or her claim was denied based on the wrong standard *and* that he or she might be entitled to benefits under the proper standard." *Id.* (emphasis in original) (citing *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 458, 460–61 (9th Cir. 1996); *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 949–51 (9th Cir. 1993)). On the other hand, the panel explained, the Ninth Circuit has "never held that a plaintiff is entitled to reprocessing without a showing that application of the wrong standard could have prejudiced the claimant' and has "declined to remand for reevaluation where it would be a 'useless formality' because the administrator's alleged error did not prejudice the claimant or it was clear that the claimant was ineligible for benefits." *Id.* (citing *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095–96 (9th Cir. 1985); *Hancock v. Montgomery Ward Long Term Disability Tr.*, 787 F.2d 1302, 1308 (9th Cir. 1986)).

The panel found that in certifying the denial of benefits classes for reprocessing, this Court

1    failed to adhere to these standards by including class members Plaintiffs had not established might

2    be entitled to benefits, reasoning as follows:

3              Plaintiffs defined their proposed classes such that every class
        member's claim was denied, at least in part, based on UBH's
4        application of the Guidelines. The district court found that the Level
        of Care Guidelines represented UBH's interpretation of [Generally
5        Accepted Standards of Care ("GASC")]. It then made detailed
        findings illustrating that many provisions of the Level of Care
6        Guidelines were more restrictive than GASC. These factual findings
        are not challenged on appeal. But there are also many provisions of
7        the Level of Care Guidelines that Plaintiffs did not challenge and that
        the district court did not find to be overly restrictive. Plaintiffs do not
8        show that claimants who were denied coverage solely based on
        unchallenged provisions of these Guidelines were denied a full and
9        fair review, yet those claimants are included in the certified classes.

10             The flaw in class certification is even more apparent with regard to
        the Coverage Determination Guidelines. The district court found that
11       the Coverage Determination Guidelines incorporated the Level of
        Care Guidelines, but the incorporation of flawed Level of Care
12       Guidelines does not demonstrate that class members whose claims
        were denied under the Coverage Determination Guidelines were
13       necessarily denied a full and fair review. The Coverage Determination
        Guidelines included many unchallenged provisions, and some
14       Coverage Determination Guidelines incorporated the Level of Care
        Guidelines only "as support in a specific paragraph or paragraphs."
15       There is no indication that a claimant whose claim was denied under
        one of the many unchallenged provisions in the Coverage
16       Determination Guidelines failed to receive a full and fair review of
        his or her claim. Nonetheless, such claimants were included in the
17       classes.

18             Also fatal to Plaintiffs' argument is that the classes were defined as
        members whose claims were denied in part based on the Guidelines.
19       And the district court determined such classes were ascertainable
        based on a UBH database that could identify denials that merely
20       referenced the Guidelines. UBH pointed to at least some evidence that
        some class members' claims may have been denied for reasons
21       wholly independent of the Guidelines even though the Guidelines
        were referenced in their denial letters. For such class members,
22       remand for reevaluation may be a "useless formality," *Ellenburg*, 763
        F.2d at 1096, if UBH's alleged error in utilizing the Guidelines did
23       not prejudice them.

24    *Id.* at 1085-1086.  The Panel went on to hold that "[b]ecause the classes were not limited to those

25    claimants whose claims were denied based only on the challenged provisions of the Guidelines,

26    Rule 23 was applied in a way that enlarged or modified Plaintiffs' substantive rights in violation

27    of the Rules Enabling Act." *Id.* at 1086.

28             The Panel further held that the Court abused its discretion by concluding that the

1    reprocessing remedy was available to the classes the Court certified under § 1132(a)(3).  *Id.*  In

2    particular, the Panel found that "the type of relief that Plaintiffs seek is not available under §

3    1132(a)(3) where they declined to make the showing necessary to seek relief under §

4    1132(a)(1)(B)" and further, that the Court had not pointed to any "precedent showing how

5    reprocessing constitutes relief that was typically available in equity for infirm Guidelines unrelated

6    to Plaintiffs' claim for benefits."  *Id.*  The Panel concluded:

> The district court abused its discretion in certifying Plaintiffs' denial
> of benefits claims as class actions. Therefore, we reverse this part of
> the district court's class certification order.

9    *Id.*

10    Next, the panel addressed the merits, observing that "the same errors present in the district

11    court's denial of benefits class certification order also infected its merits and remedy

12    determinations" because "[r]ather than determining whether UBH denied Plaintiffs' claims under

13    a flawed provision of the Guidelines, the district court determined that remand was appropriate

14    anytime UBH referenced any portion of the Guidelines in denying the claims."  *Id.*

15    The Panel recognized that "UBH did not appeal the portions of the district court's

16    judgment finding the Guidelines were impermissibly inconsistent with state-mandated criteria"

17    and therefore, that "[t]his portion of the district court's decision . . . remains intact."  *Id.* Turning to

18    the standard of review, the Panel found that this Court was correct in finding an abuse of

19    discretion standard applied to UBH's interpretation of Plan terms, including its creation of

20    "interpretive tools, such as the Guidelines."  *Id.* at 1087.  It further found that this Court's findings

21    that UBH had both a structural conflict of interest (because it was both administrator and insurer

22    for some plans) and financial conflict of interest ("because it was incentivized to keep benefit

23    expenses down") were not clearly erroneous.  *Id.*

24    Nonetheless, it found that in applying the abuse of discretion standard, the Court erred "to

25    the extent [it] interpreted the Plans to require coverage for all care consistent with GASC."  *Id.* at

26    1088. The Panel reasoned as follows:

> The district court purported to apply an abuse of discretion standard
> tempered by high skepticism of UBH's interpretation given UBH's
> conflict of interest. UBH argues that even under a tempered abuse of

United States District Court
Northern District of California

United States District Court
Northern District of California

discretion standard, the district court improperly substituted its own interpretation of the Plans' terms by construing them to require coverage for all care consistent with GASC. Plaintiffs respond that the district court made no such mistake. Instead, they argue, the district court understood the Guidelines were specifically developed and employed to implement only the Plans' requirement that all care must be consistent with GASC in order to be covered.

To the extent the district court concluded that the challenged portions of the Guidelines represented UBH's implementation of the GASC requirement, we find no clear error. But to the extent the district court interpreted the Plans to require coverage for all care consistent with GASC, the court erred. Even assuming the conflicts of interest found by the district court warrant heavy skepticism against UBH's interpretation, UBH's interpretation that the Plans do not require coverage for all care consistent with GASC does not conflict with the plain language of the Plans. To the contrary, it gives effect to all the Plan provisions because the Plans exclude coverage for treatment inconsistent with GASC or otherwise condition treatment on consistency with GASC. [FN]  In short, while the Plans mandated that a treatment be consistent with GASC, they did not compel UBH to cover all treatment that was consistent with GASC.

The district court's statements on this issue are conflicting. In several places throughout its orders, the district court made clear its understanding that consistency with GASC was just one requirement for coverage, and that some plans excluded coverage for care that was consistent with GASC. But there are other places in the record where the district court stated the opposite. For instance, in its partial decertification order, the court described class members as those "covered by insurance plans that require coverage consistent with generally accepted standards of care but were denied coverage by UBH under [the] Guidelines." And the district court's final judgment directed that on remand, UBH must "re-evaluate only whether the proposed treatment at the requested level of care was consistent with generally accepted standards of care," even where the denial letter provided independent reasons for the denial of coverage. If the treatment was consistent with GASC, the court ordered UBH to pay the claims within 30 days.

*Id.* at 1088.  On these grounds, the Panel "reverse[d] the district court's judgment that UBH wrongfully denied benefits to the named Plaintiffs to the extent the district court concluded the Plans require coverage for all care consistent with GASC." *Id.*

The Panel's reasoning included two footnotes.  In a footnote 6, the Panel rejected UBH's argument that "it did not abuse its discretion because substantial evidence supports the challenged portions of UBH's Guidelines[,]" holding that "it was not error for the district court to rule that UBH abused its discretion because the challenged portions of the Guidelines did not *accurately* reflect GASC." *Id.*  at 1088 n. 6 (emphasis in original).  In footnote 7, the Panel made the

6

following observation about the breach of fiduciary duty claim:

> The district court's judgment on Plaintiffs' breach of fiduciary duty claim also relied heavily on its conclusion that the Guidelines impermissibly deviated from GASC. But this was not the only finding relevant to the district court's judgment on the breach of fiduciary duties claim. The district court also found, among other things, that financial incentives infected UBH's Guideline development process and that UBH developed the Guidelines with a view toward its own interests. Our decision does not disturb these findings to the extent they were not intertwined with an incorrect interpretation of the Plans.

*Id.* at 1088 n. 7.

The Panel went on to address UBH's argument that "the district court erred when it excused unnamed class members from demonstrating compliance with the Plans' administrative exhaustion requirement." *Id.* at 1088-89. The Panel recognized that "exhaustion is not required for statutory breach of fiduciary duty claims . . . [b]ut exhaustion *is* required if a plaintiff's statutory claim is a disguised claim for benefits." *Id.* (emphasis in original) (citations omitted). The Panel noted that the district court did not address UBH's argument that Plaintiffs' breach of fiduciary duty claim is a "disguised claim for benefits[,]" instead assuming without deciding that the exhaustion requirement applied and further holding that: 1) "the class members were excused from exhausting their claims because the named Plaintiffs exhausted their remedies, which put UBH on notice of the class members' facial challenges to the Guidelines, 'thus fulfilling the purposes of UBH's internal grievance procedure[;]' " and 2) "that 'in any event, exhaustion is not required because it would have been futile.' " *Id.* The Panel did not reach the merits of those holdings, instead remanding "for the district court to determine the threshold question of whether Plaintiffs' breach of fiduciary duty claim is a 'disguised claim for benefits,' subject to the exhaustion requirement" and, "[i]f the district court determines that the exhaustion requirement does apply, . . . [to]determine if that requirement was satisfied or otherwise excused in light of [the Panel's] resolution of the issues presented in this appeal." *Id.*

In the final section of the Panel's decision, it summarized its rulings as follows:

> In sum, Plaintiffs have Article III standing to bring their breach of fiduciary duty and improper denial of benefits claims pursuant to 29 U.S.C. §§ 112(a)(1)(B) and (a)(3). And the district court did not err in certifying three classes to pursue the fiduciary duty claim. However, by certifying the denial of benefits classes without limiting

United States District Court
Northern District of California

1
2
3
the classes to those with claims that UBH denied under a specific Guidelines provision(s) challenged in this litigation that applied to the claimant's own request for benefits, the certification order improperly enlarged or modified Plaintiffs' substantive rights in violation of the Rules Enabling Act. Accordingly, we reverse the district court's certification of the denial of benefits classes.

4
5
6
7
8
On the merits, the district court erred to the extent it determined that the Plans require the Guidelines to be coextensive with GASC. Therefore, the judgment on Plaintiffs' denial of benefits claim is reversed, and to the extent the judgment on Plaintiffs' breach of fiduciary duty claim is based on the district court's erroneous interpretation of the Plans, it is also reversed. And we remand for the district court to answer the threshold question of whether Plaintiffs' fiduciary duty claim is subject to the exhaustion requirement.

9
10
*Id.* at 1089-1090.  The Panel, accordingly, affirmed in part, reversed in part, and "remanded for further proceedings." *Id.* at 1090.

11
**B.    Order re Scope of Remand**

12
13
14
15
16
17
18
Upon remand, the Court requested briefing from the parties as to the scope of the Panel's remand in *Wit III* and took oral argument on that question.  In its Order re Scope of Remand, the Court rejected UBH's argument that the mandated required the Court to enter judgment on the denial of benefits claim and foreclosed any further discretionary proceedings as to that claim. Order re Scope of Remand at 44.  It further concluded that the Panel had "left a number of questions open for consideration on remand beyond the exhaustion issue that is explicitly discussed in the summary portion of *Wit III*[.]" *Id.* at 40.

19
20
21
22
One of the issues the Court found could be addressed on remand was whether this Court did, in fact, find that UBH was required to cover *all* treatments consistent with GASC.  The Court found that clarification on this issue was not outside of the scope of the Panel's remand for the following reasons:

23
24
25
26
27
28
[D]espite UBH's repeated assertions that the panel found that this Court applied the wrong standard and found that UBH is required to cover all treatments consistent with GASC, a more plausible reading of the panel's opinion is that it explicitly left that question open in *Wit III*. In contrast to the panel's decisions in *Wit I* and *Wit II*, in which the panel appears to have held that this Court found that Plaintiffs were entitled to coverage of all treatment consistent with GASC, the panel's discussion in *Wit III* explicitly found that the Court's statements on this question were "conflicting" and went on to reverse the district court's judgment that UBH wrongfully denied benefits to the named Plaintiffs only "*to the extent* the district court concluded

the Plans require coverage for all care consistent with GASC." *Wit III*, 79 F.4th at 1088 (emphasis added). UBH would have the Court treat the highlighted phrase as simply meaning "because" but the more accurate interpretation of this language is that it qualifies the panel's reversal, recognizing that the reversal does not apply "to the extent" the Court did not premise its judgment (and associated remedies) on the conclusion that the class members' plans require coverage for all care consistent with GASC and leaving open the question of whether the Court did or did not rely on that reasoning when it entered judgment on the denial of benefits claim. Indeed, UBH interprets this same phrase when used in reference to the panel's partial reversal of the Court's judgment on the breach of fiduciary duty claim in just this manner. See UBH Opening Brief at 19-20 (arguing that on remand the Court should clarify the basis for its judgment on the breach of fiduciary duty claim in light of the panel's reversal of judgment on that claim "to the extent [the court] determined that the Plans require the Guidelines to be coextensive with GASC.") (citing *Wit III*, 79 F.4th at 1089).

*Id.* at 41-42.

The Court rejected UBH's argument that no additional fact findings could be made on remand because the deadlines for amending the judgment or making additional fact findings had passed. *Id.* at 48. The Court found "that the time limits under Fed.R.Civ.P. 52(b) and 59 for asking the Court to amend a judgment or make additional fact findings do not apply where the court of appeals has reversed and remanded for further proceedings." *Id.*

### C. *Wit IV*

In *Wit IV*, the Panel rejected this Court's reading of *Wit III* with respect to the scope of the remand as to the denial of benefits claim, explaining as follows:

> *Wit III* established that the errors in the class certification order related to the denial of benefits claim also infected the merits and remedy determinations related to that same claim. 79 F.4th at 1086. And in "revers[ing] the district court's judgment that UBH wrongfully denied benefits to the named Plaintiffs to the extent the district court concluded the Plans require coverage for all care consistent with GASC," we held that requiring "coverage for all care consistent with GASC" was a misinterpretation of the Plans. *Id.* at 1088. Despite the "to the extent" qualifier, the substance of our decision definitively resolved the denial of benefits claim.
>
> Perhaps we could have said it more plainly. But our holding in *Wit III* is nonetheless definitive. We reversed (without remand) both the district court's class certification order and merits judgment on the denial of benefits claim. Our omission of any reference to remand or direction for remand related to this claim, coupled with our plain reversal of the district court's judgment on that claim, disposed of the entire claim. *S.F. Herring Ass'n*, 946 F.3d at 574. In parsing the mandate, an informative difference is the contrast between the explicit

United States District Court
Northern District of California

> remand on the fiduciary duty claim and the lack of remand or
> direction on the denial of benefits claim. *See* A. Scalia & B. Garner,
> Reading Law: The Interpretation of Legal Texts 107 (2012) ("The
> expression of one thing implies the exclusion of others.").
>
> As a result, after our decision in *Wit III*, the district court only had
> jurisdiction to enter judgment for UBH on the denial of benefits claim.
> *See United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007) ("[I]f
> a district court errs by violating the rule of mandate, the error is a
> jurisdictional one."). Because the district court has instead concluded
> that certification of the denial of benefit class and the merits of that
> claim are both subject to re-litigation, UBH has shown a "clear and
> indisputable" right to mandamus relief. *Cheney*, 542 U.S. at 381
> (internal quotation marks and citation omitted).

*Wit IV*, 2024 WL 4036574, at *2. The Panel granted UBH's petition and instructed that "on

remand, further proceedings are limited to those [the Panel] directed as relates to the breach of

fiduciary duty claim." *Id.*

## III.    ANALYSIS

### A.    What Portion of Breach of Fiduciary Duty Claim Remains

#### 1.    Contentions of the Parties

##### a.    Plaintiffs' Opening Brief

In their opening brief, Plaintiffs contend their breach of fiduciary duty claim survives, in

its entirety, under *Wit III*. Dkt. no. 660-2 ("Plaintiffs' Opening Brief") at 18-24. Plaintiffs point to

the Court's ruling that "UBH has breached its fiduciary duty by violating its duty of loyalty,

its duty of due care, and its duty to comply with plan terms by adopting Guidelines that are

unreasonable and do not reflect generally accepted standards of care." *Id.* at 2 (quoting FFCL ¶

203[3].) Plaintiffs contend "[t]he only concern the Ninth Circuit raised with respect to this

conclusion was the extent to which it may have been 'intertwined with an incorrect interpretation

of the Plans.' " *Id.* (quoting *Wit III*, 79 F.4th at 1088 n.7). Plaintiffs assert that "the Ninth Circuit

---

[3] Paragraph 203 states, in full, as follows:

> Applying the standard of review discussed above, and based on the Findings of Fact
> related to the challenged Guidelines and UBH's Guideline development process, the Court
> finds, by a preponderance of the evidence, that UBH has breached its fiduciary duty by
> violating its duty of loyalty, its duty of due care, and its duty to comply with plan terms by
> adopting Guidelines that are unreasonable and do not reflect generally accepted standards
> of care.

FFCL ¶ 203.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    did 'not disturb' the Court's findings 'that financial incentives infected UBH's Guideline

2    development process and that UBH developed the Guidelines with a view toward its own

3    interests.' " *Id*.

4         According to Plaintiffs, the Court also found that they established that they were "harmed

5    by UBH's fiduciary breaches, specifying that the injury resulted from 'denial of [Plaintiffs'] right

6    to fair adjudication of their claims for coverage based on Guidelines that were developed solely

7    for their benefit.' " *Id*. (quoting FFCL ¶ 204). Plaintiffs point out that the Ninth Circuit "upheld

8    that determination as a basis for standing." *Id.* at 3 (citing *Wit III*, 79 F.4th at 1082-83).

9         Plaintiffs contend the Court's factual findings as the breach of fiduciary duty claim were

10   fully supported by the trial record; they also assert that the Court may make additional factual

11   findings on "open issues within the scope of remand" and supply proposed Supplemental Findings

12   of Fact, with citations to the trial record, "specifically addressing the remand issues." *Id.* (citing

13   Plaintiffs' Proposed Supp. Findings of Fact ("PSFF")).

14        According to Plaintiffs, the breach of fiduciary duty claim is based on UBH's breaches of:

15   1) its duty to act  "solely in the interest of the participants and beneficiaries" under 29 U.S.C. §

16   1104(a)(1)(A) ("duty of loyalty"); 2) its duty to act "with the care, skill, prudence, and diligence"

17   under 29 USC § 1104(a)(1)(B) ("duty of care"); and 3) its duty to act "in accordance with the

18   documents and instruments governing the plan" under  29 U.S.C. § 1104(a)(1)(D) ("duty to

19   comply with plan terms").  *Id.; see also* Plaintiffs' Post-Trial Brief, dkt. no. 391-4, at 73.

20   Plaintiffs contend none of these breaches is based on *how* UBH applied the Guidelines to any

21   individual coverage determination. Plaintiffs' Opening Brief at 18-24.  Furthermore, they assert,

22   the Court's rulings that UBH breached these duties are not based on any misunderstanding that the

23   Plans covered all treatment that was consistent with GASC – something Plaintiffs have never

24   claimed. *Id.* at 23.

25        Plaintiffs claim UBH breached its duty of loyalty to Plan participants by adopting acute-

26   focused Guidelines to further its own financial interests, to the detriment of plan participants.  *Id.*

27

28

at 19-20 (citing Findings of Fact and Conclusions of Law ("FFCL"), dkt. no. 413, ¶ 202).[4]

Plaintiffs also assert UBH violated its duty of loyalty "by misrepresenting its Guidelines as though

they faithfully reflected GASC to hide its deliberate narrowing of the scope of coverage." *Id.* at

16-18, 20 (citing FFCL ¶¶ 25-35, 37, 39, 84-85, 92-94, 104, 108, 113, 123, 152-153, 162).

Plaintiffs assert UBH violated its duty of care with respect to "development of the clinical

criteria it would use to determine if the services for which coverage was requested, at the

requested level of care, were consistent with GASC." *Id.* at 20. According to Plaintiffs, it did so

---

[4] Paragraph 202 states, in its entirety, as follows:

> 202. The evidence introduced at trial supports the conclusion that significant skepticism
> is warranted in determining whether UBH abused its discretion when it adopted the
> Guidelines that are challenged in this case. First, the evidence shows that UBH had a
> structural conflict of interest throughout the class period because a large portion of its
> revenues came from fully insured plans. Moreover, the evidence shows that even as to the
> self-funded plans, UBH felt pressure to keep benefit expenses down so that it could offer
> competitive rates to employers. Second, regardless of whether the financial incentive to
> keep benefit expenses down was stronger with respect to the fully insured plans or the self-
> funded plans, the conflict of interest affected all members equally, regardless of which type
> of plan they were insured under, because UBH used a single set of Guidelines to make
> coverage determinations. Third, UBH did not ensure that the internal process it set up for
> adopting and revising the Guidelines insulated the individuals who developed the
> Guidelines from financial considerations. To the contrary, UBH included administrators
> from its Finance and Affordability Departments on the committees that ultimately
> had to approve the Guidelines. Further, as to those individuals who were involved in the
> Guideline development process who were not in those Departments, such as Mr.
> Niewenhous, UBH made sure that on a regular basis they received detailed financial
> information about "utilization," including whether targets set by UBH in particular
> categories of services were being met. Finally, the evidence at trial established that the
> emphasis on cost-cutting that was embedded in UBH's Guideline development process
> actually tainted the process, causing UBH to make decisions about Guidelines based as
> much or more on its own bottom line as on the interests of the plan members, to whom it
> owes a fiduciary duty. This was apparent from UBH's handling of TMS and ABA
> benefits, discussed above. Most striking, however, was the obvious impact of financial
> considerations on UBH's decision making as to the adoption of the ASAM Criteria.
> UBH's refusal to adopt the ASAM Criteria was not based on any clinical justification.
> Indeed, all of its clinicians recommended that the ASAM Criteria be adopted. The only
> reason UBH declined to adopt the ASAM Criteria was that its Finance Department
> wouldn't sign off on the change. In other words, UBH's Finance Department had veto
> power with respect to the Guidelines and used it to prohibit even a change in the
> Guidelines that all of its clinicians had recommended. This evidence establishes that UBH
> has a conflict of interest that has had a significant impact on decision-making as to the
> development of the Guidelines. Therefore, in applying the abuse of discretion standard to
> Plaintiffs' Breach of Fiduciary Duty Claim, the Court views UBH's decision making with
> significant skepticism.

FFCL ¶ 202.

by "by handing off development of its clinical criteria to unqualified personnel who alternately ignored and manipulated the evidence base on which they purported to rely; giving nonclinical staff in its Finance Department veto power over the substance of the clinical Guidelines; designing a process for soliciting input on its draft Guidelines that would ensure reviewers did not assess whether the Guidelines were actually consistent with generally accepted standards; ignoring comments from reviewers who nevertheless identified substantive problems with the Guideline criteria; ignoring the substantive concerns raised by its own paid consultant about its substance-use disorder criteria; and rejecting the recommendations of its own internal subject-matter experts who sought to adopt the generally-accepted ASAM Criteria because they were clinically superior to UBH's internally-developed criteria." *Id.* at 21; *see also id.* at 9-11, 13-15 (citing FFCL ¶¶ 33, 84, 169, 174, 180-182, 184-189, 202).

To illustrate the shortcomings of UBH's development process, Plaintiffs compare the manner in which UBH went about developing its Guidelines to the approach that was taken to the development of level of care criteria developed by the American Society of Addiction Medicine ("ASAM"), "the professional society that represents addiction medicine for the United States." *Id.* at 21-22. Plaintiffs propose additional factual findings based on evidence taken at trial to support their position. *Id.* (citing Plaintiffs' Proposed Supp. Findings of Fact ("PSFF") ¶¶ 25-33).

Plaintiffs contend UBH also breached its duty to comply with plan terms. *Id.* at 22-23. In particular, Plaintiffs point to the plans' "universal GASC" requirement and the Court's finding that the Guidelines UBH adopted to implement that requirement were "unreasonable and [did] not reflect generally accepted standards of care." *Id.* (quoting FFCL ¶ 203). Plaintiffs note that "[t]he Ninth Circuit affirmed these rulings, holding that it was not error for this Court to find 'that the challenged portions of the Guidelines represented UBH's *implementation* of the GASC Requirement' and that 'it was not error for the district court to rule that UBH abused its discretion because the challenged portions of the Guidelines did not *accurately* reflect GASC.' " *Id.* at 23 (quoting *Wit III*, 79 F.4th at 1088 & n.6) (emphasis in *Wit III*).

Plaintiffs ask the Court to "make clear that its breach of fiduciary duty rulings do not depend, in any way, on any misconception that the Class members' Plans 'require coverage for all

care consistent with GASC,' which is the sole question left by the Ninth Circuit with regard to this Court's ruling on the merits of the breach of fiduciary duty claim." *Id.* (quoting *Wit III*, 79 F.4th at 1088).   Plaintiffs contend it is undisputed that the plans do contain a GASC requirement, along with other conditions and exclusions, and that the Guidelines were created to standardize how that requirement was applied, but that UBH "breached its fiduciary duties by drawing the GASC line in the wrong place, for its own purposes." *Id.* In particular, Plaintiffs assert, "[i]rrespective of any other Plan terms, when UBH intentionally created excessively narrow clinical criteria for the express purpose of imposing UBH's "Acute Care UM Model" on the Plans, it subjected all Class members to a new limitation on the scope of coverage that was previously available under their Plans. *Id.* at 24.  According to Plaintiffs, "[a]ll of this misconduct . . . occurred *before* UBH *applied* the Guidelines to the Class members and issued the denials Plaintiffs challenged in their wrongful denial of benefits claim." *Id.* (emphasis in original).

          b.   UBH Opening Brief

          UBH asserts in its opening brief that this Court's judgment in favor of Plaintiffs' breach of fiduciary duty claim was reversed in its entirety and that judgment on that claim should now be entered in favor of UBH. Dkt. no. 662 ("UBH Opening Brief") at 12-22. According to UBH, "[f]or both claims, Plaintiffs sought to remedy the *same harm* (the denial of their right to fair adjudication of their claims for benefits), on behalf of the *same class*, flowing from the *same conduct* (UBH's adoption of Guidelines that were inconsistent with GASC), based on the same interpretation of plan documents, and for which they sought many of the same remedies." *Id.* at 12-13 (emphasis in original).   Thus, UBH contends, the breach of fiduciary duty claim fails for the same reasons the Panel found the denial of benefits claim failed.  *Id.* at 13.

          With respect to the alleged harm, UBH asserts that the only injury the Court found resulted from the alleged breach of fiduciary duty was " 'injury result[ing] from "denial of [Plaintiffs'] right to fair adjudication of their claims for coverage based on Guidelines that were developed solely for their benefit." ' " *Id.*  (quoting Plaintiffs' Opening Brief at 3 (quoting FFCL ¶ 204[5])).

─────────────────

[5] Paragraph 204 of the FFCL states as follows:

United States District Court
Northern District of California

But according to UBH, "[t]he Ninth Circuit explicitly rejected Plaintiffs' argument and held that Plaintiffs failed to prove that injury, holding: 'Plaintiffs have fallen short of demonstrating that all class members were denied a full and fair review of their claims *or that such a common showing is possible*.' " *Id.* (quoting *Wit III*, 79 F.4th at 1086 (emphasis added by UBH)).

UBH rejects Plaintiffs' reliance on the Panel's discussion of injury in connection with its standing challenge, asserting that "Article III standing and statutory requirements of proof 'are not coextensive.' " *Id.* at 14 (quoting *City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1039 (9th Cir. 2021) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014))). Rather, it asserts, Article III standing is merely a constitutional "bare minimum" and "does not 'allow all factually injured plaintiffs to recover' irrespective of more stringent statutory requirements.' " *Id.* (quoting *Lexmark*, 572 U.S. at 129, 137). UBH argues that the holding of *Wit III* illustrates this point, as the risk of harm that the Panel found sufficient to establish Article III standing on the denial of benefits claim "was not enough to prove the actual harm necessary to establish a claim for relief under ERISA." *Id.* at 14.

UBH also points out that the class definitions for the two claims are the same and that "the central, defining criterion for inclusion in the Guideline classes is whether a class member's claim for benefits 'was denied by UBH . . . based upon' the Guidelines." *Id.* (citing FFCL ¶ 13). Likewise, UBH asserts, "[w]ith the exception of claim reprocessing . . . , Plaintiffs also did not distinguish between the remedies they sought for their denial of benefits and their fiduciary duty claims." *Id.* at 15.

UBH further asserts that both claims rely on the "same interpretation of plan documents." *Id.* According to UBH, "[t]hroughout this case, Plaintiffs argued that the same conduct supported

---

As discussed above, the final element of Plaintiffs' Breach of Fiduciary Duty Claim is that the breach must have caused harm to Plaintiffs. The Court finds that this requirement is met. As the Court found on summary judgment, the harm that Plaintiffs allege resulted from UBH's breach of fiduciary duty is the denial of their right to fair adjudication of their claims for coverage based on Guidelines that were developed solely for their benefit. See Wit, Dkt. No. 286 at 24-25. The Court declines to revisit that conclusion.

FFCL ¶ 204.

their claim for denial of benefits and breach of fiduciary duty." *Id.*  As an example, UBH points to Plaintiffs' argument in their trial brief that "the Court would 'readily find at trial that UBH's Guidelines [were] more restrictive than generally accepted standards of care' and that this 'finding alone [would] entitle Plaintiffs to relief on both their claims.' " *Id.* (quoting dkt. no. 299 at 14). Similarly, UBH contends, the Court relied on the same conduct in support of a finding of breach with respect to both claims.  *Id.*  In particular, UBH asserts, "[t]he actual conduct the Court held to constitute a breach of UBH's fiduciary duties was: 'adopting Guidelines that are unreasonable and do not reflect generally accepted standards of care.' " *Id.*  (quoting FFCL ¶ 203).  UBH contends "[t]hat is the exact same conduct that the Court held to be an abuse of discretion in connection with the denial of benefits claim." *Id.* (citing FFCL ¶ 212).

UBH argues that "[i]f it was ever uncertain, *Wit IV* leaves no question that this Court's judgment, based on its conclusion that UBH adopted guidelines that were more restrictive than generally accepted standards of care, was 'definitive[ly]' reversed." *Id.* at 16 (citing *Wit IV*, 2024 WL 4036574, at *2).  According to UBH, "If the erroneous interpretation of the Plans was grounds to reverse Plaintiffs' denial of benefits claim in its entirety, it necessarily is grounds to reverse the indistinguishable breach of fiduciary duty claim in its entirety as well." *Id.* at 17.

As to the Court's findings "that financial incentives infected UBH's Guideline development process and that UBH developed the Guidelines with a view toward its own interests," UBH points out that these findings were left undisturbed in *Wit III* only "*to the extent they were not intertwined with an incorrect interpretation of the Plans*." *Id.*  at 17-18 (quoting *Wit III*, 79 F.4th 1088 n.7 (emphasis added by UBH)). But according to UBH, the Court made no "finding of breach that would be 'untethered to any plan interpretation' of the GASC precondition." *Id.* Furthermore, it contends, "the conflict findings largely went to the Court's assessment of 'the degree of skepticism' to be applied in evaluating UBH's conduct." *Id.* (citing FFCL ¶¶ 201, 202, 210). UBH asserts that "the Court's conflict-of-interest findings were equally relevant to the denial of benefits claim for the very same reasons. The Court made no distinction between those findings as they related to the fiduciary duty claim and the denial of benefits claim, see FFCL ¶¶ 174–189, 210, confirming that those findings are fully 'intertwined' with the denial

16

1    of benefits claim that the Ninth Circuit reversed." *Id.* (citing *Wit III*, 79 F.4th at 1088 n.7).

2         UBH also rejects Plaintiffs' assertion that it breached its fiduciary duty by lying about the

3    nature of its Guidelines to regulators, arguing that Plaintiffs do not connect "that finding about

4    statements made to a state regulator to the breach of any fiduciary duty owed to Plaintiffs or the

5    class" and do not "identify any harm flowing to class members from those statements." *Id.* at 18

6    n. 4.

7         Next, UBH argues that if the conflict-of-interest findings could be "disentangled" from the

8    Court's interpretation of the Plans, a breach of fiduciary duty claim based on conflict of interest

9    fails for other reasons. *Id.* at 19. "First, a 'possible' or even 'actual' 'conflict of interest' does not

10   establish that the plan administrator abused its discretion in violation of its fiduciary duties of

11   loyalty and care." *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 106–08, 115

12   (1989); *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000)).   Thus, UBH contends, "even assuming

13   UBH had a conflict of interest in developing the Guidelines . . ., that fact alone would not establish

14   a breach of fiduciary duty or any other violation of ERISA." *Id.* (citing *In re McKesson HBOC,*

15   *Inc. ERISA Litigation*, 391 F. Supp. 2d 812, 835 (N.D. Cal 2005) ("No case of which the court is

16   aware has held that ERISA fiduciaries breach their duty of loyalty simply for 'placing themselves

17   in a position' where they might act disloyally.")).

18        Second, UBH asserts, "Plaintiffs have not presented adequate 'proof' that the newly-

19   asserted breach of fiduciary duty 'caused harm,' nor even a coherent theory of how they were

20   harmed by any conflicts of interest." *Id.* at 20 (citing *Huntsinger v. The Shaw Grp., Inc.*, 268 F.

21   App'x 518, 520 (9th Cir. 2008); *Lexmark Int'l*, 572 U.S. at 132).

22        UBH also rejects Plaintiffs' "other newly-espoused theories of breach", which it contends

23   do not survive *Wit III*. *Id.* at 21. One such theory, according to UBH, is Plaintiffs' assertion that

24   "UBH breached its fiduciary duty of care by failing to simply adopt third-party criteria for

25   evaluating whether a service is consistent with generally accepted standards of care, such as

26   ASAM or LOCUS." *Id.* UBH argues that that theory is "at odds" with the Court's finding that

27   there "is no single source of generally accepted standards of care." *Id.* (quoting FFCL ¶ 57).

28   UBH argues further that Plaintiffs' theory that UBH breached its fiduciary duty by claiming its

Guidelines "faithfully reflected GASC" is foreclosed by *Wit III*, which "specified that the Court's ultimate merits judgment that the Guidelines 'impermissibly deviated from GASC' was reversible error that can no longer form part of Plaintiffs' breach of fiduciary duty claim." *Id.* at 22 (citing *Wit III*, 79 F.4th at 1088 n.7).

In a footnote, UBH also contends "Plaintiffs did not . . . prove a connection between any conflicts of interest and their defunct *original* theory of harm." *Id.* at 21 n. 7 (emphasis in original). According to UBH, "[a]t trial, Plaintiffs presented only three instances, across 180 meetings, in which the committee charged with approving the Guidelines discussed benefit expense in any context" and all involved assessments of the cost and efficacy of specific treatments. *Id.* UBH argues that consideration of these factor was "consistent with plan requirements." *Id.* It contends, "[w]ithout any evidence that UBH's purported financial interests *caused* UBH to use any challenged provision of the Guidelines, Plaintiffs cannot maintain those interests sustain a viable breach of fiduciary duty claim." *Id.*

UBH argues that "[t]he *only* difference between Plaintiffs' denial of benefits and breach of fiduciary duty claims is the respective remedies they sought[:] As the Ninth Circuit recognized, Plaintiffs sought 'reprocessing' with respect to their 'denial of benefits clai[m]' only, whereas they sought only prospective 'injunctive and declaratory relief' for their breach of fiduciary duty claim." *Id.* at 22 (citing *Wit III*, 79 F.4th at 1079). UBH contends, "[t]his Court should thus rule that reprocessing is foreclosed by the Ninth Circuit's unequivocal holdings—in *Wit III* and in *Wit IV*—that Plaintiffs failed to prove any right to reprocessing." *Id.*

Finally, UBH argues that Plaintiffs' request for new factual findings is improper because it is not within the scope of the remand and because under Fed.R.Civ. P. 52(b), the deadline to seek amended or additional findings was "no later than 28 days after the entry of judgment." *Id.* at 22-23. UBH argues further that W"[w]atever supplemental fact findings Plaintiffs may seek to have the Court adopt will not alleviate the fundamental errors in the Court's ultimate judgment and remedies order." *Id.* at 23. In particular, UBH contends, "[t]he effect of the Court's judgment on the breach of fiduciary duty claim, and the related prospective remedies it imposed, was to compel coverage that is solely consistent with GASC, without regard to any other plan

terms, including other requirements of medical necessity. That error cannot be corrected by simply announcing that the Ninth Circuit was wrong." *Id.*

### c.  Plaintiffs' Reply Brief

Plaintiffs reject UBH's position that there is nothing left for this Court to do but enter judgment in favor of UBH on their breach of fiduciary duty claim.  Plaintiffs' Reply at 1. They assert that "UBH cannot point to a single finding or ruling by this Court that so much as suggests that the reason UBH breached its fiduciary duties is because the plans mandate coverage coextensive with GASC." *Id.*  According to Plaintiffs, the Court's factual and legal conclusions are not "intertwined with any such error" as they "make clear that UBH breached its fiduciary duties by prioritizing its bottom line in developing its Guidelines to facilitate denials and pursuing an intentionally shoddy process that failed to ensure the Guidelines accurately implemented the plans' common GASC precondition—and that this conduct breached UBH's fiduciary duties regardless of whether any other plan terms later provided grounds for any individual benefit denial." *Id.*

Plaintiffs point out that the Panel in *Wit III* explicitly remanded the breach of fiduciary duty claim for further proceedings, in contrast to the denial of benefits claim, and that in *Wit IV*, the Panel pointed to this difference in wording in support of its holding that *Wit III* required entry of judgment on the denial of benefits claim.  *Id.* at 1-2.  Thus, Plaintiffs assert, the "mandamus ruling leaves UBH no room to argue to this Court, or to the [P]anel, that *Wit III* actually ordered dismissal of the entire case." *Id.*  at 2. According to Plaintiffs, "[t]he task at hand necessarily requires this Court to re-evaluate the facts supporting Plaintiffs' breach of fiduciary duty claim and, giving explicit consideration to the correct plan interpretation (to the extent relevant to that claim), and determine whether the facts still support the conclusion that UBH is liable on that claim." *Id.*  They contend the "required analysis is not limited to merely re-reading the Court's existing legal conclusions to 'identify' surviving aspects of the claim, as UBH urges" because "[i]f that were all that was required, the Ninth Circuit could easily, and much more efficiently, have done that itself." *Id.*  (citing UBH Opening Brief at 18, 24).  Instead, Plaintiffs contend, the Court is "free to decide" "questions about the extent to which the Plaintiffs'

1  breach of fiduciary duty claim was'"intertwined' with an improper interpretation of the plans" as

2  those questions were not "expressly or impliedly disposed of" by the Panel.  *Id.* (citing *San*

3  *Francisco Herring Ass'n v. U.S. Dep't of the Interior*, 946 F.3d 564, 574 (9th Cir. 2019);  *Hall v.*

4  *Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)).

5        Plaintiffs argue that while the Panel's mandamus ruling prohibits the Court from

6  addressing what it found to be a " 'conflicting' record about whether this Court had misinterpreted

7  the plans to 'require coverage of all care consistent with GASC[,]' " that prohibition does not have

8  any "bearing on the breach of fiduciary duty claim." *Id.*  at 3.  Further, Plaintiffs reiterate their

9  position that "none of the factual findings on which the Court based its conclusion that UBH

10  breached its fiduciary duties of was 'intertwined' with any erroneous belief that the Plans

11  mandated coverage for all services that were consistent with GASC." *Id.* Plaintiffs contend UBH

12  failed to meaningfully address in its brief Plaintiffs' argument "that the factual findings *Wit III* left

13  undisturbed—i.e., *affirmed*—still establish that UBH breached its fiduciary duties of loyalty, care,

14  and adherence to plan terms." *Id.*  (emphasis in original).   According to Plaintiffs, UBH's brief

15  focused on "straw man claims Plaintiffs never asserted" and "its disingenuous mantra that the

16  breach of fiduciary duty claim and the denial of benefits claim are 'the same.' " *Id.*

17        Plaintiffs reject UBH's argument that the denial of benefits claim and the breach of

18  fiduciary duty claim are the same, arguing that the claims are "factually and legally distinct." *Id.*

19  at 3-4.  According to Plaintiffs, UBH's breach of fiduciary duty was "in developing Guidelines in

20  its financial self-interest and manipulating the sources it purported to rely upon so that the

21  Guidelines did not come close to accurately implementing the relevant plan term[.]" *Id.*  at 4.

22  Plaintiffs contend UBH "simply ignore[s] the entire factual basis for the Court's breach of

23  fiduciary duty ruling by selectively quoting from the Court's conclusions of law." *Id.*  In

24  particular, UBH stated in its brief that "the act that the Court actually found to be a breach of

25  fiduciary duty was 'adopting Guidelines that are unreasonable and do not reflect generally

26  accepted standards of care' to deny benefits." *Id.*  (citing UBH Opening Brief at 18 (quoting FFCL

27  ¶ 203)).  Plaintiffs respond that "a finding that UBH's Guidelines do not match GASC is a

28  determination that UBH drew the coverage line in the wrong place when implementing the

United States District Court
Northern District of California

1   common GASC precondition; it does not imply that the Court mistook a coverage exclusion for a

2   coverage mandate." *Id.* Plaintiffs also point out that "UBH's truncated quotation cuts out the

3   Court's reference to the factual basis for its ruling—i.e., "the Findings of Fact related to the

4   challenged Guidelines and UBH's Guideline development process"—as well as the ruling itself,

5   that 'UBH has breached its fiduciary duty by violating its duty of loyalty, its duty of due care, and

6   its duty to comply with plan terms. . . .' " *Id.* (quoting FFCL ¶ 203).

7        Plaintiffs argue that UBH improperly "downplay[s] its proven disloyalty as a mere

8   'structural conflict of interest,' [while] . . .ignor[ing] that, after trial, this Court not only found that

9   UBH had a structural conflict of interest, but *also* found that 'the emphasis on cost-cutting that

10  was embedded in UBH's Guideline development process *actually tainted* the process, causing

11  UBH to make decisions about Guidelines based as much or more on its own bottom line as on the

12  interests of the plan members, to whom it owes a fiduciary duty.' " *Id.* at 5 (citing UBH Opening

13  Brief at 2,5; FFCL ¶¶ 174-189, 202). Moreover, Plaintiffs assert, "[t]he fact that the Court relied

14  on some of the evidence of UBH's disloyalty to find that its abuse of discretion review of UBH's

15  discretionary decisions should be tempered by "significant skepticism," FFCL ¶ 202, does not

16  somehow make that evidence inapplicable to the separate, substantive question of whether UBH

17  breached its fiduciary duties." *Id.*

18       In a footnote, Plaintiffs rejects UBH's characterization of Plaintiffs' arguments as to the

19  duty of loyalty and duty of care as "new theories of breach" or "newly asserted claims." *Id.* at 5 n.

20  4. According to Plaintiffs, they "presented the same arguments in their post-trial briefing, which

21  is why the Court issued factual findings and conclusions of law ruling on them." *Id.* (citing

22  Plaintiffs' Post-Trial Brief, dkt. no. 391-4 at 73-75 ("describing alleged breaches of fiduciary

23  duties of loyalty and care"); *id*. at 82-85 ("legal argument that UBH breached duties of loyalty and

24  care"); *id*. at 2-71 ("summarizing trial evidence")).

25       Plaintiffs contend UBH is "off base when it relies on cases acknowledging that ERISA

26  fiduciaries do not breach their fiduciary duties merely by having a conflict of interest." *Id.* at 6

27  (citing UBH Opening Brief at 20). Plaintiffs assert that they alleged – and that the Court found –

28  that "*in addition* to having a structural conflict of interest, UBH *did* act disloyally by deliberately

rigging the Guidelines to serve its own bottom line." *Id.* at 7 (citing FFCL ¶¶ 174, 179-89) (emphasis in original). Plaintiffs contend "that conclusion in no way turns on any erroneous plan interpretation that the plans mandate coverage coextensive with GASC" and that "UBH does not dispute—or even address—that point, thereby conceding it." *Id.*

Plaintiffs argue that "UBH also misses the point when it urges the Court to ignore its affirmed findings that UBH repeatedly lied to conceal the fact that its Guidelines were much more restrictive than GASC." *Id.* (citing UBH Opening Brief at 18 n. 4). Plaintiffs point out that they did not assert a claim for misrepresentation that would require proof of reliance on the part of class members; rather, these findings provide "additional evidence that UBH created its Guidelines to implement the GASC precondition." *Id.*

With respect to the breach of the duty of care, Plaintiffs contend UBH misconstrues their argument related to UBH's "shoddy Guideline development process" and the significance of the ASAM and other similar criteria. *Id.* (citing UBH Opening Brief at 21). According to Plaintiffs, their argument is that "the undisputed facts establish UBH was aware that resources like LOCUS, CALOCUS, and the ASAM Criteria existed, and that UBH knew those criteria were consistent with GASC, but in creating its Guidelines to implement the GASC requirement, UBH made so little effort to ensure that the Guidelines accurately reflected GASC that it came up with a set of criteria that were so inconsistent with those readily-available sources that no 'practitioners worth their salt' would use them." *Id.* Plaintiffs contend, "[t]hat imprudent conduct breached UBH's fiduciary duty to act with care, skill, prudence and diligence." *Id.* (citing 29 U.S.C. § 1104(a)(1)(B)). According to Plaintiffs, "UBH does not even try to dispute that conclusion." *Id.* Nor does it "even try to demonstrate that the findings supporting the conclusion that UBH breached its duty of care were 'intertwined' with any erroneous interpretation of the plans, other than baldly asserting that 'the issue of whether the Guidelines "impermissibly deviated from GASC" is part and parcel with Plaintiffs' now-reversed denial of benefits claim.' " *Id.* at 7-8 (citing UBH Opening Brief at 21 (quoting *Wit III*, 79 F.4th at 1088 n.7)).

But according to Plaintiffs, "the finding that the Guidelines deviated from GASC was not erroneous, and the Ninth Circuit never said it was." *Id.* at 8. Rather, Plaintiffs contend, "[t]he

United States District Court
Northern District of California

Ninth Circuit affirmed the district court's findings that UBH developed its Guidelines to *implement* the GASC requirement and that the challenged Guideline provisions did not *accurately* reflect GASC." *Id.* (citing *Wit III*, 79 F.4th at 1088 & n.6) (emphasis in original). Furthermore, Plaintiffs assert, "[t]he finding that UBH failed to use due care when creating Guidelines to *implement the GASC requirement* does not have anything to do with whether denials UBH later based 'in whole or in part' on the Guidelines were wrongful in light of *all* the plan terms, and it certainly does not require the Court to believe that the plans mandate coverage coextensive with GASC." *Id.* (emphasis in original).

As to the breach of the duty to adhere to plan terms, Plaintiffs rejects UBH's argument that this claim is "intertwined" with any erroneous plan interpretation, reiterating their argument that this claim "is all about how UBH went about creating Guidelines to standardize its implementation of the plans' common GASC requirement—not other plan terms, let alone *all* plan terms." *Id.* (citing UBH Opening Brief at 22-23).

Plaintiffs reject UBH's assertion that the Court is precluded from making additional factual findings relating to UBH's breach of fiduciary duty. *Id.* at 9. Although UBH asserts that such fact-finding would amount to "announc[ing] that the Ninth Circuit was wrong[,]" Plaintiffs contend UBH "does not point to any specific proposed fact that would have any such effect (and none do)." *Id.* at 9-10. According to Plaintiffs, "the handful of factual findings Plaintiffs proposed merely call the Court's attention to evidence already in the trial record and point out additional details that may assist the Court in ruling on the remanded questions." *Id.*

Finally, Plaintiffs reject UBH's assertion that the breach of fiduciary duty claim is based on the same harm as the denial of benefits claim. *Id.* at 10-12. Plaintiffs contend the Court found distinct injuries with respect to the two claims and that the Panel recognized those distinct theories of harm as well. *Id.* Plaintiffs point to the Court's summary judgment ruling on this issue, which was expressly incorporated into the FFCL, which "makes clear that Plaintiffs alleged, and proved, harm to first, 'their rights to a plan administrator that acts solely in the interests of plan participants in developing the Guidelines that are used to adjudicate their claims,' and second, their rights 'to have their claims adjudicated under Guidelines that are consistent with the terms of

their plans.' " *Id.* at 11 (quoting *Wit v. United Behav. Health*, No. 14- cv-02346-JCS, 2020 WL 6469764, *13 (N.D. Cal. Nov. 3, 2020)). According to Plaintiffs, the Panel also "held that Plaintiffs alleged different harms with respect to each claim." *Id.* (citing Plaintiffs' Opening Brief at 3) (quoting *Wit III*, 79 F.4th at 1082-83)). Plaintiffs reject UBH's assertion that the Court should disregard the Panel's holdings with respect to injury because they related to Article III standing and not whether Plaintiffs have established injury as an element of their breach of fiduciary duty claim. *Id.* at 12. They acknowledge that "Article III injury is not necessarily 'coextensive' with the elements of a claim," but assert the Panel's conclusions nonetheless undermine UBH's argument because "demonstrating standing still requires a plaintiff to allege injury that is 'fairly traceable' to the misconduct alleged in the lawsuit and redressable by the substantive claim." *Id.* Furthermore, Plaintiffs assert, UBH ignores the fact that "*this Court* not only addressed Plaintiffs' injuries in ruling on standing, but it later incorporated that ruling into its post-trial conclusion of law holding that Plaintiffs had satisfied the injury element of their breach of fiduciary duty claim." *Id.* (citing FFCL ¶ 204) (incorporating summary judgment ruling).

### d.   UBH Sur-Reply

In its sur-reply, UBH reiterates its argument that the breach of fiduciary duty claim does not survive *Wit III* and that the Court must enter judgment in favor of UBH on that claim. UBH Sur-Reply at 1. It asserts that "any reference to the Guideline development process in paragraph 203 is clearly 'intertwined' with the finding about GASC[,]" namely, "that UBH breached its fiduciary duty 'by adopting Guidelines that are unreasonable and do not reflect generally accepted standards of care.' " *Id.*

UBH argues again that the only harm alleged as to the breach of fiduciary duty claim was the denial of benefits, which is the same harm alleged as to the denial of benefits claim. *Id.* at 2. According to UBH, "Plaintiffs still cite no case in which the mere consideration of finances in developing a claims determination process is actionable absent evidence that it caused a denial of benefits to each plaintiff." *Id.* UBH argues that the Panel in *Wit III* "held in clear terms that 'Plaintiffs' breach of fiduciary duty claim *also relied heavily* on its conclusion that the Guidelines impermissibly deviated from GASC,' 79 F.4th at 1088 n.7 (emphasis added), and it reversed

liability on that claim 'to the extent' this was true, *id*. at 1089." *Id.* Thus, UBH asserts, "a ruling

that *Wit III* reversed no part of that claim would . . . defy the Ninth Circuit's mandate." *Id.*

In response to Plaintiffs' argument that the harm associated with the breach of fiduciary

duty claim is distinct from the harm associated with the denial of benefits claim, UBH argues that

"Plaintiffs have always argued that the 'harm' for their fiduciary duty claim was not UBH's

financial considerations themselves, but rather the 'harm[]' of having 'their claims . . . subjected

to UBH's restrictive guidelines making it less likely that UBH will determine that their claims are

covered.' " *Id.* at 7 (citing Am. Compl. ¶ 201). Likewise, UBH contends, the Court has

"repeatedly held that harm only arises, if ever, when the Guidelines 'are used to adjudicate

[Plaintiffs'] claims.' " *Id.* (quoting Amended Order Granting in Part and Denying in Part United

Behavioral Health's Motion for Summary Judgment, 2020 WL 6469764, at *13 (N.D. Cal. Nov. 3,

2020); and citing Order Partially Decertifying Classes, dkt. no. 490 at 14 ("The theory of

Plaintiffs' case is that . . . the ERISA violation *occurred when benefits were initially denied* . . .

because the class members were deprived of the right to have a faithful fiduciary adjudicate their

claims using proper Guidelines") (emphasis added by UBH). According to UBH, because the

harm as to both claims was the use of the Guidelines to make coverage determinations, the

reversal of the denial of benefits claim also means that the breach of fiduciary duty claim fails. *Id.*

at 7-8.

### 2. Discussion

#### a. Legal Standards

"When 'execut[ing] the terms of a mandate,' district courts can reconsider 'any issue not

expressly or impliedly disposed of on appeal.'" *Wit IV*, 2024 WL 4036574, at *1 (quoting *S.F.*

*Herring Ass'n v. U.S. Dep't of Interior*, 946 F.3d 564, 574 (9th Cir. 2019) (citations omitted)).

"'In determining which matters fall within the compass of a mandate, "[d]istrict courts must

implement both the letter and the spirit of the mandate, taking into account the appellate court's

opinion and the circumstances it embraces."'" *Id.* (quoting *Creech v. Tewalt*, 84 F.4th 777, 787

(9th Cir. 2023) (quoting *Vizcaino v. U.S. Dist. Ct. for W. Dist. of Washington*, 173 F.3d 713, 719

(9th Cir.), as amended (June 10, 1999), opinion amended on denial of reh'g sub nom. *In re*

1    *Vizcaino*, 184 F.3d 1070 (9th Cir. 1999)).

2                    b.   Issues that May be Addressed on Remand

3          In *Wit III,* the Panel reversed this Court's judgment on Plaintiffs' denial of benefits claim

4    and further held that "to the extent the judgment on Plaintiffs' breach of fiduciary duty claim [was]

5    based on the district court's erroneous interpretation of the Plans, it [was] also reversed." 79 F.4th

6    at 1089. Further, "because it was unclear whether the entirety of the fiduciary duty claim was

7    based on misinterpretation of the Plans' GASC precondition, [the Panel] remanded for the district

8    court to identify any surviving aspect" of the breach of fiduciary duty claim, "and, if some part of

9    that claim did survive under [the Panel's] reasoning, 'to answer the threshold question of whether

10   Plaintiffs' fiduciary duty claim is subject to the exhaustion requirement.' " *Wit IV*, 2024 WL

11   4036574, at *2 (quoting *Wit III*, 79 F.4th at 1090).  The task before the Court is to implement

12   these instructions on a practical level.

13         As set forth below, the Court concludes that the scope of the Panel's remand was narrow.

14   The Court further concludes that the all-or-nothing positions of both sides – with Plaintiffs

15   asserting that the Court should clarify it did not rely on *any* misinterpretation of the Plans in

16   support of its judgment on the breach of fiduciary duty claim and therefore, that the claim survives

17   *Wit III*  in its entirety, and UBH asserting that the claim is essentially identical to the denial of

18   benefits claim and therefore the Court can *only* enter judgment in favor of UBH on the claim --

19   deviate from the Panel's holdings in *Wit III*  and *Wit IV.*

20         First, Plaintiffs ask the Court to hold that no aspect of the breach of fiduciary duty claim

21   was reversed in *Wit III* based on the qualifying "to the extent" language used in connection with

22   the Panel's holding as to that claim.  But in *Wit IV*, the Panel made clear that its holding in *Wit III*

23   as to the denial of benefits claim did not leave open for clarification on remand the question of

24   *whether* the Court had erred with respect to its interpretation of the Plans as requiring coverage

25   coextensive with GASC, notwithstanding "to the extent" language similar to the language the

26   Panel used in connection with its holding on the breach of fiduciary duty claim.   *Wit IV*, 2024 WL

27   4036574, at *2 ("Despite the 'to the extent' qualifier, the substance of our decision definitively

28   resolved the denial of benefits claim.").  Furthermore, the Panel in *Wit IV* stated definitively as to

United States District Court
Northern District of California

the breach of fiduciary duty claim that its "reasoning on the merits of the denial of benefit claim also applied to the fiduciary duty claim[.]" *Id.* (citing *Wit III*, 79 F.4th at 1088 n.7). Therefore, while the question of what exactly survives of this claim is up for debate, the Court has no doubt that the Panel reversed this Court's judgment on the breach of fiduciary duty as to at least some portion of that claim.

On the flip side, UBH's position that the Court can *only* enter judgment in favor of UBH on the breach of fiduciary duty claim under *Wit III* ignores the express distinction drawn by the Panel in *Wit IV* in explaining why the mandate in *Wit III* did not permit this Court to clarify that it did not rely on a misinterpretation of the Plans in entering judgment on the denial of benefits claim: "In parsing the mandate, an informative difference is the contrast between the explicit remand on the fiduciary duty claim and the lack of remand or direction on the denial of benefits claim." *Wit IV*, 2024 WL 4036574, at *2. The Panel could have adopted UBH's position in *Wit III* and *Wit IV* and instructed the Court to enter judgment as to the breach of fiduciary duty claim, as it did as to the denial of benefits claim, but it did not do so.

The Panel's observations in footnote 7 of *Wit III* also undercut UBH's position. In that footnote, the Panel found that while the Court's "judgment on Plaintiffs' breach of fiduciary duty claim . . . relied heavily on its conclusion that the Guidelines impermissibly deviated from GASC[,]" "this was not the only finding relevant to the [Court's] judgment on the breach of fiduciary duties claim." 79 F.4th at 1088 n.7. It pointed to the Court's findings that, "among other things, . . . financial incentives infected UBH's Guideline development process and that UBH developed the Guidelines with a view toward its own interests." *Id.* It concluded, "Our decision does not disturb these findings *to the extent* they were not intertwined with an incorrect interpretation of the Plans." *Id.* (emphasis added). [

UBH would have the Court interpret the "to the extent" language in this context to permit (indeed, require) the Court to find on remand that the findings that the Panel ostensibly did not disturb were, in fact, overturned because they are intertwined with the misinterpretation of the Plans that the Panel found to be in error. Yet this "contingent" interpretation of the phrase "to the extent that" was rejected in *Wit IV*. The clarification in that decision indicates that the Panel did

not use the phrase "to the extent that" to convey that the Court on remand was free to reconsider or clarify the question and reach the opposite conclusion. Further, as discussed further below, even if *Wit III* does not *preclude* the Court from finding that no portion of the breach of fiduciary duty claim survives, the Court finds that that conclusion is not supported by the record because some of the breaches of fiduciary duty that this Court found supported entry of judgment on that claim were unrelated to the misinterpretation of the Plans that the Panel found was erroneous

Next, the Court must determine what portion of the breach of fiduciary duty claim has survived *Wit III*. In the FFCL, the Court found three distinct breaches of fiduciary duty: breach of the duty of loyalty, breach of the duty of care, and breach of the duty to adhere to plan terms. FFCL ¶ 203. The Court must address whether any of its findings as to these breaches are "intertwined" with an improper interpretation of the Plans, namely, a requirement that the Plans require coverage of *all* treatments consistent with GASC.[6] As the parties agreed at the motion hearing, this is the specific error that led the Panel to reverse the judgment entered by the Court on the denial of benefits claim and partially reverse judgment on the breach of fiduciary duty claim and it is the error that must be the focus of the Court's analysis in determining what portion of the breach of fiduciary duty claim survives.[7]

---

[6] It is neither here nor there whether the Court understood that the Plans do *not* require coverage for all treatments consistent with GASC (or that Plaintiffs never took the position that the Plans require coverage for all treatments consistent with GASC as a basis for liability on their denial of benefits claim). Nor is it of any moment that the Court attempted to make clear in the FFLC that GASC is only one requirement for coverage and that other Plan requirements and limitations must also be satisfied to entitle class members to coverage. The Panel has concluded, based on what it found to be inconsistent statements elsewhere in the record, that this Court misunderstood the requirements for coverage and that this misunderstanding tainted the Court's conclusions on the merits as to the denial of benefits claim. That issue has been decided and this Court does not have jurisdiction to offer any clarification on that point.

[7] In footnote 7, the Panel notes that this Court's "judgment on Plaintiffs' breach of fiduciary duty claim also relied heavily on its conclusion that the Guidelines impermissibly deviated from GASC." *Wit III*, 79 F.4th at 1088 n. 7. Given that the Panel expressly held that "it was not error for the district court to rule that UBH abused its discretion because the challenged portions of the Guidelines did not *accurately* reflect GASC," *id.* at 1088, n. 6, and "that the challenged portions of the Guidelines represented UBH's *implementation* of the GASC requirement'" *id.* at 1088 (emphasis in original), the Court does not interpret the language in footnote 7 as identifying as a *separate* error the Court's finding that the Guidelines narrowed the scope of class members' coverage. *See also id.* at 1083 (finding that Plaintiffs had alleged a concrete injury as to their breach of fiduciary duty claim based, in part, on "the risk that their claims [would] be administered under a set of Guidelines that impermissibly narrow[ed] the scope of their benefits."). Rather, the

United States District Court
Northern District of California

1    To understand better the nature of the error the Panel in *Wit III* found in connection with

2    the denial of benefits claim, the Court looks to the two examples the Panel offered in support of its

3    conclusion that this Court made conflicting statements about whether the Plans required coverage

4    coextensive with GASC.  First, the Panel pointed to a statement in this Court's partial

5    decertification order that the Court "described class members as those 'covered by insurance plans

6    that *require coverage consistent with generally accepted standards of care* but were denied

7    coverage by UBH under [the] Guidelines.'" 79 F.4th at 1088 (emphasis added in *Wit III*) (quoting

8    Partial Decertification Order, dkt. no. 490, at 3).[8]

9    Second, the Panel cited the final judgment, in which the Court "directed that on remand,

10   UBH must 're-evaluate only whether the proposed treatment at the requested level of care was

11   consistent with generally accepted standards of care,' even where the denial letter provided

12   independent reasons for the denial of coverage" and  "ordered UBH to pay the claims within 30

13   days" "[i]f the treatment was consistent with GASC." *Id.*   While the first example does not shed

14   significant light on the question, the second example is illuminating because it relates to the

15   remedy the Court awarded to redress harm resulting from the *application* of the Guidelines to the

16   individual class members' coverage determinations. Thus, the Court concludes that to the extent

17   that the breach of fiduciary duty claim is based on application of the Guidelines to individual

18   coverage determinations, the claim is likely "intertwined" with the error that led the Panel to order

19   entry of judgment in favor of UBH on the denial of benefits claim.

20   While UBH contends the breach of fiduciary duty claim is essentially the same as the

21   _____

22   Court concludes that the language in footnote 7 is a shorthand referring to the error described in
     the body of the order, discussed above.
23   [8] The language quoted by the Panel is taken from the following sentence in the Court's partial
     decertification order:

24           [T]he Court concluded [in its Class Certification Order] that "[w]ith
25           respect to the Guideline Classes, the named Plaintiffs who seek to
             represent those classes   . . ., like the members of those classes, are
26           covered by insurance plans that require coverage consistent with
             generally accepted standards of care but were denied coverage by
27           UBH under Guidelines that Plaintiffs allege are more restrictive than
             generally accepted standards of care.

28   Partial Decertification Order, dkt. no. 490, at 3.

denial of benefits claim and that all three theories of breach are "intertwined" with the error

identified by the Panel, the record reflects that Plaintiffs have consistently identified two distinct

types of breach of fiduciary duty: breach based on application of the Guidelines to class members'

claims (the type of breach alleged as to the breach of the duty to comply with plan terms) and

breach based on the separate conduct of *adopting* the Guidelines (the type of breach alleged as to

the breach of the duty of care and the duty of loyalty). Thus, in their post-trial brief, Plaintiffs

made clear that their claims for breach of the duty of care and loyalty did not depend on the

application of the Plans to class members' claims, explaining:

> [The duties of care and of loyalty] are enshrined in ERISA's statutory
> language itself, and they exist independent of plan terms and outside
> any delegation of discretion to interpret plan terms. . . .
>
> As to the duty of loyalty, for example, Plaintiffs' claim is that UBH
> did not act "solely in the interest of the participants and beneficiaries,"
> and instead let its self-interest in minimizing benefit expense infect
> the development of its clinical Guidelines. . . . UBH breached its duty
> of loyalty independent of its interpretation of plan terms. In other
> words, in deciding whether UBH failed to act solely in the interest of
> the participants and beneficiaries, the Court need not decide whether
> UBH's interpretation of plan terms was reasonable; those are two
> separate questions. . . . Similarly, Plaintiffs claim that UBH breached
> its duty of care by, for example, using a fundamentally flawed process
> to develop Guidelines that purported to be consistent with generally
> accepted standards of care – regardless of whether its Guidelines in
> fact unreasonably interpret plan terms.

*Id.* at 74-75.

Likewise, this Court recognized in its summary judgment order that Plaintiffs satisfied the

harm element of their breach of fiduciary duty claim based on two kinds of harm: "the denial of

their rights to Guidelines that were developed for their benefit *and* to a fair adjudication of their

claims." Summary Judgment Order, dkt. no. 286, at 24 (emphasis added). While the Court

recognized these harms in its discussion of standing in its summary judgment order, it expressly

incorporated its conclusions related to harm into its finding in the FFCL that Plaintiffs had

established the "harm" element of their breach of fiduciary duty claim. *See* FFCL ¶ 204.

The Panel also recognized in affirming standing as to both the denial of benefits claim and

the breach of fiduciary duty claim that the latter claim was based not just on the alleged harm

associated with applying the Guidelines to class members' claims for coverage but also harms

30

United States District Court
Northern District of California

1    associated with the adoption of the Guidelines.  79 F.4th at 1083.   In particular, the Panel listed a

2    number of specific harms associated with the breach of fiduciary duty claim  that are independent

3    of the application of the Guidelines to specific claim determinations, including "the  present harm

4    of not knowing the scope of the coverage their Plans provide[,]" which "implicates Plaintiffs'

5    ability to make informed decisions about the need to purchase alternative coverage and the ability

6    to know whether they are paying for unnecessary coverage."  *Id.*

7            The Court notes that it used slightly different wording in the FFCL in describing the harm

8    than it used in the summary judgment order, stating: "As the Court found on summary judgment,

9    the harm that Plaintiffs allege resulted from UBH's breach of fiduciary duty is the denial of their

10   right to fair adjudication of their claims for coverage based on Guidelines that were developed

11   solely for their benefit."  FFCL ¶ 204. UBH proposes a cramped reading of that sentence to argue

12   that the *only* harm the Court found in connection with the breach of fiduciary duty claim was the

13   harm that resulted from the *application* of the Guidelines to individual claim determinations.  That

14   reading ignores, however, the phrase at the beginning of the sentence, making clear that the

15   finding mirrored the Court's conclusion in the summary judgment order, which identified two

16   distinct harms—the harm associated with adopting the Guidelines in a manner that prioritized

17   UBH's financial interests over its fiduciary duty to plan participants and the harm associated with

18   applying the Guidelines to specific claim determinations.  Even apart from the Court's reference to

19   the summary judgment order, the sentence in ¶ 204 quoted above refers to both types of harm,

20   namely "fair adjudication" of class members' claims and the failure to "develop[ ] [Guidelines]

21   solely for their benefit."  Therefore, the Court rejects UBH's argument that the Court's only

22   finding of harm as to the breach of fiduciary duty claim was based on denial of benefits based on

23   application of the Guidelines in adjudicating individual claims.

24           The Court further concludes that because the breach of fiduciary duty claim based on

25   failure to adhere to plan terms implicates the application of the Guidelines to class members'

26   individual claims for benefits, that portion of the breach of fiduciary duty claim is intertwined with

27   the error that the Panel found required reversal as to the denial of benefits claim.  Therefore, the

28   Court finds that the judgment it entered on the breach of fiduciary duty claim has been reversed

with respect to the alleged breach based on failure to adhere to plan terms.  On the other hand, the Court's findings as to the breach of the duty of care and the duty of loyalty are not intertwined with the erroneous interpretation of the Plans identified by the Panel and therefore, the Court's judgment on the breach of fiduciary duty claim survives to the extent that it is based on those theories.

The Court declines Plaintiffs' invitation to adopt new findings of fact based on the evidence presented at trial. While the Panel in *Wit IV* did not expressly preclude such findings, it tasked this Court only with "identifying" the aspects of the breach of fiduciary duty claim that remain.  In *Wit IV*, the Panel made clear that the Court should limit proceedings on remand to addressing the specific issues enumerated by the Panel in *Wit III*.  As there is no suggestion that the Panel intended that the Court would engage in additional fact-finding, the Court declines to do so. Likewise, the Court rejects UBH's invitation to revisit the factual and legal conclusions it reached as to whether Plaintiffs established all of the elements of their breach of fiduciary duty claim. As discussed above, in the FFCL, the Court found that Plaintiffs met these requirements as to all three theories of breach. Furthermore, the Court found that the harm element was satisfied based on both application of the Guidelines to individual coverage determinations and the adoption of the Guidelines that were not solely for plan members' benefit.  The Panel left the Court's findings undisturbed *except* to the extent the claim was intertwined with the error that the Panel found required reversal as to the denial of benefits claim.  Therefore, as to the theories of breach that survive *Wit III*, the elements of the claim have been established and the Court declines to go beyond the mandate to reconsider that question.  Finally, because Plaintiffs have not asked for reprocessing as a remedy on their breach of fiduciary duty claim – and stipulated at the motion hearing that they do not intend to seek that remedy in this case -- the Court does not address whether that remedy is available.

**B.    Whether the Breach of Fiduciary Duty Claim is Subject to Exhaustion Requirement**

**1.    Contentions of the Parties**

a.    Plaintiffs' Opening Brief

Plaintiffs argue in their opening brief that their breach of fiduciary duty claim is not subject to exhaustion because it is "black-letter law in this Circuit . . .  that 'exhaustion is not required for statutory breach of fiduciary duty claims' under ERISA."  Plaintiffs' Opening Brief at 24 (citing *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc*., 770 F.3d 1282, 1294 (9th Cir. 2014) ("*Spinedex*"); *Guenther v. Lockheed Martin Corp*., 972 F.3d 1043, 1052 (9th Cir. 2020); *Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1416 n. 1 (9th Cir.1991), overruled on other grounds; *Fujikawa v. Gushiken*, 823 F.2d 1341, 1345 (9th Cir. 1987)).  According to Plaintiffs, statutory claims require "only interpretation of ERISA[,]" which " ' "is a task for the judiciary." ' "  *Id.* at 24-25 (quoting *Graphic Commc'ns Union Dist. Council No. 2, AFL–CIO v. GCIU–Employer Ret. Ben. Plan*, 917 F.2d 1184, 1187 (9th Cir. 1990) (quoting *Amaro v. Cont'l Can Co*., 724 F.2d 747, 751 (9th Cir. 1984))).

Plaintiffs recognize that where a statutory claim is a "disguised claim for benefits," it is subject to exhaustion, but assert that their claim for breach of fiduciary duty does not fall under this exception.  *Id*. at 24-29.   They contend their position is supported by *Diaz v. United Agr. Emp. Welfare Ben. Plan & Tr*., 50 F.3d 1478, 1484 (9th Cir. 1995) and *Spinedex*, both of which were cited in *Wit III* on the issue of exhaustion.  *Id.*; s*ee also Wit III*, 79 F.4th at 1089.   According to Plaintiffs, in *Diaz*, the court found that the plaintiff's claim, which was based on failure to cover treatment that the defendant found fell within a preexisting condition exclusion, was a disguised claim for benefits, even though "one of Diaz's arguments for disregarding the plan's pre-existing condition exclusion was that the plan had violated [a] statutory COBRA notice provision."  Plaintiffs' Opening Brief at 25 (citing *Diaz*, 50 F.3d at 1483).  Plaintiffs assert that because "the statutory COBRA violation did not entitle Diaz to the relief he was seeking with regard to the denial of his claim for benefits [ ] the district court still could not have granted any relief to Diaz without agreeing with him about how the plan terms applied to the facts of his case, thus implicating the rationale for exhaustion of plan-based claims."  *Id.*

Plaintiffs contrast the conclusion in *Diaz* with *Spinedex*, in which the court found that the plaintiffs' statutory ERISA claims against United Healthcare were *not* disguised claims for benefits. *Id.* at 26-27.   According to Plaintiffs, in that case the plaintiffs in their Second Amended Complaint "alleged that United breached its fiduciary duties by 'engag[ing] in systematic violations' of ERISA that deprived the plaintiffs of a fair process . . . and by engaging in prohibited transactions in violation of ERISA" and that they asserted a separate claim for denial of benefits. *Id.*   at 26 (citing Ex. 1, dkt. 661-1 (*Spinedex* SAC) at 35-45). Plaintiffs assert, "[t]he *Spinedex* court had no difficulty rejecting United's attempt to recast the breach of fiduciary duty claim as a 'disguised claim for benefits,' emphasizing that the 'statutory violations' alleged in that case 'were willful and systematic,' and that the plaintiff 'sought injunctive relief that clearly will benefit the Plans.' " *Id*. (quotations omitted).   The holding in *Spinedex*  is directly on point here, Plaintiffs contend, "where UBH similarly committed 'statutory violations' that 'were willful and systematic,' by adopting, as its standard clinical criteria for interpreting and applying the GASC Requirement, Guidelines that it deliberately designed to be overly restrictive and inconsistent with GASC solely to benefit itself, and at the expense of its insureds, and then lied about it to everyone." *Id.*

Plaintiffs argue further that "[i]njunctive relief to force UBH to interpret and apply the GASC Requirement using criteria that comply with GASC, and to compel UBH to alter its Guideline-development process to eliminate the improper influence of its financial personnel over clinical judgments . . .  is appropriate for redressing the statutory violations in a manner benefiting all the beneficiaries of the plans." *Id.*  at 27.  Moreover, Plaintiffs contend, "[b]oth the specifics of the fiduciary breaches Plaintiffs proved, and the nature of the relief Plaintiffs seek, are separate and apart from any claim for benefits and neither is tied to the application of any plan terms to the facts of any particular benefit determination." *Id.*   Therefore, Plaintiffs argue, "[e]xhaustion does not apply to Plaintiffs' fiduciary duty claims in this action." *Id.*

Plaintiffs also point to decisions from other Circuits that they contend "similarly distinguish between claims genuinely seeking redress for statutory violations and individual claims for monetary relief based on coverage of a particular claim for benefits under a plan." *Id.*

at 27-28.  In particular, they point to *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821 (1st Cir. 1988), *Harrow v. Prudential Ins. Co.*, 279 F.3d 244, 254 (3d Cir. 2002), *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999), *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998) and *Hill v. Blue Cross & Blue Shield of Michigan*, 409 F.3d 710 (6th Cir. 2005). *Id.* at 27-28. Plaintiffs contend their breach of fiduciary duty claims "fall well within the usual rule for statutory claims" and that their claims fall under *Spinedex* and not *Diaz*. *Id.* at 28.

In a footnote, Plaintiffs state that *if* the Court concludes that Plaintiffs' breach of fiduciary duty claim is subject to exhaustion, "Plaintiffs will request the opportunity to demonstrate in further briefing that the Court was correct in ruling that 'any exhaustion required of class members is excused' because the named Plaintiffs' exhaustion satisfied 'the purposes of UBH's internal grievance procedure' and because 'exhaustion would have been futile,' FFCL ¶¶ 190-92, and that the absent class members' exhaustion should be excused for additional reasons as well." *Id.* at 29 n. 17.

### b.   UBH Opening Brief

UBH argues that even if Plaintiffs' breach of fiduciary duty claim survives, Plaintiffs were required to exhaust their administrative remedies before initiating litigation. UBH Opening Brief at 25 (citing *Amato v. Bernard*, 618 F.2d 559, 566–68 (9th Cir. 1980)).  UBH contends this requirement "arises from two distinct sources: from the judicial construction of ERISA (*i.e.*, the "prudential" exhaustion requirement) and, in relevant cases, the contractual terms of the members' plan itself." *Id.* (citing *Conley v. Pitney Bowes*, 34 F.3d 714, 716 (8th Cir. 1994)). According to UBH, "any surviving breach of fiduciary duty claim would be subject to prudential exhaustion requirements that each class member was obligated to fulfill before asserting an ERISA claim in court." *Id.*  In addition, UBH contends, it is undisputed that "at least some class members were enrolled in Plans containing contractually mandated exhaustion requirements, separate from any prudential requirement that might otherwise apply" and that "[m]any class members . . . did not avail themselves of the administrative remedies available to them under their

Plans." *Id.* (citing FFCL ¶ 192[9]; Trial Ex. 1655).

UBH argues that "prudential exhaustion" applies to Plaintiffs' breach of fiduciary duty claim because it is "at its core, a plan-based claim relating to benefits and grounded in interpretation of plan terms" and therefore it is a disguised claim for benefits "rather than a purely statutory claim." *Id.* at 25-27. According to UBH, "[w]hether under *Diaz, Harrow,* or even cases like *Smith,* Plaintiffs' breach of fiduciary duty claim cannot avoid ERISA exhaustion requirements because it is not only 'related to' a denial of benefits, *Smith,* F.3d at 363, it is inextricably intertwined with Plaintiffs' denial of benefit claim based on the same conduct and theory of harm." *Id.* at 27. UBH argues that the "heart" of Plaintiffs claim is whether UBH correctly interpreted and applied the Plans' terms concerning medical necessity and generally accepted standards of care[,]" a question to which the Court "devoted paragraphs of its FFCL[.]" *Id.* (citing FFCL ¶¶ 52–156). Therefore, they contend, exhaustion is required for all class members. *Id.* In a

---

[9] Paragraph 192 states:

> UBH's witnesses testified that members' Plans vary with the respect to the administrative appeals that are available to them. See, e.g., Trial Tr. 839:6-8 (Dehlin) (Plans vary with respect to appeal rights); Trial Tr. 948: 22-949:6 (Martorana) (some Plans provide for an independent external appeal). Many class members from the Claim Sample pursued administrative appeals of UBH's denial of benefits. See Trial Ex. 1655 (summary exhibit for Claim Sample). However, UBH offered evidence that some class members who did not exhaust available administrative remedies were required under their Plans to exhaust those remedies before they could bring a legal action against UBH. See, e.g., Trial Ex. 1535-0057 (plan for class member 659) (providing that "[y]ou cannot bring any legal action against us to recover reimbursement until you have completed all the steps [described in the plan]"); Trial Ex. 1557-0084 (plan for class member 6600) (requiring exhaustion of administrative remedies both as to claims for reimbursement and as to claims "for any other reason"); Trial Ex. 1583-0085 (plan for class member 12605) (same); Trial Ex. 1633-0090 (plan for class member 7292) (same); Trial Ex. 1655 (summary exhibit showing that these class members did not file administrative appeals). Because the Court finds that any exhaustion required of class members is excused, and further finds that exhaustion would have been futile, it need not reach the question of whether the terms of any specific class member's Plan required exhaustion of administrative remedies as to the claims asserted in this action; nor does it decide whether UBH preserved any exhaustion defense it may have had as to these members by providing them adequate notice of internal appeal requirements and of their right to bring a civil action. *See Bechtol v. Marsh & McLennan Cos., Inc.,* No. C07-1246 MJP, 2008 WL 238588, at *4 (W.D. Wash. Jan. 28, 2008) (deeming ERISA claims exhausted based on employer's failure to provide proper notice to employee of internal grievance procedure and right to bring civil action).

FFCL ¶ 192.

United States District Court
Northern District of California

footnote, UBH also notes that "Plaintiff's claim for breach of fiduciary duty was principally asserted under 29 U.S.C. § 1132(a)(1)(B), which the Supreme Court has emphasized is inextricably 'bound up with the written instrument' of the plan." *Id.* at 27 n. 10 (citing *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013)).

UBH argues that in addition to the prudential exhaustion requirement, many class members are bound by provisions in their Plans requiring exhaustion and these provisions must be enforced. *Id.* at 28 (citing *Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan*, 111 F.3d 67, 70 (8th Cir. 1997); *Conley*, 34 F.3d at 716; *Heimeshoff*, 571 U.S. at 108). UBH contends, in particular, "that many of the Plans contained express, binding terms requiring the exhaustion of available administrative remedies before filing *any* ERISA-based action in court." *Id.* (citing FFCL ¶ 192) (emphasis added). As an example, they point to the requirements in Class Member 6600's plan, which "made clear that plan members could not bring 'any legal action . . . to recover reimbursement' until 90 days after a claim was submitted and 'all required reviews of [the] claim [were] completed[ ]' " and went on to state, in the next paragraph, "that members also were barred from bringing a legal action 'for any other reason unless [the member] first complete[d] all steps in the appeal process described in this section.' " *Id.* (quoting Trial Ex. 1557-0084). According to UBH, Class Member 6600 did not, in fact, exhaust these required administrative remedies. *Id.* (citing Trial Ex. 1655-002). Furthermore, it asserts, of the 100 sample class members, 30 had plans with "an identical exhaustion requirement as Class Member 6600, and 26 of those members failed to exhaust administrative appeals requirements." *Id.* at 28-29 (citing Declaration of Andrew J. Holmer ("Holmer Decl."), Exhibit 1). UBH further asserts that "at least 82 sample member plans had some exhaustion requirements, and only 10 sample members exhausted." *Id.* at 29 (citing Holmer Decl.). UBH contends Plaintiffs have ignored these contractual exhaustion requirements. *Id.* at 29.

UBH further asserts that these unnamed class members' contractual obligations may not be excused based on the fact that named Plaintiffs exhausted their administrative remedies. *Id.* (citing *Schmookler v. Empire Blue Cross & Blue Shield*, 107 F.3d 4 (2d Cir. 1997); *Stephens v. U.S. Airways Grp., Inc.*, 2012 WL 13054263, at *3 (D.D.C. July 18, 2012). In addition, UBH

asserts, excusing class members' exhaustion obligations on this ground this would "represent an enlargement of a 'substantive right' and run afoul of the Rules Enabling Act. 28 U.S.C. § 2072(b)." *Id.* at 29.

Likewise, UBH asserts, futility only excuses prudential exhaustion; it does not excuse contractually required exhaustion. *Id.* Therefore, class members subject to contractual exhaustion requirements cannot claim futility. *Id.* at 30 (citing *Noren v. Jefferson Pilot Fin. Ins. Co.*, 378 F. App'x 696, 698 (9th Cir. 2010); *Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1444 (9th Cir. 1995); *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992)). Furthermore, UBH argues, Plaintiffs have not met their burden of proof with respect to proving futility. *Id.* According to UBH, Plaintiffs cannot meet that burden as the evidence presented at trial shows that UBH's administrative appeals process resulted in initial denials being overturned and benefits being approved for numerous class members." *Id.* (citing Trial Tr. 1504:8–1505:4 (Bridge); Trial Ex. 1655 (summary chart showing appeals filed by sample class members and initial claim denials overturned on appeal)).

Finally, UBH argues that Plaintiffs have not confronted these issues and contends Plaintiffs have waived their right to present any further argument addressing the exhaustion issue by failing to brief them, as was required under the parties' scheduling stipulation. *Id.* at 31.

### c.  Plaintiffs' Reply Brief

In their reply brief, Plaintiffs reject what they contend is a "false distinction between what [UBH] calls 'prudential,' as opposed to 'contractual,' exhaustion requirements to argue that while Plaintiffs' breach of fiduciary duty claim is only subject to 'prudential' requirements if it is really a 'disguised claim for benefits,' . . . 'contractual' exhaustion requirements are absolute and apply even to statutory ERISA claims." Plaintiffs' Reply Brief at 12 (citing UBH Opening Brief at 25-26, 28-29).  In fact, Plaintiffs contend, "*all* ERISA exhaustion is based on the enforcement of plan provisions requiring exhaustion as a matter of contract." *Id.* at 12-13 (emphasis in original). According to Plaintiffs, "[t]hat is why the Ninth Circuit describes enforcement of 'a plan's own internal review procedures' as its 'prudential exhaustion requirement.' " *Id.* at 13 (citing *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008)). Thus, Plaintiffs

contend, "when the Ninth Circuit has held, over and over again for decades, that exhaustion is not required for statutory ERISA claims, including breach of fiduciary duty, it was necessarily referring to *contractual* exhaustion requirements set forth in ERISA plans." *Id.* (citing *Wit III*, 79 F.4th at 1089; *Spinedex*, 770 F.3d at 1294; *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1052 (9th Cir. 2020); *Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1416 n. 1 (9th Cir.1991), overruled on other grounds as recognized by *Pac. Shores Hosp. v. United Behav. Health*, 764 F.3d 1030, 1041 (9th Cir. 2014); *Fujikawa v. Gushiken*, 823 F.2d 1341, 1345 (9th Cir. 1987); *Graphic Commc'ns Union, Dist. Council No. 2, AFL–CIO v. GCIU–Employer Ret. Ben. Plan*, 917 F.2d 1184, 1187 (9th Cir. 1990); *Amaro v. Cont'l Can Co.*, 724 F.2d 747, 751 (9th Cir. 1984)). Plaintiffs assert that UBH ignores all of this case authority. *Id.*

Plaintiffs contend UBH's reliance on "two Eighth Circuit opinions for the proposition that there is some freestanding judge-made requirement to exhaust administrative remedies that is somehow distinct from 'the contractual terms of the members' plan' " is misplaced. *Id.*at n. 12 (citing UBH Opening Brief at 25 (citing *Conley v*, 34 F.3d at 716 )); *id.* at 28 (citing *Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan*, 111 F.3d 67, 70 (8th Cir. 1997)). According to Plaintiffs, "the Eighth Circuit itself rejected that argument in 2023, explaining, 'a review of our cases confirms that the requirement that a plan participant first exhaust her administrative remedies before bringing an ERISA suit has consistently been premised on such remedies being expressly prescribed in the participant's written plan documents.' " *Id.* (quoting *Yates v. Symetra Life Ins. Co.*, 60 F.4th 1109, 1113 (8th Cir. 2023)). Furthermore, Plaintiffs assert, "[e]ven *Conley*, on the same page UBH cites, says, '[w]e have required exhaustion in ERISA cases only when it was required by the particular plan involved.' " *Id.* (citing 34 F.3d at 716).

Plaintiffs further assert that UBH's reliance on *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99 (2013), is misplaced because that case "was not even about exhaustion, let alone whether plan exhaustion requirements apply to statutory ERISA claims." *Id.* at 14. In any event, Plaintiffs assert, *Heimeshoff* is consistent with their position because in it, the Court "recognized that contractual provisions cannot nullify statutory rights of action, which is why

39

benefits claims based on contracts can be conditioned on exhaustion of plan remedies, but statutory claims cannot." *Id.* (citing 571 U.S. at 108-09).

Plaintiffs argue that UBH mischaracterizes its breach of fiduciary duty claim in its argument that that claim is a disguised claim for benefits. *Id.* at 14-15. In particular, they assert that UBH selectively quotes from Paragraph 203 of the FFCL to suggest that the claim was based solely on UBH's failure " 'to comply with plan terms by adopting Guidelines that [were] unreasonable and [did] not reflect generally accepted standards of care.' " *Id.* (quoting UBH Opening Brief at 26) (quoting FFCL ¶ 203)). According to Plaintiffs, UBH does not address the Court's findings in the same paragraph that it "*also* breached its duties of loyalty and care, as well as the reference to the factual basis for those conclusions." *Id.* at 14 (emphasis in original) (citing FFCL ¶ 203).

Plaintiffs argue further that UBH is wrong with respect to its assertion that their fiduciary duty claim based on failure to comply with plan terms is subject to exhaustion. *Id.* at 15. Plaintiffs contend that in this case, "[a]s in *Spinedex*, Plaintiffs' claim challenges a 'willful and systematic' displacement of the applicable plan term that applied across-the-board, not a particular application of plan terms to an individual benefit claim." *Id.* (quoting 770 F.3d at 1294 (cleaned up)). According to Plaintiffs, UBH ignores *Spinedex*. *Id.* Plaintiffs also argue that *Harrow*, upon which UBH relies, is not on point because "[t]he plaintiff in *Harrow* was asserting a particular claim for benefits under a plan, not challenging a 'willful and systematic' violation of a statutory duty as Plaintiffs do here." *Id.*

According to Plaintiffs, "[t]he heart of UBH's argument is the specious assertion that any breach of fiduciary duty claim that is 'related to' a denial of benefits' in any way is necessarily a 'disguised benefit claim.' " *Id.* at 15 (citing UBH Opening Brief at 27)(quoting *Smith v. Sydnor*, 184 F.3d 356, 363 (4th Cir. 1999)). But Plaintiffs contend "no case holds that— not even the case UBH relies on for that proposition." *Id.* In *Syndor*, Plaintiffs assert, the court held that "exhaustion is required 'where the basis of the claim is a plan administrator's denial of benefits or an action by the defendant *closely* related to the plaintiff's claim for benefits, such as withholding of information regarding the status of benefits.' " *Id.* (quoting *Syndor*, 184 F.3d at 362) (emphasis

added in Plaintiffs' brief). Plaintiffs argue that the example in *Syndor* of what is "closely related" to a claim for benefits indicates that " 'closely related' actions are those directly concerning a particular benefit denial." *Id.* Plaintiffs assert that *Syndor* "did not suggest that all actions relating in any way to benefit denials writ large—even the development of standardized coverage criteria to use in place of plan terms for all plans— somehow become 'disguised benefit claims.' " *Id.* at 16.

Plaintiffs argue that they have not waived any arguments about whether exhaustion was satisfied or excused and that they did not stipulate that they would address that question in their opening brief. *Id.* at 16. Rather, they "merely acknowledged in a scheduling stipulation that that was a question conditionally before the Court on remand." *Id.* (citing Stip. and Order Regarding Proposed Briefing Schedule, dkt. no. 657). Nonetheless, Plaintiffs contend they "did set forth their position that the Court should reinstate its prior rulings on those issues" in their opening brief. *Id.*

Plaintiffs reiterate their position that in the Ninth Circuit, "exhaustion of administrative remedies by a class representative suffices for the class." *Id.* at 16-17 (citing *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1202 (9th Cir. 2016); *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8 (1975); Newberg and Rubenstein on Class Actions § 5:15 (4th ed. 2024)). They further contend district courts in the Ninth Circuit have applied that rule to ERISA class actions. *Id.* at 17 (citing *Hendricks v. Aetna Life Ins. Co.*, 339 F.R.D. 143, 149 n.2 (C.D. Cal. 2021); *DeLeon v. Standard Ins. Co.*, No. 2:15-cv-07419-ODW(JC), 2016 WL 768908, at *4 (C.D. Cal. Jan. 28, 2016); *Barnes v. AT & T Pension Benefit Plan–Nonbargained Program*, 270 F.R.D. 488, 494 (N.D. Cal. 2010); *Moyle v. Liberty Mut. Ret. Benefit Plan*, No. 10CV2179 DMS (BLM), 2012 WL 13149097, at *8 (S.D. Cal. Apr. 10, 2012)). According to Plaintiffs, two Circuit courts have agreed that in ERISA cases, absent class members are not required to exhaust administrative remedies if named plaintiffs have exhausted and no Circuits have disagreed. *Id.* (citing *In re Household Int'l Tax Reduction Plan*, 441 F.3d 500, 502 (7th Cir. 2006); *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1193 n.5 (10th Cir. 2007)).

Plaintiffs argue that the Court should also affirm its previous finding that exhaustion is

41

1    excused on the basis of futility. *Id.* at 17-18. According to Plaintiffs, UBH did not challenge the

2    Court's factual findings on this question on appeal and the Panel did not find them clearly

3    erroneous and therefore, those findings are binding as law of the case. *Id.* For this reason, UBH's

4    argument that Plaintiffs did not meet their burden of proof on this question fails, Plaintiffs assert.

5    *Id.* at 18. To the extent that UBH offers evidence that exhaustion was *not* futile because some

6    Plan participants successfully challenged their denials in administrative appeals, Plaintiffs contend

7    that evidence misses the point because it does not establish that "any participant could have

8    challenged, in internal appeals, UBH's adoption of the Guidelines as its standard for evaluating

9    whether treatment satisfied the GASC precondition." *Id.* at 18. To the contrary, Plaintiffs assert,

10   "reviewers were bound to follow the Guidelines, including when deciding appeals[,]" as this Court

11   found in the FFCL. *Id.* (citing FFCL ¶ 191).

12       Plaintiffs also reject UBH's argument that futility does not excuse failure to satisfy

13   contractual exhaustion requirements, asserting that this argument is based on UBH's false

14   distinction between prudential and contractual exhaustion. *Id.* at 18-19.

15                    d.   UBH Sur-Reply

16       In its Sur-Reply, UBH argues that the distinction it draws between "prudential" and

17   "contractual" exhaustion is valid as the former is based on a judge-made doctrine requiring

18   exhaustion where a plan has established an administrative appeal process (but does not explicitly

19   require that plan participants use the process before initiating litigation) whereas as the latter

20   applies when a plan expressly requires that a member must go through the administrative appeal

21   process before bringing a lawsuit. UBH Sur-Reply at 13-14. According to UBH, "[t]he cases

22   espousing the prudential exhaustion doctrine nowhere state that the doctrine displaces or

23   supersedes an express exhaustion requirement written into a benefits plan as a term of the contract

24   between the plan and the plan participant." *Id.* at 14. UBH argues further that ignoring express

25   language in the plan would run counter to the Supreme Court's holding in *Heimeshoff* "that '[t]he

26   plan, in short, is at the center of ERISA'" and therefore contractual provisions "ordinarily should be

27   enforced as written." *Id.* (quoting *Heimeshoff,* 571 U.S. at 108).

28       Furthermore, UBH asserts, "[n]one of Plaintiffs' cases support tossing aside the Plans'

United States District Court
Northern District of California

1    contractual terms." *Id*. at 15-16 (asserting that UBH's position is supported by *Yates v. Symetra*

2    *Life Ins. Co*., 60 F.4th 1109, 1113 (8th Cir. 2023); *Vaught*, 546 F.3d at 626-27; and *Spinedex*, 770

3    F.3d at 1299). UBH also reiterates its arguments that prudential exhaustion applies because

4    Plaintiffs' claim "is premised upon the same theory of harm, same conduct related to interpretation

5    of the plans, and even the same class definition as the denial of benefits claim." *Id*. at 17.

6    　　　UBH rejects Plaintiffs' argument that the failure of absent class members to exhaust their

7    administrative remedies is excused, observing that Plaintiffs have cited no Ninth Circuit authority

8    on this question. *Id*. at 18 (citing Plaintiffs' Reply Brief 16-17). According to UBH, Plaintiffs'

9    "district court and out-of-circuit precedents do not help their case because they are inapposite,

10   based on dubious reasoning, or both." *Id*. at 18-19. UBH also argues that the Court's findings

11   about futility in the FFCL are not law of the case because the Panel in *Wit II* "found that neither

12   futility nor any other exception to prudential exhaustion applied" and "nothing in *Wit III* directly

13   or indirectly repudiates that prior conclusion given the uncontested fact that 'some beneficiaries

14   successfully appealed the denial of their benefit claims[.]' " *Id*. at 19-20 (citing *Wit II*, 58 F.4th

15   1080, 1098 (9th Cir. 2023)). Finally, UBH reiterates its position that "futility is a judicially-

16   created doctrine that can apply only to cases involving the prudential exhaustion requirement,

17   rather than plan-mandated ones." *Id*. at 20 (citing *Noren v. Jefferson Pilot Fin. Ins. Co*., 378 F.

18   App'x 696, 698 (9th Cir. 2010)).

19   　　　　　**2.  *Spinedex* and *Diaz***

20   　　　In *Wit III*, the Panel recognized that "exhaustion is not required for statutory breach of

21   fiduciary duty claims" "[b]ut exhaustion *is* required if a plaintiff's statutory claim is a disguised

22   claim for benefits," citing *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc*.,

23   770 F.3d 1282, 1288 (9th Cir. 2014) and *Diaz v. United Agr. Emp. Welfare Ben. Plan & Tr*., 50

24   F.3d 1478, 1484 (9th Cir. 1995). 79 F.4th at 1089. Those cases are discussed below.

25   　　　　　　*a.  Spinedex*

26   　　　*Spinedex* involved the denial of claims submitted by healthcare provider Spinedex on

27   behalf of patients who were covered by health plans administered by United Healthcare. 770 F.3d

28   at 1287. Spinedex and two patients (Adams and Aragon) filed suit under ERISA alleging

United States District Court
Northern District of California

improper denial of benefits and breach of fiduciary duty. *Id.* at 1288. The court found that Spinedex had Article III standing to pursue the denial of benefits claim as to the claims of patients who had assigned their claims to Spinedex but that that standing did not encompass the breach of fiduciary claim because the assignments only covered the right to seek payment for services provided by Spinedex. *Id.* at 1291-92. The court found that Adams' claims was untimely and therefore failed. *Id.* at 1293-94. The court held that Aragon, whose breach of fiduciary duty claim had been dismissed by the district court for failure to exhaust, was not required to exhaust that claim. *Id.* at 1294.

The Court of Appeals in *Spinedex* reasoned as follows:

> The district court denied Aragon's claim on the ground that he had not exhausted his administrative appeals. However, as a general rule, exhaustion is not required for statutory claims like Aragon's. See *Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1416 n. 1 (9th Cir.1991). Defendants argue that exhaustion is required because Aragon's statutory claim is no more than a "disguised" benefit claim. *See Diaz*, 50 F.3d at 1484 (rejecting the argument that an ERISA claimant can "attach a 'statutory violation' sticker to his or her [denial of benefits] claim and then ... use that label as an asserted justification" for failure to exhaust). But that is not so. As the district court found, United's alleged statutory violations were "willful and systematic, as contemplated in *Massachusetts Mutual [Insurance Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)]," and Aragon's complaint sought injunctive relief that "clearly will benefit the Plans." Aragon's statutory claim thus is not a "disguised" claim for benefits, and he need not have exhausted. We therefore reverse the district court's dismissal of Aragon's claim for breach of fiduciary duty.

*Id.* at 1294.

The Court of Appeals did not provide a detailed discussion of the allegations supporting Aragon's breach of fiduciary duty claim but the district court's discussion of the "willful and systematic" violations cited by the Ninth Circuit provides some additional information about the nature of Aragon's breach of fiduciary duty claim. In particular, the district court found that United's "alleged improper denial of claims and negligent delegation of administrative duties . . . were willful and systematic[,]" pointing to allegations in the complaint that United engaged in a "systematic effort . . . to improperly delay or deny benefit claims filed by Plan participants and beneficiaries . . . .[and] delegated administration of the Plans' provider compensation rates to a

third party with the intent to miscalculate the rates and insufficiently compensate providers for properly performed services." *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.*, 661 F. Supp. 2d 1076, 1092 (D. Ariz. 2009), on reconsideration in part, No. CV-08-0457-PHX-ROS, 2009 WL 2710151 (D. Ariz. Aug. 26, 2009); *see also* dkt. no. 661-1 (*Spinedex* Second Amended Complaint at 36 (alleging that United had "engaged in systematic violations of the [ERISA regulation that establishes minimum requirements for procedures pertaining to claims for benefits made under group health plans] in connection with their administration of the [plaintiffs' health] Plans" and listing specific violations)).

On the question of exhaustion, the court in *Spinedex* also addressed whether some of Spinedex's claims were "barred due to a failure to exhaust administrative remedies" and the district court's alternative holding that even if Spinedex had Article III standing, "many individuals did not exhaust their administrative remedies for their benefit denial claims." 770 F.3d at 1298. Among other things, the plaintiffs argued that "because a number of patients' plans did not expressly require exhaustion, those claims should not now be barred for failure to exhaust." *Id.* The court agreed, explicitly adopting the rule that where the administrative appeals process under the plan is "optional" a claimant need not exhaust that process. *Id.* at 1299. The court remanded for a "claim-by-claim analysis" of exhaustion of Spinedex's claims. *Id.*

### b. *Diaz*

In *Diaz*, the court reached the opposite conclusion, finding that the plaintiffs' claim in that case was not a statutory claim but instead, was a claim for benefits that required exhaustion. In that case, the plaintiffs were a married couple (the Diazes) who received their health insurance through the employer of the husband (Mario). 50 F.3d at 1481. Mario was an agricultural worker and experienced a gap in his health insurance coverage when he was laid off and subsequently rehired by the same employer. *Id.* at 1481-82. There was a dispute about whether Mario received notice of his right to obtain interim health insurance during that period, as required under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). *Id.* Mario contends he did not receive a notice within the time period required under COBRA, 29 U.S.C. § 1166(c), while the employee benefit plan that administered his coverage claims he did. *Id.* at 1482. During the two-

month period when the Diazes' insurance had lapsed, their daughter was diagnosed with leukemia, from which she died less than a year later.  *Id.*   The plan refused to cover her medical care, however, on the basis of a preexisting condition exclusion.  *Id.*   The Diazes did not exhaust their administrative remedies under the plan before they filed a lawsuit against Mario's employer and the health benefit plan.  *Id.* The district court found on summary judgment that the Diazes' claims failed because they had not exhausted the plan's internal administrative remedies and the Ninth Circuit affirmed.  *Id.*  at 1483-84.

The Court of Appeals rejected the Diazes' argument that "because their action [was] premised on the Plan's failure to comply with the statutory requirements of Section 1166, [the] Diazes were excused from seeking administrative review."  *Id.* at 1483.  The court explained:

> [The Diazes] point to *Amato v. Continental Can Co.*, 724 F.2d 747, 750–53 (9th Cir.1984) and *Zipf v. American Telephone & Telegraph*, 799 F.2d 889, 891–94 (3rd Cir.1986) as purportedly standing for the proposition that ERISA's usual exhaustion requirements do not apply where a claimant's action is based on a statutory violation.
>
> But that characterization seriously overstates the holdings in those cases. Both *Amato* and *Zipf* dealt with claimed violations of Section 1140, which prohibits interference with or discrimination against an employee's exercise or attainment of plan benefits. Neither case involved an individual's claim for plan benefits under a particularized set of facts—the kind of scenario that is presented here and that has led this and other Circuits to establish the claimant's need to go the administrative route first rather than turning directly to the courts.

*Id.*  The court recognized that "many employee claims for plan benefits may implicate statutory requirements imposed by ERISA or COBRA (or perhaps other statutes, for that matter)," which courts eventually may be called upon to consider, "[b]ut that prospect does not give a claimant the license to attach a 'statutory violation' sticker to his or her claim and then to use that label as an asserted justification for a total failure to pursue the congressionally mandated internal appeal procedures."  *Id.*  at 1484.

### 3.  Out-of-Circuit Authority

As discussed above, Plaintiffs point to authority from other Circuits that they contend distinguish between true statutory claims and individual claims for monetary relief based on coverage of a particular claim for benefits under a plan.  UBH challenges Plaintiffs'

characterization of two of these cases, which are discussed below.

         a.   *Harrow v. Prudential Ins. Co*.,

In *Harrow*, Stanley Harrow was insured under his wife Debra's health insurance plan. 279 F.3d 244, 246 (3d Cir. 2002). His doctor prescribed Viagra and Stanley filled the prescription, but the pharmacy told him his insurance did not cover the drug and when Debra called the plan's claims department to inquire about coverage she was told that Viagra was a new drug and therefore was not covered. *Id.* The Harrows never filled the prescription again or made any further requests for coverage from the plan for it. *Id.* A few months after Stanley was denied coverage, the plan "adopted a blanket policy denying coverage for Viagra." *Id.* at 252. "But at the time Mr. Harrow filed suit it was unclear and uncertain whether [the plan] would automatically bar coverage." *Id.* Stanley filed an ERISA lawsuit a month after coverage was denied, asserting claims for denial of benefits and breach of fiduciary duty. *Id.* at 247. When Stanley died, his wife substituted in as plaintiff. *Id.* at 247. Both claims were dismissed on summary judgment for failure to exhaust administrative remedies and the Third Circuit affirmed on appeal. *Id.*

In addressing whether Debra's breach of fiduciary duty claim was subject to exhaustion, the court rejected her argument that the claim was not subject to exhaustion because she was "asserting statutory rights under ERISA § 404, 29 U.S.C. § 1104(a)." *Id.* at 252. The court of appeals agreed with the district court that "the fiduciary duty claim merely recast the benefits claim in statutory terms and was still subject to the exhaustion doctrine." *Id.*

The court explained:

> Plaintiffs cannot circumvent the exhaustion requirement by artfully pleading benefit claims as breach of fiduciary duty claims. *Drinkwater v. Metro. Life Ins. Co*., 846 F.2d 821, 826 (1st Cir.1988) (exhaustion doctrine would be "rendered meaningless" if plaintiffs were allowed to bypass exhaustion by artfully dressing contract claims in statutory clothing). When the facts alleged do not present a breach of fiduciary duty claim that is independent of a claim for benefits, the exhaustion doctrine still applies. *See Smith*, 184 F.3d at 363 (independent fiduciary duty claim established where plaintiffs alleged that defendants sold preferred stock at undervalued prices); *Diaz*, 50 F.3d at 1484–85 (discussing applicability of exhaustion where plaintiffs alleged that plan's failure to notify them in Spanish was a statutory breach). A claim for breach of fiduciary duty is "actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan

United States District Court
Northern District of California

rather than upon an interpretation and application of ERISA." *Smith*, 184 F.3d at 362.

*Id.* at 253-54.

The court in *Harrow* further highlighted the following allegation in the complaint in support of its conclusion:

> In failing to insure that plaintiff and members of the class were furnished with coverage under the Plans for their Viagra prescriptions, defendants have failed to discharge their duties: (a) solely in the interest of the Plan participants and beneficiaries and for the exclusive purpose of providing benefits to the participants and beneficiaries; (b) with the requisite care and skill required of ERISA fiduciaries; and (c) in accordance with the documents and instruments governing the Plan.

*Id.* at 254 (quoting *Harrow v. Prudential Ins. Co. of Am.*, 76 F. Supp. 2d 558, 565 (D.N.J. 1999), aff'd, 279 F.3d 244 (3d Cir. 2002) (quoting complaint)). The court found that this language "itself demonstrate[d] that Mrs. Harrow's claim was actually premised on the plan administrators' failure to furnish plaintiff with insurance coverage for Viagra." *Id.* Although "Mrs. Harrow attempt[ed] to bolster her argument that the fiduciary duty claim is 'independent' by arguing for the first time on appeal that [the plan] failed to issue a written denial of benefits as required under 29 U.S.C. § 1133(1)[,]" the court was not persuaded, citing the language in *Diaz* (quoted above) recognizing that while a claim may "implicate statutory requirements imposed by ERISA," that does not necessarily convert the claim into a statutory claim that is not subject to exhaustion. *Id.* (quoting *Diaz*, 50 F.3d at 1484).

### b. *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999)

In *Smith*, the Court of Appeals reached the opposite conclusion, finding that the district court had erred in dismissing a breach of fiduciary duty claim for failure to exhaust. That case involved an employee's claim under ERISA that the company's CEO and majority stockholder (Syndor) had breached his fiduciary duty with respect to management of the company's 401(k) plan by engaging in "self-dealing and imprudent conduct and underselling Plan assets for personal profit." 184 F.3d at 361. The district court found, based on *Simmons v. Willcox*, 911 F.2d 1077 (5th Cir.1990), and *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821 (1st Cir.1988), that the plaintiff's breach of fiduciary duty claim was a disguised claim for benefits because the plaintiff

sought to recover the difference between the amount "he received [on his shares] when he left his employment" and the amount he would have received absent the alleged misconduct. *Id.* The Court of Appeals disagreed.

The court explained:

> We interpret *Drinkwater* and *Simmons* to require a plaintiff to exhaust administrative remedies before bringing a claim for breach of fiduciary duty in federal court where the basis of the claim is a plan administrator's denial of benefits or an action by the defendant closely related to the plaintiff's claim for benefits, such as withholding of information regarding the status of benefits. Under those circumstances, it is clear that such a claim is a naked attempt to circumvent the exhaustion requirement. This interpretation is consistent with our prior decision in *Coyne & Delany Co. v. Blue Cross & Blue Shield*, 102 F.3d 712 (4th Cir.1996), where we considered whether a company had a cause of action under ERISA to seek reimbursement from an insurance company for medical expenses incurred by one of its employees. *See id.* at 713–14. We noted that although Coyne pleaded its claim as a breach of fiduciary duty, it in actuality sought benefits, for which it had no cause of action because the specific terms of ERISA § 502(a)(1)(B) limited a cause of action for benefits to participants and beneficiaries of the ERISA-regulated plan. *See id.* at 714. We concluded that "[t]o permit the suit to proceed as a breach of fiduciary duty action would encourage parties to avoid the implications of section 502(a)(1)(B) by artful pleading; indeed every wrongful denial of benefits could be characterized as a breach of fiduciary duty under Coyne's theory." *Id.* In sum, *Drinkwater*, *Simmons*, and *Coyne & Delany* instruct us that a claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA.

*Id.* at 362.

Applying this reasoning, the court found that the plaintiff's breach of fiduciary duty claim was not a "recast" claim for benefits, observing that "[u]nlike the plaintiffs in the above cases, Smith does not challenge a denial of benefits or an action related to a denial of benefits, but rather the *conduct* of Sydnor and [his employer] that he claims has lowered the value of his and the other participants' 401(k) Plan accounts." *Id.* at 363 (emphasis in original). This conduct included "fail[ire] to discharge their fiduciary duties with regard to the 401(k) Plan as required by ERISA §§ 404 and 406 by selling the preferred stock at a grossly undervalued price and engaging in self-dealing conduct to the detriment of Plan participants and beneficiaries, by failing to act in a prudent manner in investigating the transaction with [a third party], and by acting on behalf of an

adverse party in a transaction with [the same third party]." *Id.*

To support its conclusion, the court also pointed to the remedy that Syndor sought, which included rescission of an improper transaction and an order disgorging to the plan the profits the defendants had obtained as a result of their wrongful conduct. *Id.* The court recognized that "this remedy [would] undoubtedly benefit Smith and other participants in the Plan, [but] it [did] not solely benefit the individual participants." *Id.* The court concluded: "In sum, because the resolution of Smith's claims rests upon the interpretation and application of ERISA rather than simply upon the interpretation and application of the 401(k) Plan, we conclude that Smith has pleaded valid claims for breach of fiduciary duties." *Id.*

The court went on to hold that "a plaintiff is not required to exhaust administrative remedies before bringing an action in federal court alleging a breach of fiduciary duty in violation of ERISA §§ 404–406." *Id.* at 364. The court relied, in part, on the fact that "the exhaustion requirement is premised on ERISA's statutory mandate that benefit plans covered by the Act provide an internal review procedure for plan participants to appeal a denial of benefits" whereas "[t]here is no statutory mandate for benefit plans to provide review of claims for violation of ERISA itself." *Id.* The court explained that this distinction is significant because:

> It is undisputed that the administrative appeals procedure ERISA requires in every plan does not apply to non-benefit challenges. Yet it is this statutory requirement upon which the judicially-created exhaustion requirement is grounded. It follows, therefore, that if there is no statutory requirement for an appeals procedure respecting claims not involving benefits, the logic of the exhaustion requirement no longer applies.

*Id.* (quoting *Licensed Div. Dist. No. 1 v. Defries*, 943 F.2d 474, 479 (4th Cir.1991) (citations omitted)). The court reasoned further that "[t]he very nature of a claim for a violation of an ERISA statutory provision further supports the conclusion that it is not subject to the exhaustion requirement[:] Unlike a claim for benefits under a plan, which implicates the expertise of a plan fiduciary, adjudication of a claim for a violation of an ERISA statutory provision involves the interpretation and application of a federal statute, which is within the expertise of the judiciary." *Id.* at 365. Finally, the court noted, "That the language of the 401(k) Plan makes no provision for handling this type of claim is further support for not referring this type of claim to the Plan for

50

administrative consideration." *Id.*

### 4. Whether Plaintiffs' Breach of Fiduciary Duty Claim is a Disguised Claim for Benefits

The Court concludes that *Spinedex* is directly on point. Here, as in *Spinedex*, Plaintiffs' breach of fiduciary duty claim is based on "willful and systematic" conduct, namely, adoption of Guidelines -- ostensibly to implement the plans' common GASC precondition -- that were overly restrictive and put profits before the interests of plan beneficiaries. This conduct affected plan beneficiaries across-the-board and violated statutory requirements of ERISA, namely, the duties of loyalty and care under 29 U.S.C. §§ 29 USC § 1104(a)(1)(A) & (B).  In contrast to *Diaz* and *Harrow*, what remains of Plaintiffs' breach of fiduciary duty claim does not turn on a *particular* application of plan terms to an individual claim for benefits.  Moreover, as in *Smith*, Plaintiffs request a remedy that is consistent with a statutory claim as it will benefit *all* plan participants.  In particular, Plaintiffs seek injunctive and declaratory relief to compel UBH to alter its Guideline-development process so as to eliminate the improper influence of its financial personnel over clinical judgments. And as in *Smith*, UBH has not pointed to any administrative procedures under the plans that permit plan members to bring challenges of the sort that Plaintiffs bring here, challenging the validity of the criteria that UBH uses to make coverage determinations for *all* plan members. Therefore, the Court finds that the portion of the breach of fiduciary duty claim that survived *Wit III* is a statutory claim for breach of fiduciary duty under ERISA and not a disguised claim for benefits.

UBH attempts to avoid this result by pointing to the Court's extensive findings addressing whether the Guidelines were more restrictive than GASC. This shows that the claim is based on the plans rather than the statutes, UBH contends.  The Court is not convinced.  Just as a mere reference to an ERISA provision does not transform a claim that turns on the application of plan terms to a particularized set of facts into a statutory claim that is not subject to exhaustion, so the fact that a breach of fiduciary duty claim is *in some way* related to a plan term does not change a challenge based on willful and systematic conduct into an individualized claim for benefits under the plan.  *See Diaz*, 50 F.3d at 1484 (fact that claim for benefits may "implicate" statutory

51

requirements does not turn it into a statutory claim). Instead, a disguised claim for benefits is a claim that is based on application of a plan term to a particular individual's claim or is "*closely related*" to such a claim. *Smith*, 184 F.3d at 362.    Of course, any statutory violation under ERISA will likely have *something* to do with protecting plan members' interest in their benefits, but the case authority does not support the conclusion that this is sufficient to transform a statutory claim into a disguised claim for benefits.

### 5.  Whether Exhaustion is Required as a Matter of Contract

The Court also is not persuaded by UBH's argument that even true statutory breach of fiduciary duty claims must be exhausted as a matter of contract where the plan expressly requires exhaustion (as opposed to simply establishing an administrative process for challenging denials). The Panel in *Wit III* framed the exhaustion inquiry that it tasked this Court with addressing as requiring the Court to determine whether the remaining portion of the breach of fiduciary duty claim falls under the Ninth Circuit authority "[holding] that exhaustion is not required for statutory breach of fiduciary duty claims" or instead, the rule that "exhaustion *is* required if a plaintiff's statutory claim is a disguised claim for benefit." *Wit III*, 79 F.4th at 1089. UBH, however, would have this Court hold that the authority the Panel cited in support of the rule that "exhaustion is not required for statutory breach of fiduciary duty claims" stands for a much more limited rule, namely, that exhaustion is not required for statutory breach of fiduciary duty claims so long as the administrative procedures established under the plan are permissive and do not affirmatively require exhaustion.  The Court rejects UBH's invitation.

Courts in the Ninth Circuit sometimes refer to ERISA exhaustion requirements as "prudential" because ERISA itself does not require exhaustion of administrative remedies. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) ("ERISA itself does not require a participant or beneficiary to exhaust administrative remedies in order to bring an action under § 502 of ERISA, 29 U.S.C. § 1132."). What it *does* require is that plans "provide administrative remedies for persons whose claims for benefits have been denied." *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980) (citing Section 503, 29 U.S.C. § 1133). Thus, the obligation to exhaust these procedures is "judge-made." *Vaught*, 546 F.3d at 627.  In particular,

United States District Court
Northern District of California

1   the Ninth Circuit "long ago concluded that 'federal courts have the authority to enforce the

2   exhaustion requirement in suits under ERISA, and that as a matter of sound policy they should

3   usually do so.' " *Id.* (quoting *Amato*, 618 F.2d at 568). Furthermore, courts have recognized

4   exceptions to this prudential requirement, including " 'when resort to the administrative route is

5   futile or the remedy inadequate[,]' " *id.* (quoting *Amato*, 618 F.2d at 568) or "where a plan fails to

6   establish or follow 'reasonable' claims procedures as required by ERISA[.]" *Id.*

7       UBH's argument is based on the premise that because the ERISA exhaustion requirement

8   is "prudential," the rule that statutory breach of fiduciary duty claims are not subject to exhaustion

9   must be limited to claims brought by plan beneficiaries whose plans establish administrative

10  procedures for challenging a denial of benefits but that do not *require* that beneficiaries use these

11  procedures before bringing suit.  To put it slightly differently, they assert that the rule the Panel set

12  forth in *Wit III*, citing *Spinedex,* does not apply to plan members whose plans explicitly require

13  them to exhaust the plan's administrative procedures – of which there are undisputedly at least

14  some in the breach of fiduciary duty class in this case.  However, *Spinedex* does not support

15  UBH's position.

16      While not explicit on the issue, the facts and reasoning in *Spinedex* support the conclusion

17  that the court in that case did not limit its holding with respect to exhaustion of statutory breach of

18  duty claims to plaintiffs whose plans made the administrative appeal process optional.  In

19  particular, there is no mention in the discussion addressing whether Aragon's claim failed due to

20  exhaustion of the administrative procedures under his plan being optional.  Rather, the court

21  appears to assume that the procedures in his plan were mandatory and that is what the district

22  court apparently found as it had dismissed Aragon's claim for failure to exhaust.  Furthermore, the

23  holding in *Spinedex* that statutory breach of fiduciary duty claims are not subject to exhaustion

24  would have been entirely superfluous if Aragon's plan did not require that he pursue an

25  administrative appeal before initiating a lawsuit given that the court in the same opinion expressly

26  held that exhaustion of a plan's procedural process is not required where the process is optional

27  under the plan.   Nor has the Court found any other case that holds that statutory breach of

28  fiduciary duty claims are exempt from the exhaustion requirement only when the plan makes its

1    administrative process optional.

2        UBH relies heavily on *Heimeshoff v. Hartford Life & Acc. Ins. Co*., 571 U.S. 99  (2013) in

3    support of its contention that the rule excusing statutory breach of fiduciary duty claims from

4    exhaustion must give way when the plan expressly requires that plan members exhaust its

5    administrative appeal process.  But if that were the case, the court in *Spinedex* – which was

6    decided a year after *Heimeschoff* – would likely have reached a different result as to Aragon's

7    claim given that his plan apparently required exhaustion of the plan's administrative appeal

8    procedures; or alternatively, the court in *Spinedex*  would have explained why *Heimeschoff*  did

9    not apply, *e.g.*, because exhaustion was not contractually required.

10        Furthermore, *Heimeschoff* did not address exhaustion and the claim in that case turned on

11    interpretation of specific plan terms. In particular, the plaintiff brought a claim for benefits under

12    her plan and the Court addressed whether the claim was timely in light of a provision in the plan

13    specifying that the limitations period was three years and that claims accrued at the time proof of

14    loss was due. 571 U.S. at 102.  Recognizing that ERISA does not contain a statute of limitations,

15    the Court looked for guidance to the "well-established framework" used to decide "whether to

16    enforce the terms of a contractual limitations provision." *Id.* at 106-107.  The Court cited the rule

17    that "[I]n the absence of a controlling statute to the contrary, a provision in a contract may validly

18    limit, between the parties, the time for bringing an action on such contract to a period less than that

19    prescribed in the general statute of limitations, provided that the shorter period itself shall be a

20    reasonable period." *Id.* at 107 (quoting *Order of United Commercial Travelers of America v.*

21    *Wolfe*, 331 U.S. 586, 608 (1947)). It concluded that the limitations period specified in the plan was

22    enforceable because it was reasonable and there was no "controlling statute" that "prevent[ed] the

23    limitations provision from taking effect." *Id.*  at 109.   In doing so, the Court highlighted "the

24    particular importance of enforcing plan terms as written in § 502(a)(1)(B) claims." *Id.*  at 108-

25    109.  That general admonition, however, does not support UBH's broad reading of the holding of

26    the case, which involved a claim to recover benefits under the plan and the interpretation of the

27    limitations provisions in the plan where Congress was "silen[t]" on that question in ERISA. *Id.*  at

28    109.  In other words, *Heimeschoff* did not involve a statutory claim and therefore, that case does

United States District Court
Northern District of California

54

United States District Court
Northern District of California

1    not limit the holding of *Spinedex* at issue here.

2    The Court also does not find support for UBH's position in *Conley v. Pitney Bowes*,

3    34 F.3d 714, 716 (8th Cir. 1994)) or *Kinkead v. Sw. Bell Corp. Sickness & Accident Disability*

4    *Benefit Plan*, 111 F.3d 67, 70 (8th Cir. 1997)). In *Conley*, the court held that exhaustion of a claim

5    for benefits was excused because while the plan required that the beneficiary pursue an

6    administrative appeal, it also required that the beneficiary be given notice of his obligation to

7    pursue an administrative appeal when his claim was denied.  34 F.3d at 717-718.  The Court

8    observed that exhaustion under ERISA was "a creature either of contract or judicial invention" and

9    went on to find, as a matter of contract, that because the plan had not given the required notice to

10   the plaintiff, it could not assert exhaustion as a defense:  "A defense under the exhaustion clause . .

11   . may not be asserted absent performance of the notice clause, since they  are presumed to be the

12   subject of promises made in exchange for each other."  *Id.*  In other words, the court in *Conley*,

13   like the court in *Spinedex,* found that where plan documents do not, as a matter of contract, require

14   exhaustion, the court will not impose such a requirement under the doctrine of prudential

15   exhaustion.  What that case does not hold is that where a plan *does* require exhaustion as a matter

16   of contract, that requirement overrides the rule that statutory breach of fiduciary duty claims do

17   not require exhaustion.  Rather, it simply does not address that question.  Therefore, *Conley* does

18   not undermine the binding authority in *Spinedex* that statutory breach of fiduciary duty claims

19   need not be exhausted, even if the plan expressly requires exhaustion.

20   Likewise, *Kinkead* does not help UBH.  In that case, the plaintiff brought a claim for

21   benefits and relied on *Conley* to argue that she was not required to exhaust the administrative

22   process that was required under the plan because she had not received adequate notice of her

23   obligations with respect to that process.   111 F.3d 67, 68 (8th Cir. 1997).  The court rejected that

24   argument, finding that the plaintiff had received adequate notice of the appeal process and

25   therefore, that her claim failed because she had not exhausted the plan's administrative process.

26   *Id.*  Like *Conley*, this case does not address whether statutory breach of fiduciary duty claims must

27   be exhausted and sheds no light on that issue.

28   For these reasons, the Court rejects UBH's argument that Plaintiffs are required to exhaust

United States District Court
Northern District of California

1    their administrative remedies on the surviving portion of their breach of fiduciary duty claim.

2          **6.  Futility**

3          Finally, the Court concludes that even if exhaustion of the surviving portion of the breach

4    of fiduciary duty claim were required, it is law of the case that that requirement is excused on the

5    basis of futility.  While UBH relies on a finding in *Wit II* to argue that the Panel reversed this

6    Court as to its finding of futility and therefore, that the Court's finding is *not* law of the case, it

7    cites no authority to support the assertion that a holding in a withdrawn opinion functions in this

8    manner.  The Court concluded in the FFCL that exhaustion would have been futile because UBH's

9    administrative appeal process required that the same Guidelines be applied to the appeal as were

10   used to deny benefits.  FFCL ¶ 191.  In other words, Plaintiffs who pursued administrative

11   remedies under the plan would not have been able to challenge the conduct upon which the breach

12   of the duties of loyalty and care are based, namely, UBH's adoption of Guidelines based on its

13   own financial interest and not solely in the interest of plan participants.  Therefore, the Court finds

14   that its futility finding in the FFCL is law of the case *and* that the reasoning supporting the Court's

15   conclusion continue to apply to the portion of the breach of fiduciary duty claim that survives *Wit*

16   *III*.

17   **IV.    CONCLUSION**

18         For the reasons stated above the Court finds that Plaintiffs' breach of fiduciary duty claim

19   survives *Wit III* to the extent that it is based on breaches of the duties of loyalty and care.  The

20   Court finds that under *Wit III*, judgment must be entered in favor of UBH on the breach of

21   fiduciary duty claim to the extent that claim is based on breach of the duty to adhere to plan terms.

22   The Court further concludes that the surviving portion of the breach of fiduciary duty claim is a

23   statutory ERISA claim and therefore, under *Spinedex*, does not require exhaustion.  In the

24   alternative, the Court concludes that exhaustion of the surviving portion of the breach of fiduciary

25   duty claim is excused based on the Court's finding of futility in the FFCL.

26         The parties are ordered to meet and confer regarding next steps in this case and submit

27   joint or separate proposals no later than **September 12, 2025.**  The parties' submission should

28   address whether any injunctive or declaratory relief previously awarded by this Court that has not

already been reversed by the Panel (*e.g.*, reprocessing of claims) require modification in light of the above rulings, as well as any other issues the parties believe the Court should address.

**IT IS SO ORDERED.**

Dated:  August 5, 2025

_____
JOSEPH C. SPERO
United States Magistrate Judge