United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID WIT, et al.,

      Plaintiffs,

    v.

UNITED BEHAVIORAL HEALTH,

      Defendant.

GARY ALEXANDER, et al.,

      Plaintiffs,

    v.

UNITED BEHAVIORAL HEALTH,

      Defendant.

Case No.  14-cv-02346-JCS
Related Case No. 14-cv-05337 JCS

**AMENDED REMEDIES ORDER**

Pursuant to the Ninth Circuit's rulings in *Wit v. United Behavioral Health*, 79 F.4th 1068 (9th Cir. 2023) ("*Wit III*"), and this Court's August 5, 2025 Order re Breach of Fiduciary Duty Claim (dkt. no. 669) (the "BOFD Order"), the Court's November 3, 2020 Remedies Order, dkt. no. 491, is hereby vacated in its entirety and superseded by this Amended Remedies Order. For the reasons set forth in the Court's BOFD Order, and in the Court's February 28, 2019 Findings of Fact and Conclusions of Law (dkt. no. 413) ("FFCL") and its August 6, 2020 Further Findings of Fact and Conclusions of Law (dkt. no. 469) ("Further FFCL") to the extent the FFCL and Further FFCL have not been reversed or nullified, and pursuant to its authority under ERISA, 29 U.S.C. §§ 1132(a)(1)(b), (a)(3)(a) and (a)(3)(b), and Federal Rules of Civil Procedure 23(d) and 53, **THE**

**COURT HEREBY ORDERS:**

**I.      DECLARATORY JUDGMENT**

The Court hereby DECLARES as follows:

1. UBH, which also operates as OptumHealth Behavioral Solutions, administers mental health and substance use disorder benefits for commercial welfare benefit plans. In that capacity, UBH exercises discretion with respect to the administration of benefits, and is a fiduciary with respect to the plans it administers within the meaning of ERISA, 29 U.S.C. § 1001 *et seq*.

2. As a fiduciary, UBH owes fiduciary duties to the participants and beneficiaries of the plans UBH administers, including the duties set forth in 29 U.S.C § 1104(a)(1).

3. UBH has developed Level of Care Guidelines and Coverage Determination Guidelines (collectively, "Guidelines") that it uses for making coverage determinations.

4. UBH issued an adverse benefit determination to each class member[1] that was based, in whole or in part, on UBH's Guidelines.

5. UBH's Guidelines are not terms of the class members' plans.

6. The plans did not require UBH to approve benefits for all services that were consistent with generally accepted standards of care ("GASC"). Instead, the terms of the plans of each class member of the *Wit* and *Alexander* Guidelines Classes required, as one condition of coverage, that services be consistent with GASC. UBH uses its Guidelines to interpret and implement that plan term, and acts in a fiduciary capacity when it develops, revises, and adopts its Guidelines for that purpose.

7. To the extent that UBH adopted the Guidelines to implement the GASC requirement in class members' plans, the class members had a right, under ERISA and their plans, to have UBH adopt Guidelines that were developed solely in the interests of the class members and with care, skill, prudence, and diligence.

---

[1] The final class definitions for the *Wit* Guidelines Class, the *Alexander* Guidelines Class, and the *Wit* State Mandate Class, as well as the applicable Class Periods, are set forth in the Court's Order on UBH's decertification motion (dkt. no. 490). The members of the three classes are referred to collectively herein as the "class members."

United States District Court
Northern District of California

8. The class members were deprived of that right because, throughout the Class Period, UBH's Guideline development process was tainted by UBH's financial interests and its lack of due care.

9.  UBH's misconduct in developing and adopting its Guidelines was willful and systematic. This conduct affected the class members across-the-board and violated statutory requirements of ERISA, namely, the duties of loyalty and care under 29 U.S.C. §§ 1104(a)(1)(A) & (B).

10. The UBH Guidelines at issue in this case – i.e., those listed in Trial Exhibit 880, dkt. no. 257 – are irreparably tainted by UBH's disloyalty and lack of care.

11. UBH's adoption of the Guidelines as its standard criteria harmed the class members by depriving them of their right to have their contractual benefits administered in their best interest and with due care and by depriving them of their right to Guidelines that were developed for their benefit and with due care.

12. In addition, UBH's Guidelines purport to be based on generally accepted standards of care. In fact, the Guidelines do not accurately reflect generally accepted standards of care. They are instead significantly and pervasively more restrictive than those standards.  This defect is a direct result of UBH's self-interest and lack of due care, and it has prevented class members from knowing the scope of coverage their plans provided, thus undermining their ability to make informed decisions about the need to purchase alternative coverage and to know whether they are paying for unnecessary coverage.

13.  The following standards are generally accepted in the field of mental health and substance use disorder treatment and patient placement:

a. Effective treatment requires treatment of the individual's underlying condition and is not limited to alleviation of the individual's current symptoms.

b. Effective treatment requires treatment of co-occurring behavioral health disorders and/ or medical conditions in a coordinated manner that considers the interactions of the disorders and conditions and their implications for determining the appropriate level of care.

c. Patients should receive treatment for mental health and substance use disorders at

United States District Court
Northern District of California

the least intensive and restrictive level of care that is safe and effective. Placement in a less restrictive environment is appropriate only if it is likely to be safe and just as effective as treatment at a higher level of care in addressing a patient's overall condition, including underlying and co-occurring conditions.

d. When there is ambiguity as to the appropriate level of care, the practitioner should err on the side of caution by placing the patient in a higher level of care.

e. Effective treatment of mental health and substance use disorders includes services needed to maintain functioning or prevent deterioration.

f. The appropriate duration of treatment for behavioral health disorders is based on the individual needs of the patient; there is no specific limit on the duration of such treatment.

g. The unique needs of children and adolescents must be taken into account when making level of care decisions involving their treatment for mental health or substance use disorders.

h. The determination of the appropriate level of care for patients with mental health and/or substance use disorders should be made on the basis of a multidimensional assessment that takes into account a wide variety of information about the patient.

14.  The UBH Guidelines at issue in this case – i.e., those listed in Trial Exhibit 880, dkt. no. 257 – are significantly and pervasively more restrictive than generally accepted standards of care, in the following ways:

a. UBH's Guidelines place excessive emphasis on acuity and crisis stabilization, while ignoring the effective treatment of members' underlying conditions.

b. UBH's Guidelines fail to address the effective treatment of co-occurring conditions.

c. UBH's Guidelines fail to err on the side of caution in favor of higher levels of care when there is ambiguity and, instead, push patients to lower levels of care where such a transition is safe, even if the lower level of care is likely to be less effective.

d. UBH's Guidelines preclude coverage for treatment to maintain level of function.

e. UBH's Guidelines from 2014 to 2017 preclude coverage based on lack of motivation.

f. UBH's Guidelines fail to address the unique needs of children and adolescents.

g. UBH's Guidelines use an overly broad definition of "custodial care," coupled with an overly narrow definition of "active" treatment and "improvement."

h. UBH's Guidelines impose mandatory prerequisites for coverage rather than determining the appropriate level of care based on a multidimensional approach.

15. The UBH Guidelines at issue in this case also deviate from the ASAM Criteria, published by the American Society for Addiction Medicine, in a multitude of ways, including by failing to include criteria for residential treatment at levels 3.1, 3.3 and 3.5.

16. Additionally, UBH affirmatively misled regulators about its Guidelines. The "crosswalks" UBH submitted to Connecticut regulators in 2013 and 2015 to demonstrate its Guidelines were consistent with the ASAM Criteria materially mischaracterized the UBH Guidelines by stating that "the criteria from all 3 ASAM levels [3.1, 3.3 and 3.5] are included in the admission criteria for Reside[n]tial Rehabilitation." At the time these statements were made to Connecticut regulators, UBH knew them to be false.

17. Since October 1, 2013, Connecticut law has required insurers to use the ASAM Criteria, or a set of criteria an insurer "demonstrates to the Insurance Department is consistent with" the ASAM Criteria.

18. UBH violated Connecticut law throughout the Class Period because UBH did not use the ASAM Criteria to administer claims for substance use disorder treatment and UBH's own Guidelines were not consistent with the ASAM Criteria.

19. Since August 18, 2011, Illinois law has required insurers to use the ASAM Criteria to make coverage determinations for treatment of substance abuse disorders.

20. UBH violated Illinois law between August 18, 2011 and January 1, 2016 because UBH did not use the ASAM Criteria to administer claims for substance use disorder treatment and UBH's own Guidelines were not consistent with the ASAM Criteria.

21. Since July 10, 2015, Rhode Island law has required that payors including insurers "rely upon the criteria of the American Society of Addiction Medicine when developing coverage for levels of care for substance-use disorder treatment." 27 R.I. Gen. Laws § 27-38.2-1(g) (2015); 2015 R.I. Pub. Laws 15-236 (15-H 5837A).

22. UBH violated Rhode Island law from July 10, 2015 through the end of the Class Period because UBH did not use the ASAM Criteria to administer claims for substance use disorder treatment and UBH's Guidelines were not "consistent with" the ASAM Criteria.

23. Throughout the entire Class Period, Texas Law required insurance companies to apply criteria issued by the Texas Department of Insurance ("TDI Criteria") in making medical necessity determinations with respect to claims for substance use disorder treatment when an individual's plan was governed by Texas law and treatment was sought from a provider or facility in Texas. 28 Tex. Admin. Code § 3.8011 (1991).

24. UBH violated Texas law during the Class Period by applying its own Guidelines rather than applying solely the TDI Criteria to claims covered by the Texas statute.

25. Applicable state law required UBH to use specific state-mandated criteria to make medical necessity determinations when administering the *Wit* State Mandate Class members' plans. These class members, therefore, had a right, under ERISA, to have UBH implement their plans' medical necessity term according to the state-mandated criteria. UBH did not do so, thereby violating ERISA as well as state law.

26. For all the reasons stated above and in the Court's BOFD Order, and in the FFCL and Further FFCL to the extent those decisions have not been reversed or nullified, UBH breached its fiduciary duties to the class members, including its obligations under 29 U.S.C. §§ 1104(a)(1)(A), and (a)(1)(B), when it developed, revised, and adopted the Guidelines.

II.    **INJUNCTIVE RELIEF**

   A.    **UBH is hereby permanently ENJOINED from:**

Using any of the Guidelines listed Trial Exhibit 880, dkt. no. 257, to implement the GASC requirement contained in any plan governed by ERISA.  This provision shall not prohibit UBH from using limited portions of the specific language contained in those Guidelines that accurately reflect GASC so long as UBH does not re-adopt in large part or its entirety any Guideline that the Court has found invalid. This provision also does not prohibit UBH from using specific language contained in those Guidelines for purposes other than implementing the GASC requirement in ERISA-governed plans, such as implementing plan terms other than the GASC requirement.

6

**B.     UBH is hereby ORDERED to:**

Henceforth, and for a period of five (5) years from the date of this Order, to the extent that UBH adopts criteria to implement the GASC requirement contained in any plan governed by ERISA, those criteria shall accurately reflect GASC, as established in this Court's FFCL, and the requirements of any applicable state law.

**III.     RETENTION OF JURISDICTION**

The Court retains jurisdiction over this action for five years from the date of this Order.

**IT IS SO ORDERED.**

Dated:   February 3, 2026

_____

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California