ANDREW HOLMER (SBN 268864)
aholmer@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

NICHOLAS DOWD (admitted pro hac vice)
NDowd@crowell.com
CROWELL & MORING LLP
1601 Wewatta Street, Suite 815
Denver, CO 80202
Telephone: 303.524.8660
Facsimile: 303.524.8650
Attorneys for Defendant

UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID AND NATASHA WIT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>Defendant. | Case No. 3:14-CV-02346-JCS<br>Related Case No. 3:14-CV-05337-JCS<br><br>**UNITED BEHAVIORAL HEALTH'S OPPOSITION TO PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS**<br><br>Judge: Hon. Joseph C. Spero |
| GARY ALEXANDER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>Defendant. | |

# TABLE OF CONTENTS

Page


INTRODUCTION ..... 1
BACKGROUND ..... 2
A. PLAINTIFFS SOUGHT, AND INITIALLY RECOVERED, SWEEPING RELIEF FOR MORE THAN 65,000 CLASS MEMBERS. ..... 2
B. REPROCESSING WAS THE CENTERPIECE OF PLAINTIFFS' PRIOR FEE REQUEST. ..... 3
C. ALL THAT SURVIVED WAS PLAINTIFFS' NARROW, PROCESS-BASED CLAIM FOR BREACH OF FIDUCIARY DUTY. ..... 4
D. NEARLY A DECADE AFTER TRIAL, PLAINTIFFS HAVE OBTAINED ONLY A NARROW FIVE-YEAR INJUNCTION PROVIDING NO BENEFITS TO ANY CLASS MEMBER. ..... 4
LEGAL STANDARD ..... 6
ARGUMENT ..... 7
I. PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES. ..... 7
A. PLAINTIFFS HAVE NOT ACHIEVED "SOME DEGREE OF SUCCESS ON THE MERITS." ..... 7
1. *HARDT* REQUIRES MORE THAN THE NOMINAL, PROCEDURAL VICTORY THAT PLAINTIFFS SECURED. ..... 7
2. PLAINTIFFS CANNOT RELY ON A "CATALYST THEORY" TO ESTABLISH FEE ELIGIBILITY. ..... 9
B. THE *HUMMELL* FACTORS DO NOT SUPPORT A FEE AWARD. ..... 10
II. ANY FEE AWARD SHOULD BE DRAMATICALLY REDUCED TO REFLECT PLAINTIFFS' PYRRHIC SUCCESS. ..... 13
A. PLAINTIFFS CANNOT RECOVER FEES FOR TIME ASSOCIATED WITH CLAIMS AND REMEDIES ON WHICH THEY WERE NOT SUCCESSFUL. ..... 13
1. DENIAL OF BENEFITS ..... 14
2. UNRECOVERED REMEDIES ..... 15
B. THE REDUCTION FOR "HYBRID TIME" SHOULD BE MUCH GREATER. ..... 16
C. THIRD, PLAINTIFFS' REQUEST FOR FULL REIMBURSEMENT FOR HOURS PURPORTEDLY SPENT SOLELY ON THE FIDUCIARY DUTY CLAIM IS ALSO EXCESSIVE. ..... 18
III. PLAINTIFFS' LODESTAR CALCULATION IS NOT REASONABLE. ..... 18

**TABLE OF CONTENTS**
(continued)


**Page**

A. PLAINTIFFS' HOURS ARE INADEQUATELY DOCUMENTED, INFECTED BY BLOCK BILLING, AND EXCESSIVE. .......... 18

B. PLAINTIFFS' DEMAND FOR 2026 RATES IS UNREASONABLE. .......... 20

C. PLAINTIFFS' TOTAL FEE REQUEST SHOULD BE REDUCED BY AT LEAST $21,472,066.66. .......... 22

IV. PLAINTIFFS' COSTS & EXPENSES MUST BE DENIED OR SUBSTANTIALLY REDUCED. .......... 23

V. NO COST MULTIPLIER IS WARRANTED. .......... 25

CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agredano v. Mut. of Omaha Companies.*,
75 F.3d 541 (9th Cir. 1996) ........ 25

*Allen v. City of L. A.*,
1995 WL 433720 (C.D. Cal. Jan. 13, 1995) ........ 20

*Banas v. Volcano Corp.*,
47 F. Supp. 3d 957 (N.D. Cal. 2014) ........ 20

*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*,
963 F. Supp. 2d 950 (N.D. Cal. 2013) ........ 13, 19

*Barnett v. S. Cal. Edison Co. Long Term Disability Plan*,
2016 WL 4077721 (E.D. Cal. July 5, 2016) ........ 8, 18, 25

*Berry v. Air Force Cent. Welfare Fund*,
115 F.4th 948 (9th Cir. 2024) ........ 9, 10

*Blum v. Stenson*,
465 U.S. 886 (1984) ........ 21

*Boconvi v. Velocity Express, LLC*,
2018 WL 2248988 (N.D. Cal. May 17, 2018) ........ 19

*Brasley v. Fearless Farris Serv. Stations, Inc.*,
714 F. App'x 790 (9th Cir. 2018) ........ 10

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
532 U.S. 598 (2001) ........ 9

*Campbell v. United Healthcare Ins. Co.*,
2024 WL 5423772 (C.D. Cal. Oct. 25, 2024) ........ 19

*Caplan v. CNA Fin. Corp.*,
573 F. Supp. 2d 1244 (N.D. Cal. 2008) ........ 17

*Dine v. Metro. Life Ins. Co.*,
2011 WL 6131312 (C.D. Cal. Dec. 9, 2011) ........ 21

*Echague v. Metro. Life Ins. Co.*,
69 F. Supp. 3d 990 (N.D. Cal. 2014) ........ 19, 20

*Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*,
898 F. Supp. 2d 883 (D. Md. 2012), *aff'd*, 541 F. App'x 322 (4th Cir. 2013) ........ 10

*Flores v. Life Ins. Co. of No. Am.*,
2022 WL 1577708, at *2 (C.D. Cal. Mar. 18, 2022) .......... 8

*Gates v. Gomez*,
60 F.3d 525 (9th Cir. 1995) .......... 20

*Glover v. Hartford Life & Accident Ins. Co.*,
617 F. Supp. 3d 90 (D.N.H. 2022) .......... 9

*Gurasich v. IBM Retirement Plan*,
2016 WL 3683044 (N.D. Cal. July 12, 2016) .......... 17

*Hardt v. Reliance Standard Life Ins. Co.*,
560 U.S. 242 (2010) .......... *passim*

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .......... 6, 13, 14, 18

*Hummell v. S.E. Rykoff & Co.*,
634 F.2d 446 (9th Cir. 1980) .......... 6, 10, 12, 13

*James v. AT&T W. Disability Benefits Program.*,
2014 WL 7272983 (N.D. Cal. Dec. 22, 2014) .......... 21

*Jeremiah B. v. Dep't of Educ.*,
2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010) *R&R adopted,* 2010 WL 675698 (D. Haw. Feb. 22, 2010) .......... 20

*King v. Aetna Life Ins. Co.*,
2011 WL 2682102 (C.D. Cal. July 7, 2011) .......... 8

*Kopp v. U.S. Secret Serv.*,
2019 WL 2327933 (N.D. Cal. May 31, 2019) (Spero, J.) .......... 20

*Kronzer v. Hintz*,
501 F. App'x 687 (9th Cir. 2012) .......... 7

*Lahiri v. Univ. Music & Video Distrib. Corp.*,
606 F.3d 1216 (9th Cir. 2010) .......... 20

*Loretz v. Regal Stone, Ltd.*,
756 F. Supp. 2d 1203 (N.D. Cal. 2010) .......... 20

*McElwaine v. US W., Inc.*,
176 F.3d 1167 (9th Cir. 1999) .......... 6

*Mkay Inc. v. City of Huntington Park*,
2019 WL 1751823 (C.D. Cal. Mar. 7, 2019) .......... 16

*N.L. v. Credit One Bank, N.A.*,
2019 WL 1428122 (E.D. Cal. Mar. 29, 2019) .......... 24

*Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*,
2014 WL 2621202 (N.D. Cal. June 12, 2014) .......... 21

*Palmer v. City of Chi.*,
806 F.2d 1316 (7th Cir. 1986) .......... 10

*Payne v. Bay Area Rapid Transit Dist.*,
2009 WL 1626588 (N.D. Cal. June 5, 2009) .......... 24

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010) .......... 21, 25

*Pomerleau v. Health Net of Cal., Inc.*,
2012 WL 5829850 (C.D. Cal. Nov. 15, 2012) .......... 7

*Potter v. Blue Shield of Cal. Life & Health Ins. Co.*,
2017 WL 11633695, at *7–8 (C.D. Cal. June 27, 2017) .......... 17

*Reg'l Local Union No. 846 v. QPL, Inc.*,
2013 WL 3972431 (D. Or. July 31, 2013) .......... 24

*Ruckelshaus v. Sierra Club*,
463 U.S. 680 (1983) .......... 12

*Schwarz v. Sec'y. of Health & Human Services.*,
73 F.3d 895 (9th Cir. 1995) .......... 16

*Severstal Wheeling Inc. v. WPN Corp.*,
809 F. Supp. 2d 245 (S.D.N.Y. 2011), *aff'd* 659 F. App'x. 28 (2d Cir 2016) .......... 11

*Simonia v. Glendale Nissan/Infiniti Disability Plan*,
608 F.3d 1118 (9th Cir. 2010) .......... 6, 12

*Smith v. Aetna Life Ins. Co.*,
2020 WL 6055147 (S.D. Cal. Oct. 14, 2020) .......... 9

*Sobh v. Phx. Graphix Inc.*,
2022 WL 2316316 (D. Ariz. June 28, 2022) .......... 10

*Terry v. City of San Diego*,
583 F. App'x 786 (9th Cir. 2014) .......... 20

*United Behav. Health v. U.S. Dist. Ct. for N. Dist. of Cal.*,
2024 WL 4036574 (9th Cir. Sept. 4, 2024) .......... 1, 4

*Vasquez v. Cargill, Inc.*,
2008 WL 7825955 (C.D. Cal. Mar. 13, 2008) .......... 11

*Vivas v. Hartford Life & Accident Ins. Co.*,
2013 WL 5226720 (S.D. Fla. June 17, 2013) .... 8

*Welch v. Metro. Life Ins. Co.*,
480 F.3d 942 (9th Cir. 2007).... 20

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
445 F. Supp. 3d 508 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021).... 19

*Wit v. United Behav. Health*,
79 F.4th 1068 (9th Cir. 2023).... *passim*

**Statutes**

28 U.S.C. § 1961 .... 22

29 U.S.C. § 1132(g)(1).... 6

**Other Authorities**

ABA Formal Ethics Opinion 93-379 .... 24

SDCBA Legal Ethics Opinion 2013-3,
https://www.sdcba.org/?pg=EthicsOpinion20133 .... 24

# INTRODUCTION

Plaintiffs once described this case as a "complete victory," touting their success in securing a judgment on both their denial of benefits and breach of fiduciary duty claims, obtaining reprocessing relief for every class member, and securing mandatory injunctive relief supervised by a Special Master. *See* ECF 507 at 3–4 ("Original Fee Pet.").[1] Reprocessing was the heart of that victory—the novel, untested theory that Plaintiffs championed as the key to class certification and the centerpiece of the relief they sought, which would by itself provide "full redress" to tens of thousands of class members "for UBH's violations of ERISA." *Id.* at 4. On that basis, Plaintiffs recovered nearly all the attorneys' fees they requested in their original fee petition. *See generally* ECF 569 ("Original Fee Order").

But Plaintiffs also understood the risks of investing so much in such a novel (and ultimately, failed) shortcut to class certification and judgment. As Plaintiffs boasted, "[n]o other lawyer had ever brought similar claims, much less prevailed on them." Original Fee Pet. at 1. But Plaintiffs' gamble did not pay off, and little remains of that "complete victory." The Ninth Circuit reversed the certification of the denial of benefits classes, reversed the named plaintiffs' judgment on their personal denial of benefits claim, and reversed the breach of fiduciary duty judgment to the extent it rested on an "erroneous interpretation of the Plans." *Wit v. United Behav. Health*, 79 F.4th 1068, 1089 (9th Cir. 2023) ("*Wit III*"). The Original Fee Order was vacated and the case remanded. ECF 622. On remand, Plaintiffs' success continued to erode. Plaintiffs attempted to revive their denial of benefits claims but failed. *See United Behav. Health v. U.S. Dist. Ct. for N. Dist. of Cal.*, 2024 WL 4036574, at *2 (9th Cir. Sept. 4, 2024) ("*Wit IV*"). Then the Court held that Plaintiffs' fiduciary duty claim based on failure to adhere to plan terms also had been reversed. *See* Order re Breach of Fiduciary Duty Claim (Aug. 5, 2025), ECF 669 ("BOFD Order"). Only the claims for breach of the duties of loyalty and care remain. Given these reversals, the Court substantially amended its previous remedies award. *See* Amended Remedies Order at 1 (Feb. 3, 2026), ECF 695 ("Am. Remedies Order"). Nearly all prior relief has been

---

[1] Even then, UBH disputed that characterization. *See* UBH's Opp'n to Pls.' Pet. for Att'y's Fees & Costs at 1 (Jan. 15, 2021), ECF 523.

stricken, including class-wide reprocessing, a ten-year injunction requiring UBH to adopt certain guidelines, mandatory employee training, and special master oversight. *See id.* The only relief Plaintiffs preserved is a declaratory judgment and an injunction barring UBH from using level of care guidelines that it voluntarily stopped using years ago. *See id.*

Despite these defeats, Plaintiffs now demand up to $32.9 million in fees and costs—$12.5 million *more* than they sought in their original fee petition, even as their success has only eroded. The petition should be denied, or substantially reduced, for three reasons. *First*, whatever remains of Plaintiffs' previous victory is superficial and procedural—Plaintiffs have achieved only the illusory benefit of preventing UBH from using level of care guidelines that have long since been discontinued. *Second*, even if the Court determines that Plaintiffs' minimal success warrants some award, it should be far less than the exorbitant amount Plaintiffs seek. Fees incurred in a failed pursuit of claims or remedies on which Plaintiffs did not succeed are not recoverable, and fees that cannot be clearly attributed to one claim or another must be substantially reduced. *Third*, Plaintiffs' fee petition suffers from numerous additional deficiencies.

Plaintiffs' counsel made a deliberate, strategic choice to pursue novel theories seeking sweeping relief on a contingency basis—a model premised on the acceptance of risk. That risk did not pay off. UBH, having prevailed on every issue of consequence, should not also pay Plaintiffs tens of millions of dollars in fees. The Court should deny Plaintiffs' fee petition.

## BACKGROUND

### A. Plaintiffs Sought, and Initially Recovered, Sweeping Relief for More Than 65,000 Class Members.

Plaintiffs brought this class action on behalf of more than 65,000 class members asserting two ERISA claims against UBH: improper denial of benefits and breach of fiduciary duty. Plaintiffs alleged that UBH violated its fiduciary duties by adopting overly-restrictive level of care guidelines ("Guidelines") inconsistent with the terms of class members' plans and with generally accepted standards of care ("GASC"). *See generally* ECF 32, First Amended Class Action Complaint ("FAC"), Count I. Plaintiffs also alleged that UBH's use of the Guidelines caused them and class members to be "deprived of insurance benefits they were owed." *See*

*generally id.* at Count II. As relief, Plaintiffs sought numerous remedies, including:

- a declaration that UBH's Guidelines were developed in violation of its fiduciary duties;
- a permanent injunction ordering UBH to stop utilizing those Guidelines and instead adopt guidelines consistent with generally accepted standards of care and applicable state law;
- a declaration that UBH's alleged denials of residential treatment coverage were improper;
- an order requiring UBH to reprocess all previously denied claims under new guidelines;
- an order requiring UBH to faithfully apply its guidelines in reprocessing previously denied claims and in processing future claims;
- a ten-figure monetary surcharge. (*See* FAC Prayer for Relief; *see also* ECF 260-04 at 25).

UBH defeated Plaintiffs' baseless claim for surcharge at summary judgment. *See* ECF 492 at 26. However, Plaintiffs prevailed at trial on both substantive claims, followed by an expansive remedies award including class-wide reprocessing, a ten-year mandatory injunction, employee training injunctions, and special master oversight. *See* ECF 491.

**B. Reprocessing Was the Centerpiece of Plaintiffs' Prior Fee Request.**

After the Original Remedies Order, Plaintiffs filed a petition for attorneys' fees and costs, requesting $28.1 million in attorney fees and $1.59 million in costs. Original Fee Pet. at 1. Reprocessing was the linchpin of that petition. Plaintiffs argued they had achieved a "decisive, complete victory" because they had "obtained reprocessing relief for every Class member." *Id.* at 4. Plaintiffs were explicit: "[o]nce reprocessing under the correct standards is completed, the class will have received full redress for UBH's violations of ERISA." *Id.* Plaintiffs also emphasized the sweeping injunctive relief requiring UBH to "adopt and follow appropriate third-party coverage criteria" and to train its personnel, all "under the oversight of a Special Master" for "ten years." *Id.* The Court awarded Plaintiffs essentially all of their requested fees, supported by its conclusion that "Plaintiffs prevailed on summary judgment and at trial on all of their claims." ECF 569 at 6. The reprocessing order, the sweeping injunctive relief, and the special master were the foundation of Plaintiffs' fee request. *See* Original Fee Pet. at 3–4. *All are now gone.*

### C. All That Survived Was Plaintiffs' Narrow, Process-Based Claim for Breach of Fiduciary Duty.

Plaintiffs' initial success did not survive appeal. The Ninth Circuit decertified the denial of benefits classes, reversed the denial of benefits judgment in full, reversed the breach of fiduciary duty judgment to the extent it rested on "an erroneous interpretation of the Plans," and remanded. *Wit III*, 79 F.4th at 1089. On remand, Plaintiffs attempted to revive their denial of benefits claims—and failed. *See Wit IV*, 2024 WL 4036574, at *2. The Ninth Circuit made clear that it had "reversed (without remand) both the . . . class certification order and merits judgment on the denial of benefits claim," "definitively resolv[ing]" the "entire" denial of benefits claim and requiring "judgment for UBH on the denial of benefits claim." *Id.* (citation modified)

Plaintiffs' case continued to disintegrate. The Court held the fiduciary duty claim based on failure to adhere to plan terms was "intertwined with the error" that "required reversal as to the denial of benefits claim" *and did not survive Wit III*, BOFD Order at 31, leaving Plaintiffs with only a narrow fiduciary duty claim based on UBH's Guideline-development *process*—with no finding that a single plaintiff's or class member's benefits were wrongfully denied. *See id.* at 30–32; *see also* Nov. 12, 2025 Remedies Hr'g Tr. at 30:20–22 ("There is a judgment in this case that says UBH did not wrongfully deny benefits to the Plaintiffs – to the Plaintiffs, period.").

### D. Nearly a Decade After Trial, Plaintiffs Have Obtained Only a Narrow Five-Year Injunction Providing No Benefits to Any Class Member.

After holding that only the claims for breach of the duties of loyalty and care survived *Wit III*, the Court turned to amending its Original Remedies Order. *See* Am. Remedies Order at 1. Plaintiffs conceded that they could no longer recover class-wide reprocessing. *See* Nov. 12, 2025 Remedies Hr'g Tr. at 33:6–7 ("We're not asking for reprocessing. That is not on the table."). But Plaintiffs persisted in seeking substantially the same declaratory and injunctive relief from the Original Remedies Order, including an injunction dictating the guidelines UBH could use, mandatory employee training, and compliance monitoring by a special master. *See* ECF 680-2.

The Court denied this relief. Plaintiffs' failure to prove their denial of benefits claims meant their demand for an expansive, mandatory injunction was no longer justified. *See* Nov. 12, 2025 Remedies Hr'g Tr. at 30:13–33:1; *id.* at 31:9–11 (without the weight of 65,000 alleged

wrongful decisions, "[i]t's much harder . . . to justify in my mind a forward looking judgment.").

The Amended Remedies Order preserved only parts of the prior declaratory judgment, enjoined UBH from readopting its prior Guidelines to implement the "generally accepted standards of care" term in any ERISA-governed plan, and ordered UBH to ensure that, for the next five years, any criteria it adopts to implement the GASC requirement accurately reflect GASC. Am. Remedies Order, at 2–7. However, the Amended Remedies Order *does not* contain class-wide reprocessing, a mandatory requirement that UBH adopt particular coverage guidelines, ERISA or guideline training requirements, or special master oversight. The contrast between what Plaintiffs sought and what they ultimately obtained is stark:

**Figure 1**

| What Plaintiffs Sought | What Plaintiffs Obtained |
|---|---|
| **Class-wide judgment** for 65,000+ class members that UBH's denials of residential treatment claims were improper | The opposite. "There is a judgment in this case that says UBH did not wrongfully deny benefits to the Plaintiffs". Nov. 12, 2025 Remedies Hr'g Tr. at 30:20–22. |
| **Reprocessing** of 65,000+ benefit decisions under Plaintiffs' preferred guidelines | Nothing. |
| **Surcharge** *in the billions of dollars*. *See* ECF 260-04 at 25. | Nothing. |
| **Ten-year compliance with Special Master oversight** at UBH's expense | Nothing. |
| **Training** of UBH personnel and executives on GASC-consistent guidelines | Nothing. |
| **Sweeping injunction** divesting UBH of its discretion to interpret plan GASC and medical necessity terms and compelling UBH to adopt court-mandated medical necessity guidelines for a period of 10 years. | (1) Injunction prohibiting UBH from re-adopting the specific Guidelines that UBH voluntarily abandoned years ago; and (2) a five-year conditional requirement that, *to the extent* UBH adopts criteria to implement the GASC requirement in ERISA-governed plans, those criteria must accurately reflect GASC. |
| **Declaration** that UBH's guideline-development process violated its fiduciary **duties of loyalty and due care** | Declaration that UBH's guideline-development process was tainted by financial self-interest and lack of due care—and nothing more. |
| **Declaration** that UBH's guideline-development process violated its fiduciary **duty to adhere to plan terms** | Nothing. |

## LEGAL STANDARD

In ERISA litigation, the court has discretion to award reasonable attorneys' fees and costs to either party. *See* 29 U.S.C. § 1132(g)(1). But a fee award is not automatic. The movant must clear three distinct hurdles, each of which turns on the degree of success actually achieved.

*First*, the movant must demonstrate "some degree of success on the merits" to establish threshold eligibility. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). A trivial or "purely procedural victory" does not suffice. *Id.* at 256.

*Second*—and only if the *Hardt* threshold is met—the court must determine whether a fee award is appropriate by weighing the following five factors: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy a fee award; (3) whether a fee award would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980); *see also Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1121 (9th Cir. 2010). No one factor is dispositive; rather, "[t]he *Hummell* factors reflect a balancing." *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). To be clear, even if the moving party achieved some degree of success on the merits, a court may conclude "that fees are nonetheless inappropriate after applying the *Hummell* factors." *Simonia*, 608 F.3d at 1119.

*Third*, if fees are awarded at all, the amount is calculated using the lodestar method, which multiplies the reasonable number of hours incurred by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is a two-step process. Step one is to exclude fees for work on unsuccessful claims and theories. *Id.* at 434. Step two is to evaluate the remaining time entries to determine if they were reasonably necessary to achieve the results obtained. *Id.*

Plaintiffs fail at every step to demonstrate that they are entitled to recover any attorney fees, let alone the staggering fee award that they seek here.

## ARGUMENT

### I. Plaintiffs Are Not Entitled to Attorneys' Fees.

#### A. Plaintiffs Have Not Achieved "Some Degree of Success on the Merits."

##### 1. *Hardt* Requires More Than the Nominal, Procedural Victory That Plaintiffs Secured.

Before a party may recover attorneys' fees in an ERISA case, they must demonstrate that they achieved something more than a "trivial" or "purely procedural" win. *Hardt*, 560 U.S. at 255. Following *Wit III*, Plaintiffs no longer clear this threshold inquiry.

Whether a plaintiff achieved "some degree of success on the merits" is measured against the claims alleged in the complaint and the relief sought—not against a redefined version of the case as it exists after years of litigation and appellate reversals. *See Kronzer v. Hintz*, 501 F. App'x 687, 691 (9th Cir. 2012) (citation modified); *see also Pomerleau v. Health Net of Cal., Inc.*, 2012 WL 5829850, at *2 (C.D. Cal. Nov. 15, 2012) (the question is whether "Plaintiff received the relief she sought in her Complaint").

Measured against the Complaint and the relief Plaintiffs pursued, their minimal and symbolic success is a far cry from the concrete, benefits-related relief that drove this litigation. It was their novel reprocessing theory that largely justified class certification, *see* ECF 174, and it was the now-reversed finding that UBH improperly denied benefits to 65,000+ class members that supported the court's "sweeping injunction." Nov. 12, 2025 Remedies Hr'g Tr. at 33:20–34:13. But *Wit III* wiped away most of that success. *See* Background Section C. All that remains is a fiduciary duty violation confined to the *process* by which UBH developed the Guidelines. *See* BOFD Order at 30. Gone is any finding that UBH improperly denied benefits to anyone or failed to adhere to the terms of the classes' benefit plans. *See id.*

The surviving judgment does not provide any tangible benefit to the classes. After the Court issued the BOFD Order, Plaintiffs persisted in seeking an injunction that would have subjected UBH's coverage guidelines to judicial pre-clearance, mandatory employee training, and special master oversight. *See* ECF 681. The Court rejected this relief. *See* Am. Remedies Order.

The Amended Remedies Order provides only declaratory relief, a narrow injunction against use of the 2011–2017 Guidelines to implement the GASC requirement in ERISA-

governed plans, and an order requiring UBH to ensure that any criteria it adopts to implement the GASC requirement in any ERISA-governed plans "accurately reflect GASC, as established in this Court's FFCL, and the requirements of any applicable state law." *See* Am. Remedies Order at 6–7. None of these remedies bring a single class member "any closer to [the] desired relief" of recovering the benefits that Plaintiffs alleged they were improperly denied. *See Barnett v. S. Cal. Edison Co. Long Term Disability Plan*, 2016 WL 4077721, at *16 (E.D. Cal. July 5, 2016).

Obtaining a ruling disconnected from any actual benefits recovery does not constitute cognizable success under *Hardt*. *See King v. Aetna Life Ins. Co.*, 2011 WL 2682102, at *1 (C.D. Cal. July 7, 2011) (denying fees where court made no determination as to coverage eligibility); *Vivas v. Hartford Life & Accident Ins. Co.*, 2013 WL 5226720, at *3 (S.D. Fla. June 17, 2013) (deeming outcome a "purely procedural victory" where plaintiff secured only a remand based on breach of fiduciary duty). *Here*, there is not even the *possibility* that any plaintiff will have their claim denial overturned. Not one class member has received, nor will receive, a reprocessing of their claim or a single dollar in benefits. To the contrary, the principal result is the opposite: "There is a judgment in this case that says UBH did not wrongfully deny benefits to the Plaintiffs -- to the Plaintiffs, period." Nov. 12, 2025 Remedies Hr'g Tr. at 33:20–22.

Plaintiffs' own cases demonstrate that a fee award is inappropriate here. In *Flores v. Life Ins. Co. of No. Am.*, the court awarded fees because the plaintiff "*was entitled to [short-term disability] benefits*." 2022 WL 1577708, at *2 (C.D. Cal. Mar. 18, 2022) (emphasis added). The court reached a similar conclusion in *Barnett*, where the plaintiff recovered concrete relief in the form of back benefits and prejudgment interest, which "elevate[d] his achievement beyond a mere 'trivial success on the merits' or 'purely procedural victory.'" *Barnett,* 2016 WL 4077721, at *15. The narrow relief Plaintiffs obtained here comes nowhere close to that kind of *tangible relief*.

This Court has already recognized that the injunction precluding UBH from using its former Guidelines will likely have no practical import because UBH has not used those Guidelines in many years. *See* Nov. 12, 2025 Remedies Hr'g Tr. at 29:12–13 ("Why do you -- why do you care if I enter an injunction then? It's already done."); *see also id.* at 28:25–29:2. The limited declaratory relief pertaining to UBH's long-abandoned Guidelines will have similarly

limited, if any, practical impact for class members. And it is undisputed that UBH is *already using* criteria that both Plaintiffs and the Court agree accurately reflect GASC, and has been doing so for many years. *See* ECF 451-2, ¶¶ 4–10; ECF 451-3.[2] Such "purely procedural" relief, with no concrete impact on Plaintiffs' or absent class members' right to benefits, cannot support a fee award. *See Hardt*, 560 U.S. at 255.

**2. Plaintiffs Cannot Rely on a "Catalyst Theory" to Establish Fee Eligibility.**

Plaintiffs insinuate that their lawsuit catalyzed broader systemic change justifying a fee award even absent concrete relief. *See* ECF 707 ("Renewed Pet.") at 2. This argument fails for two independent reasons.

First, the Ninth Circuit has never recognized a "catalyst theory" as a basis for ERISA fees under *Hardt*, *see Smith v. Aetna Life Ins. Co.*, 2020 WL 6055147, at *3 (S.D. Cal. Oct. 14, 2020), and "the Supreme Court rejected the catalyst theory as a basis for recovering fees" in the context of "prevailing party" fee statutes. *Berry v. Air Force Cent. Welfare Fund*, 115 F.4th 948, 953 (9th Cir. 2024) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001)). The Ninth Circuit has extended that reasoning to statutes requiring "success"—the standard applicable here. *Id.* at 953–54. And even courts that recognize the catalyst theory require "the relief sought in [the] complaint." *Glover v. Hartford Life & Accident Ins. Co.*, 617 F. Supp. 3d 90, 100, 102 (D.N.H. 2022). Plaintiffs cannot make that showing.

Second, the collateral effects Plaintiffs invoke—legislative changes, regulatory inquiries, and decisions by other insurers—are the voluntary acts of non-parties. Plaintiffs cannot bootstrap fee eligibility by pointing to the independent decisions of legislators, regulators, and competitors. To hold otherwise would allow any plaintiff who loses on the merits to claim a "victory" based on the downstream reactions of third parties, untethered from any judicial relief actually obtained.

---

[2] And, in any event, nothing in the Amended Remedies Order prevents UBH from adopting different guidelines to implement the GASC requirement so long as they accurately reflect GASC, or from adopting different guidelines to interpret different plan terms besides GASC, such as medical necessity or custodial care. *See* Nov. 12, 2025 Remedies Hr'g Tr. at 30:2–31:5 (rejecting Plaintiffs' argument that UBH should be enjoined from adopting different guidelines without court approval); *see also* Dec. 3, 2025 Remedies Hr'g Tr. at 20:14–18 ("[T]he further we get into controlling the contents of future guidelines . . . , the closer we get to the portions of the decision that the Ninth Circuit has now reversed.").

*See Palmer v. City of Chi.*, 806 F.2d 1316, 1323 (7th Cir. 1986) (fee statutes do "not reward a plaintiff who brings an unmeritorious suit, merely because by some fortuity the suit brings about changes favorable to him"); *see also Berry*, 115 F.4th at 953 (relief obtained "without the necessary 'judicial imprimatur'" is not "successful") (collecting cases).

### B. The *Hummell* Factors Do Not Support a Fee Award.

Even if Plaintiffs could demonstrate "some degree of success on the merits," the Court should still deny a fee award under the *Hummell* factors. "[T]he district court, after proper application of the *Hummell* factors, retains discretion to award all, some, or none of the requested fees." *Brasley v. Fearless Farris Serv. Stations, Inc.*, 714 F. App'x 790, 791 (9th Cir. 2018) (citation modified). A proper weighing of those factors here does not support a fee award, and certainly not one of the magnitude that Plaintiffs seek.

***Relative Merits of the Parties' Positions.*** This factor weighs heavily against a fee award. UBH prevailed on all of the most meaningful merits and remedies issues. Plaintiffs lost their entire denial of benefits claim and aspects of the fiduciary duty claim, demonstrating that UBH held "the more meritorious position on the central issue in this case." *Sobh v. Phx. Graphix Inc.*, 2022 WL 2316316, at *3 (D. Ariz. June 28, 2022) (denying fees when "both parties' positions had some merit" but the plaintiff lost on his denial of benefits claim). Moreover, "where a plaintiff is rewarded some relief, but originally sought 'substantially more' than was ultimately granted, a finding that the opposing party's position was meritorious is appropriate." *Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 898 F. Supp. 2d 883, 911 (D. Md. 2012), *aff'd*, 541 F. App'x 322 (4th Cir. 2013) (citation modified). The disparity between what was sought and what was obtained is itself evidence of the merit of UBH's positions. *See supra* Figure 1.

***Benefit to All Plan Participants or Resolution of a Significant Legal Question.*** This factor also weighs in favor of UBH and against a fee award. While Plaintiffs built this case upon a "novel reprocessing theory" and publicly touted their initial victory as a "landmark win,"[3] they

[3] *See* Zuckerman Spaeder LLP, Press Release, After Delivering Landmark Win for Mental Health Patients, Judge Orders UnitedHealth to Reprocess Over 50,000 Claims and Reform Claims Handling (Nov. 4, 2020), https://www.zuckerman.com/news/press-release/after-delivering-landmark-win-mental-health-patients-judge-orders-unitedhealth-reprocess-over-50000/.

ultimately failed to deliver *any* benefit to all plan participants or resolve any significant legal question. Reprocessing was *the* benefit to plan participants that this litigation sought. The classes were *defined by benefit denials*, ECF 174 at 12–13, making clear that reprocessing was the heart of the relief that Plaintiffs sought to obtain and ultimately did not secure. But certification of the denial of benefits claim was reversed in full, *Wit III*, 79 F.4th at 1089, and no class member has received or will receive any benefits as a result of this litigation. The only surviving relief bars the use of Guidelines UBH voluntarily abandoned years ago. There is no finding that the now-prohibited Guidelines ever caused a claim to be improperly denied.

As to significant legal questions, Plaintiffs' "novel reprocessing theory" ultimately proved unsuccessful, and the narrow surviving claim is an unremarkable fiduciary duty claim premised on the specific facts of UBH's Guideline-development process—namely, UBH's purported consideration of financial consequences—regardless of the content of those Guidelines or whether they ever caused any class member any harm. *See* Nov. 12, 2025 Remedies Hr'g Tr. at 33:20–34:13 (the court explaining that remedies must be grounded in the reality that "we . . . don't have the weight that is provided by the use of those guidelines to hurt" any class members); *Severstal Wheeling Inc. v. WPN Corp.*, 809 F. Supp. 2d 245, 254–55 (S.D.N.Y. 2011), *aff'd* 659 F. App'x. 28 (2d Cir 2016) (discussing circumstances under which a plan administrator's conflict of interest may constitute a breach of fiduciary duty).

***Degree of Culpability or Bad Faith.*** This factor does not support a fee award. While parts of the fiduciary duty judgment remain intact, adverse judicial findings do not automatically satisfy this factor. *Vasquez v. Cargill, Inc.*, 2008 WL 7825955, at *2 (C.D. Cal. Mar. 13, 2008). The Court's prior finding of bad faith rested in large part on the now-reversed finding that "UBH denied mental health and substance use disorder treatment coverage to tens of thousands of class members using internal guidelines that were inconsistent with the terms of the class members' health insurance plans." Original Fee Order at 5. That finding has been reversed, *Wit III*, 79 F.4th at 1089, and superseded by an affirmative judgment in UBH's favor that UBH did not improperly deny benefits to a single plaintiff. Nov. 12, 2025 Remedies Hr'g Tr. at 30:20–22. All that remains is the conclusion that UBH's Guideline-development process was improperly influenced by

"structural" conflicts of interest—qualitatively different from the claim that UBH knowingly caused tens of thousands of improper coverage denials. This factor weighs in UBH's favor, or is at best neutral, and does not justify a fee award.

***Deterrence.*** A fee award serves no meaningful deterrent purpose. This case was a facial challenge to UBH's internally-developed Guidelines, and the only injunctive relief Plaintiffs ultimately obtained is an injunction prohibiting UBH from using those Guidelines. But, as the Court knows, UBH *voluntarily discontinued* those Guidelines years ago, before even the *original* Remedies Order was entered. UBH began using the ASAM Criteria for substance use disorder decisions in January 2019—before the Court issued its Findings of Fact and Conclusions of Law on March 15, 2019 and before the Court issued its Original Remedies Order on November 3, 2020. *See* ECF 451-2 ¶¶ 4–10. And UBH began using LOCUS, CALOCUS-CASCII, and ESCII for mental health decisions in January 2020—also before the Court issued its November 3, 2020 Original Remedies Order. *See* ECF 451-3. The conduct Plaintiffs sought to deter is voluntarily ended years ago, is already enjoined by the Amended Remedies Order, and will not be deterred by a fee award. This factor does not favor a fee award.

***Ability to Satisfy a Fee Award.*** UBH's ability to satisfy an award of attorneys' fees is not determinative and should carry little weight. *See Simonia*, 608 F.3d at 1122 (affirming denial of fee award; while defendant "undoubtedly [had] the ability to satisfy an award of fees . . . no single *Hummell* factor is necessarily decisive") (citation modified). Regardless of UBH's ability to pay, Plaintiffs' unprecedented demand for nearly $33 million is not reasonable.

Viewed in their totality, the *Hummell* factors weigh against any fee award. UBH's legal positions were vindicated on the issues that mattered most, and Plaintiffs obtained only a fraction of the relief they sought, delivering no tangible benefit to class members. Plaintiffs' counsel made a deliberate choice to pursue—on contingency—a novel facial challenge that "[n]o other lawyer had ever brought" "much less prevailed on," Original Fee Pet. at 1, and they lost. That is the risk contingency representation entails. UBH should not now be required to pay Plaintiffs' attorneys' fees on top of its own. *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 692 (1983) ("After protracted litigation requiring payment of expensive legal fees and associated costs in both money

and manpower," a successful defendant's "reward" should not be "a second lawyer's bill—this one payable to those who wrongly accused it of violating the law.").

### II. Any Fee Award Should Be Dramatically Reduced to Reflect Plaintiffs' Pyrrhic Success.

Despite an unmitigated defeat on one of their two claims, a partial defeat on the other claim, and an amended remedies order that stripped away nearly all the substantive relief that Plaintiffs had secured, Plaintiffs have the bravado to seek a staggering fee award. Plaintiffs should not recover *any* fees under these circumstances. *See* Arg. Section I. But if the Court nevertheless determines that Plaintiffs' pyrrhic "victory" entitles them to some amount of attorneys' fees, the size of the fee award should be substantially less than what Plaintiffs request.

Even if a fee claimant passes both the *Hardt* and *Hummell* requirements, the Court must conduct a *Hensley* analysis to determine the amount of fees that should be awarded. *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 963 F. Supp. 2d 950, 961 (N.D. Cal. 2013) (citing *Hensley*, 461 U.S. 424). In determining this fee award, the Court must account for the degree of success that the moving party actually achieved and calculate a presumptive lodestar based on the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate. *Id.* at 968. The Court must also consider, under *Hensley,* whether the lodestar should be further adjusted based on the party's degree of success. *Id.*

#### A. Plaintiffs Cannot Recover Fees for Time Associated with Claims and Remedies on Which They Were Not Successful.

"[T]he most critical factor [in determining fees] is the degree of success obtained." *Hensley*, 461 U.S. at 436. Where a plaintiff has won on some claims and lost on others, the court proceeds in two steps: first, it asks whether the unsuccessful and successful claims were "unrelated," such that hours on the unsuccessful claims should be excluded entirely; second, even if claims "involve a common core of facts" or are "based on related legal theories," the court asks whether "the overall relief obtained by the plaintiff" justifies the hours reasonably expended. *Id.* at 434–35. Either step, properly applied to the record here, compels a dramatic reduction—not the minimal five to fifteen percent reduction that Plaintiffs propose. *See* Renewed Pet. at 20-22.

Although the Ninth Circuit described both claims as hinging on "a theory that UBH

improperly developed and relied on internal guidelines," *Wit III*, 79 F.4th at 1077, that description underscores the case for a dramatic reduction under either step of the *Hensley* inquiry. If the claims are legally and factually distinct, hours on the unsuccessful claims must be excluded entirely. If the Court finds a "common core of facts," the Ninth Circuit's decisions confirm that the reversed Guidelines-based theory was the central engine of the entire litigation—meaning the "significance of the overall relief obtained," *Hensley*, 461 U.S. at 435, is vanishingly small relative to the full scope of work expended. Both steps require a substantial reduction.

Plaintiffs themselves acknowledge they cannot recover fees for time spent solely in support of unsuccessful claims and remedies. *See, e.g.*, Renewed Pet. at 24; ECF 708, "Reynolds Decl." ¶¶ 84(c), 204. But while Plaintiffs pay lip service to this principle, they significantly undercount the hours that ought to be excluded.

**1. Denial of Benefits**

Plaintiffs purport to exclude time spent solely in support of their denial of benefits claim yet identify only 1,241 hours as excludable—less than 4% of the 33,121 hours billed by Zuckerman Spaeder since the inception of the case. *See* Reynolds Decl. Exs. 3-A, 3-B. As noted below, Plaintiffs' Counsel's billing entries are exceedingly vague, frequently making it impossible to determine the nature of the work at all, let alone determine whether the work related to the denial of benefits claim or the breach of fiduciary duty claim. *See* Arg. Section III.A. However, UBH's fee auditor had identified $1,608,417.85 in fees from the following categories that ought to be excluded in their entirety:

- **Entries Explicitly Referencing Denials or Benefits Decisions ($503,540.58)** – Time devoted to specific claims or denials can only relate to the denial of benefits claim and are not recoverable. Declaration of John Trunko ("Trunko Decl.") ¶ 36, Ex. G-7.
- **Entries Related to Depositions of Plaintiffs or Their Providers ($244,014.19)** – The individual named plaintiffs and their providers had no knowledge of UBH's Guideline-development process or the way in which the Guidelines were inconsistent with GASC. Discovery involving such individuals could only concern the circumstances of the plaintiffs' claim denials, which relates solely to the denial of benefits claim. Trunko Decl. ¶ 35, Ex. G-6.

- **Entries Concerning the Claim Sample ($316,892.33)** – Like discovery concerning the individual named plaintiffs, matters involving the claim sample could only possibly relate to the now-reversed denial of benefits claim. Nothing related to the claim sample had any bearing on UBH's Guideline development process. Trunko Decl. ¶ 31, Ex. G-2.

- **Entries Concerning Post-Remand and Mandamus Proceedings ($500,692.00)** – Time spent by Plaintiffs' Counsel following remand from the Ninth Circuit and the subsequent mandamus proceedings is not recoverable. Plaintiffs' "Scope of Remand" briefing focused almost entirely on their failed efforts to revive and re-certify the denial of benefits claim, and reinstate or expand remedies that they ultimately failed to recover. *See, e.g.*, ECF 612 (asking Court to "clarify" it interpreted the Plans correctly, seeking opportunity to recertify denial of benefits class, and requesting to lift stay on special master proceedings and issue a reprocessing order "consistent with the panel's guidance"). *See* Trunko Decl. ¶¶ 28,–37, Exs. G-2, G-5, G-6, G-7.

**2. Unrecovered Remedies**

Plaintiffs likewise acknowledge that they cannot recover fees for time spent related to remedies that were not included in the Amended Remedies Order. But here too, Plaintiffs significantly undercount the hours associated with such remedies. Entries associated with the following types of remedies, totaling $162,090.63 that were either denied by this court or reversed by the Ninth Circuit must be excluded in their entirety:

- **Monetary Surcharge ($26,100.17)** – As discussed above, Plaintiffs initially sought a monetary surcharge remedy, but that remedy was ultimately dismissed at summary judgment. Any fees associated with seeking a surcharge are not recoverable. Trunko Decl. ¶ 32, Ex. G-3.

- **Compliance with Original Remedies Order and Special Master ($86,157.88)**– For the brief time that the Original Remedies Order was in effect, Plaintiffs devoted time to seeking UBH's compliance with the various injunctions, including coordinating with the Special Master on oversight of mandatory employee training. Those injunctions have been stricken, and associated fees are not recoverable. Trunko Decl. ¶ 30, Ex. G-1.

- **Reprocessing ($49,832.58)** – Plaintiffs did not succeed in their pursuit of

reprocessing relief. Plaintiffs' Counsel's time devoted to that remedy is not recoverable. *See* Trunko Decl. ¶ 33, Ex. G-4.

**B. The Reduction For "Hybrid Time" Should Be Much Greater.**

Plaintiffs' Counsel claim that "[v]irtually all of Class Counsel's work from the inception of the case through the Ninth Circuit appeal was in furtherance of both claims." Renewed Pet. at 23. As discussed above, Plaintiffs overstate the amount of time relevant to both claims, and continue to improperly seek fees for time that was clearly spent solely on unsuccessful claims and remedies. But even accepting Plaintiffs' premise for the remaining vague time entries, their proposal of *at most* a 15% reduction to such "hybrid time" is plainly unreasonable in view of Plaintiffs' minimal success. The Court should not allow Plaintiffs to launder the costs of their largely failed lawsuit through a nominal "hybrid" label.

"[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming fat from a fee application." *Schwarz v. Sec'y. of Health & Human Services*., 73 F.3d 895, 906 (9th Cir. 1995) (citation modified). The chasm between the claims Plaintiffs brought and what they ultimately obtained warrants a substantial reduction. *See supra* Figure 1.

While there is no one correct way for the Court to reduce a fee award based on the moving party's lack of success, the Court should apply at least a 70% reduction to the lodestar (or at least the portion based on "hybrid" claims). The Ninth Circuit has made clear that courts may reduce the lodestar based on the ratio of successful claims to unsuccessful ones, including by applying "a mathematical formula, even a crude one . . . to account for limited success." *Schwarz*, 73 F.3d at 905 (citation modified). Plaintiffs failed entirely on their denial of benefits claim and failed as to one of three fiduciary duty theories. That alone justifies a reduction of at least 66.6%. *See Mkay Inc. v. City of Huntington Park*, 2019 WL 1751823, at *6–7 (C.D. Cal. Mar. 7, 2019) (applying 66.6% reduction to reflect 33% success rate). But further reduction is warranted when considering the relief Plaintiffs failed to recover. As explained above, the claims and remedies that Plaintiffs lost were the central focus of Plaintiffs' case. Of the numerous remedies pursued—including

reprocessing, surcharge, mandatory injunctions, and special master oversight—Plaintiffs recovered only some declaratory relief and a narrow injunction barring UBH from re-introducing its discontinued coverage Guidelines, and an even greater reduction of 70%–90% of any "hybrid" fees is warranted. Indeed, Plaintiffs' opening brief on remedies—the culmination of everything they sought in this lawsuit other than surcharge (which this court had already rejected at summary judgment)—was principally devoted to remedies that have since been rejected by this Court or the Ninth Circuit. *See* Pls.' Opening Brief re Remedies, ECF 426 at 7–32 (arguing for reprocessing, an injunction requiring UBH to adopt specific guidelines, oversight by a special master, and "other" unspecified relief that the Court did not order).

UBH's proposed reduction is consistent with how other courts in this Circuit have approached fee applications by a minimally successful plaintiff. In *Potter v. Blue Shield of Cal. Life & Health Ins. Co.*, the court found a 70% reduction appropriate where the plaintiff "achieved very limited success" and "failed to recover the vast majority of his requested relief," even when "work resulting in Plaintiff's success is largely indistinguishable from other work performed in this case." 2017 WL 11633695, at *7–8 (C.D. Cal. June 27, 2017). Here, the proportionality calculus is far more extreme: Plaintiffs pursued class-wide benefits for over 65,000 class members across twelve years and obtained only a five-year prospective injunction with no benefits to any class member. A reduction at least as severe as *Potter* is appropriate.

Plaintiffs argue that only a "modest" reduction of no more than 15% is appropriate. Renewed Pet. at 22–24. But neither *Caplan v. CNA Fin. Corp.*, 573 F. Supp. 2d 1244, 1252 (N.D. Cal. 2008), nor *Gurasich v. IBM Retirement Plan*, 2016 WL 3683044, at *5 (N.D. Cal. July 12, 2016), supports such a minimal reduction. *Both* involved individual plaintiffs who *prevailed* on their primary benefits claims and lost only on ancillary claims. *See Caplan*, 573 F. Supp. 2d at 1250–52; *Gurasich*, 2016 WL 3683044, at *14 ("Plaintiff's primary goal was prevailing on *her claim for benefits, which she did.*"). Here, the relationship is inverted: the successful claim—a narrow process-based fiduciary duty theory—was ancillary, while the lost claim—class-wide denial of benefits relief for over 65,000 class members—was primary.

Where a plaintiff loses on the central legal issue, courts apply far more substantial

reductions. In *Barnett*, the court applied a 60% reduction because the plaintiff "lost on the main claim for which he sought relief" and on "the central legal issue." *Barnett,* 2016 WL 4077721, at *24. *The same is true* here, and a reduction at least as substantial—if not greater given the scale of this litigation and the complete absence of any monetary class relief—is warranted. *See Hensley*, 461 U.S. at 440 (the fee award must be "reasonable in relation to the results obtained").

**C. Third, Plaintiffs' Request for Full Reimbursement for Hours Purportedly Spent Solely on the Fiduciary Duty Claim Is Also Excessive.**

Plaintiffs invoke *Hensley*'s instruction that "[t]he result is what matters" to justify full reimbursement of all hours devoted exclusively to the fiduciary duty claim. Pet. at 21 (quoting *Hensley*, 461 U.S. at 435). But that principle cuts against them. The relevant "result" is the relief this Court actually ordered—not the legislative and regulatory "ripple effects" Plaintiffs attribute to the litigation, not the speculative future value of tolled individual suits, and not the reputational consequences of a trial verdict that was mostly reversed on appeal.

Moreover, full reimbursement of fiduciary duty hours is unwarranted because the fiduciary duty claim Plaintiffs actually won is materially narrower than the one they litigated. On remand, this Court reversed its judgment with respect to the alleged breach based on failure to adhere to plan terms, including any portion of the claim that "implicates the application of the Guidelines to class members' individual claims for benefits." BOFD Order at 31–32. The only surviving theory is Plaintiffs' claim that UBH breached its duties of loyalty and care by using financial incentives in developing the Guidelines—a theory that, according to both Plaintiffs and the Court, exists "independent" of the Guidelines' content and concerns only the process by which they were developed. *Id.* at 30 (quoting Pls.' Post-Trial Br. ECF 391-3, at 74–75). Having lost on one of their three theories of fiduciary duty, any undifferentiated time spent on their "fiduciary duty" claim must be substantially reduced, by at least 33%, to reflect the limited "degree of success obtained" on that claim. *Hensley*, 461 U.S. at 436.

**III. Plaintiffs' Lodestar Calculation Is Not Reasonable.**

**A. Plaintiffs' Hours Are Inadequately Documented, Infected by Block Billing, and Excessive.**

In calculating the presumptive lodestar, the court must exclude hours that were not

"reasonably expended," including those that are "excessive, redundant, or otherwise unnecessary." *Echague v. Metro. Life Ins. Co.*, 69 F. Supp. 3d 990, 995 (N.D. Cal. 2014); *accord Barnes*, 963 F. Supp. 2d at 968. A court should also exclude entries when it cannot determine if they are "reasonably expended," whether due to documentation deficiencies, block billing, or otherwise. Plaintiffs' billing records suffer from precisely these deficiencies.

***Documentation Deficiencies.*** Many entries submitted by Plaintiffs' Counsel do not describe the services rendered in sufficient detail to justify the time and fees billed. Courts in this District have found reductions appropriate where entries such as "reviewed email," "SJ motion," and "review documents" do "not provide enough detail about the work performed to allow the Court to determine whether the claimed hours are reasonable." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 532 (N.D. Cal. 2020) (quoting *Boconvi v. Velocity Express, LLC*, 2018 WL 2248988, at *4 (N.D. Cal. May 17, 2018)), *aff'd*, 845 F. App'x 563 (9th Cir. 2021). Indeed, Plaintiffs' vague time entries for tasks like "SJ motion" just confirm why a significant reduction for "hybrid time" is appropriate. Large portions of Plaintiffs' summary judgment opposition brief was devoted to their unsuccessful denial of benefits claim, reprocessing, and surcharge. *See* Pls. Opp to UBH Mot. For Summ. Judg., ECF 261 at 3–8, 10–12, 15–22, 24–25 (opposing summary judgment on the denial of benefits claim); *see also id.* at 13–14 (opposing summary judgment on the breach of fiduciary duty claim, including the "duty to comply with plan terms"). Undifferentiated work on an "SJ motion" that focused on unsuccessful claims and remedies must be reduced accordingly.

Redacted time entries also are particularly problematic: Where a party "redacted the narrative descriptions of every single time entry," a court "cannot determine the reasonable number of hours" expended, and denial of the fee request is warranted. *Campbell v. United Healthcare Ins. Co.*, 2024 WL 5423772, at *5 (C.D. Cal. Oct. 25, 2024). The Court should accordingly reduce Plaintiffs' lodestar by $1,604,651.77 to account for vague and redacted time entries. Trunko Decl. Exs. C, D.

***Block Billing.*** The Court has discretion to reduce a fee request based on block billing where the entries are inadequate to allow the Court to determine whether the time spent on

particular tasks is reasonable. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *Lahiri v. Univ. Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222–23 (9th Cir. 2010) (30% reduction to block-billed entries was appropriate); *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 966–68 (N.D. Cal. 2014) (reducing fee request by 20% due to block billing). The Court should reduce Plaintiffs' lodestar by $2,191,345.83 due to improper block billing. Trunko Decl. Ex. B.

***Clerical Work.*** Clerical work is considered overhead, and is subsumed in the attorney's hourly rate. *Jeremiah B. v. Dep't of Educ.*, 2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010), *R&R adopted,* 2010 WL 675698 (D. Haw. Feb. 22, 2010); *Terry v. City of San Diego*, 583 F. App'x 786, 790 (9th Cir. 2014) ("The district court correctly held that attorney hours devoted to clerical work should be deducted.") (citation modified). Mr. Trunko's analysis shows that Plaintiffs' attorneys billed time for clerical tasks and paralegals and litigation-support timekeepers billed time for clerical work, totaling $414,967.86 (before applying any multiplier). Trunko Decl. Ex. E. These hours should be disallowed.

***Media Contacts.*** The Court also should disallow 83.6 hours (equating to $94,844.94 in their lodestar amount) spent by Class Counsel speaking to the media and related publicity work. Trunko Decl. Ex. F. Press conferences and media interviews "are the kinds of activities that attorneys generally do at their own expense." *Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995). "[M]edia-related time spent by a lawyer may be compensable where it is narrowly focused on furthering the client's goals in litigation," but is not recoverable where it does not further the litigation. *Allen v. City of L. A.*, 1995 WL 433720, at *11 (C.D. Cal. Jan. 13, 1995).[4] "Class Counsel should not be compensated for time spent interacting with the media. Such contacts serve to enhance Class Counsel's reputation, and that is compensation enough." *Loretz v. Regal Stone, Ltd.*, 756 F. Supp. 2d 1203, 1215 (N.D. Cal. 2010).

## B. Plaintiffs' Demand for 2026 Rates Is Unreasonable.

The second component of the presumptive lodestar is the reasonable hourly rate, determined according to "prevailing market rates in the relevant community." *Echague*, 69 F.

[4] *See also Kopp v. U.S. Secret Serv.*, 2019 WL 2327933, at *6 (N.D. Cal. May 31, 2019) (Spero, J.) (denying attorneys' fees where attorneys fail to explain "why outreach to the press was necessary to any litigation goal").

Supp. 3d at 996. "[A] reasonable attorney's fee is one that is adequate to attract competent counsel, but . . . [that does] not produce windfalls to attorneys." *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (citation modified). Plaintiffs' requested rates (*see* Renewed Pet. at 9–18) fail this standard in several respects.

Plaintiffs seek to use their current 2026 rates, or otherwise the rates of the last year in which an attorney worked. Renewed Pet. at 11. Plaintiffs thus seek to apply 2026 billing rates to work performed as early as 2014. While courts have discretion to calculate fees using an attorney's current rate as compensation for a delay in receiving payment, "[c]urrent rates are not required in every case," *James v. AT&T W. Disability Benefits Program.*, 2014 WL 7272983, at *4 n.5 (N.D. Cal. Dec. 22, 2014), and their application should not "trigger an inordinate increase in the overall fee award," *Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 2014 WL 2621202, at *4 (N.D. Cal. June 12, 2014).

Here, Plaintiffs' request to apply current rates would result in an undeserved windfall, far exceeding a reasonable interest rate. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 555 (2010) (suggesting delay in payment of fees should be calculated on a reasonable basis "such as by applying a standard rate of interest"). Plaintiffs' prior fee petition sought then-current 2020 hourly rates across the board, rather than historical rates, inflating the lodestar by more than $1.8 million for Zuckerman Spaeder alone. *See* ECF 523 at 10–11. Plaintiffs now seek to apply current *2026* rates, raising their already inflated lodestar by a whopping $8,267,074.05, or 41% over the base lodestar. *See* Trunko Decl. Ex. H; *see also* Dowd Decl. Ex. A. Such an increase is unwarranted, given that Plaintiffs' Counsel has done nothing to advance the Class's claims in the more than five years since the prior fee award. Plaintiffs' counsel should not benefit from rate inflation over the intervening years during which Plaintiffs' prior success only eroded away.

At most, the Court should apply a standard interest-rate adjustment to historical rates, consistent with *Perdue*. 559 U.S. at 555; *see also Dine v. Metro. Life Ins. Co.*, 2011 WL 6131312, at *2 (C.D. Cal. Dec. 9, 2011) ("using the attorneys' historical rates and adding a prime rate enhancement is more appropriate than using current rates"). Applying simple interest to Zuckerman Spaeder's actual billed rates through July 31, 2026 using the one-year Treasury

Constant Maturity Rate, consistent with 28 U.S.C. § 1961, yields interest of $4,251,189.12 above the base lodestar of $19,913,725.00, for a total of $24,164,914.12 in fees and interest. Dowd Decl. ¶¶ 3–4 & Ex. A. In other words, applying this standard interest-rate adjustment to Zuckerman's historical rates results in a $4,015,884.93 (or approximately 14.25%) reduction. *Compare id.* (calculating Zuckerman Spaeder total fees and interest of $24,164,914.12), *with* Reynolds Decl. Ex. 1A (showing Zuckerman Spaeder actual lodestar of $28,181,746.15).

Plaintiffs' other Counsel did not supply enough information about their rates to apply this interest-based methodology. The only historical information for Psych-Appeal, Inc. and The Maul Firm come from the prior fee petition, which stated their current rates as of 2020 (with no mention of their rates before 2020). *See* Trunko Decl. ¶ 38, Ex. H. Indeed, since 2020 the rates for Psych-Appeal, Inc. have increased ***60%*** (from $900 to $1,500 per hour). *Id.* Stris & Maher LLP, which worked solely on the appeal in which the judgment was largely reversed, provides *no* historical rate information. *Id.* Accordingly, their requested fees should be reduced by at least a similar percentage of 14.25%: (1) Psych-Appeal, Inc.'s $2,192,100.00 requested fees should be reduced by $312,374.25 for a total of $1,879,725.75; (2) The Maul Firm, P.C.'s $209,475.00 requested fees should be reduced by $29,850.19 for a total of $179,624.81; and (3) Stris & Maher LLP's $653,355.00 requested fees should be reduced by $93,103.09 for a total of $560,251.91.

### C. Plaintiffs' Total Fee Request Should Be Reduced By At Least $21,472,066.66.

For the foregoing reasons, to the extent the court awards fees at all (it should not), the Court should start by reducing Plaintiffs' lodestar amount to account for the hours that were either devoted solely to unsuccessful remedies and claims ($1,720,675.90, Section II.A) or not reasonably expended ($4,305,810.30, Section III.A). But even if the Court does not strike any of this time, reductions to the lodestar are still necessary to account for counsel's unreasonable request for 2026 rates (Section III.B), and Plaintiffs' lack of success, (Sections II.B & C). The scenarios below set forth the different adjustments to Plaintiffs' base lodestar amount ($31,236,676.15) depending on whether the Court applies a 70% or 90% reduction to Counsel's "hybrid" hours and whether the Court adjusts Counsel's hours to reflect historical rates plus interest, rather than 2026 rates.

| Scenario | Amount Reduced | Revised Lodestar |
|---|---|---|
| Scenario 1: 90% Hybrid Time Reduction, 33% BOFD Time Reduction, Historical Rates + Interest Adjustment | $28,036,708.15 | $3,199,968.00 |
| Scenario 2: 90% Hybrid Time Reduction, 33% BOFD Time Reduction | $27,155,586.96 | $4,081,089.19 |
| Scenario 3: 70% Hybrid Time Reduction, 33% BOFD Time Reduction, Historical Rates + Interest Adjustment | $22,863,523.51 | $8,373,152.64 |
| Scenario 4: 70% Hybrid Time Reduction, 33% BOFD Time Reduction | $21,472,066.66 | $9,764,609.49 |

*See* Dowd Decl., Exs. B, C, and D.

## IV. Plaintiffs' Costs & Expenses Must Be Denied or Substantially Reduced.

Plaintiffs seek $1,703,471.34 in costs and expenses. Renewed Pet. at 24. This request is unreasonable and should be denied or substantially reduced. Specifically, the following categories of costs are not recoverable or are unreasonable, and the cost award should be reduced by a total of between $536,561.58 and $605,112.33:

**Contract Attorneys.** Plaintiffs seek $342,753.76 in attorneys' fees paid to contract attorneys to review documents produced in the case. *See* Reynolds Decl. ¶ 242. Plaintiffs treat these fees as an expense, rather than as attorney fees included in the lodestar amount. *See id.* These costs, whether treated as an expense or as attorney fees, ought to be reduced for the same reasons and to the same extent as the lodestar. In this Circuit a party's fee application should be reduced where the party was successful on some claims but not on others. *See* Arg. Section II.A. There is no question Plaintiffs' contract attorneys spent time reviewing documents that related solely to the unsuccessful denial of benefits claim. *See, e.g.*, Reynolds Decl. ¶ 119 (discussing review of documents for members of the claim sample). But because the time entries for Plaintiffs' contract attorneys lack any detail, *see* Reynolds Decl. Ex. 9, it is impossible to determine the total time these attorneys spent reviewing documents associated with the denial of benefits claim, rather than the breach of fiduciary duty claim. Thus, any award of these fees should be reduced by the same percentage applied to the lodestar to reflect Plaintiffs' limited

success. A reduction of between $239,927.63 (70%) and $308,478.38 (90%) is appropriate given Plaintiffs' lack of success and failure to recover any concrete relief for the Class.[5]

**Court Costs.** Plaintiffs ask to tax UBH with $7,360 in *pro hac vice* filing fees (Reynolds Decl. ¶ 243), but these costs are not recoverable. *See Reg'l Local Union No. 846 v. QPL, Inc.*, 2013 WL 3972431, at *3 (D. Or. July 31, 2013); *N.L. v. Credit One Bank, N.A.*, 2019 WL 1428122, at *5 (E.D. Cal. Mar. 29, 2019).

**Legal Research.** Plaintiffs' claim for "computerized research costs" (Reynolds Decl. ¶ 245) should be largely disallowed because Plaintiffs, for all but a handful of these cost items, Plaintiffs submit no supporting documentation showing their contracted rates for legal research services (e.g. Westlaw, LexisNexis). *Payne v. Bay Area Rapid Transit Dist.*, 2009 WL 1626588, at *9 (N.D. Cal. June 5, 2009) (declining to award legal research costs where the plaintiff failed to provide sufficient information). These unaccounted research costs total $154,042.88. Counsel's actual rate versus market rate costs for these services cannot be determined. Billing market rates for Westlaw, rather than Plaintiffs' Counsel's contracted rate, would be considered improper under ABA Formal Ethics Opinion 93-379. *See, e.g.*, SDCBA Legal Ethics Opinion 2013-3, https://www.sdcba.org/?pg=EthicsOpinion20133 (recognizing it would be improper for a lawyer not to pass on contracted discounts from third-party vendors onto the client).

**PDF Hyperlinking.** This work is clerical and non-recoverable, not to mention unreasonable. $35,976.72 is not reasonable for preparing linked versions of three post-trial documents. *See* Reynolds Decl. ¶ 253.

**Photocopy, Delivery, and Related Services.** Plaintiffs' $67,303.67 demand is not reasonable. Documentation shows excessive per page photocopying charges of up to $0.20 per page for in-house duplication, *see, e.g.*, ZSWIT0001409, amounting to 125,189 total pages of copies totaling $25,037.80. Outside vendors could perform the same service for less than half the cost ($0.08), *see, e.g.*, ZSWIT0001374, and certainly for no more than $0.15 per page. *See* Trunko Decl. ¶ 43. These expenses, if awarded at all, should be reduced by $7,007.80 to account

[5] Alternatively, the Court should reduce Plaintiffs' contract attorney "expenses" by 50% given the block billing issues with those attorneys' time entries. *See* Trunko Decl. ¶ 40, Ex. I-1.

for Plaintiffs' excessive photocopying costs. *Id.*, at ¶ 43 & Ex. I-4.

**Trial Summary Exhibits.** Plaintiffs paid $92,246.55 to The Brattle Group for Josephine Duh to summarize claim sample plans and denial letters and testify at trial. Reynolds Decl. ¶ 252. These costs should be excluded as solely supporting the reversed denial of benefits claim, *see* Arg. Section II.A, or alternatively as disallowed expert costs. *See Agredano v. Mut. of Omaha Companies.*, 75 F.3d 541, 542–43 (9th Cir. 1996).

**V. No Cost Multiplier Is Warranted.**

Plaintiffs' request for a lodestar enhancement of $418,561.99, representing interest on approximately $1.7 million in litigation expenses incurred by Class Counsel beginning in 2014, Renewed Pet. at 24–25, should be denied. First, the *Perdue* expense-delay enhancement is available only in the rare circumstance where the lodestar itself does not adequately compensate for a particular and documented burden counsel bore—and even then, it remains discretionary. *See Perdue*, 559 U.S. at 554. The presumption remains that the lodestar is sufficient, *id.* at 552, and Plaintiffs have not identified any reason why the lodestar here fails to adequately compensate Class Counsel.

Second, and more fundamentally, the *Perdue* expense-delay enhancement presupposes a fee award that adequately reflects the results obtained. As discussed above, the lodestar here must be dramatically reduced to account for Plaintiffs' lack of success. Awarding an enhancement on top of an already-inflated lodestar would compound the problem. *See, e.g.*, *Barnett*, 2016 WL 4077721, at *25 (denying requested enhancement where plaintiff achieved limited success and where there was "no unjustifiable delay, but only the normal course of litigation through which the Plan defended its termination of [plaintiff's long-term disability] benefits").

**CONCLUSION**

For the foregoing reasons, UBH respectfully requests that the Court deny Plaintiffs' motion for attorneys' fees and costs in its entirety, or in the alternative, reduce any award to an amount that is strictly commensurate with Plaintiffs' actual, limited success, if any.

Respectfully Submitted:

Dated: August 21, 2026

CROWELL & MORING LLP

/s/ *Andrew Holmer*

Andrew Holmer
Nicholas Dowd

*Attorneys for Defendant*
*United Behavioral Health*